BINGHAM McCUTCHEN LLP
CHRISTOPHER B. HOCKETT (SBN 121539)
GEOFFREY M. HOWARD (SBN 157468)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286
chris.hockett@bingham.com
geoff.howard@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JEFFREY S. ROSS (SBN 138172)
500 Oracle Parkway
M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:   (650) 506-7114
dorian.daley@oracle.com
jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 07-CV-1658 EMC<br><br>**ORACLE'S NOTICE OF MOTION AND MOTION FOR INTERIM PRESERVATION ORDER AND MEET AND CONFER SCHEDULE FOR FINAL PRESERVATION ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 6, 2007<br>Time: 10:30 a.m.<br>Judge: The Honorable Edward M. Chen<br>     Courtroom C, 15th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 6, 2007 at 10:30 a.m., or as soon as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA, 94102, Courtroom C, 15th Floor, Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (together "Oracle") will and hereby do move the Court for an interim order preserving evidence in the possession of Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (together "SAP") and for a further order requiring the parties to meet and confer concerning entry of a final preservation order.

This motion is based on the Notice of Motion and Motion for Interim Preservation Order and Meet and Confer Schedule for Final Preservation Order, the attached Memorandum of Points and Authorities in Support of the Motion for Interim Preservation Order and Meet and Confer Schedule for Final Preservation Order, the Declarations of Geoffrey M. Howard and Kevin Mandia in Support of the Motion for Interim Preservation Order and Meet and Confer Schedule for Final Preservation Order filed concurrently with this motion, the pleadings and records on file in this matter, all matters on which the Court may take judicial notice, and any argument of counsel which may be permitted at a hearing before this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Oracle brings this motion for a court order requiring SAP to preserve electronic information critical to this case. Almost six weeks ago, on the day it filed its complaint, Oracle sent SAP a proposed stipulated preservation order. Oracle's proposed order would require SAP to preserve the critical, mutable, electronic evidence on its computers related to Oracle's claims that SAP stole Oracle's intellectual property. But despite repeated requests by Oracle, SAP still has not even given comments on, let alone agreed to, any aspect of Oracle's proposed preservation order. In the meantime, SAP has been quoted as stating that it is conducting an internal investigation into Oracle's allegations, an investigation that if performed without proper

safeguards could result in the alteration or destruction of critical electronic records.

Given the nature of this case, some important proof of Oracle's claims resides only on SAP's computers. This proof will consist of thousands of pieces of software code and other electronic materials taken by SAP from Oracle's computer systems and, Oracle believes, used to support SAP customers with no right to these materials. This critical evidence, like all electronic information, is inherently mutable, requiring special efforts to preserve and protect it from alteration or destruction, which can happen even unintentionally during the normal course of business.

Oracle prepared its March 22 proposed preservation order to address these concerns at the outset of the case. Because once electronic evidence is gone, it can be difficult – or even impossible – to recover. But in response to Oracle's repeated requests for comments on the order, SAP has simply stalled. Although SAP has made vague assurances that it will preserve evidence, it has never revealed to Oracle any preservation measures it has taken, nor has it agreed specifically to preserve any of the categories of evidence set forth in Oracle's proposed preservation order. This failure to meet and confer about its preservation activities raises questions about whether SAP has in fact protected highly relevant evidence from alteration or destruction – as the law and Oracle's proposed order require it to do. To make matters worse, SAP recently wrote to Oracle questioning its obligation to provide certain of those core materials in discovery.

The danger of destruction or alteration of vital electronic evidence in SAP's possession requires prompt entry of a preservation order. Accordingly, Oracle brings this motion for entry of an interim order directing SAP to preserve the critical – and mutable – electronic evidence that Oracle requires to prove its claims. Oracle further requests an order requiring SAP to meet and confer in good faith concerning entry of a final preservation order.

