BINGHAM McCUTCHEN LLP
CHRISTOPHER B. HOCKETT (SBN 121539)
GEOFFREY M. HOWARD (SBN 157468)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
chris.hockett@bingham.com
geoff.howard@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JEFFREY S. ROSS (SBN 138172)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jeff.ross@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | No. C07-1658 EMC<br><br>**[PROPOSED] INTERIM PRESERVATION ORDER AND ORDER TO MEET AND CONFER ON FINAL PRESERVATION ORDER**<br><br>Date: June 6, 2007<br>Time: 10:30 a.m.<br>Judge: The Honorable Edward M. Chen<br>       Courtroom C, 15th Floor |

[PROPOSED] INTERIM PRESERVATION ORDER AND MEET AND CONFER ORDER

This matter came on for hearing before the Court on the motion of plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation for an Interim Preservation Order and to set a meet and confer schedule regarding a Final Preservation Order. This Court having considered the motion, the supporting memorandum, the declarations in support thereof, the pleadings on file in this matter, and any argument on the motion, finds good cause exists for GRANTING the motion.

Accordingly, the Court HEREBY GRANTS the motion and ORDERS that the Interim Preservation Order shall be entered as follows:

1. "All" includes "any" and "each," and vice versa.

2. "And" and "or," as used below, shall be construed both conjunctively and disjunctively and each shall include the other whenever such construction will serve to bring within the scope of this Order any information that would not otherwise be brought within its scope.

3. "Documents, Data, and Tangible Things" is to be interpreted broadly and includes all forms of writings, tangible things, and other documents contemplated by Federal Rule of Civil Procedure 34 and/or Federal Rule of Evidence 1001. This includes without limitation writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; e-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; web pages; databases; spreadsheets; software; hardware; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

4. "Oracle" means plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation.

1

1      5.    "SAP" means defendants SAP AG, SAP America, Inc., TomorrowNow, Inc., their predecessors, and their successors.

     6.    "SAP TN" or "TomorrowNow" mean defendant, TomorrowNow, Inc., its predecessors, and its successors.

     7.    "Software and Support Materials" means, without limitation, all program updates, software updates, bug fixes, patches, custom solutions, and instructional materials across the entire family of Oracle software products.

     8.    "Communication" means any and all contact or transmission of information between two or more Persons, whether in a face-to-face meeting, telephone conversation, or otherwise, or whether by letter, electronic mail, instant messaging system, facsimile transmission, cable, letters, correspondence, video conference, message, or any other method or medium of information transfer or exchange.

     9.    "Customer Connection" means the Oracle-maintained support website for Peoplesoft and JD Edwards customers and all associated Software and Support Materials, Documents, Data, and Tangible Things, hardware, software, physical server locations, and internet protocol addresses.

     10.   "Change Assistant" means that Oracle software used to search, select, download, and deploy software updates from Customer Connection.

     11.   "Download" means any duplication, copying, or replication, in whole or in part.

     12.   "Named Customers" refers to the following current or former customers of SAP TN: Abbot Laboratories, Abitibi-Consolidated Inc., Allianz of America, Bear, Stearns & Co., Berri Limited, Border Foods, Caterpillar Elphinstone, Distrubution & Auto, Fuelserv Limited, Grupo Costamex S.A. de C.V., Helzberg Diamonds, Herbvert Waldman, Honeywell International, Interbrew UK, Laird Plastics, Inc., Merck & Co., Metro Machines, Mortice Kern Systems Inc., National Manufacturing Company, NGC Management Limited, OCE-Technologies B.V., Perot Systems, Phelps Dodge, Ronis SA, Sandia Labs Federal Credit Union, Smithfield Foods, SPX Corporation, Stora Enso, Texas Association of School Boards, VSM Group AB, and Yazaki North America.

13.     "Person(s)" means, without limitation, any individual, corporation, partnership, limited partnership, or legal entity and includes the present and former officers, executives, directors, employees, attorneys, agents, representatives, and all other Persons acting or purporting to act on behalf of any of them, and any of their present or former parent corporations, subsidiaries, affiliates, divisions, predecessors, and successors in interest.

14.     To "Use" means to access, transmit, maintain, manage, store, or otherwise interact with.

15.     "Customer Contracts" means contracts and agreements with customers for the license of software programs and related technical support services, including, but not limited to Terms and Conditions, ordering documents, incorporated policies, and service agreements and any exhibits and addenda relating to such contracts and agreements.

16.     "Party" means each party to the Litigation.

17.     "Preservation" and "Preserve" are to be interpreted broadly to accomplish the goal of maintaining the integrity of all Documents, Data, and Tangible Things reasonably anticipated to be subject to discovery under the Federal Rules of Civil Procedure in this action. Preservation includes without limitation taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, degradation, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

18.     During the pendency of the Litigation, each Party shall Preserve Any and All Documents, Data, and Tangible Things within its possession, custody or control, relevant to any of the issues raised in Oracle's Complaint, including without limitation:

    a.  Any Software and Support Materials SAP has Used, Downloaded, or otherwise taken on behalf of any SAP Customer, including without limitation the Named Customers, and the individuals involved in all such Uses and Downloads.

    b.  SAP's Use of Customer Connection and Change Assistant in the name of, or Use of the log-in credentials of, any SAP customer, including without

3

limitation the Named Customers.

