Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Discovery Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | **CASE NO. 07-CV-1658 (MJJ)**<br><br>**JAMS Reference No. 1100053026**<br><br>**REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO 1** |

## JURISDICTION

The undersigned has been appointed as the Special Discovery Master pursuant to an order of United States District Judge Martin J. Jenkins, dated January 8, 2008. The jurisdiction of the Special Discovery Master is to hear all discovery disputes and report and make recommendations to the Court with respect to the resolution of such disputes; order of January 8, 2008.

## DISCOVERY HEARING No. 1

The parties each filed discovery motions by letters to the undersigned dated January 28, 2008, and filed oppositions to one another's motions on February 7, 2008. The motions were heard on February 13, 2008 and were submitted for decision. This is the report and recommendations of the Special Discovery Master to the Court with respect to those motions.

The Court should note that the discovery disputes were submitted to the undersigned primarily by subject matters. While some specific discovery requests were cited in the motions and oppositions, the Master did not receive copies of the actual discovery requests and responses until the day of the hearing. The parties apparently concluded that framing this first group of motions by subject matters better served progress in the case. The Master agrees and has no objection to the presentation of discovery disputes by subject matters or categories. But the report and recommendations of the Master must therefore necessarily also be by subject matters or categories. And the Master's recommendations in such a form may still present some problems in the application of those general recommendations to specific discovery requests. That is not a reason not to proceed as the parties have suggested; but it should merely be noted that the application of such decisions may later require another level of attention. The Master is discussing the motions according to the categories presented, but in an order which the Master believes is logical, dealing first with the discovery problems regarding the basic facts of the case. That is, what information was allegedly downloaded by defendants; how can it be determined whether the downloading was legally permissible or impermissible; and what use was made of the downloads?

The time frame for the discovery should be defined. The Master has been advised that the relevant time period has been identified as January 1, 2004 to date. The Master has not seen a document that so defines the time, but accepts the representations made by the parties.

The Master is advised that plaintiffs have produced certain logs that are from September 2006 onward, but have no logs for the period January 1, 2004 through September 2006. Therefore, certain information that might logically be produced from the records of Oracle might for the time period up to September 6, 2006 have to come from the records of defendants.

## DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS # 44-47 AND INTEROGATORIES #4 & 7

These requests seek further information regarding what was downloaded from Oracle's system. If this information is now available on Oracle's system, answers should logically come from Oracle's information base rather than from defendants. The briefing has resulted in some substantial agreements on the scope of this production.

1. Oracle has agreed to produce its Internet log files which recorded access to and downloadings from Oracle's system. It earlier agreed to do that with respect to 69 previously identified customers of TN, and has subsequently agreed to produce them for all of the remaining TN customers.

2. Oracle has agreed to produce the contract files for each customer, in so far as they contain documents reflecting the extent of the customer's license of Oracle software or the customer's support rights to various programs. Oracle has produced these files for the 69 identified customers, and again agrees to produce them for all of the remaining TN customers. The Master recommends that the definition of the documents to be produced be expanded to include licenses, service agreements, and whatever other Oracle records that can identify the customer's right to access the Oracle system.

3. The Master believes that the only remaining dispute in this category concerns the extent of Oracle's obligation to produce product mapping information; that is, documents showing what software applications were licensed to what customers,

and for what products. Oracle has agreed to produce communications between the primary sales contacts and the customers; internal records tracking customer losses to defendants; and its current best information about the reasons for those losses. Defendants want more detail in the mapping information, primarily to relate the information directly to defendants' sub-files, and the connections between the sub-files, the products and the contract. Defendants represents that they would otherwise have to do that work themselves on a one-by-one basis on each sub-file. On the other hand, Oracle represents that it does not presently have a system which would allow it to map to the sub-files; but rather Oracle would have to do the same one-by-one sub-file analysis as defendants would have to do.

Both sides appear to concede the relevance of this information, but neither side has a solution regarding access.

The Master therefore recommends that Oracle be directed, at its expense, to send an engineer, who may be accompanied by an Oracle attorney, to the premises of defendants to work with one of defendants' engineers to see if a method of access can be developed. That should be done forthwith. In the meantime, defendants' motion in this respect should be denied without prejudice, except as to material Oracle has agreed to produce.

Subject to the limitations discussed above, that discovery from Oracle to defendants should perform the function of identifying what was downloaded from Oracle's system by defendants or the customers, and should identify the written material by which the parties or the trier of the fact can determine whether the downloading was legally proper or improper (except for the necessary copyright analysis). The scope of the claims in this case should thereby be identified.

