Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SAP AG, et al.,<br><br>　　　　Defendants. | Case No. 07-CV-1658 PJH<br><br>**DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO. 2** |

Defendants TomorrowNow ("TN"), SAP America, and SAP AG (together, "SAP") object to the Special Master's March 19, 2008 Report and Recommendation, and April 4, 2008 amendment thereto, insofar as it: (1) recommends that Plaintiff Oracle's search for and production of documents in response to Request for Production ("RFP") Nos. 25 and 26 be limited to documents Oracle collected in response to other requests, despite the admission of Oracle's counsel that it did not have RFP Nos. 25 and 26 in mind when it collected those documents; and (2) requires Defendant SAP to produce by April 15 the documents of every custodian in a proposed universe of thirty SAP custodians, which is how Oracle contends the Special Master's amended recommendation should be interpreted. This Court reviews the Special Master's recommendation *de novo*. Fed. R. Civ. P. 53(f)(4).

## BACKGROUND

Oracle filed its original complaint on March 27, 2007, and its First Amended Complaint ("FAC") on June 1, 2007. The FAC alleges copyright infringement (17 U.S.C. § 106) and various other civil claims in connection with TN's third-party support services for Oracle's PeopleSoft and J.D. Edwards products.

At issue are RFP Nos. 25 and 26 to Oracle. These requests seek documents concerning communications between Oracle and current or former TN employees about TN or SAP. Exh. A.[1] The requested documents are relevant to a number of defenses, including consent, laches, and statute of limitations.

Oracle objected to these requests on relevance and burden grounds. Exh. A. On February 19, 2008, after an extensive meet and confer effort, TN moved to compel. On February 25, 2008, Oracle opposed the motion, and a hearing was held on March 4, 2008. On March 19, 2008, the Special Master issued a Report and Recommendation recommending that Oracle's production in response to these requests be limited to documents located in the files of employees from whom Oracle has collected documents in response to other requests. Exh. B at 6-7. In making this recommendation, the Special Master ignored TN's concern that the employees from whom Oracle

---

[1] All referenced exhibits are attached to the Declaration of Jason McDonell ("McDonell Decl.") filed herewith.

has collected documents for other purposes are not necessarily the employees likely to have documents responsive to these requests. Exh. C at 92:25-93:15. As Oracle's counsel admitted, it did not have these requests in mind when it identified the group of employees from whom it would collect documents. *Id.* at 97:7-9 ("We've never represented that we identified these custodians in an effort to respond to this request. We said no to this request."). The Special Master's recommendation is based on his view that the requests are overbroad, but his recommendation ignores TN's reasonable proposals for narrowing the requests. Exh. B at 6-7; *see also* Exh. C at 86:16-87:18. TN objects, therefore, to the Special Master's recommendation.

Also at issue is the interpretation of the Special Master's recommendation, as amended on April 4, that "the information from the priority custodians of the SAP Companies" be produced by April 15. Exh. D at 2. Oracle contends that this requires SAP to produce information from *all* thirty individuals identified as the proposed *total universe* of SAP custodians, including those identified after the March 4 hearing. McDonell Decl. ¶ 8-10. Not only is this impossible to do, given the volume of data involved, but it is inconsistent with the language of the amended recommendation, as well as the positions of the parties and the Special Master's statements at the March 4 hearing. *See, e.g.*, Exh. D at 2 ("The priority custodians have been identified in correspondence between the parties."). The Special Master specified that his amended recommendation was entered *nunc pro tunc* and the time for SAP to object would run from the date of the original March 19 recommendation. *Id.* SAP has thus included an objection to the amended recommendation here in order to preserve its rights in the event that the parties are unable to resolve this issue informally.[2]

## ARGUMENT

### I. The Special Master's Recommendation is Arbitrary and Prejudicial.

At the March 4 hearing, Oracle's counsel represented that it would search for documents responsive to RFP Nos. 25 and 26 among the documents it has collected in response to other requests, but would make no other effort to find responsive documents. Exh. C at 94:1-7 ("As a

---

[2] We do not understand Oracle to contend that the amended recommendation requires TN to produce documents beyond the sixteen identified priority custodians. If, however, Oracle does so contend, then TN objects for the same reasons.

compromise, we said that the custodians we have identified and collected from that we already have where there is no incremental expense and effort required to go out and collect material, we'll search them and we'll produce if there's communications that we can determine as to a current or former TN employee."). This approach does not satisfy Oracle's obligation to make a reasonable search for documents responsive to these specific requests. *See, e.g., Kaur v. Alameida*, No. CV-F-05-276-OWW, 2007 U.S. Dist. Lexis 40138, * (May 15, 2007 E.D. Cal.) (reminding parties of "their duty under Rule 34 to conduct a diligent search and reasonable inquiry in [an] effort to obtain responsive documents."). As noted above, Oracle's counsel admits that it did not have these requests in mind when it decided whose documents it would collect. Exh. C at 97:7-9. Nor, as TN's counsel argued at the hearing, is there any reason to believe that the employees whose documents were collected for other requests are the employees likely to have the documents responsive to these requests. *Id.* at 92:25-93:15. Oracle's proposal is not a reasonable or logical means of satisfying its obligations under the discovery rules, but rather an arbitrary approach designed to avoid cost or effort by Oracle rather than to discover relevant and responsive information. The Special Master's adoption of this approach in his recommendation is prejudicial to TN. While he did not expressly preclude TN from revisiting this issue if additional documents are discovered that further demonstrate the relevance of this line of inquiry, the arbitrary nature of his recommendation significantly reduces TN's chances of discovering such documents.

