BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com


DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

JONES DAY
ROBERT A. MITTELSTAEDT (SBN 060359)
JASON McDONELL (SBN 115084)
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com

JONES DAY
THARAN GREGORY LANIER (SBN 138784)
JANE L. FROYD (SBN 220776)
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

JONES DAY
SCOTT W. COWAN (Admitted *Pro Hac Vice*)
JOSHUA L. FUCHS (Admitted *Pro Hac Vice*)
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP America, Inc., and
TomorrowNow, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br>Defendants. | Case No. 07-CV-1658 (PJH)<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>F.R.C.P. 16 and Civil L.R. 16-10<br><br>Date: April 24, 2008<br>Time: 2:30 p.m.<br>Place: Courtroom 3, Floor 17<br>Judge: Honorable Phyllis J. Hamilton |

Plaintiffs Oracle Corporation, Oracle USA, Inc. and Oracle International

Corporation (collectively, "Oracle" or "Plaintiffs") and Defendants SAP AG, SAP America, Inc.

("SAP America" ) and TomorrowNow, Inc. ("TN" and collectively with SAP AG and SAP

America, "Defendants," and together with Oracle, the "Parties") jointly submit this Case

Management Conference Statement in advance of the April 24, 2008 Case Management

Conference.

### 1. Jurisdiction And Service

This action arises under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq*., and

the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq*. Accordingly, this Court has

subject-matter jurisdiction over this action pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331,

and 28 U.S.C. § 1338. This Court has supplemental subject-matter jurisdiction over the pendent

state law claims under 28 U.S.C. § 1367. The Parties are not aware of any issues with respect to

personal jurisdiction or venue. All named Defendants have been served and have answered the

First Amended Complaint. Oracle is not currently aware of the names or capacities of any Doe

Defendants, but will add and serve any such Defendants promptly upon discovering their

identities. Defendants reserve the right to challenge any such proposed amendment.

### 2. Facts

#### A. Oracle's Statement

*Initial Claims.* This case involves a scheme of copyright infringement, theft,

interference and unlawful business practices that goes to the core of SAP's and Oracle's business

and their competition for customers. Oracle brought this action one year ago, after it uncovered

massive unlicensed downloading from Oracle's customer support website by a recently-acquired

subsidiary of its largest competitor, SAP. As alleged in the First Amended Complaint ("FAC"),

those downloads were then used to provide support to Oracle customers at half-price so that they

could be taken from Oracle over to SAP's software platform. Those claims by themselves are

significant in scope and nature, involving at least dozens of customers and over ten thousand

unauthorized downloads.

*Amended Claims.* Based on recent discovery, Oracle soon will file a Second

Amended Complaint ("SAC").  In the hopes of securing Defendants' agreement to this filing, Oracle has already provided them with a draft and will provide the Court a copy of that draft for *in camera* review if desired.[1]  The SAC will reveal a pattern of unlawful conduct that is different from, and even more serious than, the mass downloading that was the primary focus of the FAC.

The SAC will make two important changes in Oracle's allegations, both of which originate from evidence uncovered in preliminary Rule 30(b)(6) depositions of TN employees over the past several months.

First, the unauthorized downloads featured in the FAC are just an initial piece of an overall illegal business model at TN.  This business model relied on the theft and use of infringing copies of Oracle's **underlying software applications**, not just the mass-downloaded Oracle support materials.  TN warehoused these copied software applications as "generic software environments" and used them as a "sandbox" to service other customers, train its employees, and create fake "SAP" branded fixes, updates and related documentation for distribution.  Through this process, TN made thousands of copies of Oracle's software, and distributed thousands of infringing fixes, updates and related copyrighted documents.

Second, it appears that SAP AG and SAP America knew – at executive levels – of the likely illegality of TN's business model from the time of their acquisition of TN and, for business reasons, failed to change it.

This expansion of the allegations will have a significant impact on the prosecution of the action.

*Remaining Discovery.*  SAP stated in the initial Case Management Conference Statement that discovery in this case would be "typical."  It is not.  To date, the discovery in this case has involved immense computer records, including terabytes of data, that require weeks to simply copy, not to mention produce, review and digest.  This case also involves potentially hundreds of third parties, thousands of computer software environments, and tens of thousands

---

[1]  Because information contained in the draft SAC is Highly Confidential and Confidential, any public filing will require sealing.

of distinct downloads of Oracle Software and Support Materials. Even without considering the amended claims, the large scope of discovery has already required both sides to hire small armies of contract attorneys to review the millions of pages of documents collected for possible production. The vast amount of electronic evidence has already required constant attention from numerous forensic experts on both sides for discovery to proceed efficiently. That exchange of technical expertise is still being negotiated, and may take months to complete according to Defendants.[2]

At the same time, the Parties have engaged in an intensive motion to compel schedule before the Special Discovery Master assigned to the case, the Honorable Charles A. Legge (Ret.), the end result of which is that most of the preliminary discovery blocks have cleared and the Parties are ready to begin deposition discovery in earnest once they produce priority documents. However, the production of these documents is also taking an extraordinary amount of time. Defendants' counsel chose to first focus on production from TN. At this point, document production is only now beginning for two Defendants and is not close to being done even for TN. Not willing to wait for full document discovery under the current schedule, Oracle has taken eight days of foundational Rule 30(b)(6) depositions (some of which have offered the basis for Oracle's amended claims); initial 30(b)(6) depositions from SAP AG and SAP America are currently scheduled and more will be required. The Parties will require numerous employee depositions from each other and customer and other third party depositions in disparate locations around the United States and in various foreign jurisdictions, many of which will (unless SAP agrees otherwise) require time-consuming Hague Convention discovery protocols. The subjects are vast and complicated, including the development, maintenance and use of these thousands of customer support environments by Defendants – none of which has yet been produced because the physical size of these electronic records is so great. Judge Legge has ordered the Parties to

---

[2] Defendants propose providing Oracle remote access to these additional servers rather than providing Oracle images of them. This is because there is so much Oracle software on Defendants' computer systems, that it could take them several months – or longer – just to make a copy of these environments so that Oracle can begin to review and analyze them.

1  meet and confer on these issues, and the Parties have done so, with limited success because of

2  the uncertainty of the discovery deadlines.

3       In short, the new claims significantly exceed the size and scope of the initial

4  claims. Getting to the bottom of them will require additional significant expansion of the current

5  case schedule and discovery limits. *See* Sections 9 and 19 below.

6       **B.**     **Defendants' Statement**

7       Ignoring Judge Jenkin's admonitions, Oracle continues to submit hyperbolic

8  argument in the guise of a CMC statement. CMC statements are not meant to be closing

9  arguments or press releases, and this particular section of this filing is supposed to be the "facts"

10  section.

