Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARINGS 1 AND 2** <br><br> Date: July 1, 2008 <br> Time: 9:00 a.m. <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

**TABLE OF CONTENTS**

Page

BACKGROUND ............................................................................................................................. 1

SUMMARY OF ARGUMENT ..................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.  The Special Master Erred in Recommending Production to Oracle of Documents Provided to the Grand Jury ............................................................................................... 4

    1.  The Special Master's Conclusion that Discovery of Documents Produced to a Grand Jury Does Not Violate Rule 6(e) is Erroneous ..................................... 4

    2.  The Special Master's Ruling Will Eviscerate Grand Jury Secrecy in Any Grand Jury Investigation Involving Parties to Civil Litigation............................. 10

    3.  The Special Master's Conclusion That Oracle's Requests Seek Relevant Documents is Erroneous ................................................................................... 11

II. The Special Master Erred in Limiting Oracle's Production in Response to RFP Nos. 25 and 26 ................................................................................................................ 12

    1.  The Special Master's Recommendation is Arbitrary and Prejudicial................... 12

    2.  The Requested Documents are Relevant and Necessary to TN's Defenses ......... 13

    3.  TN Has Proposed Reasonable Ways to Narrow the Requests. ............................ 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Board of Ed. Of Evanston Twp. High School Dist. No. 205 v.*
  *Admiral Heating & Ventilation, Inc.*
  513 F.Supp. 600 (N.D. Ill. 1981) ......................................................................................... 7, 10

*Central Valley Chrysler-Jeep v. Witherspoon*
  2006 WL 2600149 (E.D.Cal. September 11, 2006) ................................................................. 9

*In re Grand Jury Proceedings*
  851 F.2d 860 (6th Cir. 1988) ................................................................................................... 5

*In re John Doe Grand Jury Proceedings*
  537 F.Supp. 1038 (D.R.I. 1982) .......................................................................................... 3, 7

*Kaur v. Alameida*
  No. CV-F-05-276-OWW, 2007 U.S. Dist. Lexis 40138 (May 15, 2007 E.D. Cal.) .................. 13

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*
  2005 WL 1459555 (N.D.Cal. June 21, 2005) .......................................................................... 9

*Sporck v. Peil*
  759 F.2d 312 (3d Cir. 1985) .................................................................................................... 9

*State of Texas v. United States Steel Corp.*
  546 F.2d 626 (5th Cir. 1977) ................................................................................................. 11

*In re Sulfuric Acid Antitrust Litigation*
  2004 WL 769376 (N.D. Ill. April 9, 2004) ........................................................................... 7, 8

*U.S. ex. rel. Bagley v. TRW*
  212 F.R.D. 554 (C.D.Cal. 2003) .............................................................................................. 9

*United States v. Benjamin*
  852 F.2d 413 (9th Cir. 1988) ................................................................................................... 5

*United States v. Dynavac*
  6 F.3d 1407 (9th Cir. 1993) ........................................................................................... 5, 6, 7, 8

*United States v. Reyes*
  239 F.R.D. 591 (N.D. Cal. 2006) ............................................................................................. 8

*United States v. Sells Engineering, Inc.*
  463 U.S. 418 (1983) ........................................................................................................... 5, 11

*United States v. Spillone*
  879 F.2d 514 (9th Cir. 1989) ................................................................................................... 5

## FEDERAL STATUTES

Federal Rule of Civil Procedure
  26 (b)(1) ................................................................................................................................ 14

# TABLE OF AUTHORITIES
# (Continued)

**Page**

Federal Rule of Criminal Procedure
  6(e) ............................................................................................................................... passim
  6(e)(2) ..................................................................................................................................... 4
  6(e)(3)(E) ............................................................................................................................... 4
  6(e)(3)(E)(i) ........................................................................................................................... 5
  17(c) ....................................................................................................................................... 8

Defendants SAP AG and SAP America (together, "SAP") and Defendant TomorrowNow, Inc. ("TN") object to the Special Master's February 22, 2008 Report and Recommendation ("R&R No. 1") insofar as it recommends that Defendants be required to comply with Oracle's request for documents produced to the grand jury. Defendants further object to the Special Master's March 19, 2008 Report and Recommendation ("R&R No. 2") insofar as it recommends that Oracle's search for and production of documents in response to Request for Production ("RFP") Nos. 25 and 26 be limited to documents that Oracle collected in response to other requests, despite the admission of Oracle's counsel that it did not have RFP Nos. 25 and 26 in mind when it collected those documents.[1]

