Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **DEFENDANTS' REPLY TO ORACLE'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARINGS 1 AND 2** <br><br> Date/Time: July 1, 2008, 11:00 am <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
INTRODUCTION ........................................................................................................................ 2
ARGUMENT ............................................................................................................................... 3
I. ORACLE'S BLANKET REQUEST FOR ALL DOCUMENTS PRODUCED TO THE GRAND JURY IS IMPROPER ................................................................... 3
    A. Oracle Must Demonstrate That It Is Seeking Documents For Their "Own Sake" And That Such A Disclosure Will Not Compromise The Integrity Of The Grand Jury. ..................................................................................................... 3
        1. Oracle has not shown that it seeks the documents for their "own sake." .............................................................................................................. 3
        2. Oracle's assertions of relevance are speculative. ........................................ 5
    B. Granting Oracle's Request Will Compromise The Integrity Of The Grand Jury Process. ............................................................................................................ 6
II. ORACLE HAS NOT SHOWN THAT RFP NOS. 25 AND 26 ARE BURDENSOME OR SEEK IRRELEVANT INFORMATION ........................................ 8
    A. Oracle's Scope Concerns Are Unfounded And, In Addition, Addressed By The Generally Applicable Discovery Limits Currently Being Negotiated. ............ 8
    B. Oracle Mischaracterizes The Facts To Support Its Relevance Argument. ............. 9
    C. Oracle's Claim That There Are No Employees Who Have A Business Reason To Communicate with TN is wrong. .......................................................... 11
    D. The Special Master's Recommendation Was Arbitrary And Prejudicial. ............. 11
CONCLUSION .......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

Cases

*Board of Ed. Of Evanston Twp. High School Dist. No. 205 v. Admiral Heating & Ventilation, Inc.*
    513 F. Supp. 600 (N.D. Ill. 1981) ....................................................................................... 6, 7

*In re Grand Jury Proceedings*
    851 F.2d 860 (6th Cir. 1988) ................................................................................................. 6

*In re John Doe Grand Jury Proceedings*
    537 F. Supp. 1038 (D.R.I. 1982) ........................................................................................... 6

*In re Sulphuric Acid Antitrust Litigation*
    2004 WL 769376 (N.D. Ill. April 9, 2004) ........................................................................... 7

*In re Sunrise Securities Litigation*
    130 F.R.D. 560 (E.D. Pa. 1989) ............................................................................................ 7

*United States v. Dynavac*
    6 F.3d 1407 (9th Cir. 1993) ........................................................................................... passim

Statutes

Federal Rule of Criminal Procedure
    6(e) ............................................................................................................................ 2, 3, 7, 8

# INTRODUCTION

Oracle wastes much of its opposition on topics that are not an issue for the Court. As Defendants made clear to Judge Legge and Oracle, besides the cover letters transmitting Defendants' document productions, the only documents that have been provided to the government under the grand jury subpoenas are electronic and paper records produced in response to those subpoenas. And, it is only those records actually produced in response to the subpoenas that are addressed by Judge Legge's recommendation. McDonell Decl., Exh. 3 at 6; Exh. 6, at 143:12-144:25.

As to those documents, the issue is straightforward. Oracle requests all documents TomorrowNow ("TN") has produced to the grand jury. A general or blanket request for documents produced to a grand jury is inappropriate under Rule 6(e) because it may disclose matters occurring before the grand jury. Documents produced in response to a grand jury subpoena may be disclosed in civil discovery only if the documents are sought for their own sake and not simply to learn what the grand jury is investigating. *United States v. Dynavac*, 6 F.3d 1407, 1411 (9th Cir. 1993). Judge Legge erroneously adopted the view that documents produced to a grand jury are never protected by grand jury secrecy under Rule 6(e). Oracle too ignores *Dynavac* and has consistently failed to demonstrate that it is entitled to the documents it seeks under Ninth Circuit law.

