BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and
Oracle International Corporation

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
 SAP AG, SAP AMERICA, INC., and
 TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, *et al.*, <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **JOINT DISCOVERY CONFERENCE STATEMENT** <br><br> Date: July 24, 2008 <br> Time: 2:30 p.m. <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

1         Pursuant to the Court's July 3, 2008 Order Regarding Scope of Discovery of
Electronically Stored Information, Including Limits on Number of Custodians to be Searched and Sampling (the "July 3 Order"), Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this Joint Discovery Conference Statement.

        The Parties jointly request that the Court schedule sixty minutes on July 24, 2008 to further discuss these discovery issues.

### 1.     Sampling and Extrapolation

        In the Court's July 3 Order, the Parties were directed to "file a proposal for extrapolation, at a minimum as to software environments." Consistent with the July 3 Order, Oracle has developed a preliminary extrapolation proposal with respect to certain PeopleSoft software environments and related support materials contained on Defendants' computer systems. Oracle began its remote access inspection of TomorrowNow servers on July 14th. The inspection is proceeding slowly due to early technical glitches and the extreme volume of material. Oracle will need some additional time with the inspection to refine and finalize the preliminary proposal, but has shared a draft with Defendants in the interest of facilitating agreement on a protocol. After spending a short amount of additional time reviewing the software and environments made available by Defendants through remote access and other discovery, Oracle anticipates developing a similar type of proposal for additional materials in Defendants' possession or additional support processes engaged in by Defendants. A copy of Oracle's preliminary extrapolation proposal is attached to this Statement as Exhibit A. Due to the complexity of the extrapolation proposal and the need for expert input, including with respect to the servers made available through the remote access inspection (which, again, has just begun), Oracle provided a copy of Exhibit A to Defendants on July 17th, and Defendants have not had sufficient time to review and fully comment on it. The Parties have scheduled a further meet and confer to discuss the preliminary extrapolation proposal on July 22nd and will be prepared to discuss it with the Court at the July 24th Discovery Conference, including how and when they can finalize it.

### 2. **Damages Causation Evidence**

Oracle is in the process of evaluating the sample win/loss reports, customer surveys and the electronic customer relationship management database entries produced by Defendants on July 11th. Oracle's preliminary review of these documents indicates that Defendants will need to produce additional materials to provide evidence comparable to the damages causation evidence Oracle has already produced. However, Oracle will be better able to evaluate what will be specifically required once it has a chance to review Defendants' prioritized list of customers that have moved to TomorrowNow and/or SAP (due Friday July 18). Upon its receipt, the Parties will meet and confer and be prepared to discuss what more should be produced at the July 24th Discovery Conference.

### 3. **Search Terms**

The Parties agreed to preliminary search term lists on July 11th; however, the Parties are still refining those lists to further improve search term results and also to agree on a set of German search term translations to apply to German custodians. The Parties expect to arrive at final agreed lists of search terms, including any foreign translations, over the next few weeks following additional testing and analysis. The Parties will keep the Court apprised of any further issues that arise related to the search terms, but do not expect to require the Court's further involvement in that process.

### 4. **Targeted Searches**

Consistent with the July 3 Order, the Parties have met and conferred and have agreed in almost all aspects to a process for handling targeted search requests. The only dispute concerns whether the targeted request should be self-contained (i.e., not tied to written discovery requests previously served). Oracle believes they should be self-contained to reflect their narrowness, so there is no ambiguity about what is being requested, and to avoid having to go back now and retrace the long history on prior requests (which involves assessing objections, numerous meet and confer sessions and related correspondence and, in several cases, motions to compel and resulting rulings before Judge Legge). Defendants believe the targeted searches should be tied to specific RFPs propounded pursuant to Rule 34 because: (1) targeted searches are not intended

1 to circumvent the 150 RFP limit set by Judge Hamilton, but rather are a means by which the

2 parties can satisfy their obligations under Rule 34 as to certain RFPs; and (2) not doing so will

3 cause uncertainty about the parties' obligations with respect to RFPs covering the same subject

4 matter and disputes over whether those obligations have been satisfied. The two competing

5 proposals are set forth below with the key difference underlined. The Parties request the Court's

6 assistance in resolving this dispute.

