BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF CLAWED BACK DOCUMENTS**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

A/72630143.1

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | DEFENDANTS HAVE MISAPPLIED THE AC PRIVILEGE TO CLEARLY NON-PRIVILEGED DOCUMENTS | 2 |
| III. | DEFENDANTS HAVE SELECTIVELY AND IMPLICITLY WAIVED THE PRIVILEGE REGARDING THE RULES OF ENGAGEMENT | 4 |
| IV. | ORACLE'S USE OF THE CONTESTED DOCUMENTS WAS PROPER | 8 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

Page

Cases

*Bittaker v. Woodford*, 331 F. 3d 715 (9th Cir. 2003)..................................................5, 6, 8

*In re Fischel*, 557 F.2d 209 (9th Cir. 1977) ..................................................................2

*Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D. Cal. 2003)..................................2, 6

*North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118
    (N.D. Cal. 2003)..........................................................................................................2, 3, 4

*PostX Corporation v. Secure Data In Motion, Inc.*, No. C-02-04483SI,
    2004 WL 2663518 (Nov. 20, 2004 N.D. Cal.)............................................................7

*U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156
    (E.D.N.Y. 1994)..........................................................................................................2, 3

# I. INTRODUCTION

Oracle's motion asks the Court to review a small set of documents that illustrate two broad problems with Defendants' document production and clawback process. The first category involves documents that simply are not privileged. The second involves documents for which, if privileged at all, Defendants have waived that privilege by "selecting" favorable examples to produce while shielding harmful examples based on privilege.

Defendants respond in three ways. First, through an elaborate set of conclusory declarations and related argument, they retroactively characterize the documents in ways contradicted by the documents' plain language. For example, documents that on their face described "business communications" now get re-labeled as "legal advice." That effort fails because the AC privilege does not protect business information, whether communicated to an attorney or not, and regardless of any label placed on it after the fact. Upon examination, the documents in category one do not support Defendants' description of them and are not privileged.

Second, Defendants rely on their "careful parsing" of documents similar to each other. But, again upon examination, Defendants' attempted parsing is unjustified and unsupportable. Their "parsing" in fact supports Oracle's contention that Defendants have taken a large group of similar documents on interrelated subjects, produced some of them and withheld others without any reasonable supporting rationale. Indeed, Defendants' "parsing" suggests that they made privilege claims based more upon the damaging character of the underlying content, not whether it really contained legal advice. For example, Defendants offer no convincing distinction between legal and business advice in their assertion that a business analysis by the SAP Board of Directors became legal advice by virtue of being forwarded by an attorney.

Third, Defendants answer arguments Oracle did not make and contradict testimony offered by their own witnesses. Oracle does not argue express waiver relating to the Rules of Engagement, though much of Defendants' brief and responsive evidence seems to address that issue. Instead, Oracle contended that Defendants' inconsistent approach amounted to selective and implicit waiver. Defendants' opposition brief illustrates the inconsistent approach relating to the Rules of Engagement subject matter. Defendants downplay the use of those documents as a "sword" by

A/72630143.1

denying that they created the Rules of Engagement to limit SAP's liability (despite an SAP 30(b)(6) witness' admission that was precisely the purpose of the Rules). On the other hand, Defendants admit that they intended the Rules to prevent illicit sharing of Oracle's intellectual property. Either way, the Rules' purpose, creation, interpretation, and application directly relate to Oracle's claims. Defendants have put them at issue by asserting them as a sword to contradict Oracle's claims of intentional infringement. It is not fair to permit Defendants to allow some discovery of the Rules, selected by them, and disallow the remainder.

Finally, Oracle disagrees strongly with Defendants' claim that Oracle made improper use of the clawed back documents. Oracle agrees that the issue requires clarification. However, that issue is distinct from the substance of Oracle's motion. Oracle disagrees with Defendants' apparent argument that the disagreement over how disputed documents get used in a motion to compel provides any ground to deny Oracle's motion.

