| | |
|---|---|
| 1 | Robert A. Mittelstaedt (SBN 060359) |
| | Jason McDonell (SBN 115084) |
| 2 | Elaine Wallace (SBN 197882) |
| | JONES DAY |
| 3 | 555 California Street, 26th Floor |
| | San Francisco, CA 94104 |
| 4 | Telephone: (415) 626-3939 |
| | Facsimile: (415) 875-5700 |
| 5 | ramittelstaedt@jonesday.com |
| | jmcdonell@jonesday.com |
| 6 | ewallace@jonesday.com |
| 7 | Tharan Gregory Lanier (SBN 138784) |
| | Jane L. Froyd (SBN 220776) |
| 8 | JONES DAY |
| | 1755 Embarcadero Road |
| 9 | Palo Alto, CA 94303 |
| | Telephone: (650) 739-3939 |
| 10 | Facsimile: (650) 739-3900 |
| | tglanier@jonesday.com |
| 11 | jfroyd@jonesday.com |
| 12 | Scott W. Cowan (Admitted *Pro Hac Vice*) |
| | Joshua L. Fuchs (Admitted *Pro Hac Vice*) |
| 13 | JONES DAY |
| | 717 Texas, Suite 3300 |
| 14 | Houston, TX 77002 |
| | Telephone: (832) 239-3939 |
| 15 | Facsimile: (832) 239-3600 |
| | swcowan@jonesday.com |
| 16 | jlfuchs@jonesday.com |
| 17 | Attorneys for Defendants |
| | SAP AG, SAP AMERICA, INC., and |
| 18 | TOMORROWNOW, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **REPLY ISO DEFENDANTS' FRCP 12(B)(1) AND 12(B)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, BREACH OF CONTRACT, UNFAIR COMPETITION, AN ACCOUNTING AND UNJUST ENRICHMENT** |
| v. | |
| SAP AG, et al., | |
| Defendants. | |
| | Date: November 19, 2008; Time: 9:00 a.m. |
| | Courtroom: 3, 17th Floor |
| | Judge: Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION & SUMMARY OF REPLY ARGUMENT ........................................ 1
II. ARGUMENT ................................................................................................................ 2
    A. Neither JDEE Nor OSC May Assert Copyright Claims in This Court ................... 2
        1. JDEE Has No U.S. Rights That Could Give Rise to a Claim of Copyright Infringement Under the U.S. Copyright Act .............................. 2
        2. OSC Is Not A Proper Copyright Plaintiff Because It Has Neither Owned or Exclusively Licensed Any of the Copyrights at Issue Nor Ever Received an Express Transfer of the Right to Sue for Accrued Causes of Action ............................................................................................ 4
        3. Dismissal of JDEE's and OSC's Copyright Claims Should be Without Leave to Amend ................................................................................ 6
    B. Plaintiffs Concede That the Copyright Act Preempts Their Interference, Breach of Contract, Unfair Competition, and Accounting Claims ........................ 6
        1. Plaintiffs' Interference Claims Are Preempted to the Extent They Are Based on Alleged Copyright Infringement ........................................... 7
        2. Plaintiffs' Breach of Contract Claims Are Preempted to the Extent They Are Based on Alleged Copyright Infringement ................................. 8
        3. Plaintiffs' Claims For Unfair Competition and an Accounting Are Preempted to the Extent They Are Based on Alleged Copyright Infringement ..................................................................................................... 9
    C. Plaintiffs' Breach of Contract Claims Should Be Dismissed Because Defendants Are Not Parties to the Alleged Contracts ............................................ 10
    D. Plaintiffs' Claim for "Unjust Enrichment/Restitution" Should Be Dismissed .................................................................................................................. 12
III. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Allarcom Pay Television Ltd. v. General Instrument Corp.*,
  69 F.3d 381 (9th Cir. 1995) ................................................................................................ 2, 3

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ............................................................................................................ 3, 4

*Co-opportunities, Inc. v. Nat'l Broadcasting Co., Inc.*,
  510 F. Supp. 43 (N.D. Cal. 1981) .......................................................................................... 5

*De Silva Construction Corp. v. Herrald*,
  213 F. Supp. 184 (M.D. Fla. 1962) ..................................................................................... 5, 6

*Dorr v. Yahoo! Inc.*,
  No. C 08-01428 MJJ, 2007 U.S. Dist. LEXIS 59126 (N.D. Cal. July 30, 2007) ..................... 13

*DSU Aviation LLC v. PCMT Aviation, LLC*,
  Case No. 07-1478, 2007 U.S. Dist. LEXIS 86835 (Nov. 14, 2007) ....................................... 13

