BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, Oracle Systems Corporation,
Oracle EMEA Limited, and J.D. Edwards
Europe Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SAP AG, *et al.*,<br><br>　　　　　Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date: November 25, 2008<br>Time: 2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle Systems Corporation, Oracle EMEA Limited, and J.D. Edwards Europe Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this Joint Discovery Conference Statement.

The Parties jointly request that the Court schedule sixty minutes on November 25, 2008 to further discuss the following discovery issues. In addition, the Parties jointly request that the Court continue holding conferences at roughly six-week intervals. Thus, in addition to the currently-scheduled conference on January 8, 2009, the Parties request the Court to set dates for conferences in mid-February, late March, and early May 2009.

### 1. Data Warehouse Review and Production

In its Requests for Production, dated August 2, 2007, Oracle sought copies of the software and other materials downloaded from Oracle's Customer Connection support site, and of the Oracle software (and works allegedly derived from that software) that are maintained on TomorrowNow's computer systems. These materials relate to Oracle's copyright infringement claims, among others.

As discussed at prior conferences, these materials are voluminous, making copying and production logistically difficult. As the Parties have continually reported, in approximately April 2008 the parties agreed to an arrangement that permits remote access review of certain servers that house these materials so that Oracle can designate relevant material that it wants copied and produced (the "Data Warehouse Agreement"). Oracle began its review under that agreement in mid-July, and virtually all of those materials have now been reviewed and tagged by Oracle for production.

Two sources of data, the AS/400 and the G partition of DCITBU01, were not reviewable via remote access and thus cannot be reviewed in the same manner as the other servers that are part of the Data Warehouse Agreement. Oracle performed an in-person inspection of the AS/400 machine, located in Texas, on November 11, and during that inspection requested production of full backup tapes for two partitions on that machine. Except for nine documents that are being redacted to preserve privilege and a small collection of irrelevant personal photographs,

1    JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

Defendants have completed production of non-forensic copies of all files restored from the November 2005 backup tapes of the DCITBU01_G partition.

Defendants represent that they have now made available for Oracle's initial inspection, either physically or remotely, all other known server partitions where materials reside related to J.D. Edwards and PeopleSoft software for the applicable discovery time period. In connection with the Parties' agreement regarding discovery outside the prior agreed discovery time limits (see below), Defendants have agreed to make available certain additional servers and/or partitions created after the start of the litigation. Further, in conjunction with the proposed foundational Siebel discovery (see below), Defendants have also agreed to make available servers related to Siebel software and support.

Defendants have committed to review and produce the tagged files from the Data Warehouse and expect to be able to complete production of the information from all of these systems over the course of the next 90 days. Oracle is concerned about the pace of production of data tagged responsive by Oracle from these systems. Defendants have produced metadata for almost every image reviewed through the Data Warehouse, and in addition to the files produced from the DCITBU01_G partition, have produced files from one other image, the F partition of TN-FS01. Production is underway, but not yet completed for the remaining 66 other images, the majority of which have been reviewed, tagged, and awaiting production for three months. Oracle is concerned that the current pace of production from the Data Warehouse is hindering the progress of the extrapolation proposal and threatens the current case schedule, including Oracle's ability to conduct depositions and to evaluate its liability and damages claims. The Parties hope to come to an agreement prior to the November 25 Discovery Conference with respect to a timetable production of this data. If the Parties fail to reach an agreement, they will seek the Court's further guidance on these issues.

**2.**     **Targeted Searches**

At the October 10 Discovery Conference, the Parties and the Court discussed the parameters and mechanics of targeted searches. The Court ordered Defendants to provide additional information regarding Oracle's requested targeted searches and to produce documents

within ninety days, on a rolling basis. Defendants provided their Second Supplemental Objections and Responses to Plaintiffs' First Set of Targeted Search Requests on November 10. The Parties continue to meet and confer on Defendants' supplemental responses and objections, and hope to resolve their outstanding disputes without the Court's assistance. In addition, the Parties continue to meet and confer on a variety of issues relating to targeted searches, including mutual exchange of customer-specific financial reports, copyright materials, and policies and procedures.

