BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.,*<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SAP AG, *et al.*,<br><br>　　　　　Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date: January 8, 2009<br>Time: 2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this Joint Discovery Conference Statement.

The Parties jointly request that the Court schedule sixty minutes on January 8, 2009 to further discuss the following discovery issues.

### 1. Data Warehouse Review and Production

In its Requests for Production, dated August 2, 2007, Oracle sought copies of the software and other materials downloaded from Oracle's Customer Connection support site, and of the Oracle software (and works allegedly derived from that software) maintained on TomorrowNow's computer systems. These materials relate to Oracle's copyright infringement claims, among others.

As discussed at prior conferences, these materials are voluminous, making copying and production logistically difficult. As the Parties have continually reported, in approximately April 2008 the parties agreed to an arrangement that permits remote access review of certain servers that house these materials so that Oracle can designate relevant material that it wants copied and produced (the "Data Warehouse Agreement"). Oracle began its review under that agreement in mid-July, and, aside from materials relating to Siebel, has now reviewed and tagged for production all available materials, comprising 68 images. Oracle has requested certain metadata from these images, and Defendants have represented that substantially all requested metadata for those respective images has been produced.

Of the 68 images reviewed through the Data Warehouse protocol prior to December 1, 2008, Oracle has currently requested production of selected files and folders from 24 unique images. On November 26, 2008, the Court ordered Defendants to complete production of Data Warehouse files on a rolling basis, but no later than February 16, 2009. As of December 23, 2008,

Defendants have represented that they have completed production of 5 images: DCPSTEMP01_E, DCPSTEMP02, HOMER, DCITBU02_G and TN-FS01_F. According to Oracle's calculations, Defendants produced approximately two-thirds (61% of files by file count; 68% of files by size) of the requested files in just under three months. If Defendants continue at their present pace, the Parties believe that production will be completed by the date ordered by the Court.

One partition, DCITBU01_G, and one server, the AS/400, have been reviewed outside the Data Warehouse protocol. For DCITBU01_G, Defendants represent that they have produced all of the logical files and folders for this partition made from a November 2007 backup tape except for personal, family photos and one redacted privilege document. Since the metadata produced was from a May 2007 version of DCITBU01_G, the Parties will meet and confer regarding differences between the produced metadata and the metadata for the produced images. For the AS/400, Defendants produced backup tapes for a November 2008 full system backup of the two requested partitions of the AS/400 machine, and backup tapes comprising a May 2007 partial backup of the same two partitions. While Defendants designated all AS/400 tapes as Highly Confidential in their entirety, Oracle disagrees that these tapes are entitled to such a designation under the Protective Order. The Parties will meet and confer on this issue.

On December 1, 2008, Defendants made available to Oracle seven images containing Siebel-related information. In the course of its inspection, Oracle determined that these seven images contained over 100 virtual machine files. Oracle can neither review the files contained in those virtual machine files, nor determine their size or file count, due to the manner in which they were presented. Defendants are in the process of evaluating these files, including determining how many virtual machines exist which contain data (there can be several virtual machine files for each machine). Defendants have already agreed to make 17 virtual machines relating to Siebel available for review through the Data Warehouse procedure starting the week of January 5,

2009. These additional 17 images (and there may be more) could add weeks to the review, metadata production, and file production process.

