Oracle Corporation et al v. SAP AG et al Doc. 233

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOWARD (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., *et al.*,

Plaintiffs,

v.

SAP AG, *et al.*,

Defendants.

CASE NO. 07-CV-01658 PJH (EDL)

**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS, ANSWERS TO INTERROGATORIES, AND RULE 30(b)(6) TESTIMONY RELATED TO HYPERION, RETEK, AND EBS PRODUCTS**

Date: February 10, 2009
Time: 2:00 p.m.
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte



Dockets.Justia.com

TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........ 1
RELIEF SOUGHT ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. PRELIMINARY STATEMENT ........ 1
II. RELEVANT FACTS ........ 2
III. THE COURT SHOULD ORDER RESPONSES TO ORACLE'S DISCOVERY RELATED TO ORACLE'S EBS, RETEK, AND HYPERION PRODUCTS........ 6
IV. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ..... 9

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ..... 9

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ..... 7

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) ..... 8, 9

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) ..... 7

**FEDERAL STATUTES**

17 U.S.C. § 504 ..... 8

**STATE STATUTES**

Cal. Civ. Code § 3294 ..... 10

Cal. Penal Code § 502 ..... 10

**RULES**

Fed. R. Civ. P. 26 ..... 6

Fed. R. Civ. P. 37 ..... 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on February 10, 2009 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, CA, Courtroom E, 15th Floor, before the Hon. Elizabeth D. Laporte, Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") will move to compel Fed. R. Civ. P. 30(b)(6) deposition testimony, answers to interrogatories, and responses to document requests related to the use of Hyperion, Retek, and eBusiness Suite products by Defendants TomorrowNow, Inc., SAP AG, and SAP America, Inc. (collectively, "Defendants," and with Oracle, the "Parties"). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Geoffrey M. Howard, the pleadings on file in this action, and on such other matters presented to the Court at the time of the hearing.

## RELIEF SOUGHT

Pursuant to Fed. R. Civ. P. 37,[1] Oracle seeks to compel Defendants' Fed. R. Civ. P. 30(b)(6) deposition testimony, answers to interrogatories, and responses to document requests related to Defendants' access to and use of Oracle's Hyperion, Retek, and eBusiness Suite software as part of preparing to offer, or offering, third party support for that software.

---

[1] Pursuant to Fed. R. Civ. P. 37(a)(1)(B), Oracle's counsel affirms that they have conferred with opposing counsel in a good faith effort to reach agreement about this matter. *See* Declaration of Geoffrey M. Howard in Support of Motion to Compel ("Howard Decl.") ¶¶ 15-22.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

When Oracle filed its original Complaint in this case on March 22, 2007, it did not know the full extent of Defendants' illegal activities. That Complaint focused on Defendants SAP's and TomorrowNow's ("SAP TN") downloading of Oracle's PeopleSoft ("PS") and J.D. Edwards ("JDE") branded software updates from Oracle's password-protected website. Since then, discovery has revealed that the downloading activity was a piece of a larger scheme to illegally obtain and use Oracle's actual software applications (as separate from the downloadable support products developed by Oracle over time for those applications). As Oracle has learned, Defendants were unable to consider support of Oracle's products without first illegally using (and cross-using) local environments for research, development, and testing. A handful of documents Defendants have produced in discovery suggest that, in addition to PS and JDE products, Defendants also made unauthorized copies of, and may have developed derivative works from, Oracle's Retek, Hyperion, and eBusiness Suite ("EBS") products – in light of Defendants' illegal business model, Defendants could not have "evaluated" support of these products without doing so.[2]

On July 28, 2008, after Oracle learned that Defendants had likely gained improper access to and used Oracle's Retek, Hyperion, and EBS software, Oracle amended its Complaint to include allegations related to these products and served discovery on these topics at the same time. Since then, Defendants have refused to provide the requested discovery, though they concede the relevance of the inquiry. As a proposed substitute for actual discovery, Defendants offered a short, conclusory declaration of SAP TN's founder, Andrew Nelson. The declaration raises more questions than it answers, and illustrates the importance of actual discovery into the possible infringement by Defendants of three entirely separate lines of software products.

---

[2] Defendants also may have maintained illegal copies of Oracle's Siebel-branded software applications and profited from a service offering aimed at Siebel customers. Defendants have agreed to provide foundational discovery regarding these activities. Oracle has reserved its right to seek full discovery after completing the foundational discovery.

