Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH <br><br> **[REDACTED] MOTION TO COMPEL DISCOVERY CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS** <br><br> Date: February 10, 2009 <br> Time: 2:00 PM <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION. ........................................................................................................... 3
   A. Background. ........................................................................................................ 4
      1. Plaintiffs have blocked discovery into Oracle partners that provide third party support. ................................................................................. 4
      2. Plaintiffs served an Oracle partner, CedarCrestone, with a subpoena *duces tecum*. ......................................................................................... 6
II. ARGUMENT. ................................................................................................................. 8
   A. The Discovery Standard. ..................................................................................... 8
   B. Plaintiffs Have Improperly Withheld The Requested Discovery And Production Of That Discovery Imposes A Minimal Burden On Plaintiffs. ............ 8
      1. The Requested Discovery is relevant to a calculation of a reasonable royalty. ........................................................................................ 8
      2. The Requested Discovery is relevant to determining whether Defendants caused Plaintiffs' alleged damages. ...................................... 10
      3. Production of the Requested Discovery imposes a minimal burden on Plaintiffs. ................................................................................................ 11
III. CONCLUSION. ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Blankenship v. Hearst Corp.*
519 F.2d 418 (9th Cir. 1975) ................................................................................................. 7

*Bus. Trends Analysts, Inc. v. Freedonia Group*
887 F.2d. 399 (2d Cir. 1989) .................................................................................................. 8

*Eales v. Envtl. Lifestyles, Inc.*
958 F.2d 876 (9th Cir. 1992) .................................................................................................. 9

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
772 F. 2d 505, 227 USPQ 687 (9th Cir. 1985) ...................................................................... 8

*Gonzales v. Google, Inc.*
234 F.R.D. 674 (N.D. Cal. 2006) ........................................................................................... 7

*Jarvis v. K2 Inc.*
486 F.3d 526 (9th Cir. 2007) .................................................................................................. 8

*On Davis v. Gap, Inc.*
246 F.3d 152 (2d Cir. 2001) ................................................................................................... 8

*United States v. King Features Entm't, Inc.*
843 F.2d 394 (9th Cir. 1988) .................................................................................................. 9

**Rules**

Federal Rule of Civil Procedure
26(b)(1) ................................................................................................................................... 7

**Other Authorities**

4 *Nimmer on Copyright* § 14.02(a) ............................................................................................ 10

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on February 10, 2008 at 2:00 PM, defendants SAP AG, et al. ("Defendants"), by their undersigned counsel, will move this Court, located at 450 Golden Gate Avenue, San Francisco, for an order compelling plaintiffs Oracle USA, Inc., et al. ("Oracle" or "Plaintiffs") to produce documents concerning Oracle's partner CedarCrestone, Inc. ("CedarCrestone") and to give a foundational Rule 30(b)(6) deposition concerning third party support provided by Oracle partners in general.

This motion is based on the Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein, and on the declaration of Jason McDonell in Support of the motion to compel filed herewith.

## RELIEF REQUESTED

Defendants seek an order compelling Plaintiffs to produce:

- Documents sufficient to show Oracle's agreements with CedarCrestone, including, but not limited to, documents sufficient to show what, if any, consideration CedarCrestone pays to Oracle for the right to provide support services to Oracle enterprise software customers.

- Documents sufficient to show the nature of the services provided by CedarCrestone and the terms and conditions of CedarCrestone's access to and use of Oracle Software and Support Materials.[1]

- Documents sufficient to show any customer profile identified by Oracle that is a candidate to receive support services from CedarCrestone.

- Documents sufficient to identify Oracle customers receiving support services for Oracle enterprise software from CedarCrestone.

- One or more knowledgeable witnesses for a foundational Rule 30(b)(6) deposition on the subject of support of PeopleSoft and JD Edwards branded software products provided by Oracle's partners.

---

[1] "Software and Support Materials" means "all programs, program updates, software updates, minor releases, major releases, bug fixes, patches, custom solutions, and instructional materials created or owned by Oracle; or derived from, copied from, or based on any such Oracle materials across the entire family of PeopleSoft and JD Edwards" ("JDE") branded products. Declaration of Jason McDonell in Support of the Motion to Compel ("McDonell Decl.") at ¶ 1, Ex. 1 (Plaintiff's definition of this term as defined in their subpoena *duces tecum* served upon CedarCrestone).
- 2 -

[REDACTED] MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

1  This discovery is hereinafter collectively referred to as the "Requested Discovery."

## ISSUES PRESENTED

Did Plaintiffs improperly refuse to provide the Requested Discovery?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

Defendants seek production of documents relating to CedarCrestone, an "Oracle Certified Advantage Partner" and a third party support provider. CedarCrestone currently provides, and during relevant periods provided, maintenance services to Oracle customers for the same PeopleSoft software products that TomorrowNow serviced and that are at issue in this case. These documents are responsive to multiple Requests for Production.[2] Defendants also seek a deposition concerning Oracle's partners' support of PeopleSoft and JD Edwards products. Plaintiffs have refused to produce this discovery, relying on relevance and burden objections.

The Requested Discovery is relevant to the *quantification* of Oracle's alleged damages and to show that Defendants' did not *cause* those alleged damages. For example, Oracle's partners apparently pay for the right to access Oracle's Software and Support Materials. If so, the amount they pay and the applicable terms and conditions would be directly relevant to the evaluation of any reasonable royalty damages that Oracle may seek. Moreover, the mere fact that customers have options for support from Oracle partners (rather than obtaining support services directly from Oracle) may prove that customers would have left Oracle to get support elsewhere regardless of the activities of TomorrowNow. As such, that evidence is directly relevant to the element of causation of Oracle's alleged lost profits.

To eliminate the burden objection, Defendants have (for now) limited this request for documents to those relevant to one partner, CedarCrestone, and to limited aspects of that partner relationship, the provision of support services to Oracle customers. The foundational Rule 30(b)(6) deposition on the subject of Oracle's partner relations in general should take one day and as such will not be unduly burdensome. If, as we expect, this discovery discloses extremely

---

[2] These Requests for Production ("RFPs") and Plaintiffs' responses are discussed below and attached as Exhibit 2 to the McDonell Decl. at ¶ 2.

relevant and material information, Defendants reserve the right to seek additional discovery of Oracle concerning its partner relations.

### A. Background.

#### 1. Plaintiffs have blocked discovery into Oracle partners that provide third party support.

Oracle is one of the world's largest vendors of enterprise software. *See, e.g.,* Third Amended Complaint ("TAC") at ¶ 61 (Docket No. 182). Typically, Oracle does not sell its software, but rather licenses its software and sells support services to maintain it. *See, e.g., id.* at ¶ 51. Other companies compete with Oracle to provide support services for Oracle software. McDonell Decl. at ¶ 3, Ex. 3. Indeed, Oracle concedes that it is appropriate under some circumstances for third parties to support its products. TAC at ¶ 53. These competing support service companies are referred to sometimes as "third party" support providers. *See, e.g., id.* TomorrowNow is only one of many such companies. McDonell Decl at ¶ 4, Ex. 4.

Some third party support providers also hold themselves out as Oracle's "partners." CedarCrestone is one such partner.[3] *See* McDonell Decl. at ¶ 5, Ex. 5. Its website confirms that as a Certified Advantage Partner, it provides third party support services similar to those provided by TomorrowNow:

> [CedarCrestone] offers clients a solution for providing ongoing tax and regulatory support for unsupported PeopleSoft applications. Tax and Regulatory support is often packaged with application break/fix support to arrive at a solution able to "Maintain" clients on unsupported versions for extended periods of time.

*Id.*[4] Additionally, CedarCrestone's counsel has confirmed that it provides support services in the

---

[3] Oracle has confirmed that there are other such third party support providers. *See, e.g.*, McDonell Decl. at ¶ 6, Ex. 6.

[4] Oracle describes TomorrowNow's support services as follows:

> [TomorrowNow] claimed that it could cut customer maintenance and support bills in half and give customers a reprieve from software upgrade cycles by allowing customers to remain on older, often outdated, versions of PeopleSoft or JDE software rather than moving to later versions by implementing upgrades that the customers would receive by paying support services from the software vendors themselves.

TAC at ¶ 66.

1  same manner as TomorrowNow. She explained:

> …CedarCrestone's consultants and technicians act on behalf of its clients and routinely access PeopleSoft application objects and routinely access PeopleSoft application objects and database components that comprise the PeopleSoft system(s).

McDonell Decl. at ¶ 7, Ex. 7. CedarCrestone's attorney also explained how CedarCrestone acts on behalf of its clients:

> …CedarCrestone acts on behalf of the client, in accordance with their license and support plan, when it accesses these objects and elements for these purposes. Likewise, *in all of these cases, problems with the originally delivered objects will be* encountered *which requires downloading "patches" and "fixes" provided by the software vendor (Oracle), and applying these to the client's various environments, as well as "updates" and "upgrades" for the various application components*, and similarly for the core kernel PeopleTools engine.

*Id.* (emphasis supplied). Thus, the scope of CedarCrestone's support activities appears to be comparable to TomorrowNow's support activities.

The relevance of other third party support providers, including Oracle partners such as CedarCrestone, has been an issue throughout this case. Defendants propounded several RFPs and interrogatories and noticed a Rule 30(b)(6) deposition concerning third party support providers and Oracle's relationship with them. As examples:

- Request No. 32 requests "All Documents relating to Oracle's position regarding the propriety of providing third-party support or maintenance for Oracle products or the permissible methods for doing so." McDonell Decl. at ¶ 2, Ex. 2.

- Request No. 33 requests, "All Documents relating to Communications between Oracle…and third-party support or maintenance vendors, concerning permissible methods of providing third-party support or maintenance for Oracle products, and any public statements by Oracle on that subject." *Id.*

- Request No. 39 requests, "All Documents relating to any occasions on which Oracle has denied access to any Oracle website, FTP site, or other online service to any Oracle customer or third-party support or maintenance vendor based on conduct by the customer or vendor in connection with third-party support or maintenance services." *Id.*

- Request No. 40 requests, "All Documents relating to any occasions on which

---

(continued…)

> Oracle has granted access to any Oracle website, FTP site, or other online service to a third-party support or maintenance vendor for the purpose of providing third-party support or maintenance services." *Id.*

- The Second Notice of Deposition to Oracle Corporation seeks a witness to testify about "[t]he identities of the companies known to Oracle to have provided, or be providing, third party support for the PS and JDE product lines, the types of services provided by those companies, and the methods by which they are provided." McDonell Decl. at ¶ 8, Ex. 8.

Plaintiffs have refused to produce responsive documents concerning Oracle partners, such as CedarCrestone, that provide third party support to Oracle customers. McDonell Decl. at ¶ 9, Ex. 9. Oracle also refused to produce a Rule 30(b)(6) witness to testify about Oracle's partners that provide third party support, and vigorously objected during depositions whenever the topic was raised. *See, e.g.,* McDonell Decl. at ¶ 10, Ex. 10.

Defendants first moved to compel production of responsive documents on January 28, 2008. The issue was presented to Special Master Legge, who "recommend[ed] that these requests be denied, without prejudice, until a later showing of relevance and appropriateness." McDonell Decl. at ¶ 11, Ex. 11. At the August 28, 2008 discovery hearing, however, this Court indicated a willingness to reconsider Judge Legge's recommendation upon further showing by Defendants. McDonell Decl. at ¶ 12, Ex. 12. The issue was raised again at the November 25, 2008 discovery hearing, and this Court authorized the filing of this motion. McDonell Decl at ¶ 13, Ex. 13.

### 2. Plaintiffs served an Oracle partner, CedarCrestone, with a subpoena *duces tecum*.

Despite its objections about the relevance of Oracle partners that provide third party support, Plaintiffs served CedarCrestone with a subpoena *duces tecum* on October 31, 2008 ("Plaintiffs' Subpoena"). McDonell Decl. at ¶ 1, Ex 1. The subpoena requested documents from CedarCrestone describing its business model and communications between Defendants and CedarCrestone. *Id.* At the November 25, 2008 hearing, Plaintiffs characterized the purpose of their subpoena, arguing "what we were seeking is their [CedarCrestone's] documents related to any representations that were made in connection with those negotiations [between TomorrowNow and CedarCrestone], particularly related to any liability issues, because that's

| | |
|---|---|
| 1 | relevant; and they're not the only one." McDonell Decl. ¶ 13, Ex. 13. The subpoena belies this |
| 2 | characterization. Specifically, only Requests for Production 1-6 ask for documents directly |
| 3 | relevant to the potential sale of TomorrowNow to CedarCrestone, while the second half of the |
| 4 | subpoena, Requests 7-11, asks for documents relating to CedarCrestone's method of providing |
| 5 | third party support and access of Oracle's source code. *See* McDonell Decl. at ¶ 1, Ex. 1. |
| 6 | In response to Plaintiffs' Subpoena, CedarCrestone agreed to produce documents |
| 7 | responsive to six requests concerning CedarCrestone's interest in acquiring TomorrowNow and |
| 8 | objected to the remaining five requests concerning how it provided support services to Oracle |
| 9 | customers. McDonell Decl. at ¶ 7, Ex. 7. CedarCrestone confirmed, however, that it downloads |
| 10 | from Oracle "patches" and "fixes" on behalf of Oracle's customers. *Id*. |
| 11 | Defendants subsequently served CedarCrestone with a subpoena *duces tecum* |
| 12 | ("Defendants' Subpoena"). McDonell Decl. at ¶ 14, Ex. 14. Similar to Plaintiffs' Subpoena, |
| 13 | Defendants' Subpoena requested documents describing CedarCrestone's business model, limited |
| 14 | to how CedarCrestone provides third party support of Oracle enterprise software. *Id*. |
| 15 | Additionally, Defendants' Subpoena requested documents concerning communications between |
| 16 | Oracle and CedarCrestone relative to any agreement to provide such services. *Id*. |
| 17 | Shortly after Defendants' Subpoena was served on CedarCrestone, Plaintiffs withdrew |
| 18 | their subpoena. See McDonell Decl. at ¶ 15. Thereafter, CedarCrestone objected to Defendants' |
| 19 | Subpoena in a manner that suggested that CedarCrestone may have communicated with Plaintiffs |
| 20 | in drafting its objection. *Id*. at ¶ 16, Ex. 15. For example, CedarCrestone's objection to |
| 21 | Defendants' Subpoena differed significantly from its objection to Plaintiffs' Subpoena, |
| 22 | specifically, it included excerpts from discovery proceedings in this case (Judge Legge's Report |
| 23 | and Recommendations re: Discovery Hearing No. 1, February 22, 2008 and the August 28, 2008 |
| 24 | Transcript of Proceedings) that were not mentioned in its objection to Plaintiffs' Subpoena. That |
| 25 | same day, Plaintiffs' served objections to Defendants' Subpoena. *Id*. at ¶ 17, Ex. 16. |
| 26 | The parties met and conferred in regard to their respective subpoenas and were unable to |
| 27 | resolve this issue. Plaintiffs requested, however, that Defendants move to compel production |
| 28 | from Plaintiffs, rather than CedarCrestone, and Defendants agreed to first seek to compel |

1  production from Plaintiffs before attempting to compel CedarCrestone to produce the same
2  information. McDonell Decl. at ¶ 18.

## II. ARGUMENT.

### A. The Discovery Standard.

The scope of discovery under the Federal Rules and in the Northern District of California is liberal. *See* Fed. R. Civ. P. 26(b)(1); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) ("Relevancy, for the purposes of discovery, is defined broadly…[and is] liberally construed to permit the discovery of information which ultimately may not be admissible at trial."). Because the information Defendants seek is relevant to its defenses, Oracle has a "heavy burden" to show why it refuses to provide it. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (Party must "carry a heavy burden of showing why discovery was denied"). Plaintiffs cannot make this showing as to the discovery sought by this motion.

### B. Plaintiffs Have Improperly Withheld The Requested Discovery And Production Of That Discovery Imposes A Minimal Burden On Plaintiffs.

The Requested Discovery is relevant. It may bear on the calculation of damages in this case, specifically, a reasonable royalty that may be sought if Plaintiffs establish liability. Additionally, the Requested Discovery may show that TomorrowNow's access and use of Oracle's Software and Support Materials did not cause Plaintiffs' damages. The burden to produce the Requested Discovery is minimal because Defendants have narrowed the scope of their requested relief and the Requested Discovery is easily accessible to Plaintiffs.

#### 1. The Requested Discovery is relevant to a calculation of a reasonable royalty.

Plaintiffs seek actual damages. *See, e.g.,* TAC at ¶ 161. Actual damages in a copyright action may be computed as plaintiff's lost profits and the defendant's profits from infringement (excluding any overlap of the two), or by determining a reasonable royalty for the alleged infringement.[5] *See On Davis v. Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001). The latter

---
[5] The concept of a reasonable royalty is borrowed from patent infringement cases, and courts have extended it to copyright infringement cases. *See On Davis v. Gap, Inc.,* 246 F.3d 152 (2d Cir. 2001). The Ninth Circuit is in accord. *See, e.g., Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007).

computation, a reasonable royalty, is a means of measuring the "value of what the defendant took." *Id.* It may measure either the actual damages of the plaintiff who was not paid a license (in the form of lost revenue that would have been collected had the infringer purchased a license) or the profits gained by the infringer by not paying a license. *Bus. Trends Analysts, Inc. v. Freedonia Group*, 887 F.2d. 399, 405 (2d Cir. 1989).

Royalty-based damages must be based on objective market value, supported by sufficient evidence to render them non-speculative, and not on a plaintiff's subjective valuations of its own copyrights. *See, e.g., Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F. 2d 505, 513-14 (9th Cir. 1985) (upholding district court's refusal to award royalty-based damages where plaintiffs offered "no disinterested testimony" in support of their alleged damages). The Ninth Circuit has upheld royalty awards based on license agreements with third parties for a similar use. *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 400 (9th Cir. 1988) (concluding license fees with third parties was "prima facie" evidence of a reasonable royalty). Additionally, a plaintiff's proven standard fee to license a copyrighted work may establish a reasonable royalty. *Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 880 (9th Cir. 1992) (affirming district court decision to calculate actual damages by determining "what a willing buyer would have been reasonably required to pay a willing seller for plaintiff's work.").

To the extent Oracle allows its partners to access to its Software and Support Materials to provide support, any consideration given may be relevant for purposes of assessing an appropriate royalty. One possible example of such documentation is what Oracle describes on its website as the "Application Specific Full Use Distribution or Embedded Software License Agreement." This publicly-available form agreement gives partners "the option of providing support for the application package (including the Oracle programs) to their end users. *If partners provide support to end users they are required to pay Oracle a fee for such services for each end user who contracts with them or obtains support from them."* McDonell Decl. at ¶ 19, Ex. 17 (emphasis supplied). Other documents that may show consideration for access to Oracle Software and Support Materials may include actual agreements between Oracle and

CedarCrestone to support Oracle customers (including a description of CedarCrestone's access rights to the Software and Support Materials), informal agreements or fee schedules.

### 2. The Requested Discovery is relevant to determining whether Defendants caused Plaintiffs' alleged damages.

Oracle alleges that it lost customers and related profits as a result of TomorrowNow's activities. *See, e.g.,* TAC at ¶ 185 *et seq.* In order to recover lost profits, Oracle must prove a causal connection between Defendants' actions and the alleged damages. *See* 4 *Nimmer on Copyright* § 14.02(a) at 14-13 (in appropriate circumstances, actual damages are computed by determining what profits would have accrued to plaintiff *but for* the infringement). That puts into issue the extent to which Oracle lost business to other third party service providers.

It would be misleading for Plaintiffs to allege that Oracle lost customers to TomorrowNow and *only* TomorrowNow. *Cf., e.g.,* McDonell Decl. at ¶ 3, Ex. 3. Oracle's customer attrition, including the attrition of the named customers in this action, may have been inevitable. Some documents produced by Plaintiffs prove that Oracle anticipated inevitable attrition. For example, in one such document, an Oracle employee who tracked Oracle customer attrition to third party support providers concluded, REDACTED

REDACTED

McDonell Decl at ¶ 20, Ex. 18. Further evidence that Oracle lost business to other third party support providers could prevent Plaintiffs from taking the misleading position that it would have retained all the customers it lost to TomorrowNow but for TomorrowNow providing third party support services. For example, Oracle may have anticipated that those customers would pursue other support vendors, including Oracle partners, regardless of whether TomorrowNow was in business.

Oracle attempts to draw a distinction between TomorrowNow and Oracle partners, asserting that Oracle partners do not compete with Oracle in the same manner TomorrowNow did. McDonell Decl. at ¶ 9, Ex. 9. That assertion, however, begs the very question that Defendants are exploring with the Requested Discovery, and Oracle has offered no hard evidence to confirm this alleged distinction. Plaintiffs rest simply on the fuzzy characterization of these

entities as "partners," leaping to the conclusion that any discovery into Oracle partners cannot support Defendants' causation of damages argument.[6]

Oracle's unsubstantiated assertions are insufficient to foreclose discovery into this area. Defendants must be given an opportunity to evaluate whether the terms and conditions of one such partner agreement support a causation of damages defense. Responsive documents, therefore, include potential agreements between Oracle and CedarCrestone that indicate Oracle has identified a particular customer profile that Oracle concludes is better or equally well served by obtaining support services from CedarCrestone.

Additionally, it appears that CedarCrestone is providing support services for former TomorrowNow customers. McDonell Decl. at ¶ 21. Thus the Requested Discovery may confirm some customers are not satisfied with Oracle's service offering and are determined to use third party support regardless of any previous service offering of TomorrowNow. Accordingly, the Requested Discovery is relevant. Responsive documents would include documents sufficient to show a list of Oracle customers that receive third party support from CedarCrestone and the terms and conditions imposed by Oracle to allow such support.

### 3. Production of the Requested Discovery imposes a minimal burden on Plaintiffs.

The relief requested by this motion is narrowly tailored. Defendants seek only documents relating to one of Oracle's Partners, CedarCrestone, and further limit their request to a single aspect of that Partner relationship. Defendants seek documents sufficient to show what consideration, if any, Oracle Partners give in exchange for access to Oracle Software and Support Materials. Additionally, Defendants seek documents that may demonstrate a profile of Oracle customers that Oracle considers better or equally well served by the third party support of its partners, including, but not limited to, a list of Oracle enterprise software customers receiving support services from CedarCrestone.

In addition, because Oracle has been so unwilling to disclose the nature of its partner

---

[6] It is far from clear that the title Oracle "partner" entails a high level of cooperation with Oracle. It may only require a nominal fee, for example, in 2005, membership in the Oracle PartnerNetwork was available for $1,995. McDonell Decl. at ¶ 19, Ex. 17.

1 | relations, it should be required to make available a Rule 30(b)(6) witness to testify about the
2 | nature and scope of its partner programs for supporting enterprise software in general. Such a
3 | deposition should include, among other things, an explanation of Oracle's relationship with third-
4 | party support provider Systime, which Oracle has described as "an Oracle business partner" that
5 | provides support to SAP customers. McDonell Decl. at ¶ 22, Exhibit 19 (REDACTED).

The burden placed upon Plaintiffs by this request is minimal. Presumably, Oracle has retained its Partner agreements in an organized and accessible manner. Additionally, if Oracle has identified and profiled its customers that receive third party support services from its partners, presumably documents sufficient to show such a profile are readily accessible. This minimal burden is better placed initially upon Oracle rather than CedarCrestone, if, as CedarCrestone asserts, "Oracle is easily able to provide" the disputed documents. McDonell Decl. at ¶ 7, Ex. 7.

Defendants, however, reserve their right to seek discovery directly from CedarCrestone and in regard to other partners or third party support providers.

## III.     CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and order production of the requested documents and the requested deposition.


Dated: January 15, 2009                    JONES DAY


                                           By: /s/ Jason McDonell
                                               Jason McDonell

                                           Attorneys for Defendants
                                           SAP AG, et. al.

- 12 -

[REDACTED] MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)