Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, ANSWERS TO INTERROGATORIES, AND RULE 30(b)(6) TESTIMONY RELATED TO HYPERION, RETEK, AND EBS PRODUCTS** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. Defendants Have Never Provided Maintenance Service for the HRE Products ............................................................................................................. 2

    B. Defendants Have Produced Documents and Testimony on HRE Products ............ 2

    C. Plaintiffs Do Not Seek "Foundational" Discovery on the HRE Products ............. 3

    D. Plaintiffs Have Not Asserted Any Legal Claims Related to the HRE Products ............................................................................................................. 4

III. ARGUMENT .................................................................................................................... 6

    A. The Requested Discovery Does Not Meet the Current Relevance Standard .......... 6

        1. Plaintiffs Misstate Rule 26(b)(1) ................................................................. 7

    B. Plaintiffs Cannot Seek Discovery to Determine Whether They Have A Claim. ................................................................................................................ 8

    C. The Requested Discovery Is Unduly Burdensome and Offers No Benefit ............. 8

    D. Plaintiffs Offer No Relevant Evidence to Support Their Motion ......................... 9

    E. Defendants Have Reasonably Permitted Additional Discovery In This Case ...... 11

IV. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

### Cases

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................... 6

*Caliper Techs. Corp. v. Molecular Devices Corp.*,
 213 F.R.D. 555 (N.D. Cal. 2003) .............................................................................. 8, 9

*Jefferson Airplane v. Berkeley Sys., Inc.*,
 886 F. Supp. 713 (N.D. Cal. 1994) ............................................................................... 8

*Kodadek v. MTV Networks, Inc.*,
 152 F.3d 1209 (9th Cir. 1998) ...................................................................................... 8

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ..................................................................................................... 7

*S.O.S., Inc. v. Payday, Inc.*,
 886 F.2d 1981 (9th Cir. 1989) ...................................................................................... 8

*Soto v. City of Concord*,
 162 F.R.D. 603 (N.D. Cal. 1995) .................................................................................. 7

*Surfvivor Media, Inc. v. Survivor Prods.*,
 406 F.3d 625 (9th Cir. 2005) ........................................................................................ 7

### Statutes

17 U.S.C. § 411(a) ............................................................................................................. 8

5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216,
 pp. 235-236 (3d ed. 2004) ............................................................................................. 6

*Advisory Committee Notes on the 2000 Amendments*,
 192 F.R.D. 340 .............................................................................................................. 8

Fed. R. Civ. P. 26 .......................................................................................................... 7, 8

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 6

Defendants SAP AG, SAP America, Inc., ("SAP") and TomorrowNow, Inc. ("TN") (collectively "Defendants") submit this brief in opposition to Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited's (collectively "Plaintiffs") Motion to Compel Production of Documents, Answers to Interrogatories, and Rule 30(b)(6) Testimony related to Hyperion, Retek, and EBS Products ("Motion").

## I. INTRODUCTION

Defendants have never provided maintenance services or collected any revenue for any service relating to the Hyperion, Retek, and eBusiness Suite ("EBS") software lines (collectively, "HRE Products"). None of the exhibits attached to Plaintiffs' Motion prove otherwise. Regardless, Plaintiffs ignore this Court's admonitions to focus their claims and the discovery in this case and continue to seek documents, written discovery responses, and testimony relating to the HRE Products. Specifically, this Court has "made this clear over and over—this case is too big to chase down every possible thing. And it will never to go to trial if that happens." August 28, 2008 Transcript of Proceedings, Docket Entry No. 176 at 21:23-25. This Court has also instructed the parties to "focus on the most egregious and the highest bucks part" of the case and noted "that is in everybody's interest" to do so. *Id*. at 22:1-3.

Plaintiffs' insatiable appetite for discovery on the most collateral of issues belie their constant complaint that discovery in this case is proceeding too slowly. Plaintiffs are now on their fourth complaint in this case. They have amended their claims, added and dropped parties, and have been relentless in attempting to broaden the scope of discovery. Set against that backdrop, the current Motion is a perfect illustration showing that Plaintiffs are not interested in the efficient resolution of the case they brought almost two years ago. What Plaintiffs want, but are not entitled to, is an endless discovery process that they believe will provide them the opportunity to continue to add new claims to this case such that the trial will need to be pushed further into the future. Trial is currently set for February 2010, one month shy of three years after this case was first filed. Three years is more than sufficient time to resolve this case. There is no room in the case schedule for, nor is there any basis in fact, law, or equity to grant, the discovery Plaintiffs seek relating to the HRE Products.
SVI-65370v1

- 1 -

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

## II. STATEMENT OF FACTS

### A. Defendants Have Never Provided Maintenance Service for the HRE Products.

Plaintiffs' motion to compel assumes, without presenting any relevant evidence, that Defendants misused Plaintiffs' HRE Products. Defendants admit that TN considered providing third party customer support for each of the three HRE Products. Indeed, several months ago, Defendants provided Plaintiffs with a proposed declaration from Andrew Nelson, TN's former CEO, indicating that while TN contemplated servicing the HRE Products, it ultimately never did.

The HRE Products were part of SAP's Safe Passage marketing campaign to attract former Oracle customers; however, those using the HRE Products were only entitled to certain financial incentives if they switched and replaced their HRE Products with SAP software. *See* Declaration of Thomas Ziemen in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("Ziemen Decl."), ¶ 4. During Defendants' consideration of TN possibly servicing the HRE Products, they performed analysis on expected revenues, expenses, and logistics of providing the service. *See* Ziemen Decl., ¶¶ 1-2; Declaration of Andrew Nelson in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("Nelson Decl."), ¶ 1; Declaration of Albert Van Wissen in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("Van Wissen Decl."), ¶ 1. However, in the end, Defendants never provided service for any of the HRE Products, and they never generated any revenue related to the service of HRE Products. *See* Ziemen Decl., ¶ 2; Nelson Decl., ¶ 2; Van Wissen Decl., ¶ 2. Moreover, key persons involved in the process have sworn that to their knowledge Defendants did not download or access proprietary software or confidential support materials related to the HRE Products for any purpose relating to Defendants' consideration of whether TN should support those products. *See* Ziemen Decl., ¶ 3; Nelson Decl., ¶ 3.

### B. Defendants Have Produced Documents and Testimony on HRE Products.

From the outset of this litigation, both parties agreed that the case was limited to Defendants' activities related to PeopleSoft ("PS") and J.D. Edwards ("JDE") software. Proceeding with discovery under that agreed focus, Defendants have produced 4,350,802 Bates numbered pages of documents to date— 3,727,374 pages from TN and 636,253 from SAP.

1  Defendants have also produced in excess of 10 terabytes of numerous native file productions
2  from several different sources to date.  Defendants provided these documents and files to
3  Plaintiffs over the course of 181 document productions.  In fact, Defendants have averaged
4  approximately 2.5 productions per week to Plaintiffs since discovery began.  Out of the Court-
5  imposed limit of 120 custodians per side, Plaintiffs have identified and Defendants have produced
6  documents from 72 of those custodians from TN and SAP.  Additionally, Plaintiffs have taken 31
7  depositions of Defendants' current or former employees to date, totaling nearly 200 hours of their
8  allotted 350 hours of time for deposition testimony.

9  Contrary to Plaintiffs' allegations, Defendants have not denied Plaintiffs the opportunity
10 to conduct discovery regarding the HRE Products.  Included in Defendants' massive production
11 of documents are over 13,000 pages of documents directly related to the HRE Products, far more
12 than the "handful" of documents Plaintiffs describe in their motion.  None of the documents
13 related to the HRE Products, or any other documents produced by Defendants in this litigation,
14 has been redacted to remove any non-privileged material related to the HRE products.  Moreover,
15 16 of the 31 defense witnesses who have given their depositions did so after July 28, 2008, the
16 date Plaintiffs filed their Second Amended Complaint, which mentions the HRE Products for the
17 first time.  Plaintiffs questioned several of these witnesses about Defendants' involvement with
18 the HRE Products, some more extensively than others, and not once during any of these
19 depositions did Defendants try to block or limit questioning about the HRE Products.  Thus,
20 Defendants have already provided Plaintiffs with "foundational discovery" on the HRE Products.
21 In contrast, Plaintiffs have not asserted any legal claims or produced any documents, discovery
22 responses, or witnesses relating to the HRE Products.

23     C.    <u>Plaintiffs Do Not Seek "Foundational" Discovery on the HRE Products.</u>

24 Discovery into the HRE Products is different than discovery relating to Siebel software,
25 because TN actually provided service and collected revenue related to Siebel products, albeit on
26 much smaller scale as compared to TN's service offering for the PS and JDE product lines.  In
27 fact, Defendants were willing at the onset of the case to include Siebel within the scope of
28 discovery, but Plaintiffs rejected that proposal.  In contrast, there is no factual or legal basis to

1 permit Plaintiffs to engage in a fishing expedition related to the HRE Products.

2 Further, when Defendants agreed to produce foundational discovery on Siebel software (another product for which Plaintiffs have not asserted any claims or produced any documents, discovery responses or witnesses in this case), Plaintiffs simply responded by seeking even more discovery regarding Siebel, which Defendants agreed to produce. That agreement, however, was simply met by additional requests from Plaintiffs for more Siebel-related discovery. Plaintiffs' overreaching on the Siebel-related discovery was a contributing factor in Defendants refusal to produce additional documents or discovery responses regarding the HRE Products. In other words, if Defendants had agreed to produce additional information regarding the HRE Products, that agreement (like the Siebel discovery) would most likely have been met by additional requests from Plaintiffs for even more.

### D. Plaintiffs Have Not Asserted Any Legal Claims Related to the HRE Products.

Plaintiffs have not asserted any legal claims related to the HRE Products. In fact, Plaintiffs own Motion concedes this point.

> Oracle still does not have enough information to know which Siebel, EBS, and Hyperion software Defendants have copied and used without authorization, so has not yet included specific copyright claims aimed at these products.

Motion at 4, n. 4. This concession is consistent with a similar concession they made almost six months earlier on July 28, 2008 when Plaintiffs filed their Second Amended Complaint[1], as well as the concession in their current operative complaint.[2] Moreover, there are no copyright registrations for any HRE Products alleged in the Third Amended Complaint that was filed on October 8, 2008. In fact, nowhere—neither in any of the four complaints they have filed nor in the Motion—do Plaintiffs specifically state: (a) which of the HRE Products are at issue; (b) that they (*i.e.*, the specific "Oracle" entities who are plaintiffs in this case) own or exclusively license

---

[1] "As discovery progresses, Oracle reserves the right to add additional counts based on copyright registrations for Oracle's Siebel, eBusiness Suite, Hyperion and/or Retek software." Second Amended Complaint (Docket Entry No. 132) at 48, n.3.

[2] Third Amended Complaint, Docket Entry No. 182 ("TAC"), at 49, n.3.

any HRE Products; or (c) that any specific HRE Products have federal copyright registrations.[3]

Plaintiffs' response will undoubtedly be "give us more documents, written discovery responses and testimony regarding the HRE Products and we will tell you which, if any, of those products we own and have registered with the Copyright Office." However, as detailed below, that is not how the federal rules work. The legal claim must precede fact discovery on that claim.

There are just five references to the HRE Products in the Third Amended Complaint, and they are all in either the "Introduction" or "Factual Allegations" portions of that 70 page pleading:

1. "**SAP … added Oracle's Retek and Hyperion software to its Safe Passage sales program** immediately after those acquisitions." TAC at 10:15-18 (emphasis added).

2. "In March 2007, **SAP AG's executive board was about to approve, or had already approved, the expansion of SAP TN's service offering to Oracle eBusiness Suite customers.** A presentation to executive board member Gerd Oswald stated this expansion would 'support SAP's strategy and Board area strategy' and 'leverage service as [a] competitive weapon in order to restrict competition.'" TAC at 10:19-24 (emphasis added).

3. "According to its business model, **SAP TN could not have** offered … eBusiness Suite support services, or **considered offering Retek and Hyperion support services, without first obtaining illegal 'sandbox' copies of that software** for testing, research and development. In authorizing SAP TN to consider and, in the case of Siebel, actually offer these services, SAP AG's executive board of directors had no reason to believe that SAP TN would not likewise engage in illegal acquisition and use of Oracle's software." TAC at 10:25 – 11:2 (emphasis added).

4. "It appears that SAP only could offer instantaneous, round the clock Siebel code support, within a few weeks of Oracle's acquisition announcement, because SAP TN surreptitiously had acquired, studied and developed a service model based on illegal copies of Siebel software. **Based on its standard business model, it appears likely that SAP TN did the same thing with Oracle's eBusiness Suite, Hyperion and Retek software.**" TAC at 26:10-15 (emphasis added).

5. "For years, dating at least to 2003, SAP TN created thousands of copies of Oracle's actual software applications. These software copies included Oracle's PeopleSoft-branded Human Resource Management, Customer Relationship

---

[3] In fact, based on an electronic search of the Copyright Office's registration records, there is at least one product line—Retek—for which there appear to be no federal copyright registrations. Without knowing the specific Hyperion and EBS products that Plaintiffs claim are at issue, Defendants are unable to determine whether there exist any applicable federal registrations for these product lines.

1  Management, Enterprise Performance Management, Financial Data Management,
2  Portal, and Student Administration product lines, and Oracle's J.D. Edwards
   branded Distribution, Financials, Human Resources, and Manufacturing product
3  lines. **They appear also to have included Oracle's Siebel and eBusiness Suite
   software, and may also have included Oracle's Hyperion and Retek**
4  **software."** TAC at 38:20-27 (emphasis added).

Reference Nos. 1 and 2 above, even if taken as true, allege no actionable conduct under any legal theory. Reference No. 3 above is a conclusory factual allegation based on the false premise that TN's consideration of providing service for the HRE Products necessarily required access to an illegal copy of those products. The draft Andrew Nelson declaration tendered to Plaintiffs before they filed the Motion and the executed declarations attached to this Opposition address that allegation and its related premise. References 4 and 5 above are not allegations of fact—they are mere statements of Plaintiffs' suspicion and, as such, are wholly insufficient to support any of Plaintiffs' legal claims.[4] And even if the allegations in those two references could pass muster under Rule 8(a)(2), the attached declarations refute them.

There is no mention of the HRE Products in any of Plaintiffs' legal claims. *See* TAC at 48-67. Likewise, there is no mention of the HRE Products in the "Prayer for Relief" section on pages 68 through 70 of the current complaint. Plaintiffs have had plenty of opportunities to do a sufficient pre-claim investigation to determine whether they have a prima facie basis to assert any legal claims relating to the HRE Products. Plaintiffs should not now be permitted to waste the precious discovery resources currently devoted to the claims that are actually in this case to test their suspicions regarding potential claims Plaintiffs might later add to this case.

### III. ARGUMENT

#### A. The Requested Discovery Does Not Meet the Current Relevance Standard.

Discovery regarding the HRE Products should not be permitted because it is not relevant to any party's claims or defenses asserted in this case.

---

[4] In order to meet the requirements of Fed. R. Civ. P. 8(a)(2), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007), citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

1. *Plaintiffs Misstate Rule 26(b)(1).*

Plaintiffs' motion completely misstates the applicable discovery standard. Rule 26(b)(1) of the Federal Rules of Civil Procedure only provides for discovery of information that "is relevant to any party's *claim* or *defense*" (emphasis added). Plaintiffs' motion, in contrast, incorrectly states that Rule 26(b)(1) permits discovery of "any matter, not privileged, which is relevant to the subject matter of the pending action." Motion at 6. The language Plaintiffs quote is pulled *word for word* from the now repealed version of Rule 26(b)(1), which was amended in 2000 to further limit the scope of discovery. *See* Fed. R. Civ. P. 26, 2000 Advisory Committee Notes (outlining the concerns over sweeping discovery requests which occurred under the previous "subject matter" language). Indeed, the Advisory Committee specifically states that the rule change was intended to signal "to the court that it has the authority to *confine* discovery to the claims and defenses asserted in the pleadings." *Id*. (emphasis added). Moreover, the new language was intended to signal to parties "that they have no entitlement to discovery to develop *new claims or defenses* that are not already identified in the pleadings," precisely what Plaintiffs are attempting to do with this Motion. *Id*.

In addition to stating an outdated and incorrect standard for Rule 26(b)(1), Plaintiffs only rely on cases that apply the repealed Rule 26(b)(1) language, and are thus inapplicable. Plaintiffs seek information on "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case" by citing to *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). Motion at 6-7. However, *Oppenheimer Fund* was a 1978 case that specifically interpreted the *very language* in Rule 26(b)(1) that was amended in 2000. *See Oppenheimer* at 351. The current Rule 26(b)(1) does not permit discovery into "any issue that is or *may be* in the case," but is specifically limited to information about actual "claims and defenses." Fed. R. Civ. P. 26. Similarly, *Soto v. City of Concord*, cited by Plaintiffs, also predates the 2000 amendment of Rule 26(b)(1), and sets out a test considerably broader than the current definition. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

In *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir. 2005), the Ninth Circuit applied the current Rule 26(b)(1) language to uphold a magistrate judge's decision that

limited Plaintiffs' discovery attempts to the specific products identified by the plaintiff as infringing its trademarks. Accordingly, under Rule 26(b)(1) this Court should confine discovery to the specific, allegedly infringed, copyrighted works that Plaintiffs have identified in their current complaint. To hold otherwise would ignore the 2000 amendment to Rule 26(b)(1) and instead—as Plaintiffs urge this Court to do—apply the repealed version of that rule.

### B. Plaintiffs Cannot Seek Discovery to Determine Whether They Have A Claim.

"A party may not obtain documents in order to discover whether it has a cause of action." *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003). *See also Advisory Committee Notes on the 2000 Amendments*, 192 F.R.D. 340, 389 ("The [2000] rule change…signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.")

Furthermore, Plaintiffs may not assert a claim for copyright infringement without first obtaining a federal copyright registration. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made…."); *Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1211 (9th Cir. 1998) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1981, 1085 (9th Cir. 1989). "Such registration is a *jurisdictional prerequisite* to a suit for infringement." *Jefferson Airplane v. Berkeley Sys., Inc*., 886 F. Supp. 713, 715 (N.D. Cal. 1994) (emphasis added). Here, Plaintiffs have not asserted any copyright registrations for any HRE Products and, by their own admission, have not asserted any copyright claims regarding any HRE Products. In fact, they have even failed to assert which HRE Products they contend are at issue and that they (i.e., the specific plaintiffs remaining in this case) own or exclusively license these products. It logically follows that if registration is a predicate for bringing a claim for copyright infringement in federal court, it is also a predicate for seeking discovery on such a claim. Plaintiffs have not established that predicate.

### C. The Requested Discovery Is Unduly Burdensome and Offers No Benefit.

Moreover, under Rule 26(b)(2)(C)(iii), this Court must limit discovery when the burden or expense of the proposed discovery outweighs its likely benefit. There are only five months left in

the discovery period. Plaintiffs have been quick to argue at almost every discovery conference that they believe the parties will likely have trouble staying on the current case schedule based on the progress of discovery to date. Defendants have produced and continue to produce massive volumes of discovery related to the PS and JDE software products—the only products for which Plaintiffs have asserted any claims or themselves produced any documents. That massive discovery effort will continue from now all the way through the end of the discovery period. As Defendants have explained during the discovery conferences, the timely production of documents, written discovery responses and witnesses on the current claims in this case continues to present significant challenges simply because of the volume of information and the breadth of Plaintiffs' claims related to the PS and JDE software products. Permitting Plaintiffs to conduct discovery on the HRE Products will only serve to overburden and delay other relevant discovery that Plaintiffs are already complaining is not proceeding fast enough.

Plaintiffs have offered no relevant evidence to support their position that there is a benefit to the requested discovery. Instead, Plaintiffs argue that the benefit of the discovery they seek is that it will assist in determining whether they have a claim regarding the HRE Products. However, because "a party may not obtain documents in order to discover whether it has a cause of action," Plaintiffs' "benefit" argument is a non sequitur. *Caliper Techs. Corp.*, 213 F.R.D. at 558.

### D. Plaintiffs Offer No Relevant Evidence to Support Their Motion.

Plaintiffs offer no evidence that Defendants provided service for the HRE Products, nor can they, because such service was not provided. *See* Ziemen Decl., ¶ 2; Nelson Decl., ¶ 2; Van Wissen Decl., ¶ 2. Their tacit admission that no such service was provided is contained in their argument that "failure to actually provide service does not defeat discovery." Motion at 8. However, even that fall back argument fails because it is still premised on the assumption that the requested discovery will yield evidence to support an as-yet unsupported claim relating to the HRE Products. And, as discussed above, such discovery is legally impermissible. The following three passages from Plaintiffs' Motion prove this point:

1. In fact, SAP TN executives made repeated reference in emails to the need for a "seed" or "sandbox" copy of various versions of Oracle software in order to study the code and plan for providing support to SAP TN customers on that particular software release. …"**Oracle knows of no reason to think** that SAP TN adopted any different model in 'evaluating' and developing a support capability for the other Oracle software products." Motion at 3:19 – 4:1 (emphasis added).

2. "**If, as Oracle expects, Defendants used illegal copies** of Oracle's software to finalize its support offering for these other applications (and did not offer that support because Oracle sued on the eve of the announcement), then Defendants improperly made copies of Oracle-owned intellectual property." Motion at 8:14-18 (emphasis added).

3. "For instance, **Oracle may have statutory damages claims** for every copy of a registered work related to these other Oracle-owned applications that the **requested discovery shows** Defendants made." Motion at 8:21-23 (emphasis added).

Passage No. 1 above demonstrates the fatal logical flaw in Plaintiffs' conclusory reasoning regarding the HRE Products. Without any evidence or explanation other than "Oracle knows of no other reason to think" otherwise, Plaintiffs allege that TN used "seed" or "sandbox" copies of certain PS and JDE software versions to consider and then service those product lines, and thus TN must have used "seed" or "sandbox" copies of the HRE Products when considering whether to provide service for the HRE Products. Notwithstanding Plaintiffs' flawed reasoning, the attached declarations from key persons involved in the process indicate that Defendants did not download or otherwise access any of the HRE Products' proprietary software or confidential support materials when they were considering whether TN would provide service for those product lines. Passage No. 2 above concedes the possibility that Defendants may not have used illegal copies of Plaintiffs' software to consider TN's support offering for the HRE Products. Again, this passage only alleges the possibility of a valid claim if the requested discovery is permitted, not the existence of claim. Passage No. 3 above is even more blatant in its concession that Plaintiffs need the requested discovery to determine whether they "may have" a statutory damages claim.

All of the other arguments Plaintiffs proffer regarding Defendants' documents that contain estimates of the <u>potential</u> revenues and profits TN <u>might</u> earn <u>if</u> Defendants decided to service

1 HRE Products are irrelevant.[5] The undisputed fact is that Defendants did not service or obtain

2 any revenues or profits from servicing, those products. And, there is no legal or equitable basis

3 for the Court to compel Defendants to produce documents, written discovery responses, and

4 testimony that Plaintiffs <u>hope</u> will support some type of future copyright claim for works that

5 Plaintiffs have shown no evidence that they own, exclusively license, and/or have registered. The

6 *Polar Bear, Frank Music*, and *Jarvis* cases (Motion at 8-9) only show that there might be some

7 potential damage theories if Plaintiffs learn through the requested discovery some facts that could

8 establish a basis for a copyright liability claim. Plaintiffs citing of these three cases is yet another

9 example of their impermissible attempt to put the "discovery cart" before "claim horse."

### E. Defendants Have Reasonably Permitted Additional Discovery In This Case.

Plaintiffs assert the premise that "[a]pparently, no responsible deed goes unpunished." Motion at 7:25. That premise is applicable here—but not to Plaintiffs' pleading practices. Defendants have permitted Plaintiffs to conduct "foundational discovery" on the Siebel software line, even though Plaintiffs have not: (a) asserted any copyright claims in the case concerning the Siebel product line; (b) asserted any Siebel copyright registrations or even proven that they own or exclusively license any such copyrights; or (c) produced any of their own Siebel-related documents. One reason Defendants agreed to provide foundational discovery on Siebel is because—unlike the HRE Products which Defendants never serviced—TN actually provided service and earned revenues related to Siebel software. Even though Defendants reserved their right to oppose any attempt by Plaintiffs to amend their pleadings to add claims regarding the Siebel software, Defendants still agreed to assume the substantial burden to produce further documents, information, and testimony regarding TN's Siebel service offering. However,

---

[5] Plaintiffs attach and discuss in their Motion certain of Defendants' documents related to the HRE Products (specifically Exhibits D through F) and make the extremely misleading suggestion that Defendants provided service for or otherwise derived revenue and profits from servicing the HRE Products. Motion at 3. That is not true. While potential customers using the HRE Products were a part of a much larger potential customer base targeted by SAP's Safe Passage marketing program, SAP simply offered financial incentives to those potential SAP customers help persuade them to switch over to SAP by replacing their HRE Products with SAP's software. Defendants never provided service on the HRE Products. *See* Ziemen Decl., ¶ 2; Nelson Decl., ¶ 2; Van Wissen Decl., ¶ 2. Moreover, Exhibits A through C do not even mention the HRE Products and have no relevance whatsoever regarding them. Exhibits G, H and J are simply Defendants' objections and responses to Plaintiffs' written discovery requests.

proving the axiom that "no responsible deed goes unpunished," Defendants' compromise was met by Plaintiffs' demands for even more discovery regarding Siebel and the HRE Products.

This Court has set reasonable limits and timeframes on the discovery in this case in an effort to keep the case on track for the current trial setting of February 2010. And, throughout this litigation, Defendants have strived to work together with Plaintiffs to keep this case on track by developing reasonable discovery parameters that have still resulted in Defendants' producing an extraordinary amount of documents, data, information, and testimony as efficiently as possible. Defendants' cooperation with Plaintiffs regarding the Siebel issue is part of those efforts. And, Defendants' refusal to provide further discovery regarding the HRE Products is also part of those efforts to keep this case on track. There is a staggering amount of available data related to the claims that are already in this case, and much of it has still not been reviewed and produced. Defendants' willingness to provide discovery on Siebel products is evidence that Defendants have taken a reasonable approach to discovery. Plaintiffs' request for a "fishing expedition" related to the HRE Products as presented in their Motion is further evidence that Plaintiffs' approach is unreasonable.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel Production of Documents, Answers to Interrogatories, and Rule 30(b)(6) Testimony Related to Hyperion, Retek, and EBS Products.

Dated: January 23, 2009          JONES DAY

By: /s/ Scott W. Cowan
    Scott W. Cowan

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.