BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>        Plaintiffs,<br>    v.<br><br>SAP AG, *et al.*,<br><br>        Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS**<br><br><br>Date: February 10, 2009<br>Time: 2 p.m.<br>Place: Courtroom E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF ISSUE TO BE DECIDED ................................................... 3

III.    BACKGROUND .............................................................................................. 3

        A.      Defendants Sought And Oracle Properly Objected To The Irrelevant
                Partner Discovery ................................................................................. 3

        B.      Defendants' First Motion To Compel Irrelevant Partner Discovery ..... 4

        C.      Nothing Has Changed Since The First Motion To Compel To Justify
                Partner Discovery ................................................................................. 4

                1.      The Court's Guidance During The August 28, 2008 Discovery
                        Conference Confirmed The Lack Of Relevance ......................... 5

                2.      Oracle's Subpoena To CedarCrestone Concerning The Sale Of
                        TomorrowNow Did Not Open The Door For Defendants' Broad
                        Partner Discovery ..................................................................... 5

                3.      Defendants' Current Motion Is Even Broader Than The First ................. 6

IV.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL
        IRRELEVANT PARTNER DISCOVERY FOR THE SECOND, AND FINAL,
        TIME ............................................................................................................... 7

        A.      The Relevant Discovery Standard ......................................................... 7

        B.      Neither CedarCrestone Or Any Other Oracle Partners Are Relevant Here .......... 8

        C.      Oracle Has Made A Reasonable Production ....................................... 11

                1.      Partner Discovery Is Not Relevant To A Reasonable Royalty
                        Analysis .................................................................................. 11

                2.      Partner Discovery Is Not Relevant To Show Causation Of
                        Damages .................................................................................. 15

        D.      Any Relevance Is Far Outweighed By The Burden ............................ 17

V.      CONCLUSION .............................................................................................. 19

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Berkla v. Corel Corp.*
66 F. Supp. 2d 1129 (E.D. Cal. 1999) .................................................................... 12

*Bruce v. Weekly World News, Inc.*
310 F.3d 25 (1st Cir. 2002) ..................................................................................... 12

*Capitol Records, Inc. v. Naxos of America, Inc.*
372 F.3d 471 (2d Cir. 2004) .................................................................................... 17

*Country Road Music, Inc. v. MP3.com*
279 F. Supp. 2d 325 (S.D.N.Y. 2003) ..................................................................... 12

*Eales v. Envtl. Lifestyles, Inc.*
958 F.2d 876 (9th Cir. 1992) ............................................................................ 14, 15

*Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*
103 F.3d 1007 (D.C. Cir. 1997) ........................................................................ 11, 16

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*
318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................. 12, 13, 14

*In re Fontaine*
402 F. Supp. 1219 (E.D.N.Y. 1975) ........................................................................... 7

*Mackie v. Rieser*
296 F.3d 909 (9th Cir. 2002) ................................................................................... 12

*Nugget Hydroelectric v. PG&E*
981 F.2d 429 (9th Cir. 1992) ................................................................................... 11

*Novell, Inc. v. Weird Stuff, Inc.*
0094 WL 16458729, n. 15 & 17 (N.D. Cal. 1993) .................................................. 17

*Paramount Pictures Corp. v. Carol Publishing Group*
11 F. Supp. 2d 329 (S.D.N.Y. 1998) ....................................................................... 17

*Telecom Technical Servs. Inc. v. Rolm Co.*
388 F.3d 820 (11th Cir. 2004) ................................................................................. 16

*United States v. King Features Entm't, Inc.*
843 F.2d 394 (9th Cir. 1988) ............................................................................ 14, 15

A/72826005.2/2021039-0000324170      ii      Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

**STATUTES**

17 U.S.C. § 504(a) ................................................................................................ 16

17 U.S.C. § 504(b) ................................................................................................ 16

Fed. R. Civ. P. 26(b) ............................................................................................. 7

# I.    INTRODUCTION

This case is about Oracle's largest competitor – SAP – using its subsidiaries to illegally siphon customers from Oracle and convert them to SAP's software platform.  To accomplish this scheme, SAP sold Oracle customers interim support for that customer's current Oracle software, until the customer might be persuaded to migrate over to SAP's software platform.  SAP's wholly-owned subsidiary, TomorrowNow ("SAP TN"), provided that interim support, and the Defendants were all aware that SAP TN's support model relied on massive copyright infringement and computer fraud.  The only type of third party support vendor with any relevance to the claims and defenses here are those independent companies with business models like SAP TN.  Even though they do not serve SAP, those companies do compete on some level with Oracle to support customers.  Oracle has agreed to provide discovery related to those companies.

Dissatisfied with that relevant scope, Defendants have sought to expand their discovery into Oracle's Alliance and Channels program, referred to as Oracle's "Partner Network."  Consistent with industry practice, Oracle enters into agreements with certain third party companies ("Partners"[1]) under which, in exchange for payment of fees, Oracle licenses the Partner the right to sublicense certain of Oracle's software programs, and to provide a limited level of support, and/or consulting, implementation, integration and customization services related to Oracle programs.

Defendants seek discovery into these relationships based on the false premise that Oracle allows Partners to engage in the same kind of infringing activity in which Defendants have engaged.  While it is true that certain of Oracle's Partners provide limited support services to their customers, Partner-provided support is fundamentally different from the infringing services offered by Defendants.  Thus, the single thread of similarity is not sufficient to justify

---

[1]    In the software industry, the term "Partner" is used as a term of art to refer to these contractual relationships.  The parties to the agreements are typically not "Partners" in the legal sense of the word.

A/72826005.2/2021039-0000324170                    1                    Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

1    the burden of opening this entire new vein of discovery.

2            Oracle contracts with those Partners for the benefit of Oracle, the Partner, and the

3    customer.  The services they provide are subject to a license agreement with Oracle, rather than

4    in competition with Oracle.  These Partners are not attempting to convert the customer to a

5    competing software platform, and their support models do not involve, as SAP TN's did, daily

6    wholesale copying and cross-use of Oracle's application software and support materials.  Indeed,

7    Oracle's Partner agreements specifically prohibit this and the fees paid do not account for this

8    activity, which is the very activity that gives rise to Oracle's claims against Defendants here.

9            Defendants are fully aware of these differences.  SAP itself is part of Oracle's

10   Partner program, under which SAP is permitted to sublicense Oracle's database program to

11   SAP's customers.  SAP omits this fact, because the services permitted by Oracle under that

12   agreement (and all other Partner agreements) and the conduct engaged in by Defendants are, of

13   course, vastly different.  Nevertheless, this motion seeks to broaden the proper scope of third

14   party support discovery well beyond what is reasonable or appropriate given the slim reed of

15   similarity between SAP TN and any Oracle Partner.

16           A year ago, recognizing the vast amount of genuinely relevant discovery needed

17   and the waste and burden of discovery into such obviously dissimilar contractual arrangements,

18   Judge Legge denied this same discovery, ruling that Partner discovery was "tangential at best"

19   and requiring Defendants to make a "later showing of relevance and appropriateness" if they

20   wanted to revive their motion.  This Court has also twice weighed in on the relevance of Partner

21   discovery, stating first: "I am dubious about whether it's relevant…. it does seem like a

22   completely different thing.  And that the relevance would be -- if there is any -- would be

23   outweighed by the burden[]," (August 28, 2008 Discovery Conference at 61:19-62:2) and then:

24   "Oracle can choose to have partners that it authorizes to use its IP; and that's completely

25   different from somebody ripping it off" (January 8, 2009 Discovery Conference at 54:24-55:2).

26           Despite Judge Legge's ruling and this Court's statements, Defendants' renewed

27   motion seeks discovery that, in many ways, is even broader than what was originally requested

28   and denied.  Defendants request not only broad document discovery regarding one Partner,

CedarCrestone, purportedly as a set up to get more Partner discovery, but also a 30(b)(6) deposition concerning **all** of Oracle's Partners and Partner arrangements. As a software provider with its own broad network of Partners, SAP is fully aware of just how burdensome this request is. In support of this request, Defendants have abandoned one argument that they previously made, rehashed another, and then tacked on additional arguments that this discovery is relevant to a reasonable royalty analysis and is not burdensome. Defendants' arguments are wrong on the law and the facts. Each fails for the same reasons this discovery was denied in February of 2008 – in a case where so much important information needs to be amassed, the minimal relevance of the requested Partner discovery does not justify the burden.

In short, as previously held and as this Court also concluded during the August 28, 2008 Discovery Conference: "[P]artners with Oracle don't seem… significantly relevant to open it up." Defendants' arguments do not – and cannot – address that fundamental problem. Accordingly, the Court should again deny Defendants' at-best tangential Partner discovery.

## II.      STATEMENT OF ISSUE TO BE DECIDED

Whether Defendants' at-best tangentially relevant and demonstrably burdensome discovery requests concerning Oracle's Partners should again be denied.

## III.      BACKGROUND

### A.      Defendants Sought And Oracle Properly Objected To The Irrelevant Partner Discovery

In its first set of discovery requests to Oracle, Defendants sought detailed information relating to "any" third-party service providers for Oracle software. *See, e.g.,* Declaration of Jason McDonell in support of Motion to Compel ("McDonell Decl."), Ex. 2, Request Nos. 32, 33 & 39-40. Defendants took the position that these requests included Oracle's Partners, like CedarCrestone. *See* Declaration of Zachary J. Alinder in support of Oracle's Opposition to Motion to Compel ("Alinder Decl."), filed concurrently with this Opposition, ¶2. Oracle disagreed, and in response to Defendants' overbroad discovery requests, Oracle properly objected and limited its responses to independent third party support providers, like SAP TN. *See id.*; *see also* McDonell Decl., Ex. 4, Response No. 9. Following several weeks of meet and

confer discussion, Defendants agreed to Oracle could limit certain discovery responses in this

manner (confirmed in December 12, 2007 and January 4, 2008 meet and confer correspondence),

only to reverse course on January 10, 2008 and demand that Oracle identify and produce

information about Oracle's Partners as well. *See* Alinder Decl., ¶2.

### B. Defendants' First Motion To Compel Irrelevant Partner Discovery

Defendants first moved to compel this Partner discovery before Judge Legge on

January 28, 2008. *See id.*, Ex. 1. Defendants' two principal arguments in that motion were that

discovery concerning Partners constituted relevant "parol evidence" and was "relevant to the

issue of damages." *Id*. at 4-6. Defendants dropped the "parol evidence" argument from the

current motion, but have recycled their damages relevance argument. *See* Defendants' Motion to

Compel Discovery Concerning Third Party Support Provided By Oracle's Partners ("Motion to

Compel") at 8-11. As Oracle argued before in its prior Opposition, none of Defendants'

arguments withstand scrutiny. *See* Alinder Decl., Ex. 2 at 4-8.

Judge Legge denied Defendants' discovery related to Oracle's Partners, ruling on

February 25, 2008 that this discovery was "extensive," "detailed," and "tangential at best."

McDonell Decl., Ex. 11 at 7:3-5. Judge Legge explained:

> The downloading in this case [is] done either by the
> customers themselves or by TN as the support company
> representing those customers. What is the relevance of
> Oracle's relationships with <u>other</u> third party support[?].
> That information does not appear to be directly or presently
> relevant. Defendant argues that it will have something to
> do with damages…. However, such extensive third party
> discovery does not now appear to be justified by those
> narrow potential arguments.

*Id*. at 5-11 (emphasis in original). While Judge Legge denied Defendants' Partner discovery

without prejudice, that denial came with a requirement that Defendants wait "until [they could

make] a later showing of relevance and appropriateness." *Id*. at 7:15-16.

### C. Nothing Has Changed Since The First Motion To Compel To Justify Partner Discovery

Since Defendants lost that motion to compel, nothing has changed to make

Partner discovery any more relevant – or any less burdensome.

**1.** **The Court's Guidance During The August 28, 2008 Discovery Conference Confirmed The Lack Of Relevance**

Defendants re-tested the waters on this irrelevant discovery during the August 28, 2008 Discovery Conference. The Court responded: "…I would tend to think that partners with Oracle…don't seem significantly relevant to open it up [to discovery]…if they are Oracle partners, by definition, they are giving them permission to do things and whereas, the ones that are in a similar position to TomorrowNow seem to be [relevant]." Alinder Decl., Ex. 3 at 60:19-24. Despite that guidance, Defendants still made sporadic attempts to ask Oracle's 30(b)(6) witnesses about Oracle's Partner programs. *See, e.g.,* McDonell Decl., Exs. 6 & 10.

**2.** **Oracle's Subpoena To CedarCrestone Concerning The Sale Of TomorrowNow Did Not Open The Door For Defendants' Broad Partner Discovery**

Oracle served CedarCrestone with a subpoena *duces tecum* on October 31, 2008 ("the subpoena" and "Oracle's subpoena"). *See* McDonell Decl., Ex. 1. This was one of several subpoenas served on the companies Defendants had identified as having received information from them in connection with the potential purchase of SAP TN. *See* Alinder Decl., ¶5. Oracle intended the scope of the subpoena to be limited to (i) CedarCrestone's consideration of investment in, and possible acquisition of, TomorrowNow, including due diligence documents, communications concerning such due diligence documents, and (ii) any representations that were made in connection with negotiations between Defendants and CedarCrestone, particularly relating to any liability issues. *See id.*; *see also* Declaration of Jennifer Gloss in support of Oracle's Opposition to Motion to Compel ("Gloss Decl."), filed concurrently with this Opposition, ¶2. Oracle mistakenly included in that subpoena other topics relating to the provision of software support for Oracle products by CedarCrestone. *See* Alinder Decl., ¶5. Even so, that subpoena did not seek "Partner" information from CedarCrestone. *See id*. When queried by CedarCrestone and Defendants about the scope of the subpoena, Oracle explained the mistake and indicated that it had intended the subpoena to cover the two acquisition-related topics described above. *See id.*; *see also* Gloss Decl., ¶2. Defendants then served CedarCrestone

with a subpoena *duces tecum* encompassing the Partner discovery topics, which are currently at issue. *See* McDonell Decl., Ex. 14.

The Court confirmed during the November 25, 2008 Discovery Conference that Oracle's intended subpoena regarding CedarCrestone as a potential buyer of SAP TN did not open the door for Defendants' broad Partner discovery. *See* McDonell Decl., Ex. 13 at 66:22-24 ("If [the subpoena] had to do with a partnership, that's one thing. If they didn't, then it's another. If they didn't, it doesn't open the door."). To make its intentions with regard to the scope of the subpoena absolutely clear, Oracle withdrew the original subpoena. *See id.*, ¶15. On January 9th, Oracle sent CedarCrestone's counsel a corrected subpoena limited to the acquisition topics and requested that Cedar Crestone accept service of the corrected subpoena. *See* Alinder Decl., ¶5. In addition, Oracle timely served written objections to Defendants' CedarCrestone subpoena, maintaining that the Partner discovery is not relevant to any of the claims or defenses in this action. *See* McDonell Decl., Ex. 16. CedarCrestone also objected to Defendants' subpoena, stressing the enormity of the documents being sought and the burden of production. *See id.*, Ex. 15. In sum, Oracle's efforts to obtain relevant discovery from CedarCrestone as a potential purchaser of SAP TN do not provide a basis for Defendants to obtain irrelevant discovery from Oracle related to CedarCrestone's Partner arrangements with Oracle let alone all its service arrangements and histories with any licensed Oracle customers.

### 3. Defendants' Current Motion Is Even Broader Than The First

Defendants fail to make a sufficient new showing of relevance or appropriate burden to revive their old motion, let alone support the additional discovery sought here. Defendants' current motion to compel seeks not only broad-ranging document discovery from Oracle related to its Partner arrangements with CedarCrestone and their customers, but also an open-ended 30(b)(6) deposition concerning <u>all</u> of Oracle's Partner programs.[2] Defendants'

---

[2] Defendants' motion also reserves the right to seek even more Partner-related discovery from Oracle. Motion to Compel at 4:1-2.

claims that the requested discovery would be of minimal burden are belied by the extensive

discovery they've proposed – discovery that would require Oracle witnesses to testify concerning

Partner programs related to over 20,000 Oracle Partners throughout the world, dozens of Oracle

applications, middleware and database products, and involving at least 19 different industries.

*See* Declaration of Colleen A. Kelly in Support of Oracle's Opposition to Motion to Compel

("Kelly Decl."), filed concurrently with this Opposition, ¶2.  The connection between SAP TN

and Oracle's Partners remains too tenuous and too burdensome to allow the requested discovery

to proceed.

## IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL IRRELEVANT PARTNER DISCOVERY FOR THE SECOND, AND FINAL, TIME

### A.   The Relevant Discovery Standard

The discovery standard "is not so liberal as to allow a party 'to roam in shadow

zones of relevancy and to explore matter which does not presently appear germane….'"  *In re*

*Fontaine,* 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (citations omitted).  Indeed, the Federal

Rules make it clear that discovery should be denied if it is not relevant or if "the burden or

expense of the proposed discovery outweighs its likely benefit, considering the needs of the case,

the amount in controversy, the parties' resources, the importance of the issues at stake in the

action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P.

26(b)(2)(C)(iii).  Such limitations give life to Rule 26(b)'s requirement that discovery be

"reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

26(b)(1).  Indeed, at Defendants' urging and over Oracle's objections, these principles have

guided this Court's restriction on other discovery matters, including, for example, the number of

custodians whose files are to be produced and the hours of allowable deposition time.  *See, e.g.,*

July 3, 2008 Order Regarding Scope of Discovery of Electronically Stored Information,

Including Limits On Numbers Of Custodians To Be Searched And Sampling, Docket No. 107, at

1:22-4:17.

Further, this is Defendants' second bite at the apple.  The prior ruling concerning

Partner discovery required Defendants to make an additional showing of "relevance" and

"appropriateness" to revive this motion. McDonell Decl., Ex. 11 at 7:15-16. Defendants fail to do so.

**B.    Neither CedarCrestone Or Any Other Oracle Partners Are Relevant Here**

Based on its last count, Oracle has more than twenty thousand business "Partners" with whom it has contractual arrangements to, *e.g.*, distribute Oracle products. *See* Kelly Decl., ¶2. These Partner arrangements cover a wide variety of activities, including distributing Oracle's software programs, providing limited (i.e., "first" and/or "second" level) support to those customers to whom a Partner distributes the programs, providing consulting, integration, and implementation services, and providing training or cross-marketing for Oracle database and applications products. *See id.*

Oracle contracts with only a small percentage of its Partners to provide support services on PeopleSoft, J.D. Edwards or Siebel applications – and those are all limited to overseas arrangements where, for example, Oracle acquired a company where such arrangements were already in place, or where Oracle has difficulty providing service in the local language of the region. *See id.*, ¶3. These support Partners are only licensed to handle first level support and, in some cases, second level support. *See id.* First level support typically involves responding to telephone, email or web-based requests for support, incident tracking and resolving customer issues. *See id.* Second level support may include the same services provided in first level support, but could involve more complex issues, and might also involve the Partner helping the customer create and manage an incident request that is sent to Oracle's support team seeking Oracle's assistance. *See id.* In that instance, Oracle is providing much of the support, with the Partner acting as the conduit for communication purposes. *See id.* For purposes of supporting these customers, these Partners are not licensed by Oracle to use its intellectual property to create patches, fixes, or updates. *See id.*, ¶3. None of that is like SAP TN.[3]

---

[3]    Because SAP provides first level support for Oracle's database program to certain of SAP's customers who operate SAP's applications on a version of the Oracle database licensed by SAP, SAP should certainly understand the difference between the services Oracle's Partners are

(Footnote Continued on Next Page.)

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

Indeed, Oracle is not aware of any license with any Partner that would allow that Partner to copy Oracle's applications software or its support materials in order to create their own fixes, patches or updates for customers. *See id.*, ¶4. Nor has Oracle licensed any Partner to provide support for any de-supported release of PeopleSoft, J.D. Edwards or Siebel applications. *See id.*, ¶5. Thus, even Oracle's overseas support Partners are nothing like SAP TN.

CedarCrestone is an important and decorated Partner of Oracle's, but it is not licensed to provide support for PeopleSoft, J.D. Edwards or Siebel applications in the United States either. *See* Kelly Decl., ¶5 ("Oracle has not licensed support Partners for PeopleSoft, J.D. Edwards or Siebel applications in the United States -- including Cedar Crestone."). "CedarCrestone is the largest, dedicated PeopleSoft Enterprise Systems Integrator….With 24 PeopleSoft Enterprise applications in production, CedarCrestone invests heavily in the vision of Oracle." Alinder Decl., ¶6 & Ex. 4. By its own description, CedarCrestone "provid[es] consulting, technology, and managed services for full life-cycle solutions designed to optimize Oracle applications." *Id.*, ¶7 & Ex. 5.

Far from competing against Oracle or encouraging migration to SAP software applications, CedarCrestone helps drive new Oracle applications sales. *See* Declaration of Tyler Prince in Support of Oracle's Opposition to Motion to Compel ("Prince Decl."), filed concurrently with this Opposition, ¶4. Indeed, in 2005, CedarCrestone won Oracle's Titan Award for being the "PeopleSoft Partner of the Year." *See id.* Oracle awarded this honor in recognition of CedarCrestone exceeding their PeopleSoft co-selling targets, and for driving numerous marketing campaigns and initiatives with PeopleSoft. *See id.* Similarly, in 2007, CedarCrestone earned honorable mention recognition for Oracle's "Applications Momentum" Titan Award, given to a Partner with a proven track record in selling and/or influencing the sales of Oracle applications, as well increasing investments in training and marketing. *See id.* Thus,

(Footnote Continued from Previous Page.)

licensed to provide and the infringing activity in which Defendants were engaged. *See* Kelly Decl., ¶2.

9

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

CedarCrestone not only pays Oracle a licensing fee, but helps drive new Oracle applications sales – the exact opposite of SAP TN.

Critically, and like all other Oracle Partners, CedarCrestone has no license with Oracle to do any of the infringing acts SAP TN did to support its customers here. *See id.*, ¶¶2-3; *see also* Kelly Decl., ¶¶2-5. For example, CedarCrestone's Partner agreement states that they may not:

- Remove or modify any program markings or any notice of Oracle's or its licensors proprietary rights;

- Make the programs or materials resulting from the services available in any manner to any third party for use in the third party's business operations (unless such access is expressly permitted for the specific program license or materials from the services you have acquired);

- Cause or permit reverse engineering (unless required by law for interoperability), disassembly, decompilation of the programs;

- Disclose results of any program benchmark tests without Oracle's prior written consent;

- Use the Oracle property in a manner that misrepresents your relationship with Oracle or is otherwise misleading or that reflects negatively on Oracle;

- Use or duplicate the Oracle property provided to you by Oracle for any purpose other than as specified in the Oracle PartnerNetwork policies or in this agreement or make the Oracle property available to unauthorized third parties;

- Use the Oracle property for your own internal business operations, or use the Oracle property or make the Oracle property available in any manner to any third party for use in the third party's business operations or for any other commercial or production use; or,

- Use third party programs except in conjunction with the Oracle owned programs.

*See* Prince Decl., ¶2. Thus, SAP TN's methods of support are specifically prohibited by Oracle's Partner agreement, including CedarCrestone's. *See, e.g.*, Oracle's Third Amended Complaint ("TAC"), Docket No. 182, ¶¶ 10, 16-19, 115-118, 126-128 (describing how SAP TN's support for its customers was dependent on near continuous copyright infringement and computer fraud); *see also* Prince Decl., ¶¶2-3; *see also* Howard Decl. in Support of Oracle's Motion to Compel

1  Discovery Related to Hyperion, Retek, and EBS Products ("Howard Decl."), Docket No. 234,

2  ¶¶6-8.

3  SAP TN plainly is not an Oracle Partner in any sense of the word. SAP TN is a

4  third party support provider, <u>independent</u> of Oracle, and a wholly-owned subsidiary of Oracle's

5  primary competitor in the business applications software market, SAP. *See* TAC, ¶41. Its entire

6  purpose is to undermine Oracle: its marketing is anti-Oracle; its purpose, as SAP's tool, was "to

7  leverage service as a competitive weapon" against Oracle; its discounted (or free) service pricing

8  was designed to take service revenue and ultimately application sales business away from

9  Oracle. *See* Howard Decl., Exs. E-F & ¶¶6-8; *see* also TAC, ¶¶27 & 29. Defendants do not –

10  and cannot – demonstrate how Oracle's policies towards third party competitors, like SAP TN,

11  are remotely analogous to its contractual arrangements with its non-competitor Partners.

12  **C.    Oracle Has Made A Reasonable Production**

13  Though Oracle's policies towards other third party competitors are also tangential

14  to what Defendants did here, Oracle nonetheless agreed to produce such information. *See*

15  Alinder Decl., ¶2. That production satisfies any arguably proper scope of Defendants' requests.

16  *See, e.g., Nugget Hydroelectric v. PG&E*, 981 F.2d 429, 438-39 (9th Cir. 1992) (upholding

17  denial of broad third party contract discovery because only a fraction would be relevant to the

18  claim). Defendants do not and cannot justify more.

19  **1.    Partner Discovery Is Not Relevant To A Reasonable
            Royalty Analysis**

20

21  Defendants' first relevance argument is that their Partner discovery "*may bear on*

22  the calculation of damages…specifically, a reasonable royalty…." Motion to Compel at 8:15-16

23  (emphasis supplied). Unsubstantiated speculation is no basis for intrusive discovery; even more

24  so where, as here, Oracle's Partners are so demonstrably different from SAP TN that they could

25  not possibly serve as the basis for a reasonable royalty comparison. *See* Kelly Decl., ¶¶2-5; *see*

26  *also Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012-13

27  (D.C. Cir. 1997) (A party may not "explore matter which does not presently appear germane on

28  the theory that it might conceivably become so.").

1        Moreover, Defendants do not, and cannot, show that their requested Partner

2   discovery could even yield information that establishes the license value of what they stole under

3   the tests for such damages.  The CedarCrestone agreements Defendants seek are irrelevant

4   because CedarCrestone's business model, like other Partners, is nothing like SAP TN's.  But,

5   even if these Partners were similar to SAP TN, the categories of documents Defendants seek –

6   (1) the nature of services provided by CedarCrestone, (2) "customer profiles" identified as

7   candidates for support from CedarCrestone, (3) identification of customers receiving support

8   from CedarCrestone – <u>do not even relate to calculation of a reasonable royalty</u>.  *See* Motion to

9   Compel at 2:13-21.

10        To arrive at a reasonable royalty, the Ninth Circuit endorses a "hypothetical

11   approach:  what a willing buyer would have been reasonably required to pay to a willing seller

12   for [the owner's] work." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (quoting *Sid &*

13   *Monty Krofft Television Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977))

14   (internal citations omitted).  As part of this analysis, courts create a pre-use hypothetical

15   negotiation between two similarly situated parties for the use of the infringed work.  A plaintiff

16   need not prove either profit to the infringer or its own quantifiable loss to be entitled to these

17   damages.  *See Berkla v. Corel Corp.,* 66 F. Supp. 2d 1129, 1146 (E.D. Cal. 1999).  Courts

18   consider a number of factors aimed at determining the reasonable license fee.  S*ee, e.g., Georgia-*

19   *Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (drawing from

20   "leading cases" "[a] comprehensive list of evidentiary facts relevant, in general, to the

21   determination of the amount of a reasonable royalty for a patent license" including whether the

22   parties are competitors); *see also Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 29-30 (1st Cir.

23   2002) (emphasizing "proof of industry practice" to estimate damages).  While courts have found

24   benchmark licenses useful to determine a reasonable royalty in certain cases, they also "have

25   recognized the error of beginning with a benchmark license for a use different from that made by

26   the infringer." *Country Road Music, Inc. v. MP3.com*, 279 F. Supp. 2d 325, 331 (S.D.N.Y.

27   2003) (citing and quoting cases rejecting applicability of benchmark licenses involving

28   dissimilar (1) terms of use, (2) exclusivity, (3) breadth, and (4) nature of business).

Defendants do not – and cannot – begin to demonstrate that there is a single Oracle Partner agreement – CedarCrestone's or otherwise – that, in contravention of the customer license agreements, allows an Oracle Partner to use Oracle's intellectual property across Oracle's customer base to compete against Oracle at a discounted rate for the purposes of driving Oracle customers to competitive products. Because there isn't. *See* Kelly Decl., ¶¶3-5; *see also* Prince Decl., ¶¶2-3. Oracle's contractual arrangements with its non-competing Partners are, thus, far too dissimilar from any license the SAP Defendants would have to secure to be admissible as a benchmark in evaluating a reasonable royalty.

The *Georgia-Pacific* case is instructive. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The *Georgia-Pacific* court did not admit evidence regarding plaintiffs' financial arrangements with a third party as evidence of a reasonable royalty, because the "evidence [did] not significantly tend to indicate the amount of a reasonable royalty in the present situation." *Id*. at 1137. Similar to the differences between Oracle's Partners and SAP TN, the Court found that "the circumstances and arrangements between [the third party and plaintiff] were basically different from those that would be applicable to the negotiation of a reasonable royalty between two keen competitors like [plaintiff and defendant]." *Id*. The Court held that the "surface similarities" were outweighed by the dissimilarities and therefore the relevance of the third party evidence was "superficial, inconclusive and not persuasive." *Id*. at 1140.

So it should be here. The surface similarities between two companies, like Oracle's Partner CedarCrestone and SAP TN, which both provide some support for Oracle's software, are vastly outweighed by the dissimilarities, including that CedarCrestone's Partner agreement prohibits it from doing any of the infringing acts that SAP TN requires to support its customers. *See* Prince Decl., ¶¶2-3; *see also* Kelly Decl., ¶¶3-5. Indeed, SAP TN broadly leveraged Oracle's intellectual property across Oracle's customer base to compete directly against Oracle at discounted prices for the purpose of harming Oracle's service business and driving Oracle applications customers to switch to the products of Oracle's largest business applications software competitor. *See, e.g.,* TAC, ¶15-18; *see also* Howard Decl., ¶¶6-8. Simply

13

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

put, the royalty that would be reached between "keen competitors" like Oracle and SAP that would allow SAP's service subsidiary to use Oracle applications and service support intellectual property to aggressively compete against Oracle for applications customers and market share has nothing in common with any agreement Oracle has with any business Partner. *Georgia-Pacific*, 318 F. Supp. at 1137.

Defendants' case law does not support a different result. Most of Defendants' case citations are simply general recitations of the law regarding a reasonable royalty. *See* Motion to Compel at 8:26-9:11. The two cases they claim support the argument that their Partner discovery is relevant to a reasonable royalty calculation – *United States v. King Features Entm't, Inc.,* 843 F.2d 394 (9th Cir. 1988) and *Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 880 (9th Cir. 1992) – do not.

Defendants cite *King Features* as a case where the "Ninth Circuit has upheld royalty awards based on license agreement with third parties for a similar use." Motion to Compel at 9:11-14. That is both wrong and inapposite. First, it is wrong, because the Ninth Circuit did not uphold the award in *King Features* – it reversed the district court's damage award. *See King Features*, 843 F.2d at 400. The district court had concluded that the defendants' contract with the buyer was "prima facie evidence of what a willing buyer would have been reasonably required to pay a willing seller for the cartoons." *Id*. The Ninth Circuit reversed the award, finding that the district had not properly analyzed damages, and remanding "for a determination of [plaintiff's] actual damages, if any, from the copyright infringement." *Id.*

Putting that aside, the reversed district court award in *King Features* would at most stand for the unremarkable proposition that if there is a contract directly on point, it can be prima facie evidence of damages. *See King Features*, 843 F.2d 394 (9th Cir. 1988). Oracle does not dispute that proposition – only its application here. In *King Features*, the defendant licensed cartoons from the plaintiff, then negotiated a contract to deliver those cartoons to a buyer (which Defendants label as a "third party"), to whom the plaintiff also had tried licensing the same cartoons for the same use. *See id*. at 396. Under those circumstances, the contract could understandably be viewed as prima facie evidence of what the plaintiff would have

received under a similar contract. *Id.* at 400. In contrast, Oracle's licenses with its Partners do not contemplate any "similar use" to SAP TN's use of copyright infringement and computer fraud to compete against Oracle, as Defendants claim. Motion to Compel at 9:12; *see also* Prince Decl., ¶¶2-3; *see also* Kelly Decl., ¶¶3-5. *King Features* is at-best inapposite.

The holding in *Eales* also has no relevance to the facts here. The *Eales* Court held that a plaintiff's proven standard fee to license a copyrighted work may be used to establish a reasonable royalty. *See Eales,* 958 F.2d at 880. In *Eales*, the fair market value was "Eale's ordinary fee," a simple calculation of the plaintiff's fees per square foot multiplied by the square footage of the house in dispute. *Id.* at n.3. In contrast, there is no "ordinary" fee Oracle charges third party competitors like SAP TN who want to license and leverage Oracle's intellectual property to drive a wedge between Oracle and its customer base. *See* Kelly Decl., ¶¶3-5. No amount of discovery of Oracle's Partners would help establish such a fee.

In sum, the law and the facts do not support ordering any Partner-related discovery from Oracle based on the relevance of such discovery to establishing the value of licensing what Oracle's competitors stole for the purpose of decimating Oracle's customer base and halting any traction gained from Oracle's acquisitions. Defendants again do not, and cannot, so justify their request.

### 2. Partner Discovery Is Not Relevant To Show Causation Of Damages

Defendants' next argument – recycled from their motion a year ago – is that Oracle's Partner relationships are relevant to causation of damages because customers may have gone to Oracle's Partners for service rather than SAP TN, so Defendants didn't cause Oracle's harm. *See* Motion to Compel at 10 ("Oracle's customer attrition…may have been inevitable."). Defendants presented this same argument to Judge Legge a year ago, and he rejected it. *See* Alinder Decl., Ex. 1 at 6; *see also* McDonell Decl., Ex. 11 at 7:15-16. When Defendants previewed this argument at the last discovery conference the Court rightly deemed it "far[] fetched." *See* Alinder Decl., Ex. 6 at 54:22.

Oracle has already explained how the independent, highly discounted competing

15

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

third party service by SAP TN differed from the limited service provided by Oracle's licensed service Partners. *See* Kelly Decl., ¶¶2-6.[4]  Moreover, Defendants only speculate as to whether any of their customers would have chosen a different third party service provider if SAP TN had not been able to provide their illegal cut-rate support.  Defendants' speculation is insufficient to support the broad and irrelevant Partner discovery they propose here.  *See Food Lion*, 103 F.3d at 1012-13 (party may not "explore matter which does not presently appear germane on the theory that it might conceivably become so.").  The existence and scope of services of true independent third party alternatives to SAP TN and what impact on customer choices that availability might have made can only be tested by asking customers or those third parties; those subjects simply will not be illuminated by discovery into Oracle's Partner programs.

In addition, Defendants cite no legal support for the argument – and Oracle is aware of none – that Defendants can deduct what they speculate could be "inevitable" losses from the calculation of copyright damages.  Under 17 U.S.C. § 504(a), a party suing for copyright infringement may elect either statutory damages, § 504(a)(2), or "the copyright owner's actual damages and any additional profits of the infringer."  17 U.S.C. § 504(a)(1).  Here, Oracle has claimed actual damages and the infringer's profits.  Nowhere in § 504(b) is an infringer presented with the opportunity to reduce damages by a showing of the copyright holder's inevitable losses.  Indeed, in *Telecom Technical Servs. Inc. v. Rolm Co.*, 388 F.3d 820 (11th Cir. 2004), the Court rejected a similar argument to reduce damages, holding that an award of damages based on infringer's profits was unaffected by a showing of the copyright holder's sales or losses.  *See id.* at 830.  Defendants' speculation that customers would have left Oracle regardless of their unlawful acts is not a defense to any of the claims here.  Even if it were a defense, the subject has no relevance to Oracle Partners, who pay Oracle for the right to assist in

---

[4]     Further, Defendants' citation to an Oracle document, discussing renewal rates being similar to historical rates despite the threat from third party support providers undermines Defendants' claims that Partner availability may have driven customers away from Oracle, but for SAP TN.  *See* Motion to Compel at 10:11-23

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

1   providing limited services to shared customers.[5]

2       **D.      Any Relevance Is Far Outweighed By The Burden**

3           Defendants' final argument is that the "narrowly tailored" requested Partner

4   discovery imposes a "minimal burden" on Oracle.  Motion to Compel at 11.  Neither claim is

5   remotely true.  Through this motion, Defendants attempt to open a vast, new vein of discovery

6   the response to which will be incredibly burdensome.  SAP has a substantial Partner network and

7   must well understand the undue burden their requests impose.  *See* Alinder Decl., ¶9 & Ex. 7.

8           First, Defendants' Partner discovery includes broad-ranging document requests

9   related to what will likely be the first of many Partners that Defendants are interested in,

10  CedarCrestone.  Defendants seek documents concerning:

11      - All Oracle's agreements with CedarCrestone, including, but not limited to,
12        documents sufficient to show what, if any, consideration CedarCrestone
          pays to Oracle for the right to provide support services to Oracle enterprise
13        software customers.

14      - The nature of the services provided by CedarCrestone and the terms and
          conditions of CedarCrestone's access to and use of Oracle Software and
15        Support Materials.

16      - Any customer profile identified by Oracle that is a candidate to receive
          any support services from CedarCrestone, even if those services are in no
17        way analogous to those SAP TN provides.

18      - Any Oracle customers receiving support services for Oracle enterprise
          software from CedarCrestone, again, without regard to the relevance of the
19        services or whether the customer was ever a SAP TN customer.

20  *See* Motion to Compel at 2:13-21.  CedarCrestone itself detailed the large volume of responsive

21  _____

22  [5]     Though some of Defendants' arguments hint otherwise, Defendants appear to have
23  abandoned their argument that Oracle's behavior toward other third party support providers
    could support an estoppel, abandonment or waiver defense.  That retreat is not surprising as
24  those arguments all fail as a matter of law.  *See, e.g., Paramount Pictures Corp. v. Carol
    Publishing Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) ("Extending the doctrine of estoppel
25  so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by
    law and pernicious as a matter of policy."); *see also Capitol Records, Inc. v. Naxos of America,
26  Inc.*, 372 F.3d 471, 484 (2d Cir. 2004) ("[F]ailure to pursue third-party infringers has regularly
    been rejected as a defense to copyright infringement or as an indication of abandonment.");
27  *Novell, Inc. v. Weird Stuff, Inc.*, 0094 WL 16458729, n. 15 & 17 (N.D. Cal. 1993) (holding
    acquiescence/estoppel theory as to third parties not a defense to copyright infringement).

28

                ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
                CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

material and the burden of its production when it objected to Defendants' subpoena requesting it. *See* McDonell Decl., Ex. 15 at 1 (objecting that Defendants' subpoena may require production of "many thousands, perhaps hundreds of thousands, of documents relating to CedarCrestone's provision of services to hundreds of clients over a seven year period."). That it would come from Oracle rather than Cedar Crestone doesn't make the production any less burdensome. Indeed, it could be more so, because the production has to be culled from the vast array of other Oracle Partner documents and from multiple potential custodians.

Second, Defendants seek a 30(b)(6) deposition on "the nature and scope" of **all** of Oracle's Partner programs for supporting **any** of Oracle's enterprise software without limitation. Motion to Compel at 2:22-23. Defendants make no attempt to tailor the scope of the requested 30(b)(6) deposition in any way. Indeed, Defendants describe the requested deposition as punitive in nature, due to Oracle's continued and proper objections to this irrelevant discovery. *Id.* at 11:26-12:1 ("In addition, <u>because Oracle has been unwilling to disclose the nature of its partner relations</u>, it should be required to make available a 30(b)(6) witness….") (emphasis supplied). Defendants' proposed deposition would cover 20,000 Oracle Partners providing services related to dozens of Oracle applications, middleware and database products, and involving at least 19 different industries. *See* Kelly Decl., ¶2. Not surprisingly, Oracle's Partners are spread across the globe, and programs and practices overseas vary from those in the U.S. *See id.*, ¶3. Defendants' unsupported assertion that preparing Oracle witnesses to speak comprehensively and knowledgeably on these vast (and irrelevant) program details "is not burdensome" and that the discovery requests "are narrowly tailored" ignores the obvious.

Simply put, the burden of Defendants' requests far outweighs the at-best tangential relevance of the requested Partner discovery. The parties already have more than enough work to do with regard to discovery that is actually relevant to this case, without having to deal with the Partner discovery sideshow that Defendants seek through this recycled motion.

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS

V.     CONCLUSION

      Based on the foregoing, Oracle respectfully requests that the Court deny Defendants' renewed motion to compel further Oracle Partner information.

DATED:  January 23, 2009                BINGHAM McCUTCHEN LLP

By: _____
          Zachary J. Alinder
          Attorneys for Plaintiffs
      Oracle USA, Inc., Oracle International
      Corporation, and Oracle EMEA Limited

19             Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY
CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS