BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOWARD (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br>SAP AG, *et al.*,<br>Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, ANSWERS TO INTERROGATORIES, AND RULE 30(b)(6) TESTIMONY RELATED TO HYPERION, RETEK, AND EBS PRODUCTS**<br><br>Date: February 10, 2009<br>Time: 2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | ARGUMENT | | | 3 |
| | A. | Fed. R. Civ. P. 26(b)(1) Permits Discovery of Matters Relevant to Both "Claims or Defenses" And "The Subject Matter of The Action." | | 3 |
| | B. | Defendants Fail to Meet Their Burden to Prove That The HRE Discovery is Irrelevant. | | 5 |
| | | 1. | The discovery relates to Oracle's claims and good cause otherwise exists to allow it. | 8 |
| | | 2. | Oracle need not "prove" its claims to get foundational discovery. | 10 |
| | | 3. | Defendants' "production" of HRE documents and witness "testimony" means nothing. | 11 |
| | C. | Defendants Do Not Address Oracle's Evidence That The HRE Claims Have Great Value. | | 12 |
| | D. | Defendants Submit No Evidence of Undue Burden. | | 12 |
| III. | CONCLUSION | | | 14 |

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Bank Melli Iran v. Pahlavi,*
    58 F.3d 1406 (9th Cir. 1995)......................................................................................... 7

*Caliper Techs. Corp. v. Molecular Devices Corp.,*
    213 F.R.D. 555 (N.D. Cal. 2003)................................................................................... 9

*Elvig v. Calvin Presbyterian Church,*
    375 F.3d 951 (9th Cir. 2004)......................................................................................... 3

*Fosselman v. Gibbs,*
    No. 06-0375 PJH, 2008 WL 745122 (N.D. Cal. March 18, 2008) ...................... 4, 5, 12, 13

*Gonzales v. Google, Inc.,*
    234 F.R.D. 674 (N.D. Cal. 2006)................................................................................ 4, 9

*Josephs v. Harris Corp.,*
    677 F.2d 985 (3d Cir. 1982).......................................................................................... 5

*Oleson v. Kmart Corp.,*
    175 F.R.D. 560 (D. Kan. 1997)..................................................................................... 5

*Richmond v. UPS Serv. Parts Logistics,*
    No. IP01-1412-C-K/H, 2002 WL 745588 (S.D. Ind. April 25, 2002) ............................ 3

*Sirota v. Penske Truck Leasing Corp.,*
    No. 05-03296 SI, 2006 WL 708910 (N.D. Cal. March 17, 2006) ................................. 4

*Stanley v. Safeskin Corp.,*
    No. 99CV454-BTM (LSP), 2001 WL 1870859 (S.D. Cal. July 11, 2001).................... 3

*Vardon Golf Co., Inc. v. BBMG Golf Ltd.,*
    156 F.R.D. 641 (N.D. Ill. 1994).................................................................................. 10

**STATUTES**

Fed. R. Civ. P. 26(b)(1)............................................................................................ 3, 4, 9, 10

**OTHER AUTHORITIES**

20 Charles Alan Wright & Mary Kay Kane, *Federal Practice and Procedure* § 86 ............ 4

Fed. R. Civ. P. 26 advisory committee's notes ................................................................. 3, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' Opposition to Oracle's Motion to Compel ("Opposition") fails to address key issues and concedes too much.

First, Defendants do not contest Oracle's evidence that the regular business model at TomorrowNow ("SAP TN") involved acquiring copies of Oracle software for general research purposes prior to announcing support on that software, and then cross-using the software to support multiple other customers. Instead, remarkably, Defendants submit sworn testimony that Defendants *did access and use the Hyperion, Retek, and eBusiness Suite products* (the "HRE products"). Those concessions alone justify the limited foundational discovery Oracle seeks.

Second, Defendants do not explain where they got that software or what they did with it in order to develop the detailed business plan related to each product. Instead, they rely on ambiguous, conclusory testimony from witnesses without demonstrated personal knowledge. These witnesses contradict the weight of evidence in the case, including the evidence submitted by Oracle in support of its Motion to Compel Discovery Related To HRE Products ("Motion") and new SAP testimony from the same day that Defendants filed their Opposition to this Motion. *See* Mot. at 2-4; Declaration of Geoffrey M. Howard in Support of Oracle's Motion to Compel ("Howard Decl.") ¶¶ 7-9, Ex. B-F; Declaration of Martha Jeong In Support of Oracle's Reply ("Jeong Decl.") Ex. C.

Third, Defendants do not comment on, or apparently dispute, certain of the relevance arguments Oracle set forth in its Motion.

Fourth, Defendants do not take serious issue with the viability of Oracle's damages argument. Throughout the meet and confer process, Defendants justified their discovery objections on their assertion that Oracle's HRE-related claims involved very little value. Now, Defendants say next to nothing about Oracle's reasons why the HRE-related allegations are of great value, relating both to independent and meritorious claims and to Oracle's original claims and punitive damages.

Finally, despite an argument ostensibly titled "burden," Defendants offer not one shred of

evidence that responding to Oracle's discovery would impose any undue burden. Their argument explains why: if they really did not offer support for these products, they can efficiently respond to the narrow foundational discovery sought by Oracle.

The arguments Defendants do raise only illustrate the propriety of the discovery Oracle seeks.

Defendants contend the discovery standard for relevance does not extend to matters outside the "claims and defenses," even though the rules (and Defendants' own motion to compel, on calendar the same day as this one) expressly say otherwise. Regardless, Oracle's discovery does relate to several claims and defenses. *See id.*

Defendants also say Oracle has not "proved" its claims about these products. This argument unfairly reverses the usual role of discovery, particularly where Oracle has submitted strong circumstantial evidence that, and Defendants now concede, they did access this software in order at least to prepare their detailed business plans.

Defendants also claim to have produced a vast body of documents that somewhere reference the HRE products. They argue that those documents, combined with their generous allowance of questions to unrelated witnesses about the HRE products, should absolve them of any actual response to this discovery. This argument contradicts the clear record set forth in Oracle's motion. Defendants have agreed to produce nothing. They have objected to this limited discovery *in its entirety*. It should come as no surprise, then, that the produced documents Defendants reference do not cover the subjects of Oracle's discovery, and the witnesses – which Oracle noticed for other purposes – knew nothing about Defendants' access to or use of the HRE products.

Last, Defendants contend that they unilaterally – and secretly – decided to withhold responsive documents when Oracle had the temerity, during meet and confer discussions, to ask for more foundational *Siebel* discovery than Defendants originally offered. Concerned about a "slippery slope" in the schedule, Defendants now reveal that they preserved the schedule by deciding to offer nothing at all on the admittedly relevant HRE subjects. Putting aside the impropriety of these actions, the argument fails for another reason: Defendants offer no

1  evidence or reason why the purely foundational discovery Oracle seeks here will impact the case
2  at all, even after Defendants' seven month (and counting) delay in providing it.

3  Perhaps Defendants, in this one instance, contrary to their regular business practice, acted
4  legally when they obtained and used this software. If so, and even if not, then Oracle may need
5  to seek nothing further than the few written responses and Rule 30(b)(6) depositions that it does
6  here. However, the record clearly justifies at least the foundational discovery Oracle requests.

## II. ARGUMENT

### A. Fed. R. Civ. P. 26(b)(1) Permits Discovery of Matters Relevant to Both "Claims or Defenses" And "The Subject Matter of The Action."

In their Opposition, Defendants take issue with Oracle's assertion that "Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions of any matter, not privileged, which is relevant to the subject matter of the pending action." Mot. at 6; Opp'n at 7. As Defendants point out in their Opposition, Rule 26(b)(1), as amended, now provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

But contrary to Defendants' assertion that Rule 26(b)(1) "only" provides for discovery relevant to a claim or defense (*see* Opp'n at 7), Rule 26(b)(1) still allows discovery "relevant to the subject matter involved in the action" upon a showing of "good cause." Fed. R. Civ. P. 26(b)(1). The "good cause" concept "is meant to be flexible." Fed. R. Civ. P. 26 advisory committee's notes (2000 amendment). It allows court oversight "if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 967-68 (9th Cir. 2004); *see also* Fed. R. Civ. P. 26 advisory committee's notes (2000 amendment) (noting that the amendments to the Rule in 2000 were "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery"). The rule change does not alter the actual scope of permissible discovery in the way Defendants suggest. *See Stanley v. Safeskin Corp.*, No. 99CV454-BTM (LSP), 2001 WL 1870859, at *3 (S.D. Cal. July 11, 2001) ("Recent amendments to Rule 26(b)(1) . . . did not alter the scope of discovery to a great extent."); *Richmond v. UPS Serv. Parts Logistics*, No. IP01-

1412-C-K/H, 2002 WL 745588, at *2 (S.D. Ind. April 25, 2002) ("The implementation of amended Rule 26 did not necessarily impact the so called 'liberal discovery' standard as evidenced by cases interpreting the post-amendment rule."); 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice and Procedure* § 86 ("The point of the amendment was not to effect a dramatic change in the scope of discovery generally, but to involve judges in cases that present discovery scope problems.").

Defendants criticize Oracle for relying on pre-amendment cases. That is misguided. Courts – including this one – continue to cite pre-2000 cases in support of the "subject matter" discovery standard, and the same courts also cite the cases cited by Oracle in its Motion, *Oppenheimer* and *Soto*. *See, e.g., Fosselman v. Gibbs*, No. 06-0375 PJH, 2008 WL 745122, at *1 (N.D. Cal. March 18, 2008) (Judge Hamilton, citing *Oppenheimer* for the fact that "[c]onsistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues"); *Sirota v. Penske Truck Leasing Corp.*, No. 05-03296 SI, 2006 WL 708910, at *1 (N.D. Cal. March 17, 2006) (Judge Illston, citing *Oppenheimer* and *Soto* for the fact that "a 'relevant matter' under Rule 26(b)(1) is any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case'" and that "[r]elevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case").[1]

As shown below, the discovery Oracle seeks meets both the "claim or defense" and the more liberal "subject matter" standards. More to the point, Defendants have not met *their* burden of proving that this discovery is either irreverent to Oracle's claims or unduly

---

[1] In Defendants' Motion to Compel Discovery Concerning Third Party Support Provided By Oracle's Partners ("Defs' Mot. to Compel"), filed on the same day as Oracle's Motion to Compel, Defendants also rely on the "liberal" scope of discovery. *See* Defs' Mot. to Compel at 8 (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006)). In the very case that Defendants cite, *Gonzales v. Google*, the court noted that, in making a discovery determination, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to defend and prepare the case." 234 F.R.D. at 679-80 (quoting Rule 26 advisory committee's note (1983)).

burdensome.

### B. Defendants Fail to Meet Their Burden to Prove That The HRE Discovery is Irrelevant.

Defendants – the parties seeking to prevent discovery – have the burden of establishing lack of relevance or undue burden. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997). As Judge Hamilton explained in *Fosselman v. Gibbs*, "[a] recitation that the discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Fosselman*, 2008 WL 745122, at *1 (N.D. Cal. March 18, 2008) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) and *Oleson*, 175 F.R.D. at 565). "The party resisting discovery must instead show specifically how . . . each [discovery request] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.*

As an initial matter, Defendants cannot contest relevance when they admit it. Oracle submitted specific evidence that Defendants had a regular business practice of illegally obtaining Oracle software to study prior to announcing support for that product, and would then cross-use that software to support multiple customers. *See* Mot. at 2-3; Howard Decl. ¶¶ 7-9, Ex. B-F. Defendants do not dispute that evidence. Instead, they submit sworn testimony from the former CEO of SAP TN, Andrew Nelson, that Defendants did, in fact, access the HRE software as part of preparing their business case for support of those customers. Declaration of Andrew Nelson In Support Of Defendants' Opposition to Plaintiffs' Motion to Compel ("Nelson Decl.") ¶ 3. This same man, witnesses have testified, invented the "retrofit" model at SAP TN in which he would create between three and ten copies of Oracle's software (originally obtained from a customer) and use those copies and illegally obtained downloads to create SAP TN-branded support fixes for distribution to SAP-TN's entire customer base. *See* Jeong Decl. Ex. B (demonstrating Mr. Nelson's role in creating the retrofit model). His conception of what is legal and proper should not control discovery in this case.

Mr. Nelson's testimony illustrates the problem. He testifies: "To my knowledge, *other than materials that were available to the general public (i.e. through the Internet or other publicly available means)*, no one at TN downloaded or otherwise accessed any of the HRE

Products' *proprietary software or confidential support materials* for any purpose *relating to TN's consideration of providing third party support for those products.*" Nelson Decl. ¶ 3 (emphasis supplied).

First, this testimony admits that Defendants did download and access (i.e. copy) HRE software, and studied it to develop a competing support model. Whether those copies violate the copyright laws or other laws is not for Mr. Nelson to determine. Certainly, if SAP TN obtained and used these software copies in a completely legal manner, that would be the only time over several years, millions of downloads, and after using thousands of other software copies, that they managed to do so. Mr. Nelson also swears that "TN never provided direct third party support for the HRE products" (*id.* ¶ 2), but gives no explanation as to what the qualifier "direct" means. Mr. Nelson's ambiguous limitation to "proprietary" and "confidential" software (*id.* ¶ 3) also merits exploration. When confronted with that same language as it appears in millions of PeopleSoft support code products that SAP TN copied and modified, one of Mr. Nelson's longest tenured employees said simply:

> *Q. Is that code line that I just read TomorrowNow proprietary and confidential?*
>
> *A. I don't know what the definition of proprietary and confidential [sic].*

Jeong Decl. Ex. D.

Mr. Nelson's carefully phrased testimony also suggests that Defendants may improperly have used the software for purposes other than "relating to TN's consideration of providing third party support for those products."[2] Nelson Decl. ¶ 3.

Other recent testimony raises even more questions. On the same day that Defendants

---

[2] Thomas Zieman, SAP AG's Vice President of Service Solution Management - Global Services and Support, uses the exact same language in his declaration to claim that *SAP* did not access or download Oracle's non-public, HRE "proprietary software or confidential support materials" for the purpose of considering support of HRE products. Declaration of Thomas Zieman In Support Of Defendants' Opposition to Plaintiffs' Motion to Compel ( "Zieman Decl.") ¶ 3. His declaration suffers from the same flaws as Mr. Nelson's.

filed their Opposition, a senior executive of SAP's Support Solution Management testified that it was his "assumption" that SAP TN actually used its "standard business model" to prepare to launch a service offering for these other Oracle-owned applications. Jeong Decl. Ex. C.

In combination with Oracle's evidence, these witnesses' testimony confirms the direct relevance of the discovery Oracle seeks.[3] In short, despite many opportunities to do so, including in their Opposition and supporting declarations, Defendants continue to block the key facts targeted by Oracle's foundational HRE discovery, which are in part: (1) where Defendants got the software they did use, (2) what Defendants did with it, (3) whether they infringed Oracle's copyrights, and (4) what SAP's role was in this scheme. These omissions are telling, and together with SAP's recent testimonial admissions and the documents Oracle has already obtained from PSFT and JDE-related discovery, provide more than enough support for Oracle's allegations that Defendants applied the same "standard" illegal business model to its consideration of support for all products, including the HRE products. Oracle should not have to take Defendants at their word that they never serviced HRE products, never violated Oracle's copyrights, and never used Oracle's HRE software to unfairly and illegally compete for Oracle's customers. Oracle is entitled, at the very least, to foundational discovery to test these assertions.

Given that record, Defendants turn to other arguments in their Opposition, each of which fails.

### 1. The discovery relates to Oracle's claims and good cause otherwise exists to allow it.

In their Opposition, Defendants claim that discovery into their use of Oracle's HRE

---

[3] Virtually every key phrase in these declarations is qualified by the words "to my knowledge" and "I believe." *See, e.g.,* Ziemen Decl. ¶ 2 ("*To my knowledge*, SAP and TN never received any revenue related to providing support services for any HRE products." (emphasis supplied)). Defendants provide no factual foundation for the various "beliefs" of their three declarants, Mr. Nelson, Mr. Van Wissen, and Mr. Ziemen, or demonstrate that any of them have any personal knowledge regarding Defendants' use of HRE products. This lack of knowledge and proper foundation renders these declarations inadmissible to prove that SAP TN did not illegally access and use Oracle's software. *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412-1413 (9th Cir. 1995) (holding that self-serving declarations are entitled to no weight where declarants lack personal knowledge).

products is not relevant to a "claim or defense." Opp'n at 5-6, 8. They assert that Oracle has no copyright claims related to the HRE products, and instead seeks discovery for the sole purpose of determining whether it has a claim. *Id.* This argument misses the point, and actually ignores several of Oracle's bases for asserting the relevancy of the requested foundational discovery.

First, Defendants take an overly narrow view of what relates to Oracle's copyright claim. Oracle has a copyright claim. Third Amended Complaint ("TAC") ¶¶ 147-62. In it, Oracle alleges that Defendants infringed Oracle's software in multiple ways. *Id.* Discovery directed to additional infringement in different product lines unquestionably relates to Oracle's copyright claims. *Cf.* Fed. R. Civ. P. 26 advisory committee's notes (2000 amendment) (explaining that "a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action" and citing as an example the fact that "other incidents of the same type . . . could be properly discoverable under the revised standard"). Indeed, Defendants concede that Oracle's Complaint includes actual allegations of illegal conduct related to Defendants' use of the HRE products (*see* Opp'n at 5-6 (conceding that Oracle's TAC at 10:25-11:2, or ¶ 28, contains a "factual allegation" of Defendants' illegal use of HRE products)), and they do not dispute that Oracle alleges a valid copyright claim encompassing Defendants' infringement of Oracle's intellectual property. That Oracle cannot pinpoint, with the certainty necessary to add the requisite copyright registrations, exactly which software Defendants infringed, illustrates the basis for the discovery. Defendants' circular argument that Oracle must know what it needs to discover before it can get the discovery has no basis in law.

Moreover, Defendants have not disputed that Oracle's HRE-related allegations support claims *other than* copyright infringement. *See* Mot. at 7 ("Through incorporation of the numerous allegations of unlawful conduct related to Retek, Hyperion, and EBS, Defendants' use of these products is covered by all causes of action in Oracle's Complaint."). For example, Oracle's allegations of unlawful conduct related to the HRE products also relate to Oracle's unfair competition and unjust enrichment claims. *See* TAC ¶¶ 204-12 (alleging unfair competition based on Defendants' "unlawful business acts or practices . . . committed pursuant

to business activity related to providing business applications software and related support and maintenance for that software"), ¶¶ 219-21 (alleging unjust enrichment based on Defendants' unjust receipt of benefits "at the expense of Oracle USA, OIC, and OEMEA through Defendants' wrongful conduct"). Each of these claims incorporates by reference Oracle's allegations related to its HRE products. *Id.* ¶¶ 204, 219.

Finally, Defendants fail to address Oracle's assertion that evidence of Defendants' improper use of Oracle's HRE software relates to Oracle's punitive damages claims. Mot. at 10-11. This evidence plainly meets the standard of "relevant" discovery, which, as Defendants point out, is "liberally construed to permit the discovery of information which ultimately may not be admissible at trial." *See* Defs' Mot. to Compel at 8 (citing *Gonzales*, 234 F.R.D. at 680). Accordingly, even under Defendants' restricted (and incorrect) reading of Rule 26(b)(1), this discovery relates to Oracle's claims.

Defendants cite *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555 (N.D. Cal. 2003), for the proposition that Oracle "may not obtain documents in order to discover whether it has a cause of action." Opp'n at 8. *Caliper* differs from this case. In *Caliper*, although the plaintiff alleged only that the defendant's IMAP product infringed plaintiff's patent, the plaintiff nevertheless sought discovery of other products sold by the defendant to determine if it was "selling other products which infringe its patents." 213 F.R.D. at 558. The court denied this discovery for "failure to show relevance," noting that the plaintiff only alleged that the IMAP product infringed its patent and offered "no explanation" as to why the discovery was relevant to any claim. *Id.* Unlike in *Caliper*, Oracle does not pose an open-ended request for evidence of wrong-doing. Oracle has specific allegations of unlawful use of its HRE products, specific claims incorporating those allegations, and evidence that Defendants actually misused those products in their attempts to provide service on them.

The discussion above shows that the requested foundational discovery relates to Oracle's claims. Alternatively, the Court can hold that Oracle has shown good cause to allow this discovery as "relevant to the subject matter involved in the action." *See* Fed. R. Civ. P. 26(b)(1). On that basis, and on the same grounds argued above, Oracle has demonstrated "good cause" to

support the HRE-related discovery as relevant to the subject matter of this action. *Id.*

### 2. Oracle need not "prove" its claims to get foundational discovery.

Defendants next argue against the discovery on grounds that "Plaintiffs offer no relevant evidence to support their motion." Opp'n at 9. This argument fails for two reasons.

First, Defendants cite no legal authority for their view that Oracle must submit evidence to support a request to gather evidence. In fact, the rule states otherwise: to show that discovery is "relevant," Oracle need only "articulate[e] a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence." *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 651 (N.D. Ill. 1994).

Second, as discussed above, Oracle *did* submit evidence in support of its Motion. *See* Mot. at 2-3; Howard Decl. ¶¶ 7-9, Ex. B-F; *see also* Jeong Decl. Ex. C. And, Defendants have now introduced evidence of their own to the effect that Defendants did download, access, and otherwise use the HRE software to develop a competitive business plan, at least. Nelson Decl. ¶ 3. But, as noted above, this same witnesses testimony raises serious questions about what Defendants did with the HRE software they now admit to copying and using.

On this record, Oracle must have the opportunity to test the testimony and explore the true facts. Indeed, the three declarants further state that, "to [their] knowledge," (1) Defendants "never received any revenue related to providing support service for any HRE products" (*see, e.g.*, Ziemen Decl. ¶ 2) and (2) "TN never provided direct third party support for the HRE products" (Nelson Decl. ¶ 2). The documents Defendants have produced strongly suggest otherwise. *See* Mot. at 2-3; Howard Decl. ¶¶ 7-9, Ex. B-F; *see also* Jeong Decl. Ex. C. Defendants targeted customers of this software in their Safe Passage program, and generated revenue from those customers. *Id.* They copied the software, developed detailed business plans, recruited the customers, and now ask Oracle and the Court to simply "believe them" that none of this included actually offering (or promising to offer) support or involved illegal copies or use.

### 3. Defendants' "production" of HRE documents and witness "testimony" means nothing.

In their Opposition, Defendants assert that they "have already provided Plaintiffs with 'foundational discovery' on the HRE products." Opp'n at 3. Defendants explain that they produced "over 13,000 pages" that are "directly related to the HRE Products,"[4] and have allowed testimony on HRE products from several defense witnesses. *Id.*

Defendants want to have it both ways. On the one hand, they have refused to respond to *any* of Oracle's discovery on the HRE-related topics *since July 2008*, refused to compromise this position through meet and confer, and take the position in their Opposition that these products have no place in the case. *See* Howard Decl. ¶¶ 13-22. But in opposing the Motion, they also claim (for the first time) to have provided thousands of documents referencing the HRE products and allowed witnesses to answer questions about them.

Obviously, Defendants have not (and do not say they have) performed searches for, or produced documents related to, the issues covered by Oracle's noticed discovery. They do not contend that these "13,000 pages" actually provide anything close to the information Oracle is seeking. In fact, a quick search of Defendants' production for these product names reveals that the majority of these documents relate to: (1) the application sales side of SAP's Safe Passage program (not including the support component provided by SAP TN); (2) the bidding war between SAP and Oracle for Retek; and (3) SAP's competition with Oracle generally (which changed with each of these acquisitions by Oracle, prompting further analysis and hand-wringing by SAP). While Oracle does not argue these documents are all irrelevant, these documents do not include the material sought by Oracle which will prove or disprove illegal access to and use of Oracle's HRE products.

Defendants also assert that they have allowed Oracle to question several defense

---

[4] Defendants do not explain how they arrived at this "13,000 pages" number. Accordingly, Oracle can only assume that Defendants searched their production for the words "Retek," "Hyperion," and "EBS" (or like derivations).

1 | witnesses about HRE products. Oracle noticed *none* of these witnesses for the purpose of
2 | offering testimony about Defendants' use of Oracle's HRE products. Oracle conducted each
3 | deposition without the benefit of documents related to the HRE issue (which Defendants have
4 | refused for seven months to produce). Considering this, it is not surprising that, when asked,
5 | *none of these witnesses knew anything about SAP TN's actual use of HRE products.* See Jeong
6 | Decl. Ex. A (attaching examples of deposition testimony from 10 witnesses, all who either didn't
7 | know or couldn't remember how SAP TN used Oracle's IP for the purpose of planning to
8 | support the HRE products). Ten ignorant witnesses cannot substitute for one knowledgeable
9 | one.

### C. Defendants Do Not Address Oracle's Evidence That The HRE Claims Have Great Value.

Defendants contend that the discovery, if relevant, has no value because they contend (in the face of the contrary evidence submitted by Oracle) they made no money supporting these products. Opp'n at 10-11. Putting aside whether they made money by *promising* support for these products, a fact they do not address, Oracle need not restrict itself to Defendants' preferred damages theory. In its Motion, Oracle explained how the foundational HRE-related discovery relates to proving Oracle's punitive damages case and separately could support substantial statutory, lost profits, and hypothetical license fee damages claims. Mot. at 8-11. Defendants fail to address Oracle's articulation of this potential value. Accordingly, Oracle has established good cause for obtaining the HRE-related foundational discovery.

### D. Defendants Submit No Evidence of Undue Burden.

If the discovery is relevant, as demonstrated above, Defendants must provide "specific" evidence that each discovery request is burdensome. *See Fosselman*, 2008 WL 745122, at *1 (N.D. Cal. March 18, 2008). They do not, either in generalities or specifics.

The only argument Defendants make in the undue burden section of their Opposition is an assertion that Oracle's foundational discovery will delay the case. *See* Opp'n at 8-9. This argument (and, therefore, Defendants' entire burden argument) fails because Defendants have cited *absolutely no evidence* and provided *absolutely no facts* to support it. To satisfy their

burden, as articulated in *Fosselman*, Defendants should have indicated how much time and expense it would take to respond to these limited discovery requests, including, at the very least, how many documents would be required and how much time it would take to prepare Rule 30(b)(6) witnesses on the HRE-related topics. Defendants make no such showing.

To the contrary, Defendants have repeatedly asserted that their efforts to service the HRE products were limited (if non-existent). *See, e.g.,* Opp'n at 1, 2, 9-11. Accordingly, Defendants' own argument indicates that they should not have great difficulty responding to the limited discovery sought through this Motion, which amounts to three interrogatories, fifteen requests for production, and one Rule 30(b)(6) notice for each Defendant.

Instead of attempting to prove that Oracle's foundational discovery would cause Defendants *any* burden, much less an "undue" one, Defendants suggest that granting this discovery will just lead to more (an implied "future" burden argument). *Id.* at 4. Defendants cite one example: Oracle's requests for foundational Siebel discovery in meet and confer discussions with Defendants. During these discussions, Oracle did not simply accept Defendants' initial offer for Siebel discovery and asked for more. Through their brief, we now learn that, when Defendants agreed to give more as a compromise, they did so while secretly intending to deny *any* HRE discovery. *Id.* Defendants did not express this internal bargain during the meet and confer, and such self-help adjudication does not serve the discovery process well.

Defendants' "slippery slope" argument also misses the mark. First, if Defendants' (untested) assertions are correct that, unlike with Siebel, SAP TN never serviced Oracle's HRE products, and never made unlawful use of these products in preparing to provide that service, then Defendants should have no fear that the foundational discovery requested here will result in further discovery requests. *See id.* at 3 (asserting that "[d]iscovery into the HRE products is different than discovery relating to Siebel software, because TN actually provided service and collected revenue related to Siebel products"). Second, Defendants' speculation about what Oracle might later seek has no relevance to *this* motion, which seeks discovery on *these* limited foundational requests.

1  III.  CONCLUSION
2      For the foregoing reasons, Oracle respectfully requests that the Court grant Oracle's
3  Motion and compel Defendants to respond to the discovery requests listed in detail in Appendix
4  A to Oracle's Motion to Compel.

5  DATED: January 27, 2009                BINGHAM McCUTCHEN LLP

6
7
                                          By: /s/ Geoffrey M. Howard
8                                             Geoffrey M. Howard
                                              Attorneys for Plaintiffs
9                                             Oracle USA, Inc., Oracle International
                                              Corporation, and Oracle EMEA Limited
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28