Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:     (650) 739-3939
Facsimile:      (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:     (832) 239-3939
Facsimile:      (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY CONCERNING THIRD PARTY SUPPORT PROVIDED BY ORACLE'S PARTNERS** |
| v. | |
| SAP AG, et al., | Date:         February 10, 2009 |
| Defendants. | Time:         2:00 PM |
| | Courtroom:  E, 15th Floor |
| | Judge:       Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 2

II. BACKGROUND TO THE MOTION. ..................................................................... 4

III. ARGUMENT. ........................................................................................................... 5

   A.  To be discoverable, information need not be admissible at trial, just reasonably calculated to lead to the discovery of admissible evidence. ................. 5

   B.  Oracle has failed to show that the Requested Discovery is not relevant. .............. 6

      1.  The Requested Discovery is relevant to reasonable royalty. ..................... 7

         a.  Partner agreements may establish an appropriate benchmark license for a reasonable royalty analysis. ...................................... 7

         b.  There is sufficient similarity between TN and CedarCrestone to allow the Requested Discovery. ......................... 8

      2.  The Requested Discovery is relevant to causation of damages. .............. 10

   C.  The burden on Oracle is minimal relative to the burdens on Defendants in this case and to Oracle's damages claims. ............................................................ 13

IV. CONCLUSION. ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

### Cases

Baker v. Urban Outfitters, Inc.
254 F. Supp. 2d 346 (S.D.N.Y. 2003) .................................................................... 7

Business Trends Analysts, Inc. v. Freedonia Group, Inc.
887 F.2d 399 (2d Cir. N.Y. 1989) .......................................................................... 8

Country Road Music, Inc. v. MP3.com, Inc.
279 F. Supp. 2d 325 (S.D.N.Y. 2003) .................................................................... 7

Data General Corp. v. Grumman
36 F.3d 1147 (1st Cir. 1994) ................................................................................. 11

Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.
25 F. Supp. 2d 395 (S.D.N.Y. 1998) ...................................................................... 8

Georgia-Pacific Corp. v. U.S. Plywood Corp.
318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................... 10

Harper & Row, Publishers, Inc. v. Nation Enterprises
471 U.S. 539 (1985) ............................................................................................. 11

Jarvis v. K-2 Corp.
486 F.3d 526 n.9 (9th Cir. 2007) ............................................................................ 8

Mackie v. Rieser
296 F.3d 909 (9th Cir. 2002) ............................................................................... 11

Paulsen v. Case Corp.
168 F.R.D. 285 (C.D. Cal. 1996) ........................................................................... 9

Rite-Hite Corp. v. Kelley Co., Inc.
56 F.3d 1538 (Fed. Cir. 1995) ............................................................................... 8

Telecom Tech. Servs. Inc. v. Rolm Co.
388 F.3d 820 (11th Cir. 2004) ............................................................................. 12

United States v.King Features Entm't, Inc.,
843 F.2d 394 (9th Cir. 1988) ............................................................................... 10

### Statutes

17 U.S.C. § 504(b) ......................................................................................... 11, 12

Federal Rules of Civil Procedure
26(b)(1) .................................................................................................................. 5
26(b)(2)(iii) ...................................................................................................... 6, 14
30(b)(6) ................................................................................................................ 13

### Treatises

8 C. Wright and A. Miller, Federal Practice and Procedure § 2008 (1994) ................... 5, 8

3 Nimmer on Copyright § 14.02[A](1) ............................................................. 10, 11

## I.   **INTRODUCTION.**

In its opposition, Oracle *begins* to reveal the very information that Defendants have long sought to obtain concerning the nature and scope of Oracle's partner programs.  Far from establishing that such matters are not discoverable, Oracle's revelations confirm that its partnership relations – including its relationship with CedarCrestone – are highly relevant to damages and causation and require at least some limited foundational discovery.

Oracle's opposition raises more questions than it answers.  While it admits the relevance of "independent companies with business models like SAP TN,"[1] it argues that CedarCrestone's business model is not similar to that of TomorrowNow ("TN").  *See, e.g.,* Opp. at 12.  But Oracle's attempts to distinguish the business models of TN and CedarCrestone are contradicted by CedarCrestone's public statements.  As examples:

- Oracle complains about TomorrowNow's possession of customer software environments at TomorrowNow's facilities.[2]  Yet CedarCrestone's website states that "an unprecedented number of PeopleSoft clients" are selecting CedarCrestone "for enterprise application hosting."[3]

- Oracle complains that TomorrowNow would create "'tax and regulatory updates' and deliver them to its customers."  TAC, ¶ 18.  Yet CedarCrestone's website discloses that it "offers clients a solution for providing ongoing tax and regulatory support for…PeopleSoft applications."[4]

- Oracle asserts that partners like CedarCrestone are not licensed to use its intellectual property to create patches and fixes.  Opp. at 8.  Yet CedarCrestone's website states that its "support is often packaged with application break/fix support…" which "[m]ay require development of custom code fix."  Reply Decl., ¶ 1, Ex. 1, p.4.

- Oracle asserts that it has not licensed any partner to provide support for any "de-supported" release of PeopleSoft.  Opp. at 9.  Yet CedarCrestone's website states that "Tax and Regulatory support is often packaged with application break/fix support to arrive at a solution able to 'Maintain' clients on *unsupported* versions for extended periods of time."  Reply Decl., ¶ 1, Ex. 1, p.4 (emphasis added).

---

[1] Oracle's Opposition to Defendants' Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners ("Opp.") at 1.

[2] Third Amended Complaint ("TAC") at ¶ 18.

[3] Reply Declaration of Jason McDonell in Support of Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners ("Reply Decl."), ¶ 1, Ex. 1, p.3.

[4] Declaration of Jason McDonell in Support of Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners ("McDonell Decl."), ¶ 1, Ex. 1, p.4.

- Oracle asserts that CedarCrestone "is not licensed to provide support for PeopleSoft…applications *in the United States*." Opp. at 9 (emphasis added). Yet CedarCrestone's website identifies numerous customers headquartered in the United States for whom it is supporting PeopleSoft applications. Reply Decl., ¶ 1, Ex. 10, p.10-13.

The Court should not be expected to resolve these contradictions at this stage. Nor should Defendants be forced to accept Oracle's partial disclosures at face value without an opportunity to test them in deposition and with sufficient records. Fleshing out these factual issues and determining just how Oracle's partners compare to TN is the very purpose of discovery.

Defendants seek discovery of Oracle's relationships with the third parties that provide support for PeopleSoft and J. D. Edwards ("JDE") products and the terms and conditions under which that support is provided. If (as Oracle admits in its opposition, Opp. at 1) some companies pay fees to Oracle for the right to provide such support, those fees are relevant to the computation of reasonable royalty damages. Oracle has cited no case, and we have found none, in which inquiry into the similarity of comparable licenses was prohibited at the discovery stage.

If those companies can and do support customers that TN previously supported, that tends to show that Oracle would have lost those customers with or without the activities of TN and thus Oracle will have difficulty proving that TN *caused* those alleged lost profits.[5] Contrary to Oracle's assertion, the statute and case law directly on point support the defense of lack of causation where there is evidence that customers would have left the plaintiff anyway.

Defendants have narrowly tailored this discovery request and it is reasonable under the circumstances. Oracle's contention that the discovery Defendants seek is unduly burdensome is belied by its own testimony. In the one week it had to prepare its opposition brief, Oracle identified two declarants who manifestly are informed about the general nature and scope of Oracle's partner programs.

---

[5] Oracle would lead this Court to believe that it would have retained those customers and received full support revenues from them, rather than simply the fee from CedarCrestone. That is untrue. CedarCrestone provides the support and Oracle receives only the fee paid by CedarCrestone to Oracle. Defendants need discovery of that fee arrangement.

Moreover, the deposition Defendants seek is a *foundational* deposition, designed to obtain general information on Oracle's partner programs for supporting enterprise software as a precursor to further, more targeted discovery. It is disingenuous for Oracle to suggest that its witness would need to prepare to testify about the details of all of its claimed 20,000 partners because, according to Oracle, "only a small percentage" of Oracle partners provide support services for PeopleSoft and JDE products. Opp. at 8.

The Court has appropriately noted in another context that because Oracle is seeking "millions and millions of dollars," it must accept certain burdens of discovery that go with such a claim. In fact, the discovery sought by this motion is a tiny fraction of the discovery Oracle has obtained from Defendants. Thus, principles of proportionality weigh heavily in favor of requiring this discovery.

## II. BACKGROUND TO THE MOTION.

Oracle devotes much discussion to the earlier proceedings before Judge Legge and this Court's informal comments made at discovery conferences without the benefit of legal briefing or evidence. Opp. at 2. The proceeding before Judge Legge was the very first discovery hearing, at which time Oracle was advocating that all damages discovery be deferred and Judge Legge had many other liability-related issues to address. He made clear that his ruling was *without prejudice* and invited Defendants to make a "later showing of relevance and appropriateness" of discovery concerning Oracle partners. McDonell Decl., ¶ 11, Ex. 11.

Defendants have done just that by offering admissions from CedarCrestone's website and its counsel. Those statements confirm that CedarCrestone is an Oracle partner that provides the same support services to PeopleSoft customers, including at least two former TN customers, that TN previously supported. Mot. at 4-5; Reply Decl., ¶2. At no point in its twenty-three page opposition, does Oracle acknowledge, much less refute, this evidence. Instead, Oracle rests on the conclusory assertion that "CedarCrestone's business model, like other Partners, is nothing like SAP TN's." Opp. at 12. In fact, there is considerable doubt whether Oracle even knows the details of CedarCrestone's business model, which would explain why Oracle initially served it with a subpoena containing five requests for information about the nature of its business model.

McDonell Decl., ¶ 1, Ex. 1.[6]

Moreover, Oracle did not contest the assertion that it appears to be planning to seek reasonable royalty damages. Oracle merely argued that whatever the nature of its relationship with CedarCrestone, evidence of that relationship could not be relevant to an appropriate reasonable royalty. Opp. at 10-11. As discussed below, that is clearly not the case.

## III. ARGUMENT.

### A. To be discoverable, information need not be admissible at trial, just reasonably calculated to lead to the discovery of admissible evidence.

Oracle tries to frame the issue as a question of what evidence will ultimately be admissible at trial and what weight a finder of fact should give that evidence. Opp. at 13 (asserting that because the Southern District of New York found evidence inadmissible, "so it should be here"). This is misleading and puts the cart before the horse.

Rule 26(b)(1) provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) provides "an explicit recognition that the question of relevancy is to be more loosely construed at the discovery stage than at trial, where the relevance purposes of admissibility is governed by the Federal Rules of Evidence." 8 C. Wright and A. Miller, Federal Practice and Procedure § 2008, at 99-100 (1994) (hereinafter "Federal Practice"); *accord Kerr v. United States District Court,* 511 F.2d 192, 196 (9th Cir. 1975). The issue before the Court is whether requested information is *discoverable*, not whether it is ultimately admissible or the weight to be accorded to the evidence after the details have been discovered and offered in evidence.[7]

_____

[6] Oracle's claim that it "mistakenly" served a subpoena for records concerning CedarCrestone's business model is curious to say the least. Opp. at 5. Given the contradictions between Oracle's characterizations of CedarCrestone's business model and CedarCrestone's own website, it would make sense for Oracle to have sought business model documents. McDonell Decl., ¶ 1, Ex. 1. Having realized that it may have opened the door to discovery sought by Defendants, it appears that Oracle may have simply decided to beat a retreat and withdraw the subpoena.

[7] Indeed, Defendants do not concede the fundamental question of whether Oracle could be entitled to reasonable royalty damages under any circumstances. Nevertheless, because Oracle appears to be reserving its right to seek such damages, Defendants should then, in fairness, be given the appropriate leeway to conduct discovery relevant to such a damages theory.

Discovery of relevant information may be denied if the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii). In determining the likely benefit of discovery, the Court may consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* Here, the burdens on Oracle are minimal, especially given the narrow scope of the Requested Discovery.

## B. Oracle has failed to show that the Requested Discovery is not relevant.

The common thread running through Oracle's opposition is the argument that its partners' service offerings are so different from TomorrowNow's that they merit no discovery at all. Oracle's approach is to give a small glimpse of its partner programs and then insist that no bothersome follow-up questions be asked about the details.

Those unanswered questions, however, are important. Oracle admits that it enters into agreements with "certain third party companies" (Opp. at 1), but other than CedarCrestone, fails to identify those companies. It admits that its agreements with its partners require "the payment of fees" (*id.* at 1), but says nothing about what those fees might be or how they are calculated. It admits that it sublicenses "certain of Oracle's software programs" to third party support providers (*id.*), but gives no specifics about which software programs or whether they are the same programs TN is alleged to have infringed. It admits that the services provided by its partners, including CedarCrestone, "are subject to a license agreement with Oracle," but will not produce a copy of the license. *Id.* at 2. Instead, it provides selective and largely irrelevant quotes from the CedarCrestone license agreement (*id.* at 10), but studiously avoids disclosing the full terms.

Oracle's claim that CedarCrestone does not compete with Oracle (Opp. at 9), is squarely contradicted by the evidence. In the course of discovery, Oracle has produced a document that shows that Oracle has lost PeopleSoft support customers to CedarCrestone in the United States. Reply Decl., ¶ 2. The customer in that particular case stated as follows:

> "At this time, I have direction from our Administrative Services director to not upgrade any of our PeopleSoft applications. To that end, we will be looking to not be under maintenance with Oracle but instead contract with CedarCrestone for ongoing support."

*Id.* Oracle's own internal documentation classified this customer as "lost." *Id.*

Moreover, Oracle makes no attempt to rebut the evidence that CedarCrestone has inherited former TN customers. McDonell Decl., ¶21; Reply Decl., ¶ 2. That unrebutted evidence establishes the similarity of the TN and CedarCrestone service offerings, as CedarCrestone's services clearly are substitutes for those of TN for these customers.

### 1.    The Requested Discovery is relevant to reasonable royalty.

#### a.    Partner agreements may establish an appropriate benchmark license for a reasonable royalty analysis.

Oracle concedes that in some circumstances a license between the copyright holder and a third party licensee – a so-called "benchmark license" – may be an appropriate consideration in a reasonable royalty analysis. Opp. at 12. Typically, courts look to the similarity between a benchmark license and the hypothetical license the alleged infringer would have paid to the copyright holder to determine if the benchmark license supports an award of actual damages. This is a fact-driven analysis. *Compare Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 359 (S.D.N.Y. 2003) (holding proffered benchmark licenses established reasonable royalty) *with Country Road Music, Inc. v. MP3.com, Inc.*, 279 F.Supp.2d 325, 331 (S.D.N.Y. 2003) (proffered benchmark licenses did not establish reasonable royalty).

Oracle argues that its partner relations are irrelevant to a reasonable royalty analysis because it would never have licensed its intellectual property to a support organization that was owned by its competitor, SAP. Opp. at 2 ("Partners are not attempting to convert the customer to a competing software platform."). Because Oracle has denied access to the facts needed to determine if its partner agreements are appropriate benchmark licenses, that argument begs the question. It also fails for two reasons.

First, the law regarding a hypothetical negotiation between a copyright holder and an alleged infringer to determine the appropriate royalty requires that the hypothetical negotiation take place *at the outset* of the alleged infringement. *See Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (patent infringement); *accord Jarvis v. K-2 Corp.*, 486 F.3d 526, 534-35, n.9 (9th Cir. 2007) (copyright infringement). According to Oracle, TN's alleged infringement began "as early as 2002." TAC, ¶ 18. SAP did not acquire TN, however, until

January of 2005.  *Id.*, ¶ 72.  It is undisputed, therefore, that from 2002 to 2005, TN was an

independent, stand-alone third party support organization, essentially performing the same

services that CedarCrestone was providing for PeopleSoft customers.[8]  There is no allegation that

TN was attempting to convert Oracle customers to any other software platform during that period.

Moreover, Oracle did not acquire PeopleSoft until 2005 either.  TAC at 3, fn.1.  Thus, far from

supporting Oracle's argument that the Requested Discovery should be denied, the facts show that

Defendants should be entitled to discover both Oracle's and, prior to 2005, PeopleSoft's

relationship with CedarCrestone for reasonable royalty purposes.[9]

Second, the case law addresses alleged infringement among direct competitors.  Indeed,

some cases have held that the competition is so direct that there could never have been a royalty

negotiated among the parties.  *Business Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F.2d

399, 405 (2d Cir. 1989).  In those circumstances, courts may deny the royalty-based damages

altogether.  *Id.; see also Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 25 F. Supp.

2d 395, 401 (S.D.N.Y. 1998).  Oracle, however, has never conceded that to be the case here.

Rather, Oracle purports to be pursuing a possible royalty theory of recovery in addition to other

potential remedies.  As long as Oracle does so, it should not be permitted to argue that discovery

directly related to that damage theory should be precluded.

### b. There is sufficient similarity between TN and CedarCrestone to allow the Requested Discovery.

Defendants need not show precise similarity between CedarCrestone and TN for their

motion to be granted.  *See* 8 Federal Practice § 2008, at 99-100 (relevance is more loosely

construed at the discovery stage than at trial).  The Central District of California's holding in

*Paulsen v. Case Corp.* illustrates the point.  *Paulsen v. Case Corporation,* 168 F.R.D. 285, 288-

---

[8] According to its website, CedarCrestone has been supporting PeopleSoft customers since 1999.  McDonell Reply Decl., ¶ 1, Ex. 1, p.14.

[9] Defendants do not concede that Oracle is entitled to claim reasonable royalty damages for the period 2002 to 2005.  Indeed, Defendants' position is that Judge Hamilton's Order on their motion to dismiss precludes any copyright damages for that time period.  Dkt. No. 224.  Oracle contests that position, however, and has sought to appeal the Order.  Dkt. No. 258.  As long as Oracle is seeking copyright damages for that time period, including in the form of a reasonable royalty, Defendants are entitled to the Requested Discovery for the same period.

89 (C.D. Cal. 1996). In this product liability case, the court considered a motion to compel the production of documents related to products similar to those involved in the alleged accident. The defendant objected, arguing that a declaration in support of the motion to compel did not demonstrate substantial similarity to the product at issue. The court granted the motion, however, concluding that the evidence was discoverable despite alleged differences that might prove to be material at trial. *Id.*

Oracle's claimed distinctions between TN and CedarCrestone do not compel a different result here. First, Oracle asserts that CedarCrestone "is not licensed to provide support for PeopleSoft, J.D. Edwards or Siebel applications *in the United States*." Opp. at 9 (emphasis added). This is a factual matter that Oracle has never disclosed before and that is an appropriate subject for deposition. As to the substance, the argument completely misses the mark. Many of the PeopleSoft customers for which Oracle is seeking damages are non-US customers, thus Oracle's distinction is meaningless.[10] Furthermore, the accuracy of the assertion is questionable. According to CedarCrestone's website, it provides support to numerous PeopleSoft customers in the United States, including two former TN customers: George Weston Bakeries (purportedly the largest food processing and distributing company in the world, headquartered in New York) and Integris Health (an Oklahoma-based healthcare company).[11] Reply Decl., ¶ 1, Ex. 1, pp. 10-13.

Second, Oracle asserts that "CedarCrestone has no license with Oracle to do any of the infringing acts SAP TN did to support its customers here." Opp. at 10, 13. This is a tautology, not a distinction. Licensed activity, by definition, is not infringing activity. Oracle also does not rebut Defendants' evidence indicating that CedarCrestone *is* providing patches and fixes for PeopleSoft customers. *See* Mot. at 4-5.

The cases cited by Oracle are no more persuasive than the alleged factual differences, particularly *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1137 (S.D.N.Y.

---

[10] Indeed, one of the apparent reasons Oracle intends to appeal Judge Hamilton's Order on Defendants' motion to dismiss is that it precludes Oracle from seeking copyright damages for non-US customers. Dkt. No. 258.

[11] On behalf of George Weston Bakeries, CedarCrestone claims that it applies "patches and fixes to their HR, benefits administration, payroll, general ledger, accounts payable, purchasing, asset management, and projects applications." Reply Decl., ¶ 1, Ex. 1, p.10.

1970).[12] In that case, the district court concluded that evidence of plaintiff's financial arrangements with a third party, after it been produced and admitted, did not establish an appropriate reasonable royalty. *Id.* Whether the same non-admissibility ruling might ultimately be made at trial here has no relevance to, and cannot serve as a basis for, precluding the Requested Discovery. *See Smith v. NBC Universal,* 2008 U.S. Dist. LEXIS 13280, *12-13 (S.D.N.Y. Feb. 22, 2008) (leaving plaintiff to "argue to the jury" that certain licenses with third parties did not reflect the fair market value of the infringed work; "Because the determination of damages may be difficult, and the Licenses are relevant evidence that might aid the jury in its decision, they are admissible."). The Court is not yet tasked with determining which agreements may best be used to determine a reasonable royalty. That task is left to the Court or jury after closing arguments. *See, e.g., Jarvis*, 486 F.3d at 534 (affirming actual damages award after the district court weighed "at least six estimates" of the fair market value of the infringed works). Moreover, Defendants reserve their right to object to a reasonable royalty analysis of actual damages. The motion merely seeks the evidence Defendants need to prepare a defense because Oracle has indicated – and does not deny in its Opposition – that it will pursue reasonable royalty-based damages.

### 2. <u>The Requested Discovery is relevant to causation of damages.</u>

Oracle claims to be unaware of any legal support for Defendants' causation argument. Opp. at 16. However, it is well established that causation is an essential element of a damages claim under the Copyright Act.

Section 504(b) states that a "copyright owner is entitled to recover the actual damages suffered by him or her *as a result of* the infringement …." 17 U.S.C. 504(b)(emphasis added). Courts and commentators alike have interpreted this to mean that the relevant inquiry is how

---

[12] Oracle identified one citation in Defendants' motion that warrants clarification. In *United States v.King Features Entm't, Inc.*, 843 F.2d 394 (9th Cir. 1988), the Ninth Circuit reversed an award of actual damages based upon a reasonable royalty calculation. The Ninth Circuit concluded that the district court had "failed to analyze the true extent to which" plaintiff had been precluded from a relevant market and remanded for determination of whether there were "any" actual damages at all. *Id.* at 400. However, the *King Features* court did not indicate that benchmark licenses should not be used to determine a reasonable royalty. Defendants refer the Court to *Urban Outfitters* and *Country Road Music*, *supra* at 6-7, as further support that benchmark licenses may be used in a reasonable royalty analysis.

much profit the plaintiff would have made but for the alleged infringement.  *See, e.g., 3 Nimmer on Copyright* § 14.02[A](1) ("Thus, the plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement.").  Part of this analysis includes consideration of evidence that the plaintiff's claimed losses would have occurred anyway, even absent the alleged infringement:

> [O]nce a copyright holder establishes with reasonable probability the existence of a causal connection between the infringement and the loss of revenue, the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression.

*Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 567 (1985) (citing *Nimmer*).

In *Data General Corporation v. Grumman*, the First Circuit applied this causation analysis to facts similar to those here.  *Data General Corporation v. Grumman,* 36 F.3d 1147 (1st Cir. 1994).  Plaintiff Data General, a computer manufacturer that provided support services to its customers, alleged that defendant Grumman, a competing support provider, infringed Data General's copyrights in the process of providing support services to Data General's customers. *Id.* at 1152-54.  In discussing the jury's award of actual damages, the court explained the parties' respective burdens under the Copyright Act, which the court analogized to traditional tort law principles.  *Id.* at 1170-71 (collecting cases); *see also Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (quoting *Data General* for the proposition that in the actual damages context "it is useful to borrow familiar tort principles of causation and damages.").  The court noted that a defendant may rebut a damages claim with evidence that alleged losses would have occurred absent the infringement, and that Grumman could have, but did not, introduce evidence that Data General's customers regularly turned to other third party maintainers ("TPMs") for support instead of Data General.  36 F.3d at 1171 (citing *Harper*); *see also id.* at 1173, n. 46.  Moreover, in upholding the damages award as reasonable, the court found it particularly significant that Data General's damages expert reduced the claimed damages by an estimate of the amount of business Data General would have lost to other TPMs.  *Id.* at 1173.  *Data General*, and the well-established principles upon which it is based, illustrate why the Requested Discovery is relevant to causation of damages.

*Telecom Tech. Servs. Inc. v. Rolm Co.,* 388 F.3d 820 (11th Cir. 2004), the only case Oracle cites in opposition, is inapposite. Opp. at 16. In that case, a group of independent service organizations ("ISOs") that provided third party support for telephone equipment licensed by the plaintiff appealed an award of damages for copyright infringement. 388 F.3d at 830. The district court had instructed the jury to award damages based on the ISOs' profits attributable to the infringement. *Id.* In a separate holding, the district court had found that the plaintiff lost no sales as a result of the infringement. On appeal, the ISOs argued that if the plaintiff had lost no sales as a result of the infringement, a necessary corollary was that the ISOs did not profit from it either. The Eleventh Circuit rejected that argument, presumably because the Copyright Act recognizes that a copyright holder's losses and an infringer's profits are not necessarily co-extensive. 17 U.S.C. § 504(b) (allowing recovery of both, to the extent they are not duplicative of each other). But that decision has no bearing here. Here, Defendants' causation argument goes to Oracle's alleged losses (and the extent to which they would have occurred anyway absent the alleged infringement because of the existence of other third party support providers), not to any profits made by SAP or TN. Oracle is thus wrong that the *Telecom* case involved the same argument raised here or that it was rejected by that court. Opp. at 16.

Oracle is also wrong that Defendants are speculating that some customers would have chosen a different third party support provider if TN had not been available. Based on the list of customers identified on CedarCrestone's website, at least two former TN customers are now being supported by CedarCrestone. Reply Decl., ¶. 2. Moreover, according to Oracle's interrogatory responses, only a few former TN customers have returned to Oracle since TN ceased operations, apparently preferring to go to other third party support providers. Reply Decl., ¶ 4, Ex. 3.

Finally, Oracle's argument that Defendants should seek the Requested Discovery from the third party providers themselves (Opp. at 16) is particularly ironic, given the apparent cooperation between Oracle and CedarCrestone in objecting to Defendants' subpoena to CedarCrestone and Oracle's request that Defendants pursue that discovery via this motion to compel rather through a motion to compel CedarCrestone's compliance with the subpoena. Mot. at 6-7.

1

**C.**     **The burden on Oracle is minimal relative to the burdens on Defendants in this case and to Oracle's damages claims.**

The Requested Discovery imposes a minimal burden on Oracle. Its ability to obtain two declarations in support of its opposition is illustrative. The motion was filed on January 16, 2009. Within just seven days, Oracle had obtained and filed the declarations of two Oracle employees to testify regarding Oracle's partner network and make specific assertions about all 20,000 Oracle partners. *See, e.g.,* Kelly Decl., ¶ 5. Moreover, Oracle apparently located the CedarCrestone partner agreement and analyzed it during that same period.[13] *Id.*

Producing a Rule 30(b)(6) witness to testify "about the nature and scope of [Oracle's] partner programs for supporting enterprise software in general" also creates a minimal burden. Mot. at 12. Oracle claims that "preparing Oracle witnesses to speak comprehensively and knowledgeably on these vast" topics is overly burdensome. Opp. at 18. Yet, when it suited its own purposes, Oracle managed to prepare two of its employees to make declarations on the same topics within the limited time it had to prepare its opposition. Moreover, "vast" is obviously inaccurate. As Oracle concedes, "only a small percentage" of its partners provide support services for PeopleSoft and J.D. Edwards products. Opp. at 8. It is this same "small percentage" that is relevant to Defendants' motion. Mot. at 11-12. Oracle's characterization of Defendants' request – that the deposition will include additional topics such as "middleware and database products" – is simply misleading. Opp. at 18.

In connection with Defendants' request for certain Oracle financial information, this Court noted:

> THE COURT: Well, we'll just have to see, but I mean I would err on the side of giving them what they think they need to have their expert analyze the profits, not what Oracle thinks they need. And as long as it's not completely disproportionate. But, you know, you're seeking millions and millions of dollars for them and you're not giving up on the lost-profit theory and they have the right to challenge it. So exactly how you keep it and how complicated -- I don't know why you wouldn't at least give them the chart of accounts if it's true that that's essentially a list of what you've got. I don't see that -- that's not very burdensome.

---

[13] If Oracle has *not* obtained and analyzed the CedarCrestone partner agreement, it is unclear how Colleen Kelly could testify to the specifics of that license agreement, (Kelly Decl. ¶ 5), or how Oracle could assert what "CedarCrestone's Partner agreement states." Opp. at 10.

1   January 8, 2009 Discovery Conference, Trancript at 55; Reply Decl. ¶ 3, Ex. 2.

2          If the Requested Discovery places any burden on Oracle at all, this Court should consider

3   that burden in the context of all discovery to date in this case.  Fed. R. Civ. P. 26(b)(2)(iii) (in

4   determining the likely benefit of discovery, the Court may consider "the needs of the case, the

5   amount in controversy, the parties' resources, the importance of the issues at stake in the

6   litigation, and the importance of the proposed discovery in resolving the issues.").  To date,

7   Defendants have borne a disproportionate amount of the discovery burden.  *See* Reply

8   Declaration of Joshua Fuchs in Support of Motion to Compel Discovery Concerning Third Party

9   Support Provided by Oracle's Partners ("Fuchs Decl."), ¶ 1.  Defendants have produced

10  approximately 4,364,049 Bates number documents in comparison to the approximately 312,743

11  Bates numbered documents produced by Plaintiffs.  Defendants' witnesses have provided most

12  200 hours of deposition testimony, while Plaintiffs' witnesses have provided only 51 hours of

13  deposition testimony.  Finally, to date, Oracle has issued nearly 100 subpoenas *duces tecum* to

14  third parties, mostly former TomorrowNow customers, resulting in approximately 389,900 Bates

15  numbered pages that Defendants have had to review.

16  **IV.    CONCLUSION.**

17         For the foregoing reasons, Defendants respectfully request that the Court grant the motion

18  and order production of the requested documents and the requested deposition.

19

20  Dated: January 27, 2009                           JONES DAY

21                                                     By: /s/ Jason McDonell
                                                       _____
22                                                         Jason McDonell

23                                                     Attorneys for Defendants
                                                       SAP AG, et. al.

24

25

26

27

28

SFI-601904v2

- 14 -

REPLY IN SUPPORT OF MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)