BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*, | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **JOINT DISCOVERY CONFERENCE STATEMENT** |
| v. | Date: March 31, 2009 |
| SAP AG, *et al.*, | Time: 2:00 p.m. |
| Defendants. | Courtroom: E, 15th Floor |
| | Judge: Hon. Elizabeth D. Laporte |

1    Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

2  (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc.

3  (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint Discovery

4  Conference Statement.

5    The Parties jointly request that the Court schedule ninety minutes on March 31, 2009 to

6  further discuss the following discovery issues.

7    **1.    Extrapolation/Case Schedule**

8      **a.    Defendants' Position**

9    The Parties have continued to meet and confer regarding the "extrapolation stipulation"

10  that has been discussed at every discovery conference over the past eight months, but have not yet

11  come to agreement.  Defendants contend that Plaintiffs' proposed stipulation is inappropriate for

12  several reasons.  First, as Defendants' document production continues to grow in response to

13  Plaintiffs' continued requests for more data, it is becoming more apparent each day that Plaintiffs

14  do not need the stipulation in lieu of the discovery that they have already received, and that they

15  can expect to continue to receive, during the remainder of the current discovery period.

16    Second, as Plaintiffs have continued to take testimony from individual and 30(b)(6)

17  witnesses from TomorrowNow, the initial purpose of the proposed stipulation is becoming moot.

18  Additional testimony from a selected few witnesses will likely suffice to fill in any gaps that

19  remain from the testimony already taken.  Defendants dispute Plaintiffs' contention that several

20  additional TomorrowNow service engineers and developers need to be deposed.

21    Third, the proposed stipulation is—at best—a summary, and in some instances only an

22  approximation of certain testimony on some issues and, as a result, lacks what Defendants believe

23  is the requisite level of factual accuracy and necessary qualifications.  Plaintiffs identify several

24  excerpts of testimony where a witness testified that some particular conduct reflected a policy,

25  was a common practice or usually occurred, and in some instances attempt to characterize these—

26  incorrectly—as universally true.  Although some progress has been made on equivocating

27  language on some issues, the Parties have so far been unable to agree on a stipulation that

28  Defendants believe is appropriately accurate under the circumstances.

Fourth, Plaintiffs' current proposal to deal with certain facts that are contrary to the simplified summary-level proposed stipulation is by having Defendants identify and prove each and every exception. This improperly shifts the burden of proof on Plaintiffs' claims to Defendants. For example, if Plaintiffs intend to seek damages based on a specific number of objects, fixes or updates delivered by TomorrowNow, then they have the burden to prove that specific number and cannot shift any portion of that burden to Defendants.

Fifth, as has been explained in detail at the previous discovery conferences, the manner in which Plaintiffs will ultimately use the stipulation—especially with respect to damage calculations—seriously impacts Defendants' risk-benefit decision making with respect to the stipulation. Plaintiffs have now made clear that they intend to seek damages on an "object by object, fix by fix, update by update" basis and that the stipulation will be used to facilitate proof of those alleged damages. The individual objects, fixes and updates have no independent economic value and cannot be the basis for the "hypothetical license negotiation" on which plaintiffs apparently intend to seek royalty damages. Thus, Defendants contend that Plaintiffs are not entitled to seek damages in this fashion and that Plaintiffs continued efforts to do so is a significant obstacle to reaching an agreement on the stipulation.

In sum, Plaintiffs insist that Defendants stipulate to certain "facts" as to every object, fix and update or face months of delays and hundreds of hours of additional deposition time. That is a false dichotomy for the reasons stated above. Defendants believe that Plaintiffs are not entitled to seek damages on a fix by fix basis, and that this damages issue is a legal one that could and should be resolved soon to help focus discovery and resolve, or at least advance the resolution of, Plaintiffs' case scheduling concerns. The Parties are currently engaged in what appears to be a productive meet and confer process relating to what joint relief they may seek from Judge Hamilton regarding: (1) motion practice on certain prerequisite legal questions on liability and damages relating to certain of Plaintiffs' claims; (2) what, if any, adjustment should be made to the case and trial schedule; and (3) Plaintiffs' possible addition of parties and claims relating to other software lines. Depending on the outcome of that ongoing meet and confer, Defendants still believe that it is possible that the Parties could reach an agreement that would ultimately result in

some form of factual stipulation.

### b. Oracle's Position

Defendants have now made it clear that they have no interest in reaching agreement on an "extrapolation stipulation," despite the fact that the Parties – with assistance of the Court – have been negotiating it for the past eleven months. As the Court is aware, the point of this stipulation is to agree to a set of facts about TomorrowNow's general processes as testified to by TomorrowNow's Rule 30(b)(6) witnesses, to alleviate the burden on both parties to collect and analyze the extensive evidence regarding TomorrowNow's downloading and use of Oracle's software on an individual fix-by-fix basis over time. As the Court has confirmed, "that's always been…the incentive for the Defendants to stipulate; that is to say the alternative is to spend a huge amount more money and time on unearthing every fact." Transcript of November 25, 2008 Discovery Conference at 34:18-22. Oracle's third proposed stipulation on this topic has taken months of meet and confer efforts to develop. That proposal was attached as Exhibit A to the February 9, 2009 Joint Discovery Conference Statement (under seal). Since then, Defendants have entirely backed out of the negotiation process, now making it clear they have no interest in reaching any stipulation at all. However, as the Court made clear at the last discovery conference, Oracle's remedy for Defendants' failure to stipulate lies in a motion to Judge Hamilton. Accordingly, Oracle does not address the various contradictory arguments Defendants set forth regarding the stipulation because there is no relief sought at the Discovery Conference and because the Court has heard it all before.

In short, while Defendants have no valid reason not to stipulate to the facts concerning their use of Oracle's intellectual property, their refusal means that Oracle must seek the discovery necessary to prove those facts individually. Oracle also will need to move for a continuance of the current case schedule based in part on this issue, unless Defendants agree to provide the discovery necessary in lieu of a stipulation.

### 2. The Parties' Document Productions

Both sides have raised concerns about the other side's document productions. Defendants remain concerned that Oracle's rate of document production is jeopardizing Defendants' ability to

3

complete necessary discovery before the currently scheduled June 19 cutoff, given Oracle's proposed production schedule. Likewise, Oracle has identified large volumes of documents that Defendants have refused to produce (*e.g.* post-litigation server data and discovery regarding use and knowledge of Oracle-owned applications other than PeopleSoft and J.D. Edwards) and has further complaints concerning the slow rate of Defendants' production or proposed production, including for the voluminous Data Warehouse data and that Oracle software in their possession that has not already been produced.

### a. Defendants' Concerns With Oracle's Document Productions

### (i) Custodian Productions

Oracle has continued to produce custodian documents on a rolling basis, but has not yet produced documents for certain custodians identified in September and October of last year, that had previously not been identified as potential custodians in the action. Oracle has proposed and Defendants have accepted production dates in March for six of these custodians, including all three of the Company's highest ranking executives (two of which have already been produced). Defendants have proposed specific production dates in April for the remainder and Oracle has counter-proposed with later dates in April. Defendants have also proposed specific production dates in May for Oracle custodians identified in December 2008 and February 2009 and Oracle has counter-proposed with later dates in May. Defendants believe that Oracle's proposed dates do not allow sufficient time for depositions and other follow-up discovery, given the June 19 cutoff, and that certain requests have been outstanding too long. Defendants contend that Oracle's slow production rate has slowed Defendants' ability to identify new custodians, that they have timely identified custodians upon receipt of information from Oracle that allowed those custodians to be identified and that the two instances of reprioritization were done in response to requests from Oracle.

Oracle has only been able to move up its proposed production schedule to address Defendants' concerns by adding a large number of new reviewers and spending significant additional money. Nevertheless, Oracle has done so, and now only weeks separate the two schedules. Oracle contends that its proposed production schedule is more than reasonable -- even

more so, in that Oracle contends that Defendants waited till late in the case to begin identifying most of their custodians, they continue to identify wholly new custodians, adding an additional collection step to the process, and have reprioritized their preferred production order numerous times.

The Parties request the Court's guidance on the appropriate production deadlines.  A summary of the current production status and schedule for Defendants' requested custodians, including for archive files, is attached as Exhibit A.

### (ii)     Pre-2005 archived emails

Oracle has identified 42 custodians for whom it has archived emails that predate 2005. Oracle previously believed that these emails that had been archived in 2006 were inaccessible due to undue burden and cost.  However, following Oracle's investigation of the cost and effort needed to restore, process and produce these documents, using a sample restoration and review involving two custodians as reported to the Court last conference, Oracle agreed to produce responsive, non-privileged emails within the original discovery time frame for all 42 custodians. Oracle has also agreed to produce 2002-2004 emails for 10 key custodians identified by Defendants under the Parties' Expanded Discovery Timeline Agreement.  Oracle estimates this additional production, not including the time and effort of the Oracle employees needed to restore and collect the archive files and not including follow-up costs as Defendants identify additional custodians, will cost in excess of $250,000 in vendor expenses and attorney review time.

Oracle has proposed a rolling production schedule for these archived emails that extends through June 7.  Defendants have agreed to the April production dates Oracle has proposed but has proposed earlier production dates for the remainder.  The production status and schedule of these archive files is included in the attached Exhibit A.  Defendants contend that Oracle's proposed schedule is unreasonable, particularly for those emails that have been within the relevant discovery timeframe (01-01-04 through 03-22-07) from the outset and given that the vast majority of the 42 custodians were identified at the outset of discovery or no later than October of last year.  Defendants contend that Oracle's slow production rate has slowed Defendants' ability to identify new custodians, that they have timely identified custodians upon receipt of information

from Oracle that allowed those custodians to be identified and that the two instances of reprioritization were done in response to requests from Oracle. Oracle contends that Defendants waited too long to designate custodians, have chosen the priority schedule, including for the archive review, and cannot complain now that the emails that they assigned a lower priority to should be produced even faster.

Similar to for its regular custodian productions, Oracle has only been able to move up its proposed production schedule of this archive to address Defendants' concerns by adding a large number of new reviewers and spending significant additional money. Nevertheless, Oracle has done so, and now only weeks separate the two schedules, and further believes that its proposed production schedule is more than reasonable, and that faster production is simply not possible without substantially increasing the already significant costs Oracle has voluntarily incurred to produce these archived materials.

**(iii)    Software and Software License Activation Codes**

Defendants' Request for Production No. 63 requests that Oracle produce "[c]omplete copies of the Registered Works." Defendants contend that Oracle has produced copies of some software allegedly covered by the Registered Works, and has requested that Oracle produce copies of all software that Oracle contends Defendants infringed. Defendants contend that Oracle has previously agreed to produce copies of all software it alleges was infringed and Judge Legge ordered that production. Defendants contend that it is Oracle's burden to identify and produce this discovery.

Oracle has requested that Defendants identify which additional software relating to the Registered Works they believe is missing. Oracle informed Defendants that it would consider supplemental production of the software that Defendants identify, and further, has agreed to produce license activation codes related to relevant software identified by Defendants, to the extent such license codes can be located following a reasonable search. The Parties are continuing to meet and confer regarding: (a) whether Oracle has produced complete copies of the software that is the subject of Oracle's claims; and (b) what license activation codes Defendants need for this software. If these issues are not resolved, Defendants will seek further guidance

from the Court during the discovery conference and, if necessary, will include it in Defendants'

copyright-related motion to compel referenced below.

### (iv) Customer Connection Database

In February, Oracle produced a two terabyte collection of databases, which Oracle

contends relates to Defendants' requests for copyright related information related to the

identification, creation, ownership and registration of the alleged works that form the basis of

Plaintiffs' claims, and upon which Oracle has relied pursuant to Fed. R. Civ. P. 33(d) in its

interrogatory responses. Defendants believe that the databases have not been produced in a form

in which they can be analyzed or used. In addition, based on the size of the databases and what

Defendants understand about their contents and the format in which they have been produced,

Defendants do not believe they can locate responsive information in the databases, assuming it

exists, without substantial assistance from Oracle. Oracle believes that it has provided sufficient

information for Defendants and their experts to analyze these databases. Oracle has explained to

Defendants the names and types of databases that the Customer Connection production relates to

and explained that, like Defendants' production of the SAS database to Oracle, Defendants may

need to obtain database licenses and expert assistance for an efficient and productive review.

Defendants contend that the information provided by Oracle is insufficient, however, the Parties

continue to meet and confer on this subject. If the issue is not resolved, Defendants intend to

include it in the copyright-related motion to compel referenced below.

### (v) Customer Contract Files for Prior and Additional TomorrowNow Customers

As discussed in the Parties' last two Joint Discovery Conference Statements, Defendants

provided Oracle with a list of additional TomorrowNow customers on January 9, 2009. Oracle

informed the Court that it would not be able to produce these contracts before March 2009. Since

then, Oracle has been working to collect these additional agreements, but has raised several

questions regarding Defendants' customer list and has met and conferred with Defendants to

clarify this list, but Oracle still does not believe it has sufficient information regarding certain

customers on the list. Oracle has not yet produced the contract files for these customers.

1  Defendants request that the Court set a date certain for production of the customers at issue and

2  Oracle requests that the Court first set a date for Defendants to respond to Oracle's questions

3  regarding the customer list.

4      Oracle has also sent Defendants a detailed list of what it believes are a large number of

5  missing contract files for previously identified TomorrowNow customers and as well as certain of

6  those identified in January 2009.  If the Court sets any deadlines for Oracle's production of

7  customer backup information, Oracle requests that it set the same deadline for Defendants to

8  produce any missing customer back-up materials.

9                    **(vi)    CedarCrestone Documents**

10      In its February 11, 2009 Order, this Court required Oracle to produce "its partnership

11  agreement(s) with CedarCrestone for the relevant time from 2002 through 2008" and "the two

12  master agreements regarding support, including fee schedules, referenced at the hearing."  On

13  March 20, 2009, Oracle produced form partner agreements and agreements between it and

14  CedarCrestone.  Oracle confirmed in an email sent the same day that it was producing: "current

15  form partner agreements, as well as current and historical partner agreements for CedarCrestone,

16  that Oracle has been able to locate."  The parties have not yet had the chance to meet and confer

17  on this issue, but Defendants raise here their concern here that Oracle's email and production did

18  not sufficiently assure Defendants that the production represents all of "its partnership

19  agreement(s) with CedarCrestone" or all versions of the two master agreements and fee schedules

20  for the relevant time period.

21      Oracle contends that its email did assure Defendants that it had produced all of its partner

22  agreements with CedarCrestone "that Oracle has been able to locate," and further states that the

23  February 11 Order did not order production of "all versions" of Oracle's form partner agreements.

24  Defendants further contend that based upon a preliminary review, they believe that the production

25  appears to be incomplete.  The parties will about this alleged deficiency and, if necessary, will

26  also be prepared to discuss this issue at the hearing.

27      In an effort to obtain all agreements and fee schedules between Oracle and CedarCrestone,

28  Defendants have subpoenaed CedarCrestone and requested production of the same agreements

and fee schedules.  CedarCrestone has objected.  Defendants represent that these objections

include that the subpoena is unduly burdensome and because Oracle's production should be

exhaustive.  Defendants, therefore, contend Oracle should confirm whether all agreements and fee

schedules between it and CedarCrestone have been produced, and, if other agreements may exist

that have not been produced, whether Oracle is in possession of them.  Again, Oracle confirms

that it will be happy to meet and confer with Defendants about this alleged deficiency that

Defendants raise for the first time here, and will be prepared to discuss this issue at the hearing.

   The Court's February 11, 2009 Order also permitted Defendants to "issue a subpoena to

CedarCrestone regarding its activities supporting the use of Plaintiffs' software outside of the

services it provides pursuant to its Partnership Agreement with Oracle."  Defendants have issued

a subpoena to CedarCrestone for testimony on this subject, but CedarCrestone is resisting the

subpoena.  Defendants represent that these grounds include, among others, that Oracle should

have full knowledge of all of CedarCrestone's activities.  Defendants are meeting and conferring

with CedarCrestone about these issues, but one way or the other (either from Oracle or

CedarCrestone), Defendants contend that they are entitled to this discovery.  Defendants intend to

seek the Court's guidance on this issue at the discovery conference.  Again, the parties will meet

and confer on this issue that Defendants raise for the first time here.  Defendants will be prepared

to discuss this issue at the hearing and Oracle will do whatever investigation it can between now

and the hearing.

### (vii)    Chart of Accounts

   Defendants sought access to Oracle's financial records, including its general ledger, as

part of damages discovery.  As a compromise to overcome Oracle's burden objections,

Defendants suggested a two-step process by which Oracle would first produce its "chart of

accounts."[1]  Defendants would then analyze the chart of accounts and try to identify the

---

[1] "Chart of accounts (COA) is a list of the accounts including a unique number of each allowing to locate it in each ledger.  The list is typically arranged in the order of the customary appearance of accounts in the financial statements.  A chart of accounts can track specific financial information.  Each account in the chart has assigned a unique identifier, typically an account number.  Each account . . . is classified into one of the five categories: asset, liability, equity, revenue, and expense."  Wikipedia (the free on-line encyclopedia).

particular general ledger accounts that would be most relevant to assessing alleged damages. If Defendants can glean those accounts from the chart of accounts, Defendants would, as the second step, request the general ledger information for those accounts. While continuing to object to the production of general ledger information on burden and relevancy grounds, Oracle did agree to a production of chart of accounts documents. Oracle contends that these charts of accounts were agreed upon in scope, promptly provided, and clearly described.

Defendants contend that these documents, however, are difficult to understand because they are incomplete in at least the following respects: (1) Oracle has apparently only produced charts of accounts for income statement accounts, but not for balance sheet accounts; and (2) it is not possible to determine which charts of accounts related to PeopleSoft products and which related to J.D. Edwards products. Oracle contends that Defendants have known since day one that its chart of accounts is not organized by product, including as explained by Oracle during meet and confers and during the deposition of Ivgen Guner. Similar to the CedarCrestone document issue, the parties will meet and confer about this issue that Defendants raise here for the first time. Defendants will be prepared to discuss this issue at the hearing and Oracle will do whatever investigation it can between now and the hearing.

> **b.** **Oracle's Concerns With Defendants' Document Productions**

Oracle is concerned that Defendants' pace of production of documents is too slow, and given the volume of remaining data, may not be completed prior to the current discovery cut-off.

> **(i)** **Data Warehouse Review and Production**

In its first set of discovery requests, Oracle sought all copies of the software and other support materials downloaded from Oracle's Customer Connection customer support website by Defendants, as well as all copies of the Oracle software (and works allegedly derived from that software) maintained on TomorrowNow's computer systems. Due to the amount of data responsive to those requests, the Parties agreed to a remote review mechanism whereby Oracle could review TomorrowNow's servers that Defendants believed were used in the servicing of TomorrowNow's PeopleSoft, J.D. Edwards and Siebel customers presented in an electronic "Data Warehouse."

The Parties began working on and establishing a protocol for the "Data Warehouse" in April of 2008 (the "Data Warehouse" agreement or protocol). The original "Data Warehouse" agreement only included the PeopleSoft and J.D. Edwards servers and was later expanded to include Siebel servers in approximately December 2008. This original process of collecting, presenting, reviewing and producing the initially requested data from these servers concluded in February 2009. [2] In total, Oracle reviewed 93 server partitions that consist of approximately 10.2 terabytes of data and Defendants subsequently completed the production of the files Oracle originally requested be produced. Currently, Defendants represent that the production from the "Data Warehouse" consists of approximately 8.1 million files and 4.9 terabytes of data.

While the Parties continue to meet and confer on a number of issues, including the confidentiality of certain servers and databases, the Parties are unable to reach agreement regarding whether post-litigation files should be produced from the Data Warehouse. Oracle contends that the Data Warehouse materials should be produced for the Expanded Discovery Timeline, because these materials establish continuing post-litigation infringement activities by Defendants. Specifically, Oracle contends that the Parties agreed that documents relevant to "TN/SAP customers," Oracle's Copyrights, and TomorrowNow's business model from centralized document sources were within the scope of post-March 22, 2007 discovery. Defendants take the position that this agreement was never intended to include, and does not extend to, the Data Warehouse review. Defendants' position is that large server partitions in the Data Warehouse and the huge volumes of associated data are not "centralized" sources under either the intent, or express terms, of the Expanded Discovery Timeframe Agreement. Oracle believes that not only was the agreement specifically made with the Data Warehouse in mind, for

_____

[2] As part of the "Data Warehouse" agreement, Oracle had the ability to mark the files either "Produce" or "Record." The Parties agreed that Defendants would originally produce all non-privileged files marked "Produce" and Oracle would later decide if it wanted the files marked "Record." In total, Plaintiffs marked approximately 8.1 million files totaling about 4.9 terabytes as "Produce." On March 16, 2009, Oracle requested that Defendants now produce all files marked "Record." Defendants have determined that there are approximately 5.9 million of files which Oracle marked "Record" totaling about 2.9 terabytes of data. While Defendants view this request as being unduly burdensome and do not waive any rights with respect to that objection, Defendants have agreed to start the production process for the "Record" now and believe that it will take 8 to 10 weeks to complete the production.

example by calling out the "pathfinder" database (which Defendants assert is not a server) specifically as a centralized document source in the agreement, but in addition, Defendants' alleged post-litigation infringement makes production of all of these servers critically relevant for the post-litigation time period.

Accordingly, on February 2, 2009, Oracle requested that Defendants produce the post-litigation data for all of these Data Warehouse servers, to the extent that they contain TomorrowNow-branded support materials, materials sent to TomorrowNow's customers, project management and other documents relating to TomorrowNow's delivery of services to its customers, documents reflecting migration and off-boarding of TomorrowNow's local environments, and other documents that fall within the Expanded Discovery Timeline Agreement. Defendants maintain that recollecting, presenting and having to reproduce from all 93 partitions is unduly burdensome and harassing, especially in light of the production to date from these same servers and the amount of ongoing data and document production that will continue from now until the end of the discovery period. Moreover, Defendants reasonably believe that the technical expense (exclusive of attorneys' fees) to recollect and make all 93 partitions available again through the Data Warehouse would likely be in excess of $200,000. Oracle contends that given the high relevance of any post-litigation copying to Oracle's punitive damages claim, even if Defendants can support that number, Oracle believes that such a production is still necessary, and that Defendants could stipulate to these facts, but must live with the consequences of choosing not to do so.

In January and February 2009, Defendants produced certain data regarding Defendants post litigation conduct including an updated version of the SAS databases (in excess of 20 gigabytes of data) which Defendants contend tracks much of the activity that took place on the servers being made available through the "Data Warehouse." Defendants have also agreed to produce and are in the process of producing an updated version of the client fixes sent to TomorrowNow customers, the project management related data, and the TomorrowNow environment off-boarding tracking database ("Pathfinder") in native form. Defendants have also agreed to make certain, but not all, of the TN servers available again through the "Data

Warehouse." The recollection process has started for one server partition ("TN-FS01_F"), which exceeds 1 terabyte of data. Technical delays have pushed back production of this data one week. Defendants now expect to make portions of it available to Plaintiffs during the week of March 23, 2009, and Defendants expect that it will be fully available during the week of March 30.[3]

Given the continuing disagreement regarding the post-litigation Data Warehouse production, and though Oracle will be happy to meet and confer further, Oracle requests that the Court set a date for a motion to compel hearing.

### (ii)    Oracle's Software at TomorrowNow

During a number of meet and confer sessions including for the Data Warehouse production and again confirmed by email on March 16, the Parties have discussed production of all Oracle software in Defendants' possession, custody or control, that has not yet been produced. This includes Oracle software contained on TomorrowNow's servers, all client CD binders (including any indices, notes, or other documentation in those binders), and all files from the Data Warehouse review previously marked for metadata production only. During those meet and confers, Defendants have offered to make the CD binders available for inspection and copying, but would not agree to provide copies of those CDs. During Oracle's onsite inspection of TomorrowNow's AS/400 Defendants gave Oracle one of the binders to inspect to see if Oracle wanted to do a complete inspection. Oracle believes that full production is required. On March 16, 2009, Oracle also made a formal request for this data and for the files marked "Record" in the "Data Warehouse." *See* section 2.(b)(i) above.

Further, review of the Data Warehouse has also revealed that some backups of PeopleSoft local environments were saved onto external media (CD, DVD, tape) and subsequently removed from TomorrowNow's servers. To the extent it has been located, Defendants have agreed to

---

[3] Defendants' 30(b)(6) witnesses have indentified three servers – PSDEV02, PSNT01 and PSNT02 – as potentially containing relevant materials though they were never produced through the Data Warehouse. Oracle has requested that the servers be made available for review with respect to pre- and post-litigation materials. Defendants have agreed to produce these servers over the Data Warehouse over the coming two weeks, which Oracle will review before considering what further information concerning these three servers is required and along what time schedule.

1   make this software available for inspection and copying, though they have not agreed to provide

2   copies of those CDs/DVDs to Oracle.

3       Oracle will consider Defendants' proposal with respect to this software, which was

4   provided on March 24th, and will bring any remaining issues to the Court's attention at the

5   discovery conference, including whether Oracle will seek an order to impound these software

6   copies under 17 U.S.C. § 503.

7                   **(iii)    Deadline for Identifying New Custodians**

8       The Parties will seek the Court's guidance in resolving this dispute at the conference and

9   their respective positions are set forth below.

10                  **a.    Oracle's Position**

11      Oracle is also concerned with Defendants' practice of identifying wholly new custodians

12  for production, such that Oracle was not reasonably aware that Defendants believed the employee

13  or former employee might be relevant for discovery in this action.  Oracle believes that

14  Defendants have run out of truly relevant custodians and so are now fishing in the set of irrelevant

15  custodians.  Defendants contend that they are simply identifying the particular custodians for

16  which they wish Oracle to collect, review and produce responsive, non-privileged documents,

17  consistent with the Court's orders.  Oracle contends that these types of production requests are

18  particularly burdensome, because they require Oracle to start from scratch, interviewing the

19  custodian and collecting /processing these files from employees that are unrelated to the action.

20  This interview/collection process adds significant lead time onto the processing, review and

21  production time, such that Oracle will be physically unable to interview, collect, process, review

22  and produce new custodians prior to the discovery cut-off if Defendants do not identify them right

23  away.  To this end, Oracle initially proposed a March 9, 2009 deadline for identifying new

24  custodians.  Defendants objected to that date, and Oracle counter-proposed a deadline for

25  identifying new custodians of March 20th, except for a safety net reserve of five custodians.

26  Consistent with that request, Oracle identified its final list of custodians, reserving five, to

27  Defendants on March 20th.

28

**b.** **Defendants' Position**

Defendants do not believe that Plaintiffs' proposed deadline is reasonable because the scope and timeliness of Plaintiffs' document production to date has hampered Defendants ability to identify additional custodians, which Defendants are doing primarily by reviewing documents produced by Oracle. Consistent with the Court's order regarding custodian production, both Parties have been identifying the particular custodians for which they wish the opposing party to collect, review and produce responsive, non-privileged documents. The Court did not order a deadline for identifying new custodians prior to the fact discovery cut-off, which is currently June 19, 2009. Defendants propose a May 1, 2009 deadline, with the following exceptions: (1) any custodian whose name and relevance to the case could not have been reasonably anticipated by the requesting party reviewing the opposing parties' documents that have been produced on or before March 15, 2009; (2) any custodian who is first identified as a person with relevant knowledge in any deposition taken, or any parties' discovery response served, on or after April 15, 2009.

**3.** **Discovery Regarding Siebel**

Oracle contends that foundational discovery into Defendants' knowledge and acts regarding the servicing of Oracle's other applications (*i.e.*, Siebel, EBS, Hyperion and Retek) is crucial so that Oracle can properly evaluate its claims.

With regard to Siebel discovery, Defendants agreed to provide limited foundational discovery, including producing the SAS database for Siebel through October 31, 2008, document discovery from certain custodians, and the deposition of TomorrowNow's Siebel services head, John Tanner. Oracle contends that Tanner's deposition confirmed that Defendants' Siebel business operations were just as infringing as its PeopleSoft and J.D. Edwards business models. Accordingly, Oracle believes that additional Siebel discovery is required to fill in the specific details of how Defendants provided support to its Siebel customers, which Mr. Tanner could not provide, including in particular, Defendants' post-litigation Siebel support activities. Defendants maintain their position that TN's service of Siebel was relatively very small when compared to the PeopleSoft and JDE application, and that Oracle should not be permitted to seek further

Siebel at this point in the case.

**4.** **Discovery Regarding EBS, Hyperion and Retek**

    **a.** **Oracle's Position**

As to EBS, Hyperion and Retek (the "HRE Products"), after extensive meet and confer discussions, during which Defendants provided a declaration from Andrew Nelson claiming that TomorrowNow never actually supported these applications, Oracle moved to compel. Prior to the motion hearing, Defendants supplemented the Nelson declaration with one by Thomas Ziemen, which was similarly inadequate. On February 11, the Court ordered Defendants to promptly provide additional information so that the declarations would answer the questions Oracle laid out in its motion papers.

Defendants have agreed to schedule Andrew Nelson for an additional day and a half of deposition. Defendants contend that they have provided two sets of dates, but that they did work for Oracle, and therefore they have asked Oracle for alternative dates. Oracle contends that Defendants have delayed in providing dates, initially proposing dates Oracle had already rejected on the first day of deposition, and the parties have exchanged dates since then without success, in part, Oracle contends, due to the delay in getting dates from Defendants.)Defendants have stated they do not intend to supplement his declaration. No additional information has to date been provided to supplement the inadequate Ziemen declaration. During a meet and confer discussion on March 2, 2009, Defendants stated they needed at least an additional three weeks to produce a supplemental declaration, claiming that they were undertaking an investigation to determine who had the necessary knowledge to provide a declaration. This continued delay hampers Oracle's ability to understand its potential claims based on Retek, Hyperion, and EBS. Moreover, Oracle was surprised to learn that such an extensive investigation to find knowledgeable SAP witnesses had not already been done, particularly since Defendants had represented to the Court and Oracle that Mr. Ziemen was the appropriate person to so testify. Oracle is concerned that Defendants' initial investigation into these issues was perfunctory, and their assertions about its adequacy inaccurate. On March 16, Oracle requested that Defendants provide a detailed explanation of what their initial investigation into the issues covered by Mr. Ziemen's declaration entailed.

Oracle requests that the Court order Defendants to supplement Mr. Ziemen's declaration by April 3, and to explain why their initial investigation was inadequate.

**b.** **Defendants' Position**

The original declarations Defendants submitted in opposition to Oracle's motion to compel on the HRE Products focused on whether TomorrowNow ever supported those products and the witnesses' knowledge regarding what was done when Defendants considered having TomorrowNow support those products. Defendants' understanding is that Oracle's complaints during the hearing on that motion to compel were directed to the lack of information relative to SAP's Safe Passage efforts relating to customers using the HRE products, and more specifically: (1) "what was said to those customers to get them over . . . and what was done with them once they're there"; and (2) whether the "software was nevertheless used in order to achieve assurance or comfort or a mechanism for how they were going to accomplish the migration of those customers that they had gotten into Safe Passage over to SAP software." Defendants are attempting to collect information relative to these new issues from a variety of individuals at SAP, including sales people as well as technical people located in a number of different countries. That process is taking more time than Defendants originally anticipated.

During the hearing on the motion to compel Defendants' counsel noted that the reason the previous declarations do not have the granularity Oracle seeks is because of the burden associated with gathering the information in the first place. If Defendants were to have done the investigation Oracle claims they should have, then it would have mooted the point of Defendants' complaint regarding the burden related to these products that are not in this case. Moreover, Thomas Ziemen was chosen to provide one of the declarations attached to Defendants' opposition to Oracle's motion to compel because Oracle attached to its motion documents prepared by and under the direction of Ziemen. When the Court ordered a supplemental declaration be produced, Defendants' counsel indicated that Ziemen may not have the requisite knowledge to provide the additional information the Court ordered Defendants to provide and in response the Court indicated that is was fine for Defendants to use a different declarant.

Defendants have declined to provide Oracle with any detailed information regarding their previous or ongoing investigations because that information is protected by the work product and attorney-client privileges. Nonetheless, Defendants anticipate providing Oracle with one or more additional declarations from SAP's witnesses on this topic prior to the March 31st discovery conference.

### 5. De-Designation of TomorrowNow Documents

As the Court is aware, in the months leading up to that shut-down, Oracle requested that Defendants de-designate documents from TomorrowNow, given that it is unlikely that they could any longer concern the current or future business plans of SAP. The Parties have brought their proposals to the Court before, yet despite numerous discussions with the Court, the parties have been unable to agree to a finalized stipulation regarding the de-designation and re-designation of TomorrowNow's documents produced before it was wound down on October 31, 2008.

After the Court's order following the last Discovery Conference, the Parties continued to meet and confer. Oracle proposed a revised de-designation agreement on February 25. Defendants counter-proposed new language on March 10. Oracle believed that these further revisions added significant new language, and so on March 11, re-proposed revised language that it believes closely tracks the February 13 Order and the guidance of the Court at the hearing. Defendants responded on March 23 with their counter-proposal, which Oracle is currently reviewing. To the extent the Parties cannot agree on final language, the Parties will seek the Court's final ruling on any remaining issues at the Discovery Conference.

### 6. The Parties' Customer-Specific Financial Reports

Both Parties remain concerned with certain aspects of the other's Customer-Specific Financial Reports. Defendants detailed their concerns in a March 11 letter to Oracle. Oracle responded to Defendants letter on March 20, and detailed Oracle's concerns with Defendants' financial reports as well. The Parties expect to continue to meet and confer prior to the discovery conference, but if not satisfied, the Parties request that the Court require by a date certain further supplementation of reports.

**7.** **Seth Ravin Deposition**

The Parties will seek the Court's guidance in resolving this dispute at the conference and their respective positions are set forth below.

**a.** **Oracle's Position**

Oracle needs the Court's assistance to prevent Defendants' calculated attempt to hijack Oracle's critical and properly-noticed deposition of Seth Ravin. On February 2, 2009, Oracle noticed an intent to serve a third party subpoena on Seth Ravin, the former president of defendant TomorrowNow. Mr. Ravin is a critical deponent: after working in service delivery for PeopleSoft, he co-founded TomorrowNow where Defendants now contend he was instrumental in helping to create certain of the service delivery model and practices at the heart of this litigation. Moreover, his current company, Rimini Street, has taken over service on several former TomorrowNow customers, and Defendants contend Oracle may not recover lost profits for those customers (Oracle disagrees). Thus, even a one day (seven hour) deposition of Mr. Ravin will be barely adequate for Oracle's discovery needs.

Because Mr. Ravin resides in Las Vegas, Nevada, Oracle secured a subpoena issued from Mr. Ravin's district, the District of Nevada, which commanded Mr. Ravin to appear for deposition. Eighteen days later, on February 20, Defendants represented that they planned to set their deposition of Mr. Ravin *for the same day* as Oracle's deposition of Mr. Ravin. In response, Oracle immediately communicated to Defendants that because of his important and vast relevant knowledge, Oracle would likely be using the 7 hours available for examination on the day of its noticed deposition and that, as a result, there may not be any time remaining for Defendants' deposition of Mr. Ravin on that same day. Later that day, Mr. Ravin's counsel, Mike Levin of Wilson Sonsini, e-mailed the parties stating that Mr. Ravin would be available for deposition on May 21, 2009 (the first date he would be capable to sit for deposition after two scheduled surgeries in the interim). By the close of business on February 20, Defendants noticed an intent to subpoena Mr. Ravin, although, the noticed subpoena did not specify a date for Mr. Ravin's appearance. Mr. Ravin's counsel then accepted service of Oracle's subpoena and agreed to make Mr. Ravin available for deposition in the Northern District of California. On February 23, Oracle

contacted Mr. Levin and agreed to set its deposition for Mr. Ravin on May 21, the day he had indicated Mr. Ravin was available. On February 24, Oracle was copied on an e-mail communication from Ms. Wallace to Mr. Levin. Ms. Wallace stated that Defendants had planned to serve their own deposition subpoena for Mr. Ravin and wanted to reserve some time during the date now scheduled for Oracle's noticed deposition. Ms. Wallace further stated that half a day should be sufficient and Defendants were willing to split the time on May 21 with Oracle if that was agreeable to everyone; or, Defendants were also willing to continue the deposition to the next day or on some other mutually convenient date, if necessary. Oracle again reminded Defendants that it needed to reserve the 7 hours available for examination on the day of its scheduled deposition and that, as a result, there may not be any time remaining for Defendants' deposition of Mr. Ravin on that same day. Later, without citing any authority in support, Mr. Ravin's counsel informed Defendants that Mr. Ravin would appear for only one 7 hour deposition in this litigation.

On February 26, Defendants sent a second notice of intent to serve a third party subpoena on Mr. Ravin. This time, the noticed subpoena purported to issue from the Northern District of California and commanded Mr. Ravin's appearance for Defendants' deposition on May 21 at 9:00 a.m. – the same day of Oracle's previously and properly noticed deposition of Mr. Ravin. Instead of seeking an independent day to depose Mr. Ravin, Defendants sought to take half of the day from Oracle's noticed deposition of Mr. Ravin. Oracle immediately notified Defendants that this effort was unfair to Oracle, was unjustified under the law, and that Mr. Ravin's prior claim that he had health issues argued for securing his full and complete testimony should he become incapacitated, as did the potential inability to be subpoenaed for trial. Based on this, Oracle suggested that the parties jointly ask the Court to order Mr. Ravin to appear for deposition for 2 days -- which would allow for each party's full questioning of this important witness. However if Defendants refused this logical solution, Oracle offered up one of its seven hours to Defendant for cross examination (though it reserved the right to do re-direct). Defendants rejected both of Oracle's proposals, claiming only that Mr. Ravin's health issues somehow justified their eleventh hour usurpation of half the time allotted for Oracle's properly noticed deposition.

Under Rule 30 of the Federal Rules of Civil Procedure, Oracle's properly noticed deposition of Mr. Ravin entitles Oracle to 7 hours of his testimony. Nothing in the Federal Rules imposes the limitation suggested by Mr. Ravin's counsel that all parties to a litigation are limited to a joint deposition of a third party and less than 7 hours each for examination. The currently scheduled deposition of Mr. Ravin is the deposition Oracle properly noticed and served and which issued out the District of Nevada. Technically, this Court doesn't have jurisdiction to change that deposition – Mr. Ravin's counsel would have to go into the District of Nevada to get a protective order to alter the deposition (though there is no need to do so because Oracle does not seek more than its allowed 7 hours for that deposition). However, because Mr. Ravin's counsel agreed to accept service of Defendants' subpoena – which was issued out of the Northern District of California – this Court can address how to secure Defendants the deposition time they want under their subpoena. If Mr. Ravin refuses to appear for Defendants' deposition, Defendants' remedy is to compel Mr. Ravin's appearance – not attempt to take half of the 7 hours Oracle is entitled to under Rule 30. As it did to Defendants, Oracle suggests that this Court order Mr. Ravin to appear for Defendants' deposition – just not on the day of Oracle's previously scheduled and properly noticed and accepted deposition.

Any other result is simply unfair to Oracle and rewards Defendants' (and perhaps, Mr. Ravin's) attempt to game the discovery system. Oracle has evidence that Defendants could and did contact their former officer repeatedly in connection with this litigation and in connection with the attempted sale of TomorrowNow by Defendants. They could have noticed his deposition at any point. Instead, they waited until after Oracle secured his deposition date and then either worked with or acceded to Mr. Ravin's counsel's request to limit Oracle's time with Mr. Ravin to 4 hours. Whether in concert with Mr. Ravin's attorney or acting alone, Defendants should not be allowed to usurp Oracle's legitimate attempts to obtain this important discovery.

**b.    Defendants' Position**

Both sides have served subpoenas on third party witness Seth Ravin. Plaintiffs' subpoena was served first, in the District of Nevada; Defendants' was served second, in the Northern District of California. Counsel for Mr. Ravin has informed Defendants that Mr. Ravin will

21

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

appear for one 7 hour deposition on May 21, 2009. Mr. Ravin's counsel has advised that due to health concerns, Mr. Ravin is not available before this date and has agreed to only one day for the deposition. Plaintiffs contend that because they served their subpoena first, this day of deposition should be completely reserved for Plaintiffs' questioning only and that if Defendants want to depose Mr. Ravin, then they need to work with Mr. Ravin's counsel to secure an additional deposition date. In the interest of reaching a compromise, however, Plaintiffs agreed to reserve one hour for Defendants' cross examination of Mr. Ravin and reserve the right for any re-examination of Mr. Ravin after Defendants' cross examination, or stated that they would ask the Court to order Mr. Ravin to appear for deposition for two days. Defendants contend that it is irrelevant who subpoenaed Mr. Ravin first, noting that both sides have the right to seek deposition discovery of Mr. Ravin. Defendants have asked Mr. Ravin's counsel whether Mr. Ravin was willing to appear for a second deposition day and he declined. Given Mr. Ravin's refusal to appear for a second day, his status as a non-party, and his medical concerns, Defendants believe that equally splitting the 7 hours of deposition time between the parties is a fair and appropriate resolution.

**8.      Defendants' Insurance Carriers' Access to Documents Covered Under the Stipulated Protective Order.**

The Parties had previously negotiated and the Court had provided guidance regarding a modification to the stipulated protective order to permit Defendants' insurance carriers access to information designated by Plaintiffs as Confidential or Highly Confidential. While Defendants and their insurance carriers have attempted to work within the constraints of the previously discussed modification, Defendants believe that further modification is needed to permit the carriers to appropriately participate and discharge their duties with respect to Plaintiffs' claims against Defendants in this case. As a result, Defendants intend to propose a specific further modification to Plaintiffs, and thereafter to the Court, for the Court's approval and/or additional guidance.

Oracle has not yet seen, or been provided with, the details about this request to modify the Court's order but notes that, despite all the purported urgency that Defendants asserted to justify

the order they got allowing a single representative from each of their carriers access to Oracle confidential and highly confidential information, Defendants have yet to identify or provide the requisite attestations from a single representative that would allow access to Oracle's confidential materials.

9. **Former Employee Access to Information in Preparation for Deposition Under the Stipulated Protective Order**

The Parties also seek the Court's guidance in connection with whether former employees should be treated as standard third parties under the Protective Order. This issue arose in connection with Oracle's deposition of former TomorrowNow employee, Owen O'Neil. Mr. O'Neil, unlike all other former TomorrowNow employees who Oracle has deposed, did not agree to cooperate with TomorrowNow's counsel in scheduling the deposition. In an abundance of caution, Oracle reminded Defendants that it intended to use TomorrowNow documents at Mr. O'Neil's deposition and sought confirmation that Paragraph 11 of the Protective Order, requiring advance delivery of potential exhibits, would not apply to Mr. O'Neil. Defendants insisted that Oracle deliver a list of potential exhibits to Defendants ahead of the deposition, and based on Defendants' insistence, Oracle complied with that request, with both parties reserving their rights on this issue.

a. **Oracle's Position**

Oracle contends that this is an improper invasion of Oracle's work product deposition strategy. Further, Oracle does not believe that this procedure is consistent with the purpose of the Protective Order. Oracle contends that the third party notice procedures were meant to give a party advance notice when its confidential information was going to be made available to a true third party, who would not have otherwise ever had access. TomorrowNow's former employees are not such true third parties. Almost every TomorrowNow employee is now a former employee because of the wind-down, and other than for Mr. O'Neil, Oracle has been allowed to question all of them with company documents without previewing the documents to Defendants' counsel. Oracle believes that there is no reason here to require any different treatment of employees like

1   Mr. O'Neil other than the strategic purpose of trying to get a preview of Oracle's deposition

2   strategy.

3          Oracle believes that work product should not be invaded lightly, and indeed, should only

4   be disclosed if Defendants show a "substantial need for the materials to prepare [their] case and

5   cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. Rule of

6   Civ. Proc. 26(b)(3)(A)(ii).  Defendants do not have a substantial need to peek into Oracle's

7   deposition preparation strategy, by requiring a pre-deposition exhibit list for former employees,

8   and Defendants can, without any undue hardship, review the same set of documents for these

9   former employees that Oracle has access to.

10          Accordingly, if Defendants do not agree prior to the hearing, Oracle will seek the Court's

11  guidance as to the Protective Order provision related to third party access to confidential

12  information.

13                 **b.        Defendants' Position**

14          To date, Owen O'Neil is the only former employee of Defendants who has not cooperated

15  in scheduling their deposition.  In fact, as the Court may recall, Defendants' counsel made several

16  attempts by phone, email and finally—at the Court's suggestion—by certified mail.  All of those

17  efforts failed and Oracle was required to subpoena Mr. O'Neil.  Defendants position on this issue

18  is very simple, if a former employee of Defendants fails to cooperate in the scheduling of his

19  deposition and is required to be subpoenaed like any other third party, then that former employee

20  is in fact a third party for the purposes of the Protective Order.  Oracle has in the past, and

21  continues to, directly communicate with several of Defendants' former employees without first

22  advising Defendants of that communication.  Thus, Oracle should not be permitted to treat

23  Defendants' former employees as third parties for some purposes and not for others.

24                 **10.       Defendants' Compliance with Judge Legge's Third Order**

25          In the Report and Recommendations Re: Discovery Hearing No. 3 (*see* pp. 7-10), Judge

26  Legge ruled that Defendants be compelled to supplement their responses to Oracle's First Set of

27  Interrogatories Nos. 10, 11 and 16 and Oracle USA's First Set of Interrogatories No. 4.  While

28  Judge Legge did not set a date certain in his ruling, Oracle believes that, given almost a full year

1  has now passed, Defendants should certainly be required to comply with this Order now.

2  Defendants have agreed to provide supplemental responses on or before April 15, 2009, which

3  Oracle will review to determine whether these long-awaited responses comply with Judge

4  Legge's ruling.

5       **11.    Stipulated [Proposed] Order on Expert Discovery**

6       The Parties filed a Stipulation and [Proposed] Order Regarding Expert Discovery on

7  February 11, 2009, which the Court has not yet signed.  For the Court's convenience, a copy of

8  the proposed order is attached as Exhibit B.

9       **12.    Anticipated Motions to Compel**

10           **a.    Oracle's Anticipated Motions to Compel**

11               **(i) Further Data Warehouse Productions and Related Oracle Software**

12       As described in Sections 2. a. (i) and (ii) above, Oracle requested on February 9 that

13  Defendants produce the Data Warehouse servers for the post-litigation time period, because it

14  shows Defendants continuing course of infringement even after Oracle filed this lawsuit.  Oracle

15  has also requested that Defendants produce Oracle software and support materials on Defendants'

16  systems that it had previously tagged for a metadata production only, as well as, the large library

17  of Oracle software CDs that Defendants collected and set up at their place of business.  Oracle

18  contends that this evidence is not only highly relevant to liability issues of infringement,

19  knowledge, and access, but also is highly relevant to Oracle's punitive damages claim.

20  Defendants have refused thus far to produce the post-litigation Data Warehouse data, and recently

21  offered an inspection proposal with regard to the requested Oracle software that Oracle will

22  consider.  Oracle would like to set a motion to compel hearing on at least the post-litigation Data

23  Warehouse data, and may seek other relief, including but not limited to seeking an order to

24  impound some or all of these software copies under 17 U.S.C. § 503, or a motion to compel.

25               **(ii) Further Siebel, EBS, Hyperion and Retek Discovery**

26       As described above in Section 3, Oracle has received foundational discovery on Siebel

27  products that has confirmed that Defendants' business model for Siebel products was just as

28  infringing, and involved as much rampant computer fraud, as their PeopleSoft and J.D. Edwards

business models. Further, Oracle has not received the revised declaration regarding Defendants'

conduct with regard to Oracle's EBS, Hyperion and Retek software lines, though it was ordered

following the last Discovery Conference. Oracle is currently evaluating how to proceed with

respect to each of these product lines, including whether to move to compel further information,

in the face of the closing discovery cut-off, and Defendants' continued stonewalling in turning

over this discovery. Oracle intends to move for a continuance before Judge Hamilton to allow

discovery and amendment related to these claims unless the parties can agree on an extension.

Alternatively, Oracle is considering the filing of a separate lawsuit to address these issues.

### (iii) Inadequate 30b6 testimony

Oracle is also deeply concerned about SAP's failure to properly prepare its designated

30(b)(6) witnesses – particularly on the subjects of TomorrowNow's acquisition by SAP and the

purported issuance and follow up by the SAP board of a directive to remove infringing Oracle-

owned IP from TomorrowNow. The designated witnesses had done little to nothing to investigate

these topics, frustrating Oracle's ability to obtain proper discovery of these critical topics and

wasting further precious hours of Oracle's allocated deposition time. Absent further more-

prepared testimony from Defendants and agreement that such testimony will not count against

Oracle's deposition hours, Oracle will require Court intervention to get such relief and to compel

this critical testimony.

### b. Defendants' Anticipated Motions to Compel

### (i) Copyright Issues

Defendants have been meeting and conferring with Oracle for many months but some key

copyright related discovery issues remain unresolved. In light of the short amount of time

remaining for discovery and discovery motion practice, Defendants intend to ask the Court at the

March 31 discovery conference to set a date for a hearing on Defendants' motion to compel.

Defendants anticipate that the motion will address the following: (a) Oracle's failure to

sufficiently identify the material allegedly covered by each registration and ownership of same; (b)

Oracle's failure to sufficiently identify the preexisting materials underlying each derivative work;

(c) Oracle's refusal to produce copies of allegedly infringed Registered Works and associated

software activation codes; (d) production of documents sufficient to identify the individuals who created the materials allegedly covered by the registrations and work for hire agreements it contends exist; and (e) additional documents and testimony from Todd Adler, Oracle's designated Rule 30(b)(6) witness who signed several of the registration applications at issue but was precluded under a claim of privilege from testifying fully regarding statements he made in those applications and on his investigation prior to making those statements.

### (ii) Pre-2005 Documents

Defendants remain concerned about Oracle's continuing failure to produce relevant documents and information that pre-date its acquisition of PeopleSoft. At the outset of the case, the Parties agreed to limit the discovery time frame to January 1, 2004 through the filing of the litigation. At Oracle's request, the Parties subsequently agreed to expand the timeframe to January 1, 2002 through October 31, 2008. Thus far, however, Oracle has largely failed to produce data for the pre-2005 time period. This includes the customer-specific financial reports discussed above, financial documents, customer contract files, and copyright related documents. With regard to custodian documents, while Oracle has now agreed to produce documents it previously claimed were inaccessible, disputes remain over the production schedule and it appears that there may be preservation issues for some custodians. Defendants continue to meet and confer with Oracle on these issues. If the issues are not resolved, Defendants anticipate filing a motion to compel and/or a motion to preclude Oracle from seeking some or all damages for the pre-2005 time period.

DATED: March 24, 2009                                JONES DAY


By: _____/s/ Jason McDonell_____
                              Jason McDonell
                         Attorneys for Defendants
                    SAP AG, SAP AMERICA, INC.,
                      and TOMORROWNOW, INC.

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

DATED:  March 24, 2009

BINGHAM McCUTCHEN LLP


By: _____/s/ Zachary J. Alinder_____
Zachary J. Alinder
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited