Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted Pro Hac Vice)
Joshua L. Fuchs (Admitted Pro Hac Vice)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>SAP AG, et al.,<br><br>            Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**AMENDED DECLARATION OF ELAINE WALLACE IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY RELEVANT TO PLAINTIFFS' COPYRIGHT CLAIMS [REVISED ¶ 13, EXH. F]**<br><br>Date: May 19, 2009<br>Time: TBD<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

SFI-608114v1

I, ELAINE WALLACE, declare:

I am an associate with the law firm of Jones Day and counsel for Defendants in the above-captioned matter. I make this declaration based on personal knowledge and, if called upon to do so, could testify competently thereto.

1. Attached hereto as Exhibit A is a chart, created at my direction, summarizing certain information contained in the eighty-three copyright registrations (the "Registered Works") identified by Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Ltd ("Oracle" or "Plaintiffs") in the Third Amended Complaint, which is the current operative complaint. For each Registered Work, the chart lists: (a) the registration number; (b) the title of the work; (c) the date of first publication; (d) the registration date; (e) whether the work is a derivative work and, if so, the identifying information for preexisting materials. The chart also indicates whether Oracle has produced a copy of the Registered Work or not.

2. I have personally reviewed the registrations for each Registered Work. Fifty-six of the Registered Works purport to consist of software, fifteen of software and user documentation, and twelve of user documentation alone.

3. On July 26, 2007, Defendants served their First Set of Document Requests to Plaintiffs. Request for Production ("RFP") No. 55 asked for "[a]ll documents relating to ownership of the Registered Works, including but not limited to, Documents concerning licensing, assignment, transfer, or conveyance of any rights in the Registered Works. RFP No. 63 asked for "[c]omplete copies of each of the Registered Works." Oracle responded to RFP Nos. 55 and 63 on September 14, 2007. A true and correct copy of Oracle's response is attached hereto as Exhibit B.

4. On January 28, 2008, Defendants moved to compel production of the Registered Works, including the current development environments, by letter brief submitted to Special Discovery Master, Judge Legge. The letter brief is designated "Confidential" pursuant to the protective order in the case. To avoid filing an unnecessary sealing motion, Defendants have not attached it here. However, Defendants will promptly provide a copy, should the Court request one.

1        5.      Oracle responded to Defendants' motion on February 7, 2008, confirming its agreement to produce Registered Works other than the current development environments. Oracle's letter brief is also designated "Confidential" pursuant to the protective order in the case. To avoid filing an unnecessary sealing motion, Defendants have not attached it here. However, Defendants will promptly provide a copy, should the Court request one.

       6.      Subsequent to Judge Legge's ruling on the motion to compel, Oracle identified additional Registered Works at issue. Oracle's position has been the same with respect to those Registered Works. For example, at the March 31, 2009 discovery conference and in an April 8, 2009 telephone meet and confer, Mr. Alinder, Oracle's counsel, confirmed Oracle's agreement to produce copies of the Registered Works.

       7.      Attached hereto as Exhibit C is a true and correct copy of an excerpt from the transcript of the February 13, 2008 hearing with Judge Legge on Defendants' motion to compel production of, among other things, copies of the Registered Works.

       8.      Attached hereto as Exhibit D is a true and correct copy of an excerpt from the Special Discovery Master's February 22, 2008 Report and Recommendations Re: Discovery Hearing No. 1.

       9.      On April 8, 2009, I sent an email to Oracle's counsel summarizing Oracle's past position regarding production of the current development environments and requesting a meet and confer prior to filing this motion to compel to discuss whether Oracle's position remains the same. I received a response the same day from Mr. Alinder expressing concern that this was an "attempt to re-litigate an issue decided by Judge Legge over a year ago ..." and asking why the information is relevant to the motion to compel. I responded to Mr. Alinder on April 9, explaining Defendants' position that it is relevant to Defendants' request that Oracle produce copies of all allegedly infringed material. I did not receive any further response from Mr. Alinder.

       10.     Attached hereto as Exhibit E is a true and correct copy of Defendants' First Notice of Deposition of Plaintiff Oracle International Corporation Pursuant to federal Rule of Civil Procedure 30(b)(6), served on June 10, 2008.

1      11.     Oracle objected to Topic No. 7 primarily on the ground that it purportedly called for expert testimony. Defendants disagreed but agreed to provide Oracle some examples of the kinds of questions Defendants anticipated asking in order to facilitate further discussion. Defendants plan to pursue this issue once the issue of discovery or preexisting and new material in derivative works is decided by this Motion.

12.     Defendants' counsel met and conferred with Oracle's counsel numerous times regarding Topics 5, 6, and 7 in the Rule 30(b)(6) deposition notice. Oracle objected to Topics 5 and 6 on several grounds, but primarily on the ground that they were purportedly more appropriate for interrogatory responses than deposition testimony. Defendants agreed to accept Oracle's supplemental response to Interrogatory No. 13 in lieu of deposition testimony, while reserving their rights to seek testimony if the supplemental response proved inadequate.

13.     Attached hereto as Exhibit F is a true and correct copy of Plaintiffs' First Supplemental Responses and Objections to Defendant TomorrowNow, Inc.'s Interrogatory No. 13 (the "Supplemental Response"). Oracle had designated the Supplemental Response "Highly Confidential" but agreed on April 15, 2009 that Defendants may file it publicly if certain information (not relevant to Defendants' motion) was redacted. Defendants have redacted that information.

14.     Oracle served the Supplemental Response on December 5, 2008. On December 11, I sent an email to Mr. Alinder explaining that Defendants were still evaluating the Supplemental Response but that it appeared to not contain any information responsive to Topic No. 6 in Defendants Rule 30(b)(6) notice to OIC. Mr. Alinder responded on December 19, stating Oracle's position that the information responsive to Topic No. 6 is contained in documents referenced in the Supplemental Response and in the Customer Connection databases Oracle planned to produce. Mr. Alinder also offered to provide a limited further supplementation of the response. On January 9, 2009, I emailed Mr. Alinder again to inform him that we had reviewed the documents referenced in the Supplemental Response and that we did not believe it was possible for us to determine the responsive information from them. We then scheduled a meet and confer to discuss the issue further.

15. On January 16, 2009, Mr. Alinder and I met and conferred by telephone regarding the Supplemental Response. I subsequently sent Mr. Alinder an email requesting confirmation of what I believed were Oracle's positions. Mr. Alinder responded by email on February 13 clarifying Oracle's positions, including providing a response to my question as to whether derivative works based on prior releases of the same work were based on *all* such prior releases. A true and correct copy of Mr. Alinder's response is attached hereto as Exhibit G.

16. Defendants have tried unsuccessfully to access the Customer Connection databases produced by Oracle and believe that the databases have been produced in a form that is inaccessible. Defendants' counsel have discussed the access problem with Oracle's counsel and provided information regarding the error messages received when access is attempted. On the date of filing of this motion, Oracle's counsel provided additional information relevant to the access issue, which Defendants are evaluating. Defendants will continue to meet and confer with Oracle to try to resolve the access issue.

17. Defendants first asked the original Plaintiffs to produce inter-company agreements on July 26, 2007, the day fact discovery opened. The original Plaintiffs agreed, but as of the fall of 2007, had not done so. Defendants raised the original Plaintiffs' failure to produce the inter-company agreements, as well as other relevant documents, in meet and confer communications in October, November and December 2007, and specifically put the original Plaintiffs on notice that Defendants may raise legal challenges based on the inter-company agreements. On January 4, 2008, the original Plaintiffs again said that they would produce the requested documents but by the end of January, still had not done so. On January 28, 2008, Defendants raised the issue in a motion to compel submitted to Judge Legge. On February 25, 2008, some seven months after Defendants first requested them, Plaintiffs finally produced a few inter-company agreements. Believing the original Plaintiffs' production to be incomplete, Defendants continued to meet and confer on the issue. On July 22, 2008, a full year after Defendants requested them, the original Plaintiffs produced several additional inter-company agreements. Defendants then asked the original Plaintiffs to confirm that they had produced all responsive inter-company agreements. The original Plaintiffs initially refused to give a straightforward answer to that question. On

1  August 27, 2008, the original Plaintiffs admitted "that there may be some additional responsive
2  documents related to inter-company agreements." The very next day, August 28, 2008, the
3  original Plaintiffs informed Defendants that they planned to seek leave to amend again to make
4  "some adjustment to the Plaintiff entities currently described in the Second Amended Complaint"
5  as a result of their "discovery" of additional documents relating to copyright ownership. Oracle
6  did amend its complaint to substitute a new roster of Plaintiffs. Judge Hamilton subsequently
7  dismissed some of the copyright Plaintiffs based on information contained in Oracle's own
8  documents. Oracle has continued to provide inter-company agreements since then, including in
9  the days before the filing of the present motion.

10  18. On March 13, 2009, I sent Mr. Alinder an email requesting production of
11  documents relating to PeopleSoft's acquisition of Vantive Corporation. Mr. Alinder responded
12  on March 17 that Oracle was looking into the issue. I followed up with Mr. Alinder by email on
13  April 9, requesting to know the status on the Vantive issue and inquiring whether Oracle had
14  investigated this and other PeopleSoft acquisitions (such as Red Pepper Software) in responding
15  to Defendants' discovery requests. Mr. Alinder responded the same day, stating Oracle's position
16  that it was not required to search for such documents because of the presumption of validity.

17  19. I have reviewed the registrations for each derivative Registered Work to determine
18  the content of the response to question No. 6(b) ("Material Added to This Work. Give a brief
19  general statement of the material that has been added to this work and in which copyright is
20  claimed.") For the vast majority of Registered Works, the response is limited to generic
21  descriptions such as "revisions, additional code and text of computer program," "new and revised
22  software code," and other similar descriptions. As an example, a true and correct copy of the
23  registration TX 6-541-029 (Initial release of JD Edwards World A7.3) is attached hereto as
24  Exhibit H.

25  20. I have reviewed the registrations for the initial releases, code changes, ESUs,
26  cumulative updates, and current development environments for JD Edwards EnterpriseOne Xe,
27  JD Edwards EnterpriseOne 8.0, JD Edwards EnterpriseOne 8.9, JD EnterpriseOne 8.10, JD
28  EnterpriseOne 8.11, JD EnterpriseOne 8.11 SP1, JD EnterpriseOne 8.12, JD Edwards World

A7.3, JD Edwards World A8.1, and JD Edwards World A9.1. In each case, in response to question No. 5 on the registration ("Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?"), Oracle answered: "No." As an example, a true and correct copy of the registration TX 6-545-421 (Cumulative Update 6 for JD Edwards World A8.1) is attached hereto as Exhibit I.

21. Four of the registrations for the PeopleSoft HRMS line of products contain Continuation Sheets listing modules apparently in response to question No. 6 on the registration. However, only one of the Continuation Sheets indicates that some of the modules are new modules (PeopleSoft HRMS 8.8).

22. Attached hereto as Exhibits J and K are true and correct copies of registrations TX 4-792-577 (PeopleSoft HRMS 7.0) and TX 4-792-575 (PeopleSoft HRMS 7.5). In each case, in response to question No. 5 on the registration ("Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?"), PeopleSoft answered: "No."

23. A true and correct copy of registration TX 5-456-777 (PeopleSoft 8 Customer Relationship Management) is attached hereto as Exhibit L. In response to question No. 6(a), PeopleSoft did not indicate in the registration that it is a derivative work. In response to question No. 6(b), however, PeopleSoft responded "new software code" and listed certain modules in a Continuation Sheet for question No. 6. Almost one year later, on July 22, 2002, PeopleSoft appears to have submitted a new copy of the Continuation Sheet, listing the same modules, but doesnot appear to have amended the registration to indicate that it was a derivative work.

24. Attached hereto as Exhibit M is a true and correct copy of an excerpt from the Form 10K filed by PeopleSoft on March 25, 2002.

25. Attached hereto as Exhibit N is a true and correct copy of an excerpt of a publicly available document entitled PeopleSoft Customer1 Implementation, published in 2002 by PeopleSoft and Sun MicroSystems.

26. Attached hereto as Exhibit O is a true and correct copy of a March 19, 2003 article by InfoWorld.com, available at http://www.infoworld.com/d/applications/peoplesoft-preps-new-supply-chain-software-668.

27. Attached hereto as Exhibit P is a true and correct copy of an article by Manufacturing Business Technology magazine, dated May 1, 2003 and available at http://www.mbtmag.com/article/CA297244.html.

28. Attached hereto as Exhibit Q is a true and correct copy of excerpts of a November 18, 2008 letter from John Polito, counsel for Oracle, to Jane Froyd, counsel for Defendants.

29. Attached hereto as Exhibit R is a true and correct copy of an excerpt from a transcript of the March 31, 2009 discovery conference in this matter.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 17th day of April, 2009 in San Francisco, California.

/s/ Elaine Wallace
Elaine Wallace