BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*, | CASE NO. 07-CV-01658 PJH (EDL) |
| Plaintiffs, | **ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL FURTHER COPYRIGHT INFORMATION** |
| v. | |
| SAP AG, *et al.*, | |
| Defendants. | Date: May 19, 2009 |
| | Time: 2 p.m. |
| | Place: Courtroom E, 15th Floor |
| | Judge: Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  THE COURT SHOULD DENY SAP'S MOTION TO COMPEL ................................. 3

A.   SAP's Motion For Further Software Is Moot And Its Request For Current
     Development Environments Was Already Denied ................................................ 3

     1.   Oracle Has Produced The Relevant Software ............................................. 3

     2.   The Court Should Not Modify Judge Legge's Ruling That Oracle
          Need Not Produce The Current Development Environments ...................... 4

     3.   SAP's Activation Code Request Has Also Been Resolved ......................... 6

B.   SAP's Derivative Work Argument Misstates The Law And The Facts ................ 6

     1.   SAP's Derivative Work Argument Is Wrong On the Law ......................... 6

     2.   Even So, Oracle Already Produced Detailed Information
          Concerning Derivative Works, Including Interrogatory Responses
          and Documents ...................................................................................... 10

          a.   Oracle's Response to Interrogatory No. 13 ................................. 10

          b.   Oracle Also Produced Detailed Release Notes ........................... 11

     3.   Oracle's Customer Connection Databases ............................................... 12

C.   The Copyright Presumption Combined With Documents Already
     Produced More Than Satisfy Oracle's Burden On Chain Of Title ..................... 13

     1.   The Copyright Presumption Prevents SAP's Fishing Expedition .......... 14

     2.   SAP's Assignment Argument Is Misleading And Ignores the Chain
          of Title and Recordation of Transfer Documents Produced .................... 16

     3.   Despite the Presumption, Oracle Already Produced Detailed Chain
          of Title Documentation, Along with Supportive Ownership and
          Authorship Information ........................................................................... 18

     4.   SAP Has Not Rebutted The Presumption; Its Request for
          Acquisition Documents Should Be Denied ............................................. 18

D.   In Violation of the Local Rules and the Federal Rules of Civil Procedure,
     SAP Seeks Relief Beyond This Court's Jurisdiction And As To Items It
     Failed to Raise In Meet and Confer ................................................................. 19

III. CONCLUSION ................................................................................................. 20

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL FURTHER COPYRIGHT INFORMATION

CASES

*Apple Computer Corp. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994).................................................................................. 7, 8

*Computer Associates Int'l, Inc. v. Altai, Inc.*,
   775 F.Supp. 544 (E.D.N.Y. 1991), *aff'd in part and vacated on other grounds*, 982
   F.2d 692 (2nd Cir. 1992)................................................................................... 7, 8, 9

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir.1990)..................................................................................... 17

*Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*,
   103 F.3d 1007 (D.C. Cir. 1997) ............................................................................... 14

*In re Napster, Inc. Copyright Litigation*,
   2004 U.S. Dist. LEXIS 7236 (N.D. Cal. 2004)........................................................ 17

*Kramer v. Thomas*,
   No. CV-05-8381, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 26, 2006).................. 17, 18

*Lifetime Homes, Inc. v. Residential Development Corp.*,
   510 F. Supp. 2d 794 (M.D. Fla. 2007) .................................................................... 16

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
   684 F.2d 821 (11th Cir. 1982).................................................................................. 14

*Pennar Software Corp. v. Fortune 500 Systems, Ltd.*,
   2001 U.S. Dist. LEXIS 18432 (2001) ................................................................. 19, 20

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) ....................................................................... 15

*Richmond Homes Management, Inc. v. Raintree, Inc.*,
   862 F.Supp. 1517 (W.D. Va. 1994) ......................................................................... 8, 9

*Rivera v. Nibco, Inc.*,
   364 F.3d 1057 (9th Cir. 2004).................................................................................. 19

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989).............................................................................. 18, 19

*Streetwise Maps, Inc. v. Vandam, Inc.*,
   159 F.3d 739 (2d Cir. 1998)..................................................................................... 7, 8

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL FURTHER COPYRIGHT INFORMATION

*Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.,*
    55 F.Supp.2d 1113 (D. Nev. 1999) ................................................................. 15, 16

*Xoom, Inc. v. Imageline, Inc.,*
    323 F.3d 279 (4th Cir. 2003) .......................................................................... 7, 8

*Yash Raj Films v. Kumar,*
    2006 U.S. Dist. LEXIS 82008 (E.D.N.Y. 2006) ............................................. 14, 15


**STATUTES**

17 U.S.C. 204(a) ...................................................................................................... 17

17 U.S.C. 205(c) ...................................................................................................... 17

17 U.S.C. § 103(b) ................................................................................................... 7, 8

17 U.S.C. § 106(2) ................................................................................................... 9

17 U.S.C. § 410(c) ................................................................................................... 14, 15

17 U.S.C. § 411 ........................................................................................................ 16

PRO IP Act of 2008, Pub. L. 110-403 § 101(a), 122 Stat. 4256, 4259-60 (2008)....................... 15


**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 37.......................................................................... 19, 20

N.D. Cal. Civ. Local Rule 37-1................................................................................ 20

U.S. Const. Art. I, sec. 8, cl. 8................................................................................. 9

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL FURTHER COPYRIGHT INFORMATION

## I.    INTRODUCTION

By their Motion to Compel Further Copyright Information, Defendants SAP AG, SAP America and TomorrowNow (collectively, "SAP") raise one genuine dispute and a host of improper ones.  In the real dispute, SAP asks this Court to impose an enormous burden on Plaintiffs Oracle USA, Inc., Oracle International Corporation and Oracle EMEA Limited ("Oracle") for no good reason.  The motion purportedly seeks proof that Oracle owns the copyright-protected intellectual property that SAP improperly took from Oracle's computer systems and customers in an effort to use Oracle's own IP to compete with Oracle.  In truth, SAP knows better than anyone that Oracle owns J.D. Edwards and PeopleSoft, including the software those companies developed over the years and the vast number of programs, patches, fixes, updates and knowledge-based documents that SAP illegally downloaded and otherwise acquired.  SAP precisely timed its acquisition of TomorrowNow to disrupt Oracle's acquisition of PeopleSoft (as detailed in Oracle's operative Complaint and confirmed in discovery) specifically to blunt the competitive impact of Oracle's acquisition of that copyright-protected IP.  SAP's motion ignores these facts.  Instead, it insists that a search for scriveners errors or other legal technicalities regarding Oracle's copyright registrations justifies enormously burdensome and unnecessary discovery into areas that are not in dispute, and that the law rules off limits without proof that SAP fails to offer.

Beyond this one actual dispute, SAP has loaded its motion with subjects that simply do not belong in this, or any, motion to compel.  Specifically, SAP seeks to compel discovery that Oracle has already produced, that SAP has already been denied, and that SAP never requested or met and conferred about before filing its motion, and that cannot be granted in this context.

SAP raises six issues in its motion:

The first issue is whether Oracle should have to produce the software on which it relies in its Complaint.  That issue is moot because Oracle has already done so.  In fact, as SAP admits, Oracle has always agreed to produce that software and, because of the volume involved, has been doing so on a rolling basis.

1

Next, without meeting and conferring and contrary to a prior discovery ruling, SAP seeks further discovery regarding Oracle's current development environments. Regardless, this issue was decided by Judge Legge in Oracle's favor, was not appealed by SAP, and was not timely raised to this Court or to Oracle as part of any further meet and confer. This issue is also moot because the software identified in SAP's motion as the alternative to further current development environment discovery has been produced as described above.

Next, SAP seeks to compel production of license codes to the software Oracle has produced. This issue is moot because Oracle has already done so.

Only then does SAP get to the one issue genuinely in dispute – discovery concerning preexisting and derivative works. SAP seeks to compel Oracle to produce a multitude of additional historical software releases and related documentation and to further supplement a previously agreed-upon 74-page interrogatory response relating to any preexisting software that underlies the works on which Oracle relies in its Complaint. This production is unnecessary because the law, contrary to what SAP says, clearly provides that such materials and information are neither necessary nor relevant to the case. Moreover, the information that SAP seems to request would be exceedingly burdensome to produce. In a year-long, fruitless effort to appease SAP and forestall this motion, Oracle has already produced voluminous materials on this issue – far more than the law requires. This motion offers no basis for further production.

In a related request, SAP seeks to compel Oracle to provide SAP with assistance in restoring and operating Oracle's Customer Connection databases previously produced by Oracle to SAP. In response to SAP's false claim that Oracle had produced the Customer Connection Databases in an unusable format, Oracle went to great lengths to provide SAP with detailed instructions for restoring these databases. Following its receipt of Oracle's detailed instructions, SAP has not requested any further technical assistance from Oracle, so this issue is also resolved.

Finally, SAP seeks to compel Oracle to produce a mountain of additional, and irrelevant documents purportedly in relation to Oracle's ownership or "chain of title" to the relevant copyrights, including burdensome discovery concerning acquisitions of software

companies over a decade ago. This production is unnecessary because the copyright presumption and the chain of title documents that Oracle has already produced more than satisfy any burden that Oracle has here.

In short, each of SAP's issues is either moot, or Oracle has already produced more discovery for that issue than the law requires. The Court should deny SAP's motion in its entirety.

## II. THE COURT SHOULD DENY SAP'S MOTION TO COMPEL

### A. SAP's Motion For Further Software Is Moot And Its Request For Current Development Environments Was Already Denied

#### 1. Oracle Has Produced The Relevant Software

SAP's first complaint is that it wants a date certain for production of software that Oracle has already agreed to produce. *See* Defendants' Motion to Compel Discovery Relevant to Plaintiffs' Copyright Claims ("Motion") at 7.

As SAP concedes, Oracle has consistently stated that it would produce the software underlying the Registered Works. *See* Amended Declaration of Elaine Wallace In Support of Defendants' Motion to Compel Discovery Relevant to Plaintiffs' Copyright Claims ("Wallace Decl."), ¶ 6. Further, as SAP knows, Oracle produced much of this software long ago. However, in the course of this rather substantial production, certain software was produced incorrectly and there were delays collecting old and subsequently-added software versions. *See* Declaration of Zachary J. Alinder In Support of Oracle's Opposition to Defendants' Motion to Compel Further Copyright Information ("Alinder Decl."), ¶ 3.

Further, there is significant burden associated with production of these software releases, particularly given that many of them are legacy software versions no longer generally available for sale to customers. *See id.* Beyond the extensive investigation required for production of the legacy software, the productions themselves are substantial in size. Just the software currently in the Third Amended Complaint required production of over 80 software CDs, DVDs, and Tape media, requiring specialized equipment to access or copy. *See id.*, ¶ 3.

As discussed in the March 24, 2009 Discovery Conference Statement, SAP

recently raised the concern that it believed that Oracle had not produced all of the relevant software. *See id.*, ¶ 4; *see also* March 24th Joint Discovery Conference Statement, Docket No. 291, at 6:13-7:2. The Parties met and conferred a number of times. *See* Wallace Decl., ¶ 6. In an effort to expedite resolution, Oracle requested that SAP provide a list of the specific software that SAP believed to be outstanding to confirm an agreed list of software to be produced. *See* Alinder Decl., ¶ 4, Ex. A. Even though SAP's motion now reveals that SAP had already compiled its own list of such software, SAP refused to provide that list during the meet and confer. *See id.*; *see also* Motion at 7 (referring to a purported list of "thirty-one Registered Works Oracle has . . . failed to produce.").

Without assistance from SAP, Oracle undertook to review, trace and confirm the production for each of the 83 Registered Works. *See* Alinder Decl., ¶ 5. Oracle provided SAP with regular updates on the progress of that effort, and provided a rolling production of the outstanding software. *See id.*, Ex. B. Oracle has now produced all of the software, as to which Oracle asserted claims in the Third Amended Complaint, except the current development environments that Judge Legge ruled Oracle did not have to produce. *See id.*, ¶¶ 2 & 5. As a result, SAP's motion on this issue is moot, and would have been moot even sooner had SAP complied with its meet and confer obligations and shared with Oracle the list it provided to the Court of software it believed it had not received.

**2. The Court Should Not Modify Judge Legge's Ruling That Oracle Need Not Produce The Current Development Environments**

SAP contends that Oracle should produce current development environments to the extent that it has not produced the software discussed above. *See* Motion at 8. Current development environments are the up-to-the-minute laboratory versions of certain software applications, including all fixes delivered to customers, that the Oracle software team keeps in a secure environment at Oracle. This appears to be a back-door request to re-litigate an issue that Judge Legge decided over a year ago. Oracle has now produced the software that SAP requested, as discussed above, and SAP's request for further current development environment discovery is moot on the same grounds.

To the extent that SAP seeks to more broadly re-litigate the motion to compel current development environment discovery that it lost 14 months ago, that is improper and should be denied. On February 25, 2008, Judge Legge denied SAP's motion to compel further documents and information related to Oracle's current development environments. That ruling stated: "The Discovery Special Master agrees with Oracle's analysis that the production of the current development environment would be duplicative . . . [and] recommends to the Court that Oracle's production be limited to individual downloads, cumulative updates, and initial releases." Report and Recommendations re: Discovery Hearing No. 1, Docket No. 66, at 8:3-6. SAP did not object to that portion of Judge Legge's ruling, so it is final. *See* Defs.' Objections to Special Master's Report and Recommendations re: Discovery Hearing No. 1, Docket No. 67. Moreover, SAP has never told Oracle or the Court that it would include this issue in its motion, despite describing the scope of its planned copyright motion over the course of at least seven different discovery conference statements and the related hearings before the Court since July 18, 2008. *See* Alinder Decl., ¶ 6.

Instead, SAP waited until April 8, 2009, almost ten days after the last discovery conference, over 14 months after Judge Legge denied its motion, and seven days before filing this motion, to re-raise this issue with Oracle. *See id.*, ¶ 6 & Ex. C. When Oracle asked for the basis for re-litigating this issue, SAP responded: "The relevance of these questions to our motion to compel should be clear given that one of the subjects of the motion (as described in the Joint Discovery Statement and discussed at the March 31 conference) will be Oracle's obligation to produce copies of all software it contends was infringed. We are not required to give you the preview of our motion you request." *See id.*, Ex. E.

SAP now has the software it claimed to need, and nothing has changed since Judge Legge's prior ruling on the current development environments. To the extent that does not fully resolve SAP's request for further current development environment discovery, the Court should deny SAP's request for the second time as irrelevant, duplicative, untimely and for having violated the meet and confer rules.

### 3. SAP's Activation Code Request Has Also Been Resolved

Prior to the last discovery conference, Oracle agreed to provide SAP with access to license codes to access the software that it had produced. *See id.*, ¶ 7, Ex. A. Following the discovery conference, the Parties met and conferred and Oracle directed SAP to a public website where it could access these license codes. *See id.* Further, Oracle offered to provide expert technical assistance should any issues arise with respect to the license codes. *See id.* SAP has not reported any further difficulty obtaining license codes, nor has it taken Oracle up on its offer of technical assistance. *See id.* There is no issue to resolve here either.

### B. SAP's Derivative Work Argument Misstates The Law And The Facts

Through this motion, SAP seeks burdensome discovery concerning ***every*** software release created by PeopleSoft and J.D. Edwards that pre-dates the software versions in Oracle's Third Amended Complaint. *See* Motion at 8-12. SAP has no basis under the law to seek the burdensome derivative and preexisting work discovery that it proposes.[1]

In an effort to avoid burdensome motion practice, and even though it strongly believed it had no obligation to do so, Oracle produced far more derivative work information than SAP required for any legitimate need. Accordingly, even if SAP could find a legal basis for its discovery, any additional information would be unduly burdensome, cumulative, and harassing.

### 1. SAP's Derivative Work Argument Is Wrong On the Law

SAP contends "the scope of Oracle's claim to a given derivative work cannot, as a matter of law, extend beyond the new material contained in that work." *See* Motion at 9 (citing 17 U.S.C. § 103(b)). So, the theory goes, Oracle's copyright registration of one version of its

---

[1] The potential burden of producing documents related to all preexisting software for PeopleSoft and J.D. Edwards, to the extent even possible, would be significant. *See* Alinder Decl., ¶ 3. Depending on scope, it could require production of software and documents many times the volume of the substantial production already undertaken, as described in Section II.A.1.

software registered as a derivative work does not permit Oracle to assert infringement as to any "preexisting material" that appeared in a prior version of the software. *See id.* On that theory, SAP demands that Oracle must "specify for each version [of Oracle's software] what material is new and what was preexisting." Motion at 9.

Not wanting to overload an already robust Complaint with every registered version of every software release that it owns, and which may form some of the code base of later works that SAP infringed, Oracle alleged infringement of certain of the actual versions of software that SAP copied, distributed and stored on its systems. The punch line of SAP's argument is that SAP would seek to be exonerated for its blatant copyright infringement of large portions of Oracle's software code, to the extent that some of the code derives from an earlier software release that is not specifically mentioned in the Complaint. Thus, if Oracle wrote the code for version 1 of the software, then registered version 2 of the same software building off the earlier version, SAP believes that it can get away with its infringement of version 2 to the extent the code overlaps with a prior version. SAP, as a software company itself, should know better.

SAP does not cite a single case in support of this position because it is dead wrong. "[W]hen the same party owns the derivative . . . work plus the underlying elements incorporated therein, its registration of the [derivative work] is 'sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting.'" 2 Melville Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer"), § 7.16[B][2][c] at 7-175 (2009) (quoting *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003)); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 746-47 (2d Cir. 1998) (plaintiff that asserted only derivative registration in subway map could assert infringement of elements appearing in preexisting work).

Courts have applied this basic copyright principle specifically to computer software to reject the argument SAP makes here. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F. Supp. 544, 556 (E.D.N.Y. 1991) (derivative work registration for version 2.1 of computer software enabled copyright owner to pursue claims for infringement of preexisting material from previous version of software it owned and developed), *aff'd in part and vacated on other grounds*, 982 F.2d 693 (2d Cir. 1992); *see also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d

1435, 1447-48 (9th Cir. 1994) (district court erred when it held Section 103(b) prevented

plaintiff from asserting infringement of derivative work where infringed elements were

contained in the underlying work plaintiff also owned).[2]  Here, SAP has offered no reason to

dispute, nor could there be any, that the same party (Oracle) who owns the work at issue in the

Complaint also owns the rights in the prior underlying works.  Accordingly, Oracle's registration

in the derivative works extends to all parts of those works, new or preexisting.  *See id.*

In urging the opposite conclusion, SAP misreads Section 103(b).  Section 103(b)

states the copyright in a derivative work "extends only to the material contributed by the author .

. . ."  17 U.S.C. § 103(b).  This rules applies when the owner of the derivative work differs from

the owner of the underlying work – it has no applicability here where Oracle owns it all.  For

example, Section 103(b) does not categorically exclude preexisting material from protection.

While Section 103(b) does "distinguish[] . . . preexisting material employed in the [derivative]

work" it does so only to clarify that ownership of a derivative work does not necessarily "imply

any exclusive right in the preexisting material."  *See id.*  The rights of the derivative work are

simply "independent of" the rights to that preexisting material.  *See id.*  So the owner of a

derivative work does not, for example, obtain copyrights in elements borrowed from another

author, or from the public domain.  *See, e.g.*, *Apple*, 35 F.3d at 1447; *Altai*, 775 F. Supp. at 556.

But the owner of a registered derivative work may assert infringement of the protectable

elements of a preexisting work that it owns.  *See Apple*, 35 F.3d at 1447; *Altai*, 553 F. Supp. at

556; *see also Xoom*, 323 F.3d at 283-84; *Streetwise*, 159 F.3d at 746-47.

This is "the only sound interpretation" of Section 103(b).[3]  *Richmond Homes*

*Mgmt, Inc. v. Raintree, Inc.*, 862 F.Supp. 1517, 1525 (W.D. Va. 1994) (protectable elements of

---

[2]     For ease of reference, Oracle has provided the Court with highlighted copies of the *Altai* and *Apple* cases as an exhibit.  *See* Alinder Decl., Exs. L & M.

[3]     SAP's additional reliance on Copyright Office Circular 41 (*see* Motion at 9) is inexplicable.  Circular 41 relates only to architectural works.  Insofar as SAP intends to rely on some other Circular, it obviously cannot override the plain terms of the Copyright Act, or the long line of cases rejecting SAP's interpretation of Section 103(b) discussed below.

8

1435, 1447-48 (9th Cir. 1994) (district court erred when it held Section 103(b) prevented

plaintiff from asserting infringement of derivative work where infringed elements were

contained in the underlying work plaintiff also owned).[2]  Here, SAP has offered no reason to

dispute, nor could there be any, that the same party (Oracle) who owns the work at issue in the

Complaint also owns the rights in the prior underlying works.  Accordingly, Oracle's registration

in the derivative works extends to all parts of those works, new or preexisting.  *See id.*

In urging the opposite conclusion, SAP misreads Section 103(b).  Section 103(b)

states the copyright in a derivative work "extends only to the material contributed by the author .

. . ."  17 U.S.C. § 103(b).  This rules applies when the owner of the derivative work differs from

the owner of the underlying work – it has no applicability here where Oracle owns it all.  For

example, Section 103(b) does not categorically exclude preexisting material from protection.

While Section 103(b) does "distinguish[] . . . preexisting material employed in the [derivative]

work" it does so only to clarify that ownership of a derivative work does not necessarily "imply

any exclusive right in the preexisting material."  *See id.*  The rights of the derivative work are

simply "independent of" the rights to that preexisting material.  *See id.*  So the owner of a

derivative work does not, for example, obtain copyrights in elements borrowed from another

author, or from the public domain.  *See, e.g.*, *Apple*, 35 F.3d at 1447; *Altai*, 775 F. Supp. at 556.

But the owner of a registered derivative work may assert infringement of the protectable

elements of a preexisting work that it owns.  *See Apple*, 35 F.3d at 1447; *Altai*, 553 F. Supp. at

556; *see also Xoom*, 323 F.3d at 283-84; *Streetwise*, 159 F.3d at 746-47.

This is "the only sound interpretation" of Section 103(b).[3]  *Richmond Homes*

*Mgmt, Inc. v. Raintree, Inc.*, 862 F.Supp. 1517, 1525 (W.D. Va. 1994) (protectable elements of

---

[2]     For ease of reference, Oracle has provided the Court with highlighted copies of the *Altai* and *Apple* cases as an exhibit.  *See* Alinder Decl., Exs. L & M.

[3]     SAP's additional reliance on Copyright Office Circular 41 (*see* Motion at 9) is inexplicable.  Circular 41 relates only to architectural works.  Insofar as SAP intends to rely on some other Circular, it obviously cannot override the plain terms of the Copyright Act, or the long line of cases rejecting SAP's interpretation of Section 103(b) discussed below.

8

Case No. 07-CV-1658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL FURTHER COPYRIGHT INFORMATION

underlying work are "carried forward" into derivative work insofar as the same party owns both works), *rev'd on other grounds*, 66 F.3d 316 (4th Cir. 1995).  If the rule were otherwise, the owner of a derivative work would have to allege multiple copyrights and the parties would spend significant amounts of time tracing specific fragments of infringing material to specific versions of the copyrighted work, even where there is no dispute the plaintiff is the proper owner of all versions.  *See id.*[4]

This concern is particularly acute in the context of software.  If a software owner were required to register every revision or component separately, then "complete copyright protection for a complicated program developed by the same author over a period of time would require dozens if not hundreds of registrations."  *Altai*, 775 F. Supp. at 556.  Ultimately, this would discourage the creation of derivative works, which would in turn discourage the improvement of existing works and innovation itself – all contrary the underlying purposes of the Copyright Act.  *See id.*; *see also* 17 U.S.C. § 106(2); U.S. Const. art. I, § 8, cl. 8 (authorizing Congress to provide exclusive rights to writings in order to "promote the Progress of Science and useful Arts").  Even more to the point, under the scenario urged by SAP, parties would spend their time needlessly comparing code across hundreds of registered versions of the same code trying to circumvent infringement liability on the bizarre basis that the infringed code has been owned by the registered owner across multiple registrations.

There is no basis in the law to support the intrusive derivative work discovery that SAP has proposed.  The Court should deny SAP's request.

---

[4]    Indeed, Oracle has provided to SAP a list of ***63 additional prior registrations*** that it will seek to add to the Complaint if the Court rules in SAP's favor on this motion.  The discovery burden that would result from this addition is entirely unnecessary because all of the code encompassed by these additional registrations, for which Oracle alleges infringement, is already in the case through the derivative registrations Oracle obtained and plead.  But if the Court disagrees, Oracle will have no choice but to, as a matter of precaution, add them to the Complaint.

**2.** **Even So, Oracle Already Produced Detailed
Information Concerning Derivative Works, Including
Interrogatory Responses and Documents**

Despite the lack of any legal foundation for the derivative work sideshow that SAP wants to undertake, and though, as discussed above, SAP cannot show that detailed discovery about derivative or preexisting works is warranted here, Oracle has already provided significant discovery on these areas, including in a 74-page interrogatory response in a format that SAP approved, over 20,000 pages of documents concerning the changes in the software releases, the copyrighted software, the copyright registrations and deposit materials themselves, and terabytes of related databases.

**a.** **Oracle's Response to Interrogatory No. 13**

SAP's Interrogatory No. 13 asks Oracle to identify all of the materials covered by Oracle's 83 Registered Works. The majority of these works are software programs. The code that is covered is described in the registration and in the deposit material. Of course, that code is also contained in the relevant software itself, which as discussed above, Oracle has produced. Numerous portions of the code and other Registered Works are also identified in the Customer Connection databases, including software patches, fixes and related support materials. In addition to its substantive response, Oracle referred to and relied on these materials. *See* Wallace Decl., Ex. F.

After Oracle objected to SAP's attempt to depose a 30(b)(6) witness concerning the details of every piece of software in the Third Amended Complaint (untold millions of lines of code), Oracle offered through meet and confer to amend and supplement Interrogatory Response No. 13 with information related to Registered derivative works as well. *See* Alinder Decl., ¶ 8. Following further meet and confers, Oracle has now amended and supplemented its Response three times in an attempt to satisfy SAP's ever-broadening requests for discovery related to derivative and preexisting works. *See id.*

In the meet and confer prior to Oracle's last supplementation of this response on December 5, 2008, Oracle proposed to provide module-level detail for each copyrighted work to the extent Oracle could locate that information. *See id.*, ¶ 9. Oracle believed this request meant

information about which modules (e.g., Payroll) were contained within each Registered version (e.g., Human Resources), and which fixes related to which modules. *See id.* This proposed supplementation was expected to (and did) require an enormous amount of work by Oracle, because compiling a list of module-level software products for numerous complex business software programs, some of which are over a decade old, is a burdensome and manual process of sifting through all of the documentation available for those software releases. *See id.*, ¶ 9 & Ex. F. Therefore, Oracle even previewed an example of its planned response with SAP, to make sure that if it undertook this time consuming work, SAP would agree the response was sufficient. *See id.* SAP agreed that Oracle's proposal was "acceptable," but sought information about how Oracle proposed to deal with its request for additional preexisting work discovery (which Oracle has always believed not relevant, *see* Sec. B.1., above). *See id.*; *see also* Wallace Decl., Ex. E at 6:3-6 (seeking information related to authorship, content, creation and publication of preexisting works from which Oracle's software were derived). On that basis, and without further contrary response from SAP, Oracle proceeded with the further supplementation of its response to Interrogatory No. 13. *See* Alinder Decl., ¶ 9.

### b. Oracle Also Produced Detailed Release Notes

Though it believed SAP's further request for derivative work information inappropriate, and an improper attempt to burden Oracle with incredibly tedious, expensive, analysis, Oracle agreed to do still more. To further address SAP's request, Oracle also "propose[d] a reasonable search for, and production of, release notes that describe the PeopleSoft and J.D. Edwards software releases, including important changes from the prior releases." *Id.*, ¶ 10 & Ex. F. These Release Notes describe the software releases in detail, including information related to derivative and preexisting works. *See id.* Indeed, a number of these Release Notes specify the changes from one PeopleSoft or J.D. Edwards software release to the next – precisely the type of information SAP said it wanted. *See* Motion at 9 (requesting Oracle to "specify for each version [of Oracle's software] what material is new and what was preexisting"); *see also* Alinder Decl., Ex. G (exemplars of cover pages from produced versions of Release Notes many hundred pages long that detail "new features and enhancements" and the "Net Change" from

prior software releases). This proposal also would require extremely burdensome searches for historical documentation related to each of the software releases listed in Oracle's Third Amended Complaint. *See* Alinder Decl., ¶ 10. SAP never breathed a word of dissent to Oracle about this proposal prior to the production. *See id.* Accordingly, Oracle proceeded with the collection, and on the same day that Oracle supplemented its interrogatory response, it produced over 20,000 pages of these software Release Notes. *See id.*

While SAP's motion fails to even mention the Release Notes production and reneges on the agreement that Oracle's proposed interrogatory response would be "acceptable," the truth is that the 74-page interrogatory response, including its incorporation of the deposits, and related software and databases, as well as the production of the Release Notes, combine to provide all the information SAP can legitimately seek about Oracle's derivative software copyrights. SAP cannot support – and certainly does not do so in its motion – any broader discovery than that.

### 3. Oracle's Customer Connection Databases

Further, SAP's claim that Oracle produced its Customer Connection database as the "solution" to the derivative works issue is misleading at best. Motion at 12. As explained above, Oracle has continuously disagreed with SAP's viewpoint on this intrusive and unnecessary discovery of derivative and preexisting works.

Further, Oracle did not – and never claimed to – produce these databases directly in response to SAP's request for derivative and preexisting work information. Oracle produced these databases because they have information reflecting many different aspects of the case, including for example information supporting Oracle's Computer Fraud and Abuse Act and trespass claims, as described in the 30(b)(6) deposition of Dr. Uwe Kohler.

Due to the tremendous breadth of information on the Customer Connection databases, including detailed information about Oracle's software and support materials, Oracle identified and referred to these databases in response SAP's request in Interrogatory No. 13 that Oracle describe and identify its Registered Works.

During meet and confer on the derivative and preexisting works issues described

12

above, SAP requested detailed information regarding development and changes to Oracle's software. *See* Alinder Decl., ¶ 11. While Oracle continued to deny the relevance of that derivative and preexisting work information, Oracle confirmed that certain types of information responsive to SAP's requests, in addition to many other types of information related to Oracle's copyright software, existed within these databases. *See id.* Accordingly, Oracle also properly referred SAP to these databases in its interrogatory responses. *See* Wallace Decl., Ex. F. Oracle never agreed that SAP's discovery into these areas was relevant or appropriate, and certainly never offered these databases up as the "solution" to SAP's improper requests. *See* Alinder Decl., ¶ 11.

Further, SAP's claims that the terabytes of information in these productions were "corrupted" and "unusable," are unfounded and primarily appear to reflect SAP's experts' lack of knowledge about the software relating to the databases. This is a recurring issue in the case on both sides. *See id.*, ¶ 12. When SAP first produced its Lotus Notes SAS database, Oracle could not review it and had to hire an expert solely dedicated to getting Oracle access to review the material in that database (at a current cost to Oracle of $37,862). *See id.* Judge Legge also ordered SAP to assist Oracle with understanding that database, just as Oracle has provided assistance to SAP relating to the Customer Connection databases. *See id.*

After meeting and conferring with SAP to understand the problem, Oracle set up and restored the produced databases itself. *See id.* Then, Oracle went to great lengths to document the process and then provided SAP with detailed written instructions and with screen shots of the process for how to restore its own copy of the relevant databases. *See id.* SAP has not requested further technical assistance. *See id.* Thus, SAP's complaints about the usability of the Customer Connection databases appear to be resolved. *See id.* Any purported issues about Oracle's reliance on those databases under Section 33(d) are premature to the extent SAP has not yet reviewed them.

**C.    The Copyright Presumption Combined With Documents Already Produced More Than Satisfy Oracle's Burden On Chain Of Title**

SAP knows that Oracle acquired all of the relevant software companies and

13

competes against the actual software in the marketplace every day.  But rather than focus on issues truly in dispute, SAP's last complaint is that Oracle has not produced sufficient "chain of title" documents showing Oracle's ownership of the copyrights at issue.  Motion at 13.  This issue is another red herring.  Oracle has produced both the registrations showing the ownership of the copyrights and the chain of title transferring that ownership to Oracle.  Due to the presumption that arises from the copyright registrations, SAP has the burden of producing facts sufficient to rebut Oracle's legal presumption.  However, SAP offers no evidence, and only speculation, to support the massive, tangential discovery that it proposes, which includes ancient acquisitions from legacy companies.  Unsubstantiated speculation is no basis for intrusive discovery.  *See Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) (party may not "explore matter which does not presently appear germane on the theory that it might conceivably become so"(quotations omitted)).  And it asks for all this without having even properly met and conferred with Oracle on these irrelevant subjects.  The Court should deny this request as well.

### 1. The Copyright Presumption Prevents SAP's Fishing Expedition

For all PeopleSoft registrations and all but three J.D. Edwards registrations, under the statutory presumption provided by 17 U.S.C. § 410(c), Oracle's production of copyright registrations is sufficient to show Oracle's ownership of the Registered Works.  *Cf.* Motion at 13 (acknowledging that all but three registrations are entitled to the full weight of the presumption).  So long as a work is registered within five years of its initial publication, 17 U.S.C. § 410(c) requires that "any judicial proceedings" treat the certificate of registration of that work as "prima facie evidence" of validity for the copyright and for those "facts stated within the certificate."  17 U.S.C. § 410(c).  Under the statutory presumption, the burden of production shifts to SAP, which must provide evidence to rebut the presumption.  *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 826 (11th Cir. 1982).  Absent this evidence, Oracle need not produce anything further as to registrations entitled to the presumption.  *See, e.g., Yash Raj Films v. Kumar*, No. 05-CV-3811, 2006 U.S. Dist. LEXIS 82008, at *3-4 (E.D.N.Y. 2006) ("Defendants

1    have not provided any evidence to rebut the presumption of validity demonstrated by plaintiff's

2    certificates of copyright (which have been provided to defendants) and have not shown why the

3    Court should compel the chain of title information for over one hundred works listed in Exhibit

4    A of the Complaint, given the significant burden that this would place on plaintiff.").

5           For the three remaining J.D. Edwards registrations, the Court can, and should,

6    make a specific finding that the registrations are entitled to the full weight of the statutory

7    presumption.  For registrations not made within five years of first publication, "[t]he evidentiary

8    weight to be accorded the certificate of registration . . . shall be within the discretion of the

9    court."  *See* 17 U.S.C. § 410(c); *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n.*

10   *Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (holding that it is within the Court's

11   discretion what weight to give registrations not entitled to an automatic presumption, and finding

12   that despite inconsistencies "plaintiffs' registrations are strong evidence of the validity of their

13   claimed copyrights").  SAP's attempt to blindly fish for information related to these three later-

14   registered works – each developed by the same companies as all the others and that were only

15   registered by Oracle during the course of this case due to Oracle finding out that SAP was

16   infringing these works – is unwarranted.  Even where SAP attempts to point to inconsistencies

17   that it found in "public documents," none of those relate to the J.D. Edwards product line.  *See*

18   Motion at 14.  SAP can point to no evidence – and there is none – that these J.D. Edwards

19   software releases are not owned and authored by Oracle, including as successor-in-interest to

20   J.D. Edwards.

21          Moreover, SAP's speculation about perceived inconsistencies in certain

22   registrations does not suffice to rebut the presumption.  *See* Motion at 14-15; s*ee, e.g.*, *Tiffany*

23   *Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F.Supp.2d 1113, 1117-18 (D. Nev. 1999) (holding

24   that "inaccuracies in a certificate are of significance only in situations involving allegations of an

25   intent to defraud or prejudice," and "[t]he factual and legal arguments proffered by Defendant do

26   nothing to overcome [the] presumption [of ownership]" where Defendants offered deposition

27   testimony discussing the possibility of ownership questions which did "nothing to contradict

28   [plaintiffs'] version of events.  Accordingly, this Court finds that Defendant has failed to

overcome the presumption of copyright validity raised by the federal registration").

Further, Congress has now heightened the burden of considering such inaccuracies through passage of the Prioritizing Resources and Organization for Intellectual Property Act of 2008 ("PRO IP Act"). *See* Pub. L. 110-403 § 101(a), 122 Stat. 4256, 4257 (2008) (amending 17 U.S.C. § 411) (stating that a certificate of registration satisfies the requirements of the Copyright Act "regardless of whether it contains any inaccurate information," unless (a) it was included on the application "with knowledge that it was inaccurate," and, (b) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." Even then, if both provisions are met, the Pro IP Act requires the Court to "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."). *Id.* SAP's speculation does not come remotely close to meeting this high burden.

Accordingly, this Court should find that Oracle is the undisputed owner of the all of the copyrights at issue, including the later-registered initial versions of J.D. Edwards World A7.3, J.D. Edwards World A8.1 and J.D. Edwards EnterpriseOne XE. *See, e.g.*, *Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) (finding that a copyrighted architectural plan registered almost seven years after initial publication established the claimant's ownership "as a matter of law" where accused infringer had "not pointed to any evidence indicating that Plaintiff's certificate of registration [was] not valid").

### 2. SAP's Assignment Argument Is Misleading And Ignores the Chain of Title and Recordation of Transfer Documents Produced

Next, SAP misunderstands the relationship between the copyright presumption and chain of title for that copyright, arguing that the assignment of 36 Registered Works from PeopleSoft and J.D. Edwards to Oracle somehow alters the presumption. Not so.

The copyright presumption is inherent in the registrations as soon as they issue regardless of whether they are later assigned or not. The question of chain of title does not relate to whether the facts in the registration are presumed true, but only whether Oracle owns the registration and can claim that presumption.

16

Courts do not require a copyright owner to produce a "magna carta" showing the transfer of title to copyrights. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do."); *see also* 17 U.S.C. 204(a) ("A signed writing will satisfy the requirements for the conveyance of federal copyrights."). Similarly, this Court has indicated that production of documents "sufficient to show" copyright ownership "as opposed to everything possible" is "normally a good approach." Alinder Decl., Ex. K at 63:11-13. Here, Oracle ***already produced the chain of title documents*** that show how all of the copyrights at issue in the Complaint, including the 36 disputed by SAP, passed from PeopleSoft and J.D. Edwards to Oracle. *See In re Napster, Inc. Copyright Litigation*, 2004 U.S. Dist. LEXIS 7236, at *33-34 (N.D. Cal. 2004) (finding chain of title sufficient where plaintiffs provided documentation of transfer of rights from original copyright claimant to subsequent owner, and from subsequent owner to plaintiff through merger). Those documents more than satisfy the requirements of the Copyright Act. There can be no doubt that Oracle owns each of the Registered Works, including the 36 identified by SAP, and is entitled to the presumption inherent in the registrations.

Anticipating that SAP may try to pursue such a technicality, Oracle took the additional step of recording the transfers with the Copyright Office. *See* Alinder Decl., ¶ 13 & Ex. I. Under the Copyright Act, the recordation "gives all persons constructive notice of the facts stated in the recorded document," which in this case are the facts that PeopleSoft and J.D. Edwards transferred their ownership in all of their Copyrights to Oracle, specifically including each of the 36 Registered Works, as to which SAP complain in this motion. *See* 17 U.S.C. 205(c); *see also* Alinder Decl., ¶ 13 & Ex. I While not necessary, Oracle's recordation of the chain of title documents more than establishes its ownership of these copyrights.

The one case that SAP cites – *Kramer* – proves the point. *See Kramer v. Thomas*, No. CV-05-8381, 2006 U.S. Dist. LEXIS 96714, at *15 (C.D. Cal. Sept. 26, 2006). In *Kramer*, Defendants argued that the Plaintiff could not prove ownership of nine copyrighted works. *See*

*id.* at *14-*15.  The Plaintiff produced valid copyright registrations to show ownership.  *See id.*
The Court held that, because the Plaintiff was an assignee of a previously-registered copyright,
the registration alone did not show ownership of the works.  *See id.*  The Plaintiff cleared that
additional hurdle by producing a contract showing the sale of the works to a third party and a
license from that third party to the Plaintiff.  *See id.* at *15-*16.  Here, Oracle has done far more.

Like in *Kramer*, Oracle more than established its ownership in each of the
Registered Works, including the 36 works previously registered by PeopleSoft and J.D. Edwards,
by producing the agreements and related recordations showing the transfer of the Registered
Works to Oracle.  SAP has offered nothing to dispute this ownership.

**3.      Despite the Presumption, Oracle Already Produced
          Detailed Chain of Title Documentation, Along with
          Supportive Ownership and Authorship Information**

As discussed above, Oracle has not rested on the presumption alone, but has
produced detailed information relating to ownership of all of the Registered Works.  In addition
to the intellectual property transfer agreements described above, Oracle has produced relevant,
non-privileged documents including form copies of employment agreements, work for hire
agreements, software release notes, numerous software-related databases showing development
of the works, and other assignment agreements and inter-entity agreements.  *See* Alinder Decl.,
¶ 14.  Further, two 30(b)(6) designees, testifying on Oracle's behalf, have discussed the relevant
agreements and documents, including as they relate to Oracle's ownership of the Registered
Works.  *See id.*  Even if Oracle had no copyright presumption (though it does), Oracle has
produced information, documents and testimony more than sufficient to support the authorship
and ownership of the Registered Works.

**4.      SAP Has Not Rebutted The Presumption; Its Request
          for Acquisition Documents Should Be Denied**

If SAP wishes to challenge the registrations, it has the burden of coming forward
with evidence sufficient to rebut the presumption.  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d
1081, 1085-86 (9th Cir. 1989) ("[S]ection 410(c) raises a rebuttable presumption shifting burden
of coming forward with evidence to defendant") (citing *Durham Industries, Inc. v. Tomy Corp.*,

630 F.2d  905, 908 (2d Cir.1980)).  SAP has instead recited a list of possible grounds for rebuttal drawn from a hornbook, and made conclusory allegations related to PeopleSoft's acquisition of three companies from the 1990s – Vantive, Red Pepper and Distinction Software.  *See* Motion at 14-15.  While SAP never breathed a word about Distinction Software in any meet and confer or discovery conference, only mentioned Red Pepper vaguely in an email on April 9, 2009 (six days before filing this motion), and never fully met and conferred as to Vantive, *see* Alinder Decl., ¶ 15 & Ex. J, SAP's vague speculation concerning these decade-old acquisitions is not remotely sufficient to carry its burden.  *See* Motion at 14-15.  This is particularly true where, as here, the preexisting/derivative work argument that SAP bootstraps into this acquisition discovery has no basis in the law, as explained above in Section II.B.1.

SAP cannot justify the immense burden that it would have Oracle undertake to locate and produce such remote and tangential acquisition documents.  *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1071 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'").

The Court should deny SAP's request for further "chain of title" discovery.

**D.**     **In Violation of the Local Rules and the Federal Rules of Civil Procedure, SAP Seeks Relief Beyond This Court's Jurisdiction And As To Items It Failed to Raise In Meet and Confer**

SAP both seeks improper relief through this motion and also seeks relief for items that it failed to raise in meet and confer.  First, SAP seeks relief throughout its motion that is not allowed on a motion to compel under Federal Rule of Civil Procedure 37 absent a prior order.  *See, e.g.,* Motion at 13 n.13 (stating that as to one software that was recently produced "Oracle may not be permitted to pursue it at trial at all."), 15 ("Defendants plan to hold Oracle to these representations at trial or on summary judgment should Oracle attempt to present evidence to rebut, for example, inferences that may reasonably be drawn from inconsistencies in the copyright registrations.").  SAP is not entitled to bring a motion in limine or for evidentiary sanctions in the guise of a motion to compel.  *See, e.g., Pennar Software Corp. v. Fortune 500 Systems, Ltd.,* No. 01-01734, 2001 U.S. Dist. LEXIS 18432, at *11-15 (N.D. Cal. 2001) ("Violation of a court order regarding discovery is generally necessary to trigger the discovery

1  sanctions of *Rule 37(b)*") (emphasis supplied).  The Court should ignore these improper requests.

2  Further, under Civil Local Rule 37, the "Court will not entertain a request or a

3  motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37, counsel have

4  previously conferred for the purpose of attempting to resolve **all** disputed issues." N.D. Cal.

5  Local Rule 37-1 (emphasis supplied).  SAP failed meaningfully to meet and confer with Oracle

6  on a number of items raised in its motion, including as discussed above, the list of software SAP

7  claimed had not been produced, the request for further current development environment

8  discovery and the requests for information about remote acquisition documents like for

9  Distinction Software.  Indeed, the only dispute that appears to have been fully joined in meet and

10  confer prior to the motion and properly before the Court is the preexisting/derivative work

11  dispute, which SAP gets dead wrong on the law, as explained above in Section II.B.1.  Though

12  Oracle has addressed all of SAP's issues on the merits, the Court should not entertain SAP's

13  requests for relief as to the items that it did not raise in meet and confer.

14  **III.   CONCLUSION**

15  Based on the foregoing, Oracle respectfully requests that the Court deny SAP's

16  motion to compel further copyright information.

17  DATED:  April 28, 2009                    BINGHAM McCUTCHEN LLP

18

19

20  By:  _____
                            Zachary J. Alinder
21                          Attorneys for Plaintiffs
                            Oracle USA, Inc., Oracle International
22                          Corporation, and Oracle EMEA Limited

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL FURTHER COPYRIGHT INFORMATION