Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY RELEVANT TO PLAINTIFFS' COPYRIGHT CLAIMS** <br><br> Date: May 19, 2009 <br> Time: 2:00 pm <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

SFI-609022v1

DEFS.' REPLY RE COPYRIGHT
MOT. TO COMPEL; Case 07-CV-1658 PJH(EDL)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION. ........................................................................................................... 1
II. ARGUMENT. ................................................................................................................. 2
    A. Defendants Are Entitled To The Requested Discovery On The Derivative Works. ................................................................................................................ 2
        1. The authorities cited by Oracle address only the threshold question of jurisdiction. ................................................................................. 2
        2. The cases Oracle cites confirm that the requested discovery is both relevant and necessary. .................................................................... 4
        3. Oracle exaggerates the burden of providing the requested discovery......... 6
        4. Oracle has already agreed to provide the requested discovery. .................. 7
    B. Defendants Are Entitled To The Requested Discovery On Chain of Title. ............ 8
        1. Defendants' request for the documents Oracle intends to rely on at trial is another "no brainer." ....................................................................... 9
        2. Defendants' request for written confirmation is warranted by Oracle's history of untimely and incomplete productions. ........................ 10
        3. Defendants are entitled to the limited chain of title discovery they seek. ........................................................................................................... 11
    C. Oracle's Production Of The Registered Works And Software Activation Codes. ...................................................................................................................... 11
    D. Defendants Have Not Sought Any Relief Beyond This Court's Jurisdiction Or Before Adequate Meet And Confer. .................................................................. 13
III. CONCLUSION. ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .................................................................................... 3, 5

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   775 F.Supp. 544 (E.D.N.Y. 1991) ............................................................................. 3, 4

*Kramer v. Thomas*,
   No. CV 05-8381, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sep. 28, 2006) ........................ 11

*Richmond Homes Mgmt, Inc. v. Raintree, Inc.*,
   862 F.Supp. 1517 (W.D. Va. 1994) ............................................................................ 3, 5

*Streetwise Maps, Inc. v. VanDam, Inc.*,
   159 F.3d 739 (2d Cir. 1998) ...................................................................................... 3, 5

*Xoom, Inc. v. Imageline, Inc.*,
   323 F.3d 279 (4th Cir. 2003) ..................................................................................... 3, 5

**STATUTES**

17 U.S.C. § 103(b) ............................................................................................................ 5

17 U.S.C. § 411(a) ............................................................................................................ 2

**RULES**

Federal Rules of Civil Procedure
   § 26 ............................................................................................................................. 9
   § 26(b)(2) ................................................................................................................... 6
   § 30(b)(6) ........................................................................................................... 4, 7, 10
   § 33(d) ..................................................................................................................... 6, 8
   § 33(d)(1) .................................................................................................................. 6

Local Rules
   § 37-2 ........................................................................................................................ 6

**TREATISES**

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
   § 7.16[B][2][a] .......................................................................................................... 5
   § 7.16[B][2][b] .......................................................................................................... 4
   § 7.16[B][2][c] ....................................................................................................... 2, 3

1 **I.  INTRODUCTION.**

2     This Court should grant Defendants' motion because the discovery Defendants seek is
3 necessary to determining the jurisdiction, liability, and damages issues in the case. Most or all of
4 it consists of information that Oracle will ultimately have to offer at trial anyway, and none of the
5 requested discovery is disproportionately burdensome given the scope of Oracle's copyright
6 claims and magnitude of its damages claim.

7     Oracle contends that: Defendants have the law all wrong; Oracle is immune from the
8 requirement of proving ownership; and Defendants' discovery requests are immensely
9 burdensome. Oracle is wrong on all three counts.

10     Defendants are far from being "dead wrong" on the law on derivative works. Opp. at 7.
11 On the contrary, Oracle's authorities confirm Defendants' position – where derivative works are
12 concerned, it is essential to determining jurisdiction, liability, and damages that the plaintiff
13 identify each preexisting work, its ownership and registration status, and the extent of its
14 incorporation into each derivative work. This is the case even if the plaintiff owns both the
15 derivative and preexisting work.

16     Defendants do not somehow just "know" that Oracle International Corporation ("OIC")
17 owns each Registered Work and each preexisting work. Opp. at 13-14. And apparently Oracle
18 did not "know" that when it alleged in the complaint that Oracle Corporation was the owner, only
19 to have to dismiss it from the case when that turned out not to be true. Mot. at 6. Facts about
20 ownership are determined through discovery, just as the facts that led to Oracle Corporation's
21 dismissal (as well as the subsequent dismissal of other Oracle entities) were determined from
22 Oracle's own documents. *Id.* Oracle is not immune to such discovery and has no legitimate basis
23 to refuse to produce it.

24     Nor is the requested discovery disproportionately burdensome. The discovery goes to an
25 essential element of Oracle's copyright claim. Moreover, Oracle asserts eighty-three Registered
26 Works, fifty-two of them derivative works, and seeks hundreds of millions in damages. Oracle
27 must not only expect, but in fact assume, a greater discovery burden than in the typical copyright
28 case. But even considering the number of registrations at issue and magnitude of the claimed

damages, Oracle exaggerates the burden.  For example, Oracle claims (without substantiation) that providing the derivative works discovery would require endless examination of countless lines of code.  Oracle has provided no evidence regarding the burden of producing even threshold information at the module or feature level so that Defendants could determine if that would suffice.  Similarly, Oracle acts as though it is being asked to turn the company upside down to produce the remaining chain of title documents when, in fact, the limited set of transactional documents Defendants seek should be readily accessible, even for historical acquisitions, in some central repository or single department.  Oracle cannot refuse appropriate and relevant discovery based on its unsubstantiated burden objections.

## II. ARGUMENT.

### A. Defendants Are Entitled To The Requested Discovery On The Derivative Works.

Nothing in the authorities cited by Oracle expands the proper scope of Oracle's copyright claims or warrants denial of the requested discovery.

#### 1. The authorities cited by Oracle address only the threshold question of jurisdiction.

The authorities cited by Oracle address the jurisdictional question of whether the owner of a derivative work may sue for infringement of an unregistered preexisting work without first registering the preexisting work.[1]  As Nimmer states it in the section relied on by Oracle:

> What if, by contrast, the only registration certificate relates to a derivative or collective work?  If the defendant copied from that derivative or collective work the pre-existing work contained therein (as opposed to the original material newly contributed to the derivative or collective work), can suit proceed?  Or is it necessary first to register separately the pre-existing work, even though the defendant copied such pre-existing work from the derivative or collective work?

2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer"), § 7.16[B][2][c] (2009) (footnotes omitted).

The answer to whether suit can proceed is "yes," but *only* if two conditions are met.

---

[1] The Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright has been made …."  17 U.S.C. § 411(a).

- 2 -

DEFS.' REPLY RE COPYRIGHT
MOT. TO COMPEL; Case 07-CV-1658 PJH(EDL)

Nimmer, §7.16[B][2][c]. The first condition is that the owner of the derivative work must own the preexisting work as well. *Id.*; *see also Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 284 (4th Cir. 2003) ("because Imageline owned copyright in SuperBundle and Master Gallery and in the underlying works of each, its registration of SuperBundle and Master Gallery was sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting."); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("because Streetwise is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work … will suffice to permit it to maintain an action for infringement…of the pre-existing work.").[2]

The second condition is that the derivative work must include *all the features* of the underlying work on which the infringement claim is based. Nimmer, § 7.16[B][2][c], n.105.7 ("The assumption is that the derivative work that is registered embodies all the features of the underlying work on which suit is premised."); *see also Streetwise Maps*, 159 F.3d at 746-47 (derivative and underlying street maps identical except for the addition of new subway and bus notations in the derivative map); *Apple Computer*, 35 F.3d at 1440 (noting that the derivative work was "not incrementally different" from the underlying work in any respect material to the infringement claim).[3]

If there is a "disconnect," as Nimmer puts it, between the underlying work and the material incorporated into the derivative work, then the answer to whether suit can proceed is "no." Nimmer, § 7.16[B][2][c], n.105.7. Nimmer likens this situation to one in which it is the underlying work, not the derivative work, that is registered. *Id.* In that circumstance, a claim for

---

[2] *See also Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994) (permitting Apple to sue for copying of material that appears in both the derivative and underlying work "[b]ecause Apple owns the copyrights in both …."); *Richmond Homes Mgmt, Inc. v. Raintree, Inc.*, 862 F.Supp. 1517, 1526 (W.D. Va. 1994) (permitting suit based on the derivative work registration based on evidence that plaintiff owned the preexisting work as well); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 775 F.Supp. 544, 555-57 (E.D.N.Y. 1991) (as owner of both the underlying and new material, plaintiff's registration of the derivative work was sufficient to permit it to maintain an action for infringement of the underlying material).

[3] *See also Xoom*, 323 F.3d at 281 (finding that all of the underlying clip art was contained in the derivative works at issue); *Richmond Homes*, 862 F.Supp. at 1521 ("The floor plans of the [preexisting work and derivative work] are essentially the same …."); *Computer Assocs.*, 775 F.Supp. at 555-56 (noting that the unregistered underlying work (ADAPTER) was contained within the registered derivative work).

1  infringement of the new material in the derivative work would require belated registration of the
2  derivative work. This would cure the jurisdictional defect but prevent the recovery of heightened
3  remedies such as statutory damages or attorneys' fees. *Id.* at § 7.16[B][2][b].

Simply put, either of the following scenarios limits the scope of a plaintiff's copyright claim and/or available remedies: (1) the allegedly infringed portions of the preexisting work are not part of the derivative work at issue in the case; or (2) the allegedly infringed portions of a late-registered derivative work do not include the material from the timely registered preexisting work. Both of these scenarios are relevant here.[4]

### 2. The cases Oracle cites confirm that the requested discovery is both relevant and necessary.

The purpose of the requested discovery is to obtain facts relevant to the two preconditions discussed above, *i.e.* facts regarding the chain of title, content, and registration status of the preexisting works:

> 6. For each of the Registered Works registered as a derivative work, identification of the author, current owner, any previous owners, content, creation date, publication date, and copyright registration number (if applicable), of the pre-existing works from which those Registered Works are derived.[5]

None of the cases cited by Oracle suggests that this discovery should be denied. On the contrary, each case was decided at trial or on summary judgment based on an evidentiary showing that both preconditions had been met. *See, e.g., Computer Assocs.*, 775 F.Supp. at 556 (appeal following trial, finding that "[i]f there were evidence that the ADAPTER code had been placed in the public domain, or were owned by someone other than CA, Altai's argument that the derivative nature of the registration did not extend to the ADAPTER code would be compelling. However, there is no such evidence. On the contrary, the undisputed evidence establishes that

---

[4] Thirty-five of the derivative works at issue here were registered belatedly and thus do not qualify for remedies such as statutory damages and attorneys' fees. Wallace Decl., Exh. A (identifying the thirty-five Registered Works not registered until 2007).

[5] As discussed in Defendants' opening brief, Defendants initially requested a Rule 30(b)(6) deposition on this topic but agreed, at Oracle's request, to a supplemental interrogatory response instead (Interrogatory No. 13). Mot. at 4-5. Defendants plan to pursue a Rule 30(b)(6) deposition on the related topic of identification of new material in each derivative work upon resolution of this motion. *Id.* at 6, n.4.

1 ADAPTER was developed by CA …."); *Xoom*, 323 F.3d 279 (summary judgment); *Streetwise Maps,* 159 F.3d 739 (bench trial); *Apple Computer*, 35 F.3d 1435 (summary judgment); *Richmond Homes*, 862 F.Supp. 1517 (trial). Facts relevant to these preconditions are thus clearly relevant and discoverable.

Here, Oracle has not established that it owns each preexisting work or that all of the allegedly infringed portions of the preexisting works are contained in the derivative works asserted in the complaint. These are issues to be determined at trial. Oracle may wish otherwise, but simply stating that these things are so does not make them so.[6]

Nor *could* Oracle have established these things, for the simple reason that it has not yet identified what the preexisting works *are* let alone who owns them or the extent to which they are included in the derivative works asserted in the complaint. As discussed in Defendants' opening brief, the information in the registrations is limited to "previously published versions" or similarly vague language. Mot. at 10. Oracle's supplemental response to Interrogatory No. 13 fails to provide any additional detail. *Id.* In addition, what little information Oracle has provided is inconsistent, including on the key question of whether the preexisting works are registered or not. *Id.* at 10-11 (describing inconsistency between information in Oracle's response to Interrogatory No. 13 or provided by its counsel and information contained in the registrations); *see also* Nimmer, § 7.16[B][2][a] ("When underlying and derivative works are involved, it can be significant that some are registered and others are not."). The discovery Defendants request is thus necessary to determine the identity of the preexisting works, chain of title and ownership, registration status, and, ultimately, the extent to which each preexisting work is included in the derivative Registered Works asserted in the complaint. These facts, in turn, are necessary to determine, the jurisdiction, liability, and damages issues discussed above.

---

[6] Similarly, Defendants have not "misread" section 103(b). Opp. at 8; 17 U.S.C. § 103(b). Oracle cannot put the cart before the horse by precluding discovery on the very facts it has yet to establish at trial. With regard to the Copyright Office Circular, entitled "Copyright Registration for Derivative Works" and cited at page 9 in Defendants' opening brief, the correct number is 14, not 41. Oracle should have been able to figure out this simple transposition error. However, to avoid any confusion, a copy of the Circular is attached as Exhibit A to the Reply Declaration of Elaine Wallace in Support of Defendants' Motion to Compel Discovery Related to Plaintiffs' Copyright Claims ("Wallace Reply Decl.").

### 3. Oracle exaggerates the burden of providing the requested discovery.

Given the number of Registered Works it has asserted and the hundreds of millions in damages it seeks, Oracle must expect a proportionately greater discovery burden than in other, more typical cases. *See* Fed. R. Civ. P. 26(b)(2); L. R. 37-2. Even then, however, Oracle's burden claims are exaggerated.

First, at least some of the responsive information must be readily available to Oracle by virtue of the fact that thirty-five of the fifty-two derivative works were registered only recently, in connection with this litigation. Wallace Decl., Exh. A. Oracle's in-house counsel must have (or should have) investigated the facts relating to the preexisting works before certifying, as required in the registration application, that the facts stated therein are correct to the best of his knowledge. *See, e.g., id.* at Exh. H, § 8.

Second, Oracle has consistently maintained in its discovery responses, during the meet and confer process, and its opposition brief that the information Defendants seek is available in the documents it has already produced, such as release notes and the Customer Connection databases. If so, Oracle is certainly in a better position than Defendants to locate that information. Indeed, it is obligated under Rule 33(d) to do so, something Oracle fails to refute in its opposition brief. Fed. R. Civ. P. 33(d)(1). If it was reasonable for Oracle to produce these documents in response to Interrogatory No. 13, then it cannot be unreasonably burdensome for it to provide at least the roadmap Defendants need in order to locate the responsive information.[7]

Third, Oracle claims that providing the requested discovery will require examination of countless fragments of code across hundred of versions of the software. Opp. at 9. This seems highly unlikely. As Oracle surely knows, a new version of a software program may differ from the previous version only in that new features or modules have been added and/or original features or modules retired. Thus, it is possible, that the majority of the information Defendants seek can be provided at the module or feature level. Oracle cannot just throw up its hands and

---

[7] With regard to the release notes, it is not, as Oracle suggests, a simple matter of Defendants reviewing them to determine changes from one release to the next. Opp. at 11. There is still the threshold question of identifying the prior versions on which subsequent versions of a product are based. As discussed here and in Defendants' opening brief, Oracle has not provided sufficient information (or has provided inconsistent information) even to do that.

claim undue burden without, at a minimum, determining what it would take to provide the requested information and then providing what may reasonably be expected.

Finally, Oracle cannot have it both ways. If, as it claims, discovery of the preexisting works is unnecessary because those works are contained within, and covered by, the derivative Registered Works, it begs the question why Oracle felt it necessary to assert all eighty-three registrations in the complaint. Presumably, Oracle believed there was some benefit to doing so. Whatever the reason, having asserted all eighty-three, Oracle cannot now complain of the discovery burden that comes from asserting so many. It should either produce all of the requested information or be required to drop those registrations for which it has refused to produce the information.

### 4. Oracle has already agreed to provide the requested discovery.

Oracle misrepresents the facts in its effort to deny its prior agreement to provide the requested discovery. Oracle claims that Defendants' motion "reneges on the agreement that Oracle's proposed interrogatory response would be 'acceptable'...." Opp. at 12. But a review of the October 21, 2008 email Oracle relies on makes clear that Defendants' acceptance of the proposed form of the interrogatory response (*i.e.* a list of the modules purportedly included in each Registered Work) related only to Topic No. 5 of the Rule 30(b)(6) notice.[8] Alinder Decl., Exh. F, at 1-2. As to Topic 6, Defendants specifically asked: "What is your proposal for responding to the information sought by Topic 6 in the notice?" Oracle notes that fact on page 11 of its opposition, yet on page 12 inexplicably characterizes the email as "acceptance" of the form of Interrogatory No. 13 as to Topic No. 6.[9]

---

[8] As noted in Defendants' opening brief, Topic No. 5 states: "For each of the Registered Works, identification of the software, including updates, patches, and fixes, service packs, Software and Support Materials, and any other materials allegedly covered by the registrations, identified by title, version number, file name, or other applicable identifying information." Mot. at 5, n. 3.

[9] Oracle did not respond to the Defendants' October 21, 2008 email until almost one month later, on November 18. Alinder Decl., Exh. F, at 1. Defendants' counsel left on vacation three days later and did not return until December 1. Oracle supplemented Interrogatory No. 13 on Friday, December 5, before receiving any reply from Defendants. On December 11, having reviewed the response, Defendants emailed Oracle, noting that the response "does not appear to address the information requested by Topic 6 of our Rule 30(b)(6) deposition notice ...." Wallace Reply Decl. ¶ 3, Exh. B.

Oracle also tries to distance itself from its reliance on the Customer Connection databases, presumably in an effort to avoid its obligation under Rule 33(d) to specify the precise locations where the responsive information may be found. Opp. at 12 ("Oracle did not – and never claimed to – produce these databases directly in response to SAP's request for derivative and preexisting work information."). This also is contrary to the facts. Oracle's response to Interrogatory No. 13 specifically refers to database materials pursuant to Rule 33(d). *See, e.g.,* Wallace Decl., Exh. F, at 6. Moreover, when Defendants asked Oracle to confirm Defendants' understanding of Oracle's position on the derivative works issue (including Defendants' understanding that Oracle was refusing to provide information on unregistered preexisting works), Oracle responded with an email specifically referring Defendants to the Customer Connection databases pursuant to Rule 33(d). Wallace Decl., Exh. G ("Oracle further refers Defendants to those databases pursuant to Federal Rule of Civil Procedure 33(d).").

Defendants' request for mapping information for the two terabyte collection of hundreds of databases that make up the Customer Connection production is not "premature," as Oracle suggests. Opp. at 13. Even assuming the technical issues with the databases can be resolved (and it is not clear that they are resolved, contrary to Oracle's assertion), Defendants need – and Oracle is obligated to provide – the mapping information immediately. Wallace Reply Decl., ¶ 2. Defendants thus request that Oracle be ordered to provide the mapping information and whatever continued technical assistance Defendants need to access and retrieve the responsive information.

**B.     Defendants Are Entitled To The Requested Discovery On Chain of Title.**

Oracle objects to "massive" discovery and the "immense burden" of producing chain of title documents. Opp. at 14-15, 19. Again, Oracle exaggerates.

Defendants have asked the Court to order three things. *See* Mot. at 1, 15. Two of them should be uncontroversial, *i.e.* the documents Oracle intends to rely on at trial to prove copyrightability and ownership for the three Registered Works not entitled to the presumption, and written confirmation that Oracle has completed its production of chain of title documents following a diligent search. The third (*i.e.* production of the remaining documents relating to acquisition, assignment, or transfer) imposes only a minimal burden on Oracle. Defendants are

1  not asking Oracle to turn the company upside looking for every last document relating to prior
2  acquisitions. All Defendants are asking for is the limited set of agreements and other operative
3  documents that reflect the acquisition, transfer, or assignment of Registered Works and the
4  preexisting works on which they are based. Even for historical acquisitions, these are the kinds of
5  documents that should be readily locatable in a central repository or in the files of one
6  department, such as the legal department. The mere fact that an acquisition occurred several
7  years ago does not mean that Oracle does not have to substantiate its burden objection.

### 1. Defendants' request for the documents Oracle intends to rely on at trial is another "no brainer."

10 It is hard to conceive of anything less objectionable than Defendants' request that Oracle
11 be ordered to "produce all documents on which it intends to rely to meet its burden of proving
12 copyrightability and ownership for the three Registered Works to which the presumption does not
13 apply or, in the alternative, confirm that it has already done so." Mot. at 15; *see also* Fed. R. Civ.
14 P. 26 (permitting discovery of any matter, not privileged, relevant to a claim or defense, and
15 *requiring* pretrial disclosure of documents a party expects to or may offer at trial). But Oracle
16 objects nonetheless and accuses Defendants of "blindly fish[ing] for information related to these
17 three later-registered works." Opp. at 15.

18 Asking for the specific documents a party intends to rely on at trial is the antithesis of a
19 fishing expedition. If Oracle intends to rely solely on the registrations and other copyright related
20 documents it has already produced with regard to these three works, Defendants are entitled to
21 know that. If Oracle intends to rely on something more, Defendants are entitled to receive copies
22 of whatever that something may be. Discovery does not get any more simple than this.

23 But rather than agree to produce documents to which Defendants are undeniably entitled,
24 Oracle asks this Court to make findings it is not authorized to make, *i.e.* to "make a specific
25 finding that the registrations are entitled to the full weight of the statutory presumption" and that
26 "Oracle is the undisputed owner of the [*sic*] all of the copyrights at issue …." Opp. at 16. These
27 are issues for the trial Court. Regardless, Oracle's improper request is not relevant to the decision
28 regarding Defendants' motion to compel. If Oracles wishes to obtain a finding on its claims as a

matter of law, then it should file an appropriate motion with Judge Hamilton.

### 2. Defendants' request for written confirmation is warranted by Oracle's history of untimely and incomplete productions.

This Court routinely requires litigants to provide written confirmation of production of all responsive, nonprivileged documents following a diligent search of all locations at which such materials might plausibly be found. Order re Discovery Procedures, at 3. That requirement is especially warranted here and Oracle has no legitimate grounds for objection, which presumptively explains why Oracle fails to address the issue in its opposition brief.

As discussed in Defendants' opening papers (Mot. at 6-7; Wallace Decl., ¶ 17), Oracle continues to dribble out chain of title and other inter-company agreements more than two years after it filed suit. Oracle was still producing copyright related information (including registration certificates, copyright applications, deposit materials, and communications with the Copyright Office) as late as April 6 and April 17, 2009. Wallace Reply Decl., ¶ 4. Even the Certificates of Recordation Oracle trumpets in its opposition (Opp. at 17) were not produced until the day it filed the opposition. *Id.* By way of further example, Oracle alleges in the complaint that Oracle Europe Middle East and Africa ("OEMEA") is a successor in interest to certain PeopleSoft and JD Edwards entities. TAC ¶ 37. But Oracle did not bother to produce the agreements purportedly supporting that assertion until April 24, 2009 after Defendants served an interrogatory requesting the basis for the allegation. Wallace Reply Decl., ¶ 4. Similarly, Oracle failed to produce the agreements between Oracle International Corporation ("OIC"), the only copyright plaintiff in the case, and the other Oracle entities to which it licenses the Registered Works until just days before (and for some agreements, the day before) Defendants Rule 30(b)(6) deposition of OIC on April 14, 2009. *Id.*

There is no excuse for Oracle still to be producing such basic documents this late in discovery. Defendants have been asking for these documents since the first day of discovery and Oracle has already had to change its roster of plaintiffs once based on information contained in its own inter-company agreements. Defendants need, and are entitled to, a date certain for completion of production of chain of title and other inter-company agreements, as well as written

1 confirmation that Oracle has completed its production following a diligent search of all locations where such documents might plausibly be found.

### 3. Defendants are entitled to the limited chain of title discovery they seek.

Oracle apparently concedes that it has the burden of proving chain of title for the thirty-six Registered Works registered prior to their alleged assignment to Oracle. *See, e.g., Kramer v. Thomas*, No. CV 05-8381, 2006 U.S. Dist. LEXIS 96714, at *15 (C.D. Cal. Sep. 28, 2006) (an assignee of a previously registered copyright bears the burden of proving the chain of title because nothing in the registration certificate establishes chain of title); Opp. at 17-18 (citing *Kramer*). Oracle's objection is that it should not be required to produce a "magna carta" showing transfer of title or to produce documents relating to PeopleSoft's historic acquisitions.[10]

As discussed above, Defendants are not seeking a "magna carta." All Defendants ask is that Oracle complete its production of the relevant agreements and other operative documents, which should not be unduly burdensome. With respect to the PeopleSoft acquisitions, Oracle cannot preclude relevant discovery simply by pointing to the statutory presumption. The presumption is rebuttable and, contrary to what Oracle seems to believe, Defendants are not required to rebut it during the discovery phase of the litigation. Discovery of PeopleSoft's acquisitions is relevant to the development of the Registered Works (Mot. at 14-15), and production of documents sufficient to show chain of title for those Registered Works is not unduly burdensome. Thus, there is no reason to preclude the requested discovery.

### C. Oracle's Production Of The Registered Works And Software Activation Codes.

As a result of Defendants' motion to compel, Oracle claims finally to have completed its production of the Registered Works.[11] Defendants are still determining whether the software Oracle has produced is what Oracle claims it to be. For example, some of the software CDs appear to be "demo" versions. Defendants are confirming with Oracle whether these are

---

[10] PeopleSoft completed the acquisitions of Red Pepper Software, Distinction Software, and Vantive acquisitions in 1996, 1998, and 1999, respectively. Wallace Reply Decl. ¶ 5.

[11] Defendants believe that copies of two documentation-only Registered Works are incomplete but will attempt to resolve that issue with Oracle before seeking the Court's assistance on that point.

1  complete working versions of the Registered Works. Wallace Reply Decl., ¶ 6. To the extent
2  Defendants' analysis reveals problems with Oracle's production, Defendants will address them
3  with Oracle and, if necessary, the Court. Oracle complains at length about "re-litigation" of the
4  development environments question. Opp. at 4-5. But Defendants made clear in their opening
5  brief that the request was contingent on Oracle failing to produce the other Registered Works it
6  claims are duplicative. Mot. at 8. Oracle has no cause to complain about the common sense
7  proposition that it cannot refuse to produce one work on the ground that it is duplicative of
8  another and then fail to produce the work it relied on for its argument.[12]

Contrary to Oracle's assertion, the software activation codes issue has not been resolved, and the statements in its opposition and the Alinder declaration that "SAP has not reported any further difficulty obtaining license codes" is inaccurate. Opp. at 6; Alinder Decl. ¶ 6. Oracle has identified a portion of its website from which activation codes may be obtained. However, it appears that Defendants cannot obtain activation codes for the JD Edwards products from the website without providing product serial numbers that Defendants do not have. Defendants raised this with Oracle in a meet and confer on April 8. Wallace Reply Decl., ¶ 9. Defendants also asked that, given the positions Oracle has taken in this litigation regarding use of its website, Oracle provide Defendants written authorization to obtain activation codes from the website for purposes of this litigation. *Id.* Oracle agreed to look into the JD Edwards issue and to provide the requested written authorization but as of the date of its opposition, had not responded to Defendants on either issue. *Id.* Defendants have brought this to Oracle's attention and Oracle responded by email on May 4, the date before the filing of this reply. Defendants are analyzing

---

[12] Oracle also has no cause to complain that Defendants moved to compel production of the Registered Works. Prior to Defendants obtaining a hearing date for this motion, Oracle had made only a single production of software – in December 2008, a full ten months after Judge Legge's Order. Wallace Reply Decl., ¶ 7. One production in ten months and no further productions until faced with a motion to compel is hardly consistent with Oracle's claim that it had been producing the software "on a rolling basis." Opp. at 1. Oracle's statement that Defendants "refused to provide" a list of software that had not been produced is similarly untrue. Opp. at 4. In response to Oracle's request, Defendants told Oracle that they had not been able to determine what had been produced, in part because Defendants did not have the necessary software activation codes and in part because the labels on the CDs failed to match the titles on the registrations. Only *after* receiving clarification from Oracle of what had been produced were Defendants able to compile the list they submitted to the Court. Wallace Reply Decl., ¶ 8, Exh. C.

1  that response and will continue to work with Oracle to resolve the issue.

**D. Defendants Have Not Sought Any Relief Beyond This Court's Jurisdiction Or Before Adequate Meet And Confer.**

Oracle complains that the relief sought by Defendants' motion, with the exception of the derivative works issue, is beyond this Court's jurisdiction or was sought before meet and confer. Both assertions are incorrect.

In support of its jurisdiction argument, Oracle points to two statements in Defendants' opening brief that it characterizes as "a motion in limine or for evidentiary sanctions in the guise of a motion to compel." Opp. at 19. However, neither statement includes any request for relief from the Court. They are simply factual statements to the effect that Oracle may not be permitted to pursue claims at trial for Registered Works it fails to produce, and that Defendants plan to hold Oracle at trial to representations it has made regarding the availability of information. *Id.* The relief sought by Defendants is specified in the Relief Requested portion of their opening brief and the accompanying proposed order. *See, e.g.,* Mot. at 1. All of it is discovery related and clearly within this Court's jurisdiction.

Ironically, it is Oracle that make improper requests in its opposition. *See, e.g.,* Opp. at 16 ("Accordingly, this Court should find that Oracle is the undisputed owner of the [*sic*] all of the copyrights at issue …."). Issues of copyright ownership and the weight to be afforded registrations not entitled to the statutory presumption are issues for the trial Court. This Court need not address these collateral requests in ruling of Defendants' motion to compel.

As to Defendants' meet and confer efforts, the issues raised in Defendants' motion have been the subject of extensive meet and confer communications over many months. Wallace Reply Decl. ¶ 10, Exh. D. Moreover, as Oracle is well aware, at the March 31, 2009 discovery conference Defendants specifically sought, and received, this Court's approval to file the motion. Id. at ¶ 11.

/ /

/ /

/ /

SFI-609022v1

- 13 -

DEFS.' REPLY RE COPYRIGHT
MOT. TO COMPEL; Case 07-CV-1658 PJH(EDL)

## III. CONCLUSION.

For the reasons set forth above, Defendants respectfully request that the Court grant their motion and order the relief requested.

Dated: May 5, 2009

JONES DAY

By: /s/ Elaine Wallace
    Elaine Wallace

Attorneys for Defendants
SAP AG, et. al.