BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corp., and Oracle EMEA Ltd.

JONES DAY
ROBERT A. MITTELSTAEDT (SBN 060359)
JASON McDONELL (SBN 115084)
ELAINE WALLACE (SBN 197882)
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

JONES DAY
THARAN GREGORY LANIER (SBN 138784)
JANE L. FROYD (SBN 220776)
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

JONES DAY
SCOTT W. COWAN (Admitted *Pro Hac Vice*)
JOSHUA L. FUCHS (Admitted *Pro Hac Vice*)
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP America, Inc., and
TomorrowNow, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, *et al.*,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**PLAINTIFFS AND DEFENDANTS' JOINT ADMINISTRATIVE MOTION TO MODIFY MAY 5, 2008 CASE MANAGEMENT ORDER** |

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 16(b)(4), Section E of this Court's May 5, 2008 Case Management and Pretrial Order ("May 5 Case Management Order"), and Civil Local Rule 7-11, Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Ltd. ("Oracle" or "Plaintiffs") and Defendants SAP AG, SAP America, Inc., (together, "SAP") and TomorrowNow, Inc. (with SAP AG and SAP America, Inc., "Defendants," and together with Oracle, the "Parties") jointly ask the Court to amend the case management schedule through a modification of the Court's May 5, 2008 Case Management Order as set forth in the Parties' Stipulation to Modify May 5, 2008 Case Management Order, filed concurrently with this Motion.

## II. RELEVANT BACKGROUND

The Court entered the May 5 Case Management Order after conferring with the Parties as to their then-current discovery and schedule needs.

The Parties' positions regarding the discovery needs in this case have changed since May 2008, as described more fully below. Although the Parties still have a number of ongoing disputes regarding the scope of discovery and claims in this case, they agree that an extension of both the case schedule and the discovery limits is appropriate and that the Parties may have the opportunity to file an additional round of summary judgment motions.

*New and expanded claims:* Oracle contends that Defendants' post-litigation activity and support of Oracle's Siebel-branded software greatly expand the relevant data that Oracle believes it needs to prove its claims, and support the addition of certain new claims. Although Defendants dispute Oracle's claims regarding Defendants' post-litigation activity and Siebel, the Parties agree that any claims and related discovery relating to the post-litigation activity and Siebel should be included in this case such that the Parties can resolve all disputes between them without the need for subsequent litigation.

*Background re request for time to analyze data and engage in additional limited discovery re all claims:* In July 2008, Magistrate Judge Laporte instructed the Parties to work

together in good faith to try to reach an agreement on an extrapolation methodology and/or a stipulation as to how TomorrowNow provided support to its customers, including its methods, practices, and volume of software fixes. Since then, the Parties have met and conferred extensively (in some instances with their experts) on one extrapolation proposal and two versions of a stipulation drafted by Oracle. The Parties have also continuously consulted with Judge Laporte regarding the progress of their negotiations and the various obstacles to reaching an agreement. So far, the Parties have been unable to agree on an extrapolation methodology or the form or substance of any stipulation.

Judge Laporte has noted both that the Court cannot force a party to stipulate and that the Parties' difficulty in agreeing on an extrapolation methodology or reaching a stipulation could possibly support a request to extend the current discovery schedule. Judge Laporte has also noted that partial summary judgment motion practice may assist the Parties in trying to reach an agreement on an extrapolation methodology and/or a stipulation as to how TomorrowNow provided support to its customers.

Without such an agreement, Oracle believes it must: (a) take significant additional discovery to prove up its claims, including depositions of the many TomorrowNow personnel involved in the creation of thousands of software fixes; and (b) have its experts analyze a larger portion of the approximately 11.4 terabytes of native electronic data (over 17 million files), Defendants' production of which concluded in February 2009. Oracle's analysis would include file compares and forensic analysis on the data – line by line code comparisons – to determine which files are copies of, or modifications of, others, and how the files have been manipulated. Because it will take significant time to analyze this data and use it in support of its claims, Oracle and its experts believe they will ultimately have to sample the data and use statistical analysis on the sample, as suggested by Judge Laporte.

Defendants dispute Oracle's contentions regarding (a) what evidence is relevant to Oracle's claims, (b) the extent of discovery needed to prosecute and defend those claims, and (c) which measure of damages is appropriate for this case. Nonetheless, Defendants are willing to agree to a modest extension of the case deadlines and discovery limits in order to (a) fully

2

resolve Oracle's claims regardless of whether the Parties are ever able to agree on an extrapolation methodology or a stipulation, (b) allow time for additional motion practice in an effort to focus the claims and defenses in this case, and (c) provide the Parties' experts additional time for their analyses.

For purposes of the above analysis and also to support its damages theories (some of which Defendants dispute), Oracle requested copies of Defendants' software fixes and related data in August 2007. In April 2008, the Parties agreed to a "Data Warehouse" arrangement using a protocol that permits Oracle remote access review of the images of certain server partitions that house these materials so that Oracle can designate what it believes is relevant material that it wants copied and produced. Defendants then conduct a privilege review of what Oracle has designated for production.

Under the Data Warehouse agreement, Defendants originally made available images of the server partitions as they existed soon after this case was filed. Oracle had access to and began its review of these original materials under the Data Warehouse agreement in mid-July 2008 and completed its data selections from the original servers by mid-August 2008. To date, Oracle has reviewed and tagged for production millions of files from all 93 original server partitions made available by Defendants. Defendants then made their first production from the Data Warehouse on October 25, 2008 and by February 2009 had produced what they believe is a complete production of the Data Warehouse files originally requested by Oracle. Then, at Oracle's request, Defendants agreed in March 2009 to re-produce 12 server partitions with updated, post-lawsuit information. Oracle has not yet reviewed and Defendants have not yet produced the updated data on these 12 server partitions.

The Parties do not yet know the volume of the relevant post-lawsuit data on these 12 server partitions. If the volume is similar to prior collections, then Oracle believes that several additional terabytes from those 12 server partitions will need to be reviewed and produced, in addition to potentially other servers that may contain relevant information. Defendants have not agreed at this time to re-produce any additional server partitions beyond the 12 noted above. At this point, regardless of whether any additional server partitions beyond the

12 are re-produced, Oracle believes there is insufficient time under the current schedule for Oracle to review the massive amounts of updated Data Warehouse information and use its analysis of TomorrowNow's 2007 and 2008 fixes to inform fact and expert discovery or for Defendants' experts to respond to Oracle's experts' analysis.

Separate from the Data Warehouse materials, Defendants first produced a copy of TomorrowNow's SAS database, a large Lotus Notes database used to track and support TomorrowNow's customers, in the fall of 2007. The SAS database is a crucial tool and data source in understanding how TomorrowNow supported its customers. Oracle uses information from the SAS database extensively in depositions to explore the fix development and testing process. Defendants' first SAS production was related to TomorrowNow's service of customers running PeopleSoft and JD Edwards software. That first production was made from "snapshot copies" of the database taken soon after the original Complaint was filed.

On or about January 20, 2009 and at Oracle's request, Defendants produced the information from the SAS database relating to TomorrowNow's Siebel customers, including records through October 31, 2008, the date on which TomorrowNow wound down its operations. Defendants supplemented that production in the first week of March 2009.

Around February 13, 2009, Defendants produced updated SAS records for TomorrowNow's PeopleSoft and JD Edwards customers containing data through October 31, 2008 and supplemented that production in the first week of March 2009.

Oracle and its experts need additional time to review and analyze these recently-produced updated SAS records, which include post-litigation materials through October 31, 2008, and do not believe that they have time to make use of that data under the current case schedule.

III. **ARGUMENT**

The Court may modify a case management order "for good cause," such as when the Parties cannot reasonably meet the schedule despite their diligence. *See* Fed. R. Civ. Proc. 16(b); *see also, e.g., Omoregie v. Boardwalk Auto Ctr., Inc*., No. C07-3884, 2008 WL 4857942, at *1 (N.D. Cal. November 10, 2008).

4

1  As set forth above, the Parties agree that, despite their diligence, their positions

2  regarding the discovery needs in this case have changed since May 2008 and that an extension of

3  the case schedule is needed and appropriate to further explore various issues. Because the

4  Parties now agree that the post-litigation activity through October 31, 2008 – which Judge

5  Laporte has noted is highly relevant – should be included in this case, they also agree that some

6  additional deposition time is needed relative to the Parties' claims and defenses for that time

7  period. Further, regardless of whether they ultimately agree on an extrapolation methodology or

8  stipulation regarding TomorrowNow's software fixes, as described above, the Parties agree that

9  certain additional depositions of TomorrowNow's personnel should be allowed for several

10  issues, including allowing Oracle to better understand the process by which TomorrowNow

11  supported – and continued to support through October 31, 2008 – its PeopleSoft, JD Edwards,

12  and Siebel customers, including SAP's decisions relevant to TomorrowNow's activities.

13  Defendants believe an additional round of summary judgment motions will narrow the issues in

14  the case. Oracle disagrees, but has agreed that the Parties may have the opportunity to file such

15  motions. Accordingly, the Parties agree that there is good cause to: (a) increase the Parties'

16  deposition hours allotment above the limits contained in the May 5 Case Management Order; (b)

17  extend the time in which the Parties have to conduct those depositions; and (c) add an additional

18  round of summary judgment motions.

19  **IV.    <u>CONCLUSION</u>**

20  For the foregoing reasons, the Parties respectfully request that the Court enter an

21  order modifying the May 5 Case Management Order as set forth in the Parties' Stipulation to

22  Modify May 5, 2008 Case Management Order. Because the requested modifications are the

23  result of substantial negotiation and compromise between the Parties, the Parties respectfully

24  request that the Court either accept or reject the Parties' requests in full. If the Court rejects the

25  Parties' motion in whole or in part, the Parties would then reserve their rights to file separate

26  motions for relief, with a more detailed explanation of the bases for such requests than is

27  provided here. A Proposed Revised Case Management Schedule is submitted with this Motion.

28

DATED: May 12, 2009

BINGHAM McCUTCHEN LLP

By:_____/s/_____
                    Geoffrey M. Howard
                    Attorneys for Plaintiffs
                    Oracle USA, Inc., Oracle International
                    Corporation, and Oracle EMEA, Ltd.

        In accordance with General Order No. 45, Rule X, the above signatory attests that

concurrence in the filing of this document has been obtained from the signatory below.

DATED: May 12, 2009

JONES DAY

By:_____/s/_____
                    Tharan Gregory Lanier
                    Attorneys for Defendants
                    SAP AG, SAP America, Inc.,
                    and TomorrowNow, Inc.