1  BINGHAM McCUTCHEN LLP
   DONN P. PICKETT (SBN 72257)
2  GEOFFREY M. HOWARD (SBN 157468)
   HOLLY A. HOUSE (SBN 136045)
3  ZACHARY J. ALINDER (SBN 209009)
   BREE HANN (SBN 215695)
4  Three Embarcadero Center
   San Francisco, CA  94111-4067
5  Telephone:  (415) 393-2000
   Facsimile:  (415) 393-2286
6  donn.pickett@bingham.com
   geoff.howard@bingham.com
7  holly.house@bingham.com
   zachary.alinder@bingham.com
8  bree.hann@bingham.com

9  DORIAN DALEY (SBN 129049)
   JENNIFER GLOSS (SBN 154227)
10 500 Oracle Parkway
   M/S 5op7
11 Redwood City, CA  94070
   Telephone:  (650) 506-4846
12 Facsimile:  (650) 506-7114
   dorian.daley@oracle.com
13 jennifer.gloss@oracle.com

14

15 Attorneys for Plaintiffs
   Oracle USA, Inc., Oracle International
16 Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:    (832) 239-3939
Facsimile:    (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

17

18 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
   TOMORROWNOW, INC.

19       UNITED STATES DISTRICT COURT

20      NORTHERN DISTRICT OF CALIFORNIA

21        SAN FRANCISCO DIVISION

| | |
|---|---|
| 22 ORACLE USA, INC., *et al.*, | Case No. 07-CV-1658 PJH (EDL) |
| 23       Plaintiffs, | **JOINT DISCOVERY CONFERENCE STATEMENT** |
| 24     v. | |
| 25 SAP AG, *et al.*, | Date: June 25, 2009 |
| 26       Defendants. | Time: 10:00 a.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |
| 27 | |
| 28 | |

1    Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

2    (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc.

3    (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint Discovery

4    Conference Statement.

5    The Parties jointly request that the Court schedule 60 minutes on June 25, 2009 to further

6    discuss the following discovery issues, as well as schedule further discovery conferences roughly

7    every five weeks through December 2009.

8    **1.    <u>Joint Administrative Motion to Modify Case Scheduling Order</u>**

9    Following several weeks of extensive negotiation, on May 12, 2009, the Parties jointly

10   filed an administrative motion to modify the case scheduling order, seeking, among other things,

11   an extension of the fact discovery cut-off and trial date.  On May 28, Judge Hamilton held a Case

12   Management Conference, at which the Parties discussed their discovery needs, the case schedule

13   and other issues.  Judge Hamilton provided guidance on the case schedule and other issues

14   presented by the Parties' joint proposal and entered a Minute Order on May 29 (Docket Entry

15   321).  On June 11 (Docket Entry 325), the Court signed a revised joint proposed order, which,

16   among other things:

17   - Extends the fact discovery cut-off to December 2009 and the trial date to

18     November 1, 2010;

19   - Grants each side an additional 100 hours for fact depositions;

20   - Grants each side an additional 20 document custodians;

21   - Permits Oracle to move to amend the complaint by July 15, 2009 to add Siebel

22     related claims and any other claims or allegations agreed to by the Parties prior to

23     July 15, 2009;

24   - Requires Oracle to make the appropriate motion(s) no later than August 26, 2009

25     should Oracle intend to seek any other amendment to the complaint; and

26   - Permits Defendants leave to file an additional summary judgment motion on

27     August 26, 2009 regarding Plaintiffs' royalty damages theory, and requires the

28     Parties to meet and confer as soon as possible to schedule on a priority basis what,

1

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    if any, discovery may be needed by Plaintiffs before filing of that motion.

2    The Stipulation presented to Judge Hamilton represented the extent of the agreement

3    between the Parties on the topics it covered.  Both sides reserved rights to pursue additional or

4    different discovery from that set forth in the stipulation, and agreed that this Court would rule on

5    any disputes that arose from that discovery, in addition to the scope and manner of conducting the

6    discovery expressly referenced in the stipulation.

7    **2.    Damages-Related Discovery From Oracle**

8    **a.    Defendants' Position:**  Oracle has alleged damages including loss of

9    profits resulting from TomorrowNow's alleged activities.  From the first day discovery was

10   permitted, Defendants have sought discovery of Oracle's profit margins.  For example,

11   Defendants requested production of "Documents relating to any alleged loss of revenues or

12   profits by Oracle as a result of the conduct alleged in the Complaint."  In response, Plaintiffs

13   agreed to produce "[d]ocuments sufficient to show Oracle's revenues, costs, and profit margins

14   for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise

15   software applications for which Oracle has alleged that defendants Downloaded Software and

16   Support Materials from Oracle's systems …."

17   Defendants still have not received sufficient information regarding Oracle's profit margins

18   on the relevant product lines.  In the early stages of the case, Oracle took the position that

19   Oracle's contracts with the former TomorrowNow customers were sufficient to show the profits

20   Oracle contends it would have made from those customers but for the activities of TomorrowNow.

21   That assertion proved to be incorrect for a variety of reasons, including the fact that many

22   customer contract files are incomplete.  Oracle also pointed to its publicly filed Annual Report

23   and various internal quarterly reports as evidence of its profit margins.  While the Annual Report

24   shows a profit margin for Oracle's support services, it is accompanied by a disclaimer that states

25   that the reported margins "do not represent the actual margins."  Defendants subsequently served

26   a Rule 30(b)(6) deposition notice on the subject of "the types of records…that Oracle maintains

27   concerning revenues, costs, profit margins…for the PS and JDE product lines …."   In response,

28   Oracle presented a witness who testified that Oracle does not measure the profitability of its

1   PeopleSoft and JDE product lines.  Defendants have further sought production of Oracle's

2   general ledger and have identified portions of its charts of accounts that may lead to the

3   appropriate general ledger information.  While Oracle has produced some chart of accounts

4   information, it has refused to produce the general ledger information Defendants have requested

5   on grounds of burden and citing the targeted search request procedure.

6          Oracle has simply not provided sufficient discovery to allow Defendants to determine the

7   revenues or profits of the actual plaintiff entities in this case.  For example, plaintiff Oracle

8   International Corporation ("OIC") does not license the alleged copyrighted works to customers,

9   but rather licenses them to Oracle affiliates who pay a royalty to OIC.  Thus, any profits that OIC

10  makes (or allegedly lost) on such transactions depends on the royalty revenues it receives from its

11  affiliates based on the affiliates' sales to customers.  In order to explore this issue, Defendants

12  noticed the deposition of OIC regarding, among other things, "[p]ayments, including but not

13  limited to royalty payments, received by or to OIC in connection with the Registered Works" and

14  "[h]ow costs are allocated among the participants" to the applicable Cost Sharing Agreements.  In

15  response, Oracle presented a witness who was unable to testify as to what royalty payments OIC

16  has received for the list of Registered Works.

17         Defendants also served their Targeted Search Request No. 3, which seeks the following:

18  "For each Plaintiff entity, for the period January 1, 2002 through October 31,
19  2008, documents sufficient to show by month, quarter and year the revenue
    (including but not limited to license royalty payments), expenses (including but
20  not limited to research and development costs) and net income to the Plaintiff
    entity resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards
21  software and/or services to customers on Defendant TomorrowNow, Inc.'s
    Supplemental Exhibit 1 to Its First Sets Of Requests For Production and
22  Interrogatories to Plaintiffs."

23         In response, in addition to many objections, Oracle stated that "Oracle will continue to

24  investigate whether and how it can produce some or all of the many requested financial reports

25  and the burdens of doing so …"  Plaintiffs' Supplemental Responses and Objections to

26  Defendants "Second" and "Third" Targeted Search Requests, p. 13.  To date, Defendants have

27  received no further response.  Defendants are continuing to meet and confer with Oracle

28  concerning the inadequate discovery in this area.  Oracle has suggested in meet and confer

3                    JOINT DISC. CONF. STATEMENT
                     Case No. 07-CV-1658 PJH (EDL)

1   discussions that the parties may be able to resolve these issues through further discussions that

2   might also include direct participation by subject matter experts at the companies.  Based upon

3   that suggestion, Defendants took off calendar the upcoming deposition of Alex San Juan, a

4   witness who may (or may not) be able to shed light on issues relating to Oracle's charts of

5   accounts.  Defendants have requested further meet and confer on these issues and would welcome

6   participation by anyone Oracle may wish to include.  Defendants will seek guidance from the

7   Court at the Discovery Conference concerning whether a motion to compel may be necessary at

8   this time.

9           **b.     Oracle's Position:**  Defendants' statement above is representative of their

10  practice of sending massive meet and confer letters, that raise new issues, mere days before

11  raising them with the Court.  Indeed, Defendants' statement here is largely copied from a letter

12  sent on June 12, to which Oracle has not had a meaningful opportunity to respond.  This is not

13  how meeting and conferring – which is meant to alleviate from the Court the burden of dealing

14  with developing issues – is supposed to work.  Nor, as the Court has pointed out repeatedly, does

15  it make sense to waste the little time we have with at these conferences on issues that are not ripe

16  and for which the Court does not have the background, or a motion pending with joined and

17  jointly briefed issues ready to decide.

18          The fact is, contrary to Defendants' implication, Oracle has produced a substantial amount

19  of financial records.  Defendants also choose to simply ignore the testimony of Oracle witnesses

20  about the unavailability of some of the material Defendants seek, and the burden and irrelevance

21  of producing some of the more detailed General Ledger material that, at least originally,

22  Defendants sought.

23          Defendants also include some factual inaccuracies in their statement above.  For instance,

24  contrary to Defendants' statements, Oracle has *not* refused to produce general ledger information.

25  Rather, it objected to Defendants' initial request for general ledger information because the 73-

26  page request would require *months* of dedicated effort to collect, which Oracle explained to

27  Defendants on May 11, and because there was no foundation that such effort would produce

28  relevant information.  On May 14, and again on May 22, Oracle asked Defendants to propose a

4

1   narrower and more reasonable search; moreover, on May 28, Oracle's counsel orally provided an

2   explanation to Defendants' counsel of the overbreadth and burden of the then-pending General

3   Ledger request, which Defendants admitted made sense and about which they proposed to

4   convene a follow-up call.  Defendants have never disputed the burden associated with their initial

5   request.  Defendants' complaints about Oracle not providing adequate financial discovery are

6   further undermined by their cancellation on June 16 of the long-scheduled June 19 deposition of

7   Oracle witness Alex San Juan, who was to testify about Oracle's production of charts of accounts

8   and Oracle's general ledgers.

9          Additionally, although Defendants complain about product profitability reports, they

10   themselves recognize that Oracle does not track profitability by product, as multiple Oracle

11   witnesses have repeatedly testified (not surprising as SAP and most multi-product companies also

12   do not assign expenses and costs by product).  Part of the reason Oracle is still investigating its

13   ability to produce any reliable information in response to Defendants' "Third Targeted Search

14   Request" relating to this information, is because to date and after dozens of hours of searching,

15   Oracle has yet to find anyone at Oracle who ever has or can create the reports Defendants seek.

16   In its response to that request, Oracle informed Defendants that it "has begun investigating the

17   reporting functions available from Oracle Financial Analyzer and the GIFTs database, and has

18   thus far only confirmed the previous testimony that informed Defendants that the information

19   Defendants seek is not available with the requested detail."  The other reason is that, as

20   Defendants know, Oracle's fiscal year ended on May 31, and those people most knowledgeable

21   about Oracle's financial systems have been heavily impacted by fiscal year-end activities.

22          Oracle fully intends to continue the Parties' meet and confer on these issues.  However, at

23   this point, Court intervention is premature.

24          **3.      Partner Discovery from Oracle**

25          **a.      Defendants' Position:**  Defendants continue to believe that Oracle's

26   production of partner-related documents is deficient.  Oracle produced certain information

27   concerning CedarCrestone in response to the Court's order on Defendants' motion to compel.

28   Defendants are still evaluating that production for completeness.  Defendants continue to believe

1  that information regarding other partners, such as netCustomer, is relevant and should be

2  produced.  Defendants do not agree, as Oracle has argued, that this Court's ruling on the

3  CedarCrestone issue forecloses Defendants from additional discovery on the partner issue.

4  Defendants will continue to meet and confer with Oracle on this issue and may seek the Court's

5  guidance at the discovery conference if sufficient progress is not made on this issue by then.

6           **b.    Oracle's Position:**  Again, this issue is not ripe for Court assistance.

7  Despite having sought extensive discovery related to Oracle partners and having been denied such

8  discovery, first by Judge Legge and then by this Court, because of the dissimilarity between

9  partners and independent competitors,[1] Defendants continue to ask Oracle to produce partner

10 discovery beyond that ordered on February 11, 2009 in response to Defendants' Motion to

11 Compel.  After extensive briefing and argument, the Court rejected Defendants' request for Rule

12 30(b)(6) testimony related to partners, and ordered:

13           With respect to Defendants' Motion to Compel, the Court
             concludes that Defendants are entitled to some non-burdensome
14           information regarding Plaintiffs' partnership program as potentially
             relevant to damages. Specifically, Plaintiffs shall provide a list of
15           the "small percentage of its partners" with which Oracle contracts
             to provide support services for PeopleSoft, J.D. Edwards or Siebel
16           applications. See Declaration of Colleen Kelly ¶ 3.  Plaintiffs shall
             produce its partnership agreement(s) with CedarCrestone for the
17           relevant time frame from 2002 through 2008.  Plaintiffs shall also
             produce to Defendants the two master agreements regarding
18           support, including fee schedules, referenced at the hearing.

19 Oracle has completed all of these productions, and following meet and confer with Defendants,

20 also agreed to and did produce any additional Oracle policies, price lists, and fee schedules

21 specifically incorporated into the form partner agreements, to the extent not previously produced.[2]

22           [1] A year ago, Judge Legge denied this same discovery, ruling that partner discovery was
"tangential at best."  This Court weighed in on the relevance of partner discovery several times.
23 *See, e.g.,* August 28, 2008 Discovery Conference at 61:19-62:2 ("I am dubious about whether it's
relevant…. it does seem like a completely different thing.  And that the relevance would be – if
24 there is any – would be outweighed by the burden[],"); January 8, 2009 Discovery Conference at
54:24-55:2 ("Oracle can choose to have partners that it authorizes to use its IP; and that's
25 completely different from somebody ripping it off"); February 10, 2009 Motion to Compel
hearing at 31:5-8 ("So I view the totally independent third parties as the most relevant to damages.
26 But I view the in-between authorized partners as maybe having some relevance, but not as
much"); *id.* at 46:14-47:1 (describing requests for the detail behind Oracle's support partner
27 agreements as "pretty attenuated").

28           [2] Oracle also informed Defendants during meet and confer that Oracle has non-partner
agreements with CedarCrestone related to contractor services and software licenses, but

As for netCustomer, Oracle was never ordered to produce documents related to netCustomer and Defendants have never moved to compel such a production, presumably because none of Defendants' current document requests seek the documents they now claim to want, as Oracle explained to Defendants on May 4.  Moreover, given the answers in Oracle testimony and documents about the irrelevance of netCustomer (some of which Oracle will likely attach in opposition to any proper motion Defendants bring based on any actual pending discovery requests), Oracle will argue further inquiry into this additional dead-end likewise should not be allowed.

For now, Oracle requests that the Court order that Defendants will abide by this Court's prior limitations on partner discovery.  Alternatively, Oracle could file a motion for a Protective Order on those grounds, though it hopes the Court agrees that such additional motion practice would be wasteful and unnecessary.

### 4.      Discovery of SAP IP Valuation/Licensing Practices

a.      **Defendants' Position:**  Plaintiffs have recently served extensive discovery against SAP relating to SAP's valuation of its own IP and its practices with respect to licensing IP. Defendants have objected to this discovery on several grounds.  To start with, Plaintiffs have refused to provide similar discovery to Defendants, even refusing to provide all licenses Plaintiffs have granted to the very IP at issue in this case.  Moreover, SAP's IP has nothing to do with this case.  Plaintiffs have informed Defendants that they intend to use this purported dispute as a basis to oppose Defendants' upcoming motion for summary judgment on damages, which motion Judge Hamilton gave Defendants special permission to file.  Plaintiffs allege that SAP's licensing practices and the value that it assigns to its IP are relevant as benchmarks for valuing Oracle's IP, and thus relevant to the price SAP would have paid to license Oracle's IP.  However, even if that

_____

(continued…)

confirmed that these agreements, like the CedarCrestone partner agreements, do not license CedarCrestone to provide technical support services for PeopleSoft, JDE, or Siebel software applications.  Other than asking for that confirmation, Defendants have not sought these additional agreements, which are not relevant and are not partner agreements called for by the February 11 Order.

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1   were true, Defendants' early summary judgment motion will attack Plaintiffs' legal entitlement to

2   pursue their reasonable royalty theory of damages, not the potential amount of a hypothetical

3   license.  Whatever claimed value that SAP's license practices and valuation of IP may have to

4   determining the price of a hypothetical license (which value Defendants dispute), these subjects

5   do not bear on the threshold matter of whether Plaintiffs may pursue a reasonable royalty theory

6   of damages at all.  Because Plaintiffs will undoubtedly seek to avoid summary judgment by

7   relying on alleged discovery disputes, Defendants will seek the Court's guidance at the discovery

8   conference on how best to present this issue for resolution in an expedited fashion.

9          **b.      Oracle's Position:**  How much SAP has been willing to pay for IP it

10   acquired legitimately (by acquisition or license) is highly relevant to rebut its anticipated

11   testimony that it would not have paid the license fees Oracle will argue are appropriate for the

12   extensive IP SAP and TN took for years to compete against Oracle.  Oracle first served discovery

13   requests relating to SAP's IP valuation and licensing practices in July 2008, so the topic is not

14   "recent."  Moreover, Oracle questioned SAP witnesses, including board members, about this

15   highly relevant topic.  Over the months since it made its original requests, Oracle has extensively

16   met and conferred with Defendants on their inadequate responses to this discovery, culminating

17   in a letter on June 5, 2009, providing additional information for Defendants and seeking their

18   final position.  On June 16, Defendants sent a letter again refusing to provide responsive materials.

19   As the Parties have now completed a meaningful meet and confer on this topic, and because

20   Judge Hamilton has allowed "prioritized" discovery in advance of Defendants' early summary

21   judgment motion related to its hypothetical license, Oracle intends to move to compel, as

22   described below.

23          **5.      Defendants' Insurance Carriers' Access to Confidential and Highly**
                      **Confidential Information**

24

25          **a.      Defendants' Position:**  On May 4, 2009 Defendants sent Oracle a copy of

26   SAP's insurers' proposed amendment to the Stipulated Protective Order ("SPO") that would

27   permit a limited number of non-lawyer and lawyer representatives of each insurer, the broker, and

28   SAP's insurance coverage counsel access to information that Oracle has designated either

1    "Confidential" ("C") and "Highly Confidential" ("HC") under the terms of the SPO.  A copy of

2    SAP's insurers' proposal is attached as Exhibit "A" to this statement.  Oracle responded on June 9,

3    2009.  A copy of Oracle's response is attached as Exhibit "B" to this statement.

4             SAP's insurers have reviewed Oracle's June 9th response and do not agree to the

5    limitations Oracle wishes to place on their review of the protected documents.  While SAP's

6    insurers' recognize Oracle's concerns, they believe that Oracle's proposal to preclude them from

7    disclosing any aspect of any protected information beyond the two insurer representatives and

8    two attorneys expressly designated in the addendum does not permit them any meaningful use of

9    the disclosed information to evaluate coverage and any proposed settlement.  Given Oracle's

10   broad designation of large portions of its document production as either C or HC, access to

11   Oracle's other non-designated documents does not provide much in the way of substantive

12   information in Oracle's production that SAP's insurers believe is necessary to evaluate Oracle's

13   vast liability allegations and significant damage claims.  Thus, SAP's insurers contend that they

14   will not be able to effectively evaluate coverage and meaningfully respond to any requests for

15   settlement to the extent that coverage is afforded under the applicable policies.

16            Although Oracle's June 9th response asserts that the disclosure of the protected discovery

17   material to 46 individuals (including representatives of SAP's broker and coverage counsel)

18   would be sufficient to allow for a "full and robust discussion of anything relevant from Oracle's

19   materials," SAP's insurers have different structures and procedures that must be followed in order

20   to make determinations on coverage and authorize any settlement to the extent that coverage is

21   provided under the applicable policies. And, from the insurers' perspective, even the most modest

22   decision-making structure would in most, if not all, circumstances require that information be

23   provided to several different people within each insurer's organization.

24            Further, as this Court has noted previously, neither the insurers, nor their reinsurers and

25   auditors, are competitors of Oracle.  The insurers' proposal that was presented to Oracle on May

26   4, 2009 sets forth reasonable limits that both guard against the disclosure of C and HC

27   information to competitors, while at the same time providing the insurers with the relevant

28   information necessary for them to evaluate SAP's insurance claim with respect to this lawsuit.

                                                     9

Although Defendants will continue to meet and confer on this issue (including the involvement of SAP's insurers in that process), if an acceptable solution is not reached before the discovery conference, then Defendants intend to seek further guidance from the Court at the conference on this issue.  Representatives of SAP's insurers plan to attend the discovery conference to further explain their need to review Oracle's C and HC information and to answer any questions that the Court may have for them.

**b.**      **Oracle's Position:**  Defendants first raised this issue with the Court in January.  Based on the Parties' specific agreement, the Court ordered that, for each carrier, Defendants should provide Oracle with the name of a **single** attorney and/or adjuster who would be given access to Oracle's Confidential and Highly Confidential information.  Though they presumably consulted with their carriers before agreeing to the Court's stipulated order, Defendants came back months later claiming that their insurers balked at this reasonable restriction.  On May 4, Defendants sent the insurance carriers' responding proposal to Oracle. *See* Exhibit A.  That proposal vastly expands the Court's direction about the number of persons who would have access to Oracle Confidential and Highly Confidential material (to at least **46 named** designees, and untold numbers of unnamed managers, supervisors, re-insurers, auditors and regulators), and proposes a virtual blank check on repackaging Oracle's sensitive information for uses far beyond consideration of the same by the named designees to consider whether Defendants are covered.

On June 9, Oracle provided a counterproposal, in which it agreed to the significant expansion of named designees, but limited use of its sensitive material to them alone, absent express consent by Oracle to additional disclosure after notice and explanation of need.  *See* Exhibit B.  Oracle also proposed that, to the extent any un-named representative of an insurer believed he or she needed access to Oracle's Confidential or Highly Confidential information, the insurer may identify the specific information to Oracle, explain to whom it would be given and why, and request access on a case-by-case basis.  This would protect Oracle's information while providing the insurers with a means of additional access.

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

On June 16, Defendants told Oracle that the insurance carriers objected to Oracle's counterproposal, but rather than providing the details of that objection in correspondence, for the first time they told Oracle that the carriers did not agree with Oracle's counterproposal in their draft discovery conference statement, provided that afternoon.  Oracle immediately asked for a written explanation of what the carriers could not agree with as to its counterproposal and what, if any, compromise the carriers would offer to Oracle's counterproposal.  Instead of getting any such information, Oracle learned through the editing of this statement that the carriers' counsel will appear at the June 25 Discovery Conference.

Based on the apparent unwillingness of Defendants' insurers  to accept any limitations on their use of Oracle's Confidential and Highly Confidential information, it appears the Court will need to entertain motion practice.  Oracle cannot risk unfettered dissemination or repackaging to unknown persons or entities for unexplained reasons of its sensitive information (potentially including personal employee information, detailed financial information, company strategic and product strategy information, and confidential customer contracts).  Oracle's counterproposal provided a reasonable framework for addressing this issue – *e.g*., access and use by the 46 named recipients (a potential increase of 35 persons beyond the original order) and case-by-case requests to Oracle for additional use.  This reasonable and practical proposal is far beyond what the Parties originally agreed to and what the Court originally ordered – and Defendants should accept it.

Oracle will report any additional progress that transpires through meet and confer between the date of this filing and the June 25 Discovery Conference.  However, if necessary, Oracle will respond to any motion by Defendants to seek the unlimited use of its Confidential and Highly Confidential materials contained in Defendants' pending proposal.  That motion, however, should be properly noticed and supported – and Oracle should have the opportunity to digest and respond as allowed under standard motion procedures – rather than having any decision based on as-yet unknown statements or arguments that may be made by unknown insurance carrier representatives at the upcoming discovery conference.  Defendants have waited months to raise this issue; they can and should be required to abide by the proper procedures to resolve it.

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1

**6.     Application of Protective Order to Third Parties**

2         The Parties disagree as to the application of the advance disclosure requirements

3  of the Stipulated Protective Order that require disclosure, 48 hours in advance, of an opposing

4  party's "Confidential" or "Highly Confidential" documents that the other party intends to use at

5  the Rule 30(b)(6) deposition of a third party corporation.  Defendants contend that the express

6  terms of the Stipulated Protective Order should apply to Rule 30(b)(6) depositions of third party

7  corporations (*e.g.*, TomorrowNow's former customers) rather than the modified terms that this

8  Court has applied to the Parties' former employees.  Oracle contends that Rule 30(b)(6)

9  depositions of third party corporations should be handled similarly to how this Court has ruled

10 that the Parties' former employees should be treated, so that a document that the customer whose

11 representative is testifying received or sent would not need to be disclosed.  The Parties are

12 continuing to meet and confer on this issue and, if necessary, will seek further guidance from the

13 Court on this issue at the June 25 Discovery Conference.

14        **7.     Anticipated Motions**

15              **a.     Defendants' Anticipated Motions**

16                   **i.     Defendants' Discovery Sanctions and Protective Order Motion.**

17                        **(a)     Defendants' Position:** At the May 26, 2009 discovery

18 conference, the Court gave Defendants permission to file their motion for sanctions under Rules

19 37 and a protective order under Rule 26.  The parties continue to meet and confer but if they are

20 unable to resolve the issues, Defendants will file the motion for hearing on August 4, 2009.

21 Plaintiffs have agreed to that hearing date.  The motion will address two issues: (1) Plaintiffs'

22 position that their lost profits damages claims include customers beyond the 346 allegedly lost to

23 TomorrowNow and include products other than those supported by TomorrowNow at issue in the

24 litigation; and (2) Plaintiffs' position that its "infringers' profits"/unjust enrichment claims against

25 SAP extend beyond the 81 SAP customers that also had a contract with TomorrowNow.

26 Defendants will ask the Court, pursuant to Rules 26 and 37, to preclude discovery on these topics

27 and to preclude use of evidence relating to them on any motion, at any hearing, or at trial.

28

1    The basis for the motion is twofold.  On the first issue, Plaintiffs have maintained

2    throughout discovery that customers and products beyond those serviced by TomorrowNow are

3    irrelevant and, on that ground, have refused to provide discovery on them.  This limitation,

4    imposed by Plaintiffs at the outset, has determined the way discovery has been conducted for the

5    entirety of the case.  It has impacted every aspect of discovery, including, for example, the search

6    terms both sides have used to locate responsive documents, the custodians Plaintiffs agreed (or

7    would not agree) to produce, the types of documents Plaintiffs agreed (or would not agree) to

8    produce, the scope of the Rule 30(b)(6) testimony Plaintiffs agreed (or would not agree) to

9    provide, and the scope of Extended Discovery Timeline Agreement.

10    On the second issue, Plaintiffs conceded to the Court almost a year ago that SAP

11    customers that did not also have an agreement with TomorrowNow are not relevant to the alleged

12    damages in this case.  Defendants have relied on this limitation in the conduct of their discovery,

13    damages analysis, and case preparation.  It was this limitation that led to the substantial effort that

14    went into compiling the list of 81, which has determined the scope of relevant discovery for both

15    sides.

16    Plaintiffs' belated effort to broaden their damages claims now would hugely expand the

17    scope of discovery and seriously prejudice Defendants.  Even assuming Plaintiffs could produce

18    the enormous volume of information that would be required (which is highly doubtful given that

19    they have not even been able to complete production of the information relevant to their existing

20    damages claims), Defendants and their experts would not have sufficient time to analyze it or to

21    complete the follow up discovery that would be required.  This is true even under the extended

22    case schedule.

23    **(b)    Oracle's Position**:  Because the May 26 Discovery

24    Conference was the first Oracle had heard of this proposed motion, at Oracle's request, the Court

25    ordered meaningful meet and confer to precede any filing.  The Court also noted that Judge

26    Hamilton alone would determine what damages theories are in the case, and that this Court's

27    province is the scope of discovery.  (Nor is it clear that the Court granted permission for

28    Defendants to bring a Rule 37 sanctions motion.)  Thereafter Oracle asked in writing, twice (on

May 26 and on June 3), for Defendants' specific complaints, the bases for those complaints, and the remedies sought, and again asked for such a description in the Parties' telephonic met and confer on June 4. Defendants provided partial written responses on June 4 and June 6, to which Oracle responded with an offer of a significant compromise on June 12. Defendants provided a letter on June 16, mostly in response to Oracle's complaints about their discovery deficiencies, but also with promises to get back to Oracle as to its June 12 proposal.

It is Oracle's position that due to the state of meet and confer and the uncertainty of the complaints, bases, and remedies sought, the issue is not ripe for a motion; indeed Oracle has not digested or responded to Defendants' June 16 letter, which, on its face, states that Defendants have not fully responded to Oracle's inquiries. Nonetheless, Oracle has confirmed its counsel's availability for an August 4 hearing date. Oracle also disagrees with many of the above purported factual bases for this motion. It notes that Defendants' description ignores Oracle's recent meet and confer compromise proposals, which confirmed Oracle does not seek detail into SAP or TomorrowNow customers beyond that described list. Moreover, Defendants also fail to acknowledge the breadth of damages Oracle has sought from the outset of this case, in its various iterations of its complaint, its initial disclosures and written discovery responses (including as supplemented), its testimony, and the documents produced (which include, for example, documents supporting the many pricing exceptions required by competition with TN, and about which Defendants have examined witnesses). Oracle further disputes any efforts to have this Court preclude any of its damages theories, as Defendants apparently intend to ask, given the discovery extension granted by Judge Hamilton and the lack of meet and confer, much less prior Court order on these topics. Oracle will respond to Defendants' motion with these and any other appropriate legal and factual bases.

**ii.      Defendants' Motion to Compel Damages Discovery.**

**(a)      Defendants' Position:**  As discussed above in the section concerning Damages Related Discovery from Oracle, absent adequate cooperation from Oracle, Defendants may need to move to compel further damages discovery. Defendants would greatly prefer to resolve this issue cooperatively with Oracle and will continue to attempt to do so.

1        **(b)      Oracle's Position:**  Oracle's position and initial responses

2   to Defendants' complaints are set forth above.  It too remains committed to meaningful meet and

3   confer.

4              **b.      Oracle's Anticipated Motions**

5        While Oracle expects it will need to move to compel in other areas (*e.g.*, on waiver issues

6   that are currently the subject of extensive meet and confer exchanges) , the most time-sensitive

7   motion it will bring is described below.

8              **i.      Damages Evidence**

9              **(a)      Oracle's Position:**  Oracle intends to bring a motion to

10  compel various discovery related to damages, including discovery on IP valuation and licensing,

11  Defendants' customer information, and the scope of Defendants' use of Oracle's IP.  This

12  discovery is all relevant to Oracle's damages theories, particularly its hypothetical license model.

13       When arguing to Judge Hamilton for the right to an early summary judgment motion

14  about Oracle's hypothetical license damages model (now allowed under the new case schedule),

15  Defendants' counsel asserted that Defendants would oppose the model on a variety of legal and

16  factual bases, including that it is speculative, based on the testimony of certain Oracle witnesses.

17  Judge Hamilton expressly allowed Defendants to bring an early summary judgment motion on

18  Oracle's hypothetical license damages model only if there would be no Rule 56(f) motion by

19  Oracle seeking discovery it needed to oppose that motion – and she permitted prioritized

20  discovery for Oracle to avoid this issue.  The schedule on this motion is: opening papers due

21  August 26, opposition papers due September 23, reply papers due October 7, and hearing on

22  October 28.  Judge Hamilton made it clear she needs and will take significant time to decide this

23  or any other summary judgment motion.  Because of the tight schedule, Oracle has pressed

24  Defendants to provide Oracle all evidence, and the names of all witnesses, Defendants will rely

25  on to oppose, or that have information relevant to the issues in, the hypothetical damages model

26  that Oracle has previewed to Defendants in its discovery responses and testimony and in its May

27  22, 2009 revised Initial Disclosures.  Oracle has also reiterated its long-standing requests to

28  Defendants for evidence that it would use to oppose that motion, including about amounts that

1    SAP has paid for intellectual property it bought instead of took, whether by acquisition or license

2    and, on the flip side, amounts SAP has demanded from others for intellectual property it has sold

3    or licensed.  This evidence would undermine one of Defendants' asserted bases for their early

4    summary judgment motion – namely that Oracle's model is unduly speculative.  Although

5    Defendants profess now that their motion will not address such evidence, that is expressly

6    contrary to what their counsel told Judge Hamilton.  Moreover, Defendants do not get to

7    determine what evidence Oracle uses to rebut their motion.  For example, if Defendants were to

8    argue that a hypothetical license is not available as a matter of law, Oracle could rebut that

9    argument by providing evidence that SAP does, in fact, license its intellectual property to

10   competitors and so the remedy is valid.  It is improper for Defendants to attempt to cut Oracle off

11   from such discovery.

12          Nonetheless, Defendants have refused to provide this evidence, saying that they will do so

13   only if they do not prevail on their early summary judgment motion.  For the same reason,

14   Defendants have refused to tell Oracle the knowledge and proposed relevance to their

15   hypothetical license defenses of the 16 newly named SAP financial-type witnesses, who were

16   added to their May 22, 2009 revised Initial Disclosures.  Oracle needs all of this evidence to

17   prepare for its opposition to the early summary judgment motion; moreover, it needs this

18   evidence for other purposes, including for its damages expert's report, due on November 16.

19   Given that Judge Hamilton will not decide the summary judgment motion until November at the

20   earliest, there is not enough time in the schedule for Defendants to wait for the ruling before

21   providing this necessary discovery to Oracle.  Oracle will therefore ask the Court to order its

22   immediate production in the motion to compel it intends to file for hearing on August 4 (when the

23   Parties and the Court already have scheduled a motion by Defendants related to Safe Passage

24   document production).

25          Oracle also intends to include in this damages-related motion a counter-motion to

26   Defendants' motion set for August 4, in which Oracle will move to compel some generalized Safe

27   Passage discovery that Defendants have thus far said they will not produce.  The Parties have

28   extensively met and conferred on this issue, as described above, and so Defendants are well aware

                                              16

1    of the material Oracle needs.  Oracle will also include Defendants' refusal to identify all

2    customers who received support based on the use of each local environment that exists on

3    TomorrowNow's systems, along with a detailed description of that support.  This information is

4    crucial for Oracle to understand how each environment was used, which has broad implications

5    for both liability and damages.  It is uniquely within Defendants' possession, and their witnesses

6    are able to do the analysis; for example, Catherine Hyde, a former TomorrowNow employee and

7    current paid litigation consultant for Defendants, was able to provide answers for some

8    environments during her most recent deposition.  Moreover, a complete response to this

9    Interrogatory addresses the concise proof problems identified by the Court – and Defendants have

10   thus far rejected the extrapolation stipulation that would make this kind of discovery unnecessary.

11          The Parties have met and conferred extensively on these issues, and Oracle will continue

12   that meet and confer in hopes that motion practice will be unnecessary.  However, based on the

13   advanced status of these discussions, including Defendants' refusal to produce this information in

14   their most recent June 16 letter, Oracle expects to bring this motion to compel for hearing on

15   August 4.

16                              **(b)       Defendants' Position:**

17          Defendants have explained to Plaintiffs on multiple occasions why information regarding

18   SAP's licensing practices or valuations of its own IP is irrelevant, not only to Plaintiffs' damages

19   case in general (as addressed above), but also to Defendants' forthcoming summary judgment

20   motion.  Plaintiffs allege that SAP's licensing practices and the value that it assigns to its IP are

21   relevant as benchmarks for valuing Oracle's IP, and thus relevant to the price SAP would have

22   paid to license Oracle's IP.  However, Defendants' early summary judgment motion will attack

23   Plaintiffs' legal entitlement to pursue their reasonable royalty theory of damages, not the potential

24   amount of a hypothetical license.  Whatever claimed value that SAP's license practices and

25   valuation of IP may have to determining the price of a hypothetical license (which value

26   Defendants dispute), these subjects do not bear on the preliminary matter of whether Plaintiffs

27   may pursue a reasonable royalty theory of damages at all; thus, they have no relevance to

28   Defendants' motion.  Additionally, Defendants have already informed Plaintiffs that Defendants

1    do not at present intend to affirmatively offer any testimony on the value of SAP IP because (as

2    explained below) it is not relevant to this case.   It is inexplicable that Plaintiffs should suggest

3    that Defendants have refused to provide information about 16 "newly named SAP financial-type"

4    witnesses that supposedly have knowledge relevant to Defendants' summary judgment motion;

5    these witnesses were identified by Defendants in targeted search responses months ago, and

6    moreover, do not bear on Defendants' forthcoming motion.  Plaintiffs' statements ignore what

7    Defendants have explained will be the basis of their early summary judgment motion and appear

8    to illustrate that Plaintiffs seem determined to create a "straw motion" to support an artificial

9    "Rule 56 problem" in response to Defendants' early summary judgment motion.

10            With respect to Plaintiffs' proposed motion to compel exhaustive information about the

11   local environments that existed on TomorrowNow's systems, it remains Defendants' position that,

12   having provided Plaintiffs with the data and tools necessary to perform this analysis as well as

13   detailed testimony that represents Defendants' already extensive efforts to provide Plaintiffs with

14   information about the use of TomorrowNow's local environments, Defendants have more than

15   satisfied their burden of responding to this request.   The initial discussions regarding possible

16   extrapolation or a stipulation on these issues presumed that Plaintiffs would not have time to

17   digest all of the data that Defendants have produced.  Plaintiffs asked for and have received

18   substantial additional time for fact and expert discovery, which should moot their continued

19   insistence that Defendants agree to a specific extrapolation methodology.  Moreover, in agreeing

20   to extend the case schedule, the Parties expressly acknowledged that while discussions relating to

21   a possible agreement on extrapolation or stipulation would continue, such an agreement was not a

22   prerequisite to the discovery and case schedule relief the Parties sought from, and that was

23   eventually ordered by, Judge Hamilton.

24            Defendants further maintain that it is completely implausible that this task (at least at the

25   level of detail Plaintiffs seek to force Defendants to respond) could be completed within the time

26   remaining for discovery (much less plausible that it could be completed by a single person, as

27   Plaintiffs suggest).  Plaintiffs' request asks Defendants to chronicle daily events that took place

28   over the course of six years and to summarize massive quantities of business records to which

1    Plaintiffs now have equal access, which is the exact type of task to which Plaintiffs have objected

2    in many of their responses to Defendants' discovery requests.  Defendants will respond to

3    Plaintiffs' motion with these and other appropriate legal and factual grounds to demonstrate why

4    Plaintiffs' contemplated motion is unfounded.  Defendants do not know the basis on which

5    Plaintiffs "will move to compel some generalized Safe Passage discovery," and thus cannot

6    respond to that allegation.

7

8    DATED:  June 18, 2009                          JONES DAY

9

10                                         By:  _____/s/ Jason McDonell_____
                                                          Jason McDonell
11                                                  Attorneys for Defendants
                                               SAP AG, SAP AMERICA, INC., and
12                                                  TOMORROWNOW, INC.

13            In accordance with General Order No. 45, Rule X, the above signatory attests that

14   concurrence in the filing of this document has been obtained from the signatory below.

15

16   DATED:  June 18, 2009                          BINGHAM McCUTCHEN LLP

17

18                                         By:  _____/s/ Bree Hann_____
                                                           Bree Hann
19                                                  Attorneys for Plaintiffs
                                             Oracle USA, Inc., Oracle International
20                                          Corporation, and Oracle EMEA Limited

21

22

23

24

25

26

27

28

JOINT DISC. CONF. STATEMENT
                                                      Case No. 07-CV-1658 PJH (EDL)