# Exhibit "B"



| | | |
|---|---|---|
| "House, Holly" <holly.house@bingham.com><br><br>06/09/2009 06:43 PM | To | "'Scott Cowan'" <swcowan@JonesDay.com> |
| | cc | "Pickett, Donn" <donn.pickett@bingham.com>, "'ewallace@JonesDay.com'" <ewallace@JonesDay.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Hann, |
| | bcc | |
| | Subject | RE: Proposed addendum to permit SAP's insurers access to C and HC information |

History: 🔁 This message has been forwarded.

Scott:  Oracle has reviewed this proposal.  It significantly expands the number of named personnel who could receive Oracle's C and HC discovery material -- from the 11 representatives of defendant's insurance carriers the parties had agreed to and which the Court then ordered to: (i) two internal representatives for each of the 11 carriers (ii) two attorneys for each of the 11 carriers; (iii) two internal representatives for SAP's insurance broker; and (iv) two attorneys from SAP's insurance coverage counsel.  By our count that now totals 46 named individuals.  While that alone is a startling expansion, that number of potential recipients is dwarfed by the unnamed, undisclosed "supervisors or management at the respective SAP Insurer(s)" and "re-insurers, auditors, or regulators" who the proposal say will get any number of "presentations", "reports", "analyses, summaries, memoranda or other documents or records" that might contain Oracle C or HC material.  Even more distressing than the indeterminate amount of additional others who could receive this material is the indeterminate and exponential ways in which the information could be promulgated.  There is virtually no limit as the proposal is written.

Though Oracle remains very concerned about whether all the identified insurance-related parties will protect the extensive sensitive information it has provided in discovery, Oracle is willing to expand the number of fully disclosed individuals to whom its C and HC may be shared.  Indeed, in order to allow for robust discussion among SAP's carriers and counsel, Oracle is willing to expand the allowed number to the full 46 that is now being proposed -- so long as each recipient is identified to Oracle by name, by title and brief job description, by company or firm and so long as each of the 46 signs an adequate certificate of compliance with the addendum to the protective order eventually worked out between the parties and these insurance-related entities, and those are then provided to Oracle. Expanding the number of those who can see Oracle's C and HC discovery material to 46 should allow more than enough of a group to allow for full and robust discussion of anything relevant from Oracle's materials.

What Oracle will not agree to is disclosure of its sensitive discovery material to any non-identified individuals as contemplated by the extensive "caveats" in the proposal (i.e., to the referenced unnamed supervisors, management, re-insurers, auditors and regulators).  Asking Oracle to sign onto such unbounded exposure of its sensitive materials is unreasonable and, as explained below, in all likelihood, unnecessary.  Moreover, as set forth below, there are far more protective procedures that can be employed instead should expansion beyond the group of 46 ever be necessary.

For instance, though Oracle cannot imagine how any of its C or HC discovery material would be required to be passed onto any auditor, regulator or re-insurer, in the unlikely event any such request is made or report required, the affected insurance carrier could raise that with Oracle at the time, identify the specific discovery material to be disclosed and to whom and for what purpose, and Oracle could then consider whether it agrees or whether

there is an alternative that would not require further dissemination of its C or HC discovery material.  This procedure would also be available to any Insurance Carrier or Defendants should they engage in coverage litigation.  The bottom line is that Oracle will not now give wholesale permission for any and all of its C or HC discovery material to be used without participating in the discussion of why and whether it needs to be disclosed and to whom.

Thus, Oracle rejects the virtually unbounded extensions of use in the proposed first paragraph of the "caveats."  While Oracle understands and agrees that the disclosed 46 insurance-related recipients could consider its C and HC discovery material to evaluate coverage, it will not agree to allow the many potential and unregulated and unprotected disclosures set forth in paragraph one of the proposed "caveats."  In other words, it will not allow any of its sensitive material to be rolled into reports or presentations or other documents to undisclosed recipients (though, if such materials are referred to in reports shared only among the disclosed 46, Oracle would permit that, so long as such report clearly indicates it contains Oracle C or HC discovery material than cannot be shared outside the group of 46).

Of course, Oracle's position in no way precludes Defendants from agreeing with their Insurers or anybody else as to who can receive and how they can use any of Defendants' discovery materials.  As we have said before, it is only logical to presume this is the bulk of what Defendants' insurers would need to evaluate whether there is any coverage due Defendants or whether there are defenses against coverage (e.g., Defendants' intentionality or fraud will be proved not from Oracle's documents but from Defendants' documents and testimony).

Finally, Oracle does not mind extending the Paragraph 20 obligations of the Insurers until final resolution of any disputes between SAP and its Insurers.

Oracle believes this is a generous and reasonable counter to the May 4, 2009 proposal by Defendants' insurance-related entities.  We look forward to their and Defendants' response.


Regards, Holly

-----Original Message-----
From: Scott Cowan [mailto:swcowan@JonesDay.com]
Sent: Monday, May 04, 2009 9:47 AM
To: House, Holly
Cc: Pickett, Donn; 'ewallace@JonesDay.com'; Howard, Geoff; Hann, Bree; 'jfroyd@JonesDay.com'; 'jlfuchs@JonesDay.com'; 'jmcdonell@jonesday.com'; Alinder, Zachary J.
Subject: Proposed addendum to permit SAP's insurers access to C and HC information

Holly,

Attached is a proposed addendum to the Stipulated Protective Order to permit SAP's insurers access to C and HC information.  Can you please review this with your clients and let me know as soon as possible whether Oracle agrees to the attached?

Regards,
SWC

*************************************
Scott W. Cowan

Jones Day
717 Texas, Suite 3300
Houston, Texas  77002
Direct: 832-239-3721
Cell: 832-867-2621
Fax: 832-239-3600
Email: swcowan@jonesday.com
***************************************
(See attached file: Proposed SPO Addendum for SAP insurers.DOC)

==========
This e-mail (including any attachments) may contain information that is
private, confidential, or protected by attorney-client or other privilege.
If you received this e-mail in error, please delete it from your system
without copying it and notify sender by reply e-mail, so that our records can
be corrected.
==========

Confidentiality Notice: The information in this e-mail (including attachments,
if any) is considered confidential and is intended only for the recipient(s)
listed above. Any review, use, disclosure, distribution or copying of this
e-mail is prohibited except by or on behalf of the intended recipient. If you
have received this email in error, please notify me immediately by reply
email, delete this email, and do not disclose its contents to anyone.

Circular 230 Notice: To ensure compliance with IRS requirements, we inform you
that any U.S. federal tax advice contained in this communication is not
intended or written to be used, and cannot be used by any taxpayer, for the
purpose of avoiding any federal tax penalties. Any legal advice expressed in
this message is being delivered to you solely for your use in connection with
the matters addressed herein and may not be relied upon by any other person or
entity or used for any other purpose without our prior written consent.