BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachry.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC. *et al*,<br><br>          Plaintiffs,<br><br>     v.<br><br>SAP AG, *et al*.,<br><br>          Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY**<br><br>Date:     August 4, 2009<br>Time:    9:00 a.m.<br>Place:   E, 15th Floor<br>Judge:   Hon. Elizabeth D. Laporte |

A/73069594.11                                           Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND
INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

**TABLE OF CONTENTS**

Page

MOTION AND NOTICE OF MOTION ................................................................................... 1

RELIEF SOUGHT ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

I.   INTRODUCTION ........................................................................................................... 2

II.  DISCOVERY ORACLE SEEKS TO COMPEL ............................................................. 3

III. LEGAL STANDARD FOR AVAILABILITY OF EVIDENCE ORACLE SEEKS ........ 6

IV.  THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE THE
     REQUESTED DAMAGES-RELATED DISCOVERY .................................................... 7

     A.   The Intellectual Property and Intangible Asset Valuation Information
          Oracle Seeks Is Highly Relevant .......................................................................... 7

     B.   There Is a Minimal Burden Associated With Producing Responsive
          Documents ............................................................................................................ 9

     C.   SAP's Applications Sales and Contract Renewal Rates Documents Are
          Also Relevant to Oracle's Damages Analysis .................................................... 10

V.   THE COURT SHOULD ORDER DEFENDANTS TO SPECIFY HOW THEY
     MISUSED ORACLE'S IP ............................................................................................. 12

     A.   Relevance and Significance of Information Sought by Interrogatories 13
          and 14 .................................................................................................................. 12

     B.   Defendants Should Provide Detailed Information About Their Use of
          Oracle's Intellectual Property ............................................................................. 14

A/73069594.11                                i                        Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND
INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

**TABLE OF AUTHORITIES**

**CASES**       Page

*Bruce v. Weekly World News, Inc.*, 310 F.3d 25 (1st Cir. 2002) .................................................... 7

*Equal Employment Opportunity Comm'n v. Lexus of Serramonte*, 2006 U.S. Dist. LEXIS 66438 (N.D. Cal. 2006) ............................................................................................ 6, 7

*Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) .......................................... 7

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ............................................................................. 6

*Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700 (9th Cir. 2004) ..................................... 6, 7

*Thorton v. J Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. 2008)................................................. 7

**STATUTES**

Federal Rule of Civil Procedure 33............................................................................................ 14, 15

Federal Rule of Civil Procedure 26............................................................................................ 6, 16

**OTHER AUTHORITIES**

Ninth Circuit Model Civil Jury Instruction 17.23 (Copyright Damages - Actual Damages)  (2007)........................................................................................................................ 6

A/73069594.11     ii     Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on August 4, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, CA, Courtroom E, 15th Floor, before the Hon. Elizabeth D. Laporte, Plaintiffs Oracle USA, Inc., Oracle International Corp., and Oracle EMEA Ltd. will move to compel Defendants to produce documents necessary for proving damages and to supplement the response to interrogatories related to Defendants' use of Plaintiffs' intellectual property.  This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Holly A. House and Geoffrey M. Howard, and upon such other matters presented to the Court at the time of the hearing.

**RELIEF SOUGHT**

Pursuant to Fed. R. Civ. P. 37,[1] Plaintiffs Oracle USA, Inc., Oracle International Corp., and Oracle EMEA Ltd. (collectively, "Oracle" or " Plaintiffs") seek to compel Defendants SAP AG, SAP America, Inc. (together, "SAP"), and TomorrowNow, Inc. ("SAP TN," and together with SAP, "Defendants") to produce certain documents responsive to Requests for Production 21-23 and 27 from Plaintiffs' Second Set of Requests for Production of Documents and subpart (l) of Plaintiffs' First Targeted Search Request, and to provide supplemental responses to Interrogatory 13 from Oracle Corporation's First Set of Interrogatories and Interrogatory 14 from Oracle USA, Inc.'s Second Set of Interrogatories to Defendant SAP TN.

---

[1] Pursuant to Fed. R. Civ. P. 37(a)(1), Oracle's counsel affirms that they have conferred with opposing counsel in a good faith effort to reach agreement about this matter.  *See* Declaration of Holly A. House in Support of Motion to Compel ("House Decl.") ¶¶ 7-8; Declaration of Geoffrey M. Howard in Support of Motion to Compel ("Howard Decl.") ¶¶ 6-7.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Oracle brings this motion to obtain (1) documents related to its hypothetical license damages claims, and (2) interrogatory responses related to what materials Defendants took or copied, with which credentials, and what they did with those materials.  Two and half years into the case, Defendants should have provided these answers long ago.

This motion has particular urgency as to the first category of information.  Judge Hamilton has allowed Defendants to file an early summary judgment motion on Oracle's right to seek damages through a hypothetical license on August 26, which Oracle must oppose on September 23 and which will be heard on October 28.  Judge Hamilton made this exception based on Defendants' assurances that they would prioritize any relevant discovery so that Oracle would have no basis for a Rule 56(f) motion seeking additional, relevant discovery – which Oracle clearly will, should Defendants not produce the requested information.  *See* House Decl., ¶6 (citing CMC Order).

The information Oracle seeks relates to Defendants' valuation of intellectual property and intangible assets they have acquired legally – rather than simply taken.  This information provides potential benchmarks against which Oracle's hypothetical license can be measured and also undermines any claims from Defendants protesting they never would have paid what Oracle seeks in damages.  Defendants oppose production of this information because, they say, their scheduled motion is purely legal in nature and, if granted, the discovery will not be relevant.  But irrelevance is a high hurdle, and Defendants do not meet it.  Although Defendants have not yet filed their motion, they have indicated that  one of Defendants' arguments against Oracle's hypothetical license model is that it requires the jury to speculate based on what the parties would have agreed to – which makes this discovery highly relevant.  Moreover, Oracle is confident it is legally entitled to seek damages through a hypothetical license damages model; there is ample Ninth Circuit authority in support.  However, the parties will not have Judge Hamilton's ruling for some time after the October 28 hearing, and Oracle's expert reports are due November 16.  So, Oracle must promptly get this discovery to effectively

1  oppose Defendants' motion, to assist its damages experts and, should Oracle prevail against

2  Defendants' early summary judgment motion, to prepare for trial.

3         As to the second category of information – data about what Oracle intellectual

4  property SAP TN took, and what it did with it – this is foundational discovery that goes to the

5  heart of Oracle's liability and damages case.  Defendants have no legitimate reason for refusing

6  to answer, and should not be permitted to escape discovery because the scope of their theft and

7  misuse is so broad.

8         After extensive meet and confer sessions and correspondence, and consistent with

9  Oracle's description in the most recent joint discovery conference statement and discussion with

10  the Court at the June 30, 2009 discovery conference, Oracle moves for an Order compelling

11  Defendants to respond to two interrogatories, four requests for production, and one Targeted

12  Search sub-part, subject to the limitations discussed below.  This discovery is narrowly tailored,

13  not overly burdensome, and will significantly advance the issues in the case.

14  **II.   DISCOVERY ORACLE SEEKS TO COMPEL**

15         **Intangible Asset and Intellectual Property Valuation and Licensing:** Because

16  of the relevance to Defendant's hypothetical negotiations with Oracle valuing the Oracle

17  intellectual property ("IP") Defendants infringed, Oracle first served discovery requests relating

18  to SAP's valuation and licensing practices in July 2008.[2]  *See* House Decl., ¶7.  Since then, it has

---

[2] Specifically, Oracle seeks:

> (1) Documents relating to licenses between SAP and any "independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications or to any license Defendants deem comparable to the type of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants." (RFP 23);
>
> (2) Documents "related to the allocation of the purchase price for Business Objects, including the determination of the fair value in accordance with FAS 141 and 142 of the identified intangible assets acquired." (RFP 27); and
>
> (3) Documents showing SAP's valuation of the intellectual property of any company it has acquired." (Targeted Search No. 1,

(Footnote Continued on Next Page.)

A/73069594.11    3    Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

1  questioned SAP witnesses, including board members, on this topic. *Id.* Defendants have

2  consistently refused to produce any responsive documents. *Id.* Over the eleven months since its

3  original requests, Oracle has met and conferred with Defendants multiple times regarding their

4  refusal to produce any responsive documents. *Id.* Because of the urgency created by

5  Defendants' early summary judgment filing, on June 5, 2009 Oracle sent another letter providing

6  additional information for Defendants and seeking their final position. *Id.* On June 16,

7  Defendants again refused to provide responsive materials. *Id.* As meet and confer is complete

8  and there is little time left for Oracle's "prioritized" discovery as ordered by Judge Hamilton,

9  Oracle moves to compel.

10  **Sales Pipeline and Contract Renewal:** Because of their relevance to SAP's

11  expectations going into any hypothetical license negotiations with Oracle, Oracle also seeks

12  information related to SAP's historic applications sales pipeline close rates and support contract

13  renewal rates.[3] For nearly a year, Defendants have objected to these requests. *See* House Decl.,

14  ¶8. Most recently, Defendants offered a truncated meet and confer limited to information

15  regarding SAP TN customers and the "list of 81." *Id.* This is insufficient, and beside the point

16  of the requests, which relate to the overall picture SAP had both going into any hypothetical

17  license and to the expected and actual impact of SAP TN's acquisition on SAP's business goals.

18  In light of the rapidly approaching summary judgment motion, as well as the rapidly approaching

19  deadline for damages reports, Oracle moves to compel this discovery.

20  **Use of Oracle's Intellectual Property:** As the Court is aware from the regular

21  updates at the discovery conferences, through discovery, Oracle has investigated many of SAP

---

(Footnote Continued from Previous Page.)

       subpart (l)).

*See* House Decl., ¶¶2-3 & Exs. A-B.

[3] RFP 21 from Plaintiffs' Second Set of Requests for Production seeks "all Documents relating to SAP AG or SAP America's historic applications sales pipeline close rates, including percent closed, time to close, and factors driving closure," while RFP 22 seeks "all Documents related to SAP AG or SAP America's historic service contract and application license renewal rates, including percent renewed and factors driving renewal." *See* House Decl., ¶1 & Ex. A.

A/73069594.11     4     Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

1   TN's computers and servers, on which reside myriad local software environments (copies of
2   Oracle's software applications) and downloads from Oracle's website.  To determine which of
3   these of copies are illicit, Oracle needs more information from SAP TN, including from where
4   these copies came, under what circumstances, and to what use were they then put.
5           To obtain this necessary information, all of which should be or is in Defendants'
6   possession, Oracle served interrogatories early in the case, asking SAP TN to describe which
7   materials it improperly downloaded from Customer Connection ("Interrogatory 13")[4] and how
8   each local environment on SAP TN's systems was used to support which customers
9   ("Interrogatory 14").[5]  Defendants' responses have been, at best, perfunctory, referring Oracle to
10  Defendants' document productions or to broad deposition testimony.  *See* Howard Decl., ¶¶4-5
11  & Exs. C-D.  Oracle first sought judicial assistance regarding Interrogatory 14 in early 2008
12  from then-discovery referee Judge Legge.  Relying on Defendants' assurances that their
13  document production would provide the answers, Judge Legge required Defendants to continue
14  investigating and evaluating their response.  Howard Decl., ¶6 & Ex. E.  However, when Oracle
15  reminded Defendants of this obligation in April 2009, pointing out that their production does not
16  in fact indicate which environment was used to support which customer, Defendants still
17  declined to appropriately update their interrogatory response, choosing only to update the
18  response to include more conclusory and insufficient statements.  Further meet and confer was
19  unavailing.  *Id.* ¶¶6-7.  For Interrogatory 13, relating to identification of improper downloads,

---

[4] Interrogatory No. 13 from Oracle Corporation's First Set of Interrogatories to TomorrowNow: "Describe in as much detail as possible all Software and Support Materials that "have been downloaded beyond those that, according to TN's records, related to applications licensed to the particular customer on whose behalf the downloads were made," as alleged in ¶ 15 of Your Answer, including but not limited to Identifying the "records" You referenced in making Your determination."  Howard Decl., ¶2 & Ex. A.

[5] Interrogatory No. 14 from Oracle USA, Inc.'s Second Set of Interrogatories to TomorrowNow: "For each local environment Identified in Your responses to Interrogatories 12 and 13, Identify all Customers who received support based on the Use of that environment, and a detailed description of that support…including, where applicable, Identification of the name, number, version or other Identifying information of the product provided as part of the support."  House Decl., ¶3 & Ex. B.

meet and confer was similarly unsuccessful.  *See id.*  Oracle accordingly moves to compel.

### III. LEGAL STANDARD FOR AVAILABILITY OF EVIDENCE ORACLE SEEKS

Each party has the right to discover non-privileged information "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Employment Opportunity Comm'n  v. Lexus of Serramonte*, 2006 U.S. Dist. LEXIS 66438 at *15-16 (N.D. Cal. 2006) (internal citation omitted).  When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that it does not come within the scope of relevance as defined under Rule 26(b)(1).  *Id.*

Defendants' continued refusal to provide comprehensive data related to Oracle's hypothetical license damages model (and, as explained at Section V below, regarding Defendants' use of Oracle's IP) hampers Oracle's ability to prove its case.  Oracle may pursue as damages the license it credibly demonstrates to a jury that Defendants would have paid, and Oracle would have accepted, for the privilege of using the Oracle IP that Defendants infringed in the manner that Defendants actually used it ("hypothetical license").  *See Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 707-09 (9th Cir. 2004) (discussing hypothetical license as among the available damages models for copyright infringement); *accord Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (damages for copyright infringement may be measured by hypothesizing "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work") (internal citation omitted).  *See also* Ninth Circuit Model Civil Jury Instruction 17.23 (Copyright Damages - Actual Damages)  (2007) ("The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work.").  The availability to Oracle of this measure of its copyright damages is what Defendants' upcoming August 26, 2009 summary judgment motion will attack.

Moreover, the mindset of the parties in a hypothetical negotiation, and factual

A/73069594.11 | 6 | Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

1  context for the negotiation, are among the facts relevant to assessing the amount of a
2  hypothetical license: "Common sense dictates that an expert may confer with the copyright
3  holder and that the background data may be factored into calculations of actual damages." *Polar*
4  *Bear*, 384 F.3d at 709.  *See also, e.g., Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 406
5  (S.D.N.Y. 2002) (indicating importance of contextual evidence about appropriate licensing fee
6  between competitors).  Moreover, "[p]roof of industry practice inarguably is crucial to the
7  estimation of actual damages," as is evidence of any benchmark license.  *Bruce v. Weekly World*
8  *News, Inc.*, 310 F.3d 25, 29-30 (1st Cir. 2002); *Thorton v. J Jargon Co.*, 580 F. Supp. 2d 1261,
9  1276 (M.D. Fla. 2008) ("Courts have found adequate evidence supporting a finding of fair
10 market value when…the plaintiff produces evidence of benchmark licenses, that is, what
11 licensors have paid for the use of similar work").  This law clearly makes relevant (as part of the
12 factual context and mindset) SAP's historical valuation and licensing practices, and its historic
13 applications and support sales pipelines, and renewal, cross-sell and upsell expectations going
14 into any hypothetical negotiation.

15 **IV.    THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE
         THE REQUESTED DAMAGES-RELATED DISCOVERY**
16

17      **A.    The Intellectual Property and Intangible Asset Valuation
               Information Oracle Seeks Is Highly Relevant**

18              In the parties' recent meet and confer efforts, Defendants have cited relevance as
19 the basis for not producing the valuation and licensing materials Oracle seeks.  *See* House Decl.
20 ¶7.  As set forth above, irrelevance is a difficult standard to prove and Defendants fail to meet it
21 here.  *See Equal Employment Opportunity Comm'n,* 2006 U.S. Dist. LEXIS 66438 at *15-16.
22              Under the hypothetical license model, the valuation of the intellectual property
23 Defendants infringed is a central issue.  It is also the topic of Defendants' scheduled early
24 summary judgment motion which Oracle must shortly oppose.  Oracle has long sought from SAP
25 the production of two categories of documents related to this model (and other available damages
26 theories):  SAP's own licensing under similar conditions and valuations of its and others'
27 intellectual property and other acquired assets.  *See* House Decl., ¶¶2-3 & Exs. A-B (RFP 23,
28 RFP 27 and subpart (l) of Plaintiffs' First Targeted Search).

1          Both categories of valuation documents are relevant in a variety of ways. First, to the extent SAP negotiates licenses for its own IP with competitors and other third parties, that fact undermines Defendants' contention that Oracle may not pursue a hypothetical license damages model at all on grounds that such a scenario is "unduly speculative." Second, the methodologies employed and results of Defendants' intellectual property and intangible assets valuations themselves (including valuations of acquired intellectual property, goodwill and other intangible assets) are directly relevant to the analysis of the price the parties reasonably would negotiate in the hypothetical license scenario. For instance, Defendants' prior licenses of enterprise software to any independent software support provider could potentially be a useful benchmark for Oracle to use to support its own damages calculations.

          SAP's own IP and acquired asset valuation data also is directly relevant to Oracle's hypothetical license analysis and unjust enrichment analysis, both of which consider in part a valuation of IP and associated customer relationships. Specifically, Defendants' allocation of the purchase price for an acquired company, as required by accounting standards FAS 141 and 142, provides a demonstration of how – when not in litigation – Defendants independently value acquired intellectual property and other intangible assets; this is relevant to what Defendants "would have been reasonably required to pay" for Oracle's IP in this case. Moreover, Oracle expects SAP to argue it would never have paid the license fees that Oracle will argue are appropriate for what Defendants stole. How much SAP has in fact been willing to pay for IP and other intangible assets it acquired legitimately (by acquisition or license) is highly relevant to rebut this anticipated SAP argument. In addition, Defendants' valuation methodologies including, but not limited to, Defendants' assumptions related to the duration of customer relationships, customer attrition rates and the forecast of future revenue and income from the sale of additional products and services to those customers, offer evidence of appropriate measures for Oracle to use in measuring its damages. They also provide evidence to rebut any attacks Defendants make on Oracle's valuation techniques.

### B. There Is a Minimal Burden Associated With Producing Responsive Documents

Responding to these requests will impose little burden on Defendants. SAP knows to whom it licenses its software (if anybody), and the terms it receives. Oracle seeks to compel only documents sufficient to show the existence, scope, and terms of any such licenses with independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications or any license Defendants deem comparable to the type of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants. As for IP and intangible asset valuations done in connection with allocations of the purchase price of acquisitions, these tend to be discrete analyses – often in a single document. *See, e.g.,* House Decl., ¶9. Plaintiffs' original request for this information was limited to documents regarding SAP's acquisition of Business Objects, and Plaintiffs later added a request for valuations of other acquired companies. *See, e.g.,* House Decl., ¶¶1-2, 7. Plaintiffs are now willing to accept a limited subset of valuation documents. Namely, as described below, documents sufficient to show (i) the allocation of the purchase price from three specific SAP acquisitions and (ii) the license or valuation documents for any acquisitions that Defendants contend are a more appropriate benchmark:

***Purchase Price Allocations for Three SAP Acquisitions.*** Plaintiffs seek to compel documents sufficient to show allocation of purchase price, including the determination of the fair value in accordance with FAS 141 and 142 of the identified intangible assets acquired, associated with SAP's acquisitions of Business Objects, MaXware, and OutlookSoft Corporation. Each of these SAP acquisitions involved companies -- like TomorrowNow -- where it appears the predominant asset acquired was IP and/or a customer base into which SAP hoped to sell its other applications. House Decl. ¶10-13 & Exs. F-H. They range in size from larger to smaller so as to avoid any attack by SAP that Oracle has cherry-picked a mismatched acquisition. *Id*. The valuation numbers and associated spreadsheets will provide Oracle insight into SAP's general valuation policies and approaches and, perhaps, will provide useful benchmarks for the IP valuation in this case. There would be a minimal burden on Defendants

A/73069594.11                                  9                       Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND
INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

associated with providing Plaintiffs this information, due to the limited nature of the request and the straightforward nature of purchase price allocation documents.

*Alternative Benchmarks.*  Plaintiffs also seek to compel any IP and intangible asset valuation documents which Defendants intend to use in support of an alternative benchmark for a hypothetical license and/or contend are a more appropriate benchmark. Defendants cannot refuse to produce this information on the basis of relevance and then introduce such evidence in support of its own position at a later date.  Defendants must provide any alternative IP valuation benchmarks it intends to rely on later in this litigation, or confirm to Oracle that it is their position that no such alternative benchmarks from their licensing or acquisition portfolio exist.

Under the authorities cited above and in accordance with the limited scope of discovery Oracle now seeks, the Court should compel Defendants to respond to these relevant and non-burdensome requests.

**C.     SAP's Applications Sales and Contract Renewal Rates Documents Are Also Relevant to Oracle's Damages Analysis**

SAP's pipeline close rate data related to applications sales, which Oracle seeks through RFP 21, also is important damages-related data.  This information indicates the rate at which SAP converts sales opportunities into (1) new license revenue on SAP software applications; and (2) support revenue on new and existing software applications (either SAP's or, with SAP TN's assistance, Oracle's).  SAP planned to, and did, achieve a greater number of new license sales by using SAP TN to entice customers, and to undermine customer perceptions of Oracle's support pricing (SAP TN offered support at half off, because it stole rather than developed the necessary IP).  SAP's exploitation of SAP TN customers and prospects gained through advertising SAP TN services (also known as "cross-sell and up-sell") represents available damages.

Oracle needs the pipeline close rate data to demonstrate SAP's anticipated and actual success in leveraging existing customers into these new and expanded revenue sources. SAP's cross-sell and up-sell history informs the value of TomorrowNow to SAP because an

A/73069594.11                                    10                       Case No. 07-CV-01658 PJH (EDL)

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DAMAGES MODEL AND
INTERROGATORY RESPONSES RELATED TO USE OF PLAINTIFFS' INTELLECTUAL PROPERTY

Oracle customer recruited to TomorrowNow for support services is a marketing opportunity for SAP. Application sales data from SAP would show that, once SAP TN created a relationship with the Oracle customer, SAP leveraged cross-sell and up-sell abilities to secure larger future revenue streams from the client, with the goal of transitioning the customer from Oracle entirely. Moreover, insofar as SAP's Safe Passage program affected pipeline close rates, that evidence is a central issue in this litigation, because it shows the impact that the TomorrowNow acquisition and Safe Passage had on SAP's ability to close applications sales – a direct measure of the benefits SAP realized from acquiring and promoting SAP TN's corrupt business model. These benefits are therefore relevant to and includable as part of Oracle's calculation of damages resulting from Defendants' illegal activities. All this data, therefore, directly informs Oracle's hypothetical license analysis, because it goes to the value of SAP TN (and its stolen IP) to SAP.

Oracle has explained to Defendants repeatedly how SAP's support renewal rates are relevant. *See* House Decl., ¶8. For instance, evidence of SAP's own renewal rates would impact the credibility of possible SAP attacks on the cause of changes in Oracle's support renewal rates, *e.g.*, arguments by SAP that reduced Oracle renewals reflect poor service by Oracle rather than SAP's cut-rate support on Oracle's applications using Oracle's own IP. SAP's renewal rate histories also inform the hypothetical license analysis by evidencing SAP's expectations for future support revenues.

Finally, to minimize any burden on Defendants, Oracle is willing to accept production of less than all documents reflecting these applications sales close and support renewal rates; it will accept documents "sufficient to show" the application sales close rate and support renewal rate over the relevant period, thereby narrowing the request significantly.

Because the material is clearly relevant, because its production is not burdensome, and because Defendants agreed at the recent Case Management Conference to prioritize any discovery Oracle identifies that it may need to take in advance of Defendants' motion on the hypothetical license, the Court should compel Defendants to immediately respond as Oracle requests.

## V. THE COURT SHOULD ORDER DEFENDANTS TO SPECIFY HOW THEY MISUSED ORACLE'S IP

### A. Relevance and Significance of Information Sought by Interrogatories 13 and 14

As the Court is aware, before SAP shut it down, SAP TN provided software support and maintenance services for PeopleSoft, J.D. Edwards, and Siebel software applications, including bug fixes and tax and regulatory updates. Discovery to date has revealed that, to provide these services for its customers, SAP TN made copies of the relevant software applications to maintain on SAP TN's systems, and to use as training, reference, development, testing, and troubleshooting tools related to providing customer support. *See* Third Amended Complaint, Docket #182 ("TAC") ¶¶14, 18-19, 118. Once it had a copy, SAP TN would then treat that software as its own, and would manipulate, change, use to create derivative works, and further copy it at leisure. *Id*. SAP TN had different sources for these local environments: sometimes it copied a new customer's actual software application CDs, while other times it simply copied another customer's local environment made from the same software release. *See id.* ¶19, 114-116. At all times, it maintained a set of generic environments not labeled according to any particular customer that it used to support multiple customers. *Id.* ¶¶18-19, 118.

For these environments to be useful, they needed to be up-to-date with the latest software fixes and changes from Oracle. SAP TN would therefore routinely use its customers' credentials to log on to Oracle's customer support website, Customer Connection, where it would download Oracle's support materials onto its systems. *Id.* ¶117. In some cases it performed these downloads manually. Other times, it used a variety of automated tools it built for that purpose. *See id.* ¶¶16, 97-99. For some time, they simply dumped all downloads into a single, undifferentiated network folder. *See id.* ¶131. SAP TN would then use these downloaded support materials to, among other things, update the local environments with Oracle's latest fixes. *Id.* ¶117.

Using these updated local environments for investigation, development, and testing, SAP TN created its software support materials, sharing work done on and copies made from one customer's local environment with many different customers. *Id.* ¶¶18-19, 23, 32, 118-

120. This was SAP TN's general business model, which SAP expanded to Siebel and across global markets after acquiring the company in January 2005. Oracle contends that, among other things, SAP TN's creation, subsequent copying, and use of these local environments, and its downloading of materials from Customer Connection, constitute copyright infringement, violations of computer fraud statutes, breach of contract, and interference with prospective economic advantage. *See id.* ¶¶147-194.

Because Defendants have refused to agree to an extrapolation stipulation as to SAP TN's routine business conduct, Oracle must now parse through these myriad local environments and downloads to determine which are illicit and which acts of customer support are illegal. To do so, Oracle needs information only SAP TN can provide, including how SAP TN got its downloads and copies, under what circumstances, and how it used them to support specific customers – the very proof Defendants will undoubtedly claim Oracle must have at trial.

For example, with regard to downloaded materials, Oracle cannot tell by looking at a specific downloaded item which customer's credentials SAP TN used to download that item, in many cases because SAP TN mingled all its downloads together. Only SAP TN has this information, if anyone does. Oracle must know which customer's credentials were used to determine whether that customer was entitled to that download, or if it was illegal. As another example, Oracle cannot tell how SAP TN used a given local environment by examining it, including which customers received support based on that environment, how many times, and the extent of the environment's involvement in creation of support. Again, only SAP TN knows how each local environment was used to support its customers. Oracle needs this information to understand and prove the scope of SAP TN's copying and use, and the related scope of the hypothetical license that the parties would have negotiated.

To obtain this necessary information, all of which should be or is in Defendants' possession, Oracle served interrogatories early in the case, asking SAP TN to describe which materials it improperly downloaded from Customer Connection (Interrogatory 13) and how each local environment on SAP TN's systems was used to support which customers (Interrogatory 14). Defendants' responses have been, at best, perfunctory. *See* Howard Decl. ¶¶2-3 & Ex. A-B.

Defendants' continued refusal to provide comprehensive and sufficient responses to these discovery requests forced Oracle to bring this motion to compel.

### B. Defendants Should Provide Detailed Information About Their Use of Oracle's Intellectual Property

*The Information Is Highly Relevant.*  As discussed above, Interrogatories 13 and 14 (*see* fns. 4 & 5, above) seek highly relevant information about how SAP TN used its local environments and which of its Customer Connection downloads were improper.  *See* Howard Decl., ¶¶2-3 & Exs. A-B.  How SAP TN used Oracle's intellectual property to support its customers goes to the heart of this case.

*SAP TN Is the Best Source.*  No one has – or could have – more knowledge about how SAP TN improperly downloaded, copied and used Oracle's intellectual property than SAP TN itself.  The practices that Oracle contends constitute copyright infringement (and more) were the foundation and routine of how SAP TN supported its customers –its personnel regularly downloaded items from Customer Connection and used their copied local environments to support customers.  Oracle cannot compile such information from secondhand sources as easily (if Oracle can even do so, and Defendants have not told Oracle how it could), while SAP TN can simply ask its former employees, several of whom are now its paid litigation consultants (and should have collected this very information from all its employees before terminating them).

One such consultant was able to identify the source of certain environments during her deposition.  Howard Decl. ¶8.  This proves that SAP TN can ask its consultants or other employees to do the same for the sources of the remainder of the local environments identified by Defendants in their other interrogatory responses.  Not only is it more efficient for SAP TN to compile the answers to questions about its improper downloads and use of Oracle's materials, but because SAP TN's knowledge of its conduct is understandably the most detailed, it is the best source for complete information.

Federal Rule of Civil Procedure 33(d) only allows a party to shift the burden of responding to this type of request where "the burden of deriving or ascertaining the answer will be substantially the same for either party."  The burden is far from equivalent in these

circumstances. The Court should not allow Defendants to rely on Rule 33(d) in response to this interrogatory – particularly since it is by no means clear that Defendants' production even includes this information.

*Any Difficulty Is of Defendants' Own Making.* There is no doubt that these questions, which are crucial to proving Defendants' misconduct, can in fact be answered, as evidenced by answers provided by Catherine Hyde, formerly SAP TN's key PeopleSoft support developer and now a paid litigation consultant, at deposition about the source of several specific environments. *See* Howard Decl., ¶8. She certainly can answer as to other environments, as can other current or former SAP TN employees familiar with their daily support practices. Likewise, for any Customer Connection materials SAP TN truly contends it had authorization to take, SAP TN should be able to reconstruct from its records and employees the analysis showing such entitlement.

The work can be done (indeed, it may already be done in whole or in part, for all Oracle knows); that it is a complex and difficult task is not Oracle's fault, but Defendants', due to the sheer volume of their theft as well as their apparently sloppy record-keeping. Defendants should not escape identifying what they did wrong because of the enormity of their misconduct, their failure to keep clean records (even though they operated on the assumption, from day one, that Oracle would sue them), and their conscious burying of information sources in shutting down the company after having these requests in their hands for over a year. Moreover, given the extension to the case schedule, as well as their refusal to engage in this analysis for well over a year and their unwillingness to agree to fact stipulations, Defendants cannot reasonably complain that they do not have enough time to respond.

*If Defendants Cannot Answer, They Must Say So and Specify Previous Steps Taken to Preserve Such Evidence.* Interrogatory 13 seeks a list of materials improperly downloaded by Defendants from Customer Connection. In meet and confer and in their response to Interrogatory 13, Defendants contend that it is impossible for them to map SAP TN's downloads from Customer Connection to specific Oracle products without further information from Oracle. *See* Howard Decl., ¶4 & Ex.C. This is incorrect. The Interrogatory specifically

1  asks SAP TN to identify all those materials that, "according to TomorrowNow's records," were
2  downloaded using credentials of a customer not entitled to those materials.  If SAP TN's records
3  are insufficient to supply this information – in other words, if Defendants cannot determine *from*
4  *their own sources* what credential was used to download materials, much less whether a given
5  item on their systems was downloaded from Customer Connection using a properly-licensed
6  customer's credentials – then that is an important, and telling, admission, and Oracle is entitled
7  to it.  The same principle applies to the information about local environments sought by
8  Interrogatory No. 14.
9          To the extent that Defendants rely on their own inability to provide this
10 information to Plaintiffs, Oracle requests that Defendants at least provide details as to the steps
11 taken to collect and/or preserve such evidence prior to, at the time of, and after the wind down of
12 SAP TN, and that they provide a full, specific declaration as to why they can not provide the
13 information requested.  Federal Rule of Civil Procedure 26(b)(1) entitles Plaintiffs to knowledge
14 about the "existence, description, nature, custody, condition, and location of any documents or
15 other tangible things and the identity and location of persons who know of any discoverable
16 matter."  Thus, Oracle is entitled to the details of Defendants' preservation of responsive
17 evidence - or lack thereof.

19 DATED:  June 30, 2009                     Bingham McCutchen LLP

                                            By:         /s/    Holly A. House
                                                       Holly A. House
                                                     Attorneys for Plaintiffs
                                            Oracle USA, Inc., Oracle International
                                            Corporation, and Oracle EMEA Limited