1   Robert A. Mittelstaedt (SBN 060359)
    Jason McDonell (SBN 115084)
2   Elaine Wallace (SBN 197882)
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA 94104
4   Telephone:    (415) 626-3939
    Facsimile:    (415) 875-5700
5   ramittelstaedt@jonesday.com
    jmcdonell@jonesday.com
6   ewallace@jonesday.com

7   Tharan Gregory Lanier (SBN 138784)
    Jane L. Froyd (SBN 220776)
8   JONES DAY
    1755 Embarcadero Road
9   Palo Alto, CA 94303
    Telephone:    (650) 739-3939
10  Facsimile:    (650) 739-3900
    tglanier@jonesday.com
11  jfroyd@jonesday.com

12  Scott W. Cowan (Admitted *Pro Hac Vice*)
    Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13  JONES DAY
    717 Texas, Suite 3300
14  Houston, TX 77002
    Telephone:    (832) 239-3939
15  Facsimile:    (832) 239-3600
    swcowan@jonesday.com
16  jlfuchs@jonesday.com

17  Attorneys for Defendants
    SAP AG, SAP AMERICA, INC., and
18  TOMORROWNOW, INC.

19              UNITED STATES DISTRICT COURT

20            NORTHERN DISTRICT OF CALIFORNIA

21              SAN FRANCISCO DIVISION

22  ORACLE USA, INC., et al.,          Case No. 07-CV-1658 PJH (EDL)

23          Plaintiffs,                **DEFENDANTS' OPPOSITION TO
                                        PLAINTIFFS' MOTION TO
24      v.                             COMPEL PRODUCTION OF
                                        DOCUMENTS RELATED TO
25  SAP AG, et al.,                    DAMAGES MODEL AND
                                        INTERROGATORY RESPONSES
26          Defendants.                RELATED TO USE OF PLAINTIFFS'
                                        INTELLECTUAL PROPERTY**

27                                      **DISCOVERY MATTER**

28
                                        DEFENDANTS' OPPOSITION TO PLAINTIFFS'
                                             MOTION TO COMPEL PRODUCTION
                                              Case No. 07-CV-1658 PJH (EDL)

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    LEGAL STANDARDS............................................................................................... 2

III.   ARGUMENT .............................................................................................................. 5

    A.   TN Properly Responded to Interrogatory 13........................................................ 6

        1.   Oracle's Actual Request............................................................................ 6

        2.   Defendants Gave a Specific, Narrative Response to Interrogatory 13........ 7

        3.   Defendants Properly Relied on Rule 33(d) ................................................ 7

        4.   Oracle's Characterization of Interrogatory 13 is Cumulative and Creates an Undue Burden on Defendants ................................................. 10

    B.   TN Properly Objected and Responded to Interrogatory 14 ................................. 13

        1.   Oracle's Actual Request.......................................................................... 14

        2.   TN Properly Objected and Responded to the Request............................. 14

        3.   TN Properly Relied on Rule 33(d) .......................................................... 15

            (a)   The first criterion under Rule 33(d) is satisfied because Oracle is able to locate the "records to be reviewed" "as readily as" TN ............................................................................... 16

            (b)   The second criterion under Rule 33(d) is satisfied because the burden is comparable ............................................................ 18

        4.   Interrogatory 14 "Must" Be Limited under Rule 26(b)(2)(C) ................. 20

    C.   Oracle Is Not Entitled to the Declaration It Seeks .............................................. 21

IV.    ORACLE'S REQUEST FOR "DAMAGES-RELATED" DISCOVERY IS MOOT ...... 22

V.     CONCLUSION ......................................................................................................... 23

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**Cases**</u>

4

*Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*,
   105 F.R.D. 16 (S.D.N.Y. 1984) ................................................................................. 5

5

*Goodrich Corp. v. Emhart Indus., Inc.*,
   No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25158

6

   (C.D. Cal. Oct. 12, 2005) ........................................................................... 4, 5, 17

7

*Petroleum Ins. Agency, Inc. v. Hartford Accident and Indem. Co.*,
   111 F.R.D. 318 (D. Mass. 1983) ............................................................... 4, 5, 19

8

*Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*,
   108 F.R.D. 304 (D.P.R. 1985) ....................................................................... 19

9

*Saddler v. Musicland Pickwick Int'l, Inc.*,
   No. S-78-95-CA, 1980 U.S. Dist. LEXIS 16500 (E.D. Tex. Dec. 22, 1980) ........................ 5, 10

10

*T.N. Taube Corp. v. Marine Midland Mortgage Corp.*,
   136 F.R.D. 449 (W.D.N.C. 1991) ............................................................. 4, 5, 8, 18

11

12

<u>**Statutes**</u>

13

Fed. R. Civ. P. 1 ................................................................................................. 2

14

Fed. R. Civ. P. 26 ........................................................................................ *passim*

15

Fed. R. Civ. P. 30 ................................................................................. 15, 18, 20

16

Fed. R. Civ. P. 33 ........................................................................................ *passim*

Fed. R. Civ. P. 56 ............................................................................................. 23

17

18

<u>**Other Authorities**</u>

19

4A Moore's Federal Practice ¶ 33.25 (2d ed. 1990) ......................................... 4, 18

8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2178 .................... 4, 10

20

8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2008.1 (2d ed. 1994) .................. 3

21

22

23

24

25

26

27

28

1    **I.        INTRODUCTION**

2              Oracle USA, Inc., Oracle International Corp. and Oracle EMEA Ltd.'s (collectively

3    "Oracle" or "Plaintiffs") June 30, 2009 Motion to Compel (D.I. 329, "the Motion") seeks an order

4    compelling SAP AG, SAP America and TomorrowNow, Inc. ("TN") (collectively, "Defendants")

5    to: (1) produce documents allegedly related to Oracle's hypothetical license damages theory; and

6    (2) supplement TN's responses to Interrogatories 13 and 14 relating to its  downloading activities

7    and use of environment components.  For the first time in the Motion, Oracle substantially

8    narrowed the documents it seeks that allegedly relate to its hypothetical license damages theory.

9    In response, and while maintaining all objections to the underlying discovery requests,

10   Defendants have agreed to produce data and/or provide information as described in Section IV

11   below, which moots the request for relief contained in pages 7-11 of the Motion and numbered

12   paragraphs 1 and 2 of Oracle's proposed order.  Thus, the focus of this Opposition is the relief

13   requested in pages 12-16 of the Motion and numbered paragraph 3 of Oracle's proposed order,

14   which seeks supplemental responses to Interrogatories 13 and 14.

15            Oracle's request that Defendants further supplement their responses to Interrogatories 13

16   and 14 is another attempt by Oracle to shift a large portion of its trial preparation burden and

17   ultimate burden of proof to Defendants.  Oracle has asserted damages "as much as a billion

18   dollars," yet is unwilling to assume the proportionate burden to evaluate and present what it

19   believes are the facts that would justify the award of such enormous damages.  Instead, Oracle

20   now requests that this Court order Defendants to marshal the evidence in a summary fashion,

21   boiling down Defendants' documents, data and testimony that have already been given to Oracle

22   numerous times, in numerous ways over the past two years.

23            The Motion completely ignores how forthright and fulsome Defendants' discovery

24   responses have been.  Oracle disregards Defendants' current responses to Interrogatories 13 and

25   14, which are complete, detailed and directly on point.  Moreover, Oracle fails to mention that

26   Defendants have already voluntarily assumed enormous expense and burden to provide Oracle

27   with all of the information responsive to Interrogatories 13 and 14, in a manner that is now as

28   equally accessible and reviewable to Oracle as it is to Defendants, including: (1) the best and

1   most usable sources for the information requested (the SAS database) in exactly the same

2   database format as it existed at TN; (2) virtually unlimited access to all of TN's services servers;

3   (3) an extraordinary number of custodians' data provided in a searchable format with metadata

4   and (4) extremely prepared 30(b)(6) witnesses who have testified regarding numerous download-

5   related and environment-related topics.  Oracle has had the majority of this material since late

6   2007 and has consistently and extensively used the information in the more than 300 deposition

7   hours that it has taken in this case thus far.

8        To be clear, Oracle is not seeking additional information.  Oracle already has in its

9   possession the **exact same** information that Defendants have, from which to derive the detailed

10  supplements it seeks.  Instead, Oracle's Motion improperly seeks to compel Defendants to

11  summarize thousands of contemporaneous business records contained in TN databases, which

12  chronicle TN's almost daily activities for hundreds of customers over several years.  TN has

13  provided complete and proper answers to Interrogatories 13 and 14 through both narrative

14  responses and reference to Defendants' document production under Rule 33(d) of the Federal

15  Rules of Civil Procedure 33(d) ("Rule 33(d)").  As a result, Oracle is in the same position as

16  Defendants to prepare such detailed summaries, and it bears the burden to do so.  Accordingly,

17  this Court should deny Oracle's Motion to Compel.

18  **II.   LEGAL STANDARDS**

19       The parties agree that each party has the right to discover non-privileged information

20  "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see also* Motion at 6.

21  However, the Rules set reasonable limits to this right, including the Court's ability to weigh the

22  benefit of the requested discovery against the cumulative nature of the request and the burden

23  involved in responding.[1]  Additionally, Rule 26(b)(2)(C) specifically describes the analysis that

24  should be conducted to limit the "frequency or extent of discovery" otherwise allowed by the

25  Rules:

26  _____

27       [1] Moreover, a fundamental underpinning of the Federal Rules of Civil Procedure lies in
    Rule 1, which states in pertinent part: "[the Rules] should be construed and administered to secure
    the just, speedy, and ***inexpensive*** determination of every action and proceeding."  Fed. R. Civ. P.

28  1 (emphasis added).

When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).[2]

Rule 33 includes additional burden protection:

Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

The 1970 Advisory Committee Note to Rule 33(d) further explain:

This subdivision gives the party an option to make the records available and place the burden of research on the party who seeks the information. "**This provision, without undermining the liberal scope of interrogatory discovery, places the burden of discovery upon its potential benefitee**," Louisell, *Modern California Discovery*, 124-125 (1963), and alleviates a problem which in the past has troubled Federal courts. *See* Speck, *The Use of Discovery in United States District Courts*, 60 Yale L.J. 1132, 1142-1144 (1951). The interrogating party is protected against abusive use of this provision through the requirement that the burden of ascertaining the answer be the same for both sides.

Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 33 (emphasis added). The 1970 Advisory Committee Note continues that "the respondent unable to invoke this subdivision does not on that account lose the protection available to him under the new Rule [26(b)(2)(C)] against oppressive or unduly burdensome or expensive interrogatories." *Id.*

_____

[2] The 2000 Advisory Committee Note explains that a sentence was added to subdivision (b)(1) to call attention to the limitations of subdivision (b)(2)(i), (ii) and (iii). The Note states that "[t]hese limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). **The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated**." Advisory Committee Note to 2000 Amendment to Fed. R. Civ. P. 26 (emphasis added); *see also* 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2008.1 at 121 (2d ed. 1994).

Rule 33(d) permits a party to produce "business records (including electronically stored information)" in lieu of narrative responses.  Fed. R. Civ. P. 33.  Its primary purpose is to shift the burden of perusing documents to supply answers to discovery requests, from the producing party to the party seeking the information.  *See* 8A *Federal Practice and Procedure* § 2178.  Rule 33(d) may be invoked when: (1) the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"; and (2) "the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).

Once Rule 33(d) is invoked, the propounding party has the burden of demonstrating "that the burden of deriving or ascertaining the answers is not substantially the same for both parties."  *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 453 (W.D.N.C. 1991) (quoting 4A Moore's *Federal Practice* ¶ 33.25 (2d ed. 1990)).  Oracle cannot obtain an order to compel simply because it does not want to endure the cost of compiling the answer it seeks; it is not enough that "plaintiffs want this discovery but do not want to expend the effort and expense in procuring it."  *Petroleum Ins. Agency, Inc. v. Hartford Accident and Indem. Co.,* 111 F.R.D. 318, 320 (D. Mass. 1983) (denying motion to compel further responses to all but one interrogatory).

Assertions made in a "conclusory fashion" do not establish an inequality in burdens.  *See Goodrich Corp. v. Emhart Indus., Inc.,* No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25158, at *13-14 (C.D. Cal. Oct. 12, 2005) (denying "Motion to Compel Substantive Answers to Interrogatories" when moving party failed to demonstrate inequality of burdens).  As the court explained in *Petroleum Ins. Agency*:

> Plaintiffs' expressions of general discontent with having to obtain discovery pursuant to the provisions of Rule 33(c),[3] F.R.Civ.P., however severe the discontent may be, is not a sufficient showing under the law for the Court to deny the defendants the option the rule provides.  While it is true that the defendants are more familiar with their records, there has been no showing that the answers of the defendants delineating the records in which answers can be found and how the records are kept are wanting or that the plaintiffs have had difficulty dealing with defendants' records as they have been identified and described.

---

[3] This quote cites to the former Rule 33(c) which is identical in all pertinent parts to the current Rule 33(d).

1   *Petroleum Ins. Agency,* 111 F.R.D. at 320-21.

2          To determine whether Oracle has demonstrated an inequality of burdens, three factors

3   should be weighed: "cost of the necessary research, nature of the relevant records, and

4   Defendant's familiarity with its own records."  *T.N. Taube Corp.,* 136 F.R.D. at 454.  Further,

5   "mere familiarity with a set of records cannot be dispositive in weighing the comparative burdens

6   upon plaintiff and defendant in eliciting relevant data from those records."  *Saddler v. Musicland*

7   *Pickwick Int'l, Inc.*, No. S-78-95-CA, 1980 U.S. Dist. LEXIS 16500, at *3 (E.D. Tex. Dec. 22,

8   1980); *Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44

9   (S.D.N.Y. 1984).  "If a disparity in familiarity necessarily created an inequality in the ease of

10  discovery, the procedure provided by Rule 33(c)[4] would rarely, if ever, be utilized."  *Saddler*,

11  1980 U.S. Dist. LEXIS, at *3.  For that reason, Rule 33 envisions evaluating the relative difficulty

12  in analyzing the records.  *See id.*  If both parties must complete identical steps to derive the

13  information, the burden is substantially the same.  *See id.*  Familiarity of the responding party

14  with its own documents is only one factor a court should use to determine if the relative burden is

15  substantially the same.  *See Goodrich Corp.,* 2005 U.S. Dist. LEXIS 25158, at *10.  The court

16  should also balance the costs of research and the nature of the business records.  *See id.*

17         As explained below, under the facts of this case, TN has properly responded to

18  Interrogatories 13 and 14 by providing appropriate narrative answers and appropriate references

19  to Rule 33(d).  And, even if 33(d) was not available, the information that Defendants have already

20  provided to Oracle in response to Interrogatories 13 and 14 is more than sufficient given the

21  cumulative discovery safeguards and burden balancing protections provided by Rule 26(b)(2)(C).

22  **III.    ARGUMENT**

23         Interrogatories 13 and 14 are only two of the 121 interrogatories served on Defendants to

24  date, but they provide excellent examples of the scorched earth, no stone unturned discovery

25  approach that Oracle is taking in this case.[5]  *See* Declaration of Joshua L. Fuchs in Support of

26  _____

    [4] *See supra* n.3.

27
    [5] Oracle's characterization of the facts and the discovery requests at issue contains
28  numerous inaccuracies.  The majority of those allegations should not impact the Court's analysis;
    thus, any failure by Defendants to address any specific alleged fact is not intended as a waiver.

1   Defendants' Opposition to Plaintiffs' Motion to Compel Production of Documents Related to

2   Damages Model ("Fuchs Decl."), ¶ 2.  Defendants have incurred enormous expense and related

3   burdens associated with responding to Oracle's discovery requests.  *See id.* at ¶¶ 3-7.  Specifically,

4   and not even counting the substantial expense Defendants incurred responding to Oracle's written

5   discovery and preparing for and defending over 300 hours of depositions in this case, Defendants

6   are on track to spend in excess of $14 million producing custodians' data, TN's databases and

7   dozens of TN servers via the Data Warehouse facility.[6]  Oracle could have propounded focused,

8   targeted discovery, considerate of the responsive burdens created by such requests.  Instead,

9   Oracle adopted a shot-gun/trot-line discovery strategy, which strategy logically results in the

10  production of enormous volumes of documents and data.  Defendants have produced the

11  enormous volume of discovery requested by Oracle, and it is now time that Oracle accept the

12  burden that comes with the discovery approach it has taken in this case.

13      **A.      TN Properly Responded to Interrogatory 13.**

14          Oracle mischaracterizes the information requested in Interrogatory 13.  A careful reading

15  of the interrogatory and Defendants' response demonstrates that Defendants completely answered

16  it.

17      **1.      Oracle's Actual Request.**

18          Oracle's Interrogatory 13 to TN reads as follows:

19          Describe in as much detail as possible all Software and Support Materials that
           'have been downloaded beyond those that, according to TN's records, related to
20          applications licensed to the particular customer on whose behalf the downloads
           were made,' *as alleged in ¶ 15 of Your Answer*, including but not limited to
21          Identifying the 'records' You referenced in making Your determination.

22  Howard Decl., Ex. A (emphasis added).[7]  Oracle now asserts that Interrogatory 13 seeks more

23  than just a description of the downloads to which Defendants referred in Defendants' Answer to

24  Plaintiffs' First Amended Complaint, at ¶ 15 ("Answer to FAC").[8]  For example, the Motion

---

[6] *See* Fuchs Decl., ¶ 7.

[7] It is worth noting that Oracle did not raise Defendants' response to Interrogatory 13 as one of the nineteen responses that were allegedly objectionable in its first Motion to Compel hearing before Judge Legge on February 13, 2008.

[8] The plaintiffs named in the First Amended Complaint included now former plaintiff Oracle Corporation and current plaintiffs Oracle International Corporation and Oracle USA, Inc.

1  states that Interrogatory 13 also calls for information on "how [TN] got its downloads . . . and

2  how it used them to support specific customers," the identity of those materials that "were

3  downloaded using credentials of a customer not entitled to those materials"[9] and "which materials

4  [TN] improperly downloaded from Customer Connection."  Motion at 13, 16.  That information

5  was not requested in Interrogatory 13.  Instead, variations of those requests are contained in other

6  interrogatories that Oracle has propounded on Defendants and that Defendants have answered in

7  detail.[10]

8  **2.      Defendants Gave a Specific, Narrative Response to Interrogatory 13.**

9  Defendants appropriately responded to Interrogatory 13 by identifying the information

10  used and citing the specific records relied upon to make the statement in paragraph 15 of the

11  Answer to FAC.  Specifically, Defendants responded in part:

> [TN]'s downloads on behalf of customers using JDE's OneWorld products were
> made based on instructions set forth on a Download Request Form.  The
> Download Request Forms for Merck, OCE, SPX, Metro Machine and Yakazi
> instructed the download team to download all ESUs for all system codes on a
> particular release level.  [TN]'s records did not show that those customers had
> represented that they were licensed to all system codes on a particular release
> level.

16  TN's Response to Oracle Corporation's First Set of Interrogatories to TN, No. 13 (Howard Decl.,

17  Ex. C).

18  **3.      Defendants Properly Relied on Rule 33(d).**

19  In addition to providing a specific, narrative response to Interrogatory 13, Defendants

20  further responded by referencing, under Rule 33(d), the customer contracts, onboarding

21  documentation and downloaded materials that they relied upon in drafting paragraph 15 of the

_____

[9] Plaintiffs attempt to frame the issue as relating to which customers' Customer
Connection password was used to download specific materials; however, Interrogatory 13 does
not ask for this information.  *Compare* Interrogatory 13, Howard Decl., Ex. C, *with* Interrogatory
10, Fuchs Decl., ¶ 17, Ex. E (Interrogatory 10 of Oracle Corp.'s First Set of Interrogatories to
TN).  Moreover, Plaintiffs are well aware that TN's typical procedure was to download materials
for a customer using that customer's Customer Connection ID and password and to store those
downloads in a customer-specific folder.  *See, e.g., id.* (Defendant TN's Fourth Amended and
Supplemental Response to Plaintiff Oracle Corp.'s First Set of Interrogatories to TN, No. 3, 12).
Plaintiffs have had access to all of the download folders on TN's systems, and Defendants have
always acknowledged that there is no known technical way to specifically tie a downloaded item
on TN's systems to a Customer Connection ID and password.

[10] *See* part III.A.4. below for a description of the information provided to Oracle in
response to these other interrogatories.

1   Answer to FAC.  *See id.*  Defendants directed Oracle to the production of Download Request

2   Forms, which "instructed the download team to download all ESUs for all system codes on a

3   particular release level."  *Id.*  Oracle has demonstrated an ability to locate these forms in

4   Defendants' production, having used these forms as exhibits in various depositions.  *See* Fuchs

5   Decl., ¶ 16, Ex. D (Depo. Exs. 66, 1445, 1469).  Further, in addition to identifying the specific

6   Bates ranges for over 85 Download Request Forms, Defendants also provided Oracle with the file

7   path for a central repository of Download Request Forms in response to Interrogatory 10, which

8   was incorporated by reference into Interrogatory 13.  *See* Fuchs Decl. ¶ 17, Ex. E (Defendant

9   TN's Fourth Amended and Supplemental Response to Plaintiff Oracle Corp.'s First Set of Rogs

10  (Set One), No. 10).  Thus, Oracle cannot truthfully claim that the documents were not identified

11  in "sufficient detail to enable the interrogating party to locate and identify them."  Fed. R. Civ.

12  P. 33(d).

13      Moreover, due to the nature of the Download Request Forms, the burden of deriving

14  answers from these documents is substantially the same for both sides, because they are user-

15  friendly forms that state the categories and limits of the materials to be downloaded.  *See* Fuchs

16  Decl., ¶ 16, Ex. D (Depo. Exs. 66, 1445, 1469).  Once Defendants invoked Rule 33(d), it became

17  Oracle's burden as the propounding party to demonstrate that the burden was not substantially

18  similar between the parties.  *See T.N. Taube Corp.,* 136 F.R.D. at 453.  Oracle makes no effort at

19  all in its Motion to provide any evidence that demonstrates that the cost to Oracle of the necessary

20  research, nature of the relevant records or Defendants' familiarity with their own records is such

21  that establishes an inequality of burdens.  *See id.* at 454.  Because Defendants either identified the

22  specific forms relied upon or explained where the forms could be located in a central repository,

23  the burden of deriving a further response to Interrogatory 13 is substantially the same between the

24  parties, and Defendants' reliance on Rule 33(d) is appropriate.

25      To the extent that Interrogatory 13 requests that Defendants actually identify the specific

26  downloads beyond those to which customers told TN they were entitled, Defendants have made

27  clear to Oracle that TN can not provide that level of detail without specific product mapping

28  information from Oracle.  To undertake an analysis to determine which of the downloads are

1    beyond those to which customers told TN they were entitled, Defendants would need the ability

2    "to map each of the specific downloads to each of the specific products. . . . Thus, without such

3    mapping information (provided in a manner that permits an electronic 'download to product'

4    comparison), it is not possible for TN to evaluate the appropriateness of each download it made

5    on behalf of its customers."  Howard Decl., Ex. C.  Defendants have requested such mapping

6    information from Oracle since the outset of this case, and Oracle has refused to produce this

7    information.  *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs' Second Amended and Supplemental

8    Responses and Objections to Defendant TN, Inc.'s First Set of Interrogatories, No. 7).  In

9    response to Defendants' Motion to Compel on this very issue, Oracle's counsel even told Judge

10   Legge that it would be too burdensome to provide the necessary product information to

11   Defendants.  *See* Fuchs Decl., ¶ 21, Ex. I (February 13, 2008 Hearing on Discovery Issues, at

12   32:20-34:20).  Oracle's refusal to provide the product mapping information necessary to

13   determine the appropriateness of the downloads, coupled with Defendants' production of the

14   downloaded materials, demonstrates that Oracle actually has the lesser burden in answering its

15   own question upon which it has the burden of proof.

16       Moreover, if Oracle were to provide the requisite "download-to-product" mapping

17   information necessary to undertake the analysis, then at that point, the cost and related burdens of

18   the necessary analysis of that information, in conjunction with the information Defendants have

19   already produced, would be substantially similar between the parties.  Oracle concedes that it is a

20   "complex and difficult task," yet Oracle ignores that both parties must take identical steps to

21   derive the information from Defendants' records.  *See* Motion at 15.  Both sides would have to

22   review the downloaded materials and the onboarding documentation with this specific mapping

23   analysis in mind.[11]  Oracle's argument that Defendants are more familiar with their own records

24   is not the determining factor.  *See* Motion at 14.  Instead, "mere familiarity with a set of records

25   cannot be dispositive in weighing the comparative burdens," and Oracle has not demonstrated, as

26

27   _____
        [11] To the extent that Oracle seeks to broaden its request to include the appropriateness of
        the downloaded materials beyond those considered in paragraph 15 of the Answer to FAC, an
28      analysis of the DotProject and SAS databases would be necessary, as further described in Part
        III.A.4. below.

1   required, how the cost of research or nature of the relevant records lead to an inequality of

2   burdens. *Saddler*, 1980 U.S. Dist. LEXIS 16500, at *3.

3        The ultimate irony in Oracle's attack on Defendants' use of Rule 33(d) in response to

4   Interrogatory 13 is Oracle's reliance on Rule 33(d) in response to an interrogatory Defendants

5   propounded on Oracle requesting information on each item TN customers were entitled to

6   download. *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs' Second Amended and Supplemental

7   Responses and Objections to Defendant TN, Inc.'s First Set of Interrogatories, No. 7). Oracle's

8   application of this double-standard is glaringly evident in its response to TN's Interrogatory 7, in

9   which it refuses to create a "compilation, abstract, or summary from business records"—the very

10  act Oracle now seeks to compel Defendants to perform in response to Interrogatory 13.[12]

11       Defendants' Rule 33(d) reliance is proper because: (1) Oracle continues to withhold

12  information necessary to map the downloads to specific products; (2) Oracle is the party in a

13  position to provide the underlying data that must be used to perform any reasonably effective

14  mapping exercise; (3) Oracle has had access for more than a year to all of Defendants' records

15  that would be pertinent to the mapping exercise; (4) Oracle would have to undertake identical

16  steps as Defendants to determine the appropriateness of the downloads and (5) Oracle has

17  demonstrated an equal ability to use and analyze the data from Defendants' records. This is the

18  quintessential case "where the burden of perusing documents in order to supply answers to

19  discovery requests should be shifted from the producing party to the party seeking the

20  information." 8A *Federal Practice and Procedure* § 2178.

21      **4.**   **Oracle's Characterization of Interrogatory 13 is Cumulative and**

22      **Creates an Undue Burden on Defendants.**

23       Under the guiding principles in Rule 26(b)(2)(C), the information that Defendants have

24  provided to Oracle in response to Interrogatory 13 is more than adequate to preclude any

25  additional undue effort and expense by Defendants. Although Defendants did not specifically

26  object to the actual text of Interrogatory 13—which only called for information related to

27

28              [12] This is just one of many examples of Oracle's reliance on similar objections and on Rule 33(d). For a list of examples, *see* Fuchs Decl. ¶¶ 12, 13, 14, Exs. A, B.

1    Defendants' statement in paragraph 15 of the Answer to FAC—Defendants object to Oracle's

2    overly broad request as it is characterized in the Motion.  Specifically, the information sought, as

3    characterized in the Motion, is unreasonably cumulative or duplicative of numerous other

4    requests propounded by Oracle, which Defendants have properly answered.  Further, Oracle has

5    had ample opportunity to acquire the information it now seeks, and the undue burden and expense

6    of the sought information is outweighed by its likely benefit.  Any of these reasons, by itself,

7    provides a basis under Rule 26(b)(2)(C) for the Court to prevent or limit the excess discovery.

8            Oracle now claims that Interrogatory 13 requests all information on how TN obtained and

9    used downloads, the credentials used for downloading for each customer and what materials TN

10   improperly downloaded.  *See* Motion at 13, 16.  These requests are unreasonably cumulative

11   and/or duplicative of numerous other requests propounded by Oracle and Defendants' extensive

12   document production in response to those requests.  When coupled with Defendants' answers to

13   over twenty other interrogatories related to TN's downloading (about which Oracle is not

14   complaining), Defendants have more than satisfied their discovery burdens with respect to these

15   requests.[13]  Generally, Defendants' other interrogatory responses provide narrative information

16   and document cites on topics that include, but are not limited to, what downloads TN did on

17   behalf of its customers, TN's downloading policies, TN's access to the downloads and knowledge

18   and investigation into the appropriateness of the downloads, TN's use of the downloads, the

19   entities for whom TN has downloaded, TN's storage and maintenance of the downloads, TN's

20   training procedures for the downloads, TN's procedure for completing the downloads, the

21   credentials TN used for the downloads and TN's justification for downloading on behalf of its

22   customers.  *See* Fuchs Decl. ¶¶ 17, 18, 19, Exs. E, F, G.

23           Defendants' business records cited in response to these interrogatories include, but are not

24   limited to, the DotProject database, the SAS database, the actual downloads produced through the

---

25       [13] *See, e.g.,* Fuchs Decl. ¶¶ 17, 18, 19, Exs. E, F, G (Defendant TN, Inc.'s Second
     Amended and Supplemental Responses to Plaintiff Oracle Corp.'s Third Set of Rogs and SAP
26   America and SAP AG's Second Amended and Supplemental Responses to Plaintiff Oracle
     Corp.'s Second Set of Rogs, Nos. 8, 10; Defendant TN's Fourth Amended and Supplemental
27   Response to Plaintiff Oracle USA's First Set of Rogs (Set One), No. 2; Defendant TN's Fourth
     Amended and Supplemental Response to Plaintiff Oracle Corp.'s First Set of Rogs (Set One),
28   Nos. 3, 7, 8, 9, 10, 11, 16).

1    Data Warehouse and onboarding documentation.[14]   Oracle has demonstrated an ability to locate

2    and use the information contained in these sources.  *See* Fuchs Decl., ¶¶ 3, 4, 5, 6, 8, 15, Ex. C.[15]

3    And Oracle has had access to many of these records, including the downloaded materials, for well

4    over a year, which is more than ample time for Oracle to have compiled and summarized the

5    information it seeks related to the appropriateness of the downloads.  *See id.* ¶¶ 3, 5, 6.

6           Further, the undue burden and expense of the information Oracle now seeks outweighs its

7    likely benefit.  Oracle has completely failed to adequately explain how the information it requests

8    justifies the extraordinary expense of mapping millions of downloads to specific products.[16]

9    Oracle has not explained why that level of detail is needed.  Conversely, Oracle has all the

10   information it needs to undertake this analysis and assume the burden itself should it deem it

11   necessary to prosecute its claims.

12          In sum, Defendants thoroughly and completely answered Oracle's request in Interrogatory

13   13 for information regarding the statement in paragraph 15 of the Answer to FAC.  Oracle now

14   mischaracterizes the information sought in Interrogatory 13 in an attempt to broaden the scope of

15   the request, claiming that the interrogatory seeks the "materials [TN] improperly downloaded,"

16   among other topics.  Motion at 13.  Defendants' reliance on Rule 33(d) is entirely justified under

17   these circumstances, as Oracle itself holds the key to the product mapping information that Oracle

18   deems necessary.  Further, the limitations imposed by Rule 26(b)(2)(C) dictate that the

19   information Oracle now seeks is unreasonably cumulative and duplicative of other interrogatory

20   requests propounded by Oracle.  Moreover, Oracle has totally failed to demonstrate that the likely

21          [14] Defendants did not specifically cite to all of these sources in response to Interrogatory
22   13 because the actual interrogatory is more narrowly tailored than Oracle now describes, as
     explained in Part III.A.1 above.  However, Defendants did rely on these sources in response to
23   other interrogatory requests that more closely resemble what Oracle is requesting in its Motion.
     *See* Part III.A.4 below.

24          [15] If Oracle is permitted to broaden its requests as described in its Motion, citing these
25   records in response to Rule 33(d) would be appropriate.  Both sides would need to take the same
     steps to derive the information from Defendants' records, including review of the DotProject
26   database, the SAS database, the downloaded materials produced in the Data Warehouse and the
     onboarding documentation.  Plaintiffs have demonstrated an intimate familiarity with these
     records.

27          [16] In total, there are over 5 terabytes of downloaded materials to evaluate, and to extract
     the relevant information for each of the data sources would easily take thousands of man hours.
28   *See* Fuchs Decl., ¶ 3.

1    benefit from the information now sought outweighs the burden and expense to compile,

2    summarize and abstract data produced by Defendants that Oracle, as the party with the burden of

3    proof, is equally capable of doing itself.

4              **B.      TN Properly Objected and Responded to Interrogatory 14.**

5              Interrogatory 14 essentially asks TN to summarize daily customer support activities from

6    early 2002 to April 30, 2008.  *See* Howard Decl., Ex. D.  Because it is humanly impossible for

7    anyone to remember day-in and day-out activity over a number of years, TN used a database,

8    referred to as SAS, to track the exact type of information Oracle is requesting.  As Oracle is well

9    aware, Defendants have stressed the importance of this database from the very beginning of this

10   case and started providing it to Oracle in the exact form used at TN as one of the very first

11   productions in the case.[17]  Defendants also provided to Oracle (early in discovery) all other user-

12   friendly databases that TN maintained to track any information regarding environment

13   components.  *See* Fuchs Decl., ¶¶ 3-6.  Again, Oracle does not seek new information regarding

14   TN's use of the environments.  What Oracle wants this Court to do is to relieve Oracle of its

15   burden[18] to analyze the documents, testimony and data Defendants have made available,

16   regardless of the fact that the burden of conducting that analysis is substantially equal.  In

17   essence, even though Oracle has the ultimate burden of proof on its claims, Oracle wishes to

18   forego the expense and effort of extracting the information it requests and would rather that

19   Defendants be required to do it for Oracle.

20   _____

21        [17] Defendants produced the entire SAS database with respect to the six customers
     identified in paragraphs 76-80 of Oracle's First Amended Complaint on September 21, 2007.
22   Defendants produced the entire SAS database with respect to 69 additional customers identified
     by Oracle on October 5 and November 9, 2007.  Finally, Defendants produced the entire SAS
23   database containing ALL of TN's PeopleSoft and J.D. Edwards' customers on December 4, 2007.
     As part of the parties' expanded discovery timeline agreement, on February 13, 2009, Defendants
24   further updated the SAS production to include activity through October 31, 2008.  *See* Fuchs
     Decl., ¶ 5.

25        [18] Oracle incorrectly states that Defendants have refused and are unwilling to agree to fact
     stipulations.  *See* Motion at 13, 15.  Defendants have attempted to negotiate an acceptable
26   stipulation and are willing to continue to negotiate towards a possible stipulation.  It is true that
     Defendants have not accepted any of Oracle's proposed draft stipulations, and it is also true that
27   there are several major issues that must be resolved before Defendants would ever agree to a fact
     stipulation.  However, Defendants have never indicated to Oracle that they have refused or are
28   otherwise unwilling to continue to negotiate in an effort to attempt to reach an agreement to some
     form of fact stipulation.

1

### 1.    Oracle's Actual Request.

Oracle attempts to broaden its already overly-broad request.  Oracle repeatedly cites to Catherine Hyde as the former TN employee who is able to provide additional information about the "source" of environments, while ignoring that Interrogatory 14 does not request the source of environments.  *See* Motion at 14:18-22, 15:5-10.[19]  What Interrogatory 14 actually requests is a chronicling of the daily use of the TN customer environments and/or environment components (collectively referred to as "TN customer environments").  The request specifically states:

> For each local environment Identified in Your responses to Interrogatories 12 and 13, Identify all Customers who received support based on the Use of that environment, and a detailed description of that support (such as, for example, the retrofit tax updates testified to by Shelley Nelson (Shelley Nelson Dep. at 32:19-34:13 (Oct. 30, 2007)) including, where applicable, Identification of the name, number, version or other Identifying information of the product provided as part of the support.

Howard Decl., Ex. D.  The request asks for: (1) a list of all customers who received support based on the use of environments, (2) a detailed description of that support and (3) the fix (product) that came from the support.  The "source" of the TN customer environments is not sought anywhere in the request.

### 2.    TN Properly Objected and Responded to the Request.

TN originally responded to the request on December 27, 2007 and objected that the request is "cumulative, compound, unduly burdensome and oppressive to the extent it seeks to require TN to attempt to evaluate millions of pages of documents and data relating to customer support that have been created over several years."  *See* Howard Decl., Ex. D.  Subject to those objections, TN provided the following narrative response:

> Generally, to the extent a particular entity is or was a [TN] customer, and when [TN] maintains an environment on that customer's behalf, [TN] provided or provides support to that customer utilizing that environment.  For updates and/or fixes to Peoplesoft and JDE products, [TN] has generally used the customer's environment(s) (whether maintained by [TN] or the customer) to create or test the updates and/or fixes.  [TN] is aware of certain instances where an environment

---

[19] *See* Catherine Hyde's Declaration for a description of how she studied SAS and BakTrak to provide that testimony referenced and for her statement that she believes that her knowledge has been exhausted on the source subject.  *See* Declaration of Catherine Hyde ("Hyde Decl."), ¶ 6.  Information relating to the "source" of an environment can be located in the spreadsheets prepared and the data referenced in responses to Interrogatory Nos. 12 and 13 from Oracle USA, Inc.'s Second Set of Interrogatories to TN.  *See* Fuchs Decl. ¶ 20, Ex. H.

maintained on behalf of one customer may have been used to create or test updates and/or fixes for other customers. *See, e.g.*, Tr. of October 30, 2007 Deposition of Mark Kreutz, at 197:8-199:25; Tr. of October 30, 2007 Deposition of Shelley Nelson at 32:19-41:17, 53:13-55:7; Dec. 6, 2007 Deposition of Shelley Nelson at 126:4-139:3, 145:1-14, 160:16-161:5, 185:3-16, 195:24-196:20.

Howard Decl., Ex. D.  TN further responded by relying on Rule 33(d) and pointing Oracle directly to the SAS database. *See id.*

TN supplemented its response on May 22, 2009 to provide updated Rule 33(d) cites to the SAS database and to further raise as an issue the cumulative and burdensome nature of the request by directing Oracle to the January 22, 2008 Rule 30(b)(6) Notice on the exact same topic and to all of the depositions Oracle has taken to date on the topic. *See id*; *see also* Fuchs Decl., ¶ 22, Ex. J (Amended Rule 30(b)(6) Notice on the TN customer environment topic).

### 3.     TN Properly Relied on Rule 33(d).

The SAS database is the most complete and organized record that TN has relating to its customer support and how TN used TN customer environments in providing that support. *See* Hyde Decl., ¶¶  2, 4.  TN provided the entire SAS database to Oracle well over 19 months ago in exactly the same form it was used at TN. *See* Fuchs Decl., ¶¶ 4, 5; Hyde Decl., ¶ 5.  Oracle is able to search, organize and see the data in the same way a former TN employee could, and Oracle has demonstrated that it has that ability in the more than 300-plus hours of deposition testimony it has taken to date.[20]  Given that Oracle has demonstrated an ability to use SAS in the same way as a former TN employee, the burden of extracting the relevant data is substantially the same for both parties.

---

[20] Defendants' production of SAS is vastly different from Oracle's attempt to produce and point Defendants to 2 terabytes of data from its Customer Connection website.  While Defendants took on the burden of providing SAS with the same usability as it had at TN, Oracle provided the Customer Connection data to Defendants in raw form without the interface it actually uses to view the data.  Despite the lack of usability, Oracle has consistently pointed Defendants to the Customer Connection data pursuant to Rule 33(d). *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs' Second Amended and Supplemental Responses and Objections to Defendant TN, Inc.'s First Set of Interrogatories, No. 7 – the cite to ORCL00313462-3 and ORCL0485842 is the 2 terabytes of raw data).

   **(a)**  **The first criterion under Rule 33(d) is satisfied because Oracle is able to locate the "records to be reviewed" "as readily as" TN.**

   TN specifically identified the SAS database in response to Interrogatory 14.  *See* Howard Decl., Ex. D.  While the SAS database has substantial content, it is user friendly.  Catherine Hyde's declaration states that "[t]he database has a self-contained index and is fully searchable. The data can be sorted and reviewed in a number of different ways including, but not limited to, by customer, fix, case, and product line.  All of the different ways to view the data can be determined by the index."  *See* Hyde Decl., ¶ 4.

   TN produced SAS in the same form and with the same functionality as it had while used at TN.  *See* Fuchs Decl., ¶ 4.[21]  When Oracle first raised this issue with Judge Legge in January 2008,[22] Defendants provided Judge Legge with a demonstration of the SAS database as produced to Oracle.[23]  *See* Fuchs Decl., ¶ 10.  In response to that demonstration, Judge Legge recommended that

> …defendants be compelled to send, at their expense, an appropriate engineer, together with an attorney if defendants desire, to the offices of Oracle to meet with Oracle's engineers about how to access the database.  The purpose of the meeting is <u>not</u> to discuss the information, or to state contentions with respect to it, but is simply to assist Oracle to <u>find</u> the information in the database which has been provided.

Howard Decl., Ex. E (emphasis in original).  Likely due to the SAS database's ease of use, Oracle never sought Defendants' engineers' assistance under Judge Legge's recommendation, although Defendants were and remain willing to provide the assistance Judge Legge recommended.  Since the time of Judge Legge's recommendation, Oracle has clearly demonstrated an ability to access and locate material in SAS by using 109 printouts from the SAS database as deposition exhibits.  *See* Fuchs Decl., ¶ 8; *see also* Hyde Decl., ¶ 5.

---

[21] TN could have attempted to produce the data from SAS in a number of different ways, including providing it in static .tiff form, but instead TN chose to recreate the database and produce it in its dynamic native form to make it the most useable for the Plaintiffs.

[22] Oracle's original motion in front of Judge Legge included Interrogatory 14.

[23] Defendants will be prepared to provide the Court with a similar demonstration at the August 4 hearing on the Motion.

In this case, although it will no doubt require effort for Oracle to locate the answers in the SAS database, it would be no easier for TN to do so, especially in light of the TN wind down.[24] *See* Hyde Decl., ¶¶ 4, 5, 7.  Numerous witnesses have made it clear that SAS is the best record of the activity requested and that the witness would need to reference SAS to have the necessary information.[25]  TN has identified a specific, organized, searchable database that contains the information Oracle seeks in a manner that provides Oracle the ability to electronically index, sort and analyze that information.  *See* Fuchs Decl., ¶¶ 4, 5, 9 (screenshot exemplar showing information contained in SAS).  What Oracle wants is for TN to do that indexing, sorting and analysis for it.  Rule 33(d) is specifically designed to permit a responding party to shift the burden back to the requesting party in this situation.  Ultimately, the overbreadth of Oracle's interrogatories has required and warranted a reference to TN's best database on the issue.  *See Goodrich Corp. v. Emhart Indus., Inc.,* 2005 U.S. Dist. LEXIS 25158 (C.D. Cal. Oct. 12, 2005) (denying motion to compel further supplementation of responses made in reliance upon 33(d) when propounding party failed to establish that responding party had withheld documents that might more "clearly identify" answers it sought).

---

[24] As Plaintiffs point out, TN was wound down on October 31, 2008.  And, with the exception of a few consultants who occasionally help with locating and understanding information, Defendants' counsel has limited to no access to TN's former employees.  *See* Fuchs Decl., ¶ 11.  Oracle argues that if the TN wind down somehow complicates TN's ability to provide the information Oracle seeks, then that is a problem of TN's own making.  *See* Motion at 15-16.  However, the wind down was publicly announced on July 21, 2008, and Oracle could have moved to compel the information it now seeks at a time when many of the relevant TN employees were still employed by TN.

[25] *See e.g.,* Fuchs Decl., ¶ 15, Ex. C (February 6, 2008 Deposition of John Baugh, 70:17-71:11 (testifying that the only way to determine how local environments were created is to consult e-mails and the SAS database); 73:16-74:3 (same); February 7, 2008 Deposition of John Baugh, 155:21-156:14 (testifying that would review SAS records to determine how environment was used); April 1, 2008 Deposition of Katherine Walker Williams, 53:15-55:8 (testimony that would need to refer to SAS to obtain more information about environment), 62:20-63:16 (testimony that uncertain how certain environments were used), 77:16-78:9 (testimony that would review SAS database to obtain more information about environment); April 1, 2008 Deposition of Catherine Lee Hyde, 47:7-12 (testifying that would need to refer to SAS to obtain more information about environment); April 2, 2008 Deposition of Catherine Lee Hyde, 85:25-86:4 (testifying that would need to refer to SAS and BakTrak to obtain more information about environment), 130:19-132:3 (testifying that would need to refer to SAS to obtain more information about environment)).

1           **(b)       The second criterion under Rule 33(d) is satisfied because the**

2                          **burden is comparable.**

3       Business records may be produced when the "burden of deriving or ascertaining the

4 [interrogatory] answer" from them is "substantially the same" for both parties.  Fed. R. Civ. P.

5 33(d).  The *propounding* party must demonstrate "that the burden of deriving or ascertaining the

6 answers is not substantially the same for both parties."  *T.N. Taube Corp.,* 136 F.R.D. at 453

7 (quoting 4A Moore's *Federal Practice* par. 33.25 (2d ed. 1990)).  Oracle has not met its burden.

8       Indeed, Oracle has demonstrated, in its almost 32 hours of Rule 30(b)(6) deposition

9 testimony on a Rule 30(b)(6) Notice that included this very topic, that it has an equal ability to

10 access and locate the requested data in SAS.[26]  Oracle has also demonstrated this ability in the

11 300-plus other depositions hours it has taken to date.[27]  The majority of the deposition cites

---

[26] In Oracle's January 22, 2008 Rule 30(b)(6) Notice, Oracle requested deposition testimony on TN's "creation and [u]se of Customer Local Environments, including without limitation: … (b) The manner and method by which Customer Local Environments were created, stored and Used by You; . . . . (d) The total number of Customer Local Environments created for each identified Customer; (e) The name, release, and version of all PSFT or JDE branded Software obtained and/or copied to create each identified Customer Local Environment; (f) The identity and description of all Customer Local Environments maintained in any way by You relating to Customers for whom You had ceased to provide support services; (g) The identity and description of all Customer Local Environments Used by You in any way to support any Customer other than the one that provided the Software Used to create the Customer Local Environment; . . . [and] (l) The process by which Customer Local Environments were Used as part of the ordinary course of business for SAP TN, including without limitation to on-boarding of new Customers; support of Customer cases, issues, and problems; reactive and proactive development of bug fixes, updates, patches, explanations, or regulatory changes for Customers; research into and design of those changes; troubleshooting for Customers; and testing of other operating systems levels. . . ."  *See* Fuchs Decl., ¶¶ 8, 22, Ex. J.

[27] *See e.g.,* Fuchs Decl., ¶¶ 2, 15, 16, Ex. C, D (April 1, 2008 Deposition of Katherine Walker Williams, 179:19-182:18 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 83); April 2, 2008 Deposition of Catherine Lee Hyde, 284:15-286:10 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 103); June 25, 2008 Deposition of Larry Garcia, 12:5-10 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 302); 19:17-20:3 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 287); June 25, 2008 Deposition of Roderic Russell, 31:19-32:21 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 287), 47:25-49:19 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 290), 61:19-63:13 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 293), 91:18-92:2 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 299), 116:1-18 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 300); December 5, 2008 Deposition of Matthew Bowden, 158:14-160:15 (confirming written statements in SAS record, Plaintiffs' Exhibit 538); 227:14-22 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 289); 249:5-250:2 (testifying regarding use of environment as set forth in Data Warehouse record, Plaintiffs' Exhibit 558), 279:7-280:2 (testifying regarding use of environments as set forth in SAS record, Exhibit

1   included in footnote 27 establish that the witness is doing little more than confirming what is

2   included in SAS.  *See* Hyde Decl., ¶ 5 (stating that "a substantial portion of those questions

3   involved simply asking me to confirm the information in the SAS database printouts").

4           While it is true that it will be burdensome to extract the information Oracle seeks out of

5   SAS, the burden and cost is substantially equal for both sides.  Oracle has demonstrated and

6   cannot ignore, that once minimal training on the use of SAS is obtained and the information

7   requested is provided, it takes no special expertise to locate and extract the sought-after material.

8   *See* Hyde Decl., ¶¶ 4-5.  The cost and burden, although significant, is simply the time required to

9   review the data in SAS.

10          Oracle's argument that TN former employees are more familiar with SAS misses the point

11  and misstates Oracle's competency (and frequency) in using and compiling the information from

12  that database for over a year.  Contrary to Oracle's suggestion, whether TN is more familiar with

13  its business records than Oracle is not dispositive of whether TN should carry Oracle's burden of

14  building Oracle's own case.  Indeed, it is difficult to image an instance in which the responding

15  party would not be more familiar with its business records than the propounding party.  If a

16  propounding party only had to show that the producing party was more familiar with the records

17  than the receiving party, Rule 33(d) would lose almost all efficacy.  *Cf. Puerto Rico Aqueduct &*

18  *Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 308-09 (D.P.R. 1985) (noting that responding

19  party's greater familiarity is inevitable and focusing on feasibility of deriving answers from

20  business records).  Accordingly, former TN employees' familiarity with TN's historic records is

21  not and should not be dispositive.  *See, e.g., Petroleum Ins. Agency,* 111 F.R.D. at 320-21

22  (denying plaintiff's motion to compel further responses to all but one interrogatory despite the

23  fact "it is true that the defendants are more familiar with their records").  In fact, Oracle's counsel

24

25  (continued…)

26  566); February 5, 2009 Deposition of Roderic Russell, 143:4-145:25 (no independent memory of
    fix documented in SAS record, Plaintiffs' Exhibits 816 and 817); May 12, 2009 Deposition of
27  Catherine Hyde, 125:17-126:25 (testifying regarding written statements in SAS record, Plaintiffs'
    Exhibit 1276), 132:3-132:19 (testifying regarding use of environment as documented in SAS
28  record, Plaintiffs' Exhibit 1277), 157:2-159:8 (testifying regarding use of environment as
    documented in SAS record, Plaintiffs' Exhibit 1283)).

1  and experts have now spent over a year becoming more familiar with TN's business records than

2  most TN former employees currently are.

3  ### 4.   Interrogatory 14 "Must" Be Limited under Rule 26(b)(2)(C).

4  Under Rule 26(b)(2)(C), the Court "must" limit the frequency or extent of discovery if it

5  determines that the discovery is: (1) unreasonably cumulative or duplicative, (2) can be obtained

6  from other sources that are more convenient, (3) the party seeking discovery has had ample

7  opportunity to obtain the information by discovery in the action or (4) the burden or expense of

8  the proposed discovery outweighs the likely benefit.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Although

9  Rule 26(b)(2)(C) provides four alternative grounds under which this Court must limit Oracle's

10  request, under the facts in this case, there is substantial evidence supporting all four grounds.

11  As discussed above, Interrogatory 14 is unreasonably cumulative or duplicative of

12  Defendants' document production, 30-plus hours of Rule 30(b)(6) testimony on the topic and

13  numerous other hours of individual testimony on this topic.  Defendants have already gone to

14  great expense and burden to provide Oracle with the information TN possesses on the topic.[28]

15  Further, as stated above, the data TN has on the topic has already been provided in the most

16  convenient source, which is SAS.  What Oracle is really asking is that Defendants be required to

17  incur the burden and expense of summarizing certain data points that exist in SAS and that Oracle

18  believes are relevant to its claims.  There is no legal basis whatsoever to justify the burden

19  shifting that Oracle improperly seeks.

20  Oracle has had the majority of SAS for over 19 months and should have been evaluating

21  and summarizing what it believes is the relevant information during that time.  By now, Oracle

22  should be able to substantially narrow its requests to only those specific information items, if any,

23  that are not ascertainable from the documents, data or testimony Defendants have already

24  provided.  Oracle has failed to make any attempt to narrow its requests and continues with its

25

26

27  [28] As the Court is already aware, Defendants are on pace to spend in excess of $13 million on the custodian production alone.  Defendants have also incurred over a quarter of a million dollars producing the SAS databases, and in excess of half a million dollars in providing native

28  images of all of TN's support services servers for the products at issue.  *See* Fuchs Decl., ¶ 7.

1  scorched earth discovery approach.  Instead of narrowing its requests, Oracle now reads its

2  requests more broadly than ever.[29]

3      The burden on Defendants of attempting to provide a narrative response to Interrogatory

4  14 greatly outweighs the benefit to Plaintiffs.  It will take thousands of hours to try to extract,

5  compile and summarize the requested information from SAS.  *See* Hyde Decl., ¶ 7.  It took

6  Defendants approximately 1,000 hours to review SAS for potentially privileged content.  *See*

7  Fuchs Decl., ¶ 7.  It would take numerous multiples of that time to extract and chart the data

8  Oracle is requesting.  As described above, Oracle has an equal ability to take on that burden.

9  Oracle has the ultimate burden of proof on its claims and should be required to assume the effort

10  associated with that burden.

11      For any one of the reasons stated above, both Rule 33(d) and Rule 26(b)(2)(C) provide a

12  separate and sufficient basis for this Court to deny the relief Oracle seeks and instead require

13  Oracle to assume whatever burden it believes is appropriate to extract, compile and summarize

14  the information it seeks.

15      **C.      Oracle Is Not Entitled to the Declaration It Seeks.**

16      Oracle is well aware of Defendants' efforts to preserve data in this case.  Starting with the

17  Rule 26(f) conference and continuing through numerous negotiations regarding a potential

18  preservation order, Defendants have provided Oracle with great detail regarding TN's efforts to

19  make a preservation copy of every TN computer and server, including the computers, servers and

20  databases at issue in this motion.  *See* Fuchs Decl., ¶ 11.  TN also made reasonable efforts to

21  collect and preserve every original TN computer and server as part of the TN wind down.  *See id*.

22  Oracle is further aware that TN entered into consulting agreements with seven former TN

23  employees to help locate and provide information on an as needed basis.  *See id*.  Those

24  consultants, however, are not always accessible and are not in any way prevented from seeking

26  ────────────

27  [29] During a June 6, 2009 meet and confer conference call, Defendants specifically
requested that Oracle provide a proposal on a form of response that would not require Defendants
to do a fix-by-fix answer on how each TN customer environment was used.  Oracle refused to

28  entertain the request.

1  other employment.  *See id.*; *see also* Hyde Decl., ¶ 7.  In fact, most of these consultants are

2  currently employed on a full-time basis by other employers.  *See* Fuchs Decl., ¶ 11.

3       To the extent that Oracle seeks additional information regarding Defendants' counsel's

4  efforts, that would likely invade the attorney-client privilege and/or the attorney work product

5  immunity provided in Rule 26(b)(3)(A) and thus, Defendants object to that request on these bases.

6  **IV.**   **ORACLE'S REQUEST FOR "DAMAGES-RELATED" DISCOVERY IS MOOT.**

7       Oracle's Motion to Compel is moot by agreement of the parties because Defendants have

8  agreed to produce documents or information that satisfy Oracle's substantially narrowed requests.

9  Specifically, Oracle moved to compel production of "certain documents responsive to Requests

10  for Production 21-23 and 27 from Oracle's Second Set of Requests for Production of Documents

11  and subpart (l) of Oracle's First Targeted Search Request" claiming that such discovery is

12  relevant to a hypothetical license between the parties and Defendants' forthcoming summary

13  judgment motion regarding Oracle's hypothetical license damages theory.  *See* Motion at 1, 3-4,

14  7-11.  In particular, Oracle requested that the Court compel production of the following:

15      1.  ". . .documents sufficient to show (a) the existence, scope, and terms of any licenses with
16         independent (non-affiliated, non-partner) software support service providers for SAP-
       branded software applications or any licenses Defendants deem comparable to the type of
17         license that would have been required between Oracle and SAP TN for the type of
       activities engaged in by Defendants; (b) Defendants' intellectual property and intangible
18         asset valuations resulting from SAP's acquisitions of Business Objects, MaXware, and
       OutlookSoft Corporation; and (c) the license or valuation documents for any acquisitions
19         that Defendants contend are a more appropriate benchmark."

20      2.  ". . .documents sufficient to show SAP's application sales close rate and support renewal
       rate over the relevant period."

21  *See* [Proposed] Order Granting Plaintiffs' Motion to Compel Production of Documents Related to

22  Damages Model and Interrogatory Responses Related to Use of Plaintiffs' Intellectual Property,

23  ¶¶ 1-2.

24       Oracle's Motion, for the first time, substantially narrowed the requested damages-related

25  discovery Oracle contends it needs in anticipation of Defendants' motion for summary judgment.

26  Prior to filing the Motion, including in meet and confer communications with opposing counsel,

27  Oracle had sought much broader discovery on this topic, claiming to need all documents

28  responsive to the above-referenced discovery requests.  This included: all documents relating to

1    agreements between SAP and any non-partner that provides third party support of SAP software,

2    all documents relating to SAP's valuation of the IP of any company it has acquired, including

3    Business Objects, all documents related to the allocation of the purchase price for Business

4    Objects and all documents related to SAP's historic applications sales close rates and service

5    contract renewal rates.  Defendants made various objections to these requests, including

6    overbreadth, undue burden and relevance, and continue to stand on these objections.

7            Although Defendants continue to believe that such documents are not relevant to any

8    aspect of the case, including their upcoming summary judgment motion, and maintain all

9    objections to the underlying discovery requests noted above, in the interest of a compromise and

10   to avoid an unnecessary Rule 56(f) motion, Defendants agreed to produce non-privileged

11   documents sufficient to show the information sought in the more limited requests above, to the

12   extent that such documents exist.  Defendants informed Oracle of this agreement on July 13, 2009,

13   and Oracle confirmed that this mooted that portion of the Motion seeking "damages-related"

14   discovery.  *See* Fuchs Decl., ¶ 23, Ex. K.

15   **V.      CONCLUSION**

16           Defendants' agreement (as memorialized in their counsel's July 13 e-mail to Oracle's

17   counsel) to produce certain data and provide certain information in response to the substantially

18   limited relief Oracle seeks in pages 7-11 of the Motion and numbered paragraphs 1 and 2 of

19   Oracle's proposed order moots that request for relief.  There is no reason to compel Defendants to

20   produce data or information they have voluntarily agreed to produce.

21           As for the relief requested in pages 12-16 of the Motion and numbered paragraph 3 of

22   Oracle's proposed order, which seeks supplemental responses to Interrogatories 13 and 14,

23   Defendants have already produced more than sufficient documents, data and testimony in

24   satisfaction of those requests.  To the extent that Oracle seeks a guide of information related to

25   the topics covered by Interrogatories 13 and 14, then it, as the party with the ultimate burden of

26   proof on its claims, should assume all costs and related burdens of extracting, compiling and

27   summarizing the documents, data and testimony Defendants have already provided.

28

1     Defendants respectfully request that this Court deny the Motion in its entirety.

2  Dated:  July 14, 2009                          JONES DAY

3

4                                                 By:   /s/  Joshua L. Fuchs
                                                       Joshua L. Fuchs
5
                                                  Counsel for Defendants
6                                                 SAP AG, SAP AMERICA, INC., and
                                                  TOMORROWNOW, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28