1  Exhibit 1 to its First Sets of Requests for Production, some of which are also reflected on the at-
2  risk reports that Oracle has produced and testified extensively about and the numerous
3  summaries and presentations about the same topics about which Oracle's witnesses have been
4  queried. Therefore, pursuant to Fed. R. Civ. Proc. Rule 33(d), Oracle refers defendants to those
5  documents in Oracle's production, including ORCL00088651 through ORCL0088706,
6  ORCL00188130 through ORCL00188142, ORCL00207922 through ORCL00207951,
7  ORCL00208249 through ORCL00208298, and ORCL00211589 through ORCL00211600.
8  Oracle further responds that third party support losses and the reasons customers left Oracle or
9  its predecessors for TN are reflected in such documents, as well as in Defendants' SAS database,
10 press releases and internal assessments and have also been extensively attested to. Oracle further
11 incorporates by reference the extensive evidence from Defendants' production and testimony
12 concerning the fear, uncertainty and doubt ("FUD") consistently employed by defendants to
13 cause Oracle's customers to question the value of Oracle's service offerings and/or their
14 products' future, defendants' promises to Oracle's customers that TN offered "superior service at
15 half the price" (or less) which further undermined those customers' perception of the value of
16 Oracle's service and which delayed customer's purchases, spurred them to unreasonable
17 negotiations with Oracle and/or lured Oracle's customers to TN and/or SAP; TN's misuse of
18 Oracle IP – with SAP's knowledge – also created the impression that TN's service was
19 comparable to Oracle's, which further undermined those customers' perception of the value of
20 Oracle's service and which delayed customers' purchases, spurred them to unreasonable
21 negotiations with Oracle and/or lured Oracle's customers to TN and/or SAP. SAP's direct
22 endorsement of TN in communications with customers as standard positioning in the sales
23 process and to the public in general, including (a) SAP's purportedly extensive due diligence
24 claiming to validate that TN's business model was legal and (b) use of SAP lawyers, former
25 PeopleSoft in-house lawyers, and other former PeopleSoft and JDE employees to dupe
26 customers into believing the legality of TN's support under the customer license agreements. It
27 also yielded SAP and TN influential customer testimonials about the quality and value of TN's
28 service which yielded even more customer losses, delays and damage. The record also reflects

41                                                           07-CV-1658 PJH (EDL)
PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES

dockets.Justia.com

that the extensive subsidization and backing of TN by SAP – which allowed TN and SAP to lure customers away with service savings of 50% or more – was the critical reason for customers' defection from Oracle to TN. All of the above, and many other misrepresentations that Defendants made about Oracle's software and support materials and development processes, as well as their ability to provide Oracle support legally, persuaded Oracle customers to migrate to SAP, to seek discounts from Oracle to stay, and not to select – or in some cases even evaluate – Oracle for new applications or database purchases. Oracle further responds that reasons why the customer chose not to renew its support contract with Oracle may be reflected in the customer's license agreement file, including correspondence related to the customer's support renewal, and therefore, pursuant to Fed. R. Civ. Proc. Rule 33(d), Oracle refers defendants to those documents in Oracle's production, including ORCL00000001 through ORCL00007714, ORCL00139148 through ORCL00159820, ORCL00176128 through ORCL00180465 and ORCL00372975 through ORCL00381654.

**INTERROGATORY NO. 12:**

Describe in as much detail as possible all information available to Oracle relating to its alleged concern that "SAP may have enhanced or improved its own software applications offerings" using information from the Software and Support Materials, as alleged in paragraph 16 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 12:**

In addition to its General Objections, Oracle objects that its investigation into the facts of this case is ongoing and not yet complete. As defendants are aware, Oracle has not yet received or reviewed defendants' documents or other discovery responses. Oracle further objects that defendants have superior (in many cases, unique) access to facts responsive to this Interrogatory. Oracle further objects that this Interrogatory calls for information protected by the attorney-client or work product privileges.

Subject to and without waiving its objections, Oracle responds as follows:

Oracle refers defendants to its First Amended Complaint, which describes how SAP AG and SAP America orchestrated their acquisition of SAP TN to further their competition with

Oracle. Oracle further refers defendants to their Answer, which admits that illegal and illicit copying of Software and Support Materials has taken place. For example, defendants have admitted that SAP TN's Daylight Savings Time solution, available on its website, is in many instances identical to Oracle's Daylight Savings Time solution. If defendants breached their supposed policy against downloading, it is reasonable to infer that defendants also breached their so-called "firewall" policy between SAP AG, SAP America, and SAP TN. SAP TN is not a financial success, so it is also reasonable to surmise that SAP AG and SAP America are deriving other, less visible economic benefits from the acquisition besides SAP TN's revenue. It is reasonable to conclude that these benefits may include converted enterprise software application customers and or the competitive misuse of Oracle's intellectual property to enhance SAP AG and SAP America's own products – as directly evidenced and illustrated by the copied Daylight Savings Time solution. Moreover, defendants have publicly commented that they seek to hire Oracle employees with recent and substantive knowledge of legacy PeopleSoft and JD Edwards software applications, presumably in part to use the knowledge these employees have to work on SAP's software. Oracle's investigation into defendants' misuse of its proprietary materials is ongoing.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Oracle further objects to the extent that supplementation would require Oracle to summarize the documents and testimony provided on this subject including extensive Fed. R. Civ. Proc. 30(B)(6) testimony; Oracle cannot and will not and is not required to do so and incorporates all such evidence by reference into this supplemented answer. Subject to and without waiving the specific and general objections stated above, Oracle further responds that the documents and depositions of Defendants' employees confirm that (a) SAP's supposed "firewall" with TN was breached on more than one occasion with Oracle's copyrighted and proprietary information passing to SAP, (b) SAP attempted to integrate and test its support infrastructure, including Solution Manager, with PeopleSoft software and environments at TN, (c) SAP hired third parties to evaluate Oracle's software offerings in conjunction with decisions to provide support through TomorrowNow for that software, and (d) SAP consulted with former

1  employees at TN to evaluate SAP's own software, bringing into question whether SAP leveraged
2  the knowledge those employees had of Oracle's software to improve its own.