# Exhibit G

Dockets.Justia.com

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, Oracle Systems Corporation,
Oracle EMEA Limited, and J.D. Edwards
Europe Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:    (832) 239-3939
Facsimile:    (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.,*<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SAP AG, *et al.,*<br><br>　　　　　Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date: November 25, 2008<br>Time: 2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

1   DATED:  November 18, 2008               JONES DAY

2

3                                           By: _____/s/_____
                                                         Jason McDonell
4                                                     Attorneys for Defendants
                                                 SAP AG, SAP AMERICA, INC., and
5                                                    TOMORROWNOW, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

## Expanded Discovery Timeline Agreement

The Parties agree to expand the discovery timelines in this case as set forth below.  This agreement is subject to, and not intended as a waiver of, any and all objections served by any party in response to any discovery request in this case.  In other words, this agreement only relates to the expansion of the discovery time frames, and is not, by itself, an agreement to produce any document.  Just because a document fits the time frames and subject matters noted below, that does not mean that it will be produced, especially if it is privileged or the subject of any objections served by any party in response to any discovery request in this case.  Moreover, any restrictions placed on any subject matter described below (e.g., "independent" third party support) shall not be construed as a concession or waiver of any parties' right to seek to broaden or narrow discovery on any subject matter, subject only to the terms of any non-appealable ruling by the court or special master that definitively precludes discovery regarding a particular subject matter in this case.

### 01-01-02 through 01-01-04 Documents:

(1) Relevant financial data including revenues, costs and profits to be agreed upon by the parties or per court order.

(2) Customer related documents (contracts and licensing for TN customers and related emails/negotiations to the extent kept in centralized files; on-boarding documents; the independent third party support market; TN, PeopleSoft, and JD Edwards key custodian documents re early TN customers).

(3) Damages Causation and Mitigation Documents (win/loss reports, at-risk reports, and other customer-specific reports kept in centralized locations (or with key custodians) or that can be generated from electronic sources).

(4) TomorrowNow Business Model Related Documents (documents re TomorrowNow's business model from centralized sources or key custodians from both sides, including the planning and formation of TN's business, communications between PeopleSoft and TN, documents re download servers/environments and fix/update development documents, and documents regarding PeopleSoft's or JD Edwards' knowledge of TN's support activities).

(5) Relevant TN, PeopleSoft, and JD Edwards employee emails from key custodians.

(6) The Parties' copyright-related documents to be agreed upon by the parties or per court order.

**03-22-07 through 10-31-08 Documents:**

(7) Updated relevant financial data including revenues, costs and profits.

(8) "TN/SAP customer"[1] related documents (documents from centralized sources and key custodians from both sides concerning those customers and created after the complaint, including the SAS database post-shutdown, the pathfinder database, customer off-boarding or transfer documents, TN, SAP and Oracle customer contracts, customers returning to Oracle from TN, customers lost by Oracle and efforts by Oracle to mitigate its damages, customers gained by TN or SAP).

(9) Damages Causation and Mitigation Documents (updated win/loss reports, at-risk reports, and other customer-specific reports kept in centralized locations (or with key custodians) or that can be generated from electronic sources).

(10) TomorrowNow Business Model Related Documents (documents from centralized sources or key custodians from both sides concerning: TN-related policies created or modified in any way since filing of complaint, including related to Project Blue; continued use of Oracle intellectual property, including transfer to third parties; Mark White's placement as head of TN; SAP's efforts to sell TN; documents related to independent third party support).

(11) The Parties' copyright-related documents to be agreed upon by the parties or per court order.

---

[1]   "TN/SAP customers" shall be mean those customers involving at least one of the following: (a) all TN customers; (b) Safe Passage deals with TN as a component; or (c) SAP sales to TN customers after acquisition of TN.

# Exhibit H

1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
10  500 Oracle Parkway
    M/S 5op7
11  Redwood City, CA  94070
12  Telephone:  (650) 506-4846
    Facsimile:  (650) 506-7114
13  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
14
    Attorneys for Plaintiffs
15  Oracle Corporation, Oracle USA, Inc.,
      and Oracle International Corporation
16

17                 UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19                   SAN FRANCISCO DIVISION

20

21  ORACLE CORPORATION, a Delaware          Case No. 07-CV-1658 MJJ
    corporation, ORACLE USA, INC., a Colorado
22  corporation, and ORACLE INTERNATIONAL   **PLAINTIFFS' RESPONSES AND**
    CORPORATION, a California corporation,   **OBJECTIONS TO DEFENDANTS'**
23                                           **FIRST NOTICE OF DEPOSITION**
                                             **OF PLAINTIFF ORACLE CORP.**
                   Plaintiffs,               **PURSUANT TO FED. R. CIV. P.**
24       v.                                  **30(B)(6)**

25  SAP AG, a German corporation, SAP
    AMERICA, INC., a Delaware corporation,
26  TOMORROWNOW, INC., a Texas corporation,
    and DOES 1-50, inclusive,
27
                   Defendants.
28

1    Pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Oracle Corporation,

2  Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") hereby respond

3  and object to Defendants' First Notice of Deposition of Plaintiff Oracle Corp. Pursuant to Fed. R.

4  Civ. P. 30(b)(6) as follows:

5                          **GENERAL OBJECTIONS**

6          1.      Oracle objects to the date specified by Defendants for the 30(b)(6) deposition of

7  Oracle. Per the Parties' practice to date and the requirements of the NDCA Local Rules, Oracle

8  will meet and confer with Defendants concerning mutually agreeable dates, times, and locations

9  for taking the depositions on the topics the Parties ultimately agree to and/or about which Oracle

10  is ordered to provide testimony. *See* N.D. Civ. L.R. 30-1.

11         2.      Oracle objects to the deposition topics to the extent that they contain no date

12  restriction, and are, therefore, overbroad and unduly burdensome.

13         3.      Oracle objects to the deposition topics to the extent that they seek information that

14  is neither relevant to the subject matter of this action nor reasonably calculated to lead to the

15  discovery of admissible evidence. Pursuing such information is wasteful and unnecessary and is

16  counter to Defendants' complaints about wanting to streamline discovery. As set forth below,

17  Oracle not only objects but refuses to provide testimony on certain irrelevant topics.

18         4.      Oracle objects to the deposition topics to the extent they seek information beyond

19  Oracle's possession, custody, or control on the grounds that such topics are overly broad and

20  unduly burdensome and oppressive. As set forth below, Oracle not only objects but refuses to

21  provide testimony on certain topics on these grounds as well.

22         5.      Oracle objects to each topic as unreasonable and unduly burdensome to the extent

23  that it requests information that is already within Defendants' possession, already known or

24  disclosed to Defendants, readily accessible and/or equally available to Defendants or is available

25  from public sources.

26         6.      Any statement of intent to produce a witness is not, and shall not be deemed, an

27  admission of any factual or legal contention contained in any individual deposition topic. Oracle

28  objects to each deposition topic to the extent that it contains any factual or legal

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST NOTICE OF DEPOSITION OF PLAINTIFF
ORACLE CORP. PURSUANT TO FED. R. CIV. P. 30(B)(6)

1     misrepresentations.

2         7.     Oracle objects to the 30(b)(6) notice on the grounds that the topics are not

3   described with "reasonable particularity" as required by Rule 30(b)(6) of the Federal Rules of

4   Civil Procedure.  It will and does ask Defendants for more clarity in order to better prepare its

5   witnesses.

6         8.     Oracle objects to the 30(b)(6) notice on the grounds that it is burdensome,

7   oppressive, duplicative, and propounded solely for purposes of harassment and to cause Oracle

8   to incur unnecessary litigation expenses.  Interrogatories, document requests, and requests for

9   admission would be more effective, less expensive, and less burdensome mechanisms of

10   discovery for almost all of the of the topics contained in the deposition notice. *See* Federal Rule

11   of Civil Procedure 26(b)(2) (the court "shall" limit discovery when discovery "is obtainable from

12   some other source that is more convenient, less burdensome, or less expensive" or when "the

13   party seeking discovery has had ample opportunity by discovery in the action to obtain the

14   information sought").

15         9.     Oracle objects to the 30(b)(6) notice to the extent that it requires that Oracle

16   prepare and produce witnesses to testify as to topics protected by any applicable privilege or

17   immunity, including without limitation, the attorney-client privilege and the work product

18   doctrine.  Oracle will not disclose any information protected by such privileges.  Inadvertent

19   disclosure of any privileged communications or work product shall not constitute a waiver of

20   privilege or of any other basis for objecting to discovery to such information.

21         10.     Oracle objects to each topic to the extent that it seeks testimony concerning expert

22   consultants or to be provided by expert witnesses.

23         11.     Oracle objects to each topic the extent that it seeks information containing trade

24   secret, proprietary information, or other confidential or competitively sensitive business

25   information.  To the extent that it is relevant, such information will only be provided subject to

26   the protective order in this case.  Oracle hereby designates its 30(b)(6) testimony as "HIGHLY

27   CONFIDENTIAL INFORMATION, ATTORNEYS' EYES ONLY," subject to re-designation at

28   the depositions themselves or upon review of the transcripts.

1    12.    Subject to these General Objections and to the Specific Responses and Objections

2    and as set forth more specifically below, Oracle shall produce one or more witnesses to testify

3    about those topics in the Notice that are relevant and not privileged, to the extent it can

4    understand the topics, to the extent that the topics are not cumulative, and to the extent

5    responsive information is within Oracle's possession, custody, or control, after Oracle meets and

6    confers with Defendants with respect to the topics set forth in the Notice of Deposition.

7

8                      **SPECIFIC RESPONSES AND OBJECTIONS**

9    **TOPIC NO. 1:**

10    The structure and organization of the departments, groups, and/or business units at Oracle

11    responsible for the following functions: (a) sales of the PeopleSoft ("PS") and J.D. Edwards

12    ("JDE") product lines; (b) marketing of the PS and JDE product lines; (c) support and

13    maintenance of the PS and JDE product lines; (d) licensing relating to the PS and JDE product

14    lines; (e) competitive intelligence relating to the PS and JDE product lines; (f) tracking and

15    recording of sales, revenues, costs, profits, and profit margins associated with the PS and JDE

16    product lines; (g) development of the PS and JDE product lines; and (h) third party support of the

17    PS and JDE product lines, including through Oracle partnership programs.  For purposes of this

18    and all other topics listed herein, "Oracle" is defined to mean Oracle Corporation, Oracle USA,

19    Inc., and Oracle International Corporation.

20    **RESPONSE TO TOPIC NO. 1 :**

21    Oracle objects to Topic No. 1 on the grounds that it is irrelevant, vague, and ambiguous.

22    Several of these topics do not even make sense (e.g., Oracle does not sell its applications, it only

23    licenses them; Oracle's service on certain applications (which presumably is at the core of this

24    topic) is not a "product line"; "third party support", by definition, would not include Oracle

25    partners).  Moreover, this topic is grossly overbroad.  This case is about Defendants'

26    infringement of Oracle's intellectual property.  These vast topics cover literally every aspect of

27    Oracle's business practices with respect to two large product lines over several years.  Oracle

28    needs much more clarity about why each of these topics is relevant to Defendants' defenses in

1   this matter and what Defendants specifically want information about in order to assess whether

2   to provide witnesses and who to select.  Moreover, insofar as any relevant information is sought

3   by Defendants, it has been, or should have been, obtained through the use of interrogatories,

4   document requests, or requests for admission.

**TOPIC NO. 2:**

  The types of records, financial or otherwise, that Oracle maintains concerning revenues,

costs, profit margins, pricing, and cancellation and/or renewal rates for the PS and JDE product

lines, and the names of the persons, departments, groups, and/or business units responsible for

maintaining them.

  **RESPONSE TO TOPIC NO. 2:**

  Oracle objects to Topic No. 2 on the grounds that it is overbroad, vague, and ambiguous,

based in part on Defendants' failure to define the terms "product lines" and "records, financial or

otherwise" with reasonable particularity.  Moreover, insofar as any relevant information is

sought by Defendants, it has been, or should have been, obtained through the use of

interrogatories, document requests, or requests for admission.  Subject to these objections, and to

meeting and conferring with Defendants to clarify what exactly is being sought, Oracle will

produce witness(es) to provide general testimony on this broad topic.

**TOPIC NO. 3:**

  The customer relationship management databases used by Oracle in connection with the

PS and JDE product lines, including the "OKS" database referred to in the May 6, 2008 letter

from Briana Rosenbaum to Jason McDonell.  Specifically, for each such database: (a) the name

of the database; (b) the purpose of the database; (c) the general nature and the sources of the

information contained in the database; (d) the types of reports that can be generated from the

database; and (e) with respect to the "OKS" database, the process by which the portions of the

database produced to Defendants on May 6, 2008 were extracted from the database.

  **RESPONSE TO TOPIC NO. 3:**

  Oracle objects that the descriptions in this topic makes no sense (e.g., "OKS" is not a

1    "customer relationship management database") and that the terms are vague (e.g., "product

2    lines" do not include service, which is presumably the focus of this topic).  Oracle therefore asks

3    Defendants for written clarification of exactly what it is they want testimony about.  Moreover,

4    insofar as any relevant information is sought by Defendants, it has been, or should have been,

5    obtained through the use of interrogatories, document requests, or requests for admission.

6    Subject to these objections and further clarification, Oracle will produce witness(es) to provide

7    general testimony on this broad topic.

8    **TOPIC NO. 4:**

9        The methods Oracle uses to track and record customer complaints about support and/or

10    maintenance for the PS and JDE product lines, including identification of any databases used for

11    that purpose.

12        **RESPONSE TO TOPIC NO. 4:**

13        Oracle objects to Topic No. 4 on the ground that this information has been, or should

14    have been, obtained through the use of interrogatories, document requests, or requests for

15    admission.  Oracle further objects on the grounds that it is overbroad, vague, and ambiguous,

16    based in part on Defendants' failure to define terms "methods," "support," and "maintenance"

17    with "reasonable particularity."  Moreover, Oracle objects to this topic as irrelevant, overly broad

18    and unduly burdensome, to the extent that it calls for Oracle to produce information related to all

19    customer complaints.  Subject to these objections, Oracle will produce witness(es) to provide

20    general testimony on this broad topic.

21

22    **TOPIC NO. 5:**

23        Group email accounts at Oracle relating to SAP and/or TN.  Specifically, for each such

24    account: (a) the email address for the account; (b) the names of the members of the group; and

25    (c) the general purpose or subject matter of the account.

26        **RESPONSE TO TOPIC NO. 5:**

27        Oracle objects to Topic No. 5 on the grounds that, insofar as it references SAP, it is

28    irrelevant and overbroad.  This case is about Defendants' infringement of Oracle's intellectual

1   property, specifically through the service activities of SAP TN.  Oracle's ongoing competition

2   with SAP is not relevant to that issue and vastly expands the discovery burdens in this case.

3   Moreover, insofar as any relevant information is sought by Defendants, it has been, or should

4   have been, obtained through the use of interrogatories, document requests, or requests for

5   admission.  Subject to these objections, Oracle will produce witness(es) on the topic of group

6   email accounts (if any) related to SAP TN and/or to SAP insofar as such accounts has to do with

7   SAP TN.

8   **TOPIC NO. 6:**

9
        Sales, marketing, or competitive intelligence campaigns or initiatives, whether internal or

10  external, relating to SAP and/or TN, such as, for example, the "Strike Back at SAP" initiative.

11  Specifically, for each such campaign or initiative: (a) the name of the campaign or initiative; (b)

12  the identities of the person or persons responsible for implementing it; (c) the groups,

13  departments, and/or business units involved in it; (e) the general purpose of the campaign or

14  initiative; (f) the date it commenced and, if applicable, the date it terminated; and (g) the types of

15  documents generated in connection with it.

16  **RESPONSE TO TOPIC NO. 6:**

17
        Oracle objects to Topic No. 6 on the grounds that, insofar as it references SAP, it is

18  irrelevant and overbroad.  This case is about Defendants' infringement of Oracle's intellectual

19  property, specifically through the service activities of SAP TN.  Oracle's ongoing competition

20  with SAP is not relevant to that issue and vastly expands the discovery burdens in this case.

21  Moreover, while information about Oracle's competitive efforts against SAP is irrelevant to this

22  case, it is highly sensitive and proprietary.  Indeed, Oracle does not see how even its campaigns

23  against SAP TN (if any occurred) would be relevant and asks Defendants to explain how.  Oracle

24  further objects to Topic No. 6 on the ground that any relevant information sought by it has been,

25  or should have been, obtained through the use of interrogatories, document requests, or requests

26  for admission.  Subject to these objections, to confirmation that Oracle undertook any campaigns

27  against SAP TN, and subject to clarification by Defendants how any purported campaigns Oracle

28

1    undertook against SAP TN are relevant to this matter, Oracle will produce a witness(es) on that

2    limited topic.

3    **TOPIC NO. 7:**

4          The 3rd Party Swat Team. Specifically: (a) the structure and organization of the 3rd Party

5    Swat Team; (b) the identities of the person or persons responsible for it; (c) the groups,

6    departments, and/or business units involved in it; (d) the general purpose of the 3rd Party Swat

7    Team; and (d) the types of documents generated in connection with it.

8          **RESPONSE TO TOPIC NO. 7:**

9          Oracle objects to Topic No. 7 on the grounds that, except insofar as it concerns SAP TN,

10    it is irrelevant and overbroad.  This case is about Defendants' infringement of Oracle's

11    intellectual property, specifically through the service activities of SAP TN.  Oracle's competitive

12    efforts (if any) against other third parties are irrelevant to this case and, again, unnecessarily

13    expands discovery (as Judge Legge already found).  Indeed, Oracle does not see how even

14    campaigns against SAP TN would be relevant and asks Defendants to explain how.  Oracle

15    further objects to Topic No. 7 on the ground that any relevant information sought by it has been,

16    or should have been, obtained through the use of interrogatories, document requests, or requests

17    for admission.  Subject to these objections, to confirmation that Oracle's "3rd Party Swat Team"

18    had anything to do with SAP TN, and subject to clarification by Defendants how any campaigns

19    its "3rd Party Swat Team" undertook against SAP TN are relevant to this matter, Oracle will

20    produce a witness(es) on that limited topic.

21

22    **TOPIC NO. 8:**

23          The names of all departments, groups, business units, or employee positions that include

24    as one of their functions formulating or implementing Oracle's strategy for competing with SAP

25    and/or TN, including, for example, the "SAP Battle Desk."  Specifically, for each such

26    department, group, business unit, or employee position: (a) its structure and organization; (b) the

27    identities of the person or persons responsible for it or, in the case of a position, who holds it; (c)

28    its general purpose; and (d) the types of documents generated in connection with it.

**RESPONSE TO TOPIC NO. 8:**

Oracle objects to Topic No. 8 on the grounds that, except insofar as it concerns SAP TN, it is irrelevant and overbroad. This case is about Defendants' infringement of Oracle's intellectual property, specifically through the service activities of SAP TN. Oracle's ongoing competition with SAP is not relevant to that issue and vastly expands the discovery burdens in this case. Moreover, while information about Oracle's competitive efforts against SAP is irrelevant to this case, it is highly sensitive and proprietary. Indeed, Oracle does not see how even campaigns against SAP TN would be relevant and asks Defendants to explain how. Oracle further objects to Topic No. 8 on the ground that any relevant information sought by it has been, or should have been, obtained through the use of interrogatories, document requests, or requests for admission. Subject to these objections, to confirmation that Oracle undertook any campaigns against SAP TN, and subject to clarification by Defendants how any campaigns it undertook against SAP TN are relevant to this matter, Oracle will produce a witness(es) on that limited topic.

**TOPIC NO. 9:**

The disposition of the following types of documents and records of PeopleSoft, Inc. after its acquisition by Oracle: (a) license agreements between PeopleSoft and its customers pertaining to the PS and JDE product lines; (b) PeopleSoft employee emails; (c) PeopleSoft's legal department's documents and records; (d) PeopleSoft's documents and records pertaining to authorship and ownership of copyrights for the PS and JDE product lines; and (e) PeopleSoft's financial records.

**RESPONSE TO TOPIC NO. 9:**

Oracle objects to Topic No. 9 on the grounds that it is irrelevant, overbroad, vague, and ambiguous. This case is about Defendants' infringement of Oracle's intellectual property. These vast topics cover literally every aspect of record keeping as to PS and JDE and do so whether at the corporate level or on an individual basis for the tens of thousands of Oracle employees. Moreover, (d) is the subject of another Rule 30(b)(6) Notice from Defendants.

A/72572124 3/2021039-0000324170                                                          07-CV-1658-MJJ

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST NOTICE OF DEPOSITION OF PLAINTIFF
ORACLE CORP. PURSUANT TO FED. R. CIV. P. 30(B)(6)

1   Oracle needs much more clarity about why each of these topics is relevant to Defendants'

2   defenses in this matter, what Defendants specifically want information about, and whether

3   general testimony about corporate practices as opposed to testimony about individual employees'

4   practices is being sought in order to assess whether to provide witnesses and who to select.

5   Oracle further objects to Topic No. 9 on the ground that any relevant information sought by it

6   has been, or should have been, obtained through the use of interrogatories, document requests, or

7   requests for admission.

8   **TOPIC NO. 10:**

9       The categories of data stored on Oracle's intranet and their structure and organization.

10      **RESPONSE TO TOPIC NO. 10:**

11      Oracle objects to Topic No. 10 on the grounds that it is irrelevant, overbroad, vague, and

12  ambiguous.  This case is about Defendants' infringement of Oracle's intellectual property.  This

13  topic appears to seek information on every type of data on Oracle intranet, as well as how that

14  data is organized.  Oracle needs much more clarity about why this topic is relevant to

15  Defendants' defenses in this matter and what Defendants specifically want information about in

16  order to assess whether to provide witnesses and who to select.  Oracle further objects to Topic

17  No. 10 on the ground that any relevant information sought by it has been, or should have been,

18  obtained through the use of interrogatories, document requests, or requests for admission.

19

20  **TOPIC NO. 11:**

21      The 3rd Party Risk Analysis produced by Oracle in this litigation, one version of which

22  can be found at ORCL00032753.

23      **RESPONSE TO TOPIC NO. 11:**

24      Oracle objects to Topic No. 11 on the grounds that it is overbroad, vague, and

25  ambiguous, based in part on Defendants' failure to describe with particularity the aspects of the

26  "3rd Party Risk Analysis" they wishes information on.  Subject to and without waiving the

27  foregoing objections, Oracle will produce a witness(es) to testify on this topic.

28

1

2

3

DATED:  June 23, 2008

4

5                                      Bingham McCutchen LLP

6

7
                                       By:_____
8
                                           Briana Lynn Rosenbaum
9                                          Attorneys for Plaintiffs
                                           Oracle Corporation, Oracle USA, Inc., and Oracle
10                                         International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST NOTICE OF DEPOSITION OF PLAINTIFF
ORACLE CORP. PURSUANT TO FED. R. CIV. P. 30(B)(6)

1

**PROOF OF SERVICE**

2        I am over 18 years of age, not a party to this action and employed in the

3   County of San Francisco, California at Three Embarcadero Center, San Francisco, California

4   94111-4067.  I am readily familiar with the practice of this office for collection and processing

5   of correspondence by U.S. Mail and Electronic Mail, and they are deposited and/or sent that

6   same day in the ordinary course of business.

7        Today I served the following documents:

8   **PLAINTIFFS' RESPONSES AND OBJECTIONS TO
    DEFENDANTS' FIRST NOTICE OF DEPOSITION OF**

9   **PLAINTIFF ORACLE CORP. PURSUANT TO FED. R. CIV.
    P. 30(B)(6)**

10

11  ☒        (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in
             portable document format (PDF) listed below to the email address set forth below
             on this date.

12

13  ☒        (BY MAIL) by causing a true and correct copy of the above to be placed in the
             United States Mail at San Francisco, California in sealed envelope(s) with postage
             prepaid, addressed as set forth below.  I am readily familiar with this law firm's

14           practice for collection and processing of correspondence for mailing with the
             United States Postal Service.  Correspondence is deposited with the United States

15           Postal Service the same day it is left for collection and processing in the ordinary
             course of business.

16

17

18  Robert A. Mittelstaedt, Esq.          Tharan Gregory Lanier, Esq.
    Jones Day                             Jane L. Froyd, Esq.

19  555 California Street                 Jones Day
    26th Floor                            1755 Embarcadero Road

20  San Francisco, CA 94104               Palo Alto, CA  94303
    Tel: (415) 626.3939                   Tel: (650) 739-3939

21
    ramittelstaedt@JonesDay.com           tglanier@JonesDay.com

22                                        jfroyd@JonesDay.com

23        I declare that I am employed in the office of a member of the bar of this court at

24  whose direction the service was made and that this declaration was executed on June 23, 2008, at

25  San Francisco, California.

26                                        _____
                                                  Linda Vallin
27

28

A/72572124.3/2021039-0000324170                    1                           07-CV-1658 MJJ
PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST NOTICE OF DEPOSITION OF PLAINTIFF
ORACLE CORP. PURSUANT TO FED. R. CIV. P. 30(B)(6)

# Exhibit I



**Scott Cowan/JonesDay**
Extension 33721
11/20/2008 07:57 AM

To   "Rosenbaum, Briana Lynn"
      <briana.rosenbaum@bingham.com>
cc   "Hann, Bree" <bree.hann@bingham.com>, "Elaine Wallace"
      <ewallace@JonesDay.com>, "Howard, Geoff"
      <geoff.howard@bingham.com>, "House, Holly"
bcc

Subject   RE: Oracle v. SAP - Additional Custodians 

Briana,

We agree that Oracle's and SAP's competitive intelligence that is unrelated to TomorrowNow is not at issue in this case.  Defendants do not seek--and like Plaintiffs, object to--any discovery regarding Oracle's and SAP's competitive intelligence that is unrelated to TomorrowNow.

As we discussed during our most recent meet and confer, we intend to update our list of additional custodians very soon and will at that time provide you with some information regarding why we believe certain newly added custodians should be included on our list of up to 120 custodians from whom Plaintiffs must collect, review and produce documents.  However, in order to preserve the work product associated with our custodian selection decisions, we do not intend to provide you an "offer of proof" or any details regarding why we have selected a particular custodian.  Conversely, if you wish to tender a proposed declaration from any custodian that you believe would support the assertion that they have nothing to do with the issues in this case, we would be happy to consider any such proposed declaration. And, depending on the contents of any such declaration, we are willing to reconsider on an individual-by-individual basis whether any such custodians should be removed from our list.

Finally, we do not accept the position in your e-mail that Oracle's May 19, 2008 list of potential custodians should be the only group of custodians for whom we do not need to provide some support or other justification before they are included on our list of 120.  There is no basis in law, in the Court's Orders or otherwise for Plaintiffs to impose such a unilateral requirement on Defendants.  We will, as we have done so far in this case, attempt to work with you informally, through the meet and confer process and, if necessary, through Judge LaPorte to resolve any disagreements regarding the relevance of any particular custodian to the issues in this case.

Thanks,
SWC

*****************************************
Scott W. Cowan
Jones Day
717 Texas, Suite 3300
Houston, Texas  77002
Direct: 832-239-3721
Cell: 832-867-2621
Fax: 832-239-3600
Email: swcowan@jonesday.com
*****************************************
"Rosenbaum, Briana Lynn" <briana.rosenbaum@bingham.com>

**"Rosenbaum, Briana Lynn"**
<briana.rosenbaum@bingha
m.com>

11/03/2008 05:52 PM

To   "Elaine Wallace" <ewallace@JonesDay.com>
cc   "Hann, Bree" <bree.hann@bingham.com>, "Howard, Geoff"
      <geoff.howard@bingham.com>, "House, Holly"
      <holly.house@bingham.com>, jfroyd@jonesday.com,
      jlfuchs@JonesDay.com, "Jason McDonell"
      <jmcdonell@JonesDay.com>, "Scott Cowan"



&lt;swcowan@JonesDay.com&gt;, "Alinder, Zachary J."
&lt;zachary.alinder@bingham.com&gt;
Subject   RE: Oracle v. SAP - Additional Custodians

Elaine,

Thank you for the new custodian names, but, as you know, all 11 custodians are newly identified. As we have explained repeatedly, this means that they all have to be collected and processed before they can be reviewed. We'll have to start from square one on these custodians.

Regarding the new custodians you have identified, Oracle is concerned that Defendants are forgetting their often-expressed interest in sticking to the important issues in the case. From the names you've chosen to date, it is starting to become apparent that Defendants are attempting to misuse the discovery process in an effort to go fishing through our documents for competitive intelligence documents that they wouldn't otherwise have been entitled to.  Considering the testimony Defendants have received from Oracle's 3(b)(6) witnesses that Oracle's competitive intelligence group has little, if anything, to do with TomorrowNow, it's unclear how most of these choices helps with a defense in this action. This is just a waste of time and money.

As you know, Oracle has already expended considerable time and expense to interview and collect data for about 200 custodians, all in an attempt to preserve and collect potentially responsive documents. In fact, many of these custodians had already been processed and reviewed, in whole or in part, before Defendants started naming their own custodians. The more custodians Defendants name who are not on this list, the more expensive this gets.

In order to ensure that the expense of these additional collections is justified, Oracle requests an offer of proof for any custodian Defendants identify that is not listed on Oracle's May 19, 2008 list of potential custodians. Please provide this offer of proof for such custodians identified on October 24, as well as any further custodians you request in the future who are not on our May 19 list.

Regarding your request for information about Oracle's status of production for Defendants' requested custodians, please note that we are still working on getting information for you, and will respond under separate cover.

Thank you,

Briana

**Briana Rosenbaum**




**Briana Rosenbaum**
**B I N G H A M**
**T 415.393.2288**


**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Friday, October 24, 2008 1:30 PM

**To:** Rosenbaum, Briana Lynn
**Cc:** Hann, Bree; Howard, Geoff; House, Holly; jfroyd@jonesday.com; jlfuchs@JonesDay.com; Jason McDonell; Scott Cowan; Alinder, Zachary J.
**Subject:** Re: Oracle v. SAP - Additional Custodians

Briana,

As requested, attached is an updated custodian list with additional names. Please let me know when you are available to discuss the timing for completion of the review and production of documents from the group email addresses. Depending on your time estimates for custodian productions, it is likely that we will request that you prioritize completion of the group email addresses before some of the custodians on our list.

Elaine Wallace
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

| | |
|---|---|
| "Rosenbaum, Briana Lynn" <briana.rosenbaum@bingham.com> | |
| | To ewallace@jonesday.com |
| | cc "Hann, Bree" <bree.hann@bingham.com>, "House, Holly" <holly.house@bingham.com>, jfroyd@jonesday.com, "Alinder, Zachary J." <zachary.alinder@bingham.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Scott Cowan" <swcowan@JonesDay.com>, "Jason McDonell" <jmcdonell@JonesDay.com>, jlfuchs@JonesDay.com |
| 10/20/2008 06:31 PM | |
| | Subject Oracle v. SAP - Additional Custodians |

Elaine,

Please note that, while your existing preferred list of custodians and other docs are still in the queue for review and production, we will need more names to feed into the queue for collection by the end of this week.

Thank you,
Briana

**Briana Lynn Rosenbaum**

*Associate*
T 415.393.2288
F 415.393.2286
briana.rosenbaum@bingham.com

**B I N G H A M**
**Bingham McCutchen LLP**
**Three Embarcadero Center**
**San Francisco, CA 94111-4067**

=================================================================================

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone. Thank you.

=================================================================================

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# Exhibit J

EXHIBIT FILED
UNDER SEAL

# Exhibit K

# EXHIBIT FILED
# UNDER SEAL

# Exhibit L

# EXHIBIT FILED UNDER SEAL

# Exhibit M

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR  ·  SAN FRANCISCO, CALIFORNIA  94104

TELEPHONE: (415) 626-3939  ·  FACSIMILE: (415) 875-5700

Direct Number:  (415) 875-5831
ewallace@jonesday.com

May 14, 2009

**VIA EMAIL**

Geoffrey M. Howard, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067

        Re:    *Oracle Corporation, et al. v. SAP AG, et al.*

Dear Geoff:

This letter addresses Oracle's obligation to supplement its initial disclosures and discovery responses pursuant to Rule 26(e) and Judge Laporte's standing order.  As you know, the current deadline for supplementation of the parties' discovery responses is May 22.  Oracle should, of course, supplement all of its responses as necessary and appropriate; however, below we have addressed certain responses to which we ask that you pay particular attention:

## A.  Initial Disclosures.

We remind Oracle that its duty to supplement its initial disclosures includes the obligation to provide a "computation of each category of damages" and to make available the documents "on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii).

It is not permissible at this stage in the litigation for Oracle to defer all disclosure until expert reports are due.  *See Memry Corp. v. Kentucky Oil Tech., N.V.*, 2007 U.S. Dist. LEXIS 3094, at *15-16 (Jan. 4, 2007 N.D. Cal.) (declining to defer all disclosure until the expert's report); *see also Moore's Federal Practice* § 26.22[4][c] (plaintiff is obliged to disclose to the other parties the best information then available to it, however limited and potentially changing that may be).

At a minimum, Oracle must identify each category of damages and provide "a specific numerical value for each category of damages ... together with all evidentiary materials underlying such computation ...." *Memry Corp.*, at *17-18.  If Oracle contends that it has already produced the documents supporting its damages computations, it must "clearly identify, by number, the relevant documents." *Id.*

We will seek relief from the Court if an appropriate supplementation is not timely served.

ATLANTA  ·  BEIJING  ·  BRUSSELS  ·  CHICAGO  ·  CLEVELAND  ·  COLUMBUS  ·  DALLAS  ·  FRANKFURT  ·  HONG KONG  ·  HOUSTON
IRVINE  ·  LONDON  ·  LOS ANGELES  ·  MADRID  ·  MILAN  ·  MOSCOW  ·  MUNICH  ·  NEW DELHI  ·  NEW YORK  ·  PARIS  ·  PITTSBURGH
SAN DIEGO  ·  SAN FRANCISCO  ·  SHANGHAI  ·  SILICON VALLEY  ·  SINGAPORE  ·  SYDNEY  ·  TAIPEI  ·  TOKYO  ·  WASHINGTON

JONES DAY

May 14, 2009
Page 2

**B.  <u>Responses to TN's First Set of Interrogatories</u>.**

(a)  Interrogatory No. 5 requests as follows:

Describe in as much detail as possible how Oracle believes any activity alleged in
the Complaint has damaged it, including how Oracle was damaged by each
allegedly improper Download identified in the response to Interrogatory No. 4
and, if Oracle claims to have lost any customer as a result of any activity alleged
in the Complaint, all facts and inferences upon which Oracle bases that claim for
each customer allegedly lost.

In its response, Oracle states:  "A calculation of damages has not been made.
After computation of damages is complete, Oracle will make available to SAP the
documents or other evidentiary material, not privileged or protected from disclosure, on
which such computation is based, including materials based on the nature and extent of
the injuries suffered."  Resp. to Interrogatory No. 5 at 21.

This is not a sufficient response at this stage of discovery.  *See, e.g., City and
County of San Francisco v. Tutor-Saliba*, 218 F.R.D. 219, (N.D. Cal. 2003) ("the Court
contemplates that Plaintiffs will update its disclosure and provide greater detail as to its
calculations as discovery progresses … Once document production has been substantially
completed, however, Plaintiffs will have to provide more detailed disclosure of their
calculations either by way of *Rule 26* disclosures or through interrogatory responses.").

Please confirm that Oracle will supplement its response to this interrogatory
consistent with the substantial amount of damages discovery that has already been done.
We will seek relief from the Court if we do not receive an appropriate supplementation.

(b)  Interrogatory No. 12 requests as follows:

Describe in as much detail as possible all information available to Oracle relating
to its alleged concern that "SAP may have enhanced or improved its own software
applications offerings" using information from the Software and Support
Materials, as alleged in paragraph 16 of the Complaint.

In its September 14, 2007 response, Oracle states: "As defendants are aware,
Oracle has not yet received or reviewed defendants' documents or other discovery
responses" and "Oracle's investigation into defendants' misuse of its proprietary
materials is ongoing."  The remainder of the response is replete with conjecture and
speculation as well as several conclusory and presumptive statements.  Oracle has now
had plenty of time to review the literally millions of pages of documents and terabytes of
native files produced by Defendants.  Moreover, Oracle is nearing the end of taking
almost 350 hours of deposition testimony from Defendants' witnesses.  If Oracle has any
facts which support the statement that "SAP [not TN] may have enhanced or improved its
own software applications offerings" using information from the Software and Support
Materials, as alleged in paragraph 16 of the Complaint, then it should supplement its
response to Interrogatory No. 12 in such a manner as to provide Defendants with fair
notice of those facts.

JONES DAY

May 14, 2009
Page 3

**C.  Responses to TN's Second Set of Interrogatories.**

Interrogatory No. 16 requests as follows:

For each computer, computer system, and/or computer network (as those terms are used in the Second Amended Complaint) alleged to have been accessed without authorization, interfered with, and/or damaged, Identify each person or entity that owns, has legal title to, and/or actual possession of (as those terms are used in the Second Amended Complaint) the computer, computer system, and/or computer network.

In its response, Oracle identifies ten entities that it claims "currently [hold], or at some earlier point in time held, any ownership interest in, legal title to, and/or actual possession ...." These include entities that have since been dismissed from the case.

Oracle's response appears to be inconsistent with the allegations in the complaint and other, later interrogatory responses. *See, e.g.,* TAC ¶ 170 (referring to "Oracle USA's computers"); Resp. to Interrogatory No. 43, at 38 (referring to "Oracle USA's computer systems"). Please supplement the response to Interrogatory No. 16 to address this apparent inconsistency.

**D.  Responses to TN's Third Set of Interrogatories.**

Interrogatory No. 17 requests as follows:

Identify each customer that returned to Oracle (or PeopleSoft or JDE prior to their acquisition from Oracle) from January 1, 2002 through the present after having been a TN customer.

In its response, Oracle provided a list of 17 customers. Oracle objected that its investigation was not yet complete and that it expected to further amend and/or supplement its response in the future. If Oracle has additional information responsive to this interrogatory as a result of that continuing investigation, it should supplement this response.

Please confirm that Oracle will provide the supplementations requested above by May 22, along with any other responses, documents and disclosures that warrant supplementation. As you know, the parties have previously agreed that all of Defendants' discovery requests from the outset of discovery through the present are deemed to have been timely served on all current and future plaintiffs. We request that you make that fact clear in your supplemental responses and disclosures.

Sincerely,

Elaine Wallace

JONES DAY

May 14, 2009
Page 4


cc:    Holly House, Esq. (via email)
       Zachary J. Alinder, Esq. (via email)
       Bree Hann, Esq. (via email)

# Exhibit N

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR  ·  SAN FRANCISCO, CALIFORNIA  94104

TELEPHONE: (415) 626-3939  ·  FACSIMILE: (415) 875-5700

Direct Number:  (415) 875-5831
ewallace@jonesday.com

May 19, 2009

**VIA EMAIL**

Geoffrey M. Howard, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067

<div align="center">

**Re:**     *Oracle Corporation, et al. v. SAP AG, et al.*

</div>

Dear Geoff:

This letter addresses Plaintiffs' responses to Defendants' damages related document requests.[1]  Defendants remind Plaintiffs of their obligation to supplement its discovery responses pursuant to Rule 26(e) and Judge Laporte's standing order.  Plaintiffs may not defer production of relevant damages documents until expert discovery.

1.   Plaintiffs' limitation on damages discovery.

Plaintiffs have limited damages related discovery to "revenues, costs, and profit margins for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems …."

Specifically:

RFP. No. 70:  Requests production of "[a]ll Documents relating to any alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint." In response, Plaintiffs limited their production to "[d]ocuments sufficient to show Oracle's revenues, costs, and profit margins for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems …."

RFP Nos. 67 and 68:  Request documents relating to "Oracle's revenues, costs, and profit margins for products other than those referred to in the Complaint or at issue in this litigation, and services relating to such products."  Plaintiffs refused to produce documents responsive to these requests, stating that:

---

[1]  A separate letter will follow shortly regarding Defendants' other RFPs.

SFI-610655v1

ATLANTA   ·   BEIJING   ·   BRUSSELS   ·   CHICAGO   ·   CLEVELAND   ·   COLUMBUS   ·   DALLAS   ·   FRANKFURT   ·   HONG KONG   ·   HOUSTON
IRVINE   ·   LONDON   ·   LOS ANGELES   ·   MADRID   ·   MILAN   ·   MOSCOW   ·   MUNICH   ·   NEW DELHI   ·   NEW YORK   ·   PARIS   ·   PITTSBURGH
SAN DIEGO   ·   SAN FRANCISCO   ·   SHANGHAI   ·   SILICON VALLEY   ·   SINGAPORE   ·   SYDNEY   ·   TAIPEI   ·   TOKYO   ·   WASHINGTON

JONES DAY

May 19, 2009
Page 2

> "... Oracle's revenues, costs, and profit margins for products and services other than those relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems are not related to Oracle's claims or defendants' defenses."

RFP No. 107: Requests documents relating to Plaintiffs' allegation that they have suffered "loss of profits from sales to current and potential customers of Oracle support services and licenses for Oracle's software programs." In response, Plaintiffs limited their production to "[d]ocuments sufficient to show Oracle's revenues, costs, and profit margins for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems ...."

RFP Nos. 111-113: Request documents relating to, respectively, Plaintiffs' alleged "expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software," alleged probability of "future economic benefit in the form of profitable support services contracts and software licenses," and the allegation in the Complaint that "there is a substantial probability that Oracle support customers would have initiated, renewed, or expanded support contracts and software licenses with Oracle rather than Defendants."

In response to all three requests, Plaintiffs limited their production to documents "relating to its expectancy of receiving ongoing support revenue from its existing support customers, to the extent such Documents exist."

Based on these and other similar responses, Plaintiffs' damage claims are limited to alleged lost revenues or profits relating to support or maintenance of the Registered Works identified in the Complaint. Plaintiffs are *not* seeking alleged lost revenues or profits relating to licenses of any product (including any Registered Work), or from support of any product other than a Registered Work, or from any customer other than those allegedly lost to TN, or based on any other theory. If you disagree, please let us know immediately and explain why Plaintiffs believe they may pursue damages based on any theory other than the one to which they have limited discovery.

2.  Deficiencies in Plaintiffs' production.

a.  Revenues, costs, and profit margins relating to support of the Registered Works.

Notwithstanding its agreement to produce documents sufficient to show revenues, costs, and profit margins relating to support of the Registered Works, Plaintiffs have not done so. RFP Nos. 65, 66, 72, and 73 specifically request this information. But the documents Plaintiffs have produced primarily concern the parent entity, Oracle Corporation, which is no longer a plaintiff in the case. To the extent these documents contain information for the three subsidiary plaintiff entities, it is at too general a level to be useful. One certainly cannot calculate revenues, costs, and profit margins from the Registered Works for the three plaintiff entities from them. This is why, many months ago, we requested the general ledger, which Plaintiffs have thus far refused to produce.

JONES DAY

May 19, 2009
Page 3

The other two categories of damages related documents Plaintiffs have produced are customer contracts and customer-specific financial reports. However, these documents relate only to revenues. They tell us nothing about costs or profit margins for the three Plaintiff entities. Even with respect to revenues, they tell us nothing about how revenues are allocated to or among the three Plaintiff entities.

In short, Plaintiffs have not produced documents sufficient to show, for the three Plaintiff entities, revenues, costs, and profit margins relating to support of the Registered Works. Please let us know when you are available this week to meet and confer on this topic. If we are not able to resolve this dispute very shortly, we will seek relief from the Court.

b. Plaintiffs' expectancy of receiving ongoing support revenue.

As noted above, Plaintiffs agreed in response to RFP Nos. 111 through 113 to produce documents "relating to its expectancy of receiving ongoing support revenue from its existing support customers, to the extent such Documents exist." Please confirm that Plaintiffs have produced all reports, analyses, and similar documents relating to this subject.

c. Missing customer contract files.

We have not received a response to my April 27 letter regarding missing customer contract files. Please let us know when we can expect to receive these missing files.

Sincerely,

Elaine Wallace

cc:    Holly House, Esq. (via email)
       Zachary J. Alinder, Esq. (via email)
       Bree Hann, Esq. (via email)

SFI-610655v1

# Exhibit O

# BINGHAM

Zachary J. Alinder
Direct Phone:  (415) 393-2226
Direct Fax:      (415) 393-2286
zachary.alinder@bingham.com

May 22, 2009

**Via Electronic Mail and U.S. Mail**

Elaine Wallace, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500

**Re:  *Oracle, et al. v. SAP AG, et al.***

Dear Elaine:

This letter responds to your May 14 and May 19 letters with respect to their
requests concerning supplementation of initial disclosures, interrogatory
responses and requests for production.

First, Oracle will serve today supplemental and amended responses regarding the
following: (a) Initial Disclosures, (b) Oracle's Responses to the First Set of
Interrogatories, including a separately served further amendment/supplementation
of Interrogatory No. 13, (c) Oracle's Responses to the Third Set of
Interrogatories, and (d) Oracle's Responses to the Fourth Set of Interrogatories.

As to the specific discovery requests that you cite in your May 14 and 19 letters,
we believe that our supplementation has cured any deficiency with respect to the
Initial Disclosures and Interrogatory Responses.  As to Interrogatory No. 16 in the
Second Set of Interrogatories, given that Defendants' conduct stretches back
many years in the past including before Oracle acquired PeopleSoft, J.D. Edwards
and Siebel, the response does not appear inaccurate or inconsistent.

Further, as to all the responses, including those above, please note that Fed. R.
Civ. Proc. 26(e) only requires supplementation/amendment "if the additional or
corrective information has not otherwise been made known to the other parties
during the discovery process or in writing."  As you know, these responses were
served long before Oracle was aware of the vast scope of the illegal conspiracy in
which Defendants were engaged.  However, the substantial discovery that Oracle
has produced in the form of not only written discovery responses, but also in the
numerous depositions that have been taken, the hundreds of thousands of pages of
documents produced, the changed positions taken in the innumerable meet and

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T  415.393.2000
F  415.393.2286
bingham.com

Elaine Wallace, Esq.
May 22, 2009
Page 2

confer sessions (and written meet and confer letters) conducted during the discovery process, and in the many motions to compel and discovery hearings through the discovery process have all made Defendants sufficiently aware of additional or corrective information regarding many discovery responses. Fed. R. Civ. Proc. 26(e)(1)(A).

This applies specifically to your requests for further documents related to Requests for Production 67-68, 70, 107 and 111-113 in your May 19 letter. Indeed, without even examining the custodian productions, pursuant to the Parties' numerous meet and confer discussions and letters and agreements regarding financial document productions, including through the targeted search process, Oracle has produced detailed financial information including but not limited to: (1) customer contracts and license files, (2) customer financial reports (OKI3 and analytics), (3) at-risk reports and numerous analyses and presentations re same, including the impact of lost renewals on future license sales, (4) information on profit margins, (5) subsidiary key performance measures, (6) quarterly financial reference books, (7) support renewals, discount and pricing analysis emails and packages, (8) product revenue reporting packages, (9) board packages, (10) fiscal board budget reports, (11) JDE and PSFT support cancellation rate documents, including the impact of lost renewals on future license sales, (12) JDE and PSFT support bookings documents, (13) SEC filings, (14) forecasted revenue documents for license and support, (15) customer win/loss reports, (16) charts of accounts, (17) FAS 141 valuation reports and other acquisition valuation documents, and (18) integration scorecards/reports. Just among these document types, numbers 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17 and 18 all have information related to license revenue. Further, Oracle has served discovery related to all Safe Passage customers, not simply those identified as having a TN component by Defendants. Oracle is in the process of meeting and conferring with Defendants on those requests.

Note that we disagree completely with your characterization of your request for general ledger information, as it completely misstates the history of that meet and confer. On April 29, for the first time, over four weeks after receiving Oracle's final Charts of Accounts information, which Oracle produced starting back in February, Defendants provided us with a 73-page request for general ledger information. On May 4, we promptly objected to that request because of the unreasonable and oppressive burden involved with the over-broad request. In fact, we explained the months of processing by dedicated personnel that would be involved with collecting the requested information. Less than a week later, during our telephonic meet and confer, Jason McDonell requested the basis for our claim that months of processing would be required to collect the information. During that conversation, we explained specifically why and how Defendants' requests

Elaine Wallace, Esq.
May 22, 2009
Page 3

were unreasonably broad. Defendants have never stated any disagreement with
our description. In order to move the discussion along, we requested that
Defendants provide us with an appropriately-scoped and reasonable request. We
have not heard anything since. That Defendants now claim Oracle refused
production is a complete distortion of what happened, when in fact, Defendants
apparently abandoned their efforts to seek this information. We still look forward
to Defendants' next proposal if you have not in fact abandoned your efforts to
seek general ledger data. To avoid more wasted time and resources, we hope this
next proposal is realistic, especially given the short schedule before us.

Finally, Oracle confirms that additional license sales damages materials will be
produced in conjunction with Defendants' May 15, 2009 request for additional
custodial productions, *e.g.*, from Keith Block and Rich Allison. In addition,
Oracle will evaluate the completeness of those productions, and if necessary,
search for and produce non-privileged, non-duplicative, license pricing exception
information related to TomorrowNow or Safe Passage that can be located
following a reasonable and centralized search (*e.g.*, from a source comparable to
OSSInfo). In conjunction with its damages analysis, Oracle also will produce an
analysis of the purchasing history of its PeopleSoft and J.D. Edwards customer
base post-acquisition, along with any supporting evidence. In short, the
substantial discovery related to the issues identified in your letters, including (a)
license revenues, (b) non-TN-specific customers, and (c) sales of other products
has put those issues squarely within the case. No formal supplementation is
required under the Federal Rules for these responses because they have
"otherwise been made known to [you] during the discovery process or in writing."
Fed. R. Civ. Proc. 26(e)(1)(A).

        *           *           *           *

If, after review of the supplemental responses, Defendants continue to be
concerned about any of the above categories of discovery, Oracle will be happy to
schedule a further meet and confer for both sides to raise any outstanding issues
together.

Sincerely yours,

Zachary J. Alinder

cc:    Geoff Howard
       Holly House
       Bree Hann

# Exhibit P

1  BINGHAM McCUTCHEN LLP
   DONN P. PICKETT (SBN 72257)
2  GEOFFREY M. HOWARD (SBN 157468)
   HOLLY A. HOUSE (SBN 136045)
3  ZACHARY J. ALINDER (SBN 209009)
   BREE HANN (SBN 215695)
4  Three Embarcadero Center
   San Francisco, CA  94111-4067
5  Telephone:  (415) 393-2000
   Facsimile:   (415) 393-2286
6  donn.pickett@bingham.com
   geoff.howard@bingham.com
7  holly.house@bingham.com
   zachary.alinder@bingham.com
8  bree.hann@bingham.com

9  DORIAN DALEY (SBN 129049)
   JENNIFER GLOSS (SBN 154227)
10 500 Oracle Parkway
   M/S 5op7
11 Redwood City, CA  94070
   Telephone:  (650) 506-4846
12 Facsimile:   (650) 506-7114
13 dorian.daley@oracle.com
   jennifer.gloss@oracle.com
14
   Attorneys for Plaintiffs
15 Oracle USA, Inc., Oracle International
   Corporation, and Oracle EMEA Limited
16

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20

21  ORACLE USA, INC., *et. al*,               Case No. 07-CV-1658 (PJH) EDL

22            Plaintiffs,                      **PLAINTIFFS' SUPPLEMENTAL AND
                                               AMENDED INITIAL DISCLOSURES**
         v.
23                                             Date:  n/a
    SAP AG, *et al.*,                          Time:  n/a
24                                             Judge: The Honorable Phyllis J. Hamilton
            Defendants.                        Courtroom 11, 19th Floor
25
                                               **CONTAINS INFORMATION
26                                             DESIGNATED HIGHLY
                                               CONFIDENTIAL PURSUANT TO
27                                             PROTECTIVE ORDER**

28

A/73042322.8                                   Case No. 07-CV-1658 (PJH) EDL

       PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1    In keeping with the parties' agreement concerning the appropriate protocol for the

2    production of electronically stored information, and with the exception of any documents

3    protected from production as a result of attorney-client, work product or any other privilege or

4    objection recognized in law or equity, Oracle has been producing and will continue to produce

5    documents in the categories listed above and from the locations listed above pursuant to FRCP

6    26(a) in the form described below.

7    Discovery and Oracle's investigation are ongoing.  If, as the case develops,

8    Oracle identifies additional documents or categories of documents that support its position, it

9    will identify them in supplemental disclosures as required under Fed. R. Civ. P. 26(e).

10   **III.    COMPUTATION OF DAMAGES[1]**

11   In connection with its Third Amended Complaint, Oracle seeks damages against

12   Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively referred to as

13   "Defendants") resulting from Defendants' reproduction, distribution, public display, and

14   preparation of derivative works from copyrighted Oracle works, including its software, Software

15   and Support Materials ("SSMs"), software containing SSMs or other copyrighted works,

16   fraudulent access to, theft of, and further misuse of Oracle's underlying software applications as

17   well as SSMs and non-copyrightable support materials, as well as related unfair business

18   practices, interference with Oracle's business relationships, breaches of contract, and unjust

19   enrichment at the expense of Oracle.  Based on Oracle's investigation to date, Defendants'

20   actions have resulted in the following categories of harm:

21   •   Lost, diminished or delayed current and prospective customer revenues and

22       profits, including as it relates to support and maintenance and software

23       applications licensing;

24   •   Harmed current and prospective customer relationships, even where they did

25       not result in a loss of a customer support contract or software licensing;

26   

27   [1] Oracle also seeks injunctive relief.

28   

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1      • Devaluation of Oracle's intellectual property and other intangible assets and

2        Oracle's investment in the development and/or purchase of the same,

3        including downward pressure on the value of licenses for, harm to the

4        confidential nature of, minimized competitive advantages regarding,

5        destruction of Oracle's exclusive exploitation of and remuneration of, and the

6        denial of Oracle's licensing rights and revenues regarding the same;

7      • Loss of goodwill, including reputational harm and costs associated with

8        addressing Defendants' illegal conduct;

9      • Harm to Oracle's overall market cap;

10     • Harm and impairment to Oracle's customer support websites and underlying

11       customer support data, including impaired access to the same by Oracle and

12       its legitimate customers, harm to Oracle's control of and the ability to use the

13       same by Oracle and its customers for the purposes for which they were

14       intended, including to improve Oracle's customer support processes, and harm

15       to the functionality of these systems; and,

16     • Costs associated with investigating, mitigating (including for example

17       lowered prices, time and effort to retain customers or to address reputational

18       harm) and litigating against all these activities.

19     • The host of other damages attested to by Oracle witnesses, including, e.g.,

20       Juergen Rottler, such as the abandonment of existing PeopleSoft customer

21       contract step-up renewal price escalations, the early adoption and generous

22       terms of Oracle's Lifetime Support and Applications Unlimited programs and

23       additional spends on customer support enhancements.

24        Some of the above types of damage include elements that are irreparable in

25   nature.

26        Oracle is still in the process of gathering and culling down the evidence relevant

27   to its damages internally, from third parties (e.g., customers) and from Defendants. For instance,

28   the scope of Defendants' infringement and misuse of Oracle property is still being determined

1   because of the ongoing and late production of data warehouse and other voluminous technical

2   materials and Defendants' unwillingness to stipulate to exactly what they did.  Defendants have

3   yet to provide requested evidence relevant to Siebel or other Oracle applications – and indeed,

4   have fought such discovery.  While the Parties have agreed on a proposed case extension which

5   would allow the inclusion of Siebel claims, the Court has yet to rule on the parties' motion.

6   Accordingly, Oracle does not discuss Siebel-related claims or damages in these disclosures, but

7   will supplement/amend these disclosures as appropriate if the Court does approve the proposed

8   case schedule extension.  Further, Oracle's ability to calculate its damages obviously is

9   hampered by not knowing the full scope of the unlawful conduct related to the allegations in

10   Oracle's Third Amended Complaint.  Defendants have not provided relevant requested Safe

11   Passage information or information about their valuation of IP acquired legally – information

12   that bears on the value of TN and of TN's IP-theft based business model to SAP, which may be

13   relevant to what SAP would have paid for a hypothetical license.  Moreover, Defendants' use of

14   the attorney/client privilege to shield the actions and knowledge of SAP and its officers and

15   directors continues to hamper assessment of punitive damages.  Extensive meet and confers on

16   these issues and other damages-related discovery are ongoing and motions to compel may be

17   required.  In addition, a new round of discovery (including extensive requests relevant to

18   damages) has just been served by both sides.  Thus, there is ongoing relevant discovery that

19   could and likely will affect assessing and computing appropriate damages.

20          To complete their analysis and computations, Oracle's damages experts are

21   waiting for the additional factual material yet to be produced and analyzed; moreover, they have

22   not finalized their methodologies or computations of Oracle's damages.  In addition, legal

23   rulings (such as on Defendants' promised summary judgment motions) may affect the final

24   damages methodologies and computations.  Oracle's damages report and expert opinions will be

25   provided in accordance with whatever schedule is then in place in the action.  Thus the following

26   description does not constitute Oracle's damages analysis or demand and does not in any way

27   bind Oracle, but merely provides Oracle's current understanding of the damages here.

28          Oracle has ten causes of action; some of the damages described overlap and

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1  different plaintiffs bring different causes of action.  Oracle would not seek or be entitled to

2  duplicate recovery though it will likely seek damages in the alternative.

3          A.      In connection with its Copyright Infringement cause of action, Oracle has

4  alternative measures of its damages available to it under the law.  Oracle reserves its right to

5  elect statutory damages for Defendants' infringement at the appropriate time, but currently does

6  not envision that it will do so.  Rather, it currently seeks from Defendants the value of the

7  copyrighted material Defendants infringed both through hypothetical license(s) and, in the

8  alternative, through a lost profits/infringers' profits analysis.

9          Oracle expects to seek to recover damages based on a hypothetical license for the

10  PSFT/JDE-related infringement by Defendants.  Accordingly, the value of the PS/JDE-related

11  hypothetical license is determined by the value of the rights being licensed or received, as

12  evidenced by the circumstances at the time (*e.g.*, for Oracle – the fact that Oracle had just paid

13  significant amounts for the companies, the anticipated value to Oracle of the PSFT/JDE

14  acquisitions, Oracle's cross-sell and up-sell and service renewal history; for Defendants – the

15  fact that the acquisitions significantly increased Oracle's threat to SAP, the anticipated value to

16  SAP of the TN acquisition, the amount that would not have to be expended by Defendants to

17  legitimately create what they would instead license (which will also be the subject of expert

18  analysis and relied upon by Oracle's damages experts), SAP's cross-sell and up-sell and service

19  renewal history).  Based on the evidence to date, Oracle anticipates valuing the hypothetical

20  licenses in the   REDAC  TED  of dollars.  However, no formal computation has been completed.

21          Oracle's alternative lost profits and infringers' profits analysis for its copyright

22  infringement claims against Defendants is ongoing and incomplete.  It currently will encompass

23  the lost profits associated with support customers who left Oracle, PeopleSoft or J.D. Edwards

24  for SAP and TN, service-related discounts required to compete against SAP and TN, and lost

25  license sales and license discounts associated with competition with SAP and TN.  Evidence

26  relevant to this analysis is contained, for example, in Defendants' multiple internal and external

27  reports of the revenues taken away from Oracle by TN and by the Safe Passage program, in the

28  voluminous customer contracts and related files produced by the parties, in the customer

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1    financial reports that the parties have created and produced, in Oracle's At Risk reports and TN

2    win-back spreadsheets, in the extensive documents on support renewal cancellations and license

3    wins and losses against SAP and TN, in Oracle's productions and pending productions on

4    pricing exceptions for support and licenses requested and approved to compete with TN and Safe

5    Passage. Should the current schedule remain in place, Oracle will also be providing additional

6    evidence relied upon by its experts in conjunction with its damages expert report, including on

7    the purchasing history of its PeopleSoft and JDE customer base post-acquisition. Based on the

8    evidence to date, Oracle anticipates that the lost revenues associated with support losses and

9    discounts alone exceed            REDACTED            dollars. Oracle's infringers' profits analysis includes the

10   profits on the revenues SAP and TN made from their copyright infringement, including some or

11   all of the approximately     REDACTED     TN reported as revenues, and a significant portion of the

12   approximately     REDACTED     in license revenue associated with SAP's leverage of TN and Safe

13   Passage in the sale of license applications. Further evidence in support of this aspect of Oracle's

14   damages is described in section E below.

15          B.     Portions of Oracle's damages from Defendants' violations of the Federal

16   Computer Fraud and Abuse Act, of the Computer Data Access and Fraud Act and in connection

17   with Defendants' Trespass to Chattels were testified to by Dr. Koehler in his Fed. R. Civ. Proc.

18   30(b)(6) deposition. He also provided a written outline of harm and damages to Oracle's

19   computer systems, databases, data and network, Ex. 167, from which he testified. Oracle refers

20   Defendants to that testimony and the accompanying exhibits. In addition, Defendants' actions

21   adversely impacted Oracle's goodwill and caused it to lose business. These damages overlap in

22   large measure with those described below related to Defendants' breach of contract and

23   interference with Oracle's prospective economic advantage; they are not bounded by

24   Defendants' infringement of copyrighted materials. No formal computation of any of these

25   damages has been completed to date. Any additional evidence in support (e.g., salary

26   information associated with members of the investigations team, the cost of the associated

27   laptops) will be provided in connection with Oracle's expert report or, if an extension is granted,

28   once it has been gathered. In addition, as allowed by statute or law, Oracle will seek its tens of

1    millions of dollars of associated attorneys' fees, as well as punitive damages, in an amount to be

2    proved at trial.

3            C.      Oracle's damages from Defendants' breaches of contract overlap with its

4    lost profits analysis, described below.  Moreover, the breach of contract damages are distinct

5    from Defendants' infringement of copyrighted materials, as described in Oracle's responses to

6    Defendants' Fifth Set of Interrogatories.  No formal computation has been completed to date.

7            D.      The harm from Oracle's interference claims overlaps in part with its

8    alternative infringement lost profits analysis, described above, albeit with different plaintiffs.

9    However, as described in detail in Oracle's responses to Defendants' Fifth Set of Interrogatories

10   (and as highlighted in a number of the bullet points above), Defendants have interfered with

11   Oracle's current or prospective customer relationships, in ways that do not solely involve

12   copying, distribution, public display or creation of a derivative work, causing further and

13   additional lost profit damages and other types of harm like harm to goodwill and other

14   reputational harm.  No formal computation as to such harms, other than as built into the analysis

15   above, has yet been completed.  Because of the willfulness of Defendants' interference,

16   including TN and SAP's knowledge of the illegality of TN's method of service delivery and their

17   lengthy failure to correct and make legal that business delivery despite knowing of its existence

18   from due diligence and continuing that illegal business model for over a year and a half after

19   being sued by Oracle, Oracle will also be seeking significant punitive damages, in an amount to

20   be proved at trial.

21           E.      Defendants were also unjustly enriched and received ill-gotten gains at the

22   expense of Oracle, other than as described in its copyright infringement action, by all the illegal

23   conduct and other unfair business practices listed in Oracle's Third Amended Complaint and as

24   described in Oracle's responses to Defendants' Fifth Set of Interrogatories.  These include gains

25   and/or profits SAP and TN made from those unjust, unfair, illegal, and deceptive activities,

26   including some or all of the approximately $40 million TN reported as profits, and a portion of

27   the approximately $500 million in license revenue associated with SAP's leverage of TN in the

28   sale of license applications, reputational harm, and the amount that Defendants saved in taking

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1    from Oracle the above-described material rather than legitimately creating it (which will also be

2    the subject of expert analysis and relied upon by Oracle's damages experts), and attorneys' fees

3    as provided by statute or law.  No formal computation has been completed to date.  Evidence

4    relevant to Defendants' unjust enrichment and the ill-gotten gains received through their unfair

5    business practices is primarily contained in Defendants' internal analyses and presentations on

6    Safe Passage and SAP TN and the customer contracts and related files and electronic customer

7    financial reports Defendants produced on the list of 81 customers and the numerous depositions

8    of Defendants' witnesses related to Safe Passage and leveraging TomorrowNow to compete

9    against Oracle; also relevant are Defendants' documents and testimony on their profit margins;

10    Oracle has requested and will be pursuing production of additional Safe Passage damages-related

11    information from Defendants, which is also relevant.  Other relevant evidence includes Oracle's

12    at-risk reports and other customer financial reports and evidence as to the amount that

13    Defendants saved in taking from Oracle the above described material rather than legitimately

14    creating it.

15    **IV.**    **INSURANCE COVERAGE**

16            This category of initial disclosures is not applicable to Oracle at this time.

17    **V.**    **FORM OF PRODUCTION**

18            Oracle will produce all documents electronically in the following form:

19            (1) For paper documents, Oracle will provide a standard delimited data load file

20    containing the following fields for loading into Summation (or another format if requested by

21    Defendants):  (1) Beginning and Ending Control Number, (2) Beginning and Ending Attachment

22    Number, (3) Page Count, (4) Custodian, and (5) OCR text.  For each paper document, Oracle

23    will provide black/white group IV single page TIFF images with a standard Summation DII

24    delimited load file.  For any color documents, Oracle will initially produce documents in

25    black/white format, but will at Defendants' request provide color JPEG images only when the

26    color is necessary to decipher the document.

27            (2) For all electronic documents, including email and email attachments, Oracle

28    will provide a standard delimited data load file containing the following fields and metadata for

1  loading into Summation (or another format if requested by Defendants): (1) Beginning and

2  Ending Control Number, (2) Beginning and Ending Attachment Number, (3) Document Type,

3  (4) Date Sent and Received, (5) Date Modified, (6) Date Created, (7) Custodian, (8) Author, (9)

4  Recipient, (10) CC, (11) BCC, (12) Email Subject Line, and (13) Filename.  For each email with

5  an attachment or attachments, the email should be an individual record in the load file followed

6  sequentially by its respective attachment or attachments and the attachment's metadata.  For all

7  electronic documents, including email and email attachments, Oracle will provide black/white

8  group IV single page TIFF images with a standard Summation DII delimited load file.  For any

9  color documents, Oracle will initially produce documents in black/white format, but will at

10  Defendants' request provide color JPEG images when the color is necessary to decipher the

11  document.  Oracle will provide Microsoft Excel and similar files (ones that are only reasonably

12  usable in their native format) in native format with the original un-modified metadata.  Oracle

13  will not provide corresponding TIFF images for files produced in native format, such as

14  Microsoft Excel files.  A placeholder image will be inserted in the electronic production for any

15  native format documents.

16  **VI.     CERTIFICATION**

17         Pursuant to Fed. R. Civ. P. 26(g)(1), counsel for Oracle certifies that to the best of

18  its knowledge, information, and belief, formed after an inquiry that is reasonable under the

19  circumstances, these supplemental and amended Initial Disclosures are complete and correct as

20  of the time Oracle makes them.

21

   DATED:  May 22, 2009
22

                              Bingham McCutchen LLP
23

24

                              By: _____
25
                                        Zachary J. Alinder
26                                       Attorneys for Plaintiffs
                              Oracle USA, Inc., Oracle International Corporation,
27                                   and Oracle EMEA Limited

28

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

# Exhibit Q

# EXHIBIT FILED UNDER SEAL

# Exhibit R



"Rosenbaum, Briana Lynn"
<briana.rosenbaum@bingha
m.com>

09/02/2008 06:03 PM

To  "Elaine Wallace" <ewallace@JonesDay.com>

cc  "Hann, Bree" <bree.hann@bingham.com>, "Howard, Geoff"
<geoff.howard@bingham.com>, "House, Holly"
<holly.house@bingham.com>, jfroyd@jonesday.com,

bcc

Subject  RE: Oracle v. SAP - Additional Custodians

History:  🗗 This message has been replied to and forwarded.

Elaine,
We are getting through Defendants' priority custodians quicker than anticipated.  The only other
documents currently in our queue are the OSSINFO email address and HQINFO_US_APPR@oracle.com
email address, which are group email addresses used by the support (OSSINFO) and Global Business
Practices (HQINFO) approvals groups.  Before you gave us your list of custodians, we were already about
3/4ths of the way through the 355,565 docs in OSSINFO. Because we are still processing the new
custodians you identified (Madsen and Hoang), we expect to have to turn to the remaining OSSINFO
documents and/or begin review of the HQINFO documents in the next day or so.  Please let us know
immediately which of these group email addresses, if any, you would like us to review, or, if you prefer us
to review other documents, please provide new custodian names immediately.

Regarding your "reservation of rights" to expand the 120 custodian limit, please note that we are doing all
in our power to anticipate our review pace and provide you with the opportunity to weigh in on custodian
names.  We have more than done that, letting you know a week ago of our upcoming needs.  If you would
like to reserve rights based on our efforts to *continue* to review Oracle's potentially responsive documents,
we will do the same for the numerous custodians you produced without our input.  That would significantly
reduce your custodian productions.

Please let me know ASAP about your decision regarding the OSSINFO and HQINFO email addresses, or
provide alternative custodian names.  Otherwise, we will continue with OSSINFO and HQINFO as
planned.

Thank you,

Briana

**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Friday, August 29, 2008 4:57 PM
**To:** Rosenbaum, Briana Lynn
**Cc:** Hann, Bree; Howard, Geoff; House, Holly; jfroyd@jonesday.com; jlfuchs@JonesDay.com; Jason
McDonell; Scott Cowan; Alinder, Zachary J.
**Subject:** RE: Oracle v. SAP - Additional Custodians

Briana,

You still have not answered my question.  Please provide the specific names of each individual in your
former queue.  Also, to be clear, if Oracle improperly attempts to fill our 120 custodian limit with
custodians not of our choosing, we reserve our right to argue that custodians selected by Oracle do not
count against the limit and will raise the issue with the court.

Elaine Wallace
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

"Rosenbaum, Briana Lynn"
<briana.rosenbaum@bingham.co
m>

08/29/2008 04:08 PM

To "Elaine Wallace" <ewallace@JonesDay.com>

cc "Hann, Bree" <bree.hann@bingham.com>, "Howard, Geoff"
<geoff.howard@bingham.com>, "House, Holly" <holly.house@bingham.com>,
jfroyd@jonesday.com, jlfuchs@JonesDay.com, "Jason McDonell"
<jmcdonell@JonesDay.com>, "Scott Cowan" <swcowan@JonesDay.com>, "Alinder,
Zachary J." <zachary.alinder@bingham.com>

Subjec RE: Oracle v. SAP - Additional Custodians
t

Elaine,

The OSSINFO email address, ossinfo_us_appr@oracle.com, is the group email address previously
referred to in our meet and confer discussions as the "Group Support Renewals Email Address."

With the holiday, it's hard to project our exact timing, but new names by the end of next week should be
fine. However, just to be clear, on the off chance that we get through these documents quicker than
anticipated, we will not stop our review. We will continue to review the OSSINFO email address
documents until we hear back from you. I expect that you have the same process on your end.

Briana

**Briana Rosenbaum**
**B I N G H A M**
**T 415.393.2288**

**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Friday, August 29, 2008 3:06 PM
**To:** Rosenbaum, Briana Lynn
**Cc:** Hann, Bree; Howard, Geoff; House, Holly; jfroyd@jonesday.com; jlfuchs@JonesDay.com; Jason
McDonell; Scott Cowan; Alinder, Zachary J.
**Subject:** RE: Oracle v. SAP - Additional Custodians

Briana,

I'm not sure I understand your response. Your original email referred to custodians in your former queue. By that did you mean the people on the "OSSINFO group email address" referred to in your email below? If so, who are those people? Also, your original email said you would need additional custodian names "in the next couple of weeks" and I responded that we would send you additional names by the end of next week. But your email below implies that you may run out of documents for the last seven names we provided before the end of next week. Please clarify when you expect to need additional names from us.


Thanks.



Elaine Wallace
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

| | | |
|---|---|---|
| "Rosenbaum, Briana Lynn" <briana.rosenbaum@bingham.com> | To | "Elaine Wallace" <ewallace@JonesDay.com> |
| | cc | "Hann, Bree" <bree.hann@bingham.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "House, Holly" <holly.house@bingham.com>, jfroyd@jonesday.com, jlfuchs@JonesDay.com, "Jason McDonell" <jmcdonell@JonesDay.com>, "Scott Cowan" <swcowan@JonesDay.com>, "Alinder, Zachary J." <zachary.alinder@bingham.com> |
| 08/29/2008 02:53 PM | Subject | RE: Oracle v. SAP - Additional Custodians |


Elaine,
Before you provided the list of seven additional names, we were reviewing the OSSINFO group email address. We will continue to review these documents should we run out of documents to review from the newly identified seven. To the extent that you do not want this to occur, you will have to provide additional names -- we will not stop our review of material. Regarding timing: we are currently preparing Rick Cummins's documents for production and expect to have them produced in mid-September. We do not have estimated production dates for the remaining custodians, as they are still either in processing or being reviewed.


Thank you,
Briana

Briana Rosenbaum
**B I N G H A M**
**T 415.393.2288**


**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Friday, August 29, 2008 11:25 AM
**To:** Rosenbaum, Briana Lynn
**Cc:** Hann, Bree; Howard, Geoff; House, Holly; jfroyd@jonesday.com; jlfuchs@JonesDay.com; Jason McDonell; Scott Cowan; Alinder, Zachary J.
**Subject:** Re: Oracle v. SAP - Additional Custodians


Briana,

We will provide additional custodian names by the end of next week.  In the meantime, please do not start processing any custodians in your former queue without asking us if they are custodians we want to include in our 120.  Also, can you please provide the following information as soon as possible:  (1) a complete list of all custodians in your former queue; and (2) estimated dates by which you plan to produce documents for each of the custodians whose names we have provided to you.


Thanks.


Elaine Wallace
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

| | |
|---|---|
| "Rosenbaum, Briana Lynn" <briana.rosenbaum@bingham.com> | To "Elaine Wallace" <ewallace@JonesDay.com> |
| | cc "Hann, Bree" <bree.hann@bingham.com>, "House, Holly" <holly.house@bingham.com>, jfroyd@jonesday.com, "Alinder, Zachary J." <zachary.alinder@bingham.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Scott Cowan" <swcowan@JonesDay.com>, "Jason McDonell" <jmcdonell@JonesDay.com>, jlfuchs@JonesDay.com |
| 08/27/2008 05:47 PM | Subject Oracle v. SAP - Additional Custodians |

Elaine,
Please be advised that we will need additional custodian names for review and production in the next couple of weeks.  If none are provided, we will continue with the custodians in our former queue.


Thank you,
Briana

**Briana Lynn Rosenbaum**
*Associate*
**T 415.393.2288**
**F 415.393.2286**
**briana.rosenbaum@bingham.com**

**B I N G H A M**
**Bingham McCutchen LLP**
**Three Embarcadero Center**
**San Francisco, CA 94111-4067**


======================================================================
=======
Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone. Thank you.
======================================================================
=======


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


==========

This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========