1   Robert A. Mittelstaedt (SBN 060359)
    Jason McDonell (SBN 115084)
2   Elaine Wallace (SBN 197882)
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA 94104
4   Telephone:   (415) 626-3939
    Facsimile:   (415) 875-5700
5   ramittelstaedt@jonesday.com
    jmcdonell@jonesday.com
6   ewallace@jonesday.com

7   Tharan Gregory Lanier (SBN 138784)
    Jane L. Froyd (SBN 220776)
8   JONES DAY
    1755 Embarcadero Road
9   Palo Alto, CA 94303
    Telephone:   (650) 739-3939
10  Facsimile:   (650) 739-3900
    tglanier@jonesday.com
11  jfroyd@jonesday.com

12  Scott W. Cowan (Admitted *Pro Hac Vice*)
    Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13  JONES DAY
    717 Texas, Suite 3300
14  Houston, TX 77002
    Telephone:   (832) 239-3939
15  Facsimile:   (832) 239-3600
    swcowan@jonesday.com
16  jlfuchs@jonesday.com

17  Attorneys for Defendants
    SAP AG, SAP AMERICA, INC., and
18  TOMORROWNOW, INC.

19                  UNITED STATES DISTRICT COURT

20                 NORTHERN DISTRICT OF CALIFORNIA

21                      SAN FRANCISCO DIVISION

| | |
|---|---|
| 22  ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| 23              Plaintiffs, | **DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL INFORMATION FROM PLAINTIFFS** |
| 24       v. | |
| 25  SAP AG, et al., | **REDACTED** |
| 26              Defendants. | Date: August 18, 2009 |
| 27 | Time: TBD |
| 28 | Courtroom: E, 15th Floor |
| | Judge: Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 2
II. STATEMENT OF FACTS ............................................................................................. 3
    A. Each of the Three Plaintiffs is Seeking to Recover Lost Profits Damages ............. 3
    B. Defendants have Diligently Sought Discovery Concerning Plaintiffs's Alleged Lost Profits ................................................................................................ 4
        1. Plaintiffs' Initial Damages Discovery Position ........................................... 5
        2. Oracle's Public Financial Information ........................................................ 5
        3. Oracle's CEO and Worldwide Head of Support Contradict Other Witnesses .................................................................................................... 7
        4. Defendants' Attempt to Gain Access to Plaintiffs' General Ledger ........... 7
        5. Defendants' Targeted Search No. 3 ............................................................. 8
        6. The Rule 30(b)(6) Deposition of Oracle International Corporation ........... 9
III. ARGUMENT ................................................................................................................. 10
    A. The Discovery Standard ........................................................................................ 10
    B. Oracle has Frustrated Defendants' Efforts to Obtain Lost Profits Discovery ....... 11
    C. Plaintiffs Should be Ordered to Produce the Requested Discovery ...................... 12
        1. Discovery of Plaintiffs' General Ledgers is Necessary in Order to Evaluate any Claim of Lost Profits ............................................................ 12
        2. Plaintiffs Should be Ordered to Produce Reports showing Plaintiffs' Profitability of its PeopleSoft, J. D. Edwards and Siebel Product Lines ........................................................................................................... 12
        3. Plaintiffs Should be Ordered to Produce Detailed Profit & Loss Statements for Each Plaintiff ...................................................................... 13
        4. Plaintiffs Should be Ordered to Provide a Complete Response to Defendants Targeted Search Request No. 3 ................................................ 13
        5. OIC Should be Ordered to Produce a Witness to Provide Supplemental Rule (30)(b)(6) Testimony Regarding the Royalty Payments Received by or Due to OIC in Connection with the Alleged Registered Works and the Related Cost Sharing Agreements .................................................................................................. 13
IV. CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

### CASES

*Blankenship v. Hearst Corp.*
  519 F.2d 418 (9th Cir. 1975) .................................................................................................. 11

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*
  201 F.R.D. 33 (D. Mass. 2001) .............................................................................................. 11

*Fago v. M & T Mortgage Corp.*
  235 F.R.D. 11 (D.D.C. 2006) ................................................................................................. 11

*Gonzales v. Google, Inc.*
  234 F.R.D. 674 (N.D. Cal. 2006) ........................................................................................... 10

### RULES & STATUTES

Federal Rules of Civil Procedure
  26(b)(1) .................................................................................................................................. 10
  30(b)(6) .................................................................................................................................. 11
  37(a)(1) .................................................................................................................................... 1

### OTHER AUTHORITIES

4 *Nimmer on Copyright*
  § 14.02[A][1] ........................................................................................................................... 2

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 18, 2009 at a time to be determined by the Court, located at 450 Golden Gate Avenue, San Francisco, defendants SAP AG, SAP America, Inc. and TomorrowNow, Inc. ("Defendants"), by their undersigned counsel, will move this Court for an order compelling Plaintiffs Oracle USA, Inc. ("Oracle USA"), Oracle International Corporation ("OIC") and Oracle EMEA Limited ("OEMEA") (collectively "Plaintiffs" or "Oracle") to produce financial information relevant to the calculation of Plaintiffs' alleged lost profits damages.

This motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein and on the declaration of Jason McDonell filed herewith.

# RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 37,[1] Defendants seek an order compelling Plaintiffs to produce financial information relating to their claims of lost profits damages regarding support services, including:

(1) The general ledgers for each Plaintiff corporation;

(2) Reports showing Plaintiffs' profitability of their PeopleSoft, J. D. Edwards and Siebel product lines and the underlying source documents upon which they are based;

(3) Detailed profit and loss statements for each Plaintiff;

(4) A response to Defendants' Targeted Search Request No. 3; and

(5) Supplemental Rule (30)(b)(6) testimony regarding the royalty payments received by or due to OIC in connection with the alleged Registered Works, how the royalty rates were established and the related allocations of costs pursuant to certain Cost Sharing Agreements.

# ISSUE PRESENTED

Have Plaintiffs improperly failed to produce financial information relevant to a calculation of their alleged lost profits damages?

---

[1] Pursuant to Fed. R. Civ. P. 37(a)(1), Defendants' counsel confirms that they have conferred with opposing counsel in a good faith effort to reach agreement on these matter. *See* Declaration of Jason McDonell in Support of Defendants' Motion to Compel Production of Financial Information from Plaintiffs ("McDonell Decl."), ¶ 20, Exs. 1, 2, 4 and 18.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

This motion seeks discovery relevant to the calculation of Plaintiffs' alleged lost profits damages. Under the Copyright Act, actual damages represent the injury to the market value of the copyrighted work at the time of infringement. 4 *Nimmer on Copyright* § 14.02[A][1] at 14-13 to 14-14. In appropriate circumstances, this amount may be computed by determining the profits that would have accrued to the plaintiff but for the infringement. *Nimmer* §14.02[A][1] at 14-14 to 14-15.

The gist of Oracle's lost profits claim is that it lost profits relating to support services when its customers terminated service agreements and acquired support services instead from TN. Oracle's damages claim—publicly stated as being as much as a billion dollars for activities over two years—is remarkably excessive, particularly given that TN cost a mere $10 million to purchase. The speculations of Oracle's executives are even more hyperbolic, though Plaintiffs maintain that they must be kept under seal.

Beginning with the commencement of discovery in this case *two years ago*, Defendants have sought to obtain sufficient discovery to permit them to evaluate Plaintiffs' alleged lost profits. At the outset, Plaintiffs argued that damages discovery should be postponed until the later stages of the case. While the Special Master initially endorsed that idea, Judge Hamilton soundly rejected it at the April 24, 2008 case management conference and directed damages discovery to proceed apace.

Over the course of the last year, Defendants have continued to seek – in multiple ways – information about Plaintiffs' actual profitability on the relevant software product lines. As chronicled in this motion, despite these efforts, Plaintiffs have still not produced sufficient information.

Since this Court gave Defendants permission to file this motion, Plaintiffs have been scrambling to create a record that they are attempting (with regard to some materials, for the first time) to locate and make available the requested information. Although Defendants have made it crystal clear to Plaintiffs that they will continue to meet and confer on this long-outstanding

issue,[2] Plaintiffs' attempts are far too little, far too late to satisfy their discovery obligations. Given the advanced state of the case, however, Defendants will proceed with this motion on the safe assumption that these issues will remain ripe for hearing.

## II. STATEMENT OF FACTS.

### A. Each Of The Three Plaintiffs Is Seeking To Recover Lost Profits Damages.

Oracle Corporation – the ultimate parent of the Oracle group of companies – is no longer a plaintiff in this action, having withdrawn its claims.[3] Currently, Plaintiffs are three separate affiliated corporations – Oracle USA, OIC and OEMEA. OIC is the alleged sole owner of all of the copyrighted software and support materials at issue.[4] Consequently, only OIC is alleged to have standing to sue for copyright damages for the alleged infringement of the copyrighted software and support materials (the "Registered Works"). *Id.* Oracle USA and OMEA are pursuing other causes of action. Each of the Plaintiffs, however, is seeking "*loss of profits*" from sales of Oracle support services.[5]

Plaintiffs' alleged lost profits must be analyzed in the context of their corporate interrelationships. REDACTED

.

The specific Oracle product lines that are the subject of the Registered Works are certain of Oracle's PeopleSoft, and J. D. Edwards ("JDE") software packages and – subject of Plaintiffs' impending Fourth Amended Complaint – Siebel product lines. Plaintiffs claim that, but for the

---

[2] *See, e.g.*, McDonell Decl., Exs. 1 & 2.

[3] Oracle Corporation was a named plaintiff in the first three complaints, but was dropped when Plaintiffs filed their Third Amended Complaint. *See* Third Amended Complaint for Damages and Injunctive Relief, etc., filed October 8, 2008 (Dkt. 182).

[4] *See* Order Granting Motion to Dismiss in Part and Denying in Part, December 15, 2008 (Dkt. 184), at p. 4.

[5] *See, e.g.*, Plaintiffs' Third Amended Complaint for Injunctive Relief, etc., ¶ 141 (emphasis added).

actions of TN, Oracle would have kept those support customers for some additional period of time and would have made more profits.

Importantly, Oracle has other lines of products and services in addition to its PeopleSoft, JDE and Siebel lines, including its flagship database and middleware software businesses. But because Plaintiffs are pursuing claims only concerning the former three product lines, it is Plaintiffs' lost profits for those product lines that is relevant. Thus, Oracle's financial information has to be parsed to determine the alleged lost profits on those product lines. The issue is what profits would OIC, Oracle USA and OEMEA have made from sales of support services of the PeopleSoft, JDE and Siebel product lines, but for the actions of TN? Despite two years of seeking this information, it has still not been provided in sufficient detail.

### B. Defendants Have Diligently Sought Discovery Concerning Plaintiffs's Alleged Lost Profits.

From the first day discovery was permitted in this case, Defendants have sought discovery of Plaintiffs' alleged lost profits.[6] In July 2007, Defendants served their First Request for Production of Documents requesting production of "All Documents relating to any alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint." *See* McDonell Decl., Ex. 3, p. 48 (RFP No. 70). In response, Plaintiffs agreed to produce "[d]ocuments sufficient to show Oracle's revenues, costs, and *profit margins* for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems …." *Id.* (emphasis added).

Thereafter, a two-year-long game of cat and mouse ensued, with Defendants asking for profit information through multiple and varied discovery devices and Plaintiffs variously responding that the information either does not exist, would be too burdensome to produce or that Defendants have not asked the question in the right way. In all events, Plaintiffs still have not produced sufficient information regarding of their alleged lost profits on the relevant product lines.

---

[6] *See* McDonell Decl., ¶ 3, Ex. 3.

### 1. Plaintiffs' Initial Damages Discovery Position.

In the early stages of the case, Plaintiffs asserted that the documents they had produced in response to an order by the Special Master Judge Legge, including their contracts with the former TN customers, were sufficient to show the profits they would have made from those customers but for the activities of TN. *See* McDonell Decl., Ex. 4, pp. 1-2. That assertion proved to be incorrect for a variety of reasons, including the fact that many customer contract files are incomplete and they do not include any expense information necessary to derive a conclusion about profits. *See id.*, Ex. 4, p. 2. Moreover, that document production ignored the intricacies of the inter-company relationships among the Plaintiffs, including the fact that OIC's profits are a function of the royalties it earns from its affiliates and it does not even enter into contracts with end-user customers.

### 2. Oracle's Public Financial Information.

Plaintiffs also claimed that Oracle Corporation's publicly filed financial information and various internal quarterly reports were sufficient evidence of their profit margins. *Id.*, Ex. 4, p. 2. While Oracle Corporation's publicly filed Annual Report on Form 10-K shows a profit margin for Oracle Corporation's support services, it is accompanied by a disclaimer that states that the reported margins "do not represent the actual margins":

> "[2] *The margins reported* reflect only the direct controllable costs and expenses of each line item of business and *do not represent the actual margins* for each operating segment, because they do not contain an allocation of product development, information technology, marketing and partner programs, and corporate and general and administrative expenses incurred in support of the lines of business. Additionally, the margins do not reflect the amortization of intangible assets, restructuring costs, acquisition-related costs or stock-based compensation."

*Id.*, Ex. 5, p. 103, n.2 (emphasis added). Moreover, *Oracle Corporation* – the "registrant" on the Annual Report – is no longer a plaintiff in this case. Thus, Oracle's Corporation's published profit margins are incomplete and unreliable evidence of the profitability of the Plaintiff entities.

Following up on this issue, Defendants served a Rule 30(b)(6) deposition notice on the subject of "the types of records . . . that Oracle maintains concerning revenues, costs, profit margins . . . for the PS and JDE product lines . . . ." *Id.,* Ex. 6, pp. 14:11-15:18. In September

1  2008, Plaintiffs presented Ms. Ivgen Guner, who is responsible for corporate financial planning
2  and analysis.   REDACTED

[lines 3–23 REDACTED]

24  *Id.*, pp. 72:2-73:6.  Other of Plaintiffs' witnesses, including its President (Safra Catz) and its
25  Corporate Controller (Corey West) also testified   REDACTED
26       *Id.*, Ex. 7, pp. 179:15-180:1; Ex. 8, pp. 69:10-70:6.

### 3. Oracle's CEO and Worldwide Head of Support Contradict Other Witnesses.

In a remarkable turn of events – after many months of witnesses proclaiming that it is impossible to measure Oracle's profitability by product line – two of Oracle's most senior officers testified REDACTED

### 4. Defendants' Attempt to Gain Access to Plaintiffs' General Ledger.

Throughout all of this misdirection, extending back to June 2008, Defendants also sought production of Oracle's "general ledger." McDonell Decl., Ex. 4, p. 3. There is no dispute among the parties that the general ledger is company's basic, detailed underlying financial record from which all financial statements and reports are ultimately derived. *See, .e.g., id.*, Ex. 12. pp., 48:13-51:4.

1    In order to reduce the burden on Plaintiffs, Defendants suggested that, if Plaintiffs would
2  produce the Oracle "chart of accounts" (essentially an index to the general ledger),[7] then
3  Defendants would identify the specific accounts for which it needs the general ledger
4  information.  During the discussion of this issue at the January 2009 Discovery Conference, the
5  Court indicated that it would "err on the side of giving [Defendants] what they think they need to
6  have their expert analyze the profits, not what Oracle thinks they need."  McDonell Decl., Ex. 13,
7  pp. 55:7-57:10.  After much haggling and threats of motions, on February 13, 2009 Plaintiffs
8  began producing certain chart of accounts information and purported to complete that production
9  by late March.  See McDonell Decl., Ex. 14.

10   REDACTED

11

12   .

13 Defendants nevertheless attempted to identify the relevant accounts to Plaintiffs and on April 29,
14 2009 provided Plaintiffs with a list of those accounts.  See McDonell Decl., Ex. 15.  In response,
15 on May 4, 2009 Plaintiffs claimed that Defendants had identified the wrong accounts and that it
16 would be too burdensome to produce the requested general ledger information and that it would
17 not do so.  See Id. .

18    Initially Plaintiffs committed that they would work with Defendants in informal
19 discussions to attempt to narrow the request for general ledger information.  See id., Ex. 2, pp. 1-
20 2. Just prior to the filing of this motion, Plaintiffs withdrew that offer and insisted that any
21 further information about Plaintiffs' general ledger would have to be obtained through deposition.
22 See id.

23    **5.    Defendants' Targeted Search No. 3.**
24   In yet another effort to get to profit information, on May 20, 2009 Defendants served their
25 Targeted Search Request No. 3, which seeks the following:

26   For each Plaintiff entity, for the period January 1, 2002 through October 31, 2008,
27   documents sufficient to show by month, quarter and year the revenue (including

---

[7] See McDonell Decl., Ex. 8, p. 70:15-19 ("a chart of accounts is kind of an index to the
28  accounts that exist in the general ledger").

1
2
3
4

but not limited to license royalty payments), expenses (including but not limited to research and development costs) and net income to the Plaintiff entity resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards software and/or services to customers on Defendant TomorrowNow, Inc.'s Supplemental Exhibit 1 to Its First Sets Of Requests For Production and Interrogatories to Plaintiffs.

5 McDonell Decl., Ex. 16, p. 10:4-11.  In response, conditioned on the resolution of certain as yet

6 unresolved objections about the scope of "Targeted Search" discovery, Plaintiffs stated that

7 "Oracle will continue to investigate whether and how it can produce some or all of the many

8 requested financial reports and the burdens of doing so . . . ."  *Id*, p. 13:22-23.  As of this writing,

9 Plaintiffs claim to be investigating whether they can provide this information and have promised

10 an update by July 17, 2009.  McDonell Decl., ¶ 1, p. 3.  Defendants are concerned that they have

11 waited too long and been disappointed too often and therefore bring this motion for an order

12 requiring Plaintiffs to produce the requested information.

13 **6.  The Rule 30(b)(6) Deposition of Oracle International Corporation.**

14 In yet another attempt to determine the profitability of the Plaintiff entities in connection

15 with the Registered Works, Defendants noticed a Rule 30(b)(6) deposition of OIC regarding the

16 royalty payments received by OIC in connection with the alleged Registered Works and the costs

17 allocated to OIC pursuant to related "Cost Sharing Agreements."  *See id.*, Ex. 17, pp. 3:13-4:19.

18 On April 14, 2009, OIC produced Ms. Ann Kishore as its designated witness. REDACTED

19
20
21
22
23
24
25
26
27
28



REDACTED

Plaintiffs have produced none of this information in discovery.

Thus after all of this effort, Plaintiffs have produced most of their contracts with the former TN customers and certain customer-specific financial reports that purport to detail the revenues Oracle generated from those customers. Plaintiffs have also produced certain high level public financial reports that purport to show incomplete and unreliable profit margin information for Oracle Corporation as a whole. To the best of Defendants' knowledge, none of the Plaintiffs have produced any financial statements or profitability information that reveals the profits they would have earned on sales of support for the Registered Works.

## III. ARGUMENT.

### A. The Discovery Standard.

The scope of discovery under the Federal Rules and in the Northern District of California is liberal. *See* Fed. R. Civ. P. 26(b)(1); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) ("Relevancy, for the purposes of discovery, is defined broadly . . .[and is] liberally construed to permit the discovery of information which ultimately may not be admissible at trial."). Because the information Defendants seek is relevant to their defenses, Plaintiffs have a

1  "heavy burden" to show why they refuse to provide it.  *See Blankenship v. Hearst Corp.*, 519

2  F.2d 418, 429 (9th Cir. 1975) (Party must "carry a heavy burden of showing why discovery was

3  denied").  Plaintiffs cannot make this showing as to the discovery sought by this motion.

4      Under Rule 30(b)(6), OIC must produce one or more witnesses prepared to testify about

5  matters "known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  OIC has

6  an affirmative duty to educate its witnesses so that they are prepared to fully answer the questions

7  posed at the deposition.  *See Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201

8  F.R.D. 33, 37 (D. Mass. 2001) (a corporation must prepare its Rule 30(b)(6) witnesses "so that

9  they may give complete, knowledgeable, and binding answers on behalf of the corporation")

10 (internal citations omitted).  To discharge this duty to prepare, OIC's corporate witness must

11 review all matters known or reasonably available to the organization, "whether from documents,

12 past employees, or other sources."  *Calzaturficio*, 201 F.R.D. at 36-37 (internal citations omitted).

13 If it becomes apparent that OIC's corporate designee is unable to adequately respond to the

14 noticed topics, OIC has a duty to substitute the designated deponent with a knowledgeable one.

15 *See Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 23 (D.D.C. 2006) (finding that Rule 30(b)(6)

16 deposition witness was inadequately prepared because she had no specific knowledge of noticed

17 topics and that organization was required to provide an alternative witness).

18     **B.**    **Oracle Has Frustrated Defendants' Efforts To Obtain Lost Profits Discovery.**

19     If Plaintiffs are going to pursue a lost profits theory of damages, they must make available

20 the underlying records from which Defendants can attempt to determine their actual profit

21 margins for the relevant product lines.  Discovery in not intended to be a game of hide the ball.

22 Discovery is not intended to be a game of hide the ball.  Too much time and effort has been

23 devoted to this issue and there is not enough time left in the discovery schedule for more delays.

24     **C.**    **Plaintiffs Should Be Ordered To Produce The Requested Discovery.**

25         **1.**    **Discovery of Plaintiffs' General Ledgers is Necessary in Order to Evaluate any Claim of Lost Profits.**

26

27     There is no dispute that the general ledgers are the basic financial documents from which

28 all other financial reports are derived.  REDACTED

1 REDACTED

2

3

4

5 Rather, Plaintiffs' principle objection is one of burden.

6 Given the stakes in this case and Plaintiffs' claims of hundreds of millions of dollars in damages,

7 if not more, Plaintiffs must either (1) produce the general ledgers, or (2) prove with evidence why

8 they cannot and offer a meaningful substitute. To date, they have done neither.

9     **2.    Plaintiffs Should be Ordered to Produce Reports showing Plaintiffs' Profitability of its PeopleSoft, J. D. Edwards and Siebel Product Lines.**

10

11 Plaintiffs should be ordered to produce all Product Line Profitability reports and the

12 underlying source documents that show how the reports are constructed. In recent meet and

confer discussions, Plaintiffs claim that they cannot be located and may not exist. REDACTED

13

14

15

16

17

18

19

20

21

22

23

24

25 This testimony is too specific and concrete to be glossed over lightly. If these reports

26 existed and have been destroyed, that information needs to be developed. Plaintiffs should be

27

28

ordered to produce all product line profitability reports for the relevant product lines or to provide a detailed declaration explaining the circumstances of their inability to do so.

### 3. Plaintiffs Should be Ordered to Produce Detailed Profit & Loss Statements for Each Plaintiff.

As discussed above, Plaintiffs have produced no financial information that is specific to the actual plaintiff entities, REDACTED. Plaintiffs should be ordered to produce detailed profit and loss statements for the relevant discovery period of January 1, 2002 through October 31, 2008. These reports should be produced on a monthly, quarterly and yearly basis. The level of detail should be sufficient to show the account entries for each account that makes up a line item on the profit and loss statement.

### 4. Plaintiffs Should be Ordered to Provide a Complete Response to Defendants Targeted Search Request No. 3.

Defendants' Targeted Search Request No. 3 is related to the request for Plaintiffs' financial statements, but seeks more detail in one important respect. The Targeted Search Request seeks financial information "resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards software and/or services to customers" of TN. McDonell Decl., Ex. 16, p. 10:5-11. It is thus focused on Plaintiffs' alleged lost profits from the actual customers of TN. If Plaintiffs cannot provide this information, then it is difficult to understand how they will meet their burden of proof on damages. Plaintiffs should be ordered to (1) provide the requested information, or (2) provide a detailed explanation why they cannot be provided and offer an adequate substitute.

### 5. OIC Should be Ordered to Produce a Witness to Provide Supplemental Rule (30)(b)(6) Testimony Regarding the Royalty Payments Received by or Due to OIC in Connection with the Alleged Registered Works and the Related Cost Sharing Agreements.

OIC did not meet its obligation under Rule 30(b)(6) to adequately prepare its Rule 30(b)(6) witness, Ms. Kishore, on the noticed topics. Topic 1 covers "Payments, including but not limited to royalty payments, received by or to OIC in connection with the Registered Works." Ms. Kishore completely lacked knowledge on many of the subtopics and was unprepared to fully answer questions on others.



REDACTED

Subtopic 1(f) calls for testimony regarding other agreements relating to payments for OIC in connection with Registered Works, including the terms of such agreements and the policies and procedures for implementing them. REDACTED A properly prepared Rule 30(b)(6) witness should have been able to testify as to agreements between OIC and non-Oracle entities.

Subtopic 1(g) calls for testimony regarding payments made to OIC in connection with the Registered Works. REDACTED .

Ms. Kishore's lack of preparation and complete lack of knowledge regarding the Registered Works made her an unsuitable Rule 30(b)(6) designee. OIC must provide an alternative witness prepared to testify about the subtopics described above, based on information known or reasonably available to OIC.

Topic 2 covers "Cost Sharing arrangements among the participants of the Cost Sharing Agreements." REDACTED

1    REDACTED

3    OIC must provide an alternative witness prepared to testify about these subtopics, based
4    on information known or reasonably available to OIC.  OIC did not meet its obligation under
5    Rule 30(b)(6) to adequately prepare Ms. Kishore to testify as its corporate designee for Topic 3.
6    Topic 3 covers "Oracle's transfer pricing policies and procedures, including as they relate to the
7    Registered Works, and the types and locations of records reflecting such policies and
8    procedures."    REDACTED

18   In light of these deficiencies, OIC must designate better-prepared individuals on all three
19   noticed topics.

**IV.   CONCLUSION.**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and order Plaintiffs to produce immediately the requested documents and testimony or provide a detailed declarations establishing why the documents cannot be produced and offer specific alternative means of providing the information.

Dated: July 14, 2009                                JONES DAY

                                                    By: /s/ Jason McDonell
                                                        Jason McDonell

                                                    Attorneys for Defendants