Dockets.Justia.com

# Exhibit 15



"Alinder, Zachary J."      To   "'Elaine Wallace'" <ewallace@JonesDay.com>
<zachary.alinder@bingham.c
om>                cc   "Howard, Geoff" <geoff.howard@bingham.com>, "House,
Holly" <holly.house@bingham.com>, "Hann, Bree"
<bree.hann@bingham.com>, "Jason McDonell"

05/04/2009 05:16 PM        bcc

Subject   RE: Request for production of portions of Oracle's general
ledger

History:            ↱ This message has been forwarded.

Elaine,
We will need to meet and confer about your request for the production of 73 pages of line items from
Oracle's general ledger, in addition to general ledger accounts included within Intangible Assets, Goodwill
and Deferred Revenues (both current and non-current), before producing any further financial information.
First, the request is facially overbroad and unduly burdensome, seeks irrelevant information, and is vague
and ambiguous as to what information you seek or why. We have confirmed with Oracle internally that, as
framed, it would take months of multiple people working around the clock to respond, which we will not do.
Second, prior to responding to this request, and as discussed in Oracle's responses and objections to the
recently served "first" set of targeted searches, we need to meet and confer and come to agreement as to
how requests like these that are from non-custodial sources work within the parties' current discovery
limits and procedures and, in particular, how they relate to the targeted search process, including the
seven targeted searches that you served on 7/16/2008. Please let us know when you are available to
discuss these issues further.
Best regards,
Zac


**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Wednesday, April 29, 2009 10:03 AM
**To:** Alinder, Zachary J.; Hann, Bree; Howard, Geoff; House, Holly
**Cc:** Greg Lanier; Jason McDonell; Scott Cowan; Jane L Froyd; Joshua L Fuchs
**Subject:** Request for production of portions of Oracle's general ledger


Counsel,

Further to our meet and confer discussions regarding Oracle's general ledger, attached is a list of the
portions of the general ledger we need Oracle to produce. In addition to the attached list, and because the
consolidated charts of accounts provided by Oracle only covered income statement accounts, we also
request production of all the detailed general ledger accounts included in the following categories in the
balance sheets of Oracle's audited financial statements from 2005 through the present date:

- Intangible assets
- Goodwill
- Deferred revenues (both current and non-current)

We will follow up shortly regarding the PeopleSoft and JD Edwards general ledgers.


Elaine Wallace

JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected
by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system
without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


=============================================================
=============
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance
with IRS requirements, we inform you that any U.S. federal tax
advice contained in this communication is not intended or written
to be used, and cannot be used by any taxpayer, for the purpose
of avoiding any federal tax penalties.  Any legal advice
expressed in this message is being delivered to you solely for
your use in connection with the matters addressed herein and may
not be relied upon by any other person or entity or used for any
other purpose without our prior written consent.
The information in this e-mail (including attachments, if any) is
considered confidential and is intended only for the recipient(s)
listed above. Any review, use, disclosure, distribution or
copying of this e-mail is prohibited except by or on behalf of
the intended recipient. If you have received this email in error,
please notify me immediately by reply email, delete this email,
and do not disclose its contents to anyone. Thank you.
=============================================================
=============

# Exhibit 16

1  BINGHAM McCUTCHEN LLP
   DONN P. PICKETT (SBN  72257)
2  GEOFFREY M. HOWARD (SBN 157468)
   HOLLY A. HOUSE (SBN 136045)
3  ZACHARY J. ALINDER (SBN 209009)
   BREE HANN (SBN 215695)
4  Three Embarcadero Center
   San Francisco, CA  94111-4067
5  Telephone:  (415) 393-2000
   Facsimile:  (415) 393-2286
6  donn.pickett@bingham.com
   geoff.howard@bingham.com
7  holly.house@bingham.com
   zachary.alinder@bingham.com
8  bree.hann@bingham.com

9  DORIAN DALEY (SBN 129049)
   JENNIFER GLOSS (SBN 154227)
10 500 Oracle Parkway
11 M/S 5op7
   Redwood City, CA  94070
12 Telephone:  (650) 506-4846
   Facsimile:   (650) 506-7114
13 dorian.daley@oracle.com
   jennifer.gloss@oracle.com
14

15 Attorneys for Plaintiffs
   Oracle USA, Inc., Oracle International Corporation, and
16 Oracle EMEA Limited

17                   UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20

21 ORACLE USA, INC., *et al.*,          Case No. 07-CV-1658 PJH (EDL)

22          Plaintiffs,               **PLAINTIFFS' SUPPLEMENTAL
                                      RESPONSES AND OBJECTIONS TO
23      v.                            DEFENDANTS' "SECOND" AND
                                      "THIRD" TARGETED SEARCH
24 SAP AG, *et al.*,                  REQUESTS**

25          Defendants.

26

27

28

PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

| | | |
|---|---|---|
| 1 | **PROPOUNDING PARTY:** | Defendants |
| 2 | **RESPONDING PARTY:** | Plaintiffs |
| 3 | **SET NUMBER:** | "Two" and "Three" |

4      Pursuant to the Parties' agreements and the August 29, 2008 Order regarding

5  targeted searches, Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle

6  EMEA Limited (collectively, "Oracle") supplement their initial May 27, 2009 response and

7  objections to the "Second" and "Third" Targeted Search Requests by Defendants

8  TomorrowNow, Inc., SAP America, Inc., and SAP AG (collectively, "Defendants" and together

9  with Oracle, the "Parties") as follows:

10                          **GENERAL OBJECTIONS**

11      1.      Oracle reiterates its objections to the Request as being labeled or treated as

12  Defendants' "Second" and "Third" Targeted Search Request.  Oracle and Defendants have

13  already met and conferred as to whether Defendants have already exhausted their targeted (i.e.,

14  non-custodial) search opportunities.  At Defendants' request, Oracle has collected, reviewed, and

15  produced and is continuing to collect, review and produce data in response to well over the ten

16  Court-allotted targeted (*i.e.* non-custodial) searches.  These include, but are not limited to:

17  1) Customer contracts, purchase orders, invoices  and related correspondence located in customer

18  files; 2) Financial reports generally; 3) Customer-specific financial reports (the two analytics

19  reports and the OKI3 reports); 4) Board packages and associated acquisition materials; 5) Inter-

20  company Agreements; 6) Customer Connection Databases; 7) Copies of all software Oracle

21  claims Defendants' infringed; 8) Release Notes; 9) Price Lists; 10) Technical Support Policies;

22  11) CedarCrestone and other Partner-related Documents; 12) PeopleSoft Legal Database; 13)

23  Organizational Charts; 14) Copyright Documents; 15) Form Employment Agreements that relate

24  to copyright ownership; 16) At Risk Reports; 17) Charts of Accounts; 18) a massive group email

25  account, OSSInfo; and 19) a large group online document repository, OFO.  Oracle has also

26  collected, reviewed, and produced and is continuing to collect, review and produce data in

27  response to Defendants' first seven prior targeted search Requests (some of which overlap in

28  certain respects with the above), served by counsel for Defendants, Elaine Wallace, on July 16,

1   2008. Along with any collection and production Oracle makes in response to Defendants'

2   purported "first" targeted search Request, served on April 20, 2009, all of these efforts can and

3   should count towards the 10 targeted searches allocated to each party. Though, as set forth

4   below, Oracle is undertaking to locate and produce reasonably responsive information, Oracle

5   will provide no responsive information to these "Second" and "Third" Targeted Search Requests

6   until the Parties have agreed on whether and how many targeted searches (if any) Defendants

7   have remaining.

8           2.      Even if Defendants were allowed these additional targeted searches,

9   Oracle reiterates its objection to these Requests because they are not "narrow searches by topic"

10  as the parties agreed they would be and as the Court ordered on August 29, 2008. The August

11  29, 2008 Order states "[t]he Parties may Request from the other side up to 10 targeted searches,

12  *i.e.,* narrow searches by topic where document production would come from centralized sources

13  and/or from those persons most likely to have responsive documents." Oracle has been and

14  remains willing to meet and confer with Defendants in an effort to reach an agreement whereby

15  Defendants will amend the form and scope of Defendants' "Second" and "Third" Targeted

16  Search Requests in order to comply with the parties' previous agreements and the Court's August

17  29, 2008 Order.

18          3.      Oracle reiterates its further objection to the Requests to the extent they are

19  vague, overbroad, oppressive, harassing and unduly burdensome.

20          4.      Oracle reiterates its objection to the Requests because they are compound,

21  contain numerous subparts and, if properly propounded and individually counted, the Requests

22  would constitute more than two targeted search Requests.

23          5.      Again, as with all of Defendants' other discovery Requests, Oracle's

24  reasonable inquiry and related response to these discovery Requests, if any, shall be limited in a

25  manner consistent with the Court's orders and the Parties' agreements that provide limits on the

26  Parties' discovery obligations in this case. Oracle reiterates its objections to the Requests to the

27  extent they can be interpreted to require Oracle to make any further search or production beyond

28  what the parties have agreed and the Court has ordered or with the Court's guidance against seeking

1  unreasonably demanding, expensive, duplicative or marginally relevant discovery, because such an

2  interpretation of the Requests would make them overbroad and unduly burdensome.

3        6.     Any response by Oracle herein or in the future indicating that it will search

4  for and, if reasonably available, produce documents is not a confirmation that such documents exist

5  or are in Oracle's possession, custody, or control.  Such response indicates only that Oracle, subject

6  to its objections, will search for such documents to the extent that they do exist and are in Oracle's

7  possession, custody or control and then evaluate the difficulty, expense, duplicativeness and

8  relevance of production.  Based on that evaluation, Oracle may need to further meet and confer with

9  Defendants about limiting the scope of production and/or cost shifting.

10        7.     Oracle reiterates its objections to Defendants' instructions to the extent that

11  those instructions seek to require Oracle to produce documents in a form other than that in which

12  those documents are maintained in the ordinary course of business.  Subject to and without waiving

13  its objections, if Oracle produces, it will produce relevant, responsive non-privileged documents as

14  they are typically maintained, subject to the Parties' further meet and confer and the Parties'

15  agreement regarding mechanics of production.

16        8.     Oracle again objects to the Requests to the extent they seek to require Oracle

17  to search for, review, or produce inaccessible information, data, or other materials.  Oracle will not

18  search for, review, or produce inaccessible information, data, or other materials.

19        9.     Oracle reiterates its objections to each Request, definition, and instruction to

20  the extent they seek to impose upon Oracle duties and/or responsibilities greater than those imposed

21  by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this

22  Court, or any stipulation or agreement of the parties.

23        10.     Oracle again further objects to the Requests to the extent they seek the

24  production of documents and/or things that are not relevant to any claim or defense in this action, or

25  reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or

26  defense. under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

27        11.     Oracle also again objects to the Requests to the extent they seek documents

28  that are protected from disclosure by any applicable privilege, protection, or immunity, including but

1   not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded

2   non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise

3   protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence,

4   or relevant statutory or case law.  Should any production of any such privileged documents by Oracle

5   occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for

6   objecting to discovery with respect to such documents or any other documents; (c) Oracle's right to

7   claw any such document back; or (d) Oracle's right to object during this litigation or otherwise to the

8   use of any such document.  Oracle will log such privileged information in accordance with the

9   Parties' agreements.

10           12.     Insofar as Oracle and Defendants work out their differences about how many

11   Targeted Requests are covered by these Requests and how many (if any) additional targeted requests

12   are available to Defendants and Oracle then agrees to produce in response to this Request, Oracle

13   will produce its confidential and proprietary information only under the Agreed Protective Order

14   entered in this case, which permits designating such documents, depending on their content, as

15   CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION -

16   ATTORNEYS' EYES ONLY.

17           13.     Again, Oracle's response to Defendants' Requests does not constitute, and

18   shall not be construed as, an admission or acknowledgement that the information sought is within the

19   proper scope of discovery or admissible at trial, or that any non-privileged documents responsive to a

20   particular Request may exist.

21           14.     Oracle's response to Defendants' Requests is made without in any way

22   waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality,

23   privilege or admissibility, to the extent that any documents produced in response hereto are ever

24   attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the

25   hearing of, this action or any other action, and (b) the right to object on any grounds to any other

26   discovery Requests involving or relating to the same or similar subject matter of Defendants'

27   Requests.

28

Case No. 07-CV-1658 PJH (EDL)
PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1             15.      Oracle objects to the time period for these Requests, which purports to be

2   January 1, 2002 through October 31, 2008, as overbroad and unduly burdensome to the extent

3   that it imposes a burden or obligations different from or additional to the agreement the parties

4   have reached regarding production of information before 2004 and after the filing of the

5   litigation.

6                                    **TARGETED SEARCH REQUESTS**

7   **TARGETED SEARCH REQUEST NO. 2:**

8             Documents sufficient to show support contracts available to renew and

9   cancellations and/or non-renewals between January 1, 2002 and October 31, 2008 by customers

10   who received support services from Oracle for PeopleSoft and JD Edwards lines of products.

11             Responsive documents may be contained in, or available through, the

12   "management portal" as described by Rick Cummins. *See, e.g.*, Deposition of Rick Cummins,

13   April 21-22, 2009 ("Cummins Dep.") at p. 69.[1] They may also be contained in, or available

14   through, the CI database, as described by Rick Cummins. Cummins Dep. at p. 302-03.  While

15   this request seeks reports of all cancellations between January 1, 2002 and October 31, 2008 by

16   customers who received support services from Oracle for the PeopleSoft and JD Edwards

17   products at issue in this case, an exemplar, generated for PeopleSoft products in the third quarter

18   of fiscal year 2007, is Defendants' Exhibit 293.  Additionally, this request seeks reports that

19   contain as many fields as are available to be reported in a cancellation report, which would be at

20   minimum the 15 fields in Defendants' Exhibit 293.[2]

21   **SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 2:**

22             Oracle incorporates by reference as if fully set forth herein in response to this

23   Request, each of the fifteen General Objections above, as well as each of Oracle's objections and

24   ―――――――――――――――

25   [1] After being asked if the customer cancellation report had a specific name, Mr. Cummins
responded, "Not that I'm aware of. On the management portal it just says cancellations."

26   Cummins Dep. at p. 69.
[2] *I.e.*, "Contract number," "Organization name," "Sales rep," "SSR," "Director," "Manager,"

27   "Customer," "Contract Status Code," "QTR," "Contract Start date," "Contract End date,"
"Constant Dollar Product Value," "FY-06 Value," "Date cancelled," and "State."

28

PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1    responses to each of Defendants' Interrogatories and Document Requests that relate to this

2    Request.  Oracle is not, by responding to this Request, waiving any of its objections to any of

3    Defendants' Interrogatories and Document Requests.

4              Oracle further objects to the Request on the grounds that numerous terms and

5    phrases throughout this Request are vague and ambiguous, and that, as a whole, the Request is

6    unintelligible.  For example, the phrases "support contract," "available to renew," and "non-

7    renewals" lack sufficient specificity and are therefore overly broad and unduly burdensome.

8              Oracle also objects to this Request because it is compound and not a "narrow

9    search by topic."  Defendants' Request is improper because it is a combination of multiple

10   targeted search Requests, requiring a search through multiple sources of information and

11   therefore cannot be considered as one Request or as a "targeted" search Request.

12             Oracle also objects to Defendants' attempt to conduct duplicative discovery to the

13   extent that this Request seeks documents, data, or other information that Oracle has already

14   produced in this case.  This objection includes, but is not limited to, an objection to any attempt

15   by Defendants to require Oracle to segregate or otherwise separately identify any documents,

16   data, or other information contained within any document production that Oracle has made or

17   will make in this case.  Oracle objects to the extent that information responsive to this targeted

18   search Request has been or will be produced in the ordinary course of the custodian-based

19   production in this case by Oracle.  Any attempt by Defendants to seek such duplicative discovery

20   is overbroad and harassing.

21             Oracle also objects to the Request to the extent it imposes a burden or obligation

22   to which the parties have not yet agreed by requesting Oracle to produce documents for the

23   January 1, 2002 through October 31, 2008 time period.  The Parties have agreed to expand the

24   discovery timeline for limited issues, and to the extent Defendants' Request for documents

25   responsive to this targeted search Request does not fit within the subject matters agreed upon by

26   parties for expanded discovery, Oracle does not intend to produce those documents beyond the

27   agreed-upon discovery timeline.

28

Case No. 07-CV-1658 PJH (EDL)
PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1    Oracle also objects to the Request to the extent it seeks to require Oracle to search

2    for, review, or produce data that is not reasonably accessible, such as legacy customer data,

3    under Rule 26 of the Federal Rules of Civil Procedure.

4    Oracle also objects to the Request to the extent it seeks to unduly burden Oracle with

5    a search for, review of, or production of data for thousands of customers and contracts in a manner

6    and/or form that would impose upon Oracle duties and/or responsibilities greater than those imposed

7    by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders or

8    guidance of this Court or any stipulation or agreement of the parties.

9    Subject to and without waiving its specific and general objections, Oracle's *initial*

10    response to this Request is as follows:

11    Oracle seeks immediate confirmation from Defendants as to whether it concedes

12    this is not their "Second" Targeted Search Request.

13    While not verifying the veracity of Defendants' allegations, Defendants allege

14    documents sought in its Request - "documents sufficient to show support contracts available to

15    renew and cancellations and/or non-renewals" for *every* Oracle customer who has "received

16    support services from Oracle for the PeopleSoft and JD Edwards products at issue in this case"

17    over an almost seven year period - may be contained in, or available through, two different

18    possible sources of data (the "management portal" and C1 database) and should include, but is

19    not limited to, at least 15 fields of data ("Contract number," "Organization name," "Sales rep,"

20    "SSR," "Director," "Manager," "Customer," "Contract Status Code," "QTR," "Contract Start

21    date," "Contract End date," "Constant Dollar Product Value," "FY-06 Value," "Date cancelled,"

22    and "State").

23    Cancellation reports containing all the fields Defendants referenced in this

24    Request do not exist for all customers who received support services from Oracle for the

25    PeopleSoft and JD Edwards products at issue in this case; and/or do not exist for the entire

26    period of January 1, 2002 through October 31, 2008; and/or do not exist for all relevant product

27    lines; and some are duplicative of what's been produced or are over-inclusive.  In fact, the report

28    Defendants point to as an example of the reports they would like to see is a customized report

Case No. 07-CV-1658 PJH (EDL)
PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1    from a system not referenced by Defendants and may not be reproducible.  Moreover, the means

2    and measures for tracking cancellation data have changed over time.  As Defendants are aware,

3    JD Edwards was acquired by PeopleSoft and then PeopleSoft was acquired by Oracle and each

4    company had their own historic means of tracking cancellations.  Some historic customer data

5    was not migrated over by Oracle after its acquisition of PeopleSoft.

6            Because no single database contains all the requested information, to the extent it

7    was tracked and exists, Defendants' request is not appropriate to a targeted search.  There is no

8    single repository or custodian that would have all such analyses over this lengthy period.

9    Moreover, cancellation reports have already been produced through a variety of documents and

10    will continue to be produced in the ordinary course of the custodian-based production.  Search

11    for these reports specifically is not only duplicative but unnecessarily burdensome on Oracle.

12    Given that these reports have already been produced and will continue to be produced, Oracle

13    directs Defendants to look for them in Oracle's production (*e.g.*, ORCL00236146,

14    ORCL00240845, ORCL00131099).

15            Thus, Oracle does not agree or concede that obtaining the reports Defendants

16    reference is the appropriate, best or most cost-effective means to secure cancellation data or that

17    such reports are relevant or likely to lead to the discovery of admissible evidence.  Indeed, the

18    irrelevant details sought by Defendants' Request evidence the harassing nature of the Request.

19    For example, there is no need for Defendants to know the "Sales Rep," "Director," "Manager,"

20    or "State" for *every* renewal contract of *every* support customer for such a lengthy period,

21    especially for those customers that never left Oracle support.  Thus, Oracle will not produce

22    additional cancellation reports with such detail because such reports have already been produced

23    to the extent they contain information relevant to this case.  What Oracle will agree to produce is

24    a supplement of summary cancellation rate data to the extent such data has not already been

25    produced, and only for those periods where the data is reasonably accessible.  Oracle expects it

26    could produce any such reports three weeks after the Parties reach agreement on the number of

27    targeted searches already used by Defendants, the number of search requests in this Request, and

28    the number of Defendants' remaining targeted searches (if any).  Subject to resolution of whether

Case No. 07-CV-1658 PJH (EDL)

1    Defendants have any remaining targeted searches available and, if so, how many, Oracle will

2    also make its own investigation of whether and how it can produce some or all of the requested

3    information at the contract level from a centralized source and the burdens of doing so.

4    **TARGETED SEARCH REQUEST NO. 3:**

5            For each Plaintiff entity, for the period January 1, 2002 through October 31, 2008,

6    documents sufficient to show by month, quarter and year the revenues (including but not limited

7    to license royalty payments), expenses (including but not limited to research and development

8    costs) and net income to the Plaintiff entity resulting from sales by any Oracle entity of

9    PeopleSoft and/or JD Edwards software and/or services to customers on Defendant

10    TomorrowNow, Inc.'s Supplemental Exhibit 1 to Its First Sets Of Requests For Production and

11    Interrogatories to Plaintiffs.

12            Responsive documents may be contained in, or available through, the Oracle

13    Financial Analyzer and GIFTS databases or located on a shared drive within Oracle's tax

14    department. *See, e.g.*, Deposition of Uyen Ngoc Ann Kishore, April 14, 2009 ("Kishore Dep.")

15    at p. 116 ("I am able to pull a report that has expenses incurred in various lines of business");

16    Kishore Dep. at p. 122 ("we have system called Oracle Financial Analyzer..."); *id.* at p. 132 ("it's

17    on a shared drive...[with] tax files from the tax department."); *id.* at p. 183 - 184 ("Our charts of

18    accounts...we do have accounts relating to sublicense fee payments..." that can be generated from

19    Oracle Financial Analyzer); *id* at p. 185 ("There's another system called GIFTS..."); the P&L;

20    "chart of accounts;" "line of business;" balance sheets; research and development costs; royalty

21    payment reports generated from Oracle Financial Analyzer (*see, e.g.*, Kishore Dep. at p. 116) and

22    GIFTS databases (*id* at p. 185) or located on a shared drive within Oracle's tax department (*id.* at

23    p. 132); and the general ledgers of the Plaintiff entities.

24    **SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

25            Oracle incorporates by reference as if fully set forth herein in response to this

26    Request, each of the fifteen General Objections above, as well as each of Oracle's objections and

27    responses to each of Defendants' Interrogatories and Document Requests that relate to this

28

Case No. 07-CV-1658 PJH (EDL)

PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1  Request.  Oracle is not, by responding to this Request, waiving any of its objections to any of

2  Defendants' Interrogatories and Document Requests.

3           Oracle further objects to the Request on the grounds that numerous terms and

4  phrases throughout this Request are vague and ambiguous.  For example, the phrases "license

5  royalty payments," "research and development costs," and "net income" lack sufficient

6  specificity and are therefore overly broad and unduly burdensome.

7           Oracle objects to this Request because it is compound and not a "narrow search

8  by topic."  Defendants' Request is improper because it is a combination of multiple targeted

9  search Requests, requiring a search through multiple sources of information and therefore cannot

10  be considered as one Request or as a "targeted" search Request.

11           Oracle objects to the use of the phrase "any Oracle entity" on the grounds that it

12  makes the Request vague, overbroad, and unduly burdensome and to the extent that the

13  construction of the phrase is intended to require information that is neither relevant nor likely to

14  lead to the discovery of admissible evidence.

15           Oracle objects to Defendants' attempt to conduct duplicative discovery to the

16  extent that this Request seeks documents, data, or other information that Oracle has already

17  produced in this case.  This objection includes, but is not limited to, an objection to any attempt

18  by Defendants to require Oracle to segregate or otherwise separately identify any documents,

19  data, or other information contained within any document production that Oracle has made or

20  will make in this case.  Oracle objects to the extent that information responsive to this targeted

21  search Request has been or will be produced in the ordinary course of the custodian-based

22  production in this case by Oracle.  Any attempt by Defendants to seek such duplicative discovery

23  is overbroad and harassing.

24           Oracle objects to the Request to the extent it imposes a burden or obligation to

25  which the parties have not yet agreed by Requesting Oracle to produce documents for the

26  January 1, 2002 through October 31, 2008 time period.  The Parties have agreed to expand the

27  discovery timeline for limited issues, and to the extent Defendants' Request for documents

28  responsive to this targeted search Request does not fit within the subject matters agreed upon by

Case No. 07-CV-1658 PJH (EDL)

PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1    parties for expanded discovery, Oracle does not intend to produce those documents beyond the

2    agreed-upon discovery timeline.

3            Oracle objects to the Request to the extent it seeks to require Oracle to search for,

4    review, or produce data that is not reasonable accessible, such as legacy data, under Rule 26 of

5    the Federal Rules of Civil Procedure.

6            Oracle objects to the Request to the extent it seeks to unduly burden Oracle with a

7    search for, review of, or production of potentially hundreds of reports in a manner and/or form that

8    would impose upon Oracle duties and/or responsibilities greater than those imposed by the Federal

9    Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this court or any

10   stipulation or agreement of the parties.

11           Subject to and without waiving its specific and general objections, Oracle's *initial*

12   response to this Request is as follows:

13           Oracle seeks immediate confirmation from Defendants as to whether it concedes

14   this is not their "Third" Targeted Search Request.

15           While not verifying the veracity of Defendants allegations, Defendants allege in

16   their Request that the information they are seeking may be contained in, or available through, at

17   least four different possible sources of data (OFA, GIFTs, the general ledger, and a shared drive

18   within Oracle's tax department) and can include, but is not limited to, at least four different types

19   of reports *from each source* (line of business expense reports, royalty payment reports, balance

20   sheets,  and P&L statements).

21           Because no single database contains all the requested information, to the extent it

22   was tracked and exists, Defendants' request is not appropriate to a targeted search.  There is no

23   single repository or custodian that would have all such information over this lengthy period.

24   Oracle thus objects to such discovery to the extent Oracle cannot locate such information in

25   central repositories following a reasonably diligent search.  Moreover, this financial information

26   has already been produced through a variety of documents and will continue to be produced in

27   the ordinary course of the custodian-based production.  Search for these reports specifically is

28   not only duplicative but unnecessarily burdensome on Oracle.  Given that these reports have

                                              12

1   already been produced and will continue to be produced, Oracle directs Defendants to look for

2   them in Oracle's production (*e.g.*, ORCL00079380, ORCL00079343).

3           Additionally, as Defendants are well aware, the information Defendants seek with

4   this Request largely does not exist as requested.  Defendants have been repeatedly told through

5   previous deposition testimony that Oracle does not track expenses and net income by product line.

6   *See, e.g.* Depo. of Ivgen Guner as Oracle Corp.'s Rule 30(b)(6) designee at p. 73:24 -74:1 ("There is

7   no product profitability at Oracle.  We do not measure product profitability at Oracle.").  One

8   deponent's testimony about various existing pieces of reporting functions from various sources does

9   not mean that those pieces can somehow be combined into one report with the format and

10  presentation of Defendants' choice.  Defendants' Request in essence requires Oracle to attempt to

11  redesign its reporting and tracking systems in order to try to capture information that might not even

12  be available.  Oracle is not obligated to and will not engage in such an effort.  Moreover, the

13  financial information Defendants seek, to the extent it does exist, does not exist for the entire time

14  period of January 1, 2002 through October 31, 2008; and/or do not exist for all the relevant

15  product lines.

16          Thus, Oracle does not agree or concede that obtaining the reports Defendants

17  reference is the appropriate, best or most cost-effective means to secure financial information or

18  that such reports are relevant or likely to lead to the discovery of admissible evidence.  Oracle

19  has begun investigating the reporting functions available from Oracle Financial Analyzer and the

20  GIFTs database, and has thus far only confirmed the previous testimony that informed

21  Defendants that the information Defendants seek is not available with the requested detail.

22  However, Oracle will continue to investigate whether and how it can produce some or all of the

23  many requested financial reports and the burdens of doing so while respecting that those most

24  knowledgeable about Oracle's financial reporting functions are heavily impacted by Oracle's

25  May 31, 2008 fiscal year-end activities.  Upon completion of that investigation, Oracle will

26  produce responsive information only to the extent not previously produced, subject to the

27  objections outlined herein, and subject to resolution of whether Defendants have any remaining

28  targeted searches available and, if so, how many.

Case No. 07-CV-1658 PJH (EDL)

PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1    DATED: June 3, 2009                    BINGHAM McCUTCHEN LLP

2

3

4                                          By: _____
                                                     Zachary J. Alinder
5                                                  Attorneys for Plaintiffs
                                           Oracle USA, Inc., Oracle International
6                                          Corporation, and Oracle EMEA, Ltd.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                        Case No. 07-CV-1658 PJH (EDL)
PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND
"THIRD" TARGETED SEARCH REQUESTS

1        **PROOF OF SERVICE**

2        I am over eighteen years of age, not a party in this action, and employed in San

3 Francisco County, California at Three Embarcadero Center, San Francisco, California 94111-

4 4067. I am readily familiar with the practice of this office for collection and processing of

5 correspondence for mail and by email, and they are deposited and/or sent that same day in the

6 ordinary course of business.

7        Today I served the following documents:

8        **PLAINTIFFS' SUPPLEMENTAL RESPONSES AND**
**OBJECTIONS TO DEFENDANTS' "SECOND" AND**
9        **"THIRD" TARGETED SEARCH REQUESTS**

10     ☒    (VIA EMAIL) by transmitting via electronic mail document(s) in portable
document format (PDF) listed above on this date to the person(s) at the email
11            address(es) set forth below.

12
     ☒    (BY MAIL) by causing a true and correct copy of the above to be placed in the
13            United States Mail at San Francisco, California in sealed envelope(s) with postage
prepaid, addressed as set forth below. I am readily familiar with this law firm's
14            practice for collection and processing of correspondence for mailing with the
United States Postal Service. Correspondence is deposited with the United States
15            Postal Service the same day it is left for collection and processing in the ordinary
16            course of business.

17

18    Robert A. Mittelstaedt, Esq.       Tharan Gregory Lanier, Esq.
      Jason McDonell, Esq.           Jane L. Froyd, Esq.
      Elaine Wallace, Esq.            Jones Day
19    Jones Day                 1755 Embarcadero Road
      555 California Street          Palo Alto, CA 94303
20    26th Floor                 Tel: (650) 739-3939
      San Francisco, CA 94104
21    Tel: (415) 626.3939
                           tglanier@JonesDay.com
22    ramittelstaedt@JonesDay.com   jfroyd@JonesDay.com
      jmcdonell@JonesDay.com
23    ewallace@JonesDay.com

24
        I declare under penalty of perjury that this declaration was executed on June 3,
25 2009 at San Francisco, California.

26

27

28                                     Jamie Pack

15

# Exhibit 17

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:     (415) 626-3939
   Facsimile:     (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA  94303
   Telephone:     (650) 739-3939
10 Facsimile:     (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:     (832) 239-3939
15 Facsimile:     (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19                  UNITED STATES DISTRICT COURT

20                 NORTHERN DISTRICT OF CALIFORNIA

21                     SAN FRANCISCO DIVISION

22 ORACLE USA, INC., et al.,            Case No. 07-CV-1658 PJH (EDL)

23              Plaintiffs,             **DEFENDANTS' AMENDED SECOND
                                        NOTICE OF DEPOSITION OF
24        v.                            PLAINTIFF ORACLE
                                        INTERNATIONAL CORPORATION
25 SAP AG, et al.,                      PURSUANT TO FEDERAL RULE OF
                                        CIVIL PROCEDURE 30(b)(6)**
26              Defendants.

27

28



Kishore
Exhibit 244
4-14-09
Holly Thuman, CSR

SFI-601093v2

1       TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

3    Procedure, Defendants SAP AG, SAP America (together, "SAP"), and TomorrowNow, Inc.

4    ("TN") will take the deposition of Plaintiff Oracle International Corporation ("OIC"), on April 14,

5    2009, commencing at 9 a.m. at the law offices of Jones Day, 555 California Street, 26th Floor,

6    San Francisco, CA 94104.

7       The deposition will be recorded stenographically, using real time transcription, by a

8    certified court reporter, and by video and audio by a certified videographer.

9       OIC is hereby requested and required, pursuant to Federal Rule of Civil Procedure

10   30(b)(6), to designate and produce a witness or witnesses to testify on its behalf on the topics

11   described below.

12                        **DEFINITIONS AND INSTRUCTIONS**

13       For purposes of this Notice of Deposition, the following definitions shall apply, unless

14   otherwise indicated:

15       1.    "Complaint" means the Third Amended Complaint.

16       2.    "Cost Sharing Agreements" means the series of cost sharing and license

17   agreements, and amendments thereto, produced by Plaintiffs, an example of which can be found

18   at ORCL00182333-64.

19       3.    "Documents" shall be interpreted broadly and includes all forms of writings,

20   tangible things, and other documents contemplated by Federal Rule of Civil Procedure 34 and/or

21   Federal Rule of Evidence 1001.  This includes without limitation: writings; records; files;

22   correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail;

23   e-mail; telephone message records or logs; computer and network activity logs; data on hard

24   drives; backup data; data on removable computer storage media such as tapes, disks, and cards;

25   printouts; document image files; web pages; databases; spreadsheets; software; hardware; books;

26   ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries;

27   compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts;

28   digital or chemical process photographs; video, phonographic, tape, or digital recordings or

1   transcripts thereof; drafts; jottings; and notes.  Information that serves to identify, locate, or link

2   such material, such as file inventories, file folders, indices, and metadata, is also included in this

3   definition.

4        4.     "Plaintiffs" means OIC, Oracle USA, Inc. ("OUSA"), and Oracle EMEA Limited,

5   ("OEMEA"), their predecessors, and their successors.

6        5.     "Registered Work" means a work underlying a federal copyright registration

7   identified in the Complaint and any subsequent amendments to the Complaint.

8        6.     "You," "Your," or "OIC" means Plaintiff Oracle International Corporation, its

9   predecessors, and its successors.

10        7.     The applicable time period for each of the topics below is January 1, 2002 through

11   the present.

12   <u>**SCOPE OF TESTIMONY**</u>

13        1.     Payments, including but not limited to royalty payments, received by or due to

14   OIC in connection with the Registered Works.  Specifically:

15        (a) Identification of each source of such payments, including but not limited to

16   other Oracle entities, affiliates, and/or partners;

17        (b) With respect to royalty payments, royalty rates for license and/or support of

18   the Registered Works and how royalty payments are calculated;

19        (c) How OIC determines what royalty rates to set for the Registered Works.

20        (d) With respect to non-royalty payments, the types of non-royalty payments

21   received by OIC in connection with the Registered Works and how they are calculated;

22        (e) The policies and procedures for implementing the terms of the Cost Sharing

23   Agreements that relate to payments to OIC in connection with the Registered Works;

24        (f) Any other agreements relating to payments to OIC in connection with the

25   Registered Works, including the terms of such agreements and the policies and procedures for

26   implementing them;

27

28

1            (g) The types and locations of records reflecting payments made to, due to, or

2 received by OIC in connection with the Registered Works, including records required to be

3 maintained under the Cost Sharing Agreements.

4         2.     Cost sharing arrangements among the participants to the Cost Sharing Agreements.

5 Specifically:

6            (a) The types of costs that are allocated among the participants to the Cost Sharing

7 Agreements, including costs relating to the Registered Works;

8            (b) How costs are allocated among the participants, including costs relating to the

9 Registered Works.

10            (c) The policies and procedures for implementing the terms of the Cost Sharing

11 Agreements relating to allocation of costs;

12            (d) Any other agreements concerning allocation of costs relating to the Registered

13 Works, including the terms of such agreements and the policies and procedures for implementing

14 them;

15            (e) The types and locations of records reflecting allocation of costs relating to the

16 Registered Works, including records required to be maintained under the Cost Sharing

17 Agreements.

18        3. Oracle's transfer pricing policies and procedures, including as they relate to the

19 Registered Works, and the types and locations of records reflecting such policies and procedures.

20

21 Dated:  February 24, 2009                JONES DAY

22

23                               By:

24                                  Patrick Delahunty

25                Counsel for Defendants
               SAP AG, SAP AMERICA, INC., and

26                TOMORROWNOW, INC.

27

28

1

## PROOF OF SERVICE

2    I, Denise Harmon, declare:

3        I am a citizen of the United States and employed in San Francisco County, California.  I

4    am over the age of eighteen years and not a party to the within-entitled action.  My business

5    address is 555 California Street, 26th Floor, San Francisco, California 94101.  On February 24,

6    2009, I served a copy of the within document(s):

7        **DEFENDANTS' AMENDED SECOND NOTICE OF DEPOSITION
          OF PLAINTIFF ORACLE INTERNATIONAL CORPORATION**
8        **PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
          30(b)(6)**
9

10   ☒    by placing the document(s) listed above in a sealed envelope with postage thereon
          fully prepaid, in the United States mail at San Francisco, California addressed as
11        set forth below.

12   ☒    by transmitting via e-mail or electronic transmission the document(s) listed above
          to the person(s) at the e-mail address(es) set forth below.
13

14   BINGHAM McCUTCHEN LLP
     DONN P. PICKETT
     GEOFFREY M. HOWARD
15   HOLLY A. HOUSE
     ZACHARY J. ALINDER
16   BREE HANN
     Three Embarcadero Center
17   San Francisco, CA  94111-4067
     Telephone:    (415) 393-2000
18   Facsimile:    (415) 393-2286
     *donn.pickett@bingham.com*
19   *geoff.howard@bingham.com*
     *holly.house@bingham.com*
20   *zachary.alinder@bingham.com*
     *bree.hann@bingham.com*
21

22       I am readily familiar with the firm's practice of collection and processing correspondence

23   for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

24   day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

25   motion of the party served, service is presumed invalid if postal cancellation date or postage

     meter date is more than one day after date of deposit for mailing in affidavit.
26

27

28

SFI-601093v2

1        I declare that I am employed in the office of a member of the bar of this court at whose

2   direction the service was made.

3        Executed on February 24, 2009, at San Francisco, California.

4

5                               _Denise Horn_

6                                  Denise Harmon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 18

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

June 12, 2009

VIA E-MAIL

Zachary Alinder, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067

      Re:    Case No. 07-CV-1658; *Oracle USA, Inc., et al. v. SAP AG, et al.*;
               U. S. District Court, Northern District of California, San Francisco Division

Dear Zac:

I am writing to meet and confer about several discovery issues that have impeded Defendants' ability to evaluate Oracle's alleged lost profits relating to the customers for whom TomorrowNow provided support on PeopleSoft, J. D. Edwards and Siebel product lines.[1]

Oracle has alleged damages including "loss of profits."[2]  Defendants have diligently sought discovery of Oracle's profit margins for the relevant products lines in order to evaluate any claim of lost profits that Oracle may ultimately offer.  Indeed, from the *first* day discovery was permitted, Defendants have sought discovery of Oracle's profit margins for the products and services at issue in the case.  For example, our Request for Production of Documents No. 70 sought "[a]ll Documents relating to any alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint."  In response, Plaintiffs agreed to produce "[d]ocuments sufficient to show Oracle's revenues, costs, and profit margins for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems ...."

Unfortunately, we still have not received sufficient information to allow us to determine Oracle's profit margins on the relevant product lines.  In the early stages of the case, Oracle took the position that Oracle's contracts with the former TomorrowNow customers were sufficient to show the profits Oracle contends it would have made from those customers but for the activities of TomorrowNow.  That assertion proved to be incorrect for a variety of reasons, including the fact that many customer contract files are incomplete.

---

[1] Pursuant to the Stipulated Revised Case Management and Pretrial Order, Plaintiffs' discovery obligations have been extended to the Siebel product line, including "Siebel financial information." *Id.*, p. 6.

[2] *See, e.g.,* Oracle's Third Amended Complaint for Injunctive Relief, etc., ¶ 141.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Zachary Alinder, Esq.                                                          **JONES DAY**
June 12, 2009
Page 2

     Oracle also pointed to its publicly filed Annual Report and various internal quarterly reports as evidence of its profit margins.  While the Annual Report shows a profit margin for Oracle's support services (*e.g.*, Def. Dep. Ex. 31, p. 103), it is accompanied by a disclaimer that states that the reported margins "do not represent the actual margins."  *Id.*

REDACTED

     In further attempts to determine Oracle's purported lost profits on these product lines, we have sought production of Oracle's general ledger and have identified portions of its charts of accounts that may lead us to the appropriate general ledger information.  While Oracle has produced some chart of accounts information, it has refused to produce the general ledger information we requested on grounds of burden and citing the targeted search request procedure. *See, e.g.,* Email, Alinder to Wallace, *et al.*, 5/4/09.

     To make matters more difficult, Oracle has not provided discovery that would allow Defendants to determine the revenues or profits of the actual plaintiff entities in this case.  Thus, for example, we know that Oracle International Corporation ("OIC") is the only plaintiff entity with standing to sue for copyright infringement damages.  We also know from discovery that OIC does not license the alleged copyrighted works to customers, but rather licenses them to Oracle affiliates who pay a royalty to OIC.  Thus, any profits that OIC makes (or allegedly lost) on such transactions depends on the royalty revenues it receives from its affiliates based on the affiliates' sales to customers.

REDACTED

     As yet another attempt to get at Plaintiffs' revenues and profitability information, Defendants served their Targeted Search Request No. 3.  The request calls for the following:

     "For each Plaintiff entity, for the period January 1, 2002 through October 31, 2008, documents sufficient to show by month, quarter and year the revenues

- 2 -

Zachary Alinder, Esq.                                                        **JONES DAY**
June 12, 2009
Page 3

> (including but not limited to license royalty payments), expenses (including but
> not limited to research and development costs) and net income to the Plaintiff
> entity resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards
> software and/or services to customers on Defendant TomorrowNow, Inc.'s
> Supplemental Exhibit 1 to Its First Sets Of Requests For Production and
> Interrogatories to Plaintiffs."

Here again, we are simply trying to determine Oracle's revenues and profitability, if any, in
connection with the product lines at issue in Oracle's Complaint.  In response, in addition to
many objections, Oracle stated that "Oracle will continue to investigate whether and how it can
produce some or all of the many requested financial reports and the burdens of doing so …"
Plaintiffs' Supplemental Responses and Objections to Defendants "Second" and "Third"
Targeted Search Requests, p. 13.  To date, we have received no further response.

Finally, our pending Rule 30(b)(6) deposition notice to Oracle USA, Inc. contains a
number of topics that bear on Oracle's lost profit claims.  Oracle has objected to all of these
topics.

Following up on the suggestion in our recent telephone discussions, I suggest that we
schedule a call with, at a minimum, you, Nitin Jindal and me to discuss these issues and see if
there is a way we can break through these various roadblocks.  Please let me know if either
Tuesday or Wednesday of next week will work for you.

Thank you.

Very truly yours,

/s/ Jason McDonell

Jason McDonell

cc:   Holly House                                            VIA E-MAIL
      Bree Hann                                              VIA E-MAIL
      Donn Pickett                                           VIA E-MAIL
      Geoff Howard                                           VIA E-MAIL
      Robert A. Mittelstaedt                                 VIA E-MAIL
      Greg Lanier                                            VIA E-MAIL
      Scott Cowan                                            VIA E-MAIL
      Elaine Wallace                                         VIA E-MAIL
      Jane Froyd                                             VIA E-MAIL
      Joshua Fuchs                                           VIA E-MAIL

SFI-612445v1

# Exhibit 19

EXHIBIT FILED
UNDER SEAL