1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
10  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
11  Telephone:  (650) 506-4846
    Facsimile:  (650) 506-7114
12  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
13

14  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle International Corp., and Oracle
15  EMEA Ltd..

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                     SAN FRANCISCO DIVISION

19

| 20 ORACLE USA, INC., a Colorado corporation, ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE EMEA LIMITED, an Irish private limited company, | No. 07-CV-1568 PJH (EDL) |
|---|---|
| 22 | **ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 23    Plaintiffs, v. | |
| 24 SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive, Defendants. | Date:      August 19, 2009<br>Time:      9:00 a.m.<br>Courtroom: 5, 17th Floor<br>Judge:     Hon. Phyllis J. Hamilton |

27

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

Dockets.Justia.com

1

<u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3   I.      PRELIMINARY STATEMENT ................................................................................ 2

4   II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................... 4

5           A.      Oracle's First 44 Copyright Registrations Related To The Initial
                    Downloading Allegations ............................................................................ 4

6           B.      Oracle Then Learned That Defendants Also Infringed Certain Underlying
                    Software Applications And Promptly Amended Again ........................................ 5

7           C.      The Current List Of Registrations Reflects Incomplete And Inaccurate
                    Discovery Which Required Significant Time To Analyze ..................................... 7

8                   1.      Defendants provided incomplete and inadequate discovery
9                           responses ..................................................................................... 7

10                  2.      Defendants' production of software, and Oracle's analysis of it,
                            continues ....................................................................................... 8

11          D.      After Its Latest Productions And The Prior Liberal Amendment Deadline
                    Passed, Defendants Sought To Limit Oracle's Copyright Claims ...................... 10

12          E.      Oracle Discovered Defendants May Have Infringed Oracle's "Database"
                    Products .................................................................................................. 12

13   III.   THE COURT SHOULD PERMIT THE CONFORMING AMENDMENT TO
14          THE FIRST CLAIM FOR RELIEF ....................................................................... 14

            A.      The Applicable Standard Is Rule 15 And Oracle Satisfies It ........................... 14

15          B.      Oracle Also Satisfies Rule 16 Because Good Cause Exists .............................. 16

16                  1.      The amendments are based on newly discovered information ............... 18

17                  2.      Oracle has undertaken extensive discovery efforts and adapted to
                            new facts ..................................................................................... 19

18                  3.      Defendants acknowledge Oracle's diligence ..................................... 19

19                  4.      Any "delay" is simply the natural turnaround time for such a large
                            volume of discovery ...................................................................... 20

20   IV.    CONCLUSION ................................................................................................. 21

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4

*Chow v. Hirsch*,

5

    1999 WL 144873 (N.D. Cal. 1999) (Hamilton, J.) ......................................................... 12, 15

6

*DCD Programs, Ltd. v. Leighton*,

    833 F.2d 183 (9th Cir. 1987)............................................................................................. 14

7

*Forman v. Davis*,

8

    371 U.S. 178 (1962)......................................................................................................... 15

9

*Fru-Con Construction Corp. v. Sacramento Mun. Util. Dist.*,

10

    2006 WL 3733815 (E.D. Cal. 2006)............................................................................ 17, 18

11

*Launch, LLC v. PC Treasures, Inc.*,

    2006 WL 1142535 (N.D. Cal. 2006) (Hamilton, J.) .................................................. 17

12

*Trimble Navigation Ltd. v. RHS, Inc.*,

13

    2007 WL 2727164 (N.D. Cal. 2007) (Hamilton, J.) ................................................. 16, 17, 18

14

*Twisted Records, Inc. v. Rauhofer*,

    2005 WL 517328 (S.D.N.Y. 2005) ...................................................................................... 16

15

**FEDERAL STATUTES**

16

17 U.S.C. § 705 ...................................................................................................................... 12

17

**RULES**

18

Fed. R. Civ. P. 15 ............................................................................................................. passim

19

Fed. R. Civ. P. 16 ............................................................................................................. passim

20

**OTHER AUTHORITIES**

21

2 Melville Nimmer & David Nimmer, Nimmer on Copyright, § 7.16[B][2][c] at 7-175

22

    (2009) ................................................................................................................................. 11

23

24

25

26

27

28

1      **NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE THAT on August 19, 2009, at 9:00 a.m., or as soon

3   thereafter as the matter may be heard, in the United States District Court, Northern District of

4   California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, CA,

5   Courtroom 5, 17th Floor, before the Honorable Phyllis J. Hamilton, Plaintiffs Oracle USA, Inc.,

6   Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") will move

7   for an order pursuant to Federal Rule of Civil Procedure 15(a) or, alternatively, 16(b), permitting

8   Oracle to file a Fourth Amended Complaint.

9      The proposed amendments include all of the additional allegations to which the

10  Parties have stipulated, and which the Court has allowed Oracle to file per the June 11, 2009

11  Case Management Order.  It also contains conforming amendments sought by Oracle to which

12  Defendants have not stipulated.  Pursuant to the Court's direction at the May 27, 2009 Case

13  Management Conference, Oracle has submitted two alternative motions.  In this Motion, Oracle

14  seeks leave to file a Fourth Amended Complaint (attached as Exhibit A) to add additional

15  copyright registrations relating to Oracle's Siebel software product line (stipulated to by the

16  Parties), allegations regarding Defendants' post-litigation conduct (stipulated to by the Parties),

17  additional copyright registrations relating to Oracle's database technology software products (*not*

18  stipulated to by the Parties), and additional copyright registrations relating to Oracle's

19  PeopleSoft and JD Edwards product lines already at issue in the Third Amended Complaint (*not*

20  stipulated to by the Parties).  Oracle has concurrently filed a separate motion to amend that

21  attaches an alternative form of Fourth Amended Complaint which includes only the allegations

22  to which Defendants have stipulated.  Oracle respectfully requests that the Court rule on this

23  Motion first, since it includes all proposed amendments, stipulated and not stipulated, and, if

24  granted, would moot the concurrently-filed alternative motion.

25      This Motion is based on this Notice of Motion and Motion (including Exhibit A),

26  the attached Memorandum of Points and Authorities, the accompanying Declarations of Chad

27  Russell and Kevin Mandia, the pleadings on file in this action, the attached Proposed Order, and

28  on such other matters presented to the Court at the time of the hearing.

1

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2     **I.**     **PRELIMINARY STATEMENT**

3     Oracle seeks leave to file a Fourth Amended Complaint, in the form attached to

4 this Motion as Exhibit A.

5     The proposed amendments consist of four categories.

6     The first category consists of the amendments to which Defendants have

7 stipulated ("Stipulated Amendments").  The Parties discussed these amendments in detail with

8 the Court at the May 27, 2009 Case Management Conference.  Those amendments involve one

9 new party (Siebel Systems, Inc.), one new software product line (Siebel), and related additional

10 copyright registrations for the Siebel software that Oracle contends Defendants infringed.  The

11 Stipulated Amendments also include some additional allegations that Defendants continued

12 knowingly to infringe Oracle's software, for their own business reasons, for eighteen months

13 after Oracle filed this litigation.  For the Court's convenience, the Stipulated Amendments are in

14 blue type in Exhibit A (the disputed amendments are in red - see ¶¶ 15, 19, 105, 124, 144, 158).

15     The second category of proposed amendments consists of seven additional

16 copyright registrations related to Oracle's database technology software products ("Database

17 Amendments").  In February 2009, Oracle came across two documents that suggested

18 Defendants, in the course of supporting customers on Oracle's PeopleSoft and JD Edwards

19 software applications, also infringed Oracle's database software.  Oracle raised this issue

20 promptly with Defendants and initiated the process of identifying and obtaining the appropriate

21 copyright registrations.

22     The third category of proposed amendments consists of two additional copyright

23 registrations Oracle has obtained ("Knowledge Management Amendments").  One relates to the

24 PeopleSoft software line, and the other to the JD Edwards software line.  Both are for

25 "automated databases" that include thousands of "knowledge management" solutions –

26 documents, rather than software code – that SAP TN downloaded from Oracle's websites.  These

27 registrations are necessary to conform to documents included in the millions of download files

28 found on SAP TN computers which cannot reasonably be individually copyrighted.

1    The fourth category of proposed amendments consists of twenty additional

2  PeopleSoft copyright registrations that Defendants have recently put at issue through discovery

3  motion practice or that Oracle believes are relevant given recent productions and discovery

4  responses from Defendants ("PeopleSoft Amendments").  In addition, as the Court knows, and as

5  Defendants stipulated in connection with the May 27, 2009 Case Management Conference,

6  Defendants only recently have completed production of terabytes of computer code that Oracle

7  must now analyze.  Conceivably, though Defendants have yet to say so, their recent motion to

8  compel sought software related to these amendments in discovery because Defendants know

9  these recent productions implicate them.  Regardless, out of an abundance of caution, and to

10  ensure that the very serious industry issues in this case get resolved on the merits, rather than by

11  technical defenses in mid-discovery, Oracle wishes to add these now.

12    These conforming amendments (the Database, Knowledge Management, and

13  PeopleSoft Amendments) add twenty-nine total additional copyright registrations.  They add no

14  new claims for relief, no new parties, and involve materials that have existed on Defendants'

15  systems for years.  They are reasonable, if not expected and even routine, in a case that continues

16  to generate terabytes of code that requires complex analysis, and millions of recently-produced

17  documents.  Indeed, Defendants stipulated just over a month ago, in a joint motion to the Court,

18  that they had only just completed substantial portions of their production and that, "despite their

19  diligence, [the Parties'] positions regarding discovery needs in this case have changed since May

20  2008 and that an extension of the case schedule is needed and appropriate to further explore

21  various issues."  As a result of that agreement, discovery does not close until December, and trial

22  is set for November 2010.

23    Yet Defendants oppose this motion on two grounds.  First, they say the deadline

24  for liberal amendment has passed, on the theory that when this Court ordered a fact discovery

25  extension to December 2009, the deadline to amend the pleadings (previously set by the Court at

26  "no later than 90 days before [the] fact discovery cutoff") somehow did not carry forward as

27  well.  In other words, Defendants claim that the *old* pleading deadline should apply to the *new*

28  case schedule.  Oracle disagrees, but it should not matter.  Oracle also has good cause to amend

3

1   under Rule 16(b) even if the Court decides that the Rule 15(a) liberal amendment deadline has

2   passed.

3          Second, Defendants say that Oracle should have proposed these amendments

4   sooner, because they refer to materials Defendants' produced months ago.  To address this

5   argument, and in support of the good cause standard, Oracle explains below the timing, volume,

6   and complexity of Defendants' recent (and ongoing) productions.  Receipt of Defendants'

7   haystack did not put Oracle on notice of the needles in it.

8   **II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

9          A.    *Oracle's First 44 Copyright Registrations Related To The Initial*
10               *Downloading Allegations*

11         Oracle filed its original Complaint in March 22, 2007 based on an internal

12  investigation of unusually heavy download activity originating from internet addresses linked to

13  Defendants.  Complaint for Damages and Injunctive Relief, March 22, 2007, ¶¶ 3-10 (Docket

14  No. 1) ("Complaint").  The Complaint did not include copyright registrations or copyright claims

15  because Oracle had not yet completed the process of securing the relevant registrations.  Rather

16  than wait, Oracle filed its non-copyright claims because it wanted to stop Defendants' illegal

17  downloading as quickly as possible.

18         On June 1, 2007, by stipulation, Oracle filed its First Amended Complaint to

19  include copyright claims and registrations it had by then obtained relevant to the then alleged

20  downloading.  Amended Complaint for Damages and Injunctive Relief ("FAC"), June 1, 2007

21  (Docket No. 31), ¶¶ 83-88, 97-107.  Oracle made clear the preliminary nature of its analysis -

22  "The massive nature of the illicit downloads by SAP TN make it impossible to detail

23  comprehensively each copyright violation in this Complaint.  However, Oracle has now obtained

24  from the Register of Copyrights over 40 certificates of registration that cover a wide range of

25  Software and Support Materials taken by SAP TN. . . . Collectively, these registrations cover

26  thousands of unlicensed Software and Support materials unlawfully copied by SAP TN."  *Id.* at ¶

27  84.

28

4

1    B.    *Oracle Then Learned That Defendants Also Infringed Certain*
2          *Underlying Software Applications And Promptly Amended Again*

3          Discovery began in late July 2007. Because Oracle only knew about

4    downloading, it narrowly tailored its discovery requests and efforts around that topic. However,

5    on October 30, 2007, during the second day of Rule 30(b)(6) deposition of SAP TN, Oracle

6    learned that "the download was one piece. . . . And in some instances, we may have received

7    software material directly from the customer. . . . Basically a -- a copy of an environment that we

8    were supporting for them or maybe a copy of their -- their demo environment." Declaration of

9    Chad Russell in Support of Oracle's Motion to Amend Complaint ("Russell Decl."), ¶ 2 & Ex. A

10   at 89:25-90:21.

11         Oracle immediately adjusted its discovery efforts, serving a second round of

12   interrogatories focused on this newly disclosed activity. Oracle's Interrogatory No. 12 was one

13   such interrogatory, to which Defendants responded on December 27, 2007 ("Response 12").

14   Russell Decl., ¶ 3 & Ex. B at pp. 6-7. In Response 12, Defendants said that they had

15   "maintained approximately 183 PeopleSoft environments on behalf of approximately 122

16   different customers which variously included one or more of the CRM, EPM, FDM, SA, Portal,

17   and HRMS products, with varying releases of each." *Id.* Defendants also included a spreadsheet

18   with "additional information" on which Defendants relied under Rule 33(d), inconsistently

19   showing not 183, but 227 local environments. *Id.*; Russell Decl., ¶ 5 & Ex. D. Pursuant to Rule

20   33(d), Defendants also relied on "TomorrowNow's emails among development and support

21   engineers and its databases of customer service information, including its SAS databases."

22   Russell Decl., ¶ 3 & Ex. B at pp. 6-7.[1]

23   _____

24          [1] This answer, which ultimately turned out to be woefully incomplete, highlights the
     complexity of the case caused by Defendants intentional and indiscriminate copying of customer
25   software over the course of several years. In total, that copying now covers four separate product
     lines (PeopleSoft, J.D. Edwards, Siebel, and Oracle database), at least 15 separate products
26   within these lines, and at least 109 separate releases within these products. For convenience,
     Oracle attaches as Exhibit C to the Russell Decl. (see ¶ 4) the list of product lines, products, and
27   releases which Defendants supported and/or kept on their computers, based on analysis to date.

28

5

1    Over the next seven months, Oracle pursued discovery about these new

2 developments, while also prosecuting its other claims and meeting its substantial discovery

3 obligations to Defendants.  Oracle also conducted targeted reviews of the "emails among

4 development and support engineers" that Defendants produced (as part of a multi-million page

5 production), as well as the multi-gigabyte SAS Database.  Russell Decl., ¶ 20.

6    The environment discovery took time, and included unexpected turns.  For

7 instance, on February 6, 2008, John Baugh, TN's "environments manager" and a Rule 30(b)(6)

8 witness on the subjects of creation, storage, and use of local environments, testified that both the

9 183 and the 227 numbers sworn to in Response 12 three months earlier were flat wrong:

10          Q.  "TomorrowNow has maintained approximately 183 PeopleSoft environments
             on behalf of approximately 122 different customers."
11          A.  No, based on the research, that's not an accurate number.
12          Q.  And, in fact, really even the environments reflected on Exhibit 31, the 227,
             that's not all of them either, right?
13          A.  That's correct. . . .
             Q.  What's your best understanding of what the total number of environments that
14           PeopleSoft has ever -- that TomorrowNow has ever maintained of PeopleSoft
             applications?
15          MR. FUCHS:  Objection, form.
16          A.  It's my understanding that TomorrowNow has had a little over 300
             environments on our hardware at one time.  Russell Decl. at ¶ 6 & Ex. E at
17           141:24-142:6, 142:18-25.

18          This testimony was wrong too, as Baugh himself acknowledged.  Defendants

19 actually created *thousands* of complete or partial copies of these environments, including in the

20 form of "backups" or "restores" used in the process of supporting customers.  *Id.* at 95:1-5,

21 116:16-117:1; Second Amended Complaint for Damages and Injunctive Relief ("SAC"), July 28,

22 2008 (Docket No. 132), ¶¶ 113-119.

23          Nine months after the first TN witness revealed the existence of "environments,"

24 Oracle filed a stipulated Second Amended Complaint to add allegations and registrations

25 intended to address the software environments copied and used by Defendants, as known by

26 Oracle at the time.  SAC, ¶¶ 113-122, 146-157.  Again, Oracle added no new claims for relief.

27 Again, Oracle cautioned that the new registrations could not be considered final.  SAC, ¶ 148.

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1    C.    The Current List Of Registrations Reflects Incomplete And
            Inaccurate Discovery Which Required Significant Time To Analyze
2

3            Oracle's Second Amended Complaint did not include every possibly relevant

4    registration for three reasons:  (1) Oracle only had inaccurate, uncorrected, and incomplete

5    discovery responses from Defendants; (2) the volume and complexity of discovery did not allow

6    for thorough analysis; and (3) Defendants produced much of that discovery after Oracle's last

7    amendment (and they continue to do so).

8            1.    Defendants provided incomplete and inadequate discovery
                   responses
9

10           May 22, 2009, was the last day to supplement discovery responses under the

11   Court's prior case schedule.  At 4:25 p.m. that day, fifteen months after their own 30(b)(6)

12   witness first contradicted Response 12, Defendants supplemented that response ("Amended

13   Response 12").  Russell Decl., ¶ 3 & Ex. B at pp. 7-8.  In doing so, Defendants added a host of

14   new sources of "additional information" not listed before and on which Defendants now further

15   rely pursuant to Rule 33(d).  *Id.*  These sources include the "BakTrak" database (produced in full

16   on April 20, 2009), a more complete version of the SAS database (produced on March 6, 2009),

17   a database referred to as "dotProject" (produced in full on May 8, 2009), servers in the "Data

18   Warehouse" (production still ongoing), and a new spreadsheet "that contains the most detailed

19   information TomorrowNow has been able to gather regarding the PeopleSoft environment

20   components that might have existed on TomorrowNow's network."  *Id.*; Russell Decl., ¶¶ 3, 8,

21   25 & Ex. B at p. 7, R at 3:21-22.[2]

22           These new sources of data, now relied upon by Defendants as part of their

23   testimony, are both voluminous and inconsistent with Oracle's previous understanding of many

24   facts.  For instance, according to the new spreadsheet, there are now *412* environments that

25

26       [2] Defendants rely on SAS, dotProject, and/or Data Warehouse in numerous other discovery
     responses, including other responses only just recently provided such as Amended Reponses 13
27   and 14 in the same set.  Russell Decl., ¶ 3 & Ex. B at pp. 9-12.

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1    "might have existed" at SAP TN, ***185 more than the previous list*** Defendants had provided.

2    Russell Decl., ¶¶ 3, 5, 7 & Exs. B at 7:10-13, D, F.  These new environments in turn correspond

3    to new customers such as BEA Systems and Information Service Handling Group, not disclosed

4    before as customers for whom TN had built environments.[3]  Russell Decl., ¶¶ 5, 7 & Exs. D, F.

5    Though Oracle is still in the process of analyzing these recent productions, it has already

6    discovered evidence of multiple copies of various versions of Oracle's software that were not

7    disclosed in the original Response No. 12.  By way of examples only, the new SAS database

8    production relied upon by Defendants indicates that SAP TN provided support for CRM version

9    8.4 SP1.  Russell Decl., ¶ 9 & Ex. G.  Defendants did not list this release in the incomplete

10   version of SAS produced back in December 2007.  Russell Decl., ¶ 10 & Ex. H.  The same is

11   true for EPM version 8.3 SP4.  Russell Decl., ¶¶ 9, 10 & Exs. G, H.

12           2.      Defendants' production of software, and Oracle's analysis
13                   of it, continues

14           As Defendants themselves have repeatedly told the Court, the scope of discovery

15   in this case has been enormous.  The Data Warehouse, identified as an additional new source

16   relied upon by Defendants pursuant to Rule 33(d), is an example.  *See, e.g.*, Joint Discovery

17   Conference Statement, November 18, 2008, Dkt. No. 219 at 1:11-17 (Both parties stating that

18   "[the Data Warehouse] materials are voluminous, making copying and production logistically

19   difficult.").

20           As explained to the Court in the Parties' May 12, 2009 Joint Motion to Modify

21   the Case Management Order, the "Data Warehouse" is the name the parties have given to the

22   approximately 93 SAP TN server partitions which Oracle has inspected remotely, designating

23   portions for production in the process, so that Defendants would not have to produce them in full

24   in the first instance.  Russell Decl., ¶ 25 & Ex. R at 3:5-11.  The Data Warehouse contains

25   Defendants' actual native copies of Oracle's software, in the form of downloads, local

26   _____

27       [3] Defendants did not provide Oracle with a purportedly complete list of SAP TN customers
     until January 9, 2009.

28

1   environments, related documentation, and updates and fixes delivered to SAP TN's customers –

2   in other words, direct physical evidence of Defendants' infringement.  *Id.*; Declaration of Kevin

3   Mandia in Support of Oracle's Motion to Amend Complaint ("Mandia Decl."), ¶ 3.

4          Defendants did not begin producing (and thus Oracle's experts could not review)

5   Data Warehouse images until October 25, 2008, long after Oracle last added registrations to the

6   Complaint.  Russell Decl., ¶ 25 & Ex. R at 3:17-19.  The Data Warehouse production has

7   continued since and is still not finished.  On May 12, the Parties informed the Court that "Oracle

8   has not yet reviewed and Defendants have not yet produced the updated data on [certain] server

9   partitions."  *Id.* at 3:21-22.  Defendants had also informed Oracle on May 7, 2009 that three

10  servers could not be reviewed without "rebooting," which carries the risk that "the data may be

11  inaccessible."  Joint Discovery Conference Statement, May 19, 2009, Dkt. No. 312 at 17:14-20.

12  The parties are still meeting and conferring on how to handle this situation.  These types of

13  issues naturally arise in large-scale, complex data productions.[4]  But they also explain why

14  Oracle has needed time to understand the exact nature of the software on Defendants' systems.

15         Defendants last represented that the Data Warehouse production, once completed,

16  will total over seven terabytes of data and 14 million files.  Joint Discovery Conference

17  Statement, May 19, 2009, Dkt. No. 312 at 15-16.  Even this representation is not the whole story,

18  as many files are "compressed" and dramatically increase the size of the production when

19  decompressed to a useable format.[5]  Mandia Decl., ¶ 4.  Oracle's experts estimate that the

20  production will exceed 16 terabytes of data, or the rough equivalent of over 800,000,000 pages

21  of documents.  *Id.* at ¶¶ 4-5.

22  _____

23  [4] Oracle could cite many other issues that have delayed Defendants' production and
    Plaintiffs' ability to analyze the mountain to technical data.  Other examples include Defendants
24  inability – undisclosed for six months – to create a reliable forensic image of one of their most
    important servers, and the one-month delay caused by Hurricane Ike in Houston last year (where
25  the forensic and legal work related to the technical production occurs for Defendants).

26  [5] Defendants are well-aware of this issue: "A file could be -- what is known as a [PST] file.
    And inside of that is a whole e-mail inbox that could be thousands if not tens of thousands of
27  additional documents and pages. . . . We're doing that in an expeditious way.  It just takes time,
    given the volume."  Russell Decl., ¶ 11 & Ex. I at 5:16-6:10.

28

                                              9

1    Oracle's experts cannot effectively review this data with search terms, as they

2   might with email.  Mandia Decl., ¶¶ 6-7.  Instead, in many cases they must run file compares and

3   forensic analysis on the data – including line by line code comparisons – to determine which files

4   are copies of, or modifications of, others, and the extent to which the files have been

5   manipulated.  *Id.*  This process will take at least several more months to even partially complete.

6   *Id.*  Similarly, Oracle is still reviewing the other databases on which Defendants relied in

7   Response 12 (e.g., SAS, Database, and dotProject), and which Defendants only finished

8   producing within the past four months, more than seven months after Oracle added registrations

9   in the Second Amended Complaint.  Russell Decl., ¶¶ 3, 8 & Ex. B.

10    In addition, Defendants have produced more than 7.7 million Bates-labeled pages

11   of documents.  Russell Decl., ¶ 12.  This number does not account for a large number of "pages"

12   that actually consist of vast spreadsheets or even entire, multi-gigabyte databases with

13   information about Oracle's software, such as the SAS or dotProject databases on which

14   Defendants rely in their supplemental discovery responses.  Russell Decl., ¶¶ 3, 13 & Exs. B.

15   For instance, Defendants' SAS database, assigned one Bates number in its complete form,

16   contains more than 21 gigabytes of data.  Russell Decl., ¶ 13.  Of these 7.7 million "pages,"

17   Defendants produced more than 3 million in 2009.  Russell Decl., ¶ 12.  Many of those

18   correspond to the "emails among development and support engineers" that Defendants' relied

19   upon in the original Response 12 in December 2007.  Russell Decl., ¶ 14.  Oracle is still

20   reviewing these as well.

21    **D.**    *After Its Latest Productions And The Prior Liberal Amendment*
22           *Deadline Passed, Defendants Sought To Limit Oracle's Copyright*
           *Claims*
23

24    On April 14, 2009, Defendants filed a motion to compel discovery related to

25   Oracle's copyright claims.  The motion sought, among other things, identification of specific

26   preexisting materials incorporated into each of Oracle's current fifty-two derivative work

27   registrations.  Russell Decl., ¶ 15 & Ex. J at 1-2, 4.

28    Defendants argued that since derivative works registrations are based upon

10

1   preexisting works, "Oracle's claim to any version of software that is based on 'previous

2   versions' extends only to the new material in the new version." *Id.* at 9.  Defendants thus sought

3   to exclude from the case, as not "new material," any infringement of preexisting code.  *Id.*

4   Oracle disagrees with this view of the law.  Derivative works registrations cover infringement of

5   prior versions because "when the same party owns the derivative . . . work plus the underlying

6   elements incorporated therein, its registration of the [derivative work] is 'sufficient to permit an

7   infringement action on the underlying parts, whether they be new or preexisting.'"  2 Melville

8   Nimmer & David Nimmer, Nimmer on Copyright, § 7.16[B][2][c] at 7-175 (2009).

9         Judge Laporte did not reach the underlying legal issue, but did order Oracle to

10   supplement its interrogatory responses with certain additional information concerning the pre-

11   existing works.  Russell Decl., ¶ 16 & Ex. K at 2-3 (ordering production of documents

12   "sufficient to show" ownership, documents "relating to acquisition, assignment, or transfer," and

13   documents on which Oracle will rely in "proving copyrightability and ownership.").  However,

14   Defendants clearly stated their intent to limit Oracle's claims to exclude cases where, *regardless*

15   *of ownership*, the "infringed portions of the preexisting work are not part of the derivative work

16   at issue in the case," and to limit Oracle's damages in cases where the "infringed portions of a

17   late-registered derivative work do not include the material from the timely registered preexisting

18   work."  Russell Decl., ¶ 17 & Ex. L at 3-4.

19         Based on these arguments, and without agreeing with them, Oracle offered to

20   resolve the issue by locating and offering to produce, and include in the Complaint, sixty-three

21   registrations (the very registrations for which Defendants were seeking information as "pre-

22   existing materials").  Oracle reiterated to Defendants its different view of the law on which

23   Defendants intend to rely, but noted that the need for any such argument could be mooted with

24   these conforming amendments.  Despite having just produced the vast quantity of software code

25   and amended discovery responses described above, Defendants refused Oracle's offer, saying

26   they could conceive of "no justifiable basis" for allowing an amendment.  In other words,

27   Defendants have long known about these registrations (all but the two Knowledge Management

28   Registrations have been publicly available from the Copyright Office since Oracle filed its first

1   Complaint), but now seek to exclude infringement of them from the case, after only just recently

2   providing basic related discovery.  17 U.S.C. § 705 (Copyright registrations are "open to public

3   inspection.").  Oracle believes this position is inconsistent with the Federal policy of deciding

4   cases on the merits.  *See Chow v. Hirsch*, 1999 WL 144873 at *1 (N.D. Cal. 1999) (Hamilton, J.)

5   ("[F]ederal policy strongly favors determination of cases on their merits . . . .").  Oracle also

6   believes that since Defendants have made these prior registrations an issue in discovery, Oracle

7   should be entitled to add all sixty-three registrations implicated by Defendants' argument as a

8   precautionary measure, while reserving its rights as to their relevance.  However, in the interest

9   of judicial economy and recognizing the desire by both parties to reasonably limit discovery,

10  Oracle seeks to add only twenty.  These twenty focus principally on the PeopleSoft HRMS

11  product line, which Oracle believes was of the bulk of Defendants' copying.[6]  Defendants will

12  not agree to the sixty-three, the twenty, or any smaller subset.

13          E.      *Oracle Discovered Defendants May Have Infringed Oracle's*
14                  *"Database" Products*

15              The focus of this case, and of Defendants' "Safe Passage" efforts and SAP TN's

16  services, has been Oracle's PeopleSoft, JDE, and Siebel software products.  *See, e.g.*, Complaint,

17  ¶¶ 48-58.  Each of those product lines consists of various enterprise software *applications* – akin

18  to Microsoft Word or Excel -- that run on top of, and interface with, any number of underlying

19  *databases*, including Oracle's own database software products.

20              Recently, Oracle discovered information that suggests infringement by

21  Defendants of Oracle's database technology products.  As part of deposition preparation in

22  February 2009, Oracle came across two emails in Defendants' production.[7]  One was a January

23  2005 email between SAP TN's "environments manager" and SAP TN's liaison to SAP Legal

24  _____

25      [6] Of the 412 environments identified by Defendants in Amended Response 12, approximately
    294 of them (or 71%) appear to be HRMS environments.  Russell Decl., ¶¶ 3, 7 & Exs. B, F.
26      [7] Defendants produced these documents in March 2008, among the millions of pages of other
    documents and terabytes of electronic documents and technical data included in their various
27  productions.  Russell Decl., ¶ 21.

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1    discussing how "now that we are under the SAP umbrella, we may need to look into purchasing

2    Oracle licenses. . . . [I]t may be more cost effective in the long run to make sure we have all our

3    bases covered."  Russell Decl., ¶ 18 & Ex. M.  The other email showed the same liaison telling

4    SAP in March 2006 that the "ORACLE license is needed urgently to support our PeopleSoft

5    customers using this technology."  Russell Decl., ¶ 19 & Ex. N.  Because SAP is a licensed

6    Oracle database reseller, Oracle conducted an internal investigation based on these documents.

7    Russell Decl., ¶ 21.

8              Oracle promptly raised the issue of possible database infringement with

9    Defendants in connection with the meet and confer to add the Stipulated Amendments and

10    extend the case schedule, and identified documents it had found.  Oracle also continued to

11    search, finding other documents, such as an October 2006 email in which SAP TN appears to

12    have given up on obtaining a license: the environments manager states "I don't think we're going

13    to get an Oracle license."  Russell Decl., ¶ 22 & Ex. O.  Oracle requested further information

14    from Defendants about what database versions were in use by SAP TN in order to expedite the

15    amendment discussion.  In response, Defendants provided certain "screenshots" of server

16    directory structures showing the database versions SAP TN had on its systems.  Russell Decl., ¶

17    23 & Ex. P.

18              Additionally, in April 2009, Oracle learned during the deposition of George

19    Lester, an early employee at SAP TN and an environments manger, that he did not know where

20    SAP TN got the databases used by TomorrowNow to support its customers because they were

21    simply "in place" when he arrived at the company in 2004.  Russell Decl., ¶ 24 & Ex. Q at 19:3-

22    20:24.  It thus appears TN used Oracle's database products extensively in its business model for

23    a number of years without ever acquiring a license.

24              Despite extensive meet and confer since April 2009, Defendants have not agreed

25    to add additional registrations to supplement the existing copyright claim based on the

26

27

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1  documents referenced above.[8]  Accordingly, Oracle seeks leave to add seven copyright

2  registrations to cover the versions of Oracle's database Defendants appear to have copied and

3  used.

4  **III.   THE COURT SHOULD PERMIT THE CONFORMING
        AMENDMENT TO THE FIRST CLAIM FOR RELIEF**

5

6         Oracle and Defendants disagree about which Federal Rule, and thus which legal

7  standard, applies to Oracle's proposed amendments.  Oracle contends that leave to include these

8  amendments should be "freely given" under Fed. R. Civ. Proc. 15(a) ("Rule 15").  Defendants

9  argue that even though the Court has set an entirely new Case Management Schedule, including

10 a new deadline to amend the complaint, the old deadline is still operative and Fed. R. Civ. Proc.

11 16(b)'s "good cause" standard applies ("Rule 16").  The distinction should not matter, as Oracle

12 meets either standard.

13         *A.   The Applicable Standard Is Rule 15 And Oracle Satisfies It*

14         A party generally may amend its complaint "with the opposing party's written

15 consent or the court's leave."  Fed. R. Civ. Proc. 15(a)(2).  If the deadline has not passed, the

16 Court shall "freely give leave when justice so requires" and with "extreme liberality."  *Id.*; *DCD*

17 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal citation omitted).

18         The original May 5, 2008 Case Management Order set the deadline to amend the

19 pleadings at "no later than 90 days before fact discovery cutoff."  Case Management and Pretrial

20 Order, May 5, 2008, Dkt. No. 84.  At the time, that math equated to March 21, 2009, although

21 the 2008 Case Management Order did not specify that date (unlike each other date, which it

22 made explicit).  Case Management and Pretrial Order, May 5, 2008, Dkt. No. 84.  This makes

23 sense.  Linking the amendment deadline to the fact discovery cutoff fulfills the purpose of Rule

24 _____

25    [8] Plaintiffs may also pursue at trial claims relating to the apparent unauthorized downloading
    of Oracle database support materials and use of Oracle database products as part of its existing
26  claims for relief, but no amendment is necessary to offer that proof in support of Oracle's
    existing claims.  Only the Copyright Infringement claim requires a conforming amendment for
27  jurisdictional purposes.

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1   15 and the policy of the Federal Rules generally - i.e., "to provide the parties with flexibility in

2   presenting their claims and defenses . . . [b]ecause federal policy strongly favors determination

3   of cases on their merits . . . ." *Chow v. Hirsch*, 1999 WL 144873 at *1 (N.D. Cal. 1999)

4   (Hamilton, J.) (*citing Forman v. Davis*, 371 U.S. 178, 182 (1962)).  In other words, the parties

5   must be able to adjust their claims and defenses as the facts unfold through discovery.

6        Two months ago, the parties jointly sought, from the Court, modifications to the

7   Case Management Order to allow for further fact discovery (among other things).  Russell Decl.,

8   ¶ 25 & Ex. R.  Defendants agreed that they had just completed production of several terabytes of

9   Data Warehouse data in February 2009, and that they were "willing to agree to a modest

10  extension of the case deadlines and discovery limits in order to [] fully resolve Oracle's claims

11  regardless of whether the Parties are ever able to agree on an extrapolation methodology or a

12  stipulation." *Id.* at 2-3.

13       The Court granted the Parties' motion on June 11, 2009, extending fact discovery

14  in this case by more than five months, to December 4, 2009, and resetting the trial date to

15  November 1, 2010.  Stipulated Revised Case Management and Pretrial Order, June 11, 2009,

16  Dkt. No. 325.  Oracle believes that with the new Case Management Order, the Court set a new

17  deadline for amendment of August 26, 2009, a shift of approximately the same number of days

18  as the discovery cutoff (though Defendants reserved the right to argue that the old deadline still

19  applies).  Revised Case Management and Pretrial Order, June 11, 2009, Dkt. No. 325 at p. 2 ¶ 6.

20  If Oracle's view is correct, then Oracle brings this motion more than a month before the current

21  deadline, and the Rule 15 standard applies.  Defendants' attempt to construe this Court's Order

22  to have moved the fact discovery cutoff while somehow leaving behind the deadline tied to that

23  cutoff is "contrary to the spirit of the Federal Rules." *Forman v. Davis*, 371 U.S. 178, 181-82

24  (1962).

25       Under Rule 15, the Court should grant leave unless the opposing party can show

26  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

27  deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

28  of allowance of the amendment, futility of amendment, etc." *Forman*, 371 U.S. at 182 (1962)

1     ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by

2     counsel may be decisive to the outcome and accept the principle that the purpose of pleading is

3     to facilitate a proper decision on the merits.") (internal citation omitted).

4           These factors are not present.

5           Oracle has not unduly delayed the amendments or repeatedly failed to cure

6     deficiencies.  To the contrary, Oracle seeks to add registrations based on recent information, to

7     conform to the evidence and (with respect to the PeopleSoft Amendments) Defendants'

8     discovery arguments.  Oracle raised all relevant issues with Defendants as soon as Oracle

9     became aware of them.  More importantly, Defendants knew about all of these issues long before

10     Oracle did.  They downloaded the documents, copied the software, and then gave conflicting and

11     misleading sworn statements about it in discovery.

12           Oracle is not acting in bad faith by seeking to add these registrations.  When

13     Oracle filed suit, it did not seek to include every copyright it owned, and attempted to avoid

14     adding irrelevant or unnecessary registrations.  Not only would that have been inappropriate and

15     irresponsible, Defendants surely would have moved to strike.  Now, Oracle simply wants to

16     conform the Complaint to Oracle's current understanding of the evidence.

17           Finally, there is no prejudice.  The additional registrations arise from the same

18     basic set of operative facts already included in Oracle's complaint and thus will not substantially

19     burden Defendants.  *See, e.g., Twisted Records, Inc. v. Rauhofer*, 2005 WL 517328, *6-7

20     (S.D.N.Y. 2005) (permitting a conforming amendment under Rule 15(a) to add a pre-existing

21     work registration because "the proposed new infringement claim relate[d] to the same facts as

22     alleged in [Plaintiff's] original claim for infringement of its copyright in the [derivative work

23     registration].").

24         *B.*     *Oracle Also Satisfies Rule 16 Because Good Cause Exists*

25           Rule 15's extremely liberal standard has one exception.  If a motion to amend a

26     pleading is made after a deadline set by a case management schedule, then pursuant to Fed. R.

27     Civ. Proc. 16(b) "the schedule may be modified only for good cause."  *See Trimble Navigation*

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1   *Ltd. v. RHS, Inc.*, 2007 WL 2727164, *10 (N.D. Cal. 2007) (Hamilton, J.) ("Good cause for

2   amendment must also be shown where, as here, amendment is sought past the deadlines

3   established by the court's pretrial scheduling order.").  The movant establishes good cause by

4   showing that "despite acting diligently, it cannot reasonably meet the order's schedule."  *Launch,*

5   *LLC v. PC Treasures, Inc.*, 2006 WL 1142535, *1 (N.D. Cal. 2006) (Hamilton, J.).[9]

6         In applying Rule 16(b), the Court does not ignore the policy behind Rule 15.  *See,*

7   *e.g., Trimble*, 2007 WL 2727164 at *11 ("The court also finds [in addition to diligence] that the

8   traditional Rule 15 factors additionally counsel in favor of amendment.").

9         Good cause exists when the movant relies on newly uncovered discovery

10   materials to justify an amendment – even if substantial time passes between production and the

11   time of the motion.  *See Trimble*, 2007 WL 2727164 at *10.  In *Trimble*, the movant sought to

12   add an affirmative defense of inequitable conduct based on documents produced five months

13   prior to the motion.  *Id.* at *10.  Despite the time that had passed, the Court still found good

14   cause to amend in part because during that time the movants had analyzed and compared the

15   documents and worked with their experts.  *Id.* ("Based on these facts, the court cannot say that

16   defendants lacked diligence in pursuing amendment."); s*ee also Fru-Con Construction Corp. v.*

17   *Sacramento Mun. Util. Dist.,* 2006 WL 3733815, *4-5 (E.D. Cal. 2006) (granting leave to amend

18   where discovery had been "a massive undertaking for both parties . . . marked by delay and

19   complication," and noting that "[a]llowing parties to amend [under Rule 16] based on

20   information obtained through discovery is common and well established.").

21         Apart from the Stipulated Amendments, Oracle has demonstrated its diligence in

22   at least four ways:

23

24   ——————————————

25      [9] In *Launch*, this Court also said that it "treats a motion for leave to amend pleadings after the
scheduling order deadline as a motion to modify the scheduling order."  *Launch* 2006 WL

26   1142535 at *1.  For that reason, Oracle chose not to burden the Court with an additional and
separate administrative motion to modify the scheduling order, should the Court accept

27   Defendants' theory of the old deadline.

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1               1.     The amendments are based on newly discovered

2                      information

3          Oracle has only just learned of the information it needed to propose these

4 amendments.  That fact alone should end the inquiry.  *Fru-Con*, 2006 WL at *4-5.

5          As to the Database Amendments, Oracle only discovered the database documents

6 in February 2009, was only in position to meet and confer on them in April 2009, only obtained

7 the crucial Lester testimony in April 2009, and had no prior reason to suspect such unauthorized

8 use.  The fact that Defendants produced these documents earlier, sprinkled among multiple

9 terabytes of data, does not defeat a showing of good cause.  *See Trimble*, 2007 WL 2727164 at

10 *10.  Oracle could not reasonably have proposed informed and final amendments by the

11 March 21 "deadline."  Oracle can only act based on the information which it has had available –

12 indeed, the vast amount of recently-produced data was one of the main reasons for the extension.

13          As to the Knowledge Management Amendments, it has taken months, in an

14 ongoing process, for Oracle's experts to decompress, access, and analyze the millions of

15 download files on the servers Defendants began producing in October 2008.  Mandia Decl., ¶¶ 4-

16 7.  These two registrations conform the First Claim for Relief to the thousands of support

17 documents downloaded by Defendants and maintained on their machines.

18          As to the PeopleSoft Amendments, Defendants waited until May 22, 2009 – well

19 after the original March deadline, and after filing a joint stipulation which Defendants contend

20 prohibits amendment – to amend their relevant discovery responses.  These responses include an

21 additional 185 environments, including multiple previously undisclosed releases.  Russell Decl.,

22 ¶¶ 3, 7 & Exs. B, F.  Similarly, Defendants only produced complete copies of SAS, BakTrak,

23 and dotProject in March, April, and May 2009, respectively, with additional new and

24 inconsistent information, yet assert in discovery responses that Oracle must review them

25 pursuant to Rule 33(d) to understand which of Oracle's copyrights might have been infringed.

26 Russell Decl., ¶¶ 3, 8 & Exs. B at 7.  Indeed, Defendants have emphasized to the Court that

27 understanding the latest SAS database production is crucial for Oracle to make its case – "I agree

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1    that the SAS database provides some enriched source of information. . . . And the database has

2    all the data points in it -- or most of the data points in it -- that [Oracle] is referring to [in

3    discussing SAP TN's support processes]."  Russell Decl., ¶ 26 & Ex. S at 15:8-16:9.

4              2.      Oracle has undertaken extensive discovery efforts and
                       adapted to new facts
5

6              Oracle's intense discovery efforts evidence its diligence.  As soon as Oracle

7    learned of Defendants' local environments, Oracle immediately and significantly expanded its

8    discovery focus to include them.  Over the next seven months, Oracle served additional written

9    discovery, and took approximately 51 hours of deposition testimony, including approximately 38

10   hours with Rule 30(b)(6) witnesses, all aimed at understanding Defendants' use of local

11   environments.  Russell Decl., ¶ 28.  At the same time, Oracle attempted to review millions of

12   pages of emails and the incomplete portions of Defendants' SAS database which had been

13   produced in 2007.

14             These efforts directly relate to the proposed amendments.  Oracle retained experts

15   early in the discovery process who have conducted, and continue to conduct, complex forensic

16   and statistical analysis of staggering amounts of electronic data.  Mandia Decl., ¶¶ 1-7.  This

17   analysis has contributed to Oracle's understanding of the facts justifying the Knowledge

18   Management Amendments and the PeopleSoft Amendments.  Similarly, Oracle has navigated

19   more than 7 million pages of documents to find the evidence related to the Database

20   Amendments.

21             3.      Defendants acknowledge Oracle's diligence

22             Defendants acknowledge Oracle's diligence when it suits them.  For instance,

23   Defendants supported a discovery extension two months ago (related to the Stipulated

24   Amendments) "despite [the Parties'] diligence."  Russell Decl., ¶ 25 & Ex. R at 5.  They also

25   insist Oracle collected enough information through its noticed depositions that detailed

26   interrogatory responses were (and are) not warranted.  Russell Decl., ¶ 3 & Ex. B at 9, 11.

27   Having relied on Oracle's diligence to secure the additional discovery and summary judgment

28   motion round they sought, Defendants cannot now argue Oracle has lacked diligence.

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT

1
2

       4.      Any "delay" is simply the natural turnaround time for such a large volume of discovery

3          With 7.7 million pages of documents and 16 terabytes of data to analyze, Oracle

4 can only locate, recognize, and analyze information so fast.  Indeed, Defendants have suggested

5 that Oracle might never fully understand the ongoing production: "At some point the volume

6 gets to be useless, I think, no matter how many worlds of time they're going to have to use this in

7 whatever form this case ultimately takes."  Russell Decl., ¶ 27 & Ex. T at 63:7-19.

8          There has been no delay whatever with respect to the PeopleSoft Amendments.

9 They are based on recent productions and amended responses from Defendants, as well as

10 Defendants' recent attempts to exclude certain infringement of derivative works registrations.

11 With respect the Database Amendments and Knowledge Management Amendments, any brief

12 "delay" is not only justified, but expected.  Oracle's experts needed to review millions of

13 download files before Oracle could propose the conforming Knowledge Management

14 Amendments.  Mandia Decl., ¶¶ 4-7.  Similarly, Oracle only found the documents justifying the

15 Database Amendments in the due course review of millions of pages of emails, presentations,

16 and spreadsheets, while preparing for depositions on other issues.  Russell Decl., ¶¶ 20, 21.

17         Not surprisingly, Defendants have had similar experiences with the exact same

18 documents (i.e., *their own*), and they have asserted time and time again the difficulties of

19 managing such a large volume of material:

20      •   Defendants argued they needed additional time to make witnesses available

21           because of the "extraordinary discovery burdens that are created by the huge

22           volumes of data and documents Defendants have been required to produce in this

23           case . . . ."  Joint Discovery Conference Statement, November 18, 2008, Dkt. No.

24           219 at 6:12-16.

25      •   With regard to search terms, Defendants informed the Court that their initial good

26           faith efforts to streamline the review process based on knowledge of their

27           documents ***still missed more than 10% of the relevant material***.  Joint Discovery

28           Conference Statement, June 24, 2008, Dkt. No 102 at 18:16-18, 19:14-15.

1  •  Defendants told the Court that it was impossible to avoid producing irrelevant

2     documents to Oracle because "[i]t is inevitable that some nonresponsive

3     documents will slip through the review process in a production of this

4     magnitude." *Id.* at p. 19, fn. 12.

5  •  Defendants explained by email in January 2009 that they could not have compiled

6     a final list of SAP TN customers until then because "[t]here has been extensive

7     fact investigation and discovery since [2007] and, not surprisingly, additional

8     customers have been identified."

9        Oracle's inability to wade through, analyze, and act upon Defendants' massive

10  productions any quicker or more accurately than Defendants can do so themselves certainly

11  cannot constitute a lack of diligence.

12  **IV.   CONCLUSION**

13        For the foregoing reasons, Oracle respectfully requests leave to file its Fourth

14  Amended Complaint in the form attached as Exhibit A.  If the Court denies this Motion, Oracle

15  respectfully requests the Court to rule on Oracle's separate alternative motion to amend

16  including only the Stipulated Amendments.  If the Court grants this Motion then that alternative

17  motion is mooted.

18

19  DATED:  July 15, 2009

20                          Bingham McCutchen LLP

21

22

23                          By:_____/s/ Geoffrey M. Howard_____
                                    Geoffrey M. Howard
24                                  Attorneys for Plaintiffs
                             ORACLE USA, INC., ORACLE
25                           INTERNATIONAL CORPORATION, AND
                                  ORACLE EMEA LIMITED
26

27

28

ORACLE'S NOTICE OF MOTION AND MOTION TO AMEND COMPLAINT