1   BINGHAM MCCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  415.393.2000
    Facsimile:  415.393.2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9
    DORIAN DALEY (SBN 129049)
10  JENNIFER GLOSS (SBN 154227)
    500 Oracle Parkway, M/S 5op7
11  Redwood City, CA  94070
    Telephone:  650.506.4846
12  Facsimile:  650.506.7114
    dorian.daley@oracle.com
13  jennifer.gloss@oracle.com

14  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle International Corporation, and
15  Oracle EMEA Limited

16                 UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19
    ORACLE USA, INC. *et al*,                No. 07-CV-01658 PJH (EDL)
20
                Plaintiffs,                  **REPLY IN SUPPORT OF
21          v.                               PLAINTIFFS' MOTION TO
                                             COMPEL PRODUCTION OF
22  SAP AG, *et al.*,                        DOCUMENTS RELATED TO
                                             DAMAGES MODEL AND
23              Defendants.                  INTERROGATORY RESPONSES
                                             RELATED TO USE OF
24                                           PLAINTIFFS' INTELLECTUAL
                                             PROPERTY**
25
                                             Date:      August 4, 2009
26                                           Time:      2:00 p.m.
                                             Place:     E, 15th Floor
27                                           Judge:     Hon. Elizabeth D. Laporte

28

1

TABLE OF CONTENTS

2                                                                                          Page

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     THE COURT SHOULD REQUIRE FURTHER RESPONSES TO
            INTERROGATORIES 13 AND 14 ...................................................................... 3

5           A.      The Actual Rule 33(d) Legal Standard ................................................... 3

6           B.      Defendants Cannot Claim Undue Burden for Either Interrogatory
                    Response ................................................................................................. 4

7                   1.      Interrogatory 14 Is Not Unduly Burdensome............................ 5

8                           a.      Defendants' Response to Interrogatory 14 Relies on the
                                    Incomplete SAS Database ............................................... 5

9                           b.      Under Rule 33(d), Defendants Must Supplement SAS With
                                    The Information They Control ........................................ 8

10                          c.      Defendants' Conduct Caused The Burden .................... 11

11                  2.      For Similar Reasons, Interrogatory 13 Is Not Unduly Burdensome ........ 11

12                          a.      Defendants Mischaracterize Interrogatory 13 ............. 12

                            b.      Interrogatory 13 Is Not Unduly Burdensome.............. 13

13                  3.      Oracle Is Willing to Alleviate Defendants' Burden to the Extent
                            Possible ....................................................................................... 14

14          C.      Oracle's Damages-Related Discovery Requests .................................. 15

15  III.    CONCLUSION ................................................................................................... 15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
Page

3 **FEDERAL CASES**

4
*E. & J. Gallo Winery v. Cantine Rallo,*
5
    2006 U.S. Dist. LEXIS 84048 (E.D. Cal. 2006) ........................................ 5

6
*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.,*
    224 F.R.D. 644 (N.D. Cal. 2004) ........................................... 6, 8, 10
7

*General Dynamics Corp. v. Selb Mfg. Co.,*
8
    481 F.2d 1204 (8th Cir. 1973) ........................................... 8, 10

9
*Residential Constructors, LLC v. Ace Prop. & Cas.,*
    2006 U.S. Dist. LEXIS 80403 (D. Nev. 2006) ...................................... 11
10

11
*T.N. Taube Corp. v. Marine Midland Mortgage Corp.,*
    136 F.R.D. 449 (W.D.N.C. 1991) ........................................... 3

12
**RULES**
13

Fed. R. Civ. P. 33 ...................................................... passim
14

Fed. R. Civ. P. 26(b)(2)(C) ........................................... 4
15

Fed. R. Civ. P. 30(b)(6) ........................................... 5
16

17 **OTHER AUTHORITIES**

18
7 Moore et al., *Moore's Federal Practice*, § 33.105 (2009) ...................................... 4, 5

19
4A Moore's *Federal Practice* ¶ 33.25 (2d ed. 1990) ...................................... 4

20

21

22

23

24

25

26

27

28

1    **I.       INTRODUCTION**

2             Defendants make various contradictory arguments in opposing further response to

3    Interrogatories 13 and 14, but they are all, at base, complaints about excessive burden.  Each

4    argument fails.

5             First, relying on Rule 33(d), Defendants say they *have* provided sufficient

6    information within voluminous records, which Oracle should analyze to determine the answers

7    to the Interrogatories.  Defendants' argument rests on an outdated treatise and a

8    misunderstanding of the answers sought.  Under the correct standard, they have failed to justify

9    the use of Rule 33(d) in this specific factual context.  As Defendants concede, Oracle did not

10   bring this motion precipitously.  It did so only after spending millions of dollars, either in

11   deposition, for special experts, or in careful review of these records, and *only* after those efforts

12   showed that the records do not contain the information Defendants claim.  The sample record

13   Defendants selected for their Opposition exemplifies the crucial missing data Oracle needs

14   Defendants to provide.

15            Second, Defendants say they *cannot* provide the information, either because they

16   allowed their employees to scatter before collecting it, or because of "technical impossibility."

17   But Interrogatories 13 and 14 go to central issues of proof regarding Defendants' illegal

18   downloading and use of illegal local environments.  Defendants received these Interrogatories

19   long before choosing to wind down SAP TN, and had the duty to adequately preserve

20   institutional knowledge about these issues.  Indeed, Oracle first moved to compel a supplemental

21   response to Interrogatory 14 in January 2008.  Judge Legge extracted Defendants' promise that

22   their SAS database would be adequate, but without prejudice to Oracle renewing its motion if it

23   was not.  Oracle has now spent many months and millions of dollars in expert and attorneys' fees

24   confirming that SAS is not what Defendants say it is, and certainly not an adequate response to

25   Interrogatories 13 and 14.

26            Defendants alone have additional knowledge – beyond the data contained in their

27   productions – responsive to these requests, which the rules obligate them to collect and provide.

28   Through their former employees, including but not limited to those now serving as paid litigation

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1   consultants, Defendants have always been able to, and can today, fill the gaps in these records.

2   Of course, in addition to having unique access to this additional knowledge, Defendants can

3   better analyze this material since they engaged in the actions partially reflected in the records in

4   using Oracle's intellectual property to support their customers.  And Defendants – on notice for

5   years of Oracle's interest in and need for this information – have no excuse for any failure to

6   obtain the necessary intelligence before the (entirely voluntary) SAP TN wind-down.

7          Finally and most broadly, Defendants say they should not have to provide this

8   additional information because the burden on them would be too great.  As to this argument,

9   Oracle needs to be very clear:  it did not choose this case.  It would have preferred that its most

10  significant applications software competitor *not* have engaged in a years-long conspiracy to steal

11  its intellectual property.  But that competitor, the $45-billion self-professed "world's largest

12  business software company," broke the rules, in a persistent, knowing, unprecedented way, as

13  part of an effort to steal what it took Oracle billions of dollars to acquire.  In that scenario, where

14  Defendants' ongoing conduct caused so much harm to Oracle, Defendants cannot claim undue

15  burden and refuse to provide basic liability facts that only they know.

16         Even under these circumstances, Oracle would prefer to obtain the information

17  via the *least* amount of burden.  That is largely why it spent a year, at this Court's

18  recommendation, trying to negotiate a stipulation to avoid the need for such detailed responses.

19  Defendants refused that, and now *also* refuse to provide the detailed responses.  As the aggrieved

20  party, Oracle must have a chance to discover the important facts not evident from, or not as

21  easily gleaned by Oracle from, Defendants' voluminous records.

22         Oracle remains willing to try and balance Defendants' claimed burden with

23  Oracle's right to discovery of the detail that supports its claims.  As to Interrogatory 13, as

24  Oracle suggested in its opening papers, if Defendants simply attest, in sufficient detail, that they

25  are unable to respond based on SAP TN's business records, while explaining the results of the

26  investigation they have admittedly already done on a product and file basis, Oracle can at least

27  then use that information as a basis for extrapolation, argument, or preclusion.  As to

28  Interrogatory 14, to the extent Defendants maintain the information in SAS substitutes for a

1  sworn interrogatory response, they presumably would agree that the information in SAS is

2  admissible for the truth of the matter asserted in all instances related to use of local environments

3  to support SAP TN customers.  That leaves the information not in SAS, which, as shown below,

4  is substantial.  For that data set, Oracle welcomes the Court's suggestions for how to reasonably

5  limit the time Defendants, their former employees, and/or their current consultants spend

6  analyzing SAP TN's environments.  In fashioning that remedy, the Court should keep in mind

7  that Defendants have refused to stipulate to factual summaries despite Oracle's repeated offers,

8  have made the problem of assessing environment use worse through sloppy recordkeeping, and

9  have failed to collect the information when the various knowledgeable employees were under

10  their direct control.

11  **II.      THE COURT SHOULD REQUIRE FURTHER RESPONSES TO**
12  **          INTERROGATORIES 13 AND 14**

13  Defendants' opposition rests on a multi-pronged burden argument, which Oracle

14  addresses for each Interrogatory below, after correcting the Rule 33(d) legal standard.  Oracle

15  then proposes a compromise form of relief designed to account for the volume of data and the

16  records Defendants rely upon in their Opposition.

17  **A.      The Actual Rule 33(d) Legal Standard**

18  Oracle agrees with Defendants that Rule 33(d) may be invoked when (1) the

19  responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the

20  interrogating party to locate and identify them as readily as the responding party could," and

21  (2) "the burden of deriving or ascertaining the answer will be substantially the same for either

22  party."  Fed. R. Civ. P. 33(d); *see* Defendants' Opposition to Plaintiffs' Motion to Compel

23  ("Opp.") at 4.

24  However, Defendants incorrectly assert that "the propounding party has the

25  burden of demonstrating 'that the burden of deriving or ascertaining the answers is not

26  substantially the same for both parties,'" once "33(d) has been invoked."  Opp. at 4.  Defendants'

27  only support for this proposition is a Western District of North Carolina case, which in turn cites

28  an outdated version of Moore's Federal Practice Guide.  *See id.*, citing *T.N. Taube Corp. v.*

1    *Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 453 (W.D.N.C. 1991) (quoting 4A Moore's

2    *Federal Practice* ¶ 33.25 (2d ed. 1990)).

3              *This year's* version of Moore's Federal Practice Guide (7 Moore et al., *Moore's*

4    *Federal Practice,* § 33.105 (2009))[1] explains that a requesting party claiming an inappropriate

5    use of Rule 33(d) may file a motion to compel answers, and that "[t]o be successful on the

6    motion, the requesting party must make a prima facie showing that the use of Rule 33(d) is

7    somehow inadequate, whether because the information is not fully contained in the documents or

8    because it is too difficult to extract."  At that point: "*The burden then shifts to the producing*

9    *party to justify the use of Rule 33(d) instead of direct answers to the interrogatories*. The

10   *producing party* must satisfy a number of factors to meet this burden."  *Id.* (emphasis supplied)

11   "First, the producing party must show that a review of the documents will actually reveal

12   answers to the interrogatories. Second, the producing party must justify the shifting of the

13   perusal burden from the responding party to the requesting party.  In this regard, the burden of

14   deriving the answer must be substantially the same for the party serving the interrogatory as for

15   the party served."  *Id.*

16             Under this, correct, standard, Defendants do not meet their burden, as explained

17   below.

18   **B.    Defendants Cannot Claim Undue Burden for Either**
        **Interrogatory Response**
19

20             Defendants' Opposition boils down to the repeated assertion, in various guises,

21   that the Court should limit Interrogatories 13 and 14 under Federal Rule of Civil Procedure

22   26(b)(2)(C) and generally on excessive burden grounds.  All these arguments are misplaced and

23   gloss over the novel massive theft at issue here.

24

25   _____

26   [1] This chapter of Moore's Federal Practice Guide was co-authored by Judge Claudia Wilken of
     the Northern District of California.

27

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1

### 1.   Interrogatory 14[2] Is Not Unduly Burdensome

2  Oracle first sought additional responsive information for Interrogatory 14 in its

3  very first motion to compel before Judge Legge in January 2008, well before the SAP TN wind-

4  down.  Motion at 5.  Judge Legge ordered Defendants to supplement if SAS did not prove as

5  fruitful as Defendants promised.  *Id.*  Accordingly, since then, Defendants have known that this

6  motion might come.  They also knew the limitations of SAS, though it took Oracle over a year to

7  confirm them.  Their arguments that the Interrogatory is unduly burdensome fail.

8

### a.   Defendants' Response to Interrogatory 14 Relies on the Incomplete SAS Database

9

10  Defendants argue Interrogatory 14 is unduly burdensome because it is duplicative

11  of their document production, Rule 30(b)(6) testimony, and individual witness testimony.  Opp.

12  at 20.  To the extent this is true, Defendants appear willing to stipulate to the admissibility of all

13  facts contained with the records on which they rely.

14  Unfortunately, in the best case, this stipulation only solves part of the problem,

15  which means Defendants' response remains insufficient.  A party may rely on Rule 33(d) to

16  respond to an interrogatory when the business records relied upon, in combination with any other

17  cited information, *actually provide* a comprehensive answer.  *See* 7 Moore et al., *Moore's*

18  *Federal Practice*, § 33.105 (2009); *E. & J. Gallo Winery v. Cantine Rallo*, 2006 U.S. Dist.

19  LEXIS 84048, at *12 (E.D. Cal. 2006) ("[A] party may not use Rule 33 to avoid the duty to fully

20  respond to the interrogatories.").  Rule 33(d) itself specifies that:

21  *where the information sought may be obtained by* examining the responding party's business records . . .and answering the question

22  would require the responding party to engage in burdensome or

23  _____

24  [2] Defendants now contend that Oracle is moving to compel the source of each local environment
25  through Interrogatory 14.  *See* Opp. at 14.  That is incorrect, although the *ability* of former SAP
TN employees and current consultants to identify the source of local environments shows their
26  familiarity with, and ability to respond to, Interrogatory 14's actual request.  *See* Motion at 14-
15.  Oracle *does* seek a complete response to Interrogatory 14's request to  "Identify **all**
27  **Customers who received support based on the Use of that environment**, and a detailed
**description of that support . . ."** (emphasis supplied)

28

1         expensive research, the responding party may answer *by specifying*
       the records *from which the answer may be obtained . . .* (emphasis
2         supplied)

3

4  This makes sense because, in both cases, the requesting party obtains responsive, admissible

5  evidence, either a sworn statement or the same fact contained within an admissible business

6  record.  It does *not* make sense if the record provided does not have the information, or if

7  informed analysis by the records' creator is required to interpret it.  As this Court has previously

8  held, granting a motion to compel is proper where "the information can not be found within the

9  documents referenced, and [therefore the party's] attempt to rely upon Fed. R. Civ. P. 33(d) does

10  not satisfy its obligation to respond." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc*., 224

11  F.R.D. 644, 651 (N.D. Cal. 2004).

12         Defendants' reliance on SAS is an example of exactly this kind of Rule 33(d)

13  problem.  It may be the best record Defendants have provided to date, Opp. at 15, but – absent

14  the stipulation urged by this Court – it does *not* provide a complete answer about how the local

15  environments were used.  Defendants' response does not otherwise fill in the gaps; other than

16  SAS, Defendants' response to Interrogatory 14 uses Rule 33(d) solely to rely on deposition

17  testimony elicited by Oracle.

18         Analyzing Defendants' cherry-picked example from SAS demonstrates this

19  problem.  Defendants provided a SAS screenshot of a particular fix, which they claim provides

20  information responsive to Interrogatory 14.  *See* Fuchs Decl., ¶9.  But, on Oracle's analysis,

21  fewer than 3% of Master Fix records in SAS have as much information as the fix shown in

22  Defendants' screenshot.  *See* Declaration of Kevin Mandia ("Mandia Decl."), ¶¶7-8; Declaration

23  of John Polito ("Polito Decl."), ¶6.  On the screenshot, Defendants circled the five environment

24  names that appear.  *See* Fuchs Decl., ¶9.  Individual test plans are attached to the fix, which show

25  that SAP TN used four of those five referenced environments for individual fix testing, a step in

26  SAP TN's support process.  *See* Mandia Decl., ¶8.  To the extent Defendants contend that these

27  environments are the only ones used in every stage of fix delivery– replication of the problem,

28  development of the initial code, unit testing of the initial code, individual fix testing, bundling for

Case No. 07-CV-01658 PJH (EDL)

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1   delivery to clients, and bundle testing – then Defendants should stipulate to that effect, as to all

2   fixes in SAS where any records of the use of environments in the fix-delivery process exist.  To

3   the extent Defendants contend that, for each fix, no information regarding the use of

4   environments in each stage of fix delivery is available beyond that present in SAS, an

5   appropriate stipulation would again provide Oracle with the information it needs as to what

6   information responsive to Interrogatory 14 is available to Defendants.

7           If Defendants refuse that stipulation, then they have oversold their own example.

8   Worse, even if this sample screenshot, by stipulation, includes information about all

9   environments used for that one listed fix, it does not accurately reflect the rest of SAS.  Of SAS's

10   1887 Master Fix records, 920 have *no environment information at all*, yet Defendants chose to

11   submit to the Court a screenshot of a fix for which individual fix testing happened to have been

12   performed in multiple environments.  *See* Mandia Decl., ¶¶7-8; Polito Decl., ¶5.  Perhaps more

13   significant, again subject to stipulation or further information, fewer than 100 Master Fix records

14   in SAS appear to contain information about the environments used in all stages of SAP TN's fix-

15   delivery process.  *See* Polito Decl., ¶5.  Absent appropriate stipulation by Defendants, SAS does

16   not appear to provide information about environment use across the various phases of fix

17   delivery and across a significant number of delivered fixes, which is the information sought by

18   Interrogatory 14.  To the extent Defendants contend that, for each fix, no information regarding

19   the use of environments in each stage of the fix delivery process is available beyond that present

20   in SAS, Defendants should so stipulate.

21           Since Defendants' SAS production (and the isolated examples of environment

22   uses testified to at laborious hours of deposition) cannot provide a close-to-complete response to

23   Interrogatory 14, that request does not unreasonably duplicate Defendants' various Rule 33(d)

24   discovery responses.  Oracle has worked diligently to understand the issues underlying that

25   Interrogatory through these other avenues, spending over $160,000 just in expert fees to

26   understand and manipulate the information in SAS, and approximately more than $2 million

27

28

1    reviewing the database, analyzing the available information, and preparing for and taking

2    depositions on these issues.[3]  *See* Howard Decl., ¶4.  This effort reveals SAS is incomplete, and

3    the responsive information is missing.

4              **b.      Under Rule 33(d), Defendants Must Supplement**
                        **SAS With The Information They Control**

5

6              In their next burden argument, Defendants claim that SAS is the most convenient

7    source of information for Interrogatory 14 and that Oracle has had the "majority" of it for many

8    months.[4]  Opp. at 19.

9              This argument fails for similar reasons.  Defendants cannot rely on Rule 33(d) if

10   "the burden of deriving or ascertaining the [interrogatory] answer" from the referenced materials

11   is not "substantially the same" for both parties.  And that is not the end of their obligations,

12   because, as this Court has previously held, a party must respond to interrogatories "with all the

13   information under [its] custody and control."  *Fresenius,* 224 F.R.D. at 651.  "A party has an

14   obligation to make a reasonable effort to locate all responsive documents and information

15   necessary to fully respond to interrogatories," *id.* at 657, including persons subject to the party's

16   control who have relevant information, including former employees.  *See, e.g., General*

17   *Dynamics Corp. v. Selb Mfg. Co*., 481 F.2d 1204, 1210 (8th Cir. 1973) (the person responding on

18   behalf of the entity is under a duty to obtain and provide non-privileged information known to

19   anyone in the entity's employ or any former employees "employed by [the entity] at the time this

20   action commenced"); *see also* Fed. R. Civ. P. 33(b)(1)(B) (in answering interrogatories

21   propounded to a corporation, the officer or agent responding on its behalf "must furnish the

22   information available to the party.").

23              Defendants do not meet these standards.  First, SAS is a more convenient

24   _____

25   [3] Overall, based on Defendants' representations regarding the cost incurred to review and
26   produce documents, it appears the parties have spent roughly comparable amounts on those
     activities.  Declaration of Geoffrey M. Howard ("Howard Decl."), ¶4.

27   [4] Defendants only produced the last of SAS on March 6, 2009.  Polito Decl., ¶3.

28

1   information source for them.  They designed and maintained it as a central business tool, and

2   presumably understand its innumerable custom complexities.  To anyone else, including a Lotus

3   Notes expert hired by Oracle specifically to help understand SAS, it is a customized and highly

4   opaque database, which provides limited information in a disorganized manner that makes

5   navigation and analysis of the data quite complex.  *See* Declaration of Robert Schwentker

6   ("Schwentker Decl."), ¶¶1-9.  Because Defendants can far better understand SAS, the burden of

7   deriving the answer to Interrogatory 14 from SAS is not "substantially the same" for both

8   parties,[5] and Defendants' burden argument fails for that reason alone.  *See* Schwentker Decl., ¶6.

9          Second, as part of their convenience argument, Defendants claim that Oracle

10  wants them to summarize SAS's records, which they say Oracle can easily do.  Opp. at 20.  This

11  argument mischaracterizes both the Interrogatory and the work required to answer it.  If Oracle

12  could create the summary Defendants envision, Oracle would have done it by now.  For

13  example, to properly respond, Defendants' consultants or former employees would select a local

14  environment, review information about how that environment was used in SAP TN's six support

15  steps to create, test, or package fixes, and compare and supplement that information with other

16  substantive data and personal knowledge about both how SAP TN generally used local

17  environments and how it used this specific environment.  Oracle does not know where that

18  information resides in SAS.

19         To get this information requires interpretation, not summary.  In a summary, the

20  facts are evident from the record.  An interpretation requires specialized knowledge of the actual

21  activities reflected by the record, which Oracle by definition does not have and which

22  Defendants do (or did).  Oracle did not reach this conclusion lightly.  It spent countless attorney

23  and expert hours[6] analyzing Defendants' records to try to determine, for each local environment,

---

24

25  [5] Both parties have relied on Rule 33(d) in a number of interrogatory responses.  *See, e.g.,* Fuchs
     Decl., ¶12 & Exs. F-I.  Oracle does not assert that Rule 33(d) is an inappropriate tool, or that all
26  Defendants' Rule 33(d) responses are improper.  Interrogatories 13 and 14 are examples of
     situations where Rule 33(d) is not a proper or complete basis for response.

27  [6] Contrary to what Defendants state, Oracle did consult with the technical SAS expert provided

28                                                         (Footnote Continued on Next Page.)

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1   which customers received what kind of support through use of that environment.  *See* Howard

2   Decl., ¶4.

3            Since Defendants can more easily provide the information, the law requires them

4   to apply their special expertise and "all the information under [their] custody and control."

5   *Fresenius,* 224 F.R.D. at 651; *see also General Dynamics,* 481 F.2d at 1210.  Defendants have

6   not complied with this obligation to incorporate their (now) former employees' knowledge of

7   how SAP TN used local environments into their response to Interrogatory 14, despite paying

8   former SAP TN employees a monthly fee as litigation consultants to "occasionally help with

9   locating and understanding information."  Opp. at 17, fn. 24; Howard Decl., ¶5 & Ex. C.

10  Although they had and have unique access to these former employees and current consultants,[7]

11  Defendants apparently chose not to gather their crucial relevant knowledge and include it in their

12  response.  That failure renders their response fundamentally incomplete.  It is no excuse for

13  Defendants to contend that their voluntary decision to shut down SAP TN makes this knowledge

14  incorporation difficult.  Not only did Defendants make that decision long after Oracle first

15  moved to compel on Interrogatory 14, but they cannot escape their discovery obligations by

16  deliberately jettisoning a knowledge resource.

17           In sum, Defendants' arguments that undue burden precludes supplementation on

18  convenience grounds misses the point.  Not only is SAS incomplete, but since the burden of

19  deriving the answer to the Interrogatory is significantly less for Defendants, who have unique

20  access to individuals with the specialized knowledge necessary to unravel and patch together

21  _____

22  (Footnote Continued from Previous Page.)

23  by Defendants, as ordered by Judge Legge.  *See* Howard Decl., ¶4.

24  [7] Catherine Hyde asserts she has no personal knowledge and would rely on SAS to conduct such
    an analysis.  Hyde Declaration, ¶¶6-7.  But her testimony shows she is capable of greater

25  analysis when her recollection is refreshed.  *See* Motion at 15.  Oracle would certainly expect
    that the SAP TN consultants and former employees would consult with and analyze SAS in

26  generating their answer to Interrogatory 14.  The point is that those consultants and former
    employees could analyze the SAS data far better than Oracle.  *See also, e.g.,* Opp. at 17, fn. 25

27  (showing relevant knowledge of former employees and their familiarity with SAS); Howard
    Decl., ¶6 & Ex. D (December 6, 2007 Deposition of Shelley Nelson at 185:3-186:8).

28

1   SAS's incomplete records, Defendants cannot rely on SAS through Rule 33(d). They must

2   supplement their response with the additional knowledge to which they have access.

3                    **c.      Defendants' Conduct Caused The Burden**

4            Finally, Defendants assert that Oracle "should be required to assume the effort

5   associated with" its burden of proof. Opp. at 21. According to this argument, because Oracle

6   estimates a serious amount of harm, and because it must prove facts to support its claims, and

7   even though Defendants illegally used Oracle's IP for years without keeping good records,

8   Defendants should not have to provide facts they uniquely possess. Oracle is not insensitive to

9   burden concerns, but a $45-billion multi-national company that stole IP for years, kept lousy

10  records of it, and did not collect the information it did have at the right time, is not the usual

11  burden-shifting candidate. In this light, the requests place no undue burden of production on

12  Defendants. Their employees know where the information resides, and how to get it, as well as

13  how to fill in the gaps. The notion that it would take "thousands of hours" to extract the relevant

14  information seems highly unlikely given the expertise of the employees. Opp. at 21.

15           Moreover, Defendants have a higher hurdle for their undue burden argument.

16  Their failure to record and track this information in an accessible and organized way exacerbates

17  the burden, but does not excuse a response. *See Residential Constr., LLC v. Ace Prop. & Cas.,*

18  2006 U.S. Dist. LEXIS 80403, at *26 (D. Nev. 2006) ("In considering the burden imposed on a

19  party in responding to discovery, the Court should also consider whether the burden is a result of

20  the party's lack of an adequate filing system or method for locating requested information.").

21               **2.      For Similar Reasons, Interrogatory 13 Is Not Unduly
                           Burdensome**
22

23           Interrogatory 13 goes to the heart of Oracle's claims of illegal activity through

24  indiscriminate downloading in excess of customers' licenses. In it, Oracle asked Defendants to

25  identify, *pursuant to their own records*, referenced in their current response and other pleadings,

26  all downloads made in excess of a customer's license. To the extent Defendants admit improper

27  downloading, which they do, they need to specify which downloads they improperly took. To

28  the extent they can do no more, they need to say so under oath.

11                                          Case No. 07-CV-01658 PJH (EDL)

1                     **a.**        **Defendants Mischaracterize Interrogatory 13**

2                   Defendants make three flawed arguments in characterizing Interrogatory 13 that

3    stray from the language of the request and their own responses to it.  First, they say it should be

4    limited to information relied on in drafting Paragraph 15 of Defendants' Answer to Plaintiffs'

5    First Amended Complaint.  Opp. at 6-7.  But Interrogatory 13 relies on Defendants' own

6    language from their Answer to describe the category of information sought.  It asks Defendants

7    to describe materials that "have been downloaded beyond those that, according to TN's records,

8    related to applications licensed to the particular customer on whose behalf the downloads were

9    made, as alleged in ¶ 15 of Your Answer, ***including but not limited to*** Identifying the "records"

10   You referenced in making Your determination."  (emphasis supplied)  The quoted language in

11   the Interrogatory does not limit Defendants' response, but acts a starting point – the Interrogatory

12   explicitly seeks information "not limited to" what Defendants consulted in drafting their Answer.

13                  Second, Defendants now argue for the first time that Interrogatory 13 somehow

14   should be limited to a handful of customers.  Opp. at 6-7.  Defendants did not object on or

15   mention this ground in their original and supplementary Interrogatory responses or in meet and

16   confer.  To the contrary, Defendants' *own supplemental responses* cite to over a thousand pages

17   of customer contracts and hundreds of pages of onboarding documentation, discuss downloads

18   on behalf of customers in general, and make general narrative statements without limitation to

19   specific customers.  *See* Howard Decl., ¶2 & Ex. A.  These responses prove that Defendants, too,

20   view this request as applying to all customers and that Paragraph 15 of their Answer addressed

21   all customers (as it should).  In addition, Defendants long ago waived any such right to assert a

22   more limited interpretation.

23                  Third, Defendants also now assert for the first time that Oracle improperly seeks

24   the identity of those materials that "were downloaded using credentials of a customer not entitled

25   to those materials" and "which materials [SAP TN] improperly downloaded from Customer

26   Connection."  Opp. at 6-7.  However, Interrogatory 13 requests a description of all materials

27   "that have been downloaded beyond those, that, according to TN's records, related to

28   applications licensed to the particular customer on who behalf the downloads were made."  This

1    request encompasses the same information as "materials [SAP TN] improperly downloaded from

2    Customer Connection" and "downloaded using credentials of a customer not entitled to those

3    materials."  That is what the Interrogatory seeks and what Oracle moves to compel.

4                      **b.**        **Interrogatory 13 Is Not Unduly Burdensome**

5             Defendants argue that this request is too burdensome for two reasons:  it is

6    duplicative of Oracle's other discovery relating to downloads and it is "technically impossible"

7    for them to answer.

8             Both arguments fail.  Oracle's other downloading discovery, aimed at other

9    issues, is not duplicative.  That Defendants provided *different* discovery related to downloading

10   does not excuse them from answering this Interrogatory – there is no general subject matter

11   limitation here.  For example, Defendants provide a litany of other downloading discovery they

12   have provided.  *See* Opp. at 11.  Oracle concedes neither Defendants' characterization of this

13   discovery nor the completeness of their responses, but both are beside the point:  none of this

14   discovery identifies the materials SAP TN downloaded beyond those that, according to its

15   records, related to applications licensed to the particular customer on whose behalf the

16   downloads were made.  That is what Interrogatory 13 seeks.  Moreover, Defendants' claim that

17   they have provided the information sought by Interrogatory 13 in another context makes no sense

18   (if so, it could not be burdensome to provide).  In short, Oracle brings this motion to compel

19   *because* these other requests did not seek and have not provided the answers to the Interrogatory.

20            As for Defendants' complaint that the Interrogatory is burdensome because it is

21   impossible to answer, that too is wrong.  Over two years ago, Defendants admitted SAP TN

22   made inappropriate downloads.  *See* Howard Decl., ¶7 & Ex. E  (July 3, 2007 SAP Press Release

23   admitting the existence of "inappropriate downloads").  Obviously, Defendants themselves have

24   *already done* this analysis for at least a partial set of downloads, showing both that some part of

25   this data does exist and that the analysis is possible.  Oracle needs to tie Defendants' admission

26   about inappropriate downloads to actual, specific products and Registered Works.  Since

27   Defendants have already completed this precise analysis for at least some downloads, they

28   cannot claim it is burdensome to report that analysis to Oracle.

1    To the extent Defendants contend it is "technically impossible" to provide the

2 same information, based on their own records, for the millions of *other* downloaded files on their

3 computers, then that information is important too and they should provide it in a supplemental

4 sworn statement.  Indeed, in their Opposition, they state, "Defendants have always

5 acknowledged that there is no known technical way to specifically tie a downloaded item on

6 TN's systems to a Customer Connection ID and password."  Opp. at 7, fn 9.  Though, again, this

7 cannot be true for all downloads, given Defendants' admissions that some downloads were

8 inappropriate, if it is in fact true for the remainder, then Defendants should provide a sworn

9 statement to that effect.

10    Defendants' other arguments against Interrogatory 13 track those against

11 Interrogatory 14 and so are addressed by Section II(B)(1), above, and by Oracle's opening brief.

12 Motion at 14-16.  The Court should compel Defendants to supplement their response to

13 Interrogatory 13, at minimum by providing the factual backup to their admission of generally

14 improper downloading, and a sworn statement about their inability to provide similar facts for

15 the remainder.

16       **3.    Oracle Is Willing to Alleviate Defendants' Burden to the
              Extent Possible**

17

18    As noted in its opening brief and above, Oracle has been and is willing to work

19 with the Court and Defendants to alleviate their burden of response as much as possible, while

20 obtaining the evidence it needs:

21    •  For Interrogatory 14, the Court could fashion reasonable limits on the amount of time

22       that Defendants, their former employees, and their current consultants would spend

23       on responding to the Interrogatory by analyzing SAP TN's use of local environments.

24       Or, it could set a specified number of environments, let Oracle choose them, require a

25       full response, and then allow Oracle to extrapolate from those answers.

26    •  For Interrogatory 13, Defendants could significantly reduce their burden by

27       explaining how they concluded that certain downloads were inappropriate, identifying

28       those downloads by file and product, and then declare that they do not have the ability

14

1      to provide the same information as to the remaining downloads on SAP TN's

2      systems.

3   Oracle is open to these and any other creative ideas the Court may order to resolve the respective

4   concerns over this important issue, and will be ready to discuss such alternatives at the August 4

5   hearing.

6         **C.      Oracle's Damages-Related Discovery Requests**

7                As Defendants' Opposition Brief acknowledges, Defendants agreed to produce

8   documents responsive to Oracle's damages-related discovery requests after forcing Oracle to

9   move to compel.  Assuming Defendants produce the promised information on the promised

10  schedule, the issues identified in Oracle's Opening Brief on damages-related discovery will be

11  resolved.

12  **III.    CONCLUSION**

13               Defendants cannot point to incomplete productions when they have additional

14  responsive knowledge they have refused to tap, and any burden associated with this analysis is of

15  Defendants' own making.  Defendants' reliance on Rule 33(d) for Interrogatories 13 and 14 is

16  deficient and must be corrected.

17  DATED:  July 21, 2009

18                                    Bingham McCutchen LLP

19

20

21                          By:_____/s/_____

22                                    Geoffrey M. Howard
                                      Attorneys for Plaintiffs
23                                    Oracle USA, Inc., Oracle International
                                      Corporation, and Oracle EMEA Limited

24

25

26

27

28