

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com; ewallace@jonesday.com
6
   Tharan Gregory Lanier (SBN 138784)
7  Jane L. Froyd (SBN 220776)
   JONES DAY
8  1755 Embarcadero Road
   Palo Alto, CA  94303
9  Telephone:    (650) 739-3939
   Facsimile:    (650) 739-3900
10 tglanier@jonesday.com; jfroyd@jonesday.com

11 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
12 JONES DAY
   717 Texas, Suite 3300
13 Houston, TX  77002
   Telephone:    (832) 239-3939
14 Facsimile:    (832) 239-3600
   swcowan@jonesday.com; jlfuchs@jonesday.com
15
   Attorneys for Defendants
16 SAP AG, SAP AMERICA, INC., and
   TOMORROWNOW, INC.
17

18               UNITED STATES DISTRICT COURT

19             NORTHERN DISTRICT OF CALIFORNIA

20               SAN FRANCISCO DIVISION

21 ORACLE USA, INC., *et al.,*              Case No. 07-CV-1658 PJH (EDL)

22              Plaintiffs,               **DEFENDANTS' MOTION FOR
                                          SANCTIONS PURSUANT TO FED. R.
23      v.                                CIV. P. 37(c) AND 16(f)**

24 SAP AG, *et al.*,                       **REDACTED**

25              Defendants.

26                                        Date:  August 18, 2009
                                          Time:  TBD
27                                        Courtroom:  E, 15th Floor
                                          Judge:  Hon. Elizabeth D. Laporte
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.    FACTS ............................................................................................................... 3

    A.    Oracle's Failure To Disclose Its Damages Theories ............................... 3

        1.    Oracle's Deficient Initial Disclosures ......................................... 3

        2.    Oracle's Deficient Response To Interrogatory No. 5 ................... 4

    B.    Oracle's Self-Imposed Limits On The Scope Of Damages Discovery ................... 5

        1.    Oracle's Refusal To Produce Documents Beyond These Limits ............... 6

        2.    Oracle's Production Of Customer Contract Files ....................... 8

        3.    Oracle's Production Of Customer-Specific Financial Reports ................... 8

        4.    Oracle's Search Terms ................................................................ 8

        5.    The Parties' Expanded Discovery Timeline Agreement ............ 9

        6.    Other Discovery ........................................................................ 10

    C.    The Testimony Of Oracle's Executives And Oracle's About-Face On Its Discovery Limitations ................................................................... 10

    D.    Oracle Belatedly Discloses Its Intent To Pursue Damages Claims Inconsistent With The Limitations It Has Imposed In Discovery ................... 11

        1.    Oracle's Belated Supplemental Disclosures ............................. 12

        2.    Oracle's Belated Response To Interrogatory No. 5 ................... 13

III.    ARGUMENT .................................................................................................. 14

    A.    The Relevant Legal  Standards ............................................................. 14

        1.    Oracle's Obligations Under Rule 26 ......................................... 14

        2.    Preclusion Is Warranted Unless Failure To Comply With Rule 26 Is Substantially Justified Or Harmless ......................... 15

    B.    Oracle's Failure To Comply With Rule 26 Was Not Substantially Justified ....... 16

        1.    Oracle Had The Relevant Information Before Even Filing The Complaint ................................................................................. 16

            a.    Alleged Price Reductions For Non-TN Customers ..................... 16

            b.    Alleged Lost License Revenue ...................................... 17

        2.    Oracle's Claim That It Has Cured The Deficiencies Is False ................... 18

        3.    Oracle Ignored The Court's Directive That Damages Discovery Proceed ................................................................................... 20

    C.    Oracle's Conduct Is Neither Harmless Nor Curable ............................ 21

        1.    There Is Insufficient Time Even Under The Extended Schedule For Defendants' Expert To Complete An Analysis Of Oracle's New Claims ...................................................................................... 21

        2.    Oracle Cannot Complete Production Of The Relevant Data Under The Current Schedule ........................................................... 23

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

IV.    CONCLUSION ................................................................................................................ 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Cambridge Electronics Corp. v. MGA Electronics, Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) ............................................................................... 18, 19, 20

*City and County of San Francisco v. Tutor-Saliba*,
218 F.R.D. 219 (N.D. Cal. 2003) ............................................................................... 14, 17, 18

*Evenflow Plumbing Co., Inc. v. Pacific Bell Directory*,
No. C-3-04-CV-00795 EDL, 2005 U.S. Dist. LEXIS 46822 (April 26, 2005 N.D. Cal.) ...... 15

*Hsieh v. Peake*,
No. C 06-5281 PJH, 2008 U.S. Dist. LEXIS 23649 (Mar. 25, 2008 N.D. Cal.) ................... 15

*Payne v. Exxon Corporation*,
121 F.3d 503 (9th Cir. 1997) ............................................................................................... 24

*Reynoso v. Construction Protective Servs., Inc.*,
No. 06-56381, 2008 U.S. App. LEXIS 19681 (Sep. 16, 2008 9th Cir.) ............................... 21

RULES

Fed. R. Civ. P. 16(f) ....................................................................................................... passim

Fed. R. Civ. P. 26 ........................................................................................................... passim

Fed. R. Civ. P. 26(a)(1)(A)(iii) ...................................................................................... 14, 17

Fed. R. Civ. P. 26(e)(1) .................................................................................................. 14, 15

Fed. R. Civ. P. 33(d) .............................................................................................................. 5

Fed. R. Civ. P. 37(c) .................................................................................................... 1, 3, 20

Fed. R. Civ. P. 37(c)(1) ........................................................................................................ 15

OTHER AUTHORITIES

*Moore's Federal Practice* § 26.22[4][c] .............................................................................. 14

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 18, 2009, at a time to be determined by the Court, in Courtroom E, 15th Floor, 450 Golden Gate Avenue, San Francisco, Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. ( "Defendants") will move the Court for an order for sanctions pursuant to Fed. R. Civ. P. 37(c) and 16(f).

The motion is based on the Notice of Motion, Motion, and Memorandum of Points and Authorities incorporated herein, and on the accompanying declarations of Elaine Wallace and Stephen F. Clarke.

## RELIEF REQUESTED

Defendants seek an order pursuant to Rules 37(c) and 16(f) of the Federal Rules of Civil Procedure precluding Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") from presenting evidence on a motion, at a hearing, or at trial in support of any claim that Oracle's lost profits damages include: (1) alleged lost profits relating to customers that were not customers of Defendant TomorrowNow, Inc.; (2) alleged lost profits relating to license revenues, as opposed to support revenues; and/or (3) alleged lost profits relating to products that were not supported by Defendant TomorrowNow, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion is necessary because until very recently Oracle has refused or otherwise failed to produce documents and other discovery relating to certain new categories of damages Oracle has recently disclosed that it intends to seek in this case.  Even though Oracle has now begun to produce a few documents related to its new damage claims, it is way too little, way too late.  The gravamen of Defendants' complaint in this sanctions motion is discovery abuse.  Thus, the relevant court orders in this case, applicable rules, and corresponding case law (including cases authored by Judge Hamilton and Judge Laporte) establish that this motion is one on which the discovery magistrate should rule.

For two years Defendants sought meaningful disclosure of Oracle's damages claims. Oracle refused to provide it.  In addition, Oracle imposed unilateral limits on the scope of

1   damages discovery that it claimed were consistent with its intended damages claims.  From the

2   outset, Oracle insisted that damages discovery would be limited to support revenue from

3   customers allegedly lost to TomorrowNow, Inc. ("TN").  Oracle refused to provide discovery on

4   any other customers, on license revenue, or on any product not supported by TN.

5          Defendants (and Oracle) have relied on these limitations.  They have impacted virtually

6   every aspect of damages discovery in the case, from the search terms the parties use for locating

7   and producing responsive documents to the types of documents to be produced pursuant to the

8   parties' agreement late last year to expand the relevant time period for discovery.  Millions of

9   pages of data have been produced based on the assumption that Oracle's lost profits claim is

10  limited to support revenue from customers allegedly lost to TN.  Many millions of additional

11  pages have *not* been produced based on Oracle's position that they are beyond the scope of

12  relevant discovery.

13         All that changed in April and May 2009 when Oracle executives, including CEO Larry

14  Ellison, testified that support revenue allegedly lost to TN was not the primary harm to Oracle,

15  but merely the "tip of the iceberg."  The real harm, according to these executives, was from

16  alleged lost license revenue and from alleged price reductions to customers that never left Oracle

17  or became TN customers.

18         Shortly after this testimony, Oracle's lawyers did an about-face on the scope of its

19  damages claims and the scope of relevant discovery.  Unable to deny outright the limitations it

20  had previously imposed, Oracle claimed to have "cured" any deficiencies in its production – or at

21  least that it would try to cure them.  Oracle's about-face on damages discovery comes too late

22  and, if permitted, will unreasonably burden and harm Defendants' ability to rebut Oracle's new

23  damage claims – Oracle cannot possibly produce by the close of discovery the enormous amount

24  of data needed for Defendants to have a fair opportunity to analyze and rebut these new claims.

25  Even if it could, Defendants' damages expert estimates that it would require an additional a year

26  or more past the discovery deadlines in this case to analyze the data.  The case schedule and trial

27  settings in this case have already been adjusted to accommodate Oracle's claimed discovery

28  needs and expanded liability theories.  Basic principles of fundamental fairness and due process

1    dictate that Oracle's discovery abuse with respect to its damages claims cannot serve the basis to

2    further extend any deadlines in this case.  The only fair and equitable resolution is to preclude

3    Oracle from presenting any evidence on claims for which it denied discovery in this case for over

4    two years.

5                                              **II.  FACTS**

6    **A.       Oracle's Failure To Disclose Its Damages Theories.**

7              **1.       Oracle's Deficient Initial Disclosures.**

8              Oracle failed to articulate any specific damages theory in its Initial Disclosures served on

9    August 16, 2007.  Instead, its disclosure was limited to four general categories of alleged harm:

10   (1) "Lost profits" (2) "Lost or harmed prior, existing and potential customer relationships" (3)

11   "Monies to be restored to Oracle due to Defendants' unfair business practices" and (4) "Lost

12   goodwill and reputation."  Wallace Decl. ¶ 1, Exh. A, at 8.[1]  Oracle objected to all further

13   disclosure as "premature."  *Id.* at 9.  With respect to documents, Oracle identified only two

14   categories relevant to damages: customer license agreements and – significantly for this motion –

15   documents relating to "[t]he loss of customer *support revenue* …."  *Id.* at 7 (emphasis added).[2]

16   Oracle made no reference in its Initial Disclosures to lost license revenue, which it now claims

17   was the primary harm, or to discounts and pricing policies it now claims impacted every one of its

18   10,000 PeopleSoft and J.D. Edwards customers.

19             Subsequently, for almost two years, Defendants repeatedly asked Oracle for a meaningful

20   disclosure of its damages theories.  In January 2008, Defendants raised the issue with Special

21   Discovery Master, Judge Legge, in their first motion to compel.  Wallace Decl. ¶ 2, Exh. B, at 7

22   ("Plaintiffs have stonewalled discovery into their alleged damages on grounds that the 'the law

23   does not require Oracle to prematurely state all the bases for its damages' …  Postponing this

24   discovery would prejudice defendants and the defense damages expert …").  But Oracle

25   continued to refuse, characterizing Defendants' discovery requests as "premature" although the

26   _____

27   [1] All references to "Wallace Decl." are to the Declaration of Elaine Wallace in Support of
     Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f), filed herewith.

28   [2] The only other category relevant to damages was described generically as documents
     relating to "[d]amages and harm to Oracle from Defendants' theft."  *Id.*

1   case had been pending for almost a year.  *Id.* at ¶ 3, Exh. C, at 10-13.  Judge Legge denied

2   Defendants' motion, recommending that damages discovery be deferred.  *Id.* at ¶ 4.

3            Shortly after, the case was reassigned to Judge Hamilton, who declined Judge Legge's

4   recommendation and made clear that damages discovery would not be deferred.  Wallace Decl. ¶

5   5.  This had little impact on Oracle, however, as it continued to stonewall on damages discovery

6   and refused to disclose its damages theories.  When the case was referred to this Court for

7   discovery matters, Defendants raised the problem in the parties' Joint Discovery Conference

8   Statements.  *Id.* at ¶ 6.  This Court recognized the issue in its July 3, 2008 order regarding

9   discovery limits.  Dkt. 107 at 3 ("Defendants point out that Plaintiffs have not provided any real

10  analysis of their damages ….").  Defendants also raised the problem in connection with the

11  mediation and settlement conferences ordered by the Court because Oracle's refusal to provide a

12  meaningful disclosure was proving to be a major obstacle to resolution of the case.  Wallace Decl.

13  ¶ 6.

14           **2.       Oracle's Deficient Response To Interrogatory No. 5.**

15           Defendants did not rely solely on Oracle's initial disclosures to discover the nature and

16  extent of Oracle's damages claims.  On the first day of discovery, Defendants served the

17  following interrogatory:

18                    Describe in as much detail as possible how Oracle believes any
                     activity alleged in the Complaint has damaged it, including how
19                    Oracle was damaged by each allegedly improper Download
                     identified in the response to Interrogatory No.4 and, if Oracle
20                    claims to have lost any customer as a result of any activity alleged
                     in the Complaint, all facts and inferences upon which Oracle bases
21                    that claim for each customer allegedly lost.

22  Wallace Decl. ¶ 7, Exh. D, at 21.  Oracle responded on September 14, 2007 with a list of general

23  categories of harm, but no details or analysis of its damages claims.[3]  With respect to lost

24  customers, Oracle objected to the interrogatory as premature, but referred to the TN customers

25  named in the complaint and documents produced for those customers, "including correspondence

26  related to the customer's *support renewal*."  *Id.* at 24 (emphasis added).

---

27       [3] For example, "diminution of Oracle's competitive advantage," "loss of profits from sales
    or licenses to current and potential customers of Oracle support services and software programs"
28   and "loss of the revenues, earnings, profits, compensation, and benefits that SAP obtained from
    the unlawful and unfair use of Oracle's stolen property."  *Id.* at 22.

1    Defendants asked Oracle to supplement its response to Interrogatory No. 5 to provide a

2    meaningful description of its damages claims.  After extensive meet and confer, Oracle

3    supplemented its response on October 26, 2007.  Wallace Decl. ¶ 7, Exh. D.  However, the

4    supplement consisted of no more than a reference, pursuant to Rule 33(d), to the customer

5    contract files Oracle had produced for TN customers.  *Id.* at 24.  Defendants raised this in their

6    January 2008 motion to compel.  Judge Legge denied the motion and recommended deferring

7    damages discovery instead.  *Supra* at 3-4.  As noted above, Judge Hamilton subsequently rejected

8    this recommendation but this had little impact on Oracle, which did not supplement either its

9    Initial Disclosures or its response to Interrogatory No. 5.

10   **B.      Oracle's Self-Imposed Limits On The Scope Of Damages Discovery.**

11   In addition to refusing to disclose its damages theories, Oracle imposed certain limitations

12   on damages discovery.  Specifically, Oracle limited discovery to: (1) TN customers; (2) support

13   revenue; and (3) products supported by TN.  Oracle refused to provide discovery relating to non-

14   TN customers, alleged lost license revenue, and products other than the PeopleSoft and J.D.

15   Edwards supported by TN.

16   Defendants' efforts to obtain discovery beyond these limitations were met with objections,

17   refusals to produce, and complaints to the Court.  For example, in the parties' June 24, 2008 Joint

18   Discovery Conference Statement, Oracle complained that Defendants' Requests for Production

19   ("RFPs") seek discovery "far afield from the products and issues in the case," including RFP No.

20   67, which Oracle complained seeks discovery on "Oracle products and services completely (and

21   admittedly) unrelated to the products at issue in this case.").  Dkt. 102, at 7, n. 4.  In the same

22   document, Oracle described the scope of relevant information as follows:

23   > Oracle's relevant information and custodians are essentially limited
     > to its copyright registrations, its relevant customer licenses, and *the*
24   > *revenue streams reasonably associated with its customers who left*
     > *for SAP TN* (though Defendants seek much more).
25
     *Id.* at 6-7 (emphasis added).
26

27

28

1    Defendants have relied on the position Oracle has taken in discovery.  As discussed

2  below, the limitations it imposed at the outset have impacted virtually every aspect of damages

3  discovery in the case.

4    **1.    Oracle's Refusal To Produce Documents Beyond These Limits.**

5    On the first day of discovery, Defendants served RFPs relating to Oracle's damages

6  claims.  Wallace Decl. ¶ 8, Exh. E.  These RFPs include the topics on which Oracle has refused to

7  provide discovery.

8    Two of the RFPs relate to Oracle's damages claims generally, without limitation to

9  particular customers, products, or revenue sources.  In response, Oracle refused to produce

10  documents other than those relating to support for PeopleSoft and J.D. Edwards products for TN

11  customers:

12    **RFP No. 70:**  All Documents relating to any alleged loss of
       revenues or profits by Oracle as a result of the conduct alleged in
13       the Complaint.

14    **RFP No. 107:**  All Documents relating to the allegation in
       paragraph 92 of the Complaint that "Oracle has suffered injury,
15       damage, loss, and harm, including, but not limited to, loss of profits
       from sales to current and potential customers of Oracle support
16       services and licenses for Oracle's software programs."

17    **Oracle's Response to Both RFPs:**  Subject to and without waiving
       these objections, Oracle responds that it will search for and produce
18       non-privileged Documents sufficient to show Oracle's revenues,
       costs, and profit margins *for support or maintenance services*
19       *relating to legacy PeopleSoft and J.D. Edwards enterprise software*
       *applications for which Oracle has alleged that defendants*
20       *Downloaded Software and Support Materials from Oracle's*
       *systems,* to the extent such Documents exist.  Oracle will provide its
21       damages analysis during the damages and expert discovery stages
       of this litigation.

22

23  Wallace Decl. ¶ 8, Exh. E (emphasis added).[4]

24    Three of the RFPs (Nos. 111 through 113) relate to alleged lost profits generally, without

25  limitation to particular sources of revenue.  In response, Oracle refused to produce documents

26  beyond those relating to "its expectancy of receiving ongoing *support* revenue ….":

27    _____

28    [4] Defendants have not repeated Oracle's full list of objections here.  A copy of Oracle's
   full response to each RFP is attached as Exhibit E to the Wallace Declaration.

**RFP No. 111:**  All Documents relating to the allegation in paragraph 131 of the Complaint that "Oracle has and had an expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software."

**RFP No. 112:**  All Documents relating to the allegation in paragraph 132 of the Complaint that "[t]hese relationships contained the probability of future economic benefit in the form of profitable support service contracts and software licenses."

**RFP No. 113:**  All Documents relating to the allegation in paragraph 132 of the Complaint that "[h]ad Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Oracle support customers would have initiated, renewed, or expanded support contracts and software licenses with Oracle rather than Defendants."

**Oracle's Response to Each RFP:**  Subject to and without waiving these objections, Oracle responds that it will search for and produce non-privileged Documents relating *to its expectancy of receiving ongoing support revenue* from its existing support customers, to the extent such Documents exist.

Wallace Decl. ¶ 8, Exh. E (emphasis added).

Finally, two of the RFPs (Nos. 67 and 68) relate to products other than those supported by TN.  Oracle refused on burden and relevance grounds to produce documents responsive to either, claiming that such products "are not related to Oracle's claims or defendants' defenses":

**RFP No. 67:**  For the shortest time interval available (e.g., monthly, quarterly, or annually), Documents sufficient to show Oracle's revenues, costs, and profit margins for products other than those referred to in the Complaint or at issue in this litigation, and services relating to such products.

**RFP No. 68:**  For the shortest time interval available (e.g., monthly, quarterly, or annually), Documents sufficient to show Oracle's revenues, costs, and profit margins for the Named customers and TN Customers for products other than those referred to in the Complaint or at issue in this litigation, and services relating to such products.

**Oracle's Response to Both RFPs:**  Oracle objects to this Request on the grounds stated in its General Objections.  Oracle further objects that this Request is overbroad, unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence, *as Oracle's revenues, costs, and profit margins for products and services other than those relating to legacy PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has alleged that defendants Downloaded Software and Support Materials from Oracle's systems are not related to Oracle's claims*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> *or defendants' defenses*.  Oracle further objects to this Request on
> the ground that the definition of "TN Customer" is overbroad and
> includes many entities whose relationship with Oracle is not
> relevant to the issues in this litigation.  Subject to and without
> waiving these objections, Oracle responds that it will not produce
> Documents in response to this request.

Wallace Decl. ¶ 8, Exh. E (emphasis added).  Oracle has never amended or supplemented its

responses to any of these RFPs.

**2.    Oracle's Production Of Customer Contract Files.**

Both sides agreed early in discovery to produce contract files for customers allegedly lost

to TN.  Wallace Decl. ¶ 9.  Based on Oracle's position that non-TN customers are irrelevant,

neither side has produced contract files for non-TN customers.  *Id.*

Despite early representations to the Court that its production of contract files was

complete or nearly complete, it has taken Oracle almost two years to produce them.  Wallace

Decl. ¶ 9.  Its delay in producing them has been the subject of numerous meet and confer

communications and discovery conferences with the Court.  *Id.*  Oracle was still producing them

in June 2009.  *Id.*

**3.    Oracle's Production Of Customer-Specific Financial Reports.**

In August 2008, following several months of meet and confer, Oracle agreed to produce

reports showing the support purchase history of customers allegedly lost to TN.  Wallace Decl.

¶10, Exh. F.  Oracle expressly limited its production of these customer-specific financial reports

to TN customers (which it described as the "relevant customers") and to the "PSFT and JDE

products each customer was licensed to."  *Id.*  Oracle's delay in producing these reports was the

subject of numerous meet and confer communications and discovery conferences.  *Id.*  Oracle did

not "complete" production of its reports until April 2009.[5]  *Id.*

**4.    Oracle's Search Terms.**

A large portion of Oracle's production has been made based on an agreed list of search

terms that was initially developed by Oracle then supplemented by Defendants.  Wallace Decl. ¶

---

[5] Oracle's production of customer-specific reports is still missing or incomplete for a
significant number of TN customers because, according to Oracle, the relevant data resides on
legacy systems that are incapable of generating the reports.  *Id.*

SFI-611932v1

- 8 -

11; *see also* June 24, 2008 Joint Discovery Conference Statement (Dkt. 102) at 1 ("On the issue of search terms, Oracle has developed a list and contends that testing confirms the list captures virtually all responsive, non-privileged documents."). Oracle has insisted that its search terms capture all, or virtually all, relevant documents:

> For months, Oracle has argued that the Parties can and should use search terms to limit the burden of document review in this case without unduly sacrificing relevance. Oracle's arguments are based on the set of search terms related to its sales custodians it developed during review which, when applied, limited their documents by approximately 20%. Before doing so, Oracle validated these terms against the custodians, which had already been reviewed on a document-by-document basis, and, after careful refinement, the terms hit 100% of the non-privileged documents that had been tagged for production.

*Id.* at 9.

Oracle's search term list includes the names of customers allegedly lost to TN. Wallace Decl. ¶ 11. It does *not*, however, include the names of non-TN customers because Oracle has always insisted that non-TN customers are irrelevant. *Id.* Thus Oracle's production inevitably *excludes* a significant number of documents relevant to non-TN customers. *Id.* With two years of discovery already past and less than five months left to the close of fact discovery, it would be impossible to rectify this problem within the current schedule. For example, Oracle has already produced documents (or stated that no responsive documents exist) for approximately 80 of the 103 custodians identified by Defendants to date. *Id.*

### 5. The Parties' Expanded Discovery Timeline Agreement.

In November 2008, at Oracle's request, the parties agreed to expand the relevant discovery time period from January 1, 2004 through March 22, 2007 to January 1, 2002 through October 31, 2008. Wallace Decl. ¶ 12, Exh. G. The agreement specifies the types of documents to be produced for the expanded time periods. Customer related documents are expressly limited to TN customers.[6] *Id.* At no time during the parties' negotiations regarding the agreement did Oracle indicate that it believed non-TN customers to be relevant.

---

[6] For the earlier time period, customer related documents are defined as "contracts and licensing for TN customers and related emails/negotiations …key custodian documents re early TN customers." *Id.* For the later time period, customer related documents are limited to "TN/SAP customers," which is defined as "those customers involving at least one of the

1          6.      **Other Discovery.**

2          Oracle's limitations have impacted damages discovery in many other ways as well. For

3    example, production of entire categories of documents has been limited to the subject matters

4    Oracle said were relevant to its damages theories. *See, e.g.,* Wallace Decl. ¶ 10, Exh. F (limiting

5    Oracle's production of price lists, price calculators, and pricing policies to "*the products at issue*

6    *in the litigation*, for the years 2002 to present") (emphasis added). In addition, Oracle refused to

7    provide Rule 30(b)(6) testimony on competition between Oracle and SAP generally, unrelated to

8    TN. *Id.* at ¶ 13, Exh. H (refusing to provide Rule 30(b)(6) testimony on "Oracle's ongoing

9    competition with SAP" on the ground that it is not relevant and "vastly expands the discovery

10   burdens in this case"). As discussed below, certain aspects of the competition between Oracle

11   and SAP are relevant to analyzing Oracle's new claim that it lost actual or prospective customers

12   as a result of TN's activities, even if those customers never became TN customers. Similarly,

13   Oracle demanded that Defendants remove individuals from the list of Oracle custodians because

14   they were not involved in competitive activities directly related to TN. Wallace Decl. ¶ 14, Exh.

15   I. Based on the fact that Oracle was acting in a manner consistent with limiting the scope of its

16   damages claims, Defendants agreed to remove them. *Id.*

17   **C.     The Testimony Of Oracle's Executives And Oracle's About-Face On Its Discovery**

18          **Limitations.**

19          In April and May 2009, Defendants deposed Oracle executives Larry Ellison, Juergen

20   Rottler, and Charles Phillips. The testimony of these witnesses regarding alleged harm to Oracle

21   is inconsistent with the positions Oracle has taken in discovery.                REDACTED

22

23

24

25

26
     ───────────────────
27   (continued…)

28   following: (a) all TN customers; (b) Safe Passage deals with TN as a component; or (c) SAP sales
     to TN customers after acquisition of TN." *Id.*

REDACTED

As discussed below, shortly after this testimony by its senior executives, Oracle did an about-face regarding the limitations it has imposed on damages discovery.  All of this alleged harm that Ellison, Phillips, and Rottler described was known to Oracle when it filed this case in March 2007.  The relevant discovery rules and applicable case law simply do not permit a plaintiff to delay production of damages discovery for over two years and then dump documents, data, and other information on the defendant just a few months before the close of discovery.

**D.   Oracle Belatedly Discloses Its Intent To Pursue Damages Claims Inconsistent With The Limitations It Has Imposed In Discovery.**

On May 14, 2009, Defendants sent a letter reminding Oracle of its obligation to supplement its initial disclosures, including "a computation of each category of damages" and the documents "on which each computation is based," by the May 22 deadline.[7]  Wallace Decl. ¶ 18, Exh. M.  On May 19, Defendants sent a second letter to Oracle reminding it of its obligation to supplement its written responses to Defendants' damages related RFPs by the May 22 deadline as well.  *Id.* at ¶ 19, Exh. N.  The May 19 letter summarized the limitations Oracle has imposed on

_____

[7] May 22, 2009 was the last day to supplement disclosures and discovery responses under the schedule then in effect.  On June 11, 2009, Judge Hamilton issued an order extending that date to December 4, 2009.  Dkt. 325.

1    damages discovery and requested confirmation that Oracle would not pursue damages claims

2    inconsistent with those limitations.  *Id.*

3           On May 22, Oracle responded with a letter acknowledging the deficiencies in its Initial

4    Disclosures and discovery responses, but claiming that the deficiencies had been or would be

5    cured.  Wallace Decl. ¶ 20, Exh. O.  Oracle stated its intent, notwithstanding its discovery

6    limitations, to pursue damages relating to non-TN customers, alleged lost license revenue, and

7    products not supported by TN.  *Id.*  Oracle also indicated that it now planned to produce,

8    belatedly, documents relating to these topics.  *Id.*

9           **1.      Oracle's Belated Supplemental Disclosures.**

10          On May 22, 2009, almost two years after serving its Initial Disclosures, Oracle served its

11   Supplemental and Amended Initial Disclosures (the "Supplemental Disclosures").  The

12   Supplemental Disclosures contain an expanded list of categories of damage, including several

13   newly disclosed categories that are inconsistent with the limitations Oracle has imposed on

14   discovery.  Wallace Decl. ¶ 21, Exh. P, at 44-45.  For example, despite having limited discovery

15   to TN customers, Oracle now seeks damages from alleged harm to customer relationships "*even*

16   *where they did not result in a loss of a customer support contract or software licensing*…."  *Id.* at

17   44 (emphasis added); *see also id.* at 47 (stating that Oracle's lost profits claim "will encompass

18   the lost profits associated with support customers who left Oracle, PeopleSoft or J.D. Edwards for

19   SAP and TN, service-related discounts required to compete against SAP and TN, and lost license

20   sales and license discounts associated with competition with SAP and TN.").

21          Similarly, despite having limited discovery to support revenues for the products at issue in

22   the case, Oracle now seeks alleged lost license revenue, including for products never supported

23   by TN.  Wallace Decl. ¶ 21, Exh. P, at 44 ("lost, diminished or delayed current and prospective

24   customer revenues and profits, including as it relates to support and maintenance and *software*

25   *applications licensing*") (emphasis added); *see also id.* at 45 (referring to "reputational harm").[8]

26

27   _____

28          [8]                                              REDACTED
                                 REDACTED

                                                                  DEFS' REDACTED MOT. FOR SANCTIONS
                                                                         AND PROTECTIVE ORDER
     SFI-611932v1                        - 12 -                         Case No. 07-CV-1658 PJH (EDL)

Oracle also claims a "host of other damages attested to by Oracle witnesses."  Wallace Decl. ¶ 21, Exh. P, at 45.  As an example, Oracle cites Juergen Rottler's testimony regarding "the abandonment of existing PeopleSoft customer contract step-up renewal price escalations, the early adoption and generous terms of Oracle's Lifetime Support and Applications Unlimited programs and additional spends on customer support enhancements."  As discussed above, this testimony is inconsistent with the limitations Oracle has imposed in discovery.[9]

Finally, the Supplemental Disclosures make clear that Oracle's damages expert intends to rely on documents responsive to the RFPs above that Defendants requested two years ago and Oracle refused to produce.  Wallace Decl. ¶ 21, Exh. P, at 48 ("Should the current schedule remain in place, Oracle will also be providing additional evidence relied upon by its experts in conjunction with its damages expert report, including on the purchasing history of its PeopleSoft and JDE customer base post-acquisition."); s*ee also id.*, ¶ 20, Exh. O, at 3 (May 22, 2009 letter from Oracle's counsel stating that Oracle *now* intends to search for and produce license sales information comparable to the support sales information already produced).  Oracle continues to withhold those documents today, even though it was purportedly prepared to produce its expert report on June 22, 2009, the date reports were due under the schedule in effect at the time of the Supplemental Disclosures.[10]  Wallace Decl. ¶ 21, Exh. P, at 48; *see also* Dkt. 82.

### 2.   Oracle's Belated Response To Interrogatory No. 5.

As with its initial disclosures, Oracle failed to supplement its response to Interrogatory No. 5 until May 22, 2009, the last day to supplement under the schedule then in effect. Wallace Decl. ¶ 7, Exh. D.  Its supplemental response consists primarily of an objection to Defendants' request for supplementation to the extent that it "would require Oracle to summarize the documents and testimony provided on this subject …."  *Id.* at 24-25.  Beyond that, it contains

---

[9] This motion does not address each category of damage identified in the Supplemental Disclosures.  The motion is limited to what Oracle characterizes as its lost profits claims, and does not extend to its "infringers' profits"/unjust enrichment claims, its hypothetical license theory, or alleged damage to computer systems or data.  Defendants do not concede that any of these other damages categories or theories are proper or timely, but will address those by separate motion if necessary.  For example, Oracle's hypothetical license theory will be the subject of Defendants' Rule 56 motion to be filed on August 26th.

[10] Judge Hamilton did not extend the case schedule until June 11.  Dkt. 325.  Oracle clearly already knows which documents its expert will rely on.

only vague references to, for example, "delayed customers' purchases" and "unreasonable negotiations" by customers.  It is devoid of specific details, such as which customers delayed which purchases, or which customers were provided discounts and of how much.  It is also, of course, inconsistent with the limitations Oracle has imposed on damages discovery.

### III.  ARGUMENT

**A.      The Relevant Legal  Standards.**

       **1.      Oracle's Obligations Under Rule 26.**

Rule 26 requires a plaintiff to include in its initial disclosures "a computation of each category of damages claimed" and to produce all non-privileged documents "on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Guidance as to the adequacy of a plaintiff's damages disclosures "must be gleaned from Rule 26(a)'s purpose," which is to accelerate the exchange of information needed to make an informed decision about settlement, prepare for trial, and assist the parties in focusing and prioritizing their organization of discovery. *City and County of San Francisco v. Tutor-Saliba*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003). Given these purposes, the initial disclosure must contain more than just broad types of damage; a detailed specification and at least "some analysis" is required.  *Id.*  Moreover, a plaintiff is not excused from making its disclosures because it has not yet completed its analysis.  *Moore's Federal Practice* § 26.22[4][c] (plaintiff is obliged to disclose to the other parties the best information then available to it, however limited and potentially changing that may be).

A plaintiff may not defer all disclosure until expert reports are due.  A plaintiff must also supplement its damages disclosures and discovery responses as discovery progresses.  Rule 26(e)(1) requires timely supplementation of initial disclosures and discovery responses whenever the disclosing party learns that the disclosure or response is incomplete or incorrect and the additional or corrected information has not otherwise been made known during discovery.  Fed. R. Civ. P. 26(e)(1); *see also Tutor-Saliba*, 218 F.R.D. at 222 ("the Court contemplates that Plaintiffs will update its disclosure and provide greater detail as to its calculations as discovery progresses … Once document production has been substantially completed, however, Plaintiffs

1   will have to provide more detailed disclosure of their calculations either by way of *Rule 26*

2   disclosures or through interrogatory responses.").

3         **2.**       **Preclusion Is Warranted Unless Failure To Comply With Rule 26 Is**

4                                 **Substantially Justified Or Harmless.**

5         If a party fails to disclose or timely supplement the information required by Rule 26, the

6   Court may impose sanctions under Rule 37(c)(1).  These include the "automatic" sanction of

7   preclusion of evidence unless the failure to disclose or timely supplement was "substantially

8   justified or is harmless."  Fed. R. Civ. P. 37(c)(1) ("the party is not allowed to use that

9   information … to supply evidence on a motion, at a hearing, or at trial, unless the failure was

10  substantially justified or is harmless."); *see also* Advisory Committee Notes, 1993 Amendments

11  ("This automatic sanction provides a strong inducement for disclosure of material that the

12  disclosing party would expect to use as evidence …."); *Evenflow Plumbing Co., Inc. v. Pac. Bell*

13  *Directory*, No. C-3-04-CV-00795 EDL, 2005 U.S. Dist. LEXIS 46822, *4 (N.D. Cal. April 26,

14  2005) (Laporte, M.J.) ("A party that without substantial justification fails to supplement its

15  disclosures under *Rule 26(e)(1)* is not, unless the failure is harmless, permitted to use as evidence

16  at trial any information not so disclosed.").

17        This Court's Standing Order Re: Discovery Procedures ("Order") further confirms a

18  party's obligation to timely supplement its disclosures and discovery responses.  Order at ¶ 4

19  ("Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or

20  correct their initial disclosures, expert disclosures, pretrial disclosures, and responses to discovery

21  requests under the circumstances itemized in that Rule, and when ordered by the Court.  The

22  Court expects that the parties will supplement and/or correct their disclosures promptly when

23  required under that Rule, without the need for a request from opposing counsel.").  The Order

24  provides for the imposition of sanctions under Rule 16(f) for failure to do so.  Order at ¶ 9; *see*

25  *also* Fed. R. Civ. P. 16(f)(permitting "any just order" for sanctions for failure to comply with a

26  pretrial order).

27        This Court has full authority to issue sanctions under both its own Order and under Rule

28  37.  *See, e.g., Hsieh v. Peake*, No. C 06-5281 PJH, 2008 U.S. Dist. LEXIS 23649, *59-60 (N.D.

Cal. Mar. 25, 2008) (Hamilton, J) ("any Rule 37 motion should have been directed to the magistrate judge to whom the court referred all discovery disputes.").

**B.      Oracle's Failure To Comply With Rule 26 Was Not Substantially Justified.**

There is no justification for Oracle's failure to disclose, until now, its intent to pursue damages relating to non-TN customers, alleged lost license revenue, and products not supported by TN.  Nor is there any excuse for Oracle's about-face on the scope of relevant discovery this late in the case.

**1.      Oracle Had The Relevant Information Before Even Filing The Complaint.**

In its May 22 letter, Oracle claims that it could not have disclosed its damages theories sooner because it was unaware "of the vast scope of the illegal conspiracy in which Defendants were engaged."  Wallace Decl. ¶ 20, Exh. O, at 1.  The facts do not support this claim.

**a.      Alleged Price Reductions For Non-TN Customers.**

REDACTED

Oracle made *no mention* of discounts or adopted/abandoned policies in any of its four complaints to date, its initial disclosures, or its original response to Interrogatory No. 5.

REDACTED                                             Only

after that, and only because it was forced to under the schedule then in effect, did Oracle

supplement its initial disclosures to include this new theory. *Supra* at 12-13.  At a minimum,

Oracle was obligated to identify this category of harm in its August 2007 Initial Disclosures,

since it was clearly aware of it at that time.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Oracle was also

required to supplement its disclosures as discovery progressed. *Tutor-Saliba*, 218 F.R.D. at 222

(a party must update its disclosures and provide greater detail as to its calculations as discovery

progresses).  Even now, Oracle has not disclosed how many customers were allegedly given

discounts, who they were, or the amount of the discounts.

     More troubling, however, is the fact that Oracle has refused to provide discovery on non-

TN customers,                   REDACTED

        **b.**     **Alleged Lost License Revenue.**

REDACTED

     Oracle included a few vague allegations in its complaint concerning expected future

license revenue.  Dkt. 1, ¶¶ 131-132.  Oracle must have had a good faith belief at that point that

its alleged damages may include lost license revenue.  Those allegations prompted Defendants to

serve discovery concerning that alleged expectancy, including RFP Nos. 111, 112, and 113

discussed above. *Supra* at 6-7.

---

[11] Mr. Phillips was no doubt aware of these purchasing patterns during his nine years as an analyst at Morgan Stanley tracking enterprise software companies, including PeopleSoft, J.D. Edwards, Oracle, and SAP, before he even joined Oracle. *Id.* at 8:4-9:23.

1      But Oracle *refused* to produce documents relating to license revenue.  S*upra* at 6-7.

2   Instead, it limited its production to documents "relating to its expectancy of receiving ongoing

3   support revenue …."  *Id.*  Two years later, Oracle still has not produced them, although its expert

4   clearly plans to rely on them.  Wallace Decl. ¶ 21, Exh. P, at 48 ("Should the current schedule

5   remain in place, Oracle will also be providing additional evidence relied upon by its experts in

6   conjunction with its damages expert report, including on the purchasing history of its PeopleSoft

7   and JDE customer base post-acquisition.")                    REDACTED

8

9                        .

10     Having failed for two years, without justification, to disclose any details regarding its

11  claim for alleged lost license revenue and having refused to produce responsive documents,

12  Oracle is precluded under Rule 37 from presenting evidence on that theory.  *See, e.g., Cambridge*

13  *Elec. Corp. v. MGA Elec., Inc.*, 227 F.R.D. 313, 324-25 (C.D. Cal. 2004) (precluding evidence on

14  summary judgment that could have been disclosed in plaintiff's interrogatory responses).

15          **2.      Oracle's Claim That It Has Cured The Deficiencies Is False.**

16     In its May 22 letter, Oracle claims that its has cured the deficiencies in its disclosures and

17  discovery responses.  Wallace Decl. ¶ 20, Exh. O, at 1-2.  This is incorrect.

18     In support of its argument, Oracle lists certain broad categories of documents it has

19  produced that purportedly "have information related to license revenue."  Wallace Decl. ¶ 20,

20  Exh. O, at 2.  These include SEC filings, financial reports, and other documents that no doubt do

21  contain *some* information regarding license revenue and the other topics on which Oracle has

22  refused to provide discovery.  But the fact that the documents it did agree to produce also happen

23  to contain some information on other topics does not cure its refusal to produce the documents

24  actually requested.  The *pertinent* documents – such as the          REDACTED          described above,

25  contract files and customer-specific reports for non-TN customers, and numerous other types of

26  relevant documents – have *not* been produced.  This reason for this is clear – until now Oracle has

27  insisted they were not relevant.

28

1    Tellingly, Oracle admits that "additional license sales damages materials" will be

2    produced in the future.  Wallace Decl. ¶ 20, Exh. O, at 3.  These include "an analysis of the

3    purchasing history of its PeopleSoft and J.D. Edwards customer base post-acquisition, along with

4    any supporting evidence."  *Id.*  This is precisely the kind of material called for by Defendants'

5    RFPs that Oracle has refused, for two years, to produce.

6    Oracle also admits that it now plans to search for and produce "license pricing exception

7    information" from various sources, including "from a source comparable to OSSInfo."  Wallace

8    Decl. ¶ 20, Exh. O, at 3.  OSSInfo is a group email address that relates to renewals of customer

9    support contracts.  *Id.* at ¶ 23, Exh. R.  Oracle took months to produce responsive information

10   from OSSInfo, which contains almost 360,000 documents.  *Id.*  It now apparently intends to

11   produce documents from a group email address that relates to license sales and presumably

12   contains a comparably large number of documents.

13   Oracle also now plans to produce contract files for an unspecified number of non-TN

14   customers.[12]  Based on Oracle's production of contract files for TN customers, Defendants

15   believe that it would take months for Oracle to produce complete contract files for even fifty non-

16   TN customers.  It took two years for Oracle to produce contract files for the TN customers.

17   *Supra* at 8.  Moreover, Oracle objected strenuously when, in December 2008, Defendants said

18   they would add to the TN customer list approximately forty customers that had become relevant

19   as a result of the parties' November 2008 agreement (at Oracle's request) to expand the relevant

20   discovery period.  In the parties' January 5, 2009 Joint Discovery Conference Statement, Oracle

21   complained of the significant additional burden from the addition of these forty customers to the

22   "operative list of TomorrowNow's customers" to which "[b]oth Parties have continually

23   referred."  Dkt. 226 at 6.  According to Oracle, based on the time taken to produce other customer

24   information, it would take at least three months to complete production for these forty customers:

---

25   [12] When Defendants' counsel raised in a June 25, 2009 meet and confer that no contract files have been produced for non-TN customers, Oracle's counsel disclosed that Oracle is about
26   to produce a "whole bunch of that stuff."  Wallace Decl. ¶ 24.  Defendants' counsel asked how many non-TN customer files Oracle intends to produce.  *Id.*  Oracle's counsel could not answer
27   but suggested "maybe fifty."  *Id.*

REDACTED

28

> This recent addition to the "Exhibit 1" list of TomorrowNow customers will require Oracle to spend many additional hours and resources to (a) find and review these newly-added customers' contract files, (b) prepare and produce relevant materials, (c) adjust its main document review and production process to include these customers, (d) re-examine Defendants' discovery responses and production in light of these customers, and (e) investigate and subpoena these new customers, if necessary.  Oracle has not yet received the amended Exhibit 1 and, based on the time it has taken to produce customer information to date, does not expect to be able to complete such additional efforts before March without seriously impeding its other production efforts.

*Id.* at 6-7; *see also* February 2, 2009 Joint Discovery Conference Statement (Dkt. 265) at 8-9 (same complaint).[13]

The documents discussed above do not begin to cover the range of additional documents that will have to be produced if Oracle is permitted to pursue its newly disclosed damages theories.  That issue is addressed in more detail in Section C below.  These examples merely demonstrate the falsity of Oracle's claim that its incidental production of some responsive information (and the unspecified "substantial discovery" it claims to have provided) can somehow cure its violation of Rule 26.  Clarke Decl. ¶ 26.  The record is clear that until the recent depositions of its senior executives, Oracle had consistently maintained that documents relating to non-TN customers, license revenue, and products not supported by TN were beyond the scope of relevant discovery.

**3.     Oracle Ignored The Court's Directive That Damages Discovery Proceed.**

If Oracle is permitted to pursue its newly disclosed damages theories, it will effectively have accomplished through self-help what it was unable to obtain by court order – deferral of damages discovery until the end of the case.  Defendants, meanwhile, will suffer serious prejudice and irreparable harm to their ability to rebut Oracle's damage claims, as predicted in their first motion to compel to Judge Legge.

---

[13] On June 30, 2009, Oracle made what it described as "a production of customer contracts for customers who received discounts on support."  Wallace Decl. ¶ 27.  However, the production contains *no* contracts at all, pertains to only 8 customers, and evidences a discount for only 1 customer but contains no evidence establishing any link between that discount and TN.  *Id.*; *see also* Declaration of Stephen F. Clarke in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f)("Clarke Decl.") ¶ 27.

1    During the parties' extensive meet and confer prior to this motion, Oracle's counsel

2    offered no justification for its about-face on the scope of relevant discovery, other than that

3    Oracle "has not focused" on these issues until now.[14]  Wallace Decl. ¶ 24.  Oracle's counsel

4    characterized the case as in "a new phase" as a result of Judge Hamilton's extension of the

5    schedule, suggesting that Oracle finally (*after* the close of discovery under the previous schedule)

6    plans to turn its attention damages issues.  *Id.*

7    Defendants object to Oracle's effort to manipulate the case schedule in this way.

8    Defendants agreed to an extension of the schedule based on Oracle's representation that it was

9    needed to address: (1) TN's support of Siebel products; (2) TN's alleged post-litigation activity;

10    and (3) Oracle's claimed need for additional analysis and discovery of TN's support methods

11    following the parties' failure to agree on an extrapolation methodology.  Dkt. 304 (Joint Motion

12    to Modify Case Schedule), at 1-2.  Never once during the parties' weeks-long negotiations on the

13    case schedule, or in the papers or argument to the Court, did Oracle disclose that it would use the

14    extension of time to expand its damages claims to include previously undisclosed theories and to

15    execute an about-face on the scope of relevant damages discovery.  Wallace Decl. ¶ 25.

16    **C.**    **Oracle's Conduct Is Neither Harmless Nor Curable.**

17    The extent of the potential prejudice to Defendants is apparent from the nine to ten-figure

18    damages amounts Oracle has previously alluded to in its public filings in this case.  Claims of that

19    magnitude and complexity mandate a full and fair opportunity for rebuttal.  Oracle has robbed

20    Defendants' damages expert of that opportunity.

21    **1.**    **There Is Insufficient Time Even Under The Extended Schedule For**

22    **Defendants' Expert To Complete An Analysis Of Oracle's New Claims.**

23    If Oracle is permitted to pursue its new damages claims, Defendants' expert estimates that

24    he would need an additional year or more (over and above the recent extension ordered by Judge

25    Hamilton) to complete his damages analysis.  Clarke Decl. ¶ 30.  This is due to the enormous

26

---

27    [14] Although the Ninth Circuit has made clear that no meet and confer is required prior to
filing a motion for sanctions under Rule 37, Defendants met and conferred extensively with
Oracle regarding the bases for this motion.  *Reynoso v. Constr. Protective Servs., Inc.*, No. 06-
28    56381, 2008 U.S. App. LEXIS 19681, *5-6 (9th Cir. Sep. 16, 2008); Wallace Decl. ¶ 25.

1   amount of (yet to be produced) data that would have to be analyzed.  *Id.*  Based on the volume of

2   information provided to him to date (which includes 1.6 million documents/8.9 million pages),

3   Defendants' expert estimates that many millions of additional pages would have to be analyzed.

4   *Id.* at ¶¶ 10-12, 18, 23.

5          For example, to analyze Oracle's claim that it was damaged by the early adoption of

6   Lifetime Support and Applications Unlimited and by the abandonment of PeopleSoft's renewal

7   price escalation policy, Defendants' expert would need to analyze detailed accounting and pricing

8   information for each allegedly affected customer.  Clarke Decl. ¶ 25.          REDACTED

9

10

11

12

13  Defendant's expert would also need to analyze multiple types of documents, both public and

14  internal, relating to the reasons for the adoption or abandonment of these policies, Oracle's

15  original plans with respect to these policies, and the alleged impact of the changes to the policies.

16  Clarke Decl. ¶ 25.

17         To analyze Oracle's claim that it gave license and support discounts to an unspecified

18  number of non-TN customers as result of competition from TN, Defendants' expert would need

19  to analyze contract files, customer-specific financial reports, and multiple types of documents

20  relating to pricing for each allegedly affected customer.[15]  Clarke Decl. ¶¶ 20-22.

21         To analyze Oracle's claim that its primary damage was lost license revenue from sales it

22  claims it would have made to TN customers (i.e. former Oracle customers), non-TN customers

23  (i.e. customers retained by Oracle but that allegedly  purchased fewer products from Oracle

24  because of alleged reputational harm), and prospective customers (customers that never became

25  Oracle customers at all because of alleged reputational harm), Defendants' expert would have to

26  analyze multiple types of documents, including for example: detailed accounting information

27  _____

    [15]                                         REDACTED

28

1   showing all license and support revenue by customer, by year from January 1, 2002 forward;

2   detailed accounting information showing expenses incurred in connection with that revenue;

3   analyses of customer license purchase patterns and the average value of a new customer, Oracle's

4   up-selling and cross-selling initiatives, pricing information, market studies, "win rate" reports for

5   all allegedly affected products, communications between sales people and customers, and internal

6   communications regarding prospective sales.  Clarke Decl. ¶¶ 22-23.  The issue of customer

7   motivation alone would likely require analysis of millions of pages documents and extensive

8   deposition testimony.  *Id.*                    REDACTED

9

10

11

12        The documents identified above are just some examples of the kinds of material that

13   would have to be analyzed if Oracle is permitted to pursue its new damages theories.  The current

14   schedule does not permit Defendants' expert an adequate opportunity to rebut these new claims,

15   even if Oracle could produce all the relevant material before the close of discovery, which of

16   course, it cannot.

17        **2.    Oracle Cannot Complete Production Of The Relevant Data Under The**

18              **Current Schedule.**

19        It has taken Oracle two years to produce documents relating to what it now contends is the

20   "tip of the iceberg" of its alleged harm.  *Supra* at 8-9.  Even that production is far from

21   complete.[16]  With Oracle's history of long-delayed productions in this case, it is not plausible that

22   Oracle could complete production of the massive amount of additional data relevant to its newly

23   disclosed damages theories before the close of fact discovery on December 4, 2009.  Aside from

24   the categories of documents identified above (including contract files, customer-specific financial

25   reports, group email addresses or other sources equivalent to OSSInfo, pricing documents, and

26   the numerous categories identified by Defendants' damages expert), Oracle would have to

27   _____

28   [16] Concurrently with this motion, Defendants are filing a motion to compel production of documents relating to Oracle's other lost profits damages theories.

1   address the fact that its search terms have not included non-TN customers, which means its entire

2   custodian production would potentially have to be re-reviewed.[17]  Defendants would also

3   potentially have to re-depose multiple witnesses, including Rule 30(b)(6) witnesses whose

4   testimony Oracle limited in scope.

5          Even if Oracle could achieve the impossible and produce the relevant material, late

6   production of documents does not cure prejudice to the receiving party.  *See, e.g., Payne v. Exxon*

7   *Corporation*, 121 F.3d 503, 508 (9th Cir. 1997) ("Last-minute tender of documents does not cure

8   the prejudice to opponents ….") (citation omitted).  Oracle's failure to timely disclose its intent to

9   pursue these damages claims and, most importantly, its last minute about-face on the scope of

10  relevant discovery has irrevocably deprived Defendants of a fair opportunity to analyze the data

11  and take necessary follow up discovery.  *Id.* ("The issue is not whether [defendants] eventually

12  obtained the information they needed, or whether plaintiffs are now willing to provide it, but

13  whether plaintiffs' repeated failure to provide documents and information in a timely fashion

14  prejudiced the ability of [defendants] to prepare their case for trial).

## IV.  CONCLUSION

16         For the foregoing reasons, Defendants respectfully request that the Court grant their

17  motion and order the relief requested.

18  DATED:  July 14, 2009                          JONES DAY

20                                          By:  /s/ Elaine Wallace
                                                 Elaine Wallace

22                                          Attorneys for Defendants
                                            SAP AG, SAP AMERICA, INC., and
                                            TOMORROWNOW, INC.

---

[17] When customers were added to the TN customer list as a result of the parties' agreement to extend the relevant time frame, Oracle agreed to "adjust its main document review and production process to include these customers …."  *Supra* at 19-20.  As far as Defendants are aware, no such effort has been made with regard to non-TN customers for which Oracle now purports to claim damages.