1    BINGHAM McCUTCHEN LLP
     DONN P. PICKETT (SBN 72257)
2    GEOFFREY M. HOWARD (SBN 157468)
     HOLLY A. HOUSE (SBN 136045)
3    ZACHARY J. ALINDER (SBN 209009)
     BREE HANN (SBN 215695)
4    Three Embarcadero Center
     San Francisco, CA  94111-4067
5    Telephone:  415.393.2000
     Facsimile:  415.393.2286
6    donn.pickett@bingham.com
     geoff.howard@bingham.com
7    holly.house@bingham.com
     zachary.alinder@bingham.com
8    bree.hann@bingham.com

9    DORIAN DALEY (SBN 129049)
     JENNIFER GLOSS (SBN 154227)
10   500 Oracle Parkway, M/S 5op7
     Redwood City, CA  94070
11   Telephone:  650.506.4846
     Facsimile:  650.506.7114
12   dorian.daley@oracle.com
     jennifer.gloss@oracle.com
13

14   Attorneys for Plaintiffs
     Oracle USA, Inc., Oracle International Corporation, and
     Oracle EMEA Limited
15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                       SAN FRANCISCO DIVISION

19

20   ORACLE USA, INC., *et al.*,                No. 07-CV-01658 PJH (EDL)

21              Plaintiffs,                     **ORACLE'S OPPOSITION TO**
          v.                                    **DEFENDANTS' MOTION TO**
22                                              **COMPEL PRODUCTION OF**
     SAP AG, *et al.*,                          **FINANCIAL INFORMATION**
23
                Defendants.                     **REDACTED**
24
25   .                                          Date:      August 18, 2009
                                                Time:      2:00 p.m.
26                                              Place:     Courtroom E, 15th Floor
                                                Judge:     Hon. Elizabeth D. Laporte
27

28

                                                Case No. 07-CV-01658 PJH (EDL)
     ─────────────────────────────────────────────────────────────────────
     ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
                                    INFORMATION

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................. 1

II. THE COURT SHOULD DENY THE THREE MOOT MOTIONS: "ISSUES"
    TWO, THREE AND FOUR REGARDING FINANCIAL INFORMATION ................. 3

    A.  Regarding "Issue Two," Oracle Already Agreed to Produce the Requested
        Product Profitability Reports and Underlying Source Documents ........................ 4

    B.  Regarding "Issue Three," Oracle Already Agreed to Produce the
        Requested Profit and Loss Statements for Each Plaintiff Entity............................ 5

    C.  Regarding "Issue Four," Oracle Already Responded to Defendants'
        "Third" Targeted Search Request .......................................................... 6

III. THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL
     GENERAL LEDGER INFORMATION ON THE MERITS ............................. 6

    A.  Oracle Continuously Has Tried To Compromise On the General Ledger
        Issue ........................................................................................ 7

    B.  Defendants' General Ledger Request Imposes An Extreme Burden
        Without Adequate Cause .................................................................. 10

        1.  Defendants' Request Is Excessively Burdensome ................................... 11

        2.  Defendants' Request Would Yield Little, If Any, Benefit....................... 12

IV.  THE COURT SHOULD DENY DEFENDANT' MOTION FOR FURTHER
     RULE 30(B)(6) TESTIMONY ON THE MERITS ........................................ 13

    A.  Defendants Have Served 30(b)(6) Notices That Require Mastery Of
        Voluminous, Complex Information ...................................................... 14

    B.  Oracle Has Provided Reasonably Knowledgeable Witnesses In Response
        to Unreasonably Overbroad Notices .................................................... 15

    C.  Defendants' Motion to Re-Open Topic 5 of the First Notice as a
        "Threshold Issue" to the Amended Second Notice Must Be Denied.................. 16

        1.  Defendants' Motion Reveals Their Fundamental Misunderstanding
            of Oracle's Inter-Entity Agreements................................................. 16

        2.  Defendants' Complaints Relate to Matters Not Set Forth in the
            Amended Second Notice with "Reasonable Particularity" as
            Required by Rule 30 ................................................................... 18

# TABLE OF CONTENTS
### (continued)

Page

D.   The Court Should Deny Defendants' Request for Supplemental 30(b)(6) Testimony Based on OIC's Proper Claims of Attorney-Client Privilege ........... 19

E.   The Court Should Deny the Remaining Complaints as Overbroad, Irrelevant and Premature ................................................................................. 19

    1.   Defendants' overbroad complaints are not grounds for supplemental 30(b)(6) testimony ............................................................ 20

    2.   Defendants complain of deficiencies as to which they do not cite any examples or which exceed the scope of the notice ........................... 20

F.   The Court Should Deny Defendants' Motion to the Extent Mooted By Oracle's Compromise Offer ............................................................................. 22

V.   DEFENDANTS' FAILURE TO ENGAGE IN ANY MEANINGFUL MEET AND CONFER INDEPENDENTLY WARRANTS A DENIAL OF THE GENERAL LEDGER AND RULE 30(B)(6) MOTIONS ............................................. 22

VI.   CONCLUSION ................................................................................................. 25

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL INFORMATION

1

# TABLE OF AUTHORITIES

2

Page(s)

3 **FEDERAL CASES**

4 *Baldwin Cooke Co. v. Keith Clark, Inc.,*
   420 F. Supp. 404 (D.C. Ill. 1976) ................................................................. 12, 13
5

6 *Crossbow Tech., Inc. v. YH Tech.,*
   No. 03-04360, 2007 U.S. Dist. LEXIS 25926 (N.D. Cal. Mar. 26, 2007) ....................... 23, 25

7

8 *Detoy v. City and County of San Francisco,*
   196 F.R.D. 362 (N.D. Cal. 2000) ................................................................. 16

9 *Hernandez v. Sutter Medical Center of Santa Rosa,*
   No. 06-03350, 2008 WL 2156987 (N.D. Cal. May 20, 2008) ................................... 22, 23, 25
10

11 *In Re ATM Fee Antitrust Litigation,*
   No. 04-02676, 2007 WL 1827635 (N.D. Cal. Jun. 25, 2007) ............................... 10-11

12

13 *King v. Pratt & Whitney,*
   161 F.R.D. 475 (S.D. Fla. 1995) ................................................................. 16

14 *Leyva v. Kernan,*
   No. C 08-1152 SI (N.D. Cal. Feb. 9, 2009) ................................................. 23
15

16 *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,*
   134 F.R.D. 275 (N.D. Cal. 1991) ................................................................. 15

17 *Polygon Northwest Co. v. Steadfast Ins. Co.,*
   No. 08-1294, WL 1437565 at *2 (W.D.Wash. May 22, 2009) ............................... 11
18

19 *Saf-Gard Prod., Inc. v. Service Parts, Inc.,*
   491 F. Supp. 996 (D. Ariz. 1980) ................................................................. 12
20

21 *Sony Elec., Inc. v. Soundview Tech., Inc.,*
   217 F.R.D. 104 (D. Conn. 2002) ................................................................. 16

22 *United States ex rel Fago v. M & T Mortgage Corp.,*
   235 F.R.D. 11 (D.D.C. 2006) ................................................................. 18
23

24 *United States v. Bauer,*
   132 F.3d 504 (9th Cir. 1997) ................................................................. 19

25

26 *Washburn v. Fagan,*
   Nos. C-03-00869, C-03-1194 (N.D. Cal. Mar. 10, 2006) ................................... 23, 25

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1

**LOCAL RULES**

2

Local Rule 37 ......................................................................................................... 11, 22

3

**FEDERAL RULES**

4

Fed. R. Civ. P. 16(f) .................................................................................................... 12

5

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................................... 10

6

Fed. R. Civ. P. 30(b)(6)........................................................................................ passim

7

Fed. R. Civ. P. 37(a) ................................................................................................... 22

8

Fed. R. Civ. P. 37(c)................................................................................................... 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1  **I.      INTRODUCTION**

2          Through this five-part Motion to Compel and the concurrently-filed Motion for

3  Sanctions, Defendants SAP AG, SAP America, Inc. and TomorrowNow, Inc. ("Defendants")

4  seek to both compel, and exclude from use at trial, the same damages information.  In their hurry

5  to execute this heads-I-win-tails-you-lose maneuver, Defendants have ignored the meet and

6  confer rules and the law.  As a result, three of Defendants' motions to compel are moot.  The

7  Court should deny the remaining two on the merits and, independently, on procedural grounds

8  due to Defendants' failure to meet and confer as required by local rules and this Court.

9                       *The Moot Motions*

10          For over a year, Defendants periodically have threatened to move to compel

11  financial information.  Each time, Plaintiffs Oracle USA, Inc., Oracle International Corporation

12  ("OIC"), and Oracle EMEA Limited (collectively "Oracle" or "Plaintiffs") have listened to

13  Defendants' reasons during meet and confer, and have then produced everything requested

14  within reason.  When Oracle agrees to produce the information Defendants say they want,

15  Defendants simply invent new and increasingly burdensome and tangential requests for new

16  information.  The same holds true here, except that this time, Defendants improperly moved to

17  compel after Oracle either agreed to produce the materials they seek or the Parties were still

18  meeting and conferring on the scope of any such production.

19          The first moot motion is Defendants' "Second Issue" regarding "Reports Showing

20  Plaintiffs' Profitability of their PeopleSoft, J.D. Edwards and Siebel Product Lines and The

21  Underlying Source Documents."  Defendants asked Oracle to produce certain manually-created,

22  *ad-hoc*, non-custodial analyses five days before Defendants filed their motion.  Oracle agreed the

23  next day (it had already been looking for these reports).  Then, the *night before* Defendants filed

24  this motion, they asked Oracle to provide the underlying source materials for these analyses.

25  Again, Oracle agreed the next day.  Through these immediate agreements, the issue is moot.

26          The second moot motion is Defendants' "Third Issue" regarding "Detailed Profit

27  and Loss Statements for Each Plaintiff."  Even though Defendants' discovery requests do not

28  seek detailed profit and loss statements for each Plaintiff entity except as related to product

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   profitability, when Defendants asked for these statements *the night before they filed this motion*,

2   Oracle again agreed to produce them.  As a result, this motion is also moot.

3          The third moot motion is Defendants' "Fourth Issue" regarding "A Response to

4   Defendants' Targeted Search Request 'No. 3.'"  Oracle told Defendants on June 30 – two weeks

5   before Defendants filed this motion – that Oracle would provide a supplemental response on July

6   17.  Instead of waiting for that supplemental response, or objecting to the timing, and without

7   any warning to Oracle, Defendants included this issue in their July 14 motion.  Nonetheless,

8   Oracle responded on July 17 as promised.  As a result, this issue is also moot.

9          Despite Oracle's repeated requests, Defendants have refused to remove these

10   issues from their motion.

11          *The Unripe and Unfounded Motions*

12          Two motions remain – Defendants' "First Issue" regarding General Ledgers and

13   Defendants' "Fifth Issue" regarding 30(b)(6) testimony.  Each motion fails on the merits.  As an

14   independent basis for denial, Defendants also have skirted the meet and confer rules on each,

15   rendering each motion improper.

16          *General Ledger*.  In June 2008, Defendants sought Oracle's General Ledger.  The

17   Parties and the Court agreed that this request was overbroad and unduly burdensome.  Following

18   numerous meet and confers, Oracle agreed to and did produce its charts of accounts so that

19   Defendants could frame a reasonable request for General Ledger information.  Defendants

20   responded by issuing a 73-page request for overbroad data that would have taken multiple Oracle

21   employees many months of full-time dedicated effort to collect.  Defendants have never disputed

22   this burden, but rather than try to narrow this request (and despite unilaterally canceling an

23   Oracle deposition on this topic at the last minute that Oracle was eager to have go forward), their

24   motion returns to square one – seeking all of Oracle's General Ledger for each Plaintiff entity in

25   this case.  Oracle continuously has sought a compromise on this issue, and had prepared its

26   deposition witness to provide information on it.  In response, Defendants appear willing only to

27   take an all-or-nothing approach that ignores the enormous and undisputed burden of their

28   original request.

1    *Supplemental 30(b)(6) Testimony from Plaintiff OIC*.  On April 14, 2009,

2    Defendants examined OIC's designee, a lawyer in Oracle's tax department, on topics generally

3    related to the Plaintiffs' inter-entity licensing and cost-sharing arrangements as applied to the

4    software at issue in this case.  Defendants had asked for a witness prepared to give the requested

5    licensing and cost-sharing information as to each Registered Work, a term defined by the parties

6    to mean "a work underlying a federal copyright registration" at issue in the case.  However,

7    Oracle's licensing and cost-sharing arrangements do not distinguish on a "work by work" basis;

8    those agreements extend to entire product lines (e.g., PeopleSoft, J.D. Edwards EnterpriseOne, or

9    J.D. Edwards World software), which encompass numerous (sometimes dozens) of Registered

10   Works.  Thus, testimony relevant to Defendants' noticed topics necessarily relates first to the

11   entities that executed the relevant agreements, and next to the product families covered by those

12   agreements, but not to the individual programs and modules that make up the Registered Works.

13   In addition, Oracle's designee, who knows inter-entity licensing and cost-sharing, is not a

14   copyright expert.  She could only explain that her testimony *did* apply to the Registered Works

15   according to product family (had Defendants asked that question, which they did not).  Though

16   not obligated to do so, Oracle has offered to help cure this misunderstanding through a simple

17   declaration.  Defendants have failed to address this or any other Oracle response in meet and

18   confer, stating simply that the issues, including their attempts to discover privileged

19   communications, are "joined."

20          Oracle remains willing to meet and confer with Defendants to narrow the two

21   open motions, but the Court should deny them now on both substantive and procedural grounds.

22   **II.    THE COURT SHOULD DENY THE THREE MOOT MOTIONS:**
         **"ISSUES" TWO, THREE AND FOUR REGARDING FINANCIAL**
23       **INFORMATION**

24          Even before Judge Hamilton opened up damages discovery on April 25, 2008,

25   Oracle had already begun diligently producing detailed financial information, from both

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1    custodial and non-custodial sources.[1]  *See* Declaration of Holly House In Support of Oracle's

2    Opposition to Defendants' Motion to Compel Production of Financial Information ("House

3    Decl."), ¶ 2.  Oracle has similarly agreed to produce all reasonably requested financial

4    information reflected in Defendants' current motion, mooting three of five requests, despite the

5    fact that in some cases, Defendants did not even request that information until the night before

6    filing this motion.

7         **A.    Regarding "Issue Two," Oracle Already Agreed to Produce the**
           **Requested Product Profitability Reports and Underlying**
8          **Source Documents**

9              The second "issue" in Defendants' Motion to Compel seeks production of product

10   profitability reports.  Defendants' Motion to Compel Financial Information ("Mot.") at 12.  This

11   issue is moot and the Court should deny the motion on that ground.

12             During a telephonic meet and confer on July 9, 2009, five days before moving to

13   compel, Defendants *for the first time* requested a broader search for and production of certain

14   product profitability analyses referenced in depositions of Oracle executives.



23             Oracle explained all these facts to Defendants during the July 9 meet and confer.

24   _____

25   [1] Oracle's production of financial information has included discount and pricing analysis emails
26   and packages, product revenue reporting packages, financial board packages, fiscal board budget
     reports, SEC filings, subsidiary performance reports, financial reference books, support budgets,
27   subsidiary performance reports, and applications revenue analysis reports – most of which
     contain cost and/or margin data.  House Decl. ¶ 3.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1  House Decl., ¶ 26. Defendants requested that Oracle continue to search for and produce these

2  reports, regardless of their accuracy or whether they showed product profitability by Plaintiff-

3  entity. *Id.* Oracle agreed to do so the next day. *Id.*, ¶ 29, Ex. P at 3.

4          On July 13, at 7:24 p.m. – *the night before* Defendants filed their motion to

5  compel this information – Defendants *for the first time* asked Oracle to also search for and

6  produce "the underlying source documents that contain the formula for the calculation of the

7  numbers reflected in the product line profitability reports." *Id.* ¶ 30 & Ex. Q; Declaration of

8  Jason McDonell In Support of Defendants' Motion to Compel Production of Financial

9  Information of Plaintiffs ("McDonell Decl."), Ex. 2 at 2. Again, Oracle agreed the next day to

10  produce this data, stating "we will agree to search for and produce [the] non-privileged 'source'

11  documents . . . and we believe we can produce any such reports by mid-August," a mere month

12  later. House Decl., ¶ 31, Ex. R at 3. Despite Oracle's agreement, Defendants also moved to

13  compel on this mooted issue.

14      **B.**    **Regarding "Issue Three," Oracle Already Agreed to Produce
15             the Requested Profit and Loss Statements for Each Plaintiff
16             Entity**

16          The third "issue" listed in Defendants' Motion is a request for production of profit

17  and loss statements. Mot. at 13.

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1 ████████████████████████████████████████████████

2 Defendants' request is therefore moot.

3    **C.    Regarding "Issue Four," Oracle Already Responded to
         Defendants' "Third" Targeted Search Request**

4

5          As their fourth "issue," Defendants seek a further response to their "Third"

6 Targeted Search Request. Mot. at 13. Consistent with the agreed procedure for responding to

7 targeted search requests, Oracle provided Defendants with a timely initial response on May 27,

8 followed by a timely supplemental response on June 3. House Decl., ¶¶ 23-24, Exs. M, N. At

9 the same time, Oracle also agreed to undertake additional investigation, but noted that would

10 take some time to complete, as "those most knowledgeable about Oracle's financial reporting

11 functions are heavily impacted by Oracle's May 31, 2008 fiscal year-end activities." *Id.*, ¶ 24 &

12 Ex. N at 13. Defendants never indicated that would be problematic. *Id.* ¶ 24. Nor should it have

13 been, given that the fact discovery deadline had been extended by six months just a week earlier.

14 *Id.* On June 30, Oracle stated it would provide a second supplemental response on July 17. *Id.*,

15 ¶ 28, Ex. O at 2. Defendants did not seek an earlier response, *id.* ¶ 25, but included this issue in

16 their motion to compel anyway. Oracle completed its investigation and further supplemented its

17 targeted search response on July 17 as promised, mooting this issue. *Id.* ¶ 27.

18 **III.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO
       COMPEL GENERAL LEDGER INFORMATION ON THE**

19    **MERITS**

20          Just as with the motions described above, Oracle has attempted to reasonably

21 address Defendants' requests for the type of information they purportedly seek via Oracle's

22

23    ────────────────

[2] Defendants responded, on July 23, 2008, accepting Oracle's offer to produce such documents,

24 and refusing to remove this issue from the Court's attention. House Decl., ¶ 34, Ex. U, p. 2. In
   their response, Defendants then requested yet more financial documents, including balance sheet

25 information (which would not show product profitability information), and profit and loss and
   balance sheet information for entities that are not plaintiffs in this action and that are not covered

26 by any outstanding discovery request. *Id.* Since Defendants first requested those documents
   nine days after filing of this motion, Oracle will meet and confer separately with Defendants

27 concerning those requests, but they are not part of this motion, are not included in Defendants'
   Request for Relief, and are not ripe for a motion to compel in any event.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1  entire, several hundred million line General Ledger.  Defendants have made no attempt to

2  compromise or acknowledge the burden and relative lack of benefit of this request.  As currently

3  phrased, the Court should deny it on burden and overbreadth grounds and, as an independent

4  basis, for failure to meaningfully meet and confer (*See* Sec. V., below).

5      **A.    Oracle Continuously Has Tried To Compromise On the**
6      **General Ledger Issue**

7      *Defendants' First Request for General Ledgers.*  Defendants first sought Oracle's

8  General Ledger data on June 2, 2008.  *See* McDonell Decl., Ex. 4.  As with most corporations,

9  Oracle's General Ledger contains data for every financial transaction that Oracle tracks.

10  Declaration of Alex San Juan In Support of Oracle's Opposition to Defendants' Motion to

11  Compel Financial Information ("San Juan Decl."), ¶ 3.  Oracle's public financial statements

12  reflect an aggregation of this data.  *Id.*

13

14

15

16

17                                              During meet and confer, Oracle explained the

18  burden of providing all that data, and Defendants agreed to start with Oracle's charts of accounts

19  (which list the accounts in the General Ledger and show how it is organized[3]) to identify and

20  isolate relevant portions of the General Ledger data.  House Decl., ¶ 13.

21      *Oracle's Chart of Accounts Production.*  Oracle began a rolling production of its

22  historical and current charts of accounts on February 13, 2009 and completed its production on

23  March 30, 2009.  *Id.*  At no time did Defendants inform Oracle that the produced charts of

24  accounts were so "cryptic" that Defendants or their experts were unable to meaningfully identify

25  the accounts for which they would want General Ledger detail.  *See* Mot. at 8:10; House Decl.,

26  _____

27  [3] Because the aggregation of Oracle's transaction detail changes over time, Oracle's charts of
    accounts change over time as well.  San Juan Decl., ¶ 10.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1    ¶ 13.

2            *Defendants' "Narrowed" 73-Page Request for General Ledger Data.*  Indeed, on

3    April 29, Defendants provided Oracle with a 73-page "list of the portions of the general ledger

4    we need Oracle to produce," seeking information from 2004 to the present.[4]  House Decl., ¶ 14,

5    Ex. F.  In addition to Defendants' 73-page list of General Ledger items, Defendants also

6    requested "all the detailed general ledger accounts . . . from 2005 through the present date" for

7    "Intangible Assets," "Goodwill," and "Deferred revenues (both current and non-current)."  *Id.*

8            *The Burden of Defendants' Request.*  On May 11, the Parties met and conferred

9    on Defendants' "narrowed" request.  *Id.* ¶ 15.

10

11

12

13

14

15

16

17

18

19

20                                                    Oracle explained these facts and informed Defendants that it

21   would take multiple Oracle employees many months of full-time dedicated effort to complete

22   such a task.  House Decl., ¶ 15; San Juan Decl. ¶ 13.  Following further investigation, Oracle has

23   since confirmed a more precise estimate that it would take 5-10 people working full time for six

24   months to collect this information.  San Juan Decl., ¶ 13.

25            *Defendants' Refusal to Provide a Narrower Request.*  To alleviate the excessive

26   _____

27   [4] The request asks for information starting with Oracle's 2005 fiscal year, which starts on June 1,
     2004.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   burden of Defendants' General Ledger request, on May 14, Oracle requested that Defendants

2   narrow their request to the data and entities they really need, and that the Parties continue to meet

3   and confer. House Decl., ¶ 16, Ex. G. Despite Oracle repeating this request on May 22, June 4,

4   June 30, and July 10, and despite never disputing the burden, Defendants refused to provide a

5   narrower request. *Id.* ¶ 21 & ¶¶ 18, 28-29, Exs. I, O, and P.

6              *Defendants' Last-Minute Cancellation of the Relevant Deposition.* Not only did

7   Defendants refuse to narrow their request for General Ledger information prior to the motion,

8   but to compound the problem, they also cancelled the deposition of Alex San Juan, Oracle's

9   General Ledger Global Process Owner, three days before his scheduled June 19 deposition

10  without any explanation. *Id.*, ¶ 22 & ¶¶ 19, 22, Exs. J, L. Mr. San Juan was also scheduled to

11  answer questions regarding the charts of account topic in Defendants' May 11, 2009 Rule

12  30(b)(6) Notice of Oracle USA, Inc.[5] *Id.*, ¶ 20, Ex. K.

13             Defendants now claim that they cancelled the deposition because Oracle

14  suggested Mr. San Juan could informally join a telephonic meet and confer with Defendants.

15  McDonell Decl., Ex. 2 at 1. This is false; Oracle never made that offer, and Defendants'

16  correspondence (until now) never memorialized such a purported offer.[6] House Decl., ¶ 22; *see*

17  *also id.* ¶ 31, Ex. R at 2. Indeed, Defendants' cancellation email simply stated "[w]e need to take

18  the scheduled date of June 19 for Alex San Juan off calendar. We will let you know when we

19  are able to try to reschedule it." *Id.* ¶ 22, Ex. L. Nor does it make sense that Defendants would

20  cancel this deposition due to a claimed offer of informal assistance, when they had a formal

21  deposition lined up to answer all of their questions. The timing of the cancellation combined

22  with this motion suggests that Defendants instead cancelled the deposition because they did not

23  want to build a further record of the enormous burden and overbreadth of their General Ledger

24  _____

25  [5] Oracle informed Defendants that Mr. San Juan would answer such questions in his individual

26  capacity, not as a Rule 30(b)(6) designee. House Decl., ¶ 20, Ex. K.
    [6] What Oracle did offer during meet and confer was to take Defendants' questions on the General

27  Ledger or chart of accounts and investigate those with Oracle personnel, including most likely
    Mr. San Juan. House Decl., ¶ 17, Ex. H.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   request.  This is further supported by Defendants' continued refusal to accept a new date for his

2   deposition, despite Oracle's July 10, July 14, and July 22 offers.  *Id.* ¶¶ 29, 31, 33, Exs. P, R, and

3   T.

4          *Defendants' Motion Changes Their Request For the First Time Since April 2009*

5   *and Meet and Confer Continues.*  Instead of narrowing their 73-page General Ledger request,

6   despite Oracle's five requests that they do so, Defendants' motion to compel instead returns to

7   square one, seeking all General Ledger information.  Mot. at 1.  This time, at least, Defendants

8   restricted their request to the Plaintiff entities.  *Id.*  Even so, Defendants' request would still

9   require the collection and manual aggregation of hundreds of millions of lines of data and is still

10  unduly burdensome and overbroad, requiring an estimated 5-10 people working full-time for

11  three months to collect this information.  San Juan Decl., ¶¶ 19-20.

12         Despite Defendants' premature filing of this motion to compel, the Parties

13  continue to exchange meet and confer letters on the General Ledger request.  *See* House Decl.,

14  ¶ 32-24, Exs. S (July 21, 2009 Letter from Mr. McDonell to Ms. House), T (July 22, 2009 Letter

15  from Ms. House to Mr. McDonell) and U (July 23, 2009 Response from Mr. McDonell to Ms.

16  House).  Even before Defendants filed their motion, and through this more recent

17  correspondence, Oracle has again offered to compromise, providing a new deposition date for

18  Mr. San Juan and Rule 30(b)(6) testimony related to the General Ledger, which would assist

19  Defendants in understanding how to narrow their request and/or provide further evidence of the

20  burden and uselessness of the vast production they seek.  *Id.* ¶¶ 29-30, 32, Exs. P, R, and T.

21  Oracle also has offered to discuss the request with Defendants informally.  *See id.*  Yet,

22  Defendants have not accepted Oracle's July 9, July 14, and July 22 offers for a new deposition

23  date.  *Id.*  Without that testimony and information, Oracle is unaware how Defendants expect to

24  be able to provide a reasonable General Ledger request for Oracle or the Court to consider here.

25     **B.    Defendants' General Ledger Request Imposes An Extreme**
            **Burden Without Adequate Cause**
26

27         Discovery must be limited where "the burden or expense of the proposed

28  discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii); *In Re ATM Fee Antitrust*

10

1   *Litigation*, No. 04-02676, 2007 WL 1827635 at *2 (N.D. Cal. Jun. 25, 2007) (limiting discovery

2   because the "theoretical entitlement [to relevant evidence] yields to practical considerations

3   when 'the burden or expense of the proposed discovery outweighs its likely benefits'" (quoting

4   Fed. R. Civ. P. 26(b)(2)(C)(iii))).  Moreover, the Court should limit discovery where the request

5   does not "balance the relevance of the information against the burdensomeness of producing it."

6   *Polygon Northwest Co. v. Steadfast Ins. Co.*, No. 08-1294, WL 1437565 at *2 (W.D.Wash. May

7   22, 2009) (limiting discovery where there was sufficient evidence that production would be

8   unduly burdensome).

9           Despite Oracle's repeated explanations to Defendants as to why their General

10   Ledger request is overbroad and unduly burdensome, and despite offering a witness with relevant

11   information on this subject, Defendants have refused to narrow the request.  Responding to this

12   request would consume enormous resources at Oracle without a corresponding benefit to

13   Defendants.

14         **1.**     **Defendants' Request Is Excessively Burdensome**

15           As described more fully above and in the Declaration of Alex San Juan,

16   Defendants' 73-page General Ledger request would conservatively take approximately five to

17   ten Oracle employees six straight months of full-time dedicated work to collect.  San Juan Decl.,

18   ¶ 13.  Defendants' new limitation of this request to the plaintiff entities – offered for the first

19   time in their motion – still would conservatively require five to ten Oracle employees three

20   straight months of full-time dedicated work to complete.  *Id.* ¶ 20  The reason is that each request

21   would comprise hundreds of millions of transaction detail lines, and for the data to reflect

22   historically reported information, Oracle personnel would have to manually reconstruct the

23   historical portions of this information.  *Id.* ¶¶ 10-13, 18-20.  Defendants have never disputed this

24   enormous burden, which Oracle has repeatedly explained to them, and have not offered to

25   narrow the request in any significant way.[7]  The Court should deny Defendants request on the

26

27   [7] Showing unabashed inconsistency, even though Defendants would apparently have no issue
with receiving hundreds of millions of lines of General Ledger data relating to irrelevant entities

28                        (Footnote Continued on Next Page.)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   ground that, as currently framed, it is unduly burdensome.

2          **2.      Defendants' Request Would Yield Little, If Any, Benefit**

3          In contrast to Oracle's showing of the burden of producing the requested General

4   Ledger Detail, Defendants have not explained why they require this vast amount of detailed

5   financial data. The reason is because they do not. To evaluate Oracle's lost profits, Defendants

6   do not need the entire General Ledgers of each Plaintiff corporation for the past seven years, nor

7   do they need General Ledger detailed transaction-level information for their 73-page list of

8   accounts for that period. Declaration of Paul K. Meyer In Support of Oracle's Opposition to

9   Defendants' Motion to Compel Financial Information ("Meyer Decl."), ¶¶ 9-11, 21-24.

10          Defendants seek General Ledger information to attempt to segregate and allocate

11  various expenses by product line. Mot. at 2:3-24. But under a lost profits method for calculating

12  damages, the only expenses that should be deducted from lost revenues are those that vary with

13  the sales of Oracle's products or support. *See Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F.

14  Supp. 404, 407 (D.C. Ill. 1976) (declining to deduct overhead expenses from the copyright

15  owner's lost profits where the evidence showed that the plaintiff would not have incurred

16  additional administrative expenses and overhead in regard to the additional sales); *see also Saf-*

17  *Gard Prod., Inc. v. Service Parts, Inc.*, 491 F. Supp. 996, 1001 (D. Ariz. 1980) (considering only

18  variable costs and refusing to deduct from plaintiff's lost revenues certain overhead costs such as

19  rent, executive salaries, utilities, and subscriptions, all of which would not have increased even if

20  plaintiff had sold the additional products); Meyer Decl., ¶ 20.

21          In other words, if the expense would not have changed had Defendants not acted

22  illegally, then that expense should not be counted when determining lost profits. Thus, fixed

23  overhead expenses – such as Oracle's corporate headquarters' property taxes – are likely

24  irrelevant to Oracle's lost profits claim, because those expenses would not be expected to vary as

25  _____

(Footnote Continued from Previous Page.)

26  near the end of discovery, they complain in their accompanying Rule 37 Motion for Evidence

27  Sanctions that there is currently not enough time to review what they compel. *See* Defendants'
    Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f), Docket No. 365, at 21.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1    a result of Oracle's lost sales of licenses or support.  Meyer Decl., ¶ 21.  Nonetheless,

2    Defendants' April 29 73-page request, as well as the request included in their motion, include

3    requests for just such information.

4

5

6                                      These accounts are the exact overhead accounts that are irrelevant to a lost

7    profits claim and only underscore the fact that Defendants have made no meaningful attempts to

8    request an appropriate set of information.  *See, e.g.*, *Baldwin*, 420 F. Supp. at 407.

9                   Defendants have also requested transaction-level General Ledger information for

10   accounts where that level of detail would not provide incremental benefit relative to summary

11   information.  Meyer Decl. ¶¶ 22-23.

12

13

14

15                                                            Nor have Defendants tried to explain,

16   because they cannot.  The inclusion of such accounts underscores the overbroad nature of the

17   request and the small benefit such overbroad and unduly burdensome information will provide to

18   Defendants.  *See* Meyer Decl., ¶ 24.

19                   In sum, because Defendants refuse to narrow their excessively burdensome and

20   overbroad request, the Court should deny Defendants' motion to compel General Ledger data.

21   **IV.     THE COURT SHOULD DENY DEFENDANT' MOTION FOR**
     **          FURTHER RULE 30(B)(6) TESTIMONY ON THE MERITS**
22

23                   As with the General Ledger motion, Defendants motion for further, complex Rule

24   30(b)(6) testimony fails on a variety of merits, including failing to specify topics with reasonable

25   particularity, failure to ask simple questions that would resolve major disputes, and on

26   attorney/client privilege grounds.  Also, as with the General Ledger motion, as set forth in

27   Sec. V., below, Defendants' failure to meaningfully meet and confer as to these issues

28   independently warrants denial.

                                                        13

1     **A.     Defendants Have Served 30(b)(6) Notices That Require**
                   **Mastery Of Voluminous, Complex Information**

2

3         *The First OIC 30(b)(6) Notice.* On June 10, 2008, Defendants served their First

4 Notice of Deposition of Plaintiff Oracle International Corporation Pursuant to Federal Rule of

5 Civil Procedure 30(b)(6) (the "First Notice"). *See* House Decl., ¶ 4 & Ex. A. Topic 5 of the

6 First Notice stated: "For each of the Registered Works, identification of the software . . . and any

7 other materials allegedly covered by the registrations, identified by title, version number, file

8 name, or other applicable identifying information." *See id.* After meet and confer about

9 Oracle's timely responses and objections to the First Notice, ***the Parties agreed*** that Oracle

10 would supplement its response to TomorrowNow's Interrogatory No. 13 to Plaintiffs, Set One

11 ("Interrogatory 13"), in lieu of providing a witness as to topics 5 and 6. House Decl., ¶¶ 5, 36 &

12 Ex. W; Declaration of Zachary J. Alinder in Support of Oracle's Opposition to Defendants'

13 Motion to Compel Further Copyright Information, Docket No. 300, ¶¶ 8-10 & Ex. F. Oracle first

14 supplemented its response to Interrogatory 13 with information responsive to topics 5 and 6 on

15 December 5, 2008, and has continued to do so. *See* House Decl., ¶ 6; Amended Declaration of

16 Elaine Wallace In Support of Defendants' Motion to Compel Discovery Relevant to Plaintiffs'

17 Copyright Claims [Revised ¶ 13, Exhibit F] ("Amended Wallace Decl."), Docket No. 296, ¶ 13

18 & Ex. F at 5-10 (describing the relationship between the copyrights in the Third Amended

19 Complaint and Oracle's software and support materials, including application software); *id.* at

20 10-72 (providing additional detail regarding works embodying each copyright).

21         *The Second OIC 30(b)(6) Deposition Notice.* On February 24, 2009, Defendants

22 served their Amended Second Notice of Deposition of Plaintiff Oracle International Corporation

23 Pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Amended Second Notice"). *See*

24 McDonell Decl., ¶ 17 & Ex. 17. In Plaintiffs' Responses and Objections to the Amended Second

25 Notice, served April 8, Oracle agreed to designate a witness to provide general testimony "on the

26 subject of payments made to OIC relating to licensing of the Registered Works," "on the Cost

27 Sharing Agreements produced by OIC . . . [and] the general policies and procedures relating to

28 them," and on the locations of records relating to these topics, subject to Oracle's general and

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   specific objections. *See* House Decl., ¶ 7 & Ex. B.  Defendants deposed OIC's designee, Ms.

2   Uyen Ngoc Ann Kishore, on April 14, 2009.  McDonell Decl., ¶ 19 & Ex. 19.

3       **B.**      **Oracle Has Provided Reasonably Knowledgeable Witnesses In**
             **Response to Unreasonably Overbroad Notices**

4

5         The First Notice and the Amended Second Notice are exhaustive notices that,

6   together, sought excruciating detail about Oracle's (and its legacy entities') entire intellectual

7   property policy history and practice and its entire international inter-entity cost and revenue

8   structure.  Deposition notices such as these are the reason for the rule that "no one human being

9   can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently

10  complete account of all the bases for the contentions made and positions taken" by a party. *See*

11  *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991)), *rev'd*

12  *in part on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991); 134 F.R.D. at 288 (ordering that

13  "neither party . . . may pursue the bases for the other's contentions through 30(b)(6) depositions,

14  but, instead, may use appropriately framed and timed contention interrogatories for this

15  purpose").  As to the First Notice, because the Parties productively met and conferred, topics 5

16  and 6 were properly answered by interrogatory.

17        As to the Amended Second Notice, Ms. Kishore's deposition went forward

18  without any such productive meet and confer.  Your Honor observed at the May 27, 2009 Motion

19  to Compel hearing that "I hate to have real people have to memorize reams of information for a

20  30(b)(6)." House Decl., ¶ 35 & Ex. V at 15:7-8.  Ann Kishore, an attorney in Oracle's tax

21  department, is one such real person.  She is one of the people at Oracle most knowledgeable

22  about inter-entity agreements relating to royalties and about the sharing of software development

23  and other costs between various Oracle entities worldwide.  Monitoring and implementing these

24  inter-entity agreements, and working on the related tax aspects, is a full-time job.  She is not a

25  copyright lawyer or a software expert.  She likely could never testify competently to the specifics

26  of copyright registrations or the underlying works they reflect.  Oracle did not designate her to

27  testify about Registered Works.  It designated her to testify on the subject of the Amended

28  Second Notice – cost sharing and licensing agreement that applied to the product lines that

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   encompass the Registered Works.  To the extent Defendants sought something else, they did not

2   describe it with "reasonable particularity" in the Amended Second Notice.

3       **C.**     **Defendants' Motion to Re-Open Topic 5 of the First Notice as a**
            **"Threshold Issue" to the Amended Second Notice Must Be**
4            **Denied**

5            A 30(b)(6) designee "should be able to provide answers to questions that were

6   reasonably available to [the designating party] on the noticed topics." *Sony Elec., Inc. v.*

7   *Soundview Tech., Inc.*, 217 F.R.D. 104, 112 (D. Conn. 2002).  But, as to matters outside the

8   scope of the notice, the witness need respond only with the limits of his or her personal

9   knowledge.  *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000)

10  (citing *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("[I]f the [Rule 30(b)(6)]

11  deponent does not know the answer to questions outside the scope of the matters described in the

12  notice, then that is the examining party's problem.")).  The vast majority of Defendants' motion

13  on this topic results from asking repeatedly for information that was outside the scope of the

14  notice, or that does not exist, but never asking the questions that would so demonstrate.  Oracle's

15  document production provided ample notice to Defendants that they were asking unanswerable

16  questions because they were predicated upon false assumptions.  Further, Oracle's Interrogatory

17  13 response provided Defendants the means to construct proper questions within the noticed

18  topics.

19          **1.**     **Defendants' Motion Reveals Their Fundamental**
                **Misunderstanding of Oracle's Inter-Entity Agreements**
20

21          Defendants' primary complaint – that Ms. Kishore could not connect her inter-

22  entity cost-sharing testimony to specific Registered Works – reveals a misconception that

23  Defendants could have resolved simply by asking the right questions at her deposition.  In their

24  one and only substantive meet and confer communication about Ms. Kishore's testimony,

25  Defendants argued, "[a]s a threshold matter, each topic (and the various subtopics) [of the

26  Amended Second Notice] calls for a witness who is knowledgeable about the copyright

27  registrations asserted by Plaintiffs and the products protected by these registrations . . . ." *See*

28  House Decl., ¶ 9 & Ex. D at 2.  Almost all of Defendants' specific complaints stem from this

1    alleged deficiency.

2          However, this contention is both wrong and beside the point.  It is wrong because,

3    while the notice does mention the Registered Works, its topics all relate to Oracle's inter-entity

4    agreements.  The two cannot be combined in the way Defendants want to believe.  As Oracle

5    explained regarding this alleged "threshold issue":  "The information related to the noticed topics

6    [from the Amended Second Notice] - royalty payments, cost-sharing arrangements, and transfer

7    prices - does not operate on a registration-by-registration basis."  House Decl., ¶ 10 & Ex. E at 3.

8    No agreement between Oracle entities produced by Oracle in this matter distinguishes between

9    specific copyrights or their embodiments.  Accordingly, Ms. Kishore did not need – *and could*

10   *not obtain* – knowledge of the Registered Works in Oracle's Complaint as they relate to the way

11   Defendants wrote and interpret the Amended Second Notice.

12         Defendants' argument is also beside the point because this "lack of knowledge"

13   did not render Ms. Kishore unprepared.  To the contrary, when asked to testify about particular

14   product families, she did so.  *See, e.g.*, House Decl., ¶ 8 & Ex. C at 121:18-122:1  (describing

15   application of a cost-sharing agreement to a particular product line); *id.* at 128:19-25 (same).

16   Testimony concerning product families can be mapped back to the Registered Works through

17   analysis of Oracle's voluminous responses to Interrogatory No. 13.  Thus, knowledge of the

18   Registered Works is a red herring.  Defendants made no attempt to dispel this confusion at the

19   deposition, even though Oracle's discovery responses, including to Interrogatory 13, were

20   available to them.

21         As a result, Defendants' persistent attempts to blame Ms. Kishore's preparation,

22   rather than their own inartful questioning, lack merit.  *See, e.g.*, Mot. at 14:17-18 ("Ms. Kishore

23   was not able to testify [in relation to subtopics 1(b) and 1(c)] as to how the royalty rates . . .

24   relate to the Registered Works"); *id.* at 15:11-15 ("Ms. Kishore was wholly unprepared to testify

25   regarding the Registered Works, which made it impossible for her to testify regarding [subtopic

26   1(g)]."); *id.* at 15:18-19 ("Ms. Kishore was unable to offer any testimony relating to the

27   Registered Works, [and] therefore . . . regarding Topic 2."); *id.* at 16:13-15 ("Ms. Kishore had no

28   knowledge with respect to . . . how [OIC's transfer pricing policies] relate to the Registered

17

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   Works [, allegedly related to Topic 3].").  Though Defendants have only themselves to blame for

2   these failures, Oracle has offered to provide a declaration that provides the explanation set forth

3   above.  House Decl., ¶ 33 & Ex. T at 5.

4            **2.    Defendants' Complaints Relate to Matters Not Set
            Forth in the Amended Second Notice with "Reasonable**
5            **Particularity" as Required by Rule 30**

6        Moreover, to the extent Defendants' position is that the Amended Second Notice

7   combines two complicated topics into its wide-ranging categories, Defendants fail to meet their

8   burden to show that their notice met the requirement of describing "with reasonable particularity

9   the matter for examination."  Fed. R. Civ. P. 30(b)(6).  Defendants' motion fails on this ground

10  alone.

11        Had Defendants requested a mapping from the copyrights at issue in the Third

12  Amended Complaint to particular Oracle products or product lines in the Amended Second

13  Notice, Oracle would have objected,[8] and sought a protective order, if necessary, on grounds that

14  such a request precisely duplicated topic 5 of the First Notice.  As Defendants are well aware, the

15  Parties agreed that Oracle would supplement its response to Interrogatory 13 in a specific format

16  in lieu of providing a witness on topic 5 of the First Notice (because no witness could provide all

17  that information).  House Decl., ¶ 5.  Oracle has done so.  *See id.*, ¶ 6; Amended Wallace Decl.,

18  Docket No. 296, ¶ 13 & Ex. F.  The Court should not permit Defendants to feign ignorance of

19  Oracle's detailed response on this very issue or to burden Oracle with unnecessarily cumulative

20  discovery.  *Cf. United States ex rel Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 25 (D.D.C.

21  2006) (denying a motion to compel additional 30(b)(6) testimony regarding information that was

22  already the subject of an interrogatory); *id.* (ordering, as to a separate 30(b)(6) topic, that

23  "discovery . . . only be provided pursuant to [an] [i]nterrogatory . . . and not through further Rule

24  30(b)(6) deposition testimony.").

25  ───────────────

26  [8] Oracle did in fact specifically object to each Topic in the Amended Second Notice "insofar as
    any relevant information is sought by Defendants, it has been, or should have been, obtained
27  through the use of interrogatories" and "to the extent . . . cumulative and duplicative of . . .
    Defendants' other discovery requests . . . ."  House Decl., ¶ 7 & Ex. B at 5, 6, 7.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1    Oracle also would have objected because no Oracle employee is or could

2    reasonably become sufficiently knowledgeable both about Oracle's inter-entity royalties, cost-

3    sharing and transfer pricing (as is Ms. Kishore, as demonstrated in her testimony) and about the

4    Registered Works at issue (as the exhaustive interrogatory response provided by Oracle shows).

5    *Cf.* House Decl., ¶ 10 & Ex. E at 1-2 (discussing Ms. Kishore's qualifications).  Under the First

6    Notice, Defendants took the testimony of a separate Oracle 30(b)(6) witness, Mr. Todd Adler, on

7    issues related to the Registered Works, but agreed after meet and confer that the relationships

8    between Oracle's copyrights at issue in this matter and Oracle's application software and support

9    materials was more properly set out through Oracle's response to Interrogatory 13.  House Decl.

10   ¶¶ 4-5, 36 & Ex. W.  Even if Defendants' notice had included what it did not, there is no single

11   witness who knows or could memorize the mapping Defendants now seek.  And asking for such

12   testimony is not proper for a 30(b)(6) deposition, in any event.

13   **D.     The Court Should Deny Defendants' Request for Supplemental**
             **30(b)(6) Testimony Based on OIC's Proper Claims of**
14           **Attorney-Client Privilege**

15   Defendants' additional complaints include several naked efforts to discover the

16   content of confidential attorney-client communications, which the Court should also deny.  *See*

17   Mot. at 14:8-11, 16:13-17 (seeking the content of privileged communications regarding royalty

18   rates).  "The attorney-client privilege protects confidential disclosures made by a client to an

19   attorney in order to obtain legal advice, as well as an attorney's advice in response to such

20   disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (internal citations and

21   punctuation omitted).  Oracle properly instructed Ms. Kishore not to disclose the content of

22   confidential communications regarding legal advice.  *See* House Decl., ¶ 8 & Ex. C.  Since

23   Defendants have failed to even argue that Oracle improperly asserted privilege, this Court should

24   deny requests for further testimony on these subjects.

25   **E.     The Court Should Deny the Remaining Complaints as**
             **Overbroad, Irrelevant and Premature**
26

27   Defendants' remaining protestations are a grab bag of overbroad requests for

28   information for a Rule 30(b)(6) witness, which Oracle either properly objected to, addressed in

19

1  meet and confer, explained were not stated with "reasonable particularity" in the Amended

2  Second Notice, or which are unsupported by Defendants' citations to the record.

3          1.      **Defendants' overbroad complaints are not grounds for**
                   **supplemental 30(b)(6) testimony**
4

5          Defendants' complaints that Ms. Kishore "believed that her binders contained

6  only a subset of" Oracle's inter-entity agreements, *see, e.g.*, Mot. at 14:6-7, 15:3-4, are not well-

7  taken. Ms. Kishore brought an entire binder's worth of complicated inter-entity agreements so

8  that she could give her best testimony. These agreements represented the universe of *relevant*

9  agreements as Oracle understood the topics and on which Ms. Kishore had prepared her

10  testimony related to the noticed topics. House Decl., ¶ 10 & Ex. E at 4. She had no obligation to

11  bring *any* documents with her, and could properly have declined to answer questions for which

12  she would need the document to give the best answer. Instead, Oracle went the extra mile.

13  Because Ms. Kishore's binder did not include documents unnecessary to the noticed topics,

14  Defendants file this motion. The Court and the Parties have better things to do with their time.

15          2.      **Defendants complain of deficiencies as to which they do**
                   **not cite any examples or which exceed the scope of the**
16                 **notice**

17          Rote recitation of Defendants' subtopics with no supporting citations to the record

18  are an insufficient basis upon which to bring a motion to compel. Discussing subtopics 2(a),

19  2(b), 2(c) and 2(d)-(e), respectively, of the Amended Second Notice, Defendants complain that

20  Ms. Kishore could not identify:

21          "specific costs that were shared under the cost-sharing agreements
            . . . ; how costs are allocated among participants under the cost-
22          sharing agreements . . . ; the OIC policies or procedures for
            implementing the terms of the cost-sharing agreements . . . ; and
23          whether there are any other agreements or records concerning cost
            allocation . . . including the terms of such agreements and the
24          locations of such records . . . ."

25  Mot. at 15:23-16:2. Following this long recitation is a string of citations to the transcript of Ms.

26  Kishore's deposition, dealing with, respectively, the meaning of the word "policy" in one clause

27  of one agreement produced to Defendants, the "significance" of a particular agreement produced

28  to Defendants, the "purpose" of an obligation created by a particular agreement produced to

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1    Defendants, a question about how a particular agreement produced to Defendants relates to

2    Oracle's tax strategy, and a hypothetical relating to how certain entities' research and

3    development costs would be allocated under a particular agreement produced to Defendants

4    (where the agreement did not specify how any such allocation would occur for those entities).

5    *See* McDonell Decl., ¶ 19 & Ex. 19 at 78:25-79:2, 82:21-83:3, 94:22-95:3, 105:25-107:23 and

6    125:21-126:7; Mot. at 16:2 (citing the referenced testimony).

7            None of the citations here evidence Ms. Kishore's lack of preparation to the listed

8    subtopics, all of which were subject to Oracle's timely objections.[9]  This sort of sleight-of-hand

9    serves neither Defendants nor the Court.

10           Similarly, in support for its complaints regarding Ms. Kishore's preparation on

11   transfer pricing policies and procedures, topic 3 of the Amended Second Notice, Defendants'

12   questioning jumped from establishing the existence of transfer pricing policies to a question as to

13   whether certain records existed that were "designed to establish" the fact of compliance with the

14   policies. *See* McDonell Decl., ¶ 19 & Ex.19 at 155:1-7; Mot. at 16:9-12 (citing the referenced

15   testimony).  Ms. Kishore's testimony arguably shows a lack of knowledge as to the *purpose*

16   behind the creation of certain records, if such records exist, but that subject goes beyond the

17   notice.  It does not show a failure to prepare for the noticed topics as much as a poorly framed

18   question on a complex subject not specified with reasonable particularity.

19           Similarly, subtopic 1(d), timely objected to by Oracle, querying "the types of non-

20   royalty payments received by OIC in connection with the Registered Works and how they are

21   calculated" (House Decl., ¶ 7 & Ex. B  at 3) does not set forth with reasonable particularity

22   Defendants' apparent expectation that Ms. Kishore was required to understand *all* of "OIC's

23   business outside of the receipt of royalty payments." Mot. at 14:19-21.

24           Defendants' cited evidence is irrelevant to the listed subtopics and Defendants

25   may not pursue the relief they seek – or answers from Ms. Kishore – pursuant to the Amended

26   _____

27   [9] Viewed charitably, the last of the citations relates to subtopic 2(b), though Defendants can
     hardly move to compel Ms. Kishore to respond to their counterfactual hypothetical.

28

1   Second Notice. If they now have more specific or different questions, then a more specific and

2   different notice, not a motion, is the way to proceed.

3         **F.**    **The Court Should Deny Defendants' Motion to the Extent**
        **Mooted By Oracle's Compromise Offer**

4

5           Finally, Oracle has agreed to reopen OIC's 30(b)(6) deposition as to topics 1-3 of

6   the Amended Second Notice, in part, subject to Oracle's general and specific objections and

7   certain conditions. *See* House Decl., ¶ 33 & Ex. T at 5. Oracle conditioned this offer on

8   Defendants' agreement that Oracle can instruct its 30(b)(6) designee(s) not to answer questions

9   that relate neither to Siebel nor to a specific list of inter-company agreements that have been

10  produced since the previous deposition. *Id.* Defendants' motion should be mooted and denied,

11  to the extent that it overlaps with the agreed-upon material and subject matter.

12  **V.   DEFENDANTS' FAILURE TO ENGAGE IN ANY MEANINGFUL**
        **MEET AND CONFER INDEPENDENTLY WARRANTS A DENIAL**

13       **OF THE GENERAL LEDGER AND RULE 30(B)(6) MOTIONS**

14          As an independent ground, both the General Ledger and Rule 30(b)(6) motions

15  fail for lack of the required meet and confer before filing.

16          Pursuant to Your Honor's July 26, 2005 Standing Order: "The Court will not

17  consider discovery motions unless the moving party has complied with Fed. R. Civ. P. 37 and

18  Civil L.R. 37-1(a)." Rule 37-1(a) requires "counsel [to] have previously conferred for the

19  purpose of attempting to resolve *all* disputed issues." Civil L.R. 37-1(a) (emphasis supplied).[10]

20  The meet and confer "requirement is *mandatory.*" *Hernandez v. Sutter Medical Center of Santa*

21  *Rosa,* No. 06-03350, 2008 WL 2156987, at *6 (N.D. Cal. May 20, 2008) (Armstrong, J.)

22  (describing that court's meet and confer requirement pursuant to its standing order, similar to

23  Your Honor's July 26, 2005 Standing Order and August 22, 2005 Order Re Discovery); Fed. R.

24      ————————————————

25  [10] Your Honor's August 22, 2005 Order Re Discovery Procedures also requires that the moving
    party submit a "declaration setting forth . . . the final positions of each party." Defendants failed

26  to meet this requirement for the new General Ledger request as set forth in Defendants' Motion
    because having not previously seen the request prior to Defendants' Motion, Oracle was unable

27  to take a position with respect to it.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION

1   Civ. P. 37(a). "[T]he requirement is not a mere formality. Nor is it a duty the parties may take

2   lightly." *Hernandez*, 2008 WL 2156987, at *6. The requirement facilitates compromise and

3   ensures that the Court intervenes only when problems are truly insurmountable. *See, e.g.,*

4   *Washburn v. Fagan*, Nos. C-03-00869, C-03-1194, at 2 (N.D. Cal. Mar. 10, 2006) (Laporte, J.)

5   (finding "no indication that the parties engaged in meaningful meet and confer discussions" in

6   part because "[t]here was no attempt to compromise" and the parties did not meet and confer

7   "about every question to which [p]laintiffs now seek an answer").[11] Failing to meet and confer

8   before filing a motion to compel means that Court and parties alike waste time and resources –

9   not only because the parties could have solved the dispute on their own, but also because without

10  meet and confer, the issues are not honed down to the fundamental disagreements and are more

11  trouble to sort out. *See, e.g., Crossbow Tech., Inc. v. YH Tech.*, No. 03-04360, 2007 U.S. Dist.

12  LEXIS 25926, at *2-3 (N.D. Cal. Mar. 26, 2007) (Laporte, J.) (denying defendant's motion to

13  compel without oral argument due to a lack of meet and confer); *Leyva v. Kernan*, No. C 08-

14  1152 SI, at 2 (N.D. Cal. Feb. 9, 2009) (finding that beginning the meet-and-confer process

15  "seven days before [the] motion to compel was mailed [] did not give the meet-and-confer

16  process a chance to work").[12]

17          Here, Defendants failed to meet and confer adequately on the outstanding requests

18  prior to filing their motion, and the Court should deny the motion on that ground alone.

19          As to both the General Ledger and the further 30(b)(6) testimony, Defendants

20  have made insufficient effort to address, and have refused to address despite Oracle's multiple

21  requests in each case, Oracle's concerns. On the other hand, Oracle has repeatedly sought

22  compromise.

23          *Defendants' Have Ignored Oracle's Attempts to Reach a Compromise.* Regarding

24  the General Ledger, Defendants never contradicted or otherwise responded to Oracle's May 11

25  description of the extreme burden that responding to the 73-page General Ledger request would

26  _____

27  [11] For the Court's convenience, a copy of this case is attached as Exhibit Y to the House Decl.
    [12] For the Court's convenience, a copy of this case is attached as Exhibit X to the House Decl.

28

1    cause, despite Oracle's repeated requests that they narrow the request so that Oracle could

2    respond to it. *See* pp. 8-9 above.  Indeed, Defendants actively avoided learning how to refine

3    that request by unilaterally cancelling the deposition of the person most able to help them

4    understand Oracle's General Ledger processes and abilities. *See* p. 9, above.  Defendants have

5    never disputed that Mr. San Juan would have been able to educate them about Oracle's charts of

6    accounts and General Ledger, and their claim that Oracle offered to let him participate in a

7    telephonic meet and confer is incorrect and not supported by any contemporaneous

8    correspondence. *See* p. 9, above.  Defendants have also resisted Oracle's three further offers to

9    provide him for a deposition that would presumably allow them to narrow their request.

10            Instead, Defendants moved to compel a new request for general ledger data before

11    meet and confer was properly underway, let alone complete.  That Oracle's investigation into

12    Defendants' new request and the substantive meet and confer continue weeks after the filing of

13    this motion, with both parties changing positions and compromising further, underscores that this

14    motion is not ripe for decision.

15            *Defendants Fail to Respond to Oracle's 30(b)(6) Meet and Confer Letter.*  On

16    May 6, 2009  Defendants wrote to Oracle, alleging deficiencies in Ms. Kishore's preparation.

17    House Decl., ¶ 9 & Ex. D.  Oracle responded on May 22, stating its position that the alleged

18    deficiencies either related to knowledge fully within the scope of topic 5 of the First Notice and

19    thus already addressed through Interrogatory 13, related to documents not relevant to this action

20    and thus never produced by Oracle, or were otherwise outside the scope of and not specified by

21    the notice. *Id.*, ¶ 10 & Ex. E.  As to Defendants' claimed "threshold issue," Oracle explained

22    why Ms. Kishore could not be expected to provide Registered Work-specific cost information

23    (and why no one could), and why that did not matter because Defendants could still have asked

24    questions to get the information they wanted (and did, in some cases). *See id.* at 3.

25            On June 4, in a telephonic meet and confer, Oracle requested a response to its

26    May 22 letter with respect to Ms. Kishore's testimony.  House Decl., ¶ 11.  On July 9, during a

27    telephonic meet and confer regarding Defendants' motion to compel and motion for sanctions,

28    Defendants declined to respond to Oracle's May 22 letter, stating merely that they "disagreed"

1   with Oracle.  *See* House Decl., ¶ 12; McDonell Decl., ¶ 1 & Ex. 1 at 3.

2              Rather than engage in a conversation designed to lead to a solution through meet

3   and confer, Defendants improperly chose to ignore Oracle's May 22 letter and move to compel,

4   almost two months later.  *See Crossbow Technology,* 2007 U.S. Dist. LEXIS 25926 (finding that

5   waiting two months to respond to a meet and confer letter was a failure to meet and confer).

6   Since then, Defendants added in their July 23 letter that they considered the issue "joined," but

7   never attempted to compromise or address Oracle's response.  House Decl., ¶ 34 & Ex. U at 2.

8   Statements that counsel "disagree" and consider the issue "joined" are simply not adequate to

9   satisfy a party's meet and confer obligations, and the Court should deny their request for

10  supplemental testimony on this ground.

11             In short, Defendants' failure to properly meet and confer on all issues *prior* to

12  filing the motion merits its denial.  *See* Your Honor's July 26, 2005 Standing Order; *see also,*

13  *e.g., Hernandez,* 2008 WL 2156987, at *6;  *Washburn,* Nos. C-03-00869, C-03-1194, at 2;

14  *Crossbow Technology,* 2007 U.S. Dist. LEXIS 25926, at *2-3.

15  **VI.    CONCLUSION**

16             Based on the foregoing, Oracle respectfully requests that the Court deny

17  Defendants' motion to compel further financial information.

18  DATED:  July 28, 2009

19

20                                      Bingham McCutchen LLP

21

22                              By:_____/s/ Holly A. House_____

23                                      Holly A. House
                                        Attorneys for Plaintiffs
24                                      Oracle USA, Inc., Oracle International
                                        Corporation, and Oracle EMEA Limited

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL
INFORMATION