# EXHIBIT C

Dockets.Justia.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ORACLE CORPORATION, a           )
     Delaware corporation, ORACLE   )
USA, INC., a Colorado           )
     corporation, and ORACLE     )
INTERNATIONAL CORPORATION, a    )
     California corporation,      )
                                )
          Plaintiffs,    )
                                )
          vs.            ) No. 07-CV-1658 (PJH)
                                )
     SAP AG, a German corporation,   )
SAP AMERICA, INC., a Delaware   )
     corporation, TOMORROWNOW,   )
INC., a Texas corporation, and  )
     DOES 1-50, inclusive,       )
                                )
          Defendants.    )
_____ )

VIDEOTAPED 30(b)(6) DEPOSITION OF
ORACLE INTERNATIONAL CORPORATION
THROUGH ITS DESIGNEE
UYEN NGOC ANN KISHORE

TUESDAY, APRIL 14, 2009

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
REPORTED BY: HOLLY THUMAN, CSR No. 6834, RMR, CRR
(1-417372)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   Q. Okay. So does that mean of the -- well,

19   what's the PeopleSoft application revenue and

20   related support? Is that a calculated number that

21   you have to calculate under the agreement?

22   A. So "PeopleSoft Application Revenue" is

23   defined here in the agreement. And it means net

24   revenue received from the following product lines:

25   PeopleSoft Enterprise and J.D. Edwards

1    EnterpriseOne.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19    Q. Okay. Did you track the R&D costs related
20    to JDE World as part of the administration of the
21    Cost Sharing Agreement?
22    A. Yes.
23    Q. And why?
24    A. Because JDE World is not part of the
25    definition of "research activity."

Oracle_SAP                    Kishore, Ann - OIC 30(b0(6) - Final                    4/14/2009

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Q. Was Baker & McKenzie serving as counsel to

19    someone in connection with this matter, matter I

20    mean being the setting of that royalty rate?

21    A. Baker -- I don't know the answer to that

22    question. Could you maybe rephrase it?

23    Q. Was Baker & McKenzie representing some

24    Oracle entity in connection with the computer

25    software buy-in agreement you mentioned?

1   A. I don't know.

2   Q. Was Baker and -- what is your understanding

3   as to why Baker & McKenzie provided you with a

4   spreadsheet of financial information?

5   A. Sure. So we asked Baker & McKenzie to

6   assist us in determining the appropriate royalty

7   rate associated with this particular agreement.

8   Q. In that capacity, did you understand Baker

9   & McKenzie was representing some Oracle entity?

10  A. No.

11  Q. Okay. Well, what is your understanding of

12  why they were doing what they were doing if they

13  weren't counsel?

14  A. Well, we asked them to assist us with

15  determining the appropriate royalty rate hereunder.

16  They did assist us as well in drafting the

17  agreement, and we asked them to assist us in

18  determining the dollar amount associated with the

19  royalty payment hereunder.

20  Q. And -- but they were not acting as your

21  attorneys in that capacity?

22  A. I'm sorry, I thought you were asking if I

23  knew which entity Baker was acting in its capacity

24  as, and I -- to be honest, I don't know which Oracle

25  entity.

1   Q. But it was some Oracle entity?

2   A. Yes, because Oracle asked them.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6   MR. McDONELL:  Q.  So you've told us that

7   there is some license between OIC and a third party

8   of intellectual property.  Right?

9   A.  Yes.

10  Q.  Did that information get told to you by an

11  attorney?

12  MR. HOWARD:  You can answer that "yes" or

13  "no."

14  THE WITNESS:  Yes.

15  MR. McDONELL:  Q.  Who was the attorney?

16  A.  T.J.

17  Q.  When was that told to you?

18  A.  Within this year.

19  Q.  Did he tell you that the information -- the

20  fact of there being such a license with a third

21  party was privileged and confidential?

22  MR. HOWARD:  I'm going to instruct you not

23  to answer that question on grounds of

24  attorney-client privilege.

25  Now you are getting into the content of the

| | |
|---|---|
| 1 | communication, Counsel. |
| 2 | MR. McDONELL: I have to test whether it's |
| 3 | really privileged. |
| 4 | MR. HOWARD: Well, you've laid your |
| 5 | foundation as to the participants in the |
| 6 | conversation. |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1

2

3

4

5

6

7

8

9

10

11

12

13    MR. McDONELL:  Q.  Was the memo given to

14    you by Baker & McKenzie?

15    A.  Yes.

16    Q.  Did it contain legal advice, or was it just

17    a quantitative calculation?

18    A.  It does contain legal advice.

19    Q.  Did you consider it to be confidential at

20    the time they gave it to you?

21    A.  Yes.

22    Q.  Have you kept it confidential since the

23    time you received it?

24    A.  Yes.

25    Q.  Was it your expectation when you received

1    it that you might have to turn it over to auditors

2    from the State of California Franchise Tax Board?

3    MR. HOWARD: Objection. Calls for

4    speculation.

5    THE WITNESS: It was not my expectation.

6    MR. McDONELL: Q. Was it your expectation

7    that you might have to turn it over to any taxing

8    authorities?

9    A. Yes.

10    Q. Okay. Which taxing authorities?

11    A. The Internal Service Revenue.

12    Q. Have you turned it over to the IRS?

13    A. No. I'm sorry, it's Internal Revenue

14    Service. I'm sorry.

15

16

17

18

19

20

21

22

23

24

25