# EXHIBIT S

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

July 21, 2009

VIA E-MAIL

Holly A. House, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Re: Case No. 07-CV-1658; *Oracle USA, Inc., et al. v. SAP AG, et al.*;
<u>U. S. District Court, Northern District of California, San Francisco Division</u>

Dear Holly:

This responds to your July 14, 2009 letter concerning damages discovery and our pending motion to compel.

As I have indicated repeatedly, most recently during our call with Mr. Alinder and others on July 16 and in my July 13 letter to you, we would still very much like to resolve these issues and get the information we need without the need for Court intervention.

**General Ledger Information**

I disagree with your description of our prior discussions on this issue. It is true that we previously offered to try to identify from the chart of accounts that you provided the accounts for which we seek the underlying general ledger information. After we went through that process, your team (Mr. Jindal, in particular) argued that the request was still too burdensome and that we had selected accounts which we do not need. Thus, your suggestion that Plaintiffs have not offered and will not offer any input on which accounts our expert reasonably needs is mistaken. Indeed, if that were true, then Plaintiffs would be in no position to oppose our motion for the general ledger, as Plaintiffs will have no input on what we do or do not need.

Mr. Jindal's feedback led to the further discussion of working cooperatively to try to determine which accounts might be sufficient. We specifically discussed the possibility that the parties' experts and Mr. San Juan might participate in those discussions.[1] Indeed, in your July 14 letter, you acknowledge that the parties discussed getting input from Mr. San Juan as part of the meet and confer process. While you suggest that his input was to be limited only to the purported burdens to Plaintiffs, I do not recall your imposing that limitation at the time. Rather, I came away with the clear understanding that Plaintiffs were willing to work informally to resolve this issue. We remain willing to do so.

---

[1] In my July 13 letter, I confirmed that your team had indicated that Mr. San Juan "may" be able to participate in those discussions. I did not assert that your team had absolutely committed to do so.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Holly A. House, Esq.  **JONES DAY**
July 21, 2009
Page 2

In our July 9 call, you stated that Plaintiffs are *not* willing to engage in the informal discussions and the only vehicle we have for obtaining more information about the structure of Oracle's charts of accounts and general ledgers is by depositions. You have also refused to produce a corporate designee to explain the charts of accounts and have only offered to produce Mr. San Juan in his individual capacity.[2] If that remains your position, then we will continue to pursue our motion on this issue. If on the other hand, you will discuss with us informally how to limit the request for general ledger information, including substantive feedback on which accounts nature of the accounts we need (as opposed to only the burden issue), then we remain willing to have those discussions.

**Product Profitability Reports**

I do not agree that we asked for product profitability reports for the first time on July 13. In fact, Defendants have been seeking them since serving their First Request for Production of Documents in July 2007. This is documented in my June 12, 2009 letter to Mr. Alinder ("Defendants have diligently sought discovery of Oracle's profit margins for the relevant product lines . . .") and in our motion to compel. I thus also do not agree that we have asked for such documents only in our Third Targeted Search Request.

Despite your various excuses for not having produced these documents long ago, you have now committed to produce them as well as the underlying source documents by mid-August. Of course, the sooner we get them the better. Again, given the history of mis-information about the existence of these reports, we are not inclined to withdraw this subject from our motion until we actually receive and have an opportunity to evaluate the documents you produce. Depending on when you produce the documents, there may be an opportunity for us to notify the Court in advance of the hearing that this issue is resolved.

With respect to Plaintiff-specific financial statements, I again disagree that we are asking for this for the first time. We believe it is likely that these financial statements will provide insight into the profitability of the relevant product lines. Given that Plaintiffs have produced virtually no financial information specific to the actual Plaintiffs in this case, it is hard to imagine that this information is not relevant and responsive to our requests. Please let us know if it is your contention that that the profit and loss statements of the Plaintiff entities are completely irrelevant and Plaintiffs will not rely upon them in any way. Even if that is the case, however, we will continue to seek their production.

As to your refusal to produce these financial statements on a monthly, quarterly and yearly basis, we are willing to accept them on a monthly basis. As to your request for clarification of the reference to "account entries for each account," we are seeking all of the account information that feeds into the line items on the financial statements.

---

[2] *See* Plaintiffs' Responses and Objections to Defendants' Third Notice of Deposition of Plaintiff Oracle USA, Inc. Pursuant to Fed. R. Civ. Proc. 30(b)(6), p. 5.

Holly A. House, Esq.                                                               **JONES DAY**
July 21, 2009
Page 3

Please let us know specifically, in writing, which financial statements you now agree to produce and when you expect to produce them.

### OIC Rule 30(b)(6) Testimony

Our deposition notice required, among other things, a witness to testify about the "royalty payments, received by or due to OIC in connection with the Registered Works" and "[i]dentification of each source of such payments ...."

The obvious purpose of this topic is to get discovery about the payments that OIC receives for its licenses to other entities of the intellectual property at issue in this case. If, as alleged, Plaintiffs lost support revenues as a result of TomorrowNow's infringement of OIC's alleged Registered Works, then the lost revenue to OIC is a function of the lost royalties that would have been paid to OIC. As I understand it, OIC does not license the Registered Works directly to end-user customers. Rather, OIC licenses the Registered Works to other Oracle affiliates who, in turn, license to customers.

OIC's witness, Ms. Kishore, testified unambiguously that she did not know what copyrights OIC owns:

> "Q. Do you have any idea what copyrights Oracle International owns?
>
> "A. I don't have any specific knowledge with respect to specific copyrights."

Kishore Dep., 47:12-15. When asked if OIC "has any way of knowing what intellectual property it owns," she responded: "I imagine that someone in the legal department might have that information." *Id.*, 47:18-23. Similarly, she testified that she was not prepared to testify about "the extent to which Oracle International Corporation has licensed out any of its intellectual property relating to PeopleSoft or J. D. Edwards lines of products." *Id.*, 48:20-49:1. She admitted that she had not made "any effort to determine which copyrights are at issue in the case." *Id.*, 50:9-11.

Our deposition notice clearly defined a "Registered Work" as "a work underlying a federal copyright registration identified in the Complaint and any subsequent amendments to the Complaint." Ms. Kishore acknowledged this fact, but then testified as follows:

> "Q. So what I am trying to understand is, as part of your preparing to testify today, did you come to understand what the registered works were so you could find out what payments may have been received . . . for those registered works?
>
> "A. Yes. So again, I did not look at the – I did not study the list of registered work in the complaint, and I would not have particular

Holly A. House, Esq.                                                    **JONES DAY**
July 21, 2009
Page 4

> knowledge with regards to specific registered works in the complaint itself."

Kishore Dep., 52:9-19.

She testified that she "imagine[s]" that the Registered Works relate to a subset of the products on Oracle's Global Price List, but she does not know which Registered Works relate to which products. *Id.*, 166:14-25. As a result of this lack of knowledge, Ms. Kishore was completely unable to tie any payments received by OIC to any of the Registered Works at issue in the case.

Frankly, I have a difficult time understanding your argument on this issue. Without the ability to tie OIC's right to receive any payments for its license of the Registered Works to its affiliates, OIC cannot make out a case of lost profits.

There should be no doubt in your mind what information we are seeking through this deposition and why we are seeking it. It is also clear that we have been frustrated in our efforts to get it. I you have a specific proposal by which to cure the deficiencies of this deposition, we will consider it in good faith. For example, if you wish to provide a verified written statement with supporting documents, we will consider it.

**Interrogatories Nos. 119-121**

I also note that yesterday you served objections to our Interrogatories Nos. 119-121 and have referred to documents rather than providing substantive responses. If you seriously contend that the referenced documents are sufficient to show each Plaintiff's alleged lost profits from the customers who chose to obtain support from TomorrowNow, I propose that you provide us with a specific example of how that can be done. For example, I understand that Plaintiffs plan to make a lost profits claim with respect to lost support revenues from Pepsi Americas. I propose that you provide us a written explanation, with specific references to the documents, of how we can determine from the documents you have produced the information requested by Interrogatories Nos. 119-121 as it relates to Pepsi.

Please let me know if you would like to discuss any of these issues by telephone this week, and we will try to make ourselves available. Thank you.

Very truly yours,

/s/ Jason McDonell

Jason McDonell

| cc: | Zachary Alinder | VIA E-MAIL |
|---|---|---|
| | Bree Hann | VIA E-MAIL |
| | Donn Pickett | VIA E-MAIL |
| | Geoff Howard | VIA E-MAIL |

Holly A. House, Esq.  JONES DAY
July 21, 2009
Page 5

    Nitin Jindal                            VIA E-MAIL
    Greg Lanier                        VIA E-MAIL
    Scott Cowan                      VIA E-MAIL
    Elaine Wallace                VIA E-MAIL
    Jane Froyd                        VIA E-MAIL
    Joshua Fuchs                   VIA E-MAIL
    Jacqueline Lee                VIA E-MAIL

SFI-615013v1