# EXHIBIT T

# BINGHAM

Holly A. House
Direct Phone: 415.393.2535
Direct Fax:     415.393.2286
holly.house@bingham.com

July 22, 2009

**Contains Highly Confidential Information**

**Via Email**

Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

Re:  *Oracle USA, Inc. et al. v. SAP AG, et al.*

Dear Jason:

This letter responds to your July 21, 2009 letter regarding your pending Motion to Compel.

Although you claim to want to resolve outstanding issues without the need for Court intervention, we note that you are unwilling to remove issues from your motion even where we have agreed to produce the requested information. Instead, you continue to waste the Court's and both Parties' resources. In contrast, when Defendants agreed to produce information that was subject to requests made in Oracle's recent Motion to Compel, we appropriately withdrew those requests from the Court's attention, and did not make that withdrawal contingent on receiving and evaluating the documents. We do not expect the Court to look favorably on your actions in this respect and ask you again to confirm your withdrawal of these mooted issues from the Court's attention.

**A. General Ledger Information**

Once again, we have never been opposed to producing general ledger information so long Defendants' request for that information is not overly broad or unduly burdensome. This was the objection we made to your initial April 29 request, noting that it would take many months of dedicated effort to collect the requested information. You have never disputed this.

On May 11, when Nitin Jindal explained the various reasons for that burden, he in fact gave you a roadmap for revising your request to one that would be less burdensome. For example, he told you that three reasons your initial request was so burdensome and included improper accounts are (a) that the request was not limited to specific Oracle entities and would thus require reports to be run from over 700 business units; (b) Oracle does not preserve its historical charts of accounts, which means Oracle would have to manually reconstruct all of the data it pulled in order to match previously reported

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

Jason McDonnell, Esq.
July 22, 2009
Page 2

figures; and (c) obtaining transaction-level detail (as opposed to trial balances) requires running further reports from sub-accounts because many of the accounts on your 73-page list are "parent" accounts. Based on these three reasons alone, and certainly with the aid of your highly qualified experts, you could have revised Defendants' request to make it less burdensome by limiting your request to the Plaintiff entities, eliminating the need for information that ties to historically reported numbers, and accepting trial balance-level information. You have never even tried. Additionally, changing the nature of your request based on these guidelines could avoid a discussion about the relevance of the individual accounts you chose. However, over the past three months, you have been unwilling to modify your burdensome request, along these or any other lines.

Indeed, your first attempt to modify your April 29 request was on July 14 -- in your motion to compel. This is a clear violation of the meet and confer requirements. Motions are not the first place to be making new or modifying old discovery requests. Additionally, although you now agree that your initial request was unduly burdensome and needs to be narrowed, the request in your Motion appears to actually be broader and more burdensome in certain respects.

As we have always said, we are willing to engage in informal discussions about how to narrow your general ledger request. We disagree that we said otherwise in our July 9 call. What we said during that call was that we would discuss any narrowing by you with Alex San Juan, not that we would include him directly on our meet and confer calls. This was a generous offer made in good faith to help resolve this issue, particularly considering that you previously had a chance to depose Mr. San Juan on these issues and unilaterally cancelled the deposition. You have never adequately explained why Defendants cancelled his deposition or why these requests are unreasonable. Indeed, had you proceeded with his deposition on June 19, you would have had his testimony and, presumably, could have had the information you need to narrow the general ledger requests to something more reasonable.

We reiterate that we are willing to engage in informal discussions between counsel. However, as I told you in my July 14 letter to you, we will not provide Mr. San Juan without formal deposition protections, a transcript, and unless the time counts against your deposition hours.

As I also said in my July 14 letter, we remain willing to provide Mr. San Juan for a deposition, fly him to San Francisco from the East Coast, and can do so as soon as can be scheduled. We will also provide him as a Rule 30(b)(6) corporate designee, and as you have in the past, you can bring your experts to the deposition to ask whatever questions you need to help narrow your general ledger request to one that is not unduly burdensome. This would serve the same purpose as the meet and confer you have asked for him to join and should moot this item in your motion.

Because we are willing to produce a reasonable subset of relevant general ledger information, and the only current issue is one of burden, you should remove this request

Jason McDonnell, Esq.
July 22, 2009
Page 3

from your motion. It is not appropriately ripe under the rules. Please let us know your intentions.

**B. Pre-Existing Product Profitability Reports**

Next, we disagree with your characterization of when you sought these reports. As you know, your formal requests for production were only applicable to custodial productions. When we found product profitability reports in the documents of the custodians you identified, we produced them. This is why you have some of these reports and why you were able to use them in depositions.

The first time you asked Oracle *to search* for product profitability reports as a non-custodial search was in your May 20, 2009 "Third" Targeted Search Request. Yet, in this request, you only pointed us to Oracle reporting systems, the Oracle shared tax drive, and Ann Kishore's testimony. It was not until our July 9 call that you mentioned the reports referred to by Larry Ellison and Juergen Rottler. After we explained that these were manually created ad-hoc reports and agreed to produce them, you then waited until July 13 before you asked for the underlying source data. Discovery procedures and meet and confer exist for a reason, and your complaints boil down to your requests for information that does not exist and your inability to effectively ask for the information you want. That you waited until Spring and Summer of 2009 to take the depositions of the Oralce witnesses that can provide you with these answers is your fault, not ours.

Nonetheless, we have agreed to collect and produce this information, and again do not understand why you will not agree to withdraw this issue from your motion.

**C. Plaintiff-specific financial statements**

Although you claim to have asked for plaintiff-specific income statement reports prior to July 13, you have not pointed us to one discovery request to support that claim. The only request that comes remotely close is Defendants' "Third" Targeted Search Request, where you very specifically tie plaintiff-specific reports to product profitability. You finally seemed to accept such reports did not exist on July 13, and for the first time asked for regular profit and loss statements. The next day, we agreed to provide plaintiff-specific income statement reports.

As for the detail you desire, your request for "all of the account information that feeds into the line items on the financial statements" would in essence require a complete production of Oracle's general ledger. At this stage of the meet and confer, we do not understand why you continue to think this is a report Oracle can just produce off-hand or that collecting the entire general ledger is not unduly burdensome. If Defendants want to know which accounts feed into certain line items, you should look at Oracle's charts of accounts, not cancel the deposition of people who can further explain Oracle's charts of accounts, or use some other discovery device to determine how Oracle's accounting systems function.

Jason McDonnell, Esq.
July 22, 2009
Page 4

Regardless, since your request last Monday, we have investigated the highest level of detail that can be provided on a profit and loss statement. The profit and loss statement with the highest level of detail is a "Detailed Income Statement Report" generated from OFA. Any further detail would require Oracle to redesign its reporting systems. The OFA "Detailed Income Statement Report" contains over 200 line items that feed into the reported net income. We are willing to provide you with such statements on a monthly basis from Oracle's fiscal year 2005 to the present for each Plaintiff entity. We expect we can do so by August 30.

Given our willingness to produce these reports, we expect you to withdraw this request from your motion. Again, please immediately tell us your intentions.

### D. OIC Rule 30(b)(6) Testimony

We note that you still have not addressed the merits of Zac Alinder's May 22, 2009 meet and confer letter. Even though two months have passed, your response does nothing but restate your initial issues in a more narrowed fashion. This hardly constitutes sufficient meet and confer.

Topic 5 of Defendants' First 30(b)(6) Notice to OIC was: "For each of the Registered Works, identification of the software . . . allegedly covered by the registrations, identified by title, version number, file name, or other applicable identifying information." Subject to OIC's timely objections, the parties met and conferred, ultimately agreeing that Oracle would supplement its response to Interrogatory No. 13, rather than provide a witness as to Topic 5 of the First Notice. As demonstrated by, *e.g.*, Ex. F to Mr. Alinder's Declaration in Support of Oracle's Opposition to Defendants' Motion to Compel Further Copyright Information, Docket No. 300, Oracle proposed, and Defendants accepted, Oracle's specific proposal to supplement its Response to Interrogatory No. 13 with module information and other specifically enumerated information in lieu of providing a witness in response to Topic 5. Oracle has since supplemented that response two more times, and intends to do so again.

Subject to Oracle's general and specific objections, in response to Defendants' Amended Second 30(b)(6) Notice to OIC, Oracle designated Ms. Kishore to provide general testimony "on the subject of payments made to OIC relating to licensing of the Registered Works," "on the Cost Sharing Agreements produced by OIC . . . [and] the general policies and procedures relating to them," "concerning OIC's Cost Sharing Agreement policies and procedures relating to the Registered Works," and on the locations of records relating to these topics. *See* Plaintiffs' Responses and Objections to Defendants' Amended Second 30(b)(6) Notice to OIC. In response to each Topic, Oracle specifically objected that "insofar as any relevant information is sought by Defendants, it has been, or should have been, obtained through the use of interrogatories, document requests, or requests for admission."

Defendants chose not to inform their questioning of Ms. Kishore with the information disclosed in Oracle's response to Interrogatory No. 13. Instead, Defendants inexplicably

Jason McDonnell, Esq.
July 22, 2009
Page 5

attempted to examine Ms. Kishore about Topic 5 of Defendants' First 30(b)(6) Notice to OIC. Such examination was outside the scope of Ms. Kishore's designation, and therefore limited by Ms. Kishore's personal knowledge. While Defendants may regret their choice to depose Ms. Kishore, rather than meet and confer as to Oracle's objections and the proper scope of examination, Defendants can only blame themselves for that strategy decision.

As Defendants are aware, Oracle has proposed to make a 30(b)(6) designee available solely with respect to Siebel on Topics 1-3 of the Amended Second Notice, subject to Oracle's general and specific objections, on September 25, 28 or 29. In the spirit of compromise, Oracle is further willing to make a 30(b)(6) designee available, subject to Oracle's general and specific objections, with respect to Topics 1-3 of the Amended Second Notice with respect to the following inter-entity agreements, produced after Ms. Kishore's deposition: ORCL00524982 to 991, ORCL00524992 to 997, ORCL00524998 to 5003, ORCL00525004, ORCL00525004 to 026, ORCL00525027 to 049, ORCL005250050, ORCL00525051 to 78, ORCL00525079, ORCL00525080 to 081, ORCL00525082 to 107, ORCL00525108 to 135, ORCL 00525136, ORCL 00525137 to 138, and ORCL00525139 to 143. This offer is conditioned on Defendants' agreement that Oracle can instruct its 30(b)(6) designee(s) not to answer questions that relate neither to Siebel nor to the listed agreements. Finally, Oracle is further willing to provide a declaration confirming Oracle's representation in Mr. Alinder's May 22, 2009 letter to Mr. McDonell that "[t]he information related to the noticed topics [from the Amended Second Notice] - royalty payments, cost-sharing arrangements, and transfer prices - does not operate on a registration-by-registration basis."

These should be sufficient to address your concerns. Accordingly, we expect you to withdraw this request from your motion. Again, please immediately tell us your intentions.

**E. Interrogatories Nos. 119-121**

You mischaracterize the information sought by your Interrogatories Nos. 119-121. These interrogatories do not ask Oracle to explain how much lost profits each Plaintiff would have received. They ask how much *revenue* each Plaintiff would have received. As for a substantive explanation of the referenced documents through an example customer, Defendants have already made it clear that it is your position that "these are questions for deposition not meet and confer." May 12, 2009 Email from Elaine Wallace to Nitin Jindal.

I am available to discuss any of these issues with you further.

Jason McDonnell, Esq.
July 22, 2009
Page 6

Sincerely yours,

*Holly A. House*

Holly A. House

cc:  Joshua Fuchs - Jones Day San Francisco - jlfuchs@jonesday.com
     Robert Mittelstaedt -Jones Day San Francisco -ramittelstaedt@jonesday.com
     Greg Lanier - Jones Day Silicon Valley - tglanier@jonesday.com
     Elaine Wallace - Jones Day San Francisco - ewallace@jonesday.com
     Scott Cowan- Jones Day Houston - swcowan@jonesday.com
     Jane Froyd - Jones Day Silicon Valley - jfroyd@jonesday.com

     Geoffrey Howard - Bingham McCutchen, LLP - geoff.howard@bingham.com
     Zachary Alinder- Bingham McCutchen, LLP - zachary.alinder@bingham.com
     Bree Hann - Bingham McCutchen, LLP - bree.hann@bingham.com