1   Bingham McCutchen LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  415.393.2000
    Facsimile:  415.393.2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
10  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
11  Telephone:  650.506.4846
    Facsimile:  650.506.7114
12  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
13
    Attorneys for Plaintiffs
14  Oracle USA, Inc., Oracle International Corporation, and
    Oracle EMEA Limited
15

16                  UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                   SAN FRANCISCO DIVISION

19

20  ORACLE USA, INC., *et al.*,            No. 07-CV-01658 PJH (EDL)

21          Plaintiffs,                    **ORACLE'S OPPOSITION TO**
                                           **DEFENDANTS' MOTION FOR**
        v.                                 **SANCTIONS PURSUANT TO FED.**
22                                         **R. CIV. P. 37(C) AND 16(F)**
    SAP AG, *et al.*,                      **[REDACTED]**
23
          Defendants.
24
25                                         Date:    August 18, 2009
                                           Time:    2:00 pm
26                                         Place:   Courtroom E, 15th Floor
                                           Judge:   Hon. Elizabeth D. Laporte
27

28
                                               Case No. 07-CV-01658 PJH (EDL)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   DEFENDANTS SEEK  UNPRECEDENTED RELIEF WITH INSUFFICIENT
      BASIS FROM THE WRONG COURT ............................................................... 3

      A.    The Trial Court Limits Available Damages and Precludes Evidence at
            Trial ......................................................................................................... 3

      B.    No Court Has Ever Precluded Use of Damages Evidence at Trial at This
            Point in a Case ......................................................................................... 5

      C.    Defendants Do Not Satisfy the Prerequisites for the Severe Remedy They
            Now Seek .................................................................................................. 7

            1.    Oracle Did Not Fail to Meet Its Damages Disclosure Obligations ............ 9

            2.    Oracle's Damages Disclosure Schedule Is Justified and Not in Bad
                  Faith ............................................................................................... 10

            3.    Oracle's Damages Disclosure Schedule Is Harmless Under All
                  Authorities ...................................................................................... 12

III.  THE FACTS DO NOT JUSTIFY SANCTIONS, EVEN IF THE LAW
      ALLOWED THEM ........................................................................................... 14

      A.    Key Dates in the Current Case Schedule ................................................. 14

      B.    Oracle Has Repeatedly Disclosed Its Intention to Seek, and Support For,
            Lost Profits Damages .............................................................................. 16

            1.    Oracle's Pleadings and Disclosures Always Made It Clear That Its
                  Damages Go Beyond Lost Support Revenue ......................................... 16

            2.    Oracle Consistently Stated and Explained Its Kinds of Damages in
                  Discovery Responses ........................................................................ 18

      C.    Since Being Rejected By Judge Legge, Defendants Have Never Moved to
            Compel What They Now Seek to Exclude ................................................ 24

IV.   CONCLUSION .................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cambridge Electronics Corp. v. MGA Electronics, Inc.*,
227 F.R.D. 313 (C.D. Cal. 2004) .................................................................. 5

*City and County of San Francisco v. Tutor-Saliba Corp.*,
218 F.R.D. 219 (N.D. Cal. 2003) ................................................4, 5, 12, 16

*Evenflow Plumbing Co., Inc. v. Pacific Bell Directory*,
2005 U.S. Dist. LEXIS 46822 (N.D. Cal. 2005) ......................................... 5

*Forro Precision, Inc. v. Int'l Business Machines Corp.*,
673 F.2d 1045 (9th Cir. 1982) ................................................................... 13

*GHK Associates v. Mayer Group*,
224 Cal. App. 3d 856 (1990) ..................................................................... 13

*Hsieh v. Peake*,
2008 U.S. Dist. LEXIS 23649 (N.D.Cal. 2008) .......................................... 4

*Morlife, Inc. v. Perry*,
56 Cal. App. 4th 1514 (1997) .................................................................... 13

*Network Appliance, Inc. v. Bluearc Corp.*,
2005 U.S. Dist. LEXIS 16726 (N.D. Cal. 2005) ................................. passim

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) ....................................................................... 6

*Pierce v. CVS Pharmacy, Inc.*,
2007 U.S. Dist. LEXIS 69006 (D. Ariz. 2007) ............................................ 6

*Piscetelli v. Freidenberg*,
87 Cal. App. 4th 953 (2001) ...................................................................... 13

*Primrose Operating Co., et al. v. Nat'l Am. Insur. Co.*,
382 F.3d 546 (5th Cir. 2004) ....................................................................... 6

*Reiner v. Warren Resort Hotels, Inc.*,
2008 U.S. Dist. LEXIS 102047 (D. Mont. 2008) ........................................ 6

*Reynoso v. Constr. Protective Servs., Inc.*,
2008 U.S. App. LEXIS 19681 (9th Cir. 2008) ......................................... 3, 5

*Semtech Corp. v. Royal Ins. Co. of Am.*,
2005 WL 6192906 (C.D. Cal. 2005) ........................................................... 7

ii

*Shade Foods, Inc. v. Innovative Prods. Sales & Marketing, Inc.*,
78 Cal. App. 4th 847 (2000) ...................................................................................13

*Stevens Linen Assocs. v. Mastercraft Corp.*,
656 F.2d 11 (2d Cir. 1981) ....................................................................................13

*The Christensen Firm v. Chameleon Data Corp.*,
2006 U.S. Dist. LEXIS 79710 (W.D. Wash. 2006)..........................................6, 24

*Tracinda Corp. v. Daimler Chrysler AG*,
362 F. Supp. 2d 487 (D. Del. 2005).........................................................................7

*U.S. v. Rapanos*,
376 F.3d 629 (6th Cir. 2004), *vacated on other grounds*, 547 U.S. 715 (2006).......7

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .................................................................................5

**RULES**

Fed. R. Civ. P. 16…………………………………………………………...............4

Fed. R. Civ. P. 26………………………………………………………….....4, 5, 10

Fed. R. Civ. P. 37…………………………………………………………….....passim

iii

# I.     INTRODUCTION

Defendants misstate the facts, ignore the law, and seek extraordinary relief for which there is no legal precedent.  They ask the Court – *a year and a half before trial* – for an order precluding Oracle from:

- continuing to produce evidence related to much of its  lost profits damages;
- allowing its damages experts to rely on any such evidence in their expert reports; and
- using that evidence at trial.

Motion at 1.

If successful, Defendants – despite their admitted and extensive infringement of Oracle's intellectual property – would prevent Oracle from recovering its full damages.  Consider three key examples:  (1) Oracle would not be allowed to introduce evidence concerning, or seek recovery of, discounts it was forced to give in response to Defendants' extensive and ongoing infringement of Oracle's intellectual property and interference with its business; (2) it could not introduce evidence, nor seek damages, related to lost up-sell and cross-sell opportunities for other Oracle products and services to the identified customers who went to TomorrowNow and/or SAP; and (3) it would be precluded from seeking recovery of any of the costs of the programs its executives attested Oracle entered into in part because of the unfair competition from SAP-owned TomorrowNow.

This is merely the latest effort by Defendants to evade responsibility and make recovery by Oracle as hard as possible; it follows a laundry list of obfuscation and obstacles, including hiding SAP's knowledge and involvement by refusing to produce SAP documents and witnesses for months and months, trickling out terabytes of fundamental liability data (incomplete to this day), and consistently refusing to extrapolate liability facts from the mountains of evidence of their wrongdoing.  In conjunction with their advertised August 26 early summary judgment motion seeking to prevent Oracle from pursuing damages for Defendants' vast infringement under a hypothetical license model, Defendants, by this motion, seek to wipe out any possibility of having to fairly compensate Oracle for their years of extensive and

1

1    knowing bad acts.

2          Defendants seek this relief even though Oracle has been clear, from the

3    beginning, that it is seeking broad damages.  Oracle's original initial disclosures, and every

4    iteration of its complaint and interrogatory responses, all have asserted that Oracle's lost profits

5    are associated not only with support, but also with lost up-sell and cross-sell opportunities for

6    new and different Oracle products, for both existing and potential customers.  Moreover,

7    Oracle's supplemental initial disclosures – served *over six months* before the close of fact

8    discovery – identify in exhaustive detail each of the kinds of damages Defendants now want to

9    block.  In fact, Oracle already has produced volumes of documents and extensive testimony on

10   the types of damages Defendants want to cut off prematurely, and is in the process of producing

11   more – as is its right under all applicable law.  Defendants have had years to examine relevant

12   evidence already produced; if they are only now realizing the potential scope of these additional

13   damages, that is the consequence of their strategy.

14          Regardless, on the extended case schedule Defendants just stipulated to – in

15   which they insisted upon an extensive additional cushion for rebuttal expert analysis –

16   Defendants have over five months to examine any additional evidence, ample deposition time to

17   follow up on any of this material, followed by another three and a half months after *that* for their

18   damages expert to do his analysis.  In addition, to the extent that any of Oracle's damages are

19   based on expert analysis, Oracle will, of course, provide that analysis and any expert work

20   product created in support on November 16, 2009, when it provides its expert reports.

21   Defendants will then have until February 26, 2010 to probe that analysis and prepare their own

22   expert response – and then until November 2010, nearly a year and a half from now, to prepare

23   for trial.  On this record, Defendants suffer no prejudice.  But there is more:  Defendants'

24   exaggerated list of additional discovery and expert analysis largely dissipates because Oracle

25   does not intend to quantify much of the damage testimony that concerns Defendants.

26          Tellingly, Defendants cite no authority that supports the relief they seek at this

27   point in the proceedings.  That Defendants' massive wrongdoing has resulted in potentially

28   massive damages claims – and that their damages experts, like Oracle's, have to process a lot of

2

1   information – provides no basis under the law for precluding Oracle from seeking its damages.

2   Indeed, granting the request would be unprecedented and counter to the Federal Rule of Civil

3   Procedure 37 standards articulated by Judge Patel in *Network Appliance, Inc. v. Bluearc Corp.*,

4   2005 U.S. Dist. LEXIS 16726, at *9 (N.D. Cal. 2005), a remarkably analogous case that

5   Defendants do not mention.  By contrast, the few cases Defendants do cite either concern

6   motions to compel supplemental initial disclosures regarding damages – relief Defendants do not

7   seek – or to exclude damages evidence *at trial* that a party had not previously disclosed.

8        Finally, whether to impose the severe sanction of damages preclusion at trial is

9   not a discovery determination for this Court; it is a ruling properly directed to Judge Hamilton, if

10  and when, close to trial, Defendants satisfy the showing required under Rule 37.

11       Below, Oracle explains how both law and procedure bar this motion.  It then

12  shows how, on these facts and this record, Defendants have long known about these damages

13  and have no basis for complaint.  For all these reasons, Oracle respectfully requests the Court

14  deny Defendants' motion for sanctions and a protective order.

15  **II.   DEFENDANTS SEEK  UNPRECEDENTED RELIEF WITH**
        **INSUFFICIENT BASIS FROM THE WRONG COURT**
16

            **A.   The Trial Court Limits Available Damages and Precludes**
17                **Evidence at Trial**

18       When Judge Hamilton withdrew Judge Jenkins's reference of discovery disputes

19  in this case to Judge Legge (Ret.), she expressly "refer[red] the parties to Magistrate Judge

20  Laporte to oversee discovery and resolve discovery disputes."  Order Withdrawing Reference to

21  Special Master and Referring Case to Magistrate Judge, Dkt. No. 78 (April 25, 2008) at 1:18-19.

22  This motion is not a discovery dispute, but a request to terminate Oracle's rights to seek

23  damages. *Cf. e.g., Reynoso v. Constr. Protective Servs., Inc.*, 2008 U.S. App. LEXIS 19681 at

24  *3, *6 (9th Cir. 2008) (noting trial court's granting of defendants' pre-trial motion in limine to

25  exclude damages at trial where plaintiffs at no time prior to trial disclosed damages calculations

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' RULE 37 MOTION FOR DISCOVERY SANCTIONS 07-CV-
01658 PJH (EDL)

1    was "an evidentiary ruling[,]" "not a motion 'relating to discovery pursuant to [Rules] 26-37.'").[1]

2           If Defendants were moving for augmentation of Oracle's Supplemental and

3    Amended Initial Disclosures, that motion would more clearly be a discovery dispute properly

4    before this Court.  But that is not what Defendants seek.  Indeed, it appears that the detail in

5    Oracle's May 22, 2009 amended disclosures prompted this sanctions request.  Motion at 11-13.

6    Oracle's revision was exactly what Rule 26(e) contemplates – and Oracle's compliance

7    effectively precludes any complaint by Defendants.  *See, e.g., City and County of San Francisco*

8    *v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) ("So long as Plaintiffs timely fulfill

9    their disclosure obligations, they will not be prejudiced for making initial disclosures that are

10   revised.").  Regardless, as the case law cited below at Section II.B. confirms, when used to

11   preclude damages evidence or theories at trial, the *trial court* invariably applies any sanctions

12   under Rule 37(c).[2]

13          Defendants' reliance on Rule 16(f)(1) is even more curious and inappropriate.

14   This Rule concerns sanctions available to the trial court if a party or its attorney:

15          (A) fails to appear at a scheduling or other pretrial conference;

16          (B) is substantially unprepared to participate – or does not
            participate in good faith – in the conference; or

17          (C) fails to obey a scheduling or other pretrial order.

18   Pre-trial conferences are not held before this Court, and Defendants offer no factual or legal basis

19   for application of this Rule in connection with this motion.

20

21   [1] That the *Reynoso* trial court ruled on defendants' motion in limine by employing the sanctions
22   available under Rule 37(c) does not change this situation into a discovery motion.  Defendants'
     only case in support of this Court deciding this motion to preclude evidence at trial, *Hsieh v.*
23   *Peake*, 2008 U.S. Dist. LEXIS 23649 (N.D.Cal. 2008), further confirms that Judge Hamilton
     believes dispositive motions are the province of the trial court, while discovery motions are to be
24   decided by the discovery magistrate.  She chides plaintiff for essentially trying to turn a Rule
     56(f) motion into either a Rule 37(c) motion or a motion to compel documents.  *Id.* at *59-*60.
25   Nothing in her observations about plaintiff's improper efforts indicates that a Rule 37(c) motion
     to exclude evidence at trial is a discovery motion that should be decided by the discovery
26   magistrate.

27   [2] The reference in Rule 37(c)(1)(B) to the availability of instructions to the jury further confirms
     this.

28

4

1     **B.**     **No Court Has Ever Precluded Use of Damages Evidence at**
                **Trial at This Point in a Case**

2

3         Defendants provide no authority for the extraordinary remedy they now request.

4 The uncontradicted and extensive case law holds that exclusion of evidence under Rule 37 is a

5 severe remedy, only granted in extreme situations. "[O]n the menu of sanctions that a court may

6 select from in applying Rule 37, preclusion of evidence is among the most severe; indeed, under

7 certain circumstances, the imposition of preclusive sanctions may be tantamount to dismissal of a

8 plaintiff's claims or entry of default judgment against a defendant." *Network Appliance, Inc.*,

9 2005 U.S. Dist. LEXIS 16726 at \*9, \*11-12 (refusing Rule 37 request to exclude damages-

10 related evidence based on assertions of untimely production); *see also Tutor-Saliba*, 218 F.R.D.

11 at 220 (describing cases cited in support of evidence exclusion as "extreme situations in which

12 the defendant was either prejudiced by plaintiff's conduct or entitled to summary judgment

13 because of lack of any supporting evidence.").

14         Indeed, the *only* cases Defendants cite where damages evidence or expert

15 testimony has been excluded under Rule 37 are where the precluded party springs new evidence

16 or testimony on the other side *at or just before trial. See, e.g., Yeti by Molly Ltd. v. Deckers*

17 *Outdoor Corp.*, 259 F.3d 1101, 1105-1107 (9th Cir. 2001) (excluding testimony of damages

18 expert as sanction for failing to provide his expert report until almost two years after close of

19 discovery and 28 days before trial); *Reynoso*, 2008 U.S. App. LEXIS 19681 at \*2 (granting at

20 pre-trial conference motion *in limine* to preclude damages theories and evidence at trial that had

21 never been disclosed); *Evenflow Plumbing Co., Inc. v. Pacific Bell Directory*, 2005 U.S. Dist.

22 LEXIS 46822 (N.D. Cal. 2005) (Your Honor, sitting as trial judge, excluded damages testimony,

23 evidence, and calculations presented to opposing counsel for the first time four days before trial

24 and where, unlike here, plaintiff did not supplement initial damages disclosures 28 days before

25 the fact discovery cut-off as required by the Pretrial Order and Rule 26(e)(1), and also missed the

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' RULE 37 MOTION FOR DISCOVERY SANCTIONS 07-CV-
01658 PJH (EDL)

1    deadline for submission of trial exhibits).[3]

2           Moreover, even when not premature, requests under Rule 37(c) for evidence

3    preclusion, or even lesser sanctions, are regularly rejected on far more egregious facts than are

4    alleged here. *See, e.g., Primrose Operating Co., et al. v. Nat'l Am. Insur. Co.*, 382 F.3d 546,

5    563-64 (5th Cir. 2004) (upholding trial court's denial of Rule 37(c) motion to exclude testimony

6    of damages expert even where no expert report provided because another letter and the Pre-Trial

7    disclosure identified the expert and her expected testimony and plaintiff had elsewhere disclosed

8    the documents upon which expert then provided her damages opinion at trial); *U.S. v. Rapanos*,

9    376 F.3d 629, 644-45 (6th Cir. 2004), *vacated on other grounds*, 547 U.S. 715 (2006) (rejecting

10   request to preclude previously undisclosed damages calculations because "the failure to disclose

11   seems harmless as the Defendants were aware of the data used in the supplemental reports");

12   *Reiner v. Warren Resort Hotels, Inc.*, 2008 U.S. Dist. LEXIS 102047, at *26-29 (D. Mont. 2008)

13   (rejecting request for attorneys' fees and costs even where plaintiff did not reveal she was

14   seeking damages for an injury until after deposition and despite failing to produce relevant

15   medical documents and expert reports until after deposition, which she buried in hundreds of

16   pages of production provided only five days before a second deposition, finding her failures

17   "substantially justified or harmless" under Rule 37(c)(1)); *Pierce v. CVS Pharmacy, Inc.*, 2007

18   U.S. Dist. LEXIS 69006, at *11 (D. Ariz. 2007) (in evaluating a late disclosure of expert reports,

19   finding that any prejudice was cured because there was still time to address deficiencies); *The*

20   *Christensen Firm v. Chameleon Data Corp.*, 2006 U.S. Dist. LEXIS 79710, at *16 (W.D. Wash.

21   _____

22   [3] Defendants' only other cases do not apply. The court in *Cambridge Electronics Corp. v. MGA
     Electronics, Inc.*, 227 F.R.D. 313, 324-25 (C.D. Cal. 2004), did not preclude plaintiff from

23   seeking damages. It precluded evidence in support of plaintiff's alter ego theory when that
     evidence was presented for the first time after close of discovery and in opposition to a pending

24   summary judgment motion. Here, fact discovery will not close until December and Defendants'
     experts' report is not due until the end of next February. What the Ninth Circuit deemed a

25   proper dismissal of plaintiff's claims in *Payne v. Exxon Corp.*, 121 F.3d 503, 505-508 (9th Cir.
     1997), occurred only after plaintiff had repeatedly failed to comply with multiple court orders to

26   produce documents after defendants' multiple successful motions to compel, and after the trial
     court gave plaintiff another chance to comply with the court's prior orders even after defendants

27   moved to dismiss. Defendants do not, and cannot, point to any such contempt of court orders by
     Oracle.

28

1   2006) (refusing to dismiss damages claims on summary judgment even when plaintiff

2   supplemented its initial damages disclosures only after summary judgment filed because the

3   supplemental disclosure "was filed before the close of discovery" and defendants had never

4   moved to compel what they were seeking to preclude); *Tracinda Corp. v. Daimler Chrysler AG*,

5   362 F. Supp. 2d 487, 505-511 (D. Del. 2005) (internal citation omitted) (noting that "exclusion

6   of critical evidence is an 'extreme' sanction" and rejecting various Rule 37(c) requests to

7   preclude plaintiff's damages expert's purportedly new testimony and exhibits at trial, including

8   because "the data underlying [the expert's] testimony was either produced to [the other side]

9   before trial or included in [opponent's] own [expert's] report.  In these circumstances, the Court

10   cannot conclude that [the expert's] testimony unfairly surprised or prejudiced [the other side].");

11   *Semtech Corp. v. Royal Ins. Co. of Am.*, 2005 WL 6192906, at *3 (C.D. Cal. 2005) (denying a

12   Rule 37(c) motion to exclude a supplemental report by a damages expert because, even if the

13   trial stayed on its current date, defendant "ha[d] over 'a month before trial and thus ha[s] ample

14   time to prepare effective cross examination and consider possible witnesses to counter' [the

15   damages expert's] opinions" and even if defendant had to re-depose the expert, "[t]his harm,

16   however, would not warrant the extreme sanction of preclusion").

17          As is apparent from this sampling of the relevant case law, Defendants'

18   preclusion request, if granted, would be unprecedented.

19   **C.    Defendants Do Not Satisfy the Prerequisites for the Severe
            Remedy They Now Seek**

20          The portion of Rule 37(c)(1) on which Defendants base their motion reads:

21          If a party fails to provide information or identify a witness as
            required by Rule 26(a) [re Initial Disclosure] or (e) [re

22          Supplementing Initial Disclosures and Discovery Responses], the
            party is not allowed to use that information or witness to supply

23          evidence on a motion, at a hearing, or at trial, unless the failure
            was substantially justified or is harmless. []

24

25   The express requirements in Rule 37 for imposing *any* of the listed sanctions is that Oracle failed

26   to meet its initial or supplemental disclosure obligations – and that any such failure was not

27   "substantially justified or is harmless."

28          Further, in the context of a far more egregious series of complaints of discovery

7

1   failures,[4] Judge Patel has held that "mere negligent conduct is insufficient to impose the severe

2   penalty of exclusionary sanctions [under Rule 37], and a showing of bad faith is required."

3   *Network Appliance*, 2005 U.S. Dist. LEXIS 16726 at *9 (N.D.Cal. 2005) (*citing United States v.*

4   *Sumitomo Mar. & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980)).  Defendants did not alert

5   the Court to this authority – and do not remotely show bad faith by Oracle.

6           Judge Patel continues:  "Moreover, '[e]xclusion sanctions based on alleged

7   discovery violations are generally improper absent undue prejudice to the opposing side.'"

8   *Network Appliance*, 2005 U.S. Dist. LEXIS 16726 at *9 (*quoting Amersham Pharmacia Biotech,*

9   *Inc. v. Perkin-Elmer Corp.,* 190 F.R.D. 644, 648 (N.D. Cal. 2000) (Infante, Mag. J.) (citing

10  *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997)).  Judge Patel further noted that the

11  movant "bears the burden of presenting evidence that it suffered 'undue prejudice' as a result of

12  [the complained of] failure to produce a subset of responsive documents" and that "[t]he

13  touchstone of the prejudice inquiry is whether a discovery violation 'threaten[s] to interfere with

14  the rightful decision of the case' or 'impairs the moving party's ability to go to trial.'"  *Id.* at *9

15  (*quoting Amersham,* 190 F.R.D. at 648 and *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 591

16  (9th Cir. 1983)).  As shown below, Defendants cannot show any such prejudice.

17          Finally, Judge Patel notes that "[d]elayed production of documents is rarely

18  sufficient to meet this standard."  *Id.* at *9 (*citing Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406,

19  1412 (9th Cir. 1990)).  Judge Patel then found that, even assuming a showing of bad faith was

20  not required, the moving party's complaints "fall far short of meeting this high standard" because

21  defendant "made a reasonable effort to respond to the court's order to compel, producing the vast

22  majority of responsive documents by the court-imposed deadline and promptly supplementing

23  ─────────────────

24  [4] Plaintiff had moved to compel production of various documents related to defendants' sales of
     allegedly infringing products.  The court granted plaintiff's motion and ordered production by a
25  date certain.  Defendants produced some documents on that date.  After a subsequent deposition
     of a defendant Rule 30(b)(6) witness on damages, plaintiff requested additional damages-related
26  documents, and defendant then produced over 15,000 pages of documents on the last day of fact
     discovery.  *Network Appliance*, 2005 U.S. Dist. LEXIS 16726 at *3-4.  Relying on Rule 37 and
27  the court's "inherent power," plaintiff sought to preclude defendant from presenting a host of
     damages-related evidence at trial.  *Id.* at *4.

28

8

1   those disclosures when requested to do so." *Network Appliance*, 2005 U.S. Dist. LEXIS 16726

2   at *9-10.

3         Defendants do not – and cannot – meet any part of this "high standard." *Id.*

4         **1.    Oracle Did Not Fail to Meet Its Damages Disclosure**
               **Obligations**
5

6         First, Defendants do not meet the fundamental prerequisite for their motion:

7   showing Oracle has failed to meet its damages disclosure obligations.  To the contrary, Oracle's

8   *candor* in its May 22, 2009 supplemental disclosures prompted this motion.  Motion at 11-13;

9   Clarke Decl. at ¶¶ 13-25.  Oracle provided Defendants those detailed disclosures consistent with

10  the then-in-place discovery amendment deadline, now *six months* before Oracle's damages

11  expert report is due and *more than six months* before this Court's Order re Discovery Procedures

12  requires final supplementation.[5]  *See* Section III below.  Though Defendants do not move for

13  further supplementation of Oracle's initial damages disclosures, Oracle intends to provide one as

14  to issues raised in Defendants' motion after it evaluates the availability and contents of any

15  additional evidence in support of its damages.  It expects to be able to provide this further update

16  by October 1 – *six weeks* before its damages expert report is due and *over three months* before

17  fact discovery closes.  House Decl.; ¶ 33.

18        Defendants do not, and cannot, point to any order compelling production that

19  Oracle has violated.  They do not, and cannot, establish that Oracle willfully withheld relevant,

20  non-objectionable damages information or documents.  As set forth in detail in Section III below,

21  _____

22  [5] Both sides served extensive Supplemental Initial Disclosures and extensive Revised Responses
23  where changes to prior responses were "not otherwise made known to the other parties during
    the discovery process or in writing" on May 22, 2009 pursuant to Rule 26(e) and the Court's
24  May 2, 2008 Order Re Discovery Procedures that required such updates no later than 28 days
    before the scheduled close of fact discovery (then June 19, 2009, per the April 5, 2008 Case
25  Management Order).  Dkt. No. 83 at ¶ 4; Declaration of Holly A. House ("House Decl.") ¶ 37.
    Thus, even under the prior schedule, Oracle's supplementations were timely.  Further, at that
26  point, there was then pending the Parties' joint motion to significantly extend the case schedule,
    as to which Judge Hamilton entered the stipulated order on June, 11, 2009.  *Id.; see also* Motion
27  for Extension of Time to Complete Discovery, Dkt. No. 203 (May 12, 2009); Stipulated Revised
    Case Management and Pretrial Order,  Dkt. No. 325 (June 11, 2009).
28

ORACLE'S OPPOSITION TO DEFENDANTS' RULE 37 MOTION FOR DISCOVERY SANCTIONS 07-CV-
01658 PJH (EDL)

1   and in even more detail in the accompanying House Declaration, Oracle also has disclosed in its

2   complaints, its written discovery responses, oral testimony, and massive document productions

3   both its damages theories and much of its damages support, including as to lost profits damages

4   other than for support revenue losses from TomorrowNow customers. *Id.* at ¶¶15-33, 36-39 &

5   Exs. A-D.  While Oracle did revise its initial damages disclosures and interrogatory responses

6   regarding damages, *see* Section III.B.1 below, Oracle did not revise every written RFP response

7   to reflect additional productions, including the many non-custodial damages-related productions

8   Oracle has made in response to Defendants' targeted search requests.  That is because Rule 26(e)

9   expressly permits avoidance of such make-work where, as here, the Parties are expressly aware

10  of not only the productions, but also the numerous meet and confers (both oral and written) and

11  other discovery process interactions relating to Oracle's various potential damages claims, as

12  well as the back-up documents and data produced in support of those claims.  *See* Rule

13  26(e)(1)(A); *see also* House Decl., ¶¶4, 15-29.  Moreover, Oracle is in the process of diligently

14  producing additional relevant damages documents, which it expects to complete well before its

15  damages expert report is due and fact discovery closes.  House Decl., ¶¶30-31.  Oracle more than

16  satisfied its discovery obligations here.

17          In short, the violation needed to trigger Rule 37 does not exist.

18              **2.      Oracle's Damages Disclosure Schedule Is Justified and**
                          **Not in Bad Faith**
19

20          Even if Defendants could satisfy their Rule 37(c) burden of showing that Oracle's

21  Rule 26 damages disclosures are insufficient because Oracle has not yet produced all of its

22  damages documents – which they cannot – the pace of Oracle's production is justified.  The

23  scope of the case, and breadth of the liability and damages that discovery continues to reveal,

24  have necessarily impacted Oracle's production of the documents in support of its eventual

25  damages computation.  House Decl., ¶4.  Oracle did not intentionally withhold any relevant

26  damages documents or other evidence, waiting to spring them on Defendants. *Id.* at ¶2.  Indeed,

27  had Defendants taken the depositions of the Oracle executives they cite earlier than April and

28  May 2009 (as Oracle did in taking the SAP executives in 2008), Defendants would have learned

                                                10

1   then about these witnesses' damages-related information and opinions.  *Id.* at ¶28; ¶¶41-45 &

2   Exs. G-J.  There is no bad faith on Oracle's part for Defendants to justify their sanctions request.

3   *Id.* at ¶2.

4          Moreover, much of Defendants' fear of vastly expanded damages claims (and

5   corresponding expansive analysis and documentation) is for naught.

6

7

8

9

10

11

12

13

14

15

16                                                                                  The financial

17  impact of TomorrowNow on Oracle in connection with Oracle's Lifetime Support and

18  Applications Unlimited programs is the subject of intense investigation and any relevant

19  materials are being gathered and produced, though final quantification of such impact will be the

20  province of Oracle's experts.  House Decl., ¶31.[6]

21          Given that, to this day, Defendants still have not produced responses to

22  fundamental questions about what they did with Oracle's IP (on which Oracle, in contrast to

23  Defendants, has moved to compel, having sought stipulations before coming to the Court), and

24  that Defendants are still producing vast amounts of raw technical data and volumes of other

25

26  [6] To be clear, Oracle does intend to introduce and rely on evidence of all its damages to put the

27  more limited damages it ultimately seeks (whether through lost profits or a hypothetical license)
    in context.  However, Oracle will not be quantifying all its damages in its lost profits case.

28

1    custodial and other documents, including about damages, their complaints of prejudicial delay

2    from Oracle's production schedule are rather hard to accept. *See id.* ¶34. Regardless, and as it

3    has always intended, Oracle will produce any and all documents in support of its final damages

4    calculations prior to the close of fact discovery – and indeed, is striving to do so well before then.

5    *Id.* at ¶30.

6        3.    **Oracle's Damages Disclosure Schedule Is Harmless Under All Authorities**

7            Finally, even if Oracle's pace of damages document production were an adequate

8    failure to justify bringing a Rule 37(c) evidence preclusion motion (which, by all authorities, it is

9    not), under the same authorities, Defendants have not been so harmed as to justify precluding

10   Oracle from continuing to produce and use damages evidence in its damages expert's report and

11   at trial.  No case allows a defendant to preclude damages evidence simply because the breadth of

12   the damages makes analysis time-consuming, complex, and costly – particularly at this point in

13   the case.  Rather, so long as Oracle properly discloses its damages expectations (as it has and

14   will refine even more by October and in its expert report), Rule 37(c) does not apply. *Cf. Tutor-*

15   *Saliba*, 218 F.R.D. at 220 (noting more detailed disclosure only due when "document production

16   has been substantially completed" and noting that"[s]o long as Plaintiffs timely fulfill their

17   disclosure obligations, they will not be prejudiced for making initial disclosures that are

18   revised.").  And, so long as Defendants are not "surprised" at trial by any of Oracle's damages

19   theories or evidence (which they will not be, because Oracle's initial and/or rebuttal damages

20   report(s) and testimony will be complete and clear), then they will have no future basis for a Rule

21   37(c)-based motion *in limine* to Judge Hamilton. *See Network Appliance*, 2005 U.S. Dist.

22   LEXIS 16726 at *11 ("[t]he touchstone of the prejudice inquiry under Rule 37 is whether a

23   discovery violation 'threaten[s] to interfere with the rightful decision of the case' or 'impairs the

24   moving party's ability to go to trial.'").  Nothing Defendants or their damages expert (wrongly)

25   surmise about what they may need to do to respond to Oracle's damages experts shows that they

26

27

28

1    cannot and will not be ready to meet Oracle head-on at trial in November 2010.[7] The only thing

2    that would interfere with "the rightful decision of the case" is barring Oracle from seeking all the

3    damages caused by Defendants' admittedly vast and improper conduct.

4             Finally, Oracle and its damages experts do not begin to agree with Defendants'

5    damages expert that all the documents he lists are necessary to any reasonable damages analysis

6    – or that the possible fees that will be incurred are either necessary or accurate.[8] The level of

7    proof of damages that Defendants' expert envisions is simply not required. "Where the fact of

8    damages is certain, the amount of damages need not be calculated with absolute certainty. The

9    law requires only that some reasonable basis of computation of damages be used, and the

10    damages may be computed even if the result reached is an approximation….This is especially

11    true where …[it is] the wrongful acts of the defendant that have caused the other party to not

12    realize a profit to which it is entitled." *GHK Associates v. Mayer Group*, 224 Cal. App. 3d 856,

13    873–874 (1990); *see also Forro Precision, Inc. v. Int'l Business Machines Corp.*, 673 F.2d 1045,

14    1052 (9th Cir. 1982); *Stevens Linen Assocs. v. Mastercraft Corp.*, 656 F.2d 11, 14-15 (2d Cir.

15    1981) (recognizing that some degree of speculation is appropriate in "establishing lost sales due

16    to sales of an infringing product" in a copyright dispute). For instance, lost profits "may be

17    ascertained with reasonable certainty from the working experience of the business, from the past

18    volume of business, and other proven data relevant to the probable future sales." *Piscetelli v.*

19    *Freidenberg*, 87 Cal. App. 4th 953, 989 (2001); *accord Shade Foods, Inc. v. Innovative Prods.*

20

---

21   [7] Even if that were the case, Defendants would, at most, be entitled to make that argument to
22   Judge Hamilton, most likely on a motion to modify and extend the case schedule.

23   [8] For instance, the level of general ledger detail Defendants' expert says will be required is
     hugely burdensome and, ultimately, unlikely to add significant value beyond information in other
24   produced financial documents, much of the material cited as relevant is from the public domain
     or has already been produced, and much of it relates to quantifications Oracle's damages experts
25   are not performing. *See* Meyer Decl., ¶¶ 10-17. Moreover, it is shocking that Defendants'
     damages experts have already billed over *twice* what Oracle's damages experts have billed to
26   date, *id.* at ¶6, fn. 3 – and it is hard to believe they would need to, or even could, spend $5
     million more in the time left before their rebuttal report is due. But, again, that Defendants have
27   hired expensive experts who are performing extensive analysis is no basis for evidence
     preclusion.

28

1   *Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 890 (2000).  And the customer-by-customer proof

2   Defendants' damages expert says is needed simply is not required by law.  *Cf. Morlife, Inc. v.*

3   *Perry*, 56 Cal. App. 4th 1514, 1527 (1997) (assertion "that solicitation could only be established

4   by direct evidence on customer-by -customer basis. . . is unfounded in either law or logic" and

5   inference from sample of customers and other evidence was wholly appropriate).

6          Moreover, the work that Defendants complain they need to do on this volume of

7   financial information to analyze it pales in comparison to the terabytes of data that they have

8   produced, and the mountains more that they have *yet* to produce, regarding their theft,

9   infringement, and further use of Oracle's software and support materials, all of which Oracle will

10  need to analyze due to Defendants' refusal to stipulate to any extrapolation.  House Decl., ¶34.

11         Nonetheless, if Defendants think they need more documents to complete their

12  damages analysis now, they can and should narrow their requests, meet and confer with Oracle

13  about what they really need, and, if Oracle refuses, move to compel with a proper showing so

14  Oracle can appropriately respond and the Court can strike the proper balance.  Compelling

15  production if Oracle refuses to produce such documents is the remedy that would be potentially

16  available to Defendants at this point – not an order precluding Oracle's ability to introduce

17  damages evidence or damages theories at a trial not scheduled to begin for another *year and a*

18  *half.*

19         In sum, Defendants have come to the wrong Court, at the wrong time, and without

20  making the necessary showing for the drastic, unprecedented relief they seek.

21  **III.    THE FACTS DO NOT JUSTIFY SANCTIONS, EVEN IF THE LAW**
            **ALLOWED THEM**
22
           In addition to having no support in case law, Defendants' motion is undercut by
23
    the reality of this case's history.  The actual record set forth below shows ample, consistent
24
    revelation by Oracle of its damages claims and evidence, as well as no prejudice to Defendants –
25
    particularly on the expanded case schedule the Parties jointly sought and secured.
26
           **A.    Key Dates in the Current Case Schedule**
27
                  By agreement and stipulation, the Parties jointly moved for and were granted
28

ORACLE'S OPPOSITION TO DEFENDANTS' RULE 37 MOTION FOR DISCOVERY SANCTIONS 07-CV-
01658 PJH (EDL)

1    significant extensions to deadlines relevant to Defendants' motion:

2         • The fact discovery cut-off is now December 4, 2009, which is also the
               deadline to supplement and/or correct all disclosures and discovery responses;
3
          • Motions to compel can be filed up to December 11, 2009;
4
          • Initial experts' reports are due on November 16, 2009;
5
          • Expert rebuttal reports are due February 26, 2010;
6
          • Expert discovery does not close until April 23, 2010; and
.7
          • Trial commences November 1, 2010.
8

9    *See* Stipulated Revised Case Management and Pretrial Order, Dkt. No. 325 (June 11, 2009).

10   Nothing in that order limits the type of additional discovery that can be produced by any Party.

11   *Id.* Indeed, the only restrictions on the stipulated expanded discovery relate to the additional

12   discovery Oracle can seek for its Siebel and post-litigation claims. *Id.* at 2:23-3:17; 3:27-4:14.

13   Moreover, two of the critical conditions Defendants insisted on as part of this revised schedule,

14   are the receipt of initial expert reports even before fact discovery concludes, and a cushion of

15   three and a half months for their experts to analyze and respond to those initial reports (almost

16   double the time in the prior pretrial schedule).  House Decl., ¶35.  The only reason for

17   demanding this extra time was because Defendants well understood the scope of damages and

18   analysis required in this case – and said so repeatedly during the weeks of negotiation leading to

19   the jointly-requested extension filing. *Id.*

20           Defendants also successfully sought and received the opportunity to make an

21   early summary judgment motion seeking to exclude Oracle's right to seek damages under a

22   hypothetical license damages model.  Stipulated Revised Case Management and Pretrial Order,

23   Dkt. No. 325 (June 11, 2009) at 1:11.  While Oracle does not believe that motion will be

24   successful, if it is, that would mean that Oracle's damages would be restricted in large part to lost

25   profits – much of which Defendants ask the Court to exclude by this motion.  That potential only

26   highlights the impropriety of this motion at this time.

27

28

**B.     Oracle Has Repeatedly Disclosed Its Intention to Seek, and Support For, Lost Profits Damages**

This case has evolved and expanded as discovery has revealed ever more improper activity and knowledge by Defendants.  As is normal in large cases, the types and breadth of Oracle's damages have also emerged as internal investigation, production of volumes of documents, and questioning of numerous Oracle witnesses have exposed the many ways that Defendants' actions have harmed Oracle.  These will be honed even more in the detailed expert reports that Oracle will provide in November.  *See* House Decl. ¶¶4, 28-29, 35; *see also, e.g., Tutor-Saliba*, 218 F.R.D. at 221 (recognizing that damages disclosures evolve over the course of complex litigation and also recognizing "disclosing a precise figure for damages without a method of calculation may be sufficient where other evidence is developed *e.g.* in the context of a preliminary hearing, and it is appropriate to defer further specification to *e.g.* development of expert testimony.").

Regardless of the natural evolution of the case, Defendants are wrong to assert that Oracle limited its "lost profits claim . . to support revenue from customers allegedly lost to TN," "insisted that damages discovery would be limited "to support revenue from customers allegedly lost to TomorrowNow," or ever "refused to provide discovery on any other customers, on license revenue, or on any product not supported by TN."  Motion at 2.  Indeed, as late as May 19, 2009, *Defendants claimed the opposite* – not only had Oracle not limited its damages, they complained, but further that "Oracle has yet to articulate a damages theory…."  Joint Discovery Conference Statement, Dkt. No. 312 ( May 19, 2009) at 8:21-23.  Neither extreme (and contradictory) position is accurate.  Oracle describes below some of the many sources of damages information, relevant to the damages Defendants now seek to exclude, that Oracle has provided to date, as well as its plans for ongoing production and supplementation before the December 4, 2009 fact discovery cut off.

**1.     Oracle's Pleadings and Disclosures Always Made It Clear That Its Damages Go Beyond Lost Support Revenue**

***Complaints*.**  As far back as its March 22, 2007 initial complaint, Oracle stated:

16

1    "As a direct and proximate result of Defendants' actions, Oracle has suffered economic harm,

2    including, but not limited to, *loss of profits from sales or licenses to current and potential*

3    *customers of Oracle support services and software programs.*" Dkt. No. 1 at ¶¶ 106, 116

4    (emphasis added).  Oracle reiterated that, among other harms, it suffered lost profits for both

5    current and potential customers for both support and license sales in its June 1, 2007 First

6    Amended Complaint.  Dkt. No. 31 at ¶¶ 92, 137.  Over and over – in its July 28, 2008 Second

7    Amended Complaint,  Dkt. No. 132 at ¶¶ 140, 144, in its October 8, 2008 Third Amended

8    Complaint, Dkt. No. 182 at ¶¶ 141, 145, 191-192, and in recently-filed versions of its Fourth

9    Amended Complaint, Dkt. No. 348, ¶¶ 148, 152, 197, 207, and 217 and Dkt No. 352 at ¶¶ 145,

10   149, 163, 194, 204 and 214 – Oracle put Defendants on notice of these types of damages.

11          ***Initial Disclosures***.  Early on, in its August 16, 2007 Initial Disclosures, Oracle

12   described its categories of damages from its preliminary investigation: "Lost profits; Lost or

13   harmed prior, existing and potential customer relationships; Monies to be restored to Oracle due

14   to Defendants' unfair business practices; Lost goodwill and reputation." House Decl., ¶36 & Ex.

15   A at 8:13-9:6.  Nowhere did Oracle limit these categories to support revenues for lost customers,

16   as Defendants wrongly assert.  Motion at 3; see House Decl., ¶36 & Ex. A at 8:13-9:6.  Oracle

17   noted, reasonably, that damages categories would be further determined through discovery and

18   that a more detailed analysis would be premature so early in the case.  House Decl., ¶36 & Ex. A

19   at 8:13-9:6.[9]

20          Oracle made good on its promise to provide a more detailed analysis, including

21   seven pages under Computation of Damages in its timely May 22, 2009 revised disclosures.  *See*

22   House Decl., ¶37 & Ex. B.  It explicitly included several categories of harm that Defendants now

23   seek to preclude:

24          •   "Lost, diminished or delayed current and prospective customer revenues and

25   _____

26   [9] Indeed, until Judge Hamilton withdrew the reference to Judge Legge as Special Master in April
     2008, detailed damages discovery had expressly been ordered to follow liability discovery.
27   Order Withdrawing Reference to Special Master and Referring Case to Magistrate Judge for
     Discovery Purposes, Dkt. No. 78 (April 25, 2008); House Decl., ¶2.

28

1    profits, including as it relates to support and maintenance and software
      applications licensing;

2

      • Harmed current and prospective customer relationships, even where they did
3        not result in a loss of a customer support contract or software licensing; . . .

4    • The host of other damages attested to by Oracle witnesses, including, e.g.,
        Juergen Rottler, such as the abandonment of existing PeopleSoft customer
5        contract step up renewal price escalations, the early adoption and generous
        terms of Oracle's Lifetime Support and Applications Unlimited programs and
6        additional spends on customer support enhancements."

7        House Decl., Ex. B at pp. 44-45. The disclosures did not end there. Oracle also

8    noted its damages analysis would encompass "the lost profits associated with support customers

9    who left [Oracle] for [Defendants], service-related discounts required to compete against

10   [Defendants], and lost license sales and license discounts associated with competition with

11   [Defendants]." *Id.* at p. 47. Oracle then pointed Defendants to where they specifically could

12   find evidence of these damages in produced materials, including in Defendants' own reports,

13   both Parties' customer contracts and related files, both Parties' customer financial reports,

14   Oracle's At Risk reports and TN win-back spreadsheets, Oracle's support renewal cancellations

15   and license win/loss documents, and Oracle's pricing exceptions for support and licenses

16   requested and approved to compete with TN and Safe Passage. *Id.* at pp. 47-48. And Oracle did

17   not stop *there* – it also explained it would provide additional expert work analysis and

18   accompanying back-up on the purchasing history of its PeopleSoft and JDE customer base post-

19   acquisition.[10] *Id.*

     ## 2.    Oracle Consistently Stated and Explained Its Kinds of
20            Damages in Discovery Responses

21       Defendants have never had to rely solely on Oracle's descriptions of its damages

22   in its complaints and initial disclosures, however, because Oracle has also explained them, in

23   detail, in its discovery responses. Oracle provides a sampling here.

24       ***Oracle's Interrogatory Responses.*** For example, Oracle responded, no fewer

25   ——————————————————

26   [10] The analysis is expert work product, not pre-existing Oracle documentation. House Decl.,
     ¶32; ; Meyer Decl. n.12. As much as Defendants might like to have it now, it is not due until
27   November 16, 2009, and they will have until February 26, 2010 before they have to rebut it. *See*
     Section III.A, above.

28

                                    18

1   than three times, to an interrogatory asking how Oracle believed it had been damaged, including

2   the bases for any belief that Oracle had "lost any customer as a result of any activity in the

3   Complaint."[11]  Because Defendants asked here only about *lost* customers, Oracle specifically

4   referenced its lost customer documents in each of the three responses to this Interrogatory.  *See*

5   House Decl., Ex. C at 23:12-24:19; 25:14-26:10.  But Oracle went further, and in both its initial

6   and most recent response, also disclosed the very types of other lost profits damages Defendants

7   now seek to exclude.  *Id.*, Ex. C at 22:22-23 (Oracle suffered "loss of profits from sales or

8   licenses to current and potential customers of Oracle support services and software programs");

9   at 24:20-25:13 (incorporating damages testimony by specific Oracle witnesses about the very

10  damages Defendants now seek to exclude, as well as Oracle's other relevant interrogatory

11  responses, above-described initial disclosures, and testimony showing how Defendants'

12  marketing tactics and reliance on TomorrowNow's corrupt business model "cause[d] Oracle's

13  customers to question the value of Oracle's service offerings and/or their products' future,"

14  which "altered those customers' perception of the value of Oracle's service and which delayed

15  customers' purchases, spurred them to unreasonable negotiations with Oracle and/or lured

16  Oracle's customers to TN and/or SAP.").

17          As another example, in responding to interrogatories that sought descriptions of

18  the harm Oracle had suffered from Defendants' alleged misconduct – which Defendants did not

19  even serve until February 19, 2009 – Oracle again provided significant detail about the damages

20  Defendants now seek to exclude.  House Decl. ¶39 & Ex. D.  In each response, Oracle provided

21  a long bullet list of harm, including as the *first two items* the exact types of lost profits damages

22  Defendants now seek to exclude:

23      • "Lost, diminished or delayed current and prospective customer revenues and
           profits, including as it relates to support and maintenance and software

24  _____

25

26  [11] Oracle first responded to that interrogatory on September 14, 2007, then provided a
    supplemental response on October 26, 2007 and a second supplemental response on May 22,

27  2009.  House Decl., ¶38 & Ex. C thereto.

28

applications licensing;

- Harmed current and prospective customer relationships, even though they did not result in a loss of customer support contract or software licensing;. . . ."

House Ex. D at 14:4-10 (Resp. to Interrog. 25).[12]  Notably, Oracle served these responses *before* the deposition testimony of its executives that Defendants now claim prompted some sort of shift in Oracle's damages theories.  Motion at 2:13-17.  The reality is that Oracle disclosed its damages categories well before Defendants, two years into the case, finally got around to deposing Oracle's key executives.

**Oracle's Document Production.**  There is more.  Defendants have served, and Oracle has responded to, numerous RFPs and targeted search requests[13] seeking extensive

---

[12] For similar responses, see House Decl. Ex. D at 19:1-7 (Resp. to Interrog. 30); 35:18-24 (Resp. to Interrog. 41); at 45:9-15 (Resp. to Interrog. 45); at 54:24-55:2 (Resp. to Interrog. 49); at 64:10-16 (Resp. to Interrog. 53); at 73:20-26 (Resp. to Interrog. 57); at 77:7-13 (Resp. to Interrog. 61); at 88:2-8 (Resp. to Interrog. 65); at 92:21-28 (Resp. to Interrog. 69); at 97:11-17 (Resp. to Interrog. 73); at 107:20-25 (Resp. to Interrog. 76); 110:19-25 (Resp. to Interrog. 78); 113:26-114:4 (Resp. to Interrog. 81); 118:18-24 (Resp. to Interrog. 85); 123:11-17 (Resp. to Interrog. 89); 128:9-15 (Resp. to Interrog. 93).

[13] On June 24, 2008, Defendants identified in the Joint Discovery Conference Statement seven targeted searches, including one for "financial information."  Joint Discovery Conference Statement, Dkt No. 102 (June 24, 2008), at 17:25-26.  Defendants reiterated this request in an email to Oracle on July 16, 2008, House Decl., ¶40 & Ex. E, then updated and expanded the scope of their seven targeted searches, including describing their financial targeted search as follows:

> "**Financial information.**  This would include several kinds of documents responsive to RFP Nos. 65 through 73, No. 79, and No. 107, including the eight categories of reports, analyses, and central repository type documents listed in Jason McDonell's June 2 letter to Geoff Howard.  It would also include similar types of documents responsive to RFP Nos. 85 (support and development resources for PS and JDE products) and Nos. 111 through 113 (relating to ongoing support revenue)."

House Decl., Ex. E at 1 (emphasis in original).  The parties met and conferred extensively about the scope and number of each side's financial targeted searches.  *See, e.g.,* Joint Discovery Conference Statement, Dkt No. 178. (October 3, 2008) at 5:14-23 (Oracle's proposed compromise noted that "any such agreement would be mutual, such that the financial documents, which Defendants sought from Oracle in their initial proposed targeted search requests and the subsequent related meet and confer, shall also count as three targeted searches.").  At that time, Defendants did not dispute that they had served such targeted search requests.  Oracle began and continued to produce documents in response to Defendants' financial targeted search, "including the mutual exchange of customer specific financial reports...."  Joint Discovery Conference Statement, Dkt. No. 219 (November 18, 2008) at 3:4-7.  Although the Parties are continuing to meet and confer on how to count the targeted searches from both sides, that debate does not

(Footnote Continued on Next Page.)

20

1    financial information.  In their Motion, Defendants cite Oracle's formal responses and objections

2    to certain early RFPs to try to show that Oracle has not produced necessary information to

3    support all its lost profits damages.  But they do not, and cannot, dispute that Oracle has

4    produced complete customer contractual histories for PeopleSoft and JDE products and, where

5    possible, summary reports for every customer Defendants deem relevant on their ever-changing

6    lost customer list.[14]  House Decl. ¶¶5-14.  Moreover, as set forth below and as Defendants are

7    well aware, Oracle has produced documents far beyond those described in its initial formal RFP

8    responses.  As Oracle has informed Defendants, and as the law confirms, it is not necessary to

9    supplement formal responses if, as here, that additional or corrective information has been made

10   known to the other parties during the discovery process or in writing.[15]  Oracle did both, and has

11   produced and continues to produce the responsive financial information itself.

12          For example, Oracle has and will continue to produce:

13          • The summary customer reports that Oracle ran on the list of (now 83)

14   _____

(Footnote Continued from Previous Page.)

15   change the existence of mutual requests for wide-ranging financial documents and data, nor
     Oracle's expansive responsive financial document productions that resulted from these requests
16   and the related meet and confer.  *See* House Decl. ¶¶15-27 (detailing some of the financial
     document productions provided by Oracle).
17

18   [14] Though Defendants complain about Oracle's purported delay in nailing down relevant
     customer specifics, their list of customers for whom they seek to restrict Oracle's lost profits
19   damages has changed multiple times, and substantially, over the course of discovery – including
     as recently as July 15, 2009, the day *after* they filed this motion.  House Decl., ¶13.

20   [15] *See* House Decl., ¶41 & Ex. F, May 22, 2009 letter from Zac Alinder to Elaine Wallace at
21   pp.1-2 (noting that Fed. R. Civ. Proc. 26(e)(1)(A) only requires supplementation/amendment of
     written discovery "if the additional or corrective information has not otherwise been made
22   known to the other parties during the discovery process or in writing" and explaining that "the
     substantial discovery that Oracle has produced in the form of not only written discovery
23   responses, but also in the numerous depositions that have been taken, the hundreds of thousands
     of pages of documents produced, the changed positions taken in the innumerable meet and
24   confer sessions (and written met and confer letters) conducted during the discovery process, and
     in the many motions to compel and discovery hearings through the discovery process have all
25   made Defendants sufficiently aware of additional or corrective information regarding many
     discovery responses. . . .  In short, the substantial discovery related to the issues identified in
26   your letters, including (a) license revenues, (b) non-TN-specific customers, and (c) sales of other
     products has put those issues squarely within the case.  No formal supplementation is required
27   under the Federal Rules for these responses because they have 'otherwise been made known to
     [you] during the discovery process or in writing.'" Fed. R. Civ. P. 26(e)(1)(A).")

28

21

customers Defendants claim are relevant.  Those reports contain entire license purchase histories, where available – not just those customers' licenses of JDE or PeopleSoft applications. House Decl., ¶14; *see also* Joint Discovery Conference Statement, Dkt. No. 219 (November 18, 2008) at 3:4-7 (noting inclusion of mutual production of customer-specific financial reports as part the Parties' targeted searches).

- Evidence on customer up-sell and cross-sell expectations and the bases for them, including for the customers it was acquiring from PeopleSoft – just the sort of customers lost to Defendants as a result of their bad acts. House Decl., ¶27.  For instance, Oracle has produced documentation of how it valued the PeopleSoft acquisition, including operating models, planning models, margin summaries and value estimations containing just such expectations and their underlying assumptions. *Id.*

- Financial reports showing how the purchasing history of the acquired PeopleSoft customer base compares to that of customers acquired in other Oracle acquisitions. *Id.*

- Years and years' worth of quarterly and other regular financial reports showing Oracle's actual revenues for new licenses, software license updates and product support, advanced product support, on demand, education, and consulting (*i.e.*, not just JDE or PS support revenues) as well as detailed board packages, subsidiary performance measure reports, product revenue reporting packages, executive briefing documents and budgets with financial results and projections on all products and on both support and license sales. *See id.* at ¶¶24-27.

- Pricing lists, pricing policies, and pricing calculators for Oracle and PeopleSoft – none of which were restricted to only support or just JDE or PeopleSoft products. *Id.* at ¶27.

- Product profitability analyses which include revenue trends, development costs and margin summaries for all Oracle products. *Id.* at ¶¶24, 26-27.

- And, as Oracle revealed in its Amended and Supplemental Initial Disclosures, its experts are undertaking an analysis of the buying histories of the PeopleSoft, JDE and Siebel customer base that will be provided (along with backup) in their report and will provide additional support for Oracle's lost up-sell and cross-sell profits claims for those customers on Defendants' list of lost customers, as well as materials relating to abandonment of contractual support fee uplift rights. *See id.* at ¶32.

On this clear and consistent record of production, there is no basis for Defendants to seek to bar Oracle's right to seek damages for those lost sales.

As for customers not on Defendants' list of lost customers, Oracle has produced customer-specific documents for those it was able to keep by discounting support.  A detailed list including Bates numbers and dates of production is in Oracle's accompanying declaration. House Decl., ¶¶17-22.  It shows, among other things, that Oracle produced detailed emails about

1    its TomorrowNow-based service discount requests from the support discount approvals database,

2    OSSInfo, as far back as July 31, 2008. *Id.*, ¶17.  These emails provide both the identity of

3    customers who received discounts and the amount of the discount.  *Id.*  In addition to emails

4    about service based discounts, Oracle has also produced numerous executive approvals, approval

5    forms, executive summaries, and deal summaries relating to service discounts.  *Id.*  Defendants

6    clearly already knew about these discount approvals, because they asked Oracle witnesses about

7    the process and used specific examples at deposition.  *Id.*   Moreover, Oracle has kept

8    Defendants apprised of additional productions.  *See* House Decl., ¶¶15-22 & Ex. B.[16]  In

9    addition, and as Defendants acknowledge, Oracle also informed them at their June 25, 2009 meet

10   and confer that it was in the process of collecting and producing the contracts for those

11   customers to whom Oracle discounted support in response to TomorrowNow, a number it

12   estimated at 50.  Motion at 19, n.12; *see also* House Decl., ¶18.[17]  Oracle has already produced

13   the contractual back-up for thirty-nine customers that received such discounts; it will continue to

14   produce, on a rolling basis, the remainder of such customer backup materials, along with any

15   relevant additional OSSInfo emails, and expects to complete this production by September 30,

16

17

_____

18   [16] *See, e.g.,* Oracle's May 22, 2009 Letter to Defendants, House Decl., Ex. F at p.3, explaining:
19   "Finally, Oracle confirms that additional license sales damages materials will be produced in
     conjunction with Defendants' May 15, 2009 request for additional custodial productions, *e.g.*,
20   from Keith Block and Rich Allison. In addition, Oracle will evaluate the completeness of those
     productions, and if necessary, search for and produce non-privileged, non-duplicative, license
21   pricing exception information related to TomorrowNow or Safe Passage that can be located
     following a reasonable and centralized search (*e.g.*, from a source comparable to OSSInfo).  In
22   conjunction with its damages analysis, Oracle will also produce an analysis of the purchasing
     history of its PeopleSoft and J.D. Edwards customer base post-acquisition, along with any
23   supporting evidence."

24   [17] Defendants assert that the search terms were restricted by customer names and that this has
     somehow adversely impacted their production from Oracle.  Motion at 2.  Not so.  Customer-
25   specific productions and reports have been and, with Defendants' ever-changing list (*see* n.14,
     above) and the addition of discounted customers, continue to be one-off, intensive manual
26   searches and productions, not the products of search terms.  House Decl., ¶18.  And it is the
     search term "TomorrowNow" that helped locate the names of those customers that received
27   support discounts in Oracle's OSSInfo database.  *Id.*

28

1    2009.  House Decl., ¶18.[18]

2             *Oracle's Witnesses.*  Finally, there has been extensive Oracle deposition

3    testimony on damages, including explicit testimony on the types of damages Defendants seek to

4    exclude.  Again, a more comprehensive list is contained in the accompanying House Declaration.

5    *Id.* at ¶¶28-29 & Exs. G-J.  That Defendants solicited this type of testimony only in the spring

6    and summer of 2009 was their choice; they cannot use their own strategic decisions regarding the

7    order of depositions as a basis for barring the damages described in detail in that testimony.

8    Moreover, Oracle has and continues to produce additional documents that support that testimony.

9    *Id.* at ¶¶ 30-33.[19]

10        **C.      Since Being Rejected By Judge Legge, Defendants Have Never**
                **Moved to Compel What They Now Seek to Exclude**
11
12             Oracle's satisfactory production is further confirmed by the fact that, even though

13   Defendants threatened to move to compel additional financial documents relevant to damages in

     nearly every discovery conference statement filed, Oracle has met and conferred with
14
     Defendants each time and satisfied their requests.  House Decl. ¶ 2.  As a result, Defendants
15
     never did file any of their threatened motions to compel financial documents with this Court.[20]
16   _____

17   [18] Though Defendants profess not to understand this production, it is actually very simple.  *See*
     House Decl., ¶19.
18
     [19] Oracle and its damages experts dispute that Defendants' damages expert needs all the
19   categories of documents he asserts in his declaration.  *See* Meyer Decl. and Section II above.  Of
     course, if Defendants truly believe they need something, they can move to compel it.  Indeed,
20   many courts deem that a virtual prerequisite to any subsequent successful Rule 37(c) pre-trial
     exclusion request.  *Cf. The Christensen Firm v. Chameleon Data Corp.*, 2006 U.S. Dist. LEXIS
21   79710, *17 (W.D. Wash. 2006) (refusing to dismiss damages claims on summary judgment even
     when plaintiff supplemented its initial damages disclosures only after summary judgment filed
22   because the supplemental disclosure "was filed before the close of discovery" and defendants
     had never moved to compel what they were seeking to preclude) (*quoting Compana, LLC v.*
23   *Aetna, Inc.*, 2006 U.S. Dist. LEXIS 29028 (W.D. Wash. 2006): "[D]efendant never propounded
     any written discovery requests or filed a timely motion to compel.  Instead, it now seeks the most
24   severe sanction, exclusion of all evidence, without pursuing other methods for obtaining the
     documents.").
25
     [20] *Compare* Joint Discovery Conference Statement, Dkt. No. 178 (filed October 3, 2008) at 12:7-
26   17 (describing anticipated motion to compel financial and damages related documents) *with* Joint
     Discovery Conference Statement, Dkt. No. 219 (filed November 18, 2008), at 8:21-9:16
27   (dropping anticipated motion to compel financial and damages related documents from
     Defendants' list).
28

1   Indeed, their concurrently-pending motion to compel is the *first and only* motion to compel by

2   Defendants (other than the early motion denied by Judge Legge) that even touches on any of the

3   categories of damages documents their expert claims to need – and Oracle has already produced

4   and/or agreed to produce documents sufficient to make that part of the motion moot. *Id.*

5   Moreover, Defendants themselves told the Court a motion to compel would be forthcoming if

6   they were not  satisfied with Oracle's supplementation.  Joint Discovery Conference Statement,

7   Dkt. No. 312 (May 19, 2009) at 15:12-21.  It is certainly a leap to seek to exclude claims based

8   on what Defendants have never sought to compel.

9   **IV.    CONCLUSION**

10          It is worth stepping back and considering what sanctions Defendants seek by their

11  motion.  Issue preclusion, in this case preclusion of most categories of damages sought by

12  Oracle, is draconian relief.  It blocks any examination of the facts, any application of the law,

13  and any effort to reach a just result.  It hides the merits for alleged reasons that have nothing to

14  do with those merits.  The remarkable sanctions sought here cannot occur unless Defendants

15  meet all elements of the "high standard" required by the law on a record that is compelling.

16  There is no basis for such sanctions here.  Oracle should be allowed to complete its discovery

17  responses and the issue of damages joined on the merits.  Defendants' Rule 37 motion for

18  damages evidence preclusion must be denied.

19  DATED:  July 28, 2009

20

21                              Bingham McCutchen LLP

22

23                              By: _____/s/_____

24                                      Holly A. House
                                        Attorneys for Plaintiffs
25                                      Oracle USA, Inc., Oracle International
                                        Corporation, and Oracle EMEA Limited

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' RULE 37 MOTION FOR DISCOVERY SANCTIONS 07-CV-
01658 PJH (EDL)