Oracle Corporation et al v. SAP AG et al Doc. 375



Bingham McCutchen LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC.,*et al.*,

Plaintiffs,

v.

SAP AG, *et al.*,

Defendants.

No. 07-CV-01658 PJH (EDL)

**DECLARATION OF HOLLY A. HOUSE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISCOVERY SANCTIONS PURSUANT TO FED. R. CIV. P. 37(C) AND 16(F)**

**REDACTED EXHIBITS G, H, I, & J**

Date: August 18, 2009
Time: 2:00 pm
Place: Courtroom E, 15th Floor
Judge: Hon. Elizabeth D. Laporte



Dockets.Justia.com

I, Holly A. House, declare as follows:

1. I am an attorney licensed to practice law in the State of California and a partner at Bingham McCutchen LLP, counsel of record for plaintiffs Oracle USA, Inc., Oracle International Corporation and Oracle EMEA Ltd. (collectively, "Oracle"). I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) ("Opposition'). I have personal knowledge of the facts stated within this Declaration and could testify competently to them if required.

**No Bad Faith by Oracle**

2. At no time has Oracle intentionally withheld any responsive, non-privileged damages documents or other evidence from Defendants. Nor has Oracle failed to produce any damages-related documents ordered to be produced by the Court; indeed, Defendants' pending Motion to Compel Financial Documents (which has not yet been fully submitted or decided) is the first motion to compel any of the documents Defendants now seek to exclude since Defendants failed to get any early order from Judge Legge (Ret.) for damages production. (Oracle staved off all other threats of motions to compel by Defendants in meet an confer and through production). Moreover, while Oracle did produce many financial documents prior to this case being reassigned to Judge Hamilton, damages discovery did not begin in earnest until after Judge Hamilton withdrew the reference to Judge Legge as Special Master in April 2008 and disagreed with his staging of liability discovery first.

**Revelation of Oracle's Damages Theories**

3. As set forth in its Opposition and below, Oracle has alerted Defendants to the broad scope of its lost profits damages from the first Complaint, in its Initial Disclosures, in its discovery responses, in its voluminous document productions, in its witnesses' testimony, and in its May 2009 supplementation of discovery responses and Initial Disclosures, and continues to update Defendants to the present. The relevant excerpts of Oracle's non-filed disclosures and discovery responses cited in the Opposition are attested to and attached below, Exs. A-D.

4. As internal investigation and production of volumes of documents on both sides have progressed in this case, and through meet and confer sessions and the regular discovery conferences, more specifics on the types and breadth of Oracle's damages have emerged and been disclosed. As a result, Oracle has expanded its document productions and supplemented its discovery responses, including as set forth below. Oracle continues to work diligently to ensure production of all documents responsive to Defendants' requests and that support its damages claims.

**History of TomorrowNow and SAP "Lost" Customer Lists**

5. To understand and put in context Defendants' complaints about purported inadequacies in Oracle's production of relevant customer data, it is important to first understand that from the outset of this case Defendants – not Oracle – have repeatedly focused only on customers Oracle "lost" to TomorrowNow and that Defendants – not Oracle – have changed the landscape of "relevant" customers repeatedly. TomorrowNow's first set of Requests for Production to Oracle, dated July 26, 2007, attached an "Exhibit 1" that listed all of TomorrowNow's customers (*i.e.*, ones that PeopleSoft or Oracle had lost) that had been identified at that time. As stated in the Joint Discovery Conference Statement of January 5, 2009, both parties had continually referred to and incorporated Exhibit 1 in their discovery requests and responses as the operative list of TomorrowNow' s customers.

6. A year and a half later, on December 16, 2008, Defendants sent Oracle a list of additional TomorrowNow customers and asked Oracle to produce corresponding contracts. In the subsequent meet and confer, Defendants explained that they had identified these new customers some time after serving Exhibit 1 in 2007 in the process of doing their own internal investigations and reviewing responsive materials they had produced. Given Defendants' voluminous production, Oracle contended that it was unfair to expect Oracle to independently determine that Defendants had expanded the list of customers on Exhibit 1 or to expect Oracle to produce corresponding contracts for those additional customers.

7. Through meet and confer, Defendants agreed to amend Exhibit 1 and its related

discovery responses and Oracle agreed to search for and produce responsive contracts for the newly-identified lost customers and to also adjust its document production to the extent that the amended Exhibit 1 affected its document review going forward. Defendants provided Oracle with a "Supplemental Exhibit 1" on January 9, 2009, which added 40 new customer names, deleted 18 names, provided alternative names for 26 customers, and corrected what Defendants contended were typographical errors in the names of some other customers.

8. In the Joint Discovery Conference Statement of February 9, 2009, Oracle contended that it had spent considerable time and resources responding to discovery based on the original Exhibit 1; Oracle had served discovery, responded to discovery, and met and conferred based on the original list (which it had only in December learned was incomplete, contained the names of 18 now-deleted customers, and provided alternative or edited names for over 30 customers).

9. On July 15, 2009, the day after filing the motion at issue here complaining about Oracle's production of damages related back-up, Defendants sent Oracle another revised list of customers, the "Second Supplemental Exhibit 1." The revised list contained 10 Siebel customers not previously on the TomorrowNow customer list and 2 entirely new customers that Defendants added, as they explained, "in an abundance of caution."

10. Additionally, with respect to customers who purchased TomorrowNow service and SAP products/support simultaneously or were existing TomorrowNow customers at the time they purchased new SAP software or service, Defendants sent a list of 61 SAP customers who fell into these categories, through an attached Customer List in Jane Froyd's July 18, 2008 email.

11. On January 8, 2009, in their Third Supplemental Objections and Responses to Plaintiffs' First Set of Targeted Search Requests, Defendants explained that in an effort to verify the accuracy of the 61 SAP Customer List, a report was run and produced as SAP-OR00603612, which now identified 81 SAP customers. Defendants represented this "List of 81" amended and replaced the previous list of 61 customers.

12. On May 22, 2009, in their Fourth Supplemental Objections and Responses to

Plaintiffs' First Set of Targeted Search Requests, Defendants once again updated the list and produced a modified "List of 81," which was produced as SAP-OR00698800. Defendants had removed three customers and one component of a customer and added three customers.

13. In a July 15, 2009 email from Jane Froyd, again, the day after filing this motion, Defendants sent a further modified list of 83 SAP customers to reflect additional Siebel customers.

14. As noted in the Joint Discovery Conference Statements of January 5, 2009 and February 9, 2009, Defendants' continual and unilateral additions and revisions of both the TomorrowNow and SAP customer lists continue to require Oracle to spend many additional hours and resources to (a) find and review these newly-added customers' contract files, (b) prepare and produce relevant materials, (c) adjust its main document review and production process to include these customers, (d) re-examine Defendants' discovery responses and production in light of these customers, and (e) investigate and subpoena these new customers, if necessary.

**Oracle's Productions of Documents Relevant to Lost Profits Damages Seek to Exclude**

***Production of Customer Contracts and Financial Reports for Lost Customers***

15. Despite the ever changing list of lost customers from Defendants, Oracle has produced complete customer contractual histories for PeopleSoft and JDE products for the list of customers that were both TomorrowNow customers and Oracle (or legacy PeopleSoft/JDE) customers where available, as specified in Defendants' original Exhibit 1 (see ¶5, above). *See, e.g.*, ORCL00000001-ORCL00007714. Every time Defendants have changed that list, Oracle has searched for and produced additional customers' contractual histories. *See, e.g.* ORCL00007395 through ORCL00007714, ORCL00016644 through ORCL00025552, ORCL00035411 through ORCL00025552, ORCL00034511 through ORCL00043795, ORCL00043796 through ORCL00051949, ORCL00079746 through ORCL00086978, ORCL00090231 through ORCL00103575, ORCL00139148 through ORCL00147888, ORCL00147889 through ORCL00159820. It will do so for Defendants' most recent changes to

the lost customers list as well.

16. Oracle also produced financial summary reports for these customers, *see, e.g.*, ORCL00278144. These reports include, where available, customer-specific Analytics Reports that contain entire license purchase histories for the customer. As Defendants know (because it has affected their own production of reports and lists), both parties have had issues finding documents and creating lists where, e.g., the customer name or location is unclear or varies, or where the customer reference numbers vary, or where the customer is a subsidiary or has been acquired. Where the customer was lost before Oracle acquired PeopleSoft, the legacy customer systems are not in place to run such summary reports, though, as Oracle has repeatedly explained, the parties can reconstruct the necessary purchasing information from the contractual back-up provided. Oracle has diligently and continues to diligently work with Defendants to rectify any customer backup production and reporting issues.

***Production of Documents Relating to Customers Who Received Discounts***

17. Throughout discovery in this case, Oracle also has produced numerous documents relating to discounts given to customers in response to TomorrowNow's tactics. These documents have provided Defendants with the identity of customers that received discounts and the amount of the discount. This information can be found on Executive Approvals, Approval Forms, Executive Summaries, and Deal Summaries. These documents are plentiful and found throughout Oracle's production. Specific examples include ORCL00323435; ORCL00009553, ORCL00010611, ORCL00011000, ORCL00011122, ORCL00274556, ORCL00274574; ORCL00017096, ORCL00016942, ORCL00017096 and ORCL00017320. Oracle also produced detailed emails about its TomorrowNow-based service discount requests from the discount approvals database, OSSInfo, as far back as July 31, 2008, which provide both the identity of customers who received discounts and the amount of the discount. Indeed, it is this database that provided Oracle the means to locate such customers, simply by using the search term "TomorrowNow" (or a variant like "TN"). Defendants are clearly aware of these discount approvals, because they asked Oracle witnesses – including Oracle executives Juan Jones and Juergen Rottler – about the process and about specific

examples from the documents.

18. Oracle further informed Defendants in a meet and confer call on June 25, 2009 that, to supplement its OSSInfo production, it was in the process of collecting and producing the contracts for support customers to whom Oracle discounted in response to TomorrowNow, a number it estimated at 50. These discounts include Oracle's abandonment of the contractually-available percentage uplift in certain PeopleSoft customers' support contracts. These customer-specific productions continue to be one-off, intensive manual searches and productions, not the products of search terms. Oracle has already produced the contractual backup for thirty-nine customers that received such discounts. *See* ORCL00518071-518265 and ORCL00527796 to ORCL00529051. Oracle will continue to produce, on a rolling basis, the remainder of such customer back-up materials, along with any relevant additional OSSInfo emails, and expects to complete this production by September 30, 2009.

19. Though Defendants professed not to understand Oracle's initial production of discounted customer back-up, it is actually very simple. For example, the email chain produced on October 14, 2008 at ORCL00195981 is a discount approval request related to the referenced customer's 2005 renewal contract. The discount under discussion is for Oracle to forgo its yearly increase of the customer's support fees by the yearly inflationary adjustment. In this instance, the discount is for the listed number of years of no increases in the support fee, and for the listed number of subsequent years where the support will not increase more than the contractually agreed upon percentage for each year. The justification for the discount is that the "[c]ustomer will go to TomorrowNow if this is not approved." The discount was "[a]pproved due to the competitive threat." The email chain further states the current annual support price. The customer contracts produced at ORCL00528704 through ORCL00528727 show that the customer did in fact accept that discount, as these renewal contracts show a support price of the current annual price. Thus, the recoverable discount for this customer equaled at least the referenced number of yearly increases on support prices that Oracle gave up as result of the TomorrowNow threat.

***Production of Documents Relating to Non-TomorrowNow Customers***

20. Contrary to Defendants' assertions, Oracle has produced a significant number of documents relating to non-TomorrowNow customers as part of the discovery process in this case. Production of documents relating to pricing exceptions and purchasing history of non-TomorrowNow customers stretches back over a year and includes, but is not limited to, materials Bates-numbered ORCL00128366, ORCL00130209, ORCL00172271, ORCL00173269, ORCL00195981, ORCL00196137, ORCL00197382, ORCL00197414, ORCL00197507, ORCL00198215, ORCL00198529, ORCL00198674, ORCL00198681, ORCL00210712, ORCL00210856, ORCL00210886, ORCL00211095, ORCL00211238, ORCL00227028, ORCL00314227, ORCL00314267, ORCL00314382, ORCL00314769, ORCL00314882, ORCL00314948, ORCL00315043, ORCL00315232, ORCL00315383, ORCL00315390, ORCL00315437, ORCL00315488, ORCL00315507, ORCL00315619, ORCL00316016, ORCL00317694, ORCL00318854, ORCL00319512, ORCL00320121, ORCL00320585, ORCL00321039, ORCL00321177, ORCL00321329, ORCL00321624, ORCL00321942, ORCL00321989, ORCL00323478, ORCL00323566, ORCL00323626, ORCL00323934, ORCL00324235, ORCL00324729, ORCL00324872, ORCL00327207, ORCL00328938 and ORCL00364710.

21. On June 30, 2009, Oracle produced another 194 pages of documents relating to non-TomorrowNow customers. These documents, Bates numbered ORCL00518071-518265, included license contract files, support contract files, license purchase orders, and support purchase orders.

22. On July 23, 2009, Oracle produced another 155 pages of documents relating to non-TomorrowNow customers. These documents, Bates numbered ORCL00527796-ORCL00529051, included license contract files, support contract files, license purchase orders, and support purchase orders.

***Production of Documents Relating to License Revenue***

23. Defendants assert that Oracle has failed to disclose "any details" regarding license revenue. In truth, Oracle has produced numerous materials related to license revenue.

24. Sixteen months ago, in March 2008, Oracle produced Subsidiary Key Performance Measures Reports, Quarterly Financial Reference Book Reports, Product Revenue Reporting Packages, Quarterly Board Packages, and Fiscal Board Budget Reports for fiscal years 2004 to 2007. These documents, Bates numbered ORCL00052064-ORCL00052370 and ORCL00060460-ORCL00079528, all contain details regarding Oracle's license revenue.

25. Also in March of last year, Oracle produced 10-Ks and 10-Qs for Oracle Corporation (fiscal years 2004 to present), and all historical reports available for PeopleSoft and J.D. Edwards, Bates numbered ORCL00052399 - ORCL00060459.

26. In January of this year Oracle made its first production of customer specific financial reports, OKI3 Reports, Analytics Contracts Reports, and Analytics License Reports, Bates numbered ORCL00278144. It continues to produce such license revenue information for specific customers as they are identified.

27. In addition to the documents noted above, throughout discovery in this case Oracle has produced a large variety of other materials consisting of the information Defendants now deem "pertinent." Specifically, Oracle's productions have included materials containing the following information:

a. License sales information (*see, e.g.*, ORCL00000001-ORCL00007714; ORCL00147889-159820);

b. License fees and pricing calculations (*see, e.g.*, ORCL00176128-180465);

c. Product profitability analyses, which include license revenue trends, product profitability analyses, development costs, and margin summaries (*see, e.g.*, ORCL00312744-45, ORCL00312820-21, ORCL00313254);

d. Detailed operations reviews, operating models, planning models and value estimations which include license revenues, income statements, profit margins, growth rates and operating income (*see, e.g.*, ORCL00312822, ORCL00312843-44, ORCL00312888, ORCL00312943, ORCL00313160 and ORCL00313255);

e. Presentations containing analytics, revenue targets, upsell and cross-sell opportunities, details of the impact of TomorrowNow on Oracle's renewal rates, license margins,

maintenance margins, margin targeting, and license-to-maintenance equivalence ratios (*see, e.g.*, (ORCL00014722-63; ORCL00289369-86).

f. A presentation containing detailed analyses of the support policies and release schedules of Oracle products including not only PeopleSoft and Seibel products but also the eBusiness Suite product. This document also includes information pertaining to license fees, costs per customer, detailed cost estimations, and a comparison of support costs by product line. (*see, e.g.*, ORCL00532595-ORCL00532615).

**<u>Oracle Witnesses' Testimony on Damages</u>**

28. Defendants chose to depose Oracle's most senior executives (Larry Ellison, Safra Catz, Charles Phillips, Juergen Rottler) about various aspects of the damages sought in this litigation only in the mid to late spring of 2009. *See also* ¶¶ 42-45, below, and **Ex. G - J.** If Defendants had sought deposition testimony from these executives earlier in this litigation, then their testimony regarding damages (on which Defendants largely base their exclusion motion) would have been available to Defendants at that time.

29. Defendants also asked numerous other Oracle witnesses about Oracle's damages, many of whom attested to damages other than lost support profits for customers who went to TomorrowNow (*e.g.*, Oracle deponents Abbo, Andersen, Cummins, Henslee, Jones, Ransom, Ryland, and Shippy).

**<u>Ongoing Production and Expert Analysis of Oracle's Damages</u>**

30. Oracle expects to complete the process of producing additional relevant damages documents well before its damages expert report is due and fact discovery closes.

31. Forthcoming documents include more customer files and reports for customers Oracle discounted to as a result of TomorrowNow (these include customers to whom Oracle abandoned contractual percentage support fee uplift rights under existing PeopleSoft agreements). Oracle is also searching for and producing documents related to the financial impact of TomorrowNow on Oracle in connection with Oracle's Lifetime Support and

Applications Unlimited programs. Any and all relevant materials are being gathered and produced, though final quantification of such impact will be the province of Oracle's experts.

32. Because, at Defendants' insistence during the negotiation of the extended case schedule, Oracle's expert reports now are due before the close of fact discovery, Oracle will produce its damages calculations and provide its expert back-up prior to the close of fact discovery. This includes an analysis of the purchasing history of Oracle's PeopleSoft, JDE, and Siebel customer base post-acquisition (including back-up) in support of Oracle's lost up-sell and cross-sell profits claims for those customers on Defendants' list of lost customers. The analysis is expert work product, not pre-existing Oracle documentation.

33. Oracle also intends to provide further supplementation of its initial damages disclosures after it evaluates the availability and contents of any additional evidence in support of its damages. It expects to be able to provide this further update by October 1 – six weeks before its damages expert report is due and over three months before fact discovery closes.

**Defendants' Delay in Production and Refusal to Stipulate Regarding Use of Oracle's Intellectual Property**

34. Defendants have produced terabytes of data related to their theft, infringement, and further use of Oracle's software and support materials, and large amounts of data are still forthcoming. Yet, for over a year, Defendants refused to agree to Oracle's proposed stipulation regarding the use of Oracle's software and support materials or produce a counter-proposal. As a result Oracle will need to analyze all of these volumes of data – some of which is still incoming. This analysis is also related to Oracle's pending Motion to Compel Responses to Interrogatories Nos. 13 and 14 before this Court.

**Negotiations Over the Current Extended Case Schedule**

35. During the process by which the parties negotiated the June 11, 2009 Stipulated Revised Case Management and Pretrial Order, Defendants negotiated for and successfully built into this revised schedule the receipt of Initial Expert Reports even before discovery was to conclude and a cushion of three and a half months for their experts to analyze and respond to

Oracle's Initial Expert Reports from the prior pretrial schedule (in which rebuttal reports were due 60 days after receipt of Initial Reports). Defendants repeatedly informed Oracle during the negotiations leading to the jointly-requested extension filing that, among the reasons for demanding this extra time, was that Defendants well understood the scope of damages and damages analysis at issue in this case.

**Declaration Exhibits**

36. Attached as **Exhibit A** is a true and correct copy of excerpts from Oracle's August 16, 2007 Initial Disclosures.

37. Both sides served extensive Supplemental Initial Disclosures and extensive Revised Responses where changes to prior responses were "not otherwise made known to the other parties during the discovery process or in writing" on May 22, 2009 pursuant to Rule 26(e) and the Court's May 2, 2008 Order Re Discovery Procedures that required such updates no later than 28 days before the scheduled close of fact discovery (then June 19, 2009, per the April 5, 2008 Case Management Order). Further, at that point, there was then pending the Parties' joint motion to significantly extend the case schedule. Attached as **Exhibit B** is a true and correct copy of excerpts from Oracle's May 22, 2009 Supplemental and Amended Initial Disclosures.

38. On July 26, 2007, Defendants served TomorrowNow, Inc.'s First Set of Interrogatories to Plaintiffs containing Interrogatory No. 5. On September 14, 2007, Plaintiffs served their initial Responses and Objections to Defendant TomorrowNow, Inc.'s First Set of Interrogatories containing Plaintiffs' initial response to Interrogatory No. 5. On October 26, 2007, Plaintiffs served their Amended and Supplemental Responses and Objections to Defendant TomorrowNow, Inc.'s First Set of Interrogatories containing Plaintiffs' amended response to Interrogatory No. 5. On May 22, 2009, Plaintiffs served their most recent Amended and Supplemental Responses and Objections to Defendant TomorrowNow, Inc.'s First Set of Interrogatories containing Plaintiffs' initial response to Interrogatory No. 5. Attached as **Exhibit C** is a true and correct copy of the excerpt from that May 22, 2009 Amended Response

which contains the language of Interrogatory No. 5 and the full contents of each of Oracle's initial and amended responses to it.

39. Attached as **Exhibit D** is a true and correct copy of excerpts from Oracle's April 16, 2009 Response to Defendants' Fifth Set of Interrogatories, containing Responses to Interrogatories 25, 30, 41, 45, 49, 53, 57, 61, 65, 69, 73, 76, 78, 81, 85, 89, 93.

40. Attached as **Exhibit E** is a true and correct copy of a July 16, 2008 email from Elaine Wallace to Holly House et al., entitled "Targeted Searches."

41. Attached as **Exhibit F** is a true and correct copy of excerpts from a May 22, 2009 letter from Zac Alinder to Elaine Wallace.

42. Attached as **Exhibit G** is a true and correct copy of excerpts from the March 27, 2009 Deposition of Safra Catz at 14:13-17:7; 79:3-81:8.

43. Attached as **Exhibit H** is a true and correct copy of excerpts from the April 17, 2009 Deposition of Charles Phillips at 21:5-15; 33:16-34:25; 142:18-144:2.

44. Attached as **Exhibit I** is a true and correct copy of excerpts from the May 5, 2009 Deposition of Larry Ellison at 10:16-17:18; 64:12-65:10.

45. Attached as **Exhibit J** is a true and correct copy of excerpts from the May 15, 2009 Deposition of Juergen Rottler at 41:10-44:5; 81:13-85:12; 90:-91:17; 95:15-97:12; 200:7-201:1; 273:24-274:24.

I declare under the laws of the United States and the State of California that the foregoing is true and correct and that this Declaration was executed on July 28, 2009, in San Francisco, California.

/s/
Holly A. House