# EXHIBIT B

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et. al*,<br><br>　　　　Plaintiffs,<br>　v.<br><br>SAP AG, *et al.*,<br><br>　　　　Defendants. | Case No. 07-CV-1658 (PJH) EDL<br><br>**PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES**<br><br>Date: n/a<br>Time: n/a<br>Judge: The Honorable Phyllis J. Hamilton<br>Courtroom 11, 19th Floor<br><br>**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER** |

## III. COMPUTATION OF DAMAGES[1]

In connection with its Third Amended Complaint, Oracle seeks damages against Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively referred to as "Defendants") resulting from Defendants' reproduction, distribution, public display, and preparation of derivative works from copyrighted Oracle works, including its software, Software and Support Materials ("SSMs"), software containing SSMs or other copyrighted works, fraudulent access to, theft of, and further misuse of Oracle's underlying software applications as well as SSMs and non-copyrightable support materials, as well as related unfair business practices, interference with Oracle's business relationships, breaches of contract, and unjust enrichment at the expense of Oracle. Based on Oracle's investigation to date, Defendants' actions have resulted in the following categories of harm:

- Lost, diminished or delayed current and prospective customer revenues and profits, including as it relates to support and maintenance and software applications licensing;
- Harmed current and prospective customer relationships, even where they did not result in a loss of a customer support contract or software licensing;

---

[1] Oracle also seeks injunctive relief.

- Devaluation of Oracle's intellectual property and other intangible assets and Oracle's investment in the development and/or purchase of the same, including downward pressure on the value of licenses for, harm to the confidential nature of, minimized competitive advantages regarding, destruction of Oracle's exclusive exploitation of and remuneration of, and the denial of Oracle's licensing rights and revenues regarding the same;
- Loss of goodwill, including reputational harm and costs associated with addressing Defendants' illegal conduct;
- Harm to Oracle's overall market cap;
- Harm and impairment to Oracle's customer support websites and underlying customer support data, including impaired access to the same by Oracle and its legitimate customers, harm to Oracle's control of and the ability to use the same by Oracle and its customers for the purposes for which they were intended, including to improve Oracle's customer support processes, and harm to the functionality of these systems; and,
- Costs associated with investigating, mitigating (including for example lowered prices, time and effort to retain customers or to address reputational harm) and litigating against all these activities.
- The host of other damages attested to by Oracle witnesses, including, e.g., Juergen Rottler, such as the abandonment of existing PeopleSoft customer contract step-up renewal price escalations, the early adoption and generous terms of Oracle's Lifetime Support and Applications Unlimited programs and additional spends on customer support enhancements.

Some of the above types of damage include elements that are irreparable in nature.

Oracle is still in the process of gathering and culling down the evidence relevant to its damages internally, from third parties (e.g., customers) and from Defendants. For instance, the scope of Defendants' infringement and misuse of Oracle property is still being determined

because of the ongoing and late production of data warehouse and other voluminous technical materials and Defendants' unwillingness to stipulate to exactly what they did. Defendants have yet to provide requested evidence relevant to Siebel or other Oracle applications – and indeed, have fought such discovery. While the Parties have agreed on a proposed case extension which would allow the inclusion of Siebel claims, the Court has yet to rule on the parties' motion. Accordingly, Oracle does not discuss Siebel-related claims or damages in these disclosures, but will supplement/amend these disclosures as appropriate if the Court does approve the proposed case schedule extension. Further, Oracle's ability to calculate its damages obviously is hampered by not knowing the full scope of the unlawful conduct related to the allegations in Oracle's Third Amended Complaint. Defendants have not provided relevant requested Safe Passage information or information about their valuation of IP acquired legally – information that bears on the value of TN and of TN's IP-theft based business model to SAP, which may be relevant to what SAP would have paid for a hypothetical license. Moreover, Defendants' use of the attorney/client privilege to shield the actions and knowledge of SAP and its officers and directors continues to hamper assessment of punitive damages. Extensive meet and confers on these issues and other damages-related discovery are ongoing and motions to compel may be required. In addition, a new round of discovery (including extensive requests relevant to damages) has just been served by both sides. Thus, there is ongoing relevant discovery that could and likely will affect assessing and computing appropriate damages.

        To complete their analysis and computations, Oracle's damages experts are waiting for the additional factual material yet to be produced and analyzed; moreover, they have not finalized their methodologies or computations of Oracle's damages. In addition, legal rulings (such as on Defendants' promised summary judgment motions) may affect the final damages methodologies and computations. Oracle's damages report and expert opinions will be provided in accordance with whatever schedule is then in place in the action. Thus the following description does not constitute Oracle's damages analysis or demand and does not in any way bind Oracle, but merely provides Oracle's current understanding of the damages here.

        Oracle has ten causes of action; some of the damages described overlap and

1  different plaintiffs bring different causes of action. Oracle would not seek or be entitled to
2  duplicate recovery though it will likely seek damages in the alternative.

3       A.     In connection with its Copyright Infringement cause of action, Oracle has
4  alternative measures of its damages available to it under the law. Oracle reserves its right to
5  elect statutory damages for Defendants' infringement at the appropriate time, but currently does
6  not envision that it will do so. Rather, it currently seeks from Defendants the value of the
7  copyrighted material Defendants infringed both through hypothetical license(s) and, in the
8  alternative, through a lost profits/infringers' profits analysis.

9       Oracle expects to seek to recover damages based on a hypothetical license for the
10 PSFT/JDE-related infringement by Defendants. Accordingly, the value of the PS/JDE-related
11 hypothetical license is determined by the value of the rights being licensed or received, as
12 evidenced by the circumstances at the time (*e.g.*, for Oracle – the fact that Oracle had just paid
13 significant amounts for the companies, the anticipated value to Oracle of the PSFT/JDE
14 acquisitions, Oracle's cross-sell and up-sell and service renewal history; for Defendants – the
15 fact that the acquisitions significantly increased Oracle's threat to SAP, the anticipated value to
16 SAP of the TN acquisition, the amount that would not have to be expended by Defendants to
17 legitimately create what they would instead license (which will also be the subject of expert
18 analysis and relied upon by Oracle's damages experts), SAP's cross-sell and up-sell and service
19 renewal history). Based on the evidence to date, Oracle anticipates valuing the hypothetical
20 licenses in the billions of dollars. However, no formal computation has been completed.

21       Oracle's alternative lost profits and infringers' profits analysis for its copyright
22 infringement claims against Defendants is ongoing and incomplete. It currently will encompass
23 the lost profits associated with support customers who left Oracle, PeopleSoft or J.D. Edwards
24 for SAP and TN, service-related discounts required to compete against SAP and TN, and lost
25 license sales and license discounts associated with competition with SAP and TN. Evidence
26 relevant to this analysis is contained, for example, in Defendants' multiple internal and external
27 reports of the revenues taken away from Oracle by TN and by the Safe Passage program, in the
28 voluminous customer contracts and related files produced by the parties, in the customer

A/73042322.8       47       Case No. 07-CV-1658 (PJH) EDL

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

| | |
|---|---|
| 1 | financial reports that the parties have created and produced, in Oracle's At Risk reports and TN |
| 2 | win-back spreadsheets, in the extensive documents on support renewal cancellations and license |
| 3 | wins and losses against SAP and TN, in Oracle's productions and pending productions on |
| 4 | pricing exceptions for support and licenses requested and approved to compete with TN and Safe |
| 5 | Passage. Should the current schedule remain in place, Oracle will also be providing additional |
| 6 | evidence relied upon by its experts in conjunction with its damages expert report, including on |
| 7 | the purchasing history of its PeopleSoft and JDE customer base post-acquisition. Based on the |
| 8 | evidence to date, Oracle anticipates that the lost revenues associated with support losses and |
| 9 | discounts alone exceed                    dollars. Oracle's infringers' profits analysis includes the |
| 10 | profits on the revenues SAP and TN made from their copyright infringement, including some or |
| 11 | all of the approximately                TN reported as revenues, and a significant portion of the |
| 12 | approximately              in license revenue associated with SAP's leverage of TN and Safe |
| 13 | Passage in the sale of license applications. Further evidence in support of this aspect of Oracle's |
| 14 | damages is described in section E below. |

### VI. CERTIFICATION

Pursuant to Fed. R. Civ. P. 26(g)(1), counsel for Oracle certifies that to the best of its knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, these supplemental and amended Initial Disclosures are complete and correct as of the time Oracle makes them.

DATED: May 22, 2009

                                  Bingham McCutchen LLP

                                  By: _____
                                         Zachary J. Alinder
                                         Attorneys for Plaintiffs
                       Oracle USA, Inc., Oracle International Corporation,
                                and Oracle EMEA Limited

## PROOF OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by U.S. Mail and Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following document:

**PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES**

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

Robert A. Mittelstaedt, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

ramittelstaedt@JonesDay.com

Tharan Gregory Lanier, Esq.
Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

tglanier@JonesDay.com
jfroyd@JonesDay.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on May 22, 2009, at San Francisco, California.

*Rosaleen Doran*
Rosaleen Doran

A/73042322.8   52   Case No. 07-CV-1658 (PJH) EDL

PLAINTIFFS' SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES