# EXHIBIT F

# BINGHAM

Zachary J. Alinder
Direct Phone: (415) 393-2226
Direct Fax: (415) 393-2286
zachary.alinder@bingham.com

May 22, 2009

**Via Electronic Mail and U.S. Mail**

Elaine Wallace, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500

Re: *Oracle, et al. v. SAP AG, et al.*

Dear Elaine:

This letter responds to your May 14 and May 19 letters with respect to their requests concerning supplementation of initial disclosures, interrogatory responses and requests for production.

First, Oracle will serve today supplemental and amended responses regarding the following: (a) Initial Disclosures, (b) Oracle's Responses to the First Set of Interrogatories, including a separately served further amendment/supplementation of Interrogatory No. 13, (c) Oracle's Responses to the Third Set of Interrogatories, and (d) Oracle's Responses to the Fourth Set of Interrogatories.

As to the specific discovery requests that you cite in your May 14 and 19 letters, we believe that our supplementation has cured any deficiency with respect to the Initial Disclosures and Interrogatory Responses. As to Interrogatory No. 16 in the Second Set of Interrogatories, given that Defendants' conduct stretches back many years in the past including before Oracle acquired PeopleSoft, J.D. Edwards and Siebel, the response does not appear inaccurate or inconsistent.

Further, as to all the responses, including those above, please note that Fed. R. Civ. Proc. 26(e) only requires supplementation/amendment "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." As you know, these responses were served long before Oracle was aware of the vast scope of the illegal conspiracy in which Defendants were engaged. However, the substantial discovery that Oracle has produced in the form of not only written discovery responses, but also in the numerous depositions that have been taken, the hundreds of thousands of pages of documents produced, the changed positions taken in the innumerable meet and

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

Elaine Wallace, Esq.
May 22, 2009
Page 2

confer sessions (and written meet and confer letters) conducted during the discovery process, and in the many motions to compel and discovery hearings through the discovery process have all made Defendants sufficiently aware of additional or corrective information regarding many discovery responses. Fed. R. Civ. Proc. 26(e)(1)(A).

This applies specifically to your requests for further documents related to Requests for Production 67-68, 70, 107 and 111-113 in your May 19 letter. Indeed, without even examining the custodian productions, pursuant to the Parties' numerous meet and confer discussions and letters and agreements regarding financial document productions, including through the targeted search process, Oracle has produced detailed financial information including but not limited to: (1) customer contracts and license files, (2) customer financial reports (OKI3 and analytics), (3) at-risk reports and numerous analyses and presentations re same, including the impact of lost renewals on future license sales, (4) information on profit margins, (5) subsidiary key performance measures, (6) quarterly financial reference books, (7) support renewals, discount and pricing analysis emails and packages, (8) product revenue reporting packages, (9) board packages, (10) fiscal board budget reports, (11) JDE and PSFT support cancellation rate documents, including the impact of lost renewals on future license sales, (12) JDE and PSFT support bookings documents, (13) SEC filings, (14) forecasted revenue documents for license and support, (15) customer win/loss reports, (16) charts of accounts, (17) FAS 141 valuation reports and other acquisition valuation documents, and (18) integration scorecards/reports. Just among these document types, numbers 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, 15, 16, 17 and 18 all have information related to license revenue. Further, Oracle has served discovery related to all Safe Passage customers, not simply those identified as having a TN component by Defendants. Oracle is in the process of meeting and conferring with Defendants on those requests.

Note that we disagree completely with your characterization of your request for general ledger information, as it completely misstates the history of that meet and confer. On April 29, for the first time, over four weeks after receiving Oracle's final Charts of Accounts information, which Oracle produced starting back in February, Defendants provided us with a 73-page request for general ledger information. On May 4, we promptly objected to that request because of the unreasonable and oppressive burden involved with the over-broad request. In fact, we explained the months of processing by dedicated personnel that would be involved with collecting the requested information. Less than a week later, during our telephonic meet and confer, Jason McDonell requested the basis for our claim that months of processing would be required to collect the information. During that conversation, we explained specifically why and how Defendants' requests

Elaine Wallace, Esq.
May 22, 2009
Page 3

were unreasonably broad. Defendants have never stated any disagreement with our description. In order to move the discussion along, we requested that Defendants provide us with an appropriately-scoped and reasonable request. We have not heard anything since. That Defendants now claim Oracle refused production is a complete distortion of what happened, when in fact, Defendants apparently abandoned their efforts to seek this information. We still look forward to Defendants' next proposal if you have not in fact abandoned your efforts to seek general ledger data. To avoid more wasted time and resources, we hope this next proposal is realistic, especially given the short schedule before us.

Finally, Oracle confirms that additional license sales damages materials will be produced in conjunction with Defendants' May 15, 2009 request for additional custodial productions, *e.g.*, from Keith Block and Rich Allison. In addition, Oracle will evaluate the completeness of those productions, and if necessary, search for and produce non-privileged, non-duplicative, license pricing exception information related to TomorrowNow or Safe Passage that can be located following a reasonable and centralized search (*e.g.*, from a source comparable to OSSInfo). In conjunction with its damages analysis, Oracle also will produce an analysis of the purchasing history of its PeopleSoft and J.D. Edwards customer base post-acquisition, along with any supporting evidence. In short, the substantial discovery related to the issues identified in your letters, including (a) license revenues, (b) non-TN-specific customers, and (c) sales of other products has put those issues squarely within the case. No formal supplementation is required under the Federal Rules for these responses because they have "otherwise been made known to [you] during the discovery process or in writing." Fed. R. Civ. Proc. 26(e)(1)(A).

\*          \*          \*          \*

If, after review of the supplemental responses, Defendants continue to be concerned about any of the above categories of discovery, Oracle will be happy to schedule a further meet and confer for both sides to raise any outstanding issues together.

Sincerely yours,

Zachary J. Alinder

cc:     Geoff Howard
        Holly House
        Bree Hann