Bingham McCutchen LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 2090009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC.,*et al.*,<br><br>　　　　　Plaintiffs,<br>　　v.<br>SAP AG, *et al*.,<br><br>　　　　　Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**DECLARATION OF PAUL K. MEYER IN SUPPORT OF ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(C) AND 16(F)**<br><br>Date:　　August 18, 2009<br>Time:　　2:00 pm<br>Place:　　Courtroom E, 15th Floor<br>Judge:　　Hon. Elizabeth D. Laporte |

Case No. 07-CV-01658 PJH (EDL)

DECLARATION OF PAUL K. MEYER

I, Paul K. Meyer, declare:

1. I am a Managing Director at Navigant Consulting, Inc. ("NCI") and co-leader of NCI's national intellectual property practice. NCI is a national business, economic, financial and damages consulting company that provides services to government agencies, corporations and counsel. NCI has approximately 1,900 professionals in over thirty five offices throughout the United States, Canada, Europe and China.

## I. BACKGROUND AND EXPERIENCE

2. I am a Certified Public Accountant (CPA), Certified Fraud Examiner (CFE), Certified in Financial Forensics (CFF) and accredited in business valuation (CPA-ABV). I am a Consulting Professor at Stanford University in the Graduate School of Engineering, where I have been teaching a course covering accounting, economics and financial issues for over fifteen years. I am also a member of the Advisory Board for the McIntire School of Commerce at the University of Virginia. I graduated from the University of Virginia in 1979. I frequently lecture on intellectual property valuation, including at the Sedona Patent Conference, the USC Intellectual Property Institute, the Licensing Executive Society and Law Seminars International.

3. I have over 25 years of experience consulting on financial, accounting, economic and damages matters. I am experienced in financial, economic, damage, and accounting matters related to the scope of our work, analysis and study on this matter. I have consulted on numerous intellectual property infringement, misappropriation, valuation and licensing-related matters. I have analyzed hundreds of claims for lost profits and other financial and economic impacts, and have analyzed and determined reasonable royalty rates. I have testified in over 200 depositions and approximately 70 trials and major arbitrations, including over 30 jury trials.

4. My curriculum vitae is included as **ATTACHMENT A** to this Declaration. A listing of cases in which I have testified as an expert witness at trial, arbitration and/or deposition during the last four years is included as **ATTACHMENT B** to this Declaration. My

1  hourly billing rate on this matter is $600.  I have no publications during the last ten years.  NCI's
2  work on this matter was performed by me or under my supervision.

## II.  RETENTION AND ASSIGNMENT

5. Oracle retained NCI to address economic and damage issues related to its litigation with defendants SAP AG, SAP America and TomorrowNow, Inc. (collectively referred to herein as "SAP" or "Defendants").[1]  My analyses of Oracle's damages in this matter are on-going; I have not yet reached conclusions, nor have I reviewed all of the documentation and information that has been produced by the parties in this matter.  I understand that discovery is ongoing.

6. The purpose of this declaration is to address issues raised in the Declaration of Stephen Clarke dated July 13, 2009 in support of SAP's motion for sanctions against Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA, Ltd. (collectively referred to herein as "Oracle" or "Plaintiffs") to preclude Oracle from presenting evidence in support of: (1) lost profits related to customers that were not customers of TomorrowNow, Inc.; (2) lost profits related to license revenues; and/or (3) lost profits related to products that were not supported by TomorrowNow, Inc. ("Clarke July 13, 2009 Declaration").[2]  In the Clarke July 13, 2009 Declaration, Mr. Clarke lists the types of additional documentation that he allegedly would need to receive in order to evaluate damages that he anticipates Oracle will claim in this matter.  Mr. Clarke concludes that he would need an additional year over and above the extension that

---

[1] Oracle USA, Inc. et al v. SAP AG et al, Complaint In Case No. 07-01658 dated March 22, 2007; Oracle USA, Inc. et al v. SAP AG et al, Third Amended Complaint In Case No. 07-01658 dated October 8, 2008.

[2] Declaration of Stephen K. Clarke in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f), dated July 13, 2009.

has already been granted by the Court, and would incur at least an additional $5 million in fees, in order to address "expanded damages claims" that he anticipates Oracle will make.[3]

7. I submit this Declaration in support of Oracle's Opposition to Defendants' Motion for Sanctions. I make the following statements based on my personal knowledge and expertise and, if called as a witness, would be prepared to testify competently about them. The basis for my opinions and materials relied upon are referenced herein.

## III. SUMMARY OF CONCLUSIONS

8. Mr. Clarke's declaration is cursory in its description of categories of additional documents needed and reasons why they are needed. However, from the brief explanations he gives, Mr. Clarke's claims of additional documentation that he would need to receive, and time and effort that he would incur, as a result of Oracle's alleged "expanded damages claims" are overstated for at least the following reasons[4]:

   a) Detailed general ledger and subsidiary ledger information sought by Mr. Clarke is duplicative of, and would not provide significant additional value to, Oracle financial information that has been or will be produced by Oracle.

   b) Documentation of pricing discounts that resulted from Defendants' alleged actions has already been produced, and I have seen such documentation.

   c) Mr. Clarke is seeking extensive discovery related to the quantification of potential areas of Oracle lost profits that I have neither quantified, nor anticipate quantifying.

   d) Many items listed by Mr. Clarke are readily available in the public domain, and have therefore been accessible to him since his retention.

---

[3] Clarke July 13, 2009 Declaration, p. 11. The additional $5 million in fees is in addition to approximately $4.4 million in fees that Mr. Clarke states he has incurred to date, plus an additional $4 million in fees that Mr. Clarke expects to incur through trial based on his current scope of analyses. To date, fees incurred for NCI's work on this matter are approximately $1.7 million.

[4] I do not and cannot attest to the burden or other defenses associated with the remaining documents that Mr. Clarke lists as necessary.

## IV. DETAILED GENERAL LEDGER AND SUBSIDIARY LEDGER DATA

9. In his declaration, Mr. Clarke states that for each customer, or "potential" customer, for which he assumes Oracle may assert lost profits, he would require "Detailed accounting information (general ledgers and subsidiary ledgers) sufficient to show the license and support revenues and profits by year and by product line from 2004 through the present."[5] Other financial data that is more useable and less cumbersome to produce is available and is sufficient to show Oracle's license and support revenues and profits.

10. As explained in my declaration in support of Oracle's opposition to Defendants' motion to compel, access to the level of detail that such transactional-level general ledger data provides would not allow for an enhanced determination of Oracle's relevant revenues, costs or profit margins.[6]

## V. DOCUMENTATION OF PRICING DISCOUNTS

11. As it relates to documentation or information related to Oracle's potential claim of damages due to price discounts, Mr. Clarke asserts that he would need to receive, "Emails, correspondence, executive reports, presentations, etc. sufficient to determine whether the price discounts for each customer were as a result of the alleged actions (as opposed to unrelated factors)."[7]

12. I may quantify damages related to support pricing discounts that Oracle provided as a result of Defendants' alleged bad acts.[8] I understand from Oracle testimony taken

---

[5] Clarke July 13, 2009 Declaration, p. 4-5.

[6] Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion to Compel Production of Financial Information, dated July 27, 2009.

[7] Clarke July 13, 2009 Declaration, p. 4-5. Mr. Clarke also critiques the sufficiency of documents included on CD 194 produced by Oracle to support the existence of support pricing discounts. In his critique, it does not appear that Mr. Clarke has considered the availability of additional documents in Oracle's OSSINFO database that provide evidence of pricing discounts and associated approvals. *See* Clarke July 13, 2009 Declaration, p. 11.

[8] I currently do not anticipate quantifying applications only discounts that Oracle may have given to license customers as a result of Defendants' alleged bad acts.

4     Case No. 07-CV-01658 PJH (EDL)

DECLARATION OF PAUL K. MEYER

1  by Defendants that OSSINFO is the Oracle organization responsible for support discounts and
2  pricing exception approvals.[9]  I understand that it is possible to search the OSSINFO database on
3  terms, such as "TomorrowNow," to yield a population of relevant documents, and I have seen
4  such documentation.  Accordingly, the type of documentation that Mr. Clarke is requesting is
5  already available.

### VI.   INFORMATION RELATED TO "HARMED CURRENT AND PROSPECTIVE CUSTOMER RELATIONSHIPS"

13.   While I understand that Oracle may have suffered lost profits due to harm to "current and prospective customer relationships, even where they did not result in a loss of customer support contract or software licensing,"[10] I have not quantified, and currently do not anticipate quantifying, the amount of this harm.  Accordingly, the production of documents and information that Mr. Clarke states that he must receive in order to evaluate these potential components of Oracle damages is unnecessary.

14.   Though I cannot attest whether any of the following documents have already been produced by Oracle, the following types of documents and information listed by Mr. Clarke would not be required to be produced on the basis of such non-quantified damages referred to in paragraph 13, above:[11]

   (a) Contracts and OKI3 Contract Details, Analytics Contracts Reports, and Analytics License Reports for all customers that licensed an Oracle product during the relevant period;

   (b) Documents to show all customer lifetime license purchasing patterns from at

---

[9] Deposition of Juan Jones (Oracle Senior Vice President, Customer Services for North America Support), dated April 24, 2009, p. 40-41.  Deposition of Juergen Rottler (Oracle Executive Vice President, Customer Services), dated May 13, 2009, p. 25.

[10] Plaintiff's Supplemental and Amended Initial Disclosures, dated May 22, 2009, p. 44.

[11] Mr. Clarke's list of items needed to evaluate Oracle's alleged "Expanded claims for 'Harmed current and prospective customer relationships, even where they did not result in a customer support contract or software licensing" are provided in Section D, paragraphs 19 through 23 (pages 6-8) of the Clarke July 13, 2009 Declaration.  I have provided a summary of those items.

least 2002 to the present;[12]

  (c) Documentation of details of all of Oracle's up-selling initiatives;

  (d) Documents related to entities that never became Oracle customers (including market and customer studies, reports on Oracle "win rates", detailed sales correspondence, and detailed general ledger and subsidiary ledger accounting data); and

  (e) Documentation of customer motives for choosing Oracle, SAP or another ERP vendor (including industry publications and articles, internal writings related to the market's response to Oracles acquisition of PeopleSoft and Siebel, customer depositions and any other documentation describing a particular customer's motives for not purchasing Oracle software).

## MR. CLARKE'S REQUESTS FOR PUBLICLY AVAILABLE DOCUMENTS AND INFORMATION

15. Though I do not necessarily agree any or all are necessary to Defendants, many of the documents and information that Mr. Clarke claims would need to be provided to him in order for him to complete his damages analyses are available in the public domain, and therefore have been accessible to Mr. Clarke throughout his retention in this matter. Specifically, the following items listed by Mr. Clarke are already publicly available:

  (a) "Industry publications, reports, articles, etc." that address factors that may have contributed to customers selecting software other than Oracle (including public reaction to Oracle's acquisition of PeopleSoft and uncertainty in the marketplace about Oracle's plans for product direction and pricing);[13]

  (b) "Press releases, industry publications, articles, transcripts of analyst

---

[12] In connection with NCI's analysis of lost cross-sell and up-sell opportunities, we are directing Oracle personnel to gather information. We will provide that analysis and the supporting information in connection with my expert report, as disclosed by Oracle. *See also* Plaintiffs' Supplemental and Amended Initial Disclosures, dated May 22, 2009, p. 48.

[13] Clarke July 13, 2009 Declaration, p. 8.

1 | meetings, etc." discussing Oracle, SAP or other vendor win-rates;[14] and

2 |     (c) "Public statements, press releases, announcements, transcripts of industry

3 | analyst meetings" related to existing and proposed pricing of PeopleSoft products.[15]

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct, and that this Declaration was executed on July 27, 2009, in San Francisco California.

DATED: July 27, 2009

                                                       /s/ Paul K. Meyer
                                                     Paul K. Meyer

---

[14] Clarke July 13, 2009 Declaration, p. 8.

[15] Clarke July 13, 2009 Declaration, p. 9.