1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:  (415) 626-3939
   Facsimile:  (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA 94303
   Telephone:  (650) 739-3939
10 Facsimile:  (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice)*
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:  (832) 239-3939
15 Facsimile:  (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19                      UNITED STATES DISTRICT COURT

20                     NORTHERN DISTRICT OF CALIFORNIA

21                          SAN FRANCISCO DIVISION

22  ORACLE USA, INC., *et al.,*           Case No. 07-CV-1658 PJH (EDL)

23              Plaintiffs,               **DEFENDANTS' REPLY IN SUPPORT
                                          OF MOTION FOR SANCTIONS
24       v.                               PURSUANT TO FED. R. CIV. P. 37(c)
                                          AND 16(f)**
25  SAP AG, *et al.*,
                                          **REDACTED**
26              Defendants.
                                          Date:  August 18, 2009
27                                        Time:  2:00 pm
                                          Courtroom: E, 15th Floor
28                                        Judge: Hon. Elizabeth D. Laporte

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A. This Court Has Authority To Decide Defendants' Motion..................................... 1

    B. Sanctions Are Warranted Under Rules 37(c) And 16(f) ......................................... 3

        1. No Finding Of Bad Faith Is Required ........................................................ 3

        2. It Is Oracle's Burden To Show Harmlessness............................................. 4

        3. Preclusion Is Proper At This Stage In The Case ........................................ 4

        4. Rule 16(f) Applies ...................................................................................... 6

    C. Oracle's Account Of The Facts Is False And Inconsistent .................................... 6

        1. Oracle Mischaracterizes Its Complaints And Disclosures ......................... 7

        2. Oracle Did Not Disclose Its New Damage Theories In Its Discovery Responses. ................................................................................... 9

        3. Oracle's Production Has Not Cured Its Rule 26 Violation ....................... 11

    D. Oracle Has Not Met Its Burden Of Proving Harmlessness .................................. 12

    E. Oracle's Motion To Compel Argument Turns Rule 26 On Its Head .................... 14

III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

Cases

*Banks v. Modesto City Schools Dist.*
No.CV-F-04-6284, 2006 U.S. Dist. LEXIS 94274 (E.D. Cal. Dec. 18, 2006) ............................ 3

*City of San Francisco v. Tutor-Saliba*
218 F.R.D. 219 (N.D. Cal. 2003) ................................................................................................ 8

*Evenflow Plumbing Co., Inc. v. Pac. Bell Directory*
No. C-3:04-CV-00795, 2005 U.S. Dist. LEXIS 46822 (N.D. Cal. April 26, 2005) .................. 15

*Gonzalez v. Hickman*
No. ED CV 05-00660, 2007 U.S. Dist. LEXIS 84390 (C.D. Cal. Jun. 28, 2007) ....................... 7

*Hogan v. Robinson*
No. 1:03-CV-06408, 2007 U.S. Dist. LEXIS 35397 (E.D. Cal. May 15, 2007) ......................... 1

*Hsieh v. Peake*
No. C 06-5281, 2008 U.S. Dist. LEXIS 23649 (N.D. Cal. Mar. 25, 2008) ................................. 2

*Keithley v. The Homestore.com, Inc.*
No. C-03-04447, 2008 U.S. Dist. LEXIS 61741 (N.D. Cal. Aug. 12, 2008) ......................... 3, 6

*Maisonville v. F2 Am., Inc.*
902 F.2d 746 (9th Cir. 1990) ....................................................................................................... 2

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*
No. CIV.S-04-2728, 2006 U.S. Dist. LEXIS 79862 (E.D. Cal. Nov. 1, 2006) ....................... 1, 2

*Network Appliance, Inc. v. Bluearc Corp.*
No. C 03-5665, 2005 U.S. Dist. LEXIS 16726 (N.D. Cal. June 27 2005) ......................... 3, 4, 6

*Payne v. Exxon Corp.*
121 F.3d 503 (9th Cir. 1997) ....................................................................................................... 4

*Pierce v. CVS Pharmacy, Inc.*
No. CV 06-823, 2007 U.S. Dist. LEXIS 69006 (D. Ariz. Sept. 17, 2007) ................................. 6

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*
382 F.3d 546 (5th Cir. 2004) ....................................................................................................... 5

*Reiner v. Warren Resort Hotels, Inc.*
No. CV 06-173, 2008 U.S. Dist. LEXIS 102047 (D. Mont. Oct. 1, 2008) ................................. 6

*Reynoso v. Constr. Protective Servs., Inc.*
No. 06-56381, 2008 U.S. App. LEXIS 19681 (9th Cir. Sept. 16, 2008) ................................ 1, 3

*Semtech Corp. v. Royal Ins. Co.*
No. CV 03-2460, 2005 WL 6192906 (C.D. Cal. Sept. 8 2005) .................................................. 6

*SPX Corp. v. Bartec USA, LLC*
574 F. Supp. 2d 748 (E.D. Mich. 2008) .................................................................................. 4, 5

*The Christensen Firm v. Chameleon Data Corp.*
No. C06-337Z, 2006 U.S. Dist. LEXIS 79710 (W.D. Wash. Nov. 1, 2006) ......................... 6, 14

*Tracinda Corp. v. DaimlerChrysler AG*
362 F. Supp. 2d 487 (D. Del. Mar. 30, 2005) ............................................................................. 6

*United States v. Rapanos*
376 F.3d 629 (6th Cir. 2004) ....................................................................................................... 5

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*
  259 F.3d 1101 (9th Cir. 2001) .......................................................................................... 3, 4, 5

### Statutes

28 U.S.C. § 636 ............................................................................................................................. 2, 3

28 U.S.C. § 636(b)(1)(A) ................................................................................................................. 2

### Other Authorities

14 J. Moore, *Moore's Federal Practice – Civil* § 72.02 (2009) ...................................................... 2

### Rules

Federal Rules of Civil Procedure
  11 ................................................................................................................................................ 2
  16(f) .................................................................................................................................... 5, 6, 11
  26 ......................................................................................................................................... 4, 5, 8
  26(a) ........................................................................................................................................... 4
  26(e)(1) ................................................................................................................................ passim
  33(d) ........................................................................................................................................... 9
  37 ............................................................................................................................................ 2, 5
  37(c) ................................................................................................................................. 1, 5, 11
  37(c)(1) ............................................................................................................................... passim
  56 ................................................................................................................................................ 2
  72 ................................................................................................................................................ 2

Local Rules
  37-1 ............................................................................................................................................. 1

I. **INTRODUCTION**

Defendants' motion seeks to preclude evidence of the portions of Oracle's alleged lost profits claim that Oracle disclaimed for two years. This will still leave Oracle with the portion of the alleged lost profits claim on which the case has focused -- the support revenue associated with TN customers -- as well as its other alleged damages claims. It is far too late in the case for Oracle to seek to add new categories of damage that it has previously disclaimed and for which it failed to provide discovery.

Contrary to Oracle's argument, this Court's authority to decide Defendants' motion is supported by well-established law. Moreover, a finding of bad faith is not required. It is sufficient that Defendants will be prejudiced by Oracle's attempt to add new damage claims at this late date -- a conclusion that Oracle fails to rebut. Oracle attempts to divert the Court with false and irrelevant statements about Defendants' production and to mislead the Court with an inaccurate account of its discovery conduct. On the true record, preclusion is warranted.

II. **ARGUMENT**

A. **THIS COURT HAS AUTHORITY TO DECIDE DEFENDANTS' MOTION.**

Oracle misstates the sole case on which it relies for its argument that this Court cannot decide Defendants' motion. Opp. at 3-4. *Reynoso* simply held that Local Rule 37-1, which requires a meet and confer before filing a discovery motion, does not apply to a motion *in limine* to exclude evidence. *Reynoso v. Constr. Protective Servs., Inc.*, No. 06-56381, 2008 U.S. App. LEXIS 19681, *5-8 (9th Cir. Sept. 16, 2008). *Reynoso* did not involve a magistrate ruling or any question regarding the scope of a magistrate's authority, and does not apply here.

Ample case law supports this Court's authority to decide Defendants' motion. *See, e.g.*, *Hogan v. Robinson*, No. 1:03-CV-06408, 2007 U.S. Dist. LEXIS 35397, *5 (E.D. Cal. May 15, 2007) (plaintiffs' objection to magistrate judge hearing Rule 37(c) motion to exclude expert testimony overruled by district court judge); *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, No. CIV.S-04-2728, 2006 U.S. Dist. LEXIS 79862, *10-11 (E.D. Cal. Nov. 1, 2006) (Rule 37(c) motion to preclude evidence is a discovery motion that "ordinarily is resolved by way of order by the assigned magistrate judge.").

1   The authority of a magistrate is determined by the scope of the trial court's reference, limited only by 28 U.S.C. § 636. Here, the trial court has referred all discovery motions to this Court. As the Ninth Circuit held in *Maisonville*, this referral implicitly includes the authority to decide discovery related sanctions motions. *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-748 (9th Cir. 1990) (addressing Rule 11 sanctions but finding "no material distinction" between Rule 11 and Rule 37 sanctions). This is consistent with 28 U.S.C. § 636(b)(1)(A), which permits referral of "any pretrial matter" except certain enumerated and analogous dispositive motions. Whether a magistrate may decide a sanctions motion thus turns on whether it is dispositive, *i.e.* whether it would terminate a claim. Fed. R. Civ. P. 72; *see also Maisonville*, 902 F.2d at 747-748 (discovery sanctions not falling within the motions enumerated in 28 U.S.C. § 636(b)(1)(A) are generally non-dispositive); 14 J. Moore, *Moore's Federal Practice – Civil* § 72.02 (2009).[1]

Oracle's misreads Judge Hamilton's opinion in *Hsieh v. Peake*, No. C 06-5281, 2008 U.S. Dist. LEXIS 23649, *59-60 (N.D. Cal. Mar. 25, 2008). Oracle argues that "[n]othing in [Judge Hamilton's] observations … indicates that a Rule 37(c) motion to exclude evidence at trial is a discovery motion that should be decided by the discovery magistrate." Opp. at 4, n.1. In fact, Judge Hamilton said the opposite: "[A]ny Rule 37 motion should have been directed to the magistrate judge to whom the court referred all discovery disputes." *Id.* at *59. Oracle's attempt to read into *Hsieh* that all Rule 37(c) motions are dispositive motions reserved exclusively for the trial court (Opp. at 4, n.1) is contrary both to Judge Hamilton's express language and to Ninth Circuit law. *Maisonville*, 902 F.2d at 747-748.

The sanction Defendants seek is non-dispositive. The motion seeks to preclude evidence relating only to portions of one alleged measure of damages. Defendants do not seek to preclude Oracle from pursuing lost profits damages at all, or any other form of damages, and do not seek to terminate Oracle's right to pursue any of its ten causes of action.[2] *See, e.g., Banks v. Modesto*

---

[1] A magistrate who believes that a ruling on a Rule 37(c) motion is more appropriate for the trial judge, may issue a recommendation rather than an order. *See, e.g., Meridian Project Sys., Inc.*, 2006 U.S. Dist. LEXIS 79862, at *10-11 (recommendation rather than order that Rule 37(c) motion be granted because it required interpretation of an order issued by the trial judge).

[2] Contrary to Oracle's argument (Opp. at 15), Defendants' intent to file a Rule 56 motion regarding royalty damages has nothing to do with the merits of this discovery sanctions motion and does not makes it improper.

1  *City Schools Dist.*, No.CV-F-04-6284, 2006 U.S. Dist. LEXIS 94274, * (E.D. Cal. Dec. 18, 2006)
2  (referring sanctions motion to trial court because of request for terminating sanction).  This Court
3  thus has authority under 28 U.S.C. § 636 and the relevant case law to decide Defendants' motion.

4  **B.**     **SANCTIONS ARE WARRANTED UNDER RULES 37(c) AND 16(f).**

5      **1.**     **No Finding Of Bad Faith Is Required.**

6      Although Oracle's deliberate indifference to its discovery obligations evidences bad faith,
7  no finding of bad faith is required.  The Ninth Circuit has made clear that under Rule 37(c)(1),
8  preclusion is a "self-executing," "automatic" sanction.  *Yeti by Molly Ltd. v. Deckers Outdoor*
9  *Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (the adoption of Rule 37(c)(1) in 1993 represented a
10 broadening of the sanction power under which preclusion is an appropriate remedy even in the
11 absence of bad faith or willfulness).  Indeed, in *Reynoso*, the Ninth Circuit explicitly rejected "the
12 notion that the district court was required to make a finding of willfulness or bad faith to exclude
13 the damages evidence."  *Reynoso*, 2008 U.S. App. LEXIS 19681, at *8-9.  Similarly, this Court
14 held in *Keithley* that "[s]anctions for violations of Rule 37, by contrast, may be imposed for
15 negligent conduct."  *Keithley v. The Homestore.com, Inc.*, No. C-03-04447, 2008 U.S. Dist.
16 LEXIS 61741, *7 (N.D. Cal. Aug. 12, 2008) (Laporte, M.J.).

17     Arguing to the contrary, Oracle improperly edits an opinion by Judge Patel.  Judge Patel
18 wrote that "under certain circumstances, the imposition of preclusive sanctions may be
19 tantamount to dismissal of a plaintiff's claims …" and that "[u]nder those circumstances, mere
20 negligent conduct is insufficient … and a showing of bad faith is required."  *Network Appliance,*
21 *Inc. v. Bluearc Corp.*, No. C 03-5665, 2005 U.S. Dist. LEXIS 16726, *9 (N.D. Cal. June 27
22 2005).  To change the meaning, Oracle omits the first sentence and the qualifier "under those
23 circumstances."  Opp. at 8.  Thus, Oracle tries to transform Judge Patel's holding, which is
24 limited to preclusive sanctions tantamount to dismissal, into a blanket rule applicable to all
25 sanctions motions.  As noted, the sanction sought here impacts only portions of one measure of
26 alleged damages.  It would not preclude Oracle from pursuing other lost profits damages, or any
27 other type of damages, and is not "tantamount to dismissal" of any cause of action.

28

### 2. It Is Oracle's Burden To Show Harmlessness.

Oracle, again relying on *Network Appliances*, contends that it is Defendants' burden to show prejudice from Oracle's failure to comply with its discovery obligations.[3] Opp. at 8. This is incorrect. Judge Patel's decision, although issued in 2005, relied on pre-1993 authority. *Network Appliance,* 2005 U.S. Dist. LEXIS 16726, at *10-11. The Ninth Circuit's 2001 decision in *Yeti by Molly* makes clear that the burden of showing harmlessness rests with Oracle. 259 F.3d at 1107 ("[Defendant] asserts that the burden of proving harm is on the party seeking sanctions; we disagree. Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). As discussed below, in Defendants' opening brief, and in their expert's declarations, Oracle has not demonstrated that its failure to comply with Rule 26 was either harmless or substantially justified.

### 3. Preclusion Is Proper At This Stage In The Case.

Contrary to Oracle's suggestion (Opp. at 5), preclusion is not limited to circumstances where information is disclosed after the close of discovery, shortly before trial. Rather, preclusion is appropriate when disclosure occurs late enough in the case to cause prejudice. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("The issue is not whether [defendants] eventually obtained the information they needed, or whether plaintiffs are now willing to provide it, but whether plaintiffs' repeated failure to provide documents and information in a timely fashion prejudiced the ability of [defendants] to prepare their case for trial."). That is why a party has a continuing duty to supplement disclosures and discovery responses whenever the party learns they are incomplete or incorrect. Fed. R. Civ. P. 26(e)(1); *see also* Dkt. No. 83 (Order Re Discovery Procedures) at ¶¶ 4, 9. For example, in *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 755-58 (E.D. Mich. 2008), the trial court upheld the magistrate's decision to preclude prior art evidence although the defendant disclosed it two months before the close of discovery and the plaintiff had a "substantial opportunity" for (and did, in fact, conduct) "significant discovery" after the disclosure. The court found that preclusion was proper because the

---

[3] Oracle implies that sanctions are appropriate only where initial or supplemental disclosures are at issue. Opp. at 7. That is not so. Rule 26(e)(1) applies not only to disclosures under Rule 26(a) but to written responses to interrogatories and document requests as well.

1  information was known to the defendant for nearly a year prior to disclosure and the plaintiff
2  "plainly was disadvantaged by the late disclosures." *Id.* (the "purpose of *Rule 37* is not only to
3  punish discovery abusers, but to protect litigants who legitimately seek information for trial.").

4        Here, Oracle's new damages theories have been known to it since the outset of the case
5  but were not disclosed until more than two years after the complaint was filed, on the eve of the
6  original fact discovery cut-off. Mot. at 13-14. The fact that the parties agreed to a limited
7  extension of the discovery period based on Oracle's representation that the extension was
8  necessary to address certain limited subject matters does not negate the prejudice to Defendants.[4]
9  There is insufficient time, even under the extended schedule, for Defendants' expert to analyze
10 the new claims. *Id.* at 21-23 (citing Clarke Declaration). As discussed in Section D below,
11 Oracle has not rebutted Defendants' evidence of prejudice.

12       Contrary to Oracle's claim (Opp. at 9), violation of an order compelling production is not
13 required for Rule 37 sanctions. Intentional disregard of Rule 26 obligations and this Court's
14 standing Order is more than sufficient. Indeed, that is the very conduct Rule 37(c)(1) is intended
15 to address. *Yeti by Molly*, 259 F.3d at 1106 (in broadening the sanctioning power, Rule 37(c)(1)
16 "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions ….")
17 (citations omitted). Oracle also inaccurately characterizes the conduct in its cited cases as "far
18 more egregious" than the conduct at issue here. Opp. at 6. In each case, however, the court
19 found that the conduct was harmless and/or substantially justified because there was good reason
20 for it, the receiving party identified no prejudice, the late-disclosed material was minimal or not
21 materially different from previously disclosed material, and/or any potential prejudice was easily
22 cured.[5] None of those circumstances applies here.

---

[4] Oracle falsely implies that Defendants made statements during the parties' negotiations on the revised schedule that indicate Defendants have always known of its expanded damages claims. Opp. at 15. That is not the case, however, which presumably is why Oracle fails to provide any details of these alleged statements. Reply Declaration of Elaine Wallace in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) ("Wallace Reply Decl.") ¶1.

[5] *United States v. Rapanos*, 376 F.3d 629, 645 (6th Cir. 2004) (late disclosure harmless because defendants were already aware of the data and the data was beneficial to them); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004) (failure to provide report harmless because plaintiffs informed defendant of the witness and nature of his testimony six months before trial and the testimony consisted of simple calculations); *Reiner v. Warren Resort*

Finally, Oracle overstates the impact of the sanction Defendants seek, arguing that Defendants seek to "wipe out any possibility of having to fairly compensate Oracle" and to preclude "most categories of damages sought by Oracle." Opp. at 1, 25. In fact, the motion relates only to portions of one measure of alleged damage that Oracle insisted for two years were irrelevant. The motion is thus "appropriately tailored." *Keithley v. Homestore.com, Inc.*, No. C-03-04447, 2008 U.S. Dist. LEXIS 92822, *6 (N.D. Cal. Nov. 6, 2008) (Laporte, M.J.).

### 4. Rule 16(f) Applies.

Oracle incorrectly asserts that Rule 16(f) does not apply because "[p]re-trial conferences are not held before this Court …." Opp. at 4. However, this Court's Order Re Discovery Procedures, issued in this case on May 2, 2008, expressly allows for the imposition of sanctions under Rule 16(f) for failure to comply with any provision of the Order, including a party's failure to comply with Rule 26(e)(1). Dkt. No. 83 at ¶¶ 4, 9.

## C. ORACLE'S ACCOUNT OF THE FACTS IS FALSE AND INCONSISTENT.

Oracle purports to provide the Court the "actual record" of discovery.[6] Opp. at 14. In fact, Oracle omits key facts and misrepresents others. Until May 2009, Oracle disclaimed lost profits damages for anything other than support revenue allegedly lost from customers that went to TN. Now, Oracle is attempting to expand dramatically the scope of its alleged lost profits to

---

(continued…)

*Hotels, Inc.*, No. CV 06-173, 2008 U.S. Dist. LEXIS 102047, * 28 (D. Mont. Oct. 1, 2008) (no evidence plaintiff knew the information prior to disclosure and defendant's allegation regarding "buried" documents was false, thus defendant suffered no harm); *Pierce v. CVS Pharmacy, Inc.*, No. CV 06-823, 2007 U.S. Dist. LEXIS 69006, * 11 (D. Ariz. Sept. 17, 2007) (defendant could not identify any prejudice and any that existed could be cured by short extension of time); *The Christensen Firm v. Chameleon Data Corp.*, No. C06-337Z, 2006 U.S. Dist. LEXIS 79710, *16-17 (W.D. Wash. Nov. 1, 2006) (supplemental disclosures followed detailed initial disclosures); *Network Appliance*, 2005 U.S. Dist. LEXIS 16726, at *10-11 (plaintiff could only establish a three week delay in receiving a limited number of documents); *Semtech Corp. v. Royal Ins. Co.*, No. CV 03-2460, 2005 WL 6192906, *2 (C.D. Cal. Sept. 8 2005) (delay in making supplemental disclosure resulted from court's ruling and was harmless because the supplement contained no new information); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506-11 (D. Del. Mar. 30, 2005) (late disclosure of expert material harmless because late disclosed information was not materially different from timely disclosed information).

[6] Oracle includes numerous false statements regarding Defendants' production that are irrelevant to this motion. Defendants have already responded to similar false statements in their opposition to Oracle's pending motion to amend the complaint to add multiple additional PeopleSoft copyright registrations. Dkt. No. 380, at 17-19.

SFI-615769v1

- 6 -

REDACTED DEFENDANTS' REPLY ISO
MOTION FOR SANCTIONS
Case No. 07-CV-1658 PJH (EDL)

1  include alleged lost license revenue, alleged losses from customers that never went to TN, and
2  alleged damage from pricing and support policies it adopted in 2005 and 2006, allegedly because
3  of TN. To justify this litigation tactic, Oracle argues inconsistently that adding these new
4  damages claims is part of the "natural evolution of the case" (Opp. at 16), and, in the alternative,
5  that it disclosed them all along. *Id.* at 16-17. In fact, neither is true.

REDACTED

10  But when it responded to discovery in September 2007 it expressly
11  disavowed the relevance of revenues other than support revenue. *Id.* at 6-8. "Natural evolution"
12  cannot excuse Oracle's failure to disclose until two years into the case damages claims that were
13  known and should have been (but were not) disclosed at the outset. *See, e.g., Gonzalez v.*
14  *Hickman*, No. ED CV 05-00660, 2007 U.S. Dist. LEXIS 84390, * 15-16 (C.D. Cal. Jun. 28,
15  2007) (even if plaintiff could not calculate damages at time of initial disclosure, it had the
16  necessary facts to disclose its damage theories; its failure to do so prejudiced defendant's ability
17  to prepare rebuttal evidence). Moreover, Oracle's assertion that it disclosed these new theories in
18  it complaints, disclosures, and discovery responses is erroneous and misleading.

### 1. Oracle Mischaracterizes Its Complaints And Disclosures.

*Complaints:* Oracle points to a single sentence in its complaints that it contends put Defendants on notice of its intent to seek alleged lost license revenue.[7] Opp. at 16-17. As discussed in Defendants' opening brief, it was this language that caused Defendants to serve RFP Nos. 67, 68, 70, 107, and 111-113. Mot. at 6-8, 17. In response, Oracle *denied* that license revenue was relevant and flatly refused to produce documents beyond those relating to support

---

[7] Oracle claims that its complaints have put Defendants on notice "over and over." Opp. at 17. However, the language on which it relies is just one sentence (or minor variations thereof) repeated in the multiple paragraphs Oracle cites. The only exceptions are 3 paragraphs in its *proposed* Fourth Amended Complaint, filed on July 15, 2009, relating to damage theories not at issue in this motion (statutory damages and restitution). Dkt. No. 348, ¶ 217; Dkt. No. 352, ¶¶ 163, 214; *see also* Mot. at 13, n. 9.

1  revenue. *Id.* Oracle maintained that position until May 2009 and its about-face on the scope of
2  relevant discovery. *Id*. at 10-14. The purpose of putting a party on notice of a damage claim is to
3  permit an opportunity to take discovery. Oracle cannot purport (based on a single sentence) to
4  have put Defendants on notice of its license revenue claim in its initial complaint, refuse for two
5  years to produce relevant documents, then argue when Defendants contend that it is too late for an
6  about-face that Defendants have been on notice of the claim since the initial complaint.
7        With regard to discounts to non-TN customers and the impact of Lifetime Support and
8  Applications Unlimited, Oracle fails to identify a single reference in any of its complaints.
9        ***Disclosures:*** Oracle's argument regarding its Initial Disclosures is similarly flawed. Opp.
10  at 17. The problem is not that the Initial Disclosures expressly limit damages to particular types
11  of revenue (although "support revenue" is the only type mentioned), but that it discloses *nothing*
12  *at all* about Oracle's specific damages claims.[8] Mot. at 3-4. That is why it falls far short of Rule
13  26's requirements and why Defendants repeatedly pressed for a meaningful disclosure. *Id.*; *see*
14  *also City of San Francisco v. Tutor-Saliba*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003) (initial
15  disclosures must contain more than just broad types of damage; a detailed specification and at
16  least "some analysis" is required). Oracle refused to provide one and, one month after serving its
17  Initial Disclosures, limited discovery to support revenue only. Mot. at 3-4, 6-8.[9]
18        Oracle pats itself on the back for its purported "candor" in its May 2009 Supplemental
19  Disclosures (Opp. at 9) but fails to justify the almost two year delay (almost all of the discovery
20  period under the prior schedule) in serving them. Again, this falls far short of its obligation to
21  supplement its disclosures and discovery responses as discovery progresses, particularly given the
22  about-face on its damages theories when it did finally provide a supplement. Fed. R. Civ. P.

---

[8] As Oracle admits, its description of its alleged damages was limited to: "Lost profits; Lost or harmed prior, existing and potential customer relationships; Monies to be restored to Oracle due to Defendants' unfair business practices; Lost goodwill and reputation." Opp. at 17; Mot. at 3. There was no reference to license revenue, discounts to non-TN customers, or to the pricing policies it now claims impacted every one of its 10,000 PeopleSoft and J.D. Edwards customers. Mot. at 3.

[9] Oracle argues that Defendants' complaints about its failure to articulate a damages theory are inconsistent with the contention that it limited the scope of damages discovery. Opp. at 16. This is not true. The fact that Oracle consistently disclaimed certain damages theories does not mean that it had somehow disclosed the theories it did intend to pursue.

26(e)(1). The only excuse Oracle offers is that "detailed damages discovery had expressly been ordered to follow liability discovery" (Opp. at 17, n.9), referring to Judge Legge's February 22, 2008 recommendation that damages discovery be deferred. Dkt. No. 68 at 9. But Judge Hamilton declined that recommendation on April 24, 2008. Dkt. No. 77. To the extent it was in effect, it came well after Oracle's deficient Initial Disclosures and was in effect for only nine weeks out of the almost two years discovery had been open. Oracle's attempt to justify its conduct by relying on Judge Legge's short-lived recommendation is frivolous and does not come close to meeting the Rule 37(c)(1) "substantially justified" standard.[10]

### 2. Oracle Did Not Disclose Its New Damage Theories In Its Discovery Responses.[11]

*Interrogatories:* Oracle argues that it responded "no fewer than three times" to Interrogatory No. 5. Opp. at 18-19. But its first response simply listed general categories of harm; its second response simply referred to customer contract files for TN customers pursuant to Rule 33(d); and its third response was unjustifiably delayed until May 2009 as part of its belated about-face on the scope of relevant discovery. Mot. at 4-5, 13-14. Oracle misleadingly states that the interrogatory asked "only about *lost* customers" (Opp. at 19) when in fact it asked about damages generally. Mot. at 4 ("Describe in as much detail as possible how Oracle believes any activity alleged in the Complaint has damaged it …."). It claims its initial responses "disclosed the very types of other lost profits damages Defendants now seek to exclude" (Opp. at 19) when in fact the single sentence cited (referring to "licenses") is the only reference to any aspect of the lost profits damages at issue here, and Oracle refused to provide discovery on license revenue. Mot. at 4-5.

Oracle relies on its April 2009 responses to a series of preemption related interrogatories

---

[10] Oracle also overstates its purported "candor." For example, Oracle failed to identify in its Supplemental Disclosures the non-TN customers for which it alleges damage, failed to provide any details of the alleged impact of pricing policies, and made vague references to a "host of other damages attested to by Oracle witnesses." Mot. at 12-13.

[11] Oracle asserts that its opposition brief contains just "a sampling" of the discovery responses it claims disclose the damage theories at issue here. Opp. at 18. However, given how much Oracle contends is at stake in this motion, the Court can be sure that if Oracle had any other relevant responses to offer, it would have done so.

1  regarding differences between conduct alleged in support of Oracle's *non*-copyright claims versus
2  its copyright claim, and the alleged harm associated with it.  Wallace Reply Decl. ¶2, Exh. A.
3  Oracle implies based on these interrogatories that Defendants delayed in seeking damages
4  discovery, but neglects to inform the Court of their narrow purpose.  Opp. at 19-20.  Moreover,
5  Oracle fails to explain how Defendants' decision in February 2009 to serve interrogatories on
6  alleged damage from a specific set of alleged conduct excuses Oracle's failure to respond
7  adequately to a much broader interrogatory served in July 2007.[12]  Oracle also argues that
8  Defendants unnecessarily delayed in deposing Oracle's executives.  Opp. at 20.  In fact, Oracle
9  prevented Defendants from taking the depositions by delaying production of these witnesses'
10 documents for months.  Wallace Reply Decl. ¶3.  Moreover, Oracle had a duty to timely disclose
11 information known to its executives, particularly because they had not yet been deposed.

12 **RFPs:**  In its responses to RFPs served on July 26, 2007, Oracle expressly disclaimed the
13 relevance of the evidence Defendants seek to preclude.  Mot. at 6-8.  Oracle's explanation that the
14 responses were made "early" in the case (Opp. at 21) does not hold up.  **First**, it is inconsistent for
15 Oracle to contend that its initial complaint on March 22, 2007 was sufficient to put Defendants on
16 notice that Oracle was seeking the damages at issue (Opp. at 16-17) but it was too "early" for
17 Oracle to know it was seeking them when it served its RFP responses four months later.  **Second**,
18 Oracle has had the information relevant to these damages claims since before filing the complaint.
19 **Third**, Oracle was *still* disclaiming relevance more than one year later.  *See* Mot. at 5, 8, 9
20 (discussing June 24, 2008 Joint Discovery Conference Statement, August 2008 meet and confer
21 regarding production of customer-specific financial reports, and November 2008 Expanded
22 Discovery Timeline Agreement).

23 Oracle concedes that it has never supplemented or corrected its responses to these RFPs,
24 arguing (Opp. at 21) that it made the "additional or corrective information" known both "during
25 the discovery process [and] in writing."  Fed. R. Civ. P. 26(e)(1).  In fact, it did neither.  In its

---

[12] Oracle also argues that it served its responses to these interrogatories "*before* the deposition testimony of its executives that Defendants now claim prompted some sort of shift in Oracle's damages theories."  Opp. at 20.  Oracle fails to mention, however, that it served them just three days before.  Wallace Reply Decl. ¶2.

opposition, Oracle has not pointed to any written communication to Defendants or submission to the Court between July 2007 and April 2009 in which Oracle corrected or otherwise revised the positions it took in its RFP responses.[13] Moreover, as discussed below, Oracle's incidental production of *some* responsive documents did not make the information known to Defendants.[14]

### 3. Oracle's Production Has Not Cured Its Rule 26 Violation.

Oracle claims to have cured its deficient disclosures and discovery responses through its document production. However, the material Oracle claims to have produced is grossly insufficient. Clarke Reply Decl. ¶¶14-22.[15] Oracle still has not produced "complete" contract histories or summary reports for the TN customers.[16] *Id.* at ¶¶14-18. Even if it had, this would not be sufficient to determine lost potential cross-sell and up-sell opportunities. *Id.* Nor would the other documents on which Oracle relies, many of which have only recently been produced. *Id.* at ¶¶15-22; Wallace Reply Decl. ¶7. Oracle's damages expert clearly intends to use additional documents that have yet to be collected, let alone produced. Meyer Decl. ¶14, n.12 ("[i]n connection with NCI's analysis of lost cross-sell and up-sell opportunities, we are directing

---

[13] This assumes that Oracle's April 2009 responses to the preemption related interrogatories discussed above could even be considered sufficient to revise or correct unrelated RFP responses served almost two years earlier. Otherwise, the first written communication was on May 22, 2009 when it served its Supplemental Initial disclosures with the accompanying letter from Mr. Alinder. Mot. at 12-13.

[14] Oracle cites a targeted search request that is irrelevant to this motion. Opp. at 20, n.13. Defendants' first targeted search request on financial information was not served until May 20, 2009 and Oracle did not respond until May 27, 2009, *after* its about-face on the scope of relevant discovery. Wallace Reply Decl. ¶4. Moreover, Defendants do not dispute that discovery on Oracle's other damage claims has been broad. That does not mean, however, that it encompassed the evidence sought to be precluded here, and the record shows that it did not. Oracle's reliance on deposition testimony is similarly unhelpful (Opp. at 24) because the depositions occurred in spring 2009, in conjunction with Oracle's about-face on the scope of discovery. *Id.* at ¶5.

[15] All references to "Clarke Reply Decl." are to the Reply Declaration of Stephen K. Clarke in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f).

[16] In another false statement to the Court, Oracle complains about purported multiple changes to the TN customer list. Opp. at 21. In fact, the TN customer list has changed only twice, both times at Oracle's request. The first was in January 2009, to add customers that had become discoverable as a result of the parties' November 2008 agreement (at Oracle's request) to expand the relevant discovery time period. The second was on July 15, 2009, the court-ordered date for providing certain Siebel discovery, to add (at Oracle's request) Siebel customers. Defendants, out of an abundance of caution, also included two customers to which TN provided consulting services that are irrelevant to any claim in this case. Wallace Reply Decl. ¶6.

1  Oracle personnel to gather information").[17]

2  For non-TN customers, Oracle relies on two categories of documents: (1) those just produced in the past 35 days relating to the REDACTED non-TN customers Oracle has identified (Wallace Reply Decl. ¶7); and (2) other documents scattered throughout its production that purportedly relate to non-TN customers. The problem with the first category is that if Oracle wanted to pursue this type of damage claim, it should have produced them two years ago when Defendants asked for them. Producing them now (even assuming Oracle could complete production for all of them by September 30) does not cure the prejudice to Defendants because there is insufficient time now to analyze 25 to 30 percent more customers. Clarke Reply Decl. ¶9. The problem with the second category is that, until now, Oracle has never disclosed that non-TN customers are relevant or named any of them, so Defendants could not have found the documents in Oracle's "massive document productions" (Opp. at 10) or known they were relevant.

In short, Oracle's incidental production of *some* information relevant to license sales and non-TN customers does not cure the prejudice from its failure to produce the information it is still trying to locate. Nor was it sufficient to put Defendants on notice that such incidentally produced documents were relevant to any issue in the case. As to Applications Unlimited and Lifetime Support, Oracle has failed to identify any relevant (even incidentally produced) documents. Clarke Reply Decl. ¶¶ 22-23; Wallace Reply Decl. ¶7.

**D.  ORACLE HAS NOT MET ITS BURDEN OF PROVING HARMLESSNESS.**

Defendants' expert estimates that it would take at least one year more than the current schedule permits to analyze Oracle's new damage claims. Mot. at 21-23. Oracle's response is unpersuasive. ***First***, Oracle's damages' expert disclaims knowledge of whether the majority of documents identified in Mr. Clarke's declaration are necessary. Meyer Decl. ¶ 8, n.4. ***Second***, Mr. Meyer states that he "may" not or does not "anticipate" quantifying certain lost profit damages, but it is unclear which ones.[18] *Id.* at ¶¶ 8(c), 12-13. However, Oracle indicates that it

---

[17] All references to "Meyer Decl." are to the Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f).

[18] For example, it is unclear (because neither Oracle nor Mr. Meyer has defined it) what is included in harm to "current and prospective customer relationships, even where they did not

1    *does* intend to quantify "lost up-sell and cross-sell opportunities for the customers it lost to
2    TomorrowNow" (Opp. at 11), so the documents Mr. Meyer identifies as "unnecessary" are in fact
3    necessary.[19]  Meyer Decl. ¶¶13-14 (documents relating to "license purchasing patterns," "up-
4    selling initiatives," customer motives for choosing other vendors).  Moreover, Oracle gives away
5    with one hand what it takes back with the other.  Oracle still intends to "introduce and rely on
6    evidence of all its damages" (Opp. at 11, n.6), which means Defendants' expert must still analyze
7    all of the alleged damages.  Clarke Reply Decl. ¶¶ 5, 10-11.

**Third**, Mr. Meyer says nothing about the Lifetime Support and Applications Unlimited policies that Oracle claims impacted thousands of customers.  Mot. at 11.  Four years after these policies were adopted (allegedly because of TN) Oracle says the financial impact is still "the subject of intense investigation" and relevant documents are "being gathered."  Opp. at 11; House Decl. ¶31 (Oracle "searching for" the documents).  If Oracle intended to pursue this claim, the documents should have been gathered two years ago when Defendants requested them.  Instead, Oracle disclaimed their relevance.  Moreover, if it has taken Oracle four years to determine the financial impact of these policies, it cannot reasonably expect Defendants' expert to do the same in the three months between Oracle's expert report and Defendants' rebuttal report.

**Fourth,** Mr. Meyer is wrong on the categories of documents he does address.  The general ledger information specified by Mr. Clarke is not unnecessary or duplicative of already produced information.[20]  Meyer Decl. ¶¶ 9-10; Clarke Reply Decl. ¶¶ 3-4.  On pricing, Mr. Meyer wrongly assumes that the OSSINFO database has been produced to Defendants, which it has not.  Wallace Reply Decl. ¶8.  Nor have the non-TN customers been identified by Oracle, so even if the database had been produced, Defendants could not have identified the relevant documents.  *Id.*

---

(continued…)

result in a loss of customer support contract or software licensing." *Id.* at ¶ 13.  It is also unclear what the "application only discounts" are that Mr. Meyer does not "anticipate" quantifying. *Id.* at ¶ 12, n.8.

[19] REDACTED

[20] This issue is addressed in detail in Defendants' pending motion to compel financial information to be heard on the same date as this motion.

1  Mr. Meyer also fails to explain why increasing the number of relevant customers by 25 to 30
2  percent would not require a correspondingly large increase in the time required for Defendants'
3  expert analysis, which it would.  Clarke Reply Decl. ¶¶ 5-9.

4      **Fifth**, Mr. Meyer's statement that publicly available documents "have been accessible to
5  Mr. Clarke throughout his retention in this matter" is beside the point.  Meyer Decl. ¶15.  Until
6  Oracle's belated disclosure of its new damage theories in May 2009, Mr. Clarke had no reason to
7  know the documents were relevant.  Clarke Reply Decl. ¶13.  ***Sixth***, Mr. Meyer's declaration
8  confirms that, despite representations to the contrary in Oracle's opposition brief and supporting
9  attorney declaration, the documents relevant to alleged lost license revenue have yet to be
10 collected and produced.  His statement that "[i]n connection with NCI's analysis of lost cross-sell
11 and up-sell opportunities, we are *directing Oracle personnel to gather information*" (Meyer Decl.
12 ¶14, n.12) (emphasis added) directly contradicts Oracle's claim that the material that will
13 accompany Mr. Meyer's report is "expert work product, not pre-existing Oracle documentation."
14 Opp.at 18, n.10; House Decl. ¶32.

15     ***Finally***, Oracle has not rebutted Defendants' argument that Oracle's custodian
16 productions would need to be re-reviewed because neither the search term nor the Expanded
17 Discovery Timeline Agreement not include non-TN customers.[21]  Mot. at 8-10, 24.  Nor has it
18 rebutted the argument that depositions would have to be reopened to address the documents that
19 Oracle and its expert plan to collect and produce.  *Id.*

20 **E.    ORACLE'S MOTION TO COMPEL ARGUMENT TURNS RULE 26 ON ITS**
21       **HEAD.**

22     Oracle relies on a single, distinguishable, out-of-district case for its argument that
23 Defendants were required to file another motion to compel.[22]  Defendants had no reason to move

---

[21] Oracle's argument that its "customer-specific productions and reports" were located using the search term "TomorrowNow" (Opp. at 23, n.17) does not rebut Defendants' point that Oracle's *custodian* productions inevitably exclude many relevant documents because the parties' search term list does not include non-TN customers.  The customer-specific productions and reports on which Oracle relies are not from custodian productions, but from central repositories.  Wallace Reply Decl. ¶9.  Moreover, until 35 days ago, Oracle had not produced contract files and customer-specific reports for non-TN customers.  *Id.* at ¶7.

[22] The defendant in *Christensen Firm* received a "reasonably detailed" initial disclosure and never sought any additional information.  2006 U.S. Dist. LEXIS 79710, at *16-17.  Here,

to compel information Oracle expressly said in response to discovery was irrelevant to its damage theories. Oracle is estopped from arguing they did. Moreover, requiring a motion to compel would be contrary to Rule 26 (e)(1) and Rule 37(c)(1). *See Evenflow Plumbing Co., Inc. v. Pac. Bell Directory*, No. C-3:04-CV-00795, 2005 U.S. Dist. LEXIS 46822, *4 (N.D. Cal. April 26, 2005) (Laporte, M.J.) ("Counsel's argument that Defendant should have asked for that information is not persuasive, given the continuing duty to supplement ….").

### III. CONCLUSION

For the above reasons, Defendants' motion for sanctions should be granted.

DATED: August 4, 2009                    JONES DAY

                                         By: /s/ Elaine Wallace
                                             Elaine Wallace
                                         Attorneys for Defendants
                                         SAP AG, SAP AMERICA, INC., and
                                         TOMORROWNOW, INC.

---

(continued…)

Defendants not only sought additional information but relied on Oracle's representation that the information sought to be precluded was irrelevant to any damage theory it intended to pursue.

SFI-615769v1

- 15 -

REDACTED DEFENDANTS' REPLY ISO
MOTION FOR SANCTIONS
Case No. 07-CV-1658 PJH (EDL)