1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:     (415) 626-3939
   Facsimile:     (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com; ewallace@jonesday.com
6
   Tharan Gregory Lanier (SBN 138784)
7  Jane L. Froyd (SBN 220776)
   JONES DAY
8  1755 Embarcadero Road
   Palo Alto, CA  94303
9  Telephone:     (650) 739-3939
   Facsimile:     (650) 739-3900
10 tglanier@jonesday.com; jfroyd@jonesday.com

11 Scott W. Cowan (Admitted Pro Hac Vice)
   Joshua L. Fuchs (Admitted Pro Hac Vice)
12 JONES DAY
   717 Texas, Suite 3300
13 Houston, TX 77002
   Telephone:     (832) 239-3939
14 Facsimile:     (832) 239-3600
   swcowan@jonesday.com; jlfuchs@jonesday.com
15
   Attorneys for Defendants
16 SAP AG, SAP AMERICA, INC., and
   TOMORROWNOW, INC.
17

18                     UNITED STATES DISTRICT COURT

19                    NORTHERN DISTRICT OF CALIFORNIA

20                          SAN FRANCISCO DIVISION

21 ORACLE USA, INC., et al.,                Case No. 07-CV-1658 PJH (EDL)

22            Plaintiffs,                   **REPLY DECLARATION OF ELAINE
                                            WALLACE IN SUPPORT OF
23      v.                                  DEFENDANTS' MOTION FOR
                                            SANCTIONS PURSUANT TO FED. R.
24 SAP AG, et al.,                          CIV. P. 37(c) AND 16(f)**

25            Defendants.
                                            Date:  August 18, 2009
26                                          Time:  2:00 pm
                                            Courtroom:  E, 15th Floor
27                                          Judge:  Hon. Elizabeth D. Laporte

28

SFI-616101v1                                REDACTED WALLACE DECL. ISO RULE 37 MOT.
                                                      Case No. 07-CV-1658 PJH(EDL)

I, ELAINE WALLACE, declare:

I am an associate with the law firm of Jones Day and counsel for Defendants in the above-captioned matter. I make this declaration based on personal knowledge and, if called upon to do so, could testify competently thereto.

1. In paragraph 35 of her declaration in support of Oracle's opposition to Defendants' sanctions motion, Oracle's counsel, Holly House, references the negotiations in April and May leading up to the parties' May 12, 2009 joint motion to extend the case schedule (Dkt. No. 304). Although she does not identify any specific statement purportedly made by Defendants' counsel, Ms. House implies that Defendants made statements during those discussions that indicate Defendants have been aware from the outset of Oracle's new damage theories. That is not the case. Defendants' knowledge of Oracle's damage claims has come from the statements in Oracle's complaints, disclosures, and discovery responses, and the testimony of its witnesses. The timing of that knowledge is as described in Defendants' opening and reply briefs and supporting declarations. Defendants' counsel agree that Oracle's damages claims are broad, even absent the new claims, and that they appeared to be getting broader as a result of the testimony in April and early May of Oracle's executives. Although there were some general discussions about Oracle's damage claims in connection with the parties' negotiations on the discovery schedule, Defendants have not been – and did not say anything to indicate that they have been – aware of the new claims for any longer or to any greater extent than is described in Defendants' motion papers.

2. Attached hereto as Exhibit A is a true and correct copy of Defendants' Fifth Set of Interrogatories to Plaintiffs (the "Fifth Set"), served on February 13, 2009. Defendants agreed to a request from Oracle for an extension of time to respond, and Oracle served its responses on April 16, 2009. Interrogatory Nos. 22 through 31 and 39 through 98 in the Fifth Set are a series of interrogatories intended to identify the conduct alleged in the complaint that Oracle contends is not part of its copyright infringement claim and any alleged damage from that specific conduct.

3. Defendants added Oracle executives Juergen Rottler, Safra Catz, Larry Ellison, and Charles Phillips to their custodian list on the following dates: August 4, 2008, September 3,

2008, September 3, 2008, and September 10, 2008, respectively. Mr. Rottler's documents were not produced until almost four months later on November 25, 2008. Ms. Catz's documents were not produced until six months later, with production starting on March 6, 2009 and concluding on April 17, 2009. Mr. Ellison's documents were not produced until almost seven months later, with production starting on March 31, 2009 and concluding on May 15, 2009. Mr. Phillips' documents were not produced until six months later on March 20, 2009.

4. Defendants have served only three Targeted Search Requests in this case. The only one of the three that relates to financial information is Targeted Search Request No. 3, which was served on May 20, 2009 and requested the following documents: "For each Plaintiff entity, for the period January 1, 2002 through October 31, 2008, documents sufficient to show by month, quarter and year the revenues (including but not limited to license royalty payments), expenses (including but not limited to research and development costs) and net income to the Plaintiff entity resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards software and/or services to customers on Defendant TomorrowNow, Inc.'s Supplemental Exhibit 1 to Its First Sets Of Requests For Production and Interrogatories to Plaintiffs." This information is related to Oracle's damages claims generally, not to anything specific to Oracle's new damages claims. Oracle responded to Targeted Search Request No. 3 on May 27, 2009, after its May 22, 2009 Supplemental Initial Disclosures and supplemental response to Interrogatory No. 5.

5. The deposition testimony on which Oracle relies in its opposition is from the same three executives whose testimony is discussed in Defendants' opening brief and whose depositions took place in April and May, 2007. Oracle also points to the testimony of one other executive, Safra Catz, whose deposition took place just three weeks before, on March 27, 2009.

6. Since providing the initial list, Defendants have changed the list of TN customers only twice, both times as a result of Oracle's requests. The first time was in January 2009, to add customers that had become discoverable as a result of the parties' November 2008 agreement, at Oracle's request, to expand the relevant discovery time period. The second time was on July 15, 2009, the court-ordered date for providing certain Siebel discovery, to add, again at Oracle's request, Siebel customers. Defendants also added on July 15, 2009 two customers to which TN

1   provided consulting services that Defendants believe are irrelevant to any claim in this case but
2   added anyway for the sake of completeness and out of an excess of caution.  The changes to
3   which Ms. House refers in her declaration regarding TN customers that were also SAP customers
4   have not impacted the total number of customers on the TN customer list or identities, only
5   whether they are on the list of 83 SAP and TN customers.

6   7.   The first date on which Oracle produced documents specifically identified as
7   relating to "discount customers" was June 30, 2009.  Oracle has made one other production since
8   then, on July 23, 2009.  To date, Oracle has produced documents for 36 such customers, although
9   they appear to be far from complete contract files.  The document to which Ms. House refers in
10  paragraph 27(f) of her declaration was not produced until July 24, 2009 and does not appear to
11  contain information relevant to the issues in this motion.

12  8.   The OSSINFO database referred to in the declaration of Oracle's expert, Paul
13  Meyer, has not been produced by Oracle to Defendants and thus is not searchable by Defendants
14  or their experts.  Instead, only certain documents from the database, selected by Oracle, have been
15  produced.

16  9.   Based on the representations of Oracle's counsel in multiple meet and confer
17  discussions and written communications, it is my understanding that the customer contract files
18  and customer-specific reports to which Oracle refers on page 23 of its opposition, footnote 17,
19  were produced from central repositories, not custodian files.

20  I declare under penalty of perjury under the laws of the United States and the State of
21  California that the foregoing is true and correct.

22  Executed this 4th day of August, 2009 in San Francisco, California.

24   /s/ Elaine Wallace
     Elaine Wallace