1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:   (415) 626-3939
   Facsimile:   (415) 875-5700
5  ramittelstaedt@jonesday.com;
   jmcdonell@jonesday.com; ewallace@jonesday.com
6
   Tharan Gregory Lanier (SBN 138784)
7  Jane L. Froyd (SBN 220776)
   JONES DAY
8  1755 Embarcadero Road
   Palo Alto, CA 94303
9  Telephone:   (650) 739-3939
   Facsimile:   (650) 739-3900
10 tglanier@jonesday.com; jfroyd@jonesday.com

11 Scott W. Cowan (Admitted Pro Hac Vice)
   Joshua L. Fuchs (Admitted Pro Hac Vice)
12 JONES DAY
   717 Texas, Suite 3300
13 Houston, TX 77002
   Telephone:   (832) 239-3939
14 Facsimile:   (832) 239-3600
   swcowan@jonesday.com; jlfuchs@jonesday.com
15
   Attorneys for Defendants
16 SAP AG, SAP AMERICA, INC., and
   TOMORROWNOW, INC.

17

18                       UNITED STATES DISTRICT COURT

19                     NORTHERN DISTRICT OF CALIFORNIA

20                            SAN FRANCISCO DIVISION

21 ORACLE USA, INC., et al.,                 Case No. 07-CV-1658 PJH (EDL)

22                  Plaintiffs,              **REPLY DECLARATION OF STEPHEN
                                             K. CLARKE IN SUPPORT OF
23         v.                                DEFENDANTS' MOTION FOR
                                             SANCTION PURSUANT TO FED. R.
24 SAP AG, et al.,                           CIV. P. 37(c) AND 16(f)**

25                  Defendants.
                                             **REDACTED**
26
                                             Date: August 18, 2009
27                                           Time: 2:00 pm
                                             Courtroom: E, 15th Floor
28                                           Judge: Hon. Elizabeth D. Laporte

SFI-616014v1                                 REDACTED REPLY CLARKE DECL..ISO DEFS.'
                                             MOT. FOR SANCTIONS
                                             Case No. 07-CV-1658 PJH(EDL)

I, Stephen K. Clarke, declare as follows:

1. I have personal knowledge of the matters discussed herein.

2. I have read the Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) (the "Meyer Declaration").  I have also read the Declaration of Holly A. House in Support of Plaintiffs' Opposition to Defendants' Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) (the "House Declaration") and Oracle's Opposition to Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) (the "Opposition").

A. **Information Requests - Meyer Declaration Paragraphs 8 (a), 9, and 10**.

3. In my prior declaration I described a variety of documents I will need to quantify damages for each of the claims made by plaintiffs in this case.  Mr. Meyer states in paragraph 8(a) that: "Detailed general ledger and subsidiary ledger information … would be duplicative of, and would not provide significant additional value to, Oracle financial information that has been or will be produced by Oracle."  However, to date, Oracle has yet to produce any company level financial statements for the Plaintiff entities.  This issue is addressed in more detail in my Declaration in Support of Defendants' Motion to Compel Production of Financial Information of Plaintiffs.  I cannot speak to financial information that "will be produced by Oracle" since I do not yet have it.

4. Mr. Meyer references lost profits related not only to lost customers but also to lost potential customers.  He goes on to state that I will be able to quantify alleged damages related to lost potential customers "…using financial data that is more useable and less cumbersome to produce…" than the general ledgers I have previously requested, and further, that such more useable data are "available."  If the financial information is available to Mr. Meyer, it is not available to me because, to date, I am not aware that Oracle has produced any Plaintiff corporate level financial statement.

B. **Information Requests - Meyer Declaration Paragraph 8 (b), 11, and 12**.

5. Mr. Meyer states that he "…*may* quantify damages related to support pricing discounts that Oracle provided as a result of Defendants' alleged bad acts." (Emphasis added).  I

am unable to predict whether Mr. Meyer will quantify discount related damages. However, I am familiar with some of the documents he describes from OSSINFO. There are several problems with the information Mr. Meyer appears to have seen and be relying upon. The first is that he claims I can search the OSSINFO database. However, Oracle has not produced the OSSINFO database so I cannot search it as he apparently can. The second problem lies in the fact that although OSSINFO may approve a discount, there may be insufficient information in the OSSINFO database to determine the *reason* for the discount.

6. Oracle has not produced detailed customer information except for those customers that became TomorrowNow customers. Therefore, it is impossible to determine whether Oracle was giving discounts to other customers at the same time and for essentially the same reasons, which might include some combination of: customers who were not using support services very much; customers who felt they were paying too much for the services provided; customers who were on old, stable platforms; customers who were capable of handling support internally; customers who needed to adjust their licenses because the metrics upon which support pricing had been set had changed; and so on.

7. In paragraph 11, Mr. Meyer reiterates the list of documents I said I would need to assess Oracle's claim of damages related to pricing discounts. I stand by that list, and also point out that Mr. Meyer cannot properly quantify the pricing discount damages, if any, that Oracle suffered without reviewing such documents.

8. In addition, it was only when Oracle produced CD 194 that for the first time it specifically identified any customers as "discount customers." Accordingly, I have not analyzed any information Oracle previously produced for information on discount customers because I had no idea who the alleged discount customers were. Even now, I am only aware of the identities of the 36 or so that Oracle has recently identified although I am aware that Oracle claims there may be up to 100 discount customers.

9. To properly analyze a particular customer's history is a time-consuming process and it will take me about the same amount of work to analyze alleged lost profits damages for each discount customer as it does for each allegedly lost customer.   **REDACTED**

REDACTED

### C. Information Requests - Meyer Declaration Paragraph 8 (c), 13, and 14.

10. In paragraph 8(c), Mr. Meyer states that I am seeking discovery related to damages he has "… neither quantified, nor anticipate quantifying." It is unclear from Mr. Meyer's declaration which of the damage claims will be the subject of quantification by Mr. Meyer. Unless a damages claim is clearly excluded, I have to be ready to address all the stated damages claims.

11. Mr. Meyer's concept of "non-quantified damages" is both novel and undefined. Whatever it means, if Plaintiffs' lawyers or experts are going to refer to damages that are not part of their damages expert's analysis I need to be prepared to address such claims. Therefore, I need to have the necessary information to comment upon the economics underlying such claims.

12. In my previous declaration, I stated that in order to "…respond to Plaintiffs' claims, Plaintiffs will have to provide the pertinent documents long before I learn Plaintiffs' specific damages methodologies (which will presumably be when I receive Plaintiffs' damages expert report)." Mr. Meyer has now confirmed that the first I time I will see the documents supporting at least one element of his damage computation, will be when they are produced as part of his expert damage report. Page 6, footnote 12 reads: "In connection with NCI's analysis of lost cross-sell and up-sell opportunities, we are directing Oracle personnel to gather information. We will provide that analysis and the supporting information in connection with my expert report, as disclosed by Oracle."

### D. Public Domain Documents - Meyer Declaration Paragraph 8 (d).

13. I am aware of the documents pertinent to the claims that are available in the public domain. The problem lies in the fact that until the expanded damages claims were made known, I was not searching the public domain documents (or even the documents Oracle had provided) for areas in which there was no damage claim.

**E.     Oracle's Document Production.**

14.     Plaintiffs state on page 21 of the Opposition that defendants "do not, and cannot, dispute that Oracle has produced complete customer contractual histories for PeopleSoft and JDE products and, where possible, summary reports for every customer Defendants deem relevant on their ever-changing customer list." However, Oracle produced incomplete customer contractual histories in both electronic and hard copy forms for PeopleSoft and JDE products. In spite of our best efforts to obtain the missing information, the customer information we have is still incomplete. In addition, the "summary reports" are missing information. For example, Plaintiffs produced "summary reports" that do not contain any of the products supported by TomorrowNow for numerous customers.

15.     Plaintiffs state on pages 21 and 22 of the Opposition that "Oracle has and will continue to produce" seven categories of "responsive financial information." However, these categories are either not relevant or not sufficient to calculate lost license sales associated with the customers Plaintiffs allegedly lost to TomorrowNow. I discuss each category in turn:

16.     *"The summary customer reports that Oracle ran on the list of (now 83) customers Defendants claim are relevant"*:  Plaintiffs do not provide any bates number reference associated with the "summary customer reports." I assume Plaintiffs are referring to the customer-specific reports referred to as Analytics Contracts Reports, OKI3 Reports, and Analytics License Reports, none of which are sufficient to calculate lost license sales for the customers at issue in this case. While these reports contain historical information on the specific customers at issue, the historical buying pattern for these customers does not necessarily indicate their future licensing potential.

17.     *"Evidence on customer up-sell and cross-sell expectations and the bases for them, including for the customers it was acquiring from PeopleSoft…For instance, Oracle has produced documentation of how it valued the PeopleSoft acquisition, including operating models, planning models, margin summaries and value estimations containing just such expectations and their underlying assumptions"*:  Customer up-sell and cross-sell expectations for the acquired PeopleSoft customer base as a whole would be misleading for purposes of

1   analyzing the customer base that allegedly cancelled maintenance at Oracle and went to
2   TomorrowNow.  The customers that went to TomorrowNow did so for a variety of reasons,
3   including the fact that they were generally on old releases, did not want to upgrade, had made the
4   decision to migrate to another software vendor, may have experienced financial distress such as
5   bankruptcy and/or severe budgetary restrictions and multiple other reasons.  Accordingly, the
6   purchase planning for the PeopleSoft acquisition is misleading to a determination of what the
7   customers at issue might have bought or licensed had they remained at Oracle.  Relevant data in
8   support of up-sell and cross-sell possibilities applicable to the customers at issue would be
9   information on license sales to customers that did not leave Oracle and which were on similar
10  releases of the products at issue, by geographic region, by company size, by release level and by
11  any other characteristic upon which license sales vary.

12        18.    *"Financial reports showing how the purchasing history of the acquired*
13  *PeopleSoft customer base compares to that of customers acquired in other Oracle*
14  *acquisitions"*:  The purchasing history of the acquired PeopleSoft customer base compared to that
15  of other Oracle acquisitions again relates to customer bases as a whole and is not applicable to the
16  specific subset of Oracle customers, *i.e.* those that went to TomorrowNow.

17        19.    *"Years and years' worth of quarterly and other regular financial reports*
18  *showing Oracle's actual revenues for new licenses, software license updates and product*
19  *support, advanced product support, on demand, education, and consulting (i.e., not just JDE or*
20  *PS support revenues) as well as detailed board packages, subsidiary performance measure*
21  *reports, product revenue reporting packages, executive briefing documents and budgets with*
22  *financial results and projections on all products and on both support and license sales. See id.*
23  *at ¶¶24-27 "*:  The House Declaration, paragraphs 24 to 27, reference volumes of publicly-filed
24  SEC documents such as Forms 10-Q and Forms 10-K and internal quarterly reports.  These
25  reports are high-level and contain little PeopleSoft or JD Edwards information and little detailed
26  company level financial data except at the consolidated level.  The only documents specifically
27  related to the customers at issue are the customer-specific reports referred to as Analytics
28  Contracts Reports, OKI3 Reports, Analytics License Reports, "License sales information," and

1  "License fees and pricing calculations," which are not necessarily sufficient to calculate lost
2  license sales for the reasons stated above.

3     20. ***"Pricing lists, pricing policies, and pricing calculators for Oracle and PeopleSoft***
4  ***– none of which were restricted to only support or* (sic) *just JDE or PeopleSoft products. Id. at***
5  ***¶27":*** The House Declaration, paragraph 27, references "License fees and pricing calculations
6  (*see, e.g.,* ORCL00176128-180465)." These documents contain pricing and renewal information
7  for the customers who went to TomorrowNow. For all the reasons stated above, such documents
8  are insufficient to calculate damages relating to lost licenses sales because the departing
9  companies' prior history is not necessarily an indication of what they would have bought or
10 licensed in the future had they remained at Oracle.

11     21. ***"Product profitability analyses which include revenue trends, development costs***
12 ***and margin summaries for all Oracle products. Id. at ¶¶24, 26-27":*** The House Declaration,
13 paragraph 27, references "Product profitability analyses, which include license revenue trends,
14 product profitability analyses, development costs, and margin summaries (see, e.g.,
15 ORCL00312744-45, ORCL00312820-21, ORCL00313254)." The fact is that the stated
16 documents are only a starting point for analyzing product-level profitability. The documents
17 Plaintiffs reference contain profitability information through the third quarter of 2004. Plaintiffs
18 did not reference any documents after the acquisition in 2005 so there is no indication of whether
19 the profitability remained the same after the Oracle's acquisition of PeopleSoft. The documents
20 Plaintiffs reference are incomplete. At a minimum, I would like to see the information for the
21 entire time period for which Oracle claims damages.

22 **F.**     **Lifetime Support and Applications Unlimited.**

23     22. As discussed in my prior declaration, I understand Plaintiffs are expanding their
24 damages claims to include damages arising out of "…the early adoption and allegedly generous
25 terms of Oracle's Lifetime Support and Applications Unlimited programs and Oracle's alleged
26 additional investment of customer support enhancements." The House Declaration states that
27 Oracle has produced: "A presentation containing detailed analyses of the support policies and
28 release schedules of Oracle products including not only PeopleSoft and Siebel products but also

1 | the eBusiness Suite product. This document also includes information pertaining to license fees,
2 | costs per customer, detailed cost estimations, and a comparison of support costs by product line.
3 | (*see, e.g.*, ORCL00532595-ORCL00532615). However, what Plaintiffs are referencing is a

REDACTED

### G.  Change in Pricing Policies.

23.  As discussed in my prior declaration, I understand Plaintiffs are expanding their damages claims to include alleged damages arising out of "...the abandonment of the PeopleSoft customer contract step-up renewal price escalations...." Plaintiffs have still not referenced documentation showing that they abandoned the PeopleSoft pricing model in response to TomorrowNow and not as a result of other factors.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this of 1st day of August, 2009 in Phoenix, Arizona.

_____
Stephen K. Clarke