Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:  (650) 739-3939
Facsimile:  (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAP AG, et al., <br><br> Defendants. | Case No. 07-CV-1658 PJH (EDL) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF FINANCIAL INFORMATION FROM PLAINTIFFS** <br><br> **REDACTED** <br><br> Date: August 18, 2009 <br> Time: 2:00 PM <br> Courtroom: E, 15th Floor <br> Judge: Hon. Elizabeth D. Laporte |

SFI-615863v2

REDACTED REPLY RE MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 2

    A.   Plaintiffs Have Not Produced Information Sufficient to Determine the Alleged Lost Profits of Each of the Three Plaintiffs............................................... 2

    B.   Defendants' Made Extensive and Good Faith Efforts to Identify Relevant Financial Information through Depositions and "Meet and Confer" Discussions............................................................................................................ 5

III. ARGUMENT ...................................................................................................................... 11

    A.   Plaintiffs Should be Ordered to Produce General Ledger Information and the Reports that Can be Generated from the General Ledger ............................... 11

    B.   Plaintiffs Should be Ordered to Produce Reports Showing the Profitability of their PeopleSoft, J. D. Edwards and Siebel Product Lines and Detailed Financial Statements for Each Relevant Entity....................................................... 13

    C.   Plaintiffs Should be Ordered to Provide a Complete Response to Defendants' Targeted Search Request No. 3 ......................................................... 13

    D.   OIC Should be Ordered to Produce a Witness for Supplemental Deposition....... 14

IV.  CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

### CASES

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*,
    224 F.R.D. 644 (N.D. Cal. 2004) (LaPorte, J.)) .......................................................................... 1

### RULES

Fed. R.Civ.P. Rule 53 ............................................................................................................... 6

## I. INTRODUCTION

It has been two years since Defendants requested documents sufficient to show Plaintiffs' lost profits. Yet—after two years of stonewalling—Plaintiffs have only recently promised to produce product profitability reports and detailed profit and loss statements, and it remains to be seen what information those reports will include. Plaintiffs continue to object to the production of detailed general ledger information on burden grounds and therefore have refused to produce *any* of it. Rather, they insist that Defendants continue to take depositions to pinpoint more specific portions of the general ledger, and even then there is no guarantee that Plaintiffs will produce anything. Plaintiffs are clearly attempting to run out the clock on Defendants' opportunity to obtain information needed to defend against Plaintiffs' extraordinary damages claims.

Plaintiffs dwell on Defendants' most recent efforts to get lost profits discovery and argue that Defendants filed this motion prematurely. Plaintiffs ignore the many hours over many months that Defendants spent drafting correspondence and pleadings, arguing these issues to the Court, meeting and conferring and taking depositions attempting to acquire this information. But it is not Defendants' responsibility to locate specific documents within Plaintiffs' massive organization. Rather, Plaintiffs should locate responsive documents within their control and produce them. *See, e.g., Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652 (N.D. Cal. 2004) (LaPorte, J.). If Plaintiffs had genuine concerns about burden, they should have explained how the requests should be narrowed. *Id.*, p. 653. This is something Plaintiffs have refused to do, insisting instead that Defendants pursue an iterative course of expensive, time consuming depositions until a pinpoint-focused request acceptable to Plaintiffs is defined.

Defendants nevertheless continue to meet and confer on these issues, and Plaintiffs have made some concessions. The status of the five requests for relief is as follows:

**(1) General Ledger Information**. Plaintiffs resist production of *any* detailed general ledger information. Plaintiffs have rejected Defendants' proposal that they produce information derived from the general ledgers, including detailed Income Statements, Balance Sheets and Trial Balances for each Oracle entity that received revenue from the former TN customers, offering

1  instead to provide that information only for the Plaintiff entities. That is not an acceptable
2  substitute for the information sought by this motion because it will not provide information about
3  other Oracle entities that may have received part of the funds from customers.

4  **(2) Product Profitability Reports**. Plaintiffs have agreed to produce these reports and
5  the underlying source documents that show how they were created. Defendants request that the
6  Court order a date certain for the production so that Defendants can conduct follow up discovery
7  as necessary.

8  **(3) Detailed Profit and Loss Statements**. Plaintiffs have agreed to produce these reports
9  for the three Plaintiffs. Defendants request that the Court order a date certain for production.

10 **(4) Response to Targeted Search Request No. 3**. Plaintiffs contend that their
11 production of described in (2) and (3), above, suffice as a response to this request. Defendants
12 cannot evaluate that contention until the documents are produced. Defendants therefore ask that
13 the Court order Plaintiffs to respond to the request.

14 **(5) Further Deposition of OIC**. OIC has agreed to produce a witness for further
15 deposition, but limited to the Siebel product line and inter-company license agreements that have
16 been produced since the first deposition. Defendants request an order requiring OIC to produce a
17 witness knowledgeable about the payments received by OIC in connection with the Registered
18 Works at issue in this case.

19 Time is running out. Plaintiffs should be ordered to produce this discovery now or suffer
20 the consequences of their refusal to do so.

21 **II.    STATEMENT OF FACTS**

22   **A.    Plaintiffs Have Not Produced Information Sufficient to Determine the Alleged Lost Profits of Each of the Three Plaintiffs.**
23

24 Noticeably absent from Plaintiffs' opposition is any assertion that they *have* produced
25 sufficient information from which Defendants may reasonably understand and defend against
   Plaintiffs' alleged lost profits. Indeed, their own expert declares that "*much* of the detailed
26 general ledger information requested by Defendants *may* not be relevant to their calculation of
27
28

1   lost profits in this case."[1] By swearing that "much" of the information "may not be relevant," he
2   impliedly concedes that the rest of it may be relevant. In downplaying the importance of the
3   general ledger information, he argues that it is "*unlikely* to result in a different determination
4   than . . . other, more summary level financial information, which is either available or *will be*
5   *made available*." *Id.*, ¶ 10 (emphasis added). Yet Plaintiffs fail to identify that "other"
6   information or to disclose when or how it will be made available.

   Plaintiffs do not dispute that each of them is a separate corporation—Oracle USA, Inc.
("Oracle USA"), OIC and Oracle EMEA Ltd. ("OEMEA")[2]—and that each alleges lost profits as
a result of customers not renewing support contracts and instead obtaining support from TN.[3]
The support contracts relate to three software product lines: PeopleSoft, J.D. Edwards and Siebel.

REDACTED

   Plaintiffs do not deny that they will try to prove lost profits by calculating the profits they
made from customers *before* those customers left for TN. Accordingly, Defendants need
financial records from which they can calculate the profits that *each Plaintiff* made from those
customers. This requires a determination of the relevant revenues and expenses, as well as how
the profits were distributed among the various Oracle entities.[4]

   Despite the many ways in which Defendants have sought this information, Plaintiffs have
not produced sufficient financial records. *See* Clarke Decl., ¶¶ 4-11. The financial information
provided so far simply lacks the requisite level of detail. *Id.*, ¶ 5. Plaintiffs have produced no
detailed corporate level financial information and no company general ledgers, and no detailed

---

[1] *See* Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion to Compel ("Meyer Decl."), ¶ 24 (emphasis added).

[2] *See* Plaintiffs' Third Amended Complaint for Injunctive Relief (Dkt. 182), ¶¶ 34, 35 & 37.

[3] *See, e.g.,* Plaintiffs' Third Amended Complaint for Injunctive Relief (Dkt. 182), ¶ 141.

[4] *See, generally,* Declaration of Stephen K. Clarke in Support of Defendants' Motion to Compel Production of Financial Information from Plaintiffs ("Clarke Decl."), ¶¶ 10-11.

1  financial statements or trial balances that can be produced from the general ledger. *Id.*, ¶ 4.  In

2  addition, for the period prior to Oracle's acquisition of PeopleSoft, Plaintiffs have provided little

3  detailed PeopleSoft financial information (i*d.*, ¶ 8) and they continue to refuse to produce it to this

4  day.[5]

5  Plaintiffs' corporate designee, Ivgen Guner, testified that REDACTED

6  .[6]  Months later, other Oracle witnesses testified that REDACTED

7  .  Faced with that testimony, Ms.

8  Guner now admits that REDACTED

9  [7]  It appears that it was only after Defendants

10 proved that these reports exist that Plaintiffs allegedly began a search for them and only after the

11 threats of this motion that Plaintiffs agreed to produce them.  They have promised to produce

12 them by mid-August, together with the underlying source documents that reveal how the reports

13 were created.  This information must be provided soon as Defendants may need follow-up

14 discovery.

15 Plaintiffs understate Defendants' needs for detailed financial information, suggesting that

16 it is only relevant to the identification of costs.  The information is relevant both to identification

17 of costs *and* to trace the flow of profits from allegedly lost sales through the various Oracle

18 entities.  *See* Clarke Decl., ¶ 10.  Various Oracle entities enter into contracts to sell support

19 services to end-user customers.  REDACTED

20

21 Defendants need information showing these flows of funds to assess the alleged lost

22 profits of each Plaintiff.  *Id.*, ¶¶ 10-11.

23

---

24 [5] *See* Reply Declaration of Jason McDonell in Support of Defendants' Motion to Compel Production of Financial Information from Plaintiffs ("Reply McDonell Decl."), Ex. 1.

25
   [6] *See* Declaration of Jason McDonell in Support of Plaintiffs' Motion to Compel
26 Production of Financial Information ("McDonell Decl."), Ex. 6, pp. 72:2-73:6

   [7] *See* Declaration of Ivgen Guner in Support of Oracle's Opposition to Defendants'
27 Motion to Compel ("Guner Decl."). ¶ 6. REDACTED

28

SFI-615863v2

- 4 -

REDACTED REPLY RE MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

1    In ongoing efforts to get the necessary evidence, Defendants continue to negotiate with
2    Plaintiffs. Plaintiffs have rejected a proposal that they provide detailed Income Statements,
3    Balance Sheets and Trial Balances for each Oracle entity that received any revenue, directly or
4    indirectly, from the former TN customers, to be provided on a monthly basis and for the period
5    January 1, 2002 through October 31, 2008. Instead, Plaintiffs offer only quarterly reports and
6    only limited to the three Plaintiffs. *See* Reply McDonell Decl., Ex. 1. Because those reports will
7    not                          REDACTED                          , they are not a
8    suitable substitute for the general ledger information.

9    **B.    Defendants Made Extensive and Good Faith Efforts to Identify Relevant Financial Information through Depositions and "Meet and Confer" Discussions.**

11   Plaintiffs' argue that Defendants have failed to "meet and confer" and should take more
12   depositions about Oracle's financial systems before moving to compel. However, forcing
13   Defendants to obtain needed discovery in the least efficient manner simply in an effort to run the
14   clock on Defendants is contrary to the Federal Rules and this Court's repeated, clear guidance.
15   Defendants should not have to take depositions to prove that Plaintiffs have responsive
16   documents that they have not produced. Yet Defendants have been forced to spend many hours
17   in deposition attempting to identify such documents. The following *partial* history of
18   Defendants' efforts shows that Defendants have more than done their part in seeking damages
19   discovery.

20   **July 2007.** On July 26, 2007, Defendants served requests for documents "relating to any
21   alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint."[8]
22   Plaintiffs agreed to produce documents "sufficient to show Oracle's revenues, costs, and profit
23   margins for support or maintenance services relating to legacy PeopleSoft and J.D. Edwards
24   enterprise software applications for which Oracle has alleged that defendants Downloaded
25   Software and Support Materials from Oracle's systems . . . ." *Id.* Yet, by January 2008, Plaintiffs
26   changed course and argued that discovery of "information showing the losses Oracle has

---

[8] *See* McDonell Decl., ¶ 3, Ex. 3 at 48.

SFI-615863v2

REDACTED REPLY RE MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

- 5 -

sustained due to Defendants' conduct" should be deferred and that "there is no reason for early discovery of this information."[9]

**January-February 2008**. On January 8, 2008, Judge Legge was appointed Special Discovery Master.[10] Three weeks later, Defendants filed a motion to compel production of "documents reflecting revenues, costs and profits for support and maintenance services *for the products* referred to in the Complaint or at issue in the litigation" and for the TN customers. Reply McDonell Decl., Ex. 2 at 7. In response, Plaintiffs agreed to produce "an immense amount of financial data about Oracle's entire business, including actual PeopleSoft and JD Edwards support and application revenue, operating expenses . . . ." *Id.*, Ex. 3 at 10-11. On February 22, 2008, Judge Legge ordered Plaintiffs to produce that information, but otherwise recommended that damages discovery be deferred. *See* Dkt. 66 at 8-9.

**April 2008**. At the April 24, 2008 Case Management Conference, Judge Hamilton rejected the Special Master's recommendation that damages discovery should be deferred and ordered that it proceed immediately. *See* Dkt. 77 ("The Court informs the parties that all discovery including damages discovery is open.").

**June 2008.** On June 2, 2008, Defendants notified Plaintiffs that the documents produced thus far were not sufficient to show Plaintiffs' revenues, pricing, costs, and profit margins relating to support and maintenance:

> With respect to the other documents Oracle has produced, it is either incomplete or not sufficiently detailed to provide the requested information. For example, Oracle's Form 10k does not provide the level of detail required to calculate research and development costs for the products at issue, as Oracle contends. Nor are they, or the other high-level financial documents Oracle has produced, sufficient to determine, for example, Oracle's profit margin for these products.

McDonell Decl., Ex. 4 at 2. Defendants demanded that Plaintiffs produce Oracle charts of accounts as well as "detail at the general ledger level to support . . . product support revenues and expenses." *Id.*, Ex. 4 at 3.

---

[9] *See* Reply McDonell Decl., Ex. 3 at 12.

[10] *See* Stipulation and Order Re: Designation of the Honorable Charles A. Legge (Ret.) as Special Discovery Master in Accordance with Fed. R. Civ. P. 53. Dkt. 55.

1    **July 2008**. Defendants reported in the July 1, 2008 Joint Discovery Conference Statement
2    on Oracle's failure to produce financial information and the possible need for a motion to compel.
3    Dkt. 102 at 25. Defendants also reported on the June 20, 2008 meet and confer among the parties
4    and that Plaintiffs claimed to be looking for other sources for this information and would make it
5    a priority. *Id.* Defendants noted that even then Oracle's damages discovery responses were long
6    overdue and, if sufficient documents were not produced shortly, Defendants would have no
7    choice but to move to compel. *Id.*

8    **August 2008.** Defendants again reported in the August 28, 2008 Joint Discovery
9    Conference Statement on the possible need to file a motion to compel Plaintiffs to produce
10   financial information. Dkt. 167 at 9.

11   **September 2008.** In September, Defendants took Plaintiffs' deposition on the subject of
12   the records that Oracle maintains concerning revenues, costs and profit margins for the
13   PeopleSoft and J. D. Edwards product lines. McDonell Dec., Ex. 6 at 14-15. In response, Oracle
14   presented Ms. Guner who testified—                    REDACTED

16   **October 2008**. The parties met and conferred on October 7, 2008. Plaintiffs argued that
17   the "customer contracts themselves were a sufficient source of information in response to . . .
18   requests for documents showing Oracle's revenues, pricing, costs and profit margins relating to
19   support and maintenance." Reply McDonell Decl., Ex. 4 at 2. Defendants reiterated their June 2
20   requests for charts of accounts and general ledger information. Plaintiffs refused to discuss this
21   request unless it was put in writing. In response, Defendants wrote:

> If Oracle intends to rely in any way on its historical profitability as part of its damages analysis in this case, then we need full discovery into Oracle's profitability. Calculating profitability involves, among other things, calculating both revenues and expenses. You suggested that we look to Oracle's published financial statements for profitability information. I noted to you that Oracle's own Annual Report filed with the Securities and Exchange Commission states that the figures that Oracle publishes for profit margins do not represent the "actual margins" because they do not include a variety of expenses. *See, e.g.,* Oracle Corporation Form 10-K for the fiscal year ended May 31, 2007, p. 103, n. 2. In order to get the expense information, we need to understand the composition of Oracle's expenses. You have refused to produce Oracle's general ledger on burden grounds. In response and in an effort to reduce burdens, we have

> requested the chart of accounts so we can attempt to identify the potentially relevant expense line items and then follow up with a more limited request for general ledger information relating to those expense items.

*Id.* at 3. Defendants renewed their demand for the chart of accounts for all relevant periods.

In the October 10, 2008 Joint Discovery Conference Statement, Defendants reported that they were continuing to meet and confer with Oracle regarding an anticipated motion to compel damages discovery and would request a briefing schedule for a motion to compel production of charts of accounts and general ledger information. Dkt. 178 at 12. At the October 10, 2008 Discovery Conference, the parties reported that they were still discussing the issue, and the Court encouraged Plaintiffs to produce "the bigger picture, less granular information quickly . . . the sooner people have a handle on kind of how much is really at stake the better." Reply McDonell Decl., Ex. 5 at 66.

**January 2009**. In the January 8, 2009 Joint Discovery Conference Statement, Defendants forced the issue and requested a date for a hearing on a motion to compel. Dkt. 226 at 9-11. At the conference, Plaintiffs continued to argue their burden objection, even as to the chart of accounts, and stated that they "will be ready to oppose this . . . ." Reply McDonell Decl., Ex. 6 at 56. The Court noted that Defendants are "absolutely entitled to some profit data if you're going to go after lost profits." *Id.* The Court stated that

> . . . Oracle definitely has to go to some real expense on its letting them, you know, have their defense on damages, because you're seeking millions of dollars. So I wouldn't consider spending some money on that and putting them more of an equal footing because you have full access to it to be disproportionate necessarily.

*Id.*, p. 58. Evidently based on the Court's foreshadowing, the next week Plaintiffs reversed their position and agreed to produce the charts of accounts. *See* Reply McDonell Decl., Ex. 7.

**February–March 2009**. Plaintiffs then took two more months to produce the charts of accounts, representing that they had completed the production on March 26, 2009. McDonell Decl., Ex. 14.

**March–May 2009.** Meanwhile, Defendants continued to investigate damages issues through depositions of Plaintiffs' senior officers, with mixed and contradictory results. Oracle's

President (Safra Catz) and Chief Accounting Officer (Corey West) testified that REDACTED [11] In direct contradiction, its CEO (Larry Ellison) and worldwide head of support (Juergen Rottler) testified that REDACTED [12]

**April 2009**.  After considerable effort in analyzing the charts of accounts, on April 29, 2009, Defendants provided a list of the accounts for which they requested general ledger information.[13]  In response, Plaintiffs argued that the request was overly broad and refused to produce the information.  *See* McDonell Decl., Ex. 15.

Also in April, Defendants took the deposition of OIC (the alleged owner of all of the copyrights at issue) to explore the extent to which the various Oracle entities divided the funds received from customers.  The notice covered "[p]ayments, including but not limited to royalty payments, received by or to OIC in connection with the Registered Works" and "[h]ow costs are allocated among the participants" to the applicable Cost Sharing Agreements.  McDonell Decl., Ex. 17.

The OIC deposition was in many ways a waste of time.  The witness, Ms. Kishore, admitted that REDACTED Without this fundamental knowledge, Ms. Kishore was unable to testify about the payments received and costs incurred by OIC in connection with the specific intellectual property at issue in this case.

**May 2009**.  In May, the parties again met and conferred about the general ledger.  Defendants had previously noticed the deposition of Alex San Juan, based on Corey West's testimony that Mr. San Juan might be more knowledgeable than Mr. West had been.  The San Juan deposition was scheduled for June 19.  On May 11, the parties discussed the possibility of

---

[11] *See* McDonell Decl., Ex. 7 at 179:15-180:1; Ex. 8 at 69:10-70:6.

[12] *See* McDonell Decl., Ex. 9 at 47:6-48:8, 48:4-49:14; Ex. 10 at 177:1-180:7, 179:21-180:4, 178:4-14, 194:84-196:10.

[13] *See* Declaration of Holly A. House in Support of Oracle's Opposition to Defendants' Motion to Compel Financial Informaton ("House Decl."), Ex. F.

1   working informally to resolve the general ledger issue.  Plaintiffs suggested that Mr. San Juan

2   may be able to participate.  On May 14, 2009, Plaintiffs confirmed this in writing:

3   > Further, while Mr. San Juan's availability is extremely limited in June, he can be
4   > available in Silicon Valley on June 19, and in addition, if questions arise about the
    > General Ledger issues in the interim (e.g. burden), he may be available, through
5   > Nitin Jindal [Plaintiffs' counsel], to help provide clarification before June 19
    > depending on the timing and complexity of the issue.[14]

6

7   Defendants embraced the approach of working informally to attempt to resolve the general ledger

8   issue without additional depositions.

9        On May 26, Plaintiffs refused to provide a corporate designee knowledgeable on the chart

10  of accounts issue and insisted on producing Mr. San Juan *only in his individual capacity and not*

11  *as the authoritative spokesman on this subject*.  *See* House Decl., Ex. K at 5

12       On June 4, the parties again discussed the possibility of informal resolution, and on June

13  12, Defendants wrote to Plaintiffs "[f]ollowing up on the suggestion in our recent telephone

14  discussions" and suggested a call with Mr. Nitin Jindal, the attorney working with Mr. San Juan.

15  McDonell Decl., Ex. 18 at 3.  On June 16, Defendants postponed the San Juan deposition, in part

16  hoping that the parties could work through the issue without the need for yet another deposition.

17  *See* House Decl., Ex. L.

18       Since then, Plaintiffs have flip-flopped on their willingness to work informally.  Some

19  days they say they will, some days they say they will not.  *See* House Ex. U at 1.  The issue of

20  Mr. San Juan's input into the general ledger issue is largely moot, however, as he has provided a

21  declaration with his views in opposition to this motion.  All of the burdens that he identifies can

22  be resolved, at least initially, by Plaintiffs' production of reports that can be generated from the

23  general ledger.

24       **June 2009**.  On June 12, 2009, Defendants again expressed their concerns over the lack of

25  lost profits discovery.  *See* McDonell Decl., Ex. 18.  These concerns were included in the June 25

26  Joint Discovery Conference Statement (Dkt. 326 at 2-5) and at the conference the Court granted

27  permission for Defendants to file this motion.

28       [14] House Decl, Ex. H.

1 **July 2009**. On July 29, the parties met and conferred yet again on the general ledger and Defendants made a proposal that might resolve the motion for general ledger information. *See* Reply McDonell Decl., Ex. 1. Specifically, Defendants proposed that Plaintiffs produce Income Statements, Balance Sheets and Trial Balances for each Oracle entity that received any revenue, directly or indirectly, from the former TN customers. *See id.* These would be provided on a monthly basis, in the level of detail described in Ms. House's July 10, 2009 letter[15] and for the period January 1, 2002 through October 31, 2008. *See* McDonell Decl., Ex. 1. Defendants would review this information in good faith in an effort to resolve the general ledger request and would reserve rights to seek additional information if this information proves to be inadequate. *Id.* On August 4, Plaintiffs rejected the proposal, offering only to provide part of the information requested in the proposal. *Id.*

In yet another parallel attempt to get at Plaintiffs' revenues and profitability information, Defendants served their Targeted Search Request No. 3. The request calls for documents sufficient to show revenue, expenses and net income to each Plaintiff entity resulting from sales by any Oracle entity of PeopleSoft and/or J.D. Edwards software or services to TN's former customers. On July 17, 2009, Plaintiffs served objections, but have agreed to produce certain reports. *See* Reply McDonell Decl., Ex. 8.

### III.   ARGUMENT

Defendants have made more than reasonable efforts to obtain damages discovery. It is time for an order requiring production of the information necessary for a lost profits analysis and for Plaintiffs to do so by a date certain.

  **A.** **Plaintiffs Should Be Ordered to Produce General Ledger Information and the Reports that Can Be Generated from the General Ledger**

While Plaintiffs complain that the level of detail requested from the general ledger is "excessive" and "more summary level financial information" is either available or will be made available, that is no excuse. Meyer Decl., ¶ 10. Plaintiffs have not identified this "more summary

---

[15] *See* House Declaration, Ex. T at 4.

1 level" information or explained why it might suffice.  Nor have Plaintiffs or their expert asserted

2 that Defendants have sufficient information with which to calculate lost profits.

3     With access to the detailed general ledger information, Defendants' expert could perform

4 analyses that may identify which accounts are appropriate to include in a lost profits analysis and

5 which should be excluded.  *See* Clarke Decl., ¶ 14.  By its very nature, such an exercise requires

6 review of a broad group of accounts to determine which should be included and which should be

7 excluded.  *Id.* at 15.  Thus, while Defendants made a good faith effort to reduce the burden on

8 Plaintiffs by selecting only certain accounts from the chart of accounts, it is no surprise that they

9 cast the net broadly.  Plaintiffs' experts' opinion that "much of the detailed general ledger

10 information requested by Defendants *may not be relevant* to their evaluation of lost profits in this

11 case," simply proves the point that much of it is relevant.  Meyer Decl., ¶ 24 (emphasis added);

12 *See also* Clarke Decl., ¶ 17.

13     The burdens Oracle identifies can be overcome.  In his declaration,[16] Mr. San Juan

14 identifies the following burdens: REDACTED

17 These concerns

18 should not prevent substantial, meaningful information from being provided.  *See* Clarke Decl.,

19 ¶ 20.  Plaintiffs should be able to provide the requested information for the Oracle entities that

20 received revenues from the former TN customers, at least at the trial balance level of detail for the

21 relevant period.

22     Defendants have made a reasonable offer to Plaintiffs to accept on an interim basis

23 the information generated from the general ledger including the detailed Income Statements,

24 Balance Sheets and Trial Balances. Plaintiffs have rejected that proposal and offered only

25 quarterly reports and only limited to the three Plaintiffs.  *See* Reply McDonell Decl., Ex. 1.

---

[16] *See* Declaration of Alex San Juan in Support of Oracle's Opposition to Plaintiffs' Motion to Compel ("San Juan Decl.").

1   Because those reports likely will not show all of the inter-company splits of revenues among the

2   various entities, they are not a suitable substitute for the general ledger information.

3      **B.**    **Plaintiffs Should be Ordered to Produce Reports Showing the Profitability of Their PeopleSoft, J.D. Edwards and Siebel Product Lines and Detailed Financial Statements for Each Relevant Entity**

5   Plaintiffs have agreed to produce product profitability reports for their PeopleSoft,

6   J.D. Edwards and Siebel product lines, as well as the underlying source documents that explain

7   how they were created. Given the history of misinformation on this issue and the many months

8   that have been lost as a result, the Court should order the production of these documents by a date

9   certain. Arguably, Judge Legge already ordered these documents to be produced in his

10  February 22, 2008 order. Likewise, Plaintiffs should be ordered to produce the detailed Profit

11  and Loss Statements.

12      **C.**    **Plaintiffs Should Be Ordered to Provide a Complete Response to Defendants' Targeted Search Request No. 3**

14  Targeted Search Request No. 3 is simply another formulation of the requests Defendants

15  have been making all along for information sufficient to show Plaintiffs' lost profits. The request

16  seeks documents sufficient to show revenue, expenses and net income to each Plaintiff entity

17  resulting from sales by any Oracle entity of the relevant software products to TN's customers.

    *See* McDonell Decl., Ex. 16.

18  On May 27, June 3 and July 17, Plaintiffs objected to this request. Ultimately, Plaintiffs

19  contend that the only responsive information they have are the product line profitability reports

20  and the detailed financial statements that are subjects discussed in the preceding section.

21  Plaintiffs state that they will produce them, "subject to Defendants' clarification for the level of

22  detail requested . . . ." Reply McDonell Decl., Ex. 8 at 19.

23  As part of the pending proposal to accept less-detailed general ledger information,

24  Defendants have requested profitability reports in the level of detail represented by Plaintiffs'

25  counsel to exist (*i.e.*, the "Detailed Income Statement Report" that contains "over 200 line items").

26  House Decl., Ex. T at 4. Only after receipt and an opportunity to review this information,

1  however, will Defendants be in a position to assess its adequacy. Thus, Defendants request an
2  order requiring Plaintiffs to respond to the Targeted Search Request No. 3 and reserve all rights.

### D.     OIC Should Be Ordered to Produce a Witness for Supplemental Deposition

This is a straightforward issue. OIC has simply failed to produce a knowledgeable witness on the specific topics at issue in the deposition. OIC has agreed to produce a witness for further deposition, but limited to the Siebel product line and inter-company license agreements that have been produced since the first deposition. *See* House Decl., Ex. T at 5. That is not sufficient.

Defendants' deposition notice required a witness to testify on the subject of "royalty payments, received by or due to OIC in connection with the Registered Works" and "[i]dentification of each source of such payments . . . ." McDonell Decl., Ex. 17. The obvious purpose of this deposition was to gather discovery about the payments that OIC receives for its licenses to other Oracle entities (who in turn license to customers) for the specific intellectual property at issue in this case.

OIC's witness, Ms. Kishore, was unprepared to testify on the noticed topics, having no knowledge of the fundamental issue upon which the notice was based, the Registered Works. Specifically, Ms. Kishore testified that REDACTED

The deposition notice clearly defined a "Registered Work" as "a work underlying a federal copyright registration identified in the Complaint and any subsequent amendments to the Complaint." *Id.*, Ex. 17 at 3. REDACTED

REDACTED

REDACTED

REDACTED

Due to her lack of knowledge, Ms. Kishore was completely unable to tie any payments received by OIC to any of the Registered Works at issue in the case.

OIC's argument is difficult to follow. Without the ability to tie OIC's right to receive any payments for its licenses of the Registered Works to its affiliates, OIC cannot make out a case of lost profits. Defendants' noticed topics are not, therefore, "predicated upon false assumptions" as Plaintiffs contend. Rather, they are at the very heart of OIC's claims for copyright-related damages. REDACTED , lost profits in a copyright infringement suit are ultimately proven this way. This is precisely why Defendants served this 30(b)(6) notice in the first place—to understand how OIC is ultimately paid for the specific intellectual property licensed via the inter-company agreements. If OIC is unable to provide a witness on this topic, it is unclear how it will ever be able to establish its own lost profits. OIC should be ordered to produce a knowledgeable witness on this topic.

## IV. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and order Plaintiffs to produce immediately the requested documents and testimony.

Dated: August 4, 2009              JONES DAY

                                         By: /s/ Jason McDonell
                                             Jason McDonell

Attorneys for Defendants