1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:  (415) 626-3939
   Facsimile:  (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA 94303
   Telephone:  (650) 739-3939
10 Facsimile:  (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:  (832) 239-3939
15 Facsimile:  (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19                    UNITED STATES DISTRICT COURT
20                    NORTHERN DISTRICT OF CALIFORNIA
21                         SAN FRANCISCO DIVISION

22 ORACLE CORPORATION, et al.,            Case No. 07-CV-1658 PJH

23              Plaintiffs,                **DECLARATION OF STEPHEN K. CLARKE IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FINANCIAL INFORMATION OF PLAINTIFFS**
24      v.
25 SAP AG, et al.,                         **REDACTED**

26              Defendants.
                                           Date:  August 18, 2007
27                                         Time:  2:00 p.m.
                                           Courtroom:  E, 15th Floor
28                                         Judge:  Hon. Elizabeth D. Laporte

I, STEPHEN K. CLARKE, declare:

1. I am a Certified Public Accountant (Accredited in Business Valuation) in the State of Arizona; a Certified Fraud Examiner; and a Chartered Accountant in England & Wales. A copy of my resume is attached as **Exhibit A**. I have been engaged as a testifying economic damages expert in dozens of intellectual property disputes over the last 20 years. Such disputes have related to copyrights, patents, trade secrets, trade dress and unfair competition, and have involved aggregate claims well in excess of $100 billion (prior to this matter). I have provided testimony as an economic expert in many venues including Federal and State Courts, arbitration panels, and bankruptcy hearings in the United States, and the Crown Courts in Great Britain. I have valued over $20 billion worth of businesses in the same 20 year period. My degree is in Management Sciences from the University of Manchester in England. I taught economics at Arizona State University for several years.

2. I have personal knowledge of the matters discussed herein, except where indicated otherwise.

3. I have read the Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion to Compel.

4. I have made an effort to obtain and review the financial information Plaintiffs have produced in discovery that bears on the calculation of the profits that would have been earned by Plaintiffs from the customers allegedly lost as a result of the actions of Defendants. Thus far, I have received no detailed corporate level financial information for Oracle USA, Inc. ("OUSA"), Oracle International Corporation ("OIC"), and Oracle EMEA Limited ("OMEA", and collectively, "Plaintiffs") . Plaintiffs have not produced company level general ledgers, detailed financial statements or trial balances for any entity.

5. The financial information provided so far lacks the level of detail needed for a proper quantification of Plaintiffs' profits related to the allegedly lost sales. This is because the expenses related to earning the sales revenues are not identified in sufficient detail.

///

///

1      6.      Oracle has provided quarterly financial reports by geography (*e.g.*, reports for the
2  "Americas," which I understand includes more business than OUSA) from Quarter One 2000
3  through Quarter Four 2007.  However, these are high level income statements that do not allow
4  for a detailed analysis of the costs associated with the allegedly lost revenue streams in the
5  plaintiff entities and none of the provided financial information appears to relate to OIC.  In
6  addition, many of these reports are illegible.  Accordingly, it is not possible, without relying on
7  assumptions, to quantify the allegedly lost profits of the plaintiff entities based on this
8  information.

9      7.      I have the various SEC filings that Oracle Corporation (which is not a plaintiff
10 entity and now known as Oracle Systems Corporation) makes, like any public company,
11 including 10-Ks and 10-Qs.  While the Oracle Corporation 10-Ks provide aggregate data for
12 revenues and direct expenses by segment (*e.g.,* New Software Licenses, Software License
13 Updates and Product Support), they contain  insufficient information to allow a computation of
14 the profits that would have been earned by the plaintiff entities related to the products and
15 services at issue for the periods in question.  Accordingly, it is not possible, without relying on
16 assumptions, to quantify any lost profits for Plaintiffs,  or to do so for the portion of the plaintiff
17 entities revenues at issue in this case.

18     8.      In addition, for the period prior to Oracle's acquisition of PeopleSoft, Plaintiffs
19 have provided little detailed PeopleSoft financial information (Plaintiffs provided certain
20 PeopleSoft financial reports as well as PeopleSoft 10-Ks and 10-Qs).  After the acquisition, the
21 only statements showing PeopleSoft profitability provided by Plaintiffs is for the five months
22 ending on May 31, 2005.

23     9.      REDACTED

25  Plaintiffs state that any *ad hoc* reports are of uncertain provenance and may be inaccurate
26 but that it will produce them.  In assessing these reports, it will be important to also have the
27 source documents that reveal how the reports were created.  I will be in a better position to
28 comment on these *ad hoc* reports after I see them.

1  10. Mr. Meyer characterizes my purposes in asking for detailed financial information when he states that I seek "excessive" general ledger information in order to identify relevant costs. While the detailed financial information is relevant to the identification of costs (as discussed above), I also seek the information in order to trace the flow of profits from allegedly lost revenues through the various plaintiff entities. REDACTED

11. Without the detailed financial information, it may be possible for me to rely on various inter-company agreements between the Oracle entities to quantify the flow of *some* of the revenues Plaintiffs receive from end-user customers. To do so, however, would likely result in omission of certain transactions because they are not subject to an inter-company agreement. For example, if the plaintiff OEMEA receives funds from revenues generated by non-plaintiff Oracle France, and remits some of those funds to a non-plaintiff like Oracle Technology Corporation, I need to know how much was remitted in each case for the purposes of quantifying damages. Absent the detailed information, any assessment of the profit retained by any Oracle entity in the chain of ownership would likely be incomplete. Following the funds through from initial contracting party to a plaintiff in this action will be necessary to quantify any lost profits potentially generated by the actions alleged in Plaintiffs' Third Amended Complaint for Injunctive Relief (D.I. 182). To date, I do not believe that Plaintiffs have produced sufficient records for this determination to be completed.

12. I am not aware of information produced by Plaintiffs in discovery in this case that allows for a calculation of revenues, expenses and profits to plaintiff entities in connection with the alleged lost sales.

13. A company's general ledger typically contains a great deal of detail including the accounts that are the building blocks for financial reporting. The advantage of general ledger detail is that it allows detailed analysis of a company's financial position and results of operations which will assist in quantifying lost profits.

1  14. If I had access to the detailed general ledger information, I could perform analyses
2  that may identify which accounts are appropriate to include in a lost profits analysis and which
3  should be excluded. By its very nature, such an exercise requires review of a broad group of
4  accounts in order to determine which should be included and which should be excluded.

5  15. I recognize the complex nature of the Plaintiffs' businesses. For this reason, I
6  requested a copy of Plaintiffs' charts of accounts so I could tailor my information request to
7  accounts that might affect the calculation of alleged damages. Plaintiffs eventually produced
8  thousands of pages of charts of accounts for OUSA, OIC and OEMEA and the consolidated
9  company Oracle Corporation. When I saw the overall structure of the charts of accounts I was
10 able to reduce my list of requested accounts to those conveyed to Plaintiffs in an email from
11 Elaine Wallace dated April 29, 2009. While this request has been characterized as an overly
12 broad 73 page list of irrelevant accounts, that characterization is misleading. I only requested
13 accounts I thought might affect the quantum of damages and the total of 73 pages included
14 requests for multiple years (the requested list of accounts for each year was just a few pages
15 long). Upon receipt of the underlying general ledger information, I likely would determine that I
16 do not need some of the accounts and I may need to request still others that were not requested.

17 16. The specific items Mr. Meyer points out as being "…unlikely to vary…" with the
18 level of revenue are easily explained.         REDACTED

27 T&E accounts almost always vary with the level of sales in a
28 company but not every component of the total T&E spend varies in the same way. My effort to

1  procure the details was made to ensure I did not overstate or understate the variable costs
2  associated with a varying level of sales.

3  17.    Mr. Meyer states, "In my opinion, much of the detailed general ledger information
4  requested by Defendants *may not be relevant* to their evaluation of lost profits in this case." Such
5  a statement begs the question, "Which portion of the document request *is* relevant?"

6  18.    While it is certainly true that Defendants have been seeking in their requests
7  information that relates to the profits of each product line at issue in this case, as Mr. Meyer
8  asserts, the requests were also designed to quantify the profits by plaintiff entity. In my view, it
9  is impractical to parse the requested information between the two data sets. As a result, I consider
10 them jointly .

11 19.    The extent to which Mr. Meyers has been "required" to rely on information from
12 the general ledger to determine revenues in other cases does not bear upon the information I may
13 need for my analyses here. I also understand Mr. Meyer's assertion to be consistent with the
14 possibility that he has previously used general ledger or other detailed information in order to
15 quantify damages in an intellectual property case. Furthermore, even if he has not previously
16 relied upon such detailed information, I cannot conclude from that assertion that I should ignore
17 Plaintiffs' general ledger or that it is generally appropriate to ignore such information. By
18 comparison, for example, I have reviewed general ledger information and/or detailed financial
19 statements in numerous cases, including intellectual property cases.

20 20.    I have reviewed the Declaration of Alex San Juan in Support of Oracle's
21 Opposition to Defendants' Motion to Compel. In his declaration, Mr. San Juan identifies what he
22 perceives as the burdens that may be borne by the Plaintiffs if compelled to produce information
23 from Oracle's general ledger. Mr. San Juan's concerns do not indicate to me that an analysis of
24 the general ledger will create an unnecessary burden that may outweigh the benefit of a more
25 complete understanding of Plaintiffs' alleged damages. For example, the issues he raises include:
26                                          REDACTED
27
28

| | |
|---|---|
| 1 | REDACTED          These concerns should not prevent substantial |
| 2 | meaningful information from being provided. Based on Mr. San Juan's assertions, Plaintiffs |
| 3 | should be able to provide the requested information for the Oracle entities that received revenues |
| 4 | from the former TN customers, at least at the trial balance level of detail for the relevant period. |
| 5 | 21.   I understand that Plaintiffs are currently considering whether to provide certain |
| 6 | detailed information responsive to my requests, including: (a) detailed Income Statements and |
| 7 | Balance Sheets for each Oracle entity that received any revenue, directly or indirectly, from the |
| 8 | former TN customers, to be provided on a monthly basis and for the period 1/1/02-10/31/08; and |
| 9 | (b) Trial Balances for the same entities for the same periods. Depending on the actual content of |
| 10 | any such information I receive, I may be able to make a reasonable determination of the quantum |
| 11 | of damages without resort to further detailed general ledger information. |
| 12 | I declare under penalty of perjury under the laws of the United States and the State of |
| 13 | California that the foregoing is true and correct. |
| 14 | Executed this 1st day of August 2009 in Phoenix, Arizona. |
| 17 | SFI-615997v2     Stephen K. Clarke |