BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
ORACLE USA, INC., ORACLE INTERNATIONAL
CORPORATION, and ORACLE EMEA LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>SAP AG, *et al.*,<br><br>            Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**ORACLE'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT**<br><br>Date:         August 19, 2009<br>Time:         9:00 a.m.<br>Courtroom: 5, 17th Floor<br>Judge:        Hon. Phyllis J. Hamilton |

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT

Dockets.Justia.com

TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................... 1
II. THE RULE 15 LIBERAL PLEADING STANDARD APPLIES ................................... 4
    A. Defendants' Two Factual Arguments That Rule 16 Applies Fail .......................... 4
    B. Defendants' Cases Involve Extreme Scenarios Not Present Here ........................ 5
III. THE COURT SHOULD GRANT ORACLE'S MOTION TO AMEND IN FULL .......... 5
    A. Defendants Cannot Show Undue Prejudice .......................................................... 6
        1. Defendants Cannot Credibly Claim Surprise ............................................ 6
        2. The Amendments Add Conforming Facts, Not Theories Or Parties ......... 8
        3. Oracle's Amendment Is Timely .................................................................. 8
    B. Oracle Has Not Delayed And Has Acted In Good Faith ..................................... 10
        1. Oracle's Review of Defendants' Tardy And Large Productions Does Not Prove Delay ............................................................................ 10
        2. Oracle Has Only Pled Registrations Based On Evidence Of Infringement ............................................................................................ 13
        3. Defendants' Opposition Confirms That There Is No Bad Faith Here ...................................................................................................... 14
IV. CONCLUSION ................................................................................................................ 15

| | |
|---|---|
| 1 | TABLE OF AUTHORITIES |
| 2 | Page |

**FEDERAL CASES**

*Allen v. Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) .................................................................................................. 6

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) .................................................................................................. 6

*Brown v. Wireless Networks, Inc.*,
    No. C 07-4301, 2008 U.S. Dist. LEXIS 36472 (N.D. Cal. Apr. 24, 2008) ........................... 15

*Chodos v. West Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002) ................................................................................................ 15

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000) ................................................................................................ 5

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................................ 6

*Hannon v. Chater*,
    887 F. Supp. 1303 (N.D. Cal. 1995) ...................................................................................... 5

*Howey v. United States*,
    481 F.2d 1187 (9th Cir. 1973) .............................................................................................. 10

*In re Fritz Cos. Secs. Litig.*,
    282 F. Supp. 2d 1105 (N.D. Cal. 2003) .................................................................................. 6

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ................................................................................................ 6

*Johnson v. Mammoth Recreations, Inc*,
    975 F.2d 604 (9th Cir. 1992) .................................................................................................. 5

*Lendall v. Chase Manhattan Mortgage Corp.*,
    No. C 05-03295, 2006 U.S. Dist. LEXIS 81430 (N.D. Cal. Oct. 27, 2006) ........................... 5

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ......................................................................................... 10, 14

*Lukowsky v. City & County of San Francisco*,
    2006 U.S. Dist. LEXIS 26762 (N.D. Cal. Apr. 26, 2006) ...................................................... 5

*RE: LAUNCH, LLC v. PC Treasures, Inc.*,
    No. C-05-0697, 2006 U.S. Dist. LEXIS 27673 (N.D. Cal. Apr. 28, 2006) ............................ 5

TABLE OF AUTHORITIES
(continued)

Page

*Robertson v. Qadri*,
   No. 06-4624, 2009 U.S. Dist. LEXIS 3790 (N.D. Cal. Jan. 15, 2009) .............................. 6, 15

*Scognamillo v. Credit Suisse First Boston, LLC*,
   587 F. Supp. 2d 1149 (N.D. Cal. 2008) ...................................................................................... 8

*Spano v. The Boeing Co.*,
   2007 WL 4390366 (S.D. Ill. 2007) .......................................................................................... 11

*St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l, Inc.*,
   245 Fed. Appx. 588 (9th Cir. 2007) .......................................................................................... 6

*Strickland v. Jewell*,
   562 F. Supp. 2d 661 (M.D.N.C. 2007) .................................................................................... 15

**RULES**

Fed. R. Civ. P. 11 ............................................................................................................................ 7

Fed. R. Civ. P. 15 .................................................................................................................... 4, 5, 6

Fed. R. Civ. P. 16 ................................................................................................................ 4, 5, 6, 11

Fed. R. Civ. P. 30 .................................................................................................................... 3, 11

Fed. R. Civ. P. 33 .......................................................................................................................... 13

**REGULATIONS**

37 C.F.R. § 202.3 ..................................................................................................................... 9, 10

## I. PRELIMINARY STATEMENT

*There is No "Undue" Prejudice.*  Defendants oppose the Database, PeopleSoft and Knowledge Management Amendments on grounds of prejudice, delay and bad faith.  Stripped of their rhetoric, Defendants fail to make the requisite showing of prejudice from the proposed amendments.  Prejudice requires surprise, and Defendants cannot show that – they are the ones who have put the bulk of these additional registrations at issue through discovery, and have known about all of them for years, as they concede in their Opposition.  Prejudice also typically results from new theories or parties, not new facts.  Oracle adds only registrations conforming to facts (the software Defendants copied), *but no new theories or parties*.  Finally prejudice requires seriously late amendments, usually made in response to dispositive motions after discovery ends.  Here, trial is a year and a half away, Defendants have known about these issues at least since April, they have been conducting discovery on these very works, and they have months of discovery and 300 deposition hours left.  *See* Declaration of Joshua L. Fuchs in Support of Opposition ("Fuchs Decl."), Dkt. 382, at ¶¶ 2-3.  Moreover, Defendants do not mention it, but Oracle proposed a very limited, less burdensome discovery program – much less than Oracle would get in a new case – related to the proposed Database Amendments.  *See* Declaration of Geoffrey M. Howard in Support of Reply ("Howard Decl."), ¶ 10 & Ex. E. at 2.  No prejudice exists.

*There Was No Unjustified Delay.*  Oracle has not delayed.  It has worked to review the massive productions Defendants began making in late 2008, and to adjust to the changing story of Defendants' environments.  That it took a few months to wade through the equivalent of a billion pages of data does not make Oracle dilatory.  Indeed, Defendants opposed Oracle's recent motion to compel further interrogatory answers based on the burden of having to use *their own records* to identify what downloads they took, declaring that it would "easily take thousands of man hours" to do so.  Defendants' Opposition to Plaintiffs' Motion to Compel ("MTC Opp."), Dkt. 334, at 12 n.16.  The Database Amendments illustrate this point.  Defendants accuse Oracle of unjustified delay and bad faith for its failure to find *two emails* on an issue not then in the case in a seven million page production.  Defendants make these accusations even though they refuse to review these same documents to provide discovery answers.  The law rejects this "constructive notice"

1 | approach. And, Defendants never dispute that Oracle raised this issue promptly after discovering it.

2 | *Defendants – not Oracle – Misrepresent Relevant History.* Finally, Defendants pin a bad
3 | faith accusation on the charge that Oracle lied. This is an extremely serious accusation that requires
4 | scrupulous accuracy. Unfortunately, Defendants facts are flatly, totally, irrefutably wrong. Two
5 | examples suffice to illustrate the falsity of this accusation. First, Defendants castigate Oracle for
6 | not pleading the PeopleSoft registrations earlier, simply because the *registrations* existed at the time
7 | of the original complaint. That is irrelevant. Hundreds of registrations "existed." The facts are that
8 | Oracle had no basis to believe Defendants had copied the software versions reflected by *those*
9 | *specific* registrations. So why add them now? As Oracle explained at length – and as Defendants
10 | never dispute – it is a combination of Defendants' changing discovery responses, and Defendants'
11 | own *recent discovery efforts and arguments* that have led Oracle to propose this minor conforming
12 | amendment to add twenty additional PeopleSoft registrations. Defendants sought them in
13 | discovery. Defendants made them an issue.

14 | Second, Defendants accuse Oracle of engaging in a "continuing pattern" of
15 | misrepresentations regarding amendments to its complaints. Defendants' Opposition to Plaintiffs'
16 | Motion to Amend Complaint ("Opp."), Dkt. 380, at 18:16-21. Specifically, Defendants' counsel
17 | swears that Oracle delayed filing the Second Amended Complaint ("SAC") on the false grounds
18 | that it needed to obtain new copyright registrations, but that "all of the additional copyright
19 | registrations identified in the SAC pre-date the [First Amended Complaint ("FAC")]." Declaration
20 | of Tharan Gregory Lanier in Support of Opposition ("Lanier Decl."), Dkt. 381, at ¶¶ 3-5. This
21 | statement is false in two ways, and the entire episode illustrates Oracle's continued diligence in
22 | understanding the software environment issues.

23 | The statement is false first because Oracle *did* obtain three additional registrations effective
24 | May 2, 2008, eleven months after the June 1, 2007 filing of the FAC, and *included them* in the
25 | SAC. *See* SAC, Dkt. 132, at ¶ 148 (reflecting the addition of registrations TX 6-838-537, TX 6-
26 | 838-544, and TX 6-838-549 in the last three lines of that paragraph).

27 | The statement is false second because, as Defendants well know, the "delay" in filing the
28 | SAC resulted from Defendants' repeated cancellation of the deposition of the witness identified by

1    Defendants as most knowledgeable about the PeopleSoft local environments.  *See* Howard Decl.,

2    ¶¶ 4-7 & Exs. C-D.  Ultimately, Judge Legge granted Oracle's motion to compel dates and denied

3    Defendants' subsequent motion for a protective order.  *Id.* at ¶¶ 6-7.  On December 20, 2007,

4    immediately after learning for the first time about the local Oracle software environments on

5    Defendants' systems, Oracle noticed a 30(b)(6) deposition to gather foundational evidence

6    sufficient to determine how further to amend the complaint (including to identify the specific

7    software versions Defendants copied).  *See id.* at ¶ 4.  Defendants twice scheduled, then twice

8    cancelled on five days' notice, their most knowledgeable witness.  *See id.* at ¶ 7 & Ex. D at 1-2

9    (advising the Special Master that Defendants had "abruptly cancelled" Shelley Nelson's 30(b)(6)

10    deposition, identified as "critical to [Oracle's] ability to finalize and share its amended complaint.").

11    As Oracle told the Court in April 2008, it needed that testimony to know what registrations it

12    needed to add.  *See* Joint Case Management Conference Statement, Dkt. 76, at 8:20-28 (stating that

13    the draft SAC provided to Defendants may be revised due to "receipt of additional copyright

14    registrations and from the upcoming TN, SAP America and SAP AG 30(b)(6) depositions and the

15    anticipated SAP America and SAP AG productions.").  *After* Oracle moved to compel this

16    foundational testimony, Judge Legge instructed Defendants to provide firm dates immediately.  *See*

17    Howard Decl., ¶ 6.  Defendants *then* moved for a Protective Order relating to the topics Oracle had

18    noticed months earlier, and in response to which Defendants had twice offered dates.  *See id.*, ¶ 7.

19    Judge Legge denied that motion, and Oracle finally did take the testimony almost four months after

20    its original notice.  *Id..*, ¶¶ 4, 7-9.  Oracle used this testimony to assess the registrations it needed to

21    include in the SAC and filed its amendment, adding a combination of new and pre-existing

22    registrations.

23        This episode may reveal bad faith, but not by Oracle.  Nothing more reveals Oracle's

24    diligence, the obstacles it has overcome to discover the basis for the limited conforming

25    amendments it seeks here, and the untruth of the strident accusations leveled in Defendants'

26    Opposition.  The Court should grant Oracle's motion to add limited contested and uncontested

27

28

amendments to its Complaint to conform to discovery and to ensure that this case is decided on the merits.[1]

## II. THE RULE 15 LIBERAL PLEADING STANDARD APPLIES

Defendants incorrectly argue that Oracle may not rely on the Rule 15 liberal amendment standard and that Rule 16 instead applies. *See* Opp. at 9:10-11:10. Reading the May 5, 2008 and June 11, 2009 Case Management Orders (the "May 5 Order" and "June 11 Order", respectively) together, the new discovery cut-off operates to set a new amendment deadline of September 5, 2009. In any event, Oracle satisfies Rule 15 and Rule 16.

### A. Defendants' Two Factual Arguments That Rule 16 Applies Fail

Defendants also make two flawed factual arguments in support of the Rule 16 standard. First, Defendants claim they "expressly declined to modify the amendment deadline." Opp. at 3:14-15. This argument lacks support and is irrelevant. Defendants point to neither a statement to that effect by them nor any abandonment by Oracle of this critical right. In reality, "[t]he Parties reserve[d] their respective rights, defenses, and positions with respect to any other amendment." Joint Stipulation to Modify Case Management Order, Dkt. 305, at 3:3-4. Regardless, the power to modify case deadlines rests with the Court. Here, the Court expressly allowed Oracle to bring a motion to amend disputed issues by August 26, 2009 (approximately 90 days from the new discovery cut-off – the standard amendment deadline). June 11 Order, Dkt. 325, at 2:20-22. Oracle moved sooner than that in order to provide Defendants with maximum notice and opportunity to allocate their many remaining deposition hours. Second, Defendants claim that the May 5 Order amendment deadline remained in effect because the subsequent June 11 Order does not *expressly* set a new amendment deadline. *See* Opp. at 11. This argument overlooks the actual language and apparent effect of the May 5 Order. The May 5 Order sets a specific fact discovery cut-off date and provides that the amendment deadline shall be "no later than 90 days before [the] fact discovery

---

[1] For the Court's convenience, Oracle has prepared a chart of the contested registrations and a summary of the general basis for their inclusion. *See* Howard Decl., ¶ 2 & Ex. A. Because Defendants do not oppose the Stipulated Amendment, Oracle's Reply addresses only the contested amendments. *See* Defendants' Statement of Nonopposition, Dkt. 385.

1  cutoff date . . . ." May 5 Order, Dkt. 84, at 1:24. When the Court *reset* the discovery cut-off in the
2  June 11 Order, the amendment deadline should have reset, too. Thus, the Rule 15 liberal
3  amendment standard should apply, though Oracle meets both standards.

4  **B.  Defendants' Cases Involve Extreme Scenarios Not Present Here**

5  Defendants claim, with no supporting authority, that the amendment deadline, which keys
6  off the discovery cut-off, stayed in place while the discovery cut-off moved by six months. *See*
7  Opp. at 9-11. Defendants cite to six cases where courts ultimately denied, under the Rule 16 "good
8  cause" standard, motions for leave to amend brought after the Rule 15 amendment deadline had
9  expired. These cases have two things in common. First, none of them involve the issue of whether
10 an extension to the discovery cut-off extends the liberal amendment deadline. Second, in each of
11 the cases, the Court denied leave to amend because of egregious circumstances not present here.
12 *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-1295 (9th Cir. 2000) (plaintiff moved to
13 amend after defendant's motion for summary judgment); *see also RE: LAUNCH, LLC v. PC*
14 *Treasures, Inc.*, No. C-05-0697, 2006 U.S. Dist. LEXIS 27673, at *3-4 (N.D. Cal. Apr. 28, 2006)
15 (same); *see also, Lendall v. Chase Manhattan Mortgage Corp.*, No. C 05-03295, 2006 U.S. Dist.
16 LEXIS 81430, at *17-19 (N.D. Cal. Oct. 27, 2006) (motion to amend seven months after motion
17 cut-off and discovery closed, without articulating why discovery warranted amendment); *Johnson v.*
18 *Mammoth Recreations, Inc*, 975 F.2d 604, 609-610 (9th Cir. 1992) (plaintiff sought to add new
19 parties four months after deadline passed); *Lukowsky v. City & County of San Francisco,* 2006 U.S.
20 Dist. LEXIS 26762, at *4-6 (N.D. Cal. Apr. 26, 2006) (plaintiff admitted lack of diligence in adding
21 two new defendants after the cut-off); and *Hannon v. Chater*, 887 F. Supp. 1303, 1319-1320 (N.D.
22 Cal. 1995) (motion for futile amendment noticed a week after the motion hearing cut-off). By
23 contrast, Oracle brought its motion prior to the amendment deadline and the discovery cut-off,
24 asserts no new causes of action or new parties, and conforms its registrations to facts in the record.

25 **III.  THE COURT SHOULD GRANT ORACLE'S MOTION TO AMEND IN FULL**

26 This amendment does not unduly prejudice Defendants. They have known about these facts
27 for years and have designed their discovery and trial strategy around them. Oracle brought this
28 motion to amend diligently, without undue delay, and – despite Defendants' deeply flawed

1  argument to the contrary – not in bad faith.  Because Oracle satisfies both the Rule 15 and Rule 16

2  standards as to each proposed amendment, the Court should grant leave to amend.[2]

3  **A.  Defendants Cannot Show Undue Prejudice**

4  Under the Rule 15 standard, undue prejudice is the most important factor in deciding

5  whether to grant leave to amend.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990);

6  *see also In re Fritz Cos. Secs. Litig.*, 282 F. Supp. 2d 1105, 1109 (N.D. Cal. 2003).  Defendants

7  argue prejudice last for good reason.  As their own cases show, they cannot show any prejudice, let

8  alone undue prejudice.  "Undue" prejudice results from the surprise, last-minute addition of entirely

9  new or different *theories*, rather than new *facts*.  *See AmerisourceBergen Corp. v. Dialysist West,*

10  *Inc.*, 465 F.3d 946, 953-954 (9th Cir. 2006).[3]  No part of this standard applies here.

11  **1.  Defendants Cannot Credibly Claim Surprise**

12  Defendants' Opposition contains multiple concessions that Oracle's proposed amendments

13  did not surprise them.  *See* Opp. at 6:18-9:6.  This makes sense because Defendants knew about the

14  facts underlying each of the three categories of proposed amendments long ago.

15  *Database Amendments.*  Defendants concede they knew about this additional illegal conduct

16  related to Oracle's database software last year, and apparently sat back hoping that Oracle would

17  overlook these facts.  *See* Opp. at 8:18-21.  Indeed, the emails Oracle discovered reveal

18  TomorrowNow ("SAP TN") raising the issue of whether it needed an Oracle database license to

19  SAP AG employees.  Declaration of Chad Russell in Support of Oracle's Motion to Amend

20  Complaint ("Russell Decl."), Dkt. 354, at ¶¶ 18-19, 22 & Exs. M-O.  SAP is one of the world's

21  largest business software companies, and is licensed to sell Oracle database licenses to its own

---

[2] Defendants cite to *St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l, Inc.*, 245 Fed. Appx. 588 (9th Cir. 2007), to that argue this Court should exercise broader discretion to deny Oracle's motion given that Oracle has previously amended its complaint.  *See* Opp. at 15.  That case and the ones that it cites simply stand for the proposition that courts may deny leave to amend following "repeated failure to cure deficiencies by amendments previously allowed."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Given that Oracle's present amendments are neither futile nor repetitive (and Defendants do not so argue), Oracle's prior amendments should not count against it.

[3] The *Allen* and *Robertson* cases relied upon by Defendants also involve new theories, not new facts.  *See Allen v. Beverly Hills*, 911 F.2d 367, 373-374 (9th Cir. 1990); *see also Robertson v. Qadri*, No. 06-4624, 2009 U.S. Dist. LEXIS 3790, at *6 (N.D. Cal. Jan. 15, 2009).

1 customers.  SAP certainly knew the significance of this inquiry, yet apparently chose to ignore it.

2 Before filing its motion, Oracle even asked SAP if it believed it *had* a license to the SAP TN

3 database versions in use, and SAP did not identify any such license.  Howard Decl., ¶ 10 & Ex. E at

4 2 (highlighting supplied).

5      *Knowledge Management Amendments*.  Defendants can claim no surprise for two reasons.

6 First, as Defendants acknowledge, Oracle obtained and pled Knowledge Management copyright

7 registrations in its First Amended Complaint (the first one to include any copyright registrations),

8 based on the limited downloads reflected in Oracle's own internet logs.  *See* Lanier Decl., ¶¶ 2, 6.

9 Second, Defendants also knew they had downloaded these Knowledge Management materials by

10 the thousands, for years.  Oracle still does not have Defendants' complete production of these files,

11 but it registered databases to include all of them pursuant to Copyright Office rules and regulations

12 This is a reasonable and efficient approach to registration.  Had Oracle sought to amend in

13 piecemeal fashion with each successive, incomplete production, Defendants would have criticized

14 Oracle on that basis, too.

15      *PeopleSoft Amendments*.  Defendants can certainly claim no surprise by the inclusion of the

16 PeopleSoft registrations because they have moved to compel information about them in discovery,

17 which resulted in the exchange before Judge Laporte that both sides cite.  Defendants argued to

18 Judge Laporte that the absence of hundreds of registrations precludes liability.  Now, they claim

19 they will be prejudiced if Oracle is permitted to eliminate this purported "technicality."  *See* Russell

20 Decl., ¶¶ 15, 17 & Exs. J at 9:13-17, L at 4:4-8.  This dispute centers around the relevance of Oracle

21 code that exists in an earlier work, then survives in a later derivative registered work that

22 Defendants copied.  Defendants, again without legal citation, contend that Oracle may *not* recover

23 for infringement of *any* code that existed in a prior registered work, if not pled in the Complaint.

24 Opp. at 23:10-13; Russell Decl., ¶ 15 & Ex. J at 9:13-17.  Pursuant to this argument, Defendants

25 *have actually sought production* of, and extensive, burdensome-to-collect information about, *these*

26 *very copyright registrations* in motion practice before Judge Laporte.  *See, e.g.*, Howard Decl., ¶ 12

27 & Ex. F at 14:3-24.  Defendants' argument would create a disaster in copyright litigation.  If true, a

28 rightsholder would be forced into a Hobson's choice of potentially violating Rule 11 by asserting

software it had no basis to think had been copied, or missing important claims by asserting the version it did think was copied but which contained pre-existing code from earlier versions. Judge Laporte has made clear that the trial Court will resolve the merits of this dispute. Until then, in an abundance of caution, and in an effort to eliminate this issue, Oracle has surgically selected, from a menu of literally hundreds of registrations potentially implicated by this argument, *twenty* legacy PeopleSoft copyright registrations.[4] In no case can Defendants claim a shred of surprise: While Oracle has learned through discovery, Defendants have always known what software programs they infringed.

### 2. The Amendments Add Conforming Facts, Not Theories Or Parties

Regarding the second part of the prejudice test, these amendments add only facts, not new – much less *radically* new – legal theories. *Cf. Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1155-1157 (N.D. Cal. 2008) (denying leave to amend where plaintiff's attempt to re-center its entire theory of liability based on new theories was a prejudicial surprise). The Database Amendments account for Defendants' apparently unlicensed use of Oracle's database software to support the customers for whom they provided service on Oracle's PeopleSoft and J.D. Edwards applications software. The Knowledge Management Amendments track the files on Defendants' own computers that consist of a massive amount of downloads of these types of documents. The PeopleSoft Amendments merely relate to certain programs that the Parties have always known Oracle has owned and that are all earlier or related versions of PeopleSoft software already in the Complaint. Each conforms to the evidence here. See Howard Decl., ¶ 2 & Ex. A.

### 3. Oracle's Amendment Is Timely

Timeliness is the last prong of the prejudice test. Defendants argue that the additions would require "extensive additional discovery" which Defendants claim they have no time to do. Opp. at 22. The timely nature of the amendment argument belies this claim, as do Defendants' own recent motions to compel. ***First***, as established above in Section II, the liberal amendment deadline has

---

[4] In the highly unlikely event that Defendants prevail on their argument, and only if absolutely necessary, Oracle reserves the right to move to amend to conform to proof at trial regarding other registrations that Defendants may use in the future to try to preclude Oracle's claims on the merits.

1  not passed.  Further, Oracle informed Defendants of its desire to amend the complaint to add these
2  conforming allegations beginning in March 2009.  Lanier Decl., ¶¶ 46-47.  Oracle sought leave
3  from the Court to amend its complaint in May, and brought this contested motion to amend a full
4  month and a half earlier than the amendment schedule set out by the Court in the June 11 Order.
5  June 11 Order, Dkt. 325, at 2:20-22.  Defendants cannot reasonably complain about the timeliness
6  of the amendment.  These facts alone satisfy the timeliness prong of the prejudice standard.
7  *Second*, from the time Oracle raised these amendments with Defendants, they had eight months to
8  take discovery.  From now, they have four months and approximately 300 remaining deposition
9  hours.  Fuchs Decl., ¶¶ 2-3.  Given the limited scope of the amendments, Defendants have plenty of
10 time left and Oracle has agreed to sharp limits on the related discovery.[5]  *Third*, it is far from clear
11 Defendants would take the discovery they list.  They have taken little technical discovery to date,
12 and need little for these amendments.  Howard Decl., ¶ 3.  Though they complain about Oracle's
13 production of technical and financial materials (*see, e.g.*, Opp. at 23:3-4, 8-15), the PeopleSoft and
14 Knowledge Management amendments relate to the same product lines already in the case.  *See*
15 Motion to Amend Complaint ("Mot."), Ex. A, Dkt. 348-1, at ¶ 158.  The evidence of ownership and
16 authorship already produced by Oracle applies equally to these additional copyright registrations.
17 Howard Decl., ¶¶ 13-14.  There is no substantial category of additional discovery required that
18 Defendants do not already have or which they have not already pursued in motion practice with
19 Judge Laporte (nor do Defendants raise any in their Opposition).
20     Defendants' claims of prejudice relating to the two Knowledge Management registrations
21 fail for an additional reason.  Because these registrations are for automated databases, Defendants
22 claim that they would "require critical additional discovery (including information related to
23 whether these registrations are even proper)."  *See* Opp. at 19:20-20:2; *id.* at 22:14-16.  Not so.
24 Registration of automated databases is specifically permitted by regulation.  *See* 37 C.F.R.

---

[5] When Oracle proposed the Database Amendments in meet and confer, it voluntarily agreed to drastic limits on the related discovery.  *See* Howard Decl., ¶ 10 & Ex. E at 2.  These limits amount t will o far less than what Oracle would get as a matter of right in a newly-filed case, though Oracle is willing to go that route, too, since Defendants claim this is entirely new and unrelated matter.

1  § 202.3(b)(5) (discussing automated databases).  These registrations are the only efficient way to
2  account for the voluminous knowledge management materials Defendants downloaded.
3        Further, Defendants' late and voluminous discovery, misleading discovery responses, and
4  the sheer effort required to analyze these materials, all contributed to the timing here.  Mot. at 7-13.
5  Even so, sufficient time remains for discovery on these known facts.

6        **B.**    **Oracle Has Not Delayed And Has Acted In Good Faith**

7        Delay alone does not justify denial of leave to amend.  Denial occurs "only where prejudice
8  is shown or the movant acts in bad faith."  *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir.
9  1973).  Defendants' cases regarding delay stand for the unremarkable proposition that severe delay
10 combined with severe bad faith or undue prejudice can justify denial.  *See, e.g.*, *Lockheed Martin*
11 *Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (plaintiff waited four months
12 after the cut-off for leave to amend without explanation for the delay).  In contrast, Oracle brought
13 these new proposed amendments promptly to Defendants' attention beginning in March when it had
14 sufficient cause to add them to Oracle's complaint.

15       **1.**    **Oracle's Review Of Defendants' Tardy And Large Productions Does Not Prove Delay**
16

17       Defendants' argument that Oracle should have figured these amendments out sooner fails as
18 to each proposed amendment, for related reasons.
19       *Database Amendments.*  Defendants contend Oracle had access to documents and data from
20 which Oracle could have earlier discovered the relevance of this software.  Opp. at 13:8-14:24.
21 Simply put, Oracle had no reason to believe that Defendants had violated Oracle's database
22 software licenses and copyrights prior to investigating emails discovered in February 2009 and
23 taking the April 2009 deposition of a former SAP TN employee.  Until then, Oracle believed the
24 opposite.  SAP resells Oracle database licenses to its own customers, so it has licenses, and knows
25 how to obtain them from Oracle.  The revelation that Defendants would ignore the responsibilities
26 that come with that relationship and knowingly use unlicensed versions of Oracle's database to
27 support their customers running Oracle's PeopleSoft and J.D. Edwards software truly shocked
28 Oracle.  Mot. at 12:15-14:3.  Defendants make two erroneous arguments to suggest that Oracle

1  could have learned about this additional software infringement earlier. First, Defendants say that
2  Oracle should have seized on two emails (among nearly 8 million produced documents) and
3  unrelated, vague (and in retrospect, misleading) 30(b)(6) testimony a year ago. *See id*. at 13:8-
4  14:24. Second, Defendants say Oracle could have figured this claim out earlier by reviewing
5  Encase images within the terabytes of "Data Warehouse" materials. *Id.* at 13:23-25. Both
6  arguments fail.

7  First, documents "buried" in productions *less than one percent* the size of this one do not
8  constitute "notice" or prevent good cause to amend under Rule 16. *See e.g.*, *Spano v. The Boeing*
9  *Co.*, 2007 WL 4390366, *3-4 (S.D. Ill. 2007) (finding good cause and no lack of diligence on
10 plaintiff's part to add entirely new claims after a deadline under Rule 16 because "each of the new
11 claims are of the kind which are made manifest only after significant discovery" and the
12 "information [needed to amend] was buried within the 56,000 pages of documents provided to
13 Plaintiffs, and could not have been known to Plaintiffs until they thoroughly reviewed the
14 documents."). Indeed, in opposing Oracle's recent motion to compel, and in clawing back hundreds
15 of documents, Defendants admit they cannot effectively review the same records in the same
16 amount of time. MTC Opp. at 12 n.16 (contending Defendants should not have to review their own
17 records because doing so "would require thousands of man hours."); Howard Decl., ¶¶ 15-16.
18 (Defendants have clawed back over 400 documents, some of which they "reviewed" and produced
19 over eighteen months earlier). In addition, the Rule 30(b)(6) testimony that Defendants say should
20 have given Oracle notice did not. *See* Opp. at 8:14-17. Oracle expressly limited the notice and the
21 questions to PeopleSoft and J.D. Edwards software applications because those were the claims in
22 the case. Howard Decl., ¶ 4 & Ex. B at 1:21-24, 3:11-6:6.

23 Second, awareness of the existence of Oracle database files is not awareness of the failure to
24 license those databases. Defendants tout that, as part of the Data Warehouse review, Oracle could
25 review certain "Encase" images that relate to Oracle database software. *See* Opp. at 9:1-3; Fuchs
26 Decl., ¶ 33. This argument fails because Oracle had no reason to look for evidence of database
27 infringement and had made no claims about it. It also fails because, contrary to Defendants' claim,
28 it is *not possible* to examine an Oracle database file through "Encase" so as to determine whether a

1  database, comprising many such files, was licensed.[6]  Howard Decl., ¶¶ 11, 17.  In sum, Oracle did
2  not have a sufficient basis to bring these claims until it received testimony about these documents
3  during the April 2009 deposition, which happened concurrent with Oracle's providing the emails it
4  had found to Defendants and raising the prospect of adding the Database Amendments.  That is
5  hardly delay.

6      *PeopleSoft and Knowledge Management Amendments.*  The argument that Oracle should
7  have figured out these amendments sooner fails for the same reasons Defendants themselves have
8  trouble reviewing the same set of material (*see* above) – the review is complex, time consuming,
9  and constantly changes.  Defendants accurately state that *initial* productions of SAS, BakTrak, and
10  DotProject took place in 2007 or 2008.  *See* Opp. at 6:1-6.  This is irrelevant.  These early
11  productions did not include the reviewable files Oracle needed to analyze Defendants' activities.
12  Defendants acknowledge that production of actual, reviewable *files* from the Data Warehouse (as
13  opposed to "metadata reports" that Oracle cannot review for content) only *began* in October 2008
14  and continues to this day.  *See* Fuchs Decl., ¶¶ 11, 16.  Oracle has reviewed these materials as it has
15  received them.  It required a forced march to do even preliminary review between October 2008 and
16  April 2009, involving multiple terabytes of data, much of which rolled in through May 2009.  *See*
17  Mot. at 9:4-10:20; Russell Decl., ¶¶ 12-13.; Declaration of Kevin Mandia in Support of Motion to
18  Amend ("Mandia Decl."), Dkt. 349, ¶ 4; Fuchs Decl., ¶ 14.  Defendants, who agree that these
19  productions are the best source of information regarding SAP TN's service activities, have no basis
20  to claim that Oracle has not reviewed all relevant documents in a timely fashion when production of
21  those documents continues to this day.  *See* Opp. at 5:14-16; Mandia Decl., ¶¶ 6-7).

22      Defendants' lone example of CRM 8.4 SP1 software illustrates the challenges.  Opp. at
23  12:3-10.  In attempting to show that Oracle should have known of TN's support of CRM 8.4 SP1
24  earlier, Defendants cite to a June 8, 2007 contract with The Longaberger Company.  *Id.*  Curiously,

---

[6] Reviewing through Encase allows Oracle to look at the files and folders on certain of Defendants' servers, including metadata about those files and folders such as date created.  A user can examine text files and certain common file types (primarily PDFs and Microsoft Office documents).  For other file types, a user can only see the file contents as raw binary or hexadecimal code, largely unreadable even to most experts.  Howard Decl., ¶ 17.

| | |
|---|---|
| 1 | Defendants never mentioned this software or this contract in their response to Interrogatory No. 12 |
| 2 | (supplemented on May 22, 2009), which asks Defendants to identify the specific Oracle software |
| 3 | versions of which they made local copies. Russell Decl., ¶ 3 & Ex. B. Further, this customer |
| 4 | Defendants selected as their illustration *is not even present* in the December 2007 version of SAS |
| 5 | produced by Defendants and on which they *do* rely as part of their Rule 33(d) response to |
| 6 | Interrogatory No. 12. *Id.*; Howard Decl., ¶ 18. Appendix A to the contract in question, a portion of |
| 7 | which Defendants filed with the Court, reveals SAP TN's support for HRMS 8.3 SP1 and FSCM |
| 8 | 8.4 SP1, but *does not refer to CRM products or modules at all. See* Fuchs Decl., ¶ 36 & Ex. L-2. |
| 9 | Oracle would have no way to know from this document, or the original SAS production, that |
| 10 | Defendants infringed CRM 8.4 SP1. *See id.* If Defendants get their own example wrong, they |
| 11 | cannot accuse Oracle of bad faith or delay for the time it took to review these files. |

### 2. Oracle Has Only Pled Registrations Based On Evidence Of Infringement

| | |
|---|---|
| 13 | Defendants argue that Oracle should have earlier asserted the historic PeopleSoft |
| 14 | registrations and newly-registered Knowledge Management because they relate to material "fully |
| 15 | congruent" with the facts in earlier complaints so should have been previously asserted. Opp. at |
| 16 | 11:21-13:6. In support, Defendants first contend that Oracle made contradictory statements about |
| 17 | these registrations to Judge Laporte. Opp. at 15:22-17:3. Oracle explained this issue above. *See* |
| 18 | Sec. III.A.1. Oracle did state, and still believes, that adding *all* registrations (hundreds of them) |
| 19 | implicated by Defendants' unsupported legal argument regarding pre-existing code would overload |
| 20 | the case. Oracle does not seek that amendment here. However, Oracle made that statement in |
| 21 | opposing Defendants' attempts to obtain discovery regarding the very software that Oracle does |
| 22 | seek to add. Defendants apparently miss the irony – they want to get the discovery, but preclude |
| 23 | Oracle from amending to add the software they seek to discover. They base this argument not on |
| 24 | fairness, or deciding cases on the merits, but on an unsupported "gotcha" legal theory hoping to |
| 25 | avoid liability for blatant copyright infringement on a technicality. |
| 26 | In addition, of the PeopleSoft Amendments, Oracle did not include six of the twenty sooner |
| 27 | because it saw no evidence that these precise software versions existed on Defendants' computers. |
| 28 | *Compare, e.g.*, Howard Decl., ¶ 2 & Ex. A (specifying Oracle's review of recent discovery as one |

basis for adding six PeopleSoft registrations) *with* Fuchs Decl., ¶ 24 (quoting SAP TN's December 2007 list of software applications for which SAP TN had created PeopleSoft local environments, on which list the six registrations do not appear).  Defendants do not dispute that.  It cannot constitute a lack of diligence to conservatively omit from the Complaint six versions of PeopleSoft software applications (and fourteen software modules) where no basis in fact appeared to support their inclusion, and where the logical extreme of *Defendants' argument, not Oracle's*, would require the "overload" of hundreds of additional registrations.[7]  Similarly, as to the Knowledge Management registrations, it cannot constitute a lack of diligence to register additional knowledge management solutions only when reasonably certain of the scope of Defendants' improper downloading of those solutions.[8]  As Defendants acknowledge, Oracle's current complaint already lists a number of knowledge management solutions and historic PeopleSoft copyrights that Defendants infringed.  The additional similar registrations Oracle seeks to add here simply conform the complaint to the continuing discovery of the scope of Defendants' illegal conduct, of which both sides are aware.

### 3. Defendants' Opposition Confirms That There Is No Bad Faith Here

Defendants next argue that Oracle's bad faith should preclude this amendment.  This argument fails on the law and the facts.  First, none of the five cases Defendants cite, where courts denied leave to amend based on bad faith, apply here.  Opp. at 14:27-15:19.  Courts find bad faith when plaintiffs, faced with a summary judgment motion or case dismissal, move to amend as a way to avoid the motion.  Three of the five cases Defendants cite where courts found bad faith involved such scenarios.  *See, e.g.*, *Lockheed Martin Corp.*, 194 F.3d at 986 (plaintiff, faced with a summary

---

[7] Defendants cite to a handful of old emails containing general statements about SAP TN's activities with no reference to specific software.  Opp. at 6:25-7:4.  These emails do not prove notice to Oracle of actual infringement such as what it alleges in its Complaint, nor do Defendants argue futility based on them.  The references to Siebel (Pomeroy), in particular, relate only to the *stipulated* amendment, not these contested amendments.

[8] Defendants correctly state that many of the downloaded materials were found on one server produced in October 2008.  Opp. at 6:10-14.  It obviously took time to review the materials on that server.  However, Defendants' own discovery responses list approximately *33* additional repositories of downloaded materials, several of which Defendants still have not produced.  Declaration of Joshua L. Fuchs in Support of MTD Opp., ¶ 17 & Ex. E, Dkt. 337-27, at 29:15-32:10. *Eight* of these were identified only on May 22, 2009. *Id.* at 31:17-32:10.  Defendants' argument that Oracle should have (or even could have) fully analyzed the scope of SAP TN's downloads in 2007 or 2008, *see* Opp. at 12:11-20, ignores the timing of these disclosures.

1  judgment motion, sought to amend its complaint to add causes of action on which discovery had
2  not been undertaken); *Robertson v. Qadri*, No. 06-4624, 2009 U.S. Dist. LEXIS 3790, at *5-8
3  (N.D. Cal. Jan. 15, 2009) (plaintiff, only after facing dismissal for lack of diversity jurisdiction,
4  tried to add new theories); *Strickland v. Jewell*, 562 F. Supp. 2d 661, 668-669 (M.D.N.C. 2007)
5  (plaintiff sought leave to amend eleven months after the deadline had passed and more than one
6  year after defendants had filed summary judgment).  Courts also find bad faith when an amendment
7  relies on facts made available to plaintiff at an earlier time when it could have sought amendment
8  and plaintiff chose not to amend without a justifiable explanation.[9]  By contrast, Oracle brought this
9  amendment to light following substantial discovery that disclosed additional copyright
10 infringement and new discovery arguments by Defendants, and which conforms the complaint to
11 that proof.  Defendants' bad faith cases are inapposite.
12      Second, Defendants do not identify any actual conduct by Oracle that constitutes bad faith.
13 Opp. at 15:7-20:22.  Defendants first argue that Oracle misrepresented these copyrights before
14 Judge Laporte.  Oracle refuted this misleading argument above, *see* Sec. III.B.2.  They next argue
15 that Oracle misstates the sequence of Defendants' document production (and engaged in a pattern
16 of related lies).  Oracle also disposed of this argument above, *see* Secs. I, III.B.1.  Defendants
17 finally claim that these are not conforming amendments, but rather entirely new claims.  Oracle
18 also addressed this argument above, *see* Sec. III.A.2.  As Defendants point out at length, all except
19 the Database Amendments relate to software already in the case, and on which Defendants have
20 conducted discovery.  These are conforming amendments, which exemplify the cautious
21 amendment approach that Oracle has followed in this case.

22 **IV.   CONCLUSION**
23      Oracle respectfully requests leave to file its Fourth Amended Complaint attached to its Motion
24 as Exhibit A, Dkt. 348-1.  If the Court denies this Motion, Oracle respectfully requests the Court
25 allow Oracle to file the unopposed Stipulated Amendments.

26
27 [9] *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *Brown v. Wireless Networks, Inc.*, No. C 07-4301, 2008 U.S. Dist. LEXIS 36472, at *4-7 (N.D. Cal. Apr. 24, 2008).
28

| | | |
|---|---|---|
| 1 | DATED:  August 5, 2009 | Bingham McCutchen LLP |
| 2 | | |
| 3 | | By: ____/s/ Geoffrey M. Howard____ |
| 4 | | Geoffrey M. Howard |
| | | Attorneys for Plaintiffs |
| 5 | | Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited |

16   Case No. 07-CV-01658 PJH (EDL)

ORACLE'S REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT