Pages 1 - 59

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

        BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE

ORACLE CORPORATION,                )
                                   )
               Plaintiff,          )
                                   )
  VS.                              )NO. C 07-1658
                                   )
SAP AG, et al,                     )
                                   )San Francisco, California
               Defendants.         )Tuesday
                                   )August 4, 2009
_____)2:00 p.m.


                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:            BINGHAM, MCCUTCHEN LLP
                          Three Embarcadero Center
                          San Francisco, California 94111-4067
                   BY:    **GEOFFREY M. HOWARD, ESQ.**
                          **JOHN POLITO, ESQ.**
                          **ZACHARY J. ALINDER, ESQ.**




**For Defendants**:           JONES DAY
                          717 Texas
                          Suite 300
                          Houston, Texas 77002
                   BY:    **SCOTT W. COWAN, ESQ.**

                          JONES DAY
                          1755 Embarcadero Road
                          Palo Alto, California 94303
                   BY:    **JACQUELINE K.S. LEE, ESQ.**
                          **HEATHER FUGITT, ESQ.**


*Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

2

**P R O C E E D I N G S**

1

2  **AUGUST 4, 2009**                                      **2:06 p.m.**

3

4         **THE CLERK:**  Calling Civil 07-1658, Oracle

5  Corporation versus SAP AG, et al.

6         Counsel, please state your appearances for the

7  record.

8         **MR. HOWARD:**  Good afternoon, your Honor.  Geoff

9  Howard for Oracle.

10        With me, Zach Alinder, John Polito and Holly House.

11  And Jennifer Boss may arrive mid-proceeding.

12        **MR. COWAN:**  Good afternoon, your Honor.  Scott

13  Cowan for defendants.  With me is Jackie Lee and Heather

14  Fugitt, also associates from our office, as well as a summer

15  associate, Dara Lettinson, is here today as well.

16        **THE COURT:**  There are still a few summer

17  associates?

18        **MR. COWAN:**  Just a few.  We are on our last weeks.

19        **THE COURT:**  All right.  Well, go ahead.  I know

20  there are some things you want to present to me I think.  I'm

21  not sure which one of you.  I can't remember.

22        **MR. COWAN:**  Your Honor, in terms of a formal

23  presentation, I don't think -- we hadn't intended on doing

24  any kind of dog and pony, if you will.  If it aids any

25  questions you may have or any analysis you may do during the

1  hearing, we are prepared to do that.

2          There may be a couple points where it makes sense,

3  but if the Court has questions regarding the papers or would

4  like the parties to present on the motions, we can continue

5  to --

6          **THE COURT:**  I know you brought some equipment in.

7  I think you were going to do some kind of demonstration, or

8  not?

9          **MR. COWAN:**  I'm prepared to do that, depending what

10  the Court's questions are with respect to the SAS system, for

11  example.

12          I have a PowerPoint with respect to some of the

13  download issues.  I certainly could go straight into that.

14          I know the Court's time is limited.  I didn't want

15  to go through all that if you don't have questions for it.

16          **MR. HOWARD:**  And we just filed ours, your Honor,

17  because we didn't know what they were going to do and we

18  wanted to have the ability to say something in response.

19          **THE COURT:**  Okay.  Well, I have to say, despite,

20  you know, lots and lots of paper, I find it very difficult to

21  tell who is right on these questions.  And, you know, maybe

22  that's -- I would like to think that's not a statement about

23  me, but maybe it is a statement about the system at this

24  point.

25          You know, I will give you some thoughts, but, yes,

1  certainly I do have questions and I believe it's difficult

2  for a judge to judge.

3         For on 13, interrogatory 13, I would agree that

4  it's limited to the downloads referred to in the answer;

5  i.e., the downloads beyond those as set forth in the answer.

6  It's not, you know, where did they come from and things like

7  that, but even as so interpreted, that still leaves the

8  question, you know, is, rule -- I don't think including but

9  not limited to broadens it beyond that.

10         But that still leaves the question of, you know, is

11  Rule 33(d) the appropriate approach?  Is it more burdensome

12  on one side or the other, or not?

13         Here is a very simple question.  What is an ESU?

14         **MR. HOWARD:**  An ESU is a -- one of the support

15  files that is packaged up by Oracle and sent out to customers

16  that provides update information, has code within it.  It has

17  other objects within it, but it's one of these downloadable

18  support patch files that gets sent out that customers then

19  apply to their underlying software.

20         **MR. COWAN:**  And, your Honor, that is actually one

21  thing I do have some graphics on that may help the Court

22  understand what an ESU is.

23         You may recall, the parties originally did a bit of

24  a dog and pony, as I referenced earlier, back in May of 2008.

25  We have some of those same slides, I think, back then

1  probably then didn't make a lot of sense both to the Court

2  and to the parties in some ways, because we certainly learned

3  a lot more since then as well.

4        But if you have time now, I've got a PowerPoint

5  presentation, but I also have a little booklet that you can

6  follow along with the pages numbers that may help.

7        **THE COURT:**  Probably so.  So the extent that the

8  defendant is saying the download request forms, which are

9  part of response to 10, would -- interrogatory 10, would also

10  apply to 13, I'm not really sure what -- you know, how the

11  download request forms do or don't -- to what extent they do

12  or don't cover the answer to what material beyond those

13  licensed to a particular customer may have been downloaded.

14        In other words, it sounds to me as if a download

15  request form has some of the information, but whether it has

16  all of them, I have no idea really.

17        Then the defendants then raise the issue, Well, we

18  can't provide the level of detail you ask for, exactly which

19  downloads were beyond what the customers said they were

20  entitled to without product mapping information.  I don't

21  know if I understand that whole issue.  And the plaintiff, as

22  I saw it, didn't -- I might have missed it, but didn't seem

23  to really respond to that.

24        If it's needed and no -- and neither the plaintiff

25  can't or won't, I don't know which, give it to the

1  defendants, then that does hobble the defendants apparently.

2          Now, the plaintiffs raise a good point, or a

3  seemingly good point.  What information do defendants have --

4  and this is certainly a question I want answered -- that led

5  you to be able to answer insofar as you did and how did you

6  get to that point?

7          And I think, you know, that raises a question,

8  well, exactly how did you get there?  And that is certainly

9  something the plaintiffs are entitled to know.  Then does

10  that lead us anywhere further to answer the question of

11  whether there is more that can be done.

12          **MR. COWAN:**  Do you want me to answer that?  I'm

13  making notes, if I can certainly answer that now.

14          **THE COURT:**  Let me get through 13 and let me see if

15  I have anything else.

16          So then the plaintiffs come up with a proposal,

17  which is what I just asked you an explanation of how you

18  reached the view, both -- I think in the answer to the

19  interrogatory and then more general in the press release that

20  certain things weren't authorized.  And if you can't say any

21  more essentially, say so.

22          So those -- I think maybe it's enough to start with

23  13, but those are all to me issues that I don't -- either

24  don't know the answer to or don't really understand.

25          **MR. HOWARD:**  May I start then, your Honor, since I

1  think most of those are directed at us?

2          Taking your Honor's interpretation of 13, that it's

3  limited to the answer -- to Paragraph 15 of the answer, that,

4  then, by our reading of Paragraph 15 would then extend to all

5  downloads that they had concluded were inappropriately

6  downloaded.

7          And so the question then is:  What are they?  And

8  by file, because this is -- this is our basic proof.  If we

9  have to prove that downloads were taken inappropriately, and

10  they have identified ones that were, that really goes to the

11  very basic facts of the case.

12          There is then -- we tried to come up with in both

13  13 and 14 some creative ideas for how to cut through this.

14  And the ideas for 13, which sounds like your Honor has picked

15  up on, is say what you did and which forms you can identify,

16  with what specificity you can identify them.  And then I

17  think there is one additional step that is a crucial one and

18  it goes to the mapping question, so let me answer it.

19          The other part of our proposal is that they said

20  that they could not identify the impropriety of additional

21  downloads because they -- and the reason is important.  It's

22  because they cannot identify the credentials, the customer

23  log-in credentials that were used to download any particular

24  file.

25          If that's true, and it appears to be because they

1  have said it, the mapping information -- which we have

2  provided by the way, but the mapping information is

3  irrelevant, and let me explain why.

4          The point of the mapping is that once you have

5  identified a file, an ESU for example, you need to be able to

6  link that ESU to a particular licensed piece of software.

7  The ESU's have numbers that identify them.  And you have to

8  open the ESU in order to see what information it contains and

9  then you have to map, which is where the word comes from,

10  that coding information to a particular piece of software.

11          We have given them the information --

12          **THE COURT:**  And for the reason that, then, you know

13  what specific product was downloaded without permission?

14          **MR. HOWARD:**  Exactly.  Because then you -- once you

15  know what piece of software the ESU correlates to, provided

16  you know the credential, you can then assess was the customer

17  whose credentials was used, were they licensed to that piece

18  of software to which the ESU correlates?

19          **THE COURT:**  Okay.  And "credential" being what?

20          **MR. HOWARD:**  The log-in I.D.  So you log in -- at

21  the opening screen of the website you put in an user name and

22  a password, and that user name and password is what I mean

23  by -- is what I'm including in the term "credential."

24          **THE COURT:**  So the Oracle system was such that you

25  -- if you had a password and user name, you could log in and

1  then get access to things you weren't entitled to?

2          **MR. HOWARD:**  As long as you clicked on the terms of

3  use agreement saying you would not do that, yes.

4          But, yes, you could go in there, and that's so that

5  customers can go in there and find what they want according

6  to the code that applies to their software.

7          So now just circling back to the credential issue,

8  if you don't know what credential was used to take that ESU,

9  it doesn't matter what software it maps to because you can

10 never match it to any particular customer's software.  And

11 all we are saying is if that's true, please say so because

12 that is really important information for us to have, that you

13 can't figure it out from your own records because you didn't

14 keep track of the credentials that you used to take the

15 various files that are now sitting on the computers.

16         **THE COURT:**  So I'm not -- I think this is the first

17 time you have probably tried to explain it to me.  I'm not

18 sure that I understand it.

19         You are saying the customer log-in basically gives

20 a customer access to anything, even though it may have only

21 licensed half of the products that it can then get access to.

22         And if you don't know -- so if you don't know the

23 customer log-in, you can't, therefore, just figure out what

24 it was or wasn't entitled to?

25         **MR. HOWARD:**  Right.  You can figure out on a

1   customer basis what they're entitled to because you have

2   their license agreements and you know what software.

3          And so for any given ESU on Tomorrow Now system,

4   you know whether Customer A or B was licensed to that

5   software, but what you can't do is know whether that ESU was

6   taken improperly or not because the propriety of the taking

7   is tied to the credential that you use when you logged into

8   the system to download that file.

9          **THE COURT:**  Well, the customer's identity.

10         **MR. HOWARD:**  Exactly.

11         **THE COURT:**  So you are saying if you don't know

12  from which customer you downloaded something, you can't tell

13  whether they had the right to it or not.

14         **MR. HOWARD:**  That's what they are saying, that's

15  right.  That's what I understand them to be saying in their

16  brief.

17         They say it's technically impossible to identify

18  what customer -- what customer user name and password was

19  used to take any particular downloaded file that is now

20  sitting on their computer systems.  And our review of their

21  records and the testimony appears to bear that out.  You

22  can't -- you can't go pick a downloaded file on their server

23  and know what credential was used to take that file.

24         **THE COURT:**  Okay.

25         **MR. COWAN:**  It's a hyper technical distinction that

1  he is making and trying to expand that into the whole mapping

2  issue, and let me explain.

3            Tomorrow Now had records, and we have produced

4  those records, as to what log-in, what customer connection

5  user name and password was given by the customer to Tomorrow

6  Now.  And they have obtained testimony indicating -- and a

7  whole chain of records, from email communication from the

8  client giving the password and log-in, the password log-in

9  name, put on the request forms they used to do the downloads.

10           So we do have records of customer names and

11  customer passwords and customer user names being used for

12  specific downloading activity.

13           What we don't have, nor do they have any way to do

14  it either, once a file exists anywhere on our system there is

15  no electronic way, no technical way, there is no tag on that

16  file that says this file was downloaded for that customer.

17           We do know the manner in which the downloads were

18  kept by Tomorrow Now, that they were segregated by customers.

19  When they were downloaded, they were put in separate customer

20  folders and that's where I think some of the show-and-tell

21  may help explain that process and help explain what we are

22  talking about on the issues.

23           So I disagree vehemently with Mr. Howard's

24  suggestion that there is no way to say for a given file --

25  there is no evidence to suggest for a given file what

1   customer's user name and password were used.

2          To the contrary.  We have got plenty of documentary

3   evidence.  There is just no electronic tag or technical way

4   now to go back and look at those files in the literally

5   millions of files and say for each file which -- for that

6   specific file taken in isolation to have some electronic

7   proof through an electronic tag on the file itself.  That was

8   the only point we made in the brief and that point is tied to

9   the mapping issue.

10          If the Court would allow, I think now is probably a

11   good time for me to get into some of the graphics.

12          **THE COURT:**  Okay.  But let me just -- I do think

13   so, but let me just ask you to make sure I follow on what you

14   said.

15          You are saying, you have a customer request form

16   to download certain things.  Okay.  You download them.  Then

17   the way you would be able to now say you downloaded for

18   Customer A and not for Customer B, this is kept only in

19   Customer A's file.

20          **MR. COWAN:**  Correct.

21          **THE COURT:**  So you can identify it by seeing whose

22   file it's in.

23          **MR. COWAN:**  Correct.

24          **THE COURT:**  So I take it by that you are saying you

25   didn't take something Customer A was authorized to get, but

1  Customer B wasn't, and then given to Customer B.

2          **MR. COWAN:**  I can't say with certainty that that

3  didn't happen in any instance and I think there has been some

4  evidence that in some instances it did happen.

5          But -- but -- and we can show and we have

6  established in the case that for a large portion of these

7  downloads, they were done on a customer-by-customer basis

8  using that customer's password and log-in and then stored in

9  a separate location.  There are groups of downloads that are

10 stored on a non-customer specific basis as well.

11         **MR. HOWARD:**  Your Honor, that last point is

12 important and the factual statement that the downloads were

13 segregated by customer is of recent vintage.

14         For many years downloads were downloaded into what

15 they called the master library, where they were not kept

16 according to customer, for JD Edwards or PeopleSoft.  And

17 that continued even after SAP acquired Tomorrow Now.

18         Now, it is true that in the last year and a half or

19 so before Oracle sued, there had been a change in policy, but

20 only at that point, that downloads were downloaded into

21 customer specific folders.

22         There was also an effort to dreg up some of those

23 master libraries into couple specific folders.  But that

24 doesn't help us because nobody knows whose credentials were

25 used to take those downloads in the first place when they

1  were then assigned into the various customer specific

2  folders.

3          So the customer specific folder fact doesn't answer

4  the question here.  There were many downloads that were taken

5  before those were in place and even after they were in place,

6  there were many, many downloads that we know were just put in

7  there that were not taken with that customer's credential.

8          **THE COURT:**  Well, if they weren't taken with a

9  customer credential, but then they were assigned to -- they

10  were taken with Customer A's credential and later taken out

11  of the master file and stuck in Customer B's file is what

12  you're saying.

13          **MR. HOWARD:**  That's what happened.

14          **THE COURT:**  According to what?  According to the

15  fact that Couple B was allowed to have them?

16          **MR. HOWARD:**  No.  They had one criteria for making

17  that decision, and that was the date of the file.  So they

18  decided that -- that if the file existed on Oracle's system

19  at a time when Customer B could have downloaded it, then it

20  was okay to copy it over into Customer B's folder even though

21  they did not know and likely had not he ever downloaded it

22  with Customer B's credential at the time that Customer B was

23  licensed to go into the site and download it.  So it was

24  purely the date of the file that was the criteria that they

25  used.

1          **MR. COWAN:**  But in answer to the Court's question,

2    there was some criteria when they -- because Mr. Howard is

3    correct.  There was a period of time when the downloads --

4    you had to separate this between PeopleSoft and JD Edwards

5    because the time is different and the process is sort of a

6    little different.

7          Speaking in general terms where there were master

8    libraries, but JD Edwards, that period was a shorter period

9    of time than PeopleSoft overall.  And they did use a process

10   similar to what Mr. Howard just described to try to get

11   downloads in -- copy the downloads into customer specific

12   folders in a way that they thought the customer was permitted

13   to have those downloads by using criteria such as date and --

14   maintenance and dates.

15         But going back to the interrogatory, I think it's

16   very important for the Court to understand the content and

17   the quantity of the files we're talking about.  And rather

18   than put something on the screen, I have got all of this in a

19   little booklet that may help us walk through this fairly

20   quickly.

21         **THE COURT:**  Okay.  Well, you can certainly hand it

22   up.

23         **MR. COWAN:**  Okay.

24         (Whereupon, document was tendered

25          to the Court.)

1          **MR. COWAN:**   The first page, your Honor, Page 1, is

2    -- you asked about the product verification form and what was

3    that.

4          This is an example, in the JD Edwards situation --

5    and this really goes to interrogatory 13 relative to the

6    inappropriate download comment.

7          You see on this form that's completed with the

8    client's input certain types of applications that they check

9    that they are licensed for and certain types that they are

10   not.  The X's indicate those things that they believe they

11   are licensed for.  And this is only one piece of one set of

12   products for a particular customer.

13         And this -- if you look over to the left, it's kind

14   of hard to read under "Company Information", but this is for

15   Ocne on Page 1.

16         **THE COURT:**   So this is something the customer gave

17   to JD Edwards or the customer gave info and then --

18         **MR. COWAN:**   It's a form -- it's a Tomorrow Now form

19   that the customer completed, either by themselves or with the

20   assistance of Tomorrow Now, in trying to determine what the

21   customer was licensed for before the downloading activity

22   occurred.

23         That information then was -- and on Page 2 is an

24   example of the download request form.  And, again, these

25   product verification forms have all been produced.  To the

1    extent they have been located, they have been produced to

2    Oracle.  The download request form, again, have all been

3    produced to the extent they have been located.

4           Here is an example.  For Merck, another one of the

5    companies that was named in the original complaint and

6    continues to be named in the current complaint.  And it shows

7    the customer connection password and user name, just as I

8    told the Court.  It's the third and fourth entry there.

9           But it also references through a series of boxes

10   that are filled out on this form down at the very bottom it

11   says "Electronic Software Updates."  And it says that there's

12   two types of releases, Xe and 8.10, which are just the

13   various releases of the product.

14          But four columns over it says "All."  And in that

15   instant, even though Merck may not have been licensed for

16   all or represented to Tomorrow Now that it was licensed for

17   all, we know from this form that at least the instructions

18   were to go get all of the ESU's for those two releases, the

19   JD Edwards product.

20          So Page 3 shows where those -- JD Edwards delivered

21   updates and fixes.  And the first -- Page 3 shows a screen

22   shot of the highest level folder and page four are the

23   subfolders under that highest level folder, and you see it's

24   divided by customer.

25          And, again, this has all been produced in

1    electronic form to the plaintiffs.

2            And by way of example, about halfway down on this

3    list on Page 4 you see the client Electrolux.  If you click

4    on that folder, which is on Page 5, you see that that folder

5    is 4.78 gigabytes in terms of size.  It's a sizable folder.

6            And you keep going, Page 6.  When you open that up,

7    there's two subfolders.  One divided by OneWorld, which is

8    one version of the JD Edwards product, which is a

9    Windows-based solution, and World is another version of the

10   JD Edwards product, which is an old IBM green screen

11   technology product.  But you get to page -- that's on Page 6.

12           Page 7, once you click into the OneWorld folder,

13   you see the "Electronic Software Update" subfolder in that.

14   Everything that's downloaded is in this typical file folder

15   structure for the JD Edwards customers after the period of

16   time that Mr. Howard indicated that they were divided.

17           There are a few categories, I think three or four,

18   that still were maintained in a master file basis, but for

19   the most part everything that was downloaded was organized

20   this way after that period of time.

21           Then when you click into the "Electronic Software

22   Update" folder -- and I hate to do this in a painful way, but

23   you see how -- I'm trying to have the Court understand how

24   this is organized electronically and how it's been produced.

25           These are the various versions fourth which

1  Electrolux purportedly indicated they were licensed for.  XE

2  is one of those releases or versions of the product.  That's

3  on Page 8.

4          And then when you finally get down to the actual

5  ESU's, which is on Page 9, as you see, many, many layers into

6  this folder structure, which are the actual downloaded

7  artifacts, you see circled there there's 5,057.  Just for

8  this one customer for that one release there is 5,057 items

9  that were downloaded for that customer.

10          Page 10 gives another example of a specific file

11  that's JD374_exe.  And when you open that up, what's inside

12  that is an image of an html file, a web page, if you will.

13          **THE COURT:**  What page are you on?

14          **MR. COWAN:**  I'm on Page 11 now.  And this is the

15  actual description of the ESU itself.

16          And down at that level at the very bottom, the

17  bottom circle on Page 11, you finally have some information

18  in that one download out of the 5,000 that starts to tell you

19  something about how that download relates to the licensed

20  products that Oracle made available for license.

21          **THE COURT:**  You are looking at what?

22          **MR. COWAN:**  This -- the circle that says "Object

23  B03B0128."

24          **THE COURT:**  What does that mean?

25          **MR. COWAN:**  I think the second and third character

1   indicate the system code for that particular object, which

2   then tracks back to that product verification form that was

3   on Page 1, for example, "Accounts Receivable."

4           But you see how far into this --

5           **THE COURT:**  So you mean the 03 --

6           **MR. COWAN:**   The 03 should correspond in the object.

7           Now, that doesn't mean that that particular ESU

8   only relates to that system code.  There may be a number of

9   system codes that this particular ESU relates to.

10          And so trying to map these downloads to what the

11  customer was entitled to have, it's a very tedious process.

12  So early on in the case, even before Judge Legge, we wanted

13  to know the answer as much as Oracle did.  We went to Judge

14  Legge and we said, "Oracle has to have some electronic

15  mapping information to be able to say for this ESU, this JD

16  384 ESU that we are looking at that's represented on Page 11

17  here, they have to have some electronic way to say, okay,

18  that that ESU is related to these licensed products.  And if

19  they give us that data, we can run through electronically all

20  of the files that are on the Tomorrow Now systems tying it

21  back through this folder structure to given customers and

22  tell you which ESUs we have for which customers and make

23  some -- ascertain in a broad way which ones we believe

24  represent these downloads that are -- relate to the licensed

25  products the customer told us they were licensed to and which

1    ones do not.

2            They couldn't give us that.  And Tab I of our

3    opposition is the colloquy between me, Judge Legge and

4    Mr. Howard where we talk about this very thing.

5            And the last page of Exhibit I to our opposition,

6    he says I -- oh, I'm sorry.  On Page 33 of the transcript,

7    which is the second to the last page of Exhibit I, Judge

8    Legge says, asking to Mr. Howard:

9            "Do you have presently existing any

10           mapping device or program or code which would

11           eliminate the necessity for doing it one by

12           one?"

13           And what he's referring to is not having to go

14   through the process that I've just -- pages and pages that I

15   just walked you through to get down to that little piece in

16   doing it onesey-twosey.  We asked some electronic way to do

17   it?  And you can read there Mr. Howard's answer to that, "Not

18   that we have been able to generate so far."  And he indicates

19   that they had a similar instance.

20           But here is -- and this is in answer to one of your

21   first questions you asked, because Mr. Howard says:

22           "It wasn't our preference to limit the

23           complaint to ESUs for the single system code

24           in them, because we recognize that other ESUs

25           in his view were illegally downloaded, that

1        happened to have more than one system code."

2             But that was after -- in front of Judge Legge when

3   Mr. Howard had explained they actually went through this

4   manual process to identify some specific ESUs that they knew

5   through their logs, because they were watching what Tomorrow

6   Now was doing at a point in time, knew that we had -- that

7   Tomorrow Now had downloaded using a specific customer

8   credential.  And then they went back in the complaint and

9   made very, very specific allegations saying you, You

10  downloaded this ESU using this customer's I.D. and that

11  customer's not licensed for that download.

12             We then -- and that was in the first amended

13  complaint.  It's the first time they gave that specificity.

14  We, hen, were able to take that ESU.  Go look and see if it

15  is, in fact, in that customer's file, and we did.  And we

16  were able to compare what that customer told us that they

17  were licensed to, using that information they provided in the

18  complaint, is how the executives reached the conclusion they

19  did that was indicated in the public statements they allude

20  to and the answer.

21             So --

22             **THE COURT:**  So you are saying that that answer was

23  based on the allegations in the first amended complaint?

24             **MR. COWAN:**  Yes.  Because before then we had no

25  way -- we didn't have this mapping information.

1          We knew we had a lot of downloads that Tomorrow Now

2    had downloaded.

3          We knew that at the time they -- what we were

4    saying were located in folders, but we had no way of looking

5    at these files and knowing anything about any of the data in

6    them to be able to map it back.  Once they gave us a specific

7    reference, we were able to go back and then trace through the

8    very detailed level at the very minutiae as I have shown the

9    Court to say, yeah, for at least those four it looks like

10   there may be an issue there.

11         We are not conceding liability on that.  I don't

12   want any statements I'm making here in the hearing on that.

13   But it certainly is one of those -- before they listed the

14   first amended complaint were some that it appears may relate

15   to products for which the customer told us -- the customer

16   did not indicate they were licensed for.  And we said that in

17   the answer.  We said that in our discovery responses.

18         But now what they want us to do is to go back and

19   do that for every single download, and I just showed the

20   Court just for this one release for this one customer --

21   there is 5,000 of them.  You expand that times 300 customer

22   times multiple releases, the numbers are mind boggling.  And

23   this is not a -- nothing that could be done electronically.

24   And Mr. Howard admitted to Judge Legge that it can't be done

25   electronically.

```
 1              THE COURT:  And you're saying that they could go
 2   through exactly the same process as you?
 3              MR. COWAN:  Correct.
 4              THE COURT:  Have you looked at the instances where
 5   the customer requested "All" on the request form and had than
 6   all of the boxes checked on their authorization?
 7              MR. COWAN:  Well, and that's -- that question
 8   presupposes that the customer filled out the download request
 9   form.  They did not.  That was a Tomorrow Now completed form
10   on Page 2.
11              THE COURT:  Well, but it doesn't really matter who
12   filled it out.  In other words --
13              MR. COWAN:  You are saying on Page 1?
14              THE COURT:  How many instances -- I'm just looking
15   at what potentially would be more manageable and
16   straightforward, because you would only need to compare two
17   pieces of paper potentially.
18              MR. COWAN:  But they could do that as easy as we
19   could because it's not going to require us referring to any
20   of our witnesses or any evidence that hasn't already been
21   produced in the case.  They can do that analysis as easy as
22   we can.  The data is there.
23              THE COURT:  Has anyone done that analysis?
24              MR. COWAN:  On our end, not that I'm aware of.  I
25   would assume they have either not done it or maybe they have
```

1  attempted it.  I have no idea.

2         MR. HOWARD:  Your Honor, we haven't done that.

3  What we are talking about right now is whether or not the

4  downloads that were indisputably taken, copied, were

5  appropriately taken, were legally taken or within the scope

6  of a license taken.

7         THE COURT:  Right.

8         MR. HOWARD:  That's -- that's their burden.  That

9  is their burden because license is an affirmative defense.

10        THE COURT:  But let them worry about their own

11 burden.  If they can't prove their own case, that's too bad.

12        MR. HOWARD:  Right, but we are certainly

13 entitled -- when they say, "We inappropriately took

14 downloads," we are absolutely entitled to ask, "Which ones?"

15        And the question before the Court is:  Are they

16 allowed to rely on 33(d) and refer to all these documents

17 because -- because you can't go through.

18        If the Court is going to interpret the

19 interrogatory as narrowly related to the specific downloads

20 referenced from Paragraph 15 of the answer, then it doesn't

21 seem, based on the explanation that Mr. Cowan just gave,

22 which could very easily be converted into an interrogatory

23 response, which is admissible, that that is burdensome at all

24 to go through and give that answer in the narrative form that

25 you have would get in an admissible interrogatory response.

1        **THE COURT:**  Well, just to bite that one last issue

2   off.  And what you're saying is they only did it for four?

3        **MR. COWAN:**  We did it for -- the four that they

4   identified in the complaint to tie that down.  And, of

5   course, we looked broader to see if it was just an isolated

6   issue or not.

7        But in terms of any kind of systematic

8   customer-by-customer trying to get our arms around any

9   specifics, we never did that.

10        **THE COURT:**  Well, okay.  I mean, I think they are

11   entitled to know the results of what you did and what the

12   results were.

13        **MR. COWAN:**  But if that's done, your Honor, by

14   counsel in responding to the complaint, that was another

15   point that we raised in the papers.  We are stepping on the

16   side of work product at that point because the question

17   really relates to what did SAP's representative -- what was

18   he referring to when he said it and what's referenced in the

19   answer?

20        And we provided in our answer to interrogatory No.

21   13, which is at Tab C in Mr. Howard's declaration in the

22   original motion, I mean, we told them.  The download request

23   forms, you know, for Merck, both say SPX.  Metro Machine and

24   Izaki instructed the download team to download all ESUs for

25   all system codes on a particular release level.  So we have

1  told them that.

2            THE COURT:  This is your original response?

3            MR. COWAN:  That's the original response.

4            THE COURT:  Well, I don't really -- I'm not very

5  impressed by the work product argument.  I just think the

6  facts of what was learned by doing what and then what hasn't

7  been done by implication, you know, is a whole different

8  thing from asking you to do more.

9            And I think the plaintiffs are entitled to know

10 what did you -- what led you to give the answer you did,

11 which is what you just gave in open court, except the part

12 you just added was not fleshed out, which is -- and we looked

13 at some other things, although it wasn't 100 percent.

14           MR. COWAN:  Right, because we didn't do any kind of

15 systematic analysis because we didn't have --

16           THE COURT:  Right, but you got -- I mean, I would

17 hope, you kept notes on what you looked at and what you

18 found, that there were these four plus there were some

19 others.

20           MR. COWAN:  In terms of the process of looking at

21 the product verification forms and looking at the download

22 request forms, just those two documents we can do that for

23 more than just the four I mentioned.

24           But their request goes to a fixed level.  That's

25 not getting down to a fixed level.  That's just looking at

1  generally did a customer check less than all and then did we

2  download all.  And the answer to that is yes, there was some

3  analysis of that.  Was it a complete, thorough

4  customer-by-customer analysis?  No.

5        But I think what they're -- and I understand what

6  you are saying.  You are trying to craft something --

7        **THE COURT:**  I'm saying it's not at all burdensome

8  for you to give them what you did find.

9        **MR. COWAN:**  Based on?

10        **THE COURT:**  That doesn't mean it's 100 percent of

11  what they asked for.  It's much less than that, but there is

12  nothing burdensome about giving them that.

13        **MR. COWAN:**  Stating the fact of -- well, we would

14  have to go back and do just what you talked about, which is

15  compare those two forms and state what --

16        **THE COURT:**  I'm not telling you to do new

17  comparisons.

18        I must say, I find this like swimming in a fog and

19  completely not -- you know, I don't know whether it's

20  inherently something that is not well suited for judicial

21  resolution or what.

22        I feel like we have now spent 40 minutes on this.

23  I'm taking this, you know, one percent of this whole problem

24  which seems very clear to me.  Everything else seems

25  completely opaque.  And, yet, you keep asking me, Well, what

1    do you mean, why and so forth.  Maybe because I'm unclear.

2    But to me it's like, can't we clear this piece of underbrush

3    out of the way.

4         I'm not telling you -- right now I'm not tackling

5    do something new, which is the main thrust of all of this.

6         MR. COWAN:  If what the Court is asking, do we have

7    any records that we could go refer to of work we did at the

8    time we answered the complaint, to look at that, I think the

9    answer is probably no.  Because with the -- you have got to

10   look at all the other things that were going on in the summer

11   of 2007 when we did this.

12        I can tell you that we do have some evidence of

13   some of the stuff we did, but I don't think there's a

14   systematic record of every conclusion we have reached on the

15   fly in doing that analysis.

16        THE COURT:  Whatever there is, there is.

17        MR. HOWARD:  Right.  And -- but I guess, your

18   Honor, and I apologize for this, it's me being unclear --

19        THE COURT:  Not obviously, but...

20        MR. COWAN:  But here is the point.  If you were to

21   order us to do that, what I would go back and do is do what

22   you just suggested, which is compare the product verification

23   form, because anything we would have from the '07 time period

24   from a records standpoint is not going to be in a format

25   that's going to yield the kinds of facts you are looking for,

1  because it's the way -- and the reason why I say this, I

2  know.  I personally was involved in doing it.  I was torched

3  with finding that out.

4          And I know I wasn't focused on documenting what I

5  was doing.  I was focused on trying to find the answer to

6  some of these questions, not taking tedious notes along the

7  way of the process.

8          **THE COURT:**  So you were just making a qualitative

9  assessment, not specific instances?

10          **MR. COWAN:**  Correct, correct.

11          And I don't want to lead the Court and I certainly

12  don't want the record to reflect that we don't have some

13  written indicia of some of this.  I'm sure we do, but --

14          **THE COURT:**  I think that it may very well be as one

15  of the things that comes out of this hearing you should do

16  what plaintiffs propose; provide an explanation of how you

17  concluded certain downloads were inappropriate, as stated in

18  the press release and to the extent it's stated in the

19  answer, which is not so much inappropriate, but didn't match

20  what the customer representative authorized.

21          **MR. COWAN:**  Right.

22          **THE COURT:**  And to the extent you can't identify

23  those by problem product, which sounds like you mostly can't

24  but somewhat can, to do that.  I don't see anything wrong

25  with that.

1           Now, I'm not asking you to the extent that you

2    can't recall any more and you don't have a record of it,

3    well, then, the answer to that part of that is we don't know,

4    but this is what we do know.

5           In any event, it sounds like that won't get us very

6    far.

7           **MR. COWAN:**  It's certainly not going to get down to

8    the file level, because beyond those four that I have

9    referred to they're -- by the complaint, I'm unaware of.

10          **THE COURT:**  Well, so far, I mean, from the

11   demonstration at least, it seems those things could be done

12   equally by either party.

13          **MR. HOWARD:**  Well, your Honor, I think it's

14   probably right.  Each party can unpack an ESU, look at the

15   system code and match it up with a contract.

16          The point of the interrogatory was a little

17   different than that.  It was:  You have said that there were

18   some inappropriate.  What are they?

19          We thought interrogatory also went to the others,

20   and we read in their brief that they said that they can't do

21   it as to the others.  And I think that's because they can't

22   link umm up credential.

23          So whether or not the Court orders a statement to

24   that effect as part of a supplemental interrogatory response

25   or whether, I guess, we just serve another discovery response

1   aimed at that question, we can go at it either way, but it is

2   very important to us to have an admissible form that they

3   cannot do that analysis for whatever it is that's outside the

4   boundary of Paragraph 15 and the press release.

5           **THE COURT:**  Paragraph 13?

6           **MR. HOWARD:**  Paragraph 15 of the answer.

7           **THE COURT:**  Okay.  Right.  Right.  Okay.

8           **MR. HOWARD:**  And --

9           **THE COURT:**  Just a minute.

10          **MR. HOWARD:**  Sure.

11          (Brief pause.)

12          **THE COURT:**  Well, okay.  And your response?

13          **MR. COWAN:**  Our response is going to be to the

14  extent we say it, we are going to say something along the

15  lines of what we have already said in the opposition, which

16  is the reason why we can't do it is because we need the data

17  that should be exclusively in their possession.

18          **THE COURT:**  Now, okay.  Well, that's -- that's

19  fine.  But you are allowed to -- I think the interrogatory is

20  proper.

21          But now we have got to get into this thing of

22  whether you told me you did give him the mapping information

23  and you say you didn't.  I'm not going to be your trial judge

24  on this.  Some people could say...

25          **MR. HOWARD:**  This is -- now I feel like I'm in a

1  fog, your Honor, because I think what he just said and what

2  you just said is both sides can do this.

3        I think that -- so it can be done.  It's just that

4  they don't want to do it.

5        **THE COURT:**  It's very, very burdensome and it's an

6  equal burden for both, which is a legitimate argument under

7  Rule 33.

8        **MR. HOWARD:**  Absolutely.  And it is, obviously, in

9  available form.

10       But that is very different from saying we haven't

11 given them the mapping information.  What he has just done is

12 gone through a long explanation of why they do have the

13 mapping information.

14       We gave them all of the ESUs in this database so

15 that for any given one on their system they could go find it

16 in the database that Oracle keeps for itself.  They can look

17 at it.  They can see the system code.  They can match it to a

18 piece of software.  They can match that piece of software to

19 what a customer has licensed.

20       I think the complaint is that there isn't an easy

21 way to do it.  I'm sorry, but it's true.  There is not an

22 easy way to do that.

23       But if they are going to prove that they had a

24 license to any one of these files, then that is something

25 that they are going to have to do.  Nobody has written a

1   program.

2          **THE COURT:**  I'm going to take a recess.  I feel as

3   if I cannot follow anything anybody is saying.  I don't think

4   you have any idea what it's like to be on this side of the

5   bench.

6          I have a 3:00 o'clock meeting that I could postpone

7   a little bit, but not much, about a settlement conference

8   that's tomorrow which I'm co-mediating with a mediator from

9   our ADR unit.  The parties have given permission to meet and

10  catch up on what he's done in the first two sessions.  He has

11  been away until today.  This is the only time I could do it.

12         We have gotten almost nowhere.  We haven't even

13  started 14.  I think that you -- from my point of view right

14  now, it's -- I cannot decide the mapping issue.  I don't

15  understand it any more.  I thought I did.  I have already

16  forgotten it from half an hour ago because we have moved on

17  to this other side issue where it turned out to be almost a

18  complete waste of time.

19         I mean, this is just not working and I spent a lot

20  of time looking at your papers.  I have the impression that

21  it's all very burdensome on both sides.  The mapping issue

22  was not -- it wasn't addressed in your reply.  I came in here

23  understanding it.  Now I'm back to not understanding it.

24         You know, this is just not working.  I don't know

25  if you all understand that it's just -- you know, you have

1  been very good in the past and managed to tee things up that

2  more or less I thought somewhat I could decide them, but, you

3  know, right now I'm leaning to only let them answer that

4  interrogatory essentially.  Fine.  I agree that anything that

5  they are saying they can't do or won't do you should know,

6  have an admissible form and make of it what you will when you

7  come to trial.

8          I get the impression right now that it's equally

9  burdensome on both sides, so I'm inclined to stop there.  If

10  there is something further that you are arguing, I don't

11  understand it right now.

12          **MR. HOWARD:**  All I was saying, your Honor, is that

13  whatever information we have that would allow you to map, we

14  have given it to them.

15          **THE COURT:**  Well, you know, I don't know what to

16  say on the mapping issue.  I think it wasn't adequately

17  briefed.  Nothing on the reply in it.  So I have nothing to

18  add.  I'm not prepared.

19          Whether you have given it or not, you know, I'm not

20  going to decide that issue.

21          **MR. COWAN:**  But to at least put on cap on.  I think

22  where your headed on what additional we need to do on 13, is

23  -- because as I have explained to your Honor, trying to go

24  back and reconstruct what we did in the summer of '07, in my

25  view having been personally involved in it, would be more

1  difficult than simply going through and comparing the product

2  verification forms with the download request forms.

3        If the Court is ordering us to do that --

4        **THE COURT:**  Well, I don't know how burdensome that

5  would be and they can do that, too.

6        **MR. COWAN:**  I'm not going to say to the Court it's

7  not doable, because it's certainly doable.  It's just an

8  issue of the amount of time.

9        At that instance you are talking maybe 300 or 400

10 customers for the forms we do have.  That may be something

11 that is doable, but I agree with you and I'm not waiving the

12 argument that it's an equal burden.

13       **THE COURT:**  No, I think it's an equal burden.  I'm

14 not inclined to ask you to do that.

15       I am still inclined to ask you to do what you can

16 subject to the limits of your records and your memory, which

17 is saying how you came to the conclusion.

18       I think the answer is, We looked at the allegations

19 -- if I understand it, this is probably what the answer is

20 going to be.  We looked at the four instances in the

21 complaint and we verified blah, blah, blah.  And we looked at

22 some additional instances, and I can or can't remember which

23 ones they were, or this may be some of them, but it may or

24 may not be all of them, and found a similar thing with some

25 others.  I mean, that sounds like that's about what you are

1  going to say.

2          MR. COWAN:  I think so.  And your Honor raised the

3  work product issue earlier.

4          I guess if the Court is inclined to give me some

5  guidance on that issue.  We certainly don't want to be in a

6  waiver issue where we are divulging everything --

7          THE COURT:  Well, I don't think -- I don't view

8  that as any waiver and I would -- but I need to hear from the

9  plaintiff.

10         Do you agree that that would not be a waiver of any

11 kind?

12         MR. HOWARD:  Yes, yes.

13         THE COURT:  In other words, answer along the lines

14 I just said and that doesn't constitute a waiver for

15 anything.

16         MR. HOWARD:  That's just reporting facts.

17         THE COURT:  That's my opinion.

18         MR. COWAN:  I think that's fine.  I just felt we

19 have had all kinds of other privilege issues come up.  I

20 don't want to bump up against that line or go over it.

21         THE COURT:  But he just said that --

22         MR. COWAN:  Okay, that's fine.

23         THE COURT:  It's 2:52.  Now what?

24         MR. HOWARD:  We would like a chance to address

25 interrogatory 14.

1          THE COURT:  Well --

2          MR. HOWARD:  It doesn't sound like it's productive

3    to continue talking about 13 at this point.

4          THE COURT:  No.  I mean, as far as I can tell, the

5    burden is the same on both of you.  And if I were you, I

6    would probably do what I thought would be the most bang for

7    the buck initially, is I would start with where it was a

8    "download all" situation and you knew -- you can glance at

9    this for one second and say, Those are not all.  That just

10   happens to be the first two pages you have.  There is

11   probably something wrong there.

12          And that's pretty simple, but I think it's equally

13   burdensome on both sides.  If you were you, I might pool my

14   money and just hire somebody in India to make that comparison

15   and split the cost.  I mean, you both want to know it.  I

16   don't know.  I think Rule 33 three is appropriate for

17   something like that.

18          MR. HOWARD:  And I have asked the Court also that

19   there be also included a supplemental response, the same

20   statement they make in their brief; that there is no

21   technical way to tie the credential to the downloaded file.

22   That I think is also equally important.

23          THE COURT:  No electronic tag.  I think that can go

24   in an interrogatory.  That's perfectly fine.

25          I do actually think if you got the transcript and

1   it's been represented in open court, that's probably just as

2   good, but I don't think there is any harm in putting it in an

3   interrogatory.

4           **MR. COWAN:**  And we don't have -- in particularly in

5   light of how Mr. Howard has argued that point.  I think we

6   want to be very explicit in an answer and we certainly would

7   include that in a supplemental answer as to what we meant.

8           **THE COURT:**  All right.

9           **MR. HOWARD:**  What is your Honor's preference as to

10  interrogatory 14?

11          **THE COURT:**  Well, let me look at it again.

12          As I see it, the defendant is saying it's all in

13  the SAS database.  Defendant is saying that's user friendly.

14  Your expert Schwentler is saying, Well, it's not a user

15  friendly database.  It's very large.  And then he draws the

16  conclusion that because it's a non-relational database, it

17  would be easier for someone who knew about the data to

18  understand it.

19          That part I wasn't really sure whether that would

20  be true or not true or what to make of that.  Because in

21  other words, all of the predicate parts that's a difficult

22  database don't really push it, push against Rule 33.  That's

23  the only nugget in there because maybe one side has an

24  advantage, the other side doesn't.

25          Then there is further the argument that the

1  example of the screen shot, No. 1, it's not representative;

2  and No. 2, even that doesn't go far enough.

3        I mean, I -- then plaintiff also raises the issue

4  about stipulating to the admissibility of facts.  You know,

5  that's sort of -- it's in there.  There is no -- I don't know

6  what your response is.

7        There are so many issues and, you know, to the

8  extent -- I'm not going to get into the whole opening the

9  door.  I don't think there is evidence, reason to require a

10 declaration about what was done to preserve or not preserve,

11 et cetera, et cetera.  So I'm note going to order that

12 declaration.  So we are just going to focus on 14.

13        And I don't think there is any workable suggestion

14 there either.  I mean, some number of hours.  Then I'm going

15 to be told, Well, the hours weren't used the way they should

16 have been, or productively or whatever.  I mean, I really

17 just don't know what to do.

18 **MR. HOWARD:**  Well, we were just trying to come up

19 with some way to reduce the burden, your Honor.  And we are

20 open to any other suggestions the Court has.

21        The interrogatory itself, I think -- this is the

22 one that Judge Legge said was definitely relevant, and it

23 goes to again a core liability issue, which is how the

24 environments are being used to cross support customers.

25        There are a couple of concerns we have about SAS

1    that explain why we think it's not appropriate as a Rule

2    33(d) response.

3            And let me just say a sentence about SAS.  It's a

4    database that collects data from all kinds of different

5    sources.  So the master fix record that you saw is a user

6    created and filled out record.  Then that will have attached

7    to it documents that are authored by other people, emails

8    that come in from people.  So it collects -- as a database

9    should, it collects all kinds of information from different

10    places.  That creates a couple of different problems for a

11    33(d) situation.

12            The first is, it doesn't have necessarily -- unless

13    they agree, which is the point of our proposal on the

14    stipulation, it doesn't necessarily have the same kind of

15    admissible evidence to answer the interrogatory that an

16    interrogatory response would have.

17            To the extent that they are relying on it as a

18    33(d) response and they are willing to agree that when SAS

19    for any particular fix record references an environment, then

20    that is the environment in response to the interrogatory that

21    was used to support the customers who received that fix.

22            That, hopefully, seems like a fairly

23    straightforward proposition.  It's what we got out of their

24    opposition and it would go a long way towards, I think, to

25    resolving this problem.

```
1              THE COURT:  What's the answer to that?
2              MR. COWAN:  I think the answer is going to be it
3    depends, because what -- in terms of authenticity, we are not
4    going to have authenticity issues in terms of whether it is
5    the business record of Tomorrow Now, but he is starting to
6    make -- trying to force us through an interrogatory to make
7    qualitative assessments of any particular data point in this
8    database to say if it says it, it is 100 percent true and
9    there is no over evidence that will explain it away.  And I
10   don't think that's the province of an interrogatory, to lock
11   someone in to an entire database and say everything in there
12   is what it factually purports to be, from -- and where we
13   don't have any capability of refuting it.
14              And, your Honor, this really all goes back to the
15   whole issue we have been talking about with respect to the
16   stipulation.  They say in the reply that defendants are
17   refusing to stipulate.  We have not.  We sent a proposed
18   stipulation to them about three weeks ago.  We haven't heard
19   anything back.  They didn't reference that in the reply.
20              But the point is this.  There are other vehicles,
21   alternatives in this case, that can possibly be used to
22   accomplish the result that Mr. Howard wants to get out of
23   some of these issues.  But trying to force us to take
24   positions about what our data shows and doesn't show we think
25   is inappropriate.
```

1          It is what it is.  They can make whatever arguments

2     they want to make out of it.  They can call their own

3     witnesses.  Lord knows, they have deposed plenty of ours,

4     300-plus hours, to try to test the accuracy of it.  But I'm

5     unaware of any instance where a party has been forced to do

6     what Mr. Howard is suggesting this Court force defendants to

7     do with respect to this data.

8          Back to the 33(d) issue and the balancing the

9     burdens.  We have told them, we've said in our opposition.

10    It is highly unlikely on a global basis that there is going

11    to be any witness that has any specific recollection as to

12    all of it.  There may be one-off instances where these

13    witnesses will have some recollection here and there, but

14    that is going to be a miniscule exception, I think, to the

15    general rule that unless it's in SAS database, they are not

16    going to have any specific recollection of it.  We have told

17    them that.  We told them that in the opposition.  We have

18    pointed them to it in our answer to the interrogatory.

19         What they are really wanting us to do is prepare a

20    compilation, abstract and summary of the data we have already

21    produced.  We think it's inappropriate.

22         **THE COURT:**  Well, I think it's inappropriate unless

23    there is anything to -- as I say, it's kind of a one-line

24    thing in the plaintiff's expert's declaration, which

25    generally relates to -- well, it's not really a user-friendly

1  database, but that to a large extent is true of both sides.

2       And the issue would be, is there some reason why

3  it's harder for the defendant than for you?  You have the aid

4  of the ex-Tomorrow Now people, who are consultants.  Does

5  that help?

6       **MR. COWAN:**  It did originally in terms of us trying

7  to understand how to navigate the database, of course; but at

8  this point not really, because at this point I think of

9  lawyer that's involved in the technical side of this case

10  knows how to navigate that database and knows what's in it.

11       Mr. Howard just recited it.  Mr. Polito put in a

12  declaration giving you very precise statistics on what their

13  positions were of what that database contained and didn't.

14  He said over 850, I think, of the 1800-plus entries have

15  information about the environment, which is what they are

16  seeking.  How is he able to do that if he didn't know how to

17  work the database?

18       He also made -- Mr. Mandya put in a declaration

19  that said only three percent of the data that's in this

20  database matched up to what Mr. Fox said in his declaration.

21  How were they able to do that if they weren't able to

22  understand and remanipulate the data?

23       So it's, in our view, an effort to try to shift not

24  the burden of production, because I think they've, in effect,

25  stipulated to that their through their reply, because they --

1   in making the suggestions of how they lessen it.

2          I think what they are trying to do is shift the

3   burden of proof, and we think that's inappropriate.

4          **MR. HOWARD:**  Your Honor, may I respond to a couple

5   of those points?

6          We are not contending that we don't -- we can't at

7   this point navigate SAS.  That really isn't the issue.  33(d)

8   is only available if the documents that are referred to

9   through it have the answers to the interrogatory.

10          And I -- my proposal was, agree that where it

11   refers to these environments, that those are the answers to

12   the interrogatory.  And Mr. Cowan just said, No, we don't

13   agree to that.

14          So we can navigate to them, but that doesn't get us

15   the admissible evidence that if you are going to use 33(d),

16   the records have to provide.

17          **THE COURT:**  Well, I mean, the answer to that -- I

18   can't remember exactly what was answered.  Was there a

19   narrative answer to 14?

20          **MR. COWAN:**  That I just gave?

21          **THE COURT:**  No, in --

22          **MR. COWAN:**  Oh, yes, your Honor.  It's Tab D to

23   Mr. Howard's declaration, attached to the motion.

24          But we provide both in the initial response and

25   supplemental response the better part of two pages of

```
 1  information.  We cite not only the SAS --

 2          THE COURT:  Okay.  That's what I'm -- that's what

 3  I'm talking about.  The point -- I don't have it in front of

 4  me.

 5          MR. HOWARD:  I could give you my copy.

 6          THE COURT:  Okay, please.

 7          (Whereupon, document was tendered

 8           to the Court.)

 9          MR. HOWARD:  Just lines of a narrative.

10      THE COURT:  There is no editorial.  It's the first

11  sentence.

12      MR. COWAN:  I don't know what page you are looking

13  at, your Honor.

14          THE COURT:  Page 11.

15          (Brief pause.)

16      MR. COWAN:  Only one other thought I think I can

17  add to this, your Honor, and it may further frustrate you.  I

18  don't know.

19          But I think where Mr. Howard is headed is he's

20  trying to create some inference of the non-existence of data

21  in having us commit to what the non-existence of data means.

22          And in every other case that I have -- I am aware

23  of, generally how that works is you get the data.  There is

24  never an instance where a case, particularly of this

25  complexity, you are going to have a data point for everything
```

1   that happened every day in every instance.  You are going to

2   have points of data where the lawyers do what they're trained

3   to do, is take those points of data and build their arguments

4   and present to it a jury and put their best case forward.

5          What they want to do is use the points of data in

6   the white space, the non-data, to create inferences and they

7   want us to commit to what that white space means in this

8   interrogatory, and we think it's improper.

9          **MR. HOWARD:**  Your Honor, I really just wanted to

10  know what environments were used to support other customers.

11         And if we are staying with SAS for a moment, and

12  they say it has those answers, them they ought to be able to

13  agree that the environments are in there, supply the answers

14  to that interrogatory.

15         And what I think is the case, is that -- that the

16  reason that they are resisting that is that the answers -- if

17  you look in SAS or if you look at the example they gave and

18  there is a reference to an environment, it requires some

19  interpretation from somebody knowledgeable to know exactly

20  what the implications are of that reference in SAS.

21         I'm not asking the Court to order that they go

22  through every environment, but there's no indication here

23  that they have employed the resource that they did have at

24  all, which are the employees who created SAS and used it and

25  did these activities.

1          It seems to me that there is some requirement at

2   some point that you go to the people and you use them to

3   provide some answer to the question.

4          **MR. COWAN:**  And we did that, and we've answered the

5   interrogatory.  We found the documents -- not only the

6   database, your Honor, because we are focused on SAS here, but

7   there is the data warehouse that we've spent a lot of time in

8   discovery conferences talking about that has relevant data.

9   There's the backtrack database that we refer to in our

10  opposition.  There is custodian emails that has relevant

11  data.

12         And that's my point in not being willing to accept

13  what Mr. Howard is suggesting; that we say yes to SAS as the

14  first and lats word, because there may be other points of

15  evidence that both sides have that we would point to to

16  either explain or possibly even contradict what might be in

17  SAS.

18         I'm not suggesting that would be the rule.  Quite

19  frankly, I think both sides are going to continue to rely

20  heavily on SAS, both in the prosecution and defense of this

21  case.

22         **THE COURT:**  Well, I don't know.  It seems to me

23  that what the plaintiff is sort of trying to get out of

24  interrogatory 14 is somewhat of a contention interrogatory.

25         Do you contend that there is any error in SAS?  If

1    so -- or do you contend that where SAS mentions an

2    environment, apparently, as downloaded, that it didn't

3    download it.  If so, what's your evidence?  You are allowed

4    to ask those sort of questions.

5             I guess I'm just going to deny it without

6    prejudice.  I really cannot -- I have not been given the

7    tools to know any workable solution whatsoever.

8             I mean, the interrogatory asks for all

9    environments.  I'm convinced that that -- and it also --

10   also, I am not convinced that it's more burdensome on the

11   plaintiffs to deal with the database than the defendants.

12            To the extent that there is something that either

13   side is going to contend is wrong in this SAS database or

14   incomplete, you have got all these other discovery devices

15   which you have been using, 30(b)(6), et cetera, of these T.N.

16   employees.

17            If you can identify some specific thing that you

18   want the T.N. employees, ex-employees consulted about, I

19   would probably be open to that, but I just cannot -- I think

20   these kind of -- the whole issue as framed, is 33(d)

21   appropriate for this or not?  In general, I'm convinced that

22   it generally is.

23            Where it's failed or isn't adequate I haven't been

24   pointed to the bulk of resolutions.

25            **MR. HOWARD:**  We did identify something specific

1   that we would ask the Tomorrow Now employees be asked to do.

2          **THE COURT:**  Which is what?

3          **MR. HOWARD:**  One of our proposals at the end of our

4   reply was that we take a small number of environments and

5   have them spend, you know, a limited number of time to tell

6   us -- or we can do this on a master fix basis, but to tell us

7   how that was used to support other customers so that we could

8   then use that --

9          **THE COURT:**  To support other customers?

10         **MR. HOWARD:**  Right.  In other words, if you take --

11  you can do this either way.  But, say, you did it by the

12  master fix record that they chose to use as their example.

13  You would select -- there's 1887 of those --

14         **THE COURT:**  That screen shot is a master fix?

15         **MR. HOWARD:**  The master fix.

16         **THE COURT:**  Master fix meaning?

17         **MR. HOWARD:**  Meaning that the high level generic

18  fix that is created initially and is then sent out to the

19  various customers who are eligible for it.

20         **MR. COWAN:**  Even better, the problem -- to think of

21  the master fix to think as the problem --

22         **THE COURT:**  The problem that's afflicting various

23  customers?

24         **MR. COWAN:**  The problem that is presented that

25  needs to be solved.

1          **MR. HOWARD:**  Right.

2          **THE COURT:**  For multiple customers.

3          **MR. COWAN:**  For multiple customers.

4          And then it has a number of fixes that flow from

5    that master fix or the problem that it ultimately generated

6    to each individual customer that needs that particular

7    problem solved.

8          **MR. HOWARD:**  So our proposal was, you know, if you

9    are going to do this on a master fix basis, then you pick a

10   limited number of them and you ask the people who know about

11   them to say using the information that's available in SAS,

12   what environments were used to generate this master fix that

13   was then sent out to different customers.  That would answer

14   the interrogatory because you would know, as in the example

15   they put up in their opposition, environment X, Y and Z were

16   used to replicate, develop, test this fix and then the

17   customers got the benefit of that.

18         It's a snapshot of a limited universe, which they

19   can argue is not representative or -- I don't even know how

20   it will come out.  Maybe it will come out that half of those

21   have cross use involved in them and half don't, but it gives

22   us something to work with.

23         **MR. COWAN:**  I think, your Honor, on that, again,

24   Mr. Howard is trying to bootstrap that remedy into some

25   extrapolation across the universe.

1          THE COURT:  Well, I haven't reached the

2    extrapolation.  He just said you could each argue what you

3    want about whether it's extrapolatable.  But what's wrong

4    with doing that?

5          MR. COWAN:  If we were to do something, I think we

6    would need to do it not an environment basis, to do it on a

7    master fix basis because of the way the --

8          THE COURT:  Okay.  Well, he just offered that, the

9    master fix basis.

10          MR. COWAN:  And it would need to be a very limited

11    number because it's still a very complicated undertaking.

12          THE COURT:  So what number?

13          MR. COWAN:  Five.

14          THE COURT:  That's kind of what I had in mind.  I

15    mean, we can do five.  Let Oracle pick which ones they are.

16    Let you keep, you know, some tabs on how long it takes.

17          MR. COWAN:  Better records than I did in the summer

18    of '07.

19          THE COURT:  Honest tabs, no inflating, no coffee

20    breaks, et cetera, but, you know...  And then, you know, see

21    where that goes.

22          If it really takes a lot of time and yields

23    information that's not very usable and a lot of fudges, it's

24    not going to work, but I wouldn't want to see a lot of

25    fudges.

1          I, in general, on the concept of what you have been

2    arguing is a pretty sort of abstract level, I don't see

3    anything -- I would be loathe to order some kind of

4    far-reaching overall, you know, if you can't refute it, it's

5    deemed admitted type of thing, which is really more like a

6    contention interrogatory or request for admission.

7          But on a specific basis when you're talking about

8    five or six or something, I think it's perfectly reasonable

9    to say, And we have no information at this time and we have

10   looked for it that would contradict it.

11         In other words, the SAS database says -- refers to

12   a certain environment and that normally means that you

13   downloaded it and then gave it to everybody else in the

14   master fix process and there is no information to the

15   contrary.  I think it's perfectly reasonable you're stuck

16   with it.

17         Then if you later came up with something to the

18   contrary, it may very well not be admissible, because it

19   would be too late.  There would have to be a very good reason

20   why, so --

21         **MR. COWAN:**  You mean, for those fixes?  For those

22   master fixes?

23         **THE COURT:**  Right, right, right, right.  In other

24   words, as opposed to some sweeping, you know, everything they

25   say in SAS is right, I think for these five, that would be

1  appropriate.

2        **MR. HOWARD:**  Your Honor, that was never my

3  proposal.  I never intended to say that it was conclusive or

4  irrebuttable, just that it was admissible.

5        And you always can put in admissible evidence that

6  you think rebuts the other person's admissible evidence, but

7  we have got to have the admissible evidence in the first

8  page.

9        **THE COURT:**  Generally speaking, I agree with you

10  about the admissible evidence issue.

11        It's almost 3:15 now and I have somebody waiting

12  for me.

13        **MR. HOWARD:**  Sorry, your Honor.  The only thing I

14  was going to ask is that there are two product lines,

15  PeopleSoft and JDE, that we be able to do five environments

16  from each so that we have -- because they are completely

17  separate.  They are done differently.

18        **MR. COWAN:**  It is -- at this point, your Honor,

19  it's just going to increase the amount of time, but if that's

20  what the Court thinks is reasonable, well, we will --

21        **THE COURT:**  Unless I get some other basis, it seems

22  not unreasonable.

23        **MR. COWAN:**  That's why I didn't refute it.

24        **MR. HOWARD:**  We are sorry for keeping you late,

25  your Honor.

1          **THE COURT:**  All right.  Well, it's just -- you

2   know, I think -- I don't know.  I mean, to the extent this

3   was presented as a fight over Rule 33, I just think it wasn't

4   presented -- it just -- I don't know.  Somehow that just is

5   not terribly helpful to the Court in the end in helping you

6   to resolve your dispute.

7          I mean, I'm very mindful that anything I do could

8   end up either costing somebody an extreme amount of money and

9   be wasteful, and I don't want to do that.

10          On the other hand, I want everyone to get their

11   legitimate amount of proof on important points.

12          I do think, you know, chasing down every fact is --

13   you know, is pointless and, you know, you will never be able

14   to have a trial long enough to accommodate that.

15          But on the other hand, I don't want, you know, key

16   issues to be hidden.  I just -- you know, somehow I think

17   these issues were not at all clear-cut.  Maybe that's why you

18   are fighting over them.

19          But given that, maybe that means you better come up

20   with compromises on them yourself, rather than trying to get

21   the Court to come up with one.

22          **MR. COWAN:**  I think, your Honor, the last solution

23   that we have ended up with in interrogatory 14 is it makes

24   sense in the same way that those four specific ESUs that were

25   identified in the complaint, that we then could go do some

1  specific response to, we had to under the federal rules to

2  admit or deny those allegations.

3          And so I see a parallel between that and what you

4  just discussed --

5          **THE COURT:**  Well, somewhat.  But, I mean, there's

6  also the point -- I do think in general making the database

7  available to both sides, educating the other side -- i.e.

8  Oracle in this case -- sufficiently that they can manipulate

9  it, that is the legitimate way to conduct discovery.

10         And generally speaking, as I've said, I think in

11 general I was more persuaded by defendant that Rule 33 did

12 apply, but I'm trying to see where might it be, you know, a

13 question of you need that plus something, you know.

14         But I think when we are in this arena of extremely

15 complicated very expensive, very technical discovery it -- it

16 just doesn't work to sort of prevent it.  Is it a Rule 33 or

17 isn't it?  It's not really -- somehow it doesn't seem to fit

18 very well to a practical solution.

19         **MR. HOWARD:**  We will try and come up with a

20 different way.  That was the objection they made, so we were

21 trying to cut through that.

22         **THE COURT:**  I understand.  I'm not really faulting

23 the parties.  I guess I'm grappling with, you know, sort of

24 how does the Court, federal procedure catch up with these

25 problems?  Because as you can see, I try very hard to come up

1  with practical solutions as opposed to, you know, very

2  theoretical technical arguments, which I don't -- I think

3  could end up being both unjust and enormously expensive.

4  That's what worries me.

5       So I don't know what more to say.  I'm not

6  necessarily faulting either party.  I'm just saying somehow

7  this is a very frustrating exercise.

8       **MR. HOWARD:**  We understand, your Honor.  I guess

9  all I can say is that I think both sides would agree there

10 was a fair amount of frustration to get to this point, and we

11 have been able to sort out a lot of these complicated

12 disputes.

13      From our perspective this is -- these were two that

14 went to really core liability issues where as long as SAS is

15 admissible, as long as the environment information, SAS, is

16 admissible I think we can work with that.  The concern is

17 over admissible evidence.

18      **THE COURT:**  To that extent I think, you know, why

19 don't you -- and I'm sure the judge will make you do it if

20 you don't do it now, Judge Hamilton.

21      I think you should be able to -- I don't know

22 exactly what issues.  But, I mean, generally speaking

23 anything from SAS ought to be admissible.  The question is,

24 then, what do you take from it?

25      **MR. COWAN:**  I don't think there is going to be any

1  major disputes on authenticity, that it is what it says it

2  is.

3          THE COURT:  It's a business record, so it's not

4  hearsay.

5          MR. COWAN:  I don't think there is going to be any

6  issue on that.  They have used it extensively in depositions,

7  et cetera.  I don't foresee that being a problem unless there

8  is some particular piece of it or component that has similar

9  liability issue, et cetera.  I don't think that's going to be

10 the big issue.  I do agree that's something we take up with

11 the trial judge at trial if --

12         THE COURT:  Well, I mean, there is no reason not to

13 take it up now to some extent.  I mean, I don't know if you

14 have some particular concern.

15         Anyway, I have to stop.  It's been an hour and 20

16 minutes.

17         MR. HOWARD:  We may make a further proposal in a

18 discovery conference in that regard.

19         THE COURT:  I'm not opposed to that.  I don't think

20 you can leave everything to the last minute.

21         MR. COWAN:  I understand.  But my only point on

22 that, your Honor, without knowing what his proposed agreement

23 is and trying to agree with something on the fly, I'm

24 hesitant not to commit.

25         THE COURT:  I'm not asking you to commit to

```
 1  anything right this minute.
 2          MR. COWAN:  Okay.
 3          THE COURT:  I do think to the extent this was about
 4  admissibility, I think you ought to address that directly by
 5  stipulation.
 6          MR. COWAN:  I don't expect any major barriers
 7  there.
 8          MR. HOWARD:  Thank you, your Honor.
 9          THE COURT:  All right.  Thank you.  I guess I will
10  ask both of you to prepare an order.
11          MR. COWAN:  Okay.
12          THE COURT:  I guess your motion --
13          MR. HOWARD:  Why don't we prepare it and send it to
14  them, your Honor?
15          MR. COWAN:  That's fine.  Thank you, your Honor.
16
17          (Whereupon, further proceedings in the
18           above matter were adjourned.)
19
20                          --oo--
21
22
23
24
25
```

## CERTIFICATE OF REPORTER

I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 07-1658 PJH (EDL), ORACLE CORPORATION versus SAP AG, et al were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

/s/ Debra L. Pas
_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, August 5, 2009