1    BINGHAM McCUTCHEN LLP                    Robert A. Mittelstaedt (SBN 060359)
     DONN P. PICKETT (SBN 72257)             Jason McDonell (SBN 115084)
2    GEOFFREY M. HOWARD (SBN 157468)         Elaine Wallace (SBN 197882)
     HOLLY A. HOUSE (SBN 136045)             JONES DAY
3    ZACHARY J. ALINDER (SBN 209009)         555 California Street, 26th Floor
     BREE HANN (SBN 215695)                  San Francisco, CA  94104
4    Three Embarcadero Center                Telephone:     (415) 626-3939
     San Francisco, CA  94111-4067           Facsimile:     (415) 875-5700
5    Telephone:  (415) 393-2000              ramittelstaedt@jonesday.com
     Facsimile:  (415) 393-2286              jmcdonell@jonesday.com
6    donn.pickett@bingham.com                ewallace@jonesday.com
     geoff.howard@bingham.com
7    holly.house@bingham.com                 Tharan Gregory Lanier (SBN 138784)
     zachary.alinder@bingham.com             Jane L. Froyd (SBN 220776)
8    bree.hann@bingham.com                   JONES DAY
                                             1755 Embarcadero Road
9    DORIAN DALEY (SBN 129049)               Palo Alto, CA  94303
     JENNIFER GLOSS (SBN 154227)             Telephone:     (650) 739-3939
10   500 Oracle Parkway                      Facsimile:     (650) 739-3900
     M/S 5op7                                tglanier@jonesday.com
11   Redwood City, CA  94070                 jfroyd@jonesday.com
     Telephone:  (650) 506-4846
12   Facsimile:  (650) 506-7114              Scott W. Cowan (Admitted *Pro Hac Vice*)
     dorian.daley@oracle.com                 Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13   jennifer.gloss@oracle.com               JONES DAY
                                             717 Texas, Suite 3300
14                                           Houston, TX  77002
     Attorneys for Plaintiffs                Telephone:     (832) 239-3939
15   Oracle USA, Inc., Oracle International  Facsimile:     (832) 239-3600
     Corporation, and Oracle EMEA Limited    swcowan@jonesday.com
16                                           jlfuchs@jonesoday.com

17                                           Attorneys for Defendants
                                              SAP AG, SAP AMERICA, INC., and
18                                           TOMORROWNOW, INC.

19                    UNITED STATES DISTRICT COURT

20                   NORTHERN DISTRICT OF CALIFORNIA

21                     SAN FRANCISCO DIVISION

22   ORACLE USA, INC., *et al.*,             Case No. 07-CV-1658 PJH (EDL)

23           Plaintiffs,                      **JOINT DISCOVERY CONFERENCE
                                             STATEMENT**
24           v.
                                             Date:      August 25, 2009
25   SAP AG, *et al.*,                        Time:      11:30 a.m.
                                             Courtroom: E, 15th Floor
26           Defendants.                      Judge:     Hon. Elizabeth D. Laporte

27

28

Dockets.Justia.com

Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint Discovery Conference Statement.  The Parties jointly request that the Court schedule sixty minutes on August 25, 2009 to discuss discovery issues.

## I.        Extrapolation Proposal and Requests for Admission

*Oracle's Position*:  As the Court knows, the Parties have been unable to stipulate to facts regarding Defendants' copying and use of Oracle's intellectual property.  After more than a year of such efforts, Defendants now refuse to answer Requests for Admission that, if accurately answered, would serve a similar purpose.  They would alleviate the burden on both Parties to collect and analyze the extensive evidence regarding TN's downloading and use of Oracle's software on an individual fix-by-fix basis over time, and still provide Oracle with admissible evidence.

Regarding the stipulation, Defendants continue to block this effort to summarize TN's general processes, despite the Court's recognition that "the incentive for the Defendants to stipulate" is efficiency and alleviation of discovery and evidence burdens: "that is to say the alternative is to spend a huge amount, more money and time on unearthing every fact."  *See* Exhibit A (excerpt from Transcript of November 25, 2008 Discovery Conference) at 34:18-22. Oracle's third proposed stipulation on this topic took months of meet and confer efforts to develop.  That proposal was attached as Exhibit A to the February 9, 2009 Joint Discovery Conference Statement (under seal), and Defendants rejected it.

In response to Oracle's request, Defendants agreed on April 21, 2009 to provide a list of the facts to which they *are* willing to stipulate.  They provided this document on July 14, 2009. *See* Exhibit B (July 14, 2009 extrapolation proposal including cover email) (filed under seal). There are three significant problems with Defendants' proposal, which focuses on stipulated testimony.  First, Defendants continue to insist that they will agree to nothing until they learn how Oracle will use the stipulated facts in its damages analysis.  *Id.*  The Court has rejected the logic of that position.  *See* Exhibit C (excerpt from Transcript of February 13, 2009 Discovery

1   Conference) at 9:14-25 ("And I guess I find that puzzling, to tell you the truth, because . . . I have

2   trials where the[re] are stipulated facts and you can use them any way you want, because by the

3   virtue of they're stipulated they're true.").  Next, Defendants limit each part of their proposal by

4   stating it "shall not be used to suggest, imply or infer in any way that these service activities were

5   always performed using this practice."  Exhibit B at 4:7-9; 6:12-14.  As the Court suggested, a

6   stipulated fact should be available to both Parties for any purpose, including argument.  Finally,

7   even though Defendants were supposed to provide a list of the facts to which they *would* agree to

8   stipulate, they stated in their cover email that Oracle was not empowered to accept Defendants'

9   proposal and, more, that "Defendants do not and will not agree to even [their own] attached draft

10  proposed stipulation."  *Id.*  In other words, despite having had Oracle's third proposal for over six

11  months, and despite having provided Oracle with a document stating some facts, Defendants have

12  not actually agreed to anything.

13      The inability to arrive at a stipulation led Oracle to serve a set of RFAs directed to the

14  same facts at issue, TN's business practices, which the Court has suggested as an alternative.  *See*

15  Exhibit A at 34:2-6 ("we could go the RFA route").  Among others, Oracle propounded RFAs

16  asking Defendants to admit to certain specific uses of Customer Connection, as well as to certain

17  detailed statements about TN's development process.  For each step of the process addressed,

18  Oracle asked Defendants to admit the step occurred: (a) each time; (b)the majority of the time; (c)

19  some of the time; and/or (d) at least once.  The variety of options for each step would have

20  permitted Defendants to select the most accurate frequency, in keeping with the Court's

21  suggestions about compromising through variations in language.  *See* Exhibit A at 41:21-43:15;

22  Exhibit C at 11:2-12:11, 18:10-20.  The descriptions of the steps were taken from Defendants'

23  witnesses' testimony and documents.

24      Defendants, however, refused to admit to any of these RFAs, even though they cannot

25  credibly refuse given their witnesses' testimony and the documents they have produced.  For

26  example, even though TN's Rule 30(b)(6) designee for PeopleSoft environments, Catherine Hyde,

27  testified that she created the environment HG75103C "using some customer software" and that it

28  was "used to support HG702 customers," Defendants denied four Requests asking them to admit,

2

alternatively, that TN created environments from customer software for each fix, the majority of fixes, some fixes, or even once.  Exhibit D at 50:16-51:15 (Hyde 30(b)(6) excerpts).  At least two of these denials are not credible in light of Ms. Hyde's testimony, and while Oracle can use that testimony at trial, it has employed the RFAs to leverage Ms. Hyde's testimony into broader application in lieu of a stipulation.

Oracle sent Defendants a meet and confer letter on August 10 about these RFA deficiencies, and hopes that Defendants will reconsider their responses.  However, Defendants cannot continue to block all of Oracle's inquiries into these important facts.  Whether by stipulation or RFA, they must admit to those facts about TN's business practices and processes that are not reasonably in dispute.  If Defendants do not reconsider, Oracle will seek the Court's assistance with a motion to compel further responses to the RFAs.

*Defendants' Position*:  Defendants remain willing to negotiate a stipulation but have consistently maintained that they must have some objective measure to weigh the cost/benefit of relieving Oracle of its burden of proof.  Unless and until Oracle provides Defendants with some information as to how it intends to use the stipulation with respect to its damages calculations, Defendants must continue to hold Oracle to its full burden of proof on each and every element of each and every one of its claims.

Oracle's version of the "facts" on which it seeks a stipulation differ somewhat from what Defendants contend are the facts.  Oracle's only response to that factual dispute is to point to testimony which Oracle claims proves some of the facts on which it seeks a stipulation.  If Oracle already has testimony establishing certain facts, then it does not need a stipulation on those facts.  Thus, the major points of the parties' disagreement with respect to the proposed stipulation are: (a) the "facts" themselves; and (b) how any "agreed facts" would be used by Oracle in its damages calculations.  Defendants have consistently maintained that their negotiations regarding the stipulation are Rule 408 compromise and settlement negotiations.  As with any Rule 408 negotiations, all parties involved need to know what they are giving up in exchange for what they are receiving.  And, as noted above, Oracle continues to refuse to provide Defendants with critical information necessary to evaluate the downside risks of relieving Oracle of its burden of proof.

3

1     Oracle has propounded over 700 requests for admission, almost all of which are

2   objectionable on multiple grounds.  Oracle is attempting to use these voluminous requests for

3   admission to continue to seek Defendants' acquiescence to Oracle's version of the "facts".

4   Defendants' basic disagreement with Oracle regarding the "facts" themselves (which is one of the

5   two primary obstacles preventing substantial forward progress on the extrapolation/stipulation) is

6   one of the reasons Defendants have denied many of Oracle's requests for admission.  That said,

7   as Oracle notes above, Oracle has pointed Defendants to several specific requests for admission

8   and has asked Defendants to reconsider their answers to those requests.  Defendants are in the

9   process of reviewing Oracle's correspondence regarding those specific requests and intend to

10   continue the meet and confer process on this issue.

11          **II.      Pre-2005 Damages Related Discovery**

12          ***Defendants' Position***:  Oracle continues to refuse to provide certain financial and

13   customer-specific data for the pre-2005 period (*i.e.*, the period prior to Oracle's acquisition of

14   PeopleSoft).  This data includes customer-specific financial reports and cancellation reports that

15   Oracle has produced for the post-acquisition time period.  Oracle contends that the data is

16   available only on "legacy" PeopleSoft systems and that it would be unduly burdensome to

17   retrieve it.  Oracle has also refused to provide Rule 30(b)(6) testimony on numerous damages-

18   related topics for the pre-2005 period on the ground that it does not have the historical

19   knowledge to do so and has no obligation to obtain it.  These topics include PeopleSoft financial

20   records, pricing policies, and support policies, about which Oracle has disclaimed knowledge.

21   Oracle contends that its customer contract files provide sufficient information to calculate

22   damages for the pre-2005 period.  Defendants disagree because the contract files are incomplete

23   as well.  These gaps in Oracle's production of pre-2005 data, along with its claimed lack of

24   knowledge of PeopleSoft financial and other records make it impossible to calculate damages for

25   the pre-2005 period.  Defendants will continue to meet and confer with Oracle, but will seek the

26   Court's guidance at the discovery conference on the burden issue and Oracle's position that it is

27   not obligated to provide Rule 30(b)(6) testimony regarding the records of the predecessors-in-

28   interest to the plaintiff entities.

1     ***Oracle's Position***:

2     *Legacy Customer Reports*:  The facts regarding Oracle's production of pre-2005 customer

3 contracts – and the importance for purposes of proving damages of such production – are

4 different from what Defendants state.  First, Oracle has produced pre-2005 customer-specific

5 financial reports where it could from its active systems; for example, it has produced Analytics

6 License Reports, which contain all historical software licenses for lost customers that were still on

7 support at the time of the PeopleSoft acquisition.  Oracle has not produced summary reports with

8 pre-2005 data only in cases where the customer was not active at the time of the PeopleSoft

9 acquisition (*i.e.*, it had already left for TN), because in that situation there is no legacy PeopleSoft

10 system up and running from which such reports can be produced.  As Oracle has explained to

11 Defendants in meet and confer, and as Oracle witnesses have attested, PeopleSoft and JDE legacy

12 contract data was not migrated to Oracle's current systems and thus there is no comparable

13 automatic searching or querying ability such as was used to create the summary reports for active

14 customers.  Thus, locating historic pre-2005 customer-specific information on the system would

15 require individual, manual searching and sorting, made all the more difficult by the inexact

16 naming and numbering of associated customers.  Indeed, it is the matching of customer names

17 and identification numbers to contracts and report fields that has proven the most time consuming

18 part of the specific customer damages efforts.  To obtain the legacy data for any given customer,

19 Oracle would have to upload and then access the legacy system, spend unknown hours

20 researching that customer (and its associated alternative names, numbers, and locations), assess

21 which material found (if any) is material and  relevant to the actual customer at issue, and then

22 take any found data and either manually transcribe it to a piece of paper or enter it into a different

23 computer system for production.

24     Second, and critically, even without summary reports it is possible to calculate damages

25 for the pre-2005 period (or for any period).  That is because the customer's historic contracts

26 contain the necessary information to calculate those damages.  Indeed, summary reports are no

27 more than convenient compilations of the underlying contract data; however, they are not

28 necessary to doing the calculations.  Indeed, Oracle's damages experts are cross-checking the

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    Oracle summary reports where they have been automatically available and produced against the

2    underlying contracts Oracle produced even for more current customers (as well as against the TN

3    contracts Defendants produced and the customer's records produced pursuant to subpoenas) to

4    validate damages calculations.  This is exactly what Defendants' experts are doing, per recent

5    declarations.  So there is no established need for customer reports run from legacy data that would

6    justify the significant burden on Oracle in trying to reactive retired systems to create them.

7         *Legacy Cancellation Reports*.  Oracle has produced numerous pre-existing legacy

8    PeopleSoft and JDE service renewal and cancellation reports when found in custodial productions,

9    which Defendants have used extensively as deposition exhibits.  These historic reports do not

10   exist in any centralized repository.  The underlying legacy database from which those legacy

11   PeopleSoft reports were run does not now have reporting functionality.  Thus, there is not an

12   active system from which legacy PeopleSoft or JDE cancellation reports can currently be run, as

13   Oracle witnesses have also attested.

14                                              ***

15        Defendants have never disputed the associated burden with their request for duplicative

16   legacy data.  Because this data is neither necessary nor reasonably accessible, Oracle believes

17   both Parties should rely on Oracle's and Defendants' customer contracts, financial reports, and

18   cancellation reports, as Oracle has done.  Defendants have yet to explain why this is an

19   inadequate solution or what exactly they are missing.  However, Oracle will continue to meet and

20   confer with Defendants on this issue.

21        *Oracle's Objections to Providing 30(b)(6) Testimony on Legacy PS or JDE Records*.

22   Defendants first complained about Oracle's objections to Defendants' Rule 30(b)(6) notice to

23   Oracle USA, Inc  on August 13, and no meet and confer has yet occurred.  Oracle objected to

24   providing Rule 30(b)6) testimony on pre-2005 PeopleSoft and JDE financial records, pricing

25   policies, and support policies because documents, not memories of individual witnesses, explain

26   these years of pricing and policies far better.  Moreover, Defendants have taken extensive

27   individual testimony on these topics, from current Oracle employees who were legacy PeopleSoft

28   and/or JDE employees.  These include Rick Cummins, Robbin Henslee, Buffy Ransom, and Beth

Shippy.  In its objections to Defendants' Third 30(b)(6) notice to Oracle USA, Inc., Oracle expressly pointed Defendants to that testimony, as well as to the extensive documents Oracle has produced from those custodians on those topics.  In their August 13 letter, Defendants indicate they will accept designations of testimony from these witnesses as to Siebel, if applicable, and also agree to accept Bates-numbers in lieu of testimony for certain topics such as pricing terms and increases.  Oracle will meet and confer with Defendants as requested in their August 13 letter to see what, if anything, the individual witnesses  did not attest to as to PeopleSoft and JDE pricing and policies that is not otherwise contained in documents and whether anyone else in Oracle's current employ would know more.

### III.    Deposition Dates and Witnesses

*Oracle's Position*:  Oracle is concerned about the pace at which Defendants provide deposition dates, as well as the timing of the dates themselves.  Below is a chart summarizing when Oracle requested a date for certain outstanding witnesses, when Defendants responded, and with what date.

| Witness | Date Requested | Date of Response Offering Dates | Date Offered/Set |
|---------|----------------|--------------------------------|------------------|
| Scott Trainor | June 15 | June 23, then cancelled by Defendants on July 21. | Set for July 23; cancelled by Defendants on July 21 without explanation; no new date offered yet. |
| Werner Brandt | June 15 | NONE | NONE |
| Desmond Harris | July 6 | NONE | NONE |
| Laura Sweetman | July 6 | NONE | NONE |

As the chart shows, although Oracle requested these witnesses in June or early July (and Defendants agreed in April to provide additional deposition time with Mr. Brandt), Defendants have failed to offer dates.  While it is true that both Parties have many discovery obligations – since April, Oracle has responded or supplemented its responses to 122 interrogatories, produced 51 custodians' documents (comprising 5.5 GB of data) and 533 CDs of software, defended 17 depositions of Oracle witnesses, and scheduled 11 more – Defendants' delay in providing dates is impacting Oracle's ability to complete these depositions by the close of fact discovery and in time for their inclusion in expert reports.  In particular, Oracle was surprised when Defendants

1   unilaterally, and without explanation, cancelled Scott Trainor's deposition two days before it was

2   to take place.  Mr. Trainor, a former PeopleSoft attorney now working for SAP's legal

3   department, is a crucial witness, and the last-minute cancellation (and subsequent failure to offer

4   new dates) is troubling.  So too is Defendants' position – told to Oracle for the first time last week

5   – that key Board member and CFO Werner Brandt will not testify until November, perhaps less

6   than a week before Oracle's damages report is due.  Oracle asks for the Court to order Defendants

7   to offer September dates for these witnesses; if Defendants are unable to provide September dates

8   for Ms. Sweetman, Oracle asks that they agree that her deposition take place shortly before or

9   after Gerd Oswald's October 27 deposition in London, to alleviate both Parties' travel burdens.

10          Defendants' recitation, below, about witnesses they requested on May 13 is inaccurate in

11  two respects.  First, one of the two dates offered on July 7 was an alternate date for one witness,

12  for whom Oracle had already offered a far earlier date that Defendants had rejected.  Second, as

13  Defendants know, the lone witness for whom Oracle has not offered a date is a former Oracle

14  employee who resides in Germany.  Oracle suggested to Defendants that the Parties consolidate

15  their travels by scheduling all German depositions together; therefore, Oracle will encourage its

16  former employee to agree to appear for his deposition once Defendants provide a date and

17  location for Mr. Brandt's deposition.  Since Defendants forced Oracle to reschedule certain

18  customer depositions last May because of Defendants' counsel's schedule, Defendants must

19  understand the need for cooperation.

20          As for customer depositions, which Defendants refer to below, Oracle has promptly

21  cooperated when Defendants have provided potential dates for such depositions in the past and

22  will continue to do so.  Despite Oracle's requests, Defendants have not yet told Oracle which

23  customers, in which locations, they intend to notice for deposition, which impacts Oracle's ability

24  to confirm its counsel's availability.

25          ***Defendants' Position***:  As noted in Oracle's chart above, Defendants have offered dates

26  for all but four requested witnesses: Laura Sweetman, Desmond Harris, Scott Trainor and Werner

27  Brandt.  Ms. Sweetman, a former TN executive, is a resident of England and has engaged her own

28  counsel.  Defendants have been in communication with Ms. Sweetman's counsel on several

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

occasions and before the discovery conference hope to provide additional information to Oracle regarding Ms. Sweetman's response to Oracle request to depose her.  Mr. Harris is a former TN employee that is not currently represented by outside counsel.  Defendants have been unable to contact him by phone or otherwise.  Defendants are continuing their efforts to contact him (including having sent him a certified letter indicating that if he does not return Defendants' counsel's calls, then Oracle will subpoena him directly) and hope to be able to provide additional information to Oracle regarding Mr. Harris before the discovery conference.  Scott Trainor is an in-house lawyer at SAP and former in-house lawyer at PeopleSoft.  His deposition was originally scheduled and then cancelled for reasons that implicate the attorney-client privilege.  Defendants advised Oracle of that fact.  Mr. Trainor now has separate counsel and Defendants are working with Mr. Trainor and his counsel to select a mutually convenient date on which to reschedule his deposition and hope to provide proposed dates to Oracle before the discovery conference.  Mr. Brandt is the CFO and an executive board member of SAP, AG and has already been deposed once in this case.  Defendants agreed to collect additional custodian documents from Mr. Brandt in Germany and allow Oracle to depose Mr. Brandt again on the Siebel claims.  Defendants informed Plaintiffs that due to the additional document collection, which is necessarily complicated by German privacy laws, the volume of the data, the "21-day agreement" (there must be at least 21 days between a custodian's document production and that custodian's deposition), and Mr. Brandt's quarter-end obligations as CFO, Mr. Brandt is not available for deposition until early November.  Defendants hope to provide a definitive date and location for Mr. Brandt's deposition prior to the discovery conference.

Defendants have been cooperative in scheduling depositions.  For example, when Oracle has requested earlier dates that were workable for the witness and all counsel, Defendants have complied with Oracle's requests.  Moreover, what Oracle's chart does not show is that Oracle has taken a similar length of time to offer deposition dates in response to Defendants' requests and has required similar lead times.  For example, on May 13 Defendants requested dates for eight witnesses.  On June 18 and 19, Oracle responded with dates in July, August, and September for four witnesses; on July 7, Oracle responded with dates in August and September for two other

1   witnesses; on August 17, Oracle responded with a date in mid-October for one witness; and

2   Oracle has yet to provide dates for the remaining witness.

3       Also, Defendants have a significant number of deposition hours remaining and intend to

4   use many of those hours deposing certain TN customers.  Defendants have proposed dates in

5   September for two customer depositions and are waiting for Oracle's response.  Defendants have

6   advised Oracle that Defendants intend to take numerous customer depositions between now and

7   the close of fact discovery and thus need Oracle's ongoing cooperation in getting those dates

8   scheduled.  If the Court offers any guidance at the discovery conference regarding deposition

9   scheduling, then the TN customer depositions should be taken into account.

10      **IV.    Updating Interrogatory Responses with Siebel Information**

11      ***Oracle's Position***:  As part of the Parties' joint stipulation to amend the case schedule,

12  which Judge Hamilton signed on June 11, the Parties agreed that "each side may identify 20

13  interrogatory responses that it would like updated in scope consistent with the additional Siebel

14  discovery permitted or required elsewhere in this Order."  Docket Item 325 at 6:21-24.  This

15  provision was necessary to ensure the Parties had sufficient written discovery regarding Siebel,

16  given the fact that both Parties had already used most of their available interrogatories.  (The

17  stipulation did not impose any limitation on how the Parties could use those remaining

18  interrogatories.)  For example, the stipulation and order's explicit reference to *updated* responses

19  indicates that the Parties were referring to extant interrogatories, to which Oracle or Defendants

20  had already responded, though without Siebel-related information.  Based on this understanding,

21  when selecting its 20 interrogatory responses for Defendants to update, Oracle did not include

22  interrogatories from its Fourth Set,[1] as it was not served until May 20, after the Parties had

23  already submitted their stipulation to Judge Hamilton.  The Parties could not have believed during

24  negotiations that the 20 updated interrogatories would be drawn from a set not yet served, and the

25  stipulation did not purport to set out all the Siebel discovery available to the Parties.  Nor is

26  Defendants' position, below, that Siebel was not part of the case until August 14 supported by the

27      _____

[1] Prior to and independent of the Parties' stipulation to amend the case schedule, each side
was entitled to serve 125 interrogatories.  Oracle's Fourth Set drew from this number.

28  Defendants have served all 125 interrogatories.

facts.  Defendants stipulated to Siebel's inclusion on May 12, and Judge Hamilton made clear on May 28 that she would confirm that stipulation, as reflected in her June 11 order.  Moreover, Defendants asked Oracle witnesses about Siebel as early as their second deposition, in August *2008* (because Oracle had referred to Siebel as early as the Second Amended Complaint).

Oracle was therefore surprised when Defendants' eventual responses to the Fourth Set refused to provide Siebel-related information where appropriate, contending that Oracle is limited to 20 total interrogatories relating to Siebel in total – despite not having been served, much less answered, when the Parties agreed to *update* 20 existing interrogatory *answers*.

To preserve its rights, on August 12, Oracle provided a revised list of 20 interrogatories to Defendants.  However, it believes Defendants are obligated to answer all interrogatories from the Fourth Set, as well as any subsequently-served interrogatories, with Siebel-related information where appropriate.  Oracle believes this is a matter the Court can resolve without motion practice. If Defendants must answer the newly-served interrogatories with Siebel-related information, on which Oracle believes no limitation was imposed by the stipulation, then the Court can give that guidance.  Alternatively, if the Court agrees with Defendants' interpretation, then Oracle requests leave to withdraw and reserve the interrogatories in question.

Regarding the Siebel Rule 30(b)(6) testimony referred to below by Defendants, Oracle has not refused to produce a witness on any reasonable line of inquiry.  Defendants noticed Oracle witnesses for 131 sub-topics.  Oracle objected to 61, generally on the same grounds it had objected to their PeopleSoft and JDE predecessors and, as to 49 of those 61, because the sub-topics were not relevant to Siebel.  It then agreed to provide a witness as to 30, designated existing applicable testimony as to another 27, and offered other responsive information as to 13 after meet and confer.  It is in these 13 where Oracle suggested another form of production would be appropriate given the number of Siebel customers involved.

***Defendants' Position***:  Defendants disagree with Oracle's construction of the parties' agreement and Judge Hamilton's resulting June 11th Order relating to interrogatory discovery for Siebel.  One primary purpose of the parties' agreement to permit Oracle to add Siebel into the case was to define the extent of discovery and resulting burdens regarding that new issue.

1    Moreover, Oracle's position regarding this interrogatory issue is at odds with Oracle's refusal to

2    provide Siebel Rule 30(b)(6) testimony on a number of topics on the ground that there are only 16

3    customers at issue therefore extensive discovery is not warranted.  In other words, Oracle is

4    simultaneously asserting that the discovery it seeks regarding Siebel should be unlimited and the

5    discovery it has to provide to Defendants regarding Siebel should be restricted.

6         The interrogatories Oracle served on May 20th were no different than those previously

7    served in that Defendants responded to them referencing the product lines that were at issue in the

8    case **at the time the response was due**.  The Siebel products were not formally at issue in this

9    case until Friday August 14, 2009, when Judge Hamilton granted Oracle's motion to amend its

10   complaint.  Thus, the interrogatories served on May 20th are no different than those Oracle

11   previously served.  Defendants agree that if the parties are unable to reach an appropriate

12   compromise before the discovery conference, then this is an issue that can be resolved during the

13   conference without the need for motion practice.

14            **V.**      **Admissibility of TN-Authored SAS Records**

15        *Oracle's Position*:  As discussed at the August 4 hearing on Oracle's motion to compel,

16   and as the Court is generally aware, Defendants have repeatedly, and heavily, relied on the SAS

17   database for their responses to interrogatories and requests for production.  Unlike substantive

18   discovery responses, this reliance on SAS may not provide Oracle with presumptively admissible

19   evidence.  Given the breadth and frequency of Defendants' reliance on SAS, Oracle believes it is

20   therefore appropriate for the Parties to stipulate that all TN-authored documents and statements,

21   and all TN-authored data regarding environments, downloads, and TN's service process in

22   general, contained in SAS, are admissible at trial.  Without such a stipulation, Oracle will be

23   unfairly prejudiced by Defendants' choice to rely on SAS in their discovery responses.  Further,

24   such a stipulation is to Defendants' advantage as well, since they presumably agree that the TN-

25   authored documents in SAS are authentic and admissible, given their frequent reliance on them in

26   lieu of narrative interrogatory responses, and intend to make use of the same documents

27   themselves at trial.

28

At the August 4 hearing, the Court stated, "I do think to the extent this was about admissibility, I think you ought to address that directly by stipulation."  Exhibit F (Transcript of August 4 Hearing) at 59:3-5.  Oracle will provide Defendants with a proposed stipulation during the week of August 17 and will be prepared to discuss it with the Court at the August 25 Discovery Conference.

*Defendants' Position*:  As Defendants' counsel has previously indicated to the Court, Defendants are willing to consider any reasonable proposal by Oracle in this regard and will respond accordingly when and if it is received.  Regardless, it is important to note that Oracle's statement above discusses a unilateral stipulation regarding the authenticity and/or admissibility of certain of Defendants' documents.  To the extent that any agreement is reached regarding authenticity and/or admissibility in this case, that agreement should be bilateral and consider certain of Oracle's documents as well.

## VI.    Oracle's Compliance with Order on Defendants' Copyright Motion to Compel

*Defendants' Position*:  It has been two months since the Court's June 26 order on Defendants' copyright motion to compel and Oracle still has not provided the supplemental interrogatory response the Court ordered regarding derivative Registered Works.  Defendants request that the Court specify a date certain that, given the limited time left for discovery, allows Defendants sufficient time for analysis and follow-up discovery.  It is important to note that Oracle has produced additional inter-entity agreements after its June 29 certification (pursuant to this Court's order) that it had produced "all inter-Oracle entity agreements relating to the acquisition, assignment, or transfer of the Registered Works located after a diligent search of all locations at which such materials might plausibly exist."  Oracle has characterized the additional agreements it produced after its certification as not being subject to the June 26th order.  Defendants disagree that the additional agreements, which include assignment and distribution agreements among Oracle entities similar to those produced previously, are not subject to the order.  One of the purposes of the motion and resulting order was to provide certainty as to the universe of applicable agreements.  Oracle's continuing production of agreements defeats that

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    purpose.  Moreover, now that Judge Hamilton has permitted Oracle to include additional

2    copyright registrations in this case, Oracle should be given a date certain to produce all

3    responsive documents related to those new registrations.

4          As another example of Oracle's delayed production of documents and information ordered

5    produced by this Court, Oracle has during the past week also produced additional customer-

6    specific financial reports for more than 50 customers after representing in May that its "April 21,

7    2009 supplemental production of financial reports [pursuant to this Court's April 2 order]

8    included any and all financial reports that could be located in reasonably available databases after

9    an extensive customer-by-customer search."  Oracle has indicated that it is continuing to

10   investigate whether there are additional reports that should have been produced as well.

11   Defendants contend that this investigation should have been completed and the supplemental

12   productions made a long time ago.  Defendants thus request that the Court set a date certain for

13   Oracle to produce any such reports.

14         With regard to Oracle's statements on Defendants' production of customer-specific

15   reports: (a) Defendants have already produced customer-specific financial reports for all TN

16   customers for which such reports exist, including the Siebel customers recently added to the list;

17   (b) Defendants have responded to Oracle's August 18 inquiry regarding contracts for six TN

18   customers indicating that contracts for three of them were produced several months ago and that

19   no contracts exist for the remaining three; and (c) Defendants' customer-specific reports are

20   largely pre-existing documents -- to the extent any of them are "unreliable," it is a reflection of

21   the available data and not due to any failure by Defendants to supplement.

22         ***Oracle's Position***:  Defendants here combine two unrelated issues.  First, as to the

23   interrogatory response, the Parties and the Court agreed and understood that supplementing

24   Interrogatory No. 13 per the Court's June 26 order would take a significant amount of time (the

25   newly-added part of that response will be approximately 70 pages).  That is why, before even

26   issuing that order, the Court ordered the Parties to meet and confer with respect to Oracle's

27   burden, and is also why the order currently contains no date certain.  Oracle has been working

28   diligently to collect, organize, and verify this information to be able to supplement its response

                                        14

appropriately, and for PeopleSoft and JDE, expects to do so prior to the August 25 Discovery Conference.  For Siebel and Oracle's database products (the latter of which Judge Hamilton allowed to be added to Oracle's complaint on August 14, 2009), Oracle is working similarly diligently and will further supplement its response as soon as possible, and in particular, the Parties have agreed that supplementation of prior interrogatories related to Siebel should occur by September 18 and Oracle will meet that deadline.  Regardless, Defendants will have these responses with more than ample time for sufficient analysis and follow-up discovery, the need for which they do not attempt to quantify.  Oracle has proposed a limited amount of additional discovery for both sides in connection with the database claims, but have not received a response yet regarding that proposal.  If necessary, Oracle will seek appropriate relief from Judge Hamilton or this Court.

As to the June 26 Order, it specifically is limited to the inter-entity agreements "relating to the acquisition, assignment, or transfer of the Registered Works…."   Docket Item 328, ¶ 3. Defendants now imply, but stop short of claiming, that the further inter-entity productions have related to "the acquisition, assignment, or transfer of the Registered Works."  The further inter-entity agreements did not relate to "the acquisition, assignment, or transfer of the Registered Works," and Oracle's certification stands, subject to the inter-entity agreements related to the new amendments.  They also say now for the first time that the intent of their copyright motion (as to which the June 26 Order related) was to receive "the universe of applicable agreements."  That claim contradicts the language of the June 26 Order itself.   Further, not only is that new request vague and overbroad as to what Oracle would be forced to produce in response, but it also fails to take into account the ongoing discovery about the applicable agreements, including ongoing production of Siebel and Database-related agreements.

Second, as to Oracle's production of customer-specific financial reports, although that production is essentially complete, under Rule 26(e) Oracle is obligated to and does supplement its discovery responses if it learns new relevant information.  Last week's production was such a supplement.  Corporate affiliations are not always readily apparent when running such reports. The Parties have been supplementing when such affiliations are identified, often through a

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1  manual review and comparison of documents produced by both Parties.  For example, in

2  searching for the corporate history of relevant customer Foot Locker during the pertinent time

3  period, Oracle learned that the entity Venator Group became Foot Locker, and accordingly went

4  back to review, collect, and produce Venator Group's OKI3 report.  Both Parties are obligated to

5  make such supplements of their discovery responses, and Defendants have done so as well as

6  Oracle.  For example, Oracle believes Defendants should supplement their own customer-specific

7  financial reports, as Defendants have described those reports as "not reliable" and have not

8  produced updated versions since last amending their list of customers.  As another example, on

9  August 18, Oracle pointed out six TN customers for whom Defendants have not produced

10  customer contracts, which Defendants should provide in a supplemental production.

11       Given its obligations under Rule 26(e) and its need for Defendants' changing customer

12  information to evaluate its own production, Oracle cannot predict when, if at all, it will learn new

13  information that will require supplementation of its discovery responses.  It will continue to

14  timely meet its obligations and expects Defendants to do the same.

15       **VII.    Supervisory Board Documents**

16       ***Oracle's Position***:  At his June 2, 2009 deposition, Hasso Plattner, Chairman of the SAP

17  AG Supervisory Board, referenced two documents that are responsive to Oracle's document

18  requests but have not been produced by Defendants.  First, Mr. Plattner described a Supervisory

19  Board meeting, at which the SAP AG Executive Board presented the TN acquisition opportunity

20  to the Supervisory Board and at which Mr. Plattner asked the Executive Board if TN was

21  "supported by a legal framework" and "whether [TN] has the right to access source code."

22  Exhibit E at 17:25-18:11 (Plattner Depo.).  This meeting therefore involved topics plainly

23  relevant to the case, but Defendants did not produce any corresponding Supervisory Board

24  meeting minutes from it.  Second, Mr. Plattner testified that a one-page TN report was presented

25  at the same Supervisory Board meeting.  This document also does not appear in Defendants'

26  production.  *Id.* at 13:1-7; 73:2-74:3; 75:23-76:9.

27       Oracle inquired about these documents soon after Mr. Plattner's deposition, but

28  Defendants stated that they were unable to locate any such documents.  However, after reviewing

1    the transcript for accuracy, Mr. Plattner did not change his testimony.  This creates a discrepancy

2    between the Chairman's sworn testimony and the documents collected by Defendants, which

3    Defendants have been unable to explain in meet and confer.  Oracle requests that Defendants be

4    required either to conduct a more exhaustive search, or provide a detailed description of why they

5    are unable to produce documents their Chairman has said existed and that he reviewed and

6    believed were still available.  Since Defendants, below, do not claim that any such documents are

7    archived or otherwise inaccessible, such a description should state that the documents referenced

8    by Mr. Plattner have been lost or destroyed, if that is the case.  Whether through further

9    investigation or description, Oracle needs confirmation that Defendants' counsel have discussed

10    the matter directly with Mr. Plattner as part of the effort to locate these critical documents; a

11    statement from a custodian of the minutes, as offered by Defendants below, is insufficient without

12    certification that Mr. Plattner has been directly consulted.

13       ***Defendants' Position***:  Defendants have already informed Oracle that Defendants have

14    attempted to determine whether the document(s) noted above ever existed, and have been unable

15    to make that determination and/or locate such document(s).  If necessary, Defendants are willing

16    to produce a declaration from one of the custodians of the Supervisory Board meeting minutes

17    indicating that a reasonable search has been made and that the above-cited document(s)

18    referenced in Mr. Plattner's testimony, to the extent they ever existed, have not been located.

19

20    DATED:  August 18, 2009              BINGHAM McCUTCHEN LLP

21

22

23                        By: _____ /s/ Bree Hann _____

24                                Bree Hann
                               Attorneys for Plaintiffs

25                    Oracle USA, Inc., Oracle International
                   Corporation, and Oracle EMEA Limited

26       In accordance with General Order No. 45, Rule X, the above signatory attests that

27    concurrence in the filing of this document has been obtained from the signatory below.

28

1   DATED:  August 18, 2009                JONES DAY

2

3                                          By: _____/s/_____

4                                                   Jason McDonell
                                              Attorneys for Defendants
5                                          SAP AG, SAP AMERICA, INC., and
                                              TOMORROWNOW, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE


ORACLE CORPORATION, a Delaware )    Case No. C07-1658
Corporation; ORACLE, USA, INC.,)    PJH(EDL)
a Colorado Corporation; and    )
ORACLE INTERNATIONAL       )
CORPORATION, a California     )
Corporation,             )
                   )
         Plaintiffs,   )
                   )
     vs.              )    FURTHER DISCOVERY
                   )    CONFERENCE
                   )
SAP AG, a German Corporation; )
SAP AMERICA, INC., a Delaware )
CORPORATION; TOMORROWNOW, INC.,)
a Texas Corporation; and DOES )
1-50, Inclusive,        )
                   )
         Defendants.   )
_____ )


November 25, 2008

TRANSCRIPT OF AUDIO RECORDING OF DISCOVERY CONFERENCE


TRANSCRIBED BY: FREDDIE REPPOND

DISCOVERY CONFERENCE          November 25, 2008

Page 34

1   one side --

2          THE COURT:  Or it's sort of like -- I guess --

3   you know we could go the RFA route.  I mean that's

4   another thing, but I don't want to get into, you know,

5   all of that.  I think that would be less cooperative.

6   I'd prefer to --

7          MR. PICKETT:  This has been going on since

8   June, so we're now facing almost its six-month

9   anniversary; and I don't want it to have a seventh- or

10  eighth-month anniversary.  I think this is something

11  we've got to resolve one way or the other.  If we can't,

12  it has big impact on discovery, because we've been

13  hoping to get beyond this.  Then we need to go back and

14  say there are far many more custodians that we're going

15  to need production from.  We may need to go to Judge

16  Hamilton to get -- and you don't want to go down that

17  road.

18         THE COURT:  Right.  Well -- and to some extent

19  that's always been, I think, the incentive for the

20  Defendants to stipulate; that is to say the alternative

21  is to spend a huge amount more money and time on

22  unearthing every fact.

23         MR. COWAN:  That is in part, Your Honor, the

24  quid pro quo.  One issue that -- I don't think that

25  Mr. Pickett's suggestion is a bad one in terms of

DISCOVERY CONFERENCE            November 25, 2008

Page 41

1   suffer.

2            MR. COWAN:  We're mindful of that, Your Honor.

3   And that's why we went through the things we did to tell

4   them what the problems were in writing so they can look

5   at that and --

6            THE COURT:  Now, without having seem them --

7                      [CROSS-TALK]

8            MR. PICKETT:  I don't think it's ripe to

9   present you this, but it's going to be ripe soon,

10  because I think we need to resolve this before long.

11           THE COURT:  I think -- I think you'll have to

12  discuss, too, which judge you think you should deal

13  with.

14           MR. PICKETT:  I'm agnostic.

15           THE COURT:  Yeah.  If it's a process issue,

16  it's one thing.  I thought it was going to be more along

17  the lines of sort of sampling and experts and so on, but

18  you're talking now something different.  And so it may

19  be less than what I was having in mind.  It's still a

20  good idea.  I just --

21           MR. PICKETT:  It would be great to achieve if

22  we could.

23           I hesitate -- well, let me try -- this may not

24  be useful or not or it may be.  One example of a problem

25  is we say that -- we cite this testimony.  We say this

1    is the way it was done for each -- we use the word

2    "critical support" -- basically for each copy that was

3    made this is how --

4              THE COURT:  Each what?

5              MR. PICKETT:  Each copy that was made.

6              And one of their objections is, Well, we can't

7    say "each" because we may want to put in evidence that

8    it wasn't done for this particular copy or application.

9    But that seems to me to kind of --

10                       [CROSS-TALK]

11             THE COURT:  Could the answer be the vast

12   majority?

13             MR. COWAN:  I think the answer --

14             THE COURT:  In other words --

15             MR. PICKETT:  If we don't have access --

16             THE COURT:  Yeah.  But I mean if it's -- I

17   don't know what to say, but if -- well -- you can't --

18   if you haven't produced the counter example, obviously I

19   don't see how you could put it in evidence --

20             MR. COWAN:  And that's part of why we've been

21   very vociferous in our response is to try to guide them

22   to what our issues are to where we could -- you can

23   either define something by what it is or by what it's

24   not, right?  And I think having an umbrella that covers

25   everything when we know going into it no, no, there's

1    some instances where that is not --

2              THE COURT:  Okay.  So why don't you give them

3    the examples of instances where it's not the case and

4    then you arrive either at something that's truly

5    quantitative, you know, 95 percent of the time or

6    60 percent of the time; or you arrive at some words of

7    qualitative; and I don't know if that would be

8    satisfactory.  But I'll bet you for a jury it is, like

9    the "vast majority" or "most," "more than half," you

10   know, "at least 75 percent" -- I mean you know juries

11   don't cut it that finely, if even that finely, you know.

12             MR. PICKETT:  Okay.  That's actually helpful.

13             MR. COWAN:  Correct.

14             MR. PICKETT:  All right.

15             MR. COWAN:  Thank you, Your Honor.

16             The next -- the next point is just an FYI for

17   you that we included on here is that the Oracle filed a

18   third amended complaint.  We filed a motion to dismiss;

19   and Judge Hamilton is hearing that tomorrow.  So that's

20   that point.

21             THE COURT:  Is that sort of expanding the

22   case?  Is that what's at issue?

23             MR. COWAN:  It's our attempt to address what

24   we believe are the deficiencies in their copyright

25   claim; and so it's --

1    STATE OF CALIFORNIA      )

     COUNTY OF SAN FRANCISCO )

2

3         CERTIFICATE OF REPORTER/TRANSCRIBER

4         I, the undersigned, a Shorthand Reporter and

5    licensed Notary Public, do hereby certify that the above

6    referenced recording was transcribed by me and that this

7    transcript is a true record of that recording.

8         IN WITNESS WHEREOF I have hereunto set my hand

9    on this  9    of December , 2008.

10

11   _____

12        FREDDIE REPPOND

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

# DOCUMENT SUBMITTED UNDER SEAL

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE


ORACLE CORPORATION, a Delaware )     Case No. C07-1658
Corporation; ORACLE, USA, INC.,)     PJH (EDL)
a Colorado corporation; and    )
ORACLE INTERNATIONAL           )
CORPORATION, a California      )
corporation,                   )
                               )
            Plaintiffs,        )
                               )
     vs.                       )     FURTHER DISCOVERY
                               )     CONFERENCE
                               )
SAP AG, a German corporation;  )
SAP AMERICA, INC., a Delaware  )
corporation; TOMORROWNOW, INC.,)
a Texas corporation; and DOES  )
1-50, Inclusive,               )
                               )
            Defendants.        )
_____)


February 13, 2009

TRANSCRIPT OF AUDIO RECORDING








TRANSCRIBED BY:  FREDDIE REPPOND

PROCEEDINGS   February 13, 2009

1              MR. HOWARD:  Yes.

2              THE COURT:  Okay.  And so anything I did was

3    not a quid pro quo for that.  And if those are going to

4    change, which would have to be up to her -- and I would

5    be surprised if she would change them, but, you know.

6    So I do, you know, I continue to feel that the Rule 1

7    considerations of just expedient and expensive caution

8    for some kind of stipulation.  And I don't -- but, you

9    know, by its nature I can't force a stipulation.  That

10   would be an oxymoron.  So -- but I certainly think it

11   would make sense, you know -- and it looked like the

12   kinds of things the Plaintiff was proposing in general

13   made some sense.

14             MR. COWAN:  And I think, Your Honor, maybe it

15   helps to use your analogy.  And we've talked -- every

16   time we talk this issue I raise the point that we have

17   to know more information about how they're going to use

18   the stipulation.

19             THE COURT:  And I guess I find that puzzling,

20   to tell you the truth, because I tend to view it -- when

21   the Plaintiffs say stipulation, I have trials where they

22   are stipulated facts and you can use them any way you

23   want, because by the virtue of they're stipulated

24   they're true.  So I'm not sure -- I really don't

25   understand what is the concern.  Maybe if I

PROCEEDINGS   February 13, 2009

Page 10

1    understood -- I mean, obviously, you know, nobody wants

2    them to be distorted, but that's why you word them

3    carefully.

4              MR. COWAN:  Right.  And let me give you an

5    example; and it's bit of an obtuse analogy, but I think

6    it's one that will help prove the point.

7              When I come to this hearing, every time we're

8    here I usually come by taxi.  Sometimes on occasion I

9    have walked.  Rarely.  Sometimes I've driven a rental

10   car.  And for some purposes I might be willing to

11   stipulate every time I go to a discovery conference in

12   front of Judge LaPorte, I ride the taxi, every time;

13   because it really doesn't matter; that's not that

14   material.  But if someone was going to retrospectively

15   charge me a thousand dollars for that taxi trip, I

16   would want to get that agreement of what I'm

17   stipulating to with much more precision.  And the big

18   dilemma my client faces is for some things summarizing

19   the facts in the form of a stipulation may work --

20             THE COURT:  Well, I assume that what you're

21   worried about is damages.

22             MR. COWAN:  Absolutely.  That's our focus.

23   And if we cannot understand how Plaintiffs are going to

24   take these stipulations and fold them into their damage

25   model, I don't think we'll ever get there.  And I've

PROCEEDINGS   February 13, 2009

1    told --

2             THE COURT:  But to me that just -- I mean

3    these are -- to me then what you would have to do is

4    stipulate, instead of -- that's sort of again coming

5    back to a more statistical or probablistic approach that

6    I would think serve both of you is if you think that

7    it's generally true but maybe five percent of the time

8    it wasn't, then you stipulate that ninety-five percent

9    of the time or to some -- you know, that kind of

10   adjustment -- you know, a plus or minus factor or an

11   uncertainty or something analogous to that, rather than,

12   you know -- what I think Judge Hamilton -- she's not

13   going to give you so many trial hours that you can go

14   through the exceptions to stuff anyway.  In the end you

15   won't be able to do that, either one of you.

16            MR. HOWARD:  That's exactly why this is so

17   critical and otherwise.  I mean this is a little crazy

18   that for eight months we've been, you know, supposedly

19   we're working in good faith on a stipulation but now we

20   can't agree to facts that we all know are true because

21   of damages.

22            THE COURT:  Well --

23            MR. HOWARD:  We can't put on our liability

24   case because of damages.

25            THE COURT:  All right.  Well, I think that

Page 12

1    what you have to do is -- if, for example, what you're
2    saying is you are aware, to use your analogy, that
3    ninety-five percent of the time you use the taxi.  But,
4    you know, if it really came down to whether you had to
5    go in front of Congress and say you paid for that
6    borrowed limousine, et cetera, with the other five
7    percent, you would really need to know, you know -- and
8    then you may need to be willing to compromise and not go
9    for a hundred percent, even though you think it's a
10   hundred percent but there might have been, you know,
11   exceptions and --
12           MR. HOWARD:  Your Honor, if I may.  The
13   example being used is not one of the three obstacles
14   that have been identified in the statement.  We have
15   compromised on that one.  We started with each.  We've
16   moved to, in many -- in most cases we've moved to
17   generally speaking, taking your guidance from the last
18   hearing.  These are the three obstacles starting with
19   the last one first, which is damages.
20           They won't stipulate to liability facts
21   unless there are constraints on our ability to use them
22   on damages.  We will not agree to that.  And we don't
23   think we should be prevented from putting on our
24   liability case because of their concern over damages.
25   Everyone does what they're going to do on damages.  So

PROCEEDINGS   February 13, 2009

Page 18

1    If you're asking me to increase the number of deposition

2    hours, I can't do that.  Would you have a better case in

3    front of Judge Hamilton for increasing the deposition

4    hours if they're not willing to follow a suggestion that

5    I've made for eight months, and I -- it's not a unique

6    suggestion.  All of our standing orders, as far as I

7    know, say the parties are supposed to stipulate in the

8    pretrial order to as many undisputed facts as possible.

9             MR. COWAN:  That's the point.

10            THE COURT:  And, you know, I think it's a

11   valid thing to the extent you are afraid justifiably of

12   stipulating that something was done a hundred percent of

13   the time because you haven't chased everything down and

14   everybody knows that rarely is anything done a hundred

15   percent of the time, even when it's supposed to be,

16   right.  So I think that, you know, makes sense if you --

17   and you're saying you're doing that.  And to have it

18   most of the time or ninety percent of the time or that

19   sort of thing, that makes sense to me.  But I can't, you

20   know, force anyone to stipulate.

21            Now, it does strike me that if there's a

22   difference somehow between what was done before the

23   lawsuit and what since, you know, maybe it's easier to

24   stipulate to certain time periods than later time

25   periods.  And any degree of stipulation helps.  I

1    STATE OF CALIFORNIA        )

     COUNTY OF SAN FRANCISCO )

2

3              CERTIFICATE OF REPORTER/TRANSCRIBER

4         I, the undersigned, a Shorthand Reporter and

5    licensed Notary Public, do hereby certify that the above

6    referenced recording was transcribed by me and that this

7    transcript is a true record of that recording.

8         IN WITNESS WHEREOF I have hereunto set my hand

9    on this  19  of February · 2009.

10

11

12        FREDDIE REPPOND

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


ORACLE CORPORATION, ET AL,  *
        Plaintiffs,          *
                             *
VS.                          * CASE NO. 07-CV-01658 (MJJ)
                             *
SAP AG, ET AL,               *
        Defendants.          *


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HIGHLY CONFIDENTIAL

ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF

CATHERINE LEE HYDE

APRIL 1, 2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



REPORTED BY:

CAROL JENKINS, CSR, RPR, CRR

CERTIFICATE NO. 2660

CATHERINE LEE HYDE        April 1, 2008
HIGHLY CONFIDENTIAL

Page 50

17:38:23   1
17:38:29   2
17:38:31   3
17:38:31   4
17:38:36   5
17:38:39   6
17:38:43   7
17:38:49   8
17:38:53   9
17:38:57  10
17:39:00  11
17:39:08  12
17:39:14  13
17:39:21  14
17:39:23  15
17:39:24  16        Q.   So you create HG75103C using some customer
17:39:33  17   software.  Some college students download from Customer
17:39:42  18   Connection updates for HG751, and -- and you apply those
17:39:46  19   to fix master the environment?
17:39:49  20        A.   Payroll fixes, yes.
17:39:54  21        Q.   Then how is that -- then how is that
17:39:58  22   environment used over time to create the retrofit
17:40:02  23   updates for the HG751 customers?  Let me -- let me ask
17:40:12  24   it a different way.
17:40:13  25             How is the HG75103C environment then used

CATHERINE LEE HYDE      April 1, 2008
HIGHLY CONFIDENTIAL

Page 51

17:40:19  1    to create retrofit updates?

17:40:24  2         A.   Let's just say I don't remember exactly when

17:40:28  3    PeopleSoft retired that release.  So I can tell you how

17:40:32  4    we used it prior to 03C for sure.  If you have 03B and

17:40:41  5    you compare it to 03C, we would know what was changed,

17:40:46  6    and we would determine if we could put that into the 702

17:40:50  7    release for HG.

17:40:57  8         Q.   So was HG75103C being used to support HG702

17:41:03  9    customers?

17:41:08  10        A.   Yes.

17:41:08  11        Q.   And each time a new update was created, would

17:41:15  12   new downloads be applied to the environment?

17:41:20  13        A.   The tax update?

17:41:23  14        Q.   Yes.

17:41:24  15        A.   Yes.

17:41:27  16

17:41:30  17

17:41:34  18

17:41:40  19

17:41:43  20

17:42:02  21

17:42:07  22

17:42:10  23

17:42:11  24

17:42:17  25

```
 1      COUNTY OF HARRIS

 2      STATE OF TEXAS

 3

 4                      REPORTER'S CERTIFICATE

 5

 6              I, CAROL JENKINS, Certified Shorthand

 7      Reporter in and for the State of Texas, hereby certify

 8      that this transcript is a true record of the testimony

 9      given by the witness named herein, after said witness

10      was duly sworn by me.

11              I further certify that the deposition

12      transcript was submitted on _____,

13      _____ to the witness or to the attorney for the

14      witness for examination, signature, and return to me by

15      _____, _____.

16              I further certify the amount of time used

17      by each party at the deposition is as follows:

18              Mr. Geoffrey M. Howard - (01h44m)

19              Mr. Jason McDonell - (00h00m)

20              I further certify that I am neither

21      attorney nor counsel for, related to, nor employed by

22      any of the parties to the action in which this testimony

23      was taken.  Further, I am not a relative or employee of

24      any attorney of record in this cause, nor do I have a

25      financial interest in the action.
```

64

CATHERINE LEE HYDE    April 1, 2008
HIGHLY CONFIDENTIAL

1          SUBSCRIBED AND SWORN TO by the undersigned

2   on this the 7th day of April , 2008 .

3

4                    Carol Jenkins

    CAROL JENKINS, CSR

5   Certificate No. 2660

    Date of Expiration:  12/31/08

6   Merrill Legal Solutions, No. 210

    315 Capitol Street, Suite 100

7   Houston, Texas 77002

    (713) 426-0400

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

65

# EXHIBIT E

HASSO PLATTNER     June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, a                )
Delaware corporation, ORACLE         )
USA, INC., a Colorado                )
corporation, and ORACLE              )
INTERNATIONAL CORPORATION, a         )
California corporation,              )
                                     )
              Plaintiffs,            )
                                     )
     vs.                             )   No. 07-CV-1658 (PJH)
                                     )
SAP AG, a German corporation,        )
SAP AMERICA, INC., a Delaware        )
corporation, TOMORROWNOW,            )
INC., a Texas corporation, and       )
DOES 1-50, inclusive,                )
                                     )
              Defendants.            )
_____     )

VIDEOTAPED DEPOSITION OF

HASSO PLATTNER

TUESDAY, JUNE 2, 2009

HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-419913)

HASSO PLATTNER      June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17

09:08:24    1

09:08:27    2

09:08:29    3

09:08:33    4

09:08:42    5

09:08:45    6

09:08:49    7

09:08:52    8

09:08:56    9

09:08:57   10

09:08:59   11

09:09:03   12

09:09:05   13

09:09:06   14

09:09:09   15

09:09:11   16

09:09:15   17

09:09:17   18

09:09:20   19

09:09:21   20

09:09:24   21

09:09:28   22

09:09:31   23

09:09:32   24

09:09:33   25          Were there any concerns that were

Page 18

| | | |
|---|---|---|
| 09:09:34 | 1 | identified to the Supervisory Board relating to the |
| 09:09:37 | 2 | way in which TomorrowNow provided service to its |
| 09:09:39 | 3 | customers prior to the acquisition? |
| 09:09:45 | 4 | A.  By the executive team? |
| 09:09:48 | 5 | Q.  At this presentation by the executive team, |
| 09:09:50 | 6 | yes, sir. |
| 09:09:52 | 7 | A.  No.  I asked a question. |
| 09:09:55 | 8 | Q.  What did you ask? |
| 09:09:56 | 9 | A.  I asked the question whether this is |
| 09:10:01 | 10 | supported by a legal framework, and whether |
| 09:10:04 | 11 | TomorrowNow has the right to access source code. |
| 09:10:07 | 12 | |
| 09:10:09 | 13 | |
| 09:10:11 | 14 | |
| 09:10:14 | 15 | |
| 09:10:15 | 16 | |
| 09:10:17 | 17 | |
| 09:10:22 | 18 | |
| 09:10:25 | 19 | |
| 09:10:28 | 20 | |
| 09:10:30 | 21 | |
| 09:10:32 | 22 | |
| 09:10:37 | 23 | |
| 09:10:39 | 24 | |
| 09:10:42 | 25 | |

HASSO PLATTNER      June 2, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 13

09:02:47   1        Q.   And do you recall, was there a document

09:02:49   2    that was used in the presentation?

09:02:54   3        A.   More probably, overhead.  Power Points.

09:02:57   4            MR. LANIER:  I'll just caution you not to

09:02:58   5    guess.  Give him your best recollection.

09:03:02   6            THE WITNESS:  It has to be Power Point.

09:03:04   7    Otherwise, it cannot be presented.

09:03:12   8

09:03:12   9

09:03:15   10

09:03:17   11

09:03:19   12

09:03:24   13

09:03:31   14

09:03:34   15

09:03:38   16

09:03:39   17

09:03:42   18

09:03:46   19

09:03:53   20

09:03:56   21

09:04:00   22

09:04:03   23

09:04:06   24

09:04:08   25

HASSO PLATTNER     June 2, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 73

10:41:01  1

10:41:04  2          The first one I'm going to mark as

10:41:06  3    Exhibit 1400, is titled "Business Case,

10:41:09  4    TomorrowNow," with a date of January 7, 2005.

10:41:13  5          You'll get a copy from the court reporter

10:41:14  6    in just a minute.

10:41:16  7          This is a copy of a presentation that's

10:41:19  8    been previously marked in the case as an attachment

10:41:22  9    to an email.  That exhibit is 449.  But it's hard to

10:41:26  10   read, and this is from the native document and it's

10:41:29  11   easier to read, so I'm using this one.

10:41:31  12          (Deposition Exhibit 1400 was marked for

10:41:32  13           identification.)

10:41:55  14          MR. HOWARD:  Q.  Mr. Plattner, have you

10:41:56  15   seen this document before?

10:42:25  16     A.  (Examining document.)  I don't know whether

10:43:42  17   that was used in a -- in the Supervisory Board

10:43:47  18   presentation.

10:43:48  19     Q.  That was my question, whether you could

10:43:49  20   tell from looking at this if this was the

10:43:51  21   presentation that you saw in that meeting you

10:43:54  22   testified about earlier.

10:43:55  23     A.  I cannot tell.  It also could have been

10:44:05  24   additional material, and there was a 1-page, since

10:44:08  25   it was a very small acquisition.  I just read, it

HASSO PLATTNER     June 2, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 74

| | | |
|---|---|---|
| 10:44:12 | 1 | was only a 10 million acquisition, so it was a very |
| 10:44:16 | 2 | small acquisition, so that there was probably only a |
| 10:44:19 | 3 | 1-page document. |
| 10:44:21 | 4 | |
| 10:44:28 | 5 | |
| 10:44:31 | 6 | |
| 10:44:39 | 7 | |
| 10:44:41 | 8 | |
| 10:44:43 | 9 | |
| 10:44:46 | 10 | |
| 10:44:50 | 11 | |
| 10:44:52 | 12 | |
| 10:44:54 | 13 | |
| 1C:44:55 | 14 | |
| 1C:44:55 | 15 | |
| 1C:44:55 | 16 | |
| 1C:44:56 | 17 | |
| 1C:44:58 | 18 | |
| 1C:44:58 | 19 | |
| 1C:45:00 | 20 | |
| 1C:45:03 | 21 | |
| 1C:45:04 | 22 | |
| 1C:45:04 | 23 | |
| 1C:45:06 | 24 | |
| 1C:45:08 | 25 | |

HASSO PLATTNER      June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 75

```
10:45:11   1
10:45:14   2
10:45:17   3
10:45:20   4
10:45:23   5
10:45:26   6
10:45:30   7
10:45:37   8
10:45:45   9
10:45:50  10
10:45:51  11
10:45:56  12
10:45:58  13
10:46:01  14
10:46:07  15
10:46:12  16
10:46:13  17
10:46:15  18
10:46:43  19
10:46:44  20
10:46:48  21
10:46:52  22
10:46:55  23          MR. HOWARD:  Q.  Okay.  And the specific
10:46:56  24    comment -- are you referring to the --
10:46:57  25          A.  I do not -- I have not seen that comment
```

HASSO PLATTNER    June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 76

| | | |
|---|---|---|
| 10:47:01 | 1 | here. |
| 10:47:01 | 2 | Q.  Are you referring to the parenthetical that |
| 10:47:03 | 3 | refers to offsite production copies? |
| 10:47:05 | 4 | A.  Yeah, offsite production copies.  If I |
| 10:47:07 | 5 | interpret this negatively, then that was not |
| 10:47:12 | 6 | presented. |
| 10:47:14 | 7 | So then this is definitely not what I have |
| 10:47:19 | 8 | seen.  As I said, I have seen probably only a 1-page |
| 10:47:23 | 9 | document. |
| 10:47:23 | 10 | |
| 10:47:26 | 11 | |
| 10:47:28 | 12 | |
| 10:47:56 | 13 | |
| 10:47:59 | 14 | |
| 10:48:02 | 15 | |
| 10:48:06 | 16 | |
| 10:48:09 | 17 | |
| 10:48:32 | 18 | |
| 10:48:34 | 19 | |
| 10:48:42 | 20 | |
| 10:48:45 | 21 | |
| 10:48:47 | 22 | |
| 10:48:49 | 23 | |
| 10:48:52 | 24 | |
| 10:48:53 | 25 | |

CERTIFICATE OF REPORTER

1

2          I, HOLLY THUMAN, a Certified Shorthand

3   Reporter, hereby certify that the witness in the

4   foregoing deposition was by me duly sworn to tell the

5   truth, the whole truth, and nothing but the truth in the

6   within-entitled cause; that said deposition was taken

7   down in shorthand by me, a disinterested person, at the

8   time and place therein stated, and that the testimony of

9   the said witness was thereafter reduced to typewriting,

10  by computer, under my direction and supervision;

11          That before completion of the deposition,

12  review of the transcript [X] was [ ] was not requested.

13  If requested, any changes made by the deponent (and

14  provided to the reporter) during the period allowed are

15  appended hereto.

16          I further certify that I am not of counsel or

17  attorney for either or any of the parties to the said

18  deposition, nor in any way interested in the event of

19  this cause, and that I am not related to any of the

20  parties thereto.

21

22      DATED   June 5, 2009.

23

24      _____

25      HOLLY THUMAN, CSR No. 6834

# EXHIBIT F

Pages 1 - 59

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE

ORACLE CORPORATION,              )
                                 )
            Plaintiff,           )
                                 )
VS.                              )NO. C 07-1658
                                 )
SAP AG, et al,                   )
                                 )San Francisco, California
            Defendants.          )Tuesday
                                 )August 4, 2009
                                 )2:00 p.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:      BINGHAM, MCCUTCHEN LLP

            Three Embarcadero Center

            San Francisco, California 94111-4067

            BY:  GEOFFREY M. HOWARD, ESQ.

            JOHN POLITO, ESQ.

            ZACHARY J. ALINDER, ESQ.

For Defendants:     JONES DAY

                717 Texas

                Suite 300

                Houston, Texas 77002

            BY:  SCOTT W. COWAN, ESQ.

                JONES DAY

                1755 Embarcadero Road

                Palo Alto, California 94303

            BY:  JACQUELINE K.S. LEE, ESQ.

                HEATHER FUGITT, ESQ.

Reported By:     Debra L. Pas, CSR 11916, CRR, RMR, RPR

            Official Reporter - US District Court

            Computerized Transcription By Eclipse

58

1    major disputes on authenticity, that it is what it says it
2    is
3         THE COURT:  It's a business record, so it's not
4    hearsay
5         MR. COWAN:  I don't think there is going to be any
6    issue on that.  They have used it extensively in depositions,
7    et cetera.  I don't foresee that being a problem unless there
8    is some particular piece of it or component that has similar
9    liability issue, et cetera.  I don't think that's going to be
10   the big issue.  I do agree that's something we take up with
11   the trial judge at trial if --
12        THE COURT:  Well, I mean, there is no reason not to
13   take it up now to some extent.  I mean, I don't know if you
14   have some particular concern
15        Anyway, I have to stop.  It's been an hour and 20
16   minutes.
17        MR. HOWARD:  We may make a further proposal in a
18   discovery conference in that regard.
19        THE COURT:  I'm not opposed to that.  I don't think
20   you can leave everything to the last minute.
21        MR. COWAN:  I understand.  But my only point on
22   that, your Honor, without knowing what his proposed agreement
23   is and trying to agree with something on the fly, I'm
24   hesitant not to commit
25        THE COURT:  I'm not asking you to commit to

59

1    anything right this minute.
2         MR. COWAN:  Okay.
3         THE COURT:  I do think to the extent this was about
4    admissibility, I think you ought to address that directly by
5    stipulation
6         MR. COWAN:  I don't expect any major barriers
7    there.
8         MR. HOWARD:  Thank you, your Honor.
9         THE COURT:  All right.  Thank you.  I guess I will
10   ask both of you to prepare an order
11        MR. COWAN:  Okay.
12        THE COURT:  I guess your motion --
13        MR. HOWARD:  Why don't we prepare it and send it to
14   them, your Honor?
15        MR. COWAN:  That's fine.  Thank you, your Honor.
16
17        (Whereupon, further proceedings in the
18         above matter were adjourned.)
19
20             --oo--
21
22
23
24
25

CERTIFICATE OF REPORTER

I, DEBRA L. PAS, Official Reporter for the United

States Court, Northern District of California, hereby certify

that the foregoing proceedings in C 07-1658 PJH (EDL), ORACLE

CORPORATION versus SAP AG, et al were reported by me, a

certified shorthand reporter, and were thereafter transcribed

under my direction into typewriting, that the foregoing is a

full, complete and true record of said proceedings as bound

by me at the time of filing

    The validity of the reporter's certification of said

transcript may be void upon disassembly and/or removal

from the court file

         /s/ Debra L. Pas

    Debra L. Pas, CSR 11916, CRR, RMR, RPR

    Wednesday, August 5, 2009