BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>       Plaintiffs,<br><br>    v.<br><br>SAP AG, *et al.*,<br><br>       Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**AMENDED JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date:     August 25, 2009<br>Time:    11:30 a.m.<br>Courtroom: E, 15th Floor<br>Judge:   Hon. Elizabeth D. Laporte |

Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") submit this Amended Joint Discovery Conference Statement. The Parties jointly request that the Court schedule sixty minutes on August 25, 2009 to discuss discovery issues.

## I.    Extrapolation Proposal and Requests for Admission

*Oracle's Position*: As the Court knows, the Parties have been unable to stipulate to facts regarding Defendants' copying and use of Oracle's intellectual property. After more than a year of such efforts, Defendants now refuse to answer Requests for Admission that, if accurately answered, would serve a similar purpose. They would alleviate the burden on both Parties to collect and analyze the extensive evidence regarding TN's downloading and use of Oracle's software on an individual fix-by-fix basis over time, and still provide Oracle with admissible evidence.

Regarding the stipulation, Defendants continue to block this effort to summarize TN's general processes, despite the Court's recognition that "the incentive for the Defendants to stipulate" is efficiency and alleviation of discovery and evidence burdens: "that is to say the alternative is to spend a huge amount, more money and time on unearthing every fact." *See* Exhibit A (excerpt from Transcript of November 25, 2008 Discovery Conference) at 34:18-22. Oracle's third proposed stipulation on this topic took months of meet and confer efforts to develop. That proposal was attached as Exhibit A to the February 9, 2009 Joint Discovery Conference Statement (under seal), and Defendants rejected it.

In response to Oracle's request, Defendants agreed on April 21, 2009 to provide a list of the facts to which they *are* willing to stipulate. They provided this document on July 14, 2009. *See* Exhibit B (July 14, 2009 extrapolation proposal including cover email) (filed under seal). There are three significant problems with Defendants' proposal, which focuses on stipulated testimony. First, Defendants continue to insist that they will agree to nothing until they learn how Oracle will use the stipulated facts in its damages analysis. *Id.* The Court has rejected the logic of that position. *See* Exhibit C (excerpt from Transcript of February 13, 2009 Discovery

1  Conference) at 9:14-25 ("And I guess I find that puzzling, to tell you the truth, because . . . I have

2  trials where the[re] are stipulated facts and you can use them any way you want, because by the

3  virtue of they're stipulated they're true.").  Next, Defendants limit each part of their proposal by

4  stating it "shall not be used to suggest, imply or infer in any way that these service activities were

5  always performed using this practice."  Exhibit B at 4:7-9; 6:12-14.  As the Court suggested, a

6  stipulated fact should be available to both Parties for any purpose, including argument.  Finally,

7  even though Defendants were supposed to provide a list of the facts to which they *would* agree to

8  stipulate, they stated in their cover email that Oracle was not empowered to accept Defendants'

9  proposal and, more, that "Defendants do not and will not agree to even [their own] attached draft

10  proposed stipulation."  *Id.*  In other words, despite having had Oracle's third proposal for over six

11  months, and despite having provided Oracle with a document stating some facts, Defendants have

12  not actually agreed to anything.

13      The inability to arrive at a stipulation led Oracle to serve a set of RFAs directed to the

14  same facts at issue, TN's business practices, which the Court has suggested as an alternative.  *See*

15  Exhibit A at 34:2-6 ("we could go the RFA route").  Among others, Oracle propounded RFAs

16  asking Defendants to admit to certain specific uses of Customer Connection, as well as to certain

17  detailed statements about TN's development process.  For each step of the process addressed,

18  Oracle asked Defendants to admit the step occurred: (a) each time; (b)the majority of the time; (c)

19  some of the time; and/or (d) at least once.  The variety of options for each step would have

20  permitted Defendants to select the most accurate frequency, in keeping with the Court's

21  suggestions about compromising through variations in language.  *See* Exhibit A at 41:21-43:15;

22  Exhibit C at 11:2-12:11, 18:10-20.  The descriptions of the steps were taken from Defendants'

23  witnesses' testimony and documents.

24      Defendants, however, refused to admit to any of these RFAs, even though they cannot

25  credibly refuse given their witnesses' testimony and the documents they have produced.  For

26  example, even though TN's Rule 30(b)(6) designee for PeopleSoft environments, Catherine Hyde,

27  testified that she created the environment HG75103C "using some customer software" and that it

28  was "used to support HG702 customers," Defendants denied four Requests asking them to admit,

1   alternatively, that TN created environments from customer software for each fix, the majority of

2   fixes, some fixes, or even once.  Exhibit D at 50:16-51:15 (Hyde 30(b)(6) excerpts).  At least two

3   of these denials are not credible in light of Ms. Hyde's testimony, and while Oracle can use that

4   testimony at trial, it has employed the RFAs to leverage Ms. Hyde's testimony into broader

5   application in lieu of a stipulation.

6        Oracle sent Defendants a meet and confer letter on August 10 about these RFA

7   deficiencies, and hopes that Defendants will reconsider their responses.  However, Defendants

8   cannot continue to block all of Oracle's inquiries into these important facts.  Whether by

9   stipulation or RFA, they must admit to those facts about TN's business practices and processes

10  that are not reasonably in dispute.  If Defendants do not reconsider, Oracle will seek the Court's

11  assistance with a motion to compel further responses to the RFAs.

12       ***Defendants' Position***:  Defendants remain willing to negotiate a stipulation but have

13  consistently maintained that they must have some objective measure to weigh the cost/benefit of

14  relieving Oracle of its burden of proof.  Unless and until Oracle provides Defendants with some

15  information as to how it intends to use the stipulation with respect to its damages calculations,

16  Defendants must continue to hold Oracle to its full burden of proof on each and every element of

17  each and every one of its claims.

18       Oracle's version of the "facts" on which it seeks a stipulation differ somewhat from what

19  Defendants contend are the facts.  Oracle's only response to that factual dispute is to point to

20  testimony which Oracle claims proves some of the facts on which it seeks a stipulation.  If Oracle

21  already has testimony establishing certain facts, then it does not need a stipulation on those facts.

22  Thus, the major points of the parties' disagreement with respect to the proposed stipulation are: (a)

23  the "facts" themselves; and (b) how any "agreed facts" would be used by Oracle in its damages

24  calculations.  Defendants have consistently maintained that their negotiations regarding the

25  stipulation are Rule 408 compromise and settlement negotiations.  As with any Rule 408

26  negotiations, all parties involved need to know what they are giving up in exchange for what they

27  are receiving.  And, as noted above, Oracle continues to refuse to provide Defendants with critical

28  information necessary to evaluate the downside risks of relieving Oracle of its burden of proof.

Oracle has propounded over 700 requests for admission, almost all of which are objectionable on multiple grounds. Oracle is attempting to use these voluminous requests for admission to continue to seek Defendants' acquiescence to Oracle's version of the "facts". Defendants' basic disagreement with Oracle regarding the "facts" themselves (which is one of the two primary obstacles preventing substantial forward progress on the extrapolation/stipulation) is one of the reasons Defendants have denied many of Oracle's requests for admission. That said, as Oracle notes above, Oracle has pointed Defendants to several specific requests for admission and has asked Defendants to reconsider their answers to those requests. Defendants are in the process of reviewing Oracle's correspondence regarding those specific requests and intend to continue the meet and confer process on this issue.

## II.     Pre-2005 Damages Related Discovery

***Defendants' Position***:  Oracle continues to refuse to provide certain financial and customer-specific data for the pre-2005 period (*i.e.*, the period prior to Oracle's acquisition of PeopleSoft). This data includes customer-specific financial reports and cancellation reports that Oracle has produced for the post-acquisition time period. Oracle contends that the data is available only on "legacy" PeopleSoft systems and that it would be unduly burdensome to retrieve it. Oracle has also refused to provide Rule 30(b)(6) testimony on numerous damages-related topics for the pre-2005 period on the ground that it does not have the historical knowledge to do so and has no obligation to obtain it. These topics include PeopleSoft financial records, pricing policies, and support policies, about which Oracle has disclaimed knowledge. Oracle contends that its customer contract files provide sufficient information to calculate damages for the pre-2005 period. Defendants disagree because the contract files are incomplete as well. These gaps in Oracle's production of pre-2005 data, along with its claimed lack of knowledge of PeopleSoft financial and other records make it impossible to calculate damages for the pre-2005 period. Defendants will continue to meet and confer with Oracle, but will seek the Court's guidance at the discovery conference on the burden issue and Oracle's position that it is not obligated to provide Rule 30(b)(6) testimony regarding the records of the predecessors-in-interest to the plaintiff entities.

1    ***Oracle's Position***:

2        *Legacy Customer Reports*:  The facts regarding Oracle's production of pre-2005 customer

3    contracts – and the importance for purposes of proving damages of such production – are

4    different from what Defendants state.  First, Oracle has produced customer-specific financial

5    reports containing pre-2005 data.  For example, it has produced Analytics License Reports, which

6    contain all historical software licenses for lost customers, including legacy PeopleSoft and JDE

7    customers who left before Oracle acquired PeopleSoft.  Oracle has also produced OKI3 summary

8    reports by customer which include any support contracts that were active as of October 1, 2004.

9    Finally, Oracle has produced Analytics Contracts reports which are essentially a subset of the

10   information on the OKI3 reports. Oracle has not produced summary OKI3 reports with pre-2005

11   data only in cases where the customer was not active at the time of the PeopleSoft acquisition

12   (*i.e.*, it had already left for TN), because in that situation there is no legacy PeopleSoft system up

13   and running from which such reports can be produced.  As Oracle has explained to Defendants in

14   meet and confer, and as Oracle witnesses have attested, PeopleSoft and JDE legacy contract data

15   was not migrated to Oracle's current systems and thus there is no comparable automatic searching

16   or querying ability such as was used to create the summary reports for active customers.  Thus,

17   locating historic pre-2005 customer-specific information on the system would require individual,

18   manual searching and sorting, made all the more difficult by the inexact naming and numbering

19   of associated customers.  Indeed, it is the matching of customer names and identification numbers

20   to contracts and report fields that has proven the most time consuming part of the specific

21   customer damages efforts.  To obtain the legacy data for any given customer, Oracle would have

22   to upload and then access the legacy system, spend unknown hours researching that customer

23   (and its associated alternative names, numbers, and locations), assess which material found (if

24   any) is material and  relevant to the actual customer at issue, and then take any found data and

25   either manually transcribe it to a piece of paper or enter it into a different computer system for

26   production.

27        Second, and critically, even without summary reports it is possible to calculate damages

28   for the pre-2005 period (or for any period).  That is because the customer's historic contracts

1    contain the necessary information to calculate those damages.  Indeed, summary reports are no

2    more than convenient compilations of the underlying contract data; however, they are not

3    necessary to doing the calculations.  Indeed, Oracle's damages experts are cross-checking the

4    Oracle summary reports where they have been automatically available and produced against the

5    underlying contracts Oracle produced even for more current customers (as well as against the TN

6    contracts Defendants produced and the customer's records produced pursuant to subpoenas) to

7    validate damages calculations.  This is exactly what Defendants' experts are doing, per recent

8    declarations.  So there is no established need for customer reports run from legacy data that would

9    justify the significant burden on Oracle in trying to reactive retired systems to create them.

10       *Legacy Cancellation Reports*.  Oracle has produced numerous pre-existing legacy

11   PeopleSoft and JDE service renewal and cancellation reports when found in custodial productions,

12   which Defendants have used extensively as deposition exhibits.  These historic reports do not

13   exist in any centralized repository.  The underlying legacy database from which those legacy

14   PeopleSoft reports were run does not now have reporting functionality.  Thus, there is not an

15   active system from which legacy PeopleSoft or JDE cancellation reports can currently be run, as

16   Oracle witnesses have also attested.

17                                             ***

18       Defendants have never disputed the associated burden with their request for duplicative

19   legacy data.  Because this data is neither necessary nor reasonably accessible, Oracle believes

20   both Parties should rely on Oracle's and Defendants' customer contracts, financial reports, and

21   cancellation reports, as Oracle has done.  Defendants have yet to explain why this is an

22   inadequate solution or what exactly they are missing.  However, Oracle will continue to meet and

23   confer with Defendants on this issue.

24       *Oracle's Objections to Providing 30(b)(6) Testimony on Legacy PS or JDE Records*.

25   Defendants first complained about Oracle's objections to Defendants' Rule 30(b)(6) notice to

26   Oracle USA, Inc  on August 13, and no meet and confer has yet occurred.  Oracle objected to

27   providing Rule 30(b)6) testimony on pre-2005 PeopleSoft and JDE financial records, pricing

28   policies, and support policies because documents, not memories of individual witnesses, explain

these years of pricing and policies far better.  Moreover, Defendants have taken extensive

individual testimony on these topics, from current Oracle employees who were legacy PeopleSoft

and/or JDE employees.  These include Rick Cummins, Robbin Henslee, Buffy Ransom, and Beth

Shippy.  In its objections to Defendants' Third 30(b)(6) notice to Oracle USA, Inc., Oracle

expressly pointed Defendants to that testimony, as well as to the extensive documents Oracle has

produced from those custodians on those topics.  In their August 13 letter, Defendants indicate

they will accept designations of testimony from these witnesses as to Siebel, if applicable, and

also agree to accept Bates-numbers in lieu of testimony for certain topics such as pricing terms

and increases.  Oracle will meet and confer with Defendants as requested in their August 13 letter

to see what, if anything, the individual witnesses  did not attest to as to PeopleSoft and JDE

pricing and policies that is not otherwise contained in documents and whether anyone else in

Oracle's current employ would know more.

### III.    Deposition Dates and Witnesses

*Oracle's Position*:  Oracle is concerned about the pace at which Defendants provide

deposition dates, as well as the timing of the dates themselves.  Below is a chart summarizing

when Oracle requested a date for certain outstanding witnesses, when Defendants responded, and

with what date.

| Witness | Date Requested | Date of Response Offering Dates | Date Offered/Set |
|---|---|---|---|
| Scott Trainor | June 15 | June 23, then cancelled by Defendants on July 21. | Set for July 23; cancelled by Defendants on July 21 without explanation; no new date offered yet. |
| Werner Brandt | June 15 | NONE | NONE |
| Desmond Harris | July 6 | NONE | NONE |
| Laura Sweetman | July 6 | NONE | NONE |

As the chart shows, although Oracle requested these witnesses in June or early July (and

Defendants agreed in April to provide additional deposition time with Mr. Brandt), Defendants

have failed to offer dates.  While it is true that both Parties have many discovery obligations –

since April, Oracle has responded or supplemented its responses to 122 interrogatories, produced

51 custodians' documents (comprising 5.5 GB of data) and 533 CDs of software, defended 17

1    depositions of Oracle witnesses, and scheduled 11 more – Defendants' delay in providing dates is

2    impacting Oracle's ability to complete these depositions by the close of fact discovery and in time

3    for their inclusion in expert reports.  In particular, Oracle was surprised when Defendants

4    unilaterally, and without explanation, cancelled Scott Trainor's deposition two days before it was

5    to take place.  Mr. Trainor, a former PeopleSoft attorney now working for SAP's legal

6    department, is a crucial witness, and the last-minute cancellation (and subsequent failure to offer

7    new dates) is troubling.  So too is Defendants' position – told to Oracle for the first time last week

8    – that key Board member and CFO Werner Brandt will not testify until November, perhaps less

9    than a week before Oracle's damages report is due.  Oracle asks for the Court to order Defendants

10   to offer September dates for these witnesses; if Defendants are unable to provide September dates

11   for Ms. Sweetman, Oracle asks that they agree that her deposition take place shortly before or

12   after Gerd Oswald's October 27 deposition in London, to alleviate both Parties' travel burdens.

13   Defendants' recitation, below, about witnesses they requested on May 13 is inaccurate in

14   two respects.  First, one of the two dates offered on July 7 was an alternate date for one witness,

15   for whom Oracle had already offered a far earlier date that Defendants had rejected.  Second, as

16   Defendants know, the lone witness for whom Oracle has not offered a date is a former Oracle

17   employee who resides in Germany.  Oracle suggested to Defendants that the Parties consolidate

18   their travels by scheduling all German depositions together; therefore, Oracle will encourage its

19   former employee to agree to appear for his deposition once Defendants provide a date and

20   location for Mr. Brandt's deposition.  Since Defendants forced Oracle to reschedule certain

21   customer depositions last May because of Defendants' counsel's schedule, Defendants must

22   understand the need for cooperation.

23   As for customer depositions, which Defendants refer to below, Oracle has promptly

24   cooperated when Defendants have provided potential dates for such depositions in the past and

25   will continue to do so.  Despite Oracle's requests, Defendants have not yet told Oracle which

26   customers, in which locations, they intend to notice for deposition, which impacts Oracle's ability

27   to confirm its counsel's availability.

28

1     ***Defendants' Position***:  As noted in Oracle's chart above, Defendants have offered dates

2     for all but four requested witnesses: Laura Sweetman, Desmond Harris, Scott Trainor and Werner

3     Brandt.  Ms. Sweetman, a former TN executive, is a resident of England and has engaged her own

4     counsel.  Defendants have been in communication with Ms. Sweetman's counsel on several

5     occasions and before the discovery conference hope to provide additional information to Oracle

6     regarding Ms. Sweetman's response to Oracle request to depose her.  Mr. Harris is a former TN

7     employee that is not currently represented by outside counsel.  Defendants have been unable to

8     contact him by phone or otherwise.  Defendants are continuing their efforts to contact him

9     (including having sent him a certified letter indicating that if he does not return Defendants'

10    counsel's calls, then Oracle will subpoena him directly) and hope to be able to provide additional

11    information to Oracle regarding Mr. Harris before the discovery conference.  Scott Trainor is an

12    in-house lawyer at SAP and former in-house lawyer at PeopleSoft.  His deposition was originally

13    scheduled and then cancelled for reasons that implicate the attorney-client privilege.  Defendants

14    advised Oracle of that fact.  Mr. Trainor now has separate counsel and Defendants are working

15    with Mr. Trainor and his counsel to select a mutually convenient date on which to reschedule his

16    deposition and hope to provide proposed dates to Oracle before the discovery conference.  Mr.

17    Brandt is the CFO and an executive board member of SAP, AG and has already been deposed

18    once in this case.  Defendants agreed to collect additional custodian documents from Mr. Brandt

19    in Germany and allow Oracle to depose Mr. Brandt again on the Siebel claims.  Defendants

20    informed Plaintiffs that due to the additional document collection, which is necessarily

21    complicated by German privacy laws, the volume of the data, the "21-day agreement" (there must

22    be at least 21 days between a custodian's document production and that custodian's deposition),

23    and Mr. Brandt's quarter-end obligations as CFO, Mr. Brandt is not available for deposition until

24    early November.  Defendants hope to provide a definitive date and location for Mr. Brandt's

25    deposition prior to the discovery conference.

26           Defendants have been cooperative in scheduling depositions.  For example, when Oracle

27    has requested earlier dates that were workable for the witness and all counsel, Defendants have

28    complied with Oracle's requests.  Moreover, what Oracle's chart does not show is that Oracle has

1    taken a similar length of time to offer deposition dates in response to Defendants' requests and

2    has required similar lead times.  For example, on May 13 Defendants requested dates for eight

3    witnesses.  On June 18 and 19, Oracle responded with dates in July, August, and September for

4    four witnesses; on July 7, Oracle responded with dates in August and September for two other

5    witnesses; on August 17, Oracle responded with a date in mid-October for one witness; and

6    Oracle has yet to provide dates for the remaining witness.

7         Also, Defendants have a significant number of deposition hours remaining and intend to

8    use many of those hours deposing certain TN customers.  Defendants have proposed dates in

9    September for two customer depositions and are waiting for Oracle's response.  Defendants have

10   advised Oracle that Defendants intend to take numerous customer depositions between now and

11   the close of fact discovery and thus need Oracle's ongoing cooperation in getting those dates

12   scheduled.  If the Court offers any guidance at the discovery conference regarding deposition

13   scheduling, then the TN customer depositions should be taken into account.

14               **IV.    Updating Interrogatory Responses with Siebel Information**

15        ***Oracle's Position***:  As part of the Parties' joint stipulation to amend the case schedule,

16   which Judge Hamilton signed on June 11, the Parties agreed that "each side may identify 20

17   interrogatory responses that it would like updated in scope consistent with the additional Siebel

18   discovery permitted or required elsewhere in this Order."  Docket Item 325 at 6:21-24.  This

19   provision was necessary to ensure the Parties had sufficient written discovery regarding Siebel,

20   given the fact that both Parties had already used most of their available interrogatories.  (The

21   stipulation did not impose any limitation on how the Parties could use those remaining

22   interrogatories.)  For example, the stipulation and order's explicit reference to *updated* responses

23   indicates that the Parties were referring to extant interrogatories, to which Oracle or Defendants

24   had already responded, though without Siebel-related information.  Based on this understanding,

25   when selecting its 20 interrogatory responses for Defendants to update, Oracle did not include

26   interrogatories from its Fourth Set,[1] as it was not served until May 20, after the Parties had

---

[1] Prior to and independent of the Parties' stipulation to amend the case schedule, each side
was entitled to serve 125 interrogatories.  Oracle's Fourth Set drew from this number.
Defendants have served all 125 interrogatories.

1   already submitted their stipulation to Judge Hamilton.  The Parties could not have believed during

2   negotiations that the 20 updated interrogatories would be drawn from a set not yet served, and the

3   stipulation did not purport to set out all the Siebel discovery available to the Parties.  Nor is

4   Defendants' position, below, that Siebel was not part of the case until August 14 supported by the

5   facts.  Defendants stipulated to Siebel's inclusion on May 12, and Judge Hamilton made clear on

6   May 28 that she would confirm that stipulation, as reflected in her June 11 order.  Moreover,

7   Defendants asked Oracle witnesses about Siebel as early as their second deposition, in August

8   *2008* (because Oracle had referred to Siebel as early as the Second Amended Complaint).

9        Oracle was therefore surprised when Defendants' eventual responses to the Fourth Set

10   refused to provide Siebel-related information where appropriate, contending that Oracle is limited

11   to 20 total interrogatories relating to Siebel in total – despite not having been served, much less

12   answered, when the Parties agreed to *update* 20 existing interrogatory *answers*.

13        To preserve its rights, on August 12, Oracle provided a revised list of 20 interrogatories to

14   Defendants.  However, it believes Defendants are obligated to answer all interrogatories from the

15   Fourth Set, as well as any subsequently-served interrogatories, with Siebel-related information

16   where appropriate.  Oracle believes this is a matter the Court can resolve without motion practice.

17   If Defendants must answer the newly-served interrogatories with Siebel-related information, on

18   which Oracle believes no limitation was imposed by the stipulation, then the Court can give that

19   guidance.  Alternatively, if the Court agrees with Defendants' interpretation, then Oracle requests

20   leave to withdraw and reserve the interrogatories in question.

21        Regarding the Siebel Rule 30(b)(6) testimony referred to below by Defendants, Oracle has

22   not refused to produce a witness on any reasonable line of inquiry.  Defendants noticed Oracle

23   witnesses for 131 sub-topics.  Oracle objected to 61, generally on the same grounds it had

24   objected to their PeopleSoft and JDE predecessors and, as to 49 of those 61, because the sub-

25   topics were not relevant to Siebel.  It then agreed to provide a witness as to 30, designated

26   existing applicable testimony as to another 27, and offered other responsive information as to 13

27   after meet and confer.  It is in these 13 where Oracle suggested another form of production would

28   be appropriate given the number of Siebel customers involved.

1    ***Defendants' Position***:  Defendants disagree with Oracle's construction of the parties'

2    agreement and Judge Hamilton's resulting June 11th Order relating to interrogatory discovery for

3    Siebel.  One primary purpose of the parties' agreement to permit Oracle to add Siebel into the

4    case was to define the extent of discovery and resulting burdens regarding that new issue.

5    Moreover, Oracle's position regarding this interrogatory issue is at odds with Oracle's refusal to

6    provide Siebel Rule 30(b)(6) testimony on a number of topics on the ground that there are only 16

7    customers at issue therefore extensive discovery is not warranted.  In other words, Oracle is

8    simultaneously asserting that the discovery it seeks regarding Siebel should be unlimited and the

9    discovery it has to provide to Defendants regarding Siebel should be restricted.

10           The interrogatories Oracle served on May 20th were no different than those previously

11   served in that Defendants responded to them referencing the product lines that were at issue in the

12   case **at the time the response was due**.  The Siebel products were not formally at issue in this

13   case until Friday August 14, 2009, when Judge Hamilton granted Oracle's motion to amend its

14   complaint.  Thus, the interrogatories served on May 20th are no different than those Oracle

15   previously served.  Defendants agree that if the parties are unable to reach an appropriate

16   compromise before the discovery conference, then this is an issue that can be resolved during the

17   conference without the need for motion practice.

18          **V.       Admissibility of TN-Authored SAS Records**

19          ***Oracle's Position***:  As discussed at the August 4 hearing on Oracle's motion to compel,

20   and as the Court is generally aware, Defendants have repeatedly, and heavily, relied on the SAS

21   database for their responses to interrogatories and requests for production.  Unlike substantive

22   discovery responses, this reliance on SAS may not provide Oracle with presumptively admissible

23   evidence.  Given the breadth and frequency of Defendants' reliance on SAS, Oracle believes it is

24   therefore appropriate for the Parties to stipulate that all TN-authored documents and statements,

25   and all TN-authored data regarding environments, downloads, and TN's service process in

26   general, contained in SAS, are admissible at trial.  Without such a stipulation, Oracle will be

27   unfairly prejudiced by Defendants' choice to rely on SAS in their discovery responses.  Further,

28   such a stipulation is to Defendants' advantage as well, since they presumably agree that the TN-

1  authored documents in SAS are authentic and admissible, given their frequent reliance on them in

2  lieu of narrative interrogatory responses, and intend to make use of the same documents

3  themselves at trial.

4         At the August 4 hearing, the Court stated, "I do think to the extent this was about

5  admissibility, I think you ought to address that directly by stipulation."  Exhibit F (Transcript of

6  August 4 Hearing) at 59:3-5.  Oracle will provide Defendants with a proposed stipulation during

7  the week of August 17 and will be prepared to discuss it with the Court at the August 25

8  Discovery Conference.

9         ***Defendants' Position***:  As Defendants' counsel has previously indicated to the Court,

10  Defendants are willing to consider any reasonable proposal by Oracle in this regard and will

11  respond accordingly when and if it is received.  Regardless, it is important to note that Oracle's

12  statement above discusses a unilateral stipulation regarding the authenticity and/or admissibility

13  of certain of Defendants' documents.  To the extent that any agreement is reached regarding

14  authenticity and/or admissibility in this case, that agreement should be bilateral and consider

15  certain of Oracle's documents as well.

16  **VI.    Oracle's Compliance with Order on Defendants' Copyright Motion to
            Compel**

17

18         ***Defendants' Position***:  It has been two months since the Court's June 26 order on

19  Defendants' copyright motion to compel and Oracle still has not provided the supplemental

20  interrogatory response the Court ordered regarding derivative Registered Works.  Defendants

21  request that the Court specify a date certain that, given the limited time left for discovery, allows

22  Defendants sufficient time for analysis and follow-up discovery.  It is important to note that

23  Oracle has produced additional inter-entity agreements after its June 29 certification (pursuant to

24  this Court's order) that it had produced "all inter-Oracle entity agreements relating to the

25  acquisition, assignment, or transfer of the Registered Works located after a diligent search of all

26  locations at which such materials might plausibly exist."  Oracle has characterized the additional

27  agreements it produced after its certification as not being subject to the June 26th order.

28  Defendants disagree that the additional agreements, which include assignment and distribution

13                          AMENDED JOINT DISC. CONF. STATEMENT
                            Case No. 07-CV-1658 PJH (EDL)

1    agreements among Oracle entities similar to those produced previously, are not subject to the

2    order.  One of the purposes of the motion and resulting order was to provide certainty as to the

3    universe of applicable agreements.  Oracle's continuing production of agreements defeats that

4    purpose.  Moreover, now that Judge Hamilton has permitted Oracle to include additional

5    copyright registrations in this case, Oracle should be given a date certain to produce all

6    responsive documents related to those new registrations.

7            As another example of Oracle's delayed production of documents and information ordered

8    produced by this Court, Oracle has during the past week also produced additional customer-

9    specific financial reports for more than 50 customers after representing in May that its "April 21,

10   2009 supplemental production of financial reports [pursuant to this Court's April 2 order]

11   included any and all financial reports that could be located in reasonably available databases after

12   an extensive customer-by-customer search."  Oracle has indicated that it is continuing to

13   investigate whether there are additional reports that should have been produced as well.

14   Defendants contend that this investigation should have been completed and the supplemental

15   productions made a long time ago.  Defendants thus request that the Court set a date certain for

16   Oracle to produce any such reports.

17           With regard to Oracle's statements on Defendants' production of customer-specific

18   reports: (a) Defendants have already produced customer-specific financial reports for all TN

19   customers for which such reports exist, including the Siebel customers recently added to the list;

20   (b) Defendants have responded to Oracle's August 18 inquiry regarding contracts for six TN

21   customers indicating that contracts for three of them were produced several months ago and that

22   no contracts exist for the remaining three; and (c) Defendants' customer-specific reports are

23   largely pre-existing documents -- to the extent any of them are "unreliable," it is a reflection of

24   the available data and not due to any failure by Defendants to supplement.

25           ***Oracle's Position***:  Defendants here combine two unrelated issues.  First, as to the

26   interrogatory response, the Parties and the Court agreed and understood that supplementing

27   Interrogatory No. 13 per the Court's June 26 order would take a significant amount of time (the

28   newly-added part of that response will be approximately 70 pages).  That is why, before even

1  issuing that order, the Court ordered the Parties to meet and confer with respect to Oracle's

2  burden, and is also why the order currently contains no date certain.  Oracle has been working

3  diligently to collect, organize, and verify this information to be able to supplement its response

4  appropriately, and for PeopleSoft and JDE, expects to do so prior to the August 25 Discovery

5  Conference.  For Siebel and Oracle's database products (the latter of which Judge Hamilton

6  allowed to be added to Oracle's complaint on August 14, 2009), Oracle is working similarly

7  diligently and will further supplement its response as soon as possible, and in particular, the

8  Parties have agreed that supplementation of prior interrogatories related to Siebel should occur by

9  September 18 and Oracle will meet that deadline.  Regardless, Defendants will have these

10 responses with more than ample time for sufficient analysis and follow-up discovery, the need for

11 which they do not attempt to quantify.  Oracle has proposed a limited amount of additional

12 discovery for both sides in connection with the database claims, but have not received a response

13 yet regarding that proposal.  If necessary, Oracle will seek appropriate relief from Judge Hamilton

14 or this Court.

15       As to the June 26 Order, it specifically is limited to the inter-entity agreements "relating to

16 the acquisition, assignment, or transfer of the Registered Works…."   Docket Item 328, ¶ 3.

17 Defendants now imply, but stop short of claiming, that the further inter-entity productions have

18 related to "the acquisition, assignment, or transfer of the Registered Works."  The further inter-

19 entity agreements did not relate to "the acquisition, assignment, or transfer of the Registered

20 Works," and Oracle's certification stands, subject to the inter-entity agreements related to the new

21 amendments.  They also say now for the first time that the intent of their copyright motion (as to

22 which the June 26 Order related) was to receive "the universe of applicable agreements."  That

23 claim contradicts the language of the June 26 Order itself.   Further, not only is that new request

24 vague and overbroad as to what Oracle would be forced to produce in response, but it also fails to

25 take into account the ongoing discovery about the applicable agreements, including ongoing

26 production of Siebel and Database-related agreements.

27       Second, as to Oracle's production of customer-specific financial reports, although that

28 production is essentially complete, under Rule 26(e) Oracle is obligated to and does supplement

15                    AMENDED JOINT DISC. CONF. STATEMENT
                      Case No. 07-CV-1658 PJH (EDL)

1    its discovery responses if it learns new relevant information.  Last week's production was such a

2    supplement.  Corporate affiliations are not always readily apparent when running such reports.

3    The Parties have been supplementing when such affiliations are identified, often through a

4    manual review and comparison of documents produced by both Parties.  For example, in

5    searching for the corporate history of relevant customer Foot Locker during the pertinent time

6    period, Oracle learned that the entity Venator Group became Foot Locker, and accordingly went

7    back to review, collect, and produce Venator Group's OKI3 report.  Both Parties are obligated to

8    make such supplements of their discovery responses, and Defendants have done so as well as

9    Oracle.  For example, Oracle believes Defendants should supplement their own customer-specific

10   financial reports, as Defendants have described those reports as "not reliable" and have not

11   produced updated versions since last amending their list of customers.  As another example, on

12   August 18, Oracle pointed out six TN customers for whom Defendants have not produced

13   customer contracts, which Defendants should provide in a supplemental production.

14         Given its obligations under Rule 26(e) and its need for Defendants' changing customer

15   information to evaluate its own production, Oracle cannot predict when, if at all, it will learn new

16   information that will require supplementation of its discovery responses.  It will continue to

17   timely meet its obligations and expects Defendants to do the same.

18         **VII.    Supervisory Board Documents**

19         ***Oracle's Position***:  At his June 2, 2009 deposition, Hasso Plattner, Chairman of the SAP

20   AG Supervisory Board, referenced two documents that are responsive to Oracle's document

21   requests but have not been produced by Defendants.  First, Mr. Plattner described a Supervisory

22   Board meeting, at which the SAP AG Executive Board presented the TN acquisition opportunity

23   to the Supervisory Board and at which Mr. Plattner asked the Executive Board if TN was

24   "supported by a legal framework" and "whether [TN] has the right to access source code."

25   Exhibit E at 17:25-18:11 (Plattner Depo.).  This meeting therefore involved topics plainly

26   relevant to the case, but Defendants did not produce any corresponding Supervisory Board

27   meeting minutes from it.  Second, Mr. Plattner testified that a one-page TN report was presented

28

1    at the same Supervisory Board meeting.  This document also does not appear in Defendants'

2    production.  *Id.* at 13:1-7; 73:2-74:3; 75:23-76:9.

3              Oracle inquired about these documents soon after Mr. Plattner's deposition, but

4    Defendants stated that they were unable to locate any such documents.  However, after reviewing

5    the transcript for accuracy, Mr. Plattner did not change his testimony.  This creates a discrepancy

6    between the Chairman's sworn testimony and the documents collected by Defendants, which

7    Defendants have been unable to explain in meet and confer.  Oracle requests that Defendants be

8    required either to conduct a more exhaustive search, or provide a detailed description of why they

9    are unable to produce documents their Chairman has said existed and that he reviewed and

10   believed were still available.  Since Defendants, below, do not claim that any such documents are

11   archived or otherwise inaccessible, such a description should state that the documents referenced

12   by Mr. Plattner have been lost or destroyed, if that is the case.  Whether through further

13   investigation or description, Oracle needs confirmation that Defendants' counsel have discussed

14   the matter directly with Mr. Plattner as part of the effort to locate these critical documents; a

15   statement from a custodian of the minutes, as offered by Defendants below, is insufficient without

16   certification that Mr. Plattner has been directly consulted.

17             ***Defendants' Position***:  Defendants have already informed Oracle that Defendants have

18   attempted to determine whether the document(s) noted above ever existed, and have been unable

19   to make that determination and/or locate such document(s).  If necessary, Defendants are willing

20   to produce a declaration from one of the custodians of the Supervisory Board meeting minutes

21   indicating that a reasonable search has been made and that the above-cited document(s)

22   referenced in Mr. Plattner's testimony, to the extent they ever existed, have not been located.

23

24

25

26

27

28

DATED:  August 19, 2009                         BINGHAM McCUTCHEN LLP


                                                By: _____ /s/ Bree Hann _____
                                                              Bree Hann
                                                       Attorneys for Plaintiffs
                                              Oracle USA, Inc., Oracle International
                                              Corporation, and Oracle EMEA Limited


        In accordance with General Order No. 45, Rule X, the above signatory attests that

concurrence in the filing of this document has been obtained from the signatory below.

DATED:  August 19, 2009                         JONES DAY


                                                By: _____ /s/ _____
                                                            Jason McDonell
                                                      Attorneys for Defendants
                                              SAP AG, SAP AMERICA, INC., and
                                                    TOMORROWNOW, INC.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE


| | |
|---|---|
| ORACLE CORPORATION, a Delaware ) | Case No. C07-1658 |
| Corporation; ORACLE, USA, INC.,) | PJH(EDL) |
| a Colorado Corporation; and ) | |
| ORACLE INTERNATIONAL ) | |
| CORPORATION, a California ) | |
| Corporation, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | FURTHER DISCOVERY |
| ) | CONFERENCE |
| ) | |
| SAP AG, a German Corporation; ) | |
| SAP AMERICA, INC., a Delaware ) | |
| CORPORATION; TOMORROWNOW, INC.,) | |
| a Texas Corporation; and DOES ) | |
| 1-50, Inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |


November 25, 2008

TRANSCRIPT OF AUDIO RECORDING OF DISCOVERY CONFERENCE


TRANSCRIBED BY:  FREDDIE REPPOND

1   one side --

2            THE COURT:  Or it's sort of like -- I guess --

3   you know we could go the RFA route.  I mean that's

4   another thing, but I don't want to get into, you know,

5   all of that.  I think that would be less cooperative.

6   I'd prefer to --

7            MR. PICKETT:  This has been going on since

8   June, so we're now facing almost its six-month

9   anniversary; and I don't want it to have a seventh- or

10  eighth-month anniversary.  I think this is something

11  we've got to resolve one way or the other.  If we can't,

12  it has big impact on discovery, because we've been

13  hoping to get beyond this.  Then we need to go back and

14  say there are far many more custodians that we're going

15  to need production from.  We may need to go to Judge

16  Hamilton to get -- and you don't want to go down that

17  road.

18           THE COURT:  Right.  Well -- and to some extent

19  that's always been, I think, the incentive for the

20  Defendants to stipulate; that is to say the alternative

21  is to spend a huge amount more money and time on

22  unearthing every fact.

23           MR. COWAN:  That is in part, Your Honor, the

24  quid pro quo.  One issue that -- I don't think that

25  Mr. Pickett's suggestion is a bad one in terms of

DISCOVERY CONFERENCE          November 25, 2008

Page 41

 1    suffer.

 2              MR. COWAN:  We're mindful of that, Your Honor.

 3    And that's why we went through the things we did to tell

 4    them what the problems were in writing so they can look

 5    at that and --

 6              THE COURT:  Now, without having seem them --

 7                        [CROSS-TALK]

 8              MR. PICKETT:  I don't think it's ripe to

 9    present you this, but it's going to be ripe soon,

10    because I think we need to resolve this before long.

11              THE COURT:  I think -- I think you'll have to

12    discuss, too, which judge you think you should deal

13    with.

14              MR. PICKETT:  I'm agnostic.

15              THE COURT:  Yeah.  If it's a process issue,

16    it's one thing.  I thought it was going to be more along

17    the lines of sort of sampling and experts and so on, but

18    you're talking now something different.  And so it may

19    be less than what I was having in mind.  It's still a

20    good idea.  I just --

21              MR. PICKETT:  It would be great to achieve if

22    we could.

23              I hesitate -- well, let me try -- this may not

24    be useful or not or it may be.  One example of a problem

25    is we say that -- we cite this testimony.  We say this

1    is the way it was done for each -- we use the word

2    "critical support" -- basically for each copy that was

3    made this is how --

4              THE COURT:  Each what?

5              MR. PICKETT:  Each copy that was made.

6              And one of their objections is, Well, we can't

7    say "each" because we may want to put in evidence that

8    it wasn't done for this particular copy or application.

9    But that seems to me to kind of --

10                        [CROSS-TALK]

11             THE COURT:  Could the answer be the vast

12   majority?

13             MR. COWAN:  I think the answer --

14             THE COURT:  In other words --

15             MR. PICKETT:  If we don't have access --

16             THE COURT:  Yeah.  But I mean if it's -- I

17   don't know what to say, but if -- well -- you can't --

18   if you haven't produced the counter example, obviously I

19   don't see how you could put it in evidence --

20             MR. COWAN:  And that's part of why we've been

21   very vociferous in our response is to try to guide them

22   to what our issues are to where we could -- you can

23   either define something by what it is or by what it's

24   not, right?  And I think having an umbrella that covers

25   everything when we know going into it no, no, there's

1    some instances where that is not --

2              THE COURT:  Okay.  So why don't you give them

3    the examples of instances where it's not the case and

4    then you arrive either at something that's truly

5    quantitative, you know, 95 percent of the time or

6    60 percent of the time; or you arrive at some words of

7    qualitative; and I don't know if that would be

8    satisfactory.  But I'll bet you for a jury it is, like

9    the "vast majority" or "most," "more than half," you

10   know, "at least 75 percent" -- I mean you know juries

11   don't cut it that finely, if even that finely, you know.

12             MR. PICKETT:  Okay.  That's actually helpful.

13             MR. COWAN:  Correct.

14             MR. PICKETT:  All right.

15             MR. COWAN:  Thank you, Your Honor.

16             The next -- the next point is just an FYI for

17   you that we included on here is that the Oracle filed a

18   third amended complaint.  We filed a motion to dismiss;

19   and Judge Hamilton is hearing that tomorrow.  So that's

20   that point.

21             THE COURT:  Is that sort of expanding the

22   case?  Is that what's at issue?

23             MR. COWAN:  It's our attempt to address what

24   we believe are the deficiencies in their copyright

25   claim; and so it's --

1   STATE OF CALIFORNIA        )

     COUNTY OF SAN FRANCISCO )

2

3          CERTIFICATE OF REPORTER/TRANSCRIBER

4         I, the undersigned, a Shorthand Reporter and

5   licensed Notary Public, do hereby certify that the above

6   referenced recording was transcribed by me and that this

7   transcript is a true record of that recording.

8         IN WITNESS WHEREOF I have hereunto set my hand

9   on this  9   of December , 2008.

10

11

12     FREDDIE REPPOND

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

# DOCUMENT SUBMITTED UNDER SEAL

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE


ORACLE CORPORATION, a Delaware )   Case No. C07-1658
Corporation; ORACLE, USA, INC.,)   PJH (EDL)
a Colorado corporation; and    )
ORACLE INTERNATIONAL           )
CORPORATION, a California      )
corporation,                   )
                               )
                Plaintiffs,    )
                               )
        vs.                    )   FURTHER DISCOVERY
                               )   CONFERENCE
                               )
SAP AG, a German corporation;  )
SAP AMERICA, INC., a Delaware  )
corporation; TOMORROWNOW, INC.,)
a Texas corporation; and DOES  )
1-50, Inclusive,               )
                               )
                Defendants.    )
_____)


February 13, 2009

TRANSCRIPT OF AUDIO RECORDING


TRANSCRIBED BY:  FREDDIE REPPOND

PROCEEDINGS   February 13, 2009

Page 9

1           MR. HOWARD:  Yes.

2           THE COURT:  Okay.  And so anything I did was

3    not a quid pro quo for that.  And if those are going to

4    change, which would have to be up to her -- and I would

5    be surprised if she would change them, but, you know.

6    So I do, you know, I continue to feel that the Rule 1

7    considerations of just expedient and expensive caution

8    for some kind of stipulation.  And I don't -- but, you

9    know, by its nature I can't force a stipulation.  That

10   would be an oxymoron.  So -- but I certainly think it

11   would make sense, you know -- and it looked like the

12   kinds of things the Plaintiff was proposing in general

13   made some sense.

14          MR. COWAN:  And I think, Your Honor, maybe it

15   helps to use your analogy.  And we've talked -- every

16   time we talk this issue I raise the point that we have

17   to know more information about how they're going to use

18   the stipulation.

19          THE COURT:  And I guess I find that puzzling,

20   to tell you the truth, because I tend to view it -- when

21   the Plaintiffs say stipulation, I have trials where they

22   are stipulated facts and you can use them any way you

23   want, because by the virtue of they're stipulated

24   they're true.  So I'm not sure -- I really don't

25   understand what is the concern.  Maybe if I

Merrill Legal Solutions
(800) 869-9132

PROCEEDINGS  February 13, 2009

Page 10

1    understood -- I mean, obviously, you know, nobody wants

2    them to be distorted, but that's why you word them

3    carefully.

4            MR. COWAN:  Right.  And let me give you an

5    example; and it's bit of an obtuse analogy, but I think

6    it's one that will help prove the point.

7            When I come to this hearing, every time we're

8    here I usually come by taxi.  Sometimes on occasion I

9    have walked.  Rarely.  Sometimes I've driven a rental

10   car.  And for some purposes I might be willing to

11   stipulate every time I go to a discovery conference in

12   front of Judge LaPorte, I ride the taxi, every time;

13   because it really doesn't matter; that's not that

14   material.  But if someone was going to retrospectively

15   charge me a thousand dollars for that taxi trip, I

16   would want to get that agreement of what I'm

17   stipulating to with much more precision.  And the big

18   dilemma my client faces is for some things summarizing

19   the facts in the form of a stipulation may work --

20           THE COURT:  Well, I assume that what you're

21   worried about is damages.

22           MR. COWAN:  Absolutely.  That's our focus.

23   And if we cannot understand how Plaintiffs are going to

24   take these stipulations and fold them into their damage

25   model, I don't think we'll ever get there.  And I've

PROCEEDINGS   February 13, 2009

1    told --

2              THE COURT:  But to me that just -- I mean

3    these are -- to me then what you would have to do is

4    stipulate, instead of -- that's sort of again coming

5    back to a more statistical or probablistic approach that

6    I would think serve both of you is if you think that

7    it's generally true but maybe five percent of the time

8    it wasn't, then you stipulate that ninety-five percent

9    of the time or to some -- you know, that kind of

10   adjustment -- you know, a plus or minus factor or an

11   uncertainty or something analogous to that, rather than,

12   you know -- what I think Judge Hamilton -- she's not

13   going to give you so many trial hours that you can go

14   through the exceptions to stuff anyway.  In the end you

15   won't be able to do that, either one of you.

16             MR. HOWARD:  That's exactly why this is so

17   critical and otherwise.  I mean this is a little crazy

18   that for eight months we've been, you know, supposedly

19   we're working in good faith on a stipulation but now we

20   can't agree to facts that we all know are true because

21   of damages.

22             THE COURT:  Well --

23             MR. HOWARD:  We can't put on our liability

24   case because of damages.

25             THE COURT:  All right.  Well, I think that

1    what you have to do is -- if, for example, what you're

2    saying is you are aware, to use your analogy, that

3    ninety-five percent of the time you use the taxi.  But,

4    you know, if it really came down to whether you had to

5    go in front of Congress and say you paid for that

6    borrowed limousine, et cetera, with the other five

7    percent, you would really need to know, you know -- and

8    then you may need to be willing to compromise and not go

9    for a hundred percent, even though you think it's a

10   hundred percent but there might have been, you know,

11   exceptions and --

12             MR. HOWARD:  Your Honor, if I may.  The

13   example being used is not one of the three obstacles

14   that have been identified in the statement.  We have

15   compromised on that one.  We started with each.  We've

16   moved to, in many -- in most cases we've moved to

17   generally speaking, taking your guidance from the last

18   hearing.  These are the three obstacles starting with

19   the last one first, which is damages.

20             They won't stipulate to liability facts

21   unless there are constraints on our ability to use them

22   on damages.  We will not agree to that.  And we don't

23   think we should be prevented from putting on our

24   liability case because of their concern over damages.

25   Everyone does what they're going to do on damages.  So

1    If you're asking me to increase the number of deposition

2    hours, I can't do that.  Would you have a better case in

3    front of Judge Hamilton for increasing the deposition

4    hours if they're not willing to follow a suggestion that

5    I've made for eight months, and I -- it's not a unique

6    suggestion.  All of our standing orders, as far as I

7    know, say the parties are supposed to stipulate in the

8    pretrial order to as many undisputed facts as possible.

9              MR. COWAN:  That's the point.

10             THE COURT:  And, you know, I think it's a

11   valid thing to the extent you are afraid justifiably of

12   stipulating that something was done a hundred percent of

13   the time because you haven't chased everything down and

14   everybody knows that rarely is anything done a hundred

15   percent of the time, even when it's supposed to be,

16   right.  So I think that, you know, makes sense if you --

17   and you're saying you're doing that.  And to have it

18   most of the time or ninety percent of the time or that

19   sort of thing, that makes sense to me.  But I can't, you

20   know, force anyone to stipulate.

21             Now, it does strike me that if there's a

22   difference somehow between what was done before the

23   lawsuit and what since, you know, maybe it's easier to

24   stipulate to certain time periods than later time

25   periods.  And any degree of stipulation helps.  I

1    STATE OF CALIFORNIA        )

     COUNTY OF SAN FRANCISCO )

2

3              CERTIFICATE OF REPORTER/TRANSCRIBER

4              I, the undersigned, a Shorthand Reporter and

5    licensed Notary Public, do hereby certify that the above

6    referenced recording was transcribed by me and that this

7    transcript is a true record of that recording.

8              IN WITNESS WHEREOF I have hereunto set my hand

9    on this  19  of February · 2009.

10

11

12         FREDDIE REPPOND

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


ORACLE CORPORATION, ET AL, *
        Plaintiffs,       *
                          *
VS.                       * CASE NO. 07-CV-01658 (MJJ)
                          *
SAP AG, ET AL,            *
        Defendants.       *


**********************************************************

HIGHLY CONFIDENTIAL

ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF

CATHERINE LEE HYDE

APRIL 1, 2008

**********************************************************




REPORTED BY:

CAROL JENKINS, CSR, RPR, CRR

CERTIFICATE NO. 2660

CATHERINE LEE HYDE      April 1, 2008
HIGHLY CONFIDENTIAL

Page 50

17:38:23   1

17:38:29   2

17:38:31   3

17:38:31   4

17:38:36   5

17:38:39   6

17:38:43   7

17:38:49   8

17:38:53   9

17:38:57  10

17:39:00  11

17:39:08  12

17:39:14  13

17:39:21  14

17:39:23  15

17:39:24  16      Q.   So you create HG75103C using some customer

17:39:33  17  software.  Some college students download from Customer

17:39:42  18  Connection updates for HG751, and -- and you apply those

17:39:46  19  to fix master the environment?

17:39:49  20      A.   Payroll fixes, yes.

17:39:54  21      Q.   Then how is that -- then how is that

17:39:58  22  environment used over time to create the retrofit

17:40:02  23  updates for the HG751 customers?  Let me -- let me ask

17:40:12  24  it a different way.

17:40:13  25           How is the HG75103C environment then used

CATHERINE LEE HYDE     April 1, 2008
HIGHLY CONFIDENTIAL

Page 51

17:40:19   1      to create retrofit updates?

17:40:24   2          A.   Let's just say I don't remember exactly when

17:40:28   3      PeopleSoft retired that release.  So I can tell you how

17:40:32   4      we used it prior to 03C for sure.  If you have 03B and

17:40:41   5      you compare it to 03C, we would know what was changed,

17:40:46   6      and we would determine if we could put that into the 702

17:40:50   7      release for HG.

17:40:57   8          Q.   So was HG75103C being used to support HG702

17:41:03   9      customers?

17:41:08   10         A.   Yes.

17:41:08   11         Q.   And each time a new update was created, would

17:41:15   12     new downloads be applied to the environment?

17:41:20   13         A.   The tax update?

17:41:23   14         Q.   Yes.

17:41:24   15         A.   Yes.

17:41:27   16

17:41:30   17

17:41:34   18

17:41:40   19

17:41:43   20

17:42:02   21

17:42:07   22

17:42:10   23

17:42:11   24

17:42:17   25

CATHERINE LEE HYDE     April 1, 2008
HIGHLY CONFIDENTIAL

```
 1     COUNTY OF HARRIS

 2     STATE OF TEXAS

 3

 4                   REPORTER'S CERTIFICATE

 5

 6          I, CAROL JENKINS, Certified Shorthand

 7     Reporter in and for the State of Texas, hereby certify

 8     that this transcript is a true record of the testimony

 9     given by the witness named herein, after said witness

10     was duly sworn by me.

11          I further certify that the deposition

12     transcript was submitted on _____,

13     _____ to the witness or to the attorney for the

14     witness for examination, signature, and return to me by

15     _____, _____.

16          I further certify the amount of time used

17     by each party at the deposition is as follows:

18          Mr. Geoffrey M. Howard - (01h44m)

19          Mr. Jason McDonell - (00h00m)

20          I further certify that I am neither

21     attorney nor counsel for, related to, nor employed by

22     any of the parties to the action in which this testimony

23     was taken.  Further, I am not a relative or employee of

24     any attorney of record in this cause, nor do I have a

25     financial interest in the action.
```

64

CATHERINE LEE HYDE       April 1, 2008
HIGHLY CONFIDENTIAL

1                    SUBSCRIBED AND SWORN TO by the undersigned

2      on this the ___7th___ day of __April__ , _2008_ .

3

4                              _Carol Jenkins_

                       CAROL JENKINS, CSR

5                      Certificate No. 2660

                       Date of Expiration:  12/31/08

6                      Merrill Legal Solutions, No. 210

                       315 Capitol Street, Suite 100

7                      Houston, Texas 77002

                       (713) 426-0400

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

65

# EXHIBIT E

HASSO PLATTNER    June 2, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 07-CV-1658 (PJH) |
| SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

VIDEOTAPED DEPOSITION OF

HASSO PLATTNER

TUESDAY, JUNE 2, 2009

HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-419913)

HASSO PLATTNER      June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17

09:08:24    1

09:08:27    2

09:08:29    3

09:08:33    4

09:08:42    5

09:08:45    6

09:08:49    7

09:08:52    8

09:08:56    9

09:08:57   10

09:08:59   11

09:09:03   12

09:09:05   13

09:09:06   14

09:09:09   15

09:09:11   16

09:09:15   17

09:09:17   18

09:09:20   19

09:09:21   20

09:09:24   21

09:09:28   22

09:09:31   23

09:09:32   24

09:09:33   25          Were there any concerns that were

Page 18

| | | |
|---|---|---|
| 09:09:34 | 1 | identified to the Supervisory Board relating to the |
| 09:09:37 | 2 | way in which TomorrowNow provided service to its |
| 09:09:39 | 3 | customers prior to the acquisition? |
| 09:09:45 | 4 | A.  By the executive team? |
| 09:09:48 | 5 | Q.  At this presentation by the executive team, |
| 09:09:50 | 6 | yes, sir. |
| 09:09:52 | 7 | A.  No.  I asked a question. |
| 09:09:55 | 8 | Q.  What did you ask? |
| 09:09:56 | 9 | A.  I asked the question whether this is |
| 09:10:01 | 10 | supported by a legal framework, and whether |
| 09:10:04 | 11 | TomorrowNow has the right to access source code. |
| 09:10:07 | 12 | |
| 09:10:09 | 13 | |
| 09:10:11 | 14 | |
| 09:10:14 | 15 | |
| 09:10:15 | 16 | |
| 09:10:17 | 17 | |
| 09:10:22 | 18 | |
| 09:10:25 | 19 | |
| 09:10:28 | 20 | |
| 09:10:30 | 21 | |
| 09:10:32 | 22 | |
| 09:10:37 | 23 | |
| 09:10:39 | 24 | |
| 09:10:42 | 25 | |

HASSO PLATTNER      June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 13

09:02:47  1      Q.  And do you recall, was there a document

09:02:49  2  that was used in the presentation?

09:02:54  3      A.  More probably, overhead.  Power Points.

09:02:57  4          MR. LANIER:  I'll just caution you not to

09:02:58  5  guess.  Give him your best recollection.

09:03:02  6          THE WITNESS:  It has to be Power Point.

09:03:04  7  Otherwise, it cannot be presented.

09:03:12  8

09:03:12  9

09:03:15  10

09:03:17  11

09:03:19  12

09:03:24  13

09:03:31  14

09:03:34  15

09:03:38  16

09:03:39  17

09:03:42  18

09:03:46  19

09:03:53  20

09:03:56  21

09:04:00  22

09:04:03  23

09:04:06  24

09:04:08  25

HASSO PLATTNER     June 2, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 73

10:41:01   1

10:41:04   2          The first one I'm going to mark as

10:41:06   3    Exhibit 1400, is titled "Business Case,

10:41:09   4    TomorrowNow," with a date of January 7, 2005.

10:41:13   5          You'll get a copy from the court reporter

10:41:14   6    in just a minute.

10:41:16   7          This is a copy of a presentation that's

10:41:19   8    been previously marked in the case as an attachment

10:41:22   9    to an email.  That exhibit is 449.  But it's hard to

10:41:26   10   read, and this is from the native document and it's

10:41:29   11   easier to read, so I'm using this one.

10:41:31   12          (Deposition Exhibit 1400 was marked for

10:41:32   13          identification.)

10:41:55   14          MR. HOWARD:  Q.  Mr. Plattner, have you

10:41:56   15   seen this document before?

10:42:25   16     A.  (Examining document.)  I don't know whether

10:43:42   17   that was used in a -- in the Supervisory Board

10:43:47   18   presentation.

10:43:48   19     Q.  That was my question, whether you could

10:43:49   20   tell from looking at this if this was the

10:43:51   21   presentation that you saw in that meeting you

10:43:54   22   testified about earlier.

10:43:55   23     A.  I cannot tell.  It also could have been

10:44:05   24   additional material, and there was a 1-page, since

10:44:08   25   it was a very small acquisition.  I just read, it

HASSO PLATTNER      June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 10:44:12 | 1 | was only a 10 million acquisition, so it was a very |
| 10:44:16 | 2 | small acquisition, so that there was probably only a |
| 10:44:19 | 3 | 1-page document. |
| 10:44:21 | 4 | |
| 10:44:28 | 5 | |
| 10:44:31 | 6 | |
| 10:44:39 | 7 | |
| 10:44:41 | 8 | |
| 10:44:43 | 9 | |
| 10:44:46 | 10 | |
| 10:44:50 | 11 | |
| 10:44:52 | 12 | |
| 10:44:54 | 13 | |
| 10:44:55 | 14 | |
| 10:44:55 | 15 | |
| 10:44:55 | 16 | |
| 10:44:56 | 17 | |
| 10:44:58 | 18 | |
| 10:44:58 | 19 | |
| 10:45:00 | 20 | |
| 10:45:03 | 21 | |
| 10:45:04 | 22 | |
| 10:45:04 | 23 | |
| 10:45:06 | 24 | |
| 10:45:08 | 25 | |

HASSO PLATTNER    June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 75

10:45:11    1

10:45:14    2

10:45:17    3

10:45:20    4

10:45:23    5

10:45:26    6

10:45:30    7

10:45:37    8

10:45:45    9

10:45:50   10

10:45:51   11

10:45:56   12

10:45:58   13

10:46:01   14

10:46:07   15

10:46:12   16

10:46:13   17

10:46:15   18

10:46:43   19

10:46:44   20

10:46:48   21

10:46:52   22

10:46:55   23          MR. HOWARD:  Q.  Okay.  And the specific

10:46:56   24    comment -- are you referring to the --

10:46:57   25          A.  I do not -- I have not seen that comment

HASSO PLATTNER    June 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 76

| | | |
|---|---|---|
| 10:47:01 | 1 | here. |
| 10:47:01 | 2 | Q.  Are you referring to the parenthetical that |
| 10:47:03 | 3 | refers to offsite production copies? |
| 10:47:05 | 4 | A.  Yeah, offsite production copies.  If I |
| 10:47:07 | 5 | interpret this negatively, then that was not |
| 10:47:12 | 6 | presented. |
| 10:47:14 | 7 | So then this is definitely not what I have |
| 10:47:19 | 8 | seen.  As I said, I have seen probably only a 1-page |
| 10:47:23 | 9 | document. |
| 10:47:23 | 10 | |
| 10:47:26 | 11 | |
| 10:47:28 | 12 | |
| 10:47:56 | 13 | |
| 10:47:59 | 14 | |
| 10:48:02 | 15 | |
| 10:48:06 | 16 | |
| 10:48:09 | 17 | |
| 10:48:32 | 18 | |
| 10:48:34 | 19 | |
| 10:48:42 | 20 | |
| 10:48:45 | 21 | |
| 10:48:47 | 22 | |
| 10:48:49 | 23 | |
| 10:48:52 | 24 | |
| 10:48:53 | 25 | |

```
 1                 CERTIFICATE OF REPORTER

 2          I, HOLLY THUMAN, a Certified Shorthand

 3   Reporter, hereby certify that the witness in the

 4   foregoing deposition was by me duly sworn to tell the

 5   truth, the whole truth, and nothing but the truth in the

 6   within-entitled cause; that said deposition was taken

 7   down in shorthand by me, a disinterested person, at the

 8   time and place therein stated, and that the testimony of

 9   the said witness was thereafter reduced to typewriting,

10   by computer, under my direction and supervision;

11          That before completion of the deposition,

12   review of the transcript [X] was [ ] was not requested.

13   If requested, any changes made by the deponent (and

14   provided to the reporter) during the period allowed are

15   appended hereto.

16          I further certify that I am not of counsel or

17   attorney for either or any of the parties to the said

18   deposition, nor in any way interested in the event of

19   this cause, and that I am not related to any of the

20   parties thereto.

21

22   DATED   June 5, 2009.

23

24   _____

25   HOLLY THUMAN, CSR No. 6834
```

# EXHIBIT F

Pages 1 - 59

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE

ORACLE CORPORATION,                    )

                                       )

          Plaintiff,          )

                                       )

VS.                           )NO. C 07-1658

                                       )

SAP AG, et al,                )

                              )San Francisco, California

          Defendants.         )Tuesday

                              )August 4, 2009

                              )2:00 p.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:     BINGHAM, MCCUTCHEN LLP

          Three Embarcadero Center

          San Francisco, California 94111-4067

          BY:  GEOFFREY M. HOWARD, ESQ.

          JOHN POLITO, ESQ.

          ZACHARY J. ALINDER, ESQ.

For Defendants:     JONES DAY

          717 Texas

          Suite 300

          Houston, Texas 77002

          BY:  SCOTT W. COWAN, ESQ.

          JONES DAY

          1755 Embarcadero Road

          Palo Alto, California 94303

          BY:  JACQUELINE K.S. LEE, ESQ.

          HEATHER FUGITT, ESQ.

Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR

          Official Reporter - US District Court

          Computerized Transcription By Eclipse

Unsigned                                                    Page

58

1    major disputes on authenticity, that it is what it says it
2    is
3         THE COURT:  It's a business record, so it's not
4    hearsay
5         MR. COWAN:  I don't think there is going to be any
6    issue on that.  They have used it extensively in depositions,
7    et cetera.  I don't foresee that being a problem unless there
8    is some particular piece of it or component that has similar
9    liability issue, et cetera.  I don't think that's going to be
10   the big issue.  I do agree that's something we take up with
11   the trial judge at trial if --
12        THE COURT:  Well, I mean, there is no reason not to
13   take it up now to some extent.  I mean, I don't know if you
14   have some particular concern
15        Anyway, I have to stop.  It's been an hour and 20
16   minutes.
17        MR. HOWARD:  We may make a further proposal in a
18   discovery conference in that regard
19        THE COURT:  I'm not opposed to that.  I don't think
20   you can leave everything to the last minute.
21        MR. COWAN:  I understand.  But my only point on
22   that, your Honor, without knowing what his proposed agreement
23   is and trying to agree with something on the fly, I'm
24   hesitant not to commit
25        THE COURT:  I'm not asking you to commit to

59

1    anything right this minute.
2         MR. COWAN:  Okay.
3         THE COURT:  I do think to the extent this was about
4    admissibility, I think you ought to address that directly by
5    stipulation
6         MR. COWAN:  I don't expect any major barriers
7    there.
8         MR. HOWARD:  Thank you, your Honor
9         THE COURT:  All right.  Thank you.  I guess I will
10   ask both of you to prepare an order
11        MR. COWAN:  Okay.
12        THE COURT:  I guess your motion --
13        MR. HOWARD:  Why don't we prepare it and send it to
14   them, your Honor?
15        MR. COWAN:  That's fine.  Thank you, your Honor
16
17        (Whereupon, further proceedings in the
18        above matter were adjourned.)
19
20                    --oo--
21
22
23
24
25

CERTIFICATE OF REPORTER

I, DEBRA L. PAS, Official Reporter for the United

States Court, Northern District of California, hereby certify

that the foregoing proceedings in C 07-1658 PJH (EDL), ORACLE

CORPORATION versus SAP AG, et al were reported by me, a

certified shorthand reporter, and were thereafter transcribed

under my direction into typewriting, that the foregoing is a

full, complete and true record of said proceedings as bound

by me at the time of filing

    The validity of the reporter's certification of said

transcript may be void upon disassembly and/or removal

from the court file

           /s/ Debra L. Pas

    Debra L. Pas, CSR 11916, CRR, RMR, RPR

    Wednesday, August 5, 2009