Oracle Corporation et al v. SAP AG et al

Doc. 433 Att. 9

# EXHIBIT J

Dockets.Justia.com

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

United States District Court,
C.D. California.

HARPER HOUSE, INC., Plaintiff,
v.
THOMAS NELSON, INC., Time Marker, Inc., National Media Group, R.M. Marketing, Inc., et al., Defendants.
**No. CV 85-4225-PAR.**

Aug. 28, 1987.

MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

**\*1** This is an action for copyright infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, brought by plaintiff Harper House, Inc. against defendants Thomas Nelson Publishers, Time Maker, Inc., National Media Group, and R.M. Marketing.

The suit went to trial and on May 29, 1987, the jury returned a verdict in favor of plaintiff Harper House on both causes of action. For infringement of plaintiff's copyrights, the jury awarded damages of $483,592 against defendant Thomas Nelson and $1,390,.340 against the remaining defendants (the "Pennsylvania Defendants"). The jury also found that the profits of Thomas Nelson attributable to the infringement were $1,074,541 and that the profits of the Pennsylvania Defendants were $3,089,334. On the unfair competition claim, the jury awarded actual damages of $60,307 against Thomas Nelson and $1,800,000 against the Pennsylvania Defendants. In total, the jury found defendants liable for $7,898,114.

Defendants now join in bringing a motion for new trial and judgment notwithstanding the verdict pursuant to Federal Rules of Civil Procedure 59 and 50(b), respectively. Plaintiff opposes both motions and brings a motion for entry of judgment to recover attorney's fees, enhanced damages for unfair competition, prejudgment interest, and an injunction.

A. JUDGMENT NOTWITHSTANDING THE VERDICT

The standards for granting a motion for judgment notwithstanding the verdict are the same as those governing the granting of a directed verdict. *Hallmark Industry v. Reynolds Metal Co.,* 489 F.2d 8 (9th Cir. 1973), *cert. denied,* 417 U.S. 932, 94 S. Ct. 2643, 41 L. Ed. 2d 235 (1974). The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. 9 Wright & Miller, *Federal Practice & Procedure, § 2524*; *State of Washington v. United States,* 214 F.2d 33, 40-41 (9th Cir. 1954). Thus, a motion for J.N.O.V. may only be granted when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Id.; Los Angeles Memorial Coliseum Comm'n v. NFL,* 726 F.2d 1381 (9th Cir. 1984); *Forro Precision, Inc. v. International Business Machines Corp.,* 673 F.2d 1045 (9th Cir. 1982). The Court is not free in such a situation to weigh the evidence or to pass on the credibility of the witnesses, *Cockrum v. Whitney,* 479 F.2d 84 (9th Cir. 1973), or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made, *Galloway v. United States,* 319 u.s. 372, 63 S. Ct. 1077, 87 L.Ed. 1458 (1943); *Schnee v. Southern Pacific Co.,* 186 F.2d 745 (9th Cir. 1951), and give that party the benefit of all reason-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

able inferences from the evidence. *McCollum v. Smith,* 339 F.2d 348 (9th Cir. 1964 ). Simply stated, the standard is "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering th weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Mavnard,* 427 F.2d 1, 4 (2nd Cir. 1970); *see also Gordon Mailloux Enterprises, Inc. v. Firemen's Ins. Co. of Newark, N.J.,* 366 F.2d 740, 741 (9th Cir. 1966)(reversing district court's entering of j.n.o.v. where consideration of the proof favorable to nonmovant revealed "substantial evidence" to support the jury's determination).

**\*2** Defendants' motion is based on four grounds. First, defendant argues that there was no evidence adduced at trial of actual damages suffered by plaintiff from defendants' copyright infringement. Second, defendants argue that the jury's award of damages as measured by a "value of use" or license fee impermissibly resulted in a double counting of a part of the damages award. Third, defendants argue that the evidence was insufficient to support a jury finding that each of the elements of the unfair competition claim was satisfied. Finally, defendants argue that plaintiff's organizers are not copyrightable.

1. *Damages*

Under the Copyright Act, a plaintiff may recover actual damages for infringement. 17 U.S.C. 111(b). The primary measure of recovery of actual damages is based upon the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement. 3 M. Nimmer *Nimmer on Copyright* § 14.02 at 14-6 (1986). The Ninth Circuit has stated:

> In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative.... Although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may.

*Frank Music Corp. v. Mero-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 513 (9th Cir. 1985).

Plaintiff presented several witnesses at trial who testified to damages caused by defendants' alleged copyright infringement. Both Haldane King and Susan Lange testified that defendants' Time Maker organizer, with its lower price, reduced demand for the higher priced, albeit arguably higher quality, Harper House organizers. Boyd Willat, one of the founders of Harper House, also testified to damages.

Defendants suggest that the Time Maker could not have caused damage to Harper House and, through publicity, actually may have increased Harper House sales. Defendants presented this argument to the jury but it apparently was rejected. It cannot be said that the jury could not reasonably find damages in this case. "It is the jury, not the judge, who 'weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusions as to the facts.... Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' " *Cockrum,* 479 F.2d at 86 (quoting *Tennant v. Peoria & P. U. Ry.,* 321 U.S. 29, 35, 64 S. Ct. 409, 412, 88 L. Ed. 520 (1944)). Viewing the evidence in the light most favorable to plaintiff, the jury verdict on damages must stand.

2. *Double-Counting Damages in the Value of Use*

Defendants argue that the "value of use" award determined by the jury as a surrogate for copyright damages should have been deducted from defendants' profits as a direct expense constructively incurred by defendants. It is undisputed that direct costs of production are deductible from gross rev-

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

enues in determining defendants' profits under section 504(b) of the Copyright Act and the Court appropriately instructed the jury to deduct such expenses from its determination of profits. (Jury Instruction No. 16). However, the jury carefully was instructed at all stages of computing damage awards not to count sums already taken into account in previous calculations. For example, Instruction No. 14 warned the jury not to count as recoverable profits any sum already included in computing plaintiff's actual *damages.* The instructions also instructed the jury that actual *damages* could be computed by determining what a reasonable value of use of plaintiff's organizers might have been. (Instruction No. 15.) Thus, under the instructions, it was permissible for the defendants to argue to the jury that a reasonable use damage award should be deducted as a direct expense from the jury's calculation of profits.

**\*3** It is undisputed that defendants never raised this argument before the jury. Instead, defendants now claim that the Court erred in failing to instruct the jury that a reasonable use damage award should be deducted from profits in accordance with Instruction No. 16. Given the background of how jury instructions were drafted in this case, defendants' argument is untenable. The Court presided over lengthy, detailed proceedings with both parties in order to draft instructions which would set forth all parties' theory of the case and be mutually agreeable to the extent possible. At no time during these proceedings did defendants suggest the instruction they now urge.[FN1] Thus, defendants are barred under Rule 51 of the Federal Rules of Civil Procedure from raising a new argument that could of and should have been raised before the jury retired. *See also Dimmit Agri Industries, Inc. v. CPC Intern. Inc.,* 679 F.2d 516, 521 (5th Cir. 1982) (motion for j.n.o.v., as a renewal of a motion for directed verdict, cannot assert new grounds); *Moran v. Raymond Corp.,* 484 F.2d 1008, 1014 (7th Cir. 1973) (same).

In addition to their failure to raise an objection, defendants cannot show conclusively that a double-recovery resulted from the jury's award of a reasonable use royalty. The entire concept of a reasonable use "royalty fee" is fictional. No such fee actually was paid in this case; thus, defendants request a deduction for an expense which they never incurred. While it is true that defendants are now forced to bear that expense, it is not clear that if defendants had paid a reasonable use royalty to plaintiff in the first place, they would have incurred the same direct costs they were allowed already to deduct from profits. That is to say, it is likely that some costs that have already been deducted, for example, design and creation expenditures, would have been foregone if defendants had actually obtained a license to use plaintiff's materials. Moreover, there is nothing inconsistent with the concept of a reasonable use award and the Copyright Act's proscription against double recovery of profits and damages measuring the same harm to a plaintiff. A reasonable use "royalty" attempts to measure the harm to plaintiff from the reduced value of his copyright occasioned by an infringing defendant's use. It is not used as a proxy for measuring a defendant's ill-gotten profits. *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1174 (1977). "[The value of use] amounts to a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work. That is a different measure than the determination of defendants' actual profits from the infringement." *Id.* (*see also* discussion on propriety of value of use instruction, *infra.*).

3. *Unfair Competition*

Plaintiff's evidence in proving the elements of unfair competition under § 43(a) of the Lanham Act was sufficient to allow the jury verdict to stand. Defendants argue that none of the three elements needed to establish unfair competition (*see* Jury Instruction No. 18) was proven. The first element is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

defendants' making false or deceptive advertisements and representations to customers. The jury was presented with evidence that showed significant differences between the television advertised organizer and the one that was ultimately delivered. Defendants argue that such comparisons between a prototype model and a production model should not be allowed, as a matter of law, to establish unfair competition. Defendants provide no persuasive reasoning or authority in support of this proposition. The mere fact that plaintiff's theory of the case is unusual should not prevent recovery if the requisite elements of unfair competition are established. Cf. *Follet v. New American Library, Inc.,* 497 F. Supp. 304 (S.D. N.Y. 1980) (comparing draft version of book with final published version to determine if plaintiff had authored book and had been misrepresented as the author).

**\*4** Defendants' advertising did not indicate that the model displayed was only a mock-up or prototype. Moreover, even assuming that defendants may not have intended to create false misrepresentations, a relatively innocent state of mind does not necessarily exculpate a defendant from liability under the Lanham Act. It is not necessary to show that any false description or representation is willful or intentional; rather, all that is required is that representations or descriptions either be false or tend falsely to describe or represent the goods or services in question. Thus, liability is not restricted solely to descriptions which are literally false, but extends to instances where defendants create false impressions. *Walker Davis Publications, Inc. v. Penton/IPC, Inc.,* 509 F. Supp. 430, 435 (E.D. Pa. 1981). Therefore, construing the evidence in a light most favorable to plaintiff, a reasonable jury could have found the requisite element of falsity satisfied in this case. *John H. Harland Co. v. Clark Checks, Inc.,* 711 F.2d 966 (11th Cir. 1983); *American Home Products v. Johnson & Johnson,* 577 F.2d 160 (2nd Cir. 1978) (it is within the trier of fact's province to weigh evidence, including opinion research and testimony of market research experts, to determine whether advertisements were false and misleading).

Similarly, plaintiff's showing of confusion, the second element of an unfair competition claim, was sufficient to justify a jury verdict in this case. The Court's instructions required the jury to find that defendants' "false and deceptive representations and advertisements have actually deceived a significant portion of the consuming public." (Instruction No. 18; *see also* Instruction No. 19.) The Court further instructed:

> However, if you find that Defendants' representations in advertising were intentionally false and that Defendants spent a large amount of money in an effort to deceive consumers, you should presume that customers were in fact deceived by Defendants' actions...

(Instruction No. 20.) The jury returned a verdict finding that unfair competition had been proven against all defendants. (Special Verdict Question No. 16.) No special interrogatory specifically asked the jury to decide the basis of that finding; i.e., whether the representations in advertising were *intentionally* false.

Plaintiff's evidence clearly established that a large amount of money, $1,800,000, had been spent by defendants on advertising. The testimony of Robert Wolgemuth and Mary Wheeler could reasonably have led the jury to believe that this large sum of money was spent to deceive consumers into believing that they were getting a different product from the one being advertised. Defendants argue that Ms. Wheeler's testimony tended to show that while there may have been an intention to advertise a different product for the sake of expediency, there was no intention to *deceive* the consumer public. Expediency may have been a motivating factor in defendants' action; however, there was also adequate evidence in the record, in particular, Ms. Wheeler's

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

testimony as to mr. Scott's reasoning for rejecting proposed changes in the Time Maker, to support a jury inference that intent to deceive the public was also a motivating factor.[FN2] *See U-Haul International, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986) ("It is not easy to establish actual consumer deception through direct evidence. The expenditure by a competitor of substantial funds in an effort to deceive and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived").

**\*5** Finally, the jury could reasonably find that plaintiff was injured, which is the final element in an unfair competition claim. The Court instructed the jury that one measure could be the amount of money spent by defendants on advertising. (Instruction No. 21; *U-Haul,* 793 F.2d at 1041; *Maier Brewing Co. v. Fleishmann Distilling Corp.,* 390 F.2d 117, 121-124 (9th Cir. 1968). In *U-Haul,* the Ninth Circuit affirmed the district court's damage award in an unfair competition claim against a national moving company. The district court calculated damages by looking at direct evidence of lost profits and indirect evidence of defendant's advertising and plaintiff's corrective advertising expenditures. *U-Haul,* 789 F.2d at 1037; 601 F. Supp. 1140, 1146 (D. Ariz. 1984) ("I would arrive at the same damage award by allowing [plaintiff] U-Haul its advertising costs ... and awarding it the [money] expended by [defendant] Jartran to carry out the offending campaign"). The *U-Haul* court's award of advertising expenditures was contemplated as a surrogate measure of damages; thus, this Court's instruction in the instant case permitting damages to be measured by advertising expenditures is not inconsistent with *U-Haul.* To the extent such advertising expenses could be confused with a measure of defendants' profits, the Court's instruction made clear that the jury's computation of profits should not include profits "caused by unfair competition and already included in computing plaintiff's actual damages in this case." (Jury Instruction No. 21.)

4. *Copyrightability*

Both parties stipulated before the jury retired to have the Court determine on a motion for directed verdict the issue of copyrightability of plaintiff's organizers. The Court found and now reaffirms its decision that plaintiff's organizers are copyrightable.

It is undisputed that plaintiff applied for and received four certificates of registration from the Copyright Office for its Day Runner and Running Mate organizers, each of which placed these organizers within the category of "literary works" protected by the Copyright Act, 17 U.S.C. 102(a). Under 15 U.S.C. § 440(c), plaintiff's registrations create a presumption of copyrightability for its organizers. *Baldwin Cooke v. Keith Clarke, Inc.,* 383 F. Supp. 650, 655 (N.D. Ill. 1974), *affirmed,* 505 F.2d 1250 (7th Cir. 1974) (per curiam). This presumption shifts the burden of proof to the defendants to demonstrate why plaintiff's organizers are not copyrightable. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1019 (9th Cir. 1985).

Defendants' first argument against copyrightability is that plaintiff's organizer is an uncopyrightable system. Defendants' other arguments appear to be somewhat inconsistent. On the one hand, defendants argue that the Harper House organizers lack originality and amount to no more than a mere trivial variation of pre-existing organizers. *See, e.g., United States v. Hamilton,* 583 F.2d 448, 451 (9th Cir. 1978) ("[t]rivial elements of compilation and arrangement ... are not copyrightable since they fall below the threshold of originality"). On the other hand, defendants argue that no infringement occurred in this case precisely because plaintiff's organizers are comparatively unique; that is, when compared to defendant's Time Maker organizer, the Harper House products are designed for a completely different purpose and consumer market. None of these arguments is persuasive.

**\*6** It is well-established that a system is uncopy-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page7 of 20

Page 6

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

rightable. *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879) (book explaining accounting system not copyrightable); 17 U.S.C. 102(b). Plaintiff's organizers, according to testimony presented by plaintiff, in part prescribe a system for "organizing" the relevant events and aspects of an individual's day-to-day life. (*See* testimony of Boyd Willat.) Plaintiff has not, however, sought copyright protection for the idea of daily planning and organization; rather, plaintiff's copyrights encompass unique expressions of that idea, which in the case of Harper House, were shown to be developed through a great deal of original thought and work. *See Baldwin Cooke,* 338 F. Supp. at 654 (holding that an "executive planner" is copyrightable and stating: "These were more than mere compilations ... we agree with plaintiff's arguments that the arrangement, the plan and the manner in which they were put together by the author, does constitute originality."); *see also Cash Dividend Check Corporation v. Davis,* 247 F.2d 458 (9th Cir. 1957) (finding a check copyrightable); *Edwin K. William and Co. v. Edwin K. Williams and Co.-East,* 542 F.2d 1053, 1061 (9th Cir. 1976) (finding that account books containing several pages of instructions on use of forms and advice on successful management of service stations conveyed information and were entitled to copyright protection); *Toro Co. v. R. & R. Products Co.,* 787 F.2d 1208, 1212 (8th Cir. 1986) (finding parts numbering system copyrightable).

Plaintiff's work, consisting of a unique selection, format, and combination of forms and information, clearly represents an original work of authorship. *See* 17 U.S.C. 103(a) (defining a compilation as a work "formed by the collection and assembly of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as whole constitutes an original work of authorship"). *See also Broderbund Software, Inc. V. Unison World, Inc.,* Case No. C-85-3457 (N.D. Cal. Filed Oct. 3, 1986) (finding software on the audiovisual displays of a computer program copyrightable and stating: "the expressions of those ideas [underlying the menu screens, input formats, and sequencing of screens] are very different. The menu screens and sequence of screens in the two programs are different. The entire structure and organization of the user interfaces are different.... The Court rejects defendant's contention that the idea and expression of "Print Shop" are indistinguishable from one another"); *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222 (3rd Cir. 1986) (copyright protection of computer programs may extend beyond programs' literal code to their structure, sequence, and organization).

Moreover, testimony from Felice and Boyd Willat supports a finding that plaintiff's organizers embody more than a trivial variation of pre-existing organizers. A substantial amount of time and energy as well as thought went into producing new products designed to provide greater utility to the relevant consumer public. Such effort alone, expended to create tangible works of authorship, is within the scope of copyright protection. *Del Madera Properties v. Rhodes and Gardner Inc.,* Nos. 85-2581; 85-2687, slip op. at 9 (9th Cir. June 23, 1987).

**\*7** Finally, there was ample evidence in the record to support the jury's finding of infringement. Defendants argue that, as a matter of law, the extrinsic test for substantial similarity was not met in this case since plaintiff's organizers appeal to the "upscale business women" market while the Time Maker was designed for housewives. Although the question may be decided as a matter of law, substantial similarity is, at bottom, an issue of fact to be decided by the trier of fact. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir. 1977). Even assuming that an extrinsic test is appropriate in this case, *see Krofft* at 1165, here there was significant evidence of actual copying, a fact which could reasonably support the jury's finding of infringement.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page8 of 20

Page 7

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

B. MOTION FOR NEW TRIAL

Rule 59 of the Federal Rules of Civil Procedure provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States... " Rule 59 gives the trial judge the power to prevent what she considers to be a miscarriage of justice; thus, she may order a new trial if she deems it in the interest of justice to do so. *Moist Cold Refrigerator Co. v. Lou Johnson Co.,* 249 F.2d 246 (9th Cir. 1957). The court should not grant a new trial unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. 11 Wright & Miller, *Federal Practice & Procedure* § 2803. The burden of showing harmful error rests on the party seeking the new trial. *Id.* A new trial may not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result. *Id.* at § 2805.

Defendants raise several grounds for their motion, each of which will be examined in turn.

1. *The Possibility of a Quotient Verdict*

Defendants argue that the jury failed to follow the jury instructions given by the Court by rendering a quotient verdict. A "quotient verdict" is one resulting from agreement whereby each juror writes down an amount of damages to which he thinks the party is entitled and such amounts are then added together and divided by the number of jurors. *Blacks Law Dictionary* (citing *Index Drilling Co. v. Williams,* 242 Miss. 775, 137 So. 2d 525, 530).

According to defendants, the jury's calculation of defendants' profits bears no relationship to any figures presented in evidence. The Court's instruction on profits calculation spelled out a specific procedure:

To prove Defendants' profits, Plaintiff need only prove the dollar amount of sales of Time Maker organizers made by the Defendants. Defendants admit that Thomas Nelson has sold $3,223,613 of Time Maker organizers and that Time Maker, Inc. has sold $9,268,930.

From that figure, Defendants may deduct a variety of directs costs of the Time Maker project, namely manufacturing costs, advertising costs, freight-in-costs, travel and entertainment costs, shrinkage costs, royalty expense, commission expense, and free sample expense. However, Defendants bear the burden of proving the amount of these costs and no deduction may be allowed for any of these costs unless proven by a preponderance of the evidence.

**\*8** (Jury Instruction No. 16.)

The jury's verdict determined a profit of $1,074,541 for Thomas Nelson and $3,089,334 for Time Maker. According to defendants, "[n]o possible combination of permitted deductions which were introduced into evidence could yield such a finding if Instruction No. 16 has been followed. However, such findings can be reconciled on the basis of a quotient formula determination. Each finding is perilously close to exactly one-third of the gross sales of each defendant." (Defendants' Memo. in Support, p. 5.)

Even assuming that defendants are correct and the jury determined profits by dividing each defendant's gross sales figures by 1/3 , the mere use of such a formula is not prohibited. *Freight Terminals, Inc. v. Ryder System, Inc.,* 461 F.2d 1046, 1053 (5th Cir. 1972). If the jury reached its decision on the basis of reason and deliberation over the evidence, its result would be fair and proper. *Cf. Bunker v. City of Glendale,* 108 Cal. Rptr. 565 (1980) (formula considered by jury did not result in an impermissible quotient verdict); *Monroe v. Lashus,* 338 P.2d 13, 170 C.A.2d 1; *Glass v. Gulf Oil Corp.,*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page9 of 20   Page 8

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

96 Cal. Rptr. 902 (no quotient verdict).

There is no evidence in this case that the jurors "prearranged" to abide by a random result. *See Freight Terminals,* 461 F.2d at 1053. *See also Luck v. Balt. & Ohio R. Co.,* 510 F.2d 663 (D.C. Cir. 1974) (mere speculation will not suffice to prove that the jury reached its verdict improperly). As a result, defendants have not met their burden of proof and the jury's determination of profits shall stand.

2. *The Jury's Damage Award*

Defendants argue that the jury's damage award exceeded the amount that can be justified by the evidence and point to several jury instructions given by the Court which they argue contributed to the excessive verdict. A new trial may be granted where it appears that excessive damages were determined under the influence of passion or prejudice or where there is insufficient evidence to justify the verdict. Local Rule 15.1(f) (g). Anew trial may also be justified on the basis of errors in the admission or rejection of evidence or the giving or refusal of jury instructions. 11 Wright & Miller at s 2805; *see also Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 61 S. Ct. 189, 85 L.Ed. 147 (1940).

Defendants specifically dispute the Court's instruction to the jury on deduction of overhead expenses from its calculation of profits. The Court instructed the jury that it could not deduct such overhead items of expense "if you find that any Defendants' infringement is willful ..." (Jury Instruction No. 16.) The Court later defined "willful act" as one done "when a defendant intends to do it and knows the nature of the act, when it is done deliberately." (Jury Instruction No. 12.) Defendants argue that the Court's instruction on willfulness constituted error because it led the jury to believe, at most, that only copying had to be willful when under the Copyright Act, willfulness must refer to "deliberate infringement." Defendants never objected at trial to the Court's instruction on willfulness, Fed. R. Civ. P. 51; moreover, Instruction No. 16 plainly states that the jury is to look for willful *infringement* which, when read with Instruction No. 12, call for the jury to establish intentional, *deliberate infringement.*

**\*9** Defendants further argue that it was error to instruct the jury to ignore overhead deductions upon a finding of willfulness. According to defendants, deductions for overhead expense have been allowed despite findings of willful infringement. *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45 (2nd Cir. 1939) ("deliberate plagiarism"); *Schubert & Associates v. Solo-Serve Corp.,* 220 U.S.P.Q. (W.D. Tex. 1983). No objection was made to the Court's instruction on overhead; indeed, the instruction was proposed as a "joint instruction." Given the lengthy proceedings conducted before the Court to determine jury instructions, defendants cannot argue that they were denied an opportunity to object or that any such objection was "distinctly" made. F. R. Civ. P. 51. Finally, it cannot be said that the instruction resulted in plain error. *See Sammons v. Colonial Press,* 126 F.2d 341, 348 (1st Cir. 1942); *Frank Music v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 515 (9th Cir. 1985) (finding that overhead may be deducted from gross revenues "at least where the infringement was not willful"); *Kamar Intern. Inc. v. Russ Berrie & Co.,* 752 F.2d 1327 (9th Cir. 1984) (allowing overhead deductions because the infringement was not deliberate or willful in the sense of "moral blame," although it may have been willful for computation of statutory damages). *Cf Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99 (2d Cir. 1951) (income tax payable on gross revenues not deductible where infringement was conscious and deliberate); *see also* 3 M. Nimmer at § 14.04 [B].

Defendants further object to the Court's instruction on "value of use." (Instruction No. 15; supra.) The value of us instruction is justified in cases where the infringement did not produce a gain to the in-

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

fringer and where losses to the copyright owner are difficult to quantify. Under such circumstances and employing traditional measures of actual damages, a copyright owner would have no recovery even though a defendant's infringement was willful and deliberate. 3 M. Nimmer at § 14.02. To avoid this harsh result, the Seventh Circuit in *Deltak, Inc. v. Advanced Systems, Inc., 767 F.2d 357 (7th Cir. 1985)* defined actual damages to include the "value of use" to the infringer. The value of use concept of measuring damages has been accepted by the Ninth Circuit. *Krofft,* 562 F.2d at 1174 (affirming jury instruction allowing jury, in arriving at a damage award, to take into consideration the reasonable value of defendants' use of plaintiffs' work); *see also Frank Music,* 772 F.2d at 512. The court's analysis in *Frank Music* explains the "value of use" theory as using "market value" of plaintiff's work as a way of measuring the damage to plaintiff from having its work used by others:

> "Actual damages" are the extent which the market value of a copyrighted work has been injured or destroyed by an infringement. In this circuit we have stated the test of market value as "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work."

**\*10** *Id.* at 512 (quoting *Krofft* at 1174). *Cf. Van Der Salm Bulb Farms, Inc. v. Hapaq Llovd, AG, 818 F.2d 699 (9th Cir. 1987)* (holding that market value of destroyed flower bulbs was sufficient to show actual damage under Carriage of Goods by Sea Act).

Finally, plaintiff presented sufficient evidence of wha a reasonable royalty or value of use might have been in this case. Both Boyd Willat and Haldane King suggested that a license fee of 15% of defendants' wholesale sales would have been a fair price. The jury had an opportunity to consider this testimony and any contrary evidence or inferences defendants were able to provide. The mere fact that both Willat and King are affiliated with Harper House did not impugn the worth of their testimony; indeed, Willat was well-qualified to testify to the value he attached to the use of his copyrights. *See Fitzgerald Publishing v. Baylor Publishing, 807 F.2d 1110 (2nd 1986)* ("the copyright owner is competent to testify as to the extent to which the copyright value has been injured or destroyed by defendant's actions") (*citing Runae v. Lee, 441 F.2d 579, 582 (9th Cir. 1971)*).

Defendants also assign as error the Court's refusal to give one of defendants' proposed instructions on the apportionment of profits. That instruction provided:

*Damages May Be Awarded As To Infringing Part of Defendants' Organizers*

> If you decide that Plaintiff is entitled to damages which relate to Defendants' profits and also determine that any of the Defendants has made any profit on the Time-Maker project, then the damages assessed need not be measured by the entire profit earned by defendants on the Time-Maker, but may be in an amount commensurate with the value of the infringing material in relation to the Time-Maker organizer as a whole.

(Defendants' Proposed Jury Instruction No. 16.)

The Court's instruction as given encompassed the essence of defendants' proposed instruction. Instruction No. 14 instructed the jury to award only damages "suffered as a result of the infringement" and only profits "that plaintiff has proven are attributable to the infringing use of its work." Defendants concede that such statements are correct statements of the law. (*See* Defendants' Memo in Support, p. 18); 17 U.S.C 504(b). The instructions made clear to the jury that defendants should be liable only for damages caused by their infringing conduct; no further instruction was required. Defendants had the opportunity to argue to the jury the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

point that not all of defendants' profits could be related to acts of infringement and it was up to the jury to weigh this evidence.

Finally, it cannot be said that the jury's award of damages was excessive for copyright infringement. The jury dutifully completed the special verdict form and did so in a fashion that indicated that each element of damages was carefully considered. There is no basis for concluding that the jury was influenced by passion or prejudice.

3. *Unfair Competition*

Defendants' arguments against the jury's verdict on unfair competition were raised as grounds for granting judgment notwithstanding the verdict. Those arguments are repeated as grounds for granting a new trial. For the reasons stated above, the Court does not find defendants' arguments persuasive and the jury's verdict on unfair competition must stand.

4. *Copyright Infringement Instructions*

***11** Defendants argue that several of the instructions related to copyright infringement erroneously allowed the jury to compare defendants' and plaintiff's organizers as a whole rather than focus the jury's attention solely on a comparison of the protectible aspects of plaintiff's organizers. Specifically, defendants point to instruction No. 9, which instructed the jury to consider the "total impact and feel" of the organizers; instruction No. 7, which, instead of focusing attention on the "protectible elements" of plaintiff's organizers, instructed the jury to consider if defendants had "actually copied a substantial amount of plaintiff's work"; and instruction 4, which informed the jury that the protectible elements of the plaintiff's organizers are "the format, selection, coordination, arrangement and method of statement ..." According to defendants, it was error for the Court to include the last phrase, "method of statement," in the instruction.

Each of the above-mentioned phrases/instructions is supported by authority. Testimony from plaintiff's witnesses revealed that the Harper House organizers contained some information and that the organizers had a method for conveying this information. Moreover, defendants never specifically objected to the inclusion of the phrase "method of statement" in Instruction No. 4; thus, they are barred from now raising an objection to this phrase. Fed. R. Civ. P. 51.

Defendants claim that they objected to many of the Court's given instructions by proposing their own instructions which the Court never used. In the case of Instruction No. 4, defendants presumably would argue that their proposed instruction No. 7 is applicable. That proposed instruction stated: "Copyright in a compilation does not extend to the work as a whole, but rather only covers those elements contained in the compilation which are original with the copyright claimant." (Defendants' Proposed Jury Instruction, filed March 24, 1987, p. 7.) While it is true that a request for an instruction may in substance be an objection to the charge as given, *Washington State Bowling Proprietors Ass'n v. Pacific Lanes, Inc.,* 356 F.2d 371, 378 (9th Cir. 1966), if the court has failed to give the requested instruction, an objection should be made and it should state grounds rather than merely object generally to the refusal to give the instruction. 9 Wright & Miller at s 2554. "Rule 51 is not top-heavy with technical excuses for overlooking trial errors. No particular formality is required so long as it is clear that the trial judge was informed of possible errors and was given an opportunity to correct them." *Id.* In the case of the phrase "method of statement," no objection of any sort was offered.

Defendants' claim that the Court failed to focus the jury's attention on the protectible elements of the plaintiff's organizers is unpersuasive. Instruction No. 4 specifically excluded from the jury's consid-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

eration "the idea of a binder." Moreover, the Court made clear that it was not the *idea* of an organizer that the jury should examine, but rather the expression of that idea as embodied in its "format, selection, coordination, arrangement, and method of statement." (Instruction No. 4.) Instruction No. 6 further clarified the jury's role. It informed the jury that infringement could be shown through direct proof of actual copying or through indirect proof, including a showing of " 'substantial similarity' between *protectible expression* in the Plaintiff's and Defendants' organizers." (emphasis added). Again, no objection was raised to this language. Rule 51.

**\*12** Defendants' objection to the language of "total impact and effect" is likewise unsubstantiated. *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106 (9th Cir. 1970); *Krofft,* 562 F.2d 1157; *Malkin v. Dubinsky,* 146 F. Supp. 111, 114 (S.D. N.Y. 1956) (jury could find that the "over-all impact and effect" had been substantially appropriated). It was not error for the Court to instruct the jury to consider the total impact and effect of plaintiff's work in light of the previous instructions which instructed the jury to compare the organizers for their similarity of protectible expression. (*See* Instructions 6, 8). Similarly, the language in Instruction No. 9 instructs the jury to examine each work as a whole by focusing not on isolated elements, but rather on "combinations of elements and *expressions* therein." (emphasis added.) Thus, the instructions did not prejudice the jury by focusing its attention on non-protectible elements of plaintiff's organizers.

Defendants' remaining arguments concerning copyrightability were raised in reference to the motion for j.n.o.v. and the Court again finds them unpersuasive in regards to a motion for new trial.

C. MOTION FOR ENTRY OF JUDGMENT

Plaintiff requests the Court to enter judgment in favor of plaintiff and award attorneys fees pursuant to 17 U.S.C. § 505; 15 U.S.C. § 1117(a); Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927; and F. R. Civ. P. 37(c). Plaintiff further requests the Court to treble damages on the unfair competition claim pursuant to 15 U.S.C. 1117(a). Plaintiff also requests an award of pre-judgment interest and its costs under F. R. Civ. P. 54(d). Finally, plaintiff moves for inclusion in the judgment of a permanent injunction restraining defendants from further acts of unfair competition and copyright infringement.

1. *Double Recovery of Unfair Competition Damages*

In its verdict, the jury indicated that all the damages it found resulted from unfair competition had already been included in its award of damages for copyright infringement. Although plaintiff disputes this fact, it is irrefutably evident from the verdict form, which was agreed to by plaintiff, that no unique harm resulted to plaintiff from unfair competition. Question 17 on the Special Verdict form required the jury to establish damages it found plaintiff had suffered from unfair competition. The jury returned an award of $60,307 against Thomas Nelson and $1,800,000 against the Pennsylvania Defendants. it is uncontroverted that those sums correlate exactly with the advertising expenses defendants incurred in promoting the Time Maker. Of course, the jury expressly was permitted to award damages on the basis of the evidence of defendants' advertising expenses in accordance with Jury Instruction No. 21. However, the jury indicated that all damages for unfair competition overlapped its damage award for copyright. The jury's answer to Special Verdict Interrogatory No. 17 (c) stated:

> (c) Of these amounts [of damages for unfair competition], how much is not already included within the copyright damages, if any, set forth in your answer to Question 15 [damages for copyright]:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

*\*13 Thomas Nelson Time Maker, Inc. R.M. Marketing and National Media Group*

$ 0 $ 0

Plaintiff disputes this finding and offers a different interpretation of the jury's verdict. According to plaintiff, since the jury could not find any profits attributable to unfair competition, its award of "actual damages," as measured by advertising expenses, was a unique award which the jury did not take into account when establishing damages for copyright. This argument turns the jury verdict on its head and can only be supported by claiming that the jury did not understand the verdict form and instructions. No evidence supports such a conclusion. Thus, the only reasonable conclusion the Court can reach is that the jury found the damages from unfair competition were completely subsumed within damages from copyright infringement. *Cf. Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 566 F. Supp. 1558 (D. Del. 1983) (trial court must attempt to harmonize jury's answers to interrogatories if it is possible to do so under fair reading of them); *Bates v. Jean,* 745 F.2d 1146 (7th Cir. 1984).

Plaintiff further argues that the possibility of "double-recovery" lacks legal significance since it is possible to recover twice for the same damage if two separate wrongs led to the harm. Plaintiff's most persuasive authority for this proposition is *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562 (11th Cir. 1986). In *Ramada Inns,* the Eleventh Circuit Court of Appeals was faced with a similar "double-recovery" issue in an appeal from the district court's award of damages for defendant's breach of a franchise agreement and trademark infringement. Although finding that the district court's award of treble damages for trademark infringement compensated plaintiff for the same harm encompassed in the court's award of liquidated damages, such double-recovery was nevertheless permissible. The court agreed with plaintiff that the liquidated damages and trademark infringement related to "an entirely separate set of wrongs." *Id.* at 1566. The court further stated:

> By committing these two indiscretions, the partners became liable for two damage awards. Since damages are not always given to precise calculation, a possibility always exists that some overlap will occur when separate awards are made to compensate for separate wrongs.

*Id.*

Although *Ramada Inns* provides support for plaintiff's position in this case, this Court is not bound by *Ramada* 's allowance of a possible double recovery. The instant action is distinguishable in material ways. First, the jury verdict in this case plainly found that all damages from unfair competition are incorporated in the copyright damage award. No such explicit finding was made by the district court in *Ramada Inns.* The fact that the district court did not make such a finding is important since "the district court's damage assessment is entitled to deference" in an action for violation of the Lanham Act. *Id.* at 1564. Thus, employing a standard of review which gives " 'great latitude to the trial judge in awarding damages,' " *Id.* at 1565 (quoting *Drake v. E.I. DuPont de Nemours and Co,* 432 F.2d 276, 279 (5th Cir. 1970), the appellate court in *Ramada Inns* was hesitant to correct the findings of the lower court. In the instant action there is an explicit finding of fact by the trier of fact that all of plaintiff's damages for unfair competition are compensated for in its award of copyright damages.

\*14 The Court is convinced, notwithstanding *Ramada Inns,* that a double recovery of damages would be inappropriate in this case. *See generally, Kissell Company v. Gressley,* 591 F.2d 47, 51 (9th Cir. 1979) ("[d]ouble recovery is disfavored"); *U-Haul Intern., Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1037 (1986) (allowing only one recovery for dam-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page14 of 20

Page 13

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

ages resulting from two claims of unfair competition and stating "the district court reached a $40 million verdict with respect to each claim. Only one recovery of full compensation is permissible, however"). *See also CPG Products Corp. v. Pegasus Luggage, Inc.,* 776 F.2d 1007, 1033 n. 14 (Fed. Cir. 1985) (refusing to allow double recovery on claims for patent infringement and unfair competition and stating that the plaintiff "is not entitled to dual damages resulting from the same act"); *Westman v. Sears, Roebuck & Co.,* 577 F.2d 873 (5th Cir. 1978) (disallowing double recovery of damages under state laws for wrongful death and stating: "When an element of damage of these wrongful death acts is duplicated or overlaps, plaintiff can recover an award for that damage element only once. The law does not sanction double recoveries"); *Kassman v. American University,* 546 F.2d 1029, 1033-34 (D.C. Cir. 1976) ("[w]here there has been only one injury, the law confirms only one recovery, irrespective of the multiplicity of parties whom or theories which the plaintiff pursues").

Even if a double recovery were legally permissible, the court would exercise its discretion under the Lanham Act to prevent it in this case. The Lanham Act provides:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may *in its discretion* enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute *compensation* and not a penalty.

15 U.S.C. § 1117(a) (emphasis added). Any award of damages under this section is subject to principles of equity and the court's discretion based upon a wide range of considerations. *Maier iBrewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117 (9th Cir. 1968); *Otis Clapp & Son v. Filmore Vitamin Co.,* 754 F.2d 738 (7th Cir. 1985). Since the jury has found that plaintiff can be compensated adequately by the damages awarded under the copyright claim, no recovery is justified on the claim for unfair compensation. *Cf. Ramada Inns v. Apple,* 482 F. .Supp. 753 (D. S.C. 1980) (granting injunction and finding no need to grant other relief in absence of showing of defendants' profits); *Vuitton Et Fils, S.A. v. Crown Handbags,* 492 F.2d 1071 (S.D. N.Y. 1979) (damages award serve to compensate plaintiff for damages to its reputation or other harms while profits award is designed to deter willful infringement). *See also* Gilson, *Trademark Practice & Protection,* § 8.08[2] ("courts have not awarded both damages based upon plaintiff's lost sales and defendant's profits attributable to sales under the infringing mark.... Recovery of both would be an inappropriate double recovery, inasmuch as recovery of the infringer's profits in all likelihood will compensate for the sales the plaintiff has lost").

2. *Treble Damages Under the Lanham Act*

**\*15** The Court's finding that no damages are recoverable under the unfair competition claim obviates the need to resolve the issue of enhanced or treble damages. However, it is undisputed that if damages were recoverable, the Court would have discretion, under 15 U.S.C. § 1117(a), to enter judgment "according to the circumstances of the case, for any sum above the amount found as actual damages, not to exceed three times such amount." 15 U.S.C. 1117(a). One court has stated that the issue of treble damages extends beyond mere discretion: "federal courts are *expected,* and not merely authorized to 'enter judgment for three times such profits or damages, whichever is greater, together with reasonable attorney's fees.' " *Fendi S.A.S. DiPaola v. Cosmetic World, Ltd.,* 642 F. Supp. 1143, 1147 (S.D. N.Y. 1986) (action involving counterfeit trademarks)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

(emphasis added). *But see Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir. 1983) (there is no automatic right to enhanced damages for Lanham Act violations).

The more conventional view is that the decision to enhance damages is vested in the discretion of the court. *Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 77 (5th Cir. 1979). There appear to be no firm guidelines, but generally the more aggravated, willful and fraudulent the defendant's conduct, the greater the judicial propensity to enhance damage awards. *See* Gilson at § 8.08[1]; *Deering, Milliken & Co. v. Gilbert,* 269 F.2d 191 (2nd Cir. 1959) (awarding enhanced damages for "deliberate and fraudulent infringement"); *H.A. Friend & Co. v. Friend & Co.,* 276 F. Supp. 707 (C.D. Cal. 1969) (conduct "fraudulent" and "willful and calculated to trade upon the plaintiff's good will"); *Burndy Corp. v. Teledyne Industries,* 584 F. Supp. 656, 669 (D. Conn. 1984) (multiple damages are reserved for cases "where the defendant's wrong is willful"); *Isaly v. Kraft, Inc.,* 619 F. Supp. 983, 998 (M.D. Fla. 1985) (award is discretionary and may be based on a finding of willfulness).

Plaintiff urges, as a general consideration, that defendants' actions in litigating this case, specifically "the obstructive nature of the defense," (Pltf's Memo in Support at p. 24), be considered a factor in establishing good cause for trebling damages. Although the Court is empowered to consider a broad range of factors "according to the circumstance of the case," 15 U.S.C. 1117(a), one court has discouraged the consideration of the litigation-related conduct of the parties. *Boston Professional Hockey,* 597 F.2d at 77. I would agree with the Fifth Circuit that litigation-related conduct generally should not be considered in evaluating the damage award. A court has other adequate means by which to sanction bad faith pre-trial conduct and, as the parties in this case are well aware, the Court has not hesitated to resort to such means when and where they were called for. Of course, an exception to this general rule might apply in situations of extreme bad faith conduct, as where records are destroyed and Court orders are willfully disobeyed. *Id.* The record in this case contains such conduct. However, the Court already has imposed heavy sanctions for that conduct and will not rely on it solely as a basis for increasing the damage award. As the Fifth Circuit has said:

*16 We would be reluctant to approve increased damages intended solely as punishment for conduct unrelated to the trademark infringement or to the actual damages caused by it.

*Id.*

On the other hand, it seems equally clear that to justify a judgment increasing damages, the Court need not find that the defendants deliberately and *knowingly* violated the statute. Defendants argue that such a knowledge component is required to establish willfulness. There is no authority for this proposition.[FN3] Defendants need not *know* that they are violating the law; rather, it would appear that the Court at most need find that defendants have deliberately and willfully disregarded plaintiff's rights. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001 (9th Cir. 1985) (awarding punitive damages for unfair competition under California law). However, knowledge may be considered an aggravating factor, as where defendant suspect they are violating the law, seek a legal opinion, and the either disregard that opinion or deliberately obtain incompetent advice to establish reliance thereon. *See Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1390 (Fed. Cir. 1983) (where potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether he is infringing).

The record would not appear to support a sufficient finding of willfulness in this case to justify enhan-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH  Document433-10  Filed08/26/09  Page16 of 20

Page 15

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

cing damages for unfair competition. The Court arrives at a different outcome in the case of copyright infringement, where the Court feels constrained to defer to the judgment of the jury. (See Special 'Verdict). However, the jury made no finding of willfulness with regards to unfair competition. Moreover, in the case of copyright infringement, there was substantial evidence that defendants recklessly disregarded legal advice they had solicited which cautioned defendants of the potential liability they faced in copying plaintiff's organizers. (Exhibit 77). Such advice created a duty to investigate fully the possibility of infringement but it did not warn defendants against advertising one model and producing another. Given the circumstances of this case, the Court finds that enhancement of damages under 15 U.S.C. 1117(a) is not justified. *Caesars World Inc. v. Venus Lounge, Inc.,* 520 F.2d 269, 273-75 (3d Cir. 1975); *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 607-8 (3d Cir. 1978).

3. *Attorney's Fees*

a) *Attorney's Fees Under the Copyright Act*

The Court may award plaintiff's attorneys' fees as a prevailing party under the Copyright Act. 17 U.S.C. § 505. The award of such fees is discretionary with the court but is appropriate where a defendant has willfully or deliberately infringed a copyright. *Transgo,* 768 F.2d at 1026-27.

Defendants argue that section 412 of the Copyright Act bars an award of attorneys' fees. Section 412 provides:

In any action under this title ... no award of statutory damages or of attorneys' fees, as provided by Sections 504 and 505, shall be made for ... any infringement of copyright commenced after first publications of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

**\*17** 17 U.S.C. § 412.

According to defendants, the section applies to bar an award of attorneys' fees in this case because the alleged acts of infringement commenced after plaintiff's organizers were published but before plaintiff sought copyright protection. It is undisputed that the effective date of copyright registration for plaintiff's organizers was June 14, 1985. Plaintiff concedes that defendants' infringement commenced pre-registration but argues that defendants' post-registration acts (i.e., after June 14, 1985) constitute separate acts of infringement upon which an attorneys' fee award may be based. Plaintiff points to the special verdict on which the jury found twelve (12) separate acts of infringement. (See Special Verdict, Interrogatories Nos. 2-13.)

Two courts have examined similar variations on plaintiff's proposition and both have rejected it. *See Whelan Associates, Inc. v. Jaslow Dental Lab.,* 609 F. Supp. 1325, 1331 (E.D. Pa. 1985); *Johnson v. University of Virginia,* 606 F. supp. 321 (D. Va. 1985). In *Whelan,* plaintiff sought attorneys' fees under S 505 of the Copyright Act for defendants' willful and intentional infringement of plaintiff's software computer programs for dental laboratory record keeping. The court found that the infringement commenced when one defendant began advertising an aggressively marketing copies of the plaintiff's "Dentalab" program in August 1983. Plaintiff filed its first copyright claims on August 16, 1983. Finding that there was "at least one act of infringement by defendants prior to the copyright being registered," *Id.* at 1331, the court declined to award attorneys' fees to plaintiff even though separate acts of infringement had occurred subsequent to the date of registration:

Case law as to what constitutes the "commencement" of infringement is quite sparse. Cases seem to recognize that a simple discrete act of infringement occurring before copyright registration bars attorney's fees under 17 U.S.C. § 412.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page17 of 20

Page 16

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

*Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.,* 542 F. Supp. 252, 267-68 (D. Neb. 1982); *Streeter v. Rolfe,* 491 F. Supp. 416, 421-22 (W.D. La. 1980). Unquestionably, one of the purposes of the present copyright act was to encourage registration. [citation omitted.] The award of statutory attorney's fees replaces the common law rule against allowance of fees. Interpreting "Commencement of infringement" as the time when the first act of infringement in a series of on-going discrete infringements occurs (i.e., the first infringing sale in a series of on-going separate sales) would best promote the early registration of a copyright. it would strongly encourage prompt registration.

*Id.* at 1331.

The other case that has rejected plaintiff's proposition is *Johnson v. University of Virginia,* 606 F. Supp. 321 (D. Va. 1985). In *Johnson,* plaintiff alleged that defendants, the University of Virginia and two of its employees, infringed on plaintiff's copyrights for certain photographs taken at University of Virginia sporting events. The photographs had not been registered until March 12, 1984 while defendants I unauthorized first use occurred no later than January 1984. The Court rejected plaintiff's argument that his claim for statutory damages and attorneys' fees was not barred by S 412 due to the occurrence of infringing acts subsequent to the date of registration:

*18 Plaintiff seeks to escape the bar of section 412 by arguing that a copyright infringement "commenced" within the meaning of S 412 each time defendants used any of plaintiff's photographs. The court believes that ascribing such a meaning to the term "Commenced" would totally emasculate § 412.

*Johnson* at 325.

The analysis and holdings in *Johnson* and *Whelan* are controlling in the instant action. Plaintiff has provided no authority involving attorneys' fees to support its position that § 412 does not preclude an award of fees for separate acts of infringement subsequent to the date of copyright registration. The only cases cited by plaintiff concern the issue of statutory damages and, specifically, the determination of the number of times a defendant has infringed upon a plaintiff's copyright. *See, e.g., Iowa State University Research Foundation, Inc. v. American Broadcasting Co., Inc.,* 475 F. Supp. 78, 82 (S.D. N.Y. 1979) (considering the proximity in time of repeated infringements and the differences in nature and kind of acts constituting infringement to determine whether successive infringements should be treated as one continuing infringement or as multiple infringements).

Determining the number of times a defendant has infringed, although relevant to determining the correct amount of statutory damages to award, is not controlling on the issue of awarding attorneys' fees. The *Whelan* and *Johnson* courts explicitly examined situations involving multiple infringements and found that no attorney's fees could be awarded when an act of infringement had commenced prior to the date of registration. In *Whelan,* the court reached this conclusion despite plaintiff's argument that the "prior" act of infringement concerned only an "experimental" version of the defendants' copy which defendants later improved and sold subsequent to the date of plaintiff's registration. A similar effort to distinguish infringing acts is made by plaintiff in the instant action in regard to the first and second version of the Timemaker organizer; however, because the Court agrees with the *Whelan* court that a strict reading of § 412 better serves the policy of encouraging prompt registration, and because the Court also agrees with the *Johnson* court that the liberal interpretation of section 412 urged by plaintiff would emasculate the meaning of § 412, the Court finds that an award of attorneys' fees in this case is precluded by 17 U.S.C. § 412.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document433-10   Filed08/26/09   Page18 of 20

Page 17

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

b) *Attorney's Fees for Unfair Competition*

15 U.S.C. Section 1117(a) provides that the court in "exceptional cases" may award reasonable attorneys' fees to the prevailing party in a Lanham Act action. In the Ninth Circuit, a trademark case is exceptional for the purposes of an award of attorneys' fees where infringement is malicious, fraudulent, deliberate, or willful. *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1384 (9th Cir. 1984). The decision to award attorneys' fees is left to the discretion of the court. *Id.; Transgo,* 768 F.2d at 1026.

**\*19** The Court has already indicated its disinclination to find willfulness in regards to the unfair competition claim; as a result, it declines to award attorneys' fees on that aspect of the case.

c) *Attorney's Fees Under 28 U.S.C. § 1927 and Federal Rules 11 and 37(c)*

Plaintiff asserts three additional grounds for an award of attorneys' fees. Plaintiff argues that an award of attorneys' fees is justified under 28 U.S.C. § 1927 on the grounds that defendants caused the proceedings to be multiplied "unreasonably and vexatiously." Plaintiff also argues that fees may be awarded under Federal Rules of Civil Procedure 11 and 37(c) as a result of defendants' obstinacy in discovery and failure to admit the existence of the partnership between the defendants pursuant to plaintiff's request to admit served under Rule 36.

The Court, in its discretion, declines to base an award of attorneys' fees on any of these grounds. Where it has been appropriate, the Court already has sanctioned defendants for their pre-trial conduct. Duplicating those sanctions now, including an award of attorneys' fees, would serve neither to punish defendants nor to deter further the conduct that led to the imposition of sanctions. *See United States v. Blodgett,* 709 F.2d 608, 610-11 (9th Cir. 1983); *United States v. Associated Convalescent Enterprises,* 766 F.2d 1342, 1347-48 (9th Cir. 1985).*

4. *Pre-Judgment Interest*

Although conceding that there is no relevant statutory authorization, plaintiff requests the Court to award pre-judgment interest dating back to June 1985, when defendants first began infringing plaintiff's copyrights. Pre-judgment interest may not be awarded under the Copyright Act. *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.,* 542 F. Supp. 252, 264 (D. Neb. 1982). However, assuming that pre-judgment interest is available under the federal common-law, such interest should be awarded only in cases where there is bad faith or other exceptional circumstances. *Whelan,* 609 F. Supp. at 1328 (*citing Duplate Corp. v. Triplex Safety Glass Co.,* 298 U.S. 448, 56 S. Ct. 792, 80 L. Ed. 1274 (1936) and *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 103 S. Ct. 2058, 76 L. Ed. 2d 211 (1983)). Although there is some evidence of bad faith in this case, the Court is not convinced that circumstances are so exceptional as to justify an award of pre-judgment interest. *Whelan; see also Baldwin Cooke v. Keith Clark, Inc.,* 420 F. Supp. 404, 409 (N.D. Ill. 1976); *Blackman v. Hustler Magazine,* 620 F. Supp. 792, 802 (D. D.C. 1985); *Davis v. E.I. du Pont de Nemours & Co.,* 257 F. Supp. 729 (S.D. N.Y. 1966).

5. *Plaintiff's Costs*

Plaintiff has also moved for an award of its cost under F. R. Civ. P. 54(d). That rule provides, in pertinent part, that "Costs shall be allowed as of course to the prevailing party unless the court otherwise directs.n It is undisputed between the parties that plaintiff, as the prevailing party in this action, is entitled to recover its reasonable costs determined pursuant to Local Rule 16.

6. *Joint and Several Liability*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

**\*20** Defendants argue that they should not be held jointly and severally liable for each other's acts and that the Court has separate damage awards available from the special verdict to impose separate and several liability against Thomas Nelson and the Pennsylvania defendants. Plaintiff disagrees and claims that defendants have stipulated to joint and several liability. *See* Ex. 6, attached to Plaintiff's Memo. in Reply. That stipulation, filed June 10, 1987, clearly contemplates defendants' joint and several liability as joint venturers. Sub-paragraph (3) states: "Defendants agree that they are each fully responsible and liable for the acts of the others as partners as well as joint venturers." Moreover, the facts in this case warrant a finding that the defendants "worked closely together" such that they are jointly and severally liable for plaintiff's actual damages and their own profits. *Frank Music, 772 F.2d at 519*. *See also Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 472 (2d Cir. 1985)* (quoting 3 M. Nimmer, S 12.04 [C](3) at 12-54.3).

7. *The Injunction*

Plaintiff has presented new evidence indicating a continuing threat of infringing sales from a television marketed product known as the "Time Maker II". (*see* Griswold Decl.) Defendants do not oppose plaintiff's request for an injunction against their continued infringement and unfair competition; hence, the request for an injunction is granted.

ACCORDINGLY, IT IS SO ORDERED, ADJUDGED AND DECREED that plaintiff shall take judgment against the defendants, and each of them, jointly and severally, and further that:

1. Plaintiff's copyright registrations Nos. 1-577-201, 1-577-202, 1-577-203, 1-577-204 are good and valid in law. Defendants, and each of them, have infringed these copyrights by reproducing, by preparing derivative works, by distributing copies, by transferring ownership, and by displaying the copyrighted works.

2. Defendants, and each of them, have competed unfairly with Plaintiff in violation of 15 U.S.C. § 1125(a) by making misrepresentations concerning their Time Maker product.

3. Defendants, and each of them, and each of their officers, agents, servants, and employees, and all those persons in active concert or participation with them are hereby forever enjoined from:

a) Infringing Plaintiff's copyrights represented by its registration Nos. 1-577-201, 1-577-202, 1-577-203, and 1-577-204;

b) Infringing Plaintiff's copyrights in any of its publications, including but not limited to all editions of Plaintiff's Day Runner and Running Mate organizers;

c) Reproducing, displaying, selling, offering for sale or otherwise transferring ownership of any of Defendants' Time Maker organizers prior to the expirations of Plaintiff's above copyrights;

d) Misrepresenting in advertisements or sales presentations the content, description or appearance of any of Defendants' goods that are competitive with those of Plaintiff, including any organizers or similar products; and

e) Competing unfairly with Plaintiff by misrepresentations or through false or misleading statements about its products.

**\*21** 4. Plaintiff is awarded and shall recover against Defendants, and each of them, the sum of $6,037,807 (as the sum awarded by the jury for copyright infringement);

5. Plaintiff shall recover against Defendants, and each of them, its costs in an amount to be determined pursuant to Local Rule 16, and pursuant thereto, the Clerk shall enter judgment in favor of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897
**(Cite as: 1987 WL 30581 (C.D.Cal.))**

Plaintiff.

DATED: August 27, 1987

FN1. Defendants filed a "Proposed Special Verdict" on May 28, 1987, after the final special verdict form had been given to the jury, as a means of recording their final objections to the form and content of the special verdict form. Defendants' proposed special verdict contains no interrogatory regarding deduction of a reasonable use fee from profits. See *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324 (10th Cir. 984) (Where special interrogatories asked jury to determine which parties prevailed on each of shopping center buyers' claims of negligence, breach of contract and fraud and also asked jury to determine amount of damages sustained by buyers but court omitted allocation of total amount of damages among the various claims and defendant developer approved special interrogatory form and did not, request submission of allocation issue, the developer had waived right to jury trial on allocation issue and trial court did not commit clear error in implicitly finding that all damages were attributable to non-negligence claims, therefore, warranting no reduction by amount of buyers' contributory negligence).

FN2. Plaintiff's direct evidence of actual confusion was insubstantial and thus plaintiff must rely on the presumption of confusion articulated in Instruction No. 21. Although testimony on actual confusion was provided by Haldane King and Susan Lange, their testimony did not relate to confusion created by defendants' use of the advertisements as related to the public perception of the second version of the Time Maker ultimately received by customers.

Thus, it would have been unreasonable for the jury to conclude, on the basis of that evidence, that a significant portion of the consuming public was deceived in a manner compatible with plaintiff's theory of the case.

FN3. Defendants cite one Ninth Circuit authority, *U-Haul,* for the proposition that knowledge of violation of the Act is required to show willfulness. The *U-Haul* court, however, never examined the issue of enhanced damages and certainly did not establish a principle that knowledge of violation of the Lanham Act is required to recover enhanced damages.

C.D.Cal.,1987.
Harper House, Inc. v. Thomas Nelson, Inc.
Not Reported in F.Supp., 1987 WL 30581 (C.D.Cal.), 1988 Copr.L.Dec. P 26,203, 8 Fed.R.Serv.3d 1089, 4 U.S.P.Q.2d 1897

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.