Dockets.Justia.com

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:      (415) 626-3939
   Facsimile:      (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA  94303
   Telephone:      (650) 739-3939
10 Facsimile:      (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:      (832) 239-3939
15 Facsimile:      (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19              UNITED STATES DISTRICT COURT

20             NORTHERN DISTRICT OF CALIFORNIA

21                SAN FRANCISCO DIVISION

22 ORACLE USA, INC., et al.,              Case No. 07-CV-1658 PJH (EDL)

23              Plaintiffs,              **DEFENDANTS' NOTICE OF MOTION
                                         AND MOTION FOR PARTIAL
24      v.                               SUMMARY JUDGMENT REGARDING
                                         PLAINTIFFS' HYPOTHETICAL
25 SAP AG, et al.,                       LICENSE DAMAGES CLAIM**

26              Defendants.              ***[REDACTED VERSION]***

27                                       Date: October 28, 2009; Time: 9:00 a.m.
                                         Courtroom: 3, 17th Floor
28                                       Judge: Hon. Phyllis J. Hamilton

                                         DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                                         PARTIAL SUMMARY JUDGMENT
                                         Case No. 07-CV-1658 PJH (EDL)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. UNDISPUTED FACTS ........................................................................................ 2

    A. SAP and Oracle Are Direct, Vigorous Competitors ............................................ 2

    B. Plaintiffs Never Would Have Granted a Copyright License to Defendants Covering the Allegedly Infringing Activities ........................................................ 3

    C. The Parties Would Not Have Even Negotiated for a Copyright License Covering the Allegedly Infringing Activities ........................................................ 4

III. ARGUMENT .................................................................................................... 6

    A. Legal Standard for Partial Summary Judgment under Rule 56 .............................. 6

    B. A "Hypothetical License" Is Not a Permitted Form of Damages for Copyright Infringement When the Parties Never Would Have Agreed to a License ................................................................................................................ 7

        1. The Copyright Act Sets Specific Remedies ................................................. 7

        2. Causation Principles Apply to Actual Damages and Infringer's Profits ......................................................................................................... 8

        3. Actual Damages May Be Measured Using a "Hypothetical License" Only If, but for Infringement, the Parties Would Have Agreed to a License ......................................................................................................... 9

        4. A "Hypothetical License" Is Different from a "Reasonable Royalty." ...................................................................................................... 10

    C. Plaintiffs Are Not Entitled to Actual Damages in the Form of a Hypothetical License Because the Parties Never Would Have Agreed to Such a License .................................................................................................... 11

        1. Oracle Executives' Undisputed Testimony Establishes that Plaintiffs Would Not Have Granted a License .......................................... 11

        2. Direct Competition between the Parties and the Lack of Any Equivalent Licenses Further Proves that Plaintiffs Would Not Have Granted a License ............................................................................. 12

        3. Even Had Plaintiffs Been Willing to Negotiate, the Parties' Differing Bases for a License Establish that They Would Not Have Reached an Agreement .......................................................................... 13

        4. Case Law Supports a Finding that Plaintiffs Are Not Entitled to a "Hypothetical License" Form of Actual Damages .................................... 14

    D. Plaintiffs Are Not Entitled to a Hypothetical License Based on "Saved Acquisition Costs" Because this Theory Is Inconsistent with the Copyright Act and Ninth Circuit Precedent ......................................................................... 16

IV. CONCLUSION ................................................................................................ 20

- i -

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*American Employers Group, Inc. v. Employment Dev. Dep't,*
154 Cal. App. 4th 836 (2007) ................................................................ 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .......................................................................... 6

*Baker v. Urban Outfitters, Inc.,*
254 F. Supp. 2d 346 (S.D.N.Y. 2003) ....................................................... 10

*Banner Entm't, Inc. v. Superior Court,*
62 Cal. App. 4th 348 (1998) ................................................................ 13

*Big Seven Music Corp. v. Lennon,*
554, F.2d 504 (2d Cir. 1977) ................................................................ 9

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.,*
887 F.2d 399 (2d Cir. 1989) ......................................................... *passim*

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................ 6, 7

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
36 F.3d 1147 (1st Cir. 1994) ................................................................ 8

*Deltak, Inc. v. Advanced Sys., Inc.,*
767 F.2d 357 (7th Cir. 1985) ................................................... 17, 18, 19

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.,*
25 F. Supp. 2d 395 (S.D.N.Y. 1998) ...................................... 9, 10, 12, 19

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
772 F.2d 505 (9th Cir. 1985) ........................................................ *passim*

*Gasaway v. Northwestern Mut. Life Ins. Co.,*
26 F.3d 957 (9th Cir. 1994) ................................................................ 6

*Harper & Row v. Nation Enters.,*
471 U.S. 539 (1985) ..................................................................... 8, 19

*House, Inc. v. Thomas Nelson, Inc.,*
No. CV 85-4225-PAR, 1987 WL 30581 (C.D. Cal. Aug. 28, 1987) ...................... 19

*Jarvis v. K2, Inc.,*
486 F.3d 526 (9th Cir. 2007) ........................................................ *passim*

*Mackie v. Rieser,*
296 F.3d 909 (9th Cir. 2002) ........................................................ *passim*

*McRoberts Software, Inc. v. Media 100, Inc.,*
329 F.3d 557 (7th Cir. 2002) ..................................................... 12, 14, 15

*Minks v. Polaris Indus., Inc.,*
546 F.3d 1364 (Fed. Cir. 2008) ............................................................ 10

*Multitherm Corp. v. Fuhr,* Civ. A.
No. 89-6151, 1991 WL 146233 (E.D. Pa. July 24, 1991) .............................. 19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
210 F.3d 1099 (9th Cir. 2000) .............................................................. 6

## TABLE OF AUTHORITIES
### (continued)

Page

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)..................................................................................................... *passim*

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004)..................................................................................................... *passim*

*Quinn v. City of Detroit*,
  23 F. Supp. 2d 741 (E.D. Mich. 1998) ...................................................................................... 19

*Roeslin v. District of Columbia*,
  921 F. Supp. 793 (D.D.C. 1995) ............................................................................................... 20

*Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*,
  367 F.2d 236 (9th Cir. 1966)..................................................................................................... 8

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977)...................................................................................... 7, 17, 18, 19

*Steven Greenberg Photography v. Matt Garrett's of Brockton, Inc.*,
  816 F. Supp. 46 (D. Mass. 1992) .............................................................................................. 19

*Thornton v. J Jargon Co.*,
  580 F. Supp. 2d 1261 (M.D. Fla. 2008) .................................................................................... 19

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
  439 F. Supp. 2d 758 (E.D. Mich. 2006)..................................................................................... 19

*Weddington Prods., Inc. v. Flick*,
  60 Cal. App. 4th 793 (1998) ..................................................................................................... 13

### Statutes

17 U.S.C. § 101 ............................................................................................................................ 18

17 U.S.C. § 105 ............................................................................................................................ 1

17 U.S.C. § 412 ........................................................................................................................ 8, 18

17 U.S.C. § 504 ............................................................................................................... 7, 8, 11, 17

35 U.S.C. § 284 ........................................................................................................................... 10

Federal Rule of Civil Procedure 56.......................................................................................... 1, 6

### Other Authorities

Notes of Committee on Judiciary, H.R. No. 94-1476 ................................................................. 18

- iii -

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE THAT on October 28, 2009, at 9:00 a.m., or as soon thereafter

3    as this matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San

4    Francisco, California, in Courtroom 3 before the Honorable Phyllis J. Hamilton, Defendants SAP

5    AG, SAP America, Inc. (together, "SAP") and TomorrowNow, Inc. ("TN," and with SAP,

6    "Defendants") will bring their motion for partial summary judgment, pursuant to 17 U.S.C. § 105,

7    Federal Rule of Civil Procedure 56 and Civil Local Rules 7-2, 7-4, 7-5 and 56-1, against Plaintiffs

8    Oracle USA, Inc., Oracle International Corporation and Oracle EMEA Limited ("Plaintiffs" or

9    "Oracle") seeking a ruling that Plaintiffs are not entitled to pursue actual damages in the form of a

10   hypothetical license.  This motion is based on the Memorandum of Points and Authorities herein,

11   along with the Declaration of Tharan Gregory Lanier and exhibits attached thereto.

12

## RELIEF REQUESTED

13   Defendants respectfully request that the Court grant partial summary judgment that

14   Plaintiffs are not entitled to pursue actual damages in the form of a hypothetical license.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16   **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

17   Plaintiffs' central claim is copyright infringement, for which they seek damages under

18   three different theories.  First, Plaintiffs allege that TN, which was never profitable under SAP's

19   ownership, cost them at least ███████████ in lost profits.  Second, Plaintiffs allege that they are

20   entitled to disgorgement of at least ███████████ in SAP's profits somehow attributable to TN's

21   activities.  Third, Plaintiffs seek actual damages in the form of a hypothetical license.  Plaintiffs

22   have not yet quantified this claim, but base it on a hypothetical negotiation between Oracle and

23   SAP, at a time immediately after the PeopleSoft and TN acquisitions, and estimate that it is in the

24   ███████████  *See* Declaration of Tharan Gregory Lanier in Support of Defendants' Motion for

25   Summary Judgment ("Lanier Decl.") ¶ 8, Ex. H (May 22, 2009 Plaintiffs' Supplemental and

26   Amended Disclosures ("Supplemental Disclosures")) at 46-47.  Although each damages claim is

27   overstated, only the hypothetical license claim is the subject of this motion.

28   A hypothetical license is a form of actual damages that measures the harm to a plaintiff

1   who, absent infringement, would have received a licensing fee from the defendant for use of the

2   plaintiff's copyrighted work.  In contrast to the "reasonable royalty" of patent law, this form of

3   damages is available in copyright cases only if a plaintiff proves that, but for the infringement, the

4   parties would have agreed to a license.  In other words, as with all forms of compensatory

5   damages, Plaintiffs have the burden to prove causation.  Where the undisputed facts demonstrate

6   that, but for infringement, the parties never would have agreed to a license for the copyrighted

7   material at issue, a hypothetical license is not available as a matter of law.

8        The undisputed evidence here shows that these parties never would have agreed to a

9   license covering the allegedly infringing activity, in any amount.  Plaintiffs contend that such a

10   license would have been akin to giving away their alleged intellectual property.  They have never

11   granted such a license to anyone, and would not have granted it to SAP.  Oracle and SAP are

12   fierce competitors in applications software, the field in which TN provided maintenance service.

13   Oracle founder and CEO Larry Ellison testified that

14

15                                                          Oracle's executives

16   explained that                                                          , which Mr.

17   Ellison acknowledged would have been                    to SAP.

18        Plaintiffs cannot meet their burden of proving that, but for the alleged infringement, the

19   parties would have agreed to a license permitting the full range of conduct that Plaintiffs now

20   contend caused them significant harm.  Plaintiffs cannot escape this causation requirement by

21   characterizing the hypothetical license as based on a "saved acquisition costs" theory because this

22   theory is inconsistent with the Copyright Act and Ninth Circuit precedent.  Because there is no

23   genuine issue of material fact with respect to Plaintiffs' hypothetical license claim, summary

24   judgment should be granted.  Eliminating this impermissible claim now will promote efficient

25   case management and is essential to resolution of this case.

26   **II.   UNDISPUTED FACTS**

27        **A.   SAP and Oracle Are Direct, Vigorous Competitors.**

28        According to the complaint, when Oracle completed its 18-month PeopleSoft acquisition

SVI-71862                          - 2 -                DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                                                        PARTIAL SUMMARY JUDGMENT
                                                        Case No. 07-CV-1658 PJH (EDL)

1    in January 2005, it "emerge[d] as the second-largest provider of business software applications in

2    the world and the first to rival SAP AG in market share, size, and geographic and product scope."

3    D.I. 418 (¶ 62); *see also* Lanier Decl. ¶ 1, Ex. A (March 27, 2009 Safra Catz Deposition ("Catz

4    Depo.") at 158:13-159:6.  Oracle's PeopleSoft acquisition was directed at SAP.  *See* D.I. 418

5    (¶ 74); *see also* Lanier Decl. ¶ 1, Ex. A (Catz Depo.) at 158:13-159:6.  Mr. Ellison testified that

6    Oracle purchased PeopleSoft specifically to "expand our applications business," Lanier Decl. ¶ 3,

7    Ex. C (May 5, 2009 Larry Ellison Deposition ("Ellison Depo.")) at 58:6-10, and publicly declared

8    that, as a result of the acquisition, "we're going to give SAP a good run for their money in this

9    business." *Id.* ¶ 9, Ex. I (December 10, 2004 "This week in OpenWorld news" CNET News.com).

10          Oracle's top executives, including Mr. Ellison and co-Presidents Charles Phillips and

11   Safra Catz, believe that ███████████████████████████████████ *See id.* ¶¶

12   1-3, Ex. C (Ellison Depo.) at 114:16-24; Ex. B (April 17, 2009 Charles Phillips Deposition

13   ("Phillips Depo.")) at 96:15-16; Ex. A (Catz Depo.) at 19:10-25 (███████████████

14   ██████████████████).  Mr. Phillips has publicly described SAP as Oracle's "enemy."

15   *Id.* ¶ 2, Ex. B (Phillips Depo.) at 57:12-58:18.

16          SAP executives also acknowledge that Oracle is SAP's "main competitor" in applications

17   software.  *Id.* ¶¶ 5-6, Ex. E (September 25, 2008 Henning Kagermann Deposition ("Kagermann

18   Depo.")) at 167:25-168:7; Ex. F (October 2, 2008 Leo Apotheker Deposition ("Apotheker

19   Depo.")) at 58:10-23.  As one response to Oracle's over $10 billion PeopleSoft acquisition, SAP

20   purchased TN for $10 million. *See* D.I. 418 (¶ 75).  At that time, TN was a small software service

21   company, based in Bryan, Texas, that provided maintenance and support for PeopleSoft software,

22   and later, J.D. Edwards and Siebel software.  *See* D.I. 418 (¶¶ 67, 86).  TN had just achieved its

23   first profitable year, with a net income of approximately $52,600.  *See* Lanier Decl. ¶ 7, Ex. G.

24   **B.     Plaintiffs Never Would Have Granted a Copyright License to Defendants
             Covering the Allegedly Infringing Activities.**

25

26          In their recent Supplemental Disclosures, Plaintiffs described the hypothetical license they

27   are pursuing as one resulting from a negotiation between Oracle and SAP in January 2005,

28   following Oracle's PeopleSoft acquisition and SAP's TN acquisition. *See id.* ¶ 8, Ex. H

(Supplemental Disclosures) at 47.  In motion practice, Plaintiffs described the hypothetical license as one "reached between 'keen competitors' like Oracle and SAP" that "would [have] allow[ed] SAP's service subsidiary to use Oracle applications and service support intellectual property to aggressively compete against Oracle for applications customers and market share," and that would have had "nothing in common with any agreement Oracle has with any business Partner."  D.I. 253 at 14.  According to Plaintiffs, this license would have had to cover any "attempt[] to convert the customer to a competing software platform and . . . daily wholesale copying and cross-use of Oracle's application software and support materials."  D.I. 253 at 2; *see also* Lanier Decl. ¶¶ 1-2, Ex. A (Catz Depo.) at 10:20-11:7, 20:6-25:18; Ex. B (Phillips Depo.) at 118:8-120:18.  Mr. Ellison testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  *See* Lanier Decl. ¶ 3, Ex. C (Ellison Depo.) at 74:5-75:24.  Plaintiffs have never granted such a license to anyone.  *See* D.I. 256 (¶¶ 1, 3-4); D.I. 253 at 10.

In January 2005, had SAP or TN approached Oracle for a license to support TN's operations, Oracle would have said no.  Mr. Ellison, █████████████████████████████████████████████  Lanier Decl. ¶ 3, Ex. C (Ellison Depo.) at 74:5-11, 81:10-82:2.  As Ms. Catz explained █████████████████████████████████████████████████████████████  *See id.* ¶ 1, Ex. A (Catz Depo.) at 47:3-15.  According to Mr. Ellison, ███████████████████████████████████████████████████  *Id.* ¶ 3, Ex. C (Ellison Depo.) at 80:3-81:9; 83:18-84:6.  ██████████████████████████████████████████████████████  *See id.* ¶¶ 1, 3, Ex. A (Catz Depo.) at 26:24-27:15, 158:13-159:23; Ex. C (Ellison Depo.) at 81:6-9.

**C.**   **The Parties Would Not Have Even Negotiated for a Copyright License Covering the Allegedly Infringing Activities.**

Hasso Plattner, SAP's co-founder, confirmed that SAP would not have even considered

1    the type of license contemplated by Oracle executives.  When asked at deposition to contemplate

2    a hypothetical negotiation, Mr. Plattner's response made it clear that the parties never would have

3    made it to the negotiating table:

4         Q. . . . Let's say that the two sides are just sitting down to try and negotiate
          that license under those circumstances I just described.  Would you [as
5         Oracle] then be taking into account how much you've paid?

6         MR. LANIER: Same objections.

7         THE WITNESS: Then I can do what I want.

8         MR. HOWARD: Q. And would you then --

9         A. And --

10        Q. Would you then take into account how much you've paid if you're
          Oracle for the PeopleSoft business?
11
          A. Then we don't have to sit together.
12

13   *Id.* ¶ 4, Ex. D (June 2, 2009 Hasso Plattner Deposition ("Plattner Depo.")) at 68:10-22.

14        Mr. Plattner explained that even had the parties reached the negotiating table, he would

15   have expected the asking price for a hypothetical license to be "lower than the price" that the

16   licensor normally charges a customer for maintenance, "because somebody else is doing the job"

17   for the licensor and therefore "it's an indirect charge."  *Id.* ¶ 4, Ex. D (Plattner Depo.) at 56:21-

18   58:2.  He also stated that he would *not* have expected the asking price to be based on the amount

19   of "money that [the licensor] spent to develop the software in the first place."  *Id.* ¶ 4, Ex. D

20   (Plattner Depo.) at 57:23-58:2.  He also would not have expected the asking price to have been

21   based on "the purchase price that Oracle [had] just paid to PeopleSoft in setting that license fee"

22   for the same reason that "the history of the development of cost [sic] at GM is not relevant to the

23   price GM can charge for a car now."  *Id.* ¶ 4, Ex. D (Plattner Depo.) at 65:19-66:21.

24        Oracle executives' testimony underscores Plaintiffs' fundamentally different approach to

25   the hypothetical negotiation.  In answering questions concerning the basis for and value of a

26   hypothetical license, Mr. Phillips testified that ███████████████████████████

27   ███████████████████████████████████████████████████

28   *Id.* ¶ 2, Ex. B (Phillips Depo.) at 118:8-120:6.  Ms. Catz testified that ████████████

1  ████████████████████████████████████████████████████████████████

2  ████ *See id.* ¶ 1, Ex. A (Catz Depo.) at 46:7-47:15, 158:13-159:23.  Mr. Ellison testified

3  that █████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████

6  ███████████████████.  *See id.* ¶ 3, Ex. C (Ellison Depo.) at 76:16-78:11, 80:3-81:9.  He

7  acknowledged, however, that ████████████████████████████████████

8  ████████████████████  *Id.* ¶ 3, Ex. C (Ellison Depo.) at 74:2-75:9.

9  **III.    ARGUMENT**

10     **A.    Legal Standard for Partial Summary Judgment under Rule 56.**

11         A defendant may move for summary judgment "on all or part of [a] claim," including

12  damages.  Fed. R. Civ. P. 56(b), 56(d)(1).  Summary judgment is proper when the pleadings,

13  discovery and affidavits show that there is "no genuine issue as to any material fact and that the

14  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those

15  that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

16  (1986).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to

17  find for the nonmoving party.  *See id.*  The moving party bears the initial burden of identifying

18  those portions of the pleadings, discovery and affidavits that demonstrate the absence of a

19  genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Nissan*

20  *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  On an issue for which

21  the opposing party will have the burden of proof at trial, the moving party may "either produce

22  evidence negating an essential element of the nonmoving party's claim or defense or show that

23  the nonmoving party does not have enough evidence of an essential element to carry its ultimate

24  burden of persuasion at trial."  *Nissan Fire & Marine*, 210 F.3d at 1102.

25         Once the moving party meets its burden, the nonmoving party must "set out specific facts

26  showing [that there is] a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Mere allegations or

27  denials do not defeat a moving party's allegations.  *See id.*; *Gasaway v. Northwestern Mut. Life*

28  *Ins. Co.*, 26 F.3d 957, 959-60 (9th Cir. 1994).  If the nonmoving party fails to produce enough

1   evidence to show a genuine issue of material fact, "the moving party is entitled to judgment as a

2   matter of law." *Celotex*, 477 U.S. at 322-23.

3       **B.    A "Hypothetical License" Is Not a Permitted Form of Damages for Copyright**
        **Infringement When the Parties Never Would Have Agreed to a License.**

4

5           A plaintiff may not pursue a "hypothetical license" as a form of actual damages for

6   copyright infringement when the undisputed evidence demonstrates that, but for infringement, the

7   parties never would have entered into a license for the copyrighted material at issue.

8               1.    The Copyright Act Sets Specific Remedies.

9           The Copyright Act sets the exclusive remedies available for infringement: actual damages

10  and infringer's profits, as well as alternative statutory damages. *See* 17 U.S.C. § 504(b)-(c).

11  Actual damages are generally calculated "by the loss in the fair market value of the copyright,"

12  which is determined by either "the profits lost due to the infringement" or "the value of the use of

13  the copyrighted work to the infringer." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708

14  (9th Cir. 2004); *see also Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *Frank Music Corp.*

15  *v. Metro-Goldwyn-Mayer, Inc.*, 772 F.3d 505, 512 (9th Cir. 1985). The Ninth Circuit has held

16  that, "in situations where the infringer could have bargained with the copyright owner to purchase

17  the right to use the work," the "value of use" form of actual damages may be determined by using

18  a hypothetical license. *Jarvis v. K2, Inc.*, 486 F.3d 526, 533 (9th Cir. 2007); *see also Polar Bear*,

19  384 F.3d at 709 (stating that "a hypothetical lost license fee" may be awarded, "provided the

20  amount is not based on undue speculation") (citation omitted). The amount of the hypothetical

21  license—a separate consideration—is measured by "what a willing buyer would have been

22  reasonably required to pay to a willing seller for plaintiffs' work." *Jarvis*, 486 F.3d at 533

23  (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174

24  (9th Cir. 1977)); *see also Mackie*, 296 F.3d at 917; *Frank Music*, 772 F.2d at 512.

25          In addition to actual damages, a copyright owner is also entitled to recover "any profits of

26  the infringer that are attributable to the infringement and are not taken into account in computing

27  the actual damages." 17 U.S.C. § 504(b). To establish the infringer's profits, "the copyright

28  owner is required to present proof only of the infringer's gross revenue, and the infringer is

SVI-71862                                    - 7 -          DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                                                            PARTIAL SUMMARY JUDGMENT
                                                            Case No. 07-CV-1658 PJH (EDL)

1    required to prove his or her deductible expenses and the elements of profit attributable to factors

2    other than the copyrighted work." *Id.*

3           These two forms of damages have different justifications and serve different purposes.

4    Actual damages, analyzed from the copyright owner's point of view, are awarded to compensate

5    for demonstrable harm caused by infringement. *See* 17 U.S.C. § 504(b); *Polar Bear*, 384 F.3d at

6    708; *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001). Infringer's profits are analyzed

7    from the infringer's point of view. If the infringer has earned a profit, it must disgorge the profit

8    so that it does not benefit from its wrongdoing. *See id.* When proof of actual damages or

9    infringer's profits is insufficient, a copyright owner may elect to receive statutory damages, *see* 17

10   U.S.C. § 504(c), subject to having met other statutory requirements. *See* 17 U.S.C. § 412(2).

11          2.     Causation Principles Apply to Actual Damages and Infringer's Profits.

12          General "tort principles of causation and damages" apply when analyzing compensatory

13   damages awards for copyright infringement. *Polar Bear*, 384 F.3d at 708; *see also Harper &*

14   *Row v. Nation Enters.*, 471 U.S. 539, 567 (1985); *Jarvis*, 486 F.3d at 533-34; *Mackie*, 296 F.3d at

15   915; *Frank Music*, 772 F.2d at 514 n.8 (citing *Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave.,*

16   *Inc.*, 367 F.2d 236, 241 (9th Cir. 1966)). Under Section 504(b), "actual damages must be suffered

17   'as a result of the infringement,' and recoverable profits must be 'attributable to the

18   infringement.'" *Polar Bear*, 384 F.3d at 708 (quoting 17 U.S.C. § 504(b)). The plain statutory

19   language makes clear that "a causal link between the infringement and the monetary remedy

20   sought is a *predicate* to recovery of both actual damages and profits." *Id.* (emphasis added).

21          The plaintiff bears the burden of proving this necessary causal connection between the

22   infringement and any damages sustained. *See id.*, 384 F.3d at 708 ("We take this opportunity to

23   reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection");

24   *Jarvis*, 486 F.3d at 533-34; *Mackie*, 296 F.3d at 914-15 (citing *Data Gen. Corp. v. Grumman Sys.*

25   *Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994)); *Frank Music*, 772 F.2d at 514. Specifically,

26   the plaintiff must show that "the infringement was the cause-in-fact of its loss by showing with

27   reasonable probability that, but for the defendant's infringement, the plaintiff would not have

28   suffered the loss." *Data Gen.*, 36 F.3d at 1171. Further, the plaintiff must "prove that the

1    infringement was a proximate cause of its loss by demonstrating that the existence and amount of

2    the loss was a natural and probable consequence of the infringement." *Id.* (citing *Big Seven*

3    *Music Corp. v. Lennon*, 554, F.2d 504, 509 (2d Cir. 1977)).  Finally, courts allow both direct and

4    indirect evidence to establish loss, but must "reject a proffered measure of damages if it is too

5    speculative." *Mackie*, 296 F.3d at 915 (quoting *Frank Music*, 772 F.2d at 513); *see also Polar*

6    *Bear*, 384 F.3d at 709-11 (stating that damages may not be "based on undue speculation"); *Jarvis*,

7    486 F.3d at 534 (stating that excessively speculative claims of damages are to be rejected).

8              3.        Actual Damages May Be Measured Using a "Hypothetical License" Only
                         If, but for Infringement, the Parties Would Have Agreed to a License.
9

10            Because causation principles apply, analysis of actual damages—be it for lost profits or

11   for a hypothetical license—is a two step process.  The first, critical step is the threshold causation

12   inquiry, whether the plaintiff would have made a sale (lost profits) or licensed use (hypothetical

13   license) of the copyrighted work absent the infringement.  *See Polar Bear*, 384 F.3d at 711; *Jarvis*,

14   486 F.3d at 533; *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 405-06

15   (2d Cir. 1989); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 25 F. Supp. 2d 395,

16   401 (S.D.N.Y. 1998).  The second step, reached only if the plaintiff meets its burden on causation,

17   is to determine the amount of the lost sale or licensed use.  *See id.*  When analyzing a hypothetical

18   license, it is at this second step that a court applies the objective willing buyer/willing seller test

19   to determine the amount of a hypothetical license.  *See Jarvis*, 486 F.3d at 533 ("[I]n situations

20   where the infringer could have bargained with the copyright owner to purchase the right to use

21   the work, actual damages are 'what a willing buyer would have been reasonably required to pay a

22   willing seller'") (citing *Frank Music*, 772 F.2d at 512).  If a plaintiff does not meet its burden of

23   proving causation, a court does not reach this second step and no actual damages may be awarded,

24   since to do so would be unduly speculative.  *See id.*; *see also Mackie*, 296 F.3d at 917 (calculating

25   value of hypothetical license using willing buyer/willing seller test where evidence showed that

26   parties would have entered into a license); *Polar Bear*, 384 F.3d at 710-11 (same).

27            Accordingly, a plaintiff is not entitled to actual damages in the form of a hypothetical

28   license absent a showing that, but for the infringement, the parties would have agreed to a license.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
PARTIAL SUMMARY JUDGMENT
Case No. 07-CV-1658 PJH (EDL)

1   *See Polar Bear*, 384 F.3d at 708; *Frank Music*, 772 F.2d at 514; *Business Trends*, 887 F.2d at

2   405-06.  Courts consider several factors when analyzing causation, including whether: (1) the

3   parties are direct competitors, (2) they sell goods in the same market, (3) the parties have ever

4   entered into a similar license and (4) the plaintiff has ever granted a similar license.  *See Polar

5   Bear*, 384 F.3d at 711; *Business Trends*, 887 F.2d at 405-06 (rejecting hypothetical license in case

6   where parties were direct competitors); *On Davis*, 246 F.3d at 161-62 (allowing hypothetical

7   license where parties were non-competitors who could have agreed on a license); *Encyclopedia

8   Brown*, 25 F. Supp. 2d at 401-02 (same); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346,

9   357-58 (S.D.N.Y. 2003) (same).  Evidence of direct competition between the parties, by itself,

10  strongly supports the conclusion that a hypothetical license may not be a measure of actual

11  damages.  *See Business Trends*, 887 F.2d at 405-06; *Encyclopedia Brown*, 25 F. Supp. 2d 395 at

12  401-02.  Where the parties directly compete in the same market and there is no evidence that they

13  would have agreed to a hypothetical license for the allegedly infringed work, a court will not

14  permit an award of actual damages to be measured by a hypothetical license.  *See Jarvis*, 486

15  F.3d at 533 (hypothetical license award available only where "the infringer could have bargained

16  with the copyright owner"); *Business Trends*, 887 F.2d at 405, 407.

17          4.    A "Hypothetical License" Is Different from a "Reasonable Royalty."

18          It is useful to contrast a hypothetical license under copyright law with a reasonable royalty

19  under patent law.  Under patent law, damages must be "adequate to compensate for the

20  infringement, *but in no event less than a reasonable royalty for the use of the invention by*

21  *infringer . . . .*"  35 U.S.C. § 284 (emphasis added).  Congress specifically set a "reasonable

22  royalty" as a necessary floor for patent damages; even if a plaintiff alleging patent infringement

23  cannot directly prove damages caused by the infringement, the trier of fact must hypothesize a

24  reasonable royalty negotiation and award at least that amount.  *See id.*; *Minks v. Polaris Indus.,

25  Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008) ("The hypothetical negotiation *requires* the court to

26  envision the terms of a licensing agreement reached as the result of a supposed meeting between

27  the patentee and the infringer at the time [the patent] infringement began.") (emphasis added).

28          By contrast, copyright law does not recognize any royalty floor for recovery of

SVI-71862                              - 10 -                  DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                                                              PARTIAL SUMMARY JUDGMENT
                                                              Case No. 07-CV-1658 PJH (EDL)

1   compensatory damages; a plaintiff must first establish causation.  *See, e.g.*, *Polar Bear*, 384 F.3d

2   at 708-10 (remanding award where a portion of the amount was too speculative).  If a plaintiff is

3   unable to prove any compensatory damages, it may elect statutory damages if it has complied

4   with the necessary registration requirements.  *See* 17 U.S.C. § 504(c).

5         **C.**    **Plaintiffs Are Not Entitled to Actual Damages in the Form of a Hypothetical**
            **License Because the Parties Never Would Have Agreed to Such a License.**

6

7        Plaintiffs are not entitled to a "hypothetical license" as a form of actual damages because

8   the undisputed facts show that Oracle never would have been willing to negotiate with its arch-

9   rival SAP for the type of copyright license Plaintiffs have put at issue here.  This is evidenced by

10   Oracle executives' unequivocal testimony, the parties' fierce competition and the lack of any

11   equivalent Oracle licenses.  Further, even had Oracle been willing to negotiate such a license,

12   testimony from both sides makes it clear that an agreement never would have been reached

13   because neither side could have even agreed on the basis for negotiations, much less the

14   ████████████████ Oracle executives would have demanded.  Absent this causal link,

15   Plaintiffs are not entitled to a "hypothetical license" as a form of actual damages.

16         1.    Oracle Executives' Undisputed Testimony Establishes that Plaintiffs
               Would Not Have Granted a License.

17

18        Oracle's top executives testified under oath that ██████████████

19   ████████████ *See* Lanier Decl. ¶¶ 1, 3, Ex. A (Catz Depo.) at 46:7-47:13; Ex. C

20   (Ellison Depo.) at 80:3-82:2, 83:18-84:6.  Mr. Ellison's testimony alone is sufficient to establish

21   that ██████████████████████

22   ████████████████████████ *See*

23   *id.*, *see also id.* ¶ 2, Ex. B (Phillips Depo.) at 118:8-120:6.

24        In light of Plaintiffs' view regarding the scope of the hypothetical license, ██████

25   ████████████████████████████

26   According to Mr. Ellison, the license at issue here would have allowed SAP to ██████

27   ████████ Oracle had just fought for almost two years for the right to purchase

28   and that was critical to Oracle's expansion in the applications business dominated by SAP.  *Id.* ¶

3, Ex. C (Ellison Depo.) at 74:12-75:24 (emphasis added).  Plaintiffs' contemplated license would have given Defendants free rein "to use Oracle applications and service support intellectual property to aggressively compete against Oracle for applications customers and market share." D.I. 253 at 14.  In short, granting Defendants such a license would have eviscerated the rationale behind acquiring PeopleSoft in the first place; there is no dispute that Plaintiffs would not have granted Defendants such a license.

> 2.   Direct Competition between the Parties and the Lack of Any Equivalent Licenses Further Proves that Plaintiffs Would Not Have Granted a License.

SAP and Oracle's status as direct competitors further demonstrates that Oracle never would have granted such a license to Defendants.  The testimony from Mr. Ellison, Ms. Catz and Mr. Phillips, and the allegations in Plaintiffs' complaint, evidence the fierce competition between Oracle and SAP.  There is no question that each considers the other ███████████ ████████████████████████████████████████████  *See* Lanier Decl. ¶¶ 1-3, 5-6, Ex. A (Catz Depo.) at 19:10-25; Ex. B (Phillips Depo.) at 57:12-58:18, 96:15-16; Ex. C (Ellison Depo.) at 114:16-24; Ex. E (Kagermann Depo.) at 167:25-168:7; Ex. F (Apotheker Depo.) at 58:10-23; D.I. 418 (¶¶ 62, 74).  The parties' direct competition is a critical and undisputed fact which demonstrates that a hypothetical license is not a proper measure of actual damages here.  *See Business Trends*, 887 F.2d at 405-06 (rejecting hypothetical license in case where parties were direct competitors); *Jarvis*, 486 F.3d at 533 (stating that hypothetical license measure is available only where "the infringer could have bargained with the copyright owner").

Additionally, there is no evidence, such as comparable past licenses, to suggest that Plaintiffs would have even negotiated, let alone granted, a license to Defendants.  *See McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 567 (7th Cir. 2002) (allowing hypothetical license where parties were not direct competitors and had past copyright license for work at issue); *Encyclopedia Brown*, 25 F. Supp. 2d at 401 (same).  By its own admission, Oracle has never given *any* entity a license to "copy Oracle's application software and support materials in order to create their own fixes, patches or updates for customers."  D.I. 256 (¶¶ 3-4).  And the parties have no history of negotiating similar licenses for the use of comparable enterprise software applications.

1   That Oracle has never granted the type of copyright license it insists it would have required from

2   Defendants further demonstrates that Plaintiffs cannot carry their burden of proof.

3           3.    <u>Even Had Plaintiffs Been Willing to Negotiate, the Parties' Differing Bases
                  for a License Establish that They Would Not Have Reached an Agreement.</u>
4

5           Even assuming that Oracle and SAP would have been willing to negotiate a license, such

6   negotiations would not have resulted in a license.  Based on both Oracle and SAP executive

7   testimony, it is clear that neither side would have agreed on a license because they would have

8   had vastly different views as to the basis of the negotiation.  This disconnect demonstrates that

9   there never would have been the requisite "meeting of the minds."  *See e.g.*, *American Employers*

10  *Group, Inc. v. Employment Dev. Dep't*, 154 Cal. App. 4th 836, 846-47 (2007) ("[T]here is no

11  contract until there has been a meeting of the minds on all material points.") (quoting *Banner*

12  *Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 358) (1998); *Weddington Prods., Inc. v.*

13  *Flick*, 60 Cal. App. 4th 793, 797 (1998) ("If no meeting of the minds has occurred on the material

14  terms of a contract, basic contract law provides that no contract formation has occurred.").

15          Oracle would have viewed the negotiation ████████████████████

16  ██████████████████████████████████████████████  *See* Lanier Decl. ¶¶ 1-3,

17  Ex. A (Catz Depo.) at 158:13-159:23; Ex. B (Phillips Depo.) at 118:8-120:18; Ex. C (Ellison

18  Depo.) at 76:16-81:9.  Accordingly, Oracle executives testified that ████████████████

19  ████████████████████████████████  *See id.* ¶¶ 1-3, Ex. A (Catz Depo.) at 158:13-

20  161:5; Ex. B (Phillips Depo.) at 118:8-120:18; Ex. C (Ellison Depo.) at 76:16-81:9.

21          In stark contrast, Mr. Plattner's testimony evidences that SAP would have viewed the

22  negotiation as simply one for the right to service Oracle's customers; indeed, SAP would have

23  expected to get a bargain because TN would have been "doing [Oracle's] job" for it.  *See id.* ¶ 4,

24  Ex. D (Plattner Depo.) at 56:21-58:2.  Mr. Plattner further testified that SAP would *not* have

25  expected the license to have been based on the amount of "money that [the licensor] spent to

26  develop the software in the first place" or "the purchase price that Oracle had just paid to

27  PeopleSoft."  *Id.* ¶ 4, Ex. D (Plattner Depo.) at 57:23-58:2, 65:19-66:21.

28          With such a fundamental disagreement over the basis of the license, it is inconceivable

1  that the parties could have overcome this disconnect and reached a meeting of the minds.  No

2  evidence suggests otherwise.  Rather, as Mr. Plattner pointed out, the parties would have realized

3  that they "don't have to sit together."  *Id.* ¶ 4, Ex. D (Plattner Depo.) at 68:9-22.  Mr. Ellison

4  acknowledged this as well, when he testified that

5

6       *Id.* ¶ 3, Ex. C (Ellison Depo.) at 74:12-75:24, 81:10-82:2.

7              4.      Case Law Supports a Finding that Plaintiffs Are Not Entitled to a
                       "Hypothetical License" Form of Actual Damages.
8

9         The undisputed evidence that SAP and Oracle were direct competitors in the same market

10  and never would have agreed to a license for the allegedly infringing activities proves that a

11  hypothetical license is not permitted here.  Indeed, these factors distinguish this case from those

12  in which plaintiffs were permitted actual damages in the form of a hypothetical license.  *See*

13  *McRoberts*, 329 F.3d at 567; *On Davis*, 246 F.3d at 163-64; *Polar Bear*, 384 F.3d at 710-11;

14  *Jarvis*, 486 F.3d at 534; *Mackie*, 296 F.3d at 917.  This case is similar to *Business Trends*, in

15  which the court vacated a hypothetical license award as too "speculative" where the parties

16  directly competed in the same market.  *Business Trends*, 887 F.2d at 405, 407.

17         In *Business Trends*, the parties directly competed in the publication of economic analyses

18  and forecasts, and both produced a robotics industry study.  *See id.* at 401.  Upon a finding that

19  the defendant infringed the plaintiff's robotics study, the lower court awarded damages in the

20  form of a hypothetical license.  *See id.* at 404.  The Second Circuit reversed, holding that the

21  "proof in the instant case is inadequate to support such an award" because the parties were direct

22  competitors and there was no evidence that they had any inclination to agree to a license for the

23  allegedly infringing activities.  *Id.* at 407.  Like the parties in *Business Trends*, SAP and Oracle

24  fiercely compete in the same market, and there is no evidence to suggest that they would have

25  agreed to a license for the allegedly infringing activities.  Indeed, there is direct testimony to the

26  contrary.  As in *Business Trends*, Plaintiffs here have not adduced, and cannot adduce, any

27  evidence on which to ground a hypothetical license form of damages that would be anything but

28  "speculative and artificial" and, therefore, impermissible.

1    This case is distinguishable from *McRoberts*, where a hypothetical license award was

2    affirmed based on evidence that the parties, which were *not* direct competitors, had previously

3    entered into similar agreements for the particular copyrighted material. 329 F.3d at 567. In

4    *McRoberts*, defendant Media 100, a manufacturer of video editing hardware, was a licensed

5    distributor of plaintiff MSI's software, which only functioned on Macintosh computers. *See id.* at

6    561-62. Without MSI's permission, Media 100 hired a third party to translate MSI's software so

7    that it was compatible with Windows machines and then sold the translated MSI software. *See id.*

8    at 562. MSI sued Media 100 for copyright infringement and sought actual damages in the form

9    of the hypothetical license Media 100 would have paid to obtain a Windows-translated version of

10   the software. *See id.* at 563, 566-67. The Seventh Circuit found that, despite Media 100's claim

11   that it never would have entered into a license for the translated software, there was "ample

12   evidence" on which to base a hypothetical license, including that MSI had "past agreements with

13   Media 100 to develop and modify previous versions" of the software. *Id.* at 567. In this case, by

14   contrast, the parties are direct competitors that have never previously agreed on a license for the

15   software at issue in this case. Further, unlike the *McRoberts* defendant, Defendants do not rely on

16   bare assertions that they would not have agreed to a hypothetical license; rather, the evidence,

17   which here principally comes from Oracle, is that *neither* Plaintiffs nor Defendants would have

18   agreed on a license covering the allegedly infringing activities.

19   Similarly, in *Jarvis*, *Polar Bear*, *Mackie* and *On Davis*, plaintiffs were permitted to

20   measure actual damages in the form of a hypothetical license where they introduced evidence that

21   they would have entered into a license with the defendants for the intellectual property at issue,

22   but for the infringement. In *Jarvis*, the Ninth Circuit affirmed a hypothetical license award for

23   infringement of the plaintiff's copyrighted photographs where the plaintiff had licensed

24   photographs to the defendant in the past. *See Jarvis*, 486 F.3d at 528, 533-34. In so doing, the

25   court noted that a hypothetical license form of actual damages is appropriate where, as in that

26   case, "the infringer *could have bargained* with the copyright owner to purchase the right to use

27   the work." *Id.* at 533 (emphasis added). Likewise, in *Polar Bear*, the Ninth Circuit upheld a

28   hypothetical license award where the parties previously had a license concerning the plaintiff's

1   copyrighted video, and the defendant had simply continued to use that video after the license had

2   expired.  *See Polar Bear*, 384 F.3d at 704, 709.  Similarly, in *Mackie*, the Ninth Circuit upheld a

3   hypothetical license award where the parties were not competitors and the plaintiff "had

4   previously given permission to others to use" the copyrighted work for the same use.  *Mackie*,

5   296 F.3d at 913, 917.  And in *On Davis*, the Second Circuit permitted the plaintiff to recover a

6   hypothetical license fee for the defendant's unauthorized use of plaintiff's copyrighted eyewear in

7   defendant's advertising campaign where the parties were not competitors and there was evidence

8   that the plaintiff obtained a $50 royalty for use of the sunglasses in a different magazine feature.

9   *See On Davis*, 246 F.3d at 161-62 (distinguishing its facts from those in *Business Trends*, where

10  "the plaintiff and defendant were competitors in the publication of economic analyses and

11  forecasts—not a relationship where the defendant was a potential licensee of the plaintiff").

12          In each of these cases, the evidence demonstrated that the parties were *not* direct

13  competitors and that they had entered into comparable agreements for the copyrighted material at

14  issue in the past or, at the very least, that the plaintiff willingly had licensed the copyrighted

15  material to others for a similar use.  None of these circumstances is present here, where SAP and

16  Oracle are fierce competitors and there is no evidence that Oracle has licensed its applications

17  software to others (including SAP or TN) to provide third party maintenance.  Moreover, in this

18  case, the very Oracle executives ████████████████████████████████ testified, under

19  oath, ████████████████████████████████████

20          For these reasons, Plaintiffs cannot carry their burden of proving that the parties would

21  have agreed to a hypothetical license for the allegedly infringing activities but for the alleged

22  infringement.  Because there is no genuine issue of material fact regarding Plaintiffs' hypothetical

23  license claim, the Court should grant Defendants' motion for partial summary judgment.

**D.      Plaintiffs Are Not Entitled to a Hypothetical License Based on "Saved Acquisition Costs" Because this Theory Is Inconsistent with the Copyright Act and Ninth Circuit Precedent.**

26          Plaintiffs' executives' testimony and Supplemental Disclosures suggest that Plaintiffs may

27  try to support their hypothetical license claim by relying on the "saved acquisition costs" theory

28  conceived by the Seventh Circuit in *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir.

1 | 1985). The Court should not countenance that argument. *Deltak*'s "saved acquisition costs"

2 | theory is inconsistent with the Copyright Act and Ninth Circuit precedent because it is not a

3 | measure of actual damages or infringer's profits, and it has been expressly rejected by many

4 | courts. Ultimately, *Deltak*'s "saved acquisition costs" theory is an outlier—neither the Ninth

5 | Circuit nor any other appellate court besides the Seventh Circuit has ever adopted this theory as a

6 | measure of damages. Therefore, it cannot support Plaintiffs' hypothetical license claim.

7 |      In *Deltak*, the Seventh Circuit permitted the plaintiff to recover the "value of use" of

8 | marketing materials infringed by a direct competitor. 767 F.2d at 361. Rather than focusing on

9 | the harm to the plaintiff, the court measured the "value of use" by the defendant's "saved

10 | acquisition costs"—that is, the amount the defendant saved by infringing rather than acquiring the

11 | underlying copyrights. *Id.* at 361-63. The court claimed that "saved acquisition costs" were

12 | "simply an application" of the Ninth Circuit's "value of use" actual damages measured by what a

13 | "'willing buyer'" would have paid a "'willing seller.'" *Id.* at 360-62 (quoting *Krofft*, 562 F.2d at

14 | 1174). In reality, the court went well beyond the Ninth Circuit's "value of use" concept and

15 | adopted a novel theory that allowed disgorgement of the defendant's purported saved costs,

16 | unconstrained by the requirement of causation between infringement and alleged harm. *See id.*

17 | In so doing, the court permitted recovery where no other remedy, including statutory damages,

18 | was available. *Id.* at 359-60.

19 |      *Deltak*'s mutation of "value of use" damages contravenes the plain text of the Copyright

20 | Act, which sets specific remedies for infringement. Contrary to the Seventh Circuit's suggestion,

21 | "saved acquisition costs" cannot qualify as "actual damages suffered by" the plaintiff, 17 U.S.C.

22 | § 504(b), because they measure an alleged benefit to the infringer, not harm to the copyright

23 | owner. Nor does this form of benefit to the infringer qualify as infringer's profits. The Copyright

24 | Act only allows recovery of infringer's profits "that are attributable to the infringement," 17

25 | U.S.C. § 504(b), which refers not to any "gain in economic theory," but rather to "a more

26 | conventional view of profits" as "gross revenue less out-of-pocket costs." *Business Trends*, 887

27 | F.2d at 405-06; *see also* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright

28 | owner is required to present proof only of the infringer's gross revenue . . . ."). In short, "saved

1   acquisition costs" are neither actual damages nor infringer's profits under the Copyright Act.

2        *Deltak*'s "saved acquisition costs" measure is also inconsistent with Ninth Circuit law.

3   This Circuit allows a hypothetical license only as a measure of actual damages, not as a measure

4   of ill-gotten gain to the defendant. *See, e.g.*, *Polar Bear*, 384 F.3d at 709; *Krofft*, 562 F.2d at

5   1174. In addition, and consistent with the Copyright Act, actual damages and infringer's profits

6   in the Ninth Circuit require "but for" causation, *see Polar Bear*, 384 F.3d at 708, which *Deltak*

7   ignores by permitting damages even where the infringement resulted in no lost license.

8        The "saved acquisition costs" remedy is also at odds with Congressional intent. The

9   *Deltak* court applied this remedy because it was troubled by the seemingly inequitable prospect of

10   awarding no damages to the plaintiff, which could not prove actual damages or infringer's profits

11   and had failed to satisfy the requirements for statutory damages. *See Deltak*, 767 F.2d at 361. As

12   a result, "saved acquisition costs" effectively served as a "floor" for copyright damages,

13   analogous to a reasonable royalty in patent law, where causation is simply assumed and the only

14   question concerns the amount of the award. This is an unauthorized departure from the exclusive

15   remedies permitted by the Copyright Act and contravenes Congressional intent. Previously,

16   under the 1909 Copyright Act, statutory damages were available in all actions, regardless of

17   registration requirements, and therefore acted as a floor for copyright damages. *See* Copyright

18   Act of 1909, formerly 17 U.S.C. § 101(b). However, under the 1976 Act, Congress deliberately

19   excluded the recovery of statutory damages for unregistered copyrights in order to induce, "in

20   some practical way," copyright registration. 17 U.S.C. § 412, Notes of Committee on Judiciary,

21   H.R. No. 94-1476. It left open the possibility that a plaintiff who failed to meet the standards set

22   out for obtaining statutory damages may be foreclosed from seeking a remedy that was otherwise

23   available to it. *See id.* Thus, the *Deltak* court's creation of an effective floor for recovery in

24   copyright, where such a floor was deliberately removed by Congress, constitutes an attempt to

25   legislate, which is improper even when done "to avoid the anomaly of affording plaintiffs a right

26   without a remedy." *Business Trends*, 887 F.2d at 406 (quotation omitted).

27        No Ninth Circuit case has adopted *Deltak*'s flawed "saved acquisition costs" theory. In

28   fact, the Ninth Circuit has favorably cited the opinion of the *district court*, which declined to

- 18 -

1    award damages because of the *Deltak* plaintiff's inability to prove that the defendant's infringing

2    activities caused it harm. *See Polar Bear*, 384 F.3d at 715. Only one district court in the Ninth

3    Circuit has ever cited the Seventh Circuit opinion, and it did so simply for the "value of use"

4    concept, for which it also cited the Ninth Circuit's *Krofft* and *Frank Music* decisions. *See Harper*

5    *House, Inc. v. Thomas Nelson, Inc.*, No. CV 85-4225-PAR, 1987 WL 30581 (C.D. Cal. Aug. 28,

6    1987), *rev'd on other grounds by* 889 F.2d 197 (1989). In that case, the court measured value of

7    use based on a hypothetical license, which it held focuses on "the harm to plaintiff" and is not "a

8    proxy for measuring a defendant's ill-gotten profits." *Id.* at *3 (citing *Krofft*, 562 F.2d at 1174).

9            Similarly, although other courts outside the Seventh Circuit have cited *Deltak* for the

10   proposition that "value of use" is an appropriate measure of actual damages, the vast majority of

11   courts have declined to adopt *Deltak*'s "saved acquisition cost" remedy. Some courts have

12   expressed doubts about the validity of the theory. *See, e.g., Quinn v. City of Detroit*, 23 F. Supp.

13   2d 741, 751 (E.D. Mich. 1998) ("[T]he rationale of *Deltak* has been criticized by other courts and

14   by Nimmer."); *Multitherm Corp. v. Fuhr*, Civ. A. No. 89-6151, 1991 WL 146233, at *14 (E.D.

15   Pa. July 24, 1991) ("[I]t is not at all clear that the copyright statute allows for damages measured

16   in [*Deltak*'s] fashion."). Other courts have expressly rejected *Deltak*'s attempt to cast "saved

17   acquisition costs" as a measure of actual damages or infringer's profits. *See, e.g., Business*

18   *Trends*, 887 F.2d at 405-06 (declining to award "saved acquisition cost[s]" because "entirely

19   hypothetical sales" between competitors were "speculative and artificial"); *Encyclopedia Brown*

20   *Prods.*, 25 F. Supp. 2d at 401-02; *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 439 F. Supp.

21   2d 758, 771-72 (E.D. Mich. 2006), *aff'd in part, rev'd in part, vacated in part, and remanded by*

22   488 F.3d 352 (6th Cir. 2007). Most courts that cite *Deltak* for the traditional "value of use"

23   concept do not even discuss the "saved acquisition costs" theory. *See, e.g., Thornton v. J Jargon*

24   *Co.*, 580 F. Supp. 2d 1261, 1276-78 (M.D. Fla. 2008); *Steven Greenberg Photography v. Matt*

25   *Garrett's of Brockton, Inc.*, 816 F. Supp. 46, 49 (D. Mass. 1992). The Second Circuit took this

26   approach in *On Davis* by holding that *Business Trends*'s rejection of *Deltak* "[did] not foreclose"

27   actual damages based on a hypothetical license theory. *On Davis*, 246 F.3d at 163.

28           Ultimately, *Deltak*'s "saved acquisition costs" language has been adopted by only one

SVI-71862                              - 19 -                    DEFENDANTS' NOTICE OF MOTION AND MOTION FOR
                                                                         PARTIAL SUMMARY JUDGMENT
                                                                         Case No. 07-CV-1658 PJH (EDL)

1   court outside of the Seventh Circuit, and that court adopted it as a measure of infringer's profits

2   (not actual damages) where the parties were *not* competitors.  *See Roeslin v. District of Columbia*,

3   921 F. Supp. 793, 796, 799 (D.D.C. 1995).  "Saved acquisition costs" are an improper measure of

4   copyright damages, and this theory cannot save Plaintiffs' illegitimate hypothetical license claim.

5   **IV.     CONCLUSION**

6          Where, as here, the undisputed evidence demonstrates that the parties never would have

7   agreed to a copyright license for the allegedly infringed works, summary judgment should be

8   granted to preclude a plaintiff's claim to damages in the form of a hypothetical license.  Any

9   other result would allow a plaintiff to present speculative evidence—including its own unilateral,

10  speculative demands for ███████████—regarding the terms of an agreement that never could

11  have, or would have, occurred, in the hopes that a jury might find the story sympathetic enough to

12  agree.  This is not a rational approach for measuring copyright damages, and it is not one

13  permitted by either the Copyright Act or prevailing case law.  On the undisputed facts of record

14  here, a damages theory based on a hypothetical license, including one based on alleged "saved

15  acquisition costs," is forbidden because it is inconsistent with the Copyright Act and Ninth Circuit

16  precedent.  For all of these reasons, Defendants respectfully request that the Court grant partial

17  summary judgment that Plaintiffs are not entitled to damages in the form of a hypothetical license.

18  Dated:  August 26, 2009                          JONES DAY

19                                                   By:  /s/ Tharan Gregory Lanier

20                                                   _____
                                                     Tharan Gregory Lanier
21
                                                     Counsel for Defendants
22
                                                     SAP AG, SAP AMERICA, INC., and
23                                                   TOMORROWNOW, INC.

24

25

26

27

28

SVI-71862                          - 20 -