1   Robert A. Mittelstaedt (SBN 060359)
    Jason McDonell (SBN 115084)
2   Elaine Wallace (SBN 197882)
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA  94104
4   Telephone:    (415) 626-3939
    Facsimile:    (415) 875-5700
5   ramittelstaedt@jonesday.com
    jmcdonell@jonesday.com
6   ewallace@jonesday.com

7   Tharan Gregory Lanier (SBN 138784)
    Jane L. Froyd (SBN 220776)
8   JONES DAY
    1755 Embarcadero Road
9   Palo Alto, CA  94303
    Telephone:    (650) 739-3939
10  Facsimile:    (650) 739-3900
    tglanier@jonesday.com
11  jfroyd@jonesday.com

12  Scott W. Cowan (Admitted *Pro Hac Vice*)
    Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13  JONES DAY
    717 Texas, Suite 3300
14  Houston, TX 77002
    Telephone:    (832) 239-3939
15  Facsimile:    (832) 239-3600
    swcowan@jonesday.com
16  jlfuchs@jonesday.com

17  Attorneys for Defendants
    SAP AG, SAP AMERICA, INC., and
18  TOMORROWNOW, INC.

19              UNITED STATES DISTRICT COURT

20             NORTHERN DISTRICT OF CALIFORNIA

21                 SAN FRANCISCO DIVISION

22  ORACLE USA, INC., et al.,              Case No. 07-CV-1658 PJH (EDL)

23              Plaintiffs,                **DEFENDANTS' OPPOSITION TO**
                                           **PLAINTIFFS' MOTION TO AMEND**
24       v.                                **COMPLAINT**

25  SAP AG, et al.,                        Date:      August 19, 2009
                                           Time:      9:00 a.m.
26              Defendants.                Courtroom: 5, 17th Floor
                                           Judge:     Hon. Phyllis J. Hamilton
27

28
                                           DEFENDANTS' OPPOSITION TO PLAINTIFFS'
                                                 MOTION TO AMEND COMPLAINT
                                                 Case No. 07-CV-1658 PJH (EDL)

1

2

**TABLE OF CONTENTS**

Page(s)

3   I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

4   II.     RELEVANT BACKGROUND ............................................................................................ 2

        A.      The Case Schedule and This Belated Motion ............................................................ 2

5       B.      Plaintiffs' Knowledge of Their Potential Claims ...................................................... 4

6               1.      Scope and Accurate Timing of Relevant Discovery ..................................... 4

7               2.      Plaintiffs Knew About Their Alleged Claims Related to the
                        Additional PeopleSoft Registrations at the Beginning of This Case .......... 6

8               3.      Plaintiffs Knew About Their Alleged Knowledge Management
                        Claims ............................................................................................................ 7

9
                4.      Plaintiffs Cannot Hide Behind Discovery Disputes and Purport
10                      Ignorance of the Alleged Database Claims .................................................. 8

    III.    LEGAL STANDARDS ....................................................................................................... 9
11
        A.      Rule 16(b)'s "Good Cause" Standard Applies When the Deadline for a
12              Motion to Amend Has Passed ................................................................................... 9

        B.      Even If "Good Cause" Is Shown, Rule 15(a) Must Also Be Satisfied ................. 10
13
    IV.    ARGUMENT: PLAINTIFFS' MOTION SHOULD BE DENIED AS TO THE
14         CONTESTED AMENDMENTS ..................................................................................... 10

15      A.      Plaintiffs Must Move Under Both Rule 16(b) and Rule 15(a) Because They
                Missed the Deadline to Amend ................................................................................ 10
16
        B.      Plaintiffs Fail to Meet the Rule 16(b) "Good Cause" Standard Because
                They Were Not Diligent in Bringing This Motion ................................................. 11
17
                1.      Plaintiffs Could Have Asserted the Knowledge Management
18                      Registrations and Historic PeopleSoft Registrations as Early as the
                        Initial Complaint ........................................................................................ 11
19
                2.      Plaintiffs Were on Notice of the Oracle Database Issue ........................... 13

20      C.      Plaintiffs Brought This Motion in Bad Faith After Undue Delay, to the
                Prejudice of Defendants ........................................................................................... 14
21
                1.      Plaintiffs' Bad Faith in Bringing This Motion Justifies Denial ............... 15

22                      (a)     Plaintiffs' stated rationale for the motion is contrary to what
                                they told Magistrate Judge Laporte ............................................. 15
23
                        (b)     Plaintiffs' characterizations of Defendants' production are
24                              misleading ..................................................................................... 17

                        (c)     Plaintiffs mischaracterize the contested amendments as
25                              "conforming" amendments ............................................................ 19

26              2.      Plaintiffs Unduly Delayed Bringing This Motion ..................................... 20

                3.      Defendants Will Be Prejudiced by Late Amendment ................................ 21
27
    V.      CONCLUSION ................................................................................................................. 24

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>Cases</u>

4   *Acri v. Int'l Ass'n of Machinists & Aerospace Workers,*
        781 F.2d 1393 (9th Cir. 1986) ..................................................................................................... 21

5   *Allen v. Beverly Hills,*
6        911 F.2d 367 (9th Cir. 1990) ....................................................................................................... 10

    *AmerisourceBergen Corp. v. Dialysist West, Inc.,*
7        465 F.3d 946 (9th Cir. 2006) .......................................................................................... 10, 20, 22

8   *Atmel Corp. v. Authentec, Inc.,*
        No. C 06-2138 CW, 2008 U.S. Dist. LEXIS 10846 (N.D. Cal. Jan. 31, 2008) .................. 10, 22

9   *Brown v. Wireless Networks, Inc.,*
        No. C 07-4301 (EDL), 2008 U.S. Dist. LEXIS 36472 (N.D. Cal. Apr. 24, 2008) ............. 15, 21
10
    *Chodos v. West Publ'g Co.,*
11       292 F.3d 992 (9th Cir. 2002) ....................................................................................................... 15

12  *Coleman v. Quaker Oats Co.,*
        232 F.3d 1271 (9th Cir. 2000) ................................................................................................... 9, 10

13  *Durney v. WaveCrest Labs., LLC,*
        441 F. Supp. 2d 1055 (N.D. Cal. 2005) ...................................................................................... 20

14  *Hannon v. Chater,*
        887 F. Supp. 1303 (N.D. Cal. 1995) ..................................................................................... 10, 12
15
    *In re Fritz Cos. Secs. Litig.,*
16       282 F. Supp. 2d 1105 (N.D. Cal. 2003) ...................................................................................... 22

17  *Jackson v. Bank of Hawaii,*
        902 F.2d 1385 (9th Cir. 1990) ..................................................................................................... 21

18  *Johnson v. Mammoth Recreations, Inc.,*
        975 F.2d 604 (9th Cir. 1992) ..................................................................................................... 9, 10

19  *Lendall v. Chase Manhattan Mortgage Corp.,*
        No. C 05-03295 WHA, 2006 U.S. Dist. LEXIS 81430 (N.D. Cal. Oct. 27, 2006) ......... 9, 10, 11
20
    *Lockheed Martin Corp. v. Network Solutions, Inc.,*
21       194 F.3d 980 (9th Cir. 1999) ....................................................................................................... 15

22  *Lukovsky v. City & County of San Francisco,*
        No. C 05-00389 WHA, 2006 U.S. Dist. LEXIS 26762 (N.D. Cal. Apr. 26, 2006) ..................... 9

23  *Mullen v. Surtshin,*
        590 F. Supp. 2d 1233 (N.D. Cal. 2008) ................................................................................ 10, 15

24  *RE: LAUNCH, LLC v. PC Treasures, Inc.,*
        No. C-05-0697 PJH, 2006 U.S. Dist. LEXIS 27673
25       (N.D. Cal. Apr. 28, 2006) ..................................................................................................... 9, 10, 14

26  *Robertson v. Qadri,*
        No. 06-4624 JF (HRL), 2009 U.S. Dist. LEXIS 3790 (N.D. Cal. Jan. 15, 2009) ..................... 15

27  *Scognamillo v. Credit Swisse First Boston, LLC,*
        587 F. Supp. 2d 1149 (N.D. Cal. 2008) ................................................................................ 20, 21
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l, Inc.*,
   245 Fed. Appx. 588 (9th Cir. 2007) ........................................................................................ 15

*Strickland v. Jewell*,
   562 F. Supp. 2d 661 (M.D.N.C. 2007) .................................................................................... 15

*Trimble Navigation Ltd. v. RHS, Inc.*,
   No. C 03-1604 PJH, 2007 WL 2727164 (N.D. Cal. Sept. 17, 2007) ....................................... 14

**<u>Statutes</u>**

17 U.S.C. § 101 ............................................................................................................................ 23

Fed. R. Civ. P. 15 ................................................................................................................. *passim*

Fed. R. Civ. P. 16 ................................................................................................................. *passim*

1    **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

2           Plaintiffs now seek leave to bring their fifth complaint.  This new complaint would add

3    dozens of copyright registrations (almost every one of which was registered years before the

4    original complaint in this case was filed), purportedly covering "thousands" of items and new

5    technology, just months before discovery is to end.  These are hardly "conforming" amendments

6    and allowing them will "overload an already robust complaint," as Plaintiffs told Judge LaPorte.

7    Plaintiffs bring this motion well after the deadline to amend had passed, despite knowing about

8    the "new" claims long (or in some cases years) before.  Plaintiffs' lack of diligence in bringing

9    their motion is reason enough to deny it under Rule 16(b).  Combined with the prejudice

10   Defendants will suffer as result of the amendments and Plaintiffs' bad faith in bringing this

11   motion, there is ample reason to deny Plaintiffs' motion under Rule 15(a) as well.

12          ***Plaintiffs' belated amendment unduly prejudices Defendants.***  There are (mercifully) but

13   a few months left in discovery.  Adding 29 new registrations–effectively 29 new claims for

14   copyright infringement–now would be unfair and would prejudice Defendants, who do not have

15   enough time on an already extended schedule to properly conduct discovery to defend against

16   these claims.  The potential prejudice is exacerbated because Plaintiffs continue to resist such

17   basic work as identifying what is covered by the registrations already in the case and providing

18   basic financial and related discovery.  And, as Plaintiffs acknowledge, adding the database issues

19   would introduce entirely new technical and business issues into the case.  All of this might have

20   been manageable had Plaintiffs not delayed.  It is too late now.

21          ***Plaintiffs' motion is brought in bad faith.***  Plaintiffs' statements that they did not or

22   could not know about the "new" claims until just recently are false.  Plaintiffs misrepresent key

23   production dates (they present the dates of supplemental productions as the dates of original

24   production).  Plaintiffs contend that they present merely "conforming amendments," but told

25   Magistrate Judge Laporte that adding these new registrations would "overload" the case.

26   Plaintiffs' misrepresentations in this motion are but an instance in a pattern of misrepresentations

27   made to this Court about amendments (for example, Plaintiffs said that they needed more time to

28   file the Second Amended Complaint "to obtain" new copyright registrations, when every

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1    registration eventually added in that amendment long predated this lawsuit), and evidence their

2    bad faith.

3            ***Plaintiffs knew about their "new" claims long before the amendment deadline.***

4    Plaintiffs assert that they raise the contested amendments now because they only recently became,

5    or could have become, aware of the "new" claims.  This is false.  Specifically, Plaintiffs claim

6    that they could not have known to add the "knowledge management solutions" registrations, but

7    each previous complaint specifically mentions those very "solutions."  Plaintiffs claim that they

8    did not know enough to add the 20 PeopleSoft registrations, but those registrations were made six

9    to nine years before this case was filed and address the same products at issue since the case

10   started.  Plaintiffs claim that they could not have known to assert claims about the Oracle

11   database, but their lawyers took deposition testimony on this very issue a full year before the

12   amendment deadline. Their alleged ignorance aside, Plaintiffs' only excuse for their delay in

13   asserting these claims is that there was too much discovery, produced too late, for them to act

14   more quickly.  Not true.  Whatever additional details the discovery may contain, Plaintiffs

15   actually knew about the alleged "new" claims months or years ago.

16           Plaintiffs cannot establish good cause for bringing their Motion months after the March 20,

17   2009 deadline and it should be denied on that basis alone.  Even were the Court to excuse

18   Plaintiffs' late filing, the motion should still be denied under Rule 15(a), because of Plaintiffs'

19   undue delay and bad faith and the unfair prejudice to Defendants.  It is time to complete

20   discovery and resolve this case.

21   **II.      RELEVANT BACKGROUND**

22           **A.      The Case Schedule and This Belated Motion.**

23           This case began over two years ago on March 22, 2007, when Oracle Corporation, Oracle

24   USA, Inc. ("OUSA") and Oracle International Corp. ("OIC") (collectively "Original Plaintiffs")

25   filed suit. *See* Declaration of Tharan Gregory Lanier in Support of Defendants' Opposition to

26   Plaintiffs' Motion to Amend ("Lanier Decl.") ¶ 1.  In the ensuing two-plus years, Plaintiffs have

27   filed three amended complaints and now seek leave to file what would be their fifth complaint.

28           The Court's May 5, 2008 Case Management and Pretrial Order, *see* D.I. 84 ("May 5, 2008

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1  Order"), set June 19, 2009 as the fact discovery cut-off date and stated that the deadline to amend

2  the pleadings was "no later than 90 days before fact discovery cutoff date," *i.e.*, March 20, 2009.

3  D.I. 84. The May 5, 2008 Order further provided that "[n]o provision of this order may be

4  changed except by written order of this court upon its own motion or upon motion of one or more

5  parties made pursuant to Civil L. R. 7-11 with a showing of good cause." D.I. 84. In particular,

6  the May 5, 2008 Order made clear that "[i]f the modification sought is an extension of a deadline

7  contained herein, the motion must be brought before expiration of that deadline. The parties may

8  not modify the pretrial schedule by stipulation." D.I. 84.

9       On May 12, 2009, the parties filed a Joint Administrative Motion to Modify May 5, 2008

10  Case Management Order, *see* D.I. 304 ("Joint Motion"), and a Proposed Revised Case

11  Management Schedule, *see* D.I. 305. This proposed schedule suggested modifying many of the

12  prospective deadlines set forth in the May 5, 2005 Order, but did not suggest modifying the

13  March 20, 2009 deadline for amending the pleadings, which deadline had already passed. *See* D.I.

14  305. In fact, while negotiating the proposed modifications to the case schedule, Defendants

15  expressly declined to modify the amendment deadline. *See* Lanier Decl. ¶ 49.

16       After the May 28, 2009 Case Management Conference, the Court issued a Revised Case

17  Management and Pretrial Order. *See* D.I. 325 ("June 11, 2009 Order"). The June 11, 2009 Order

18  did not reset the March 20, 2009 deadline to amend the pleadings. *See* D.I. 325. Rather, the June

19  11, 2009 Order granted the parties' Rule 16(b)(4) motion as to some issues and gave Plaintiffs

20  leave to move to amend the complaint by July 15, 2009 specifically "to add Siebel-related claims

21  and any other claims or allegations agreed to by the Parties prior to July 15, 2009." D.I. 325 (¶ 5).

22  The June 11, 2009 Order further provided that "Should Plaintiffs intend to seek any other

23  amendment to the complaint, then Plaintiffs shall make *the appropriate motion(s)* no later than

24  August 26, 2009." D.I. 325 (¶ 5) (emphasis added).

25       In their Motion to Amend ("Motion"), Plaintiffs seek to add not only the Siebel-related

26  claims, but also three categories of contested amendments. *See* Lanier Decl. ¶¶ 10-13. The first

27  category consists of 20 additional, historic PeopleSoft registrations, which were registered six to

28  nine years before the initial complaint was filed. The second category consists of two recently-

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1   obtained registrations for PeopleSoft and J.D. Edwards ("JDE") "Database[s] of Documentary

2   Support," ("Knowledge Management registrations"), each purporting to cover an automated

3   database created in 2009 containing "thousands of 'knowledge management' solutions." *See id.*

4   ¶¶ 11-12. The third category consists of seven registrations for Oracle's database product, five of

5   which pre-date the initial complaint. *See id.* ¶ 13.

6          **B.      Plaintiffs' Knowledge of Their Potential Claims.**

7          Plaintiffs claim that due to late and complex discovery, they only recently learned or could

8   have learned about the purported issues underlying the contested amendments.  Their claims of

9   surprise and ignorance are patently false.  Plaintiffs have known about the "new" claims since

10  well prior to the amendment deadline, both from the extensive discovery produced by Defendants

11  as well as from information within Plaintiffs' own control.  Their misrepresentations regarding

12  Defendants' discovery attempt to cover up this knowledge.

13         At Plaintiffs' request and insistence, the scope of discovery sought from and produced by

14  Defendants has been significant.  In addition to over 60 depositions noticed and taken by

15  Plaintiffs and hundreds of written discovery requests, Defendants have produced substantial

16  volumes of data showing how TN provided customer service.  *See* Declaration of Joshua L. Fuchs

17  in Support of Defendants' Opposition to Plaintiffs' Motion to Amend ("Fuchs Decl.") ¶ 3.  To

18  date, Defendants have produced 7,896,044 Bates numbered pages, including data from 100

19  custodians, and in excess of 17 terabytes of other electronic data.  *See id.*

20         **1.      Scope and Accurate Timing of Relevant Discovery.**

21         Plaintiffs mischaracterize Defendants' document productions and the dates by which

22  Plaintiffs possessed information underlying the contested amendments.  To fully understand the

23  scope of Defendants' discovery and Plaintiffs' misrepresentations, a brief explanation of TN's

24  business is helpful.

25         Before October 31, 2008, when TN shut down operations, it provided third-party

26  maintenance and support for enterprise software applications, including various PeopleSoft

27  products.  These services included troubleshooting, developing "bug" fixes and providing tax and

28  regulatory updates.  For many customers, TN maintained development environments on its

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1    systems that were separated from the customer production environments and that were

2    maintained for the purpose of troubleshooting, developing and testing of individual fixes and

3    updates. *See id.* ¶ 21.  Generally, an environment is the hardware or software configuration, or

4    the mode of operation, of a computer system; an environment at TN could include "a database

5    and other software programs required to run an instance of that environment." *Id.* ¶ 17.

6            As a general practice, TN stored information relating to its support services in different

7    databases, including databases known as SAS, BakTrak and dotProject.  TN employees used the

8    SAS database to document the scoping (researching of an issue), development and testing of the

9    fixes and regulatory updates created for TN customers. *See id.* ¶ 8.  Moreover, TN employees

10   used BakTrak to track when and why TN customer environments and/or environment

11   components were backed-up and/or restored. *See id.* at ¶ 7.  Finally, the dotProject database

12   contains information regarding downloads TN made for customers, including the date the

13   downloads were completed and the credentials and product questionnaires provided by the

14   customer. *See id.* at ¶ 9.  While these databases are not perfect in every instance, they are by far

15   the best source of information regarding TN's service activities.  Declaration of Kevin Mandia in

16   Support of Oracle's Motion to Amend Complaint (D.I. 349) ¶ 6.  Defendants produced extensive

17   data from these TN services databases (SAS, BakTrak and dotProject). *See* Fuchs Decl. ¶¶ 3, 7-9.

18           The parties initially agreed to limit most productions to January 1, 2004 to March 22,

19   2007 (or shortly thereafter) time frame. *See id.* ¶ 4.  In November 2008, the parties entered into

20   an "Expanded Discovery Timeline Agreement," which expanded the production time frame for

21   specific subsets of data, including data from TN services databases.  The expanded time frame for

22   these limited sets of data went back to January 1, 2002 and up to October 31, 2008 (*i.e.*, the date

23   that TN's day-to-day business operations were wound down). *See id.* ¶ 5.

24           Plaintiffs misrepresent the timing of Defendants' document productions and thereby

25   mischaracterize the dates by which Plaintiffs possessed information underlying the contested

26   amendments.  Specifically, the production dates for the TN databases referenced in the motion

27   (SAS, BakTrak and dotProject) are not the original production dates for these materials.  Rather,

28   the dates Plaintiffs cite are the *supplemental* production dates completed pursuant to the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1   Expanded Discovery Timeline Agreement. *See id.* ¶ 6. In fact, Defendants completed production

2   of TN's services databases much earlier than Plaintiffs assert. Defendants produced all content

3   from BakTrak in one format on February 4, 2008 and produced the entire native version on

4   March 12, 2008. *See id.* ¶ 7. Defendants began producing SAS in native form in 2007,

5   completing production of the entire SAS database for all TN PeopleSoft and JDE customers on

6   December 4, 2007. *See id.* ¶ 8. Defendants produced dotProject on March 26, 2008. *See id.* ¶ 9.

7        In addition to all of this data, Defendants made TN's services and support servers

8   available to Plaintiffs for review through a "Data Warehouse" (a procedure permitting Plaintiffs

9   remote access review of images from TN's services and support servers and server partitions) in

10  July 2008. *See id.* ¶¶ 10-11. Defendants began producing (starting with metadata reports) from

11  the "Data Warehouse" in August 2008, and continued on a rolling basis. *See id.* ¶¶ 11-12. And,

12  by October 2008, Defendants had produced all responsive, non-privileged materials from one

13  server outside of the "Data Warehouse" procedures, which housed the majority of materials

14  downloaded by TN on behalf of its customers. Defendants later agreed to a limited production of

15  post-lawsuit information from the "Data Warehouse." *See id.* ¶ 13.

16               **2.   Plaintiffs Knew About Their Alleged Claims Related to the Additional
                       PeopleSoft Registrations at the Beginning of This Case.**

17

18       Plaintiffs could have asserted the 20 additional PeopleSoft registrations from the

19  beginning of this case. Plaintiffs' claims have always encompassed alleged infringement of

20  PeopleSoft software, including software subject to copyright registrations made long before the

21  case was filed. *See* Lanier Decl. ¶¶ 1, 2, 6, 8; Section IV(B)(1), *infra*. The "new" registrations at

22  issue in this motion were also all made *six to nine years before* the initial complaint was filed.

23  *See id.* ¶ 11. They cover release levels or discrete components of the *same* software lines at issue

24  in the case for years.

25       Plaintiffs unequivocally knew about TN's access to PeopleSoft software and

26  "environments" since *before* filing this lawsuit. For example, Oracle employee

27  testified

28                                              This information was then relayed to an attorney for Oracle.

1   *See* Fuchs Decl. ¶ 18, Ex. C-1.  Similarly, Oracle employee Edward Abbo testified regarding his

2   knowledge of a December 2006 article stating: "TomorrowNow set up a test environment at its

3   own site that mirrored Pomeroy's.  That way, when the solution was ready, it was straightforward

4   to implement on Pomeroy's systems."  *See id.* ¶ 19, Ex. C-2, K-1, K-2.

5           Moreover, discovery received by Plaintiffs long before the March 20, 2009 amendment

6   deadline also put Plaintiffs on ample additional notice of their potential claims related to access of

7   PeopleSoft software.  Starting August 6, 2007, TN began producing its customer contracts, which

8   document the PeopleSoft products TN supported for each customer.  *See id.* ¶ 35.  Defendants'

9   September 21, 2007 response to Interrogatory No. 9 and December 27, 2007 response to

10  Interrogatory 12 gave detailed information regarding both emergency backup copies of

11  PeopleSoft applications and development environments maintained by TN on behalf of some

12  customers.  *See id.* ¶¶ 21, 24.  Similarly, on October 30, 2007, former TN employee Mark Kreutz

13  testified that TN had some customers' demo environments on its systems.  *See id.* ¶ 22.  And, as

14  described above, by early 2008, Defendants had produced SAS, dotProject and the full native

15  version of BakTrak, together providing a fairly complete picture of TN's activities, customer

16  services and access to PeopleSoft software on behalf of TN's customers.  *See id.* ¶¶ 7-9.

17                    **3.     Plaintiffs Knew About Their Alleged Knowledge Management Claims.**

18          Plaintiffs delayed filing for their Knowledge Management registrations until July 1, 2009.

19  Each registration purports to cover an automated database created in 2009 containing "thousands

20  of 'knowledge management' solutions" for the JDE and PeopleSoft lines, respectively.  *See*

21  Lanier Decl. ¶ 12.  These solutions long predate 2009, though.  *See id.*  Plaintiffs' argument that

22  they could not have known before now to add these thousands of "solutions" is stunning, given

23  that every one of the four preceding complaints have specifically mentioned "knowledge

24  management."  *See id.* ¶¶ 1, 2, 6, 8.  In fact, Plaintiffs have known about TN's downloading of

25  PeopleSoft documents since *before* filing this lawsuit.  In anticipation of filing the lawsuit,

26  Plaintiffs reviewed "log entries, and other reports generated by Oracle's software, including

27  Change Assistant, [which] provide[s] the specific identifiers for the individual Software and

28  Support Materials requested at any given time . . . ."  *See* Fuchs Decl. ¶ 28.  Plaintiffs relied on

1    this information in drafting paragraphs 75-80 of the March 22, 2007 initial complaint, which

2    provided detailed statements concerning what Plaintiffs believed TN downloaded from the Oracle

3    Customer Connection website. *See id.* ¶ 28.

4        Discovery received by Plaintiffs has also put them on ample and additional notice that TN

5    was downloading materials now referred to as "Knowledge Management" documents on behalf

6    of its customers.  For example, since mid-2008, via the "Data Warehouse," Plaintiffs have

7    examined and requested software and support materials downloaded by TN on behalf of its

8    customers, including "Knowledge Management" documents. *See id.* ¶¶ 11-12, 29.  Moreover, the

9    server that Plaintiffs reviewed outside the Data Warehouse protocol housed the majority of

10    materials downloaded by TN on behalf of its customers.  Defendants completed production from

11    this server by October 2008, months before the amendment deadline. *See id.* ¶ 29.

12
13

> ### 4.    <u>Plaintiffs Cannot Hide Behind Discovery Disputes and Purport Ignorance of the Alleged Database Claims.</u>

14        Similarly, Plaintiffs have known about TN's access to Oracle databases in providing

15    customer service since at least early 2008.  This knowledge started (at least) with deposition

16    testimony, when, on February 6, 2008, TN 30(b)(6) witness John Baugh testified that TN

17    obtained its database platforms from a variety of vendors, including Oracle. *See id.* ¶ 31.

18        And there was additional, clear notice of this issue in documents produced by Defendants.

19    On February 8, 2008 and March 13, 2008, Defendants produced documents concerning Oracle

20    databases, including two e-mail communications between now-former TN employees regarding

21    TN's use of Oracle databases. *See id.* ¶ 32.  These are Exhibits M and N to the Declaration of

22    Chad Russell in Support of Oracle's Motion ("Russell Decl.").  Plaintiffs used these documents as

23    exhibits during a deposition in April 2009.  Defendants also produced *on* February 8, 2008 the

24    database-related document attached as Exhibit O to the Russell Decl. *See id.* ¶ 32.

25        Discovery on this topic did not stop in February 2008.  On April 1, 2008, former TN

26    employee Kathy Williams testified regarding the different component parts of an environment—

27    including the "relational database platform"—and TN's database naming conventions. *See id.* ¶

28    31.  On April 2, 2008, former TN employee Catherine Hyde also testified to these naming

1   conventions. *See id.* And, throughout the latter half of 2008, Plaintiffs had the opportunity to

2   review and select for production files from TN's servers containing database components as part

3   of the "Data Warehouse" production described above. *See id.* ¶ 33.

4         Bottom line, Plaintiffs knew of the claims they are now trying to add at least a year, if not

5   years, before the amendment deadline. The fact that there has been a lot of discovery does not

6   change Plaintiffs' knowledge. Nor, as shown below, does it excuse their dilatory conduct.

7   **III.   LEGAL STANDARDS**

8         **A.   Rule 16(b)'s "Good Cause" Standard Applies When the Deadline for a**
                 **Motion to Amend Has Passed.**

9

10         When a party moves to amend a complaint after the deadline to amend has passed, the

11   party must first satisfy Rule 16(b) of the Federal Rules of Civil Procedure, which governs

12   modifications to scheduling order deadlines. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271,

13   1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08, 610 (9th Cir.

14   1992); *RE: LAUNCH, LLC v. PC Treasures, Inc.*, No. C-05-0697 PJH, 2006 U.S. Dist. LEXIS

15   27673, at *2-3 (N.D. Cal. Apr. 28, 2006) (Hamilton, J.). Rule 16(b) provides that a pretrial

16   scheduling order "may be modified only for good cause and with the judge's consent." Fed. R.

17   Civ. P. 16(b). It is Rule 16(b)'s more stringent good cause standard, and not the more liberal

18   amendment procedures afforded by Rule 15 that governs a motion to amend filed past the

19   deadline for amending a pleading. *See Johnson*, 975 F.2d at 610 (noting that Rule 16's standards

20   may not be "short-circuited" by those of Rule 15 because "[d]isregard of the [scheduling] order

21   would undermine the court's ability to control its docket, disrupt the agreed-upon course of the

22   litigation, and reward the indolent and the cavalier"); *Lendall v. Chase Manhattan Mortgage*

23   *Corp.*, No. C 05-03295 WHA, 2006 U.S. Dist. LEXIS 81430, at *18-19 (N.D. Cal. Oct. 27, 2006).

24         Good cause depends on the diligence of the moving party, and "[a] lack of diligence alone

25   is grounds to deny leave to amend." *Lukovsky v. City & County of San Francisco*, No. C 05-

26   00389 WHA, 2006 U.S. Dist. LEXIS 26762, at *4 (N.D. Cal. Apr. 26, 2006); *see also Johnson*,

27   975 F.2d at 609 (holding that if the moving party was not diligent, "the inquiry should end"). To

28   meet the good cause standard, the moving party must show that despite its diligence, it could not

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1    reasonably have met the scheduling order deadline. *See, e.g., Lendall*, 2006 U.S. Dist. LEXIS

2    81430, at \*18-19; *RE: LAUNCH, LLC*, 2006 U.S. Dist. LEXIS 27673, at \*3; *Hannon v. Chater*,

3    887 F. Supp. 1303, 1319 (N.D. Cal. 1995). Prejudice to the non-moving party provides additional

4    justification to deny leave to amend under Rule 16(b). *See Johnson*, 975 F.2d at 609.

5          **B.**    **Even If "Good Cause" Is Shown, Rule 15(a) Must Also Be Satisfied.**

6          Even if a party succeeds in showing good cause for amendment under Rule 16(b), the

7    party must still establish that the post-deadline amendment is proper under Rule 15(a). *See*

8    *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Atmel Corp.*

9    *v. Authentec, Inc.*, No. C 06-2138 CW, 2008 U.S. Dist. LEXIS 10846, at \*3 (N.D. Cal. Jan. 31,

10    2008); *Hannon*, 887 F. Supp. at 1319 (denying plaintiff's motion to amend the complaint under

11    both Rule 16(b) and Rule 15(a)).

12          Under Rule 15(a), leave to amend a pleading is given "when justice so requires." Fed. R.

13    Civ. P. 15(a)(2). Although Rule 15(a) has a more permissive standard, leave to amend "is not to

14    be granted automatically." *Coleman*, 232 F.3d at 1294. In evaluating a motion to amend, a court

15    will consider whether the moving party is guilty of bad faith (or dilatory motive), undue delay or

16    prejudice to non-moving party. *See Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990);

17    *Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1236 (N.D. Cal. 2008) (denying amendment due to

18    plaintiff's undue delay, prejudice to defendant and the fact that plaintiff filed two previous

19    amended complaints).

20    **IV.**    **ARGUMENT: PLAINTIFFS' MOTION SHOULD BE DENIED AS TO THE**
                 **CONTESTED AMENDMENTS**

21

22          Plaintiffs' motion fails under Rule 16(b) because Plaintiffs could have asserted all three

23    contested amendments months or years before the amendment deadline. Plaintiffs are not entitled

24    to "liberal amendment" under Rule 15(a) because this motion is brought in bad faith, after undue

25    delay, to the great prejudice of Defendants.

26          **A.**    **Plaintiffs Must Move Under Both Rule 16(b) and Rule 15(a) Because They**
                 **Missed the Deadline to Amend.**

27

28          Plaintiffs must meet Rule 16(b)'s good cause standard because they filed this motion well

1   after the March 20, 2009 deadline to amend pleadings had expired. The Court's June 11, 2009

2   Order did not modify that deadline. Rather, it granted that part of the parties' joint Rule 16(b)

3   motion in which Plaintiffs had asked for permission to file a motion to amend to add the Siebel-

4   related claims, and set a July 15, 2009 deadline by which Plaintiffs could make this very specific

5   motion. See D.I. 325 (¶ 6); Lanier Decl. ¶¶ 49, 51. With regard to any other proposed

6   amendments, the June 11, 2009 Order stated "[s]hould Plaintiffs intend to seek any other

7   amendment to the complaint, then Plaintiffs shall make the *appropriate motion(s)* no later than

8   August 26, 2009." D.I. 325 (¶ 5) (emphasis supplied). In other words, the Court did not reset the

9   amendment deadline by which a party may move solely under Rule 15(a), rather it set a final

10  deadline by which Plaintiffs could seek leave to move to amend under both Rules 16(b) and 15(a).

11        **B.      Plaintiffs Fail to Meet the Rule 16(b) "Good Cause" Standard Because They
                    Were Not Diligent in Bringing This Motion.**
12

13        When a party inexplicably delays moving to amend until after the deadline to amend has

14  passed, the party has not acted diligently, and its motion to amend must be denied. *See Lendall*,

15  2006 U.S. Dist. LEXIS 81430, at *18-19 (denying amendment where plaintiff failed to articulate

16  "new" facts that explained why she filed the motion to amend after the deadline). Plaintiffs could

17  long ago have moved to add the contested amendments. Their lack of diligence is, alone, reason

18  to deny the Motion.

19                  **1.      Plaintiffs Could Have Asserted the Knowledge Management
                            Registrations and Historic PeopleSoft Registrations as Early as the
20                          Initial Complaint.**

21        As explained above, the Knowledge Management and historic PeopleSoft registration

22  amendments are purportedly based on information that has been in Plaintiffs' possession for a

23  long time. Plaintiffs have known of these issues since before the initial complaint was filed.

24  Plaintiffs' failure to earlier move to add these claims is inexplicable and illustrates their lack of

25  diligence.

26        Plaintiffs claim that delays in Defendants' production have prevented Plaintiffs from

27  learning which historic PeopleSoft product lines were infringed, and thus, which to include in the

28  complaint. *See* Motion at 7-10. Plaintiffs' misrepresentations of Defendants' production aside

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1   (*see* Section IV(C)(3), *infra*), Plaintiffs fail to disclose that other sources to which they had access

2   and actually based their Motion, including TN customer contracts and the SAS database, put them

3   on specific notice of these issues.  For one example, Plaintiffs allege that they only recently

4   learned that TN provided support for CRM version 8.4 SP1 as a result of Defendants' May 2009

5   supplemental production of the SAS database.  *See* Motion at 8; Russell Decl., ¶¶ 9-10, Ex. G, H.

6   However, a TN contract produced on November 9, 2007, shows that TN supported CRM version

7   8.4 SP1.  *See* Fuchs Decl. ¶ 36.  Further, the version of the SAS database that Plaintiffs

8   acknowledge was produced on December 4, 2007 is precisely the source that Plaintiffs could have

9   used to determine that many of the historic PeopleSoft registrations they now seek to add were

10  supported by TN.  *See id.* ¶¶ 8, 36.

11          Similarly, the Knowledge Management amendments are based on information Plaintiffs

12  have had in their possession since at least 2007.  As part of their investigation leading up to this

13  case, Plaintiffs generated reports that identified the software and support materials downloaded

14  from Plaintiffs' customer websites.  *See id.* ¶ 28.  Plaintiffs' access to the Data Warehouse in

15  2008 and the Rule 30(b)(6) testimony of TN, taken by Plaintiffs in 2007, constitute further

16  sources of information about the Knowledge Management solutions Plaintiffs had in their

17  possession well before the deadline for amendment.  *Id.* ¶¶ 29-30.  In light of Plaintiffs'

18  knowledge, Plaintiffs' last minute registration of these copyrights—months after the amendment

19  deadline and weeks *after* the Court discusses amendment with Plaintiffs—is both inexplicable

20  and inexcusable.

21          When a motion to amend seeks to add a new theory that is "fully congruent with the facts

22  alleged in [the] original pleading" and, thus, "should have been included therein," a court will

23  deny the motion.  *Hannon*, 887 F. Supp. at 1319.  The historic PeopleSoft registrations and the

24  Knowledge Management registrations purport to cover the exact type of material at issue in

25  Plaintiffs' very first complaint.  Starting with the March 22, 2007 complaint, and in each of the

26  three subsequent complaints, Plaintiffs have alleged improper access to and copying of

27  PeopleSoft and JDE software and support materials, including the types of "knowledge

28  management solutions" purportedly covered by the Knowledge Management registrations.  *See*

1   Lanier Decl. ¶¶1, 2, 6, 8.  Because Plaintiffs had copyright registrations for the historic

2   PeopleSoft registrations at least six years before filing the initial complaint, and because Plaintiffs

3   knew from their pre-lawsuit investigation which knowledge management solutions had been

4   downloaded, Plaintiffs could have asserted both claims when this case started or in any

5   subsequent complaint.  *See id.* ¶¶ 1, 2, 6, 8, 11.  Plaintiffs' failure to do so demonstrates a lack of

6   diligence and alone justifies denial of the motion.

7                    **2.    Plaintiffs Were on Notice of the Oracle Database Issue.**

8           Plaintiffs' justification for their delay in moving to amend to add the Oracle database

9   claims is that "the volume and complexity of discovery did not allow for thorough analysis."  *See*

10  Motion at 7.  Regardless of the volume and complexity of discovery, occasioned entirely by

11  Plaintiffs' scorched earth approach, Plaintiffs were put on express notice of TN's access to Oracle

12  databases as early as February 2008, and could have brought this motion before the amendment

13  deadline passed more than a year later.

14          As explained in detail in Section II(C)(3), *supra*, Plaintiffs took live testimony on

15  February 6, 2008 that TN used Oracle database software in connection with some PeopleSoft and

16  JDE applications software at TN.  *See* Fuchs Decl. ¶ 31.  Two months later, Plaintiffs obtained

17  additional testimony from TN witnesses confirming that TN used Oracle databases.  *See id* ¶ 31.

18  Furthermore, Defendants produced documents regarding potential purchase of Oracle database

19  licenses on February 8 and March 13, 2008.  *See. id.* ¶ 32; Russell Decl. Exs. M, N, O.  Yet,

20  despite claiming to have "found" these documents in Defendants' production on February 8, 2009,

21  Plaintiffs did not seek additional information about TN's use of the Oracle databases until they

22  deposed a former TN employee in April 2009—after the deadline for amendment had passed.

23  *See* Russell Decl., ¶ 21; Fuchs Decl. ¶ 31.  Moreover, despite having the opportunity in 2008 to

24  review and select for immediate production Oracle database files from the Data Warehouse,

25  Plaintiffs never did.

26          This Court has made clear that a plaintiff's failure to conduct a sufficient investigation of

27  the facts of its case, which would have earlier revealed the existence of a potential claim based on

28  information in the plaintiff's possession, does not constitute good cause for the belated filing of a

1    motion to amend. *See RE: LAUNCH, LLC*, 2006 U.S. Dist. LEXIS 27673, at \*3 (denying

2    amendment because plaintiff "failed to establish that it acted diligently in discovering the

3    availability of the new cause of action" and thus lacked good cause). Plaintiffs' failure to ask

4    follow-up questions during the depositions at which TN's use of Oracle databases was disclosed

5    or to seek any discovery related to the Oracle databases for an entire year does not show

6    Plaintiffs' diligence, but rather their lack thereof.

7         There was no other barrier to Plaintiffs bringing the database claims earlier. In fact, of the

8    seven database copyright registrations, five pre-date the initial complaint, one was registered on

9    January 16, 2009 and one was registered on June 29, 2009. *See* Lanier Decl. ¶ 13. Plaintiffs offer

10   no meaningful explanation for their delay in making these two registrations, and the first five

11   have long been available to assert.

12        *Trimble Navigation Ltd. v. RHS, Inc.* does not support Plaintiffs' claim that they acted

13   diligently in "discovering" the bases for the contested amendments and in moving to amend. *See*

14   No. C 03-1604 PJH, 2007 WL 2727164, at \*10-11 (N.D. Cal. Sept. 17, 2007). In *Trimble*, this

15   Court permitted a patent infringement defendant to amend its answer to assert inequitable conduct

16   five months after the amendment deadline had passed. *See id.* at \*10. Specifically, the Court

17   found that although the defendant possessed some evidence of inequitable conduct before the

18   amendment deadline, the defendant waited to move until it was able to obtain additional

19   information so that its amendment complied with the strict pleading standards for fraud. *See id.*

20   The Court found that although the amendment deadline had passed, the defendant had diligently

21   used the intervening time to develop its claim to meet the heightened pleading requirements. *See*

22   *id.* By contrast, Plaintiffs here have had all the information required to assert the continued

23   amendments for over a year before the amendment deadline, and do not assert claims that have a

24   heightened pleading standard. *Trimble* is no excuse for their delay.

25        **C.   Plaintiffs Brought This Motion in Bad Faith After Undue Delay, to the
          Prejudice of Defendants.**

26

27        Even if Plaintiffs could show good cause for bringing their motion long after the

28   amendment deadline, Plaintiffs' motion fails the separate Rule 15(a) standard because Plaintiffs

1 │ brought their motion in bad faith, after undue delay and to the prejudice of Defendants.  A court's

2 │ "discretion to deny leave to amend is particularly broad where plaintiff has previously amended

3 │ the complaint."  *St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l, Inc.*, 245 Fed. Appx. 588, 591-

4 │ 92 (9th Cir. 2007); *see Mullen*, 590 F. Supp. 2d at 1236.  That discretion should be exercised to

5 │ deny Plaintiffs' Motion.

6 │ **1.      Plaintiffs' Bad Faith in Bringing This Motion Justifies Denial.**

7 │ Courts deny leave to amend if the moving party brings the motion in bad faith or for a

8 │ dilatory motive.  *See e.g.*, *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002);

9 │ *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Robertson*

10 │ *v. Qadri*, No. 06-4624 JF (HRL), 2009 U.S. Dist. LEXIS 3790, at *7-8 (N.D. Cal. Jan. 15, 2009)

11 │ (finding that attempts to amend a claim with facts known prior to the complaint in order to avoid

12 │ dismissal was both bad faith and undue delay); *Brown v. Wireless Networks, Inc.*, No. C 07-4301

13 │ (EDL), 2008 U.S. Dist. LEXIS 36472, at *4 (N.D. Cal. Apr. 24, 2008) (Laporte, M.J.).  Further,

14 │ the longer a party waits to amend its complaint, the more likely it is that there is bad faith.

15 │ *Strickland v. Jewell*, 562 F. Supp. 2d 661, 668-69 (M.D.N.C. 2007) ("[T]he further the case

16 │ progresses, the more likely it is that the amendment will prejudice the opposing side or will help

17 │ support a finding of bad faith.").  Plaintiffs rely upon mischaracterizations and misrepresentations

18 │ to conceal their dilatory motives behind bringing this motion.  The Court should deny the Motion

19 │ in light of Plaintiffs' bad faith.

20 │ **(a)      Plaintiffs' stated rationale for the motion is contrary to what**
   │ **they told Magistrate Judge Laporte.**
21 │

22 │ Only three months ago, Plaintiffs told Judge Laporte that they had knowingly and

23 │ deliberately declined to assert copyright registrations beyond the "Registered Works" (the works

24 │ underlying the copyright registrations), claiming that adding more registrations was (1)

25 │ unnecessary and (2) too burdensome to include on an already bloated case.  *See* Lanier Decl. ¶ 27.

26 │ Plaintiffs' stated rationale for bringing this Motion is flatly inconsistent with the positions

27 │ Plaintiffs took with Judge Laporte.  This suggests that Plaintiffs' true goal is not to conform their

28 │ pleading with facts, but to improperly delay resolution of this case.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1    Plaintiffs claim that the "Second Amended Complaint did not include every possible

2    relevant registration," because Plaintiffs received inadequate discovery responses and delayed

3    productions of information and because discovery has been so voluminous and complex. *See*

4    Motion at 7. Plaintiffs also claim that they did not realize that the historic PeopleSoft

5    registrations would be at issue in this case until Defendants filed their motion to compel

6    information about the preexisting works underlying the derivative Registered Works. *See* Motion

7    at 10-11. These statements are belied by Plaintiffs' statements to Judge Laporte only three

8    months ago. Lanier Decl. ¶¶ 27-28.

9        In particular, in responding to Defendants' motion to compel copyright information,

10   Plaintiffs told Judge Laporte that they deliberately had chosen not to assert infringement of

11   registrations beyond the Registered Works because doing so would be too burdensome:

12       Not wanting to overload an already robust Complaint with every registered version of
         every software release that it owns, and which may form some of the code base of later
13       works that SAP infringed, Oracle alleged infringement of certain of the actual versions of
         software that SAP copied, distributed and stored on its systems.
14

15   D.I. 299 at 7; Lanier Decl. ¶ 27. Moreover, Plaintiffs specifically represented to Judge Laporte

16   that they believed the addition of the historic PeopleSoft registrations is "entirely unnecessary

17   because all of the code encompassed by these additional registrations, for which Oracle alleges

18   infringement, is already in the case through the derivative registrations Oracle obtained and

19   plead." *See id.* ¶ 28.

20       Plaintiffs' statements to Judge Laporte show that Plaintiffs not only were aware that

21   copyright registrations beyond the Registered Works might be an issue, but also deliberately

22   chose not to assert these registrations and believe that it is not necessary to add them. As a result,

23   Plaintiffs have no excuse and, they acknowledge, *no reason* to add the contested amendments at

24   this late date. *See* Motion at 12 ("Oracle should be entitled to add all sixty-three registrations

25   implicated by Defendants' argument as a precautionary measure, *while reserving its rights as to*

26   *their relevance*.").

27       Plaintiffs' motion now raises an intriguing question—how did they know enough in April

28   2007 to obtain the PeopleSoft registrations they added in the First Amended Complaint, but

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1   couldn't know until now to add their registrations <u>already</u> made related to the same products?

2   The answer is that the claim of ignorance is false, made only to excuse their delay and negligence.

3   That is bad faith objectified.

4               **(b)     Plaintiffs' characterizations of Defendants' production are**
5                        **misleading.**

6        Plaintiffs' bad faith is punctuated by misrepresenting that they only learned that certain

7   works were at issue upon receiving Defendants' production of certain databases and information

8   after the March 20, 2009 deadline for amendment had passed.  *See* Motion at 7.

9        As shown above, the production dates for BakTrak, SAS and dotProject referenced in

10  Plaintiffs' Motion only represent the supplemental production dates for post-lawsuit content

11  completed per the November 2008 Expanded Discovery Timeline Agreement—not, as the

12  Plaintiffs' misleadingly suggest, the original production dates for the materials.  *See* Fuchs Decl.

13  ¶ 6.  In claiming that BakTrak was "produced in full on April 20, 2009," Plaintiffs omit that

14  Defendants produced the native version, with content through February 2008, on March 12, 2008.

15  *See id.* ¶ 7.  Similarly, in stating only that "a more complete version of the SAS database" was

16  produced on March 6, 2009, Plaintiffs omit that Defendants produced on December 4, 2007 the

17  *entire* SAS database, containing records through the end of April 2007.  *See id.* ¶ 8.  Finally, in

18  representing that dotProject was "produced in full on May 8, 2009," Plaintiffs omit that

19  Defendants produced the *entire* dotProject database, through the end of June 2007, to Plaintiffs on

20  March 26, 2008.  *See id.* ¶ 9.  The later productions of BakTrak, SAS and dotProject, respectively,

21  simply supplement the earlier, complete productions with data through October 31, 2008,

22  pursuant to the Expanded Discovery Timeline Agreement.  *See id.* ¶¶ 6-9.

23       Second, Plaintiffs misrepresent the date on which information from the Data Warehouse

24  became available and the reasons that production from the Data Warehouse is ongoing.  Plaintiffs

25  claim that "Defendants did not begin producing (and thus Oracle's experts could not review) Data

26  Warehouse images until October 25, 2008."  Motion at 9.  In fact, 52 partitions from TN's

27  support servers were made available for review starting in July 2008.  *See* Fuchs Decl. ¶ 11.

28  Defendants began rolling productions (starting with metadata reports) from the Data Warehouse

1   in August 2008, completing production of files requested by Plaintiffs by February 9, 2009, over

2   a month before the deadline to amend. *See id.* ¶ 11. In claiming that the Data Warehouse

3   production "is still not finished," Plaintiffs fail to disclose that the only remaining review and

4   productions relate to Plaintiffs' specific request to review data under the Expanded Discovery

5   Timeline Agreement and Plaintiffs' March 16, 2009 request that Plaintiffs be allowed to review

6   three additional servers in the "Data Warehouse." *See id.* ¶ 16.

7       Finally, Plaintiffs' suggestion that they were unaware of the valuable information in

8   BakTrak, SAS, dotProject and the Data Warehouse until Defendants amended their discovery

9   responses is ludicrous. *See* Motion at 7. Plaintiffs demanded all this data, at great expense to

10  Defendants, and presumably reviewed it during the long time it has been available. In fact,

11  Plaintiffs have extensively used and referenced data from all four sources throughout discovery,

12  including using printouts from those sources as hundreds of deposition exhibits. Fuchs Decl. ¶ 3.[1]

13      Plaintiffs' misrepresentations to the Court regarding when they received information

14  appear designed to conceal that Plaintiffs have not been diligent in their own review of

15  Defendants' production, that they have unduly delayed in moving to amend and that their true

16  aim is to delay resolving this case. These misrepresentations are part of a continuing pattern. For

17  example, in January 2008, the Original Plaintiffs informed Defendants (and in April 2008, the

18  Court) that they planned to amend a second time, but could not do so until they "obtained"

19  additional registrations. *See* Lanier Decl. ¶¶ 3-5. This statement was false. When the Original

20  Plaintiffs finally filed the Second Amended Complaint ("SAC") on July 28, 2008, *all* of the

21  additional registrations *pre-dated* the First Amended Complaint ("FAC"). *See id.* at ¶ 5.

22      Similarly, the Original Plaintiffs also claimed that the amendments in the SAC were

23  necessary because "discovery in this case has revealed that" TN housed software environments on

24  its computers. D.I. 132 (¶ 14); *see* Motion at 5. However, subsequent deposition testimony

25  clearly establishes Plaintiffs knew about TN's use of environments before filing the initial

26  complaint, having learned this information from ████████ and periodicals as early as 2006.

27  *See* Fuchs Decl. ¶¶ 18-19.

   ――――――――――――

28      [1] *Both* sides provided supplemental discovery responses, on May 22, 2009. *See* Fuchs
    Decl. ¶ 27 n.2.

1   Most importantly, Plaintiffs' misrepresentations about discovery miss the point—

2   Plaintiffs *already knew* about their alleged "new" claims. Whether additional discovery would

3   have provided more details, Plaintiffs cannot hide their actual knowledge of the bases for the

4   contested amendments a year or more before the amendment deadline.[2]

5                    (c)   **Plaintiffs mischaracterize the contested amendments as
                          "conforming" amendments.**
6

7   Finally, Plaintiffs also mischaracterize the contested amendments as "conforming

8   amendments" to hide the fact that such amendments would result in further expansion of the

9   issues in this case and would require more time and discovery than can be accomplished on the

10  court schedule. Contrary to Plaintiffs' assertions, amendment of the complaint to add the Oracle

11  database, Knowledge Management and historic PeopleSoft amendments would be neither

12  "conforming" nor "routine."

13  Plaintiffs inaccurately state that the contested amendments add no new claims to the case.

14  In fact, the contested amendments seek to add 29 new claims for copyright infringement. As

15  Plaintiffs' acknowledge in the Motion, the claims for infringement of the Oracle databases

16  implicate an entirely different type of technology from the software applications that have been in

17  issue. *See* Motion at 12. In addition to the new copyright claims related to Oracle's database

18  technology, the contested amendments include allegations that TN breached an additional

19  contract—the Developer's License that Plaintiffs represent governs the use of the Oracle database

20  technology. *See* D.I. 348-1 (¶¶ 105, 124). Similarly, the Knowledge Management registrations

21  constitute a wholly different type of copyright registration (*i.e.*, an "automated database"

22  registration) from the type previously asserted in the case and require critical additional discovery

23  [2] It is worth noting that Defendants did not respond to the SAC, because after Defendants
    advised that they would move to dismiss the SAC, on August 28, 2008, the Original Plaintiffs
24  informed Defendants that they planned once more to seek leave to amend to make "some
    adjustment to the plaintiff entities currently described in the [SAC]." This followed Plaintiffs'
25  purported "discovery" of inter-company assignment, distribution and cost-sharing agreements
    relating to ownership of the copyrights-in-suit ("inter-company agreements"). *See* Lanier Decl. ¶
26  7. The Original Plaintiffs subsequently produced 18 inter-company agreements. *See id.* On
    October 8, 2008, Plaintiffs OUSA, OIC and OEMEA, along with now-former plaintiffs J.D.
27  Edwards Europe Limited ("JDEE") and Oracle Systems Corp. ("OSC"), filed the TAC. *See id.*
    ¶ 8. Based on the inter-company agreements, Defendants successfully moved to dismiss JDEE
28  and OSC from the case. *See id.* ¶ 9.

1  (including information related to whether these registrations are even proper). *See* Lanier Decl.

2  ¶ 12. And, Plaintiffs admitted to Judge Laporte in April of this year that this case has not

3  included the 20 historic PeopleSoft registrations, which Plaintiffs claimed they did not assert

4  because doing so would be unnecessary, burdensome on discovery and would "overload an

5  already robust Complaint." *Id.* ¶ 27. For these reasons, the contested amendments are not

6  "conforming" and should require extensive additional discovery, analysis and likely motions.

7       Plaintiffs' characterization of the contested amendments as "conforming" is also directly

8  inconsistent with the positions Plaintiffs have taken in communications with Defendants.

9  Plaintiffs have consistently maintained that if Defendants did not stipulate to amendment,

10  Plaintiffs reserved their right to bring a separate lawsuit based on the contested amendments. *Id.*

11  Ex. E. Plaintiffs maintain this position even in light of the black letter rule that a lawsuit based on

12  the "same transactional nucleus of facts" as a previous lawsuit will be barred under the doctrine

13  of *res judicata. Durney v. WaveCrest Labs., LLC*, 441 F. Supp. 2d 1055, 1060 (N.D. Cal. 2005).

14  Despite representing to Defendants their belief that the contested amendments were sufficiently

15  different from the existing claims to ground a separate lawsuit, Plaintiffs now (correctly) tell the

16  Court that the "additional registrations arise from the same basic set of operative facts already

17  included in Oracle's complaint." Motion at 16.

18       Plaintiffs told Defendants that the new issues could justify a separate lawsuit and told

19  Judge Laporte that they would overload the case. Plaintiffs now tell the Court that these

20  amendments are merely conforming. This "inconsistency" can only be interpreted as a bad faith

21  effort to conceal the fact that Plaintiffs' belated amendments have been brought for the improper

22  purpose of delaying the resolution of the issues in this case.

23           **2.**   **Plaintiffs Unduly Delayed Bringing This Motion.**

24       The undue delay factor under Rule 15(a) is similar to the lack of diligence consideration

25  under Rule 16(b). Undue delay occurs "when a party has filed a motion for leave to amend long

26  after it should have become aware of the information that underlies that motion." *Scognamillo v.*

27  *Credit Swisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1157 (N.D. Cal. 2008); *see also*

28  *AmerisourceBergen Corp.*, 465 F.3d at 953 (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385,

1   1388 (9th Cir. 1990)) ("[I]n evaluating undue delay, [the question is] "whether the moving party

2   knew or should have known the facts and theories raised by the amendment in the original

3   pleading."). Although delay alone is generally insufficient to deny a motion to amend, late

4   amendment is "not reviewed favorably when the facts and the theory have been known to the

5   party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of*

6   *Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). For this reason, courts

7   have found that a moving party's delay in discovering information relevant to the amendment

8   constitutes undue delay. *See Scognamillo*, 587 F. Supp. 2d at 1157-58 (denying motion to amend

9   when the amendments were based on documents that defendants had produced more than a year

10  before the motion, despite plaintiff's argument that these documents had been buried in a large

11  production and the significance of these documents was only revealed as a result of subsequent

12  discovery); *Brown v. Wireless Networks, Inc.*, 2008 U.S. Dist. LEXIS 36472, at *4.

13          As discussed in detail in Section IV(B), *supra*, the contested amendments are all based on

14  information Plaintiffs have possessed for more than a year. Plaintiffs' lack of diligence in

15  investigating the bases for the contested amendments and in moving to amend to include claims

16  that could have been brought in the initial complaint constitutes undue delay, which weighs in

17  favor of denying Plaintiffs' Motion. Given the length of Plaintiffs' delay, their numerous

18  previous opportunities to amend and the need to bring this case to closure, Plaintiffs' delay here

19  justifies denial of the motion.

20                    **3.      Defendants Will Be Prejudiced by Late Amendment.**

21          Defendants will be prejudiced if Plaintiffs are permitted to add their substantial, non-

22  conforming amendments at this late date. Prejudice to the non-moving party is a proper basis on

23  which to deny a motion to amend, particularly where the plaintiff seeks to amend a complaint late

24  in litigation. *See Scognamillo,* 587 F. Supp. 2d at 1155-56 (finding undue prejudice and delay

25  where plaintiffs filed a motion to amend 12 weeks before the discovery cutoff and "[g]ranting

26  leave to amend . . . would require extensive additional discovery on entirely new topics and the

27  redeposition of witnesses, on top of the significant discovery that has occurred to date").

28  "Prejudice typically arises where the opposing party is surprised with new allegations which

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1    require more discovery or will otherwise delay resolution of the case." *Atmel Corp.,* 2008 U.S.

2    Dist. LEXIS 10846, at *5-6; *see In re Fritz Cos. Secs. Litig.*, 282 F. Supp. 2d 1105, 1109 (N.D.

3    Cal. 2003); *AmerisourceBergen Corp.*, 445 F.3d at 1137 (finding that permitting plaintiff to

4    "advance different legal theories and require proof of different facts" with eight months of

5    discovery remaining would prejudice defendant "by forcing it to undertake burdensome discovery

6    and would have unnecessarily delayed final judgment").

7            As described in Section IV(C)(1)(a) *supra*, because the contested amendments are not

8    conforming amendments, Defendants would need to conduct extensive additional discovery of

9    entirely new topics and new registrations if amendment is permitted.  With respect to the Oracle

10   database amendments, Defendants would need—at the very least—to conduct from scratch

11   discovery and analysis of the technology implicated, the copyright registrations and works

12   themselves, and the license(s) at issue.  Defendants would also need information regarding

13   Plaintiffs' damages theory for this new category of infringement.  Defendants would need to

14   identify and depose knowledgeable witnesses and corporate representatives.  With respect to the

15   Knowledge Management registrations, Defendants would require extensive information about the

16   form, manner and coverage of the registrations.  And for all of the 29 registrations included in the

17   contested amendments, Defendants would require information regarding the works purportedly

18   covered, any preexisting underlying works, relevant inter-company agreements related to

19   ownership and licensing, mapping of the registrations to products alleged to have been supported

20   and/or downloaded by TN and relevant financial information regarding the profitability of the

21   works covered, all of which would require additional written discovery and/or re-deposition of

22   certain witnesses (*e.g.*, Plaintiffs' Rule 30(b)(6) witnesses designated to testify regarding inter-

23   company licensing arrangements and copyright registrations procedures).

24           By the time this Court considers the Motion, there will only be three and a half months

25   left in discovery.  This is simply not enough time for Defendants to conduct the discovery

26   necessary to properly defend 29 additional claims of copyright infringement, particularly in light

27   of the limited discovery tools remaining, the expansion of the case due to the Siebel amendments

28   and Plaintiffs' history of resisting critical copyright-related discovery.  It took Plaintiffs over *two*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)

1   *years* to produce copies of the Registered Works and over a year to produce highly relevant

2   documents evidencing ownership and licensing of the Registered Works. *See* Lanier Decl. ¶¶ 14-

3   20, 31-40. Plaintiffs have still not provided requested information regarding preexisting works

4   and financial information related to the Registered Works. *See id.* ¶¶ 21-30, 41-42. It is simply

5   not reasonable for Plaintiffs to expect that Defendants could obtain necessary discovery for the

6   already expansive issues currently in the case, the allegations regarding Siebel and post-litigation

7   conduct contained in the unopposed amendments *and* the non-conforming contested amendments.

8        The prejudice to Defendants is made more acute by the fact that Plaintiffs are asserting

9   now and would add dozens of so-called "derivative works." *See id.* ¶ 11. A derivative work is "a

10   work based upon one or more preexisting works." 17 U.S.C. § 101. Even though a critical

11   question in analyzing alleged derivative works is determining what is new and what is not (*i.e.*,

12   what the registration itself covers and what it does not), Plaintiffs have long resisted providing

13   this basic information. In fact, it has taken two years and three motions to compel for Plaintiffs to

14   start providing basic information about the Registered Works they have (or should have) under

15   their complete control. *See* Lanier Decl. ¶¶ 14-20, 22-30.

16        Adding more than two dozen additional registrations to this case would only exacerbate

17   the delays and add to the prejudice to Defendants. In fact, Plaintiffs have taken inconsistent

18   positions on why they seek to add "new" (actually years-old, but belatedly asserted) registrations

19   to this case. Plaintiffs originally informed Defendants that they wished to amend the complaint to

20   add 63 additional copyright registrations, including historic PeopleSoft registrations. Plaintiffs

21   argued then, however, that they did not "believe *any* of these registrations [were] relevant or

22   necessary . . . ." *See id.* ¶ 47 (emphasis added). But when opposing Defendants' motion to

23   compel, Plaintiffs argued that they had chosen not to assert infringement of the preexisting works

24   because doing so was unnecessary, burdensome on discovery and would "overload an already

25   robust Complaint." *See id.* ¶ 27. Plaintiffs further claimed that if Judge Laporte granted the

26   motion to compel, Plaintiffs would be forced to add registrations for the preexisting works to their

27   complaint. *See id.* ¶ 28. At the May 27, 2009 hearing on the motion, Judge Laporte disagreed

28   that Plaintiffs would need to add the preexisting work registrations to the complaint if she granted

1  Defendants' motion.  In fact, Judge Laporte described Plaintiffs' argument as a "red herring."

2  *See id.* ¶ 29, Ex. D.  Plaintiffs do not tell one, consistent story (and story it is) about their motives.

3  But, except on this Motion, everyone agrees that adding more registrations, particularly those

4  years old, would overwhelm the case.  They should not be added now.

5       Judge Laporte agreed with Defendants that, while it is "up to the trial judge" whether

6  Plaintiffs may amend the complaint, it is "way too late" to be adding registrations.  *See id.* ¶ 29.

7  The prejudice to Defendants, already severe and only to be increased by more amendment, is yet

8  another, compelling, reason why it is way too late to amend this complaint again.

9  **V.    CONCLUSION**

10       For all of these reasons, this Court should deny Plaintiffs' Motion to Amend Complaint as

11  to the contested amendments.  It is time for all of the current issues already in the case to be

12  joined and this case resolved.

13  Dated:  July 29, 2009               JONES DAY

14

15                              By: /s/ Tharan Gregory Lanier
                                    Tharan Gregory Lanier

16                              Counsel for Defendants
                            SAP AG, SAP AMERICA, INC., and

17                              TOMORROWNOW, INC.

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINT
Case No. 07-CV-1658 PJH (EDL)