# EXHIBIT D

| | |
|---|---|
| 1 | BINGHAM McCUTCHEN LLP<br>DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468)<br>HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009)<br>BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center<br>San Francisco, CA 94111-4067 |
| 5 | Telephone: (415) 393-2000<br>Facsimile: (415) 393-2286 |
| 6 | donn.pickett@bingham.com<br>geoff.howard@bingham.com |
| 7 | holly.house@bingham.com<br>zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |
| 9 | DORIAN DALEY (SBN 129049)<br>JENNIFER GLOSS (SBN 154227) |
| 10 | 500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070 |
| 11 | Telephone: (650) 506-4846<br>Facsimile: (650) 506-7114 |
| 12 | dorian.daley@oracle.com<br>jennifer.gloss@oracle.com |
| 13 | |
| 14 | Attorneys for Plaintiffs<br>Oracle USA, Inc., Oracle International Corporation, and<br>Oracle EMEA Limited |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br>SAP AG, *et al.*,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES**<br><br>**CONTAINS CONFIDENTIAL INFORMATION DESIGNATED PURSUANT TO PROTECTIVE ORDER** |

| | | |
|---|---|---|
| PROPOUNDING PARTY: | | Defendant TomorrowNow, Inc. |
| RESPONDING PARTY: | | Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited |
| SET NUMBER: | | One |

Pursuant to Federal Rule of Civil Procedure 26(e) and 33, plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") hereby further supplement and amend their responses and objections to defendant TomorrowNow, Inc.'s ("SAP TN") First Set of Interrogatories.

## GENERAL OBJECTIONS

1. The following General Objections are incorporated into each specific Response below as if fully repeated in each Response. Any failure to repeat all or any part of these General Objections in a specific Response shall not constitute a waiver or relinquishment of such objections.

2. Oracle's answers to any Interrogatory shall be without prejudice to, and shall preserve, any objections that it may have to the competence, relevance, materiality, or admissibility of any of the Interrogatories, the Responses, and their subject matter at any hearing or trial in this action.

3. Oracle objects to the Interrogatories to the extent they purport to obligate Oracle to respond in any manner that exceeds or is inconsistent with the requirements of the Federal Rules of Civil Procedure or any other applicable laws. Oracle shall respond to the Interrogatories to the extent and in the manner required by the Rules.

4. Oracle objects to each Interrogatory to the extent that SAP AG, SAP America, Inc., or SAP TN (collectively, "defendants") seek information that is not within Oracle's possession, custody, or control, including without limitation information that is in the possession of Oracle's or defendants' customers. Oracle will respond to the Interrogatories based only on information in its own possession, custody, or control, as required by the Federal

Rules of Civil Procedure.

5. Oracle objects to these Interrogatories to the extent they are compound. When compound Interrogatories are separated into their distinct subparts, SAP TN has served 21 Interrogatories, not 15.

6. Oracle objects to each Interrogatory to the extent it seeks disclosure of information protected from discovery by the attorney-client, common interest, work product, witness statement, and/or party communications privileges, the privileges and exemptions from discovery afforded to materials prepared in anticipation of litigation or in preparation for trial, and all other applicable privileges. Oracle does not intend to disclose such protected information.

7. Oracle objects to the Interrogatories to the extent they purport to obligate Oracle to respond in any manner that exceeds or is inconsistent with the requirements of the Federal Rules of Civil Procedure or any other applicable laws. Oracle shall respond to the Interrogatories to the extent and in the manner required by the Rules.

8. Oracle's investigation into the facts of the case is ongoing. These Responses are made based on Oracle's knowledge to date. Oracle reserves the right to supplement these Responses and will amend these Responses as required at an appropriate time pursuant to Federal Rule of Civil Procedure 26(e). Oracle further objects to the need for further supplementation of these responses to the extent the additional or corrective information has otherwise been made known to the other parties during the discovery process or in writing, pursuant to Federal Rule of Civil Procedure 26(e). Oracle is not required to summarize and/or synthesize every fact disclosed in discovery in these responses. These responses are without waiver to Oracle's ability to rely on additional and different facts at trial.

**OBJECTIONS TO DEFINITIONS**

1. Oracle objects to the definition of "Customer Connection" as divergent from the parties' agreed-upon definition in the draft Preservation Order. Oracle will interpret "Customer Connection" as the Oracle-maintained support website for PeopleSoft and J.D. Edwards customers and all associated Software and Support Materials, Documents, Data, and

1 Tangible Things, hardware, software, physical server locations, and internet protocol addresses, including those available via Change Assistant.

2. Oracle objects to the definition of "Customer Contracts" as overbroad, unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence. The definition includes contracts that are irrelevant to this litigation.

3. Oracle objects to the definitions of "Named Customers" and "TN Customer" as inconsistent with the current list of applicable TomorrowNow customers, as set forth in Defendant TomorrowNow, Inc.'s Supplemental Exhibit 1 to its First Sets of Requests for Production. Oracle will interpret "Named Customers" and "TN Customer" when used together to mean the full list of TomorrowNow customers set forth in Defendant TomorrowNow, Inc.'s Supplemental Exhibit 1 to its First Sets of Requests for Production.

4. Oracle objects to the definition of "Software and Support Materials" as overbroad, unduly burdensome, and divergent from the parties' agreed-upon definition in the draft Preservation Order. Defendants' definition includes materials available not only on Customer Connection but also on "any similar Oracle support website or File Transfer Protocol ("FTP") site." Oracle FTP sites and support websites, other than Customer Connection, Metalink and SupportWeb, are not at issue in this litigation, and so defendants' definition calls for irrelevant materials and would impose an excessive burden on Oracle. Oracle will interpret "Software and Support Materials" to mean, without limitation, all program updates, software updates, bug fixes, patches, custom solutions, and instructional materials, created or owned by Oracle, or derived from, copied from or based on any such materials, including by SAP or TN, across the entire family of PeopleSoft, Siebel and/or J.D. Edwards branded products.

### OBJECTIONS TO INSTRUCTIONS

1. Oracle objects to the time period set by Instruction No. 4, which is "January 1, 2002 through the date of response," as overbroad and unduly burdensome to the extent that it imposes a burden or obligations different from or additional to the agreement the parties have reached regarding production of information before 2004 and after the filing of the litigation.

## RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in as much detail as possible Oracle's investigation of the activities alleged in the Complaint ("the investigation"), including the date the investigation began, the date it was completed, how the investigation was conducted, including any computer forensics tools or other software applications that were used, the sources of information, including documents reviewed and persons consulted, the results of the investigation, and the identities of all persons and entities involved in, or knowledgeable about, the investigation, including, for each person, their name, business address, job title (currently and at the time of the investigation), and role in the investigation, and for each entity, the name, business address, role in the investigation, and affiliation, if any, with Oracle.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

In addition to its General Objections, Oracle objects that its factual investigation, which has taken many Oracle employees months to conduct and is not yet complete, is too complex and detailed to describe in an Interrogatory Response. Oracle further objects that the Interrogatory is compound and actually consists of many Interrogatories. Oracle also objects that its investigation into the circumstances of defendants' intrusion into and theft from Oracle's systems is not yet complete. This Response does not reflect work done and analysis made by Oracle's experts. Oracle further objects to the extent the Interrogatory purports to require Oracle to create a compilation, abstract, or summary from business records that Oracle has already produced or will produce and to summarize the documents and testimony provided on this subject, including by Oracle's 30B6 witness on this topic; Oracle cannot and will not and is not required to do so and incorporates all such evidence by reference into this supplemented answer. Oracle further objects to the extent that this Interrogatory calls for information protected by the attorney-client or work product privileges.

Subject to and without waiver of these objections, Oracle responds as follows:

Beginning in fall 2006, members of Oracle's Product Support team led by observed unusual activity and behavior by some Customer Connection users. This behavior

1   included the use of inconsistent user IDs as well as unusual patterns of downloads. The Product
2   Support team requested investigative assistance from the Global Information Security ("GIS")
3   team, which assists in internal Oracle investigations relating to Oracle's computer systems.
4   Other Product Support team members led by             later discovered spikes in the number of
5   Customer Connection users who responded that searches had not solved their problems. These
6   spikes seemed to indicate unusually heavy activity on Customer Connection, as numerous
7   download requests were being made at short intervals, separated only by seconds. In each
8   instance, the Product Support teams requested investigative assistance from the GIS team.

9      To determine the source of the downloads, GIS personnel,
10  examined Oracle's internet and application server logs, including its reverse
11  proxy, Siteminder, and application server logs. Certain of these logs record download requests
12  made by users logged in to Customer Connection. The logs also record additional information,
13  including in some cases the internet protocol address ("IP address") from which that request
14  originated. By reviewing these server logs, Oracle determined that much of the download
15  activity originated from one particular IP address, 209.189.228.98. As an experiment, Oracle
16  shut down access to Customer Connection for that address; soon after, an essentially identical
17  pattern of download requests began coming from another IP address, 209.189.228.126.

18      Every IP address has a registered owner. Oracle used the publicly-available WHOIS
19  query/response protocol to determine the owner of the two IP addresses. Both are registered to
20  SAP TN, headquartered in Bryan, Texas.

21      After identifying the involved IP addresses, Oracle searched its server logs for all
22  publicly-known SAP TN IP addresses, including 209.189.228.98 and 209.189.228.126, using a
23  start search date of September 2006 (and ending with a date shortly before Oracle filed its
24  original complaint in this case). The search used by GIS extracted available information
25  associated with the download requests originating from the SAP TN IP addresses. The resulting
26  analysis revealed that of SAP TN's IP addresses, only 209.189.228.98 and 209.189.228.126 were
27  used to connect to Customer Connection. The resulting reports showed all log entries originating
28  from those two SAP TN IP addresses.

In addition to the IP address information noted above, the server logs and the reports created from them indicate when a download request is made from a particular IP address using a particular set of log-in credentials (user ID and password). In some cases, the logs also capture a company name, company ID, and identifying information related to the requested Software and Support Materials. The company ID field is constant – it is tied to the original log-in credentials for each specific customer. Using this field, Oracle can determine whose log-in credentials (*i.e.*, which customer) are being used from a particular IP address. If the user has supplied other information, for example by using the Change Assistant tool, the logs may reflect that additional information as well, such as the user name, telephone number, and email address inputted by the user.

Because each user ID and password used by SAP TN to log in to Customer Connection is connected to a specific customer account, and also to the requesting IP address, the log entries link the SAP TN requests to many different Oracle support customer accounts. From the data in the log entries, Oracle initially determined that SAP used log-in credentials of the following customers to access and download Software and Support Materials: Abbott Laboratories, Abitibi-Consolidated Inc., Bear, Stearns & Co., Berri Limited, Border Foods, Caterpillar Elphinstone, Distribution & Auto Service, Fuelserv Limited, Grupo Costamex, Helzberg Diamonds, Herbert Waldman, Honeywell International, Interbrew UK, Laird Plastics, Inc., Merck & Co., Metro Machine Corp., Mortice Kern Systems, Inc., National Manufacturing, NGC Management Limited, OCE-Technologies B.V., Ronis SA, Smithfield Foods, SPX Corporation, Stora Enso, Texas Association of School Boards, VSM Group AB, and Yazaki North America.

These same log entries, and other reports generated by Oracle's software, including Change Assistant, provide the specific identifiers for the individual Software and Support Materials requested at any given time, using the log-in credentials of any given customer, originating from any given IP address. Oracle analyzed these log entries and determined that, since at least September 2006, Customer Connection had received hundreds of thousands of requests for Software and Support Materials from SAP TN IP addresses. From the logs, Oracle identified the specific product identification information for these requests. The Product Support

1  team took this information and assessed for certain categories of downloads whether the
2  customer whose credentials SAP TN used for a particular download had a right to that
3  downloaded material.
4       During its analysis, Oracle also observed and concluded that SAP TN navigated the site
5  and downloaded Software and Support Materials in unusual ways. For example, when a
6  customer queries Customer Connection for knowledge solutions, the customer is prompted to
7  respond whether the search results satisfied the customer's issue or not. When the user clicks the
8  "no" response, Customer Connection takes that customer back to the initial query results. Thus,
9  a long series of "nos" will take a customer through all of the available knowledge solutions
10 responsive to a query. The logs demonstrate that SAP TN's knowledge solution searches were
11 extremely rapid incremental searches, with the "user" repeatedly clicking the "no" response at
12 the survey page. Oracle concluded that SAP TN users had probably employed an automatic
13 search script to select "no" after every search response in order to most rapidly download all of
14 the available knowledge solutions. Oracle further concluded that SAP TN users were able to
15 access non-public materials, not accessible through Customer Connection's search functions, by
16 apparently manually incrementing through URLs until non-public materials (such as proprietary
17 internal documents) were visible.
18      In its review of the server logs, Oracle also observed that individuals understood to be
19 former PeopleSoft employees, now working for SAP, appeared to have been involved in
20 downloading Software and Support Materials from Customer Connection. For example, Oracle
21 understands that Wade Walden, a former PeopleSoft employee, is now working for SAP TN.
22 Oracle observed several instances in server log entries where a request originating from an SAP
23 TN IP address included "Wade Walden" in the optional user-provided user name field.
24      In some cases, when a user has accessed Software and Support Materials through Change
25 Assistant, the logs also capture the remote machine name being used by a logged-in user from a
26 particular IP address to make the download request. Using this data, Oracle initially identified
27 thirty-four unique SAP TN machine names logged in to Customer Connection from the SAP TN
28 IP addresses, that were used to download Software and Support Materials from Customer

PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES

1  Connection.

2  After completing the analysis described above, the Product Support teams and others
3  took the resulting list of specific Software and Support Materials downloaded from an SAP TN
4  IP address at a given time and using the log-in credentials of a given customer. The Product
5  Support teams then led the effort to determine whether the customer whose log-in credentials
6  SAP TN used was licensed to download the Software and Support Materials SAP TN
7  downloaded in the name of that customer. To conduct this analysis, the Product Support teams
8  determined (1) whether that customer had an active, paid support contract with Oracle at the time
9  of the downloads by SAP TN that would permit that customer to download Software and
10 Support Materials from Customer Connection, and, if so, (2) whether the customer had the right
11 to all of the products downloaded by SAP TN using that customer's log-in credentials at the time
12 SAP TN did the downloading.

13  The Product Support teams coordinated the effort to analyze customer software license
14 and support contracts for the current and former Oracle support customers listed above, among
15 others. Members of Oracle's Critical Accounts team helped verify the license status for certain
16 of the downloaded Software and Support Materials. The teams determined whether a given
17 customer had an active, paid support contract, and, if so, for which products. They then
18 compared the Software and Support Materials downloaded using that customer's log-in
19 credentials with the products covered by the customer's license(s). In this way, they determined,
20 for each customer, which materials downloaded in the name of a particular customer were within
21 that customer's support rights and which materials were not.

22  The Product Support teams also researched whether a given customer had a known
23 connection to SAP TN, such as a customer that had told Oracle that it was moving to SAP TN or
24 a customer listed by SAP TN as a current customer on SAP TN's website,
25 http://www.tomorrownow.com.

26  Through this contract analysis, the Product Support and Critical Accounts teams
27 determined that SAP TN accessed Customer Connection on behalf of two types of Oracle
28 support customers: (1) former Oracle support customers who had cancelled all Oracle support to

PLAINTIFFS' SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES

1  migrate to SAP TN; and (2) active Oracle support customers who switched support for one or
2  more Oracle software applications to SAP TN, but maintained at least one valid support
3  agreement for other Oracle software applications. In comparing the timing of the SAP TN
4  downloads with the full or partial expiration dates of the customers' Oracle support contracts,
5  Oracle determined that the SAP TN downloads typically would increase sharply just before a
6  customer's support contract with Oracle expired.

7  For both types of customers, the analysis showed SAP TN had downloaded Software and
8  Support Materials from Customer Connection using the log-in credentials of customers that were
9  not licensed to take the downloaded materials. Oracle has not yet completed its investigation as
10 to the total scope of the unlicensed downloading, however, Oracle has identified, to date, more
11 than 10,000 of these improper and unlicensed downloads by SAP TN of Software and Support
12 Materials relating to hundreds of different software programs in Oracle's PeopleSoft and J.D.
13 Edwards brands of enterprise software applications.

14 In addition, in December 2006, Oracle developed a knowledge solution related to the
15 2007 Daylight Savings Time change in the United States (the "DST Solution"). From December
16 2006 through the first several months of 2007, Oracle fielded more than a thousand customer
17 service requests related to the early Daylight Savings Time change, and Oracle's DST Solution
18 helped resolve more than 750 of those service requests for its customers.

19 In late March 2007, Oracle noticed that SAP TN posted a "PeopleSoft Daylight Savings
20 Time solution" on its website. SAP TN's solution is substantially similar in total and in many
21 places identical to Oracle's DST Solution. SAP TN's version of the solution even includes some
22 minor errors that were in Oracle's original DST Solution, but were later corrected by Oracle in a
23 revised version after January 16, 2007. SAP TN's version bears an SAP TN logo in place of
24 Oracle's own logo and copyright notice. Oracle subsequently traced downloads of its solution to
25 SAP TN's IP address on January 8, 2007 and January 15, 2007. Oracle has registered its
26 copyrights in the original version of the DST Solution, as well as its later corrected version,
27 which SAP TN also downloaded three weeks before Oracle filed the original Complaint in this
28 action.

1  Oracle refers defendants to Customer Connection's server and network log files,
2  production of which is forthcoming.
3  Oracle identifies the following individuals involved in, or knowledgeable about, the
4  investigation, all of which may be contacted only through undersigned counsel. All individuals
5  are employees of Oracle unless otherwise indicated.