1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE USA, INC., et al.,                              No. C-07-01658 PJH (EDL)

        Plaintiffs,                    **ORDER GRANTING DEFENDANTS'**
**MOTION FOR PRECLUSION OF**
**CERTAIN DAMAGES EVIDENCE**
  v.                                  **PURSUANT TO FEDERAL RULES OF**
**CIVIL PROCEDURE 37(C)(1) AND 16(F)**
SAP AG, et al.,

        Defendants.
_____/

     Before the Court is Defendants' Motion for Sanctions Pursuant to Federal Rules of Civil

Procedure 37(c) and 16(f), by which Defendants seek to preclude Plaintiffs from introducing

evidence of damages due to lost profits from sources other than software support services provided

to customers that switched from Plaintiffs to TomorrowNow.  Defendants argue that preclusion of

evidence of profits lost from other sources is appropriate because from the time Plaintiffs launched

this case over two years ago in March 2007, Plaintiffs have limited the scope of damages discovery

to the loss of support revenue from customers that switched to TomorrowNow, and failed to disclose

that they would also seek to recover profits lost from other customers and from lost licensing

opportunities for additional licenses and product sales.  Specifically, Defendants seek to preclude

Plaintiffs from presenting evidence at trial or otherwise in support of any claim that their lost profits

damages extend beyond lost support revenue for customers that switched from Oracle to

TomorrowNow to also include: (1) alleged lost profits from customers that remained with Oracle

and did not switch to TomorrowNow; (2) alleged lost profits relating to licensing revenue, as

opposed to support revenue; and (3) alleged lost profits relating to products that were not supported

by TomorrowNow.  Plaintiffs oppose this motion, primarily arguing that their lost profits theory has

included these categories of damages from the beginning.  For the reasons stated at the hearing and

**United States District Court**
For the Northern District of California

1    in this Order, Defendants' Motion for Sanctions is granted.

2         The Court considers Defendants' motion in the context of the unusual scope and complexity

3    of this massive copyright infringement case, and the Court's deep familiarity with the

4    correspondingly intensive discovery that the Court has actively supervised since all discovery

5    disputes were referred here in May 2008.  The parties are both large, sophisticated international

6    corporations that compete fiercely in the field of database and applications software.  Oracle has

7    accused SAP, which acquired TomorrowNow, of systematic and pervasive illegal downloading of

8    Oracle software over approximately six years.  Plaintiffs contend that TomorrowNow's entire

9    business model was based on unlawful conduct, including "potentially millions of illegal software

10   downloads, thousands of infringing software environments, and many hundreds of stolen

11   customers."  See Joint Discovery Conference Statement at 3, Oracle USA, Inc., et al. v. SAP AG, et

12   al., C-07-1658 PJH (EDL) (N.D. Cal. June 24, 2008) ("June 24, 2008 Joint Discovery Conference

13   Statement").  Plaintiffs' fourth amended complaint lists in excess of one hundred copyright

14   registration certificates as at issue in this case, corresponding to as many software applications

15   allegedly illegally downloaded by Defendants.  See Fourth Am. Compl. at ¶¶ 158, 160, Oracle USA,

16   Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. August 18, 2009).

17        This Court has closely monitored discovery in this complex litigation, holding thirteen

18   discovery conferences addressing the progress of discovery and providing guidance on the numerous

19   complex issues that have arisen, and six contested hearings on discovery motions.  The production

20   of electronic data in this case has been huge.  For example, Plaintiffs' production of a collection of

21   databases relating to the Customer Connection database totaled two terabytes, and Defendants'

22   production of their Data Warehouse contained over ten terabytes of data.  See Joint Discovery

23   Conference Statement at 7, 11, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL)

24   (N.D. Cal. Mar. 24, 2009).  Discovery has already cost each party millions of dollars.  For example,

25   Defendants spent approximately $100,000 per custodian on document review and production alone,

26   and the parties have agreed to a limit of 140 custodians.  See Order Regarding Scope of Discovery

27   of Electronically Stored Information, Including Limits on Number of Custodians to be Searched and

28   Sampling at 2-3, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. July 3,

2008); Declaration of Scott Cowan in Supp. of Defs.' Estimated Document Review and Production Costs at ¶¶ 2-6, <u>Oracle USA, Inc., et al. v. SAP AG, et al.</u>, C-07-1658 PJH (EDL) (N.D. Cal. July 8, 2008); Further Order Regarding Scope of Discovery of Electronically Stored Information at 1, <u>Oracle USA, Inc., et al. v. SAP AG, et al.</u>, C-07-1658 PJH (EDL) (N.D. Cal. July 21, 2008); Stipulated Revised Case Management and Pretrial Order at 3, <u>Oracle USA, Inc., et al. v. SAP AG, et al.</u>, C-07-1658 PJH (EDL) (N.D. Cal. June 11, 2009).

From the first discovery conference that this Court held on May 6, 2008, the Court has repeatedly emphasized that the scope of this case required cooperation in prioritizing discovery and in being mindful of the proportionality requirement of Federal Rule of Civil Procedure 26. Rule 26 requires the Court to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit," after consideration of a number of factors. Fed. R. Civ. P. 26(b)(2)(C). Further, production of electronically stored information may be limited if the sources of the information are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Thus, proportionality has required that both parties focus on the amount of damages at issue from the outset of the case. Judge Hamilton's order in April 2008 that damages discovery should not be delayed further underscored the importance of getting a prompt handle on the scope and nature of the damages at issue.

As described in detail below, from the inception of this case, through two years of hard fought litigation and repeated discovery conferences and hearings, Plaintiffs have limited their lost profits damages to lost support revenue for Oracle software application products from Plaintiffs' 358 former customers that had received support from Plaintiffs, but switched to receiving support for Oracle products from TomorrowNow. It was not until Plaintiffs' recent supplemental disclosures, in May 2009, when the parties should already have been focusing on streamlining this case for trial, that Plaintiffs first expressly stated that they were seeking other, additional lost profits damages based on lost up-sell and cross-sell licensing opportunities for new and different Oracle products to both existing and potential customers, and on pricing discounts given to existing customers due to competition from TomorrowNow. As the issue of damages discovery has been raised at numerous discovery conferences, and Plaintiffs' focus has consistently been on support revenue from

United States District Court
For the Northern District of California

1  customers lost to TomorrowNow, the Court was surprised to be told at this late date that Plaintiffs'

2  damages theory included non-TomorrowNow customers and revenue from sources other than

3  support service.  This lack of prompt disclosure to Defendants about the scope and nature of

4  Plaintiffs' damages case and the failure to cooperate on defining the contours of appropriate

5  discovery accordingly threatens the fair and cost-effective exchange of relevant discovery.  See The

6  Sedona Conference, The Sedona Conference Cooperation Proclamation (2008) (available at

7  http://www.thesedonaconference.org/content/tsc_cooperation_proclamation) (promoting "open and

8  forthright information sharing . . . to facilitate cooperative, collaborative, transparent discovery.");

9  Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 357-58 (D. Md. 2008) (examining Rule

10  26(g)'s requirement that counsel sign disclosures and discovery responses, and stating: "First, the

11  rule is intended to impose an 'affirmative duty' on counsel to behave responsibly during discovery,

12  and to ensure that it is conducted in a way that is consistent 'with the spirit and purposes' of the

13  discovery rules, which are contained in Rules 26 through 37.  It cannot seriously be disputed that

14  compliance with the 'spirit and purposes' of these discovery rules requires cooperation by counsel to

15  identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of

16  which is disproportionally large to what is at stake in the litigation. Counsel cannot 'behave

17  responsively' during discovery unless they do both, which requires cooperation rather than

18  contrariety, communication rather than confrontation.") (internal citation omitted).

19       The orderly case management of complex litigation requires defining the basic contours of

20  the litigation from the outset, including the damages sought, and directing discovery accordingly in

21  order to avoid runaway costs.  See Manual for Complex Litigation (Fourth) § 11.41 (2004) ("Early

22  identification and clarification of issues is essential to discovery control.").  While refinement of the

23  details of the damages at issue may well be appropriate as the case proceeds, a major shift in the

24  basic nature and order of magnitude of damages many months into the case poses a much greater

25  threat to the just, speedy and inexpensive resolution of the case.  See Fed. R. Civ. P. 1.  The

26  importance of early damages disclosure is reflected in the requirement that initial disclosures at the

27  outset of the case include "a computation of each category of damages claims," and the underlying

28  documents "bearing on the nature and extent of the injuries suffered."  Fed. R. Civ. P.

4

26(a)(1)(A)(iii).

Here, Plaintiffs chose to bring this case and focus damages discovery from its inception on lost support revenue from customers that switched from Oracle to TomorrowNow for their software support needs.  For the reasons set forth below, Plaintiffs' attempts to demonstrate that Defendants were nonetheless on notice that Plaintiffs also sought other major categories of lost profits from different customers and different revenue sources are not persuasive.  To the contrary, Defendants reasonably relied in preparing their defense on Plaintiffs' initial disclosures (which were not updated for over two years), Plaintiffs' discovery responses, and Plaintiffs' representations to the Court and counsel.  Fundamental fairness as well as effective case management require that damages discovery not be dramatically expanded at this late date; otherwise, this already complex case may never be ready for trial.

**LEGAL STANDARD**

Defendants seek sanctions pursuant to Federal Rules of Civil Procedure 16(f) and 37(c)(1). Rule 16(f) is permissive, and provides that a court may order sanctions where a party or its attorney fails to obey a pretrial order.  See Fed. R. Civ. P. 16(f).  Accordingly, sanctions may be imposed under Rule 16(f) for failure to abide by the provisions of the Court's Order re Discovery Procedures, including the obligation to supplement initial disclosures pursuant to Rule 26(e)(1).  See Order re Discovery Procedures at ¶ 4 ("Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct their initial disclosures, expert disclosures, pretrial disclosures, and responses to discovery requests under the circumstances itemized in that Rule, and when ordered by the Court.  The Court expects that the parties will supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel. In addition to the general requirements of Rule 26(e)(1), the parties will supplement and/or correct all previously made disclosures and discovery responses 28 days before the fact discovery cutoff date."); at ¶ 9 ("A party or counsel has a continuing duty to supplement the initial disclosure when required under Federal Rule of Civil Procedure 26(e)(1)."), Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. May 2, 2008).

By contrast to the permissive nature of Rule 16, Rule 37 *mandates* that a party's failure to

comply with the initial disclosure obligations under Federal Rule of Civil Procedure 26(a) or the

supplemental disclosure obligations under Federal Rule of Civil Procedure 26(e)(1) results in that

party being precluded from "use [of] that information . . . to supply evidence on a motion, at a

hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c)(1). The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue

sanctions under Rule 37(c)(1)." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106

(9th Cir. 2001) ("This particular subsection, implemented in the 1993 amendments to the Rules, is a

recognized broadening of the sanctioning power."). Further, the burden is on the party who failed to

comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. See Carr v.

Deeds, 453 F.3d 593, 602 (4th Cir. 2006) ("It is the burden of the party facing sanctions to show that

the failure to comply was either substantially justified or harmless."); see also Yeti by Molly, 259

F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove

harmlessness.").

A court need not find bad faith before imposing sanctions for violations of Rule 37. See Yeti

by Molly, 259 F.3d at 1106. Plaintiffs argued to the contrary at the hearing based on a flawed

reading of the decision in Network Appliance v. Bluarc Corp., 2005 U.S. Dist. LEXIS 16726, at *9

(N.D. Cal. June 27, 2005). There, the court stated that although preclusion sanctions are permissible

under Rule 37, "*under certain circumstances, the imposition of preclusive sanctions may be*

*tantamount to dismissal of a plaintiff's claims or entry of default judgment against a defendant*," and

that "*[u]nder those circumstances*, mere negligent conduct is insufficient to impose the severe

penalty of exclusionary sanctions, and a showing of bad faith is required." Network Appliance,

2005 U.S. Dist. LEXIS at *9 (emphasis added). Here, by contrast, the sanctions that Defendants

seek are not tantamount to dismissal of any of Plaintiffs' claims or entry of default judgment, so a

finding of bad faith is not required.

Plaintiffs also argued in their opposition to Defendants' motion that the sanctions issue was

outside this Court's authority as the discovery judge (see Pls.' Opp. to Defs.' Mot. for Sanctions at

3-4, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. July 28, 2009)),

and at the hearing that if this Court were to rule, its decision should be in the form of a report and

6

recommendation to Judge Hamilton.  Sanctions for discovery conduct pursuant to Rules 16 and 37 are plainly within the purview of the assigned magistrate judge in the first instance, whether in the form of a report and recommendation or an order.  In general, a district judge may refer any pretrial matter except for certain dispositive motions to a magistrate judge for hearing and determination. See 28 U.S.C. § 636(b)(1)(A) (". . . a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can  be granted and to involuntarily dismiss an action.").  When pretrial matters are referred to a magistrate judge, that judge may enter orders on all non-dispositive matters (see 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)), and submit findings and recommendations on dispositive matters (see 28 U.S.C. § 636(b)(1)(B); Fed R. Civ. P. 72(b)).  Non-dispositive matters are those that are "not dispositive of a claim or defense of a party."  Fed. R. Civ. P. 72(a).

The issue, therefore, is whether the motion for sanctions in this case is dispositive.  The Court concludes that it is not.  First, the governing statute does not include motions for sanctions in its enumeration of dispositive motions.  See 28 U.S.C. § 636(b)(1)(A).  Further, this motion would not have an effect similar to those motions considered dispositive, nor is it analogous to any of those dispositive motions.  See Maisonville v. F2 America, Inc., 902 F.2d 746, 747 (9th Cir. 1989) (agreeing with other appellate courts that motions for discovery sanctions under Rule 37 not falling within the list set forth in 28 U.S.C. § 636(b)(1) are non-dispositive matters).  Here, Defendants seek sanctions limiting only a portion of Plaintiffs' damages based on lost profits.  Plaintiffs will still be able to seek damages for lost profits pertaining to customers lost to TomorrowNow and supported by TomorrowNow's illegal downloading and creation of infringing environments, which Plaintiffs estimated in June 2008 to be "*at a minimum*, well into the several hundreds of millions of dollars, and likely are at least a billion dollars."  June 24, 2008 Joint Discovery Conference Statement at 3 (emphasis in original).

Further, discovery sanctions in general are non-dispositive unless imposition of the sanction

United States District Court
For the Northern District of California

would be dispositive of a party's claim or defense. See 14 James Wm. Moore, et al., Moore's Federal Practice § 72.02[7][b] (3d ed. 2004) ("If imposition of a sanction would terminate the litigation, the sanction is considered dispositive and the magistrate judge may only recommend that it be imposed by the district court."); see also Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999) ("Motions for sanctions premised on alleged discovery violations are not specifically excepted under 28 U.S.C. § 636(b)(1)(A) and, in general, they are not of the same genre as the enumerated motions. We hold, therefore, that such motions ordinarily should be classified as nondispositive. [internal citations omitted].  Withal, we caution that a departure from this general rule may be necessary in those instances in which a magistrate judge aspires to impose a sanction that fully disposes of a claim or defense," characterizing exception to general rule that such motions are non-dispositive as "rare") (citing Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir. 1988) (striking of plaintiffs' pleadings as discovery sanction should have been decided as a recommendation by magistrate) and North Am. Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1450 (9th Cir. 1986) (dismissal of counterclaim as a discovery sanction reviewed de novo)). Here, because Defendants do not seek to preclude liability and only seek to preclude a portion of Plaintiffs' lost profits damages, the sanctions will not fully dispose of a claim or defense.

At the hearing, Plaintiffs argued that this matter was dispositive, citing one of the Court's orders in Keithley, et al. v. The Homestore.com, Inc., C-03-4447 SI (EDL).  In that order, the Court issued a ruling regarding an adverse inference jury instruction as a report and recommendation "to err on the side of caution on a potentially dispositive issue." Order re: Clarification of August 12, 2008 Order and Report and Recommendation at 2, Keithley, et al. v. The Homestore.com, Inc., et al., C-03-4447 SI (EDL) (N.D. Cal. Sept. 16, 2008).  The Court's order in Keithley does not support the issuance of a report and recommendation here. First, in Keithley, the Court specifically did not express an opinion on whether the ruling was actually dispositive.  In addition, the egregious discovery misconduct in Keithley consisted of spoliation of evidence and misrepresentations to the Court as well as to opposing counsel, resulting in a finding of bad faith and severe sanctions, pursuant to Rule 37 and the Court's inherent power, that affected the merits of liability.  The sanctions there arguably could have been potentially dispositive of liability, which led the Court to

United States District Court
For the Northern District of California

1    err on the side of caution, even if it was not required to do so.[1]  Here, Plaintiffs' failure to timely

2    comply with their discovery obligations, while serious in its potential to prejudice Defendants and

3    derail the case, if unaddressed, consists of nonfeasance, not bad faith misfeasance.  And the

4    sanctions Defendants seek do not affect liability or preclude recovery of many millions of dollars of

5    damages, but instead affect only a portion of potential damages, leaving Plaintiffs free to pursue

6    their originally estimated  "likely at least a billion dollars."  See June 24, 2008 Joint Discovery

7    Conference Statement at 3.

8            Further, if the Court issued a report and recommendation, and a party filed objections, Judge

9    Hamilton would be required to conduct a de novo review.  See 28 U.S.C. § 636(b)(1)(C).  It would

10   not be an efficient use of judicial resources for Judge Hamilton, who already presides over all non-

11   discovery aspects of case management and must rule on dispositive motions and potentially

12   numerous motions in limine and preside over a lengthy trial, to also be required to conduct a de novo

13   review of this discovery matter when she delegated management of discovery to this Court.[2]

14   **DISCUSSION**

15           Plaintiffs argue that Defendants were on notice that Plaintiffs sought more expansive lost

16   profits based on the general allegations in Plaintiffs' complaint filed on March 22, 2007, which

17   alleged in broad terms that: ". . . Oracle has suffered economic harm, including, but not limited to,

18   loss of profits from sales or licenses to current or potential customers of Oracle support services and

19   software programs."  Complaint at ¶¶ 106, 116, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-

20   1658 PJH (EDL) (N.D. Cal. Mar. 22, 2007).  But Defendants took notice of this very general

21   language and on the day discovery opened, they served discovery requests designed to ferret out

22   precisely what damages were really at issue.  In September 2007, Plaintiffs responded to these early

23   _____

24           [1]       In addition, the case cited by the Court in the Keithley decision is not an appellate case,
     and itself addresses a different issue than that presented in this case, that is, a motion to enforce a
25   settlement that the district court determined was analogous to a motion to dismiss.  See Boskoff v. Yano,
     217 F. Supp. 2d 1077, 1084 (D. Haw. 2001).
26

27           [2]       Indeed, upon the transfer of this case to Judge Hamilton, she revoked the former
     reference to a Special Master, which had required all of the Master's decisions to issue as Report and
28   Recommendations, leading to time-consuming de novo review by the trial judge and delay whenever
     any party objected.  Instead, she referred discovery matters to this Court in an effort to streamline the
     process.

9

1    discovery requests exclusively in terms of lost support revenue, without any mention of licensing

2    revenue.

3         For example, Defendants propounded the following requests for production:

4         No. 70: All Documents relating to any alleged loss of revenues or profits by Oracle as
          a result of the conduct alleged in the Complaint.

5

6         No. 107: All Documents relating to the allegation in paragraph 92 of the Complaint
          that "Oracle has suffered injury, damage, loss, and harm, including, but not limited
          to, loss of profits from sales to current and potential customers of Oracle support

7         services and licenses for Oracle's software programs."

8    Declaration of Elaine Wallace in Support of Defs.' Mot. for Sanctions Ex. E at 48, 68, Oracle USA,

9    Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. July 14, 2009) ("Wallace Decl.").

10   Plaintiffs responded, in relevant part:

11        Subject to and without waiving these objections, Oracle responds that it will search
          for and produce non-privileged Documents sufficient to show *Oracle's revenues,*

12        *costs, and profit margins for support or maintenance services relating to legacy*
          *PeopleSoft and J.D. Edwards enterprise software applications for which Oracle has*
          *alleged that defendants Downloaded Software and Support Materials from Oracle's*

13        *systems,* to the extent such Documents exist. Oracle will provide its damages analysis
          during the damages and expert discovery stages of this litigation.

14

15   Id. (emphasis added).

16        In the same set of requests for production of documents, Defendants also sought documents

17   relating to damages, if any, due to products or services other than those supported by

18   TomorrowNow:

19        No. 67: For the shortest time interval available (e.g., monthly, quarterly, or annually),

20        Documents sufficient to show Oracle's revenues, costs, and profit margins for
          products other than those referred to in the Complaint or at issue in this litigation, and

21        services relating to such products.

22        No. 68: For the shortest time interval available (e.g., monthly, quarterly, or annually),
          Documents sufficient to show Oracle's revenues, costs, and profit margins for the

23        Named customers and TN Customers for products other than those referred to in the
          Complaint or at issue in this litigation, and services relating to such products.

24

25   Wallace Decl. Ex. E at 46-47.  Significantly, Plaintiffs specifically disclaimed the relevance of

26   revenue from sources other than support for PeopleSoft and J.D. Edwards applications:

27        . . . Oracle's revenues, costs, and profit margins for products and services other than
          those relating to legacy PeopleSoft and J.D. Edwards enterprise software applications

28        for which Oracle has alleged that defendants Downloaded Software and Support
          Materials from Oracle's systems *are not related to Oracle's claims or defendants'*
          *defenses.*

                                        10

1   Id. (emphasis added).

2         Also on the first day of discovery, Defendants propounded interrogatory 5, which stated:

3         Describe in as much detail as possible how Oracle believes any activity alleged in the
          Complaint has damaged it, including how Oracle was damaged by each allegedly
4         improper Download identified in the response to Interrogatory No. 4 and, if Oracle
          claims to have lost any customer as a result of any activity alleged in the Complaint,
5         all facts and inferences upon which Oracle bases that claim for each customer
          allegedly lost.

6

7   Wallace Decl. Ex. D at 21.  Plaintiffs responded in September 2007 by listing only general

8   categories of harm, all of which related to support of customers lost to TomorrowNow.  See id. at

9   21-24.  In October 2007, Plaintiffs supplemented their response to interrogatory 5 by referring to the

10  previously produced customer contract files for TomorrowNow customers pursuant to Federal Rule

11  of Civil Procedure 33(d).  See id. at 24.  Plaintiffs now contend that they believed that interrogatory

12  5 pertained only to lost customers, so they limited their response to lost customers.  See Pls.' Opp. to

13  Defs.' Mot. for Sanctions at 19, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL)

14  (N.D. Cal. July 28, 2009).  However, a plain reading of the interrogatory, which broadly seeks

15  information about how "any activity alleged in the complaint" has damaged Plaintiffs, reveals that

16  only Plaintiffs' responses -- not the interrogatory itself -- were so limited.

17        Plaintiffs also argue that they gave these discovery responses early in the case, before they

18  could develop their damages theory, and therefore should not be held to them but should be allowed

19  to develop a more expansive damages theory.  This argument is not persuasive.  First, this argument

20  is inconsistent with their other argument that one sentence in their March 22, 2007 complaint was

21  sufficient to put Defendants on notice as to the extent and nature of the damages at issue.

22        Second, this is not a situation where Plaintiffs were unable to develop their full damages

23  theories until later in the case after they received discovery from Defendants or third parties.  To the

24  contrary, the record here shows that Plaintiffs, and not Defendants, possessed the necessary

25  information even before filing the complaint, and well before they served their initial disclosures and

26  first responses to discovery requests.  For example, in support of their new expanded damages

27  theories, Plaintiffs now state that, as a result of competition from TomorrowNow, they abandoned a

28  practice of regular contract step-up price increases for PeopleSoft customers.  See Wallace Decl. Ex.

    L at 52.  Under PeopleSoft's prior contractual practice, Plaintiffs regularly increased their customer

                                                    11

United States District Court
For the Northern District of California

1    support contract prices up to a certain percent of list price.  However, Plaintiffs acquired PeopleSoft

2    in 2005 (Wallace Decl. Ex. L at 90), and abandoned the step-up price increases about one year later

3    (Wallace Decl. Ex. L at 52), *before* this case was filed in 2007.  As another example, Plaintiffs'

4    witness, Mr. Rottler, testified regarding pricing exceptions for existing customers, stating that

5    "pretty much the only reason we would grant an exception would be because of competition from

6    TomorrowNow," and pointing to a pricing exception for customer Winn-Dixie in 2005.  See

7    Wallace Decl. Ex. L at 41; Ex. Q.  Thus, as early as 2005, well before this lawsuit was filed,

8    Plaintiffs were making downward exceptions to their pricing policy in response to TomorrowNow's

9    business.  Accordingly, Plaintiffs could have disclosed that they were seeking damages for price

10   erosion at the outset, without waiting for over two years of intensive discovery to do so.

11           Third, as described below, even many months after these initial discovery responses,

12   Plaintiffs continued to disclaim the relevance of damages relating to non-TomorrowNow customers

13   and revenue other than for support services.  Plaintiffs concede that they never supplemented or

14   corrected their responses to these requests for production, arguing instead that they made additional

15   information known by other means.  See Pls.' Opp. to Defs.' Mot. for Sanctions at 21, Oracle USA,

16   Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. July 28, 2009).  Tellingly, however,

17   Plaintiffs have pointed to no written communication to Defendants, written discovery responses,

18   deposition testimony or submission to the Court from their responses in July 2007, which expressly

19   limited their damages to support revenue from the products at issue in this case, until April 2009,

20   when Plaintiffs first sought to greatly expand the categories of damages at issue beyond those set

21   forth in their initial discovery responses.  Thus, Plaintiffs' failure to be more forthcoming about the

22   nature and extent of their damages claim until very recently was not substantially justified.

23           Further, as noted above, the rule governing initial disclosures highlights the importance of

24   early disclosure of the nature and extent of damages sought by expressly requiring the disclosure of

25   "a computation of each category of damages claimed by the disclosing party," and obligating the

26   disclosing party to make available "documents or other evidentiary material, unless privileged or

27   protected from disclosure, on which each computation is based, including materials bearing on the

28   nature and extent of injuries suffered."  See Fed. R. Civ. P. 26(a)(1)(A)(iii).  Yet Plaintiffs' August

United States District Court
For the Northern District of California

2007 initial disclosures failed to provide any specificity about Plaintiffs' damages claims. While they conclusorily listed four highly general types of damages: "lost profits," "lost or harmed prior, existing or potential customer relationships," "monies to be restored to Oracle due to Defendants' unfair business practices," "and lost good will and reputation," (Wallace Decl. Ex. A at 8), the *only* category of documents pertaining to specific damages that Plaintiffs disclosed was "the loss of customer support revenue." Wallace Decl. Ex. A at 7. Plaintiffs did not supplement these initial disclosures until May 2009, as described below. Plaintiffs have provided no substantial justification for their two year delay in supplementing these disclosures.

As the Supreme Court has recognized, complex litigation poses a challenge for courts to manage time consuming and hugely expensive discovery. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558-560, n. 6 (2007); Id. at 573, 584, 596 (Stevens, J, dissenting). In Twombly, the Court noted the danger of expensive discovery being triggered by a complaint that fails to allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" of liability. Twombly, 550 U.S. at 556. The Court quoted an article by Judge Easterbrook about the discovery abuse that can ensue when a "'sketchy complaint'" is filed, and "'[d]iscovery is used to find the details.'" Id. at 560 n. 6. While Twombly focused on adequately pleading liability to avoid expensive discovery on a meritless case, the damages aspect of complex litigation also requires careful attention early in the case. Here, Plaintiffs seek to rely on the vague, very general damages allegations in their initial complaint to preserve their new, more extensive damages theories, even though they failed to disclose those theories in discovery for over two years, despite Defendants' efforts from the outset to flesh out Plaintiffs' sketchy damages allegations through appropriate discovery tools. To allow the belated disclosure of the new theories to trigger large new waves of expensive discovery and expert analysis at this late date based on vague allegations that Plaintiffs previously refused to elaborate on despite their ability to do so, would be simultaneously unfair to Defendants, very expensive and hugely time consuming, slowing down what is already very lengthy litigation. Such a result would run directly contrary to the mandate of Rule 1, achieving a dubious trifecta of unfair, glacially slow and exorbitantly expensive litigation.

Importantly, while early on in this case Plaintiffs argued, over Defendants' opposition, that

**United States District Court**
For the Northern District of California

any further damages discovery should be deferred, and persuaded then Special Master Judge Legge to so recommend in February 2008 (Report and Recommendation re: Discovery Hearing No. 1 at 8-9, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. Mar. 14, 2008)), Judge Hamilton specifically rejected this recommendation in April 2008 (Minute Order, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. Apr. 25, 2008)).  Disagreeing with Plaintiffs' position that damages discovery should be deferred, the trial judge specifically informed the parties at a case management conference that all discovery was open, including damages discovery.  See Minute Order, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. Apr. 25, 2008).  Thus, Plaintiffs' attempt to rely on Judge Legge's February 2008 recommendation to excuse their failure to disclose their alternate damages theories until over one year after Judge Hamilton ordered damages discovery to proceed without delay is not well-taken. Nothing precluded damages discovery before Judge Legge's recommendation in February 2008, and certainly once Judge Hamilton rejected the recommendation only two months later, Plaintiffs were on notice that they could not delay providing damages discovery.  Early discovery of damages was essential to give Defendants fair notice of the scope of this case, in order to assess their exposure accurately, decide how and at what expense to conduct their defense, and evaluate any potential settlement prospects.  Yet even after Judge Hamilton's order, Plaintiffs did not timely indicate that their lost profits damages claim extended beyond support revenue for customers lost to TomorrowNow.  That failure was not substantially justified or harmless, as further described below.

Notably, in June 2008, two months after Judge Hamilton made clear that damages discovery was to proceed without delay, in a discovery conference statement to this Court, Plaintiffs represented that their relevant damages information in this case was limited to customers lost to TomorrowNow.  In arguing that the number of custodians whose documents were to be produced by Defendants should exceed the number on Plaintiffs' side, Plaintiffs stated that the majority of the relevant information in this case resided with Defendants, such that Plaintiffs needed to focus their discovery efforts on reviewing Defendants' documents and taking Defendants' depositions, not producing what Plaintiffs believed would be irrelevant information in response to Defendants'

custodian requests.  Specifically, Plaintiffs delineated a limited set of relevant damages information in their possession:

> Oracle's relevant information and custodians are essentially limited to its copyright registrations, its relevant customer licenses, *and the revenue streams reasonably associated with its customers who left for SAP TN* (though Defendants seek much more).

June 24, 2008 Joint Discovery Conference Statement at 6-7 (emphasis added).  This statement once again demonstrates that Defendants reasonably relied on Plaintiffs' own representations that their damages theory was limited to customers that left Oracle for TomorrowNow.  Indeed, this Court also took Plaintiffs at their word.

Also in approximately June 2008, after repeated encouragement by the Court to cooperate in making discovery in this complex case more efficient, the parties jointly negotiated a number of search terms to be used in easing the burden of document review.  Tellingly, those search terms did not include any former Oracle customers that did not become TomorrowNow customers.  See Wallace Decl. ¶ 11.  At the hearing, Plaintiffs' counsel argued that the omission was harmless because other terms, such as "TomorrowNow," would also sweep in from the OSSInfo database any non-TomorrowNow customers at issue that were offered price discounts because discounting was approved largely because of TomorrowNow.  This circular argument is not persuasive.  There has been no showing that non-TomorrowNow customers for which Plaintiffs now claim lost profits would have actually been picked up in a search that did not contain specific customer names.  And Plaintiffs have not produced the OSSInfo database to Defendants (see Reply Declaration of Stephen Clarke in Support of Defs.' Mot. for Sanctions ¶ 5, Oracle USA, Inc., et al. v. SAP AG, et al., C-07-1658 PJH (EDL) (N.D. Cal. Aug. 4, 2009) ("Clarke Reply Decl.")), so Defendants cannot confirm Plaintiffs' theory.

Plaintiffs also argue that Defendants did not seek to add non-TomorrowNow customers to the search terms, so Plaintiffs cannot be blamed for the omissions.  It would be unfair, however, to put the burden on Defendants to intuit that such search terms would be necessary, in light of Plaintiffs' representations to the contrary and Plaintiffs' much greater knowledge of the relevance of documents in Plaintiffs' possession and the intricacies of Plaintiffs' systems (including the OSSInfo

United States District Court
For the Northern District of California

15

1  database that was not produced to Defendants).  Moreover, the search terms in this case were

2  conceived jointly, with Plaintiffs apparently taking the laboring oar (see June 24, 2008 Joint

3  Discovery Conference Statement at 9-10), so Plaintiffs' attempt to cast blame on Defendants is not

4  well-taken.  In light of Plaintiffs' initial and long persistent claim that the only relevant damages

5  information concerned customers lost to TomorrowNow, Defendants cannot be faulted for not

6  insisting on additional search terms to locate information regarding damages in connection with non-

7  TomorrowNow customers.  Indeed, Plaintiffs had already resisted as irrelevant and unnecessary

8  discovery of additional custodians in part on the grounds that the relevant damages information was

9  limited to lost revenue from customers that converted to TomorrowNow.

10         Defendants also point to other aspects of discovery further showing that Plaintiffs limited

11  their damages theory.  Both sides agreed early in this case to provide customer contract files only for

12  customers allegedly lost to TomorrowNow.  See Wallace Decl. ¶ 9.  Production of customer-specific

13  financial reports was limited in August 2008 to customers allegedly lost to TomorrowNow, and to

14  the Peoplesoft and J.D. Edwards products to which Oracle had licensed each such customer.  See

15  Wallace Decl. Ex. F at ¶ 1 (limiting production to "relevant customers").  Plaintiffs argue that they

16  have produced complete customer histories for PeopleSoft and J.D. Edwards products, and summary

17  reports for every customer on Defendants' lost customer list.  See Declaration of Holly House in

18  Support of Pls.' Opp. to Defs.' Mot. For Sanctions ¶¶ 5-14, Oracle USA, Inc., et al. v. SAP AG, et

19  al., C-07-1658 PJH (EDL) (N.D. Cal. July 28, 2009) ("House Decl.").  However, that production

20  appears to have been limited to TomorrowNow customers only, and so did not put Defendants on

21  notice that Plaintiffs were seeking damages associated with customers that did not switch to

22  TomorrowNow.

23         Similarly, in June 2008, Plaintiffs objected to a topic in Defendants' notice for a Rule

24  30(b)(6) deposition on the grounds that: "This case is about Defendants' infringement of Oracle's

25  intellectual property, *specifically though the service activities of SAP TN*.  Oracle's ongoing

26  competition with SAP is not relevant to that issue and vastly expands the discovery burdens in this

27  case."  Wallace Decl. Ex. H at 5-6 (emphasis added).  Further, Plaintiffs resisted discovery from

28  custodians who were not involved in competitive activities directly related to TomorrowNow.  See

1    Wallace Decl. Ex. I ("Considering the testimony Defendants have received from Oracle's 30(b)(6)

2    witnesses that Oracle's competitive intelligence group has little, if anything, to do with

3    TomorrowNow, it's unclear how most of these choices [Defendants' selection of custodians] helps

4    with a defense in this action.").  Finally, when the parties agreed to expand the relevant discovery

5    time period in November 2008, they limited additional document production to customers lost to

6    TomorrowNow.  See, e.g., Wallace Decl. Ex. G (agreeing to produce "Customer related documents

7    (contracts and licensing to TN customers and related emails/negotiations to the extent kept in

8    centralized files; on-boarding documents; the independent third party support market; TN,

9    PeopleSoft and JD Edwards key custodian documents re early TN customers," "TomorrowNow

10   Business Model related Documents," and "TN/SAP customer related documents" where "TN/SAP

11   customers" are defined as "customers involving at least one of the following: (a) all TN customers;

12   (b) Safe Passage deals with TN as a component; or (c) SAP sales to TN customers after acquisition

13   of TN.").

14         It was not until very recently, after over two years of discovery at a cost of millions of dollars

15   to each side, when Defendants deposed Plaintiffs' top executives in April and May 2009, that

16   Defendants learned that Plaintiffs now contend that lost support revenue was not the primary

17   economic harm.  Instead, the executives testified, the greater economic harm came from lost

18   licensing revenue and price reductions to customers that never left Oracle for TomorrowNow.  See,

19   e.g., Wallace Decl. Ex. J at 64 (deposition testimony of Chief Executive Officer Larry Ellison,

20   stating that the customers that left for TomorrowNow were only "the tip of the iceberg," and that "it

21   wasn't just the people who were moving support across from Oracle to SAP.  I mean, that was

22   significant, but it wasn't the primary damage."); Ex. K at 18 (deposition testimony of President

23   Charles Phillips, stating that "for every customer we lost, there's ten times that in license revenue

24   that we could have sold over the years as they continue to standardize on our footprint."); Ex. L at

25   254 (deposition testimony of Executive Vice President, Oracle Customer Services Juergen Rottler,

26   stating that ". . . TN impacted us in every single account, not just the accounts that we lost.").  If

27   damages relating to the customers that left for TomorrowNow were only the "tip of the iceberg,"

28   then that iceberg was invisible to Defendants and to the Court (though not Plaintiffs) for more than

1    two years of intensive discovery efforts.

2          In response to many of these examples demonstrating that Plaintiffs did not timely disclose

3    the scope or basis of their lost profits damages theory, Plaintiffs argue that their April 2009

4    interrogatory responses and May 2009 supplemental disclosures fully described their lost profits

5    damages, and that there is still time for Defendants to engage in additional discovery and expert

6    analysis to defend against the vastly expanded nature and scope of damages sought.  In April 2009,

7    in response to Defendants' February 2009 interrogatories regarding differences between conduct

8    alleged in support of Plaintiff's non-copyright and copyright claims, Plaintiffs at last disclosed a

9    vastly expanded scope of damages, including: "Lost, diminished or delayed *current and prospective*

10   *customer* revenues and profits, including as it relates to support and maintenance and software

11   applications *licensing*."  House Decl. Ex. D at 14 (emphasis added).  The fact that Plaintiffs finally

12   revealed in April 2009 that their damages claims extended to non-TomorrowNow customers and to

13   revenue from sources other than support does not absolve them from their failure to make adequate

14   initial disclosures or to respond with information already in their possession to the specific discovery

15   requests propounded early in this case.  To the contrary, these disclosures are too little, too late.

16         Further, Plaintiffs' attempt to blame Defendants for delaying depositions of Plaintiffs'

17   executives until April and May 2009 as a reason for Defendants not appreciating the full scope of

18   Plaintiffs' damages claim is not well-taken.  Ordinarily, "apex" depositions of top executives occur

19   late in discovery, only after extensive document production and depositions of lower level

20   employees.  Absent unusual circumstances not present here, deferring depositions of top executives

21   to the last stage of fact discovery serves the interests of both sides, allowing the deposing party to be

22   well prepared and the producing party to avoid unnecessary diversion of top executives' time into

23   deposition preparation and testimony that may be rendered unnecessary by prior use of other sources

24   of information, such as depositions of lower level employees, or settlement or other resolution of the

25   case.  Plaintiffs had a duty to timely disclose basic damages information known to its executives,

26   well before top executives were deposed late in the fact discovery period, in accordance with the

27   usual practice.  Their failure to do so was not substantially justified or harmless.

28         On May 22, 2009, after the depositions of Plaintiffs' top executives, Plaintiffs at last

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    supplemented their initial disclosures, stating in a contemporaneous letter that they were claiming

2    damages due to lost licensing revenue.  See Wallace Decl. Ex. O at 2.  Plaintiffs' May 22, 2009

3    supplemental disclosures allege harm, among other things, to customers that did not leave Oracle, as

4    well as "a host of other damages," such as the early adoption of Plaintiffs' Lifetime Support and

5    Applications Unlimited programs, and additional money spent on customer support enhancements.

6    See Wallace Decl. Ex. P at 45.  Plaintiffs argue that they were simply being candid in their May 22,

7    2009 statement regarding their damages.  Yet they fail to explain satisfactorily why, more than two

8    years after this case was filed and over one year after Judge Hamilton made clear that damages

9    discovery should proceed, they waited until May 2009 to supplement their initial disclosures for the

10   first time to add damages associated with non-TomorrowNow customers and with other revenue

11   sources besides lost support revenue.

12        Plaintiffs also point out that in June 2009, on the eve of the first discovery cutoff, the parties

13   stipulated to extend the pretrial and trial dates in this case, and Judge Hamilton so ordered.  See

14   Stipulated Revised Case Management and Pretrial Order, Oracle USA, Inc., et al. v. SAP AG, et al.,

15   C-07-1658 PJH (EDL) (N.D. Cal. June 11, 2009).  Plaintiffs argue that the extension does not limit

16   the type of additional discovery that may be produced by any party.  See House Decl. ¶ 35.

17   However, a reading of the stipulation reveals that the discovery cutoff was extended to December 4,

18   2009 primarily to accommodate discovery on Siebel products added to this case by Plaintiffs' fourth

19   amended complaint.  Specifically, the stipulation provides for document production relating to

20   Siebel, and for additional depositions of specified individuals and Federal Rule of Civil Procedure

21   30(b)(6) witnesses on topics relating to Siebel, as well as limited additional deposition time with

22   respect to a handful of witnesses, primarily on post-litigation conduct through October 2008.  See

23   Stipulated Revised Case Management and Pretrial Order at 4-6, Oracle USA, Inc., et al. v. SAP AG,

24   et al., C-07-1658 PJH (EDL) (N.D. Cal. June 4, 2009).

25        Judge Hamilton's approval of this stipulation to address a specific line of products that the

26   parties agreed had recently become part of this case did not institute a discovery free-for-all on

27   unrelated aspects of damages.  To the contrary, as fact discovery winds down for the second and, it

28   is hoped, the last time, the parties should be focusing on streamlining this already very large case for

1    trial, not expanding the issues through new damages claims.  Further, because of the complexity of

2    this case, the time between the fact discovery cutoff and trial must necessarily be extensive to allow

3    adequate time for expert discovery and trial preparation on issues that have already been the subject

4    of this case for over two years.  Instead, if the contours of this case continue to expand, necessitating

5    a corresponding increase in the scope of discovery, this case will never be ready for trial.

6          Plaintiffs also argue that they have produced some documents relating to licensing,

7    mitigating the impact of their late disclosure: (1) documents recently produced in July 2009 relating

8    to thirty-nine non-TomorrowNow customers that Plaintiffs have now identified; and (2) other

9    documents throughout its massive document production that happen to relate to non-TomorrowNow

10   customers.  See House Decl. ¶¶ 17, 18.  However, recent production of documents for only a limited

11   subset of the estimated fifty to one hundred non-TomorrowNow customers that Plaintiffs now claim

12   became less profitable is too little, too late, even if the remaining customer documents are produced

13   by September 30, 2009, as Plaintiffs expect.  See House Decl. ¶ 18 (estimating non-TomorrowNow

14   customers at fifty); Wallace Decl. Ex. L at 47-48 (deposition testimony of Juergen Rottler,

15   estimating non-TomorrowNow customers as over one hundred).  Defendants' expert, Mr. Clarke,

16   states that analysis of one hundred additional customers would increase the cost of his already

17   expensive work by approximately 25-30%.  See Clarke Reply Decl. ¶ 9.

18         Moreover, Plaintiffs' own documents indicate that, far from having decided on and disclosed

19   the basic components of damages that they were seeking at the outset of this case and produced the

20   supporting documents, as required by Rule 26(a)(1)(A)(iii), they have only recently begun collecting

21   the documents needed to support their expanded damages claims relating to non-TomorrowNow

22   customers and revenue other than for support services.  For example, Plaintiffs' expert, Paul Meyer,

23   who is a Managing Director at Navigant Consulting, Inc ("NCI"), states in his July 2009 declaration

24   in support of Plaintiffs' opposition that: "In connection with NCI's analysis of lost cross-sell and up-

25   sell opportunities, we are directing Oracle personnel to gather information."  Declaration of Paul

26   Meyer in Opp. to Defs.' Mot. for Sanctions at n. 12, Oracle USA, Inc., et al. v. SAP AG, et al., C-

27   07-1658 PJH (EDL) (N.D. Cal. July 28, 2009) ("Meyer Decl.").  There is no excuse for only now

28   gathering information for a major aspect of damages that Plaintiffs argue was part of this case from

1    the outset.  The likely explanation is that Plaintiffs did not attempt to pursue these additional

2    damages until recently.  This information should have been gathered long ago, well prior to the

3    former June 19, 2009 discovery cutoff date in this case.  The recent addition of Siebel products to

4    this litigation and consequent expansion of the discovery cutoff does not account for this belated

5    gathering of information about other products and customers.

6         As to the appropriate sanctions for their tardiness, Plaintiffs argue that the exclusion of

7    damages evidence sought by Defendants is too harsh.  Plaintiffs point out that fact discovery does

8    not close for several more months, on December 4, 2009, and trial is not scheduled until November

9    2010, which they contend distinguishes this case from cases where exclusionary sanctions have been

10   imposed, such as Yeti by Molly, 259 F.3d at 1105-07 (excluding evidence produced two years after

11   close of discovery and twenty-eight days before trial) and Evenflow Plumbing Co. v. Pacific Bell

12   Directory, 2005 U.S. Dist. LEXIS 46822 (N.D. Cal. Apr. 26, 2005) (excluding evidence of damages

13   presented for the first time four days before trial).  The magnitude of this case, however, dwarfs

14   cases like Yeti by Molly and Evenflow Plumbing.  Here, Plaintiffs allege infringement of more than

15   one hundred copyright certificates and software products over a number of years by its major

16   corporate competitor, allegedly resulting in millions of dollars, if not over a billion dollars, in

17   damages from lost support revenue from customers that left Oracle for TomorrowNow.  By contrast,

18   in Yeti by Molly, the plaintiff, a small company incorporated for the purpose of producing a

19   patented winter boot, alleged that the defendants, a large footwear manufacturer and one of the

20   manufacturer's employees, misappropriated trade secrets in the design of the plaintiff's winter boot,

21   and received $2 million in compensatory damages.  The Ninth Circuit affirmed the trial court's

22   exclusion of an expert report that was provided two years after the close of discovery and only

23   twenty-eight days before trial, in part because the time before trial was insufficient to depose the

24   expert and prepare to question him at trial.  In Evenflow Plumbing, the plaintiff, a small plumbing

25   company, alleged that the defendant, a provider of a commercial telephone directory, infringed a

26   single copyright of a photograph of a backhoe.  No experts testified in that case.  This Court

27   excluded evidence of lost profits of approximately $150,000 because the evidence supporting that

28   damages claim was not given to the opposing side until four days before trial.

21

1

2      While trial is further off in this case than it was in <u>Yeti by Molly</u> and <u>Evenflow Plumbing</u>

3   when the late disclosures occurred in those cases, far more time is already necessary for adequate

4   trial preparation in light of the existing complexity and scope of this case; the expansion in damages

5   discovery that would be necessitated by Plaintiffs' new categories of damages would prejudice

6   Defendants and almost certainly derail the trial schedule.  Defendants' economic damages expert

7   testified that analysis of the new categories of Plaintiffs' damages claim would take an additional

8   year beyond the current expert discovery schedule and would cost at least $5 million more in added

9   expert fees and costs for his work, on top of the $4.4 million expended to date and an already

10  expected $4 million more through trial.  <u>See</u> Declaration of Stephen Clarke in Support of Defs.' Mot.

11  for Sanctions at ¶¶ 28-30, <u>Oracle USA, Inc., et al. v. SAP AG, et al.</u>, C-07-1658 PJH (EDL) (N.D.

12  Cal. July 14, 2009).  For example, Mr. Clarke states that to analyze new damages claims based on

13  current and future lost profits related to the loss of additional licensing, non-support revenue to

14  TomorrowNow customers and to entities that might have become Plaintiffs' customers but for

15  Defendants' action, as well as discounts and price reductions to customers that Plaintiffs retained, he

16  would need at least the following documents for each customer: (1) detailed accounting information

17  sufficient to show  the license and support revenue and profits by year and by product line from

18  2004 through the present; (2) detailed price calculations performed at the time of sale by the sales

19  and/or marketing departments, including any senior executive level input into pricing decisions; (3)

20  emails, correspondence, executive reports, and presentations sufficient to determine whether the

21  price discounts for each customer resulted from Defendants' alleged illegal actions or some other

22  cause; (4) contracts and OK13 Contract Details; (5) Analytics Contracts Reports; (6) Analytics

23  License Reports for all customers that licensed an Oracle product during the relevant time period;

24  and (7) details of the lost potential customers, including company name, size of deal discussed,

25  correspondence, meeting agendas and notes, proposals, bids and all CRM entries.  <u>See id.</u> ¶ 17.  This

26  production alone, which represents only a portion of the additional analysis Mr. Clarke expects to

27  do, would likely entail many millions of pages (or the equivalent in bytes) of documents, and would

28  require dozens of additional depositions.  <u>See id.</u> ¶ 18.

1    Plaintiffs respond that Mr. Clarke's time estimate is speculative, and the better approach

2   would be to allow Plaintiffs to pursue their greatly expanded damages theories and wait to see if

3   Defendants and their expert can catch up.  Left unsaid is that in the highly likely event that

4   Defendants cannot, the trial schedule would yet again be derailed.  Moreover, Judge Hamilton's and

5   this Court's efforts to manage the case to resolution in a manner that complies with the fundamental

6   requirement of Federal Rule of Civil Procedure 1 to administer the Federal Rules so as to "secure the

7   just, speedy and inexpensive determination of every action" would be thwarted.  Of course, any

8   estimate of time in the future involves some uncertainty, but sound case management and fair

9   resolution of disputes requires relying on reasonable predictions.  Mr. Clarke made a reasonable

10   prediction appropriately based on the time it has taken him to date to perform the analysis of lost

11   profits, unjust enrichment and reasonable royalty damages based on Plaintiffs' original theory of

12   damages.  Plaintiffs' expert, Mr. Meyer, contends that Mr. Clarke overstates the amount of

13   additional documentation that would be necessary to analyze Plaintiffs' damages.  <u>See</u> Meyer Decl.

14   ¶ 8.  However, Mr. Meyer bases his opinion in part on his possible future decision (not yet finally

15   determined) not to quantify certain aspects of the newly declared damages.  <u>See</u> Pls.' Opp. to Defs.'

16   Mot. for Sanctions at 11, <u>Oracle USA, Inc., et al. v. SAP AG, et al.</u>, C-07-1658 PJH (EDL) (N.D.

17   Cal. July 28, 2009); <u>see also, e.g.</u>, Meyer Decl. ¶ 12, n. 8.  Indeed, it is not clear which damages

18   elements he intends to try to quantify.  At the hearing, Plaintiffs' counsel stated that Plaintiffs intend

19   to quantify damages relating to discounts given to existing customers, but Plaintiffs' expert had

20   earlier stated in his declaration only that he "*may* quantify damages related to support pricing

21   discounts that Oracle provided as a result of Defendants' alleged bad acts."  Meyer Decl. ¶ 12

22   (emphasis added).  Plaintiffs' counsel also stated at the hearing that Plaintiffs would quantify lost

23   profits from customers lost to TomorrowNow, that they may quantify damages for the Lifetime

24   Support Program and the abandonment of the contractual step-up price increase program, and that

25   they would not quantify damages to goodwill or relating to unnamed potential customers.  This

26   uncertainty about Plaintiffs' plans to quantify their damages require Defendants to prepare fully lest

27   they be surprised at trial by Plaintiffs' quantifications.  While Mr. Meyer also states that public

28   information has been available to Mr. Clarke for a long time, Defendants point out correctly that

1   until recently, Mr. Clarke had no reason to know that such information was relevant.  See Meyer

2   Decl. ¶ 15; Clarke Reply Decl. ¶ 13.  Therefore, it is not reasonable to conclude that there is

3   sufficient time for Defendants to conduct a meaningful analysis of Plaintiffs' new claims within the

4   current pretrial and trial schedule.  The burden is on Plaintiffs to show that the belated disclosures

5   are harmless.  See Yeti by Molly, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is

6   on the party facing sanctions to prove harmlessness.").  Plaintiffs have not done so.

7       Plaintiffs also point to cases in which preclusion sanctions were not ordered on what they

8   contend are more egregious facts.  See, e.g., Primrose Operating Co. v. Nat'l Am. Insur. Co., 382

9   F.3d 546, 563-64 (5th Cir. 2004) (affirming denial of motion to exclude expert damages testimony

10  where no expert report provided, because the opinions were provided elsewhere so failure was

11  harmless).  Primrose, however, was a relatively uncomplicated insurance coverage dispute, in which

12  the appellate court simply upheld the trial court's discretionary decision to allow an expert to testify

13  on the reasonableness of the attorney's fees sought as damages (less then $410,000) as not

14  manifestly erroneous and as harmless because the plaintiffs informed the defendant of the witness

15  and the nature of his testimony six months before trial, and the expert's simple calculations were

16  easily performed by either side based on the invoices that had been provided to the defendant.  By

17  contrast, as described above, although the trial in this matter is a little over one year in the future,

18  here the late disclosure is not harmless, because Defendants cannot conduct a meaningful analysis of

19  Plaintiffs' far more complicated and extensive new damages claims within the current pretrial

20  schedule given the much greater scope of this litigation and the complexity of the additional expert

21  analysis that would be required.

22      The remaining cases cited by Plaintiffs are similarly inapposite.  See United States v.

23  Rapanos, 376 F.3d 629, 644-45 (6th Cir. 2004) (affirming trial court's discretionary decision to deny

24  the defendants' request to strike the testimony of the plaintiff's expert because the expert relied on a

25  supplemental expert report disclosed after trial began where there was no substantial prejudice

26  because the initial expert report was available to the defendant, the supplemental material was based

27  on analysis by the defendants' expert and was favorable to the defendants, and the court gave the

28  defendants as long as they needed to review the supplemental report); Reiner v. Warren Resort

24

Hotels, 2008 U.S. Dist. LEXIS 102047, at *26-29 (D. Mont. Oct. 1, 2008) (rejecting the defendant's request for attorney's fees for second deposition of the plaintiff based on the defendant's contention that the plaintiff failed to timely disclose a claim for damages for brain injury because the plaintiff promptly disclosed this claim after her diagnosis during the litigation and any delay was substantially justified and harmless); Pierce v. CVS Pharmacy, Inc., 2007 U.S. Dist. LEXIS 69006, at *10-11 (D. Ariz. Sept. 13, 2007) (denying the defendant's motion to strike the plaintiff's expert witness based on deficient expert report where the plaintiff made attempts to cure deficiencies, the deficiencies could be cured, the defendant did not show any prejudice, and the plaintiff would be greatly prejudiced by the striking of the expert); The Christiensen Firm v. Chameleon Data Corp., 2006 U.S. Dist. LEXIS 79710, at *16-17 (W.D. Wash. Nov. 1, 2006) (noting that federal courts are "reluctant to exclude evidence at summary judgment when a party has slept on their rights in discovery" by failing to propound discovery requests or move to compel, the court declined to exclude supplemental damages disclosure made after summary judgment was filed but before discovery closed in a case brought by a single plaintiff for a single instance of alleged cybersquatting where the initial disclosures were reasonably detailed); Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 506-11 (D. Del. 2005) (denying the plaintiff's motion to exclude testimony of the sole remaining defendant's expert witness because the allegedly new opinions not mentioned in his report were either within the scope of the material presented in the expert report or did not change the substance of the underlying analysis, so there was little or no prejudice and there was time to cure any potential prejudice by further deposition of the expert and allowing expert rebuttal); Semtech Corp v. Royal Ins. Co. of Am., 2005 WL 6192906, at *3 (C.D. Cal. Sept. 8, 2005) (in a relatively straightforward insurance coverage dispute in which an insured sought $12 million dollars in total damages from its multiple insurers, denying motion to bar the use of a late-produced supplemental expert report because the report was delayed due to the timing of the court's ruling on summary judgment and did not contain assessment of new data, but instead provided calculations based on the raw data, and the potential harm from the late disclosure of the report could be cured by allowing the opposing side to depose the expert).

　　　　　In conclusion, based on extensive experience with hands-on management of discovery in this

1   case since Judge Hamilton entrusted that responsibility to this Court seventeen months ago, the

2   Court concludes that Plaintiffs' discovery responses failed without substantial justification for over

3   two years to inform Defendants that Plaintiffs were seeking lost profit damages relating to non-

4   TomorrowNow customers and to revenue from sources other than support in violation of Rule 37.

5   Further, Plaintiffs failed to timely supplement their initial disclosures to update their damages theory

6   until May 2009, even though facts supporting such damages were known to Plaintiffs before filing

7   this lawsuit, in violation of this Court's May 2, 2008 Order and Rule 16.  See Fed. R. Civ. P. 16.

8   Moreover, Plaintiffs' failure was not harmless because Defendants would suffer prejudice if

9   Plaintiffs were allowed to proceed on their new damages claims because Defendants' expert would

10  not be able to conduct the required analysis within the time limits set by Judge Hamilton, and the

11  cost of the additional analysis would be exorbitant.  In addition, expanding the damages case

12  significantly as Plaintiffs belatedly attempt to do would severely prejudice the Court's ability to

13  manage this case to resolution in anything approaching a just, speedy, and inexpensive manner.

14  Thus, Rule 37 mandates preclusion sanctions, and Rule 16 also counsels such sanctions in the sound

15  exercise of the Court's discretion.

16          Accordingly, Defendants' motion to preclude certain damages evidence is granted.  Plaintiffs

17  are precluded from presenting evidence at a hearing or at trial that their lost profits damages include:

18  (1) alleged lost profits relating to customers that did not become customers of TomorrowNow; (2)

19  alleged lost profits relating to licensing revenue, as opposed to support revenue; and (3) alleged lost

20  profits relating to products that were not supported by TomorrowNow.  Plaintiffs may continue to

21  pursue the many millions (perhaps over a billion) of dollars in damages that they have claimed all

22  along based on lost support revenue for customers that left Oracle for TomorrowNow.

23  **IT IS SO ORDERED.**

24  Dated: September 17, 2009

25  *Elizabeth D. Laporte*
    ELIZABETH D. LAPORTE
    United States Magistrate Judge

26

27

28