| | |
|---|---|
| 1 | BINGHAM McCUTCHEN LLP<br>DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468)<br>HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009)<br>BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center<br>San Francisco, CA  94111-4067 |
| 5 | Telephone:  (415) 393-2000<br>Facsimile:   (415) 393-2286 |
| 6 | donn.pickett@bingham.com<br>geoff.howard@bingham.com |
| 7 | holly.house@bingham.com<br>zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |
| 9 | DORIAN DALEY (SBN 129049)<br>JENNIFER GLOSS (SBN 154227) |
| 10 | 500 Oracle Parkway, M/S 5op7<br>Redwood City, CA  94070 |
| 11 | Telephone:  (650) 506-4846<br>Facsimile:   (650) 506-7114 |
| 12 | dorian.daley@oracle.com<br>jennifer.gloss@oracle.com |
| 13 | |
| 14 | Attorneys for Plaintiffs<br>Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., and Siebel Systems, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| 18 | ORACLE USA, INC., *et al.*, | CASE NO.  07-CV-01658 PJH (EDL) |
| 19 | Plaintiffs, | **DECLARATION OF SAFRA CATZ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFFS' HYPOTHETICAL LICENSE DAMAGES CLAIM** |
| 20 | v. | |
| 21 | SAP AG, *et al.*, | |
| 22 | Defendants. | |
| 23 | | |
| 24 | | Date: October 28, 2008<br>Time: 9:00 a.m. |
| 25 | | Courtroom: 3, 17th Floor<br>Judge: Hon. Phyllis J. Hamilton |

Case No. 07-CV-1658 (PJH)

DECLARATION OF SAFRA CATZ

I, Safra Catz, declare as follows:

1. I am President and Chief Financial Officer of Plaintiff Oracle USA, Inc. ("Oracle"). I have personal knowledge of the facts set forth in this declaration and would competently testify to them if called upon to do so.

2. I understand that for purposes of damages in this case, any retroactive "hypothetical" license award can only cover the exact scope and duration of the infringement by Defendants. I do not have access to all highly confidential information in this case due to the Protective Order limitations, so I do not know the full nature, scope, terms and duration of Defendants' actual use of Oracle's intellectual property. I have not received any analysis regarding a retroactive license by Oracle's damages experts in this case and so have no details concerning the "hypothetical" license damages model and parameters.

3. During my March 27, 2009 deposition, Counsel for Defendants, Mr. Lanier, asked me a series of questions regarding a hypothetical license negotiation between Oracle and SAP/TomorrowNow that would have occurred in January 2005. I did not understand Mr. Lanier's questions to include any limitations on that license. I understood that the hypothetical license that he referred to would have been for SAP – not just TomorrowNow – to "steal" Oracle's intellectual property and use it in an unlimited way, in perpetuity, to take Oracle's customers, including all of the intellectual property and customer base Oracle gained through the PeopleSoft acquisition. Even under those extreme circumstances, as I stated at my deposition, I believe that Oracle would evaluate the proposal from SAP and "how much money Oracle would get" to see whether or not it was a "good business plan for us." If we were to receive such a proposal from SAP, I believe that I would have been asked to provide input and analysis to Mr. Ellison and the Board to inform their decision on whether to go forward with the proposed deal.

4. In order for me to provide input and analysis to Mr. Ellison and the Board concerning whether a proposed license to SAP would make business sense, I would need to understand all of the limitations on the nature, scope, terms and duration of that licensing proposal – including the specific Oracle software to be licensed, to whom, for what uses, and for

1
Case No. 07-CV-1658 (PJH)

how long. At my deposition, I was not provided with any factual limitations on the proposed license to consider in providing my testimony about my views concerning the possibility and price of that license. The factual assumptions I made based on the broad questions asked were in fact different from what I now understand to be the necessary inquiry, in determining a hypothetical license value which is to focus on the actual use by TomorrowNow, for a finite time period, of certain specified Oracle intellectual property, with specific results in the marketplace. For example, Mr. Lanier did not ask me to assume any limit on the time period of the proposed license that would match the time period that TomorrowNow actually operated as part of SAP. He also did not ask me about simultaneous hypothetical licenses for TomorrowNow's operations relating to Oracle's Siebel or database software. Mr. Lanier did not explain that the license would involve limited use and access by TomorrowNow alone, and would have not allowed SAP or TomorrowNow to openly market their access to and use of Oracle's intellectual property as part of a competitive service offering. My responses during my deposition would have been different if any or all of these limitations would have been explained. (I do not intend to say that the illustrative list of limiting facts above is comprehensive, but they illustrate how differently one would approach differing factual scenarios.) In particular, taking into account the types of factual differences described above, I would not have assumed that Oracle's license to SAP would have resulted in Oracle selling all of the intellectual property and customer base that Oracle acquired through the PeopleSoft acquisition. Consequently, though my estimation of the fair market value of such a more limited license would still be considerable, it would have been significantly lower than my estimation during my deposition of selling all of the intellectual property and customer base that Oracle had acquired through the PeopleSoft acquisition to SAP.

5. When presented with the final parameters of licenses for the actual infringement by Defendants of Oracle's copyrighted materials from Oracle's damages experts, I will analyze those parameters rigorously before opining on what I believe the fair value would be. Among the things I would consider are exactly what intellectual property was being licensed, to whom, how it was used, SAP/TomorrowNow access to the software, the limitations on SAP's ability to communicate to customers about the license, Oracle's expected profit from

2

Case No. 07-CV-1658 (PJH)

DECLARATION OF SAFRA CATZ

using the software in the absence of any such licenses, what Oracle expected to lose in business from granting such a license, how much Oracle had spent developing or acquiring the material to be licensed, how much time and cost Defendants could avoid by licensing the material when they did, the value Oracle would forgo by relinquishing exclusive control over the software, Oracle's competitive relationship with SAP, and any potential adverse impact on the competitive positions of the companies by virtue of the license.

6. I understand that Oracle's damages expert, Paul Meyer of Navigant consulting, is relying on various documents created or produced by Oracle in opposing SAP's motion for partial summary judgment. Exhibit 29 to the Meyer Declaration contains a true and correct copy of a worksheet labeled "PeopleSoft Operating Model." It is Bates numbered ORCL00313255. This document reflects backup for Oracle's "Project Spice" financial model prepared at the time of its acquisition of PeopleSoft. I was involved in creating and analyzing this financial model.

7. Exhibit 16 to the Meyer Declaration contains excerpts from the Standard and Poor Report "Oracle Corporation: Estimation of the Fair Value of Certain Assets and Liabilities of PeopleSoft, Inc. as of December 28, 2004." The full report has the Bates numbers ORCL 00313169-253. This document reflects an independent third-party valuation secured by Oracle and relied upon by Oracle of the fair value of certain assets and liabilities Oracle acquired from PeopleSoft, including intangible assets; it was used to assist Oracle in its allocation of the purchase price for financial reporting purposes.

8. Exhibit 30 to the Meyer Declaration contains a true and correct copy of a worksheet labeled "Sierra-Input." It is Bates numbered ORCL00312843. This document reflects backup for Oracle's "Project Sierra" financial model prepared at the time of Oracle's acquisition of Siebel. I also was involved in creating and analyzing this financial model.

9. Exhibit 18 to the Meyer Declaration contains excerpts from the Duff & Phelps report "Estimation of the Fair Value of Certain Assets and Liabilities of Siebel Systems, Inc. as of January 31, 2006." The full report is Bates numbered ORCL 00312747-819. This document reflects an independent third-party valuation secured by Oracle and relied upon by

1 | Oracle of the fair value of certain assets and liabilities Oracle acquired from Siebel, including
2 | intangible assets; it was used to assist Oracle in its allocation of the purchase price for financial
3 | reporting purposes.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 22, 2009 at Redwood Shores, California.

_____
Safra Catz