# EXHIBIT 1

Dockets.Justia.com

# CHAPTER 14

# Infringement Actions— Remedies

## SYNOPSIS

§ 14.01    Monetary Recovery—The Relationship Among Actual Damages, Defendant's Profits, and Statutory Damages

[A]    The Right to Both Actual Damages and Defendant's Profits

[B]    The Right to Statutory Damages

[C]    The Limits of Recovery

[1]    Avoiding Windfalls

[2]    Coordinating Copyright Damages With Other Recoveries

[3]    Indemnification, Contribution, Satisfaction

§ 14.02    The Computation of Actual Damages

[A]    Injury to Market Value of Copyrighted Work

[1]    Lost Revenue

[2]    Indirect Damage

[3]    Ability to Quantify

[B]    Imputed License Fee

[1]    *Deltak* Initiates

[2]    *Business Trends* Rejects

[3]    *Davis* Relents

[4]    Current Application

[C]    Other Recoveries

[1]    Interest

[2]    Punitive Damages

§ 14.03    The Computation of Defendant's Profits

[A]    Basic Standards for Establishing Profits

[B]    Gross Receipts

[1]    Scope of Revenues

[a]    From Consolidated Industries

[b]    From Use of the Infringing Item

[2]    Remote and Speculative Profits

[a]    Profits from Indirect Sources

[b]    Profits from Advertising

14-1                      (Rel. 78-5/2009   Pub.465)

            [c]     Doubtful Recovery for Increase in Defendant's Goodwill
            [d]     Curing Redaction As Bar to Further Recovery
    [C]     Extent of Deductible Amounts
            [1]     In General
            [2]     Taxes
            [3]     Overhead
            [4]     Inadequate Recordkeeping
    [D]     Apportionment of Profits
            [1]     Foundational Case Law
            [2]     Embellishments
            [3]     Modern Application
    [E]     Determination by Judge Or Jury?

§ 14.04     Statutory Damages
    [A]     The Copyright Owner's Election to Recover Statutory Damages
    [B]     The Minimum and Maximum Limits of Statutory Damages under the
            Current Act
            [1]     Basic Range from $750 to $30,000
                    [a]     General Considerations
                    [b]     Increase of Awards Over Time to Current Amounts
            [2]     Remittitur Down to $200 or 0 for Innocent Infringement
                    [a]     Innocent Infringement in General
                    [b]     The Teacher-Librarian-Broadcaster Exception
            [3]     Increase to $150,000 for Willful Infringement
                    [a]     Highest Mental Level
                    [b]     Amount of Award For Pre- and Post-1999 Filings
                    [c]     Burden of Proof and Presumption for False Domain Sites
    [C]     Judge or Jury?
            [1]     Under the Copyright Act
            [2]     Under the Seventh Amendment
            [3]     Exercise of Jury's Discretion
    [D]     Registration as a Condition Precedent to Statutory Damages
    [E]     Statutory Damages for Multiple Infringements
            [1]     The Infringement of More Than One Copyrighted Work Owned by
                    the Plaintiff
                    [a]     Multiple Works and Massive Awards
                    [b]     Infringing an Underlying Work Along With Its Derivative or
                            Collective Work
                    [c]     Standards Under 1909 Act For Derivative or Collective Works
                    [d]     Further Questions Regarding Derivative or Collective Works
            [2]     The Infringement of a Single Copyrighted Work by More Than One
                    Infringing Act
                    [a]     Infringement by a Single Infringer Held Liable in a Single
                            Action—A Preliminary View
                            [i]     Limitation Under Current Act

     [ii]  Under 1909 Act—"Infringing Transaction"

    [b] Infringement by a Single Infringer Held Liable in Two or More Actions

    [c] Reappraisal of the Rule as to a Single Infringer of a Single Copyright Held Liable in Single Action

    [d] Infringement by Two or More Infringers Held Liable in a Single Action

    [e] Infringement by Two or More Infringers Held Liable in Separate Actions

  [F] Statutory Damages under the 1909 Act

   [1] The Permissive and Mandatory Nature of Statutory Damages under the 1909 Act

    [a] When No Injury is Proven

    [b] When Injury is Proven But Neither The Amount of Actual Damages Nor Defendant's Profits Can Be Ascertained

    [c] When Either Actual Damages or Defendant's Profits Are Ascertained

    [d] When Both Actual Damages and Defendant's Profits Are Ascertained

   [2] The Minimum and Maximum Limits For Statutory Damages under the 1909 Act

   [3] The Yardstick for Statutory Damages under the 1909 Act

§ 14.05 Geographic Limits on Monetary Recovery

§ 14.06 Injunctive Relief

  [A] Preliminary Injunctions

   [1] Initial Considerations

    [a] Preservation of Status Quo

    [b] Extraordinary Remedy

    [c] Aimed Principally Against Copyright Infringement

   [2] Standards for Issuance—A First View

    [a] Statement of Elements

    [b] Presumption of Irreparable Injury

    [c] Collapsing Factors

   [3] Discretionary Withholding of Injunction

    [a] Plenary Authority

    [b] No Likelihood of Repetition

    [c] Unreasonable Delay

    [d] Adequacy of Monetary Damages

    [e] Other Considerations

   [4] Heightened Standard

    [a] Stay of Governmental Action

    [b] Mandatory Injunctions

   [5] Statement of Elements—A Reappraisal

    [a] Burgeoning Factors

    [b] Fair Use

[6]   **Procedure**
    [a]   **Evidentiary Showing**
    [b]   **Burden of Proof**
    [c]   **Bond**
[B]   **Permanent Injunctions**
    [1]   **Standards for Issuance**
        [a]   **Traditional Formulations**
        [b]   **Movement Towards Alternative Assessment of Damages**
            [i]   **In General**
            [ii]   **Special Rules for Omitted Copyright Notice and for Buildings**
            [iii]   **Generalizing That Approach Based on This Treatise's Recommendation**
            [iv]   **The Supreme Court Takes Steps in That Direction**
            [v]   **Conflicting Tendencies**
        [c]   **The Supreme Court Mandates Exercise of Discretion Under *eBay***
    [2]   **Injunctions Absent Past Infringement**
[C]   **Scope of Injunctive Relief**
    [1]   **Conduct Enjoined**
        [a]   **Targeted at Infringement**
        [b]   **Requirement of Specificity and Statement of Grounds**
        [c]   **Sensitivity to First Amendment Considerations**
    [2]   **Scope of Application**
        [a]   **Geographic Boundaries**
        [b]   **Persons Bound by Injunction**
        [c]   **Overlap with Registration Requirement**
    [3]   **Violations of Injunctions and Contempt of Court**

**§ 14.07**   **Impounding Infringing Articles**
[A]   **Scope of Impoundment Orders**
    [1]   **Infringing Copies and Phonorecords**
    [2]   **Molds, Matrices, Masters**
    [3]   **Documentation and Records**
        [a]   **No Authority under 1976 Act**
        [b]   **Augmented Authority in 2008**
        [c]   **Court Safeguards**
        [d]   **Incorporation of Standards from Trademark Act**
[B]   **Procedure**
    [1]   **Exercise of Discretion**
    [2]   **Reasonable Terms**
    [3]   **Supreme Court Rules Under 1909 Act**
    [4]   **Bond**
    [5]   **Violation**
    [6]   **Return of Seized Materials**

         [C]    **Opportunity for Adverse Party to Be Heard**
               [1]     Constitutional Requirements
               [2]     Statutory Construction
                     [a]     In General
                     [b]     Supreme Court Rules
                     [c]     2008 Amendment
         [D]    **Recall Orders**
         [E]    **Impoundment Under Color of State Law**
§ 14.08    **Destruction of Infringing Articles**
§ 14.09    **Costs of Suit**
§ 14.10    **Attorney's Fees**
         [A]    **Scope and Rationale**
         [B]    **Availability of Award**
               [1]     Action Under Title 17, United States Code.
                     [a]     Infringement Actions
                     [b]     Declaratory Relief
                     [c]     Settlement and Arbitration
                     [d]     Moving Afield from Title 17
               [2]     Circumstances Under Which Registration is Condition to Award
               [3]     Limitation to Prevailing Party
         [C]    **The Amount of the Fee**
         [D]    **When Should Fees Be Awarded?**
               [1]     The Requirement of Culpability
               [2]     The Distinction between Awards to Prevailing Plaintiffs and Prevailing Defendants
                     [a]     Lopsided or Balanced?
                     [b]     The Evenhanded Approach Prevails
               [3]     Long-Term Effect
                     [a]     Immediate Impact
                     [b]     Current Standards
         [E]    **Appeal of Awards**

*(Text continued on page 14-5)*

(Rel. 78-5/2009  Pub.465)

Case4:07-cv-01658-PJH   Document487-3   Filed09/23/09   Page7 of 43

## § 14.01   Monetary Recovery — The Relationship Among Actual Damages, Defendant's Profits and Statutory Damages

Having treated the procedural[1] and substantive[1.1] aspects of copyright actions, it is time to turn to the remedial features of copyright litigation. This chapter begins with monetary recovery, and then discusses the other forms of relief empowered under the Act.[1.2]

The discussion herein treats the Copyright Act's general damage features. It should be noted, however, that various particular sections under the Act contain specialized provisions for damage awards,[1.2a] which this treatise discusses in the context of its analysis of those particular aspects of the Act.[1.2b]

### [A]   The Right to Both Actual Damages and Defendant's Profits

Section 504(b) of the current Copyright Act removes an ambiguity that existed under the 1909 Act by explicitly specifying that the copyright owner who prevails in an infringement action "is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and* any profits of the infringer that are attributable to the infringement. . . ."[1.3] That this was intended to permit a recovery of actual damages "plus" the infringer's profits is further confirmed in the House Report.[2] *Prima facie,* it would appear that this feature merely continues the rule of Section 101(b) of the 1909 Act, which provided for a recovery of actual damages "as well as all the profits which the infringer shall have made from such infringement. . . ." However, the Committee Report on the 1909 Act stated:

> The provision that the copyright proprietor may have such damages as well as the profits which the infringer shall have made is substantially the same provision found in section 4921 of the Revised Statutes relating to

---

[1] See Chap. 12 *supra.*

[1.1] See Chap. 13 *supra.*

[1.2] Moral aspects lie largely outside the scope of this treatise. Nonetheless, even from a self-serving perspective, doing what is right can often redound to one's financial benefit; an ounce of apology, for example, can sometimes obviate a ton of court filings. See Cohen, *Advising Clients to Apologize,* 72 S. Cal L. Rev. 1009 (1999).

[1.2a] On statutory damages under the Satellite Home Viewer Act of 1988, see § 8.18[F][2][b][iv] *supra.* On additional damages added by the Fairness In Music Licensing Act of 1998, see § 8.18[C][2][d] *supra.*

[1.2b] See Chaps. 8A, 8B, 12A *supra.*

[1.3] 17 U.S.C. § 504(b) (emphasis added). See also 17 U.S.C. § 504(a)(1). On the desirability of a bifurcated trial, separating the issues of liability and damages, see Bevan v. Columbia Broadcasting Sys., Inc., 175 U.S.P.Q. 475 (S.D.N.Y. 1972).

[2] H. Rep., p. 161. See JBJ Fabrics, Inc. v. Mark Indus., Inc., 5 U.S.P.Q.2d 1414, 1418 (C.D. Cal. 1987) ("crepuscular explanation in the House Report") (Treatise cited).

(Rel. 71-12/2005  Pub.465)

remedies for the infringement of patents. The courts have usually construed that to mean that the owner of the patent might have one or the other, whichever was the greater. As such a provision was found both in the trademark and patent laws, the committee felt that it might be properly included in the copyright laws.[3]

This contradiction between the language of the 1909 Act and the legislative intent resulted in a confused state of the law, wherein some courts awarded damages or profits in the alternative,[4] whereas others awarded both cumulatively.[5]

Although under the current Act, a prevailing plaintiff is clearly entitled to recover both actual damages and the infringer's profits,[6] the latter measure is recoverable only if, and to the extent that, such profits have not already been "taken into account in computing the actual damages."[7] It may be wondered how the defendant's profits could ever be taken into account in computing the plaintiff's actual damages in view of "the different purposes served by awards of damages and profits. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act."[8] The House Report goes on to state:

---

[3] H.R. Rep. No. 2222, 60th Cong., 2d Sess. (1909), p. 15.

[4] Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977); Runge v. Lee, 161 U.S.P.Q. 770 (C.D. Cal. 1969), aff'd, 441 F.2d 579 (9th Cir. 1971), cert. denied, 404 U.S. 887 (1971); Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947); Gordon v. Weir, 111 F. Supp. 117 (E.D. Mich. 1953), aff'd, 216 F.2d 508 (6th Cir. 1954); see Lundberg v. Welles, 93 F. Supp. 359 (S.D.N.Y. 1950); Orgel v. Clark Boardman Co., 128 U.S.P.Q. 531 (S.D.N.Y. 1960), modified, 301 F.2d 119 (2d Cir. 1962). See also Fedtro, Inc. v. Kravex Mfg. Corp., 313 F. Supp. 990 (E.D.N.Y. 1970) (plaintiff not entitled to cumulative recovery of both his lost profits and defendant's actual profits).

[5] Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 456 F. Supp. 531 (S.D.N.Y. 1977), aff'd, 592 F.2d 651 (2d Cir. 1978); Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964); L & L White Metal Casting Corp. v. Joseph, 387 F. Supp. 1349 (E.D.N.Y. 1975); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir. 1985) (1909 Act). See Miller v. Universal City Studios, Inc., 650 F.2d 1365 (5th Cir. 1981). See also Trebonik v. Grossman Music Corp., 163 U.S.P.Q. 352 (N.D. Ohio 1969); Alouf v. Expansion Prods., Inc., 417 F.2d 767 (2d Cir. 1969); Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409 (2d Cir. 1970) (Treatise cited as taking the contrary view); Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976); Whitman Publishing Co. v. Writsell, 83 U.S.P.Q. 535 (S.D. Ohio 1949); Ziegelheim v. Flohr, 119 F. Supp. 324 (E.D.N.Y. 1954); Miller v. Universal City Studios, Inc., 650 F.2d 1365 (5th Cir. 1981); Sebring Pottery Co. v. Steubenville Pottery Co., 9 F. Supp. 384 (N.D. Ohio 1934).

[6] See Miller v. Universal City Studios, Inc., 650 F.2d 1365 (5th Cir. 1981). However, in the case of certain innocent infringements, only the infringer's profits, rather than actual damages, may be recovered. See § 7.14[B][1] supra.

[7] 17 U.S.C. § 504(b). See Blackman v. Hustler Magazine, Inc., 620 F. Supp. 792, 797 (D.D.C. 1985) (Treatise cited), rev'd on other grounds, 800 F.2d 1160 (D.C. Cir. 1986).

[8] H. Rep., p. 161.

"Where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively, since in effect they amount to the same thing."[9] But how could the defendant's profits ever constitute "nothing more than a measure of the damages suffered by the copyright owner," because, by definition, the defendant's profits are something other than the losses suffered by the plaintiff from the infringement? Apparently, what is here intended is that to the extent the actual damages consist of the plaintiff's lost profits,[10] they will be deducted from the measure of the defendant's profits in making an award of the latter.[11] Depending on the circumstances, a differential may still be left over: "If the infringer is a more efficient producer, his gain may exceed the copyright owner's loss."[11a] Although that remark happened to be *dictum* inasmuch as defendant failed to object,[11b] a party who timely notes the issue should rightly be able to avoid double counting.[11c]

In short, the plaintiff may not recover profits that have already been taken into account in computing its actual damages.[11.1] Still, even when a plaintiff's actual damages include lost profits, there may be an additional recovery of defendant's profits in an amount equal to (but not more than) the amount by which defendant's profits exceed plaintiff's lost profits.[11.2] It has been said that the rationale for such a recovery, even though that amount does not represent a loss to plaintiff, is that "it makes any

---

[9] *Id.*

[10] See § 14.02 *infra.*

[11] Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983); Deltak, Inc. v. Advanced Sys., Inc., 767 F.2d 357, 363 (7th Cir. 1985) (Treatise cited). The plaintiff's lost profits might be equal to, less than, or greater than the defendant's actual profits. See § 14.02 *infra.* For a careful analysis of actual damages, profits, and double—counting in a concrete factual setting, see Abeshouse v. Ultragraphics, Inc., 754 F.2d 467 (2d Cir. 1985). See also Manufacturers Technologies, Inc. v. Cams, Inc., 728 F. Supp. 75 (D. Conn. 1989); Knitwaves, Inc., v. Lollytogs Ltd., 71 F.3d 996, 1009 (2d Cir. 1995) (Treatise cited). But see Dolori Fabrics, Inc. v. Limited, Inc., 662 F. Supp. 1347, 1355 (S.D.N.Y. 1987) (Treatise cited), which relying on *Abeshouse* allows an impermissible award based on double-counting.

[11a] Bucklew v. Hawkins, Ash, Baptie & Co., 329 F.3d 923, 931 (7th Cir. 2003). "If he is not more efficient, his gain is likely to be less than the copyright owner's loss because competition will tend to force price down to cost, minimizing the infringer's profits but depriving the copyright owner of the supracompetitive return that he enjoyed before he faced competition from the seller of an exact substitute for his product." *Id.*

[11b] *Id.* at 931 (defendant "astonishingly . . . has failed to complain about double counting, and so it has booted away a winning issue").

[11c] Bouchat v. Bon-Ton Dep't. Stores, Inc., 506 F.3d 315, 328 (4th Cir. 2007) (Treatise cited), *cert. denied,* __ U.S. __, 128 S. Ct. 2054, 170 L. Ed. 2d 810 (2008). The intimate link between plaintiff's actual damages and defendant's profits, noted in this opinion, allowed the court to conclude that the element of "the two actions being identical" was present when plaintiff had earlier requested one defendants' profits and then sought to recover actual damages in a later action against separate defendants. See § 12.07 *supra* (discussing this case's determination of *res judicata*).

[11.1] Hamil Am. Inc. v. GFI, 193 F.3d 92, 108 n.7 (2d Cir. 1999) (Treatise quoted), *cert. denied,* 528 U.S. 1160 (2000). See §§ 14.01[A], 14.02 *supra.*

[11.2] Montgomery v. Noga, 168 F.3d 1282, 1296 (11th Cir. 1999) (Treatise quoted). See Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983).

would-be infringer negotiate directly with the owner of a copyright that he wants to use, rather than bypass the market by stealing the copyright and forcing the owner to seek compensation from the courts for his loss . . . [and, perhaps] some of the 'windfall' may actually be profit that the owner would have obtained from licensing his copyright to the infringer had the infringer sought a license."[11.3]

In *McRoberts Software, Inc. v. Media 100, Inc.*,[11.4] the jury resolved ambiguous contract terms to conclude that defendant infringed when it ported to a Windows environment software licensed from plaintiff solely for the Macintosh.[11.5] The jury thereupon awarded $1.2 million for actual damages, $900,000 for lost profits, and $300,000 for trade secret misappropriation.[11.6] Given that the evidence could have supported an award of up to $15 million for plaintiff's damages, that the evidence also showed defendant made profits in the amount of almost a million dollars, and that the jury was properly instructed "not to award lost profits for any amount that was already taken into account in determining actual damages," the Seventh Circuit had to assume that the jury followed its mandate; it affirmed on that basis.[11.7] Although the district court had vacated the trade secrets award as duplicative, the Seventh Circuit reinstituted that award as well, on a parallel basis.[11.8]

In one architectural infringement case, the district court improperly awarded a full measure of plaintiff's damages plus all of defendant's profits.[11.9] That double-counting was overturned on appeal.[11.10] In another architectural infringement case, the Ninth Circuit also awarded both damages that plaintiff would have earned had she sold the subject house, plus all of defendants' profits for selling it.[11.12] It reasoned that, because plaintiff "is not in the business of selling her services as a homebuilder, defendants cannot complain about the profit award to [her] on the basis that it constitutes forbidden double damages."[11.13] That reasoning is unconvincing: Double recovery is forbidden across the board, not only in those limited instances in which the plaintiff is engaged on an ongoing basis in the same line of business as the defendant's. Nonetheless, other

*(Text continued on page 14-9)*

---

[11.3] *Id.* at 1120.

[11.4] 329 F.3d 557 (7th Cir. 2003).

[11.5] *Id.* at 565. Given that the jury could have ruled in favor of either party, query on what basis the infringement was held to be willful. See *id.* at 573.

[11.6] *Id.* at 563.

[11.7] *Id.* at 569.

[11.8] *Id.* at 570 (holding that plaintiff suffered "measurable loss" which "was different from the loss" occasioned by the copyright infringement).

[11.9] Robert R. Jones Assocs., Inc. v. Nino Homes, 686 F. Supp. 160 (E.D. Mo. 1987).

[11.10] 858 F.2d 274, 281 (6th Cir. 1988).

[11.12] Eales v. Environmental Lifestyles, Inc., 958 F.2d 876, 881 (9th Cir.), *cert. denied*, 506 U.S. 1001 (1992).

[11.13] *Id.* at 881 n.4.

(Rel. 77-12/2008    Pub.465)

architecture cases continue to make both types of awards, even when the subject house has not been sold.[11.14]

### [B] The Right to Statutory Damages

One of the most obscure issues under the 1909 Act was the question of when statutory damages (sometimes called "in lieu" damages)[12] might properly be awarded.[13] Under the current Act, it is now clear that it is the copyright owner who may, at his discretion, elect to recover statutory damages[14] instead of actual damages and profits.[15] Such election may be made at any time before final judgment is rendered.[16] Contrary to some decisions under the 1909 Act,[17] it is further clear, under the current Act, that an election to recover statutory damages precludes not only a recovery of actual damages, but also a recovery of the defendant's profits.[17.1]

### [C] The Limits of Recovery

### [1] Avoiding Windfalls.

Prevailing in a copyright infringement suit can at times bring astronomical monetary recovery.[17.2] But a finding of liability is not a

---

[11.14] See, *e.g.*, Van Brouck & Assocs., Inc. v. Darmik, Inc., 329 F. Supp. 2d 924, 937 (E.D. Mich. 2004).

[12] The 1909 Act provided for an award "in lieu of actual damages and profits, such damages as to the court shall appear to be just . . . ." 17 U.S.C. § 101(b) (1909 Act), with a prescribed minimum and maximum award.

[13] The manner in which that issue was treated under the 1909 Act remains relevant only with respect to causes of action that arose prior to January 1, 1978. 17 U.S.C., Trans. Supp. Prov. Sec. 112. As to such causes of action, see § 14.04[F] *infra*. Where defendant has engaged in a series of infringing acts, some of which occurred prior to 1978, and others thereafter, the question arises as to the proper applicability of the 1909 and 1976 Acts. It would seem that the pre-1978 infringing acts are subject to the 1909 Act, and those occurring after January 1, 1978, fall within the provisions of the 1976 Act. However, in a questionable holding, the court in Kepner-Tregoe Inc. v. Carabio, 203 U.S.P.Q. (BNA) 124 (E.D. Mich. 1979), concluded that if a series of infringements began pre-1978, then all of the infringements, including those that occurred after January 1, 1978, are subject to the provisions of the 1909 Act. The court reached this conclusion by defining a "cause of action" within the meaning of Trans. Supp. Prov. Sec. 112, in a manner that it deemed to be consistent with the current Act's limitation of one set of statutory damages for all infringements alleged in a single action. See § 14.04[E][2][a] *infra*.

[14] However, in the case of certain innocent infringements, statutory damages are unavailable. See § 7.14[B][1] *supra*.

[15] 17 U.S.C. § 504(c)(1). See Original Appalachian Artworks Inc. v. Yuil Int'l Trading Corp., 5 U.S.P.Q.2d 1516, 1523 (S.D.N.Y. 1987) (Treatise cited). See also 17 U.S.C. § 504(a). "[T]he plaintiff in an infringement suit is not obliged to submit proof of damages and profits and may choose to rely on the provision for minimum statutory damages." H. Rep., p. 161. See § 14.04[A] *infra*.

[16] 17 U.S.C. § 504(c)(1).

[17] Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964); see Whitman Publishing Co. v. Writsell, 83 U.S.P.Q. 535 (S.D. Ohio 1949).

[17.1] Sparaco v. Lawler, Matusky, Skelly Engineers LLP, 313 F. Supp. 2d 247, 254 (S.D.N.Y. 2004) (Treatise quoted) (discussed in § 14.01[C][2] *infra*). Statutory damages are awarded "instead of actual damages *and* profits . . . ." 17 U.S.C. § 504(c)(1) (emphasis added).

[17.2] See, *e.g.*, § 14.04 *infra* (recounting at outset multi-million dollar verdicts against C. Elvin Feltner,

lottery ticket.[17.3] In all instances,[17.4] the relief should match the proof.[17.5] The result is that prevailing plaintiffs at times recover little to nothing.[17.6]

Two cases from 2003 illustrate, both of which took place on remand following plaintiff's success on an appeal establishing liability.[17.7] In one case, statutory damages were unavailable, given no timely registration of the work at issue.[17.8] Plaintiff in that case, on remand, recovered precisely zero for the Baltimore Ravens' adoption and massive usage of an infringing logo.[17.9] In the other case, the work had been timely registered—meaning that the judge on remand was able to award plaintiff a grand total of $4806 in statutory damages.[18]

**[2]   Coordinating Copyright Damages With Other Recoveries.** Damages under cognate causes of action[18.1] should be coordinated with copyright damages,[18.2]

---

Jr.); § 14.04[E][1] *infra* (detailing $118 million potential damages from MP3.com).

**17.3**  A case in point is Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346 (S.D.N.Y. 2003), *aff'd mem.*, 249 Fed. Appx. 845 (2d Cir. 2007), discussed in 14.10[D][3] *infra*.

**17.4**  The phenomenon under examination is hardly new. Decades ago, a claim for $6.5 billion arose against *Gone with the Wind*. See Alexander Lindey, *Plagiarism And Originality* 108 (1952).

**17.5**  MindGames, Inc. v. Western Pub. Co., 218 F.3d 652, 658 (7th Cir. 2000) ("Damages must be proved, and not just dreamed"), *cert. denied*, 531 U.S. 1126, 121 S. Ct. 882, 148 L. Ed. 2d 791 (2001).

**17.6**  For instance, in Goldenberg v. Doe, 731 F. Supp. 1155 (E.D.N.Y. 1990), defendant's 43 counts of admitted (nonwillful) infringement produced no profits to defendant, no proximate damage to plaintiff, and hence no award. See also § 14.02[B][2] N. 103 *infra*.

**17.7**  The two predecessor cases are Bouchat v. Baltimore Ravens, Inc., 228 F.3d 489 (4th Cir. 2000), and Boisson v. Banian, Ltd, 273 F.3d 262 (2d Cir. 2001).

**17.8**  See § 7.16[C] *supra*.

**17.9**  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514 (4th Cir. 2003), discussed in § 14.03[B][1][b] *infra*. Indeed, when statutory damages were not available in a later case, the court granted summary judgment to defendant in the absence of plaintiff's ability to articulate a theory of recoverable actual damages. See Iconbazaar, LLC v. America Online, Inc., 378 F. Supp. 2d 592, 594–595 (M.D.N.C. 2005).

**18**  Boisson v. Banian Ltd., 280 F. Supp. 2d 10, 21 (E.D.N.Y. 2003). The salient finding is that defendant

> did not mass market his quilts. He sold only 153 of the infringing quilts for a profit of $3.306. Moreover, he promptly withdrew the infringing quilts from the market upon initiation of the lawsuit. [T]he court would be hard pressed to conclude that there has been a significant devaluation to warrant the high end of statutory damages.

*Id.* at 17. Note that the court also denied a permanent injunction and attorney's fees. *Id.* at 21. The court later limited plaintiff's recovery of costs. See Boisson v. Banian Ltd., 221 F.R.D. 378, 382 (E.D.N.Y. 2004).

**18.1**  Other branches of law sometimes look to copyright cases for guidance as to how to compute damages. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) (trademark). There is nothing wrong with that sort of reasoning by analogy. But when courts derive rules for one body of law without adverting to the fact that they are citing decisions rendered in another, error results. See S.A.M. Elecs., Inc. v. Osaraprasop, 39 F. Supp. 2d 1074, 1081 (N.D. Ill. 1999) (claiming that copyright damages require "actual consumer reliance on the misleading statement," and citing trademark case for that proposition).

(Rel. 78-5/2009 Pub.465)

so as to avoid double recovery for the same wrong.[19] This principle represents "the legal version of the idea that a plaintiff may not have his cake and eat it too."[19.1] As one court has held, even though conduct may constitute "two wrongs," there should be but a single recovery to the extent that "those wrongs produced a single harm."[20] Nonetheless, it would seem that, even when violation of two distinct rights results from the same conduct, multiple recoveries may be permissible, to the extent that two different types of harm have been suffered.[21] An example could be separate copyright and trademark damages.[21.1]

At times, copyright damages may duplicate damages for breach of contract.[22] One case[23] allowed damages for copyright infringement, plus more damages via contract for the expense of litigating a separate copyright infringement suit arising out of the same conduct[24] if the instant defendant was not amenable to personal jurisdiction in the first case.[25] Another construed $3.3 million in actual damages for copyright infringement to be cumulative with those awarded for trademark infringement, but would allow a separate award of copyright statutory damages if plaintiff so elected.[26]

─────────────────────

[18.2]  In addition, care must be taken to coordinate separate awards all made under the Copyright Act itself. See § 14.03[A][3] *infra*.

[19]  First Nat'l Bank of Omaha v. Three Dimension Sys. Prods., Inc., 130 F. Supp. 2d 1102, 1107 (D. Neb. 2001). See, *e.g.*, Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 201 (9th Cir. 1989) (Lanham Act damages of $1.86 million duplicative of copyright damages of $1.87 million); Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 972 (4th Cir. 1990) (copyright and fraud damages); Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 346–47 (D. Mass. 1993), *aff'd*, 36 F.3d 1147 (1st Cir. 1994).

[19.1]  X-It Products, LLC v. Walter Kidde Portable Equip., Inc., 227 F. Supp. 2d 494, 524 (E.D. Va. 2002). See *id.* at 542–43. The upshot is that plaintiff "is entitled to the greatest amount recoverable under any single theory pled that is supported by the evidence." *Id.* at 524.

[20]  Murray v. Shaw Indus., Inc., 990 F. Supp. 46, 47 (D. Mass. 1997).

[21]  See Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 780 (8th Cir. 1992) ("Because the damage awards for breach of contract and copyright infringement were for completely separate injuries [one pre-dating and the other following the contract termination], the district court correctly awarded both"); Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc., 60 F. Supp. 2d 544, 546–547 (E.D. Va. 1999).

[21.1]  Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1010–1011 (9th Cir. 1994) (selling cartridges of plaintiff's copyrighted games, invoking plaintiff's names, gave rise to damages under both Copyright Act and Lanham Act); Microsoft Corp. v. Sellers, 411 F. Supp. 2d 913, 921 (E.D. Tenn. 2006).

[22]  See Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP, 303 F.3d 460, 469 n.2 (2d Cir. 2002), *cert. denied*, 538 U.S. 945, 123 S. Ct. 1632, 155 L. Ed. 2d 485 (2003) (following settlement of claim for breach of contractual entitlement that site plan—which formed subject matter of infringement claim—would not be copied, "it is not easy to see what further damages might remain available for copyright infringement").

[23]  Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999).

[24]  Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527 (5th Cir. 1994).

[25]  186 F.3d at 285.

[26]  See Symantec Corp. v. CD Micro, Inc., 286 F. Supp. 2d 1278, 1282 (D. Or. 2003). Obviously, in the posture of the case as it then stood, plaintiff had every incentive to give up the award of copyright actual damages and elect copyright statutory damages instead. See § 14.04[A] *infra*. But if the award for

In *Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*, plaintiff settled his claim for breach of contractual entitlement that a site plan would not be copied.[27] Given that that same copying formed the subject matter of his infringement claim, the Second Circuit noted "it is not easy to see what further damages might remain available for copyright infringement."[28] On remand, Judge McMahon could not see it either; she held that payment of $7000 fully compensated plaintiff for his contract damages and for his coextensive *actual* damages under copyright law.[29] But what about separate recovery of *statutory* damages under copyright law?[30] On that issue, the district court concluded:

> Since Plaintiff has already settled his contract claim for what, by any analytical measure, are his actual damages, he has gotten everything he is entitled to get under Section 504 of the Copyright Act. He has been fully compensated for his *compensable* harm. In this circumstance, I am hard pressed to see why he should be able to get an additional award—even a *de minimis* award—as "statutory damages."[31]

The only remaining question was whether plaintiff could keep his suit alive to recover attorney's fees, a remedy granted under the Copyright Act but not under contract law.[32] Given plaintiff's failure to prevail on his copyright claim[33] (as opposed to receiving compensation for the harm he suffered via infringement), the court denied him that relief, too.[34]

**[3]   Indemnification, Contribution, Satisfaction.** A host of issues arises when multiple defendants are named, and plaintiff collects various amounts from each. A prior section of this treatise has analyzed those matters in the context of related defendants,[35] where they typically arise.[36]

---

trademark infringement were later vacated, query whether that choice could come back to haunt plaintiff.

[27]  303 F.3d 460, 469 n.2 (2d Cir. 2002), *cert. denied*, 538 U.S. 945, 123 S. Ct. 1632, 155 L. Ed. 2d 485 (2003).

[28]  *Id.* at 469 n.2.

[29]  313 F. Supp. 2d 247, 251–252 (S.D.N.Y. 2004) (Treatise cited).

[30]  As to this issue, the court noted,

> I have found no other case discussing this precise question. Nor does Professor Nimmer's treatise—the bedrock authority on all copyright matters—address the issue in these terms. So I fall back on logic.

*Id.* at 253.

[31]  *Id.* at 254 (emphasis original).

[32]  *Id.* at 256.

[33]  See § 14.10[B][3] *infra* (fees limited to prevailing party).

[34]  313 F. Supp. 2d at 257.

[35]  See § 12.04[C][4] *supra*.

[36]  There is very little law when multiple defendants exist in one lawsuit, but not as related defendants. In other words, imagine that a copyright owner sues defendant *A* for reproducing her work and defendant *B* for performing it, but rather than *A* and *B* being jointly and severally liable for acting in concert, their

## § 14.02   The Computation of Actual Damages

The Act provides that the "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement . . . ."[1] Yet neither its text nor the Committee Reports attempt to define the nature of those actual damages. Reference must therefore be made to both statutory and common law copyright case law.[2] Since the turn of the millennium, a large number of cases have grappled with the standards for computing both plaintiff's damages and defendant's profits. Therefore, in this domain more than most, recent decisions dominate the landscape.

Damages present a quintessential issue for a jury to decide.[3] To avoid Seventh Amendment problems, a jury should be empaneled[4] to render judgment as to the amount of damages,[5] whenever the parties so request.[6] Although plaintiffs often request the sky,[7] recovery should be limited to the amounts that the facts sustain, as ventilated below.

### [A]   Injury to Market Value of Copyrighted Work

Actual damages represent the extent to which infringement has injured[8] or destroyed the market value of the copyrighted work at the time of infringement.[9] If the infringement has entirely destroyed the value of the work, the damages then equal the

---

activities arose wholly independently. Under those circumstances, it would seem that whatever plaintiff collects from *A* exerts no effect at all on the amounts that she could recover from *B*—but unusual circumstances might arise in future cases to alter the legal playing field.

[1]  17 U.S.C. § 504(b).

[2]  Deltak, Inc. v. Advanced Sys., Inc., 767 F.2d 357, 361 (7th Cir. 1985) (Treatise cited).

[3]  McMahon v. Prentice-Hall, Inc., 486 F. Supp. 1296 (E.D. Mo. 1980). See § 12.10[A] *supra*.

[4]  For an example of jury instructions on plaintiff's lost profits, see PAR Microsys., Inc. v. Pinnacle Dev. Corp., 995 F. Supp. 655, 657 (N.D. Tex. 1997).

[5]  It has been said that the jury need not specify its method of computing damages. See Brewer v. Hustler Magazine, Inc., 749 F.2d 527, 529 (9th Cir. 1984).

[6]  See § 14.04[C][2] *infra*.

[7]  See § 14.01[C][1] *supra*.

[8]  It would seem that injury to plaintiff in the marketplace does not hinge on defendant's innocence or willfulness. Nonetheless, the BCIA addresses mitigation of actual damages depending on such innocence. See § 14.04[B][2][a] N. 65 *infra*.

[9]  In Design v. K-Mart Apparel Corp., 13 F.3d 559, 563 (2d Cir. 1994) (Treatise cited); Fitzgerald Publ. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1118 (2d Cir. 1986) (Treatise cited), *remanded*, 670 F. Supp. 1133, 1138 (S.D.N.Y. 1987) (Treatise cited); Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1579 (Fed. Cir. 1992) (Treatise cited) (SCPA); Szekely v. Eagle Lion Films, Inc., 140 F. Supp. 843 (S.D.N.Y. 1956), *aff'd*, 242 F.2d 266 (2d Cir. 1957); Nash v. Alaska Airlines, Inc., 94 F. Supp. 428 (S.D.N.Y. 1950); Paramore v. Mack Sennett, Inc., 9 F.2d 66 (S.D. Cal. 1925); Edgar H. Wood Assocs., Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1964); Nucor Corp. v. Tennessee Forging Steel Serv., Inc., 513 F.2d 151(8th Cir. 1975); Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826 (9th Cir. 1985) (*per curiam*) (Treatise cited); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir. 1985) (1909 Act) (Treatise cited). Cf. Vic Alexander & Assocs. v. Cheyenne Neon Sign Co., 151 U.S.P.Q. 438, 417 P.2d 921 (Wyo. Sup. Ct. 1966). See *Restatement of Torts*, § 927. Such market value includes injury to the

Case4:04-cv-01658-PJH   Document487-3   Filed09/23/09   Page16 of 43

full value.[10] The copyright proprietor is competent to testify as to such value,[11] except, perhaps, where the proprietor manifestly has no knowledge about it.[12] But too much flamboyance in the claimed damages may cause the court to reject the proprietor's self-serving estimates.[13]

Damages may be reduced if it can be shown that plaintiff's work had been infringed by another work prior to its being infringed by defendant's work, to the extent that that evidence shows reduction of its value due to the third-party infringement at the time of defendant's infringement.[14] Likewise damages may be reduced if, prior to infringement, a license agreement has been executed by the plaintiff that in itself reduces the market value of the copyrighted work to the plaintiff as of the time of infringement.[15]

**[1]   Lost Revenue.** The basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement. The plaintiff has the burden "of establishing with reasonable probability the existence of a causal connection between defendant's infringement and loss of anticipated revenue."[16] Once the plaintiff has met this burden of showing a causal connection,[17] "the burden then properly shifts to the infringer to show that this damage would have occurred had there been no taking of the copyrighted expression."[18] In the context of statutory damages,[19] there may be an additional policy consideration that the defendant "cannot expect to pay the same price

---

value of reissue rights, and (in view of the adaptation right under § 106(2)) also sequel rights. Runge v. Lee, 441 F.2d 579 (9th Cir. 1971).

[10]   Golding v. RKO Pictures, Inc., 35 Cal. 2d 690, 221 P.2d 95 (1950).

[11]   Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947); Runge v. Lee, 441 F.2d 579 (9th Cir. 1971); Golding v. RKO Pictures, Inc., 35 Cal. 2d 690, 221 P.2d 95 (1950); Donahue v. United Artists Corp., 83 Cal. Rptr. 131 (1969).

[12]   See Silver v. Television City, Inc., 148 U.S.P.Q. 167, 207 Pa. Super. 150, 215 A.2d 335 (Pa. Super. 1965).

[13]   See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 n.8 (9th Cir. 1985) (1909 Act); Bruce v. Weekly World News, Inc., 150 F. Supp. 2d 313, 317 n.8 (D. Mass. 2001), *aff'd in part, vacated in part on other grounds*, 310 F.3d 25, 28 (1st Cir. 2002) (Treatise cited).

[14]   See Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947).

[15]   This is true even if the infringer and licensee are the same person. See County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966)

[16]   Key West Hand Print Fabrics, Inc. v. Serbin, Inc., 269 F. Supp. 605, 613 (S.D. Fla. 1965); Montgomery v. Noga, 168 F.3d 1282, 1294, 1295 (11th Cir. 1999) (Treatise cited). See PAR Microsystems, Inc. v. Pinnacle Dev. Corp., 995 F. Supp. 658, 661 (N.D. Tex. 1998) (causality lacking when plaintiff had no product of its own to sell).

[17]   An alternative is to phrase this test in terms of "but for" causality. Banff Ltd. v. Express, Inc., 921 F. Supp. 1065, 1068 (S.D.N.Y. 1995); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1171 (1st Cir. 1994).

[18]   Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 567, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) (Treatise cited).

[19]   See § 14.04 *infra*.

(Rel. 78-5/2009   Pub.465)

in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law."[20] But there appears to be no statutory warrant for that approach in the context of actual damages.[21]

The determination of injury to market value may often be most difficult.[22] Courts are therefore inclined to look to indirect evidence.[23] Thus, the plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement.[24] This measure, however, is not to be confused with the related,[25] but distinguishable, right to recover defendant's profits.[26] The profits in fact accrued by the defendant are not necessarily equal to the profits that the plaintiff would have derived but for the infringement. Because of different costs, production and selling techniques,[27] and goodwill, the defendant's actual profits may be either more or less than the plaintiff's lost profits.[28] If plaintiff's lost profits are less than defendant's actual

---

[20] Iowa State Univ. Research Found., Inc. v. American Broadcasting Cos., 475 F. Supp. 78 (S.D.N.Y. 1979) (1909 Act).

[21] Note that punitive damages are not recoverable in a suit for statutory copyright infringement. See § 14.02[C][2] infra.

[22] Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1118 (2d Cir. 1986) (Treatise cited).

[23] Davis v. The Gap, Inc., 246 F.3d 152, 167 (2d Cir. 2001) (Treatise cited). Nonetheless, it is not appropriate to award plaintiff its development costs in respect of the copyrighted work, unless perhaps defendant's usage has obliterated the value of the work. See Softel, Inc. v. Dragon Med. & Scientific Comms. Ltd., 891 F. Supp. 935, 941 (S.D.N.Y. 1995), aff'd in part, vacated in part, 118 F.3d 955 (2d Cir. 1997).

[24] Davis v. The Gap, Inc., 246 F.3d 152, 167 (2d Cir. 2001) (Treatise cited); Big Seven Music Corp. v. Lennon, 554 F.2d 504 (2d Cir. 1977) (extensive discussion of lost sales measure); Gross v. Van Dyk Gravure Co., 230 F. 412 (2d Cir. 1916); Fruit of the Loom, Inc. v. Andris Fabrics, Inc., 227 F. Supp. 977 (S.D.N.Y. 1963); Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976). See Meta-Film Assocs., Inc. v. MCA, Inc., 586 F. Supp. 1346 (C.D. Cal. 1984); Manufacturers Technologies, Inc. v. Cams, Inc., 728 F. Supp. 75, 80–81 (D. Conn. 1989) (Treatise cited) (elaborate economic analysis of plaintiff's profits); Ziegelheim v. Flohr, 119 F. Supp. 324 (E.D.N.Y. 1954); Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458 (E.D. Pa. 1987) (no profit lost to plaintiff from defendant's $2 million gross sales of infringing articles; ironically, opposite may have occurred as a result of indirect royalties plaintiff may have received overseas from defendant's activities).

[25] See § 14.01[A] supra.

[26] See § 14.03 infra. In United States v. King Features Entertainment, Inc., 843 F.2d 394, 400 (9th Cir. 1988) (Treatise cited), the appellate court rejected the amount that defendant actually received as an accurate measure of how much plaintiff lost, without taking cognizance of the fact that the district court could properly award that amount as defendant's profits.

[27] Mary Ellen Enters., Inc. v. Camex, Inc., 68 F.3d 1065, 1070 (8th Cir. 1995) (defendant offered book for free in conjunction with hosiery sale); Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 432 (8th Cir. 1992) (unsupported claim rejected as too speculative).

[28] Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964); Key West Hand Print Fabrics, Inc. v. Serbin, Inc. 269 F. Supp. 605 (S.D. Fla. 1965); Alouf v. Expansion Prods., Inc., 417 F.2d 767 (2d Cir. 1969); Fedtro, Inc. v. Kravex Mfg. Corp., 313 F. Supp. 990 (E.D.N.Y. 1970) (opinion contains an extensive analysis of the issue); L & L White Metal Casting Corp. v. Cornell Metal Corp., 353 F. Supp. 1170 (E.D.N.Y. 1972), aff'd, 177 U.S.P.Q. 673 (2d Cir. 1973). See Sammons v. Colonial Press, Inc., 126 F.2d 341 (1st Cir. 1942); Woodman v. Lydiard-Peterson Co., 192 F. 67 (C.C. D.C. Minn.

profits, plaintiff may recover its lost profits under the rubric of actual damages, and may further recover the difference between its lost profits and defendant's actual profits under the rubric of defendant's profits.[29] A plaintiff may not recover its full lost profits plus all of the defendant's profits,[30] for this would constitute a forbidden double recovery.[31] (It is possible, however, that plaintiff could recover its lost profits on competitive sales and additionally defendant's profits solely as to noncompetitive sales.)[32]

In the absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for infringement, the measure of lost profits may be rejected as too speculative.[33] One court rejected as speculative the contention that all of defendant's increased sales due to the infringement would have been sales by the plaintiff but for infringement,[34] but accepted as reasonable the conclusion that profits from those sales made by defendant to persons who had been plaintiff's customers during both the year of, and the year preceding, the infringement constituted "lost profits" for the purpose

---

1912), aff'd, 204 F. 921 (8th Cir. 1913); Lauratex Textile Corp. v. Allton Knitting Mills, 519 F. Supp. 730 (S.D.N.Y. 1981). Cf. Pret-A-Printee, Ltd. v. Allton Knitting Mills, Inc., 218 U.S.P.Q. 150, 154 (S.D.N.Y. 1982) (defendants' profits may be used "as an approximate measure of plaintiff's damages").

**29** Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983).

**30** Id.

**31** Hamil Am. Inc. v. GFI, 193 F.3d 92, 108 n.7 (2d Cir. 1999) (Treatise quoted), cert. denied, 528 U.S. 1160, 120 S. Ct. 1171, 145 L. Ed. 2d 1080 (2000). See § 14.01[A] supra.

**32** Manufacturers Technologies, Inc. v. Cams, Inc., 728 F. Supp. 75, 84 (D. Conn. 1989). See U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc., 781 F. Supp. 412, 414 & n.1 (M.D.N.C. 1991). See also § 14.03[B][2][a] and § 14.02[B][2] N. 110 infra and accompanying text.

**33** Hamil Am. Inc. v. GFI, 193 F.3d 92, 108 (2d Cir. 1999) (Treatise quoted), cert. denied, 528 U.S. 1160, 120 S. Ct. 1171, 145 L. Ed. 2d 1080 (2000); Odegard, Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1341 (S.D.N.Y. 1997) (Treatise cited); Orgel v. Clark Boardman Co., 128 U.S.P.Q. 531 (S.D.N.Y. 1960), modified, 301 F.2d 119 (2d Cir. 1962); Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964); L & L White Metal Casting Corp. v. Cornell Metal Corp., 353 F. Supp. 1170 (E.D.N.Y. 1972), aff'd, 177 U.S.P.Q. 673 (2d Cir. 1973); L & L White Metal Casting Corp. v. Joseph, 387 F. Supp. 1349 (E.D.N.Y. 1975). See Big Seven Music Corp. v. Lennon, 554 F.2d 504 (2d Cir. 1977) (lost sales recovery reduced on appeal).

In the context of common law copyright, see Smith v. Little Brown & Co., 273 F. Supp. 870 (S.D.N.Y. 1967); Read v. Turner, 239 Cal. App. 2d 504, 48 Cal. Rptr. 919 (1966). Read holds that loss of profits could not be claimed by one not engaged in an established business for the realization of such profits. But Williams v. Weisser, 78 Cal. Rptr. 542 (1969), holds that plaintiff may recover lost profits, even if he is not engaged in an established business, if such lost profits can be determined from the testimony of a prospective licensee who is engaged in an established business. See Dan Kasoff, Inc. v. Palmer Jewelry Mfg. Co., 171 F. Supp. 603 (S.D.N.Y. 1959).

**34** On the other hand, essentially that conclusion was held supported by the evidence in Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274 (6th Cir. 1988). In that case, the fact that defendant built the same style homes in the same neighborhood as plaintiff allowed the court to conclude that each of defendant's sales would have been made by plaintiff, absent the infringement. See the opinion below, 686 F. Supp. 160, 164 (E.D. Mo. 1987). For more analysis relating to the remedies specifically applicable to copyrights in architectural plans, see § 2.08[D][2][a] supra.

of computing plaintiff's damages.[35] Another court rejected as "too pie-in-the-sky" plaintiff's theory that it would have been able to market 15,000 videos if only defendant had paid it a license fee for the appropriated footage.[35.1]

The Second Circuit has permitted recovery of whichever proved to be larger between (1) lost profits that the plaintiff would have realized from sales to customers who had in the past purchased from both plaintiff and defendant, and (2) lost profits based on the difference between the percentage increase or decrease in the sales of the particular models sold by plaintiff that had been infringed by defendant and the average percentage increase or decrease of all of the other (noninfringed) models sold by plaintiff.[36] As to the first of the above two measures, the court held that, once the plaintiff established that it had been damaged, and that some of its customers had purchased both the infringed and the infringing products, the burden shifted to the defendant to prove that if there had been no infringement, such customers would nevertheless not have acquired from the plaintiff the quantity of product that had in fact been purchased from the defendant. Because recovery of the larger of the above two measures was permitted, it should follow that there might be a recovery of either such measure standing alone, even without proof of the other.

In order to determine plaintiff's lost profits, it is necessary to deduct from the gross amount of lost sales whatever increase in costs (including overhead) plaintiff would have incurred if such lost sales had in fact been made.[37] It was the failure to make such a deduction that long ago caused the Seventh Circuit to disallow a recovery based on lost sales.[38] Apart from this failure, the court would have approved a formula based on the average annual gross revenue received by plaintiff from sales of the infringed work during a two-year period immediately preceding commencement of the infringing sales multiplied by the number of years in which infringing sales had occurred, and under which that figure would be reduced by the actual gross revenue received by plaintiff from sales of the infringed work during the infringement period. This formula would have been acceptable to Judge Posner if there had been a further offset of cost savings accruing to plaintiff by reason of its lower volume of sales. But even then, application of the formula would have merely shifted the burden to the defendant to prove that plaintiff's declining sales were due to factors other than defendant's infringing sales.

---

[35] Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976). See Dolori Fabrics, Inc. v. Limited, Inc., 662 F. Supp. 1347, 1355 (S.D.N.Y. 1987) (Treatise cited); Technologies, S.A. v. Cyrano, Inc., 460 F. Supp. 2d 197, 201 & n.16 (D. Mass. 2006) (Treatise cited) (defendant's projections "can be used against him to construct a damage award").

[35.1] Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 709–10 (9th Cir. 2004).

[36] Stevens Linen Assocs., Inc. v. Mastercraft Corp., 656 F.2d 11 (2d Cir. 1981). See Abeshouse v. Ultragraphics, Inc., 754 F.2d 467 (2d Cir. 1985).

[37] See Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976) (no such deduction necessary where "plaintiff had reached the point in its production where its gross profit on each unit sold was its net profit"). The burden is on the plaintiff to prove that lost sales revenue would have been all profit. Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983).

[38] Taylor v. Meirick, 712 F.2d 1112 (7th Cir. 1983).

Case4:07-cv-01658-PJH   Document487-3   Filed09/23/09   Page20 of 43

**[2]   Indirect Damage.** In addition to the primary measure of value of the work infringed, the plaintiff may be able to recover certain supplemental items of actual damages. One example is the cost of making changes in plaintiff's publication necessitated by the prior appearance of defendant's infringing work.[39] A plaintiff who has produced a completed work, even if unpublished, may be entitled to reimbursement of travel and research expenses.[40] If plaintiff is a professional writer, he may be entitled to reimbursement for the value of the time expended in writing his work.[41]

Old law compensates for the loss of the value of being credited[42] as the author of the work.[43] A more recent case likewise awards a budding screenwriter the fee

*(Text continued on page 14-19)*

---

[39]  Atlantic Monthly Co. v. Post Publishing Co., 27 F.2d 556 (D. Mass 1928).

[40]  See Smith v. Little, Brown & Co., 273 F. Supp. 870 (S.D.N.Y. 1967).

[41]  *Id.*

[42]  Note that under consideration here is a species of recovery for copyright infringement, not a separate tort for failing to attribute. See § 8D.03[A] *infra.*

[43]  Graham v. James, 144 F.3d 229, 238 (2d Cir. 1998) (Treatise quoted). See Luster Enters., Inc. v. Jacobs, 278 F. Supp. 73 (S.D.N.Y. 1967); Bell v. Pro Arts, Inc., 366 F. Supp. 474 (N.D. Ohio 1973), *aff'd*, 511 F.2d 451 (6th Cir. 1975) (failure to identify true copyright owner, and implication that work is in the public domain). Cf. Neal v. Thomas Organ Co., 241 F. Supp. 1020 (S.D. Cal.

*(Footnote continued on page 14-19)*

he would have incurred absent infringement of his story.[44] More generally, loss of plaintiff's goodwill[45] due to defendant's infringement, if proved,[46] may be recovered; but such recovery was denied when plaintiff's gross sales increased during the period of infringement.[47]

It has been held that plaintiff may not claim, as an item of actual damages, the injury to his business by reason of the nature of defendant's use, if the same effect would have resulted from defendant lawfully distributing authorized copies of plaintiff's work.[48] Likewise, it has been held that plaintiff may not claim to have been damaged by reason of defendant's sale of infringing copies if the copies were sold to plaintiff's agent, because such sale prevented the distribution of such copies to the general public.[49]

   **[3]  Ability to Quantify.** Uncertainty will not preclude recovery of actual damages if the uncertainty is as to amount, not as to whether actual damages are attributable to the infringement.[50] The courts make the best possible appraisal of value,[51] looking if necessary to such additional factors as inherent value of the

---

1965); Bevan v. Columbia Broadcasting Sys., Inc., 175 U.S.P.Q. 475 (S.D.N.Y. 1972) (proper measure provided not too speculative).

   [44] Zervitz v. Hollywood Pictures, 995 F. Supp 596 (D. Md. 1996). The jury awarded $222,000, which the judge remitted down to $75,000.

   [45] Note the analytically separate matter of increase in value to *defendant's* goodwill. See § 14.03[B][2][c] *infra.*

   [46] See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1547 (10th Cir.), *cert. denied,* 519 U.S. 928 (1996) (corporate officer may testify as to extent of damage to goodwill).

   [47] Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976). See Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 471 (2d Cir. 1985) (no proof of damage to reputation).

   [48] Consumers Union of U.S. v. Hobart Mfg. Co., 189 F. Supp. 275 (S.D.N.Y. 1960).

   [49] Shapiro, Bernstein & Co. v. Bleeker, 243 F. Supp. 999 (S.D. Cal. 1965), *modified sub nom.* Shapiro, Bernstein & Co. v. 4636 So. Vermont Ave., Inc., 367 F.2d 236 (9th Cir. 1966) (court of appeals expressly declined to rule upon this theory); Higgins v. Detroit Educ. Television Found., 4 F. Supp. 2d 701, 705 (E.D. Mich. 1998) (Treatise cited).

   [50] Davis v. The Gap, Inc., 246 F.3d 152, 164, 167 (2d Cir. 2001) (Treatise quoted); Fournier v. Erickson, 242 F. Supp. 2d 318, 336–37 (S.D.N.Y. 2003) (Treatise quoted). See Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 513–14 & n.8 (9th Cir. 1985) (Treatise cited) (rejecting presumption of damages as "natural and probable result" of unauthorized performance under 1909 Act). See Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 567 (1985) (Treatise cited); Strauss v. Victor Talking Mach. Co., 297 F. 791 (2d Cir. 1924); Silver v. Television City, Inc., 207 Pa. Super. 150, 215 A.2d 335, 148 U.S.P.Q. 167 (1965); Taft v. Smith, Gray & Co., 76 Misc. 283, 134 N.Y. Supp. 1011 (1912).

   [51] Computer Assocs. Int'l, Inc. v. Altai, Inc., 775 F. Supp. 544, 571 (E.D.N.Y. 1991) (Treatise quoted), *aff'd in part, rev'd on other grounds,* 982 F.2d 693 (2d Cir. 1992).

(Rel. 71-12/2006   Pub.465)

work and utility value.[52] If the special value of the work to the plaintiff is greater than its market value, he may claim such greater measure.[53] In determining such special value to the plaintiff, the court may look to the nature of the work itself, its particular utility to the plaintiff, and to whether it can be reproduced.[54] However, actual damages may be particularly difficult to ascertain — and hence statutory damages particularly appropriate[55]— to the extent that the value of the copyrighted work resides not in its intrinsic value, but rather in its tendency to promote sales of other products.[56] That situation unfolds especially in the case of copyrighted advertisements, a special case discussed below.[57] It has been held equally applicable to a copyrighted website designed to sell motorized scooters.[58]

The First Circuit has upheld the award of $20,000 for a tabloid's unauthorized publication of a photograph,[59] rejecting plaintiff's attempt to recover an additional $400,000.[60] Its comprehensive opinion calls "proof of industry practice inarguably . . . crucial to the estimation of actual damages."[61] On the evidence presented, plaintiff photographer would have earned no more from per-use licensing of T-shirts and subscription advertising than for the first unauthorized use.[62] He was also unable to recover for promotional items given away to customers, such as T-shirts bearing the copyrighted image.[63] But the appellate court did reverse on one minor issue—it awarded him funds which he would have been contractually obligated to pay to a photo stock agency, but which were left in limbo when that agency became defunct.[64]

---

[52] Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947).

[53] See Szekely v. Eagle Lion Films, Inc., 140 F. Supp. 843 (S.D.N.Y. 1956), aff'd, 242 F.2d 266 (2d Cir. 1957); *Restatement of Torts*, § 927(c).

[54] See Taft v. Smith, Gray & Co., 76 Misc. 283, 134 N.Y.S. 1011 (1912). Cf. Wood v. Cunard S.S. Co., 192 F. 293 (2d Cir. 1911); Leoncini v. Post, 13 N.Y.S. 825 (1891).

[55] Of course, the work must be registered before infringement commences in order to be eligible for that remedy. See § 7.16[C] *supra*.

[56] Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 404 (S.D.N.Y. 2002) (Treatise quoted). See Sebring Pottery Co. v. Steubenville Pottery Co., 9 F. Supp. 384 (N.D. Ohio 1934).

[57] See § 14.03[B][2][b] *infra*.

[58] Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) (Treatise cited). "As such, Getaped's ability to establish a causal connection is difficult." *Id.* at 404.

[59] Bruce v. Weekly World News, Inc., 310 F.3d 25 (1st Cir. 2002). The photo of Pres. Clinton, when transformed by defendant, portrayed his endorsement by The Space Alien.

[60] *Id.* at 26. See § 14.02[B][4] N. 157.3 *infra*.

[61] 310 F.3d at 29.

[62] *Id.* at 29.

[63] *Id.* at 30.

[64] *Id.* at 28–29. ("As The Picture Group is presently defunct, its $ 1,100 share would either be

## [B]  Imputed License Fee

When losses to the copyright owner are difficult to quantify, it is better to look to defendant's profits.[65] When the infringement produces no gain to the infringer, the circumstances are ripe for awarding statutory damages.[66] But failure to timely register the work sacrifices the ability to recover statutory damages.[67] To the extent that all those circumstances coalesce, the specter arises of the copyright owner being unable to win any recovery at all, even if the infringer acted willfully and deliberately.[68] A series of cases has confronted this dilemma.[68.1]

### [1]  *Deltak* Initiates.

To avoid the harsh result of no recovery under those triple circumstances (no out-of-pocket losses to plaintiff, no profits to defendant, no ability to recover statutory damages), *Deltak, Inc. v. Advanced Systems, Inc.*[69] defined actual damages to include the "value of use" to the infringer.

In that case, plaintiff Deltak sold kits teaching data processing skills; the kits included a pamphlet listing various data-processing tasks, cross-referenced to appropriate Deltak publications for sale. Defendant ASI, a competitor in the field, exactly copied the descriptions of the tasks from Deltak's entire pamphlet, but substituted its own publications for Deltak's, thus preserving the pamphlet's form but converting it into a marketing tool for ASI. It then distributed fifteen of the infringing pamphlets without charge to mutual customers of ASI and Deltak, in an ultimately unsuccessful attempt to woo them away from Deltak. At trial, Judge Posner found ASI liable for infringement, from which judgment ASI did not appeal.[70] However, the vexing question arose in computing damages. For given the failure of ASI's marketing campaign, it earned no additional profits[71] and

---

retained by World News or remitted to Bruce. As World News is the copyright infringer, Bruce unquestionably is the more deserving recipient.")

65  See § 14.03 *infra.*

66  See § 14.04 *infra.*

67  See N. 73 *infra.*

68  See § 14.01[C] *supra.*

68.1  See Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 457 n.5 (6th Cir. 2001) (Treatise cited).

69  767 F.2d 357 (7th Cir. 1985). See Estate of Vane v. Fair, Inc., 849 F.2d 186 (5th Cir. 1988), *cert. denied,* 488 U.S. 1008, 109 S. Ct. 792, 102 L. Ed. 2d 783 (1989).

70  574 F. Supp. 400 (N.D. Ill. 1983). Judge Posner later commented on copyright profits from misappropriation of a mailing list. Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 415 (7th Cir. 1992) (*dictum*). Although that case included a copyright count, the profits at issue evidently stemmed from a breach of trade secrets, and therefore, should have been computed under a different area of law. See *id.*

71  The district court found no revenues attributable to the infringement. *Id.* at 411–12. The court of appeals, in calling into question that holding by stating that the burden falls on the defendant, 767 F.2d at 360, failed to realize that the plaintiff has the threshold burden of proving revenue

Deltak lost no prospective sales[72] on account of the infringing pamphlets. On that basis, the district court found no profit to ASI, no actual damage to Deltak, and accordingly, denied any recovery.[73]

On appeal, the Seventh Circuit grappled with the fact of infringement by ASI, but the absence of damages under the traditional tests of loss to plaintiff and of profit to defendant. It decided to adopt a new test. Reasoning that ASI had engaged in a marketing campaign for which it expended funds, that it willfully used an infringing pamphlet to facilitate the campaign, and that it reduced its own campaign costs by paying no royalty to the copyright owner for the infringing material, the court held that Deltak's actual damages were equal to the value of ASI's use. "Each of the copies ASI distributed had a value of use to it equal to the acquisition cost saved by infringement instead of purchase, which ASI was then free to put to other uses."[74] The court vacated the award

*(Text continued on page 14-21)*

---

attributable to the infringement, and only then does the burden shift to the defendant to prove elements of profit attributable to other factors. Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826 (9th Cir. 1985) (*per curiam*). See § 14.03[A] *infra*.

[72] 574 F. Supp. at 404.

[73] Because Deltak had not registered its copyright, it was not entitled to any statutory damages. 574 F. Supp. at 403. See § 14.04[D] *infra*.

[74] 767 F.2d at 361.

(Rel. 73-8/2007  Pub.465)

Case4:07-cv-01658-PJH   Document487-3   Filed09/23/09   Page25 of 43

of no damages and remanded for a determination of the fair market value of producing the fifteen infringing pamphlets.[75] This ruling expands on an older line of cases that looks to a price previously set between the parties for the same or similar copyrighted materials, and considers such price to be probative of actual damages,[76] albeit not determinative.[77] As one court stated:

> The value of use . . . amounts to a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work. That is a different measure than the determination of defendants' actual profits from the infringement. An author might license the use of his copyright either for a lump sum based on the reasonable value of the work or for a royalty derived from the licensee's profits, or for a combination of both.[78]

By holding that an infringer's saved acquisition costs count as a copyright owner's actual damages, *Deltak* avoids the anomaly of affording plaintiffs a right without a remedy.[79] For it cannot be doubted that ASI appropriated Deltak's property for its own interest; nor that, had ASI's marketing campaign succeeded, ASI would then be liable to Deltak for revenue directly attributable to the infringement.[80] To deny recovery because ASI's marketing campaign failed is to allow ASI to use Deltak's property risk-free — if use of the infringing pamphlet fails to generate revenue by bringing over customers from Deltak then there is no cost to ASI, while if it succeeds ASI risks at most disgorging its wrongful gains. Under the 1909 Act, the Supreme Court limned the inadequacies of such a weak disincentive against purloining copyrighted material: "[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers . . . . Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy."[81]

75 *Id.* at 363.

76 Szekely v. Eagle Lion Films, Inc., 242 F.2d 266 (2d Cir. 1957); Aitken v. Empire Constr. Co., 542 F. Supp. 252 (D. Neb. 1982) (Treatise cited). See Advertisers Exch. v. Hinkley, 101 F. Supp. 801 (W.D. Mo. 1951), *aff'd*, 199 F.2d 313 (8th Cir. 1952); Gordon v. Weir, 111 F. Supp. 117 (E.D. Mich. 1953).

77 Doll v. Libin, 17 F. Supp. 546 (D. Mont. 1936). See Sheldon v. Metro Goldwyn Pictures Corp., 309 U.S. 390 (1940).

78 Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir. 1977).

79 Business Trends Analysts, Inc. v. Freedom Group, Inc., 887 F.2d 399, 406 (2d Cir. 1989) (Treatise quoted).

80 574 F. Supp. at 403 (cat food hypothetical). See Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826 (9th Cir. 1985) (*per curiam*).

81 F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952).

Nonetheless, although *Deltak*'s value of use standard serves the Supreme Court's goal of "discourag[ing] wrongful conduct,"[82] it is open to question whether it fits the Court's requirement of being "within statutory limits."[83] In the context of the 1909 Act, for which the Court enunciated the foregoing language, the value of the use theory would have been neither needed nor approved. For under the 1909 Act, precisely for those instances such as *Deltak* where "proof of damages or discovery of profits" was "difficult or impossible,"[84] Congress provided for statutory damages, an automatic measure of recovery to plaintiffs regardless of injury or profits.[85] Such statutory damages were available in all infringement actions, even if the copyright had not been registered prior to the infringement. Moreover, given the availability of statutory damages, the courts under the 1909 Act rejected the "reasonable royalty" standard, a patent measure of damages that looks to the royalties customarily paid for the type of use to which the defendant has put the infringing material;[86] the similarities between this reasonable royalty rule and *Deltak*'s value of use theory are apparent.[87]

Under the current Act, by contrast, plaintiffs such as Deltak who neglect to register their copyright before the infringement cannot recover statutory damages.[88] Therefore, the question under the current Act becomes whether value of use is a species of actual damages falling within the statutory language of "the actual damages suffered by [the author] and any profits of the infringer."[89] The value of use of the infringing material fits neither category — as found by the district court in *Deltak*, the author (Deltak) suffered no actual damages from the infringement and the infringer (ASI) earned no profits from it. Though *Deltak* categorizes saved acquisition costs as actual damages to the author,[90] on the

[82] *Id.*

[83] *Id.*

[84] Douglas v. Cunningham, 294 U.S. 207 (1935). See F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952) (Black, J., dissenting).

[85] See Advertisers Exch., Inc. v. Hinkley, 199 F.2d 313 (8th Cir. 1952). Indeed, under the 1909 Act, when injury is proved, but neither actual damages nor profits can be ascertained, an award of statutory damages is mandatory. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 520 (9th Cir. 1985). CBS, Inc. v. Casino Record Distribs. of Fla., Inc., 654 F. Supp. 677, 678 (S.D. Fla. 1987), erroneously implies that this requirement continues under the current Act as well.

[86] Widenski v. Shapiro, Bernstein & Co., 147 F.2d 909 (1st Cir. 1945). See F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952). Cf. Lundberg v. Welles, 93 F. Supp. 359 (S.D.N.Y. 1950). See Childress v. Taylor, 798 F. Supp. 981, 990 (S.D.N.Y. 1992) (Treatise quoted).

[87] Note that Davis v. The Gap, Inc., 246 F.3d 152, 170 (2d Cir. 2001), quotes from the above to disagree with it. See § 14.02[B][3] *infra*.

[88] See § 7.16[C] *supra.*

[89] 17 U.S.C. § 504(b).

[90] Although the court of appeals refers to value of use several times as a form of damages,

theory that ASI would have purchased the fifteen pamphlets directly from Deltak had it wished to avoid infringement, and Deltak would have thereby earned the fair market value of the pamphlets, that logic relies on the most transparent of fictions[91] — if not for the infringement, there would have been no saved acquisition costs to ASI and *a fortiori* no losses to Deltak.[92]

*Deltak* fosters reason in the law of copyright by serving the Congressional purpose of discouraging infringement and by avoiding the anomaly of affording copyright owners a right without a remedy in situations when the subject work is unregistered. Yet, given that Congress deliberately excluded the recovery of statutory damages for unregistered copyrights under the current Act, the present statutory scheme suggests that Congress, in order to foster registration, chose as the penalty for failure to register the loss of any recovery in situations such as *Deltak*.[93] Such is the dictate of reason; experience, however, has spoken otherwise (as will be explored below).[94]

Several previous decisions support *Deltak*'s fashioning of the value-of-use rule.[95] In addition, a smattering of post-*Deltak* decisions follow its lead.[96] In

see 767 F.2d at 360–63, elsewhere the opinion reflects the impossibility of pigeon-holing value of use into either "damages" or "profits" by straddling the line separating those two categories and stating that "saved acquisition cost is a measure of damages *or profit.*" *Id.* at 362 n.3 (emphasis added).

[91] Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 405 (2d Cir. 1989) (Treatise quoted). See further discussion of this characterization in § 14.02[B][3] *infra.*

[92] See 574 F. Supp. at 404. Nonetheless, ASI accepted the value of use as a valid measure of damages for purposes of the appeal. 767 F.2d at 361. This fact, though it may justify application of the value of use standard in this particular case, manifestly cannot warrant adoption of a new rule of law.

[93] Note that Davis v. The Gap, Inc., 246 F.3d 152, 170 (2d Cir. 2001), quotes and disagrees with this passage. See § 14.02[B][3] *infra.* Its ultimate conclusion is that Congress did indeed countenance such recovery under the current Act.

[94] Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 406–07 (2d Cir. 1989), quotes this passage and most of the preceding four paragraphs from the text. See § 14.02[B][2] *infra.*

[95] Under the 1976 Act, see Sherry Mfg. Co. v. Towel King of Fla., Inc., 1984 Copyright L. Dec. (CCH) ¶ 25,695, 220 U.S.P.Q. 855 (S.D. Fla. 1983), *rev'd,* 753 F.2d 1565 (11th Cir. 1985); Aitken v. Empire Constr. Co., 542 F. Supp. 252 (D. Neb. 1982). Under the 1909 Act, see Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512–13 & n.6 (9th Cir. 1985); Nucor Corp. v. Tennessee Forging Steel Serv., Inc., 513 F.2d 151 (8th Cir. 1975); Atlantic Monthly Co. v. Post Publishing Co., 27 F.2d 556 (D. Mass. 1928). Cf. May v. Watt, 822 F.2d 896, 901 (9th Cir. 1987).

[96] See, *e.g.,* Roeslin v. District of Columbia, 921 F. Supp. 793, 799–800 (D.D.C. 1995). One court awarded value of use in addition to actual damages that plaintiff sustained. Kleier Advertising Co. v. James Miller Chevrolet, Inc., 722 F. Supp. 1544, 1546 (N.D. Ill. 1989). It is difficult to accept that court's finding that such did not constitute a prohibited double recovery. Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1040 (10th Cir. 1990). See § 14.01 *supra.*

one unusual case, the court rejected plaintiff's request for an award of damages under the Copyright Act for the defendants' wrongfully copying its depiction of data onto a patent application.[97] But turning aside from copyright, the court concluded that the defendants had committed fraud, and therefore awarded a royalty of 12% of pharmaceutical sales for the life of the patent, equivalent to $44 million, plus punitive damages.[98] The Federal Circuit affirmed the copyright decision, but vacated on other bases.[99] Later, the district court awarded $53 million for the plagiarized patent applications.[99.1]

**[2]—Business Trends Rejects.** Because the Second Circuit is where much of the jurisprudence on this issue has taken place, its rulings warrant extended discussion. The early experience after *Deltak* was hostile to a value-of-use theory. In *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,[100] defendant infringed plaintiff's robotic studies. To combat poor sales and to expand its customer base, defendant slashed its price by 90%. Defendant's president testified that that discount "was calculated to, *and did*, bring a discrete, concrete market advantage which [he] valued at the calculated cost of the differential between the regular copy price ($1,500) and the sales copy price ($150)."[101] The district court thereupon set damages at the number of infringing copies sold, times the differential, relying in part on *Deltak* and making a factual finding that the "concretized, non-speculative market advantage of the type here indisputably established out of the infringer's own mouth" qualified as a "gain realized from business."[102] On appeal, the Second Circuit reversed. With respect to damages based on "market advantage or value of use from the good will established by using" a discounted infringing work, the court acknowledged that "we see no legal barrier to such an award . . . so long as the amount of the award is based on a factual basis rather than 'undue speculation.' "[103] Nonetheless, the Second Circuit rejected the district court's measure of "the difference between the prevailing market price . . . and the actual sales price,"[104] ruling it not truly

[97] University of Colo. Found., Inc. v. American Cyanamid Co., 974 F. Supp. 1339, 1356–57 (D. Colo. 1997). For a later appeal in that case, see 342 F.3d 1298 (Fed. Cir. 2003).

[98] *Id.* at 1357–59.

[99] 196 F.3d 1366, 1375 (Fed. Cir. 1999), *cert. denied*, 529 U.S. 1130 (2000).

[99.1] See 216 F. Supp. 2d 1188, 1206 (D. Colo. 2002), *aff'd*, 342 F.3d 1298 (Fed. Cir 2003), *cert. denied*, 541 U.S. 988 (2004).

[100] 887 F.2d 399 (2d Cir. 1989).

[101] 700 F. Supp. 1213, 1238 (S.D.N.Y. 1988) (emphasis original), *rev'd*, 887 F.2d 399 (2d Cir. 1989).

[102] *Id.* at 1238, 1239. See text at N. 117 *infra*.

[103] 887 F.2d 399, 404 (2d Cir. 1989). See Lish v. Harper's Magazine Found., 807 F. Supp. 1090, 1111 (S.D.N.Y. 1992) (computing zero damages under *Business Trends*); Innovative Networks, Inc. v. Young, 978 F. Supp. 167, 184 (S.D.N.Y. 1997) (entering judgment for plaintiff with zero damage award).

[104] 887 F.2d at 404.

representing plaintiff's damages or defendant's profits: "True saved costs may well be counted as a gain in economic theory (although not by *Deltak*'s market

*(Text continued on page 14–25)*

value test), but the statute had a more conventional view of profits in mind . . . .
Congress means profits in the lay sense of gross revenue less out-of-pocket costs,
not the fictive purchase price that [defendant] hypothetically chose not to pay
to [plaintiff]."[105] This treatise's above analysis of *Deltak*[105.1] played into the
court's analysis:

> That eminent text goes on to suggest that whether to follow *Deltak* involves
> a choice between "reason" (rejecting it) and "experience" (adopting it). We
> view the choice, however, as between carrying out or rejecting a rational,
> if strict, policy embraced by Congress. Our obligation in those circumstances
> not being in doubt, we decline to follow *Deltak*.[106]

At this juncture, therefore, the tally was that value-of-use recovery had won
qualified approval from this writer, but disapproval from the Second Circuit.[107]

Subsequently, numerous cases relied on *Business Trends*.[108] One such case[109]
ruled that a plaintiff may seek to recover damages measured by its lost sales
on noninfringed items,[110] which were marketed as part of a line of merchandise
that included an item as to which copyright infringement was proven. The court
emphasized that plaintiff's proof must demonstrate a "necessary, immediate, and
direct causal connection" to the infringement itself,[111] a standard that it
recognized as "difficult" albeit "not inconceivable."[112] Finally, the court
admonished plaintiff that its failure to present "substantial credible evidence"[113]
for its unusual theory would tempt the court to award costs to defendant.[114] That
case highlights that proximate causation is often an issue in the computation of
actual damages.[115] Another case comments that, once a rebuttable presumption

---

[105] *Id.* at 406. As for the testimony from the defendant's president quoted above regarding "concrete market advantage," the Second Circuit implicitly must have taken it to be speculative.

[105.1] See § 14.02[B][1] *supra.*

[106] *Id.* at 407 (Treatise cited). See *Quinn v. City of Detroit,* 23 F. Supp. 2d 741, 751 (E.D. Mich. 1998) (Treatise cited).

[107] See § 14.02[B][3] *infra.*

[108] See, *e.g.,* *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 834 F. Supp. 477, 481 (D. Mass. 1992), *aff'd,* 36 F.3d 1147 (1st Cir. 1994).

[109] *Sunset Lamp Corp. v. Alsy Corp.,* 749 F. Supp. 520 (S.D.N.Y. 1990) (Treatise cited). See § 14.03[B][2][a] *infra.*

[110] Previously, the court had declared the copyright in plaintiff's table lamp invalid, while sustaining plaintiff's copyright in its floor lamp. *Sunset Lamp Corp. v. Alsy Corp.,* 698 F. Supp. 1146 (S.D.N.Y. 1988).

[111] 749 F. Supp. at 522, 525.

[112] *Id.* at 524.

[113] *Id.* at 525. That requirement serves to avoid the possibility of plaintiff earning an undeserved windfall through litigation. *Id.*

[114] *Id.* at 521, 525.

[115] See, *e.g.,* *Goldenberg v. Doe,* 731 F. Supp. 1155 (E.D.N.Y. 1990).

of "but for" causation is established, the defendant has two avenues of attack: (1) "attempt to show that consumers would have purchased its product even without the infringing element"; and (2) "show that the existence and amount of its profits are not the natural and probable consequences of the infringement alone."[116]

   The discussion above references *Business Trends*' focus on "gain realized from business."[117] It would appear that that case focused on defendant's profits, rather than plaintiff's damages.[118] The comparison with *Deltak*, which concentrated instead on actual damages, illustrates the slipperiness of the value-of-use theory of recovery. A district court focused on that distinction to conclude that *Business Trends* forbids computing a reasonable license fee as profit to the defendant but not as actual damage to the plaintiff — to the extent that the plaintiff can show that defendant would have paid it money absent the infringement.[119] Paradoxically,[120] evidence of defendant's ill motive benefits defendant, as it tends to negate a conclusion that defendant would have dealt with plaintiff but for defendant's wrongdoing. But if plaintiff can bear the "difficult"[121] burden of proving that, were it not for the infringing conduct, plaintiff and defendant would have done business together, it can recover damages on this theory.[122]

   Notwithstanding *Business Trends*' disapproval of *Deltak*, a later Second Circuit opinion, without citing the former, relied on the latter to remark in *dictum* that "we think that a reasonable license fee . . . best approximates the market injury sustained by" plaintiff.[123] But later, the Second Circuit took the bull by the horns.

   **[3]   *Davis Relents.*** In *Davis v. The Gap, Inc.*,[124] plaintiff created "nonfunctional jewelry worn over the eyes in the manner of eyeglasses."[125] All parties

---

   **116** General Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1171, 1175 (1st Cir. 1994) (Treatise cited). The latter inquiry implicates apportionment. See § 14.03[D] *infra*.

   **117** See text at N. 102 *supra*.

   **118** See § 14.03 *infra*.

   **119** Encyclopedia Brown Prods., Ltd. v. Home Box Office, 25 F. Supp. 2d 395, 400–01 (S.D.N.Y. 1998) (Treatise cited). See later opinion, 26 F. Supp. 2d 606 (S.D.N.Y. 1998) (sealing part of record as trade secret). To the same effect is Davis v. The Gap, Inc., 246 F.3d 152, 161 (2d Cir. 2001), discussed in § 14.02[B][2] *infra*.

   **120** This paradox may be relieved by subsequent doctrinal developments. See § 14.02[B][3] *infra*.

   **121** 25 F. Supp. 2d at 401.

   **122** The court here cites as facts tending to suggest that sale or licensing would have occurred: "(i) lack of ill motive of defendant in infringing, (ii) a pre-existing sale or licensing arrangement between the parties for the same or different copyrighted works, and (iii) other aspects of the parties' relationship, such as their status as non-competitors." *Id.* at 401–02.

   **123** Rogers v. Koons, 960 F.2d 301, 313 (2d Cir.), *cert. denied*, 506 U.S. 934 (1992). The remark is *dictum* inasmuch as this decision issued prior to the district court's damage determination.

   **124** 246 F.3d 152 (2d Cir. 2001).

   **125** *Id.* at 156.

conceded "that the Gap, without Davis's permission, used a photograph of an individual wearing Davis's copyrighted eyewear in an advertisement for the stores operating under the 'Gap' trademark that was widely displayed throughout the United States."[126] Plaintiff sued defendant, a multi-billion dollar clothing outfit, for $2.5 million in unpaid licensing fees (as well as $10 million in punitive damages).[127] The district court held that *Business Trends* "expressly rejected the 'lost license' theory" on which plaintiff's suit relied.[128] The Second Circuit reversed.[129]

Again, the reasoning set forth above in this treatise furnished the platform on which the court built much of its analysis.[130] The court was not persuaded by this treatise's characterization of "reasonable royalties" as being unavailable under the 1909 Act;[131] it cited cases taking the contrary position.[132] Quoting the above characterization of *Deltak* as resting "on the most transparent of fictions" given that the infringer there never would have negotiated with the copyright owner,[133] the court conceded that it "may be pertinent to the peculiar facts of that case, but for two reasons does not justify a general rule denying damages based on the market value of the use appropriated by the infringer."[134] Those reasons are first that the "hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner."[135] Second, "even if the larcenous intentions of the *Deltak* infringer furnished a valid reason to decline to award damages in that case for the fair market value of what the

126 *Id.* The subject ad featured plaintiff's handiwork: "The central figure, at the apex of the V formation, is wearing Davis's highly distinctive Onoculii eyewear; he peers over the metal disks directly into the camera lens." *Id.* at 157.

127 *Id.* at 156.

128 186 F.R.D. 322 (S.D.N.Y. 1999).

129 As in *Deltak*, belated registration precluded recovery of statutory damages. 246 F.3d at 158 n.1.

130 *Id.* at 170–71 (numerous citations and quotations to Treatise). See §§ 14.02[B][1]–[2] *supra*.

131 *Id.* at 171, *citing* § 14.02[B][2] N. 86 *supra*. One should not make too much of the matter, which the court deems the "least important" factor in its analysis. *Id.* Nonetheless, it is worth mentioning that the court fails to cite to the additional cases from the 1909 Act cited in § 14.02[B][2] N. 95 *supra*.

132 *Id.*, *citing* Szekely v. Eagle Lion Films, Inc., 242 F.2d 266, 268–69 (2d Cir. 1957), *cert. denied*, 354 U.S. 922 (1957).

133 246 F.3d at 170, 171. See text at § 14.02[B][2] N. 91 *infra*.

134 *Id.* at 171. Note that the Second Circuit had previously declared, "We decline to adopt *Deltak*'s approach. As the Nimmer text has noted, it is based 'on the most transparent of fictions.' " *Business Trends*, 887 F.2d at 405.

135 246 F.3d at 172. "The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license. The honest purchaser is hypothesized solely as a tool for determining the fair market value of what was illegally taken." *Id.*

(Rel. 65—12/04   Pub.465)

infringer took for free, that circumstance" is not universally applicable.[136] Given that The Gap evidently infringed "by reason of oversight or good faith mistake,"[137] the court believed that recovery of lost licensing fees should be permitted.

With adoption of this new wrinkle comes the question of computation — how much should the reasonable royalty be? The court rejected plaintiff's prayer for $2.5 million, holding it a "wildly inflated claim of entitlement."[138] Based on plaintiff's testimony that "on one occasion he was paid a royalty of $50 for the publication by Vibe magazine of a photo of the deceased musician Sun Ra wearing Davis's eyewear,"[139] the court ruled that

> a jury could reasonably find that Davis established a fair market value of at least $50 as a fee for the use of an image of his copyrighted design. [Plus,] if Davis could show at trial that the Gap used the image in a wider circulation than Vibe, that might justify a finding that the market value for the Gap's use of the eyewear was higher than $50.[140]

Reverting to the above tally, its revised status shows that value-of-use recovery, which had originally won qualified approval from this writer, is no longer disapproved in the Second Circuit.[141] Instead, it is now adopted there[142] as a permissible aspect of the plaintiff's "actual damages."[143] Presumably, future

---

136 *Id.* at 172.

137 *Id.* The subject advertisement resulted not from The Gap's intentional usage of plaintiff's jewelry. Instead, the company instructed those photographed for the ad "to wear their own eyewear, wristwatches, earrings, nose-rings or other incidental items, thereby 'permitting each person to project accurately his or her own personal image and appearance.' " *Id.* at 157. The court adds that, in other cases, defendant could proceed "in good faith that the work was in the public domain, that his licensor was duly licensed, or that his use was protected by fair use." *Id.* at 172.

138 *Id.* at 161. In addition, the court rejected recovery of speculative profits to The Gap from the advertisement — in this respect affirming the decision below. *Id.* at 160–61. See § 14.03[B][2] *infra.* See also the discussion of *Davis v. Gap* at § 14.03[B][1][a] *infra.*

139 *Id.* at 161.

140 *Id.* at 161. It is important to observe that the value is measured from the infringer's perspective, not from that of the highest charge that plaintiff could make under any circumstances.

Thus, assuming the defendant made infringing use of a Mickey Mouse image for a single performance of a school play before schoolchildren, teachers and parents with tickets at $3, the fair market value would not be the same as the fee customarily charged by the owner to license the use of this image in a commercial production.

*Id.* at 166 n.5. Note that, for these purposes, Vibe Magazine and The Gap are both commercial actors.

141 See § 14.02[B][2] *supra.*

142 Both *Business Trends* and *Davis v. Gap* invoke this treatise to disagree with it — the former to reject *Deltak* more decisively than this writer, the latter to embrace it more wholeheartedly.

143 246 F.3d at 165. The court continues to recognize there is no easy resolution of the situation

cases will bring concrete results from this change of course exceeding the $50 at stake in *Davis v. Gap*. It would further appear that the paradox attending *Business Trends*—whereby defendants with ill motive are less liable for damages than innocent defendants[144]—no longer pertains.[145] "The question is not what the owner would have charged, but rather what is the fair market value."[146] Nonetheless, if the matter appropriated has no market value, then there can be no recovery even under *Davis v. The Gap*.[147]

**[4]   Current Application.** Under *Davis v. The Gap*, a court has rejected, as unreliable, extrapolation from "a single license between non-parties [to] a use different from" the one in suit.[148] But plaintiff may offer evidence concerning his "past work as well as evidence illustrating the progress of negotiations as the parties worked toward a mutually agreeable payment figure."[149] In *Mackie v. Rieser*,[150] the Ninth Circuit followed its own 1909 Act cases to reach the same result as in *Davis v. The Gap*: the market value at the time of infringement is determined by answering the hypothetical query concerning "what a willing buyer would have been reasonably required to pay to a willing seller" for the subject work.[151] It rejected "hurt feelings" from the nature of the infringement as part of that calculus.[152]

---

in which admitted infringement has caused no "lost sales, lost opportunities to license, or diminution in the value of the copyright." *Id.* at 164. One could either evaluate actual damages as zero or as the fair market value of the appropriated use. *Id.*

   Neither answer is entirely satisfactory. If the court dismisses the claim by reason of the owner's failure to prove that the act of infringement cause[d] economic harm, the infringer will get his illegal taking for free, and the owner will be left uncompensated for the illegal taking of something of value. On the other hand, an award of damages might be seen as a windfall for an owner who received no less than he would have if the infringer had refrained from the illegal taking. In our view, the more reasonable approach is to allow such an award in appropriate circumstances.

*Id.*

   [144] See text at § 14.02[B][2] N. 120 *supra*.

   [145] "The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license." 246 F.3d at 172. Nonetheless, the decision continues to concede that "the larcenous intent of the *Deltak* infringer" might have furnished a valid reason to decline to award damages *in that case.*" *Id.* at 172 (emphasis original). That snippet could be argued to continue the same paradox even during the pendency of *Davis v. Gap*—that truly willful defendants escape royalties, whereas those who are simply mistaken must pay damages.

   [146] *Id.* at 166.

   [147] *Id.* at 166.

   [148] Country Rd. Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2003).

   [149] Fournier v. Erickson, 242 F. Supp. 2d 318, 337 (S.D.N.Y. 2003). Cross-examination can highlight the self-serving nature of that testimony, plus the jury can be instructed that plaintiff's "assertions about what he would have charged are not determinative of actual damages . . . ." *Id.*

   [150] 296 F.3d 909 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003). For a discussion of the profits aspect of this case, see § 14.03[B][2][b] *infra*.

   [151] *Id.* at 917 (affirming award of $1,000 for 150,000 unauthorized copies of plaintiff's artwork in defendant's brochures).

   [152] *Id.* at 917 Although plaintiff testified that he objected to the context of exploitation, and therefore

In *McRoberts Software, Inc. v. Media 100, Inc.*,[153] the jury awarded $1.2 million, having been properly instructed to determine "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the use made of the source code."[154] The Seventh Circuit rebuffed defendant's allegation that that figure consisted of undue speculation, given that the evidence included proof of defendant's entry into several multi-million dollar software deals of comparable import.[155] It held that the fact that defendant would not have hired plaintiff itself[156] "misses the point," inasmuch as the imputed value of the infringement could be determined under all the evidence presented.[157]

In *Polar Bear Prods., Inc. v. Timex Corp.*, Timex declined to pay Polar Bear's requested fee of $37,500 for video footage, and then used the subject footage anyway.[157.1] The court sustained a jury verdict of $315,000 in lost license fees plus renewal fees plus lost profits as within the range of reasonable market value.[157.2]

In *Thoroughbred Software Int'l, Inc. v. Dice Corp.*,[157.3] defendant acted as plaintiff's licensee for software modules, with the right (subject to royalty payment) to lease computers onto which such modules had been loaded to its own customers, provided that those customers would register their status and agree to be bound to the agreement.[157.4] In breach of the license, defendant made some copies[157.5] that were installed on customers' computers but were never used, and indeed that defendant had technically disabled so that those customers could not use them.[157.6] The district court

---

would have charged $85,000 for a license, he conceded that he had previously given free licenses, and could only speculate about the loss of future commissions. *Id.* at 913.

[153]  329 F.3d 557 (7th Cir. 2003).

[154]  *Id.* at 569 (parties' names edited out).

[155]  *Id.* at 566–67.

[156]  Allegedly, plaintiff lacked "the technical capability or human resources to complete the project. . . ." *Id.* at 567.

[157]  *Id.* at 567

[157.1]  384 F.3d 700, 709 (9th Cir. 2004).

[157.2]  "Timex is in no better position to haggle over the license fee than an ordinary thief and must accept the jury's valuation unless it exceeds the range of the reasonable market value. The proposed license fee was proffered before Timex's infringement. Nothing suggests that the fee was contrived or artificially inflated." *Id.* at 709.

[157.3]  439 F. Supp. 2d 758 (E.D. Mich. 2006).

[157.4]  *Id.* at 764.

[157.5]  Liability was clear, given that some copies were installed without authorization onto defendant's customers' computers. *Id.* at 767. As to those that were used, the court assessed damages. *Id.* at 772. That aspect is not the focus of discussion that follows, which focuses instead on the dispute between the parties relating to unused copies.

[157.6]  *Id.* at 773. As to motivation, the court explained,

The defendants' witnesses testified without contradiction that copying the software, particularly the optional modules, was a matter of convenience so that if a customer later wanted to add a feature, it could be done without upsetting the existing data files. The witnesses also testified without

found no causal connection of damage to plaintiff from the technical violation consisting of those unusable items.[157.7] But the Sixth Circuit reversed.[157.8] Given that the parties' license agreement set a price for each copy that defendant made (even if not used),[157.9] evidence cognizable under *Davis*[157.10] showed the reasonable license fee that a willing buyer would pay a seller under the circumstances.[157.11] On that basis, the Court of Appeals added $183,000 to the damages awarded.[157.12]

In one case, the court refused to allow "expert testimony about industry practice concerning damages multipliers for the misuse of material protected by the copyright laws."[157.13] A subsequent case categorically rejected actual damages reflecting such a "fee for unauthorized usage."[157.14]

## [C]   Other Recoveries

[1]   **Interest.** Interest on the amount of the judgment running from the time of the infringement—rather than from the date of entry of the judgment[158]—has

---

contradiction that no such activation would take place without authorization from the plaintiff and payment of the cost of the software.

*Id.*

**157.7** *Id.* at 773.

**157.8** 488 F.3d 352 (6th Cir. 2007).

**157.9** If the activity about which plaintiff complained was simply barred by contract but did not implicate the exclusive rights of the copyright owner, there could be no copyright damages. The problem for defendant arose in that its copying of plaintiff's software technically violated plaintiff's reproduction right. Accordingly, defendant tried the "no harm, no foul" approach. But the panel rejected that attempt:

Dice Corp. also argues that because it created a security program to ensure that its customers did not access the infringing software, it should not have to pay for the infringing copies that it admittedly made. Yet the effort that an infringer takes to ensure that no one else can benefit from the illegally-gotten software does not negate the fact that the infringer illegally obtained the software in the first place.

*Id.* at 359 n.3.

**157.10** See § 14.02[B][3] *supra.*

**157.11** 488 F.3d at 359.

**157.12** *Id.* at 361–362.

**157.13** Fournier v. Erickson, 253 F. Supp. 2d 664, 665 (S.D.N.Y. 2003). As discussed above, Bruce v. Weekly World News, Inc., 310 F.3d 25 (1st Cir. 2002), likewise rejected a multiplier. See text accompanying § 14.02[A][3] N. 60 *supra.*

**157.14** Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc., 335 F. Supp. 2d 466, 467 (S.D.N.Y. 2004).

The "value of what was illegally taken" is not determined by multiplying it. Plaintiff's expert calculated that value at $60,000 and (if that figure is proved) that amount, and not a multiplication of it, represents plaintiff's "actual damages."

*Id.* at 469.

**158** See also Steve Altman Photography v. United States, 18 Cl. Ct. 267, 283 (1989) (interest awarded from date of filing action).

Case 4:01-cv-01658-PJH   Document 487-3   Filed 09/23/09   Page 37 of 43

occasionally been awarded in copyright[159] cases,[160] but some courts have expressly declined to include such a measure in a damages award.[161] In 1989, the Ninth Circuit held prejudgment interest to be an available remedy under the 1909 Act.[162] Given that the number of suits complaining of pre-1978 infringement still pending in 1989 could probably be counted on one hand, the direct precedential value of that ruling would appear to be minuscule.[163] Given further that the court reached its construction specifically under provisions of the 1909 Act, which are inapplicable to the 1976 Act,[164] the indirect precedential value of that ruling would appear to be similarly circumscribed.[165]

Nonetheless, the following year the Tenth Circuit[166] addressed a question of first impression in that circuit—whether prejudgment interest may be awarded under the 1976 Act[167]—and answered "yes" for the "reasons set out in . . . recent Seventh and

[159] In noncopyright cases, such awards are also possible. *E.g.*, U.S. Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991) (awarding prejudgment interest in book royalty dispute under New York contract law). Cf. Motion Picture Ass'n of Am., Inc. v. Oman, 969 F.2d 1154, 1157 (D.C. Cir. 1992) (in context of resolving Copyright Office regulatory dispute, invoking "the federal common law rule that a court should ordinarily award prejudgment interest").

[160] Fedtro, Inc. v. Kravex Mfg. Corp., 313 F. Supp. 990 (E.D.N.Y. 1970). See Lottie Joplin Thomas Trust v. Crown Publishers, 592 F.2d 651, 656 (2d Cir. 1978) (affirming prejudgment interest albeit without discussion).

[161] Broadcast Music, Inc. v. Golden Horse Inn Corp., 709 F. Supp. 580, 581 (E.D. Pa. 1989); Aitken v. Empire Constr. Co., 542 F. Supp. 252 (D. Neb. 1982); In Design v. Lauren Knitwear Corp., 782 F. Supp. 824, 837 (S.D.N.Y. 1991); Love v. Kwitny, 772 F. Supp. 1367, 1373–74 (S.D.N.Y. 1991); U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc., 781 F. Supp. 412, 413 (M.D.N.C. 1991) (previous reversal by Fourth Circuit of prejudgment interest award); Davis v. E.I. du Pont de Nemours & Co., 257 F. Supp. 729 (S.D.N.Y. 1966). See Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274, 282 & n.8 (6th Cir. 1988) (vacating award of prejudgment interest); Brooktree Corp. v. Advanced Micro Devices, Inc., 757 F. Supp. 1088, 1099 (S.D. Cal. 1990) (denying prejudgment interest under SCPA, see § 8A.10[A] *supra*), *aff'd*, 977 F.2d 1555 (Fed. Cir. 1992); Baldwin Cooke Co. v. Keith Clark, Inc., 420 F. Supp. 404 (N.D. Ill. 1976). See Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 609 F. Supp. 1325 (E.D. Pa. 1985) (awarding postjudgment, denying prejudgment, interest), *aff'd on other grounds*, 797 F.2d 1222 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987).

[162] Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1550–53 (9th Cir. 1989).

[163] Suits alleging infringement occurring on January 1, 1978, or thereafter, arise under the 1976 Act, not the 1909 Act. See Overview *supra*. Given that the statute of limitations for copyright infringement is three years, absent a tolling of the statute, all such 1909 Act cases must have been filed by December 31, 1980. See § 12.05 *supra*.

[164] The court focused on the fact that, under the 1909 Act, only the greater of defendant's profits or plaintiff's actual damages are recoverable. 886 F.2d at 1552. This is to be compared with the situation, under the current Act, in which a noncumulative award of both is possible. See § 14.01[A] *supra*.

[165] The Ninth Circuit expressed no view as to whether prejudgment interest may be awarded under the 1976 Act. 886 F.2d at 1551 n.8.

[166] Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036 (10th Cir. 1990).

[167] That the case arose under current law, rather than under the 1909 Act, is implicit in the fact that infringement took place in the 1980's, and explicit in the court's constructions of provisions of the 1976 Act. See *id.* at 1039–40.

Ninth Circuit decisions which hold that prejudgment interest may be awarded on claims for copyright violations."[168] The citation to the foregoing Ninth Circuit case misses the mark, given that the latter construed solely the predecessor Act and did not purport to address awards of prejudgment interest under current law.[169] And the citation to the Seventh Circuit case is also inapposite, given that that case arose in a trademark action, not in a case alleging copyright infringement.

Yet given that the Seventh Circuit did announce in that trademark case that the "time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations,"[170] the trend[171] may currently be towards awards of prejudgment interest[172] in federal courts.[173] Later, the Seventh Circuit affirmed an award of over $300,000 in prejudgment interest for willful copyright infringement.[174] The Ninth Circuit too extended its prior 1909 Act holding to the current Act, noting that "prejudgment interest may be necessary at times to effectuate the legislative purpose of making copyright holders whole and removing incentives for copyright infringement. . . ."[174.1]

[2]  **Punitive Damages.** Judge Posner has stated that "there is no basis in the

---

[168]  *Id.* at 1040–41, *citing* Frank Music (see N. 162 *supra*); Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431 (7th Cir. 1989). For a massive award of prejudgment interest in a subsequent case arising within the Tenth Circuit, see *In re* Independent Serv. Orgs. Antitrust Litig., 23 F. Supp. 2d 1242, 1250 (D. Kan. 1998).

[169]  See N. 165 *supra.* Another case involving the same plaintiff appropriately rejected defendant's contention that the court should look to pre-1976 Act cases on the issue of awards of profits and damages. Kleier Advertising Co. v. James Miller Chevrolet, 722 F. Supp. 1544, 1545–46 (N.D. Ill. 1989).

[170]  Gorenstein, 874 F.2d at 436 (Posner, J.).

[171]  See, *e.g.,* Computer Assoc. Int'l v. Altai, Inc., 775 F. Supp. 544, 572 (E.D.N.Y. 1991), *aff'd in part, rev'd in part on other grounds,* 982 F.2d 693 (2d Cir. 1992); Kleier Advertising v. John Deery Motors, 834 F. Supp. 311, 314 (N.D. Iowa 1993). The issue has been called unresolved in the Second Circuit. In Design v. K-Mart Apparel Corp., 13 F.3d 559, 569 (2d Cir. 1994).

[172]  See TVT Records v. Island Def Jam Music Group, 279 F. Supp. 2d 366, 409–412 (S.D.N.Y. 2003), *rev'd on other grounds,* 412 F.3d 82 (2d Cir. 2005), *cert. denied,__* U.S. __, 126 S. Ct. 2968, 165 L. Ed. 2d 951 (2006); Arthur Rutenberg Homes, Inc. v. Maloney, 891 F. Supp. 1560, 1568–1569 (M.D. Fla. 1995); Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 347–348 (D. Mass. 1993) (prejudgment interest under state law claims combined with copyright count), *later opinion,* 825 F. Supp. 361, 368 (D. Mass. 1993) ("Though a majority of courts allow an award of prejudgment interest on copyright damages, these same courts have not gone so far as to award prejudgment interest on attorney's fees."), *aff'd,* 36 F.3d 1147 (1st Cir. 1994).

[173]  One court remanded for computation of the appropriate amount, noting that *Gorenstein* used the prime rate, whereas *Frank Music* suggested the 52-week Treasury bill rate. Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1042 n.4 (10th Cir. 1990). See Softel, Inc. v. Dragon Med. & Scientific Comms. Ltd., 891 F. Supp. 935, 944–945 (S.D.N.Y. 1995) (52-week T-bill rate), *aff'd in part, vacated in part,* 118 F.3d 955 (2d Cir. 1997); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (same).

[174]  McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 572 (7th Cir. 2003).

[174.1]  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 718 (9th Cir. 2004).

law for requiring the infringer to give up more than his gain when it exceeds the copyright owners' loss. Such a requirement would add a punitive as distinct from a restitutionary element to copyright damages, and . . . the statute contains no provision for punitive damages."[175] The cases are clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action.[176] "The public policy rationale for punitive damages of punishing and preventing malicious conduct can be properly accounted for in the provisions for increasing a maximum statutory damage award from \$10,000 to \$50,000 . . . ."[177] (Note that at present statutory damages run from \$30,000 to \$150,000.)[178]

Nonetheless, one case interpreted precedent not to "categorically foreclose the availability of punitive damages under the Copyright Act," at least "provided the requisite malice is indicated, . . . where the available damages exclude statutory damages. . . ."[178.1] The way this particular case unfolded, plaintiff ultimately elected

---

[175] Bucklew v. Hawkins, Ash, Baptie & Co., 329 F.3d 923, 931, 932 (7th Cir. 2003) (*dictum*) (Treatise cited). Note that the opinion's categorical reference to copyright infringement as an "intentional tort," *id.* at 932, is inaccurate, see §§ 13.01, 13.08 *supra*.

[176] Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (Treatise cited); Hays v. Sony Corp. of Am., 847 F.2d 412 (7th Cir. 1988) (Treatise cited); Oboler v. Goldin, 714 F.2d 211 (2d Cir. 1983) (Treatise cited); Curcio Webb LLC, v. National Benefit Programs Agency, Inc., 367 F. Supp. 2d 1191, 1198 (S.D. Ohio 2005) (Treatise quoted); Nintendo of Am., Inc. v. Aeropower Co., 34 F.3d 246, 251 (4th Cir. 1994) (impermissible to invoke state trebling provisions as to copyright award); Leutwyler v. Royal Hashemite Court of Jordan, 184 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) (Treatise cited); Kamakazi Music Corp. v. Robbins Music Corp., 534 F. Supp. 69 (S.D.N.Y. 1982) (Treatise cited); Blackman v. Hustler Magazine, Inc., 620 F. Supp. 792, 802 (D.D.C. 1985) (Treatise cited), *rev'd on other grounds*, 800 F.2d 1160 (D.C. Cir. 1986); Frederick Chusid & Co. v. Marshall Leeman & Co., 326 F. Supp. 1043 (S.D.N.Y. 1971). See Calio v. Sofa Express, Inc., 368 F. Supp. 2d 1290, 1291 (M.D. Fla. 2005); Cormack v. Sunshine Food Stores, Inc., 675 F. Supp. 374, 375 (E.D. Mich. 1987) (striking court's earlier award of punitive damages as "error"); Sygma Photo News, Inc. v. Globe Int'l, Inc., 616 F. Supp. 1153, 1158 n.7 (S.D.N.Y. 1985); Davis v. E.I. du Pont de Nemours & Co., 249 F. Supp. 329 (S.D.N.Y. 1966). But cf. Evans Newton, Inc. v. Chicago Sys. Software, 793 F.2d 889, 897 (7th Cir.), *cert. denied*, 479 U.S. 949, 107 S. Ct. 434, 93 L. Ed. 2d 383 (1986) (though reversing award of punitive damages, imprecisely referring to such as part of statutory damages); International Film Serv. Co. v. Affiliated Distribs., 283 F. 229 (S.D.N.Y. 1922); Press Publishing v. Monroe, 73 F. 196 (2d Cir. 1896); Morser v. Bengor Prods. Co., 283 F. Supp. 926 (S.D.N.Y. 1968); Bell v. Pro Arts, Inc., 366 F. Supp. 474 (N.D. Ohio 1973), *aff'd*, 511 F.2d 451 (6th Cir. 1975); L & L White Metal Casting Corp. v. Joseph, 387 F. Supp. 1349 (E.D.N.Y. 1975) (punitive damages denied because defendant's conduct not sufficiently "outrageous or egregious"); Dealer Advertising Development, Inc., v. Barbara Allan Financial Advertising, Inc., 209 U.S.P.Q. (BNA) 1003 (W.D. Mich. 1979).

[177] Kamakazi Music Corp. v. Robbins Music Corp., 534 F. Supp. 69, 78 (S.D.N.Y. 1982). See Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (Treatise cited); Rodgers v. Quests, Inc., 213 U.S.P.Q. 212 (N.D. Ohio 1981).

[178] See § 14.04[B][1][b] *infra*.

[178.1] TVT Records v. Island Def Jam Music Group, 262 F. Supp. 2d 185, 187 (S.D.N.Y. 2003). Note further that this language arose in a tortured procedural context. See § 14.10[B][3] N. 48 *infra* (citing numerous other decisions in same litigation).

to recover statutory damages.[178.2] Accordingly, the earlier ruling in this case turned out

*(Text continued on page 14-35)*

_____

[178.2] TVT Records v. Island Def Jam Music Group, 288 F. Supp. 2d 506, 509 n.5 (S.D.N.Y. 2003).

to be *dictum*.[178.3] In addition, the court would have extended that same construction to instances in which "actual damages plus profits are available as an alternative to statutory damages. . . ."[178.4] That last posture subsumes every piece of copyright infringement litigation, as those remedies are *always* available as "an alternative to statutory damages."[178.5] It is therefore suggested that this rogue decision should not be followed,[178.5a] in light of the profusion of contrary cases cited above.[178.6] Cementing that proposition is that the Court of Appeals later reversed the entire judgment of liability for copyright infringement,[178.7] and in that context disapproved of punitive damages even for the separate count of breach of contract.[178.8] During the pendency of that appeal, another court granted leave to amend the complaint to prove malice, but at the same time expressed doubt that plaintiff would prevail.[178.9] Later, summary judgment against plaintiff's claim mooted this decision, as well.[178.10]

Even though punitive damages are not available for statutory copyright infringement, in the residual domain of common law copyright,[179] exemplary damages may be recovered. Consider *Bridgeport Music, Inc. v. Justin Combs Publ'g*,[180] in which one plaintiff owned the statutory copyright in musical compositions and another owned the common law copyright in pre-1972 sound recordings.[181] As to the latter, the Sixth Circuit, applying New York law, ruled that recklessness or willfulness justifies an

---

[178.3] The opinion ends by noting that "it is not lost on this Court that some higher authority may subsequently have occasion to squarely consider this question, at which point, one way or the other, a clear answer may emerge." 262 F. Supp. 2d at 187.

[178.4] 262 F. Supp. 2d at 187.

[178.5] See § 14.04[A] *infra*.

[178.5a] Curcio Webb LLC, v. National Benefit Programs Agency, Inc., 367 F. Supp. 2d 1191, 1196–1198 & n.8 (S.D. Ohio 2005) (Treatise cited).

[178.6] An additional reason adheres in that part of the court's rationale rooted in "the relevant model instruction proposed by Leonard B. Sand, Modern Federal Jury Instructions, at Instruction 86B-20." 262 F. Supp. 2d at 187. In fact, the cited instruction contemplates discretionary award of "punitive damages," but only when "the plaintiff had registered the copyright prior to any infringement. . . ." It therefore appears that Judge Sand had imprecisely invoked the term *punitive damages* when intending to refer to *statutory damages*. See § 7.16[C] *supra* (registration stands as prerequisite to award of statutory damages). Thus did a terminological problem lead to the adoption of substantive error.

[178.7] TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 92–93 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 2968 (2006).

[178.8] *Id.* at 93–96.

[178.9] The "present weight and reason of the law (favoring registration) seem strongly against it." Blanch v. Koons, 329 F. Supp. 2d 568, 570 (S.D.N.Y. 2004). The court embroidered its parenthetical with the observation that, to the extent a plaintiff who failed to timely register her work could nonetheless recover punitive damages, "the statutory purpose of encouraging copyright registration is frustrated." *Id.* at 570 n.1. See § 7.16[C] *supra*.

[178.10] See Blanch v. Koons, 396 F. Supp. 2d 476 (S.D.N.Y. 2005), *aff'd*, 467 F.3d 244 (2d Cir. 2006).

[179] See § 2.02 *supra*.

[180] 507 F.3d 470 (6th Cir. 2007), *cert. denied*. ___ U.S. ___ (2008).

[181] See § 8C.03 *supra*.

award of punitive damages.[182] But, based on cognizable actual damages of $366,939,[183] the court threw out the award of an additional $3.5 million in punitive damages,[184] holding such an excessive amount to violate due process.[185] It reasoned that only one of the "reprehensibility factors" was present, meaning that due process could only sustain a ration of 2:1.[186] Because the compensatory damage itself was large[187] and already included a punitive element,[188] it remanded to the district court for either remittitur of the punitive damages verdict into the 2:1 range or for new trial.[189]

Unlike that 2007 Sixth Circuit decision, most of the rulings in the domain of common law copyright actually stem from the twentieth century. Some articulated the rule that punitive damages may not be awarded absent proof of an intent to vex, annoy or injure,[190] or of ill will on the part of the defendant or of a desire to do harm for the mere satisfaction of doing so,[191] such that "there must either be an actual intent to injure plaintiff or recklessness which is 'close to criminality.' "[192] The hallmark of those cases is a fixation on defendant's outrageous conduct.[193] Other courts apply a

---

[182] 507 F.3d at 480.

[183] *Id.* at 488. The jury had awarded $733,878 to both plaintiffs. The instant award, to the owner of the pre-1972 sound recording, was for half of that sum. Meanwhile, the owner of the composition chose $150,000 in statutory damages. *Id.* at 477.

[184] Separate aspects of the decision threw out compounded prejudgment interest, *id.* at 484–485, and the date of computation of interest under N.Y. C.P.L.R. § 500(b), *id.* at 485. Although the opinion did differentiate between statutory copyright and common law copyright in its various rulings, those awards were made to the owner of the sound recordings, and therefore would appear to implicate solely common law copyright. See § 14.02[C][1] *supra*.

[185] 507 F.3d at 486.

[186] *Id.* at 487. Note that the actual ration was about 9.5:1. *Id.* at 488.

[187] *Id.* at 488.

[188] *Id.* at 489.

[189] *Id.* at 490.

[190] Exemplary damages, under this view, require proof of malice, actual or inferred from unjustifiable conduct such as wanton and reckless indifference to the rights of others. See Nash v. Alaska Airlines, Inc., 94 F. Supp. 428 (S.D.N.Y. 1950); Roy Export Co. Establishment v. Columbia Broad. Sys., Inc., 503 F. Supp. 1137 (S.D.N.Y. 1980), *aff'd*, 672 F.2d 1095 (2d Cir. 1982) (showing of reckless indifference).

[191] Read v. Turner, 239 Cal. App. 2d 504, 48 Cal. Rptr. 919 (1966). See Jones v. Spindel, 122 Ga. App. 390, 177 S.E.2d 187 (1970) (jury award of exemplary damages set aside where found to be due to an "undue bias" for plaintiff).

[192] Smith v. Little, Brown & Co., 273 F. Supp. 870 (S.D.N.Y. 1967), *aff'd*, 396 F.2d 150 (2d Cir. 1968). See Big Seven Music Corp. v. Lennon, 554 F.2d 504 (2d Cir. 1977) ("the common law New York standard for an award of punitive damages is one of 'moral culpability' on the defendant's part, involving 'evil and reprehensible motives' or 'gross' fraud"); MacMillan Co. v. I.V.O.W. Corp., 495 F. Supp. 1134 (D. Vt. 1980) (exemplary damages denied where defendant's conduct although deceptive, and a wrongful means to gain an advantage, was not done in malice).

[193] See Szekely v. Eagle Lion Films, Inc., 140 F. Supp. 843 (S.D.N.Y. 1956), *aff'd*, 242 F.2d 266 (2d Cir. 1957); Williams v. Weisser, 153 U.S.P.Q. 866 (Cal. Super. 1967), *aff'd*, 78 Cal. Rptr. 542 (1969); Frederick Chusid & Co. v. Marshall Leeman & Co., 326 F. Supp. 1043 (S.D.N.Y. 1971). See Smith v. Little, Brown & Co., 245 F. Supp. 451 (S.D.N.Y. 1965), *aff'd*, 360 F.2d 928 (2d Cir. 1966); Vic

Case4:07-cv-01658-PJH    Document487-3    Filed09/23/09    Page43 of 43

less rigorous standard, approving the award of exemplary damages when the "defendant was not an innocent layman, caught in the complexities of the law, but a businessman who, for personal profit, was determined to pursue a certain course of conduct even if it meant riding roughshod over the rights of others."[194]

Under New York law, it has been held that, in order for a corporation to be held liable for punitive damages, the conduct that warrants such an award must have been participated in by persons in the "corporate management" (which includes supervisory employees), acting within the scope of their employment.[195] Even when these conditions are satisfied, the trier of fact may, of course, decline to award punitive damages.[196]

## § 14.03    The Computation of Defendant's Profits

The copyright owner prevailing in a statutory infringement action is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."[1] Likewise, in a common law copyright infringement action, the prevailing plaintiff is entitled to the defendant's profits.[2] The purpose of the award of defendant's profits is "to prevent the infringer from unfairly benefiting from a wrongful act."[3]

Much of the heavy lifting in this domain inheres in sophisticated analysis of causation. As one court expresses the matter,

> The defendant's burden under the apportionment provision of Section 504(b) is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff.

(Text continued on page 14-37)

---

Alexander & Assocs. v. Cheyenne Neon Sign Co., 151 U.S.P.Q. 438 (Wyo. Sup. Ct. 1966).

[194] Williams v. Weisser, 273 Cal. App. 2d 726, 78 Cal. Rptr. 542 (1969). The court made the point that actual damages may be peculiarly inadequate in a common law copyright action when "plaintiff's complaint is that he did not want any publication, not that defendant was insufficiently generous after he published without plaintiff's consent. A common law copyright is, after all, mainly a right of first publication." 273 Cal. App. 2d at 743.

[195] Smith v. Little, Brown & Co., 273 F. Supp. 870 (S.D.N.Y. 1967), aff'd, 396 F.2d 150 (2d Cir. 1968).

[196] Smith v. Little, Brown & Co., 396 F.2d 150 (2d Cir. 1968).

[1] 17 U.S.C. § 504(b). See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001 (9th Cir. 1985).

[2] Smith v. Little, Brown & Co., 273 F. Supp. 870 (S.D.N.Y. 1967), aff'd, 396 F.2d 150 (2d Cir. 1968). See Szekely v. Eagle Lion Films, Inc., 140 F. Supp. 843 (S.D.N.Y. 1956), aff'd, 242 F.2d 266 (2d Cir. 1957); De Acosta v. Brown, 146 F.2d 408 (2d Cir. 1944); Wallace v. Helm, 161 U.S.P.Q. 121 (Cal. Super. 1969).

[3] H. Rep., p. 161. See In re Independent Serv. Orgs. Antitrust Litig., 23 F. Supp. 2d 1242, 1250 (D. Kan. 1998) (Treatise quoted). Even without express statutory authorization, recovery of profits was "allowed in equity both in copyright and patent cases as appropriate equitable relief incident to a decree for an injunction." Sheldon v. Metro Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940).