BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, Oracle EMEA Limited, and
Siebel Systems, Inc.

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:     (650) 739-3939
Facsimile:     (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:     (832) 239-3939
Facsimile:     (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>        Plaintiffs,<br><br>     v.<br><br>SAP AG, *et al.*,<br><br>        Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date:       September 30, 2009<br>Time:       2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge:     Hon. Elizabeth D. Laporte |

Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and Siebel Systems, Inc. (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint Discovery Conference Statement.  The Parties jointly request that the Court schedule sixty minutes on September 30, 2009 to discuss discovery issues.

**1.      Status of SAP's Insurers' Access to Oracle's Document Production**

The Parties have continued to negotiate an amendment to the Stipulated Protective Order in this case to permit SAP's Insurers access to documents produced and labeled by Oracle in this case as either "Confidential" or "Highly Confidential."  On August 18, Defendants provided a revised proposal, to which Oracle responded on September 11.  On September 22, Defendants provided another revision, to which Oracle provided an email response.  (The August 18 proposal, September 11 response, September 22 proposal, and September 22 email response are attached hereto as Exhibit "A.")  The Parties plan to meet and confer on the latest proposal and response before the September 30 Discovery Conference.  The next Settlement Conference in this case is set for November 30, 2009 and SAP's Insurers seek access to the subject documents sufficiently in advance of that date.  Thus, the Parties will further update the Court on the status of their negotiations and, if necessary, will seek the Court's assistance during the conference to resolve any remaining disputes on this issue and assist the Parties in finalizing this amendment.

**2.      Defendants' Responses to Requests for Admission, Interrogatories, and Requests for Production**

***Oracle's Position***:  Oracle has been meeting and conferring with Defendants about a variety of their insufficient discovery responses.  Although Oracle is committed to completing the meet and confer process, it expects that it will need to bring a motion to compel to obtain this necessary discovery.

**a.      Requests for Admission**

As described in the August 18 Discovery Conference Statement and discussed at the August 25 Discovery Conference, Defendants initially refused to answer Requests for Admission that, if accurately answered, would serve a similar purpose to the extrapolation proposal about

1   TN's downloading and use of Oracle's software on an individual fix-by-fix basis over time.

2   Oracle provided several descriptions in the prior Discovery Conference Statement; for example,

3   some of the RFAs asked Defendants to admit that certain detailed steps in TN's development

4   process took place (a) each time TN developed a fix; (b) the majority of the time; (c) some of the

5   time; and/or (d) at least once.

6        The Parties have held extensive meet and confer calls since the August 25 Discovery

7   Conference (on August 28, September 4, and September 18), and have exchanged lengthy

8   correspondence.  These discussions appear to have been partially successful:  Oracle has agreed

9   to amend some aspects of its RFAs and Defendants have agreed to amend several categories of

10  responses.  The Parties continue to meet and confer as to RFAs 6, 11, and 12-50 of Oracle's Third

11  Set and as to some definitions, and have agreed they are at an impasse regarding RFAs 236-478

12  from Oracle's Second Set.

13       As all of these RFAs are crucial to Oracle's proof at trial, particularly given Defendants'

14  refusal to agree to an extrapolation stipulation, the Parties will request a date and briefing

15  schedule for a motion to compel at the September 30 Discovery Conference.

16            **b.    Interrogatories**

17       Oracle also has concerns about Defendants' responses to Oracle's interrogatories.  For

18  example, in a response to an interrogatory seeking information about the sources of local

19  environments, Defendants made two assumptions in their referral to their document production

20  under Rule 33(d):  first, that responsive material "should" be available in their production, and

21  second, that TN actually followed what Defendants contend was its policy to build environments

22  for a customer using that customer's software media.  Since Oracle's interrogatory sought

23  answers about what TN personnel actually did in creating environments, not what they were

24  allegedly supposed to do pursuant to policies (which themselves are not identified), this response

25  is insufficient.  As another example, Defendants have repeatedly refused to respond to

26  interrogatories seeking information about Defendants' customer-facing website security, claiming

27  the information is irrelevant.  But Defendants have not agreed that they will not claim at trial that

28  Oracle's website security measures were somehow deficient, or showed a lack of concern about

2

1   the intellectual property taken by Defendants.  Without such an agreement, Oracle is entitled to

2   provide the jury with context about Defendants' corresponding security efforts.

3       Oracle sent a detailed meet and confer letter to Defendants on September 11, describing

4   these and other issues with Defendants' interrogatory responses.  Defendants have not yet replied.

5   Oracle will continue to pursue meet and confer options and will report on their status to the Court

6   at the September 30 Discovery Conference, but, if sufficient progress has not been made given

7   the time remaining in the case schedule, will likely request that a motion to compel briefing

8   schedule be set at that time.

9                     **c.        Requests for Production**

10      Similarly, Oracle has been meeting and conferring with Defendants regarding their

11  responses to Oracle's Requests for Production.  As the Court is aware, Defendants have

12  repeatedly taken the position that Oracle should be required to complete its production of certain

13  categories of documents, such as damages or copyright-related materials, by a date certain.

14  Oracle correspondingly has requested that Defendants complete their production of materials on

15  which they relied to prepare their pleadings in this case by September 29, and has asked them to

16  reconsider their previous refusal to produce documents relating to their affirmative defenses.

17  Oracle believes this is necessary to provide certainty as to which affirmative defenses Defendants

18  will pursue, and with what evidence.

19      In addition, although Defendants have refused to provide information relating to their

20  research and development costs, per customer projections and related data, and licensing practices,

21  their recent motion for partial summary judgment affirmatively relies on what SAP purportedly

22  would have been willing to do or not do in regards to a hypothetical license.  This injects

23  Defendants' state of mind, expectations, and experiences into the damages analysis.  Moreover,

24  Defendants acknowledge in their motion that Oracle is entitled to seek infringers' profits – a

25  concession that Oracle is entitled to discovery necessary to show SAP's revenues and costs

26  related to the infringement, which Defendants have previously refused to provide.  To this end,

27  Oracle requested that SAP produce the same type of financial information Oracle has produced

28  for SAP to evaluate Oracle's lost profits claim.

1    Oracle included these and other issues in its September 11 meet and confer letter, to which

2    Defendants have not yet responded.  The information Oracle seeks related to its hypothetical

3    license and infringers' profits damages claims is not just responsive to Requests for Production,

4    however, but also Interrogatories and Targeted Search Requests.  Oracle's September 11 letter

5    requested that Defendants offer supplemental responses or produce documents in accordance with

6    a number of discovery requests identified in the letter.

7    Below, Defendants contend they may determine to not fully respond to Oracle's concerns

8    due to the timing of Oracle's request.  But Defendants have repeatedly argued – indeed, in this

9    very Statement, see Sections 3, 8, and 9 – that Oracle should be forced to certify the completion

10   of its production or risk preclusion.  Basic fairness requires Defendants comply with the same

11   standard.

12   As with the contested interrogatory responses described above, Oracle will continue the

13   meet and confer process and update the Court, but expects motion practice will be necessary.  For

14   efficiency, Oracle suggests combining these issues, if necessary, with its motion to compel further

15   RFA and interrogatory responses.

16   ***Defendants' Position:***  Defendants are likewise committed to continuing and completing

17   the meet and confer process regarding Oracle's demands for additional discovery from

18   Defendants.  Defendants remain cautiously optimistic that many of the following issues can be

19   resolved without Court intervention.

20                  **a.       Requests for Admissions**

21   Defendants do not agree with Plaintiffs' statement that Defendants have refused to agree

22   to an extrapolation stipulation regarding TomorrowNow's service delivery process.  Defendants

23   have attempted in good faith to reach agreement on a reasonable stipulation and, in fact, have not

24   received any substantive response to the last proposed stipulation that Defendants sent to

25   Plaintiffs.  Regardless, Defendants confirm that Plaintiffs have agreed to revise and resend, and

26   Defendants have agreed to review and supplement their objections and responses to, Plaintiffs'

27   Requests for Admission Nos. 162-163 , 223-235 and 681-685 and 691-695 of the second set and

28   6 and 11 of the third set no later than October 5, 2009.  Plaintiffs have agreed to revise and resend,

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    and Defendants have agreed to review and supplement their objections and responses to, Requests

2    for Admission Nos. 496-680 of the second set no later than October 19, 2009.  The Parties are

3    continuing their meet and confer communications regarding Requests for Admission Nos. 6 and

4    11 and 12-50 of the third set, as well as Plaintiffs' definition of the term "Download."

5    Defendants confirm that the Parties are joined in their dispute with respect to Requests for

6    Admission Nos. 236-478 of the second set and thus they intend during the discovery conference

7    to seek a hearing date and briefing schedule regarding those particular requests.

8                                    **b.       Interrogatories**

9           Defendants have properly relied on Rule 33(d) in response to Plaintiffs' interrogatory

10   seeking information about the sources of local environments at TomorrowNow.  Plaintiffs have

11   already presented a variant of this same argument in a prior motion to compel, which this Court

12   mostly denied.  However, Defendants will continue to meet and confer on this issue consistent

13   with the guidance the Court has already given the Parties with respect to the proper application of

14   Rule 33(d), proportionality and balancing of burdens.

15          Plaintiffs have served multiple discovery requests seeking burdensome information and

16   documents related to Defendants' website security.  For example, Interrogatory No. 110 asks

17   Defendants to "[d]escribe, in as much detail as possible, any Defendant's policies, practice, and

18   history of performing audits on any Customer or other Person's use of any of Defendants'

19   Customer-facing websites, including, but not limited to, timing of such audits, selection of audit

20   targets, and audit results."  Defendants have consistently maintained that *SAP's* security measures

21   are irrelevant to the issues in this case, including the issue of whether Plaintiffs adequately

22   protected their intellectual property.  The parties are still meeting and conferring on this issue, but

23   to date, Plaintiffs have not established that this discovery is relevant, material or justifiable in

24   light of the burdens it would impose on Defendants in responding.  Defendants intend to both

25   respond to Plaintiffs September 11, 2009 letter addressing this and other issues and to conduct

26   one or more meet and confer teleconferences on these issues prior to September 30th discovery

27   conference.

28

                                                    JOINT DISC. CONF. STATEMENT
                                                    Case No. 07-CV-1658 PJH (EDL)

c.      **Requests for Production**

Plaintiffs' September 11, 2009 letter addresses numerous discovery issues, some of which Defendants believed were previously resolved.  Other issues included in Plaintiffs' letter are new demands that have never before been articulated by Plaintiffs (*e.g.*, that Defendants produce to Plaintiffs financial reports comparable to those that Oracle was recently ordered to produce to Defendants).  Plaintiffs' request that "Defendants complete their production of materials on which they relied to prepare their pleadings in this case by September 29" was first made in their September 11 letter.  Defendants believe that the information relied upon to support the pleadings they filed has, by and large, been produced during course of discovery.  However, substantial additional discovery is ongoing that overlaps with, and may corroborate and supplement, the previously existing information upon which Defendants based their pleadings.  It is impractical to expect Defendants to parse out from the mass of discovery it has produced over the course of over two years in this case the specific evidence that was available and relied upon for each of its answers to Plaintiffs' five complaints.

Notwithstanding the depth and breadth of the demands in Plaintiffs' September 11, 2009 letter, Defendants are nevertheless diligently assessing Plaintiffs' requests that Defendants supplement prior discovery requests and produce additional documents.  Defendants' assessment, however, will necessarily consider the late timing of Plaintiffs' demands and the remaining tasks that must be completed by all Parties in order to bring discovery in this case to a close by the Court-ordered fact discovery deadline of December 4, 2009.

3.      **Pre-2005 Damages Related Discovery**

***Defendants' Position***:  The parties continue to meet and confer regarding Defendants' request for Rule 30(b)(6) testimony on damages related topics for the pre-2005 time period.  With regard to customer-specific financial reports, on September 19 Defendants  provided Oracle with a list of 53 customers for which they believe insufficient damages related information has been provided for the pre-2005 time period.   On September 21, Oracle requested confirmation that the data Defendants seek for these customers is limited to cancellation information.  Defendants responded that same day, indicating that the deficiencies go beyond cancellation data and include

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1   all aspects of the data the parties agreed to exchange in the form of customer-specific reports,

2   including support fees paid by these customers.  Defendants asked Oracle to confirm whether it

3   intends to stand by its position in its August 27, 2008 email that: "It will be simply too

4   burdensome to dredge up this information from inaccessible back-up copies of offline databases."

5          Defendants believe that it would be time-consuming and expensive to catalog for Oracle

6   every piece of documentation that appears to be missing for each of these 54 customers.  Nor is it

7   clear why Oracle needs such exhaustive information to determine whether it is willing to search

8   offline databases to determine what does exist.  Defendants also contend that this is not a situation

9   in which cost-shifting would be appropriate.  Defendants' intent here is: (a) to give Oracle fair

10  notice of its position that absent production of the customer-specific data the parties' agreed to

11  exchange, there is a failure of proof with respect to alleged damages for these customers; (b) to

12  give Oracle a final opportunity to produce this data; and (c) to ensure that Defendants are not

13  prejudiced by late production of this data.

14         Defendants first raised this issue more than a year ago, have devoted an extensive amount

15  of time to meeting and conferring on it, and have raised it at several discovery conferences.

16  Given the short amount of time remaining in discovery and the significant number of customers at

17  issue, Defendants request that the Court order Oracle to confirm within 10 days whether it will

18  search for and produce legacy data for these customers and, if so, the date by which the data will

19  be produced.

20         ***Oracle's Position:*** The purpose of the customer-specific financial reports has always been

21  to supplement underlying customer contract evidence, not to act as a substitute.  That is why in

22  December of last year, both Parties agreed to produce the customer-specific financial reports that

23  could be run from the parties' current systems, as a "targeted search."  As Defendants themselves

24  wrote: "To the extent that you are requesting more than what is included in our sample reports, it

25  appears that you are asking for a special study and not a targeted search of pre-existing

26  information that can readily be produced.  As such, it does not appear to be an appropriate subject

27  for a targeted search."  Notably, Defendants' reports contain far less detail than the reports Oracle

28  has produced.

1   For contract information that could not be supplemented by customer-specific financial

2   reports, the Parties were to calculate damages based on the extensive production of contract

3   documents.

4   At the last discovery conference, Defendants said there were  approximately 55-

5   65 customers for whom they claimed Oracle had provided incomplete contract information, and

6   requested supplemental financial information to bridge the gap.  At the hearing, Oracle indicated

7   it would certainly search for the missing information if Defendants would simply identify  the

8   customers and the data they believed they needed and did not have.  Aug. 25, 2009 Hr. Tr. 6:5-

9   15:5.  This was necessary, among other reasons, because the data in question comes from legacy

10  systems that cannot generate a customer specific report, so manual searching for specific data is

11  required.

12  Because of the burden associated with accessing this data, the Court further noted that

13  "[i]t would seem to me if [Defendants] could be very specific, it makes more sense to do it on a

14  customer-by-customer basis and identify what information is missing in [Defendants'] view.

15  Then you confirm whether it was missing or not and what you've already produced."  Hr. Tr.

16  14:10-15.  Defendants agreed to provide this information to Oracle.

17  Defendants said nothing further on this issue until September 19, when "Following up on

18  the discussion at the August discovery conference" they provided Oracle with a list of 53

19  customers.  Defendants have still never provided the information they claim to need.  Now, four

20  days later and again on the eve of filing this statement, Defendants simply say "we are referring

21  to the equivalent data that Oracle produced (in the form of customer-specific financial reports) for

22  the customers whose information exists on Oracle's active systems."  Elaine Wallace's September

23  21, 2009 email.  In their statement, Defendants say it would be too burdensome to tell Oracle

24  what they believe they do not have.  This is different from what the Court asked Defendants to do

25  and what Defendants agreed to do to help Oracle "bridge the gap."

26  As Oracle noted during the last discovery conference, Oracle is willing to engage in the

27  extremely manual process of investigating and collecting missing contract evidence, once it has

28

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1  from Defendants the data they contend they need beyond the production of contract documents

2  for the 53 identified customers.

3  **4.      Expanded Discovery on New Claims in the Fourth Amended Complaint**

4  The Parties have almost finalized an agreement that will slightly expand discovery related

5  to new claims that were asserted in the Fourth Amended Complaint.  Although the Parties'

6  agreements regarding the expansion of discovery related to Siebel were documented in their

7  submissions that led to Judge Hamilton's order establishing the current case schedule, there are a

8  few other issues in the Fourth Amended Complaint, such as Oracle's claims related to its database

9  products, that are not covered by the Parties' agreements or any court order.  To the extent that

10  the Parties are unable to finalize their agreements on this issue before the September 30

11  Discovery Conference, they may seek the Court's guidance at the conference

12  **5.      Logistics Related to the Conclusion of Fact Discovery**

13  ***Defendants' Position***:  Oracle has recently advised Defendants that it will be unable until

14  October 30, 2009 to produce documents for custodians Defendants identified in April 2009.  If

15  Oracle takes a similar length of time (six months) to produce documents for the custodians

16  Defendants identified in May, July, and August, it will not complete its production before the

17  December 4, 2009 discovery fact cut-off.  The same applies to any custodians identified between

18  now and October 2, 2009, the last day to identify custodians.  Defendants position is that except

19  for very limited circumstances that should be agreed to by the Parties in advance of December 4,

20  all documents that either party is going to produce as part of fact discovery in this case shall be

21  produced to the other party before December 4, 2009.  Defendants will continue to meet and

22  confer with Oracle regarding the parties' respective document production schedules, but will seek

23  the Court's guidance at the discovery conference regarding the Court's preferences on the manner

24  in which the fact discovery portion of this case should be concluded so that the Parties can use the

25  Court's input to hopefully finalize an agreement regarding those logistics.

26  ***Oracle's Position***:  Defendants' concern is based on an anomaly.  Oracle has no concerns

27  about its ability to meet its production deadlines, and neither should Defendants.

28

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    Since July 1, Oracle has produced documents for 10 of the 19 custodians Defendants

2    identified in April 2009.  Oracle diligently collected data from the majority of these custodians,

3    but due to a miscommunication with its production vendor, some of the data was not sent to

4    Oracle's counsel for review until recently.  When Defendants inquired on September 15 about the

5    remaining April-identified custodians, Oracle stated that two would be produced by September

6    23, one by October 16, and the remaining 8 by October 30.  Since that communication, Oracle

7    finished review of the custodian slated for production by October 16 and found there were no

8    responsive, non-privileged documents to produce for custodian Mary Anderson.  In addition, in

9    the last few days, Oracle's counsel has received final confirmation that data is not retrievable for

10   two of those 8 remaining custodians – Jordan Rowe-McCune and Kersten Knickerbocker, both

11   terminated employees.  Oracle plans to produce data for the remaining 6 custodians shortly.

12   Defendants fail to mention that Oracle has produced other custodians far more quickly and

13   has been diligently prioritizing and producing documents for deposition witnesses according to

14   the 21 day rule.  For example, after Defendants failed to identify an Oracle executive as a

15   custodian until 3 weeks before her deposition, Oracle prioritized and reviewed more than 35,000

16   documents and produced responsive materials in time for use at her deposition, as requested by

17   Defendants.  Nor are these April custodians holding up the production of other, later-requested

18   custodians; on September 23, Oracle  produced documents for several other later-identified

19   custodians (in addition to the two mentioned above), including individuals Defendants identified

20   as late as July 24, 2009.

21   Oracle will continue to meet and confer with Defendants regarding the Parties' respective

22   document production schedules.  Oracle does not believe that the current production deadlines

23   will be problematic to meet, and does not believe Court intervention is needed at this time.

24   **6.        Status of Oracle's Pleasanton Data Center**

25   ***Oracle's Position:***  As the Court is aware, as part of its claims, Oracle alleges that

26   Defendants illegally downloaded software and support materials from Oracle's Customer

27   Connection website.  Several Customer Connection-related servers and systems reside in Oracle's

28   Pleasanton Data Center (PDC), in a building that Oracle sold earlier this year (the "data center"

10

1    occupied a relatively small portion of a very large building).  On March 20, 2009, Oracle notified

2    Defendants of the building's sale and explained that in the process of moving the servers and

3    systems, due to their age and fragility and related issues, it was possible some alteration of data

4    could occur.  Oracle invited Defendants to let Oracle know if these issues caused them concern so

5    that the Parties could bring the issues to the Court.  On March 24, 2009, Defendants responded

6    that based on Oracle's assurances that it was taking reasonable efforts to ensure that the move

7    would not impair or alter any functionality or data, Defendants did not see a reason to raise the

8    issue with the Court.

9         After several months of investigation and related preservation efforts, Oracle has now

10   concluded that it is not feasible to move and reconnect the systems. The primary reason again

11   relates to the age and fragility of the systems, which have become increasingly unstable and are

12   built on hardware much of which is no longer supported by the vendors.   Oracle has concluded

13   that attempting to reconnect the systems after a move could result in data loss or

14   impairment (indeed, leaving them running in place could have the same effect at some unknown

15   future point).  At the same time, Oracle must vacate the premises in December.  Accordingly,

16   Oracle is taking reasonable measures to preserve the data under the circumstances, including (at

17   great expense) taking forensic images of all machines where possible, and taking additional or

18   other forms of backup where possible.  These efforts are in addition to the separate preservation

19   and production efforts Oracle has undertaken throughout the case, including production of various

20   databases Defendants have requested that feed Customer Connection, log files from Customer

21   Connection, and more.  Oracle believes, and Defendants do not contend to the contrary below or

22   in any meet and confer communications, that the relevant information from and about Customer

23   Connection was produced in this case long ago.  However, Customer Connection itself must be

24   shut down in mid-November so that Oracle may vacate the building in time.

25        Oracle updated Defendants with this new information on September 22 and asked them to

26   raise any concerns now so that the Parties may discuss them with the Court, if necessary.  Since

27   Defendants have Oracle's Customer Connection-related productions and have been able to access

28   Customer Connection itself for the better part of two years (and may continue to do so until the

system shuts down), and since the system shutdown will take place only a short time before the

fact discovery cut-off on December 4, Oracle does not believe the shutdown of these servers and

systems should present problems for Defendants.  Oracle will continue to work with Defendants

on access to Customer Connection before the shut-down, if Defendants so desire.

Defendants' concerns below appear to focus on expert discovery, which they have long

contended should be running simultaneously with percipient discovery.  To the extent Defendants

contend that they would be able to re-open percipient discovery after it closes in the guise of

expert discovery, Oracle disagrees.  To the extent Defendants want access to Customer

Connection, for either themselves or their experts, they have had it but not used it in over a year.

However, Oracle is willing to provide any access it can to Defendants and their experts between

now and the shut-down, and requests the Court's assistance in fashioning a protocol for that

access so that Defendants will have whatever they need for their expert reports.

***Defendants' Position:***  Defendants' counsel just learned yesterday that Oracle intends to

shut down Customer Connection and thus need time to consult with Defendants' representatives

and experts before  responding in substance to this issue.  However, it is worth noting the obvious

fact that Plaintiffs bear the burden of proof with respect to their claims relating to Customer

Connection and Defendants intend to hold Plaintiffs to their burden.  Defendants reserve all rights

with respect to this issue and Plaintiffs should be required to bear all responsibility and

consequences that flow from Plaintiffs unilateral business decision to sell its Pleasanton Data

Center and shut down Customer Connection.

Defendants also note that this business decision by Plaintiffs could seriously prejudice

Defendants' experts' ability to respond to Plaintiffs' experts reports.  Plaintiffs' experts reports

are not due until November 16, 2009, ironically just two weeks before Oracle has indicated that it

is shutting down Customer Connection.  Defendants are not even required to designate their

rebuttal experts until January 22, 2010 and Defendants' expert reports are not due until February

26, 2010.  The expert discovery cut-off is April 23, 2010.  Thus, of the approximately twenty-two

weeks available for expert discovery after Plaintiffs experts reports are served, Plaintiffs only

intend to have Customer Connection up for at most two weeks.  In order words, if Plaintiffs

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1   continue with their current business plans, Defendants will be deprived of access to Customer

2   Connection for over ninety percent of the expert discovery period after Plaintiffs submit their

3   expert reports.  Defendants will meet and confer with Oracle on this issue, but do not agree to the

4   decommissioning of Customer Connection in any way that would preclude Defendants' experts

5   ongoing, full functioning, access to it during the entire expert discovery period, and if necessary,

6   even leading up to and during the trial of this case.

7               **7.      Supervisory Board Documents**

8        ***Oracle's Position***:  At the August 25 Discovery Conference, the Parties discussed with the

9   Court the discrepancy between the deposition testimony of Hasso Plattner, Chairman of the SAP

10  AG Supervisory Board, and Defendants' document production.  Mr. Plattner testified about a

11  Supervisory Board meeting at which TN was discussed, but for which Defendants have not

12  produced minutes; he also described a one-page TN report that was presented at that meeting,

13  also not in Defendants' production.  Defendants have maintained they cannot find these

14  documents, but when reviewing his deposition transcript, Mr. Plattner did not change his

15  testimony, and Defendants have been unable to explain that discrepancy in meet and confer.

16       Oracle requested at the last Conference that Defendants be required to conduct a more

17  exhaustive search that included consultation with Mr. Plattner and to provide a certified

18  explanation of the discrepancy, including why Defendants are unable to produce documents their

19  Chairman has said existed and that he reviewed and believed were still available.  While the

20  official transcript of the Conference is not available, Oracle's recollection is that the Court agreed

21  that Defendants should provide a more detailed, certified description of their search, including by

22  consulting directly with Mr. Plattner.

23       On September 18, three weeks after that conference, Oracle inquired when Defendants

24  expected to provide the detailed description.  Defendants responded that they instead intended to

25  provide supplemental errata to Mr. Plattner's deposition transcript.  As the time for errata has

26  long passed – and, indeed, Mr. Plattner provided extensive errata once already, which did not

27  change his testimony about these documents – Oracle believes this response is inappropriate, and

28  objected to Defendants' suggestions on September 21.  Oracle requests that the Court order

Defendants to provide the detailed description of their search for the documents, and their explanation of the discrepancy between Mr. Plattner's testimony and the discovery record, in certified form by a date certain.

*Defendants' Position:*  Mr. Plattner testified during his deposition that he recalled a Supervisory Board meeting prior to the TN acquisition by SAP where the TN acquisition was discussed.  He also testified that he believed a document was presented during the meeting. Despite extensive efforts, Defendants have not located any document matching the description provided by Mr. Plattner during his deposition.  Defendants have repeatedly told Oracle during the meet and confer process on this subject that the document has not been located, there is no objective indication that it ever existed and that Defendants do not believe there were any Supervisory Board meetings related to TN prior to the acquisition of TN by SAP.  Defendants' representations in this regard are consistent not only with information obtained during Defendants' recent investigation into this issue, but also with the testimony of Defendants' other executives who have also been deposed in this case.

Since the meet and confer efforts began on this topic, and continuing after the last discovery conference, Defendants have conducted an exhaustive search that included consultation with Mr. Plattner and a review of locations where the Supervisory Board assistants collected and maintained all Supervisory Board materials.  Because Oracle rejected Defendants offer to provide a supplemental errata for Mr. Plattner's testimony, and in an effort to bring closure to this issue, Defendants have agreed to provide further explanation in the form of several declarations which will contain a description of the efforts undertaken to determine whether the document at issue ever existed, as well as a clarification to Mr. Plattner's prior testimony.  However, Defendants' declarations on this topic should not be construed as a waiver of either the attorney-client privilege or work product immunity.

**8.     Oracle's Production of Inter-Entity Agreements**

*Defendants' Position:*  Oracle continues to produce large numbers of inter-Oracle entity agreements requested by Defendants on the first day of discovery.  This includes 42 such agreements produced the day before the filing of this Joint Discovery Statement, months after an

1    April 14, 2009 Rule 30(b)(6) deposition to which the agreements pertain, and just 3 days before

2    the Court-ordered continuation of that deposition.  Defendants have been voicing their concerns

3    about Oracle's sporadic and untimely production of such agreements since at least the June 24,

4    2008 Joint Discovery Conference Statement.  *Id.* at 28 ("In addition, Defendants believe that

5    Oracle's production of assignment agreements and license agreements that purportedly exist

6    between Oracle International Corporation (the copyright holder), Oracle Corporation, and Oracle

7    USA may be incomplete and are meeting and conferring with Oracle's counsel to determine

8    whether that is the case.").  As discussed at the last discovery conference, the parties dispute

9    whether Oracle's ongoing production of such agreements violates the terms of this Court's June

10   26, 2009 order on Defendants' copyright motion to compel.  Order at 3 ("No later than June 29,

11   2009, Plaintiffs shall confirm in writing that they have produced all inter-Oracle entity

12   agreements relating to the acquisition, assignment, or transfer of the Registered Works located

13   after a diligent search of all locations at which such materials might plausibly exist.").

14   Defendants are not requesting that the Court resolve that dispute at this time.  However,

15   Defendants believe that it is essential that Oracle complete its production of these key documents

16   immediately.  Defendants thus request that the Court order Oracle to complete its production of

17   *all* relevant inter-Oracle entity agreements no later than 2 weeks from the date of the discovery

18   conference, *i.e.* October 14, 2009.

19       ***Oracle's Position***:  At the last discovery conference, the Court and Parties discussed the

20   Court's June 26, 2009 Order on Defendants' copyright motion to compel. The Order provides that

21   Plaintiffs were to "confirm in writing that they have produced all inter-Oracle entity agreements

22   relating to the acquisition, assignment, or transfer of the Registered Works located after a diligent

23   search of all locations at which such materials might plausibly exist" by June 29.  *See* Order at 3,

24   D.I. 328.  Defendants had contended that Oracle had failed to comply with the order because,

25   "whether they fall within the literal language of the order or not. . . .[,] they should have been

26   produced a long time ago."  Transcript of Joint Discovery Conference, August 25, 2009, at 33:22-

27   25.  Oracle explained that its post-June 29 productions were not governed by the order because

28

1  any subsequently-produced agreements did not relate to the acquisition, assignment or transfer of

2  IP rights.

3          Since the last hearing, Oracle has produced some additional inter-entity

4  agreements.  These agreements fall into three categories.  The first category are agreements

5  relating to Siebel.  The June 26 order was entered into before Siebel copyrights were added to the

6  case, and therefore did not extend to Siebel-specific documents.  Nonetheless, on July 15, 2009,

7  pursuant to the Parties' stipulation and the Court's June 11, 2009 Case Management and Pretrial

8  Order regarding Siebel discovery, Oracle produced Siebel-related inter-entity agreements.  Oracle

9  recently discovered a production error related to this Siebel production that resulted in one

10 document being produced twice and another document (which is an exclusive license) not being

11 produced at all.  Oracle immediately corrected the error and produced the one missing

12 document.  The second category related to additional inter-entity agreements that do not involve

13 exclusive licenses, and thus do not fall within the Court's June 26, 2009 Order because they also

14 do not affect the transfer or ownership of intellectual property rights.  The majority of these

15 agreements are three pages or fewer, and most of those are discrete rate changes.  The final

16 category involves documents dated or after October 31, 2008.  The Parties' discovery timeline

17 agreement cuts off the production of documents with dates as of October 31, 2008.  However, as

18 an ongoing business, Oracle is continuing to modify its structure in ways that arguably relate to

19 the cost structure of products that are relevant to this case, and that arguably affect the calculation

20 of future profits.  Accordingly, Oracle voluntarily produced documents not called for by the

21 Parties' date cut-off that reflected updates to previously produced documents or product cost

22 allocations.  Although Oracle believes it is more efficient, and reasonable, to rely on the October

23 31, 2008 agreement, Oracle also recognizes the arguable relevance of these later dated

24 documents.  However, Oracle requests a ruling from the Court that provides a finite end to the

25 ongoing production of these documents, as it reasonably expects continuing updates and changes

26 similar to what it has already produced that will occur after the discovery cut-off (and potentially

27 even after the expert discovery cut-off).  Oracle suggests that a date cut off of September 15, 2009

28 is a reasonable compromise between the Parties' mutual desire to have current information, and

1   the need for finality to prepare expert reports and analyses.  The Court's guidance would be

2   helpful, so that the Parties are clear about their obligations going forward in this regard.  Oracle

3   believes that both Parties can accurately measure Oracle's post-October 31, 2008 damages

4   according to Oracle's pre-October 31, 2008 structure, and that a set of documents that extend the

5   deadline by nearly a year is more than reasonable.

6        Finally, in an abundance of caution and without Court guidance regarding the October 31,

7   2008 cut off, Oracle produced the post-October 31, 2008 documents in advance of the scheduled

8   Rule 30(b)(6) deposition of OIC so that Defendants could examine Oracle's witness as to these

9   new documents.  However, if Defendants would like more time before that deposition, Oracle is

10   willing to accommodate a rescheduling.

11        **9.**     **<u>Oracle's Production of (Non-Legacy) Customer-Specific Financial Reports</u>**

12        ***Defendants' Position:***  In the parties' August 18, 2009  Joint Discovery Statement,

13   Defendants raised concerns about Oracle's mid-August production of additional (non-legacy)

14   customer-specific financial reports for more than 50 customers after representing in May 2009

15   that its "April 21, 2009 supplemental production of financial reports [pursuant to this Court's

16   April 2 order] included any and all financial reports that could be located in reasonably available

17   databases after an extensive customer-by-customer search."  *Id.* at 14.  In response, the Court

18   ordered that Oracle complete its production of customer-specific financial reports by September

19   15.  On that date, Oracle made a massive supplemental production of customer-specific financial

20   reports.  However, based on Defendants' preliminary analysis, it appears that the production

21   contains a large volume of irrelevant data.  For example, for 2 TN customers called Grupo

22   Convermex, S.A. DE C.V. and Grupo Galbani S.p.A., Oracle appears to have used the search

23   term "Grupo%," which produced 15,962 rows of data for 411 different customers.  Defendants

24   are now forced to sift through all 15,962 rows of data to determine which of them are related to

25   these 2 TN customers.  Similarly, for a single TN customer called By Referral Only, Oracle

26   appears to have used the search term "By%", which produced 2,718 rows of data for 106 different

27   customers.  Only 64 of the 2,718 rows are relevant to this customer.  Because the damages

28   portion of this case requires a customer-by-customer analysis, Defendants are forced to re-analyze

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1    already completed customers each time Oracle makes a belated production of additional

2    customer-specific financial reports.  Oracle's mass production of irrelevant data, and the

3    associated burden and expense it imposes, has compounded this problem.  Defendants are

4    analyzing the additional time and expense this belated production will cause and may seek

5    reimbursement of costs from Oracle.

6         ***Oracle's Position***:  On April 21, 2009, Oracle did produce the customer-specific financial

7    reports that it could locate after an extensive customer-by-customer search.  However, over the

8    summer, through the review of thousands of pages of customer contracts, from additional

9    research and analysis of individual customer corporate affiliations, and from comparing the

10   produced customer-specific financial reports with the thousands of pages of produced customer

11   contracts, Oracle determined that there may be additional customer names under which additional

12   relevant financial reports might exist.  Using these new potential names, Oracle undertook the

13   effort to search for additional relevant customer-specific financial reports.  For some customers,

14   Oracle tried over ten different searches of potential names before finding a relevant financial

15   report that could be validated when compared against the produced contracts.

16        Because of the repetition of searching for increasingly difficult to find customers, and to

17   ensure relevant data was not excluded, Oracle broadened its search terms for financial reports.

18   Recognizing the difficulty of the exercise that Oracle undertook to locate relevant reports, when

19   Oracle produced them on September 15, 2009, Oracle described its efforts in detail and told

20   Defendants that if they were having trouble finding data, that they should "please let us know so

21   we can further investigate or point you to the data we believe to be relevant." The production

22   cover letter is attached as Exhibit B.

23        Defendants did not accept this offer and, instead, the day before filing this Statement with

24   the Court, first complained about the burden of being "forced to sift" through the produced

25   reports, and now reiterates those complaints here.  Oracle remains willing and ready to help

26   Defendants locate what Oracle believes to be complete and relevant data in Oracle's production,

27   should Defendants wish to work with Oracle.

28

1    Finally, Defendants' suggestion that they may seek reimbursement of costs associated

2    with reviewing Oracle's timely production of customer specific financial reports is improper and

3    not supported by applicable law.  In October 2008, the Parties reached an agreement, heavily

4    negotiated, as to the form of financial reports that would be exchanged.  Pursuant to that

5    agreement, Oracle produced customer-specific financial reports in the form such reports are

6    ordinarily maintained, and in a reasonably usable form - Excel spreadsheets - which are easily

7    searchable with the use of common knowledge such as using the "Find" function, and without

8    requiring any expertise.

9    **10.      Defendants' Subpoena of Documents from *PeopleSoft v. Oracle* case**

10    *Defendants' Position*:  In 2003, PeopleSoft, Inc. sued Oracle Corporation in Alameda

11    County Superior Court.  The San Francisco law firm of Folger, Levin & Kahn LLP ("Folger

12    Levin") represented PeopleSoft in that action.  PeopleSoft alleged, in connection with Oracle's

13    unsolicited bid to acquire PeopleSoft, that Oracle "deliberately set out to create and has succeeded

14    in creating fear, uncertainty and doubt among PeopleSoft's customers, prospective customers and

15    others" and had "embarked on a campaign of disinformation in an attempt to cripple PeopleSoft's

16    ability to sell its software . . . ."   PeopleSoft also alleged that "Oracle's CFO, Jeff Henley, told a

17    press conference that Oracle did not intend to 'keep [PeopleSoft] alive" and that "Oracle's

18    Executive Vice President and a member of its board, Safra Catz, admitted in an internal email:

19    'we really won't be continuing [PeopleSoft's] product line."  The essence of the complaint was

20    that Oracle was deliberately scaring away PeopleSoft's customers in order to reduce the value of

21    PeopleSoft and allow Oracle to acquire it more cheaply.

22    In this case, Oracle alleges that SAP undertook marketing efforts "designed to exacerbate

23    and leverage perceived, albeit unfounded, PeopleSoft and JDE customer uncertainty about the

24    prospects for long-term, quality support from Oracle."  Fourth Amended Complaint, ¶ 83.  As

25    part of its defense in this case, Defendants contend that uncertainty among the PeopleSoft and

26    JDE customer base was not "unfounded" and did contribute to customers electing to leave Oracle.

27    Thus, evidence of the actions Oracle itself took to create fear and uncertainty among the

28    PeopleSoft and JDE customer bases is relevant to the issue of causation (*i.e.*, why PeopleSoft and

19

1    JDE customers chose to leave Oracle).

2         To explore this issue further, and after informally conferring with Folger Levin and

3    Plaintiffs' counsel during the past two weeks in an attempt to reach an agreement on the

4    production of the requested documents, Defendants have recently served a subpoena on Folger

5    Levin for certain non-privileged documents in its litigation files from the *PeopleSoft v. Oracle*

6    case.  In a preliminary discussion prior to serving the subpoena, Oracle's counsel raised concerns

7    about the subpoena, citing privilege and burden issues.  Although Folger Levin's objections to the

8    subpoena are not yet due, Defendants bring this to the Court's attention at this time so that to the

9    extent Plaintiffs wish to voice any concerns about privilege or the alleged burden of the inquiry,

10   the Parties can seek the Court's guidance on those issues now so that the subpoena can be

11   modified, if necessary.

12        Judge Legge addressed a distinct issue in his March 14, 2008 Report and

13   Recommendations Re Discovery Hearing No. 1 (Dkt. 66).  Specifically, he addressed the issue

14   whether Oracle should be required to search its files related to the DOJ's 2004 antitrust action

15   against Oracle in responding to certain discovery requests.  At that early stage of discovery, Judge

16   Legge denied that request *without prejudice*.  The Folger Levin subpoena is directed to a separate

17   state court action for unfair competition.  Thus, given the difference in the requests at issue and

18   Judge Legge's previous denial without prejudice, Defendants believe that Judge Legge's decision

19   has no impact on this subpoena.

20        ***Oracle's Position***:  After learning of Defendants' intent to serve this third-party subpoena

21   from Folger Levin, Oracle immediately initiated a discussion with Defendants about the potential

22   subpoena topics, particularly whether the subpoena would focus on specific customers

23   (Defendants' counsel said it would not).  On September 21, only two days before this Statement

24   was due, Defendants served Oracle with a notice of intent to serve the subpoena, the first

25   opportunity Oracle had to review its scope.  Now that Oracle has the subpoena, which has a

26   response date of October 7, it will review it in consultation with Folger Levin and meet and

27   confer with Defendants.  Oracle further notes that Judge Legge denied Defendants' effort to

28   obtain the same discovery from the related antitrust case brought against Oracle by the

1   Department of Justice – in which Judge Legge served as a Special Master – finding that "[t]he

2   subject matter of the two proceedings, the 2004 antitrust proceeding and this downloading case,

3   are different."  March 14, 2008 Report and Recommendations Re Discovery Hearing No. 1

4   (Docket Item 66) at 8.

5         **11.     Defendants Request Deadlines for Oracle to Respond to Certain Discovery**

6         ***Defendants' Position***:  Defendants have numerous discovery requests that have been

7   outstanding too long and that Oracle needs to commit to responding to by a date certain.  If

8   Oracle does not provide reasonable dates before the discovery conference, then Defendants will

9   request the Court to order deadlines for the following:

10              a.      **Siebel Financial information** - Defendants asked Plaintiffs to produce

11  financial information for two Siebel entities comparable to what Plaintiffs have produced

12  information for one of the entities, but not the other.

13              b.      **30(b)(6) depositions** – Defendants have requested, and Plaintiffs have yet

14  to provide, dates for 30(b)(6) depositions of Plaintiffs on the topic of the alleged harm to

15  Plaintiffs' Siebel-related computers.

16        In addition, Defendants believe that Plaintiffs failed to produce a sufficiently

17  knowledgeable witness on the topics of the  contents of Plaintiff's customer specific financial

18  reports and  Plaintiffs' support cancellation rates and related reports.  The parties are meeting and

19  conferring on these issues.

20        ***Oracle's Position:***  The facts are different from what Defendants state.

21              a.      **Siebel Financial Information** – On September 15, 2009, Oracle produced

22  quarterly income statements, balance sheets and trial balance reports for Siebel Systems, Inc from

23  1/1/06 - 10/31/08.  Oracle produced this information along with its production of similar

24  information for the other three plaintiffs: Oracle USA, Inc., Oracle International Corporation, and

25  Oracle EMEA Ltd.  Moreover, Oracle's September 15 production of analyses purporting to show

26  product profitability included Siebel.

27        Defendants' also seek information for the non-plaintiff entity Siebel Systems Ireland Ltd.,

28  which corresponds to their previous request for non-plaintiff-entity financial information.

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)

1  Defendants have stated they seek non-plaintiff information to determine to the flow of payments

2  between Oracle entities.  However, Oracle has repeatedly informed Defendants that the

3  documents they seek will not answer that question, and that instead, they should use previously-

4  produced documents to make such determinations.  To allow Defendants to test these assertions,

5  on September 15, Oracle produced the requested information for three non-plaintiff entities,

6  chosen by Defendants, with the understanding that Defendants could review that data and see for

7  themselves whether that data showed the relevant inter-company transfers prior to engaging in the

8  burden of further production.  Defendants have yet to contact Oracle to make such a showing.

9  Once they do, Oracle will meet and confer with them.

10              b.     **Rule 30(b)(6) Depositions**

11              (i)     **Harm to Siebel-Related Computers**:  Oracle has repeatedly

12  assured Defendants that it is working diligently to secure a date for this topic and given timely

13  updates on its progress.  The witness who testified previously on the analogous topic for

14  PeopleSoft and JDE lives in Germany and has been on vacation and unavailable for an extended

15  period.  Oracle was able to confer with that witness today regarding the substance and logistics of

16  this Rule  30(b)(6) topic, and Oracle expects to be able to identify its witness, secure availability

17  for that witness, and provide Defendants with a date immediately thereafter.

18              (ii)     **Customer Specific Financial Reports**: On August 12, 2009,

19  Defendants took Oracle's Rule 30(b)(6) deposition regarding Oracle's customer-specific financial

20  reports and support cancellation rates.  Defendants have since requested additional information

21  about the customer-specific financial reports, most of which both seem irrelevant to damages

22  calculations and seek information regarding over 200 field entries in these reports that were not

23  included in Defendants' notice.  The Parties continue to meet and confer about those requests.

24              (iii)     **Cancellation Reports**:  Defendants seek a cancellation reports

25  Rule 30(b)(6) deposition covering a legacy period that, despite diligent efforts, Oracle has unable

26  to obtain from its current or legacy systems.  Defendants have recently pointed Oracle to evidence

27  suggesting that such reports may have been available in 2006.  Although Oracle still does not

28  believe that the reports are currently available, given its prior efforts, it will investigate the reports

1    Defendants have inquired about.  As with the customer-specific financial reports, the Parties

2    continue to meet and confer.

3        **12.    Oracle Requests Deadlines for Defendants to Respond to Certain Discovery**

4        *Oracle's Position*:  On August 14, 2009, Oracle served a Rule 30(b) deposition notice on

5    SAP regarding Siebel.  Defendants have not yet provided witnesses or dates for Topics 5, 7, or 8.

6    Oracle needs these depositions scheduled so that its experts may rely on SAP's testimony in

7    preparing their reports.  Oracle will consider Defendants' suggestion, made below for the first

8    time, to provide responsive information in written form.  However, as this notice is for a "new"

9    Siebel deposition, not a continuation of prior deposition topics, it does not believe that format will

10   be acceptable.

11       *Defendants' Position*:  Defendants believe it may be most efficient if they provide the

12   information sought by Topics 5, 7 and 8 in written form.  Oracle has agreed to this procedure with

13   respect to other topics.  As part of the ongoing meet and confer, Defendants will discuss and

14   attempt to resolve this issue without need for the Court's intervention.

15       **13.    Extension of Time to Supplement Responses to Interrogatories 13 and 14**

16       Defendants are in the process of preparing the supplemental responses to Interrogatories

17   13 and 14, as required by this Court's August 31, 2009 Order.  Defendants need a short amount of

18   additional time to get those responses finalized and served.  Defendants have requested, and

19   Plaintiffs have agreed to, a two-day extension for Defendants' supplemental response to

20   Interrogatory 13, which makes the new deadline September 23, 2009.  Defendants have requested,

21   and Plaintiffs have agreed to, a nine-day extension for Defendants' supplemental response to

22   Interrogatory 14, which makes the new deadline October 9, 2009.  Oracle notes that it is

23   concerned about the impact of these later dates on its experts' ability to rely on these

24   supplemental responses, and further reserves the right to seek expedited relief if it believes

25   Defendants' responses are not sufficient.  Defendants seek the Court's approval of these agreed,

26   extended deadlines.

27

28

1    **14.     Stipulation Regarding Authenticity and/or Admissibility of Certain Records**

2         The Parties are in the process of negotiating a stipulation and/or a set of stipulations

3    regarding the authenticity and/or admissibility of certain records produced by the Parties.  The

4    Parties are very close to finalizing one such stipulation and expect to briefly discuss that

5    particular stipulation with the Court during the September 30 Discovery Conference.

6

7

8    DATED:  September 23, 2009                    JONES DAY

9

10                                           By:        /s/ Jason McDonell

11                                               Jason McDonell
                                           Attorneys for Defendants
12                                         SAP AG, SAP AMERICA, INC., and
                                           TOMORROWNOW, INC.

13

14         In accordance with General Order No. 45, Rule X, the above signatory attests that

15    concurrence in the filing of this document has been obtained from the signatory below.

16

17    DATED:  September 23, 2009                    BINGHAM McCUTCHEN LLP

18

19                                           By:        /s/ Bree Hann

20                                               Bree Hann
                                           Attorneys for Plaintiffs
21                                         Oracle USA, Inc., Oracle International
                                           Corporation, Oracle EMEA Limited, and
22                                         Siebel Systems, Inc.

23

24

25

26

27

28

JOINT DISC. CONF. STATEMENT
Case No. 07-CV-1658 PJH (EDL)