| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
| | DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468) |
| | HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009) |
| | BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center |
| | San Francisco, CA  94111-4067 |
| 5 | Telephone:  415.393.2000 |
| | Facsimile:  415.393.2286 |
| 6 | donn.pickett@bingham.com |
| | geoff.howard@bingham.com |
| 7 | holly.house@bingham.com |
| | zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |
| 9 | DORIAN DALEY (SBN 129049) |
| | JENNIFER GLOSS (SBN 154227) |
| 10 | 500 Oracle Parkway, M/S 5op7 |
| | Redwood City, CA  94070 |
| 11 | Telephone:  650.506.4846 |
| | Facsimile:  650.506.7114 |
| 12 | dorian.daley@oracle.com |
| | jennifer.gloss@oracle.com |
| 13 | |
| | Attorneys for Plaintiffs |
| 14 | Oracle, USA, Inc., Oracle International Corporation, |
| | Oracle EMEA Limited, and Siebel Systems, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| ORACLE USA, INC., *et al.*, | | No. 07-CV-01658 PJH (EDL) |
| | Plaintiffs, | **ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS' MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 37(c) AND 16(f)** |
| v. | | |
| SAP AG, *et al.*, | | |
| | Defendants. | |

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS' MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

**TABLE OF CONTENTS**

Page

I. SUMMARY OF RELIEF REQUESTED AND OF ARGUMENTS IN SUPPORT......... 1

II. APPROPRIATE STANDARD FOR REVIEW OF ORACLE'S OBJECTIONS ............ 3

III. ORACLE HAS SOUGHT ALL LOST PROFITS ASSOCIATED WITH THE LOST CUSTOMERS FROM THE START OF THE CASE............................................. 5

    1. Complaints ..................................................................................................... 5

    2. Initial Disclosure ........................................................................................... 6

    3. Interrogatory Responses................................................................................ 6

    4. June 24, 2008 Joint Discovery Conference Statement.................................. 7

    5. Testimony of Oracle Witnesses .................................................................... 7

    6. The Agreed Upon Customer List and Associated Productions..................... 8

    7. SAP Valued TomorrowNow and Assessed Its Litigation Risk Based on Up-Sell and Cross-Sell ............................................................................... 10

IV. DEFENDANTS' PREJUDICE EVIDENCE CONCERNS ONLY THE DAMAGES FOR WHICH ORACLE IS NOT SEEKING REVIEW ............................ 11

V. THE UNPRECEDENTED NATURE OF MAGISTRATE LAPORTE'S PRECLUSION ORDER FURTHER SUPPORTS SUSTAINING ORACLE'S OBJECTIONS ....................................................................................................... 13

VI. THE ORDER SHOULD NOT PRECLUDE ORACLE FROM DEFENDING AGAINST ATTACKS ON ITS OTHER DAMAGES AS EXCESSIVE ....................... 14

VII. CONCLUSION ........................................................................................................ 16

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Celano v. Marriott Int'l, Inc.*,
   No. 05-4004, 2007 U.S. Dist. LEXIS 54707 (N.D. Cal. July 13, 2008) ................................. 5

*Keithley v. Homestore.com, Inc.*,
   No. 03-4447, 2008 U.S. Dist. LEXIS 70246 (N.D. Cal. Sept. 16, 2008) ............................... 4

*Kern v. Levolor Lorentzen, Inc.*,
   899 F.2d 772 (9th Cir. 1990) ................................................................................................ 15

*Maisonville v. F2 Am., Inc.*,
   902 F.2d 746 (9th Cir. 1990) .................................................................................................. 3

*McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.*,
   656 F.2d 1309 (9th Cir. 1981), *cert. denied*, 455 U.S. 920 (1982) ....................................... 9

*Network Appliance, Inc., v. Bluearc Corp.*,
   No. 03-5665, 2005 U.S. Dist. LEXIS 16726 (N.D. Cal. June 27, 2005) ......................... 4, 13

*Reynoso v. Constr. Protective Servs., Inc.*,
   No. 06-56381, 2008 U.S. App. LEXIS 19681 (9th Cir. Sept. 16, 2008) ............................... 4

*Triton Corp. v. Hardrives, Inc.*,
   85 F.3d 343 (8th Cir. 1996) .................................................................................................. 15

*United States v. Howell*,
   231 F.3d 615 (9th Cir. 2000) .................................................................................................. 9

*Wendt v. Host Intern., Inc.*,
   125 F.3d 806 (9th Cir. 1997) ............................................................................................ 9, 13

OTHER AUTHORITIES

FED. R. CIV. P. 26(e)(1)(A) ........................................................................................................ 10

FED. R. CIV. P. 72(a) .................................................................................................................... 4

FED. R. EVID. 703 and Adv. Comm. Notes ............................................................................... 15

SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE
   TRIAL (The Rutter Group, 2004) ........................................................................................... 9

WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE (Matthew Bender rev. ed. 1985) .. 15

BLACK'S LAW DICTIONARY (6th ed. 1991) ................................................................................ 5

## I. SUMMARY OF RELIEF REQUESTED AND OF ARGUMENTS IN SUPPORT

On September 17, 2009, Magistrate Laporte issued an Order Granting Defendants' Motion for Preclusion of Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 37(c)(1) and 16(f) ("Order") barring Oracle from presenting at trial several separate aspects of its lost profits damages claim.[1]  Without agreeing to the Order, Oracle objects to one aspect of the Order:  the preclusion of Oracle's ability to seek lost profits "relating to licensing revenue, as opposed to support revenue" including for "products not supported by TomorrowNow" for the long-acknowledged list of TomorrowNow customers (also known as "cross-sell" and "up-sell" profits).  Order at 26:16-22 [Dkt. No. 482].[2]  Oracle notified Defendants early and often of its intent to seek all lost profits it would have realized from TomorrowNow customers, including the cross-sell and up-sell profits.  The Order erroneously concluded otherwise, and on its own logic incorrectly precluded those damages.

The premise of the Order was to preclude Oracle from seeking the types of lost profits damages that Oracle had not adequately disclosed to Defendants prior to Oracle's May 22, 2009 supplementation of its Initial Disclosures.  *See* Order at 3:18-4:4; 19:2-11 [Dkt. No. 482].  The justification given by Magistrate Laporte for this "serious sanction"[3] was the unfairness to Defendants of having defended the case up to that point without knowing of

---

[1] To avoid any confusion, the evidence related to Oracle's fair market value license "hypothetical" damages approach and Oracle's right to pursue that alternative damages approach explicitly was not the subject of Defendants' Rule 37 Motion nor the Order.  *See* Defendants' Motion [Dkt. No., 464] at 13 n.9.  In referring to Oracle's continued ability to seek what Oracle had described in the parties' June 24, 2008 joint discovery statement as potentially "billion" dollar damages, Magistrate Laporte was referencing Oracle's alternative and unaffected fair market value "hypothetical" license claims.  Order at 9:3-7.

[2] Oracle refers to all items in the record below by docket number.  For the convenience of the Court, Oracle also has hand delivered to Your Honor's clerk a binder containing the entire complete submissions by the parties, as well as the transcript of the hearing and the Order and the full set of Oracle's Objections filing.

[3] *See* Transcript of Hearing regarding Defendants' Motion for Preclusion of Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 37(c)(1) and 16(f) ("Transcript of Hrg.") [Dkt. No. 426] at 59:1-2.

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS' MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

1 previously undisclosed damages theories and the burdens of having to analyze new evidence.
2 *See*, *e.g.*, Order at 13:18-25 (basing preclusion on Plaintiffs' failure to disclose "new, more
3 extensive damages theories" in discovery for "over two years" which, if allowed, would "trigger
4 large new waves of expensive discovery and expert analysis at this late date" which would be
5 "unfair to Defendants, very expensive and hugely time consuming"); *id*. at 14:14-17 ("Early
6 discovery of damages was essential to give Defendants fair notice of the scope of this case, in
7 order to assess their exposure accurately, decide how and at what expense to conduct their
8 defense, and evaluate any potential settlement proposal."). *See also id.* at 9:1-3; 24:18-21.

9         Under that premise, Magistrate Laporte should have precluded only those
10 damages that fit those parameters: *i.e*., those lost profits damages claims arguably first revealed
11 by Oracle this past spring. The damages that arguably fit Magistrate Laporte's premise are: (i)
12 damages for the discounts Oracle gave to customers who did not leave for TomorrowNow (and
13 hence are not on the parties' long agreed upon "relevant" lost customer list; *see* Section III.6
14 below); (ii) damages from Oracle's forced abandonment of its contractual rights to step-up
15 support fees of acquired PeopleSoft customers and its abandonment of similar plans for non-
16 PeopleSoft customers; (iii) damages associated with Oracle's adoption and expansion of its
17 Lifetime Support and Applications Unlimited programs done by Oracle in response to
18 TomorrowNow's offer of "superior service at half the price [or free]"; (iv) damages to Oracle's
19 goodwill; and/or (v) damages related to unnamed potential customers who never bought from
20 Oracle as a result of TomorrowNow. *See* Oracle's May 22, 2009 Supplemental Initial
21 Disclosures [Ex. P to Wallace Decl. in Support of Mo. [Dkt. Nos. 343, 367]] ¶ 21 at Ex. P,
22 pp.44-45; Order at 23:18-26.

23         By contrast, Oracle disclosed its intent to seek all forms of lost profits associated
24 with the customers supported by TomorrowNow, starting with its earliest March 22, 2007
25 version of its complaint and in the subsequent three versions filed in 2007 and 2008, in its
26 August 16, 2007 Initial Disclosure, in several 2008 joint discovery conference statements and
27 their associated hearings (including the June 24, 2008 statement cited in the Order in connection
28 for another purpose), in an early September 14, 2007 interrogatory response and in response to

multiple other interrogatories served in early 2009, and in connection with its production of individual customer reports and back-up for the agreed upon "relevant" list of TomorrowNow customers, which commenced in mid-2008. Thus, Defendants have known from the outset of this case and, as shown by the discovery conference transcripts, acknowledged that Oracle claimed as damages all profits associated with customers who switched from Oracle or PeopleSoft to TomorrowNow. Their questioning of customers in deposition further confirms this. Moreover, there is no prejudice associated with allowing Oracle to pursue these long-acknowledged damages; indeed, Defendants' damages expert pointed to his exhaustive work analyzing the extensive evidence already produced for the agreed upon list of "relevant" customers to show what more would need to be done for customers not on that list. On this record, Magistrate Laporte's preclusion of Oracle's ability to seek lost profits associated with potential sales of more PeopleSoft products and associated services ("up-sell" damages) and with potential sales and associated services of other non-PeopleSoft products in Oracle's portfolio of offerings ("cross-sell" damages) was an error on the facts as well as being unprecedented as a matter of law.

Oracle also seeks confirmation that, while it cannot seek to quantify the other extensive damages precluded by the Order in its lost profits analysis, (1) its witnesses may reference them at trial if questioned about the impact they experienced from Defendants' unlawful acts, and (2) its damages expert can reference them to counter Defendants' inevitable attack on Oracle's damages as being excessive or a windfall.

## II. APPROPRIATE STANDARD FOR REVIEW OF ORACLE'S OBJECTIONS

The Court must determine for itself if the Order is dispositive and hence subject to *de novo* review. *See*, *e.g.*, *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-748 (9th Cir. 1990). Oracle respectfully believes that it is. When the Court withdrew Judge Jenkins's reference of discovery disputes in this case to Judge Legge (Ret.), Your Honor expressly "refer[red] the parties to Magistrate Judge Laporte to oversee discovery and resolve discovery disputes." Order Withdrawing Reference to Special Master and Referring Case to Magistrate Judge [Dkt. No. 78]

3

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

1 (April 25, 2008) at 1:18-19. The Order is not a discovery sanction but an Order precluding
2 damages claims and evidence at trial. *Cf.*, *e.g.*, *Reynoso v. Constr. Protective Servs., Inc.*, No.
3 06-56381, 2008 U.S. App. LEXIS 19681, at *3, *6 (9th Cir. Sept. 16, 2008) (noting trial court's
4 granting of defendants' pre-trial motion in limine to exclude damages at trial where plaintiffs at
5 no time prior to trial disclosed damages calculations was "an evidentiary ruling[,]" "not a motion
6 'relating to discovery pursuant to [Rules] 26-37.'").

7 While the Order does not dispose of all of Oracle's damages claims, it does
8 dispose of Oracle's right to seek the various damages claims precluded.[4] This takes it from the
9 realm of nondispositive orders not entitled to *de novo* review under Federal Rule of Civil
10 Procedure 72(a). Moreover, the Order has a significant impact. Issue preclusion — in this case
11 preclusion of significant categories of damages sought by Oracle — at any point in a case is a
12 draconian measure. It blocks any examination of the facts, any application of the law, and any
13 effort to reach results on the merits. "[O]n the menu of sanctions that a court may select from in
14 applying Rule 37, preclusion of evidence is among the most severe; indeed, under certain
15 circumstances, the imposition of preclusive sanctions may be tantamount to dismissal of a
16 plaintiff's claims or entry of default judgment against a defendant." *Network Appliance, Inc.*, v.
17 *Bluearc Corp.*, No. 03-5665, 2005 U.S. Dist. LEXIS 16726, at *9, *11-12 (N.D. Cal. June 27,
18 2005) (refusing Rule 37 request to exclude damages-related evidence based on assertions of
19 untimely production). Notably, Magistrate Laporte previously treated as a report and
20 recommendation a decision granting monetary sanctions and suggesting an adverse inference
21 jury instruction for a party's failure to put in place a litigation hold as meriting *de novo* review,
22 noting: "Motions that involve determination of the merits of the case, or that do not involve a
23 collateral matter, ***or that are critical in shaping the nature of litigation*** are generally considered
24 'dispositive.'" *Keithley v. Homestore.com, Inc.*, No. 03-4447, 2008 U.S. Dist. LEXIS 70246 at

---

[4] A "claim" means a "demand as one's own or as one's right; to assert," "demand for money," and a "right to payment, whether or not such right is reduced to judgment." BLACK'S LAW DICTIONARY 169 (6th ed. 1991).

4

1  *4 (N.D. Cal. Sept. 16, 2008) (emphasis added) (citing *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1084 (D. Haw. 2001)).  That is the situation here.

Even if the Court decides to review the part of the Order that Oracle challenges as a non-dispositive motion, it still should be rejected.  This Court has described the standard thus:

> Magistrate judges' rulings on nondispositive motions may be set aside or modified by the district court only if found to be "clearly erroneous" or "contrary to law."  FRCP 72(a). The 'clearly erroneous' standard applies only to the magistrate judge's findings of fact.  A finding of fact is clearly erroneous if the court has a definite and firm conviction that a mistake has been committed. *Burdick v. Commissioner*, 979 F.2d 1369, 1370 (9th Cir. 1992). The magistrate judge's legal conclusions are freely reviewable de novo to determine whether they are contrary to law.  *See United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir. 1984).

*Celano v. Marriott Int'l, Inc.*, No. 05-4004, 2007 U.S. Dist. LEXIS 54707, at *9-10 (N.D. Cal. July 13, 2008) (J. Hamilton) (overturning portion of Magistrate's order granting monetary sanctions on "clearly erroneous" standard insofar as sanctions were based on Defendants' actions in responding to discovery after a certain date).  As set forth below, a mistake has been committed in excluding from the damages Oracle can seek any of the up-sell and cross-sell profits related to the agreed upon list of lost customers, because Oracle has claimed as damages <u>all</u> profits associated with those customers from the inception of this case.

### III. ORACLE HAS SOUGHT ALL LOST PROFITS ASSOCIATED WITH THE LOST CUSTOMERS FROM THE START OF THE CASE

Oracle disclosed its intent to seek lost profits in the form of lost related product sales and associated support revenues as to all TomorrowNow customers in its Complaints, in its first initial disclosures, in its interrogatory responses, in the June 24, 2008 discovery conference statement (on which Magistrate Laporte relied to exclude other damages) and in its productions.  In addition, Defendants obtained this evidence through their own witness interrogations, and based their own profit projections from TomorrowNow's operations on the same kind of up-sell and cross-sell analysis, and so obviously knew those dollars were in play.

**1.  Complaints.**  In its March 22, 2007 complaint, Oracle alleged:  "As a

1  direct and proximate result of Defendants' actions, Oracle has suffered economic harm,
2  including, but not limited to, *loss of profits **from sales or licenses** to current and potential*
3  *customers of Oracle support services **and software programs***." Dkt. No. 1 at ¶¶ 106, 116
4  (emphasis added).  In its June 1, 2007 First Amended Complaint, Oracle again alleged that,
5  among other harms, it suffered lost profits for both current and potential customers for both
6  support and license sales.  Dkt. No. 31 at ¶¶ 92, 137.  Oracle repeated the same allegations in its
7  July 28, 2008 Second Amended Complaint, Dkt. No. 132 at ¶¶ 140, 144, in its October 8, 2008
8  Third Amended Complaint, Dkt. No. 182 at ¶¶ 141, 145, 191-192, and in its recently-filed Fourth
9  Amended Complaint, Dkt. No. 418, ¶¶ 148, 152, 197, and 207.  *See also* Opp. to Rule 37 Mo.
10 [Dkt. No.469] at 16:27-17:10 (discussing these cites) and Declaration of Holly A. House in
11 Support of Objections ("House Decl. in Support of Obj.") at ¶ 21 and Ex. Q (attaching relevant
12 portions of Complaints cited above).
13         2.      **Initial Disclosure.**  Oracle's August 16, 2007 Initial Disclosure listed
14 "Lost profits" as the first bulleted item under Computation of Damages.  There was no limitation
15 on these lost profits to just those associated with service, let alone those associated with service
16 on only those products serviced by TomorrowNow.  Wallace Decl. in Support of Mo. [Dkt. Nos.
17 343, 367] at ¶ 1, Ex. A at 8:21.
18         3.      **Interrogatory Responses.**  In early interrogatory responses Oracle
19 explained how it had been damaged in ways specific to the list of lost customers.  Oracle's
20 September 14, 2007 initial response to Defendants' Interrogatory No. 5(b) reads:  "As a result of
21 the conduct described in its First Amended Complaint, Oracle has lost a number of current and
22 potential customers of Oracle support services *and software programs*.  The full extent of
23 customers lost due to SAP's unlawful conduct will be revealed as Oracle continues its
24 investigation of the matter and conducts discovery.  However, at a minimum and without
25 limitation, Oracle has lost the Named Customers as a result of the activity alleged in the First
26 Amended Complaint." House Decl. in Support of Opp. to Rule 37 Mo. [Dkt. Nos. 375, 470] at
27 ¶ 38 and Ex. C at 23:27-24:8 (emphasis added).  Oracle then points Defendants to the contract
28 files and other documents produced for those customers.  *Id.*  *See* Opp. to Rule 37 Mo. [Dkt. No.

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

469] at 18:24-20:7 (listing these responses).

Oracle's first bulleted description of its damages, repeated over and over in response to numerous damages interrogatories propounded by Defendants for the first time on February 19, 2009, was "Lost, diminished or delayed current and prospective customer revenues and profits, *including* as it relates to support and maintenance *and software applications licensing*[.]" *See* Opp. to Rule 37 Mo. [Dkt. No. 469] at 19:17-20:5, n.12; House Decl. in Support of Opp. to Rule 37 Mo. [Dkt. Nos. 375, 470] ¶ 39, Ex. D (emphasis added).

**4.    June 24, 2008 Joint Discovery Conference Statement.**  One of the key pieces in the record that Magistrate Laporte relied upon in her Order was this statement by Oracle in the parties' June 24, 2008 Joint Discovery Conference statement:

> Oracle's relevant information and custodians are essentially limited to its copyright registrations, its relevant customer licenses, *and the revenue streams reasonably associated with its customers who left for SAP TN* (though Defendants seek much more).

Order [Dkt. 482] at 14:21-15:6 (emphasis added by Court below); House Decl. in Support of Obj at ¶ 5, Ex. B.

While the quoted statement by Oracle was cited by Magistrate Laporte in the Order to preclude damages for customers not on the agreed upon list of TomorrowNow customers, about which Oracle does not seek relief, it undermines preclusion of Oracle's right to seek lost profits for missed product and service up-sell and cross-sell opportunities associated with those lost customers. Those revenue streams are "reasonably associated with [the] customers who left for SAP TN." *Id.*

**5.    Testimony of Oracle Witnesses.**  Defendants' examination of Oracle witnesses also put them on further notice of Oracle's claim that Defendants' unlawful activities cost Oracle cross-sell and up-sell opportunities. Defendants themselves cited the April and May 2009 testimony of Oracle senior executives Larry Ellison and Charles Phillips on this. Wallace Decl. in Support of Rule 37 Mo. [Dkt. Nos. 343, 467] at ¶¶ 15-17, Ex. J at 12:13-13:4, Ex. K at 17:17-18:11. Earlier Oracle depositions did so as well. *See*, *e.g.*, February 26, 2009 Deposition Transcript of Charles Homs at 189: 10-190:13 [Ex. L to House Decl. in Support of Obj.] (the

7

1   SAP/TomorrowNow program "had a much broader effect on the market than just a number of
2   companies that were leaving Oracle to get support somewhere else that was a bit cheaper. [I]t
3   effectively meant that we could no longer upsell to these companies. . . ."). Defendants also used
4   long-ago produced cross-sell and up-sell documents in examining Oracle witnesses. *See id.* at
5   ¶16, Ex. M.

6   **6.   The Agreed Upon Customer List and Associated Productions.** In
7   precluding Oracle from seeking damages for potential customers or for customers it had to
8   discount to keep, Defendants and Magistrate Laporte relied on the parties' early and ongoing
9   negotiations of a specific list of approximately 350 customers lost to TomorrowNow. Mo. [Dkt.
10  No. 464] at 8:7-9; Wallace Decl. in Support of Mo. [Dkt. No. 467] at ¶ 9; Order [Dkt. 482] at
11  3:18-22. Defendants put into the record the parties' definition of those customers:  "'TN/SAP
12  customers' shall mean those customers involving at least one of the following: (a) all TN
13  customers; (b) Safe Passage deals with TN as a component; or (c) SAP sales to TN customers
14  after acquisition of TN." Wallace Decl. in Support of Mo. [Dkt. Nos. 343, 467] at ¶ 12, Ex. G at
15  14 n.1. In connection with nailing down the subset of the list of TomorrowNow customers who
16  took the "Safe Passage" from TomorrowNow to SAP applications (which list expanded from 63
17  to 83 per Defendants' latest revision made *after* they filed the motion; *see* House Decl. in Opp. to
18  Rule 37 Mo. at ¶¶ 10-13), Oracle made its intentions to seek all lost profits from those specific
19  lost customers well known. This topic was discussed at numerous discovery conferences where
20  Defendants' counsel and Magistrate Laporte made clear their understanding of the purpose
21  behind Oracle's request for up-sell and cross-sell purchasing information from SAP for the
22  TomorrowNow customers. House Decl. in Support of Obj. at ¶¶ 3-8, and Ex. A [May 28, 2008
23  Disc. Conf. Transcript] at 23:23-26:17; 30:13-20 (discussing sales of SAP products to
24  TomorrowNow customers and that Defendants would be pursuing their causation attack on such
25  Oracle's up-sell and cross-sell damages "aggressively"); Ex. C [July 1, 2008 Disc. Conf.
26  Transcript] [Dkt. No. 105] at 57:21-63:8 (where Defendants' counsel admits SAP knows all the
27  TomorrowNow customers are "in play" and that SAP is behind in getting Plaintiffs the detail on
28  the customers who also purchased other products and services from SAP); Ex. D [July 3, 2008

1  Order Regarding Scope of Discovery] [Dkt. No. 107] at 5:6-16 (ordering Defendants' early

2  production of "Damages Causation Evidence" that included annotation of which TomorrowNow

3  customers most clearly transferred to SAP products); Ex. E [July 24, 2008 Disc. Conf. Transcript

4  at 21:12-26:17] (further discourse between Defendants' counsel and Magistrate Laporte re need

5  for and delay in SAP's provision of underlying information on the subset of TomorrowNow

6  customers who purchased from SAP); Ex. F [August 28, 2008 Disc. Conf. Transcript] [Dkt. No.

7  176] at 16:1-18:10, 23:3-11 (further discussion of same where Defendants' counsel said that,

8  while SAP was agreeing to produce the materials, SAP intended to "whittle [these damages]

9  down.").[5]

10  Defendants also were made aware that Oracle was seeking up-sell and cross-sell

11  lost profits for the TomorrowNow customers by Oracle's inclusion of entire license purchasing

12  histories in its reports on those customers — which Oracle pointed out in the extensive meet and

---

[5] Most courts allow introduction of newly-proffered evidence in objections to magistrates' dispositive orders even if not presented to magistrate judge and some mandate receipt of further evidence. SCHWARZER, TASHIMA & WAGSTAFFE, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL 16:288:1 (The Rutter Group, 2004) ("FED. CIV. PRO. BEFORE TRIAL") (citations omitted); *see also United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000) (court may at its discretion consider new evidence not presented to the magistrate); *McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981) ("When either party objects to any portion of the magistrate's report, the district court is charged to make a *de novo* determination of that portion . . . . The judge may also receive further evidence . . . ."), *cert. denied*, 455 U.S. 920 (1982). New evidence on objections to non-dispositive discovery motions is generally not allowed "absent some justification for not presenting this evidence at the hearing before the magistrate." FED. CIV. PRO. BEFORE TRIAL at 16:282.1. Oracle did not include the additional material that Oracle now adds in support of its objections because the breadth of the Motion already had yielded an extensive record and, given what was already in the record and given Defendants' counsel's and Magistrate Laporte's extensive involvement in setting discovery parameters to test Oracle's up-sell and cross-sell damages claims, Oracle did not believe that further evidence showing all lost profits for the agreed upon list of TomorrowNow customers was "in play" was required. House Decl. in Support of Obj. at ¶ 2. Indeed, Magistrate Laporte herself referenced her role in the discovery conferences the transcripts of which Oracle now cites as support for her Order. *Id.*; Order at 2:17-18. The cited Oracle depositions showing no cross-sell and up-sell analyses exist that have not been produced had not occurred when the Motion was briefed and heard. *Id.* Given the Ninth Circuit's preference for deciding cases on the merits, *see Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (discussed below), if the Court regards this Order as one about a routine non-dispositive discovery matter not meriting complete *de novo* review, Oracle requests the Court nonetheless consider this additional evidence based on that rule of law and on Oracle's showing of justification.

9

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

1   confer correspondence the parties engaged in as they each tried to arrive at the final lists and

2   secure the proper underlying data. House Decl. in Support of Opp. to Rule 37 Mo. [Dkt . Nos.

3   375, 470] at ¶¶ 15-16; House Decl. in Support of Obj. at ¶ 10, Ex. H [February 23, 2009 Letter

4   from Lucia MacDonald to Elaine Wallace] at 1 ("To clarify, Oracle did not limit reports by date

5   or by product line."). This information provides the parties the purchasing history for each

6   customer which provides evidence relevant to predicting up-sell and cross-sell future purchases

7   for those customers.[6] Admittedly, Oracle did not specifically explain to Defendants how they

8   could use these reports to do such analysis. But no party provides instruction to the other on how

9   to use evidence to support or defend against damages at the time it is produced. As recently as

10  May 26, 2009, Magistrate Laporte observed: "It's when the expert reports get disclosed that

11  people really learn about the damages." May 26, 2009 Disc. Conf. Transcript at 10:11-17,

12  attached as Ex. G to House Decl. in Support of Obj. Indeed, Oracle disclosed in its

13  Supplemental and Amended Initial Disclosures that its cross-sell and up-sell lost profits analysis

14  as to the list of TomorrowNow customers was expert analysis only — which is not due until

15  November 16, 2009. *See* Opp. to Rule 37 Mo. [Dkt. No. 469] at 18:16-19 and n.10; *see also*

16  Section IV below.

17              **7.   SAP Valued TomorrowNow and Assessed Its Litigation Risk Based on**

18  **Up-Sell and Cross-Sell.** Finally, Defendants cannot claim ignorance of lost cross-sell and up-

19  sell damages exposure from the moment they considered acquiring TomorrowNow. Indeed, in

20  _____

21  [6] Oracle's (and Defendants') provision of customer backup related to cross-sell and up-sell
22  damages in conjunction with the hammering out of the names and purposed of the
    TomorrowNow customer list, along with the wealth of other relevant evidence on these damages
23  that Oracle cataloged in its Opposition, is the type of evolution in the case that Oracle referenced
    in connection to discrediting the early RFP responses by Oracle that Defendants cited. *See* Opp.
24  to Rule 37 Mo. [Dkt. No. 469] at 21:1-22:23 and House Decl. in Support of Opp. to Rule 37 Mo.
    [Dkt. Nos 375, 470] at ¶¶ 5-14, 27. As Oracle noted, Fed. R. Civ. P. 26(e)(1)(A) explicitly
25  excused Oracle from supplementing the cited early production responses to make them conform
    to Oracle's interrogatory responses because Defendants were well aware from those
26  interrogatory responses, the meet and confer sessions, Oracle's productions and the sessions with
    Magistrate Laporte that Oracle was seeking all profits associated with the TomorrowNow
27  customer list. *See* Opp. to Rule 37 Mo. [Dkt. No. 469] at 21 n.15 and House Decl. in Support of
    Opp. to Rule 37 Mo. [Dkt. Nos 375, 470] at ¶ 14 and Ex. F.
28

connection with its analysis of whether to purchase TomorrowNow, SAP forecasted almost a billion dollars in up-sell and cross-sell revenue from the customers it anticipated TomorrowNow would lure away from Oracle in just the first three years. *See* September 23, 2009 Declaration of Paul K. Meyer in Support of Oracle's Opposition to Defendants' Motion for Partial Summary Judgment Regarding Plaintiffs' Hypothetical License Damages Claim [Dkt. No. 487] at ¶ 44c, Ex. 25. SAP's entire Safe Passage program, for which TomorrowNow was the "cornerstone," was designed to drive sales of SAP's own applications (and follow on support and consulting revenue). *See id.* at ¶44a (citing Exs. 55, 56, 57, 58, 43, 59, 11 ) at ¶ 44b (citing Exs. 26, 60, 56), at ¶ 44d (citing Ex. 61), at ¶ 44e (citing Ex. 12), at ¶ 44f (citing Ex. 62), at ¶ 44g (citing Ex. 57), at ¶ 44h (citing Exs. 57, 14), at ¶ 44i (citing Exs. 63, 64, 55), at ¶ 44j (citing Ex. 65) and at ¶ 44k (citing Ex. 66). Before Oracle sued, SAP's analysis of its litigation exposure from the contemplated acquisition of TomorrowNow was directly tied to the customers TomorrowNow succeeded in luring away as part of Safe Passage. House Decl. in Support of Obj. at ¶ 19, Ex. P [Plaintiffs' Deposition Ex. 430, SAP-OR 00002183-2191 at 2184] ("Even in a worst case, the maximum impact of a successful claim is considered moderate at this time due to the fact that TomorrowNow's current revenues are only 2.6 million/year and thus the corresponding maximum damages to be claimed by Oracle are still to be considered modest. This may obviously change if SAP's Safe Passage program picks up as expected.").

## IV. DEFENDANTS' PREJUDICE EVIDENCE CONCERNS ONLY THE DAMAGES FOR WHICH ORACLE IS NOT SEEKING REVIEW

As set forth above, a major rationale for Magistrate Laporte's exclusion of certain of Oracle's damages theories was based on Defendants' claims of prejudice from having to play "catch up." While that was arguably a concern as to the precluded damages about which Oracle does not seek review, it is not as to cross-sell and up-sell damages for the long agreed upon list of relevant customers. First, Defendants' damages expert admits he has already been preparing for Oracle's lost profits claims by "analyzing the documents provided by the parties related to the TN Customers as well as a subset of those customers that also bought software and services from SAP." Clarke Decl. in Support of Mo. [Dkt. No. 465] at ¶ 8; *see also id.* at ¶¶ 10, 11. Therefore,

11

1 he is already reviewing the most voluminous of the relevant cross-sell and up-sell documents
2 Oracle has already produced.[7] *See also* House Decl. in Support of Opp. to Rule 37 Mo. [Dkt.
3 Nos. 375, 470] at ¶¶ 15, 16, 23-27.  Second, there is no massive traunch of unproduced material
4 that Defendants can point to on Oracle's cross-sell and up-sell lost profits from the relevant
5 customer list.  Defendants have confirmed this in their questioning of Oracle witnesses after their
6 Rule 37 Motion was heard.  *See* House Decl. in Support of Obj. at ¶¶ 17-18 and Exs. N and O
7 (confirming there are no pre-existing Oracle analyses predicting customers' cross-sell and up-sell
8 customer purchasing behaviors).  Third, Defendants have repeatedly inquired into cross-sell and
9 up-sell damages in customer depositions, so they can claim no prejudice on that front.  House
10 Decl. in Support of Obj. at ¶¶ 12-14 and Exs. I-K thereto.  Fourth, the only prejudice cited from
11 the parties' search terms was that they did not contain names for customers not on the long
12 agreed upon list — a complaint that does not apply to the cross-sell and up-sell damages
13 associated with those very customers.  Order at 15:10-16:9.  Finally, there is no prejudice
14 because the analysis of the cross-sell and up-sell damages is purely expert analysis  and is not
15 due until November 16, 2006.  *See* Opp. to Rule 37 Mo. [Dkt. No. 469] at 18:16-19 and n.12.

* * *

Despite this record of Defendants being on notice about and defending against Oracle's up-sell and cross-sell damages claims as to the agreed upon customer list and showing no prejudice to Defendants from allowing these damages, Magistrate Laporte's Order would preclude Oracle from attempting to quantify such damages for customers on that agreed upon "relevant" customer list.  This is a mistake on the facts.

## V. THE UNPRECEDENTED NATURE OF MAGISTRATE LAPORTE'S PRECLUSION ORDER FURTHER SUPPORTS SUSTAINING ORACLE'S OBJECTIONS

An alternative ground in support of Oracle's objections is that Oracle should have

---

[7] Compare this to Mr. Clarke's opinions about the additional documents and analysis still required to address lost profits claims for potential customers (Clarke Decl. in Support of Mo. [Dkt. No. 465] at ¶¶ 13b, 15, 22), for discounted customers Oracle did not lose (*id* at ¶¶ 13c, 15), and on the Oracle programs impacted by Defendants' unlawful acts (*id.* at ¶¶ 24, 25).

12

1  been allowed to expand upon elements of its lost profits claims through last May — then *18*
2  *months before trial*.  Such a broad preclusion of damages claims at this stage of litigation for
3  purported discovery abuse is unprecedented as a matter of law.  Oracle's Opposition below
4  discussed how courts avoid preclusion of damages evidence or theories even far later in a case
5  and on more egregious facts.  *See* Opp. to Rule 37 Mo. [Dkt. No. 469] at Sections II.B and II.C.
6  Oracle also explained the prejudice it would suffer from not being allowed to have all its
7  damages decided on the merits (*id.* at 25:10-14; *see also* Transcript of Hrg. [Dkt. No. 426] at
8  65:1-13), and argued for lesser sanctions such as waiting to see if, in fact, Defendants were
9  unable to properly defend against any of Oracle's damages by the time their damages expert
10 report is due (February 26, 2010) or by trial (November 1, 2010).  *See* Opp. to Rule 37 Mo. [Dkt.
11 No. 469] at Section II.C.3; Transcript of Hrg. [Dkt. No. 426] at 61:19-62:9, 66:10-17; Order at
12 23:1-3.  Under the Ninth Circuit's test for assessing whether to impose requested sanctions, these
13 considerations undermine the breadth and timing of the preclusions ordered.  *See Wendt v. Host*
14 *Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (in determining whether failure to comply with a
15 discovery obligation was harmless, the Ninth Circuit evaluates:  "1) the public's interest in
16 expeditious resolution of the litigation; 2) the court's need to manage its docket; 3) the risk of
17 prejudice to the [opposing party]; 4) the public policy favoring disposition of cases on the merits;
18 5) the availability of less drastic sanctions.").  *See also Network Appliance, Inc.*, 2005 U.S. Dist.
19 LEXIS 16726, at *11-12:

> [O]n the menu of sanctions that a court may select from in
> applying Rule 37, preclusion of evidence is among the most
> severe; indeed, under certain circumstances, the imposition of
> preclusive sanctions may be tantamount to dismissal of a plaintiff's
> claims or entry of default judgment against a defendant.
> [Citations].  Under those circumstances, mere negligent conduct is
> insufficient to impose the severe penalty of exclusionary sanctions
> [under Rule 37], and a showing of bad faith is required.  [Citation].
> Moreover, "[e]xclusion sanctions based on alleged discovery
> violations are generally improper absent undue prejudice to the
> opposing side." [Citations]. . . . The court also notes that [the
> movant] bears the burden of presenting evidence that it suffered
> "undue prejudice" as a result of [the complained of] failure to
> produce a subset of the responsive damages-related documents [].
> [Citation].  The touchstone of the prejudice inquiry is whether a
> discovery violation "threaten[s] to interfere with the rightful
> decision of the case" or "impairs the moving party's ability to go to

13
ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE

trial." [Citations]

Given this law, even assuming that a showing of bad faith was not required, Judge Patel refused a Rule 37 request to exclude damages-related evidence based on assertions of untimely production. *Id.*

Magistrate Laporte did not disagree that no case had ever before granted comparable damages preclusion at this stage. Rather, she differentiated the many cases Oracle cited by reference to their lesser complexity or stakes and found that the "magnitude of this case" and Defendants' damages expert's opinions on the additional efforts that would be required to respond merited her unprecedented preclusion order. Order [Dkt. No. 482] at 21:6-25:27. In effect, Oracle was held accountable to a complex litigation consideration for damages disclosures never before articulated.

These arguments support objecting to the Order in its entirety, and, to avoid waiver on appeal, Oracle does so on these grounds. However, the above-cited authorities on the seriousness of damages preclusion and the preference for having damages decided on the merits also provide further support for Oracle's more limited objections to Magistrate Laporte's Order.

## VI. THE ORDER SHOULD NOT PRECLUDE ORACLE FROM DEFENDING AGAINST ATTACKS ON ITS OTHER DAMAGES AS EXCESSIVE

By virtue of the Order, Oracle will not be quantifying or seeking any of the precluded damages. That was the intended sanction — and it is sanction enough. However, because the Order also says Oracle is excluded from presenting evidence at trial about the excluded damages, Oracle is concerned that, as an additional and unintended consequence, Oracle's ability to fully describe the relevant facts and counter Defendants' inevitable attack on its damages as excessive will be unfairly hampered. Though Magistrate Laporte did not explicitly consider this and her Order does not address it, out of an excess of caution, Oracle objects to any application of the Order that might cause this potential result (though, if the Court prefers, considering this relief can be postponed until pre-trial Motions in Limine, which is when such decisions would normally be made and, Oracle reserves the right to do so).

Defendants' damages expert will undoubtedly arrive at a damages figure for

1  Oracle's lost profits that is lower than Oracle's damages expert's figure for lost profits and is
2  lower than Oracle's claim under its fair market value "hypothetical" license theory of damages.
3  Oracle fully expects that Defendants' damages expert will opine and Defendants' counsel will
4  argue that these differences expose Oracle's damages claims as excessive, unreasonable or a
5  windfall.
6        To counter such testimony or argument by Defendants, Oracle needs to be able to
7  point out that its lost profits damages do not include quantification of the many impacts
8  precluded by the Order.  Plaintiffs' damages experts routinely point out how their damages
9  figures are "conservative" for just such reasons.  *Compare*, *e.g.*, *Kern v. Levolor Lorentzen, Inc.*,
10 899 F.2d 772, 778-779 (9th Cir. 1990) (using fact that expert has testified his calculation was
11 conservative as adequate basis for upholding court's award of amount higher than expert had
12 presented).  Here, the need to do so is more pronounced because the delta between the parties'
13 damages opinions will be far greater by virtue of the several categories of damages not
14 quantified by virtue of the preclusion Order.  Left unexplained, the jury will get a misimpression
15 that this must mean that Oracle's damages are, in fact, excessive, unreasonable or a windfall
16 which will improperly prejudice Oracle and undermine the credibility of its damages expert.  *See*
17 Fed. R. Evid. 703 and Adv. Comm. Notes (amendment of rule allows expert to consider material
18 generally relied upon by such experts and allows jury to consider facts that will assist in
19 evaluating expert's opinion; adversary's attack on expert will open door to proponents' rebuttal
20 of what was relied upon by expert); WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE
21 ¶ 702[01] at 702-7 (Matthew Bender rev. ed. 1985) (expert testimony helpful to jury should
22 generally be admitted); *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 346-347 (8th Cir. 1996)
23 (finding no abuse of discretion in court's allowing damages expert to testify based, in part, on
24 inadmissible evidence because opponent could cross examine and had own expert who claimed
25 amount was unreasonable and because, "As a general rule, the factual basis of an expert opinion
26 goes to the credibility of the testimony, not the admissibility") (citation omitted).
27       Oracle respectfully requests that the Court clarify that Oracle's damages expert
28 and its witnesses can refer to the precluded damages at trial for this limited but very important

...

1  purpose. Alternatively, if the Court wishes to wait to address this until pre-trial proceedings,

2  Oracle requests clarification that Oracle has not waived its request.

3  **VII.   CONCLUSION**

4  Based on the above- described evidence and law, Oracle respectfully requests that

5  the Court modify the Order to (1) allow Oracle to continue to seek all lost profit damages

6  associated with the long agreed upon "relevant" list of TomorrowNow customers, and (2) to

7  make clear that, while Oracle cannot quantify or seek precluded damages at trial, Oracle (a) is

8  not precluded from responding to Defendants' attacks on its damages as excessive by reference

9  to the precluded damages and (b) that Oracle's witnesses can testify to all impacts they perceived

10  from Defendants' unlawful activities.

11

12  DATED: October 1, 2009

13                                                          Bingham McCutchen LLP

14

15

16                                          By:          /s/ Holly A. House
                                                        Holly A. House
17                                                   Attorneys for Plaintiffs
                                          Oracle, USA, Inc., Oracle International
18                                     Corporation, Oracle EMEA Limited, and Siebel
                                                        Systems, Inc.

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO ORDER OF DISCOVERY MAGISTRATE GRANTING DEFENDANTS'
MOTION FOR PRECLUSION OF CERTAIN DAMAGES EVIDENCE