# EXHIBIT F

Dockets.Justia.com

```
PAGES 1 - 76

               UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

   BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE JUDGE

ORACLE CORPORATION, ET AL.,      )
                                 )
                                 )
           PLAINTIFFS,           )
                                 )
  VS.                            ) NO. C07-1658 PJH (EDL)
                                 )
SAP AG, ET AL.,                  )
                                 ) SAN FRANCISCO, CALIFORNIA
                                 )
           DEFENDANTS.           ) THURSDAY
                                 ) AUGUST 28, 2008
_____) 9:00 O'CLOCK A.M.

                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:

BINGHAM MCCUTCHEN LLP
THREE EMBARCADERO CENTER
SAN FRANCISCO, CALIFORNIA  94111-4067
BY:  GEOFFREY M. HOWARD, ESQUIRE AND
     DONN PICKETT, ESQUIRE AND
     HOLLY HOUSE, ATTORNEY AT LAW
262-9212

AND

JENNIFER GLOSS, SENIOR CORPORATE COUNSEL
ORACLE
500 ORACLE PARKWAY
REDWOOD SHORES, CALIFORNIA 940656
650-506-7114

FURTHER APPEARANCES ON NEXT PAGE

REPORTED BY:       KATHERINE WYATT, CSR #9866, RMR
                   OFFICIAL REPORTER - U.S. DISTRICT COURT
```

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

| | |
|---|---|
| 1 | **MR. MCDONELL:** OKAY, YOUR HONOR. I WOULD LIKE TO |
| 2 | STEP BACK A LITTLE BIT. SO THE ISSUE HERE -- BY THE WAY, JASON |
| 3 | MCDONELL -- IS: WHAT DISCOVERY WILL THERE BE OF SAP CONTRACTS? |
| 4 | SO WE HAVE TOMORROWNOW, ON THE ONE HAND, THE SERVICE |
| 5 | ENTITY BASED IN TEXAS THAT WAS PROVIDING SERVICE AND ONLY |
| 6 | SERVICE TO FORMER ORACLE CUSTOMERS. AND THEN SAP, THE SOFTWARE |
| 7 | COMPANY BASED IN GERMANY THAT HAD -- WAS A DIRECT COMPETITOR OF |
| 8 | ORACLE. |
| 9 | SO WE KNOW THAT ORACLE IS MAKING ISSUE OF THE |
| 10 | TOMORROWNOW CUSTOMERS, FOR WHICH TOMORROWNOW IS PROVIDING |
| 11 | SERVICE. |
| 12 | THEN, THE QUESTION BECAME: TO WHAT EXTENT WOULD THEY |
| 13 | BE ALLOWED TO HAVE SOME DISCOVERY OF SAP CUSTOMERS? |
| 14 | **THE COURT:** WHO ALLEGEDLY DERIVE FROM WHAT |
| 15 | TOMORROWNOW IS DOING. |
| 16 | **MR. MCDONELL:** THAT IS ONE WAY OF CHARACTERIZING |
| 17 | THEIR ALLEGATION. |
| 18 | SO WE HAD ALWAYS TAKEN THE POSITION THAT WE WOULD NOT |
| 19 | BLOCK ALL THE DISCOVERY INTO SAP. BUT THERE HAD TO BE THAT |
| 20 | NEXUS, THAT CONNECTION WITH TOMORROWNOW. |
| 21 | SO IN THE LAST TWO HEARINGS, AND GOING BACK TO THE |
| 22 | CONFERENCE STATEMENT WE FILED WAY BACK IN JUNE, WE WERE VERY |
| 23 | CLEAR THAT WHAT WE WERE WILLING TO DO, AS LONG AS IT WAS |
| 24 | REASONABLE AND BALANCED AND NARROW, IS WE'D ALLOW FOR DISCOVERY |
| 25 | OF SAP CUSTOMER TO THE EXTENT THAT THEY HAD ALSO BEEN A |

1   TOMORROWNOW CUSTOMER.

2       IF THE CUSTOMER HAD NEVER BEEN A TOMORROWNOW
3   CUSTOMER, IT WAS OUT-OF-BOUNDS, CLEAR BRIGHT LINE.  AND THAT'S
4   WHAT WE'VE BEEN TALKING ABOUT IN THE LAST TWO HEARINGS.

5       **THE COURT:** RIGHT.  AND I DIDN'T HEAR ANY
6   DISAGREEMENT ABOUT THAT RIGHT NOW.  I HEARD AS TO THE ONES THAT
7   WERE BOTH TOMORROWNOW, AND THEN SUBSEQUENTLY SAP, WHICH IS A
8   RELATIVELY LIMITED UNIVERSE WELL UNDER A HUNDRED, THAT THEY WANT
9   NOT JUST THE SALES OF APPLICATIONS, BUT THE ONGOING SUPPORT
10  FEES.

11      **MR. MCDONELL:** AND THAT'S WHAT WE HAD UNDERSTOOD
12  THROUGH TWO HEARINGS AND MANY DISCUSSIONS WITH COUNSEL, AS WELL.
13  AND WE HAVE PRODUCED -- YOU KNOW, WE MADE A GOOD FAITH EFFORT TO
14  FIND THE CUSTOMERS THAT OVERLAPPED WITH TOMORROWNOW AND SAP.

15      YOUR HONOR ORDERED THAT WE PRODUCE THOSE CONTRACTS.
16  WE PRODUCED THEM IN A TIMELY FASHION, AND ANOTHER BATCH IS GOING
17  OUT TODAY.

18      YOUR HONOR SAID THAT -- ORDERED THAT WE USE OUR BEST
19  EFFORTS TO ASSIGN MONETARY VALUES TO THEM. WE THOUGHT THE
20  BEST -- AND THE CONCEPT THERE WAS:  WHAT'S THE GENERAL MAGNITUDE
21  OF THESE CUSTOMER RELATIONSHIPS?  ARE THEY BIG?  ARE THEY
22  LITTLE, CONSEQUENTIAL, INCONSEQUENTIAL?

23      SO WE THOUGHT THE BEST PROCESS FOR THAT IS WE JUST
24  PULL OUT THE BASIC ORIGINAL LICENSE FEE, AND THAT WOULD BE A
25  METRIC OF WHAT THE MAGNITUDE OF THE CUSTOMER RELATIONSHIP WAS.

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1   THESE END UP BEING LONG SPREADSHEETS THAT WE PRODUCED
2   TO THEM, BECAUSE THESE ARE CONTRACTS THAT CAN HAVE MANY, MANY
3   APPENDICES AS ADDITIONAL LICENSES GET ADDED ON.  AND IT WAS A
4   BIG DEAL, AND WE WORKED HARD, AND WE'VE DONE IT.
5       SO ALL OF THAT IS PROGRESSING FINE.  IT IS OUR
6   POSITION THAT AMONG THOSE 61 CUSTOMERS, WE ARE GOING TO WHITTLE
7   IT DOWN TO NOTHING. IT'S GOING TO BE OUR GOAL AND ESTABLISH THAT
8   NONE OF THESE ARE THE SOURCE OF LIABILITY. BUT THAT IS WHAT THE
9   DISCOVERY IS GOING TO BE ALL ABOUT GOING FORWARD.  AND I'M SURE
10  THERE WILL BE A TUG OF WAR ABOUT ALL OF THAT.
11      I'M LAYING ALL THAT BACKGROUND BECAUSE WHAT'S
12  HAPPENED IN THE INTERIM, IS IT APPEARS THAT ORACLE IS NOW
13  SHIFTING THE UNIVERSE ALTOGETHER, BECAUSE RIGHT AFTER THE LAST
14  HEARING WHEN WE TALKED ABOUT ALL THESE THINGS THEY SERVED
15  DISCOVERY SAYING THEY WANT DISCOVERY OF ALL OF THE SO-CALLED
16  "SAFE PASSAGE CUSTOMERS" OF SAP.
17      AND I KNOW WE SIT HERE AND THROW TERMS AT YOU.
18      **THE COURT:** I KNOW I'VE HEARD IT BEFORE, BUT I CAN'T
19  REMEMBER.
20      **MR. MCDONELL:** SAFE PASSAGE IS A MARKING PROGRAM.  IT
21  IS A MARKETING PROGRAM UNDERTAKEN BY SAP TO TRY TO MARKET ITS
22  GOODS TO ORACLE CUSTOMERS.  TO TRY TO GET ORACLE CUSTOMERS TO
23  COME BUY SAP PRODUCTS. AND IT WAS -- YOU KNOW, IT WAS A
24  WORLDWIDE MARKETING PROGRAM.  AND --
25      **THE COURT:** DIDN'T NECESSARILY INVOLVE TN.

```
 1          MR. MCDONELL:  I THINK YOUR GUIDANCE HAS BEEN VERY
 2   HELPFUL HERE, YOUR HONOR.
 3          MS. HOUSE:  IN FACT, THE WHOLE POINT OF THIS IS WE'RE
 4   NOW INTO OUR THIRD DISCOVERY CONFERENCE THREE MONTHS LATER ON AN
 5   INITIAL ORDER THAT YOU MADE ON A VERY BASIC REQUEST, WHICH IS:
 6   GIVE US THE UNDERLYING DATA ON THE SAFE PASSAGE CUSTOMERS.  YOU
 7   UNDERSTAND THE WHOLE POINT --
 8          THE COURT:  THE SAFE PASSAGE CUSTOMERS WHO ARE ALSO
 9   FROM TN.
10          MS. HOUSE:  EXACTLY.
11          THE COURT:  HE'S JUST SAID HE WILL DO THAT.
12          MS. HOUSE:  WELL, BUT HE HASN'T.  WE ARE TOO INTO IT.
13   WE DON'T -- WE SAY:
14              "IT MIGHT BE.  THE ODDS ARE."
15          YOU HAVE AN ORDER.
16          THE COURT:  NO.  I'M ORDERING THAT.  WELL, NOW, WE
17   DON'T NEED TO FIGHT. I VIEW THAT AS SAYING:
18              "YES, WE WILL." AND I'M ORDERING THAT.
19          MR. MCDONELL:  AND IT WILL BE MUTUAL.  THEY WILL
20   PROVIDE COMPARABLE REVENUE AND FINANCIAL INFORMATION FOR THOSE
21   SAME APPROXIMATELY 60 CUSTOMERS.
22          THE COURT:  SEEMS LIKE YOU SHOULD.  IS THERE ANY
23   REASON NOT?
24          MS. HOUSE:  IF THEY WERE AN ORACLE CUSTOMER AND THEY
25   FIT WITHIN, WE WILL LOOK. WE ACTUALLY HAVE PRODUCED THE CONTRACT
```

```
 1  AND UNDERLYING DATA. WE'RE SO MUCH FARTHER AHEAD THAN WHAT THEY
 2  HAVE DONE.
 3          BUT WE WILL LOOK FOR IT.  IF THERE'S ANY IN THOSE 60,
 4  WE WILL PRODUCE IT.
 5          MR. MCDONELL:  BUT SHE'S NOT SAYING SHE WILL -- WE'VE
 6  GIVEN HER A SPREADSHEET THAT LAYS OUT THE FINANCIALS.
 7          THE COURT:  YEAH.  YOU NEED TO PRODUCE THE COMPARABLE
 8  INFORMATION.  AND IF YOU'VE ALREADY DONE IT, IDENTIFY IT BY
 9  BATES NUMBER.  IF YOU HAVEN'T DONE IT, PRODUCE A COMPARABLE.
10          I DON'T WANT TO BE HAVING SOME MOTION IN HERE WHERE I
11  HAVE TO COMPARE SPREADSHEETS.  BUT I EXPECT YOU TO IN GOOD FAITH
12  PRODUCE AN EQUAL, SIMILAR, VERY LIKE, EQUALLY USEFUL, EQUALLY
13  DETAILED INFORMATION ABOUT THAT SAME UNIVERSE OF 61 CUSTOMERS.
14          MR. MCDONELL:  THANK YOU, YOUR HONOR.  WE WILL DO
15  THAT.
16          THE COURT:  OKAY.
17          MR. MCDONELL:  OKAY.  THANK YOU.
18          THE COURT:  ALL RIGHT.  SO TARGETED SEARCHES, WHAT'S
19  HAPPENING WITH THAT?
20          MS. HOUSE:  AFTER LISTENING TO YOUR HONOR THE LAST
21  TIME WE HAVE ACTUALLY COME UP WITH AGREED-UPON LANGUAGE.  IT'S
22  CONTAINED IN THE CONFERENCE STATEMENT.
23          WE'VE ALSO AGREED THAT AS OF TOMORROW WE CAN SERVE,
24  BASED ON THESE NOW AGREED-UPON PROCEDURES, THE FIRST THREE
25  TARGETED SEARCHES.
```

```
 1              THE REASON THAT THAT'S GOING TO BE RELEVANT TO YOU,
 2   PERHAPS, IS THAT AT THIS POINT IN TIME THERE HASN'T BEEN THAT
 3   EXCHANGE.  AND SOME OF THE UNDERLYING MATERIALS THAT THE
 4   DEFENDANTS WANT TO TALK ABOUT IN TERMS OF MOTIONS TO COMPEL ARE
 5   GOING TO BE THE SUBJECT OF TARGETED SEARCHES THAT HAVE YET TO BE
 6   SERVED.
 7              SO IN THE NOTION OF AS WE GET TO THEIR DISCUSSION OF
 8   MOTIONS TO COMPEL, I JUST WANT YOU TO UNDERSTAND THAT ONE OF OUR
 9   MAIN OBJECTIONS IS THAT IT SEEMS INCREDIBLY PREMATURE WHEN WE
10   HAVEN'T EVEN SERVED THE TARGETED SEARCHES ON EACH OTHER THAT ARE
11   RELEVANT TO THOSE MOTIONS.
12              THE COURT:  WELL, LET'S GET TO THAT WHEN WE GET TO
13   IT --
14              MS. HOUSE:  OKAY.
15              THE COURT:  -- BECAUSE I'M JUST MARCHING THROUGH THE
16   ORDER OF THIS.
17              MS. HOUSE:  OKAY.
18              THE COURT:  OKAY.  DISCOVERY.
19              MR. COWAN:  YOUR HONOR, ONE THING ON THE TARGETED
20   SEARCHES, WE AGREE THAT WE HAVE AGREED.
21              AND THE ONLY THING WE WANTED TO NOTE IS THE TENSION
22   ON THAT IN THE LAST HEARING WAS WHETHER THE TARGETED SEARCHES
23   OUGHT TO SPECIFICALLY IDENTIFY THE UNDERLYING DOCUMENT REQUEST
24   TO WHICH THEY RELATED.
25              THE COURT:  AND I SAID NO.
```

1     **MR. COWAN:** AND YOU IDENTIFIED THE LOGISTICAL
2  PROBLEMS ASSOCIATED THAT. WE HAVE GONE BACK AND RELENTED ON THAT
3  POINT.
4          WE STILL THINK THERE'S IMPORTANCE TO UNDERSTAND AT
5  SOME POINT IN THE PROCESS WHERE THOSE TWO ISSUES DOVETAIL. BUT
6  WE AGREE FOR THE PURPOSES OF THE PROCEDURE IN THE TARGETED
7  SEARCH PROTOCOL THAT WE'RE NOT TYING THOSE IN THE FORM OF MAKING
8  THE REQUEST, BECAUSE I DIDN'T WANT TO STAND HERE AND SAY WE HAVE
9  AN AGREEMENT, AND HAVE THAT BE SOME OVERARCHING AGREEMENT THAT
10 THE UNDERLYING DOCUMENT REQUESTS ARE NOT IN ANY WAY RELEVANT TO
11 THE TARGETED SEARCHES. WE THINK THEY ARE.  BUT WE'VE AGREED TO
12 THE PROTOCOL UNDER WHICH WE'RE GOING TO DO THAT.
13         **THE COURT:** ALL RIGHT. SO THEN WE GET TO DISCOVERY
14 TIME RANGES?
15         **MR. HOWARD:** YES, YOUR HONOR.
16         I THINK SINCE THE LAST TIME WE'VE BEEN IN HERE WE
17 HAVE FILED THE SECOND-AMENDED COMPLAINT. AND SO THERE ARE NEW
18 ALLEGATIONS IN THERE. AND THOSE ALLEGATIONS HAVE DIFFERENT
19 IMPLICATIONS. BUT ONE OF THEM IS THEY REACH BACK BEFORE WHAT
20 HAD BEEN THE PRELIMINARILY AGREED JANUARY, 2004, DISCOVERY
21 CUTOFF, WHICH WAS ALWAYS WITH A MUTUAL RESERVATION OF RIGHTS ON
22 THE TOMORROWNOW SIDE, BECAUSE THERE'S ACTIVITY GOING BACK TO THE
23 VERY BEGINNING OF THE WHAT WAS THE MODEL THAT SAP ENDED UP
24 BUYING.
25         AND IT GOES FORWARD IN TIME BECAUSE IT APPEARS, TWO

```
 1   THINGS.  THAT AFTER THE LITIGATION WAS FILED, TOMORROWNOW KEPT
 2   DOING IT WITH SAP'S KNOWLEDGE.  AND THAT GOES TO WILLFULNESS AND
 3   MANY OTHER IMPORTANT ELEMENTS OF OUR CASE.
 4            AND SO WE'VE SAID THAT -- THE PARTIES HAVE SERVED
 5   MUTUAL CATEGORIES OF INFORMATION THAT THEY WOULD WANT IN THE
 6   PRE-2004 TIME FRAME AND IN THE POST-FILING-OF-LITIGATION TIME
 7   FRAME.
 8            AND WE'VE NOT YET MET AND CONFERRED ABOUT THOSE.  WE
 9   HAVE AGREED THAT THOSE SHOULD BE NARROWLY-TAILORED,
10   NARROWLY-FOCUSSED, AND THAT THEY SHOULD NOT BE A REDOING OF FULL
11   SCALE DISCOVERY THAT HAS ALREADY BEEN DONE.
12            AND I THINK THAT'S ABOUT AS FAR AS WE ARE RIGHT NOW.
13            **MR. COWAN:**  YOUR HONOR, I THINK THAT'S GENERALLY
14   ACCURATE.  THE ISSUE, AGAIN, STARTING BEFORE THE JANUARY 1, 2004
15   CUTOFF.  TO THE EXTENT WE GO EARLIER THAN THAT IS RELATED SOLELY
16   TO TOMORROWNOW, BECAUSE SAP DIDN'T PURCHASE TOMORROWNOW UNTIL
17   EARLY 2005.
18            AND WE ARE WILLING TO CONTINUE TO WORK WITH THEM TO
19   FIGURE OUT WHAT SEGMENTS OF THAT PRE-JANUARY 1, '04 TIME FRAME
20   RELATIVE TO TOMORROWNOW THAT WE WILL PRODUCE.  AND WE'RE MAKING
21   PROGRESS ON THAT.
22            POST-LITIGATION, POST-MARCH 22, 2007, WE, LIKEWISE,
23   ARE LOOKING AT WHAT MAKES SENSE TO PRODUCE.  AND SO I THINK
24   WE'RE MAKING PROGRESS ON THAT AND HOPEFULLY CAN COME UP WITH AN
25   AGREED PLAN ON THAT.
```

| | |
|---|---|
| 1 | **THE COURT:** OKAY. ALL RIGHT. AND THEN, THE WHOLLY IRRELEVANT WITHHELD DOCUMENTS. WE'RE TALKING -- THERE'S ABOUT A HUNDRED THAT ARE AT ISSUE? |
| 4 | **MS. HOUSE:** LOOKING THROUGH THE NINE THOUSAND ON THE LOG, THOSE ARE THE ONES THAT SEEMED THE MOST OBVIOUS TO US THAT WOULD NOT BE WHOLLY IRRELEVANT. WE'VE BEEN PROMISED AN UPDATE. |
| 7 | **MR. COWAN:** YOU WERE PROVIDED IT. |
| 8 | **MS. HOUSE:** SORRY? |
| 9 | **MR. COWAN:** WE PROVIDED THE LOG -- |
| 10 | **THE COURT:** OKAY. |
| 11 | **MR. COWAN:** -- IS MY UNDERSTANDING. |
| 12 | **THE COURT:** OKAY. |
| 13 | **MS. HOUSE:** AND THE DOCUMENTS? |
| 14 | **THE COURT:** DID YOU TAKE ANY OF THEM OFF OR ARE YOU JUST -- |
| 16 | **MR. COWAN:** YES, WHAT WE DID IS WE SENT THEM AN E-MAIL SAYING WHILE THERE'S A HUNDRED THINGS THAT THEY HAVE NOTED THAT ARE AT ISSUE, WE DON'T THINK THEY ARE AN ISSUE, BUT IT'S NOT ENOUGH. WE'VE GOT OTHER THINGS TO FIGHT ABOUT. WE WILL AMEND THE LOG. |
| 21 | AND TO MY -- AND I HOPE I'M NOT MISTAKEN. IF I AM I WILL MAKE SURE THAT IT GETS DONE POSTHASTE. BUT I BELIEVE WE PROVIDED THEM WITH AN AMENDED LOG ON THAT, SO I DON'T SEE -- |
| 24 | **THE COURT:** THAT DOESN'T WITHHOLD AS MANY DOCUMENTS? |
| 25 | **MR. COWAN:** THAT GIVES THEM THE DOCUMENTS THAT WERE |

1  WITHHELD AND REVISES --
2          THE COURT:  OKAY.
3          MR. COWAN:  -- OR PROVIDES ADDITIONAL DESCRIPTION --
4          THE COURT:  ALL RIGHT.
5          MR. COWAN:  -- AS APPROPRIATE.
6          THE COURT:  OKAY.  AND THEN, THE DEDESIGNATION ISSUE?
7          MR. COWAN:  YOUR HONOR, ON THAT POINT, THIS IS THE
8  27,000 DOCUMENTS THAT YOU ASKED US TO GO BACK AND HAVE A PROCESS
9  ON. WE HAVE GONE BACK AND HAVE A PROCESS ON THAT.
10         WE, ACCORDING TO THE ORDER, CAME BACK WITHIN THE TIME
11 LIMIT, WHICH I THINK THE FIRST REPORTING REQUIREMENT WAS ON
12 AUGUST 1ST. WE PROVIDED THEM WITH A PLAN. WE ALSO PROVIDED THEM
13 WITH AN INITIAL SEVERAL THOUSANDS OF ADDRESSING THE
14 DEDESIGNATION.  NOT IN ALL INSTANCES ARE WE MOVING OFF OF HIGHLY
15 CONFIDENTIAL DOWN TO EITHER CONFIDENTIAL OR NOT CONFIDENTIAL.
16         BUT THERE ARE NUMEROUS INSTANCES WHERE WE ARE, IN
17 FACT, REDESIGNATING FROM HIGHLY CONFIDENTIAL TO CONFIDENTIAL.
18 AND IN NUMEROUS INSTANCES WE'RE GOING FROM HIGHLY CONFIDENTIAL
19 ALL THE WAY DOWN TO NOT CONFIDENTIAL AT ALL.
20         AND WE'RE PROVIDING THAT. WE EXPECT TO BE COMPLETE BY
21 SEPTEMBER 19TH.
22         WE ARE DILIGENTLY WORKING ON THAT.  I HAVE A SEPARATE
23 TEAM DEVOTED SOLELY TO THAT AND ARE GIVING THEM WEEKLY UPDATES
24 ON THAT, AND HAVE BEEN DOING SO SINCE AUGUST 1ST.
25         MR. HOWARD:  WHICH IS TRUE.  THE FIRST SET WE GOT

|    |                                                                  |
|----|------------------------------------------------------------------|
| 1  | CERTIFICATE OF REPORTER                                          |
| 2  | I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY              |
| 3  | THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED  |
| 4  | SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO   |
| 5  | TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE     |
| 6  | RECORD OF SAID PROCEEDINGS.                                      |
| 7  | I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR                    |
| 8  | ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING       |
| 9  | PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE   |
| 10 | OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.                      |
| 11 | THE FEE CHARGED AND THE PAGE FORMAT FOR THE                      |
| 12 | TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL            |
| 13 | CONFERENCE.                                                      |
| 14 | IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS             |
| 15 | 4TH DAY OF SEPTEMBER, 2008.                                      |
| 16 |                                                                  |
| 17 |                                                                  |
| 18 |                                                                  |
| 19 |                                                                  |
| 20 | S/S KATHY WYATT                                                  |
| 21 |                                                                  |
| 22 |                                                                  |
| 23 |                                                                  |
| 24 |                                                                  |
| 25 |                                                                  |

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834