# EXHIBIT N

Dockets.Justia.com

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>             Plaintiffs,<br><br>       vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 07-CV-1658 (PJH)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

VIDEOTAPED DEPOSITION OF

JUDITH SIM

WEDNESDAY, SEPTEMBER 2, 2009

HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-422383)

Merrill Legal Solutions
(800) 869-9132

10:32:01  1
10:32:04  2
10:32:07  3
10:32:11  4
10:32:15  5
10:32:17  6
10:32:19  7
10:32:22  8
10:32:24  9
10:32:28 10
10:32:31 11
10:32:32 12
10:32:36 13
10:32:38 14
10:32:40 15
10:32:42 16
10:32:45 17
10:32:48 18
10:32:50 19
10:32:53 20
10:32:55 21
10:32:57 22
10:33:00 23        Q.   Okay.  Now, going back to the terms
10:33:02 24    "upsell" and "cross-sell," does the analytics group
10:33:06 25    have any responsibility with respect to analysis of,

Page 67

```
10:33:11   1   say, upsell activities?
10:33:14   2        A.  The analytics group primarily does what I
10:33:17   3   described earlier for us in marketing, which is,
10:33:19   4   taking a look at the types of activities that we
10:33:23   5   create, and we try to sequence and figure out which
10:33:27   6   ones are the most effective, statistically.
10:33:32   7        Q.  But going back again to upsell activities,
10:33:34   8   does the analytics group have any responsibility
10:33:37   9   with respect to upset activities?
10:33:41  10            MS. HOUSE:  Objection.  Calls for
10:33:41  11   speculation.
10:33:43  12            THE WITNESS:  Yeah.  I only know what I end
10:33:44  13   up seeing at the end of the day out of that group,
10:33:47  14   and that's where I see it, is related to the
10:33:49  15   marketing activities.
10:33:50  16            MS. WALLACE:  Q.  And in your mind,
10:33:51  17   marketing activities does not include upsell
10:33:53  18   activities?
10:33:53  19        A.  It does not necessarily include that, no.
10:33:57  20        Q.  Is that a sales function rather than a
10:33:59  21   marketing function?
10:34:00  22            MS. HOUSE:  Objection.  Vague.
10:34:01  23            THE WITNESS:  I wouldn't know.
10:34:03  24            MS. WALLACE:  Q.  Okay.  Well, let's backup
10:34:04  25   a little bit.
```

JUDITH SIM       September 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 68

| | | |
|---|---|---|
| 10:34:06 | 1 | To your knowledge, does Oracle do anything |
| 10:34:08 | 2 | to try and determine what the potential upsell |
| 10:34:11 | 3 | opportunities are for a particular customer or group |
| 10:34:14 | 4 | of customers? |
| 10:34:18 | 5 | A.  I'm sure that there are groups who take a |
| 10:34:20 | 6 | look at that. |
| 10:34:21 | 7 | Q.  Do you know which groups those would be? |
| 10:34:24 | 8 | A.  I'd be speculating. |
| 10:34:26 | 9 | MS. HOUSE:  So calls for speculation. |
| 10:34:28 | 10 | MS. WALLACE:  Q.  Go ahead and speculate. |
| 10:34:30 | 11 | A.  Sales? |
| 10:34:31 | 12 | Q.  Sales, okay.  Do you know more specifically |
| 10:34:35 | 13 | than that whether -- |
| 10:34:36 | 14 | A.  No. |
| 10:34:37 | 15 | Q.  Well, let's back up. |
| 10:34:38 | 16 | Do you know that Oracle does that kind of |
| 10:34:39 | 17 | analysis, or do you not even know if it does that |
| 10:34:42 | 18 | kind of analysis? |
| 10:34:43 | 19 | A.  I am not sure which group would do that, |
| 10:34:44 | 20 | no.  I -- I don't know. |
| 10:34:47 | 21 | Q.  But do you know if Oracle does that |
| 10:34:49 | 22 | analysis in the first place? |
| 10:34:51 | 23 | A.  I do not know. |
| 10:34:52 | 24 | MS. HOUSE:  Objection.  Vague. |
| 10:34:53 | 25 | MS. WALLACE:  Q.  You do not know if it |

Page 69

| | | |
|---|---|---|
| 10:34:54 | 1 | does that analysis. |
| 10:34:55 | 2 | And I assume -- is the answer the same with |
| 10:34:56 | 3 | respect to cross-sell? |
| 10:34:58 | 4 | A.   Correct. |
| 10:35:01 | 5 | Q.   Who would know at Oracle whether Oracle |
| 10:35:05 | 6 | analyzes upsell opportunities? |
| 10:35:07 | 7 | A.   I don't know. |
| 10:35:09 | 8 | MS. HOUSE:  And objection.  Calls for |
| 10:35:10 | 9 | speculation, and vague. |
| 10:35:18 | 10 | MS. WALLACE:  Q.  Have you ever heard the |
| 10:35:20 | 11 | acronym, in the course of your work at Oracle, |
| 10:35:23 | 12 | "NLP"? |
| 10:35:26 | 13 | A.   Yes. |
| 10:35:27 | 14 | Q.   What does that stand for? |
| 10:35:30 | 15 | A.   Next likely purchase. |
| 10:35:32 | 16 | Q.   And how have you heard that acronym in the |
| 10:35:37 | 17 | course of your work; in what context has that come |
| 10:35:39 | 18 | up? |
| 10:35:40 | 19 | A.   The same example that I gave you earlier, |
| 10:35:42 | 20 | with the marketing activities and sequencing, |
| 10:35:46 | 21 | whether or not you would put an online marketing |
| 10:35:49 | 22 | activity and then a physical event and then a |
| 10:35:51 | 23 | download, that to us in marketing is NLP.  What's |
| 10:35:55 | 24 | the next likely activity that will lead to purchase. |
| 10:35:59 | 25 | Q.   And by activity, do you mean like, for |

Case4:07-cv-01658-PJH   Document500-14   Filed10/01/09   Page7 of 12
JUDITH SIM     September 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 70

| | | |
|---|---|---|
| 10:36:04 | 1 | example, if we put on an event, a specific event, |
| 10:36:08 | 2 | that's likely to lead to purchases?  Is that what |
| 10:36:11 | 3 | you're referring to? |
| 10:36:12 | 4 | A.  It wouldn't be one single event.  It would |
| 10:36:14 | 5 | be a sequence of activities, but that is an example |
| 10:36:17 | 6 | of an activity, yes. |
| 10:36:19 | 7 | Q.  Okay.  So when you refer to next likely |
| 10:36:22 | 8 | purchase, you're not talking, then, about looking at |
| 10:36:25 | 9 | a specific customer and the products that the |
| 10:36:28 | 10 | customer has and trying to predict what that |
| 10:36:30 | 11 | customer's purchase would be, are you? |
| 10:36:33 | 12 | A.  It is more about predicting the activity |
| 10:36:36 | 13 | that will ultimately lead to the purchase of a |
| 10:36:40 | 14 | product, correct. |
| 10:36:41 | 15 | Q.  In a broader sense, not focused on a |
| 10:36:45 | 16 | particular customer? |
| 10:36:46 | 17 | A.  I think of it as more of a marketing sense, |
| 10:36:48 | 18 | but yes. |
| 10:36:49 | 19 | Q.  Okay.  And so does the analytics group do |
| 10:36:54 | 20 | any work for you in marketing in connection with |
| 10:36:57 | 21 | this "next likely purchase" concept? |
| 10:37:01 | 22 | A.  That is what they do for me in marketing. |
| 10:37:03 | 23 | |
| 10:37:06 | 24 | |
| 10:37:07 | 25 | |

| Time | # | |
|---|---|---|
| 12:00:57 | 1 | |
| 12:01:01 | 2 | |
| 12:01:04 | 3 | |
| 12:01:08 | 4 | |
| 12:01:11 | 5 | |
| 12:01:13 | 6 | |
| 12:01:15 | 7 | |
| 12:01:16 | 8 | |
| 12:01:21 | 9 | |
| 12:01:26 | 10 | |
| 12:01:27 | 11 | |
| 12:01:29 | 12 | |
| 12:01:31 | 13 | |
| 12:01:33 | 14 | |
| 12:01:34 | 15 | |
| 12:01:37 | 16 | |
| 12:01:39 | 17 | |
| 12:01:43 | 18 | |
| 12:01:44 | 19 | |
| 12:02:08 | 20 | (Deposition Exhibit 615 was marked for |
| 12:02:10 | 21 | identification.) |
| 12:02:26 | 22 | MS. WALLACE:  Q.  And Ms. Sim, Exhibit 615 |
| 12:02:28 | 23 | is another example of a document where it's an email |
| 12:02:31 | 24 | plus Power Point, but I'm only going to ask you to |
| 12:02:38 | 25 | look at I believe two pages on the Power Point. |

JUDITH SIM     September 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 123

| | | |
|---|---|---|
| 12:02:41 | 1 | A. Oh, okay. |
| 12:02:48 | 2 | Q. So you can take a minute to look through |
| 12:02:49 | 3 | the email -- and in fact, even the email, I |
| 12:02:52 | 4 | probably -- well, take a look through the entire |
| 12:02:55 | 5 | email, and then I'll give you the pages of the Power |
| 12:02:57 | 6 | Point when you're ready. |
| 12:03:20 | 7 | A. (Examining document.)  Okay. |
| 12:03:22 | 8 | Q. The first Power Point page is going to be |
| 12:03:24 | 9 | 554054. |
| 12:03:40 | 10 | A. Okay. |
| 12:03:40 | 11 | Q. Before directing your attention to that |
| 12:03:42 | 12 | page specifically, though, first of all, the email, |
| 12:03:46 | 13 | you'll see, is from Robert Fleming to you dated |
| 12:03:49 | 14 | March 25, 2005.  And it has the title -- well, it's |
| 12:03:54 | 15 | a forward:  "Urgent - PeopleSoft Marketing - |
| 12:03:57 | 16 | Approved Plan." |
| 12:03:59 | 17 | First of all, who is Robert Fleming? |
| 12:04:02 | 18 | A. He is one of the people I identified at the |
| 12:04:07 | 19 | start.  He reports to me and does do the campaigns. |
| 12:04:11 | 20 | Q. And was he in that same position in -- as |
| 12:04:14 | 21 | of the date of this email, March 2005? |
| 12:04:18 | 22 | A. I think he was still running the campaigns, |
| 12:04:21 | 23 | but reporting to Todd Forsythe, who was reporting to |
| 12:04:24 | 24 | me. |
| 12:04:25 | 25 | Q. Okay.  And if you look at the first page of |

Page 124

| | | |
|---|---|---|
| 12:04:32 | 1 | the Power Point, which has the number 554036, it |
| 12:04:38 | 2 | says:  "Protect & Grow - The PeopleSoft Installed |
| 12:04:41 | 3 | Base - Incremental Marketing Plan, |
| 12:04:44 | 4 | PeopleSoft/JD Edwards." |
| 12:04:46 | 5 |          So do you know anything about the purpose |
| 12:04:49 | 6 | of this Power Point? |
| 12:04:52 | 7 |      A.  Based on the email note, it looks like it |
| 12:04:54 | 8 | was a marketing plan for PeopleSoft products. |
| 12:04:58 | 9 |      Q.  Do you know who developed the marketing |
| 12:05:01 | 10 | plan? |
| 12:05:01 | 11 |      A.  No, I do not. |
| 12:05:03 | 12 |      Q.  Did you have any involvement in developing |
| 12:05:05 | 13 | the marketing plan? |
| 12:05:06 | 14 |      A.  No, I did not. |
| 12:05:12 | 15 |      Q.  Do you know what Protect & Grow -- well, |
| 12:05:17 | 16 | let me stop there, actually. |
| 12:05:19 | 17 |          Is Protect & Grow, was that a campaign name |
| 12:05:22 | 18 | of some sort? |
| 12:05:23 | 19 |      A.  It's the first time I've heard of it just |
| 12:05:25 | 20 | now. |
| 12:05:26 | 21 |      Q.  Okay.  Let's look, then, at 554054. |
| 12:05:36 | 22 |          You'll see it starts with the words |
| 12:05:40 | 23 | "Significant source of revenue."  You'll see there's |
| 12:05:46 | 24 | a circle there, and to the left of the circle, |
| 12:05:49 | 25 | Cross-Sell, slash -- colon, New Pillar. |

JUDITH SIM     September 2, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 125

```
12:05:55  1              What does New Pillar refer to there, do you
12:05:58  2   know?
12:05:58  3        A.   I wouldn't know, no.
12:06:00  4        Q.   Okay.  Let's look for a moment at the page
12:06:11  5   before that, 554053.
12:06:14  6        A.   Okay.
12:06:15  7        Q.   That page has the title "Scope of
12:06:17  8   Analysis."  And the second bullet point is, "Upsell
12:06:21  9   potential."
12:06:23 10              Do you know who came up with the
12:06:24 11   information that's reflected in that second bullet
12:06:27 12   point?
12:06:29 13        A.   Projected average selling price per unit?
12:06:32 14        Q.   Yes --
12:06:33 15        A.   Or in the whole bullet?
12:06:35 16        Q.   In the whole bullet.
12:06:36 17        A.   Oh.  No, I do not.
12:06:48 18
12:06:50 19
12:06:54 20
12:06:58 21
12:07:01 22
12:07:03 23
12:07:04 24
12:07:04 25
```

## CERTIFICATE OF REPORTER

I, HOLLY THUMAN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein state, and that the testimony of said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition review of the transcript [X] was [] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: 9-9-09

HOLLY THUMAN, CSR