1   Robert A. Mittelstaedt (SBN 060359)
    Jason McDonell (SBN 115084)
2   Elaine Wallace (SBN 197882)
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA  94104
4   Telephone:    (415) 626-3939
    Facsimile:    (415) 875-5700
5   ramittelstaedt@jonesday.com
    jmcdonell@jonesday.com
6   ewallace@jonesday.com

7   Tharan Gregory Lanier (SBN 138784)
    Jane L. Froyd (SBN 220776)
8   JONES DAY
    1755 Embarcadero Road
9   Palo Alto, CA  94303
    Telephone:    (650) 739-3939
10  Facsimile:    (650) 739-3900
    tglanier@jonesday.com
11  jfroyd@jonesday.com

12  Scott W. Cowan (Admitted *Pro Hac Vice*)
    Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13  JONES DAY
    717 Texas, Suite 3300
14  Houston, TX 77002
    Telephone:    (832) 239-3939
15  Facsimile:    (832) 239-3600
    swcowan@jonesday.com
16  jlfuchs@jonesday.com

17  Attorneys for Defendants
    SAP AG, SAP AMERICA, INC., and
18  TOMORROWNOW, INC.

19                    UNITED STATES DISTRICT COURT

20                  NORTHERN DISTRICT OF CALIFORNIA

21                          OAKLAND DIVISION

22  ORACLE USA, INC., et al.,              Case No. 07-CV-1658 PJH (EDL)

23              Plaintiffs,                **DEFENDANTS' OBJECTIONS TO
                                           PLAINTIFFS' EVIDENCE FILED IN
24        v.                               SUPPORT OF PLAINTIFFS'
                                           OPPOSITION TO DEFENDANTS'
25  SAP AG, et al.,                        MOTION FOR PARTIAL SUMMARY
                                           JUDGMENT REGARDING
26              Defendants.                PLAINTIFFS' HYPOTHETICAL
                                           [FAIR MARKET VALUE] LICENSE
27                                         DAMAGES CLAIM**

28

1    Defendants SAP AG, SAP America, Inc. and TomorrowNow, Inc. ("Defendants") object

2    on the grounds set forth below to the declarations and exhibits attached thereto submitted by

3    Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited and Siebel

4    Systems, Inc. ("Plaintiffs") in support of Plaintiffs' Opposition to Defendants' Motion for Partial

5    Summary Judgment Regarding Plaintiffs' Hypothetical [Fair Market Value] License Damages

6    Claim ("Opposition").

7    **Meyer Declaration:**  The Declaration of Paul K. Meyer and all exhibits attached thereto

8    submitted in support of Plaintiffs' Opposition ("Meyer Declaration" or "Meyer Decl.") are

9    entirely irrelevant to Defendants' Motion for Partial Summary Judgment Regarding Plaintiffs'

10    Hypothetical License Damages Claim ("Motion") and for this reason should be disregarded.  *See*

11    Fed. R. Evid. 401, 402.  The Meyer Declaration purports to describe how Plaintiffs' damages

12    expert would calculate and value Plaintiffs' claimed actual damages in the form of a hypothetical

13    lost license.  The exhibits attached to the Meyer Declaration are examples of the evidence Mr.

14    Meyer declares he would take into account when performing this calculation.  However, as

15    explained in Defendants' Motion and Reply to Plaintiffs' Opposition to Defendants' Motion for

16    Partial Summary Judgment Regarding Plaintiffs' Hypothetical License Damages Claim ("Reply"),

17    evidence regarding the amount of a hypothetical license is irrelevant to Defendants' Motion,

18    which attacks not the alleged price of a hypothetical license, but its very availability in light of

19    Plaintiffs' inability to prove that, but for the alleged infringement, the parties would have agreed

20    to a license.  *See* Motion at § III(B); Reply at §§ II, III(D), filed concurrently.

21    Additionally, Defendants object to the Meyer Declaration as an improper and incomplete

22    expert opinion, which is not based on "sufficient facts or data" as required by the Federal Rules of

23    Evidence.  Fed. R. Evid. 702.  As Mr. Meyer has declared, his analysis of Plaintiffs' damages

24    case is "on-going," and Mr. Meyer has admittedly "not yet reached conclusions, nor [has he]

25    reviewed all of the documentation and information" at issue in the case.  Meyer Decl. ¶ 6.

26    Defendants also object to the Meyer Declaration to the extent that it relies upon evidence

27    of lost licensing opportunities in its calculations of a hypothetical lost license.  *See, e.g.*, Meyer

28    Decl. ¶ 31 (noting that Meyer would consider in his calculations "the value to Oracle of the

SVI-72970v1

DEFENDANTS' OBJECTIONS TO EVIDENCE
Case No. 07-CV-1658 PJH (EDL)

1    copyrighted materials in generating sales of its other products.").  In her recent Order Granting

2    Defendants' Motion for Preclusion of Certain Damages Evidence Pursuant to Federal Rules of

3    Civil Procedure 37(c)(1) and 16(f), Magistrate Judge Laporte found that Plaintiffs had untimely

4    disclosed evidence of lost licensing opportunities and precluded Plaintiffs from basing a claim of

5    lost profits on such evidence.  *See* D.I. 482 at 1-2, 17-18.  Should Plaintiffs ultimately be

6    permitted to present evidence regarding the price of a hypothetical license, any attempt to rely on

7    this very same evidence would be inconsistent with Magistrate Judge Laporte's Order.

8         The foregoing objections to the Meyer Declaration and attached exhibits are made insofar

9    as the declaration and exhibits are offered in support of Plaintiffs' Opposition.  Defendants

10   reserve the right to object on additional grounds to any of the statements made in the Meyer

11   Declaration or to any of the exhibits attached thereto, should that evidence be offered by Plaintiffs

12   for any other purpose in this litigation.

13        **Ellison Declaration:**  The Declaration of Larry Ellison in support of Plaintiffs'

14   Opposition to Defendants' Motion for Partial Summary Judgment Regarding Plaintiffs'

15   Hypothetical License Damages Claim ("Ellison Declaration" or "Ellison Decl.") is also

16   objectionable.  Defendants object to the Ellison Declaration to the extent that it describes how Mr.

17   Ellison would calculate a hypothetical license for copyright damages purposes.  *See, e.g.*, Ellison

18   Decl. ¶ 5 ("When presented with the final parameters of licenses . . . from Oracle's damages

19   experts, I will analyze those parameters rigorously before opining on what I believe the fair value

20   would be."); *see also id*. at ¶ 4.  Any evidence regarding the manner in which Mr. Ellison would

21   calculate a hypothetical lost license for damages purposes is irrelevant, as the instant motion only

22   concerns whether Plaintiffs have met their burden to prove that the parties would have agreed to

23   this license in the first place.  *See* Fed. R. Evid. 401, 402; Motion at § III(B); Reply at §§ II,

24   III(B)(3).

25        Moreover, to the extent that the Ellison Declaration directly contradicts Mr. Ellison's

26   previous deposition testimony, it should be disregarded as a "sham" declaration.  *See* Ellison Decl.

27   ¶¶ 4, 6.  A "party cannot submit a declaration flatly contradicting its prior deposition . . . in an

28   attempt to 'create' an issue of fact and avoid summary judgment."  *Persistence Software, Inc. v.*

1   *Object People, Inc.*, 128 F. Supp. 2d 623, 628 (N.D. Cal. 2000) (Hamilton J.) (citing *Kennedy v.*

2   *Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991)), *vacated on other grounds*, 200

3   F.R.D. 626 (N.D. Cal. 2001) (Hamilton, J.); *see also* Reply at § III(B)(3).  For this reason, Mr.

4   Ellison's declaration that the license value Oracle would have demanded from SAP would be

5   "significantly lower" than his estimate during his deposition, as well as Mr. Ellison's declaration

6   contradicting his deposition testimony that Oracle would have demanded a "prohibitively"

7   expensive price from SAP, should both be disregarded as "sham" attempts to manufacture an

8   issue of fact.  *See* Ellison Decl. ¶¶ 4, 6; Declaration of Tharan Gregory Lanier in Support of

9   Defendants' Motion For Partial Summary Judgment Regarding Plaintiffs' Hypothetical License

10  Damages Claim ("Lanier Decl.") ¶ 3, Ex. C (Ellison Depo.) at 74:12-75:9, 78:8-11, 80:3-24.

11  Defendants also object to the Ellison Declaration to the extent that it purports to describe

12  Oracle's database reseller agreement with SAP or SAP's supposed motives in the database market.

13  *See* Ellison Decl. ¶ 7.  First, this evidence lacks foundation, as no evidence was introduced to

14  establish that Mr. Ellison has or had personal knowledge of the negotiation and terms of the

15  database reseller agreement or SAP's supposed plan to undermine Oracle's market share in the

16  database market.  *See* Fed. R. Evid. 602.  Second, Defendants object to the extent that the Ellison

17  Declaration violates the best evidence rule.  *See* Fed. R. Evid. 1002.  Specifically, the declaration

18  improperly seeks to prove the contents of the database reseller agreement.  *See* Ellison Decl. ¶ 7

19  (purporting to speak to the "purpose and allowed uses under" the agreement).  Third, to the extent

20  that the Ellison Deposition references the terms of the database reseller agreement, Defendants

21  also object to those statements as hearsay, as they are out of court statements introduced to prove

22  the truth of the matter asserted.  *See* Fed. R. Evid. 801, 802.

23  **Catz Declaration:**  Defendants also object to the Declaration of Safra Catz in Support of

24  Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment Regarding Plaintiffs'

25  Hypothetical License Damages Claim ("Catz Declaration" or "Catz Decl.") to the extent that it

26  describes how Ms. Catz would calculate a hypothetical license for copyright damages purposes.

27  *See, e.g.*, Catz Decl. ¶ 4 ("The factual assumptions I made base on the broad questions asked were

28  in fact different from what I now understand to be the necessary inquiry, in determining a

1   hypothetical license *value* . . . .") (emphasis added); *see also id*. at ¶ 5.  Any evidence regarding

2   the manner in which Ms. Catz would calculate a hypothetical lost license for damages purposes is

3   irrelevant, as the instant motion only concerns whether Plaintiffs have met their burden to prove

4   that the parties would have agreed to this license in the first place.  *See* Fed. R. Evid. 401, 402;

5   Motion at § III(B); Reply at §§ II, III(B)(3).

6          Moreover, to the extent that the Catz Declaration directly contradicts Ms. Catz's previous

7   deposition testimony, it should be disregarded as a "sham" declaration.  A "party cannot submit a

8   declaration flatly contradicting its prior deposition . . . in an attempt to 'create' an issue of fact

9   and avoid summary judgment."  *Persistence Software*, 128 F. Supp. 2d at 628 (Hamilton J.); *see*

10  *also* Reply at § III(B)(3).  For this reason, Ms. Catz's declaration that the license value Oracle

11  would have demanded from SAP would be "significantly lower" than the billions she estimated

12  during her deposition should be disregarded as a "sham" attempt to manufacture an issue of fact.

13  *See* Catz Decl. ¶ 4; Lanier Decl. ¶ 1, Ex. A (Catz Depo.) at 159:16-23.

14         For the forgoing reasons, the documents described above should be excluded from

15  evidence.

16

17  Dated:  October 7, 2009                          JONES DAY

18

19                                                   By:  /s/ Tharan Gregory Lanier
                                                          Tharan Gregory Lanier
20
                                                     Counsel for Defendants
21                                                   SAP AG, SAP AMERICA, INC., and
                                                     TOMORROWNOW, INC.
22

23

24

25

26

27

28