BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachry.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation,
Oracle EMEA Limited, and Siebel Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC. *et al*,<br><br>    Plaintiffs,<br><br>  v.<br><br>SAP AG, *et al*.,<br><br>    Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**ORACLE'S MOTION TO COMPEL PRODUCTION OF DAMAGES-RELATED DOCUMENTS AND INFORMATION**<br><br>*[REDACTED]*<br><br>Date:    November 24, 2009<br>Time:    9:00 a.m.<br>Place:   E, 15th Floor<br>Judge:  Hon. Elizabeth D. Laporte |

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S MOTION TO COMPEL PRODUCTION OF DAMAGES-RELATED DOCUMENTS AND INFORMATION

Dockets.Justia.com

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 2

II. LEGAL STANDARD .......................................................................................................... 3

III. DEFENDANTS SHOULD PROVIDE THE REQUESTED DISCOVERY RELATING TO ORACLE'S FAIR MARKET VALUE LICENSE MEASURE OF DAMAGES ...................................................................................................................... 6

    A. Value-per-Customer Data ........................................................................................ 6

    B. Highest Dollar-Value Licenses ................................................................................ 7

    C. Research and Development Information ................................................................. 8

    D. Defendants Have Elsewhere Argued Their Mental State Regarding The Fair Market Value License Is Relevant .................................................................. 10

IV. DEFENDANTS SHOULD PRODUCE THE REQUESTED DOCUMENTS RELATED TO ORACLE'S INFRINGER'S PROFITS MEASURE OF DAMAGES .................................................................................................................... 11

    A. Defendants Have Failed to Produce the Same Detailed Cost Information Oracle Has Produced .............................................................................................. 11

V. CONCLUSION .................................................................................................................. 14

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Deltak , Inc. v. Advanced Systems, Inc.*,
    767 F.2d 357 (7th Cir. 1985) .................................................................................................. 10

*Equal Employment Opportunity Comm'n v. Lexus of Serramonte*,
    No. 05-0962, 2006 WL 2567878 (N.D. Cal. Sept. 5, 2006) ...................................................... 4

*First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co.*,
    No. 95-2243, 1995 WL 566026 (N.D. Cal. Sept. 19, 1995) ...................................................... 4

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ............................................................................................... 6, 11

*Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*,
    752 F.2d 1326 (9th Cir. 1984) ............................................................................................ 11, 12

*Getaped.com, Inc. v. Cangemi*,
    188 F. Supp. 2d 398 (S.D.N.Y. 2002) ................................................................................ 5, 10

*Jarvis v. K2 Inc.*,
    486 F.3d 526 (9th Cir. 2007) .................................................................................................... 4

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ............................................................................................ 4, 5, 6

**STATUTES**

17 U.S.C. § 504(b) .................................................................................................... 5, 6, 11, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 16 ............................................................................................................................ 5

Fed. R. Civ. P. 26 ......................................................................................................................... 3,4

Fed. R. Civ. P. 30 .......................................................................................................................... 11

Fed. R. Civ. P. 37 ........................................................................................................................ 1, 5

Fed. R. Civ. P. 56 ............................................................................................................................ 5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on November 24, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, CA, Courtroom E, 15th Floor, before the Hon. Elizabeth D. Laporte, Plaintiffs Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., and Siebel Systems, Inc. will move to compel Defendants to produce documents as specified in the ensuing Memorandum of Points and Authorities. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Amy Donnelly, and upon such other matters presented to the Court at the time of the hearing.

**RELIEF SOUGHT**

Pursuant to Fed. R. Civ. P. 37,[1] Plaintiffs Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., Siebel Systems, Inc. (collectively, "Oracle" or " Plaintiffs") seek to compel Defendants SAP AG, SAP America, Inc. (together, "SAP"), and TomorrowNow, Inc. ("SAP TN," and together with SAP, "Defendants") to produce documents needed to prove Oracle's damages claims at trial. Specially, Oracle seeks to compel production of (1) a supplemental response to Interrogatory 69 from Oracle's Fourth Set of Interrogatories to TomorrowNow/Third Set of Interrogatories to SAP, related to customer valuations; (2) certain information related to Defendants' Research and Development expenses; (3) certain information responsive to RFP 147 from Oracle's Fourth Set of Requests for Production, related to SAP's licensing practices; and (4) certain information responsive to Oracle's First Targeted Search Request relating to Oracle's infringer's profits measure of damages.

---

[1] Pursuant to Fed. R. Civ. P. 37(a)(1) and Civil L.R. 37-1, Oracle's counsel affirms that they have conferred with opposing counsel in a good faith effort to reach agreement about these matters. *See* Declaration of Amy Donnelly in Support of Motion to Compel ("Donnelly Decl.") ¶¶ 6-11, 13-15.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Oracle has sought certain damages-related discovery to support its copyright damages claims and to rebut Defendants' expected counterarguments. Defendants have resisted complying with Oracle's requests for certain categories of this discovery, whether through Requests for Production, Interrogatories, or Targeted Searches. Accordingly, Oracle now moves to compel the following discovery.

<u>Information Related to Oracle's Fair Market Value License Measure of Damages</u>:

- **Value-Per-Customer Data**: Oracle requests an order compelling a supplemental response to Interrogatory 69. This interrogatory seeks information related to value-per-customer data. This data will help explain why SAP considered SAP TN's customers far more valuable to SAP than is reflected by support fees paid by those customers to SAP TN. In turn, this information supports a higher value for the license to recruit, support and leverage these customers.

- **Highest Dollar Value Licenses**: Oracle seeks complete copies of six of Defendants' highest-value intellectual property ("IP") licenses. Defendants' licensing arm's length IP licensing practices with independent third parties are relevant to show the reasonableness of Plaintiffs' fair market value license amount. This information also may rebut the claim made by Defendants in their pending summary adjudication motion that they would never have paid Oracle a significant amount for the IP at issue here.

- **Research and Development ("R&D") Information**: Oracle also requests that the Court order Defendants to produce documents sufficient to show R&D expenses as well as R&D employee headcount for SAP applications and support and SAP TN support broken out by product line and function. The costs, risks and time delay that Defendants avoided by infringing rather than independently creating what Defendants took from Oracle are relevant metrics under the law and industry IP valuation methodologies to arrive at the fair market value license amounts for what Defendants infringed.

<u>Information Related to Oracle's Infringer's Profits Measure of Damages:</u>

- **Infringer's Profits Cost Information:** Finally, under the alternative infringer's profits measure of damages available to Oracle, Defendants have the burden to prove their reasonable and allowed expenses. Oracle has sought discovery on Defendants' costs and expenses so that it may adequately evaluate and potentially rebut any showing Defendants make. This information that Oracle seeks is same type and detailed financial information Defendants have sought -- and obtained -- from Oracle. This information includes detailed income statement, balance sheet, and trial balance information for any SAP entity that controls the selling of software licenses and any SAP entity that bears any costs that Defendants plan to apply to Oracle's showing of infringer's revenues.

Defendants' recent Motion for Partial Summary Judgment brought these issues into even tighter focus. That motion claims that Oracle cannot recover a fair market value license measure of damages on the facts of this case because neither Oracle nor SAP would ever have actually agreed to the terms of such a license, including because both companies' executives would have refused to do so. Oracle believes it will prevail on the motion, but regardless, Defendants' own arguments confirm that evidence showing Defendants' state of mind, expectations, and comparable experiences relating to such license negotiations, (while not dispositive as Defendants claim) is relevant to the arguments Defendants will make at trial if Judge Hamilton denies that motion. Further, Defendants acknowledged in their motion the availability to Oracle of infringer's profits, another measure of copyright damages. This concession confirms the relevance of the discovery related to Defendants' revenues, profits, and costs that Oracle has long sought.

Defendants' refusal to provide this information prevents Oracle from completing its damages analysis and assessing Defendants' response to it. The Court should order Defendants to provide the requested information.

## II.   LEGAL STANDARD

Each party has the right to discover non-privileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed, and a

1  request for discovery should be considered relevant if there is any possibility that the information
2  sought may be relevant to the claim or defense of any party." *Equal Employment Opportunity*
3  *Comm'n v. Lexus of Serramonte*, No. 05-0962, 2006 WL 2567878  at *5 (N.D. Cal. Sept. 5,
4  2006) (internal citation omitted).  "When the discovery sought appears relevant on its face, the
5  party resisting the discovery has the burden to establish that it does not come within the scope of
6  relevance as defined under Rule 26(b)(1)." *Id.*; *see also First United Methodist Church of San
7  Jose v. Atlantic Mutual Ins. Co.*, No. 95-2243, 1995 WL 566026 at *2 (N.D. Cal. Sept. 19, 1995)
8  ("Under the liberal Federal Rules the party attempting to avoid discovery needs to carry a heavy
9  burden demonstrating why discovery should be denied.").
10           Copyright law provides for a variety of remedies available to the wronged party,
11  and Oracle now moves to compel from Defendants production of information relevant to two
12  such measures of copyright damages: the fair market value or hypothetical license measure of
13  actual damages, and the infringer's profits measure of damages.
14           **Fair Market Value License:**  Oracle will pursue as damages the value of
15  objective fair market value licenses for the Oracle intellectual property taken by Defendants.  *See*
16  Oracle's September 23, 2009 Opposition to Defendants' Motion for Partial Summary Judgment
17  Regarding Plaintiffs' Hypothetical [Fair Market Value] License Damages, Dkt No. 483
18  ("Oracle's MSJ Opp.").  As Oracle's recent briefing to Judge Hamilton confirms, this measure of
19  damages is recognized in the Ninth and other Circuits as an available measure of actual damages
20  for copyright infringement. *Id.,* citing, *e.g., Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d
21  700, 707-09 (9th Cir. 2004) (discussing hypothetical license as among the available damages
22  models for copyright infringement); *accord Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007)
23  (damages for copyright infringement may be measured by hypothesizing "what a willing buyer
24  would have been reasonably required to pay to a willing seller for plaintiff's work") (internal
25  citation omitted).  In such a hypothetical negotiation, while not dispositive, the parties' mindset
26  and the negotiation's factual context are relevant to assessing the objective fair market value of a
27  hypothetical license:  "Common sense dictates that an expert may confer with the copyright
28  holder and that the background data may be factored into calculations of actual damages." *Polar*

1  *Bear*, 384 F.3d at 709; *see also, e.g., Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 406

2  (S.D.N.Y. 2002) (indicating importance of contextual evidence about appropriate licensing fee

3  between competitors).

4          **Infringer's Profits:**  In the alternative, and insofar as there is no danger of double

5  recovery, Oracle will also pursue as damages Defendants' wrongfully-obtained infringer's direct

6  and indirect profits.  *See* 17 U.S.C. § 504(b).  Indeed, Defendants acknowledge Oracle's ability

7  to recover this measure of damages in their pending Motion for Partial Judgment Regarding

8  Plaintiffs' Hypothetical License Damages Claims, Dkt No. 431 ("MSJ").  *See* MSJ at 7:25-8:2,

9  8:6-8:8 ("Infringer's profits are analyzed from the infringer's point of view.  If the infringer has

10 earned a profit, it must disgorge the profit so that it does not benefit from its wrongdoing.").[2]

11 Specifically, Oracle will seek not only the profits TomorrowNow made from supporting Oracle's

12 applications, but also the profits SAP earned from the now 86 TomorrowNow customers that

13 took SAP's "Safe Passage" program to move to SAP applications.  Donnelly Decl. ¶¶ 9, 10, 14

14 and Ex. G.  This is particularly appropriate because Defendants admittedly used TomorrowNow

15 as a loss leader to drive SAP's far more lucrative Safe Passage applications sales.  *See* Oracle's

16 MSJ Opp., Dkt No. 483, at 10 n.8 and referenced Declaration of Paul Meyer in Support, Dkt No.

17 487, at ¶ 44 and Exs. 55, 57, 63 and 64.

18         To establish the infringer's profits, the copyright owner need "present proof only

---

[2] Defendants also made clear that Oracle's infringer's profits damages were not part of Defendants' Rule 37 Motion on which Your Honor ruled on September 17, 2009.  *See* Defendants' July 14, 2009 Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f), Dkt No. 342 at 13 n.9 (This "motion is limited to what Oracle characterizes as its lost profits claims, and does not extend to its 'infringers' profits/unjust enrichment claims, its hypothetical license theory, or alleged damage to computer systems or data.  Defendants do not concede that any of these other damages categories or theories are proper or timely, but will address those by separate motion if necessary.  For example, Oracle's hypothetical license theory will be the subject of Defendants' Rule 56 motion to be filed on August 26th.").  Moreover, the 83 overlapping SAP and TomorrowNow customers have been in play for such damages from this Court's first involvement as discovery magistrate.  *See* Oracle's October 1, 2009 Objections to Order of Discovery Magistrate Granting Defendants' Motion for Preclusion of Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 37(c) and 16(f), Dkt No.499.  Indeed, just this week, Defendants' counsel added three more such customers to that list.  Donnelly Decl. ¶ 14.

of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see also Polar Bear*, 384 F.3d at 711, 714 n.10 (explaining the statute "creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (discussing calculation and proof of profits attributable to infringement and holding that indirect profits are recoverable if ascertainable; *e.g.*, plaintiff could claim profits resulting from hotel and gambling operations resulting from infringing stage show).

## III. DEFENDANTS SHOULD PROVIDE THE REQUESTED DISCOVERY RELATING TO ORACLE'S FAIR MARKET VALUE LICENSE MEASURE OF DAMAGES

### A. Value-per-Customer Data

As part of its evidence to support the valuation of its fair market value license measure of damages, Oracle needs certain information relating to Defendants' projections about existing, acquired, or new customer value. The value SAP placed on customers is relevant to show that SAP values a customer more highly than what the customer's initial purchases of applications or support would suggest. That higher valuation results from the potential for expanded application and support purchases from SAP over time. This, in turn, is relevant to explain why SAP TN's customers were far more valuable to SAP beyond just the support fees they paid to SAP TN.

To get this information, Oracle served Interrogatory 69, which requests that Defendants "[d]escribe, in as much detail as possible, how each Defendant analyzes, projects, models, or otherwise calculates the value (economic, marketing, competitive, or otherwise) of a customer to any Defendant, for any length of time, including, but not limited to, analysis, projections, models, or other calculations of the value of licensing later versions of a product to a Customer or of licensing different products to a Customer." Donnelly Decl. ¶ 3, Ex. B.

1 █████████████████████████████████ *Id.* This response is too narrow, and omits
2 other or later valuations that implicate these customers, as a category or in specifics (*e.g.*, as part
3 of valuations done for budgeting; forecasting for cash flow, marketing and other planning
4 exercises; or in connection with acquisitions). The Court should require Defendants to
5 supplement this response to include any valuations that would relate to these customers.

6       **B.**     **Highest Dollar-Value Licenses**

7       Oracle also seeks discovery of a narrow category of documents related to
8 Defendants' highest dollar-value licenses. Specifically, in its pending Request for Production
9 147 (as narrowed from 10 to 6 requested licenses by meet and confer) from Oracle's Fourth Set
10 of Requests for Production, Oracle seeks "complete copies, including all terms, conditions,
11 exhibits, appendices, attachments, and/or incorporated documents, of the three licenses, executed
12 or in effect in the last five years, pursuant to which SAP AG and/or SAP America has been paid
13 the largest overall sum of money for grants by SAP AG and/or SAP America to any Person for
14 the use of SAP's Intellectual Property and of the three licenses, executed or in effect in the last
15 five years, pursuant to which SAP AG and/or SAP America has paid the largest overall sum of
16 money for grants of other Persons' Intellectual Property." *See id.* ¶ 4, 13, Exs. C, I.

17       The parties have met and conferred repeatedly in discovery about the relevance of
18 Defendants' intellectual property ("IP") licensing practices with independent third parties and
19 related documents, but Defendants have consistently taken the position that this category of
20 information is not relevant to the litigation. *See id.* ¶ 14. Defendants' licensing practices are
21 relevant - and in particular the contents of Defendants' highest value licenses with independent
22 third parties - because they show the reasonableness of Plaintiffs' fair market value license
23 amount (which contemplates a willing buyer and willing seller) and undermine any claim by
24 Defendants that they would never have paid (or charged) a significant amount for intellectual
25 property. Further, Defendants have previously acknowledged that such licensing agreements

26
27
28

7                     Case No. 07-CV-01658 PJH (EDL)

1 exist.[3]

2       Defendants also attempted to analogize Oracle's request to Defendants' rejected
3 efforts to obtain comprehensive Oracle partner discovery. *See id.* ¶ 14, Ex. I. However, unlike
4 Defendants' request for extensive Oracle partner discovery, Oracle's request for SAP's high
5 value IP licenses is quite limited (6 total licenses) and is not biased by virtue of seeking
6 information about affiliated partners but instead concerns arms' length transactions with
7 independent third parties. Moreover, the Court did order Oracle to produce more extensive
8 partner-related information than what Oracle seeks here. *See* February 11, 2009 Order Granting
9 in Part and Denying in Part Plaintiffs Motion to Compel and Granting Part and Denying in Part
10 Defendants' Motion to Compel, Dkt. 252 (ordering Oracle to provide a list of the partners with
11 which Oracle contracts to provide support services for PeopleSoft, J.D. Edwards or Siebel
12 applications, partnership agreement(s) with CedarCrestone for the relevant time frame from 2002
13 through 2008, and two master agreements regarding support, including fee schedules).

14       Defendants are due to respond to Oracle's Request for Production 147 by
15 November 2nd, 2009. Request for Production 147 seeks an expanded category of licensing
16 information, however, than at issue here. *See* Donnelly Decl. ¶¶ 4, 13, Exs. C, I. Plaintiffs
17 offered the more tailored request sought through this motion as a compromise to Defendants,
18 with the goal of reaching resolution of this issue without court intervention. *See id.* ¶ 13, Ex. I.
19 Defendants refused and have informed Oracle that they would not be producing this information
20 on November 2nd. *Id.* Accordingly, Oracle now moves to compel this information.

21       **C.**    **Research and Development Information**

22       Oracle also needs certain research and development ("R&D") information from
23 Defendants as part of its evidence to support the valuation of its fair market value license
24 measure of damages. Specifically, Oracle has asked Defendants for, and now moves to compel,

---

[3] For example, SAP's Chief Financial Officer, Werner Brandt, testified that SAP has entered into large value licensing agreements with several major corporations. *See* Donnelly Decl.¶ 19, Ex. K.

production of these categories of information for the period from January 1, 2004 through October 31, 2008:

>  (1) Documents sufficient to show R&D expenses for SAP applications and support and SAP TN support broken out (a) by product line to the extent available and (b) by function with the greatest detail available (*e.g.*, sustaining/maintenance R&D versus new development R&D or any more specific delineation where available), plus accompanying explanatory presentations and analyses; and
>
>  (2) Documents sufficient to show R&D employee headcount for SAP applications and support and SAP TN support broken out (a) by product line to the extent available and (b) by function with the greatest detail available (e.g. sustaining/maintenance R&D versus new development R&D or any more specific delineation where available), plus accompanying explanatory presentations and analyses.[4]

While Defendants' most recent meet and confer correspondence indicates they will produce some R&D information by November 3rd, 2009, the level of detail that will be provided is unclear. *See* Donnelly Decl. ¶ 11, Ex. H. As such, Plaintiffs are including a request for production of detailed R&D information with this Motion to Compel. Upon receipt of an adequate production of Defendants' R&D information, Oracle will withdraw its request for a ruling compelling further production. Oracle has promised Defendants production of commensurate information from Plaintiffs by November 3rd, as well. *Id*. ¶¶ 11, 12, Ex. H.

R&D information for SAP's applications, as well as for its support activities, is relevant because Defendants infringed both Oracle's support materials and its underlying applications. *See* Fourth Amended Complaint, Dkt. No. 418, at ¶¶ 10, 19. How much Defendants avoided spending and the risks and time delay they avoided by infringing rather than independently creating what they took from Oracle are relevant to the fair market value of the

---

[4] *See* Donnelly Decl. ¶ 11, Ex. H. R&D information was first sought through Oracle's First Targeted Search Request, sub-part (j), but more recently Oracle has agreed to tailor its request to this more narrow set of information, as documented in meet and confer correspondence. *Id.* at Exs. A & H.

1  hypothetical licenses.  *See* Oracle's MSJ Opp., Dkt No. 483, at Section II.E, citing, *e.g.*, *Deltak ,*
2  *Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 361 (7th Cir. 1985) ("the value of use . . . is not, of
3  course, identical to the profits it generates"; instead each of the copies infringed "had a value of
4  use to [defendant] equal to the acquisition cost saved by the infringement instead of purchase,
5  which [defendant] was then free to put to other uses.").  While Oracle's acquisition costs and
6  R&D expenses for the infringed material are relevant to quantifying that avoided cost (which is
7  why Oracle has agreed to produce them, *see* Donnelly Decl. ¶ 12), Defendants' R&D expenses
8  are also benchmarks for how much Defendants could reasonably have anticipated they would
9  have avoided spending.  The high euro amounts of Defendants' R&D spend on their own
10 applications, patches, fixes, and updates (the breakout of which can be shown by the requested
11 headcount by function information) also undermine Defendants' claims that Oracle's fair market
12 value license amounts are unreasonably high and is credible evidence of what would have been
13 in Defendants' minds if they had engaged in the negotiations to arrive at the fair market value of
14 the hypothetical licenses.  *See, e.g., Getaped.com*, 188 F. Supp. 2d at 406 (discussing importance
15 of contextual evidence in a hypothetical licensing situation).

### D. Defendants Have Elsewhere Argued Their Mental State Regarding The Fair Market Value License Is Relevant

As explained above, the materials relating to R&D, value-per-customer data, and licensing practices are relevant to Oracle's proof of its fair market value measure of damages, because they relate to Defendants' state of mind and possible conduct in negotiating a fair market value license for Oracle's intellectual property and otherwise provide information relevant to establishing fair market value.  Indeed, despite refusing to provide this information (including often on relevance grounds), Defendants' arguments in their recent Motion for Partial Summary Judgment concede the evidence's relevance by affirmatively injecting Defendants' state of mind, expectations, and experiences related to possible retroactive license valuations into the damages analysis.  Defendants' pending Motion for Partial Summary Judgment relies on what SAP purportedly would have been willing to do or not do in regards to a hypothetical license.  *See, e.g.* MSJ, Dkt No. 431, at 13:5-9 ("Even assuming that Oracle and SAP would have

1  been willing to negotiate a license, such negotiations would not have resulted in a license.  Based
2  on both Oracle and SAP executive testimony, it is clear that neither side would have agreed on a
3  license because they would have had vastly different views as to the basis of the negotiation.
4  This disconnect demonstrates that there never would have been the requisite 'meeting of the
5  minds.'"), 13:21-23 ("Mr. Plattner's testimony evidences that SAP would have viewed the
6  negotiation as simply one for the right to service Oracle's customers; indeed, SAP would have
7  expected to get a bargain because TN would have been 'doing [Oracle's] job' for it.").  By these
8  arguments, Defendants themselves put into play the parties' opinions and past behavior in
9  connection with establishing the fair market value of the hypothetical licenses between them.
10 Since Defendants relied on this argument in their own motion, they can no longer refuse to grant
11 Oracle discovery on issues that would inform the valuation of any retroactive license.

## IV.  DEFENDANTS SHOULD PRODUCE THE REQUESTED DOCUMENTS RELATED TO ORACLE'S INFRINGER'S PROFITS MEASURE OF DAMAGES

Another acknowledged measure of copyright damages available to Oracle is infringer's profits.  To support its claim to Defendants' profits, Oracle has sought discovery on Defendants' revenues and the associated expenses.  However, Defendants have failed to produce detailed cost information for SAP AG and SAP America, even while seeking and moving to compel Oracle's production of voluminous cost information to evaluate Oracle's profit margins.

### A.  Defendants Have Failed to Produce the Same Detailed Cost Information Oracle Has Produced

Under the infringer's profits measure of damages, Defendants have the burden to prove their expenses.  17 U.S.C. § 504(b).  Defendants' expenses are only deductible if they "actually contributed to the production, distribution or sales of the infringing goods."[5]  *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1333 (9th Cir. 1984).  This extends to overhead expenses as well.  *Id*.

---

[5] However, where infringement is willful, conscious or deliberate, certain expenses, such as Defendants' overhead, are not deductible from Defendants' gross revenues.  *Frank Music Corp.*, 772 F.2d at 515.

11                                                                                              Case No. 07-CV-01658 PJH (EDL)

ORACLE'S MOTION TO COMPEL PRODUCTION OF DAMAGES-RELATED DOCUMENTS AND INFORMATION

1        Oracle has sought discovery on Defendants' costs and expenses so that it may
2  adequately evaluate and potentially rebut any showing Defendants make. To this end, on August
3  29, 2008, Oracle served its First Targeted Search Request, which requested financial documents
4  detailing "SAP's profit margins for service and applications sales and Documents explaining
5  how they are calculated." Donnelly Decl. ¶ 2, Ex. A.

6

7

8

9

10

11

12

13

14

15

16

17  However, SAP's produced report does not allow Oracle to make that determination. Instead, it
18  lumps irrelevant and relevant expenses together, and would allow SAP to deduct expenses that
19  did not "contribute[] to the production, distribution or sales" of its software. *Kamar Int'l, Inc*,
20  752 F.2d at 1333. By contrast, Oracle's financial reports divide and detail 14 different Facilities
21  expense line items alone, including a "Facilities Rental," "Facilities Depreciation," and
22  "Facilities Property Taxes" expenses. *See* Donnelly Decl., ¶ 18. In addition, Oracle's reports
23  divide and detail Oracle's "Employee Related Expenses" into over 20 different categories,

24  _____

25  [6] The other listed costs are "Purchased License," "Cost of Support," "CDP Mgmt. Charges,"
26  "Oth. SW Related Services," "Cost of software and software rel.serv.," "Consulting,"
    "Training," "AMS & non mandatory Hosting," "Allocations," "Cost of professional serv. & oth.
27  Serv.," "Research and Development," "General and administration," "Goodwill," and "Other
    non-operating Inc./Exp., net." *See* Donnelly Decl., ¶ 17.
28

1   including "Salary," "Commissions," and "Medical and Dental Insurance." *Id*. Such cost detail

2   allows the sort of assessment necessary to properly rebut Defendants' infringers' profits claims,

3   which is why Oracle is requesting the same level of detail from Defendants.

4          As a matter of fairness and burden, what Oracle asks for is no different than what

5   Defendants have demanded from Oracle. Among other things, Defendants have requested and

6   Oracle has provided detailed trial balance reports from Oracle's general ledger, income statement

7   reports, balance sheet reports, analyses that show the profitability of Oracle's various product

8   lines, and Rule 30(b)(6) depositions on any produced reports.[7] Moreover, Defendants have made

9   it clear that they consider general and aggregate financial information to be insufficient, and

10  instead sought information by Oracle legal entity. *See* Defendants' Motion to Compel

11  Production of Financial Information From Plaintiffs, Dkt No. 346, at 3.

12         Given the dearth of Defendants' production and the relevance of this data to

13  Oracle's infringer's profits claim, as well as the breadth of its own production, Oracle requested

14  a reciprocal production of SAP AG and SAP America's financial information so that Oracle

15  would be able to conduct the same detailed profits analysis Defendants have indicated is

16  necessary. Specifically, Oracle requested that Defendants produce "detailed income statement,

17  balance sheet, and trial balance information for any SAP entity that controls the selling of

18  software licenses and any SAP entity that bears any costs that Defendants plan to apply to

19  Oracle's showing of infringer's revenues . . . ." Donnelly Decl. ¶ 7, Ex. E. This production

20  should include any forms of product profitability analyses Defendants have available or can

---

[7] Pursuant to the parties' agreement and the Court's September 8, 2009 Order, on September 15, 2009 and September 25, 2009, Oracle produced hundreds of financial reports so that Defendants could evaluate Oracle's costs and profit margins. This included a production of over 225 quarterly trial balance, income statement, and balance sheet reports; reports from legacy PeopleSoft and JD Edwards financial systems of data from as far back as 2002; and, over a hundred documents related to certain financial analyses collected from numerous Oracle personnel and from the review of 11 custodians' documents. In contrast to the 35 or so rows of data in Defendants' single produced financial report, Oracle's income statement reports contained over 200 rows of data and were the most detailed income statements Oracle's reporting systems were able to produce. *See* Donnelly Decl. ¶ 18.

1   create. In meet and confer correspondence, Defendants agreed only to produce trial balance

2   reports. *See* Donnelly Decl. ¶ 11, Ex. H. Defendants have refused to produce income statements

3   and balance sheets. But since Defendants have conceded the relevance of these reports by

4   seeking (and receiving) them from Oracle and because what they have provided is inadequate to

5   allow proper assessment of their profits, they must now produce their own.

6         Finally, if Defendants intend to "introduce [other] evidence of deductible

7   expenses and the elements of profit attributable to factors other than the copyrighted work"

8   pursuant to Section 504(b) of the Copyright Act, Oracle is entitled to that information now, and

9   thus also requests an order compelling its immediate production.[8]

10  **V.   CONCLUSION**

11        Oracle seeks narrow discovery into crucial damages issues, which Defendants

12  have elsewhere admitted is relevant. Oracle's motion to compel should be granted and

13  production ordered immediately.

14  DATED: October 20, 2009

                                                 Bingham McCutchen LLP

                                                 By:   /s/Holly A. House
                                                        Holly A. House
                                                       Attorneys for Plaintiffs
                                     Oracle USA, Inc., Oracle International
                                 Corporation, Oracle EMEA Limited, and Siebel
                                                          Systems, Inc.

---

[8] Oracle is entitled to production of any financial information Defendants plan on using to rebut Oracle's claims. *See* Donnelly Decl. ¶ 5 and Ex. D (Oracle's Requests for Production No. 60: requesting all documents which Defendants will rely on or introduce at trial).