# EXHIBIT E

# BINGHAM

Bree Hann
Direct Phone: 415.393.2958
Direct Fax:     415.393.2286
bree.hann@bingham.com

September 11, 2009

Scott Cowan
Jones Day
717 Texas Avenue, Suite 3300
Houston, Texas  77002- 2712
Houston, Texas

Via Email and U.S. Mail

Dear Scott:

We write to discuss several deficiencies in Defendants' discovery responses. As with our RFA discussions, we have addressed the issues by general category. We are available this week and next to discuss these issues in detail. We think it make sense for the parties to address these under a similar timeframe as Oracle's RFA issues so that that we can likewise present any outstanding issues to Judge Laporte at the next discovery conference.

I.   **Technical Interrogatories from Fourth/Third Set of Interrogatories**

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

415.393.2000
415.393.2286
bingham.com

August 10, 2009
Page 4

### IV. Damages-Related Discovery

Defendants have repeatedly refused to respond to Interrogatories, RFPs, and Targeted Search requests seeking data important to proving Oracle's hypothetical license and infringers' profits measures of damages.

Despite Defendants' repeated refusals to provide this key information, which is described in detail below, their arguments in their recent Motion for Partial Summary Judgment on Plaintiffs' Hypothetical License Damages Claim ("MSJ") affirmatively inject Defendants' state of mind, expectations, and experiences related to possible retroactive license valuations into the damages analysis. The MSJ relies on what SAP purportedly would have been willing to do or not do in regards to a hypothetical license. *See, e.g.* MSJ at 13:5-9 ("Even assuming that Oracle and SAP would have been willing to negotiate a license, such negotiations would not have resulted in a license. Based on both Oracle and SAP executive testimony, it is clear that neither side would have agreed on a license because they would have had vastly different views as to the basis of the negotiation. This disconnect demonstrates that there never would have been the requisite "meeting of the minds."); MSJ 13:21-23 ("Mr. Plattner's testimony evidences that SAP would have viewed the negotiation as simply one for the right to service Oracle's customers; indeed, SAP would have expected to get a bargain because TN would have been "doing [Oracle's] job" for it."). While the valuation is objective, the parties' opinions are relevant and, per Defendants' own motion, they can no longer refuse to grant Plaintiffs discovery on issues that would inform the valuation of any retroactive license. Among that yet-to-be produced information are Defendants' licensing practices, benchmark licenses Defendant has entered into, and Defendants' profits, costs, and research and development expenses.

Further, Defendants explicitly acknowledge in their MSJ that Oracle is entitled to seek infringers' profits, stating: "In addition to actual damages, a copyright owner is also

August 10, 2009
Page 5

entitled to recover 'any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.'"...To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." MSJ at 7:25-8:2. *See also id.* at 8:6-8:8 ("Infringer's profits are analyzed from the infringer's point of view. If the infringer has earned a profit, it must disgorge the profit so that it does not benefit from its wrongdoing.").

This acknowledgement of infringers' profits raises two related issues for purposes of discovery. First, Oracle is entitled to discovery necessary to show SAP's revenues and costs related to the infringement, which Defendants have previously refused to provide. In addition, if Defendants intend to "introduce evidence of deductible expenses and the elements of profit attributable to factors other than the copyrighted work," they cannot refuse to produce this same information in response to Oracle's document requests and interrogatories as described below. *See also* RFP 60 from Oracle's First Set of Requests for Production (requesting all documents which Defendants will rely on or introduce at trial). Indeed, Oracle needs to be able to test any such claims -- not just accept Defendants' assertions.

Oracle will seek redress from the Court if Defendants do not take the following steps to reverse their prior refusals and provide Oracle with the data and information necessary to prove its case:

***Retroactive Licenses Discovery***: Several interrogatories from Oracle's Fourth/Third Set of Interrogatories seek information relevant to the fair market valuation of retroactive licenses for the material infringed. Interrogatory 78 asks Defendants to "Identify with particularity all licenses, contracts, or agreements between SAP AG, SAP America or any affiliated entity or subsidiary and any independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications." Interrogatories 114-118 seek data related to inter-entity licensing, consideration/royalties, and related issues. Defendants objected to several of these interrogatories on the basis that the value of their intellectual property is not at issue in this litigation. Not so. The answers to these interrogatories could provide potential benchmarks and could be used to establish Defendants' reasonable expectations regarding licensing fees. Defendants must promptly provide Oracle with the information requested in all of these interrogatories.

For the same reasons, Defendants must also produce documents responsive to RFP 141 from Oracle's Third Set of Requests for Production, seeking production of "all Documents relating to each agreement identified in....Defendants' Responses to Interrogatories Nos. 114 through 117 including, but not limited to, 'all Documents relating to each agreement's provisions relating to consideration, royalties, taxes, costs, licenses, transfer fees, and ownership of Intellectual Property and all Communications relating to such Documents.'"

Oracle also requests production of SAP's five highest dollar value licenses entered into or in effect in the last five years as additional benchmarks relevant to retroactive license

August 10, 2009
Page 6

valuation. Oracle believes this information is encompassed by prior discovery requests, however will it will propound a further request for these documents if Defendants refuse production.

Further, Defendants must produce R&D data responsive sub-part (j) of Oracle's First Targeted Search Request, which requests documents regarding "SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications)." We also want that R&D information for SAP's applications because, as it turns out, Defendants did not just infringe Oracle's support materials but its underlying applications. This information is directly relevant to SAP's claim that it would have expected a "bargain" on a hypothetical license as it would inform what SAP's reasonable expectation would have been given the amount it spends on it's own research and development. Moreover, it is highly probative of the costs SAP avoided by continuing TN's infringement rather than developing itself the material it infringed which is directly relevant to the fair market value of any retroactive license. While SAP's second supplemental responses to Oracle's First Targeted Search Requests intimate that SAP may produce some documents responsive to sub-part (j), Oracle requests a comprehensive production of the information described above, along with an explanation of where this appears in Defendants' production.

Defendants also read Interrogatory 69 incorrectly and offer too narrow of a response - the Interrogatory seeks projections about customers generally, and not just at the time the deal is signed. Thus, Defendants must also supplement this response to provide greater detail. RFP 26 from Oracle's Second Set of Requests for Production also seeks information related to per-customer value. Defendants objected to RFP 26 and have refused to produce responsive documents. Documents responsive to RFP 26 must be promptly produced as they also bear on what would have been reasonable for SAP to expect which informs the reasonable valuation of any retroactive license.

Finally, Defendants still have not produced the application sales close rates and support renewal rates promised in response to Oracle's June 30th motion to compel. *See* Jane Froyd's July 13th, 2009 email to Amy Donnelly and Amy Donnelly's September 4th email to Defendants. Related information is also sought through Interrogatory 77 from Oracle's Fourth/Third Set of Interrogatories. Defendants must promptly provide this data.

*Infringers' Profits:* Oracle's Fourth/Third Set of Interrogatories also includes several requests important to proving Infringers' Profits. Interrogatories 79 and 80 seek specific information regarding SAP's profit calculations, which is clearly relevant to the Infringers' Profits measure of damages. Similarly, Oracle requests that Defendants finally provide a comprehensive production responsive to sub-part (k) of Oracle's First Targeted Search Request (asking for "SAP's profit margins for service and applications sales and Documents explaining how they are calculated"). In order to evaluate its infringer's profits claims, Oracle requests this information with the same level of detail as Oracle is providing to Defendants for Defendants to evaluate Oracle's lost profits claim. Thus, at a minimum, Oracle requests detailed income statement, balance sheet, and trial

August 10, 2009
Page 7

balance information for any SAP entity that controls the selling of software licenses and any SAP entity that bears any costs that Defendants plan to apply to Oracle's showing of infringer's revenues in order to arrive at infringer's profits.

In addition, Interrogatories 70 through 73 seek financial information necessary to understand SAP's infringer's profits. Specifically, Interrogatory 70 asks Defendants to "[d]escribe, as much detail as possible, the differences between the two [referenced] reports." Defendants' vague explanations are not sufficient. Oracle expects Defendants to provide a sufficient explanation so that Oracle can reconcile each discrepancy between the two reports. Oracle considers any further response that does not explain each numerical difference as deficient. Oracle further expects the same type of detailed explanation for Interrogatories 71, 72, and 73. Oracle is entitled to this information to evaluate its infringer's profits claim, and Oracle does not understand how Defendants can provide that information outside of a written Interrogatory response. Please supplement your responses accordingly.

In light of the upcoming expert deadlines, Defendants must immediately produce documents and supplemental interrogatory responses responsive to the requests detailed above. Please advise us immediately if Defendants are not willing to provide this data, so that we may incorporate the issue into the upcoming Discovery Conference Statement.

Sincerely yours,

Bree Hann

cc (email only):    Jason McDonell
                    Elaine Wallace
                    Josh Fuchs
                    Jane Froyd
                    Geoff Howard
                    Holly House
                    Zac Alinder
                    Jennifer Gloss