1   BINGHAM MCCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   donn.pickett@bingham.com
    GEOFFREY M. HOWARD (SBN 157468)
3   geoff.howard@bingham.com
    HOLLY A. HOUSE (SBN 136045)
4   holly.house@bingham.com
    ZACHARY J. ALINDER (SBN 209009)
5   zachary.alinder@bingham.com
    BREE HANN (SBN 215695)
6   bree.hann@bingham.com
    Three Embarcadero Center
7   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
8   Facsimile:  415.393.2286

9   DORIAN DALEY (SBN 129049)
    dorian.daley@oracle.com
10  JENNIFER GLOSS (SBN 154227)
    jennifer.gloss@oracle.com
11  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
12  Telephone:  650.506.4846
    Facsimile:  650.506.7114
13
    Attorneys for Plaintiffs
14  Oracle USA, Inc., Oracle International Corporation,
    Oracle EMEA Limited, and Siebel Systems, Inc.
15

16              UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18                   OAKLAND DIVISION

19

20                                          No. 07-CV-01658 PJH (EDL)
    ORACLE USA, INC., et al.,
21                                          PLAINTIFFS' RESPONSE TO
              Plaintiffs,                   DEFENDANTS' OBJECTIONS TO
22                                          EVIDENCE FILED IN SUPPORT OF
        v.                                  PLAINTIFFS' OPPOSITION TO
23                                          MOTION FOR PARTIAL
    SAP AG, et al.,                         SUMMARY JUDGMENT
24                                          REGARDING HYPOTHETICAL
              Defendants.                   LICENSE DAMAGES CLAIM
25
                                            Date: October 28, 2008
26                                          Time: 9:00 a.m.
                                            Courtroom: 3, 17th Floor
27                                          Judge: Hon. Phyllis J. Hamilton

28
                                            Case No. 07-CV-016587 PJH (EDL)

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO  EVIDENCE FILED IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING HYPOTHETICAL LICENSE DAMAGES CLAIM

Dockets.Justia.com

1    **I.      INTRODUCTION**

2            Plaintiffs Oracle USA, Inc. et al. ("Oracle") request that the Court deny the October 7,

3    2009 Objections to Oracle's Evidence in support of Plaintiffs' Opposition to Defendants' Motion

4    for Partial Summary Judgment regarding Plaintiffs' Hypothetical [Fair Market Value] License

5    Damages ("Defs' Objections") of Defendants SAP AG, SAP America, and TomorrowNow, Inc.

6    [Docket No. 509].  For the reasons set forth below, Defendants' Objections are meritless.

7    **II.     ARGUMENT**

8            As a threshold matter, the burden on Oracle to justify the Court's consideration of the

9    evidence about which Defendants complain is not onerous.  A party opposing summary

10   judgment need not "produce evidence in a form that would be admissible at trial in order to

11   avoid summary judgment."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Rather,

12   Oracle need only to show that a genuine dispute exists as to a material fact.  *See* Fed. R. Civ.

13   P. 56.  A fact is "material" if it might affect the outcome of the suit under the governing

14   substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual

15   dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for

16   the non-moving party."  *Id.*; *see also* Plaintiffs' September 23, 2009 Opposition to Defendants'

17   Motion for Partial Summary Judgment regarding Plaintiffs' Hypothetical [Fair Market Value]

18   License Damages [Docket No. 483] ("Plaintiffs' Opp.") at Section G.

19           **A.      The Meyer Declaration Is Entirely Relevant and Admissible**

20                          **1.      The Meyer Declaration Is Relevant to the Hypothetical License
21                                    Damages Claim**

22           Defendants assert that the only issue raised by their pending Motion for Partial Summary

23   Judgment ("MSJ") is whether a hypothetical license is an available measure of Oracle's actual

24   damages for Defendants' copyright infringement "in light of Plaintiffs' inability to prove that,

25   but for the infringement, the parties would have agreed to a license."  *See* Defs' Objections

26   p. 1:17-18.  Defendants' argument rests upon an incorrect reading of the law as reflected in

27   Defendants' moving papers.  As Oracle's Opposition demonstrates, the availability of a

28   hypothetical license is not predicated on proving that a meeting of the minds would have

1    definitely occurred.  *See* Plaintiffs' Opp. pp. 1-9.[1]  Instead, the question of the availability of any

2    hypothetical license fee Oracle proffers through its damages expert depends on the

3    reasonableness of the claimed fair market value of the infringed works (*i.e.*, that it is not

4    "speculative"), and the appropriateness of the methodology used to establish that value.  *See id.*

5    pp. 1:9-14; 4-9; 11:10-16; 14-16.  This is the subject matter of the Meyer Declaration and the

6    extensive evidence he provides in support on the relevant factors considered in copyright

7    valuation and which bears on what the fair market valuation should be.  *See id.* at Section II.F(1)

8    and (2) (citing IP valuation texts and numerous cases using the very factors Mr. Meyer uses to

9    establish the fair market value of infringed copyrighted material).  Thus, the Meyer Declaration

10   is highly relevant.  *See* Fed. R. Evid. 401 ("relevant evidence" means "evidence having any

11   tendency to make the existence of any fact that is of consequence to the determination of the

12   action more probable or less probable than it would be without the evidence").

13              **2.        The Meyer Declaration Should Not Be Rejected On The Grounds
                            That He Has Not Finished His Expert Analysis**

14

15              Defendants' argument that the Meyer Declaration should not be considered because it is

16   "an improper and incomplete expert opinion" (Defs' Objections p. 1:21-25) is remarkable given

17   that Defendants insisted that their MSJ be heard before the fact discovery cut-off and the expert

18   opinions disclosure deadline.  It is well-established that a moving party may not railroad the non-

19   moving party's expert discovery by filing an early summary judgment motion.  *See Celotex*

20   *Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Defendants cannot use the benefit of an early

21   summary judgment motion to assert, long before any expert report is due under the current case

22   schedule, that such expert report should be ignored because it is "not based on sufficient facts or

23   data."  *See* Defs' Objections p. 1:21-25.  If the Meyer Declaration was somehow inadequate to

24   support Oracle's opposition to Defendants' early summary judgment motion, the state of play of

25   _____

26   [1] Indeed, if an infringer need only claim it would not under any circumstances agree to pay a
27   reasonable license fee for the intellectual property it chose to use improperly, the infringer could
     unilaterally prevent the copyright-owner from recovering appropriate damages.

28

1    the fact discovery and expert analysis provides grounds to continue the hearing to allow

2    additional time for the expert to complete the report, if necessary.  *See* Fed. R. Civ. P. 56(f).

3    However, the Meyer Declaration is not inadequate just because his expert analysis is not final; as

4    set forth above, the highly relevant information it contains should and can give the Court comfort

5    that Oracle has ample basis using well recognized IP valuation methodologies and accepted

6    factors under case law to arrive at the fair market value of the years of massive infringement by

7    Defendants.  *See* Plaintiffs' Opp. at Section II.F(1) and (2) (citing IP valuation texts and

8    numerous cases using the very factors Mr. Meyer uses to establish the fair market value of

9    infringed copyrighted material).  Notably, Defendants do not raise any argument concerning Mr.

10   Meyer's analysis or conclusions to date and do not and cannot provide any legal reason for the

11   Court to ignore any portion of his Declaration and its accompanying evidence.

12              **3.      Mr. Meyer's Cited Evidence on Future Up-Sell and Cross-Sell**
                          **Opportunities Is Relevant to the Fair Market Value for the**
13                        **Infringed Material**

14           Even though Defendants explicitly did not seek evidence preclusion as to Oracle's

15   hypothetical fair market valuation measure of copyright damages in their recent Rule 37 Motion

16   to Magistrate Laporte, Defendants try to bootstrap Magistrate Laporte's September 17, 2009

17   Order precluding certain cross-sell and up-sell evidence related to Oracle's alternate lost profits

18   measure of damages for specific customers [Docket No. 482] into a means to preclude Oracle's

19   damages expert's consideration of cross-sell and up-sell evidence relevant to Oracle's fair market

20   value license measure of actual copyright damages.  *See* Defs' Objections pp. 1:26-28; 2:1-7.

21   The evidence at issue is testimony by Oracle's executives on the fact that customers acquired in

22   an acquisition are valued on the forecasted total purchases they are likely to make, including

23   future purchases of other products and services.  *See e.g.*, Meyer Decl. ¶¶ 31-36 and Exs. 18, 22,

24   34-37 thereto.  Several of the responses at issue were made to questions by Defendants' counsel

25   on the issue of the value of Oracle's hypothetical licenses with SAP.  *See* Plaintiffs' Opp. pp.

26   20:5-22-23:1-5.  None of the testimony referenced the specific lost profits associated with the

27   identified list of TomorrowNow customers at issue in Defendants' Rule 37 Motion to Magistrate

28   Laporte and precluded by Magistrate Laporte's Order.  *Id.*; *see also* Defendants' Reply to

1    Plaintiffs' Opposition to Defendants' MSJ pp. 7:4-28; 8:1-25.

2            Mr. Meyer explains that this evidence is relevant to the fair market valuation of the

3    hypothesized licenses because it would be a key consideration of both parties.  He made clear in

4    his declaration that he was not relying on the material for his lost profits analysis — which was

5    precluded by Magistrate Laporte — and cited Defendants' part of their Rule 37 Motion where

6    they explicitly limited the relief sought to Oracle's lost profits measure of damages:

> I am relying on this form of Oracle executive management
> testimony not to quantify the  lost profits associated with lost
> cross-sell and up-sell opportunities to the specific list of lost
> TomorrowNow customers (which I understand Magistrate Laporte
> has disallowed per her September 17, 2009 lost profits damages
> preclusion order), but as input of the considerations that would
> inform and be relevant to Oracle's reasonable fair market value
> negotiations of licenses structured to allow Defendants to use the
> allegedly infringed materials.  I understand that Defendants
> specifically did not seek preclusion of this measure of Oracle's
> copyright damages in that motion.  *See* Defendants' July 14, 2009
> Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) and 16(f) at
> 13 n.9 ("This motion is limited to what Oracle characterizes as its
> lost profits claims, and does not extend to its 'infringers'
> profits/unjust enrichment claims, its hypothetical license theory, or
> alleged damage to computer systems or data.  Defendants do not
> concede that any of these other damages categories or theories are
> proper or timely, but will address those by separate motion if
> necessary.  For example, Oracle's hypothetical license theory will
> be the subject of Defendants' Rule 56 motion to be filed on August
> 26th.").

18   Meyer Declaration at p. 22:20-27 (n.17).

19           Because the cited evidence is relevant to establishing the fair market value of Oracle's

20   hypothetical license fees and because Defendants did not move to preclude it for that purpose,

21   Defendants' objection to the Court's consideration of such evidence should be overruled.

22           **B.      The Ellison Declaration is Entirely Relevant and Admissible**

23           Defendants' characterization of Mr. Ellison's Declaration as constituting a description as

24   to "how Mr. Ellison would calculate a hypothetical license for copyright damages purposes", and

25   a "sham", (Defs' Objections pp. 2-3) does not make it so.

26           The Ellison Declaration is admissible and relevant evidence from an Oracle Executive

27   supporting facts of consequence, including how Mr. Ellison had understood Defendants' counsel

28   had broadly defined the relevant hypothetical license, how the Protective Order had barred him

1    from being privy to the scope of Defendants' infringement which defines the scope of the

2    hypothetical licenses, what he would have considered at the time of any hypothesized license

3    negotiation with SAP and the parties' ability to agree on prior significant royalty arrangements

4    despite their fierce competitiveness.  *See* Declaration of Larry Ellison.  Defendants would like

5    the Court to disregard Mr. Ellison's testimony, but they are not entitled to so restrict the

6    evidence.

7              1.       **Defendants' Arguments that Mr. Ellison's Declaration Is A Sham
                        Fail**[2]

8

9              Defendants assert that paragraphs 4 and 6 of Mr. Ellison's Declaration in support of

     Oracle's MSJ Opposition flatly contradict his deposition testimony and thus must be stricken.
10
     *See* Defs' Objections p. 2:25-27.  But Defendants do not and cannot point to any such
11
     contradiction.  Indeed Oracle showed in its Opposition exactly how Mr. Ellison's testimony
12
     undermined Defendants' claim that the parties would never agree.  *See* Plaintiffs' Opp. to MSJ at
13
     Section F.3.  Oracle further showed how Defendants' counsel's inartful questioning muddied the
14
     resulting responses and that Defendants never asked Oracle executives about the particular
15
     licenses that Oracle's damages expert will value here.  *See id.* at pp. 20-23:1-5.
16
               A non-moving party is not precluded from elaborating upon, explaining, or clarifying
17
     prior testimony elicited by opposing counsel at deposition.  *Messick v. Horizon Industries Inc.*,
18
     62 F.3d 1227, 1231 (9th Cir. 1995) ("Mohawk contends that the affidavit submitted by Messick
19
     in opposition to the motion for summary judgment should not be considered because it
20
     'contradicted his deposition testimony.' . . . Mohawk's argument amounts to no more than a
21
     series of quibbles about peripheral details in the deposition and the affidavit. While this court has
22
     held that a party may not 'create his own issue of fact by an affidavit contradicting his prior
23

24   _____

25   [2]  Defendants' "sham" declaration arguments are improperly presented in their Reply to
     Plaintiffs' Opposition to Defendants' MSJ and their arguments include attacks on Oracle witness
26   credibility.  *See* Defs' Reply to Plaintiffs' Opposition to MSJ [Docket No. 504] p. 7 ¶ 1.  Courts
     may not weigh evidence or draw credibility determinations when finding whether there is a
27   genuine issue for trial in ruling on a motion for summary judgment.  *See Liberty Lobby, Inc.*, 477
     U.S. at 249-255.

28

1   deposition testimony', the non-moving party is not precluded from elaborating upon, explaining

2   or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies

3   that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis

4   for excluding an opposition affidavit.") (internal citations omitted).  The Ninth Circuit has held

5   in a number of cases that a declaration is not a sham when it merely explains or clarifies earlier

6   testimony.  *See, e.g.*, *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1085 n.7 (9th Cir.

7   2002).

8          In essence, Defendants' sham declaration argument is a complaint that Mr. Ellison, in his

9   declaration, clarified and explained his testimony in a way that is more favorable to Oracle than

10  the spin Defendants' placed on his testimony in their moving papers.  Such explanations are

11  permitted and "it is immaterial at the summary judgment stage that the opposing evidence is self-

12  serving."  CALIFORNIA PRACTICE GUIDE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, W.

13  Schwarzer, A. Tashima & J. Wagstaffe at ¶ 14:101b, ¶ 14:145.4 (The Rutter Group 2009).

14         For these reasons, no portion of Mr. Ellison's Declaration should be stricken as a "sham."

15         **2.      Defendants' Objections to The Ellison Declaration's References to**
16                 **Oracle's Database Reseller Agreement Are Meritless**

17         Defendants do not deny the existence of the long-standing Oracle/SAP database reseller

18  agreement nor the massive amounts of royalties SAP has paid Oracle under it.  Nor do they deny

19  that this evidence undermines the one purported "undisputed" fact they claim is relevant in their

20  pending MSJ — their claim that the parties would never agree on the terms of a significant

21  license.  Rather, Defendants assert that Mr. Ellison's description in his Declaration of Oracle's

22  database reseller agreement "lacks foundation" — baldly claiming that Mr. Ellison does not have

23  personal knowledge of this matter.  *See* Defs' Objections p. 3:1-16.  Defendants provide no

24  factual support for their Objection.  Moreover, they ignore that Mr. Ellison attested he had

25  "personal knowledge of the facts" stated in his declaration.  *See* Ellison Decl. ¶ 1.  It is not

26  surprising that Mr. Ellison would know about the existence of the long-standing agreement

27  between Oracle and its biggest rival and would know that it had secured for Oracle massive

28

1    royalties, and the Court has no basis for rejecting his proffer of this evidence.  *Cf. Barthelemy v.*

2    *Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (finding positions and knowledge of

3    company chairman and of investment banker supported their affidavits).

4           Defendants' "best evidence rule" objection (presumably meaning that the parties should

5    either have submitted their voluminous reseller agreement or submitted accounting documents

6    confirming the royalties SAP has paid Oracle under it) is baseless because it disregards the

7    standard for reviewing evidence submitted in opposition to a motion for summary judgment.  A

8    party opposing summary judgment need not "produce evidence in a form that would be

9    admissible at trial in order to avoid summary judgment."  *Goodale*, 342 F.3d at 1036 ("At the

10   summary judgment stage, we do not focus on the admissibility of the evidence's form.  We

11   instead focus on the admissibility of its contents.") (internal citations omitted).  The contents of

12   the database reseller agreement are admissible, and are facts attested as being within Mr.

13   Ellison's personal knowledge.  Indeed, even at trial, depending on the circumstances, the

14   database reseller agreement facts could be admitted into evidence without resort to such

15   additional documentation.  Mr. Ellison could testify to all the relevant portions of the database

16   reseller agreement from his personal knowledge.  *See e.g.*, *Goodale*, 342 F.3d at 1036 (noting

17   same in similar factual circumstance); Fed. R. Evid. 602.  If he forgets the exact details, he could

18   use the database reseller agreement to refresh his recollection.  *See e.g.*, *Goodale*, 342 F.3d at

19   1036; Fed. R. Evid. 612.

20          Finally, Defendants' hearsay objection is also baseless because it too disregards the

21   standard for allowing evidence submitted in opposition to a motion for summary judgment.

22   Aside from the fact that Mr. Ellison's Declaration is admissible for the non-hearsay purpose of

23   showing his understanding of the database reseller agreement, even if a declaration is hearsay, a

24   declaration may be considered on a motion for summary judgment if it: (i) is based on personal

25   knowledge, (ii) sets forth *facts* that would be admissible in evidence, and (iii) shows that the

26   declarant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(e)(1).  Whether a

27   declaration contains hearsay or not is of no import under the requirements of Fed. R. Civ.

28   P. 56(e)(1).  For the reasons set forth above, the portion of Mr. Ellison's Declaration on the

1    parties' database reseller agreement satisfies the requirements of Fed. R. Civ. P. 56(e)(1).

2          Though Defendants understandably would prefer the Court not consider Mr. Ellison's

3    testimony on the parties' database reseller agreement and the payments SAP has made to Oracle

4    under it — as this evidence torpedoes their claimed "undisputed fact" that these fierce

5    competitors would never agree on a significant payment from SAP to Oracle for valuable

6    rights — there is no evidentiary basis for precluding its consideration.

7          **C.     The Catz Declaration Also Is Relevant and Not A "Sham"**

8          Defendants' identical characterizations of Ms. Catz's Declaration as constituting an

9    irrelevant description as to "how Ms. Catz would calculate a hypothetical license for copyright

10   damages purposes", and a "sham", also do not make it so.  *See* Defs' Objections pp. 3:23-28; 4.

11         As with Mr. Ellison's Declaration, Ms. Catz's Declaration is admissible and relevant

12   evidence from an Oracle Executive supporting facts of consequence including how Ms. Catz had

13   understood Defendants' counsel had broadly defined the relevant hypothetical license, how the

14   Protective Order had barred her from being privy to the scope of Defendants' infringement

15   which defines the scope of the hypothetical licenses, and what she would have considered at the

16   time of any hypothesized license negotiation with SAP.  *See* page 4 ¶ B above; Catz Decl.; *see*

17   *also* Plaintiffs' Opp. pp. 21-23:1-5; Fed. R. Evid. 401.

18         Second, like Mr. Ellison's Declaration, no portion of Ms. Catz's Declaration is a "sham."

19   Defendants assert that paragraph 4 of Ms. Catz's Declaration in support of Oracle's MSJ

20   Opposition flatly contradicts her deposition testimony and thus must be stricken.  *See* Defs'

21   Objections p. 4:6-13.  But Defendants do not and cannot point to any such contradiction.  Indeed,

22   Oracle showed in its Opposition exactly how Ms. Catz's testimony undermined Defendants'

23   claim that the parties would never agree.  *See* Plaintiffs' Opp. to MSJ at Section F.3.  As with

24   Mr. Ellison's testimony, Oracle further showed how Defendants' counsel's inartful questioning

25   of Ms. Catz muddied the resulting responses and that Defendants never asked her about the

26   particular licenses that Oracle's damages expert will value here.  *See id.*

27         As explained above, a non-moving party is not precluded from elaborating upon,

28   explaining, or clarifying prior testimony elicited by opposing counsel at deposition.  *Horizon*

1     *Industries Inc.*, 62 F.3d at 1231.  Again, the Ninth Circuit has held, in a number of cases, that a

2     declaration is not a sham when it merely explains or clarifies earlier testimony.  *See, e.g.*,

3     *General Truck Drivers*, 282 F.3d at 1085 n.7.

4         In addition, as with Mr. Ellison, Defendants' sham declaration argument against Ms Catz

5     is merely a recasting of a self-serving declaration argument and such declarations are allowed in

6     opposition to summary judgment.  Cal. Prac. Guide, Fed. Civ. Proc. Before Trial,

7     Schwarzer, Tashima & Wagstaffe at ¶ 14:101b, ¶ 14:145.4.

8         For these reasons, as with Mr. Ellison's Declaration, no portion of Ms. Catz's Declaration

9     should be stricken as "sham."

10    **III.     CONCLUSION**

11         For the reasons set forth above, Defendants' Objections to Evidence should be denied in

12    full and the evidence objected to should be considered in support of Plaintiffs' Opposition to

13    Defendants' Motion for Summary Judgment.

14    DATED:  October 21, 2009

15

                                 Bingham McCutchen LLP

16

17

18                     By:_____ /s/ Holly A. House_____

19                            Holly A. House
                           Attorneys for Plaintiffs

20                   Oracle USA, Inc., Oracle International
             Corporation, Oracle EMEA Limited, and Siebel

21                            Systems, Inc.

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE FILED IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING HYPOTHETICAL LICENSE DAMAGES CLAIM