Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    (650) 739-3939
Facsimile:     (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:    (832) 239-3939
Facsimile:     (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*, | Case No. 4:07-CV-1658 PJH (EDL) |
|       Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO ORDER FOR SANCTIONS** |
|     v. | Date: N/A |
| SAP AG, *et al.*, | Time: N/A |
|       Defendants. | Courtroom: N/A <br> Judge: Hon. Phyllis J. Hamilton |

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STANDARD OF REVIEW ................................................................. 2

III.   ARGUMENT ....................................................................................... 2

     A.     The Order is Non-Dispositive. ................................................. 2

     B.     The Order is Supported by the Record. ................................... 4

          1.     The Complaints. ............................................................. 5

          2.     The Disclosures. ............................................................. 6

          3.     The Interrogatory Responses. ........................................ 7

          4.     The June 24, 2008 Discovery Conference Statement. ................................. 8

          5.     The Testimony of Oracle Witnesses. ........................... 9

          6.     The List of SAP Customers. ........................................ 11

          7.     Oracle's Production of Customer Documents. ............. 11

     C.     The Order is Supported by the Law. ...................................... 12

          1.     Magistrate Judge Laporte Correctly Applied the Relevant Legal Standards. .................................... 13

          2.     Magistrate Judge Laporte Correctly Distinguished Oracle's Cases. .......... 15

          3.     *Wendt* and *Network Appliances* are Inapposite. ......................................... 17

     D.     Oracle's Prejudice Argument is not Supported by the Record. ............................ 18

     E.     Oracle Should not be Permitted to Offer the Precluded Evidence to Bolster its Other Claims. ........................................... 21

IV.   CONCLUSION ................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

### Cases

*Banks v. Modesto City Schs. Dist.*
No. CV-F-04-6284, 2006 U.S. Dist. LEXIS 94274 (E.D. Cal. Dec. 18, 2006)............................. 3

*Celano v. Marriott Int'l, Inc.*
No. C 05-4004 PJH, 2007 U.S. Dist. LEXIS 54707 (N.D. Cal. July 13, 2007) ........................... 2

*Favoured Devs. Ltd v. Lomas*
No. C06-02752 MJJ, 2007 U.S. Dist. LEXIS 78599 (N. D. Cal. Oct. 23, 2007) ........................ 5

*Keithley v. Home Store.com, Inc.*
No. C-03-04447, 2008 U.S. Dist. LEXIS 70246 (N.D. Cal. Sept. 16, 2008) .............................. 3

*Maisonville v. F2 Am., Inc.*
902 F.2d 746 (9th Cir. 1990)....................................................................................................... 2

*Network Appliance, Inc. v. Bluearc Corp.*
No. C 03-5665, 2005 U.S. Dist. LEXIS 16726 (N.D. Cal. June 27 2005) ...................... 3, 15, 18

*North Am. Watch Corp. v. Princess Ermine Jewels*
786 F.2d 1447 (9th Cir. 1986).................................................................................................. 2, 3

*Northwest Pipeline Corp. v. Ross*
No. C05-1605RSL, 2008 U.S. Dist. LEXIS 32984 (W.D. Wash. Apr. 11, 2008).................... 12

*Ocelot Oil Corp. v. Sparrow Indus.*
847 F.2d 1458 (10th Cir. 1988)................................................................................................... 2

*Payne v. Exxon Corp.*
121 F.3d 503 (9th Cir. 1997)..................................................................................................... 16

*Phinney v. Wentworth Douglas Hosp.*
199 F.3d 1 (1st Cir. 1999) ........................................................................................................... 2

*Pierce v. CVS Pharmacy, Inc.*
No. CV 06-823, 2007 U.S. Dist. LEXIS 69006 (D. Ariz. Sept. 17, 2007).............................. 15

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*
382 F.3d 546 (5th Cir. 2004)..................................................................................................... 15

*Reiner v. Warren Resort Hotels, Inc.*
No. CV 06-173, 2008 U.S. Dist. LEXIS 102047 (D. Mont. Oct. 1, 2008)............................... 15

*Reynoso v. Constr. Protective Servs., Inc.*
No. 06-56381, 2008 U.S. App. LEXIS 19681 (9th Cir. Sept. 16, 2008) ..................................... 4

*Semtech Corp. v. Royal Ins. Co.*
No. CV 03-2460, 2005 WL 6192906 (C.D. Cal. Sept. 8 2005).................................................. 16

*SPX Corp. v. Bartec USA, LLC*
574 F. Supp. 2d 748 (E.D. Mich. 2008)............................................................................... 16, 17

*The Christensen Firm v. Chameleon Data Corp.*
No. C06-337Z, 2006 U.S. Dist. LEXIS 79710 (W.D. Wash. Nov. 1, 2006)............................ 15

*Triton Corp. v. Hardrives, Inc.*
85 F.3d 343, 347 (8th Cir. 1996)............................................................................................... 21

*Tracinda Corp. v. DaimlerChrysler AG*
    362 F. Supp. 2d 487 (D. Del. 2005) ........................................................................ 16

*United States v. 14.3 Acres of Land*
    No. 07cv886-W(NLS), 2009 U.S. Dist. LEXIS 7148 (S.D. Cal. Jan. 30, 2009) ...................... 13

*United States v. Rapanos*
    376 F.3d 629 (6th Cir. 2004) ................................................................................ 15

*Wanderer v. Johnston*
    910 F.2d 652 (9th Cir. 1990) ................................................................................ 12

*Wendt v. Host Int'l, Inc.*
    125 F.3d 806 (9th Cir. 1997) .............................................................. 12, 13, 14, 17

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
    259 F.3d 1101 (9th Cir. 2001) ............................................................ 12, 13, 20

**Rules**

Federal Rules of Civil Procedure
    1 ...................................................................................................................... 14
    16 .......................................................................................................... 13, 14
    16(f) ................................................................................................................ 13
    26 ...................................................................................................................... 12
    37 .................................................................................................. 4, 12, 13, 14
    37(c) ................................................................................................................ 12
    37(c)(1) ...................................................................................... 1, 4, 12, 14
    72(a) .................................................................................................................. 2
    72(b)(3) ............................................................................................................. 2

Federal Rules of Evidence
    402 .................................................................................................................... 22
    403 .................................................................................................................... 22

Local Rules
    37-1 .................................................................................................................... 4
    72-3(b) ............................................................................................................... 5

**Statutes**

17 U.S.C. § 504(b) ................................................................................................ 11

28 U.S.C. § 636(b)(1)(A) ...................................................................................... 2

**Other Authorities**

14 J. Moore, *Moore's Federal Practice – Civil* § 72.02(7)(b) (2009) ............................ 2

*Black's Law Dictionary* (6th ed. 1991) .................................................................... 3

Schwarzer, Tashima, & Wagstaffe, *Federal Civil Procedure Before Trial*
    (The Rutter Group 2009) ...................................................................................... 4

# I.    **INTRODUCTION**

Oracle's assertion that it notified Defendants "early and often" of its intent to seek lost profits damages for alleged lost license sales is not supported by the facts.  Objs. at 1.  Magistrate Judge Laporte, following a thorough review of the record (including the complaints, disclosures, and discovery responses on which Oracle relies in its objections), and based on her "hands-on management of" and "deep familiarity with" discovery in this case (Order at 25-26, 2), correctly found that:

> [F]rom the inception of this case, through two years of hard fought litigation and repeated discovery conferences and hearings, Plaintiffs have limited their lost profits damages to lost support revenue for Oracle software application products from Plaintiffs' 358 former customers that had received support from Plaintiffs, but switched to receiving support for Oracle products from TomorrowNow.  It was not until Plaintiffs' recent supplemental disclosures, in May 2009 … that Plaintiffs first expressly stated that they were seeking other, additional lost profits damages based on lost up-sell and cross-sell licensing opportunities for new and different Oracle products ….

Order at 3.  None of the facts on which Oracle relies undermines this finding, including the new material that Oracle has improperly submitted to this Court.

Oracle fails to discuss, much less rebut, Magistrate Judge Laporte's finding that for two years Oracle affirmatively *disclaimed* the relevance of license revenue and refused to provide discovery on it.  Order at 9-12.  Aside from a single unpersuasive footnote (Objs. at 10, n.6), Oracle omits any discussion of the following key aspect of the Order:

> Plaintiffs chose to bring this case and focus damages discovery from its inception on lost support revenue from customers that switched from Oracle to TomorrowNow for their software support needs … Plaintiffs' attempts to demonstrate that Defendants were nonetheless on notice that Plaintiffs also sought other major categories of lost profits from different customers and different revenue sources are not persuasive.  To the contrary, Defendants reasonably relied in preparing their defense on Plaintiffs' initial disclosures (which were not updated for over two years), Plaintiffs' discovery responses, and Plaintiffs' representations to the Court and counsel.  Fundamental fairness as well as effective case management require that damages discovery not be dramatically expanded at this late date; otherwise, this already complex case may never be ready for trial.

Order at 5.  The burden is on Oracle to demonstrate that it meets one of the two exceptions to the mandatory sanctions of Rule 37(c)(1).  Order at 6.  Oracle's objections neither acknowledge nor satisfy that burden.  Moreover, Oracle ignores the serious potential prejudice Defendants face if

1   the evidence is not precluded.  Order at 5.

2          Magistrate Judge Laporte's Order is thorough, well reasoned, and fully supported by the

3   facts and the law.  This Court should deny Oracle's objections and adopt the Order in its entirety.

4   In addition, the Court should deny Oracle's request that it be permitted to offer the precluded

5   evidence to bolster its other claims and damage theories.  As discussed below, the prejudice to

6   Defendants is the same regardless of the purpose for which the precluded evidence is offered.

7   ## II.   STANDARD OF REVIEW

8          A ruling by a magistrate judge on a non-dispositive motion may be set aside or modified

9   by the district court only if "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); *see*

10  *also Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2007 U.S. Dist. LEXIS 54707, at *9-10

11  (N.D. Cal. July 13, 2007) (Hamilton, P.).  The "clearly erroneous" standard applies to findings of

12  fact, while conclusions of law are reviewed *de novo*.  *Id.* at *10.  A ruling on a dispositive motion

13  is reviewed *de novo*, including findings of fact.  Fed. R. Civ. P. 72(b)(3).

14  ## III.   ARGUMENT

15  ## A.   THE ORDER IS NON-DISPOSITIVE.

16         Magistrate Judge Laporte properly held that Defendants' motion, and her ruling on that

17  motion, were non-dispositive.  Order at 7-9.  The relevant statute lists the motions that are

18  considered dispositive and it does not include sanctions motions.  28 U.S.C. § 636(b)(1)(A).

19  Moreover, the Ninth Circuit has held that sanctions motions generally are not analogous and are

20  considered non-dispositive.  *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990);

21  *see also* 14 J. Moore, *Moore's Federal Practice – Civil* § 72.02(7)(b) (2009).

22         Other courts agree.  *See, e.g., Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st

23  Cir. 1999) ("Motions for sanctions premised on alleged discovery violations are not specifically

24  excepted under 28 U.S.C. § 636(b)(1)(A) and, in general, they are not of the same genre as the

25  enumerated motions.  We hold, therefore, that such motions ordinarily should be classified as

26  nondispositive.").  Only in "rare" instances in which the sanction "fully disposes" of a claim or

27  defense is it considered dispositive.  *Id.*; *see also Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d

28  1458, 1462 (10th Cir. 1988) (striking of pleadings reviewed *de novo*); *North Am. Watch Corp. v.*

1   *Princess Ermine Jewels*, 786 F.2d 1447, 1450 (9th Cir. 1986) (dismissal of counterclaim

2   reviewed *de novo*); *Banks v. Modesto City Schs. Dist.*, No. CV-F-04-6284, 2006 U.S. Dist.

3   LEXIS 94274, at *9 (E.D. Cal. Dec. 18, 2006) (referring sanctions motion to trial court because

4   of request for terminating sanction).  Here, the sanction does not terminate Oracle's right to

5   pursue any of the causes of action it has plead.  Reply Brief at 2-3;[1] *see also* Order at 7.  It merely

6   limits *portions* of one form of alleged damage.  *Id.*

7          Oracle contends that if a sanction limits any portion of any demand for money, it must be

8   dispositive.  Objs. at 4.  This claim is inconsistent with the relevant statute and Ninth Circuit law

9   discussed above.  Moreover, Oracle cites no authority in support of its position other than a

10  partial definition of the word "claim" in *Black's Law Dictionary*.[2]

11         Oracle's reliance on *Network Appliance, Inc. v. Bluearc Corp.*, No. C 03-5665, 2005 U.S.

12  Dist. LEXIS 16726 (N.D. Cal. June 27, 2005) is similarly unpersuasive.  Objs. at 4.  *Network*

13  *Appliance* states that "under certain circumstances, the imposition of preclusive sanctions may be

14  tantamount to dismissal of a plaintiff's claims or entry of default judgment against a defendant."

15  *Id.* at *9.  The sanction here is not "tantamount to dismissal," as Magistrate Judge Laporte noted

16  at the hearing and in the Order.  Wallace Resp. Decl. ¶ 1, Exh. A (Tr. at 62:10-66:6);[3] *see also*

17  Order at 6.  Nor is it "critical in shaping the nature of litigation," as Oracle contends (Objs. at 4),

18  citing to Magistrate Judge Laporte's decision in *Keithley v. Home Store.com, Inc.,* No. C-03-

19  04447, 2008 U.S. Dist. LEXIS 70246 (N.D. Cal. Sept. 16, 2008).  Magistrate Judge Laporte

20  correctly distinguished *Keithley* on several grounds, including that the sanctions in that case were

21  more "severe" and "potentially dispositive of liability …."  Order at 8-9.  By contrast, "the

22  sanctions Defendants seek [here] do not affect liability or preclude recovery of many millions of

23

24         [1] All references to "Reply Brief" are to Defendants' Reply in Support of Motion for
    Sanctions Pursuant to Fed. R. Civ. P 37(c) and 16(f), filed on August 4, 2009 (Dkt. No. 399).  For
25  the Court's convenience, Defendants have provided a binder containing a complete copy of each
    side's submissions to Magistrate Judge below, along with the hearing transcript and Order.

26         [2] *Black's Law Dictionary* contains numerous other definitions of "claim" that are
    inconsistent with Oracle's position, including "cause of action."  *Black's Law Dictionary* 247 (6th
27  ed. 1991).

28         [3] All references to "Wallace Resp. Decl." are to the Declaration of Elaine Wallace in
    Support of Defendants' Response to Plaintiffs' Objections to Order for Sanctions, filed herewith.

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

1    dollars of damages, but instead affect only a portion of potential damages, leaving Plaintiffs free

2    to pursue their originally estimated 'likely at least a billion dollars.'" *Id.*

3        *Reynoso v. Constr. Protective Servs., Inc.*, No. 06-56381, 2008 U.S. App. LEXIS 19681

4    (9th Cir. Sept. 16, 2008) also does not apply here.  In *Reynoso*, the Ninth Circuit held that Local

5    Rule 37-1, which requires a meet and confer before filing a discovery motion, does not apply to a

6    motion *in limine* to exclude evidence.  *Id.* at *5-8.  *Reynoso* did not involve any ruling by a

7    magistrate judge or determination of whether a sanctions motion is dispositive.

8        Finally, Oracle is incorrect that because the Order precludes evidence, it "is not a

9    discovery sanction."  Objs. at 4.  The purpose of Rule 37 is to enable a Court to impose discovery

10    sanctions, and evidence preclusion is one such sanction.  Fed. R. Civ. P. 37(c)(1); *see also*

11    Schwarzer, Tashima, & Wagstaffe, *Federal Civil Procedure Before Trial* ¶ 16:279.5 (The Rutter

12    Group 2009) ("A magistrate judge's evidentiary rulings, even where they ultimately affect the

13    outcome of the case, are 'nondispositive' orders under 28 USC § 636(b)(1)(A) ….").

14        In short, Defendants' motion, and Magistrate Judge Laporte's Order on that motion, are

15    non-dispositive.  This Court would have to conclude that Magistrate Judge Laporte's factual

16    findings are clearly erroneous before sustaining Oracle's objections.  Even if the Court were to

17    hold that Defendants' motion and the Order are dispositive and review the findings *de novo*,

18    however, the findings and related sanctions are fully supported by the record.

19    **B.**      **THE ORDER IS SUPPORTED BY THE RECORD.**

20        Oracle does not object to the preclusion of lost profits for customers that did not become

21    TomorrowNow customers.  Objs. at 1-2, 14.  Accordingly, Oracle's objections relate to: (1)

22    alleged lost profits relating to license revenue, as opposed to support revenue; and (2) alleged lost

23    profits for products not supported by TomorrowNow.

24        Magistrate Judge thoroughly considered – and properly rejected – the same facts and

25    arguments Oracle presents to this Court.  Moreover, even though Oracle has improperly

26    submitted additional evidence to this Court, Oracle has not presented any new facts or argument

27    that undermine Magistrate Judge Laporte's findings.  As Oracle notes, a party may not present

28    new evidence on objections to a non-dispositive motion absent some compelling justification.

1    Objs. at 9, n.5.  For dispositive motions, new evidence is permitted only upon a proper motion.

2    Local Rule 72-3(b).  Oracle has done neither.  Its argument that it did not submit this material to

3    Magistrate Judge Laporte because it did not believe additional evidence was needed to defeat

4    Defendants' motion is not sufficient justification to warrant an expansion of the record on appeal.

5    *See Favoured Devs. Ltd v. Lomas*, No. C06-02752 MJJ, 2007 U.S. Dist. LEXIS 78599, at *6 (N.

6    D. Cal. Oct. 23, 2007) (litigants "may not … use the magistrate judge as a mere sounding-board

7    for the sufficiency of the evidence.") (citation omitted).  Regardless, even the improperly

8    expanded record supports Magistrate Judge Laporte's findings.

9         **1.**    **The Complaints.**

10       Oracle argues that a single sentence in its various complaints was sufficient to put

11    Defendants on notice of its intent to seek alleged lost license revenue in addition to alleged lost

12    support revenue.  Objs. at 5-6.  Oracle made the same argument to Magistrate Judge Laporte, who

13    properly rejected it.  Order at 9-11; *see also* Reply Brief at 7-8, 10.

14       First, Magistrate Judge Laporte correctly noted the "very general" nature of the language

15    on which Oracle relies.  Order at 9; *see also id.* at 13 ("Plaintiffs seek to rely on the vague, very

16    general damages allegations in their initial complaint to preserve their new, more extensive

17    damages theories, even though they failed to disclose those theories in discovery for over two

18    years, despite Defendants' efforts from the outset to flesh out Plaintiffs' sketchy damages

19    allegations through appropriate discovery tools.").  Second, and more importantly, Defendants

20    took note of this language in Oracle's complaint and immediately served discovery requests

21    designed to elicit more detail on Oracle's damages claims.  Order at 9; Opening Brief at 6-8;[4]

22    Reply Brief at 7-8.  In response, as Magistrate Judge Laporte correctly noted, Oracle *disclaimed*

23    the relevance of license revenue and *refused to produce* documents beyond those relating to

24    support revenue:

25         Defendants took notice of this very general language and on the day discovery
26         opened, they served discovery requests designed to ferret out precisely what
         damages were really at issue.  In September 2007, Plaintiffs responded to these
27         early discovery requests exclusively in terms of lost support revenue, without any

28         [4] All references to "Opening Brief" are to Defendants' Motion for Sanctions Pursuant to
      Fed. R. Civ. P 37(c) and 16(f), filed on July 14, 2009 (Dkt. Nos. 342 & 464).

1

2

> mention of licensing revenue … Significantly, Plaintiffs specifically disclaimed
> the relevance of revenue from sources other than support for PeopleSoft and J.D.
> Edwards applications ….

3   Order at 9-11 (text of requests and responses omitted);[5] *see also* Reply Brief at 7.  Magistrate

4   Judge Laporte's decision was based not only on Oracle's failure to timely disclose the nature and

5   extent of its damages claims, but on Oracle's prior position that the precluded evidence was

6   irrelevant and would not be produced.  Oracle fails to rebut this key aspect of the Order.

7        Magistrate Judge Laporte rejected Oracle's argument that these discovery responses were

8   made before Oracle could develop its damages theory, finding it to be "inconsistent with their

9   other argument that one sentence in their March 22, 2007 complaint was sufficient to put

10  Defendants on notice as to the extent and nature of the damages at issue."  Order at 11; *see also*

11  Reply Brief at 10.  Magistrate Judge Laporte also found that Oracle continued to disclaim the

12  relevance of license revenue "even many months after these initial discovery responses…."

13  Order at 12; *see also* Reply Brief at 10-11.  Moreover, Oracle conceded in its opposition to the

14  motion that it has never supplemented its responses to these requests, arguing that it made the

15  information known by other means.  *Id.*  Magistrate Judge Laporte disagreed:

16

> Tellingly, however, Plaintiffs have pointed to no written communication to
> Defendants, written discovery responses, deposition testimony, or submission to
> the Court from their responses in July 2007, which expressly limited their
> damages to support revenue from the products at issue in this case, until April
> 2009, when Plaintiffs first sought to greatly expand the categories of damages at
> issue beyond those set forth in their initial discovery responses.

17

18

19

20  Order at 12.  Oracle has provided no basis in its objections for rejecting these findings.

21        **2.      The Disclosures.**

22        Oracle's argument regarding its August 2007 Initial Disclosures does not support a

23  finding of error.  Oracle's only contention is that its Initial Disclosures contain the term "lost

24  profits" and do not expressly limit that claim to support revenues.  Objs. at 6.  Oracle fails to

25  respond to Defendants' argument, and Magistrate Judge Laporte's finding, that this general term

26  does not provide the specificity required by Rule 26 and that the only category of damages

27        _____

> [5] Complete copies of Oracle's responses to the requests are attached as Exhibit E to the
> Declaration of Elaine Wallace in Support of Defendants' Motion for Sanctions Pursuant to Fed.
> R. Civ. P. 37(c) and 16(f), filed on July 14, 2009 (Dkt. Nos. 343 & 467).

28

SFI-621574v1

1   documents identified in the Initial Disclosures relate to "the loss of customer support revenue."

2   Opening Brief at 3; Reply Brief at 8; Order at 12-13.  Oracle also fails to address the fact that, one

3   month after its Initial Disclosures, it served the discovery responses discussed above, limiting its

4   production to documents relevant to support revenue.  Reply Brief at 8.  Finally, Oracle fails to

5   justify the two year delay in supplementing its Initial Disclosures.  Order at 13; *see also id.* at 18

6   ("The fact that Plaintiffs finally revealed in April 2009 that their damages claims extended to non-

7   TomorrowNow customers and to revenue from sources other than support does not absolve them

8   from their failure to make adequate initial disclosures or to respond with information already in

9   their possession to the specific discovery requests propounded early in this case.  To the contrary,

10   these disclosures are too little, too late.").

11          **3.        The Interrogatory Responses.**

12          Oracle relies (Objs. at 6) on its September 2007 response to Interrogatory No. 5, which

13   asks Oracle to "[d]escibe in as much detail as possible" all ways in which Oracle alleges it was

14   harmed by the conduct alleged in the Complaint.  Order at 11.  Magistrate Judge Laporte

15   correctly found that Oracle's response contained "only general categories of harms …." *Id.*; *see*

16   *also* Reply Brief at 9.  The fact that the response references "customers of Oracle support services

17   and software programs" was not sufficient to inform Defendants that Oracle's damages claims

18   included alleged lost license revenue, particularly since the response was served along with the

19   document request responses discussed above, which disclaimed the relevance of license revenue

20   and refused to produce related documents.  Similarly, the fact that Oracle's interrogatory response

21   "points Defendants to the contract files and other documents" was also insufficient given Oracle's

22   refusal to produce documents relating to license revenue.  *Id.*

23          Defendants asked Oracle to supplement its response to Interrogatory No. 5 to provide a

24   meaningful description of its damages claims.  Opening Brief at 5.  After an extensive meet and

25   confer, Oracle supplemented its response in October 2007 but the supplement consisted of no

26   more than a reference, pursuant to Rule 33(d), to previously produced customer contract files.

27   *Id.*; *see also* Order at 11.  Oracle failed to provide any information indicating that its damages

28   claim extended to alleged lost license revenue.

1    Oracle also relies on its responses to interrogatories served in February 2009.  Objs. at 7.

2   These interrogatories were not damages related, as Oracle contends, but preemption related,

3   intended to flesh out the differences between conduct alleged in support of Oracle's copyright and

4   non-copyright claims.  Reply Brief at 9-10; Order at 18.  Oracle's April 2009 responses "at last

5   disclosed a vastly expanded scope of damages …."  Order at 18.  Far from supporting Oracle's

6   argument that it timely disclosed the full nature and extent of its damages claims, Magistrate

7   Judge Laporte correctly found that these April 2009 responses and Oracle's May 2009

8   Supplemental Disclosures, two years into discovery, were "too little, too late."  *Id.*

9        **4.    The June 24, 2008 Discovery Conference Statement.**

10    Oracle contends that a portion of a single sentence in the parties' June 24, 2008 Joint

11   Discovery Statement is sufficient to undermine Magistrate Judge Laporte's finding that Oracle

12   did not timely disclose its intent to seek alleged lost license revenue.  Objs. at 7 (referring to the

13   phrase "revenue streams reasonably associated with its customers who left for SAP TN.").

14   However, Oracle fails to put this language in context.  At the time the Discovery Conference

15   Statement was submitted, Oracle had been disclaiming the relevance of license revenue, and

16   refusing to provide any related discovery, for almost a year.  Opening Brief at 6-8.  As discussed

17   above, Oracle never amended its discovery responses or otherwise communicated any change in

18   position to Defendants during this time.  Defendants cannot reasonably have divined from this

19   language that Oracle had now decided to pursue such damages.  Moreover, Oracle's argument is

20   inconsistent with the position it took two months after the June 2008 Discovery Conference

21   Statement regarding the scope of the customer-specific financial reports and product pricing

22   information it was willing to produce.  In an email from its counsel, Oracle expressly limited that

23   production to support, pricing, and contract information for PeopleSoft and J.D. Edwards

24   products only, *i.e.* the products *already licensed* by TomorrowNow customers:

25

26        (1) Customer-Specific Financial Reports:  Oracle has located and will produce
         reports for the relevant customers and for the relevant time periods showing,
         among other information, the following: (a) Customer names; (b) Customer
27        numbers; (c) The names of the PSFT and JDE products each customer was
         licensed to; (d) Whether a customer licensed support for a given product; (e) The
28        contract number and license order numbers; (f) The support contract start and end

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

1    dates for the first year of support and renewals; (g) The current contract status; (h)
2    The amounts paid for support and licenses; and (i) The date of cancellation of
     support.

3    Wallace Decl. ¶ 10, Exh. F (August 27, 2008 email from Oracle's counsel, also limiting
4
5    production of pricing information to "the products at issue in the litigation."); *see also* Order at
6    16.  In the email, Oracle's counsel stated that this information would "more than allow defendants
7    to determine 'Oracle's revenues, expenses, and profits from the customers it claims to have lost.'"
8    *Id.* at Exh. F.   Notably absent for the list of information Oracle agreed to provide is any
9    information relating to the other products Oracle claims these customers would have licensed.
10        Finally, the June 24 Discovery Conference Statement is only one of many such Statements
11   and a small part of a record that Oracle acknowledges is "extensive."  Objs. at 9, n.5.  As
12   Magistrate Judge Laporte noted, her Order is based, in part, on "repeated discovery conferences
13   and hearings" and her view that damages discovery has been raised "at numerous discovery
14   conferences" and that "Plaintiffs' focus has consistently been on support revenue from customers
15   lost to TomorrowNow …."  Order at 3-4.

         5.    **The Testimony Of Oracle Witnesses.**

16        Oracle argues that the testimony of Oracle witnesses put Defendants on notice of Oracle's
17   intent to seek alleged lost license revenue.  Objs. at 7 (citing Ellison and Phillips depositions).
18   However, this is the same testimony that Magistrate Judge Laporte found to have disclosed too
19   late that support revenue was just the "tip of the iceberg" of Oracle's alleged harm.  Order at 17
20   ("It was not until very recently, after over two years of discovery at a cost of millions of dollars to
21   each side, when Defendants deposed Plaintiffs' top executives in April and May, 2009, that
22   Defendants learned that Plaintiffs now contend that lost support revenue was not the primary
23   economic harm.") (citing Ellison and Phillips testimony).  Oracle provides no basis on which to
24   find error with this finding.
25        Oracle also improperly relies on evidence not presented to Magistrate Judge Laporte.
26   Even if the Court considers that evidence, however, it does not undermine Magistrate Judge
27   Laporte's findings.  First, Oracle contends that Charles Homs' testimony put Defendants on
28

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

1   notice of Oracle's expanded damages claims.  Objs. at 7-8.  However, his testimony was limited

2   to describing what he believed to be the impact on Oracle customers of "fear, uncertainty, and

3   doubt" allegedly caused by SAP.  Mr. Homs did not indicate that Oracle had now decided to

4   expand its discovery claims to include alleged lost license revenue.  House Decl., Exh. L.[6]

5   Moreover, his deposition was on February 26, 2009, just weeks before the Ellison and Phillips

6   depositions discussed above.  *Id.*  Thus, even assuming Hom's testimony could conceivably have

7   put Defendants on notice of the expanded claims, the disclosure was just as untimely.

8         Second, Oracle misleadingly suggests that Defendants have "used long-ago produced

9   cross-sell and up-sell documents in examining Oracle witnesses."  Objs. at 8.  However, the

10  deposition on which Oracle relies did not occur until August 28, 2009, *after* the hearing on

11  Defendants' motion.  House Decl., Exh. M.  Moreover, the documents to which Oracle refers are

12  neither "cross-sell and up-sell documents" nor "long-ago produced."  Exhibit 596 is an email and

13  attached "scorecard" that Oracle uses to track its progress on integrating acquired companies.

14  Wallace Resp. Decl. ¶ 2.  It was produced on July 1, 2009, two weeks before Defendants filed

15  their motion.  *Id.*  The witness specifically testified that this document does not "track or reflect"

16  cross-sell or up-sell information.  House Decl., Exh. M (Tr. 202:21-204:3).  Exhibit 591 is a

17  standard PeopleSoft, Inc. financial forecast for 2004/2005.  Wallace Resp. Decl. ¶ 3.  It was

18  produced on February 6, 2009, almost two years into discovery.  *Id.*  Nothing in it indicates that it

19  is a "cross-sell and up-sell document."  *Id.*  Moreover, the witness disclaimed any knowledge of

20  its contents.  House Decl., Exh. M (Tr. 92:8-97:18).  Neither of these documents and none of the

21  testimony cited by Oracle undermines Magistrate Judge Laporte's findings.[7]

22

23

24   _____

     [6] All references to "House Decl." are to the Declaration of Holly A. House in Support of
25  Oracle's Objections to Order of Discovery Magistrate Granting Defendants' Motion for
     Preclusion of Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 37(c) and
26  16(f).

27       [7] Oracle did not submit Exhibits 591 and 596 with its objections so that the Court could
     evaluate their contents for itself.  Nor would Oracle agree to permit Defendants to file them
28  absent a motion to seal.  Instead, Oracle intends to review Defendants' response and determine
     whether to submit the documents itself, under seal.  Wallace Resp. Decl. ¶ 3.

1    **6.    The List Of SAP Customers.**

2          Oracle's discussion of the subset of 86 TomorrowNow customers who purchased SAP

3    software has no bearing on Magistrate Judge Laporte's findings.  Objs. at 8-9.  Defendants do not

4    dispute that Oracle made clear its intent to seek damages relating to SAP's sales, or that the issue

5    of SAP sales to TomorrowNow customers has been discussed at numerous discovery

6    conferences.[8]   However, SAP sales to TomorrowNow customers are part of Oracle's claim for

7    disgorgement of alleged infringer's profits, not its lost profits claim.  *See* 17 U.S.C. § 504(b)

8    (permitting copyright owner to seek actual damages suffered as a result of the infringement, such

9    as lost profits, and to the extent not duplicative, profits of the infringer attributable to the

10   infringement).  Oracle's disgorgement claim was not at issue in Defendants' motion.  Opening

11   Brief at 13, n.9.  The fact that SAP agreed to (and did) provide discovery concerning its sales to

12   those 86 customers is irrelevant to the positions Oracle took with respect to discovery of its own

13   documents for the 358 TomorrowNow customers for its lost profits claim.

14         Oracle states that the transcripts of these discussions contain admissions by Defendants'

15   counsel regarding "Oracle's up-sell and cross-sell damages."  That is not the case.  Objs. at  8.  A

16   review of the submitted excerpts makes clear that the discussions pertain solely to Oracle's

17   unrelated claim for disgorgement of SAP profits from sales of SAP products.  House Decl., Exhs.

18   A, C-F.  The same applies to Oracle's discussion of SAP's alleged forecasts of potential sales of

19   SAP products to TomorrowNow customers.  Objs. at 10-11.  This has no bearing on Magistrate

20   Judge Laporte's findings regarding Oracle's failure to disclose the nature and extent of its lost

21   profits claim and refusal to produce documents regarding its own alleged lost license revenue for

22   the 358 TomorrowNow customers.

23   **7.    Oracle's Production Of Customer Documents.**

24         Oracle also relies on its alleged inclusion of licensing purchase histories in its customer-

25   specific financial reports.  Objs. at 9-10.  Oracle concedes, however, that it never informed

26   Defendants why it was producing this information.  *Id.* at 10.  Moreover, the meet and confer

27

28         [8] Defendants do, however, dispute the accuracy of Oracle's statements regarding when
     SAP provided the names of these SAP customers to Oracle.  Wallace Resp. Decl. ¶ 4.

1   letter on which Oracle relies was sent in response to a letter from Defendants' counsel that made

2   clear Defendants did not understand why Oracle was producing this irrelevant material instead of

3   the material the parties had agreed would be produced.  Wallace Resp. Decl. ¶ 5, Exh. B

4   (February 12, 2009 letter complaining about Oracle's failure to produce reports for certain

5   customers on the products at issue and instead producing reports on irrelevant products).  Oracle's

6   only response was the language cited in its objections.  Objs. at 10 ("To clarify, Oracle did not

7   limit reports by date or product line.").  As Oracle impliedly admits, this was not sufficient to

8   inform Defendants that Oracle was now seeking damages for alleged lost license revenue despite

9   its disclaimers during the previous two years.  Nor does it undermine Magistrate Judge Laporte's

10  finding that Oracle failed to disclose it in any written communication.  Order at 12.

11  ## C.   THE ORDER IS SUPPORTED BY THE LAW.

12          Under Rule 37(c)(1), preclusion is a self-executing, automatic sanction for failure to

13  comply with the discovery obligations imposed by Rule 26.  Fed. R. Civ. P. 37(c), Advisory

14  Committee Notes (1993); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

15  1106 (9th Cir. 2001) (the "Advisory Committee Notes describe it as a 'self-executing,'

16  'automatic' sanction to 'provide[] a strong inducement for disclosure of material ….'") (citation

17  omitted).  Two express exceptions apply to this automatic sanction.  Evidence may be introduced

18  if the party facing sanctions can prove that its failure to disclose it was "substantially justified" or

19  "harmless."  Fed. R. Civ. P. 37(c)(1), Advisory Committee Notes (2000); *see also Yeti by Molly*,

20  259 F.3d at 1106.  The Ninth Circuit gives "particularly wide latitude to the district court's

21  discretion to issue sanctions under Rule 37(c)(1)."  259 F.3d at 1106.

22          Oracle contends that the five factor test adopted in *Wendt v. Host Int'l, Inc.*, 125 F.3d 806,

23  814 (9th Cir. 1997) also applies.  Objs. at 13.  That test, however, was developed to determine

24  whether the sanction of dismissal by default is proper under Rule 37.  125 F.3d at 814 (citing

25  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990), which states "[o]ur own court has

26  fashioned a set of factors for the district court to apply in considering whether a dismissal of

27  default is appropriate as a Rule 37 sanction."); *see also Northwest Pipeline Corp. v. Ross*, No.

28  C05-1605RSL, 2008 U.S. Dist. LEXIS 32984, at *40-41, n.10 (W.D. Wash. Apr. 11, 2008)

1  (noting that the *Wendt* test was developed for the sanction of default and following "the Ninth

2  Circuit's more recent decisions in *Yeti by Molly Ltd.* and *Wong* in imposing the Rule 37(c)(1)

3  exclusionary remedy.").[9]

4         The five factor test does not apply to evidentiary sanctions and Oracle has cited no case

5  establishing that it does.  Regardless, the Order is supported by the law under either test.  It was

6  also well within Magistrate Judge Laporte's discretion under Rule 16(f) to issue any "just"

7  sanctions order "it feels is appropriate under the circumstances."  Fed. R. Civ. P. 16(f), Advisory

8  Committee Notes (1983).  Magistrate Judge Laporte made clear that the ordered sanctions were

9  warranted under both Rule 16(f) and Rule 37(c)(1).  Thus, if the standard under either rule is met,

10  the Order should remain undisturbed.

11         **1.      Magistrate Judge Laporte Correctly Applied The Relevant Legal Standards.**

12         Magistrate Judge Laporte did not make her ruling in a vacuum.  The Order is based on the

13  Court's "hands-on management of" and "deep familiarity with" discovery in this case.  Order at

14  25-26, 2.  As noted in the Order:  "The Court has closely monitored discovery in this complex

15  litigation, holding thirteen discovery conferences addressing the progress of discovery and

16  providing guidance on the numerous complex issues that have arisen, and six contested hearings

17  on discovery motions."  *Id.* at 2.  Based on this extensive involvement in and familiarity with the

18  case, Magistrate Judge Laporte properly concluded that the requirements of Rules 37 and 16 were

19  met:

20         [T]he Court concludes that Plaintiffs' discovery responses failed without
           substantial justification for over two years to inform Defendants that Plaintiffs
21         were seeking lost profit damages relating to non-TomorrowNow customers and to
           revenue from sources other than support in violation of Rule 37.  Further,
22         Plaintiffs failed to timely supplement their initial disclosures to update their
           damages theory until May 2009, even though facts supporting such damages were
23         known to Plaintiffs before filing this lawsuit, in violation of this Court's May 2,
           2008 Order and Rule 16.  (Citation omitted).  Moreover, Plaintiffs' failure was not
24         harmless because Defendants would suffer prejudice if Plaintiffs were allowed to
           proceed on their new damages claims because Defendants' expert would not be
25         able to conduct the required analysis within the time limits set by Judge Hamilton,
           and the cost of the additional analysis would be exorbitant.  In addition,
26         expanding the damages case significantly as Plaintiffs belatedly attempt to do
           would severely prejudice the Court's ability to manage this case to resolution in

27  _____

28  [9] *But see United States v. 14.3 Acres of Land*, No. 07cv886-W(NLS), 2009 U.S. Dist.
    LEXIS 7148, at *7 (S.D. Cal. Jan. 30, 2009) (applying five factor test to preclusionary sanction).

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

anything approaching a just, speedy, and inexpensive manner.  Thus Rule 37 mandates preclusion sanctions, and Rule 16 also counsels such sanctions in the sound exercise of the Court's discretion."

Order at 25-26.

Assuming the *Wendt* five factor test applies, the Order meets that test as well.  125 F.3d at 814.  The first factor – the public interest in the expeditious resolution of litigation – was a key consideration for Magistrate Judge Laporte in deciding Defendants' motion.  *See, e.g.,* Order at 4 ("While refinement of the details of the damages at issue may well be appropriate as the case proceeds, a major shift in the basic nature and order of magnitude of damages many months into the case poses a much greater threat to the just, speedy and inexpensive resolution of the case."); *id.* at 13 ("To allow the belated disclosure of the new theories to trigger large waves of expensive discovery and expert analysis at this late date based on vague allegations that Plaintiffs previously refused to elaborate on despite their ability to do so, would be simultaneously unfair to Defendants, very expensive and hugely time consuming, slowing down what is already very lengthy litigation.  Such a result would run directly contrary to the mandate of Rule 1, achieving a dubious trifecta of unfair, glacially slow and exorbitantly expensive litigation.").

The second factor – the Court's need to manage its docket – was also a key consideration. *See, e.g.,* Order at 3 ("From the first discovery conference … the Court has repeatedly emphasized that the scope of this case required cooperation in prioritizing discovery … Judge Hamilton's order in April 2008 that damages discovery should not be delayed further underscored the importance of getting a prompt handle on the scope and nature of the damages at issue."); *id.* at 23 ("Judge Hamilton's and this Court's efforts to manage the case to resolution in a manner that complies with the fundamental requirement of Federal Rule of Civil Procedure 1 to administer the Federal Rules so as to 'secure the just, speedy and inexpensive determination of every action' would be thwarted.").

The third factor – the risk of prejudice to Defendants – involves the same facts discussed above that Magistrate Judge Laporte properly considered in connection with the Rule 37(c)(1) "harmlessness" test.  The fourth factor – the public policy favoring disposition of cases on their

1   merits – does not apply here.  As discussed in Section A above, the Order is not a terminating

2   sanction or "tantamount to dismissal" and does not preclude consideration of Oracle's claims on

3   the merits as Oracle contends.  Magistrate Judge Laporte considered and properly rejected the

4   fifth factor – the availability of a lesser sanction – for the reasons discussed in Section D below.

5   Moreover, as also discussed in Section D, the fact that Oracle has limited its objections to the

6   license revenue issue does not undermine Magistrate Laporte's conclusion that Oracle's "wait and

7   see" approach should be rejected.

8           **2.        Magistrate Judge Laporte Correctly Distinguished Oracle's Cases.**

9           In opposition to Defendants' motion, Oracle cited numerous distinguishable cases to

10  support its argument that preclusion of damages evidence is unwarranted on these facts and at this

11  stage in the case.  Opp. at 6-7; Objs. at 13.  Oracle contends that preclusion was denied in these

12  cases on less egregious facts and at a later juncture in the case.  *Id.*  In each of these cases,

13  however, the court found that the conduct was harmless and/or substantially justified because

14  there was good reason for it, the receiving party identified no prejudice, the late disclosed

15  material was minimal or not materially different from previously disclosed material, and/or any

16  potential prejudice was easily cured.  *See, e.g., United States v. Rapanos*, 376 F.3d 629, 645 (6th

17  Cir. 2004) (late disclosure harmless because defendants were already aware of the data and the

18  data was beneficial to them); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564

19  (5th Cir. 2004) (failure to provide report harmless because plaintiffs informed defendant of the

20  witness and nature of his testimony six months before trial and the testimony consisted of simple

21  calculations); *Reiner v. Warren Resort Hotels, Inc.*, No. CV 06-173, 2008 U.S. Dist. LEXIS

22  102047, at *28 (D. Mont. Oct. 1, 2008) (no evidence plaintiff knew the information prior to

23  disclosure and defendant's allegation regarding "buried" documents was false, thus defendant

24  suffered no harm); *Pierce v. CVS Pharmacy, Inc.*, No. CV 06-823, 2007 U.S. Dist. LEXIS 69006,

25  at *11 (D. Ariz. Sept. 17, 2007) (defendant could not identify any prejudice and any that existed

26  could be cured by short extension of time); *The Christensen Firm v. Chameleon Data Corp.*, No.

27  C06-337Z, 2006 U.S. Dist. LEXIS 79710, at *16-17 (W.D. Wash. Nov. 1, 2006) (supplemental

28  disclosures followed detailed initial disclosures); *Network Appliance*, 2005 U.S. Dist. LEXIS

1   16726, at *10-11 (plaintiff could only establish a three week delay in receiving a limited number

2   of documents); *Semtech Corp. v. Royal Ins. Co.*, No. CV 03-2460, 2005 WL 6192906, at *2 (C.D.

3   Cal. Sept. 8 2005) (delay in making supplemental disclosure resulted from court's ruling and was

4   harmless because the supplement contained no new information); *Tracinda Corp. v.*

5   *DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506-11 (D. Del. 2005) (late disclosure of expert

6   material harmless because late disclosed information was not materially different from timely

7   disclosed information).

8          None of those circumstances applies here, as Magistrate Judge Laporte correctly held.

9   Order at 21, 24-25.  In the Court's words, the magnitude of this case "dwarfs" those cited by

10  Oracle in terms of the complexity of the claims and amount of damages sought (*id.* at 21):

11         [F]ar more time is already necessary for adequate trial preparation in light of the
           existing complexity and scope of this case; the expansion in damages discovery
12         that would be necessitated by Plaintiffs' new categories of damages would
           prejudice Defendants and almost certainly derail the trial schedule.
13

14  *Id.* at 22.  Magistrate Judge Laporte also properly rejected the same suggestion Oracle makes to

15  this Court (Objs. at 13) that the better approach would be to allow it to pursue its late disclosed

16  and greatly expanded damages claims and wait to see if Defendants and their expert can catch

17  up.  Order at 23 ("Left unsaid is that in the highly likely event that Defendants cannot, the trial

18  schedule would yet again be derailed.").

19         Oracle contends that it is being held to an unprecedented new standard for damages

20  disclosures.  Objs. at 14.  It is not.  Contrary to Oracle's argument, preclusion is not limited to

21  circumstances where information is disclosed after the close of discovery, shortly before trial.

22  Rather, preclusion is appropriate whenever disclosure occurs late enough in the case to cause

23  prejudice.  *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("The issue is not whether

24  [defendants] eventually obtained the information they needed, or whether plaintiffs are now

25  willing to provide it, but whether plaintiffs' repeated failure to provide documents and

26  information in a timely fashion prejudiced the ability of [defendants] to prepare their case for

27  trial."); *see also SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 755-58 (E.D. Mich. 2008)

28  (upholding magistrate's decision to preclude prior art evidence although defendant disclosed it

1   two months before the close of discovery and the plaintiff had a "substantial opportunity" for, and

2   did, in fact, conduct, "significant discovery" after disclosure; preclusion was proper because the

3   information was known to the defendant for nearly a year prior to disclosure and the plaintiff

4   "plainly was disadvantaged by the late disclosures.").

5         Here, Oracle's new damages theories had been known to it since the outset of the case but

6   were not disclosed until more than two years after the complaint was filed, on the eve of the

7   original fact discovery cut-off.  Moreover, for two years Oracle had expressly disclaimed the

8   relevance of these theories, which, if it were allowed to pursue them, would require massive

9   additional discovery and an additional year of expert analysis.  Under these circumstances,

10  Magistrate Judge Laporte correctly distinguished the cases on which Oracle relied and correctly

11  concluded that preclusion is warranted.  The fact that the Court "consider[ed] Defendants' motion

12  in the context of the unusual scope and complexity" of the case (Order at 2) does not mean that

13  Oracle is being held to some unprecedented new legal standard.  Objs. at 14.  On the contrary, it

14  merely demonstrates Magistrate Judge Laporte's proper consideration of the same factors Oracle

15  urges this Court to consider in connection with the *Wendt* test, such as the public interest in the

16  expeditious resolution of litigation and the Court's need to manage its docket.

17        **3.**     ***Wendt* And *Network Appliances* Are Inapposite.**

18        In *Wendt*, the district court issued a sanctions order against plaintiffs' first trial counsel,

19  precluding expert testimony based on counsel's failure to disclose damages evidence and late

20  disclosure of experts.  125 F.3d at 814.  Four years later, following two appeals on other issues

21  and a substitution of counsel, the Ninth Circuit vacated the sanctions order because expert

22  discovery had been re-opened and the defendants were "no longer prejudiced by the actions of

23  appellants' former counsel."  *Id.*  The court found the imposition of a lesser sanction appropriate

24  as "[b]oth parties now have ample opportunity to begin the expert disclosure process anew."  *Id.*

25        These facts do not apply here.  The prejudice to Defendants of Oracle's belated

26  disclosures and about-face on the scope of relevant discovery is the same (or greater) now as it

27  was when Magistrate Judge Laporte issued the Order.  The only lesser "sanction" Oracle has

28  suggested is a "wait and see" approach, which Magistrate Judge Laporte rightly rejected as

1    inevitably derailing the trial schedule when it becomes clear that Defendants cannot make up the

2    time lost due to Oracle's discovery misconduct.

3         *Network Appliances* also does not apply here.  Objs. at 13.  As discussed above, the

4    preclusion sanction here is not "tantamount to dismissal" because it does not prevent Oracle from

5    pursuing any of its ten causes of action or its other damages claims.  As Magistrate Judge Laporte

6    noted, Oracle remains free "to pursue the many millions (perhaps over a billion) of dollars in

7    damages they have claimed all along based on lost support revenue for customers that left Oracle

8    for TomorrowNow."  Order at 26.

9    **D.**      **ORACLE'S PREJUDICE ARGUMENT IS NOT SUPPORTED BY THE RECORD.**

10        Oracle erroneously contends that because its objections are limited to the portions of the

11   Order precluding evidence of alleged lost license revenue, prejudice to Defendants is no longer a

12   concern.  Objs. at 11.  That is not the case.

13        *First*, Oracle contends that Defendants' expert, Stephen Clarke, is already reviewing the

14   alleged lost license data "by analyzing the documents provided by the parties related to the TN

15   Customers as well as a subset of those customers that also bought software and services from

16   SAP."  Objs. at 11-12.  However, Mr. Clarke made clear in his declaration in support of

17   Defendants' motion that his analysis has been confined to the damages claims Oracle timely

18   disclosed.  Clarke Decl. ¶¶ 4-5.[10]  It has not included the claims Oracle failed to disclose – and

19   expressly disclaimed – because, until recently, he and Defendants were unaware of them.  Thus,

20   to the extent that Oracle's production of, for example, customer contract files (approximately

21   92,000 pages), customer-specific financial reports (approximately 2000 files containing 600

22   megabytes of data), and custodian productions (approximately half a million pages) contain

23   information relevant to calculating alleged lost license revenue, Mr. Clarke has not analyzed it for

24   that purpose.  His analysis has focused on the damages claim Oracle did timely disclose – alleged

25   lost support revenue.  As Magistrate Judge Laporte noted, the extensive time required to re-

26   review data for the purpose of calculating alleged lost license revenue cannot be made up without

27   ─────────────
     [10] All references to "Clarke Decl." are to the Declaration of Stephen Clarke in Support of
28   Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37 (c) and 16(f), filed on July 14,
     2009 (Dkt. No. 344 & 465).

1    derailing the trial schedule.  Order at 23.

2            ***Second***, Oracle's argument fails to account for the documents Mr. Clarke says are

3    necessary to calculate alleged lost license revenue that Oracle has *not* produced.  Clarke Decl.

4    ¶¶ 17, 26.  Oracle's argument that there are no such documents and that the up-sell and cross-sell

5    analysis is "purely expert analysis" (Objs. at 12) is inconsistent with its own expert's declaration

6    in opposition to Defendants' motion.  As Magistrate Judge Laporte noted:

7            Plaintiffs' own documents indicate that, far from having decided on and disclosed
             the basic components of damages they were seeking at the outset of this case and
8            produced the supporting documents … they have only recently begun collecting
             the documents needed to support their expanded damages relating to non-
9            TomorrowNow customers and revenue other than for support services.  For
             example, Plaintiffs' expert, Paul Meyer … states in his July 2009 declaration …
10           that "In connection with NCI's analysis of lost cross-sell and up-sell
             opportunities, we are directing Oracle personnel to gather information."  (Citation
11           omitted).  There is no excuse for only now gathering information for a major
             aspect of damages that Plaintiffs argue was part of this case from the outset.  The
12           likely explanation is that Plaintiffs did not attempt to pursue these additional
             damages until recently.  This information should have been gathered long ago,
13           well prior to the former June 19, 2009 discovery cutoff date in this case."

14   Order at 20-21.  Moreover, the record does not support Oracle's claim that two witnesses have

15   subsequently confirmed the absence of such documents.  Objs. at 12.  When asked whether

16   Oracle analyzes up-sell and cross-sell opportunities, Judith Sim testified "I'm sure that there are

17   groups who take a look at that" but that she would be "speculating" as to which groups and does

18   not know who at Oracle would have that information.  House Decl., Exh. N (Sim Tr. at 68:1-

19   69:7).  Keith Block testified only that he personally does not know of or receive reports that track

20   up-sell or cross-sell opportunities.  *Id.*, Exh. O (Block Tr. 133:12-134:23).

21           Similarly, the record does not support Oracle's claim that Defendants have suffered no

22   prejudice because Defendants have "repeatedly" questioned witnesses about up-sell and cross-sell

23   damages.  Objs. at 12.  The three witnesses on whom Oracle relies are former TomorrowNow

24   customers who were asked about their plans to purchase SAP software.  House Decl., Exhs. I-K.

25   As discussed in Section B.6 above, these questions are relevant to Oracle's disgorgement claim

26   for SAP's alleged infringer's profits, a claim not at issue in Defendants' motion.  It has no bearing

27   on Oracle's failure to disclose its "vastly expanded" lost profits damages claim (Order at 18) and

28   subsequent about-face on the relevance of documents relating to its own alleged lost license

1    revenue for the 358 TomorrowNow customers.  Moreover, these depositions took place in July,

2    August, and September 2009, *after* Oracle's belated disclosure of the full scope of its lost profits

3    claims in May 2009 and while the decision on Defendants' motion was pending.

4         **Third**, Magistrate Judge Laporte's finding that Oracle failed to meet its burden of showing

5    harmlessness was not limited to the other aspects of Oracle's lost profits claim.  Order at 22-24;

6    *see also Yeti by Molly*, 259 F.3d at 1107.  That finding included the claim for alleged lost license

7    revenue.  Order at 22 ("Defendants' economic damages expert testified that analysis of the new

8    categories of Plaintiffs' damages claim would take an additional year beyond the current expert

9    discovery schedule and would cost at least $5 million more in added expert fees and costs … For

10   example, Mr. Clarke states that to analyze new damages claims based on current and future lost

11   profits related to the loss of additional licensing, non-support revenue to TomorrowNow

12   customers ….").  Magistrate Judge Laporte expressly found, therefore, that a portion of Mr.

13   Clarke's estimate of an additional year and $5 million for expert analysis is attributable to

14   Oracle's late disclosure of its alleged lost license revenue claim and refusal to produce documents

15   relevant to that claim.  Oracle has provided no basis in its objections for this Court to reject that

16   finding and conclude that the license claim accounts for none of that additional time and cost.

17   Certainly, Oracle's flawed argument that Mr. Clarke has already analyzed the relevant data and

18   its submission of the irrelevant deposition testimony discussed above cannot justify that outcome.

19        **Finally**, Oracle's argument assumes that prejudice was the only basis for preclusion of

20   evidence on alleged lost license revenue.  However, as discussed above, Magistrate Judge Laporte

21   properly precluded that evidence on the separate ground that Oracle's failure to timely disclose

22   that aspect of its damages claim was not "substantially justified."  *See, e.g.,* Order at 3-4 ("As the

23   issue of damages discovery has been raised at numerous discovery conferences, and Plaintiffs'

24   focus has consistently been on support revenue from customers lost to TomorrowNow, the Court

25   was surprised to be told at this late date that Plaintiffs' damages theory included non-

26   TomorrowNow customers and revenue from sources other than support service.  This lack of

27   prompt disclosure to Defendants about the scope and nature of Plaintiffs' damages case and the

28   failure to cooperate on defining the contours of appropriate discovery accordingly threatens the

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

1    fair and cost-effective exchange of discovery.").

2    **E.    ORACLE SHOULD NOT BE PERMITTED TO OFFER THE PRECLUDED**

3    **EVIDENCE TO BOLSTER ITS OTHER CLAIMS.**

4          The Court should deny Oracle's request for clarification that its damages expert and other

5    witnesses may offer the precluded evidence for other purposes.  Objs. at 15-16.  As discussed

6    above, Magistrate Judge Laporte precluded the evidence because Oracle's failure to timely

7    disclose the nature and extent of its damages claims and refusal to produce requested discovery

8    has prejudiced Defendants.  Order at 25-26.  Defendants' ability to rebut Oracle's claim that it

9    lost license sales as a result of the conduct alleged in the complaint or that it suffered harm even

10   as to customers that never went to TomorrowNow has been compromised as a result.  *Id.*  That is

11   true regardless of the purpose for which Oracle may offer the evidence.

12         Oracle's request is effectively a "back door" damages claim whereby Oracle seeks to

13   further inflate its non-excluded damage claims.  But regardless of how Oracle intends to use the

14   excluded evidence, Defendants would still need to fully discover and analyze all relevant

15   documents, discovery responses, and testimony related to the excluded evidence.  The Order

16   clearly states that "Plaintiffs are precluded from presenting evidence at a hearing or at trial that

17   their lost profits damages include [listing the precluded categories of lost profits damages]."

18   Order at 26.  If Oracle's expert is permitted to testify on the amount of the precluded lost profits

19   damages for purposes of, for example, supporting his opinion on the value of a hypothetical

20   license (or any other damages theory), the prejudice to Defendants is the same as if he was

21   testifying for purposes of the lost profits claim.  Defendants will have been deprived of a full and

22   fair opportunity to rebut that evidence by Oracle's discovery misconduct.

23         The cases on which Oracle relies do not support the relief Oracle requests.  Objs. at 15.

24   None of them involves evidence precluded as a discovery sanction or suggests that an expert may

25   offer testimony based on such evidence.  Indeed, the court's decision in *Triton* was based on the

26   fact that the damages expert's calculation was *not* based on undisclosed evidence.  *Triton Corp. v.*

27   *Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir. 1996) ("Thus, his final calculation was not based on

28   undisclosed evidence ...."). Moreover, Oracle cites no case law (presumably because there is

1   none) establishing that a plaintiff can make its damages look "reasonable" by introducing

2   evidence of damages it allegedly suffered, but does not seek (or in this case is precluded from

3   seeking).  Objs. at 14-15.  The propriety of any damage claim must rise and fall on the evidence

4   of the damages claimed, not evidence of other damages that could have been, but for whatever

5   reason were not, sought in the case.  Otherwise, plaintiffs could introduce evidence of unplead

6   damages or liability theories simply to make their plead claims seem more reasonable.  That is not

7   permitted under the Federal Rules of Evidence, and for good and logical reasons should not be

8   permitted here.  Fed. R. Evid. 403 (evidence may be excluded "if its probative value is

9   substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

10  the jury, or by considerations of undue delay, waste of time, or needless presentation of

11  cumulative evidence.").

12          Oracle's complaint that it will not be able to fully describe the "relevant facts" is also

13  unfounded.  Objs. at 14.  Because the Order precludes Oracle from quantifying these damages,

14  the facts relating to them are no longer relevant and thus are inadmissible under Rule 402 in

15  addition to being precluded by the Order.  Fed. R. Evid. 402 ("Evidence which is not relevant is

16  not admissible.").  Oracle's witnesses should not be permitted to "testify to all impacts they

17  perceived" (Objs. at 16) because Oracle failed to disclose and failed to permit discovery on "all

18  impacts they perceived."  That is why Magistrate Judge Laporte imposed the preclusion sanction.

19  Order at 25-26.

20          Defendants disagree with Oracle's suggestion that this Court defer its decision on what

21  uses, if any, Oracle may make of the excluded evidence until the Court considers the parties'

22  motions in limine.  That suggestion ignores the harm to Defendants that would be caused by the

23  introduction of the excluded evidence.  The potential prejudice to Defendants warrants

24  consideration of this issue now (before fact discovery closes in five weeks and expert discovery

25  begins) rather than on the eve of trial.

26

27

28

SFI-621574v1

DEFS.' RESP. TO OBJS. TO
ORDER FOR SANCTIONS
Case No. 4:07-CV-1658 PJH (EDL)

1

## IV.    CONCLUSION

For the above reasons, the Court should deny Oracle's objections and adopt the Order in its entirety.  The Court should also deny Oracle's request that it be permitted to offer the precluded evidence for other purposes.


DATED:  October 29, 2009                              JONES DAY


                                                      By:  /s/ Elaine Wallace
                                                          Elaine Wallace
                                                      Attorneys for Defendants
                                                      SAP AG, SAP AMERICA, INC., and
                                                      TOMORROWNOW, INC.