
Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:     (650) 739-3939
Facsimile:     (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:     (832) 239-3939
Facsimile:     (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SAP AG, et al.,<br><br>                    Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**OPPOSITION TO ORACLE'S MOTION TO COMPEL PRODUCTION OF DAMAGES-RELATED DOCUMENTS AND INFORMATION**<br><br>Date:         November 24, 2009<br>Time:        9:00 AM<br>Courtroom: E, 15th Floor<br>Judge:       Hon. Elizabeth D. Laporte |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 2

III. THE REQUESTED DISCOVERY IS NOT RELEVANT OR NECESSARY TO PLAINTIFFS' HYPOTHETICAL LICENSE DAMAGES CLAIM ................................. 3

    A. Defendants Have Already Provided Sufficient Value-per-Customer Data (Interrogatory 69) ................................................................................................. 3

    B. SAP's "Highest Dollar Value Licenses" Are Irrelevant to Plaintiffs' Hypothetical License Damages Claim, and Permitting Discovery of These Licenses Would Impose an Undue Burden on Defendants ..................................... 4

        1. Licenses that Are Not Comparable in Subject Matter or in Scope Are Not Relevant to the Price of a Hypothetical License. ........................... 4

        2. SAP's "Highest Dollar Value Licenses" Are Not Comparable Benchmark Licenses Relevant to the Price of the Hypothetical License Plaintiffs Seek ................................................................................ 6

        3. Defendants Have Already Responded to Discovery Requests Seeking Information Regarding Potentially Relevant Benchmark Licenses .................................................................................................... 9

        4. Permitting Discovery of Dissimilar Licenses that Cannot Serve as Benchmarks for a Hypothetical License Would Impose an Undue Burden on Defendants ........................................................................... 11

    C. Defendants Will Provide Supplemental Research and Development Information to Moot Plaintiffs' Request for this Discovery ................................ 11

IV. DEFENDANTS WILL PRODUCE DETAILED FINANCIAL STATEMENTS AND TRIAL BALANCE INFORMATION, BUT IT IS PREMATURE TO REQUIRE PRODUCTION OF ALL DEDUCTIBLE COSTS UNTIL AFTER PLAINTIFFS SPECIFY THEIR "INFRINGER'S PROFITS" CLAIM ......................... 12

V. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Antenna Television, A.E. v. Aegean Video Inc.*,
   No. 95-CV-2328 ERK, 1996 WL 298252 (E.D.N.Y. Apr. 23, 1996) .................................. 6, 8

*Beinin v. Center for the Study of Popular Culture*,
   No. 06-2298 JW (RS), 2007 U.S. Dist. LEXIS 22518 (N.D. Cal. Mar. 16, 2007) ....... 2, 5, 6, 7

*Beinin v. Center for the Study of Popular Culture*,
   No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546 (N.D. Cal. Jun. 20, 2007) ................... 5, 7

*Bi-Rite v. Button Master*,
   578 F. Supp. 59 (S.D.N.Y. 1983) ....................................................................................... 5, 7

*Country Road Music, Inc. v. MP3.com, Inc.*,
   279 F. Supp. 2d 325 (S.D.N.Y. 2003) ............................................................................... 6, 7

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ...................................................................................... 4, 5, 7, 8

*Jarvis v. K2, Inc.*,
   486 F.3d 526 (9th Cir. 2007) .............................................................................................. 4, 8

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) .............................................................................................. 4, 5

*On Davis v. The Gap*,
   246 F.3d 152 (2d Cir. 2001) ............................................................................................. 6, 8, 9

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) .................................................................................................. 5

*Ryan v. Editions Ltd. W., Inc.*,
   C-06-4812 PVT, 2007 U.S. Dist. LEXIS 62725 (N.D. Cal. Aug. 14, 2007) ........................... 2

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ................................................................................................. 4

*Siegel v. Warner Bros. Entm't*,
   No. CV 04-08400-SGL (RZx), 2009 WL 2014164 (C.D. Cal. July 8, 2009) ............... 4, 5, 7, 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES AND STATUTES**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 2

Fed. R. Civ. P. 26(b)(2)(C)(iii) ....................................................................................................... 2

Fed. R. Civ. 56(f) ........................................................................................................................... 9

## I. INTRODUCTION

Plaintiffs' motion (the "Motion") seeks an order compelling Defendants to produce two categories of damages-related information.

First, Plaintiffs seek information purportedly relating to the amount of Plaintiffs' "fair market value license" or "hypothetical license" damages claim. This includes: (1) a supplemental response to Interrogatory No. 69, which seeks "value-per-customer data," (2) copies SAP's six "highest dollar value" intellectual property ("IP") licenses, and (3) documents sufficient to show Defendants' research and development ("R&D") expense and headcount information. *See* Motion at 2.

On October 28, 2009, Judge Hamilton heard argument and took under submission Defendants' Motion for Partial Summary Judgment Regarding Plaintiffs' Hypothetical License Damages Claim (D.I. 431, "Motion for Partial Summary Judgment"), which seeks to dismiss Plaintiffs' hypothetical license claim in its entirety.[1] If Judge Hamilton grants Defendants' motion, this Motion would become moot as to these issues.

Even if Plaintiffs are permitted to pursue a hypothetical license theory of damages, the Court should not allow discovery regarding SAP's "highest dollar value licenses" because these licenses are irrelevant to Plaintiffs' hypothetical license damages claim, and permitting discovery of these licenses would impose a significant and unjustified burden on Defendants in the last month of discovery. Denying Plaintiffs' Motion would put a stop to Plaintiffs' attempt to cherry-pick irrelevant license agreements *solely because they have high values*, so that they subsequently could be misused to inflate a hypothetical license claim.

Second, Plaintiffs move to compel documents relating to their claim for "infringer's profits." *See id.* Specifically, Plaintiffs seek production of certain financial statements "comparable" to those which the Court previously ordered Plaintiffs to produce to Defendants.

---

[1] In their Motion for Partial Summary Judgment, Defendants argue that Plaintiffs are not entitled to actual damages in the form of a hypothetical license because they cannot carry their preliminary burden to prove that, but for the alleged infringement, the parties could have or would have agreed to a license. *See* D.I. 431. Unlike Defendants' Motion for Partial Summary Judgment, which addresses the causation requirement for obtaining a hypothetical license, Plaintiffs' instant Motion addresses only the *price* of a hypothetical license, if available.

| OPPOSITION TO ORACLE'S MOTION TO COMPEL PRODUCTION OF DAMAGES-RELATED DOCUMENTS AND INFORMATION    - 1 - | Case No. 07-CV-1658 PJH (EDL) |

1  By the time this Motion is heard, Defendants expect to have produced such financial statements,
2  and therefore, this issue should be mooted.

3  In addition, Plaintiffs make a catchall request in asking the Court to order Defendants to
4  produce all evidence of "deductible expenses and elements of profit attributable to factors other
5  than the copyrighted work" in response to the infringer's profits claim. The problem with this
6  request is that the infringer's profits claim will not be known in any meaningful detail until
7  Plaintiffs produce their damages expert report on November 16. It would be premature to order
8  Defendants to produce all responsive cost information before Plaintiffs reveal the details of any
9  claim they may make. Upon receipt of Plaintiffs' expert's damages report, Defendants will make
10 every reasonable effort to promptly produce any cost information that has not already been
11 produced. Plaintiffs' insistence that Defendants divine the specifics of Plaintiffs' infringer's
12 profits claim and produce all potentially deductible cost information in advance of seeing the
13 claim is simply unworkable.

14 For the foregoing reasons, Plaintiffs' Motion should be denied.

15 **II.     LEGAL STANDARD**

16 The Federal Rules of Civil Procedure permit broad discovery "regarding any matter, not
17 privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). A
18 matter is relevant when it seeks admissible evidence or when the evidence is "reasonably
19 calculated to lead to the discovery of admissible evidence." *Id.*

20 "The scope of discovery, however, is not unlimited." *Ryan v. Editions Ltd. W., Inc.*, C-06-
21 4812 PVT, 2007 U.S. Dist. LEXIS 62725, at *3 (N.D. Cal. Aug. 14, 2007). Rather, the Court
22 "must limit" discovery when the burden or expense of the proposed discovery outweighs its likely
23 benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). Pursuant to Rule 26(b)(2)(C)(iii), courts have denied
24 motions to compel information not relevant to a party's claims or defenses. *See, e.g.*, *Ryan*, 2007
25 U.S. Dist. LEXIS 62725, at *9; *Beinin v. Center for the Study of Popular Culture*, No. 06-2298
26 JW (RS), 2007 U.S. Dist. LEXIS 22518, at *15 (N.D. Cal. Mar. 16, 2007) (denying motion to
27 compel where "[t]he probative value of the requested documents in this case . . . is minimal at
28 best").

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-
RELATED DOCUMENTS AND INFORMATION        - 2 -                Case No. 07-CV-1658 PJH (EDL)

## III. THE REQUESTED DISCOVERY IS NOT RELEVANT OR NECESSARY TO PLAINTIFFS' HYPOTHETICAL LICENSE DAMAGES CLAIM

### A. Defendants Have Already Provided Sufficient Value-per-Customer Data (Interrogatory 69).

If Judge Hamilton grants Defendants' Motion for Partial Summary Judgment, that ruling will completely moot Oracle's Interrogatory No. 69. Interrogatory 69 requests that Defendants describe "in as much detail as possible" how each Defendant projects or calculates the "value" of a customer. Plaintiffs concede that the only purported relevance of this discovery is to "support the valuation of [Plaintiffs'] fair market value license measure of damages" (sometimes also referred to as the "hypothetical license" form of actual damages). Motion at 6. Whether Plaintiffs may pursue that theory of damages at all is the subject of the pending Motion for Partial Summary Judgment, and a ruling in Defendants' favor will eliminate any basis Plaintiffs may have for seeking this information.

Regardless of whether value-per-customer data is relevant to calculating the price of a hypothetical license, the Motion should also be denied because Defendants have already provided a sufficient response to Interrogatory No. 69. Subject to and without waiving their objections, including their relevance and burden objections, Defendants provided a substantive answer, the full text of which is included in the filing under seal of Exhibit B to the Donnelly Declaration[2] at 11-12. During the meet and confer process with respect to this issue, Defendants agreed to further investigate whether any supplemental response is warranted. *See* Donnelly Decl. ¶ 3, Exhibit ("Ex.") F at 16. Defendants have made reasonable additional inquiries within SAP and have concluded that there is no additional responsive information.

Part of the problem here may be one of semantics. Plaintiffs appear to interpret Defendants' response to Interrogatory No. 69 as though Defendants only looked for responsive information that existed at the time Defendants sign up a new customer for a software license. *See* Motion at 6-7. That is a misreading of the response. In fact, the response effectively states that based upon a reasonable search, Defendants have been unable to identify the existence of the

---

[2] Declaration of Amy Donnelly in Support of Plaintiffs' Motion to Compel Production of Damages Related Documents and Information ("Donnelly Declaration" or "Donnelly Decl.").

type of information Plaintiffs appear to seek. If necessary, Defendants can provide a supplemental response that clarifies this apparent confusion.

### B. SAP's "Highest Dollar Value Licenses" Are Irrelevant to Plaintiffs' Hypothetical License Damages Claim, and Permitting Discovery of These Licenses Would Impose an Undue Burden on Defendants.

SAP's "highest dollar value licenses" for non-Oracle IP cannot bear on the price of a hypothetical license for TomorrowNow's allegedly infringing use of Oracle IP. They are not appropriate benchmark licenses; thus, there can be no benefit to permitting this discovery. Defendants have already responded to Plaintiffs' discovery requests for information regarding potentially relevant benchmark licenses, and Plaintiffs are not entitled to seek additional information regarding licenses that do not and cannot inform the price of the hypothetical license at issue here. Moreover, granting Plaintiffs' Motion to Compel would impose an undue burden.

#### 1. Licenses that Are Not Comparable in Subject Matter or in Scope Are Not Relevant to the Price of a Hypothetical License.

Courts have made clear that only licenses with *comparable* subject matter and terms are relevant to calculating the amount of a hypothetical license. As a general matter, if a copyright plaintiff is entitled to recover actual damages in the form of a hypothetical license, then the amount of the license may be calculated by considering "'what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work' . . . at the hypothetical time of sale." *Jarvis v. K2, Inc.*, 486 F.3d 526, 533-34 (9th Cir. 2007) (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)); *see also Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512, 513 n.6 (9th Cir. 1985) (noting that the willing buyer/willing seller test "seeks to approximate what a reasonable market price would have been at the time of the infringement, not afterwards"). In applying the willing buyer/willing seller test to calculate the amount of the hypothetical license, courts may consider "the compensation obtained on the open market for the license of *similar rights to other comparable literary properties*." *Siegel v. Warner Bros. Entm't*, No. CV 04-08400-SGL (RZx), 2009 WL 2014164, at *7 (C.D. Cal. July 8, 2009) (emphasis added); *see also Jarvis*, 486 F.3d at 533 (affirming award of hypothetical license

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-
RELATED DOCUMENTS AND INFORMATION        - 4 -                              Case No. 07-CV-1658 PJH (EDL)

1   based on evidence of what defendant typically paid to license photographs, prior dealings with the
2   plaintiff, and what plaintiff was typically paid to license photographs); *Polar Bear Prods., Inc. v.*
3   *Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) (affirming award of hypothetical license based on
4   evidence of the parties' license for the infringed work); *Mackie*, 296 F.3d at 913, 917 (affirming
5   award of hypothetical license based on evidence that plaintiff had "given permission for others to
6   use [the infringed work] without payment of a royalty").

7   Courts exclude as irrelevant licenses that are not comparable in subject matter or in scope
8   to the hypothetical license sought. With respect to subject matter, it is not enough that past
9   licenses involve the same general category of intellectual property; rather, to serve as benchmarks
10  for the price of a hypothetical license, past licenses must be shown to be comparable in genre as
11  well. *See Siegel*, 2009 WL 2014164, at *6, *8 (refusing to consider evidence of dissimilar film
12  licensing agreements to calculate the fair market value of a film licensing agreement for the
13  infringed work); *Frank Music*, 772 F.2d at 513 n.6 (upholding district court's exclusion of
14  "evidence of royalties other Broadway shows had earned in Las Vegas productions" as irrelevant
15  to value of hypothetical license of the Broadway show at issue); *Bi-Rite v. Button Master*, 578 F.
16  Supp. 59, 60 (S.D.N.Y. 1983) (precluding evidence of plaintiff's past licenses with non-party
17  entities to compute hypothetical license because past licenses did not "duplicate[] the goods
18  distributed by defendants"). For example, in *Siegel*, the court found that film licensing
19  agreements for popular novels, well-known musicals or "low-tier comic book character[s]" were
20  "incomparable agreements" that could not serve as benchmark licenses to calculate the fair
21  market value of a film licensing agreement for the *Superman* comic book. *Siegel*, 2009 WL
22  2014164, at *6, *8. The court reasoned that such agreements were not sufficiently similar to a
23  film licensing agreement for "a well-known comic book circa 1999 to 2002." *Id.* at *6, *8-10.

24  At least one court has denied a motion to compel production of licenses and assignments
25  because the requesting party had failed to explain how these licenses could relate to the price of a
26  hypothetical license. *See Beinin*, 2007 U.S. Dist. LEXIS 22518, at *15; *see also Beinin v. Center*
27  *for the Study of Popular Culture*, No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546, at *14-17
28  (N.D. Cal. Jun. 20, 2007) ("*Beinin II*") (overruling objections to *Beinin*). In *Beinin*, third party

Theodore Mock had photographed plaintiff and then assigned plaintiff the rights to the photograph. *Beinin*, 2007 U.S. Dist. LEXIS 22518, at *3. After plaintiff sued defendants for infringement of that photograph, defendants moved to compel documents relating to "licenses, assignments, and other similar grants of rights for the use of photographs" taken by Mock. *Id.* at *14. Magistrate Judge Seeborg denied the motion to compel, noting that "[t]he probative value of the requested documents in this case . . . is minimal at best," in light of the fact that defendants had "made no showing that [licenses and assignments of] such disconnected photographs would have other than the most tenuous relationship to the issues presented in this action." *Id.* at *15.

Similarly, with respect to scope, courts will not consider evidence of licenses with dissimilar terms as benchmarks for a hypothetical license. *See Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2003) (granting motion to strike expert report regarding the price of a hypothetical license because it was based only on a "single license between non-parties for a use different from that made by MP3.com"); *Antenna Television, A.E. v. Aegean Video Inc.*, No. 95-CV-2328 ERK, 1996 WL 298252, *4-5 (E.D.N.Y. Apr. 23, 1996) (precluding award of hypothetical license because plaintiff failed to present evidence of any comparable, benchmark licenses); *cf. On Davis v. The Gap*, 246 F.3d 152, 166 n.5 (2d Cir. 2001).

### 2. SAP's "Highest Dollar Value Licenses" Are Not Comparable Benchmark Licenses Relevant to the Price of the Hypothetical License Plaintiffs Seek.

Plaintiffs' request for SAP's "highest dollar value licenses" ignores the factual context of the hypothetical license at issue here and does not seek comparable—or relevant—benchmark licenses. For that reason, Plaintiffs' Motion to Compel these licenses should be denied.

The parties agree that the hypothetical license Plaintiffs seek as actual damages would cover TN's allegedly infringing use of Oracle IP. In their May 22, 2009 Supplemental Disclosures, Plaintiffs described the hypothetical license they are pursuing as one resulting from a negotiation between Oracle and SAP in January 2005. *See* D.I. 433-8, Ex. H at 47. In motion practice before this Court, Plaintiffs described the hypothetical license as one that "would [have] allow[ed] SAP's service subsidiary to use Oracle applications and service support intellectual property" and that would have covered any "attempt[] to convert the customer to a competing

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-
RELATED DOCUMENTS AND INFORMATION      - 6 -                    Case No. 07-CV-1658 PJH (EDL)

1  software platform and . . . daily wholesale copying and cross-use of Oracle's application software
2  and support materials." D.I. 253 at 2, 14.
3    But the licenses Plaintiffs move to compel bear no relation at all to that hypothetical
4  license. Specifically, Plaintiffs seek to compel copies of:

> . . . the three licenses, executed or in effect in the last five years, pursuant to which SAP AG and/or SAP America has been paid the largest overall sum of money for grants by SAP AG and/or SAP America to any Person for the use of SAP's Intellectual Property and of the three licenses, executed or in effect in the last five years, pursuant to which SAP AG and/or SAP America has paid the largest overall sum of money for grants of other Persons' Intellectual Property.

10  Motion at 7. The requested licenses are irrelevant to the computation of a hypothetical license
11  amount, for several reasons.
12    First, licenses for SAP IP and that of "independent third parties" (Motion at 8) are not
13  sufficiently similar in subject matter to—and thus cannot inform the price of—a hypothetical
14  license for Oracle's IP. Plaintiffs have made no effort in either their meet and confer discussions
15  with Defendants or in their Motion to articulate how the subject matter of these requested licenses
16  are at all comparable in subject matter to the particular Oracle IP alleged to have been infringed
17  by TN. *See* Donnelly Decl. ¶ 7, Ex. E at 5-6; *id.* ¶ 8, Ex. F at 14; *id.* ¶ 13, Ex. I. Plaintiffs' broad
18  request is not even limited to licenses of software, let alone software comparable to the Oracle
19  software allegedly infringed by TN. Courts have rejected just such attempts by copyright
20  plaintiffs seeking a hypothetical license to proffer evidence of licenses for dissimilar IP. *See*
21  *Frank Music*, 772 F.2d at 513 n.6; *Siegel*, 2009 WL 2014164, at *6, *8; *Bi-Rite v. Button Master*,
22  578 F. Supp. at 60; *cf. Beinin*, 2007 U.S. Dist. LEXIS 22518, at *15; *Beinin II*, 2007 U.S. Dist.
23  LEXIS 47546, at *14-17 (N.D. Cal. Jun. 20, 2007).
24    Second, Plaintiffs have not shown that the terms of SAP's "highest dollar value licenses"
25  resemble, at all, the terms of the hypothetical license at issue here, which would cover TN's
26  allegedly infringing use of Oracle IP to support Oracle's customers. As discussed above, courts
27  have rejected evidence of licenses whose terms and grants of rights are not comparable to the type
28  covered by the hypothetical license sought. *See Country Road Music*, 279 F. Supp. 2d at 330;

*Antenna Television*, 1996 WL 298252, at *4-5; *cf. On Davis*, 246 F.3d at 166 n.5. Furthermore, Plaintiffs' claim that SAP's "highest dollar value licenses" are relevant to a hypothetical license price is undermined by Plaintiffs' refusal to produce their own licenses with third parties. *See* D.I. 253 (Oracle's Opposition to Defendants' Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners) at 2, 9-10 (asserting that Oracle's partner relationships are irrelevant to the issue of hypothetical license damages because Oracle contracts with partners "for the benefit of Oracle," whereas TomorrowNow acts "in competition with Oracle"), 13 ("Oracle's contractual arrangements with its non-competing Partners are, thus, far too dissimilar from any license that the SAP Defendants would have to secure to be admissible as a benchmark in evaluating a reasonable royalty"); *see also* D.I. 176 (8/28/08 Transcript of Proceeding Before Hon. Elizabeth D. Laporte) at 51; D.I. 240-5 (2/7/08 Letter Brief to Hon. Charles A. Legge in Opposition to Defendants' Motion to Compel) at 4-5. What is good for the goose is good for the gander. Having consistently resisted discovery regarding licenses of their own IP with non-competing third parties on the basis that such discovery is irrelevant, Plaintiffs cannot plausibly claim that information about SAP's general licensing practices with non-competing third parties and its valuation of its and other non-Oracle entities' IP is relevant.

Third, Plaintiffs' request for licenses seeks evidence from time periods that cannot inform the price of the hypothetical license at issue here, which must "approximate what a reasonable market price would have been *at the time of the [alleged] infringement*"—*i.e.*, in January 2005. *Frank Music*, 772 F.2d at 512, 513 n.6 (emphasis added); *see also Jarvis*, 486 F.3d at 535 (noting the case law's "emphasis on fair market value *at the time of the infringement*") (emphasis added). To the extent that Plaintiffs' request encompasses licenses entered into after the hypothetical license would have taken effect, it seeks information irrelevant to the calculation of the hypothetical license.

Finally, contrary to Plaintiffs' assertions, SAP's "highest dollar value licenses," by definition, cannot reflect Defendants' typical "arm's length IP licensing practices." *See* Motion at 2. Rather, they represent the largest sums SAP has ever paid or received for IP. Courts have made clear that the amount of a hypothetical license is not to be determined by the highest price

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-
RELATED DOCUMENTS AND INFORMATION         - 8 -                              Case No. 07-CV-1658 PJH (EDL)

that a plaintiff might have extracted, but what a reasonable price would have been to license the allegedly infringed work for the use actually made by defendant. *See Siegel*, 2009 WL 2014164, at *13 ("Significantly, market valuation is not tied to finding what was the *best* price that DC comics could have obtained for the film rights to the Superman property, but what a 'reasonable' price would have been paid for it by a willing buyer."); *On Davis*, 246 F.3d at 166 n.5 ("Furthermore, the fair market value to be determined is not of the highest use for which plaintiff might license but the use the infringer made."). Ultimately then, any attempt to compare SAP's "highest dollar value licenses" to the hypothetical license at issue here "would be truly comparing apples to oranges." *Siegel*, 2009 WL 2014164, at *10.

Plaintiffs also suggest that SAP's willingness to enter into IP licenses with non-Oracle entities supports the theory that the parties would have agreed to a hypothetical license covering TN's allegedly infringing conduct. *See* Motion at 2, 7. This claim, which pertains to Defendants' Motion for Partial Summary Judgment, has no merit, as evidenced by Plaintiffs' failure to raise this argument in their Opposition to the Motion for Partial Summary Judgment and their failure to move pursuant to Fed. R. Civ. 56(f). The mere fact that SAP has entered into IP licensing deals with other entities is irrelevant to whether *these* parties would have agreed to *this* hypothetical license. Similarly, the fact that Defendants have argued in their Motion for Partial Summary Judgment that neither Oracle nor SAP would have agreed to a hypothetical license covering TomorrowNow's allegedly infringing conduct does not suddenly render relevant SAP's practices, over the last five years, in granting and obtaining dissimilar licenses for non-Oracle IP.

Because the "highest dollar value licenses" Plaintiffs seek are not comparable in subject matter or scope to the hypothetical license at issue here, Plaintiffs' motion to compel these licenses should be denied.

### 3. Defendants Have Already Responded to Discovery Requests Seeking Information Regarding Potentially Relevant Benchmark Licenses.

Plaintiffs' request for SAP's "highest dollar value licenses" is not only meritless but also unnecessary. Defendants have already responded to discovery requests seeking information regarding potentially relevant benchmark licenses. For example, Plaintiffs' Request for

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-
RELATED DOCUMENTS AND INFORMATION           - 9 -                    Case No. 07-CV-1658 PJH (EDL)

1  Production No. 23 requests:

2  > [D]ocuments relating to licenses between SAP and any "independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications or to any license Defendants deem comparable to the type of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants.

6  D.I. 329 at 3 n.2. In connection with the parties' agreement regarding Oracle's June 30, 2009

7  Motion to Compel Production of Documents Related to Damages Model ("June 30, 2009 Motion

8  to Compel") (D.I. 329), Defendants "confirm[ed] that . . . there are no SAP acquisitions or SAP

9  licenses that would serve as an appropriate benchmark for a hypothetical license in this case, and

10  therefore there are no documents responsive to this request." *See* D.I. 337 (Declaration of Joshua

11  L. Fuchs in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Production of

12  Documents Related to Damages Model) ¶ 23, Ex. K at 4, 6.

13  Similarly, Plaintiffs' Interrogatory No. 78 asks Defendants to:

14  > Identify with particularity all licenses, contracts, or agreements between SAP AG, SAP America or any affiliated entity or subsidiary and any independent (non-affiliated, non-partner) software support service provider for SAP branded software applications, including without limitation the dates, parties, and subject matter of the licenses, contracts, or agreements.

18  *See* Donnelly Decl. ¶ 7, Ex. E at 5. Consistent with the parties' agreement regarding Plaintiffs'

19  June 30, 2009 Motion to Compel, Defendants have supplemented their response to this

20  interrogatory by confirming that "SAP has not entered into any licenses with independent (non-

21  affiliated, non-partner) software support service providers for SAP-branded software applications

22  or any licenses that are comparable to the type of license that is alleged to have been required

23  between Oracle and TomorrowNow for the type of activities engaged in by Defendants." *Id.*

24  Having confirmed that SAP has not entered into any licenses that would serve as benchmarks for

25  a hypothetical license in this case, Defendants have no obligation to provide information

26  regarding other licenses that do not and cannot serve as benchmarks to calculate the price of a

27  hypothetical license. There can be no benefit to producing SAP's "highest dollar value licenses,"

28  and Plaintiffs' motion to compel this irrelevant discovery should be denied.

### 4. Permitting Discovery of Dissimilar Licenses that Cannot Serve as Benchmarks for a Hypothetical License Would Impose an Undue Burden on Defendants.

The undue burden and expense to Defendants that would result from permitting discovery of licenses not comparable to a hypothetical license significantly outweighs the likely benefit of such discovery. Although the "highest dollar value licenses" Plaintiffs move to compel represent only the largest sums SAP has ever paid or received for IP, Plaintiffs will attempt to offer these licenses as evidence of "Defendants' . . . arms' length IP licensing practices." Motion at 2. Despite the fact that SAP's "arms' length IP licensing practices" in the abstract cannot inform the price of the specific hypothetical license sought here, were the Court to permit discovery of SAP's "highest dollar value licenses," Defendants would be hard pressed, at this late date, to begin and complete the analysis necessary to rebut Plaintiffs' claim that these licenses should govern the price of a hypothetical license. In theory, if discovery were opened into all license agreements—whether similar or dissimilar to the hypothetical license Plaintiffs seek—Defendants would be put to the burden of reviewing and analyzing the value, subject matter, and terms of the hundreds of incoming and outgoing SAP IP licensing agreements to contextualize SAP's highest dollar value licenses. The burden on Defendants to perform this research and analysis is vast and unjustified in light of the questionable value of the requested discovery. Thus, Plaintiffs' motion to compel production of SAP's "highest dollar value licenses" should be denied.

### C. Defendants Will Provide Supplemental Research and Development Information to Moot Plaintiffs' Request for this Discovery.

Plaintiffs seek an order compelling production of documents "sufficient to show" certain R&D expense and headcount information to the extent available. Motion at 8-10. Here again, Plaintiffs concede that the only purported relevance of this discovery is to "support the valuation of [Plaintiffs'] fair market value license measure of damages"[3] (Motion at 8), and a ruling for

---

[3] As described in detail in their briefing on the Motion for Partial Summary Judgment, Defendants dispute that information regarding "how much Defendants avoided spending and the risks and time delay they avoided by infringing" (Motion at 9) is relevant to a hypothetical license; specifically, Defendants argue that Plaintiffs are not entitled to a hypothetical license based on "saved acquisition costs" because such a theory of recovery is inconsistent with the Copyright Act and Ninth Circuit law. *See* D.I. 431 at 16-20; D.I. 504 at 12-15.

Defendants on the pending Motion for Partial Summary Judgment will eliminate Plaintiffs' basis for seeking this information.

Subject to and without waiving their objections, Defendants previously produced R&D expense information, and, in response to Plaintiffs' recent requests for additional information, Defendants have agreed to make a supplemental production. Defendants expect to complete that production before the hearing on this Motion and anticipate that this request will thereby become moot.

### IV. DEFENDANTS WILL PRODUCE DETAILED FINANCIAL STATEMENTS AND TRIAL BALANCE INFORMATION, BUT IT IS PREMATURE TO REQUIRE PRODUCTION OF ALL DEDUCTIBLE COSTS UNTIL AFTER PLAINTIFFS SPECIFY THEIR "INFRINGER'S PROFITS" CLAIM

Plaintiffs' suggestion that Defendants have been dilatory in producing financial information is baseless. In fact, Defendants have produced a great deal of financial information, including, for example, TomorrowNow's entire general ledger, which Plaintiffs previously appeared to consider satisfactory. It was only *after* Plaintiffs were ordered to produce certain financial information in response to Defendants' motion to compel (D.I. 463) that Plaintiffs made new and more specific requests for comparable financial reports.

In addition, Plaintiffs have made a catchall request for "any other evidence of deductible expenses and elements of profit attributable to factors other than the copyrighted works that Defendants may rely upon" in responding to Plaintiffs' infringer's profits claim. Plaintiffs purported justification for this order is their document request to SAP AG seeking "[a]ll Documents that You may rely upon or introduce at trial in this litigation." Motion at 14 n.8; Donnelly Decl. ¶ 5, Ex. D (Oracle's Request for Production No. 60).

In response to these more recent requests, Defendants have agreed to produce financial statements and trial balance information and will produce this information prior to the hearing on this Motion. The difficulty, however, is that Plaintiffs' demands present a chicken and egg dilemma. Plaintiffs have not specified any details of their infringer's profits claim, and, as a result, Defendants cannot divine which elements of cost might be appropriately applied. When pressed on this issue in the meet and confer process, Plaintiffs merely made the sweeping

assertion that Plaintiffs would be "seeking infringer's profits for the application sales revenues associated with the 'List of 83' customers." Donnelly Decl. ¶ 11, Ex. H at 1. Plaintiffs have not specified any particular applications, time frames or customers. Thus, the generalized assertion is too vague and Defendants cannot be reasonably required to produce every detail of offsetting cost that may be appropriate based on that assertion alone. Rather, Defendants must be given an opportunity to assess Plaintiffs' *actual* infringer's profits claim when it is disclosed by their damages expert on November 16.

Judge Hamilton's Revised Case Management and Pretrial Order provides that opening expert reports are due on November 16, 2009, and rebuttal expert reports are not due until February 26, 2010. *See* D.I. 325. After receiving Plaintiffs' opening reports, Defendants will make diligent efforts to disclose any additional cost information that has not been previously provided. Ultimately then, Plaintiffs' request to compel "any other evidence of deductible expenses and elements of profit attributable to factors other than the copyrighted works that Defendants may rely upon" is premature, and the Motion should be denied as to this request.

**V.    CONCLUSION**

For the foregoing reasons, Defendants request that Plaintiffs' Motion be denied in its entirety.

Dated: November 3, 2009            JONES DAY

                                   By: /s/ Jason McDonell
                                        Jason McDonell

                                   Attorneys for Defendants

SFI-622004v1

OPPOSITION TO ORACLE'S MOTION TO
COMPEL PRODUCTION OF DAMAGES-                              Case No. 07-CV-1658 PJH (EDL)
RELATED DOCUMENTS AND INFORMATION        - 13 -