

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA  94303
   Telephone:    (650) 739-3939
10 Facsimile:    (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:    (832) 239-3939
15 Facsimile:    (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19            UNITED STATES DISTRICT COURT

20           NORTHERN DISTRICT OF CALIFORNIA

21                  OAKLAND DIVISION

22 ORACLE USA, INC., et al.,          Case No. 07-CV-1658 PJH (EDL)

23            Plaintiffs,             **REPLY TO PLAINTIFFS'
                                      OPPOSITION TO DEFENDANTS'
24       v.                           MOTION FOR PARTIAL SUMMARY
                                      JUDGMENT REGARDING
25 SAP AG, et al.,                    PLAINTIFFS' HYPOTHETICAL
                                      LICENSE DAMAGES CLAIM
26            Defendants.             [UNREDACTED VERSION OF D.I.
                                      504]
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF REPLY ARGUMENT ................................... 1

II.     PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROOF TO OBTAIN
        ACTUAL DAMAGES IN THE FORM OF A "HYPOTHETICAL LICENSE" .............. 2

        A.      Proof of Causation is a Prerequisite to Recovering under an Alleged
                "Hypothetical License." ........................................................................ 2

        B.      This Is Not a Patent Case – Plaintiffs Are Not Automatically Entitled to a
                Royalty or a Hypothetical License .......................................................... 5

III.    PLAINTIFFS IDENTIFY NO GENUINE ISSUES OF MATERIAL FACT ................... 6

        A.      The Parties Agree on the Facts Material to Defendants' Motion........................... 6

        B.      Plaintiffs' Effort to Discredit or Disclaim the Sworn Testimony of Their
                Executives Does Not Create a Dispute of Material Fact....................................... 6

                1.      The testimony is clear ................................................................. 7

                2.      The sworn, prior deposition testimony is admissible................................ 8

                3.      Plaintiffs' "sham" declarations do not create an issue of material
                        fact............................................................................................. 9

        C.      Mr. Plattner's Testimony Shows that There Would Have Been No License........ 12

        D.      The Evidence on which Plaintiffs' Expert Will Rely to Calculate the Price
                of a Hypothetical License Is Not Material to Defendants' Motion....................... 12

IV.     "SAVED ACQUISITION COSTS" ARE NOT PERMITTED UNDER THE
        COPYRIGHT ACT AND NINTH CIRCUIT PRECEDENT........................................... 12

V.      CONCLUSION ........................................................................................... 15

SVI-72849v1

REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 07-CV-1658 PJH (EDL)

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Baker v. Urban Outfitters, Inc.*,
  254 F. Supp. 2d 346 (S.D.N.Y. 2003)................................................................ 3, 4

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
  887 F.2d 399 (2nd Cir. 1989)........................................................... 3, 4, 14, 15

*Deltak, Inc. v. Advanced Sys., Inc.*,
  767 F.2d 357 (7th Cir. 1985)........................................................ 5, 13, 14, 15

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)............................................................................................ 5

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
  25 F. Supp. 2d 395 (S.D.N.Y. 1998)........................................................ 3, 4, 14

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985)............................................................................ 2, 3

*Jarvis v. K2, Inc.*,
  486 F.3d 526 (9th Cir. 2007).......................................................................... 2, 3, 4

*Kennedy v. Allied Mut. Ins. Co.*,
  952 F.2d 262 (9th Cir. 1991)........................................................................ 6, 11

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002)...................................................................... 2, 4, 6

*McRoberts Software, Inc. v. Media 100, Inc.*,
  329 F.3d 557 (7th Cir. 202)................................................................................ 3

*Multitherm Corp. v. Fuhr*, Civ. A. No. 89-6151, 1991 WL 146233,
  (E.D. Pa. July 24, 1991) .................................................................................... 14

*Northwest Airlines, Inc. v. American Airlines, Inc.*,
  870 F. Supp. 1504 (D. Minn. 1994)................................................................... 14

*Nucor Corp. v. Tennessee Forging Steel Serv., Inc.*,
  513 F.2d 151 (8th Cir. 1975)............................................................................. 13

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)...................................................................... passim

*Pacific Ins. Co. v. Kent*,
  120 F. Supp. 2d 1205 (C.D.  Cal. 2000) ............................................................ 11

*Persistence Software, Inc. v. Object People, Inc.*,
  128 F. Supp. 2d 623 (N.D. Cal. 2000) .............................................................. 11

*Persistence Software, Inc. v. Object People, Inc.*,
  200 F.R.D. 626 (N.D. Cal. 2001) ...................................................................... 11

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004).................................................................... 2, 3, 13

*Quinn v. City of Detroit*,
  23 F. Supp. 2d 741 (E.D. Mich. 1998).............................................................. 14

*Roeslin v. District of Columbia*,
  921 F. Supp. 793 (D.D.C. 1995) ....................................................................... 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*,
   367 F.2d 236 (9th Cir. 1966)....................................................................................... 2

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977)................................................................................. 4, 13

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..................................................................................................... 5

*Sousa v. Roque*,
   578 F.3d 164 (2d Cir. 2009)......................................................................................... 4

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
   439 F. Supp. 2d 758 (E.D. Mich. 2006)..................................................................... 15

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
   488 F.3d 352 (6th Cir. 2007)..................................................................................... 15

*U.S. v. Kearney*,
   560 F.2d 1358 (9th Cir. 1977)..................................................................................... 9


**Statutes**

17 U.S.C. § 504.................................................................................................................. 2, 13

35 U.S.C. § 284....................................................................................................................... 5

Fed. R. Civ. P. 32................................................................................................................... 9

Fed. R. Civ. P. 56................................................................................................................... 6


**Other Authorities**

4 *Nimmer on Copyright* (Matthew Bender, rev. ed.) .......................................................... 5, 13

6 *Patry on Copyright* (Thomson West 2009)......................................................................... 15

1    **I.      INTRODUCTION AND SUMMARY OF REPLY ARGUMENT**

2            Plaintiffs' Opposition confirms that the material facts are not in dispute and that

3    Defendants' Motion should be granted.  Plaintiffs emphasize that Oracle and SAP are direct,

4    fierce competitors.  They acknowledge that Oracle has never given any entity, let alone SAP, a

5    license covering the allegedly infringing activities at issue in this case.  The sworn deposition

6    testimony of Oracle's three top executives makes it clear that Oracle never would have offered

7    such a license to arch-rival SAP; this testimony is not undermined by the inadmissible, self-

8    serving declarations submitted with the Opposition.  Under the governing law, the undisputed

9    facts establish that Plaintiffs cannot meet their burden to prove that the parties would have

10   agreed to a license, which is the showing necessary to recover actual damages in the form of a

11   hypothetical license.

12           In Opposition, Plaintiffs incorrectly argue that awarding a hypothetical license is a one-

13   step process, *i.e.*, simply determining its amount by applying the "willing buyer/willing seller"

14   test (or alternatively, by awarding legally impermissible "saved acquisition costs").  The

15   Copyright Act and Ninth Circuit precedent, however, establish that causation is the threshold

16   inquiry for all actual damages claims, including a hypothetical license.  The "willing

17   buyer/willing seller" test is the second step in a two-step process, reached only if causation is

18   first established by a showing that the parties would have agreed to a license (in contrast to the

19   reasonable royalty of patent law, on which Plaintiffs incorrectly rely).

20           Defendants' Motion addresses only the first step of this two-step process—the legal

21   question of causation.  The Motion does not seek a ruling regarding the amount of a hypothetical

22   license.  Plaintiffs all but ignore Defendants' causation argument, summarily dismissing it in one

23   footnote.  They devote most of their Opposition and the entire Meyer Declaration and extensive

24   exhibits to describing how they would, at trial, attempt to set a price for a hypothetical license.

25   Plaintiffs miss the point of the Motion, attacking an argument that Defendants do not make.  As a

26   result, the majority of their Opposition, and all of the Meyer Declaration and exhibits, are simply

27   irrelevant.  Defendants' Motion should be granted.

28

1
2
3

II.     **PLAINTIFFS HAVE NOT MET THEIR BURDEN OF PROOF TO OBTAIN ACTUAL DAMAGES IN THE FORM OF A "HYPOTHETICAL LICENSE"**

      A.     <u>**Proof of Causation is a Prerequisite to Recovering under an Alleged "Hypothetical License."**</u>

4        Plaintiffs' contention that there is no "additional burden of showing causation"

5    (Opposition at 3 n.1) for a hypothetical license is contrary to the plain language of the Copyright

6    Act and Ninth Circuit precedent.  A hypothetical license is but a species of actual damages, and

7    copyright law applies general tort principles of causation to determine actual damages and

8    infringer's profits, however they may ultimately be measured.  The Ninth Circuit recognizes that

9    the Copyright Act, 17 U.S.C. § 504(b), imposes this causation requirement and applies it in cases

10    involving both actual damages and infringer's profits.  *See Polar Bear Prods., Inc. v. Timex*

11    *Corp.*, 384 F.3d 700, 708 (9th Cir. 2004); *Jarvis v. K2, Inc.*, 486 F.3d 526, 533-34 (9th Cir.

12    2007); *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002); *Frank Music Corp. v. Metro-*

13    *Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (citing *Shapiro, Bernstein & Co. v.*

14    *4636 S. Vermont Ave., Inc.*, 367 F.2d 236, 241 (9th Cir. 1966)).  As the Ninth Circuit explains:

15
16
17
18

> From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits.  We take this opportunity to reaffirm the principle that a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages.

19    *Polar Bear*, 384 F.3d at 708; *see also* Motion at 8-10.

20        The Ninth Circuit Model Civil Jury Instructions cited by Plaintiffs affirm this causation

21    requirement.  Both Model Instructions 5.1 and 17.23 (presented together in a copyright case)

22    indicate that the jury may only award damages "caused" by the defendant's infringement.  *See*

23    Ninth Circuit Model Civil Jury Instruction 5.1 (Damages-Proof) and 17.23 (Copyright Damages-

24    Actual Damages) (2007).  Plaintiffs' claim that the Ninth Circuit does not require causation to

25    obtain actual damages in the form of a hypothetical license (Opposition at 3-4 n.1) is unfounded.

26        Accordingly, under Ninth Circuit law, to obtain actual damages in the form of a

27    hypothetical license, a plaintiff may not simply claim the value of a work has been diminished by

28    an alleged infringer's use and automatically claim a license.  Rather, a plaintiff must prove that,

- 2 -

1  but for infringement, the parties would have agreed to a license.  *See Polar Bear*, 384 F.3d at

2  708; *Jarvis*, 486 F.3d at 533; *Frank Music*, 772 F.2d at 514; *Business Trends Analysts, Inc. v.*

3  *Freedonia Group, Inc.*, 887 F.2d 399, 405-06 (2nd Cir. 1989).

4        Courts in the Ninth Circuit and the Second Circuit (which applies this same causation

5  analysis) consider several factors when determining whether the parties would have agreed to a

6  license, including whether: (1) the parties are direct competitors, (2) the parties sell goods in the

7  same market, (3) the parties have ever entered into a similar license and (4) the plaintiff has ever

8  granted a similar license.  *See Polar Bear*, 384 F.3d at 711; *Jarvis*, 486 F.3d at 535 n.8; *Business*

9  *Trends*, 887 F.2d at 405-06 (rejecting hypothetical license in case where parties were direct

10  competitors); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 161-62 (2d Cir. 2001) (allowing

11  hypothetical license where parties were non-competitors who could have agreed on a license);

12  *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 25 F. Supp. 2d 395, 401-02 (S.D.N.Y.

13  1998) (same); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 357-58 (S.D.N.Y. 2003)

14  (same).  As explained in the Motion, applying these factors to the undisputed facts of this case

15  establishes that the parties never would have agreed to a license.  *See* Motion at 11-14.

16        In response, Plaintiffs mischaracterize Defendants' argument.  Defendants do not claim,

17  as Plaintiffs argue, that direct competitors may never receive actual damages in the form of a

18  hypothetical license.  Rather, it is where the parties directly compete in the same market and

19  there is no evidence that they would or could have agreed to a license for the allegedly infringed

20  work that a court will not permit actual damages to be measured by a hypothetical license.  *See*

21  *Jarvis*, 486 F.3d at 533 (hypothetical license award available only where "the infringer could

22  have bargained with the copyright owner"); *McRoberts Software, Inc. v. Media 100, Inc.*, 329

23  F.3d 557, 567 (7th Cir. 202) (contrary to Plaintiffs' assertion, *McRoberts* allowed a hypothetical

24  license where parties *were not* direct competitors and did have a past copyright license for the

25  work at issue); *Business Trends*, 887 F.2d at 405, 407; *Encyclopedia Brown*, 25 F. Supp. 2d 395

26  at 401-02.  This makes logical sense, as actual damages in the form of *lost profits* are by their

27  very nature designed to compensate a plaintiff who lost sales to a competitor resulting from

28  infringement, whereas actual damages in the form of a hypothetical license become relevant in

1   situations where a plaintiff has no claim for lost profits (unlike the case herein).

2          Plaintiffs challenge Defendants' reliance on the Second Circuit case *Business Trends*,

3   claiming that it is inconsistent with the later-decided *On Davis*.  Even if true, the earlier *Business

4   Trends* decision controls.  *See Sousa v. Roque*, 578 F.3d 164, 173 n.7 (2d Cir. 2009) (stating that

5   a later Court of Appeals panel cannot overrule an earlier panel decision).  In any event, *Business

6   Trends* and *On Davis* together instruct that a hypothetical license may be appropriate in cases

7   like *On Davis*, where "the defendant [is] a potential licensee of the plaintiff" and not a

8   competitor, but is inappropriate in cases like *Business Trends*, where parties directly compete

9   and there is no evidence that they would have agreed to a license for the allegedly infringed work.

10  *Id*. at 162.  *On Davis* repeatedly emphasizes this pivotal distinction, which Plaintiffs ignore.  *See,

11  e.g.*, *id.* at 162 ("In *Business Trends*, the plaintiff and defendant were competitors . . . —not a

12  relationship where the defendant was a potential licensee of the plaintiff."); *id.* (distinguishing

13  *Business Trends* as being "heavily influenced by the particular facts of that case"); *id* at 163

14  (similar).  Moreover, this distinction is firmly entrenched in Second Circuit law.  *See Baker*, 254

15  F. Supp. 2d at 357-58 (hypothetical licenses allowed in cases "factually similar to the situation in

16  *On Davis*," *i.e.*, cases where, "unlike in *Business Trends*, the parties are not direct competitors");

17  *see Encyclopedia Brown*, 25 F. Supp. 2d at 401-02 (requiring that "a sale or licensing would

18  have occurred," as where parties "are not direct competitors").

19         Similarly, in arguing that causation principles do not apply to hypothetical license

20  damages, Plaintiffs misunderstand the role of the willing buyer/willing seller test.  As

21  Defendants explain in their Motion, courts consider "what a willing buyer would have been

22  reasonably required to pay to a willing seller for plaintiff's work" to determine the price of a

23  hypothetical license—not to decide the threshold issue of causation.  *See Jarvis*, 486 F.3d at 533

24  (*quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174

25  (9th Cir. 1977)).  Courts employ an "objective, not a subjective analysis" to ensure that the

26  amount of the hypothetical license is based on objective evidence, such as the parties' past

27  course of dealing, rather than on undue speculation.  *Mackie*, 296 F.3d at 917.  That the amount

28  of a hypothetical license must be proven with objective evidence does not mean, as Plaintiffs

1    suggest, that a plaintiff seeking hypothetical license damages is exempt from the burden of

2    proving causation; the objective evidence is considered only if Plaintiffs can get over the

3    threshold issue of proving that there could have been a license.  *Cf. On Davis*, 246 F.3d at 171-72.

4    As shown in the Motion, Plaintiffs cannot meet this burden.

5              **B.       This Is Not a Patent Case – Plaintiffs Are Not Automatically Entitled to a
6                         Royalty or a Hypothetical License.**

7          Plaintiffs attempt to evade their burden to prove that the parties would have agreed to a

8    license by analogizing the determination of a reasonable royalty under patent law with the

9    determination of a hypothetical license under copyright law.  Although courts occasionally

10   analogize patent law to copyright law on some issues, these are two different statutory regimes

11   that conflict in important respects.  *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*,

12   464 U.S. 417, 439 n.19 (1984).  Copyright and patent law "are not identical twins," so courts

13   should exercise caution when importing concepts from one body of law into the other.  *Id.*; *see*

14   *also Eldred v. Ashcroft*, 537 U.S. 186, 216-17 (2003).

15         Damages causation in copyright cases is one topic where analogy between copyright and

16   patent law is inappropriate.  The Patent Act specifically requires a reasonable royalty as a floor

17   for damages, devoid of a causation requirement.  *See* 35 U.S.C. § 284 (damages must be

18   "adequate to compensate for the infringement, but in no event less than a reasonable royalty for

19   the use of the invention by the infringer . . . ").  In other words, a reasonable royalty is

20   guaranteed in patent cases, whereas the Copyright Act requires proof of causation to obtain a

21   hypothetical license.  *See* Motion at 10-11.  The passage of *Nimmer* cited by Plaintiffs is not to

22   the contrary.  *Nimmer* does not advocate the importation of patent law concepts into the

23   copyright damages regime wholesale.  *See* 4 *Nimmer on Copyright* (Matthew Bender, rev. ed.)

24   ("*Nimmer*") at §14.02[B][1] at 14-22.  Rather, as part of a larger discussion about the propriety

25   of *Deltak*'s holding, *Nimmer* merely notes that there are "similarities" between a reasonable

26   royalty calculation and a value of use calculation.  *Id.*  That issue is irrelevant to Defendants'

27   Motion, partly because *Deltak* is irrelevant, as shown below, but mostly because Plaintiffs do not

28   get to quibble about valuation when they cannot get over the threshold requirement of causation.

- 5 -

1  III.    **PLAINTIFFS IDENTIFY NO GENUINE ISSUES OF MATERIAL FACT**

2          Partial summary judgment is an appropriate vehicle for resolving the threshold question

3  of causation regarding copyright damages. *See, e.g.*, *Mackie*, 296 F.3d at 916 (granting

4  defendant's motion for partial summary judgment on indirect profits for lack of causation).

5  When the party requesting summary judgment satisfies its initial burden to show that there are

6  no genuine issues of material fact, the nonmoving party must "produce specific evidence . . . to

7  show that the dispute exists." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 265 (9th Cir. 1991)

8  (citing Fed. R. Civ. P. 56(e)).  Plaintiffs' Opposition confirms that the facts material to

9  Defendants' Motion are not in dispute and that the Motion should be granted.

10         A.      **The Parties Agree on the Facts Material to Defendants' Motion.**

11         Plaintiffs agree that Oracle and SAP are "fierce competitors" in the applications market.

12  Opposition at 15, 17.  Plaintiffs agree that this competition intensified as a result of Oracle's

13  PeopleSoft and Siebel acquisitions, both of which were directed at competing with SAP.  *See id.*

14  at 17, 19.  And, the parties agree, SAP purchased TomorrowNow as one response to Oracle's

15  acquisition of PeopleSoft.  *See id.* at 18-19.

16         Plaintiffs also state that Oracle has "never licensed any of the material [allegedly]

17  infringed to a competitor, or to anyone for use in the manner in which Defendants [allegedly]

18  infringed it." *Id.* at 19.  Plaintiffs explain "that Oracle doesn't license the [allegedly] infringed

19  material to others to use in competition against it, but keeps it exclusive for its own proprietary

20  use." *Id.* at 15.  The parties' direct competition and Oracle's admitted refusal to license to

21  competitors are alone enough to establish that Plaintiffs cannot prove that Oracle would have

22  granted a license for the conduct Oracle's executives characterize as "stealing our stuff." *See*

23  Motion at 11-13; Declaration of Tharan Gregory Lanier in Support of Defendants' Motion for

24  Partial Summary Judgment Regarding Plaintiffs' Hypothetical License Damages Claim ("Lanier

25  Decl.") ¶ 1, Ex. A (March 27, 2009 Safra Catz Deposition ("Catz Depo.")) at 10:20-23, 20:10-14.

26         B.      **Plaintiffs' Effort to Discredit or Disclaim the Sworn Testimony of Their**
                   **Executives Does Not Create a Dispute of Material Fact.**
27

28         Plaintiffs offer the declarations of Larry Ellison and Safra Catz, claiming that their

1    testimony was somehow the product of too clever questioning or objectionable on some other

2    basis.  That claim is baseless.  The sworn deposition testimony of Oracle's leaders should be

3    heard, undiluted by the inadmissible declarations submitted with the Opposition.

4                    1.    The testimony is clear.

5           Plaintiffs incorrectly contend that Oracle's top executives were confused by artful

6    questioning and did not understand that they were being asked about a license to cover the

7    conduct at issue in this case.  Contrary to Plaintiffs' suggestion, all three Oracle executives were

8    directly asked about a hypothetical license that would cover TomorrowNow's allegedly infringing

9    conduct.  It is inconceivable that Mr. Ellison, Ms. Catz or Mr. Phillips—reputedly three of the

10   smartest business people in the world—would have been confused by these simple questions.  For

11   example, Mr. Ellison was asked:

12          Q. Had SAP come to you in January of 2005 and said, all right, we—*here's what
            TomorrowNow does, we'd like a license*, would you have given them a license?
13

14   Lanier Decl. ¶ 3, Ex. C (May 5, 2009 Larry Ellison Deposition ("Ellison Depo.")) at 74:12-15

15   (emphasis added).  Mr. Ellison did not request clarification, and Oracle's counsel did not object.

16   *Id*. ¶ 3, Ex. C (Ellison Depo.) at 74:12-24.  Rather, Mr. Ellison responded that such a license

17   would have allowed SAP to "basically have all of our IP."  *Id.* ¶ 3, Ex. C (Ellison Depo.) at 74:12-

18   24.  It was Mr. Ellison who suggested during this line of questioning that granting this license

19   would have meant "saying good-bye to the applications business forever" at a time when "Oracle

20   wanted to be in the applications business."  *Id.* ¶ 3, Ex. C (Ellison Depo.) at 80:3-81:9.  And Mr.

21   Ellison testified in no uncertain terms that Oracle would not have "entertained" an offer from

22   "TomorrowNow doing its TomorrowNow thing."  *Id.* ¶ 3, Ex. C (Ellison Depo.) at 81:10-82:2.

23          Similarly, Ms. Catz was directly asked about the hypothetical license at issue here—not, as

24   Plaintiffs' claim, a license in the abstract for Oracle's PeopleSoft customer base:

25          Q. . . . If SAP had called up in January, February of '05, right after its acquisition, and
            said, *we want a license to do the things that are alleged in the complaint*, who would have
26          negotiated that license for Oracle?

27   *Id.* ¶ 1, Ex. A (Catz Depo.) at 46:7-11 (emphasis added); *see also id.* ¶ 1, Ex. A (Catz Depo.) at

28   46:12-20 (responding that Catz, Ellison and Oracle's lawyers would have negotiated the license).

1    Ms. Catz continued to answer questions about this hypothetical license throughout her deposition,

2    and it is this hypothetical license that Ms. Catz would have valued by considering the cost to

3    acquire PeopleSoft and for which there were "[m]any circumstances" in which "Oracle would

4    have refused to give that license." *Id.* ¶ 1, Ex. A (Catz Depo.) at 47:3-13, 159:18-23.

5              Mr. Phillips also was asked about the hypothetical license at issue here:

6              Q. Back in January of 2005, when SAP bought TomorrowNow, had SAP come to Oracle
              and said, *we'd like a license for TomorrowNow to do what it does*, who would have made
7              the decision for Oracle, whether or not to grant that license?

8    *Id.* ¶ 2, Ex. B (April 17, 2009 Charles Phillips Deposition ("Phillips Depo.")) at 117:16-20

9    (emphasis added); *see also id.* ¶ 2, Ex. B (Phillips Depo.) at 117:16-22 (responding that "Board

10   approval" would have been required for Oracle to agree to a hypothetical license "for

11   TomorrowNow to do what it does").  Mr. Phillips too continued to answer questions about this

12   very hypothetical license throughout his deposition.  Mr. Phillips would have considered "the

13   impact on our business by granting a competitor intellectual property, by not having those

14   customers directly ourselves, lost license sales, and kind of reflect the point of view of what does

15   it mean for ongoing future sales for the field if we do this." *Id.* ¶ 2, Ex. B (Phillips Depo.) at

16   118:16-23.  It was Mr. Phillips who described the hypothetical license as potentially having an

17   impact on Oracle's customer base "in perpetuity." *Id.* ¶ 2, Ex. B (Phillips Depo.) at 119:2-9.

18             Oracle's executives plainly understood that Defendants' counsel was asking about a

19   hypothetical license covering TomorrowNow's allegedly infringing activities.  Their testimony,

20   described above and in the Motion (at 3-4), is consistent with Plaintiffs' formal disclosures about

21   their hypothetical license damages claim.  *See id.* ¶ 8, Ex. H (May 22, 2009 Plaintiffs'

22   Supplemental and Amended Initial Disclosures ("Supplemental Disclosures")) at 47.  Plaintiffs'

23   attempt to create ambiguity in their executives' testimony where none exists does not create a

24   genuine issue of fact.  (Should the Court have any concerns about the fairness or clarity of the

25   questioning, Defendants are prepared to submit the video excerpts of the executives' testimony.)

26             2.        The sworn, prior deposition testimony is admissible.

27             The Court should overrule Plaintiffs' evidentiary objections (*see* D.I. 488) because they

28   are mostly waived and all without merit.  Plaintiffs object to the admissibility of the Ellison

SVI-72849v1                                  - 8 -        REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
                                                          MOTION FOR PARTIAL SUMMARY JUDGMENT
                                                          Case No. 07-CV-1658 PJH (EDL)

1   Deposition at 73:25-87:17 and 114:16-25, claiming that Defendants' questions are vague and

2   ambiguous, call for speculation, pose an incomplete hypothetical, lack foundation and call for an

3   improper lay opinion. *See* D.I. 488 at 4-5. However, because Plaintiffs' counsel did not make

4   any objections during the cited portions of Mr. Ellison's deposition, Plaintiffs waived these form

5   objections. *U.S. v. Kearney*, 560 F.2d 1358, 1364 n.6 (9th Cir. 1977); *see also* Fed. R. Civ. P.

6   32(d)(3)(B). Likewise, Plaintiffs failed to object during the Catz Deposition that the cited

7   questions lacked foundation or called for an improper lay opinion and have therefore waived the

8   form objections now asserted. *See* Lanier Decl. ¶ 1, Ex. A (Catz Depo.) at 23:4-25:18, 160:3-

9   161:5; D.I. 488 at 1-2. Similarly, although Plaintiffs now object to the admissibility of the

10  Phillips Depo. at 117:9-120:18 (*see* D.I. 488 at 3), Plaintiffs failed to lodge any objections except

11  for "calls for speculation," and thus have waived their untimely form objections. *See* Lanier Decl.

12  ¶ 2, Ex. B (Phillips Depo.) at 117:9-120:18.

13          In addition to being mostly waived, Plaintiffs' objections all lack merit and should be

14  overruled. As shown above (Section III.B.1), the questions were not vague, ambiguous,

15  incomplete or too tricky or challenging for Oracle's executives. Defendants simply asked the

16  chief decision-makers at Oracle about the factors each would have considered in deciding whether

17  to grant a license to Defendants, the very essence of the damages claim at issue here. The

18  testimony of Oracle's top executives about whether they would have granted or recommended

19  granting a license to Defendants for the allegedly infringing activities is unquestionably relevant

20  to Plaintiffs' hypothetical license claim. Plaintiffs also undermine their own objections by

21  offering, in the Ellison and Catz declarations, the very types of evidence they challenge when

22  offered as executive testimony. Even were the Court to sustain Plaintiffs' objections, Defendants

23  have produced (and Plaintiffs' own Opposition confirms) evidence sufficient to show an absence

24  of a genuine issue regarding whether the parties would have agreed to a license. *See* Section

25  III.A, *supra*. The undisputed evidence shows they would not have agreed.

26          3.      Plaintiffs' "sham" declarations do not create an issue of material fact.

27          The declarations of Mr. Ellison and Ms. Catz in support of Plaintiffs' Opposition should be

28  disregarded for two reasons. First, they do not present issues of fact material to the Motion. In

1    their declarations, Mr. Ellison and Ms. Catz do not dispute that Oracle would not have granted a

2    license to Defendants for the allegedly infringing activities.  Instead, they debate how much

3    Oracle might have charged—a separate issue that is not relevant to this Motion.  Both declarations

4    essentially complain that the questions the executives were asked about the hypothetical license

5    were based on an incomplete hypothetical and state that the executives' valuations of the license

6    now "would still be considerable . . . [but] significantly lower than my estimation during my

7    deposition."  *See* Declaration of Larry Ellison in Support of Oracle's Opposition ("Ellison Decl.")

8    ¶ 4; Declaration of Safra Catz in Support of Oracle's Opposition ("Catz Decl.") ¶ 4.  Mr. Ellison's

9    and Ms. Catz's attempts to disown their testimony regarding the *price* of a hypothetical license do

10   not create a dispute of fact about whether Oracle would have granted such a license at all.

11          Likewise, Mr. Ellison's statement that SAP licenses Oracle's database software is

12   immaterial to Defendants' Motion.  *See* Ellison Decl. ¶ 5.  The cooperative arrangement under

13   which SAP resells Oracle's databases fundamentally differs from the hypothetical license at issue

14   here, which would sanction competition with Oracle (and for that reason, Oracle would not grant).

15   *See* Opposition at 15.  Plaintiffs have consistently resisted discovery regarding Oracle's partners

16   on the basis of this distinction.  In opposing Defendants' Motion to Compel Discovery

17   Concerning Third Party Support Provided by Oracle's Partners, Oracle asserted that its partner

18   relationships, including its database reseller relationship with SAP, are irrelevant to the issue of

19   hypothetical license damages because Oracle contracts with partners "for the benefit of Oracle,"

20   whereas TomorrowNow acts "in competition with Oracle."  D.I. 253 at 2, 9-10; *see also* D.I. 176

21   (8/28/08 Transcript of Proceeding Before Hon. Elizabeth D. Laporte) at 51; D.I. 240-5 (2/7/08

22   Letter Brief to Hon. Charles A. Legge in Opposition to Defendants' Motion to Compel) at 4-5.

23   The parties' database reseller partnership does not call into question the undisputed fact that

24   Oracle would not have granted a license to Defendants to cover the allegedly infringing conduct.

25          Second, to the extent that the declarations directly contradict the executives' deposition

26   testimony, they should be disregarded as "sham" declarations.  A "party cannot submit a

27   declaration flatly contradicting its prior deposition . . . in an attempt to 'create' an issue of fact and

28   avoid summary judgment."  *Persistence Software, Inc. v. Object People, Inc.*, 128 F. Supp. 2d 623,

628 (N.D. Cal. 2000) (Hamilton J.) (citing *Kennedy*, 952 F.2d at 266), *vacated on other grounds*, 200 F.R.D. 626 (N.D. Cal. 2001) (Hamilton, J.).  Courts will disregard a declaration submitted to oppose summary judgment if it directly contradicts the declarant's previous deposition testimony and the declarant fails to "present[] a sufficient explanation for the contradiction." *Id*. at 629; *see also Pacific Ins. Co. v. Kent*, 120 F. Supp. 2d 1205, 1213 (C.D.  Cal. 2000) (finding contradictory declaration a sham because "[t]here was no ambiguity in either the question or the answers during . . . examination" and witness did "not establish that he was confused or did not understand the questions presented at the earlier examination under oath").

Mr. Ellison and Ms. Catz do not sufficiently explain why their declarations contradict their deposition testimony (albeit on an irrelevant issue, price).  For example, they both testified that had Oracle considered granting a license to Defendants, it would have demanded billions.  *See* Lanier Decl. ¶¶ 1, 3, Ex. A (Catz Depo.) at 159:16-23, Ex. C (Ellison Depo.) at 78:8-11, 80:3-24; Opposition at 20.  However, they now claim that the license value would be "significantly lower" than they stated during deposition.  Ellison Decl. ¶ 4; Catz Decl. ¶ 4.  Mr. Ellison even disclaims his testimony that Oracle would have demanded a "prohibitively" expensive price from SAP. Ellison Decl. ¶ 6; Lanier Decl. ¶ 3, Ex. C (Ellison Depo.) at 74:12-75:9.  The executives attempt to justify their about-face by claiming they did not understand the questions asked.  *See* Ellison Decl. ¶ 3; Catz Decl. ¶ 3.  But, as discussed above, it is implausible that they did not understand the questions; nor did they hesitate to wax poetic when answering them.  Neither Mr. Ellison nor Ms. Catz make a remotely credible case that they were "confused or did not understand the questions presented."  *See Pacific Ins. Co.*, 120 F. Supp. 2d at 1213.

Plaintiffs' efforts to peel back their own witnesses' deposition testimony demonstrates why copyright law forbids a competitor who never would have bargained with the infringer from claiming a hypothetical license.  Plaintiffs want to parlay direct and vigorous competition into an enormous license from SAP, yet their own witnesses' testimony demonstrates that Oracle would not have licensed its arch-rival.  The Court should disregard the executives' self-serving declarations as improper (and unsuccessful) attempts to create an issue of fact.

**C.**    **Mr. Plattner's Testimony Shows that There Would Have Been No License.**

Plaintiffs argue that Mr. Plattner's testimony undermines the clear proof that the parties would not have agreed to a hypothetical license.  Plaintiffs do not create a dispute regarding whether the parties would have agreed to a license by citing portions of Mr. Plattner's deposition in which he was asked to *presume* the existence of a license.  *See* Declaration of Holly House in Support of Plaintiffs' Opposition ("House Decl.") ¶ 3, Ex. A (June 2, 2009 Hasso Plattner Deposition ("Plattner Depo.")) at 68:23-69:6.  In contrast to Oracle's executives' testimony that they would expect the hypothetical license to recoup the PeopleSoft acquisition cost, Mr. Plattner testified that he would not have expected Oracle to seek a return on investment.  *See* Lanier Decl. ¶ 4, Ex. D (Plattner Depo.) at 65:19-66:21.  Indeed, Mr. Plattner testified that he believed such a license might violate antitrust laws.  *See* House Decl. ¶ 3, Ex. A (Plattner Depo.) at 63:10-64:4.  The evidence is unequivocal that none of the sophisticated executives involved in this case, from both Oracle and SAP, believed a license was practical or possible here.

**D.**    **The Evidence on which Plaintiffs' Expert Will Rely to Calculate the Price of a Hypothetical License Is Not Material to Defendants' Motion.**

Plaintiffs claim that at trial they "will present evidence to establish the fair market value of the copyrights SAP infringed and the value of them to SAP."  Opposition at 14.  Plaintiffs devote much of their brief and the entire Meyer Declaration (with dozens of accompanying exhibits) to explaining how Mr. Meyer would calculate the price of a hypothetical license.  *See, e.g.*, Opposition at 14-16.  However, as explained in detail above, the amount of a hypothetical license is irrelevant to the Motion.  Because Plaintiffs offer the Meyer Declaration and its attached exhibits only to show how Plaintiffs would price a hypothetical license, this evidence cannot raise a genuine issue of fact material to the causation issues addressed in the Motion and should be disregarded in its entirety.  *See* Defendants' Objections to Evidence in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, submitted concurrently.

**IV.**    **"SAVED ACQUISITION COSTS" ARE NOT PERMITTED UNDER THE COPYRIGHT ACT AND NINTH CIRCUIT PRECEDENT**

As another basis for their hypothetical license claim, Plaintiffs also rely on the "saved

- 12 -

acquisition costs" theory adopted by the Seventh Circuit in *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir. 1985).  *See* Opposition at 6-7, 9-14.  Plaintiffs' suggestion that "saved acquisition costs" should not be decided on this Motion is misplaced because they seek a "fair market value" license based on "the amount of money the infringer saved."  Opposition at 10; *see also id.* at 6 (relying on *Deltak*) and at 20 n.12 (arguing that "avoided costs" are "relevant evidence to the hypothetical license").)  Indeed, in their Supplemental Disclosures, Plaintiffs state that they expect to recover damages in the form of a hypothetical license based in part on saved acquisition costs ("the fact that Oracle had just paid significant amounts for the companies [PeopleSoft and J.D. Edwards]") and saved development costs ("the amount that would not have to be expended by Defendants to legitimately create what they would instead license").  *See* Lanier Decl. ¶ 8, Ex. H. (Supplemental Disclosures) at 47.

Plaintiffs' reliance on the "saved acquisition costs" theory confirms that summary judgment is necessary to eliminate this flawed damages theory and streamline this case for trial.  The Ninth Circuit allows a hypothetical license only as a measure of actual damages, not as a measure of ill-gotten gain to the defendant, *see, e.g.*, *Polar Bear*, 384 F.3d at 708; *Krofft*, 562 F.2d at 1174, and "but for" causation is required, *see Polar Bear*, 384 F.3d at 709.  Furthermore, the Copyright Act, which sets forth exclusive remedies, does not leave room for a "saved acquisition costs" theory.  *See* 17 U.S.C. § 504(b); *see also Nimmer* at § 14.02[B][1] at 14-22 (*Deltak*'s "value of use" theory "fits neither category" of damages permitted by the Copyright Act).  Allowing Plaintiffs to create a "floor" for copyright damages based on this theory would also contravene the intent of Congress, which deliberately excluded any such floor in the 1976 Act.  *See* Motion at 18.  There is no legal basis for Plaintiffs to take this theory to trial.

And Plaintiffs' Opposition proves that *Deltak* is an outlier case.  Plaintiffs cannot cite *one case* outside of the Seventh Circuit—much less a Ninth Circuit case—that endorses saved acquisition costs as a measure of actual damages.  To begin, *Nucor Corp. v. Tennessee Forging Steel Serv., Inc.* does not support Plaintiffs' position; it predates *Deltak* and is based on common law copyright, not on the Copyright Act of 1976.  513 F.2d 151, 152 (8th Cir. 1975).  *Nucor* never decided the propriety of a defendant's saved costs as a form of copyright damages, but

1   only decided the procedural remand issue before it.  *Id.* at 152-53.  Nor did *Northwest Airlines,*

2   *Inc. v. American Airlines, Inc.* adopt the "saved acquisition costs" method; it cited *Deltak* only

3   for the traditional "value of use" concept.  870 F. Supp. 1504, 1513 (D. Minn. 1994); *see also*

4   Motion at 19.  Moreover, *Northwest Airlines* proves the point of Defendants' Motion; it denies

5   value of use damages because the plaintiff "stated unequivocally that it had no intention of

6   selling [the work] to Northwest."  *Id.*  The only case outside the Seventh Circuit to adopt

7   *Deltak*'s "saved acquisition costs" language did so not as a measure of actual damages, but of

8   infringer's profits, *see Roeslin v. District of Columbia*, 921 F. Supp. 793, 799 (D.D.C. 1995),

9   which Plaintiffs concede are "unrelated to the fair market valuation at issue in this motion."

10  Opposition at 11; *see also* Motion at 19-20.

11      Most courts citing *Deltak* (including *On Davis*) do so for the traditional "value of use"

12  concept without mention of "saved acquisition costs."  The numerous cases rejecting or

13  questioning *Deltak*'s holding (*see* Motion at 19) are far from "outdated" (Opposition at 12)—

14  their reasoning applies with just as much force now as when the cases were decided.  And *On*

15  *Davis* had no impact on cases criticizing *Deltak*'s "saved acquisition costs" theory.  *See Quinn v.*

16  *City of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. 1998); *Multitherm Corp. v. Fuhr*, Civ. A. No.

17  89-6151, 1991 WL 146233, at *14 (E.D. Pa. July 24, 1991); *see also On Davis*, 246 F.3d at 169

18  (citing with approval *Encyclopedia Brown*).  This is because *On Davis* did not involve "saved

19  acquisition costs" or party-competitors at all, but rather involved a "value of use" license

20  between non-competitors.  *See On Davis*, 246 F.3d at 163.

21      *On Davis* is thus consistent with *Business Trends*' rejection of "saved acquisition costs,"

22  whether as a measure of infringer's profits or of actual damages.  *On Davis* held that *Business*

23  *Trends* "[did] not foreclose" a traditional hypothetical license form of actual damages because (1)

24  the court in *Business Trends* was reviewing the district court's award of infringer's profits, and

25  thus the question of actual damages was not before it; and (2) the facts of *Business Trends* were

26  different because, there, the parties were competitors.  246 F.3d at 163-64.  *On Davis* never

27  discussed whether a license fee based on "saved acquisition costs" could be an appropriate

28  measure of actual damages, nor did it approve of any form of licensing fee between competitors.

SVI-72849v1

- 14 -

1   *See* 6 *Patry on Copyright* (Thomson West 2009) ("*Patry*") at § 22:129 (*On Davis* "did not depart

2   from *Business Trends'* rejection of *Deltak*").  Plaintiffs also mischaracterize the post-*On Davis*

3   decision in *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, which refused to award as

4   infringer's profits the amount saved by not purchasing the infringing software.  439 F. Supp. 2d

5   758, 771 (E.D. Mich. 2006) (citing *Business Trends*).  The Sixth Circuit affirmed this holding

6   and reversed on the separate question of actual damages, concluding that a license fee between

7   parties who have already entered into a license should be based on the terms of that agreement.

8   *See* 488 F.3d 352, 359-60 (6th Cir. 2007).

9        "Saved acquisition costs" have no place in this case.  Indeed, in the words of one

10  commentator, *Deltak* "is an aberration and should remain one."  *See Patry* at § 22:130.

11  **V.      CONCLUSION**

12       The sworn, prior testimony of Oracle's top executives is clear: Oracle would not have

13  given SAP or TomorrowNow a license of any type for any software to compete for the same

14  customers that Oracle had spent many months and billions of dollars to "keep . . . away from

15  SAP."  Lanier Decl. ¶¶ 1, 3, Ex. A (Catz Depo.) at 159:18-23, Ex. C (Ellison Depo.) at 80:3-82:2,

16  83:18-84:6.  Plaintiffs' Opposition also confirms "that Oracle doesn't license the [allegedly]

17  infringed material to others to use in competition against it" and that, in fact, Oracle has never

18  granted a license comparable to the contemplated hypothetical license.  Opposition at 15, 19.  It is

19  indisputable that Oracle would not have granted a license to its software to help TomorrowNow

20  compete against it.  Plaintiffs have not carried and cannot carry their burden to prove that the

21  parties would have agreed to a license, and the Court should grant partial summary judgment that

22  Plaintiffs are not entitled to damages in the form of a hypothetical license.

23  Dated:  October 7, 2009                              JONES DAY

24

25                                                      By:  /s/ Tharan Gregory Lanier
                                                             Tharan Gregory Lanier

26                                                      Counsel for Defendants
27                                                      SAP AG, SAP AMERICA, INC. and
                                                        TOMORROWNOW, INC.

28