BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation,
Oracle EMEA Limited, and Siebel Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, *et al.*,<br><br>Defendants. | No. 07-CV-1568 PJH (EDL)<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION**<br><br>Date: November 24, 2009<br>Time: 9:00 a.m.<br>Place: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE REQUESTED LICENSE INFORMATION IS RELEVANT TO ORACLE'S FAIR MARKET VALUE LICENSE CLAIM | 2 |
| | A. Oracle Is Entitled to Discovery of SAP's Highest Value Arms-Length Intellectual Property Licenses Even If Only Relevant as Benchmarks | 2 |
| | B. Defendants Fail to Address Oracle's Arguments that This Information Is Relevant to Rebut SAP's Argument That it Would Not Have Agreed to the License | 5 |
| | C. Defendants Do Not Demonstrate How Production of Six Licenses Constitutes Undue Burden | 7 |
| III. | DEFENDANTS MUST STILL SUPPLEMENT ORACLE'S VALUE-PER-CUSTOMER INTERROGATORY | 8 |
| IV. | DEFENDANTS MUST PROVIDE A COMPREHENSIVE PRODUCTION OF COST INFORMATION | 9 |
| V. | CONCLUSION | 10 |

i

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

# TABLE OF AUTHORITIES

Page

**CASES**

*Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*,
   No. C 05-04158 MHP, 2008 U.S. Dist. LEXIS 16556 (N.D. Cal. Mar. 4, 2008) ..................... 7

*Beinin v. Center for the Study of Popular Culture*,
   No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546 (N.D. Cal. Jun. 20, 2007) ....................... 3

*Liew v. Breen*,
   640 F.2d 1046 (9th Cir. 1981) .................................................................................................. 4

*Siegel v. Warner Bros. Entm't*,
   No. CV 04-08400-SGL (RZx), 2009 WL 2014164 (C.D. Cal. July 8, 2009) .......................... 3

*Smith v. NBC Universal,*
   No. 06-CIV-5350 (SAS), 2008 U.S. Dist. LEXIS 13280 (S.D.N.Y. Feb. 22, 2008) ................ 5

*Tangorre v. Mako's, Inc.,*
   No. 01-CIV-443 (BSJ) (DF), 2002 U.S. Dist. LEXIS 2084 (S.D.N.Y. Feb. 8, 2002) .............. 5

*United States EEOC v. ABM Indus.*,
   1:07-cv-01428-LJO-TAG, 2008 U.S. Dist. LEXIS 105649 (E.D. Cal. Dec. 22, 2008) ........... 8

**RULES**

Fed. R. Civ. P. 26 ......................................................................................................................... 3, 4, 5

Fed. R. Civ. P. 30(b)(6) ....................................................................................................................... 6

Fed. R. Civ. P. 56(f) ............................................................................................................................ 6

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

## I. INTRODUCTION

Oracle has moved to compel several categories of important damages-related discovery, including Defendants' highest dollar value arms-length intellectual property licenses; value-per-customer analyses; financial information for an infringer's profits analysis; and research and development data. Defendants have now conceded the relevance of the discovery Oracle seeks, and should be compelled to produce the outstanding documents and information.

*SAP's Six Highest Value Arms-Length Licenses*: Defendants acknowledge that benchmark licenses are relevant to a hypothetical license analysis, but then argue that their highest dollar value arms-length intellectual property licenses are not actually relevant benchmarks due to their terms and scope, and therefore should not be produced. This puts the cart before the horse. Defendants cannot argue that these licenses are not relevant based on their terms and scope without providing Oracle an opportunity to review those documents for terms and scope. Further, Defendants improperly conflate admissibility with relevance for purposes of discoverability. In addition, Defendants fail to address Oracle's arguments that these six licenses are relevant beyond serving as benchmarks for Oracle's hypothetical fair market value measure of damages, including to counter Defendants' assertions made in the pending Motion for Partial Summary Judgment that SAP never would have paid a significant amount for the intellectual property stolen from Oracle.

Oracle has met its burden of an initial showing of relevance, there is no undue burden in making this limited production, and the Court should deny Defendants' attempts to avoid what is otherwise not an objectionable or burdensome production.

*SAP's Value-Per-Customer Information*: Defendants do not contest the relevance of Oracle's request for value-per-customer data, but again offer ambiguous language as an end-run around Oracle's request. Defendants should be required to answer the Interrogatory as written.

*SAP's Cost Information for Oracle's Potential Infringer's Profits:* Defendants also do not contest the relevance of the infringer's profits-related cost information Oracle requested. After forcing Oracle to move to compel production of this financial information,

Defendants produced the specific cost data requested by Oracle just a few days before the deadline for this Reply brief. The related issue of whether Defendants will produce additional cost information at some later point, however, is still unresolved. Defendants cannot unilaterally extend the production date on further relevant information, nor cherry-pick the cost data most helpful to their arguments.

The remaining issue identified in Oracle's Motion – research and development data – has been resolved through mutual production since the time the Motion was filed.

## II. THE REQUESTED LICENSE INFORMATION IS RELEVANT TO ORACLE'S FAIR MARKET VALUE LICENSE CLAIM

### A. Oracle Is Entitled to Discovery of SAP's Highest Value Arms-Length Intellectual Property Licenses Even If Only Relevant as Benchmarks

Defendants spend the bulk of their Opposition to Oracle's Motion to Compel Damages Related Documents and Information ("Opposition" or "Opp.") discussing SAP's six highest value arms-length intellectual property licenses, but Defendants cannot escape production of the six licenses by arguing that they may not turn out to be appropriate benchmarks should Oracle's damages experts rely on them at trial. The parties agree that benchmark licenses, when "comparable" (as the term "benchmark" itself requires) are relevant to the calculation of a hypothetical license (*see, e.g.*, Opp. at 4, noting "Courts have made clear that only licenses with *comparable* subject matter and terms are relevant to calculating the amount of a hypothetical license.") (emphasis in original).

After conceding the relevance of benchmark licenses generally, however, Defendants then argue they should still not have to produce this licensing information because "Courts exclude as irrelevant licenses that are not comparable in subject matter or in scope to the hypothetical license sought" and (according to Defendants) these licenses are not comparable in subject matter or in scope. Opp. at 5. Defendants ask the wrong court for the wrong relief at the wrong time.

***First,*** all but one of the cases Defendants cite on exclusion are by the trial court when the party was trying to admit or use a license as a benchmark - not when the licenses were

2

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

being sought in discovery as potential benchmarks. *See, e.g., Siegel v. Warner Bros. Entm't*, No. CV 04-08400-SGL (RZx), 2009 WL 2014164 at *6 (C.D. Cal. July 8, 2009) (trial court was evaluating "dozens of third-party film and television licensing agreements, apparently negotiated at arms length, <u>that were introduced by the parties as a basis to provide a 'comparable'</u> to what the Superman film and television licenses at issue in this case would have garnered on the open market" and noting need for trial court to examine proposed comparables to make that decision) (emphasis supplied).[1] The one motion to compel case cited by Defendants, *Beinin v. Center for the Study of Popular Culture*, No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546 (N.D. Cal. Jun. 20, 2007), is distinguishable because it involves burden objections to an overbroad third party subpoena seeking "all documents . . . concerning [the] 'granting of any rights'" by a third party. *Id.* at *14. Here, Defendants are parties to the litigation with greater discovery obligations and thus, the standard relevance evaluation applies. Moreover, Oracle does not seek "all" SAP licenses, but only six licenses. Finally, even the *Beinin* court denied the motion without prejudice and allowed the plaintiff to seek a narrower production of documents, given the potential relevance of the past licensing of photographs to the market value of the disputed photograph. *Id.* at *16-17.

   ***Second*,** Defendants' arguments about whether the "terms" and "scope" of the licenses make these appropriate benchmarks are off-point. Oracle cannot counter Defendants' assertions about the relatedness and appropriateness of these licenses as benchmarks, because Defendants refuse to produce them. Questions about terms and scope go to admissibility of this evidence as a benchmark and the content of the licenses – not to discoverability. Oracle does not have to prove this information is admissible to obtain it through discovery. Instead, it only has to demonstrate that this information is "reasonably calculated to lead to the discovery of admissible evidence," which it has done (and indeed, Defendants admit relevance). Fed. R. Civ. P. 26(b)(1);

---

[1] Defendants also cite other cases that addressed whether a license should be <u>admissible</u> as an appropriate benchmark based on the actual contents of the license (which we cannot yet know here). These cases are inapposite because the issue at hand is discoverability, and not admissibility. *See* Opp. at 5-7.

3

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

1  *Liew v. Breen*, 640 F.2d 1046, 1049 (9th Cir. 1981) (discoverable information "need not be
2  admissible at trial").

3  ***Third***, even if the evidentiary weighing of the licenses in the abstract were
4  appropriate now (and it is not), both Oracle and SAP sell enterprise application software and
5  support, and SAP has admitted it is Oracle's largest competitor.  *See* Motion for Partial Summary
6  Judgment Regarding Oracle's Hypothetical [Fair Market Value] License ("MSJ"), Dkt. No. 431,
7  at 3.  This alone is a reasonable basis for relevance of SAP's own intellectual property licenses as
8  *potentially* informing the value of the hypothetical license between Oracle and SAP.  By asking a
9  global ERP software company for its largest value licenses with third parties, Oracle is seeking
10 no more than what is permitted by Federal Rule of Civil Procedure 26, which allows for
11 discovery of information "relevant to the claim or defense of any party."[2]

12 ***Fourth,*** Oracle's narrow request for only the highest dollar value licenses
13 increases the likelihood that the information could constitute an appropriate benchmark, because
14 the Oracle/SAP hypothetical license would be very large in light of SAP's extensive
15 infringement and misuse of Oracle's intellectual property.

16 ***Finally,*** Defendants are free to - and undoubtedly will - argue to the trial court
17 about why the licenses are inappropriate benchmarks if Oracle's experts decide to use them after
18 examining them.  Thus, there is no prejudice to Defendants from their production.[3]

---

[2] Defendants claim that Oracle's opposition to Defendants' extensive requests into Oracle partner discovery is related to Defendants' opposition to this request today.  *See* Opp. at 8.  Unlike Defendants' request for extensive Oracle partner discovery, however, Oracle's request for SAP's high value licenses is limited to just six total licenses; moreover, because these are arms-length transactions, they are relevant as benchmarks in a way that information about arrangements with affiliated partners is not.  Finally, Defendants ignore that Oracle in fact produced more burdensome partner discovery to Defendants as a result of Defendants' motion to compel Oracle's partner discovery than Oracle asks the Court to order here.  *See* Plaintiffs' Motion to Compel Production of Damages Related Documents and Information ("Motion"), Dkt. No. 512, at 8 (discussing the Court's order requiring Oracle to provide a list of the partners with which Oracle contracts to provide support services for PeopleSoft, J.D. Edwards or Siebel applications, partnership agreements with Cedar Crestone for the relevant time frame from 2002 through 2008, and two master agreements regarding support, including fee schedules).  Thus Defendants' argument that Oracle's resistance to full-on partner discovery mandates denial of Oracle's request for the six third party SAP IP licenses fails.

[3] There is however, prejudice to Oracle in their late production.  Oracle thus reserves its rights to

(Footnote Continued on Next Page.)

4

1  *Compare, e.g., Smith v. NBC Universal,* No. 06-CIV-5350 (SAS), 2008 U.S. Dist. LEXIS 13280,
2  *12-13 (S.D.N.Y. Feb. 22, 2008) (leaving plaintiff to "argue to the jury" that certain licenses
3  with third parties did not reflect the fair market value of the infringed work and explaining that
4  "[b]ecause the determination of damages may be difficult, and the Licenses are relevant evidence
5  that might aid the jury in its decision, they are admissible."). But Defendants' refusal to produce
6  documents because - in their unilateral opinion - the documents should not be admissible as
7  benchmarks, glosses right over the purpose of discovery. *See* Fed. R. Civ. P. 26(b); *see also*
8  *Tangorre v. Mako's, Inc.,* No. 01-CIV-443 (BSJ) (DF), 2002 U.S. Dist. LEXIS 2084, at *4, 14
9  (S.D.N.Y. Feb. 8, 2002) (granting motion to compel Plaintiffs' request for all communications
10 demonstrating that Defendant "authorized, lent, gave . . . sold or franchised" the photographs at
11 issue in a copyright dispute and noting that "[b]y asserting general objections and contending
12 merely that Tangorre 'is not entitled' to these items, or that the information is 'not needed,' [the
13 Defendant] substituted its own narrow view of the merits of this action for the liberal rules that
14 govern discovery, and has sharply circumscribed Tangorre's right to obtain relevant information
15 in the pretrial discovery process").

### B. Defendants Fail to Address Oracle's Arguments that This Information Is Relevant to Rebut SAP's Argument That it Would Not Have Agreed to the License

Defendants' Opposition also fails to address Oracle's argument that this limited license production is relevant for reasons beyond the licenses' potential as benchmarks for Oracle's fair market value (hypothetical) license measure of damages. Oracle's Motion explains that:

> Defendants' licensing practices are relevant - and in particular the contents of Defendants' highest value licenses with independent third parties - because they show the reasonableness of Plaintiffs' fair market value license amount . . . <u>and undermine any claim by Defendants that they would never have paid (or charged) a significant amount for intellectual property</u>.

---

(Footnote Continued from Previous Page.)

supplement or amend its expert's opinions or reports based upon them and/or to seek to preclude Defendants from complaining about their use at trial.

Motion at 7 (emphasis added).  Oracle did not make this assertion in the abstract:  Defendants argued that they would not have paid Oracle a significant amount for the intellectual property at issue in their recent Motion for Partial Summary Judgment, citing testimony from their Chairman of the Board, Hasso Plattner.  *See* MSJ at 5.

Defendants mostly ignore Oracle's argument in their Opposition, but it is an important one:  if Defendants claim they would not have paid much for the stolen intellectual property, then Oracle is entitled to discovery to rebut that claim, such as these licenses (which will show that Defendants *do*, in fact, understand the value of and pay significant amounts for third party owners' intellectual property rights and charge such amounts for their own IP to other non-partner third parties).[4]

Defendants argue only that Oracle's position regarding the relevance of this information to SAP's willingness to enter into a license has no merit because it was not the subject of a Rule 56(f) motion or a focus of Oracle's Opposition to Defendants' Motion for Partial Summary Judgment ("Opposition to Partial Summary Judgment").  *See* Opp. at 9.  Oracle's Opposition to Partial Summary Judgment discusses the previous history of a licensing relationship between the parties, however, and explains that "[e]ven though the law does not require Oracle prove the parties would have agreed on, or that SAP would have voluntarily paid, the fair market value of what SAP took, these facts undermine SAP's argument that the parties never could have agreed, and that SAP could not afford the retroactive licenses."  Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment Regarding Oracle's Hypothetical [Fair Market Value] License, Dkt. # 483, at 23 (emphasis added).  Oracle intends to further expand on those categories of evidence at trial by pointing to the licenses it now moves to compel.  The evidence is relevant and its production is warranted.  That Oracle did not seek to halt the MSJ proceedings to seek the licenses through a Rule 56(f) motion does not change this.

---

[4] Further, Defendants' issuance of a Fed. R. Civ. Proc. 30(b)(6) Deposition Notice on the last day to serve discovery, seeking extensive detail about Oracle's licensing terms, only reinforces the relevance of this request.

6

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

1    Further, after arguing in the Motion for Partial Summary Judgment that
2  Defendants' subjective state of mind regarding a willingness, or lack of willingness, to enter into
3  a licensing agreement with Oracle is central to Oracle's hypothetical license model, Defendants
4  should not be permitted to refuse discovery on related issues. *See* MSJ at 4-6, 9-12; *Bd. of Trs.*
5  *of the Leland Stanford Junior Univ. v. Roche Molecular Sys.*, No. C 05-04158 MHP, 2008 U.S.
6  Dist. LEXIS 16556, at *12 (N.D. Cal. Mar. 4, 2008) (holding that defendant cannot argue issues
7  and subsequently refuse discovery of those issues). Evidence of Defendants' high value licenses
8  would show that Defendants did engage in very high value licensing agreements, which
9  undermines Defendants' credibility.
10   Defendants are silent on Oracle's argument that the requested license information
11 is relevant to Defendants' candor, state of mind and willingness to pay for Oracle's intellectual
12 property, because Defendants cannot counter it. The six requested licenses should be produced
13 for this reason alone.

14   **C.    Defendants Do Not Demonstrate How Production of Six Licenses Constitutes Undue Burden**
15

16   Oracle sought a narrowly tailored, targeted set of licenses to limit any burden on
17 Defendants, while maintaining Oracle's ability to get key information. Defendants now argue
18 that they face an undue burden, citing no law and stating only that "Defendants would be hard
19 pressed, at this late date, to begin and complete the analysis necessary to rebut Plaintiffs' claim
20 that these licenses should govern the price of a hypothetical license." Opp. at 11. That argument
21 mixes up the time pressures of the November 16 due date for Oracle's expert reports and the
22 December 4 impending fact discovery cut-off – by which time the six licenses need to be
23 produced – with the time in the future when Defendants may attack the appropriateness of any of
24 the licenses as a benchmark (*e.g.*, in a motion in limine or other motion to the trial court). It also
25 disregards that Plaintiffs asked SAP for these licenses by letter on September 11 and served a
26
27
28

7

1  formal Request for Production seeking this information a month and a half ago.[5]

2  Defendants also assert that if Oracle's request were granted, "Defendants would
3  be put to the burden of reviewing and analyzing the value, subject matter, and terms of the
4  hundreds of incoming and outgoing SAP IP licensing agreements to contextualize SAP's highest
5  dollar value licenses. The burden on Defendants to perform this research and analysis is vast and
6  unjustified in light of the questionable value of the requested discovery." Opp. at 11. If
7  Defendants are under the gun it is because they have waited this long to comply. Their decision
8  not to produce, coupled with the parallel decision to rely on evidence of subjective intent, cannot
9  be bootstrapped into an excuse for avoiding discovery altogether. *See United States EEOC v.*
10 *ABM Indus.*, 1:07-cv-01428-LJO-TAG, 2008 U.S. Dist. LEXIS 105649, at *24 (E.D. Cal. Dec.
11 22, 2008) (a bare assertion of undue burden without factual allegations and without a supporting
12 declaration describing the particulars of the burden of compliance is insufficient).

13 Moreover, Defendants' unsupported assertion of burden seems overstated. SAP
14 should know the three largest monetary value third party IP licenses it has granted and the three
15 largest value third party IP licenses it has entered into as grantee. Indeed, SAP's CFO was able
16 to name likely candidates off the top of his head during his deposition almost a year ago. *See*
17 Motion at 8; Donnelly Decl. at ¶19 & Ex. K.

18 Finally, if it would be easier for Defendants to produce all of their "hundreds of
19 incoming and outgoing SAP IP licensing agreements" (Opp. at 11) than to sort through them to
20 find the highest dollar value licenses – as they indicate in their Opposition – then Oracle will
21 accept this broader production of documents.

---

[5] Oracle asked for this information in September 2009 after Defendants narrowly interpreted Oracle's previous discovery requests for SAP's IP valuation information. *See* Opp. at 10 (discussing Defendants' responses to Oracle's previous request for license information). Oracle subsequently served the discovery request now at issue (RFP 147). *See* Opp. at 10; Declaration of Amy Donnelly in Support of Oracle's Motion to Compel Production of Damages Related Documents and Information ("Donnelly Decl."), Dkt. No. 513, at ¶4.

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DAMAGES RELATED DOCUMENTS AND INFORMATION

1  III.   **DEFENDANTS MUST STILL SUPPLEMENT ORACLE'S VALUE PER CUSTOMER INTERROGATORY**

With regard to Oracle's request for supplementation of Interrogatory 69, Defendants assert that they have "already provided sufficient value per customer data" and that after "reasonable additional inquiries within SAP [they] have concluded that there is no additional responsive information." Opp. at 3. While Defendants brush off Oracle's concerns regarding this Interrogatory and argue that "[p]art of the problem here may be one of semantics," Defendants' carefully worded opposition brief is telling, stating:

> "Plaintiffs appear to interpret Defendants' response to Interrogatory No. 69 as though Defendants only looked for responsive information that existed at the time Defendants sign up a new customer for a software license. *See* Motion at 6-7. That is a misreading of the response. In fact, the response effectively states that based upon a reasonable search, Defendants have been unable to identify the existence of **the type of information Plaintiffs appear to seek**."

*Id.* at 2-3 (emphasis supplied). Defendants fail, however, to acknowledge what it is that they think Oracle seeks. Note that Defendants do *not* respond to the direct point made in Oracle's Motion that Defendants' response to this Interrogatory does not identify value-per-customer analyses made after the time that Defendants signed up a new customer.

Defendants offer to supplement their response to Interrogatory 69 to "clarify" their position. *Id.* Oracle accepts Defendants' offer, and agrees that supplementation is required. However, Oracle needs to confirm that Defendants conduct <u>no</u> analyses – formal or informal – related to assigning, predicting, or otherwise calculating the expected value per customer, such as by projecting a cross-sell or up-sell opportunity. Therefore, Oracle asks the Court to require Defendants to specifically attest in their supplemental response that "SAP tracks, provides, predicates, calculates, considers or assigns no per-customer values or expected value per customer for new or existing customers, including cross-sell or up-sell discussions or expectations, other than what is already identified in this interrogatory response," or explain with particularity any such valuation that occurs at SAP (as requested by the Interrogatory).

Without a response that includes this language, or adequate detail about any

9

1  analyses that do fall is in this category, the Court should not consider Defendants' obligation
2  satisfied.

### IV. DEFENDANTS MUST PROVIDE A COMPREHENSIVE PRODUCTION OF COST INFORMATION

After forcing Oracle to move to compel the production of cost data related to its infringer's profits measure of damages, Defendants produced the specific cost data requested by Oracle just a few days before the deadline for this Reply brief. The related issue of whether Defendants will produce additional responsive information is still unresolved, however, because Defendants state in their Opposition that "after receiving Plaintiffs' opening reports, Defendants will make diligent efforts to disclose any additional cost information that has not been previously produced." Opp. at 13.

Defendants do not provide any legal authority that an infringement victim must provide its expert damages report before the infringer makes a complete production of cost information, or that it is appropriate to cherry-pick cost data that best helps Defendants' case. Oracle will consider and may seek a preclusion order for any withheld or untimely produced cost information, and otherwise reserves any rights to supplement or amend its expert's opinions or reports based upon an untimely production.

### V. CONCLUSION

For the foregoing reasons, the Court should grant Oracle's Motion to Compel Production of Damages Related Documents and Information.

DATED:  November 10, 2009            BINGHAM McCUTCHEN LLP

                                     By:_____/s/ Holly A. House_____

                                     Holly A. House
                                     Attorneys for Plaintiffs
                                     Oracle USA, Inc., et al.