BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111–4067
Telephone:  (415) 393–2000
Facsimile:  (415) 393–2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506–4846
Facsimile:  (650) 506–7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, Oracle EMEA Limited, and
Siebel Systems, Inc.

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626–3939
Facsimile:     (415) 875–5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:     (650) 739–3939
Facsimile:     (650) 739–3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:     (832) 239–3939
Facsimile:     (832) 239–3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
  SAP AG, SAP AMERICA, INC., and
  TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>SAP AG, *et al.*,<br><br>            Defendants. | Case No. 07–CV–1658 PJH (EDL)<br><br>**JOINT DISCOVERY CONFERENCE STATEMENT**<br><br>Date:      November 17, 2009<br>Time:      2:00 p.m.<br>Courtroom: E, 15th Floor<br>Judge:    Hon. Elizabeth D. Laporte |

Dockets.Justia.com

1    Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and

2    Siebel Systems, Inc. (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and

3    TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint

4    Discovery Conference Statement.

5    The Parties jointly request that the Court schedule at least sixty minutes on November 17,

6    2009 to discuss the issues noted below.  Oracle suggests that the Court schedule ninety minutes

7    and adopt a different structure for this final discovery conference, whereby the Parties would

8    alternate presenting, for five minutes, each issue that a Party submitted to this Statement,

9    followed by five minutes of rebuttal.  Oracle believes that this structure would allow each issue to

10   be logically and substantively addressed.  Defendants defer entirely to the Court's preference as

11   to how it wishes to conduct this specific conference; however, Defendants have no reason to

12   suggest running this conference in any manner different than that in which the Court has

13   conducted previous discovery conferences.

14   **1.** **Oracle's Issue: Defendants' Last-Minute and Burdensome Discovery Requests**

15

16   ***Oracle's Position***:  Oracle requests that the Court impose a reasonable restriction on the

17   amount of discovery Defendants can take in the last days before the discovery cut-off.

18   Oracle makes this request because Defendants have loaded an impossible amount of

19   discovery into this time period.  Oracle believes this discovery violates the spirit, if not the letter,

20   of this Court's observation that "as fact discovery winds down for the second, and it is hoped, last

21   time, the parties should be focusing on streamlining this already very large case for trial."  *See*

22   September 17, 2009 Preclusion Order at 19:17-20:5; *see also id.* at 13:22-23 (prohibiting "large

23   new waves of expensive discovery . . . at this late date").  The majority of this discovery

24   Defendants should have pursued long ago, and is improper at this late hour (including a string of

25   Rule 30(b)(6) deposition notices on dozens of topics that date to the allegations in the March

26   2007 complaint).  In total, the discovery served in the last few days to serve discovery includes:

27   - 757 Requests for Admission (primarily relating to copyrightability and statute of

28   limitations facts at issue since Oracle's first complaint),

1

1  • 21 requests for individual depositions, and

2  • Four Rule 30(b)(6) deposition notices.  These notices, combined, would require

3  between 7 and 10 witnesses, in addition to the individual notices, each of whom

4  must undertake rigorous preparation and education.  Oracle estimates the

5  combined preparation time to exceed 1,000 hours of witness and attorney time.[1]

6  Like Oracle, Defendants have had over two years to serve and seek most of this discovery.

7  Defendants' argument, below, that they are simply serving the same total amount of discovery as

8  has Oracle is beside the point; the problem is not the volume per se, but the timing.  Defendants

9  chose not take their first deposition until a year had elapsed, and further chose not to pursue the

10  topics and individuals they now seek until the last possible moment.  In meet and confer, they

11  have responded to this concern by stating that because they have deposition hours left, they are

12  entitled to use them.  But the question is not how many discovery devices Defendants have left,

13  but rather which of those requests should be prioritized before the deadline, to which both Parties

14  are subject, while meeting the other obligations set by the case schedule.

15  Defendants' argument, below, that their barrage of late discovery requests was necessary

16  because Oracle was itself late in adding its Siebel and database claims ignores some important

17  facts.  Most of this discovery does not relate to Siebel or database – for example, the RFAs

18  primarily relate to copyrightability and statute of limitations issues, few of the requested

19  individual witnesses have responsibility for Siebel or database, and more than half of the Rule

20  30(b)(6) notices relate to topics about downloading, financial reports, and the PeopleSoft

21  acquisition and copyrights.  Moreover, Oracle did not unreasonably delay in bringing its Siebel

22  and database claims.  Oracle asked Defendants to agree to those claims in April 2009, but

23  Defendants delayed agreement as to Siebel (even so, Siebel discovery has been open since early

24

25

26  [1] Defendants argue Oracle should not need as much preparation time because Defendants intend to take short depositions of these witnesses.  First, that claim is belied by the detail of the Rule 30(b)(6) notices.  Second, while shorter depositions may mean *Defendants* prepare less, it in

27  no way lessens the *witnesses'* need for detailed, complete preparation.  Oracle is entitled to prepare its witnesses as thoroughly, and without rushing, as have Defendants.

28

JOINT DISC. CONF. STATEMENT
Case No. 07–CV–1658 PJH (EDL)

1    summer) and refused entirely to agree to database, forcing Oracle to successfully move to amend.

2    Oracle is therefore not to blame for Defendants' decision to serve this discovery at the final hour.

3         Witnesses cannot get prepared overnight; indeed, by Oracle's calculation, Defendants

4    have taken, on average, 87 days to present a witness for deposition after Oracle's first request.

5    Defendants now want Oracle to cut that time more than in half, for exponentially more witnesses,

6    in the same time period, while preparing expert reports and responding to 757 RFAs.

7         In addition, much of this discovery bears little relation to the actual issues in the case.  For

8    example, Defendants recently have opened a whole new area of discovery into the allegations

9    between Oracle and PeopleSoft in the 2003 Alameda County state court litigation brought by

10   PeopleSoft in response to Oracle's unsolicited tender offer.  As explained in more detail below,

11   Defendants have subpoenaed PeopleSoft's outside counsel seeking proof of "allegations" made

12   by either party (Oracle has stipulated the allegations were made) and, most troubling, have named

13   Oracle's General Counsel, Dorian Daley, as a document custodian because she acted as litigation

14   counsel in that case.  Oracle believes this is exactly the kind of discovery expansion the Court

15   warned against in its September 17 Preclusion Order.

16        What Oracle reasonably can do, it will (subject to its substantive objections, of course) –

17   but what can reasonably be done is a marked subset of what Defendants now seek.  Additional

18   details of this last-minute and tangential discovery are provided below, and the relevant notices

19   are attached for the Court's perusal.  As a compromise on everything except the 2003 Alameda

20   litigation, which Oracle addresses separately and opposes in its entirety, Oracle proposes that the

21   Court allow Defendants seven witnesses for deposition between now and the discovery cut-off,

22   and – within that scope – not require Oracle to respond to more than three Rule 30(b)(6) topics.

23              **a.      Defendants' Recent Rule 30(b)(6) Notices**

24        On October 26 and 30 and November 2, Defendants served four Rule 30(b)(6) deposition

25   notices, on (a) TomorrowNow's downloading activity and Oracle's work product investigation of

26   that activity, (b) the documents used by the Oracle board to value PeopleSoft and Siebel in

27   connection with Oracle's acquisitions of those companies, (c) Oracle's copyrights in its support

28

1  material databases, and (d) 200 Oracle financial reports, including information for all of Oracle's

2  lines of businesses.  *See* Exhibits A, B, C, and D, respectively.

3                            **i.        TomorrowNow's Downloading**

4           Defendants' notice on TomorrowNow's downloading activity is in response to a letter

5  Oracle's counsel sent to Defendants' counsel explaining that Oracle had produced all of the

6  underlying materials Defendants need to determine whether their downloads were licensed.  *See*

7  Exhibit E.  In response, Defendants served a nine-topic notice addressed to various assertions in

8  Oracle's letter, requiring several witnesses, and covering the entire gamut of the downloading

9  discovery from the inception of the case on March 22, 2007.  The notice invades Oracle's work

10  product investigation of that activity and seeks, essentially, to discover all evidence that Oracle

11  intends to put forth on TomorrowNow's unlicensed downloading.  *See* Exhibit A.

12          Defendants have known for years about this issue (and do not claim otherwise below).

13  Nearly two years ago, Judge Legge agreed that Oracle could provide a representative to explain to

14  Defendants how to determine whether items downloaded by TomorrowNow on behalf of

15  customers were licensed.  Defendants have never asked to meet with that representative.  Nor,

16  until this notice on November 2, have they sought further discovery into these topics.

17          Just as Defendants recently contended (and the Court largely agreed) that Oracle should

18  have to conduct its own analysis from the underlying materials they produced, Oracle has long

19  ago produced the raw materials from which Defendants can perform the necessary analysis to

20  determine the licensing status of the materials TomorrowNow downloaded.  This manual process

21  is time-consuming and there are no automated shortcuts, but it can be done if Defendants take the

22  time.  Further, although Oracle is willing to explain to Defendants how to do the analysis if

23  Defendants choose this topic but not others to pursue in the remaining time, it cannot describe its

24  own work product investigation, which the notice currently seeks.

25                        **ii.        Valuation of PeopleSoft and Siebel Acquisitions**

26          On October 30, Defendants served a Rule 30(b)(6) notice that, with specific reference to

27  documents produced long ago, seeks information about how Oracle's board valued the PeopleSoft

28  and Siebel acquisitions.  *See* Exhibit B.  Defendants actually marked and used several of these

1   same documents in the individual depositions of Safra Catz, Oracle's co-President, and Douglas

2   Kehring, Oracle's SVP for Corporate Development – the senior executives uniquely

3   knowledgeable on this subject – but failed to ask about others in their possession at the

4   time.  (Defendants contend, below, that Ms. Catz and Mr. Kehring are not the best witnesses – but

5   since they did not ask about the key documents at those depositions, Defendants have no way of

6   making that conclusion.)

7        Based as they are on documents produced (and questioned about) long ago, these notices

8   are duplicative and, as with Defendants' other notices, could have been served well before now.

9   Defendants are simply seeking testimony from the same Oracle executives on the same topics.

10  They offer no justification for essentially re-opening these depositions to address documents that

11  could have been used the first time, and there is none.  *See* Preclusion Order at 18:20-23

12  (explaining how Defendants' late timing of examination of Oracle executives provided them

13  opportunity to be "well-prepared" and acknowledging how deposition preparation and testimony

14  divert valuable time of top executives).  In addition, since Defendants waited until the last minute,

15  these senior executives cannot now make themselves available in the short time remaining, due to

16  their regular obligations running Oracle, the Sun acquisition issues in Europe, the end of Oracle's

17  fiscal quarter, and Thanksgiving holiday constraints.  Oracle further notes that the sought

18  testimony is not necessary because, insofar as Oracle's damages expert is relying on the

19  referenced acquisition valuation materials, that reliance will be explained in his upcoming report.

20       For these reasons, this deposition notice is not one that should be at the front of the line,

21  and if time otherwise permitted Oracle would seek a Protective Order against it.

22              **iii.    Automated Database**

23       Before filing its Fourth Amended Complaint, and on the advice of the U.S. Copyright

24  Office, Oracle registered copyrights in its support material databases for PeopleSoft/J.D. Edwards

25  and Siebel (the "Automated Databases").  Defendants were aware of the Automated Databases

26  through the Parties' meet and confer on the Fourth Amended Complaint, and Oracle produced

27  them on July 15 and October 20.

28

JOINT DISC. CONF. STATEMENT
Case No. 07–CV–1658 PJH (EDL)

1    On October 26, Defendants served Rule 30(b)(6) notices relating to the Automated

2  Databases, which seek testimony about what is in the databases, how they were compiled, and

3  how they were registered.  *See* Exhibit C.  While these topics impinge on Oracle's copyright

4  registration legal strategy, Oracle has told Defendants it is willing to provide a written response to

5  the topics not seeking attorney-client privileged or work product information.  Defendants have

6  indicated they will oppose this offer – offering no reason why – but Oracle submits that this is

7  precisely the kind of compromise necessitated by the volume of Defendants' last-minute

8  discovery.

9                              **iv.     Financial Reports**

10    On October 30, Defendants served a Rule 30(b)(6) notice on topics relating to the over-

11  200 financial reports Oracle produced on September 15.  *See* Exhibit D.  These reports include

12  financial information regarding all of Oracle's lines of businesses and contain data for over 200

13  accounts.  The notice's topics are broad; for example, preparing a witness to describe "the charges

14  that comprise each expense item greater than $1,000,000" would require researching the charges

15  included in over fifty accounts.  Moreover, the majority of the information sought is inter-

16  company information already discussed at length at two extensive prior Rule 30(b)(6) depositions

17  of Oracle (the witness was Ann Kishore).  Through this notice, Defendants seek yet another bite

18  at the inter-entity issues, but at this stage in the litigation, such repetition is neither appropriate

19  nor feasible.

20    As a compromise, Oracle has offered to present two witnesses on November 12 and 20 to

21  attempt to respond to reasonable questions about the relevant contents of the specific reports

22  Defendants have identified; the witnesses will not, however, testify about topics already amply

23  covered by Ms. Kishore.  Oracle asks the Court to confirm this compromise proposal.

24                   **b.     Defendants' October 23 Individual Deposition Requests**

25    In addition to their last-minute Rule 30(b)(6) notices, on October 23 Defendants indicated

26  they may seek the individual depositions of twenty current or former Oracle employees.  (On

27  November 5, they added another name to their individual list for a total of twenty-one.)  Few of

28  these witnesses were new to Defendants.  Of the twenty-one, seven have already had their

1   depositions taken as Rule 30(b)(6) witnesses and could have been questioned about their relevant

2   individual knowledge (if any) at those depositions, as Defendants routinely have done.  In

3   addition, Defendants had named as custodians, and Oracle had already produced documents for,

4   twelve of the twenty-one (and had told Defendants that two others had no responsive, non-

5   privileged documents).  Nine of the twenty-one have been on Oracle's initial disclosures for some

6   months.  Of the eleven that were added to Oracle's Initial Disclosures on October 9 and the one

7   added on November 2, five have already had their depositions taken as Rule 30(b)(6) witnesses

8   and another four have been mentioned by name in other Oracle witness depositions.  In short,

9   Defendants have known about, and sought and received discovery regarding, *eighteen* of these

10   twenty-one witnesses – in some cases, since the very start of discovery.  Defendants therefore

11   cannot legitimately contend that these are newly-discovered witnesses whose depositions could

12   not have been taken long before.

13        These requests are not reasonable at this stage in the case.  When Oracle has asked for

14   deposition dates, Defendants have taken approximately a month to even provide potential dates –

15   and the depositions themselves take place, on average, nearly another two months after that.[2]

16   Despite taking three months between request and deposition for their own scheduling and

17   preparation, Defendants expect Oracle to be able to prepare for, schedule, and actually present

18   twenty-one witnesses for deposition within five weeks on an already-crammed schedule.[3]

19                   **c.        Summary of Time Required to Prepare for Late Deposition Requests**

20

21   _____

22        [2] For example, the average elapsed time between Oracle's recent requests for deposition
     dates and Defendants' responses for witnesses Hadi Arakib, Martin Breuer, John Baugh, Shelley
23   Nelson, Gerd Oswald, Werner Brandt, Julio Guzman, Laura Sweetman, Mark DeLing, Peggy
     Lanford, Desmond Harris, Eric Osterloh, Carol Geiger, Kim Martinez, and Wanda Jones is 30.6
24   days.  The average elapsed time between the requests for deposition dates and the actual
     depositions is 85.7 days (note that Mr. Guzman's and Ms. Sweetman's depositions did not go
     forward).

25        [3] Defendants asked Oracle to explain which, if any, of these witnesses were being relied
26   upon by Oracle's experts, suggesting that they may only take the depositions of those witnesses
     upon whom Oracle's experts will rely.  However, that request is an inappropriate attempt to pry
27   into Oracle's work product, and, as explained above, Defendants have understood the importance
     of the vast majority of these witnesses for many months.

28

1    To summarize what effort would be required from Oracle to provide all of what

2    Defendants seek with these multiple Rule 30(b)(6) and individual deposition requests, Oracle

3    conservatively estimates that, for each Oracle witness, its counsel prepares for forty hours.  A

4    Rule 30(b)(6) witness, on average, spends ten hours meeting with counsel and another fifteen

5    preparing on his or her own, while an individual witness spends eight and five hours,

6    respectively.  Average preparation for witnesses is therefore 65 hours for a Rule 30(b)(6) witness

7    and 53 hours for an individual witnesses.  The length of the deposition does not affect this

8    preparation time, as Oracle cannot know what questions Defendants will ask, and so must prepare

9    its witnesses on all relevant topics.  Further, Defendants routinely ask even Rule 30(b)(6)

10   witnesses as many or more questions outside of the scope of the stated topics than within them.

11   Oracle assumes, conservatively, that Defendants' four Rule 30(b)(6) notices, outlined

12   above, could be met by seven to ten different Oracle witnesses.  Defendants are therefore asking

13   Oracle to undertake at least 1568 hours of deposition preparation (455 for Rule 30(b)(6) witnesses

14   and 1113 for individual witnesses, and not counting the actual hours of deposition themselves)

15   between now and December 4.

16   ***Defendants' Position:***  Oracle's account of Defendants' outstanding discovery requests is

17   partly inaccurate and generally misleading.  Oracle fails to mention that the primary reason the

18   Parties are so busy during the final weeks of discovery in this case is not because of Defendants'

19   final fact discovery requests, but instead because Oracle waited until very late in this case to add

20   its claims regarding Siebel and the Oracle database.  Oracle and Defendants are currently engaged

21   in substantial "discovery catch-up" on those claims, which could and should have been asserted

22   much earlier in the case.  Besides the "catch-up"discovery related to those claims, Defendants

23   final fact discovery requests are simply end of discovery period, "wrap up" fact discovery

24   requests.  The volume of these final requests is simply a factor of the over-breadth of Oracle's

25   claims and is not disproportionate to either the volume of discovery that has already been

26   conducted in this case or the damages that Oracle seeks in this case.  Oracle also complains that

27   Defendants' final fact discovery overlaps expert discovery, but that is totally a circumstance of

28   Oracle's own making.  To get the time extensions Oracle needed to add new claims into this case

1   well over two years after this lawsuit was filed, Oracle partially traded away its ability to conduct

2   fact discovery and expert discovery in a serial fashion by agreeing to some overlap and conceding

3   that its expert reports would be due before the end of fact discovery.  Oracle cannot now use that

4   fact to argue burden in refusing to respond to Defendants' final fact discovery requests.

5         Oracle's objections regarding Defendants' final fact discovery requests focus on three

6   specific types of discovery: (1) requests for admission; (2) individual deposition notices; and (3)

7   Rule 30(b)(6) deposition notices.

8         a.     <u>Requests for Admission</u> - It is true that Defendants served over seven hundred

9   requests for admission on Oracle on November 2.  However, Oracle fails to mention that since

10   September 30, 2009 Oracle has served 566 requests for admission on Defendants (*i.e.,* 279

11   requests on September 30, 202 requests on October 23 and 85 requests on November 2) and that

12   those requests are *in addition to* 595 requests that Oracle served on Defendants on May 20, 2009.

13   Therefore, although Defendants' November 2 requests for admission are admittedly voluminous,

14   the nature, timing and volume of those requests are consistent with the request for admission

15   discovery Oracle has recently propounded on Defendants.  Moreover, nothing in Oracle's

16   statement above suggests either a possible mutual compromise solution or a request for more time

17   to respond to Defendants' requests, on which Defendants would, of course, be willing to meet and

18   confer.

19         b.     <u>Individual Deposition Notices</u> - Oracle's complaint about Defendants' requests for

20   twenty one additional fact depositions fails to mention that: (a) many of the requested deponents

21   have just recently been added to Oracle's Rule 26 disclosures; and (b) Defendants have

22   attempted, in earnest, to meet and confer with Oracle in an effort to reduce the need for many of

23   these depositions.  Oracle has refused to provide Defendants with any meaningful information

24   that would permit Defendants to be more selective on this list of twenty-one deponents.  Thus, in

25   an effort to avoid being surprised at trial (especially in light of Oracle's recent disclosures),

26   Defendants must be permitted to depose these witnesses.  That said, and in an effort to reduce the

27   burdens on everyone, Defendants have agreed to limit these particular depositions to

28   approximately on average two hours each, and to schedule them back to back, as many as three to

1   four witnesses a day in order to ensure that they will be complete by December 4.  Thus, Oracle's

2   estimate of over 1,100 hours of preparation time is grossly disproportionate to what Defendants

3   have already agreed would be, at most, a total of 42 hours of deposition time.

4         c.      <u>30(b)(6) Deposition Notices</u> - Oracle's objections to Defendants' four recent

5   30(b)(6) notices are likewise unfounded.  Defendants remain willing to continue to meet and

6   confer with Oracle to further narrow the requested topics and to determine which topics, if any,

7   may be suitable for a written narrative response in lieu of testimony.  The Parties have so far been

8   able to reach similar agreements on other 30(b)(6) deposition notices and Defendants have no

9   reason to believe that the four notices at issue in this discovery statement are any different.

10  Nonetheless, Defendants respond as follows to Oracle's statements on each of the four topics

11  listed in its sections 1(a)(i)-(iv) above, *i.e.*, (i) TomorrowNow's Downloading; (ii) Valuation of

12  PeopleSoft and Siebel Acquisitions; (iii) Automated Database; and (iv) Financial Reports.

13        i.      <u>TomorrowNow's Downloading</u> - Defendants' November 2, 2009

14  deposition notice on this issue was in direct response to Oracle's counsel's October 13, 2009

15  letter suggesting that Oracle has additional information on this topic for which Oracle claims

16  Defendants' have failed to fully discover.  Although Defendants have already taken some

17  discovery (e.g., depositions, document requests and written discovery requests) on this issue,

18  given the assertions in Oracle's counsel's October 13 letter that Oracle has additional information

19  yet to be discovered on this issue, Defendants issued a 30(b)(6) deposition notice specifically

20  listing the topics enumerated in that October 13 letter.  Thus, there is no merit in Oracle's delay

21  allegations given that Defendants' November 2 deposition notice timely coincides with Oracle's

22  raising of this issue on October 13.

23        ii.      <u>Valuation of PeopleSoft and Siebel Acquisitions</u> - This deposition topic is

24  narrow in scope.  It calls for a witness to explain the underlying assumptions used by Oracle in

25  valuing PeopleSoft and Siebel prior to their acquisition by Oracle.  Plaintiffs contend the notice is

26  duplicative because prior witnesses, Safra Catz and Douglas Kehring, are "uniquely

27  knowledgeable on this subject."  The testimony does not bear this out.  Neither Catz nor Kehring

28  could describe the requested set of assumptions or how they were derived with any degree of

1   detail.  Because this deposition topic is limited in scope, and in recognition of the impending

2   close of discovery, Defendants remain willing to consider accepting written discovery in lieu of a

3   witness on this issue.

4           iii.    <u>Automated Database</u> - Oracle admits that it did not produce the underlying

5   PeopleSoft "automated database" and the J.D. Edwards "automated database" for which Oracle

6   claims copyright protection until October 20.  Less than a week later, Defendants served a

7   30(b)(6) notice relating to all three of the automated database copyright registrations.  Until then,

8   Defendants had not received all of the documents and information from Oracle required to

9   evaluate Defendants need for a 30(b)(6) deposition on this topic.  Defendants timely requested a

10   corporate representative on this issue and there is no basis whatsoever for Oracle to refuse to

11   provide a witness on this issue.

12           iv.    <u>Financial Reports</u> - After two years of frustrating efforts to get financial

13   information from Plaintiffs, Defendants filed a motion to compel on July 14, 2009, and the Court

14   heard the matter on August 18.  By Order dated September 8, the Court granted Defendants'

15   motion, requiring Plaintiffs to produce financial and profitability reports and "to make a witness

16   or witnesses available pursuant to Federal Rule of Civil Procedure Rule 30(b)(6) to explain the

17   contents of the reports identified . . ." in the Order.  Dkt. 463.  Plaintiffs produced these reports on

18   September 15.  On September 25, Plaintiffs produced similar reports for Siebel Systems, Inc. and,

19   on October 22, Plaintiffs produced additional profitability reports in response to the Order.  To

20   the extent that Oracle complains that this particular 30(b)(6) deposition is occurring late in the

21   fact discovery period, it is wholly a result of its failure to produce the underlying information at

22   an earlier date.

23        Defendants first served a notice of a deposition concerning these financial reports on

24   October 19.  Thereafter, Plaintiffs complained that the notice was too general and requested that

25   Defendants reissue the notice with greater particularity.  Defendants complied and on October 30

26   issued an amended notice setting forth the topics with greater particularity.  Plaintiffs now appear

27   to contend that the amended notice seeks too much, rather than too little detail.  Regardless, the

28

1   deposition on this issue is already scheduled to commence on November 11 and then set to

2   continue on November 18 and 20.  There is no need for the Court's intervention at this time.

3       **2.      Oracle's Issue: Defendants' Request for Discovery About the 2003
4                PeopleSoft Acquisition-Related Litigation**

5       *Oracle's Position:*  Oracle asks the Court to confirm the limited compromise offered

below, and otherwise prevent Defendants from pursuing this line of discovery.

6       Because of irrelevance, burden, and the amount of relevant discovery required in this

7   action, Judge Legge rejected Defendants' previous attempt to seek discovery about the litigation

8   between Oracle and the DOJ in connection with Oracle's proposed acquisition of PeopleSoft.[4]

9   Nonetheless, Defendants recently resurfaced this topic in a variety of discovery requests related to

10  the companion litigation to the DOJ action – the California litigation brought by PeopleSoft

11  against Oracle in Alameda Superior Court (the "2003 Alameda Action").  Oracle's tender offer

12  for PeopleSoft sparked several related lawsuits, including the antitrust case and the 2003 Alameda

13  Action, which centered on allegations that Oracle's tender offer was not made in good faith (as

14  history proved, it was).

15      Defendants have served a subpoena on PeopleSoft's then-counsel, Folger & Levin, for its

16  2003 Alameda Action litigation files, and sought documents from Oracle's General Counsel,

17  Dorian Daley, who at the time served as in-house litigation counsel for that action, former Oracle

18  employee Harry You, who advised Oracle in connection with the acquisition, and now-Chairman

19  Jeff Henley, who at one point during the acquisition efforts was Oracle's CFO.  Folger and Oracle

20  have objected to these requests on numerous grounds.  Folger's objections – which include an

21  assertion of attorney-client privilege and work product on Oracle's behalf as Folger's client – are

22  attached as Exhibit F, and describe both the 2003 Alameda Action and more detail behind the

23  requests and objections.  Oracle objects to this discovery on a variety of grounds:

24

25  _____

26      [4] *See* February 22, 2008 Report and Recommendations re Discovery Hearing No. 1 (Dkt.
    No. 66) at 8 ("The subject matter of the two proceedings, the 2004 antitrust proceeding and this
27  downloading case, are different.  While some information helpful to this case <u>might</u> be included
    in the antitrust material, it does not presently justify the burden of searching that information
28  base.") (emphasis in original).

1         *Irrelevance.*  First, as Judge Legge noted when discovery was beginning, the

2    Oracle/PeopleSoft acquisition battle is not sufficiently relevant to the issues in this case to

3    warrant these burdensome requests; this conclusion is even more apt now at the close of

4    discovery.

5         During meet and confer, when Oracle's counsel asked for the bases for these requests,

6    Defendants' counsel asserted that if Oracle or PeopleSoft had *alleged* the others' actions in the

7    takeover battle were creating fear, uncertainty, and doubt ("FUD") in the PeopleSoft customer

8    base, then that would undermine Oracle's damages claims in this case, because such FUD *could*

9    have caused customers to go to TomorrowNow.  In following correspondence, Oracle's counsel

10   responded that the language of the 2003 Alameda Action parties' allegations was undisputed (the

11   complaint and answer are public), and further confirmed that Oracle did not dispute that FUD

12   existed in the marketplace (including from SAP) about how the acquisition might impact the

13   PeopleSoft customer base.  (In addition to the public pleadings, which Defendants already possess

14   and to which they referred during the meet and confer and in their November 2, 2009 RFAs, there

15   are also numerous articles and analyst reports on the then-existing FUD and its impact, as well as

16   articles on the impact of SAP's acquisition of TomorrowNow at that critical time.)  Defendants

17   and Oracle can certainly make whatever causation arguments are available from those facts.  But

18   there is  no adequate basis to burden either Folger or Oracle for production of additional,

19   cumulative documents on the 2003 Alameda Action.

20        *Burden.*  Folger and Oracle have objected to production on burden grounds, including the

21   work required to review an estimated 1500 pleadings, many of which likely contain or attach

22   third party confidential information subject to a separate protective order.  As such, this will not

23   be a "very manageable" production, as Defendants speculate below, but instead promises to be a

24   painstaking and complex task.  (Consider, by way of comparison, how many lengthy, detailed

25   documents – with how many equally complex exhibits – the Parties to this litigation have filed in

26   about 550 docket items.)  The confidentiality of third party information alone was a significant

27   issue in the 2003 Alameda Action, which involved extensive third party discovery.  Judge Legge

28   was familiar with this issue, having served as the Special Master to handle third party

1   confidentiality issues in the related antitrust case.  There is also significant burden related to

2   attorney/client privilege determinations, particularly since Folger did not maintain separate email

3   files for privileged and non-privileged communications.  (Ms. Daley has already reviewed her

4   files relating to the 2003 Alameda Action and does not report having kept a significant amount of

5   material, so the objections as to her designation as a custodian do not include burden on this

6   ground.)

7        *Oracle's Counter-Proposal:*  As a compromise, Oracle offered to search the documents of

8   Messrs. You and Henley and produce any non-privileged material on how Oracle valued

9   PeopleSoft, the only justification Defendants could offer for seeking those individuals'

10  documents.  This narrowing would significantly reduce the production burden, particularly as to

11  Mr. Henley, who, as Oracle's chairman, would yield a huge amount of documents for review if

12  the entire search term list were used.  This is a reasonable compromise, which mirrors other

13  recent narrowing of search and production requests by both Parties to allow relevant discovery to

14  be completed in the remaining time.  Defendants offer no legitimate reason to reject it.  Oracle

15  asks the Court to confirm this compromise or otherwise provide guidance on a motion to compel

16  or protective order.

17       ***Defendants' Position:***  Defendants seek to compel compliance with a third party

18  subpoena served on PeopleSoft's outside counsel, Folger Levin & Kahn, concerning PeopleSoft's

19  state court action against Oracle (the "2003 Alameda Action").  Defendants served the subpoena

20  on September 22, 2009, two and one-half months before the close of discovery.  In light of

21  Oracle's preliminary indications of resistance to the subpoena, Defendants included this issue in

22  the Joint Discovery Conference Statement filed on September 23, 2009.  Since that time, Folger

23  has served objections and Oracle has adopted the issue as its own.  Also, for context, it is worth

24  noting that the scope of third party discovery Defendants have served in this case is minimal in

25  comparison to that served by Plaintiffs.  Plaintiffs have served 141 third party subpoenas,

26  compared to approximately 13 served to date by Defendants.  Moreover, Oracle has served

27  discovery on four of Defendants' outside law firms and has served discovery on two of them

28  twice.

14

1   The 2003 Alameda Action bears directly upon Oracle's alleged damages and Defendants'

2   assertion that they did not cause those damages.  In the 2003 Alameda Action, PeopleSoft alleged

3   that "Oracle launched a scheme designed to destroy PeopleSoft" and "embarked on a campaign of

4   disinformation in an attempt to cripple PeopleSoft's ability to sell its software and to poach its

5   customers."  PeopleSoft v. Oracle, etc., Second Amended Complaint, ¶¶ 2, 12.  In this litigation,

6   and by substituting the word "poach" for "lure" to describe the same set of customers, Oracle

7   alleges that SAP used TN "to attempt to lure [former PeopleSoft customers] to SAP's

8   applications software platform and away from Oracle's."  FAC at ¶ 16.  One of Defendants'

9   defenses to this allegation is that TN did not cause customers to leave Oracle, instead, the cause

10  lies elsewhere, including the fear, uncertainty and doubt ("FUD") caused by Oracle's actions

11  during its hostile acquisition of PeopleSoft.

12  The parties have met and conferred on this issue.  Plaintiffs concede that Oracle's own

13  actions toward PeopleSoft created FUD, but contend that SAP "magnified" the FUD.  Even if that

14  were the case, Defendants are entitled to information that would enable it to parse out the FUD

15  created by Plaintiffs and the FUD allegedly created by Defendants.  This need is not met by

16  Plaintiffs mere agreement that allegations were made.  The content of those allegations, and any

17  underlying source documents confirming or substantiating those allegations, is sought in

18  Defendants' subpoena.  Whether Plaintiffs "agree" that such allegations were made, therefore,

19  does not address the intent of the subpoena.

20  Folger would not bear an undue burden in responding to the subpoena.  They contend, and

21  Plaintiffs do not argue to the contrary, that only 1,500 pleadings and "a small number of

22  deposition transcripts" are potentially responsive.  Whether compared to the production of both

23  parties, or to productions by any of the 141 third parties subpoenaed by Oracle, this is a very

24  manageable production.  Moreover, Defendants have offered to bear the reasonable cost of

25  Folger's review and/or to alleviate as much of the burden as possible by offering to review

26  Folger's documents and identify a lesser number of documents to be reviewed and possibly

27  produced by Folger.  That offer remains open.  Contrary to Plaintiffs' assertion, any

28  confidentiality issues surrounding third party information does not change the analysis.  The

1    Stipulated Protective Order addresses this issue, and its ability to adequately address the issue is

2    confirmed by the productions of third parties subpoenaed by Oracle.

3         Finally, Defendants note that this issue is narrower than Plaintiffs portray it.  It does not

4    include the production of documents for Harry You and Jeff Henley, and it is not informed by a

5    recommendation from Judge Legge to deny a request for discovery into the DOJ's investigation

6    of Oracle.   Messrs. You and Henley were added to Defendants' custodian list in response to

7    information learned during another recent deposition.  The two custodians were timely added and

8    should be processed accordingly.  Although some of their responsive documents may relate to the

9    2003 Alameda Action, that is the only connection between the two custodians and the subpoena

10   of Folger.  Defendants have repeated this distinction in multiple meet and confer

11   communications.  Regardless of whether Plaintiffs' acknowledge the distinction, Oracle's

12   obligations to produce You and Henley's documents does not bear upon whether Folger must

13   respond to the subpoena, and vice versa.  The proposed compromise, to produce a limited set of

14   documents from these custodians, is not only a non-sequitur, it is inconsistent with the rules of

15   discovery.  If Oracle persists in its refusal to cooperate with this subpoena, Defendants' request

16   permission to file a motion to compel.

17         **3.**      **Oracle's Issue: Defendants' Request for Ms. Daley's Custodial Production**

18         Oracle asks that the Court preclude Defendants from seeking Ms. Daley's documents, or

19   permit Oracle to file a motion for protective order.

20         As described above, Defendants seek Ms. Daley's documents as part of their 2003

21   Alameda Action discovery.  They also now contend that they seek Ms. Daley's documents

22   because of her involvement with the investigation of TomorrowNow leading to Oracle's

23   complaint.  However, as Oracle has explained, Ms. Daley acted only as litigation counsel in that

24   investigation, so her documents would be almost entirely protected from disclosure by work

25   product and attorney-client privilege.  Defendants speculate, below, that Ms. Daley possesses

26   nonprivileged, relevant communications with third parties and Oracle employees, but even if that

27   is true, there could not be more than a handful of such communication that result from a very

28   laborious review process, and Defendants offer no reason why those documents should matter to

1   this case (and take the curious position that they have no obligation to tell Oracle or this Court).)

2   And, given the months-long investigation Oracle conducted, the burden of this review, and the

3   resulting logging effort, would be time-consuming and yield almost nothing of non-privileged

4   relevance.  Ms. Daley is unlike other lawyer custodians in the case because she had essentially no

5   non-litigation role at that time.

6          Oracle has also objected because of the apparent retaliatory nature of the request, which

7   only came after Oracle sought documents from the SAP in-house counsel who led SAP's

8   acquisition of TomorrowNow.  Those lawyers were acting in transactional and business

9   capacities, not as litigation counsel, and appear on non-privileged produced documents related to

10  the business decisions SAP made in acquiring TomorrowNow.  The same cannot be said for Ms.

11  Daley.  Defendants' counsel appeared to confirm that they had named Ms. Daley to balance the

12  scales, suggesting in a meet and confer call that the Parties could agree to mutual lessening of the

13  privilege log entries related to in-house counsel.  Oracle rejected that suggestion, since the SAP

14  in-house counsel productions Oracle seeks are relevant and non-privileged, while Ms. Daley's are

15  not.  Oracle therefore asks the Court to preclude Ms. Daley as a custodian on harassment grounds,

16  or to allow Oracle to file a motion for protective order.

17          ***Defendants' Position:***  Oracle has admitted that Dorian Daley has relevant non-privileged

18  documents.  Ms. Daley does not operate in a vacuum.  For example, to properly perform her

19  duties as in-house counsel, she indisputably has corresponded in a non-privileged manner with

20  third parties and in those portions of her communications with Oracle's employees that are

21  primarily business, rather than legal, in nature.  Oracle's only complaint is burden because Ms.

22  Daley is a lawyer and thus the privilege review of her data would take longer than other non-

23  lawyer custodians.  To address Oracle's burden concerns, Defendants have offered to discuss and

24  hopefully agree on a mutually applicable arrangement whereby the privilege logging for the

25  Parties' General Counsels would be streamlined.  Oracle refused that offer.  Moreover,

26  Defendants have asked for far fewer lawyer custodians than Oracle has.  Oracle has requested,

27

28

1    and Defendants have agreed to produce, documents for eight of Defendants' lawyers,[5] not

2    including the four of Defendants' outside law firms that Oracle has also subpoenaed.   Defendants

3    have requested documents for only five of Oracle's in-house lawyers.[6]

4           Defendants are not required to disclose to Oracle all of the reasons they have for selecting

5    Dorian Daley as a custodian.  It is sufficient to show that she has relevant data, which Oracle

6    admits.  Ms. Daley was timely designated as a custodian and has relevant documents that are not

7    exempt from discovery just because she is Oracle's General Counsel.  Thus, Dorian Daley's

8    relevant, non-privileged documents should be produced.  Defendants remain willing to discuss a

9    mutual agreement whereby the burdens associated with the logging of their respective General

10   Counsel's documents can be reduced.

11

12        **4.        Defendants' Issue: Oracle's Inconsistent Designation of the Amount of Its
                Alleged Damages as Both Confidential and Non-Confidential**

13        *Defendants' Position:* Oracle has inconsistently designated the portions of its written

14   discovery responses and deposition testimony that contain information regarding the amount of

15   alleged damages Oracle is seeking in this case.  Just recently, Oracle agreed to de-designate

16   certain portions of its discovery responses and testimony relating to the amount of its alleged

17   damages that were the subject of Defendants' motion for partial summary judgment heard by

18   Judge Hamilton on October 28.  Oracle should not be able to strategically disclose portions of its

19   discovery responses and testimony related to the amount of its alleged damages and yet still keep

20   other portions containing the exact same type of information designated Confidential or Highly

21   Confidential.  Oracle's recent de-designation of its alleged damages amounts is a waiver of those

22        _____

        [5]   Plaintiffs have requested documents from (and in four instances deposed, or are
23   currently scheduled to depose) the following eight in-house lawyers currently employed by
     Defendants: Tom Nolan - TomorrowNow's General Counsel; Michael Junge - SAP General
24   Counsel; Brad Brubaker - SAP Sr. Vice President and General Counsel Global Field Operations;
     Tim Crean - SAP Chief IP Officer, who has been deposed; Jochen Scholten - SAP Associate
25   General Counsel, who is currently scheduled to be deposed; Chris Faye - SAP Director, IP
     Transactions, who was deposed as a 30(b)(6) witness; and Scott Trainor – SAP Vice President,
26   who was deposed.

        [6]   In addition to Ms. Daley, Defendants have only designated four other Oracle in-house
27   lawyers as custodians for whom documents should be produced, Todd Adler, Thomas Angioletti,
     David Chavez and Michael Poplack.
28

                                                    18

1   other portions of its discovery responses that have the same or similar information.  Defendants

2   intend to request further guidance from the Court on this issue at the Discovery Conference.

3           *Oracle's Position:*  This is a non-issue.  Oracle allowed certain portions of its

4   Supplemental Initial Disclosures relating to the amount of its alleged damages, previously filed

5   under seal, to be filed publicly in conjunction with Defendants' motion for partial summary

6   judgment in light of Judge Hamilton's Standing Order for Cases Involving Sealed or Confidential

7   Documents, which identifies the escalating standards for sealing documents as a case proceeds

8   through dispositive motion practice and, ultimately, trial, including a "compelling reasons"

9   threshold to seal information contained in dispositive motions and a "most compelling reasons"

10  threshold to seal information at trial.  While Defendants offer no specifics about what inconsistent

11  "discovery responses" they are referring to, an agreement to allow the public filing of Oracle's

12  specific damages numbers from its Supplemental Initial Disclosures could not constitute any sort

13  of general waiver under the Stipulated Protective Order.   Further, Defendants have repeatedly

14  instructed Oracle to file SAP Confidential and/or Highly Confidential material publicly, while at

15  the same time stating that such a public filing does not constitute a waiver of confidentiality

16  designations.  As the litigation continues, Oracle will act consistently with its positions regarding

17  the damages numbers in its Supplemental Initial Disclosures and work with Defendants to resolve

18  any specific concerns they may have.  Oracle does not see the need for any guidance from the

19  Court in light of Defendants' unspecific and generalized claims.  However, any guidance that

20  Defendants do seek on this issue at the Discovery Conference should apply equally to

21  Defendants' own positions regarding publicly-filed information previously designated

22  Confidential or Highly Confidential under the Stipulated Protective Order.

23

24          **5.        Oracle's Issue: The List of 86: TomorrowNow Customers that Also
                        Purchased an SAP Software Application**

25          *Oracle's Position:* Oracle asks that the Court order Defendants to comply with the

26  Parties' agreement on production of documents relating to certain customers.

27          On November 3 – thirteen days before Oracle's damages expert report is due, a month

28  before the end of discovery, and the day after Oracle could serve any final discovery requests –

1   Defendants informed Oracle that they had discovered seven additional TomorrowNow customers

2   that had also purchased an SAP software application.  The Parties had previously agreed that

3   Defendants will produce contract and financial data for TomorrowNow customers that purchased

4   SAP software components.[7]  The purpose of this discovery was to determine the extent and

5   amount by which SAP turned TomorrowNow customers into SAP customers, regardless of

6   whether through a parent or affiliate.  Nonetheless, after belatedly telling Oracle about these

7   seven additional customers, Defendants stated they would *not* add these customers to their official

8   list of TomorrowNow customers that purchased SAP applications (Defendants' "List of 86").

9   Presumably, Defendants will therefore not produce the corresponding contract or financial

10  information for these customers.  Defendants also implied they would not identify any other such

11  customers or produce contract and financial information for them, because "the size and

12  complexity of many of the customers and their numerous affiliates and multiple names" makes it

13  difficult to identify them  *See* Jason McDonell's November 3, 2009 letter, attached as Exhibit G.

14  (Of course, the Parties have previously discussed precisely this issue with the Court, and

15  nonetheless Oracle supplemented its production to the best of its ability given corporate records

16  on September 15, 2009, as ordered.)[8]  If Defendants could not determine whether a customer

17  moved to a parent or affiliate's contract with SAP, Defendants should have produced the parent

18  and affiliate information by September 15 instead of unilaterally making the decision to cut off

19  Oracle's knowledge of or discovery into these potential damages.

20      Since November 2 was the last day to serve written discovery, Oracle cannot now seek

21  discovery for these seven customers or other unidentified customers.  Accordingly, Oracle asks

22  the Court to order Defendants to produce contract and financial information for these and any

23  other customers that should properly be on the List of 86.  Oracle also reserves its rights with

24  respect to what, if any, relief they may seek regarding Defendants' failures.

25  _____

26  [7] The Parties' November 18, 2008 Expanded Discovery Timeline Agreement defined the
    relevant group of customers as "those customers involving at least one of the following: (a) all
    TN customers; (b) Safe Passage deals with TN as a component; or (c) SAP sales to TN customers
27  after acquisition of TN."

28  [8] On October 17, Defendants added 3 names to its "List of 83," making it a "List of 86."

1    **_Defendants' Position:_** Oracle misunderstands Defendants' November 3, 2009 letter.  As a

2    courtesy, and to be transparent in the discovery process, Defendants notified Oracle of seven

3    TomorrowNow customers who may have migrated to SAP via their parent companies' volume

4    contracts with SAP.  Because a reasonable search of centrally maintained information did not

5    confirm that these TomorrowNow customers moved to SAP, Defendants contend that they do not

6    fall within the agreed upon parameters for inclusion on the List of 86, and Defendants do not

7    agree to add them.

8        As background, the List of 86 is the list of SAP customers for which Defendants' agreed

9    to produce discovery in this case (though Defendants' reserve their rights as to whether any of

10   these customers are ultimately relevant to disgorgement damages).  Initially, Oracle sought

11   discovery of all 800-plus "Safe Passage" SAP customers, which included SAP customers who

12   never had a TomorrowNow maintenance agreement.  The parties then agreed to limit discovery to

13   the subset of these Safe Passage customers that purchased TomorrowNow service and SAP

14   products/support simultaneously or were existing TomorrowNow customers at the time they

15   purchased new SAP software or service.

16       Defendants spent a great deal of time and effort determining the List of 86, which proved

17   to be difficult in light of the size and complexity of many of the customers and their numerous

18   affiliates and multiple names.  One example involves the type of customers at issue here, _i.e._,

19   TomorrowNow customers that are subsidiaries of parent companies who are SAP customers.

20   Upon ending TomorrowNow maintenance, one possibility is that such customers moved to SAP

21   software via their parent companies' SAP licenses, rather than directly purchasing software and

22   service from SAP.  SAP, however, does not typically maintain records regarding specific

23   locations of software installations per a customer license.  Rather, a parent company can purchase

24   a certain number of "seats" from SAP, and then use them anywhere, including at subsidiary

25   companies.  Thus, upon ending TomorrowNow maintenance, a subsidiary company may have

26   moved to SAP software via a parent license without SAP documenting this in its records.

27       Upon becoming aware that these seven TomorrowNow customers may have moved to

28   SAP by using seats available on their parent companies' license, Defendants reviewed SAP's

21

1    centralized contract/financial system (the "ISP system") and spoke with SAP account executives.

2    Even after this analysis, however, Defendants could not confirm whether these TomorrowNow

3    customers in fact moved to SAP software via a parent license, or otherwise.  All SAP could

4    definitively determine was that these former TomorrowNow customers did not directly license

5    with SAP following the expiration of their TomorrowNow maintenance agreement.  The

6    customers themselves presumably can verify whether or not they fall within the agreed upon

7    parameters for the List of 86.

8            As a practical matter, these customers should be deemed irrelevant and immaterial for all

9    purposes.  The fact that the evidence does not show any new purchase of SAP software by these

10   customers as part of the Safe Passage marketing program indicates that they could not be

11   appropriate candidates for disgorgement damages.  Even if they did move to SAP software and

12   did so via using seats on their parent company's license, there is no reasonable basis upon which

13   Oracle could prove disgorgement damages for these customers.

14           **6.**        **Mutual Issue: The Parties' Potential Discovery Motions**

15           In this section, the Parties set out the issues that they believe may require motion practice.

16   As has been the Parties' practice, though each disagrees with the other's contentions, they do not

17   separately respond to those contentions here.

18            The last day to file motions to compel is December 11 and, as with the discovery cut-off,

19   Oracle believes it is important for the case to remain on schedule and conform to these deadlines.

20   Accordingly, Oracle suggests that, to the extent that each side raises specific issues in this

21   Statement and the discussion at the Conference itself confirms, each side be permitted to file a 30-

22   page initial omnibus brief on December 11, with any motions related to third parties filed

23   separately on the same day.  Oracle believes that, consistent with past practices, any issues not

24   specifically raised in this Statement (see Defendants' sections 6(b)(5) and (6), below) should be

25   ineligible for inclusion in the last round of motions.  Defendants suggest the Parties discuss with

26   the Court during the conference the briefing schedule and related numbers of motions and page

27   limits that the Court may deem appropriate.

28           **a.**        **Oracle's Potential Discovery Motions**

1

### 1.     RFAs re TomorrowNow's Business Model

2          As the Court will recall, the Parties discussed certain of Oracle's RFAs relating to

3   TomorrowNow's business model at the September 30 Discovery Conference, and the Court set a

4   briefing schedule for Oracle's motion to compel if meet and confer were not successful.  That

5   schedule called for Oracle's opening brief to be filed on November 11.

6          Because the Parties' meet and confer is making progress, but will not be concluded by

7   November 11, Oracle determined it would be more efficient to delay filing any motion to compel.

8   Defendants agreed they would not oppose moving the briefing schedule on that basis.

9   Accordingly, Oracle will not file an opening brief on November 11, and seeks the Court's

10  approval to move the filing date to December 11, should meet and confer prove unsuccessful.

11

### 2.     Privilege Issues Relating to Scott Trainor's Deposition and Documents

12

13          Oracle took the deposition of Scott Trainor, former in-house counsel for PeopleSoft and

14  current in-house counsel for SAP, on October 13, 2009, seeking information about how Trainor

15  negotiated contract terms with prospective and current TomorrowNow customers and how he

16  maintained his ethical obligations to PeopleSoft.  This information is important to the case

17  because SAP appears to have been using Trainor, who had engaged in privileged communications

18  and analyses regarding the meaning of the PeopleSoft license agreements while at PeopleSoft, to

19  persuade customers that handing over copies of their PeopleSoft software to TomorrowNow did

20  not violate their PeopleSoft license agreements.

21          During the deposition, two privilege-related issues arose, which Oracle addressed by letter

22  on November 3.  *See* Exhibit H.  First, when Oracle introduced Exhibit 1683 at the deposition,

23  Defendants clawed it back.  Oracle does not believe the clawed-back portions of the document are

24  privileged and requests that the Court order Defendants to explain the basis of the claim.  In

25  addition, Oracle believes Defendants have waived any privilege that might otherwise have

26  applied.  On August 31, Defendants produced a disc of materials after *re-reviewing* for privilege,

27  stating they "removed the privilege designation on portions of these documents."  On that disc

28  was SAP-OR00677727, a document with the exact same content as the document that Oracle

23

1   introduced at the Trainor deposition as Exhibit 1683.  When Oracle showed SAP-OR00677727 to

2   Defendants at the deposition to make this point, they clawed it back as well.  However, this is not

3   an instance of an inadvertent production – Defendants engaged in an active and methodical

4   review of SAP-OR00677727 and told Oracle they had "removed the privilege designation."

5   Oracle relied on this statement in circulating the document, discussing it, and using it for

6   deposition preparation. Oracle has accordingly requested that Defendants re-produce the

7   documents.  Oracle requests that it be allowed to move to compel production of the document,

8   and that the Court review it *in camera* if the Parties cannot come to an agreement.

9          In addition, Defendants' counsel made several privilege instructions at Mr. Trainor's

10  deposition that Oracle believes were unjustified, and that go directly to the issues described above

11  that make Mr. Trainor an important witness.  For example:

12          Q.  Let's turn to page 5 of the document.  Under – and this is – actually, if you go back to
             page 4, you'll see the title is, paragraph 9, "Indemnity."
13          A.  Yes.
             Q.  And that goes on for several paragraphs.  Do you see that?
14          A.  I do.
             Q.  There's a bracket right after the title which begins page 5 of the agreement:  We do not
15          have access to the terms of the PeopleSoft license.  We therefore need this protection.
             Were those your words?
16          A.  I don't know.
             Q.  Were they SAP or TomorrowNow words?
17          A.  I –
             MR. McDONELL:  Lack of foundation, calls for speculation.  Don't disclose privileged
18          information.
             THE WITNESS:  I can't tell from this redline who said it.
19          Q.  Well, this was a redline that you sent to their outside counsel for purposes of
             negotiating the agreement.  True?
20          A.  Yes.
             . . .
21          Q.  Now, is it true that you did not have access to the terms of PeopleSoft licenses?
             A.  Yes.
22          Q.  You had worked with them for some time when you worked as an attorney for
             PeopleSoft.  True?
23          A.  True.
             Q.  And so did you compartmentalize that – your experience?
24          MR. McDONELL:  Calls for mental impressions of an attorney.  I'll instruct you not to
             answer on work product grounds.
25          Q.  Did you take any steps to avoid relying on your memory of the PeopleSoft
             licenses in negotiating the terms of these licenses with TomorrowNow customers?
26          MR. McDONELL:  Same objection, same instruction not to answer.  (111:12-113:23)

27

28

In this example, and many others like it on this and other topics, Oracle believes the question did not seek attorney-client privileged communications or work product. Oracle will continue to meet and confer with Defendants on both Exhibit 1683 and the privilege instructions, but asks that the Court permit Oracle to include these issues in a collective motion to compel to be filed on December 11.

### 3.      Affirmative Defense-Related Discovery

On November 2, Defendants served a Rule 30(b)(6) notice seeking testimony on topics pertaining to Defendants' downloading activities and the corresponding license rights, as described in Section 1(a)(i), above.

While Section 1(a)(i) identifies Oracle's specific concerns regarding this burdensome request, Defendants' notice also spotlights several of their own discovery responses. Oracle has long sought comprehensive discovery from Defendants pertaining to their affirmative defenses, to which Defendants have regularly objected partially or entirely on a variety of bases, including burdensomeness and attorney-client privilege/work production protection. However, if Defendants are seeking detailed discovery from Oracle on their own downloading and licensing activity, which relates to their affirmative license and other defenses, then Oracle needs corresponding responses from Defendants.

Oracle therefore seeks a briefing schedule on a motion to compel further responses to Interrogatory 4 from Oracle USA's First Set of Interrogatories ("Identify all agreements between Plaintiffs and their customers and/or former customers on which you base the contentions made in Your Answer's Affirmative Defenses, including but not limited to Identifying which terms of those agreements form the basis of Your contention") and Interrogatory 5 from Oracle Corporation's 3rd/2nd Set of Interrogatories ("Describe any effort any Defendant has made to determine whether SAP TN had authority or license to possess, Use, or transfer any Local Environment or Software and Support Material on its computer system as of March 22, 2007"), as well as confirmation from Defendants that they have produced all documents responsive to RFPs 86 and 88 (asking for all documents relating to affirmative defenses). While Oracle will be

1    meeting and conferring with Defendants regarding this issue, Oracle asks that this issue be

2    considered on a December 11 briefing schedule in the event a resolution cannot be reached.

3              **4.      Motion to Compel Production of Documents by Finnegan and**
                         **Fenwick**
4
             Oracle served identical subpoenas on Fenwick & West LLP (on July 7, 2009) and
5
     Finnegan Henderson Farabow Garrett & Dunner LLP (on October 7, 2009), two law firms that
6
     represented SAP during its acquisition of TomorrowNow, to learn what SAP learned about
7
     TomorrowNow's illegal business model during due diligence.  The subpoenas therefore requested
8
     documents concerning SAP's due diligence, including relating to Board of Directors meetings
9
     discussing the acquisition, e-mails, and documents reflecting the quantity of time billed for this
10
     due diligence.  Meet and confer, which included Defendants' counsel, was unsuccessful and both
11
     firms served objections to the subpoenas and refused to produce any documents, claiming they
12
     seek irrelevant information that is duplicative of subpoenas served by Oracle in January 2008.
13
     Oracle has requested additional information from both Fenwick and Finnegan concerning the
14
     basis for their objections.  On November 4, Fenwick indicated that it would respond to Oracle's
15
     request in "due course."  On November 10, Oracle received a  response from Finnegan, in which
16
     Finnegan did not describe in any detail how a search for the requested information would be
17
     cumulative of its prior production, other than it purportedly would involve the "same steps" as
18
     before.
19
             The subpoenas seek relevant information.  The time, if any, SAP invested in due diligence,
20
     and documents and communications concerning that due diligence, directly relate to SAP's
21
     knowledge of TomorrowNow's infringement and other misuse of Oracle's intellectual property.
22
     The subpoenas seek materials from the law firms that will help answer these issues.  Nor are these
23
     subpoenas duplicative of the January 2008 subpoenas, which requested communications between
24
     SAP, a third party, or a government agency relating to TomorrowNow's agreement to be acquired
25
     by SAP.  In response to the January 2008 subpoena, Finnegan produced federal filings, letters,
26
     and a presentation, all of which authored either by Oracle or by a company later acquired by
27
     Oracle.  Finnegan produced no relevant email communications, which indicates it may not have
28

                                            26                    JOINT DISC. CONF. STATEMENT
                                                                  Case No. 07–CV–1658 PJH (EDL)

1  used relevant search terms.  Fenwick, in turn, produced one email chain initiated by Seth Ravin

2  and TomorrowNow template contracts in response to the January 2008 subpoena.  In contrast, the

3  2009 subpoenas seek documents relating to SAP's due diligence for the acquisition, which the

4  January 2008 subpoenas did not seek and Fenwick and Finnegan have not produced.  Responding

5  to the 2009 subpoenas would therefore not duplicate the firms' prior searches or responses.

6         Defendants, Finnegan, and Fenwick all contend that Oracle should have included its 2009

7  document requests in its January 2008 subpoenas.  But Finnegan and Fenwick have made no

8  showing as to how, if at all, a search for the requested information would duplicate their efforts

9  made in response to the January 2008 subpoenas.  Further, as of February 19, 2008

10  (approximately two months after Oracle had drafted and served the early January 2008

11  subpoenas),  neither SAP AG nor SAP America had produced any documents in response to

12  Oracle's requests for production.  Thus – having not yet had the chance to review SAP's

13  documents before drafting the January 2008 subpoenas – Oracle did not have any basis to include

14  the categories of documents it later requested in the 2009 subpoenas.

15         As the parties have reached an impasse, Oracle requests permission to file a motion to

16  compel on December 11.

17              **b.    Defendants' Potential Discovery Motions**

18                   **1.    Oracle's Unjustifiable Delay in Producing 30(b)(6) Documents**

19         Oracle presented a 30(b)(6) witness, Jason Kees, for deposition beginning at 10:00 a.m. on

20  October 15, 2009 relating to Oracle's allegations of harm to its computers related to the Siebel

21  product line.  At 4:30 p.m. on the day before the deposition, Oracle produced a hard drive with

22  approximately 26.5 GB of historical log files relating to Siebel's customer support website.  The

23  log files that Oracle produced on October 14 were collected by the witness sometime in mid to

24  late 2008, well after this litigation began and approximately a year before the deposition.

25  Although Defendants' counsel did not have sufficient time to review, much less analyze, the

26  enormous volume of data produced literally the night before the deposition, Defendants used the

27  readily available information regarding the contents on the hard drive during the deposition to at

28  least question the witness regarding the origin and general type of information contained in the

JOINT DISC. CONF. STATEMENT
Case No. 07–CV–1658 PJH (EDL)

1   log files.  That questioning revealed other documents relating to this corporate representative

2   witness's testimony that had also not yet been produced to Defendants.  Oracle's counsel

3   produced a few of those documents during the deposition, and again, Defendants' counsel did the

4   best they could on the fly with those documents during the deposition.  On November 3, 2009

5   Oracle produced several Excel spreadsheets, which appear to be an analysis of at least some of

6   the historical log files Oracle produced on October 14.  The concerning aspects of this November

7   3 production, include but are not necessarily limited to the facts that: (a) the metadata for the

8   excel files indicate that they were created on September 23, 2009 by Uwe Kohler, who was

9   Oracle's 30(b)(6) witness on "harm to computers" for the PeopleSoft and J.D. Edwards product

10  lines; (b) the production apparently could and should have occurred well before Kees' October 15

11  deposition; and (c) Oracle's production of these files on November 3 was one day after the

12  deadline for the Parties to serve their final written fact discovery requests.  Defendants will

13  continue to meet and confer with Oracle on this issue, but if an appropriate remedy for the

14  unjustifiable delays in Oracle's production of these materials is not reached by agreement of the

15  Parties, then Defendants intend to seek appropriate relief from the Court.

16              **2.       Unresolved Deposition Requests**

17              In response to the Stipulated Revised Case Management and Pretrial Order, Defendants'

18  requested Rule 30(b)(6) depositions for Siebel to cover the same topics that Oracle provided

19  PeopleSoft and JD Edwards witnesses.  A chart was sent to Oracle on June 23, 2009 identifying

20  the specific topics.  Plaintiffs produced witnesses for some topics and Defendants withdrew their

21  request for a witness on others, and Defendants have been willing to compromise and accept

22  written discovery in lieu of a deposition for the rest.  Although the meet and confer process is

23  ongoing on the specifics necessary for Oracle to satisfy Defendants' requested 30(b)(6) topics for

24  Siebel, the progress on those meet and confer discussions has not been satisfactory.  If substantial

25  additional progress is not made before the Discovery Conference, then Court intervention on this

26  issue will likely be necessary.

27              **3.       Impermissible, Repetitive Discovery of Fenwick and Finnegan**

28

1    Defendants object to Oracle's request for permission to move to compel on its July and

2    October 2009 subpoenas to SAP's outside law firms, Fenwick & West LLP ("Fenwick") and

3    Finnegan Henderson Farabow Garrett & Dunner LLP ("Finnegan").  Oracle subpoenaed both

4    firms in January 2008 and they produced responsive documents.[9]  Oracle's 2009 subpoenas

5    cover the same subject matter, *i.e.*, SAP's due diligence in connection with the acquisition of TN.

6    *Compare, e.g.*, Exhibits I (2008 subpoena to Fenwick) and J (2009 subpoena to Fenwick).

7    Responding to these repetitive 2009 subpoenas would require both firms to re-review the same

8    data they reviewed first time around.  There is no reason to impose that additional burden and

9    cost on Defendants or their law firms.

10    Oracle denies that the subpoenas are duplicative; however, the only difference is that the

11    2008 subpoenas were limited to communications between SAP and TN, or with a third party,

12    regarding the due diligence, while the second set also includes internal communications regarding

13    the due diligence and a request for the firms' invoices and billing records related to the due

14    diligence.  However, Oracle's counsel indicated during meet and confer on the January 2008

15    subpoenas that Oracle intentionally limited those subpoenas to external communications to avoid

16    privilege concerns.  Thus, if Oracle really believes that any non-duplicative portions of the 2009

17    subpoenas at issue seek relevant non-privileged information, then there is no justification for

18    Oracle to have omitted that request from the January 2008 subpoenas.  Moreover, even if this

19    Court were inclined to give Oracle "two bites at the apple" on these two third party discovery

20    requests, the additional burden and cost of a duplicative round of subpoenas and a duplicative

21    review of the data outweighs the potential benefit of the requested discovery, particularly since

22    the vast majority, if not all, internal communications Oracle is now focusing on are likely

23    privileged, which Oracle has admitted was why this request was not included in the 2008

24    subpoenas.  Oracle's stated concerns about the sufficiency of the first productions are not

25    credible almost two years after those productions and do not now warrant a new round of

26    subpoenas.  Both Fenwick and Finnegan have directly addressed these concerns in meet and

27    _____

[9]  Oracle subpoenaed two other law firms involved in SAP's acquisition of TN in January
28    2008 as well.  Those firms also have produced responsive documents.

1   confer correspondence. For example, in response to Oracle's concern that Finnegan produced no

2   responsive emails, perhaps indicating that emails were not searched, Finnegan has pointed Oracle

3   to the email communications on the privilege log that accompanied its production in response to

4   the first subpoena. If Oracle persists in its efforts to seek this discovery, then Defendants and/or

5   Fenwick and Finnegan will seek permission to move for protection from Oracle's recent

6   subpoenas.

7                   **4.      Pre-2005 Damages Related Discovery**

8           Shortly after the last discovery conference Defendants provided Oracle with a list of the

9   names of the "legacy" customers for which Oracle has produced insufficient damages related

10  information, a list of the contract numbers at issue, and a description of the categories of

11  information Defendants contend are missing. On November 4 and 6, Oracle produced additional

12  data for these customers, which Defendants have not yet had sufficient time to analyze. Oracle

13  has represented that it is continuing to search for additional responsive information and will

14  complete its production by December 4. Should Oracle's production fail to address Defendants'

15  concerns, then Defendants reserve their rights with respect to what, if any, relief they may seek

16  regarding such failure.

17                  **5.      Other Potential Motions on Existing Discovery Responses**

18          Defendants continue to review Oracle's document production and written discovery

19  responses and plan to keep doing so through the close of fact discovery as supplemental

20  productions and responses are provided by Oracle. In addition, Defendants continue to meet and

21  confer with Oracle regarding a variety of discovery issues that remain to be resolved. These

22  include, for example, apparent gaps in Oracle's document production, proposed designations of

23  deposition testimony as Rule 30(b)(6) testimony in lieu of additional depositions, proposed

24  written responses to discovery in lieu of deposition testimony on certain topics, and deposition

25  scheduling issues. Defendants are optimistic that the parties will resolve these issues without the

26  need for motion practice. However, Defendants intend to discuss with the Court during the

27  Discovery Conference how best to resolve any disputed issues relating to existing discovery

28  responses and any supplements thereto that may remain at the close of fact discovery.

1

### 6.    Other Potential Motions on Future Discovery Responses

2          Given that Oracle has yet to respond to Defendants' final fact discovery, it is at least

3   conceivable that Defendants' could have some issues with the adequacy of Oracle's responses to

4   those requests.  Thus, Defendants intend to discuss with the Court during the Discovery

5   Conference how best to resolve any disputed issues relating to expected future discovery

6   responses that do not yet exist but that may arise between now and the close of fact discovery.

7

### 7.    <u>Oracle's Issue: Relief from Protective Order with Regard to European Litigation</u>

8

9          ***Oracle's Position:***  Oracle asks the Court to grant a limited amendment to the Protective

10  Order to permit materials produced in this litigation to be used in any related European

11  proceeding.

12          Last year, Judge Hamilton granted Defendants' motion to dismiss in part, stating that

13  then-plaintiff J.D. Edwards Europe had no rights that could give rise to a claim of copyright

14  infringement under the U.S. Copyright Act and that "the only infringement that could have

15  occurred as to [J.D. Edwards Europe] would be infringement of its right to distribute

16  extraterritorially."  Order on Motion to Dismiss (Docket Item 224) at 6.

17          To recover for the harm done by Defendants to J.D. Edwards Europe, therefore, Oracle is

18  investigating whether it can bring those claims in Europe.  Evidence needed to assert and prove

19  these claims has been produced in this case, as the allegations underlying those claims were part

20  of the case for over a year.  However, the current Protective Order does not permit Oracle to use

21  Defendants' Confidential or Highly Confidential material for any purposes outside this particular

22  litigation.[10] To maximize efficiency and resources, and to avoid unfairness to Oracle stemming

23  from the ruling on the Motion to Dismiss, which came after discovery into the facts underlying

24  Oracle's allegations was already well underway, Oracle seeks an amendment to the Protective

25  Order to permit material produced by Defendants in this case to be used in any related European

26  _____

[10] Defendants have improperly over-designated many of the materials relevant to the
27  European litigation, including designating publicly-available marketing materials as Confidential
or Highly Confidential (about which Oracle sent a de-designation request on November 2, to
28  which Defendants have not responded).

31                                    JOINT DISC. CONF. STATEMENT
                                      Case No. 07–CV–1658 PJH (EDL)

1    proceeding.  Since that suit will likely involve the same parties or their affiliates, there is no

2    prejudice to any party.  To the contrary, this modification will save everyone time and resources.

3    Moreover, as the Court is aware, TomorrowNow has been out of business since October 31, 2008,

4    and so its documents no  longer raise the same confidentiality concerns.

5         On November 6, Oracle asked Defendants to stipulate to this request, and Defendants

6    declined.  Defendants offer no reason other than rhetoric as to why this Court cannot decide this

7    issue now.  This Court does have jurisdiction over the Protective Order and can amend it when

8    appropriate – as shown by Defendants' insistence, and Oracle's agreement, to amend the

9    Protective Order to permit Defendants' insurers access to Oracle's confidential materials.  The

10   Parties came to that agreement to permit the efficient and fair dissemination and use of material

11   produced in this litigation – exactly as Oracle proposes now.  Since Judge Hamilton instructed

12   Oracle to take this claim elsewhere, it would be inconsistent with the search for truth for Oracle to

13   be prevented from using the relevant evidence it has.

14        Oracle therefore requests that the Court order the Protective Order modified to state that

15   the Parties may use any materials in the record from this case in any related European proceeding ,

16   or, at minimum, that TomorrowNow's documents and materials may be used in any such

17   proceeding.

18        ***Defendants' Position:***  Oracle's request on this issue has no relevance to any existing

19   claim or defense in this case or any issue that this Court is required to resolve between now and

20   the trial of this case.  There are plenty of other issues worthy of this Court's time and attention

21   (for example, as noted elsewhere in this Discovery Statement), but this is not one of them.  The

22   Parties negotiated the terms of the Stipulated Protective Order, and both had very legitimate

23   reasons to agree to keep Confidential or Highly Confidential material produced in this case from

24   being used for any purposes outside this particular litigation.  Oracle cannot rewrite that bi-lateral

25   agreement simply because it now wants to sue Defendants in another forum.  And it is not proper

26   for Oracle to ask this Court to re-write the Parties' Agreement on this particular portion of the

27   Stipulated Protective Order, especially when the contemplated litigation that serves as the basis

28   for Oracle's requested amendment is, by definition, outside the jurisdiction of this Court.

1    Changing the Stipulated Protective Order in the way Oracle requests could interfere with

2    the rights of courts in other, sovereign jurisdictions to manage litigation matters consistent with

3    the rules of that jurisdiction.  As this Court is aware, the scope of and rules relating to discovery

4    differ across the world, and, while Oracle has not identified what jurisdiction may be at issue, it is

5    likely that discovery process and scope are different in Oracle's contemplated European forum

6    than in this action.  If any court should rule on whether Oracle is permitted to use Confidential or

7    Highly Confidential material produced in this case in another case involving Oracle and

8    Defendants, then it is the court in that case, which (if the case were brought in a proper venue)

9    would presumably have jurisdiction over the parties to make whatever discovery orders it deemed

10   are consistent with the rules in that forum.

11   Also, in presenting this issue, Oracle misstates the facts.  The claims of J.D. Edwards

12   Europe ("JDEE") were only in the case for so long as it took for Defendants to move, and the

13   Court to grant, their dismissal, the timing of which is entirely Oracle's responsibility.  JDEE was

14   first named as a plaintiff entity in October 2008, when Plaintiffs filed their Third Amended

15   Complaint.  Plaintiffs did so allegedly to correct "technical" issues with the entities named as

16   Plaintiffs, not coincidentally immediately after Defendants told Plaintiffs that they would move to

17   dismiss the Second Amended Complaint and shortly after Plaintiffs belatedly produced intra-

18   company agreements (then more than a year after the original complaint was filed).  Defendants

19   promptly moved to dismiss JDEE's limited claims (the right to distribute certain allegedly

20   copyrighted materials, only in Europe, the Middle East and Africa) and the Court granted that

21   motion in December 2008.  Only now, almost a year after that dismissal, and almost three years

22   after the original complaint in this action was filed, do Plaintiffs say they wish to pursue an ex-

23   U.S. action to pursue ex-U.S. rights.  Whatever ex-U.S. court will ultimately preside over this

24   prospective litigation should decide how to manage that action if and when it is filed, not this

25   Court.  Any prejudice Oracle has suffered by delaying its action for years is entirely of Oracle's

26   own doing and does not justify this Court rewriting the parties' agreement on this issue or pre-

27   adjudicating any discovery issues in Oracle's threatened, but yet-to-be-filed litigation in Europe.

28   **8.**      **Oracle's Issue: Pleasanton Data Center**

33

1    ***Oracle's Position:***  At the last Discovery Conference, the Parties discussed with the Court

2    Oracle's need to shut down its Pleasanton Data Center, which houses the Customer Connection

3    servers.  Oracle has been proceeding with its careful and reasonable measures to preserve the data

4    on the affected servers, including taking forensic images of all machines where possible, and

5    taking additional or other forms of backup where possible.

6        Defendants did not request any access to Customer Connection, or any related

7    information from Oracle, until Friday, November 6 (more than a month after the Court suggested

8    they do so at the September 30 Discovery Conference), when they sought access to Customer

9    Connection on November 17 through 20.  The delay in making this request jeopardizes Oracle's

10   preservation activities and makes it much harder to accommodate.  However, Oracle is working

11   to ascertain its ability to comply with this request, and will do its best to do so, with the

12   understand that providing such access may impede Oracle's existing preservation efforts.

13   ***Defendants' Position:***  Prior to the previous discovery conference, Oracle's counsel sent

14   Defendants' counsel a letter indicating that Customer Connection would be available at least

15   through November 30, 2009.  Defendants counsel informed both the Court and Oracle at the last

16   discovery conference that Defendants intended to take Oracle up on its offer to review Customer

17   Connection before Oracle dismantles it at the end of this month.[11]  Defendants gave Oracle

18   almost two weeks advance notice of the specific dates it seeks access.  The dates Defendants have

19   requested are November 17 through 20, which are the first four days after Defendants will have

20   access to Plaintiffs' expert reports, which Defendants told Oracle it needed for any subsequent

21   review of Customer Connection to be efficient.  Oracle has not indicated that it does not intend to

22   honor Defendants' request.  Unless or until Oracle refuses Defendants' request, there is nothing

23   for this Court to decide on this issue.

24       **8.        Oracle's Issue: Document Production from Non-Party Jeff Buerhle**

25   ───────────────────

26   [11]   Defendants' request for access to Customer Connection should in no way be construed
     as a waiver of any of Defendants' objections and related positions regarding Oracle's unilateral
     decision to decommission and disassemble Customer Connection, which include, but are not

27   limited to, Defendants' objections and related positions on this issue that are contained in the
     September 23, 2009 Joint Discovery Conference Statement at 12:13-13:6.

28

1        ***Oracle's Position:*** On October 17, 2009, Oracle served a subpoena for documents and

2   testimony issued from the Northern District of Alabama on Jeff Buehrle of Summit Technologies,

3   who Oracle believes worked with TomorrowNow on technical and support issues as a contractor

4   between 2006 and 2008.  Previously, on October 14, Oracle had served Federal Rule 45 notice of

5   this subpoena on Defendants.  The subpoena called for production of documents on November 2

6   and all parties agreed to a deposition date of November 20.  On November 10, a week after

7   documents were due for production, and just 10 days before deposition, Defendants contacted

8   Oracle to state for the first time that they had been in touch with counsel for Mr. Buehrle and

9   wished to review the production before it is produced to Oracle because of alleged privilege

10  concerns.  Counsel for Mr. Buehrle estimates there may be approximately 40,000 pages of

11  responsive documents.

12       Attempting to stall the production in this way is inappropriate.  However, in the interest of

13  cooperation and avoiding the cost of a motion in the Northern District of Alabama, Oracle has

14  agreed to allow Defendants to review the documents and log any withheld material before

15  production to Oracle as long as the documents are produced to Oracle by 9 a.m. on Friday,

16  November 13.  Oracle needs at least that much time (and likely much more) to review this

17  volume of material in advance of the deposition.  Oracle informs the Court to keep it apprised of

18  the situation and to state that Oracle has reserved all rights with respect to this issue, and will

19  further update and/or seek relief from the Court as appropriate.

20       ***Defendants' Position:***  Buerhle's and Summit's consulting work for TomorrowNow

21  necessarily exposed them to some of TomorrowNow's privileged information.  Defendants

22  simply seek to preserve any applicable privileges that may relate to certain of the documents that

23  may be produced by Mr. Buerhle and/or Summit.  Defendants and Oracle have had an ongoing

24  dialogue for some time regarding this particular issue.  Defendants are currently working with

25  Oracle's and Summit's counsel to streamline the process to ensure TomorrowNow's privileged

26  material is protected, while still expediting the production of these documents in sufficient time

27  for Oracle to review them before the scheduled deposition.  After Defendants learned that Mr.

28  Buehrle and Summit had documents responsive to Oracle's subpoena, Defendants began efforts

JOINT DISC. CONF. STATEMENT
Case No. 07–CV–1658 PJH (EDL)

1  to work with Summit's and Oracle's counsel to find the most effective and efficient way to

2  conduct the requested privilege review in light of the time constraints on all parties.  For example,

3  Defendants, at their own expense, have offered to process (i.e., convert the data to a format that is

4  usable for all parties' litigation data review databases) Buerle's and Summit's data, while at the

5  same time running electronic privilege searches while that processing is taking place.

6  Defendants' agreement to pay for the data processing will save Oracle that expense, while at the

7  same time permitting Defendants to quickly do a privilege review of this data.  The volume of the

8  data will not allow the Defendants to do a manual page-by-page review, so Defendants have

9  simply requested the opportunity to do a quick electronic privilege search through the data and an

10  agreement by Oracle that there may be a need for a special clawback protocol for this production.

11  Defendants currently do not know exactly when Summit intends to produce the data, thus

12  Defendants cannot yet commit to the November 13 deadline suggested by Oracle.  Regardless,

13  Defendants have made clear to Oracle that Defendants are willing to work under extreme time

14  constraints in completing the electronic privilege review, and that Defendants will continue to

15  work with Oracle in an effort to arrive at a mutually agreeable resolution of this issue.

16         **9.**      **Oracle's Issue: Supervisory Board Documents**

17       ***Oracle's Position***:  Oracle asks that the Court order Defendants to further supplement the

18  declarations they provided to explain the missing Supervisory Board documents.

19       At the August 25 and September 30 Discovery Conferences, the Parties discussed with the

20  Court the discrepancy between the deposition testimony of Hasso Plattner, Chairman of the SAP

21  AG Supervisory Board, and Defendants' document production.  Mr. Plattner testified about a

22  Supervisory Board meeting at which TomorrowNow was discussed, but for which Defendants

23  have not produced minutes; he also described a one-page TomorrowNow report that was

24  presented at that meeting, also not in Defendants' production.  Defendants have maintained they

25  cannot find these documents, but when reviewing his deposition transcript, Mr. Plattner did not

26  change his testimony, and Defendants have been unable to explain that discrepancy in meet and

27  confer.

28

JOINT DISC. CONF. STATEMENT
Case No. 07–CV–1658 PJH (EDL)

1    Oracle requested that Defendants be required to conduct a more exhaustive search that

2    included consultation with Mr. Plattner and to provide a certified explanation of the discrepancy,

3    including why Defendants are unable to produce documents their Chairman has said existed and

4    that he reviewed and believed were still available.  Oracle's recollection is that the Court agreed

5    at the August 25 Discovery Conference that Defendants should provide a more detailed, certified

6    description of their search, including by consulting directly with Mr. Plattner.  (The Court has not

7    issued an Order from that Conference.)  At the September 30 Discovery Conference, the Court

8    ordered Defendants to provide the information by October 7.

9    On October 7, Defendants provided declarations from Mr. Plattner, Michael Junge, SAP

10   AG's General Counsel, and Nicole Perry of Jones Day, attached as Exhibits K, L, and M,

11   respectively.  Oracle believes these declarations, however, do not provide enough information.

12   First, Mr. Plattner's declaration refers only to his testimony about the presentation of the

13   TomorrowNow acquisition to the Supervisory Board.  But he testified both that meeting minutes

14   should exist, and that he remembered a one-page document discussing the TN acquisition.  *See*

15   Deposition of Hasso Plattner at 11:23 to 13:7; 13:17-23; 22:13 to 23:8; 73:2 to 74:3; and 75:23 to

16   76:9, attached as Exhibit N.  Mr. Plattner also does not describe any personal investigation into

17   his own files, which Oracle expected to be included.  Nor does he describe the call about the

18   presentation that Mr. Junge describes (see below); since Oracle's recollection is that the Court

19   instructed Defendants to consult Mr. Plattner about these documents, Oracle does not understand

20   why Mr. Plattner's declaration does not describe the call with Mr. Junge.

21   Mr. Junge's declaration also lacks sufficient detail.  First, there is insufficient information

22   about where Mr. Junge's personnel looked for the missing documents, when, the efforts they went

23   to, and the conclusions they reached about whether the documents existed, were lost, or were

24   destroyed.  Oracle needs to know the extent of the search, its timing, and its conclusions.  Second,

25   there is no date provided for the phone call between Mr. Junge, Mr. Lanier, and Mr. Plattner.

26   Third, Mr. Junge describes Mr. Plattner as confirming that "he does not have a copy of any pre-

27   acquisition presentation to the Supervisory Board related to the acquisition of TomorrowNow by

28   SAP."  First, this is hearsay; second, Oracle is concerned with two missing documents, the one-

1   page TomorrowNow presentation and the meeting minutes.  It appears from Mr. Junge's

2   declaration that Mr. Plattner was not asked if he has a copy of the minutes.  Perhaps more

3   importantly, there is no indication that Mr. Junge, or anyone else, has asked the other Supervisory

4   Board members (or Executive Board members, who may have presented or otherwise attended)

5   about these missing documents.  This step seems simple and should have been undertaken.

6   Finally, although Mr. Junge states that he acts as secretary at the meetings of the Supervisory

7   Board, there is no statement that he attended all the meetings in the relevant timeframe (before or

8   after the TomorrowNow acquisition), so his statement that he does not recall any such

9   presentation before the acquisition lacks foundation.  And since Mr. Plattner's declaration states

10   that he cannot recall the precise date of the Supervisory Board meeting in any event, it is unclear

11   whether Mr. Junge recalls any such presentation after the TomorrowNow acquisition – since his

12   declaration states only that he does not recall any presentation before it.

13       Ms. Perry's declaration cannot resolve the issues with the others, as she states only that

14   she was provided with what she was informed as a complete set of SAP AG Supervisory Board

15   meeting minutes and related presentations.  Ms. Perry has no personal knowledge as to whether

16   she was in fact provided with a complete set.  And, based on Mr. Plattner's testimony, it appears

17   that she was not, because a set of minutes and an accompanying document – documents that

18   appear to be the most directly relevant to Oracle's claims – are missing.

19       Finally, none of the declarations explains how these documents went missing or could

20   have been misplaced or destroyed, as Oracle requested.  The discrepancy remains unresolved:

21   Mr. Plattner, who is the only declarant established to have been at the meeting, believes they

22   exist, but Defendants have not explained what has happened to them.

23       In light of these deficiencies, and given how much time Defendants have already taken to

24   investigate this issue, Oracle requests supplemental declarations providing the necessary detail by

25   November 23.   Oracle also reserves the right to seek spoliation sanctions, including for an

26   adverse inference at trial.

27       ***Defendants' Position:***

28

38

Defendants believe that the declarations they have produced on this issue are consistent with the Court's previous direction on this issue.  If the Court, after reviewing the declarations Defendants have provided, believes otherwise, then Defendants will be prepared to further discuss this issue at the Discovery Conference.

### 10.     Mutual Issue: Expanded Discovery on New Claims in the Fourth Amended Complaint

The Parties continue to meet and confer on an agreement that will slightly expand discovery related to new claims that were asserted in the Fourth Amended Complaint.  Oracle filed its amended initial disclosures on October 9, which Defendants had indicated were necessary for them to be able to suggest the kinds of database-related damages documents Oracle should produce.  On October 30, Defendants responded with a revised proposal, to which Oracle responded that same day.  The Parties hope to have this agreement resolved by the time of the November 17 Discovery Conference, but if not, they will seek the Court's assistance.

### 11.     Oracle's Issue: Status of Seth Ravin's Deposition

***Oracle's Position:***  As the Court may recall from past Discovery Conferences, in February 2009, Oracle served Seth Ravin, co-shareholder of TomorrowNow and founder of Rimini Street, with a subpoena issued by the District of Nevada commanding him to appear for deposition on March 17, 2009.  After this Court ordered the deposition to proceed, it took place in California on May 21, 2009, but Mr. Ravin refused to answer questions regarding the similarities between Rimini's and TomorrowNow's support services.

On May 18, 2009, Oracle served Rimini Street with a subpoena issued from the District of Nevada containing three document requests.  After meeting and conferring, Oracle filed a motion to compel Ravin to answer deposition questions, and Rimini Street to produce documents. Magistrate Judge Foley of the District of Nevada held a hearing and, on October 13, partially granted Oracle's motion, requiring Ravin to appear for 1 hour of deposition from each side (and, in certain circumstances, to produce documents).  *See* October 13 Order, attached as Exhibit O. On October 14, Oracle contacted Ravin and Rimini's counsel to request available dates for

1   Ravin's deposition.  In response, Ravin and Rimini's counsel stated that Oracle's request was

2   premature because they would be filing objections to Judge Foley's order, which they did on

3   October 27.  Oracle's response is due November 10.

4        In their objections, Ravin and Rimini request the District of Nevada deny Oracle's motion

5   and allow Rimini to "properly raise this issue with the California court by means of a motion for a

6   protective order," even though the parties agreed to have the District of Nevada hear this dispute.

7   Oracle raises these issues now to keep this Court informed on the status of this dispute.

8        ***Defendants' Position:***  Oracle's statement on this issue is in the nature of a procedural

9   status report and neither seeks nor requires a substantive response from Defendants at this time.

10  Defendants filed a response in the Nevada proceeding and continue to reserve all of their rights

11  on this issue in both that proceeding and in this Court if and when any issues from the Nevada

12  proceeding are directly or indirectly brought into this proceeding.

13

14  DATED:  November 10, 2009

                                    BINGHAM McCUTCHEN LLP
15

16

17                                  By:              /s/
                                              Bree Hann
18                                       Attorneys for Plaintiffs
                                  Oracle USA, Inc., Oracle International
19                                Corporation, Oracle EMEA Limited, and
                                          Siebel Systems, Inc.
20

21       In accordance with General Order No. 45, Rule X, the above signatory attests that

22  concurrence in the filing of this document has been obtained from the signatory below.

23

24

25

26

27

28

                              40            JOINT DISC. CONF. STATEMENT
                                            Case No. 07–CV–1658 PJH (EDL)

1

2    DATED:  November 10, 2009                    JONES DAY

3

4                                                By:  _____/s/_____
                                                           Jason McDonell
5                                                    Attorneys for Defendants
                                                SAP AG, SAP AMERICA, INC., and
6                                                    TOMORROWNOW, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28