PAGES 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE

ORACLE, USA, INC., ET AL,          )
                                   )
          PLAINTIFFS,              )
                                   )
   VS.                             ) NO. C 07-1658 PJH (EDL)
                                   )
SAP AG, ET AL.,                    )
                                   )  SAN FRANCISCO, CALIFORNIA
          DEFENDANTS.              )  TUESDAY
_____)  NOVEMBER 24, 2009

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS**          BINGHAM, MCCUTCHEN, LLP
                            THREE EMBARCADERO CENTER
                            SAN FRANCISCO, CALIFORNIA  94111
                    BY:  **AMY K. DONNELLY, ESQUIRE**
                         **BREE HAAN, ESQUIRE**


                            ORACLE
                            500 ORACLE PARKWAY
                            REDWOOD SHORES, CALIFORNIA  94065
                    BY:  **JENNIFER GLOSS, ESQUIRE**



**FOR DEFENDANTS**          JONES DAY
                            555 CALIFORNIA STREET
                            26TH FLOOR
                            SAN FRANCISCO, CALIFORNIA  94104
                    BY:  **JASON MCDONELL, ESQUIRE**
                         **JACQUELINE LEE, ESQUIRE**
                         **PATRICK R. DELAHUNTY, ESQUIRE**


*REPORTED BY:   **JOAN MARIE COLUMBINI, CSR 5435, RPR***
                *OFFICIAL REPORTER - US DISTRICT COURT*

1              <u>PROCEEDINGS; TUESDAY, NOVEMBER 24, 2009</u>

2

3         **THE CLERK:**  CALLING CIVIL 07-1658, ORACLE U.S.A.

4  INCORPORATED VERSUS SAP AG.

5         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

6  RECORD.

7         **MS. DONNELLY:**  AMY DONNELLY FROM BINGHAM MCCUTCHEN

8  FOR PLAINTIFFS, YOUR HONOR.

9         **THE COURT:**  A NEW FACE, I BELIEVE?

10        **MS. DONNELLY:**  YES.

11        AND WITH ME IS BREE HAAN FROM BINGHAM MCCUTCHEN AND

12 JENNIFER GLOSS FROM ORACLE.

13        **MR. MCDONELL:**  JASON MCDONELL, JACQUELINE LEE, AND

14 PATRICK DELAHUNTY FOR DEFENDANTS FROM JONES DAY, YOUR HONOR.

15 GOOD MORNING.

16        **THE COURT:**  GOOD MORNING.

17        ALL RIGHT.  WHERE ARE YOU ON THE ISSUE OF INFORMATION

18 RESPONSIVE TO THE FIRST TARGETED REQUEST RELATING TO THE

19 INFRINGER'S PROFITS MEASURE OF DAMAGES?  THAT WAS KIND OF

20 MID-NEGOTIATION, I THINK, IN THE BRIEFS.

21        **MR. MCDONELL:**  YES.  I CAN SPEAK TO THAT.

22        AS I UNDERSTAND IT, YOUR HONOR, THE SPECIFIC REQUEST

23 THERE FROM PLAINTIFFS WAS THAT DEFENDANTS -- WELL, ACTUALLY,

24 THERE ARE TWO PARTS TO IT -- THAT DEFENDANTS PRODUCE FINANCIAL

25 STATEMENTS, MEANING INCOME STATEMENTS AND RELATED TRIAL BALANCES

1    FOR THE ENTITIES -- WITH RESPECT TO, YOU KNOW, SAP ENTITIES,

2    VARIOUS SUBSIDIARY CORPORATIONS, FROM WHICH DEFENDANTS MIGHT

3    LOOK TO THOSE FINANCIAL STATEMENTS TO PROVE THE DEDUCTIBLE

4    COSTS.  THOSE FINANCIAL STATEMENTS FOR, I THINK, 19 ENTITIES

5    HAVE BEEN PRODUCED.

6              I WILL TELL YOU IT TURNS OUT THERE'S TWO STRAGGLER

7    COMPANIES THAT WILL BE PRODUCED VERY SHORTLY, IN THE NEXT FEW

8    DAYS.  I DON'T ANTICIPATE THAT'S AN ISSUE BETWEEN THE PARTIES.

9              **MS. DONNELLY:**  I WOULD AGREE WITH THAT.  WE'VE HAD A

10   CHANCE TO REVIEW THE DATA THAT SAP PRODUCED SEVERAL DAYS BEFORE

11   THE REPLY BRIEF IN GREATER DETAIL.  AND, IN LIGHT OF THE

12   SUPPLEMENTAL PRODUCTION, I THINK WE SHOULD HAVE WHAT WE NEED

13   BASED UPON WHAT WE'VE REVIEWED THUS FAR.

14             NOW, IF THERE'S ANOTHER SUPPLEMENTAL PRODUCTION AT A

15   LATER TIME FROM DEFENDANTS RELATED TO COST DATA, WE'LL HAVE TO

16   EXAMINE AT THAT TIME WHETHER THAT SHOULD HAVE BEEN INCLUDED WITH

17   THIS EARLIER PRODUCTION.

18             **THE COURT:**  AS FAR AS THE ISSUE YOU ARE PRESENTING

19   HERE, THAT'S BEEN RESOLVED?

20             **MS. DONNELLY:**  YES, YOUR HONOR.

21             **THE COURT:**  OKAY.  GOOD.

22             THEN I THINK THE NEXT INTERROGATORY IS

23   INTERROGATORY 69.

24             **MR. MCDONELL:**  YOUR HONOR --

25             **THE COURT:**  YES, GO AHEAD.

1              **MR. MCDONELL:**  I APOLOGIZE FOR INTERRUPTING, BUT LET

2    ME GO BACK TO -- THERE WAS A SECOND COMPONENT TO THE INFRINGER'S

3    PROFIT MOTION, WHICH WAS THE CATCHALL REQUEST, WHICH WAS A

4    REQUEST FROM PLAINTIFFS THAT DEFENDANTS PRODUCE ALL OFFSETTING

5    COST INFORMATION THAT DEFENDANTS MIGHT EVER OFFER IN RESPONSE TO

6    THE PLAINTIFF'S CLAIM FOR INFRINGER'S PROFITS.  AS TO THAT

7    CATCHALL, WHICH, BY THE WAY, IS BASED ON A DOCUMENT REQUEST THAT

8    REQUESTS ALL DOCUMENTS YOU MIGHT EVER USE IN A TRIAL, WHICH WE

9    THOUGHT WAS AN IMPROPER FORM, BUT AS TO THAT --

10             **THE COURT:**  I'M GLAD YOU ARE NOT ASKING ME TO COUNT

11   HOW MANY INTERROGATORIES THERE WERE.

12             **MS. DONNELLY:**  BUT AS TO THAT INTERPRETATION OF THAT

13   REQUEST WHERE THEY ARE NOW CONTENDING THAT DEFENDANTS MUST

14   PRODUCE ANY INFORMATION DEFENDANTS MIGHT EVER OFFER AS

15   OFFSETTING COSTS TO INFRINGER'S PROFITS CLAIM, OUR POSITION HAS

16   BEEN, TO THE EXTENT PLAINTIFFS HAVE ASKED FOR SPECIFIC

17   INFORMATION IN DISCOVERY THAT RELATES TO THE OFFSETTING COSTS,

18   WE HAVE MADE GOOD FAITH EFFORTS, AND ARE CONTINUING TO DO SO, TO

19   PRODUCE THAT IDENTIFIABLE INFORMATION.

20             BUT AS TO THIS CATCHALL, WE BELIEVE WE'RE ENTITLED TO

21   MORE FLEXIBILITY, BECAUSE THE DETAILS OF THE INFRINGER'S PROFITS

22   CLAIM WERE ONLY MADE KNOWN ONE WEEK AGO WHEN PLAINTIFF SERVED

23   THEIR DAMAGES EXPERT'S REPORT, A 450-PAGE REPORT WITH BOXES FULL

24   OF SUPPORTING INFORMATION.  WE NEED TIME TO FULLY UNDERSTAND AND

25   DIGEST THAT.

1            IT MAY OR MAY NOT BE THAT OUR EXPERTS AND OUR TEAM

2  WILL DISCOVER OTHER OFFSETTING INFORMATION THAT WOULD BE

3  APPROPRIATE THAT WE JUST HAVEN'T REASONABLY BEEN ABLE TO

4  PINPOINT AND PRODUCE AT THIS POINT.

5            **THE COURT:**  ALL RIGHT.

6            **MS. DONNELLY:**  YOUR HONOR.  OBVIOUSLY, THE END OF

7  FACT DISCOVERY IS FAST APPROACHING, AND DEFENDANTS HAVE HAD A

8  LONG OPPORTUNITY TO PRODUCE COST DATA THAT THEY MAY USE TO

9  COUNTER ORACLE'S INFRINGER'S PROFITS MEASURE OF DAMAGES.  OUR

10 POSITION IS DEFENDANTS SHOULD PRODUCE THAT INFORMATION, OR

11 SHOULD HAVE ALREADY PRODUCED THE INFORMATION, THAT THEY MAY BE

12 RELYING ON IN PROVING THEIR COSTS TO BE DEDUCTED FROM THE

13 INFRINGER'S PROFITS.

14            **THE COURT:**  IT SEEMS TO ME YOU ARE BOTH TRYING TO SET

15 UP A MOTION IN LIMINE EXCLUSION, ET CETERA.  AND I'M NOT GOING

16 TO GIVE ANY ADVISORY OPINIONS.  LET'S GO TO SOMETHING I CAN

17 ACTUALLY RESOLVE.  THAT'S WHERE I WAS HEADING WITH

18 INTERROGATORY 69.

19            IS THAT STILL AN ISSUE?

20            **MS. DONNELLY:**  YES, YOUR HONOR.

21            **THE COURT:**  IT SEEMS TO ME IT'S REALLY -- THE ISSUE

22 IS, I HOPE IT IS, STRAIGHTFORWARD THAT THE PLAINTIFFS SEEMINGLY

23 LEGITIMATELY WANT THE DEFENDANTS TO CONFIRM THEY DON'T DO THIS,

24 THEY DON'T CONDUCT ANY ANALYSES, FORMAL OR INFORMAL, FOR

25 ASSIGNING, PREDICTING OR CALCULATING EXPECTED VALUE PER

1  CUSTOMER, SUCH AS PROJECTING CROSS-SELL OR UP-SELL.

2          I THINK 69, THE INTERROGATORY, IS BROAD.  IT'S NOT

3  JUST A VALUATION AT THE TIME THE NEW CUSTOMER'S ESTABLISHED.  I

4  DON'T THINK DEFENDANTS ARE SAYING THAT'S WHAT THEY THINK IT'S

5  ASKING FOR.

6          **MR. MCDONELL:**  YES, THE QUESTION HERE IS, WHAT IS THE

7  "THIS" THAT WE'RE SHOOTING AT, YOUR HONOR?

8          WE READ THE INTERROGATORY.  THERE WAS SOME CONTEXT TO

9  IT, BECAUSE ELSEWHERE IN THE CASE THERE HAD BEEN DISCUSSION

10  ABOUT ORACLE MODELS FOR DOING VARIOUS THINGS.  WE READ THE

11  INTERROGATORY AS CALLING FOR SOME KIND OF ROUTINIZED STANDARD

12  MODELS OR, YOU KNOW, APPROACHES TO VALUING A CUSTOMER.

13          SO A CLASSIC EXAMPLE WOULD BE, IS THERE AN ALGORITHM

14  WHERE YOU TAKE A CUSTOMER'S SPECIFIC DATA POINTS, PLUG IT IN,

15  AND OUT COMES, YOU KNOW, IN OUR EXPERIENCE, IF YOU HAVE A

16  CUSTOMER WITH THESE DATA POINTS, THAT CUSTOMER IS WORTH "X"

17  DOLLARS TO THE CORPORATION.

18          AND I'M NOT SAYING THAT'S THE ONLY THING WE LOOKED

19  FOR, BUT IT WAS THINGS OF THAT ILK THAT WE LOOKED FOR TO SEE IF

20  THERE WAS SOME KIND OF MODELING OR STANDARD FORM, ROUTINIZED

21  PROJECTING THE COMPANY DID TO TRY TO PRODUCE SOMETHING LIKE THE

22  PRESENT VALUE OF A GIVEN CUSTOMER OR A TYPE OF CUSTOMER.  WE

23  LOOKED FOR THAT.  I'M VERY CONFIDENT WE DID A REASONABLY

24  THOROUGH SEARCH AND DID NOT FIND SOMETHING IN THE DISCOVERY

25  PERIOD OF THAT ILK.

1           THE CONCERN I HAVE IS HERE IN THE REPLY BRIEF, IT IS

2   MORPHING INTO SOMETHING MUCH BROADER WHERE THE PLAINTIFFS ARE

3   NOW ASKING FOR, IN EFFECT -- AND I'M QUOTING -- "FORMAL OR

4   INFORMAL EXPECTED VALUE OF A CUSTOMER, SUCH AS PREDICTING A

5   CROSS-SELL OR UP-SELL OPPORTUNITY."

6           IF WHAT THEY'RE ASKING FOR ABOUT THERE IS INFORMAL

7   THINGS THAT HAPPENED IN A COMPANY THIS SIZE, THERE IS NO DOUBT

8   THERE ARE SALESPERSONS AT THE COMPANY SOMEWHERE WHO SPEND THEIR

9   DAYS WONDERING WHAT THEY MIGHT SELL THEIR CUSTOMERS.

10          **THE COURT:**  WELL, I WOULD NOT READ THIS AS

11  ENCOMPASSING, FOR EXAMPLE, PROJECTING A PARTICULAR CROSS-SELL OR

12  UP-SELL OPPORTUNITY AT A POINT IN TIME, YOU KNOW, TOMORROW, I

13  THINK, OR NEXT YEAR.  I THINK IT HAS TO BE LIFE CYCLE; IN OTHER

14  WORDS, LIFE CYCLE PREDICTIONS OF A CUSTOMER.  SO SOMETHING --

15  THAT BY ITS NATURE IS MORE FORMAL, I SUPPOSE.

16          **MR. MCDONELL:**  YES.

17          **THE COURT:**  IN OTHER WORDS, IT'S MORE COMPLICATED

18  CERTAINLY --

19          **MR. MCDONELL:**  AND AGAIN, WE'RE TALKING ABOUT --

20          **THE COURT:**  SO I THINK I READ THE INTERROGATORY TO

21  TALK ABOUT THE PROJECTED VALUE OF A CUSTOMER OVER ITS LIFE

22  CYCLE.

23          IS THAT CORRECT?

24          **MS. DONNELLY:**  YES, YOUR HONOR.

25          AND WE WANT TO BE CLEAR THAT -- WHILE WE CERTAINLY

1   DON'T EXPECT DEFENDANTS TO GO THROUGH EVERY INDIVIDUAL IN THE

2   SALES DEPARTMENT'S DAILY COMMUNICATIONS, WE DO EXPECT A MORE

3   COMPREHENSIVE ANSWER BASED ON, FOR EXAMPLE, AN INFORMAL

4   PRESENTATION TO THE BOARD OF DIRECTORS THAT LAID OUT THE

5   VALUATION PER CUSTOMER.  PERHAPS THAT WASN'T A ROUTINIZED MODEL

6   THAT --

7           **THE COURT:**  I WOULD THINK ANYTHING DONE TO THE BOARD

8   OF DIRECTORS RISES TO A SUFFICIENTLY HIGH LEVEL THAT IF IT --

9   EVEN IF IT'S ONE OFF, IF IT'S PROJECTING LIFE CYCLE OF

10  CUSTOMERS, THAT WOULD PROBABLY BE WITHIN IT.

11          **MR. MCDONELL:**  OKAY.  BUT MY CONCERN HERE IS THE

12  NEEDLE IN A HAYSTACK --

13          **THE COURT:**  RIGHT, AND I DON'T --

14          **MR. MCDONELL:**  -- ISSUE.

15          **THE COURT:**  YES.

16          **MR. MCDONELL:**  ARE WE LOOKING FOR SOMETHING THAT IS A

17  STANDARD FORM, OR ARE WE LOOKING FOR ONE PARTICULAR CUSTOMER AT

18  ONE POINT IN TIME WHERE SOMEONE SITS DOWN AND SAYS, HEY, THIS IS

19  A GOOD CUSTOMER, FUTURE IS BRIGHT, MAYBE WE'LL SELL THEM THESE

20  TYPES OF THINGS?

21          **THE COURT:**  I DON'T -- WELL, I THINK WE ARE NOT

22  LOOKING FOR A ONE TIME ONLY, ONE PARTICULAR CUSTOMER THING, ARE

23  WE?

24          **MS. DONNELLY:**  NO, YOUR HONOR.  I THINK --

25          **THE COURT:**  IT'S GOT TO BE SOMETHING THAT'S MORE

1 GENERALIZABLE AND GENERALIZED.

2          **MS. DONNELLY:** AND I THINK LOOKING AT WHAT THIS

3 INTERROGATORY IS RELEVANT TO INFORMS THAT.

4          WE WANT TO USE THIS INFORMATION TO SHOW THE VALUE

5 THAT THE CUSTOMERS WOULD HAVE TO SAP AFTER THEY RECEIVED THIS

6 FAIR MARKET VALUE LICENSE TO ORACLE.  SO THAT'S WHAT THIS

7 INTERROGATORY GETS AT.  THAT'S THE TYPE OF INFORMATION WE'RE

8 LOOKING TO OBTAIN THROUGH DEFENDANT'S ANSWER.

9          WE'RE ONLY ASKING FOR REASONABLE EFFORTS.  WE

10 CERTAINLY DON'T NEED A NEEDLE-IN-A-HAYSTACK APPROACH.  ALL WE

11 WANT IS AN ANSWER THAT PROVIDES CERTAINLY MORE THAN WHAT THEY

12 PROVIDED THUS FAR, WHICH IS ONLY A STATEMENT THAT THEY HAVE NO

13 VALUATIONS AT THE TIME A NEW CUSTOMER CONTRACTS WITH SAP.  WE

14 WOULD LIKE A REASONABLE EFFORT TO ASCERTAIN ANY OTHER VALUATIONS

15 THAT ARE PROVIDED THROUGHOUT THE LIFE CYCLE OF THAT CUSTOMER.

16          **THE COURT:** WELL, I GUESS -- I CAN'T FORMULATE THE

17 LANGUAGE RIGHT NOW.  I THINK -- I HOPE THAT I'VE GIVEN YOU AS

18 MUCH GUIDANCE -- I THINK YOU SHOULD PREPARE -- EITHER DO A

19 FURTHER SEARCH IF YOU HADN'T AND YOU THINK YOU SHOULD BASED ON

20 WHAT I SAID, OR PREPARE A DECLARATION -- I THINK IT'S NOT

21 LIMITED, BUT I DON'T THINK YOU'RE SAYING IT'S LIMITED, TO A

22 PROJECTION WHEN YOU FIRST GET THE CUSTOMER.

23          **MR. MCDONELL:** WE ARE NOT, AND THERE ARE SEMANTICS

24 ISSUES.

25          **THE COURT:** SO THAT SHOULD BE CLARIFIED.

1          I THINK IT HAS TO BE SOMETHING THAT'S MORE

2   GENERALIZED THAN ANY ONE-OFF EFFORT WITH RESPECT TO A SITUATION

3   REGARDING A PARTICULAR CUSTOMER.  IT HAS TO BE A METHODOLOGY

4   THAT'S USED MORE WIDELY THAN THAT.  HOWEVER, IT DOESN'T HAVE TO

5   BE LIMITED TO A, YOU KNOW, A HIGHLY FORMAL MODEL THAT'S USED ALL

6   THE TIME.

7          **MR. MCDONELL:**  YES.

8          **THE COURT:**  SO IT DOESN'T HAVE TO BE AN EXACT REPLICA

9   OR MIRROR IMAGE OF WHAT ORACLE HAPPENS TO DO, BUT IT HAS TO BE

10  SOMEWHAT ANALOGOUS IN THAT IT HAS TO BE A MORE GENERALIZED

11  APPROACH AND IT HAS TO BE A PROJECTION.  IT HAS TO BE A

12  PROJECTION OVER A LIFE CYCLE, NOT JUST, YOU KNOW, NEXT WEEK I

13  CAN DO SO AND SO, OR, I'LL MEET MY SALES QUOTA THIS PARTICULAR

14  WAY.

15          IS THAT ENOUGH GUIDANCE?

16         **MR. MCDONELL:**  THAT GUIDANCE IS CLEAR AND VERY

17  HELPFUL, YOUR HONOR.

18         **MS. DONNELLY:**  YES, YOUR HONOR.

19         **THE COURT:**  ALL RIGHT.  NOW LET'S GET TO 147, THE

20  HIGHEST VALUE LICENSES WITH INDEPENDENT THIRD PARTIES.  HAS

21  ANYTHING CHANGED ON THAT?

22         **MR. MCDONELL:**  NO, YOUR HONOR.  THAT IS SUBMITTED,

23  BRIEFED.

24         **THE COURT:**  OKAY.  WELL, IT SEEMS TO ME THERE, IN

25  GENERAL, I WOULD AGREE WITH ORACLE, BUT I HAVE SOME

1   RESERVATIONS.

2          ONE, I WANT TO HEAR WHAT THE PLAINTIFFS HAVE TO SAY

3   ABOUT THE TIMEFRAME.  DOES SEEM IT HAS TO BE RELEVANT TO THE

4   TIME OF INFRINGEMENT, OR AT LEAST THAT'S THE MOST RELEVANT.  I

5   THINK YOU HAVE A SECONDARY ARGUMENT, TO THE EXTENT THEY'RE

6   SAYING, WE'D NEVER PAY ANY REAL MONEY FOR SOMETHING AT ANY TIME,

7   WOULD POTENTIALLY -- BUT I KIND OF THINK THERE SHOULD BE A

8   TIMEFRAME.

9          THEN, TO THE EXTENT THAT -- I THINK MOST OF THE

10  ARGUMENTS THAT THE DEFENDANT IS MAKING GO TO ADMISSIBILITY OR

11  EVEN, YOU KNOW, DEBUNKING THE EXPERT'S OPINION SAYING, THIS

12  ISN'T SIMILAR ENOUGH, ET CETERA, AND THAT THAT'S NOT REALLY A

13  DISCOVERY ISSUE.  BUT I THINK PERHAPS, AT LEAST BROADLY, IT

14  SHOULD BE LIMITED.  GIVEN THEY'RE DIRECT COMPETITORS, I THINK

15  THAT, GENERALLY SPEAKING, EVERYTHING IS PRETTY MUCH LIKELY TO BE

16  SUFFICIENTLY RELEVANT TO AT LEAST PASS THE MINIMUM THRESHOLD FOR

17  DISCOVERY.  BUT MAYBE IT SHOULD AT LEAST BE LIMITED TO SOFTWARE

18  LICENSES.

19          **MR. MCDONELL:**  YOUR HONOR, MAY --

20          **THE COURT:**  YES.

21          **MR. MCDONELL:**  MAY I SPEAK TO THAT?  IT SEEMS LIKE

22  YOU'VE --

23          **THE COURT:**  ALL RIGHT.

24          **MR. MCDONELL:**  -- SHOWN YOUR INCLINATIONS HERE.

25          **THE COURT:**  RIGHT.

1          **MR. MCDONELL:**  THIS IS A WILD SWING IN THE DARK,

2   WHICH, YOUR HONOR, IN OUR VIEW, DOESN'T EVEN PURPORT TO MEET THE

3   RELEVANT STANDARD.  THE STANDARD THEY'RE APPLYING IS, GIVE US

4   THE BIGGEST DOLLARS; WE DON'T CARE WHERE THEY COME FROM, WE JUST

5   WANT THE BIGGEST DOLLARS.  THAT CAN'T POSSIBLY BE VIEWED AS

6   REASONABLY TAILORED TO A SUBJECT MATTER AND A SCOPE.

7          **THE COURT:**  NORMALLY, IT MIGHT HAVE, BUT IN THIS

8   CONTEXT WHERE THEY'RE DIRECT COMPETITORS AND THEY BASICALLY --

9   AS I UNDERSTAND IT, YOU KNOW, THIS IS GOING TO BE -- THE CORE

10  TECHNOLOGY IS GOING TO BE RELEVANT BECAUSE WE'RE TALKING ABOUT

11  COMPETING PRODUCTS.

12         **MR. MCDONELL:**  BUT THEY'RE NOT TALKING ABOUT THE CORE

13  TECHNOLOGY.  THE CORE TECHNOLOGY THAT ONE MIGHT REASONABLY THINK

14  ABOUT HERE WOULD BE WHAT WOULD IT COST TO GET THE TYPE OF

15  LICENSE THAT THE PLAINTIFFS CLAIM WOULD BE APPROPRIATE FOR A

16  COMPANY LIKE DEFENDANT TOMORROWNOW TO HAVE OBTAINED IN ORDER TO

17  DO THE TYPES OF THINGS PLAINTIFFS CLAIM THEY SHOULDN'T HAVE

18  DONE.

19         **THE COURT:**  JUST A MINUTE.

20         I GUESS MY QUESTION TO YOU IS, YOU KNOW, SO THEN

21  WHAT'S THE BIG DEAL?  SO THEY GET IT.  THEY CAN'T INTRODUCE IT,

22  THEN, IF IT'S REALLY NOT RELEVANT.

23         **MR. MCDONELL:**  LET ME MAKE TWO POINTS.

24         **THE COURT:**  IN OTHER WORDS, THEY, I THINK, IN FACT --

25  YOU KNOW, YOU'RE AFRAID -- REALLY, YOU'RE MORE AFRAID IT WILL

1    SHOW SOME BIG NUMBERS THAT CAN'T -- THAT JUDGE HAMILTON WILL SAY

2    IS SUFFICIENTLY RELEVANT THE EXPERTS CAN FIGHT ABOUT IT AND --

3            **MR. MCDONELL:**  THE BURDEN I'M CONCERNED ABOUT HERE

4    IS, A CASE OF THIS MAGNITUDE, EACH ONE OF THESE DECISIONS ALONG

5    THE WAY HAS AN ENORMOUS RIPPLE EFFECT, A TAILWIND.

6            IF SAP IS REQUIRED TO PRODUCE THESE IRRELEVANT

7    LICENSES, ORACLE WILL CERTAINLY TRY TO MAKE AN ARGUMENT THAT

8    THEY'RE RELEVANT.  WE WILL THEN -- BOTH SIDES WILL BE PUT TO THE

9    ENORMOUS TASK OF TRYING TO PUT ALL THAT IN CONTEXT.  I CAN'T

10   IMAGINE HOW MANY HUNDRED HOURS ARE GOING TO BE DEVOTED TO TRYING

11   TO ARGUE OVER THE RELEVANCE OR OVER THE LACK OF RELEVANCE WHEN

12   THEY HAVEN'T EVEN ARTICULATED THE RELEVANCE AT THIS STAGE.

13           **THE COURT:**  ALL RIGHT.  I THINK IF THERE ARE SOME

14   BROAD REASONABLE LIMITS, AS OPPOSED TO SOME LENGTHY, LENGTHY

15   DESCRIPTION OF SIMILAR TO TOMORROWNOW, THIS, THAT, AND THE OTHER

16   THING, I WILL CONSIDER THEM.

17           **MR. MCDONELL:**  LET ME --

18           **THE COURT:**  I AM GOING TO GRANT SOMETHING.

19           **MR. MCDONELL:**  LET ME SURFACE ONE IDEA.

20           **THE COURT:**  SOFTWARE, YES.  OKAY.  WHAT ELSE?

21           **MR. MCDONELL:**  THE IDEA THAT PART OF THE REQUEST IS

22   TO GET THREE HIGHEST LICENSES OF SOFTWARE -- IT'S NOT EVEN

23   SOFTWARE.  I WISH IT WERE THAT SIMPLE.  IT'S INTELLECTUAL

24   PROPERTY -- INTELLECTUAL PROPERTY INTO SAP, THAT'S A BLIND SHOT

25   IN THE DARK.

1      THERE IS NO THEORY BY WHICH ONE COULD SAY THAT THE

2  SOFTWARE THAT SAP MIGHT LICENSE IN FROM UNKNOWN THIRD PARTIES IS

3  POSSIBLY A REASONABLE BENCHMARK FOR WHAT ORACLE SOFTWARE WOULD

4  SELL FOR.

5      **THE COURT:**  OKAY.  BUT ISN'T THAT -- THAT'S THE ISSUE

6  OF, IF YOU ARE MAKING A CLAIM, WELL, WE NEVER PAY THAT MUCH

7  MONEY, BUT YOU HAVE PAID IT.

8      **MR. MCDONELL:**  OKAY.  FIRST OF ALL, WE HAVE NEVER --

9  THAT WAS NOT THE ARGUMENT WE MADE ON OUR PARTIAL SUMMARY

10  JUDGMENT MOTION, WHICH, BY THE WAY, IS ARGUED AND SUBMITTED.

11      **THE COURT:**  I UNDERSTAND.

12      **MR. MCDONELL:**  AND I'M NOT GOING TO REARGUE THAT

13  BECAUSE IT WAS WELL ENOUGH THE FIRST TIME THROUGH.

14      **THE COURT:**  ONE JUDGE IS ENOUGH ON THAT.

15      **MR. MCDONELL:**  EXACTLY.

16      BUT THE FUNDAMENTAL PROPOSITION ON THAT MOTION WAS

17  THAT THESE PARTIES WOULD NOT HAVE ENTERED A LICENSE FOR THAT --

18  OF THAT TYPE AT THAT TIME, PERIOD.  IT WAS NOT THE POSITION OF

19  SAP THAT IT NEVER WOULD HAVE PAID A LOT OF MONEY FOR SOMETHING

20  ANYWHERE EVER.

21      THE ARGUMENT IS COMPLETELY CIRCULAR.  WHERE THEY SAY,

22  OKAY, WE DON'T HAVE TO SHOW THAT THE LICENSES WE ARE SEEKING

23  DISCOVERY OF ARE COMPARABLE IN SOME WAY, WE'LL JUST SAY THAT

24  THERE'S -- THEY COST A LOT OF MONEY, AND THEN WE'LL BACK INTO

25  THEIR BEING COMPARABLE AFTER THE FACT.  THE REASONING IS

1  COMPLETELY CIRCULAR.  I DON'T THINK IT GOES ANYWHERE.

2           **THE COURT:**  GOT IT.

3           **MS. DONNELLY:**  YOUR HONOR, THE REQUEST WAS NARROWLY

4  TAILORED TO GET AT THE INFORMATION THAT WOULD BE MOST RELEVANT

5  TO OUR CASE MOVING FORWARD AND THAT WE ALSO THOUGHT WOULD BE

6  MOST REASONABLE FOR DEFENDANTS TO COLLECT AND PROVIDE, AND SO

7  LET ME SPEAK TO YOU A LITTLE BIT OF SOME OF THE ISSUES THAT HAVE

8  BEEN COVERED HERE.

9           FIRST OF ALL, REGARDING THE TIMEFRAME ISSUE WHICH YOU

10  RAISED, WHILE THE LICENSE BETWEEN THE PARTIES WOULD HAVE TAKEN

11  PLACE IN 2005, ORACLE BELIEVES THAT THE LICENSE AGREEMENTS FROM

12  THE LAST FIVE YEARS COULD STILL BE RELEVANT IN THAT THEY COULD

13  GO TO THE STATE OF MIND OF THE PARTIES IN ENTERING INTO THAT

14  NEGOTIATION IN THAT IT DOES SHOW WHAT SAP MIGHT HAVE PAID FOR OR

15  HOW THEY WOULD HAVE APPROACHED AN INTELLECTUAL PROPERTY LICENSE.

16           **THE COURT:**  SO WHICH TIME PERIOD ARE YOU SAYING

17  YOU'RE ASKING FOR?

18           **MS. DONNELLY:**  SO WE'RE ASKING FOR THE THREE HIGHEST

19  VALUE LICENSES FOR INTELLECTUAL PROPERTY OUT AND IN FROM THE

20  LAST FIVE YEARS.

21           NOW, YOUR HONOR --

22           **THE COURT:**  I DON'T SEE HOW -- SO THE LAST FIVE YEARS

23  MEANING 2004 TO 2009; IS THAT WHAT YOU'RE --

24           **MS. DONNELLY:**  AND YOUR HONOR --

25           **THE COURT:**  AND THE HYPOTHETICAL LICENSE WAS IN 2005?

1          **MS. DONNELLY:**  AND, YOUR HONOR, WE WOULD CERTAINLY BE

2    WILLING TO CONSIDER A REQUEST FROM DEFENDANTS TO LIMIT THEIR

3    LICENSES TO THE HIGHEST VALUE LICENSES AS OF THE TIME OF THE

4    FAIR MARKET VALUE OR HYPOTHETICAL LICENSE AT ISSUE HERE.

5          HOWEVER, OUR VIEW IS THAT IT WOULD BE -- IT WOULD

6    FACILITATE THE PROCESS FOR DEFENDANTS IN COLLECTING AND

7    PROVIDING THIS INFORMATION IF THEY COULD LOOK AT -- RATHER THAN

8    TRYING TO GO BACK IN TIME AND DEDUCE EXACTLY WHAT THE HIGHEST

9    VALUE LICENSES WERE AT THAT TIME, IF THEY CAN LOOK BACK AND

10   PROVIDE A MORE COMPREHENSIVE ANSWER THAT'S BASED ON THE

11   KNOWLEDGE THEY HAVE TODAY.

12         **THE COURT:**  OKAY.  WHICH TIME PERIOD DO YOU PREFER?

13         **MR. MCDONELL:**  I DON'T HAVE A PREFERENCE, YOUR HONOR.

14   I DON'T FIND ANY OF IT TO BE RELEVANT, AND I THINK THAT THE

15   ISSUE THAT THEY'RE PRESENTING --

16         **THE COURT:**  WELL, THE BURDENSOME --

17         **MR. MCDONELL:**  -- APPEARS TO BE -- YOUR HONOR, THAT

18   WOULD -- PERHAPS, SINCE YOU'RE INCLINED TO RULE IN THEIR FAVOR

19   ANYWAY, PERHAPS THAT WOULD BE A MATTER FOR COUNSEL TO DISCUSS

20   WHEN WE DIG IN AND DO THE ANALYSIS.

21         **THE COURT:**  OKAY.  ALL RIGHT.  LET'S PUT APART -- SO

22   I WOULD BE OPEN TO A REASONABLE TIME LIMITATION TO THE RELEVANT

23   PERIOD OF THE HYPOTHETICAL LICENSE.  MAYBE THAT'S LIKE A

24   TWO-YEAR WINDOW, OR SOMETHING.  I'M NOT -- I'M GOING TO LEAVE

25   THAT TO YOU.

1          NOW, WHAT ABOUT THE NATURE -- I WOULD BE INCLINED TO

2   PUT SOME MORE SPECIFICITY ON IT, BUT NOT IN EXCRUCIATING DETAIL,

3   SO THAT IT HAS SOME BIGGER CHANCE OF BEING COMPARABLE.

4          **MS. DONNELLY:**  YES, YOUR HONOR.  WE WOULD ACCEPT THE

5   HIGHEST VALUE SOFTWARE LICENSES FROM THE RELEVANT TIME PERIOD.

6          **THE COURT:**  AND WHY ISN'T IT JUST LICENSING OUT?  I

7   MEAN, THE ISSUE IS THE VALUE OF ORACLE.  YOU'RE TRYING TO PROVE

8   THE VALUE OF AN ORACLE LICENSE IN A HYPOTHETICAL NEGOTIATION,

9   AND YOU'RE SAYING THEIR PRODUCTS ARE SIMILAR BECAUSE YOU'RE

10  COMPETITORS, AND, SO, THE VALUE OF WHAT THEY CHARGE WOULD BE

11  APPROPRIATE.  BUT WHAT THEY BUY FROM SOMEBODY ELSE BY ITS NATURE

12  IS SOMETHING THEY CAN'T DO THEMSELVES.

13         **MS. DONNELLY:**  YES, YOUR HONOR, BUT IT WOULD ALSO

14  SPEAK TO DEFENDANT'S POSITION AND PREVIOUS DECISIONS RELATING TO

15  THEIR OWN LICENSING OF OTHER PARTY'S INTELLECTUAL PROPERTY.

16         AT ISSUE HERE IN THIS CASE IS A FAIR MARKET VALUE

17  BETWEEN THE PARTIES WHERE SAP WOULD BE LICENSING ANOTHER PARTY'S

18  INTELLECTUAL PROPERTY.  THEREFORE, THE LICENSES WHERE SAP IS

19  BOTH LICENSING ANOTHER PARTY'S INTELLECTUAL PROPERTY, AS WELL AS

20  LICENSING ITS OWN INTELLECTUAL PROPERTY, COULD BOTH BE USED AND

21  POTENTIALLY RELEVANT IN TRIAL TO THE ISSUE OF THE FAIR MARKET

22  VALUE PRESENTED BY ORACLE AS A MEASURE OF DAMAGES.

23         **MR. MCDONELL:**  I'M SORRY.

24         **THE COURT:**  I SUPPOSE THERE MIGHT BE -- I DON'T KNOW

25  WHAT KIND OF SOFTWARE LICENSING SAP GETS INTO.  I SUPPOSE IF

1    IT'S JUST FOR STUFF FOR RUNNING ITS OWN BUSINESS THAT HAS

2    NOTHING TO DO WITH THIS FIELD OF PRODUCTS, THAT WOULD BE

3    COMPLETELY IRRELEVANT.

4              **MR. MCDONELL:**  THE ANSWER COUNSEL GAVE, WITH ALL DUE

5    RESPECT, WAS A NON-ANSWER.  WHAT SHE'S SAYING IS, WE DON'T KNOW

6    WHAT THIRD PARTY -- WHAT INDEPENDENT THIRD PARTY SOFTWARE MIGHT

7    BE PURCHASED, BUT IF IT'S FOR A LOT OF MONEY, THEN WE'RE

8    INTERESTED IN IT.  THAT DOESN'T GO TO THE HEART OF THIS

9    COMPARABILITY ISSUE.  SO IT'S A NON-STARTER ON THE TECHNOLOGY.

10             **THE COURT:**  THEY MIGHT LICENSE THINGS TO RUN THEIR

11   BUSINESS, LIKE STORAGE CAPACITY, OR SOMETHING LIKE THAT THAT HAS

12   ABSOLUTELY NOTHING TO DO WITH THIS.  I THINK THAT'S IRRELEVANT.

13             **MR. MCDONELL:**  LET ME GO TO THE OTHER ISSUE OF WHAT

14   TYPE OF SOFTWARE SHOULD WE BE FOCUSED ON.  WHAT THEY'RE UN- --

15   OVERTLY TRYING TO DO IS FIND SOME KIND OF COUNTERPART FOR THE

16   ORACLE PRODUCTS THAT WERE SUPPORTED BY TOMORROWNOW.  SO THE

17   NATURAL THING WOULD BE TO LIMIT IT TO SAP SOFTWARE LICENSES OUT

18   OF ENTERPRISE SOFTWARE, GENERALLY IN THE SAME FIELD OF THE JD

19   EDWARDS, PEOPLESOFT, AND SIEBEL PRODUCT LINES.

20             **MS. DONNELLY:**  YOUR HONOR, HOW MUCH DEFENDANTS HAVE

21   PAID FOR OTHER PARTIES' SOFTWARE, REGARDLESS OF ITS SIMILARITY

22   TO PEOPLESOFT, JDE, OR SIEBEL PRODUCT LINES CAN BE RELEVANT TO

23   HOW MUCH THEY PAY FOR THE INTELLECTUAL PROPERTY HERE.

24             **THE COURT:**  WHY?

25             **MS. DONNELLY:**  BECAUSE --

1          **THE COURT:**  I MEAN, IF IT'S WILDLY DIFFERENT

2     INTELLECTUAL PROPERTY, IT WOULDN'T BE RELEVANT.

3          **MS. DONNELLY:**  I THINK, FOR EXAMPLE, IF THE --

4          **THE COURT:**  I MEAN, LET'S SAY THEY HAVE -- YOU KNOW,

5     YOU GUYS SHOULD BE SUPPLYING ME WITH THESE EXAMPLES.  I GUESS

6     YOU SHOULD.  I SUPPOSE ANY LARGE COMPANY COULD, SAY, LICENSE

7     SECURITY SOFTWARE; IT WOULD HAVE NOTHING TO DO WITH ANY OF THIS,

8     AND THEY MIGHT PAY A LOT OF MONEY, OR THEY MIGHT LICENSE

9     SOFTWARE, YOU KNOW, JUST -- YOU KNOW, YOU HAVE TO COME UP

10    WITH --

11         **MR. MCDONELL:**  THERE WERE SOME EXAMPLES UNDER SEAL IN

12    ONE OF THE DECLARATIONS THAT WAS FILED ON THIS MOTION THAT I

13    WOULD RATHER NOT TALK ABOUT IN A PUBLIC RECORD.  BUT THERE WERE

14    NAME BRAND COMPANIES THAT ARE NOT SAP, ORACLE-TYPE CUSTOMERS,

15    COMPANIES.  THERE ARE OTHER TYPES OF COMPANIES.

16         **THE COURT:**  RIGHT.  SO I THINK IT HAS TO BE MORE

17    NARROW.  HOWEVER, I DON'T WANT TO GET INTO EXCRUCIATING DETAIL.

18    I'M LEAVING THAT -- THAT I THINK IS UP TO ALL OF YOU.

19         SO I GUESS THE -- OKAY.  WHAT ELSE WERE YOU GOING TO

20    SAY?

21         **MS. DONNELLY:**  IT LOOKS LIKE THE LAST REMAINING

22    ISSUE -- IT SOUNDS LIKE THE PARTIES WILL FURTHER CONFER ABOUT

23    THE SPECIFICS OF THE TIMEFRAME AND OFFER SOME REASONABLE

24    LIMITATION, ALTHOUGH NOT NECESSARILY IN ORACLE'S POSITION TO THE

25    LEVEL OF DETAIL THAT MR. MCDONELL HAS SUGGESTED, TO THE EXTENT

1  OF THE LICENSES THAT WOULD BE AT ISSUE.

2          **THE COURT:**  I MEAN, I THINK IT COULD BE A LICENSE --

3  I DON'T THINK IT'S SO MUCH LICENSE OUT OR IN, ALTHOUGH OUT

4  THERE'S A BIGGER CHANCE THAT IT'S RELEVANT THAN IN, BUT IF IT'S

5  IN, IF IT WERE IN THE FIELD, I SUPPOSE I WOULD BE FINE.  I JUST

6  WOULD BE SURPRISED IF THAT HAPPENED, BUT THEN I DON'T KNOW

7  ENOUGH ABOUT IT TO KNOW.

8          **MR. MCDONELL:**  SO THE FOCUS I'M TAKING AWAY IS THE

9  LIMITATIONS WILL BE TO SOFTWARE.  THERE WILL BE TIMEFRAME

10  LIMITATIONS.  AND, GENERALLY SPEAKING, IT SHOULD BE THE TYPE OF

11  SOFTWARE THAT'S AT ISSUE IN THE CASE.

12          **THE COURT:**  RIGHT, BUT IN.

13          **MR. MCDONELL:**  WHICH IS THE ENTERPRISE SOFTWARE,

14  PEOPLESOFT, JD EDWARDS AND SIEBEL.

15          **THE COURT:**  I MIGHT DEFINE -- I'M NOT NECESSARILY

16  AGREEING IT SHOULD BE THAT NARROW.  MAYBE IT SHOULD BE, MAYBE IT

17  SHOULDN'T BE, BECAUSE I HAVEN'T HEARD THE HASHING OUT.  BUT THAT

18  IS THE NATURE I HAVE IN MIND.  I MEAN, THAT IS THE POINT OF IT,

19  BUT THERE MIGHT BE SOME REASON WHY THAT FORMULATION IS TOO

20  NARROW; I DON'T KNOW.

21          **MS. DONNELLY:**  YES, YOUR HONOR.

22          THE INTELLECTUAL PROPERTY THE DEFENDANTS WOULD BE

23  LICENSING UNDER THE FAIR MARKET VALUE LICENSE HERE IS A VERY

24  BROAD SCOPE OF INTELLECTUAL PROPERTY, AND THE LICENSES RELATED

25  TO OTHER SOFTWARE BESIDES ENTERPRISE APPLICATION SOFTWARE MIGHT

1   PROVIDE AN EXAMPLE OF WHERE DEFENDANTS HAVE LICENSED A SIMILAR

2   SCOPE OF SOFTWARE OR A SIMILAR VOLUME AT ISSUE.

3          **THE COURT:**  OKAY.  AND I'M NOT GOING PARSE THAT OUT.

4   I JUST CAN'T DO IT.

5          I LEAN MORE TOWARDS, SINCE IT'S SUCH A NARROW NUMBER,

6   AND IT'S THEIR PROBLEM IF THEY END UP WITH SOMETHING THAT'S

7   REALLY TRULY IRRELEVANT, THAT I THINK THE RISK IS MORE ON THEM.

8   SO THAT'S ONE REASON I'M GOING THIS ROUTE.

9          I THINK THAT'S THE MOST ADVICE I CAN GIVE YOU.  IS

10  THERE ANYTHING ELSE?

11         **MS. DONNELLY:**  YES, YOUR HONOR.  WE JUST WANT TO

12  CLARIFY EXACTLY -- SINCE WE ARE BEFORE YOU NOW, WE WANT TO

13  CLARIFY EXACTLY WHAT WOULD BE INVOLVED IN THE PRODUCTION OF

14  THOSE MATERIALS.  WE JUST WANT TO BE SPECIFIC THAT IT SHOULD BE

15  THE LICENSE ITSELF.

16         DEFENDANTS DO NOT HAVE TO PRODUCE EVERY SINGLE PIECE

17  OF PAPER THAT'S EVER BEEN ASSOCIATED WITH SOME OF THESE

18  LICENSES; HOWEVER, WE DO EXPECT THEY WOULD PRODUCE ANY

19  ATTACHMENTS OR APPENDICES OR AMENDMENTS THAT MAKE MATERIAL

20  CHANGES TO THE LICENSE.

21         AND WE ALSO REQUEST THAT, IN THE EVENT THAT SOME OF

22  THESE LICENSES ARE ROYALTY-BASED LICENSES RATHER THAN FLAT FEE

23  LICENSES, THAT DEFENDANTS PROVIDE SOME LEVEL OF DETAIL THAT

24  ALLOWS US TO UNDERSTAND THE TOTAL VALUE OF PAYMENTS MADE DURING

25  THE RELEVANT PERIOD.  SO THAT MIGHT BE INVOICES.  THAT MIGHT BE

1   A ROYALTY AUDIT.  WE'RE FLEXIBLE ABOUT WHAT FORM THAT TAKES.

2   AND WE WOULD EVEN ACCEPT A VERY BRIEF DECLARATION STATING

3   APPROXIMATELY THE PAYMENTS THAT WOULD HAVE BEEN PAID OR RECEIVED

4   PURSUANT TO THAT LICENSE.

5            **MR. MCDONELL:**  THAT'S A REQUEST THAT'S NOT BEEN MADE

6   BEFORE AND WAS NOT A SUBJECT OF THIS MOTION.

7            **THE COURT:**  I AGREE.  I CAN'T RULE ON THE FLY LIKE

8   THAT.  YOU WILL HAVE TO MEET AND CONFER AND DISCUSS IT.  THE

9   CONCEPT OUGHT TO BE SUFFICIENT TO SHOW.

10           **MS. DONNELLY:**  UNDERSTOOD, YOUR HONOR.

11           **MR. MCDONELL:**  HAPPY HOLIDAYS TO ONE AND ALL.

12           **THE CLERK:**  COURT IS IN RECESS.

13                 (PROCEEDINGS ADJOURNED.)

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 07-1658 PJH (EDL), ORACLE V. SAP AG, ET AL., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

WEDNESDAY, NOVEMBER 25, 2009