IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE CORPORATION, et al., | No. C-07-01658 PJH (EDL) |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL** |
| v. | |
| SAP AG, et al., | |
| Defendants. / | |

On November 24, 2009, the Court held a hearing on Plaintiffs' Motion to Compel production of: (1) a supplemental response to Plaintiffs' Interrogatory 69 related to customer valuations; (2) certain information related to Defendants' Research and Development expenses; (3) certain information responsive to Request for Production 147 related to Defendants' licensing practices; and (4) certain information responsive to Plaintiffs' First Targeted Search Request relating to Plaintiffs' infringer's profits measure of damages. The parties stated in their briefing and at the hearing that the second and fourth issues had been resolved. For the reasons stated at the hearing and in this Order, the Court grants in part Plaintiffs' motion to compel with respect to the remaining issues.

**Interrogatory 69**

Interrogatory 69 states:

Describe, in as much detail as possible, how each Defendant analyzes, projects, models, or otherwise calculates the value (economic, marketing, competitive, or otherwise) of a customer to any Defendant, for any length of time, including, but not limited to, analysis, projections, models or other calculations of the value of licensing later versions of a product to a customer or of licensing different products to a customer.

See Donnelly Decl. Ex. B at 11. Plaintiffs argue that this information is relevant to Plaintiffs' proof

of its fair market value measure of damages, specifically that Defendants' customer valuation information can show that Defendants value a customer more highly than the customer's initial purchases of applications or support would suggest. A higher valuation could result from the potential for expanded application and support purchases over time, which in turn is relevant to explain why TomorrowNow customers were far more valuable to Defendants than just the TomorrowNow support fees that they paid.

Defendants argue that they have already provided sufficient customer valuation data. See Donnelly Decl. Ex. B at 11-12. Their substantive response to Interrogatory 69 states:

> SAP is in the business of developing, marketing, selling, implementing and supporting enterprise software applications, The main sources of revenue are software, support, consulting, and education. Software revenues primarily comes from selling perpetual licenses to customers. While signing up a new customer for a software license, SAP does not have an established process for calculating the value of the current and any potential future revenue streams for any length of time. The deal structure of the current deal is solely based on customer requirements for solutions and a negotiated price.

See id. at 14.

As stated at the hearing, Plaintiffs are entitled to more information from Defendants about customer valuation, particularly about valuation over the customer's lifecycle, to the extent Defendants have such information based on any regular practice (as opposed to an ad hoc non-routine effort by an individual marketing employee). Therefore, Defendants shall supplement their response to provide information about general methodologies, formal or informal, that are used to project a customer's value over the lifecycle of the customer. Further, as agreed to at the hearing, Defendants shall also provide a clarification that their response to the Interrogatory was not limited to the time when a customer is first established with Defendants. Accordingly, Plaintiff's Motion to Compel further response to Interrogatory 69 is granted in part.

**Request for Production 147**

Request for Production 147, which was propounded on September 30, 2009, states:

> Documents sufficient to show the terms and value (monetary and/or otherwise) of the five licenses, executed or in effect in the last five years, pursuant to which SAP AG and/or SAP America has been paid the largest overall sum of money for grants by SAP AG and/or SAP American to any Person for the use of SAP's Intellectual Property, and of the five licenses, executed or in effect in the last five years, pursuant to which SAP AG and/or SAP American had paid the largest overall sum of money for grants of other Person's Intellectual Property. Necessary documents would

> include, but not be limited to, Defendants relating to each of the ten licenses' provisions relating to consideration, royalties, taxes, costs, cross-licenses, transfer fees, ownership of Intellectual Property, and Defendants' reporting (financial or otherwise) of the values and benefit to Defendants of such licenses.

See Donnelly Decl. Ex. C at 6-7. Plaintiffs subsequently narrowed the request from ten total licenses to six total licenses. Plaintiffs argue that this information is relevant to show the reasonableness of Plaintiffs' fair market value license amount, which contemplates a willing buyer and willing seller, and to undermine any claim by Defendants that they would never have paid or charged a significant amount for intellectual property.

Defendants argue that their highest dollar value licenses for non-Oracle intellectual property do not bear on the price of a hypothetical license for TomorrowNow's allegedly infringing use of Plaintiffs' intellectual property because they are not appropriate benchmark licenses. Defendants argue that they have already produced discovery about benchmark licenses. Defendants also argue that production would be burdensome.

Actual damages may be calculated by considering "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work" at the hypothetical time of sale. Jarvis v. K2, Inc., 486 F.3d 526, 533-34 (9th Cir. 2007) (internal citations omitted). To calculate these damages, courts consider benchmark licenses with comparable subject matter and terms. See Jarvis, 486 F.3d at 533 (affirming award of hypothetical license where trial court in part considered "the financial perspectives of both the willing buyer (in the form of evidence about what K2 typically pays for images and what it specifically paid Jarvis in its prior dealings with him) and the willing seller (in the form of Jarvis' earlier deals with K2 and his revenue from image databanks) at the hypothetical time of sale."). However, licenses that are not comparable in scope or subject matter have been found to be inadequate to support a hypothetical damages award. See, e.g., Siegel v. Warner Bros. Entm't , 2009 WL 2014164, at *6, 8 (C.D. Cal. July 8, 2009) (finding that parties failed to present comparable licenses for the Superman film and television licenses at issue in that case because the licenses presented were for musicals, lower level comic book characters, novels, and incomparable television characters).

Defendants argue that the highest dollar value licenses are not benchmark licenses that could support a hypothetical damages award. Defendants' arguments, however, go primarily to whether

3

the licenses will be admissible, not whether they are discoverable.  Plaintiffs have made a showing that these licenses are relevant and are therefore entitled to further discovery about them.  Request for Production 147, however, is overbroad.  The Court orders the parties to determine the specific parameters of Defendants' production, but notes that this Request could be further limited in time, limited to licenses for software in general or the kind of applications software at issue in this case, or limited to situations in which Defendants were the licensors rather than the licensees.  Once the parties have agreed on a more targeted Request, Defendants shall produce document sufficient to show the terms of the licenses that are at issue.

**IT IS SO ORDERED.**

Dated: December 1, 2009

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge