Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:    (832) 239-3939
Facsimile:    (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.,*<br><br>            Plaintiffs,<br><br>    v.<br><br>SAP AG, *et al.,*<br><br>            Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' MOTION TO COMPEL**<br><br>Date: January 26, 2010<br>Time: 2:00 pm<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte<br><br>**REDACTED** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 2

    A. Oracle should be compelled to produce download-to- product mapping information .................................................................................................................... 2

        1. The download-to-product mapping issue is a critical issue in this case ...... 4

        2. Defendants first sought production of all critical electronic download-to-product mapping information in Plaintiffs' possession in July 2007 .......... 4

        3. Plaintiffs have consistently represented that mapping the downloads to the products has to be done manually, on a file-by-file basis .................... 6

        4. Electronic download-to-product mapping information has been in Plaintiffs' possession since at least March 2007 ......................................... 8

        5. Jason Rice's testimony disproves Plaintiffs' prior representations to Defendants, Judge Legge and this Court..................................................... 10

        6. Throughout this case, Defendants have continuously sought all electronic download-to-product mapping in Plaintiffs' possession............................. 12

        7. Plaintiffs should be compelled to produce all download-to-product mapping information in their possession and to provide further explanation regarding the creation and access to the information they have produced 13

    B. oracle should be compelled to produce the FOLGER documents ........................ 14

        1. Factual Background ................................................................................... 14

        2. There Is No Undue Burden On Oracle....................................................... 15

    C. oracle should be compelled to update the productions of six key custodians....... 17

        1. Factual Background ................................................................................... 17

        2. Defendants' Request Is Consistent With The Parties' Agreement ............ 19

        3. Defendants Did Not Abandon The Request For Updated Productions...... 20

III. CONCLUSION ............................................................................................................ 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that at 2:00 pm on January 26, 2010, in Courtroom E, 15th Floor, 450 Golden Gate Avenue, San Francisco, Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. ( "Defendants") will move the Court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order compelling Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and Siebel Systems, Inc. ("Oracle" or "Plaintiffs") to comply with the discovery requests described herein.

The motion is based on the Notice of Motion, Motion, and Memorandum of Points and Authorities incorporated herein, and on the accompanying Declarations of Scott W. Cowan  and Jason McDonell and in Support of Defendants' Motion to Compel (respectively, "Cowan Decl." and "McDonell Decl.").

## RELIEF REQUESTED

Defendants seek an order compelling Oracle to: (1) produce discovery relating to Defendants' requests concerning the mapping of Oracle's products to information allegedly downloaded by TomorrowNow, including responses to Requests for Production Nos. 44, 45, 47, and 51 as well Interrogatory No. 7, and the history of Plaintiffs' creation of, access to, and ability to access and produce the information sought by these requests; (2) comply with a third party subpoena to Oracle's counsel Folger Levin & Kahn LLP by producing a small number of deposition transcripts and sixty-four identified documents from the *PeopleSoft v. Oracle* state court litigation; and (3) update the productions of six key custodians pursuant to the parties' Expanded Discovery Timeline Agreement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

At the November 17, 2009 Discovery Conference, the Court expressed a desire to limit the number of issues to be presented in the parties' motions to compel to be filed at the end of fact discovery.  Accordingly, the Court granted leave for each side to file motions to compel on three topics, two of which were identified at the conference, with the third to be identified later. During the conference, Defendants identified open discovery issues relating to the Fourth

1   Amended Complaint ("FAC"), Plaintiffs' expanded claims, including the Siebel product line, and

2   to pre-2005 legacy data.  Also at the conference, the parties discussed the issue of Defendants'

3   subpoena to Folger Levin & Kahn LLP ("Folger") concerning the *PeopleSoft v. Oracle* state court

4   litigation and the Court provided guidance that Defendants interpreted as obviating the necessity

5   for a motion to compel on that issue.

6        Certain developments since the time of the November 17 conference have affected the

7   motions Defendants now present to the Court:

8        (1)  A December 4, 2009 deposition of an Oracle employee revealed that Oracle has

9   misrepresented its ability to produce the electronic download-to-product mapping information

10  Defendants have sought since July 2007, and this issue is the subject of Defendants' first request

11  for relief in this motion (which, for reference purposes, is Defendants' use of the open "third

12  issue" permitted by paragraph 7 of this Court's November 18, 2009 Order);

13       (2)  The pre-2005 legacy data issue has been resolved and does not need to be presented to

14  the Court.  However, the Folger subpoena issue that Defendants believed was resolved by the

15  Court at the November 17 conference is, according to Oracle, not resolved and Oracle has refused

16  to produce any documents on that issue beyond an index of pleadings.  Accordingly, Defendants

17  hereby seek the Court's permission to substitute the Folger supboeana issue for the previously

18  identified pre-2005 legacy data issue (which, for reference purposes, was Defendants' "second

19  issue" permitted by paragraph 7 of this Court's November 18, 2009 Order); and

20       (3)  Defendants have narrowed the request for relief on several discovery issues relating to

21  the FAC, Plaintiffs' expanded claims, and Siebel issues to a single issue, *i.e.* Defendants' request

22  for updated productions for six key custodians under the parties' Expanded Discovery Timeframe

23  Agreement (which, for reference purposes, is Defendants' "first issue" permitted by paragraph 7

24  of this Court's November 18, 2009 Order).

25                    **II.    ARGUMENT**

26  **A.    ORACLE SHOULD BE COMPELLED TO PRODUCE DOWNLOAD-TO-**

27  **PRODUCT MAPPING INFORMATION.**

28       On the very last day of fact discovery in this case, Friday, December 4, 2009, Defendants

1  learned for the first time that Plaintiffs could have, in less than a day's time and as early as March

2  2007, produced a spreadsheet containing significant portions of the download-to-product mapping

3  information that Defendants have continually sought from Plaintiffs since July 26, 2007.[1]

4  However, Plaintiffs failed to produce that spreadsheet to Defendants until November 16, 2009,

5  over two and half years after they filed suit on March 22, 2007.  Plaintiffs' lengthy delay in

6  producing the information contained in that spreadsheet is unjustified and raises serious concerns

7  regarding the completeness of Plaintiffs' discovery responses related to the download-to-product

8  mapping issue that has been a central issue in this case since it was first filed.  To address those

9  concerns, and to make sure Defendants have all the relevant documents and information before

10  Defendants take further action or seek further relief relating to Plaintiffs' delayed production of

11  this critical information, this portion of Defendants' three part motion respectfully requests the

12  Court to issue an order that:

> 1.    Compels Plaintiffs to fully respond to TomorrowNow's First Set of
> Requests for Production Nos. 44, 45, 47, and 51 ("RFP Nos. 44, 45, 47, and 51")
> and First Set of Interrogatories, No. 7 ("Int. No. 7'), both of which were originally
> served on Plaintiffs on July 26, 2007;[2]
>
> 2.    Requires Plaintiffs to certify that all documents and information in their
> possession, custody, or control responsive to RFP Nos. 44, 45, 47, and 51 and Int.
> No. 7 has been provided to Defendants;
>
> 3.    Requires Plaintiffs to identify, with particularity, by Bates number or other
> such specific identifier, which documents Plaintiffs contend they have produced
> that are responsive or otherwise related to RFP Nos. 44, 45, 47 and 51 and Int.
> No. 7; and
>
> 4.    Requires Plaintiffs, for each such document Plaintiffs contend they have
> produced and that are responsive or otherwise related to RFP Nos. 44, 45, 47 and
> 51 and Int. No. 7, to identify who created the document, when Plaintiff acquired
> possession, custody or control over the document and the information contained
> therein, and when it was produced to Defendants.

---

[1]   Cowan Decl. ¶ 7, Exh. A (12/04/09 Rice Tr.), at 60:10-25; 67:25-69:14.

[2]   For the Court's convenience, a single spaced version of the relevant portions of RFP
Nos. 44, 45, 47 and 51 and Int. No. 7 and Plaintiffs' responses and objections thereto are
contained in five separate appendices, labeled Appendices 1 through 5, respectively, to the
Cowan Declaration filed with this motion.  For purposes of ensuring a complete record, complete
copies of the requests and of the responses and objections are attached as Exhibits B and C,
respectively, to the same declaration.

1          **1.**     **The download-to-product mapping issue is a critical issue in this case.**

2         The download-to-product mapping issue is a critical issue in this case because it relates to

3    what is the core of Oracle's original allegations in this case – that TomorrowNow allegedly

4    downloaded massive amounts of materials from Oracle's customer support website that

5    TomorrowNow's customers were not entitled to receive.  Oracle has conceded that some of the

6    materials that TomorrowNow downloaded on behalf of its customers were properly downloaded.

7    Thus, a critical question in this case is which downloaded materials were licensed by the

8    customers on whose behalf TomorrowNow downloaded them and which were not.  Oracle has

9    consistently maintained throughout this case that any download-to-product mapping that can be

10   done has to be done manually, on a file-by-file basis.  And, Oracle has consistently maintained

11   that there is no easily obtainable, combined set of data that would, after the downloading has

12   occurred, allow an electronic, automated comparison of downloaded items to the products to

13   which relate.  The December 4, 2009 testimony of Oracle's employee, Jason Rice, proves

14   otherwise and establishes that Plaintiffs have withheld critical information from Defendants for

15   more than two years.  Now that fact discovery is closed and Defendants can no longer take

16   depositions of Oracle's fact witnesses or tailor further written discovery based on the electronic

17   download-to-product mapping data Oracle just produced on November 16, 2009, Defendants are

18   seriously prejudiced by Plaintiffs' withholding of this critical information.

19         **2.**     **Defendants first sought production of all critical electronic download-**

20                     **to-product mapping information in Plaintiffs' possession in July 2007.**

21        In the very first discovery hearing in this case before Special Master Charles A. Legge on

22   February 13, 2008, Defendants' counsel framed the download-to-product mapping issue for Judge

23   Legge as follows:

24           Really, this issue is what data do they have in their possession that will speed the
             analysis of the TomorrowNow downloaded files, to allow us to segregate those
25           things that our customers are rightfully entitled to under the licenses, and those
             things that we both agree they shouldn't have under their licenses.
26
             But the idea – the end game, if you will – is to get off of our systems those things
27           we both agree shouldn't be there – and to do that in the most efficient, practical
             way.
28

1    Cowan Decl. ¶10, Exh. D (02/13/08 Hearing Tr.), at 22:25-23:9.

2         One category of downloads at issue in this case, related to the J.D. Edwards product line

3    and specifically referenced in the complaint, are what is known as "ESUs." "ESUs" is an

4    acronym used to describe Electronic Software Updates, which are a type of downloadable artifact

5    that Plaintiffs maintained on their Customer Connection support website and that TomorrowNow

6    downloaded on behalf of its customers during times relevant to this lawsuit. ESUs are executable

7    files that, when properly applied to certain J.D. Edwards software, are generally designed to make

8    some change or improvement to that software to address a specific issue or set of issues with the

9    software. There are one or more artifacts known as "SARs" located inside of each ESU. "SARs"

10   is an acronym used to describe Software Action Requests, which are created based on a J.D.

11   Edwards' tracking system used to formally identify specific issues or questions that arise related

12   to the J.D. Edwards software. And, the J.D. Edwards software itself is comprised of a variety of

13   "objects" that, depending on the issue identified through a SAR, may need to be created, modified

14   or replaced to resolve a particular issue.

15        ESUs, SARs, and objects each have a corresponding "system code," which is a J.D.

16   Edwards-assigned two to four digit code referring to a specific portion of the J.D. Edwards

17   software product. In other words, the corresponding system code for each ESU, SAR, and object

18   provides information about which J.D. Edwards software products those downloadable artifacts

19   relate. The scope of the licenses for J.D. Edwards software products are in some instances

20   articulated on the basis of which "system codes" the licensee of the products is licensed. Thus,

21   the "system code" is a way of tying a downloaded ESU, SAR, or object back to a specific J.D.

22   Edwards software product. Therefore, if one wanted to electronically "map" a given download of

23   an ESU, SAR, and/or object to a given product, then an electronic spreadsheet showing which

24   system codes relate to each ESU, SAR, and object that is available for downloading would be

25   very useful in that exercise.

26        Given the substantial volume of downloads at issue and the impracticalities of doing a

27   manual file-by-file analysis of them, on July 26, 2007 Defendants served Plaintiffs with certain

28   requests for production (RFP Nos. 44, 45, 47, and 51) and a related interrogatory (Int. No. 7)

1    seeking all documents and related information in Plaintiffs' possession that would permit an

2    electronic download-to-product mapping for each download then existing on TomorrowNow's

3    systems.  Plaintiffs initially responded mostly with objections and without producing or

4    referencing anything other than TomorrowNow's customers' software license agreements with

5    Plaintiffs.  The license agreements referenced by Plaintiffs do not contain any specific

6    information showing which downloads relate to which products (*i.e.*, the system codes that are

7    linked to each downloadable artifact).  So, in early 2008, as part of Defendants' first motion to

8    compel in this case, Defendants requested that Judge Legge order Plaintiffs to produce all of the

9    download-to-product mapping information in Plaintiffs' possession.

10                    **3.       Plaintiffs have consistently representated that mapping the downloads**

11                    **to the products has to be done manually, on a file-by-file basis.**

12           In response to Defendants' motion to compel all of the download-to-product mapping

13   information in Plaintiffs' possession, Plaintiffs told Judge Legge that, at least as of February 13,

14   2008, Plaintiffs had no mapping system that would permit the parties to map each download to

15   each product for which a given customer was licensed.  Cowan Decl. ¶ 10, Exh. D, at 23:10-33:5.

16   Plaintiffs told Judge Legge that the only way to map a specific download to a specific product

17   was to manually open each downloaded file and look for the system code information contained

18   in that file.  *Id.*  In response, Judge Legge asked Plaintiffs' counsel: "**Do you have, presently**

19   **existing, any mapping device** or program or code which would eliminate the necessity for doing

20   it one by one?" *Id.* at 33:6-8 (emphasis added).  Plaintiffs' counsel answered that question "No,"

21   as follows:

22           MR. HOWARD:  The answer to that, Your Honor, is: "**not that we have been**
             **able to generate so far.**"  We're still working on it, because we have the same
23           interest in this that they do.  It wasn't our preference to limit the complaint to
             ESUs with a single system code in them, because we recognize that other ESUs
24           were illegally downloaded that happened to have more than one system code.
             Customers know what products they are licensed to; they know what system
25           codes apply to the things they are looking for.

26           JUDGE LEGGE:  I would think so.

27           MR. HOWARD:  So they are not going at it from the reverse direction we are
             talking about now.
28

1    JUDGE LEGGE:  We are starting with bulk, and trying to break it down.

2    MR. HOWARD: Right.  So, **if we had it, we would be giving it to them.**  We're
     working on it, but we don't have something at this point that we can hand over,
3    that will solve – that will do Mr. Cowan's work for him.

4    JUDGE LEGGE:  You know that you are going to be hearing the same thing back
     again when we start talking about their database.
5
     MR. HOWARD:  But the difference, **Your Honor,** is here **we have given them –**
6    **compiled as much as we can compile.**

7    JUDGE LEGGE:  **You are telling me that you do not have a present mapping**
     **system**.
8
     MR. HOWARD:  **Right.**
9
     JUDGE LEGGE:  But if you were to answer – I'm putting words into your
10   mouth; please tell me if I am wrong – if you were to give them what they want,
     you would have to go through each one of the sub files one by one, to produce the
11   code connection or something.  Is that right?

12   MR. HOWARD:  Yes, and indeed that's what we did to file the complaint.

13   *Id.* at 33:9-34:20 (emphasis added).

14   Judge Legge then took what Plaintiffs told him during the hearing and issued his report

15   and recommendations based on that information.  And, with respect to the requested mapping

16   information, Judge Legge found in relevant part:

17        **If this information is now available on Oracle's system, the answer should**
          **logically come from Oracle's information base rather than from defendants**.
18        … Defendants want more detail in the mapping information, primarily to relate
          the information directly to defendants' sub-files, and the connections between the
19        sub-files, the products and the contract.  Defendants represent that they would
          otherwise have to do that work themselves on a one-by-one basis on each sub file.
20        On the other hand, Oracle represents that it does not presently have a system
          which would allow it to map the sub files; but rather Oracle would have to do the
21        same one-by-one sub files as defendants would have to do.

22   Cowan Decl. ¶ 11, Exh. E (02/22/08 Report and Recommendations Re: Discovery Hearing No. 1)

23   (Dkt. 66), at 3-4 (emphasis added).

24   After making those findings, Judge Legge ordered Plaintiffs, at Plaintiffs' expense, to

25   send an engineer to Defendants' premises to work with one of Defendants' engineers to see if a

26   method of access could be developed.  Cowan Decl. ¶ 11, Exh. E, at 3-4.  Pending that exercise

27   and based on Plaintiffs' representations cited in Judge Legge's ruling, he denied without

28   prejudice Defendants' motion to compel the product-to-download mapping information.  *Id.*

1   Instead of having an immediate onsite meeting at TomorrowNow's data center,

2   Defendants continued to produce to Plaintiffs' copies of all of the downloaded materials

3   contained on TomorrowNow's servers.  TomorrowNow did that by both providing Plaintiffs and

4   their experts actual copies of the contents of certain servers and making other servers available

5   through the Data Warehouse, which was constructed in the summer of 2008 and is still currently

6   maintained at Defendants' expense for Plaintiffs' access and use.

7   **4.   Electronic download-to-product mapping information has been in**

8   **Plaintiffs' possession since at least March 2007.**

9   It is now clear, however, that Plaintiffs did not need to send an engineer to Defendants'

10  premises to work with one of Defendants' engineers to see if a method of access to some

11  automated mapping information could be developed.  The fact is that, at least since they filed this

12  lawsuit in March 2007, Plaintiffs have had the ability to access the relevant information in their

13  own databases and easily create a spreadsheet with a large portion of the critical download-to-

14  product mapping information that Defendants have been requesting since July 2007.  Thus, using

15  the pertinent language from Judge Legge's February 22, 2008 ruling: "[The information was]

16  available on Oracle's system [as of March 2007, and thus] the answer should [have] logically

17  come from Oracle's information base rather than from defendants."  Instead, and with significant

18  prejudice to Defendants, substantial and critical portions of that mapping information were not

19  produced by Plaintiffs until November 16, 2009, just a mere 19 days before the close of the years-

20  long fact discovery in this case.

21  Plaintiffs' own witness, Jason Rice, a Principal Software Engineer employed by Oracle

22  Corporation,[3] testified on the last day of discovery in this case that he could have in March 2007,

23  and in less than a day's time, produced significant portions of the download-to-product mapping

24  information Defendants have requested since July 2007.  Cowan Decl. ¶ 7, Exh. A, at 60:10-25;

25  67:25-69:14.  More specifically, using Plaintiffs' own databases, Jason Rice created a massive

26  spreadsheet containing, in part, exactly what Defendants have been seeking since July 2007,

27  which is an electronic spreadsheet showing for each ESU: REDACTED

28  [3] Cowan Decl. ¶ 7, Exh. A, at 5:22-6:3.

1 REDACTED

2 

3 

4 

5 *Id.*  Rice's massive spreadsheet was not produced to Defendants until November 16,

6 2009, when Plaintiffs produced their experts' reports and certain back up materials for those

7 reports.[4]

8 While referencing an excerpt from this massive spreadsheet that was marked as

9 Defendants' Exhibit 932 at his December 4, 2009 deposition (and submitted here as Exhibit G to

10 the Cowan Declaration), Jason Rice testified that:



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 [4] A CD containing an electronic copy of the massive spreadsheet created by Rice and first

26 produced by Plaintiffs on November 16, 2009 and labeled as ORCLX-MAN-000016 is attached
as Exhibit F to the Cowan Declaration and, as a courtesy, submitted *in camera* with this motion.

27 To the extent the Court will permit, Defendants' counsel would like to use this electronic version
of the spreadsheet with a computer projector display during the hearing on this motion.  In

28 addition, paper copy excerpts from this massive spreadsheet were attached marked as Exhibit 932
at Jason Rice's deposition and are attached as Exhibit G to the Cowan Declaration.

REDACTED

Cowan Decl. ¶ 7, Exh. A, at 67:25-69:14.

And, when asked how long it took to prepare the report, Jason Rice responded as follows:

> Page 60
> 10     Q.  How long did it take you to create the Tab
> 11  B7333 that is in the file ESU SAR DATA.xls?
> 12        MR. ALINDER:  Objection.  Vague and
> 13  ambiguous, assumes facts not in evidence.
> 14        THE WITNESS:  It -- I can't remember how
> 15  long it would take me.
> 16        MR. COWAN:  Q.  Can you estimate?
> 17        MR. ALINDER:  Same objections.
> 18        THE WITNESS:  It -- it probably didn't take
> 19  that long, but --
> 20        MR. COWAN:  Q.  Less than a day?
> 21     A.  For this information?
> 22     Q.  Yes.
> 23        MR. ALINDER:  Same objections.
> 24        THE WITNESS:  It could possibly take less
> 25  than a day, yes.

*Id.* at 60:10-25.

### 5.    **Jason Rice's testimony disproves Plaintiffs' prior representations to Defendants, Judge Legge and this Court.**

Despite the fact that Plaintiffs' own witness has testified that this download-to-product mapping spreadsheet could easily have been generated in March 2007, Plaintiffs have throughout this case continued to assert that this information is not available and that the mapping exercise has to be done manually.  For example:

(a) On February 13, 2008, Plaintiffs represented to Judge Legge at the first

1   discovery hearing, as described above, stating that as of that date, Plaintiffs did
    not have a mapping system;

2
    (b) On August 4, 2009, Plaintiffs represented to Judge Laporte that "We gave
3   them all of the ESUs in this database so that for any given one on their system
    they could go find it in the database that Oracle keeps for itself. They can look at
4   it. They can see the system code. They can match it to a piece of software. They
    can match that piece of software to what a customer has licensed. I think the
5   complaint is that there is not an easy way to do it. I'm sorry, but it's true. **There
    is not an easy way to do that**. ... **All I am saying your Honor, is that whatever
6   information we have that would allow you to map, we have given it to
    them;**"[5] and

7
    (c) On October 13, 2009, Plaintiffs represented in a meet and confer letter to
8   Defendants that: "**That this mapping cannot be easily accomplished in an
    automated or electronic fashion is neither Oracle's fault nor an excuse for
9   Defendants' to claim it cannot be done at all.** Defendants, like Oracle, must
    take the evidence as it is, not disclaim it for not being in the form they would like
10  it to be.[6]

11      In light of Jason Rice's December 4, 2009 testimony, the foregoing representations that

12  the requested download-to-product mapping information is not easily accessible in electronic

13  form and that any such mapping has to be done manually are, at the very minimum, not accurate.

14  Moreover, it would be implausible for Plaintiffs to now take the position that they did not know

15  that Jason Rice had access to this information all along **REDACTED**

16

17

18

19

20                                      Cowan Decl. ¶ 17, Exh. K (Plaintiffs' privilege and redaction log

21  entries, dated 02/13/07 through 03/16/07).

22      **REDACTED**

23

24

25  ─────────────────────
        [5]  Cowan Decl. ¶ 15, Exh. I (08/04/09 Hearing Tr.), at 33:14-22 and 35:12-14) (emphasis
26  added).

27      [6]  Cowan Decl. ¶ 16, Exh. J (10/13/09 Letter from Z. Alinder to S. Cowan and J.
    McDonell), at 3 (emphasis added).

28      [7]  Cowan Decl. ¶ 7, Exh. A, at 11:1-13:22.

1   REDACTED

2

3

4   Adding further interest to this inquiry is the fact

5   that during his December 4, 2009 deposition, Rice also conceded that another spreadsheet he

6   created and that is relevant to the download-to-product mapping issue (marked as Defendants'

7   Exhibit 935 at his deposition and attached as Exhibit H to the Cowan Declaration), was created on

8   February 8, 2007. Cowan Decl. ¶ 7, Exh. A, at 77:2-19. This spreadsheet contains download

9   audit information listing certain ESUs that were downloaded and showing the user ID and

10  customer name and other user information associated with each downloaded ESU. *Id.* Thus, this

11  document existed and was in Plaintiffs' possession on February 8, 2007. However, it was not

12  produced until over two and half years later on November 16, 2009.

13              **6.      Throughout this case, Defendants have continuously sought all**

14                     **electronic download-to-product mapping in Plaintiffs' possession.**

15      Although, Defendants originally took Plaintiffs at their word that they could not produce

16  the information that Rice later testified on December 4, 2009 could in fact be produced,

17  Defendants have continued to insist that Plaintiffs produce all download-to-product mapping

18  information in their possession, custody, or control. For example, in addition to the original

19  discovery requests served in July 2007, Defendants have specifically requested this mapping

20  information throughout fact discovery in this case, including, but not limited to, on November 19,

21  2007, December 12, 2007, January 28, 2008, June 16, 2009, July 14, 2009, November 6, 2009

22  and November 17, 2009.[8]

23

24

25      [8] For the Court's convenience, and in an effort to spare the Court from having to wade
    through reams of pleadings, transcripts, and the parties' meet and confer communications,
26  Defendants have consolidated in the single Appendix 6 to Cowan Declaration, incorporated by
    reference herein, excerpts from Exhibits L through R to the Cowan Declaration showing where
    Defendants specifically requested download-to-product mapping information from Plaintiffs.
27  throughout fact discovery in this case, including, but not limited to, on November 19, 2007,
    December 12, 2007, January 28, 2008, June 16, 2009, July 14, 2009, November 6, 2009 and
28  November 17, 2009.

1        **7.**    **Plaintiffs should be compelled to produce all download-to-product**

2        **mapping information in their possession and to provide further**

3        **explanation regarding the creation and access to the information they**

4        **have produced.**

5      The information provided during Jason Rice's deposition on December 4, 2009 is a clear

6  indication that Plaintiffs have not fully and timely responded to RFP Nos. 44, 45, 47, and 51 and

7  Int. No. 7. Thus, Defendants' respectfully request this Court to issue an order that:

8      1.    Compels Plaintiffs to fully respond to TomorrowNow's First Set of
Requests for Production Nos. 44, 45, 47, and 51 ("RFP Nos. 44, 45, 47 and 51")

9      and First Set of Interrogatories, No. 7 ("Int. No. 7');

10      2.    Requires Plaintiffs to certify that all documents and information in their
possession, custody or control responsive to RFP Nos. 44, 45, 47 and 51 and Int.

11      No. 7 has been provided to Defendants;

12      3.    Requires Plaintiffs to identify, with particularity, by Bates number or other
such specific identifier which documents Plaintiffs contend they have produced

13      and that are responsive or otherwise related to RFP Nos. 44, 45, 47 and 51 and
Int. No. 7; and

14

15      4.    Requires Plaintiffs, for each such documents Plaintiffs contend they have
produced and that are responsive or otherwise related to RFP Nos. 44, 45, 47 and
51 and Int. No. 7, to identify who created the document, when Plaintiff acquired

16      possession, custody or control over the document and the information contained
therein, and when it was produced to Defendants.

17

18      The primary purposes of this portion of this motion are: (1) to ensure that Plaintiffs are

19  under a Court order to fully respond to RFP Nos. 44,45, 47, and 51 and Int. No. 7, including the

20  production and description of all of the download-to-product mapping information that is in their

21  possession, custody, or control; and (b) to require Plaintiffs to provide additional information

22  regarding the information and documents they have produced in response to those discovery

23  requests, including information regarding the dates of creation and production of any such

24  documents and information. The foregoing request for relief is made subject to, without waiving,

25  and in an effort to support, Defendants' right to take further action or seek further relief relating

26  to Plaintiffs' delayed production of this critical information, including but not limited to, a motion

27  to strike any expert testimony related to such information, a motion to preclude the use of any

28  untimely produced evidence at trial, or any other sanction or remedy that may be appropriate

SFI-625231v1

DEFS.' MOTION TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

1   under the circumstances.

2   **B.    ORACLE SHOULD BE COMPELLED TO PRODUCE THE FOLGER**

3         **DOCUMENTS.**

4              **1.    Factual Background.**

5         In 2003, PeopleSoft sued Oracle in Alameda County Superior Court ("*PeopleSoft v.*

6   *Oracle*").  McDonell Decl. ¶1, Exh. A (Redacted Second Amended Complaint).[9]  The San

7   Francisco law firm of Folger, Levin & Kahn LLP ("Folger") represented PeopleSoft in that

8   action.  *Id.*  In response to Oracle's hostile takeover effort, PeopleSoft claimed that Oracle

9   "deliberately set out to create and has succeeded in creating fear, uncertainty, and doubt among

10  PeopleSoft's customers, prospective customers and others" and had "embarked on a campaign of

11  disinformation in an attempt to cripple PeopleSoft's ability to sell its software . . . ."  *Id.* at

12  ¶¶ 3,12.  PeopleSoft also claimed that "Oracle's CFO, Jeff Henley, told a press conference that

13  Oracle did not intend to 'keep [PeopleSoft] alive'" and that "Oracle's Executive Vice President

14  and a member of its board, Safra Catz, admitted in an internal email: 'we really won't be

15  continuing [PeopleSoft's] product line.'"  *Id.* at ¶ 37 (emphasis omitted).  The crux of the

16  complaint was that Oracle was causing customers to leave PeopleSoft in order to reduce the value

17  of PeopleSoft and allow Oracle to acquire it more cheaply.[10]

18        In the case before this Court, Oracle alleges that SAP undertook marketing efforts

19  designed to exacerbate "unfounded, PeopleSoft and JDE customer uncertainty about the prospects

20  for long-term, quality support from Oracle."  FAC (Dkt. No. 418), ¶ 83.  In contrast, Defendants

21  contend that the fear and uncertainty that Oracle was causing among the PeopleSoft and JDE

22  customer base was not "unfounded" and did cause customers to leave Oracle.  Thus, evidence of

23  _____

          [9] J. D. Edwards was also a party plaintiff in the action against Oracle and also represented
24  by Folger.  *Id.*

          [10] Judge Legge addressed a different issue in his March 14, 2008 Report and
25  Recommendations Re Discovery Hearing No. 1 (Dkt. No. 66).  Specifically, he addressed
    whether Oracle should be required to search its files related to the Department of Justice's 2004
26  antitrust action against Oracle in response to certain discovery requests.  At that early stage of
    discovery, Judge Legge denied that request *without prejudice*.  The Folger subpoena is directed to
27  a separate state court action for unfair competition.  Thus, given the difference in the requests at
    issue and Judge Legge's previous denial without prejudice, Judge Legge's decision has no impact
28  on the Folger subpoena.

1   the actions Oracle itself took to create fear and uncertainty among the PeopleSoft and JDE

2   customer bases is relevant to the issue of causation (*i.e.*, why PeopleSoft and JDE customers

3   chose to leave Oracle).  Moreover, because Plaintiff Oracle USA, Inc. is the "successor" to

4   PeopleSoft (FAC ¶ 35), assertions made by PeopleSoft at that time are direct admissions by a

5   party plaintiff to this case.

6        By this motion, Defendants seek to compel compliance with a third party subpoena served

7   on Folger seeking non-privileged pleadings and transcripts from *PeopleSoft v. Oracle*.[11]

8   Defendants served the subpoena on September 22, 2009, two and one-half months before the

9   close of fact discovery.  McDonell Decl. ¶ 2, Exh. B (09/22/09 Folger subpoena).  Because of

10  Oracle's preliminary indications of resistance to the subpoena, Defendants included the issue in

11  the Joint Discovery Conference Statement for the September 30, 2009 conference.  Dkt. No. 493,

12  at 19-21.  Due to time limitations, the Court did not address the issue during that conference.

13       Thereafter, Folger served objections and Oracle adopted the issue as its own.[12]  McDonell

14  Decl. ¶ 3, Exh. C (objections to subpoena).  By the time of the November 17, 2009 Discovery

15  Conference, the issue was effectively joined, with Oracle arguing that the discovery was not

16  sufficiently relevant to warrant the burden of production.  Dkt. No. 548, at 12-16.  Oracle

17  identified a universe of 1,500 pleadings and a "small number of deposition transcripts" as

18  potentially responsive and complained about the burden of reviewing those documents in the last

19  months of fact discovery.  McDonell Decl. ¶ 5, Exh. E (10/26/09 letter from G. Howard to J.

20  McDonell), at 2.

21                    **2.    There Is No Undue Burden On Oracle.**

22       The issue on this motion is really one of burden, as Oracle cannot seriously contend that

23  the discovery is wholly irrelevant.  Indeed, it concedes that PeopleSoft alleged Oracle "engaged

24  in acts aimed at creating FUD [fear, uncertainty and doubt] aimed at the PeopleSoft customer

25       _____

        [11] A copy of the subpoena is attached as Exhibit B to the McDonell Declaration filed
26  herewith.  Defendants seek documents that have redactions in the publicly filed versions and are
    therefore not publicly available in their entirety.

27       [12] Specifically, Oracle has agreed that this motion can be directed to Plaintiffs and that
    there is no need for a motion directed to Folger.  McDonell Decl. ¶ 4, Ex. D (email exchange
28  between J. McDonell and G. Howard).

base." McDonell Decl. ¶ 5, Exh. E, at 2. Oracle's efforts to downplay and spin the significance of that FUD, however, simply underscores the need for Defendants to obtain the actual assertions made at the time. During the November 17 Discovery Conference, the Court provided guidance that appeared to resolve the issue in Defendants favor. Specifically, the Court directed Oracle to produce the index to the Folger legal file and indicated that Defendants would be justified in identifying some much more limited set of documents. McDonell Decl. ¶ 6, Exh. F (11/17/09 Tr.), at 35:20-36:2.

In accordance with that guidance, Oracle produced a thirty-two page index of the legal pleadings purportedly representing the index of pleadings maintained by Folger related to *PeopleSoft v. Oracle*. McDonell Decl. ¶ 7, Exh. G (11/30/09 email from G. Howard to E. Wallace). From that list, Defendants initially selected eighty-four documents. McDonell Decl. ¶ 8, Exh. H (12/01/09 email from J. McDonell to G. Howard). Thereafter, Defendants narrowed the request still further to sixty-four pleadings, plus the transcripts. McDonell Decl. ¶ 9, Exh. I (12/10/09 email from J. McDonell to G. Howard, with attached list of requested documents). On its face, the request for sixty-four documents from the universe of 1,500 is "much more limited" and in accordance with the Court's guidance. In response, Oracle has refused to produce any of the requested documents, asserting that Defendants must identify with particularity the relevance of each requested document. McDonell Decl. ¶ 10. Because the descriptions of the documents on the index are short and often cryptic, Defendants declined the offer as impractical and the issue was joined for this motion. *Id.*

In terms of relative burdens, it is worth noting that the scope of third party discovery Defendants have served in this case is minimal in comparison to that served by Plaintiffs. Plaintiffs have served 156 third party subpoenas, compared to approximately 20 served by Defendants. McDonell Decl. ¶ 11. Moreover, Oracle has served discovery on four of Defendants' outside law firms. *Id.*

Oracle will not bear an undue burden in responding to the subpoena. The effort to produce sixty-four pleadings and "a small number of deposition transcripts" is *de minimus* in the context of this case. Whether compared to the productions of both parties, or to productions by

1   any of the 156 third parties subpoenaed by Oracle, this is a very manageable task.  Moreover,

2   Defendants have offered to bear the reasonable cost of Folger's review or to alleviate as much of

3   the burden as possible by offering to review Folger's documents with a view toward possibly

4   narrowing the request still further.  That offer remains open.

5          Finally, the index produced by Oracle confirms the likely relevance of the documents and

6   only strengthens Defendants' interest them.  As examples, the pleadings Defendants seek include

7   factually intensive documents such as PeopleSoft's interrogatory response concerning "Lost

8   Deals After Tender Offer," a declaration in support of Oracle's motion in limine regarding

9   "PeopleSoft's Customer Proof of Liability and Damages" and PeopleSoft's opposition to a

10  motion in limine regarding "internal Oracle customer strategies."  McDonell Decl. ¶ 9, Ex. I, Nos.

11  15, 20, and 56.  On the surface, each of these documents potentially bears on the impact that

12  Oracle was having on the PeopleSoft customer base, and that in turn bears upon assessing the

13  impact Defendants had upon the PeopleSoft customer base.

14         In sum, the burden of this production is inconsequential and the potential relevance is

15  significant.  Oracle should be ordered to produce the sixty-four identified documents and the

16  "small number" of deposition transcripts forthwith.

17  **C.      ORACLE SHOULD BE COMPELLED TO UPDATE THE PRODUCTIONS OF**

18          **SIX KEY CUSTODIANS.**

19               **1.     Factual Background.**

20         In November 2008, the parties entered into an Expanded Discovery Timeline Agreement

21  (the "Agreement") pursuant to which the relevant time period for discovery was expanded from

22  March 22, 2007, the date of the initial complaint, to October 31, 2008, the date on which

23  TomorrowNow ceased operations.[13]  McDonell Decl. ¶ 12, Exh. J (Expanded Discovery Timeline

24  Agreement).  Under the Agreement, the parties are permitted to request documents for the

25  expanded time period from "key custodians" or centralized sources relating to certain subject

26  matters enumerated in the Agreement.  *Id.*  Those subject matters include "customer related

27

28         [13] The Agreement also expands the relevant time period from January 1, 2004 back to
    January 1, 2002.  However, the pre-2004 time period is not at issue in this motion.

1  documents," including documents regarding "customers returning to Oracle from TN, customers
2  lost by Oracle and efforts by Oracle to mitigate its damages, and customers gained by TN or
3  SAP." *Id.* (Item No. 8 in the Agreement). The subject matters also include "Damages Causation
4  and Mitigation Documents," and documents related to the "TomorrowNow Business Model,"
5  including documents related to "independent third party support." *Id.* (Item Nos. 9 and 10 in the
6  Agreement).

7       On May 20, 2009, pursuant to the Agreement, Defendants requested updated productions
8  for the March 2007 to October 2008 time period for eleven key custodians. McDonell Decl. ¶ 13,
9  Exh. K (05/20/09 email from J. McDonell to Oracle's counsel). On May 29, Oracle responded
10  that it would meet and confer with Defendants regarding the request after "investigating the
11  burden associated with [the] request." *Id.* The parties met and conferred on June 4 (McDonell
12  Decl. ¶ 14) but, as discussed below, their recollections of the discussion differ.

13       On November 17, 2009, Defendants requested confirmation that Oracle had updated its
14  productions for the eleven key custodians. McDonell Decl. ¶ 15. On November 30, Oracle
15  responded that it had not updated the productions, and would not do so, because it considered the
16  request "improper when first made" and subsequently "abandon[ed]" by Defendants. McDonell
17  Decl. ¶ 16, Exh. L, at 4 (11/30/09 letter from Z. Alinder to E. Wallace). Oracle contends that it
18  objected during the June 4 conference that the request for updated productions did not fit within
19  the subject matters identified in the Agreement and that it requested further explanation from
20  Defendants.[14] *Id.* Oracle also contends that Defendants agreed to, but did not, provide any
21  further explanation and thus "abandon[ed]" the issue. *Id.* Defendants' record of the June 4
22  conference is unclear, but Defendants dispute that they ever abandoned their requests. McDonell
23  Decl. ¶ 17.

24       The parties met and conferred again on December 2, 2009. Defendants, in an effort to
25  limit the burden on Oracle and recognizing that there had been a miscommunication between the
26  parties, offered to reduce the original list of eleven key custodians to six, including removing top

27       ──────────
        [14] Oracle's November 30 letter states that the meet and confer took place on June 6, which
28  was a Saturday. Defendants believe this is incorrect. Defendants' records indicate that the meet
        and confer took place on Thursday, June 4.

1    executives Larry Ellison, Safra Catz, and Charles Phillips from the list.[15]  McDonell Decl. ¶ 18.

2    Defendants also proposed to limit the search terms applicable to the updated productions and, on

3    December 4, provided Oracle a list of 71 search terms, compared to the parties' usual list of

4    approximately 900 search terms.  *Id.* at ¶ 19.  Nonetheless, Oracle refused to provide updated

5    productions, even for the six key custodians.

6                    **2.        Defendants' Request Is Consistent With The Parties' Agreement.**

7            Oracle's objection that Defendants' request for updated productions is "improper" was

8    unfounded in May 2009 when Defendants first made the request, and is unfounded now.  The six

9    custodians to whom Defendants have now limited the request are all key custodians and all likely

10   to have responsive data relating to the subject matters identified in Item Nos. 8, 9, and 10 in the

11   Agreement:

12   •   **Juergen Rottler** is Executive Vice President, Oracle Customer Services, with

13       responsibility for Oracle's support services organization, including support sales.

14       McDonell Decl. ¶ 20.  His production for the original discovery time period includes

15       thousands of pages relating to "customers returning to Oracle from TN, customers lost by

16       Oracle and efforts by Oracle to mitigate its damages, and customers gained by TN or

17       SAP" (Item No. 8 in the Agreement), damages causation and mitigation (Item No. 9 in the

18       Agreement), and third party support (Item No 10 in the Agreement).  *Id.*

19   •   **Juan Jones** is Senior Vice President, Oracle Customer Services, North American Support

20       Services.  McDonell Decl. ¶ 21.  He reports to Mr. Rottler and is responsible for sales of

21       support services in North America.  *Id.*  His production for the original discovery time

22       period includes thousands of pages relating to Item Nos. 8, 9, and 10 in the Agreement.

23       *Id.*

24   •   **Chris Madsen** is Oracle's Senior Director, Support Services.  McDonell Decl. ¶ 22.  He

25       reports to Mr. Jones.  *Id.*  His name appears on thousands of documents from the original

26       discovery time period relating to Item Nos. 8, 9, and 10 in the Agreement.  *Id.*

27   _____
     [15] The six custodians are Juergen Rottler, Juan Jones, Rick Cummins, Michael Van
28   Boening, Chris Madsen, and Robert Lachs.  These six were selected from a total of 131
     custodians identified by Defendants.

1  • **Rick Cummins** is Oracle's Senior Director of Support Renewals for North America.

2  McDonell Decl. ¶ 23. He reports to Mr. Madsen. *Id.* He was Oracle's Rule 30(b)(6)

3  witness on topics relating to Item Nos. 8, 9, and 10 in the Agreement, including third party

4  support providers, Oracle's communications with customers regarding third party support,

5  and Oracle's efforts to stop customers going to third party support providers and to win

6  customers back from third party support providers, including TomorrowNow. *Id.* His

7  production for the original discovery time period includes thousands of pages relating to

8  Item Nos. 8, 9, and 10 in the Agreement. *Id.*

9  • **Robert Lachs** is a former Regional Sales Manager, Support Sales. McDonell Decl. ¶ 24.

10  He was responsible for numerous support sales representatives whose territories included

11  dozens of TomorrowNow customers. His production for the original discovery time

12  period includes thousands of pages relating to Item Nos. 8, 9, and 10 in the Agreement.

13  *Id.*

14  • **Michael Van Boening** is a Senior Support Sales Representative. McDonell Decl. ¶ 25.

15  In addition to frequent interactions with customers as part of his sales duties, he was

16  involved in Oracle's efforts to collect information regarding third party support providers

17  and in compiling information on customers won back from third party support providers,

18  including TomorrowNow. *Id.* His production for the original discovery time period

19  includes thousands of pages relating to Item Nos. 8, 9, and 10 in the Agreement. *Id.*

20  \*\*\*

21  The positions of these six custodians and the content of their productions for the original

22  discovery time period make clear that their documents fall within the subject matters enumerated

23  in the Agreement. Thus, there is (and was never) any basis for Oracle's objection that the request

24  did not fit within the subject matters identified in the Agreement or for its purported demand for

25  further "explanation" of Defendants' request.

26  **3.     Defendants Did Not Abandon The Request For Updated Productions.**

27  Oracle's "abandonment" argument is similarly improper, particularly given how much

28  discovery has taken place since Defendants made their request for updated productions in May

1  2009. Defendants note that Oracle, not having received a response to its (unwarranted) request

2  for further explanation, did not attempt to follow up with Defendants to confirm whether

3  Defendants were still pursuing the production request or the request had simply fallen through the

4  cracks. Now that Defendants have made clear that the request still stands and have limited the

5  request to six (out of a total of 131 custodians) key custodians and 71 (rather than the parties

6  usual approximately 900) search terms, there is no basis for continuing to refuse Defendants'

7  request.

8  ### III.    CONCLUSION

9      For the above reasons, Defendants' motion to compel should be granted.

10

11  DATED: December 11, 2009                    JONES DAY

12                                             By: /s/ Jason McDonell
                                                   Jason McDonell
13                                             Attorneys for Defendants
                                               SAP AG, SAP AMERICA, INC., and
14                                             TOMORROWNOW, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28