# EXHIBIT P

Dockets.Justia.com

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA  94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA  94303
   Telephone:    (650) 739-3939
10 Facsimile:    (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:    (832) 239-3939
15 Facsimile:    (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19            UNITED STATES DISTRICT COURT

20            NORTHERN DISTRICT OF CALIFORNIA

21              SAN FRANCISCO DIVISION

22 ORACLE USA, INC., et al.,              Case No. 07-CV-1658 PJH (EDL)

23            Plaintiffs,                 **DEFENDANTS' OPPOSITION TO
                                          PLAINTIFFS' MOTION TO
24      v.                               COMPEL PRODUCTION OF
                                          DOCUMENTS RELATED TO
25 SAP AG, et al.,                       DAMAGES MODEL AND
                                          INTERROGATORY RESPONSES
26            Defendants.                RELATED TO USE OF PLAINTIFFS'
                                          INTELLECTUAL PROPERTY**
27
                                          **DISCOVERY MATTER**
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.   LEGAL STANDARDS ............................................................................................... 2

III.   ARGUMENT .............................................................................................................. 5

    A.   TN Properly Responded to Interrogatory 13 ....................................................... 6

        1.   Oracle's Actual Request ................................................................................. 6

        2.   Defendants Gave a Specific, Narrative Response to Interrogatory 13 ........ 7

        3.   Defendants Properly Relied on Rule 33(d) ................................................... 7

        4.   Oracle's Characterization of Interrogatory 13 is Cumulative and
            Creates an Undue Burden on Defendants ................................................... 10

    B.   TN Properly Objected and Responded to Interrogatory 14 ............................... 13

        1.   Oracle's Actual Request ............................................................................... 14

        2.   TN Properly Objected and Responded to the Request ............................... 14

        3.   TN Properly Relied on Rule 33(d) .............................................................. 15

            (a)   The first criterion under Rule 33(d) is satisfied because
                Oracle is able to locate the "records to be reviewed" "as
                readily as" TN ............................................................................... 16

            (b)   The second criterion under Rule 33(d) is satisfied because
                the burden is comparable ............................................................. 18

        4.   Interrogatory 14 "Must" Be Limited under Rule 26(b)(2)(C) ................. 20

    C.   Oracle Is Not Entitled to the Declaration It Seeks ............................................. 21

IV.   ORACLE'S REQUEST FOR "DAMAGES-RELATED" DISCOVERY IS MOOT ...... 22

V.   CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*,
  105 F.R.D. 16 (S.D.N.Y. 1984) .................................................................................. 5

*Goodrich Corp. v. Emhart Indus., Inc.*,
  No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25158
  (C.D. Cal. Oct. 12, 2005) ............................................................................... 4, 5, 17

*Petroleum Ins. Agency, Inc. v. Hartford Accident and Indem. Co.*,
  111 F.R.D. 318 (D. Mass. 1983) .................................................................... 4, 5, 19

*Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.*,
  108 F.R.D. 304 (D.P.R. 1985) ................................................................................ 19

*Saddler v. Musicland Pickwick Int'l, Inc.*,
  No. S-78-95-CA, 1980 U.S. Dist. LEXIS 16500 (E.D. Tex. Dec. 22, 1980) ........................ 5, 10

*T.N. Taube Corp. v. Marine Midland Mortgage Corp.*,
  136 F.R.D. 449 (W.D.N.C. 1991) .................................................................. 4, 5, 8, 18

## <u>Statutes</u>

Fed. R. Civ. P. 1 ............................................................................................................. 2

Fed. R. Civ. P. 26 .................................................................................................. *passim*

Fed. R. Civ. P. 30 ...................................................................................... 15, 18, 20

Fed. R. Civ. P. 33 .................................................................................................. *passim*

Fed. R. Civ. P. 56 ......................................................................................................... 23

## <u>Other Authorities</u>

4A Moore's Federal Practice ¶ 33.25 (2d ed. 1990) ............................................. 4, 18

8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2178 ................... 4, 10

8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2008.1 (2d ed. 1994) .................. 3

1    **I.    INTRODUCTION**

2            Oracle USA, Inc., Oracle International Corp. and Oracle EMEA Ltd.'s (collectively

3    "Oracle" or "Plaintiffs") June 30, 2009 Motion to Compel (D.I. 329, "the Motion") seeks an order

4    compelling SAP AG, SAP America and TomorrowNow, Inc. ("TN") (collectively, "Defendants")

5    to: (1) produce documents allegedly related to Oracle's hypothetical license damages theory; and

6    (2) supplement TN's responses to Interrogatories 13 and 14 relating to its  downloading activities

7    and use of environment components.  For the first time in the Motion, Oracle substantially

8    narrowed the documents it seeks that allegedly relate to its hypothetical license damages theory.

9    In response, and while maintaining all objections to the underlying discovery requests,

10   Defendants have agreed to produce data and/or provide information as described in Section IV

11   below, which moots the request for relief contained in pages 7-11 of the Motion and numbered

12   paragraphs 1 and 2 of Oracle's proposed order.  Thus, the focus of this Opposition is the relief

13   requested in pages 12-16 of the Motion and numbered paragraph 3 of Oracle's proposed order,

14   which seeks supplemental responses to Interrogatories 13 and 14.

15           Oracle's request that Defendants further supplement their responses to Interrogatories 13

16   and 14 is another attempt by Oracle to shift a large portion of its trial preparation burden and

17   ultimate burden of proof to Defendants.  Oracle has asserted damages "as much as a billion

18   dollars," yet is unwilling to assume the proportionate burden to evaluate and present what it

19   believes are the facts that would justify the award of such enormous damages.  Instead, Oracle

20   now requests that this Court order Defendants to marshal the evidence in a summary fashion,

21   boiling down Defendants' documents, data and testimony that have already been given to Oracle

22   numerous times, in numerous ways over the past two years.

23           The Motion completely ignores how forthright and fulsome Defendants' discovery

24   responses have been.  Oracle disregards Defendants' current responses to Interrogatories 13 and

25   14, which are complete, detailed and directly on point.  Moreover, Oracle fails to mention that

26   Defendants have already voluntarily assumed enormous expense and burden to provide Oracle

27   with all of the information responsive to Interrogatories 13 and 14, in a manner that is now as

28   equally accessible and reviewable to Oracle as it is to Defendants, including: (1) the best and

most usable sources for the information requested (the SAS database) in exactly the same database format as it existed at TN; (2) virtually unlimited access to all of TN's services servers; (3) an extraordinary number of custodians' data provided in a searchable format with metadata and (4) extremely prepared 30(b)(6) witnesses who have testified regarding numerous download-related and environment-related topics. Oracle has had the majority of this material since late 2007 and has consistently and extensively used the information in the more than 300 deposition hours that it has taken in this case thus far.

To be clear, Oracle is not seeking additional information. Oracle already has in its possession the **exact same** information that Defendants have, from which to derive the detailed supplements it seeks. Instead, Oracle's Motion improperly seeks to compel Defendants to summarize thousands of contemporaneous business records contained in TN databases, which chronicle TN's almost daily activities for hundreds of customers over several years. TN has provided complete and proper answers to Interrogatories 13 and 14 through both narrative responses and reference to Defendants' document production under Rule 33(d) of the Federal Rules of Civil Procedure 33(d) ("Rule 33(d)"). As a result, Oracle is in the same position as Defendants to prepare such detailed summaries, and it bears the burden to do so. Accordingly, this Court should deny Oracle's Motion to Compel.

## II.   **LEGAL STANDARDS**

The parties agree that each party has the right to discover non-privileged information "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Motion at 6. However, the Rules set reasonable limits to this right, including the Court's ability to weigh the benefit of the requested discovery against the cumulative nature of the request and the burden involved in responding.[1]   Additionally, Rule 26(b)(2)(C) specifically describes the analysis that should be conducted to limit the "frequency or extent of discovery" otherwise allowed by the Rules:

---

[1] Moreover, a fundamental underpinning of the Federal Rules of Civil Procedure lies in Rule 1, which states in pertinent part: "[the Rules] should be construed and administered to secure the just, speedy, and ***inexpensive*** determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).

When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).[2]

Rule 33 includes additional burden protection:

Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

The 1970 Advisory Committee Note to Rule 33(d) further explain:

This subdivision gives the party an option to make the records available and place the burden of research on the party who seeks the information. "**This provision, without undermining the liberal scope of interrogatory discovery, places the burden of discovery upon its potential benefitee,**" Louisell, *Modern California Discovery*, 124-125 (1963), and alleviates a problem which in the past has troubled Federal courts. *See* Speck, *The Use of Discovery in United States District Courts*, 60 Yale L.J. 1132, 1142-1144 (1951). The interrogating party is protected against abusive use of this provision through the requirement that the burden of ascertaining the answer be the same for both sides.

Advisory Committee Note to 1970 Amendment to Fed. R. Civ. P. 33 (emphasis added). The 1970 Advisory Committee Note continues that "the respondent unable to invoke this subdivision does not on that account lose the protection available to him under the new Rule [26(b)(2)(C)] against oppressive or unduly burdensome or expensive interrogatories." *Id.*

---

[2] The 2000 Advisory Committee Note explains that a sentence was added to subdivision (b)(1) to call attention to the limitations of subdivision (b)(2)(i), (ii) and (iii). The Note states that "[t]hese limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). **The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated.**" Advisory Committee Note to 2000 Amendment to Fed. R. Civ. P. 26 (emphasis added); *see also* 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2008.1 at 121 (2d ed. 1994).

Rule 33(d) permits a party to produce "business records (including electronically stored information)" in lieu of narrative responses.  Fed. R. Civ. P. 33.  Its primary purpose is to shift the burden of perusing documents to supply answers to discovery requests, from the producing party to the party seeking the information.  *See* 8A *Federal Practice and Procedure* § 2178.  Rule 33(d) may be invoked when: (1) the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"; and (2) "the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).

Once Rule 33(d) is invoked, the propounding party has the burden of demonstrating "that the burden of deriving or ascertaining the answers is not substantially the same for both parties."  *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 453 (W.D.N.C. 1991) (quoting 4A Moore's *Federal Practice* ¶ 33.25 (2d ed. 1990)).  Oracle cannot obtain an order to compel simply because it does not want to endure the cost of compiling the answer it seeks; it is not enough that "plaintiffs want this discovery but do not want to expend the effort and expense in procuring it."  *Petroleum Ins. Agency, Inc. v. Hartford Accident and Indem. Co.,* 111 F.R.D. 318, 320 (D. Mass. 1983) (denying motion to compel further responses to all but one interrogatory).

Assertions made in a "conclusory fashion" do not establish an inequality in burdens.  *See Goodrich Corp. v. Emhart Indus., Inc.,* No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25158, at *13-14 (C.D. Cal. Oct. 12, 2005) (denying "Motion to Compel Substantive Answers to Interrogatories" when moving party failed to demonstrate inequality of burdens).  As the court explained in *Petroleum Ins. Agency*:

> Plaintiffs' expressions of general discontent with having to obtain discovery pursuant to the provisions of Rule 33(c),[3] F.R.Civ.P., however severe the discontent may be, is not a sufficient showing under the law for the Court to deny the defendants the option the rule provides.  While it is true that the defendants are more familiar with their records, there has been no showing that the answers of the defendants delineating the records in which answers can be found and how the records are kept are wanting or that the plaintiffs have had difficulty dealing with defendants' records as they have been identified and described.

---

[3] This quote cites to the former Rule 33(c) which is identical in all pertinent parts to the current Rule 33(d).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION
Case No. 07-CV-1658 PJH (EDL)

1  *Petroleum Ins. Agency,* 111 F.R.D. at 320-21.

2  　　To determine whether Oracle has demonstrated an inequality of burdens, three factors

3  should be weighed: "cost of the necessary research, nature of the relevant records, and

4  Defendant's familiarity with its own records." *T.N. Taube Corp.,* 136 F.R.D. at 454. Further,

5  "mere familiarity with a set of records cannot be dispositive in weighing the comparative burdens

6  upon plaintiff and defendant in eliciting relevant data from those records." *Saddler v. Musicland*

7  *Pickwick Int'l, Inc.*, No. S-78-95-CA, 1980 U.S. Dist. LEXIS 16500, at *3 (E.D. Tex. Dec. 22,

8  1980); *Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44

9  (S.D.N.Y. 1984). "If a disparity in familiarity necessarily created an inequality in the ease of

10  discovery, the procedure provided by Rule 33(c)[4] would rarely, if ever, be utilized." *Saddler*,

11  1980 U.S. Dist. LEXIS, at *3. For that reason, Rule 33 envisions evaluating the relative difficulty

12  in analyzing the records. *See id.* If both parties must complete identical steps to derive the

13  information, the burden is substantially the same. *See id.* Familiarity of the responding party

14  with its own documents is only one factor a court should use to determine if the relative burden is

15  substantially the same. *See Goodrich Corp.,* 2005 U.S. Dist. LEXIS 25158, at *10. The court

16  should also balance the costs of research and the nature of the business records. *See id.*

17  　　As explained below, under the facts of this case, TN has properly responded to

18  Interrogatories 13 and 14 by providing appropriate narrative answers and appropriate references

19  to Rule 33(d). And, even if 33(d) was not available, the information that Defendants have already

20  provided to Oracle in response to Interrogatories 13 and 14 is more than sufficient given the

21  cumulative discovery safeguards and burden balancing protections provided by Rule 26(b)(2)(C).

22  **III.   ARGUMENT**

23  　　Interrogatories 13 and 14 are only two of the 121 interrogatories served on Defendants to

24  date, but they provide excellent examples of the scorched earth, no stone unturned discovery

25  approach that Oracle is taking in this case.[5] *See* Declaration of Joshua L. Fuchs in Support of

26  _____

  [4] *See supra* n.3.

27  　　[5] Oracle's characterization of the facts and the discovery requests at issue contains

28  numerous inaccuracies. The majority of those allegations should not impact the Court's analysis;
  thus, any failure by Defendants to address any specific alleged fact is not intended as a waiver.

Defendants' Opposition to Plaintiffs' Motion to Compel Production of Documents Related to

Damages Model ("Fuchs Decl."), ¶ 2. Defendants have incurred enormous expense and related

burdens associated with responding to Oracle's discovery requests. *See id.* at ¶¶ 3-7. Specifically,

and not even counting the substantial expense Defendants incurred responding to Oracle's written

discovery and preparing for and defending over 300 hours of depositions in this case, Defendants

are on track to spend in excess of $14 million producing custodians' data, TN's databases and

dozens of TN servers via the Data Warehouse facility.[6] Oracle could have propounded focused,

targeted discovery, considerate of the responsive burdens created by such requests. Instead,

Oracle adopted a shot-gun/trot-line discovery strategy, which strategy logically results in the

production of enormous volumes of documents and data. Defendants have produced the

enormous volume of discovery requested by Oracle, and it is now time that Oracle accept the

burden that comes with the discovery approach it has taken in this case.

> **A.      TN Properly Responded to Interrogatory 13.**

Oracle mischaracterizes the information requested in Interrogatory 13. A careful reading

of the interrogatory and Defendants' response demonstrates that Defendants completely answered

it.

> **1.      Oracle's Actual Request.**

Oracle's Interrogatory 13 to TN reads as follows:

> Describe in as much detail as possible all Software and Support Materials that
> 'have been downloaded beyond those that, according to TN's records, related to
> applications licensed to the particular customer on whose behalf the downloads
> were made,' ***as alleged in ¶ 15 of Your Answer***, including but not limited to
> Identifying the 'records' You referenced in making Your determination.

Howard Decl., Ex. A (emphasis added).[7] Oracle now asserts that Interrogatory 13 seeks more

than just a description of the downloads to which Defendants referred in Defendants' Answer to

Plaintiffs' First Amended Complaint, at ¶ 15 ("Answer to FAC").[8] For example, the Motion

---

[6] *See* Fuchs Decl., ¶ 7.

[7] It is worth noting that Oracle did not raise Defendants' response to Interrogatory 13 as one of the nineteen responses that were allegedly objectionable in its first Motion to Compel hearing before Judge Legge on February 13, 2008.

[8] The plaintiffs named in the First Amended Complaint included now former plaintiff Oracle Corporation and current plaintiffs Oracle International Corporation and Oracle USA, Inc.

1  states that Interrogatory 13 also calls for information on "how [TN] got its downloads . . . and

2  how it used them to support specific customers," the identity of those materials that "were

3  downloaded using credentials of a customer not entitled to those materials"[9] and "which materials

4  [TN] improperly downloaded from Customer Connection."  Motion at 13, 16.  That information

5  was not requested in Interrogatory 13.  Instead, variations of those requests are contained in other

6  interrogatories that Oracle has propounded on Defendants and that Defendants have answered in

7  detail.[10]

### 2.    Defendants Gave a Specific, Narrative Response to Interrogatory 13.

9  Defendants appropriately responded to Interrogatory 13 by identifying the information

10  used and citing the specific records relied upon to make the statement in paragraph 15 of the

11  Answer to FAC.  Specifically, Defendants responded in part:

> [TN]'s downloads on behalf of customers using JDE's OneWorld products were
> made based on instructions set forth on a Download Request Form.  The
> Download Request Forms for Merck, OCE, SPX, Metro Machine and Yakazi
> instructed the download team to download all ESUs for all system codes on a
> particular release level.  [TN]'s records did not show that those customers had
> represented that they were licensed to all system codes on a particular release
> level.

16  TN's Response to Oracle Corporation's First Set of Interrogatories to TN, No. 13 (Howard Decl.,

17  Ex. C).

### 3.    Defendants Properly Relied on Rule 33(d).

19  In addition to providing a specific, narrative response to Interrogatory 13, Defendants

20  further responded by referencing, under Rule 33(d), the customer contracts, onboarding

21  documentation and downloaded materials that they relied upon in drafting paragraph 15 of the

---

[9] Plaintiffs attempt to frame the issue as relating to which customers' Customer
Connection password was used to download specific materials; however, Interrogatory 13 does
not ask for this information.  *Compare* Interrogatory 13, Howard Decl., Ex. C, *with* Interrogatory
10, Fuchs Decl., ¶ 17, Ex. E (Interrogatory 10 of Oracle Corp.'s First Set of Interrogatories to
TN).  Moreover, Plaintiffs are well aware that TN's typical procedure was to download materials
for a customer using that customer's Customer Connection ID and password and to store those
downloads in a customer-specific folder.  *See, e.g., id.* (Defendant TN's Fourth Amended and
Supplemental Response to Plaintiff Oracle Corp.'s First Set of Interrogatories to TN, No. 3, 12).
Plaintiffs have had access to all of the download folders on TN's systems, and Defendants have
always acknowledged that there is no known technical way to specifically tie a downloaded item
on TN's systems to a Customer Connection ID and password.

[10] *See* part III.A.4. below for a description of the information provided to Oracle in
response to these other interrogatories.

Answer to FAC.  *See id.*  Defendants directed Oracle to the production of Download Request Forms, which "instructed the download team to download all ESUs for all system codes on a particular release level."  *Id.*  Oracle has demonstrated an ability to locate these forms in Defendants' production, having used these forms as exhibits in various depositions.  *See* Fuchs Decl., ¶ 16, Ex. D (Depo. Exs. 66, 1445, 1469).  Further, in addition to identifying the specific Bates ranges for over 85 Download Request Forms, Defendants also provided Oracle with the file path for a central repository of Download Request Forms in response to Interrogatory 10, which was incorporated by reference into Interrogatory 13.  *See* Fuchs Decl. ¶ 17, Ex. E (Defendant TN's Fourth Amended and Supplemental Response to Plaintiff Oracle Corp.'s First Set of Rogs (Set One), No. 10).  Thus, Oracle cannot truthfully claim that the documents were not identified in "sufficient detail to enable the interrogating party to locate and identify them."  Fed. R. Civ. P. 33(d).

Moreover, due to the nature of the Download Request Forms, the burden of deriving answers from these documents is substantially the same for both sides, because they are user-friendly forms that state the categories and limits of the materials to be downloaded.  *See* Fuchs Decl., ¶ 16, Ex. D (Depo. Exs. 66, 1445, 1469).  Once Defendants invoked Rule 33(d), it became Oracle's burden as the propounding party to demonstrate that the burden was not substantially similar between the parties.  *See T.N. Taube Corp.,* 136 F.R.D. at 453.  Oracle makes no effort at all in its Motion to provide any evidence that demonstrates that the cost to Oracle of the necessary research, nature of the relevant records or Defendants' familiarity with their own records is such that establishes an inequality of burdens.  *See id.* at 454.  Because Defendants either identified the specific forms relied upon or explained where the forms could be located in a central repository, the burden of deriving a further response to Interrogatory 13 is substantially the same between the parties, and Defendants' reliance on Rule 33(d) is appropriate.

To the extent that Interrogatory 13 requests that Defendants actually identify the specific downloads beyond those to which customers told TN they were entitled, Defendants have made clear to Oracle that TN can not provide that level of detail without specific product mapping information from Oracle.  To undertake an analysis to determine which of the downloads are

beyond those to which customers told TN they were entitled, Defendants would need the ability

"to map each of the specific downloads to each of the specific products. . . . Thus, without such

mapping information (provided in a manner that permits an electronic 'download to product'

comparison), it is not possible for TN to evaluate the appropriateness of each download it made

on behalf of its customers."  Howard Decl., Ex. C.  Defendants have requested such mapping

information from Oracle since the outset of this case, and Oracle has refused to produce this

information.  *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs' Second Amended and Supplemental

Responses and Objections to Defendant TN, Inc.'s First Set of Interrogatories, No. 7).  In

response to Defendants' Motion to Compel on this very issue, Oracle's counsel even told Judge

Legge that it would be too burdensome to provide the necessary product information to

Defendants.  *See* Fuchs Decl., ¶ 21, Ex. I (February 13, 2008 Hearing on Discovery Issues, at

32:20-34:20).  Oracle's refusal to provide the product mapping information necessary to

determine the appropriateness of the downloads, coupled with Defendants' production of the

downloaded materials, demonstrates that Oracle actually has the lesser burden in answering its

own question upon which it has the burden of proof.

   Moreover, if Oracle were to provide the requisite "download-to-product" mapping

information necessary to undertake the analysis, then at that point, the cost and related burdens of

the necessary analysis of that information, in conjunction with the information Defendants have

already produced, would be substantially similar between the parties.  Oracle concedes that it is a

"complex and difficult task," yet Oracle ignores that both parties must take identical steps to

derive the information from Defendants' records.  *See* Motion at 15.  Both sides would have to

review the downloaded materials and the onboarding documentation with this specific mapping

analysis in mind.[11]  Oracle's argument that Defendants are more familiar with their own records

is not the determining factor.  *See* Motion at 14.  Instead, "mere familiarity with a set of records

cannot be dispositive in weighing the comparative burdens," and Oracle has not demonstrated, as

---

[11] To the extent that Oracle seeks to broaden its request to include the appropriateness of the downloaded materials beyond those considered in paragraph 15 of the Answer to FAC, an analysis of the DotProject and SAS databases would be necessary, as further described in Part III.A.4. below.

1    required, how the cost of research or nature of the relevant records lead to an inequality of

2    burdens.  *Saddler*, 1980 U.S. Dist. LEXIS 16500, at *3.

3         The ultimate irony in Oracle's attack on Defendants' use of Rule 33(d) in response to

4    Interrogatory 13 is Oracle's reliance on Rule 33(d) in response to an interrogatory Defendants

5    propounded on Oracle requesting information on each item TN customers were entitled to

6    download.  *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs' Second Amended and Supplemental

7    Responses and Objections to Defendant TN, Inc.'s First Set of Interrogatories, No. 7).  Oracle's

8    application of this double-standard is glaringly evident in its response to TN's Interrogatory 7, in

9    which it refuses to create a "compilation, abstract, or summary from business records"—the very

10   act Oracle now seeks to compel Defendants to perform in response to Interrogatory 13.[12]

11        Defendants' Rule 33(d) reliance is proper because: (1) Oracle continues to withhold

12   information necessary to map the downloads to specific products; (2) Oracle is the party in a

13   position to provide the underlying data that must be used to perform any reasonably effective

14   mapping exercise; (3) Oracle has had access for more than a year to all of Defendants' records

15   that would be pertinent to the mapping exercise; (4) Oracle would have to undertake identical

16   steps as Defendants to determine the appropriateness of the downloads and (5) Oracle has

17   demonstrated an equal ability to use and analyze the data from Defendants' records.  This is the

18   quintessential case "where the burden of perusing documents in order to supply answers to

19   discovery requests should be shifted from the producing party to the party seeking the

20   information."  8A *Federal Practice and Procedure* § 2178.

21              **4.      Oracle's Characterization of Interrogatory 13 is Cumulative and**

22                       **Creates an Undue Burden on Defendants.**

23        Under the guiding principles in Rule 26(b)(2)(C), the information that Defendants have

24   provided to Oracle in response to Interrogatory 13 is more than adequate to preclude any

25   additional undue effort and expense by Defendants.  Although Defendants did not specifically

26   object to the actual text of Interrogatory 13—which only called for information related to

27   _____

28   [12] This is just one of many examples of Oracle's reliance on similar objections and on
     Rule 33(d).  For a list of examples, *see* Fuchs Decl. ¶¶ 12, 13, 14, Exs. A, B.

1   Defendants' statement in paragraph 15 of the Answer to FAC—Defendants object to Oracle's

2   overly broad request as it is characterized in the Motion.  Specifically, the information sought, as

3   characterized in the Motion, is unreasonably cumulative or duplicative of numerous other

4   requests propounded by Oracle, which Defendants have properly answered.  Further, Oracle has

5   had ample opportunity to acquire the information it now seeks, and the undue burden and expense

6   of the sought information is outweighed by its likely benefit.  Any of these reasons, by itself,

7   provides a basis under Rule 26(b)(2)(C) for the Court to prevent or limit the excess discovery.

8        Oracle now claims that Interrogatory 13 requests all information on how TN obtained and

9   used downloads, the credentials used for downloading for each customer and what materials TN

10  improperly downloaded.  *See* Motion at 13, 16.  These requests are unreasonably cumulative

11  and/or duplicative of numerous other requests propounded by Oracle and Defendants' extensive

12  document production in response to those requests.  When coupled with Defendants' answers to

13  over twenty other interrogatories related to TN's downloading (about which Oracle is not

14  complaining), Defendants have more than satisfied their discovery burdens with respect to these

15  requests.[13]  Generally, Defendants' other interrogatory responses provide narrative information

16  and document cites on topics that include, but are not limited to, what downloads TN did on

17  behalf of its customers, TN's downloading policies, TN's access to the downloads and knowledge

18  and investigation into the appropriateness of the downloads, TN's use of the downloads, the

19  entities for whom TN has downloaded, TN's storage and maintenance of the downloads, TN's

20  training procedures for the downloads, TN's procedure for completing the downloads, the

21  credentials TN used for the downloads and TN's justification for downloading on behalf of its

22  customers.  *See* Fuchs Decl. ¶¶ 17, 18, 19, Exs. E, F, G.

23       Defendants' business records cited in response to these interrogatories include, but are not

24  limited to, the DotProject database, the SAS database, the actual downloads produced through the

---

[13] *See, e.g.,* Fuchs Decl. ¶¶ 17, 18, 19, Exs. E, F, G (Defendant TN, Inc.'s Second Amended and Supplemental Responses to Plaintiff Oracle Corp.'s Third Set of Rogs and SAP America and SAP AG's Second Amended and Supplemental Responses to Plaintiff Oracle Corp.'s Second Set of Rogs, Nos. 8, 10; Defendant TN's Fourth Amended and Supplemental Response to Plaintiff Oracle USA's First Set of Rogs (Set One), No. 2; Defendant TN's Fourth Amended and Supplemental Response to Plaintiff Oracle Corp.'s First Set of Rogs (Set One), Nos. 3, 7, 8, 9, 10, 11, 16).

Data Warehouse and onboarding documentation.[14] Oracle has demonstrated an ability to locate and use the information contained in these sources. *See* Fuchs Decl., ¶¶ 3, 4, 5, 6, 8, 15, Ex. C.[15] And Oracle has had access to many of these records, including the downloaded materials, for well over a year, which is more than ample time for Oracle to have compiled and summarized the information it seeks related to the appropriateness of the downloads. *See id.* ¶¶ 3, 5, 6.

Further, the undue burden and expense of the information Oracle now seeks outweighs its likely benefit. Oracle has completely failed to adequately explain how the information it requests justifies the extraordinary expense of mapping millions of downloads to specific products.[16] Oracle has not explained why that level of detail is needed. Conversely, Oracle has all the information it needs to undertake this analysis and assume the burden itself should it deem it necessary to prosecute its claims.

In sum, Defendants thoroughly and completely answered Oracle's request in Interrogatory 13 for information regarding the statement in paragraph 15 of the Answer to FAC. Oracle now mischaracterizes the information sought in Interrogatory 13 in an attempt to broaden the scope of the request, claiming that the interrogatory seeks the "materials [TN] improperly downloaded," among other topics. Motion at 13. Defendants' reliance on Rule 33(d) is entirely justified under these circumstances, as Oracle itself holds the key to the product mapping information that Oracle deems necessary. Further, the limitations imposed by Rule 26(b)(2)(C) dictate that the information Oracle now seeks is unreasonably cumulative and duplicative of other interrogatory requests propounded by Oracle. Moreover, Oracle has totally failed to demonstrate that the likely

---

[14] Defendants did not specifically cite to all of these sources in response to Interrogatory 13 because the actual interrogatory is more narrowly tailored than Oracle now describes, as explained in Part III.A.1 above. However, Defendants did rely on these sources in response to other interrogatory requests that more closely resemble what Oracle is requesting in its Motion. *See* Part III.A.4 below.

[15] If Oracle is permitted to broaden its requests as described in its Motion, citing these records in response to Rule 33(d) would be appropriate. Both sides would need to take the same steps to derive the information from Defendants' records, including review of the DotProject database, the SAS database, the downloaded materials produced in the Data Warehouse and the onboarding documentation. Plaintiffs have demonstrated an intimate familiarity with these records.

[16] In total, there are over 5 terabytes of downloaded materials to evaluate, and to extract the relevant information for each of the data sources would easily take thousands of man hours. *See* Fuchs Decl., ¶ 3.

1  benefit from the information now sought outweighs the burden and expense to compile,

2  summarize and abstract data produced by Defendants that Oracle, as the party with the burden of

3  proof, is equally capable of doing itself.

4  **B.    TN Properly Objected and Responded to Interrogatory 14.**

5      Interrogatory 14 essentially asks TN to summarize daily customer support activities from

6  early 2002 to April 30, 2008.  *See* Howard Decl., Ex. D.  Because it is humanly impossible for

7  anyone to remember day-in and day-out activity over a number of years, TN used a database,

8  referred to as SAS, to track the exact type of information Oracle is requesting.  As Oracle is well

9  aware, Defendants have stressed the importance of this database from the very beginning of this

10  case and started providing it to Oracle in the exact form used at TN as one of the very first

11  productions in the case.[17]  Defendants also provided to Oracle (early in discovery) all other user-

12  friendly databases that TN maintained to track any information regarding environment

13  components.  *See* Fuchs Decl., ¶¶ 3-6.  Again, Oracle does not seek new information regarding

14  TN's use of the environments.  What Oracle wants this Court to do is to relieve Oracle of its

15  burden[18] to analyze the documents, testimony and data Defendants have made available,

16  regardless of the fact that the burden of conducting that analysis is substantially equal.  In

17  essence, even though Oracle has the ultimate burden of proof on its claims, Oracle wishes to

18  forego the expense and effort of extracting the information it requests and would rather that

19  Defendants be required to do it for Oracle.

---

20  [17] Defendants produced the entire SAS database with respect to the six customers
21  identified in paragraphs 76-80 of Oracle's First Amended Complaint on September 21, 2007.
   Defendants produced the entire SAS database with respect to 69 additional customers identified
22  by Oracle on October 5 and November 9, 2007.  Finally, Defendants produced the entire SAS
   database containing ALL of TN's PeopleSoft and J.D. Edwards' customers on December 4, 2007.
23  As part of the parties' expanded discovery timeline agreement, on February 13, 2009, Defendants
   further updated the SAS production to include activity through October 31, 2008.  *See* Fuchs
24  Decl., ¶ 5.

   [18] Oracle incorrectly states that Defendants have refused and are unwilling to agree to fact
25  stipulations.  *See* Motion at 13, 15.  Defendants have attempted to negotiate an acceptable
   stipulation and are willing to continue to negotiate towards a possible stipulation.  It is true that
26  Defendants have not accepted any of Oracle's proposed draft stipulations, and it is also true that
   there are several major issues that must be resolved before Defendants would ever agree to a fact
27  stipulation.  However, Defendants have never indicated to Oracle that they have refused or are
   otherwise unwilling to continue to negotiate in an effort to attempt to reach an agreement to some
28  form of fact stipulation.

1          **1.      Oracle's Actual Request.**

2          Oracle attempts to broaden its already overly-broad request. Oracle repeatedly cites to

3   Catherine Hyde as the former TN employee who is able to provide additional information about

4   the "source" of environments, while ignoring that Interrogatory 14 does not request the source of

5   environments. *See* Motion at 14:18-22, 15:5-10.[19]  What Interrogatory 14 actually requests is a

6   chronicling of the daily use of the TN customer environments and/or environment components

7   (collectively referred to as "TN customer environments"). The request specifically states:

8          For each local environment Identified in Your responses to Interrogatories 12 and
           13, Identify all Customers who received support based on the Use of that
9          environment, and a detailed description of that support (such as, for example, the
           retrofit tax updates testified to by Shelley Nelson (Shelley Nelson Dep. at 32:19-
10         34:13 (Oct. 30, 2007)) including, where applicable, Identification of the name,
           number, version or other Identifying information of the product provided as part
11         of the support.

12  Howard Decl., Ex. D. The request asks for: (1) a list of all customers who received support based

13  on the use of environments, (2) a detailed description of that support and (3) the fix (product) that

14  came from the support. The "source" of the TN customer environments is not sought anywhere

15  in the request.

16         **2.      TN Properly Objected and Responded to the Request.**

17         TN originally responded to the request on December 27, 2007 and objected that the

18  request is "cumulative, compound, unduly burdensome and oppressive to the extent it seeks to

19  require TN to attempt to evaluate millions of pages of documents and data relating to customer

20  support that have been created over several years." *See* Howard Decl., Ex. D. Subject to those

21  objections, TN provided the following narrative response:

22         Generally, to the extent a particular entity is or was a [TN] customer, and when
           [TN] maintains an environment on that customer's behalf, [TN] provided or
23         provides support to that customer utilizing that environment. For updates and/or
           fixes to Peoplesoft and JDE products, [TN] has generally used the customer's
24         environment(s) (whether maintained by [TN] or the customer) to create or test the
           updates and/or fixes. [TN] is aware of certain instances where an environment

25
    _____
26         [19] *See* Catherine Hyde's Declaration for a description of how she studied SAS and
    BakTrak to provide that testimony referenced and for her statement that she believes that her
27  knowledge has been exhausted on the source subject. *See* Declaration of Catherine Hyde ("Hyde
    Decl."), ¶ 6. Information relating to the "source" of an environment can be located in the
    spreadsheets prepared and the data referenced in responses to Interrogatory Nos. 12 and 13 from
28  Oracle USA, Inc.'s Second Set of Interrogatories to TN. *See* Fuchs Decl. ¶ 20, Ex. H.

1    maintained on behalf of one customer may have been used to create or test
     updates and/or fixes for other customers.  *See, e.g.*, Tr. of October 30, 2007
2    Deposition of Mark Kreutz, at 197:8-199:25; Tr. of October 30, 2007 Deposition
     of Shelley Nelson at 32:19-41:17, 53:13-55:7; Dec. 6, 2007 Deposition of Shelley
3    Nelson at 126:4-139:3, 145:1-14, 160:16-161:5, 185:3-16, 195:24-196:20.

4    Howard Decl., Ex. D.  TN further responded by relying on Rule 33(d) and pointing Oracle

5    directly to the SAS database.  *See id.*

6         TN supplemented its response on May 22, 2009 to provide updated Rule 33(d) cites to the

7    SAS database and to further raise as an issue the cumulative and burdensome nature of the

8    request by directing Oracle to the January 22, 2008 Rule 30(b)(6) Notice on the exact same topic

9    and to all of the depositions Oracle has taken to date on the topic.  *See id*; *see also* Fuchs Decl.,

10   ¶ 22, Ex. J (Amended Rule 30(b)(6) Notice on the TN customer environment topic).

11        **3.        TN Properly Relied on Rule 33(d).**

12        The SAS database is the most complete and organized record that TN has relating to its

13   customer support and how TN used TN customer environments in providing that support.  *See*

14   Hyde Decl., ¶¶ 2, 4.  TN provided the entire SAS database to Oracle well over 19 months ago in

15   exactly the same form it was used at TN.  *See* Fuchs Decl., ¶¶ 4, 5; Hyde Decl., ¶ 5.  Oracle is

16   able to search, organize and see the data in the same way a former TN employee could, and

17   Oracle has demonstrated that it has that ability in the more than 300-plus hours of deposition

18   testimony it has taken to date.[20]  Given that Oracle has demonstrated an ability to use SAS in the

19   same way as a former TN employee, the burden of extracting the relevant data is substantially the

20   same for both parties.

21

22

23

24   ────────────────
     [20] Defendants' production of SAS is vastly different from Oracle's attempt to produce and
25   point Defendants to 2 terabytes of data from its Customer Connection website.  While Defendants
     took on the burden of providing SAS with the same usability as it had at TN, Oracle provided the
26   Customer Connection data to Defendants in raw form without the interface it actually uses to
     view the data.  Despite the lack of usability, Oracle has consistently pointed Defendants to the
27   Customer Connection data pursuant to Rule 33(d).  *See* Fuchs Decl., ¶ 13, Ex. A (Plaintiffs'
     Second Amended and Supplemental Responses and Objections to Defendant TN, Inc.'s First Set
28   of Interrogatories, No. 7 – the cite to ORCL00313462-3 and ORCL0485842 is the 2 terabytes of
     raw data).

**(a)** **The first criterion under Rule 33(d) is satisfied because Oracle is able to locate the "records to be reviewed" "as readily as" TN.**

TN specifically identified the SAS database in response to Interrogatory 14. *See* Howard Decl., Ex. D. While the SAS database has substantial content, it is user friendly. Catherine Hyde's declaration states that "[t]he database has a self-contained index and is fully searchable. The data can be sorted and reviewed in a number of different ways including, but not limited to, by customer, fix, case, and product line. All of the different ways to view the data can be determined by the index." *See* Hyde Decl., ¶ 4.

TN produced SAS in the same form and with the same functionality as it had while used at TN. *See* Fuchs Decl., ¶ 4.[21] When Oracle first raised this issue with Judge Legge in January 2008,[22] Defendants provided Judge Legge with a demonstration of the SAS database as produced to Oracle.[23] *See* Fuchs Decl., ¶ 10. In response to that demonstration, Judge Legge recommended that

> …defendants be compelled to send, at their expense, an appropriate engineer, together with an attorney if defendants desire, to the offices of Oracle to meet with Oracle's engineers about how to access the database. The purpose of the meeting is <u>not</u> to discuss the information, or to state contentions with respect to it, but is simply to assist Oracle to <u>find</u> the information in the database which has been provided.

Howard Decl., Ex. E (emphasis in original). Likely due to the SAS database's ease of use, Oracle never sought Defendants' engineers' assistance under Judge Legge's recommendation, although Defendants were and remain willing to provide the assistance Judge Legge recommended. Since the time of Judge Legge's recommendation, Oracle has clearly demonstrated an ability to access and locate material in SAS by using 109 printouts from the SAS database as deposition exhibits. *See* Fuchs Decl., ¶ 8; *see also* Hyde Decl., ¶ 5.

---

[21] TN could have attempted to produce the data from SAS in a number of different ways, including providing it in static .tiff form, but instead TN chose to recreate the database and produce it in its dynamic native form to make it the most useable for the Plaintiffs.

[22] Oracle's original motion in front of Judge Legge included Interrogatory 14.

[23] Defendants will be prepared to provide the Court with a similar demonstration at the August 4 hearing on the Motion.

In this case, although it will no doubt require effort for Oracle to locate the answers in the SAS database, it would be no easier for TN to do so, especially in light of the TN wind down.[24] *See* Hyde Decl., ¶¶ 4, 5, 7. Numerous witnesses have made it clear that SAS is the best record of the activity requested and that the witness would need to reference SAS to have the necessary information.[25] TN has identified a specific, organized, searchable database that contains the information Oracle seeks in a manner that provides Oracle the ability to electronically index, sort and analyze that information. *See* Fuchs Decl., ¶¶ 4, 5, 9 (screenshot exemplar showing information contained in SAS). What Oracle wants is for TN to do that indexing, sorting and analysis for it. Rule 33(d) is specifically designed to permit a responding party to shift the burden back to the requesting party in this situation. Ultimately, the overbreadth of Oracle's interrogatories has required and warranted a reference to TN's best database on the issue. *See Goodrich Corp. v. Emhart Indus., Inc.,* 2005 U.S. Dist. LEXIS 25158 (C.D. Cal. Oct. 12, 2005) (denying motion to compel further supplementation of responses made in reliance upon 33(d) when propounding party failed to establish that responding party had withheld documents that might more "clearly identify" answers it sought).

---

[24] As Plaintiffs point out, TN was wound down on October 31, 2008. And, with the exception of a few consultants who occasionally help with locating and understanding information, Defendants' counsel has limited to no access to TN's former employees. *See* Fuchs Decl., ¶ 11. Oracle argues that if the TN wind down somehow complicates TN's ability to provide the information Oracle seeks, then that is a problem of TN's own making. *See* Motion at 15-16. However, the wind down was publicly announced on July 21, 2008, and Oracle could have moved to compel the information it now seeks at a time when many of the relevant TN employees were still employed by TN.

[25] *See e.g.,* Fuchs Decl., ¶ 15, Ex. C (February 6, 2008 Deposition of John Baugh, 70:17-71:11 (testifying that the only way to determine how local environments were created is to consult e-mails and the SAS database); 73:16-74:3 (same); February 7, 2008 Deposition of John Baugh, 155:21-156:14 (testifying that would review SAS records to determine how environment was used); April 1, 2008 Deposition of Katherine Walker Williams, 53:15-55:8 (testimony that would need to refer to SAS to obtain more information about environment), 62:20-63:16 (testimony that uncertain how certain environments were used), 77:16-78:9 (testimony that would review SAS database to obtain more information about environment); April 1, 2008 Deposition of Catherine Lee Hyde, 47:7-12 (testifying that would need to refer to SAS to obtain more information about environment); April 2, 2008 Deposition of Catherine Lee Hyde, 85:25-86:4 (testifying that would need to refer to SAS and BakTrak to obtain more information about environment), 130:19-132:3 (testifying that would need to refer to SAS to obtain more information about environment)).

**(b)** **The second criterion under Rule 33(d) is satisfied because the burden is comparable.**

Business records may be produced when the "burden of deriving or ascertaining the [interrogatory] answer" from them is "substantially the same" for both parties.  Fed. R. Civ. P. 33(d).  The *propounding* party must demonstrate "that the burden of deriving or ascertaining the answers is not substantially the same for both parties."  *T.N. Taube Corp.,* 136 F.R.D. at 453 (quoting 4A Moore's *Federal Practice* par. 33.25 (2d ed. 1990)).  Oracle has not met its burden.

Indeed, Oracle has demonstrated, in its almost 32 hours of Rule 30(b)(6) deposition testimony on a Rule 30(b)(6) Notice that included this very topic, that it has an equal ability to access and locate the requested data in SAS.[26]  Oracle has also demonstrated this ability in the 300-plus other depositions hours it has taken to date.[27]  The majority of the deposition cites

---

[26] In Oracle's January 22, 2008 Rule 30(b)(6) Notice, Oracle requested deposition testimony on TN's "creation and [u]se of Customer Local Environments, including without limitation: … (b) The manner and method by which Customer Local Environments were created, stored and Used by You; . . . . (d) The total number of Customer Local Environments created for each identified Customer; (e) The name, release, and version of all PSFT or JDE branded Software obtained and/or copied to create each identified Customer Local Environment; (f) The identity and description of all Customer Local Environments maintained in any way by You relating to Customers for whom You had ceased to provide support services; (g) The identity and description of all Customer Local Environments Used by You in any way to support any Customer other than the one that provided the Software Used to create the Customer Local Environment; . . . [and] (l) The process by which Customer Local Environments were Used as part of the ordinary course of business for SAP TN, including without limitation to on-boarding of new Customers; support of Customer cases, issues, and problems; reactive and proactive development of bug fixes, updates, patches, explanations, or regulatory changes for Customers; research into and design of those changes; troubleshooting for Customers; and testing of other operating systems levels. . . ."  *See* Fuchs Decl., ¶¶ 8, 22, Ex. J.

[27] *See e.g.,* Fuchs Decl., ¶¶ 2, 15, 16, Ex. C, D (April 1, 2008 Deposition of Katherine Walker Williams, 179:19-182:18 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 83); April 2, 2008 Deposition of Catherine Lee Hyde, 284:15-286:10 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 103); June 25, 2008 Deposition of Larry Garcia, 12:5-10 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 302); 19:17-20:3 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 287); June 25, 2008 Deposition of Roderic Russell, 31:19-32:21 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 287), 47:25-49:19 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 290), 61:19-63:13 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 293), 91:18-92:2 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 299), 116:1-18 (testifying regarding use of environments as set forth in SAS record, Plaintiffs' Exhibit 300); December 5, 2008 Deposition of Matthew Bowden, 158:14-160:15 (confirming written statements in SAS record, Plaintiffs' Exhibit 538); 227:14-22 (testifying regarding use of environment as set forth in SAS record, Plaintiffs' Exhibit 289); 249:5-250:2 (testifying regarding use of environment as set forth in Data Warehouse record, Plaintiffs' Exhibit 558), 279:7-280:2 (testifying regarding use of environments as set forth in SAS record, Exhibit

1  included in footnote 27 establish that the witness is doing little more than confirming what is

2  included in SAS.  *See* Hyde Decl., ¶ 5 (stating that "a substantial portion of those questions

3  involved simply asking me to confirm the information in the SAS database printouts").

4         While it is true that it will be burdensome to extract the information Oracle seeks out of

5  SAS, the burden and cost is substantially equal for both sides.  Oracle has demonstrated and

6  cannot ignore, that once minimal training on the use of SAS is obtained and the information

7  requested is provided, it takes no special expertise to locate and extract the sought-after material.

8  *See* Hyde Decl., ¶¶ 4-5.  The cost and burden, although significant, is simply the time required to

9  review the data in SAS.

10        Oracle's argument that TN former employees are more familiar with SAS misses the point

11  and misstates Oracle's competency (and frequency) in using and compiling the information from

12  that database for over a year.  Contrary to Oracle's suggestion, whether TN is more familiar with

13  its business records than Oracle is not dispositive of whether TN should carry Oracle's burden of

14  building Oracle's own case.  Indeed, it is difficult to image an instance in which the responding

15  party would not be more familiar with its business records than the propounding party.  If a

16  propounding party only had to show that the producing party was more familiar with the records

17  than the receiving party, Rule 33(d) would lose almost all efficacy.  *Cf. Puerto Rico Aqueduct &*

18  *Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 308-09 (D.P.R. 1985) (noting that responding

19  party's greater familiarity is inevitable and focusing on feasibility of deriving answers from

20  business records).  Accordingly, former TN employees' familiarity with TN's historic records is

21  not and should not be dispositive.  *See, e.g., Petroleum Ins. Agency,* 111 F.R.D. at 320-21

22  (denying plaintiff's motion to compel further responses to all but one interrogatory despite the

23  fact "it is true that the defendants are more familiar with their records").  In fact, Oracle's counsel

24

25  (continued...)

26  566); February 5, 2009 Deposition of Roderic Russell, 143:4-145:25 (no independent memory of
    fix documented in SAS record, Plaintiffs' Exhibits 816 and 817); May 12, 2009 Deposition of

27  Catherine Hyde, 125:17-126:25 (testifying regarding written statements in SAS record, Plaintiffs'
    Exhibit 1276), 132:3-132:19 (testifying regarding use of environment as documented in SAS

28  record, Plaintiffs' Exhibit 1277), 157:2-159:8 (testifying regarding use of environment as
    documented in SAS record, Plaintiffs' Exhibit 1283)).

1    and experts have now spent over a year becoming more familiar with TN's business records than

2    most TN former employees currently are.

3                 **4.**       **Interrogatory 14 "Must" Be Limited under Rule 26(b)(2)(C).**

4            Under Rule 26(b)(2)(C), the Court "must" limit the frequency or extent of discovery if it

5    determines that the discovery is: (1) unreasonably cumulative or duplicative, (2) can be obtained

6    from other sources that are more convenient, (3) the party seeking discovery has had ample

7    opportunity to obtain the information by discovery in the action or (4) the burden or expense of

8    the proposed discovery outweighs the likely benefit.  *See* Fed. R. Civ. P. 26(b)(2)(C).  Although

9    Rule 26(b)(2)(C) provides four alternative grounds under which this Court must limit Oracle's

10    request, under the facts in this case, there is substantial evidence supporting all four grounds.

11           As discussed above, Interrogatory 14 is unreasonably cumulative or duplicative of

12    Defendants' document production, 30-plus hours of Rule 30(b)(6) testimony on the topic and

13    numerous other hours of individual testimony on this topic.  Defendants have already gone to

14    great expense and burden to provide Oracle with the information TN possesses on the topic.[28]

15    Further, as stated above, the data TN has on the topic has already been provided in the most

16    convenient source, which is SAS.  What Oracle is really asking is that Defendants be required to

17    incur the burden and expense of summarizing certain data points that exist in SAS and that Oracle

18    believes are relevant to its claims.  There is no legal basis whatsoever to justify the burden

19    shifting that Oracle improperly seeks.

20           Oracle has had the majority of SAS for over 19 months and should have been evaluating

21    and summarizing what it believes is the relevant information during that time.  By now, Oracle

22    should be able to substantially narrow its requests to only those specific information items, if any,

23    that are not ascertainable from the documents, data or testimony Defendants have already

24    provided.  Oracle has failed to make any attempt to narrow its requests and continues with its

25

26

27

28

---

[28] As the Court is already aware, Defendants are on pace to spend in excess of $13 million on the custodian production alone.  Defendants have also incurred over a quarter of a million dollars producing the SAS databases, and in excess of half a million dollars in providing native images of all of TN's support services servers for the products at issue.  *See* Fuchs Decl., ¶ 7.

1    scorched earth discovery approach.  Instead of narrowing its requests, Oracle now reads its

2    requests more broadly than ever.[29]

3        The burden on Defendants of attempting to provide a narrative response to Interrogatory

4    14 greatly outweighs the benefit to Plaintiffs.  It will take thousands of hours to try to extract,

5    compile and summarize the requested information from SAS.  *See* Hyde Decl., ¶ 7.  It took

6    Defendants approximately 1,000 hours to review SAS for potentially privileged content.  *See*

7    Fuchs Decl., ¶ 7.  It would take numerous multiples of that time to extract and chart the data

8    Oracle is requesting.  As described above, Oracle has an equal ability to take on that burden.

9    Oracle has the ultimate burden of proof on its claims and should be required to assume the effort

10   associated with that burden.

11       For any one of the reasons stated above, both Rule 33(d) and Rule 26(b)(2)(C) provide a

12   separate and sufficient basis for this Court to deny the relief Oracle seeks and instead require

13   Oracle to assume whatever burden it believes is appropriate to extract, compile and summarize

14   the information it seeks.

15       **C.    Oracle Is Not Entitled to the Declaration It Seeks.**

16       Oracle is well aware of Defendants' efforts to preserve data in this case.  Starting with the

17   Rule 26(f) conference and continuing through numerous negotiations regarding a potential

18   preservation order, Defendants have provided Oracle with great detail regarding TN's efforts to

19   make a preservation copy of every TN computer and server, including the computers, servers and

20   databases at issue in this motion.  *See* Fuchs Decl., ¶ 11.  TN also made reasonable efforts to

21   collect and preserve every original TN computer and server as part of the TN wind down.  *See id.*

22   Oracle is further aware that TN entered into consulting agreements with seven former TN

23   employees to help locate and provide information on an as needed basis.  *See id.*  Those

24   consultants, however, are not always accessible and are not in any way prevented from seeking

25

26

27       [29] During a June 6, 2009 meet and confer conference call, Defendants specifically
     requested that Oracle provide a proposal on a form of response that would not require Defendants
     to do a fix-by-fix answer on how each TN customer environment was used.  Oracle refused to
28   entertain the request.

other employment.  *See id.*; *see also* Hyde Decl., ¶ 7.  In fact, most of these consultants are

currently employed on a full-time basis by other employers.  *See* Fuchs Decl., ¶ 11.

To the extent that Oracle seeks additional information regarding Defendants' counsel's

efforts, that would likely invade the attorney-client privilege and/or the attorney work product

immunity provided in Rule 26(b)(3)(A) and thus, Defendants object to that request on these bases.

## IV.     ORACLE'S REQUEST FOR "DAMAGES-RELATED" DISCOVERY IS MOOT.

Oracle's Motion to Compel is moot by agreement of the parties because Defendants have

agreed to produce documents or information that satisfy Oracle's substantially narrowed requests.

Specifically, Oracle moved to compel production of "certain documents responsive to Requests

for Production 21-23 and 27 from Oracle's Second Set of Requests for Production of Documents

and subpart (l) of Oracle's First Targeted Search Request" claiming that such discovery is

relevant to a hypothetical license between the parties and Defendants' forthcoming summary

judgment motion regarding Oracle's hypothetical license damages theory.  *See* Motion at 1, 3-4,

7-11.  In particular, Oracle requested that the Court compel production of the following:

1. ". . .documents sufficient to show (a) the existence, scope, and terms of any licenses with independent (non-affiliated, non-partner) software support service providers for SAP-branded software applications or any licenses Defendants deem comparable to the type of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants; (b) Defendants' intellectual property and intangible asset valuations resulting from SAP's acquisitions of Business Objects, MaXware, and OutlookSoft Corporation; and (c) the license or valuation documents for any acquisitions that Defendants contend are a more appropriate benchmark."

2. ". . .documents sufficient to show SAP's application sales close rate and support renewal rate over the relevant period."

*See* [Proposed] Order Granting Plaintiffs' Motion to Compel Production of Documents Related to

Damages Model and Interrogatory Responses Related to Use of Plaintiffs' Intellectual Property,

¶¶ 1-2.

Oracle's Motion, for the first time, substantially narrowed the requested damages-related

discovery Oracle contends it needs in anticipation of Defendants' motion for summary judgment.

Prior to filing the Motion, including in meet and confer communications with opposing counsel,

Oracle had sought much broader discovery on this topic, claiming to need all documents

responsive to the above-referenced discovery requests.  This included: all documents relating to

1   agreements between SAP and any non-partner that provides third party support of SAP software,

2   all documents relating to SAP's valuation of the IP of any company it has acquired, including

3   Business Objects, all documents related to the allocation of the purchase price for Business

4   Objects and all documents related to SAP's historic applications sales close rates and service

5   contract renewal rates.  Defendants made various objections to these requests, including

6   overbreadth, undue burden and relevance, and continue to stand on these objections.

7        Although Defendants continue to believe that such documents are not relevant to any

8   aspect of the case, including their upcoming summary judgment motion, and maintain all

9   objections to the underlying discovery requests noted above, in the interest of a compromise and

10  to avoid an unnecessary Rule 56(f) motion, Defendants agreed to produce non-privileged

11  documents sufficient to show the information sought in the more limited requests above, to the

12  extent that such documents exist.  Defendants informed Oracle of this agreement on July 13, 2009,

13  and Oracle confirmed that this mooted that portion of the Motion seeking "damages-related"

14  discovery.  *See* Fuchs Decl., ¶ 23, Ex. K.

15  **V.**    **CONCLUSION**

16       Defendants' agreement (as memorialized in their counsel's July 13 e-mail to Oracle's

17  counsel) to produce certain data and provide certain information in response to the substantially

18  limited relief Oracle seeks in pages 7-11 of the Motion and numbered paragraphs 1 and 2 of

19  Oracle's proposed order moots that request for relief.  There is no reason to compel Defendants to

20  produce data or information they have voluntarily agreed to produce.

21       As for the relief requested in pages 12-16 of the Motion and numbered paragraph 3 of

22  Oracle's proposed order, which seeks supplemental responses to Interrogatories 13 and 14,

23  Defendants have already produced more than sufficient documents, data and testimony in

24  satisfaction of those requests.  To the extent that Oracle seeks a guide of information related to

25  the topics covered by Interrogatories 13 and 14, then it, as the party with the ultimate burden of

26  proof on its claims, should assume all costs and related burdens of extracting, compiling and

27  summarizing the documents, data and testimony Defendants have already provided.

28

1    Defendants respectfully request that this Court deny the Motion in its entirety.

2    Dated:  July 14, 2009                              JONES DAY

3

4                                                       By:   /s/  Joshua L. Fuchs
                                                             Joshua L. Fuchs
5
                                                        Counsel for Defendants
6                                                       SAP AG, SAP AMERICA, INC., and
                                                        TOMORROWNOW, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT Q

# JONES DAY

717 TEXAS · SUITE 3300 · HOUSTON, TEXAS 77002-2712

TELEPHONE: (832) 239-3939 · FACSIMILE: (832) 239-3600

Direct Number:  (832) 239-3721
swcowan@jonesday.com

JP002780:dkk                         November 6, 2009
530198-645001

Mr. Zachary J. Alinder                        VIA EMAIL AND FIRST CLASS MAIL
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

>            Re:    Case No. 07-CV-1658; Oracle Corporation, et al. v. SAP AG, et al;
>                   U. S. District Court, Northern District of California, Oakland Division

Dear Zac:

This letter responds to your October 13, 2009 letter regarding Defendants' supplemental response to Interrogatory No. 13.

Plaintiffs have admitted that: (1) they have no mapping system to map each file downloaded by TomorrowNow to the specific licensed product(s) to which those downloads relate; and (2) to the extent a specific download can be linked to a specific licensed product, it must be done manually, on a download by download basis. *See* February 13, 2008 Hearing on Discovery Issues, at 30:15-34:20, especially 34:10-34:20:

>     10      JUDGE LEGGE: You are telling me you do not have
>     11      a present mapping system.
>     12      MR. HOWARD:  Right.
>     13      JUDGE LEGGE:  But if you were to answer – I'm
>     14      putting words in your mouth; please tell me if I'm
>     15      wrong – if you were to give them what they want, you
>     16      would have to go through each one of the subfiles one by
>     17      one, to produce the code connection or something.  Is that
>     18      right?
>     19      MR. HOWARD:  Yes, and indeed that's what we did
>     20      to file the complaint.

Moreover, Plaintiffs have admitted that conducting a manual file by file analysis is an extremely burdensome process. *See* August 4, 2009 Hearing on Plaintiffs' Motion to Compel, at 33:20-22 (when referring to Defendants' complaint that there is no mapping system to map each

HUI-120535v1

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · DUBAI · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MEXICO CITY · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS
PITTSBURGH · SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

JONES DAY

Mr. Zachary J. Alinder
November 6, 2009
Page 2

file downloaded by TomorrowNow to the specific licensed product(s) to which those downloads relate, Mr. Howard told Judge Laporte that "I think the complaint is that there isn't an easy way to do it. I'm sorry, but it's true. There is not an easy way to do that."); *see also* February 13, 2008 Hearing on Discovery Issues, at 29:2-3 (where Mr. Howard described the manual file by file review process as a very "laborious process [that] took months to do" before Plaintiffs filed their complaint in this case). And, as you note in your October 13th letter, TN's supplemental response to Interrogatory 13 provides the factual information regarding the manual download by download analysis Defendants' conducted prior to filing their initial answer in this case and that forms the factual basis of that answer.

Your October 13th letter ignores the basis for Defendants' objections regarding Plaintiffs' attempt to compel Defendants to conduct a download by download analysis of each of the millions of downloads located on TomorrowNow's computers. *See* Defendants' July 14, 2009 Opposition to Plaintiffs' Motion to Compel Production of Documents Related to Damages Model and Interrogatory Responses Related to Use of Plaintiffs' Intellectual Property at 1:15-17 ("Oracle's request that Defendants further supplement their responses to Interrogatories 13 and 14 is another attempt by Oracle to shift a large portion of its trial preparation burden and ultimate burden of proof to Defendants."). Defendants objected to Plaintiffs' requests and responded to Plaintiffs' related motion to compel on numerous grounds, including burden, and Defendants also relied on Rule 33(d) to respond to Plaintiffs' requests. *Id.* at 8:25-10:20. When Judge Laporte largely denied Plaintiffs' motion to compel, she sustained Defendants' burden objections and held that Defendants reliance on Rule 33(d) in this context is proper, thereby: (a) agreeing with Defendants that the burden for Plaintiffs to do a download by download analysis is substantially similar to Defendants' burden to do so; and (b) refusing Plaintiffs' motion to compel Defendants to do that analysis. *See* August 4, 2009 Hearing on Plaintiffs' Motion to Compel, at 33:5-7 (when referring to the burdens associated with manually linking each specific download to a specific licensed product, Judge Laporte noted that "It's very, very burdensome and it's an equal burden for both, which is a legitimate argument under Rule 33."). The narrow relief that Judge Laporte granted with respect to Interrogatory 13 is specifically addressed in her order. *See* August 31, 2009 Court's Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel, at 2:6-28. Defendants have complied with that order and we do not read your October 13, 2009 letter as indicating otherwise.

Your October 13th letter inaccurately states that Defendants have not tried to obtain deposition testimony on this issue. Defendants requested Rule 30(b)(6) testimony on customer licenses and Customer Connection Terms of Use months ago. In response, Oracle refused to produce a witness. Not until the week of October 12 (*i.e.*, the week you sent your October 13, 2009 letter to which this letter responds) did Oracle finally agree that it would produce a corporate witness in response to that notice. Moreover, on October 23, 2009 we requested additional information from Oracle regarding certain of the witnesses it has disclosed as knowledgeable on "technical analysis," "copyrights" and "software development." Plaintiffs'

JONES DAY

Mr. Zachary J. Alinder
November 6, 2009
Page 3

October 27th response to that request was inadequate, which has been addressed under separate cover through my November 4, 2009 email reply to that response. Moreover, and in an effort to extinguish any further allegations by Plaintiffs that Defendants have not sought all information in Plaintiffs' possession regarding this issue, on November 2, 2009, Defendants served Plaintiffs with a 30(b)(6) deposition notice referencing the topics you have raised in your October 13th letter.

Additionally, Defendants hereby request that Plaintiffs grant Defendants both onsite and remote access to Plaintiffs' Customer Connection website for at least each of four consecutive days, on Tuesday November 17, 2009 through Friday November 20, 2009. Those are the first four days after Defendants will have Plaintiffs' expert reports and thus we need this requested access immediately at that time, especially if Plaintiffs are continuing with their plans to decommission and disassemble Customer Connection in such a manner where it will no longer be available to anyone. We are prepared to meet and confer as soon as possible regarding the logistics and related protocols for this requested access. And, this request for access to Customer Connection should in no way be construed as a waiver of Defendants' objections and related positions regarding Oracle's unilateral decision to decommission and disassemble Customer Connection. *See* September 23, 2009 Joint Discovery Conference Statement at 12:13-13:6.

Your October 13th letter also inaccurately asserts that Defendants have admitted that they have no evidence connecting the downloaded files to the customers for whom those files were downloaded. Defendants have provided substantial and substantive discovery responses in a variety of forms detailing how TN tracked which customer logins and passwords were used to download the files located on TN's computers and how those downloads were separately maintained on behalf of each customer on whose behalf those downloads were made. The fact that Oracle did not place an electronic tag on each of the files it permitted to be downloaded from its websites that would have identified each download to the particular customer's login and password used to download that file does not obviate the substantial evidence showing that TN had, and generally followed, specific policies and procedures related to downloading. For example, Plaintiffs have been provided with written discovery responses and deposition testimony indicating that TomorrowNow's policy was to download each customer's materials individually, by customer, using that specific customer's login and password that was provided by the customer to download that customer's materials. *See e.g.*, Defendant TomorrowNow, Inc.'s Sixth Amended and Supplemental Response to Plaintiff Oracle Corporation's First Set of Interrogatories, Interrogatory No. 7 (citing TN-OR00411402).

Finally, your October 13th letter is entirely predicated on the improper assumption that Plaintiffs can shift their burden of proof to Defendants on this issue. Oracle has the burden to both plead and prove that alleged downloads were beyond the scope of each customers' license. Your October 13th letter wrongly assumes that once Plaintiffs have plead that the downloads were beyond the scope of the customers' licenses, the burden shifts to Defendants to disprove

HUI-120535v1

JONES DAY

Mr. Zachary J. Alinder
November 6, 2009
Page 4

that allegation.  It is well-settled that a copyright plaintiff bears the burden of proving that the
alleged copying exceeded the scope of the license.  Your suggestion that Defendants will be
somehow precluded at trial from using all available evidence (including, but not limited to, the
documents upon which Defendants have properly relied under Rule 33(d) in responding to
Plaintiffs' interrogatories) is misguided.  Defendants intend to hold Plaintiffs to their burden of
proof and will fully respond to whatever evidence Plaintiffs intend to introduce at trial.

As noted above, we need to talk as soon as possible regarding the logistics and protocol
associated with Defendants' request for onsite and remote access to Customer Connection during
Tuesday, November 17 through Friday, November 20, 2009.  And, once we speak regarding the
requested access to Customer Connection, we will make ourselves available to further discuss
any of the other issues noted above, so please let us know if and when you are available to
discuss those issues.

Very truly yours,

Scott W. Cowan

# EXHIBIT R

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE: (415) 626-3939 · FACSIMILE: (415) 875-5700

Direct Number: (415) 875-5831
ewallace@jonesday.com

November 17, 2009

**VIA EMAIL**

Geoffrey M. Howard, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

        **Re:**    *Oracle Corporation, et al. v. SAP AG, et al.*

Dear Geoff:

This letter addresses Plaintiffs' responses to certain discovery requests and obligations under the parties' Expanded Discovery Timeline Agreement.

**A. Requests for Production.**

    **1. Defendants' First Set of RFPs to Plaintiffs.**

**RFP No. 42:** This request seeks "Documents sufficient to show all user IDs, passwords, and other log-in credentials for all TN Customers or Named Customers who are currently, or have been in the past, authorized by Oracle to access Customer Connection, or any associated Software and Support Materials, and any similar Oracle support websites." Oracle agreed to produce this information but we do not believe it has done so. If you contend that Oracle has produced the log-in credentials for each TN customer, please let us know, by Bates number or other specific identifying information, where that information is located in the production. If the information has not been produced, please confirm that you will produce it on or before December 4.

**RFP Nos. 44, 45, and 47:** These requests seek documents relevant to determining which software and support materials each TN customer was entitled to download. As noted in Scott Cowan's November 6 response to Zac Alinder's October 13, 2009 letter, we do not agree that Oracle has produced sufficient information to make this determination. Indeed, it appears that sufficient information does not exist. Nonetheless, please confirm that Oracle has produced, or will produce by December 4, all non-privileged documents it contends are responsive to these requests.

**RFP No. 51:** This request includes all system codes for each SAR and ESU, which we do not believe have been produced. If they have been produced please identify where in the production they are located.

SFI-610723v1

JONES DAY

November 17, 2009
Page 2

     **RFP No. 52:**  This request seeks the displayed content of each page of the Customer Connection website, and documents sufficient information to show when the content was posted and removed.  If this information has been produced please identify where in the production it is located.

     **RFP No. 101:**  This request seeks "All Documents relating to the cost of the investigation referred to in paragraph 66 of the Complaint."  Oracle objected to the request on the ground that it "prematurely seeks materials related to the damages and expert discovery stages of the litigation."  We do not think this objection was proper for this request to begin with, and it is certainly proper not at this late stage in discovery.  Please produce all responsive, non-privileged documents.

     **2. Defendants' Second Set of RFPs to Plaintiffs.**

     **RFP No. 120:**  This request seeks documents relating to "PeopleSoft's July 10, 2002 cease and desist letter to TN and TN's July 27, 2002 response thereto …."  In a February 13, 2009 email, Zac Alinder stated that "to the extent responsive, non-privileged documents are contained in custodial files, they will be produced with that custodian's files …."  He also stated: "In addition, we've performed a reasonably diligent search for relevant non-custodial legal files. Those are being reviewed and the responsive, non-privileged documents will be produced."

     We do not believe that any documents responsive to this request have been produced or logged.  If this is incorrect, please identify the relevant Bates numbers and log entries.  If Oracle's search for documents responsive to this request yielded no responsive documents, including privileged documents, please confirm that in writing.

**B. Documents To Be Produced Pursuant To The Parties' Expanded Discovery Timeline Agreement.**

     The parties' November 2008 Expanded Discovery Timeline Agreement requires production of updated (through October 31, 2008) win/loss reports, at-risk reports, and other customer-specific reports kept in centralized locations, or with key custodians, or that can be generated from electronic sources. Elizabeth Shippy testified that Oracle's manual at-risk reporting process changed to an automated at-risk reporting process in the spring of 2008. *See* Shippy 9/25/09 Tr. at 74:15-75:1. Ms. Shippy further testified that the automated at-risk report is "posted monthly" and that the OKS database from which the report is generated also contains sales representatives' notes, emails, and other information concerning communications with at-risk customers, similar to the information contained in the manual at-risk report. *Id.* at 81:4-83:23.

     In a May 20, 2009 email, Jason McDonell requested an updated production of win/loss reports, at-risk reports, and other customer-specific reports under the Expanded Discovery Timeline, including the automated at-risk reports described by Ms. Shippy. Oracle has since produced some of the reports identified in that email but, to the best of our knowledge, has not produced any automated at-risk reports. If that is incorrect, please identify the automated at-risk reports by Bates number. If Oracle has not produced automated at-risk reports, please let us know when it intends to do so. If Oracle is refusing to produce them, please let us know when you are available to meet and confer on this issue.

November 17, 2009
Page 3

     The May 20 email also identifies key custodians whose email productions should be updated through October 31, 2008.  Please confirm that Oracle has updated these productions.  If Oracle is refusing to do so, please let us know when you are available to meet and confer on this issue.

**C.  Interrogatories.**

     **1.  Defendants' Second Set of Interrogatories.**

     Interrogatory No. 16 asks Oracle to identify the entity or entities that own, have legal title to, and/or actual possession of each computer, computer system, and/or computer network allegedly accessed without authorization, interfered with, and/or damaged.  In response, Oracle has identified multiple entities, but it has not identified the computer, computer system, and/or computer network for any entity or the time period during which each entity purportedly owned, held title to, and/or actual possession of the computer, computer system, and/or computer network.  Please supplement to provide that information for each entity listed.

     **2.  Defendants' Seventh Set of Interrogatories.**

     **Interrogatory No. 123:**  This interrogatory asks Oracle to describe in detail all efforts by PeopleSoft, JD Edwards, and Oracle between January 1, 2002 and the filing of the complaint to learn about TN's business activities.  Oracle has improperly limited its response to January 1, 2004 through the filing of complaint.  Pursuant to the parties' agreement to expand the relevant discovery time period, please supplement the response for the January 1, 2002 to December 21, 2003 time period.

     **Interrogatory No. 124:**  This interrogatory asks Oracle to identify the PeopleSoft, JD Edwards, and Oracle employees who were aware prior to the fall of 2006 of any of the alleged unlawful conduct by TN described in the complaint.  Oracle's response that it is not aware of any such employees is contradicted by the record and suggests that Oracle has not done a sufficient investigation in response to this interrogatory.  *See, e.g.,* Exhibit 1325 (April 21, 2004 email to Gregory Stevenson forwarding email from Shelley Nelson indicating that "TomorrowNow's standard procedure is to get a demo copy of your PeopleSoft software Demo CD's in order to install a 'demo support environment' at TomorrowNow on your behalf."); *see also* Brad Nolan Tr. at 99-205 (testifying that a customer told him some time in 2006 about customer environments at TomorrowNow and he relayed that information to Oracle's legal department).  Please explain what investigation, if any, Oracle has done in response to this interrogatory.  Please also supplement the response to include the information already in the record that contradicts the response.

                     Sincerely,

                     Elaine Wallace

JONES DAY

November 17, 2009
Page 4


cc:     Holly House, Esq. (via email)
        Zachary J. Alinder, Esq. (via email)
        Bree Hann, Esq. (via email)