Dockets.Justia.com

# EXHIBIT B

OAO 88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN  DISTRICT OF  CALIFORNIA

ORACLE USA, INC., et al.,

v.

SAP AG, et al.

### SUBPOENA IN A CIVIL CASE

Case Number:[1] 07-CV-1658 PJH (EDL)

TO: Folger Levin & Kahn LLP
275 Battery Street, 23rd Floor
San Francisco, CA  94111
T:  (415) 986-2800

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A (attached hereto)

| PLACE | DATE AND TIME |
|---|---|
| Jones Day, 555 California St., 26th Fl., San Francisco, CA  94104 | 10/7/09, 9:30 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  (Attorney for Defendants) | DATE  9/21/09 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Patrick Delahunty
Jones Day, 555 California St., 26th Fl., San Francisco, CA  94104
T:  (415) 626-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

AO 88 (Rev 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED: | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2)(A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT A

# DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to each of the below Requests for Production and Inspection.

1.      The term "PARTY" refers to any plaintiff, defendant, cross complainant, or cross defendant in *PeopleSoft Inc., et al., v. Oracle Corporation, et al.,* Case No. RG03101434, Superior Court of the State of California, County of Alameda (filed June 13, 2003).

2.      The term "DOCUMENT(S)" means and includes, without limitation, written, printed, typed, recorded, computerized, electronic, taped, graphic or other matter, in whatever form, whether in final or draft, including, but not limited to, all materials and things that constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence or documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure. The terms "DOCUMENTS(S)" further includes, but is not limited to, the original and each copy of any writings, including any copy that differs in any respect from the original or other versions, of the DOCUMENTS(S), such as, but not limited to, copies containing notations, insertions, corrections, marginal notes, or any other variations; records, or files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; email; telephone message records or logs; computer and network activity logs; data on hard drives; backup data; data on removable computer storage media such as tapes, disks, and cards; printouts; document image files; web pages; databases; spreadsheets; software; hardware; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital records or transcripts; drafts; jottings; and notes.

3.      The terms "and" as well as "or" shall be construed disjunctively and conjunctively as necessary in order to bring within the scope of the following Requests all information which might otherwise be construed to be outside their scope.

EXHIBIT A TO SUBPOENA FOR
PRODUCTION AND INSPECTION OF
DOCUMENTS

4.     The use of the singular form of any word includes the plural and vice versa.

5.     Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most inclusive.

## REQUESTS FOR PRODUCTION AND INSPECTION

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS filed in any court in connection with *PeopleSoft Inc., et al., v. Oracle Corporation, et al.,* Case No. RG03101434, Superior Court of the State of California, County of Alameda (filed June 13, 2003).

### REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS served or produced by any PARTY on or to any other PARTY during the course of discovery in *PeopleSoft Inc., et al., v. Oracle Corporation, et al.,* Case No. RG03101434, (filed June 13, 2003), including but not limited to: Requests for Production, Requests for Admission, Interrogatories, Subpoenas, and responses thereto including but not limited to documents produced in response to Requests for Production and/or Subpoenas, and relating to the allegation in Paragraph 38 of the Second Amended Complaint: "Oracle hoped to harm PeopleSoft as a competitor in the applications software space, adversely affect PeopleSoft's sales, poach PeopleSoft's prospective customers, and otherwise interfere with PeopleSoft's customer relationships through a concerted campaign of fear, uncertainty and doubt."

### REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS reflecting the transcription of a court hearing or deposition in connection with *PeopleSoft Inc., et al., v. Oracle Corporation, et al.,* Case No. RG03101434, Superior Court of the State of California, County of Alameda (filed June 13, 2003).

SFI-618994v2

EXHIBIT A TO SUBPOENA FOR
PRODUCTION AND INSPECTION OF
DOCUMENTS

# EXHIBIT C

1   FOLGER LEVIN & KAHN LLP
    Michael F. Kelleher (SB # 165493, mkelleher@flk.com)
2   Embarcadero Center West
    275 Battery Street, 23rd Floor
3   San Francisco, CA  94111
    Telephone: (415) 986-2800
4   Attorneys for Third-Party Folger Levin & Kahn LLP

5

6                    UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8                         OAKLAND DIVISION

9   ORACLE USA, INC., *et al.*,            CASE NO. 07-CV-1658 PJH (EDL)

10                  Plaintiffs,

11        v.                               **NON-PARTY FOLGER LEVIN & KAHN
                                           LLP'S OBJECTIONS TO THIRD-PARTY**
    SAP AG, *et al.*,                      **SUBPOENA SERVED BY DEFENDANTS**
12
                    Defendants.
13

14

15  TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

16        PLEASE TAKE NOTICE that pursuant to Rule 45(b)(1) of the Federal Rules of Civil

17  Procedure, non-party Folger Levin & Kahn LLP ("FLK"), hereby objects to each and every

18  request and definition contained in the third-party subpoena noticed by Defendants SAP AG, *et*

19  *al.* (collectively, "Defendants") on September 21, 2009 and served on FLK on September 22,

20  2009 (the "Subpoena"), for the reasons set forth below.

21                              **OBJECTIONS**

22        1.      FLK objects to Defendants' Subpoena in its entirety because the Subpoena seeks

23  documents that are neither relevant to the claims or defenses asserted by the parties to this

24  litigation nor the subject matter of this litigation, and are not reasonably calculated to lead to the

25  discovery of admissible evidence.  The Subpoena seeks pleadings, produced documents, and

26  transcripts from an unrelated case in which FLK represented PeopleSoft and members of its

27  Board of Directors in litigation against Oracle concerning Oracle's tender offer for PeopleSoft.

28  That tender offer spawned several related lawsuits, including the antitrust trial (over which Judge

1  Walker presided and for which Judge Legge acted as a special master) and state court litigation

2  initiated by PeopleSoft against Oracle that centered on allegations that Oracle's tender offer was

3  not made in good faith and that it was designed to harm PeopleSoft's business. The eventual

4  success of the tender offer resulted in the dismissal of the litigation on the eve of trial. In the

5  intervening 18 months, the parties engaged in very active litigation supervised by Judge Sabraw

6  in the Alameda Superior Court. The voluminous pleadings and transcripts from the *PeopleSoft v.*

7  *Oracle* litigation are not relevant to this action.

8       2.     FLK further objects that the Subpoena seeks irrelevant documents because it is

9  overly broad, requesting "All Documents filed in any court" (Req. No. 1), "All Documents

10  served or produced by any Party on or to any other Party" (Req. No. 2), "All Documents

11  reflecting the transcription of a court hearing" (Req. No. 3), and "All Documents reflecting the

12  transcription of a deposition" (*id.*) relating to the tender offer litigation subject matter of the

13  requests. It was on grounds of relevance that similar discovery efforts by Defendants in 2008,

14  aimed at the parallel antitrust case brought by the Department of Justice to block the

15  Oracle/PeopleSoft merger, were rejected by the Special Discovery Master, Judge Legge, earlier

16  in this case. *See* Report and Recommendations Re: Discovery Hearing No. 1, filed on March 14,

17  2008 [Docket 66] ("[t]he subject matter of the two proceedings, the 2004 antitrust proceeding

18  and this downloading case, are different.") March 14, 2008 Report and Recommendations Re

19  Discovery Hearing No. 1 at p. 8 [Docket # 66]. The same reasoning applies equally to the

20  companion state court case, *PeopleSoft v. Oracle.*

21       3.     FLK objects to the Subpoena in its entirety as overly broad, unduly burdensome

22  and oppressive because the burden of reviewing and designating irrelevant and confidential

23  documents outweighs any alleged need for the requested discovery. The *PeopleSoft v. Oracle*

24  case involved extensive discovery of third-party customers of PeopleSoft and Oracle, and many

25  of the pleadings, transcripts and produced documents include information designated by those

26  third-party customers as confidential under the protective order in that litigation. It will be very

27  burdensome to sift through approximately 1500 pleadings and several transcripts, that have

28  embedded within them information designated by third parties as confidential and which require

2

1   notice to potentially dozens of third parties and an opportunity to contest the disclosure of their

2   information. Third party confidentiality designations may apply to many parts of any particular

3   pleading, transcript or document subject to the Subpoena's broad sweep. The Protective Order

4   from that litigation would require notice to and opportunity to object by those third parties. This

5   time-consuming and burdensome exercise is a waste of time for the parties, and will potentially

6   embroil the Court in several sideline disputes with third parties (indeed, this was the very role

7   Judge Legge had in the antitrust case and likely contributed to his order denying the antitrust

8   case discovery). Thus, the burden, including the substantial amount of time and expense

9   implicated by the Subpoena's request for documents that are equally available to Defendants and

10   subject to any applicable Protective Order, substantially outweighs any alleged need for such

11   information. In addition, the Subpoena is harassing and oppressive for the same reasons,

12   including because the requested discovery is not relevant to this litigation.

13       4.     FLK further objects to the Subpoena in its entirety because it requests information

14   that is equally — and publicly — available to Defendants. For example, Subpoena Request No.

15   1 seeks "All Documents filed in any court in connection with *PeopleSoft Inc., et al., v. Oracle*

16   *Corporation, et al.*" It is unreasonable, unduly burdensome, and oppressive to request FLK, a

17   non-party law firm, to review in excess of 1500 pleadings (i.e., documents, not number of pages)

18   and designate same. Federal Rule of Civil Procedure 45 does not permit Defendants to shift the

19   burden of searching through publicly available court files on non-parties. Indeed, FLK is

20   informed and believes that Defendants informed Oracle that Defendants had been able to locate

21   pleadings from the case through the court's online system. Defendants should proceed in that

22   fashion if they so strongly believe that is a good use of their resources.

23       5.     FLK further objects to the Subpoena in its entirety because Defendants have

24   failed to make any attempt to focus on information pertaining to the actual customers in dispute.

25   Defendants have stated in meet and confer that the Subpoena is focused on their lost profits

26   causation defense. At the same time, Defendants refuse to refine their Subpoena, in light of the

27   extreme irrelevance, and confidentiality issues associated with it, to any particular customer or

28   group of customers. For this reason alone, the Subpoena is overly broad, unduly burdensome,

3

1   oppressive, and seeks documents that are neither relevant to the claims or defenses asserted by

2   the parties to this litigation nor the subject matter of this litigation, and are not reasonably

3   calculated to lead to the discovery of admissible evidence.

4        6.     FLK objects to the Subpoena in its entirety to the extent that it calls for

5   production of documents that are protected by the attorney-client privilege, the attorney work-

6   product doctrine, or any other applicable privileges or immunities.

7        7.     FLK further objects that Oracle, as the current holder of the privilege that

8   formerly belonged to PeopleSoft, has indicated that Oracle intends to object to the Subpoena, and

9   FLK cannot produce the documents without resolution of Oracle's objections.

10        8.     FLK further objects to the Subpoena in its entirety to the extent that it calls for the

11   search of electronically stored information in FLK's email system, document management

12   system and backup storage (the "Systems"). Searching the Systems would be extremely

13   burdensome and expensive. FLK did not use these systems as a primary source for the storage of

14   the information sought by the Subpoena, and to the extent that information sought by the

15   Subpoena is in the Systems, it is not reasonably accessible. Moreover, to the extent that

16   information is in the Systems, it is likely to be protected by attorney-client privilege and/or work

17   product, and segregating any non-privileged documents would be unduly burdensome and

18   expensive.

19        9.     FLK further objects to the Subpoena in its entirety because Oracle and/or its

20   counsel are likely to have all the information sought by Defendants, and there no need to unfairly

21   burden non-party FLK to obtain information in the possession of Oracle.

22        10.    FLK further objects that the request for production of responsive documents by

23   October 14, 2009 is unreasonable. As described above, many electronic files would have to be

24   reviewed to locate documents within the scope of this request. FLK would need substantially

25   more time to comply with this request than was allowed in the subpoena.

26        11.    FLK further objects that production of the requested documents would entail

27   significant expense and inconvenience to FLK. Due to the broad nature of the request, thousands

28   of pages of electronic documents might have to be reviewed in order to locate responsive

4

1   documents.  Because of the unreasonable expense involved in locating, reviewing and producing

2   responsive documents, FLK objects to the request unless Defendants agree to pay all costs and

3   attorneys' fees.  Further, as the request covers documents already available to Defendants

4   through discovery from Oracle in the above-entitled action, this expense and inconvenience is

5   completely unnecessary.

6   **Response to Request No. 1**:

7           FLK incorporates the foregoing objections in their entirety.

8   **Response to Request No. 2**:

9           FLK incorporates the foregoing objections in their entirety.

10  **Response to Request No. 3**:

11          FLK incorporates the foregoing objections in their entirety.

13  Dated:  October 14, 2009                    FOLGER LEVIN & KAHN LLP

15                                              Michael F. Kelleher
16                                              Attorneys for Non-Party
                                                Folger Levin & Kahn LLP

17  73034\2001\670073.1

28

5

# EXHIBIT D

### RE: Status update on Folger & Levin index and Henley documents

| | | |
|---|---|---|
| From: | Jason McDonell | 12/09/2009 03:40 PM |
| | Extension:  35820 | |
| To: | Howard, Geoff | |
| Cc: | "Hann, Bree", "'Elaine Wallace'", "House, Holly", "Jane L Froyd", "Joshua L Fuchs", "Scott Cowan", "Greg Lanier", "Alinder, Zachary J." | |

Thank you.

Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500
SF Office Main Tel.:  (415) 626-3939
Direct Dial:  (415) 875-5820
Fax:  (415) 875-5700
Email:  jmcdonell@jonesday.com

| | | |
|---|---|---|
| "Howard, Geoff" | Jason, The answer is yes. | 12/09/2009 03:38:39 PM |

| | |
|---|---|
| From: | "Howard, Geoff" <geoff.howard@bingham.com> |
| To: | "Jason McDonell" <jmcdonell@JonesDay.com> |
| Cc: | "Hann, Bree" <bree.hann@bingham.com>, "'Elaine Wallace'" <ewallace@JonesDay.com>, "House, Holly" <holly.house@bingham.com>, "Jane L Froyd" <jfroyd@JonesDay.com>, "Joshua L Fuchs" <jlfuchs@JonesDay.com>, "Scott Cowan" <swcowan@JonesDay.com>, "Greg Lanier" <tglanier@JonesDay.com>, "Alinder, Zachary J." <zachary.alinder@bingham.com> |
| Date: | 12/09/2009 03:38 PM |
| Subject: | RE: Status update on Folger & Levin index and Henley documents |

Jason,
The answer is yes.
Thanks,
Geoff

**From:** Jason McDonell [mailto:jmcdonell@JonesDay.com]
**Sent:** Wednesday, December 09, 2009 3:37 PM
**To:** Howard, Geoff
**Cc:** Hann, Bree; 'Elaine Wallace'; House, Holly; Jane L Froyd; Joshua L Fuchs; Scott Cowan; Greg Lanier; Alinder, Zachary J.
**Subject:** RE: Status update on Folger & Levin index and Henley documents

Geoff,

Please let me have your response to the attached as soon as possible.  Thanks.

Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500
SF Office Main Tel.:  (415) 626-3939
Direct Dial:  (415) 875-5820
Fax:  (415) 875-5700
Email:  jmcdonell@jonesday.com

From: Jason McDonell/JonesDay

To: "Howard, Geoff" <geoff.howard@bingham.com>

Cc: "Hann, Bree" <bree.hann@bingham.com>, "'Elaine Wallace'" <ewallace@JonesDay.com>, "House, Holly"
<holly.house@bingham.com>, "Jane L Froyd" <jfroyd@JonesDay.com>, "Joshua L Fuchs" <jlfuchs@JonesDay.com>, "Scott
Cowan" <swcowan@JonesDay.com>, "Greg Lanier" <tglanier@JonesDay.com>, "Alinder, Zachary J."
<zachary.alinder@bingham.com>

Date: 12/07/2009 05:33 PM

Subject: RE: Status update on Folger & Levin index and Henley documents

Geoff,

In connection with our motion to compel on this issue, can we assume that it need only be directed at
Oracle and that we do not need to move against Folger Levin?

Thanks.


Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500
SF Office Main Tel.:  (415) 626-3939
Direct Dial:  (415) 875-5820
Fax:  (415) 875-5700
Email:  jmcdonell@jonesday.com



From: "Howard, Geoff" <geoff.howard@bingham.com>

To: "'Elaine Wallace'" <ewallace@JonesDay.com>

Cc: "House, Holly" <holly.house@bingham.com>, "Hann, Bree" <bree.hann@bingham.com>, "Alinder, Zachary J."
<zachary.alinder@bingham.com>, "Greg Lanier" <tglanier@JonesDay.com>, "Jason McDonell" <jmcdonell@JonesDay.com>, "Scott
Cowan" <swcowan@JonesDay.com>, "Jane L Froyd" <jfroyd@JonesDay.com>, "Joshua L Fuchs" <jlfuchs@JonesDay.com>

Date: 11/30/2009 07:19 AM

Su RE: Status update on Folger & Levin index and Henley documents
bje
ct:

Elaine,
Attached is the pleadings index maintained by the Folger firm related to the Alameda litigation between
PeopleSoft and Oracle.  Please contact Bingham directly, and not Folger, should you wish to request
review and production of any items on the index.  Oracle reserves all of its rights with respect to any such
requests, including on the grounds already stated in the objections, in meet and confer correspondence,
and in the parties' discovery conference statements.  Indeed, a cursory review of the index reveals that
this exercise by Defendants is a waste of the parties time and will not lead to the discovery of admissible
evidence.
Thanks,
Geoff

**From:** Elaine Wallace [mailto:ewallace@JonesDay.com]
**Sent:** Monday, November 23, 2009 5:29 PM
**To:** Howard, Geoff
**Cc:** House, Holly; Hann, Bree; Alinder, Zachary J.; Greg Lanier; Jason McDonell; Scott Cowan; Jane L
Froyd; Joshua L Fuchs
**Subject:** Status update on Folger & Levin index and Henley documents

Geoff,

Can you give us an update on the status of the Folger & Levin index and Oracle's production of Jeff
Henley documents?  I understand from your email to Scott last week that there are no responsive
documents to be produced for Harry You.

Regards,

Elaine Wallace
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5831 (Direct Dial)
(415) 875-5700 (Fax)
ewallace@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected
by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system
without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.[attachment "Pleadings Index (PeopleSoft v. Oracle, Alameda County Superior Court).pdf" deleted by Jason McDonell/JonesDay]

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# EXHIBIT E

# BINGHAM

Geoffrey M. Howard
Direct Phone:  415.393.2485
Direct Fax:     415.262.9212
geoff.howard@bingham.com

October 26, 2009

**Via Email**

Jason McDonell
Jones Day
555 California Street
26th Floor
San Francisco, California  94104

**Re:   Oracle v. SAP**

Dear Jason:

This follows up on the portion of our meet and confer discussion Monday afternoon focusing on Defendants' discovery related to the prior PeopleSoft v. Oracle tender offer litigation.  As we explained on the call, and have detailed in prior correspondence, we believe Defendants' efforts to open up an entirely new, irrelevant, and burdensome line of discovery at this late date contradicts the guidance provided by Judge Laporte (and exploited by Defendants in cutting Oracle off on purportedly new avenues of damages) that the parties should be winding down.  In particular, we discussed Defendants' subpoena to the Folger Levin law firm, and their naming of Oracle's General Counsel (Dorian Daley), Chairman (Jeff Henley) and former CFO (Harry You) as custodians, as pieces of this new discovery effort.

As for the Folger subpoena, Defendants indicated that the reason for that subpoena was to address Oracle's contention that SAP created fear, uncertainty and doubt (FUD) within the PeopleSoft installed base, causing customers to jump ship to SAP.  Although Oracle does contend that SAP created and exploited FUD, both before and after Oracle acquired PeopleSoft, that in itself is not remarkable -- FUD, for better or worse, is a feature of competition in the software industry.  Oracle's contention is different:  Oracle contends that SAP lured customers with 50% or more discounts on support pricing made possible only because of SAP theft and misuse of Oracle's intellectual property.  That SAP deliberately created this "Safe Passage" to SAP through TN and/or safe harbor at TN for former PeopleSoft customers at a time when there was already FUD as a result of the takeover battle magnified the adverse impact on Oracle.  Discovery has confirmed this was known and intended by SAP.  What was said or done by either Oracle or PeopleSoft in their takeover tussle has no bearing on this.

The other basis you offered to justify opening up the litigation files in the Oracle/PeopleSoft litigation was to test whether PeopleSoft asserted Oracle had itself created FUD in connection with its tender offer for PeopleSoft and whether Oracle complained that PeopleSoft was hurting its own customer base.  As a matter of law, we

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington


Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T  415.393.2000
F  415.393.2286
bingham.com

Jason McDonell
October 26, 2009
Page 2

disagree that statements made by an adverse acquisition target against the interest of the acquirer bind the acquirer as if it made them. As a matter of fact, Oracle does not dispute that Oracle and PeopleSoft each alleged the other had engaged in acts aimed at creating FUD aimed at the PeopleSoft customer base. These allegations were never decided by a fact-finder. But even if the mere existence of them has some bearing on the issues in this case, to the extent you are looking to prove the allegations were made, we agree they were. Therefore there is no need to open up the vast pleading files and other documents in the case to prove this.

For these reasons, and the ones set forth in more detail in the Folger objections (including the burden of reviewing 1500 pleadings and addressing the various third party confidentiality issues associated with them), we continue to believe the PeopleSoft case discovery is improper. Moreover, we understand that other than these pleadings and a small number of deposition transcripts, Folger does not have other responsive documents. I believe that was the information you said you wanted by way of a further joint phone call with Folger, so there does not appear to be a need for one at this point. If Defendants will not withdraw the subpoena, we intend to raise the issue with Judge Laporte at the November 17 discovery conference and, if necessary, to seek a protective order.

Regarding your naming of Dorian Daley as a "document custodian," the discussion above applies with greater force to her. You identified two bases for seeking her documents. The first was her "involvement" in the prior tender offer litigation. That basis is insufficient, particularly given that her involvement was limited to her role as litigation counsel. The second basis you offered was her involvement in the investigation that led to Oracle's complaint in this case. That is also an insufficient basis to seek her documents. Her role in the investigation was also as litigation counsel, and you have offered no further proffer or basis for any good faith belief you have that you would obtain relevant, responsive, non-privileged evidence, or anything that would lead to it. To the contrary, the timing suggests that you have named Ms. Daley as a custodian in retaliation for Oracle seeking the documents of Mr. Junge, SAP AG's General Counsel. Mr. Cowan's suggestion on the call that we agree to a scaled back logging protocol for each merely confirms this assessment. The two are not comparable. Mr. Junge participated as a business executive in the underlying events that led to the litigation, including the decision by SAP to buy TomorrowNow after it knew TomorrowNow acted illegally. Ms. Daley, as litigation counsel investigating TomorrowNow's downloading from Oracle's website, does not open herself up to discovery merely by virtue of investigating the activities Mr. Junge facilitated, despite the equivalence in their positions. Accordingly, we intend to raise this issue with the Court on November 17 and seek a protective order if necessary.

Finally, with only six weeks left in fact discovery, you also have just sought the documents, and indicated you would seek the depositions, of Oracle former CEO and current Chairman, Jeff Henley, and its former CFO Harry You. You indicated that you sought both witnesses due to their presumed involvement in the valuation of the PeopleSoft acquisition, and their involvement in the underlying litigation. As with Ms. Daley, there is no basis on which to involve these witnesses relating to the

Jason McDonell
October 26, 2009
Page 3

PeopleSoft litigation.  To the extent your focus relates to valuation of PeopleSoft by
Oracle, we agree to search for relevant, responsive, non-privileged documents on that
topic and produce them.

Sincerely yours,

*Geoff Howard (R.D.)*

Geoffrey M. Howard

# EXHIBIT F

C-07-1658 PJH (EDL)

ORACLE CORP. V. SAP AG, et al.

TRANSCRIPT OF AUDIO RECORDING OF CONFERENCE

DATED NOVEMBER 17, 2009, HELD BEFORE

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

# ORIGINAL

Transcribed by:   Freddie Reppond

**M E R R I L L   C O R P O R A T I O N**

135 Main Street, 4th Floor
San Francisco, CA 94105

415.357.4300 Tel

**TRANSCRIPTION    November 17, 2009**

[Beginning of recorded material]

THE CLERK:  Calling Civil 07-1658, Oracle Corporation versus SAP AG, et al.

Counsel, please state your appearances for the record.

MR. HOWARD:  Good afternoon, Your Honor.  Jeff Howard for the Plaintiff, Oracle.  And with me is Ms. Hann and Mr. Alinder and Ms. Gloss.

THE COURT:  Good afternoon.

MR. COWAN:  Good afternoon, Your Honor.  Scot Cowan for Defendants.  Along with me are Jason McDonnel and Heather Nugent.

THE COURT:  Good afternoon.

All right.  Well, I have to say that, reading about all these issues, I am not sure even 90 minutes is enough.  But I'm not sure, you know, how long I could last time with these.  So I mean I think that you, you know, need to prioritize.  Maybe it is in the order of priority, but you tell me.  You know, I'll certainly go as long as I can.  And if 90 minutes is probably going to be necessary, but -- and I think that, you know, issue by issue I- sort of think that's how we've been doing it.  But if you need even more so, that's fine.  I think that's good to hear from one side and then the other.  I'm not sure it's any different from what we've

2

TRANSCRIPTION    November 17, 2009

1  doesn't require all of us to fly around the country to

2  do the deposition.

3           THE COURT:  I'm going to give twenty-five

4  hours total.  That includes the up to nine depositions

5  for two hours each.  And the rest you can figure out

6  what you're going to do about it.  But I think that you

7  should take up the offer to have as much informal

8  exchange about this.  I mean it's much more efficient

9  than a 30(b)(6).

10          MR. HOWARD:  Very well, Your Honor.

11          THE COURT:  And really, you know, I think

12 there's just got to be more candor about what it is

13 they're saying they don't know and that you need to

14 know.

15          MR. HOWARD:  That's why we wrote the letter.

16 We went through all of the Bates numbers and all the

17 information.  Yep.  But I just --

18          THE COURT:  If I [inaudible]

19          MR. HOWARD:  I take that point.  Certainly,

20 Your Honor.

21          Shall we move on then?

22          THE COURT:  Yes.

23          MR. HOWARD:  Okay.  So the second issue is the

24 new wave of discovery on a new issue in the case related

25 to the six-year-old litigation between Oracle and

Merrill Legal Solutions
(800) 869-9132

1    PeopleSoft related to Oracle's tender offer for

2    PeopleSoft.

3            THE COURT:   Yeah.  Well, I'm very inclined to

4    limit all of that.

5            MR. MCDONNEL:  And we're inclined to work

6    toward any possible efficiency, Your Honor, but we're

7    talking about a group of nonprivileged documents, by

8    definition, that have been produced by adverse parties

9    once already.  So whatever confidentiality issues they

10   are -- exist -- are not so great as to have prevented

11   them from being produced and used in one court case just

12   across the Bay in Oakland --

13           THE COURT:  But were they used under seal and

14   all that sort of thing?

15           MR. MCDONNEL:  They were.  But we've got a

16   protective order in this case that will allow at least

17   as much protection.  And as I read --

18           THE COURT:  It's not nearly as relevant here.

19   I mean they do have some relevance.  But I guess what I

20   have a problem with it seems to me more of the fact that

21   the lawsuit was filed and that it lasted a certain

22   amount of time and it had some -- and what was public

23   knowledge -- probably newspapers and things like that,

24   when we used to have newspapers, you know, that's what's

25   relevant to having an impact.  But the specifics of, you

29

TRANSCRIPTION    November 17, 2009

1  know, exactly what was said at any particular time and
2  certainly things that weren't made public, I don't see
3  how they would have -- they're so tangentially related
4  to damages.
5      MR. MCDONNEL:  Well, but when I think about
6  it, Your Honor, what we're talking about here are
7  PeopleSoft employees, many of them very, very senior,
8  who were saying that Oracle is causing a disruption in
9  the PeopleSoft business and causing PeopleSoft customers
10  to want to leave PeopleSoft and go elsewhere.
11      THE COURT:  Right.  And they said that in the
12  complaint, but that's not --
13      MR. MCDONNEL:  They did say that.  But beneath
14  that --
15      THE COURT:  [inaudible] so how far, burrowing
16  down, is it worth the bang for the buck?  That's where
17  I'm concerned.
18      MR. MCDONNEL:  But the response to that is we
19  served the subpoena two months ago.  They are
20  nonprivileged documents sitting some matter of blocks
21  from here.  We're happy to reimburse Folger & Levin, as
22  they've asked whether we do, to review them.  We're
23  happy to have them made available to us so we can review
24  them and then point out which ones we think are most
25  appropriate for production and try to limit it that way.

30

TRANSCRIPTION    November 17, 2009

1    And I mean on some of these issues it shouldn't be an

2    all-or-nothing decision, no matter how you look at it.

3    What they've identified is, in terms of the transcripts,

4    there are fifteen transcripts --

5            THE COURT:  Of what?

6            MR. MCDONNEL:  Don't know --

7            THE COURT:  Of a hearing?

8            MR. MCDONNEL:  Of which they tell us.  They

9    just said fifteen transcripts and 1,500 pleadings and no

10   -- none of the underlying documents --discovery

11   documents themselves -- the e-mails and so forth.  So

12   we're really talking about those --

13           THE COURT:  Those don't exist?

14           MR. MCDONNEL:  That's what we've been told.

15   They exist somewhere but not at Folger & Levin,

16   apparently.

17           So what we're talking about are the

18   nonprivileged pleadings and fifteen transcripts.  Folger

19   & Levin can present them to us.  We can look at them.  I

20   don't know any reason why the transcripts wouldn't be

21   made available to us outright.  And as to the pleadings,

22   we'll look through them with our own personnel -- won't

23   take an hour of anyone else's time.  If we see something

24   -- the reason we don't just go get these from the court

25   is because they have redacted a lot of material.  So

Merrill Legal Solutions
(800) 869-9132

**TRANSCRIPTION**  **November 17, 2009**

1    we'll go through them, make reasonable efforts to pick

2    our spots, and identify some limited number of documents

3    that have been redacted from the filed pleadings and

4    then make specific requests for those.

5         And, Your Honor, just going to --

6         THE COURT:  Let me just look at this.  Okay.

7    So one of the issues was confidentiality of third-party

8    [inaudible].

9         MR. HOWARD:  That's exactly right, Your Honor.

10        MR. MCDONNEL:  Yeah, but the way the

11   protective order works in the Oakland case, their

12   obligation is, when they get a subpoena, they have two

13   days to give notice to third parties.  That two days has

14   come and gone two months ago.  And they have no burden

15   to make a -- to move for protective order or otherwise

16   protect the third parties' interests.  The third parties

17   would have to come in.  None of them have; there's

18   virtually no chance any of them will.  This litigation,

19   as this counsel says, is five years old.  Those parties

20   produced the information under protective order in one

21   case already.  The odds that, if they get notice, which

22   supposedly they already have, that it's going to be the

23   same information five years later is going to be made

24   available under a federal court protective order that

25   anyone is going to come rushing in here and raise an

1    issue about it is virtually nil.  These are issues that

2    are being raised, in my humble opinion, to make it

3    appear that it's a bigger problem than it really is.

4           THE COURT:  What is Oracle's objection to

5    this, if the burden of the issue is [inaudible] and, you

6    know, paying for it, and doing an initial cut?

7           MR. HOWARD:  Well, it's not eliminated at all,

8    Your Honor, because we cannot just let them go into our

9    law firm's litigation files and go burrowing through

10   them.  And the third-party issue is a very --

11          THE COURT:  Have you -- has Folger segregated

12   the transcripts and the pleadings?

13          MR. HOWARD:  Physically, no, they haven't.

14   What I understand is that they have -- now, I don't know

15   what's happened now that Folger has moved around, but

16   when I spoke with the lawyer there, they were looking at

17   an electronic index that indicated 1,500 pleadings.

18   Those pleadings likely have documents attached to them

19   or information contained within them from third parties.

20   And I don't think the protective order in that case was

21   intended to require that when a subpoena came in for

22   everything in the case that you then had two days to go

23   through 1,500 pleadings to figure out which third

24   party's information was implicated.  But we had to do

25   that.

33

1       THE COURT:  [inaudible]  I would think that it

2   would be self-evident that some of those pleadings were

3   irrelevant and some might look like they possibly could

4   be relevant.

5       MR. MCDONNEL:  This is what we're happy to do,

6   Your Honor.  We have not done a comprehensive look at

7   them, because we haven't even gotten past the first step

8   of determining whether they're willing to provide

9   anything whatsoever.

10      THE COURT:  Well, I guess my feeling is that I

11  -- I can't give you any more guidance other than that I

12  think you're -- you've asked for too much.  I think you

13  are making some headway coming up with proposals to

14  reduce the burden, but I think it's too tangential that

15  you would need all of them.  Like you said, it seems to

16  me the things that you need the most, to the extent you

17  need them, the fact that these things were filed, if

18  people didn't put quantitative numbers -- I don't know

19  how far this thing got -- it's not going to be all that

20  helpful.  In other words, if they just, you know -- and

21  I mean what do you -- and, furthermore, if you don't

22  have time to convert these people into witnesses, what's

23  admissible?

24      MR. MCDONNEL:  The documents.  It would all

25  come in -- it can all come in through experts and it can

1   come in through impeachment.  If they put a witness on

2   the stand, as I suspect they will, who will take the

3   position that the allegedly wrongful conduct of the

4   Defendants was what caused customers to make enterprise

5   software purchasing decisions other than staying with

6   PeopleSoft indefinitely, those witnesses are going to be

7   subject to impeachment, when PeopleSoft's own witnesses

8   have stated under oath and other contexts -- or in

9   pleadings in other contexts -- that it was the acts of

10  Oracle Corporation and the acquisition itself with the

11  threat that things are going to change mightily that

12  caused the --

13            THE COURT:  Well, it depends to some degree

14  who.  I mean if it was the president of PeopleSoft, yes.

15  Or, you know, some very high-level person.  Otherwise,

16  they're going to say, I have never heard of that person.

17  I don't know why they said what they did.  If you're not

18  impeaching the same person and they're not somebody

19  who's -- you know, I don't think I can give much more

20  guidance, but I think that you ought to -- Oracle ought

21  to, at a minimum, ought to give the electronic index and

22  subject to a clawback if there's something privileged.

23  It might be in the index itself.

24            Then I think you, you know, would be justified

25  in identifying some much more limited set of things that

35

1    you wanted them to look at and to be paid for and so

2    forth.  I think much more limited.

3          I mean I don't know what went on in that

4    lawsuit, but there were things like fights over venue or

5    motions to dismiss and all this other -- it's totally

6    irrelevant.  And unless, you know -- like I say, there's

7    going to be very little that's relevant.

8          MR. HOWARD:  And --

9          THE COURT:  And sufficiently relevant to go to

10   a lot of trouble.

11         MR. MCDONNEL:  That guidance is helpful.

12         THE COURT:  The fact that you're willing to

13   pay for it does make a big difference.  But,

14   nonetheless, I just think, like I say, the fact that it

15   happened is already public and that is by far your

16   strongest fact.

17         MR. HOWARD:  I would suggest, Your Honor, if

18   we're going to do that, it ought to be that there is a

19   customer in this case who is on the index from that

20   case, which I don't know; because that's the only way --

21   to your point -- the only way that it could matter,

22   because -- and I don't think even then -- because we

23   have agreed, we've stipulated.  That tender offer caused

24   uncertainty.  They said that was the fact they were

25   trying to discover; and we said, yes, it did.  All

**TRANSCRIPTION   November 17, 2009**

1  tender offers do.  And at that point unless they're

2  going for information for a specific customer, it just

3  couldn't be relevant to the --

4          THE COURT:  Well, for direct impeachment.  But

5  I guess my advice would be [inaudible] as opposed to

6  you're asking, well, somewhere in this historic pleading

7  on page 44, you know, some person, we don't know who

8  they are and where they are now, that such person --

9          MR. MCDONNEL:  But it's more than impeachment.

10  It's evidence of an economic impact on a particular

11  segment of the marketplace.

12          THE COURT:  Right.  And this is the --

13          MR. MCDONNEL:  The experts will be

14  extrapolating from that.  They're not going to be

15  limited -- Your Honor, your guidance has, I think, been

16  satisfactory.

17          THE COURT:  Okay.  This is the problem.  How

18  long have we spent on this?

19          MR. MCDONNEL:  I understand.  So I think we

20  have enough --

21          MR. HOWARD:  We're going to start picking up

22  speed here.

23          THE COURT:  We have to.

24          MR. HOWARD:  The next issue is related to this

25  last one we were just discussing.  It's their request

37

STATE OF CALIFORNIA      )

COUNTY OF SAN FRANCISCO )

CERTIFICATE OF REPORTER/TRANSCRIBER

I, the undersigned, a Shorthand Reporter and licensed Notary Public, do hereby certify that the above referenced recording was transcribed by me and that this transcript is a true record of that recording.

IN WITNESS WHEREOF I have hereunto set my hand on this  20ᵗʰ    of November 2009 .

FREDDIE REPPOND