EXHIBIT D

Dockets.Justia.com

# BINGHAM

Chad Russell
Direct Phone: 415.393.2336
Direct Fax:     415.393.2286
chad.russell@bingham.com

November 3, 2009

**Via Email**

Jason McDonell
555 California Street
26th Floor
San Francisco, CA 94104

**Re:   Oracle v. SAP; Scott Trainor Deposition**

Dear Jason:

I write to address two issues related to Scott Trainor's deposition:

1.       **Exhibit 1683**

Oracle disagrees with Defendants' clawback of Exhibit 1683 during Mr. Trainor's deposition.

First, we do not think this document is privileged and request a full explanation of Defendants' claim. We reserve the right to request *in camera* review of the document by Judge Laporte if this issue is not resolved.

Second, Defendants waived any such privilege that would have otherwise applied. We raised this issue at the deposition. On August 31, Defendants produced SAP Disc 192, consisting of 99 documents previously withheld by Defendants. Defendants stated in their cover letter they had "previously produced these documents through other custodians in the same form" and were producing the versions on Disc 192 because "Defendants continue to review all of their documents for privilege, in an effort to ensure that all such documents are treated as consistently as is reasonably possible." As stated in the letter, after this second review, "Defendants [] removed the privilege designation on portions of these documents."

One of the 99 documents on Disc 192 was SAP-OR00677727, which contained the exact same content as the document that Oracle introduced at the Trainor deposition as Exhibit 1683. We showed you SAP-OR00677727 at the deposition to make this point, and you then clawed it back as well. Both these clawbacks were improper. SAP-OR00677727 was not inadvertently produced as part of the "millions of pages" of documents that Defendants have cited in the past when defending their clawbacks. To the contrary, Defendants engaged in an active, intentional, and methodical review of SAP-OR00677727 and explicitly told Oracle they had "removed the privilege designation." Oracle relied on this statement in circulating the document, discussing it, and using it for

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

A/73187093.2

Jason McDonell
November 3, 2009
Page 2

deposition preparation. Defendants were not permitted to change their minds when they
saw how Oracle intended to use the document at deposition. *See, e.g., Phoenix Solutions
Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) ("The attorney-
client privilege is not absolute. It may be waived either implicitly, by placing privileged
matters in controversy, or explicitly, by turning over privileged documents.") (internal
citation omitted).

We request that Exhibit 1683, SAP-OR00677727, and any other documents with the
same content be produced immediately in their originally-produced form and that Mr.
Trainor be made available for further testimony regarding the document and related
questions.

**2.        Improper privilege instructions**

Defendants improperly instructed Mr. Trainor to not answer a number of questions at his
deposition.  Examples of these questions and instructions are excerpted below

> Q.  Do you deny that you were telling Waste Management that it was to their
> advantage to provide access to software?
> MR. McDONELL:  Vague and ambiguous, lack of foundation, asked and
> answered.
> THE WITNESS:  I don't recall if I drafted this, first of all.  And second of all, as I
> read this, I don't believe it coincides with what you just concluded.
> Q.  Why not?
> …
> THE WITNESS:  That's not how I read the "you don't want us accessing."
> Q.  How did you read it?
> MR. McDONELL:  Same objections and same instruction to you not to disclose
> privileged information.
> THE WITNESS:  I feel like I'm going into where I'm drawing legal conclusions
> as I interpret this.
> MR. McDONELL:  Okay.  So I instruct you not to disclose your mental legal
> analysis.  (109:7-111:11)
>
> Q.  You had worked with them for some time when you worked as an attorney
> for PeopleSoft.  True?
> A.  True.
> Q.  And so did you compartmentalize that -- your experience?
> MR. McDONELL:  Calls for mental impressions of an attorney.  I'll instruct you
> not to answer on work product grounds.  (113:10-17)
>
> Q.  Did you take any steps to avoid relying on your memory of the PeopleSoft
> licenses in negotiating the terms of these licenses with TomorrowNow
> customers?
> MR. McDONELL:  Same objection, same instruction not to answer.  (113:18-23)

Jason McDonell
November 3, 2009
Page 3

Q.  If you take a look at paragraph 9A of the agreement, "TomorrowNow Indemnity," there's a bracket that states:  This will need to be different from the license.  Our rights to use the  PeopleSoft software come entirely by way of the Waste Management license with PeopleSoft.  Is it true that you were conveying to Waste Management the position that TomorrowNow's rights to use the PeopleSoft software come entirely by way of the Waste Management license with PeopleSoft?
MR. McDONELL:  The document speaks for itself.
THE WITNESS:  I don't recall drafting this.  However, that -- what you recited is what the document represents, yes.
Q.  Was that SAP's position?
MR. McDONELL:  Document speaks for itself.
THE WITNESS:  Was that --
MR. McDONELL:  By position, do you mean, was that what SAP conveyed to the customer?
Q.  Yes.  Was that your position to the customer?
A.  It appears -- yes, it appears that in this document, that's the position we took.
Q.  Was that a true statement so far as you knew?
MR. McDONELL:  I have -- hold on for a second.  Calls for a legal conclusion and legal analysis.  I'll instruct you not to answer.
Q.  So you can't tell me whether it's true or not?
MR. McDONELL:  I've instructed you not to answer on grounds of work product.  You're asking him to sit here and do legal analysis.
Q.  To your knowledge, did SAP or TomorrowNow ever misrepresent facts to customers during negotiation of terms?
MR. McDONELL:  I instruct you not to answer.  It's argumentative, calling for legal conclusions and work product and potential attorney-client.  And it's argumentative.  I've already said that.  (113:24-115:17)

Q.  Did SAP or TomorrowNow take any steps to determine whether a particular customer's allowance of access to software constituted copyright infringement?
MR. McDONELL:  Instruct you not to answer on grounds of legal -- privilege and work product.
MR. PICKETT:  It's take any steps.  It's not what they did.
MR. McDONELL:  Stand by my instruction.
Q.  Did TomorrowNow or SAP ever analyze in connection with a negotiation of a contract the general topic of a customer's rights to provide access to software?
MR. McDONELL:  Instruct you not to answer on the grounds of attorney-client privilege and work product.  (115:21-116:11)

Q.  You understand that you have certain ethical obligations as an attorney in the State of California.  Correct?
MR. McDONELL:  Calls for a legal conclusion.
THE WITNESS:  I do.
Q.  And you understood that you have the obligation to keep information you learned from a former -- a client strictly confidential.  True?

Jason McDonell
November 3, 2009
Page 4

MR. McDONELL:  Depends on the circumstances.  It calls for a legal
conclusion.  Object to the form of the question.
MS. PHILLIPS:  Overbroad.
THE WITNESS:  I do.
Q.  And if you revealed this type of information to Mr. Phillips, that violated
your ethical obligation.  True?
MR. McDONELL:  Object to the form of the question, and I'm going to instruct
you not to answer on the grounds of attorney work product and privilege.
Q.  Is this information confidential?
MR. McDONELL:  Vague and ambiguous, overbroad, calls for a legal
conclusion, calls for a legal analysis by an attorney of a legal issue collaterally
related to the case.  I'm going to instruct you not to answer.
Q.  Is it private?  Is it confidential?  That's not a privilege issue.
MR. McDONELL:  Same objections.  Same instruction.
MR. PICKETT:  On what ground?
MR. McDONELL:  Privilege, work product.  (136:3-137:12)

Q.  If you did convey it, would you have felt comfortable conveying it, the
portion that I just read?
MR. McDONELL:  Instruct you not to answer.  Grounds of attorney-client,
attorney work product, it's unduly argumentative, I object to the form of the
question.  (139:7-13)

Q.  Turning to Exhibit 1684, page ending -861, under the indemnification
provision, it reads, "Key term -- no removing this."  Was that true, that this was a
key term for SAP, and it would not negotiate this term away?
MR. McDONELL:  Instruct not to answer on the grounds of attorney-client and
work product.  (166:17-23)

Jason McDonell
November 3, 2009
Page 5


Oracle does not agree that any of these questions referred to communications with an attorney seeking or rendering legal advice or attorney work product prepared in anticipation of litigation. Please agree to make Mr. Trainor available for further questioning on these topics or explain in full the nature of the privileged communications and/or work product in anticipation of litigation implicated by these questions.


Sincerely yours,

Chad Russell


cc:     Scott Cowan
        Elaine Wallace
        Jane Froyd
        Josh Fuchs