EXHIBIT H

Dockets.Justia.com

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>                    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 07-CV-1658 (PJH)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |


VIDEOTAPED DEPOSITION OF

SCOTT TRAINOR

_____

TUESDAY, OCTOBER 13, 2009


HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY


REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-423026)

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 9

09:41:38 10            MR. PICKETT:   Q.   You worked as an attorney

09:41:39 11   for PeopleSoft from February 2002 to November 2004.

09:41:42 12   Correct?

09:41:44 13        A.   That is correct.

09:41:44 14        Q.   You were Senior Director, Field Legal?

09:41:48 15        A.   That's correct.

09:41:48 16        Q.   And your client was PeopleSoft at that

09:41:49 17   time.   Correct?

09:41:51 18        A.   Correct.

SCOTT TRAINOR    October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17

09:49:28 18          MR. PICKETT:  Q.  You helped negotiate the

09:49:29 19   contracts with the TomorrowNow customers.   Correct?

09:49:35 20        A.  I helped negotiate some contracts with the

09:49:37 21   customers, yes.

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 22

09:54:58 15        Q.  You moved from PeopleSoft to SAP in

09:55:00 16   November of 2004.  What were the circumstances of

09:55:03 17   that move?

09:55:04 18             MR. McDONELL:  Vague and ambiguous.

09:55:08 19             THE WITNESS:  I had received an inquiry

09:55:11 20   from a salesperson that I had worked with at

09:55:16 21   Annuncio Software.  She said that there was a

09:55:22 22   position open at SAP.

09:55:24 23             And I was interested, because the Oracle

09:55:28 24   acquisition effort was going on, and I was concerned

09:55:31 25   about my future employment.  So I sent a resume, got

SCOTT TRAINOR    October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 23

09:55:38  1  a call from a recruiter, decided that the position

09:55:41  2  was too junior, got another call, and went through

09:55:46  3  the interview process for an attorney-level

09:55:49  4  position.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 24

09:56:46 11            MR. PICKETT:  Q.  And what was your

09:56:47 12    immediate job when you first came on with SAP?

09:56:55 13    Assistant General Counsel?

09:56:56 14        A.  That's the title, correct.

09:56:57 15        Q.  What were your duties and responsibilities?

09:56:59 16        A.  I supported a region of the United States

09:57:04 17    in negotiating -- the Southeast and Southwest

09:57:08 18    regions of the US in negotiating license agreements.

09:57:12 19    I supported the consulting organization on a

09:57:17 20    national basis.

09:57:20 21            That's what occurs to me now.

09:57:22 22        Q.  What license agreements were you involved

09:57:25 23    with?

09:57:29 24            MR. McDONELL:  Overly broad, vague and

09:57:30 25    ambiguous.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 25

09:57:30   1          THE WITNESS:  I was negotiating the SAP

09:57:31   2   license agreements with the customers.

09:57:33   3          MR. PICKETT:  Q.  For what product?

09:57:37   4      A.  Any product.  So any software product, I

09:57:41   5   guess minus maybe online CRM.  But any deal could

09:57:47   6   have been escalated to me if it came out of that

09:57:49   7   region.

09:57:50   8      Q.  How were those responsibilities different,

09:57:53   9   if at all, from your responsibilities at PeopleSoft?

09:57:56  10          MR. McDONELL:  Vague and ambiguous, overly

09:57:57  11   broad.  Don't disclose any privileged information in

09:58:00  12   giving your response, please.

09:58:06  13          THE WITNESS:  I did not have the corporate

09:58:11  14   responsibilities on committees, the templates,

09:58:14  15   et cetera.  The --

09:58:18  16          MR. PICKETT:  Q.  At SAP?

09:58:20  17      A.  At SAP, correct.  The license agreement

09:58:25  18   negotiations were similar.  On a larger scale, but

09:58:29  19   similar.

09:58:33  20      Q.  To whom did you report initially at SAP?

09:58:37  21      A.  I believe that in the HR system I reported

09:58:40  22   directly to Brad Brubaker; and on a day-to-day

09:58:44  23   management, I worked with both Bob Dillon and Mary

09:58:47  24   Beth Hanss.

09:58:48  25      Q.  You were Assistant General Counsel from

Page 26

09:58:51   1   November 2004 through March 2007?

09:58:53   2        A.  That's about right.  February or March,

09:58:55   3   yes.

09:58:56   4        Q.  And throughout that period, were you an

09:58:58   5   employee of SAP?

09:58:59   6        A.  Correct.

09:58:59   7        Q.  And you reported up the chain through SAP?

09:59:03   8           MR. McDONELL:  Vague and ambiguous.

09:59:04   9           THE WITNESS:  Correct.

09:59:05  10           MR. PICKETT:  Q.  Ultimately, someone

09:59:06  11   reported to the Board of Directors, I take it?

09:59:09  12           MR. McDONELL:  Lack of foundation, vague

09:59:10  13   and ambiguous.

09:59:13  14           THE WITNESS:  Yes.  Eventually somebody

09:59:14  15   reported to the CEO and us.

09:59:17  16           MR. PICKETT:  Q.  You understood that your

09:59:18  17   client was SAP while you worked at SAP?

09:59:21  18           MR. McDONELL:  Vague and ambiguous, vague

09:59:22  19   as to time.

09:59:25  20           MS. PHILLIPS:  Overbroad.

09:59:26  21           THE WITNESS:  I did.

Page 44

| | | |
|---|---|---|
| 10:30:59 | 19 | MR. PICKETT:  Q.  Well, you knew that |
| 10:31:00 | 20 | TomorrowNow was going after PeopleSoft's customers |
| 10:31:04 | 21 | by trying to get them to switch over to service |
| 10:31:07 | 22 | contracts with TomorrowNow.  Right? |
| 10:31:08 | 23 | MR. McDONELL:  Argumentative, assumes facts |
| 10:31:10 | 24 | not in evidence, vague and ambiguous. |
| 10:31:17 | 25 | THE WITNESS:  I did know the general |

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 45

10:31:18   1    TomorrowNow model.

10:31:19   2         MR. PICKETT:  Q.  And the general

10:31:20   3    TomorrowNow model was to take away service business

10:31:22   4    from PeopleSoft.

10:31:23   5         MR. McDONELL:  Argumentative.

10:31:24   6         THE WITNESS:  It was to sign up customers

10:31:26   7    for after-market support services, yes.  Generally

10:31:32   8    PeopleSoft, but not exclusively, yes.

10:31:34   9         MR. PICKETT:  Q.  And that was now Oracle's

10:31:35   10   business.  True?

10:31:37   11        MR. McDONELL:  Misstates testimony, lack of

10:31:38   12   foundation.

10:31:40   13        THE WITNESS:  Based on Oracle's acquisition

10:31:41   14   of PeopleSoft, that is accurate.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 60

10:48:50  8        Q.  And you assisted in the negotiation of

10:48:52  9    TomorrowNow customer contracts.

10:48:54 10        A.  I did.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 65

11:07:30 16              MR. PICKETT:  Q.  Do you recall an effort

11:07:33 17    by TomorrowNow to revise its model support services

11:07:37 18    contract?

11:07:39 19              MR. McDONELL:  Vague and ambiguous.

11:07:41 20              THE WITNESS:  Yes.

11:07:42 21              MR. PICKETT:  Q.  You were involved with

11:07:43 22    that, were you not?

11:07:45 23              MR. McDONELL:  You may answer yes or no.

11:07:46 24              THE WITNESS:  Yes.

11:07:48 25              MR. PICKETT:  Q.  Did TomorrowNow in fact

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 66

11:07:50   1    develop a new model contract?

11:07:54   2              MR. McDONELL:  You may answer "yes" or

11:07:54   3    "no."

11:07:55   4              THE WITNESS:  Yes.

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 71

11:15:00 23        Q.  Did anyone other than you at SAP approve

11:15:02 24    the final model contract?

11:15:03 25            MR. McDONELL:  Lack of foundation, vague

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 72

11:15:04   1   and ambiguous.  Don't disclose privileged

11:15:08   2   information.

11:15:11   3          MS. PHILLIPS:  Assumes facts not in

11:15:11   4   evidence.

11:15:12   5          THE WITNESS:  I don't recall the -- who did

11:15:14   6   the final review.

11:15:16   7          MR. PICKETT:  Q.  Were you satisfied with

11:15:17   8   the new model agreement at the end?

11:15:22   9          MR. McDONELL:  Vague.

11:15:23  10          MS. PHILLIPS:  Objection.  Work product.

11:15:24  11          MR. McDONELL:  Instruct you not not to

11:15:25  12   answer.

11:15:26  13          MR. PICKETT:  Q.  Who approved the final

11:15:27  14   work product?

11:15:28  15          MR. McDONELL:  Asked and answered.

11:15:29  16          MR. PICKETT:  Q.  Who?

11:15:29  17       A.  I don't recall.  I don't recall if I was

11:15:31  18   the final or if it went to somebody else.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 109

12:52:43   4          THE WITNESS:  I don't know.  As I read it,

12:52:45   5   it doesn't -- I don't remember doing it, I don't

12:52:47   6   remember any thinking about it.

12:52:50   7          MR. PICKETT:  Q.  Do you deny that you were

12:52:52   8   telling Waste Management that it was to their

12:52:57   9   advantage to provide access to software?

12:53:01  10          MR. McDONELL:  Vague and ambiguous, lack of

12:53:02  11   foundation, asked and answered.

12:53:05  12          THE WITNESS:  I don't recall if I drafted

12:53:09  13   this, first of all.  And second of all, as I read

12:53:13  14   this, I don't believe it coincides with what you

12:53:16  15   just concluded.

12:53:17  16          MR. PICKETT:  Q.  Why not?

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 111

12:54:45  1            THE WITNESS:  That's not how I read the
12:54:46  2    "you don't want us accessing."
12:54:49  3            MR. PICKETT:  Q.  How did you read it?
12:54:51  4            MR. McDONELL:  Same objections and same
12:54:52  5    instruction to you not to disclose privileged
12:54:55  6    information.
12:55:00  7            THE WITNESS:  I feel like I'm going into
12:55:01  8    where I'm drawing legal conclusions as I interpret
12:55:04  9    this.
12:55:05  10           MR. McDONELL:  Okay.  So I instruct you not
12:55:07  11   to disclose your mental legal analysis.
12:55:10  12           MR. PICKETT:  Q.  Do you recall other
12:55:11  13   instances in which SAP told TomorrowNow prospective
12:55:19  14   customers that it was to their advantage to allow
12:55:25  15   access to software?
12:55:28  16           MR. McDONELL:  Lack of foundation, calls
12:55:29  17   for speculation.
12:55:31  18           THE WITNESS:  I don't.
12:55:34  19           MR. PICKETT:  Q.  Let's turn to page 5 of
12:55:35  20   the document.
12:55:55  21           Under -- and this is -- actually, if you go
12:56:03  22   back to page 4, you'll see the title is, paragraph
12:56:06  23   9, "Indemnity."
12:56:07  24       A.  Yes.
12:56:08  25       Q.  And that goes on for several paragraphs.

Page 112

12:56:10   1   Do you see that?

12:56:11   2        A.  I do.

12:56:14   3        Q.  There's a bracket right after the title

12:56:16   4   which begins page 5 of the agreement:  We do not

12:56:20   5   have access to the terms of the PeopleSoft license.

12:56:22   6   We therefore need this protection.

12:56:24   7            Were those your words?

12:56:25   8        A.  I don't know.

12:56:26   9        Q.  Were they SAP or TomorrowNow words?

12:56:30  10        A.  I --

12:56:30  11            MR. McDONELL:  Lack of foundation, calls

12:56:31  12   for speculation.

12:56:32  13            Don't disclose privileged information.

12:56:35  14            THE WITNESS:  I can't tell from this

12:56:38  15   redline who said it.

12:56:43  16            MR. PICKETT:  Q.  Well, this was a redline

12:56:45  17   that you sent to their outside counsel for purposes

12:56:49  18   of negotiating the agreement.  True?

12:56:52  19        A.  Yes.

SCOTT TRAINOR    October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 113

12:57:20  6          MR. PICKETT:  Q.  Now, is it true that you

12:57:23  7     did not have access to the terms of PeopleSoft

12:57:26  8     licenses?

12:57:29  9          A.  Yes.

12:57:30 10          Q.  You had worked with them for some time when

12:57:34 11     you worked as an attorney for PeopleSoft.   True?

12:57:38 12          A.  True.

12:57:38 13          Q.  And so did you compartmentalize that --

12:57:44 14     your experience?

12:57:46 15          MR. McDONELL:  Calls for mental impressions

12:57:48 16     of an attorney.  I'll instruct you not to answer on

12:57:52 17     work product grounds.

12:57:53 18          MR. PICKETT:  Q.  Did you take any steps to

12:57:55 19     avoid relying on your memory of the PeopleSoft

12:57:57 20     licenses in negotiating the terms of these licenses

12:58:01 21     with TomorrowNow customers?

12:58:03 22          MR. McDONELL:  Same objection, same

12:58:04 23     instruction not to answer.

12:58:08 24          MR. PICKETT:  Q.  If you take a look at

12:58:09 25     paragraph 9A of the agreement, "TomorrowNow

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 114

12:58:11  1    Indemnity," there's a bracket that states:  This

12:58:14  2    will need to be different from the license.  Our

12:58:17  3    rights to use the PeopleSoft software come entirely

12:58:20  4    by way of the Waste Management license with

12:58:23  5    PeopleSoft.

12:58:24  6            Is it true that you were conveying to Waste

12:58:26  7    Management the position that TomorrowNow's rights to

12:58:30  8    use the PeopleSoft software come entirely by way of

12:58:34  9    the Waste Management license with PeopleSoft?

12:58:37  10           MR. McDONELL:  The document speaks for

12:58:38  11   itself.

12:58:39  12           THE WITNESS:  I don't recall drafting this.

12:58:42  13   However, that -- what you recited is what the

12:58:45  14   document represents, yes.

12:58:47  15           MR. PICKETT:  Q.  Was that SAP's position?

12:58:51  16           MR. McDONELL:  Document speaks for itself.

12:58:54  17           THE WITNESS:  Was that --

12:58:57  18           MR. McDONELL:  By position, do you mean,

12:58:58  19   was that what SAP conveyed to the customer?

12:59:01  20           MR. PICKETT:  Q.  Yes.  Was that your

12:59:03  21   position to the customer?

12:59:07  22      A.  It appears -- yes, it appears that in this

12:59:10  23   document, that's the position we took.

12:59:11  24      Q.  Was that a true statement so far as you

12:59:13  25   knew?

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 115

| | | |
|---|---|---|
| 12:59:15 | 1 | MR. McDONELL:  I have -- hold on for a |
| 12:59:17 | 2 | second. |
| 12:59:24 | 3 | Calls for a legal conclusion and legal |
| 12:59:26 | 4 | analysis.  I'll instruct you not to answer. |
| 12:59:30 | 5 | MR. PICKETT:  Q.  So you can't tell me |
| 12:59:31 | 6 | whether it's true or not? |
| 12:59:32 | 7 | MR. McDONELL:  I've instructed you not to |
| 12:59:34 | 8 | answer on grounds of work product.  You're asking |
| 12:59:36 | 9 | him to sit here and do legal analysis. |
| 12:59:39 | 10 | MR. PICKETT:  Q.  To your knowledge, did |
| 12:59:40 | 11 | SAP or TomorrowNow ever misrepresent facts to |
| 12:59:43 | 12 | customers during negotiation of terms? |
| 12:59:45 | 13 | MR. McDONELL:  I instruct you not to |
| 12:59:46 | 14 | answer.  It's argumentative, calling for legal |
| 12:59:50 | 15 | conclusions and work product and potential |
| 12:59:53 | 16 | attorney-client.  And it's argumentative.  I've |
| 13:00:00 | 17 | already said that. |
| 13:00:05 | 18 | MR. PICKETT:  You probably think it's |
| 13:00:06 | 19 | argumentative. |
| 13:00:07 | 20 | MR. McDONELL:  It's overbroad. |
| 13:00:27 | 21 | MR. PICKETT:  Q.  Did SAP or TomorrowNow |
| 13:00:29 | 22 | take any steps to determine whether a particular |
| 13:00:33 | 23 | customer's allowance of access to software |
| 13:00:38 | 24 | constituted copyright infringement? |
| 13:00:42 | 25 | MR. McDONELL:  Instruct you not to answer |

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 116

13:00:43  1   on grounds of legal -- privilege and work product.

13:00:46  2          MR. PICKETT:  It's take any steps.  It's

13:00:48  3   not what they did.

13:00:51  4          MR. McDONELL:  Stand by my instruction.

13:00:56  5          MR. PICKETT:  Q.  Did TomorrowNow or SAP

13:00:59  6   ever analyze in connection with a negotiation of a

13:01:01  7   contract the general topic of a customer's rights to

13:01:06  8   provide access to software?

13:01:08  9          MR. McDONELL:  Instruct you not to answer

13:01:09  10  on the grounds of attorney-client privilege and work

13:01:10  11  product.

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 129

13:17:27 20            MR. PICKETT:  Q.  Who is Spencer Phillips?

13:17:29 21       A.  Spencer was an account executive,

13:17:32 22   salesperson.

Page 132

13:20:48 22          MR. PICKETT:  Q.  Did you have access to a

13:20:51 23    PeopleSoft software license agreement in 2005?

13:20:56 24          A.  I --

13:20:57 25          MR. McDONELL:  Asked and answered.

Page 133

13:20:57  1            THE WITNESS:  I did not.

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 136

13:23:37   3            MR. PICKETT:  Q.  You understand that you

13:23:38   4       have certain ethical obligations as an attorney in

13:23:40   5       the State of California.  Correct?

13:23:42   6            MR. McDONELL:  Calls for a legal

13:23:42   7       conclusion.

13:23:43   8            THE WITNESS:  I do.

13:23:43   9            MR. PICKETT:  Q.  And you understood that

13:23:45  10       you have the obligation to keep information you

13:23:48  11       learned from a former -- a client strictly

13:23:51  12       confidential.  True?

13:23:52  13            MR. McDONELL:  Depends on the

13:23:53  14       circumstances.  It calls for a legal conclusion.

13:23:56  15       Object to the form of the question.

13:24:00  16            MS. PHILLIPS:  Overbroad.

13:24:01  17            THE WITNESS:  I do.

13:24:01  18            MR. PICKETT:  Q.  And if you revealed this

13:24:02  19       type of information to Mr. Phillips, that violated

13:24:06  20       your ethical obligation.  True?

13:24:09  21            MR. McDONELL:  Object to the form of the

13:24:09  22       question, and I'm going to instruct you not to

13:24:11  23       answer on the grounds of attorney work product and

13:24:13  24       privilege.

13:24:15  25            MR. PICKETT:  Q.  Is this information

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 137

13:24:16  1  confidential?

13:24:17  2          MR. McDONELL:  Vague and ambiguous,

13:24:18  3  overbroad, calls for a legal conclusion, calls for a

13:24:22  4  legal analysis by an attorney of a legal issue

13:24:24  5  collaterally related to the case.

13:24:27  6          I'm going to instruct you not to answer.

13:24:29  7          MR. PICKETT:  Q.  Is it private?  Is it

13:24:30  8  confidential?  That's not a privilege issue.

13:24:33  9          MR. McDONELL:  Same objections.  Same

13:24:34 10  instruction.

13:24:39 11          MR. PICKETT:  On what ground?

13:24:40 12          MR. McDONELL:  Privilege, work product.

Page 139

13:26:32   7                MR. PICKETT:   Q.   If you did convey it,

13:26:33   8     would you have felt comfortable conveying it, the

13:26:37   9     portion that I just read?

13:26:38   10               MR. McDONELL:   Instruct you not to answer.

13:26:39   11    Grounds of attorney-client, attorney work product.

13:26:41   12    It's unduly argumentative.   I object to the form of

13:26:45   13    the question.

SCOTT TRAINOR   October 13, 2009
HIGHLY  CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 151

13:59:55 25            MR. McDONELL:  Counsel, I've had a chance

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 152

13:59:57   1   to do a preliminary review of Exhibit 1683, which is

14:00:01   2   Bates numbers SAP-OR00677719 through -25.

14:00:09   3            I have reason to believe it was an

14:00:10   4   inadvertently produced privileged document, and

14:00:13   5   hereby exercise our right to claw it back.  We'll

14:00:17   6   give you a more detailed request in writing soon

14:00:20   7   with regard to that.

SCOTT TRAINOR   October 13, 2009
HIGHLY   CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 157

14:08:16   1          MR. PICKETT:   Q.   Do you recall that in the

14:08:17   2   latter part of 2005, you along with others conducted

14:08:22   3   training sessions for TomorrowNow?

14:08:26   4          MR. McDONELL:   Assumes facts not in

14:08:26   5   evidence.

14:08:28   6          THE WITNESS:   Yes.

14:08:30   7          MR. PICKETT:   Q.   And was a group of

14:08:33   8   slides, Power Point slides, prepared for that

14:08:36   9   purpose?

14:08:39   10         A.   They -- yes, they were.

Page 166

14:18:31   7   specific recollection of saying why exactly.

14:18:34   8            MR. PICKETT:  Q.  Well, generally, what did

14:18:36   9   you convey to them?

14:18:38  10            MR. McDONELL:  Overly broad, vague and

14:18:39  11   ambiguous.

14:18:40  12            THE WITNESS:  That we couldn't see the --

14:18:41  13   that we couldn't see the agreement, because -- yeah,

14:18:45  14   I guess -- I don't remember specifically saying it,

14:18:47  15   but we couldn't see the agreement because it was

14:18:49  16   arguably confidential.

14:18:57  17            MR. PICKETT:  Q.  Turning to Exhibit 1684,

14:19:00  18   page ending -861, under the indemnification

14:19:04  19   provision, it reads, "Key term -- no removing this."

14:19:10  20            Was that true, that this was a key term for

14:19:14  21   SAP, and it would not negotiate this term away?

14:19:19  22            MR. McDONELL:  Instruct not to answer on

14:19:20  23   the grounds of attorney-client and work product.

```
 1                    CERTIFICATE OF REPORTER

 2           I, HOLLY THUMAN, a Certified Shorthand

 3    Reporter, hereby certify that the witness in the

 4    foregoing deposition was by me duly sworn to tell

 5    the truth, the whole truth, and nothing but the

 6    truth in the within-entitled cause;

 7           That said deposition was taken down in

 8    shorthand by me, a disinterested person, at the time

 9    and place therein state, and that the testimony of

10    said witness was thereafter reduced to typewriting,

11    by computer, under my direction and supervision;

12           That before completion of the deposition review

13    of the transcript [X] was [] was not requested.  If

14    requested, any changes made by the deponent (and

15    provided to the reporter) during the period allowed

16    are appended hereto.

17           I further certify that I am not of counsel or

18    attorney for either or any of the parties to the

19    said deposition, nor in any way interested in the

20    event of this cause, and that I am not related to

21    any of the parties thereto.

22

23    DATED:   10·16·09

24    _____

              HOLLY THUMAN, CSR
25
```

176