# EXHIBIT AA

Dockets.Justia.com

# BINGHAM

Bree Hann
Direct Phone: 415.393.2958
Direct Fax:     415.393.2286
bree.hann@bingham.com

September 9, 2009

Scott Cowan
Jones Day
717 Texas
Suite 3300
Houston, Texas 77002-2712

**Via Email and U.S. Mail**

Dear Scott:

Per your request via email of September 2 and our phone call on September 4, this letter sets forth Oracle's positions regarding certain of Defendants' Responses to Oracle's Second and Third Sets of Requests for Admission ("RFAs"). The parties have already discussed these positions at length – including by my August 10 letter, on a meet and confer call on August 28, in Chad Russell's August 31 email, and again by phone on September 4 – but we agreed to provide you a further written statement to help move this discussion along even more efficiently. As we agreed on the September 4 call, both parties expect to have reached agreement by September 18 as to which issues can be addressed by amended requests or responses and which issues are ripe to present to Judge Laporte.

Also, as agreed on the September 4 call, we will present our positions categorically, as this makes the most sense for the parties to be able to organize their thoughts internally and to present these issues to Judge Laporte.

As a preliminary matter, and as we have repeatedly noted, many of these RFAs are necessary in part because Defendants have refused to cooperate with Oracle on a stipulation regarding TomorrowNow's delivery process, despite the Court's repeated urging. If Defendants do not wish to stipulate to general facts about that delivery process based on their designated Rule 30(b)(6) testimony, then Oracle must seek admissible evidence about individual fixes and updates through other available discovery devices. Defendants cannot refuse to provide discovery on both fronts. Oracle hopes Defendants will reconsider their approach to the RFAs, but will have no choice but to move to compel if they do not.

## I.     DEVELOPMENT PROCESS REQUESTS

As noted in my August 10 letter, which provided certain examples, and as discussed on the August 28 and September 4 calls, Oracle contests the sufficiency of Defendants' responses to RFAs 496-680 and requests that Defendants amend their responses to admit the extent to which the identified process steps occurred. Defendants' refusal to admit to these 185 RFAs (with the exception of partial admissions in response to requests 499, 503, 507, and 575) is not credible. These RFAs are built from Defendants' extensive Rule 30(b)(6) testimony about Defendants' fix delivery process, as well as documents,

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

415.393.2000
415.393.2286
bingham.com

September 9, 2009
Page 2

yet Defendants refuse to admit that certain steps in that process occurred even once in the history of TN's support delivery.  There can no longer be a dispute that these steps occurred for some minimum number of fixes or updates.

We understand from the meet and confer calls that Defendants have two primary concerns with these RFAs.  First, Defendants contend that Exhibit A lists only SAS master fix records, and not the actual fixes that were sent to customers.  Second, Defendants have problems with Oracle's definitions for "Develop," "Database," "PS_HOME," "Environment," "Generic Environment," and "extended support environments."  None of these concerns is valid.

First, TN employees regularly and unambiguously referred to the updates delivered to customers by the names listed on Exhibit A.  Indeed, as the RFAs state, Exhibit A is Deposition Exhibit 913, which Defendants' witness readily agreed was a list of bundles "sent out" to customers:

> Q.  All right. . . . Looking at [Exhibit 913], does it appear to you to be a --
> a complete listing of the HRMS payroll bundles that were sent
> out, starting with the first one, 2002E-702C and ending with,
> in the end of the last column, TN-PY08 June?
> MS. LEE:  Objection, lack of foundation.
> A.  I don't know about the two, two Es.  The commercial,
> yes.  But the other two, I'm not sure.
> …
> Q.  Okay.  And is TN -- looking at the end of this list,
> then, the ones that are listed for '08, do you recognize those
> as the three payroll bundles that were sent out in 2008, in
> January, March and June?
> A.  Sure, yes.
> Q.  Now, is it accurate to say that the bundles that
> start with a year, 2002 through 2005, are retrofit bundles?
> A.  I think so, yes.
> Q.  And the ones that begin with the TN are critical
> support bundles?
> A.  Yes.
> Deposition of Catherine Hyde, February 12, 2009, at 150:9-20; *id.* at 152:13-23.

Second, Defendants must admit as much of any request as they can in good faith, even if they believe they must qualify an answer because a definition or an Exhibit used by Oracle to avoid unnecessary repetition is allegedly objectionable.  Fed. R. Civ. P. 36 ("Rule 36").  For example, if Defendants believe Oracle's use of Exhibit A, about which Defendants' witness has already testified, is inappropriate, then Defendants should qualify their response as appropriate, including by noting additional or alternate names by which the updates listed in Exhibit A were referred when delivered to customers.

Additionally, without accepting the validity of Defendants' objections, and to facilitate supplemental responses from Defendants without motion practice, Oracle will agree to

September 9, 2009
Page 3

<mark>modified definitions and/or seeks further clarification from Defendants as follows, which apply to both the Second and Third Sets of RFAs to the extent applicable:</mark>

- *Develop* – Oracle will agree to modify to: "Develop," "Developed," or other forms of the word shall mean to modify, alter, write, create, generate, code, or program any software file or other discrete unit of electronic data, including without limitation files consisting of code.

- *Database* – Oracle will agree to modify to: "Database" shall mean and include those components of a PeopleSoft Environment to which John Baugh was referring as SAP TN's Rule 30(b)(6) designee at his deposition on February 7, 2008 at pages 282:19-283:22 while discussing the "DB" field of BakTrak (as produced by Defendants at TN-OR06125330), and including PeopleSoft metadata, tables, indexes, PeopleCode, definitions, and application engine code.

- *PS_Home* – Oracle will agree to modify to: "PS_Home" shall mean and include those components of a PeopleSoft Environment to which John Baugh was referring as SAP TN's Rule 30(b)(6) designee at his deposition on February 7, 2008 at pages 284:6-285:4 and 14:22-17:10 while discussing the "NT" and "UNIX" fields of BakTrak (as produced by Defendants at TN-OR06125330) and his job responsibilities at SAP TN, and including application files, PeopleTools, COBOLs, SQRs, writer files, SQL scripts, DMS scripts, Crystal Report files, and configuration files.

- *Environment* – We do not understand Defendants' objection here, as explained on the August 28 call, and we believe the current definition is proper and fairly characterizes the evidence. Defendants have consistently referred to "individual environment components" as "environments," including by TN employees over time and during the course of this litigation. For instance, even in discovery responses served as late as May 22, 2009, Defendants rely on a spreadsheet (TN-OR06515456) with approximately 412 entries corresponding to various environment components but referred to simply by "Environment Name." Furthermore, as noted above, the Federal Rules require Defendants to admit as much of any request as they can in good faith, even if they must qualify an answer because they contend a definition used by Oracle to avoid unnecessary repetition is allegedly objectionable. Defendants cannot refuse to admit facts based on terminology they have already so pervasively adopted.

- *Generic Environment* and *Extended Support Environment* – As to the definition of "Generic Environment," we do not understand Defendants' objection here, and we believe the current definition is proper and fairly characterizes the evidence. Defendants have consistently referred to environments "named without reference to any specific Customer" as "generic," including by TN employees over time and during the course of this

September 9, 2009
Page 4

litigation.  *See, e.g.*, Deposition of John Baugh pursuant to Rule 30(b)(6),
February 6-7, 2008, at 27:14-31:5; *id.* at 43:17-45:8.  Furthermore,
Defendants' objection to including HR751CSS as a "Generic Environment" is
particularly inappropriate, as that is precisely what TN's Rule 30(b)(6)
witness has said that it was:

> Q.  Any other databases that you asked her
> about other than the DAT databases?
> A.  We discussed one database that has a
> generic name.
> Q.  Which database is that?
> A.  It's the HR751CSS database.
> …
> Q.  So this is a continuing example of using
> a generic environment to support multiple customers;
> is that right?
> A.  Yes.
> Q.  Do you know whose software was used to
> create HR751CSS?
> A.  No. (*Id.* at 43:17-45:8)

Similarly, as we stated on the August 28 call, the definition of "extended
support environment" (as defined in RFAs 508-511) is proper and fairly
characterizes the evidence.  Defendants cannot now deny that TN maintained
certain environments by release without regard to which customer had
provided the software used to build the environment.  There is voluminous
testimony by Defendants that TN used its extended support environments to
support multiple customers without knowing which customer provided the
original CDs.  *See, e.g., id.* at  18:2-18; Deposition of Catherine Hyde
pursuant to Rule 30(b)(6), April 1-2, 2008, at 54:25-57:20.  Defendants cannot
refuse to admit facts which have been so clearly established.  Furthermore, it
is entirely appropriate for Oracle to use a defined term such as "extended
support environment" to avoid needless repetition throughout numerous
RFAs.

Despite Defendants' objections being improper, and reserving its rights,
Oracle will nevertheless agree to address Defendants' concern about the
underlying definitions as follows:

- Defining "Generic Environment" to mean "any Local Environment
  that was both named without reference to any specific Customer
  and used to support more than one customer";

- For RFAs 508-511, replacing the text "using Local Environments
  maintained by TN on a release-by-release basis (so-called
  'extended support environments'), without regard to the Customer

September 9, 2009
Page 5

from whom the CDs used to build the Local Environments were acquired" with "using Generic Environments";

- For RFAs 512 et seq., replacing the text "'extended support environment' (as the term is used in Requests Nos. 508-511)" with "Generic Environment."

Subject to those modifications, Oracle requests that Defendants admit or deny these RFAs as appropriate.

## II. ACCESS TO CUSTOMER CONNECTION

Oracle's position as to these RFAs (223-235) remains as set out in my August 10 letter and as discussed on the August 28 call. Oracle is not required to identify by Bates number or other reference the tools or programs to which it refers. Either SAP accessed Customer Connection to develop a tool known as, for example, Solution Saver, or it did not, and Rule 36 requires Defendants to make a "reasonable inquiry" to determine such information. As noted on the August 28 call, "Downloading scripts" (RFAs 225-226) may include Solution Saver or Update Saver, but may also be broader to the extent TomorrowNow had or used downloading scripts by other names (or no names), or to the extent Defendants would contend that Solution Saver or Update Saver are not downloading scripts. Moreover, in addition to the ample evidence already in the case at the time Defendants responded to these RFAs, we note that Mark DeLing further confirmed at deposition on August 27 that TN personnel used customers' credentials to develop and test Titan. *See, e.g.*, Deposition of Mark DeLing, August 27, 2009, at 31:10-32:6. For all of these reasons, it is inappropriate for Defendants to limit their substantive responses by admitting only to having "accessed Customer Connection for certain purposes," and Oracle requests that Defendants amend their responses accordingly.

## III. REGISTERED WORKS

As discussed on the August 28 call, Oracle takes issue with Defendants' objections to RFAs 236-478. Defendants generally object to these RFAs as calling for a "conclusion of law" and calling for an expert opinion. Defendants further object to the extent Oracle has not identified certain information about material covered by the Registered Works. None of these objections is proper. First, Rule 36 explicitly permits inquiry relating to "the application of law to fact." Therefore, Defendants have no basis for their "conclusion of law" objection. Second, Oracle is aware of no basis for Defendants' "expert opinion" objection, and regardless, Oracle is entitled to such "expert opinion" at this stage of the case, at least to the extent Defendants intend to rely on any such opinions in defense of Oracle's claims. Finally, Oracle believes it has provided all information Defendants need to "fairly respond to the substance" of these RFAs, and Defendants must specifically identify what information it believes Oracle has not produced so such issues can be addressed.

For all of these reasons, Defendants cannot deny these RFAs on the basis of these objections and Oracle requests they be amended accordingly. As stated, we discussed

September 9, 2009
Page 6

these issues in detail on the August 28 call and Defendants indicated they would further consult with copyright experts but had not done so as of the September 4 call.  We expect Defendants will be able to address any further concerns in detail in their next communication.

## IV.      CUSTOMER CONNECTION

As discussed in detail on the August 28 call, RFAs 681-685 and 691-695 ask Defendants to admit that they did not make certain communications to customers.  Defendants refuse to admit or deny these requests, stating that to do so would "result in the admission of express or implied facts that are disputed by Defendants."  This response is improper.  Defendants are simply being asked to admit or deny making the communications, without regard to any other alleged "express or implied facts," and Rule 36 requires Defendants to "fairly respond to the substance" of these RFAs.

Despite Defendants' objections being improper, and reserving its rights, Oracle will nevertheless agree to address Defendants' concern by modifying these RFAs as follows:

- For RFAs 681-685, replacing the text "disclosed" with "stated";

- For RFAs 691-695, replacing the text "if it had known" with "if it had believed."

Subject to those modifications, Oracle requests that Defendants admit or deny these RFAs as appropriate.

## V.      EXHIBIT D

As discussed on the August 28 call, and reiterated on the September 4 call, Oracle takes issue with Defendants' objections to and denials of RFAs 12-50 in Oracle's Third Set.  These RFAs refer to Exhibit D, which lists files from Defendants' MAIL03 production.  Defendants object to certain of these RFAs as calling for a "conclusion of law."  This objection is improper for reasons already discussed in Section III above.  Defendants' remaining substantive objection, based on both their responses and the meet and confer calls, appears to be burden, which is an improper objection under these circumstances.  First, as we discussed on the August 28 and September 4 calls, Rule 36 requires Defendants to admit each of these RFAs to the extent they are able to do so after a good faith reasonable inquiry.  "[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Rule 36.  Defendants instead improperly make no attempt to admit to virtually any part of these RFAs.

Furthermore, the "burden" should not be nearly as significant as Defendants have asserted.  Based on the facts in the record, we believe Defendants know, for instance, whether all files, or all types of files, in certain updates were developed using a local environment.  For such updates, Defendants would not need to treat every file in the update independently and/or perform the allegedly painstaking analysis they have described in meet and confer.  Finally, and as noted in the introduction above, it is

September 9, 2009
Page 7

Defendants' unwillingness to agree to a far less burdensome stipulation that has necessitated these RFAs. Oracle is entitled to admissible evidence related to these facts and Defendants cannot refuse both options with blanket denials. Oracle requests that Defendants either agree to amend their responses to these RFAs to comply with the requirements of Rule 36 or describe in as much detail as possible the inquiry made as to each RFA and the reasons the information available is insufficient to enable Defendants to answer any part of these RFAs denied on that basis.

## VI.      EXHIBIT C

Oracle also takes issue with Defendants' responses to RFAs 6 and 11 in Oracle's Third Set, both of which seek admissible evidence regarding the delivery to specific customers of fixes and objects found on MAIL03. Defendants improperly limit their responses by stating only that some materials on MAIL03 were copied to WEB01, without confirming whether any fixes were sent to customers via other delivery mechanisms. This arbitrary limitation does not "fairly respond to the substance" of these requests as required by Rule 36. Nor does Defendants' objection to the phrase "was sent to" excuse Defendants from their obligation under Rule 36 to admit as much of any request as they can in good faith, even if they must qualify an answer because they contend that a particular phrase is allegedly objectionable.

There is voluminous evidence in the record that fixes were physically delivered to customers, including but not limited to the "Shipping Summary" portions of SAS. There is voluminous evidence in the record that fixes were e-mailed directly to customers, including but not limited to communications referenced in the "Client Shipment Emails" portions of SAS. Defendants must admit as much of RFAs 6 and 11 as they can in good faith, including by reviewing SAS and other information available to them. Oracle requests that Defendants amend their responses to these RFAs to comply with the requirements of Rule 36.

## VII.     ANDREW NELSON'S EMPLOYMENT STATUS

Our position regarding RFAs 162 and 163 remains as stated in my August 10 letter and we request Defendants amend their responses appropriately.

## VIII.    DEFINITION OF "DOWNLOAD"

As discussed on the September 4 call, Defendants will - but have not yet – provide clarification regarding their objection to the definition of download. Oracle agrees that these RFAs are directed at downloading from Customer Connection and not from other sites for the PeopleSoft and JDE product lines – particularly certain Oracle "ftp" sites and the "e-Delivery" site. However, as confirmed by Defendants on the September 4 call, it is only the act of downloading limited by this agreement, and not the subsequent copying or use of any such downloaded materials which may have, for instance, been used to build or fix-master SAP TN local environments. As Defendants indicated on the call, Oracle would not have been receiving nearly the volume of production materials it has

.

September 9, 2009
Page 8

thus far if such subsequent copying and use was not relevant. Please confirm this understanding in writing.

Furthermore, this limitation is subject to two more understandings for which we request confirmation. First, if Defendants agree that downloading PeopleSoft and JDE materials from the e-Delivery or "ftp" sites is not part of these RFAs, then Defendants may not introduce evidence of such downloading in defense of any of Oracle's claims. Second, this limitation would obviously not apply to the Siebel and Oracle Database allegations, which implicate SupportWeb and Metalink. We expect the parties to further discuss any relevance issues related to those product lines in relation to further and separate discovery requests. Please confirm your understanding on these additional points.

## IX.   CONCLUSION

Oracle has offered the various modifications above based in part on the August 28 and September 4 calls, during which the parties both agreed that it made sense to attempt to address certain of these issues with modified requests to which Defendants would respond sooner than would be permitted if Oracle were forced to formally re-serve numerous and only slightly different RFAs. Defendants have also already had a significant extension to respond to these interrogatories, and Oracle is entitled to timely substantive answers well in advance of the December 4, 2009 discovery cutoff. Oracle therefore requests that any responses based on the proposed modifications above be served by September 29, 2009 so that we may address issues based on those responses at the next discovery conference.

Further, Oracle does not waive any rights with respect to any of the RFAs discussed above and explicitly reserves the right to move to compel further responses based on the requests as they were served on May 20, 2009.

Per the agreed timeline discussed on both meet and confer calls, please respond to this letter in writing as soon as possible, and preferably by the end of this week, so that the parties can be ready to present any outstanding issues to Judge Laporte in the next Joint Discovery Conference Statement.

Sincerely yours,

Bree Hann

cc (email only):        Jason McDonell
                        Elaine Wallace
                        Josh Fuchs
                        Jane Froyd
                        Geoff Howard
                        Holly House

September 9, 2009
Page 9


Zac Alinder
Jennifer Gloss

Bingham McCutchen LLP
bingham.com