# EXHIBIT C

PROCEEDINGS     February 13, 2008

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

BEFORE: CHARLES A. LEGGE, JUDGE (Ret.)

---oOo---

ORACLE CORPORATION, a Delaware )
corporation; ORACLE, USA, INC., )
a Colorado corporation, and )
ORACLE INTERNATIONAL )
CORPORATION, a California ) No. 07-CV-01658-MJJ
corporation, )
 )
          Plaintiffs, )
 )
vs. )
 )

SAP AG, a German corporation,
SAP AMERICA, INC., a Delaware
corporation, TOMORROWNOW, INC.,
a Texas corporation, and DOES
1-50, inclusive,

          Defendants.


HEARING IN RE DISCOVERY ISSUES


Wednesday, February 13, 2008

At:
                    JAMS
         2 Embarcadero Center, 14th Floor
            San Francisco, California


Reported by:
GEORGE SCHUMER, CSR 3326                         (406308)

PROCEEDINGS    February 13, 2008

Page 2

```
                APPEARANCES

For Plaintiffs:

    BINGHAM McCUTCHEN
    3 Embarcadero Center, 28th Floor
    San Francisco, California 94111
    By: GEOFFREY M. HOWARD, Attorney at Law
        BRIANA LYNN ROSENBAUM, Attorney at Law
        ZACHARY J. ALINDER, Attorney at Law
        BREE HANN, Attorney at Law
        DONN PICKETT, Attorney at Law
        HOLLY HOUSE, Attorney at Law
    415-393-2000
    {Geoff.howard@bingham.com}

    ORACLE
    500 Oracle Parkway
    Redwood Shores, California 94065
    BY: JENNIFER GLOSS, Senior Corporate Counsel
    650-506-8673
    {Jennifer.gloss@oracle.com}

For Defendants:

    JONES DAY
    555 California Street, 26th Floor
    San Francisco, California 94104
    415-626-3939
    By: MARTHA BOERSCH, Attorney at Law
    By: JASON S. McDONELL, Attorney at Law
    {Jmcdonell@jonesday.com}

    JONES DAY
    717 Texas, Suite 3300
    Houston, Texas 77002
    By: JOSHUA FUCHS, Attorney at Law
    By: SCOTT W. COWAN, Attorney at Law
    832-239-3939
    {Jlfuchs@jonesday.com}

    Also Present: Melissa Ornstil, JAMS case manager

                    ---
```

Page 3

1  FEBRUARY 13, 2008                    9:00 A.M.
2       JUDGE LEGGE: Thank you all for being here.
3  Before we go around and introduce ourselves, let me just
4  tell you about the facilities. Many of you have been here
5  before, and many of you have not.
6       Down the hallway is the entrance -- reception
7  area -- for the 14th Floor. The rest rooms are located
8  outside that reception door, and then they are around to
9  the right. And because this is a semi-private floor, you
10 have to get a code to get into the rest room. I'm about
11 to give you the code -- 94111 -- which is our zip code,
12 which will get you into the rest rooms, and I don't think
13 you'll have trouble remembering it, because as you go out
14 the reception door it is plastered on the inside of the
15 door.
16      Down in the reception area there's also tea and
17 coffee and soft drinks, and help yourselves to those
18 things; if you want to bring them in here you are
19 certainly welcome to do that.
20      We have a breakout room for each one of you, if
21 you need it. Put the Oracle people right across the
22 hallway in Room 19, and then we put the defense group in
23 Room 31, which is 10 or 20 feet down the hallway. That
24 should take care of us.
25      We are Wi-Fi'd on this floor, so if you want to

Page 4

1  use your laptops with external access, it should not be
2  any problem. If you need any more sophisticated business
3  facilities; assistance -- let me know; we have some people
4  upstairs who can help you out.
5       Let's begin by introducing ourselves. There are
6  a few of you I do know; there are many of you I do not
7  know, so if we just go around the table, and would you
8  identify yourselves, and what your role is?
9       MR. PICKETT: I'm Donn Pickett, Bingham
10 McCutchen.
11      MR. ALINDER: Zach Alinder, Bingham McCutchen.
12      MS. ROSENBAUM: Briana Rosenbaum, Bingham
13 McCutchen.
14      MS. HANN: Bree Hann, Bingham McCutchen.
15      MS. GLOSS: Jennifer Gloss, in house at Oracle.
16      MR. HOWARD: Geoff Howard, Bingham McCutchen.
17      MS. HOUSE: Holly House, Bingham McCutchen.
18      JUDGE LEGGE: And our court reporter, Mr.
19 Schumer.
20      MR. McDONELL: Jason McDonell, Jones Day, San
21 Francisco.
22      MS. BOERSCH: Martha Boersch, Jones Day, San
23 Francisco.
24      MR. FUCHS: Josh Fuchs, Jones Day, Houston.
25      MR. COWAN: Scott Cowan, Jones Day, Houston.

Page 5

1       MS. ORNSTIL: Melissa Ornstil, case manager.
2       JUDGE LEGGE: She's our case manager, in case
3  many of you have not met her. Many of you have already
4  talked to her, and others of you will do so in the future.
5       Let's start out with where we are.
6       I think it is a good thing to remind ourselves
7  what we're doing, and what my jurisdiction is. Now my
8  jurisdiction is, I believe, defined by the order which
9  Judge Jenkins issued on January 8, and my jurisdiction is
10 to hear all discovery disputes, and report and make
11 recommendations to Judge Jenkins regarding them.
12      So I'm not a decider; I'm a recommender -- which
13 means we've got to go through -- or I've got to go through
14 another process of writing down my conclusions, and
15 somehow getting them to Judge Jenkins, and then you
16 have -- what do you have -- how many days do you have to
17 object?
18      MR. McDONELL: I think whatever the statute
19 provides for, Your Honor.
20      JUDGE LEGGE: 53(g) -- Federal Rule of Civil
21 Procedure 53(g) will define it.
22      Then I also have jurisdiction to hear and report
23 regarding protective order problems. I don't see any of
24 those in the material you initially submitted to me, but
25 maybe I just missed it.

PROCEEDINGS     February 13, 2008

Page 6

1  MR. McDONELL: There's nothing in the written
2  materials. There is an issue -- we were hoping, if
3  there's a convenient time, to informally confer with
4  you -- in the hope you can informally cause us to agree.
5  We're close to agreement.
6  JUDGE LEGGE: I'll put that down on your agenda
7  for the end of today, when we break out and see where we
8  are.
9  So there's the jurisdiction. So you are now
10  making discovery motions, and you have done so by sending
11  me letters -- two letters, one from each side, dated
12  January 28, and then replies by each side dated February
13  7.
14  I have read those materials, and have gone
15  through them, and I think I understand about 90 percent of
16  it. There's probably about 10 percent I don't understand,
17  which I'm sure you will clarify as we go along.
18  Now I have not actually seen the actual discovery
19  requests and discovery responses. I was given a binder
20  this morning of Oracle's -- and I don't have anything from
21  defendants -- okay, thank you. But I'm still at the stage
22  of not having read or seen, even, the actual discovery
23  requests and the responses that were given.
24  I don't think that's fatal. In most discovery
25  disputes you can approach it and probably resolve it by

Page 7

1  reference to subject matters, and it is obviously what you
2  have done in your letters. And since that's the way you
3  started these for today, that's the way I'm going to have
4  to continue for today -- is talking about subject matters.
5  And it is okay with me to proceed that way. The
6  problem it poses is when I give you answers to those, my
7  answers are going to be by subject matters. And then
8  there may be another issue with the subject matter related
9  to specific questions, or specific requests for production
10  of documents. But that can be for a later day.
11  So I'm comfortable dealing with subject matters,
12  but it does carry that little inherent potential problem
13  that ruling by subject matter -- it may have to take a
14  second step and get down to specific interrogatories or
15  specific requests for information.
16  MR. HOWARD: Geoff Howard. If I may, briefly.
17  I have one point by way of update, but what Your
18  Honor just said -- I think both sides have attempted, for
19  ease of argument, to categorize by subject matter --
20  JUDGE LEGGE: I appreciate that.
21  MR. HOWARD: We have also referenced the specific
22  requests and responses that we're moving on, and I think
23  my view would be that it is likely to be most helpful if
24  we can ultimately deal with the specific requests and
25  responses that are at issue. Because I think, in original

Page 8

1  part, there may be more agreement than disagreement at the
2  subject matter level, but it is where you get into the
3  scope and depth of the request and responses that the
4  dispute exists.
5  JUDGE LEGGE: I understand that.
6  MR. HOWARD: By way of update, I wanted to
7  report, Your Honor, because we had our CMC with Judge
8  Jenkins yesterday, and he indicated he had not spoken to
9  you recently --
10  JUDGE LEGGE: I don't think I have talked with
11  him since he first called me last October or something.
12  MR. HOWARD: That's essentially what he said as
13  well.
14  He told us that the case would be reassigned as
15  early as this week, and that he would be off the bench --
16  he expected within about three weeks. So in terms of
17  recommendations, there will be, potentially, some
18  procedure that we'll go through to have our new assignment
19  at the court, and for the judge to receive your
20  recommendations.
21  JUDGE LEGGE: Okay, you don't know who that is
22  going to be.
23  MR. HOWARD: Don't know, but we expect to find
24  out perhaps this week. I think no later than the
25  beginning of next week.

Page 9

1  MR. McDONELL: May I comment on your comments and
2  Mr. Howard's?
3  JUDGE LEGGE: Sure.
4  MR. McDONELL: The way you are looking at things
5  is the way we were anticipating you would, and hoping you
6  would, and we have tried to group things by subject
7  matters -- in part because when you get into the blow by
8  blow, I'm afraid we're going to run out of time, frankly.
9  There are so many separate requests, many times
10  overlapping and sometimes confusing.
11  I think it would be very helpful to focus on
12  subject matters, and then to hope that your insights on
13  those subject matters can have a ripple effect that will
14  cause other things to get resolved.
15  JUDGE LEGGE: I think it also makes sense to
16  resolve most discovery disputes -- take away these first
17  ones -- on a generalist level, and then apply those
18  decisions down to specific things.
19  MR. McDONELL: I think the other point I think I
20  heard you make -- is something we endorse completely.
21  That is, this is likely to have stages to it, so it may be
22  because of the general nature of early rulings there will
23  be things that need to get clarified or enhanced later.
24  JUDGE LEGGE: All we can do is start working on
25  it. But I agree with the approach you have both taken of

3 (Pages 6 to 9)

PROCEEDINGS      February 13, 2008

Page 10

1  grouping things, and presenting it in your letters by
2  categories.
3      What I would like to do here is to make the first
4  two matters that are presented -- I see you've got some
5  electronics that you probably want to show me some things.
6  You certainly can do that whenever you want. But when we
7  get to the motions, I think the first things we would like
8  to deal with are the defendants' motions with respect to
9  the identification of the software and the support
10 materials -- as No. 1, and as No. 2, Oracle's motion to
11 deal with the further responses to their interrogatories.
12     Now the reason I -- and this is just me talking
13 here -- it seems to me the resolution of those matters are
14 going to go a very long way -- in fact, maybe almost all
15 the way -- in dealing with the basic liability issues,
16 that is, what was taken; what is protected. As I said,
17 what was taken; what was done with it; why or why not was
18 that taking improper under certain contractual or other
19 document standard.
20     If we can get those resolved, you've got, I
21 think, about all both sides need. Well, in the motion by
22 Oracle, what happened to it after it got down there, with
23 answers to all those, so we can get them resolved today or
24 shortly thereafter -- it seems to me you have the basic
25 liability information out from both sides.

Page 11

1      So that's the reason I would like you to proceed
2  that way.
3      MR. McDONELL: May I ask you a question about
4  that?
5      JUDGE LEGGE: Sure.
6      MR. McDONELL: There's one issue that is somewhat
7  different than all the other issues, and that's the issue
8  on plaintiffs' motion for grand jury material.
9      JUDGE LEGGE: I understand that.
10     MR. McDONELL: The only reason I raise that is
11 Ms. Boersch is here for that issue, and only that issue.
12 We can take these issues in any way you see fit, and that
13 is fine.
14     If you had any interest in taking that issue
15 first, we could allow Ms. Boersch to address that issue,
16 and then be excused. But we don't care; it doesn't really
17 matter.
18     Does it matter to you?
19     MS. BOERSCH: No.
20     JUDGE LEGGE: Are you running for a plane?
21     MS. BOERSCH: I wish I were waiting for a plane
22 to Paris, but no, I am not.
23     JUDGE LEGGE: If you don't mind, I would like to
24 proceed that way.
25     Any other general comments before we get started?

Page 12

1      MS. HOUSE: Do you want to start with the
2  plaintiffs' motion?
3      JUDGE LEGGE: No, I want to start with their
4  motion directed to you, to produce information about the
5  downloading. We will start with the defendants, and I
6  guess you have identified these as Requests For Production
7  of Documents 44 through 47, and Interrogatories 4 and 7.
8      Now I'm going to offer some comments based upon
9  what I see, and I think I see, in the papers.
10     That is, it seems to me, in reading the Oracle
11 response on Page 2 of their February 7 letter, that they
12 have -- the way I read it -- pretty much agreed to give
13 you everything. Now they, under Paragraph B on Page 2 --
14 second paragraph -- they are going to give you Internet
15 log files that recorded defendants' -- that's your --
16 access to and downloading from Oracle systems. And they
17 have produced those logs, they say.
18     And then in the last sentence they are telling
19 you: "Well, we're not even limiting it to the 69
20 customers. We're going to give you all of the remaining
21 logs."
22     It seems to me in the previous paragraph, that
23 is, under Paragraph A on Page 2, that they have already
24 agreed to produce you the product mapping information.
25 Now if I understand what that means, I think that means

Page 13

1  connecting the downloads to specific products -- I think.
2  Maybe I'm wrong in that what means. But they are offering
3  to give you that.
4      Then, when we get down to talking about the
5  contract files, it seems to me in the last full paragraph
6  on Page 2, they are, in essence, agreeing to give to
7  you -- not just for the 69, but all the customers -- the
8  relevant contracts -- which I guess would be license
9  agreements; subscription agreements; service agreements --
10 whatever might be a source of their putting limits on the
11 use of their IP. And there may be a whole bunch of other
12 documents that I don't know anything about, that do that,
13 but it seems to me they are willing to produce it.
14     If my reading of that is correct, then it seems
15 to me if they do what they say they are going to do, you
16 will have all the information on what was downloaded, on
17 how the download pertains to specific products, and on
18 how -- the source base from which either a judge or a jury
19 or somebody is going to decide that that downloading was
20 legal or illegal, under the documents that they are going
21 to send.
22     That's the first step in a liability case; seems
23 to me the most they have agreed to give you. I may be
24 wrong about the reading of that scope, but that seems to
25 me what is going on.

4 (Pages 10 to 13)

PROCEEDINGS    February 13, 2008

Page 14

1   MR. McDONELL: May I respond, Your Honor?
2   JUDGE LEGGE: Of course.
3   MR. McDONELL: First of all, let me tell you the
4   reason there are a number of us here is because various of
5   us have different levels of detail about some of these
6   issues. So with your permission, it may be that a number
7   of us speak to these issues.
8   JUDGE LEGGE: I have no problem with that.
9   MR. McDONELL: I interpret Oracle's response the
10  same way you do, in part which is they are reaching out,
11  and they are agreeing to produce more on this subject
12  matter than they had ever agreed to produce before.
13  And in particular, they are agreeing to
14  supplement their response to Interrogatory 7, in a way
15  which while they describe it fairly generally, we
16  interpret to mean they will give an answer that is clear
17  enough and sufficient enough to permit us to take the raw
18  data they give us, and determine which download files
19  relate to which customers, and which Oracle products those
20  customers have.
21  JUDGE LEGGE: That's what you call a mapping?
22  MR. McDONELL: The mapping. Critical data that
23  we need.
24  JUDGE LEGGE: Oracle -- I'm reading here --
25  "Oracle will also agree to further supplement its response

Page 15

1   to Interrogatory 7, to include a description of product
2   mapping information."
3   MR. McDONELL: That seems to be what they are
4   saying, and the proof of the pudding is in the eating of
5   it, and we'll see how well it works out.
6   JUDGE LEGGE: I understand.
7   MR. McDONELL: It is frustrating we had to get to
8   this point in order to get that from them, but here we
9   are, and that's progress. What I didn't understand, in
10  the way you do -- and maybe I'm mistaken: While they have
11  agreed from the outset to produce customers' contracts
12  between Oracle and its customers, for all of the
13  approximately 300 TomorrowNow customers -- I did not
14  understand them to agree that they would produce the
15  mapping information related to all of those. I thought
16  they were standing on their objection -- and maybe I'm
17  just misreading something.
18  JUDGE LEGGE: Wait a minute. We need mapping
19  information? Aren't the contracts self-evident on their
20  face, as to who they are between -- what customers?
21  MR. McDONELL: We know that part, but what you
22  then need to know is as to those customers, and those
23  products that those customers licensed from Oracle, what
24  software and support materials were each of those
25  customers entitled to get.

Page 16

1   That's the mapping -- connecting the customers --
2   JUDGE LEGGE: Won't the contract itself do that?
3   MR. McDONELL: No. At this point -- I'll ask Mr.
4   Cowan to speak. But before we get there, Your Honor, it
5   will be very helpful to us to get clarification from
6   counsel for Oracle whether, indeed, they do agree that
7   their offer to give mapping information extends to all
8   TomorrowNow customers. Because there's this dichotomy you
9   will see again and again, where TomorrowNow has had
10  approximately 300 customers; Oracle claims to have found
11  evidence of misconduct by defendants relating to about 69
12  of them.
13  JUDGE LEGGE: So far.
14  MR. McDONELL: So far.
15  So what they have persistently done is to try to
16  limit their discovery responses to those 69 customers,
17  while simultaneously asking defendants for discovery about
18  all 300. That's another debate.
19  But if what I'm hearing as your interpretation
20  is, in fact, correct -- that Oracle agrees now to give all
21  the mapping discovery for all 300 customers, that's
22  progress. So I would ask that we get that clarification.
23  JUDGE LEGGE: Sure. That's the way I read it.
24  MR. HOWARD: I'll speak for Oracle. Geoff
25  Howard.

Page 17

1   First of all, I believe it is clear, and I
2   believe Your Honor is clear, that we have a strong
3   disagreement in many areas over whether discovery from
4   Oracle is appropriate as to all TomorrowNow customers,
5   versus the 69 that Oracle has identified. I don't hear
6   that issue surfacing right now, except with respect to
7   what Mr. Macdonald just said, which is that we have
8   limited our discovery responses to the 69. And as Your
9   Honor indicated in your comments, that isn't true. We
10  have produced the log files as to all customers. We have
11  produced all log files. They are not censored in any way;
12  they include whatever they include, with respect to
13  whatever customers were employed.
14  We have agreed to produce all of the contracts
15  which indicate which products those customers were
16  licensed to, and that's with respect to all TomorrowNow
17  customers.
18  We have given them access to Customer Connection,
19  which is the web site that they accessed to download their
20  materials, and that includes all customers. And, to the
21  point, we have agreed to provide product mapping
22  information for all JD Edwards and PeopleSoft products, so
23  that it is not filtered by customers; it applies to all
24  customers and all products that they had.
25  And the reason that that's important is because

5 (Pages 14 to 17)

Page 18

1   with --
2         JUDGE LEGGE: Then I guess I don't know what
3   mapping means.
4         MR. HOWARD: Your Honor, we have a couple of
5   slides, and it may be helpful to just give this discussion
6   some context. And I'll show Your Honor what the mapping
7   is.
8         JUDGE LEGGE: I thought that this term "mapping"
9   meant connecting -- is connecting what was downloaded to
10  specific products.
11        MR. HOWARD: That is exactly what it does.
12        JUDGE LEGGE: I thought you were using the term a
13  little bit differently.
14        MR. HOWARD: I wasn't intending to, Your Honor.
15        So I want to show you the map, if it would be
16  helpful.
17        Go ahead, Zach. This is simply the log-in screen
18  for Customer Connection, where -- in this case TomorrowNow
19  entered a user name and a password.
20        This (indicating) is a different log-in screen,
21  through a different program -- Change Assistant -- but
22  again, where they enter a user ID and a password.
23        This (indicating), Your Honor, is using JD
24  Edwards as an example, and it shows the hierarchy of the
25  JD Edwards product. The product is JD Edwards, and the

Page 19

1   family is Enterprise 1, and there is another one. The
2   suite -- and this is where the mapping becomes
3   important -- in this example is Human Capital Management.
4   That's a suite that JD Edwards and Oracle licenses.
5   Within Human Capital Management there is a system code
6   attached. That system code is specific to Human Capital
7   Management, and in this example it is 07, and it is always
8   07. Every download for Human Capital has that system
9   code.
10        This (indicating) is looking at a particular
11  object -- a download, if you will, that was taken from
12  Customer Connection, and on Customer Connection you can
13  see that the system code 07 applies to this object. So
14  the only remaining question to determine whether the
15  person who downloaded this product is licensed to it is to
16  take that 07 system code, and to know that it applies to
17  Human Capital Management, and to look at their contract to
18  determine that they did or did not have Human Capital
19  Management.
20        What we have provided is that map. 07 applies to
21  US payroll, which rolls up to Human Capital Management.
22        JUDGE LEGGE: Pardon me a second.
23        Melissa, if you could pull the curtain? And
24  maybe turn off the top light. Because I'm getting quite a
25  bit of glare.

Page 20

1         MR. HOWARD: I have a copy of the slides, too,
2   Your Honor, if it would be helpful to have them in hard
3   copy.
4         So this is the mapping that you use to determine
5   whether a particular download -- in this case the object
6   that had the 07 system code -- is within the licensed
7   suite, Human Capital Management. And if you go to the
8   last slide -- this (indicating) is the contract.
9         This is the contract of the customer whose
10  credential was used to download that particular object for
11  payroll, and the contract indicates that there is no
12  license for that product. So taking the system code from
13  the download, looking at the map, and looking at the
14  contract, it is clear that the credentials of the customer
15  whose credentials were used -- is not licensed to that
16  download.
17        That's the information that we have given them,
18  in most instances, and will be additionally providing the
19  rest of it, which didn't exist in percipient form, that we
20  have had to generate in the response to Interrogatory 7.
21        JUDGE LEGGE: So by that methodology, then you
22  believe you have identified everything that was
23  downloaded, and given them access to the link of the
24  download to the products, and actually linked the download
25  to a contract.

Page 21

1         MR. HOWARD: Correct.
2         JUDGE LEGGE: And produced the contract.
3         MR. HOWARD: Yes.
4         JUDGE LEGGE: And you have done that, or are
5   going to do it, not just with respect to the 69, but with
6   respect to all 300.
7         MR. HOWARD: Yes. Because we have given them all
8   the -- yes. In other words, we're not limiting the
9   mapping to the products that we think the 69 downloaded.
10  We are giving the mapping to all of the JD Edwards and
11  PeopleSoft products.
12        JUDGE LEGGE: Do you think that solves our
13  problem?
14        MR. McDONELL: I would ask Mr. Cowan to comment.
15        MR. COWAN: The answer is it is progress, but
16  juxtaposed to what they are showing you, I need to walk
17  through, real quickly with you, the actual downloaded
18  files, and how they were stored and kept in TomorrowNow.
19        I actually have a copy of one of the hard drives
20  that's been produced to Oracle, that is an identical piece
21  of the file server on TomorrowNow, where these downloaded
22  items live. That way you can actually see how TomorrowNow
23  stored the stuff, and how it relates --
24        JUDGE LEGGE: Wait a minute. I'm more concerned
25  how they stored it.

PROCEEDINGS    February 13, 2008

Page 22

1  MR. COWAN: It is important for you to know --
2  JUDGE LEGGE: And whether they are giving you
3  what they detect to be the downloads. It seems to me
4  that's from their records, not yours.
5  MR. COWAN: I understand, but the issue comes
6  down to what is on TomorrowNow's system that both parties
7  will likely agree doesn't belong there.
8  As you may have seen, or from reading the
9  pleadings, the defendants, in answering the lawsuit,
10  acknowledge that there is some downloading that is in
11  excess of what the customers have indicated they are
12  licensed to. So the real issue is which of those
13  downloads there are. We know there is a group.
14  JUDGE LEGGE: Wait a minute. I was starting this
15  by taking all of the downloads, identifying the products,
16  and identifying the documents that's going to control
17  whether that downloading is proper or improper -- to be
18  the identification. I think what you are telling me is
19  maybe that's better done from your records.
20  MR. COWAN: I think you need a combination of
21  both, because you need the Oracle data that Mr. Howard has
22  just presented to you -- and we don't dispute any of the
23  things he just said, in terms of the type of data and what
24  it means.
25  Really, the issue is what data do they have in

Page 23

1  their possession that will speed the analysis of the
2  TomorrowNow downloaded files, to allow us to segregate
3  those things that our customers are rightfully entitled to
4  under their licenses, and those things that we both agree
5  they shouldn't have under their licenses.
6  But the idea -- the end game, if you will -- is
7  to get off of our systems those things that we both agree
8  shouldn't be there -- and to do that in the most
9  efficient, practical way.
10  JUDGE LEGGE: We're leaping ahead here a little
11  bit. Is that the end game, or also -- this is a question
12  in relation to your motion -- asking for information about
13  where, this, that or when. Not where it is now, but where
14  it went.
15  MR. HOWARD: Exactly right, Your Honor. What we
16  didn't know, when we filed the complaint -- is that they
17  had taken it, and taken it without a license. What we
18  didn't know, and still don't know, is what they did with
19  it. We're gradually starting to pry that information out,
20  but that is a major component of the interrogatory.
21  JUDGE LEGGE: So it is not going to be
22  satisfactory to you in this case to identify what was
23  taken -- and then a subset of that, what was taken
24  improperly, and then remedy -- get it off TN's database.
25  That's not going to be good enough.

Page 24

1  You are going to want to trace where it went, in
2  order to see whether there is some dollar liability there,
3  as TN used it or a customer used it. Is that right?
4  MR. HOWARD: Yes, it is, Your Honor. That's
5  exactly right.
6  MR. COWAN: I don't disagree with that, but part
7  of their relief is injunctive relief, to have us take that
8  back. If it still exists on the system, what we want to
9  do is to be able to get it off; it is step one.
10  Obviously, how the information was used: That
11  relates to another database of information, a subset of
12  what is said in the interrogatories, etc. But for the
13  system mapping, our focus, as movers on this motion to
14  compel, is: "Give us the data that we need to tie the
15  downloaded artifact to the licensed product." And what
16  Mr. Howard just walked you through is a critical step to
17  get to that.
18  We all agree that the system code number that was
19  on one of the previous slides -- the printouts -- if I can
20  refer to those, it might be easier.
21  If you will look here, Your Honor -- like I said,
22  I think we're in raging agreement on a lot of this.
23  JUDGE LEGGE: Sounds to me like you are.
24  MR. COWAN: If you look right here, on this
25  Enterprise 1 payroll ESU that says JJ 13072, and you go

Page 25

1  down where they have circled the object list, and the "07"
2  here, where it lists the system code -- I think everybody
3  agrees that that relates to that payroll component that
4  we're talking about.
5  And more importantly, if you look over in the
6  object identifier that's the other circle here -- the BO
7  702010 -- the second and third characters of that object
8  name are where the system code is embedded in the object
9  name.
10  Now the issue is -- and if you will take that for
11  a moment, and let me hopefully toggle over here --
12  Here (indicating) is a list of how they are kept.
13  JUDGE LEGGE: Now we're looking at your database;
14  not Oracle's.
15  MR. COWAN: Not Oracle's, but it is important to
16  show you where these --
17  JUDGE LEGGE: I just want to be sure I understand
18  what I'm reading.
19  MR. COWAN: This JJ 13702 is actually an
20  electronic file; actually an executable file. I can't
21  find that specific one, but I can give you an example.
22  This is how it is literally kept in the folder
23  structure of TomorrowNow. JDE delivered updates and
24  fixes; subfolder Merck; the 1 World software. So right
25  you see it kind of maps up with what Mr. Howard has told

7 (Pages 22 to 25)

Merrill Legal Solutions
(800) 869-9132

PROCEEDINGS     February 13, 2008

Page 26

1  you -- software, and now the ESU, because that's what this
2  (indicating) is -- an electronic software update.
3       So TomorrowNow kept them and said, "This is the
4  kind of thing that they download; electronic software,
5  Version 8.0," and for all of those you will see, over on
6  the other side -- here (indicating) is the little
7  executables, okay? So from TomorrowNow's perspective,
8  after they downloaded, all that's on their system is these
9  little executable files identified by this number.
10      JUDGE LEGGE: On your system.
11      MR. COWAN: On our system. So we know these were
12 downloaded in such a way it seems to be in excess of what
13 the customer told us they were licensed to. For each one
14 of these files there's a separate folder that has the same
15 name, but it has a dash here that has one piece of
16 information in it. I'll use the last one as an example.
17 It is this one here (indicating).
18      This looks remarkably similar to what you are
19 seeing on the fifth slide back, that you have in front of
20 you here, and this (indicating) is a piece of the web
21 page. But if you see here, this one (indicating) doesn't
22 just have one object -- this example has -- it has
23 multiple objects. And in this instance all of those
24 objects appear to have the same system code, 74.
25      Not every ESU is that way. Many of these ESU's

Page 27

1  have multiple objects embedded in them, and multiple
2  system codes.
3       So what Oracle has provided us is the link
4  between the system code and the licensed product. What
5  they haven't provided us is to tell us, without doing the
6  kind of analysis that Mr. Howard just suggested -- is that
7  this file -- this -- you see there's quite a few of them;
8  there's thousands of them -- and you expand that over
9  hundreds of customers, trying to do some of this manually
10 is next to impossible.
11      But this file -- PG 5208 -- to know how that
12 particular file, 5208, relates to a licensed product you
13 would have to go through and open every one of those
14 folders, for every file that had been downloaded, to look
15 at this page, to manually map it -- over thousands of
16 files; over hundreds of customers. You are talking
17 hundreds of thousands of instances -- to take the
18 information that they are producing to us to map this up.
19      What we are wanting is to say, "Tell us what you
20 contend PG 5208 and all of its other brethren" -- which
21 specific licensed products do those files relate to,
22 without having to do the manual mapping that he suggests.
23      They have given us the raw data, but what we want
24 is the cross-reference to do that. They should have that
25 in their systems. That's what this motion to compel is

Page 28

1  all about. We have tens of thousands of files. If they
2  give us that data, we can do that mapping electronically.
3       JUDGE LEGGE: You are disagreeing with them on
4  the degree of detail of the mapping information they would
5  give you.
6       MR. COWAN: Right. Because they have given it to
7  us at a point where I would concede, based on the
8  representations of counsel, and assuming that what they
9  produced to us says what Mr. Howard says it is -- and I
10 have no reason to doubt that -- that we can likely do it
11 manually. But you are talking several human beings
12 working several months to try to get to a point where
13 "Okay, the system code in these files maps up."
14      It is a very long, tedious manual process, that
15 doesn't get us progress in this case to get to that step
16 one.
17      JUDGE LEGGE: So what you want is mapping that
18 gets you down into the subfiles.
19      MR. COWAN: That's right. To where we don't have
20 to go open each one of those little folders.
21      JUDGE LEGGE: Is that do-able?
22      MR. HOWARD: Your Honor, I don't think it is, and
23 the reason I say that is because what they are really
24 asking to do is shift the burden to do this analysis.
25      When we did the analysis that led to the

Page 29

1  complaint, we drilled into these EXE files, and we looked
2  at the system codes, and we mapped them. And it is a
3  laborious process; it took months to do. What they are
4  asking us to do is suffer the consequences of the scope of
5  their illegal activity, taking thousands of these things,
6  and going back and doing their work for them.
7       I will share with Your Honor that all of the
8  downloads that are identified in the complaint, and that
9  were the basis of our analysis -- all of those downloads
10 are ESU's with a single system code in them. The reason
11 is that it is complicated to go look at multiple system
12 codes, and you do it exactly the way I showed. You look
13 at a system code; you look at where it maps; you look at
14 what the customer was entitled to.
15      Yes, it is hard work, but they have the tools to
16 do that analysis, just as we had the tools to do that
17 analysis. And if the only thing we're talking about is
18 getting the stuff off their system, we have provided them
19 with a proposed stipulation, and it tracks what I
20 understand they have agreed to do anyway, which is not use
21 these downloads in the course of their business.
22      And as long as we can agree to that stipulation,
23 we're getting far ahead of ourselves to start talking
24 about having to remove them from our systems. There's
25 more important things in this case that we ought to be

8 (Pages 26 to 29)

PROCEEDINGS    February 13, 2008

Page 30

1  focusing on, rather than them being able to take the
2  illegal stuff off their systems -- as long as they have
3  agreed and stipulated they are not going to be using them
4  for business purposes.
5       So there isn't more of a map, other than the one
6  that ties system codes to objects. Objects are in ESU's,
7  and ESU's sometimes do have more than one object.
8       MS. GLOSS: I will tell you our employees, in
9  preparing for the complaint, opened files and looked at
10 system codes. In doing the mapping they opened files and
11 looked at system codes very similar to the process Mr.
12 Cowan described.
13      MR. COWAN: May I respond?
14      JUDGE LEGGE: Yes.
15      MR. COWAN: To Mr. Howard's point that it is not
16 important to get these off our systems; we need to know
17 how they are used: Okay, if that's the immediate remedy
18 they seek, fine. But we still need to segregate which of
19 these downloaded items were properly downloaded, and which
20 ones were improperly downloaded. So we have to go through
21 the same process.
22      JUDGE LEGGE: You are saying that has to get to a
23 subfile level?
24      MR. COWAN: Yes, regardless. Because if we are
25 going to agree to not use these files on behalf of

Page 31

1  customers who downloaded them, we have to know what files
2  they are. So whatever the end game, if the end game is to
3  get them off of our system, or the end game is to find the
4  subset that shouldn't have been downloaded, and go from
5  there to figure out what we did with them --
6       JUDGE LEGGE: What is your electronic explanation
7  description of what you need? It is a map that relates
8  what? The subject code to the object code?
9       MR. COWAN: We need a map that specifically
10 relates the downloadable artifacts; the downloadable
11 files, to the licensed products.
12      JUDGE LEGGE: SubPG number.
13      MR. COWAN: Right. Which are the .exe and ESU
14 environment. Which licensed products did they relate to?
15 That's what we need.
16      MR. HOWARD: That's what we have provided. The
17 fact is, it is just a reality that some of those .exe's --
18 not ones we have based our complaint on, but some of them
19 have multiple system codes within them. That is what we
20 have provided.
21      We have provided a map so you can look at those
22 system codes and tie them to a product. You can't do it
23 for an EXE that has multiple system codes on an EXE basis.
24 You have to look at the subfiles and use the map to
25 connect the subfiles to the contract in the way that I

Page 32

1  described earlier.
2       MR. COWAN: In response to that, Your Honor, if
3  what Oracle is telling us today is if they had to go
4  through the same manual process I just described, that
5  means there is no easy way on Customer Connection to find
6  this information. We found that out ourselves when we got
7  access to Customer Connection.
8       Quite frankly, if there's no easy way on Customer
9  Connection to do it, there's no easy way for the customers
10 to decide -- knowing their own license rights -- which of
11 these ESU's relate.
12      JUDGE LEGGE: A substantive argument.
13      MR. COWAN: But that's the whole point. What
14 we're trying to do is get to at least a common ground,
15 where we then can focus discovery in this case as to which
16 are the downloaded files they claim.
17      I take them at their word that they went through
18 the same process, but we've got to have that data to be
19 able to move this case forward with respect to downloads.
20      JUDGE LEGGE: In English, what you want is a
21 mapping system which relates the subfiles, as I recall
22 them here, to the products, and to the contracts. Is that
23 right?
24      MR. COWAN: Correct.
25      JUDGE LEGGE: And you, left with the task, would

Page 33

1  have to do it, or engineers would have to do it, on a
2  file-by-file or subfile-by-subfile basis.
3       MR. COWAN: I know we would, and based on what
4  Oracle's counsel just said, that's exactly how we would
5  have to do it.
6       JUDGE LEGGE: Do you have, presently existing,
7  any mapping device or program or code which would
8  eliminate the necessity for doing it one by one?
9       MR. HOWARD: The answer to that, Your Honor, is:
10 "Not that we have been able to generate so far." We're
11 still working on it, because we have the same interest in
12 this that they do.
13      It wasn't our preference to limit the complaint
14 to ESU's with a single system code in them, because we
15 recognize that other ESU's were illegally downloaded that
16 happened to have more than one system code.
17      Customers know what products they are licensed
18 to; they know what system codes apply to the things they
19 are looking for.
20      JUDGE LEGGE: I would think so.
21      MR. HOWARD: So they are not going at it from
22 this reverse direction we're talking about now.
23      JUDGE LEGGE: We're starting with bulk, and
24 trying to break it down.
25      MR. HOWARD: Right. So if we had it, we would be

9 (Pages 30 to 33)

PROCEEDINGS     February 13, 2008

Page 34

1   giving it to them. We're working on it, but we don't have
2   something at this point that we can hand over, that will
3   solve -- that will do Mr. Cowan's work for him.
4       JUDGE LEGGE: You know you are going to hear the
5   same thing back again when we start talking about their
6   database.
7       MR. HOWARD: But the difference, Your Honor, is
8   here we have given them -- compiled as much as we can
9   compile.
10      JUDGE LEGGE: You are telling me you do not have
11  a present mapping system.
12      MR. HOWARD: Right.
13      JUDGE LEGGE: But if you were to answer -- I'm
14  putting words in your mouth; please tell me if I'm
15  wrong -- if you were to give them what they want, you
16  would have to go through each one of the subfiles one by
17  one, to produce the code connection or something. Is that
18  right?
19      MR. HOWARD: Yes, and indeed that's what we did
20  to file the complaint.
21      JUDGE LEGGE: I think that describes for me
22  adequately the problems. I'm not going to resolve it at
23  the moment, but then to get back to the more generics --
24  except for this mapping problem, that pretty well solves
25  the question of their producing for you the downloaded

Page 35

1   information, and connecting the downloaded information
2   product, and producing the documents that will determine
3   legality or illegality of the downloads.
4       MR. McDONELL: There are a couple of other
5   requests that go to the issue of legality or illegality of
6   the downloading that are among the issues we raised, and
7   they have responded to.
8       Should I turn to that, Your Honor?
9       JUDGE LEGGE: Well, quickly. Just fill me in;
10  I'm just trying for scope at the moment.
11      MR. McDONELL: That's why I'm raising it.
12  Request No. 45 of the document requests seeks all
13  documents relating to communications between Oracle and
14  any TomorrowNow customer concerning which software and
15  support materials the customer is entitled to download.
16      They have limited their response quite severely,
17  in at least two ways. First they limit it to only the 69
18  customers, and secondly, they've got some formula they
19  have come up with where they say they will produce
20  communications between Oracle's primary sales contact --
21  that must be the salesmen -- and the customer, concerning
22  that issue.
23      JUDGE LEGGE: Why do we need that? What do we
24  need that for?
25      MR. McDONELL: Let me give you an example.

Page 36

1       The customer agreements are far from clear; very
2   far from clear. At one point in the customer agreement --
3   some might say -- or some do say -- you can use a
4   third-party consultant to assist you in using Oracle's
5   products. So the devil is going to be in the details and
6   the legal analysis, and those will be, I'm sure, heavily
7   briefed legal issues about what the scope of those
8   agreements is.
9       Part of the evidence that will go into that
10  analysis is what has been Oracle's practice in reality,
11  with respect to permitting these.
12      JUDGE LEGGE: You are too far ahead. What we're
13  trying to determine is what was done. Okay? We're not at
14  the point yet of interpreting anything. We're going to
15  try to get on a database to get the information. Okay?
16      MR. McDONELL: I'll reserve my discussion of this
17  issue.
18      MR. COWAN: But I think in answer to your
19  question, Judge, is whether we get it ourselves, or
20  whether they get it to us, will that at least get us to
21  separating the wheat from the chaff on the downloaded
22  items? And I think the answer is "most likely."
23      Obviously, until we go through that exercise, we
24  don't know if the information they have given us allows us
25  to do that. But based on what Oracle's counsel has told

Page 37

1   us, depending on how you rule, whether we have to do it
2   ourselves, or whether they have to assist us in that
3   process, I think we are making progress toward figuring
4   out how to separate the downloaded items, between the ones
5   that should have been, and the ones that shouldn't have
6   been.
7       JUDGE LEGGE: Now assuming it is a perfect world,
8   and everything they agreed to produce has been produced;
9   it is all understandable; if you have to do the work; or I
10  recommend to Judge Jenkins you have to do the work --
11  whatever it is -- at that point in this case, looking at
12  the case as a whole, we have the information on what was
13  downloaded; we have the information on what products it
14  pertained to; we have the information, I guess, on what
15  customers; and we have the information that will determine
16  at some point by the trier of fact or the judge whether it
17  was illegal or legal under the licensing agreements; the
18  service agreements; whatever the -- the accounting
19  agreements -- the customers' agreements, I guess. For
20  that point.
21      Then, I think, the next point of inquiry in the
22  case is what happened to it when it got down -- which I
23  think then turns to Oracle's motion against the
24  defendants, pertaining to the answers to interrogatories.
25      MR. HOWARD: Before we get to that, Your Honor,

10 (Pages 34 to 37)

Page 38

1   may I offer one friendly amendment to your summary of what
2   we have?
3       JUDGE LEGGE: Sure.
4       MR. HOWARD: That is on the issue of whether we
5   have the information about what was downloaded. Because I
6   think Your Honor's reference was primarily to the logs
7   that Oracle is producing, that we have said, and that do
8   reflect, the downloads from the TomorrowNow IP address, to
9   TomorrowNow.
10      I just want to be clear that those logs only go
11  back to September of 2006. What we have now discovered,
12  and --
13      JUDGE LEGGE: A time problem?
14      MR. HOWARD: Right. So our records reflect a
15  certain number of downloads from the TomorrowNow IP
16  address, using a certain number of credentials. We
17  suspected, and have now confirmed, that downloading was
18  occurring years before those records began, and that
19  information is only to be found on the TomorrowNow
20  servers. It is only now being produced.
21      There are so many of them and the server is so
22  big, they had problems reconstructing it; producing it.
23  And it is still in the process of being produced.
24      We're going to have to analyze those. I think it
25  is part of what Mr. Cowan showed you. We're going to have

Page 39

1   to analyze to know prior to September what downloads were
2   taken, using which customers' credentials -- which it is
3   not clear that we would know.
4       JUDGE LEGGE: I wasn't aware we had a time
5   problem.
6       MR. HOWARD: I just wanted to give you the
7   boundary of what Oracle records reflect.
8       JUDGE LEGGE: Wait a minute. So with the time
9   issue, what have you done already? What date had you been
10  using, up until you came up with an identifying date that
11  you had to go back from?
12      MR. HOWARD: For discovery purposes, your
13  question is: What is our date for discovery cutoff?
14  January 1, 2004. And the parties have agreed on that
15  date, generally reserving their rights.
16      JUDGE LEGGE: You are now saying what? You've
17  got to go back further?
18      MR. HOWARD: I'm saying between January 1, 2004,
19  and September, 2006, Oracle doesn't have Internet logs
20  that show the downloading activity. That information only
21  resides on TomorrowNow's computer systems.
22      JUDGE LEGGE: September -- was filing the
23  complaint?
24      MR. HOWARD: No, those were the logs that existed
25  at the time that Oracle discovered the downloading

Page 40

1   activity.
2       JUDGE LEGGE: So your logs run from September,
3   2006 to date; right?
4       MR. HOWARD: Correct.
5       JUDGE LEGGE: And you have no logs for January 1,
6   2004, to September, 2006; right?
7       MR. HOWARD: Correct.
8       JUDGE LEGGE: What you are saying is that
9   download information, then, has got to come from them?
10      MR. HOWARD: Yes.
11      MR. COWAN: Your Honor, there's no dispute that
12  we're producing the files that are located on the server,
13  where those files were kept. The issue that Mr. Howard, I
14  think, is pointing out, is that is being done on a rolling
15  production basis because of the quantity of files
16  involved.
17      JUDGE LEGGE: But that is being done; it is not
18  in dispute.
19      MR. COWAN: No.
20      MR. HOWARD: They are producing it; it is a lot
21  of material, and it will take us some time to get through
22  it. That was the other piece of what was taken puzzled.
23      JUDGE LEGGE: Let's take a short break here,
24  before we get to the second point here. Let me say where
25  I hope we are, with respect to this second motion, which

Page 41

1   is Oracle's motion for further answers to interrogatories.
2       I guess it is here -- at this point -- where
3   defendants are saying, "It is on our database; we have
4   given you our database; we have given you" -- something; a
5   method to get into the database.
6       So let's start at that point. And what I want to
7   focus on, I guess primarily, is, you know, what have you
8   given them, to get into the database.
9       MR. McDONELL: Very well, Your Honor.
10      JUDGE LEGGE: You call it a user-friendly graphic
11  database.
12      MR. McDONELL: It will be demonstrated live, and
13  in living color.
14      JUDGE LEGGE: We'll take a break for 10 minutes.
15          (Recess, 10:00-10:14 a.m.)
16      JUDGE LEGGE: Let me back up a second, so we have
17  context, and you have context on my remarks.
18      The step analysis -- I'm going to assume we have
19  it all resolved what Oracle is going to produce, and we
20  have gone through it all, and the defendants -- both sides
21  now know what was downloaded; what customer, what
22  products, what contracts it may or may not have violated,
23  and it is now residing with TN. The next step is to find
24  out where it is, and where it went.
25      Now you, TN, have given a narrative answer to