# EXHIBIT E

BINGHAM McCUTCHEN LLP
CHRISTOPHER B. HOCKETT (SBN 121539)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
chris.hockett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No. 07-CV-1658 MJJ<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES** |

## RESPONSES AND OBJECTIONS TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in as much detail as possible Oracle's investigation of the activities alleged in the Complaint ("the investigation"), including the date the investigation began, the date it was completed, how the investigation was conducted, including any computer forensics tools or other software applications that were used, the sources of information, including documents reviewed and persons consulted, the results of the investigation, and the identities of all persons and entities involved in, or knowledgeable about, the investigation, including, for each person, their name, business address, job title (currently and at the time of the investigation), and role in the investigation, and for each entity, the name, business address, role in the investigation, and affiliation, if any, with Oracle.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to its General Objections, Oracle objects that its factual investigation, which has taken many Oracle employees months to conduct and is not yet complete, is too complex and detailed to describe in an Interrogatory Response. Oracle further objects that the Interrogatory is compound and actually consists of many Interrogatories. Oracle also objects that its investigation into the circumstances of defendants' intrusion into and theft from Oracle's systems is not yet complete. This Response does not reflect work done and analysis made by Oracle's experts. Oracle further objects to the extent the Interrogatory purports to require Oracle to create a compilation, abstract, or summary from business records that Oracle has already produced or will produce. Oracle further objects to the extent that this Interrogatory calls for information protected by the attorney-client or work product privileges.

Subject to and without waiver of these objections, Oracle responds as follows:

Beginning in fall 2006, members of Oracle's Product Support team led by Buffy Ransom observed unusual activity and behavior by some Customer Connection users. This behavior

included the use of inconsistent user IDs as well as unusual patterns of downloads. The Product Support team requested investigative assistance from the Global Information Security ("GIS") team, which assists in internal Oracle investigations relating to Oracle's computer systems. Other Product Support team members led by Paul Brook later discovered spikes in the number of Customer Connection users who responded that searches had not solved their problems. These spikes seemed to indicate unusually heavy activity on Customer Connection, as numerous download requests were being made at short intervals, separated only by seconds. In each instance, the Product Support teams requested investigative assistance from the GIS team.

To determine the source of the downloads, GIS personnel, principally Dr. Uwe Kohler and Marlene Veum, examined Oracle's internet and application server logs, including its reverse proxy, Siteminder, and application server logs. Certain of these logs record download requests made by users logged in to Customer Connection. The logs also record additional information, including in some cases the internet protocol address ("IP address") from which that request originated. By reviewing these server logs, Oracle determined that much of the download activity originated from one particular IP address, 209.189.228.98. As an experiment, Oracle shut down access to Customer Connection for that address; soon after, an essentially identical pattern of download requests began coming from another IP address, 209.189.228.126.

Every IP address has a registered owner. Oracle used the publicly-available WHOIS query/response protocol to determine the owner of the two IP addresses. Both are registered to SAP TN, headquartered in Bryan, Texas.

After identifying the involved IP addresses, Oracle searched its server logs for all publicly-known SAP TN IP addresses, including 209.189.228.98 and 209.189.228.126, using a start search date of September 2006 (and ending with a date shortly before Oracle filed its original complaint in this case). The search used by GIS extracted available information associated with the download requests originating from the SAP TN IP addresses. The resulting analysis revealed that of SAP TN's IP addresses, only 209.189.228.98 and 209.189.228.126 were used to connect to Customer Connection. The resulting reports showed all log entries originating from those two SAP TN IP addresses.

In addition to the IP address information noted above, the server logs and the reports created from them indicate when a download request is made from a particular IP address using a particular set of log-in credentials (user ID and password). In some cases, the logs also capture a company name, company ID, and identifying information related to the requested Software and Support Materials. The company ID field is constant – it is tied to the original log-in credentials for each specific customer. Using this field, Oracle can determine whose log-in credentials (*i.e.*, which customer) are being used from a particular IP address. If the user has supplied other information, for example by using the Change Assistant tool, the logs may reflect that additional information as well, such as the user name, telephone number, and email address inputted by the user.

Because each user ID and password used by SAP TN to log in to Customer Connection is connected to a specific customer account, and also to the requesting IP address, the log entries link the SAP TN requests to many different Oracle support customer accounts. From the data in the log entries, Oracle initially determined that SAP used log-in credentials of the following customers to access and download Software and Support Materials: Abbott Laboratories, Abitibi-Consolidated Inc., Bear, Stearns & Co., Berri Limited, Border Foods, Caterpillar Elphinstone, Distribution & Auto Service, Fuelserv Limited, Grupo Costamex, Helzberg Diamonds, Herbert Waldman, Honeywell International, Interbrew UK, Laird Plastics, Inc., Merck & Co., Metro Machine Corp., Mortice Kern Systems, Inc., National Manufacturing, NGC Management Limited, OCE-Technologies B.V., Ronis SA, Smithfield Foods, SPX Corporation, Stora Enso, Texas Association of School Boards, VSM Group AB, and Yazaki North America.

These same log entries, and other reports generated by Oracle's software, including Change Assistant, provide the specific identifiers for the individual Software and Support Materials requested at any given time, using the log-in credentials of any given customer, originating from any given IP address. Oracle analyzed these log entries and determined that, since at least September 2006, Customer Connection had received hundreds of thousands of requests for Software and Support Materials from SAP TN IP addresses. From the logs, Oracle identified the specific product identification information for these requests. The Product Support

team took this information and assessed for certain categories of downloads whether the customer whose credentials SAP TN used for a particular download had a right to that downloaded material.

During its analysis, Oracle also observed and concluded that SAP TN navigated the site and downloaded Software and Support Materials in unusual ways. For example, when a customer queries Customer Connection for knowledge solutions, the customer is prompted to respond whether the search results satisfied the customer's issue or not. When the user clicks the "no" response, Customer Connection takes that customer back to the initial query results. Thus, a long series of "nos" will take a customer through all of the available knowledge solutions responsive to a query. The logs demonstrate that SAP TN's knowledge solution searches were extremely rapid incremental searches, with the "user" repeatedly clicking the "no" response at the survey page. Oracle concluded that SAP TN users had probably employed an automatic search script to select "no" after every search response in order to most rapidly download all of the available knowledge solutions. Oracle further concluded that SAP TN users were able to access non-public materials, not accessible through Customer Connection's search functions, by apparently manually incrementing through URLs until non-public materials (such as proprietary internal documents) were visible.

In its review of the server logs, Oracle also observed that individuals understood to be former PeopleSoft employees, now working for SAP, appeared to have been involved in downloading Software and Support Materials from Customer Connection. For example, Oracle understands that Wade Walden, a former PeopleSoft employee, is now working for SAP TN. Oracle observed several instances in server log entries where a request originating from an SAP TN IP address included "Wade Walden" in the optional user-provided user name field.

In some cases, when a user has accessed Software and Support Materials through Change Assistant, the logs also capture the remote machine name being used by a logged-in user from a particular IP address to make the download request. Using this data, Oracle initially identified thirty-four unique SAP TN machine names logged in to Customer Connection from the SAP TN IP addresses, that were used to download Software and Support Materials from Customer

1  Connection.

2  After completing the analysis described above, the Product Support teams and others
3  took the resulting list of specific Software and Support Materials downloaded from an SAP TN
4  IP address at a given time and using the log-in credentials of a given customer. The Product
5  Support teams then led the effort to determine whether the customer whose log-in credentials
6  SAP TN used was licensed to download the Software and Support Materials SAP TN
7  downloaded in the name of that customer. To conduct this analysis, the Product Support teams
8  determined (1) whether that customer had an active, paid support contract with Oracle at the time
9  of the downloads by SAP TN that would permit that customer to download Software and
10 Support Materials from Customer Connection, and, if so, (2) whether the customer had the right
11 to all of the products downloaded by SAP TN using that customer's log-in credentials at the time
12 SAP TN did the downloading.

13 The Product Support teams coordinated the effort to analyze customer software license
14 and support contracts for the current and former Oracle support customers listed above, among
15 others. Members of Oracle's Critical Accounts team helped verify the license status for certain
16 of the downloaded Software and Support Materials. The teams determined whether a given
17 customer had an active, paid support contract, and, if so, for which products. They then
18 compared the Software and Support Materials downloaded using that customer's log-in
19 credentials with the products covered by the customer's license(s). In this way, they determined,
20 for each customer, which materials downloaded in the name of a particular customer were within
21 that customer's support rights and which materials were not.

22 The Product Support teams also researched whether a given customer had a known
23 connection to SAP TN, such as a customer that had told Oracle that it was moving to SAP TN or
24 a customer listed by SAP TN as a current customer on SAP TN's website,
25 http://www.tomorrownow.com.

26 Through this contract analysis, the Product Support and Critical Accounts teams
27 determined that SAP TN accessed Customer Connection on behalf of two types of Oracle
28 support customers: (1) former Oracle support customers who had cancelled all Oracle support to

1  migrate to SAP TN; and (2) active Oracle support customers who switched support for one or
2  more Oracle software applications to SAP TN, but maintained at least one valid support
3  agreement for other Oracle software applications. In comparing the timing of the SAP TN
4  downloads with the full or partial expiration dates of the customers' Oracle support contracts,
5  Oracle determined that the SAP TN downloads typically would increase sharply just before a
6  customer's support contract with Oracle expired.

7      For both types of customers, the analysis showed SAP TN had downloaded Software and
8  Support Materials from Customer Connection using the log-in credentials of customers that were
9  not licensed to take the downloaded materials. Oracle has not yet completed its investigation as
10  to the total scope of the unlicensed downloading, however, Oracle has identified, to date, more
11  than 10,000 of these improper and unlicensed downloads by SAP TN of Software and Support
12  Materials relating to hundreds of different software programs in Oracle's PeopleSoft and J.D.
13  Edwards brands of enterprise software applications.

14      In addition, in December 2006, Oracle developed a knowledge solution related to the
15  2007 Daylight Savings Time change in the United States (the "DST Solution"). From December
16  2006 through the first several months of 2007, Oracle fielded more than a thousand customer
17  service requests related to the early Daylight Savings Time change, and Oracle's DST Solution
18  helped resolve more than 750 of those service requests for its customers.

19      In late March 2007, Oracle noticed that SAP TN posted a "PeopleSoft Daylight Savings
20  Time solution" on its website. SAP TN's solution is substantially similar in total and in many
21  places identical to Oracle's DST Solution. SAP TN's version of the solution even includes some
22  minor errors that were in Oracle's original DST Solution, but were later corrected by Oracle in a
23  revised version after January 16, 2007. SAP TN's version bears an SAP TN logo in place of
24  Oracle's own logo and copyright notice. Oracle subsequently traced downloads of its solution to
25  SAP TN's IP address on January 8, 2007 and January 15, 2007. Oracle has registered its
26  copyrights in the original version of the DST Solution, as well as its later corrected version,
27  which SAP TN also downloaded three weeks before Oracle filed the original Complaint in this
28  action.

1  Oracle refers defendants to Customer Connection's server and network log files,
2  production of which is forthcoming.
3  Oracle identifies the following individuals involved in, or knowledgeable about, the
4  investigation, all of which may be contacted only through undersigned counsel. All individuals
5  are employees of Oracle unless otherwise indicated.
6  Edward Screven, Chief Corporate Architect. Mr. Screven's business address is ███
7  ███████████████████████████. Mr. Screven supervised and directed the
8  investigation.
9  Todd Barton, Vice President, Information Security. Mr. Barton's business address is
10 ███████████████████████████. Mr. Barton participated in early discussions
11 regarding the investigation and received occasional updates thereafter.
12 Dr. Uwe Kohler, Senior Director, Information Security – Compliance/Risk. Dr. Kohler's
13 business address is ███████████████████████. Dr. Kohler helped direct and
14 participated in the investigation.
15 Marlene Veum, Director, Information Security. Ms. Veum's business address is ███
16 ███████████████████████. Ms. Veum helped direct and participated in the
17 investigation.
18 Eric Veum, Senior Manager – Compliance/Risk. Mr. Veum's business address is ███
19 ███████████████████████. Mr. Veum participated in the investigation.
20 Steven Meert, Senior Manager – Compliance/Risk. Mr. Meert's business address is
21 ███████████████████████████████████████████████████████████
22 Mr. Meert participated in the investigation.
23 James Patrice, Vice President, Product Support. Mr. Patrice's business address is ███
24 ███████████████████████████. Mr. Patrice participated in the investigation.
25 Buffy Ransom, Senior Director, Enterprise One Support. Ms. Ransom's business address
26 is ███████████████████████████. Ms. Ransom helped direct and participated in the
27 investigation.
28 Tod Keifer, Senior Support Engineer. Mr. Keifer's business address is ███

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES

1  [REDACTED]. Mr. Keifer participated in the investigation.

2  Julie O'Shea, Principal Support Engineer. Ms. O'Shea's business address is [REDACTED]

3  [REDACTED]. Ms. O'Shea participated in the investigation.

4  Jason Rice, Principal Software Engineer. Mr. Rice's business address is [REDACTED]

5  [REDACTED]. Mr. Rice participated in the investigation.

6  Elizabeth Shippy, Business Analyst 4-Ops. Ms. Shippy's business address is [REDACTED]

7  [REDACTED]. Ms. Shippy participated in the investigation.

8  Paul Brook, Senior Director, Enterprise Support. Mr. Brook's business address is [REDACTED]

9  [REDACTED]. Mr. Brook participated in the investigation.

10  Sudhir Chilakapati, Senior Principal Support Engineer. Mr. Chilakapati's business

11  address is [REDACTED]. Mr. Chilakapati participated in the

12  investigation.

13  Sunder Subramanyan, Product Senior Principal Support Engineer. Mr. Subramanyan's

14  business address is [REDACTED]. Mr. Subramanyan participated in

15  the investigation.

16  Carlos Barradas, Senior Principal Critical Accounts Manager. Mr. Barradas's business

17  address is [REDACTED]. Mr. Barradas participated in the

18  investigation.

19  Lou Lopez, Director, Critical Accounts. Ms. Lopez's business address is [REDACTED]

20  [REDACTED]. Ms. Lopez participated in the investigation.

21  Annette Horan, Principal Critical Accounts Manager. Ms. Horan's business address is

22  [REDACTED]. Ms. Horan participated

23  in the investigation.

24  Robert Monahan, Director, Logistics and Procurement Product Strategy. Mr. Monahan's

25  address is [REDACTED]. Mr. Monahan participated in the

26  investigation.

27  Angela Enyeart, Director of Strategy – E1. Ms. Enyeart's address is [REDACTED]

28  [REDACTED]. Ms. Enyeart participated in the investigation.

PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES

Kem Butler, Product Strategy Director. Ms. Butler's address is ███████, ███████. Ms. Butler participated in the investigation.

Gordon Smith, Director, Database Technologies. Mr. Smith's address is ███████ ███████████████. Mr. Smith participated in the investigation.

Nina Bankar, formerly Manager for the Server Tools Support Team. Ms. Bankar's address is ██████████████████. Ms. Bankar participated in the investigation.

**INTERROGATORY NO. 2:**

## PROOF OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by U.S. Mail and Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following documents:

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF INTERROGATORIES**

[X] (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.

[X] (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

| | |
|---|---|
| Robert A. Mittelstaedt, Esq.<br>Jones Day<br>555 California Street<br>26th Floor<br>San Francisco, CA 94104<br>Tel: (415) 626.3939<br><br>ramittelstaedt@JonesDay.com | Tharan Gregory Lanier, Esq.<br>Jane L. Froyd, Esq.<br>Jones Day<br>1755 Embarcadero Road<br>Palo Alto, CA 94303<br>Tel: (650) 739-3939<br><br>tglanier@JonesDay.com<br>jfroyd@JonesDay.com |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on September 14, 2007, at San Francisco, California.

*Rosaleen Doran*
Rosaleen Doran