# EXHIBIT T

# BINGHAM

Donn P. Pickett
Direct Phone:   415.393.2082
Direct Fax:       415.393.2286
donn.pickett@bingham.com

February 25, 2008

**Via Hand Delivery**

**Contains Information Designated Confidential Pursuant to Protective Order**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center
San Francisco, CA 94111

Re:   *Oracle Corp., et al. v. SAP AG, et al.*: Oracle's Opposition to Defendants'
         Motion to Compel No. 2

## I.        INTRODUCTION

This case began because Oracle caught Defendants red-handed in the middle of stealing
copyrighted code from Oracle's Customer Connection support website.  The only subjects of
discovery sought by Defendants that are truly relevant to this case are the download logs
Oracle used to conduct its analysis of Defendants' theft, the customer contracts that confirm
the theft, and the various categories of damages discovery it has produced or agreed to
produce.

Yet, Defendants' appetite for ever increasing burdensome discovery against the victim of their
conduct is seemingly insatiable.  To date, in an effort to cooperate, Oracle has offered to
provide far more than is required.  It has voluntarily agreed to spend millions of dollars
collecting, reviewing and producing voluminous documents from 188 custodians relating to
the 69 customers whose credentials Oracle has so far established Defendants improperly used.
It has produced contract files for 350 TomorrowNow ("SAP TN") customers, not just these
initial 69.  It has produced detailed, highly sensitive causation and damages analyses, called
"At-Risk" Reports, relating to the same 350 customers.

In response, as they did in their first motion to compel, Defendants insist that Oracle must turn
the company upside down, and ferret through every document and email for *all* 69,000
employees relating to *all* products Oracle sells, and *all* customers it has.  The variety of
material Defendants seek reveals the blatant overbreadth of their discovery requests.  They
want gossip emails outside of any identified business purpose between former colleagues.
They seek irrelevant complaints concerning products that are not at issue and from customers
not currently at issue either.  They request a broad category of documents about access to
Oracle's support website, by all of Oracle's customers – not just those relevant to this lawsuit.
Third party access, or even theft by third parties, offers no defense for Defendants' actions.
And, for a non-litigation business purpose, they demand a highly sensitive, 65 million record
set of databases that falls outside the scope of their own discovery requests.  In most cases,
Defendants offer no factual predicate for these requests, couching their speculative arguments
with telling qualifiers such as "could" and "might."  The Court should deny these requests.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T  415.393.2000
F  415.393.2286
bingham.com

Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 2



Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 3



Bingham McCutchen LLP
bingham.com

Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 4



Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 5

Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 6



Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 7



**VI.   ORACLE ALREADY AGREED TO PRODUCE CHANGE ASSISTANT
BUT SHOULD NOT HAVE TO PRODUCE ITS RELATED DATABASES
(RFPS 52, 118)**

Defendants' motion also seeks the production of all versions of Oracle's Change Assistant
software program, and the databases that Change Assistant searches.  Change Assistant is a
java-based software program developed by Oracle that Oracle provides to its customers as a
download to help them search for SSMs related to their licensed software.  If a customer
wishes to use the Change Assistant tool to assist with downloading support materials, the
customer enters its request.  Change Assistant then searches nine different databases to
compile the responsive support materials for the customer.

The first part of this motion should be moot by now.  The parties tentatively agreed to
exchange all versions of Change Assistant, as Defendants say they seek, for all versions of
Defendants' "Titan" software program – a program developed by Defendants to run
simultaneously on a bank of servers in SAP TN's "download center" and harvest unlicensed
SSMs from Oracle on an automated, round the clock basis.  A few days before filing this
motion, and without following up on this tentative agreement, Defendants produced some
unspecified versions of Titan.  Had Defendants made a phone call to indicate they had, in fact,
produced all versions of Titan, Oracle would have agreed in turn to produce all versions of
Change Assistant.

Hon. Charles A. Legge (Ret.)
February 25, 2008
Page 8

That leaves the voluminous "databases" from which Change Assistant sources the search results it returns to the customer.

Defendants initially could not explain what they wanted or why, or how that request fit within their discovery responses.

First, Defendants say they want these databases as part of "mapping" information, but Oracle has already provided that information as demonstrated at the last motion hearing. Indeed, SAP TN's Mark Kreutz recently testified that SAP TN obtained these system codes from its customers as part of its onboarding process, and he authenticated onboarding forms that reflect the system code mapping information (and also appear to reflect SAP TN's deliberate refusal to confine their downloads to those system codes).

Second, Oracle does not believe these databases will assist Defendants in their mapping project, as Defendants own internal records confirm. Change Assistant pulls information from at least nine separate databases accounting for over 1.2 Terabytes of data, constituting approximately 65 million individual records. Only a small portion of these databases would contain the materials downloaded by Defendants. And, as to those downloads, Defendants already have the copies that they stole from Oracle on their own systems. They can analyze those downloads and get virtually all of the same information that is stored in the databases, including the same "mapping" information that existed in the databases at the time of the download. The debatable usefulness of this information is not worth the burden of production.

Third, Requests Nos. 52 and 118 do not cover the databases that Defendants request in this motion. Request No. 52 seeks "Documents reflecting all text and other displayed content that makes up the web display page of each and every page of Customer Connection." Request No. 118 seeks the information, including log-in credentials and software, needed "to inspect Customer Connection." These requests focus on access to and inspection of Customer Connection – Oracle's customer support website. From January 3-4, 2008, Oracle allowed Defendants unfettered access to inspect Customer Connection with a special log-in credential, and even allowed them to download SSMs using the Change Assistant tool. Once Defendants had this access to Customer Connection, which the requests seek, they quickly lost interest and have yet to request any further access. Oracle also furnished Defendants with copies of the SSMs and other documents that they downloaded during their inspection of Customer Connection. That access and inspection more than satisfies the proper scope of these two requests.

Despite all this, and since Defendants have only recently disclosed the monumental extent of the illegal materials existing on their systems, Oracle will produce the requested databases as "highly confidential" under the terms of the parties' Protective Order with the understanding that Defendants will use them "solely for the purposes of preparation for trial, trial of and/or appeal from this Action and no other."

Sincerely yours,

Donn P. Pickett

cc:      Defense Counsel (via email only)