# EXHIBIT V

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5820
jmcdonell@JonesDay.com

March 10, 2008

**VIA EMAIL AND HAND DELIVERY**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   *Oracle Corporation, et al. v. SAP AG, et al.*
      Post-Submission Brief on Item II(D) of
      Defendants' Motion to Compel No. 2
      Hearing Date: March 4, 2008 at 9:00 AM

Dear Judge Legge:

Per your request at the March 4th hearing, defendants submit this post-submission brief in further support of Issue II(D) of their second motion to compel. (Defendants' February 19, 2008 Letter, pp. 6-7, "Change Assistant and Associated Databases--Requests Nos. 52, 118").

This letter also addresses the issue of the time within which the parties may designate under the Stipulated Protective Order documents produced by third parties.

## I.   CHANGE ASSISTANT

Defendants' second motion to compel seeks an order compelling Oracle to "produce a copy of the Change Assistant software, its source code, and associated databases that Change Assistant uses to provide search retrieval and download functionality in conjunction with Customer Connection." (TN's February 19, 2008 Letter, p. 6). In response to defendants' motion, Oracle agreed to produce all versions of the Change Assistant software (but only in its compiled, non-human readable form) and all associated databases used by that software (Oracle's February 25, 2008 Letter, pp. 7-8). Now the only remaining dispute is Oracle's continued, unjustifiable refusal to produce the source code portion of the Change Assistant software.

Oracle took the position during the March 4th hearing that: (1) defendants did not specifically request Change Assistant's source code, and (2) defendants do not need access to the source code because Oracle has agreed to produce the compiled program.

Because the information sought is both relevant and responsive and Oracle has no valid objection to the disclosure of its source code, Oracle should be compelled to produce the source code for Change Assistant, albeit under a "Highly Confidential—Attorneys' Eyes Only" designation.

**JONES DAY**

Hon. Charles A. Legge (Ret.)
March 10, 2008
Page 2

### A.     Defendants Properly Requested The Change Assistant Source Code.

Defendants' Request for Production No. 118 states "Pursuant to Rule 34(a)(2) of the Federal Rules of Civil Procedure, a complete set of log-in credentials, and **all necessary software (including Change Assistant)**, sufficient to permit Defendants' counsel, for the sole purpose of defending against Oracle's claims in this litigation, access to inspect Customer Connection and all similar Oracle support websites or FTP sites." (Emphasis added). Oracle's argument that TN has not requested the Change Assistant source code rests on the faulty premise that source code is not software.

"Software in the form in which it is written and understood by humans is called source code. To be functional, however, software must be converted (or compiled) into its machine-usable version, a sequence of binary number instructions typed object code." *Microsoft Corp. v. AT&T Corp.* -- U.S. --, 127 S.Ct. 1746, 1754 n. 8 (2007)(citations omitted); see also *U.S. v. Shea*, 493 F.3d 1110, 1116 n. 1 (9th Cir. 2007). Stated more directly, "**[s]ource code is software in a human readable form that is written by the software developer**." *Sony Computer Entm't Inc. v. Connectix Corp.*, 48 F.Supp.2d 1212, 1215 n. 2 (N.D. Cal. 1999, J. Legge) rev'd 203 F.3d 596 (reversed on unrelated grounds) (emphasis added).

The above-cited cases establish both that TN did in fact request the source code and the reason why TN has moved to compel its production—source code is the portion of the software "in the form in which it is written and understood by humans." Oracle's agreement to produce the compiled object code form of the Change Assistant software does not permit Defendants' counsel and their experts to review and analyze the portion of the software that is human readable and that reveals how the program does what it does.

### B.     Defendants Need To Analyze The Source Code To Fully Understand How Change Assistant Maps Oracle's Ssms Within Oracle's Huge Database Of Available Ssms.

Defendants must have access to the Change Assistant source code to: (1) fully understand how Change Assistant maps and then retrieves Oracle's Software and Support Materials ("SSMs") within Oracle's huge database of available SSMs; and then (2) use that information to assist defendants in the tedious exercise of mapping the software products that Oracle licensed to TN's customers to the downloads that TN downloaded on behalf of those customers.

In response to defendants' second motion to compel, Oracle concedes that: (1) "Change Assistant pulls information from at least nine separate databases accounting for over 1.2 Terabytes of data, constituting approximately 65 million individual records"; and (2) "[o]nly a small portion of these databases would contain the materials downloaded by Defendants." (Oracle's February 25, 2008 Letter, p. 8). These concessions prove defendants' point. Defendants need access to the human readable instructions (*i.e.*, the source code Oracle refuses to produce) that are then electronically compiled into the machine readable form (*i.e.*, the compiled object code portion of the software Oracle has agreed to produce) that the computer then uses to search and retrieve SSMs from Oracle's nine separate databases comprising over 1.2 Terabytes of data.

JONES DAY

Hon. Charles A. Legge (Ret.)
March 10, 2008
Page 3

    Oracle cannot have it both ways. It cannot refuse to provide defendants with the SSM mapping information they have requested and instead place that burden on defendants and then also refuse to produce the human readable source code portions of the Change Assistant software that Oracle contends is the tool that its customers can use to select and download only those SSMs to which they are licensed.

    The compiled Customer Assistant software in object code form can, at best, only permit defendants and their experts to see the inputs and the outputs of the Change Assistant software.[1] While the inputs and the outputs of Change Assistant are relevant, the critical portion of the analysis is the throughput (*i.e.*, the human readable instructions in the source code) that show how Change Assistant maps the SSMs to the Oracle software products to which TN's customer are licensed. Without the source code for all versions of Change Assistant, defendants cannot evaluate and understand how Change Assistant links the licensed software to the SSMs available on Customer Connection. In sum, defendants need the requested source code as part of the process of mapping the licensed products to the downloads, which in turn will allow defendants to evaluate Oracle's claims and to determine which specific downloads were improper.

    **C.    Defendants Also Need To Analyze The Source Code To Evaluate Oracle's Comparison Of Change Assistant To Titan, TN's Automated Search And Downloading Tool.**

    Defendants' need for Change Assistant's source code is further underscored by the fact that Oracle intends to make a comparison between Change Assistant and Titan to support its case. Titan is an automated search and downloading tool that TN developed and used to download items from Customer Connection on behalf of its customers. Like Oracle's Change Assistant, Titan automates the process of downloading SSMs and saves considerable time when compared to the much slower item by item, point and click, manual downloading process.

    During the March 4th hearing defendants' counsel pointed out that Oracle will inevitably compare Titan to Change Assistant, and Oracle's counsel did not deny that Oracle intends to make such a comparison. Thus, in order for defendants to properly evaluate and defend against Oracle's claims, defendants must understand how Change Assistant does what it does. In the compiled form, as noted, defendants can only see the end result and not the manner in which the program arrived at the result. Without a side by side comparison of the source code of the two programs (*i.e.*, Change Assistant and Titan) there is no way of to know whether they are similar or dissimilar.

    Moreover, this is a point that does not really seem to be in dispute between the parties. Under similar circumstances, Oracle maintained that Titan's source code was a key to understanding Titan and demanded that defendants include it as part of their production. Even though Oracle did not use what it now claims to be the magic words "source code" in its

---

[1] Additionally, in its compiled form, the Change Assistant software only operates with a live connection to Customer Connection, which is controlled and monitored by Oracle. So far, Oracle has only permitted defendants a very restricted and attenuated access to Customer Connection and no meaningful chance to analyze and evaluate the inner workings of the Change Assistant software. The compiled program alone, therefore, is inadequate both because of the restricted access to Customer Connection and because it does not allow defendants and their experts to examine how the software actually operates.

**JONES DAY**

Hon. Charles A. Legge (Ret.)
March 10, 2008
Page 4

document requests, consistent with the definition of "software" in the cases cited above, defendants produced Titan's source code. Having recognized the importance of source code for the software-based search tools relevant to the downloading allegations in this case and having even demanded production of the same from defendants, in the interest of consistency and fairness Oracle must be held to standard which it has set for defendants.

Finally, while Oracle expressed some concern over wide spread disclosure of its source code, this is a non-issue. Defendants agree that Oracle may designate the Change Assistant source code as "Highly Confidential—Attorneys' Eyes Only" under the Agreed Protective Order in this case.



### III.   CONCLUSION

For the foregoing reasons, Issue II(D) of defendants' second motion to compel should be granted in its entirety. More specifically, defendants seek findings and a recommendation that

---

[2] Defendants, of course, have no ability to control when the productions are received, and sometimes two or three are received in one day.

JONES DAY

Hon. Charles A. Legge (Ret.)
March 10, 2008
Page 5

Oracle be compelled to produce, without further delay, copies of all versions of the Change Assistant software, its source code, and associated databases.

In addition, the Special Master should rule that the parties have thirty days from receipt of a third-party document production to finalize confidentiality designations and that all documents produced by third-parties be presumptively designated "Highly Confidential-Attorneys' Eyes Only" for that thirty day period.

Very truly yours,

Jason McDonell

cc: Donn Pickett, Esq. (via email)
Geoffrey Howard, Esq. (via email)
Zachary Alinder, Esq. (via email)
Holly House, Esq. (via email)
Bree Hann, Esq. (via email)

SFI-579748v1