# EXHIBIT W

Donn P. Pickett
Direct Phone: 415.393.2082
Direct Fax: 415.393.2286
donn.pickett@bingham.com

March 14, 2008

**Via Hand Delivery**

**Contains Information Designated Confidential Pursuant to Protective Order**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center
San Francisco, CA 94111

Re: *Oracle Corp., et al. v. SAP AG, et al.*: Oracle's Opposition to Defendants' Post-Submission Brief on Item II(D) of Defendants' Motion to Compel No. 2

Dear Judge Legge:

Plaintiffs Oracle Corporation, et al. ("Oracle") submit this letter brief in opposition to Defendants' Post-Submission Brief on Item II(D) of Defendants' February 19, 2008 motion to compel.

## I. THE COURT SHOULD DENY DEFENDANTS' NEW REQUEST FOR CHANGE ASSISTANT SOURCE CODE

Upping the ante enormously, Defendants now say they must have the highly-sensitive, proprietary source code for an Oracle software tool called Change Assistant. This case is not about Change Assistant source code. This case is about how Defendants unlawfully accessed, copied and used Oracle's Software and Support Materials, which include bug fixes, patches, updates and related documentation.

Change Assistant is a client-based user interface written in java programming language, which means that the customer downloads the Change Assistant program to a local computer and runs it from there, instead of accessing it through the internet. *See* Declaration of Jason Rice in Support of Oracle's Opposition to Defendants' Post-Submission Brief ("Rice Decl."), submitted with this letter brief, ¶ 5. Once a customer is authenticated through the log in (similar to Customer Connection), the customer can use Change Assistant as a user interface to facilitate a search of Oracle's databases for Software and Support Materials ("SSMs"). *Id.* Change Assistant is a separate, java-based software program that, in effect, operates to bypass Customer Connection and facilitates a search of the databases that contain Oracle SSMs. *See id.* at ¶¶ 3-6. Change Assistant transmits the customer's search request to an Oracle database and displays results returned by the database. *Id.* at ¶ 6. It does not perform any search actions itself, and therefore, the Change Assistant source code does not embody any search functionality. *Id.* And Oracle has made no claim that Defendants infringed Oracle's copyright in the Change Assistant software tool or that Defendants stole its source code.

The Court should deny Defendants' motion for four reasons. First, the Change Assistant source code will not lead to discoverable information relating to any claim or defense in this case, and it will not serve the purposes Defendants now offer as the basis of their Request. Second, even if it was relevant, Defendants fail the high standard that Courts typically require for production of source code, in recognition of the extreme competitive harm that can occur when source code gets produced. Third, the plain language of the Request shows

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County

Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

415.393.2000
415.393.2286
bingham.com

Hon. Charles A. Legge (Ret.)
March 14, 2008
Page 2

that Defendants have not asked for the Change Assistant source code. Fourth, the Court has already ordered a process to facilitate the mapping, by having an Oracle engineer examine Defendants' native download libraries on Defendants' computers. There is no reason to order irrelevant source code and expose Oracle to competitive injury.

### A. Change Assistant Source Code Is Not Relevant To This Case

Rule 26 limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). The Change Assistant source code does not fall within this scope. Oracle has not alleged that Defendants infringed any copyright in Change Assistant by copying its source code. Indeed, Defendants cite no authority for the proposition that Oracle must produce the source code of a program relating to which Oracle has alleged no infringement. Oracle is aware of none.

While Oracle acknowledges that the Change Assistant tool was used by Defendants to facilitate downloads of thousands of SSMs, access to the source code is not necessary for the parties to try this case. The Change Assistant source code also has nothing to do with the use by customers of Customer Connection. Oracle customers do not access Customer Connection or the databases, or lawfully download SSMs, by accessing any Change Assistant source code. Rice Decl. ¶¶ 5-6. And, at this point, Oracle is not aware that Defendants accessed Change Assistant source code in unlawfully downloading SSMs. Customers and Defendants both (so far as Oracle knows) only used the compiled Change Assistant software that Oracle has already agreed to provide. For these reasons, Change Assistant's source code is irrelevant to any claim or defense in this action. *E.g., Autotech Tech. Ltd. P'ship, v. Automationdirect.com, Inc.*, 2007 U.S. Dist. LEXIS 69135, No. 05-C05488 (N.D. Ill. Sept. 18, 2007) (denying motion to compel production of source code when source code infringement of product was not at issue).

In *Autotech*, the plaintiff asserted copyright infringement of software programs, including the audiovisual content and screen objects of the programs. At the close of discovery, the plaintiff demanded the source code for defendants' allegedly infringing products on the basis that it was necessary to fully understand how the audiovisual content and screen objects were created. The court denied the plaintiff's motion to compel production of this source code, and rejected its "incorrect, pretextual, and overly simplistic" arguments. *Id.* at *14. Instead, the court found that a "cursory review of the case law fails to demonstrate that a claim for copyright infringement of a user interface necessitates a review of source codes." *Id.* at *17.

This case is several steps removed from *Autotech*. Here, the source code Defendants seek is unrelated to any infringement allegation. Change Assistant is a user interface, but it is not a user interface for the allegedly infringing product – it merely facilitates a search that retrieves Oracle's product that Defendants misappropriated.

Instead of citing any relevant authority justifying their request, Defendants contend they need Change Assistant's source code for two purposes: 1) to fully understand how Change Assistant maps and retrieves Oracle's Software and Support Materials within Oracle's database; and, 2) to compare Change Assistant to their own Titan software. Both arguments fail.

### 1. Source Code Is Unnecessary To Understand How Change Assistant Works

Defendants say the Change Assistant source code will help them understand "how Change

Hon. Charles A. Legge (Ret.)
March 14, 2008
Page 3

Assistant links the licensed software to the SSMs available on Customer Connection." Brief at I.B. This argument is as "incorrect, pretextual, and overly simplistic" as that advanced in *Autotech*. Defendants fail to connect their stated goal of understanding how Change Assistant works with any claim or defense in this action. Instead, Defendants merely state (without basis) that review of Change Assistant's source code "will allow defendants to evaluate Oracle's claims and to determine which specific downloads were improper." *Id*.

Once a customer is authenticated through the log-in (similar to Customer Connection), the customer can use Change Assistant as a user interface to help retrieve Software and Support Materials from Oracle's databases. Rice Decl. ¶ 5. However, Change Assistant is only a user interface that assists a search. *Id*. It has no search functionality itself. *Id*. Change Assistant does not "map" the search results to a customer's license. *Id*. ¶ 6. It merely transmits the customer's search request to the database and returns those results. *Id*. As a result, Change Assistant's source code will not provide any information as to which specific downloads were improper, or allow Defendants to "map" their downloaded files to customer contracts. *Id*. ¶ 7. Defendants do not need to know how Change Assistant is programmed to convey search requests and results.

To the extent Defendants now want to examine their downloaded files to determine what they illegally took from Oracle, they must compare the system codes contained within those files to *the contracts of the customers with whose credentials Defendants took the files*. Defendants asked for Oracle to produce contracts for all TomorrowNow customers. Oracle agreed to do so. Defendants then asked for Oracle to provide live access to Customer Connection. Oracle did so. Next, Defendants asked Oracle to provide them with "mapping" documents used by Oracle to assess whether individual SSMs downloaded by Defendants were licensed to the customer whose credentials Defendants used to download it. Oracle, at the first discovery hearing, demonstrated the process Oracle uses to map system codes contained within the downloaded SSMs to an Oracle software release (such as Payroll) and then to an individual customer's license agreements, all to determine for which SSM a customer is licensed. Defendants didn't like the answer they received, so they are fishing for another alternative. They have now asked for more – the entire 60 million-record-large database housing these particular SSMs. Oracle, though not necessarily convinced of the relevance, agreed to provide this database and Change Assistant itself.

Naturally, Defendants are not satisfied by that and now seek the source code – a request to which Oracle will not agree. The Change Assistant source code will not aid Defendants' mapping exercise. To the extent that Change Assistant would be at all helpful to Defendants, it would only be in the compiled form that customers use, which Oracle has already provided access to, and has agreed to produce. *See* Rice Decl. ¶ 7. This will allow Defendants to perform searches like a lawful customer would, or unlawfully, like Defendants did on behalf of their customers. The source code has nothing to do with any real issue in this case. And their endless requests for information will not prevent them from having to do hard work to assess the damage they have done.

### 2.  Change Assistant And Titan Are Apples And Oranges

Defendants make two misguided arguments about source code comparisons. First, they say Oracle intends to compare the Titan source code to Oracle's Change Assistant source code. Brief at I.C. That is incorrect. Subject to its further review of Titan, which it only received

recently, Oracle presently knows of no reason why it should compare Titan source code to Change Assistant source code.

Second, on the assumption that Oracle will be comparing Titan source code to Change Assistant source code, Defendants say *they* would like to compare Change Assistant source code to their own Titan source code. But, apart from the faulty premise, Defendants' Titan program is a completely different animal and Defendants have no need to compare it to Change Assistant. Defendants created Titan in C++ programming language for the purpose of unlawfully downloading SSMs from Customer Connection *en masse*. Change Assistant, on the other hand, is the program created by Oracle in java programming language that Oracle's customers use to lawfully download support materials. Even if it is the case that Titan has a similar function as Change Assistant, the fact that Defendants created a tool to illegally, mass-download Oracle products, does not justify production of the Change Assistant source code.

Further, because Oracle has not asserted any infringement of Change Assistant, Defendants have no reason to perform "a side by side comparison of the source code" of Change Assistant with any other program. *Id*. Thus, in *Autotech*, the court held that source code was not required to compare the two programs because there was no allegation of source code infringement. *See Autotech*, 2007 U.S. Dist. LEXIS 69135 at * 17-18. Comparisons between Change Assistant and Titan, other than for evaluation of source code infringement, can be made based on review of the available inputs of the two programs, the steps that a user must take place during their operation, and their outputs. None of these requires any information or access beyond what Oracle has already provided, or agreed to provide here.

### B. Even If The Source Code Related To A Claim Or Defense, Defendants Cannot Justify Its Production

Even when highly-sensitive source code directly relates to the issues in a lawsuit, courts typically limit such productions to source code that is the actual subject of an infringement action. *See, e.g., Microsoft Corp. v. Multi-Tech Systems, Inc.*, 2001 U.S. Dist. LEXIS 23155, No. 00-1412, *25-26 (D. Minn. Dec. 14, 2001) (source code in patent case was relevant to understand working of accused products, but production limited *only* to accused products and *only* to "portions" necessary for precise claim). This is because source code is the crown jewel of a software company. *See* Rice Decl. ¶ 8. Thus, even with a protective order in place, and unless the infringement contentions directly implicate the source code, courts do not require source code production in order to prevent any chance of inadvertence.

Here, of course, Oracle has not asserted that Defendants infringed the Change Assistant source code. Defendants have offered no plausible argument that it relates to any defense. As explained above, the source code will not help with Defendants' "mapping" of the products they unlawfully downloaded, and comparing it to Titan will not provide a defense to Oracle's claims.

On the other hand, Oracle will suffer prejudice if the Court allows its trade secret source code out into the world. *See* Rice Decl. ¶ 8 ("[D]isclosure of the source code could enable a third party to build unapproved tools to access our support systems in unauthorized, harmful ways."); *U.S. v. Caltex Petroleum Corp.*, 12 F. Supp. 2d 545, 556 (N.D. Tex. 1998) (enforcing IRS summonses for source code would "significantly impact the property rights of [] software manufacturers and jeopardize their competitive position in the marketplace").

Hon. Charles A. Legge (Ret.)
March 14, 2008
Page 5

Defendants have offered no rationale that outweighs the prejudice to Oracle of having to produce its trade secrets when it has not made them an issue in the case. The negative consequences of compelling source code production here would eclipse the real issues. *See id.* (despite possible relevance, summonses for source code denied when "ramifications… would be staggering" because it would allow audit of software rather than actual returns). The Court should deny this Request for this independent reason.

### C. Defendants Never Requested The Change Assistant Source Code

Even if the Change Assistant source code related directly to a claim or defense, and even if the risk of harm from this production were warranted (though neither is true), the plain language of Request for Production ("RFP") No. 118 does not call for production of any source code. RFP No. 118 reads:

> Pursuant to Rule 34(a)(2) of the Federal Rules of Civil Procedure, a complete set of log-in credentials, and all necessary software (including Change Assistant), *sufficient to permit* Defendants' counsel, for the sole purpose of defending against Oracle's claims in this litigation, *access to inspect Customer Connection* and all similar Oracle support websites or FTP sites. (emphasis supplied)

RFP No. 118 does not actually seek any documents. It is a request to enter and inspect Customer Connection. Despite this plain language, Defendants now strain credulity with an impossible bootstrap. They assert for the first time that RFP No. 118's reference to "software" sweeps in the production of all source code related to Change Assistant. That argument fails for two reasons.

First, it ignores that the request itself is limited to software "*sufficient* to permit…access to inspect Customer Connection…" – which Oracle has allowed. Defendants do not even attempt to argue why the voluminous other materials they have received are not "sufficient" to permit access to inspect Customer Connection. Moreover, on January 3-4, 2008, Defendants *actually* inspected Customer Connection with a live password provided by Oracle. Oracle provided unrestricted access to search and download from Customer Connection. Also in connection with this live, unfettered inspection, Oracle provided a copy of Change Assistant and Defendants used it to download Software and Support Materials from the Customer Connection databases. Oracle has offered further live access and Defendants have not taken Oracle up on that offer. Further, Oracle has agreed to provide copies of the Change Assistant software itself. More than just "sufficient," this response gave *actual* access to Customer Connection.

More fundamentally, the source code would not aid in the inspection of Customer Connection. Change Assistant is a separate, java-based software program that bypasses Customer Connection altogether and interacts with the databases Oracle is producing. *See* Rice Decl. ¶¶ 5-6.

Second, the request does not mention source code at all. Defendants' attempts to link Change Assistant source code to their vague reference to "software" does not satisfy the "reasonable particularity" requirement under the Federal Rules of Civil Procedure.

In short, the express purpose of RFP No. 118 is "to permit Defendants' counsel . . . access to inspect Customer Connection . . . ." pursuant to Rule 34(a)(2). Oracle has provided that

Hon. Charles A. Legge (Ret.)
March 14, 2008
Page 6

access in a more than "sufficient" manner. The Court should reject Defendants' contrary contorted reading of their own request.

### D. The Court Has Already Ordered A Remedy For The "Mapping"

The Court has already ordered that Oracle send an engineer to Defendants' premises to assist with the mapping exercise for which Defendants say they need the Change Assistant source code. Oracle accepts this order and does not plan to appeal it. This is by far the most efficient way to accomplish Defendants' stated goal. Oracle understands that Defendants have an entire image of their download libraries that contain many of their downloaded files. These are the same files they exhibited to the Court at the February 13, 2008 hearing. Oracle is prepared to sit down with one of its engineers at SAP's offices to examine those files and assist in the mapping exercise. In doing so, Oracle will not have any reason to use the Change Assistant source code.



### III. CONCLUSION

For the foregoing reasons, Issue II(D) of Defendants' second motion to compel should be denied, and the Court should recommend that customer subpoena productions be treated as "Highly Confidential" by the parties for 10-days for productions of less than 1000 pages and 20-days for larger productions.

Sincerely yours,

*/s/ Donn P. Pickett* /27A

Donn P. Pickett

cc: Defense Counsel (via email only)