# EXHIBIT CC

1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA 94303
   Telephone:    (650) 739-3939
10 Facsimile:    (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:    (832) 239-3939
15 Facsimile:    (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19                UNITED STATES DISTRICT COURT

20               NORTHERN DISTRICT OF CALIFORNIA

21                    SAN FRANCISCO DIVISION

22 ORACLE USA, INC., et al.,           | Case No. 07-CV-1658 PJH (EDL)
23         Plaintiffs,                  | **DECLARATION OF JOSHUA L.**
                                        | **FUCHS IN SUPPORT OF**
24     v.                               | **DEFENDANTS' OPPOSITION TO**
                                        | **PLAINTIFFS' MOTION TO AMEND**
25 SAP AG, et al.,                      | **COMPLAINT**
26         Defendants.                  | Date:      August 19, 2009
                                        | Time:      9:00 a.m.
27                                      | Courtroom: 5, 17th Floor
                                        | Judge:     Hon. Phyllis J. Hamilton
28

1    I, JOSHUA L. FUCHS, declare as follows:

2    1.   I am an associate in the law firm of Jones Day, 717 Texas, Suite 3300, Houston, Texas 77002, and counsel of record for Defendants SAP AG, SAP America, Inc. (together, "SAP") and TomorrowNow, Inc. ("TN") (collectively, "Defendants") in the above-captioned action. I am a member in good standing of the state bar of Texas and admitted *pro hac vice* in this matter. I make this declaration based on personal knowledge and, if called upon to do so, could testify competently thereto.

**Discovery To Date**

2.   The Court has imposed discovery limits in this case. The parties may serve a maximum of 125 interrogatories and 150 requests for production per side. *See* D.I. 50, 76. Further, each side may request production of responsive data from up to 140 custodians. *See* D.I. 325. Each side is also allowed 450 hours of fact deposition testimony. *See* D.I. 325.

3.   On July 26, 2007, the parties began serving written discovery requests in this matter. The chart below displays the discovery that has occurred since that time:

| DISCOVERY ITEM | DEFENDANT | PLAINTIFF |
|---|---|---|
| **Requests for Production** | Received 150 Numbered Requests for Production. | Received 127 Numbered Requests for Production. |
| **Interrogatories** | Received 121 Numbered Interrogatories. | Received 125 Numbered Interrogatories. |
| **Requests for Admission** | Received 749 Numbered Requests. | Received 149 Numbered Requests. |
| **Bates Numbered Pages** | Produced 7,896,044 Bates Numbered Pages (including responsive data from 100 custodians). | Produced 537,133 Bates Numbered Pages. |
| **Fact Depositions Hours** | Taken approximately 146 of the 450 fact deposition hours allotted. | Taken approximately 332 of the 450 fact deposition hours allotted.[1] |
| **Other Productions** | Produced in excess of 17 terabytes of data including:<br>• The TomorrowNow ("TN") services databases such as SAS, BakTrak, and dotProject; provided in a format that gives Plaintiffs the unique ability to see | Produced Customer Connection database, which includes:<br>• Several terabytes of native files that Plaintiffs claim to be logs tracking access to Customer Connection and the back-end databases of |

---

[1] Plaintiffs have noticed and taken over 60 depositions to date.

- 1 -

DECL. OF JOSHUA L. FUCHS IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFFS' MOTION TO AMEND
Case No. 07-CV-1658 PJH (EDL)

| DISCOVERY ITEM | DEFENDANT | PLAINTIFF |
|---|---|---|
| | the data as TN employees saw the data. Plaintiffs have used printouts from the databases as hundreds of deposition exhibits; and<br>• The TN support services servers and/or partitions for Plaintiffs to inspect and select for production through the "Data Warehouse," including all common locations at which downloads, environment components, and databases have been located. *See, infra,* Paragraphs 10-16. | Customer Connection. |

**Time Frame of Discovery and Production of TN Databases**

4. At the beginning of the case, the parties agreed to produce responsive non-privileged documents that fell within a January 1, 2004 to March 22, 2007 time frame (or shortly thereafter). In addition, there were specific categories of information, such as databases or specific custodians, for which the parties agreed to produce through the collection date of the data.

5. Late in 2008, the parties began discussing expanding the production time frame for limited categories of information, and the parties agreed to the Expanded Discovery Timeline Agreement in November 2008. *See* Exhibit ("Ex.") A. The parties limited the Agreement to specific subsets of data for the pre-2004 time frame and for the time frame between the original collection date and the TN wind-down on October 31, 2008. *See id.*

6. Most of the production dates Plaintiffs reference in their Motion to Amend Complaint ("Motion") regarding TN's databases are not the original production dates for these materials. Rather, many of the dates Plaintiffs cite are the supplemental production dates of the respective items completed pursuant to the Expanded Discovery Timeline Agreement.

7. Defendants completed production of TN's services databases earlier than stated in the Motion. For example, the BakTrak database is a TN-developed database that TN used to

1  track the backup, restore, check-in and check-out of TN customers' environments and
2  environment components. On February 4, 2008, Defendants produced all content from the
3  BakTrak database through exported Excel spreadsheets prior to John Baugh's Rule 30(b)(6)
4  deposition on February 6-7, 2008. The exported native spreadsheets contained all TN backup and
5  restore activity tracked in BakTrak through approximately the end of January 2008. Defendants
6  then produced the entire native version of the BakTrak database to Plaintiffs on March 12, 2008
7  and included data through February 2008. On April 20, 2009, Defendants updated the BakTrak
8  production pursuant to the Expanded Discovery Timeline Agreement to include data through
9  October 31, 2008. This is the copy of BakTrak referenced in the Motion.

10     8.     Further, recognizing the special importance that the SAS database has to this case,
11 Defendants started producing SAS in native form in 2007. The SAS database was designed to
12 document TN support services activities, including managing of cases, scoping (researching)
13 problems, development of fixes or updates and testing of fixes or updates. Defendants produced a
14 complete subset of the SAS database containing the six customers identified in paragraphs 76-80
15 of Plaintiffs' First Amended Complaint on September 21, 2007. Defendants produced a complete
16 subset of the SAS database with respect to the 69 additional customers identified by Plaintiffs on
17 October 5 and November 9, 2007. Finally, Defendants produced the entirety of the SAS database
18 containing all of TN's PeopleSoft and J.D. Edwards customers on December 4, 2007. This
19 production included TN's activities though the end of April 2007. As part of the Expanded
20 Discovery Timeline Agreement, on March 6, 2009, Defendants further updated the SAS database
21 production to include TN activity through October 31, 2008. This is the copy of SAS referenced
22 in Plaintiffs' Motion.

23     9.     Defendants first produced the entirety of the dotProject database to Plaintiffs on
24 March 26, 2008. This production included TN's activities though the end of June 2007. The
25 dotProject database contains information regarding the downloads for a particular customer,
26 including the date the downloads were completed and the credentials and product questionnaires
27 provided by the customer. Pursuant to the Expanded Discovery Timeline Agreement,
28 Defendants' production of dotProject was then updated on May 8, 2009 to include TN activity

through October 31, 2008. This is the copy of dotProject referenced in Plaintiffs' Motion.

**Plaintiffs' Access to TN's Servers**

10. In a collaborative and open process, Defendants have made TN's services and support servers available to Plaintiffs for review through a "Data Warehouse" procedure. This procedure permits Plaintiffs remote access review of images on these servers and server partitions. This process allows Plaintiffs to review and see the files in native form. After a number of discussions between the parties starting in April 2008, the parties agreed that Plaintiffs could: (1) take screen shots of the folder structures of the server; (2) create metadata reports containing the associated metadata for files; (3) request production of certain files ("produce" files) and (4) mark certain files for metadata production only that would remain recorded ("record" files).

11. Beginning in July 2008, Defendants made available to Plaintiffs fifty-two partitions from TN's J.D. Edwards and PeopleSoft servers. Plaintiffs completed most of their initial selections by August 2008. Defendants produced the requested metadata and screen shots on a rolling basis and completed this by the end of August 2008 for the partitions reviewed. Defendants subsequently began processing and producing the non-privileged "produce" files requested by Plaintiffs with the first production occurring in October 2008.

12. By December 1, 2008, Defendants had made available, and Plaintiffs had reviewed, all sixty-eight partitions from TN's J.D. Edwards and PeopleSoft servers. Plaintiffs estimated that by December 23, 2008, Defendants had produced "approximately two-thirds (61% of files by file count; 68% of files by size) of the requested files . . . ." Ex. I at 2. Defendants completed the production of the requested "produce" files by February 9, 2009, which totaled approximately 8 million files and 4.5 terabytes of data.

13. On February 2, 2009, Plaintiffs sent an email stating: "Pursuant to the Expanded Timeline Agreement, Plaintiffs request that Defendants produce documents that post-date the collection of server images reviewed through the Data Warehouse and are related to TN/SAP customers and/or TomorrowNow's business model." Ex. J. While Defendants did not agree that the "Expanded Discovery Timeline Agreement" covered the "Data Warehouse" servers, Defendants agreed in March 2009 to re-produce 12 server partitions with updated, post-lawsuit

information. These are the server partitions still being reviewed by Plaintiffs and for which Defendants are still reviewing, processing and producing requested, non-privileged files.

14. On March 16, 2009, Plaintiffs expanded their original request for production from the "Data Warehouse" to include all files from the "Data Warehouse" review previously marked for metadata production only. Defendants produced the requested files from these 26 server partitions, totaling over 2.5 terabytes of data, by May 29, 2009. On March 16, 2009, Plaintiffs also requested that Defendants make three additional servers available for review.

15. Additionally, Defendants have produced two servers (DCITBU01_G and the AS/400) outside of the "Data Warehouse" protocol. DCITBU01_G generally contains materials downloaded by TN on behalf of its customers. Defendants produced a metadata report and screen shot of the folder structure for this server partition on January 30, 2008. All logical files and folders for this server partition made from a November 2007 back-up tape, except for personal family photos and one document redacted for privilege, were produced to Plaintiffs by October 29, 2008. The AS/400 generally contains materials used by TN in servicing its J.D. Edwards World customers. In November 2008, Plaintiffs inspected the actual AS/400 machine. Subsequently, Defendants produced in November and December backup tapes for two partitions from the AS/400 requested by Plaintiffs, one from a November 2008 full system backup and the other from a May 2007 partial back-up.

16. To date, including the re-collected partitions, Defendants have made available 105 support services servers and/or partitions for Plaintiffs to inspect and select for production through the "Data Warehouse" process. Taking into account all of the materials discussed above, this production now exceeds 17 terabytes of data specifically requested by Plaintiffs. As noted, the only remaining review and productions after February 2009 relate to Plaintiffs' specific request to review data under the Expanded Discovery Timeline Agreement and to Plaintiffs' March 16 requests to produce the "record" files and review three other servers in the "Data Warehouse."

**Discovery Evidencing Knowledge of Environments**

17. Former TN employee Josh Testone testified that "[a]n environment, as defined locally inside [TN], would be a database and other software programs required to run an instance of that environment." Ex. B-7, at 27:14-17.

18. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

19. As another example, Edward Abbo, also an Oracle employee, testified regarding an email that he sent in December 2006 about an article stating: "TomorrowNow set up a test environment at its own site that mirrored Pomeroy's. That way, when the solution was ready, it was straightforward to implement on Pomeroy's systems." Ex. C-2, at 193:9-194:23; *see also* Exs. K-1 and K-2.

20. Plaintiffs' knowledge regarding TN's use of environments is also evidenced by early discovery in the case. On August 2, 2007, Plaintiffs served Oracle USA, Inc.'s First Set of Interrogatories to Defendant TomorrowNow, Inc. *See* Ex. E. Interrogatory No. 9 states:

> Describe in as much detail as possible all JD Edwards or PeopleSoft software applications which have ever resided or been installed on any computer, internal or external hard drive, disk, tape, CD-ROM, DVD-ROM, flash drive, portable drive, network, server, or any other type of electronic storage device or medium within Your possession, custody, or control, including but not limited to Identifying the devices on which the applications reside or resided and Describing in as much detail as possible how You obtained the applications and for what purposes You have used them.

*Id.* at 8.

21. Defendants first responded on September 21, 2007, stating in part:

> ... TomorrowNow has for many customers made and maintained emergency backup copies of their JDE or PeopleSoft applications; the records of such emergency backup copies will be included in TomorrowNow's document production, and TomorrowNow relies on those records to respond to this interrogatory pursuant to Rule 33(d). TomorrowNow has also for many customers maintained development environments on TomorrowNow's systems, to avoid interference with customer production environments in the development and testing of individual fixes and updates;

1  |  TomorrowNow's databases, which will be included in
2  |  TomorrowNow's production of documents (as to relevant
   |  customers), contain records of such environments, and
   |  TomorrowNow relies on those records to further respond to this
3  |  interrogatory pursuant to Rule 33(d).

4  Ex. F, at 9-10.

5       22.   On October 30, 2007, former TN employee Mark Kreutz testified that TN had a
6  copy of some customers' demo environments on its systems. *See* Declaration of Chad Russell in
7  Support of Plaintiffs' Motion to Amend Complaint ("Russell Decl."), Ex. A.

8       23.   On November 27, 2007, Oracle served Oracle USA, Inc.'s Second Set of
9  Interrogatories to Defendant TomorrowNow, Inc. *See* Ex. G. Interrogatory No. 12 states:

> For each Customer for whom SAP TN has created one or more
> local PeopleSoft environments on SAP TNs' systems from copies
> of that Customer's PeopleSoft software, as testified by Shelley
> Nelson (Shelley Nelson Dep. at 13:24-17:11 (Oct. 30, 2007)),
> Identify the Customer, Identify each product name and release
> copied to create the local environment, and state the total number of
> local environments created for that customer.

14  *Id.* at 5.

15      24.   Defendants responded on December 27, 2007 stating in part:

> ... TomorrowNow has maintained approximately 183 PeopleSoft
> environments on behalf of approximately 122 different customers,
> which have variously included one or more of the CRM, EPM,
> FDM, SA, Portal, and HRMS products, with varying releases of
> each (including CRM - releases 8.4, 8.8 SP1, and 8.9; EPM -
> release 8.9; FDM - releases 7.52, 7.53, 8 SP3, 8.4, 8.4 SP1, 8.4 SP2,
> 8.8 SP1, and 8.9; SA - releases 7.6 and 8 SP1; Portal - releases 8.4
> and 9.9; and HRMS - releases 7.02, 7.50, 7.51, 8, 8 SP1, 8.3, 8.3
> SP1, 8.8 SP1, and 8.9). Additional information responsive to this
> interrogatory as to specific customers may be derived or ascertained
> from TomorrowNow's business records, including specifically
> TomorrowNow's E Portal .nsf file, produced at TN-OR 00169313,
> information contained at TN-OR 00169315, TomorrowNow's
> emails among development and support engineers and its databases
> of customer service information, including its SAS databases
> (which have been previously produced, in native format, at TN-OR
> 00009569), which have been or will be included in
> TomorrowNow's production of documents and on which
> TomorrowNow relies to further respond to this interrogatory
> pursuant to Rule 33(d).

27  Ex. H, at 5-6.

28      25.   Subsequently, former TN employee John Baugh was designated and presented as a

1. Rule 30(b)(6) witness for TN on various topics relating to these customer environments. *See* Ex. M, Topic 1(b) (designating John Baugh to testify to "The manner and method by which Customer Local Environments were created, stored, and Used by You"); Topic No. 1(c) (designating John Baugh to testify to "The identity of all PSFT and JDE Customers for whom You created any type of Customer Local Environment"); Topic No. 1(d) (designating John Baugh to testify to "The total number of Customer Local Environments created for each identified Customer"); Topic No. 1(l) (designating John Baugh to testify to "The process by which Customer Local Environments were Used as part of the ordinary course of business for SAP TN, including without limitation to on-boarding of new Customers; support of Customer cases, issues, and problems; reactive and proactive development of bug fixes, updates, patches, explanations, or regulatory changes for Customers; research into and design of those changes; troubleshooting for Customers; and testing of other operating system levels"). He was deposed for 9 hours and 53 minutes.

26. During his deposition, Mr. Baugh testified that he was involved in responding to Plaintiffs' discovery requests and that he "was asked to provide information on the number of environments." *See* Ex. B-1, at 140:11-20. He specifically noted that the spreadsheet referenced in Interrogatory No. 12, TN-OR 00169315 (which is Ex. 31 to his deposition), was created by looking at dotProject and SAS. *Id.* at 130:17-132:21; Russell Decl. Ex. D. When questioned about the numbers of environments stated in response to Interrogatory No. 12, he responded that BakTrak must also be used to derive the number of environments. *Id.* at 141:24-142:25. Subsequently, he explained that " . . . I had thought that all of our environments were in SAS Environment Portal and dotProject, but it was only in performing research over the last few days in preparation for this deposition that we found, looking at BakTrak, that there was some additional environments that were not in this document." *See* Ex. B-2, at 182:25-183:6.

27. Defendants produced the BakTrak exports on February 4, 2008 prior to the John Baugh deposition. Additionally, Defendants produced the SAS Environmental Portal, dotProject and the full native version of BakTrak by early 2008. Defendants, in the same timing and fashion as Plaintiffs, orderly supplemented the response to Interrogatory No. 12 on May 22, 2009.[2]

---

[2] Defendants have supplemented their discovery responses within the time frame provided by the Court and/or agreed to by the parties. Both parties supplemented some of their discovery

**Discovery Evidencing Familiarity of "Knowledge Management" Documents**

28.  In paragraphs 75-80 of the initial complaint filed on March 22, 2007, Plaintiffs provided detailed statements of what they believe TN downloaded from the Customer Connection website. *See* D.I. 1. In response to Interrogatory No. 1 propounded by Defendants, on September 14, 2007, Plaintiffs explained their investigation procedures that led to the filing of the litigation. *See* Ex. D. Specifically, Plaintiffs explained that they had "log entries, and other reports generated by Oracle's software, including Change Assistant, [that] provide the specific identifiers for the individual Software and Support Materials requested at any given time . . . ." *Id.* at 6:22-24.

29.  Through the "Data Warehouse," Plaintiffs have been able to examine and request production of possible software and support materials that were downloaded by TN on behalf of its customers and kept in a centralized location, including any "Knowledge Management" documents stored in these servers. As noted above, most of the servers in the "Data Warehouse" were reviewed, and the metadata produced, by August 2008. Moreover, DCITBU01_G housed the majority of materials downloaded by TN on behalf of its customers. As noted in Paragraph 15, Defendants produced the metadata report for DCITBU01_G in January 2008 and the files by October 2008.

30.  Further, pursuant to Rule 30(b)(6), in 2007, Plaintiffs requested, and TN presented witnesses who gave testimony on, the type of information and documents downloaded. *See* Ex. N, Topic 13 (agreeing to produce a witness to testify to "The manner in which Software and Support Materials, or any support product developed by You, derived by You, or otherwise obtained by You, is maintained, archived, indexed and transmitted to any Customer, including descriptions of hardware and software Used and where this hardware or software is physically located."); Topic No. 14(b) (agreeing to produce a witness to testify to "the use, distribution, transmission or other communication of Software and Support Materials into, within, or out of any database or storage

---

(continued...)

responses on May 22, 2009.

device, method, or application"); Topic No. 14(c) (agreeing to produce a witness to testify to "the use, distribution, transmission or other communication of Software and Support Materials between You and Your Customers"). Specifically, former TN employees Shelley Nelson and Mark Kreutz testified that several categories of documentation were downloaded as part of TN's on-boarding process for its customers. *See* Ex. B-5, at 67:10-68:24; Ex. B-6, at 73:12-74:17.

**Discovery Evidencing Knowledge of Databases**

31. Beginning on February 6, 2008, Plaintiffs obtained testimony regarding the structure of the environments and the underlying databases. *See* Ex. B-1, at 36:16-37:12, 84:21-86:9. John Baugh testified in early February 2008 that TN obtained its database platforms from a variety of vendors, including Oracle. *See id.* On April 1, 2008, former TN employee Kathy Williams testified regarding the different component parts of an environment—including the "relational database platform"—and the naming conventions for the databases at TN. Ex. B-3, at 47:7-13, 107:13-108:9. On April 2, 2008, former TN employee Catherine Hyde also testified to the naming conventions for the database platforms at TN. *See* Ex. B-4, at 112:12-113:16.

32. Moreover, the two documents used by Plaintiffs as exhibits to the April 2009 deposition of George Lester were produced to Plaintiffs on February 8, 2008 and March 13, 2008. *See* Russell Decl., Exs. M, N. These documents are e-mails between former TN employees regarding TN's use of Oracle databases. *See id.* A third database-related document attached as Exhibit O to Plaintiff's Motion was also produced on February 8, 2008. *See id.* at Ex. O.

33. Further, in 2008, Plaintiffs had the opportunity to review and select for production files from TN's servers containing database components as part of the "Data Warehouse" production described above. However, in the review of these servers, Plaintiffs did not mark the database files as "produce" files and only marked some files as "record." The metadata from the requested "record" files was produced by August 2008. As noted above, Plaintiffs did not request the production of any "record" files until March 16, 2009.

34. Exhibit P to Chad Russell's declaration consists of screen shots from "Data Warehouse" servers detailing the location of certain files which may be components of databases. These were sent in response to a request from Mr. Geoff Howard made in April 2009.

**Discovery Related to the Historic PeopleSoft Registrations**

35. TN began producing its service contracts with customers to Plaintiffs on August 6, 2007. These service contracts reflect the PeopleSoft, J.D. Edwards or Siebel products that TN supported for the customer.

36. For example, TN produced customer contracts on November 9, 2007. That production contained a TN contract which shows that TN supported PeopleSoft CRM version 8.4 SP1. *See* Ex. L-2. The November 9, 2007 production also contained TN contracts which evidence that TN supported PeopleSoft 8 FIN/SCM SP1. *See* Exs. L-5, L-4, L-3. Additionally, the November 9, 2007 production contained a TN contract which shows that TN supported PeopleSoft 8.3 Enterprise Performance Management (EPM) SP1. *See* Ex. L-1. Both FIN/SCM 8 SP 1 and EPM 8.3 are releases contained in the December 2007 SAS production.

37. TN produced additional customer contracts on July 28, 2008, including a TN contract that evidenced TN's support of PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0. *See* Ex. L-6. FIN/SCM 8.0 is also contained in the December 2007 SAS production.

38. On February 5, 2009, pursuant to the parties' Expanded Discovery Timeline Agreement, TN produced customer contracts that had been entered into after the filing of Oracle's lawsuit. That production contained an amendment to a contract entered into on September 28, 2007. This amendment showed that TN began supporting modules of PeopleSoft EPM 8.3 SP4 as of October 1, 2007. *See* Ex. L-7. Both CRM 8.4 SP1 and EPM 8.3 SP4 referenced on page 8 lines 7-11 of Plaintiffs' Motion are releases that TN started servicing after Plaintiffs' filing of the lawsuit and after Defendants' original collection of the SAS database.

**Attachments**

39. Attached as **Exhibit A** is a true and correct copy of the Expanded Discovery Timeline Agreement.

40. Attached as **Exhibit B** are true and correct copies of excerpts from the following deposition transcripts: (1) February 6, 2008 Rule 30(b)(6) Deposition of John Baugh (36:16-37:12, 84:21-86:9, 130:17-132:21, 140:11-20, 141:24-142:25); (2) February 7, 2008 Rule 30(b)(6)

1  Deposition of John Baugh (182:25-183:6); (3) April 1, 2008 Rule 30(b)(6) Deposition of
2  Katherine Williams (47:7-13, 107:13-108:9); (4) April 2, 2008 Rule 30(b)(6) Deposition of
3  Catherine Hyde (112:12-113:16); (5) October 29, 2007 Rule 30(b)(6) Deposition of Mark Kreutz
4  (67:10-68:24); (6) December 6, 2007 Rule 30(b)(6) Deposition of Shelley Nelson (73:12-74:17);
5  (7) June 3, 2009 Deposition of Josh Testone (27:12-17).

6      41.    Attached as **Exhibit C** are true and correct copies of excerpts from the following
7  deposition transcripts: (1) June 12, 2009 Deposition of ▮▮▮▮ (98:6-103:21); (2) June 26,
8  2009 Deposition of Edward Abbo, (193:9-194:22).

9      42.    Attached as **Exhibit D** is a true and correct copy of an excerpt from Plaintiffs'
10 Second Amended and Supplemental Responses and Objections to TN, Inc.'s First Set of
11 Interrogatories, Responses to Interrogatory No. 1.

12     43.    Attached as **Exhibit E** is a true and correct copy of an excerpt from Oracle USA,
13 Inc.'s First Set of Interrogatories to Defendant TomorrowNow, Inc., Interrogatory No. 9.

14     44.    Attached as **Exhibit F** is a true and correct copy of an excerpt from TN's
15 Responses to Oracle USA, Inc.'s First Set of Interrogatories, Response to Interrogatory No. 9.

16     45.    Attached as **Exhibit G** is a true and correct copy of an excerpt from Oracle USA,
17 Inc.'s Second Set of Interrogatories to Defendant TomorrowNow, Inc., Interrogatory No. 12.

18     46.    Attached as **Exhibit H** is a true and correct copy of an excerpt from TN's
19 Response to Oracle USA, Inc.'s Second Set of Interrogatories to Defendant TomorrowNow, Inc.,
20 No. 12.

21     47.    Attached as **Exhibit I** is a true and correct copy of an excerpt from the January 5,
22 2009 Joint Discovery Conference Statement.

23     48.    Attached as **Exhibit J** is a true and correct copy of the February 2, 2009 Email
24 Correspondence from John Polito.

25     49.    Attached as **Exhibit K** are true and correct copies of Defendants' deposition
26 exhibits: (1) 511A and (2) 512A.

27     50.    Attached as **Exhibit L** are true and correct copies of documents produced by
28 Defendants at: (1) TN-OR00007174, (2) TN-OR00007580-7581, (3) TN-OR00008137, (4) TN-

1  OR00008385, (5) TN-OR00008747-8748, (6) TN-OR02812885-2886, (7) TN-OR03768152-
2  8154.

3        51.    Attached as **Exhibit M** is a true and correct copy of Defendant TomorrowNow, Inc.'s January 22, 2008 Response to Plaintiff Oracle's Second 30(b)(6) Notice of Deposition of TomorrowNow, Topic Nos. 1(b), (c), (d), and (l).

6        52.    Attached as **Exhibit N** is a true and correct copy of Defendant TomorrowNow, Inc.'s October 26, 2007 Responses and Objections to Plaintiff Oracle's 30(b)(6) Amended Notice of Deposition, Topic Nos. 13 and 14.

9        53.    Attached as **Exhibit O** is a true and correct copy of an excerpt from Plaintiffs' First Amended and Supplemental Responses and Objections to TN's First Set of Interrogatories, Amended Response to Interrogatory No. 13.

12        54.    I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this 29th day of July, 2009 in Houston, Texas.

/s/ Joshua L. Fuchs
Joshua L. Fuchs