1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:    (415) 626-3939
   Facsimile:    (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA 94303
   Telephone:    (650) 739-3939
10 Facsimile:    (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice)*
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:    (832) 239-3939
15 Facsimile:    (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19           UNITED STATES DISTRICT COURT
20           NORTHERN DISTRICT OF CALIFORNIA
21                    OAKLAND DIVISION

22 ORACLE USA, INC., *et al.*,          Case No. 07-CV-1658 PJH (EDL)
23          Plaintiffs,
24    v.                                **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL**
25 SAP AG, *et al.*,
26          Defendants.
27
28

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................... 1
II. ARGUMENT .............................................................................................................. 1
    A. DEFENDANTS' MOTION IS NOT PROCEDURALLY DEFECTIVE ............... 1
    B. DEFENDANTS' MOTION IS SUBSTANTIVELY MERITORIOUS .................. 3
        1. The Download-To-Product Mapping Information Should Be Produced ........................................................................................................ 3
            (a) Plaintiffs Improperly Conflate Download-To-Product Mapping With Download-To-Contract Mapping ........................ 4
            (b) The System Code-To-Product Mapping Data That Plaintiffs Produced Relates Only To A Part Of The Analysis ....................... 5
            (c) The Documents In Plaintiffs' Actual Possession, Custody, And Control Are The Subject Of The Motion ............................. 6
            (d) The Requested Download-To-Product Mapping Information Is Not Work Product ...................................................................... 8
            (e) The Relief Sought Is Narrowly Tailored And Justified Due To Plaintiffs' Non-Production ...................................................... 10
         2. Plaintiffs Should Be Ordered To Comply With The Folger Subpoena .................................................................................................... 11
         3. Plaintiffs Should Produce Updated Productions For Six Custodians ....... 13
            (a) The Request Is Proper Under The Agreement ............................. 14
            (b) The Request Is Not Unduly Burdensome ..................................... 15
III. CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Ct.*,
　408 F.3d 1142 (9th Cir. 2005) .................................................................................................. 9

*Khalil v. Transunion, LLC*,
　No. 08-10303, 2008 U.S. Dist. LEXIS 83520 (E.D. Mich. Oct. 20, 2008) ...................... 13, 14

**RULES**

Fed. R. Civ. P. 26(b)(5)(A) ............................................................................................................ 8

Fed. R. Civ. P. 26(f) .................................................................................................................... 13

## I. INTRODUCTION

There is no legitimate procedural or substantive reason to deny the relief requested in Defendants' Motion to Compel ("Defendants' motion" or "Mot.") (Dkt. No. 566). Plaintiffs' procedural arguments lack any reasonable support. The fundamental purpose of this Court's decision to limit the number of discovery disputes that the parties can bring to the Court for resolution is judicial efficiency. The purpose is not to provide Plaintiffs with another avenue to block Defendants' legitimate requests for discovery. The three discrete topics contained in Defendants' motion seek narrowly tailored relief. Defendants have provided substantial support entitling them to the relief sought on each of the three issues.

## II. ARGUMENT

### A. DEFENDANTS' MOTION IS NOT PROCEDURALLY DEFECTIVE.

Defendants candidly disclosed the procedural history and support for the filing of Defendants' motion on each of the three topics contained therein. Mot. at 1-2. There is no prejudice to Plaintiffs if the Court considers each of the three topics in Defendants' motion on the merits, and it would work an injustice to Defendants if any topic in the motion is denied on procedural grounds.

At the November 17 discovery conference, the Court granted leave for each side to file motions to compel on three topics, two of which were identified at the conference, with the third to be identified on December 4, 2009. Order Following Discovery Conference ("November 18 Order") (Dkt. No. 553), ¶ 7. During the conference, Defendants identified issues relating to the Fourth Amended Complaint ("FAC"), Plaintiffs' expanded claims (including the Siebel product line), and pre-2005 legacy data. Declaration of Zachary J. Alinder in Support of Oracle's Opposition to Defendants' Motion to Compel ("Alinder Decl.") (Dkt. No. 594), ¶ 2, Exh. A. At the conference, the parties also discussed with the Court Defendants' subpoena to Folger Levin & Kahn LLP regarding the *PeopleSoft v. Oracle* state court litigation (the "Folger subpoena"), and the Court provided guidance that Defendants interpreted as obviating the need for a motion to compel on that issue. *Id.* at 57.

Subsequent events affected the motions now pending before the Court. First, a

1  December 4, 2009 deposition of one of Plaintiffs' employees revealed that Plaintiffs have
2  misrepresented their ability to produce download-to-product mapping information that
3  Defendants have sought since July 2007. This mapping issue is Defendants' open "third issue" as
4  permitted by the November 18 Order. Contrary to Plaintiffs' assertion, the download-to-product
5  mapping issue is not "too broad" (Opp. at 3-4), because the relief sought is very specific and
6  narrow. Defendants readily acknowledge that the download-to-product mapping issue is a
7  discovery dispute that has been ongoing since the very beginning of the case. Jason Rice's
8  December 4 deposition simply brought new facts to light that substantially changed the landscape
9  of that dispute and provides, in part, the basis for the relief Defendants seek. Defendants timely
10 disclosed the download-to-product mapping motion topic on the same day that the new facts
11 giving rise to the motion were discovered. Alinder Decl. ¶ 3, Exh. B.

12       Second, two offsetting events led to one issue being resolved and another issue—that
13 appeared to have been resolved—becoming ripe for consideration by the Court. Specifically, the
14 parties resolved the pre-2005 legacy data issue (Defendants' "second issue" permitted by
15 paragraph 7 of the November 18 Order), but the Folger subpoena issue that Defendants thought
16 was resolved by the Court's guidance at the November 17 conference became ripe when Plaintiffs
17 refused to produce any discovery in response to the subpoena. Alinder Decl. ¶ 3, Exh. B.
18 Accordingly, Defendants request the Court's permission to substitute the Folger subpoena issue
19 for the pre-2005 legacy data issue. Defendants explained this requested substitution in both the
20 December 4 disclosure to Plaintiffs and in Defendants' motion.

21       Third, Defendants have narrowed the request for relief on several discovery issues relating
22 to the FAC, Plaintiffs' expanded claims, and Siebel issues to a single issue, *i.e.*, Defendants'
23 request for updated productions for six key custodians under the parties' Expanded Discovery
24 Timeline Agreement (which is Defendants' "first issue" permitted by paragraph 7 of the
25 November 18 Order). While Defendants acknowledge that the discussion of this topic during the
26 November 17 conference was somewhat broad, that can be explained largely by the fact that the
27 procedure of identifying two of the final three motions to compel emerged extemporaneously at
28 the conference and was not a prearranged and noticed procedure. Regardless, this issue falls

1    within the "first issue" discussed during the November 17 conference and this issue was further

2    narrowed in Defendants' disclosure to Plaintiffs on December 4. Alinder Decl. ¶ 3, Exh. B.

3        Defendants' motion to compel adheres to the letter of the November 18 Order for issues

4    one and three and to the spirit of that order as to the Folger subpoena. Only three issues are

5    presented and they are done efficiently in a twenty-one page memorandum (well short of the

6    thirty-page limit). Plaintiffs' procedural arguments should be denied.

7        **B.**    **DEFENDANTS' MOTION IS SUBSTANTIVELY MERITORIOUS.**

8            **1.**    **The Download-To-Product Mapping Information Should Be Produced.**

9

10       Plaintiffs' opposition proves that the following facts are undisputed:

11   - Plaintiffs had the Jason Rice spreadsheets in their possession since February 2007;

12   - Plaintiffs represented to this Court in August 2009 and to Judge Legge in February

13       2008 that "whatever information we have that would allow you to map, we have

14       given it to them";

15   - As of August 4, 2009, Plaintiffs had not provided Defendants with all mapping

16       information in their possession;

17   - Even today, Plaintiffs have not produced all mapping information; and

18   - Plaintiffs do not deny that the mapping information is responsive to Defendants'

19       discovery requests.

20   *See, e.g.*, Declaration of Scott W. Cowan in Support of Defendants' Motion to Compel ("Cowan

21   Decl.") (Dkt. No. 567), ¶ 15, Exh. I, at 35:12-14.

22       Plaintiffs miss the point of Defendants' motion and instead appear to argue in opposition

23   to a yet-to-be-filed motion for sanctions or preclusion rather than to the limited relief requested in

24   the Defendants' motion. A point-by-point response to the opposition is neither possible nor

25   necessary given the time and length limitations for this reply. Although Defendants contest all

26   points in the opposition, Defendants address only those points necessary for the Court's decision

27   regarding the specific relief Defendants seek on the download-to-product mapping issue.

28   Defendants reserve their right to address all remaining points, if necessary, in any subsequent

HUI-122826v3

- 3 -

DEFS.' REPLY IN SUPPORT OF MOT. TO COMPEL
Case No. 07-CV-1658 PJH (EDL)

1 motions that may follow any relief granted in response to Defendants' motion to compel.

    **(a)  Plaintiffs Improperly Conflate Download-To-Product Mapping With Download-To-Contract Mapping.**

All parties in this case have always understood that there was no automated way to map downloads to customer contracts. In fact, the idea that it is possible to map downloads that exist on TomorrowNow's network to customer contracts that exist in Plaintiffs' production in an automated fashion is nonsensical. A review of the February 13, 2008 hearing transcript where the mapping issue first arose reveals that both parties have long shared a mutual understanding that the term mapping referred to an automated process of connecting downloads to specific licensed products. Plaintiffs discussed the precise meaning of mapping with Judge Legge:

> JUDGE LEGGE: I thought that this term "mapping" meant connecting -- is connecting what was downloaded to specific products.
>
> MR. HOWARD: That is exactly what it does.
>
> JUDGE LEGGE: I thought you were using the term a little bit differently.
>
> MR. HOWARD: I wasn't intending to, Your Honor.

Alinder Decl. ¶ 5, Exh. C, at 18:8-14. Defendants confirmed for Judge Legge this type of mapping information was precisely the type of data they seek: "**But for the system mapping, our focus, as movers on this motion to compel, is: 'Give us the data that we need to tie the downloaded artifact to the licensed product.'**" *Id.* at 24:12-15 (emphasis added). At the February 2008 hearing, Plaintiffs explained in detail what the parties meant by mapping. Using an example, Plaintiffs explained to Judge Legge that each JD Edwards licensed product has a corresponding system code and that each download can be connected to a specific system code. *Id.* at 18:15-19:21; 20:4-16.

The record further makes clear that Plaintiffs knew of no automated method to perform download-to-product mapping. Defendants explained why the partial mapping information Plaintiffs had produced was not sufficient to allow automated download-to-product mapping:

> So what Plaintiff has provided us is the link between the system code and the licensed product. What they haven't provided us is to tell us, without doing the kind of analysis that Mr. Howard just suggested -- is that this file -- this -- you see

there's quite a few of them; there's thousands of them -- and you expand that over hundreds of customers, trying to do some of this manually is next to impossible. But this file -- PG 5208 -- **to know how that particular file, 5208, relates to a licensed product** you would have to go through and open every one of those folders, for every file that had been downloaded, to look at this page, to manually map it -- over thousands of files; over hundreds of customers. You are talking hundreds of thousands of instances -- to take the information that they are producing to us to map this up. What we are wanting is to say, "Tell us what you contend PG 5208 and all of its other brethren" -- **which specific licensed products do those files relate to,** without having to do the manual mapping that he suggests. They have given us the raw data, but what we want is the cross-reference to do that. They should have that in their systems. That's what this motion to compel is all about. We have tens of thousands of files. **If they give us that data, we can do that mapping electronically.**

*Id.* at 27:3-28:2 (emphasis added). Plaintiffs represented in response that they did not have a method of automating download-to-product mapping. *Id.* at 30:5-12.

Judge Legge then discussed with both parties the precise data needed for an automated mapping of downloads to products, and Plaintiffs reiterated the impossibility of automating the download to system code or product step of the mapping process: "JUDGE LEGGE: [I]f you were to give them what they want, you would have to go through each one of the **subfiles one by one**, to produce the code connection or something. Is that right? MR. HOWARD: Yes, and indeed that's what we did to file the complaint." *Id.* at 34:13-20 (emphasis added). The record makes clear that both parties have always understood the mapping issue as a request for automated download-to-product mapping and that Plaintiffs have consistently maintained that they could not produce such mapping information in an automated fashion.

      **(b)  The System Code-To-Product Mapping Data That Plaintiffs Produced Relates Only To A Part Of The Analysis.**

Plaintiffs are correct that they have produced documents and data that list the corresponding system code for each licensed product. *See, e.g.,* Alinder Decl. ¶ 18, Exh. P. Plaintiffs incorrectly assert, however, that this information is the automated mapping information Defendants have been seeking since July 2007. It has been clear since the February 2008 hearing that system code to product information is just one step in the download-to-product mapping exercise. The download-to-product mapping exercise is essentially a two-step process. First,

1 downloads must be linked to the corresponding system code. Second, the system code must be
2 linked to the corresponding product. The documents Plaintiffs attach as Exhibit P to the Alinder
3 Declaration and characterize in their opposition as download-to-product information merely tie
4 products to system codes. Alinder Decl. ¶ 18, Exh. P. This partial mapping information is not
5 the automated download-to-product data requested. Defendants cannot begin an automated
6 mapping exercise without all information in Plaintiffs' possession that shows all the connections
7 between each downloadable artifact and the system codes and products to which they relate.

8       Defendants' motion focuses solely on compelling Plaintiffs to produce all download-to-
9 product mapping in their possession. However, any download to contract mapping information
10 (even if it was derived manually) in Plaintiffs' possession, custody, or control is also responsive
11 to the discovery requests implicated by Defendants' motion. *See* Section II.B.1.c. below.
12 Defendants learned for the first time upon receipt of Plaintiffs' opposition that "Oracle did the
13 hard, time-consuming work of matching up downloads to individual customer contracts to
14 determine licensed status." Opp. at 6:17-18. Thus, Defendants request that this Court order
15 Plaintiffs to produce this responsive, non-privileged mapping information as well.

16
17       **(c)    The Documents In Plaintiffs' Actual Possession, Custody, And Control Are The Subject Of The Motion.**

18       Plaintiffs incorrectly assert that they should not be required to produce the requested
19 information because Defendants have had the download-to-product mapping information they
20 now seek since February 2007 in the form of the Kreutz .htm file and Shankle spreadsheet. Opp.
21 at 18-20. The fact that the Kreutz .htm file and the Shankle spreadsheet have some, but not all, of
22 certain pieces of data contained in the Jason Rice spreadsheet,[1] does not excuse Plaintiffs'

---

23 [1] Neither the Shankle spreadsheet nor the Kreutz .htm document represent automated
24 download-to-product mapping information. The Kreutz document is an .htm file that was not generated for the purpose of mapping ESUs to system codes or products, and it does not contain all the information needed to perform the mapping analysis. Declaration of Mark Kreutz in
25 Support of Defendants' Reply to Oracle's Opposition to Defendants' Motion to Compel ("Kreutz Decl.") ¶¶ 3-4. Likewise, the Shankle spreadsheet is not an automated download-to-product
26 mapping document. Declaration of Keith Shankle in Support of Defendants' Reply to Oracle's Opposition to Defendants' Motion to Compel ("Shankle Decl.") ¶ 3. Mr. Shankle created the
27 spreadsheet through a manual process that took months to perform and that he never completed. Shankle Decl. at ¶¶ 3-4. In creating this document, Mr. Shankle relied on a list of available
28 downloads for a given system code returned by Customer Connection and did not manually open each available file to ensure it related to the relevant system code. *Id.* Additionally, Mr. Shankle

1  fundamental discovery obligation to produce responsive, non-privileged documents and data in
2  their possession, custody, and control.  Moreover, Plaintiffs turn the "burden" argument on its
3  head by asserting in defense of their non-production of responsive data that Defendants could
4  have recreated an index of system codes and ESUs "exactly like" the spreadsheet created by
5  Jason Rice. Opp. at 10.  A "burden" argument can only be sustained when the information sought
6  has not yet been created and the burden of creating it is substantially similar between the parties.
7  Here, Plaintiffs acknowledge that the requested information exists in their possession and that
8  they have refused to timely produce it.  There is no substantial burden on Plaintiffs to produce the
9  requested information.  Plaintiffs' argument that Defendants can somehow cobble together the
10 same data (even if that were true, which it is not) carries no weight in justifying Plaintiffs' non-
11 production of responsive information.

12 Plaintiffs also argue that Defendants have waived their right to seek download-to-product
13 mapping information by cancelling a corporate representative deposition related to mapping, by
14 refusing Plaintiffs' offer to create spreadsheets to link system codes to products provided that
15 Defendants accept Plaintiffs' three conditions, by abandoning their requests for mapping
16 information and their inspection of Customer Connection, and by failing to depose Plaintiffs'
17 employees on this issue. Opp. at 5-7, 14, 16, 20-21.  These arguments simply attempt to punish
18 Defendants for believing Plaintiffs' repeated assertions on the record that Plaintiffs had no
19 automated way to map the downloads to Plaintiffs' products, and to the extent they had any such
20 information, Plaintiffs had provided it to Defendants.  In reliance on Plaintiffs' representations,
21 and in response to this Court's instructions to narrow discovery, Defendants focused their final
22 discovery efforts on topics that Plaintiffs had not indicated were impossible.  Plaintiffs should not
23 be permitted to shift their burden of producing responsive documents and information in their
24 possession, custody, and control simply because Plaintiffs believe that Defendants could or

---

26 (continued…)

27 himself manually typed data into the spreadsheet and gave assignments to other TomorrowNow
   employees to do the same. *Id.*  This document is unreliable, incomplete, and is not an automated
28 download-to-product mapping tool.

1    should have gathered the requested information on their own without the benefit of the responsive
2    documents and information Plaintiffs are withholding.

3              **(d)     The Requested Download-To-Product Mapping Information Is
4                       Not Work Product.**

5              Plaintiffs acknowledge that they have had the Jason Rice spreadsheets since February
6    2007, yet Plaintiffs argue that the spreadsheets were not produced until November 2009 because
7    they are work product. *See, e.g.*, Opp. at 8, 23.  However, Plaintiffs' position that the
8    spreadsheets and other materials not yet produced are work product is contradicted by the
9    representations of Plaintiffs' counsel at the February 2008 and August 2009 hearings, wherein
10   counsel explained that Plaintiffs have not been able to automate the download-to-product
11   mapping exercise and Plaintiffs have produced all mapping information.  Cowan Decl. ¶ 15, Exh.
12   I, at 35:12-14; Cowan Decl. ¶ 10, Exh. D, at 33:6-12.

13             Even if the spreadsheets and other information currently being withheld are work product,
14   Plaintiffs have waived the right to assert the claim.  In the two previous hearings on the mapping
15   issue, Plaintiffs never claimed to be withholding any responsive information on the basis of work
16   product.  In fact, Plaintiffs told this Court in August 2009 that "[a]ll I was saying, your Honor, is
17   that whatever information we have that would allow you to map, we have given it to them." *See,*
18   *e.g.*, Cowan Decl., ¶ 15, Exh. I, at 35:12-14.  Further, in response to precise questioning by Judge
19   Legge in February 2008, Plaintiffs explained that they did not have an automated way to link
20   downloads to systems codes or products without manually opening the downloads one by one:
21   "JUDGE LEGGE:  Do you have, presently existing, any mapping device or program or code
22   which would eliminate the necessity for doing it one by one? MR. HOWARD:  The answer to
23   that, Your Honor, is: 'Not that we have been able to generate so far.'  We're still working on it,
24   because we have the same interest in this that they do." Cowan Decl. ¶ 10, Exh. D, at 33:6-12.

25             Plaintiffs' belated claim of work product is inappropriate.  Plaintiffs have an affirmative
26   obligation under the Federal Rules to ensure that Defendants are on notice that Plaintiffs are
27   withholding information responsive to discovery requests on the basis of work product.  Fed. R.
28   Civ. P. 26(b)(5)(A) (requiring the withholding party to "expressly make the claim" in order to

1   enable "other parties to assess the claim"). Plaintiffs waived any work product protection over
2   the spreadsheets, even assuming, *arguendo*, the spreadsheet could have been subject to those
3   protections. The Ninth Circuit sets out four factors to consider when determining that a party
4   waived work product protection: (1) the degree to which the objection or assertion of privilege
5   enables the litigant seeking discovery and the court to evaluate whether each of the withheld
6   documents is privileged; (2) the timeliness of the objection and accompanying information about
7   the withheld documents; (3) the magnitude of the document production; and (4) other particular
8   circumstances of the litigation that make responding to discovery unusually easy or unusually
9   hard. *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005).
10  Plaintiffs never specifically objected on privilege or work product grounds to Request for
11  Production No. 51 ("Documents sufficient to show all Electronic Software Updates ('ESUs') and
12  Software Application Requests ('SARs') relating to the Software and Support Materials, and the
13  system code for each such SAR and ESU"), and thus, Defendants could not have known that
14  Plaintiffs were withholding information responsive to this request under a claim of privilege.[2]

15  Plaintiffs repeatedly asserted to Defendants, Judge Legge, and this Court that Plaintiffs
16  had provided all available mapping information to Defendants. *See, e.g.*, Cowan Decl. ¶ 15, Exh.
17  I, at 35:12-14. Thus, Defendants and the Court never had the information necessary to evaluate
18  Plaintiffs' claim of work product protection, and Defendants were unable to move to compel such
19  information at an earlier time. Each of the factors weighs in favor of denying work product
20  protection. Thus, to the extent Plaintiffs could have asserted work product protections with
21  respect to the requested download-to-product mapping information, including the contract
22  mapping information Plaintiffs acknowledge exist in their opposition, Plaintiffs waived those

---

[2] Plaintiffs state that their privilege log produced to Defendants on May 8, 2008 was "timely and accurate," thus suggesting that the privilege log entries should have informed Defendants that responsive information was being withheld on the mapping issue. Opp. at 23. However, Plaintiffs' privilege log itself belies this argument. Cowan Decl. ¶ 17, Exh. K. Of the twenty-six pages of privilege log entries mentioning Jason Rice as either the custodian from whose files the document originated or a party to the communication, Plaintiffs' description of the several spreadsheets listed states: "Confidential spreadsheet regarding TomorrowNow investigation prepared at the direction of counsel in anticipation of litigation." *Id.* at 1. Clearly, such vague and high-level descriptions were not enough to put Defendants on notice that Plaintiffs were withholding mapping information on the basis of work product.

1  protections through their failure to object and their repeated representations that whatever
2  responsive information they had would be produced to Defendants.

3  Finally, even if this Court determines that the Jason Rice spreadsheets and other
4  responsive information Plaintiffs are withholding are work product and that the protection has not
5  been waived, Defendants clearly had a substantial need for the information.  Plaintiffs conceded
6  in their opposition that Defendants have a substantial need for the mapping information.  Opp. at
7  23 ("[p]utting 'substantial need' aside").[3]  Further, as explained in note 1, Defendants do not have
8  their own "substantial equivalent" in the form of the Shankle and Kreutz documents, and
9  Defendants still know of no way to create their own automated mapping documents similar to the
10 Jason Rice spreadsheet.  Kreutz Decl. ¶ 5; Shankle Decl. ¶ 5.  Plaintiffs should not be permitted to
11 continue to conceal relevant mapping information that either supports or rebuts the arguments that
12 Plaintiffs and their experts will present at trial.

### (e) The Relief Sought Is Narrowly Tailored And Justified Due To Plaintiffs' Non-Production.

15 Plaintiffs argue that Defendants' requested relief is unduly burdensome because it would
16 require Plaintiffs to locate produced documents responsive to Defendants' requests and obtain
17 date and author information that is "akin to creating a 'super-privilege log' for potentially
18 thousands upon thousands of non-privileged documents."  Opp. at 25.  Plaintiffs' characterization
19 is misleading given the specificity of Defendants' motion, which simply requests: (1) Plaintiffs'
20 confirmation that they have fully responded to RFP Nos. 44, 45, 47, and 51 and Int. No. 7 and
21 produced all responsive materials associated therewith; and (2) limited additional information
22 regarding the documents they have produced in response to Defendants' discovery requests,
23 including the dates of creation and production of the data.[4]  If Plaintiffs indeed are withholding

---

[3] Further, Plaintiffs also acknowledged Defendants' substantial need for the mapping information during the February 2008 hearing before Judge Legge, where Plaintiffs' counsel confirmed that "whatever information we have that should allow you to map, we have given it to them."  Cowan Decl. ¶ 15, Exh. I, at 35:13-14.

[4] Importantly, Defendants do not request that Plaintiffs create or compile any new download-to-product mapping information.  Defendants are simply requesting the production of mapping information that Plaintiffs acknowledge they have in their possession.  This Court provided similar relief to Plaintiffs in response to Plaintiffs' previous Motion to Compel further response to Interrogatory No. 13 related to allegedly inappropriate downloads.  Reply Declaration

1  "thousands upon thousands" of documents containing data that automatically maps downloads to
2  products, that justifies granting, not denying Defendants' motion.  And, compelling Plaintiffs to
3  produce the contract mapping information that links downloads to individual customer contracts
4  is not unduly burdensome, because they have confirmed that they have that specific information
5  in their possession, custody, and control.

6  Assuming that an order granting Defendants' motion on this issue does not reveal
7  thousands upon thousands of additional responsive mapping documents, the burden imposed with
8  the requested relief is minimal.  Indeed, Plaintiffs have already identified in their October 13,
9  2009 letter the "mapping and system code documents" responsive to the requests at issue.  Cowan
10 Decl. ¶ 16, Exh. J.  Defendants merely request that Plaintiffs expound with additional information
11 regarding the creation of those documents, much of which Plaintiffs have likely already identified
12 in drafting the October 13 letter.  This relief is both narrowly tailored and necessary in light of
13 Plaintiffs' continued refusal to produce download-to-product mapping information that they
14 acknowledge is responsive and in their possession.

15 **2.** **Plaintiffs Should Be Ordered To Comply With The Folger Subpoena.**

16 Nothing in Plaintiffs' opposition justifies its refusal to comply with the Folger subpoena.[5]
17 Defendants served a narrow subpoena in the first instance by seeking only non-privileged
18 documents from the *PeopleSoft v. Oracle* state court action.  McDonell Decl. ¶ 2, Exh. B.
19 Thereafter, in accordance with the Court's guidance, Defendants narrowed the request further,
20 and now seek only sixty-four identified pleadings (out of an alleged universe of 1,500) as well as
21 what Plaintiffs characterize as a "small number" of deposition transcripts.  *Id.* at ¶ 9, Exh. I.  This
22 discovery is not "too late," as Plaintiffs argue.  Opp. at 26.  Defendants served the subpoena two

---

(continued…)

of Scott W. Cowan in Support of Defendants' Motion to Compel ("Cowan Reply Decl.") ¶ 1, Exh. A, at 28:16-17, 29:4-5.  The Court was not inclined to order Defendants to conduct any new or additional analysis related to any alleged inappropriate downloads. *Id.* at 30:14-31:4.  Instead, the Court asked Defendants to explain their previous analysis completed in answering paragraph 15 of Plaintiffs' First Amended Complaint.  *Id. See also* Cowan Reply Decl. ¶ 2, Exh. B, at 1.

[5] Declaration of Jason McDonell in Support of Defendants' Motion to Compel, ("McDonell Decl.") (Dkt. No. 568) ¶ 2, Exh. B (Folger subpoena).

1   and one-half months before the close of fact discovery.  McDonell Decl. ¶ 2, Exh. B.  This

2   allowed ample time for Folger to meet and confer about its scope and other objections and to

3   complete the production prior to the close of fact discovery.

4         Plaintiffs' likening of the Folger subpoena to Plaintiffs' attempt to inject sweeping new

5   damages theories into the case after two years of litigation is misguided.  Plaintiffs' attempt was

6   properly rejected by this Court's sanctions order, and thereafter confirmed by Judge Hamilton

7   (Dkt. Nos. 482 and 532, respectively), because Plaintiffs directly contradicted their consistent

8   prior position about the proper scope of discovery that had served as the basis upon which

9   discovery had been planned and implemented over a two-year period.  In contrast, the discovery

10  sought by the Folger subpoena goes directly to Defendants' causation defense.  Plaintiffs do not,

11  and cannot, deny that this theory has always been in the case or that Defendants have never

12  wavered from it.

13        Moreover—unlike the issues addressed on the sanctions motion that threatened to create

14  massive new discovery burdens and substantial delays in the case schedule—an order compelling

15  compliance with the Folger subpoena will impose virtually no incremental burden on Plaintiffs

16  and will have no impact on the schedule.  Whatever argument Plaintiffs had concerning the

17  burden of responding to the subpoena has been mooted as Plaintiffs admit that they have now

18  completed the review of the requested documents.  Declaration of Lucia MacDonald in Support

19  of Oracle's Opposition to Defendants' Motion to Compel ("MacDonald Decl.") (Dkt. No. 593) ¶¶

20  2-3.  The only additional task is to copy them at Defendants' expense or to make them available

21  to Defendants for copying.  That is a negligible burden.

22        Plaintiffs' arguments that the discovery is "unnecessary to show that fear, uncertainty, and

23  doubt ("FUD") drove PeopleSoft customers to TomorrowNow" miss the mark.  Opp. at 26.

24  Plaintiffs first argue that their FUD directly crippled only PeopleSoft's ability to sell software and

25  thus, is irrelevant to PeopleSoft's ability to service its customers.  This argument fails for the

26  common-sense reason that customers that were scared away from purchasing new PeopleSoft

27  software would have less interest in relying on PeopleSoft to support their old software and would

28  be more likely to seek alternative support providers like TomorrowNow.  Plaintiffs then argue

1  that Defendants' need for this discovery "can be met by Oracle's concessions and the publicly-

2  available pleadings and press." Opp. at 26.  Plaintiffs' "concessions," however, are laden with

3  self-serving limitations and thus are no substitute for the contemporaneous evidence.  For

4  example, Plaintiffs cite to their supposed concession that "FUD existed in the marketplace

5  (including from SAP) about how the acquisition might impact the PeopleSoft base." Opp. at 26.

6  By including SAP as a source of the FUD and by downplaying the FUD as something that

7  "might" impact the PeopleSoft base, Plaintiffs offer rhetoric, not the actual evidence sought by

8  Defendants.

9      Finally, the Court should reject Plaintiffs' effort to be the sole and final decision maker on

10  the relevance of the information sought.  Plaintiffs admit outright that *some* of the information is

11  relevant, arguing only that "most" of the items are irrelevant.  Opp. at 26.  Moreover, they

12  concede that six of the customers specifically at issue in this case are referenced in the

13  documents.  Opp. at 27, n. 7.  But, even for that determination, Plaintiffs rely only on their own

14  counsel.  MacDonald Decl. ¶¶ 2-4.  Thus, Plaintiffs' argument that the public information should

15  suffice fails, as there is no indication that complete copies of these customer-specific documents

16  are in the public record.  Left to their own devices, Plaintiffs would withhold even that discovery.

17  The discovery sought by this motion is sufficiently relevant and there is no burden.  Plaintiffs

18  should be ordered to produce it forthwith.

19      **3.**    **Plaintiffs Should Produce Updated Productions For Six Custodians.**

20      The facts do not support Plaintiffs' abandonment argument.  They rely on a single, readily

21  distinguishable, unpublished, out-of-district decision.  Opp. at 29.  In *Khalil v. Transunion, LLC*,

22  No. 08-10303, 2008 U.S. Dist. LEXIS 83520 (E.D. Mich. Oct. 20, 2008), the plaintiff served

23  discovery requests prior to the Rule 26(f) conference.  The defendants properly objected to the

24  requests as premature and refused to respond.  *Id.* at *7.  The plaintiff was, thus, "clearly on

25  notice that [defendant] did not intend on answering them." *Id.*  The plaintiff did not challenge the

26  objection, made no attempt to discuss it with the defendants, did not raise the requests in a

27  subsequent joint discovery plan, and failed to meet and confer prior to filing a motion to compel.

28  *Id.* at *7-9.  Based on these facts, the court found that the plaintiff had no reasonable basis to

1 conclude the requests were still viable at the time of the motion. *Id.*

2     Here, by contrast, Defendants were not "clearly on notice" that Plaintiffs did not intend to produce the post-litigation custodian documents. Plaintiffs concede that they did not refuse Defendants' request when it was first made in May 2009. Instead, they proposed a meet and confer following an investigation of "the burden associated with [the] request." Alinder Decl. ¶ 57, Exh. QQ. As noted in Defendants' motion, the parties' recollections of that meet and confer differ. Plaintiffs contend that they asked for further explanation from Defendants, while Defendants' notes are unclear as to the outcome of the discussion.[6] Mot. at 18. Beyond this miscommunication, Plaintiffs cannot point to anything that would lead them to believe Defendants had abandoned the request, or to any efforts on Plaintiffs' part to determine whether that was, in fact, the case. Plaintiffs complain that Defendants failed to raise the issue at subsequent discovery conferences. But Defendants had no reason to raise it, because until Plaintiffs' November 30 letter, they were unaware Plaintiffs believed the request had been abandoned.[7] Moreover, unlike *Khalil*, Defendants *did* follow up on the request, by letter on November 17 requesting confirmation that the documents had been produced and, when it became clear Plaintiffs did not intend to produce them, in meet and confers prior to this motion.

### (a) The Request Is Proper Under The Agreement.

    Plaintiffs' argument that the Expanded Discovery Timeline Agreement (the "Agreement") does not permit requests for documents from "key custodians" ignores its plain language. McDonell Decl. ¶ 12, Exh. J, Items 8 and 10 ("documents from centralized sources and key custodians from both sides") and Item 9 ("reports kept in centralized locations (or with key custodians)"). Plaintiffs concede that they produced documents for key custodians for the pre-2004 time period under the Agreement. Declaration of Martha Jeong in Support of Oracle's

---

[6] As Plaintiffs note, the June 4 meet and confer covered numerous other discovery issues in addition to the request for updated productions from key custodians. Alinder Decl. ¶ 57.

[7] Plaintiffs' attempt to infer abandonment from the September 23, 2009 Joint Discovery Conference Statement should be rejected. Opp. at 28-29. That document, and the related discussion at the September 30 discovery conference, concerned only the timing of Plaintiffs' custodian productions, not the scope. Dkt. No. 493, at 9-10; Alinder Decl. ¶ 60, Exh. RR. Had Defendants been aware that Plaintiffs believed the request for post-litigation documents had been abandoned, Defendants certainly would have raised the issue.

1  Opposition to Defendants' Motion to Compel ("Jeong Decl.") (Dkt. No. 592) ¶ 4. Moreover,

2  Plaintiffs are wrong that they did not make a similar request of Defendants for post-litigation key

3  custodian documents, which Defendants produced at substantial expense. Cowan Reply Decl. ¶

4  3. Similarly, Plaintiffs' bald assertion that the six custodians are not "key" (Opp. at 30) cannot

5  refute Defendants' specific facts to the contrary. Mot. at 19-20.

### (b)     The Request Is Not Unduly Burdensome.

7  The fact that data must be re-collected does not make the request unduly burdensome.

8  The parties anticipated re-collection when they (at Plaintiffs' request) entered into the Agreement,

9  and Defendants also have had to re-collect a large amount of data, including for nine key

10 custodians for the post-litigation period. Cowan Reply Decl. ¶ 3. Plaintiffs concede that

11 Defendants' request was first made in May 2009, six months before the close of discovery and

12 long before any dismantling of the "discovery machinery," and that the miscommunication came

13 to light in November, before the close of fact discovery. To the extent there is any increased cost

14 to Plaintiffs, that has been addressed by Defendants agreeing to reduce the number of key

15 custodians from eleven to six.

### III.    CONCLUSION

17 For the above reasons, Defendants' motion to compel should be granted.

19 DATED: January 12, 2010              JONES DAY

20                                     By: /s/ Jason McDonell
                                          Jason McDonell
21                                     Attorneys for Defendants
                                       SAP AG, SAP AMERICA, INC., and
22                                     TOMORROWNOW, INC.

HUI-122826v3

- 15 -

DEFS.' REPLY IN SUPPORT OF MOT. TO COMPEL
Case No. 07-CV-1658 PJH (EDL)