# EXHIBIT J

Dockets.Justia.com

DISCOVERY CONFERENCE          November 25, 2008

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

| | |
|---|---|
| ORACLE CORPORATION, a Delaware ) <br> Corporation; ORACLE, USA, INC.,) <br> a Colorado Corporation; and   ) <br> ORACLE INTERNATIONAL            ) <br> CORPORATION, a California      ) <br> Corporation,                   ) <br>                                ) <br>          Plaintiffs,           ) <br>                                ) <br>    vs.                         ) <br>                                ) <br>                                ) <br> SAP AG, a German Corporation;   ) <br> SAP AMERICA, INC., a Delaware   ) <br> CORPORATION; TOMORROWNOW, INC.,) <br> a Texas Corporation; and DOES   ) <br> 1-50, Inclusive,               ) <br>                                ) <br>          Defendants.           ) <br> _____) | Case No. C07-1658 <br> PJH(EDL) <br> <br> <br> <br> <br> <br> <br> <br> FURTHER DISCOVERY <br> CONFERENCE |

November 25, 2008

TRANSCRIPT OF AUDIO RECORDING OF DISCOVERY CONFERENCE

TRANSCRIBED BY:  FREDDIE REPPOND

Merrill Legal Solutions
(800) 869-9132

Page 34

1   one side --
2        THE COURT: Or it's sort of like -- I guess --
3   you know we could go the RFA route. I mean that's
4   another thing, but I don't want to get into, you know,
5   all of that. I think that would be less cooperative.
6   I'd prefer to --
7        MR. PICKETT: This has been going on since
8   June, so we're now facing almost its six-month
9   anniversary; and I don't want it to have a seventh- or
10  eighth-month anniversary. I think this is something
11  we've got to resolve one way or the other. If we can't,
12  it has big impact on discovery, because we've been
13  hoping to get beyond this. Then we need to go back and
14  say there are far many more custodians that we're going
15  to need production from. We may need to go to Judge
16  Hamilton to get -- and you don't want to go down that
17  road.
18       THE COURT: Right. Well -- and to some extent
19  that's always been, I think, the incentive for the
20  Defendants to stipulate; that is to say the alternative
21  is to spend a huge amount more money and time on
22  unearthing every fact.
23       MR. COWAN: That is in part, Your Honor, the
24  quid pro quo. One issue that -- I don't think that
25  Mr. Pickett's suggestion is a bad one in terms of

Page 35

1   getting assistance, but I do think we need to separate
2   two things.
3        One is the Court's assistance on the substance
4   of a stipulation, because I think that starts venturing
5   into real 408 kind of negotiation compromise because the
6   stipulations they're looking for really go to the heart
7   of some of their claims relative to their copyright
8   allegations specifically before the Court could kind of
9   get involved in the middle of the parties talking about,
10  you know, what facts they're going to agree to and have
11  the implications on the claims and start having that
12  substantive discussion is really more of a settlement
13  kind of discussion than a procedural one. There are a
14  number of things the Court so far has been able to help
15  us with on the extrapolation side on the process and
16  procedural side. But if we were to get assistance from
17  the Court, maybe -- I know the last thing the Court
18  wants to do is involve yet another jurist in this -- but
19  maybe that's something that Magistrate Spero could
20  handle --
21       THE COURT: Do you have -- is he doing your
22  settlement discussions?
23       MR. COWAN: He is. En lieu of it, because we
24  are talking substance with him. And so I think that
25  probably makes sense to have some division there so that

Page 36

1   the parties aren't coming before you and you get to see
2   the sausage being made, if you will, in terms of that
3   negotiation on the substantive issue.
4        THE COURT: Well, I mean I will say that I
5   don't think there's any rule against having the same
6   judge do settlement and discovery; and we used to in
7   this court do it the same; and it's still done the same
8   in San Jose. But then there was the rare case where
9   that -- but it did occur -- where it was sort of
10  uncomfortable; and so that's why we adopted the policy
11  about eight years ago, I think; and I think it was Judge
12  Hamilton changing her own mind after -- when she was
13  still a magistrate judge -- that it was better to err on
14  the side of separating, especially since there's enough
15  of us to do that.
16       I don't have -- I mean -- so I think that's a
17  valid point. Whatever, you know, you all think --
18  however you want to divide that labor between Judge
19  Spero and myself, that's fine. As I say, I mean I think
20  that by the very nature I can't sort of force you to
21  stipulate. There's an oxymoron there. But I did have
22  in mind less the sort of the testimony extrapolation but
23  also just sort of some of the data. I mean I don't
24  know -- it might have been a simplistic -- turn out to
25  be simplistic, but -- given the complexities -- but I

Page 37

1   had the thought that if you -- you know -- if there were
2   a thousand environments created and, you know, you
3   sample -- took a sample of them and it showed
4   infringe/not infringe or do a certain kind of thing or
5   not do a certain kind of thing, whether or not you
6   conclude that constitutes infringement that you could
7   then extrapolate. So I don't know whether that has --
8        MR. COWAN: As with everything on the
9   extrapolation side, the devil's in the details of how --
10  what specifically you're extrapolating. And then more
11  importantly and we agree -- and we reinforced this most
12  recently in our response -- how that's going to be used,
13  how that agreement of whatever the facts are for
14  purposes of this case, how it's going to be used and
15  what implications it has, because we cannot do our job
16  as counsel for our clients in counseling them on what
17  they should agree to without being able to put a bottom
18  line to that in terms of what it means in terms of the
19  client; and I think -- you know, I acknowledge that this
20  process has taken time and Mr. Pickett correctly
21  indicates we've been talking about this since June. We
22  started on the technical side and we ended up more on
23  the testimony side --
24       THE COURT: Yeah, that's --
25       MR. COWAN: -- and now we've moved to a

Page 38

1  request-for-admission stipulation issue.
2      THE COURT: Well, you know -- I don't know --
3  I mean -- I don't know what's really going on. I
4  haven't seen any of these, but I mean I would -- I sort
5  of had in mind, putting it in a more fundamental way,
6  stipulating to facts but not to their implications.
7      MR. PICKETT: The problem we are having with
8  that you've got to tie the relevance of the particular
9  fact to the issue; and you can leave a lot of that open,
10 but I think you've got to at least tie it to an issue.
11     THE COURT: What's an example?
12     MR. PICKETT: Good question. I think
13 essentially whether it goes to -- whether it provides
14 the fundamentals -- the building blocks, if you will --
15 for an infringement, that these are the acts that are
16 relevant to that issue, not that it is infringement --
17     THE COURT: Well --
18     MR. PICKETT: -- this is the universe of acts
19 that goes to the infringement.
20     THE COURT: Yeah. I guess I don't know. I
21 mean, in other words, I don't think that you should --
22 you know -- if there's a good-faith disagreement about
23 whether something constitutes infringement or not, I
24 don't think they can stipulate to that. But if it's a
25 kind of -- if on the other hand you're talking about is

Page 39

1  this evidence, which if you ruled -- if you made an
2  objection irrelevant you would be laughed down, you
3  know. You ought to be able to agree that's in the realm
4  of relevant facts. You don't necessarily agree that it
5  establishes something or it doesn't, if that's in good
6  faith --
7      MR. COWAN: And I think what I'm hearing you
8  say, Your Honor, is, Look, there's -- don't make them
9  jump through hoops proving something that you know
10 inevitably you're going to have to admit anyway.
11     THE COURT: Yeah.
12     MR. COWAN: But the problem with that comes if
13 you do it, something other than testimony that's coming
14 out of a witness's mouth or what a document shows and
15 the lawyers get involved in that, it gets a lot more
16 complicated because you're creating evidence --
17     MR. PICKETT: Yes and no. We presented a
18 three-page stipulation -- three pages -- on this issue
19 of -- what -- 30 days prior to -- prior to Friday. And
20 they studied it for 30 days and they have their
21 18-page -- but I think we're trying to simplify it; and
22 I'm still optimistic -- I'm eternally optimistic --
23     THE COURT: Well, you know, again we're
24 talking about it in a vacuum. I will say that I had the
25 experience -- and it may be quite different -- but I had

Page 40

1  a trial having to do with disparate impacts, civil
2  rights, funding of transportation in the Bay Area; and
3  there are, you know, seemingly a gazillion different
4  sources of federal, state, and local money which have
5  multiple restrictions and issues on how you can spend
6  them and for what and so forth.
7      At the summary judgment stage I expressed a
8  lot of frustration that a lot of the facts seemed to me
9  to be undisputable and should have been stipulated to
10 because -- I mean in this case a lot of them were
11 statutory -- but, you know, 5 percent had to go to
12 this and X -- highways -- however you could make a
13 certain exception -- very, very complicated, but
14 nonetheless I felt should be beyond dispute. There
15 might be few things around the edges which could be
16 disputed or very complicated ways you could get around
17 them, but the main -- and so -- I had to basically, you
18 know, didn't -- was frustrated in summary judgment. And
19 there were seemly disputed facts that shouldn't have
20 been disputed. We went to trial; and as the testimony
21 wore on, I said, I can't understand how you disputed
22 this. This should have been stipulated to. And they
23 stipulated to numerous findings of fact. And I was
24 absolutely right and it was very -- you know -- I think
25 if you put Judge Hamilton through that, you will all

Page 41

1  suffer.
2      MR. COWAN: We're mindful of that, Your Honor.
3  And that's why we went through the things we did to tell
4  them what the problems were in writing so they can look
5  at that and --
6      THE COURT: Now, without having seem them --
7         [CROSS-TALK]
8      MR. PICKETT: I don't think it's ripe to
9  present you this, but it's going to be ripe soon,
10 because I think we need to resolve this before long.
11     THE COURT: I think -- I think you'll have to
12 discuss, too, which judge you think you should deal
13 with.
14     MR. PICKETT: I'm agnostic.
15     THE COURT: Yeah. If it's a process issue,
16 it's one thing. I thought it was going to be more along
17 the lines of sort of sampling and experts and so on, but
18 you're talking now something different. And so it may
19 be less than what I was having in mind. It's still a
20 good idea. I just --
21     MR. PICKETT: It would be great to achieve if
22 we could.
23     I hesitate -- well, let me try -- this may not
24 be useful or not or it may be. One example of a problem
25 is we say that -- we cite this testimony. We say this

Page 42

1  is the way it was done for each -- we use the word
2  "critical support" -- basically for each copy that was
3  made this is how --
4      THE COURT: Each what?
5      MR. PICKETT: Each copy that was made.
6      And one of their objections is, Well, we can't
7  say "each" because we may want to put in evidence that
8  it wasn't done for this particular copy or application.
9  But that seems to me to kind of --
10     [CROSS-TALK]
11     THE COURT: Could the answer be the vast
12 majority?
13     MR. COWAN: I think the answer --
14     THE COURT: In other words --
15     MR. PICKETT: If we don't have access --
16     THE COURT: Yeah. But I mean if it's -- I
17 don't know what to say, but if -- well -- you can't --
18 if you haven't produced the counter example, obviously I
19 don't see how you could put it in evidence --
20     MR. COWAN: And that's part of why we've been
21 very vociferous in our response is to try to guide them
22 to what our issues are to where we could -- you can
23 either define something by what it is or by what it's
24 not, right? And I think having an umbrella that covers
25 everything when we know going into it no, no, there's

Page 43

1  some instances where that is not --
2      THE COURT: Okay. So why don't you give them
3  the examples of instances where it's not the case and
4  then you arrive either at something that's truly
5  quantitative, you know, 95 percent of the time or
6  60 percent of the time; or you arrive at some words of
7  qualitative; and I don't know if that would be
8  satisfactory. But I'll bet you for a jury it is, like
9  the "vast majority" or "most," "more than half," you
10 know, "at least 75 percent" -- I mean you know juries
11 don't cut it that finely, if even that finely, you know.
12     MR. PICKETT: Okay. That's actually helpful.
13     MR. COWAN: Correct.
14     MR. PICKETT: All right.
15     MR. COWAN: Thank you, Your Honor.
16     The next -- the next point is just an FYI for
17 you that we included on here is that the Oracle filed a
18 third amended complaint. We filed a motion to dismiss;
19 and Judge Hamilton is hearing that tomorrow. So that's
20 that point.
21     THE COURT: Is that sort of expanding the
22 case? Is that what's at issue?
23     MR. COWAN: It's our attempt to address what
24 we believe are the deficiencies in their copyright
25 claim; and so it's --

Page 44

1      MR. PICKETT: Basically an ownership -- what
2  Oracle entities own the copyright.
3      THE COURT: Okay.
4      MR. COWAN: But that case is -- again, that
5  motion is fully briefed and submitted.
6      THE COURT: All right.
7      MR. COWAN: The other issues really relate to
8  the status of depositions in this case; and the parties
9  filed their separate statements regarding that --
10     THE COURT: Right.
11     MR. COWAN: -- but I've got one thing for you
12 that I think will at least show you where we are and
13 what we have done, because I think it's important --
14 it's just a two-page recap of the depositions that have
15 been taken so far in this case.
16     THE COURT: Sorry. I think I better take a
17 recess.
18     MR. COWAN: Sorry about that.
19     [Interruption in audio]
20     MR. COWAN: -- if they continue to push, push,
21 push, got to have it now, got to have it now; and the
22 answer is we are producing a phenomenal amount of data.
23 We are regularly producing witnesses every month. We
24 are making progress in this case and at some point --
25 and we are working with them to constantly shift

Page 45

1  priorities to do that. They now seek 30 days to have
2  the documents produced for a given witness 30 days in
3  advance of the deposition. That necessarily involves a
4  lot of lead-time to get that witness's document
5  environment queued up, to get them queued up --
6      THE COURT: Now, I wondered about that,
7  whether shortening that down to something like 21, which
8  would still give you three weeks, but also you know
9  requires less lead-time. Would that help?
10     MR. COWAN: It does. And both sides are still
11 right before the deposition sending a few documents here
12 and there, which just naturally it happens --
13     THE COURT: As long as it's a few rather
14 than --
15     MR. PICKETT: The other thing I would suggest
16 is a rolling production. The practice has been to wait
17 until the deadline to produce rather than -- and I think
18 rolling production is a better practice. If we could do
19 that --
20     MR. COWAN: Your Honor, it's not practical;
21 and the reason why is the way these productions are
22 done, we have a huge group of individuals, as I
23 explained. The contract lawyers -- the declaration I've
24 already put in on that --
25     THE COURT: You're keeping all of India