# EXHIBIT L

Dockets.Justia.com

PROCEEDINGS   February 13, 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

| | |
|---|---|
| ORACLE CORPORATION, a Delaware )<br>Corporation; ORACLE, USA, INC.,)<br>a Colorado corporation; and    )<br>ORACLE INTERNATIONAL            )<br>CORPORATION, a California       )<br>corporation,                    )<br>                                 )<br>         Plaintiffs,             )<br>                                 )<br>    vs.                          )<br>                                 )<br>                                 )<br>                                 )<br>SAP AG, a German corporation;    )<br>SAP AMERICA, INC., a Delaware    )<br>corporation; TOMORROWNOW, INC.,  )<br>a Texas corporation; and DOES    )<br>1-50, Inclusive,                 )<br>                                 )<br>         Defendants.             )<br>_____) | Case No. C07-1658<br>PJH (EDL)<br><br><br><br><br><br><br><br><br><br>FURTHER DISCOVERY<br>CONFERENCE |

February 13, 2009

TRANSCRIPT OF AUDIO RECORDING

TRANSCRIBED BY:   FREDDIE REPPOND

Merrill Legal Solutions
(800) 869-9132

Page 14

1  rely on witness testimony, if that's the only way
2  they'll agree, of having to go out and take more
3  testimony.
4       THE COURT: Witness testimony as opposed to
5  what?
6       MR. HOWARD: Well, as opposed to documents.
7  Here's the thing: What we're trying to establish --
8  Mr. Cowan said that the JD Edwards is not part of the
9  current stip. The current stip, as he knows, was a --
10 is a template. It addresses the biggest piece of the
11 client deliverables, which are PeopleSoft brand product,
12 payroll bundles that were sent out from TomorrowNow to
13 its clients. That's been a lot of fixes that were sent
14 out. We started there to see if we can get agreement
15 and get a template that we could then apply to the other
16 aspects of the case, like JD Edwards. And those
17 deliverables are -- all of them, every last one of
18 them -- the result of illegal copies of software, the
19 result of cross-use of software. They were developed
20 through the testing of illegal copies. And that is in
21 documents. You don't need witness testimony for it.
22 It's clear as day in front of everybody's eyes. And I
23 think they know it.
24      But I think -- so I don't really understand
25 why there has to be witness testimony. We're not

Page 15

1  insisting that we say every single object or every
2  single fix be done, but what we are asking is for a
3  stipulation that reflects reality and is independent of
4  damages. And we think that that is fair. And if we
5  think that we can get it, then we're not as far apart
6  as we may otherwise be on the needs of the calendar.
7       THE COURT: All right. And --
8       MR. COWAN: Couple things. One, on the
9  obviously his characterization of my clients' conduct,
10 pre- or post-litigation, I don't agree with. But I
11 think for purposes of this discussion, we can deal with
12 the other points he made.
13      I agree that the SAS database provides some
14 enriched source of information. We have under the
15 extended discovery timeline agreement now completed our
16 privilege review of that. I believe it's being
17 produced today. I believe our office has already sent
18 Mr. Howard an e-mail indicating whether he wants
19 delivery tomorrow or not. It required an incredible
20 amount of review to get that ready, but it is ready.
21 So as of tomorrow or Tuesday, whenever they elect
22 delivery, they should have the SAS database through
23 October 31, 2008. And that database has all the data
24 points in it -- or most of the data points in it --
25 that Mr. Howard is referring to.

Page 16

1       You notice on the stipulation that was filed
2  as Exhibit A to the discovery conference statement
3  there are a number of appendices. Those appendices
4  were created using that SAS database. So that database
5  has a rich source of information for them. Regardless
6  of whether we have a stipulation, that database is
7  available to them to meet their burden of proof to come
8  forward and establish whatever they think they can
9  establish with that information.
10      With respect to the need for testimony to
11 come out of the witnesses' mouths rather than the
12 lawyers' characterization of that, I would hope that
13 Mr. Howard can appreciate and certainly hope the Court
14 could appreciate what the lawyers say happened is not
15 something particularly that has liability implications
16 and potentially significant damages implications. It's
17 not something that the business folks want to rely a
18 hundred percent on. They want to know what the
19 witnesses have to say about this, particularly since
20 we're dealing with a subsidiary company. The
21 decision-making on these kinds of things are certainly
22 being made at the highest level of the parent company;
23 and we have to have that evidence.
24      THE COURT: Well, you -- I mean, of course,
25 unlike the Plaintiffs, you can interview the witnesses

Page 17

1  and do it informally. But in my own opinion, often
2  documents are a better source of objective information
3  about -- of this type -- than witnesses. Witnesses'
4  recollections to the extent they're at odds with the
5  document are usually untrue or mistaken; and the jury
6  does not believe them.
7       So a lot of what I'm hearing does not make
8  any sense, actually. I mean unless -- unless it's an
9  attempt to stay away from the truth because the
10 witnesses will get up there and say, No, we didn't do
11 that, you know, I don't recall doing that, which is a
12 pretty weak defense, needless to say, if the documents
13 are clear. Now, that's assuming the document shows
14 something.
15      MR. COWAN: That's also assuming --
16      THE COURT: When the documents are ambiguous,
17 obviously you need witness testimony, but --
18      MR. COWAN: I think that's also assuming that
19 we have said we wouldn't agree to documents that weren't
20 part of this. We have never said documents weren't part
21 of this.
22      THE COURT: So I'm not really sure what I'm
23 hearing. But I guess I'm also not sure what I'm
24 supposed to do. In other words, if the Plaintiff is
25 asking me to force them to stipulate, I can't do that.