BINGHAM

Geoffrey M. Howard
Direct Phone: (415) 393-2485
Direct Fax:    (415) 393-2286
geoff.howard@bingham.com

February 19, 2010

The Honorable Elizabeth D. Laporte
United States District Court
Northern District of California
450 Golden Gate Avenue, Courtroom E, 15th Floor
San Francisco, California 94102

**Re:** *Oracle USA, Inc., et al. v. SAP AG, et al.*, **Case No. 07-CV-1658**

Dear Judge Laporte:

The parties have met and conferred with respect to Oracle's motion to modify the Protective Order, as directed by the Court at the January 26, 2010 hearing and in the Court's February 12, 2010 Order ("Order").[1]  One unresolved issue remains, namely the scope of the modification to the use restriction in the Protective Order. Paragraph 1 of Oracle's proposed order states:

> The Protective Order in this action is modified as follows: Notwithstanding the confidentiality restrictions in the Protective Order that are applicable to Confidential or Highly Confidential Discovery Material produced in this action, to the extent provided herein, counsel for Plaintiffs and/or for their affiliates may use Discovery Material produced in this action that is designated as "Confidential Information" or "Highly Confidential Information – Attorneys Eyes Only" for purposes of investigating and preparing litigation, including for copyright infringement, against Defendants and/or their affiliates, **and Defendants' and/or their affiliates' officers, directors and employees in Europe** (the "potential European litigation").  Likewise, to the extent provided herein, counsel for Defendants and/or for their affiliates may use Discovery Materials produced in this action that is designated as

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

---

[1]  The Court's Order stated that "[t]he parties shall either file a joint proposed order or a joint letter no later than February 16, 2010."  The parties requested extensions on this deadline to February 19 in telephonic conversations with the Court's law clerk, who stated that filing by February 19 would be acceptable.

Page 2
February 19, 2010

> "Confidential Information" or "Highly Confidential Information –
> Attorneys Eyes Only" for purposes of investigating and preparing
> defense strategies to the potential European litigation.

Defendants object to the language in bold, which their proposed order does not contain. Accordingly, pursuant to the Court's Order, the parties submit this joint letter and request that the Court resolve this dispute. Order at 5 (requesting a joint letter for remaining disputes). Each party sets forth its position below.

### I.  ORACLE'S POSITION

Oracle does not know what claims it may have in European litigation because it has been precluded from sharing Confidential and Highly Confidential Discovery Materials with its European counsel to advise on that. Depending on the law of the relevant European jurisdiction, Oracle may have claims against the SAP board of directors or executives who directed the copyright infringement and other illegal conduct that would be the subject of the European lawsuit. If Oracle has valid claims, it should be allowed to pursue them – that was the whole point of Oracle's motion in the first place. Defendants are now once again trying to stop Oracle from knowing what claims it has, this time by blocking Oracle from getting advice from European counsel about whether SAP executives or board members are liable under European law for illegal acts evidenced by the discovery produced in this case. Defendants' position is contrary to the Court's guidance and the interests of justice and should be rejected.

In meet and confer, Defendants offered two reasons for barring Oracle from determining whether it has valid claims against SAP executives, but neither is persuasive. First, Defendants contended that claims against individuals were outside the scope of Oracle's motion. That is incorrect. Oracle's motion was necessarily and logically broad because Oracle does not which claims it may have, *against whom*, and in which jurisdictions. To be sure, the written briefing and oral argument on Oracle's motion did not focus on the details of Oracle's claims, such as what tort and statutory claims Oracle may assert, or which specific entities or persons Oracle would sue in Europe. Answering these questions before Oracle has had the opportunity to consult with European counsel about the evidence produced in this case is, in the Court's words, "putting the cart a little bit before the horse." Jan. 26, 2010 Transcript at 8:14-15.

But Oracle's motion always included the possibility of suing SAP executives. Oracle's proposed order filed with the motion asked the Court to modify the protective order to allow for the use of confidential discovery materials in "litigation in Europe between the Parties *or their affiliates* arising out of similar factual allegations." [Proposed] Order Granting Oracle's Motion to Modify the

Page 3
February 19, 2010

Protective Order and to Compel Deposition Testimony and Responses to Requests for Admissions (Dkt. 570-1), ¶ 1 (emphasis added).

The term "parties," standing alone, hardly excludes the board of directors, which is normally seen as part of the company. But in any event, common dictionary definitions of *affiliate* certainly include individuals. Merriam-Webster's dictionary defines "affiliate" as "an affiliated person or organization." *See* http://www.merriam-webster.com/dictionary/affiliate. Dictionary.com provides three definitions of "affiliate" when used as a noun; the third is "a person who is affiliated; associate; auxiliary." *See* http://dictionary.reference.com/browse/affiliate. As a legal matter, the term "affiliate" can embrace individuals. *See, e.g., Telenor Mobile Communications AS v. Storm LLC*, 587 F. Supp. 2d 594, 618 (S.D.N.Y. 2008) ("Gamzin is, in fact, an 'affiliate' of Storm," a limited liability company, "by virtue of his senior role within Alfa Group and his role as chief executive and minority shareholder of one of Alfa's 'major' subsidiaries."); *Browning v. Yahoo! Inc.*, 2006 WL 3826714, *7 (N.D. Cal. Dec. 27, 2006) ("[T]he Court finds the following definitions to be fair and reasonable: [¶¶ ] 'Released Marketing Partners or Marketing *Affiliates*' shall mean any entity which, *or individual who*, during the class period . . .") (emphasis added).

Indeed, during meet and confer after the hearing, Defendants took the position that the word "affiliates" was *ambiguous* as to whether it includes individuals. So, Defendants were never relying on a contrary belief that claims against individuals were somehow off the table. They are simply changing their position to try to get such claims off the table now.

Defendants' second argument against allowing Oracle to investigate claims against individuals is that doing so "may run afoul of European privacy laws" that "restrict the disclosure of personal information." Defendants have not explained this position, and it makes no sense. The dispute between the parties over the form of the proposed order has nothing to do with what information is disclosed to whom – the parties have agreed on that already. Rather, the dispute is over whether Oracle's European counsel must limit their analysis of the confidential materials they will review, i.e., whether they can assess claims Oracle may have against SAP executive or board members in addition to claims Oracle may have against the entities. That does not implicate access or privacy concerns.

Fundamentally, Defendants' position is unjust. They are trying to keep their executives out of litigation by denying Oracle the right to even investigate whether such litigation is a possibility. The Court should not allow that.

Page 4
February 19, 2010

## II.   DEFENDANTS' POSITION

As the Court knows, SAP respectfully objects to any modification of the Protective Order for all the reasons outlined in its Opposition to Oracle's motion, In compliance with the Court's order and instructions at the hearing, however, SAP has met and conferred with Oracle to try to reach a proposed form of order consistent with the Court's instructions.

Oracle's proposal to use SAP's confidential information to investigate claims it *might* have against *individual* officers, directors or employees in Europe is improper for at least two reasons.

*First*, this modification falls well outside the scope of the relief sought by Oracle's motion.  **Nowhere in its briefing did Oracle say, or even hint, that it was contemplating bringing suit against individuals in Europe.**  Instead, Oracle told this Court that it was seeking modification of the protective order "to allow *the parties* to use discovery materials produced in this case in litigation between *the parties* in Europe."  Motion at 6 (emphasis added).  Oracle indicated that it intended to file the same claims in Europe that JDEE brought in this case but were dismissed.  Motion at 7 ("JDEE can cure this jurisdictional defect by refilling its claims in Europe under European law."); *see also* Motion at 8 (describing use of discovery for "litigation in Europe between the Parties or their affiliates arising out of similar factual allegations [as this case]".).  Indeed, when this issue was briefed and SAP pointed out the uncertainty and lack of details surrounding Oracle's proposed European litigation, Oracle criticized SAP for questioning its lack of specificity:  "The idea that SAP does not know what it will be sued for in Europe—or that there are "no reliable indicators" that JDEE will sue it (again)—is disingenuous.  JDEE has already filed a copyright claim in this case against SAP."  (Reply at 3.)

SAP took Oracle at its word that it was seeking to bring JDEE's copyright infringement claims in Europe.  JDEE's copyright claims filed in this case did not implicate any individual officers, directors, or employees.  But, during the meet and confer process, well after numerous drafts of the proposed order had been exchanged, Oracle raised for the first time the idea that it would be investigating claims against individual officers, directors and employees, thereby expanding the scope of its proposed modification beyond that originally contemplated in its motion.

Oracle tries to justify this recent addition to the order that was never briefed or argues by claiming that SAP should have understood that the purported ordinary meaning of "affiliate" would include such individuals.

Page 5
February 19, 2010

      Oracle further tries to justify its change in position by contending that "Defendants took the position that the word "affiliates" was *ambiguous* as to whether it includes individuals." Oracle's characterization of SAP's position is misleading and wrong. In prior versions of the proposed order, Oracle proposed language that "Oracle and its affiliates may use Discovery Materials produced in this action …". SAP objected to this language as being ambiguous because it could be interpreted to give non-lawyers (the employees of the affiliates) access to SAP's information. Oracle eventually agreed with SAP and changed the language to make clear that only outside counsel and properly designated in-house counsel would be given access to SAP's confidential information.

      *Second*, Oracle's proposed extension of the permitted use to include investigating claims against individuals may run afoul of European privacy laws. Oracle has refused to identify the countries where it is contemplating bringing suit, which makes it impossible for SAP to evaluate the full impact of Oracle's proposed language.

      Many European countries have enacted data privacy laws and other statutes to restrict the disclosure of personal information, particularly information relating to individual privacy interests. *See, e.g.,* http://www.thesedonaconference.org/dltForm?did=WG6_Cross_Border; http://ec.europa.eu/justice_home/fsj/privacy/docs/wpdocs/2009/wp158_en.pdf. Given Oracle's refusal to disclose the details of its proposed litigation, it is impossible for SAP to say with certainty whether Oracle's proposal would be permitted under European law. What SAP can say, however, is that the issue is complicated and Oracle's proposed language runs a real risk of violating one or more European laws.

      The manner in which documents were collected from individuals and reviewed and produced in this litigation did not contemplate that they could be used against individuals in Europe. Oracle should not be able to push through this additional modification, which implicates individual privacy rights and a host of sticky legal issues, that had not been previously contemplated, let alone briefed, in the first phase of the process.

      In keeping with the Court's phased approach, Oracle's proposed modification to allow investigation into causes of action against individuals should not be permitted now. If Oracle wishes to raise the issue in a subsequent request for an additional modification of the Protective Order, that modification, and the attendant privacy issues under European law, can be briefed and addressed by the Court at that time. At this time, however, it is unfair for Oracle to expect that this issue can get fully treated on a two-page letter brief.

Page 6
February 19, 2010

Respectfully submitted,

BINGHAM McCUTCHEN LLP

By:  /s/
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
Corporation, and Oracle EMEA, Ltd.

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

JONES DAY

By:  /s/
Jason McDonell
Attorneys for Defendants
SAP AG, SAP America, Inc.,
and TomorrowNow, Inc.