Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ORACLE USA, INC., et al.,

Plaintiffs,

v.

SAP AG, et al.,

Defendants.

Case No. 07-CV-1658 PJH (EDL)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

***SUBMITTED UNDER SEAL***

Date: May 5, 2010
Time: 9:00 a.m.
Courtroom: 3, 3rd Floor
Judge: Hon. Phyllis J. Hamilton



Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND ISSUES PRESENTED ..... 1
II. LEGAL STANDARD FOR PARTIAL SUMMARY JUDGMENT ..... 2
III. OEMEA'S CALIFORNIA CLAIMS SHOULD BE DISMISSED ..... 2
A. California Law Does Not Apply to Extraterritorial Claims ..... 2
B. OEMEA's Claims Are Wholly Extraterritorial ..... 4
C. Applying California Law to OEMEA's Extraterritorial Claims Violates the Due Process Clause of the U.S. Constitution ..... 5
IV. PLAINTIFFS MAY NOT RECOVER DAMAGES OF RELATED NONPARTIES ..... 6
A. A Corporate Plaintiff May Recover Only Its Own Lost Profits; It Cannot Assert the Rights of Third Parties—Even Affiliated Entities. ..... 7
B. Plaintiffs' "Organization as a Whole" Approach Impermissibly Seeks Lost Profits of Related Nonparties ..... 8
V. "SAVED DEVELOPMENT COSTS" ARE, AS A MATTER OF LAW, AN IMPERMISSIBLE MEASURE OF DAMAGES IN THIS CASE ..... 10
A. Plaintiffs Are Not Entitled to Unjust Enrichment Damages Based on "Saved Development Costs" for Any of the Non-Copyright Claims ..... 11
1. "Saved Development Costs" Are Not Available under Claims Permitting Only Recovery of Compensatory Damages ..... 11
a. CFAA and CDAFA ..... 11
b. Breach of Contract ..... 13
c. Trespass to Chattels and Tortious Interference ..... 14
2. "Saved Development Costs" Are Not Available under Claims Permitting Only Recovery of Restitutionary Damages ..... 15
a. Unfair Competition ..... 15
b. Unjust Enrichment/Restitution ..... 16
B. Plaintiffs' Actual Damages for Copyright Infringement Cannot Include SAP's "Saved Development Costs" because this Theory Is Inconsistent with the Copyright Act and Ninth Circuit Precedent ..... 17
VI. PLAINTIFFS MAY NOT RECOVER UNDER CLAIMS FOR WHICH THEY DID NOT DISCLOSE DAMAGES CALCULATIONS ..... 19
A. Rule 26 Precludes Recovery When a Plaintiff Fails to Timely Disclose Damages Calculations ..... 19
B. Plaintiffs Cannot Recover Damages under the Trespass to Chattels Claim because They Failed to Disclose Any Damages Calculations ..... 20
C. Plaintiffs Cannot Recover Damages under the CDAFA Claim because They Failed to Disclose Any Calculations for Recoverable Damages ..... 22
1. The CDAFA Limits Recovery of Compensatory Damages ..... 22

**TABLE OF CONTENTS**

**Page**


2. Plaintiffs Have Not Disclosed Calculations for Recoverable Damages in Connection with Their CDAFA Claim ..... 23

3. Plaintiffs' Damages under the CDAFA, If at All, Should Be Limited to No More Than Alleged "Investigation Costs." ..... 24

VII. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aladdin Oil Corp. v. Perluss*,
41 Cal. Rptr. 239 (Ct. App. 1964)........................................................................ 7, 8, 9

*Allen v. Bayer Corp.*,
460 F.3d 1217 (9th Cir. 2006)........................................................................................ 21

*Anderson v. Air West, Inc.*,
542 F.2d 522 (9th Cir. 1976)........................................................................................ 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................... 2

*Applied Hydrogel Tech., Inc. v. Raymedica, Inc.*,
No. 06cv2254 DMS (POR), 2008 WL 5500756 (S.D. Cal. Oct. 7, 2008).......................... 13, 14

*Arabian v. Sony Elec. Inc.*,
No. 05-CV-1741 WGH (NLS), 2007 U.S. Dist. LEXIS 12715 (S.D. Cal. Feb. 22, 2007) ..... 3, 6

*BMW v. Gore*,
517 U.S. 559 (1996)...................................................................................................... 5

*Bonaparte v. Tax Court*,
104 U.S. 592 (1881)...................................................................................................... 6

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*,
226 Cal. App. 3d 442 (Ct. App. 1990)........................................................................... 13

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
887 F.2d 399 (2d Cir. 1989)........................................................................................... 19

*Churchill Village LLC v. General Elec. Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ....................................................................... 3, 6

*City of Moses Lake v. U.S.*,
472 F. Supp. 2d 1220 (E.D. Wash. 2007) ...................................................................... 21

*Civic W. Corp. v. Zila Indus., Inc.*,
66 Cal. App. 3d 1 (Ct. App. 1977)................................................................................ 11

*Coast Oyster Co. v. Perluss*,
218 Cal. App. 2d 492 (Ct. App. 1963)...................................................................... 22, 23

*Communist Party of the U.S. v. 522 Valencia, Inc.*,
35 Cal. App. 4th 980 (Ct. App. 1995)............................................................................ 10

*Coughlin v. Blair*,
41 Cal. 2d 587 (1953) ................................................................................................... 13

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*,
616 F. Supp. 2d 805 (N.D. Ill. 2009) ............................................................................. 8

*Deltak, Inc. v. Advanced Sys., Inc.*,
767 F.2d 357 (7th Cir. 1985)...................................................................................... 18, 19

*Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*,
97 F.3d 377 (9th Cir. 1996)........................................................................................ 7, 8, 9

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)...................................................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Electric Funds Solutions, LLC v. Murphy*,
134 Cal. App. 4th 1161 (Ct. App. 2005) ........ 14

*FAS Techs., Ltd. v. Dainippon Screen Mfg.*,
No. C 00-1879 CRB, 2001 U.S. Dist. LEXIS 15444 (N.D. Cal. Sept. 21, 2001) ........ 3

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
772 F.2d 505 (9th Cir. 1985) ........ 18

*Guy v. IASCO*,
No. B168339, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004) ........ 3, 4

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ........ 14, 20

*Jarvis v. K2*,
486 F.3d 526 (9th Cir. 2007) ........ 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ........ 14, 15, 16

*Lanard Toys Ltd. v. Novelty Inc.*,
511 F. Supp. 2d 1020 (C.D. Cal. 2007) ........ 7

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ........ 6, 8

*McBride v. Boughton*,
123 Cal. App. 4th 379 (Ct. App. 2004) ........ 16

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
404 F. Supp. 2d 1214 (E.D. Cal. 2005) ........ 4

*Muller v. Auto. Club of S. Cal.*,
61 Cal. App. 4th 431 (Ct. App. 1998) ........ 23

*Norwest Mortgage, Inc. v. Superior Court*,
72 Cal. App. 4th 214 (Ct. App. 1999) ........ 3, 6

*Opp v. St. Paul Fire & Marine Ins. Co.*,
64 Cal. Rptr. 3d 260 (Ct. App. 2007) ........ 8, 10

*Pegasus Satellite Television, Inc. v. DirecTV, Inc.*,
318 F. Supp. 2d 968 (C.D. Cal. 2004) ........ 16

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (Ct. App. 2008) ........ 16

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........ 6

*Pitney-Bowes, Inc. v. State Dept. of Food and Agric.*,
108 Cal. App. 3d 307 (Ct. App. 1980) ........ 23

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
383 F.3d 1303 (Fed. Cir. 2004) ........ 7, 8, 9, 10

*Quantum Corp. v. Riverbed Tech., Inc.*,
No. C 07-04161 WHA, 2008 WL 314490 (N.D. Cal. Feb. 4, 2008) ........ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Resdev, LLC v. Lot Builders Ass'n, Inc.*,
No. 6:04-cv-1374-Orl-31DAB, 2005 U.S. Dist. LEXIS 19099 (M.D. Fla. Aug. 10, 2005)...... 12

*Reynoso v. Construction Protective Servs., Inc.*,
No. 06-56381, 2008 U.S. App. LEXIS 19681 (9th Cir. Sept. 16, 2008) .................................. 20

*Roeslin v. District of Columbia*,
921 F. Supp. 793 (D.D.C. 1995) ................................................................................................ 19

*Sarhank Group v. Oracle Corp.*,
404 F.3d 657 (2d Cir. 2005)......................................................................................................... 9

*Siegel v. Warner Bros. Entm't, Inc.*,
No. CV 04-08400-SGL (RZx), 2009 WL 2014164 (C.D. Cal. July 8, 2009)........................... 18

*Silong v. U.S.*,
No. CV F 06-0474 LJO DLB, 2007 U.S. Dist. LEXIS 68724
(E.D. Cal. Sept. 5, 2007) .......................................................................................... 20, 21, 24

*Speyer v. Avis Rent a Car Sys., Inc.*,
415 F. Supp. 2d 1090 (S.D. Cal. 2005) ........................................................................................ 3

*Standfacts Credit Serv. Inc. v. Experian Info. Solutions*,
405 F. Supp. 2d 1141 (C.D. Cal. 2005) ........................................................................................ 3

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................................................................ 8

*Theme Promotions, Inc. v. News America Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008)....................................................................................................... 16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008)....................................... 8

*Thrifty-Tel, Inc. v. Bezenek*,
46 Cal. App. 4th 1559 (Ct. App. 1996)....................................................................................... 20

*Tidenberg v. Bidz.com*,
No. CV 08-5553 PSG (FMOx), 2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009)...... 3, 6

*Warth v. Seldin*,
422 U.S. 490 (1975)................................................................................................................. 7, 8

*Wong v. Regents of the Univ. of Cal.*,
379 F.3d 1097 (9th Cir. 2004)..................................................................................................... 21

*Wong v. Regents of the Univ. of Cal.*,
410 F.3d 1052 (9th Cir. 2005)..................................................................................................... 21

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)..................................................................................................... 20

*Zaslow v. Kroenert*,
29 Cal. 2d 541 (1946) ................................................................................................................. 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Statutes and Rules**

17 U.S.C. § 504 .......... 13, 18, 19
18 U.S.C. § 1030 .......... 11, 12
Cal. Bus. & Prof. Code § 17200 .......... 11
Cal. Bus. & Prof. Code § 17203 .......... 15
Cal. Civil Code § 3300 .......... 13
Cal. Civil Code § 3333 .......... 14
Cal. Civil Code § 3358 .......... 13
Cal. Penal Code § 502 .......... *passim*
Fed. R. Civ. P. 26 .......... *passim*
Fed. R. Civ. P. 37 .......... 20
Fed. R. Civ. P. 56 .......... 2
Fed. R. Evid. 1006 .......... 5

**Other Authorities**

Black's Law Dictionary (8th ed. 2004) .......... 12
*Fletcher Cyclopedia of the Law of Corporations* § 36 (Sept. 2009) .......... 7
Gordon V. Smith and Russell L. Parr, *Intellectual Property Valuation, Exploitation, and Infringement Damages* (2005) .......... 17
Rest. 2d Torts § 766B .......... 14

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on May 5, 2010 at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Phyllis J. Hamilton, 1301 Clay Street, Oakland, California, Courtroom 3, Defendants SAP AG, SAP America, Inc. (together, "SAP") and TomorrowNow, Inc ("TN," and with SAP, "Defendants") will bring this motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rules 7-2–7-5 and 56-1, against Plaintiffs Oracle USA, Inc. ("OUSA"), Oracle International Corp. ("OIC"), Oracle EMEA Ltd. ("OEMEA"), and Siebel Systems, Inc. (together, "Plaintiffs"). This motion is based on the Memorandum of Points and Authorities herein, the Declarations of Tharan Gregory Lanier and Elaine Wallace, and all exhibits attached to these declarations.

**RELIEF REQUESTED**

Summary judgment for Defendants: (1) dismissing OEMEA's claims as wholly extraterritorial; (2) rejecting Plaintiffs' claim for damages of nonparties; (3) rejecting Plaintiffs' "saved development costs" measure of damages; (4) eliminating Plaintiffs' damages claims for the trespass to chattels and CDAFA causes of action for failure to disclose damages calculations as required by Fed. R. Civ. P. 26; and (5) limiting damages under the CDAFA, if any, to no more than Plaintiffs' alleged investigation costs.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND ISSUES PRESENTED

SAP acquired TN for $10 million. TN served no more than 3% of Plaintiffs' software maintenance customers. SAP shut TN down in October 2008, after owning TN for less than 3 years. TN never made a profit during this time. Yet Plaintiffs seek billions in damages.

Summary judgment is an appropriate vehicle for this Court to eliminate several legally overreaching claims that are barred as a matter of law. The first two impermissible damages claims include recovery for parties who either are not, or should not be, parties to this case. Specifically, Plaintiff OEMEA cannot recover damages (or remain in the case) because its claims are wholly extraterritorial. Plaintiffs also cannot recover purported lost profits of affiliated companies that are nonparties. Additionally, Plaintiffs cannot recover damages based on a "saved

development costs" theory, which is not permitted for any of the pled causes of action. And Plaintiffs cannot recover damages under the CDAFA and trespass to chattels claims when they failed to make the required initial disclosures or provide any calculations in their damages expert's report. Eliminating these claims now promotes efficient case management and is essential to focus this case as it moves forward toward trial later this year.

## II. LEGAL STANDARD FOR PARTIAL SUMMARY JUDGMENT

A defendant may move for summary judgment "on all or part of [a] claim," including damages. Fed. R. Civ. P. 56(b), 56(d)(1). Summary judgment is proper where, as here, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case, and an issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. OEMEA'S CALIFORNIA CLAIMS SHOULD BE DISMISSED

OEMEA is an Irish company REDACTED Yet OEMEA asserts California state claims for tortious interference with prospective economic advantage, unfair competition, unjust enrichment/restitution, and an accounting. *See* D.I. 418 (Fourth Amended Complaint ("FAC")); D.I. 201 (Opposition to Defendants' FRCP 12(b)(1) and 12(b)(6) Motion to Dismiss ("Opp. to Mot. to Dismiss")) at 22, 24 (citing California law for elements of common law claims). OEMEA alleges that Defendants improperly interfered with OEMEA's customer relationships and were unjustly enriched by offering and promoting TN's support services to those customers. *See* D.I. 418 (FAC) ¶¶ 190-217, 224-30. However, OEMEA's claims fail as a matter of law because California law does not provide a remedy for non-residents alleging injuries caused by out-of-state conduct and because applying California law to extraterritorial claims runs afoul of the due process clause of the U.S. Constitution.

### A. <u>California Law Does Not Apply to Extraterritorial Claims.</u>

"There is a presumption against California law being given extraterritorial effect when the wrongful act as well as the injury occurred outside California." *Arabian v. Sony Elec. Inc.*, No.

05-CV-1741 WGH (NLS), 2007 U.S. Dist. LEXIS 12715, at *30 (S.D. Cal. Feb. 22, 2007); *see also Churchill Village LLC v. General Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) ("California law embodies a presumption against the extraterritorial application of its statutes."). This presumption applies to both California statutory and common law claims. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224-25 (Ct. App. 1999) (applying presumption to California's Unfair Competition Law ("UCL")); *Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) (same); *FAS Techs., Ltd. v. Dainippon Screen Mfg.*, No. C 00-1879 CRB, 2001 U.S. Dist. LEXIS 15444, at *4-5 (N.D. Cal. Sept. 21, 2001) (dismissing common law claims for trade secret misappropriation and tortious interference because "California laws do not reach conduct that occurred outside of California").

To recover under California law, an out-of-state plaintiff must demonstrate that it sustained injuries in California or that the conduct giving rise to liability occurred in California. *Standfacts Credit Serv. Inc. v. Experian Info. Solutions*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005) (dismissing claims by non-resident plaintiffs who failed to allege misconduct in California); *Arabian*, 2007 U.S. Dist. LEXIS 12715, at *32 (holding that Canadian plaintiffs who purchased faulty computers from a Canadian entity failed to identify California conduct that would allow recovery under the UCL); *Tidenberg v. Bidz.com*, No. CV 08-5553 PSG (FMOx), 2009 U.S. Dist. LEXIS 21916, at *11-13 (C.D. Cal. Mar. 4, 2009) (dismissing Texas plaintiff's UCL claim for failure to allege harm or misconduct in California).

Even if some complained-of conduct or injuries occurred in California, they must give the claim more than a superficial connection to the state. Courts have declined to permit claims based primarily on out-of-state conduct to proceed under California law. For example, in *Speyer*, the court dismissed California residents' claims that rental car companies' surcharges on out-of-state car rentals violated the UCL. 415 F. Supp. 2d at 1099. That the rental reservations were made in California was insufficient to bring the business practice under the UCL, as the injuries and injury-causing business practice (*i.e.*, levying the surcharge) occurred out of state. *See id.* In *Guy v. IASCO*, the court held that California's Industrial Welfare Commission could not regulate wages paid outside California to non-resident plaintiffs; that the defendant was a California

corporation that prepared its payroll in California did not justify applying the regulations extraterritorially. No. B168339, 2004 WL 1354300, at *5 (Cal. Ct. App. June 17, 2004).

**B. OEMEA's Claims Are Wholly Extraterritorial.**

It is undisputed that OEMEA is a non-resident; it is an Irish private limited company with its principal place of business in Dublin, Ireland. *See* D.I. 418 (FAC) ¶ 37. OEMEA is not registered to do business in California. *See* Declaration of Tharan Gregory Lanier ("Lanier Decl.") ¶ 3, Ex. C (Plaintiffs' Supplemental Responses and Objections to Defendants' Fifth Set of Interrogatories (Database), Response to Interrogatory No. 34) at 23. REDACTED *See* Lanier Decl. ¶ 4, Ex. D REDACTED

It is also undisputed that OEMEA's alleged injuries occurred outside of California. This Court may infer that OEMEA's injuries occurred where OEMEA resides—Ireland. *See Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005) ("CMIC is a Canadian corporation; therefore, the court infers that its injuries occurred there."). However, this inference is unnecessary because, to the extent that OEMEA alleges injury to relationships with existing or prospective customers, those injuries occurred REDACTED, not California.

Plaintiffs concede this point in the report of their damages expert, Paul Meyer. In explaining OEMEA's damages claim, Meyer confirms that REDACTED He acknowledges that REDACTED *See* Lanier Decl. ¶ 1, Ex. A (Expert Report of Paul K. Meyer ("Meyer Report")) REDACTED

REDACTED; *see also* Lanier Decl. ¶¶ 5-6, Ex. E REDACTED And there is no dispute that REDACTED For the Court's reference, Defendants identify REDACTED in a summary of evidence per Fed. R. Evid. 1006. *See* Declaration of Elaine Wallace ("Wallace Decl.") ¶ 1, Ex. 1 (Defendants' Fed. R. Evid. 1006 Summary of Evidence ("Rule 1006 Summary")).

Finally, it is also undisputed that OEMEA bases its claims on alleged TN support and marketing activities that took place outside of California. As Plaintiffs acknowledge, TN is a Texas corporation with its principal place of business in Bryan, Texas. *See* D.I. 418 (FAC) ¶ 41. Plaintiffs have argued to this Court that TN's support of customers, both domestic and abroad, occurred in Texas, while its marketing to European customers occurred in Europe. *See* D.I. 201 (Opp. to Mot. to Dismiss) at 7 (citing D.I. 203 (Declaration of Kevin Mandia in Support of Opp. to Mot. to Dismiss) ¶ 6) ("All software environments used by SAP were 'stored on servers in Texas'") and 8 ("SAP marketed to and contracted with these customers in Europe, but supported them with the same software copies, downloads, and derivative work assembly-line in Texas that it used for all of its other customers"); *see also* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 73 ("I understand copying, distribution and use of the improperly accessed Software and Support Materials occurred out of the Bryan, Texas location including domestic and international distribution of Oracle's Software and Support Materials.").

In sum, OEMEA is not a California resident, and its California law claims are based on conduct and harm that occurred outside of California. OEMEA must be dismissed from the case.

### C. <u>Applying California Law to OEMEA's Extraterritorial Claims Violates the Due Process Clause of the U.S. Constitution.</u>

Applying California law to OEMEA's extraterritorial claims not only violates California law, but it also runs afoul of the due process clause of the U.S. Constitution. It is black letter law that there are constitutional limitations on the forum state's application of its law to extraterritorial claims. *See BMW v. Gore*, 517 U.S. 559, 571 (1996) ("[I]t is clear that no single

state could . . . impose its own policy choice on neighboring States"); *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881) ("No state can legislate except with reference to its own jurisdiction."). For this reason, even "beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California raises significant due process problems." *Churchill*, 169 F. Supp. 2d at 1126-27 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985)); *Norwest*, 72 Cal. App. 4th at 225.

To apply its law in a constitutionally permissible manner, a forum state "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Arabian*, 2007 U.S. Dist. LEXIS 12715, at *31 (quoting *Phillips*, 472 U.S. at 810-11). That a forum state may exercise personal jurisdiction over a defendant is not enough to establish contacts sufficient to justify extraterritorial application of state law. *See Norwest*, 72 Cal. App. 4th at 226; *Churchill Village*, 169 F. Supp. 2d at 1127. A plaintiff must show that the forum state has significant contact or a significant aggregation of contacts with the claims. *See id.*; *Tidenberg*, 2009 U.S. Dist. LEXIS 21916, at *11-12. OEMEA's claims are not based on injuries or conduct that occurred in California; OEMEA cannot establish that its claims have a constitutional nexus with California, and its claims must be dismissed.

## IV. PLAINTIFFS MAY NOT RECOVER DAMAGES OF RELATED NONPARTIES

Plaintiffs' expert Meyer calculates Plaintiffs' alleged lost profits using two "scenarios." *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 355. Under one scenario, he calculates "lost profits specific to the Oracle plaintiff entities in this case." Under the other, he calculates "lost profits of the Oracle organization as a whole," including lost profits of both plaintiff *and non-plaintiff* entities. *Id*. This "organization as a whole" approach impermissibly disregards Plaintiffs' corporate structure by allowing Plaintiffs to recover lost profits of related nonparties. Plaintiffs must take the burdens with the benefits of their separate corporate form; they may not recover lost profits of related nonparties. Summary judgment is proper to eliminate the "organization as a whole" damages approach for all causes of action. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008) (availability of lost profits is a question of law).

**A. A Corporate Plaintiff May Recover Only Its Own Lost Profits; It Cannot Assert the Rights of Third Parties—Even Affiliated Entities.**

Two basic legal principles decide this issue. First, corporations are considered separate legal entities even if they are closely related. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its [corporate] shareholders are distinct entities."). Second, a plaintiff may sue for damages only on its own behalf—not on behalf of nonparties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties.").

Taken together, these rules dictate that a corporate plaintiff "generally must assert [its] own legal rights," not the rights of a sister or subsidiary corporation. *Warth*, 422 U.S. at 499; *see also* 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 36 (Sept. 2009) ("Nor does a corporation have independent standing to sue for injuries done to a sister or subsidiary corporation, despite the fact that their businesses are intertwined and the success of one is dependent on that of the other."). Permitting a plaintiff to recover the damages of its affiliates allows it to "establish and use its affiliates' separate legal existence for some purposes"—such as limited liability and tax advantages—"yet have their separate corporate existence disregarded for its own benefit against third parties." *Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996). Neither federal nor California law permits such a result, *id.*; *see also Aladdin Oil Corp. v. Perluss*, 41 Cal. Rptr. 239, 246 (Ct. App. 1964) ("Parties who determine to avail themselves of the right to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges."), including in the copyright context. *See Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007) (rejecting copyright plaintiffs' argument that "Lanard Ltd. can assert the intellectual property rights of Lanard Inc[.] because they are 'related companies'").

Applying these principles in the patent law context, courts have foreclosed plaintiffs from recovering the lost profits of a related company. In *Poly-America, L.P. v. GSE Lining Tech., Inc.*, for example, the court held that the patent holder, Poly-America, could "recover only its own lost

profits"—not those of its sister corporation, Poly-Flex. 383 F.3d 1303, 1311 (Fed. Cir. 2004). Poly-Flex was not a named plaintiff because, as a non-exclusive licensee, it lacked standing to sue for damages. *Id.* Poly-America attempted to circumvent standing rules by urging the court to treat the companies "as a single economic unit for [purposes of calculating] lost profits." *Id.* at 1310. Refusing to blur corporate distinctions, the court held that related corporations "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee." *Id.* at 1311. *Poly-America* applies with equal force to bar a parent corporation from recovering the lost profits of a subsidiary. *See Mars*, 527 F.3d at 1367; *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *4-5 (N.D. Cal. May 22, 2008) (where subsidiary lacked standing, parent was "prohibited from presenting any evidence of [the subsidiary's] lost profits").

Principles of standing and corporate law compelled *Poly-America*'s result, and they require the same result under any cause of action, whether based on federal or state law. The principle that a plaintiff "generally must assert [*its*] *own* legal rights," *Warth*, 422 U.S. at 499 (emphasis added), is not limited to patent law, but rather applies to all federal and state claims brought in federal court. *See, e.g.*, *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 814 (N.D. Ill. 2009) (corporate plaintiff lacked standing to sue for breach of contract on behalf of related signatory) (relying on *Warth*, 422 U.S. at 499). Similarly, both federal and California law require corporations to accept the limitations of their own corporate form, which are enforced in various substantive contexts. *See, e.g.*, *Disenos Artisticos*, 97 F.3d at 380 (copyright); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1189 (N.D. Cal. 2009) (antitrust); *Opp v. St. Paul Fire & Marine Ins. Co.*, 64 Cal. Rptr. 3d 260, 262, 265 (Ct. App. 2007) (recovery on a payment bond); *Aladdin*, 41 Cal. Rptr. at 240, 246 (recovery of unemployment insurance contributions).

### B. <u>Plaintiffs' "Organization as a Whole" Approach Impermissibly Seeks Lost Profits of Related Nonparties.</u>

The Oracle organization is a large conglomerate consisting of a parent corporation (Oracle

Corporation) and hundreds of subsidiary corporations. *See* Lanier Decl. ¶ 7, Ex. G (June 29, 2009 Oracle Corporation Annual Report (Form 10-K)) at Ex. 21.01. Only four of these subsidiary corporations—OUSA, OIC, OEMEA, and Siebel Systems, Inc.—are plaintiffs in this case. *See* D.I. 418 (FAC). This Court already has dismissed two plaintiffs for lack of standing and jurisdiction, and Plaintiffs have added, dropped, and omitted various other entities from the complaint. *See* D.I. 224 (December 15, 2008 Order); *compare* D.I. 132 (Second Amended Complaint) *with* D.I. 182 (Third Amended Complaint). Plaintiffs cannot circumvent this Court's order of dismissal by recovering damages on behalf of dismissed parties; nor may they recover on behalf of those entities that have decided they cannot or should not join as plaintiffs.

Oracle's organizational structure undoubtedly confers various corporate advantages, such as favorable tax treatment and limited liability. *See, e.g.*, *Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *2 (N.D. Cal. Feb. 4, 2008) (treating related companies as "separate corporate entities" because "[t]hat is, of course, the whole point of a corporation, to isolate its assets, liabilities, and operations"). And Oracle's corporate structure allows it to [REDACTED] (*see* Lanier Decl. ¶ 8, Ex. H REDACTED [REDACTED] Indeed, Oracle has successfully avoided an arbitration judgment by arguing that Oracle Corporation and its foreign subsidiary are "separate corporate entities" and that their relationship alone cannot "justif[y] ignoring their separate corporate forms." *See* Lanier Decl. ¶ 9, Ex. I (Brief for Respondent-Appellant in *Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005) (No. 92-9383)) at 7, 9, 35; *see also Sarhank*, 404 F.3d at 662. Plaintiffs cannot have it both ways. The Oracle organization established separate "corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens." *Poly-America*, 383 F.3d at 1311; *see also Aladdin*, 41 Cal. Rptr. at 246.

Oracle Corporation's own argument against corporate veil-piercing in *Sarhank* applies with even greater force in this case. Plaintiffs' "organization as a whole" approach to lost profits essentially asks this Court to "pierce [Oracle's] own corporate veil." *Disenos Artisticos*, 97 F.3d at 380. But "[g]enerally, the corporate veil can be pierced only by an adversary of the

corporation, not by the corporation itself for its own benefit." *Id.*; *see also Communist Party of the U.S. v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 994 (Ct. App. 1995) ("[T]he alter ego doctrine] is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form."). Plaintiffs may not blur corporate distinctions "just because the corporation has become an inconvenience" in this situation. *Opp*, 64 Cal. Rptr. 3d at 265.

Plaintiffs' effort to seek "lost profits of the Oracle organization as a whole" impermissibly includes nonparty lost profits and disregards the very corporate distinctions that Oracle uses to its advantage elsewhere. *See Poly-America*, 383 F.3d at 1311. Summary judgment should be granted to eliminate this "organization as a whole" damages theory as to all causes of action.

**V. "SAVED DEVELOPMENT COSTS" ARE, AS A MATTER OF LAW, AN IMPERMISSIBLE MEASURE OF DAMAGES IN THIS CASE**

Plaintiffs' expert Paul C. Pinto purports to estimate "what it would have cost Defendants to independently develop the underlying software applications used in administration of maintenance services provided by SAP TN." Lanier Decl. ¶ 2, Ex. B (Expert Report of Paul C. Pinto ("Pinto Report")) at 5. Pinto estimates that these "saved development costs" could add up to REDACTED. *Id.* at 44. In turn, Plaintiffs' damages expert Meyer relies on Pinto's analysis to "calculate" disgorgement under an unjust enrichment theory for at least one (though potentially all)[1] of Plaintiffs' non-copyright claims, as well as to calculate actual damages for copyright infringement under a fair market value license theory purportedly using a "cost approach." *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 20 (Table 1), 91-105, 150-51, 282-89, 434-35, 447-49. For the reasons below, none of the non-copyright claims allows disgorgement measured by purported "saved development costs." Further, neither the Copyright Act nor Ninth Circuit precedent permits using "saved development costs" to measure a "fair market value" license.[2]

[1] It is not clear from Meyer's report whether he applies his "unjust enrichment" calculation to some or all of the non-copyright claims. For the purpose of this brief, and without conceding the proprietary of Plaintiffs' non-disclosure under Rule 26, Defendants assume that Meyer intends it to apply to all such claims.

[2] The Court's January 28, 2010 Order allowed Plaintiffs to seek actual damages for copyright infringement in the form of a "fair market value" (or "hypothetical") license, but did not reach the issue of whether "saved costs" are a permissible measure of such a license. *See* D.I. 628. Although not conceding that the hypothetical license is a permissible remedy in this case, Defendants address the "saved costs" claim in view of the Court's ruling.

Summary judgment is proper to eliminate this impermissible theory of damages from the case.

**A. Plaintiffs Are Not Entitled to Unjust Enrichment Damages Based on "Saved Development Costs" for Any of the Non-Copyright Claims.**

The Fourth Amended Complaint alleges eight claims in addition to copyright infringement, including violation of the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030); violation of the Computer Data Access and Fraud Act ("CDAFA") (Cal. Penal Code § 502); Breach of Contract; Intentional Interference with Prospective Economic Advantage; Negligent Interference with Prospective Economic Advantage; Unfair Competition (Cal. Bus. & Prof. Code § 17200); Trespass to Chattels; and Unjust Enrichment/Restitution.[3] Plaintiffs claim that one or up to all of these causes of action entitle them to collect REDACTED, *i.e.*, the entire amount that Plaintiffs claim Defendants would have spent had they developed Plaintiffs' software from scratch. *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 434-35, 447-49. However, these claims only permit recovery of compensatory or restitutionary damages, neither of which encompasses disgorgement of "saved development costs."

1. "Saved Development Costs" Are Not Available under Claims Permitting Only Recovery of Compensatory Damages.

Because federal and state law limit recovery under CFAA, CDAFA, breach of contract, trespass to chattels, and tortious interference claims to compensatory damages, Plaintiffs cannot recover disgorgement in the form of "saved development costs" under these claims.

a. *CFAA and CDAFA.*

Plaintiffs' first two non-infringement claims arise under the CFAA and the CDAFA. It is unclear whether Plaintiffs seek to recover "saved development costs" in connection with these claims, particularly as they relate to purported improper access to computers rather than to "alleged infringement and misuse of Oracle's Software and Support Materials." Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 435. However, to the extent that Plaintiffs seek "saved development

[3] The complaint also pleads an action for accounting, which is simply an equitable remedy that does not create an independent right to recover damages. *See Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (Ct. App. 1977). This brief only addresses the eight causes of action that serve as independent bases for liability.

costs" under these statutes, the plain language of these statutes precludes such relief.

The CFAA and CDAFA both limit recovery to those remedies defined by statute, namely "compensatory damages and injunctive relief or other equitable relief[.]" 18 U.S.C. § 1030(g); Cal. Penal Code § 502(e)(1). Although "compensatory damages" is not specifically defined under the CFAA, courts have interpreted the term as having its established meaning—namely, "damages sufficient in amount to indemnify the injured person for the loss suffered." *Resdev, LLC v. Lot Builders Ass'n, Inc.*, No. 6:04-cv-1374-Orl-31DAB, 2005 U.S. Dist. LEXIS 19099, at *9 (M.D. Fla. Aug. 10, 2005) (citing Black's Law Dictionary, 416 (8th ed. 2004) to define "compensatory damages" under the CFAA). As explained in detail *infra*, the CDAFA expressly limits compensatory damages to only those expenditures incurred "by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1).

Plaintiffs' claimed "saved development costs" do not constitute compensatory damages under either statute. Compensatory damages under the CFAA are analyzed from a plaintiff's point of view and seek to redress or compensate for harm "suffered" by the plaintiff. *See Resdev*, 2005 U.S. Dist. LEXIS 19099, at *9. By contrast, Plaintiffs' "saved development costs" theory focuses on a defendant's point of view and purports to disgorge a defendant's alleged ill-gotten benefit. *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 435, 447. Likewise, under the CDAFA, Plaintiffs' "saved development costs" theory does not purport to seek recovery of costs incurred "to verify" whether their computers or data were damaged—the only compensatory damages recoverable under the CDAFA. Cal. Penal Code § 502(e)(1).

Similarly, the monetary "saved development costs" Plaintiffs seek do not constitute a type of equitable relief or injunctive relief permitted under the CFAA or CDAFA. *See* Black's Law Dictionary, 579, 1320 (defining equitable relief as "a remedy, usu. a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies, usu. monetary damages, cannot adequately redress the injury").

Because neither the CFAA nor the CDAFA contemplates a measure of damages that disgorges ill-gotten benefits to a defendant, "saved development costs" are not a legally

permissible form of recovery under either statute. *Cf.* 17 U.S.C. § 504(b) (expressly permitting recovery of "any profits of the infringer that are attributable to the infringement").

b. *Breach of Contract.*

California law limits breach of contract damages to "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which . . . would be likely to result therefrom." Cal. Civil Code § 3300. Rather than disgorging ill-gotten gain, "[t]he basic object of [breach of contract] damages is compensation." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 455 (Ct. App. 1990). Such damages are designed to "give the injured party the benefit of [its] bargain and insofar as possible to place [it] in the same position [it] would have been in had the promisor performed the contract." *Coughlin v. Blair*, 41 Cal. 2d 587, 603 (1953). California law makes clear that "[e]xcept as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation than [it] could have gained by the full performance thereof on both sides." Cal. Civil Code § 3358.

Applying these black letter rules, one court in this Circuit expressly rejected "saved development costs" damages for a breach of contract claim. In *Applied Hydrogel Tech., Inc. v. Raymedica, Inc.*, the court excluded a damages theory almost identical to the one Plaintiffs now present. No. 06cv2254 DMS (POR), 2008 WL 5500756, at *3 (S.D. Cal. Oct. 7, 2008). In calculating damages in an action for trade secret misappropriation and breach of contract, the expert quantified and claimed as breach of contract damages "the cost to create or duplicate" the trade secrets at issue. *Id.* at *1. The court criticized the proposed valuation method as "detached from reality and common sense." *Id.* at *2. Acknowledging that "[t]he standard measure of damages for a breach of contract claim is that amount that puts the plaintiff in the position it would have been in if the contract had not been breached," the court found it "unclear" how "the actual value of the confidential information" corresponded with such restorative damages. *Id.* at *3. The court found that the proposed "cost to create or duplicate" damages went "well beyond placing Plaintiff in the position it would have occupied absent Defendants' [contractual] breach," as the plaintiff continued to possess the information for its own use and licensing to others, and did not "lose the entire value of that confidential information" in virtue of defendants' breach. *Id.*

Accordingly, the court excluded the expert's testimony. *Id.*

The result here should be no different. As in *Applied Hydrogel*, Plaintiffs' "saved development costs" are not in the nature of damages recoverable under breach of contract, as they do not even purport to compensate Plaintiffs for the losses they may have incurred in virtue of Defendants' alleged breach of contract. Additionally, since Plaintiffs have retained (and continue to exploit) their rights to use, distribute, and license the software at issue at all times, permitting Plaintiffs to recover Defendants' purported "saved development costs" would place Plaintiffs in a better position than they would have occupied absent the alleged breach. Because California law limits breach of contract damages to compensating a plaintiff's losses and prohibits recovery of damages exceeding that which would restore a plaintiff to its original position, "saved development costs" are not cognizable damages under Plaintiffs' breach of contract claim.

c. *Trespass to Chattels and Tortious Interference.*

California law provides that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate [the plaintiff] for all the detriment proximately caused" by the tortious activity. Cal. Civil Code § 3333. For this reason, plaintiffs seeking damages in connection with California tort claims are limited to recovering compensatory damages. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003) (quoting *Zaslow v. Kroenert*, 29 Cal. 2d 541, 551 (1946)) (holding that plaintiffs asserting trespass to chattels claims "may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1156 n.8 (2003) (citing Rest. 2d Torts § 766B) (noting that recovery for tortious interference with prospective economic relations consists of "pecuniary harm resulting from loss of the benefits of the relation" alleged to have been disrupted). Disgorgement is not appropriate. *See, e.g.*, *Electric Funds Solutions, LLC v. Murphy*, 134 Cal. App. 4th 1161, 1179-80 (Ct. App. 2005) (limiting recovery for tortious interference claims to lost profits, rather than disgorgement of value of defendants' interfering business, noting that "plaintiffs have cited no legal authority to support a damage award equaling the current value of defendants' business, and we are aware of none").

As described above, "saved development costs" do not constitute a type of compensatory

damages recoverable under California common law tort claims, as they seek to disgorge ill-gotten benefit rather than to compensate for harm. Additionally, with respect to Plaintiffs' trespass to chattels and tortious interference claims in particular, "saved development costs" do not purport to measure harm to either the chattels or the business relationships with which Defendants allegedly interfered, as required for recovery. Thus, "saved development costs" are not permissible damages under the trespass and interference claims.

2. <u>"Saved Development Costs" Are Not Available under Claims Permitting Only Recovery of Restitutionary Damages.</u>

Because restitutionary damages are the only damages available under the UCL and common law unjust enrichment/restitution claim, Plaintiffs cannot recover "saved development costs" in connection with these claims.

a. *Unfair Competition.*

California's UCL permits recovery only of damages that are restitutionary in nature, and non-restitutionary disgorgement of a defendant's profits "is not an authorized remedy in an individual action under the UCL." *Korea Supply*, 29 Cal. 4th at 1140 (2003) (distinguishing restitution damages from the "broader" remedy of disgorgement). In *Korea Supply*, the plaintiff argued that it could "recover disgorgement of profits earned by defendants as a result of their allegedly unfair practices, even where the money sought to be disgorged was not taken from plaintiff and plaintiff did not have an ownership interest in the money." *Id.* at 1144. The California Supreme Court rejected the argument, noting that the legislative history and language of the UCL's damages provision, Cal. Bus. & Prof. Code § 17203, both indicate that the Legislature desired to limit the monetary damages available under the act to restitution damages. *Id.* at 1147-48. The court construed restitution damages narrowly, holding that they consist of "profits unfairly obtained to the extent that these profits represent monies given to the defendant [by the plaintiff] or benefits in which the plaintiff has an ownership interest." *Id.* at 1148.

Defendants' purported "saved development costs" do not represent monies literally taken from Plaintiffs or benefits in which Plaintiffs have a vested interest (*e.g.*, as in the case of earned wages). *See id.* at 1149. Indeed, "saved development costs" are not intended to replace monies

or property Plaintiffs lost, but to disgorge Defendants of additional benefits received from their alleged wrongdoing. *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 434-35 (distinguishing "saved development costs" from actual damages). Thus, these saved costs do not constitute recoverable restitution damages under the UCL. *See Korea Supply*, 29 Cal. 4th at 1149 ("Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff."); *Theme Promotions, Inc. v. News America Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008) (affirming district court's denial of plaintiff's motion for "restitutionary" damages under the UCL for the defendant's profits because the evidence was "insufficient to support a finding that [Plaintiff] had a property interest in all of [defendant's] profits"); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (granting summary judgment on UCL claim for contractual damages allegedly deprived by unfair practices, where plaintiff's contractual interest in the money sought was contingent and not vested).

b. *Unjust Enrichment/Restitution.*

Under California law, the elements of an unjust enrichment claim are "receipt of a benefit and the unjust retention of the benefit at the expense of another"; thus, a plaintiff asserting unjust enrichment may seek restitution only of benefits the plaintiff conferred upon the defendant, which the defendant wrongfully retained. *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593-94 (Ct. App. 2008); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387, 389 (Ct. App. 2004). A claim for unjust enrichment permits disgorgement of a defendant's ill-gotten gains only to the extent to which those gains are directly traceable to the plaintiff. *See Peterson*, 164 Cal. App. 4th at 1594 (holding that unjust enrichment damages must reflect the loss plaintiff suffered by conferring the benefit on defendant and rejecting argument that a defendant "should be required to disgorge all profit [regardless of the victim's loss] because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again").

As discussed above, Plaintiffs did not literally confer "saved development costs" upon Defendants. Thus, whatever benefit Defendants incurred as represented by these saved costs is not an appropriate subject of restitution. For this reason, Plaintiffs cannot recover "saved

development costs" under their unjust enrichment claim.

**B. <u>Plaintiffs' Actual Damages for Copyright Infringement Cannot Include SAP's "Saved Development Costs" because this Theory Is Inconsistent with the Copyright Act and Ninth Circuit Precedent.</u>**

Plaintiffs also attempt to recover actual damages for copyright infringement measured by "saved development costs." This Court did not address whether such saved costs are a permissible measure of a hypothetical license in its January 28, 2010 Order, which permitted Plaintiffs to pursue actual damages in the form of a hypothetical license.

By way of background, Meyer measures alleged actual damages for copyright infringement using two different methods: a traditional lost profits analysis and a "fair market value license" analysis. For the latter, he calculates hypothetical licenses using three different approaches: a "market approach," an "income approach," and a "cost approach." *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 95. Specifically, Meyer claims that, "[t]he cost approach attempts to measure the future benefit of the intellectual property by quantifying the *cost to develop alternative technology or replace the technology* being valued." *See id.* at ¶ 142 (emphasis added). In other words, Plaintiffs attempt to recover damages based on the purported amount that Defendants would have spent to acquire the relevant technology through development or purchase—the amount that Defendants purportedly saved by infringing, rather than developing or acquiring, the technology. For his calculation under the "cost approach," Meyer simply imports Pinto's "saved development costs" figure. *Id.* at ¶ 152.

There is no authority to support Meyer's reliance on a "cost approach" to calculate the value of a "fair market value license." No court in this Circuit has ever permitted a copyright plaintiff to measure actual damages on the basis of saved costs. Further, the only source that Meyer cites in support of using a "cost approach" does not approve, or even discuss, using the method to calculate a "fair market value" license. *See* Lanier Decl. ¶¶ 1, 25, Ex. A (Meyer Report) ¶ 97 n.266 (citing *Intellectual Property Valuation, Exploitation, and Infringement Damages*, by Gordon V. Smith and Russell L. Parr, 2005 Edition, pgs. 148-54 ("Smith & Parr")); Ex. X (Smith & Parr) at 732-46. In fact, the treatise makes clear that the "cost approach" valuation method is a "means for determining an absolute, fee-simple value for intellectual

property," (*i.e.*, an outright purchase, not a license) as distinguished from the methods of valuing license rights or infringement damages. Lanier Decl. ¶ 25, Ex. X (Smith & Parr) at 311, 615. As courts in this Circuit recognize, parties determine the amount of a fair market value license, when available, by considering benchmark licenses. *See, e.g.*, *Jarvis v. K2*, 486 F.3d 526, 533 (9th Cir. 2007) (affirming district court's award of hypothetical license based on evidence of what defendant typically paid to license photographs, prior dealings with the plaintiff, and what plaintiff was typically paid to license photographs); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8, 521 (9th Cir. 1985) (affirming district court's rejection of hypothetical license damages claim as too speculative, noting a lack of evidence of comparable benchmark licenses); *Siegel v. Warner Bros. Entm't, Inc.*, No. CV 04-08400-SGL (RZx), 2009 WL 2014164, at *7 (C.D. Cal. July 8, 2009) (holding that in calculating the amount of a hypothetical license, courts consider "the compensation obtained on the open market for the license of similar rights to other comparable literary properties").

Ultimately, Meyer's "cost approach" is a re-packaging of the impermissible "saved acquisition costs" theory conceived by the Seventh Circuit in *Deltak, Inc. v. Advanced Sys., Inc.*, which allowed damages based on "the acquisition cost saved by infringement." 767 F.2d 357, 361 (7th Cir. 1985). Despite claiming that "saved acquisition costs" were simply an application of the Ninth Circuit's "value of use" actual damages, the Seventh Circuit went well beyond the traditional "value of use" concept and adopted a novel theory allowing disgorgement of the defendant's purported saved costs. *Id*. at 360-62. Whether called a "saved acquisition costs" theory, a "saved development costs" theory, or a "cost approach," this method of calculating a "fair market value" license is foreclosed by the Copyright Act.

*Deltak*'s mutation of "value of use" damages contravenes the plain text of the Copyright Act, which permits actual damages and/or infringer's profits. 17 U.S.C. § 504(b). Saved costs (be they "acquisition" or "development") cannot qualify as "actual damages suffered by" the copyright owner. *Id.* As this Court explained, "[a]ctual damages are awarded to compensate for demonstrable harm caused by infringement." D.I. 628 (January 28, 2010 Order) at 2. But instead of measuring harm to the copyright owner, a "saved costs" approach attempts to disgorge an

alleged benefit to the infringer. Looking to a defendant's "saved costs" views damages "from the infringer's point of view," proving that saved costs are more like infringer's profits than actual damages. D.I. 628 (January 28, 2010 Order) at 2 (noting that actual damages and infringer's profits serve "different purposes" and that "[i]nfringer's profits are analyzed from the infringer's point of view"). But Plaintiffs concede that "saved costs" cannot qualify as "infringer's profits." *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 434 n.804 ("I do not . . . use SAP's avoided costs as a measure of Defendants' infringers' profits for its copyright infringement, as I understand that Defendants' avoided cost is not an appropriate measure of copyright damages on the basis of disgorgement of infringer's profits."). There being no other category of allowable damages under the Copyright Act, "saved costs" are plainly unauthorized by statute. 17 U.S.C. § 504(b); *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 405-06 (2d Cir. 1989).

*Deltak*'s "saved costs" language has never been adopted by the Ninth Circuit. In fact, only one court outside of the Seventh Circuit has ever adopted it, and it did so as a measure of infringer's profits (which Plaintiffs acknowledge is impermissible), not actual damages. *See Roeslin v. District of Columbia*, 921 F. Supp. 793, 796, 799 (D.D.C. 1995). "Saved development costs" are an improper measure of copyright damages, and as a matter of law, may not be used to calculate a "fair market value" license form of actual damages.

## VI. PLAINTIFFS MAY NOT RECOVER UNDER CLAIMS FOR WHICH THEY DID NOT DISCLOSE DAMAGES CALCULATIONS

Aside from their impermissible "saved development costs" theory of damages, Plaintiffs have not disclosed any calculations for damages recoverable under their trespass to chattels and CDAFA claims. Having failed to comply with the disclosure requirements of Fed. R. Civ. P. 26 ("Rule 26"), Plaintiffs should be precluded from recovering monetary damages for these claims.

### A. <u>Rule 26 Precludes Recovery When a Plaintiff Fails to Timely Disclose Damages Calculations.</u>

Rule 26 requires that a plaintiff provide in its initial disclosures "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). Failure to so disclose results in exclusion of evidence as "a self-executing, automatic sanction to provide a strong inducement for

disclosure of material." *Reynoso v. Construction Protective Servs., Inc.*, No. 06-56381, 2008 U.S. App. LEXIS 19681, at *8 (9th Cir. Sept. 16, 2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Such sanctions are appropriate "even when a litigant's entire cause of action . . . will be precluded." *Id.* at *8-9. District courts are given "particularly wide latitude" to issue sanctions under Fed. R. Civ. P. 37(c)(1), "even absent a showing in the record of bad faith or willfulness." *Silong v. U.S.*, No. CV F 06-0474 LJO DLB, 2007 U.S. Dist. LEXIS 68724, at *12 (E.D. Cal. Sept. 5, 2007) (quoting *Yeti*, 259 F.3d at 1106).

**B. Plaintiffs Cannot Recover Damages under the Trespass to Chattels Claim because They Failed to Disclose Any Damages Calculations.**

It is undisputed that Plaintiffs did not disclose in their initial disclosures any damages calculations for their trespass to chattels claim. Rather, Plaintiffs only make general allegations of "damage to Oracle's computers, data, and systems" caused by TN's alleged trespass on Plaintiffs' computer systems and assert that such actions "adversely impacted Oracle's goodwill and caused it to lose its business." Lanier Decl. ¶¶ 10, Ex. J (Plaintiffs' Third Supplemental and Amended Initial Disclosures ("Revised Disclosures")) at 54. Although Plaintiffs state that they will seek "tens of millions of dollars of associated attorneys' fees and other litigation costs, as well as punitive damages," they provide no calculations or amounts to establish any actual damages. *Id.* Instead, Plaintiffs promise that any such information will be "provided in connection with Oracle's expert report or before." *Id.*

Plaintiffs, however, failed to remedy this nondisclosure in their expert reports, despite their prior assurances and the Rule 26 requirement. Indeed, Meyer has not specifically identified any alleged damages arising under the trespass to chattels claim, as is required for recovery. *See Intel*, 30 Cal. 4th at 1351 (holding that a plaintiff may only recover "the actual damages suffered by reason of the impairment of the property or the loss of its use" under a trespass to chattels claim); *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1569 (Ct. App. 1996) (holding that plaintiff must provide evidence of actual damages flowing from the specific incidents of trespass).

Having failed to comply with Rule 26's disclosure requirements, Plaintiffs should be precluded from recovering any monetary damages under this claim or belatedly attempting to

cure this defect by introducing evidence of their heretofore unquantified damages. *See Silong*, 2007 U.S. Dist. LEXIS 68724, at *11-14 (granting summary judgment on certain damages theories where plaintiff failed to disclose dollar amounts for those theories, stating that summary judgment "may be imposed based on absence of evidence excluded for failure to comply with [Rule] 26 (a)") (citing *Wong v. Regents of the Univ. of Cal.*, 379 F.3d 1097, 1103 (9th Cir. 2004), *amended on other grounds*, 410 F.3d 1052 (9th Cir. 2005); *see also City of Moses Lake v. U.S.*, 472 F. Supp. 2d 1220, 1228 (E.D. Wash. 2007) (refusing to consider on summary judgment evidence of costs that plaintiff failed to disclose).

Additionally, Plaintiffs should not be allowed to seek as yet undisclosed damages under this claim because their failure to comply with Rule 26 inevitably prejudices Defendants. *See Silong*, 2007 U.S. Dist. LEXIS 68724, at *12-13 (dismissing certain damages theories where plaintiffs failed to show harmlessness of untimely disclosure) (*see also* D.I. 482 (September 17, 2009 Order Granting Defendants' Motion for Preclusion of Certain Damages Evidence) at 26 (excluding evidence of Plaintiffs' damages theories first disclosed in May 2009, stating that "expanding the damages case significantly as Plaintiffs belatedly attempt to do would severely prejudice the Court's ability to manage this case to resolution in anything approaching a just, speedy, and inexpensive manner"). The Ninth Circuit has recognized that "an involved, complex case increases the prejudice from the delay. Early preparation and participation are essential in such circumstances." *Allen v. Bayer Corp.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976)) (affirming dismissal of cases for failure to comply with case management orders). Defendants have been seriously prejudiced in their ability to prepare defenses and evaluate damages in this "involved, complex case" where, nearly three years into litigation and many months after the deadline to amend disclosures has passed, Plaintiffs have still failed to provide even rudimentary calculations of the damages they seek under this claim. For the reasons described above, Plaintiffs should be precluded from recovering monetary damages for their trespass to chattels claim.

**C. <u>Plaintiffs Cannot Recover Damages under the CDAFA Claim because They Failed to Disclose Any Calculations for Recoverable Damages.</u>**

Plaintiffs also have not disclosed any calculations for damages recoverable under their CDAFA claim. As with their trespass to chattels claim, Plaintiffs' initial disclosures are insufficient; they make only general allegations of harm to computers and impairment to goodwill caused by TN's alleged violations of the CDAFA and do not quantify damages sought under this claim. *See* Lanier Decl. ¶ 10, Ex. J (Revised Disclosures) at 54. Meyer's most recent report does not remedy this nondisclosure. On February 23, 2010, several months after Plaintiffs' expert reports were due, Meyer submitted a third amended report that stated, for the first time, that Plaintiffs seek lost profits in connection with their CDAFA claim. *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) at ¶ 352 n.657. Lost profits, however, are not recoverable under the CDAFA. Accordingly, Plaintiffs still have not provided adequate damages calculations for their CDAFA claim and should be precluded from recovering monetary damages under this claim.

1. <u>The CDAFA Limits Recovery of Compensatory Damages.</u>

Section 502(e)(1) of the CDAFA permits plaintiffs to recover only limited compensatory damages. The plain language and legislative history of the CDAFA make clear that recovery of compensatory damages under the statute is limited to expenditures incurred "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1) (2010). Specifically, the statute provides that "[c]ompensatory damages *shall include* any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1) (2010) (emphasis added). The language "shall include" is an imperative statement setting forth the exclusive types of expenses recoverable as compensatory damages.

This reading of the plain statutory language is consistent with California courts' interpretation of the phrase "shall include" in other California statutes as limiting when followed by specific and detailed language. *See Coast Oyster Co. v. Perluss*, 218 Cal. App. 2d 492, 501 (Ct. App. 1963) (holding that when "shall include" is followed by a "detailed elaboration," the

language shall be construed as limiting); *Pitney-Bowes, Inc. v. State Dept. of Food and Agric.*, 108 Cal. App. 3d 307, 317 (Ct. App. 1980). Additionally, courts have interpreted "shall include" as limiting where the statute uses explicitly enlarging language elsewhere, such as "includes but is not limited to." *See Coast Oyster*, 218 Cal. App. 2d at 501-02; *Muller v. Auto. Club of S. Cal.*, 61 Cal. App. 4th 431, 445 (Ct. App. 1998), *overruled by statute on other grounds*. Here, the fact that the California Legislature used the language "including, but not limited to" in other sections of CDAFA to convey non-exclusive lists further evinces its intent that "shall include" limit the recoverable costs. *See* Cal. Penal Code § 502(b)(4), (b)(7). Finally, the California Penal Code expressly refers to Section 502(e)(1) as providing a definition of compensatory damages, rather than mere examples. *See* Cal. Penal Code § 502.01(g)(1) (stating "compensatory damages, as defined in paragraph (1) of subdivision (e) of Section 502").

The legislative history of the CDAFA reinforces a reading of the statute as limiting compensatory damages to "verification" costs. Unlike the current version, earlier versions permitted a claim for "compensatory damages, *including* any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1) (1999) (emphasis added). When the Legislature amended the CDAFA in 2000, it changed the more expansive "including" to the imperative (and limiting) "shall include." The Legislature's revisions to the statute convey its intent that these "verification" expenditures comprise the exclusive category of "compensatory damages" available under the CDAFA. The plain language and legislative history of the CDAFA show the Legislature's intent to limit compensatory damages available under the statute to verification costs.

2. <u>Plaintiffs Have Not Disclosed Calculations for Recoverable Damages in Connection with Their CDAFA Claim.</u>

Despite multiple revisions to the Meyer Report, Plaintiffs failed to disclose calculations for damages recoverable under their CDAFA claim. Indeed, Meyer admits that Plaintiffs still have "not quantified other damages suffered by Oracle from these improper actions" under this claim. Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶ 456. Plaintiffs' request for "saved development

costs" and lost profit damages in connection with their CDAFA claim does not cure the nondisclosure because these do not constitute verification expenditures recoverable under the CDAFA. Thus, as Plaintiffs have not disclosed any calculations for damages recoverable under the CDAFA, they should be precluded from seeking monetary recovery under this claim. Rule 26 requires this result to avoid the prejudice to Defendants that would result from belated disclosure. *See Silong*, 2007 U.S. Dist. LEXIS 68724, at *11-14.

3. Plaintiffs' Damages under the CDAFA, If at All, Should Be Limited to No More Than Alleged "Investigation Costs."

Notwithstanding Plaintiffs' failure to adequately disclose damages under the CDAFA, should Plaintiffs be permitted to seek monetary damages under the statute, that recovery should be limited to no more than the $300,000 of investigation costs Plaintiffs seek in connection with their federal *CFAA* claim. *See* Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 451-55. Again, the plain language and legislative history of the CDAFA make clear that recovery of compensatory damages under the statute is limited to expenditures incurred "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1) (2010). Because the only damages calculation Plaintiffs disclose relating to any such verification expenditures comprise Plaintiffs' so-called "investigation costs" under their CFAA claims, any recovery of compensatory damages under the CDAFA should be limited to these costs. Lanier Decl. ¶ 1, Ex. A (Meyer Report) ¶¶ 451-55.

## VII. CONCLUSION

For these reasons stated, the Court should grant summary judgment dismissing OEMEA's claims as wholly extraterritorial and holding that Plaintiffs may not recover damages of related nonparties, may not calculate damages for any of the asserted claims using a "saved development costs" approach, and may not seek damages for the CDAFA or trespass to chattels claims. To the extent that Plaintiffs are permitted to seek damages for the CDAFA claim, damages should be limited to no more than Plaintiffs' alleged investigation costs.

Dated: March 3, 2010

JONES DAY

By: /s/ Tharan Gregory Lanier
Tharan Gregory Lanier

Counsel for Defendants

SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC.