# EXHIBIT I

Dockets.Justia.com

# 02-9383

UNITED STATES COURT OF APPEALS
FILED
JUL 1 9 2004
Roseann B. MacKechnie, CLERK
SECOND CIRCUIT

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT



SARHANK GROUP,



RECORD COPY
PLEASE RETURN TO ROOM
1802

*Petitioner-Appellee,*

—against—

ORACLE CORPORATION,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR RESPONDENT-APPELLANT

ROBIN L. COHEN
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

*Attorneys for Respondent-Appellant*

## RESPONDENT-APPELLANT ORACLE CORPORATION'S
## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Respondent-Appellant, Oracle Corporation ("Oracle"), hereby certifies that

Oracle, a publicly owned corporation, does not have any parent corporation. In

addition, Oracle hereby certifies that there are no publicly held corporations that

own ten percent (10%) or more of Oracle's stock.

Dated:  New York, New York
     July 19, 2004

          Respectfully submitted,

          DICKSTEIN SHAPIRO MORIN
          & OSHINSKY LLP

          By:_____
           ROBIN L. COHEN (RC-0815)
           1177 Avenue of the Americas
           New York, New York 10036
           (212) 835-1400

          *Attorneys for Oracle Corporation*

Elizabeth A. Sherwin
Jeremy King
*Of Counsel*

i

## TABLE OF CONTENTS

Page

RESPONDENT-APPELLANT ORACLE CORPORATION'S RULE 26.1
CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ......................................................................... iv

PRELIMINARY STATEMENT PURSUANT TO LOCAL RULE 28 ................... 1

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW .............................................................. 3

STATEMENT OF THE CASE ........................................................................ 4

STATEMENT OF FACTS ............................................................................. 7
    The Relevant Parties ........................................................................... 7
    The Sarhank/Systems Contract ............................................................. 8
    The Egyptian Arbitration ..................................................................... 8
    The Original Opinion Below ............................................................... 10
    The Interest Opinion ......................................................................... 12

SUMMARY OF ARGUMENT ...................................................................... 14

ARGUMENT .......................................................................................... 16

THE APPLICABLE STANDARD OF REVIEW ............................................... 16

IN THE ABSENCE OF A WRITTEN AGREEMENT TO ARBITRATE SIGNED
BY ORACLE, THE DISTRICT COURT LACKED SUBJECT MATTER
JURISDICTION TO CONFIRM THE EGYPTIAN AWARD ............................... 18

    A.  The Existence Of A Written Agreement To Arbitrate Signed
    By The Party Against Whom Enforcement Is Sought Is A
    Jurisdictional Prerequisite To A Proceeding To Confirm A
    Foreign Arbitral Award ..................................................................... 19

B. The District Court Erred In Failing To Independently Determine Under American Law Whether Oracle Could Properly Be Bound To The Arbitration Agreement Contained In The Sarhank/Systems Contract ................................................. 27

    1. The District Court Erred In Concluding That It Was Bound By The Egyptian Panel's Determination of Arbitrability .................. 29

    2. An Independent Analysis By The District Court Would Have Disclosed That Sarhank Failed to Meet Its Burden Of Establishing The Existence of Subject Matter Jurisdiction ..................................... 33

THE DISTRICT COURT SHOULD HAVE DECLINED AS A MATTER OF LAW TO CONFIRM THE EGYPTIAN AWARD BASED ON THE DEFENSES TO ENFORCEMENT SET FORTH IN ARTICLE V OF THE CONVENTION . 37

A. Because Oracle Never Clearly And Expressly Agreed To Cede The Question Of Arbitrability To The Egyptian Arbitrators, That Question Was Not Properly Arbitrable Under The Law Of The United States .......................................................................................... 39

B. The District Court Should Have Declined To Enforce The Egyptian Award On The Ground That It Violates The Strong Public Policy That Arbitration Be A Voluntary Choice ............................... 43

CONCLUSION ...................................................................................................... 46

RESPONDENT-APPELLANT ORACLE CORPORATION'S RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE ..................................................................... 47

## TABLE OF AUTHORITIES

Page

Cases:

*AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643 (1986).............. 32

*Al Haddad Bros. Enters., Inc. v. M/S AGAPI*, 635 F. Supp. 205 (D. Del. 1986), *aff'd*, 813 F.2d 396 (3d Cir. 1987).................................................... 24, 25

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986)............................... 18

*China Minmetals Materials Import & Export Co., v. Chi Mei Corporation*, 334 F.3d 274 (3d Cir. 2003) ....................................................... 29, 30, 32, 34, 42

*Compagnie Noga D'Importation Et D'Exportation S.A. v. The Russian Federation*, 361 F.3d 676 (2d Cir. 2004) .......................................................... 34

*Czarina, L.L.C. ex rel. Halvanon Ins. Co. v. W.F. Poe Syndicate*, 254 F. Supp. 2d 1229 (M.D. Fla. 2002), *aff'd*, 358 F.3d 1286 (11th Cir. 2004)............................................................24, 25, 30, 31, 33, 34, 42

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998)........................................................................................ 26, 44, 45

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ..................... *passim*

*In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266 (S.D. Tex. 1997), *aff'd*, 161 F.3d 314 (5th Cir. 1998)........................................................................................... 34

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434 (11th Cir. 1998).................................................................................... 17

*International Standard Electric Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial*, 745 F. Supp. 172 (S.D.N.Y. 1990) ........... 26

*Kahn Lucas Lancaster, Inc. v. Lark Int'l, Ltd.*, 186 F.3d 210 (2d Cir. 1999)............................................................................................... *passim*

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)......................... 34

*La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation et la Commercialisation Des Hydrocarbures v. Shaheen Natural Resources Co.*, 585 F. Supp. 57 (S.D.N.Y. 1983), *aff'd*, 733 F.2d 260 (2d Cir. 1984) ................................................................ 42

*Lo v. Aetna Int'l, Inc.*, No. 3:99CV195 JBA, 2000 WL 565465 (D. Conn. Mar. 29, 2000)................................................................................ 34

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936)............... 34

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44 (2d Cir. 2000) ...................................... 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614
    (1985) ............................................................................................ 27, 40

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ......... 27

*Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama,
    S.A.*, 312 F.2d 299 (2d Cir. 1963) ................................................................ 32, 33

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie
    Du Papier (RAKTA)*, 508 F.2d 969 (2d Cir. 1974) ................................ 40, 43, 45

*Polytek Engineering Co. v. Jacobson Cos.*, 984 F. Supp. 1238
    (D. Minn. 1997) ............................................................................................ 24

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration
    International, Inc.*, 198 F.3d 88 (2d Cir. 1999) .............................. 25, 26, 27, 39

*Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (3d Cir. 2003) ....... 17

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773
    (2d Cir. 1995) ............................................................................................ 35, 36, 44

*United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S.
    439 (1993) ............................................................................................ 21

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15
    (2d Cir. 1997) ............................................................................................ 17


Federal Rules of Civil Procedure:

Fed. R. Civ. P. 59(e) .......................................................................................... 2


Statutes:

9 U.S.C. § 201 .......................................................................................... 1, 5

9 U.S.C. § 202 .......................................................................................... *passim*

9 U.S.C. § 203 .......................................................................................... *passim*

9 U.S.C. § 207 .......................................................................................... 20

28 U.S.C. § 1291 .......................................................................................... 1

## PRELIMINARY STATEMENT PURSUANT TO LOCAL RULE 28

Respondent-Appellant, Oracle Corporation ("Oracle"), appeals from the judgment entered in the United States District Court for the Southern District of New York (the "District Court") by J. Michael McMahon, Clerk, at the behest of the Honorable Deborah Batts on October 17, 2002, pursuant to 9 U.S.C. § 201 *et seq.* (A-258[1] [the "Judgment"]). Neither the supporting opinion with respect to the Judgment, entered October 17, 2002, nor that with respect to the amended judgment, dated February 24, 2004 (A-287 [the "Amended Judgment"]) is reported. However, the supporting opinion with respect to the Judgment is available at 2002 WL 31268635, and the supporting opinion with respect to the Amended Judgment is available at 2004 WL 324881.

## JURISDICTIONAL STATEMENT

The purported basis for jurisdiction in the District Court was 9 U.S.C. § 203; Oracle disputes that the Petition below meets the requirements of that provision and disputes that the District Court had subject matter jurisdiction over the Petition. The basis of this Court's jurisdiction is 28 U.S.C. § 1291.

On October 17, 2002, the District Court entered Judgment: (1) granting the motion of Petitioner, Sarhank Group ("Sarhank"), to confirm an arbitral award (the "Egyptian Award") entered in the Cairo Regional Centre for International

Commercial Arbitration in favor of Sarhank jointly and severally against both Oracle and its subsidiary Oracle Systems, Ltd. ("Systems"); and (2) denying Oracle's petition to vacate the Egyptian Award and its motion to dismiss Sarhank's Petition.

By letter dated October 23, 2002, Sarhank asked the District Court to amend the Judgment to specify the amount awarded, and include in that amount an additional award of $613,579.79 in prejudgment interest. A-259. Because the letter to the District Court did not take the form of a formal motion to amend the Judgment pursuant to Fed. R. Civ. P. 59(e), Oracle responded by letter to the court dated November 1, 2002, opposing Sarhank's request for prejudgment interest, and requesting the court to inform the parties whether it would treat Sarhank's letter as a motion to amend the Judgment, thereby staying Oracle's time to appeal. A-262.

Receiving no response from the District Court, Oracle filed its notice of appeal on November 18, 2002, the last day for filing a timely notice of appeal from the Judgment. A-270. At a pre-argument conference held on March 24, 2003, staff counsel, upon being informed that the District Court had not yet ruled on Sarhank's request for prejudgment interest, suggested that the parties agree to withdraw the appeal from active consideration until the District Court ruled on

---

[1] References to the Appendix are designated "A-__."

Sarhank's request.  The parties agreed, and a Stipulation Withdrawing Appeal

From Active Consideration, Without Prejudice, With Leave To Reactivate was

signed by counsel for both parties and filed on March 24, 2003.  A-272.

On February 10, 2004, the District Court granted Sarhank's motion for

an amended judgment, awarding prejudgment interest from the date of the original

Petition at the federal statutory rate in force as of the date of the Judgment.[2]  A-

274.  The Amended Judgment was entered on February 24, 2004.  A-287.  By

letter to staff counsel dated February 25, 2004, Oracle reactivated this appeal, in

accordance with the March 24, 2003 Stipulation.  A-288.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court erred as a matter of law in holding that a

federal court has the jurisdiction to enforce a foreign arbitral award where the

fundamental jurisdictional requirement of a written agreement to arbitrate by the

party against whom the award is to be enforced has not been met.

2.  Whether the District Court erred as a matter of law in failing to

apply the law of the United States on the issue of whether Oracle had established

---

[2] The Memorandum Opinion granting Sarhank's motion for an amended judgment
is actually dated February 10, 2003, but all parties agree that that is a
typographical error, and that the Opinion actually was not issued until 2004, two
weeks before the February 24, 2004 entry of the Amended Judgment.

the Article V(a)(2) defense of non-arbitrability, and in deferring instead to the

Egyptian arbitrators' determination of that issue under "international law."

## STATEMENT OF THE CASE

In 1991, Sarhank entered into a contractual agreement with Systems, a

subsidiary of Oracle, with respect to certain Egyptian operations. Sarhank and

Systems were the only parties to that agreement; Oracle was neither a party to nor

a signatory of the contract. The agreement provided that disputes between

Sarhank and Systems would be subject to arbitration in Egypt. In 1997, such a

dispute arose, and Sarhank commenced an arbitration proceeding in Egypt against

Systems. However, despite the fact that Sarhank had no contractual agreement or

other legal relationship with Oracle, it also named Oracle as a party in that

arbitration. The Egyptian arbitrators rejected Oracle's vigorous arguments that it

had not agreed to submit to arbitration, and held that under "principles of

international law" Oracle was bound by Systems' agreement to arbitrate disputes

with Sarhank. On or about March 11, 1999, they entered the Egyptian Award on

Sarhank's claim against both Oracle and Systems in the amount of $1,902,573. A-

82.

On February 21, 2001, Sarhank filed the Petition at issue in the District

Court seeking to enforce the Egyptian Award. A-5. Sarhank alleged that the

District Court had jurisdiction to enforce that award pursuant to the Convention on

4

the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"),

21 U.S.T. 2517, 330 U.N.T.S. 38 (reprinted at 9 U.S.C. § 201). Shortly after filing

the Petition, Sarhank moved to confirm the Egyptian Award. A-152.

Oracle opposed the motion to confirm the Egyptian Award, and moved

to dismiss the Petition and vacate the Egyptian Award. A-154. Oracle asserted

that, in the absence of a written agreement to arbitrate signed by Oracle, the

Egyptian Award did not fall within the terms of the Convention, and therefore the

District Court lacked jurisdiction over the Award under 9 U.S.C. §§ 202 and 203.

In addition, Oracle asserted that, under defenses specifically enumerated in Article

V of the Convention, the Egyptian Award could not be confirmed because, in the

absence of a specific agreement by Oracle to submit to arbitration, any dispute

between Oracle and Sarhank was not arbitrable under the law of the United States.

On October 8, 2002, the District Court ruled on the written submissions,

without argument, confirming the Egyptian Award. The District Court held that

the Convention did not require a written agreement to arbitrate as a jurisdictional

prerequisite to a petition to enforce an arbitral award, rather than to a request to

compel arbitration. A-246. It further found that it was bound to the Egyptian

arbitrators' determination of arbitrability under international law, and that that

question did not have to be decided under United States law for purposes of

review of the Article V defenses under the Convention. On October 17, 2002, the

5

District Court entered the Judgment for Sarhank in accordance with its Opinion. A-258.

Sarhank subsequently requested that the District Court amend its Judgment to specify the amount of the Egyptian Award confirmed, and to include an award of prejudgment interest from the date of the Petition at the New York statutory rate of 9% per annum. A-259. Oracle opposed that request, on the grounds that: (1) the question of prejudgment interest in an action to confirm an award under the Convention is a matter of federal, rather than state law; (2) an award of any prejudgment interest was inappropriate under federal law, particularly given the fact that the Egyptian arbitrators themselves had not seen fit to award post-arbitration interest on the award; and (3) in any event, the 9% interest rate sought by Sarhank was inappropriately high. A-262. On February 10, 2004, the District Court issued a Memorandum Order granting Sarhank's motion for prejudgment interest, and ordered that prejudgment interest be awarded from the filing of the Petition at the federal post-judgment interest rate in place as of the date of the original Judgment. A-274. On February 24, 2004, the District Court entered the Amended Judgment in the amount of $2,008,171.01 in accordance with that opinion. A-287.

## STATEMENT OF FACTS

### The Relevant Parties

Sarhank is a company incorporated under the laws of Egypt. A-5.
Systems is a company incorporated under the laws of and having offices in the
Republic of Cyprus. A-159. It is a wholly owned subsidiary of Oracle, a
Delaware corporation with its principal place of business in California, and Oracle
Corporations Nominees Limited.

Oracle and Systems are separate corporate entities. At all times pertinent
to this matter, Oracle and Systems maintained separate corporate stock, a separate
board of directors, and separate corporate records. A-164. Oracle and Systems
maintained separate bank accounts and did not exchange funds informally; there
was no overlap in officers or directors between Oracle and Systems. A-164. They
did not share common office space, an address, or telephone numbers. A-164. On
a day-to-day basis, Systems managed its own business and Systems and Oracle
dealt with one another at arm's length, and were treated as independent profit
centers. A-164. Systems' debts were not paid or guaranteed by Oracle, and
property of Oracle and Systems was kept separate and not shared between the
companies. A-164.

**The Sarhank/Systems Contract**

In 1991, Sarhank entered into a contract with Systems, pursuant to which Sarhank was to provide certain services to Systems in exchange for certain remuneration (the "Sarhank/Systems Contract").  A-159.  Under the Sarhank/Systems Contract, both Sarhank and Systems agreed that disputes between them would be resolved by arbitration in Egypt.  A-18.

Sarhank and Systems are the only parties to the Sarhank/Systems Contract.  A-18.  In particular, Oracle is not a party to, has never signed, and is not mentioned in, the Sarhank/Systems Contract.  A-160.  The Sarhank/Systems Contract does not contemplate, directly or indirectly, any obligation or liability on the part of Oracle.  Neither does it contain any indication that an "affiliate company," "sister company," "parent company," or any other entity, apart from Sarhank and Systems, has any obligation or responsibility under its terms.  In fact, the Sarhank/Systems Contract clearly reflects Sarhank's understanding that it was only contracting with Systems, in that it defines "Oracle Systems Limited" as "a company incorporated under the laws of the Republic of Cyprus having offices at Julia House, 3 Themistocles Dervis Street, Nicosia, Republic of Cyprus."  A-12.

**The Egyptian Arbitration**

Beginning in approximately 1997, a dispute arose between Sarhank and Systems over the Sarhank/Systems Contract.  After a long effort to resolve the

8

dispute with Sarhank, counsel for Systems notified Sarhank that "Oracle Systems Limited has decided to exercise [its right to terminate the Sarhank/Systems Contract]." A-160. Oracle itself was not involved with the dispute or with Systems' decision to terminate the Sarhank/Systems Contract.

Despite the fact that Oracle was never a party to the Sarhank/Systems Contract, Sarhank served both Systems and Oracle with a demand to arbitrate. A-161. From that time until today, Oracle has strenuously and repeatedly objected to the arbitration proceedings under the Sarhank/Systems Contract on the grounds, among others, that (i) it is not a party to the Contract and never signed the Contract; (ii) its liability is not a subject of the Contract; and (iii) it never consented to arbitration under the Contract. A-161.

Despite these objections, the Egyptian arbitration panel proceeded to render the Egyptian Award in favor of Sarhank and against both Systems and Oracle. A-161. The Egyptian arbitrators determined that the dispute was arbitrable against Oracle under supposed general principles of "international law." In so doing, the panel apparently concluded that Oracle and Systems were part of a corporate "group" of companies, a fact which, in the panel's determination, effectively justified ignoring their separate corporate forms. A-111.

9

## The Original Opinion Below

As already noted, Sarhank moved to confirm and enforce the Egyptian

Award in the District Court pursuant to the Convention, and Oracle opposed that

motion and cross-moved to dismiss the Petition and vacate the Egyptian Award.

On October 8, 2002, the District Court issued its Opinion affirming the Egyptian

Award, and denying Oracle's cross-motions.

The District Court held, first, that it had subject matter jurisdiction to

affirm the Egyptian Award. In so doing, it rejected Oracle's argument that such

jurisdiction could not exist in the absence of a written agreement to arbitrate:

> Oracle argues that the Court lacks subject matter jurisdiction
> over this dispute. . . . Oracle relies on *Khan* [sic] *Lucas*
> *Lancaster, Inc. v. Lark International, Ltd.*, 186 F.3d 210 (2d
> Cir. 1999), to argue that an arbitration agreement must be
> signed by the parties to the arbitration in order to confer subject
> matter jurisdiction on federal courts under the Convention.
> However, the analysis in *Khan Lucas* centered upon whether
> there was an "agreement in writing" sufficient to compel
> arbitration, not upon whether an Award may be enforced
> pursuant to the Convention under a theory of agency. *Id.* at
> 214. Oracle attempts to extend the analysis of *Khan Lucas* to
> foreclose the application of agency doctrine in the enforcement
> of an arbitral award. This conclusion is certainly not mandated
> by the Convention, which "should be interpreted broadly to
> effectuate its recognition and enforcement purposes."
> *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 933 (2d Cir.
> 1983).

A-245--A-246. The District Court further held that, because it had been asked to

confirm an existing award, rather than to compel arbitration, it was bound by the

Egyptian panel's determination under Egyptian law of the question of arbitrability:

> Currently before the Court is a petition to enforce the
> Award. The Court has not been asked to compel arbitration, in
> which case it would need to review arbitrability. *See, e.g.*
> *Smith/Enron*, 198 F.3d at 95 (quoting *Chelsea Square Textiles,*
> *Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.
> 1999) (In considering whether "a particular dispute is
> arbitrable," a court must first decide "whether the parties
> agreed to arbitrate.")). Rather, the court has been asked to
> enforce an international arbitral award in which arbitrability
> has already been established under the laws of Egypt. In such a
> case, the Court has original subject matter jurisdiction and may
> only vacate the Award if the Respondent proves that a
> condition for vacatur has been met under the Convention, as
> enumerated in Article V of the Convention.

A-246.

Having concluded that it had subject matter jurisdiction to enforce the

Egyptian Award, the District Court turned next to Oracle's assertion that the

defenses to enforcement set forth in Article V of the Convention barred

enforcement of the Egyptian Award. The District Court first rejected Oracle's

assertion that the question of arbitrability was not itself arbitrable, holding that the

Egyptian panel's interpretation of the Sarhank/Systems Contract as extending to

Oracle was binding upon the District Court. A-246. In particular, the District

Court held that "Oracle misinterprets the law when it states that the Convention

mandates the application of U.S. law in the determination of the enforcement of

the award. . . . United States domestic law regarding arbitrability is not

applicable." A-250. In explaining that holding, however, the District Court

referred only to Article V(1)(e) of the Convention, and did not address the

11

applicable Article V(2)(a), which specifically provides that a court may not

enforce an arbitral award where the issues determined in the award would not have

been arbitrable under the laws of the country *where enforcement is sought.*

The District Court also rejected Oracle's claim that Article V(2)(b) was

applicable and barred enforcement of the Egyptian Award on the ground that the

decision to force Oracle into an arbitration to which it had not voluntarily agreed

violated United States public policy. Once again, the District Court adopted the

holding of the Egyptian panel, under Egyptian law, that Oracle could be bound by

its separate subsidiary's agreement to arbitration with Sarhank: "Oracle might

quibble that a U.S. court would not have imposed liability on an agency theory on

the facts of this case, but that argument is misplaced. The Egyptian arbitrators'

decision to do so here, under a theory of partnership akin to veil piercing, cannot

be said to undermine 'our most basic notions of morality and justice.'" A-256--A-

257.[3]

## The Interest Opinion

As already noted, after the District Court entered judgment in accordance

with its October 8, 2002 Opinion on October 17, 2002, Sarhank asked the District

Court to enter an amended judgment specifying the amount awarded, and

including prejudgment interest at the rate of 9% per annum, the New York state

---

[3] The District Court also rejected Oracle's assertion that the Egyptian Award was
not ripe for enforcement. A-253. Oracle does not appeal from that determination.

statutory rate. Oracle opposed that request, arguing that no award of interest was proper in light of the fact that the Egyptian panel itself could have granted Sarhank post-award interest, but chose not to do so. Oracle also argued that the 9% state rate sought by Sarhank was inapplicable to an award based on federal law, and that it amounted to a windfall for Sarhank.

On February 10, 2004, the District Court issued a Memorandum Order granting Sarhank's request for entry of an amended judgment. Despite the District Court's prior deference to the Egyptian panel's rulings in its original October 8, 2002 Opinion, the District Court held that it was not bound by the Egyptian panel's determination not to award interest as part of the Egyptian Award. A-274. The District Court also concluded, however, that Sarhank's request for application of the New York state statutory prejudgment interest rate was inappropriate, and instead held that "pre-judgment interest shall be assessed using the federal post-judgment rate for the week prior to October 8, 2002, . . . to accrue from March 11, 1999 to October 8, 2002." A-285.[4]

After entry of the Amended Judgment in the amount of $2,008,171.01 in accordance with the Memorandum Order, this appeal followed.

---

[4] Oracle does not appeal from the District Court's decision to award prejudgment interest to Sarhank.

13

## SUMMARY OF ARGUMENT

1. Federal jurisdiction to confirm a foreign arbitration award exists only where the award "falls under the Convention." The Convention, in turn, requires that the award be based on the parties' written agreement to arbitrate their dispute. In this case, the only written agreement to arbitrate was between Sarhank and Systems, not Sarhank and Oracle. Nonetheless, the District Court erroneously concluded that it had jurisdiction to confirm the Egyptian Award because it made two fundamental errors with respect to the jurisdictional analysis:

(a)     First, the District Court erroneously concluded that a written agreement to arbitrate is necessary only where a court is addressing a request to compel arbitration, and not where, as here, a party seeks to enforce an award. That holding is in conflict with the terms of Article IV of the Convention governing confirmation of foreign awards, which expressly refers to the requirement of a written agreement to arbitrate, as well as case law holding that a written agreement is a necessary prerequisite to confirmation of an award as well as a motion to compel arbitration.

(b)     Second, in determining whether the Sarhank/Systems Contract constituted a written agreement by Oracle to arbitrate disputes with Sarhank, the District Court improperly deferred to the conclusion of the Egyptian arbitrators under "international law." Because the question of whether there was a written agreement to arbitrate which was binding on Oracle is

14

determinative of the federal court's jurisdiction, the District Court was required to determine that question independently under the law of the United States. Under that law, a corporate parent is not bound by the agreement of its subsidiary to arbitrate disputes under the circumstances presented here.

2. The District Court also erred in concluding that the defenses to enforcement set forth in Article V of the Convention, and in particular, those set forth in Article V(2)(a) and (b) did not bar confirmation of the award at issue. Those subsections of the Convention provide that a court should not confirm an award either where the subject matter would not be arbitrable in the jurisdiction in which confirmation is sought (Article V(2)(a)) or where to do so would violate the public policy of that jurisdiction (Article V(2)(b)). Again, the District Court's analysis of the relevant Article V defenses erred in two respects:

(a)     Procedurally, the District Court erred in failing to apply the law of the United States to the questions of arbitrability raised by the Article V defenses to enforcement. Article V of the Convention expressly provides that the defenses set forth therein are to be determined by the law of the jurisdiction in which enforcement of the award is sought; the District Court's deference to the Egyptian arbitrators' findings on this issue was thus error as a matter of law.

15

(b)   Substantively, the District Court erred in holding that the

dispute, including the question of arbitrability itself, was arbitrable as against

Oracle. Under the law of the United States, the *sine qua non* of arbitrability is

a voluntary agreement by a party to submit its dispute to arbitration. In

particular, both this Court and the Supreme Court of the United States have

repeatedly held that the question of arbitrability itself may not be determined

by the arbitrator, and is reserved to the court, absent a clear and unequivocal

agreement by the parties to cede that question to the arbitrator. Accordingly,

absent an express agreement to arbitrate by Oracle which meets the standards

of American law, any dispute between Oracle and Systems was not arbitrable in

the United States. In particular, absent Oracle's clear and unequivocal

agreement to allow the Egyptian arbitrators to determine the question of

arbitrability, that issue itself was not arbitrable. Under Article V(2)(a), that

lack of arbitrability is a defense to an action to confirm the foreign award.

## ARGUMENT

### POINT I
### THE APPLICABLE STANDARD OF REVIEW

The District Court's interpretation and application of the provisions of

the Convention are subject to *de novo* review by this Court. *Kahn Lucas*

*Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999) ("*Kahn*

*Lucas*"); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440,

443 n.2 (3d Cir. 2003); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,

141 F.3d 1434, 1443 (11th Cir. 1998). In particular, this Court reviews any factual

findings with respect to the application of the Convention for clear error, and legal

conclusions *de novo. Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126

F.3d 15, 23 (2d Cir. 1997). In this case, however, the District Court made no

separate findings of fact in connection with the confirmation, erroneously

determining instead that it was bound as a matter of law by the conclusions of the

Egyptian panel with respect to whether Systems' agreement to arbitrate was

chargeable to and binding upon Oracle. Its decision to defer to the Egyptian panel

thus was a determination of law subject to *de novo* review.

   In addition, whether a party has agreed to arbitrate a dispute with another

person is subject to "independent" review by the courts. *First Options of Chicago,

Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). A district court's decision that a party

has agreed to arbitrate a dispute with another person is subject to *de novo* review

by the circuit court. *Id.* at 947-48; *see also Mehler v. Terminix Int'l Co.*, 205 F.3d

44, 47 (2d Cir. 2000). That would necessarily include the question of whether a

party is bound by an arbitration agreement to which it is not a signatory.

17

## POINT II

## IN THE ABSENCE OF A WRITTEN AGREEMENT TO ARBITRATE SIGNED BY ORACLE, THE DISTRICT COURT LACKED SUBJECT MATTER <u>JURISDICTION TO CONFIRM THE EGYPTIAN</u> <u>AWARD</u>

As the United States Supreme Court has reaffirmed on countless

occasions, "[f]ederal courts are not courts of general jurisdiction; they have only

the power that is authorized by Article III of the Constitution and the statutes

enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*,

475 U.S. 534, 541 (1986). Thus, a federal court has not only the power, but also

the inherent duty to determine as a threshold matter any issue that affects whether

the case before it comes within its statutory grant of jurisdiction.

In this case, the District Court committed two fundamental errors of law

in reaching the erroneous conclusion that it had subject matter jurisdiction with

respect to the Egyptian Award. First, it erroneously concluded that the existence

of a written agreement to arbitrate signed by Oracle was not a prerequisite to a

request that a court confirm a foreign arbitral award, but only to a request that a

court compel arbitration. That erroneous conclusion is at variance with the plain

language of the Convention, as other courts addressing this issue have held.

Second, the District Court adopted the conclusion of the Egyptian arbitrators,

rendered under "international law," that Oracle was a proper party to the

arbitration of the dispute between Sarhank and Systems. Because the question of

18

whether Oracle agreed to arbitrate with Sarhank goes directly to the question of

the court's subject matter jurisdiction, it is a question that must be decided

independently by the court as a matter of American law – and, under American

law, Systems' agreement to arbitrate would not be binding on it corporate parent,

Oracle under the circumstances presented here.  Accordingly, the Amended

Judgment should be reversed with the direction to dismiss the Petition for lack of

subject matter jurisdiction.

> ### A. The Existence Of A Written Agreement To Arbitrate Signed By The Party Against Whom Enforcement Is Sought Is A Jurisdictional Prerequisite To A Proceeding To Confirm A Foreign Arbitral Award

The District Court concluded that, because the Petition before it sought

to confirm an arbitral award, rather than to compel arbitration, Sarhank was not

required to prove the existence of a written agreement by Oracle to submit to

arbitration:

> The Court has not been asked to compel arbitration, in which
> case it would need to review arbitrability.  Rather, the court has
> been asked to enforce an international arbitral award in which
> arbitrability has already been established under the laws of
> Egypt.

A-246 (citation omitted).  That conclusion constituted reversible error as a matter

of law, because a review of the applicable statutory grant of jurisdiction shows

clearly that the existence of a written agreement to arbitrate is a jurisdictional

prerequisite *both* for a request to compel arbitration *and* for a request to enforce a

foreign arbitral award.

The key jurisdictional statutes in this case are 9 U.S.C. §§ 202 and 203,

which define and limit the grant of jurisdiction to the federal courts in matters

brought under the Convention.[5]  Section 203 provides that the district courts shall

have jurisdiction over "[a]n action or proceeding falling under the Convention."

Section 202, in turn, defines what actions or proceedings will be deemed to "fall

under the Convention:"

> An arbitration agreement or arbitral award arising out of a
> legal relationship, whether contractual or not, which is
> considered as commercial, including a transaction, contract or
> agreement described in section 2 of this title, falls under the
> Convention.

9 U.S.C. § 202.

Thus, the federal courts have been granted jurisdiction over only those

arbitral awards that satisfy three criteria:  (1) they arise out of a "legal

relationship"; (2) that "legal relationship" is considered as commercial; and (3)

they meet the jurisdictional prerequisites in the Convention itself.  *See Kahn*

*Lucas*, 186 F.3d at 219 (Where a dispute does not meet the requirements of the

---

[5] Sarhank had argued below that once an award is entered, a federal court is
limited to determining whether any of the defenses set forth in 9 U.S.C. § 207 bar
enforcement of the award.  In fact, however, § 207, by its express terms, applies
only to "any court having jurisdiction under this chapter."  Thus, § 207 itself does
no more than set forth how a court may or must proceed *once it has determined*
*that the jurisdictional prerequisites of §§ 202 and 203 are met.*

Convention, "subject matter jurisdiction cannot properly be premised on 9 U.S.C. § 203.").

The most basic jurisdictional prerequisite set forth in the Convention – and, thus, the most basic predicate requirement for the exercise of jurisdiction under §§ 202 and 203 – is that parties to an arbitral award previously agreed in writing to submit their dispute to arbitration. In *Kahn Lucas*, this Court held that where a party has not agreed in writing to submit a dispute to arbitration, the matter does not fall within the terms of the Convention, and the federal court accordingly lacks jurisdiction. 186 F.3d at 218-19.

As noted, the District Court erroneously concluded that a written agreement is required only for actions to compel arbitration, and purported to distinguish this Court's holding in *Kahn Lucas* on the ground that that case involved such a request, while this case concerns a motion to enforce an existing arbitral award. Read in its entirety,[6] however, the plain language of the Convention will not permit such a result, as it clearly requires that an action to confirm a foreign arbitral award does not "fall under the Convention" absent an express written agreement to arbitrate signed by the parties.

_____

[5] *See Kahn Lucas*, 186 F.3d at 215 (interpretation of Convention is a "holistic endeavor"); *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (Statutory construction must take into account "a statute's full text, language as well as punctuation, structure, and subject matter.").

The first two paragraphs of Article II of the Convention set forth not only the jurisdictional prerequisite of a signed agreement to arbitrate, but also the types of written documents that will satisfy the requirement of a written agreement to arbitrate:

> 1. Each Contracting State *shall recognize an agreement in writing under which the parties undertake to submit to arbitration* all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term *"agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement signed by the parties* or contained in an exchange of letters or telegrams.

Convention, Article II(1), (2) (emphasis added). The third and final paragraph of Article II provides that a court of a Contracting State presented with such a signed agreement shall, at the request of either party, compel arbitration of the dispute unless it finds that the agreement is null and void, inoperative, or capable of being performed. Convention, Article II(3). This inclusion of the basic requirement of a written agreement to arbitrate in the same Article that governs motions to compel arbitration apparently led to the District Court's mistaken impression that a written agreement to arbitrate is necessary *only* in connection with a motion to compel arbitration.

That mistaken impression, however, is insupportable in light of the plain language of Articles III and IV, which govern confirmation of an award that has

22

already been entered by a foreign tribunal. Article III requires that each

Contracting State recognize such awards as binding and "enforce them in

accordance with the rules of procedure of the territory where the award is relied

upon, under the conditions laid down in the following articles." Convention,

Article III. Article IV sets forth the proof required of a party seeking to enforce an

award under the Convention. Significantly, that Article *specifically requires the*

*production of the written agreement referred to in Article II of the Convention:*

> 1. To obtain the recognition and enforcement mentioned in the
> preceding article, *the party applying for recognition and*
> *enforcement shall*, at the time of the application, *supply*:
>
> (a) The duly authenticated original award or a duly certified
> copy thereof;
>
> (b) *The original agreement referred to in article II or a duly*
> *certified copy thereof.*

Convention, Article IV(1).[7]

Applying this language, courts have held that the requirement of a

written agreement, which this Court found in *Kahn Lucas* to be a necessary

prerequisite to an action to compel arbitration, is equally necessary to establish a

federal court's jurisdiction to confirm a foreign award under the Convention.

Most recently, the United States Court of Appeals for the Eleventh Circuit held in

---

Further, Article V, which sets forth the defenses to confirmation, refers back to
Article II's requirement of an agreement in writing. *See* Convention Article
(1)(a) (referencing "[t]he parties to the agreement referred to in article II");
Article V(1)(d) (referring to "the agreement of the parties").

*Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004), *affirming*

254 F. Supp. 2d 1229 (M.D. Fla. 2002) ("*Czarina*"), that the existence of a valid

written agreement to arbitrate is a jurisdictional prerequisite to an action to

confirm an award under Article IV of the Convention, just as it is to an action

compel arbitration under Article II. Absent a written agreement to arbitrate which

satisfied the standards set forth in Article II (2), the Eleventh Circuit held that a

federal court lacks subject matter jurisdiction to confirm the award:

> [T]he Convention uses mandatory language in establishing the
> prerequisites [to an Article IV confirmation action]: "[t]o
> obtain the recognition and enforcement mentioned in the
> preceding article, the party applying for recognition and
> enforcement *shall, at the time of the application, supply*" a
> copy of the award and the arbitration agreement, Convention
> *supra*, art. IV, sec., 9 U.S.C. § 201. . . This mandatory language
> also indicates that without these requirements being satisfied,
> the court is without power to confirm an award. Thus, we hold
> that the party seeking confirmation of an award falling under
> the Convention must meet Article IV's prerequisites to
> establish the district court's subject mater jurisdiction to
> confirm the award.

358 F.3d at 1292 (emphasis and some brackets in original). *See also Polytek*

*Engineering Co. v. Jacobson Cos.*, 984 F. Supp. 1238, 1240 (D. Minn. 1997)

("The Convention compels a court to conduct the following limited, four-part

inquiry *when deciding whether to confirm an award*: 1. *Is there an agreement in*

*writing to arbitrate the subject of the dispute*?") (emphasis added); *Al Haddad*

*Bros. Enters., Inc. v. M/S AGAPI*, 635 F. Supp. 205, 209 (D. Del. 1986)

(Production of a written agreement to arbitrate is necessary in a confirmation action "to prove the existence of an agreement to arbitrate."), *aff'd*, 813 F.2d 396 (3d Cir. 1987).[8]

None of the cases cited by Sarhank below, or cited by the District Court on this issue, supports a limitation of the *Kahn Lucas* holding solely to actions to compel arbitration. In particular, *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, 198 F.3d 88, 96 (2d Cir. 1999) ("*Smith/Enron*"), like *Kahn Lucas*, was rendered on a motion to compel arbitration. *Id.* at 90. Moreover, the parties' jurisdictional arguments in *Smith/Enron* – which involved whether or not the nations at issue had signed the Convention and whether a proposed "center of gravity test" was appropriate to resolve the issue – were completely different from Oracle's jurisdictional

---

[8] The lower court opinion in *Czarina*, decided just one month after the District Court issued its original opinion in this case, likewise correctly rejected the erroneous conclusion that a written agreement to arbitrate is a jurisdictional prerequisite only for an Article II action to compel arbitration and not for an Article IV action to confirm an award:

> Czarina asserts that the existence of the arbitration award moots, for purposes of jurisdictional [sic], the need for an "agreement in writing" recognized in Article II of the Convention. However, the plain language of Article IV of the Convention, which requires, as a prerequisite to confirmation, presentation of "the original agreement referred to in article II" (i.e., the "agreement in writing") refutes Czarina's position.

*Czarina*, 254 F. Supp. 2d at 1236, n. 15.

argument here, which arises from the text of the Convention and formed the basis

for the court's decision in *Kahn Lucas*. *Id.* at 92-93. Similarly, in *Europcar Italia,*

*S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 312-13 (2d Cir. 1998), unlike in this

case, the parties had entered into at least two arbitration agreements, and the award

in question subsequently was confirmed by an Italian court before the matter was

raised in the Eastern District of New York. Finally, in *International Standard*

*Electric Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial*,

745 F. Supp. 172, 178 (S.D.N.Y. 1990), again unlike this case, the parties

apparently "concede[d] . . . that this Court has jurisdiction under the Convention."

That court also did not address whether a signed writing was required.

　　　　Indeed, the District Court's limitation of the written agreement

requirement to actions to compel arbitration makes very little common sense. The

drafters' intent, repeatedly evidenced in the Convention, is to effectuate a party's

*voluntary agreement* to submit a dispute to arbitration. There is no reason to

believe that the drafters would have required any less proof of the existence of

such a voluntary agreement when confirming a foreign award than when

compelling the arbitration itself. Unfaithful adherence to the "agreement in

writing" requirement invites consequences not contemplated by the Convention's

drafters or by Congress, including subjecting non-signatories to being unfairly

haled into arbitral proceedings, frequently in distant forums, because a court

believes that arbitration is either necessary or prudent or appropriate under local

law.

Accordingly, despite the District Court's erroneous conclusion to the

contrary, the existence of a written agreement to arbitrate signed by Oracle was a

jurisdictional prerequisite to the Petition to confirm the Egyptian Award. As

Sarhank never disputed that no such agreement signed by Oracle ever existed, the

Petition should have been dismissed as a matter of law.

## B.   The District Court Erred In Failing To Independently Determine Under American Law Whether Oracle Could Properly Be Bound To The Arbitration Agreement Contained In The Sarhank/Systems Contract

Any question that bears on the jurisdictional limits of an United States

federal court is necessarily one to be decided under the law of the United States.

*Smith/Enron*, 198 F.3d at 96 ("When we exercise jurisdiction under Chapter Two

of the FAA [the Convention and its implementing legislation], we have

compelling reasons to apply federal law . . . ."); *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("*Mitsubishi*") (In determining

matters of arbitrability under the Arbitration Act, of which the Convention is a

part, courts will apply the "'federal substantive law of arbitrability, applicable to

any arbitration agreement within the coverage of the Act.'" (quoting *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))).

27

In fact, Article III of the Convention specifically provides for the

application of forum law to procedural questions in confirmation actions:

> Each Contracting State shall . . . enforce [arbitral awards] *in accordance with the rules of procedure of the territory where the award is relied upon* . . . .

Convention, Article III (emphasis added). There is of course no more fundamental

procedural question in this case than whether this Court has jurisdiction under §§

202 and 203.

Accordingly, in determining whether this case meets the jurisdictional

requirements of §§ 202 and 203 – including the existence of a "legal relationship"

between Oracle and Sarhank, and of a written agreement by Oracle to arbitrate

with Sarhank – the District Court was required to apply the law of the United

States to the facts before it and independently determine whether those facts

satisfied the jurisdictional prerequisites to confirmation under the law of the

United States. In fact, however, the District Court not only failed to conduct an

independent analysis of this issue under *American* law, it failed to conduct any

independent analysis of this issue whatsoever. Instead, it deferred to the

conclusions of the Egyptian arbitrators, who had applied supposed general

principles of "international law" to justify the exercise of jurisdiction by the

tribunal over Oracle despite the fact that Oracle had never expressly or implicitly

28

agreed to arbitration with Sarhank. That deference constituted error as a matter of law.

1.  The District Court Erred In Concluding That It Was Bound
    By The Egyptian Panel's Determination of Arbitrability

The question of whether a district court may or must defer to a foreign arbitration panel's conclusion that the parties before it had agreed to arbitrate their dispute has been addressed most recently by the Third and Eleventh Circuits. In both instances, the Courts of Appeal have held that the district court may not defer to the arbitrator's determination of arbitrability, including any determination by the arbitrators of a dispute as to the validity of a purported agreement to arbitrate. Rather, where there is question as to whether the parties entered into a valid and binding agreement to arbitrate, the district court is required to conduct an independent analysis of that issue, and may not simply defer to the decision of the arbitrators that the matter before them was properly arbitrable.

In *China Minmetals Materials Import & Export Co., v. Chi Mei Corporation*, 334 F.3d 274 (3d Cir. 2003) ("*China Minmetals*"), the district court had confirmed an arbitration award under the Convention despite the fact that the party opposing enforcement, Chi Mei, claimed that the written agreement to arbitrate produced by its adversary, Minmetals, was a forgery. The foreign arbitration panel had held that Chi Mei had failed to meet its burden of proving that the agreement was forged. After concluding that the absence of a valid

29

agreement to arbitrate would constitute a valid defense to enforcement of the

award under Article V of the Convention,[9] the Third Circuit held that the district

court was required to conduct an independent review of Chi Mei's claims of

forgery:

> a party that opposes enforcement of a foreign arbitration award
> under the Convention on the grounds that the alleged
> agreement containing the arbitration clause on which the
> arbitral panel rested its jurisdiction was void *ab initio* is
> entitled to present evidence of such invalidity to the district
> court, *which must make an independent determination of the
> agreement's validity and therefore of the arbitrability of the
> dispute.*

334 F.3d at 289 (emphasis added).

The Third Circuit holding in *China Minmetals* was cited and relied on by

the Eleventh Circuit in *Czarina*, which also held that a district court may not

simply defer to the foreign arbitration panel's determination on the issue of

arbitrability. In *Czarina*, the party seeking enforcement, Czarina, had produced

"sample wording" incorporating an agreement to arbitrate, and argued that the

---

[9] Chi Mei had apparently argued the absence of a valid agreement to arbitrate as an
affirmative defense to enforcement under Article V of the Convention, rather than
challenging the subject matter jurisdiction of the district court on the grounds that
the prerequisites of Article IV had not been met. Accordingly, neither the district
court nor the majority opinion in *China Minmetals* discusses whether the lack of a
valid agreement to arbitrate would have negated the existence of subject matter
jurisdiction under the Convention. The concurring opinion in the Third Circuit,
however, notes that if the claims of forgery were proved, Minmetals would have
failed to meet its burden of establishing the Article IV jurisdictional prerequisite
of a written agreement to arbitrate. 334 F.3d at 293-94 (Alito, C.J., concurring).

party opposing enforcement had agreed to that wording. 358 F.3d at 1293. The

foreign arbitration panel found that the opposing party had, in fact agreed to the

sample language, and that it had therefore agreed to submit its dispute to

arbitration. The district court, however, had conducted its own evidentiary

hearing and determined that Czarina had failed to establish that its adversaries had

agreed to the sample wording, and that, as a result, Czarina had failed to meet its

burden of establishing the existence of a written agreement to arbitrate necessary

for the exercise of federal subject matter jurisdiction under the Convention. *Id.*

On appeal, the Eleventh Circuit rejected Czarina's claim that the district

court was bound to follow the factual findings of the foreign arbitration panel.

The court held that binding the district court to the arbitrators' determination of

arbitrability "would eviscerate an important principle of United States and

international arbitration law." 358 F.3d at 1293. Instead, citing *China Minmetals*,

the court held that "a court asked to confirm an award should review an arbitration

panel's conclusion that the parties agreed to arbitrate, unless the parties have

agreed to submit this question to the arbitration panel." *Id.* The court further held

that the independent review of this issue by the district court is necessary "because

arbitration is a creature of contract, and thus the powers of an arbitrator extend

only as far as the parties have agreed they will extend." *Id.*

31

The holdings of the Third Circuit in *China Minmetals* and the Eleventh

Circuit in *Czarina* merely echo, in the context of an action to confirm a foreign

arbitration award, the longstanding principle under the law of the United States

that the question of arbitrability is generally reserved to the courts. As the United

States Supreme Court declared forcefully in *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 938 (1995) ("*First Options*"): "the arbitrability of the

merits of a dispute depends upon whether the parties agreed to arbitrate that

dispute." The Court further held that this basic bedrock requirement of agreement

is so integral to the question of arbitrability that courts may not lightly find that a

party has agreed to forego his or her right to have a court hear the dispute:

"Courts should not assume that the parties agreed to arbitrate arbitrability unless

there is 'clea[r] and unmistakeabl[e]' evidence that they did so." *Id.* at 944

(alterations in original) (quoting *AT&T Techs., Inc. v. Communications Workers of*

*Am.*, 475 U.S. 643, 649 (1986)). *See China Minmetals*, 334 F.3d at 289 (holding

that the rationale of *First Options* "is a crucial principle of arbitration generally,

including in the international context.").

Indeed, this Court has specifically held that the precise question

determined by the Egyptian panel here – whether a non-signatory may be bound to

a written agreement to arbitrate – may not be determined by arbitrators, but is,

instead, specifically reserved to the courts. *Orion Shipping & Trading Co. v. E.*

32

*States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963)

*("Orion Shipping")* ("A decision whether parties other than those formally

signatories to an arbitration clause may have their rights and obligations

determined by an arbitrator . . . is not within the province of the arbitrator himself

but only of the court."). Strangely, although this directly on-point precedent was

cited and discussed by Oracle in its briefs below, it is not even mentioned in the

District Court's Opinion.

In direct contravention of this longstanding rule of law, the District

Court conducted no independent analysis whatsoever of whether Oracle could

properly be bound to Systems' agreement to arbitrate disputes with Sarhank.

Rather, it erroneously concluded that the Egyptian panel's decision to extend the

arbitration provision of the Sarhank/Systems Contract to non-signatory Oracle

constituted a "construction of the Agreement or . . . conclusion[] of law regarding

the Agreement" to which the District Court was bound. A-249. That erroneous

conclusion is directly contrary to *Orion Shipping, First Options, China Minmetals*

and *Czarina* and requires reversal as a matter of law.

> 2.  An Independent Analysis By The District Court Would
>     Have Disclosed That Sarhank Failed to Meet Its Burden Of
>     Establishing The Existence of Subject Matter Jurisdiction

As the party seeking confirmation, Sarhank bore the burden of proof

with respect to the invocation of subject matter jurisdiction. *Czarina*, 358 F.3d at

33

1293, n.3 ("the burden of establishing the jurisdictional prerequisites resets on the proponent of the award"); *China Minmetals,* 334 F.3d at 293-94 (Alito, C.J., concurring) ("Because the District Court ordered the award enforced without *requiring Minmetals to make [the] showing* [of the existence of a valid agreement to arbitrate], its decision must be vacated.") (emphasis added); *Lo v. Aetna Int'l, Inc.,* No. 3:99CV195 JBA, 2000 WL 565465, at *3 (D. Conn. Mar. 29, 2000) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 182-83 (1936)); *In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.,* 978 F. Supp. 266, 274 (S.D. Tex. 1997) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376-78 (1994)), *aff'd,* 161 F.3d 314 (5th Cir. 1998).[10] Nonetheless, in the court below, Sarhank made absolutely no attempt to establish any fact that might entitle it to transform its legal relationship or written agreement with Systems into a legal relationship or written agreement with Oracle. It did not argue, for example, that it believed it was contracting with Oracle as

---

[10] This Court's decision in *Compagnie Noga D'Importation Et D'Exportation S.A. v. The Russian Federation,* 361 F.3d 676, 683 (2d Cir. 2004), and particularly its holding that the party seeking to bar enforcement of an arbitral award bears the burden of proving that a purported agreement to arbitrate should not be honored, is not to the contrary. In that case, the non-signatory to the purported arbitration agreement did not challenge the jurisdiction of the district court; rather, it raised the lack of a written agreement to arbitrate only as an affirmative defense to enforcement under the Convention. 361 F.3d at 682. Of course, it is axiomatic that a party seeking to invoke the jurisdiction of a federal court bears the burden of proving the existence of subject matter jurisdiction which, in this case, includes the burden of proving the existence of a valid, enforceable and applicable written agreement to arbitrate.

opposed to Systems, or that Oracle and Systems ignored the corporate forms, or

that Systems was dominated and controlled by Oracle, or any of the other factors

necessary before a court will ignore the separate corporate existence of a parent

company and its subsidiary. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64

F.3d 773, 777 (2d Cir. 1995) ("*Thomson-CSF*") (courts generally will pierce

corporate veil only to prevent fraud or where a parent dominates and controls a

subsidiary).

  In fact, the decision of the District Court did not even suggest that

American law would find a "legal relationship" between non-signatories to an

agreement to arbitrate simply because one of the non-signatories is a separate, but

related corporate entity of one of the signatories to the agreement. Instead, it

deferred to the Egyptian panel's determination on that issue, holding that

"arbitrability has already been established under the laws of Egypt." A-246.

  The District Court's decision misses the point. The question is not

whether Egyptian law or "international law" would bind Oracle to the Systems

agreement with Sarhank, but whether there was any "legal relationship" between

Oracle and Sarhank under American law that may be recognized by an American

court as a basis for jurisdiction over the Egyptian Award under §§ 202 and 203.

The answer to that question is an unequivocal "no."

This Court, in *Thomson-CSF*, held that a parent company will *not* be bound by its subsidiary's agreement to arbitrate based on the nebulous principles of corporate interrelations which formed the basis of the Egyptian Award. Reversing the lower court in that case, which had held that the parent company was bound by its subsidiary's agreement to arbitrate, this Court held that "[a] nonsignatory may not be bound to arbitrate except as dictated by some accepted theory under agency or contract law." 64 F.3d at 780. The Court further held that such a full showing is necessary to protect the legitimate interests of a vast number of parent corporations in this nation:

> The district court's hybrid approach dilutes the safeguards afforded to a nonsignatory by the "ordinary principles of contract and agency" and fails to adequately protect parent companies, the subsidiaries of which have entered into arbitration agreements. Anything short of requiring a *full* showing of some accepted theory under agency or contract law imperils a vast number of parent corporations.

*Id.* (emphasis in original).

Contrary to the District Court's misconception, Oracle does not seek to "preclude federal enforcement of arbitral awards based upon an agency rationale." A-246--A-247. Rather, it simply recognizes that, because the question of whether a party may be deemed to have agreed to arbitration is a fundamental prerequisite to federal jurisdiction, it must be decided under the law of the United States, not that of the forum in which the award was entered. Where the parties' relationship is such that a court would find an agreement to arbitrate based on an agency

36

rationale under American law, then an American court has the jurisdiction to confirm the award under the Convention. Where, however, the parties' relationship does not meet those standards, then the decision of a foreign arbitrator applying foreign law cannot "cure" the federal court's lack of jurisdiction.

Accordingly, the District Court erred as a matter of law in concluding that the Egyptian arbitrators' determinations resolved the question of whether the District Court could exercise subject matter jurisdiction with respect to the Petition. Rather, the independent review that the Court was required to conduct under the law of the United States clearly would not have permitted the exercise of federal subject matter jurisdiction in this case. Oracle therefore respectfully submits that the Amended Judgment should be reversed, and that this Court should direct that the Petition be dismissed for lack of subject matter jurisdiction.

## POINT III

### THE DISTRICT COURT SHOULD HAVE DECLINED AS A MATTER OF LAW TO CONFIRM THE EGYPTIAN AWARD BASED ON THE DEFENSES TO ENFORCEMENT SET FORTH IN ARTICLE V OF THE CONVENTION

Even if the District Court had subject matter jurisdiction over the Petition – which, as shown above, it did not – it should have declined to confirm the Egyptian Award based on the defenses under Article V(2)(a) and (b) of the Convention. Article V(2)(a) provides that recognition and enforcement of a foreign arbitral award may be refused where "[t]he subject matter of the difference

is not capable of settlement by arbitration under the law of [the country in which

enforcement is sought]," while Article V(2)(b) provides that enforcement may be

refused where "[t]he recognition or enforcement of the award would be contrary to

the public policy of that country." Under the law of the United States, the

question of arbitrability decided by the Egyptian arbitrators was not arbitrable, and

subjecting Oracle to arbitration absent its voluntary consent to such a procedure

violated the policy continually announced and confirmed by the Supreme Court of

the United States that arbitration must be a voluntary choice. Either one of the

Article V(2) defenses, therefore, should have led the District Court to decline

enforcement of the Egyptian Award, and to dismiss the Petition.

Instead, the District Court once again deferred to the decision of the

Egyptian arbitrators, holding that they were entitled to determine whether they had

the authority and jurisdiction to subject Oracle to arbitration. In so holding, it

casually dismissed Oracle's insistence that the question of arbitrability is one to be

decided by an American court under American law as a mere "quibble." A-256.

Oracle's Article V defense, however, is no mere "quibble." Rather, it is a defense

expressly provided by the Convention *and expressly required by the Convention*

*to be determined under the law of the forum where confirmation is sought.* The

Convention itself mandated that the District Court determine whether the scope of

the arbitrators' authority was a matter that was "properly arbitrable" *under the law*

*of the United States.* Because it was not, the Amended Judgment should be reversed.

**A.**   **Because Oracle Never Clearly And Expressly Agreed To Cede The Question Of Arbitrability To The Egyptian Arbitrators, That Question Was Not Properly Arbitrable Under The Law Of The United States**

Under the law of this country the *sine qua non* of arbitrability is a finding that the parties have agreed to submit their dispute to arbitration. Absent an express agreement to arbitrate, American law reserves civil disputes – and, in particular, the question of the scope of arbitrators' authority – to the judiciary. *First Options*, 514 U.S. at 938 (1995). As already noted, the Third Circuit in *China Minmetals* and the Eleventh Circuit in *Czarina* correctly held that that bedrock principle of arbitration law is no less applicable in a proceeding under the Convention to enforce a foreign arbitral award than it is in an action dealing with a domestic arbitration award or agreement.

Indeed, even the cases cited below by Sarhank do not support the result reached by the District Court. For example, in *Smith/Enron*, the Court held that if there has been no agreement to arbitrate properly applicable to the party to be charged, then the dispute *is not arbitrable*: "In considering whether 'a particular dispute is arbitrable,' a court must first decide 'whether the parties agreed to arbitrate.'" 198 F.3d at 95 (citation omitted). Similarly, the United States Supreme Court in *Mitsubishi* – which Sarhank cited for the proposition that "the trend is to

restrict even further the [Article V(2)(a)] defense" – confirms again the basic tenet

that a party may not be required to arbitrate that which it did not voluntarily agree

to arbitrate: "[T]he first task of a court asked to compel arbitration of a dispute is

to determine whether the parties agreed to arbitrate that dispute." 473 U.S. at 626.

The *Mitsubishi* Court "restricted" the Article V(2)(a) defense, to use Sarhank's

term, only by recognizing that parties may be required under the Convention to

arbitrate statutory claims such as antitrust claims *when they have voluntarily*

*agreed to do so*. *Id*. at 625-26.

Sarhank also incorrectly relied on *Parsons & Whittemore Overseas Co.*

*v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969 (2d Cir.

1974) ("*Parsons*"), for the proposition that arbitrability means something different

in an international context than in the context of a domestic arbitration. In fact,

this Court in *Parsons* expressly stated that it found it unnecessary to reach that

question: "Resolution of Overseas' non-arbitrability argument . . . does not

require us to reach such difficult distinctions between domestic and foreign

awards." 508 F.2d at 975.

Indeed, even Sarhank conceded below that *First Options* states the

"general rule under United States law" that the extent of an arbitrator's jurisdiction

may not be determined by the arbitrator himself or herself. Nonetheless, it then

attempted to evade that "general rule" in two equally unsuccessful ways. First,

Sarhank argued (and the District Court erroneously concluded) that, under

Egyptian law, the arbitrators were empowered to determine the extent of their own

jurisdiction. As discussed above, that argument is a *non sequitur*: the Convention

expressly provides that the question of arbitrability under Article V(2)(a) is to be

decided under *American* law, not Egyptian law.

Second, Sarhank noted that the Supreme Court in *First Options* held that

parties may voluntarily cede to the arbitrators the question of arbitrability, and

argued that Oracle had done so in this case by arguing jurisdictional questions to

the arbitrators. That argument is *directly* rejected by *First Options*, in which the

United States Supreme Court held that: (1) a party arguing that his or her

opponent agreed to allow the arbitrators to decide the limits of their own

jurisdiction bears the burden of showing that agreement by "clear and

unmistakable" evidence, 514 U.S. at 944; and (2) that burden is *not* met simply by

showing that the opponent asked the arbitrators to rule that they lacked jurisdiction

over the arbitration, *id.* at 946.

As the Supreme Court held in *First Options*, when faced with the

*identical* argument raised by Sarhank: *"[M]erely arguing the arbitrability issue to*

*an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a*

*willingness to be effectively bound by the arbitrator's decision on that point."* 514

U.S. at 946 (emphasis added). In this case, there is no dispute that Oracle

41

vigorously challenged the arbitration tribunal's jurisdiction. Under *First Options*,
a party such as Oracle that asserts that an arbitrator lacks jurisdiction over the
dispute will not be deemed to have consented to that jurisdiction simply because it
asked the arbitrator to decline to hear the case. *See also Czarina*, 358 F.3d at 1294
(refusing to find consent to arbitrate arbitrability where opposing party "objected
early and often, consistently maintaining that it had never agreed to arbitrate this
dispute"); *China Minmetals*, 334 F.3d at 291 (refusing to find consent to arbitrate
arbitrability where opposing party "consistently objected to the arbitral panel's
jurisdiction both in the arbitration proceedings and before the district court.")

Indeed, the holding in *First Options* is a matter of logistical necessity,
because a party that *fails* to raise its jurisdictional arguments with the arbitrator
may be held to have waived those arguments. *See La Societe Nationale Pour La
Recherche, La Production, Le Transport, La Transformation et la
Commercialisation Des Hydrocarbures v. Shaheen Natural Resources Co.*, 585 F.
Supp. 57, 62 (S.D.N.Y. 1983) ("Defendant had an affirmative obligation to raise
'any arguments why the arbitration should not proceed' to the panel, including that
it is not a party to the agreement and is not bound by the arbitration provision."
(citations omitted)), *aff'd*, 733 F.2d 260 (2d Cir. 1984).

Finally, denying confirmation of the Egyptian Award effectuates the very
purpose of the Article V(2)(a) defense. Clearly, the function of that defense is to

ensure that the Convention gives a party no *greater* right to arbitrate than would be afforded in a purely domestic matter. Sarhank is not entitled to enforce in this forum an award that, as a matter of federal arbitration law, it could not have sought here in the first place.

Here, the fundamental linchpin of arbitrability – the consent of the parties to remove a dispute from the exclusive province of the judiciary – is not present. *See Parsons*, 508 F.2d at 974-75 (holding that the Article V(2)(a) defense is applicable where the arbitration decided claims exclusively reserved to the judiciary). The dispute therefore was "not capable of settlement by arbitration" under American law, and the District Court should have declined to confirm the award under Article V(2)(a) of the Convention.

**B.**    **The District Court Should Have Declined To Enforce The Egyptian Award On The Ground That It Violates The Strong Public Policy That Arbitration Be A Voluntary Choice**

The District Court also should have refused to confirm the Egyptian Award based on Article V(2)(b) of the Convention, because the Egyptian Award violates the strong public policy in this country that arbitration must be a voluntary choice. In *First Options*, the United States Supreme Court not only reaffirmed that strong public policy, but further held that the requirement of voluntariness overcomes any conflicting general policy favoring arbitration:

> [T]here is no strong arbitration-related policy favoring First Options in respect to its particular argument here. After all, the basic objective in this area is not to resolve disputes in the

43

> quickest manner possible, no matter what the parties' wishes,
> but to ensure that commercial arbitration agreements, like other
> contracts, "'are enforced according to their terms,'" and
> according to the intentions of the parties. That policy favors
> the [party seeking to vacate the award], not [the party seeking
> to enforce it].

514 U.S. at 947 (citations omitted); *see also Thomson-CSF*, 64 F.3d at 776, 780

(public policy of voluntariness precludes holding parent company to subsidiary's

agreement to arbitrate absent specific showing of recognized grounds for ignoring

corporate form).

Once again this strong policy is echoed in the very cases relied on by

Sarhank below, and cited by the District Court. For example, the District Court

Opinion repeatedly cites *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d

310 (2d Cir. 1998) ("*Europcar*"), in which this Court held that even if the

arbitrators rested their decision on a forged *underlying* agreement it would still not

violate public policy. However, this Court in *Europcar* expressly noted that there

was no dispute in that case as to whether there was a valid agreement *to arbitrate*.

156 F.3d at 315. Even more importantly, this Court held that *had there been any*

*question about the validity of the agreement to arbitrate* as opposed to questions

about the validity of the underlying commercial agreement itself, *such a dispute*

*could have created a public policy bar to enforcement of the award*:

> Maiellano [the party seeking to avoid enforcement] has
> apparently confused the issue of a fraudulently obtained
> arbitration agreement or award, *which might violate public*
> *policy and therefore preclude enforcement*, with the issue of

> whether the underlying contract that is the subject of the
> arbitrated dispute was forged or fraudulently induced . . . .

*Id.* (emphasis added) (citations omitted).[11]

Confirmation of the Egyptian Award here would violate the strong

public policy, enunciated in *First Options* and reflected in *Thomson-CSF* and

*Europcar*, that arbitration must be a voluntary choice.  Accordingly, the District

Court should have declined to confirm the Egyptian Award pursuant to Article

V(2)(b) of the Convention.  Oracle therefore respectfully submits that the

Amended Judgment should be reversed, and the District Court should be directed

to dismiss the Petition.

.

---

[11] *Parsons*, the only other case cited by Sarhank below on this issue, is even less
applicable.  In *Parsons*, there was no dispute that both parties had entered into a
valid agreement to arbitrate disputes between them.  508 F.2d at 972.  The only
"public policy" argument raised in that case was the non-performing party's
assertion that it had been forced to renege on its underlying performance based
largely on the political climate of the day, including the severing of American and
Egyptian relations in the wake of the Six Day War.  *Id.* at 974.

## CONCLUSION

For all the foregoing reasons and the authorities cited in their support, the Amended Judgment should be reversed, and the District Court should be directed to enter an order dismissing the Petition in all respects.

Dated:      New York, New York
           July 19, 2004

Respectfully submitted,

DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP

By: _____
ROBIN L. COHEN (RC-0815)
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400

*Attorneys for Oracle Corporation*

Elizabeth A. Sherwin
Jeremy King
*Of Counsel*

46

RESPONDENT-APPELLANT ORACLE CORPORATION'S
RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

I, JEREMY M. KING, attorney for the Respondent-Appellant Oracle

Corporation do hereby certify that this brief conforms to the type-volume, type

style and typeface limitations imposed by Fed. R. App. P. 32. In particular, this

brief complies with the type-volume limitations because it contains 11,746 words

excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This

brief complies with the type style and typeface requirements because this brief has

been prepared in a proportionally spaced typeface using Microsoft Word XP in

Times New-Roman 14 point font.

Jeremy M. King

Attorney for Oracle Corporation

Dated: July 19, 2004

# ADDENDUM

# Convention on the Recognition and Enforcement of Foreign Arbitral Awards

*(New York, 10 June 1958)*

## Article I

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

2. The term "arbitral awards" shall include not only awards made by arbitrators appointed for each case but also those made by permanent arbitral bodies to which the parties have submitted.

3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration.

## Article II

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

## Article III

Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

## Article IV

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy thereof.

2. If the said award or agreement is not made in an official language of the country in which the award is relied upon, the party applying for recognition and enforcement of the award shall produce a translation of these documents into such language. The translation shall be certified by an official or sworn translator or by a diplomatic or consular agent.

## Article V

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the

decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

## Article VI

If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

## Article VII

1. The provisions of the present Convention shall not affect the validity of multilateral or bilateral agreements concerning the recognition and enforcement of arbitral awards entered into by the Contracting States nor deprive an interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.

2. The Geneva Protocol on Arbitration Clauses of 1923 and the Geneva Convention on the Execution of Foreign Arbitral Awards of 1927 shall cease to have effect between Contracting States on their becoming bound and to the extent that they become bound, by this Convention.

## Article VIII

1. This Convention shall be open until 31 December 1958 for signature on behalf of any Member of the United Nations and also on behalf of any other State which is or hereafter becomes a member of any specialized agency of the United Nations, or which is or hereafter becomes a party to the Statute of the International Court of Justice, or any other State to which an invitation has been addressed by the General Assembly of the United Nations.

2. This Convention shall be ratified and the instrument of ratification shall be deposited with the Secretary-General of the United Nations.

## Article IX

1. This Convention shall be open for accession to all States referred to in article VIII.

2. Accession shall be effected by the deposit of an instrument of accession with the Secretary-General of the United Nations.

## Article X

1. Any State may, at the time of signature, ratification or accession, declare that this Convention shall extend to all or any of the territories for the international relations of which it is responsible. Such a declaration shall take effect when the Convention enters into force for the State concerned.

2. At any time thereafter any such extension shall be made by notification addressed to the Secretary-General of the United Nations and shall take effect as from the ninetieth day after the day of receipt by the Secretary-General of the United Nations of this notification, or as from the date of entry into force of the Convention for the State concerned, whichever is the later.

3. With respect to those territories to which this Convention is not extended at the time of signature, ratification or accession, each State concerned shall consider the possibility of taking the necessary steps in order to extend the application of this Convention to such territories, subject, where necessary for constitutional reasons, to the consent of the Governments of such territories.

## Article XI

In the case of a federal or non-unitary State, the following provisions shall apply:

(a) With respect to those articles of this Convention that come within the legislative jurisdiction of the federal authority, the obligations of the federal

Government shall to this extent be the same as those of Contracting States which are not federal States;

(b) With respect to those articles of this Convention that come within the legislative jurisdiction of constituent states or provinces which are not, under the constitutional system of the federation, bound to take legislative action, the federal Government shall bring such articles with a favourable recommendation to the notice of the appropriate authorities of constituent states or provinces at the earliest possible moment;

(c) A federal State Party to this Convention shall, at the request of any other Contracting State transmitted through the Secretary-General of the United Nations, supply a statement of the law and practice of the federation and its constituent units in regard to any particular provision of this Convention, showing the extent to which effect has been given to that provision by legislative or other action.

## Article XII

l. This Convention shall come into force on the ninetieth day following the date of deposit of the third instrument of ratification or accession.

2. For each State ratifying or acceding to this Convention after the deposit of the third instrument of ratification or accession, this Convention shall enter into force on the ninetieth day after deposit by such State of its instrument of ratification or accession.

## Article XIII

l. Any Contracting State may denounce this Convention by a written notification to the Secretary-General of the United Nations. Denunciation shall take effect one year after the date of receipt of the notification by the Secretary-General.

2. Any State which has made a declaration or notification under article X may, at any time thereafter, by notification to the Secretary-General of the United Nations, declare that this Convention shall cease to extend to the territory concerned one year after the date of the receipt of the notification by the Secretary-General.

3. This Convention shall continue to be applicable to arbitral awards in respect of which recognition or enforcement proceedings have been instituted before the denunciation takes effect.

## Article XIV

A Contracting State shall not be entitled to avail itself of the present Convention against other Contracting States except to the extent that it is itself bound to apply the Convention.

## Article XV

The Secretary-General of the United Nations shall notify the States contemplated in article VIII of the following:

(a) Signatures and ratifications in accordance with article VIII;

(b) Accessions in accordance with article IX;

(c) Declarations and notifications under articles I, X and XI;

(d) The date upon which this Convention enters into force in accordance with article XII;

(e) Denunciations and notifications in accordance with article XIII.

## Article XVI

l. This Convention, of which the Chinese, English, French, Russian and Spanish texts shall be equally authentic, shall be deposited in the archives of the United Nations.

2. The Secretary-General of the United Nations shall transmit a certified copy of this Convention to the States contemplated in article VIII.

Reprinted at 9 U.S.C.A. 201.