# EXHIBIT J

Dockets.Justia.com

1    BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
2    GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
3    ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
4    Three Embarcadero Center
San Francisco, CA 94111-4067
5    Telephone: (415) 393-2000
Facsimile: (415) 393-2286
6    donn.pickett@bingham.com
geoff.howard@bingham.com
7    holly.house@bingham.com
zachary.alinder@bingham.com
8    bree.hann@bingham.com

9    DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
10   500 Oracle Parkway
M/S 5op7
11   Redwood City, CA 94070
Telephone: (650) 506-4846
12   Facsimile: (650) 506-7114
dorian.daley@oracle.com
13   jennifer.gloss@oracle.com
14

15   Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International
16   Corporation, Oracle EMEA Limited, and Siebel
Systems, Inc.

17

UNITED STATES DISTRICT COURT

18

NORTHERN DISTRICT OF CALIFORNIA

19

OAKLAND DIVISION

20

| | |
|---|---|
| 21    ORACLE USA, INC., *et. al*, | Case No. 07-CV-1658 (PJH) EDL |
| 22        Plaintiffs, | **PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES** |
| 23        v. | |
| 24    SAP AG, *et al.*, | Date: n/a |
|        Defendants. | Time: n/a |
| 25 | Judge: The Honorable Phyllis J. Hamilton |
| | Courtroom: TBD |
| 26 | **CONTAINS INFORMATION** |
| 27 | **DESIGNATED HIGHLY CONFIDENTIAL PURSUANT TO** |
| 28 | **PROTECTIVE ORDER** |

A/73187211.1

Case No. 07-CV-1658 (PJH) EDL

PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1    Discovery and Oracle's investigation are ongoing. If, as the case develops,

2    Oracle identifies additional documents or categories of documents that support its position, it

3    will identify them in supplemental disclosures as required under Fed. R. Civ. P. 26(e).

4    **III.    COMPUTATION OF DAMAGES**[1]

5    In connection with its Fourth Amended Complaint, Oracle seeks damages against

6    Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively referred to as

7    "Defendants") resulting from Defendants' reproduction, distribution, public display, and

8    preparation of derivative works from copyrighted Oracle works, including its software, Software

9    and Support Materials ("SSMs"), software containing SSMs or other copyrighted works,

10   fraudulent access to, theft of, and further misuse of Oracle's underlying software applications as

11   well as SSMs and non-copyrightable support materials, as well as related unfair business

12   practices, interference with Oracle's business relationships, breaches of contract, and unjust

13   enrichment at the expense of Oracle. Based on Oracle's investigation to date, Defendants'

14   actions have resulted in the following categories of harm:

15   - Lost, diminished, or delayed current and prospective customer revenues and
16     profits, including as they relate to support and maintenance and software
17     applications licensing;

18   - Harmed current and prospective customer relationships, even where they did
19     not result in a loss of a customer support contract or software licensing;

20   - Devaluation of Oracle's intellectual property and other intangible assets and
21     Oracle's investment in the development and/or purchase of the same,
22     including downward pressure on the value of licenses for, harm to the
23     confidential nature of, minimized competitive advantages regarding,
24     destruction of Oracle's exclusive exploitation of and remuneration of, and the
25     denial of Oracle's licensing rights and revenues regarding the same;

26

27   _____
     [1] Oracle also seeks injunctive relief.

28

1    • Loss of goodwill, including reputational harm and costs associated with
2       addressing Defendants' illegal conduct;
3    • Harm to Oracle's overall market cap;
4    • Harm and impairment to Oracle's customer support websites and underlying
5       customer support data, including impaired access to the same by Oracle and
6       its legitimate customers, harm to Oracle's control of and the ability to use the
7       same by Oracle and its customers for the purposes for which they were
8       intended, including to improve Oracle's customer support processes, and harm
9       to the functionality of these systems; and,
10   • Costs associated with investigating, mitigating (including for example
11      lowered prices, time and effort to retain customers, or to address reputational
12      harm) and litigating against all these activities.
13   • The host of other damages attested to by Oracle witnesses, including, e.g.,
14      Juergen Rottler, such as the abandonment of existing PeopleSoft customer
15      contract step-up renewal price escalations, the early adoption and generous
16      terms of Oracle's Lifetime Support and Applications Unlimited programs, and
17      additional spends on customer support enhancements.
18      Some of the above types of damage include elements that are irreparable in
19   nature.
20      Oracle is still in the process of gathering and culling down the evidence relevant
21   to its damages internally, from third parties (e.g., customers) and from Defendants. For instance,
22   the scope of Defendants' infringement and misuse of Oracle property is still being determined
23   because of the ongoing and late production of Data Warehouse and other voluminous technical
24   materials and Defendants' unwillingness to stipulate to exactly what they did. Defendants have
25   yet to provide requested evidence relevant to Siebel, Oracle's Database products, and other
26   Oracle applications – and indeed, have opposed such discovery. While the Parties agreed on a
27   case extension that allowed the inclusion of Siebel claims, Defendants opposed the inclusion of
28   Oracle's Database-related claims. The Court has now ruled that these claims should be included

PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1   in this case, leading to Oracle's Fourth Amended Complaint and the further supplementation

2   regarding Siebel and Database claims below.  Further, Oracle's ability to calculate its damages

3   obviously is hampered by not knowing the full scope of the unlawful conduct related to the

4   allegations in Oracle's Fourth Amended Complaint.  Defendants have not provided relevant

5   requested Safe Passage information or information about their valuation of IP acquired legally –

6   information that bears on the value of TN and of TN's IP-theft based business model to SAP,

7   which may be relevant to the fair market value of what SAP should have paid for a hypothetical

8   license.  Moreover, Defendants' use of the attorney/client privilege to shield the actions and

9   knowledge of SAP and its officers and directors continues to hamper assessment of punitive

10  damages.  Extensive meet and confers on these issues and other damages-related discovery are

11  ongoing and motions to compel may be required and/or are scheduled for briefing and hearing.

12  In addition, both sides are still responding to and even serving new discovery relevant to

13  damages.  Thus, there is ongoing relevant discovery that could and likely will affect assessing

14  and computing appropriate damages.

15          To complete their analysis and computations, Oracle's damages experts are

16  waiting for the additional factual material yet to be produced and analyzed; moreover, they have

17  not finalized their methodologies or computations of Oracle's damages.  In addition, legal

18  rulings (such as on Defendants' pending summary judgment motion on Oracle's fair market

19  value license measure of infringement damages and on Oracle's objections to Magistrate

20  Laporte's Rule 37 Order) may affect the final damages methodologies and computations.

21  Oracle's damages report and expert opinions will be provided in accordance with whatever

22  schedule is then in place in the action.  Thus, the following description does not constitute

23  Oracle's damages analysis or demand and does not in any way bind Oracle, but merely provides

24  Oracle's current understanding of the damages here.

25          Oracle has ten causes of action; some of the damages described overlap and

26  different plaintiffs bring different causes of action.  Oracle would not seek or be entitled to

27  duplicate recovery, though it will likely seek damages in the alternative.

28          A.      In connection with its Copyright Infringement cause of action, Oracle has

1   alternative measures of its damages available to it under the law.  Oracle reserves its right to

2   elect statutory damages for Defendants' infringement at the appropriate time, but currently does

3   not envision that it will do so.  Rather, it currently seeks from Defendants the value of the

4   copyrighted material Defendants infringed both through the fair market value of license(s) and,

5   in the alternative, through lost profits and/or infringers' profits analyses.

6           Oracle expects to seek to recover damages based on the fair market value

7   license(s) for the PeopleSoft, J.D. Edwards, Siebel, and Database applications and support

8   material infringement by Defendants.  The legal tests and the authorities in support are set out in

9   detail in Oracle's September 23, 2009 Opposition to Defendants' pending Motion for Partial

10  Summary Judgment Re Oracle's [Fair Market Value] Hypothetical License Damages Claims.  In

11  summary, the value of the PeopleSoft, J.D. Edwards, Siebel, and Database hypothetical licenses

12  are determined by the objective fair market value of the rights being licensed or received, as

13  evidenced by the circumstances at the time (*e.g.*, for Oracle – the fact that Oracle had just paid

14  significant amounts for the companies, the anticipated value to Oracle of the PeopleSoft, J.D.

15  Edwards, and Siebel acquisitions, Oracle's cross-sell and up-sell and service renewal history; for

16  Defendants – the fact that the acquisitions significantly increased Oracle's threat to SAP, the

17  anticipated value to SAP of the TN acquisition, the amount that would not have to be expended

18  by Defendants to legitimately create what they would instead license (which will also be the

19  subject of expert analysis and relied upon by Oracle's damages experts), SAP's cross-sell and

20  up-sell and service renewal history).  Based on the evidence to date, Oracle anticipates valuing

21  the hypothetical licenses in total in the billions of dollars.  While no formal computation has

22  been completed, it is being finalized.

23          Oracle's alternative lost profits and infringers' profits analyses for its copyright

24  infringement claims against Defendants are ongoing and incomplete.  The lost profits and

25  infringers' profits measurements overlap in part with the lost profits measurements stemming

26  from Oracle's alternative claims (described below).  The combined lost profits and infringers'

27  profits analyses currently will encompass all the lost profits associated with the parties' long

28  agreed upon list of support customers who left Oracle, PeopleSoft, J.D. Edwards, or Siebel for

PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1  SAP and TN, including lost license sales and other cross-sell and up-sell lost profits.  Based on

2  Defendants' representations – upon which Oracle is relying – and Oracle's review of the scant

3  evidence produced by Defendants concerning their infringement of Oracle's Database software,

4  Oracle is not currently aware of any additional lost customer-related Database license or support

5  revenue due to Defendants' infringement of Oracle's Database software or Defendants' use of

6  that software to support Oracle's Database customers or to transition those customers to

7  competing database products.  Accordingly, while Defendants infringed Oracle's Database

8  software to support the PeopleSoft, J.D. Edwards, and Siebel software customers referred to

9  above and below, Oracle does not currently expect to value any additional customer-specific lost

10  profits or infringers' profits (beyond those customers already lost due to the PeopleSoft, J.D.

11  Edwards, and Siebel infringement), though Oracle does expect to seek the fair market value of a

12  license from Defendants for their infringement of Oracle's Database products as described in

13  accordance with the fair market license value analysis described above.  Evidence relevant to

14  Oracle's lost profits/infringers' profits analyses is contained, for example, in Defendants'

15  multiple internal and external reports of the revenues taken away from Oracle by TN and by the

16  Safe Passage program and in requested productions from Defendants concerning gross revenues,

17  expenses, and margins associated with those programs and with the list of relevant customers, in

18  the voluminous customer contracts and related files produced by the parties, in the customer

19  financial reports that the parties have created and produced, in Oracle's At Risk reports and TN

20  win-back spreadsheets, and in the extensive documents on support renewal cancellations and

21  license wins and losses against SAP and TN.  Oracle will also be providing additional analysis

22  relied upon by its experts in conjunction with its damages expert report, including analysis of

23  the purchasing history of its PeopleSoft, J.D. Edwards, and Siebel customer base post-

24  acquisition.  Based on the evidence to date, Oracle anticipates that the lost revenues associated

25  with support losses and with lost cross-sell and up-sell opportunities as to the agreed upon list of

26  TomorrowNow customers exceed $150 million dollars.  Oracle's infringers' profits analysis

27  includes the profits on the revenues SAP and TN made from their copyright infringement,

28  including some or all of the approximately $40 million TN reported as revenues, and a portion of

PLAINTIFFS' THIRD SUPPLEMENTAL AND AMENDED INITIAL DISCLOSURES

1   the approximately $500 million in license revenue associated with SAP's leverage of TN and

2   Safe Passage in the sale of license applications. Further evidence in support of this aspect of

3   Oracle's damages is described in section E below and Defendants owe Oracle information to

4   analyze the same.

5         B.      Portions of Oracle's damages from Defendants' violations of the Federal

6   Computer Fraud and Abuse Act, of the Computer Data Access and Fraud Act, and in connection

7   with Defendants' Trespass to Chattels were testified to by Dr. Koehler in his Fed. R. Civ. Proc.

8   30(b)(6) deposition. He also provided a written outline of harm and damages to Oracle's

9   computer systems, databases, data, and network, Ex. 167, from which he testified. Oracle refers

10  Defendants to that testimony and the accompanying exhibits. Further, Defendants have set a

11  Rule 30(b)(6) deposition related to the harm to the Siebel computer systems and data for October

12  15, 2009, and Oracle refers Defendants to that testimony. Further, Defendants own extensive

13  records of their computer access and fraud, and their own deposition testimony related to these

14  issues confirms the damage to Oracle's computers, data, and systems. In addition, Defendants'

15  actions adversely impacted Oracle's goodwill and caused it to lose business. These damages

16  overlap in large measure with those described below related to Defendants' breach of contract

17  and interference with Oracle's prospective economic advantage; they are not bounded by

18  Defendants' infringement of copyrighted materials. While no formal computation has been

19  completed, it is being finalized. Any additional evidence in support (e.g., salary information

20  associated with members of the investigations team, the cost of the associated laptops) will be

21  provided in connection with Oracle's expert report or before. In addition, as allowed by statute

22  or law, Oracle will seek its tens of millions of dollars of associated attorneys' fees and other

23  litigation costs, as well as punitive damages, in an amount to be proved at trial.

24        C.      Oracle's damages from Defendants' breaches of contract overlap with its

25  lost profits analysis, described below. Moreover, the breach of contract damages are distinct

26  from Defendants' infringement of copyrighted materials, as described in Oracle's responses to

27  Defendants' Fifth Set of Interrogatories. While no formal computation has been completed, it is

28  being finalized.

D.     The harm from Oracle's interference claims overlaps in part with its alternative infringement lost profits analysis, described above, albeit with different plaintiffs. However, as described in detail in Oracle's responses to Defendants' Fifth Set of Interrogatories (and as highlighted in a number of the bullet points above), Defendants have interfered with Oracle's current or prospective customer relationships, in ways that do not solely involve copying, distribution, public display, or creation of a derivative work, causing further and additional lost profit damages and other types of harm like harm to goodwill and other reputational harm. While no formal computation has been completed, other than as built into the analysis above, it is being finalized. Because of the willfulness of Defendants' interference, including TN and SAP's knowledge of the illegality of TN's method of service delivery and their lengthy failure to correct and make legal that business delivery despite knowing of its existence from due diligence and continuing that illegal business model for over a year and a half after being sued by Oracle, Oracle will also be seeking significant punitive damages, in an amount to be proved at trial.

E.     Defendants were also unjustly enriched and received ill-gotten gains at the expense of Oracle, other than as described in its copyright infringement action, by all the illegal conduct and other unfair business practices listed in Oracle's Fourth Amended Complaint and as described in Oracle's responses to Defendants' Fifth Set of Interrogatories. These include gains and/or profits SAP and TN made from those unjust, unfair, illegal, and deceptive activities, including some or all of the approximately $40 million TN reported as profits, and a portion of the approximately $500 million in license revenue associated with SAP's leverage of TN in the sale of license applications, reputational harm, and the amount that Defendants saved in taking from Oracle the above-described material rather than legitimately creating it (which will also be the subject of expert analysis and relied upon by Oracle's damages experts), and attorneys' fees as provided by statute or law. While no formal computation has been completed, it is being finalized. Evidence relevant to Defendants' unjust enrichment and the ill-gotten gains received through their unfair business practices is primarily contained in Defendants' internal analyses and presentations on Safe Passage and SAP TN and the customer contracts and related files and

1    sequentially by its respective attachment or attachments and the attachment's metadata.  For all

2    electronic documents, including email and email attachments, Oracle will provide black/white

3    group IV single page TIFF images with a standard Summation DII delimited load file.  For any

4    color documents, Oracle will initially produce documents in black/white format, but will at

5    Defendants' request provide color JPEG images when the color is necessary to decipher the

6    document.  Oracle will provide Microsoft Excel and similar files (ones that are only reasonably

7    usable in their native format) in native format with the original un-modified metadata.  Oracle

8    will not provide corresponding TIFF images for files produced in native format, such as

9    Microsoft Excel files.  A placeholder image will be inserted in the electronic production for any

10   native format documents.

11   **VI.   CERTIFICATION**

12          Pursuant to Fed. R. Civ. P. 26(g)(1), counsel for Oracle certifies that to the best of

13   its knowledge, information, and belief, formed after an inquiry that is reasonable under the

14   circumstances, these supplemental and amended Initial Disclosures are complete and correct as

15   of the time Oracle makes them.

16
     DATED:  November 2, 2009
17
                                        Bingham McCutchen LLP
18

19
                                        By: _____
20                                          Bree Hann
                                            Attorneys for Plaintiffs
21                                          Oracle USA, Inc., Oracle International Corporation,
                                            Oracle EMEA Limited, and Siebel Systems, Inc.
22

23

24

25

26

27

28