# EXHIBIT K

Dockets.Justia.com

Page 1

Slip Copy, 2008 WL 5500756 (S.D.Cal.)
**(Cite as: 2008 WL 5500756 (S.D.Cal.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. California.
APPLIED HYDROGEL TECHNOLOGY, INC., a California corporation, Plaintiff,
v.
RAYMEDICA, INC., a California corporation, et al., Defendants.
and Related Counterclaim.
**No. 06cv2254 DMS (POR).**
**Docket No. 127.**

Oct. 7, 2008.

Named Expert: William Scott Mowrey, Jr., CPA. James Matthew Brown, Law Office of James Matthew Brown, Robert M. Steele, Herron & Steele, APC, San Diego, CA, for Plaintiff.

Britta Anne Schnoor, Peter M. Lancaster, Meghan J. Ryan, Dorsey & Whitney LLP, Minneapolis, MN, Kathlene W. Lowe, Eve A. Brackmann, Kent J. Schmidt, Dorsey & Whitney LLP, Irvine, CA, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE OPINION OF PLAINTIFF'S EXPERT ON DAMAGES**

DANA M. SABRAW, District Judge.

*1 Defendants Raymedica, Inc., Raymedica, LLC and Fred Kornahrens ("Defendants") move *in limine* to exclude the opinion of Plaintiff's damages expert William Scott Mowrey, Jr., CPA. Plaintiff has filed an opposition to the motion. The motion came on for hearing on October 2, 2008. Robert M. Steele and James M. Brown appeared on behalf of Plaintiff, and Peter M. Lancaster appeared on behalf of Defendants. After hearing oral argument, and after consideration of the parties' briefs, the record on file, and relevant legal authority, the Court grants Defendants' motion.

**I.**

**BACKGROUND**

Plaintiff filed this case in San Diego Superior Court on September 1, 2006. Plaintiff's only remaining claims are for breach of contract (a Confidentiality Agreement) and trade secret misappropriation. Plaintiff asserts that as a result of Defendants' conduct it has suffered damages in the amount of $2,773,789. (Mem. of P. & A. in Opp'n to Mot. at 6.) To support this assertion, Plaintiff intends to call Mr. Mowrey as an expert witness to testify at trial.

To arrive at the asserted damages amount, Mr. Mowrey calculated "the cost to create or duplicate" Plaintiff's trade secrets. (Decl. of Britta Schnoor in Supp. of Mot. ("Schnoor Decl."), Ex. 1 at 8.) In calculating this amount, Mr. Mowrey first determined the amount of capital invested in Plaintiff through the fiscal year ended June 30, 2001, which totaled $1,733,954. (*Id.*) For the period of July 1, 2001, through August 29, 2005 (the date of the Confidentiality Agreement), Mr. Mowrey totaled the number of hours Dr. Shih spent "in the development of confidential information and trade secrets" (8,319) and multiplied that number by an hourly rate of $125 ("estimating an hourly professional fee of $250 and subtracting from that amount of 50%"), to arrive at a total of $1,039,835. (*Id.* at 9.) Mr. Mowrey then added these two totals together to arrive at the total damages figure of $2,773,789. (*Id.*)

**II.**

## DISCUSSION

Defendants argue Mr. Mowrey's opinion should be excluded pursuant to Federal Rule of Evidence 702. This Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Defendants assert Mr. Mowrey's opinion does not satisfy any of these criteria. Plaintiff contends this Rule does not apply to Mr. Mowrey's opinion, and that Defendants' arguments go to the weight of Mr. Mowrey's opinion, not its admissibility.

### A. Mr. Mowrey's Opinion is Governed by Rule 702

**\*2** As an initial matter, the Court disagrees with Plaintiff's threshold argument that Rule 702 does not apply to Mr. Mowrey's opinion. Plaintiff asserts this Rule does not apply because Mr. Mowrey's opinion "is not based on scientific, technical or other specialized knowledge, but rather is based on simple accounting analysis well within the competence of a C.P.A.'s experience and training." (Mem. of P. & A. in Opp'n to Mot. at 8.) To the extent Mr. Mowrey's opinion is based on a "simple accounting analysis," however, it is unnecessary to "assist the trier of fact to understand the evidence or determine a fact in issue[.]" Fed.R.Evid. 702. Counsel could just as easily perform the calculations for the jury, or the jury could perform the calculations itself. As evidenced at the hearing on this motion, Mr. Mowrey's opinion does not rest solely on "simple accounting analysis," but incorporates more detailed accounting principles, which are subject to the requirements of Rule 702.

### B. Mr. Mowrey's Methodology is Unreliable

Turning to the requirements of Rule 702, Plaintiff has failed to establish that the "cost to create or duplicate" is a reliable method for calculating the value of trade secrets or confidential information. Mr. Mowrey states this is one approach to a "determination of damages from the improper use of confidential information and from trade secrets[,]" (Schnoor Decl., Ex. 1 at 8), but he admits he has never used this methodology before. (*See* Schnoor Decl., Ex. 2 at 163) ("Q. Have you ever based a trade secret valuation on the amount of capital that your client has been able to raise? A. No.") In addition, Plaintiff fails to cite, and the Court has failed to find, a single case in which an expert has used this methodology to value trade secrets or confidential information.

The absence of any such authority raises serious concerns about the reliability of this method to value trade secrets or confidential information. Some examples raised at oral argument only heighten these concerns. For instance, defense counsel argued that the "cost to create or duplicate" method could generate the same value for a worthless trade secret and a trade secret worth millions of dollars. Furthermore, Plaintiff's counsel described Defendants' investment of $60 million in a product that ultimately failed. Nevertheless, application of the "cost to create or duplicate" method could be used to generate a value of $60 million for Defendants' product. Both of these examples illustrate that this methodology is inconsistent, and more importantly, that it is detached from reality and common sense.

Nevertheless, Plaintiff argues Mr. Mowrey's valuation methodology is reliable because it tracks the parties' negotiations. Plaintiff specifically relies on a December 13, 2005 e-mail from Defendant Kornahrens to Plaintiff's founder and principal, Dr.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Lih-Bin Shih. At the time of this email, the parties were discussing a potential license agreement in which Plaintiff would license its technology to Defendant. In the December 13, 2005 e-mail, Kornahrens stated, "I recommend you suggest a number, and/or numbers, that take into account both a & b because it is a good starting point. (a) AHT investment and (b) potential loss of business opportunities if exclusive." (Decl. of Robert M. Steele in Supp. of Opp'n to Mot., Ex. I at 1.) Notably absent from Plaintiff's argument, however, is any authority that finds that parties' negotiations have any bearing on an expert's methodology, much less render it reliable.

**\*3** For these reasons, the Court finds the "cost to create or duplicate" is not a reliable method of determining the value of trade secrets or confidential information.

### C. Mr. Mowrey's Application of the Methodology to the Facts of this Case is Unreliable

Even if the "cost to create or duplicate" was a reliable method for determining the value of trade secrets or confidential information, it has not been reliably applied to the facts of this case. When Mr. Mowrey performed his calculations, all of Plaintiff's claims were viable, as indicated in Mr. Mowrey's report. (Schnoor Decl., Ex. 1 at 3) ("My assignment is to provide expert opinions to the damages claimed by the Plaintiff resulting from the improper use of confidential information and trade secrets and other causes of action in this matter by the Defendants.") Since that time, however, the Court granted Defendants' motion for summary judgment on four of Plaintiff's six claims. Plaintiff's only remaining claims are for breach of contract and trade secret misappropriation.

The standard measure of damages for a breach of contract claim is that amount that puts the plaintiff in the position it would have been in if the contract had not been breached. 4 Minnesota Practice, CIV. JIG. V 20.60 (2008). The contract at issue in this case is a Confidentiality Agreement, and Defendants allegedly breached that Agreement by using Plaintiff's confidential information for reasons outside the scope of the Agreement. Assuming Plaintiff can prove the threshold elements of this claim, it would be entitled to damages in an amount that would put it in the position it would have occupied absent the breach. It is unclear, however, how the actual value of the confidential information corresponds with that amount. Plaintiff did not lose its confidential information by virtue of Defendants' alleged breach, nor did it lose the entire value of that confidential information. Indeed, Plaintiff continued to possess the information for its own use or for licensing to others. Attributing the entire value of Plaintiff's confidential information as the measure of Plaintiff's damages for Defendants' alleged breach goes well beyond placing Plaintiff in the position it would have occupied absent Defendants' breach.

Application of this method to Plaintiff's trade secret misappropriation claim results in a similar finding. Although Plaintiff is entitled to damages for any trade secret misappropriation, those damages are typically determined by reference to the plaintiff's "actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Minn.Stat. Ann. § 325C.03(a). As explained above, Plaintiff did not lose either total possession or control of its trade secrets, which would entitle it to recover the actual value of those assets. Rather, Plaintiff lost the exclusive use of those assets, which is arguably worth less than their total value.

**\*4** Nevertheless, Plaintiff argues the total actual value is an appropriate measure of damages because it is the amount of Defendants' unjust enrichment. Essentially, Plaintiff argues that Defendants saved $2.8 million by misappropriating Plaintiff's trade secrets, therefore, that is the amount Plaintiff is entitled to recover. The major flaw in this argument, however, is that described above, namely that the "cost to create or duplicate" method is not a re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

liable measure of the value of trade secrets or confidential information. Bootstrapping this method into the theory of unjust enrichment does not change that result.

The only other recognized method of calculating damages for trade secret misappropriation is through the use of a reasonable royalty. *See* Minn.Stat. Ann. § 325C.03(a) ("In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.") Here, Mr. Mowrey acknowledged that methodology, but rejected it because "the number of units of the Defendant's products which made use of the infringed trade secrets is insufficient to make a determination of Defendant's infringing products or to serve as a basis for determining damages based on a reasonable royalty." (Schnoor Decl., Ex. 1 at 8.)

Plaintiff argues, and the Court acknowledges, that the three methods described above (actual loss, unjust enrichment and reasonable royalty) are not the only methods of calculating damages for trade secret misappropriation. *See* Minn.Stat. Ann. § 325C.03(a) ("Damages *can* include ....") (emphasis added). Plaintiff attempts to stretch this argument to fit its novel approach to trade secret valuation, but that argument is not convincing. Although the statute allows room for an alternative approach to determining damages, the approach must still satisfy the requirements of Rule 702, *i.e.,* it must be based on sufficient facts or data, it must be reliable, and it must be reliably applied to the facts of the case. Mr. Mowrey's opinion does not satisfy the latter two requirements, and thus it may not be presented to the jury.

### III.

### CONCLUSION AND ORDER

For all the foregoing reasons, the Court GRANTS Defendants' motion *in limine* to exclude Mr. Mowrey's opinion.

**IT IS SO ORDERED.**

S.D.Cal.,2008.
Applied Hydrogel Technology, Inc. v. Raymedica, Inc.
Slip Copy, 2008 WL 5500756 (S.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.