# EXHIBIT M

LEXSEE


Positive
As of: Feb 23, 2010

FAS TECHNOLOGIES, LTD. et al., Plaintiffs, v. DAINIPPON SCREEN MFG., CO., LTD., Defendant.

No. C 00-01879 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2001 U.S. Dist. LEXIS 15444

September 21, 2001, Decided
September 21, 2001, Filed; September 24, 2001, Entered in Civil Docket

**DISPOSITION:**   [*1] Dainippon's motion for attorney fees and costs GRANTED in part and DENIED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant, alleging inter alia that defendant misappropriated plaintiff's trade secrets and infringed its patent. After the court dismissed plaintiff's claims, with the exception of a common law claim which was transferred, defendant moved for an award of attorney fees and costs.

**OVERVIEW:** Plaintiff provided defendant with confidential information under a nondisclosure agreement, and alleged that defendant wrongfully attempted to sell products based on plaintiff's technology to a potential customer of the plaintiff, although no sale was accomplished. Defendant asserted that it was entitled to attorney fees under the misappropriation and patent statutes based on plaintiff's bad faith. The district court held that defendant was entitled to an award for attorney fees incurred after plaintiff's claims were limited by the court to the aborted transaction. Plaintiff's continued assertion of misappropriation, without any showing of damage, lacked any objective or subjective basis and thus the claims were pursued in bad faith. However, plaintiff's patent claim could not be deemed frivolous in the absence of evidence that plaintiff was advised or suspected that it had no claim, especially since the merits of the patent claim were not considered.

**OUTCOME:** Defendant's motion for an award of attorney fees and costs was granted in part with regard to period after plaintiff's claims were limited to the aborted transaction, but the motion was otherwise denied.

**CORE TERMS:** patent, misappropriation, misappropriation of trade secrets, royalty, trade secrets, bad faith, summary judgment, special master, attorneys fees, transferred, world-wide, pursued, nexus, lawsuit, coater, award of fees, technology, frivolous, damaged, amend, fees incurred, extrusion, common law, patent infringement, unfair competition, oral argument, amount of fees, separate judgment, supplemental, objectively

**LexisNexis(R) Headnotes**

*Civil Procedure > Remedies > Costs & Attorney Fees > General Overview*
*Trade Secrets Law > Misappropriation Actions > General Overview*

Page 1

[HN1]See Cal. Civ. Code § 3426.4.

*Civil Procedure > Remedies > Costs & Attorney Fees > General Overview*
*Evidence > Procedural Considerations > Objections & Offers of Proof > Objections*
*Trade Secrets Law > Factors > Uniform Trade Secrets Act*

[HN2]A party may show bad faith under Cal. Civ. Code § 3426.4 by showing that the plaintiff commenced or maintained a trade secret misappropriation claim in bad faith. Although bad faith is not defined in the Uniform Trade Secrets Act, courts universally interpret it to require a finding (1) that plaintiff's claims were objectively specious or frivolous, and (2) that there is evidence of subjective misconduct. Objective speciousness exists where there is complete lack of evidence supporting plaintiff's claim. Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit. For example, bad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised.

*Torts > Business Torts > Unfair Business Practices > General Overview*
*Trade Secrets Law > Civil Actions > Remedies > Damages > Royalties*

[HN3]See Cal. Civ. Code § 3426.3(b).

*Patent Law > Remedies > Damages > General Overview*
*Trade Secrets Law > Civil Actions > Remedies > Damages > Royalties*
*Trade Secrets Law > Misappropriation Actions > General Overview*

[HN4]A plaintiff may obtain a reasonable royalty in a patent case as well as a misappropriation case.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*

[HN5]In patent infringement suits the court in exceptional cases may award reasonable attorney fees to the prevailing party. 35 U.S.C.S. § 285. In awarding attorney fees to a prevailing accused infringer, such exceptional circumstances include, inter alia, a frivolous suit. A frivolous patent suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless.

*Civil Procedure > Remedies > Costs & Attorney Fees > General Overview*

[HN6]Fed. R. Civ. P. 54(d)(2)(B) provides that a motion for fees must be made no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount sought.

*Civil Procedure > Judicial Officers > Masters > Compensation*

[HN7]See Fed. R. Civ. P. 54(d)(2)(D).

*Civil Procedure > Judicial Officers > Masters > Appointments*
*Civil Procedure > Judicial Officers > Masters > Compensation*

[HN8]Fed. R. Civ. P. 53 provides for the appointment and compensation of special masters, and in particular, that the compensation to be allowed to a master shall be fixed and charged to the parties as the court directs.

**COUNSEL:** For FAS TECHNOLOGIES,LTD, FAS TECHNOLOGIES,INC, FASTAR LTD, Plaintiffs: Paul W. Cane, Jr., Paul Hastings Janofsky & Walker, Louisa G. Weix, Paul Hastings Janofsky & Walker LLP, San Francisco, CA.

For FAS TECHNOLOGIES,LTD, FAS TECHNOLOGIES,INC, FASTAR LTD, Plaintiffs: James G. Ruiz, Mark L. Cushing, Winstead Sechrest & Minich, Austin, TX.

For DAINIPPON SCREEN MFG.CO,LTD, defendant: James W. Morando, Robert C. Holtzapple, Farella Braun & Martel LLP, Roderick M Thompson, Farella Braun & Martel, San Francisco, CA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES R. BREYER

**OPINION**

**MEMORANDUM AND ORDER RE: ATTORNEY FEES**

This misappropriation of trade secrets lawsuit arises out of defendant's attempted -- and ultimately unsuccessful -- sale of extrusion coaters to a California corporation. On May 31, 2001, the Court granted defendants summary judgment on all of plaintiffs' remaining claims with the exception of a common law claim for breach of contract which the Court transferred back to the Northern District of Texas. Defendant now moves for an award of fees and costs under [*2] California's misappropriation of trade secrets law and the patent statute.

**BACKGROUND**

Defendant Dainippon Screen Manufacturing Company ("Dainippon") sells extrusion coaters -- the "Slit and Spin" -- in direct competition with plaintiff FAS Technologies, Ltd. ("FAS"). The coater is a piece of equipment used to make flat panel displays for the semiconductor industry. On July 19, 1993, Dainippon entered into a Non-Disclosure Agreement with FAS in connection with a proposed joint development agreement. Under the Non-Disclosure Agreement, FAS provided Dainippon with confidential trade secret information including information relating to semiconductor coating, dispensing and automation equipment, business plans, financial information, and projections. The parties ultimately did not enter into any joint developments.

**A. The Original Complaint**

Five years after the parties entered into the Non-Disclosure Agreement, FAS filed this lawsuit in the Northern District of Texas. FAS alleged that Dainippon used FAS's confidential information to design, manufacture, and market Dainippon's extrusion coaters without FAS's authorization. Specifically, FAS alleged that Dainippon offered [*3] to sell extrusion machines to Candescent Technologies Corporation, a prospective customer of FAS, within the United States. Candescent is located within the Northern District of California.

The complaint made claims for patent infringement, misappropriation of trade secrets, breach of the Non-Disclosure Agreement, unfair competition, and tortious interference with prospective business relationship. Dainippon responded by moving to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer to the Northern District of California. In particular, Dainippon argued that because the only transaction identified by FAS was the attempted sale to Candescent, a corporation located in California, the action should be transferred to this District if not dismissed outright. The Northern District of Texas agreed and transferred the action to this District on February 16, 2000.

**B. The Second Amended Complaint**

FAS subsequently moved for leave to file a second amended complaint. By that motion FAS sought to (1) withdraw the patent infringement claim; (2) restate claims for misappropriation of trade secrets and breach of a Non-Disclosure Agreement; (3) substitute an unfair [*4] competition claim under California Business and Professions Code section 17200, et seq., in place of the common law unfair competition claim; and (4) add a new claim for an accounting. Dainippon opposed the amendment, and in particular, the dismissal of the patent claim. The Court granted FAS leave to amend and advised Dainippon that it would consider its request for costs and attorneys fees after deciding the motion to dismiss. The amended complaint sought "world-wide" damages; that is, damages from Dainippon's world-wide sales of the Slit and Spin.

**C. Dainippon's First Motion To Dismiss**

Dainippon moved to dismiss all the claims in the amended complaint, except for the claims arising out of its alleged attempt to sell its device to Candescent, on the ground that the Court does not have personal jurisdiction of Dainippon for such claims. It also contended that the California claims must be dismissed to the extent FAS sought to obtain damages for Dainippon's world-wide conduct, and to the extent FAS sought a world-wide injunction. Dainippon also moved to dismiss on grounds of forum non conveniens, and filed a motion for attorneys fees and costs incurred in defending [*5] the voluntarily-dismissed patent claim.

The Court dismissed FAS's new claims that Dainippon misappropriated FAS's trade secrets and interfered with its world-wide sales on the ground that California's laws do not reach conduct that occurred outside of California. See Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214, 222 (1999). The

Court also dismissed without prejudice defendant's motion for attorney's fees and costs arising from the abandoned patent claim.

After the Court issued its order, Dainippon wrote FAS requesting dismissal of the lawsuit since, among other things, it was undisputed that Dainippon had never sold anything to Candescent and therefore FAS could not have suffered any damages and was not entitled to injunctive relief. FAS refused to drop its lawsuit.

**D. Dainippon's Motion for Summary Judgment**

Dainippon subsequently moved for summary judgment of all of FAS's claims on the ground that it is undisputed that it did not misappropriate any of FAS's trade secrets in connection with the proposed Candescent transaction, and therefore did not violate the misappropriation of trade secrets law, section 17200, or the Non-Disclosure [*6] Agreement. Among other things, Dainippon argued that it never actually did any business with Candescent so FAS had not suffered any damage. FAS responded by moving to amend the complaint yet again. It argued that it had learned through its own investigation that Dainippon further misappropriated FAS's trade secrets by using FAS's technology in Japanese patent applications. These new allegations had no nexus to California whatsoever.

The Court denied the motion to amend and granted Dainippon's motion for summary judgment on the ground that FAS had not presented any evidence that Screen's failure to sell any products to Candescent damaged FAS. The Court transferred the common law breach of contract claim back to the Northern District of Texas since that claim alleged conduct unrelated to California in addition to the Candescent transaction. Dainippon now moves for an award of fees and costs under the trade secret and patent statutes.

**DISCUSSION**

**I. Motion for fees and costs pursuant to the trade secret statute**

[HN1]Section 3426.4 of the California Civil Code (which is part of the Uniform Trade Secrets Act "UTSA") provides that "if a claim of [trade secret] misappropriation [*7] is made in bad faith, . . . the court may award reasonable attorney's fees to the prevailing party." Cal. Civ. Code § 3426.4. "[HN2]A party may show bad faith under this statute by showing that the plaintiff commenced or maintained a trade secret misappropriation claim in bad faith." Computer Economics, Inc. v. Gartner Group, Inc., 1999 U.S. Dist. LEXIS 22204, 1999 WL 33178020 (S.D. Cal. Dec. 14, 1999). Although "bad faith" is not defined in the UTSA, courts have universally interpreted it to require a finding (1) that plaintiff's claims were objectively specious or frivolous, and (2) that there is evidence of subjective misconduct. See id.

"Objective speciousness exists where there is complete lack of evidence supporting plaintiff's claim." Id. "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Id. For example, "bad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised." Alamar Biosciences, Inc. v. Difco Labs., Inc., 40 U.S.P.Q.2D (BNA) 1437 (C.D. Cal. 1996); [*8] see also id. ("continuing to prosecute a frivolous case may be evidence of such bad faith").

Dainippon divides its motion for fees into two parts: (1) fees incurred *after* the Court's December 15, 2000 ruling which essentially limited this case to the Candescent transaction, and (2) fees incurred *before* the December 15, 2000 hearing.

**A. Fees incurred after December 15, 2000**

The Court's December 15, 2000 ruling limited FAS's misappropriation of trade secrets claim to the proposed Candescent transaction -- the only alleged conduct with any nexus to California. FAS lacked *any* evidence supporting an award of damages or injunctive relief under such a claim in light of the undisputed fact that Dainippon had not sold anything to Candescent. See December 15, 2000 Memorandum and Order at pages 5-6. FAS had no good faith argument that it had been damaged by a sale that never happened. Nor did it have a good faith argument that injunctive relief was warranted in light of the complete absence of any evidence that Dainippon was likely to attempt to sell a coater device to anyone in California.

In a supplemental opposition filed after oral argument, FAS contends that [*9] its inability to prove damages is not fatal to its trade secret claim. It argues --

for the first time -- that under Civil Code section 3426.3 the Court could have awarded a reasonable royalty. Section 3426.3 provides:

> [HN3]If neither damages nor unjust enrichment caused by misappropriation are provable, the Court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

Cal. Civ. Code section 3426.3(b); Cacique, Inc. v. Robert Reiser & Co., Inc., 169 F.3d 619, 623 (9th Cir. 1999). Thus, argues FAS, even though it could not prove that it was damaged or that Dainippon was unjustly enriched, the Court could still order a reasonable royalty and therefore its claim was not objectively specious. It contends that the "equipment embodying FAS' trade secrets costs in excess of three million dollars" and thus the "amount of a reasonable royalty clearly is a question of fact for a jury." FAS' Supplemental Opposition at 3.

FAS' argument is unpersuasive for several reasons. First, based on the plain language of the statute, the Court -- not the jury -- determines if and in what amount a royalty should be awarded. [*10] See Cal. Civ. Code section 3416.3(b) ("the Court may order payment of a reasonable royalty").

Second, in opposition to summary judgment FAS did not offer any evidence which would allow the Court to determine what royalty, if any, and for what period of time, would be appropriate. See Unilogic, Inc. v. Burroughs Corporation, 10 Cal. App. 4th 612, 628 (1992) (affirming nonsuit of misappropriation of trade secret claim on the ground, among others, that the cross-complainant "presented no evidence that would allow the court to determine what royalty, if any, would be reasonable under the circumstances"). Instead, FAS argued that in order to prevail on its misappropriation of trade secret claim it has to show, among other things, that it was actually damaged by the misappropriation or that Dainippon was unjustly enriched. See FAS Opposition to Motion for Summary Judgment at 14.

Third, and most importantly, FAS ignores that it brought its misappropriation of trade secret claim under *California* law. The Court ruled in December 2000 that FAS's California misappropriation of trade secret claim was limited to the proposed Candescent sale, the only conduct with [*11] any nexus to California. FAS offers no support for its assertion that under California law the Court could order a reasonable royalty to a Texas plaintiff for a Japanese corporation's alleged use of trade secrets it acquired in Texas to develop a product in Japan that is not, and never has been, sold in California. To put it another way, FAS has not been harmed, and Dainippon has not been enriched, by any conduct with any nexus to California; FAS has not cited any case that suggests a royalty may be awarded in such circumstances. Accordingly, the Court finds that after the Court limited FAS's misappropriation of trade secrets claim to the proposed -- and aborted -- Candescent transaction, the claim was "objectively specious."

The Court also finds that FAS subjectively engaged in misconduct. After this action was transferred to this district FAS suddenly, and without explanation, moved to voluntarily dismiss its patent claim. Now, in opposition to Dainippon's motion for fees, Ted Snodgrass, FAS's Chief Executive Officer ("CEO") explains that "by the time the case was transferred to the United States District Court for the Northern District of California, it became clear to FAS that [*12] Candescent was not going to purchase a coating system from Dainippon, thus any infringement damages would be *de minimis* and the known infringing act in California had terminated." Snodgrass Decl. at 2-3. Snodgrass's declaration is an admission that FAS knew early on in this litigation that the Candescent transaction had terminated, and therefore that there was no basis for its patent action. It must have also known, therefore, that there was no basis for its other claims which also arose from the Candescent transaction. Instead of withdrawing those claims, however, it amended it complaint to assert a misappropriation of trade secrets claim under California law. Moreover, it continued to pursue those claims even after the Court's December 15, 2000 order and Dainippon's letter to FAS explaining that there was no basis for these claims. Indeed, FAS's opposition and supplemental opposition offer no explanation for why it continued to prosecute the misappropriation of trade secret claim even though the same reasoning that allegedly led FAS to drop its patent claim applies equally to its trade secret claim.

FAS's continued pursuit of its other claims is also evidence of its bad faith. [*13] For example, after the Court's December 15, 2000 ruling FAS's claim for

Page 5

tortious interference with prospective business relationship was limited to the Candescent transaction. Although FAS knew that the Candescent transaction had been aborted, it continued to press its claims based on that transaction. While the Court is not and cannot award fees for FAS's pursuit of this common law claim, it is simply evidence of FAS's bad faith in continuing to pursue the Candescent claim.

FAS's belated "royalty" argument does not alter the Court's finding. [HN4]A plaintiff may obtain a reasonable royalty in a patent case as well as a misappropriation case. See Catique, Inc., 169 F.3d at 623. Moreover, as is set forth above, FAS did not make this argument until the oral argument on the motion for attorneys fees. There is no evidence in the record from which the Court could reasonably infer that FAS actually pursued the misappropriation of trade secret claim arising out of the Candescent transaction because it believed it could be awarded a reasonable royalty.

FAS's reliance on Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 529 (N.D. Cal. 2000) is equally unavailing. [*14] Unlike the plaintiffs in Forcier, FAS presented very little, if any, evidence to support its claim for damages and/or unjust enrichment. Moreover, the Court finds that it did not "vigorously pursue" the California misappropriation claim. Instead, its primary response to Dainippon's motion for summary judgment was to move for leave to amend the complaint to include conduct with no relationship to California. This response is evidence that FAS lacked confidence in the merit of its misappropriation claim, especially given that the Court had previously held that California's laws do not reach conduct with no nexus to California. FAS's continued failure to explain why it pursued the misappropriation and other related claims after it knew the Candescent transaction had been abandoned is further evidence that FAS lacked confidence in its claims.

Accordingly, the Court finds that after the Court's December 15, 2000 order FAS pursued the California misappropriation of trade secrets claim in bad faith, that is, that it did not have any objective or subjective basis to pursue the claim.

**B. Fees Incurred Before December 15, 2000**

Dainippon also seeks an award of fees incurred prior [*15] to December 15, 2000 on the ground that FAS should not have pursued a misappropriation claim at all. The Court declines to find that FAS's initiation of the misappropriation claim in the first place was done in bad faith. While FAS's pre-lawsuit investigation was nearly non-existent, the Court has not closely evaluated the merits of FAS's claim as it relates to conduct outside of California in light of FAS's failure to offer any evidence to support its claim as it relates to the Candescent transaction -- the only claim that was at issue in this lawsuit.

**II. Motion for fees and costs under the patent statute**

[HN5]In patent infringement suits the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "In awarding attorney fees to a prevailing accused infringer, such exceptional circumstances include, inter alia, . . . a frivolous suit." Bayer Aktiengesellschaft v. Duphar Int'l Research B.V., 738 F.2d 1237, 1242 (Fed. Cir. 1984). "A frivolous patent suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." Haynes International, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993). [*16]

Dainippon contends that an award is appropriate here because there never was any basis to support FAS's patent claim. It contends that even a cursory evaluation of the patent would have revealed the failure of FAS's patent claim. Moreover, it notes that the *only* investigation conducted by FAS before filing suit was reviewing a video presentation at a conference which depicted Dainippon's "Slit and Spin" coating technology.

Given that the Court has never adjudicated the merits of the patent claim, it does not find that this is an extraordinary case warranting sanctions. Although FAS's explanation for why it suddenly dropped the patent claim -- the Candescent transaction did not happen and therefore any damages would be nominal -- is incredible given that it continued to pursue related claims with the same non-existent damages, FAS's CEO attests that FAS filed suit "based on the opinion of its counsel and patent counsel." Snodgrass Decl. at p. 2. While this artfully worded sentence does not say what the opinion was, the statement suggests that FAS had at least consulted with patent counsel. In light of the absence of any evidence that suggests that patent counsel advised FAS that [*17] it had no claim, or that FAS had not developed sufficient information to bring a claim, the Court declines to award fees and costs under Section 285.

### III. Whether an award of fees is premature

FAS's primary argument in its written opposition is that an award of fees and costs is premature since a judgment has not yet been issued. It relies on [HN6]Federal Rule of Civil Procedure 54(d)(2)(B) which provides that a motion for fees must be made "no later than 14 days after entry of judgment; must specify the judgment and the statute, rule or other grounds entitling the moving party to the award; and must state the amount sought." FAS cites no authority, however, which requires a party to wait until judgment is actually issued to file and have heard a motion for fees; the Court has found at least one case in which the court issued its order for fees before the final appealable judgment was issued. See Scott-Harris v. City of Fall River, 134 F.3d 427 (1st Cir. 1997) (court issued order re: attorneys' fees at least one month before appealable judgment was entered and even before motion for judgment notwithstanding the verdict was decided).

While it is true that any [*18] order the Court issues regarding fees will not be an enforceable judgment (and therefore appealable) until judgment is issued, there is no reason not to decide this motion now. This Court -- not the Texas judge to whom the last remaining claim has been transferred -- is in the best position to decide this motion. Moreover, Dainippon indicated at oral argument that it wanted the Court to issue a separate judgment pursuant to Federal Rule of Civil Procedure 54(b).

FAS also argues that the motion is premature because the Texas court has not adjudicated the remainder of its misappropriation claim. There are two problems with this argument. First, FAS does not have a misappropriation claim remaining in this action. The Court transferred only a common law contract claim; it granted summary judgment on FAS's misappropriation claim in its entirety. Second, even if there were a remaining misappropriation claim it would be irrelevant to whether FAS pursued the Candescent misappropriation claim in bad faith.

### IV. Amount of fees

Dainippon seeks over $ 500,000.00 in fees and costs incurred between December 15, 2000 and the Court's granting of summary judgment in May 2001. Given the [*19] large amount of fees and costs requested, the Court will refer the motion with respect to the amount of fees to a special master. [HN7]Federal Rule of Civil Procedure 54(d)(2)(D) provides that "the court may refer issues relating to the value of services [on a fee motion] to a special master under Rule 53." [HN8]Rule 53 provides for the appointment and compensation of special masters, and in particular, that the compensation to be allowed to a master shall be fixed and charged to the parties as the court directs.

The Court refers the amount of fees to be awarded to special master Lester Levy and directs that the parties split the cost of the special master, unless, after reviewing the parties' submissions, the special master recommends that a particular party pay more because it unreasonably caused the special master to spend more time than necessary. The special master is directed to meet and confer with the parties to determine how to proceed and is authorized to adopt whatever procedures, including the filing of additional pleadings, he deems necessary.

### CONCLUSION

For the foregoing reasons, Dainippon's motion for attorney fees and costs is GRANTED in part and DENIED in part. The [*20] motion pursuant to Civil Code section 3426 for fees and costs incurred after December 15, 2000 is GRANTED, and in all other respects the motion is DENIED.

The issue as to how much in fees and costs should be awarded is referred to special master Lester Levy for findings on what fees and costs were reasonably incurred after December 15, 2000 and a report and recommendation.

The parties are directed to meet and confer concerning the form of a separate judgment pursuant to Federal Rule of Civil Procedure 54(b), and shall submit a proposed separate judgment within 14 days of the date of this Memorandum and Order.

**IT IS SO ORDERED.**

Dated: September 21, 2001

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE