# EXHIBIT N

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

🚩
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 8.
Robert GUY et al., Plaintiffs and Appellants,
v.
IASCO, Defendant and Respondent.
**No. B168339.**
**(Los Angeles County Super. Ct. No. BC 267348).**

June 17, 2004.

APPEAL from a judgment of the Superior Court of Los Angeles County. James R. Dunn, Judge. Affirmed.
Law Offices of Vida M. Holguin, Vida M. Holguin; Lauzon & Euler and Debra A. Lauzon for Plaintiffs and Appellants.

O'Melveny & Myers, David J. Reis, Dipanwita Deb Amar, Christopher T. Scanlan; Howard Rice Nemerovski Canady Falk & Rabkin and David J. Reis for Defendant and Respondent.

FLIER, J.

**\*1** Respondent IASCO, a California corporation, is a flight crew leasing company. Appellants Robert Guy, Boyd Werner, James Vaughan, William Thompson, Peter Caggiano and Steve Emerson are employed by IASCO as flight engineers under three-year contracts by which they are leased to Japan Airlines, Ltd. (JAL). Appellants filed an action against IASCO, claiming that under various provisions of California law they were entitled to, but did not receive, overtime pay and that they were not compensated for all of the time that they worked.

IASCO moved for summary judgment as to all of the appellants. The court granted the motion.[FN1] The court found that California law and regulations governing overtime pay could not be applied extra-territorially to appellants and that these regulations also violate the federal commerce clause. We agree and affirm.

> FN1. There were two largely identical motions for summary judgment which we treat for our purposes as one.

FACTS

IASCO recruits and hires flight crews and then leases the crews to international airlines. Once the flight crew is leased to an airline, IASCO's major functions are to prepare the payrolls, make the actual payment of wages from funds provided by the airline, and assist the airline in resolving any scheduling conflicts that arise because of vacations, illnesses or flight schedule changes.

JAL serves 125 airports worldwide, only two of which-Los Angeles and San Francisco-are in California. JAL is prohibited by international treaties from offering domestic passenger service in the United States.

Appellants, as flight engineers, are responsible for the aircraft engines and systems aboard JAL's planes and, to perform their job, are required to hold flight engineer's certificates from the Japan Civil Aviation Bureau (JCAB). These certificates require extensive training and are recognized by the United States, allowing persons holding these certificates to operate planes in U.S. airspace.

JCAB, the counterpart to the U.S. Federal Aviation Administration, regulates the working conditions of flight crews on JAL aircraft. These regulations extend to hours of service, which are limited on a daily, monthly, quarterly and yearly basis. The regulations prohibit appellants from flying more than

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

12 hours a day, 85 hours in a month, 240 hours in a quarter and 900 hours in a year. JCAB regulations require that appellants receive mandatory rest days after completing a series of flights, which are called "patterns."

Appellants are compensated under the terms of their employment contract with IASCO. Appellants are each paid a minimum monthly salary of $6,950 or $7,041 for 65 hours a month of flight hours and related duties, even if they work less than 65 hours. [FN2] For each flight hour in excess of 65 hours in a month, each appellant is paid under the contract with IASCO a premium hourly rate of $77.00 or $87.00. JAL uses a similar arrangement to pay its own employee flight engineers.

> FN2. The monthly salary is composed of three components, which are a guaranteed salary for 65 hours of work, per diem and a "station allowance." In the instance of the salary of $7,041, there is a guaranteed salary of $3,343 for 65 hours of work, which is an hourly rate of $51.43.

The time period during which appellants claim that they were deprived of overtime and other pay owed to them under California law is the three-year period prior to the commencement of the filing of their actions, which is January 31, 2002.

**\*2** Between January 1998 and January 2002, appellants Guy, Werner, Vaughan and Thompson did not reside in California. These appellants have never paid California taxes and have not filed California tax returns since January 1998. These four appellants receive their pay from IASCO by direct deposits in banks located in the States of Washington, Georgia and Florida. Appellant Emerson has been a resident of Washington since August 2001 and is paid by direct deposit made in that state. He was a California resident prior to August 2001. Appellant Caggiano has been a California resident since January 1, 1998.

All of the appellants have conceded that they perform more than 90 percent of their work outside of California. They serve as flight engineers almost exclusively on international flights, which means that the flight originates in one country and terminates in another. Most of the appellants never fly "patterns" exclusively in California.

The wages, working hours and working conditions of employees in California are regulated by California's Industrial Welfare Commission (IWC). (*California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 119; Lab.Code, § 1173; [FN3] 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 314.) The IWC is the state agency empowered to formulate regulations, known as wage orders, governing employment in the State of California. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561.) In the instance of the transportation industry, the IWC has done so in its "Wage Order 9" which is found in title 8, section 11090 of the California Code of Regulations ("Order Regulating Wages, Hours, and Working Conditions in the Transportation Industry").

> FN3. Labor Code section 1173 provides in part: "It is the continuing duty of the Industrial Welfare Commission, hereinafter referred to in this chapter as the commission, to ascertain the wages paid to all employees in this state, to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees."

Since California Code of Regulations section 11090 (hereafter sometimes Wage Order 9) applies under its terms to "all persons employed in the transportation industry" (§ 11090, subd. 1), the issue herein is whether section 11090 applies to appellants. If it does, it is not disputed that appellants are to receive time and a half for all hours worked over eight hours in one day or over 40 hours in one week and "double time" for working more than 12 hours in

Case4:07-cv-01658-PJH Document641-15 Filed03/03/10 Page4 of 9

Page 3

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))

one day or over eight hours on the seventh consecutive day of a workweek. (§ 11090, subd. 3(A)(1).) Appellants are not currently being paid for overtime according to these rules.

### DISCUSSION

*1. The Extraterritorial Application of California Labor Laws and Regulations*

Statutes generally do not have extraterritorial effect. ( *North Alaska Salmon Co. v. Pillsbury* (1916) 174 Cal. 1, 4; *Sale v. Haitian Centers Council, Inc.* (1993) 509 U.S. 155, 173.) "Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." (*North Alaska Salmon Co. v. Pillsbury, supra,* at p. 4; *EEOC v. Arabian American Oil Co.* (1991) 499 U.S. 244, 248.) "The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute." ( *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1059-1060, fn. 20.) "The intention to make [an] act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.' " (*North Alaska Salmon Co. v. Pillsbury,* at p. 4.)

**\*3** In *North Alaska Salmon Co. v. Pillsbury, supra,* 174 Cal. 1, a worker entered into a contract in San Francisco for employment as a fisherman with a corporation whose office and principal place of business were in San Francisco. The worker was injured in Alaska. The Industrial Accident Commission awarded compensation. (174 Cal. at p. 2.) The Supreme Court held that the right to compensation was controlled by the applicable statutes, not the contract, and that the statute did not give the commission jurisdiction to award compensation for out-of-state injuries. ( 174 Cal. at pp. 2-4.)

In *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th 557, the Supreme Court considered whether the IWC's wage orders govern employment in the Santa Barbara Channel. The court concluded that California employment laws, including the IWC's wage orders, extend to employment within California's boundaries as those boundaries are defined by state law, and that the Santa Barbara Channel falls within those boundaries. ( 14 Cal.4th at p. 565.)

After reviewing provisions of the Labor Code that address the IWC's power to issue wage orders, the court concluded that nothing in these provisions "explicitly defines or limits" the IWC's jurisdiction. FN4 ( *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 577.) Nonetheless, the court noted that when the legislature intends legislation to have extraterritorial effect, it has provided for such an effect explicitly. Thus, Labor Code sections 3600.5 and 5305 provide that California worker's compensation law applies to workers hired, or regularly employed, in California but injured out of state. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* at p. 561.) These statutes, enacted respectively in 1955 and 1937, set aside the result reached in *North Alaska Salmon Co. v. Pillsbury.* The court in *Tidewater Marine Western, Inc. v. Bradshaw* went on to hold:

> FN4. " Labor Code section 1173 imposes on the IWC the duty to ascertain information about wages, hours, and working conditions '*in this state* '; section 1174 facilitates this information-gathering process by imposing certain affirmative duties on '[e]very person employing labor *in this state* '; and section 1193.5 authorizes DLSE [Division of Labor Standards Enforcement] representatives to '[i]nvestigate and ascertain the wages of all employees, and the hours and working conditions of all employees employed in any occupation

Case4:07-cv-01658-PJH   Document641-15   Filed03/03/10   Page5 of 9

Page 4

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

*in the state.*' (Italics added.)" (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 577.)

"The Legislature may have similarly intended extraterritorial enforcement of IWC wage orders in limited circumstances, such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day. On the other hand, the Legislature may not have intended IWC wage orders to govern out-of-state businesses employing nonresidents, though the nonresident employees enter California temporarily during the course of the workday. Thus, we are not prepared, without more thorough briefing of the issues, to hold that IWC wage orders apply to *all* employment in California, and *never* to employment outside California." (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 577-578.)

Even though the result reached in *North Alaska Salmon Co. v. Pillsbury* was legislatively overruled by the enactments of Labor Code sections 3600.5 and 5305, the California Supreme Court has recently reaffirmed *North Alaska* as a decision that embodies the "presumption against extraterritoriality" of California laws. (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at pp. 1058-1059; see *Churchill Village, L.L.C. v. General Elec. Co.* (N.D.Cal.2000) 169 F.Supp.2d 1119, 1126.) While we are, of course, bound by the Supreme Court's holding that there is nothing in the statutory scheme itself that "explicitly defines or limits" the IWC's jurisdiction (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 577),[FN5] we find it significant that the Legislature has not given wage and hour rules formulated by the IWC extraterritorial effect, as it has given such effect to the coverage of California's workmen's compensation law. The presumption against extraterritoriality is therefore unrebutted by the kind of clear legislative mandate that Labor Code sections 3600.5 and 5305 represent in the instance of California's workmen's compensation laws.

> FN5. We are, for this reason, not persuaded by respondent's argument that the text of the statutes (Lab.Code, § 1173 et seq.) reveals a legislative intent to limit the effect of IWC wage orders territorially to California.

**\*4** The legislative silence that followed the decision of the Supreme Court in *Tidewater Marine Western, Inc. v. Bradshaw* is also significant in light of *Tidewater Marine's* cautious statement that: "The Legislature may have similarly intended extraterritorial enforcement of IWC wage orders in limited circumstances, such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day." (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 577-578.) Legislative silence after a court has construed a statute gives rise to an arguable inference of acquiescence or passive approval. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 563.) *Tidewater Marine's* formulation of the extraterritorial application of IWC's wage orders in the "limited circumstances" described in that opinion would be noteworthy, standing alone. The fact that the Legislature has done nothing to correct this statement gives rise to an inference that the Legislature agrees with it.

Appellants contend that *Tidewater Marine Western, Inc. v. Bradshaw* does not preclude the application of IWC's wage orders to appellants because it declined to hold that the wage orders apply to *all* employment in California and *never* to employment outside California. We do not see it the same way. *Tidewater Marine* states that the Legislature may have intended to give extraterritorial effect to wage orders "... *in limited circumstances,* such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

California at the end of the day." ( *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 577-578, italics added.) We do not think that this is an endorsement of applying wage orders to nonresidents working for a foreign corporation in interstate and foreign commerce, who make an occasional stop in California. In this connection, we reject as unrealistic appellants' claim that they work for IASCO, and not JAL. While they have a contract with IASCO, as holders of flight engineer's certificates from the JCAB, appellants are obviously "working for" JAL.

One of the appellants, Mr. Caggiano, has been a California resident since January 1, 1998. This necessarily means that Mr. Caggiano collects his pay in California. As is true of the other appellants, more than 90 percent of Mr. Caggiano's work for JAL has been performed outside California.

In *Tidewater Marine Western, Inc. v. Bradshaw,* the court held that if an employee resides in California, receives pay in California and works exclusively, or principally, in California, that employee presumptively enjoys the protection of IWC regulations. ( *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 578.) *Tidewater Marine Western* specifically declined to address the issue whether IWC wage orders would be applicable to California residents who work "primarily outside" California. ( 14 Cal.4th at p. 579.) It is true, however, that *Tidewater Marine* cited *United Airlines, Inc. v. Industrial Welfare Com* (1963) 211 Cal.App.2d 729, 735, 748-749, as a case that held that IWC regulations apply to persons who are domiciled in California but work principally outside the state. (*Tidewater Marine Western, Inc. v. Bradshaw, supra,* at p. 578.) [FN6] Thus, the application of IWC's wage order to Mr. Caggiano presents a difficult question which we do not need resolve since we find below that the federal commerce clause forbids the application of IWC wage orders to all of the appellants.

> FN6. *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 728, footnote 15 disapproved *United Airlines, Inc. v. Industrial Welfare Com., supra,* 211 Cal.App.2d 729 to the extent it held that state regulation of working conditions is invalid outside the realm of health and safety provisions.

**\*5** Appellants contend that the wrongful conduct occurs in California when IASCO draws paychecks that do not comply with IWC's wage order. The essence of this argument is that this case does not present an instance where laws are applied extraterritorially, since the wrongful conduct takes place in California. Appellants rely on *Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th 1036, for its holding that Corporations Code sections 25400 and 25500, which make it unlawful for any person in this state to knowingly make false statements to induce stock transactions, applies to purchases made by nonresidents outside California. Appellants contend that *Diamond Multimedia Systems* stands for the proposition that California remedies may be invoked by nonresident parties when they have been harmed by wrongful conduct that occurred in California.

It is true that IASCO is a California corporation and that it engages in its activities, the preparation of payrolls and paychecks, in California. However, it is also true that the payment of appellants' salaries or wages has a significant nexus with jurisdictions other than California. Thus, five out of the six appellants reside in states other than California and they receive their pay in the states in which they reside. While it would be unrealistic to ignore that IASCO prepares its payrolls in California, it would be equally unrealistic to ignore that IASCO's actions have a significant effect in jurisdictions other than California. A statute may have an extraterritorial effect even if it also has an effect in its home jurisdiction. It is the *extra* territorial, not the territorial, effect of a state's laws that implicate considerations of due process and state sovereignty, which underlie the broad rule against giving laws extraterritorial effect.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document641-15   Filed03/03/10   Page7 of 9

Page 6

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

We therefore cannot agree with the thrust of appellants' contention that this case is not one that involves the extraterritorial application of IWC's wage orders. While those orders would have a territorial effect in this case in the sense that they would affect a California corporation doing business in California, they would also have an extraterritorial effect, if they were applied in this case. It is the extraterritorial reach of the Wage Order 9 that bars its enforcement and that, as we point out below, violates the commerce clause of the federal Constitution.

This explains why appellants' reliance on *Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th 1036, is misplaced. The fraudulent conduct that occurred in California in *Diamond Multimedia Systems* was just that, i.e., fraudulent, and was therefore actionable. The point is that if the IWC's Wage Order 9 cannot be applied to appellants' wages or salaries, either because California laws do not reach that far or because they violate the commerce clause or both, IASCO's conduct in California is not wrongful.

Given that the application of IWC wage orders would have an extraterritorial effect if they were applied to appellants, the question is whether there is anything that dispels the presumption that the Legislature did not intend to give such an effect to IWC's wage orders. We find that there is nothing to indicate that the Legislature intended to give these orders extraterritorial effect. On the contrary, all indications are that the Legislature did not intend to give such an effect to IWC's wage orders. In the allied field of workmen's compensation, the legislature specifically enacted measures that give extraterritorial application to these laws. And the California Supreme Court's very limited formulation of extraterritoriality of IWC's wage orders in *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pages 577-578 has drawn no response from the Legislature. Given these circumstances, we conclude that IWC's wage orders cannot be given extraterritorial effect. Specifically, Wage Order 9 cannot be applied to the wages or salaries of appellants Guy, Werner, Vaughan, Thompson and Emerson, who do not reside in California.[FN7]

> FN7. Appellants raise in a footnote that the trial court failed to address their claim under Business and Professions Code section 17200. Rule 14(a)(1)(B) of the California Rules of Court requires that each point must be stated under a separate heading or subheading summarizing the point. Putting an argument in a footnote does not comply with this rule and we may therefore disregard it. (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1451.) Moreover, the argument made in the footnote, that the alleged violations of Business and Professions Code section 17200 are distinct from the Labor Code violations was not made below and is therefore waived. Finally, the only basis upon which the practices could be "unfair" for purposes of Business and Professions Code section 17200 is if they violated the Labor Code. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186-187.) Since we find no violation of the Labor Code, this argument fails on its merits.

**2. IWC's Wage Orders as Unreasonable Burdens on Interstate Commerce**

**\*6** The federal Constitution gives Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." (U.S. Const., art. I, § 8.) It has been long recognized that the commerce clause operates as a self-executing limitation on the power of the states to enact laws imposing substantial burdens on interstate commerce. ( *New Energy Co. of Indiana v. Limbach* (1988) 486 U.S. 269, 273.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

It is axiomatic that a state law in direct conflict with federal law regulating interstate commerce is void. ( *Cooley v. Board of Wardens of Port of Philadelphia et al.*(1851) 53 U.S. 299, 319.) But "[a]bsent congressional action, the familiar test is that of uniformity versus locality: if a case falls within an area in commerce thought to demand a uniform national rule, state action is struck down. If the activity is one of predominantly local interest, state action is sustained. More accurately, the question is whether the state interest is outweighed by a national interest in the unhampered operation of interstate commerce." ( *California v. Zook* (1949) 336 U.S. 725, 728.)

In 1957, the IWC formulated an order which provided that no employee was to be required to contribute directly or indirectly toward the purchase or maintenance of a uniform. ( *United Airlines, Inc. v. Industrial Welfare Com., supra,* 211 Cal.App.2d at pp. 733-734.) United Air Lines, Inc., challenged the regulation, in part as it was applied to its stewardesses, and in other respects on grounds not material hereto. The court concluded that the regulation was a burden on interstate commerce:

"If the regulation is sustained a most anomalous situation results. A stewardess based in California gets a free uniform even though most, or perhaps all of her work is on interstate planes. A stewardess based outside of California who works on planes coming into California does not. Likewise, on interstate flights there might very well be two stewardesses working side by side, one with a free uniform, the other with a uniform a part only of the cost of which United paid. Again, if a stewardess based in another state and having under the collective bargaining agreement paid a portion of the cost of her uniform, is temporarily based in California, would her money have to be repaid to her? Such discrimination is bound to cause personnel troubles and to that extent, at least, a burden on interstate commerce. The situations above mentioned point out strongly the interference of the regulation with interstate commerce and the necessity for a uniform rule throughout the carrier's system." ( *United Airlines, Inc. v. Industrial Welfare Com., supra,* 211 Cal.App.2d at pp. 748-749.)

These observations, valid when it comes to compensation for uniforms, are even more apropos in the instance of overtime pay. The disparate treatment of flight personnel in the payment of overtime is even less tolerable than differences in uniform allowances. An international carrier cannot be expected to follow the regulations of 50 states regarding overtime pay when it comes to the pay of personnel who, as is the case with appellants, work mainly, if not exclusively, in international flights.

**\*7** Our finding that Wage Order 9 clearly has extraterritorial effects confirms the conclusion that regulation of overtime pay *in this setting* is a regulation of interstate and foreign commerce. Each of the appellants, Mr. Caggiano included, spend more than 90 percent of their working time outside California. The fact that appellants work almost exclusively in interstate and foreign commerce is also shown by the fact that most of them *never* fly "patterns" in California. JAL serves 125 airports worldwide, only two of which are in California. The evidence is overwhelming that appellants' work for JAL is in interstate and foreign commerce.

Overtime pay in this setting is clearly not a matter of local interest. ( *California v. Zook, supra,* 336 U.S. at p. 728.) The regulation of the overtime pay of flight personnel who work in interstate and foreign commerce is a direct regulation of such commerce. The United States Supreme Court has made clear that a state statute that directly regulates commerce occurring outside the boundaries of the state violates the commerce clause. ( *Healy v. The Beer Institute* (1989) 491 U.S. 324, 336; *Ferguson v. Friendfinders, Inc.* (2002) 94 Cal.App.4th 1255, 1263.)

Appellants contend that IWC's Wage Order 9 would directly affect only IASCO, a California corporation, and that application of the wage order to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case4:07-cv-01658-PJH   Document641-15   Filed03/03/10   Page9 of 9

Page 8

Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2004 WL 1354300 (Cal.App. 2 Dist.))**

appellants would therefore not burden interstate commerce. Appellants state that "[w]hile enforcement of California labor laws might place a financial burden on IASCO, that would be no different than any other effort to enforce California laws upon a California employer." We think it plain that the increased cost would be passed on to JAL. In any event, the gravamen of the matter is the imposition of a state regulation on interstate commerce. It is not realistic to say that the regulated entity is IASCO, when the fact of the matter is that, if IWC's Wage Order 9 is applied to appellants, JAL would have to reckon with the possibility of complying with the differing overtime rules of multiple states. In determining whether the state statute impermissibly controls commerce outside the state, the court may consider "... what effect would arise if not one, but many or every, State adopted similar legislation." ( *Healy v. The Beer Institute, supra,* 491 U.S. at p. 336.)

We find that the application of IWC Wage Order 9 to appellants would impermissibly burden interstate commerce.

In light of our ruling that Wage Order 9 cannot be applied in appellants' instance because it is an unreasonable burden on interstate commerce, it is not necessary to address appellants' contention that the forum selection clause in their contract with IASCO requires the application of California law.

IASCO contended in the superior court that the federal Fair Labor Standards Act (FLSA) preempts the application of IWC's Wage Order 9 to appellants in that the FLSA specifically exempts any employee of a " 'carrier by air subject to the provisions of Title II of the Railway Labor Act' " from overtime requirements. The trial court declined to address this issue. Respondent renews this contention on appeal. This matter would require a determination, in the first instance, whether IASCO is an air carrier subject to the Railway Labor Act. We decline to do so. In any event, in light of our holding that IWC's wage orders cannot be applied to appellants, we find it unnecessary to resolve the question of preemption.

## DISPOSITION

**\*8** The judgment is affirmed. Respondent is to recover its costs on appeal.

We concur: COOPER, P.J., and RUBIN, J.
Cal.App. 2 Dist.,2004.
Guy v. IASCO
Not Reported in Cal.Rptr.3d, 2004 WL 1354300 (Cal.App. 2 Dist.)

END OF DOCUMENT