# EXHIBIT O

Dockets.Justia.com

Not Reported in F.Supp.2d, 2008 WL 314490 (N.D.Cal.)
**(Cite as: 2008 WL 314490 (N.D.Cal.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
QUANTUM CORPORATION, Plaintiff,
v.
RIVERBED TECHNOLOGY, INC., Defendant.
and Related Counterclaims.
**No. C 07-04161 WHA.**

Feb. 4, 2008.

Amardeep Lal Thakur, Sheppard Mullin Richter &
Hampton, San Diego, CA, Steven E. Bledsoe, Arent
Fox LLP, Los Angeles, CA, Nathaniel Philip Bruno
, Sheppard Mullin Richter & Hampton LLP, San
Francisco, CA, for Plaintiff.

Claude M. Stern, David T. Wei, Todd Michael
Briggs, Quinn Emanuel Urquhart Oliver & Hedges
LLP, Redwood Shores, CA, for Defendant.

**ORDER GRANTING DEFENDANT'S MO-
TION TO DISMISS**

WILLIAM ALSUP, District Judge.

**INTRODUCTION**

**\*1** In this patent-infringement action, defendant
moves to dismiss, contending plaintiff lacked any
rights to the patent asserted at the time the com-
plaint was filed. For the reasons stated below, de-
fendant's motion is **GRANTED.**

**STATEMENT**

Plaintiff filed its complaint on August 14, 2007, al-
leging infringement of U.S. Patent No. 5,990,810,
which concerns a method for data processing and
storage. The inventor assigned his rights in the '810

patent to Trustus Pty., Ltd., which assigned all
rights to Rocksoft Ltd. (Bruno Decl. Exh. 1). Ad-
vanced Digital Information Corp. then formed and
registered Australian Company Number 120 786
012 Pty. Ltd., ("A.C.N.120") as a proprietary com-
pany, both Rocksoft and A.C.N. 120 being re-
gistered in Australia (Hall Decl. Exh. 5). A.C.N.
120 then acquired all the shares of Rocksoft, such
that Rocksoft became a wholly-owned subsidiary of
A.C.N. 120 (*id.* at Exhs. 2-4). Plaintiff Quantum, a
U.S. company, then acquired ADIC as a wholly-
owned subsidiary (*id.* at Exh. 8). Pursuant to a tech-
nology-licensing agreement signed the day before
this litigation commenced, A.C.N. 120 "and its sub-
sidiaries" granted an exclusive license to Quantum
to "all patents, patent applications, [and] intellectu-
al property rights" owned by A.C.N. 120 and its
subsidiaries. Significantly, however, Rocksoft did
*not* sign the agreement. On December 24, 2007,
four months after the complaint was filed, Rocksoft
executed an assignment of the "entire right, title
and interest" in the '810 patent to A.C.N. 120, al-
though Quantum was not a party (Briggs Decl. Exh.
H). Defendant now moves to dismiss this action un-
der FRCP 12(b)(1), claiming plaintiff had insuffi-
cient interest in the '810 patent at the time the com-
plaint was filed.

**ANALYSIS**

**1. LEGAL STANDARD.**

Standing of the parties to bring their claims is a
threshold matter that must be addressed before the
substantive merits of the case. A patent plaintiff
must have a "personal stake" in a case so as to as-
sure that any harm may be redressed by the out-
come of litigation. *Stoianoff v. State of Mont.,* 695
*F.2d 1214, 1223 (9th Cir.1983).* In the patent in-
fringement context, "an exclusive licensee has
standing to sue in its own name, without joining the
patent holder, where all substantial rights in the pat-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 314490 (N.D.Cal.)
**(Cite as: 2008 WL 314490 (N.D.Cal.))**

ent are transferred." *International Gamco, Inc. v. Multimedia Games, Inc. .,* 504 F.3d 1273, 1276 (Fed.Cir.2007). In such a case, the exclusive licensee is effectively an assignee. "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. 261. Where standing to sue for patent infringement depends on a written instrument, it must be executed before the filing of the complaint. *See Enzo APA & Son, Inc. v. Geapag AG,* 134 F.3d 1090, 1093-94 (Fed.Cir.1998);

## 2. PLAINTIFF HAS NO STANDING.

It is undisputed that Rocksoft held proper title to the patent pursuant to the November 2004 licensing agreement. Defendant contends that as of the filing date of the complaint, however, plaintiff had no rights in the '810 patent because the chain of title ended at Rocksoft, meaning there was no assignment linking Rocksoft to A.C.N. 120 or beyond. In reply, plaintiff argues that Quantum acquired its interest in the patent pursuant to the licensing agreement entered between A.C.N. 120 and Quantum one day before the complaint was filed. It provided:

**\*2** Licensor hereby grants to Licensee and Licensee hereby accepts, a perpetual, exclusive, worldwide, transferable license with the right to sublicense Licensor's entire rights under the Licensed Technology, including without limitation, the right to manufacture, make, have made, use, import, export, sell and service products that incorporate the Licensed Technology (Briggs Decl. Exh. 2).

The agreement defined "Licensed Technology" as "all patents ... that Licensor owns or licences" and "Licensor" as "A.C.N. 120 ... and its subsidiaries" ( *ibid.*).

Trouble is, Rocksoft was not a party to the agreement, *i.e.,* Rocksoft did not sign the agreement. The question thus becomes whether, absent an alter ego showing, a parent company is automatically deemed to be the agent of its subsidiaries authorized to transfer patent rights.

The record does not come close to showing that A.C.N. 120 should be treated as Rocksoft's alter ego.[FN*] As the court in *Aladdin Oil Corp. v. Perluss,* 230 Cal.App.2d 603, 614, 41 Cal.Rptr. 239 (1965) held:

> [FN*] At the argument, counsel claimed the companies are "practically one and the same. *This* is only argument. Corporate control is not enough by itself to prove alter ego. No attempt has been made to prove alter ego. Also, no caselaw has been provided that an alter-ego showing would satisfy the written requirements of Section 261.

Parties who determine to avail themselves of the right to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges. The alter ego doctrine is applied to avoid inequitable results not to eliminate the consequences of corporate operations.

While Rocksoft and A.C.N. 120 were affiliates, each was created as separate corporate entities, and must accordingly be treated as such. That is, of course, the whole point of a corporation, to isolate its assets, liabilities, and operations. Its assets can be alienated only by the officers and directors named in the charter and bylaws or, of course, through its authorized agents. It is true that A.C.N. 120 purported to act on behalf of its subsidiaries, but nothing in the record shows that A.C.N. 120 was actually authorized to act as an agent for Rocksoft, with respect to the patent in suit or any other asset. Contrary to plaintiff, the mere fact that Rocksoft was A.C.N. 120's wholly-owned subsidiary does not automatically mean that A.C.N. 120 and Rocksoft had an agency relationship. As the Supreme Court held in *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474-75, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003):

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 314490 (N.D.Cal.)
**(Cite as: 2008 WL 314490 (N.D.Cal.))**

A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest. A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary. (internal citations omitted)

In addition, in *Schreiber Foods v. Beatrice Cheese, Inc.,* 402 F.3d 1198 (Fed.Cir.2005), the parent corporation, Schreiber, assigned its rights to a patent during a lawsuit to its subsidiary, Schreiber Technologies, which in turn granted Schreiber a non-exclusive license to the patent. The assignment was apparently done for tax purposes. Despite the fact that Schreiber still necessarily controlled the patent through its subsidiary, the Federal Circuit found that Schreiber had lost standing, holding (*id.* at 1202-03):

**\*3** [O]nce the assignment to Schreiber Technologies was completed, there was no question that Schreiber lost its 'personal stake in the outcome.'

Similarly, Quantum's control of its subsidiaries is insufficient to confer standing.

The later assignment in December 2007, four months after the complaint was filed, suggests that plaintiff realized that the August 2007 licensing agreement needed fixing. Plaintiff now contends (Opp.2-3):

The [December 2007] assignment was designed to show a clear chain of title on record in the [USPTO] so as to avoid any questions in the future by parties who have not had the benefit of reviewing the terms of Quantum's exclusive license.

This order assumes arguendo that the August 2007 licensing agreement in combination with the December 2007 assignment was enough as of the later date. Nonetheless, the chain of title was not perfected when the lawsuit began, a critical distinction under Federal Circuit law. *See Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1310 (Fed.Cir.2003).

*Atmel Corp. v. Authentec, Inc.,* 490 F.Supp.2d 1052 (N.D.Cal.2007), does not save the day for plaintiff. In *Atmel,* Judge Claudia Wilken of this district allowed a parent corporation, Atmel Corporation, to assert a patent jointly owned by its subsidiaries, Atmel Grenoble and Atmel Switzerland, despite the absence of an express licensing agreement between the corporations. This order, however, did not come to grips with the law cited above, perhaps because it was not adequately presented. Under 35 U.S.C. 261, to repeat, "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing," a point of law perhaps not in contention in that litigation. As the Federal Circuit in *Enzo APA,* 134 F.3d at 1093, held (emphasis added):

While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it *must be in writing....* As such, the licensing arrangement conferring such must, logically, resemble an assignment in both form and substance.

Given that the August 2007 licensing agreement was not signed by Rocksoft, no rights in the '810 patent were transferred by that agreement. As no other written assignment or license agreement was executed before the filing of the complaint, *Atmel* is distinguishable.

\* \* \*

In light of the proliferation of patent-infringement actions, it is not too much to ask sophisticated patent litigants to be careful when it comes to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 314490 (N.D.Cal.)
**(Cite as: 2008 WL 314490 (N.D.Cal.))**

threshold issue of standing. It is a simple task to execute express license agreements that satisfy the Federal Circuit standard. Among affiliated companies, it should be even simpler. It is true that patent litigants sometimes rush to stake out venue in a preferred forum. A rush to sue, however, cannot excuse the stern necessity of perfecting the required title before suit. District judges cannot overlook a defect in the chain of title, for the entirety of massive litigation might wind up being vacated years later, for lack of threshold standing. *See Gaia Techs., Inc., v. Reconversion Techs., Inc.,* 93 F.3d 774 (Fed.Cir.1996) (vacating a final judgment after a full trial on the merits because of a deficiency in standing). As carpenters say, it is wise to "measure twice and cut once."

**\*4** It is worth noting that very little prejudice will flow from this ruling. There is a parallel suit anchored in Delaware between the very same parties and over the very same patent. The damages claims may be asserted there. Conceivably, it could even be asserted as a counterclaim to the counterclaim in the instant action, although that type of procedural maneuver would need to be validated. In either event, plaintiff should double check its assumption that the later assignment cured any defect in Quantum's standing.

### 3. PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE SUPPLEMENTAL DECLARATION.

At the eleventh hour, plaintiff requested leave to supplement the record with evidence of A.C.N. 120's authority to sign on behalf of Rocksoft. Plaintiff's request, however, was made after all briefing was completed. Plaintiff contends that such evidence should be considered because for the first time in its reply, Riverbed addressed the issue of whether the August 2007 agreement included Rocksoft. It was clear from the defendant's motion, however, that Riverbed was directly challenging whether or not the agreement between A.C.N. 120 and Quantum transferred any rights in the patent owned by Rocksoft. That was in fact the *only* issue

presented by defendant in its motion. In its opposition, plaintiff argued that the August 2007 license agreement properly transferred the patent rights. Plaintiff should have easily anticipated that any evidence relating to A.C.N. 120's authority to bind Rocksoft would have easily fell within the ambit of its opposition to this motion. Accordingly, plaintiff's administrative request to supplement the record is **DENIED.**

It is worth noting that the proffer is insufficient anyway. The decisive fact is that no signature for Rocksoft was on the August 2007 agreement. Even if the signor for A.C.N. 120 was also an officer of Rocksoft and could have also signed for Rocksoft, there was no such signature block on the signature page. Only A.C.N. 120 purported to sign.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is **GRANTED.**

### IT IS SO ORDERED.

N.D.Cal.,2008.
Quantum Corp. v. Riverbed Technology, Inc.
Not Reported in F.Supp.2d, 2008 WL 314490 (N.D.Cal.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.