# EXHIBIT 10

Dockets.Justia.com

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>        Plaintiffs,<br><br>   vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>        Defendants. | No. 07-CV-1658 (PJH) |

VIDEOTAPED DEPOSITION OF

CHRISTOPHER FAYE

---

WEDNESDAY, OCTOBER 22, 2008


HIGHLY CONFIDENTIAL


REPORTED BY: HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-413165)

```
09:20:06   1
09:20:12   2
09:20:15   3
09:20:18   4
09:20:18   5
09:20:22   6
09:20:26   7
09:20:29   8
09:20:33   9
09:20:34  10
09:20:36  11
09:20:37  12         Q.   What was your next position?
09:20:39  13         A.   Director of IP Transactions.
09:20:47  14         Q.   How did your role change?
09:20:52  15         A.   I stopped having a patent docket; I started
09:20:57  16   managing a couple of attorneys.  That's the primary
09:21:07  17   change.
09:21:07  18         Q.   What were your duties?
09:21:09  19         A.   The duties that were left over.  The
09:21:10  20   transactions, of course, and the IP counseling.
09:21:17  21         Q.   Anything else?
09:21:20  22         A.   Well, we've got a couple major headings
09:21:23  23   which kind of fall under either of those two main
09:21:26  24   buckets.  But open source policy, our NDA process,
09:21:37  25   M&A due diligence.  Yeah, just a lot of counseling,
```

CHRISTOPHER FAYE          October 22, 2008
HIGHLY CONFIDENTIAL

Page 20

| | | |
|---|---|---|
| 09:21:46 | 1 | and then that -- that means a number of things fall |
| 09:21:48 | 2 | underneath. |
| 09:21:49 | 3 | Q. Is that your current position? |
| 09:21:50 | 4 | A. Yes. |
| 09:21:52 | 5 | Q. Who has worked under you? You said some -- |
| 09:21:55 | 6 | you started managing some attorneys? |
| 09:21:59 | 7 | A. You've got Trey White; Ray Zado; Naomi |
| 09:22:09 | 8 | Obinata, who's no longer with the company; Daniela |
| 09:22:14 | 9 | Kondareva; Terrence Brennan. |
| 09:22:23 | 10 | Q. Were they all IP attorneys? |
| 09:22:28 | 11 | A. Yes. In -- Daniela is in Bulgaria, but |
| 09:22:38 | 12 | she's an attorney. She's in more of a paralegal |
| 09:22:40 | 13 | role, to be completely accurate, but she is an |
| 09:22:42 | 14 | attorney. |
| 09:22:43 | 15 | Q. And she reports to you? |
| 09:22:44 | 16 | A. Yes. |
| 09:22:45 | 17 | Q. And to whom do -- to whom have you reported |
| 09:22:49 | 18 | in this role? |
| 09:22:50 | 19 | A. Tim Crean. |
| 09:22:55 | 20 | Q. Anyone else? |
| 09:22:58 | 21 | A. No. |
| 09:23:00 | 22 | Q. What's Mr. Crean's position? |
| 09:23:03 | 23 | A. He's SAP's Chief IP Officer. |
| 09:23:07 | 24 | Q. And to whom does he report? |
| 09:23:09 | 25 | A. To Werner Brandt. |

```
09:31:01   1
09:31:05   2
09:31:06   3
09:31:07   4
09:31:09   5
09:31:12   6
09:31:13   7
09:31:19   8
09:31:20   9
09:31:23  10        Q.   And what was the time period in which
09:31:26  11   Mr. Hayes was involved?
09:31:29  12        A.   I would say also that same period.
09:31:32  13   Basically, from the beginning.
09:31:34  14        Q.   On and off over that --
09:31:36  15        A.   Yes, over that --
09:31:37  16        Q.   -- period?
09:31:39  17        A.   Yeah.
09:31:44  18        Q.   Did any of the lawyers advise -- let me go
09:31:48  19   back.
09:31:48  20             You testified that you advised TomorrowNow
09:31:51  21   directly.  Do you recall that?
09:31:55  22        A.   I don't recall it, but that's actually
09:31:57  23   true, so --
09:31:58  24        Q.   Okay.  Fair enough.  Did any of the other
09:32:03  25   lawyers that you mentioned advise TomorrowNow
```

CHRISTOPHER FAYE          October 22, 2008
HIGHLY CONFIDENTIAL

Page 27

```
09:32:05  1   directly, as opposed to advising SAP?
09:32:16  2        A.  I don't know.
09:32:19  3        Q.  Whom did you advise at TomorrowNow?
09:32:25  4        A.  Primarily, Andrew Nelson, Greg Nelson.  I
09:32:29  5   know that I talked to Shelley Nelson, and there were
09:32:33  6   others that I talked to.  I'm not going to remember
09:32:36  7   their names, but there were a few others as well.
09:32:38  8        Q.  Did you provide -- but you also provided
09:32:41  9   advice to SAP personnel.  Correct?
09:32:44 10        A.  Yes.
09:32:44 11        Q.  On this same topic.  Right?
09:32:47 12        A.  Yes.
09:32:47 13        Q.  And to whom did you provide that advice?
09:32:48 14   Just the names.
09:32:56 15        A.  Well, certainly I talked to all the
09:32:58 16   attorneys that we mentioned previously about it.  I
09:33:06 17   talked to board members about it, at least Leo and
09:33:18 18   Gerhard.
09:33:23 19        Q.  Leo --
09:33:25 20        A.  Sorry, Leo Apotheker, Gerhard Oswald.
09:33:28 21        Q.  Let's try and use full names.  Thank you.
09:33:31 22        A.  Shai Agassi, Mark White.  At times there
09:34:01 23   would have been others, but I don't remember their
09:34:02 24   names.
09:34:03 25
```

10:21:53  1
10:21:55  2         Q.  Okay.  You were the primary legal adviser
10:22:00  3  to TomorrowNow from the date SAP acquired it until
10:22:06  4  the date of the litigation.  Is that correct?
10:22:13  5         A.  Yes, although there was another attorney, I
10:22:15  6  can't remember her name, that supported them on
10:22:19  7  sales.  I can't remember her name.
10:22:25  8         Q.  An SAP in-house attorney?
10:22:27  9         A.  If I remember correctly, she was a contract
10:22:32  10 attorney.
10:22:33  11        Q.  And when you say supported them on sales,
10:22:35  12 what do you mean?
10:22:39  13        A.  Contract negotiation, things like that.
10:22:41  14        Q.  So for the other aspects of their business,
10:22:43  15 you were the principal legal adviser, during that
10:22:50  16 time period?
10:22:51  17        A.  For the aspects that I was responsible for.
10:22:53  18 I think there are some that other attorneys would be
10:22:56  19 considered the principal adviser.
10:22:58  20        Q.  Well, I went through the list of attorneys
10:23:00  21 and asked you who was advising SAP about
10:23:03  22 TomorrowNow, and you gave me several names.
10:23:05  23        A.  Yes.
10:23:05  24        Q.  But I also asked you about who was advising
10:23:08  25 TomorrowNow, and you didn't name any other names.

```
10:23:10   1    But --
10:23:10   2         A.  Jochen Scholten.
10:23:13   3         Q.  Pardon?
10:23:14   4         A.  Jochen Scholten.
10:23:16   5         Q.  Provided direct advice to TomorrowNow?
10:23:18   6         A.  Yes.
10:23:19   7         Q.  Whom did he provide advice to?
10:23:22   8         A.  I don't know who he provided advice to
10:23:23   9    directly.
10:23:25  10         Q.  How do you know he had provided advice?
10:23:30  11             MR. LANIER:  Don't disclose the substance
10:23:31  12    of any communications that you may have had with
10:23:33  13    Mr. Scholten or with TomorrowNow.
10:23:35  14             If there are some facts, you were in a
10:23:38  15    meeting -- again, I'm making that up.  You can give
10:23:41  16    him some facts about that, but don't disclose the
10:23:43  17    substance of any communications.
10:23:46  18             THE WITNESS:  From various conversations
10:23:47  19    with Jochen and people at TomorrowNow.
10:23:50  20             MR. PICKETT:  Q.  Could you try and use
10:23:51  21    last names?  I think for the record it would be
10:23:53  22    better.
10:23:54  23         A.  Jochen Scholten --
10:23:55  24         Q.  Yes.
10:23:56  25         A.  I had conversations with Jochen Scholten.
```

CHRISTOPHER FAYE          October 22, 2008
HIGHLY CONFIDENTIAL

Page 54

| | | |
|---|---|---|
| 10:24:00 | 1 | Q. How did you divvy up the responsibilities? |
| 10:24:06 | 2 | A. Jochen was primarily responsible for the |
| 10:24:09 | 3 | day-to-day aspects of it. The example I used |
| 10:24:12 | 4 | earlier was creating subsidiaries, things like that. |
| 10:24:18 | 5 | And I was responsible for IP issues. |
| 10:24:30 | 6 | |
| 10:24:34 | 7 | |
| 10:24:39 | 8 | |
| 10:24:45 | 9 | |
| 10:24:48 | 10 | |
| 10:24:52 | 11 | |
| 10:25:02 | 12 | |
| 10:25:03 | 13 | |
| 10:25:05 | 14 | |
| 10:25:06 | 15 | |
| 10:25:14 | 16 | |
| 10:25:17 | 17 | |
| 10:25:19 | 18 | |
| 10:25:24 | 19 | |
| 10:25:28 | 20 | |
| 10:25:31 | 21 | |
| 10:25:32 | 22 | |
| 10:25:34 | 23 | |
| 10:25:39 | 24 | |
| 10:25:42 | 25 | |

Page 74

```
10:53:22   1
10:53:28   2
10:53:29   3
10:53:31   4
10:53:34   5
10:53:39   6
10:53:40   7
10:53:44   8
10:53:47   9
10:53:57  10         Q.   Do you know how SAP's decision regarding
10:54:01  11   changing the location of software at TomorrowNow was
10:54:04  12   communicated to TomorrowNow?
10:54:08  13         A.   Yes.
10:54:10  14         Q.   How?
10:54:13  15         A.   I told them.
10:54:17  16         Q.   And when you mean "them," who do you mean?
10:54:21  17   When you say "them," who do you mean?
10:54:23  18         A.   That would have been Andrew Nelson.
10:54:28  19         Q.   And do you -- well, earlier you said mid to
10:54:34  20   late 2005.  Is that the time period?
10:54:39  21         A.   No.  Mid to late 2005 was when we started
10:54:49  22   to hear about -- or I started to hear about Project
10:54:51  23   Blue.
10:54:55  24         Q.   Well, then I'm confused, because I thought
10:54:58  25   you told me that Project Blue concerned at least in
```

CHRISTOPHER FAYE                October 22, 2008
HIGHLY CONFIDENTIAL

Page 75

```
10:55:01   1    part of location of software at TomorrowNow.
10:55:03   2         A.   Yes.
10:55:04   3         Q.   So when was this conversation?
10:55:05   4         A.   The conversation about the decision where
10:55:11   5    to locate the software was -- that conversation with
10:55:16   6    Andrew Nelson was very shortly after the
10:55:20   7    acquisition.
10:55:20   8         Q.   Was that the board directive we earlier
10:55:23   9    talked about?
10:55:24  10         A.   Yes.
10:55:26  11         Q.   So how did Project Blue come up?
10:55:29  12         A.   In response to the board directive.
10:55:35  13         Q.   So in the January time frame, there's a
10:55:39  14    directive from the board to TomorrowNow.  Correct?
10:55:47  15         A.   Yeah.  Somewhere in that time frame,
10:55:49  16    January, February.
10:55:50  17         Q.   And then it's not till mid to late 2005
10:55:53  18    that Project Blue starts up?
10:55:58  19              MR. LANIER:  It calls for speculation.  But
10:55:59  20    if you know, go ahead.
10:56:01  21              THE WITNESS:  It's not until mid to late
10:56:06  22    2005 when there starts to be a project called
10:56:08  23    Project Blue.
10:56:10  24              MR. PICKETT:  Q.  Directed at the same
10:56:12  25    topic as the board directive that you delivered to
```

```
10:56:14   1    the Nelsons.  Right?
10:56:16   2         A.   Yes.
10:56:17   3         Q.   What did you do between January 2005 and
10:56:21   4    the beginning of Project Blue in mid to late 2005 to
10:56:25   5    check and see whether TomorrowNow was complying with
10:56:28   6    the board's directive that you had conveyed to
10:56:32   7    TomorrowNow?
10:56:33   8              MR. LANIER:  Stop for a second.  I want
10:56:35   9    to -- can you read that question back?
10:56:38  10              MR. PICKETT:  I'll rephrase it.
10:56:39  11         Q.   What did you do between January 2005 and
10:56:41  12    the beginning of Project Blue in mid to late 2005 to
10:56:44  13    check and see whether TomorrowNow was complying with
10:56:47  14    the board directive?
10:56:50  15              MR. LANIER:  Wait a second.  I'm thinking
10:56:52  16    for a minute about that.
10:56:57  17              Similar to our discussion about the due
10:56:58  18    diligence process, you can identify process steps
10:57:01  19    you went through, if any, but don't disclose the
10:57:04  20    substance of any communications that you had or any
10:57:06  21    analysis that you've performed.
10:57:09  22              THE WITNESS:  In that time period, I had
10:57:11  23    several conversations with both Andrew and Greg.
10:57:19  24              MR. PICKETT:  Q.  And once Project Blue
10:57:21  25    started in mid to late 2005, what did you do to
```

```
10:57:24   1   see -- or to check and see whether the board
10:57:27   2   directive had been complied with?
10:57:30   3           MR. LANIER:  Same instruction to you, sir.
10:57:31   4   Again, process steps, not substance of
10:57:33   5   communications or analysis.
10:57:35   6           THE WITNESS:  I continued to have
10:57:36   7   conversations with Greg and Andrew and Shelley
10:57:43   8   Nelson.  Greg Nelson, Andrew Nelson and Shelley
10:57:47   9   Nelson.  And others within TomorrowNow.
10:57:52  10           MR. PICKETT:  Q.  And those continued up
10:57:53  11   until the time of the litigation.  Correct?
10:57:55  12       A.  Yes.
10:57:57  13       Q.  Did TomorrowNow ever comply with the board
10:58:01  14   directive?
10:58:05  15       A.  To my knowledge, no.
10:58:11  16
10:58:18  17
10:58:23  18
10:58:28  19
10:58:35  20
10:58:36  21
10:58:40  22
10:58:41  23
10:58:45  24
10:58:47  25
```

```
 1                    CERTIFICATE OF REPORTER

 2           I, HOLLY THUMAN, a Certified Shorthand

 3   Reporter, hereby certify that the witness in the

 4   foregoing deposition was by me duly sworn to tell the

 5   truth, the whole truth, and nothing but the truth in the

 6   within-entitled cause; that said deposition was taken

 7   down in shorthand by me, a disinterested person, at the

 8   time and place therein stated, and that the testimony of

 9   the said witness was thereafter reduced to typewriting,

10   by computer, under my direction and supervision;

11           That before completion of the deposition,

12   review of the transcript [X] was [ ] was not requested.

13   If requested, any changes made by the deponent (and

14   provided to the reporter) during the period allowed are

15   appended hereto.

16           I further certify that I am not of counsel or

17   attorney for either or any of the parties to the said

18   deposition, nor in any way interested in the event of

19   this cause, and that I am not related to any of the

20   parties thereto.

21

22           DATED  October 24, 2008

23

24                                 _____

25                                 HOLLY THUMAN, CSR No. 6834
```

| | ERRATA | |
|---|---|---|
| CORRECTION | | PAGE |
| Xilinx | Zilinx | 12:16 |
| Gerd | Gerhard | 27:18 |
| Gerd | Gerhard | 27:20 |
| them | then | 162:22 |
| descriptively | derivatively | 147:13 |

_____          _____
Signature                         Date