Oracle Corporation et al v. SAP AG et al Doc. 657 Att. 105

# EXHIBIT 105

Dockets.Justia.com

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., and Siebel Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., a Colorado corporation, ORACLE INTERNATIONAL CORPORATION, a California corporation, ORACLE EMEA LIMITED, an Irish private limited company, and SIEBEL SYSTEMS INC., a Delaware corporation,

Plaintiffs,

v.

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

CASE NO. 07-CV-01658 PJH (EDL)

**FOURTH AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

**(1) COPYRIGHT INFRINGEMENT;**
**(2) VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT;**
**(3) VIOLATIONS OF THE COMPUTER DATA ACCESS AND FRAUD ACT;**
**(4) BREACH OF CONTRACT;**
**(5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

servers, Oracle discovered nearly ***8 million*** downloaded Oracle Software and Support Materials.

18. For years, SAP dumped these materials into a co-mingled, master download library, and "exploded" the software support packages into their constituent objects to facilitate later indexing and searching by product. SAP accessed these master download libraries as needed when customers needed a fix – regardless of which log-in credential SAP had used to download a particular fix in the library, regardless of whether the customer getting the fix had any license to receive it, and regardless of whether the customer had a support contract with Oracle entitling them to receive that fix.

19. But these downloads of Software and Support Materials, though massive, were just one part of SAP TN's fundamentally illegal business model:

- Beginning as early as 2002, SAP TN co-founders Andrew Nelson and Seth Ravin decided that SAP TN would expand its services and, in doing so, would create and keep on its computer systems illegal copies of Oracle's ***underlying software applications***;
- Nelson and Ravin directed SAP TN to warehouse dozens of these copies simply as "generic software environments" and use them as a "sandbox" to service other customers, train its employees, and create phony SAP TN-branded fixes to sell to its customers;
- In particular, SAP TN used these generic copies of Oracle software to "develop" (by copying Oracle software or creating illegal derivative works from it) SAP TN-branded "tax and regulatory updates," and deliver them to its customers paying for SAP TN support of each Oracle software release;
- In at least hundreds of instances, in a process created by Nelson and Ravin, SAP TN did this by first updating one "generic" environment with the Oracle-authored update code that SAP TN would download from Oracle's systems with one customer's log-in credential. SAP TN would then use software comparison tools to compare this "updated" generic software environment to a generic copy (also obtained from some unidentified customer) of an earlier

release of the same software. SAP TN then copied the differing code and used it to "develop" (again, by creating an illegal derivative work) what it called an SAP TN "retrofit update" in another "generic" environment. In the course of this development process, SAP TN would normally make at least four, and sometimes many more, generic copies of Oracle's software applications. In effect, there was no original development at all but merely repeated, illegal copying and use of the Oracle software code;

- In at least hundreds of other instances, SAP TN simply used these generic environments copied from customers' Oracle software to develop and test SAP TN "authored" (again, illegally created) updates that it delivered to its customers. After it bought SAP TN, SAP AG directly assisted in this process using its own software support resources;
- Many of SAP TN's environments, including generic environments, in turn ran upon copies of Oracle's database software that were not licensed for commercial or production use. After purchasing SAP TN, SAP AG and SAP America refused to purchase Oracle database licenses for SAP TN use, even though as an authorized Oracle database reseller, they knew full well the permissible uses of database copies, and even though SAP TN described the licenses as "urgently needed to support [SAP TN's] PeopleSoft customers using this technology";
- In total, SAP TN made thousands of copies of Oracle's software, and distributed thousands of individual fixes, for a fee, through its illegal "generic retrofit" and "direct update" models;
- In addition to the code associated with these retrofit software updates, SAP TN provided its customers with stolen Oracle instruction manuals, guides, notes and other support documentation related to the updates. It did this by "copying and pasting" downloaded Oracle documentation into re-branded SAP TN documentation that was, according to the sworn testimony of SAP

TN's third employee, "essentially identical" and "virtually verbatim with small changes" as the Oracle documentation. SAP TN then distributed these copied documents to its customers with a cover letter signed by its CEO, Andrew Nelson; and,

- SAP TN prepared operations manuals to instruct SAP TN employees how to download Oracle documentation and alter it to conceal its origin and make it look like SAP TN's. These instructions mandated specific, but minor changes to Oracle materials, stating for example, "Go to Document Properties and change author to TomorrowNow," or "[w]here the [Oracle] document talks about the appendix, edit so that the TomorrowNow document says 'summary.'"

20. The illegal downloads and the illegal software copies are part of an integrated, illegal business model. Without this stolen intellectual property, SAP TN could not operate. For example, whenever SAP TN wished to advertise support services for a new Oracle software product, it would need to first obtain a "seed" copy of the software. It needed this first copy so it could train its employees to support the software and create a generic software environment from which to "recycle" its support efforts and scale them across other customers. For these reasons, SAP TN's internal business plans specify that the first SAP TN customer on a new Oracle software release must contractually agree with SAP TN to provide copies of its Oracle software CDs to SAP TN.

21. SAP AG and SAP America have made repeated false statements about their own involvement in, and benefit from, SAP TN's theft.

22. While admitting that "inappropriate" downloads took place, in a July 3, 2007 press conference, SAP AG CEO Henning Kagermann stated that a "firewall" existed between SAP AG and SAP TN that prevented SAP AG from having access to the Oracle software downloaded by SAP TN. That was not true:

- SAP AG and SAP America employees accessed SAP TN's systems through a special link on SAP TN's website;

or otherwise, and therefore sues these defendants by such fictitious names. Due to the surreptitious nature of Defendants' actions, and the complicated nature of their scheme, the identities of the Doe Defendants have been concealed from Oracle, preventing Oracle from identifying these Defendants by name. After discovery, which is necessary to ascertain the true names and capacities of these Defendants, Oracle will amend its complaint to allege the necessary identifying details.

43. Defendants all are doing business in and/or have directed their activities at California, and specifically this judicial district. By way of example only, SAP America and SAP TN advertise, promote, sell, license, service, and support customers in California and in this judicial district. SAP AG negotiates and enters into software license and support agreements directly within the United States and, specifically in this judicial district, negotiates certain software-related contracts directly with Oracle that contain provisions by which SAP AG consents to the jurisdiction of California courts and the application of California law. SAP AG also holds an annual meeting of its Board of Directors in Palo Alto, California, and finances the sales and promotional activities of both SAP America and SAP TN throughout the United States and in California.

44. At all material times, through its 100% ownership of both SAP America and SAP TN, SAP AG had both the right and the authority to control the actions of both corporations. Similarly, at all material times, through its 100% ownership of SAP TN, SAP America had both the right and authority to control the actions of SAP TN.

45. At all material times, each of the Defendants, including Does 1 through 50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

## III. JURISDICTION

46. Oracle's first cause of action arises under the Federal Copyright Act, 17

other materials, "customized ongoing tax and regulatory updates," "fixes for serious issues," "full upgrade script support," and, most remarkably, "30-minute response time, 24x7x365" on software programs for which it had no intellectual property rights. To compound the puzzle, SAP continued to offer this comprehensive support to hundreds of customers at the "cut rate" of 50 cents on the dollar, and purported to add full support for an entirely different product line – Siebel – with a wave of its hand. The economics, and the logic, simply did not add up.

92. Oracle has now solved this puzzle. To stave off the mounting competitive threat from Oracle and to do so without making the requisite investment, SAP unlawfully accessed, copied, and wrongfully used Oracle's enterprise software applications and Software and Support Materials. It did so with the knowledge and consent of the SAP AG executive board of directors.

**E. SAP's Theft By Downloading**

**1. SAP TN Compiles A Massive Download Library**

93. SAP TN's use of its so-called Titan scraping tool resulted in such high levels of downloads that Oracle discovered its scheme. In late November 2006, there occurred unusually heavy download activity on Oracle's password-protected customer support website for its PeopleSoft and J.D. Edwards product lines. That website permits licensed Oracle customers with active support agreements to download a wide array of Software and Support Materials. Oracle has invested billions of dollars in research, development, and engineering to create these materials. Customers who have contracted for support with Oracle have log-in credentials to access Customer Connection and download Software and Support Materials. However, Oracle's support contracts limit customers' access and download rights to Software and Support Materials pertaining to the customers' licensed products. Customers have no contractual right to download Software and Support Materials relating to software programs they have not licensed from Oracle, or for which the customers did not purchase support rights.

94. The Software and Support Materials are a subset of the technical support services that Oracle makes available to its customers that have licensed Oracle software programs and purchased the right to receive technical support services related to them. The full

make a copy of them all.

97. Oracle embarked on a time-consuming and costly investigation to assess the damage done to its customer response database and fully understand the sources of the unauthorized downloads. In the course of this investigation, Oracle discovered a pattern. Frequently, in the month before a customer's Oracle support expired, a user purporting to be that customer, employing the customer's log-in credentials, would access Oracle's system and download large quantities of Software and Support Materials, including dozens, hundreds, or thousands of products beyond the scope of the specific customer's licensed products and permitted access. Some of these apparent customer users even downloaded materials after their contractual support rights had expired.

98. This systematic theft of Oracle's Software and Support Materials did not originate from any actual customer location. Rather, the access originated from an internet protocol (IP) address in Bryan, Texas, an SAP America branch office location and home of its wholly-owned subsidiary SAP TN. SAP TN is a company that purports to provide technical support services on certain versions of Oracle's PeopleSoft, JDE and Siebel software programs. The Bryan, Texas IP address used to access and download Oracle's Software and Support Materials is connected directly to SAP's computer network. Indeed, Oracle's server logs have recorded access through this same IP address by computers labeled with SAP TN identifiers using SAP TN IP addresses. When Oracle first noticed that the unlawful access and downloads originated almost exclusively from one IP address in Bryan, Texas, Oracle shut down access to that IP address. If the access and downloads had been legitimate, the customer or vendor would have called in right away to get its access reinstated. Instead, a new IP address, also linked to SAP TN, sprouted up almost immediately and the unlawful access and downloading resumed.

99. These SAP TN Bryan, Texas offices, housed the SAP "download center" with twenty or more "download servers" running the Titan program and other computer scripts virtually around the clock.

100. In many instances, including the ones described above, SAP TN employees used the log-in IDs of multiple customers, combined with phony user log-in

is reflected as the person performing many of the downloads at issue, appear to have applied their familiarity with Oracle's customer support websites to directly participate in and perfect the illegal downloading scheme. Consistent with this evidence, SAP TN's then Vice President, Nigel Pullan (who has since "resigned"), recently suggested that SAP intentionally targets Oracle's employees to extract their knowledge of Oracle's new products: "As new releases start to come out, the people that we hire, we make sure that they have skillsets in those new releases." SAP had copies of Oracle's license agreements and Terms of Use in its possession, including for Siebel. SAP TN admitted to discussing those terms and using them for example as reference materials. In short, SAP cannot credibly claim ignorance of Oracle's access rules.

107. Notwithstanding SAP's knowledge of Oracle's license agreements with its customers, the support website terms of use, and the confidential, proprietary, and copyrighted nature of Oracle's Software and Support Materials, Oracle learned that SAP TN accessed and downloaded the Software and Support Materials when it either had no legitimate basis to access Oracle's restricted website, or in a way that grossly violated the limited access rights it did have. Further, during the period of time between when the customer's support license lapsed and when Oracle decommissioned the customer's password credentials, SAP TN *still* accessed and downloaded Software and Support Materials using the old customer passwords. SAP TN did so despite its knowledge that it had no legal right or legitimate purpose to access Oracle's system *at all* after the customer's support license lapsed.

108. SAP TN did not innocently download the Software and Support Materials – the purpose was to copy them from customer support websites and store them on SAP TN's servers for later use in marketing and providing support services to Oracle customers. The rate that SAP TN accessed many of these materials – at intervals of just seconds or less – shows that no one reviewed them in real time. Further, the scope of the downloaded Software and Support Materials – across *multiple* libraries in *multiple* lines of business – for customers that had no license to take, or need for, those products, suggests that SAP TN took the Software and Support Materials to stockpile a library to support its present and prospective customers.

109. SAP TN's internal documents confirm that, in at least one instance, its

of the nature and extent of SAP's theft, Oracle sets forth below illustrative instances of SAP TN's illegal conduct regarding several of its customers.

112. **Honeywell.** Honeywell International ("Honeywell") is listed on SAP TN's website as a client. In the approximately three and a half year period before Honeywell switched to SAP TN, it averaged just over 20 downloads of Software and Support Materials per month. Then, after switching to SAP TN, a user employing Honeywell's log-in ID downloaded at least 7,000 Software and Support Materials in less than two weeks in January 2007. Most of these excessive downloads came during the course of *four days*, during which "Honeywell" was downloading almost *1800 solutions per day*. At least 2,000 of the Software and Support Materials taken in this period were solutions that Honeywell was not licensed to take at all. In one specific library containing solutions for Enterprise One software, "Honeywell" downloaded at least 450 distinct unlicensed solutions on January 16, 2007 and nearly 400 more the next day. These downloads spanned virtually every library in every line of business – far beyond the products to which Honeywell had authorized access as an Oracle customer. This unlawful downloading even stretched across product families. Honeywell used and licensed PeopleSoft software applications, but Oracle discovered users downloading JDE products with Honeywell's credentials. Oracle subsequently connected many of the illegal downloads to an SAP TN IP address and to SAP TN's employee, Wade Walden – a former PeopleSoft employee now employed by SAP.

113. **Merck.** Merck & Company, Inc. ("Merck"), one of the largest pharmaceutical companies in the world, licenses and receives support for many Oracle software products. Merck's support rights for its JDE software products expired on January 1, 2007. In the three months prior to that date, users purporting to be "Merck" logged into the Oracle support system and downloaded at least 5,500 distinct Software and Support Materials for JDE software. At least 2,800 of these downloads related to JDE software products for which Merck had no license. But, the unauthorized downloads did not stop there. Users logging into Oracle's support system with Merck's credentials continued to download Software and Support Materials into March 2007. Many of these "Merck" downloads came directly from an IP address in Bryan,

Texas that belongs to SAP TN, and some were traced to a computer with SAP TN's initials in the title, "TN-DL03." In many cases, SAP TN users employed fake identification information to download the Software and Support Materials, using names such as "xx" "ss" and "NULL," and phone numbers such as "4444444444" and "999 999 9999." Neither Merck nor SAP TN had any license, authorization or other right to access and download the 2,800-plus unlicensed Software and Support Materials from Oracle.

114. **OCE.** OCE-Technologies B.V. ("OCE") is located in the Netherlands and appears as a customer on SAP TN's website. In the months leading up to the expiration of OCE's support rights for its Oracle products, users employing OCE's credentials downloaded a large number of Oracle products relating to US Payroll, Canadian Payroll, Homebuilder Management, and Real Estate Management – none of which make sense for a European customer supporting its European business. From December of 2006 to January of 2007, SAP TN users logged into Oracle's support system using OCE's credentials (and, in some cases, false user names) and downloaded at least 5,600 distinct Software and Support Materials. These downloads included at least 1,800 distinct items for which OCE had no license. There is little chance that SAP TN intended OCE as the beneficiary of these massive sweeps, since OCE does not run many of the software programs to which these downloads relate, and neither OCE nor SAP TN have any license, authorization, or other right to access and download these Software and Support Materials. Like the other companies, these illegal downloads are associated with the same IP address belonging to SAP TN in Bryan, Texas, including specifically to a computer with SAP TN's initials in the title, "TNL-02." Similar to the other customer examples, many of these "OCE" users entered phony identification information, such as the name "user" and phone numbers such as "123 456 7897," "9999999999," and even "xxx xxx xxxx." This systematic sweep of products across numerous licensed and unlicensed Oracle product lines and libraries dramatically exceeded the access for which OCE (and SAP TN acting on its behalf) had any right or authority, and could serve no legitimate or lawful business purpose.

115. **SPX.** SPX Corporation ("SPX") dropped all Oracle support on December 10, 2006 and became an SAP TN customer, listed on SAP TN's website. For the nine month

period prior to October 2006, SPX averaged approximately eleven downloads per month from Oracle's support system. Then, between October and December 2006, users purporting to represent SPX accessed and downloaded at least 9,000 distinct Oracle Software and Support Materials (far more than SPX could legitimately access or use). These SPX downloads included at least 1,500 distinct Software and Support Materials for which SPX had no license. At least 200 distinct downloads just on December 9, 2006 were Software and Support Materials related to unlicensed Payroll software. In some cases, these users logged in using SPX credentials, but used fake identification information like the name "NULL" and phone numbers like "7777777777" and "999 999 9999." Many of these SPX downloads, like the others, originated from the same IP address belonging to SAP TN, and some were traced to a computer with SAP TN's initials in the title, "tn-wts01."

116. **Metro Machine.** Metro Machine Corp. ("Metro Machine") dropped all Oracle support effective on January 1, 2007 and switched to SAP TN, as reflected on SAP TN's website. In the month before Metro Machine dropped its support rights with Oracle, users purporting to represent Metro Machine logged onto Oracle's support servers and downloaded at least 600 distinct Software and Support Materials. At least 50 of those downloads related to software programs that Metro Machine had not licensed from Oracle. In addition, users logging into Oracle's support system with Metro Machine's credentials continued to download Software and Support Materials into March 2007. Oracle has traced these illegal and unauthorized downloads to the same SAP TN IP address employed for the other downloads described above.

117. **Yazaki.** Yazaki North America, Inc. ("Yazaki") is a large supplier of automotive products headquartered in Michigan. It dropped all Oracle support effective on January 3, 2007. In the month leading up to the expiration of Yazaki's support rights for its Oracle products, users employing Yazaki's credentials downloaded an enormous number of Oracle Software and Support Materials relating to Canadian Payroll, Homebuilder Management, and Real Estate Management, and many other software products, which make no sense for a U.S. automotive supply company supporting its U.S. business. In two weeks, from December 15, 2006 to December 29, 2006, SAP TN users logged into Oracle's support system using Yazaki's

allegations of paragraphs 1 through 125, 134 through 153, and 169 through 226 of this Complaint as though fully set forth here.

228. Since at least September 2006, Defendants have obtained business through the use of unlawful conduct including, but not limited to:

(a) Breaching the agreements governing access to or use of Oracle's customer support websites;

(b) Intentionally and/or negligently interfering with Oracle USA's, OIC's and OEMEA's prospective economic advantage with its existing and potential customers;

(c) Improperly, willfully, and unlawfully taking commercial advantage of the investment in its Software and Support Materials by Oracle entities including Oracle USA, OIC, OEMEA, and SSI, for the purpose of sabotaging Oracle USA's, OIC's, OEMEA's, and SSI's ability to do business and compete in the market; and,

(d) Fraudulently accessing and intentionally trespassing on Oracle USA's password-protected customer support websites, without authorization or consent, in furtherance of their unlawful and deceptive scheme as described above.

229. Defendants have received money as a result of their misconduct, at the expense of Oracle USA, OIC, OEMEA, and SSI, and some or all of such money is rightfully due to Oracle USA, OIC, OEMEA, and SSI.

230. The amount of money due from Defendants to Oracle USA, OIC, OEMEA, and SSI is unknown to Oracle USA, OIC, OEMEA, and SSI and cannot be ascertained without an accounting of the income and gross profits Defendants have obtained through their wrongful and unlawful conduct. Oracle USA, OIC, OEMEA, and SSI are entitled, therefore, to a full accounting.

## Prayer For Relief

WHEREFORE, Oracle respectfully prays for the following:

A. For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them, from the following:

Case3:07-cv-01658-PJH Document471-6 Filed08/18/09 Page75 of 75

DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., and Siebel Systems, Inc. demand a trial by jury on all issues triable by a jury.

DATED: August 18, 2009

BINGHAM McCUTCHEN LLP

By: ______________________
Geoffrey M. Howard

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., Oracle EMEA Ltd., and Siebel Systems, Inc.