BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7144
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation,
Oracle EMEA Limited, and Siebel Systems, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*, <br><br> Plaintiffs, <br> v. <br> SAP AG, *et al.*, <br><br> Defendants. | No. 07-CV-01658 PJH (EDL) <br><br> **ORACLE'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR ADMISSIONS** <br><br> Judge:  Hon. Elizabeth D. Laporte |

A/73309866.8/2021039-0000324170

## I. INTRODUCTION

The Court's February 12, 2010 Order (Dkt. 633, "Order") granted in part Oracle's motion to compel further responses to its requests for admission ("RFAs"). The Court ruled that many of Defendants' responses to the RFAs were "essentially non-responsive and evasive." Order at 10. The Court mostly rejected Defendants' burden argument "because Defendants have had other opportunities to provide this information in a less burdensome way and refused to do so." *Id*. at 13. In particular, the Court ruled that Defendants could not evade Oracle's RFAs by switching the level of granularity in their answer from what was asked in the question. The Court ruled that if Oracle asked about "fixes," Defendants could not answer in terms of smaller components – "objects" – that are combined together to provide the functionalities of the fixes because that dodged the substance of the RFA and was evasive and non-responsive. *Id*. at 10.

Following the hearing on Oracle's motion and extensive further meet and confer, Defendants served amended RFA responses on February 15 and 22. *See* Hixson Decl., Exs. A-C, filed herewith. Although some of Defendants' responses comply with the Court's Order and the guidance the Court provided at the January 26, 2010 hearing on Oracle's motion, other responses continue the same evasive pattern and do not comply with the Court's rulings. Whereas before when Oracle asked about fixes Defendants answered about objects, now in other RFAs where Oracle asks about objects, Defendants answer in terms of fixes or "bundles" (which are collections of fixes), a doubly non-responsive answer. In addition, in the RFAs where Oracle asks about fixes, Defendants continue to refuse to answer about fixes. Also, other amended RFA responses violate the Court's guidance because they are unintelligible, illogical (including because they contradict mirror questions asked elsewhere), or leave nearly half the RFA unanswered. Accordingly, Oracle requests that the Court order Defendants to answer the RFAs at issue or deem them admitted.

### A. The RFAs Ask About A List of Objects, But Defendants Answer About A List of Bundles

Several RFAs ask Defendants to admit that the 33,186 objects listed in Exhibit D attached to the RFAs were created or tested in a certain way. RFAs, Set 3, Nos. 17-20, 32, 34,

1 44, 47 (Hixson Decl., Ex. A, pp. 7-10, 16-18, 23-24, 25-26).  Others ask Defendants to admit that
2 they lack information that the 33,186 objects in Exhibit D were not created or tested in that way.
3 RFAs, Set 5, Nos. 134-37, 149, 151 (Hixson Decl., Ex. B, pp. 60-64, 74-77).  For example, RFA
4 No. 18 in Set 3 asks:  "For each item 1-33186 *on Exhibit D*, admit that, if a Copy of the listed
5 Fix Object was tested, a Copy of the listed Fix Object was tested using a Generic Environment."
6 Hixson Decl., Ex. A, p. 8 (emphasis supplied).  The referenced Exhibit D is a 973 page
7 spreadsheet listing 33,186 objects by "file or folder," "recipient," and "fix object."  *See*
8 Declaration of Chad Russell, filed Dec. 11, 2009, in support of Oracle's motion to compel (Dkt
9 574-3), Ex. X.  The purpose of these RFAs is to establish that SAP TN had development and
10 testing processes that were common for many thousands of objects, so that at trial proof of
11 infringement can be presented in an aggregated way, rather than individually for each object.
12        Defendants' answers to these RFAs are evasive because they do not admit or deny
13 in terms of the list of objects in Exhibit D.  Instead, Defendants switch the level of granularity –
14 the tactic rejected by the Court already – and respond in terms of a one-page list of bundles of
15 *fixes* (not objects) that Defendants attach as Exhibit A to their responses.  Again using RFA No.
16 18 as an example, Defendants respond:  "ADMITTED for the vast majority of fix objects that are
17 contained *in retrofit bundles listed in the first two columns of Exhibit A* attached hereto.
18 DENIED for the majority of the remaining fix objects that are not covered by Defendants'
19 admission in the preceding sentence."  Hixson Decl., Ex. A, p. 8 (emphasis supplied).
20        A jury could not read Defendants' response and understand what they have
21 admitted or denied.  Objects are the software programs that are combined together to provide
22 some functionality in a fix, and several fixes may combine into a bundle.  The first two columns
23 in Defendants' Exhibit A are a list of 75 bundles, but they do not list what fixes are in each
24 bundle, and certainly not what objects are in each fix in each bundle.  *See* Hixson Decl., Ex. A
25 (at Ex. A to Defs.' Responses).  Looking at Exhibit A, the jury will not be able to tell if
26 Defendants have admitted these RFAs for the vast majority, majority, some, or few of the 33,186
27 objects.  By changing the level of granularity from objects to fixes to bundles, Defendants have
28 evaded the RFAs and provided unintelligible responses.

1    The Court has rejected Defendants' burden argument with respect to the 33,186 fix objects and ruled that if Defendants do not want to undertake a file-by-file analysis, they may admit the RFAs for the "vast majority" of the files. Order at 13-14. Here, Defendants have not followed the Court's guidance. Further, the partial admission they did make is incomprehensible because it does not respond to the question Oracle asked.

### B. The RFAs Ask About Fixes and Updates, But Defendants Answer In Terms of "Components"

The granularity switch returns in other RFA responses. The Court ruled Oracle can ask questions at the fix or update level and that Defendants must respond. Order at 10-11. The Court ruled that "Defendants' response[s] . . . which are directed at objects rather than fixes or updates as stated in the Request itself, are essentially non-responsive and evasive." *Id*.

In several of their amended responses, Defendants continue to refuse to answer about fixes and updates. Now, instead of couching their answers in terms of "objects" – which they previously contended were the smallest component of customer deliverables – they use the word "component." This problem occurs in Defendants' amended responses to RFAs Nos. 577-579, 600-602, 604-606, 608-610, 612-614 and 667-668 in Set 2 (Hixson Decl., Ex. C, pp. 64-66, 80-92, 129-131). Theses answers are no different from what Defendants did before, just with a different word that has less meaning than before. RFA No. 577 is a good example. It asked:

> Admit that for the majority of Fixes and Updates listed in Exhibit B, TN identified some set of Customers to whom it would deliver the Fix or Update and determined whether one Fix or Update could be Developed for all such Customers on the release, or whether TN needed to split the Customers on that release into sub-groups (sometimes referred to at TN as "source groups").

Defendants' amended response is: "ADMITTED for at least one component in the majority of the listed fixes or components." Hixson Decl., Ex. C, pp. 64-65.

That response is evasive. Oracle submitted the testimony of Catherine Hyde in support of its motion to compel. Hyde testified about Defendants' process of creating fixes, and as the Court observed, she "testified without clarification about fixes." Order at 10 (quoting Hyde's testimony). Changing the word "object" to "component" does not comply with the Court's order. The Court's ruling was that Oracle can ask questions at the fix level because of

1  the evidence showing that Defendants' witnesses – including the one they chose to use as a
2  declarant in opposing Oracle's motion, Ms. Hyde – understand what fixes are.  Defendants'
3  attempt to shift focus to "the smallest component" of the fix is "essentially non-responsive and
4  evasive."  *Id.*[1]

5  Defendants' responses are also unintelligible.  It is difficult to understand what
6  their response to RFA No. 577 means.  The RFA asked Defendants to admit that for most of the
7  listed fixes, SAP TN identified some set of customers to whom it would deliver the fix and
8  determined whether one fix could be developed for all such customers on the release.  When
9  Defendants admit "for at least one component in the majority of the listed fixes or components,"
10 what are they admitting?  Did they identify a set of customers for each fix and determine whether
11 one fix could be developed for all those customers, or not?  Are they denying this was the
12 business process they used?  And what is a "component"?  Is it a synonym for "object," which
13 the Court ruled was evasive and non-responsive?  Does it mean something else?  Oracle used the
14 terms "fixes" and "updates" in its RFAs because Defendants' documents speak in those terms
15 and their witnesses understand and use them (and the failed stipulation urged by the Court also
16 spoke in those terms).  The jury will not understand the undefined word "component," nor how it
17 relates to the fixes and updates Oracle asked about.

18  **C.   The Response Is Unintelligible Because It Incorporates Vague Testimony By Reference And Does Not Answer The RFA**

19
20 Other responses are equally unintelligible, such as Defendants' amended response
21 to RFA No. 11 in Set 5.  The RFA asked about one thing and Defendants answered about
22 something else.  Specifically, this RFA asked Defendants:  "For each file located in AS/400

---

[1] At the hearing, the Court stated that "I don't know whether Oracle could change this to something like 'Admit that for some fixes or updates or the components thereof,' or something like that."  Jan. 26, 2010 Transcript at 47:8-11.  The Court went on to state:  "But I am telling you I mostly agree with Oracle.  I very little agree with you.  . . . I think mostly what's happening is those are being used to leverage giving evasive and unhelpful answers.  That's my view of this."  *Id*. at 47: 23-48:3.  Oracle did not revise its RFAs to ask about "components" because Defendants' documents and witnesses talk about fixes and updates.  These RFAs ask about SAP TN's process for developing and testing fixes and updates.

1 World Partition, as identified in Defendants' responses to Interrogatory 11 from Oracle Corp.'s
2 first set, admit that the file was originally downloaded from an Oracle website by SAP TN."
3 Hixson Decl., Ex. B, p. 12. Defendants' amended response is: "ADMITTED for materials that
4 TomorrowNow downloaded and subsequently moved to the AS/400 as described by Patti Von
5 Feldt at pages 10:14-11:13 and 14:7-15 of her April 10, 2009 deposition. DENIED for the vast
6 majority of the files not covered by the admission in the preceding sentence." *Id*.

7 Oracle submits to the Court the cited pages of Von Feldt's deposition testimony.
8 Hixson Decl., Ex. D. The witness testified that TomorrowNow downloaded materials from
9 Oracle's support website, that "[s]ome of them were moved to the AS/400," *id*. at 10:22, and that
10 this happened for "[p]robably all of" the product lines, *id*. at 11:10. And that is all she said in the
11 referenced pages. Von Feldt did not express any opinion on whether all, the vast majority, most,
12 some, or few of the files in the AS/400 World Partition were originally downloaded from an
13 Oracle website. There is no way a jury could read Defendants' response to RFA 11 and
14 understand what they have admitted or denied.

15 **D. Certain of Defendants' Denials Conflict With Other Admissions**

16 As the Court will recall, some of Oracle's RFAs asked about SAP TN's business
17 processes in two steps. In the first set, Oracle asked Defendants to admit that SAP TN did
18 something. *E.g.*, RFA 4, Set 5 (Hixson Decl., Ex. B, p. 6). When Defendants answered by
19 saying they did not have enough information to say, Oracle then asked in a follow-up set for
20 Defendants to confirm that they lack information that SAP TN did *not* do that something. *E.g.*,
21 RFA 34, Set 5 (Hixson Decl., Ex. B, p. 31). The two types of RFAs ask different things, but
22 there is obviously a relationship between them. In the first, Oracle is asking Defendants to admit
23 that something happened. Those RFAs seek substantive evidence that can be shown to a jury. In
24 the second, Oracle is asking Defendants to admit that at the very least they do not have any
25 information to the contrary. These RFAs will be useful at the motion in limine stage to stop
26 Defendants from showing up at trial with evidence they did not produce in discovery that they
27 claim exonerates them.

28 In their amended responses, Defendants now admit many of the first type of

1  RFAs.  In other words, despite what they swore previously, now they apparently do have

2  sufficient information to agree that SAP TN committed the act in question.  But in the follow-up

3  RFAs, they turn around and claim they have information that SAP TN did not really commit the

4  act in question.  Oracle is concerned that Defendants are signaling that at trial they intend to

5  impeach their own admissions, undoing the whole point of these RFAs.  This problem

6  unfortunately occurs in nearly all of Defendants' responses to the follow up RFAs.  *See* RFAs,

7  Set 5, Nos. 34-39, 41-63, 130-144, 146, 148-152, 154, 157, 159-161 (Hixson Decl., Ex. B, pp.

8  31-80, 82-86).

9         RFAs 4 and 34 in Set 5 illustrate this problem.  RFA 4 asked: "For each file

10  located in DCITBU01_G\JDE\JDE Delivered Updates and Fixes, as identified in Defendants'

11  responses to Interrogatory 11 from Oracle Corp.'s first set, admit that the file was originally

12  downloaded from an Oracle website by SAP TN."  Hixson Decl., Ex. B, p. 6.  Defendants

13  responded: "ADMITTED for the vast majority."  *Id*. at p. 6.  That response means that for the

14  vast majority of those files, Defendants admit that the file was originally downloaded from an

15  Oracle website by SAP TN.

16         RFA 34 is the follow up: "For each file located in DCITBU01_G\JDE\JDE

17  Delivered Updates and Fixes, admit that after a reasonable inquiry Defendants ***lack*** sufficient

18  readily obtainable information to determine that the file was ***not*** originally downloaded from an

19  Oracle website by SAP TN."  Hixson Decl., Ex. B, p. 31 (emphasis supplied).  For the response

20  to RFA 34 to logically line up with the response to RFA 4, Defendants would have to admit for

21  the vast majority.  Instead, they respond: "DENIED."  *Id*.  That response means that Defendants

22  claim to *have* information that the file was *not* originally downloaded from an Oracle website by

23  SAP TN.  Paraphrasing slightly, RFA 34 asks: "We think you did this.  Admit you don't have

24  any contrary evidence."  And Defendants refuse to admit that, despite having already admitted

25  they did it the "vast majority" of times.

26         This raises the question: Which answer is the truth?  The responses to RFAs 4

27  and 34 cannot both be true.  If SAP TN did the act in question, then Defendants do not have

28  contrary information.  This problem comes up in Defendants' responses to RFAs Nos. 34-39, 41-

1  63, 130-144, 146, 148-52, 154, 157, and 159-161 in Set 5.  Hixson Decl., Ex. B, pp. 31-80, 82-

2  86.  In every case, Defendants admit something happened (*see* responses to RFAs, Set 5, Nos. 4-

3  9, 11-33 (Hixson Decl., Ex. B, pp. 6-31), and to RFAs, Set 3, Nos. 13-27, 29, 31-35, 38, 42, 44,

4  46-47 (Hixson Decl., Ex. A, pp. 5-18, 20, 22-26)), then turn around and claim they have

5  information it didn't happen.[2]

6  These responses are confusing and illogical and do not comply with the Court's

7  Order.  The Court suggested that Oracle might amend its follow up RFAs to ask Defendants to

8  admit that they lack knowledge of *whether or not* SAP TN committed the act in question, as a

9  method of lessening burden if Defendants do not want to perform a file-by-file analysis.  Order

10 at 14.  That would indeed address Oracle's concern about Defendants' showing up at trial with

11 evidence they refused to provide in discovery.  However, Oracle does not believe that admissions

12 in response such an RFA would be truthful – as Defendants have now confirmed by admitting in

13 the initial RFAs that SAP TN did commit the act in question for the vast majority of files.  If

14 Defendants have enough knowledge to admit the truth of the initial RFAs, that means they do

15 know what happened.  Defendants admit the conduct occurred, but their responses to the follow

16 up RFAs, at least as written, claim they still have contrary information.

17 The purpose of an RFA is to streamline the presentation of evidence at trial.  *See*

18 Fed. R. Civ. Proc. 36, Adv. Comm. Note, 1970 Amend.  That is especially important here, where

19 Oracle was forced to propound RFAs addressing SAP TN's processes for developing and testing

20 fixes and updates because Defendants refused to enter into a stipulation concerning SAP TN's

21 business processes.  *See* Order at 13-14.  Defendants initially evaded nearly all of Oracle's RFAs

22 about SAP TN's business processes and provided meaningful answers only under Court order.

23 Now they are still trying to keep open the back door by refusing to admit they lack exonerating

---

[2] Sometimes the admission that SAP TN did something is qualified in the response to the initial RFA, for example, by admitting only as to certain types of files.  In every case, Defendants respond to the follow up RFA by claiming they have information undermining exactly the scope of what they admitted in response to the initial RFA.  *Compare* RFA, Set 3, No. 15 (Hixson Decl., Ex. A, pp. 6-7) *with* RFA, Set 5, No. 132 (Hixson Decl., Ex. B, pp. 58-59).

1 information that presumably they will later contend undermines their admissions. The Court
2 should not allow that. An admission is supposed to establish a fact. Fed. R. Civ. Proc. 36(b). If
3 Defendants admit that SAP TN did something, they cannot in good faith claim they have
4 information that SAP TN did not do it, and then at trial attempt to impeach their own admissions.
5 The proper remedy at this point is for the Court to order these RFAs admitted. Fed. R. Civ. Proc.
6 36(a)(6); 37(b)(2)(A)(i).

### E. Defendants Do Not Answer Nearly Half The RFA

Several of Oracle's RFAs asked Defendants to admit that "for each item" or "for each file" in a list of fix objects or files, Defendants committed a particular act in the course of developing, testing or obtaining the items or files. In their prior responses, Defendants refused to answer any of those RFAs, citing burden, because the lists were long. As noted above, the Court overruled the burden objection "because Defendants have had other opportunities to provide this information in a less burdensome way and refused to do so." Order at 13.[3] The Court did, however, give Defendants an option if they did not want to undertake a file by file analysis, which they claim is burdensome: "the Court recommends adding another category, 'vast majority,' that Defendants can use to quantify their responses." *Id*. at 14.

In several of their amended responses, Defendants declined the Court's recommendation and instead admitted as to the "majority" or "approximately half" of the files in question. For example, RFA No. 16 in Set 3 asks Defendants: "For each item 1-33186 on Exhibit D, admit that a Copy of the listed Fix Object was tested using a local Environment that did not solely consist of an installation from, a Copy of, or an installation from a Copy of software received from or on behalf of the recipient stated for the respective item." Hixson Decl., Ex. A, p. 7. Defendants' amended response is: "ADMITTED for the majority." *Id*. Defendants take the same approach in RFAs Nos. 15, 21-23, 25-27 in Set 3 (Hixson Decl., Ex. A, pp. 6-7, 10-14) and RFAs Nos. 6, 36, 132-40 and 142-44 in Set 5 (Hixson Decl., Ex. B, pp. 7-

---

[3] Indeed, the fact that Defendants now do answer as to "vast majority" only proves they could have stipulated 18 months ago to the facts at issue when the Court first made that suggestion.

1  8, 32-33, 58-71).  In each case, they admit or deny for a "majority," "approximately half," or
2  (where the RFA is phrased in the negative) a "minority" of the files, or categories of files.
3  Those responses are deficient because they leave as much as 49% of the RFA
4  unanswered.  And the Court told Defendants they may not do this.  At the January 26 hearing on
5  Oracle's motion to compel, the Court stated that "maybe the way to avoid the burden but not is --
6  and what I have a feeling is probably true, admit that it is likely that the vast majority of the files
7  were obtained . . ."  Tr. at 60:19-22.  Defendants responded:  "And we've admitted that, I think,
8  Your Honor, or *not vast majority but certainly admitted majority*."  *Id*. at 61:4-6 (emphasis
9  supplied).  The Court said that was not adequate:  "Right, *but that's what I'm saying*.  In other
10  words, you know, *majority still leaves potentially 49 percent*.  So what I'm saying is, isn't it true
11  that the vast majority."  *Id*. at 61:7-10 (emphasis supplied).  The Court then stated at the hearing,
12  and held again in its Order, that a "vast majority" admission would be sufficient.  *Id*. at 61:14-18;
13  Order at 14.  Defendants have not complied with the Court's order or the guidance at the hearing.
14  In the meet and confer following the Court's Order, Defendants made an illogical
15  defense of these "majority" admissions that relies on a misreading of other RFAs and
16  admissions.  Here is Defendants' argument:
17  *Step One*.  These "majority" admissions all occur in the series of RFAs discussed
18  above where Oracle first asked Defendants to admit that SAP TN did something, then asked
19  them to admit they have no information to the contrary.  RFA 6 in Set 5 illustrates this.  It asked
20  Defendants:  "For each file located in DCDL1-2 and DCDL4-20, as identified in Defendants'
21  responses to Interrogatory 11 from Oracle Corp.'s first set, admit that the file *was* originally
22  downloaded from an Oracle website by SAP TN."  Hixson Decl., Ex. B, p. 7 (emphasis
23  supplied).  Defendants' amended response is:  "ADMITTED for the majority."  *Id*. at 8.  Thus,
24  Defendants are stating that *most* of the files in those locations were indeed downloaded from an
25  Oracle website by SAP TN.
26  *Step Two*.  The follow up RFA is No. 36.  It asks Defendants to admit:  "For each
27  file located in DCDL1-2 and DCDL4-20, as identified in Defendants' responses to Interrogatory
28  11 from Oracle Corp.'s first set, admit that after a reasonable inquiry Defendants lack sufficient

1 readily obtainable information to determine that the file *was not* originally downloaded from an
2 Oracle website by SAP TN." Hixson Decl., Ex. B, p. 32 (emphasis supplied). Defendants'
3 amended response is: "ADMITTED for the minority." *Id*. at 33. Thus, Defendants are saying
4 that for *some* of those files, they have no information showing the file was not downloaded.
5    *Step Three*. Defendants assert that between RFAs 6 and 36, they covered all the
6 files, because in RFA 6 they admitted for the majority, and in RFA 36 they admitted for the rest.
7    However, that is wrong because Defendants' answers are self-contradictory and
8 do not answer what was asked. If Defendants admit in response to RFA 6 that the *majority* of
9 the files were downloaded, then their response to RFA 36 should state that for the *majority* of the
10 files they have no information to suggest they were not downloaded. Their existing response to
11 the follow up RFA is incompatible with the earlier admission. Moreover, at no point do
12 Defendants actually respond regarding the 49% of the files they did not admit to in RFA 6.
13    This problem exists in all of these "majority" admission RFAs. The initial
14 admission leaves up to 49% of the RFA unanswered. And the answer to the follow up RFA both
15 contradicts the earlier admission and does not tell us about the remaining 49%. These evasive
16 answers do not comply with the Court's Order, and the Court may deem them admitted or order
17 further responses.

18 **II.   CONCLUSION**
19    The Court should order Defendants to amend their responses to RFAs, Set 2, Nos.
20 577-579, 600-602, 604-606, 608-610, 612-614, 667-668; Set 3, Nos. 15-23, 25-27, 32, 34, 44,
21 47; and Set 5, No. 6, 11, 34-39, 41-63, 130-144, 146, 148-152, 154, 157, 159-161, to comply
22 with the Court's February 12 Order.

23
24 DATED: March 5, 2010              Bingham McCutchen LLP

25
26                                   By:        /s/ Geoffrey M. Howard
                                              Geoffrey M. Howard
27                                  Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                    International Corporation, Oracle EMEA Limited, and
                                              Siebel Systems, Inc.
28