Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:     (650) 739-3939
Facsimile:     (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:     (832) 239-3939
Facsimile:     (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SAP AG, et al.,<br><br>                    Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' NOTICE OF CROSS MOTION, CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  May 5, 2010, Time:  9:00 a.m.<br>Courtroom: 3, 3rd Floor<br>Judge: Hon. Phyllis J. Hamilton<br><br>*REDACTED PUBLIC VERSION*<br>*LODGED PURSUANT TO L.R. 79-5(c)(5)* |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.    OIC DOES NOT HAVE STANDING TO SUE FOR PRE-MARCH 1, 2005
       INFRINGEMENT OF THE PEOPLESOFT AND JDE COPYRIGHTS ......................... 2

       A.    OIC Did Not Own the PeopleSoft and JDE Copyrights Before March 1,
             2005 ..................................................................................................................... 2

       B.    OIC Never Received a Valid Transfer of the Right to Sue for Pre-March 1,
             2005 Infringement of the PeopleSoft and JDE Copyrights ................................... 3

III.   COPYRIGHT ISSUES RAISED IN PLAINTIFFS' MOTION ........................................ 4

       A.    SAP Is Not Liable for Contributory Copyright Infringement ............................... 4

             1.    Plaintiffs Misstate the Legal Standard for Contributory
                   Infringement ................................................................................................. 5

             2.    Plaintiffs Have Not Adduced Sufficient Evidence to Prove
                   Contributory Infringement of the HRMS Registrations ........................... 7

             3.    Plaintiffs Have Not Adduced Sufficient Evidence to Prove
                   Contributory Infringement of the Database Registrations ....................... 7

       B.    Plaintiffs Are Not Entitled to Summary Judgment Dismissing Defendants'
             Second and Third Affirmative Defenses Relating to Licensed Use ...................... 9

             1.    To Establish Infringement, a Plaintiff Must Prove Copying Beyond
                   the Scope of an Applicable License ............................................................ 9

             2.    Plaintiffs Offer No Evidence that Alleged Copying of Registered
                   Works Beyond the Six Identified in the Motion Exceeded the Scope
                   of the Licenses Governing Their Use ....................................................... 10

       C.    A Ruling Regarding the Copyright Registrations Asserted in Plaintiffs'
             Motion Should Not Serve as a Template for Litigating the Rest of this Case ..... 11

IV.    CFAA AND CDAFA ISSUES RAISED IN PLAINTIFFS' MOTION .......................... 14

       A.    Plaintiffs Are Not Entitled to Summary Judgment for Their CFAA Claims
             Arising under 18 U.S.C. §§ 1030(a)(5)(A)(i)-(iii) .............................................. 14

             1.    Plaintiffs Have Not Established the Required "Damage." ........................ 14

                   a.    There Is No Evidence that TN's Downloading Caused
                         "Damage" to Plaintiffs' Servers .................................................... 15

                   b.    REDACTED                          Is Not Cognizable
                         Damage. ........................................................................................ 16

                   c.    "Impairment" to the Confidentiality of Plaintiffs' Materials
                         Is Not Cognizable "Damage." ....................................................... 17

                   d.    Plaintiffs Have Admitted that There Is No Evidence of
                         Damage to Oracle's Systems ........................................................ 18

             2.    Plaintiffs Have Not Established "Intent to Damage" as Required
                   under 18 U.S.C. § 1030(a)(5)(A)(i) .......................................................... 19

       B.    SAP Is Not Indirectly Liable under the CFAA or the CDAFA for TN's
             Allegedly Wrongful Conduct .............................................................................. 20

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

      1.    To Prove Indirect Liability under the CFAA, a Plaintiff Must Show
              that the Defendant Directed the Violator's Wrongful Acts ...................... 20

4

      2.    Plaintiffs Fail to Present Evidence that SAP Directed TN's Access ........ 23

5

      3.    Plaintiffs Have Neither Raised SAP's Liability under the CDAFA,
              Nor Shown that SAP Directed TN's Wrongful Acts ................................ 24

6

V.      CONCLUSION ............................................................................................................. 25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)............................................................................ 6, 8, 9

*Binary Semantics Ltd. v. Minitab, Inc.*,
  No. 4:07-CV-1750, 2008 U.S. Dist. LEXIS 28602 (M.D. Pa. Mar. 20, 2008),
  *vacated in part on other grounds*, 2008 U.S. Dist. LEXIS 36575
  (M.D. Pa. May 1, 2008) .......................................................................................... 22

*Bourne v. Walt Disney Co.*,
  68 F.3d 621 (2d Cir. 1995)......................................................................................... 9

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) .............................................................. 22, 23

*Calence, LLC v. Dimension Data Holdings*,
  No. C06-0262RSM, 2007 U.S. Dist. LEXIS 38043
  (W.D. Wash. May 24, 2007).................................................................. 20, 21, 23, 24

*Cassetica Software, Inc. v. Computer Sci. Corp.*,
  No. 09 C 0003, 2009 U.S. Dist. LEXIS 51589 (N.D. Ill. June 18, 2009)................. 18

*Charles Schwab & Co. v. Carter*,
  No. 04 C 7071, 2005 U.S. Dist. LEXIS 21348 (N.D. Ill. Sept. 27, 2005)................. 22

*Condux Int'l, Inc. v. Haugum*,
  No. 08-4824 ADM/JSM, 2008 U.S. Dist. LEXIS 100949 (D. Minn. Dec. 15, 2008)... 16, 17, 18

*Cont'l Group, Inc. v. KW Prop. Mgmt., LLC*,
  622 F. Supp. 2d 1357 (S.D. Fla. 2009) .................................................................... 18

*Co-opportunities, Inc. v. Nat'l Broad. Co.*,
  510 F. Supp. 43 (N.D. Cal. 1981) ........................................................................ 3, 4

*Creative Computing v. Getloaded.com LLC*,
  386 F.3d 930 (9th Cir. 2004).................................................................... 14, 16, 17

*Czech v. Wall St. on Demand, Inc.*,
  No. 09-180 (DWF/RLE), 2009 U.S. Dist. LEXIS 114125 (D. Minn. Dec. 8, 2009) ............... 19

*Davenport v. Bd. of Tr. of State Ctr. Cmty. Coll. Dist.*,
  654 F. Supp. 2d 1073 (E.D. Cal. 2009)................................................................... 15

*De Silva Constr. Corp. v. Herrald*,
  213 F. Supp. 184 (M.D. Fla. 1962) ...................................................................... 3, 4

*Demetriades v. Kaufmann*,
  690 F. Supp. 289 (S.D.N.Y. 1988)............................................................................ 7

*Doe v. Dartmouth-Hitchcock Med. Ctr.*,
  Civil No. 00-100-M, 2001 U.S. Dist. LEXIS 10704 (D.N.H. July 19, 2001) ................... 20, 21

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
  No. 06-3359, 2009 U.S. Dist. LEXIS 30610 (N.D. Cal. Apr. 9, 2009) .............................. 20, 22

*eBay Inc. v. Digital Point Solutions, Inc.*,
  608 F. Supp. 2d 1156 (N.D. Cal. 2009) ................................................................. 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ed Brawley, Inc. v. Gaffney*,
   399 F. Supp. 115 (N.D. Cal. 1975) ............................................................... 3

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ............................................................... 5, 6

*Flast v. Cohen*,
   392 U.S. 83 (1968) ............................................................................... 9

*Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*,
   No. C 06-7028 MMC, 2008 WL 144693 (N.D. Cal. Jan. 10, 2008) ............ 9

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ................................................................. 6

*Garelli Wong & Assocs., Inc. v. Nichols*,
   551 F. Supp. 2d 704 (N.D. Ill. 2008) ................................................... 18

*Garland-Sash v. Lewis*,
   No. 05 Civ. 6827 (WHP), 2007 U.S. Dist. LEXIS 20909 (S.D.N.Y. Mar. 26, 2007),
   *aff'd in part, vacated in part, and remanded on other grounds,*
   348 Fed. Appx. 639 (2d Cir. 2009) ....................................... 21, 22, 23, 24

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
   556 F. Supp. 2d 1122 (E.D. Cal. 2008) ............................................. 14, 16

*Kalow & Springnut, LLP v. Commence Corp.*,
   No. 07-3442 (FLW), 2008 U.S. Dist. LEXIS 48036 (D.N.J. June 23, 2008) ....... 19, 20

*Lanard Toys Ltd. v. Novelty Inc.*,
   511 F. Supp. 2d 1020 (C.D. Cal. 2007) ................................................. 3

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ....................................................... *passim*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ............................................................................. 6

*Mintel Int'l Group, Ltd. v. Neergheen*,
   No. 08-cv-3939, 2010 U.S. Dist. LEXIS 2323 (N.D. Ill. Jan. 12, 2010) ....... 17

*Netbula, LLC v. Bindview Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ............................................ 9, 11

*Nexans Wires S.A. v. Sark-USA, Inc.*,
   319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006) ......... 22

*NLFC, Inc. v. Devcom Mid-America, Inc.*,
   No. 93 C 0609, 1993 U.S. Dist. LEXIS 16459 (N.D. Ill. Nov. 16, 1993) ....... 9, 10, 11

*Ortega v. Oakland*,
   No. C07-02659 JCS, 2008 WL 4532550 (N.D. Cal. Oct. 8, 2008) ............. 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ........................................................ 6, 8, 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ......................................................... 5, 6, 7

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ............................................................. 9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
   641 F. Supp. 2d 913 (N.D. Cal. 2009) ........................................................................... 9

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ......................................................................... 6, 7

*Republic of Nicar. v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) .................................................................................... 24

*Resdev, LLC v. Lot Builders Ass'n*,
   No. 6:04-cv-1374-Orl-31DAB, 2005 U.S. Dist. LEXIS 19099
   (M.D. Fla. Aug. 10, 2005) ........................................................................................ 18

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) ......................................................................... 21

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000) ........................................................... 17, 18

*Sun Microsys. Inc. v. Hynix Semiconductor Inc.*,
   622 F. Supp. 2d 890 (N.D. Cal. 2009) .......................................................... 5, 22, 23, 24

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .................................................................................... 2

*U.S. v. Nosal*,
   No. C 08-0237 MHP, 2010 U.S. Dist. LEXIS 24359 (N.D. Cal. Jan. 5, 2010) ........................ 14

*U.S. v. Shea*,
   493 F.3d 1110 (9th Cir. 2007) .............................................................................. 14, 17

*ViChip Corp. v. Lee*,
   438 F. Supp. 2d 1087 (N.D. Cal. 2006) ................................................................ 14, 17

**Statutes**

17 U.S.C. § 501 ........................................................................................................... 2

18 U.S.C. § 1030 .............................................................................................. *passim*

Cal. Penal Code § 502 ........................................................................................... 14, 24

**Rules and Other Authorities**

Federal Rule of Civil Procedure 26 ............................................................................ 15

Federal Rules of Evidence 602 ................................................................................. 15

Federal Rules of Evidence 701 ................................................................................. 15

Federal Rules of Evidence 702 ................................................................................. 15

Restatement (Third) of Agency, § 1:01 ...................................................................... 22

S. Rep. No. 104-357, at 11 (1996) ............................................................................ 18

Violent Crime Control and Law Enforcement Act of 1994,
   Pub. L. No. 103-322 .............................................................................................. 20

**NOTICE OF CROSS MOTION**

PLEASE TAKE NOTICE THAT on May 5, 2010 at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Phyllis J. Hamilton, 1301 Clay Street, Oakland, California, Courtroom 3, Defendants SAP AG, SAP America, Inc. (together, "SAP") and TomorrowNow, Inc. ("TN," and with SAP, "Defendants") will bring this cross motion for partial summary judgment ("Cross Motion"), pursuant to Federal Rule of Civil Procedure 56(c) and Civil Local Rules 7-2–7-5 and 56-1, against Plaintiffs Oracle USA, Inc. ("OUSA"), Oracle International Corp. ("OIC"), Oracle EMEA Ltd. ("OEMEA"), and Siebel Systems, Inc. (together, "Plaintiffs").  This Cross Motion is based on the Memorandum of Points and Authorities herein, the Declaration of Tharan Gregory Lanier, and exhibits attached thereto.

**RELIEF REQUESTED IN CROSS MOTION**

Summary judgment for Defendants dismissing OIC's claims for pre-March 1, 2005 copyright infringement of PeopleSoft and J.D. Edwards ("JDE") copyright registrations.

**CROSS MOTION AND OPPOSITION**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs seek billions of dollars in damages based on conduct by a company—TN—that never turned a profit and that Plaintiffs publicly proclaimed did them no harm.  They try to take a shortcut, arguing that their Rule 56 motion, which does not address the majority of the allegations in their 75-page complaint, is a "template" to adjudicate the rest of their allegations.  Yet, not only does Plaintiffs' Motion address only six of the 120 copyright registrations in this case, most of TN's conduct at issue occurred before SAP acquired TN.

As limited as it is, Plaintiffs' Motion should be substantially denied for four reasons.  SAP did not direct or induce TN's specific service conduct and thus is not contributorily liable for TN's alleged copyright infringement or indirectly liable for TN's alleged CFAA and CDAFA violations.  Defendants' second and third affirmative defenses should not be dismissed because Plaintiffs do not prove that TN's accused conduct was unauthorized by the hundreds of relevant customer licenses.  TN is not directly liable under CFAA subsections (a)(5)(A)(i)-(iii) because its conduct did not damage Plaintiffs' computer systems.  And OIC does not have the right to sue for

1    alleged pre-March 1, 2005 infringement of PeopleSoft and JDE registrations because the right to

2    sue for past causes of action was not properly transferred to OIC.  As set forth below, on these

3    issues Plaintiffs' Motion should be denied and Defendants' Cross Motion should be granted.

4    **II.      OIC DOES NOT HAVE STANDING TO SUE FOR PRE-MARCH 1, 2005
             INFRINGEMENT OF THE PEOPLESOFT AND JDE COPYRIGHTS**

5

6            Indisputably, OIC did not own the PeopleSoft or JDE copyrights before March 1, 2005.

7    Nor did an entity capable of transferring the right to sue for pre-March 1, 2005 infringement of

8    these copyrights transfer that right to OIC.  Thus, OIC may not sue for pre-March 1, 2005

9    infringement of the PeopleSoft or JDE copyright registrations asserted in Plaintiffs' complaint.

10           Contrary to Plaintiffs' claim, the attempt by former plaintiff OSC to retroactively transfer

11   the right to sue for pre-March 1, 2005 infringement was ineffective because OSC did not possess

12   that right and thus could not transfer it.  As the Court recognized in dismissing OSC, the

13   PeopleSoft and JDE entities that owned the copyrights before March 1, 2005 did not expressly

14   transfer their copyright claims to OIC or OSC before they merged into OSC.  *See* D.I. 224

15   (12/15/08 Order) at 7.  Thus, neither OSC nor OIC obtained the right to sue for pre-March 1,

16   2005 infringement from the now-dissolved companies.  Accordingly, OIC lacks standing to

17   pursue claims for pre-March 1, 2005 infringement of the PeopleSoft and JDE copyrights.  For

18   these reasons, Plaintiffs' Motion with respect to those claims should be denied and Defendants'

19   Cross Motion should be granted.

20           **A.      OIC Did Not Own the PeopleSoft and JDE Copyrights Before March 1, 2005.**

21           Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a

22   copyright is entitled . . . to institute an action for any infringement of that right while he or she is

23   the owner of it."  17 U.S.C. § 501(b); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d

24   1137, 1144 (9th Cir. 2008).  Before March 1, 2005, certain PeopleSoft and JDE entities, not OIC,

25   owned the PeopleSoft and JDE registrations.  *See* D.I. 201 (Opp. to Mot. to Dismiss) at 9.  As a

26   result, the right to sue for pre-March 1, 2005 infringement of these registrations accrued to those

27   PeopleSoft and JDE entities, not to OIC.  Thus, OIC may sue for pre-March 1, 2005 infringement

28   only if it received a valid transfer of the right to pursue those claims.

**B.     OIC Never Received a Valid Transfer of the Right to Sue for Pre-March 1, 2005 Infringement of the PeopleSoft and JDE Copyrights.**

Although accrued causes of action for copyright infringement are transferable, even Plaintiffs concede that "existing claims for infringement do not automatically transfer with the copyrights that gave rise to those claims." D.I. 201 (Opp. to Mot. to Dismiss) at 8. To assign existing copyright claims, a conveyance must be express. *See Co-opportunities, Inc. v. Nat'l Broad. Co.,* 510 F. Supp. 43, 46 (N.D. Cal. 1981) (holding that the "usual assignment of a copyright does not include an assignment of existing causes of action" absent an express assignment); *Ed Brawley, Inc. v. Gaffney,* 399 F. Supp. 115, 116 (N.D. Cal. 1975) (noting that "[u]nless the transfer agreement expressly provides otherwise," a copyright transfer does not include the right to sue on past infringements). This rule applies even in a merger context. *See Co-opportunities,* 510 F. Supp. at 46; *Lanard Toys Ltd. v. Novelty Inc.,* 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007); *De Silva Constr. Corp. v. Herrald,* 213 F. Supp. 184, 193 (M.D. Fla. 1962); D.I. 224 (12/15/08 Order) at 7. Thus, accrued copyright claims do not transfer simply "through merger." D.I. 201 (Opp. to Mot. to Dismiss) at 10.

The parties agree that the PeopleSoft and JDE entities that owned the copyrights before March 1, 2005 did not directly transfer their accrued copyright infringement claims to OIC, and there is no evidence that the right to sue for pre-March 1, 2005 infringement was ever properly transferred to OIC. On March 1, 2005, these PeopleSoft and JDE entities transferred the copyrights to OIC, after which they merged with and into OSC (then known as Oracle Corp.). *See* D.I. 201 (Opp. to Mot. to Dismiss) at 9; Declaration of Tharan Gregory Lanier in Support of Defendants' Cross Motion and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Lanier Decl.") ¶¶ 1-3, Exs. 1-3[1]. But these transfer agreements "did not transfer existing claims" to OIC. Instead, any pre-existing claims for infringement remained with the PeopleSoft and JDE entities to which the claims accrued. *See* D.I. 201 (Opp. to Mot. to Dismiss) at 9-10.

OIC claims that it received the right to sue for pre-March 1, 2005 infringement by virtue

---

[1] January 31, 2006 Oracle/Ozark Contribution, Assignment and Assumption Agreement; March 1, 2005 PeopleSoft/JDE LLC OIC Asset Transfer Agreement; and March 1, 2005 OIC Asset Transfer Agreement.

DEFS' NOTICE OF CROSS MOTION,
CROSS MOTION, AND OPPOSITION
Case No. 07-CV-1658 PJH (EDL)

1  of the July 10, 2009 Oracle IP Rights Transfer Clarification Agreement.  This agreement, drafted

2  years after the litigation and long after the Court's rulings, purports to retroactively transfer "the

3  right to sue for or otherwise enforce past, present and future infringement claims with respect to

4  the IP Assets" (including the PeopleSoft and JDE copyrights at issue).  D.I. 654 at §§ 1.1(a)-(b).

5  But OSC never had the right to sue for those claims in the first place.  As this Court found, none

6  of the Oracle inter-company agreements "establish that the right to sue for copyright infringement

7  was expressly transferred to OSC as a consequence of the various mergers."  D.I. 224 (12/15/08

8  Order) at 7.  Absent this express transfer, OSC, like OIC, never obtained the right to sue for pre-

9  March 1, 2005 infringement.  *See Co-opportunities*, 510 F. Supp. at 45-46 (holding plaintiff

10  lacked standing to sue for earlier-occurring infringement because its predecessor company did not

11  make a "specific assignment of accrued causes of action," despite having transferred "his various

12  copyrights . . . to plaintiff in exchange for stock in the new corporation"); *De Silva*, 213 F. Supp.

13  at 192 (finding plaintiff lacked standing to sue for copyright infringement that occurred when its

14  predecessor corporation owned the copyrights at the time of infringement but never expressly

15  granted plaintiff "any right to sue for infringements antedating the assignment").  Thus, OSC's

16  attempt to transfer to OIC the right to sue for pre-March 1, 2005 infringement of PeopleSoft and

17  JDE copyrights is futile.  Equally futile is OSC's attempt to transfer claims for pre-March 1, 2005

18  infringement on behalf of the acquired PeopleSoft and JDE entities, which Plaintiffs acknowledge

19  no longer exist.  *See* Lanier Decl. ¶ 28, Ex. 28 (11/26/08 Hr'g Tr.) at 18:13-19, 19:15-17.

20       In short, because the undisputed facts show that OIC did not receive the right to sue for

21  pre-March 1, 2005 infringement of any of the asserted PeopleSoft or JDE copyright registrations,

22  Plaintiffs' Motion for summary judgment with respect to OIC's claims for pre-March 1, 2005

23  infringement of the three PeopleSoft HRMS registrations should be denied, and Defendants'

24  Cross-Motion for summary judgment of non-infringement based on any conduct regarding all

25  asserted PeopleSoft and JDE registrations should be granted.

26  **III.    COPYRIGHT ISSUES RAISED IN PLAINTIFFS' MOTION**

27       **A.    SAP Is Not Liable for Contributory Copyright Infringement.**

28       Plaintiffs seek summary judgment for direct and vicarious copyright infringement of six

1    of 120 asserted registrations.[2]  Because the allegedly infringing conduct is at the margins and

2    does not address anywhere near the full scope of Plaintiffs' claims, this Opposition does not

3    contest that TN is directly liable for its conduct occurring after March 1, 2005 that is specifically

4    addressed in Plaintiffs' Motion or that SAP is vicariously liable (because SAP ultimately owned,

5    and therefore arguably controlled, TN) for this specific TN conduct.[3]  However, because SAP did

6    not induce, cause, or materially contribute to TN's alleged infringement, SAP is not liable for

7    contributory copyright infringement, and Plaintiffs' Motion should be denied to that extent.

8        Plaintiffs' motion for summary judgment on contributory copyright infringement is

9    legally and factually incorrect.  First, Plaintiffs misstate the law by asserting that "inaction,

10   combined with specific knowledge," is the proper test for contributory infringement.  D.I. 649

11   (Pls.' Mot.) at 13.  But inaction is insufficient.  A defendant must take affirmative steps to

12   "induce[], cause[], or materially contribute[] to the infringing conduct" to be liable for

13   contributory copyright infringement.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795

14   (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).  Second,

15   Plaintiffs fail to present sufficient evidence of contributory infringement.  They have not shown

16   that SAP took any affirmative steps to induce, cause, or materially contribute to the alleged

17   infringement of the HRMS registrations.  Nor do they establish knowledge of or the requisite

18   contribution to alleged infringement of the Oracle database registrations.  Viewing the facts in the

19   light most favorable to SAP, summary judgment should be denied.  *See Sun Microsys. Inc. v.*

20   *Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 896 (N.D. Cal. 2009) ("The court must view the

21   facts in the light most favorable to the non-moving party and give it the benefit of all reasonable

22   inferences to be drawn from those facts.").

23            1.    Plaintiffs Misstate the Legal Standard for Contributory Infringement.

24        Contributory liability is established where the defendant: "(1) has knowledge of a third

25   _____

26   [2] These six copyright registrations are: HRMS 7.0 (TX 4-792-577), HRMS 7.5 (TX 4-792-575), HRMS 8, Service Pack 1 (TX 5-501-312), Database 8.1.6 (TX 5-222-106), Database 9i, Release.2 (TX 5-673-282), and Database 10g, Release.2 (TX 6-942-003).

27   [3] As addressed above, Defendants do contest liability with respect to alleged infringement
28   occurring before March 1, 2005.  SAP also contests vicarious and contributory liability with respect to alleged infringement occurring before it acquired TN on January 19, 2005.

1   party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing

2   conduct.'" *Visa Int'l*, 494 F.3d at 795 (quoting *Ellison*, 357 F.3d at 1076); *see also Fonovisa, Inc.*

3   *v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("Contributory infringement . . .

4   imposes liability where one person knowingly contributes to the infringing conduct of another.").

5   Plaintiffs do not dispute that "specific knowledge" is required, but they mistakenly assert that

6   "inaction" satisfies the second element of this test.  D.I. 649 (Pls.' Mot.) at 13.

7       The second element of contributory infringement requires specific, affirmative steps that

8   actively "contribute[] to" infringement.  *Fonovisa*, 76 F.3d at 264; *see, e.g.*, *Perfect 10, Inc. v.*

9   *Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) ("Liability . . . may be predicated on

10   actively encouraging (or inducing) infringement through specific acts . . . .") (quoting *Metro-*

11   *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 942 (2005) (Ginsburg, J.,

12   concurring)).  One does not induce, cause, or materially contribute to infringement through mere

13   inaction.  *See, e.g.*, *Grokster*, 545 U.S. at 936-37 (noting that "inducement" involves "active steps

14   taken to encourage direct infringement") (citation omitted).  Rather, a defendant must "knowingly

15   take-steps that are substantially certain to result in direct infringement," *Amazon.com*, 508 F.3d at

16   1171, and "[s]uch participation must be substantial."  *Religious Tech. Ctr. v. Netcom On-Line*

17   *Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995).  Indeed, this is what

18   distinguishes "contributory" liability from mere vicarious liability.

19       Plaintiffs misread *Amazon.com* and *Napster* to suggest that "inaction" or the "knowing

20   failure to prevent infringing actions" is sufficient to establish contributory infringement.  D.I. 649

21   (Pls.' Mot.) at 13.  These cases hold only that a defendant may be liable for taking affirmative

22   steps to facilitate infringement where it has specific knowledge, yet fails to stop facilitating

23   infringement.  *See Amazon.com*, 508 F.3d at 1172; *see also A&M Records, Inc. v. Napster, Inc.*,

24   239 F.3d 1004, 1022 (9th Cir. 2001) (holding that liability may be imposed where Napster

25   "provides the site and facilities for direct infringement," has "actual knowledge that specific

26   infringing material is available using its system," and yet "fail[s] to remove the material" from its

27   system).  That is not "inaction," but rather continued action despite knowledge of infringement.

28   *See Amazon.com*, 508 F.3d at 1172.

2.      Plaintiffs Have Not Adduced Sufficient Evidence to Prove Contributory
Infringement of the HRMS Registrations.

Plaintiffs are not entitled to summary judgment with respect to the three PeopleSoft HRMS registrations because they have not shown that SAP took any affirmative steps to further the alleged infringement.  *See Visa Int'l*, 494 F.3d at 795.  Plaintiffs assert only that SAP "did nothing to ensure the removal of [Oracle] software" from TN's computers.  D.I. 649 (Pls.' Mot.) at 15.  This is far from the affirmative steps to "induce[], cause[], or materially contribute[] to the infringing conduct" required to prove contributory infringement.  *Visa Int'l*, 494 F.3d at 795.  Plaintiffs simply do not assert any facts suggesting that SAP caused or materially contributed to the allegedly infringing conduct.  Indeed, Plaintiffs' evidence shows quite the opposite—SAP took action against potential infringement by issuing a directive to remove software from TN computers.  *See* D.I. 649 (Pls.' Mot.) at 14.

It is irrelevant that SAP's in-house counsel advised TN about intellectual property and advised the SAP Board on issues regarding TN.  *See* D.I. 649 (Pls.' Mot.) at 14-15.  Plaintiffs present no evidence that SAP's in-house counsel took any steps to facilitate the purported infringement.  Providing advice on intellectual property does not establish any link to infringement, much less "[s]ubstantial participation" in infringement.  *See Religious Tech.*, 907 F. Supp. at 1375 (citing *Demetriades v. Kaufmann*, 690 F. Supp. 289, 294 (S.D.N.Y. 1988)).

3.      Plaintiffs Have Not Adduced Sufficient Evidence to Prove Contributory
Infringement of the Database Registrations.

Summary judgment on the database registrations should be denied because the evidence neither establishes that SAP knew of the alleged infringement, nor shows that SAP took any affirmative action to further the alleged infringement.  The three pieces of evidence cited by Plaintiffs are insufficient to establish SAP's "specific knowledge" of the alleged infringement.  First, Plaintiffs argue that Werner Brandt "conceded it was 'obvious' at the time of the acquisition that 'TomorrowNow was running its copies of PeopleSoft and JDE software in conjunction with a database of some kind.'"  D.I. 649 (Pls.' Mot.) at 15.  But TN's use of "a database of some kind" does not suggest that TN was violating a copyright, much less a copyright belonging to Oracle

1   (versus another database provider such as Microsoft or IBM).  The mere possibility of

2   infringement is insufficient—specific knowledge is required.  *See Napster*, 239 F.3d at 1021.

3       Second, Plaintiffs note that TN requested that SAP "'purchase Oracle database licenses

4   for environments where [TN] develop[s] [its] customer[s'] deliverables' and as 'a critical need to

5   support [its] customers running PeopleSoft on Oracle.'"  D.I. 649 (Pls.' Mot.) at 15.  Plaintiffs fail

6   to explain why the mere request for a license suggests that TN may have been using Oracle

7   databases without a license.  TN's matter-of-fact purchase requests indicated only that certain

8   licenses would enable TN to better support its customers.  *See, e.g.*, D.I. 657 (Alinder Decl.) ¶ 46,

9   Ex. 75 ("We need to purchase these licenses for environments where we develop our customer[s']

10  deliverables.  Specifically, we would like to purchase Oracle Standard Edition for a 4 CPU

11  machine running AIX and a 4 CPU machine running Windows.").

12      Finally, Plaintiffs infer that SAP America COO Mark White knew that TN was allegedly

13  infringing because "[a]fter Oracle sued, Baugh told White that [] TN was using Oracle's Database

14  software only pursuant to a Development License."  D.I. 649 (Pls.' Mot.) at 15.  But the cited

15  testimony does not support this inference.  The testimony of William Thomas shows only that

16  White "learned that [TN] had a development license," but "it wasn't a major priority for [White]

17  at the time."  D.I. 657 (Alinder Decl.) ¶ 3, Ex. 33 at 14.  Despite repeated questioning, Thomas

18  never suggested that White "thought the development license was [in]adequate" for TN's use.  *Id.*

19  at 14-15.  In fact, Thomas testified exactly the opposite, concluding that White "may have

20  thought . . . it was fine to run under a development license, and that's why it was never an issue."

21  *Id.* at 15.  John Baugh similarly testified.  *See* D.I. 657 (Alinder Decl.) ¶ 3, Ex. 7 at 202, 204

22  (noting that Baugh "mentioned" in a meeting with White that "we . . . needed to look into getting

23  another Oracle database license" and that "we needed to look into our current license").

24      As to the second element for contributory infringement, Plaintiffs allege only that SAP did

25  not investigate whether TN used Oracle database software and did not purchase licenses.  *See* D.I.

26  649 (Pls.' Mot.) at 15.  But inaction is insufficient to show that SAP induced, caused, or

27  materially contributed to infringement.  *See Amazon.com*, 508 F.3d at 1170 ("Liability . . . may be

28  predicated on *actively* encouraging (or inducing) infringement through specific acts . . . .").

1  Unlike in *Amazon.com* and *Napster*, Plaintiffs do not allege that SAP failed to cease actions

2  facilitating infringement.  *See, e.g.*, *Amazon.com*, 508 F.3d at 1172 (contributory liability proper

3  where a defendant "continues to provide access to infringing works").  Indeed, Plaintiffs do not

4  allege that SAP took any actions to facilitate infringement.

5   **B.   Plaintiffs Are Not Entitled to Summary Judgment Dismissing Defendants'**
   **Second and Third Affirmative Defenses Relating to Licensed Use.**

6

7       Although Plaintiffs moved for summary judgment of infringement as to only six

8  registrations and specific conduct associated therewith, they appear to seek dismissal of

9  Defendants' license defense as to all asserted registrations and all allegedly improper conduct.[4]

10  *See* D.I. 649 (Pls.' Mot.) at 11, 13; D.I. 649-1 ([Proposed] Order Granting Pls.' Mot.) at 2.  But

11  summary judgment is appropriate only if Plaintiffs show that particular conduct exceeded the

12  scope of the relevant customer licenses.  Because Plaintiffs do not carry their burden to prove that

13  all of TN's accused conduct was unauthorized under the relevant customer licenses, Plaintiffs'

14  request to dismiss the second and third affirmative defenses in their entirety should be denied.

15        1.    To Establish Infringement, a Plaintiff Must Prove Copying Beyond the
              Scope of an Applicable License.

16

17       A valid copyright license is an affirmative defense to infringement.  *See Rano v. Sipa*

18  *Press, Inc.*, 987 F.2d 580, 585 (9th Cir. 1993); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d

19  Cir. 1995).  Once a defendant identifies a relevant license, the copyright owner must prove that

20  the copying was unauthorized.  *See Bourne*, 68 F.3d at 631; *RealNetworks, Inc. v. DVD Copy*

21  *Control Ass'n*, 641 F. Supp. 2d 913, 945 (N.D. Cal. 2009).  Failure to show that a defendant's

22  conduct exceeded the license grant will result in a finding of non-infringement.  *See Netbula, LLC*

23  *v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1151-53 (N.D. Cal. 2007); *NLFC, Inc. v. Devcom*

24  *Mid-America, Inc.*, No. 93 C 0609, 1993 U.S. Dist. LEXIS 16459, at *23-25 (N.D. Ill. Nov. 16,

25  1993) (granting summary judgment where a defendant software service provider asserted that its

26  ───────────────
       [4] Defendants now withdraw their copyright misuse affirmative defense and have not
   asserted a fair use defense.  To the extent that Plaintiffs seek summary judgment on either defense,

27  this request should be denied as improperly seeking an advisory opinion.  *See Flast v. Cohen*, 392
   U.S. 83, 96 (1968); *Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C 06-

28  7028 MMC, 2008 WL 144693, at *1 (N.D. Cal. Jan. 10, 2008).

1  conduct was licensed by its customers' agreements with plaintiff, and plaintiff failed to show that

2  defendant's conduct exceeded the scope of the licenses).

3              2.      Plaintiffs Offer No Evidence that Alleged Copying of Registered Works
                       Beyond the Six Identified in the Motion Exceeded the Scope of the
4                      Licenses Governing Their Use.

5          Plaintiffs do not dispute that TN's access to and use of its customers' Oracle software and

6  support materials is governed by those customers' license agreements with Oracle.  *See* D.I. 418

7  (Fourth Amended Complaint ("FAC")) at ¶ 53 ("Licensees may designate third parties to help

8  maintain Oracle's software, but only subject to the terms of the relevant license agreement

9  between the licensee and Oracle."); D.I. 437 (Answer and Affirmative Defenses) at Affirmative

10  Defenses ¶¶ 2-3; Lanier Decl. ¶ 9, Ex. 9 (Fifth Supp. Responses to TN's First Set of Interrogs.,

11  Second Supp. Response to Interrog. No. 10) at 64-65.  Thus, to the extent that Plaintiffs seek

12  summary judgment on Defendants' entire license defense, Plaintiffs must prove that all of TN's

13  accused conduct exceeded the scope of the various customer agreements governing that conduct.

14  *See NLFC*, 1993 U.S. Dist. LEXIS 16459, at *23-25.

15          Plaintiffs do not meet this burden.  First, Plaintiffs' reliance on case law stating that

16  copyright licenses generally are not transferable is inapposite.  *See* D.I. 649 (Pls.' Mot.) at 12.  As

17  Plaintiffs acknowledge, TN had authority to access its customers' Oracle software and support

18  materials not in virtue of any purported transfer, but in virtue of TN's status as an agent.  *See* D.I.

19  418 (FAC) ¶ 53; *see also* D.I. 201 (Opp. to Mot. to Dismiss) at 22 (describing Defendants as

20  agents of their customers).

21          Second, Plaintiffs describe only limited conduct as having exceeded the scope of specific

22  customer agreements.  *See* D.I. 649 (Pls.' Mot.) at 8-9, 11-13.  Although Defendants elect not to

23  assert their license-based defenses as to the limited and specific conduct associated with the

24  particular registrations identified in Plaintiffs' Motion, Plaintiffs cannot rely upon the three

25  licenses described therein to prove that conduct not addressed in their Motion exceeded the scope

26  of licenses not submitted to the Court.  This is because each of Oracle's licenses with its

27  "[s]everal hundred thousand customers" is "unique."  Lanier Decl. ¶ 14, Ex. 14 (11/12/09 Allison

28  Tr.) at 20:10-11, 40:8-13.  Oracle and its acquired companies (PeopleSoft, JDE, and Siebel) each

have a different standard form license, which changed over time.  *See id.* at 48:19-50:2 (testifying that agreements from PeopleSoft, JDE, and Siebel vary by customer with respect to terms like "the rules governing third party access to software" and "the customer's rights to make modifications to software").  **REDACTED**

*See id.* at 20:20-21:1, 41:8-24.  Because customers generally re-negotiate the terms of their agreements at renewal, a single customer may have numerious different agreements over time, with different terms, that govern its right to use Oracle software and support materials.  *See id.* at 44:15-45:10, 47:5-18.

Because each customer agreement is unique, Plaintiffs may not simply rely on the terms of a few select agreements to establish that all relevant customer agreements prohibit all of TN's accused conduct.  Instead, Plaintiffs must prove the alleged impropriety on a conduct-by-conduct, customer-by-customer, and license-by-license basis, as Plaintiffs' corporate representative acknowledged.  *See id.* at 51:18-53:10.  The uniqueness of the customer agreements governing access to and use of Oracle software and support materials creates a genuine dispute of material fact whether TN's alleged improper conduct, not addressed in Plaintiffs' Motion, was licensed. Thus, to the extent that Plaintiffs seek to dismiss Defendants' second and third affirmative defenses in their entirety, their request should be denied as overbroad and unsupported.  *See Netbula*, 516 F. Supp. 2d at 1151-53; *NLFC*, 1993 U.S. Dist. LEXIS 16459, at *23-25.

**C.**   **A Ruling Regarding the Copyright Registrations Asserted in Plaintiffs' Motion Should Not Serve as a Template for Litigating the Rest of this Case.**

In their Motion, Plaintiffs argue that specific conduct by TN constitutes copyright infringement of six registrations and that a ruling on this alleged infringement should serve as a "template" for litigating Plaintiffs' remaining infringement allegations.  D.I. 649 (Pls.' Mot.) at 2. This is despite Plaintiffs' admission that their Motion addresses but "a tiny fraction" of the infringement alleged in their complaint.  *Id.*  In fact, the majority of the conduct described in Plaintiffs' Motion relates only to TN's early PeopleSoft retrofit support model, which materially differs from TN's later critical support model.  Because the remaining infringement allegations relate to entirely different copyright registrations, software lines, and support activities for a

1    variety of different customers, each with their own unique license agreements, a ruling on

2    Plaintiffs' Motion cannot serve as a template for litigating the rest of this case.

3         In 2002, TN began offering maintenance support services for PeopleSoft software under

4    an "extended support" or "retrofit" model.  *See* Lanier Decl. ¶¶ 23, 26, Ex. 26 (5/21/09 Ravin Tr.)

5    at 19:2-20:6; Ex. 23 (2/26/09 A. Nelson Tr.) at 63:3-65:7.  The purpose of the retrofit model was

6    to maintain retired PeopleSoft software releases.  *See* Lanier Decl. ¶ 23, Ex. 23 (2/26/09 A.

7    Nelson Tr.) at 63:17-64:9.  Under this model, TN's customers continued to pay maintenance fees

8    to PeopleSoft, entitling them to receive PeopleSoft updates and fixes for supported releases.  *Id.*

9    at 72:2-24, 84:19-86:25.  As the customer's agent, TN used these updates to understand what

10   changes had been made by PeopleSoft and then used that information to adapt updates for its

11   customers' older PeopleSoft releases.  *See* Lanier Decl. ¶ 4, Ex. 4 (TN-OR00646511–513).  To

12   create the retrofit updates, TN installed onto its computers copies of PeopleSoft software from

13   CDs obtained from its customers; used those copies, referred to as "environments," to determine

14   what updates were required; and then developed and tested those updates.  *See id.*; D.I. 657

15   (Alinder Decl.) ¶ 3, Ex. 12 (4/1/08 and 4/2/08 Hyde Tr.) at 116:14-117:21.

16        Plaintiffs' Motion focuses on TN's use of environments in the retrofit model.  Specifically,

17   the Motion relies on evidence that TN likely copied one set of customer CDs (from either WGL

18   or Safeway) to build the PeopleSoft HRMS 7.02, 7.51, and 8 SP1 environments that were used to

19   support retrofit customers generally.  *See*, *e.g.*, D.I. 657 (Alinder Decl.) ¶ 3, Ex. 12 (4/1/08 and

20   4/2/08 Hyde Tr.) at 54:25-55:14; Ex. 14 (5/12/09 Hyde Tr.) at 27:5-37:8, 42:20-43:11; Ex. 21

21   (2/26/09 A. Nelson Tr.) at 87:3-88:1; Ex. 23 (12/6/07 S. Nelson Tr.) at 134:9-24.  Plaintiffs also

22   cite evidence that TN used this same set of CDs to build environments for customers other than

23   the customer from whom the CDs were obtained.  *See* D.I. 649 (Pls.' Mot.) at 6-8.  Despite

24   Plaintiffs' suggestion to the contrary, TN's use of environments in the retrofit support model is

25   not characteristic of TN's support activities over time and for different product lines.

26        In 2004, TN began moving away from the retrofit model and started offering what TN

27   referred to as "critical support" services.  *See* Lanier Decl. ¶¶ 23, 25, Ex. 23 (2/26/09 A. Nelson

28   Tr.) at 91:4-92:6; Ex. 25 (4/18/08 S. Nelson Tr.) at 282:14-24.  Unlike retrofit support customers,

1  critical support customers generally did not have active maintenance agreements with software

2  providers, so TN supplied independently developed updates, without regard to the updates

3  provided by the software providers.  *See* Lanier Decl. ¶¶ 5, 24, 25, Ex. 25 (4/18/08 S. Nelson Tr.)

4  at 279:25-283:23; Ex. 24 (12/6/07 S. Nelson Tr.) at 221:10-222:16; Ex. 5 (Pls.' Ex. 23).  Since

5  TN did not need to adapt updates to customers' earlier releases, TN built and used environments

6  in fundamentally different ways than it previously had.  Most significantly, after a short transition

7  period in which early critical support environments were built using retrofit environments, TN

8  made it a "general practice to build an environment on each customer's behalf using that

9  customer's PeopleSoft application files," rather than to build environments designed to support

10  multiple customers at once, as in the retrofit model.  Lanier Decl. ¶¶ 10, 15, Ex. 10 (TN's Third

11  Amended and Supp. Response to Oracle USA, Inc.'s Second Set of Interrogs., Second Supp.

12  Response to Interrog. No. 14) at 28; Ex. 15 (2/6/08 Baugh Tr.) at 68:5-18; *see also* D.I. 657

13  (Alinder Decl.) ¶ 3, Ex. 12 (4/1/08 and 4/2/08 Hyde Tr.) at 138:11-139:3.  Because the retrofit

14  support activities addressed in Plaintiffs' Motion did not occur as a matter of course in the critical

15  support model, they cannot serve as a template to litigate critical support activities.

16       Further, the retrofit support activities described in Plaintiffs' Motion are not "similar" to

17  support for other software lines.  D.I. 649 (Pls.' Mot.) at 2.  Unlike the way it generally supported

18  PeopleSoft customers, TN serviced most JDE and Siebel customers remotely, in each customer's

19  environment that was located at the customer's facility.  *See* Lanier Decl. ¶¶ 8, 17, 21, 22, Ex. 21

20  (10/30/07 Kreutz Tr.) at 80:8-81:25; Ex. 22 (2/19/08 Kreutz Tr.) 62:15-63:17, 106:11-24; Ex. 17

21  (9/17/09 Garafola and Tanner Tr.) at 15:21-19:2; Ex. 8 (Pls.' Ex. 1623).  Because TN's use of

22  environments in the retrofit model is not characteristic of TN's support for JDE and Siebel

23  products, this Court should not adopt Plaintiffs' template approach.

24       Finally, a ruling on the three database registrations addressed in Plaintiffs' Motion also

25  should not serve as template for litigating this case.  Because TN did not support Oracle database

26  software, but simply used it as a component for some of the environments maintained on behalf

27  of TN's customers, a ruling on TN's use of the database software cannot "streamline" analysis of

28  TN's accused support activities.  D.I. 649 (Pls.' Mot.) at 2; *see also* D.I. 657 (Alinder Decl.) ¶ 3,

1   Ex. 7 (12/3/09 Baugh Tr.) at 172:10-173:6; Ex. 33 (12/4/09 Thomas Tr.) at 6:16-21.

2   **IV.    CFAA AND CDAFA ISSUES RAISED IN PLAINTIFFS' MOTION**

3       **A.    Plaintiffs Are Not Entitled to Summary Judgment for Their CFAA Claims
            Arising under 18 U.S.C. §§ 1030(a)(5)(A)(i)-(iii).**

4

5   Plaintiffs are not entitled to summary judgment on their 18 U.S.C. §§ 1030(a)(5)(A)(i)-

6   (iii) claims because there is no evidence that Plaintiffs' computers suffered "damage."[5]  Plaintiffs

7   also are not entitled to summary judgment on their 18 U.S.C. § 1030(a)(5)(A)(i) claim because

8   they do not establish that TN possessed the requisite intent to damage Plaintiffs' computers.

9           1.    Plaintiffs Have Not Established the Required "Damage."

10  To state a claim under any 18 U.S.C. § 1030(a)(5)(A) subsection, a plaintiff must show

11  that defendant's actions caused cognizable "damage" to the accessed computers.  *See* 18 U.S.C. §

12  1030(a)(5)(A)(i)-(iii) (2007); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,

13  556 F. Supp. 2d 1122, 1133 (E.D. Cal. 2008).  "Damage" is "any impairment to the integrity or

14  availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8) (2007).  It

15  requires more than a showing that the defendant copied data from the plaintiff's website; rather, a

16  plaintiff must establish that the defendant's activities impaired the "integrity" or the "availability"

17  of plaintiff's data or systems, such that some existing data was corrupted or deleted or the servers

18  crashed.  *See, e.g.*, *U.S. v. Shea*, 493 F.3d 1110, 1113 (9th Cir. 2007) (upholding criminal

19  conviction under (a)(5) where defendant "corrupted" existing data by deleting Social Security

20  numbers and replacing values with random figures); *Creative Computing v. Getloaded.com LLC*,

21  386 F.3d 930, 934-35 (9th Cir. 2004); *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1100 (N.D. Cal.

22  2006) (Hamilton, J.) (finding "damage" where defendant deleted existing files).

23

24          [5] Defendants elect not to contest TN's liability for the specific (and marginal) examples of
    conduct Plaintiffs allege in their Motion violate 18 U.S.C. § 1030(a)(2)(c) and Cal. Penal Code

25  § 502(c)(7).  Defendants do not concede, however, that every act of "access and use beyond those
    set forth in a user agreement constitute[s] unauthorized use under the CFAA."  D.I. 649 (Pls.'

26  Mot.) at 21 (citing *eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D.
    Cal. 2009)).  Access is not "without authorization" under the CFAA where a user has limited

27  access but acted beyond those limitations.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127,
    1133 (9th Cir. 2009).  And access to computer systems in violation of terms of use does not

28  always "exceed authorized access."  *U.S. v. Nosal*, No. C 08-0237 MHP, 2010 U.S. Dist. LEXIS
    24359, at *15-17 (N.D. Cal. Jan. 5, 2010).

1    Here, Plaintiffs attempt to establish "damage" in three ways, none of which is successful.

2    First, Plaintiffs allege that TN's use of Titan impaired customers' ability to log onto Plaintiffs'

3    computer systems; however, Plaintiffs rely only on speculation to support this claim.  Second and

4    third, Plaintiffs allege that TN  ████████REDACTED████████  and that TN's alleged access to

5    and use of downloaded support materials impaired the integrity and confidentiality of Plaintiffs'

6    data.  But neither constitutes cognizable "damage."  And Plaintiffs' own corporate representative

7    admits that there is no evidence that Plaintiffs' systems were impaired by TN's alleged conduct.

8                    a.      *There Is No Evidence that TN's Downloading Caused "Damage"*
                             *to Plaintiffs' Servers.*
9

10    Plaintiffs' allegation that TN's use of Titan impaired customers' ability to log onto

11    Plaintiffs' customer support websites relies entirely on speculation.  First, Plaintiffs attempt to

12    demonstrate server impairment through deposition testimony from John Ritchie, a *TN* employee

13    without first-hand knowledge of the condition of Plaintiffs' servers at the time of TN's access.[6]

14    *See* D.I. 649 (Pls.' Mot.) at 18-20, 24; Lanier Decl. ¶ 27, Ex. 27 (12/2/09 Ritchie Tr.) at 166:19-

15    167:11.  Although Ritchie supposed that TN's access caused Plaintiffs' servers to reject his log-

16    on attempts or to disconnect his access, he admitted that he "can't rule out" various other reasons

17    for the break in connection.  *Id.* at 169:21-170:22, 205:16-25.  Ultimately, his testimony that TN's

18    activities "crashed" or otherwise impaired the servers amounts to nothing more than speculation

19    about what might have happened, which is insufficient grounds for summary judgment.  *See*

20    *Ortega v. Oakland*, No. C07-02659 JCS, 2008 WL 4532550, at *12 (N.D. Cal. Oct. 8, 2008)

21    (finding no fact dispute where the only evidence was a witness' speculation); *Davenport v. Bd. of*

22    *Tr. of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1101 (E.D. Cal. 2009).

23    Second, Plaintiffs attempt to bolster Ritchie's insufficient, speculative testimony by

24    relying on the equally speculative—and inadmissible—declaration of Uwe Koehler.[7]  In his

25    ───────────────

26    [6] Defendants object to portions of Mr. Ritchie's testimony as inadmissible under Federal Rules of Evidence 602 and 701.  *See* Section E of Defendants' Objections to Evidence Filed in Support of Plaintiffs' Motion For Partial Summary Judgment ("Defendants' Objections").

27    [7] Defendants object to paragraph 4 of Mr. Koehler's Declaration as inadmissible under Federal Rules of Evidence 602, 701, 702 and Federal Rule of Civil Procedure 26(a)(2)(A) and 37(c).  *See* Section C of Defendants' Objections.

28

1   declaration, Koehler states that it was "very likely" that TN caused slowdowns or other latency

2   issues.  D.I. 649 (Pls.' Mot.) at 24; D.I. 652 (Koehler Decl.) ¶ 4.  However, as Mr. Koehler

3   acknowledged in his deposition, he is not a bandwidth usage expert, and his conclusion that TN

4   may have caused a slowdown of Plaintiffs' computers was "just what I believe."  Lanier Decl. ¶

5   20, Ex. 20 (12/5/08 Koehler Tr.) at 56:2-16, 60:11-61:9.  As noted above, such speculation is not

6   enough to ground summary judgment.  In fact, Mr. Koehler's conclusory statements in his

7   declaration are at odds with his admission as Plaintiffs' corporate representative that he and

8   Plaintiffs are unaware of any actual slowdowns, disruptions in service, crashes, or other

9   impairments that affected the functioning of their computer systems.  *Id.* at 40:9-41:16; *see also*

10  Lanier Decl. ¶ 18, Ex. 18 (10/15/09 Kees Tr.) at 203:7-206:7.

11        b.        ████████ REDACTED ████████     *Is Not Cognizable "Damage."*

12        Plaintiffs also contend that TN caused "damage" by ████████████████████

13  ████████████████████ REDACTED ████████████████████

14  ████████████     (D.I. 649 (Pls.' Mot.) at 24); however, this alleged conduct does not

15  result in cognizable "damage" under the CFAA.  Courts in the Ninth Circuit have interpreted

16  "damage" to require actual deletion or alteration to the code or files.  *See, e.g.*, *Creative*

17  *Computing*, 386 F.3d at 934-35 (describing "impairment" of data in terms of "corruptions of

18  data" or a "corrupted byte"); *Hanger Prosthetics & Orthotics, Inc.*, 556 F. Supp. 2d at 1133

19  (granting defendants' motion for summary judgment where there was no admissible evidence of

20  "mass deletions" or "alterations" to show "damage").  Indeed, because the statute defines

21  "damage" as an "impairment to the integrity or availability" of data or a computer, courts have

22  found that "the complained of activity must have an effect on the binary coding used to create,

23  store, and access computerized representations of information."  *Condux Int'l, Inc. v. Haugum*,

24  No. 08-4824 ADM/JSM, 2008 U.S. Dist. LEXIS 100949, at *23 (D. Minn. Dec. 15, 2008).

25        Here, Plaintiffs do not seek to redress a deletion of files or corruption of underlying data,

26  but to expand the definition of "damage" beyond its ordinary and accepted meaning to include the

27  ████████ REDACTED ████████     Such results do not establish "damage."  Plaintiffs fail

28  to adduce any evidence that receiving these "clicks" or other customer information affected "the

1  binary coding used to create, store, and access computerized representations of information." *Id.*

2  And Plaintiffs admit that ███████████████████████████████████████████████████

3  ████████████████████████████████ REDACTED ████████████████████████████████████

4  ███████████████████████████  Lanier Decl. ¶ 20, Ex. 20 (12/5/08 Koehler Tr.) at 42:20-22.

5  Plaintiffs acknowledge that Customer Connection was specifically designed so that outside users

6  could not alter any data contained therein. *Id.* at 37:11-24.  As the Ninth Circuit noted, "[t]he

7  Supreme Court has long warned against interpreting criminal statutes in surprising and novel

8  ways that impose unexpected burdens on defendants." *Brekka*, 581 F.3d at 1134 (holding where

9  there is ambiguity in the CFAA, ambiguity should be construed in favor of the defendant, even in

10  the civil context).  In the absence of any impairment to the existing data on Plaintiffs' computers,

11  it would be unprecedented to ground liability under the CFAA on ███████████████████████

12  ████████████████████████████████ REDACTED ████████████████████████████████████

13  ███████████████████████  *See* Lanier Decl. ¶ 20, Ex. 20 (12/5/08 Koehler Tr.) at 46:13-47:22.

14                 c.        *"Impairment" to the Confidentiality of Plaintiffs' Materials Is Not*

15                           *Cognizable "Damage."*

16        Plaintiffs also allege that TN impaired the integrity and confidentiality of Plaintiffs' data

17  by "accessing" and "using" the confidential information on their support websites.  Such conduct

18  does not result in "damage" under the CFAA, and Plaintiffs' reliance on the outdated and

19  criticized *Shurgard* is misplaced.  *See* D.I. 649 (Pls.' Mot.) at 24 (citing *Shurgard Storage Ctrs.,*

20  *Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000)).

21        As a preliminary matter, accessing and using confidential information obtained from a

22  computer does not result in corruption or deletion of existing data, which is typically required to

23  show "damage" under the CFAA (and which Plaintiffs have not alleged in their Motion).  *See,*

24  *e.g.*, *U.S. v. Shea*, 493 F.3d at 1113; *ViChip*, 438 F. Supp. 2d at 1100; *Creative Computing*, 386

25  F.3d at 934-35.  Indeed, courts have made clear that mere copying of data from a website and

26  "use" of that data does not constitute "damage" under the CFAA.  *See, e.g.*, *Mintel Int'l Group,*

27  *Ltd. v. Neergheen*, No. 08-cv-3939, 2010 U.S. Dist. LEXIS 2323, at *31-32 (N.D. Ill. Jan. 12,

28  2010) (holding that copying, e-mailing, or printing electronic files from a computer database does

                                                        - 17 -

DEFS' NOTICE OF CROSS MOTION,
CROSS MOTION, AND OPPOSITION
Case No. 07-CV-1658 PJH (EDL)

1    not constitute "damage"); *Cont'l Group, Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357,

2    1371 (S.D. Fla. 2009) ("[B]ased upon the plain language of the statute . . . the data must be

3    impaired and not merely copied."); *Cassetica Software, Inc. v. Computer Sci. Corp.*, No. 09 C

4    0003, 2009 U.S. Dist. LEXIS 51589, at *9-11 (N.D. Ill. June 18, 2009) (holding that improperly

5    downloading a computer program from a website did not constitute "damage").

6          Furthermore, Plaintiffs' reliance on *Shurgard* is inappropriate.  In *Shurgard*, the court held

7    that a former employee who had forwarded plaintiff employer's information to a competitor

8    caused "damage."  *See* 119 F. Supp. 2d at 1123, 1127.  However, the court based its finding of

9    "damage" on an earlier version of the CFAA, which defined "damage" as including the term

10   "loss" to cover situations, as in *Shurgard*, in which "neither the computer nor its information is

11   damaged."  *Id.* at 1126 (citing S. Rep. No. 104-357, at 11 (1996)); *see also* 18 U.S.C. §

12   1030(e)(8)(A) (2000) (stating that "the term 'damage' means any impairment to the integrity or

13   availability of data, a program, a system, or information, that . . . causes loss aggregating at least

14   $5,000 in value during any 1-year period to one or more individuals . . .").  Congress has since

15   amended the statute to separately define "damage" and "loss," such that "damage" may

16   presumably be shown only where the computer or its information is damaged.  *Compare* 18

17   U.S.C. § 1030(e)(8) (2000) *with* 18 U.S.C. § 1030(e)(8), (e)(11) (2007).  Since this amendment,

18   courts have expressly rejected *Shurgard*'s overbroad interpretation of the term "damage."  *See*

19   *Condux Int'l,* 2008 U.S. Dist. LEXIS 100949, at *23; *Resdev, LLC v. Lot Builders Ass'n*, No.

20   6:04-cv-1374-Orl-31DAB, 2005 U.S. Dist. LEXIS 19099, at *13 (M.D. Fla. Aug. 10, 2005);

21   *Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710 (N.D. Ill. 2008).  Because the

22   Ninth Circuit favors narrow construction of the CFAA, *Shurgard*'s expansive interpretation of

23   "damage" to include distribution of downloaded materials should be rejected in favor of the

24   generally accepted reading that mere copying or use of materials does not impair the "integrity"

25   of—and thus does not "damage"—data under the CFAA.  *See Brekka*, 581 F.3d at 1134.

26                   d.       *Plaintiffs Have Admitted that There Is No Evidence of Damage to Oracle's Systems.*

27

28         Finally, Plaintiffs' own admissions confirm that they cannot prove that TN's activities

1    caused the requisite "impairment to the integrity or availability" of Plaintiffs' systems or data.  In

2    particular, Plaintiffs admit that they have no evidence that TN caused any slowdowns, disruptions

3    in service, crashes, or other impairment to the availability or accessibility of the systems or data.

4    *See* Lanier Decl. ¶¶ 18, 20, Ex. 20 (12/5/08 Koehler Tr.) at 40:9-41:16, 59:21-61:9; Ex. 18

5    (10/15/09 Kees Tr.) at 203:7-208:3.  Similarly, Plaintiffs admit that they have no evidence that

6    TN's access or downloading activities ever changed, altered, deleted, or destroyed any data,

7    programs, systems, or other information on their customer support websites, or resulted in any

8    other type of damage to the computer systems or data.  *See* Lanier Decl. ¶¶ 18, 20, Ex. 20

9    (12/5/08 Koehler Tr.) at 37:25-40:8, 43:11-44:5, 49:11-51:1, Ex. 18 (10/15/09 Kees Tr.) at

10   192:18-193:18, 202:9-203:6.  And Plaintiffs acknowledge that they have "no evidence that our

11   systems have been compromised, and there's not evidence that the customer's systems had been

12   compromised" as a result of TN's activities.  Lanier Decl. ¶ 19, Ex. 19 (12/4/08 Koehler Tr.) at

13   194:18-21.  These admissions alone establish a dispute of fact regarding whether TN "damaged"

14   Plaintiffs' computers and justify denial of Plaintiffs' Motion with respect to the (a)(5)(A) claims.

15              2.      Plaintiffs Have Not Established "Intent to Damage" as Required under 18
                        U.S.C. § 1030(a)(5)(A)(i).
16

17          To prevail on a claim arising under 18 U.S.C. § 1030(a)(5)(A)(i) (2007), a plaintiff must

18   establish that a defendant "intentionally cause[d] damage" to computer systems or data.  Courts

19   dismiss (a)(5)(A)(i) claims where a plaintiff does not plead or demonstrate that the defendant

20   possesses an intent to damage.  *See, e.g.*, *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-

21   3442 (FLW), 2008 U.S. Dist. LEXIS 48036, at *5-9 (D.N.J. June 23, 2008) (dismissing

22   (a)(5)(A)(i) claim for failure to allege the required element of "intent to damage."); *Czech v. Wall*

23   *St. on Demand, Inc.*, No. 09-180 (DWF/RLE), 2009 U.S. Dist. LEXIS 114125, at *47-50 (D.

24   Minn. Dec. 8, 2009) (dismissing an (a)(5)(A)(i) claim for failing to show that defendant

25   "intended" to cause damage).

26          Having failed to even acknowledge the "intent to damage" requirement for an (a)(5)(A)(i)

27   claim, Plaintiffs do not present evidence that TN intended to damage Plaintiffs' computers.

28   Plaintiffs claim only that TN "knowingly cause[d] the transmission of a program, information,

- 19 -

1  code or command," and that TN's "access" and "downloading" was intentional, and that TN was

2  "at least reckless in causing this damage . . . ."  D.I. 649 (Pls.' Mot.) at 23-24.  But evidence of

3  intent to transmit a program or code or simply to access computers does not make out an

4  (a)(5)(A)(i) claim; instead, Plaintiffs must show that TN specifically "intended" to "damage"

5  Plaintiffs' computers.  *Kalow & Springnut*, 2008 U.S. Dist. LEXIS 48036, at *6-7.  Having failed

6  to do so, Plaintiffs have likewise "failed to allege an element necessary to state a claim under the

7  CFAA."  *Id.*, at *9.  Thus, Plaintiffs' Motion as to the (a)(5)(A)(i) claim should be dismissed.

8      **B.      SAP Is Not Indirectly Liable under the CFAA or the CDAFA for TN's**
        **Allegedly Wrongful Conduct.**

9

10     Plaintiffs assert that SAP is indirectly liable for TN's alleged CFAA violations under an

11 agency theory because SAP exercised "pervasive and continual" control over TN.  D.I. 649 (Pls.'

12 Mot.) at 24 (quoting *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. 06-3359, 2009 U.S.

13 Dist. LEXIS 30610, at *23-26 (N.D. Cal. Apr. 9, 2009)).  But broad agency principles do not

14 trigger liability under the CFAA's civil remedy provision.  Case law is clear that the CFAA

15 imposes indirect liability only where a defendant has *directed* the wrongful acts.  *See, e.g.*,

16 *Calence, LLC v. Dimension Data Holdings*, No. C06-0262RSM, 2007 U.S. Dist. LEXIS 38043,

17 at *15-16 (W.D. Wash. May 24, 2007).  Because Plaintiffs have failed to show that SAP directed

18 TN's wrongful acts, summary judgment on this claim should be denied.

19          1.      To Prove Indirect Liability under the CFAA, a Plaintiff Must Show that the
                    Defendant Directed the Violator's Wrongful Acts.

20

21     The CFAA "was enacted [as a criminal statute] in 1984 to enhance the government's

22 ability to prosecute computer crimes."  *Brekka*, 581 F.3d at 1130.  In 1994, Congress added a

23 subsection creating a civil cause of action, *see* 18 U.S.C. § 1030(g), which "is designed to

24 supplement the criminal sanctions" of the CFAA.  *Doe v. Dartmouth-Hitchcock Med. Ctr.*, Civil

25 No. 00-100-M, 2001 U.S. Dist. LEXIS 10704, at *7 (D.N.H. July 19, 2001); *see also* Violent

26 Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 290001(d), 108 Stat.

27 1796, 2098 (codified as amended at 18 U.S.C. § 1030(g)).  This civil remedy provision says that

28 "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a

DEFS' NOTICE OF CROSS MOTION,
CROSS MOTION, AND OPPOSITION
Case No. 07-CV-1658 PJH (EDL)

1  civil action against the violator to obtain compensatory damages and injunctive relief or other

2  equitable relief."  18 U.S.C. § 1030(g).

3      By its terms, Section 1030(g) only provides a civil remedy "'against *the violator*,' that is,

4  against a person who violates the statute with the requisite criminal intent."  *See Doe*, 2001 U.S.

5  Dist. LEXIS 10704, at *12-13 (quoting 18 U.S.C. § 1030(g)).  "The statute does not provide a

6  cause of action against individuals who fail to supervise violators, fail to train them properly or

7  conspire to cover up their misconduct."  *Garland-Sash v. Lewis*, No. 05 Civ. 6827 (WHP), 2007

8  U.S. Dist. LEXIS 20909, at *12 (S.D.N.Y. Mar. 26, 2007), *aff'd in part, vacated in part, and*

9  *remanded on other grounds*, 348 Fed. Appx. 639 (2d Cir. 2009).  Given the plain language of

10  Section 1030(g) and the predominantly criminal nature of the statute, courts have expressly

11  limited the scope of civil liability under the CFAA.  *See Doe*, 2001 U.S. Dist. LEXIS 10704, at

12  *12-16; *see also Brekka*, 581 F.3d at 1134-35 (noting that the CFAA "is primarily a criminal

13  statute" and refusing to import agency principles under section 1030(a) that would expand CFAA

14  liability); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965-67 (D. Ariz. 2008).

15      Indirect liability under the CFAA is exceedingly narrow.  The vast majority of courts

16  impose indirect liability only if a defendant actually "directed [the alleged violators] to take . . .

17  the alleged improper actions."  *Calence*, 2007 U.S. Dist. LEXIS 38043, at *16; *see also Garland-*

18  *Sash*, 2007 U.S. Dist. LEXIS 20909, at *13 (noting that courts permitting indirect liability did so

19  only where "the defendants were alleged to have directed the wrongful conduct of the individual

20  'violator' for their own benefit").  Control over the alleged violator is insufficient.  *See Garland-*

21  *Sash*, 2007 U.S. Dist. LEXIS 20909, at *1, 12-13 (holding that plaintiff failed to state a claim

22  against the "superiors" of an employee who allegedly violated the CFAA).

23      Courts permitting indirect liability under the CFAA heavily rely on facts showing that a

24  defendant directed the allegedly wrongful acts.  For example, one district court imposed indirect

25  liability on defendant corporations only after noting that the defendants had "induced [their

26  corporate officers] to steal . . . proprietary information" from plaintiffs by "request[ing]" that an

27  officer "unlawfully obtain[] access to [a plaintiff's] computer systems" and by "instruct[ing] [an

28  officer to] use[] her personal Yahoo e-mail account to download plaintiffs' proprietary

1    information." *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 469-70, 472 (S.D.N.Y.

2    2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. 2006).  Another court held that a complaint adequately

3    stated a claim where "the allegations make it clear that [the alleged violator] was acting at the

4    direction of" the corporate defendant when she accessed a protected computer.  *Binary Semantics*

5    *Ltd. v. Minitab, Inc.*, No. 4:07-CV-1750, 2008 U.S. Dist. LEXIS 28602, at *14-15 (M.D. Pa. Mar.

6    20, 2008), *vacated in part on other grounds*, 2008 U.S. Dist. LEXIS 36575 (M.D. Pa. May 1,

7    2008); *see also Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 U.S. Dist. LEXIS 21348,

8    at *22-23 (N.D. Ill. Sept. 27, 2005).  "[I]n each of th[e]se cases the defendants were alleged to

9    have directed the wrongful conduct of the individual 'violator' for their own benefit."  *Garland-*

10   *Sash*, 2007 U.S. Dist. LEXIS 20909, at *13.

11          Rather than applying CFAA case law, Plaintiffs propose their own standard for indirect

12   liability derived from a single case that applies state law agency principles to state contract claims.

13   D.I. 649 (Pls.' Mot.) at 24 (arguing that liability is permitted where the parent exercises

14   "pervasive and continual" control) (quoting *Dong*, 2009 U.S. Dist. LEXIS 30610, at *23).

15   Plaintiffs err not only by impermissibly importing agency principles into the unique context of the

16   CFAA, but also by relying on the wrong agency test.  Even where the text and purpose of federal

17   statutes permit incorporation of traditional agency principles, this Court applies federal common

18   law agency rules.  *See Sun Microsys.*, 622 F. Supp. 2d at 899.  To determine parent-subsidiary

19   agency liability under a federal claim, this Court requires a plaintiff to demonstrate, with respect

20   to the particular wrongful act, "(1) a manifestation by the principal that the agent shall act for him;

21   (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the

22   parties that the principal is to be in control of the undertaking."  *Id.* (relying on Restatement

23   (Third) of Agency, § 1:01); *see also Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229,

24   1239-40 (N.D. Cal. 2004) (stating that a plaintiff "must" establish these elements and requiring an

25   agency relationship with respect to the particular cause of action).  The agency test stated in

26   *Dong*—a case that involved a state law claim and that relied on cases about personal

27   jurisdiction—does not govern liability under federal claims.  *See Sun Microsys.*, 622 F. Supp. 2d

28   at 898-99.  More fundamentally, Plaintiffs' proposed standard contradicts the clear weight of

1   authority regarding vicarious liability under the CFAA.

2          2.      Plaintiffs Fail to Present Evidence that SAP Directed TN's Access.

3          Because Plaintiffs "point[] no evidence in the record that [SAP] directed [TN] to take

4   any of the alleged improper actions," this Court should deny summary judgment.  *See Calence*,

5   2007 U.S. Dist. LEXIS 38043, at *15-16.  Plaintiffs allege that TN violated the CFAA by

6   accessing Oracle customer support websites to develop and test Titan and after a customer's

7   maintenance end date.  D.I. 649 (Pls.' Mot.) at 19-20.  To hold SAP indirectly liable, Plaintiffs

8   must prove that SAP "directed" TN to access Oracle's support systems in these ways.

9          Plaintiffs' evidence in support of their proposed standard does not meet the CFAA

10  standard for indirect liability.  Plaintiffs point to SAP's control over TN's support activities, but

11  that does not establish that SAP directed any wrongful action, much less the particular alleged

12  acts.  *See* D.I. 649 (Pls.' Mot.) at 24.  Nor is it relevant that access-related issues "were discussed"

13  with SAP or that SAP "continued to allow" this access.  *Id.* at 25.  The CFAA imposes liability

14  only for directing CFAA violations; it does not create a duty to prevent CFAA violations.  *See*

15  *Garland-Sash*, 2007 U.S. Dist. LEXIS 20909, at *12.  And SAP's ability to issue directives—as

16  evidenced by its directive that TN remove software copies from its computers—does not establish

17  that SAP actually directed TN's alleged improper access in the first place.  *See* D.I. 649 (Pls.'

18  Mot.) at 16, 24.  Indeed, SAP's directive suggests the opposite.  Finally, it makes no difference

19  that TN's downloading activities may have been an "urgent step" in its service offering because

20  Plaintiffs cite no evidence that SAP directed TN to take that "step."  D.I. 649 (Pls.' Mot.) at 24.

21         Even if this Court were to import into the CFAA a more general agency theory, Plaintiffs'

22  motion should still be denied.  This Curt applies a three-part agency test for a parent's liability

23  under federal claims, *see Sun Microsys.*, 622 F. Supp. 2d at 899, but Plaintiffs have identified no

24  evidence that this test is met with respect to TN's specific, alleged CFAA violations.  *See Bowoto*,

25  312 F. Supp. 2d at 1240 (agency relationship must be considered with respect to the particular

26  claim of wrongdoing).  The agency question, moreover, is "a highly fact-specific inquiry" not

27  amenable to summary judgment.  *Id.* at 1235; *see, e.g.*, *Sun Microsys.*, 622 F. Supp. 2d at 901.

28

SVI-79319v1                          - 23 -

1

3.        Plaintiffs Have Neither Raised SAP's Liability under the CDAFA, Nor Shown that SAP Directed TN's Wrongful Acts.

2

3      Plaintiffs' Motion cannot reasonably be read to move for summary judgment on SAP's

4  liability under the CDAFA.  Section IV of Plaintiffs' Motion exclusively addresses TN's alleged

5  direct liability under the CFAA, referencing direct liability under Cal. Penal Code § 502(c)(7)

6  only in a footnote.  *See* D.I. 649 (Pls.' Mot.) at 23 n.14.  Even if this passing reference sufficiently

7  raises Oracle's claim of direct liability under the CDAFA, *but see Sun Microsys.*, 622 F. Supp. at

8  897 (plaintiffs may not "tangentially raise[] . . . argument[s] in a cursory footnote in their briefs"),

9  it does not even hint at a claim of indirect liability under that statute.  Plaintiffs' mere mention of

10  section 502(c)(7) in its statement of "requested relief," unaccompanied by any reasoned

11  argument, is likewise insufficient.

12      In any event, the criminal nature of the CDAFA and the text of its civil remedy provision

13  indicate that indirect liability should apply only where a defendant has directed the wrongful acts.

14  *Compare* Cal. Penal Code § 502(e)(1) ("In addition to any other civil remedy available, [certain

15  persons] who suffer[] damage or loss by reason of a violation of any of the provisions of

16  subdivision (c) may bring a civil action against the violator for compensatory damages and

17  injunctive relief or other equitable relief."), *with* 18 U.S.C. § 1030(g) ("Any person who suffers

18  damage or loss by reason of a violation of this section may maintain a civil action against the

19  violator to obtain compensatory damages and injunctive relief or other equitable relief.").  This

20  Court should thus apply the standard of indirect liability articulated in *Calence* and *Garland-Sash*.

21  Even if state law agency principles applied, summary judgment still would be inappropriate

22  because California law considers agency to be a question of fact that should not typically be

23  decided on summary judgment.  *See, e.g.*, *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469,

24  480 (9th Cir. 1991) (applying California agency law).  Therefore, even if Plaintiffs' opening brief

25  adequately raises a CDAFA claim, summary judgment should be denied.

26

27

28

1

**V.      <u>CONCLUSION</u>**

2         The Court should dismiss OIC's pre-March 1, 2005 copyright infringement claims for all

3    PeopleSoft and JDE copyright registrations asserted in this case and deny Plaintiffs' Motion with

4    respect to those claims.  The Court should also deny summary judgment:  (1) for contributory

5    copyright infringement, (2) dismissing Defendants' second and third affirmative defenses, (3) for

6    claims arising under 18 U.S.C. §§ 1030(a)(5)(A)(i)-(iii), and, (4) for indirect liability under the

7    CFAA and CDAFA.

8    Dated:  March 31, 2010                    JONES DAY

9

10                                            By: /s/ Tharan Gregory Lanier

11                                                Tharan Gregory Lanier

12                                            Counsel for Defendants

13                                            SAP AG, SAP AMERICA, INC., and
                                              TOMORROWNOW, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28