BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  (415) 393-2000
Facsimile:  (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
ORACLE USA, INC., ORACLE INTERNATIONAL
CORPORATION, ORACLE EMEA LIMITED, AND
SIEBEL SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>        Plaintiffs,<br>    v.<br><br>SAP AG, *et al.*,<br><br>        Defendants. | CASE NO.  07-CV-01658 PJH (EDL)<br><br>**ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      May 5, 2010<br>Time:     9:00 am<br>Place:    3rd Floor, Courtroom 3<br>Judge:   Hon. Phyllis J. Hamilton |

1

## TABLE OF CONTENTS

2

Pages

3    I.      INTRODUCTION ............................................................................................... 1

4    II.     LEGAL STANDARD FOR SAP'S MSJ ........................................................... 2

     III.    OEMEA'S CLAIMS ARE PROPERLY BEFORE THIS COURT ................... 2

5
             A.    Admissions In SAP's Answer Defeat SAP's Objections to OEMEA's
6                  California Claims ..................................................................................... 3

7            B.    OEMEA's Claims Are Not "Wholly Extraterritorial" ........................... 4

             C.    The Law Allows Out-Of-State Parties Like OEMEA To Seek Relief For
8                  Harm Partly Occurring In, Or Emanating From, California ................... 6

             D.    OEMEA's Inclusion In The Case Fully Comports With Due Process ................. 7
9
     IV.     ORACLE DOES NOT SEEK THE LOST PROFITS THAT SAP ASKS THE
10           COURT TO BAR ................................................................................................. 9

11   V.      ORACLE MAY PURSUE "SAVED DEVELOPMENT COSTS" UNDER ITS
             UNJUST ENRICHMENT CLAIM AND DOES NOT SEEK THEM UNDER
             OTHERS ............................................................................................................ 12
12
             A.    "Saved Development Costs" Are A Proper Damages Measure For
13                 Oracle's Unjust Enrichment/Restitution Claim ................................... 12

14           B.    Oracle Seeks No Saved Development Cost Damages Under Its Other State
                   Law Claims ........................................................................................... 14
15
     VI.     ORACLE MAY INCLUDE SAVED R&D COSTS IN ITS FAIR MARKET
             LICENSE MEASURE OF COPYRIGHT DAMAGES ................................... 14
16
             A.    SAP Improperly Seeks Reconsideration Of The Court's January 28, 2010
17                 Order ..................................................................................................... 14

18                 1.    The Court Has Already Rejected SAP's Argument That The R&D
                         Costs It Saved Cannot Be Introduced Into Evidence ............................. 15
19
                   2.    SAP Did Not Satisfy Civil Local Rule 7-9's Prerequisites for
                         Reconsideration of the "Saved Costs" Question .................................... 16
20
             B.    SAP Is Wrong That Its Saved R&D Costs Cannot Be Considered ................... 17

21   VII.    ORACLE HAS DISCLOSED ALL ITS TRESPASS TO CHATTELS AND
             CDAFA DAMAGES, WHICH INCLUDE LOST PROFITS ......................... 20
22
             A.    Oracle Has Quantified All the Damages That It Seeks And Which Are
23                 Final For Its Trespass To Chattels And CDAFA Claims ................................... 21

             B.    SAP Does Not Carry Its Burden Of Proving Undue Prejudice ......................... 22
24
             C.    Lost Profits Are Recoverable Under Oracle's CDAFA Claim .......................... 23

     VIII.   CONCLUSION ................................................................................................. 25

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Pages

3

**FEDERAL CASES**

4

*Albemarle Paper Co. v. Moody*,

5
   422 U.S. 405 (1975)..................................................................12

6

*Arabian v. Sony Elec. Inc.*,
   No. 05-CV-1741, 2007 U.S. Dist. LEXIS 12715 (S.D. Cal. Feb. 22, 2007)...........................8

7

8

*Barco N.V. v. Tech. Props. Ltd.*,
   No. 08-5398, 2010 WL 604673 (N.D. Cal. Feb. 19, 2010)...................................14

9

*Bourns, Inc. v. Raychem Corp.*,

10
   331 F.3d 704 (9th Cir. 2003)..................................................................14

11

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
   274 F. Supp. 2d 86 (D. D.C. 2003) ..................................................................7

12

*Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*,

13
   887 F.2d 399 (2d Cir. 1989)..................................................................19

14

*Celotex Corp. v. Catrett*,

15
   477 U.S. 317 (1986)..................................................................2

16

*Churchill Village LLC v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..................................................................8

17

*County of Tuolomne v. Sonora Cmty. Hosp.*,

18
   236 F.3d 1148 (9th Cir. 2001)..................................................................2

19

*Craigslist, Inc. v. Naturemarket, Inc.*,
   No. 08-5065 PJH, 2010 U.S. Dist. LEXIS 19992 (N.D. Cal. Jan. 28, 2010) ............21, 22, 25

20

*On Davis v. The Gap*,

21
   246 F.3d 152 (2nd Cir. 2001)..................................................................19

22

*Del Mar Seafoods, Inc. v. Cohen*,

23
   No. 07-2952, 2007 U.S. Dist. LEXIS 98610 (N.D. Cal. Aug. 27, 2007) ...........................17

24

*Deltak, Inc. v. Advanced Sys., Inc.*,

25
   767 F.2d 357 (7th Cir. 1985)..................................................................19

26

*Fernandez v. Taser Int'l, Inc.*,
   No. 06-4371, 2008 WL 4775779 (N.D. Cal. Oct. 27, 2008) ..................................11

27

*Florida v. Tenet Healthcare Corp.*,

28
   420 F. Supp. 2d 1288 (S.D. Fla. 2005) ..................................................................6

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES
(continued)

2                                                                              <u>Pages</u>

3  *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
4    556 F. Supp. 2d 1122 (E.D. Cal. 2008)............................................................... 22

5  *Hertz Corp. v. Friend*,
     No. 08-1107, 2010 WL 605601 (U.S. Feb. 23, 2010) ............................................ 8
6
   *Hsieh v. Peake*,
7    No. 06-5281-PJH, 2008 U.S. Dist. LEXIS 23649 (N.D. Cal. Mar. 25, 2008)...................... 22

8  *Mars, Inc. v. Coin Acceptors, Inc.*,
     527 F.3d 1359 (Fed. Cir. 2008)................................................................ 10, 12
9
10 *Meridian Project Sys., Inc., v. Hardin Constr. Co., LLC*,
     404 F. Supp. 2d 1214 (E.D. Cal. 2005).......................................................... 7
11
   *Network Appliance, Inc. v. Bluearc Corp.*,
12   No. 03-5665, 2005 U.S. Dist. LEXIS 16726 (N.D. Cal. June 27, 2005) ............................ 23

13 *Optistreams, Inc. v. Gahan*,
     No. 05-117 REC, 2006 WL 829113 (E.D. Cal. Mar. 28, 2006) ............................ 21
14
15 *Paulsen v. CNF Inc.*,
     559 F.3d 1061 (9th Cir. 2009)................................................................... 9
16
17 *Phillips Petroleum v. Shutts*,
     472 U.S. 797 (1985)............................................................................ 8
18
   *Preiser v. Newkirk*,
19   422 U.S. 395 (1975)........................................................................... 11
20 *Rite-Hite Corp. v. Kelley Co., Inc.*,
     56 F.3d 1538 (Fed. Cir. 1995)................................................................. 12
21
22 *Roesgen v. Am. Home Prods. Corp.*,
     719 F.2d 319 (9th Cir. 1983).................................................................... 8
23 *SEB, A.A. v. Montgomery Ward & Co., Inc.*,
     412 F. Supp. 2d 336 (S.D.N.Y. 2006)........................................................... 10
24
25 *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
     562 F.2d 1157 (9th Cir. 1977).................................................................. 19
26 *Smith v. Cardinal Logistics Management Corp.*,
27   No. 07-2104, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ....................................... 7

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

TABLE OF AUTHORITIES
(continued)

2                                                                                          <u>Pages</u>

3   *Solid Host, NL v. Namecheap, Inc.*,

4         652 F. Supp. 2d 1092 (C.D. Cal. 2009) ............................................................ 6

5   *Speyer v. Avis Rent a Car Sys., Inc.*,

          415 F. Supp. 2d 1090 (S.D. Cal. 2005) ........................................................... 7, 8
6

7   *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,

          608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................................... 11

8   *Telex Corp. v. Int'l Bus. Mach. Corp.*,

9         510 F.2d 894 (10th Cir. 1975)........................................................................ 14

10  *Tidenberg v. Bidz.com*,

          No. 08-5553, 2009 U.S. Dist. LEXIS 21916 (C.D. Cal., Mar. 4, 2009) .................. 8
11

12  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,

          425 F.3d 1366 (Fed. Cir. 2005), *rev'd on other grounds by Cardiac Pacemakers, Inc.*
13        *v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) (en banc) ...................... 9, 12

14  *United States v. Alpine Land & Reservoir Co.*,

          887 F.2d 207 (9th Cir. 1989)......................................................................... 14

15  *United States v. Beardslee*,

16        No. 94-0186, 2008 U.S. Dist. LEXIS 105667 (N.D. Cal. Dec. 2, 2008) ................ 17

17  *Wendt v. Host Int'l, Inc.*,

          125 F.3d 806 (9th Cir. 1997)......................................................................... 23
18

19  *Wyatt Tech. Corp. v. Smithson*,

          No. 05-1309, 2006 WL 5668246 (C.D. Cal. Aug. 14, 2006), *aff'd in part, rev'd in*
20        *part by* 345 Fed. Appx. 236 (9th Cir. 2009) ................................................... 25

21  **STATE CASES**

22  *Ajaxo, Inc. v. E*Trade Group, Inc.*,

          135 Cal. App. 4th 21 (2005) ......................................................................... 13, 14
23

24  *Cal. Fed. Bank v. Matreyek*,

          8 Cal. App. 4th 125 (1992) ........................................................................... 13

25  *Coast Oyster v. Perluss*,

26        218 Cal. App. 2d 492 (1963).......................................................................... 23, 24

27  *Diamond Multimedia Sys., Inc. v. Superior Court*,

          19 Cal. 4th 1036 (1999) ................................................................................ 6, 7
28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

TABLE OF AUTHORITIES
(continued)

2
Pages

3
*Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists,*
4
    227 Cal. App. 2d 675 (1964)..................................................................... 25

5
*Ghirardo v. Antonioli,*
    14 Cal. 4th 39 (1996) ............................................................................. 13

6
*Guy v. IASCO,*
7
    No. B168339, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004)........................ 7

8
*Hassan v. Mercy Am. River Hosp.,*
    31 Cal. 4th 709 (2003) ........................................................................... 24
9

10
*Hurtado v. Superior Court,*
    11 Cal. 3d 574 (1974) .......................................................................... 8, 9

11
*Intel Corp. v. Hamidi,*
12
    30 Cal. 4th 1342 (2003) ......................................................................... 20

13
*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95 (2006) ............................................................................... 6
14

15
*Lectrodryer v. SeoulBank,*
    77 Cal. App. 4th 723 (2000) .................................................................... 13

16
*Muller v. Auto Club of S.,*
17
    61 Cal. Cap. App. 4th 431 (1998) ............................................................. 23

18
*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal. App. 4th 214 (1999) .................................................................. 6, 7
19

20
*Ornelas v. Randolph,*
    4 Cal. 4th 1095 (1993) ........................................................................... 24

21
*Pitney-Bowes, Inc. v. State Dept. of Food and Agric.,*
22
    108 Cal. App. 3d 307 (1980)................................................................... 23

23
**FEDERAL STATUTES**

24
28 U.S.C. § 1367 ................................................................................ 1, 3

25
28 U.S.C. § 1391 .................................................................................... 3

26
**STATE STATUTES**

27
Cal. Civ. Code § 3333 ............................................................................ 25

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

TABLE OF AUTHORITIES
(continued)

Pages

Cal. Penal Code § 502 ..........................................................................................21, 23, 24

RULES

Civil Local Rule 3-4 ........................................................................................................ 7

Civil Local Rule 7-9 ........................................................................................... 1, 15, 16

Fed. R. Civ. P. 37 ...................................................................................................... 22, 23

Fed. R. Civ. P. 56 ............................................................................................................. 2

OTHER AUTHORITIES

4 *Nimmer on Copyright* (Matthew Bender Rev. Ed.) at § 14.02[B][1] at 14-21 ......................... 20

California Bill Analysis, Senate Floor, 1999-2000 Regular Session, Assembly Bill 2232,
    dated June 20, 2000 .......................................................................................... 24

California Bill Analysis, Senate Floor, 1999-2000 Regular Session, Assembly Bill 2727,
    dated August 7, 2000 ........................................................................................ 24

California Bill Analysis, Assembly Floor, 1999-2000 Regular Session, Assembly Bill
    2727, dated August 7, 2000 .............................................................................. 24

California Bill Analysis, Senate Floor, 1999-2000 Regular Session, Assembly Bill 2727,
    dated August 25, 2000 ...................................................................................... 25

Financial Accounting Standards Board Accounting Standards Codification Topic 820............. 20

Gordon V. Smith & Russell L. Parr, Intellectual Property, Valuation, Exploitation, and
    Infringement Damages (2005) ..................................................................... 18, 20

Ninth Circuit Model Civil Jury Instruction 17.23 (Copyright Damages - Actual Damages)
    (2007) ................................................................................................................ 19

Tomlin, Jonathan, *Mars v. Coin Acceptors* and the "Hypothetical Negotiation" Approach
    to Reasonable Royalty Calculations," (August 5, 2008)....................................... 12

CASE NO.  07-CV-01658 PJH (EDL)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **I.     INTRODUCTION**

2    Defendants' ("SAP's") latest motion for partial summary judgment ("MSJ") does not

3    disavow liability for any of TomorrowNow, Inc.'s ("SAP TN's") massive unauthorized

4    downloading and copying of Oracle's copyrighted applications and related support materials, or

5    for SAP AG's and SAP America, Inc.'s knowledge, control and complicity.  Instead SAP asks

6    the Court – yet again – to endorse ways to shield SAP from paying Oracle in full for what SAP

7    took and the damage it caused.  SAP's arguments either fail under the law and facts, are a rehash

8    of arguments already lost, or seek relief where there is no dispute.

9    Contrary to SAP's first argument, plaintiff Oracle EMEA Ltd.'s ("OEMEA") claims have

10   more than sufficient connections to California to allow OEMEA to bring its claims as a pendent

11   party under 28 U.S.C. § 1367.  Indeed, in its Answer, SAP already admitted that all plaintiffs'

12   claims "derive from a common nucleus of operative facts," that "a substantial part of the events

13   giving rise to the dispute occurred in this district," and to numerous relevant California-based

14   activities.  SAP's second argument seeks an improper advisory opinion barring the Oracle

15   plaintiffs from pursuing lost profits damages that they do not seek.  SAP's third argument – that

16   Oracle cannot recover the billions in research and development ("R&D") costs or licensing costs

17   SAP avoided having to incur by using Oracle's software and related support materials – is flat

18   wrong:  unjust enrichment envisions and endorses having SAP repay Oracle for the benefits SAP

19   unjustly retained, and one of the largest and most valuable benefits SAP received was immediate

20   and free access and use of vast quantities of Oracle software and support materials, that SAP

21   never had to develop itself.

22   SAP's fourth argument violates Civil Local Rule 7-9 by improperly rearguing – without

23   Court permission or proper justification – that the value to SAP of avoiding R&D costs is not

24   relevant to the fair market value ("FMV") of Oracle's hypothetical license damages model for

25   SAP's copyright infringement.  The Court called this "one of the two main issues" of SAP's

26   prior damages summary judgment motion ("1st MSJ") and denied the motion in full.  The Court

27   held that "Oracle should be permitted to present evidence regarding the fair market value of the

28   copyrights that SAP allegedly infringed, including expert testimony based on established

1

1    valuation methodology." Dkt No. 628 ("Order on 1st MSJ") at 5:5-7. That evidence includes

2    the billions in development costs that SAP did not have to spend. As Oracle previously

3    established, nothing in Ninth Circuit law – or any other credible authority – precludes the jury's

4    consideration of such relevant evidence, and established valuation methodology endorses

5    incorporating such evidence into the FMV analysis.

6          SAP's final argument is a non-issue. SAP argues that Oracle should be restricted from

7    seeking undisclosed damages for its Trespass to Chattels and Computer Data Access and Fraud

8    Act ("CDAFA") claims. Oracle did disclose those damages. Moreover, its damages expert has

9    exhaustively detailed the lost profits calculations and the investigation costs Oracle seeks to

10   recover under these and other claims. SAP cannot claim surprise or prejudice. Finally, SAP is

11   simply wrong that Oracle cannot seek the lost profits it has disclosed under the CDAFA; the

12   language of the remedies provision and the legislative history confirm the availability of broad

13   compensatory damages.

14         SAP's efforts to further pare down its monetary exposure for the harm Defendants have

15   caused Oracle should be denied in full.

16   **II.    LEGAL STANDARD FOR SAP'S MSJ**

17         As the moving party, SAP bears the burden of proving "that there is no genuine issue as

18   to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

19   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, the Court

20   must view the evidence in the light most favorable to Oracle, the nonmoving party. *County of*

21   *Tuolomne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

22   **III.   OEMEA'S CLAIMS ARE PROPERLY BEFORE THIS COURT**

23         Plaintiffs OEMEA, Oracle USA, Inc. (now known as Oracle America, Inc.) and Oracle

24   International Corporation ("OIC") bring four California law claims against Defendants:

25   intentional and negligent interference with customer relationships, and unfair competition and

26   unjust enrichment (also brought by plaintiff Siebel Systems, Inc.). Declaration of Holly House

27   ("House Decl."), ¶ 2, Ex. 1 (Fourth Amended Complaint ("FAC")) ¶¶ 190-217, 224-26. In its

28   Answer, SAP admitted that OEMEA is a proper plaintiff and that its California law claims

2

1    should be tried with those of the other Oracle plaintiffs under the doctrine of supplemental

2    jurisdiction over pendent claims and parties.  *Id.* ¶ 2, Exs. 1, 2 (FAC, Answer to FAC

3    ("Answer")) ¶47.  This admission contradicts SAP's about-face assertion that OEMEA's

4    California claims are improper because they are purportedly "wholly extraterritorial" and that

5    pursuing them thus violates due process.  MSJ at III.  SAP's argument is also based on

6    inapplicable and misapplied law, and contradicted by substantial evidence of California

7    connections.[1]

8         A.    **Admissions In SAP's Answer Defeat SAP's Objections to OEMEA's**
               **California Claims**

9

10        Oracle pleads supplemental jurisdiction over OEMEA and its state law claims under

11   28 U.S.C. § 1367.  House Decl., ¶ 2, Ex. 1 (FAC) ¶ 47 ("This Court has supplemental subject

12   matter jurisdiction over the pendent state law claims and parties under 28 U.S.C. § 1367, because

13   these claims are *so related to Oracle's claims under federal law that they form part of the same*

14   *case or controversy and derive from a common nucleus of operative facts.*") (emphasis added).

15   SAP twice unconditionally admitted these allegations.  *See* Dkt Nos. 182, 225 ¶ 47; House Decl.,

16   ¶ 2, Ex. 2 (Answer) ¶ 47.  SAP also twice admitted:  "Venue in this district is appropriate,

17   pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the dispute

18   occurred in this district, a substantial part of the property that is the subject of the action is

19   situated in this district, and the Court has personal jurisdiction over each of the parties as alleged

20   throughout this Complaint."  *See* Dkt Nos. 182, 225 ¶ 48; House Decl., ¶ 2, Exs. 1, 2 ¶ 48.

21   Further, SAP repeatedly admitted to numerous relevant California activities.  *See* Dkt Nos. 182,

22   225 ¶¶ 43, 103; House Decl., ¶ 2, Exs. 1, 2 ¶¶ 43, 106.  SAP cannot claim now that OEMEA's

23   claims are unique and do not derive from common relevant facts involving the very same

24   California claims brought by the other Oracle plaintiffs.  In addition, SAP did not plead any

25   affirmative defenses challenging the propriety of OEMEA's California claims, which further

26   ─────────────

[1]  The Court should not confuse OEMEA's standing with that of dismissed plaintiff J.D.
Edwards Europe ("JDEE").  The basis for JDEE's dismissal was extraterritorial copyright

27   infringement.  *See* Dkt. No. 224 at 6:1-6 (holding that infringement of JDEE's "right to distribute
extraterritorially" does not give rise to a "claim of copyright infringement").  OEMEA does not

28   assert a copyright claim, so there is no similar issue with OEMEA.

1    discredits SAP's current argument.  *Id.* ¶ 2, Ex. 2 (Answer) at 24-26.

2           In its MSJ, SAP never mentions its prior admissions or its failure to plead any challenges

3    to OEMEA's California law claims.  Its Answer alone should defeat SAP's argument that

4    OEMEA's California law claims are improper and unconstitutional.

5           **B.       OEMEA's Claims Are Not "Wholly Extraterritorial**"

6           SAP's argument against OEMEA's California claims rest on SAP's assertion that

7    OEMEA's claims are "wholly extraterritorial."  MSJ at III.A&B.  The evidence SAP cites in

8    support of this argument is irrelevant in light of the facts it ignores, which are dispositive.  A

9    comparison of each side's evidence follows.

10          *SAP's Evidence:* SAP first notes OEMEA is an Irish company with a sales territory and

11   customers outside of the United States.  MSJ at 4-5.  But, as explained in Section III.C below,

12   OEMEA's nationality and sales territory do not transform OEMEA's claims into extraterritorial

13   claims.  SAP also claims, without support, that it is "undisputed" that OEMEA bases its claims

14   "on alleged TN support and marketing activities that took place outside of California."  MSJ at

15   5:8-9.  Below, Oracle shows not only myriad marketing and support activities emanating from

16   California, but scores of other California connections as well.

17          SAP then asserts, again without support, that SAP TN's "marketing to European

18   customers occurred in Europe."  MSJ at 5:12.  To the contrary, Oracle shows below the

19   significant SAP TN and SAP marketing and sales efforts in California aimed at exploiting SAP

20   TN's corrupt support model to win OMEA customers.

21          Finally, SAP notes that, in opposing SAP's Rule 12(b)(6) motion to dismiss JDEE,

22   Oracle cited the fact that the software environments SAP TN used to support customers were

23   stored on Texas servers.  MSJ at 5:11-20.  Under the law cited in Section III.C below, that Texas

24   connection does not negate the many California connections.  Moreover, SAP cannot deny that

25   the environments on those very servers were built in part using downloads accessed and taken

26   through Oracle's California computer systems.  *See* House Decl., ¶ 22 & cited Exs.

27          *Oracle's Evidence:* As SAP admits, all Oracle plaintiffs' claims derive from "a common

28   nucleus of operative facts."  *Id.*, ¶ 2 & Exs. 1, 2 (FAC, Answer) ¶ 47.  The same unlawful and

4

1   disruptive actions by SAP also triggered OEMEA's customer losses, which actions will be

2   proved by much of the same evidence as that used to prove the other plaintiffs' claims.  Much of

3   the critical activity occurred in California:

- *Agassi.*  Then SAP AG board member and head of product development, Shai Agassi, *a California resident*, hatched the plan to acquire SAP TN, and designed its anti-Oracle business model going forward.  House Decl., ¶ 7 & cited Exs. Indeed, when SAP announced its acquisition of SAP TN, Agassi likened the impact on Oracle to "a bomb going off on the eleventh floor [*i.e.,* the executive suite at *Oracle's Redwood Shores, CA headquarters*]."  *Id.*, ¶ 8 & cited Exs.

- *Zepecki.*  Pre-acquisition, Agassi also charged SAP Vice President of Products and former PeopleSoft VP, John Zepecki, a *California resident*, with assessing issues with TN's service delivery method.  Zepecki then communicated its likely illegality to members of the SAP board.  *Id.*, ¶¶ 9-10 & cited Exs.; Oracle's MSJ at 14:11-20.

- *SAP's Legal Advice.*  From due diligence until the wind-down of SAP TN, SAP's legal advice about the actions – and inactions – of all Defendants came from their *Palo Alto based* lawyers.  House Decl., ¶ 11 & cited Exs; Oracle MSJ at 14:27-28, 15:1-4.  In addition, many of SAP TN's customer support agreements were reviewed, negotiated, and approved by Defendants' corporate counsel, Chris Faye and Scott Trainor, who performed much of this work from SAP corporate offices *located in California*.  House Decl., ¶ 12 & cited Exs.  These included the contracts of at least one OEMEA customer.  *Id.*

- *SAP TN California Employee Acts.*  For years, SAP TN employees – including its founder, head of sales and other high ranking employees – committed wrongful acts of interference against OEMEA working from offices *located in California*. *Id.*, ¶ 13 & cited Exs.  This is not surprising because much of SAP TN's employee base came from PeopleSoft, headquartered in Pleasanton.  *Id.*, ¶ 14 & cited Exs.

- *SAP's Safe Passage Program.*  SAP's Safe Passage program (including SAP TN's pivotal part of same) was conceived, implemented, and managed by SAP's employees *located in California*.  *Id.*, ¶ 15 & cited Exs.  SAP TN was the "cornerstone" of Safe Passage, which was designed to wrongfully interfere with Oracle's customer relationships, and SAP's *Palo Alto* marketers worked with SAP TN's *California* employees on Safe Passage.  *Id.*, ¶ 16 & cited Exs.

- *Europe Outreach.*  Safe Passage included specific efforts to use SAP TN to lure customers located in Europe (*i.e.*, OEMEA's customers).  *Id.*, ¶ 17 & cited Exs. Indeed, expanding SAP TN's geographic abilities to compete with Oracle in Europe was one of SAP's first priorities.  *Id.*, ¶ 18 & cited Exs.  SAP's *California-based* Safe Passage group fielded many of SAP TN's marketing queries about Europe.  *Id.*, ¶ 19 & cited Exs.

- *SAP's OEMEA Customer Efforts.*  In addition, all Defendants participated in sales and marketing activities which targeted OEMEA's customers – much of which emanated from employees *located in California*.  *Id.*, ¶ 20 & cited Exs.

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  • *Board and Other Meetings.*  Each of the three Defendants had meetings **in California** during the relevant period, and SAP TN's business model, its role in Safe Passage and its expansion into Europe were discussed at some of those. *Id.*, ¶ 21 & cited Exs.

2  • *Systems Location.*  Over the relevant period, SAP TN repeatedly accessed PeopleSoft's and then Oracle's computer systems **located in California** to use massive amounts of Oracle proprietary software support materials to lure away, and ultimately provide discounted support to, OEMEA customers.  *See* Oracle's MSJ at Section IV; House Decl., ¶ 22 & cited Exs.

On its own admissions and the above facts, SAP cannot show that OEMEA's California claims result in improper application of California law to solely extraterritorial activity.

**C.   The Law Allows Out-Of-State Parties Like OEMEA To Seek Relief For Harm Partly Occurring In, Or Emanating From, California**

Anyone who has suffered harm "from unlawful acts or omissions in California may recover damages [in California] from the person at fault."  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999) (citing Cal. Civ. Code § 3281).  SAP cites the "'presumption against California law being given extraterritorial effect'" but acknowledges it arises only "'when the wrongful act as well as the injury occurred outside California.'"  MSJ at 2:27-28 (quoting *Arabian v. Sony Elec. Inc.*, No. 05-CV-1741, 2007 U.S. Dist. LEXIS 12715, at *30 (S.D. Cal. Feb. 22, 2007)).  Even where, as here, relevant conduct outside of California also occurs, California law still applies where there are adequate California connections, a proposition affirmed by each case SAP cites.  MSJ at 3:4-19; *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 (2006) (applying California privacy law to surreptitious tapings where only one participant to call in California and taping initiated out-of-state); *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1122 n.67 (C.D. Cal. 2009) (denying motion to dismiss nonresident's California Unfair Competition Law ("UCL") claim because complaint alleged conduct occurred in California); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1311 (S.D. Fla. 2005) (denying motion to dismiss Florida resident's California UCL claim because defendant devised, implemented, and directed scheme in and from California).[2]

_____

[2] SAP's cases also recognize that adequate California connections end the debate.  *See, e.g.*, *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224-25 (1999) (California "state statutory remedies may be invoked by out-of-state parties when they are harmed by

6

1    SAP's intimation that OEMEA's Irish nationality decides the issue also is incorrect.  MSJ

2    at 4:14-17.  SAP's only cited case did not dismiss the Canadian plaintiff's claim based on its

3    nationality but because "the specific misconduct identified . . . occurred in Chicago, Illinois -

4    clearly outside the purview of the UCL."  *Meridian Project Sys., Inc., v. Hardin Constr. Co.,*

5    *LLC*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005); *see also Burnett v. Al Baraka Inv. & Dev.*

6    *Corp.*, 274 F. Supp. 2d 86, 98-99 (D. D.C. 2003) (foreign national plaintiffs' claims allowed

7    under 28 U.S.C. § 1367 because their claims "are unquestionably so related to those of the other

8    [U.S.] plaintiffs as to form part of the same case or controversy").

9    **D.      OEMEA's Inclusion in the Case Fully Comports With Due Process**

10          SAP's due process argument also fails.  SAP correctly cites the test: California "'must

11   have a significant contact or significant aggregation of contacts, creating state interests, such that

12   choice of its law is neither arbitrary nor fundamentally unfair.'"  MSJ at 6:7-9 (quoting *Arabian*,

13   2007 U.S. Dist. LEXIS 12715, at *31).  However, SAP cannot show that test is not satisfied, for

14   four reasons.

15          First, SAP's due process complaints all rest on SAP's assertion that "OEMEA's claims

16   are not based on injuries or conduct that occurred in California."  MSJ at 6:15-17.  As shown

17   above, that is not true. *See* Section III.B.

18          Second, non-residents such as OEMEA are permitted a right of action under California

19   UCL law (and the related California common law claims OEMEA presses) because California

20   has a "clear and substantial interest in preventing fraudulent practices in this state," and in

21   "extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring

22   in California."  *Diamond Multimedia*, 19 Cal. 4th at 1059-64.  None of SAP's inapposite class

23   ——————————
     wrongful conduct occurring in California.").  As a fallback, SAP argues that any California acts
     "must give the claim more than a superficial connection to the state."  MSJ at 3:20-21.  SAP's
24   authorities are off-point in light of the substantial connections described below.  Moreover, in
     *Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) a putative class
25   of California residents was not allowed to pursue California claims where, unlike here,
     defendants' injurious conduct (charging fees) occurred outside California.  *Guy v. IASCO*, No.
26   B168339, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004), cannot be cited under Civil L.R. 3-
     4(e); *see also Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104, 2008 WL 4156364, at *6
27   n.5 (N.D. Cal. Sept. 5, 2008).  The facts also differ:  *Guy* rejected application of California
     employment law where most plaintiffs received their paychecks outside California, never paid
28   California taxes, and performed 90% of their work outside California.  2004 WL 1354300, at *2.

1    action authorities undercuts this rule.[3]

2            Third, SAP does not carry its burden of showing that Defendants and OEMEA did not

3    have a reasonable expectation that California law would govern OEMEA's claims.  *Cf. Roesgen*

4    *v. Am. Home Prods. Corp*., 719 F.2d 319, 321 (9th Cir. 1983) (California Supreme "[C]ourt

5    w[ould] decline to apply California law when the facts indicate that the parties' only reasonable

6    expectations were that the law of a foreign state would apply.").  Both SAP (which contemplated

7    suit by Oracle in connection with its acquisition of SAP TN) and OEMEA (as an Oracle

8    subsidiary) would reasonably expect that the Oracle parent company headquartered in California

9    would control this litigation.  House Decl., ¶ 23 & cited Exs.  *Cf. Hertz Corp. v. Friend*, No. 08-

10   1107, 2010 WL 605601, at *11 (U.S. Feb. 23, 2010) (holding that jurisdictional phrase "principal

11   place of business" means the place where the corporation's high level officers direct, control, and

12   coordinate the corporation's activities).  Among other indicators, SAP knew: Oracle is

13   headquartered in California; PeopleSoft (whose customers were the targets of Safe Passage) was

14   headquartered in California; SAP TN was comprised of many California-based former

15   PeopleSoft employees; many SAP employees relevant to the success of SAP's plans to hurt

16   Oracle through SAP TN (including its then board member, Shai Agassi, its legal team, and its

17   Apollo Safe Passage team) were in California.  House Decl. ¶ 24 & cited Exs.  SAP can claim no

18   surprise at being sued by OEMEA (or any other Oracle plaintiff) here and under California law.

19           Finally, SAP cannot say what law would better apply to OEMEA's claims rather than

20   California law, and does not attempt to meet the requirements for applying any alternative choice

21   of law, which is its burden.  *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974) ("[G]enerally

22   speaking the forum will apply its own rule of decision unless a party litigant timely invokes the

---

23   [3] SAP principally relies on class action decisions wrestling with a lack of California conduct and
     class-specific problems not at issue here.  MSJ at III.C.  *Phillips Petroleum v. Shutts*, 472 U.S.
24   797, 805 (1985) involved a defendant's concern over the binding impact of case resolution on
     absent plaintiff class members.  *Arabian*, 2007 U.S. Dist. LEXIS 12715, at *28-30, concerns the
25   irrelevant "predominance of common claims" requirement standard under Fed. R. Civ P.
     23(b)(3).  *Speyer*, 415 F. Supp. 2d at 1096-99 was a putative class action where no injurious acts
26   occurred in California.  *Tidenberg v. Bidz.com*, No. 08-5553, 2009 U.S. Dist. LEXIS 21916, at
     *12-13 (C.D. Cal., Mar. 4, 2009) is a class action case concerning the standing of a non-resident
27   plaintiff asserting a UCL claim where, unlike here, the named plaintiff did not allege any
     relevant California acts by defendants.  In *Churchill Village LLC v. Gen. Elec. Co.*, 169 F. Supp.
28   2d 1119, 1127 (N.D. Cal. 2000), plaintiffs argued for an injunction against out-of-state activity.

8

1    law of a foreign state.  In such event he must demonstrate that the latter rule of decision will

2    further the interest of the foreign state and therefore that it is an appropriate one for the forum to

3    apply to the case before it.").[4]  Given California's legitimate interest in OEMEA's pursuit of

4    California claims based on the case facts, SAP could not have shown another jurisdiction's

5    interests trumped California's.  *Cf. Hurtado*, 11 Cal. 3d at 580-87 (choosing California's

6    unlimited damages approach in action for wrongful death of Mexican national in California

7    because Mexico's law was to protect its residents for actions occurring in Mexico and Mexico

8    would have no interest in denying full recovery to its citizens harmed in California).

9            OEMEA's claims should be adjudicated here with the other Oracle plaintiffs' claims

10   under the same law and based on the same nucleus of common facts.

11   **IV.    ORACLE DOES NOT SEEK THE LOST PROFITS THAT SAP ASKS THE
             COURT TO BAR**

12           SAP's request to exclude certain lost profits seeks an improper and overbroad advisory

13   opinion.  MSJ at 6-10.  SAP does not dispute it caused the harm.  Instead it relies on corporate

14   technicalities to argue for exclusion of certain lost profits Oracle does not seek and for overbroad

15   relief as to Oracle's alternative copyright FMV damages measure.[5]

16           *What Oracle's Damages Expert Calculated and Why.*  Because it has been harmed by

17   SAP in many ways, Oracle has many claims, with varying permissible measures of damages.

18   Among the measures of damages Oracle is entitled to seek under its plaintiffs' various claims are

19   its lost support profits.[6]  Contrary to SAP's assertions, Oracle seeks only lost support profits to

20   _____

21   [4] California generally applies a three-step "governmental interest" analysis to choice-of-law
     questions.  *Paulsen v. CNF Inc*., 559 F.3d 1061, 1080 (9th Cir. 2009).  Only if the defendant

22   shows that more than one jurisdiction has a legitimate interest in the dispute does the court then
     identify and apply the law of the state whose interest would be the more impaired if its law were

23   not applied.  *See id.*

24   [5] Because SAP addresses only Oracle's *lost profits* damages (MSJ at 6-8), SAP's Proposed Order
     on this part of its MSJ is too broadly phrased:  "Plaintiffs may not recover damages of non-

25   parties, including nonparty related companies."  Dkt No. 640 at 1:8-9.  Oracle may consider the
     economic impact on affiliated corporate entities in calculating its alternative FMV hypothetical

26   license model for its copyright damages.  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell
     Oil Co.*, 425 F.3d 1366, 1377-78 (Fed. Cir. 2005), *rev'd on other grounds by Cardiac

27   Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) (en banc).

28   [6] Oracle's lost profits measure of damages is limited to lost *support* profits by virtue of
     Magistrate Laporte's Rule 37 Order.  Dkt Nos. 482, 532.  Oracle's lost support profits can be

                                                      9

1    which each plaintiff is legally entitled.  Oracle's copyright lost support profits are restricted to

2    those of the lone plaintiff with copyright standing, OIC, and those that "inexorably flow" to OIC.

3    House Decl., ¶ 2 & Ex. 1 (FAC) ¶¶ 154-167; *see also Mars, Inc. v. Coin Acceptors, Inc.*, 527

4    F.3d 1359, 1367 (Fed. Cir. 2008).  For lost profits damages under Oracle's non-copyright claims,

5    each Oracle plaintiff seeks only its specific lost profits.  Declaration of Tharan Gregory Lanier in

6    Support of MSJ ("Lanier Decl."), Ex. A at ¶ 355.

7         Oracle also does not seek to avoid its corporate structure.  To the contrary, its structure

8    required that Oracle's damages expert trace certain lost support revenues booked initially

9    through non-plaintiff Oracle subsidiaries, so that he could then determine the portion of those

10   revenues that would have flowed to Oracle plaintiffs.  House Decl. ¶ 26, Ex. 3 (Damages Report)

11   ¶ 398.  Oracle provided the "lost profits [measurement] specific to the Oracle plaintiff entities in

12   this case" based on only those revenues that would have flowed to each Oracle plaintiff had the

13   historical contractual customer relationships SAP disrupted been maintained.  *Id.*[7]

14        Oracle's expert's inclusion of the "organization as a whole" lost support profits

15   calculation is not because Oracle seeks all of them.  Oracle does not dispute that some of those

16   revenues and profits do not flow to Oracle's named plaintiffs and Oracle does not claim such lost

17   profits.  The "organization as a whole" lost support profits scenario simply shows the difference

18   between the lost support profits that are claimed as damages to each relevant Oracle plaintiff

19   versus the larger lost support profits Oracle Corporation suffered due to SAP's actions.  House

20   Decl., ¶ 26 Ex. 3 (Damages Report) at 256 tbl. 16.  For OIC, that difference is significant.  Like

21

22   recovered under its claims for copyright infringement, intentional and/or negligent interference with prospective economic advantage, violations of the Computer Fraud and Abuse Act ("CFAA") and CDAFA, and breach of contract.  Oracle's other damages and models include:

23   copyright hypothetical license models, copyright infringer's profits, unjust enrichment/restitution, certain investigation costs, attorneys fees and punitive damages.  Lanier

24   Decl. Ex. A at 15.

25   [7] SAP does not challenge any specific apportionment of Oracle's damages in its MSJ nor provide any means to do so.  Even if it had, such a request would be improper given that SAP's damages

26   expert just issued his report, no expert depositions have been taken, and apportionment of damages between plaintiffs and causes of action would be a highly fact-specific inquiry.  House

27   Decl. ¶ 25; *see, e.g., Mars*, 527 F.3d at 1366-67; *see also SEB, A.A. v. Montgomery Ward & Co., Inc.*, 412 F. Supp. 2d 336, 348 (S.D.N.Y. 2006) (citing *Mars* and denying summary judgment

28   because "the amount of damages is a question of fact . . . for the jury to determine").

10

1    the other lost profits Oracle cannot seek as a result of Magistrate Laporte's Rule 37 order (from

2    discounts, lost applications cross-sales and up-sales), this difference is relevant to undermine

3    SAP's inevitable intimation to the jury that Oracle's FMV license is inflated. *See* MSJ at 1:20-

4    22 (arguing to Court that Oracle seeks "billions in damages" though SAP paid only $10 million

5    for SAP TN, and served "no more than 3% of Plaintiffs' software maintenance customers."); *see*

6    *also* House Decl., ¶ 26, Ex. 3 (Damages Report) at 131 n.436. Under this Court's previous

7    order, Oracle conditionally may reference lost profits damages that it is not allowed to claim.

8    *See* Dkt No. 532 at 1:27-2:4 (anticipating potential Oracle jury instruction to avoid jury

9    misimpression of scope of Oracle's lost profits damages). The full computation of Oracle's lost

10    support profits without regard to corporate formalities brings Oracle's actual lost profits damages

11    request into similar perspective. That Oracle Corporation is impacted by SAP's copyright

12    infringement in excess of plaintiff OIC's lost profits alone also is a relevant consideration for

13    Oracle's FMV license amount. *See* n.5 above.

14        *Advisory Opinions Are Improper.* SAP cannot seek summary judgment regarding a

15    theory of lost profits damages that Oracle has not asserted. *See, e.g.*, *Preiser v. Newkirk*, 422

16    U.S. 395, 401 (1975) (A federal court's "judgments must resolve a real and substantial

17    controversy admitting of specific relief through a decree of a conclusive character, as

18    distinguished from an opinion advising what the law would be upon a hypothetical state of

19    facts.") (quotations omitted); *cf. Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608

20    F. Supp. 2d 1166, 1206 (N.D. Cal. 2009) (declining, on summary judgment, to "conclusively

21    decide [the] legal impropriety" of a theory of liability that "defendants presuppose[d]" was being

22    asserted by plaintiffs).[8]

23        *SAP's Patent Cases Limiting Lost Profits on Technicalities Support Oracle's FMV*

24    *License Damages.* According to the patent cases SAP cites, Oracle cannot seek the

25 _____

26 [8] Alternatively SAP's request should be rejected as an improper motion in limine ("MIL"). Per the Case Management Order, such motions are due in August (Dkt No. 325), and are limited in number and length. Dkt No. 84 at Section B.3.c. Until damages expert discovery is done, any

27 damages MIL also is premature. *See Fernandez v. Taser Int'l, Inc.*, No. 06-4371, 2008 WL 4775779, at *3 (N.D. Cal. Oct. 27, 2008) (MIL is premature where expert has not been deposed

28 because purpose of expert's evidence and testimony is unclear).

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  "organization as a whole" lost profits that SAP caused by its pervasive global infringement.

2  Intentional, sophisticated infringers like SAP benefit from these loopholes and leverage these

3  technicalities in modern complex, international corporate structures, to create a damages shield.

4  *See* MSJ at 7-8.  This result goes against the public policy that damages should fully compensate

5  the victim and fully punish the wrongdoer.  *See, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S.

6  405, 418-19 (1975); *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1585 (Fed. Cir. 1995)

7  (dissent) ("The legal insulation of a wrongdoer from responsibility for its acts is rare in the law,

8  requiring sound basis in public policy.").

9        The same body of law provides a solution to this injustice.  Precisely because of potential

10  shortfalls of a lost profits remedy in a case like this, Oracle's FMV license is the most

11  appropriate measure of its copyright infringement damages.  *Cf. Union Carbide*, 425 F.3d at

12  1377-78 (allowing consideration of economic impact on corporate affiliates in calculating FMV

13  license).  Indeed, interpreting the *Mars* case that SAP cites, a colleague of SAP's damages expert

14  at Law and Economics Consulting Group opined: "Consistent with *Mars v. Coin Acceptors* and

15  other recent decisions, in some cases it is only possible to fully compensate the patent holder by

16  allowing a royalty that exceeds both the expected profits of the infringer and its estimated costs

17  of avoiding infringement."  House Decl., ¶ 27, Ex. at 4-5.  This is particularly true where, as

18  here, defendants argue "it is reasonable to expect that no license agreement between a patent

19  holder and an infringer would have been reached from the negotiation typically contemplated in

20  reasonable royalty analysis."  *Id.* at 4; *see also* 1st MSJ [Dkt No. 447] at II.B. & II.C; *cf.* Section

21  VI.B. below (re inadequacy of copyright infringers' profits damages where, as here, infringer

22  claims never to have made profit).  These concepts can and should inform the eventual jury

23  instructions on Oracle's infringement damages.

24  **V.    ORACLE MAY PURSUE "SAVED DEVELOPMENT COSTS" UNDER**
    **ITS UNJUST ENRICHMENT CLAIM AND DOES NOT SEEK THEM**
25  **UNDER OTHERS**

26        **A.    "Saved Development Costs" Are A Proper Damages Measure**
              **For Oracle's Unjust Enrichment/Restitution Claim**
27

28        Oracle's unjust enrichment/restitution claim against SAP requires only that Oracle prove

12

---

1    that SAP received and unjustly retained a "benefit" at the expense of Oracle.  *Lectrodryer v.*

2    *SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  California courts interpret the term "benefit" to

3    "denote[] any form of advantage."  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (quotations

4    omitted).  SAP's unjust access to, retention, and use of Oracle's extremely valuable software and

5    support materials and the competitive advantages it gave are discussed in detail in Oracle's

6    discovery responses and quantified in Oracle's expert report.  *See, e.g.*, House Decl., ¶¶ 28, 31,

7    Ex. 9 (Discovery Responses) and Ex. 3 (Damages Report) ¶¶ 144-148; Lanier Decl., Ex. A

8    ¶¶ 142-43, 150-52, 282-88.  The only issue for purposes of SAP's MSJ is whether the

9    development costs SAP avoided are available to Oracle as unjust enrichment damages as a

10   matter of law.

11          The case law confirms they are.  "[A] benefit is conferred not only when one adds to the

12   property of another, but also when one saves the other from expense or loss."  *Ghirardo*, 14 Cal.

13   4th at 51; *see also Cal. Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992) ("For a benefit to

14   be conferred, it is not essential that money be paid directly to the recipient by the party seeking

15   restitution.").  This flatly contradicts SAP's unsupported claim that because Oracle did not

16   "literally confer 'saved development costs' upon Defendants," Oracle may not recover them

17   under its unjust enrichment/restitution claim.  MSJ at 16:26-27.

18          *Ajaxo, Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21 (2005) illustrates the point.  In

19   *Ajaxo*, E*Trade breached a nondisclosure agreement with a vendor by giving trade secret

20   information to the vendor's competitor.  *Id.* at 57.  E*Trade then contracted with the competitor

21   who used the trade secret information, saving E*Trade technology development costs and the

22   cost E*Trade proposed to give the first vendor for its technology.  *Id.*  On appeal, the court

23   upheld an award of damages that included the saved development costs based on a theory of

24   unjust enrichment/restitution.  *Id.* at 55-57.  The court ruled that the purpose of unjust

25   enrichment/restitution "is to require the wrongdoer to restore what he has received" and

26   therefore, restitution required E*Trade to return to the vendor the "value" or "benefit" that it

27   received.  *Id.* at 56 (quotation omitted).  The court also held that saved development costs

28   provided evidence of unjust enrichment on the vendor's claim for misappropriation of trade

1    secrets – a claim quite analogous to SAP's misconduct here.  *Id.* at 63; *see also Bourns, Inc. v.*

2    *Raychem Corp.*, 331 F.3d 704, 709-10 (9th Cir. 2003) (affirming an award of saved development

3    costs under a theory of unjust enrichment where the defendant was found to have

4    misappropriated trade secrets); *accord Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894, 931-

5    32 (10th Cir. 1975) (saved development costs awarded under unjust enrichment theory for trade

6    secret misappropriation).

7          SAP neglects to cite any of this relevant and controlling California law or any contrary

8    law (and Oracle is aware of none).  The development costs SAP saved are available as a measure

9    of Oracle's unjust enrichment damages and SAP's MSJ seeking a contrary ruling should be

10   denied.

11         **B.      Oracle Seeks No Saved Development Cost Damages Under Its**
                     **Other State Law Claims**
12

13         SAP spends much of its MSJ seeking additional advisory opinions from the Court on

14   whether "saved development costs" are a proper measure of damages for Oracle's other

15   California law claims.  MSJ at 11-16.  This is another "straw person" argument because Oracle

16   never sought "saved development costs" as a measure of damages for its CFAA, CDAFA,

17   Trespass, Breach of Contract, Interference, or Unfair Competition claims.  *See, e.g.*, Lanier

18   Decl., Ex. A ¶¶ 447-49 and Ex. J.  Again, SAP's request for the Court to issue an advisory

19   opinion on a matter not in dispute between the parties is improper and should be denied.  *See,*

20   *e.g.*, *United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 214 (9th Cir. 1989) ("[C]ourts

21   should not render advisory opinions upon issues which are not pressed before the court, precisely

22   framed and necessary for decision."); *Barco N.V. v. Tech. Props. Ltd.*, No. 08-5398, 2010 WL

23   604673, at *2 (N.D. Cal. Feb. 19, 2010) (refusing to issue an advisory opinion on party's

24   potential claim for attorneys' fees where party has not yet made such a claim).

25   **VI.   ORACLE MAY INCLUDE SAVED R&D COSTS IN ITS FAIR**
            **MARKET LICENSE MEASURE OF COPYRIGHT DAMAGES**
26
            **A.     SAP Improperly Seeks Reconsideration Of The Court's January 28,**
27                  **2010 Order**

28         Defendants previously moved for summary judgment on the question of whether "saved

                                          14

1    development costs" are relevant to Oracle's FMV measure of actual copyright damages.  The

2    Court denied that motion.  Now, Defendants ask the Court to reconsider the question in this

3    second MSJ.  MSJ at V.B ("Plaintiffs' Actual Damages for Copyright Infringement Cannot

4    Include SAP's 'Saved Development Costs' Because This Theory Is Inconsistent with the

5    Copyright Act and Ninth Circuit Precedent").  Both the request – and SAP's method of seeking

6    it – are improper under Civil Local Rule 7-9.

7              **1.    The Court Has Already Rejected SAP's Argument That The
                       R&D Costs It Saved Cannot Be Introduced Into Evidence**
8

9              In SAP's prior damages-related MSJ seeking to bar Oracle's FMV license copyright

10   infringement damages, SAP included the exact same argument, citing the exact same reasons and

11   authorities.  1st MSJ [Dkt No. 447] at III.D ("Plaintiffs Are Not Entitled to A Hypothetical

12   License Based on 'Saved Acquisition Costs Because this Theory Is Inconsistent with the

13   Copyright Act and Ninth Circuit Precedent").  In response, Oracle explained why "The Value

14   SAP Gained and the Costs It Saved By Misappropriating Oracle's Copyrights Are Also Proper

15   Measures of Oracle's Actual Damages."  Dkt No. 483 at 9:17-14:2.  In its October 7, 2009 reply,

16   SAP responded that "Saved Acquisition Costs Are Not Permitted Under the Copyright Act and

17   Ninth Circuit Precedent."  Dkt No. 504 at V.  This argument was not missed by the Court, which

18   defined this as one of the "two main issues" raised in SAP's last damages summary judgment

19   motion.  House Decl., ¶, Ex.  (Transcript of 1st MSJ hearing) at 5:7-25.  Counsel also argued the

20   issue at the hearing and answered the Court's questions on it.  *Id.* at 10:14-12:21; 18:18-19:13;

21   *see also id.* at 44:6-11 (Court tells Oracle's counsel no need to argue the saved acquisition costs

22   issue).

23             The Court then ruled and found that:

24                   Oracle should be permitted to present evidence regarding the fair
                     market value of the copyrights that SAP allegedly infringed,
25                   including expert testimony based on established valuation
                     methodology.  The question is not what Oracle would have
26                   charged for a license, "but what is the fair market value."  <u>On
                     Davis</u> [v. The Gap, 246 F.3d 152, 166 (2nd Cir. 2001)], <u>quoted in
27                   Jarvis</u> [v. K2, Inc., 486 F.3d 526, 534 (9th Cir. 2007)].  So long as
                     "the amount is not based on 'undue speculation,'" the jury can
28                   consider evidence regarding a hypothetical lost license fee.  <u>Polar</u>

                                        15

Bear [Prods. Inc. v. Timex Corp., 384 F.3d 700,709 (9th Cir. 2004)] (citation and quotation omitted).

Order on 1st MSJ [Dkt No. 628] at 5:5-11.

Defendants make the same argument again in this motion.  MSJ at V.B.  Defendants justify this solely by claiming the "Court did not address whether such saved costs are a permissible measure of a hypothetical license" in its Order.  MSJ at 17:5-7.  In fact, the Court's ruling that Oracle could "present evidence regarding the fair market value of the copyrights that SAP allegedly infringed" (Order on 1st MSJ at 5) did just that.  Oracle's opposition brief and the declaration of Oracle's damages expert, Paul Meyer, explained to the Court how Mr. Meyer was intending to establish the FMV of the Oracle copyrights SAP had infringed and confirmed how his methodology comported with traditional valuation methodologies.  Dkt No. 483 at II.F.1; Dkt No. 487 ¶¶ 1-5, 11-14, 17.  Mr. Meyer provided an extensive list of the evidence he had considered at that point and explained its relevance to the fair market valuation.  Dkt No. 487 ¶¶ 19-48.  Included in that evidence was "the cost and time that SAP would have had to incur to independently develop the copyrighted materials at issue, if possible, and the risks associated with unsuccessful efforts."  *Id.* ¶ 39(6); *see also* Opp. [Dkt No. 483] at 17:20-18:4 (listing as FMV inputs the amounts Oracle, PeopleSoft, JDE and Siebel spent on relevant R&D to develop the infringed software and support materials and also the R&D costs SAP avoided).  Mr. Meyer noted that "[t]his information is further evidence of the fair market value to SAP of licenses for what it did not develop itself" and that he would "incorporate the opinion testimony of Oracle technical experts [on avoided R&D costs] in forming [his] opinions, as appropriate."  Dkt No. 487 ¶ 46.  There is no basis on this record for SAP to conclude that the Court did not already consider and reject SAP's request that Oracle's damages expert and the jury should be precluded from considering this obviously relevant evidence.

> ## 2. SAP Did Not Satisfy Civil Local Rule 7-9's Prerequisites for Reconsideration of the "Saved Costs" Question

Civil Local Rule 7-9(a) states:  "No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."  SAP failed to do so and its argument

1    should not be reconsidered.  *United States v. Beardslee*, No. 94-0186, 2008 U.S. Dist. LEXIS

2    105667, at *3 (N.D. Cal. Dec. 2, 2008) (a "failure [to seek leave to file a motion for

3    reconsideration] alone is sufficient for the Court to deny [a] motion for reconsideration").  Even

4    if it had moved for leave, SAP could not justify it.  The three potential bases for leave to file a

5    motion for reconsideration are:  "(1) That at the time of the motion for leave, a material

6    difference in fact or law exists from that which was presented to the Court before entry of the

7    interlocutory order for which reconsideration is sought[]" [and proof that SAP] "in the exercise

8    of reasonable diligence . . . did not know such fact or law at the time of the interlocutory order;

9    or (2) The emergence of new material facts or a change of law occurring after the time of such

10   order; or (3) A manifest failure by the Court to consider material facts or dispositive legal

11   arguments which were presented to the Court before such interlocutory order."

12   Civ. L.R. 7-9(b)(1)-(3).

13          The closest SAP comes to any of these prerequisites is its erroneous assertion that the

14   "Court did not address whether such saved costs are a permissible measure of a hypothetical

15   license" in its Order.  MSJ at 17:5-7.  On the record above, SAP cannot show any manifest

16   failure by the Court.  *Cf. Del Mar Seafoods, Inc. v. Cohen*, No. 07-2952, 2007 U.S. Dist. LEXIS

17   98610, at *3 (N.D. Cal. Aug. 27, 2007) ("To the extent [facts] were not discussed to plaintiff's

18   satisfaction in the [Court's] order, that does not demonstrate a 'manifest failure by the Court to

19   consider' those facts.").[9]

20   **B.    SAP Is Wrong That Its Saved R&D Costs Cannot Be Considered**

21

22          Though SAP has not requested, and the Court has not ordered, a further response from

23   Oracle, in an excess of caution, Oracle again addresses its right to reference SAP's saved

24   development costs.

25          *SAP's Saved Costs Are Relevant to the Ninth Circuit "Value of Use" Test.*  The R&D

---

26   [9] In addition, even had SAP received permission to make its reconsideration request, its re-
     argument would be sanctionable.  "No motion for leave to file a motion for reconsideration may

27   repeat any oral or written argument made by the applying party in support of or in opposition to
     the interlocutory order which the party now seeks to have reconsidered.  Any party who violates

28   this restriction shall be subject to appropriate sanctions."  Civ. L.R. 7-9(c).

1   costs SAP saved by using Oracle's software and support materials are directly relevant to the

2   FMV of Oracle's hypothetical license damages.  The Court and the Ninth Circuit have

3   recognized this measure is available to Oracle.  *See* Order on 1st MSJ [Dkt No. 628] at 3:6-13

4   (citing *Polar Bear*, 384 F.3d at 708, *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988),

5   and *Jarvis*, 486 F.3d at 534 as showing that Ninth Circuit endorses an objective "value of use"

6   measure for actual copyright damages).

7           Oracle expert, Paul Pinto, who provides a conservative quantification of the costs SAP

8   saved, explains the obvious relevance:

9           The cost of development of the underlying body of applications
            including the time and technical and litigation risks associated with
10          such development would, in my opinion, and based on my
            experience, significantly factor into a decision by a potential
11          licensee whether to license a product from the original developer,
            as well as factoring into the reasonable amount to be paid for that
12          license . . . .

13          [O]ver my career as an outsourcing advisor and software company
            executive, I have been involved in hundreds of license
14          negotiations, from the perspective of both the buyer and the seller
            of products.  In negotiating the price of licenses, I would regularly
15          consider the avoided costs, including saved time and avoided risks
            (such as avoided Research and Development ("R&D") missteps
16          and avoided litigation from the IP owner) associated with licensing
            productized software, as opposed to independently developing
17          software.  Time and cost, are indeed, the most important
            considerations to potential licensees in my experience.

18  Lanier Ex., B at 5, 6; House Decl., ¶ 30, Ex. 4 at 3.  This opinion comports with Mr. Meyer's

19  similar conclusion that the costs, risks and delays SAP avoided are relevant to the value of the

20  materials it infringed under each of the valuation methodologies he uses.[10]

21  ──────────────────
    [10] In his report, Mr. Meyer explains that his FMV of use calculations are based not on just one
22  valuation approach (*e.g.*, the cost approach that SAP focuses on in its MSJ) but on multiple
    valuation approaches, as is recommended.  Lanier Decl. Ex. A ¶ 101 (citing Gordon V. Smith &
23  Russell L. Parr, <u>Intellectual Property, Valuation, Exploitation, and Infringement Damages</u> at 155
    (2005) ("Smith & Parr") (all cited excerpts are attached as Ex.  to House Decl.)); *see also* House
24  Decl., ¶ 32, Ex. 6 (Smith & Parr) at 168.  Moreover, SAP erroneously asserts that "[f]or his
    calculation [of Oracle's actual damages for copyright infringement] under the 'cost approach,'
25  Meyer simply imports [Oracle expert] Pinto's 'saved development costs.'"  MSJ. at 17:15-17.
    Even the paragraphs SAP cites from Mr. Meyer's report make it clear that he is considering not
26  only Mr. Pinto's analysis, but also "the acquisition cost to Oracle of purchasing the subject
    intellectual property as well as the research and development by Oracle in the copyrighted
27  materials in suit since the acquisition" and "the amounts PeopleSoft and J.D. Edwards spent on
    research and development of their intellectual property (which Oracle subsequently acquired)."
28  Lanier Decl., Ex. A ¶¶ 142, 150-52; *see also* House Decl., ¶ 31 , Ex. 3 ¶¶ 144-49.  Mr. Meyer
    also considers SAP's saved R&D costs under the hypothetical negotiation construct that the

                                        18

1    *No Credible Authority Prohibits Consideration of Saved Costs.*  SAP cannot provide any

2    credible authority holding it inappropriate to consider its avoided costs among the many factors

3    relevant to FMV of the hypothetical license.  To the contrary, the Ninth Circuit has endorsed a

4    jury instruction for actual copyright damages using this FMV license approach that allowed the

5    jury to consider "the value, if any, to defendants of the use of plaintiffs' works."  *Sid & Marty*

6    *Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)

7    ("*Krofft*").  Moreover, the current relevant Ninth Circuit Model Jury Instruction contains no

8    prohibition against consideration of the benefits defendants enjoy from using plaintiff's

9    copyrighted materials but instead broadly proscribes that "[t]he reduction of the fair market value

10   of the copyrighted work is the amount a willing buyer would have been reasonably required to

11   pay a willing seller at the time of the infringement for the actual use made by defendant of the

12   plaintiff's work."  Instruction 17.23 (Copyright Damages - Actual Damages) (2007).  And the

13   Seventh Circuit has expressly endorsed use of avoided costs as a measure of actual copyright

14   damages – and cited a Ninth Circuit "value of use" case (*Krofft*) as the basis.  *Deltak, Inc. v.*

15   *Advanced Sys., Inc.*, 767 F.2d 357, 358, 360-61 (7th Cir. 1985) (in case involving direct

16   competitors, endorsed "value of use" measure "equal to the acquisition cost saved by

17   infringement instead of purchase").[11]

18       Only the superseded Second Circuit decision, *Business Trends* (which SAP reargues,

19   MSJ at 19:9-11), rejected consideration of avoided costs as part of its larger rejection of the

20   FMV measure for actual copyright damages.  *Bus. Trends Analysts, Inc. v. Freedonia Group,*

21   *Inc.*, 887 F.2d 399, 404-06 (2d Cir. 1989).  As Oracle showed in its last MSJ opposition (Dkt No.

22   483 at 11:17-12:3), in *On Davis* (cited by the Court in its Order on 1st MSJ), the Second Circuit

23   subsequently rejected as flawed the entire underlying analysis of *Business Trends* – which relied

24   on Nimmer's interpretation of the 1909 Copyright Act.  246 F.3d at 166, 171-72.  Oracle also

25   showed that Nimmer himself acknowledges he lost that argument (Dkt. No. 483 at 12:26-28, n.9)

26   _____

27   Court confirmed Oracle can use.  *Id.* ¶¶ 110-111, 232 (bullet 5), 233 (bullets 6, 7).

28   [11] Oracle cited other cases which followed *Deltak* the last time it opposed this requested relief.
     Dkt No. 483 at 13:2-24.

19

1    – and why, especially in cases like this, where the amount SAP actually made off the

2    infringement is less than the harm to Oracle, that failing to consider the value to SAP of the costs

3    it avoided by infringing is a weak disincentive to infringers:  "[A] rule of liability which merely

4    takes away the profits from an infringement would offer little discouragement to infringers . . . .

5    Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just,

6    impose a liability within statutory limits to sanction and vindicate statutory policy."  4 *Nimmer*

7    *on Copyright* (Matthew Bender Rev. Ed.) at § 14.02[B][1] at 14-21 (quotation omitted).

8           These authorities and expert opinions again establish the recognized relevance of SAP's

9    avoided costs and the associated avoided risk and avoided time in determining the FMV of

10   SAP's value of use.[12]

11   **VII.   ORACLE HAS DISCLOSED ALL ITS TRESPASS TO CHATTELS**
         **AND CDAFA DAMAGES, WHICH INCLUDE LOST PROFITS**
12

13          In its final damages attack, SAP asserts (a) that Oracle has not disclosed damages

14   calculations relevant to either its Trespass to Chattels or CDAFA claims and (b) that lost profits

15   are not allowable compensatory damages under the CDAFA.  MSJ at VI.[13]  However, as shown

16   below, SAP is wrong on both counts.  Oracle has fully explained all damages it will seek at

17   trial – and nothing precludes Oracle from seeking those disclosed damages.  To the extent SAP

18   _____

19   [12] SAP's attempts to discredit Oracle's expert's use of the cost approach fail and their cites to
     Smith & Parr are incomplete and misleading.  MSJ at 17:22-18:2.  The treatise clearly supports
20   the cost approach as an acceptable valuation methodology and advocates use of it in conjunction
     with the other methodologies Mr. Meyer uses.  House Decl., ¶ 32 , Ex. 6 at 148, 155, 261-62.
21   Smith & Parr also lists among the first "Critical Questions" as one "consider[s] licensing
     negotiations:" "**How much would it cost to invent around this patent?**"; "**How long would it
22   take to invent around this technology?**"; and "**Can we really invent around this patent . . .
     ?**" *Id.* at 526.  Moreover, citing *On Davis*¸ its chapter on copyright infringement damages is
23   titled:  "Recent Decision: Copyright Infringement Damages Can Be Based on Value of
     Licenses." *Id.* at 732.  Mr. Meyer's approach using multiple valuation techniques (including the
24   cost approach) is also consistent with accounting standards for fair value measurement endorsed
     by the Financial Accounting Standards Board ("FASB").  *See* House Decl. ¶ 33 , Ex. 7 at 820-
25   10-35-24 to 35.  He provides "expert testimony based on established valuation methodology" as
     authorized per the Court.  Order on 1st MSJ [Dkt No. 628] at 5:5-11.

26   [13] SAP does not move to dismiss either of these claims.  Even if Oracle did not quantify *any*
     damages from SAP's trespass to its computer systems, the claim would stand based on the
27   extensive evidence of harm Oracle has presented.  *See* Lanier Ex. A ¶¶ 456-458; *Intel Corp. v.
     Hamidi*, 30 Cal. 4th 1342, 1351, 1356 (2003) (requiring only that "some actual injury must have
28   occurred" such as the "interfere[nce] with the intended functioning of [a computer] system").

                                                    20

1    seeks to preclude undisclosed damages, this is another non-issue:  Oracle does not intend to

2    pursue anything not disclosed.[14] MSJ at 19:22-23; 20:27-21:1.

3         A.    **Oracle Has Quantified All the Damages That It Seeks And Which Are Final For Its Trespass To Chattels And CDAFA Claims**

4

5              SAP has long been on notice of what damages Oracle is seeking in connection with its

6    Trespass to Chattels and CDAFA claims.  In its initial September 14, 2007 response to SAP

7    TN's Interrogatory No. 5 asking Oracle to describe how SAP damaged it by any action alleged in

8    Oracle's complaint(s) (notably not requested by claim), and again through its supplemental

9    responses on May 22, 2009, September 18, 2009, November 11, 2009, and December 4, 2009,

10   Oracle referenced all the damages it now seeks.  House Decl., ¶ 34, Ex. 8.  In its May 22, 2009

11   Supplemental and Amended Initial Disclosures, Oracle likewise listed all the categories of its

12   harm by SAP then known and noted that the damages overlapped between claims.  House Decl.,

13   ¶ 35, Ex. 10 at 44-45 (lost profits, harm and impairment to Oracle's computer systems, and

14   investigation costs bulleted); at 46:28-47:2 (noting damages overlap and Oracle does seek

15   duplicate recovery).  Oracle then called out these damages as well as attorneys fees and punitive

16   damages[15] as harms specific to its CFAA, CDAFA and Trespass to Chattels claims, and pointed

17   SAP to some of the evidence in support (including Oracle's Rule 30(b)(6) witness' testimony,

18   his "written outline of harm and damages to Oracle's computer systems, databases, data and

19   networks").  *Id.* at 48-49.[16]  Oracle noted that, among other things, SAP's actions in connection

20   [14] A caveat: should SAP's just- produced, long-overdue liability discovery expose additional damages, Oracle reserves its rights to adjust its damages requests.  *See* House Decl., ¶ 41.

21

22   [15] The CDAFA provides: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."  Cal. Penal Code § 502(e)(2).  Punitive damages are also available under this statute.  *Craigslist, Inc. v. Naturemarket, Inc.*, No. 08-5065 PJH, 2010 U.S.

23   Dist. LEXIS 19992, at *44 (N.D. Cal. Jan. 28, 2010).  Oracle has not yet calculated the attorneys fees or punitive damages it is entitled to under the CDAFA (and other claims) because attorneys

24   fees have not yet been fully incurred.  *See Optistreams, Inc. v. Gahan*, No. 05-117 REC, 2006 WL 829113, at *10 (E.D. Cal. Mar. 28, 2006) (Section 502(e)(2) "appears to authorize the court

25   to award attorney's fees to a plaintiff who prevails in an action under section 502(e)").  If Oracle prevails on its Section 502 claim, it may seek attorneys fees under the statute at that time and the

26   court will determine the amount of the award using the lodestar method which requires total attorney hours as necessary input.  *See Craigslist*, 2010 U.S. Dist. LEXIS 19992 at *55.

27

28   [16] In October 2009, Oracle also provided Rule 30(b)(6) testimony and a write up on damages to its systems from SAP TN's downloading of Siebel material.  House Decl., ¶ 36, Exs. 12, 13.

21

1   with these claims "caused Oracle to lose business" and noted the overlap of such damages with

2   Oracle's other breach of contract and interference claims (which seek lost profits).  *Id.*  This

3   information was repeated in Oracle's November 2, 2009 Third Supplemental and Amended

4   Initial Disclosures, which SAP appends to its papers.  Lanier Decl., Ex. J at 54.

5        The cited investigation and lost profits damages evidence is precisely what Oracle's

6   damages expert then relied upon, detailed and quantified in his expert report – and indeed, that

7   Oracle just explained in its cross-motion for partial summary judgment on its CFAA claim.

8   Lanier Decl., Ex. A at ¶¶ 451-58, p. 219 n.657; Oracle's MSJ [Dkt No. 649] at 22:25-23:5.[17]

9        **B.   SAP Does Not Carry Its Burden Of Proving Undue Prejudice**

10       SAP references Fed. R. Civ. P. 37(c)(1) and cases applying it.  MSJ at 19:27-20:7.

11  However, SAP does not move under that Rule, which makes its request improper.[18]  SAP also

12  does not attempt to satisfy the requirements for preclusion of damages under Rule 37, as it

13  previously did as to Oracle's lost profits from discounting and lost applications up-sell and cross-

14  sell opportunities.  Presumably that is because there is no analogous "expansion" of or "shift" in

15  Oracle's Trespass to Chattels or CDAFA damages theories or evidence of resulting additional

16  workload to SAP, as SAP argued to Magistrate Laporte in its prior motion and on which she

17  based her decision.  Dkt No. 482 at 4:22-25; 5:9-11; 13:18-25 (basing preclusion on failure to

18  disclose "new, more extensive damages theories" in discovery for "over two years" which, if

19  allowed, would "trigger large new waves of expensive discovery and expert analysis at this late

20  date" which would be "unfair to Defendants, very expensive and hugely time consuming"); *see*

21  *also id.* at 9:1-3; 14:14-17; 24:16-21.

22  [17] Oracle noted in its pending MSJ that its CFAA and CDAFA claims have similar elements.  *Id.*
    at 23 n.14 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F.
23  Supp. 2d 1122, 1131-32 (E.D. Cal. 2008) (considering summary judgment of CFAA and
    CDAFA claims together based on their "similar elements")); *see also Craigslist, Inc.*, 2010 U.S.
24  Dist. Lexis 19992, at *44 ("Compensatory damages are available to Plaintiff under each of its
    claims.").
25

26  [18] *Cf. Hsieh v. Peake*, No. 06-5281-PJH, 2008 U.S. Dist. LEXIS 23649, at *59-60 (N.D. Cal.
    Mar. 25, 2008) (finding "an opposition to a motion for summary judgment is not a proper place
27  for a Rule 37 motion," that "[i]n any event, a Rule 37 motion must be filed as a separate motion,
    and in accordance with the local rules regarding the filing of motions," and that "any Rule 37
28  motion should have been directed to the magistrate judge to whom the court referred all
    discovery disputes").

22

1    Even if SAP were seeking Rule 37 preclusion sanctions, it  cannot justify them:

2    [O]n the menu of sanctions that a court may select from in
     applying Rule 37, preclusion of evidence is among the most
3    severe. . . .  Moreover, "[e]xclusion sanctions based on alleged
     discovery violations are generally improper absent undue prejudice
4    to the opposing side." [Citations] . . . .

5    The court also notes that [the movant] bears the burden of
     presenting evidence that it suffered "undue prejudice" as a result of
6    [the complained of] failure to produce a subset of the responsive
     damages-related documents . . . . [Citation].  The touchstone of the
     prejudice inquiry under Rule 37 is whether a discovery violation
7    "threaten[s] to interfere with the rightful decision of the case" or
     "impair[s] the moving party's ability to go to trial." [Citations]

8

9    *Network Appliance, Inc. v. Bluearc Corp.*, No. 03-5665, 2005 U.S. Dist. LEXIS 16726, at *9-11

10   (N.D. Cal. June 27, 2005) (refusing Rule 37 request to exclude damages-related evidence based

11   on assertions of untimely production).  *See also Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th

12   Cir. 1997) (in assessing propriety of preclusion sanction, Ninth Circuit evaluates, among other

13   things: "the risk of prejudice to the [opposing party]," "the public policy favoring disposition of

14   cases on the merits," and "the availability of less drastic sanctions").  SAP cannot carry its

15   burden of proving "undue prejudice" when it has long been aware of Oracle's damages theories

16   and now has in its possession the lost profits and investigation costs analyses and amounts

17   Oracle seeks.

18      **C.    Lost Profits Are Recoverable Under Oracle's CDAFA Claim**

19       SAP erroneously claims that lost profits are not recoverable compensatory damages

20   under the CDAFA and that damages are "limited to expenditures incurred 'to verify that a

21   computer system, computer network, computer program, or data was or was not altered,

22   damaged or deleted by the access.'"  MSJ at 22:11; 22:15-24 (quoting Cal. Penal Code

23   § 502(e)(1)).  SAP makes this claim without a single case so limiting CDAFA damages but

24   relying on cases interpreting other statutes and with far different facts.[19]  Contrary to SAP's

25   [19] *Coast Oyster v. Perluss*, 218 Cal. App. 2d 492, 501 (1963) limited the phrase "agricultural
     labor includes" in the Unemployment Insurance Code to the six specifically defined categories of
26   services that followed that phrase; there is no such "detailed elaboration" for CDAFA's allowed
     compensatory damages.  *Pitney-Bowes, Inc. v. State Dept. of Food and Agric.*, 108 Cal. App. 3d
27   307, 316-17 (1980), concerns the Business and Professions Code and a phrase that expressly
     contained the caveat "and shall not include."  *Muller v. Auto Club of S. Cal.*, 61 Cap. App. 4th
28   431, 445 (1998) interprets  "includes" in the Fair Employment and Housing Act and limited it

23

1    assertion, the very language preceding the example of compensatory damages the CDAFA

2    includes – "compensatory damages *shall include*" – is expansive not exclusive.  Indeed, the

3    general rule of California statutory interpretation is that "includes" or "including" is "ordinarily a

4    term of enlargement rather than a limitation."  *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1100

5    (1993); *accord Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th 709, 717 (2003) (same).

6         The governing consideration in resolving the ambiguity of the word "includes" is the

7    intention of the Legislature.  *See Coast Oyster*, 218 Cal. App. 2d at 501; *Muller*, 61 Cal. App. 4th

8    at 441.  SAP does not provide any indicia of legislative intent to limit the compensatory damages

9    available under the CDAFA.  *See* MSJ at 23:12-13.  Rather, the legislative history of the 2000

10   amendments to § 502 reveals that the legislature intended to expand the civil remedies available

11   under the CDAFA, not limit them, as SAP suggests.  *See* MSJ at 23:12-22.; House Decl., ¶ 39,

12   Ex. 16 at 1 (Cal. Bill Analysis, A.B. 2727 Assem., 8/07/2000) (intent is to "[e]xpand civil

13   remedies available for computer crimes").  The author of the bill explained that the amendments

14   were to combat the rise of "[s]erious computer hacking crimes" by "discourag[ing] [such

15   conduct] through harsher penalties and fines."  House Decl., ¶ 37, Ex. 14, at cmt 1 (Cal. Bill

16   Analysis, A.B. 2232 Sen. Comm. Pub. Safety, 6/20/2000).

17        The change in the language for subsection (e)(1) from "compensatory damages,

18   including" to "[c]ompensatory damages shall include" was made because the legislature added

19   "injunctive relief or other equitable relief" to the remedies available under (e)(1).  House Decl.,

20   ¶ 38, Ex. 15, at 2 (Cal. Bill Analysis, A.B. 2727 Sen., 8/07/2000).  There was no intent to limit

21   those compensatory damages to the exemplar verification costs; if there was, the legislature

22   could have said, "in addition to equitable relief or an injunction, a party may recover certain

23   verification costs" or "compensatory damages means verification costs."[20]  It did not.  Instead it

24   expressly referenced the term "compensatory damages" – which are expansively defined under

25   _____

26   based on legislative history showing that intent, including by removing the phrase "but not
     limited to."  As shown below, there is no such justification or intent in the legislative history of
27   the CDAFA to limit its allowance of compensatory damages.

28   [20] The legislature used the phrase "means" in other sections of the CDAFA to limit the
     definitions of several terms.  Cal. Penal Code § 502(b)(1)-(3), (5)-(6), (8)-(11).

24

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    California Civil Code § 3333 as "the amount that will compensate for all the detriment

2    proximately caused [by "the breach of an obligation not arising from contract"], whether it could

3    have been anticipated or not."  "It is well established in California that such damages may

4    include loss of anticipated profits where an established business has been injured."  *Fibreboard*

5    *Paper Prods. Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 702 (1964).

6         The California Senate confirmed the expansiveness of the available remedies under the

7    CDAFA (and the lack of any limitation to the compensatory damages remedy) in its statement

8    that the bill as passed "allows for a suit for civil damages, regardless of whether a conviction is

9    obtained, with remedies as follows:  1. Compensatory damages[,] 2. Equitable or injunctive

10   relief[,] 3. Attorneys fees[, and] 4. Punitive damages for willful violations where it is proven by

11   clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice."

12   House Decl., ¶ 40, Ex. 17 at 1 (Cal. Bill Analysis, A.B., 2727 Sen., 8/25/2000 ).

13        Further, courts discussing compensatory damages under the CDAFA have not interpreted

14   the "shall include" language as expressly limiting those damages to verification costs.  *See, e.g.*,

15   *Wyatt Tech. Corp. v. Smithson*, No. 05-1309, 2006 WL 5668246, at *10 (C.D. Cal. Aug. 14,

16   2006), *aff'd in part, rev'd in part by* 345 Fed. Appx. 236 (9th Cir. 2009); *see also Craigslist*,

17   2010 U.S. Dist. LEXIS 19992, at *44.  In sum, the CDAFA was never limited to "verification

18   costs" as SAP claims and Oracle can pursue lost profits under it.

19   **VIII.   CONCLUSION**

20        For the foregoing reasons, SAP's latest motion for partial summary judgment on aspects

21   of Oracle's damages should be denied in full.

22

23   DATED:  March 31, 2010

24                                        Bingham McCutchen LLP

25                                        By:  _____/s/ Holly A. House_____

26                                                        Holly A. House
                                                       Attorneys for Plaintiffs
27                                        Oracle USA, Inc., Oracle International Corp., Oracle
                                              EMEA Limited, and Siebel Systems, Inc.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT