Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:      (415) 626-3939
Facsimile:      (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:      (650) 739-3939
Facsimile:      (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:      (832) 239-3939
Facsimile:      (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | *REDACTED PUBLIC VERSION LODGED PURSUANT TO L.R. 79-5(c)(5)* |
| SAP AG, et al., | |
| Defendants. | Date:  May 5, 2010, Time:  9:00 a.m. Courtroom: 3, 3rd Floor Judge: Hon. Phyllis J. Hamilton |

1

**TABLE OF CONTENTS**

2

Page

3    I.    "SAVED DEVELOPMENT COSTS" ARE NOT AVAILABLE IN THIS CASE
           AS A MATTER OF LAW ................................................................ 1

4          A.    Plaintiffs Cannot Recover Saved Costs for Alleged Unjust Enrichment ............... 1

5          B.    Plaintiffs Cannot Recover Saved Costs for Alleged Copyright Infringement ........ 2

6                1.    Defendants Do Not Seek Reconsideration ................................... 2

7                2.    Actual Damages for Copyright Infringement Cannot Include
                       Defendants' Saved Costs .................................................... 3

8    II.   PLAINTIFFS DID NOT DISCLOSE COMPUTATIONS OF RECOVERABLE
           DAMAGES FOR THEIR TRESPASS TO CHATTELS AND CDAFA CLAIMS .......... 5

9          A.    Plaintiffs' Initial Disclosures and Discovery Responses Do Not Disclose
                 the Required "Computation" of Damages ................................................ 5

10         B.    Plaintiffs Have Not Otherwise Disclosed Computations of Damages for
                 Their Trespass to Chattels or CDAFA Claims ......................................... 6

11
12         C.    Plaintiffs Have Not Carried Their Burden to Prove that the Failure to
                 Disclose Was Harmless or Substantially Justified .................................... 8

13   III.  OEMEA CANNOT SHOW THE REQUIRED CALIFORNIA NEXUS ................. 9

14         A.    Plaintiffs' Evidence Does Not Support the Claimed California Nexus. .............. 10

15         B.    Plaintiffs' Legal Arguments Have No Merit ......................................... 13

16               1.    The Answer Does Not Concede that OEMEA's Claims Are Proper ........ 13

17               2.    Applying California Law to OEMEA's Claims Fails to Satisfy Due
                       Process ................................................................... 14

18   IV.   PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF
           THE ALLEGED LOST PROFITS OF NONPARTIES .............................. 15

     V.    CONCLUSION .............................................................. 15

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Ajaxo, Inc. v. E\*Trade Group, Inc.*,
  135 Cal. App. 4th 21 (Ct. App. 2005)................................................................... 2

*Allen v. Bayer Corp.*,
  460 F.3d 1217 (9th Cir. 2006)............................................................................. 9

*Bourns, Inc. v. Raychem Corp.*,
  331 F.3d 704 (9th Cir. 2003)............................................................................... 1

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
  887 F.2d 399 (2d Cir. 1989)............................................................................ 4, 5

*City & County of San Francisco v. Tutor-Saliba Corp.*,
  218 F.R.D. 219 (N.D. Cal. 2003)......................................................................... 6

*Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*,
  No. C 08-4220 PJH, 2009 WL 1833988 (N.D. Cal. June 23, 2009)......................... 9

*Craigslist, Inc. v. Naturemarket, Inc.*,
  No. C 08-05065 PJH (MEJ), 2010 U.S. Dist. LEXIS 19992 (N.D. Cal. Jan. 28, 2010) ......... 7, 8

*Deltak, Inc. v. Advanced Sys., Inc.*,
  767 F.2d 357 (7th Cir. 1985)....................................................................... 3, 4, 5

*Ghirardo v. Antonioli*,
  14 Cal. 4th 39 (1996) ......................................................................................... 1

*Guy v. IASCO*,
  No. B168339, 2004 WL 1354300 (Cal. Ct. App. June 17, 2004)........................... 14

*Hassan v. Mercy Am. River Hosp.*,
  31 Cal. 4th 709 (2003) ....................................................................................... 7

*Hurtado v. Superior Ct.*,
  11 Cal. 3d 574 (1974) ....................................................................................... 14

*JM Comp. Servs., Inc. v. Schlumberger Techs., Inc.*,
  No. C 95-20349 JW, 1996 WL 241607 (N.D. Cal. May 3, 1996)........................... 14

*Key Equip. Fin., Inc. v. Ressor*,
  No. 2:08-cv-2003-DV, 2008 WL 819966 (W.D. Tenn. Mar. 25, 2008).................... 13

*Lucarino v. Con-Dive, LLC*,
  No. H-09-2548, 2010 U.S. Dist. LEXIS 20075 (S.D. Tex. Mar. 5, 2010) ................ 13

*McRoberts Software, Inc. v. Media 100, Inc.*,
  329 F.3d 557 (7th Cir. 2003)............................................................................... 5

*Native Am. Arts, Inc. v. Waldron Corp.*,
  253 F. Supp. 2d 1041 (N.D. Ill. 2003) ................................................................ 14

*Niva v. United States*,
  No. C 03-00908 RS, 2009 WL 3617767 (N.D. Cal. Oct. 29, 2009)..................... 2, 3

*Norwest Mortgage, Inc. v. Superior Ct.*,
  72 Cal. App. 4th 214 (Ct. App. 1999)................................................................. 14

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001)................................................................................ 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ornelas v. Randolph*,
4 Cal. 4th 1095 (1993) ............................................................................................. 7

*Pet Food Express Ltd. v. Royal Canin USA Inc.*,
No. C 09-1483 MHP, 2010 WL 583973 (N.D. Cal. Feb. 16, 2010) ......................... 13

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (Ct. App. 2008) .................................................................. 1

*Pitney-Bowes, Inc. v. State Dept. of Food and Agric.*,
108 Cal. App. 3d 307 (Ct. App. 1980) ..................................................................... 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ............................................................................... 4, 5

*Prime Start Ltd. v. Maher Forest Prods., Ltd.*,
442 F. Supp. 2d 1113 (W.D. Wash. 2006) ........................................................ 13, 14

*Quinn v. City of Detroit*,
23 F. Supp. 2d 741 (E.D. Mich. 1998) ..................................................................... 4

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
562 F.2d 1157 (9th Cir. 1977) .................................................................................. 4

*Silong v. U.S.*,
No. CV F 06-0474 LJO DLB, 2007 U.S. Dist. LEXIS 68724 (E.D. Cal. Sept. 5, 2007) ........... 6

*Telex Corp. v. Int'l Bus. Mach. Corp.*,
510 F.2d 894 (10th Cir. 1975) .................................................................................. 2

*Thomas Kinkade Co. v. Hazlewood*,
No. C 06 7034 MHP, 2007 WL 2462149 (N.D. Cal. Aug. 29, 2007) ........................ 3

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
488 F.3d 352 (6th Cir. 2007) .................................................................................... 5

*Thrifty-Tel, Inc. v. Bezenek*,
46 Cal. App. 4th 1559 (Ct. App. 1996) ..................................................................... 9

*Torres v. City of Los Angeles*,
548 F.3d 1197 (9th Cir. 2008) .................................................................................. 8

*Veritas Operating Corp. v. Microsoft Corp.*,
No. 2:06-cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627 (W.D. Wash. Jan. 17, 2008) ............... 6

*Wyatt Tech. Corp. v. Smithson*,
No. CV 05-1309 DT (RZx), 2006 WL 5668246 (C.D. Cal. Aug. 14, 2006) .............................. 7

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4

<u>**Statutes and Rules**</u>

5

Cal. Civ. Code § 3294 ................................................................................................. 8

Cal. Civ. Code § 3333 ................................................................................................. 8

6

Cal. Penal Code § 502 ................................................................................................ 8

7

Civ. L.R. 7-5 ............................................................................................................ 10

Civ. L.R. 7-9 .............................................................................................................. 2

8

Fed. R. Civ. P. 26 ................................................................................................... 6, 9

9

Fed. R. Civ. P. 37 ................................................................................................. 8, 15

10

Fed. R. Civ. P. 8 ...................................................................................................... 14

11

12

<u>**Other Authorities**</u>

13

Ass. Bill No. 2727, Reg. Sess. (Cal. 1999-2000), S. Comm. on Judiciary, Background
Information Request ............................................................................................. 8

14

Gordon V. Smith and Russell L. Parr, *Intellectual Property Valuation, Exploitation, and
Infringement Damages* (2005) .............................................................................. 2

15

4 *Milgrim on Trade Secrets* (Matthew Bender, rev. ed.) ............................................ 2

16

4 *Nimmer on Copyright* (Matthew Bender, rev. ed.) ............................................ 1, 5

17

6 *Patry on Copyright* (Thomson West 2009) ......................................................... 5

18

19

20

21

22

23

24

25

26

27

28

1    "Although plaintiffs often request the sky, recovery should be limited to the amount that

2    the facts sustain."  *Nimmer on Copyright* § 14.02.  Plaintiffs here seek far beyond the sky, and

3    certainly well beyond what the law will allow.  Plaintiffs' own concessions and arguments in their

4    Opposition confirm that the Court should grant summary judgment that Plaintiffs may not

5    calculate damages based on "saved development costs" and may not seek damages for the

6    CDAFA or trespass to chattels claims, dismissing OEMEA's claims as wholly extraterritorial, and

7    precluding Plaintiffs from offering evidence of nonparties' purported lost profits.

8    I.    **"SAVED DEVELOPMENT COSTS" ARE NOT AVAILABLE IN THIS CASE AS A**
       **MATTER OF LAW**
9

10        A.    **Plaintiffs Cannot Recover Saved Costs for Alleged Unjust Enrichment.**

11        Nowhere does Plaintiffs' overreaching show itself more clearly than in Plaintiffs' claim for

12   legally impermissible "saved development costs."[1]  Plaintiffs do not contend that factual disputes

13   prevent summary judgment and do not dispute that they always maintained full possession,

14   ownership, and use of their own property.  Instead, relying on trade secrets cases, Plaintiffs argue

15   that they are entitled to the full *replacement* costs of their software because Defendants used it to

16   serve their customers.  *See* D.I. 677 (Pls.' Opp.) at 13; *see also* D.I. 641-1 (Meyer Report) ¶¶ 142-

17   143, 150.  But California law is clear—an unjust enrichment claim does not permit an award of

18   replacement costs where Plaintiffs retained their rights to use, distribute, license, and profit from

19   their software and support materials.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583,

20   1593-94 (Ct. App. 2008).  It is not equitable, logical, or legally permissible to award Plaintiffs the

21   full replacement value of property that they never lost or gave away.

22        None of the cases on which Plaintiffs rely support their argument.  *Ghirardo v. Antonioli*

23   does not support a finding that Plaintiffs can recover the full replacement value of their intellectual

24   property absent loss or conveyance of that property; rather, the court simply permitted a plaintiff

25   who had conveyed real property to the defendant to recover the unpaid balance of the purchase

26   price.  *See* 14 Cal. 4th 39, 44-45, 50-53 (1996).  And the remaining cases concern trade secret

27   claims.  *See Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 709-10 (9th Cir. 2003) (permitting

28        [1] Plaintiffs now concede that they do not seek saved costs for all claims, but only unjust
     enrichment and copyright infringement.  *See* D.I. 677 (Pls.' Opp.) at 14.

1  recovery of costs saved by misappropriating, rather than developing, the trade secret); *Telex Corp.*

2  *v. Int'l Bus. Mach. Corp.*, 510 F.2d 894, 930-32 (10th Cir. 1975) (same); *Ajaxo, Inc. v. E*Trade*

3  *Group, Inc.*, 135 Cal. App. 4th 21, 55-57 (Ct. App. 2005) (permitting recovery of saved

4  development costs as trade secret damages pursued under a contract theory).  These cases are

5  inapposite because, unlike the contract or tort claims for which Plaintiffs' unjust enrichment claim

6  serves as an alternative, trade secret law allows recovery of saved development costs.[2]  *See*

7  Gordon V. Smith and Russell L. Parr, *Intellectual Property Valuation, Exploitation, and*

8  *Infringement Damages* (2005) at 747, 750-51; *Milgrim on Trade Secrets* § 15.02[3][c][i].  This is

9  not a trade secret case.  Plaintiffs do not cite a single case outside the trade secret context in which

10  a court permitted recovery of "saved development costs" under an unjust enrichment claim.

11      The irrational consequence of Plaintiffs' overreaching is clear: the ▮REDACTED▮ Plaintiffs seek

12  in "saved development costs" for unjust enrichment far outstrip the amounts Plaintiffs seek for

13  lost profits under their breach of contract and tort claims—the very causes of action to which the

14  unjust enrichment claim is intended to serve as an alternative.  *See* D.I. 224 (12/15/08 Order) at

15  13; D.I. 641-1 & 641-2 (Meyer Report) ¶¶ 20 (Table 1), 352 n.657.  Because "saved

16  development costs" are not a legally available remedy under Plaintiffs' unjust enrichment claim,

17  this Court should grant summary judgment precluding this damages theory.

18      **B.    Plaintiffs Cannot Recover Saved Costs for Alleged Copyright Infringement.**

19          1.    Defendants Do Not Seek Reconsideration.

20      In light of the Court's ruling that Plaintiffs may seek actual damages for alleged copyright

21  infringement in the form of a fair market value license, Defendants moved for a ruling that such a

22  license cannot be based on saved development and/or acquisition costs.  Defendants do not seek

23  "reconsideration" because the Court has not ruled on the saved costs issue.  A "motion for

24  reconsideration" asks the court to reconsider "an[] interlocutory order."  Civ. L.R. 7-9(a).  If a

25  court does not rule on an issue, there is nothing to be "reconsider[ed]," and Civil Local Rule 7-9

26  does not apply.  *Id.*; *see, e.g.*, *Niva v. United States*, No. C 03-00908 RS, 2009 WL 3617767, at *3

27

28      [2] Plaintiffs effectively concede, by not disputing, that "saved development costs" are not
    available for the breach of contract and tort claims.  *See* D.I. 640 (Defs.' Mot.) at 13-15.

1   (N.D. Cal. Oct. 29, 2009) (noting that where the court's order declines to decide an issue

2   previously raised, "there is no prior determination to reconsider"); *cf. Thomas Kinkade Co. v.*

3   *Hazlewood*, No. C 06 7034 MHP, 2007 WL 2462149, at *2 (N.D. Cal. Aug. 29, 2007) (leave for

4   reconsideration not required when motion does not "qualif[y] as a motion for reconsideration").

5           Plaintiffs' argument that the Court "already consider[ed] and reject[ed]" the saved costs

6   question is based on a misreading of the Court's order, which held only that a fair market value

7   license is an available remedy.  *See* D.I. 677 (Pls.' Opp.) at 16; D.I. 628 (1/28/10 Order) at 5.  The

8   Court addressed only whether Plaintiffs could seek a fair market value license and did not reach

9   the question of which legal theories or evidence could support a fair market value license.  *See*

10  D.I. 628 (1/28/10 Order) at 3.

11          The briefs and hearing transcript indicate that neither the Court nor the parties treated the

12  fair market value license and saved costs as the same issue.  At the hearing, the Court identified

13  these as "the two main issues" and questioned whether it was necessary "to reach the question as

14  to [saved] acquisition [costs]."  House Decl. ¶ 29, Ex. 11 (Hearing Tr.) at 5, 19.  Consistent with

15  their current position, Defendants identified the saved costs question as a separate, but related

16  issue.  *Id.* at 10; *see also* D.I. 431 (Defs.' Mot.) at 16 ("Plaintiffs may try to support their

17  hypothetical license claim by relying on the 'saved acquisition costs' theory [of] *Deltak* . . . .").

18  Plaintiffs themselves drew the clearest distinction between these issues.  Plaintiffs' brief urged the

19  Court that it would be "improper" to determine the very question they now argue was

20  conclusively decided.  *See* D.I. 481 (Pls.' Opp.) at 10 n.7 ("Asking the Court to also determine the

21  appropriateness of considering saved acquisition costs in calculating the license value is improper

22  . . . .").  And at the hearing, Plaintiffs' counsel failed to address the issue—except to mention, after

23  the motion was submitted, that counsel "forgot to argue the saved costs that your Honor asked

24  about."  House Decl. ¶ 29, Ex. 11 (Hearing Tr.) at 44.  It is not surprising that the previous ruling

25  did not address the very issue that Plaintiffs urged the Court not to consider.

26          2.    Actual Damages for Copyright Infringement Cannot Include Defendants'
                  Saved Costs.

27

28          The Court should reject Plaintiffs' attempt to recover saved costs under the guise of a fair

market value license.  A court determines the amount of a fair market value license, when available, by considering benchmark licenses.  *See* D.I. 640 (Defs.' Mot.) at 18 (citing cases from this Circuit); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 n.6 (9th Cir. 2004) (upholding fair market value license based on previously charged or quoted fees).  Unlike a fair market value license fee, saved costs are impermissible as actual damages because they do not represent harm to the plaintiff.  *See* D.I. 640 (Defs.' Mot.) at 18-19.  In an apparent attempt to circumvent this problem, Plaintiffs argue that a defendant's saved costs "are directly relevant to the FMV of Oracle's hypothetical license damages."  D.I. 677 (Pls.' Opp.) at 18.  But Plaintiffs cannot use a fair market value license as a vehicle to recover otherwise impermissible costs.  *See Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 405 (2d Cir. 1989) (declining to adopt *Deltak*'s "saved acquisition cost" measure of "value of use"); *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 750-52 (E.D. Mich. 1998) (refusing to allow recovery of saved costs under an "implied license" theory because, *inter alia*, "the rationale of *Deltak* has been criticized" and recovery of saved costs did not account for the "relationship between [plaintiff's] $125,000 development cost and the period of infringement").

No court in this Circuit has considered saved costs when calculating a fair market value license.  The "value of use" language cited by Plaintiffs says nothing about saved costs and only addresses whether "value of use" includes a fair market value license.  *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977) ("value of use" is "a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work" and is based on the amount for which "[a]n author might license the use of his copyright"); Ninth Cir. Model Civil Jury Instruction 17.23 (Copyright – Damages – Actual Damages) ("The reduction of the fair market value . . . could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work.").  Only the Seventh Circuit and its district courts have allowed saved costs as a measure of actual damages.  *See Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357 (7th Cir. 1985); D.I. 431 (Defs.' Mot.) at 18-20; D.I. 504 (Defs.' Reply) at 13-14.  Such recovery impermissibly manipulates this Circuit's traditional "value of use" concept.  D.I. 431 (Defs.' Mot.) at 18-19.

In an attempt to salvage *Deltak* and its saved costs theory, Plaintiffs rely on the *Nimmer* treatise and the Second Circuit's decision in *On Davis*. These authorities support Defendants, not Plaintiffs. A closer look at *Nimmer* reveals that in the "[c]urrent [a]pplication" section, all of the cases awarding a fair market value license did so based on benchmark licenses, not saved costs. *See Nimmer* at § 14.02[B][4]; *see also Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 359-60 (6th Cir. 2007) (requiring license fee to be based on terms of license agreement between the parties); *Polar Bear*, 384 F.3d at 709 & n.6 (described *supra*); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566-67 (7th Cir. 2003) (upholding actual damages award where plaintiff introduced evidence of software license fees and other similar fees). Similarly, *On Davis* did not resurrect—or even address—*Deltak*'s saved costs theory. *See 6 Patry on Copyright* § 22:129 ("[*On Davis*] did not depart from *Business Trends'* rejection of *Deltak*, but merely noted that the rejection did not foreclose an award of lost license fees . . . ."). Rather, *On Davis* "is a traditional copyright opinion" that confirms that a fair market value license should be measured by benchmark licenses, not by a defendant's saved costs. *See id.* § 22:130 (distinguishing the "value of use" manipulation in *Deltak* from the traditional application of "value of use" in *On Davis*); *On Davis v. The Gap., Inc.*, 246 F.3d 152, 161, 172 (2d Cir. 2001) (fair market value license based on a previous royalty fee plaintiff received for the use of a copyrighted design). Thus, even Plaintiffs' cited authorities prove that "*Deltak*'s view of value of the use is an aberration and should remain one." *6 Patry on Copyright* § 22:130.

## II.   PLAINTIFFS DID NOT DISCLOSE COMPUTATIONS OF RECOVERABLE DAMAGES FOR THEIR TRESPASS TO CHATTELS AND CDAFA CLAIMS

### A.   Plaintiffs' Initial Disclosures and Discovery Responses Do Not Disclose the Required "Computation" of Damages.

Plaintiffs argue that they adequately disclosed computations for their trespass to chattels and CDAFA damages in their discovery responses, initial disclosures, and a deposition exhibit by "list[ing]" and "call[ing] out" the categories of damages they demand. D.I. 677 (Pls.' Opp.) at 21-22; D.I. 679 (House Decl.) ¶ 36, Ex. 12. However, such high level statements are insufficient to provide a "computation" of damages because they do not disclose any estimated amounts or

1   calculations that could constitute a "computation."  Fed. R. Civ. P. 26(a)(1)(iii); *see also, e.g.*,

2   *Silong v. U.S.*, No. CV F 06-0474 LJO DLB, 2007 U.S. Dist. LEXIS 68724, at *12 (E.D. Cal.

3   Sept. 5, 2007) (granting summary judgment when plaintiff failed to provide any dollar amounts or

4   other sufficient "computation" of damages).  Plaintiffs' conclusory statement that damages for the

5   computer access claims are "overlapping" does not disclose a claim-by-claim damages

6   computation, as the Federal Rules require to provide adequate notice of a plaintiff's specific

7   damages claims.  D.I. 677 (Pls.' Opp.) at 21-22; *see also City & County of San Francisco v.*

8   *Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (holding that Rule 26 requires

9   disclosure of damages computations on a claim-by-claim basis "[b]ecause the merits analysis and

10  assessment of likelihood of success may vary among the claims").

11          **B.**      **Plaintiffs Have Not Otherwise Disclosed Computations of Damages for Their**
             **Trespass to Chattels or CDAFA Claims.**

12

13          Plaintiffs do not dispute that their damages expert Meyer never identified a computation of

14  damages specific to the trespass to chattels claim.  Although Plaintiffs now argue that they claim

15  investigation costs and lost profits, they did not disclose these damages claims through the Meyer

16  Report, despite having expressly identified the other causes of action for which Plaintiffs seek

17  these remedies.  *See* D.I. 641-2 (Meyer Report) ¶ 352 n.657.  Having failed to identify in their

18  discovery responses, disclosures, or expert report *any* computations for *any* damages they claim

19  for trespass, Plaintiffs should be precluded from seeking such damages.  *See Veritas Operating*

20  *Corp. v. Microsoft Corp.*, No. 2:06-cv-00703-JCC, 2008 U.S. Dist. LEXIS 35627, at **6, 24, 106

21  (W.D. Wash. Jan. 17, 2008) (granting summary judgment barring plaintiff from seeking

22  "monetary damages" for a patent infringement claim because it failed to provide sufficient

23  "computations" of damages); *Silong*, 2007 U.S. Dist. LEXIS 68724, at *12.

24          There are three types of CDAFA damages Plaintiffs put at issue, none of which they may

25  recover.  First, although the Meyer Report identifies CDAFA damages in the form of

26  unquantified alleged computer damage, Plaintiffs now state that they "do[] not intend to pursue

27  anything not disclosed" and seek only "investigation costs" and "lost profits" for their CDAFA

28  claim.  D.I. 677 (Pls.' Opp.) at 21-22.  Because Plaintiffs concede that they did not disclose a

1    computation of damages in the form of harm to computers, this Court should grant summary

2    judgment precluding Plaintiffs from seeking such damages and introducing such evidence at trial.

3         Second, Plaintiffs did not disclose an intent to seek investigation costs in connection with

4    their CDAFA claim until their opposition brief.  Plaintiffs do not explain Meyer's failure to

5    identify investigation costs, disclosed only in connection with Plaintiffs' CFAA claim, as damages

6    sought under the CDAFA claim.  *See* D.I. 641-2 (Meyer Report) ¶ 451.  And, as addressed above,

7    Plaintiffs' disclosures and discovery responses do not remedy this deficiency by simply declaring

8    that damages for computer access claims are "overlapping."  Thus, Plaintiffs should be precluded

9    from recovering investigation costs under the CDAFA claim.

10        Third, Plaintiffs should also be precluded from seeking lost profits for the CDAFA claim

11   because the statute's plain language makes clear that they are not recoverable.[3]  Plaintiffs attempt

12   to construe the CDAFA's "shall include" language expansively, but the cases on which they rely

13   do not address this "shall include" language, instead focusing only on the terms "including" or

14   "includes."  *See* D.I. 677 (Pls.' Opp.) at 24 (citing *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1100

15   (1993); *Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th 709, 717 (2003)).  In contrast, the court in

16   *Pitney-Bowes, Inc. v. State Dept. of Food and Agric.* addressed the language "shall include,"

17   which phrase the California Court of Appeals specifically found to be limiting.  *See* 108 Cal. App.

18   3d 307, 317 (Ct. App. 1980) ("We conclude the Legislature intended to use the words 'shall

19   include' *to limit* the scope of the regulatory scheme . . . .") (emphasis added).

20        Plaintiffs' reliance on two district court cases for the claim that courts "have not

21   interpreted the 'shall include' language as expressly limited" (D.I. 677 (Pls.' Opp.) at 25) is

22   misleading; neither case discusses, let alone interprets, the CDAFA's statutory language.  *See*

23   *Wyatt Tech. Corp. v. Smithson*, No. CV 05-1309DT(RZx), 2006 WL 5668246, at *10 (C.D. Cal.

24   Aug. 14, 2006) (citing the CDAFA statutory language generally, without interpreting the phrase

25   "compensatory damages"), *rev'd in part*, 345 Fed. App'x 236, 239 (9th Cir. 2009); *Craigslist,*

26   *Inc. v. Naturemarket, Inc.*, No. C 08-05065 PJH (MEJ), 2010 U.S. Dist. LEXIS 19992, at *44-46

27
28        [3] Even if lost profits were recoverable under the CDAFA, Plaintiffs' CDAFA lost profits
     claim was not timely disclosed; it was first identified on February 23, 2010, several months after
     supplemental disclosures and expert reports were due.  *See* D.I. 641-2 (Meyer Report) ¶ 352 n.657.

1    (N.D. Cal. Jan. 28, 2010) (stating merely that compensatory damages are available under seven

2    statutes including the CDAFA, but not interpreting "compensatory damage" under the CDAFA).

3        Further, although Plaintiffs suggest that the CDAFA's legislative history supports an

4    expansive interpretation, the CDAFA's criminal origins and the purpose of the civil remedies

5    provided therein counsel otherwise.  The CDAFA is primarily a criminal statute, to which certain

6    civil remedies were added to aid the government with its enforcement.  *See* Ass. Bill No. 2727,

7    Reg. Sess. (Cal. 1999-2000), S. Comm. on Judiciary, Background Information Request

8    (explaining that the availability of civil remedies will "[make] it easier for a prosecutor to later

9    bring a successful criminal complaint").  These additional, limited remedies include verification

10   costs, injunctive and equitable relief, and exemplary damages.  *See* Cal. Penal Code § 502(e).

11   There is no suggestion, in the legislative history or otherwise, that the Legislature intended to

12   provide more than the enumerated civil remedies to assist with the enforcement of the statute.

13       Finally, Plaintiffs' use of the compensatory damages definition in California Civil Code §

14   3333 to interpret the CDAFA's "compensatory damages" language is misplaced.  The

15   Legislature did not incorporate that definition into the CDAFA, a statute within the Penal Code.

16   Where the Legislature intends to rely on the Civil Code, it expressly does so.  *See* Cal. Penal

17   Code § 502(e)(4) (referencing Section 3294(c) of the Civil Code to define "oppression, fraud, or

18   malice" for purposes of awarding punitive or exemplary damages).  Had the Legislature intended

19   to define CDAFA compensatory damages in terms of Civil Code § 3333, it would not have

20   stated that victims of computer crimes could collect "compensatory damages, as defined in

21   paragraph (1) of subdivision (e) of Section 502" in the form of forfeited property.  Cal. Penal

22   Code § 502.01(g)(1).

23   **C.    Plaintiffs Have Not Carried Their Burden to Prove that the Failure to
         Disclose Was Harmless or Substantially Justified.**

24

25       Plaintiffs incorrectly assert that Defendants bear the burden to prove that they were

26   prejudiced by an inadequate disclosure; in fact, Plaintiffs have the burden of proving that their

27   failure to disclose was "harmless" or "substantially justified."  Fed. R. Civ. P. 37(c)(1); *see also*

28   *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (holding that non-disclosing

1   party has burden "to demonstrate that the failure to comply with Rule 26(a) is substantially

2   justified or harmless"); *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, No.

3   C 08-4220 PJH, 2009 WL 1833988, at *3 (N.D. Cal. June 23, 2009) (Hamilton, J.) (holding that

4   parties may not rely on undisclosed evidence "unless they demonstrate that their failure to

5   disclose . . . was 'substantially justified' or 'harmless'").  Indeed, Judge Laporte's September 17,

6   2009 Order notes, the burden "is on the party who failed to comply [with Rule 26] to demonstrate

7   that it meets one of the two exceptions to mandatory sanctions."  D.I. 482 (9/17/09 Order) at 6.

8        Defendants have been harmed by Plaintiffs' continued failure to disclose.  Three years

9   have passed since this lawsuit was filed; fact discovery has been closed for several months;

10  Defendants have submitted their expert rebuttal reports; expert discovery is almost complete; and

11  less than six months remain before trial.  *See* D.I. 325 (6/11/09 Order) at 1-2; *Allen v. Bayer

12  Corp.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (affirming dismissal for failure to comply with case

13  management orders and recognizing increased risk of prejudice caused by delay in "an involved,

14  complex case").  Delayed disclosure of such computations, which undoubtedly would rely upon

15  complicated technical analysis, would require additional time for expert discovery, analysis, and

16  rebuttal.  *See, e.g.*, *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1569 (Ct. App. 1996)

17  (stating that damages under California trespass to chattels claims must be calculated with

18  precision).  Thus, Plaintiffs' consistent failure to adequately disclose damages computation for

19  these claims is not remediable by delayed disclosure; in fact, it would harm Defendants' ability

20  to respond to such damages claims and the efficient resolution of this case.

21  **III.    OEMEA CANNOT SHOW THE REQUIRED CALIFORNIA NEXUS**

22       Plaintiffs do not dispute that OEMEA is a non-resident Irish corporation; is not registered

23  to do business in California; has no customers in California; has a sales territory limited to

24  EMEA; suffered no injury in California; and previously argued to this Court that the support and

25  marketing activities for EMEA customers occurred in Texas and Europe, not in California.  *See*

26  D.I. 643 (Defs.' Mot.) at 4-5.  Instead, Plaintiffs attempt to create a dispute of fact where none

27  exists by improperly larding the record with irrelevant material.  Despite the volume of

28

1   documents, Plaintiffs fail to establish the required California nexus.[4]  Defendants produced over

2   11.2 million pages and 17 terabytes of data.  Lanier Decl. ¶ 1.  If the nexus existed, Plaintiffs

3   would have found evidence of it in this vast store of data and presented it to the Court.  The fact

4   that they have chosen to throw mud at the wall instead proves that no such nexus exists.

5       **A.**    **<u>Plaintiffs' Evidence Does Not Support the Claimed California Nexus.</u>**

6       The vast majority of Plaintiffs' evidence is irrelevant.  To the extent any of it shows a

7   connection with California, it is too superficial to support a claim under California law.

8       **Defendants' California operations:**  The majority of Plaintiffs' evidence merely

9   demonstrates that Defendants have operations in California, a fact that is neither disputed nor

10  dispositive.[5]  The relevant question is not whether Defendants have operations in California, but

11  whether a sufficient connection exists between those operations and OEMEA's claims.  Absent

12  this required nexus—which none of these documents show—the evidence is irrelevant.

13      **SAP California employees:**  Agassi's and Shenkman's involvement in SAP's decision to

14  acquire TN is irrelevant.[6]  It is undisputed that TN did not market or provide support services to

15  any EMEA customer until *after* SAP acquired TN; therefore, no OEMEA claim could have arisen

16  prior to SAP's acquisition of TN.  Lanier Decl. ¶ 5, Ex. 5 (Meyer Report) ¶ 71.  Conduct prior to

17  the acquisition cannot provide the required California nexus.

18      **TN California employees:**  Ravin is also irrelevant.[7]  He joined TN three years before the

19  SAP acquisition and left within weeks thereafter, before (or very shortly after) OEMEA's claims

20  could have arisen.  Lanier Decl. ¶ 7, Ex. 7 (Ravin Tr.) at 19:2-6; 82:10-16.  Plaintiffs point to no

21  conduct by Ravin relating to OEMEA.  Plaintiffs state that Geib was accountable for sales

22  territories in EMEA; however, Geib held that position for only a few weeks before leaving TN. [8]

---

23      [4] The House Declaration is not limited to "only facts" but is replete with argument and
24  characterization of the evidence, circumventing the page limit with numerous pages of argument.
    On that basis, the declaration and its exhibits should be stricken.  L.R. 7-5(b); Defs.' Objs. to
    Evid. at 1-4.

25      [5] *See, e.g.*, House Decl., Exs. 37, 45, 46, 53, 57, 58, 96, 97, 473 (Defendants have board
    and other meetings in California); Exs. 210, 225 (TN had offices in California); Exs. 1 (¶ 106), 2
26  (¶ 106), 19, 21, 22, 23, 33, 395, 738 (some employees located in California); D.I. 156 (same).

27      [6] D.I. 677 (Pls.' Opp.) at 5; House Decl. ¶¶ 7-10, Exs. 19, 22, 32, 35, 36, 41, 208, 210,
    212, 219, 225, 390, 392, 395, 707, 738.

        [7] House Decl. ¶ 13, Exs. 36, 40, 455.

28      [8] House Decl. ¶ 13, Ex. 92.

1   Lanier Decl. ¶ 6, Ex. 6 (Geib Tr.) 40:13-42:9.  The position had been held by a UK employee

2   (Pullan), who remained ultimately responsible for EMEA sales.[9]  *Id.*

3          **SAP lawyers:**  That SAP has lawyers in California is neither disputed nor dispositive.

4   Much of Plaintiffs' evidence relates to the acquisition due diligence, which pre-dates OEMEA's

5   claims.[10]  For the rest, Plaintiffs fail to connect any specific legal advice allegedly provided in

6   California with any OEMEA claim.[11]  Plaintiffs contend that lawyers in California reviewed,

7   negotiated, and approved "many" TN customer agreements, but identify only one OEMEA

8   customer.  D.I. 677 (Pls.' Opp.) at 5.  In fact, the cited document shows only that two lawyers may

9   have participated in a meeting in Germany that included the German "legal counterpart."[12]

10         **Safe Passage:**  Plaintiffs primarily rely on Hurst, but fail to show conduct by him directed

11  at EMEA.[13]  The other evidence is irrelevant: the Ravin email does not relate to OEMEA and pre-

12  dates any OEMEA claim; the documents purportedly showing that TN was a "cornerstone" of

13  Safe Passage do not evidence a connection between activities in California and OEMEA's claims;

14  nor do the cited communications among California employees about Safe Passage.[14]  Of the

15  documents Plaintiffs identify, only two show direct communications with employees in EMEA.[15]

16         **Systems location:**  OEMEA does not own the computer systems or downloaded material

17  at issue.[16]  House Decl. ¶ 2, Ex. 1; ¶¶ 155-171 (OUSA and OIC own the computer systems and

18  downloaded materials).  Plaintiffs concede that the relevant downloads were stored in Texas.  *See*

19  D.I. 643 (Defs.' Mot.) at 5; Lanier Decl. ¶ 5, Ex. 5 (Meyer Report) ¶¶ 72-73.

20         **Customer-Specific Evidence:**  Plaintiffs present no evidence for 20 of the 39 OEMEA

21  customers.[17]  For the rest, Plaintiffs' evidence shows no or only superficial contacts.  Plaintiffs

22      [9] Pullan was located in England.  *See* House Decl. ¶ 13, Ex. 69.

        [10] House Decl. ¶ 11, Exs. 21, 22, 39, 40, 41.

23      [11] House Decl. ¶¶ 11-12, Exs. 21, 22, 23, 28, 33, 34, 38, 40, 41, 86, 87, 97, 1684.

        [12] House Decl. ¶ 12, Ex. 65.

24      [13]  House Decl. ¶ 15, Ex. 24.  No Hurst testimony or exhibits show direct involvement by

25  Hurst in EMEA.  *Id.*  Plaintiffs state that Safe Passage discounts for EMEA customers had to
    receive "U.S." approval, but not "California" approval or Hurst approval.  *Id.* at 125:23-126:13.

        [14] House Decl. ¶ 15, Exs. 22, 36, 41, 54, 59, 436, 473, 934, 1684.

26      [15] House Decl. ¶ 15, Exs. 51, 60.

        [16] D.I. 677 (Pls.' Opp.) at 6; House Decl. ¶ 22, Exs. 26, 42, 1634, 1637.

27      [17] Plaintiffs mistakenly contend there are 40 OEMEA customers.  House Decl. ¶ 42.  Durr,

28  however, is not an OEMEA customer.  *See* Defs.' Responses to Pls.' Objs. to Evid. at 2.

1    cite multiple documents that merely identify EMEA customers and evidence no California

2    connection.[18]  Plaintiffs rely on contacts with Hurst and Geib that not only are superficial but also

3    prove that sales and marketing activities for EMEA customers were, in fact, conducted in

4    EMEA.[19]  For Harley-Davidson, Plaintiffs note that the SAP salesperson is in California, but the

5    location of SAP salespeople is irrelevant.[20]  For Fujitsu, Plaintiffs rely on the fact that a California

6    employee helped the German sales team fill out a form and answer some customer questions.  For

7    Petroleum GeoServices, Plaintiffs mistakenly conclude that the TN salesperson was located in

8    California.[21]  For Alcatel-Lucent, Plaintiffs rely on work by two support engineers in California,

9    but one provided only 15 minutes of assistance and the other a few hours.[22]  For Yazaki, Plaintiffs

10   rely on a Geib email (copying TN's European employees) asking the customer to complete and

11   return a form.[23]  For five customers, Plaintiffs rely on the fact that they were asked or agreed to

12   provide customer references, collected by an employee in California.[24]  The remaining customers

13   are U.S. customers with operations in EMEA.  Nothing in the Allianz documents indicates that a

14   California employee was involved in sales, marketing, or support activities in EMEA.[25]  In fact,

---

[18] *See, e.g.*, House Decl., Exs. 49, 62, and 72.  This is the only type of evidence presented for BrainLab, Allied Bakeries, ACO Produits, and WestCode Semiconductor.  *See also id.* at Exs. 61, 63, 72 (Holland Casino); Ex. 24 (Rotkaeppchen ); Ex. 49 (Organon).

[19] For Holland Casino, Plaintiffs rely on an email from German employee, Weissmann, regarding a European trade show.  Hurst simply forwards the email to other employees in Europe, asking them to contact Weissmann if they are interested.  House Decl., Ex. 50.  Plaintiffs also rely on emails between the customer and Geib.  In the first, Geib introduces the customer to Pullan, his "counterpart in Europe," and asks if Pullan will handle the customer.  In the second, Geib tells Pullan he "ignored" the customer email.  The "win" notice and accompanying email credit Pullan for the sale.  *Id.* at Exs. 78, 79, 95.  For Electrolux, Plaintiffs rely on a single email chain among employees in Europe (Rawls in UK and Zwart in Germany) that Geib forwarded to TN's counsel (Nolan) in Connecticut.  House Decl., Ex. 98; Lanier Decl. ¶ 2, Ex. 1 (TN Org. Chart).

[20] House Decl., Ex. 52.  Plaintiffs agreed, and the Court confirmed, that SAP's sales activities unrelated to TN are irrelevant.  D.I. 482 (9/17/09 Order) at 16.  Many TN customers, including Harley-Davidson, had relationships with SAP that pre-dated, or were otherwise separate from, their TN relationship.  Lanier Decl. ¶ 3, Exs. 2-3.  Plaintiffs point to no TN-related activity by this SAP salesperson.

[21] House Decl., Ex. 109; Lanier Decl. ¶ 2, Ex. 1 (TN Org. Chart).

[22] House Decl., Exs. 93, 106, 107.

[23] House Decl., Ex. 77.  Other documents Plaintiffs cite for Yazaki merely identify it as an EMEA customer or, in one case, provides notes about the customer.  *Id.* at Exs. 24, 61, 63, 67, 81.

[24] House Decl., Exs. 70, 73, 90, 105 (OCE, Gruppo Galbani, Liberata UK, Organon International, and Rotkaeppchen).

[25] House Decl., Exs. 102, 103.  Ex. 104 relates to a different customer and confirms that sales and marketing activities in EMEA were conducted by employees in Europe.

1    TN's agreement with this customer limited support activities to the U.S.[26]  Plaintiffs' Baxter

2    documents largely relate to the U.S. entity, including two that pre-date the SAP acquisition and

3    any TN activities in EMEA.[27]  In sum, these minimal and superficial contacts with California are

4    insufficient to provide the required nexus.

5                    **B.       Plaintiffs' Legal Arguments Have No Merit.**

6                          1.       The Answer Does Not Concede that OEMEA's Claims Are Proper.

7          Admissions in the Answer on venue and supplemental jurisdiction do not establish that

8    conduct relevant to OEMEA's claims took place in California.  Admitting that a "substantial part"

9    of events alleged in the Complaint took place in this forum is not tantamount to admitting that

10   specific conduct took place here; rather, "[v]enue is proper as long as there are substantial

11   connections to the case in the plaintiff's chosen district, and it makes no difference if another

12   district has more substantial connections than the chosen district."  *Key Equip. Fin., Inc. v. Ressor*,

13   No. 2:08-cv-2003-DV, 2008 WL 819966, at *1 (W.D. Tenn. Mar. 25, 2008).  Similarly, admitting

14   that the state law claims arise from a common nucleus of fact does not admit that specific conduct

15   took place in a certain or common location.  *Lucarino v. Con-Dive, LLC*, No. H-09-2548, 2010

16   U.S. Dist. LEXIS 20075, at *6 (S.D. Tex. Mar. 5, 2010) ("The state-law claim and the federal law

17   claim must arise from a 'common nucleus of operative fact,' but this does not mean that all of the

18   facts applicable to the federal claim must also apply to the state claim.") (citation omitted).

19         Admitting that venue and supplemental jurisdiction are proper also does not preclude a

20   challenge to applying California's law to the complained-of conduct.  Courts address whether

21   forum law applies even after a defendant admits that venue and jurisdiction are proper.  *See Pet*

22   *Food Express Ltd. v. Royal Canin USA Inc.*, No. C 09-1483 MHP, 2010 WL 583973, at *6 n.8

23   (N.D. Cal. Feb. 16, 2010) (considering whether California law should apply, even after defendant

24   consented to jurisdiction and venue); *Prime Start Ltd. v. Maher Forest Prods., Ltd.*, 442 F. Supp.

25

26   _____
          [26] Lanier Decl. ¶ 4, Ex. 4.

27        [27] *See, e.g.*, House Decl., Exs. 48, 71, 82, 83, 84.  Exhibits 82 and 83 pre-date TN
     activities in EMEA.  The only documents Plaintiffs cite specific to EMEA are those indicating
28   that TN eventually assigned a support engineer in California to the customer in an effort to
     resolve its dissatisfaction with TN's services.  *Id.* at Exs. 47, 88, 94, 101, 110, 111.

1   2d 1113, 1118-20 (W.D. Wash. 2006) (same).[28]

2       This Court should reject Plaintiffs' assertion that Defendants were required to raise this

3   issue as an affirmative defense.  *See* Fed. R. Civ. P. 8(c) (listing defenses to be affirmatively pled).

4   It is Plaintiffs' burden to prove their claims are sufficient and that due process has been met;

5   Defendants need not assert as affirmative defenses Plaintiffs' failure to meet their burden.  *See*

6   *Native Am. Arts, Inc. v. Waldron Corp.*, 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003).

7                    2.    Applying California Law to OEMEA's Claims Fails to Satisfy Due Process.

8       Plaintiffs chose to bring their claims under California law and admit that California "must

9   have a significant contact or significant aggregation of contracts, creating state interests, such that

10  choice of its law is neither arbitrary nor fundamentally unfair," but fail to establish that OEMEA's

11  claims meet this standard.  *See* D.I. 677 (Pls.' Opp.) at 7-8.  First, there is no basis to claim that the

12  case law Defendants cite is inapposite.[29]  That some cases involve class action suits does not

13  undermine those courts' application of the rule precluding application of California law to

14  extraterritorial claims.  Indeed, Plaintiffs rely on several of the same cases that Defendants cite.

15      Second, Plaintiffs do not prove that Defendants could have reasonably expected that

16  California law would govern OEMEA's claims.  That some of the parties and witnesses are

17  located in California and that some of the conduct alleged by the other plaintiffs took place there

18  does not mean that Defendants could have expected to be sued in California under California law

19  by a non-resident alleging conduct and harm that took place entirely outside of California.  *See*

20  *Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224-25 (Ct. App. 1999).

21      Third, it is Plaintiffs' burden to "plead a jurisdictional basis for claims and indicate which

22  state law applies . . . ."  *JM Comp. Servs., Inc. v. Schlumberger Techs., Inc.*, No. C 95-20349 JW,

23  1996 WL 241607, at *5 (N.D. Cal. May 3, 1996).  Reliance on *Hurtado v. Superior Ct.* to argue

24  that Defendants must elect another forum's law is misplaced.  *See* 11 Cal. 3d 574, 581 (1974)

25  (holding only that litigant wishing to invoke another state's law must show interest in applying its

26      [28] Pleadings from these cases confirm that the courts addressed whether forum law applied
27  after the defendant admitted venue and jurisdiction were proper.  *See* Lanier Decl. ¶¶ 26-29, Exs.
    26-29.

28      [29] Defendants withdraw reliance upon the unpublished *Guy v. IASCO*, No. B168339, 2004
    WL 1354300, at *5 (Cal. Ct. App. June 17, 2004).

1  law).  Plaintiffs chose to sue under California law; they must accept the consequences of that

2  choice.

3  **IV.   PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF
       THE ALLEGED LOST PROFITS OF NONPARTIES**

4

5      In their Opposition, Plaintiffs reveal for the first time that they are not seeking lost profits

6  for related nonparties.  This is despite Meyer specifically calculating two lost profits "scenarios,"

7  Scenario 1 for losses to the Oracle organization as a whole and Scenario 2 for losses per plaintiff

8  entity.  *See* Lanier Decl., Ex. 5 (Meyer Report) ¶ 433 (Table 16).[30]  Plaintiffs now claim that

9  Meyer calculated Scenario 1 to rebut a potential argument that Plaintiffs' fair market value license

10  calculation is inflated and that they "conditionally may reference" these purported lost profits

11  even if they cannot recover them.  *See* D.I. 677 (Pls.' Opp.) at 10-11.  But Plaintiffs never explain

12  how lost profits of nonparties are relevant to calculating a fair market value license, and Meyer

13  never relies on this evidence to support his fair market value license calculation.  Plaintiffs simply

14  use the Meyer Report as a back door through which to admit evidence of a perceived impact from

15  alleged unlawful activities, in complete disregard of the Court's November 2, 2009 Order.  *See*

16  D.I. 532 (11/2/09 Order).  Because Plaintiffs now concede that they do not seek lost profits for

17  nonparties and such evidence is irrelevant for any other purpose, this Court should preclude

18  Plaintiffs from introducing evidence of the purported lost profits of nonparties per Federal Rule of

19  Civil Procedure 37(c)(1) and consistent with the Court's November 2, 2009 Order.

20  **V.   CONCLUSION**

21      For these reasons, Defendants respectfully request that the Court grant their Motion.

22  Dated:  April 14, 2010                    JONES DAY

23                                            By: /s/ Tharan Gregory Lanier
                                                 Tharan Gregory Lanier
24

25                                            Counsel for Defendants
                                              SAP AG, SAP AMERICA, INC., and
26                                            TOMORROWNOW, INC.

27

28  [30] Also, Meyer's damages summary chart uses ████████ REDACTED ████████
    ████████  *See* Lanier Decl., Ex. 5 (Meyer Report) ¶¶ 20, 433 (Tables 1 & 16).

SVI-79641v1

REPLY ISO DEFS.' MOT. FOR PARTIAL SJ
Case No. 07-CV-1658 PJH (EDL)