1   BINGHAM MCCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  415.393.2000
    Facsimile:  415.393.2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
10  500 Oracle Parkway, M/S 5op7
    Redwood city, CA  94070
11  Telephone:  650.506.4846
    Facsimile:  650.506.7114
12  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
13

14  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle International Corporation,
15  Oracle EMEA Limited, and Siebel Systems, Inc.

16                  UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                       OAKLAND DIVISION

19

| 20  ORACLE USA, INC., *et al.*, | Case No. 07-CV-01658 PJH (EDL) |
|---|---|
| 21              Plaintiffs, | **ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS MOTION** |
| 22        v. | |
| 23  SAP AG, *et al.*, | |
| 24              Defendants. | Date:      May 5, 2010 |
| 25 | Time:      9:00 am |
|  | Place:     3rd Floor, Courtroom 3 |
| 26 | Judge:     Hon. Phyllis J. Hamilton |

27

28

1

# TABLE OF CONTENTS

2
Page

3
I.      INTRODUCTION ......................................................................................... 1

4
II.     THE COURT SHOULD ENTER JUDGMENT ON THE UNCONTESTED
        PORTION OF ORACLE'S MOTION ............................................................. 2

5

6
III.    THE COURT SHOULD DENY THE CROSS MOTION; DEFENDANTS ARE
        LIABLE FOR PRE-MARCH 1, 2005 INFRINGEMENT AND SAP IS
        CONTRIBUTORILY LIABLE ....................................................................... 2

7
        A.      OIC May Sue For Infringement Occurring Prior to March 1, 2005 ..................... 3

                1.      The MTD Order Did Not Address OIC's Standing ................................. 3

8
                2.      Rights To Past Claims Were Preserved And Transferred To OIC............ 4

9
        B.      SAP Is Liable For Contributory Infringement ........................................ 6

10
                1.      HRMS Copyrights.................................................................... 6

                2.      Database Copyrights ................................................................ 8

11
IV.     SAP CANNOT MAINTAIN A LICENSE DEFENSE UNLESS IT PROVES AN
        APPLICABLE LICENSE ............................................................................. 9

12

13
V.      SAP IS LIABLE FOR MORE COMPUTER FRAUD THAN ADMITTED ................. 10

        A.      Oracle Has Established Damage Under the CFAA.......................................... 10

14
                1.      SAP's Computer Fraud Impaired Server Capacity and Bandwidth........ 11

15
                2.      SAP's Fake Data Entries "Damaged" Oracle Customer Data ................ 12

                3.      Downloading and Use of Files to Compete With Oracle Is Damage ...... 13

16
        B.      SAP Conceded Its Actions Were Intentional ....................................... 14

17
VI.     SAP IS LIABLE FOR SAP TN'S COMPUTER FRAUD ............................. 14

18

19

20

21

22

23

24

25

26

27

28

### TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001)............................................................... 7, 8

*Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer,*
No. C 04-2527 MJJ, 2005 WL 2354119 (N.D. Cal. Sept. 26, 2005).................................... 15

*Black & Decker, Inc. v. Smith,*
568 F. Supp. 2d 929 (W.D. Tenn. 2008)............................................. 13

*Bourne v. Walt Disney Co.,*
68 F.3d 621 (2d Cir. 1995)................................................................ 10

*Bowoto v. Chevron Texaco Corp.,*
312 F. Supp. 2d 1229 (N.D. Cal. 2004) ......................................... 14, 15

*Calence, LLC v. Dimension Data Holdings,*
No. C06-0262RSM, 2007 U.S. Dist. LEXIS 38043 (W.D. Wash. May 24, 2007)................. 15

*Cassetica Software, Inc. v. Computer Sci. Corp.,*
No. 09 C 0003, 2009 U.S. Dist. LEXIS 51589 ............................... 11, 13

*Charles Schwab & Co. v. Carter,*
No. 04 C 7071, 2005 U.S. Dist. LEXIS 21348 (N.D. Ill. Sept. 27, 2005) ............................ 15

*Co-opportunities, Inc. v. Nat'l Broad. Co.,*
510 F. Supp. 43 (N.D. Cal. 1981) .................................................. 5

*Condux Int'l, Inc. v. Haugum,*
No. 08-4824 ADM/JSM, 2008 U.S. Dist. LEXIS 100949 (D. Minn. Dec. 15, 2008)............ 11

*Cont'l Group, Inc. v. KW Prop. Mgmt., LLC,*
622 F. Supp. 2d 1357 (S.D. Fla. 2009) .......................................... 11, 13

*Craigslist, Inc. v. Naturemarket, Inc.,*
No. C 08-5065 PJH, 2010 WL 807446 (N.D. Cal. Mar. 5, 2010) .......................................... 6

*Creative Computing v. Getloaded.com LLC,*
386 F.3d 930 (9th Cir. 2004)........................................................ 10, 11, 13

*Davenport v. Bd. of Tr. of State Ctr. Cmty. Coll. Dist.,*
654 F. Supp. 2d 1073 (E.D. Cal. 2009)............................................ 12

*DeSilva Const. Corp. v. Herrald,*
213 F. Supp. 184 (M.D. Fla 1962) ................................................ 5

*Doe v. Dartmouth-Hitchcock Med. Ctr.,* Civil No. 00-100-M, 2001 U.S. Dist. LEXIS
10704 (D.N.H. July 19, 2001)....................................................... 15

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.,*
No. 06-3359, 2009 U.S. Dist. LEXIS 30610 (N.D. Cal. Apr. 9, 2009) ................................. 14

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

1

### TABLE OF AUTHORITIES
(continued)

2

Page

3
4

*Dudick v. Vaccaro,*
  No. 3:06-cv-2175, 2007 WL 1847435 (M.D. Pa. June 25, 2007)....................................... 13

*Ellison v. Robertson,*
  357 F.3d 1072 (9th Cir.2004)........................................................................................... 6, 9

5
6

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
  76 F.3d 259 (9th Cir. 1996)............................................................................................... 7, 8

7
8

*Forry, Inc. v. Neundorfer, Inc.,*
  837 F.2d 259 (6th Cir. 1988)............................................................................................. 5

9

*Garelli Wong & Assocs., Inc. v. Nichols,*
  551 F. Supp. 2d 704 (N.D. Ill. 2008) ............................................................................... 11

10
11

*Garland-Sash v. Lewis,*
  No. 05 Civ. 6827 (WHP), 2007 U.S. Dist. LEXIS 20909 (S.D.N.Y. Mar. 26, 2007) ........... 15

12

*Hanger Prosthetics v. Capstone Orthopedic, Inc.,*
  556 F. Supp. 2d 1122 (E.D. Cal. 2008) ............................................................................ 11

13

*Heit v. Tenneco, Inc.,*
  319 F. Supp. 884 (D. Del. 1970) ...................................................................................... 4

14
15

*Hotmail Corp. v. Van$ Money Pie, Inc.,*
  No. C 98-20064 JW, 1998 WL 388389 (N.D. Cal. Apr. 16, 1998) ..................................... 14

16

*HUD v. Rucker,*
  535 U.S. 125 (2002) ....................................................................................................... 10

17
18

*In re Aimster Copyright Litig.,*
  334 F.3d 643 (7th Cir. 2003)............................................................................................. 9

19

*In re Seagate Tech. II Sec. Litig.,*
  No. C-89-2493(A) MHP, 1990 U.S. Dist. LEXIS 14056 (N.D. Cal. June 19, 1990)............. 15

20

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,*
  139 F.3d 1234 (9th Cir. 1998)........................................................................................... 4

21
22

*Jadwin v. County of Kern,*
  610 F. Supp. 2d 1129 (E.D. Cal. 2009)............................................................................. 2

23

*Kamen v. Kemper Fin. Svcs.,*
  500 U.S. 90 (1991) .......................................................................................................... 5

24
25

*Lanard Toys, Ltd. v. Novelty, Inc.,*
  511 F. Supp. 2d 1020 (C.D. Cal. 2007) ........................................................................... 5

26

*LVRC Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009)........................................................................................... 15

27

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd,*
  545 U.S. 913 (2005) ....................................................................................................... 6, 8

28

1

<u>TABLE OF AUTHORITIES</u>
(continued)

2                                                                                          <u>Page</u>

3  *Mintel Int'l Group, Ltd. v. Neergheen,*
4      No. 08-cv-3939, 2010 U.S. Dist. LEXIS 2323 ............................................................... 11, 13

*Netbula, LLC v. BindView Dev. Corp.,*
5      516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................................................ 10

6  *Nexans Wires S.A. v. Sark-USA, Inc.,*
       319 F. Supp. 2d 468 (S.D.N.Y. 2004) .......................................................................... 15
7
   *NLFC, Inc. v. Devcom Mid-America, Inc.,*
8      No. 93 C 0609, 1994 WL 16484076 (N.D. Ill. Jan. 4, 1994) ................................. 10

9  *Ortega v. Oakland,*
       No. C07-02659 JCS, 2008 WL 4532550 (N.D. Cal. Oct. 8, 2008) ...................... 12
10
   *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.,*
11     832 F. Supp. 1378 (C.D. Cal. 1993)............................................................................. 6

12 *Perfect 10, Inc. v. Amazon.com, Inc.,*
       508 F.3d 1146 (9th Cir. 2007)................................................................................. 6, 8
13
   *Raffoler, Ltd. v. Peabody & Wright, Ltd.,*
14     671 F. Supp. 947 (E.D.N.Y. 1987) ............................................................................ 5

15 *Register.com v. Verio, Inc.,*
       126 F. Supp. 2d 238 (S.D.N.Y. 2001) ...................................................................... 11
16
   *Resdev, LLC v. Lot Builders Ass'n,*
17     No. 6:04-cv-1374-ORL-31DAB, 2005 U.S. Dist. LEXIS 19099 (M.D. Fla. Aug. 10,
       2005) ......................................................................................................................... 11
18
   *Role Models Am., Inc. v. Jones,*
19     305 F. Supp. 2d 564 (D. Md. 2004) .......................................................................... 15

20 *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.,*
       119 F. Supp. 2d 1121 (W.D. Wash. 2000)................................................................. 13
21
   *Sun Microsystems Inc. v. Hynix Semiconductor Inc.,*
22     622 F. Supp. 2d 890 (N.D. Cal. 2009) ................................................................. 14, 15

23 *Theofel v. Farey-Jones,*
       359 F.3d 1066 (9th Cir. 2004)................................................................................... 10
24
   *Therapeutic Research Faculty v. NBTY,*
25     488 F. Supp. 2d 991 (E.D. Cal. 2007)....................................................................... 13

26 *U.S. v. Northrop Corp.,*
       59 F.3d 953 (9th Cir. 1995)......................................................................................... 5
27
   *U.S. v. Shea,*
28     493 F.3d 1110 (9th Cir. 2007)................................................................................... 10

*Williams v. Lewis,*
       No. C 06-0832-PJH, 2008 WL 860113 (N.D. Cal. Mar. 28, 2008) ......................... 2

iv                                                     Case No. 07-CV-01658 PJH (EDL)

1

TABLE OF AUTHORITIES
(continued)

2

Page

3

**STATE CASES**

4

*Lewis v. Anderson*,
477 A.2d 1040 (Del. 1983) ................................................................. 4

5

**FEDERAL STATUTES**

6

17 U.S.C. § 205 .................................................................................... 5

7

17 U.S.C. § 301 .................................................................................... 4

8

18 U.S.C. § 1030 ........................................................................ 2, 10, 14

28 U.S.C. § 1292 .................................................................................. 4

9

**STATE STATUTES**

10

Cal. Penal Code § 502 ....................................................................... 1, 2

11

Del. Code Ann. Title 8, § 253 ............................................................... 4

12

Del. Code Ann. Title 8, § 259(a) ........................................................... 4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

## I.    INTRODUCTION

Three years after Oracle first sued, SAP has finally confessed its liability on the two most important claims in this case:  copyright infringement and computer fraud.  SAP's Opposition, Dkt. 670 ("Opp."), at 4:28-5:5, 14 n.5.

On copyright infringement, SAP admits to infringing Oracle's HRMS copyrights through 111 copies that SAP made of that software between March 1, 2005 and March 4, 2008.  As to at least 12 of these copies, SAP admits that it continued illegally to copy Oracle's software for a year after Oracle filed this case.  These admissions are far from "marginal," as SAP proclaims. PeopleSoft's best-in-breed HRMS software and the corresponding support revenue was a key component of the $11.1 billion PeopleSoft acquisition.  SAP also concedes its liability for directly infringing Oracle's flagship Database software copyrights through dozens of illegal software instances.  This infringement, too, continued well beyond the commencement of this litigation.  SAP AG and SAP America also concede their pervasive control over SAP TN, and thus admit their own vicarious liability for infringing Oracle's HRMS and Database software. Finally, SAP concedes it has no license defense to all of this illicit copying.

SAP also concedes violations of the Computer Fraud and Abuse Act (the "CFAA") and of California Penal Code § 502 (the "CDAFA").  This includes the undisputed, illegal use of SAP's Titan website crawler to scrape an estimated 1 million files from Oracle's website.

These concessions entitle Oracle to judgment against all Defendants for infringing Oracle's PeopleSoft and Database software and against SAP TN for computer fraud.  However, several issues remain for the Court to decide.  First, SAP disputes that OIC, the undisputed copyright owner, may pursue the HRMS claims transferred to it for certain pre-March 1, 2005 copyright violations.  (SAP erroneously includes Oracle Database copyrights, which are unaffected by the March 1, 2005 issue.  *See* Dkt. 670-1 at 2.)  In making this argument, SAP attempts to use the Court's prior Motion to Dismiss Order ("MTD Order," Dkt. 224), which addressed only then-plaintiff OSC's standing, to foreclose a different plaintiff on different facts. SAP thus urges this Court to disregard existing law and become the first court ever to find that valid past copyright claims cannot be pursued on these facts.

Case No. 07-CV-01658 PJH (EDL)

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

1  Second, SAP refuses to accept responsibility for its material contribution to, and

2  encouragement of, SAP TN's HRMS and Database copying that it now concedes infringed

3  Oracle's copyrights.  Based on the undisputed facts, the Court should find SAP AG and SAP

4  America contributorily liable for this admitted infringement.

5  Third, despite admitting it intentionally downloaded over 1 million files from Oracle's

6  websites using the Titan crawler, SAP still denies that its massive downloading caused "damage"

7  or "intended damage" to Oracle.  SAP relies on a self-made definition of "damage," substituting

8  it for the plain definition in the CFAA.  The CFAA already defines "damage" to mean *any*

9  impairment, however slight – a standard the uncontested evidence easily meets.

10  Finally, though it concedes unfettered control of SAP TN, SAP urges the Court to depart

11  from this District's agency rules for parent corporation liability on Oracle's CFAA claims.

12  The Court should grant this Motion in full; however, even the claims that SAP now

13  concedes provide a roadmap for resolving similar claims on similar evidence before or at trial.

14  **II.   THE COURT SHOULD ENTER JUDGMENT ON THE UNCONTESTED
       PORTION OF ORACLE'S MOTION**

15

16  Oracle's Motion and supporting evidence established facts sufficient to enter judgment as

17  a matter of law on (1) Defendants' infringement of six Oracle copyright registrations, including

18  vicarious liability for SAP, (2) SAP TN's violations of § 1030(a)(2)(C) of the CFAA, and, (3)

19  SAP TN's violations of § 502(c)(7) of the CDAFA.  Further, SAP concedes that its second, third,

20  and fourth affirmative defenses don't apply to the claims raised in this Motion.  SAP does

21  not dispute these facts, and therefore, the Court should enter summary judgment as to each

22  uncontested claim and defense.  Opp. at 5:1-5, 10:21-26, n.4, n.5; *Williams v. Lewis*, No. C 06-

23  0832-PJH, 2008 WL 860113, *4 (N.D. Cal. Mar. 28, 2008) (granting summary judgment where

24  opposing party conceded it could not counter the motion); *Jadwin v. County of Kern*, 610 F.

25  Supp. 2d 1129, 1200-02 (E.D. Cal. 2009) (summary judgment granted on abandoned defenses).

26  **III.  THE COURT SHOULD DENY THE CROSS MOTION;
       DEFENDANTS ARE LIABLE FOR PRE-MARCH 1, 2005
       INFRINGEMENT AND SAP IS CONTRIBUTORILY LIABLE**

27

28  The right to sue on pre-March 2005 PeopleSoft copyrights could only take one of two

1    paths from PeopleSoft.  No matter the path, they both end at OIC.

2    **A.    OIC May Sue For Infringement Occurring Prior to March 1, 2005**

3    SAP concedes that Oracle International Corporation ("OIC") owns all copyrights asserted

4    in this action previously owned by PeopleSoft, Inc., J.D. Edwards World Source Co. and J.D.

5    Edwards YOUCentric Co. (for simplicity, "PeopleSoft").  Opp. at 3:16-23.  To the extent OIC

6    did not already hold the right to sue on claims related to the PeopleSoft copyrights that arose

7    prior to March 1, 2005 ("past claims"), that right now has been expressly transferred to OIC.

8    Oracle's Motion, Dkt. 649 ("Mot."), at 4:26-5:11.  In response, SAP claims that no existing

9    entity, including OIC, holds the right to sue for past claims, that the right to sue on past claims

10   was not properly transferred to OIC, and that any technical defects in the transfer cannot be

11   cured.  Opp. at 3-4.  In short, SAP contends the right to sue on past claims simply disappeared.

12   **1.    The MTD Order Did Not Address OIC's Standing**

13   The Court's MTD Order addressed a different issue, on different facts, than the one now

14   before the Court.  SAP's motion to dismiss argued only that Oracle Systems Corporation

15   ("OSC") had no standing.  Dkt. 184 at 10:22-12:14.  In the MTD Order, the Court ruled that

16   OSC had no standing, based on two findings:  (1) "Plaintiffs have not established that OSC is or

17   ever has been an owner or exclusive licensee of the asserted copyrights;" and (2) "The

18   intercompany agreements on which plaintiffs rely do not establish that the right to sue for

19   copyright infringement was expressly transferred to OSC as a consequence of the various

20   mergers."  MTD Order at 7:9-13.  At the time, SAP argued that the first issue was dispositive

21   and the second issue was irrelevant:  "OSC is not now and never has been an owner or exclusive

22   licensee of any of the copyrights at issue. . . . [S]o from our perspective that ends it."

23   Declaration of Chad Russell in Support of Oracle's Reply, ("Russell Decl."), ¶ 1, Ex. 1 at 4:6-11;

24   *see also id.* at 6:19-7:2, 21:9-22:5 ("[O]nly an owner or exclusive licensee may initiate suit. . . .

25   So the question of whether it could reach back to file suit based on pre-existing infringement is

26   irrelevant . . . .  It doesn't have standing.").  In dismissing OSC for lack of standing, the Court did

27   not reach the question of what entity held the right to sue.

28   The facts and issues before the Court now differ in all respects.  First, OIC, unlike OSC,

1   is the undisputed owner of all copyrights asserted here.  Opp. at 3:16-23.  Second, OIC has

2   received the past claims by express transfer.  Mot. at 4:26-5:11.  These two differences cure the

3   standing issue addressed by the Court's MTD Order.

4         In response to these different facts, SAP now argues that the Court resolved the one issue

5   SAP contended was "irrelevant" to its motion to dismiss – whether OSC ever held the right to

6   sue for past claims, such that it could transfer that right expressly to OIC.  SAP now contends

7   OSC never obtained the rights to past claims through merger, and therefore, could not transfer

8   them to OIC.  Opp. at 4:5-19.  No authority supports this result, nor does the MTD Order.[1]

9            **2.      Rights To Past Claims Were Preserved And Transferred To OIC**

10        Prior to March 1, 2005, PeopleSoft owned each PeopleSoft copyright and the right to sue

11  on past claims.  Opp. at 3:16-19.  PeopleSoft transferred ownership of the PeopleSoft copyrights

12  to OIC, the present copyright plaintiff.  *Id.* at 19-23.  PeopleSoft then merged into OSC pursuant

13  to Del. Code Ann. tit. 8, § 253.  *See* Declaration of Zachary J. Alinder in Support of Mot., Dkt.

14  657 ("Alinder Decl."), Ex. 108; Russell Decl., ¶¶ 2-3, Exs. 2 and 3.

15        By operation of Delaware law, **all** of the rights and liabilities remaining with PeopleSoft,

16  after it transferred ownership of the copyrights to OIC, passed to OSC as the surviving

17  corporation.  Del. Code Ann. tit. 8, § 259(a).  The right to sue on the past claims is one such

18  right; that right could not simply evaporate in the course of this merger.  *Heit v. Tenneco, Inc.*,

19  319 F. Supp. 884, 887-88 (D. Del. 1970) (Del. Code Ann. tit. 8, § 253 mergers "automatically"

20  transferred all existing claims to the sole surviving corporation); *Lewis v. Anderson*, 477 A.2d

21  1040, 1043 (Del. 1983) ("[T]he right to a pending cause of action is an asset of a merged

22  corporation which passes to the corporation surviving the merger.") (citations omitted).[2]

23  _____

[1] SAP has asserted that OIC may have received the right to sue for past claims.  *See* Defs. Opp.

24  to Oracle's Mot. for Entry of Final Judgment, Dkt. 273 at 13:10-25 (arguing that § 1292(b)

25  certification was improper because of Oracle's position that OIC could pursue past claims); *see also* Order Denying Motion for Final Judgment, Dkt. 289 at 2 (denying § 1292(b) certification

26  on unspecified grounds).  If the Court relied upon SAP's prior assertion in denying final judgment, then SAP may not now take an inconsistent position.  *Interstate Fire & Cas. Co. v.*

27  *Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998).

[2] Since 17 U.S.C. § 301 does not preempt state merger law, Delaware law, not federal common

28  

(Footnote Continued on Next Page.)

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

1    In response, SAP urges the Court into unchartered territory to adopt a rule that would

2  overturn Delaware law and disallow the cure of a later express transfer.  No Court has reached

3  such a result.  Certainly, none of SAP's authorities support the novel idea that past claims do not

4  automatically transfer with other assets in a merger.  Indeed, not one case involves Delaware

5  law, or even a merger.  *See Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D.

6  Cal. 2007) (written assignment between "related companies"); *DeSilva Const. Corp. v. Herrald*,

7  213 F. Supp. 184, 191 (M.D. Fla 1962) (transfer between two surviving corporations, under 1909

8  Copyright Act); *Co-opportunities, Inc. v. Nat'l Broad. Co.*, 510 F. Supp. 43, 45 (N.D. Cal. 1981)

9  (asset transfer from sole proprietorship to related corporation).  To the contrary, in prior merger

10  cases, federal courts have applied state law so that statutory prerequisites to infringement suits

11  did **not** extinguish pre-merger claims.  *See, e.g.*, *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259,

12  262 (6th Cir. 1988) (under Ohio merger law, surviving entity's copyright claim was not

13  dismissed for failure to record under former 17 U.S.C. § 205(d), then a prerequisite to suit);

14  *Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 952 and n.2 (E.D.N.Y. 1987) (same

15  under New York law).  The Court should not depart from these rules here.

16    The only remaining question is whether OSC transferred the past claims it owned to OIC,

17  which no party disputes would have standing to pursue them upon a valid transfer.  To the extent

18  that an express transfer to OIC is required in order for OIC to maintain suit, OSC has cured that

19  technicality through its July 10, 2009 expression of intent and transfer to OIC.  Mot. at 4:26-

20  5:11; s*ee Co-opportunities*, 510 F. Supp. at 46-49 (express transfer of rights to sue on pre-

21  existing claims executed after the commencement of litigation cures standing deficiencies).

22    Alternatively, the Court can find that the past claims transferred to OIC by way of the

23  general transfer of intellectual property rights from PeopleSoft.  Courts have interpreted a

24  "comprehensive and unrestricted conveyance of assets" between non-adverse parties as sufficient

25  ―――――――――
(Footnote Continued from Previous Page.)

26  law, "presumptively" applies.  *U.S. v. Northrop Corp.*, 59 F.3d 953, 959 (9th Cir. 1995).  The
27  Court should uphold private parties' "expectation[s] that their rights . . . would be governed by
state-law standards."  *Kamen v. Kemper Fin. Svcs.*, 500 U.S. 90, 98 (1991) (citations omitted).

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

1   to transfer pre-existing copyright claims, even absent express transfer language.  *Parfums*

2   *Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1384 (C.D. Cal. 1993) (relying on

3   a declaration clarifying the intent of a transfer in finding, on summary judgment, that a copyright

4   transfer had also transferred the right to sue for past infringement).

5          Either way, the past claims did not simply vanish from the grasp of all remaining entities.

6   Either OSC held and expressly transferred them, or OIC obtained them from PeopleSoft directly.

7          **B.      SAP Is Liable For Contributory Infringement**

8          SAP does not contest the facts Oracle sets forth in its moving papers establishing liability

9   for contributory infringement, but instead says Oracle got the law wrong.  Opp. at 4:26-9:4.

10          **1.      HRMS Copyrights**

11          SAP does not dispute it knew about SAP TN's widespread infringement of HRMS

12   software.  Opp. at 5:8-17.  Instead, SAP asserts an incorrect legal standard for contributory

13   liability, then claims Oracle's evidence fails that standard.  *Id.* at 5:23-7:18.  SAP is wrong that it

14   must have taken "affirmative steps" to participate in the infringing acts, but it does not matter on

15   these facts.  *Id.* at 5:11-14.  As SAP recognizes, a defendant "is contributorily liable for

16   copyright infringement if the defendant knowingly induces, causes, or materially contributes to

17   the infringing conduct of another."  *Id.* at 5:24-6:4; *Craigslist, Inc. v. Naturemarket, Inc.*, No. C

18   08-5065 PJH, 2010 WL 807446, at *10 (N.D. Cal. Mar. 5, 2010) (citing *Ellison v. Robertson*,

19   357 F.3d 1072, 1076 (9th Cir.2004)).  This standard encompasses both intentional

20   encouragement and failure to remove known infringing material on a party's computer system.

21   *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*, 545 U.S. 913, 930 (2005); *Perfect 10,*

22   *Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171-73 (9th Cir. 2007).  SAP materially contributed to

23   and intentionally encouraged the admitted infringement by affirmative action.

24          SAP does not dispute that prior to its acquisition of SAP TN, SAP's Board members

25   knew that SAP TN's business model relied on "offsite production copies" of HRMS software

26   (SAP now concedes liability for some of those same offsite copies).  Mot. at 14:11-15:4; Opp. at

27   5:14-18 (disputing knowledge only as to Database).  The Board knew these offsite copies made it

28   "very likely" SAP TN was using Oracle software "outside the contractual use rights granted to

1   them" and could lead to "serious liability."  Alinder Decl., Exs. 51 at 2; 53 at 7.

2          SAP nonetheless saw an opportunity to create "disruption" for Oracle's business and

3   financial benefits to SAP.  *Id.*, Ex. 53 at 3.  So, SAP acquired SAP TN, despite its knowledge of

4   SAP TN's infringing activities, and chose to leave SAP TN's corporate form in place as a

5   "liability shield."  *Id.*, Exs. 8 at 120-21; 53 at 8.  These are affirmative actions, taken after the

6   Board had knowledge of what SAP now concedes constitutes direct infringement.  Having

7   purchased the site and facilities of this known infringement, SAP cannot sit back and claim that

8   later *inaction* absolves its liability.  *See, e.g.*, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259,

9   264 (9th Cir. 1996) ("providing the site and facilities for known infringing activity is sufficient to

10  establish contributory liability"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th

11  Cir. 2001) (same).  Even under its own standard, SAP's activities to that point constitute material

12  contribution, encouragement and knowing inducement of continued infringement.

13         In response, SAP points to one alleged fact:  an oral "directive" the SAP Board says it

14  issued "to remove software from TN computers."  Opp. at 7:9-12.  For two reasons, the

15  "directive" does not absolve SAP of contributory liability.  First, SAP did not enforce the

16  directive from 2005 all the way through at least the middle of 2008, even though it admits it

17  could have done so.  Mot. at 14:21-15:8, 16:18-24; Alinder Decl., Exs. 1 at 282-84; 11 at 32,

18  105, 108-09, 166.  During those years, SAP TN continued to operate with the offsite copies of

19  PeopleSoft software identified in the Board's Business Case on January 7, 2005.  Mot. at 14:21-

20  15:8.  Second, the Board took further action specifically to undermine the "directive" and

21  encourage SAP TN's continued copying.  At around the same time it claims to have issued the

22  oral "directive," the SAP Board also issued the written "Rules of Engagement" ("Rules").  Mot.

23  at 16:2-5.  The Rules contradicted the supposed directive by explicitly contemplating that SAP

24  TN would maintain Oracle software on its systems, but just in a "physically segregated area."

25  Russell Decl., ¶ 4, Ex. 4 at ¶ 14.  These Rules were not temporary or transitional.  The Board re-

26  issued them in largely the same written form in March 2006 and never revoked them.  Mot. at

27  16:2-5.  These undisputed facts alone warrant a finding of contributory liability.

28         SAP's contribution to SAP TN's infringement was not limited to buying the facilities

1   known for use in infringing acts, and issuing instructions to encourage those acts.  SAP has also

2   admitted complete control over SAP TN's business activities and facilities.  *Compare* Mot. at

3   15:25-17:6 (documenting SAP's control over SAP TN operations) *with* Opp. at 5:1-5, 23:9-20

4   (conceding that control).  This control extended to the infringing activity.  SAP AG installed its

5   in-house counsel Chris Faye to advise SAP TN about intellectual property and the legality of its

6   business model, and to report to the SAP AG Board.  Mot. at 14:27-15:4.  It was Faye who re-

7   issued the Rules of Engagement in March 2006.  Alinder Decl., Ex. 40.  Following this lawsuit,

8   SAP AG installed SAP America COO Mark White as SAP TN Executive Chairman to oversee

9   SAP TN's operations.  Mot. at 15:7-8.  As an SAP TN Board Member, White had received the

10   March 2006 Rules from Faye.  Alinder Decl., Ex. 40.  In his post-litigation role, White reported

11   directly to SAP AG CFO and Board Member Werner Brandt.  *Id.*, Ex. 8 at 461-64.  Brandt

12   testified White was chosen so SAP could "monitor and control" SAP TN's business activities.

13   *Id.*  Yet, of the copies SAP now admits constitute direct infringement, SAP made at least 12 of

14   them after Oracle sued and after White assumed control of SAP TN.  *Id.*, Exs. 64 at 3; 66 at 2.

15       These facts are more than sufficient to establish the inducement, "substantial

16   participation" or "material contribution" that contributory liability requires, and they leave SAP's

17   "unlawful objective . . . unmistakable."  *See Grokster*, 545 U.S. at 916.  Having admitted to

18   providing the "site and facilities" for SAP TN's infringement, rules for continued infringement,

19   and direct supervision, SAP cannot escape liability by blaming the actual acts on others.  *See*

20   *Perfect 10*, 508 F.3d at 1171-73; *Napster*, 239 F.3d at 1022; *Fonovisa,* 76 F.3d at 264.

21               **2.       Database Copyrights**

22       SAP contends Oracle has not shown that SAP knew SAP TN infringed Oracle's Database

23   copyrights.  Opp. at 7:21-23.  SAP did know about this infringement in three different ways.

24       First, Brandt understood SAP TN may run PeopleSoft software with Oracle Database

25   software, yet failed to investigate.  Mot. at 15:8-16.  SAP says this was not sufficiently

26   definitive, because it does not show Brandt knew SAP TN was "violating a copyright."  Opp. at

27   7:25-8:2.  But Brandt concedes his "directive" to remove Oracle software should have included

28   Oracle Database software.  Alinder Decl., Ex. 8 at 537.  Second, SAP TN made "urgent"

1    requests directly to SAP AG to purchase the appropriate licenses for Oracle Database software.

2    Mot. at 15:17-20.  SAP contends the request for additional licenses does not imply SAP TN's use

3    was unlicensed.  Opp. at 8:3-11.  But an express, present tense "need to purchase . . . licenses for

4    [the specific] environments **where we develop** our customer's deliverables" communicates

5    actual use of the same software Brandt admits falls within the directive.  Alinder Decl., Ex. 75

6    (emphasis supplied).  Third, post-litigation, White knew SAP TN was using Oracle Database

7    software pursuant only to a Development License.  Mot. at 15:20-22.  SAP protests that these

8    facts do not prove White knew the Development License was inadequate.  Opp. at 8:12-23.

9    However, even under the most favorable interpretation of these facts for SAP, White's and

10   Brandt's decision to not remove or license Oracle's Database software proves at least willful

11   blindness.  SAP cannot avoid knowledge of wrongdoing by turning a blind eye.  *See In re*

12   *Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("[w]illful blindness is knowledge,

13   in copyright law"); *Ellison*, 357 F.3d at 1077 (knowledge established where defendant "should

14   have been on notice of infringing activity").

15         For the reasons stated above in Section III.B.1, SAP's knowledge and affirmative actions

16   to acquire SAP TN and encourage continued use of Oracle's software, and failure to remove it

17   render it contributorily liable.

18   **IV.    SAP CANNOT MAINTAIN A LICENSE DEFENSE UNLESS IT
              PROVES AN APPLICABLE LICENSE**
19

20         SAP does not contest that its "license" defenses pertain only to use, not copies.  Mot. at

21   11:14-15, n. 10; Opp. at 10:21-26.  Accordingly, SAP concedes no license authorizes the

22   hundreds of software copies at issue in this motion.  Opp. at 10:21-26.  Anticipating that no

23   license authorizes the other copies it made, SAP suggests it is Oracle's burden to "prove that all

24   of TN's accused conduct exceeded the scope of [all of] the various customer agreements" Oracle

25   issued (*Id.* at 10:11-14) – which SAP knows number in the hundreds (*Id.* at 1:25-27), at least.

26         SAP addresses an argument Oracle did not make, and an issue not before the Court.  It is

27   also not true.  For every copy of all or a portion of Oracle's software, Defendants must identify a

28   specific license that excuses that copy before Oracle has any further burden of proof.  *See*

1    *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).  Because the existence of the

2    license here is in dispute, SAP's own cases (and the law of the case regarding downloads)

3    demonstrate that Defendants have this burden.  *Netbula, LLC v. BindView Dev. Corp.*, 516 F.

4    Supp. 2d 1137, 1151 (N.D. Cal. 2007) (addressing scope of the license only after "the parties []

5    agreed to the existence of a license"); *NLFC, Inc. v. Devcom Mid-America, Inc.*, No. 93 C 0609,

6    1994 WL 16484076, at *8 (N.D. Ill. Jan. 4, 1994) (no dispute as to the identity of the relevant

7    license); Russell Decl., ¶¶ 5-6, Exs. 5 at 3:26-4:22; 6 at 119:15-25.

8    **V.     SAP IS LIABLE FOR MORE COMPUTER FRAUD THAN ADMITTED**

9          SAP admits SAP TN committed computer fraud.  Opp. at 14 n.5, 14-25.  In doing so,

10   SAP further concedes nearly all the facts needed to support the remaining portions of the Motion.

11   SAP contests only (a) the definition of "damage" under the CFAA, (b) whether the damage was

12   "intentional," and (c) whether SAP is indirectly liable for this admitted computer fraud.  *Id.*

13         **A.     Oracle Has Established "Damage" Under the CFAA**

14         To show "damage" under the CFAA, Oracle may establish "any impairment" of its

15   systems or data.  18 U.S.C. § 1030(e)(8).  "[T]he word 'any' has an expansive meaning, that is,

16   'one or some indiscriminately of whatever kind.'"  *HUD v. Rucker*, 535 U.S. 125, 131 (2002);

17   *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (applying same in CFAA context).

18   SAP instead proposes a novel alternative definition of damage – "that some existing data was

19   corrupted or deleted or the servers crashed."  Opp. at 14:13-22.  This argument fails for two

20   reasons.  First, it departs from the plain statutory language of "any impairment," which does not

21   require "corruption" or "deletion."  Second, SAP treats the cases it cites as if their fact patterns

22   or related discussion were the established rule of "damage" under the CFAA.  *See, e.g., U.S. v.*

23   *Shea*, 493 F.3d 1110, 1113-15 (9th Cir. 2007) (court did not analyze the definition of "damage"

24   though former employee corrupted data).  SAP's cite to *Creative Computing v. Getloaded.com*

25   *LLC*, 386 F.3d 930 (9th Cir. 2004), the main case on which SAP relies, suffers from a similar

26   flaw.  That case does not stand for the proposition that "existing data [must have been] corrupted

27   or deleted or the servers crashed."  Opp. at 14:13-22, 16:15-20.  In *Creative*, the defendants

28   accessed a website with stolen credentials, hacked into the site to view and copy source code,

1   and hired a former employee to obtain confidential customer data.  *Creative*, 386 F.3d at 932.  In

2   contrast to SAP's new definition, the court upheld a jury verdict finding CFAA liability without

3   finding that the defendants altered, corrupted, or deleted data or that they crashed any server.  *Id*.

4   at 932-35.  The court only mentions corrupted data generally in ruling that the CFAA does not

5   require the $5,000 damages floor be met from a "single" intrusion or corruption.  *Id.* at 934-35.

6         Similarly, *Hanger Prosthetics* does not "require actual deletion or alteration to the code

7   or files" as SAP claims - rather, that case merely found no "damage" when the *only* evidence

8   offered was inadmissible expert testimony.  Opp. at 16:15-20; *Hanger Prosthetics v. Capstone*

9   *Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008).  Other SAP cases such as

10  *Condux*, *Resdev*, *Cassetica*, *Garelli*, *Cont'l*, and *Mintel* also support Oracle's "any impairment"

11  point, ruling that diminution in the usability or availability of data is CFAA "damage."  Opp. at

12  14-19; *see, e.g., Condux Int'l, Inc. v. Haugum*, No. 08-4824 ADM/JSM, 2008 U.S. Dist. LEXIS

13  100949, at *23 (D. Minn. Dec. 15, 2008); *Resdev, LLC v. Lot Builders Ass'n*, No. 6:04-cv-1374-

14  ORL-31DAB, 2005 U.S. Dist. LEXIS 19099, at *13 n.3 (M.D. Fla. Aug. 10, 2005); *Garelli*

15  *Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 709-10 (N.D. Ill. 2008).  Even under

16  SAP's cases, SAP's computer fraud caused "damage" in at least three ways.  *See* Mot. at 17-25.

17         **1.      SAP's Computer Fraud Impaired Server Capacity and Bandwidth**

18         First, diminution of server capacity and bandwidth are "damage" under the CFAA.  *See*

19  *e.g.*, *Register.com v. Verio, Inc.*, 126 F. Supp. 2d 238, 251-52 (S.D.N.Y. 2001) (automated tools

20  that "diminished server capacity, however slightly," caused CFAA damage).

21         Here, SAP's computer fraud diminished Oracle's server capacity and service to

22  legitimate customers.  Mot. at 19, 24.  SAP does not dispute that an impairment resulted from

23  this activity.  Opp. at 15:1-7.  Rather, it relies on its alternative, self-made definition of

24  "damage," and argues that it did not alter or delete Oracle's data or systems.  Opp. at 14-19.

25  Thus, the dispute centers on a pure issue of law and since "any" impairment "however slight"

26  satisfies the CFAA standard, the Court should grant Oracle's motion in full on the basis of the

27  admitted computer fraud.  Thus, the Court need not even reach Defendants' objections to the

28  Ritchie and Koehler evidence, because the facts that Defendants concede establish impairment.

1    Regardless, SAP's two attempts to discredit Ritchie's testimony both fail.  First, SAP

2  claims that he did not have "first-hand knowledge of the condition of Plaintiffs' servers at the

3  time of TN's access" and his testimony amounts to "speculation."  Opp. at 15:10-15.  Not true.

4  SAP TN assigned Ritchie, a 15-year software programming veteran, the sole task to develop

5  Titan to take as much as possible, as fast as possible, from Oracle's systems.  Mot. at 19:3-20:12.

6  In the course of that task, Ritchie personally and contemporaneously tested and reported on the

7  responsiveness of Oracle's systems:  "While Titan was running, I would try to manually log on

8  to Oracle's website; and I couldn't . . . .  Titan was pretty much using up all the connections."

9  Alinder Decl., Ex. 27 at 52-53.[3]  Second, SAP claims Ritchie "'can't rule out' various other

10  reasons for the break in the connection."  Opp. at 15:15-17.  But Ritchie dismissed those "other

11  reasons" stating:  "I would say highly unlikely there would be sunspots or a mouse chewing

12  through the cable.  A very high percentage would be the fact that the servers are being

13  overloaded . . . ."  Alinder Decl., Ex. 27 at 169-70.  This evidence, uncontradicted by any

14  witness, confirms more than the requisite "slight" impairment.[4]

15              **2.    SAP's Fake Data Entries Damaged Oracle Customer Data**

16    Second, SAP's mass downloading resulted in fake data co-mingling with Oracle's

17  customer support systems data, rendering that pre-existing data "useless" for its intended purpose

18  of improving Oracle's customer service.  Mot. at 24:3-5.  SAP does not contest this.  Opp. at

19  16:11-17:13.  Even under SAP's self-made definition of "damage," inputting massive amounts of

---

20  [3]  Ritchie's testimony is corroborated by Dr. Uwe Koehler, Oracle's Senior Director of Global

21  Information Security, whose responsibilities include examining these types of security issues.
    *See* Alinder Decl., Ex. 17 at 155-156.  SAP attempts to discredit Dr. Koehler's testimony as

22  speculative and contradicted by other testimony.  Opp. at 15:23-16:10.  To the contrary,
    Dr. Koehler stated that he personally reviewed the logs, saw SAP TN had more downloads than

23  the rest of the world combined, and concluded "there must have been a slowdown of the system
    based on the number of the downloads."  Alinder Decl., Exs. 18 at 55-56; 17 at 179-180;

24  Declaration of Uwe Koehler in Support of Mot., ¶ 4.  It is not contradictory that he was not

25  aware of slowdowns or crashes reported through "official channels."  Alinder Decl., Ex. 18 at 56.
    [4]  The cases SAP cites here do not apply; they simply rule that summary judgment cannot be

26  based on pure speculation, generalization or conjecture.  Opp. at 15:17-22; *Ortega v. Oakland*,
    No. C07-02659 JCS, 2008 WL 4532550 (N.D. Cal. Oct. 8, 2008); *Davenport v. Bd. of Tr. of*

27  *State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073 (E.D. Cal. 2009).

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION

1  fake data to Oracle's customer feedback database during SAP's downloading, rendering Oracle's

2  pre-existing data set unusable, impairs the data and satisfies the "damage" standard.

3          **3.      Downloading and Use of Files to Compete With Oracle Is Damage**

4          Third, SAP impaired the integrity of Oracle's data by scraping confidential and internal

5  information from Oracle's website, and using that data to compete directly with Oracle.  Mot. at

6  24:6-11.  SAP's re-definition of "damage" under the CFAA fails here for the same reasons

7  discussed above – it is contrary to the statute and the relevant case law.  *See above* Sec. IV.A.

8  *Shurgard* is consistent with *Creative*, and Defendants' "mere copying" cases, in this respect –

9  *i.e.*, it requires more than copying alone to satisfy the definition of "damage." [5]  Opp. at 17:16-

10  18:25; *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121,

11  1126-27 (W.D. Wash. 2000) (defendant accessed computer and "collected and disseminated

12  confidential information.").  However, the *Shurgard* Court also held that the CFAA definition of

13  "damage" did not require "data [to be] physically changed or erased."  *Id.* at 1127; *accord Black*

14  *& Decker, Inc. v. Smith*, 568 F. Supp. 2d 929, 937-38 (W.D. Tenn. 2008) (CFAA damage caused

15  by transferring confidential documents from secure to non-secure server).

16          SAP attempts to distinguish *Shurgard* on the grounds that the CFAA statute changed

17  after the case published and that the later cases reject *Shurgard*.  Opp. at 18:6-25.  Neither is

18  applicable.  "[T]he new version [of the CFAA] defines 'damage' the same way [as the old

19  version] . . . ."  *Creative*, 386 F.3d at 934.  "Loss" was only later defined separately, but is not

20  the point here.  Also, despite SAP's claims to the contrary, later cases continue to rely on

21  *Shurgard*, including in this Circuit.  *See, e.g.*, *Therapeutic Research Faculty v. NBTY*, 488 F.

22  Supp. 2d 991, 996 (E.D. Cal. 2007) (relying on *Shurgard*); *see also Dudick v. Vaccaro*, No. 3:06-

23  cv-2175, 2007 WL 1847435, at *5-6 (M.D. Pa. June 25, 2007) (same).

24  ────────────────────

25  [5]  SAP cites three cases for the proposition that "mere copying" is not damage.  Opp. at 17:25-
18:5; *Mintel Int'l Group, Ltd. v. Neergheen,* No. 08-cv-3939, 2010 U.S. Dist. LEXIS 2323 (N.D.
Ill. Jan. 12, 2010); *Cassetica Software, Inc. v. Computer Sci. Corp.*, No. 09 C 0003, 2009 U.S.

26  Dist. LEXIS 51589 (N.D. Ill. June 18, 2009); *Cont'l Group, Inc. v. KW Prop. Mgmt., LLC*, 622

27  F. Supp. 2d 1357 (S.D. Fla. 2009).  Oracle asserts more than "mere copying" in SAP's scraping
of Oracle's website and competitive use of Oracle's intellectual property.

28

1    Finally, SAP's argument that Oracle has "admitted" that it has no evidence of damage is

2  also meritless.  Opp. at 18:26-19:14.  This argument relies only on testimony taken out of context

3  and is irrelevant given SAP's admissions.  *See above* p.12 n.3; Opp. at n.5 (admissions).

4    **B.    SAP Conceded Its Actions Were Intentional**

5    SAP disputes that its computer fraud "intentionally caused damage" to Oracle's systems

6  under § 1030(a)(5)(A)(i).  Opp. at 19:15-20:7; *cf.* Fourth Amended Complaint, Dkt. 418, ¶¶ 171-

7  72.  SAP cannot dispute that impairment, as discussed above, naturally resulted from

8  intentionally scraping a million files from Oracle's password-protected systems, nor can it

9  dispute that employees warned of the damage, but were instructed to continue in spite of it.  Mot.

10  at §§ IV.A.2, IV.A.4 & IV.B-C; *see also Hotmail Corp. v. Van$ Money Pie, Inc.*, No. C 98-

11  20064 JW, 1998 WL 388389, at *6 (N.D. Cal. Apr. 16, 1998) (knowledge of risks that one's

12  actions may cause damage was sufficient scienter for (a)(5)(A)(i) claim).  SAP's argument

13  should also be rejected, because SAP concedes liability on the § 1030(a)(2)(C) claim, which has

14  intentionality as an element.  Mot. at 18:4-9; Opp. at n.5 (also not contesting recklessness).

15  **VI.    SAP IS LIABLE FOR SAP TN'S COMPUTER FRAUD**

16    SAP does not dispute that it had "pervasive and continual" control over SAP TN, from

17  budget and headcount to "complete responsibility for maintenance, service, and support" of SAP

18  TN's "urgent steps" downloading activities.  Alinder Decl., Exs. 1 at 281, 282-84; 57 at 9; Opp.

19  at 23:9-20.  SAP also concedes SAP TN brought concerns about Titan's legality and "denial of

20  service" attacks to SAP in-house counsel, and SAP instructed the downloading to continue.

21  Opp. at 23:12-13 (arguing this is not "relevant"); Alinder Decl., Exs. 22 at 63-65; 27 at 59-60.

22    These facts satisfy this District's (including this Court's) "federal common law of

23  agency" test for parent company liability, which applies to civil and criminal statutes.  *Sun*

24  *Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009)

25  (Sherman Act price-fixing conspiracy); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229,

26  1238-40 (N.D. Cal. 2004) (torture, killing, and other human rights abuses); *Dong Ah Tire &*

27  *Rubber Co. v. Glasforms, Inc.*, No. 06-3359, 2009 U.S. Dist. LEXIS 30610, at *21-22 (N.D. Cal.

28  Apr. 9, 2009) (contract and products liability).  At least one other Northern District case

1    recognizes that agency principles apply to the CFAA.  *See, e.g.*, *Allied N. Am. Ins. Brokerage*

2    *Corp. of Cal. v. Woodruff-Sawyer*, No. C 04-2527 MJJ, 2005 WL 2354119, at *4 (N.D. Cal.

3    Sept. 26, 2005) (dismissing indirect CFAA claim because Plaintiff "failed to produce evidence

4    that would tend to establish [the downloader] *became an agent of* [Defendant]") (emphasis

5    supplied).  Other districts (not cited by SAP) have done the same.  *See, e.g.*, *Role Models Am.,*

6    *Inc. v. Jones*, 305 F. Supp. 2d 564, 568 (D. Md. 2004) (granting motion to dismiss in absence of

7    "any factual allegations supporting an agency relationship.").  Because SAP TN's downloading

8    after maintenance end dates and Titan testing was within "the scope of [SAP TN's] authority as

9    agent," SAP is liable.  *Bowoto*, 312 F. Supp. 2d at 1239-40.  Direct knowledge of, or

10   participation in, the alleged wrongful conduct is specifically *not* required.

11         SAP argues that these parent-subsidiary agency rules do not apply by relying on (and

12   often mischaracterizing) a grab-bag of mostly unpublished out-of-circuit cases.  Opp. at 20-23.

13   Several of these cases do not address indirect CFAA liability. [6]  None of them do so in the

14   context of a parent-subsidiary relationship.  In the cases that do address indirect CFAA liability,

15   there is no "clear" approach adopted by the "vast majority" of courts, as SAP asserts.[7]  Opp. at

16   20-23.  Thus, the Court should follow the law of this District, in finding that SAP's liability is

17   determined by agency principles.  *See, e.g.*, *In re Seagate Tech. II Sec. Litig.*, No. C-89-2493(A)

18   MHP, 1990 U.S. Dist. LEXIS 14056, at *29-30 (N.D. Cal. June 19, 1990) (applying N.D. Cal.

19   law over conflicting out-of-circuit authority).[8]  The Court should grant Oracle's Motion in full.

20   ─────────────

21   [6] *See, e.g.*, *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004).

22   [7] For example, *Schwab* stated that "the CFAA operates, in effect, like a tort action" and that "Congress drafted the CFAA with an intent to permit vicarious liability."  *Schwab* expressly

23   limited *Dartmouth*, which was relied on by *Garland-Sash*.  *Calence* relied on *no* authority in dismissing a CFAA claim, and has never been cited by another opinion.  *Charles Schwab & Co.*

24   *v. Carter*, No. 04 C 7071, 2005 U.S. Dist. LEXIS 21348, *17-22 (N.D. Ill. Sept. 27, 2005); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, Civil No. 00-100-M, 2001 U.S. Dist. LEXIS 10704 (D.N.H.

25   July 19, 2001); *Garland-Sash v. Lewis*, No. 05 Civ. 6827 (WHP), 2007 U.S. Dist. LEXIS 20909, *12-14 (S.D.N.Y. Mar. 26, 2007); *Calence, LLC v. Dimension Data Holdings*, No. C06-

26   0262RSM, 2007 U.S. Dist. LEXIS 38043, *2, 15-16 (W.D. Wash. May 24, 2007).

27   [8] Oracle's CDAFA indirect liability claim is also properly before the Court.  *Sun*, 622 F.Supp.2d at 899 (declining to entertain issue where plaintiff "failed to submit any evidence on the issue").

28

1    DATED:  April 14, 2010                  Bingham McCutchen LLP

2

3
                                            By:_____/s/ Geoff M. Howard_____
4                                                      Geoffrey M. Howard
                                                     Attorneys for Plaintiffs
5                                            Oracle USA, Inc., Oracle International
                                            Corporation, Oracle EMEA Limited, and Siebel
6                                                       Systems, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS MOTION