BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 215695)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
333 Main Street
Armonk, NY 10504
Telephone: 914.749.8200
dboies@bsfllp.com
STEVEN C. HOLTZMAN (SBN 144177)
1999 Harrison St., Suite 900
Oakland, CA 94612
Telephone: 510.874.1000
sholtzman@bsfllp.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., *et al*.

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al*.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAP AG, *et al*,<br><br>    Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**JOINT STATEMENT REGARDING THE TIMELINESS OF THE PARTIES' RESPECTIVE SANCTIONS MOTIONS** |

1  The Parties submit this Joint Statement as required by the Court's 8/24/10 Order.

2  **1.    Oracle's Sanctions Motion**

3  **Oracle's Position:**  Oracle seeks sanctions related to a series of discovery violations that
4  culminated in the production of several hundred thousand software files (Software and Support
5  Materials, or "SSMs") and 26,000 Instant Message ("IM") chats well after discovery closed.

6  A sanctions motion must be filed "as soon as practicable after the filing party learns of
7  the circumstances that it alleges make the motion appropriate," but only after the parties have
8  "conferred for the purpose of attempting to resolve all disputed issues."  Local Rule ("LR") 7-
9  8(c), 37-1(a).  Oracle's motion complies with both rules.  Since uncovering the discovery
10  violations at issue, Oracle has worked diligently with its experts to understand the complex facts
11  involved (including technical analysis of the content and impact of over 600,000 late-produced
12  SSMs and translation into English of some 800 IMs) and assess the prejudice to its case, and has
13  negotiated at length with Defendants on a remedy to mitigate that prejudice and avoid motion
14  practice.  The parties' meet-and-confers included dozens of letters and emails, hours of phone
15  calls and meetings, and multiple exchanges of draft stipulated remedies.

16  *Defendants' Discovery Violations.*  Oracle requested "All" SSMs Defendants
17  downloaded - the best, most direct evidence of their illegal conduct.  Defendants agreed to
18  produce them.  9/21/07 Resp. to RFP No. 53.  Oracle also asked Defendants to "Identify" all
19  such SSMs.  They responded:  "Any additional files and folders sought by this interrogatory can
20  be derived or ascertained by a review of the servers already made available … and from files and
21  folders that have been or are being produced as part of TomorrowNow's ongoing document
22  production."  4/15/09 Supp. Resp. to Rog. 11.  Defendants similarly promised Judge Legge that
23  "there's no dispute that we're producing the files that are located on the server, where those files
24  were kept"; and "where these files were intended to live ultimately, or where they currently live,
25  is on this BU01 server."  2/13/08 Hrg. at 40:8-19, 48:24-49:18.

26  Thus, for some two years, Oracle understood Defendants had produced all relevant SSMs
27  from their "server," where they "were kept."  However, in December 2009, a former SAP TN
28  employee testified he had downloaded over one million SSMs to his own computer.  Oracle

Case 4:07-cv-01658-PJH   Document 824   Filed 09/01/10   Page 3 of 12

realized many such files were missing from Defendants' custodial production. On January 19, 2010, in response to Oracle's query, Defendants first revealed they had unilaterally excluded several file types, and therefore many SSMs, from their production. They produced over 600,000 new files on March 15, months after discovery closed.[1]

During review of that huge new production, in early June, Oracle found over 26,000 IMs buried among the SSMs. The IMs, also responsive to Oracle's discovery requests, contain SAP TN employees' unfiltered, real time admissions of the nature and scope of Defendants' misconduct: "What are they saying [in the complaint]?" "That we illegally downloaded their stuff [¶] used false information and customer id/pw to get it" "[W]ell, that's true." Defendants had previously produced *no* IMs and no documents with such stark confessions of guilt.

Defendants' late production, itself warranting sanctions, was the latest in a series of discovery violations. During discovery, Oracle learned Defendants anticipated litigation with it by at least January 2005, yet deleted many relevant documents, including: (a) log files and one million illegal downloads from a program (Titan) SAP TN used to scrape Oracle's system;[2] (b) "master libraries" of improperly commingled downloaded files; (c) other downloads SAP TN employees took from Oracle's websites; (d) documents from SAP TN's most senior employees; and (e) entire environments (copies of Oracle's applications installed on SAP TN's systems).

Two events crystallized that the destruction caused sufficient prejudice that a sanctions motion was "appropriate." LR 7-8(c). The first was the late production.[3] Among the late-produced IMs are SAP TN employees' admissions to destroying evidence to keep it from being produced to Oracle: "I have taken all my personal manuals out of my office and do not plan on saying anything about them." The second was the exchange of expert reports on March 26.

---

[1] Defendants did not inform Oracle in 2007 that they would filter out these file types, as they say. On September 11, 2007, Defendants "proposed" a list of file extensions the parties "may agree to" use as the only files *included* in review. Oracle rejected the offer and asked what files types Defendants proposed to *exclude*. Defendants never responded, so the issue died. Oracle was unaware of (and certainly never agreed to) Defendants' exclusion of such highly relevant files that Defendants agreed to produce and that respond to the parties' agreed search terms.

[2] The Titan deletions, disclosed in a December 2009 deposition, are particularly critical.

[3] Oracle has not yet even finished a full review of the late production due to its size and complexity, including the translation issues that delayed IM review until late July.

JOINT STATEMENT REGARDING THE TIMELINESS OF THE PARTIES' RESPECTIVE SANCTIONS MOTIONS
A/73488803.9/2021039-0000324170

1  Defendants' technical expert Gray exploited the absence of evidence Defendants destroyed as a
2  defense, by (wrongly) criticizing Oracle's expert Mandia's focus on the overwhelming evidence
3  of unlawful conduct relating to PeopleSoft, rather than other products.  Gray also denied Titan
4  made unauthorized downloads or crashed Oracle's systems, but Defendants had deleted the
5  evidence to refute those arguments, including Titan's "extensive log capabilit[ies]" that would
6  have established the nature and scope of its downloading from Oracle's system.  The deleted
7  evidence would also have rebutted defense expert Garmus' opinion that SAP TN did not copy
8  certain Oracle software modules, and damage expert Clarke's reliance on Garmus.
9       Oracle thus decided Defendants' failures to produce critical evidence, or to do so timely,
10  were sufficiently unjustified and prejudicial to require relief.  Negotiations began immediately.
11       *The Meet and Confer Process.*  The negotiations were lengthy, detailed but, ultimately,
12  fruitless.  On April 7, Oracle proposed six factual stipulations to level the evidentiary playing
13  field.  Defendants rejected the offer on April 29, and proposed instead that Oracle take seven
14  depositions regarding the late produced SSMs, or to negotiate a stipulation regarding what such
15  testimony would establish and allow two Oracle experts to supplement their reports.  Throughout
16  May, Defendants disputed the size of the late production (a technical issue relating to file
17  compression that required expert analysis) and the extent of prejudice to Oracle.
18       After Oracle's discovery of the 26,000 IMs, on June 21, Defendants offered twelve late
19  depositions.[4]  On July 12, Oracle rejected that offer as untimely and insufficient and proposed
20  instead, as Defendants had suggested, a comprehensive stipulation to the facts the late produced
21  documents would have been used to establish, and jury instructions to mitigate the prejudice
22  from Defendants' spoliation and late production.
23       Throughout the meet-and-confer, Defendants threatened to "balance the scales" with their
24  own sanctions motions, further prolonging the attempted resolution.  They also argued all issues
25  should be presented to the Court at one time.  Defendants declared the spoliation issue "joined
26  for motion practice" on July 20, but proposed continued meet-and-confer on late production.
27
28  [4] They later admitted they "could not confirm that any given witness would be available."

1  Thus, the parties traded competing stipulations through early August. On August 10, in a final
2  effort to break the logjam, Oracle sent Defendants a draft of its sanctions motion. On August 13,
3  Defendants confirmed they had no more IMs to produce. Oracle sought to file its motion "as
4  soon as practicable." It should not be punished for trying to resolve all issues Defendants'
5  conduct and arguments raised, as they insisted.

6  **Defendants' Position:** Oracle conflates three distinct allegations that must be evaluated
7  separately in order to determine timeliness under Local Rule 7-8(c): (1) alleged pre-suit
8  spoliation of evidence; (2) late production of SSMs; and (3) late production of IM chat files.

9  *Pre-Suit Spoliation --* Oracle knew the facts underlying its pre-suit spoliation allegations
10 two and a half years ago. Oracle knew in March 2008 that TN did not maintain pre-suit Titan
11 logs, as evidenced by its statement to Judge Legge that "TomorrowNow didn't keep logs
12 showing what they were downloading with various credentials….intentionally." 3/4/08 Tr. at
13 107:25-109:6. Oracle has also been aware of TN's alleged pre-suit destruction of "entire
14 environments" since the initial production of the BakTrak database in February 2008 and TN's
15 30(b)(6) testimony that same month regarding TN's deletion of backup copies. 2/6/08 and
16 2/7/08 Baugh Tr. at 111:22-112:5; 297:14-298:9. Oracle has known about pre-suit deletion of
17 "master libraries" and downloads from local machines for almost three years. In October 2007,
18 TN provided 30(b)(6) deposition testimony detailing the process relating to the deletion of the
19 master download folder. 10/29/07 Kreutz Tr. at 38:19-39:17. In December 2007, TN's Shelley
20 Nelson testified that prior to this litigation TN's employees were told to delete downloads from
21 their local machines once the files were placed on TN's servers. 12/6/07 S. Nelson Tr. at 150:2-
22 151:11. Oracle has mischaracterized Defendants' expert reports. Regardless, those reports
23 cannot make Oracle's motion timely because the reports were served over five months ago and,
24 as shown above, Oracle was aware of the underlying alleged spoliation years ago.

25       April 7, 2010 is the first date that Oracle raised the spoliation allegations at issue.
26 Defendants promptly informed Oracle that its allegations were untimely and noted that because
27 Oracle had engaged in similar pre-suit spoliation, equity requires that Defendants be permitted to
28 seek parallel relief. However, as a gating issue, equity and LR 7-8(c) provide a basis for this

Court to prohibit Oracle from seeking relief related to spoliation it has known about for years.

*SSMs --* Oracle's request for relief is untimely and overstates the importance of the SSMs at issue. Defendants' late production resulted from a file-type filter Defendants disclosed to Oracle in the Fall of 2007 and then used for its custodian-based document review and production process. Defendants, based on e-discovery best practices at the time and their understanding of TN's business model and IT infrastructure, believed the file-type filters they disclosed and used were reasonable, especially in light of TN's massive Data Warehouse production that involved the wholesale production (*i.e.*, without using file-type filters or search terms) of data that included millions of SSMs. Notwithstanding deposition testimony starting in October 2007 indicating that TN employees had limited SSMs on their individual computers, Oracle first complained of the lack of SSMs in TNs' custodian productions in January 2010, just after fact discovery closed. *See, e.g.*, 10/29/07 Kreutz Tr. at 84:3-14; 98:24-99:24; 122:15-123:1. Defendants, maintaining that their initial discovery efforts and procedures were reasonable, then produced a wholesale production on March 15, 2010 of additional file types from TN's custodian-based ESI that Defendants previously disclosed they were not producing. This production, not surprisingly, contained hundreds of thousands of irrelevant computer system files (which is why these file types were disclosed and excluded in the first place) and resulted in just over 70,000 SSMs being produced for all of the 90 TomorrowNow custodians Oracle selected. This case involves literally millions of SSMs on TN's network. Oracle's own technical expert testified that excluding approximately 500,000 SSMs from his analysis did "not materially impact [his] conclusions." *See* 5/20/10 Mandia Tr. at 25:9-27:9. Oracle has had months to analyze and incorporate into its case the immaterial amount of SSMs Defendants produced five and half months ago. Defendants have also continually, since April 29, 2010, extended Oracle the opportunity to depose or re-depose a reasonable number of TN's custodians on the SSMs at issue.[5] Local Rule 7-8(c) does not permit Oracle to refuse for months to attempt to mitigate its

---

[5] Defendants have always been willing to work with Oracle to make a reasonable number of TN's former employees available for deposition, but it is obvious that unless and until Oracle accepts that offer, the logistics (date, time, place, etc.) for such depositions cannot be confirmed.

alleged harm and then unreasonably delay seeking relief relating to that alleged harm.

*IMs --* No party knew of the existence of the IMs at issue until Oracle located them among the hundreds of thousands of computer system files that Defendants produced on March 15, 2010.  Of the approximately 26,000 IMs at issue, many are personal in nature and completely irrelevant.  The rest are cumulative of the facts already in the case.  Defendants' inadvertent failure to produce the IMs during fact discovery was simply the by-product of: (a) the file-type filter that Defendants disclosed to Oracle and began using in the Fall of 2007; and (b) the fact that TN did not have a sanctioned IM communication platform.  The IMs were the result of certain (not all) TN custodians personally installing IM communicators on their TN computers.  Moreover, most of the IMs are one-page chats and, based on Defendants' review, they can all be analyzed in less than two weeks.  And, Defendants cooperated with Oracle to split the cost of complete translations for the 800 foreign IMs.  Oracle's claim that it has been unable to review the IMs is belied by its pervasive use of them in almost every public filing since Oracle brought them to Defendants' attention in June 2010.  Oracle has had plenty of time before now to analyze the IMs at issue, take depositions related to them that Defendants have offered, and if the depositions could not cure any of its alleged harm, bring any motion for further relief.

Oracle cannot use Defendants' cooperation during the meet and confer process as an excuse for failing to bring its motion "as soon as practicable" after it learned of the circumstances it alleges make its motion appropriate.  If Oracle truly believed the numerous remedial measures Defendants offered were insufficient to remedy the alleged harm, LR 7-8(c) required it to involve the Court months ago.  Instead, Oracle waited until just before trial, possibly hoping to bolster Oracle's alleged claim of harm and reduce the remedies available.

### 2. Defendants' Requested Relief Relating to Spoliation

**Defendants' Position:** If Oracle's spoliation allegations are timely, then equity and Oracle's "unclean hands" dictate that Defendants' spoliation allegations are timely.  Defendants' awareness of Oracle's pre-suit spoliation matches Oracle's awareness of the pre-suit spoliation about which it complains.  Defendants became aware of Oracle's pre- and post-litigation spoliation of e-mails during fact discovery.  Around the same time that Oracle claims it was first

1  aware of the lack of certain SSMs in TN's production, Oracle also completely dismantled
2  Customer Connection.  In the timeframe when Oracle became aware of the IM chats at issue,
3  Defendants became aware of the destruction of data underlying one of Oracle expert's opinions.
4  Defendants' motion seeks sanctions for Oracle's spoliation of evidence because: (1) Oracle
5  destroyed evidence from key employees and computer logs related to Oracle's monitoring and
6  knowledge of TN's activities beginning at least as early as September 2004, when its privilege
7  logs show that it anticipated filing suit against TomorrowNow; (2) Oracle destroyed email files
8  of relevant employees who left the company months after it filed suit; (3) Oracle unilaterally
9  dismantled Customer Connection, the website from which TomorrowNow downloaded Oracle
10 support materials, two weeks after Oracle submitted its initial expert report related to TN's
11 downloading activities, thereby preventing Defendants' rebuttal experts from having ongoing
12 access to that website to test the evolving opinions and methodologies of Oracle's experts
13 throughout the expert discovery period; and (4) Oracle destroyed key data on which Oracle's
14 expert Paul Pinto relied in forming his opinions, which prevented Defendants from analyzing and
15 testing Mr. Pinto's estimates of the alleged cost to develop the software at issue.

16     **Oracle's Position:**  The Court should deny leave to file on three grounds.  First, they
17 admit here, as in meet and confer, that its sole, and improper, purpose is to "balance the scales"
18 against Oracle's motion.  Second, their motion is untimely.  The parties discussed Customer
19 Connection at length with the Court after Oracle notified Defendants the system would be moved
20 in April 2009 (with the resulting possible loss of data), and further notified Defendants in
21 September 2009 it would be shut down after all reasonable preservation measures had been
22 implemented.  Dkt. 493 at 10-13.  Defendants sought and received live access at that time, and
23 never again raised the issue.  Third, the meet and confer regarding Pinto ended in April 2010.
24 Defendants never sought relief until filing their *Daubert* motion against Pinto, seeking the same
25 relief as this proposed motion.  Each of these issues differs materially from the timing, substance
26 and posture of Oracle's motion concerning Defendants' substantial spoliation and late production
27 of hundreds of thousands of admittedly responsive files.  Oracle does not object to Defendants
28 raising their (meritless) unclean hands arguments in rebuttal to Oracle's motion, but there is no

1 basis for those arguments as a belated affirmative motion.

2        **3.        Defendants' Requested Relief Relating to Goodwill**

3        **Defendants' Position:**  Defendants seek to preclude Oracle from claiming damages for
4  alleged harm to goodwill.  Defendants' motion is timely because Defendants first learned of
5  Oracle's intent to seek such damages on July 20, 2010 from Oracle's proposed jury instructions.
6  On July 28, 2010, Defendants objected and thereafter the parties agreed to submit competing
7  instructions.  Oracle then filed its goodwill related jury instructions.[6]  On August 5, 2010,
8  Defendants filed a motion in limine with Judge Hamilton to exclude evidence on alleged harm to
9  goodwill asserting that: (1) at the August 18, 2009 hearing on Defendants' prior motion for
10 sanctions, this Court asked Oracle to clarify which damages it intended to seek and Oracle
11 responded that it did not intend to quantify "anything on goodwill" or seek damages related to
12 goodwill; (2) Oracle acknowledged in its objections to this Court's September 17, 2009 order on
13 the sanctions motion that the Sanctions Order precludes a claim for damages to goodwill; (3)
14 Oracle's damages expert did not quantify alleged harm to goodwill in either his report or
15 deposition; and (4) Oracle has not provided discovery relating to alleged harm to goodwill,
16 which would largely consist of the same discovery at issue in the Sanctions Order.  D.I. 728 at 1-
17 3.  Besides the motion in limine pending before Judge Hamilton, Defendants believe it is prudent
18 to file a motion with this Court because: (1) the goodwill issue relates to this Court's prior
19 Sanctions Order; (2) Judge Hamilton has recently indicated that motions to preclude damages
20 evidence may be more appropriately brought as Rule 37 motions;[7] and (3) in their August 19,
21 2010 opposition to Defendants' motion in limine, Oracle argued that "Defendants have never
22 made, much less won, a motion arguing Oracle has not produced what would be needed to try

---

[6] The parties met and conferred by e-mail on August 16 and 17. Oracle stated that it was not seeking "lost profits" damages relating to goodwill, but reserved rights to seek other goodwill damages.  Defendants did not agree to Oracle's reservation of rights.  Oracle opposition to Defendants' motion in limine expanded its goodwill claim to include "reputational harm."

[7] On August 17, 2010, Judge Hamilton issued an order on the parties' cross-motions for partial summary judgment.  D.I. 762.  Judge Hamilton found that an unrelated damages disclosure issue (not at issue here) was inappropriate for resolution on summary judgment and stated that "Defendants are, of course, free to move for preclusion of evidence of damages as to which plaintiffs may have failed to comply with the disclosure requirements."  *Id.* at 23-24.

1 whether Defendants alleged actions impacted Oracle's goodwill." D.I. 790 at 3.  Defendants'
2 motion is not moot or untimely because Oracle has refused to withdraw the jury instructions it
3 filed on August 5, 2010 and continues to expand the scope of its improper goodwill claim.  Thus,
4 Defendants seek either a ruling that the existing Sanctions Order precludes Oracle from claiming
5 goodwill damages, or a new order precluding such a claim.

6 **Oracle's Position:** Defendants' proposed motion, another improper "tit for tat" response
7 to Oracle's timely motion, is unnecessary, duplicative, and untimely.

8 *Unnecessary/Duplicative.*  Defendants want to preclude Oracle "from claiming damages
9 for alleged harm to goodwill," purportedly based on Your Honor's Rule 37 ruling on Oracle's
10 lost profits damages.  Oracle confirmed at that hearing, and again when Defendants moved *in*
11 *limine* on this issue, it is not quantifying or seeking lost profits damages for harm to its goodwill.
12 It agreed to modify and/or withdraw these proposed jury instructions.  8/18/09 Tr. (Dkt 729, Ex.
13 D) at 43:11-22;  Dkt. 728.  If Defendants seek what Oracle has already confirmed, the motion is
14 moot.  If they seek some broader relief as to all references to or reliance on goodwill in other
15 damages analyses, it is untimely and, as Oracle explains in its *in limine* opposition, unfair.  It is
16 also unrelated to Judge Hamilton's August 17 Order, on which defendants rely.

17 *Untimely.*  When Defendants brought their Rule 37 motion thirteen months ago, Oracle's
18 executives already had testified to the adverse impact on Oracle's reputation from Defendants'
19 actions.  Defendants also knew Oracle was (and still is) relying on goodwill valuations from its
20 PeopleSoft and Siebel acquisitions (among many other factors) in connection with its fair market
21 value ("FMV") license damages, but did not then (or ever) seek to preclude Oracle's use of that
22 evidence.  Dkt. 342 at 13. n.9 ("The motion is limited to what Oracle characterizes as its lost
23 profits claims, and does not extend to … its hypothetical [FMV] license theory….").  In August
24 2009, Defendants moved for summary judgment on Oracle's right to FMV license damages, and
25 did not raise goodwill.  Dkts. 431, 628.  In November 2009, Oracle's damages report detailed its
26 intended use of goodwill evidence.  Defendants neither initiated any meet and confer related to
27 goodwill, nor sought leave to bring a Rule 37 motion.  That same month, Your Honor ordered
28 the parties to file their final motions to compel in December 2009, limited to three issues.  Dkt.

1  553.  Defendants' final motion did not include goodwill.  Dkt 566.  In March 2010, Defendants
2  filed their second summary judgment motion, again principally attacking Oracle's damages, but
3  not its use of goodwill evidence.  Dkt 640.  In May 2010, Defendants questioned Oracle's
4  damages expert about goodwill for hours.  The parties met and conferred over jury instructions
5  for untold hours between July 20 through August 5.  Defendants never raised any issues
6  regarding Oracle's proposed instructions referencing goodwill.

7       The first Oracle heard that Defendants wanted to limit its use of goodwill evidence was in
8  their August 5 MIL.  They did not meet and confer on this motion until after Oracle filed its MIL
9  opposition on August 19.  The motion is untimely and the request to file it should be denied.

10       3.       **Defendants' Objections to Unrelated, Late-Filed Deposition Subpoenas**

11       **Defendants' Position:**  Late yesterday, August 31, 2010, Oracle served two deposition
12  subpoenas (a 30(b)(6) for SAP AG and one for Werner Brandt, SAP's CFO), <u>which do not relate
13  to any of the issues discussed above</u>.[8]  These late-filed subpoenas violate, at a minimum, Fed R.
14  Civ. P 26, 30 and 45, Local Rule 30-1, the Court's scheduling and case management orders, and
15  the Court's order setting a settlement conference for September 7 (the depositions are noticed for
16  the same day as the settlement conference, and Plaintiffs are aware that Mr. Brandt is attending
17  as the SAP executive with settlement authority).  Defendants do not intend to produce a witness
18  in response to either subpoena and seek the Court's guidance as to how to address this new issue.

19       **Oracle's Position:**  On August 5, 2010, Defendants issued a public statement admitting
20  *all* liability for SAP TN (in portions not quoted by Defendants), which provides good cause for
21  limited discovery of it.  Since the Court has not authorized the inclusion of this issue in this
22  Statement, and since Defendants have yet to accept Oracle's invitation to meet and confer, Oracle
23  proposes to respond in detail to this issue if the Court authorizes and requests such a response.

---

[8] Oracle seeks testimony on an 8/5/10 SAP press statement that indicates in relevant part: "In pre-trial filings made today to the Court, SAP *proposed* that it would not contest the liability of TomorrowNow for copyright infringement and downloading conduct alleged in Oracle's complaint. SAP further stated that it will accept financial responsibility for any judgment awarded against TomorrowNow, despite the fact that SAP was not involved in TomorrowNow's service operations and did not engage in any of the copying or downloading alleged in Oracle's complaint." (Emphasis added).  Oracle mistakes the *proposal* SAP made in its public filings as SAP "admitting all liability."  That is not what SAP said or did on August 5.  *See* D.I. 727 at 1-2.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: September 1, 2010 | BINGHAM McCUTCHEN LLP |
| 3 | | |
| 4 | | By: /s/ Geoffrey M. Howard |
| | |      Geoffrey M. Howard |
| 5 | | Attorneys for Plaintiffs |
| 6 | | ORACLE USA, INC., ORACLE INTERNATIONAL CORPORATION, and |
| 7 | | SIEBEL SYSTEMS, INC. |

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

| | | |
|---|---|---|
| DATED: September 1, 2010 | | JONES DAY |
| | | By: /s/ Scott Cowan |
| | |      Scott Cowan |
| | | Attorneys for Defendants |
| | | SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC. |