1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (Admitted *Pro Hac Vice*)
10  333 Main Street
    Armonk, NY 10504
11  Telephone: (914) 749-8200
    dboies@bsfllp.com
12  STEVEN C. HOLTZMAN (SBN 144177)
    1999 Harrison St., Suite 900
13  Oakland, CA 94612
    Telephone: (510) 874-1000
14  sholtzman@bsfllp.com

15  DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
16  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
17  Telephone:  650.506.4846
    Facsimile:  650.506.7114
18  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
19
    Attorneys for Plaintiffs
20  Oracle USA, Inc., *et al.*

21                      UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF CALIFORNIA
22                          OAKLAND DIVISION

23   ORACLE USA, INC., *et al.*,            Case No.  07-CV-01658 PJH (EDL)

24              Plaintiffs,                 **OPPOSITION TO DEFENDANTS'**
            v.                              **MOTION TO EXCLUDE EXPERT**
25                                          **TESTIMONY OF PROFESSOR**
     SAP AG, *et al.*,                      **DOUGLAS G. LICHTMAN**
26
                Defendants.                 Date:     September 30, 2010
27                                          Time:     2:30 p.m.
                                            Place:    Courtroom 3
28                                          Judge:    Hon. Phyllis J. Hamilton

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .............................................................................................. 1

II.    BACKGROUND ................................................................................................ 2

       A.     SAP's Admitted Infringement And The Jury's Damages Task ........................... 2

       B.     Lichtman's Testimony ........................................................................... 4

              1.     Affirmative Testimony......................................................... 4

              2.     Rebuttal Testimony ............................................................ 6

III.   LICHTMAN'S TESTIMONY IS ADMISSIBLE UNDER RULE 702 ........................... 7

       A.     The Testimony Of A Qualified Expert Should Be Admitted Where It Is
              Reliable And Relevant ......................................................................... 7

       B.     SAP Does Not Challenge Lichtman's Qualifications Or Methodology ............... 9

       C.     Lichtman's Testimony Is Highly Relevant And Will Assist the Jury................. 10

       D.     Lichtman's Testimony Is Not Improper Legal Opinion .................................... 12

IV.    LICHTMAN'S TESTIMONY SHOULD NOT BE EXCLUDED UNDER RULE
       403.................................................................................................................... 17

V.     CONCLUSION .................................................................................................. 18

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*A&M Records, Inc. v. Napster, Inc.*,
5     Nos. C9905183MPH, C000074MPH, 2000 WL 1170106 (N.D. Cal. Aug. 10, 2000) .......... 15

6

*Carnegie Mellon Univ. v. Hoffmann La-Roche, Inc.*,
    55 F. Supp. 2d 1024 (N.D. Cal. 1999) ..................................................................................... 8

7

*Charter Nat'l Bank v. Charter One Fin., Inc.*,
8     No. 01 C 0905, 2001 U.S. Dist. LEXIS 13919; 2001 WL 1035721 (N.D. Ill. Sept. 4,
    2001) .................................................................................................................................... 2, 16

9

10

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................................. 8

11

*Daubert v. Merrell Dow Pharms., Inc.*,
12     509 U.S. 579 (1993) ........................................................................................................ 8, 16

13

*F.B.T. Prods., LLC v. Aftermath Records*,
    No. CV 07-3314 PSG, 2009 WL 137021 (C.D. Cal. Jan. 20, 2009) ...................................... 15

14

*Gable v. Nat'l Broad. Co.*,
15     No. CV 08-4013 SVW, 2010 U.S. Dist. LEXIS 77772; 2010 WL 2990977 (C.D. Cal. Feb.
16     22, 2010) ............................................................................................................................... 16

17

*Jaasma v. Shell Oil Co.*,
    412 F.3d 501 (3d Cir. 2005*)*.................................................................................................. 8

18

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*,
19     No. C 07-03983 JSW, 2009 WL 1764652 (N.D. Cal. June 18, 2009)................................... 15

20

*Kennedy v. Collagen Corp.*,
21     161 F.3d 1226 (9th Cir. 1998)................................................................................................ 8

22

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999).......................................................................................................... 7, 8

23

*KW Plastics v. U.S. Can Co.*,
24     199 F.R.D. 687 (M.D. Ala. 2000) ........................................................................................ 12

25

*Mackie v. Rieser*,
    296 F.3d 909 (9th Cir. 2002)................................................................................................ 12

26

*Mannick v. Kaiser Found. Health Plan, Inc.*,
27     No. C 03-5905 PJH, 2006 WL 1626909 (N.D. Cal. June 9. 2006)....................................... 14

28

# TABLE OF AUTHORITIES
### (continued)

Page

*McQueeney v. Wilmington Trust Co.*,
    779 F.2d 916 (3d Cir. 1985).................................................................................. 17

*Nationwide Trans. Fin. v. Cass Info Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008)............................................................................... 14

*Pinal Creek Grp. v. Newmont Mining Corp.*,
    352 F. Supp. 2d 1037 (D. Ariz. 2005).................................................................. 14

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004)................................................................................. 12

*R.A. Mackie & Co. v. Petrocorp Inc.*,
    329 F. Supp. 2d 477 (S.D.N.Y. 2004)................................................................. 8, 9

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    No. C-95-200091 RMW, 1997 WL 34605244 (N.D. Cal. Jan. 6, 1997)......................... 14, 15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ..................................................................... 15

*S.E.C. v. Leslie*,
    No. C 07-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) .............................. 14

*Salinas v. Amteck of Ky., Inc.*,
    682 F. Supp. 2d 1022 (N.D. Cal. 2010) ................................................................. 7

*Semerdjian v. McDougal Littell*,
    641 F. Supp. 2d 233 (S.D.N.Y. 2009)................................................................. 8, 9

*Smith v. Ingersoll-Rand Co.*,
    214 F.3d 1235 (10th Cir. 2000).............................................................................. 8

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)................................................................................ 8

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988).................................................................... 2, 13, 14

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    No. CV 99-07654 HLH, 2003 WL 25781901 (C.D. Cal. Feb. 10, 2003)......................... 14, 15

*United States v. Brodie*,
    858 F.2d 492 (9th Cir. 1988).................................................................................. 14

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN

# TABLE OF AUTHORITIES
(continued)

Page

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ............................................................................. 17, 18

*United States v. LeMay*,
  260 F.3d 1018 (9th Cir. 2001) ............................................................................. 17

**RULES**

Fed. R. Evid. 403 ............................................................................. 17

Fed. R. Evid. 702 ............................................................................. 7, 8

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN

1    **I.      INTRODUCTION**

2         In their motion to exclude the testimony of Professor Douglas Lichtman in its entirety,

3    Defendants ("SAP" or "Defendants") do not contest Lichtman's qualifications as an expert, or

4    contend that Lichtman's testimony should be excluded on the ground that his analysis or

5    methodology is flawed, unsound, unreliable or incorrect.  Rather, SAP contends that his

6    testimony usurps the role of the Court to say what the law is, and therefore cannot assist the jury.

7         But SAP misrepresents the substance of Lichtman's testimony and ignores its clear

8    relevance to key damages questions.  Given SAP's admission of infringement liability, the jury

9    will have to assess damages in this case.  SAP's damages expert, Stephen K. Clarke, rejects the

10   established damages methodology – fair market value as determined by a hypothetical license

11   negotiation – and instead argues that Oracle's injury is measured solely by the success or failure

12   of Defendants' efforts to exploit what they stole.  Insofar as Clarke's testimony is admitted, the

13   jury will have to resolve sharply conflicting testimony regarding (1) which of the competing

14   methodologies is most appropriate for calculating Oracle's infringement damages, and (2) the

15   total amount of damages that will compensate Oracle for the economic harm it has suffered.

16        Far from providing mere legal conclusions, Lichtman provides an economic framework

17   that will help the jury decide important disputes relevant to damages.  If the jury is going to

18   determine the market value of the rights infringed, it needs to understand the economic principles

19   that shape those rights and determine their value.  Lichtman's testimony will be short, focused

20   and critical in helping the jury understand the economic principles that must be accounted for in

21   reaching an appropriate damage award, and the economic purposes that award must serve.

22   Lichtman's testimony will therefore help the jury organize, contextualize and assess the

23   extensive damages testimony it will hear, and will help the jury resolve the damages experts'

24   disputes over method and amount.  Oracle is entitled to a jury that is informed on these matters,

25   even if SAP would prefer otherwise.

26        There is no doubt Lichtman is qualified to testify on these subjects, and SAP does not

27   challenge Lichtman's qualification as an expert.  Lichtman has written extensively on the

28   foundations of copyright law and policy, with particular focus on economics and policy.  His

1    work has appeared in top economic publications, as well as prestigious law reviews.  Lichtman

2    was also the Editor of the *Journal of Law and Economics* for almost four years and holds a

3    degree in electrical engineering and computer science.

4         None of the cases cited by SAP justify an order excluding any of Lichtman's testimony.

5    SAP highlights, for instance, the exclusion of Lichtman's testimony in *Charter National Bank v.*

6    *Charter One Financial* – an unpublished 2001 decision from an Illinois District Court.  Yet that

7    decision excluded Lichtman's testimony on the ground he was not qualified to testify as an

8    expert in trademark matters "[g]iven that none of his published work involves trademark law"

9    and he had taught very little of it.  2001 WL 1035721, at *6 (N.D. Ill.).  Here, Lichtman's

10   qualifications are unchallenged and for good reason:  he has published extensively in the area of

11   copyright and its economic foundations that his testimony illuminates.  The other cases SAP

12   relies on are likewise inapposite.  Most involve experts who offer ultimate legal conclusions,

13   such as whether conduct was "wrongful" under a given statute, or even "illegal."  Lichtman

14   opines on no such things.  SAP's own authorities and a host of others show it is appropriate to

15   admit expert testimony that will "assist[] the jury's understanding and weighing of the evidence,"

16   even if it happens to refer to legal issues.  *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

17        Here, Lichtman's testimony will help the jury understand the important economic context

18   for its damage determination.  His qualifications are undisputed, and the premises and analysis

19   underlying his opinions are well-accepted.  There is no basis to exclude any of Lichtman's

20   testimony, much less all of it.

21   **II.    BACKGROUND**

22        **A.    SAP's Admitted Infringement And The Jury's Damages Task**

23        Defendants have admitted liability for widespread infringement of Oracle's copyright in

24   PeopleSoft HRMS Software and Oracle Database software.  *See* Order re Motions for Partial

25   Summary Judgment (Dkt. 762) at 3.  In addition to the several hundred instances of infringement

26   relating to the six registrations presented on summary judgment (*see id.*), thousands of

27   infringements on more than a hundred additional copyrights remain to be resolved based on

28   similar evidence.  Moreover, SAP has publicly stated it accepts responsibility for all of this

1    further infringement.  *See* Declaration of Lisa J. Chin in Support of Oracle's Opposition to

2    Defendants' Motion to Exclude Expert Testimony of Douglas G. Lichtman ("Chin Decl."),

3    Ex. A (SAP's August 5, 2010 press release).  As a result, the jury in this case will necessarily

4    have to assess damages on Oracle's copyright infringement claims.

5         Given the magnitude of SAP's infringement, and the interplay between the direct

6    infringement of TomorrowNow and contributory and vicarious infringement of SAP, the jury's

7    task will be substantial and complex, involving assessment of not only what was stolen, but who

8    stole it, why they stole it, and what they hoped to gain from the theft.  Oracle's principal

9    damages expert is Paul K. Meyer.  Meyer is a Certified Public Accountant and a Consulting

10   Professor at Stanford University.  *See* Chin Decl., Ex. B (Meyer Supp. Report) at ¶ 2.  He has

11   analyzed hundreds of claims for economic damages, and has testified in approximately seventy

12   trials and major arbitrations.  *See id.* at ¶ 4.  In his 281 page report, Meyer applies four different

13   valuation approaches to measure copyright infringement damages relating to PeopleSoft and J.D.

14   Edwards software.  *See id.* at ¶¶ 91-158, 231-241.  The first three approaches measure indicated

15   values to SAP (i.e., the value that Meyer calculates SAP received) from using the infringed

16   materials under the market, income and cost valuation approaches.  *See id.* at ¶¶ 112-153.  The

17   fourth approach measures the indicated value of the infringed materials based upon a

18   hypothetical negotiation using the thirteen *Georgia-Pacific* factors.  *See id.* at ¶¶ 154-158, 231-

19   241.  Using these four approaches, Meyer concludes that Oracle has suffered no less than ***$2***

20   ***billion*** in copyright infringement damages on PeopleSoft and J.D. Edwards software alone.  *See*

21   *id.* at ¶¶153, 241.  This is in addition to more than $156 million in damages on SAP's

22   infringement of Oracle Database software and Siebel software.  *See id.* at ¶¶ 257, 350.

23        SAP's principal damages expert is Stephen K. Clarke.  In his 294 page report, Clarke

24   criticizes Meyer's methodology, including nearly every aspect of each of the three value of use

25   measures employed by Meyer – the market, income and cost approaches.  *See* Chin Decl., Ex. C

26   (Clarke Supp. Report) at i-ii, 37-61.  Clarke also addresses the hypothetical negotiation

27   approach, criticizing Meyer's application of the *Georgia-Pacific* factors and Meyer's

28   conclusions based on them.  *See e.g., id.* at ii-v, 61-72, 75-90.  Ultimately, Clarke rejects all four

1  of these approaches and concludes the only proper way to measure damages in this case is "one

2  customer at a time," by measuring Oracle's lost profits on a customer-by-customer basis.  *See id.*

3  at 293.[1]  On this basis, Clarke concludes damages on all of Oracle's claims are no more than

4  $36,448,078.  *See id.* at 294.[2]

5         The experts' reports suggest the disagreement on the level of appropriate damages will be

6  over $2 billion.  Resolving that disagreement will require the jury to assess numerous facts and

7  determine (1) the appropriate methodology for calculating Oracle's infringement damages, and

8  (2) the total amount of damages that will compensate Oracle for the economic and competitive

9  harm it suffered.

10        **B.        Lichtman's Testimony**

11        Oracle expects to offer both affirmative and rebuttal testimony from Lichtman,

12 summarized as follows:

13               **1.        Affirmative Testimony**

14        In his report, Professor Lichtman provides critical context for the jury's damage

15 assessment by explaining the economic and public policy foundations of copyright law, and the

16 purposes an actual damages award must serve in order to protect the economic incentives on

17 which copyright law relies.  *See, e.g.*, Declaration of Tharan Gregory Lanier in Support of

18 Motion to Exclude Expert Testimony of Professor Douglas G. Lichtman, Dkt. 777 ("Lanier

19 _____

20 [1] This Court has rejected Clarke's assertion.  It held that while measuring lost profits represents
21 one method of calculating copyright infringement damages, it "is often impractical because of
   the difficulty of proving such lost profits with specificity."  *See* Order re Motions for Partial
22 Summary Judgment (Dkt. 762) at 20.  The Court went on to explain that measuring "[t]he value
   of an infringer's use is a permissible basis for estimating actual damages" and the "market value"
23 of that use may be measured by the hypothetical negotiation model – "what a willing buyer
   would have been reasonably required to pay to a willing seller for plaintiffs' work."  *Id.*
24
25 [2] Meyer estimates that Oracle's lost profit damages are well over $300 million.  *See* Chin Decl.,
   Ex. B (Meyer Supp. Report) at ¶ 433.  Even using Clarke's *Georgia-Pacific* based royalty
26 analysis, the parties are still over $1 billion apart.  Clarke concludes that a license pursuant to a
   hypothetical negotiation would have resulted in a royalty of approximately $32 million on
27 TomorrowNow's sales and $2 million on SAP's sales.  *See* Chin Decl., Ex. C (Clarke Supp.
   Report) at pp. 203-205.
28

1   Decl."), Ex. 1 (Lichtman Report) at ¶¶ 14-19 (summary of opinions).  As he explained at his

2   deposition, this testimony will provide the jury with the tools it needs to scrutinize and assess the

3   competing damages testimony from Meyer and Clarke, and better understand the context and

4   function of its damage award.  *See* Chin Decl., Ex. D (Lichtman Tr.) at 220:4-222:14.  "[I]f the

5   jury doesn't know why we are doing the math, why these [competing damages] theories exist,

6   and how they impact real world behavior over time . . . the jury has no way of picking between

7   the numbers offered by a single expert [Clarke], let alone meshing the competing numbers of

8   multiple experts . . . .  [T]hey need to hear . . . about what the system is designed to do from an

9   economic and public policy perspective."  *Id.* at 221:23-222:14; *see also id.* at 26:8-30:9.

10   Lichtman's report begins by explaining the basic incentive system that is the economic

11   foundation for copyright protection, and the means by which it encourages the creation of new

12   works of authorship.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at ¶¶ 20-29.  He then goes on to

13   explain that restrictions against copying are a particularly efficient way of protecting this creative

14   incentive, because they let the market determine the economic reward an author will enjoy.  *See*

15   *id.* at ¶¶ 30-44.  Lichtman then elaborates on the economic role a damages award must play in

16   order to maintain the core incentive, explaining that an infringer who disregards copyright

17   restrictions has short-circuited the market mechanism, and a damages award is the "backstop"

18   that must substitute for the market transaction that ought to have happened instead.  *See id.* at ¶¶

19   45-47.

20   Having explained the basic incentive structure, its economic foundation, and the function

21   a damage award must play in order to maintain efficient commercial incentives, Lichtman

22   explains how these economic principles apply to the infringement that occurred here.  Based on

23   the nature of the infringement alleged (and now admitted) in this case, Lichtman explains that the

24   copying SAP undertook is precisely the type that undermines the core incentive to create and

25   invest.  *See id.* at ¶¶ 46-70.  As he explains, "widespread copying" of the sort alleged here

26   "would have an enormous impact on Oracle's incentives. . . . Oracle would not rationally

27   maintain its [billion dollar] level of investment in this code" if SAP were permitted to "free

28   rid[e]" on Oracle's investment.  *See id.* at ¶¶ 66-67.  Lichtman concludes by explaining the

1  damage award in this case must protect that incentive to create and invest, and that the

2  approaches set forth in Meyer's report are important to consider in setting a damages award that

3  will vindicate that incentive.  *See id.* at ¶¶ 71-72; *see also* Chin Decl., Ex. D (Lichtman Tr.) at

4  168:14-170:20.

5              **2.      Rebuttal Testimony**

6          In addition to his affirmative testimony, Lichtman criticizes the opinions and

7  methodology of SAP's principal damages expert, Clarke, in four specific areas.  *See, e.g.*, Chin

8  Decl., Ex. D (Lichtman Tr.) at 113:5-117:7; *see also id.* at 57:23-60:19, 63:6-15, 66:22-67:13.

9          First, Lichtman criticizes Clarke for basing his damages calculations only on what

10 ultimately transpired, and ignoring the parties' actual knowledge and expectations at the time

11 infringement commenced (for the purposes of the case against SAP, when SAP acquired TN).

12 *See, e.g., id.* at 59:16-60:19, 115:3-11.  Lichtman explains that Clarke's completely retrospective

13 view misses the key point of copyright protection from an economic perspective, because the

14 incentive system must encourage potential infringers to negotiate rather than infringe.  If an

15 infringer is permitted to pay vastly reduced damages due to the fact it ended up being

16 unsuccessful in exploiting the infringement, this would give potential infringers a "free shot" and

17 encourage them to infringe rather than negotiate.  A damage award must therefore focus on the

18 parties' expectations at the time they would have negotiated a license, or it will not accomplish

19 its economic objective of replacing the fair market value of the license that should have been

20 negotiated.  *See id.* at 122:20-123:21, 128:16-129:6.  As Lichtman explains, this point is

21 consistent with and supported by established legal authority, but Lichtman's core testimony is

22 not to argue this authority *per se*; it is to make the fundamental economic incentives point itself,

23 based on his experience and expertise.  *See id.* at 88:24-89:22, 112:15-25, 181:13-182:1.

24 Clarke's singular focus on lost profits ignores these economic considerations.  *See id.* at 158:19-

25 159:13, 163:10-164:1.

26         Second, Lichtman criticizes Clarke for being insufficiently precise about the availability

27 of legitimate alternatives to infringement, and failing to consider in detail whether any given

28 alternative is truly an economic equivalent.  *See, e.g., id.* at 186:25-189:4.

1    Third, Lichtman criticizes Clarke for focusing on SAP as the "willing buyer" in the fair

2    market value analysis.  *See id.* at 192:23-194:11.  This is erroneous from a policy and economic

3    perspective, Lichtman explains, because the fair market value of copyrights should not be

4    diminished by the incompetence, apathy or inattention of a particular infringer.  *See id.* at

5    195:11-196:13.

6    Fourth, Lichtman criticizes Clarke for ignoring the costs SAP avoided by infringing

7    instead of licensing.  *See id.* at 204:8-13, 206:19-207:21.  As Lichtman explains, a key economic

8    consideration for a willing buyer would be the costs it could save by purchasing a license instead

9    of creating its own substitute work.  Although Clarke concedes that a hypothetical license

10   analysis must consider the availability of non-infringing alternatives, *see* Chin Decl., Ex. C

11   (Clarke Supp. Report) at 135-138, 171-172, Clarke appears unwilling to consider the fact that

12   Defendants' infringement allowed them to avoid the costs of the alternative – developing non-

13   infringing software that was similar to Oracle's.  *See* Chin Decl., Ex. D (Lichtman Tr.) at 204:6-

14   13, 206:14-207:21.

15   **III.    LICHTMAN'S TESTIMONY IS ADMISSIBLE UNDER RULE 702**

16   SAP's primary argument is that Lichtman's testimony consists of improper opinion

17   testimony.  *See* Defendants' Motion to Exclude Expert Testimony of Professor Douglas G.

18   Lichtman (Dkt. 776) ("SAP Mot.") at 3-15.  As explained below, Lichtman's testimony is

19   admissible under established rules of evidence and Ninth Circuit law.  SAP's motion should be

20   denied.

21   **A.    The Testimony Of A Qualified Expert Should Be Admitted Where It**
22   **Is Reliable And Relevant**

23   Federal Rule of Evidence 702 provides the trial court with broad latitude in the admission

24   of expert testimony.  *See, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

25   While the proponent of expert testimony bears the burden of establishing its admissibility, there

26   is a presumption in favor of admissibility.  *See Salinas v. Amteck of Ky., Inc.*, 682 F. Supp. 2d

27   1022, 1029 (N.D. Cal. 2010) (Hamilton, J.).

28   Under Rule 702, the testimony of a qualified expert should be admitted where it has been

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN

1   shown to be reliable and relevant.  *See Kumho*, 526 U.S. at 147; *Daubert v. Merrell Dow*

2   *Pharms., Inc.*, 509 U.S. 579, 589 (1993) (*Daubert I*); *Daubert v. Merrell Dow Pharms., Inc.*, 43

3   F.3d 1311, 1315 (9th Cir. 1995) (*Daubert II*); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-

4   31 (9th Cir. 1998) (reversing exclusion of the plaintiff's expert; where testimony of qualified

5   expert is reliable and relevant "then it is a matter for the finder of fact to decide what weight to

6   accord the expert's testimony"); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140-

7   43 (9th Cir. 1997) (exclusion of plaintiffs' experts was erroneous where their testimony was

8   shown to be reliable and relevant); *see also* Fed R. Evid. 702, Adv. Comm. Notes 2000 (under

9   *Daubert* "the rejection of expert testimony is the exception rather than the rule").

10      Reliability and relevance are two separate questions.  *See Carnegie Mellon Univ. v.*

11   *Hoffmann La-Roche, Inc*., 55 F. Supp. 2d 1024, 1042 (N.D. Cal. 1999); *Salinas*, 682 F. Supp. 2d

12   at 1029-30 (noting *Daubert*'s "two-part analysis" of reliability and relevance).  Where a party

13   raises no objection to reliability, the Court need only consider relevance.  *See Carnegie Mellon*,

14   55 F. Supp. 2d at 1042.

15      Expert testimony is relevant where it "logically advances a material aspect of the

16   proposing party's case."  *Daubert II*, 43 F.3d at 1315; *see* Fed. R. Evid. 702 (expert testimony

17   must "assist the trier of fact to understand the evidence or to determine a fact in issue").  Where

18   reliable expert testimony will help the jury determine damages, it is plainly relevant and should

19   be admitted.  *See, e.g.*, *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 513-14 (3d Cir. 2005*)* (error to

20   exclude reliable expert testimony relevant to damages questions).  Testimony that provides the

21   jury with economic considerations that bear on damages is relevant, whether it offers specific

22   calculations of damages or not.  *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243-46 (10th

23   Cir. 2000) (affirming admission of expert testimony that did not calculate damages but provided

24   factors the jury should consider in calculating hedonistic damages); *Semerdjian v. McDougal*

25   *Littell*, 641 F. Supp. 2d 233, 242-43 (S.D.N.Y. 2009) (admitting expert testimony providing

26   economic framework for assessing whether any infringer's profits should be awarded on

27   copyright claim); *R.A. Mackie & Co. v. Petrocorp Inc.*, 329 F. Supp. 2d 477, 514 (S.D.N.Y.

28   2004) (expert testimony is relevant where it will "assist the Court in understanding the plaintiffs'

1    damage evidence and determining the amount of the plaintiffs' damages").

2          **B.      SAP Does Not Challenge Lichtman's Qualifications Or Methodology**

3          SAP does not challenge Lichtman's qualification as an expert, and for good reason.

4    Lichtman has written extensively on the foundations of copyright law and policy, with particular

5    focus on economics and policy.  His work has appeared in top economic publications (including

6    the *Journal of Economic Perspectives*, the *Journal of Law and Economics*, and the National

7    Bureau of Economic Research's *Innovation Law and Policy* journal), as well as prestigious law

8    reviews (including the *Yale Law Journal*, the *Stanford Law Review*, and the *University of*

9    *Chicago Law Review*).  Lichtman was also the Editor of the *Journal of Law and Economics* for

10   almost four years.  *See* Lanier Decl., Ex. 2 (Lichtman C.V.); Chin Decl., Ex. D (Lichtman Tr.) at

11   32:17-34:16.  He also has substantial technical expertise; he graduated first in his class at Duke

12   University with an undergraduate degree in electrical engineering and computer science.  *See*

13   Lanier Decl., Ex. 2 (Lichtman C.V.)  It would be hard to find somebody more qualified to

14   discuss the economic and public policy principles Lichtman articulates.

15         SAP does not challenge Lichtman's methodology, either.  While SAP repeatedly

16   complains that Lichtman presents "legal opinions," it does not find fault with his premises,

17   substantive analysis or conclusions.[3]

18         **C.      Lichtman's Testimony Is Highly Relevant And Will Assist the Jury**

19         Unable to attack Lichtman's qualifications or the substance of his analysis, SAP is left to

20   dispute its relevance.  In fact, the relevance of Lichtman's testimony to key damages questions is

---

21   [3] The closest SAP comes to challenging Lichtman's substantive analysis is SAP's contention that
22   Lichtman's reference to saved development costs conflict with the Court's August 17 ruling on
     the parties' summary judgment motions.  *See* SAP Mot. at 6.  The reference to saved
23   development costs that SAP complains about shows up in one paragraph of his report.  *Compare*
     SAP Mot. at 5-6 *with* Lanier Decl., Ex. 1 (Lichtman Report) at ¶ 72.  This is hardly a ground to
24   exclude Lichtman's testimony in its entirety.  Far from being inconsistent with the Court's
     decisions on available damages, Lichtman recognizes – as the Court has – that the basic
25   economic principle that guides the damage analysis here is determination of the fair market value
     of the rights infringed.  *See, e.g.*, Lanier Decl., Ex. 1 (Lichtman Report) at ¶ 45 (acknowledging
26   the "particular emphasis" must be on determining "the fair market value of the work" that was
     misappropriated).  *See also* Chin Decl., Ex. D (Lichtman Tr.) at 73:1-13, 74:1-5, 77:18-25,
27   101:4-15, 106:7-108:1, 167:6-9, 179:3-9, 198:5-13, 210:9-16, 368:11-15.

28

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN

1   inescapable.

2         When it comes to damages, two things are clear:  the jury will have to assess them, and

3   Oracle is entitled to claim the fair market value of the rights infringed, as of the outset of the

4   infringement, as the proper measure of its damages.  *See* Order Denying Defendants' Motion for

5   Partial Summary Judgment (Dkt. 628) at 5 (holding Oracle may "present evidence regarding the

6   fair market value of the copyrights SAP allegedly infringed").  If the jury is going to determine

7   the market value of the rights infringed, it needs to understand the economic principles that shape

8   those rights and determine their value.  The jury needs to understand the basic incentive system

9   that is the economic foundation for copyright protection, and the means by which that incentive

10  encourages investment in creating new works of authorship.

11        Lichtman explains these principles.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at ¶¶ 20-

12  44.  He begins by explaining the underlying economic incentive.  *See id.* at ¶¶ 20-29; Chin Decl.,

13  Ex. D (Lichtman Tr.) at 135:8-16.  To create new works, authors must typically invest a

14  substantial combination of time, effort and money.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at

15  ¶ 21.  This investment may or may not pan out, depending on whether anybody likes the final

16  product.  *See id.* at ¶ 25.  But authors are more likely to make these investments and shoulder

17  these risks if they know they will have the chance to reap rewards if their work is successful.  *See*

18  *id.* at ¶ 26.  The economic incentive copyright creates brings about a huge social benefit by

19  stimulating creation and innovation, but only if the incentive creates rewards that are properly

20  calibrated to the cost and value of the creation.  *See id.* at ¶¶ 27-29.

21        To resolve the conflict between the principal damages experts over methodology and

22  amount of damages, the jury needs to understand the economic role a damage award must play in

23  order to maintain the economic incentives Lichtman identifies.  Based on his economic and

24  technical expertise, Lichtman explains this, too.  *See id.* at ¶¶ 30-47.  Specifically, Lichtman

25  explains copyright accomplishes its incentive function by imposing restrictions against "free

26  riding."  *See id.* at ¶¶ 30-33; Chin Decl., Ex. D (Lichtman Tr.) at 136:11-20.  Limiting free riding

27  maintains incentives precisely because it lets the market determine the value of the work, while

28  leaving substantial room for competition.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at ¶¶ 34-44.

1    When an infringer makes prohibited copies without permission, it has short-circuited that market

2    mechanism of a negotiated license.  To fully remedy that injury, the damages methodology must

3    provide the same economic value as the negotiated transaction that should have happened

4    instead.  *See id.* at ¶¶ 45-47; Chin Decl., Ex. D (Lichtman Tr.) at 137:6-20.

5           The jury also needs an economic framework to assess the extent to which SAP's

6    infringement undermines the core incentive to create and invest, which of the methodologies for

7    calculating damages will best capture the actual loss Oracle suffered, and what exactly that loss

8    is.  In other words, the jury needs to understand how these economic principles apply to this

9    specific dispute.  Lichtman provides critical elements of this framework.  Lanier Decl., Ex. 1

10   (Lichtman Report) at ¶¶ 46-72; Chin Decl., Ex. D (Lichtman Tr.) at 138:14-139:11.  He

11   identifies the tremendous amount of money Oracle spent in developing and acquiring the works

12   at issue in this case, and explains how the copying SAP is accused of here is precisely the sort of

13   copying that undermines the core incentive.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at ¶¶ 46-

14   52.  As he explains, "the widespread copying" of the sort alleged here "would have an enormous

15   impact on Oracle's incentives. . . . Oracle would not rationally maintain its [billion dollar] level

16   of investment in this code" if SAP were permitted to "free rid[e]" on Oracle's investment.  *See*

17   *id.* at ¶¶ 66-67.  Lichtman concludes by explaining the damage award in this case must protect

18   that incentive to create and invest, and why the approaches set forth in Meyer's report are

19   important to consider in setting a damage award that will vindicate that incentive.  *See id.* at ¶¶

20   71-72; Chin Decl., Ex. D (Lichtman Tr.) at 168:14-170:20 (explaining Meyer's fair market value

21   analysis is consistent with economic and public policy foundations Lichtman articulates).

22          Finally, the jury needs to evaluate the credibility of Clarke's methodology and his

23   conclusion that Oracle has suffered only a fraction of the more than $2 billion in damages Meyer

24   identifies, and that lost profits are the only sensible way to measure Oracle's damages.  Lichtman

25   provides specific critique of this testimony, which ties directly to the economic framework he

26   provides.  (*See* pp. 6-7, above.)

27          The economic framework Lichtman presents is particularly important here.  The sheer

28   scope of SAP's infringement, the number of copyrights it infringed, its pervasive use of

1   infringing copies, and its goal of using the practice of infringement to compete with Oracle in

2   SAP's and Oracle's core software licensing businesses (not just the support business)

3   complicates and heightens the importance of the damages determination in this case.  The

4   principal damage experts disagree as to the two most central damages questions:  (1) what is the

5   most appropriate methodology to determine infringement damages, and (2) what amount is the

6   appropriate amount of infringement damages to award Oracle.  By providing the jury with an

7   economic framework that contextualizes the damages calculation and the economic functions it

8   is supposed to serve, Lichtman will help the jury answer these questions in a quintessentially

9   factual way, not through legal argument.  *See* pp. 4-6, above; *KW Plastics v. U.S. Can Co.*, 199

10  F.R.D. 687, 691 (M.D. Ala. 2000) (recognizing the role of the expert is often "to help the

11  factfinder locate and assemble the various available pieces of evidence more easily" and this is

12  "particularly true in the context of damages experts").

13       This is not a case where a defendant has made an isolated use of a single work.  *See, e.g.*,

14  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d

15  909 (9th Cir. 2002).  Having engaged in such sweeping infringement that inflicts such expansive

16  economic harm, SAP should not be permitted to keep the jury from receiving an economic

17  framework that will help the jury better understand the harm inflicted here, and more accurately

18  assess the value of that harm.

19       **D.      Lichtman's Testimony Is Not Improper Legal Opinion**

20       SAP tries to recast the actual substance of Lichtman's testimony by trying to fish out any

21  possible reference to legal issues in Lichtman's report.  SAP Mot. at 5, 7, 8, 11.  SAP likewise

22  scours Lichtman's deposition testimony for anything it can characterize as a "legal opinion" (*see*

23  *id.* at 6-13), yet ignores the fact that SAP itself posed a host of deposition questions to Lichtman

24  that *expressly demanded legal analysis.  See, e.g.*, Chin Decl., Ex. D (Lichtman Tr.) at 77:9-11

25  ("[W]hat are those types or forms of damages that are permissible under the U.S. Copyright

26  Act?"); 243:25-244:1 ("What other things can be copied and not be in violation of the Copyright

27  Act?"); 252:4-6 ("Does the copyright law of the United States prevent or prohibit the copying of

28  information that's in the public domain?"); *see also id.* at 78:14-15, 99:8-25, 100:14-16, 100:24-

1    101:1, 155:25-156:7, 178:23-25, 273:4-10.  The fact Lichtman answered Defendants' legal

2    questions does not transform him into an expert who offers testimony that is wholly (or even

3    substantially) legal opinion.

4         SAP also ignores the fact that Lichtman himself took great care to avoid over-stepping

5    his bounds.  *See id.* at 181:22-25 ("My role is to articulate the economic and public policy

6    underpinnings. . . . I trust the lawyers will handle cases . . . ."); *see also id.* at 75:17-76:12, 88:24-

7    89:22, 112:15-23, 348:17-22; 353:10-354:3.  Despite SAP's efforts to solicit legal analysis in

8    deposition, Lichtman explained again and again that it was *not* his role or intention to "say what

9    the law is" or "to make legal conclusions."  *See id.* at 112:21-23, 353:19-20.

10        SAP's sound bites and spin do not change the focus or substance of Lichtman's

11   testimony, or the fact that it provides important economic tools that will assist the jury in

12   understanding the other damages evidence put before it.  (*See* pp. 4-6, above.)

13        The fact that Lichtman referred to legal principles in his report and deposition testimony

14   does not provide any basis to exclude his testimony, either.  *Specht v. Jensen*, 853 F.2d 805 (10th

15   Cir. 1988) (*see* SAP Mot. at 2, 4, 9, 12, 14) expressly "recognize[s] that a witness may refer to

16   the law in expressing an opinion without that reference rendering the testimony inadmissible.

17   Indeed, a witness may be called upon to aid the jury in understanding the facts in evidence even

18   though reference to those facts is couched in legal terms."  853 F.2d at 809.  In *Specht*, the court

19   excluded expert testimony on the question of whether there had been a "search" under the Fourth

20   Amendment, and whether it was illegal.  *See id.* at 806.  It held that allowing a witness to testify

21   to an "ultimate questions of law" like that "circumvent[ed] the jury's decision-making function

22   by telling it how to decide the case."  *Id.* at 808.  Here, Lichtman's testimony will do no such

23   thing.  Rather, as reflected in his report and deposition testimony, he will provide the jury with

24   tools to help ***the jury*** assess and decide the proper measure and amount of damages consistent

25   with the evidence and the Court's instructions on the law.  *Specht* recognizes that is a ***proper*** role

26   for an expert.  *See id.* (recognizing expert testimony is proper where it will "assist[] the jury's

27   understanding and weighing of the evidence").

28        Other cases SAP cites follow *Specht* and exclude testimony on the ground it concerns an

1   ultimate question of law.  *See Mannick v. Kaiser Found. Health Plan, Inc.*, 2006 WL 1626909, at

2   *16-19 (N.D. Cal.) (Hamilton, J.) (excluding declaration of plaintiffs' experts on ADA

3   accommodations concerning the ultimate legal issue of whether removal of barriers to

4   accessibility were "readily achievable" under the ADA statute); *Pinal Creek Grp. v. Newmont*

5   *Mining Corp.*, 352 F. Supp. 2d 1037, 1042-46 (D. Ariz. 2005) (excluding testimony of law

6   professors that provided "detailed discussion" of case law and the application of that case law to

7   the facts of the case before the court, and whether parties to that case violated the antitrust laws).

8   In still other cases, SAP itself points out the expert sought to testify to ultimate questions of law.

9   *See* SAP Mot. at 4 (citing *Nationwide Trans. Fin. v. Cass Info Sys., Inc.*, 523 F.3d 1051, 1058

10  (9th Cir. 2008), and explaining that case excluded expert testimony on whether the defendant's

11  conduct was "'wrongful' or 'intentional' under the law"); *see also United States v. Brodie*, 858

12  F.2d 492, 496-97 (9th Cir. 1988) (court properly excluded attorney's testimony on law of trusts

13  that was proffered, in part, to "inform the jury that the validity of the trusts was legally unsettled

14  during 1979 and 1980").  While Lichtman assumes liability like any damages expert must, he

15  does not propose to testify to any ultimate question of law.  SAP's attempts to analogize

16  Lichtman's testimony to the testimony excluded in *Mannick*, *Pinal*, *Nationwide Trans.* and

17  *Brodie* (*see* SAP Mot. at 3-4) are plainly inapposite.[4]

18      SAP also mischaracterizes the copyright cases it cites.  In *Religious Tech. Ctr. v. Netcom*

19  *On-Line Commc'n Servs., Inc.*, 1997 WL 34605244, at *7-8 (N.D. Cal.), the court excluded

20  declarations concerning whether defendants infringed plaintiffs' copyrights and whether the fair

21  use defense protected defendants' activities.  That was improper because fair use was the

_____

23  [4] SAP also ignores the fact that many of the cases it cites exclude only those portions of the
24  expert's testimony addressing legal opinions, not all of the testimony.  *See e.g.*, *Pinal Creek*, 352
    F. Supp. 2d at 1042-46; *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 25781901 (C.D. Cal.),
25  at, *1 (excluding portions of expert report that addressed whether material was subject to
    copyright protection and whether defendant's use of this material was "fair use" under the
26  Copyright Act, but denying "the balance of the motion"); *S.E.C. v. Leslie*, 2010 WL 2991038, at
    *9-11 (N.D. Cal.) (exclusion limited to testimony about "legal concepts, the legal interpretation
27  of case law, and statutes, or whether specific conduct was fraudulent, intentional, or misleading
    in the legal sense").

1    ultimate legal question to be determined in that case.  *See id.*; *Religious Tech. Ctr. v. Netcom On-*

2    *Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1380-81 (N.D. Cal. 1995) (denying summary

3    judgment on fair use defense).  In *Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, 2009

4    WL 1764652 (N.D. Cal.), and *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 25781901 (C.D.

5    Cal.), the court excluded testimony on the question of whether the plaintiffs' work was subject to

6    copyright protection.  That is because "[d]eterminations of copyrightability are . . . questions of

7    law reserved for the judge, and not the jury," *Jonathan Browning*, 2009 WL 1764652, at *1, so

8    the excluded testimony could not assist the jury.  Here, the determination of damages is a

9    question for the jury and Lichtman's testimony will help determine them.[5]

10       SAP's attempt to analogize Lichtman's testimony to expert testimony offered by

11    Professors Peter Menell and Lawrence Lessig is mistaken for the same reason.  In *F.B.T. Prods.,*

12    *LLC v. Aftermath Records*, 2009 WL 137021 (C.D. Cal.), the court excluded Professor Menell's

13    testimony because it "set[] forth an opinion on the proper interpretation" of the contract at issue,

14    which the court recognized to be an issue of law.  *See id.* at *6 n.5, *overruled on other grounds*

15    *by* 2010 WL 3448098 (9th. Cir).  In *A&M Records, Inc. v. Napster, Inc.*, 2000 WL 1170106

16    (N.D. Cal. 2000), Professor Lessig's expert report urged the court to "consider[] the practical

17    effect of legal regulation on Internet technology before wielding its injunctive power" but

18    consisted entirely of "legal opinion and editorial comment on Internet policy."  *See id.* at *8.

19    Lichtman's testimony is plainly not aimed at any such question.  Far from telling the Court how

20    or when to wield its injunctive power and why, Lichtman provides an economic framework to

21    _____

22    [5] Again, like any damages expert must, Lichtman assumes liability for infringement.  Thus, his
report acknowledges that his testimony is premised on the assumption that Oracle's works are

23    eligible for copyright protection, and he explains briefly why he is satisfied this premise is
appropriate.  *See* Lanier Decl., Ex. 1 (Lichtman Report) at ¶¶ 58-60.  Relying on his substantial

24    experience in computer programming, inspection of actual source code, and conversations with
Oracle employees Julie O'Shea, Norm Ackermann and Linda Fowler, Lichtman confirmed the

25    works at issue were written by Oracle employees, were creative in that the authors had a wide
range of choices in how they wrote the code.  *See id.*  On that basis, Lichtman concluded it was

26    appropriate to assume the works were eligible for copyright protection, and communicated that

27    conclusion to Kevin Mandia.  *See* Chin Decl., Ex. D (Lichtman Tr.) at 141:10-147:5, 336:21-
342:3.

28

1    help the jury better understand and assess damages.

2        SAP's reliance on an unpublished decision excluding Lichtman's testimony in a

3    trademark case, and another unpublished decision excluding David Nimmer's testimony in a

4    copyright case, are even farther off the mark.  Both of these decisions turned on the expert's

5    qualifications – an issue SAP does not contest here.  *See* SAP Mot. at 6 (citing *Charter Nat'l*

6    *Bank v. Charter One Fin., Inc.*, 2001 U.S. Dist. LEXIS 13919, at *18-20; 2001 WL 1035721, at

7    *6-7 (N.D. Ill.), and *Gable v. Nat'l Broad. Co.*, 2010 U.S. Dist. LEXIS 77772, at *56-57; 2010

8    WL 2990977, at *18 (C.D. Cal.)).  In *Charter*, the court excluded Lichtman's testimony because

9    it found he was not qualified to testify as an expert in trademark matters "[g]iven that none of his

10   published work involves trademark law" and he had taught very little of it.  *Charter*, 2001 WL

11   1035721, at *6.  Here, Lichtman's qualifications on technology and copyright policy and its

12   economic foundations stand unchallenged.  In *Gable*, the Court excluded Nimmer's testimony on

13   the question of whether one literary work was substantially similar to another literary work

14   because while he is plainly a copyright expert, the plaintiff had not shown he was qualified to

15   "perform[] a literary analysis of two fiction works."  *Gable*, 2010 WL 2990977, at *17.  In

16   contrast, SAP does not challenge Lichtman's qualifications with respect to the subject of his

17   testimony.

18       The District Court's role as a "gatekeeper" under *Daubert* is not meant to supplant the

19   role of the jury, or permit one party to exclude evidence it simply does not like.  "Vigorous

20   cross-examination, presentation of contrary evidence, and careful instruction on the burden of

21   proof are the traditional and appropriate means of attacking" disputed expert testimony.

22   *Daubert I*, 509 U.S. at 596.  Insofar as SAP intends to dispute the economic principles Lichtman

23   articulates, or any aspect of the analysis he provides, SAP presents no reason why these

24   traditional tools identified in *Daubert* – cross-examination or the presentation of contrary

25   evidence – would not provide a sufficient opportunity to do so.

26

27

28

1    **IV.    LICHTMAN'S TESTIMONY SHOULD NOT BE EXCLUDED UNDER
        RULE 403**

2

3           In asking the Court to exclude Lichtman's testimony under Federal Rule of Evidence

4    403, SAP largely recycles the same arguments presented in its *Daubert* challenge.  *See* SAP Mot.

5    at 11-15.  They should be rejected for the same basic reasons.[6]

6           SAP contends Lichtman's testimony will "waste time" because it "will not help the jury

7    determine damages."  SAP Mot. at 11.  But as explained in detail above, Lichtman's testimony

8    will provide the jury with crucial economic tools to assess the competing testimony regarding

9    both methodology and amount.  (*See* pp. 4-6, above.)  The economic framework he provides is

10   not lengthy; his report totals a mere 27 pages compared to the hundreds of pages in the reports of

11   Clarke and Meyer.  Lichtman's testimony can be presented quickly and efficiently, and is more

12   likely to save time rather than waste it by giving the jury the tools to better assess the detailed

13   and conflicting testimony they are likely to hear from Meyer and Clarke at a minimum.  No other

14   expert provides these important tools, so Lichtman's testimony is neither wasteful nor

15   cumulative of other experts.

16          SAP also contends Lichtman's testimony is "slanted in [Oracle's] favor" and therefore

17   "unduly prejudicial."  *See* SAP Mot. at 14.  "Relevant evidence is inherently prejudicial"; if not,

18   there is no point offering it.  *See e.g., United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir.

19   2000) (internal citation omitted); *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001)

20   ("All evidence introduced against a . . . defendant might be said to be prejudicial if it tends to

21   prove the prosecution's case"); *McQueeney v. Wilmington Trust Co*., 779 F.2d 916, 923 (3d Cir.

22   1985) ("[v]irtually all evidence is prejudicial or it isn't material").  The question under Rule 403

23   is whether the evidence presents a danger of  "***unfair***" prejudice – an "undue tendency to suggest

24   decision on an improper basis, commonly, though not necessarily, an emotional one."  *Hankey*,

25   _____

26   [6] Federal Rule of Evidence 403 permits the Court to exclude relevant evidence where its
     "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the
27   issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless
     presentation of cumulative evidence."  Fed. R. Evid. 403.

28

1    203 F.3d at 1172 (citing Advisory Committee Notes).

2         Lichtman's testimony presents no danger of **unfair** prejudice.  There is nothing "unfair"

3    about providing the jury with an understanding of the economic incentives underlying copyright

4    protection, the ways in which infringement frustrates those incentives, and the most appropriate

5    way to remedy the economic harm caused by such infringement.  All of SAP's arguments to the

6    contrary rest again on the misrepresentation of Lichtman's testimony and the false suggestion

7    that it presents ultimate conclusions of law.  For this reason, SAP's motion is distinguishable

8    from, and not supported by, the cases it cites.  Lichtman's testimony describes economic

9    principles and their application to the sweeping copyright infringement that Defendants have

10   admitted in this case.  It does not set forth legal conclusions.

11   **V.      CONCLUSION**

12        There is no basis to exclude any of Lichtman's testimony, much less all of it.  The Court

13   should deny SAP's motion to exclude Lichtman's testimony.

14

15   DATED:  September 9, 2010              BINGHAM McCUTCHEN LLP

16

17                                         By:_____/s/ Geoffrey M. Howard_____

18                                              Geoffrey M. Howard
                                                Attorneys for Plaintiffs
                                                Oracle USA, Inc., *et al.*

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
PROFESSOR DOUGLAS G. LICHTMAN