Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:	(415) 626-3939
Facsimile:	(415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
Jones Day
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:	(650) 739-3939
Facsimile:	(650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted Pro Hac Vice)
Joshua L. Fuchs (Admitted Pro Hac Vice)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:	(832) 239-3939
Facsimile:	(832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **DEFENDANTS' ADMINISTRATIVE MOTION FOR AN ORDER REGARDING COUNSELS' EXTRAJUDICIAL COMMUNICATIONS** |
| v. | |
| SAP AG, et al., | |
| Defendants. | |

1   Pursuant to Civil Local Rule 7-11(a), Defendants SAP AG, SAP America and
2 TomorrowNow, Inc. ("Defendants") move for an order prohibiting counsel for the parties from
3 making extrajudicial statements about the trial until the end of the trial or, alternatively, from
4 making any extrajudicial statements prohibited by Rule 5-120(A) of the California Rules of
5 Professional Responsibility.  Because this issue affects the impartial administration of justice,
6 Defendants submit that it should be decided on an expedited basis, before trial.

7   At the final pretrial conference on September 30, Oracle's counsel stated: "I fear there
8 will be a lot of press about this case on a daily basis." Declaration of Tharan Gregory Lanier
9 ("Lanier Decl.") ¶ 7, Ex. A (9/30/10 Pretrial Conference Tr.) at 119.  Describing it as "a big
10 problem," counsel expressed doubt that jurors will abide by an instruction to refrain from
11 "Googling and using the Internet." *Id.* at 117.  "Even when you instruct the jurors, they do it
12 anyway." *Id.*  The parties agreed to confer on how to address the problem.

13   A little over a week later, on October 8, a columnist for The New York Times published a
14 scathing attack on SAP and a former member of its supervisory board, Léo Apotheker, who had
15 just been appointed CEO of HP.  *See* Lanier Decl. ¶ 8, Ex. B (Joe Nocera, "A Double Standard at
16 H.P.," N.Y. Times, <http://www.nytimes.com/2010/10/09/business/09nocera.html>).  The article
17 accuses SAP and its former executive of "the most serious business **crime** you can commit,"
18 claiming that the evidence shows that the executive "clearly knew about the theft"—this "brazen
19 theft of intellectual property." *Id.* at 3, 5.

20   As it turns out, and as the newspaper belatedly acknowledged, the author is the fiancée of
21 the publicist for Boies, Schiller & Flexner, Oracle's lead trial counsel in this case.  *Id.* at 5.
22 (Editors' Note, added four days later).  Although the author denies knowing that his fiancée's law
23 firm represents Oracle, he does not deny that she was the source of the detailed information and
24 evidence he cites in his article.

25   Thereafter, Defendants proposed that the parties agree that counsel refrain from
26 extrajudicial statements during trial.  *See* Lanier Decl. ¶ 1.  Defendants further proposed that the
27 jury be instructed not to read or listen to any media, whether in hard copy or in electronic form,
28 pertaining to this case.  *See id.*  Plaintiffs agreed in principle to the second proposal but refused to

1   agree to any restriction on counsels' extrajudicial statements during trial.  *See* Lanier Decl. ¶¶ 2,
2   6.

3          The episode involving the New York Times article—coupled with Oracle's counsel's
4   refusal to eschew publicity efforts during trial despite recognizing that jurors may not heed a
5   court instruction not to read press coverage—leads to this motion.  "Legal trials are not like
6   elections, to be won through the use of the meeting-hall, the radio, and the newspaper."  *Bridges*
7   *v. California,* 314 U.S. 252, 271 (1941).  Even before the advent of the Internet, courts recognized
8   the need to control pretrial publicity "[g]iven the pervasiveness of modern communications and
9   the difficulty of effacing prejudicial publicity from the minds of the jurors."  *Sheppard v.*
10  *Maxwell*, 384 U.S. 333, 362 (1966).  This need is even stronger in the digital Internet age where
11  access is almost immediate and, for many, addictive and irresistible.

12         While the Court cannot control what the press writes about this case or ensure that jurors
13  are not exposed to it, the Court can take steps to make certain that counsel are not attempting to
14  communicate with jurors in this manner.  Given Plaintiffs' counsel's statements to this Court
15  recognizing the "big problem" of jurors reading Internet coverage about this case, Defendants had
16  hoped that Plaintiffs would agree that counsel should refrain from extrajudicial statements
17  immediately before and during trial.  But absent agreement, the Court has the authority to impose
18  that restriction on counsel.  This is what Judge Illston ordered in another high profile case,
19  *Bowoto v. Chevron Corp.,* No. C 99-02506 SI.  *See* Lanier Decl. ¶ 9, Ex. C (11/7/2008 Order Re:
20  Trial Participants' Communications with Press During Pendency of Trial, ECF No. 2069).

21         *Levine v. U.S. Dist. Ct. for C.D. Cal.,* 764 F.2d 590 (9th Cir. 1985) provides ample
22  authority for the requested order.  In that case, a newspaper published an article shortly before
23  trial with numerous quotes attributed to defense counsel.  At the government's request, the trial
24  court ordered counsel not to make extrajudicial statements concerning the merits of the case.
25  Denying a writ of mandamus, the Ninth Circuit reasoned that the objective of deciding cases
26  based on evidence and argument in open court "can be obtained only if publicity created by
27  private litigants is subject to reasonable restrictions."  *Id.* at 597.  As the Court observed, the case
28  for restraints is particularly strong with respect to publicity immediately before and during trial

1   (*id.* at 598) and with respect to "trial participants" especially attorneys whose "views and
2   comments are usually accepted by the public on the basis that they come from a wellspring of
3   reliable information." *Id.* at 595, 599.  In any event, "[a]s officers of the court, court personnel
4   and attorneys have a fiduciary responsibility not to engage in public debate that . . . will obstruct
5   the fair administration of justice." *Id.* at 595.[1]

6   While upholding the order generally, the Ninth Circuit remanded with instructions to
7   specify the type of prohibited statements, *e.g.,* statements about the "strengths or weaknesses of
8   the case of either party," "the character, credibility, or reputation of a party," or the identity or
9   nature of evidence.  *Id*. at 599.  The article in The New York Times, if generated by a lawyer's
10  publicist, would squarely fall within the scope of the type of order envisioned by the Ninth Circuit
11  in that case.  Further, the Ninth Circuit suggested a broader form of order in *Farr v. Pitchess*, 522
12  F.2d 464, 468-69 (9th Cir. 1975): "[t]he most practical and recommended procedure to insure
13  against dissemination of prejudicial information is the entry of an order directing that attorneys,
14  court personnel, enforcement officers and witnesses refrain from releasing any information which
15  might interfere with the right of the defendant to a fair trial."

16  Although *Levine* and *Farr* approved gag orders under a "clear and present danger"
17  standard, the Supreme Court more recently held that "the speech of lawyers representing clients
18  in pending cases may be regulated under a less demanding standard." *Gentile v. State Bar of*
19  *Nevada*, 501 U.S. 1030, 1074 (1991).   The Court held that a restraint on an attorney's
20  extrajudicial speech is justified by a showing of "a substantial likelihood of material prejudice,"
21  leaving open whether a lesser showing would also suffice.  *Id*. at 1075.  The Ninth Circuit has not
22  revisited this issue since *Levine*.  But Courts of Appeals for other circuits have applied *Gentile* to
23  hold that trial counsel can be enjoined from making comments to the media that have "a
24  reasonable likelihood" of prejudicing the administration of justice.  *See In re Morrissey*, 168 F.3d
25  134, 138-40 & n.2 (4th Cir. 1999); *United States v. Cutler*, 58 F.3d 825, 835-37 (2d Cir. 1995).

---

[1] During the meet-and-confer, Plaintiffs noted that Oracle itself, unlike SAP, has not held press conferences, issued press releases or posted pleadings on its website.  However, given the public nature of the allegations, it has been entirely appropriate for SAP to respond to those allegations.  That type of response is qualitatively different from statements by the parties' lawyers immediately before or during trial for the reasons stated in *Levine*.

1   The type of comments reflected in The New York Times article meet that standard.
2   Referring to this copyright dispute as "the most serious business crime" is inflammatory and, to
3   the extent anyone credits the author, prejudicial.   The same is true of almost any type of
4   extrajudicial statements by counsel that a juror might read.  The jurors should hear evidence and
5   argument in court only; they should not be exposed to counsels' extrajudicial repetition of, or spin
6   on, the in-court evidence and argument.  Voir dire and jury instructions are simply no substitute
7   for prohibiting counsel from attempting to create the prejudice in the first place.  Even if voir dire
8   were able to eliminate any bias caused by **pretrial** publicity, it "cannot eliminate prejudice caused
9   by publicity **during** the trial." *Levine*, 764 F. 2d at 600 (emphasis added).  And "jury instructions
10  are often an ineffective remedy," as the Ninth Circuit recognized in *Levine* (*id.*) and as Oracle
11  recognized at the recent hearing.

12   Finally, in the alternative, and at a minimum, counsel should be ordered to adhere to their
13  responsibilities under Rule 5-120(A) of the California Rules of Professional Responsibility,
14  which states:

> A member who is participating . . . in the . . . litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

18   For these reasons, counsel for the parties should be directed to refrain from extrajudicial
19  statements until the trial is over or, at a minimum, to abide by Rule 5-120(A) of the California
20  Rules of Professional Responsibility.

21  Dated: October 22, 2010                      Respectfully submitted,

                                                 JONES DAY


                                                 By:  /s/ Robert A. Mittelstaedt
                                                       Robert A. Mittelstaedt

                                                 Counsel for Defendants

                                                 SAP AG, SAP AMERICA, INC., and
                                                 TOMORROWNOW, INC.