II.     **STATEMENT OF FACTS**

    A.    **Oracle Discovers SAP's Theft Of Electronically Maintained Customer Support Materials**

In late 2006, Oracle noticed large, unexplained spikes in the number of support materials

that certain "customers" were downloading from Oracle's online, password-protected support website ("Customer Connection"). *See* Oracle's Complaint For Damages And Injunctive Relief ("Complaint"), ¶ 63. Oracle began a painstaking and expensive investigation to fully understand the nature of this increased download activity. *See id.*, ¶ 65. The investigation revealed that the suspicious activity originated from IP addresses and computers belonging to SAP. *See id.*, ¶ 66. Oracle also discovered that SAP accessed Oracle's computer system and downloaded Oracle's proprietary, copyrighted materials by using the log-in credentials of certain SAP customers who had, or at one time had, rights to access Oracle's password-protected customer support website. *See id.*, ¶¶ 5 & 9. SAP used these log-in credentials to download thousands of program updates, software updates, bug fixes, patches, custom solutions, and instructional materials ("Software and Support Materials") from Oracle's computers in California to SAP's computers in Texas. *See id.*, ¶¶ 3, 7 & 8.

Oracle has identified over 10,000 downloads of such Software and Support Materials in the name of customers who had no right to those materials. *See id.*, ¶ 7. These illegal downloads cover virtually every product library in every line of business. *See id.*, ¶ 68.

**B.     SAP's Computers, Servers, and Logs Contain Vital Evidence**

SAP appears to have perpetrated this theft entirely by computer. Much, if not all, of the evidence supporting Oracle's claims is inherently mutable and resides on computer media maintained or controlled by SAP. Declaration of Kevin Mandia in Support of Motion ("Mandia Decl."), filed concurrently with this motion, ¶¶ 2-4; *see also* Complaint, ¶ 8. The electronic evidence in SAP's possession is critical to support each of the causes of action in Oracle's Complaint. *See generally* Complaint. SAP's computers and servers presumably hold the actual materials that SAP downloaded from Oracle, but also should reveal an audit trail of who knew of the downloading, who had access to and/or used the downloaded materials, and in what way they were used. *See* Mandia Decl., ¶¶ 2-3; *see also* Complaint, ¶ 8.

This evidence likely exists on various server logs – computer-generated reports that reveal the history of what data is placed onto and moved off of a particular computer or system – and other similar repositories. *See* Mandia Decl., ¶ 3. Such data, particularly including server

NOTICE OF MOTION AND MOTION FOR INTERIM PRESERVATION ORDER AND
FURTHER MEET AND CONFER; MEMORANDUM IN SUPPORT THEREOF

logs, are susceptible to even inadvertent destruction or alteration. *See id.*, ¶ 4. Some critical server logs, for example, typically may only exist for a few days at a time. *See id.* The burden to proactively preserve this data is minimal to SAP, the self-proclaimed "largest business software company" in the world. *See, e.g.*, http://www.sap.com/usa/company/index.epx.

### C. The Preservation Order And Meet And Confer

Aware of the potentially precarious state of the relevant electronic evidence, Oracle put SAP on notice of its preservation obligations on March 22, 2007, immediately after serving the Complaint, and proposed a mutual, specific, stipulated preservation order that encompassed the categories of information relevant to Oracle's claims. *See* Declaration of Geoffrey M. Howard in Support of Motion ("Howard Decl."), filed concurrently with this motion, ¶ 2 & Ex. A. For example, the draft preservation order explicitly covers such critical categories of information as the computers used to access Oracle's systems and the server logs that would report the details of such access and the storage, movement, and use by SAP of the intellectual property that it improperly copied from Oracle's systems. *See id.*

SAP initially assured Oracle, in a general way, that it acknowledged and intended to comply with its preservation obligations. In a letter response, SAP indicated that its outside counsel would contact Oracle to discuss preservation obligations. *Id.*, ¶ 2 & Ex. B.

Oracle relied on these assurances and waited to hear further word from SAP's counsel. *Id.*, ¶ 3. On April 4, 2007, SAP's outside counsel made contact with Oracle's counsel by telephone to request an extension on SAP's time to respond to the Complaint. *Id.* Oracle's counsel at that time asked for SAP's comments on the draft preservation order. *Id.* SAP's counsel indicated that a different SAP outside counsel would call Oracle's counsel later that day to follow-up on the draft preservation order. *Id.* After not receiving a follow-up call, Oracle's counsel called SAP's counsel the next day and discovered that counsel was on vacation. *Id.* It took another a week to speak live, but Oracle and SAP did discuss the preservation order on April 19th. *Id.* On that call, SAP's counsel said that SAP took its preservation obligations seriously, that it did not object to a preservation order in concept, and that it would provide its comments promptly. *Id.*

Despite those assurances, three things have now happened that raise serious questions about SAP's preservation activities and that warrant a court order.

First, SAP still has not provided a single comment on the preservation order, despite having now had it for nearly six weeks and despite numerous Oracle requests to engage on this issue. *See id.*, ¶ 4 & Exs. C-F.

Second, SAP's CEO Henning Kagermann was quoted last week as stating that SAP is conducting an internal investigation because, although SAP purports to have policies that preclude the type of theft alleged by Oracle, "having policies is one thing, having them enforced is another thing. We have to have a complete picture." *Id.*, ¶ 6 & Ex. H. The internal SAP investigation raises additional preservation concerns, because an internal inquiry or investigation performed without proper forensic safeguards can impact the integrity of electronic evidence, including by materially affecting, changing, or destroying evidence. *See* Mandia Decl., ¶ 4.

Third, in the course of discussions between the parties about a possible early exchange of information, SAP recently made it clear that the parties have fundamental differences regarding the appropriate scope of discovery in this matter, including concerning several categories of information expressly called out in the preservation order itself.[1] *See* Howard Decl., ¶ 5 & Ex. G. Those materials include evidence at the heart of Oracle's allegations: (a) materials that SAP downloaded from Oracle, (b) communications related to those downloads, (c) how SAP accessed and stored these materials, (d) what use SAP had made of the materials downloaded from Oracle, and (e) contracts for customers named in the complaint. *See id.*, ¶ 5 & Ex. E. SAP likely stores this kind of evidence principally, if not entirely, on electronic media, like computer systems, servers, and network logs. *See* Mandia Decl., ¶¶ 2-3.

Nonetheless, in spite of their obvious central significance to the case, SAP's counsel

---

[1] This discussion began when SAP asked Oracle to voluntarily, and unilaterally, turn over its confidential customer license agreements. Oracle agreed to do so, provided that the early exchange of information included a balanced exchange of information that each side considered critical to its case. So far, SAP has refused to agree to such an exchange, but the parties' discussions continue on this issue. *See* Howard Decl., ¶¶ 4, 5 & Exs. D-G.

recently said Oracle's requests for these electronic materials "go well beyond" the claims in the Complaint, and that Oracle's rights to conduct discovery in this area were "questionable, at least." *See* Howard Decl., ¶ 5 & Ex. G.[2]

Oracle believes this is an absurd discovery position for SAP to take, and ultimately it will fail. But if SAP claims now that these critical electronic records are somehow not discoverable, is it preserving them? No one knows, and SAP has failed even to come to the table to address the issue.

As argued below, that should not stand. Justice requires that SAP be ordered to preserve the evidence set forth in Oracle's March 22 proposed preservation order.

### III. THE COURT SHOULD ORDER INTERIM PRESERVATION AND A MEET AND CONFER ON A FINAL PRESERVATION ORDER

Due to the dynamic and mutable nature of electronic evidence and the critical role that such evidence will play in this case, the Court should enter an interim preservation order to preserve the status quo and ensure that SAP does not, even inadvertently, alter or destroy critical electronic evidence. Further, the Court should order the parties to meet and confer concerning entry of a final preservation order.

#### A. The Preservation Order Standard

Federal courts have the power to issue orders for the preservation of electronic evidence. *See, e.g., Del Campo v. Kennedy*, No. C-01-21151 JW (PVT), 2006 U.S. Dist. LEXIS 66728 at *5-7, (N.D. Cal. Sept. 8, 2006); *see also Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133, 135 (Fed. Cl. 2004) (federal courts have the inherent power "to order the preservation of relevant evidence"); Ruling on a motion to preserve evidence, federal courts typically weigh the following factors: 1) the danger of evidence loss; 2) the content of any lost evidence; and 3) the burden of preserving the evidence. *See, e.g., Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371-72 (S.D.N.Y. 2006); *see*

---

[2] These topics of information requested by Oracle in the informal discovery email exchange are a subset of information and evidence specifically identified for preservation by the parties in the proposed preservation order. *Compare* Howard Decl., ¶ 5 & Ex. E (email with topics of information requested by Oracle) *with id.*, ¶ 2, Ex. A at ¶ 18 (Proposed Preservation Order).

also *Del Campo*, 2006 U.S. Dist. LEXIS 66728 at *5-7 (reviewing danger of destruction and burden on non-moving party; granting preservation order). Each of these factors weighs heavily in favor of entering a preservation order here.

### B.    The Danger Of Lost Or Destroyed Evidence Is Significant

Much of the critical electronic evidence in SAP's possession is expected to be stored on SAP's servers, computer drives, and/or other electronic storage media. *See* Mandia Decl, ¶¶ 2-3. This information, by its very nature, is dynamic and mutable. *See id.*, ¶ 4; Fed. R. Civ. P. 26 advisory committee's note (2006 Amendment) ("dynamic nature of electronically stored information may complicate preservation obligations"). It is often destroyed or altered just by inadvertence or carelessness. *See id.*; *see also Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 436 (W.D. Pa. 2004). This is particularly the case for server logs and other similar electronic information, which users may over-write, delete, or modify on a regular basis through routine document retention polices or other computer maintenance programs. *See* Mandia Decl., ¶ 4; *see also UMG Recordings, Inc. v. Does 1-4*, 2006 U.S. Dist. LEXIS 32821 at *4 (N.D. Cal. March 6, 2006) (finding good cause for expedited discovery because server logs are only retained for a limited period of time); *Best Western Int'l, Inc. v. Doe*, No. CV-06-1537-PHX-DGC, 2006 U.S. Dist. LEXIS 56014 at *4 & 16 (D. Az. July 25, 2006) (granting preservation order to protect evidence in possession of internet service provider, noting that the information is retained only "for a limited period"); Fed. R. Civ. P. 26 advisory committee's note (2006 Amendment) ("ordinary operation of computers involves both the automatic creation and the automatic deletion or overwriting of certain information").

The danger of destruction is heightened by the apparent fundamental differences between the parties with respect to the appropriate scope of discovery, and consequently, the scope of the evidence that has been, and will be, preserved. Where, as here, the vital evidence is almost entirely electronic, and therefore, exceedingly susceptible to destruction or alteration, the Court should intervene to safeguard the electronic evidence for use in these proceedings. *See, e.g.*, *Capricorn*, 220 F.R.D. at 435. Doing so also reduces the risk that expensive data recovery measures will be required in an attempt to restore lost evidence.

### C. The Evidence Is Critical To Oracle's Claims

Oracle seeks to preserve essential evidence at the core of its claims. The electronic evidence on SAP's computers and servers, including SAP's server logs and email files, will show what materials SAP downloaded from Oracle, who downloaded them, where and how SAP stores them, and which computers, individuals, and customer credentials SAP used to download Oracle's materials. *See* Mandia Decl., ¶¶ 2-3. This evidence relates directly to Oracle's computer fraud, trespass, and conversion claims. *See* Complaint, ¶¶ 82-98 & 127-141.

The electronic evidence on SAP's computers and servers, including SAP's server logs and email files, will also show who has had access to the downloaded content, and specifically how SAP has used the Software and Support Materials it downloaded. *See* Mandia Decl., ¶¶ 2-3. Such evidence relates directly to Oracle's claims for unfair competition, interference with prospective advantage, for unjust enrichment/restitution, and for an accounting. *See* Complaint, ¶¶ 99-126, 142-144 & 155-158.

Furthermore, the electronic evidence on SAP's computers and servers, including SAP's server logs and email files, will show who at SAP was involved or participated in the alleged downloading scheme. *See* Mandia Decl., ¶¶ 2-3. This information relates directly to Oracle's claims regarding agency, civil conspiracy, and aiding and abetting. *See* Complaint, ¶¶ 25-27 & 145-154.

### D. Proper Preservation Would Impose Minimal Burden On SAP

An order directing SAP to sequester and preserve the evidence related to Oracle's claims would impose minimal burden on SAP, a large and sophisticated company with sufficient resources to properly sequester and preserve the contents of the computers, servers, and related logs involved in accessing, downloading, using, and/or transferring Oracle's information. *See, e.g.*, http://www.sap.com/usa/company/index.epx ("SAP Americas is a subsidiary of SAP AG, **the world's largest business software company** and the third-largest software supplier overall.") (emphasis in original).

Any resulting burden from proper preservation is justified by the potential, in the absence of an order, that SAP may lose, alter, or destroy critical evidence, even by unintentional acts.

The law does not allow SAP to escape its preservation burdens in a case like this. *See, e.g., Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 1984) ("[A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.").

This obligation makes the entry of a preservation order even more compelling because, despite Oracle's repeated attempts to negotiate a mutually acceptable preservation order, SAP's only substantive response raises serious questions about the scope of its preservation activity. *See, e.g., Capricorn*, 220 F.R.D. at 435 (a preservation order may not be necessary "if the parties take immediate action to obtain or reproduce from the evidence the information needed; however, ***if the parties are not cooperative in this situation***, then an order directing the preservation of the evidence in question in a manner that will preserve the whole of the evidence for the benefit of all parties may be necessary.") (emphasis supplied).

The *Del Campo* case is instructive here. *Del Campo v. Kennedy*, 2006 U.S. Dist. LEXIS 66728 (N.D. Cal. 2006). In *Del Campo*, the Court granted plaintiff's motion to prevent destruction of documents and for an order requiring the parties to meet and confer to develop a document preservation plan, similar to the relief that Oracle requests in this motion. *Id.* at * 3. Relevant evidence in the *Del Campo* case was likely to be destroyed or altered in the normal course of business affairs after two weeks. *Id.* at *4. Here, certain electronic evidence relevant to Oracle's claims, like network logs, may be overwritten by SAP within days in the normal course of business if not properly preserved. *See* Mandia Decl., ¶ 4. The *Del Campo* court further ordered the parties to meet and confer to develop a document preservation plan, because the defendant had only provided "vague assurances that it would discuss the matter." *Del Campo*, 2006 U.S. Dist. LEXIS at * 6. The same is true here. SAP has provided only the vaguest assurances that it would honor its preservation obligations, but has failed – despite Oracle's repeated meet and confer requests – to discuss the important specifics laid out in Oracle's proposed preservation order. *See* Howard Decl., ¶¶ 2-4. Requiring further meet and confer on a final preservation order in addition to an interim preservation order, as in *Del*

1 *Campo*, will ensure that the parties focus on and meet their preservation obligations.

2 Because critical evidence in SAP's possession could be destroyed in the absence of an interim preservation order, and the burden on SAP would be minimal, the Court should grant Oracle's motion and enter the proposed interim preservation order and further order the parties to meet and confer and submit a proposed final preservation order within 30 days.

## IV. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court grant its motion for an interim preservation order and order requiring further meet and confer on entry of a final preservation order.

DATED: April 30, 2007

Bingham McCutchen LLP

By: _____
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle International Corporation and Oracle USA, Inc.