c. Any computers used by SAP TN's to access or connect through Customer Connection or Change Assistant and/or to Use or Download Oracle's Software and Support Materials, including without limitation the computers known as: CNU51405KW, CO-AGhosh-L01, COi808745L01, dcdevtestpc, dcdl01, dcdl02, dcdl03, dcdl05, dcdl06, dcdl07, dcdl09, dcdl10, dcdl11, dcdl12, dcdl13, dcdl15, dcdl16, dcdl17, dcdl18, DCDL19. dcdl20, dcjddev02, dcjdent02, DCTEMPDWLD01, hqawoodspc01, HQi809240L02, jd-dev03, L34217Z, LeasedDesktop27, tn-dl02, TN-DL03, TN-DL08, TNL-02, and tn-wts01.

d. SAP's network environment and architecture, including any internet protocol addresses, hardware (including server names and architecture), software, or other means used to (i) Use or Download from, or connect through, Customer Connection or Change Assistant; (ii) Use any materials Downloaded in the course of such access; or (iii) communicate through electronic mail or instant messaging within SAP TN or between SAP TN and SAP America, Inc. or SAP AG.

e. Any database or other storage device, method, or application by which SAP Uses Oracle's Software and Support Materials.

f. All patches, updates, fixes, or other software or code provided by SAP TN to any of SAP TN's customers since January 1, 2003.

g. What SAP has done with the Software and Support Materials that SAP has Used or Downloaded, including, without limitation:

   i. all copies made,
   ii. all customers or other third parties to whom SAP has provided Software and Support Materials that SAP has Used or Downloaded,
   iii. how SAP has been storing the Software and Support Materials

4

           that SAP Used or Downloaded, and how SAP is storing them now,

    iv.  how SAP has been regulating access to the Software and Support Materials that SAP has Used or Downloaded, and how access is regulated now,

    v.  who has had access to the Software and Support Materials that SAP has Used or Downloaded, and who has access now, and

    vi.  all SAP's plans for further Use of any Software and Support Materials.

h.  Information reflecting SAP's unauthorized access to, and taking of information from, Oracle's systems.

i.  SAP's Customer Contracts related to all of SAP TN's current or former customers.

j.  SAP's "Safe Passage" program.

k.  Oracle's losses related to SAP's unauthorized access to, and taking of information from, Oracle's systems.

l.  Customer Contracts related to former PeopleSoft, JD Edwards, and/or Siebel customers.

m.  Terms and conditions and/or other legal restrictions related to Customer Connection.

19.  During the pendency of the Litigation, if the business processes of any Party involve the routine destruction, recycling, relocation, alteration or mutation of Documents, Data, and Tangible Things within its possession, custody or control and relevant to any of the issues raised in Oracle's Complaint the Party must, to the extent practicable for the pendency of this order, either:

a.  halt such business processes; or

b.  sequester or remove such material from the business processes; or

c.  confirm the separate existence of complete and accurate duplicates or copies of such material that are suitable for inspection and/or production

|     |     |
| --- | --- |
| 1   | in later discovery if requested; or |
| 2   | d. arrange for the Preservation of complete and accurate duplicates or copies |
| 3   | of such material, suitable for inspection and/or production in later |
| 4   | discovery if requested. |

Notwithstanding the above, neither Party shall be required to alter any business process that affects only disaster recovery/backup tapes provided that information contained in the disaster recovery/backup tapes is used, and intended for use, solely for disaster recovery purposes.

20. During the pendency of the Litigation, no Party shall knowingly erase, alter, delete, or otherwise destroy any Document, Data or Tangible Thing within its possession, custody, or control that is relevant to the issues raised in plaintiff's Complaint without making complete and accurate duplicates or copies of such material, suitable for inspection and/or production in later discovery if requested, or confirming the separate existence of complete and accurate duplicates or copies of such material that are suitable for inspection and/or production in later discovery if requested. Each Party will retain its duplicates or copies of any Document, Data or Tangible Thing in the form in which the Document, Data or Tangible Thing is normally kept.

21. No Party shall knowingly transfer, sell, or otherwise dispose of any computer and/or computer equipment, including personal computers, servers, hard drives or other storage devices, that contain any Document, Data or Tangible Thing relevant to any of the issues raised in Oracle's Complaint, in any form, whether active, deleted, or fragmented, unless the Party has:

    a. first made or confirmed the separate existence of a complete and accurate duplicate or copy of such material that is suitable for inspection and/or production in later discovery if requested; or

    b. first given all other Parties a reasonable opportunity to inspect and copy the Document, Data or Tangible Thing before the computer and/or computer equipment is transferred, sold or otherwise disposed of by the Party.

22. This Preservation Order is without prejudice to the right of any Party to seek other

or further relief from the Court.

23. This Preservation Order shall not be construed as waiving any right to assert a claim of privilege, relevance, overbreadth, burdensomeness or other grounds for not producing material called for, and access to such material shall be only as otherwise provided by the discovery rules and other applicable laws.

24. In the event that any Person or Party violates or threatens to violate the terms of this Preservation Order, the aggrieved disclosing party may immediately apply to obtain relief against any such Person or Party violating or threatening to violate any of the terms of this Preservation Order. The Parties and any other Person subject to the terms of this Preservation Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Preservation Order.

25. The Parties may agree in writing to reasonable modifications of this Preservation Order.

26. This Order is made without prejudice to either Party seeking a further Order concerning any Document, Data or Tangible Thing, or other information felt to be entitled to Preservation.

The Court further ORDERS that the parties shall meet and confer in good faith concerning entry of a Final Preservation Order and shall submit a proposed Final Preservation Order within 30 days of entry of this Order.

IT IS SO ORDERED.


DATED:_____, 2007         _____
                                      The Honorable Edward M. Chen
                                      United States District Court Judge