### ORACLE'S REQUEST FOR INFORMATION ABOUT THE USE OF THE DOWNLOADS

Oracle seeks further answers to numerous interrogatories, identified on page 5 of its motion of January 28th. In summary, the interrogatories seek to determine that after Oracle's software was downloaded, what happened to it? That is, how was it stored on defendants'

system; was it transmitted to the customers or others; how was it used; and where the information now resides. Those inquiries are logical next steps after identification of the improper downloads above. There is no doubt of the relevance of those interrogatories. That is, Oracle seeks to trace what happened to its information and who used it to do what.

Defendants have given some general narrative response to that inquiry. But its primary response is the production of a database to Oracle, essentially contending that the database is a permitted response under Federal Rule of Civil Procedure 33(d). Oracle points out two problems with that response. One is that not all of the information necessarily resides on that database. Some of the information is apparently available in defendants' emails, defendants' "onboarding" documents, and from its employees. The second problem is that Oracle contends that it cannot access that database from the information it has been given, so the database is not usable and is not in a proper Rule 33(d) response.

In regard to the first problem, it is undoubtedly true that all of the requested information may not be contained in the produced database. However, the database should contain a great deal of the necessary information. The Master recommends that defendants be require to continue their search for emails and onboarding documents for responsives to the inquiry, and be required conduct live interviews. However, pending completion of Oracle's access to the database, the Master recommends that no deadline as yet be set for defendants to do that additional searching.

With respect to the database, the present issue is that defendants contend that the information which they have provided is easily usable by Oracle; but Oracle contends that it cannot find a way to access the database to find the information which it has requested. This is obviously not a problem which either this Master or the Court can resolve, but is rather one which must be solved by the people who are technically familiar with the database and how to access it. A party using Rule 33(d) to simplify its discovery obligations has a responsibility to the Court and to the other party to produce that information in a manner which is at least accessible and usable. The Master therefore recommends that defendants be compelled to send, at their expense, an appropriate engineer, together with an attorney if defendants desire, to the offices of Oracle to meet with Oracle's engineers about how to access the database. The purpose of the meeting is <u>not</u> to discuss the information, or to state contentions with respect to it, but is

simply to assist Oracle to <u>find</u> the information in the database which has been provided. This should be done forthwith, since it is essential to so much of the further discovery. If defendants wish to avoid that expense and time consumption, they can instead provide Oracle with a further and more precise road map on where and how to find the relevant information on the database. Defendants' further request for narrative answers to some of its questions should be deferred until Oracle has reasonable access to the database and can determine whether the answers are sufficiently contained on that database.

## DOCUMENTS SUBMITTED TO UNITED STATES ATTORNEY

Requests numbers 55 and 84 by Oracle seek to compel defendants to produce documents relating to governmental investigations of the changes in this case. The Special Master is initially limiting his consideration of these requests to documents which were provided by defendants to the United States Attorney in response to a subpoena duces tecum.

The requested documents are certainly relevant, because they specifically refer to documents relating to the allegations in this action. And in a press release defendants linked the governmental request for information with this action.

Defendants' opposition is based on Federal Rule of Criminal Procedure No. 6 (e), arguing that such production would disclose grand jury proceedings. The Special Master disagrees. Defendants are not being requested to produce anything done by a grand jury, anything said during a grand jury proceeding, any grand jury testimony, or any information regarding grand jury witnesses, testimony, or proceedings. What is at issue here are simply documents which defendants assembled for production <u>to</u> the United States Attorney. The request deals with information flowing <u>to</u> the grand jury, and not with anything that discloses what was done within the grand jury. Such a request is not protected by Rule 6 (e); <u>see United States vs. Reyes</u>, 239 F.R.D. 591, 602-3 (N.D. 602-603, Cal 2006); <u>United States vs. Dynavac</u>, 6 F 3rd 1407 (9th Circuit 1993). While these requests may be somewhat duplicative of other documents being produced by defendants, the information supplied to US Attorney is already assembled, organized, and presented, so additional production does not cause defendants any undue burden.

The Special Discovery Master therefore recommends that this request be granted.

## THIRD PARTY SUPPORT

Defendants seek extensive documents and interrogatory information concerning support of Oracle's products by third parties. They want detailed information regarding the third parties and their contractual relationship to Oracle. This request is tangential at best.

The downloading in this case was done either by the customers themselves or by TN as the support company representing those customers. What is the relevance of Oracle's relationships with <u>other</u> third party support. That information does not appear to be directly or presently relevant. Defendant argues that it will have something to do with damages, and with possible abandonment of some copyrights by Oracle. However, such extensive third party discovery does not now appear to be justified by those narrow potential arguments. Defendants also argue that the third party support contracts may shed some light on Oracle's license agreements with TN or the customers. But at present we do not know what language of the license agreements, or other documents granting consent to the customers to download, will be in dispute in this case.

The Special Discovery Master therefore recommends that these requests be denied, without prejudice, until a later showing of relevance and appropriateness.

## COPYRIGHT INFORMATION

Defendants want to see all of the "things" which Oracle claims to be copyrighted. It seems simple enough that a party charged with copyright infringement has a right to see what was copyrighted. However, in this industry the "thing" is generally code, which is incorporated into various expressions. The first amended complaint, in paragraph 99 does identify the works claimed to be copyrighted, together with the dates of registration and the registration numbers. But the later allegations of infringement in the comlpaint refer to Oracle's copyrights <u>generally,</u> and do not specifically identify which of the listed copyrights it claims have been infringed.

Oracle states that it is willing to produce identifiable copyrighted material, but does not want to produce its so called "current development environment", on the ground that it goes beyond the copyright issues and is cumulative of what Oracle will to produce. Oracle is willing

7

to produce the copyright material in the form of individual downloads, cumulative updates, and initial releases, but not the current development environment.

The Discovery Special Master agrees with Oracle's analysis that the production of the current development environment would be duplicative of the first three. The Master recommends to the Court that Oracle's production be limited to individual downloads, cumulative updates, and initial releases.

However, this is really not the end of the necessity for Oracle to produce the copyrighted material which is alleged to be infringed. As a starting point, the Discovery Special Master recommends that Oracle be compelled to identify the specific copyrights from paragraph 99 of the first amended complaint, which it contends were infringed by the improper use of the downloaded information.

## 2004 ANTITRUST CASE

Defendants ask, although not presently encompassed within a specific discovery request, that in answering the discovery, Oracle search for information which it gathered and produced in the 2004 antitrust case pertaining to Oracle's acquisition of People Soft.

The Special Discovery Master recommends that this request be denied. The subject matter of the two proceedings, the 2004 antitrust proceeding and this downloading case, are different. While some information helpful to this case might be included in the antitrust material, it does not presently justify the burden of searching that information base. It is therefore recommended that the request be denied, without prejudice.

## DAMAGES

Defendants have propounded discovery requests on the subject of damages. Oracle has agreed to produce certain damages information (see Oracle letter of February 7, 2008 pages 10-11) but declines to produce certain other information at the present time.

The Special Discovery Master recommends that Oracle be compelled to produce the information which it has agreed to produce in the letter identified above. However, the Special

Discovery Master recommends that the remaining discovery requested on the subject of damages be deferred.

The parties presently have a lot to do in responding to each other's discovery requests on the issues of liability. And some of those responses might impact the scope of the damages claims and defenses. The Special Discovery Master therefore recommends that these requests be deferred until later in the discovery procedures.

In that regard, the Special Discovery Master also recommends that the procedures scheduled in the pre-trial order of September 25, 2007 be modified to include dates for the production of written discovery on the subject of damages. That discovery could be scheduled sometime before the supplying of expert reports.

The Special Discovery Master submits this Report And Recommendations to the District Court pursuant to paragraph 3(a) of the stipulation and order of January 8, 2008.

Dated: February 22, 2008

Hon. Charles A. Legge (Ret.)
Special Discovery Master

# PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Oracle Corporation, et al. vs. SAP AG, et al.
Reference No. 1100053026

I, Melissa Ornstil, not a party to the within action, hereby declare that on February 26, 2008 I served the attached Report and Recommendations Re: Discovery Hearing No. 1 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, via U.S. Mail, at San Francisco, CALIFORNIA, addressed as follows:

Christopher B. Hockett Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111 USA

Robert A. Mittelstaedt
Jones Day
555 California St.
26th Fl.
San Francisco, CA 94104 U.S.A.

Tharan Gregory Lanier Esq.
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303

Scott W. Cowan Esq.
Jones Day
717 Texas
Suite 3300
Houston, TX 77002-2712

Jason S. McDonell Esq.
Jones Day
555 California St.
26th Floor
San Francisco, CA 94104 U.S.A.

Zachary J. Alinder Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111

Geoffrey Howard Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111

Dorian Daley Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070

Jennifer Gloss Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070

- Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102 USA

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on February 26, 2008.

*Melissa Ornstil* (signature)

Melissa Ornstil
JAMS The Resolution Experts
melissaornstil@jamsadr.com