## II. The Requested Documents are Relevant and Necessary to TN's Defenses.

Communications between Oracle and TN are relevant to a number of defenses, including consent, laches, and statute of limitations. For example, TN has reason to believe that Oracle employees and, in the past, employees of its PeopleSoft and J.D. Edwards subsidiaries, have referred Oracle customers to TN for technical support, including through direct communications with TN. If so, that would be relevant to establish Oracle's knowledge of, and consent to, the TN customer support activities at issue in the complaint. In its motion to compel, TN described an instance in 2004 in which PeopleSoft consented to one of its customers providing software to TN. Exh. E at 4. Oracle disputes that the software provided to TN is the same as the software

materials at issue in this case. *See, e.g.,* Exh. C 90:6-91:10. Even if this were true, however, TN need not make such a showing to obtain discovery of other similar communications. Information is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (b)(1). The fact that PeopleSoft knew of, and consented to, the provision of software to TN for the purpose of providing third-party support to PeopleSoft customers in at least one instance demonstrates the reasonableness of discovery seeking similar communications. The Special Master acknowledged as much in his report. Exh. B at 6-7 ("At oral argument, it appears that defendants' primary interest is in communications which may have expressed plaintiffs' consent to defendants to use the information at issue. That is of course a relevant subject matter, if such documents exist.").

Other kinds of communications between Oracle, or its subsidiaries, and TN are similarly relevant. For example, a cease and desist letter from PeopleSoft to TN indicates that Oracle has been aware of TN's third-party support activities since at least 2002. *See* Exh. F. Communications such as these are relevant to TN's laches and statute of limitations defenses. Moreover, the existence of such communications between PeopleSoft's customer support personnel and TN and PeopleSoft's legal personnel and TN belie Oracle's claim, in its opposition to TN's motion and at the March 4 hearing, that no one at Oracle would have had any business purpose for communicating with a TN employee. *See, e.g.,* Exh. C, 91:10-22.

### III. TN Has Proposed Reasonable Ways to Narrow the Requests.

During the meet and confer process and at the March 4 hearing, TN's counsel proposed reasonable ways to narrow RFP Nos. 25 and 26. These include limiting the requests to communications with TN employees, limiting the subject matter to TN's business activities, limiting the search to Oracle employees who have reason to communicate with TN, and running electronic searches on the documents of those employees for specific terms such as "TomorrowNow." Exh. C at 86:21-87:18. The Special Master ignored these proposals, finding the "limited relevance" of the requested documents insufficient to support the requests. As the discussion above demonstrates, however, there are employees and departments at Oracle who have had reason to communicate with TN, their communications are relevant to TN's defenses,

and TN should be permitted to discover them. The Special Master's adoption of Oracle's arbitrary proposal is not sufficient to provide TN with this necessary discovery. There are reasonable search methods that Oracle could use to find these communications and it should be required to do so.

**IV.     Oracle's Interpretation of the Amended Recommendation is Incorrect.**

Oracle's contention that the amended recommendation required SAP to produce documents for *all* proposed SAP custodians, even those identified after the March 4 hearing, is not supported by the record. At the March 4 hearing, SAP's counsel said that SAP could produce documents for some but not all SAP custodians by the end of April. Exh. C, 56:8-24. The Special Master responded that he would give SAP until April 15. *Id.* Subsequently, in his written recommendation, the Special Master stated that "the information from the SAP Companies will be supplied by April 15, 2008." Exh. B at 4.

On March 21, 2008, SAP submitted a letter to the Special Master requesting clarification of the meaning of "information," and stating that while SAP could produce the documents of some "key" SAP custodians by April 15, it was not possible, because of the enormous volume, to produce all SAP documents by that date. Exh. G.

On April 4, the Special Master issued his amended recommendation stating that: "[T]he information from the priority custodians of the SAP Companies will be supplied by April 15, 2008. The priority custodians have been identified in correspondence between the parties. The timing of the production should give first priority to information relevant to the depositions of the soon-to-be deposed Rule 30(b)(6) witnesses." Exh. D at 2. SAP interprets this to mean the eighteen custodians identified by Oracle as of the March 4 hearing, as discussed at the hearing and in its March 21 letter to the Special Master, including those relevant to the 30(b)(6) topics. Those were the only priority custodians "identified in correspondence between the parties" as of the date of the hearing. McDonell Decl. ¶ 7. Certainly, it cannot mean, as Oracle now contends, the additional custodians identified by Defendants subsequent to the hearing as the proposed total universe of SAP custodians. McDonell Decl. ¶ 8-10.

In addition to the huge number of TN documents already produced, Defendants are working diligently to produce the key SAP custodians' documents.[3] Defendants are also attempting to resolve this dispute informally with Oracle's counsel. In the event that it cannot be resolved, however, and to preserve its rights, SAP objects to the Special Master's amended recommendation to the extent that it requires SAP to produce all SAP custodians identified by Oracle as of the March 4 hearing plus the additional custodians proposed by Defendants after the hearing. The volume of documents involved precludes SAP from making such a production.

## CONCLUSION

For the foregoing reasons and based on the record herein, the Special Master's recommendation that Oracle's production in response to RFP Nos. 25 and 26 be limited to documents collected in response to other requests should be rejected.

Dated: April 8, 2008

JONES DAY

By: /S/ Jason McDonell
Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

---

[3] At Oracle's request and based on the allegations in the complaint, which focus on TN, Defendants has prioritized the production of TN documents. To date, Defendants have produced almost 1.7 million Bates-numbered pages of TN documents, as well as over 6 terabytes of electronic data from TN. McDonell Decl. ¶ 12.