11       Oracle sued SAP and TomorrowNow last year, alleging that TomorrowNow's

12  downloading of software and support materials on behalf of its customers violated those

13  customers' licenses with Oracle (licenses that Oracle still has yet to completely produce more

14  than a year after this case was filed). This case is at bottom a commercial dispute between fierce

15  competitors. TomorrowNow has openly provided "third party" support for users of Oracle

16  software for many years, both before and after its acquisition by SAP. TomorrowNow's

17  customers are entitled to use their Oracle-licensed software and materials properly obtained from

18  Oracle's website to maintain that software. TomorrowNow performs that maintenance service

19  for its customers, allowing them to focus their personnel on their core business. It should be no

20  surprise to anyone, including Oracle, that TomorrowNow has accessed Oracle software in

21  providing support to users of that software.

22       As Judge Jenkins recognized, this case raises three basic questions:

23       (1) What Oracle software did TomorrowNow access in providing support;

24       (2) Do the licenses between Oracle and its customers prevent TomorrowNow

25  from access to that software to provide third party support; and

26       (3) Was Oracle harmed by any impermissible access (and, if so, how much)?

27       Defendants address Oracle's assertions regarding discovery, amended pleadings

28  and scheduling in the appropriate sections below. And, as explained further below, the pending

4

Case Management Conference presents an opportunity to impose a structure that will compel Oracle to identify the key disputed elements of its claims. Oracle's position regarding the alleged "facts" in dispute below, highlights the need for such structure.

### 3. Facts In Dispute

#### A. Oracle's Position

Defendants' Answer, filed on July 2, 2007, partially admitted certain allegations by Oracle, and Oracle expects that Defendants' Answer to the forthcoming Second Amended Complaint will also admit many of the allegations. However, a substantial number of disputed factual issues remain related to the alleged access to, downloading of, copying and competitive misuse of Oracle's intellectual property, including but not limited to:

- The extent to which the Software and Support Materials were accessed, taken and used "inappropriately" as described by SAP AG's CEO during Conference Calls on July 2-3, 2007 or beyond the scope of any applicable license;

- Whether SAP can avoid being bound by the terms of use, license agreements and other agreements associated with Oracle's customer support website and the underlying Oracle software applications;

- The extent to which SAP involved customers in the downloading or further use of the Software and Support Materials or the underlying Oracle software applications;

- The extent to which SAP AG and SAP America were involved, directly or indirectly, in accessing, downloading or using any Software and Support Materials or any underlying Oracle software applications;

- The extent to which SAP AG or SAP America knew, before, during or after the acquisition of TN, that TN engaged in illegal downloading of Oracle's Software and Support Materials and misuse of the underlying Oracle software applications as part of its "business model;"

- The extent of any breach of any SAP or SAP AG policies allegedly put in place to assure that no confidential or copyrighted material of Oracle reached SAP AG or SAP America;

- The extent to which the Defendants' access, downloading and use of Oracle's Software and Support Materials and the underlying Oracle software applications allowed SAP to compete more effectively against Oracle and interfere with Oracle's customer relationships;

- Whether the Defendants had authorization, permission or other right to access Oracle's computer systems, or exceeded any such authorization, permission or other access right;

5

- Whether the Defendants intended to defraud Oracle through their access to Oracle's computer system;

- Whether the Defendants knowingly caused the transmission of a program, information, code or command and as a result caused damage to Oracle's computer system;

- Whether the Defendants knowingly and fraudulently accessed and used Oracle's computer services without permission;

- Whether the Defendants knowingly and fraudulently accessed, took, copied or made use of programs, data or files from Oracle's computer system without permission;

- Whether the Defendants accessed, provided a means of access or assisted in providing a means of accessing Oracle's computer system causing damage to Oracle;

- The extent to which Defendants created and used derivative works from Oracle's Software and Support Materials and the underlying Oracle software applications;

- Whether the Defendants had authorization, permission or other right to copy, create derivative works from (or using), distribute, reproduce or publicly display Oracle's Software and Support Materials or the underlying Oracle software applications;

- The extent to which the Defendants controlled, directed, induced or materially contributed to the copying, distribution, public display or creation of derivative works from (or using) Oracle's Software and Support Materials or any underlying Oracle software applications;

- Whether the Defendants used Oracle's Software and Support Materials or underlying Oracle software applications without being the authorized and designated Oracle technical support contact, without a legitimate business purpose or in ways other than in the furtherance of a relationship with Oracle;

- Whether the Defendants interfered in Oracle's expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software;

- The extent to which the Defendants took commercial advantage of Oracle's investment in its Software and Support Materials or any underlying Oracle software applications;

- Whether the Defendants intentionally interfered with Oracle's use or possession of its computer systems, including Customer Connection, causing damage to Oracle's computer systems; and,

- The extent of damages, including punitive damages, owing to Oracle arising from the Defendants' conduct as alleged in the operative Complaint.

**B. Defendants' Position**

Oracle's statement of disputed issues is misleading. Oracle recites essentially every element of every one of its claims as a factual dispute, ignoring that its repetitive claims all boil down to the same basic issues -- what was allegedly copied; was that copying permissible; how was Oracle harmed? Those are the factual issues in dispute.

**4. Legal Issues In Dispute**

Subject to change based on the allegations in the forthcoming SAC, the following legal issues are in dispute:

- Whether Defendants or any one of them have engaged in copyright infringement;

- Whether Defendants or any one of them have violated the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5));

- Whether Defendants or any one of them have violated the Computer Data Access and Fraud Act (California Penal Code § 502);

- Whether Defendants or any one of them have and if so breached contractual obligations to Oracle;

- Whether Defendants or any one of them intentionally or negligently interfered with Oracle's prospective economic relationships with its current and/or potential customers;

- Whether Defendants' alleged access to Oracle's computer systems through Customer Connection constitutes trespass to chattels;

- Whether Defendants or any one of them have been unjustly enriched, and in what amount, through the activities alleged in the First Amended Complaint;

- Whether Oracle has been damaged, and in what amount, by Defendants' activities alleged in the First Amended Complaint;

- Whether Defendants have any defense to the allegations in the First Amended Complaint, including through any argument that their activities are permitted by any agreement; and,

- Whether the materials as to which Oracle claims copyright protection were properly copyrightable, properly and timely registered, and properly asserted and/or owned by Oracle.

**5. Motions**

**A. Oracle's Position**

If Defendants will not stipulate to the filing of Oracle's SAC, Oracle will bring a

1  motion to amend promptly.  Further, Oracle expects that it will need to bring further discovery

2  motions before Judge Legge to resolve discovery disputes as they arise in the future.  The Parties

3  have stipulated to have a discovery hearing before Judge Legge every three weeks, a schedule

4  that has effectively kept discovery progressing.  If this Court elects to continue the use of the

5  special master process (which Oracle strongly encourages), then Defendants would like to

6  change this schedule to once a month, which Oracle is willing to do so long as the case schedule

7  is expanded as it requests so as to allow adequate time for resolution of discovery disputes.

8  Finally, Oracle may bring motions for summary judgment or summary adjudication at an

9  appropriate time after sufficient discovery has been taken.

10              **B.      Defendants' Position**

11              Defendants will evaluate Oracle's proposed amended complaint once Oracle

12  commits to a final version.  Defendants' position regarding management of discovery disputes is

13  set forth below.  Defendants' objections to the first and second discovery orders are pending.

14  Defendants may bring dispositive motions when Oracle provides additional discovery and/or

15  files its proposed amended complaint.

16      **6.      Amendment Of Pleadings**

17              Oracle filed the operative FAC on June 1, 2007.  Defendants answered on July 2,

18  2007.

19              **A.      Oracle's Position**

20              Oracle's finalization of the SAC has been hindered by Defendants' discovery

21  delays, including their cancellation of scheduled TN 30(b)(6) depositions and refusal to timely

22  schedule SAP AG and SAP America 30(b)(6) depositions.  Within a week of taking the  latest

23  TN 30(b)(6) deposition, Oracle provided Defendants with a draft of its SAC for review and will

24  promptly provide them with any additional revisions arising from receipt of additional copyright

25  registrations and from the upcoming TN, SAP America and SAP AG 30(b)(6) depositions and

26  the anticipated SAP America and SAP AG productions.  If Defendants will stipulate to filing of

27  the SAC, Oracle expects to file it by June 1, 2008, subject to when it receives newly filed

28  copyright registrations back from the copyright office.

## B. Defendants' Position

The extreme over breadth of Oracle's proposed 30(b)(6) topics and resulting meet and confers coupled with the logistics of scheduling multiple witnesses in multiple locations have resulted in some scheduling delays, none of which have been unreasonable or could in any way be characterized as a refusal to schedule any 30(b)(6) deposition. During the last CMC in February, Oracle proposed to yet again amend its complaint, and it is now once again delaying the amendment so that it can belatedly register alleged copyrights. Oracle provided Defendants with a draft a few days before this filing, making it clear that Oracle would make further changes and that filing of the amended complaint was some time off in the future. Defendants will evaluate the proposed amended complaint when Oracle provides a draft to which it will commit.

## 7. Evidence Preservation

The Parties have exchanged assurances of evidence preservation, and further engaged in detailed meet and confer discussions regarding evidence preservation efforts. The Parties resolved a number of issues in dispute and reached preliminary agreement on a number of the topics. Moreover, finalization of a Stipulated Preservation Order is still under discussion. Discussions also continue regarding the proper preservation of evidence related to any ongoing customer support activities by TN with the hope of filing a stipulation regarding Defendants' access to and use of Oracle's Software and Support Materials.

## 8. Disclosures

The Parties exchanged their Initial Disclosures pursuant to Fed. R. Civ. Proc. 26 on August 16, 2007.

## 9. Discovery

### A. Oracle's Position

As Oracle anticipated, the discovery necessary to prove Oracle's initial claims has been, and will continue to be, sizeable and time-consuming. Nonetheless, to date, discovery has revealed, for example:

- Defendants have a dedicated bank of 20 "download servers" to accomplish the unauthorized taking and infringing conduct Oracle previewed in the FAC.

- Defendants compiled a master download library of Oracle-based Software and Support Materials that exceeds five terabytes in size – so large that Defendants could not produce it for over six months.

- Defendants "exploded" the downloads, making it virtually impossible to identify the customer credential used to take the versions residing in the master library, leading Judge Legge to recommend a technical conference of engineers from both sides to meet at TN's premises to evaluate the problem and devise a way to understand the liability issues.

- The "SAS" database, which Defendants did eventually produce, is so large and so complex that Judge Legge has ordered a similar technical conference so that the Parties can effectively mine it for responsive information.

- In addition, Defendants have approximately 3,000 copies of Oracle software applications on their systems, each one of which may additionally have included within it illegally downloaded Software and Support Materials.

- Virtually every one of the almost 200 TN employees had some involvement in TN's illegal activity. Documents produced by Defendants suggest that SAP AG and SAP America employees and managers had involvement in or knowledge of TN's infringing conduct.

Oracle's discovery of these facts occurred despite considerable resistance from the three SAP Defendants. Much progress has been made recently through the assistance of Judge Legge. However, as Judge Legge stated in his March 19, 2008 Report and Recommendations: "Discovery is progressing, but slowly. Both sides are hard at work on discovery responses, but the size of the discovery needs on both sides is very extensive." As a result of his exposure to the sweep of the case, Judge Legge has properly focused the Parties on liability discovery initially: "The parties presently have a lot to do in responding to each other's discovery requests on the issues of liability. And some of those responses might impact the scope of the damages claims and defenses." February 22, 2008 Report and Recommendations at 9. He therefore recommends the initial pre-trial order be modified to expand the prior discovery schedule and stage damages discovery after liability discovery and expert discovery after that. *Id.*

*Use of 30(b)(6) Depositions.* Because of Defendants' successful initial efforts to

secure a short period for discovery and to limit depositions to 20 per side,[3] and because of

Defendants' substantial delays in producing documents and their practice of responding to

interrogatories by referencing unspecified documents rather than providing narrative,[4] Oracle has

been forced to seek relevant information through the use of broad Fed. Rule of Civil Procedure

30(b)(6) depositions, often without relevant documents. Oracle has thus far taken eight days of

foundational depositions of TN 30(b)(6) witnesses.[5] These depositions have taken months to

schedule. Moreover, certain deponents were not sufficiently prepared for their depositions and

another deponent was pulled at the last minute for reasons that have remained unexplained.

Oracle served SAP America and SAP AG with a 30(b)(6) deposition notice in January, and has

only recently received proposed dates pursuant to an order from Judge Legge for those to

proceed in late April.

Faced with discovery motion practice from both sides related to Oracle's use of

30(b)(6) depositions, Judge Legge recently observed and recommended: "The Master

understands that 30(b)(6) procedures are being used in part because the pre-trial order of

September 25, 2007 presently limits the Parties to 20 depositions apiece, and the necessary

individual depositions would undoubtedly be in excess of that number. The Master recommends

that the Court consider increasing the number of individual depositions allowable in discovery so

---

[3] Over Oracle's objections, in his September 25, 2007 Pretrial Order, Judge Jenkins ordered fact discovery be completed by July 25, 2008 and restricted the parties to 20 depositions per side, though he made clear those limits could be expanded upon motion.

[4] For instance, despite being served with document requests last fall, to date, neither SAP AG nor SAP America have produced a single document, though close of fact discovery under the initial Pre-Trial order is three months away. Frustrated by this, Oracle, through discovery motion practice, secured a recommendation from Judge Legge that production from those Defendants' priority custodians be produced by April 15th and from TN's priority custodians by the end of March. Report and Recommendations Re: Discovery Hearing No. 3 at 2. Defendants repeatedly stated they cannot meet these production dates. Judge Legge responded: "I am saying April 15th. You get before Judge Hamilton and you scream at what I am recommending, okay, and by then, . . .you better be prepared to give some better explanation what you think a reasonable time basis is going to be. . . ". March 4, 2007 Discovery Hearing Transcript at 56. On April 9, Defendants appealed Judge Legge's order, confirming SAP AG and SAP America will have done little or no production by April 15 or before their scheduled 30(b)(6) depositions.

[5] Defendants are treating those as eight of Oracle's 20 currently allowed depositions.

that the 30(b)(6) problems might be reduced, if not entirely eliminated." April 4, 2008 Report and Recommendations at 4.

*Other Discovery Issues and Motions.* Other discovery obstacles and disputes have further slowed the case. For instance:

- The sheer size of the electronic data at issue has created enormous delays. For example, the total files in the download libraries on the one server TN has produced (the DCITBU01 server) include over 6 million individual PeopleSoft files and over 1 million individual JDE files; the server includes approximately 6 terabytes of data. Because of its size, TN has taken several months to produce it and has done so in 500 gigabyte chunks that Oracle needs to reconfigure. Production of TN's 8 gigabyte SAS customer service database was similarly delayed.

- Defendants' overly broad interpretation of Fed. R. Civ. Proc. 33(d) when responding to Oracle's interrogatories required Oracle to file discovery motions to secure Judge Legge's recommendation that Defendants provide complete, candid and specific responses (which Judge Legge has recommended, but Oracle has not received).

- Defendants objected to continued receipt of Highly Confidential material by Oracle's lead in-house litigation counsel after she was promoted to General Counsel but still actively involved in the case. This necessitated further motion practice by Oracle to retain that right.

- Defendants refused to produce obviously relevant documents they produced to the government in its criminal investigation of Defendants' conduct and, when ordered to do so by Judge Legge, appealed his ruling.[6]

- Defendants insisted on designating the entirety of TN's SAS database – which they described from the onset of the case as *the* treasure trove for relevant information – Highly Confidential, despite its inclusion of almost no material that fits that definition. This vastly reduced those within Oracle who could see its contents and prevented Oracle from using its own technical expertise in analyzing the contents. Oracle had to secure its de-designation by discovery motion; Defendants have appealed that ruling.

- In addition, discovery and internal analysis of the SAS database revealed that, rather than being the only source needed for relevant information, the SAS database is just one of many databases and servers that house highly-relevant materials which Oracle will need to review to understand the scope of Defendants' illegal use of Oracle's software. The Parties are only now grappling with how to get Oracle access to these.

---

[6] Per Your Honor's March 20, 2008 Notice and Order, Defendants' objections will not be ruled upon until after the April 24, 2004 Case Management Conference.

- Finally, SAP AG's refusal to waive aspects of the Hague Convention to allow for speedier depositions of its personnel (despite Oracle's provision of authority allowing them to do so) will make securing these important depositions even more difficult and slow.

*Third Party Discovery.* Third party subpoena processes have been similarly time consuming. Thus far, Oracle has served 46 customer subpoenas and eight third party subpoenas related to the acquisition of TN. Defendants' slow review of third party customer documents for confidentiality and of third party TN acquisition documents for privilege required discovery motion practice before Judge Legge.

*Oracle's Response to Defendants' Discovery.* Simultaneously, Oracle has responded to sweeping discovery from Defendants. Though some of Oracle's initial responses have required supplementation, and Defendants have complained, at times, about not receiving all the documents they want, as quickly as they want, Oracle has worked diligently to provide relevant, responsive information. Using an army of contract attorneys, Oracle has reviewed almost one million documents – an estimated four million pages – and has produced over 100,000 pages. By May, Oracle also will have logged thousands of privileged documents from numerous custodians. It has also agreed to produce many more documents by May 6th. Further, Defendants' claim that Oracle has not produced any damages discovery is far from true. Many of the documents already produced, and that are being reviewed for production by May 6th, relate directly to damages, including the following categories of financial documents in response to Defendants' damages requests: (1) historical quarterly and fiscal year budgeting and income reports; (2) historical reports reflecting PeopleSoft and JD Edwards support cancellation rates and actual support bookings data; (3) licensing and support revenue and forecasting information; and, (4) reports reflecting customer losses and negotiations due to TomorrowNow's illegal activity. Oracle has also successfully resisted various discovery motions by Defendants seeking unreasonable expansion of its production.

*Oracle's Proposal on Discovery Limits.* As demonstrated above, the issues that remain to be discovered in this matter are vast and complex. Enormous amounts of highly relevant computer data have yet to be produced by TN. SAP AG and SAP America are only

13

now beginning their productions. Key foundational interrogatories have yet to be answered. Further foundational 30(b)(6) depositions, particularly from SAP America and SAP AG, are required. Also required are individual depositions of board members, executives, sales and marketing personnel, and customer support, software development, and information technology personnel from each of the three Defendants.[7]

Discovery from third parties is no less complex. While Oracle's internal investigations have revealed 69 of its former service customers were implicated in Defendants' improper downloading, the total number of Oracle customers who migrated to TN exceeds 350 and Oracle expects discovery from the Parties and from the customers will be required as to many of those. Many of them are large, multi-national corporations, headquartered in various U.S. and foreign jurisdictions. Oracle does not currently intend to depose each of them; however, it has just begun to receive the foundational discovery necessary to determine its focus. Discovery is also required from other third parties, such as Defendants' deal lawyers and software consultants.

Finally, expert discovery will be complicated and critical. Not only will there be several highly technical expert depositions about the downloading and use of Oracle's software, there will be industry experts and damages experts. They have a massive amount of material to analyze before they can provide their reports and testimony.

Oracle thus requests that the Court order the following:

**Fact Depositions**: Oracle agrees with Judge Legge that the limits on depositions must be expanded and proposes an expansion of the total fact deposition limit to 80 depositions per side (party and third party), without prejudice to any party to seek leave of Court to obtain

---

[7] *E.g.*, TN's 30(b)(6) witness, Mark Kreutz, testified every support engineer and developer who ever worked for the company would have to be questioned to determine the extent of TN's use of Oracle's intellectual property. This would involve nearly 50 witnesses just on the subject of how TN used the downloads it took from Oracle, and not including the creation and use of the local environments that are the focus of Oracle's new claims. While Oracle does not intend to take all 50 depositions, this testimony illustrates the pervasive nature of TN's conduct, and the work Oracle must do to understand it and determine the harm resulting from it.

Case No. 07-CV-1658 (PJH)

1  further depositions if discovery reveals a reasonable need for them.  Defendants' counterproposal

2  of 250 hours of deposition per side expands the number of depositions from 20 to just over 37 --

3  which is clearly inadequate given the scope of the issues and the number of Defendants and third

4  parties.  Oracle's proposal assumes a 7 hour day of testimony counts as one of the allotted 80

5  depositions (though short depositions of 3.5 hours or less will only count as half a deposition).

6  Given that some witnesses are likely to know more than others, Oracle opposes a presumption

7  that individual depositions will last only 7 hours.  Instead, relief from over-long depositions can

8  be sought from Judge Legge.

9  **Interrogatories**:  The Pretrial Order sets a limit of 75 interrogatories per side.  To

10  date, Oracle has served 65 interrogatories split among the three Defendants.  Given the size and

11  scope of the case, including the additional claims in the upcoming amendment, Oracle believes

12  that an expansion of the interrogatory limit to 125 interrogatories per side, with the ability of

13  either party to seek leave of court to obtain further interrogatories if necessary, is reasonable.

14  **Requests For Production And Requests For Admission**:  The Parties agreed

15  during the 26(f) Conferences that there should be no limit on Requests for Production or

16  Requests for Admission.

17  In the Pretrial Order, following the initial Case Management Conference, Judge

18  Jenkins appropriately set no limit for Requests for Admission, but did set a limit of 150

19  document requests for Plaintiffs and the same number for Defendants.  Before the initial Case

20  Management, Oracle had already served 95 document requests on TN, 64 on SAP AG, and 64 on

21  SAP America.  These requests are almost all virtually identical.  When the requests are lined up,

22  Oracle has only served 96 truly unique document requests.  However, Oracle served these

23  requests separately to respect the corporate formality of each Defendant.  Since then, Defendants

24  have stated their belief that Oracle has surpassed the 150-request limit, and has warned Oracle

25  that Defendants would not comply with any further document requests.  Oracle should not be

26  punished for treating Defendants as separate companies, during a time prior to the Pretrial Order

27  when the Parties had already agreed to no limit on document requests.  Nevertheless, if the Court

28  agrees with Defendants' view, then Oracle respectfully requests that Court allow Oracle another

75 document requests for discovery on the new claims asserted in Oracle's Second Amended Complaint, as well as for follow-up on any remaining issues arising from the initial claims.

For the reasons set forth above and in Section 19 below, Oracle proposes an extension of the case schedule in the current Pre-Trial Order by approximately 12 months and, per Judge Legge's recommendation, refines the fact discovery period to allow liability discovery to precede damages discovery. Oracle also proposes extending the expert discovery period to accommodate what are likely to be complicated issues and testimony.

### B. Defendants' Position

Judge Jenkins imposed reasonable limits on discovery and the schedule for this case, with the express goal of keeping the Parties focused on the core issues. Oracle does not want to be focused, nor does it apparently want to efficiently or timely resolve this case. Oracle started this case without ever raising its concerns with SAP, apparently preferring instead to use the burden of tens of millions of dollars of discovery expense and the attendant distraction to aid its ongoing competition with SAP. Oracle resisted the limits Judge Jenkins put in place last year, and has been fighting them ever since.

Oracle boasts of having produced "100,000 pages" of documents, a production which pales to invisibility in comparison with Defendants' production of almost 17 times that volume of numbered pages, in addition to terabytes of data in un-numbered formats. In contrast, more than a year after filing this lawsuit, based on alleged violations of the license obligations of Oracle's customers who sought TN support, Oracle still will not commit that its production of those critical license agreements is complete, even after Defendants filed a motion to compel.

Similarly, in October 2007, Oracle agreed to prioritize the production of responsive documents from a list of ten Oracle employees. As of March 11, 2008, Oracle had produced *nothing* from these custodians and Defendants were forced to file a motion to compel.

Moreover, Oracle is insisting on postponing damages discovery until a later stage in the case and then compressing the time period in which it can be done. It is simply unrealistic to conclude that Oracle will cooperate in any way with completing the damages discovery it has resisted for so long, in a compressed period near the end of the case.

Oracle has not met even the most basic of its discovery obligations. By contrast, Defendants have spent millions of dollars and tens of thousands of man hours on production in this case to date. More specifically, TomorrowNow has produced 1,688,307 Bates numbered pages from the files of key employees, including from the files of its executive committee members and the former CEO. In addition, TomorrowNow has produced 6 terabytes of native data (not Bates numbered), which includes items such as the main storage location for the downloads at issue in this case and the actual interactive databases that TomorrowNow uses to track all of its customer service activity from the inception of the sales cycle all the way through the daily and monthly maintenance TomorrowNow provides its customers. The SAP entities have produced 77,686 Bates numbered pages from key employees involved in the acquisition of TomorrowNow and in the SafePassage marketing campaign (a production of SAP documents that is already over 75% of that produced by Oracle, which is a compelling statistic when considering that SAP's production is on top of the almost 2 million pages and 6 terabytes of native files produced to date from TomorrowNow's files).

While the Defendants' herculean efforts to date have produced tremendous amounts of data, Oracle's overbroad discovery requests taken literally are leading to unmanageable amounts of data. Oracle's current requests essentially ask for every bit of data TomorrowNow has in its possession. In addition, Oracle's requests to the SAP entities, along with asking for other data, seek all data related to a SAP marketing campaign that involves SAP employees from around the globe and spans from 2004 to present. Without substantial limitations, the TomorrowNow and SAP productions as demanded by Oracle can never be completed within any reasonable time period.

Oracle's statement also ignores the effect its own dilatory conduct has had on this case. Oracle refused to permit Defendants to start discovery last July, arguing that "meet and confer" was not complete. When Oracle eventually and grudgingly agreed that discovery had started, it waited months before it requested the first of its "foundational" depositions. Oracle complains now of the far flung locations of the third parties (mostly its former customers) from whom it seeks discovery, but, again, it is to blame for the time it took in initiating discovery. For

example, Oracle waited weeks after belatedly starting 30(b)(6) depositions to serve even its first third party subpoena.

Discovery is often complicated, expensive and time-consuming. Oracle should not be rewarded by making it more so. Oracle's approach to discovery is to create a vicious circle of discovery demands that cannot be fulfilled in the schedule set by the Court, which then generates demands for more discovery and more time, but never requires Oracle to articulate its damages theory or desired relief in order to continue to move this case towards resolution, through trial or otherwise. The appropriate solution is to force Oracle to focus on the key issues in this case. Because Oracle will not focus the issues or bring this case to resolution voluntarily, focus should be imposed through limitations on discovery tools, as Judge Jenkins already recognized. Specifically, Defendants propose as follows:

**Damages Discovery** – The most important limit sought by Oracle is one that should not be imposed. Oracle should not be permitted to delay all discovery on damages until the end of discovery. Discovery into Oracle's alleged harm, its profits from direct service, its competition with third party service providers other than TomorrowNow, and many other, related topics, must resume now in order for the Parties to make meaningful progress towards a resolution of this dispute, regardless of whether that resolution will ultimately come through judicial or extrajudicial means.

**Fact Depositions** – The Parties should be limited to a total of 250 hours of fact depositions (including third party depositions) per side, rather than a particular number of depositions. Depositions would continue to be presumptively limited to seven hours for each individual, but time saved on one deposition could be used for others. This approach represents a compromise by Defendants in response to the developments in this case to date and is based on the hope that this Court will impose some reasonable limits on Oracle's relentless efforts to engage in overly broad and unduly burdensome discovery

**Interrogatories** – Again, in the spirit of compromise, Defendants would agree to Oracle's proposal that there be 125 interrogatories per side. Such interrogatories will only be useful if discovery is open on all topics at issue in this case and Oracle finally becomes willing or

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1  is compelled to answer questions on such critical topics such as its theory of, and its claimed

2  amounts for, damages.

3  **Requests for Admission** – No limits have been imposed and Defendants agree

4  that none are necessary at this time.

5  **Requests for Production** – There is simply no need for additional requests for

6  production of documents.  As described above, Oracle has used its existing requests to demand

7  production of almost incomprehensible volumes of data, volumes that cannot be managed,

8  reviewed and produced on any reasonable time frame, regardless of the amount of resources

9  garnered for the task.  And, Oracle does not need additional requests to pursue its amended

10  complaint, if and when it is ever actually finalized.  Oracle's alleged new claims are based on

11  TomorrowNow's access to Oracle software to provide third party support—Oracle "discovered"

12  that fact early in the discovery process last year by virtue of Defendants' disclosures in

13  discovery, depositions and documents.  Moreover, Oracle has already effectively asked for every

14  shred of paper and data within TomorrowNow; it does not need more requests for production.

15  What is needed is meaningful focus on the key issues in this case in order to avoid the irrelevant,

16  unnecessarily duplicative, and oppressively over broad and unduly burdensome discovery that

17  typified Oracle's approach so far in this case.

18  Defendants' position with respect to discovery scheduling is set forth below, in

19  section 19, along with its position on other scheduling issues.

20  **10.  Discovery Of Electronically Stored Information**

21  In the initial Joint Case Management Conference Statement, the Parties agreed on

22  the format of production for electronically stored information ("ESI").  The Parties continue to

23  meet and confer at various points during the case concerning the production of native format and

24  images of certain electronic files, computers and servers.  If the Court continues the use of the

25  Discovery Special Master, the Parties expect to continue to address these disputes to Judge

26  Legge as needed.

27  **11.  Class Actions**

28  This case is not a class action.

**12. Related Cases**

There are no known related cases.

**13. Relief**

Oracle's Statement – Oracle seeks preliminary and permanent injunctive relief, return of stolen property, impoundment and/or destruction of all infringing materials, damages to be proven at trial, restitution, disgorgement, punitive damages, prejudgment interest, an accounting, fees and costs. Oracle is currently unaware of the amount of damages.

Defendants' Statement – More than a year after bringing this lawsuit (without any attempt to address its concerns directly to Defendants), Oracle still refuses to answer the critical question – what, if any, harm has it suffered that justifies dragging dozens of its former customers through the litigation process, diverting the resources of the Court from addressing other cases where the plaintiff is at least willing to state a specific claim for relief. Oracle insists that all discovery related to damages be deferred until January 2009, and has used the discovery master process to stall Defendants' investigation into its alleged damages and financial data relating to its alleged lost profits, including the margins on Oracle service and support. Oracle will not describe even a theory of alleged damages. Oracle insists on overly broad, unnecessary discovery into what TN accessed as part of providing third party support; it should be compelled to explain how TN's support of its former customers harmed Oracle, and to permit immediate discovery into that elusive claim.

**14. Settlement And ADR**

On February 12, 2008, at the request of Defendants and over Oracle's repeated objections, Judge Jenkins referred this case to mediation. On February 26, 2008, this Court assigned Richard H. Abramson to serve as the mediator. Mr. Abramson sent his initial contact letter to the Parties on March 21, 2008. The Parties held a preliminary call with Mr. Abramson on April 1, 2008, and since then have scheduled the mediation for May 29, 2008. There have been no further ADR or Settlement efforts to date.

**15. Consent To A Magistrate Judge For All Purposes**

Oracle consented to the Magistrate Judge. Defendants objected to this case being

20

1  tried before a Magistrate Judge.

2      **16.    Other References**

3          **A.    Oracle's Position**

4          With the consent of the Parties, on January 8, 2008, Judge Jenkins ordered that

5  Judge Legge  be appointed to act as the Special Master for discovery disputes.  Through his

6  months of service as the Discovery Special Master in this action, Judge Legge has gained

7  considerable knowledge of the case, the Parties and the technical complexity of the discovery.

8  Oracle believes that it would be inefficient for a different Special Master or other Judge to handle

9  discovery disputes going forward, and therefore, requests that Judge Legge continue to serve in

10  his capacity as Discovery Special Master in this action.  Oracle also is willing to amend his

11  mandate to give him final authority in rendering his discovery rulings.  Oracle does not believe

12  that any other references are necessary.

13          **B.    Defendants' Position**

14          Defendants are mindful of the Court's March 20, 2008 Notice and Order

15  declining to rule on Defendant's objections to the discovery master's first report and

16  recommendations and stating that, at the CMC, "the court will discuss with counsel a case

17  management plan that may or may not include use of a special master."  Also pending with the

18  Court are defendant's objections to the special master's second report and recommendations.

19  Objections to the special master's third report and recommendations are not due to be filed until

20  April 24, 2008.

21          Defendants agreed to the use of a discovery master to reduce the burden on the

22  Court and help expedite the resolution of this case.  Oracle, by contrast, appears intent on using

23  the discovery process to overwhelm defendants with discovery burdens and to detract from the

24  focus on the core issues.  Per the Court's directive, Defendants will be prepared to discuss the

25  continued use of a discovery master at the CMC and will seek the Court's guidance concerning

26  the Court's preferred practices and approaches.

27      **17.    Narrowing Of Issues**

28          <u>Oracle's Position</u> – Oracle believes it is premature to narrow issues, due to the

Case No. 07-CV-1658 (PJH)

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

imminent filing of the SAC, which will expand the issues in this action. Discovery will need to proceed substantially further before the Parties will be in a position to narrow the issues here.

Defendants' Position – Oracle's long-promised and still "imminent" SAC merely adds alleged factual detail to legal claims first asserted more than a year ago. The only reason issues cannot be narrowed in this case is because Oracle steadfastly refuses to try, and refuses any discovery on the most important issue of all – whether Oracle was actually harmed by competition in the market for third party support. As described, the three basis questions in this case (what Oracle software did TN copy? how did TN use that software in providing third party support? was Oracle harmed at all) can and should serve as the means of focusing discovery, issues and trial in this case.

**18.    Expedited Schedule**

Oracle's Position – Per the description of the case provided above, this is not the type of case that can be handled on an expedited basis with streamlined procedures.

Defendants' Position – Discovery focused on the issues truly in dispute, coupled with Court-ordered mediation and/or settlement conferences, will help expedite the resolution of this case.

**19.    Scheduling**

Both Parties propose an adjustment of the current case schedule to accommodate discovery, both on the initial claims and the forthcoming Second Amended Complaint. They agree on a one year extension over all, though differ on when certain dates within the expanded schedule should occur. The following chart shows the current case schedule, and lays out the agreed upon proposed new dates, as well as those proposed new dates where the Parties differ (in bold). The Parties' arguments for the different dates then follows:

|  | Current | Oracle | Defendants |
|---|---|---|---|
| Trial date | 2/9/09 | 2/12/10 | 2/12/10 |
| Pretrial conference | 1/27/09 | 1/29/10 | 1/29/10 |
| Start Damages Discovery | n/a | **01/05/09** | **Now** |
| Non-expert discovery cutoff | 7/25/08 | **06/27/09** | **06/12/09** |
| Designate experts | 8/8/08 | **07/17/09** | **07/03/09** (party with burden) |
| Expert reports | 8/15/08 | **07/31/09** | **07/17/09** (party with burden, including docs relied upon) |
| Designate rebuttal experts | 8/29/08 | **09/04/09** | **09/18/09** |
| Rebuttal expert reports | Rule 26(a)(2) | **09/18/09** | **10/02/09** (and docs relied upon) |
| Expert discovery cutoff | 9/12/08 | **10/30/09** | **11/06/09** |
| Dispositive motion hearing | 11/13/08 | 12/09 | 12/09 (last time for hearing) |
| Settlement conference | 10/08 | 12/09 | **10/08 and** 12/09 |

### A.    Oracle's Position

The first date in dispute is the date Oracle proposes for *commencement of damages discovery* (January 5, 2009).  Oracle proposed this based on Judge Legge's understandable recommendation that the Parties first concentrate on understanding and unearthing the vast and complex evidence establishing liability and use because it will necessary determine the scope of the damages.  It allows liability evidence to be focused on exclusively this year, then over six months of damages fact discovery.  The *non-expert discovery cut-off* date of June 27, 2009 was actually initially proposed by Defendants, who then moved it even earlier.  Given trial is not until February of 2010 and initial expert reports under Oracle's schedule are not due for a month, an earlier date seems inappropriate.  Oracle's *expert-related dates* are more even-handed than Defendants' and acknowledge the need to get expert discovery completed before dispositive motions must be briefed.   Oracle's proposal allows Defendants six weeks

1  (from July 31 to September 18, 2009) to digest Oracle's experts' reports and depose those

2  experts before having to produce their experts' rebuttal reports.  Oracle only gets five weeks

3  (September 18 through October 30, 2009 ) to digest those rebuttal reports and depose

4  Defendants' experts.  This leaves six weeks thereafter before the agreed upon December 9, 2009

5  hearing on dispositive motions.  In contrast, Defendants' expert schedule provides them two and

6  a half months to depose initial experts after their reports are provided (July 17, 2009)  and

7  rebuttal reports are due (October 2, 2009) while their expert discovery cut off (November 6,

8  2009) gives Oracle only a month to digest those rebuttal reports and depose those rebuttal

9  experts.  Moreover, that cut off is less than a month from the agreed upon hearing on dispositive

10  motions (December 9, 2009) and interferes with the planning and briefing of such motions.

11  Finally, in addition to the agreed upon pre-trial settlement conference in December 2009,

12  Defendants' propose an additional *settlement conference* in October 2008.  The Parties are

13  already having a court-ordered mediation in May of this year.  Given the incomplete state of

14  discovery, Oracle anticipates another settlement conference five months later is premature,

15  though Oracle will, of course, adhere to any schedule the Court deems appropriate.

16        **B.**        **Defendants' Position**

17        The schedule entered by Judge Jenkins last year led up to a trial in February 2009.

18  That schedule assumed that Oracle sued because it wanted to resolve its claims, as opposed to

19  seeking limitless discovery and waging discovery battle after discovery battle while refusing to

20  permit discovery into the damages it seeks.  Whatever its motive, Oracle has succeeded in

21  enforcing document requests and scope of discovery far out of proportion to the core issues in

22  this case, and threatens to broaden discovery further still.

23        Thus, given the lack of enforcement of the limits on Oracle's insatiable thirst for

24  documents that was implicit in Judge Jenkins' schedule, Defendants now have little choice but to

25  agree that the trial date should be continued one year as Oracle proposes, although the Parties

26  continue to disagree on certain details of pretrial schedule as outlined in the chart above.  The

27  amended proposed schedule will permit Oracle to exhaust itself in wading through terabytes of

28  cumulative information until, hopefully, it decides to state its alleged damages and attempt to

resolve this dispute.

The remaining disputes regarding the pretrial schedule are: (1) commencement of damages discovery; (2) adequate time for discovery between initial expert reports and rebuttal expert reports; and (3) maintenance of the October 2008 Settlement Conference.

1.     Commencement of Damages Discovery – Oracle has many relevant documents close at hand regarding the financial aspects and related profitability of its software sales and maintenance business.  They will undoubtedly form the basic underpinnings of at least some of whatever damage theories it eventually articulates.  That Oracle has not decided—over one year after suing—which damage theories it intends to pursue does not justify its refusal to provide even basic discovery that will apply to its inevitable damage claims.  Postponing damages discovery not only delays the resolution of the case but seriously prejudices Defendants' ability to adequately prepare a response to Oracle's damages experts.

2.     Time Between Initial Expert Reports and Rebuttal Expert Reports - After receiving Oracle's multiple expert reports, Defendants must have adequate time to review their reports and referenced data, depose them and prepare its multiple responses on subjects that according to Oracle are "vast and complicated".  Oracle's own statement acknowledges that "expert discovery will be complicated and critical" with "several highly technical expert depositions" of "industry experts and damages experts" who "have a massive amount of material to analyze before they can provide their reports and testimony."  Thus, Oracle's proposed six week gap between expert reports is simply not enough time given the technical issues in this case.  By reducing that period from twelve weeks to eleven, Defendants have already tried to compromise off of what they already believe is the absolute minimum time required to fully and properly respond to Oracle's expert reports.

3.     October 2008 Settlement Conference – Oracle has so far resisted Defendants' suggestions that the Parties seek the Court's or a mediator's help to identify and resolve the key issues in this case.  It has also resisted Defendants' efforts to provide information about the potential sale of certain assets of TomorrowNow.  Nevertheless, Defendants continue to believe that a non-judicial resolution of this case is possible and preferable for all concerned.

However, given Oracle's sweeping allegations, Defendants are practical enough to understand that periodic, and even at some point, sustained, settlement communications will be essential to any good faith attempt to settle this case. The Parties have agreed to continue with the one-day court ordered mediation set for May 29, 2008. And, keeping Judge Jenkins' court ordered conference in October 2008 is certainly not unreasonable, especially given the millions of dollars that the Parties are collectively expending each month litigating this case. Even if a global settlement of all claims and all issues between the Parties is not achieved either in May or October of this year, any progress the Parties can make at that those meetings towards narrowing the issues in dispute will be a substantial and productive step toward an ultimate resolution of this case.

**20.    Trial**

All Parties have requested a trial by jury on all issues so triable. The current Pretrial Order sets the proposed length of trial at four weeks. Given the expansion of the scope of the claims, Oracle believes six weeks should be scheduled for trial. Defendants believe that, subject to a proper focusing of the issues and reasonable discovery limits, the four week trial set in the Pretrial Order remains reasonable.

**21.    Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs timely made their disclosures under Local Rule 3-16 and Rule 7.1(a) of the Federal Rules of Civil Procedure on March 22, 2007 (*see* Docket No. 2). Defendants timely made their disclosures under Local Rule 3-16 and Rule 7.1(a) of the Federal Rules of Civil Procedure on July 2, 2007 (*see* Docket Nos. 37, 38).

**22.    Other Matters Any Party Considers Conducive To The Just, Speedy And Inexpensive Determination Of This Action**

*Prior Agreements:*  In the initial Joint Case Management Conference Statement, the Parties expressly stipulated out of the privilege log requirements stated in *Burlington Northern v. District Cour*t, 408 F.3d 1142, 1149 (9th Cir. 2005), and therefore agreed that the production of privilege logs within 45 days after the production of a party's documents is reasonable and would be sufficient to preserve the party's privilege objections. The Parties

further agreed that communications with outside counsel need not be logged or disclosed. During subsequent meet and confer discussions, the Parties further agreed that the 45-day period for privilege logs begins to run from the production of documents from which the privileged material was withheld, and also agreed that communications involving in-house counsel need not be logged or disclosed after March 22, 2007.

*Use of Search Terms and Custodian Lists:* In addition, the Parties continue to meet and confer on the use of search terms and to limit the relevant custodian lists in an attempt to reduce the volume and enhance the usefulness of each side's respective document productions.

**Oracle's Position:** Given the scope of the new claims and the fact there are three large Defendants, Oracle believes those custodians whose documents should be searched should continue to be those who the Parties determine, in good faith, are likely to have responsive documents. However, if the Parties can arrive at a reasonable list of such persons, Oracle is willing to adopt it. Given the focus on production from TN to date (which Defendants admit has required production from dozens of custodians and numerous databases and servers) Defendants' proposal of only 30 more custodians appears unreasonable. Moreover, it will only act to curtail the long-awaited production from SAP America and SAP AG -- companies with thousands of employees. Until Oracle can be assured that the SAP America and SAP AG custodians searched are the appropriate ones, it cannot agree to an artificial limit. That assurance can only come from reviewing those companies' productions (which are only just beginning), taking those companies' depositions (which have not yet occurred). Oracle has suggested search terms and is working with Defendants to arrive at an agreed upon list. Should the Parties fail to reach resolution, Judge Legge can hear and recommend solutions.

**Defendants' Position**: Oracle's position on these issues typifies their continued attempts to conduct limitless discovery. Oracle and SAP entities are very large companies with tens of thousands of employees. Thus, Oracle's suggested "limitation" on custodians to those "likely to have responsive documents" misses the point and is no limitation at all in light of the literally thousands of persons on both sides of this case who might otherwise be covered by Oracle's definition of a person "likely to have responsive documents."

The impact of Oracle's overbroad requests should be moderated, and order imposed on discovery, by the use of two document review devices typical in large case litigation. First, the Parties' review of responsive documents should start with a reasonable number of custodians. The Parties had originally discussed prioritizing the production of 10-15 custodians per side. That remains a reasonable limit, particularly in view of the fact that for Defendants the number is in addition to the dozens of TN custodians whose documents Defendants have already agreed to review and produce. However, in an effort to move things along, Defendants have proposed limiting custodians for review to thirty per side, in addition to TN custodians already identified, subject to showing of good cause for review of additional custodians beyond those thirty.

Second, the Parties should focus the review of the identified custodians by use of search terms. While, Oracle actually agrees in principle with both these points, as it has limited its review of documents to individual custodians it has selected, and by use of search terms it chose for itself. The problem is that the Parties have yet to reach an agreement on the logistics of implementing that approach, and judicial intervention may ultimately be necessary to effect a reasonable resolution.

Defendants will continue its meet and confer efforts with Oracle on these issues and if the Parties are ultimately unable to agree, then Defendants will present their detailed proposal via an appropriate motion.

*Judge Legge's Authority:*

**Oracle's Position:** Oracle believes that providing Judge Legge final authority to make discovery orders would be more efficient. At minimum, Oracle proposes shortening the time to appeal any of Judge Legge's recommendations to 10 days from the current 20.

**Defendants' Position**: In Section 16(B), above, Defendants have stated their position with respect to the continued use of a discovery master in this case. Moreover, Defendants will be prepared to address this issue in real time during the conference on April 24th given that the Court has advised the Parties that "the court will discuss with counsel a case management plan that may or may not include use of a special master."

1    *Waiver of Hague Convention Protocols*:

2    **Oracle's Position:** Oracle has requested SAP AG waive Hague Convention

3    protocols for its personnel's depositions, and has provided authority in support.  This will reduce

4    delay and remove procedural barriers to fact discovery.

5    **Defendants' Position**:  Defendants cannot waive for their employees those

6    employees' rights and Defendants' obligations under the Hague Convention and implementing

7    legislations in various foreign jurisdictions.  However, Defendants have repeatedly advised

8    Oracle that they will work with Oracle and such personnel in an effort to maximize the efficiency

9    of such depositions, if and when Oracle requests them.

10   DATED:  April 17, 2008

11                                          BINGHAM McCUTCHEN LLP

12

13                                          By: _Donn P. Pickett /STA_____
14                                                      Donn P. Pickett
                                                     Attorneys for Plaintiffs
15                                          Oracle Corporation, Oracle International
                                               Corporation, and Oracle USA, Inc.
16   DATED:  April 17, 2008

17                                          JONES DAY

18

19                                          By: _Robert A. Mittelstaedt /STA_____
                                                     Robert A. Mittelstaedt
20                                                   Attorneys for Defendants
                                                 SAP AG, SAP America, Inc.,
21                                                 and TomorrowNow, Inc.

22

23

24

25

26

27

28