Defendants timely objected to these recommendations. On April 25, 2008, Judge Hamilton withdrew the referral to the Special Master and referred the case to this Court to oversee discovery and resolve discovery disputes, including this one. Dkt. 79. On May 7, 2008, this Court ordered Defendants to resubmit their objections in one consolidated brief by May 16, 2008, and set a hearing date of July 1, 2008. Dkt. 85. This Court reviews the Special Master's recommendations *de novo*. Fed. R. Civ. P. 53(f)(4).

## BACKGROUND

Oracle filed its original complaint against Defendants on March 27, 2007, and its First Amended Complaint ("FAC") on June 1, 2007. The FAC alleges copyright infringement and various other civil claims in connection with Oracle's PeopleSoft and JDE Edwards products. Specifically, Oracle alleges that SAP's subsidiary, TN, in connection with its provision of third party support services to PeopleSoft and JD Edwards users, engaged in support activities beyond the scope of those permitted under the users' agreements with Oracle. FAC (Dkt. 31) ¶¶ 35, 70.

At issue here are Oracle's RFP No. 55 to SAP and No. 84 to TomorrowNow, in which

---

[1] Defendants' original objections to R&R No. 2, filed with Judge Hamilton on April 8, 2008 (Dkt. 73), included an additional objection relating to whether Defendants were required to produce certain documents by April 15, as Oracle contended. As a result of subsequent procedural developments, including the withdrawal of the reference to the Special Master, the referral of the case to this Court for discovery purposes, the setting of a new discovery schedule, and the parties ongoing effort, pursuant to this Court's Order, to develop a proposed joint discovery plan, Defendants believe that this issue is now moot. Should Plaintiffs or the Court disagree, however, Defendants are prepared to brief that issue on reply.

Oracle improperly sought production of "[a]ll documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the Complaint and First Amended Complaint, including without limitation all Documents provided by You to any such agency in response to a request or investigation of those allegations." *See* Exhs. 1 and 2.[2] Defendants objected to these requests on the grounds that they improperly sought, in violation of Fed. R. Crim. P. 6(e), disclosure about the nature, scope, and purpose of grand jury proceedings. *Id.*

On January 28, 2008, Oracle moved to compel Defendants to produce documents provided to the grand jury. Defendants opposed the motion on February 7, 2008, and a hearing was held on February 13, 2008. On February 22, 2008, the Special Master issued R&R No. 1 recommending that Oracle's request for documents Defendants have produced to the grand jury be granted, concluding that production of the documents provided to the grand jury would not disclose grand jury material under Rule 6(e) and that the documents are "certainly relevant," but noting that the documents would likely be duplicative of documents being produced by defendants in response to other discovery requests.[3] *See* Exh. 3, at 6. The Special Master thus assumed the relevance of the requested documents and did not require Oracle to make any showing of "particularized need" or relevance to obtain the documents.

Also at issue are Defendants' RFP Nos. 25 and 26 to Oracle. These requests seek documents concerning communications between Oracle and current or former TN employees regarding TN. Such documents are relevant to a number of defenses, including consent, laches, and statute of limitations. *See* Exh. 4. Oracle objected to these requests on relevance and burden grounds. *Id.* On February 19, 2008, after an extensive meet and confer effort, Defendants moved

---

[2] All referenced exhibits are attached to the Declaration of Jason McDonell ("McDonell Decl.") filed herewith.

[3] As discussed below, Defendants are not refusing to produce any particular document solely on the ground that it was provided to the grand jury. In fact, Defendants have agreed to produce documents responsive to Oracle's other requests for production even though they may be duplicative of documents Defendants provided to the grand jury. Defendants recognize that production of documents to the grand jury does not cast a veil of secrecy over the documents such that they could not be produced if relevant and responsive in this civil case. But in the specific requests at issue, it is clear that Oracle is not seeking the documents provided to the grand jury for their own intrinsic value, but rather to determine what information the grand jury has sought and obtained. That is the basis for Defendants' objection to RFP Nos. 55 and 84.

to compel. Oracle opposed the motion, and a hearing was held on March 4, 2008. On March 19, 2008, the Special Master issued R&R No. 2 recommending that Oracle's production in response to these requests be limited to documents located in the files of employees from whom Oracle has collected documents in response to other requests. *See* Exh. 5, at 6-7. In making this recommendation, the Special Master ignored Defendants' concern that the employees from whom Oracle has collected documents for other purposes are not necessarily the employees likely to have documents responsive to these requests. *See* Exh. 6, at 92:25-93:15. As Oracle's counsel admitted, it did not have these requests in mind when it identified the group of employees from whom it would collect documents. *Id.* at 97:7-9 ("We've never represented that we identified these custodians in an effort to respond to this request. We said no to this request."). The Special Master's recommendation is based on his view that the requests are overbroad, but his recommendation ignores TN's reasonable proposals for narrowing the requests. *See* Exh. 5, at 6-7; Exh. 6 at 86:16-87:18.

## SUMMARY OF ARGUMENT

The Special Master's recommendation that Defendants be required to produce to Oracle all documents subpoenaed by and produced to a federal grand jury is erroneous for three reasons. First, Oracle's request clearly seeks grand jury information protected by Federal Rule of Criminal Procedure 6(e). Production of all documents subpoenaed and reviewed by the grand jury would reveal the nature, scope, and purpose of a secret grand jury investigation, "[a]nd it is clear that such things as scope and direction of the grand jury investigation constitute 'matters occurring before the grand jury' and are therefore protected from disclosure by the provisions of Rule 6(e)." *In re John Doe Grand Jury Proceedings*, 537 F.Supp. 1038, 1044 (D.R.I. 1982) (internal citations omitted). Second, if allowed to stand, the Special Master's ruling would eviscerate the rule of grand jury secrecy not only for this litigation, but for any civil suit where a party is involved in grand jury proceedings. Third, the Special Master had no objectively reasonable basis to conclude, and Oracle wholly failed to demonstrate, that all of the documents requested and reviewed by the grand jury are actually relevant to Oracle's claims in the civil lawsuit.

As to the Special Master's limitation on discovery of Oracle's communications with

SFI-583679v1

- 3 -

DEFS.' OBJS. TO SPECIAL MASTER'S REPORT AND
RECOMMENDATIONS RE DISCOVERY HEARINGS 1 AND 2
Case No. 07-CV-1658 PJH

current or former TN employees, the recommendation is both arbitrary and prejudicial. It is arbitrary because it ignores the representation by Oracle's counsel that the documents to be produced were not collected in connection with RFP Nos. 25 and 26 and may have little or no relevance to those requests, and ignores TN's reasonable proposals to address Plaintiffs' and the Special Master's overbreadth concerns. It is prejudicial because the documents sought are relevant and necessary to key defenses in the case and the arbitrary nature of the Special Master's recommendation significantly reduces or eliminates Defendants' opportunity to discover them.

## ARGUMENT

**I. The Special Master Erred in Recommending Production to Oracle of Documents Provided to the Grand Jury**

**1. The Special Master's Conclusion that Discovery of Documents Produced to a Grand Jury Does Not Violate Rule 6(e) is Erroneous**

The Special Master recommends that Defendants be required to comply with Oracle's request for "[a]ll documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the Complaint and First Amended Complaint."[4] Exh. 3, at 6. The Special Master's conclusion that this request does not seek grand jury materials prohibited from disclosure by Rule 6(e) is incorrect.

Rule 6(e) protects the secrecy of grand jury proceedings. It defines the circumstances under which a court may authorize disclosure of grand jury matters, (Rule 6(e)(3)(E)), and lists the persons who are prohibited from disclosing matters occurring before a grand jury, (Rule 6(e)(2)). In doing so, Rule 6(e) reflects important and long-established policies preventing disclosure of matters occurring before a federal grand jury. Nondisclosure serves to: (1) prevent the escape of prospective indictees; (2) ensure the grand jury of unfettered freedom in its deliberations; (3) impede the subornation of perjury and tampering of witnesses by targets of the investigation; (4) encourage forthrightness in witnesses without fear of retaliation; and (5) act as a

---

[4] Oracle also sought all communications between the Defendants and the grand jury or the Department of Justice, but the Special Master has not recommended compliance with this part of the request. *See* Exh. 6, at 143:12-144:25.

shield for those who are exonerated by the grand jury. *United States v. Dynavac*, 6 F.3d 1407, 1411 (9th Cir. 1993); *see also United States v. Sells Engineering, Inc.*, 463 U.S. 418, 424 (1983) (discussing the "long-established policy that maintains the secrecy of grand jury proceedings in the federal courts").

If "any of the policies underlying grand jury secrecy may be adversely affected by a disclosure, Rule 6(e) should apply." *United States v. Benjamin*, 852 F.2d 413, 418 (9th Cir. 1988), *overruled on other grounds by United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989). Under Rule 6(e)(3)(E)(i), a court may authorize disclosure of matters occurring before a grand jury "preliminarily to or in connection with a judicial proceedings" but only if the party seeking disclosure demonstrates a particularized need for the material sought. *Id.* at 419; *Sells Engineering*, 463 U.S. at 443 (private party seeking disclosure of grand jury matters must make a strong showing of particularized need).

The "touchstone of Rule 6(e)'s applicability is whether the disclosed materials would 'elucidate the inner workings of the grand jury.'" *Benjamin*, 852 F.2d at 417. Although disclosure of business records independently generated and sought for legitimate purposes for their own sake ordinarily does not compromise the secrecy of grand jury proceedings, disclosure of "*which* documents were subpoenaed by the grand jury may disclose the grand jury's deliberative process." *Dynavac*, 6 F.3d at 1412 n.2 (emphasis in original). Further, even when documents are sought for their own sake, disclosure may, when the documents are "considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry." *Id.* (quoting *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988)).

The Special Master's ruling ignores these principles and misconstrues the essence of Oracle's requests for documents. Oracle does not ask for documents relevant to particular claims or allegations it asserts in the civil lawsuit. Rather, Oracle wants to know which specific documents the grand jury subpoenaed and which specific documents Defendants produced in response to the subpoena. It freely admitted as much at the hearing with the Special Master.

*See* Exh. 7 at 94:3-95:22;[5] *see also* McDonell Decl. ¶ 9 (citing Oracle's January 28, 2008 motion to compel)("Since the government is investigating Defendant's conduct as it relates to Oracle's claims [Oracle presumes], materials related to that investigation, and particularly whatever materials Defendants have provided to the government, are relevant"; and the only way for Oracle to know whether Defendants have produced the same documents to the government that they have produced to Oracle is to "compare and contrast Defendants' . . . production[s]").

Oracle repeatedly concedes that it does not want the documents produced to the grand jury for their own intrinsic value, but because it wants to know: "the manner in which the Defendants produced those documents to the government," "whether TN's production to date includes documents also provided to the government," and how Defendants "cataloged their production to the government." McDonell Decl. ¶ 9. In other words, Oracle wants to know what the grand jury is investigating and what its investigation has revealed thus far—precisely the information protected by Rule 6(e).

Oracle's admissions should be dispositive. As the Ninth Circuit instructed in *Dynavac*, "[I]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not comprise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." 6 F.3d at 1411-12. Thus, if a document is *not* sought for its own sake, production should *not* be compelled. Oracle, by its own—and repeated—admissions, is not seeking the documents in question for their own sake, nor have the Defendants declined to produce any documents sought for its own intrinsic value to Oracle's case. In such a situation, *Dynavac* instructs that the request to compel production should be denied.

Oracle's request also attempts "to learn what took place before the grand jury." *Dynavac*, 6 F.3d at 1411. The Special Master's decision failed to recognize this, concluding that documents produced by Defendants to the grand jury do not reveal "anything done by a grand jury . . . or any information regarding grand jury witnesses, testimony or proceedings." Exh. 3, at 6. This

---

[5] For example, at the Hearing, counsel for Oracle indicated:

MS. HOUSE: You've got to understand Rule 6(e) – this is a backstop for us. We're allowed to check against – this is pretty serious stuff, and we're allowed to check against what they have produced to us, and the historical documents that they have produced to the government. Exh. 7 at 94:17-21.

conclusion is incorrect. A request for, and disclosure of, documents provided to a grand jury pursuant to a subpoena "can reveal a great deal about the nature, scope and purpose of a secret grand jury proceedings," and the nature and scope of grand jury proceedings are protected from disclosure under Rule 6(e). *See In re John Doe Grand Jury Proceedings*, 537 F. Supp. at 1044-45 ("an examination of all documents subpoenaed and reviewed by the grand jury can reveal a great deal about the nature, scope, and purpose of a secret grand jury investigation . . . [a]nd it is clear that such things as scope and direction of the grand jury investigation constitute 'matters occurring before the grand jury' and are therefore protected from disclosure by the provisions of Rule 6(e)"); *In re Sulfuric Acid Antitrust Litigation*, 2004 WL 769376 *1-2 (N.D. Ill. April 9, 2004) (request for production seeking all documents produced by defendants in connection with grand jury investigation denied as seeking production of matters occurring before the grand jury in violation of Rule 6(e)); *Board of Ed. Of Evanston Twp. High School Dist. No. 205 v. Admiral Heating & Ventilation, Inc.*, 513 F.Supp. 600, 605 (N.D. Ill. 1981) (plaintiff's document request for all documents submitted by defendants to the grand jury effectively sought disclosure of "grand jury proceedings" and plaintiff failed to show particularized need).

The Special Master's decision is also inconsistent with established Ninth Circuit law. Although the Special Master's analysis is not set out in his ruling, he appears to have concluded that a request for documents produced to a grand jury can never impinge upon the rule of grand jury secrecy. For example, he concludes that "Defendants are not being requested to produce . . . any information regarding grand jury witnesses, testimony, or proceedings. What is at issue are simply documents…not anything that discloses what was done within the grand jury." Exh. 3, at 6.[6] However, in *Dynavac*, the Ninth Circuit criticized this type of analysis, holding that a "per se

---
[6] The Special Master's conclusion that documents are "per se" not grand jury materials was foreshadowed at the February 13, 2008, hearing:

JUDGE LEGGE: I have a difficult time with the claim that information requested from a third party about what is said to a grand jury is grand jury protection [sic]. Rule 6 exists primarily to protect what goes on within the grand jury: what witnesses are called; what the witness said; who took the Fifth or who didn't take the Fifth; what they are going to do next; the deliberations; their arguments with one another; the arguments the US attorneys make to them, and their response to the US attorneys.

That is what Rule 6 is about.

MS. BOERSCH: Correct.

approach, which never classifies documents as 'matters occurring before the grand jury'" is "under-inclusive." 6 F.3d at 1412 (rejecting per se approach).[7] Instead, *Dynavac* adopted the "effect" test, which instructs lower courts to determine whether "disclosure of a particular requested item will reveal some secret aspect of the inner workings of the grand jury" before compelling production of those documents. *Id.* at 1413.

The Special Master's recommendation misapplies *Dynavac* in a second respect. Not only does it ignore the framework established by the Ninth Circuit for analyzing the issues presented in this case, it also concludes the result reached in *Dynavac* controls here. Exh. 3, at 6.[8] It does not. Significant factual differences lie between this case and *Dynavac*. In *Dynavac*, the Court required production of documents provided to the grand jury where the party holding the documents was refusing to produce the documents *solely* on the grounds that they had been provided previously to a grand jury. 6 F.3d at 1410. Here, Defendants are not declining to produce any relevant document merely on the grounds that the document was provided to the grand jury. Instead, Defendants object to Oracle's request because it seeks grand jury information rather than particular documents for their own intrinsic value. *See Sulfuric Acid*, 2004 WL 769376 at *5 (issue was not whether defendants could withhold a relevant document just because it was produced to the grand jury, but whether plaintiffs were entitled to seek documents merely because they were produced to the grand jury). If Oracle propounds a legitimate discovery request to

---

(continued…)

JUDGE LEGGE: And I don't think a person supplying information to a grand jury – that information is cloaked by a grand jury privilege.

Exh. 7, at 98:16-99:4.

[7] The *Dynavac* court's rejection of the per se approach cuts both ways. The Ninth Circuit instructed lower courts to reject both the "under-inclusive" per se approach of never considering documents "grand jury material" and the "over-inclusive" per se approach of always considering documents "grand jury material." Defendants are careful to note that they are not advocating an over-inclusive approach, either. Civil parties may compel disclosure when the document is "sought for its own sake," (*Dynavac*, 6 F.3d at 1411), but that simply is not the case here.

[8] Although Oracle relied on it and the Special Master cited it, *United States v. Reyes*, has no bearing on the issues presented here. 239 F.R.D. 591 (N.D.Cal. 2006). That case addressed a subpoena served upon third party law firms pursuant to Federal Rule of Criminal Procedure 17(c), and, in particular, whether the law firms could quash the subpoena by asserting attorney client privilege. The case did not involve grand jury materials and the moving party was not seeking documents produced to a grand jury. *Id.* at 602-04.

Defendants for particular documents, those documents will be, and in fact many already have been, produced to Oracle regardless of whether they have also been provided to the grand jury.

Moreover, the grand jury proceedings in *Dynavac* had concluded and an indictment had been returned, so there was no fear of compromising an ongoing grand jury investigation. 6 F.3d at 1410-11. Here, the grand jury investigation is ongoing. To Defendants' knowledge, no charges have been brought against anyone. Allowing Oracle to determine who the grand jury is investigating and what documents the grand jury considers important to its investigation would, therefore, compromise the integrity of the grand jury. More troubling, however, is that doing so would also subject individuals and entities that the grand jury may be investigating to unnecessary and unfair scrutiny by a civil litigant and the public before any determination is made as to whether any wrong has been done.

The production of all documents subpoenaed and reviewed by a grand jury would reveal grand jury matters because, as the cases cited above suggest, knowledge of *which* documents the grand jury has subpoenaed says much about the nature and scope of the grand jury's investigation. This principle is also illustrated in cases discussing the work product privilege. For example, it is well settled that the selection and compilation process of documents by counsel in preparation for litigation "falls within the highly protected category of opinion work product." *Sporck v. Peil,* 759 F.2d 312, 315-316 (3d Cir. 1985) (reversing district court decision that the selection process of documents was not protected). In *Sporck*, the Third Circuit held that the selection process of defense counsel in grouping certain documents together out of the thousands produced for litigation was entitled to protection under the work product doctrine.[9] *Id.* The so-called *Sporck* rule informs the issue here. Just as counsel's selection of documents reveals

---

[9] California federal district courts follow the *Sporck* rule. *See, e.g., U.S. ex. rel. Bagley v. TRW*, 212 F.R.D. 554, 564 (C.D.Cal. 2003) (affirming earlier order that "the selection of documents does convey information about an attorney's mental impressions or strategy pertaining to a case, and therefore constitutes opinion work product, although the extent to which it does varies from case to case."); *accord Central Valley Chrysler-Jeep v. Witherspoon,* 2006 WL 2600149, *3 (E.D.Cal. September 11, 2006). This Court has also recognized the *Sporck* rule: "While individual fact documents may itself be discoverable, circumstances exist where the 'selection and compilation of documents by counsel ... in preparation for pretrial discovery' may reveal an attorney's thought processes and fall within the protection of the work product doctrine." *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.,* 2005 WL 1459555, *6 (N.D.Cal. June 21, 2005) (citing *Sporck*, 759 F.2d 312).

matters protected from disclosure by the work product privilege, the grand jury's selection of documents to review reveals grand jury matters protected from disclosure under Rule 6(e).

In sum, compliance with Oracle's request for all documents subpoenaed by the grand jury would reveal matters occurring before the grand jury, in violation of Rule 6(e), and the Special Master's recommendation to the contrary should be overturned.

### 2. The Special Master's Ruling Will Eviscerate Grand Jury Secrecy in Any Grand Jury Investigation Involving Parties to Civil Litigation

The Special Master's ruling, if allowed to stand, will eviscerate the rules of grand jury secrecy in any investigation involving the parties to a civil dispute. As the district court in *Admiral Heating* warned: "Grand jury confidentiality would be emasculated if a party seeking discovery of its proceedings could do so by routinely obtaining that information from potential (or as in this case actual) defendants." 513 F.Supp. at 604. Carried to its logical extreme, the Special Master's ruling here opens the door to the grand jury room any time there is a pending civil action involving the same or similar conduct. For example, the Special Master's ruling would allow the subject or target of a grand jury investigation who is also a civil litigant to compel victims (or witnesses) to disclose evidence of the alleged crime that they have provided to the grand jury. Subjects or targets of grand jury investigations who have not committed any crime and who are never charged with a crime could be tarred and feathered by an overzealous civil litigant who will now have access to the grand jury room. The Special Master's recommendation allows any civil litigant to use the grand jury to obtain evidence that has traditionally, and for sound reasons, been kept secret. By compelling Defendants to produce the same documents they provided to a federal grand jury, without any showing of relevancy to Oracle's civil claims or of a particularized need, the Special Master has effectively propped wide open a door that demands to be guarded more closely.

District courts are responsible for securing the integrity of grand jury proceedings. This is accomplished, in part, by protecting the identity and testimony of victims, witnesses, and the subjects of grand jury investigations. *See Admiral Heating*, 513 F. Supp. at 604 (district court has a duty in following 6(e) to protect individuals and corporations who may have provided

information to grand jury from public scrutiny). One of the purposes of protecting the secrecy of grand jury proceedings is to encourage witnesses to testify freely by promising that their testimony or what evidence they provide to the grand jury will remain confidential. *See State of Texas v. United States Steel Corp.*, 546 F.2d 626, 629 (5th Cir. 1977) (one purpose of grand jury secrecy is "the desire to create a sanctuary, inviolate to any intrusion except on proof of some special and overriding need, where a witness may testify, free and unfettered by fear of retaliation"). The Special Master's recommendation, however, would allow a civil litigant to compel witnesses to disclose those grand jury matters with no showing of need, and thus it threatens to undermine the willingness of witnesses to come forward and testify freely and truthfully. A witness who knows his testimony would be routinely available in civil litigation, "may well be less willing to speak for fear that he will get himself into trouble in some other forum." *Sells Engineering*, 463 U.S. at 432.

Finally, the Special Master's ruling not only emasculates grand jury secrecy, it also "threatens to subvert the limitations" placed on litigants by the federal rules of civil procedure, limitations that "exist for sound reasons – ranging from fundamental fairness to concern about burdensomeness and intrusiveness." *Sells Engineering*, 463 U.S. at 433. The Special Master's ruling allows Oracle to ignore the requirements of the civil discovery rules by simply piggy-backing on the work of a grand jury.

### 3. The Special Master's Conclusion That Oracle's Requests Seek Relevant Documents is Erroneous

The Special Master also erred in concluding that the documents Oracle requests "are certainly relevant, because they specifically refer to documents relating to the allegations in this case." Exh. 3, at 6. Given the rules of grand jury secrecy, neither the Special Master, Oracle, nor Defendants know whether, much less how, any of the grand jury's requests for documents relate to Oracle's allegations in the civil lawsuit. While Defendants know what documents they have been asked to produce, they cannot know, without speculation, whether or to what extent the government's investigation relates to the allegations Oracle makes in the civil lawsuit. Neither the government nor the grand jury will reveal the nature, scope, or direction of its investigation.

While Oracle contends that "Defendants themselves publicly disclosed that the government's investigation is addressed to the conduct Oracle alleges in the Complaint," (McDonell Decl. ¶10), a review of the public statements Oracle cites shows this contention to be wrong. *See* SAP July 3, 2007 Press Release, available at www.tnlawsuit.com ("The United States Department of Justice has requested that SAP and TomorrowNow provide certain documents. SAP and TomorrowNow intend to fully cooperate with the request.").

For the same reasons, Oracle's request is overbroad. Oracle has asked for "all" documents produced to the grand jury. Its request is not limited to documents that are also responsive to Oracle's civil discovery requests or even to documents that are relevant to Oracle's allegations, and Oracle has not adduced any evidence to demonstrate that "all" documents requested by the grand jury are relevant to Oracle's current claims. Some documents produced to the grand jury may be relevant, but it hardly follows from that assumption that all of those documents are relevant. The government may be investigating conduct different from that alleged by Oracle, it may be investigating entities other than those accused by Oracle, and it may be investigating individuals who have not been singled out by Oracle in the civil suit. The mere fact that the government began its investigation concurrently with Oracle's initiation of this civil lawsuit does not demonstrate that everything relevant to the criminal investigation is presumptively relevant to the civil lawsuit. The Special Master's assumption of relevance thus lacks any objectively reasonable basis.

**II.   The Special Master Erred in Limiting Oracle's Production in Response to RFP Nos. 25 and 26.**

    **1.   <u>The Special Master's Recommendation is Arbitrary and Prejudicial.</u>**

At the March 4 hearing on Defendants' motion to compel documents responsive to RFP Nos. 25 and 26, Oracle's counsel represented that it would search for responsive documents among the documents it had collected for other requests, but would make no other effort to find responsive documents. Exh. 6, at 94:1-7 ("As a compromise, we said that the custodians we have identified and collected from that we already have where there is no incremental expense and effort required to go out and collect material, we'll search them and we'll produce if there's

communications that we can determine as to a current or former TN employee."). This approach does not satisfy Oracle's obligation to make a reasonable search for documents responsive to these specific requests. *See, e.g., Kaur v. Alameida*, No. CV-F-05-276-OWW, 2007 U.S. Dist. Lexis 40138, * (May 15, 2007 E.D. Cal.) (reminding parties of "their duty under Rule 34 to conduct a diligent search and reasonable inquiry in [an] effort to obtain responsive documents."). As noted above, Oracle's counsel admits that it did not have these requests in mind when it decided whose documents it would collect. Exh. 6, at 97:7-9. Nor, as TN's counsel argued at the hearing, is there any reason to believe that the employees whose documents were collected for other requests are the employees likely to have the documents responsive to these requests. *Id.* at 92:25-93:15. Oracle's proposal is not a reasonable or logical means of satisfying its obligations under the discovery rules, but rather an arbitrary approach designed to avoid cost or effort by Oracle rather than to discover relevant and responsive information. The Special Master's adoption of this approach in his recommendation is prejudicial to TN. While he did not expressly preclude TN from revisiting this issue if additional documents are discovered that further demonstrate the relevance of this line of inquiry, the arbitrary nature of his recommendation significantly reduces TN's chances of discovering such documents.

### 2. **The Requested Documents are Relevant and Necessary to TN's Defenses.**

Communications between Oracle and TN are relevant to a number of defenses, including consent, laches, and statute of limitations. For example, TN has reason to believe that Oracle employees and, in the past, employees of its PeopleSoft and J.D. Edwards subsidiaries, have referred Oracle customers to TN for technical support, including through direct communications with TN. If so, that would be relevant to establish Oracle's knowledge of, and consent to, the TN customer support activities at issue in the complaint. In its motion to compel, TN described an instance in 2004 in which PeopleSoft consented to one of its customers providing software to TN. Oracle disputed that the software provided to TN is the same as the software materials at issue in this case. *See, e.g.,* Exh. 6, at 90:6-91:10. Even if this were true, however, TN need not make such a showing to obtain discovery of other similar communications. Information is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26

(b)(1). The fact that PeopleSoft knew of, and consented to, the provision of software to TN for the purpose of providing third-party support to PeopleSoft customers in at least one instance demonstrates the reasonableness of discovery seeking similar communications. The Special Master acknowledged as much in his report. Exh. 5, at 6-7 ("At oral argument, it appears that defendants' primary interest is in communications which may have expressed plaintiffs' consent to defendants to use the information at issue. That is of course a relevant subject matter, if such documents exist.").

Other kinds of communications between Oracle, or its subsidiaries, and TN are similarly relevant. For example, a cease and desist letter from PeopleSoft to TN indicates that Oracle has been aware of TN's third-party support activities since at least 2002. *See* Exh. 8. Communications such as these are relevant to TN's laches and statute of limitations defenses. Moreover, the existence of such communications between PeopleSoft's customer support personnel and TN and PeopleSoft's legal personnel and TN belie Oracle's claim, in its opposition to TN's motion and at the March 4 hearing, that no one at Oracle would have had any business purpose for communicating with a TN employee. *See, e.g.,* Exh. 6, 91:10-22.

### 3. **TN Has Proposed Reasonable Ways to Narrow the Requests.**

During the meet and confer process and at the March 4 hearing, TN's counsel proposed reasonable ways to narrow RFP Nos. 25 and 26. These include limiting the requests to communications with TN employees, limiting the subject matter to TN's business activities, limiting the search to Oracle employees who have reason to communicate with TN, and running electronic searches on the documents of those employees for specific terms such as "TomorrowNow." Exh. 6, at 86:21-87:18. The Special Master ignored these proposals, finding the "limited relevance" of the requested documents insufficient to support the requests. As the discussion above demonstrates, however, there are employees and departments at Oracle who have had reason to communicate with TN, their communications are relevant to TN's defenses, and TN should be permitted to discover them. The Special Master's adoption of Oracle's arbitrary proposal is not sufficient to provide TN with this necessary discovery. There are reasonable search methods that Oracle could use to find these communications and it should be

required to do so.

## **CONCLUSION**

For the foregoing reasons and based on the record herein, the Special Master's recommendations should be rejected.

Dated: May 16, 2008  JONES DAY

By: /s/ - Jason McDonell
 Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.