As to RFP Nos. 25 and 26, which seek communications between Oracle and TN, Oracle's opposition is based on unfounded scope and relevance objections. Defendants do not contend that Oracle is required to search the documents of "*all* 69,000 Oracle employees." Opp. at 11. Defendants have been, and are, willing to limit those requests to those employees likely to have had such communications. Oracle's statements to the contrary misrepresent the record. Moreover, the parties' negotiations on generally applicable limits on discovery, subsequent to the hearing with Judge Legge, and this Court's clear directive at the May 28, 2008 Discovery Conference to agree on such limits or have them imposed by the Court should adequately address Oracle's burden concerns. These RFPs will be subject to the same general limits on custodians, search terms, and targeted searches the parties agree on or the Court imposes.

As to relevance, Oracle mischaracterizes the communications already produced in the case in an effort to minimize their significance and prevent the production of other, similar communications. Their significance is obvious however, as Defendants demonstrate below.

## ARGUMENT

## I. ORACLE'S BLANKET REQUEST FOR ALL DOCUMENTS PRODUCED TO THE GRAND JURY IS IMPROPER

### A. Oracle Must Demonstrate That It Is Seeking Documents For Their "Own Sake" And That Such A Disclosure Will Not Compromise The Integrity Of The Grand Jury.

The Ninth Circuit established a clear test to determine when a general request for documents produced to a grand jury may be granted in civil discovery. "*If* a document is sought for its own sake rather than to learn what took place before the grand jury, and *if* its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." *Dynavac* at 1411-12 (emphasis added). While production of a document that was also produced to the grand jury does not automatically reveal grand jury workings, it is equally true that production of a document that was produced to the grand jury in a concurrent grand jury investigation may reveal something about the nature of the grand jury proceedings. *Id*. at 1413. Thus, the Ninth Circuit rejected the rule that documents produced to a grand jury are never protected by Rule 6(e), which is the rule Judge Legge erroneously adopted.

Oracle ignores the import of *Dynavac* and urges the Court to follow Judge Legge's ruling that a document produced to the grand jury is never protected by Rule 6(e). *Dynavac* is controlling precedent and Oracle must meet each element of the test set forth in *Dynavac* for its request to be granted. It meets neither.

#### 1. Oracle has not shown that it seeks the documents for their "own sake."

Oracle has offered a series of unconvincing justifications in support of its blanket request for documents, none of which demonstrate that Oracle seeks documents for their "own sake." Notably, neither in its original request for documents, nor in its briefs or at argument, has Oracle ever provided any specific description of any document covered by its request. Rather than

describe specific documents that it believes are relevant to its claims, Oracle simply repeats its tautology that it seeks the documents for their own sake because it "does not seek production of what transpired before the grand jury." Opp. at 4, 5. But such a bare tautology does not demonstrate that the documents are sought for their "own sake," as required by *Dynavac*.

Oracle does not now and has never explained why it needs a response to its blanket request for the documents produced to the grand jury when it has received and will receive all relevant documents through the normal course of civil discovery. When pressed by Judge Legge, Oracle's answer was telling. Oracle did not, and still does not, contend that normal discovery has failed to provide Oracle with specific documents it has requested. Rather, Oracle baldly conceded that it wanted to know information unrelated to the specific documents that may be covered by its request:

> JUDGE LEGGE: You are missing my point. Let's assume that it is; that there has been a subpoena, and let's assume they have a truckload of material they are about to deliver to the U.S. Attorney for ultimate production—let's assume that.
> Why go through all that [obtaining the documents produced to the grand jury], if you are going to get the answers to the questions that you want answered by methods we have been talking about this morning [e.g., through appropriate civil discovery requests]?
>
> [ORACLE]: As Your Honor knows, and your colleague, Judge Breyer, has found, there's a whole lot of information that isn't even—*not the documents themselves*, but let's say that [sic] have been presentations making these kinds of clear delineations between what they say happened, and who did it, and the scope.

McDonell Reply Decl., Exh. 1, 93:5-18.[1]

Indeed, Oracle has consistently admitted that it wants the documents produced to the grand jury for something other than anything intrinsic to the documents themselves:

- "If there's a nice presentation to the government that talks about the facts and the history, and lays it all out in a nice, easy way, that is an admission that obviously is very helpful." *See* Opp. at 9 (citations omitted).

- The grand jury documents could reveal "the manner in which the Defendants produced those documents to the government" (McDonell Reply Decl., ¶ 3);

- The grand jury documents could show "whether TN's production to date includes documents also provided to the government" (*id.*);

---

[1] All references to "McDonell Reply Decl." are to the Reply Declaration of Jason McDonell in Support of Defendants' Objections to Special Master's Report and Recommendations Re: Discovery Hearings 1 and 2, filed herewith.

- The grand jury documents could show how Defendants "cataloged their production to the government" (*id*).

Oracle's admissions should be dispositive. The documents produced to the grand jury are not being sought for their "own sake" but to glean information about the nature and scope of any grand jury investigation.[2] Oracle's broad justifications would apply to all grand jury investigations and thus would entirely eviscerate the rule espoused in *Dynavac*. In such a situation, a motion to compel should not be granted. *Dynavac*, 6 F.3d at 1412.

### 2. Oracle's assertions of relevance are speculative.

Oracle asserts that its request seeks "highly relevant" documents with a "direct relationship" to this case, (Opp. at 8), but Oracle has never even described any particular document encompassed by its request much less explained how such a document may be relevant to its claims. As Oracle freely concedes, it has no direct knowledge of any grand jury investigation or what documents may have been produced to a grand jury. Opp. at 4 ("Oracle has no specific knowledge about the existence or progress of any grand jury proceedings"). Thus, its assertions of "direct relevance" are nothing but speculation, or, at best, an educated guess.

If the documents sought by Oracle are "highly relevant," then they have been, or will be, produced in response to proper civil discovery requests. To date, Defendants have produced over 2.3 million Bates-numbered pages of documents and over 6 terabytes of native data (not Bates-numbered), and production is ongoing. McDonell Reply Decl., ¶ 4. Oracle has no reason to believe it will not receive all relevant documents in due course whether or not they were also produced to a grand jury, and it has offered none.

Oracle has the resources to conduct civil discovery – it does not need to piggy-back on the work done by the government. It has received and will receive all relevant documents in the ordinary course of civil discovery, and there is no need to circumvent the normal discovery process and potentially compromise grand jury proceedings by a granting Oracle's blanket request for any documents produced to a grand jury.

---

[2] Moreover, how TN cataloged their production or whether TN's production to the government is coextensive with its production in response to civil discovery requests is wholly irrelevant to any of Oracle's claims.

### B. Granting Oracle's Request Will Compromise The Integrity Of The Grand Jury Process.

Oracle asserts that the requested "documents can provide no information about the grand jury's inner workings." Opp. at 7. This is a bold statement considering Oracle can only guess at what the grand jury requested and what Defendants produced to it. It is also wrong. Oracle's request is not a request for particular documents that happened to have been previously produced to the grand jury. It is instead a general request for any document produced to the grand jury regardless of the nature of the document. As such, it is an attempt to learn which documents were asked for and produced to the grand jury rather than any information contained in the documents themselves. This is a critical distinction. Blanket requests for documents produced to a grand jury can reveal much about a grand jury investigation. *Dynavac*, 6 F.3d at 1412 n.2 (disclosure of "*which* documents were subpoenaed by the grand jury may disclose the grand jury's deliberative process.") (emphasis in original); *In re John Doe Grand Jury Proceedings*, 537 F. Supp. 1038, 1044-45 (D.R.I. 1982) ("an examination of all documents provided to a grand jury pursuant to a subpoena can reveal a great deal about the nature, scope and purpose of a secret grand jury investigation"). Further, "even when documents are sought 'for their own sake,' disclosure may, when the documents are "considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry." *Id*. (quoting *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988)).

The blanket request made by Oracle for any document produced to the grand jury regardless of the nature of the document would, if fulfilled, reveal which documents the grand jury requested and thus the focus of its investigation. It may also reveal the names of individuals who are of interest to the grand jury or who may be or have been witnesses. Revelation of the names of individuals to Oracle and potentially the public would be especially pernicious, smearing or intimidating them unnecessarily. Granting Oracle's request would also establish a precedent that would completely undermine the rule of grand jury secrecy by allowing any civil litigant to pry open the door to the grand jury room whenever there is a parallel grand jury proceeding. *Admiral Heating*, 513 F. Supp. at 604 ("Grand jury confidentiality would be

emasculated if a party seeking discovery of its proceedings could do so routinely by obtaining that information [in civil discovery]"). Oracle utterly fails to acknowledge or even address this consequence, dismissing it without any analysis and rather perplexingly as "unsubstantiated and irrelevant to the questions at hand." Opp. at 10 n. 6. But the result of upholding Judge Legge's ruling cannot be escaped: any civil litigant will be able to demand from any grand jury witness production of any document produced by that witness to the grand jury, thereby creating a road map for the litigant and potentially the public of every step taken by the grand jury in its investigation. Such a result is flatly inconsistent with the tradition of grand jury secrecy that Rule 6(e) is designed to protect.

Moreover, Oracle's insistence that because grand jury witnesses cannot be compelled to silence, they can therefore be compelled to reveal what they said or produced to a grand jury is both wrong and illogical. That a witness has the legal right to voluntarily reveal information does not mean that the witness can be compelled to reveal what would otherwise be protected by the rule of grand jury secrecy.

Finally, Oracle's reliance on *In re Sunrise Securities Litigation,* 130 F.R.D. 560, 575 (E.D. Pa. 1989), the only case that even arguably supports its position,[3] is misplaced. Opp. at 6. While it is not clear from the opinion, it appears that the *Sunrise* case did not involve a blanket discovery request for all documents produced to the grand jury, like Oracle's here, and instead the requested party was refusing to produce documents in response to otherwise proper civil discovery requests. *See* 130 F.R.D. at 574 (the requested party had "invoked what it terms 'the Grand Jury Privilege' to withhold various documents relating to" a grand jury investigation). That is much different from the case here, where the defendants are not refusing to produce documents responsive to legitimate discovery requests solely on the ground that they may have been produced to a grand jury. Moreover, insofar as the court in *Sunrise* held that documents

---

[3] Oracle's efforts to distinguish the cases cited by SAP are unsuccessful. The cases relied on by SAP are factually and legally on point and illustrate Oracle's failure to demonstrate that its blanket request for anything produced to government seeks documents for their own intrinsic value rather than information about the nature and scope of the grand jury investigation. *See Board of Ed. Of Evanston Twp. High School Dist. No. 205 v. Admiral Heating & Ventilation, Inc.*, 513 F. Supp. 600 (N.D. Ill. 1981); *In re Sulphuric Acid Antitrust Litigation*, 2004 WL 769376 (N.D. Ill. April 9, 2004).

produced to a grand jury can never be protected by Rule 6(e), it is inconsistent with *Dynavac*, which controls here.

The Special Master's recommendations should be rejected. Oracle has not shown that it seeks any of the requested documents for their own intrinsic value, production of the documents would compromise the integrity of ongoing grand jury proceedings, and Oracle has the resources and ability to obtain all relevant documents it needs through the normal course of civil discovery.

## II. ORACLE HAS NOT SHOWN THAT RFP NOS. 25 AND 26 ARE BURDENSOME OR SEEK IRRELEVANT INFORMATION.

### A. Oracle's Scope Concerns Are Unfounded And, In Addition, Addressed By The Generally Applicable Discovery Limits Currently Being Negotiated.

Defendants do not maintain that RFP Nos. 25 and 26 require Oracle to search the documents of "*all* 69,000 Oracle employees" for communications with TN. *See* Opp. at 11 (emphasis in original); *see also id.* at 13 (stating, incorrectly, that Defendants seek "all-employee-communication" discovery). Oracle misrepresents the record on this point. Although Oracle quotes extensively from the transcript of the March 4 hearing, including Judge Legge's inquiry "[H]ow can they answer this question without going to everybody in the office?" (Opp. at 17), it omits the responses of Defendants' counsel. Those responses make clear that Defendants have been, and are, willing to limit the search to those employees likely to have had such communications. *See* McDonell Decl., Exh. 6, 92:25-93:15 (search should be of those Oracle employees "likely to have had communications with TomorrowNow"); 87:12-18 (search should be limited to employees with reason to have contact with TomorrowNow). Oracle has steadfastly refused to agree to that compromise, insisting that there are no such Oracle employees. *Id.* at 91:17-22; *see also* Opp. at 13 (claiming, incorrectly, that "there is no specific custodian or group within Oracle that would have a regular business purpose for such communications"). But documents already produced in the case show otherwise. As discussed further below, employees in Oracle's sales, marketing, competitive intelligence, legal, and customer support departments have had reason to – and do – communicate with both TN and SAP in the regular course of business.

Nor is there any inconsistency between Defendants' arguments at the May 28, 2008 Discovery Conference and its position with respect to these RFPs. *See* Opp. at 11. Defendants' position was then, and is now, that there needs to be reasonable limits on the scope of discovery and that those limits should apply equally to both sides. Defendants have never contended that these RFPs will be exempt from whatever limits on custodians, search terms, and targeted searches are ultimately agreed on by the parties or set by the Court. To the extent that these RFPs, as limited by Defendants during the meet and confer process, would have imposed an undue burden on Oracle at all, the fact that the Court has said that such discovery limits will be set, whether by agreement or by order, is sufficient to address Oracle's burden concerns.[4]

### B. Oracle Mischaracterizes The Facts To Support Its Relevance Argument.

Oracle disputes the relevance of communications regarding instances in which Oracle, or its predecessor PeopleSoft, consented to a customer providing software to TN. *See* Objs. at 13; Opp. at 15. In support of its position, Oracle argues that the case is not about the receipt by TN of "software that a customer *was licensed to use*." Opp. at 15 (emphasis in original). But that is precisely what the case is about, as Oracle's counsel acknowledged at the March 4 hearing:

> But the bigger point, your Honor, is that Oracle has never said and it never would say that TomorrowNow or a third party support provider like TomorrowNow can never have its fingers on some form of software. There are circumstances in which the third-party support providers are legitimately providing support, and Oracle welcomes that competition. *The question is whether they're doing it within the scope of the customer's license or not.*"

McDonell Decl., Exh. 6, 90:18-91:1 (emphasis added). Communications between Oracle and TN that reflect Oracle's position on whether a particular activity is within the scope of a customer's license clearly are relevant to, for example, issues of consent and how Oracle's license agreements are to be construed.

Oracle also accuses Defendants of misleading the Court regarding the relevance of PeopleSoft's 2002 cease and desist letter to TN. Opp. at 15-16. Oracle incorrectly describes the letter as limited to marketing materials that allegedly create the false impression that TomorrowNow is affiliated with PeopleSoft or disparage PeopleSoft products, along with alleged

---

[4] The dispute over these RFPs arose and was heard by Judge Legge well before the parties even started negotiating the discovery limits that were the subject of the May 28 hearing.

misappropriation of a customer list. *Id.* Oracle omits from its description PeopleSoft's allegation that "[TN's] characterization of PeopleSoft's products and of [TN's] *abilities to service them* are misleading …," (McDonell Decl., Exh. 8, at 1) (emphasis added), and that "because TomorrowNow is not a certified member of PeopleSoft's alliance network, it is misleading for the TomorrowNow website to claim that TomorrowNow has the ability to perform upgrades to PeopleSoft 8." *Id.* at 2. These allegations parallel Oracle's allegations in this litigation that TN's support activities are unlawful.

If there can be any doubt that the 2002 cease and desist letter is relevant, that doubt is resolved by TN's letter in response. Almost an entire page of that response is devoted to contesting PeopleSoft's claim that TN is not legally entitled to service PeopleSoft software. McDonell Reply Decl., Exh. 2.[5] The letter states, in part:

> We are very concerned and disturbed by these claims. As Assistant General Counsel for PeopleSoft, you are undoubtedly aware, or certainly should be aware, that (a) there is no requirement that a service provider join or be affiliated with any PeopleSoft-controlled alliance before servicing a customer's PeopleSoft software, (b) the tools for physically upgrading releases are built into the PeopleSoft software release itself and licensed with the software product to customers, (c) customers who pay PeopleSoft for annual support services have rights to access and use PeopleSoft upgrade documentation and instructions made generally available to PeopleSoft's annual support services customers regardless of whether a customer chooses to hire PeopleSoft, a third-party, or internally and independently performs the upgrade process, (d) many software upgrades are performed by customers without fee-based consulting assistance from either PeopleSoft or its certified alliance network members, and (e) many software upgrades are performed by customers without their internal project staff of employees and/or contractors receiving any full education or training equivalent to PeopleSoft's "Consultant Certification" curriculum used by PeopleSoft internally for its fee-based consultants or the curriculum used for the fee-based consultants of its certified alliance network members.
>
> Despite the fact that this well-known information was available to you prior to your letter of July 10, 2002, we understand that PeopleSoft is telling customers that there are legal and other reasons that TomorrowNow cannot provide these services. We can only conclude that PeopleSoft is attempting to (a) knowingly mislead its customers about their rights under their software license and support agreements to select and use any service provider willing and able to perform services relating to PeopleSoft software, (b) pressure and intimidate TomorrowNow out of competition with PeopleSoft and its certified alliance partner network, (c) create competitive barriers for TomorrowNow and perhaps

---

[5] TN's response to the 2002 cease and desist letter was produced to Oracle by Blank Rome, the law firm that represented TN in the acquisition by SAP, in response to a subpoena. McDonell Reply Decl., ¶ 2.

DEFS.' REPLY TO ORACLE'S OPP. TO DEFS.'
OBJS. TO SPCL. MASTER'S RECS.
Case No. 07-CV-1658 PJH (EDL)

other independent service providers, and (d) control the vendor market from which customers using PeopleSoft software can choose a service provider.

McDonell Decl., Exh.2 at 2. To our knowledge, PeopleSoft never replied to this letter.

The relevance of this document to the issues in this litigation, and specifically to PeopleSoft's knowledge of, and at least implied consent to, TN's support activities, is obvious. As early as 2002, PeopleSoft was aware of TN's support activities, challenged their lawfulness in a cease and desist letter, and received a response that expressed TN's disagreement with PeopleSoft's position and intent to continue to provide support for PeopleSoft products.

### C. Oracle's Claim That There Are No Employees Who Have A Business Reason To Communicate With TN Is Wrong.

In addition to the communications with TN by legal and technical support employees discussed above, other categories of Oracle employees communicate with TN and SAP, in one form or another, particularly employees from Oracle's sales, marketing, and competitive intelligence groups. For example, document ORCL00029347 produced by Oracle is an email from a TN employee to an Oracle employee regarding a conference for users of PeopleSoft products which the Oracle employee attended and at which TN advertised its services, and document ORCL00131592 produced by Oracle is an electronic meeting notice listing the names of several SAP and TN employees.[6]

### D. The Special Master's Recommendation Was Arbitrary And Prejudicial.

As Oracle conceded at the March 4 hearing, the only documents it has produced that are potentially responsive to RFP Nos. 25 and 26 are documents it collected in response to other requests. Objs. at 3. It has never searched for documents responsive to these specific requests, even among the files of employees likely to have had communications with TN. *Id.* The Special Master's adoption of that approach, even in light of Defendants' efforts to narrow the scope of the requests, was an arbitrary "solution" to a dispute that should have been resolved through the logical and reasonable limits proposed by Defendants. It was prejudicial because the discovery

---

[6] Defendants have not attached the documents cited here because Oracle has designated them Confidential.

denied Defendants is relevant to key issues and defenses in the litigation. This is particularly true in the context of the parties' subsequent negotiations on generally applicable discovery limits and the Court's intent to impose such limits should the parties fail to reach agreement. Under these circumstances, the limited burden on Oracle is far outweighed by the relevance of the discovery sought. This Court should reject the Special Master's recommendation on RFP Nos. 25 and 26.

## **CONCLUSION**

For the reasons set forth above, the Special Master's recommendations should be rejected.

Dated: June 6, 2008

JONES DAY

By: /s/Jason McDonell
Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

SFI-585180v1