7 <u>Targeted Search Process</u>: The Parties may request from the other side up to 10 targeted

8 searches, *i.e.*, narrow searches by topic where production would come from centralized sources or

9 from those persons most likely to have responsive documents. (*Oracle's proposed language*):

10 <u>To avoid confusion, each targeted search request shall be self-contained, *i.e.*, shall not incorporate</u>

11 <u>by reference any other discovery request or correspondence.</u> (*Defendants' proposed language*):

12 <u>Each targeted search request must be tied to specific RFPs properly propounded pursuant to Fed.</u>

13 <u>R. Civ. P. 34, and the RFPs to which the targeted search relates must be specified in the targeted</u>

14 <u>search request</u>. The Parties may prioritize which requested searches should be conducted in what

15 order, and may hold in reserve any number of their 10 allotted targeted search requests. After

16 receiving a targeted search request, the Responding Party shall make a good faith effort to

17 conduct the requested narrow search and produce the responsive information located from that

18 search as follows.

19 The Party receiving a targeted search request shall have a week to review and respond in

20 writing to the request. That initial response shall indicate any objections or narrowing of the

21 request the Party wishes to make and how the Party initially intends to search for the material it

22 agrees to produce in response. A week later, the Responding Party shall update the description of

23 the places and/or persons it intends to search for responsive documents and shall also provide a

24 good faith estimate of the time required to begin rolling production and complete full production.

25 Meet and confer shall occur as necessary during the above request/response process and any

26 resulting changes to the scope of the request or to the scope of the response shall be made in

27 writing. The Parties shall work with each other and the Court to expeditiously resolve any

28 disputes regarding targeted search proposals or responses that cannot be resolved through meet

and confer efforts.  Despite any disagreements, and pending their resolution, the Parties agree to search for and produce any non-objectionable documents in response to a pending targeted search request on a rolling basis.  With any production, the Party shall describe in a cover letter the targeted search that the production responds to and the centralized sources and/or individuals searched.

### 5. Board Meeting Minute Redaction

Consistent with the July 3 Order, the Parties agree that they may redact non-responsive portions of Board meeting minutes and Board agendas.  When redacting such information, the Parties shall include the following information on a privilege log with respect to the redacted document(s): (a) a notation that the material has been redacted for non-responsiveness; (b) the beginning and ending Bates number; (c) the date of the document; (d) the total number of pages of the document; (e) the location of any meeting reflected in the document; (f) the names of any meeting attendees reflected in the document; and, (g) the general subject matter of the redacted content sufficient to establish that it is non-responsive.

### 6. The Parties' Expected Upcoming Discovery Motions

Though the Parties have continued to meet and confer to resolve the disputes listed in Section 2 of the June 24th Joint Discovery Conference Statement, and will continue to do so in advance of the July 24th Discovery Conference, the Parties still expect that certain disputes will need to be resolved by the Court.

In light of the upcoming discovery schedule and the impact that these motions may have on that schedule, the Parties jointly request that the Court set for hearing all of the following motions at its earliest convenience and work with the Parties to arrive at a mutually convenient briefing schedule.

*Oracle's Discovery Motions*:

(1) Motion re Certain of Defendants' Privilege Claims, including their claw-back of purportedly privileged documents;

(2) Motion re Designation and Preparation of Defendants' 30(b)(6) Witnesses; and,

(3) Motion to Compel Re-Review and De-Designation of Defendants' Confidential

and Highly Confidential Materials.

*Defendants' Discovery Motions:*

    (1)  Motion to Compel Production of Financial Documents Relevant to Damages;

    (2)  Motion to Compel Production of Copyright Related Documents.

DATED: July 18, 2008                        BINGHAM McCUTCHEN LLP

By: /s/ Holly A. House
        Holly A. House

Attorneys for Plaintiffs
Oracle Corporation, Oracle International Corporation, and Oracle USA, Inc.

    In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

DATED: July 18, 2008                        JONES DAY

By: /s/ Jason McDonell
        Jason McDonell

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC.

EXHIBIT A

| | |
|---|---|
| 1 | BINGHAM McCUTCHEN LLP |
| | DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468) |
| | HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009) |
| | BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center |
| | San Francisco, CA 94111-4067 |
| 5 | Telephone: (415) 393-2000 |
| | Facsimile: (415) 393-2286 |
| 6 | donn.pickett@bingham.com |
| | geoff.howard@bingham.com |
| 7 | holly.house@bingham.com |
| | zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and
Oracle International Corporation

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, *et al.,* | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **[ORACLE'S PROPOSED] JOINT PROPOSAL RE SAMPLING AND EXTRAPOLATION RE PEOPLESOFT ENVIRONMENTS AND FIXES** |
| v. | |
| SAP AG, *et al.*, | |
| Defendants. | |

Pursuant to the Court's July 3, 2008 Order Regarding Scope of Discovery ("Order"), Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this proposed stipulation for sampling and extrapolation of evidence relating to certain software environments and support materials. The Parties agree with the Court's observations in that Order that "[t]here may be other topics that may lend themselves to this approach" (Order at 4:27) and will meet and confer to attempt to arrive at additional protocols.

**I.     BACKGROUND**

1.     TomorrowNow, Inc. ("TN") has provided thousands of software fixes and updates for Oracle's PeopleSoft-branded products to customers since at least 2002.[1] Based on discovery conducted to date, Oracle believes that many, if not all, of these fixes or updates may have infringed its intellectual property, including due to the misuse of copies of, or portions of copies of, Oracle software environments. Because of the large number of Individual Client Fixes, Critical Support Updates, Financial Updates, Master Fixes, Sync-Up Bundles, and Retrofit Tax Updates (all defined below) for PeopleSoft software stored on TN's servers, and per the Court's guidance, the Parties agree they cannot efficiently collect, analyze, and offer comprehensive evidence directly related to every such fix and update. Therefore, per the Court's order, the Parties have agreed to the following protocol for the collection, analysis, and admission of evidence based on a representative sampling of these categories of fixes and updates for PeopleSoft software, and the software environment copies, including backups, in Defendants' possession.

---

[1] The specific fixes and updates included within the scope of this stipulation are defined below, and are not intended to encompass all fixes and updates generated or delivered by TN or other forms of service provided to TN's customers other than the fixes and updates addressed below. Oracle has recently begun a remote inspection of certain TN servers, and information derived from that and other related discovery may provide the basis for additional extrapolation proposals. For example, subject to further discovery this stipulation does not apply to Oracle's J.D. Edwards-branded ("JDE") products. This proposed stipulation also does not apply to Oracle's Siebel-branded products or its Hyperion-branded and Retek-branded products because there has not been adequate discovery to assess whether the scope of the environments on TN's servers and/or fixes provided for those environments warrant sampling and extrapolation. The Parties will consider sampling and extrapolation proposals for Oracle products other than PeopleSoft-branded products after further discovery.

2. On July 14, 2008, Oracle began a remote review of several TN servers where copies of many of the relevant updates, fixes, and environments reside. Oracle is reviewing this evidence to decide which files should be copied for production. As this is Oracle's first access to these servers, Oracle may need to adjust the parameters and/or the logistics of this protocol after Oracle has had a reasonable amount of time to assess the information on these servers. For instance, Oracle may discover documentation related to the fixes and updates that it did not previously know existed, or may discover that certain fixes or updates are structured or delivered in a different way than it currently understands, which may alter its understanding of the evidence it needs to assess for a given fix or update. Therefore, the Parties propose that the Court permit the filing of a supplemental and final stipulated protocol (or, if the Parties cannot agree, then a request by Oracle that the Court modify the protocol), if necessary, no later than [Date TBD]. If no supplemental proposal is filed, then this stipulation shall be deemed final and binding on all Parties.

3. The Parties understand that their agreement to this protocol does not preclude development of additional sampling and extrapolation protocols as to other categories of evidence, as appropriate (e.g., potentially re TN's' use of Oracle intellectual property in its training, research and trouble-shooting activities or re TN's downloading of Oracle intellectual property). The Parties will work with each other and the Court to determine the scope and timing for agreement to any additional protocols.

4. The Parties further understand and agree that their agreement to this protocol does not preclude the admission of evidence regarding other uses to which Defendants put Oracle's software environments and Software and Support Materials, including, without limitation, training, research, daily support and troubleshooting.

**II.    DEFINITIONS**

1. "Critical Support Update" shall mean an update for PeopleSoft's HRMS software applications generally referred to as such by Defendants' 30(b)(6) witnesses (see, e.g., Deposition of Kathy Williams at 13:10-21) and generally designated as such in Defendants' SAS database,

2    JOINT EXTRAPOLATION PROPOSAL RE PST
SOFTWARE ENVIRONMENTS
Case No. 07-CV-1658 PJH (EDL)

and comprising a tax and/or regulatory update consisting of a bundle of Master Fixes generally generated for publication to customers.

2. "Financial Update" shall mean an update for PeopleSoft's FDM software applications consisting of a bundle of Master Fixes generally generated for publication to customers.

3. "Identified Category" shall refer to the following categories of updates and fixes: Individual Client Fixes, Critical Support Updates delivered Pre-litigation, Critical Support Updates delivered Post-litigation, Financial Updates, Master Fixes, Sync-up Bundles, and Retrofit Tax Updates.

4. "Individual Client Fix" shall mean a fix generated for and published to only one customer.

5. "Master Fix" shall mean a fix with a Master Fix record in Defendants' SAS database that was generally generated for or published to multiple customers, whether as part of a bundled update or as a separate delivery.

6. The "Matrix" shall mean the Retrofit Tax Update project tool generally referred to by Defendants' 30(b)(6) witnesses (see, e.g., Deposition of Catherine Hyde at 166:7-169:3).

7. "Minimum Evidence" shall mean the following evidence per fix or update, as applicable:

    a. Forensic copies of the fix or update, as published to the customer(s);

    b. The SAS record associated with the fix or update;

    c. Identification of all Master Fixes eligible for potential inclusion in any customer's update;

    d. All objects developed for inclusion in any Master Fix or Individual Client Fix, by application release;

    e. Identification of all customers to whom Defendants published the fix or update;

    f. Documentation of attempts to replicate any problems or issues giving rise to the need for a fix or update, for example "Replication - Test Item" documents, "Test Plan /

Test Case" documents, or other documents tracking similar information, including the tracking of any environments used in the replication process;

       g.     Documentation of the initial development efforts and unit testing relating to a Master Fix, for example a "Unit Test" document, or other document tracking similar information, including the tracking of any environments used in the initial development and unit testing process;

       h.     Documentation of the Quality Testing / Quality Assurance process relating to a fix, for example an "Individual Testing" document, "Quality Test" document, or other document tracking similar information, including the tracking of any environments used in the Quality Testing / Quality Assurance process;

       i.     Documentation of the project plan related to testing and delivery of any bundled update, for example a "CSS Bundle Project Plan" or "Bundle Test Strategy Plan" for Critical Support Updates, or a "Retrofit Project Plan" for Retrofit Tax Updates, or other documents tracking similar information, including the tracking of any environments used in the bundled update testing and delivery process; and

       j.     For Retrofit Tax Updates, documentation of the Matrix entries related to the update.

    8.     "Post-litigation" shall mean the time period after March 22, 2007.

    9.     "Pre-litigation" shall mean the time period up to and including March 22, 2007.

    10.    "Retrofit Tax Update" shall mean an update generally designated as such in Defendants' SAS database, and comprising a tax and/or regulatory update created at least in part by downloading a fix or update from Oracle and using the download to generate an update compatible with an earlier version of the software for which the downloaded update was developed.

    11.    "Sample Set" shall mean a group of randomly selected fixes or updates within an Identified Category, according to the following:

       a.     Individual Client Fixes - [# TBD] fixes;

    b.  Critical Support Updates delivered Pre-litigation - [# TBD] updates for each of the years 2003-2007, or as many as are available for a particular year if not [# TBD], and [# TBD] corresponding Master Fixes for each of the selected updates, with the requirement that each set of [# TBD] Master Fixes include at least one fix with a batch file deliverable (e.g., SQR, COBOL, etc.), [# TBD] fix with a data-related deliverable (e.g., DAT, DMS, etc.), and [# TBD] fix published for each of PeopleSoft versions 7.x and 8.x (if any selected set of [# TBD] Master Fixes does not meet this requirement a new set of [# TBD] shall be selected);

    c.  Critical Support Updates delivered Post-litigation - [# TBD] updates for each of the years 2007 and 2008, or as many as are available for a particular year if not [# TBD], and [# TBD] corresponding Master Fixes for each of the selected updates, with the requirement that each set of [# TBD] Master Fixes include at least one fix with a batch file deliverable (e.g., SQR, COBOL, etc.), [# TBD] fix with a data-related deliverable (e.g., DAT, DMS, etc.), and [# TBD] fix published for each of PeopleSoft versions 7.x and 8.x (if any selected set of [# TBD] Master Fixes does not meet this requirement a new set of [# TBD] shall be selected);

    d.  Financial Updates - [# TBD] updates;

    e.  Master Fixes - [# TBD] fixes;

    f.  Sync-up Bundles - [# TBD] bundles;

    g.  Retrofit Tax Updates - [# TBD] updates from each of the years 2002-2008, or as many as are available for a particular year if not [# TBD].

  12.  "Sync-up Bundle" shall mean the type of update generally designated as such in Defendants' SAS database, and generally referred to as such by Defendants' 30(b)(6) witnesses (see, e.g., Deposition of Catherine Hyde at 300:23-301:22), and comprising a customer's first tax update, consisting of fixes intended to merge prior changes into the customer's code line.

### III. SAMPLING

  1.  For each Identified Category, Defendants shall provide by no later than [Date TBD] a comprehensive list of all fixes or updates, as applicable, within the Identified Category. The Parties shall index the lists and use an agreed-upon commercially-available random number generator to select the Sample Sets, no later than [Date TBD]. Defendants shall then provide the

Minimum Evidence for each selected fix or update by no later than [Date TBD], or alternatively notify Oracle of each fix or update for which the Minimum Evidence is not available. Defendants shall make a diligent and good faith effort to provide the Minimum Evidence. If Defendants cannot provide the Minimum Evidence for any selected fix or update, another shall be selected to replace it. The entire process of selecting Sample Sets, and gathering and providing the Minimum Evidence, including for replacement fixes and updates, shall be completed by [Date TBD].

**IV.  EXTRAPOLATION**

1. Once the Minimum Evidence has been collected, the parties agree that for any given characteristic of the fixes and updates in the Sample Set, the arithmetic mean of that characteristic across the Sample Set shall be admissible at trial as an accurate representation of the characteristic with respect to the entire corresponding Identified Category. In addition to the Minimum Evidence, the Parties may use additional evidence related to the fixes or updates in the Sample Sets, such as other documents or testimony, to construct and quantify various characteristics and calculate their arithmetic means, but no Party may challenge, or otherwise offer any evidence that would tend to call into question, including by introducing evidence related to fixes or updates outside the Sample Sets or statistical indicators such as standard error or confidence interval, the authenticity of the Sample Evidence, or the statistical validity or reliability of applying an arithmetic mean based on a Sample Set to the entire corresponding Identified Category.[2]

2. The Parties recognize that each Party may draw different conclusions, and thus calculate different arithmetic means, from the Minimum Evidence and/or other evidence related to the fixes or updates in the Sample Sets, and the Parties reserve the right to challenge such conclusions, including whether any characteristic or fact is relevant to Oracle's claims; however, the Parties hereby waive any right to argue that the arithmetic mean corresponding to any conclusion for a Sample Set cannot apply to an entire Identified Category. By way of example

---

[2] Such challenges would include, but not be limited to, challenges under Federal Rules of Evidence 901 (authenticity), 403 (prejudice, confusion, or waste of time), 702(1) (sufficiency of facts or data), or 702(2) (reliable principles or methods).

only, consider a Sample Set of 10 fixes from an Identified Category of 100 fixes. Oracle may conclude from the Minimum Evidence that there were 25 acts of infringement in the development of the 10 fixes in the Sample Set, and therefore 2.5 acts of infringement per fix in the Sample Set. Defendants do not waive their right to argue that Oracle is wrong about what constitutes infringement, or that there are less than 25 acts of infringement in the Sample Set. However, Defendants may not argue, or introduce any evidence that would support such an argument, that Oracle's conclusion about the number of acts of infringement per fix in the Sample Set, if correct, is not representative of all 100 fixes in the Identified Category, i.e., that there were 250 acts of infringement in the Identified Category. In other words, Defendants may not introduce evidence of other fixes with different characteristics than those in the Sample Set, and may not argue that the number of acts of infringements might have been different with an alternative Sample Set or that the Sample Set was not large enough to rely on to draw conclusions about all 100 fixes. The Parties acknowledge that the protocol for generating Sample Sets and gathering Minimum Evidence to apply to an entire Identified Category may not be statistically valid or reliable in the scientific or mathematical communities for any given variable, but have chosen this procedure and waiver of certain rights in the interest of conducting efficient discovery in this case.

DATED: July __, 2008                    BINGHAM McCUTCHEN LLP


                                        By: _____
                                            Holly A. House

                                        Attorneys for Plaintiffs
                                        Oracle Corporation, Oracle International
                                        Corporation, and Oracle USA, Inc.


    In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

| | | |
|---|---|---|
| DATED: July __, 2008 | | JONES DAY |

By: _____
        Jason McDonell

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.