## II. DEFENDANTS HAVE MISAPPLIED THE AC PRIVILEGE TO CLEARLY NON-PRIVILEGED DOCUMENTS

The documents illustrative of category one speak for themselves. Defendants' numerous declarations and lengthy, circular explanations cannot change the underlying content or imbue these documents with a privilege that did not apply at the time of their creation.

Indeed, Defendants' own legal framework confirms the non-privileged nature of these documents. The first and third "essential elements" of the attorney-client privilege require "communications relating to" the purpose of seeking *legal* advice. *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977); Opp. at 3. In other words, the "motive for the communication" is an "important consideration." *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994). When that purpose, or motive, is primarily to seek *business* advice, the communication is not privileged. *See id.*; *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003) ("[L]egal advice is implicated 'if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the *primary purpose* of the consultation." (emphasis in original)); *see also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 515 (S.D. Cal. 2003) (stating that distinction between "legal versus business advice" is

A/72630143.1 2

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF CLAWED BACK DOCUMENTS

found when information communicated "between corporate counsel and company personnel" is *"relayed for the purpose of obtaining legal advice"* (emphasis in original)).

Defendants offer no meaningful analysis as to why the contents of the documents at issue constitute legal, and not business, advice. Instead, they make conclusory and unsupported statements, while declaring that they have carefully parsed their documents. Contrary to these assertions, the clawed back materials in category one appear to have one common denominator – the assertion of privilege to protect the most damaging aspect of a particular document. None is a communication made for the purpose of seeking legal advice. Others appear to convey non-privileged information.

Taking the documents in order, while Defendants describe document #1 (Howard Dec., Ex. B) as containing "a request [for] certain business information" by one TomorrowNow non-attorney employee to another, containing "summaries of information" collected by a non-attorney, and as a "proposed agenda for a call," and "notes from portions of the legal advice" he received (Opp. at 5), they then summarily declare that the notes and other content in this document related to "legal advice" sought or obtained from an attorney. *Id.*

That circular reasoning fails. Defendants may not withhold communications as privileged simply by claiming that they relate to legal advice when the face of the document indicates otherwise. Communications involving an attorney merely passing along information are not privileged. *See North Pacifica*, 274 F. Supp. 2d at 1129 & n.5 (when an attorney merely passes information along, it is not a confidential communication); *see also U.S. Postal*, 852 F. Supp. at 160 ("[T]he mere fact that a communication is made directly to an attorney . . . does not mean that the communication is necessarily privileged."). Oracle believes that the Court's *in-camera* review will reveal that on its face this document did not contain legal advice, but rather summarized non-legal information being passed along by an attorney, and therefore conclude that the privilege claims should fail.

Defendants' description of document #2 (Howard Dec., Ex. C) also fails. Defendants assert that the redacted portion of document #2 contains a "summary of [] legal risks," Opp. at 6, whereas the document itself, just above the redaction, clearly states that " ███████

A/72630143.1    3

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Howard Dec., Ex. C (at
2 TN-OR00164404). The mere involvement of ▮▮▮▮▮▮▮ in a business group's creation of
3 a risk assessment does not make the assessment privileged. *See North Pacifica*, 274 F. Supp. 2d at
4 1127 (mere presence of attorneys does not create privilege). Moreover, Defendants again simply
5 assert that this document reflects lawyers' assessment of legal risks, while the document indicates
6 the opposite. For example, the statement that "more detailed results" could be "made available
7 under 'Attorney Client Privilege'" demonstrates that the redacted portion of the document is not a
8 matter of privilege since it is separate from the "more detailed results" that could be made
9 available under "Attorney Client Privilege." The footnote about the outstanding technical risk
10 assessment has no bearing on whether the redacted risk assessment summary is legal or not.
11 *Compare* Opp. at 6 (describing the footnote as business advice) *with* Geng Dec. at 2:24-27
12 (describing the footnote as a reference to some technical risk assessment) *and* Howard Dec., Ex. C
13 (the document itself).[1]

14 Defendants characterize document #4 as an email string that stemmed from "a request for
15 legal advice" regarding the "integration of sales forces." Again, the AC privilege only attaches if
16 "legal assistance is the *primary purpose* of the consultation." *See North Pacifica*, 274 F. Supp. 2d
17 at 1127. Defendants cannot have it both ways. They cannot characterize this document as "legal
18 advice" but not the many other similar documents they have produced (which do not appear to
19 contain the same type of damaging information). *See, e.g.*, Howard Dec., Ex. O (at 399:11-19,
20 non-privileged testimony concerning same topic) and Ex. X (non-privileged email concerning
21 ▮▮▮▮▮). The Court should not endorse Defendants' self-serving application of the privilege.
22 *See* Section III, below.

### III. DEFENDANTS HAVE SELECTIVELY AND IMPLICITLY WAIVED THE PRIVILEGE REGARDING THE RULES OF ENGAGEMENT

25 Defendants have both misunderstood and misconstrued the selective waiver argument.

---

[1] Document #3 is not addressed in this reply due to Defendants having withdrawn it at the last minute prior to Oracle filing its motion. *See* Mot. to Compel at 3 & n.2.

1   They have misunderstood it by responding to a perceived express waiver argument that Oracle did
2   not make. The issue is not, as Defendants seem to argue, whether they have expressly asserted the
3   advice of counsel defense (at least with respect to this narrow issue of the Rules of Engagement).
4   *See* Opp. at 8-9. Rather, the issue is whether Defendants can orchestrate a litigation defense
5   strategy – including in court and out of court statements – that revolves around admitted legal
6   advice to mitigate SAP's liability through the Rules of Engagement, but shield that advice when it
7   suits them. They cannot have it both ways, and the mounting inconsistencies surrounding the
8   Rules of Engagement fully illustrate the problem.
9           To begin, Defendants are wrong when they assert they do not use the Rules of Engagement
10  as a "sword." *See* Opp. at 9. They have repeatedly defended their use of Oracle's copyrighted
11  software by reference to the Rules, citing the Rules as some kind of protection of Oracle's
12  intellectual property and a basis to limit SAP's liability. *See, e.g.,* Howard Dec., Exs. N-P
13  (deposition excerpts); Answer at ¶ 2 (referencing the "steps" Defendants have allegedly taken "to
14  assure that TN's business is conducted properly"). Yet they invoke the AC Privilege to limit
15  Oracle's discovery of the Rules to only that evidence Defendants wish Oracle to have. Under the
16  law and under common sense principles of fairness, by touting the Rules of Engagement as a basis
17  to limit liability, Defendants have placed at issue those Rules and must allow full discovery of
18  them in order "to give [their] opponent a fair opportunity to defend against it." *See Bittaker v.*
19  *Woodford*, 331 F. 3d 715, 720 (9th Cir. 2003).
20          Defendants' argument is grounded in contradictory and revealing statements about the
21  Rules of Engagement. For example, Defendants argue that the Rules of Engagement "were
22  adopted by SAP's Executive Board and implemented by TN's and SAP's business executives
23  based on the business decision to create a figurative 'firewall' between SAP and TN in an effort to
24  prevent the physical passing from TN to SAP of any Oracle intellectual property." Opp. at 2.
25  That, among other things, is a direct concession of using the Rules of Engagement as a sword. Yet
26  Defendants ignore their own position in asserting there is no sword. They ultimately deny –
27  contrary to their prior statement and their own witness' testimony (Howard Dec., Ex. P at 279:8-
28  280:24) – that the firewall's purpose was to prevent the passing of liability. Opp. at 9. Because

Defendants use the Rules of Engagement to defend their conduct, they must allow discovery of it. *See Bittaker*, 331 F. 3d at 720.

Moreover, Defendants compound the unfairness to Oracle by selectively waiving the privilege relating to the Rules of Engagement. For example, Document #4 illustrates selective waiver due to Defendants' insistence that it contains privileged legal advice, whereas other communications about the same topic do not. *See, e.g.*, Howard Dec. Ex. O (at 399:11-19, testimony about attorney's instruction on integration pursuant to Rules of Engagement) and Ex. X (email discussing ████████ issue, copying attorneys).

These false distinctions illustrate why Defendants' selective assertion of the privilege as to the Rules of Engagement cannot stand. If Defendants intended the firewall to prevent the passing of IP, they also intended it to prevent the passing of legal liability (as they elsewhere admit). If the Rules were a business decision, then interpretations of how the Rules apply do not suddenly become legal analysis. Defendants struggle to draw a sensible distinction between these issues in practice. They assert that "the clawed back documents look in many ways like non-privileged documents except they contain attorney client communications." Opp. at 17. That statement fails to explain *why* Defendants' assertions of privilege over some documents but not others is not an indefensible strategic use of the privilege.

Documents #5 and #6 illustrate this implicit waiver. Defendants have shielded certain documents on grounds of AC privilege,[2] but they use the same subject matter as a sword by repeatedly asserting their behavior was *legally permissible*. They support that assertion by referring to the Rules of Engagement, which they claim to have set up as a firewall in order to protect Oracle's intellectual property. *See* Mot. to Compel at 10. SAP's 30(b)(6) testimony,

---

[2] Defendants argue that Document #5, which concerns an amendment to the Rules of Engagement (a business policy) is privileged because it was sent to Chris Faye, a lawyer, and therefore has as its "purpose" the seeking of legal advice. Opp. at 18. This circular reasoning contradicts the rule that "communications transacting the general business of the company do not attain privileged status solely because in-house ... counsel is 'copied in'." *See Kintera*, 219 F.R.D. at 515. Defendants' logic would obliterate the business communications carve-out from AC Privilege jurisprudence, because it appears sweepingly to classify all communications with in-house counsel as requests for "legal" advice.

A/72630143.1/2021039-0000324170        6
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF CLAWED BACK DOCUMENTS

through Arlen Shenkman, illustrates this "sword" approach. Shenkman volunteered testimony (over no objection by defense counsel) that revealed the content of an SAP attorney's instructions to SAP employees regarding the Rules of Engagement for the admitted purpose of shielding liability. *See* Howard Dec., Ex. O (at 397:17-399:19).

That testimony differs from the "manufactured sword" issue cited by Defendants in *PostX Corporation v. Secure Data In Motion, Inc.*, No. C-02-04483SI, 2004 WL 2663518 (Nov. 20, 2004 N.D. Cal.). There, the plaintiff asserted simply that its claims had a legal basis and were made in good faith (*id.* at *15), and that they relied on the advice of counsel in filing the action (*id.* at *16). Here, Defendants have volunteered certain information about their attorneys' involvement in creating and interpreting of the Rules of Engagement. *See, e.g.,* Howard Dec., Ex. O. They have placed the attorneys' involvement with and interpretation of the Rules of Engagement at issue by arguing that the Rules, a business policy, were adopted in order to create a firewall and prevent illegal sharing of intellectual property. *See, e.g.,* Opp. at 2. If Defendants' attorneys were integrally involved in creating, interpreting, and applying the Rules of Engagement, and the Rules could only be fully understood by Defendants themselves via input from their lawyers (*see* Howard Dec., Ex. O), then Plaintiffs would be at a real disadvantage by having access to only a selected portion of the attorney-related evidence.

Finally, Defendant's "promise" to limit use of evidence regarding the Rules of Engagement[3] is not a viable or fair alternative. In the first place, as explained above, Defendants have already done what they now promise not to do. *See, e.g.,* Howard Dec., Ex. O (at 399:13-19; testimony of Mr. Shenkman that he was instructed by an attorney to wait for receipt of the Rules of Engagement before making a business assessment). Indeed, even if they had not already selectively waived the privilege, it is hard to imagine how they could fail to do so in the future while still referencing the Rules at all, given their assertions that lawyers were involved at every

---

[3] Defendants promised that they "will not use as a defense in this case the fact or substance of their lawyers' contemporaneous legal analysis or legal advice relating to the creation, content, and interpretation of the ROE." Opp. at 14.

step. Opp. at 14. More importantly, it would continue to allow them to have it both ways – to protect against discovery of some of their lawyers' involvement in the creation, strategy and implementation of the Rules, while simultaneously maintaining that the Rules protect their conduct.

In sum, Defendants walk an impossibly fine line in arguing that they have not asserted the Rules of Engagement "firewall" affirmatively, since they have done just that since the beginning of the case. Under the law, Defendants cannot shield Oracle's full discovery of the facts behind their creation. *See Bittaker*, 331 F. 3d at 720.

## IV. ORACLE'S USE OF THE CONTESTED DOCUMENTS WAS PROPER

In preparing this motion, Oracle relied on the stipulated Protective Order (the parties "shall not use such information for any purpose *other than in connection with a motion to compel*") (emphasis supplied), the Court's May 29, 2008 Order (Plaintiffs "may refer to the document in the context of a motion to compel") and associated hearing transcript (allowing Oracle to "refer to the contents" of a document in making its motion to compel), and the Court's colloquy with the parties during the July 24, 2008 discovery conference (during which the Court expressed that it was unclear who should submit the contested documents as exhibits, and suggesting the parties attempt to resolve the issue between themselves).[4]

Each of these support Oracle's understanding, that in preparing a motion to compel, it could "refer" to the documents at issue. Oracle read the words "refer to" by a common definition, and one it believed reasonable under the circumstances: "to read something in order to get information." *See* Cambridge Dictionaries Online, http://dictionary.cambridge.org (defining "refer to"). If "refer to" were given only its narrowest meaning, allowing Oracle solely to *mention* the existence of the documents in writing a motion to compel about them, the motion would lack any meaningful substance.

---

[4] In advance of filing its motion, in recognition that the parties had not reached agreement over the extent to which Oracle could "refer to" the documents, Oracle invited Defendants' preference over whether Oracle or Defendants would submit the contested documents to the Court. *See* Mot. to Compel at 2 & n.1.

1    Defendants attempt to use this lack of consensus over the meaning of "refer to" as a smoke
2    screen to confuse the real issues in this motion and argue for the Court to deny Oracle's motion.
3    The meaning of "refer" has no bearing on whether or not Defendants have properly asserted the
4    privilege. Oracle will abide by any rule the Court sets forth going forward as to the use of or
5    referral to contested documents, but Oracle objects to Defendants' attempt to retroactively revise
6    the various Orders in order to fit their argument or to cast Oracle in a bad light.

## V. CONCLUSION

Throughout their Opposition, Defendants ignore key arguments and evidence, repeatedly make unsupported conclusory statements, manipulate the AC Privilege into a shield for sensitive information rather than truly privileged information, and attempt to create a smoke screen of the parties' differing yet honest interpretations of Court Orders. None of these tactics has any bearing on the actual content or uses of the contested documents. For the reasons stated above and in Oracle's Motion to Compel, the documents at issue are examples of non-privileged information or sword/shield use of the AC Privilege. Oracle respectfully requests that the Court grant its motion and order the requested relief.

DATED: August 20, 2008                BINGHAM McCUTCHEN LLP


By:_____/s/ Geoffrey M. Howard_____
            Geoffrey M. Howard
            Attorneys for Plaintiffs
   Oracle Corporation, Oracle USA, Inc., and
            Oracle International Corporation