*Enreach Tech., Inc. v. Embedded Internet Solns., Inc.*,
  403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................................................................. 12

*Firooyze v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001) .................................................................................. 8

*Gold v. Los Angeles Democratic League*,
  49 Cal. App. 3d 365 (1975) .................................................................................................. 14

*Idema v. Dreamworks*,
  162 F. Supp. 2d 1129 (N.D. Cal. 2008) .................................................................................. 6

*Lectrodryer v. Seoulbank*,
  77 Cal. App. 4th 723 (2000) ................................................................................................. 12

*Litecubes, LLC v. Northern Light Prods., Inc.*,
  523 F.3d 1353 (Fed. Cir. 2008) .............................................................................................. 4

*Mazur v. eBay Inc.*,
  No. C 07-03967 MHP, 2008 U.S. Dist. LEXIS 16561 (N.D. Cal. Mar. 4, 2008) ..................... 13

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) .......................................................................................... 12, 13

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ............................................................................................... 12

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  540 F. Supp. 2d 438 (S.D.N.Y. 2007) .................................................................................... 4

*O'Mahony v. Accenture Ltd.*,
  537 F. Supp. 2d 506 (S.D.N.Y. 2008) .................................................................................... 4

*Ott v. Home Savings & Loan Ass'n.*,
  265 F.2d 643 (9th Cir. 1958) ................................................................................................ 11

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ................................................................................................ 13

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ............................................................................................ 6, 12

*Silvers v. Sony Pictures Entm't*,
  402 F.3d 881 (9th Cir. 2005) ............................................................................................. 4

*Stewart v. Abend*,
  495 U.S. 207 (1990) ...................................................................................................... 2, 3

*Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994) ............................................................................................ 2

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .......................................................................................... 4

*U.S. v. Blum*,
  Civil No. C-89-4524 EFL (FSL), 1991 U.S. Dist. LEXIS 13625
  (N.D. Cal. Sept. 16, 1991) .............................................................................................. 11

*Williams v. Sugar Hill Music Publishing, Ltd.*,
  No. C 05-03155 (MEJ), 2006 WL 1883350 (N.D. Cal. July 7, 2006) ............................. 4

*Wrench LLC v. Taco Bell Corp.*,
  256 F.3d 446 (6th Cir. 2001) ............................................................................................ 8

**Statutes**

17 U.S.C. § 201(d) ................................................................................................................. 2

17 U.S.C. § 501(b) ................................................................................................................. 4

Cal. Civ. Code § 2330 .......................................................................................................... 11

**Other Authorities**

R.2d. of Agency § 320 ......................................................................................................... 11

## I. INTRODUCTION & SUMMARY OF REPLY ARGUMENT

Plaintiffs do not even attempt to explain their failure to name the proper parties when they filed this case in 2007. Instead they seek to justify their *fourth* attempt at a complaint with the same rhetoric, purported shock, and laundry list of alleged bad acts that have characterized their filings in this case. When what Plaintiffs actually plead in the Third Amended Complaint is compared to the law and to Plaintiffs' numerous concessions in their Opposition, it is plain that Defendants' motion to dismiss should be granted. Specifically:

- **Copyright Infringement** – Plaintiffs concede that only an owner or exclusive licensee of U.S. rights under the Copyright Act may sue for copyright infringement in the United States. JDEE is the exclusive licensee of only non-U.S. rights. OSC is not now and never has been the owner or exclusive licensee of any copyrights at issue here. Thus, neither JDEE nor OSC may sue for copyright infringement. No new pleading can change these facts, and dismissal of JDEE and OSC's copyright claims should be without leave to amend.

- **Preemption** – Plaintiffs concede that the Copyright Act preempts their state law claims to the extent that those claims are based on acts of alleged copyright infringement. Plaintiffs' state law claims at issue ignore that basic principle and are based on alleged acts of copying, distribution, and creation of derivative works, which are all covered by the Copyright Act and are all preempted to that extent. No re-pleading can change the law, and dismissal of the preempted claims should be without leave to amend.

- **Breach of Contract** – Plaintiffs now concede that TN accessed software and support materials on behalf of and as an agent for its customers. That concession, notably inconsistent with the rest of Plaintiffs' rhetorical pleading, does not save the breach of contract claim. Neither TN nor any Defendant is bound under the express terms of the alleged contracts, nor can TN or any Defendant be bound as a principal if TN was, as Plaintiffs concede, acting as an agent. Re-pleading cannot change the terms of the contracts, and the breach of contract claim should be dismissed without leave to amend.

- **Unjust Enrichment** – Plaintiffs concede that their "unjust enrichment" claim can only survive if it is recast as one for "restitution." While Plaintiffs argue, relying on one word in

1 the title of the claim, that this is what they pled, that actual words of their claim make it clear that the "unjust enrichment" claim was an improper attempt to capture every tort and contract claim in the complaint under one amorphous and nonexistent cause of action. The "unjust enrichment" claim Plaintiffs asserted should be dismissed without leave to amend.

This case boils down to three basic questions: (1) did TN improperly access Plaintiffs' computers; (2) did TN improperly copy, distribute, and/or create derivative works based on Plaintiffs' copyrighted software; and (3) were any Plaintiffs actually harmed, and, if so, how and how much? Plaintiffs would rather try to preserve their shotgun pleading than focus this case on the core issues. Whatever their motives, Plaintiffs' numerous concessions demonstrate that Defendants' motion was necessary and well founded, and that it should be granted.

## II. ARGUMENT

### A. Neither JDEE Nor OSC May Assert Copyright Claims in This Court

Plaintiffs misunderstand and/or misconstrue basic copyright law. Based on Plaintiffs' concessions alone, JDEE and OSC should be dismissed from this case.

#### 1. JDEE Has No U.S. Rights That Could Give Rise to a Claim of Copyright Infringement Under the U.S. Copyright Act.

Plaintiffs concede that the Copyright Act does not apply to acts of infringement that "take place entirely outside the United States." Pl. Opp. at 5, citing *Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994); *see also Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995). Plaintiffs' confusion over (or misrepresentation of) what rights JDEE possesses leads them to argue incorrectly that JDEE's rights can somehow be infringed in the United States. This is wrong because JDEE has no *U.S.* rights at all.

Plaintiffs' inaccurately state that "JDEE has exclusively licensed certain United States copyrights at issue in this case." Pl. Opp. at 3. Plaintiffs are obviously confused. A copyright owner's exclusive rights are really a "bundle of rights," which include, among other things, the right to reproduce, the right to distribute, and the right to prepare derivative works. *See* 17 U.S.C. § 201(d); *Stewart v. Abend*, 495 U.S. 207, 220 (1990). This "bundle" of rights is divisible; the

copyright owner may transfer one or more "stick" while retaining the others, and the rights to each "stick" may be limited by geographic and temporal restrictions. *See id.*

Looking at the actual (and only relevant) agreement, JDEE is only an exclusive licensee to a very particular right in the bundle—the right just to distribute certain copyrights at issue in this case, and then just in EMEA. *See* June 4, 1998 Agreement (Lanier Decl. ¶ 19 (Ex. 1)). Because JDEE *has no rights* in the United States, there can be no infringement of JDEE's rights under the U.S. Copyright Act. It is a legal impossibility. Whatever happened in the United States, JDEE's rights exist only outside the country, and any infringement of JDEE's rights can occur only outside of the U.S.

Thus, Plaintiffs' insistence that the Copyright Act applies generally to infringement that takes place in the U.S. and subsequent exploitation of that infringement abroad is accurate, but irrelevant.[1] So too are the several pages Plaintiffs devote to describing Defendants' alleged U.S.-based conduct. Where a particular plaintiff owns no U.S. rights, there is no infringement of that plaintiff's rights under the U.S. Copyright Act. JDEE's copyright claim should be dismissed.

Plaintiffs raise one additional point that they concede does not matter—that Defendants' motion to dismiss JDEE's claim of extraterritorial infringement should be characterized as a Rule 12(b)(6) motion, rather than as a Rule 12(b)(1) motion. *See* Pl. Opp. at 2-3. Even if this Court determines that this issue is more properly addressed under Rule 12(b)(6), Plaintiffs concede that the JDEE issue is ripe for consideration on this motion.

And Plaintiffs are incorrect that this motion should be brought under Rule 12(b)(6). Their argument rests on the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), which determined that the issue of whether the defendant fell under Title VII's limited definition of "employer" was a merits issue of a Title VII claim, not a jurisdictional issue. But *Arbaugh* does not even purport to address the issue of federal courts' jurisdiction over claims seeking

---

[1] Plaintiffs' analysis of *Allarcom Pay Television, Ltd. v. General Instrument Corp.* is flawed. Plaintiffs attempt to distinguish *Allarcom* because the *Allarcom* defendant had a license to broadcast the copyrighted content in the U.S. and thus could not commit infringement in the U.S. That alleged distinction is not applicable here because it is not alleged that SAP has a U.S. license to the asserted copyrights (if it did, there would be no copyright claim). The issue here is that JDEE has no rights within the U.S. Like the *Allarcom* plaintiff, JDEE's rights can only be infringed outside of the U.S.

extraterritorial application of federal laws like the Copyright Act. *See O'Mahony v. Accenture Ltd.,* 537 F. Supp. 2d 506, 509 (S.D.N.Y. 2008) (ruling that defendants' 12(b)(6) motion must be decided under 12(b)(1), because "the issue of the extraterritorial application of a U.S. statute implicates subject matter jurisdiction"); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 440-41 (S.D.N.Y. 2007). Indeed, the Northern District of California has, post-*Arbaugh*, continued to dismiss on jurisdictional grounds copyright actions involving extraterritorial infringement. *See Williams v. Sugar Hill Music Publishing, Ltd.*, No. C 05-03155 (MEJ), 2006 WL 1883350, at *9 (N.D. Cal. July 7, 2006) (holding that there was no jurisdiction based on copyright law for plaintiffs' claims of alleged infringement relating to foreign distribution). Only the Federal Circuit has broadened the reach of the *Arbaugh* decision as Plaintiffs advocate here. *See Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008). This Court should decline to follow *Litecubes* and should instead join with the majority of courts, including its sister court in Northern California, to consider this issue under Rule 12(b)(1).

**2. OSC Is Not A Proper Copyright Plaintiff Because It Has Neither Owned or Exclusively Licensed Any of the Copyrights at Issue Nor Ever Received an Express Transfer of the Right to Sue for Accrued Causes of Action.**

Once again, Plaintiffs misconstrue copyright law. Plaintiffs' entire argument regarding OSC's standing rests on an unsupported assumption that OSC acquired "through merger" certain PeopleSoft and J.D. Edwards entities' rights to sue for past infringement of copyrights that are now owned by OIC (*not* OSC). *See* Pl. Opp. at 8, 10; *see also* 17 U.S.C. § 501(b); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005). Plaintiffs cite no authority to support the conclusion that merger automatically transfers accrued causes of action, and their failure to do so is telling.

In fact, but for their incorrect assumption, Plaintiffs' argument makes Defendants' case. Plaintiffs recognize that only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for infringement of that right while he or she is the owner of it." Pl. Opp. at 8, citing 17 U.S.C. § 501(b). Plaintiffs acknowledge that OSC is not,

and never has been, an owner or exclusive licensee of the copyrights at issue. *See* Pl. Opp. at 9. This alone justifies dismissal of OSC's copyright infringement claim. Further, Plaintiffs concede that transfers of the right to sue for accrued infringement claims must be express and do not automatically transfer with the copyrights that gave rise to those claims. *See* Pl. Opp. at 8. Critically, though, Plaintiffs do not plead that OSC was expressly granted the right to sue for accrued causes of action. As a result, OSC has not established standing or capacity to sue for past causes of action. It is just that simple.

Plaintiffs' assumption that the right to sue for past infringement automatically transfers in the merger context is incorrect. Such transfers must be express and explicit, *including in a merger*. *See Co-opportunities, Inc. v. Nat'l Broadcasting Co., Inc.*, 510 F. Supp. 43, 46 (N.D. Cal. 1981). In *Co-opportunities*, the court found that the plaintiff lacked standing to sue for earlier-occurring copyright infringement because its predecessor company failed to make a "specific assignment of accrued causes of action," despite having transferred "his various copyrights . . . and 'all assets' of BMC to plaintiff in exchange for stock in the new corporation." *Id.* at 45-46. The court held that the transfer of "all" assets could not be read to confer the right to sue upon the plaintiff because the transfer of the right to sue must be explicit. *Id.* at 46. In support of its position, the *Co-opportunities* court cited a similar district court case, *De Silva Construction Corp. v. Herrald*, 213 F. Supp. 184 (M.D. Fla. 1962).

In *De Silva*, the court found that plaintiff Florida corporation lacked standing to sue for copyright infringement that had occurred when its predecessor New York corporation had owned the copyrights. *See* 213 F. Supp. at 192. The court based its conclusion on the fact that the New York corporation's assignment of copyrights to the plaintiff did not "purport to grant the assignee any right to sue for infringements antedating the assignment." *Id.* Plaintiff had argued that although there had been no explicit transfer of accrued causes of action, such transfer had been implicit in light of the fact that the New York corporation and Florida corporation were "'family' corporations" and that "there existed such community of interests and identity between the two corporations that it would be unjust to apply the law as cited." *Id.* at 193. The court rejected plaintiff's arguments, citing the fact that "the individual officers and stockholders have

- 5 -

REPLY ISO DEFENDANTS' MOTION TO DISMISS
Case No. 07-CV-1658 PJH

voluntarily chosen to conduct their business in a corporate form . . . and the individual stockholders and directors cannot avail themselves of the corporate shield when it suits their purpose and discard the same when it does not appear advantageous." *Id.* The court thus made clear that even related companies must explicitly assign accrued causes of action for a copyright assignee to have standing to pursue those causes of action. *See id.*

Accordingly, OSC does not have standing to sue for copyright infringement.

### 3. Dismissal of JDEE's and OSC's Copyright Claims Should be Without Leave to Amend.

Plaintiffs have represented to the Court that no additional agreements exist that affect the individual Plaintiffs' ownership of and rights to the copyrights in issue. *See* Lanier Decl. ¶¶ 18, 27 (Ex. 9). As a result, an amended pleading cannot change the current facts, that JDEE has no rights to sue for copyright infringement in a U.S. court and that OSC has never owned or exclusively licensed any of the copyright at issue. Thus, dismissal of these claims should be without leave to amend. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

## B. Plaintiffs Concede That the Copyright Act Preempts Their Interference, Breach of Contract, Unfair Competition, and Accounting Claims

The parties are in agreement on a critical issue: Plaintiffs concede that the Copyright Act preempts their economic interference, breach of contract, unfair competition, and accounting claims to the extent that these claims seek to recover for alleged copyright infringement. *See* Pl. Opp. at 11. When allegations of copyright infringement are eliminated from Plaintiffs' state law claims, all that remains are allegations regarding improper access to computers and improper use of Customer Connection credentials (arguably duplicative of Plaintiffs' claims for trespass to chattels and violation of the CFAA and CDAF, but at least not likely preempted by the Copyright Act). This Court should grant Defendants' motion to dismiss the interference, breach of contract, unfair competition, and accounting claims to the extent that they rely on alleged copyright infringement. Dismissal should be without leave to amend. *See Idema v. Dreamworks*, 162 F. Supp. 2d 1129, 1193 (N.D. Cal. 2008) (holding that dismissal of a claim as preempted should be without leave to amend because amendment would be futile).

### 1. Plaintiffs' Interference Claims Are Preempted to the Extent They Are Based on Alleged Copyright Infringement.

The parties agree that the Copyright Act preempts Plaintiffs' claims for intentional and negligent interference with prospective economic advantage to the extent that they are based on alleged copyright infringement.[2] For this reason, as discussed on page 15 of Defendants' Motion to Dismiss, Plaintiffs' interference claims cannot be based on allegations that Defendants: (1) downloaded (*i.e.*, copied) Software and Support Materials from Customer Connection, (2) copied enterprise software applications and Software Support Materials, or (3) prepared derivative works based on these Software and Support Materials through the use of enterprise software applications and Software and Support Materials. Similarly, Plaintiffs' interference claims cannot be based on allegations that Defendants impermissibly "used" Plaintiffs' software, since these allegations of "use" are equivalent to alleged copying, reproduction, and preparation of derivative works of Plaintiffs' software. *See infra,* Section III.B.2.

In their Opposition, Plaintiffs make clear that the remaining conduct on which they base their interference claims can be characterized as computer fraud, improper use of Customer Connection credentials, and improper access to Plaintiffs' computers (*i.e.*, conduct entirely duplicative of that addressed by other claims). *See* Pl. Opp. at 12, 14-15. An illustration is useful to show that Plaintiffs' concession about the fact and extent of preemption meaningfully reduces the scope of the interference claims. Taking what Plaintiffs originally alleged as the basis for those claims and striking out the allegations of copyright infringement, what is left are the following allegations:

- gaining unauthorized access to Oracle USA's computer systems through Oracle's password-protected Customer Connection support website in violation of the agreements governing such access;

- gaining unauthorized access to the Software and Support Materials available on Oracle USA's computer systems through Customer Connection, in violation

---

[2] Plaintiffs' suggestion that they *may* uncover extraterritorial acts of infringement and that they *may* pursue additional interference claims on that basis has no bearing on this Court's decision to dismiss Plaintiffs' current interference claims as preempted. *See* Pl. Opp. at 15-16. Plaintiffs make no allegations in the TAC regarding extraterritorial acts of infringement and do not cite such acts as the basis for their existing interference claims.

of the agreements governing such access, including by using log in credentials of customers with no right or license to the Software and Support Materials taken by Defendants;

- breaching the agreements governing access to, and use of, the website ~~and the Software and Support Materials available through it~~;

- ~~luring Oracle USA's, OIC's and OEMEA's current and prospective customers by making promotional and marketing statements regarding Defendants' ability to provide support services for Oracle software that were only possible because of Defendants' improper access to, and taking from, Oracle USA's computer systems through Customer Connection;~~

- ~~using information learned through the improper access to, and taking from, Oracle USA's computer systems through Customer Connection to provide support services to Defendants' customers; and,~~

- gaining unauthorized access to Oracle's software releases through deceptive representations to Oracle USA's, OIC's and OEMEA's customers, causing customers to breach their license agreements with Oracle, ~~copying their software releases wholesale hundreds of times onto Defendants' local systems, and using those copies for various improper purposes, including without limitation to develop unauthorized SAP TN branded support products for distribution to their customers~~.

*See* TAC, ¶¶ 188, 198. Defendants' motion to dismiss the interference claims should be granted to the extent of preemption, as illustrated by the strike-throughs.

### 2. **Plaintiffs' Breach of Contract Claims Are Preempted to the Extent They Are Based on Alleged Copyright Infringement.**

The parties also agree that the Copyright Act preempts Plaintiffs' claims for breach of contract to the extent that they are based on alleged copyright infringement. In particular, the parties agree that where "a plaintiff's breach of contract claim only asserts that a defendant violated a promise not to use a certain work, that breach of contract claim is preempted." *Firooyze v. Earthlink Network*, 153 F. Supp. 2d 1115, 1126 (N.D. Cal. 2001) (Breyer, J.). Indeed, Plaintiffs cite an additional case that supports this proposition. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446 (6th Cir. 2001), cited at Pl. Opp. at 17.

Thus, to the extent that Plaintiffs base their breach of contract claim on alleged improper "use" of the copyrighted materials in violation of the terms of the asserted contracts, Plaintiffs'

breach of contract claim merely restates their copyright claim and is preempted. As discussed in Defendants' Motion to Dismiss, Plaintiffs' allegations that Defendants "used" copyrighted material for which they had no license or for a purpose not permitted in the contracts actually are allegations that Defendants impermissibly copied, reproduced, and prepared derivative works of Plaintiffs' software. Indeed, as Plaintiffs admit in their Opposition, their allegations of "use" are used to support their copyright claim. *See* Pl. Opp. at 14 n.6; D.I. 182 (TAC, ¶ 156). Plaintiffs make no effort to demonstrate that Defendants' alleged uses in breach of the asserted contracts are not "swallowed up by § 106" or involve an extra element beyond copyright infringement.

As a result, after preemption, the only breaches of contract Plaintiffs may pursue are:

- Accessing ~~or using~~ portions of the Software and Support Materials, not expressly licensed to and/or paid for by Defendants or the customers in whose name Defendants accessed Customer Connection and took the Software and Support Materials;

- Accessing the content available through Customer Connection, in the form of the Software and Support Materials, without being an authorized and designated Oracle technical support contact;

- ~~Using the Software and Support Materials other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;~~

- ~~Using the Software and Support Materials without a legitimate business purpose; and,~~

- ~~Using the Software and Support Materials in ways other than the furtherance of a relationship with Oracle.~~

(*See* TAC, ¶ 183).

### 3. Plaintiffs' Claims For Unfair Competition and an Accounting Are Preempted to the Extent They Are Based on Alleged Copyright Infringement.

The TAC alleges that Defendants violated California's unfair competition law by providing support services for Oracle software pursuant to a purportedly illegal business model consisting of "computer fraud, trespass, breach of contract, interference with business relationships and other illegal acts and practices." The parties agree that the Copyright Act

preempts Plaintiffs' claims for unfair competition to the extent that they are based on alleged copyright infringement. Indeed, contrary to their broad pleading of the unfair competition claims, Plaintiffs now argue that "Oracle specifically excluded all of its copyright-related allegations from this claim." Pl. Opp. at 18.

Similarly, the parties agree that the Copyright Act preempts Plaintiffs' claims for an accounting to the extent that they seek to protect rights under the Copyright Act. Although the TAC alleges that Defendants are entitled to an accounting based on Defendants' alleged acts of economic interference, breach of contract, unfair competition, fraudulent access, and trespass, (TAC, ¶ 223), Plaintiffs now further concede that "Oracle specifically *excluded* its copyright allegations from its Accounting causes of action." Pl. Opp. at 18 (emphasis in original).

Excluding alleged copyright infringement as the basis for Plaintiffs' unfair competition and accounting claims means that these claims can be based only on alleged improper access to computers and improper use of Customer Connection credentials. As discussed above, Plaintiffs' breach of contract and interference claims survive preemption only to the extent that they are based on alleged computer fraud, improper access to computers, or improper use of Customer Connection credentials, and the unfair competition and accounting claim should be similarly limited.

### C. Plaintiffs' Breach of Contract Claims Should Be Dismissed Because Defendants Are Not Parties to the Alleged Contracts

In response to Defendants' Motion to Dismiss, Plaintiffs make a significant concession: that TN accessed Customer Connection, and the Software and Support Materials therein, on behalf of its customers. *See* Pl. Opp at 22-23. While Plaintiffs' admission bears on whether Plaintiffs' claims regarding improper access have any merit, Plaintiffs' new theory has no bearing on whether Plaintiffs have adequately pled breach of contract. Defendants are not liable for breach of the asserted contracts, either directly or under an exceeded agency theory.

First, as explained in their Motion to Dismiss, Defendants did not and could not agree on their own behalf to the terms of the asserted contracts because Defendants are not the intended offerees of the contracts. *See Ott v. Home Savings & Loan Ass'n.*, 265 F.2d 643, 646 (9th Cir.

REPLY ISO DEFENDANTS' MOTION TO DISMISS
Case No. 07-CV-1658 PJH

1958) ("[I]t is hornbook law even in the realm of bilateral contracts that a revocable offer cannot be accepted by anyone other than the offeree."). Plaintiffs do not dispute the basic premise that only intended offerees may accept an offer and conclude the bargain. Instead, for the first time, Plaintiffs assert that "*any* person using the websites can contract to the terms of the Customer Connection Agreements." Pl. Opp. at 23 (emphasis in original). This assertion is belied by the terms of the agreements themselves, which reveal that only customers, with an existing agreement with an Oracle entity, are contemplated parties to the contracts. *See* Def. Mot. at 23-24 (highlighting portions of the asserted contracts that identify the intended offeree either explicitly as a "Customer" or as an entity with an existing agreement with an Oracle entity). Plaintiffs' attempt to characterize the intended offerees as simply persons accessing Customer Connection ignores the plain language of the contracts and is unsuccessful. Because Defendants are not Oracle customers and do not have an existing agreement with an Oracle entity, Defendants are not parties to the contracts.

Second, for the same reasons, Defendants cannot be considered parties to the asserted contracts as principals under an exceeded agency theory. As noted above, Plaintiffs now argue that Defendants were agents of their customers, who were the intended offerees of the asserted contracts. As such, according to Plaintiffs, each Defendant "could accept the offers on behalf of its principals to further the goals of the agency." Pl. Opp. at 22. However, Plaintiffs do not argue that Defendants accepted the offers contained in the asserted contracts as agents of their customers.[3] Rather, Plaintiffs argue that Defendants "exceeded the scope of [their] agency" in accessing Customer Connection and should be held liable directly, as principals, for breach of the asserted contracts. Pl. Opp. at 22-23. However, as described above, it is a legal impossibility for Defendants to accept the terms of the asserted contracts as principals. Defendants are not the intended offerees of the contracts and cannot accept their terms on Defendants' own behalf.

Based on the facts as pled in the TAC, Defendants are not parties to the asserted

---

[3] As Plaintiffs no doubt are aware, an agent who enters into a contract on behalf of a disclosed principal does not become a party to the contract. Cal. Civ. Code § 2330 ; R.2d. of Agency § 320; *U.S. v. Blum*, Civil No. C-89-4524 EFL (FSL), 1991 U.S. Dist. LEXIS 13625, at *16 (N.D. Cal. Sept. 16, 1991). It is likely for this reason that Plaintiffs have not attempted to claim that Defendants are liable as agents for breach of the asserted contracts.

1  agreements. As a result, Plaintiffs cannot sustain a breach of contract claim against Defendants, and Plaintiffs' breach of contract claims should be dismissed. Amendment of Plaintiffs' claim to allege that Defendants are parties to the asserted contracts would contradict Plaintiffs' current allegations and would be futile. Similarly, amendment to allege that Defendants are agents of their customers would not render Defendants parties to the contracts and would be futile. This Court's dismissal of Plaintiffs' breach of contract claims should be without leave to amend. *See Reddy*, 912 F.2d at 296.

### D. Plaintiffs' Claim for "Unjust Enrichment/Restitution" Should Be Dismissed

Faced with Defendants' Motion to Dismiss, Plaintiffs have been forced to make yet another concession: their claims for unjust enrichment are meant to be claims for restitution on a quasi-contract theory. Despite Plaintiffs' newly announced position that their ninth cause of action is one for restitution, Plaintiffs' TAC in fact does not plead restitution. Their use of the word "Restitution" in the title of that section of the pleading, without more, is certainly not "fair notice" under any interpretation of the federal pleading rules. As a result, Plaintiffs' cause of action for "Unjust Enrichment/Restitution" does not state a claim cognizable under California law and should be dismissed.

As Defendants noted in their Motion to Dismiss, unjust enrichment is not by itself a cause of action under California law. *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("there is no cause of action in California for unjust enrichment"); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies"); *Enreach Tech., Inc. v. Embedded Internet Solns., Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) ("unjust enrichment is not a valid cause of action in California"). In valuing substance over form, courts have permitted claims for restitution to proceed under the misnomer "unjust enrichment," where the pleading was otherwise proper. *See McBride*, 123 Cal. App. 4th at 387 (noting that courts will "ignore '[e]rroneous or confusing labels . . . if the complaint pleads facts which would entitle the plaintiff to relief'") (internal citations omitted); *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 728 (2000) (treating plaintiff's "unjust enrichment" claim as one for restitution"); *DSU*

*Aviation LLC v. PCMT Aviation, LLC*, Case No. 07-1478, 2007 U.S. Dist. LEXIS 86835, at *6-*8 (Nov. 14, 2007) (acknowledging plaintiffs' unjust enrichment cause of action to be a claim for restitution that could proceed in quasi-contract); *Mazur v. eBay Inc.*, No. C 07-03967 MHP, 2008 U.S. Dist. LEXIS 16561, at *42 (N.D. Cal. Mar. 4, 2008) (permitting restitution claim, mislabeled as "unjust enrichment," to proceed); *Dorr v. Yahoo! Inc.*, No. C 08-01428 MJJ, 2007 U.S. Dist. LEXIS 59126, at *6 (N.D. Cal. July 30, 2007) (same). To determine whether a plaintiff who has alleged unjust enrichment has stated a cause of action for restitution on a quasi-contract theory, the court must look to the allegations of the complaint itself. *McBride*, 123 Cal. App. 4th at 387.

To save the unfair competition claim, Plaintiffs now assert it is a claim for "restitution." Plaintiffs' ninth cause of action for "Unjust Enrichment/Restitution" does not state a claim for restitution as Plaintiffs assert. Plaintiffs' broadly worded claim states:

> Defendants unjustly received benefits at the expense of Oracle USA, OIC, and OEMEA through Defendants' wrongful conduct, including Defendants' breach of the agreements governing access to and use of Customer Connection, interference with Oracle USA's, OIC's and OEMEA's business relationships and other unfair business practices, as well as Defendants' trespass on, and computer fraud concerning the Software and Support Materials.

D.I. 182 (TAC, ¶ 220).

The plain language of the TAC shows that Plaintiffs' claim is not one for restitution, in which Plaintiffs seek damages in quasi-contract as an alternative to damages in breach of contract or tort. Restitution is an *alternative* theory in quasi-contract to recovering for breach of contract or tort claims. Specifically, restitution may be awarded: (1) "in lieu of breach of contract damages," where an asserted contract is found to be unenforceable or ineffective, or (2) "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion or similar conduct," but the plaintiff has chosen not to sue in tort (known as "waiving the tort and suing in assumpsit"). *McBride*, 123 Cal. App. 4th at 388. A claim for restitution is inconsistent and incompatible with a related claim for breach of contract or in tort. *See id.; Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (noting that an action in quasi-contract "does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *DSU Aviation*, 2007 U.S. Dist. LEXIS 86835, at *8 (same); *Mazur*, 2008 U.S. Dist.

| | |
|---|---|
| 1 | LEXIS 16561, at 41-41; *Gold v. Los Angeles Democratic League*, 49 Cal. App. 3d 365, 376 |
| 2 | (1975) (noting that election of the quasi-contract remedy of restitution is in lieu of tort damages). |
| 3 | Plaintiffs' ninth cause of action seeks damages *on top of* and *based on* their breach of |
| 4 | contract and state law tort claims. As a result, it is inappropriate to treat Plaintiffs' ninth cause of |
| 5 | action as a claim for restitution in quasi-contract. |
| 6 | Plaintiffs may not avoid dismissal of their unjust enrichment non-claim by attaching an |
| 7 | incorrect, legally insufficient, one-word label to it. Because unjust enrichment is not a cause of |
| 8 | action under California law and because Plaintiffs' ninth cause of action does not plead restitution, |
| 9 | the Court should dismiss Plaintiffs' cause of action of "Unjust Enrichment/Restitution." |

**III. CONCLUSION**

For the reasons set forth above and in Defendants' moving papers, Plaintiffs' Third Amended Complaint should be dismissed, without leave to amend, as set forth in the Revised [Proposed] Order submitted with this Reply.

Dated: November 5, 2008               JONES DAY

                                      By: /s/ Tharan Gregory Lanier
                                          Tharan Gregory Lanier

                                      Counsel for Defendants
                                      SAP AG, SAP AMERICA, INC., and
                                      TOMORROWNOW, INC.

SVI-63083