### 3. Discovery Time Ranges

When discovery began in this case, the Parties mutually limited their responses to the time period between January 1, 2004 and March 22, 2007, the date on which Oracle filed its original complaint. Since then, the Parties have agreed that some expansion of this relevant time period, both forwards and backwards, is necessary to capture additional relevant information. Recognizing the need to limit the burden of this expansion, the Parties agreed to a reasonable search for responsive information. Like the targeted search process, the Parties agreed to narrow searches by topic where production would come from centralized sources or from those persons most likely to have responsive documents. A copy of the agreement is attached to this statement as Exhibit A.

### 4. De-Designation of Highly Confidential and Confidential Documents

Defendants have completed their re-review of the approximately 27,000 SAP AG and SAP America documents that Defendants initially stamped "Highly Confidential." Of these documents, approximately 7% remain Highly Confidential, 85% are now Confidential, and 7% are now undesignated. Oracle reserves its right to further challenge these designations.

The Parties continue to meet and confer on whether, and how, the confidentiality designations for TomorrowNow's document production, deposition testimony, and other discovery responses should be re-designated or de-designated since TomorrowNow ceased operations on October 31, 2008. Oracle proposed a method for accomplishing this de-designation on August 15, Defendants provided a response on October 21, and Oracle provided a further proposal on November 18. The Parties will continue to meet and confer, but in the event they

cannot agree, they will ask the Court to address this issue at the November 25 Discovery Conference.

**5.** **Sampling and Extrapolation**

The Parties continue to discuss a document/data and testimony-based approach for collecting and presenting evidence regarding certain processes by which TomorrowNow generated and distributed support products to its customers. On October 21, Oracle proposed seventeen separately numbered factual stipulations for Defendants' consideration for application to categories of certain of TomorrowNow's development activities. Defendants continue to review and analyze those proposed stipulations to determine which, if any, they are willing to accept. For those proposed stipulations Defendants are not willing to accept, Defendants will state the specific subject matter as to which further testimony would be required from TomorrowNow. Defendants currently plan to provide their initial response to the proposed stipulations no later than November 21. If the Parties are unable by the time of the November 25 Discovery Conference to reach an agreement, a timetable for agreement, or an impasse regarding the proposed stipulations, they will then ask the Court to further address this issue at the conference.

**6.** **Third Amended Complaint and Motion to Dismiss**

On October 8, Oracle filed its Third Amended Complaint per the Parties' stipulation. On October 15, Defendants filed a motion to dismiss some claims from the Third Amended Complaint. Briefing is complete and Judge Hamilton will hear the motion on November 26.

**7.** **Depositions**

**(a)** **Oracle's Separate Statement**

At the October 10 Discovery Conference, the Parties and the Court discussed Oracle's outstanding deposition notices and corresponding witness document productions. While the Parties have made some progress in scheduling these depositions and productions, many of which were noticed nearly six months ago, several important depositions either have not been scheduled[1] or will not take place until December or even 2009.[2] Shai Agassi, for example – an

---

[1] The yet unscheduled witness is Owen O'Neil (deposition noticed on September 26).

architect of SAP's acquisition of TomorrowNow whose deposition was first requested long ago in May 2008 – will not appear for deposition until, at best, January 2009.  Moreover, Defendants have not agreed to produce this crucial witness for the two days Oracle requested, and have told Oracle they will not produce his documents until December 19, leaving Oracle with insufficient time to prepare.  Meanwhile, Oracle continues to wait for Defendants to provide numerous other deposition dates and witness productions.

The number and pace of depositions will soon increase.  Oracle has approximately 196.5 of its allotted deposition hours remaining and has noticed the depositions of several more TomorrowNow and SAP witnesses (Mark White, Andrew Nelson, and Greg Nelson).  Moreover, third party depositions, including SAP and TomorrowNow customers and former employees, will begin in earnest in January as well.

Given the deposition and production backlog already created by Defendants, Oracle is concerned that the overall case schedule appears to be in jeopardy.  Accordingly, it asks the Court to order Defendants to: (1) immediately confirm two days in early January for Mr. Agassi's long-outstanding deposition, (2) complete a rolling production of Mr. Agassi's documents no later than December 12, (3) immediately provide a date for Mr. O'Neil, and (4) going forward, complete rolling productions of all deposition witnesses' documents four weeks in advance of deposition dates.

---

(continued…)

[2] Depositions taking place in December 2008 and January and February 2009 include Matthew Bowden (deposition noticed on September 26 and scheduled for December 5), Steve Tseng (deposition noticed on October 3 and scheduled for December 9), Gerd Oswald (deposition noticed on June 4 and scheduled for December 10-11), Jeff Word (deposition noticed on June 4 and scheduled for December 11), John Tanner (deposition noticed on September 26 and scheduled for December 17), Shai Agassi (deposition noticed on June 4 and tentatively scheduled for January 5), Bob Geib (deposition noticed on September 26 and scheduled for January 9), Peter Graf (deposition noticed on October 3 and scheduled for January 21), Thomas Bamburger (deposition noticed on October 3 and scheduled for the end of January), Uwe Wieditz (same); Martin Breuer (deposition noticed on October 3 and scheduled for February 11 and 12).  The Parties also expect that Tim Crean's deposition (noticed on November 4) will take place in February.

**(b) Defendants' Separate Statement**

Given the enormous amount of data they have produced, Defendants have been very diligent in producing documents and testimony so far in this case and continue to work with Oracle's counsel on scheduling logistics for document production and depositions. There is no undue backlog of document production or deposition scheduling. Defendants document production—in sharp contrast to Oracle's very slow and erratic production—has proceeded at a brisk pace on a rolling basis with substantial additional documents being produced almost on a weekly basis. As Defendants promised Oracle and the Court months ago, almost all of the deponents Oracle noticed prior to September 26 will be produced before Thanksgiving and only one, Shai Agassi, will occur after year end. Many of the deposition dates that Oracle cites in footnote number 2 are now scheduled at later dates than were originally offered by Defendants because Defendants agreed to accommodate Oracle's counsel's scheduling requests. The extraordinary discovery burdens that are created by the huge volumes of data and documents Defendants have been required to produce in this case simply does not permit Oracle to obtain deposition testimony on short notice, especially when Oracle now seeks documents relating to the requested deponents one month in advance of the deposition.

**8. <u>Oracle's Anticipated Motions to Compel</u>**

**(a) Motion to Compel Further Responses to Interrogatories and Requests for Production Regarding New Products**

At the October 10 Discovery Conference, the Parties and the Court discussed Oracle's discovery into Defendants' misuse of Oracle's Siebel, eBusiness Suite, Hyperion, and Retek software lines. Following the Court's instruction, on October 16, Oracle submitted a proposal to Defendants for foundational Siebel discovery, suggesting that Defendants produce (a) Siebel customer information, including TomorrowNow's SAS, Bak Trak, and Pathfinder databases for the Siebel product line, CD logs, customer contracts, and on-boarding/off-boarding documents for Siebel customers, (b) Siebel damages causation information similar to that being generated by Defendants for other Oracle customers, (c) executive emails and board documents regarding Siebel, including custodial productions of John Tanner (the TomorrowNow employee in charge

1  of Siebel customers) and Broderick Ellis and Siebel-specific materials from Andrew, Shelley, and
2  Greg Nelson, James Mackey, and Shai Agassi, (d) access to and production from Data Warehouse
3  servers related to Siebel, and (e) a Siebel Rule 30(b)(6) deposition and the individual deposition
4  of Mr. Tanner.

Defendants responded on November 7, reserving their objections but proposing to provide (a) the SAS database for the Siebel product line, (b) the final version of TomorrowNow's business case regarding Siebel, if it can be located, (c) through the Data Warehouse, all TomorrowNow servers identified as having been used by TomorrowNow to provide services to its Siebel customers, (d) Mr. Tanner's custodial production, and (e) Mr. Tanner's individual deposition.[3]

During the November 10 meet and confer and again on November 13, Oracle asked Defendants to also provide emails from TomorrowNow and SAP executives (Andrew, Shelley, and Greg Nelson, John Baugh, Albert Van Wissen, Thomas Ziemen, and Gerd Oswald) regarding the Siebel business plan, so as to cover the total relevant time period. From Oracle's review of Defendants' current production, these custodians appear to be the most likely to have relevant information about the Siebel business plan. If Defendants agree to this request, Oracle does not anticipate bringing a motion to compel further production of Siebel documents and data until and unless its review of the foundational discovery reveals that additional discovery is necessary.

For the other software lines, Oracle has requested that Defendants provide formal written offers of proof as to (1) TomorrowNow's use of Oracle-owned intellectual property to service eBusiness Suite, Hyperion, and Retek customers and (2) SAP's knowledge about, and its efforts to protect against, misuse of that intellectual property. Oracle would reserve its rights as to the adequacy of the evidence, and Defendants would reserve their rights as to relevance. Defendants have represented that they are currently working to provide a proposed declaration on or before November 21. The Parties will update the Court at the November 25 Discovery Conference.

If the Parties are not able to resolve these issues, Oracle will move to compel production,

---

[3] Defendants have offered December 12 for Mr. Tanner's individual deposition. Oracle is not able to accept that date without an understanding of when the Siebel records from the SAS database will be produced and when the Siebel-related document productions will be complete.

as permitted by the Court's October 16 Order Following Discovery Conference.

**9.** **<u>Defendants' Anticipated Motions to Compel</u>**

**(a)** **Copyright Related Documents and Information**

Defendants continue to meet and confer with Oracle regarding their anticipated motion to compel copyright documents and information, which was mentioned during the last discovery conference. If the parties are unable to resolve their disputes, Defendants will discuss a briefing schedule with Oracle and present a proposal to the Court at the November 25th conference. Defendants anticipate that the motion will address Oracle's refusal to: (a) provide a meaningful response to an interrogatory Oracle agreed to supplement in lieu of Rule 30(b)(6) testimony on topics requesting identification of the materials allegedly covered by each copyright registration at issue in the case and ownership of the same; (b) provide Rule 30(b)(6) deposition testimony for each work registered as a derivative work, including basic identifying information about the creation, ownership, and content of the underlying works and the content of the material allegedly added; (c) produce documents sufficient to identify the individuals who created the materials allegedly covered by the registrations and produce (or even search for) work for hire agreements and agreements with independent contractors that it contends exist; and (d) additional testimony and documents from Todd Adler, Oracle's designated 30(b)(6) deponent who signed several of the copyright registration applications at issue, but was precluded (under a claim of privilege) from testifying fully regarding statements he made on those applications and his research and investigation in support of making those statements.

**(b) Discovery of Oracle Concerning CedarCrestone.**

Defendants continue to seek discovery of Oracle concerning its relationships with its certain of its "partners." Defendants maintain that this discovery is relevant for a number of reasons, including to: (a) show the compensation that Oracle's partners pay for the right to use Oracle's copyrighted materials, which may support certain damage defenses; (b) causation issues, as it may show that Oracle's customers have had choices other than TomorrowNow for third party support and thus would have left Oracle regardless of TomorrowNow's activities. Judge Legge initially denied this discovery "without prejudice, until a later showing of relevance and

appropriateness." Report and Recommendations RE: Discovery Hearing No. 1, p. 7. Afterwards, this Court suggested that Defendants review public sources of information concerning Oracle's partner relationships before further pursuing formal discovery of Oracle on this issue. See Transcript of Proceedings, August 28, 2008, at 60:17-62:8.

Oracle recently served a third party subpoena on one of its own partners, CedarCrestone. Public information, including its website, confirms that CedarCrestone is a "Certified Advantage Partner of Oracle" with "specific expertise in PeopleSoft Enterprise" and that it provides the same services as TomorrowNow, such as fixes and regulatory updates. Apparently, certain former TomorrowNow customers have elected to get support from CedarCrestone rather than return to Oracle. Oracle's subpoena includes, among other things, a request for production of documents reflecting CedarCrestone's business model. Defendants have advised Oracle that they plan to serve a cross-subpoena on CedarCrestone and Oracle has reserved its right to object or otherwise oppose that discovery. In light of Oracle's discovery of its own partner, CedarCrestone, Defendants believe that Oracle has opened the door to certain aspects of its partner program, and at least related to this particular third party support provider. Defendants intend to seek the Court's further guidance on this issue at the November 25 Discovery Conference.

DATED: November 18, 2008          BINGHAM McCUTCHEN LLP

By:    /s/
Holly A. House
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, Oracle Systems Corporation,
Oracle EMEA Limited, and J.D. Edwards
Europe Limited

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

| | | |
|---|---|---|
| 1 | DATED: November 18, 2008 | JONES DAY |
| 2 | | |
| 3 | | By: _____/s/_____ |
| 4 | | Jason McDonell<br>Attorneys for Defendants |
| 5 | | SAP AG, SAP AMERICA, INC., and<br>TOMORROWNOW, INC. |

EXHIBIT A

# Expanded Discovery Timeline Agreement

The Parties agree to expand the discovery timelines in this case as set forth below. This agreement is subject to, and not intended as a waiver of, any and all objections served by any party in response to any discovery request in this case. In other words, this agreement only relates to the expansion of the discovery time frames, and is not, by itself an agreement to produce any document. Just because a document fits the time frames and subject matters noted below, that does not mean that it will be produced, especially if it is privileged or the subject of any objections served by any party in response to any discovery request in this case. Moreover, any restrictions placed on any subject matter described below (e.g., "independent" third party support) shall not be construed as a concession or waiver of any parties' right to seek to broaden or narrow discovery on any subject matter, subject only to the terms of any non-appealable ruling by the court or special master that definitively precludes discovery regarding a particular subject matter in this case.

## 01-01-02 through 01-01-04 Documents:

(1) Relevant financial data including revenues, costs and profits to be agreed upon by the parties or per court order.

(2) Customer related documents (contracts and licensing for TN customers and related emails/negotiations to the extent kept in centralized files; on-boarding documents; the independent third party support market; TN, PeopleSoft, and JD Edwards key custodian documents re early TN customers).

(3) Damages Causation and Mitigation Documents (win/loss reports, at-risk reports, and other customer-specific reports kept in centralized locations (or with key custodians) or that can be generated from electronic sources).

(4) TomorrowNow Business Model Related Documents (documents re TomorrowNow's business model from centralized sources or key custodians from both sides, including the planning and formation of TN's business, communications between PeopleSoft and TN, documents re download servers/environments and fix/update development documents, and documents regarding PeopleSoft's or JD Edwards' knowledge of TN's support activities).

(5) Relevant TN, PeopleSoft, and JD Edwards employee emails from key custodians.

(6) The Parties' copyright-related documents to be agreed upon by the parties or per court order.

**03-22-07 through 10-31-08 Documents:**

(7) Updated relevant financial data including revenues, costs and profits.

(8) "TN/SAP customer"[1] related documents (documents from centralized sources and key custodians from both sides concerning those customers and created after the complaint, including the SAS database post-shutdown, the pathfinder database, customer off-boarding or transfer documents, TN, SAP and Oracle customer contracts, customers returning to Oracle from TN, customers lost by Oracle and efforts by Oracle to mitigate its damages, customers gained by TN or SAP).

(9) Damages Causation and Mitigation Documents (updated win/loss reports, at-risk reports, and other customer-specific reports kept in centralized locations (or with key custodians) or that can be generated from electronic sources).

(10) TomorrowNow Business Model Related Documents (documents from centralized sources or key custodians from both sides concerning: TN-related policies created or modified in any way since filing of complaint, including related to Project Blue; continued use of Oracle intellectual property, including transfer to third parties; Mark White's placement as head of TN; SAP's efforts to sell TN; documents related to independent third party support).

(11) The Parties' copyright-related documents to be agreed upon by the parties or per court order.

---

[1] "TN/SAP customers" shall be mean those customers involving at least one of the following: (a) all TN customers; (b) Safe Passage deals with TN as a component; or (c) SAP sales to TN customers after acquisition of TN.