### 2. **Sampling and Extrapolation**

As the Court is aware, the Parties continue to discuss possible ways to shortcut the collection and presentation of the substantial evidence regarding TomorrowNow's downloading and use of Oracle's software and how TomorrowNow provided its services to its customers. As reported at the last two discovery conferences, the Parties are currently trying to finalize a stipulation that is based on testimony either currently in the record and/or that could be obtained through an as-yet undetermined number of 30(b)(6) depositions. The Parties have not ruled out a statistical approach as an aspect of this stipulation, but currently are unable to agree on the extent to which, if any, more discovery time and deposition hours than the Court has currently allowed would be required to develop a statistically valid sample of evidence. The testimony-based stipulation that the Parties are currently discussing focuses on the processes TomorrowNow followed when downloading Oracle materials, using Oracle software applications, and/or delivering support to its customers. The statistical approach to putting together an extrapolation policy would focus on quantifying Defendants' activities. Thus, the Parties are currently attempting to agree to a set of stipulations that focus on using certain descriptions of those processes and activities from testimony as the foundation for a stipulation that will ideally cover TomorrowNow's activities over certain periods of time and across multiple supported software releases. The goal of the stipulation is to reduce the amount of deposition discovery that would otherwise be required to collect such evidence on a fix-by-fix or release-by-release basis.

On October 21, 2008, Oracle proposed seventeen separately numbered factual stipulations for Defendants' consideration for application to categories of certain of TomorrowNow's development activities. On November 21, Defendants provided objections and comments to

Oracle's proposal. The Parties met and conferred for a total of approximately seven hours combined on December 12 and 16 to discuss Defendants' objections and comments. During those sessions, both Oracle and Defendants agreed to several action items involving further factual research and potential compromise language.

The Parties expect to exchange further information and to continue their meet and confer process on the proposed stipulation during the week of January 12. It is likely that, at a minimum, further discovery will be necessary to fill factual gaps or address differences of opinion regarding the implications of record testimony before the Parties will have a final stipulation to propose, or at least competing versions of a stipulation that reflect as much agreement as they can reach. If the Parties can agree on the utility of further discovery in aid of a contemplated stipulation without Court intervention, the Parties expect to work together to schedule this discovery on an expedited basis with the goal of providing to the Court by the February 17 Discovery Conference either a final stipulation or an extended explanation of the reasons, if any, why the Parties are unable to reach a final stipulation. If the Parties cannot agree, they will present the issue to the Court at the next Discovery Conference.

### 3. Deposition Scheduling

Oracle remains concerned about the pace of discovery generally, and the scheduling of depositions in particular. Oracle is still awaiting dates for witnesses it requested several weeks ago, including Andrew Nelson (deposition noticed November 18, 2008), Greg Nelson (same), and Mark White (same). Because of the overlap in subject matter, these depositions must be scheduled in a coordinated way with other noticed witnesses, including Catherine Hyde (deposition noticed September 26, 2008).

Defendants believe that discovery is proceeding on or ahead of schedule relative to the overall discovery period and the remaining witnesses and deposition hours for each Party. And, Defendants contend that the delay in providing dates for these three witnesses (A. Nelson, G. Nelson, and Mark White) is brief and relates to the in-progress collection, review, and production

1  of additional documents for these witnesses under the Parties' agreement to expand the discovery
2  timelines in the case.
3  Regardless, the Parties have agreed to develop a reasonable, complete deposition schedule
4  for all currently outstanding witnesses by no later than January 12, 2009.

### 4. **Privilege Logs**

Oracle is concerned about Defendants' compliance with the Parties' agreement and the Court's May 29, 2008 order, which Oracle contends requires production of a privilege log within 45 days of a given production. Defendants contend that they have substantially complied with the Parties' agreement and the Court's Orders regarding the production of privilege logs.

On December 1, 2008, after noticing that Defendants had not produced a privilege log since September 22, 2008 (a gap of over two months), Oracle asked Defendants about the status of their logs. Defendants responded that their priority review and production of the potentially privileged documents of deposition witnesses, in order to get those documents to Oracle in as timely a manner possible before each deposition, had delayed Defendants' privilege log process. Defendants later produced supplemental logs with entries for all past productions which have not yet been logged and for which a log was then due, but like Oracle has done in the production of its supplemental logs, did not re-produce the data contained in its previously produced logs as part of Defendants' supplementation. Defendants contend they continue to timely produce supplemental privilege logs on a regular basis after production of responsive documents are complete and potentially privileged documents are identified.

Oracle has demanded certain information from Defendants regarding the logs it has produced since September 22, as it contends it does not have sufficient information to evaluate for which productions Defendants have not complied with the Parties' agreement and the Court's order, which may have implications for Defendants' claims of privilege and also affects Oracle's ability to prepare for depositions.

In response, on December 3 Defendants indicated a willingness to agree to a regularly-scheduled, mutual exchange of information regarding the timing of all the Parties' document

productions, deposition designations, erratas, and other ongoing discovery obligations, including the production of, and information regarding, the Parties' privilege logs. Defendants will provide a written proposal to Oracle before the hearing regarding that proposed mutual exchange of information.

**5.  Customer List**

TomorrowNow's first set of Requests for Production to Oracle, dated July 26, 2007, attached an Exhibit 1, which listed all of TomorrowNow's customers that had been identified at that time. Both Parties have continually referred to and incorporated Exhibit 1 in their discovery requests and responses as the operative list of TomorrowNow's customers.

On December 16, 2008, Defendants sent Oracle a list of additional customers, most of which are not included on Exhibit 1, and asked Oracle to produce corresponding Oracle contracts. Defendants contend that the reason for the addition of the majority of these additional customers is the Parties' agreement to expand the relevant discovery timelines. In the subsequent meet and confer, Defendants explained that they had identified these new customers some time after serving Exhibit 1 in 2007, and that they had been producing related materials. Given Defendants' voluminous production, Oracle contended that it was unfair to expect Oracle to independently determine that Defendants had expanded the list of customers on Exhibit 1 or to expect Oracle to produce corresponding contracts for those additional customers. Through meet and confer, Defendants agreed to amend Exhibit 1 and its related discovery responses. After it receives the amended Exhibit 1, Oracle has agreed to search for and produce responsive contracts for the new customers, with no intervening meet and confer period. Oracle will also adjust its document production to the extent that the amended Exhibit 1 affects its document review going forward. Defendants reserve their right to request production from Oracle of materials related to the additional customers from certain custodians (within the confines of the overall custodian limit) who are identified through the additional document collection and review effort associated with the Parties' agreement to expand the discovery timelines.

This recent addition to the "Exhibit 1" list of TomorrowNow customers will require Oracle to spend many additional hours and resources to (a) find and review these newly-added

customers' contract files, (b) prepare and produce relevant materials, (c) adjust its main document review and production process to include these customers, (d) re-examine Defendants' discovery responses and production in light of these customers, and (e) investigate and subpoena these new customers, if necessary. Oracle has not yet received the amended Exhibit 1 and, based on the time it has taken to produce customer information to date, does not expect to be able to complete such additional efforts before March without seriously impeding its other production efforts.

### 6. Anticipated Motions to Compel

Below, the Parties provide separate descriptions of the motions to compel they intend to file. These descriptions include characterizations of each Party's position and representations; neither Party agrees with the other's descriptions, but in the interests of efficiency, does not provide a response in this Statement.

#### (a) Oracle's Anticipated Motions to Compel

##### (i) Motion to Compel Further Responses to Interrogatories and Requests for Production Regarding Additional Products

At the November 25 Discovery Conference, the Parties and the Court discussed Oracle's discovery into Defendants' misuse of Oracle-owned IP in its preparation to service and/or servicing of Siebel, eBusiness Suite, Hyperion, and Retek software lines. The Parties agreed that Defendants would provide the following foundational Siebel discovery: (a) the SAS database for the Siebel product line, (b) the final version of TomorrowNow's business case regarding Siebel, if it can be located, (c) through the Data Warehouse, all TomorrowNow servers identified as having been used by TomorrowNow to provide services to its Siebel customers, (d) the custodial production of John Tanner (represented by Defendants to be their most knowledgeable individual on TomorrowNow's service for Siebel applications), and (e) Mr. Tanner's individual deposition. Through further meet and confer and on November 25 and December 5, Defendants agreed to further produce non-privileged documents relating to TomorrowNow's servicing of Siebel customers from the files of Andrew Nelson, Greg Nelson, Gerhard Oswald, and Thomas Ziemen. Oracle has requested, but Defendants have refused, to produce Shelley Nelson's documents regarding Siebel. Oracle believes Ms. Nelson's documents are important because she was

involved at the executive level in virtually every aspect of TomorrowNow support. Oracle does not anticipate bringing a motion to compel further foundational Siebel discovery until after it completes Mr. Tanner's deposition and determines that additional discovery is necessary.

For the other software lines, Oracle accepted Defendants' offer to provide a formal, detailed written offers of proof as to (1) TomorrowNow's use of Oracle-owned intellectual property to prepare to and/or service Oracle's eBusiness Suite, Hyperion, and Retek software products and (2) SAP's knowledge about, and its efforts to protect against, misuse of that intellectual property. Oracle reserved its rights as to the adequacy of the evidence, and Defendants reserved their rights as to relevance. On November 21, in response to that request, Defendants produced a declaration from TomorrowNow's Andrew Nelson that, in Oracle's view, did not answer Oracle's questions or provide adequate detail or support for its conclusions. Oracle and Defendants then agreed that Oracle would serve Rule 30(b)(6) notices directed at the information it sought as part of foundation discovery, and Defendants would decide whether to (a) provide a witness in response, (b) provide a revised declaration, or (c) decline to provide anything further. Subject to Defendants' further response, the Parties agree the issue of Oracle's right to foundational discovery in the form of limited custodial document production and a witness in response to its 30(b)(6) notices is ripe for Oracle's motion to compel, as permitted by the Court's October 16 Order Following Discovery Conference. Oracle asks the Court to set a briefing schedule for this motion to compel at the January 8 Discovery Conference.

### (ii) Motion to Compel Additional Testimony from Defendants' Rule 30(b)(6) Designees

On April 16, 2008, Oracle noticed the deposition of SAP pursuant to Rule 30(b)(6) on topics relating to SAP's acquisition of TomorrowNow, its integration of TomorrowNow's business model into SAP's broader operations, and its involvement in Safe Passage. SAP provided Terry Hurst and Arlen Shenkman as its designees on these topics. Oracle contends neither witness was adequately prepared or knowledgeable on the deposition topics. After Oracle's request that Defendants remedy their failure to produce adequate witnesses, the Parties met and conferred during the summer of 2008. On July 29, 2008, Defendants' counsel suggested

that the Parties revisit the issue of additional designees after Oracle took the individual depositions of witnesses with personal knowledge of these topics.

Oracle has now taken individual depositions of several witnesses with professed personal knowledge of these topics – such as James Mackey, who led SAP's acquisition team, John Zepecki, who analyzed TomorrowNow's business model and practices for SAP before the acquisition, and Chris Faye, who worked on legal analysis of TomorrowNow and its model before and after the acquisition – but their testimony has failed to address the shortcomings of Defendants' corporate designees for the acquisition, integration, and Safe Passage topics. Accordingly, Oracle intends to move for an order (a) compelling Defendants to produce additional, informed witnesses on Topics 1-3 from its April 16, 2008 Rule 30(b)(6) notice, and (b) crediting Oracle with the deposition time spent with Messrs. Hurst and Shenkman, Defendants' poorly-prepared designees. Oracle asks that the Court set a briefing schedule for this motion at the January 8 Discovery Conference

### (b) Defendants' Anticipated Motions to Compel

#### (i) Copyright Related Documents and Information

Defendants continue to meet and confer with Oracle regarding their anticipated motion to compel copyright documents and information, which was mentioned during the last discovery conference. If the parties are unable to resolve their disputes, Defendants will discuss a briefing schedule with Oracle and present a proposal to the Court at the Janaury 8th conference. Defendants anticipate that the motion will address Oracle's refusal to: (a) provide a meaningful response to an interrogatory Oracle agreed to supplement in lieu of Rule 30(b)(6) testimony on topics requesting identification of the materials allegedly covered by each copyright registration at issue in the case and ownership of the same; (b) produce documents sufficient to identify the individuals who created the materials allegedly covered by the registrations and produce (or even search for) work for hire agreements and agreements with independent contractors that it contends exist; and (c) additional testimony and documents from Todd Adler, Oracle's designated 30(b)(6) deponent who signed several of the copyright registration applications at issue, but was precluded (under a claim of privilege) from testifying fully regarding statements he made on

those applications and his research and investigation in support of making those statements. Defendants ask the Court to set a briefing schedule for this motion to compel at the January 8 Discovery Conference.

### (ii) Discovery of Oracle Concerning CedarCrestone.

Oracle recently served and then later withdrew a third party subpoena on one of its own partners, CedarCrestone. Oracle has indicated an intent to reserve CedarCrestone, but it has become apparent that Oracle and its partner are privately negotiating the scope of that subpoena and possibly even exchanging information informally. Public information, including its website, confirms that CedarCrestone is a "Certified Advantage Partner of Oracle" with "specific expertise in PeopleSoft Enterprise" and that it provides the same services as TomorrowNow, such as fixes and regulatory updates. Apparently, certain former TomorrowNow customers have elected to get support from CedarCrestone rather than return to Oracle. Oracle's subpoena includes, among other things, a request for production of documents reflecting CedarCrestone's business model. Defendants served a cross-subpoena on CedarCrestone and Oracle has objected to that discovery. In light of Oracle's discovery of its own partner, CedarCrestone, Defendants believe that Oracle has opened the door to certain aspects of its partner program, and at least related to this particular third party support provider. The Court has already approved the filing of this motion and thus Defendants ask the Court to set a briefing schedule for this motion to compel at the January 8 Discovery Conference.

### (iii) Oracle's Chart of Accounts

The discovery sought by this motion is relevant to the calculation of Oracle's alleged damages. Under the Copyright Act, actual damages represent the injury to the market value of the copyrighted work at the time of infringement. In appropriate circumstances, this amount may be computed by determining the profits that would have accrued to plaintiff but for the infringement. Similarly, lost profits may also be a theoretical measure of damages for certain other of Oracle's causes of action. Oracle seeks (or reserves the right to seek) its alleged lost profits as damages. But, during discovery, Oracle has taken the position that it is unable to determine its profit margins on the two product lines that are at the center of this case, the

PeopleSoft and JD Edwards ("JDE") product lines. Moreover, Oracle has refused to provide the discovery that may allow Defendants to determine (or at least make a reasonable estimate of) Oracle's profitability on those product lines. Defendants therefore seek to compel discovery of the financial data necessary to attempt to determine Oracle's actual profit margins for the PeopleSoft and JDE products and support services. Defendants request that the Court set a briefing schedule for this motion.

### (iv) Providing Defendants' Insurance Carriers Access to HC Information.

Defendants have requested and Oracle has refused to permit at least one representative from each of Defendants' insurance carriers to have access to testimony and documents that Oracle has designated as "Highly Confidential" (HC) under the Agreed Protective Order. Defendants' counsel does not represent Defendants' insurance carriers and thus those carriers need independent access to at least certain portions of Oracle's HC information in order to properly evaluate Oracle's settlement demand that is expected to made in February pursuant to the settlement magistrate's order. Defendants ask the Court to address this issue at the January 8th Discovery Conference, and if necessary, set an expedited briefing schedule for this motion to compel.

DATED: January 5, 2009                    BINGHAM McCUTCHEN LLP


By: _____/s/_____
Holly A. House
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

| | | |
|---|---|---|
| 1 | DATED: January 5, 2009 | JONES DAY |
| 2 | | |
| 3 | | By: _____/s/_____ |
| 4 | | Jason McDonell<br>Attorneys for Defendants<br>SAP AG, SAP AMERICA, INC., and |
| 5 | | TOMORROWNOW, INC. |