Pursuant to the Court's October 16, 2008 Order permitting Oracle to file this Motion, and the further discussion with the Court at the January 8, 2008 discovery conference, Oracle moves for an Order compelling Defendants to respond to 3 interrogatories, 15 requests for production, and one Rule 30(b)(6) notice for each Defendant, all aimed at the issue of Defendants' infringement of three additional software lines added by Oracle to its Second Amended Complaint ("SAC") filed in July 2008. Oracle has narrowly tailored this discovery and consolidated the subject requests into a single document for the Court's convenience, attached as Appendix A to this Motion.

## II. RELEVANT FACTS

Oracle filed its original Complaint in this action on March 22, 2007. Howard Decl. ¶ 2. Oracle initially had no factual basis for claims of discovery beyond the PS and JDE downloads alleged in the initial Complaint. It responsibly limited its initial claims to the PS and JDE software update downloads revealed by Oracle's internal records. *Id.* At the same time, Oracle made it clear that it did not waive the right to seek discovery of other product lines if it became aware of Defendants' wrongdoing beyond the JDE and PS software put at issue by the original Complaint. *Id.* ¶ 3. This conditional agreement is reflected in written correspondence between the Parties. *See id.* ¶ 4 (detailing this correspondence). During discussions related to this agreement, Oracle explicitly encouraged Defendants to come forward with information about downloads beyond the alleged PS and JDE downloads, to the extent that Defendants were aware that their wrongdoing extended beyond those two product lines. *Id.* ¶ 3. Defendants did not do so. *Id.*

Defendants started production of documents in late 2007. (The bulk of these early productions were from SAP TN. SAP started significant production of documents only in April 2008). *Id.* ¶ 5. At around the same time, through early Rule 30(b)(6) depositions, Oracle learned that Defendants had illegally copied and used PS and JDE software applications (as distinct from the support product downloads that formed the basis of the original Complaint) and served additional discovery, still focused only on PS and JDE software. *Id.* ¶ 7.

Through review of documents Defendants subsequently produced (from March to

December 2008), Oracle learned that Defendants' illegal business model apparently extended to the Siebel, Retek, EBS, and Hyperion product lines.[3] *Id.* ¶ 9. These documents demonstrate that, as early as August 2005, SAP TN had already begun evaluating support of the EBS product lines, and was considering the same for Retek and Hyperion by March 2007. *Id.* Moreover, although Defendants contend that they never actually offered customers support on Retek, EBS, and Hyperion products, their own documents suggest differently. *See id.* Ex. D at SAP-OR00001191-92 (a March 22, 2007 SAP "Safe Passage" presentation showing that SAP had already converted Oracle customers running Siebel, Retek, and EBS products through SAP's Safe Passage program), Ex. E, F (SAP-approved final business cases, dated March 2007, demonstrating that SAP formally approved SAP TN's provision of service on Oracle-owned EBS and Hyperion products). As the documents show, these additional service offerings by SAP TN were part of an overall effort to "[s]upport SAP's strategy to grow and secure [m]aintenance revenue" and "[l]everage service as [a] competitive weapon in order to restrict competition." *Id.* Ex. E at SAP-OR00252118.

In April 2008 when it first started seeing certain of these documents, Oracle also knew from its PS and JDE discovery efforts that Defendants would not propose offering service on Oracle software products, as the business cases prove they did, without first obtaining, and then cross-using, copies of Oracle software applications. *Id.* ¶ 8; *see also* SAC ¶¶ 17-19 (describing SAP TN's "standard" illegal business model); TAC ¶¶ 17-19 (same). In fact, SAP TN executives made repeated reference in emails to the need for a "seed" or "sandbox" copy of various versions of Oracle software in order to study the code and plan for providing support to SAP TN customers on that particular software release. *See, e.g.,* Howard Decl. ¶ 8, Ex. B at TN-OR00009616, C at TN-OR00854823. Oracle knows of no reason to think that SAP TN adopted any different model in "evaluating" and developing a support capability for the other Oracle

---

[3] Defendants have produced documents related to Retek, Hyperion, or EBS only when they are also responsive for some other reason. Howard Decl. ¶ 16. Until recently, Defendants' Siebel production was similarly limited.

software products.

Once Oracle began finding documents about non-PS/JDE products, it immediately raised the issue with Defendants, explaining that, because of new facts learned from Defendants' own documents, the upcoming Second Amended Complaint ("SAC") would likely include allegations of infringements of other products. *Id*. ¶ 10. Defendants raised no objections in response, and characterized the additional allegations as "factual detail to legal claims first asserted more than a year ago." *Id*. Oracle raised the same issue several more times, including in the June and July 2008 Joint Discovery Conference Statements, explaining that it would serve discovery directed to Hyperion, Retek, and EBS when it finalized the SAC (which in turn depended on completing discovery that Defendants resisted and that Judge Legge ultimately ordered them to provide). *Id*. ¶ 11. Defendants did not respond or object, either in the Joint Statements or in the subsequent Discovery Conferences, to the notion of discovery on these other products. *Id*.

On July 28, 2008, with eleven months left in the discovery schedule set by the Court, and having obtained both the additional copyright registrations it needed and the discovery related to the use of PS and JDE local software environments by SAP TN ordered by Judge Legge, Oracle filed its SAC. The SAC included allegations that SAP expanded SAP TN's illegal business model to include Oracle's Siebel, Retek, Hyperion, and EBS software. *See id*. ¶ 12; *see also* SAC ¶¶ 27-28, 84, 113, 146-220.[4] *On the same day*, Oracle served its Third Set of Interrogatories to SAP TN and Second Set of Interrogatories to the SAP Defendants, and its Second Set of Requests for Production of Documents to Defendants. *See* Howard Decl. ¶ 13. Oracle specifically targeted its discovery at obtaining documents and information related to Defendants' use of Oracle-owned Siebel, EBS, Hyperion, and Retek intellectual property. *Id.*

---

[4] Oracle still does not have enough information to know which Siebel, EBS, and Hyperion software Defendants have copied and used without authorization, so has not yet included specific copyright claims aimed at these products. That is the point of the discovery Oracle served in July 2008. In the SAC and TAC (¶ 148 n.3), Oracle stated that, "[a]s discovery progresses, Oracle reserves the right to add additional counts based on copyright registrations for Oracle's Siebel, eBusiness Suite, Hyperion and/or Retek software."

Defendants responded to this discovery a month later, on August 27, 2008, by refusing to provide any information or documents on products other than PS or JDE. *See id*. ¶ 14, Ex. G, H. Defendants' objections to Oracle's EBS, Retek, and Hyperion discovery are based on claims that the discovery is overbroad, unduly burdensome, and irrelevant, because: (1) Defendants assert that Oracle has not raised any pending claims regarding these product lines, (2) Oracle earlier in discovery (at the Rule 26(f) conference focused exclusively on the allegations of downloading of PS and JDE updates derived only from information on Oracle's internet logs) took the position that these product lines currently were not at issue, and (3) SAP TN never actually supported Retek, Hyperion, or EBS. *Id*. ¶ 15, Ex. G, H.

Despite several meet and confer efforts in the following months, Defendants would never budge from their refusal to provide answers to Oracle's EBS, Hyperion, and Retek discovery. *Id*. ¶¶ 17, 20-22. However, on October 7, 2008, and again before the Court on October 10, 2008, Defendants did offer to provide a declaration to show that SAP TN never "supported" the Retek, Hyperion, and EBS product lines. *Id*. ¶ 15. Oracle agreed to review this proposed declaration, but indicated it must include facts to determine: (1) whether Defendants, in preparing to service these applications, created infringing copies according to the usual illegal business model at SAP TN, (2) what knowledge SAP AG had of these alleged activities (as an indirect infringer), and (3) what efforts, if any, were undertaken by SAP AG to avoid the alleged illegal conduct. *Id*. In its October 16, 2008 Order Following Discovery Conference, the Court authorized Oracle to file motions to compel discovery from Defendants as to any of the other Oracle-owned applications, should further meet and confer efforts fail. *See* October 16, 2008 Order at 2.

Almost two months later, on November 21, 2008, Defendants finally provided the promised Declaration of Andrew Nelson (the "Nelson Declaration"). Howard Decl. ¶ 18, Ex. I. The substantive portion of this Declaration spans only two paragraphs, and merely states that, prior to Mr. Nelson's resignation from SAP TN, SAP TN considered providing service on EBS, Hyperion, and Retek but never did. *Id.* Ex. I at 2. Mr. Nelson also asserts that, to his knowledge, no one at SAP TN downloaded or otherwise accessed any "proprietary software or confidential

support materials" in preparing to provide such service. *Id*. Oracle immediately explained to Defendants why the Nelson Declaration was wholly inadequate:

> Oracle needs detailed information about exactly what each Defendant did to prepare to provide service on each of these Oracle-owned applications, including the source of any materials used to prepare to offer such service, what exactly was done with those materials (e.g., were copies made, for what purposes, how many copies were made, where did all copies reside, and were any copies modified and, if so, how). We also need to know what personnel were involved from each defendant in the planning and testing and preparation phases for each application at issue and what, if anything, any defendant did to protect against any misuse of Oracle-owned IP.

*Id.* ¶ 19. Oracle pointed out that Mr. Nelson did not provide this necessary information from SAP TN and could not declare as to what SAP knew or did. *Id*. Oracle also explained that, absent receipt of significantly expanded declarations from all Defendants, Oracle anticipated seeking this information through Rule 30(b)(6) deposition notices and/or this Motion to Compel.

Defendants agreed to review Oracle's anticipated Rule 30(b)(6) notices and decide whether they would: (1) be willing to provide a more detailed declaration that would better address the categories of information requested by the notices, (2) make a witness or witnesses available in response to the notices, or (3) stand on their objection to providing discovery related to the EBS, Retek, and Hyperion software lines. *Id*. ¶ 20. On December 19, 2008, Oracle served its Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) Regarding EBS, Retek, and Hyperion on SAP America, SAP AG, and TomorrowNow, Inc. *Id*. Defendants served their Responses and Objections on January 6, 2009, refusing to produce witnesses as to even a single topic. *Id*. ¶ 21.

## III. THE COURT SHOULD ORDER RESPONSES TO ORACLE'S DISCOVERY RELATED TO ORACLE'S EBS, RETEK, AND HYPERION PRODUCTS.

Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions of any matter, not privileged, which is relevant to the subject matter of the pending action. A relevant matter is any matter that bears on, or that reasonably could lead to other matters that

bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, discovery should be allowed unless the material requested has no conceivable bearing on the case. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

*Oracle's Allegations Make The Discovery It Seeks From Defendants Relevant*. Defendants' first objection in their formal discovery responses – that Oracle does not have pending claims regarding Retek, Hyperion, and EBS – is simply untrue. In its SAC (and now in its Third Amended Complaint ("TAC")), Oracle included allegations that Defendants' illegal business model extended beyond the PS and JDE product lines to Retek, Hyperion, and EBS software applications. *See, e.g.*, SAC ¶ 27; TAC ¶ 27 ("SAP expanded SAP TN's illegal model to include Oracle's Siebel software just days after Oracle acquired Siebel, and added Oracle's Retek and Hyperion software to its Safe Passage sales program immediately after those acquisitions as well."). The SAC and TAC further alleged that SAP's expansion into the EBS product line was similarly tainted, *see id.*, and that Defendants couldn't have offered or considered offering support for these product lines without first obtaining illegal "sandbox" copies of the software for testing, research, and development to confirm an ability to provide the support, *see*, *e.g.*, SAC ¶¶ 17-19, 28, 84, 113; TAC ¶¶ 17-19, 28, 85, 114 (describing in detail SAP TN's "standard" illegal business model, and alleging this model was used for all products, including Retek, Hyperion, Siebel, and EBS). Through incorporation of the numerous allegations of unlawful conduct related to Retek, Hyperion, and EBS, Defendants' use of these products is covered by all causes of action in Oracle's Complaint. *See, e.g.,* SAC ¶ 146; TAC ¶ 147.

*The Parties' Initial Discovery Limitations Do Not Control*. Defendants' second formal objection – that Oracle initially took the position that these product lines are not relevant – also lacks merit. Apparently, no responsible deed goes unpunished. Oracle initially had insufficient basis to expand its discovery beyond PS and JDE products. Howard Decl. ¶ 2. It could only base its original case on its analysis of its own documents, which only showed unlawful downloading of JDE and PS products. *Id.* Oracle only discovered a factual predicate

for the other product claims when Defendants began producing some Retek, Hyperion, and EBS documents in March through December of 2008. *Id.* ¶ 9, Ex. D-F. Oracle has repeatedly sought discovery on the details of Defendants' additional wrongdoing since then. *Id.* ¶¶ 13, 15, 17-22. Moreover, from the start, Oracle encouraged Defendants to come forward with information about whether and how their wrongdoing extended beyond servicing of PS and JDE applications. Defendants cannot now bootstrap their failure to provide this information into a "gotcha" laches-like argument about the timing of Oracle's discovery requests.

*Failure To Actually Provide Service Does Not Defeat Discovery*. Defendants have previewed to the Court, in discovery conferences, the curious argument that because (they allege) SAP TN never made any money supporting Retek, Hyperion, or EBS, Defendants entirely should escape discovery into their infringement of those products. This argument fails for three reasons.

First, Defendants' (untested) assertion that they did not profit from their forays into the potential servicing of additional Oracle applications has nothing to do with liability. If, as Oracle expects, Defendants used illegal copies of Oracle's software to finalize its support offering for these other applications (and did not offer that support because Oracle sued on the eve of the announcement), then Defendants improperly made copies of Oracle-owned intellectual property.

Second, even if Defendants never earned a penny from customers related to their efforts to service Retek, EBS, and Hyperion products, that would not foreclose damages for the liability Defendants incurred in the process. For instance, Oracle may have statutory damages claims for every copy of a registered work related to these other Oracle-owned applications that the requested discovery shows Defendants made. *See* 17 U.S.C. § 504(c) (authorizing statutory damages for "all infringements involved in the action").

Oracle also may pursue as damages the license Defendants would have paid for the privilege of using Oracle software to develop a support capability for each of these products. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707-09 (9th Cir. 2004) (discussing the available damages for copyright infringement). The hypothetical license model assesses the

value to Oracle and to Defendants of the desired intellectual property at the time of theft. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*., 772 F.2d 505, 513 n.6 (9th Cir. 1985); *see also Jarvis v. K2 Inc*., 486 F.3d 526, 533-34 & n.9 (9th Cir. 2007) (quoting *Frank Music Corp.*). Thus, while Defendants would prefer that the Court focus on the purported failure of their expanded service scheme to make money (because perhaps Oracle thwarted the expansion by filing this action), it is their forecasted expectations for servicing these other Oracle-owned applications that the Court needs to consider in evaluating the importance of the discovery to this action and its relative burden.[5] *Cf. Polar Bear Prods*, 384 F.3d at 709 (upholding a hypothetical license fee award despite defendant's argument that plaintiff was never actually able to sell the copyrighted material at the rate "proffered before [defendant's] infringement," and noting that "[h]aving taken the copyrighted material, [defendant] is in no better position to haggle over the license fee than an ordinary thief"). As an example, in its March 2007 EBS and Hyperion business cases (which Defendants produced in September 2008), SAP forecasted that adding Hyperion to the Safe Passage program would result in an estimated revenue gain of €36 million *to SAP TN alone* by 2011, while adding EBS would provide SAP TN with another €28 million over that time.[6] Howard Decl. Ex. E at SAP-OR00252119, Ex. F at SAP-OR00252141. These figures do not account for the other significant benefits expected by SAP: as SAP explains in these business cases, adding Hyperion and EBS would help SAP "[l]everage service as [a] competitive weapon in order to restrict competition," "[s]upport SAP's strategy to grow and

---

[5] Defendants' own documents suggest they *did* profit from their potential servicing of additional Oracle applications. According to one February 2007 SAP document, 41% of Defendants' Safe Passage deals included customers running Siebel, Retek, or Oracle products, with 14 of the "Top 30 Customers by Net Software Value" obtained through the Safe Passage program running either Siebel, Retek, or Oracle products. Howard Decl. Ex. D at SAP-OR00001191-92. This same document lists the net software value for these 14 "Top 30" customers as €84.9 million (about $113 million U.S. dollars, today and in February 2007), with €55.9 million (about $74.5 million U.S.) coming from Oracle-product customers and €7.2 million (about $9.5 million U.S.) coming from Retek-product customers. *Id.* Only through further discovery can Oracle determine if these profits, along with any other profits that Defendants have obtained, were the result of Defendants' alleged illegal activity.

[6] Under March 2007 exchange rates, €36 million is equivalent to approximately $46.42 million U.S. dollars, while €28 million converts to about $37.41 million U.S. dollars.

secure [m]aintenance revenue," and strengthen SAP's "global market position and increase global market share." *Id.* Ex. E at SAP-OR00252118, Ex. F at SAP-OR00252140.

The Court can find further evidence of the hypothetical license fee figure for Defendants' use of Oracle's products in the amount Oracle itself paid for those products. Oracle outbid SAP for Retek in March 2005 by paying $670 million for that company, and acquired Hyperion in February 2007 through a $3.3 billion acquisition. Considering the high value Oracle (and, in the case of Retek, SAP) placed on the use of these software programs at the time of Defendants' alleged infringement, it is inconceivable that the value of Defendants' subsequent unlawful use of these products – to further their plan of stealing the very customer relationships that Oracle had just worked hard to acquire – could be characterized as trivial, as Defendants now claim.

Finally, as Oracle noted in the June 24, 2008 Joint Discovery Conference Statement, evidence of Defendants' improper use of Oracle's Hyperion, Retek, and EBS software is directly relevant to Oracle's punitive damages case. *See* 6-24-08 Joint Discovery Conference Statement at 4 n.2. The SAC and TAC include allegations, based on documents and testimony to date, that the SAP executive board of directors knew about SAP TN's illegal business model, but approved the purchase of SAP TN anyway and allowed it to continue operating illegally to get a public relations win, convert Oracle customers, and damage Oracle. *See, e.g.,* SAC ¶¶ 1-12; TAC ¶¶ 1-12. For years, Defendants failed to cure SAP TN's infringing business model and chose instead to aggressively profit from it. If Defendants also *expanded* the infringing activity to include wholly separate software products, that indicates a complete indifference to Oracle's intellectual property rights highly relevant to punitive damages. *See, e.g.*, Cal. Penal Code § 502(e)(4) (providing for punitive damages for "willful" violations of the California Computer Data Fraud & Abuse Act "where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice"); Cal. Civ. Code § 3294 (same for "the breach of an obligation not arising from contract"). Defendants' malicious intent appears at almost every turn. The architect of the SAP TN acquisition, SAP Board member Shai Agassi, stated at the time that, by acquiring SAP TN, SAP AG "left a ticking

bomb" for Larry Ellison, and listed Oracle's options as only twofold – either claim SAP TN was "too small to matter" or sue. Howard Decl. ¶ 6, Ex. A at SAP-OR00503878.

*The Burden of Other Applications Discovery Is Not Large, Particularly Given the Relevance.* Defendants have repeatedly asserted the limited scope of their efforts to service other Oracle applications. Howard Decl. ¶¶ 15, 18, Ex. I. Therefore, Defendants should not have great difficulty producing the relevant documents, answering Oracle's 3 interrogatories, and preparing Rule 30(b)(6) witnesses to properly describe what they did to prepare the business cases that advertise such gaudy potential profits. Moreover, the relevance of the information – including to Oracle's actual and punitive damages claims – outweighs any such burden, as shown above.

## IV. CONCLUSION

With eleven months left in discovery, Oracle served its discovery related to its EBS, Retek, and Hyperion products on July 28, 2008, one month after it first had (and simultaneously informed Defendants it had) a factual basis to do so, and on the same day amended its Complaint to include those claims. Today, six months later, Defendants have offered only the inadequate Nelson Declaration in response. Defendants' failure to respond to Oracle's discovery prevents Oracle from assessing liability and damages related to this part of the case. Considering the looming discovery deadline of June 19, 2008, the delay also threatens the case schedule.

For the foregoing reasons, Oracle respectfully requests that the Court issue an order compelling Defendants SAP America, SAP AG, and SAP TN to answer Oracle's Retek, EBS, and Hyperion-related discovery, and, in particular, to: (1) each designate and make available for deposition pursuant to Fed. R. Civ. P. 30(b)(6) one or more persons who consent to testify on their behalf regarding the Retek, EBS, and Hyperion product line topics set forth in Oracle's Rule 30(b)(6) notices; (2) provide supplemental responses to Oracle's Third Set of Interrogatories to Defendant TomorrowNow, Inc. and Second Set of Interrogatories to Defendants SAP America and SAP AG (Interrogatory Nos. 2, 4, and 13); and (3) provide

supplemental responses to Oracle's Second Set of Requests for Production of Documents to Defendants, Nos. 2, 5, 9, 12, 18-19, 24-26, 29-31, 34, and 42-43.

DATED: January 15, 2009

BINGHAM McCUTCHEN LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited