# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (650) 739-3941
tglanier@jonesday.com

October 28, 2010

VIA HAND DELIVERY

The Honorable Phyllis J. Hamilton
Courtroom 3, 3rd Floor
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA  94612

      Re:    Case No. 07-CV-1658 PJH (EJL); Oracle USA, Inc., et al. v. SAP AG, et al;
<u>U. S. District Court, Northern District of California, Oakland Division</u>

Your Honor:

      We write in response to Plaintiffs' letter of earlier today. Defendants agree with Plaintiffs' effective concession (*see, esp.*, page 2 of their submission) that elimination of the contributory infringement issue from this case would permit the trial to be substantially shortened and focused. It makes good sense to eliminate the issue now, because whether SAP is contributorily liable or not does not affect damages at trial at all, and keeping the issue in the case would only satisfy Plaintiffs' desire to turn the upcoming trial into a sideshow, focused on people and companies who are not even parties to this dispute. This case has always been and should be about copyright damages; a case focused on that topic can be resolved in 20 hours per side, or less. It also can begin on November 1, as long scheduled.

      Some context is useful. The parties have previously made substantial progress in narrowing the scope of this case. Defendants have stipulated that TomorrowNow is liable on Oracle's various claims, SAP has accepted financial responsibility for any judgment against TomorrowNow and stipulated to vicarious copyright liability, and Oracle has dismissed all but indirect copyright infringement claims against SAP, including specifically dismissing claims against SAP for punitive damages. *See* D.I. 866 (Trial Stipulation and Order No. 1). As a result, the sole remaining liability issue for trial is alleged contributory copyright infringement.[1]

---

[1] Plaintiffs assert that Defendants insisted contributory infringement remain in the case. Defendants will say only that this statement is false. Defendants will say no more, because the stipulation was reached through confidential settlement discussions conducted under the supervision of the Court. Defendants object to Plaintiffs' misrepresentation of those earlier discussions and also to Plaintiffs' public filing of settlement communications which they themselves requested be confidential. Defendants note also the attachments were both incomplete and redacted to eliminate reference to concessions Plaintiffs might make, concessions which could even further shorten trial.

Judge Hamilton
October 28, 2010
Page 2

   Unfortunately, that sole remaining liability issue is threatening to overwhelm the case and to turn the upcoming trial into a media circus, focused not on the issues actually in dispute but on the obsession of Oracle and its founder, Larry Ellison, with Hewlett Packard and whoever may be its CEO. *See* Attachments A, B. Press reports make clear that as a result of Oracle's efforts this trial is "now shaping up to be a spectacle involving three of the biggest companies in enterprise computing." *See* Attachment C (emphasis added). Many in the media have observed that "Ellison has appeared to relish the prospect of giving HP a black eye by emphasizing Apotheker's role at SAP." *See* Attachment A. This despite the fact that in briefing on their motion for partial summary judgment concerning contributory infringement, Mr. Apotheker was not even mentioned by name. *See* D.I. 659 (Oracle's Motion for Partial Summary Judgment); D.I. 700 (Oracle's Reply in Support of Motion for Summary Judgment and Opposition to Defendants' Cross-Motion). This new focus on one ancillary witness serves to illustrate that this case is in danger of becoming a pawn in the "increasingly caustic rivalry between Oracle and HP." *See* Attachment A.

   The point is not whether Mr. Apotheker should testify or whether Oracle has any standing to complain about HP's decisions over its CEO. The point is that Oracle plainly intends to use weeks of trial to harass its competitors, whether they are parties to the case or not. There is simply no other reason to address contributory infringement at trial, because its resolution will not affect damages by one penny.

   The obvious solution is that proposed by Defendants – eliminate the issue of contributory infringement from the case. The damages claims against SAP remain exactly as they were, and there is no prejudice to Oracle. This would also permit the parties to shorten and focus the trial, because with no disputed liability issues involving SAP and Oracle's previous dismissal of its punitive damages claims against SAP, the trial is about one thing only – the actual damages caused by TomorrowNow's stipulated copyright infringement.

   The fact that Plaintiffs complain at all about eliminating any liability dispute and removing all distractions from an appropriate damages award speaks volumes about their motives. Plaintiffs' complaints of surprise are meritless, as well; these discussions have been under way for some time and, as this Court and any experienced trial counsel knows, cases focus up to the very moment of trial and through the trial itself. That is a good thing.

   In sum, Defendants confirm what Plaintiffs have told the Court – SAP now elects not to contest at the upcoming trial the claim for contributory copyright infringement as defined in the proposed jury instruction attached (consistent with the Court's ruling denying Oracle's motion for summary judgment on the issue), which Defendants request be issued in lieu of all other instructions on contributory infringement (*see* Attachment D). Because this will substantially narrow the issues to be tried, Defendants respectfully suggest that the trial time limits be reduced to no more than 20 hours per side, and that evidence and argument on contributory infringement be excluded from trial if admissible for no other purpose.

JONES DAY

Judge Hamilton
October 28, 2010
Page 3

      Finally, Defendants further respectfully request that their previous motion regarding extrajudicial communications by counsel be granted. If Oracle's media circus were not enough, its lawyers' choice to publish confidential settlement communications should be.

      Respectfully submitted,

      /s/ Tharan Gregory Lanier

      Tharan Gregory Lanier

TGL:snm

Enclosures

**ATTACHMENT A**



## Oracle and SAP head to trial; case may touch HP CEO

By Brandon Bailey bbailey@mercurynews.com

Posted: 10/28/2010 06:20:04 AM PDT

Updated: 10/28/2010 06:20:40 AM PDT

Soon after German software maker SAP bought a little-known company called TomorrowNow, SAP executive Léo Apotheker asked a colleague about using the acquisition to "inflict some pain" on their bitter rival, Oracle.

Five years later, TomorrowNow has turned into a big pain for Apotheker, who is scheduled to report for work as the new CEO of Hewlett-Packard on Monday. Coincidentally, Oracle and SAP are set to begin trial the same day, in a multibillion-dollar lawsuit over Oracle's complaint that SAP used TomorrowNow to steal copyrighted software on a massive scale.

Although admitting violations, SAP says its top executives never approved any abuses. But Oracle has threatened to call Apotheker as a witness in Oakland federal court, along with a remarkable parade of senior officials from both companies, including Oracle CEO Larry Ellison. And while the case reflects the long-standing competition between the two software makers, it's also serving to highlight an increasingly caustic rivalry between Oracle and HP.

In recent statements, Ellison has appeared to relish the prospect of giving HP a black eye by emphasizing Apotheker's role at SAP -- though SAP spokesman Bill Wohl dismissed Ellison's criticism as "nothing more than a PR sideshow" to the impending trial.

Ellison publicly ridiculed HP's board of directors last month for hiring Apotheker after they ousted their previous chief executive, Mark Hurd. HP, in turn, briefly sued

Hurd after Ellison hired him as a co-president at Oracle.

This week, Ellison turned up the heat, vowing in successive news releases that the trial will show Apotheker was involved in "an industrial espionage scheme centering on the repeated theft" of Oracle's software. Ellison also suggested HP doesn't want Apotheker to testify in the trial; HP has declined to say if he will.

"Léo knew all about the stealing. In fact, Léo did not stop the stealing until 7 months after he became CEO," Ellison said in a statement Wednesday. Apotheker was a top leader and for a time co-CEO of SAP during the four years that SAP owned TomorrowNow, before it was shut down in October 2008.

While declining to comment, an HP spokeswoman referred to an Oct. 11 letter that HP's incoming board chairman, Ray Lane, wrote in response to similar criticism.

"The facts are: TomorrowNow was never under Mr. Apotheker's supervision," Lane wrote. "And it was Mr. Apotheker who, as CEO of SAP, shut down TomorrowNow."

Lane, himself a former Oracle president who left in 2000 after feuding with Ellison, said Oracle has "other motives" for drawing Apotheker into the SAP case.

Although Lane did not elaborate, HP's selection of Apotheker has been widely viewed as a sign the Palo Alto tech giant plans to expand in the commercial

Advertisement



We focus on automating Marriott® Hotels' global invoice process. So they don't have to.

Learn more at RealBusiness.com

Ready For Real Business  

Print Powered By FormatDynamics



software business, where Redwood City-based Oracle has long been a dominant player. Oracle, meanwhile, has been encroaching on HP's turf by starting to sell computer hardware.

"This is a very high stakes business," Cowan & Co. investment analyst Peter Goldmacher said in a recent report on Apotheker's hiring. Goldmacher's report suggested Ellison may be worried that HP will enter the business of helping customers keep their software up to date, which he estimates is worth almost $5 billion a year to Oracle.

TomorrowNow was in that business, although SAP has acknowledged the Texas operation went very wrong.

Oracle and SAP are two of the world's leading suppliers of "enterprise application software," or programs that big corporations use to run their personnel, finance and sales operations. The complex software requires occasional fine-tuning to deal with programming bugs and changes in regulations, such as the tax formulas used in processing payrolls.

Both Oracle and SAP provide those fixes, for a fee, but a growing number of consultants and "third-party maintenance" companies offer similar services at lower cost.

SAP bought TomorrowNow in 2005, hoping the Texas company would give it a foot in the door with customers who used Oracle software.

That was the context for Apotheker's query to SAP executive Bill McDermott, asking whether it was possible to sign some new customers for TomorrowNow quickly.

SAP was in danger of losing an unrelated deal to Oracle, "and I'm really pissed," Apotheker wrote in a 2005 e-mail that's become part of the court record. "We need to inflict some pain on Oracle."

Oracle, however, discovered evidence that TomorrowNow's support workers were going far beyond legitimate maintenance work on software the tiny firm's customers had licensed from Oracle. Oracle says TomorrowNow used customers' passwords to access Oracle's servers and download Oracle programs and support materials, making thousands of copies and using them as if they were TomorrowNow's own products.

After Oracle filed suit in 2007, claiming copyright infringement and theft of intellectual property, SAP acknowledged TomorrowNow workers were responsible for "inappropriate" downloads. After further investigation, SAP shut down TomorrowNow in late 2008.

But Oracle contends SAP knew TomorrowNow's business was based on theft before SAP bought the smaller company, and allowed those operations to continue for years.

SAP, while conceding that TomorrowNow violated Oracle's copyrights, has insisted that executives at the parent company didn't learn about the downloading until after the acquisition, and then moved to halt the abuses.

Oracle is seeking more than $2 billion, based partly on the value of the software that was downloaded, but SAP attorneys argue the actual damage is in the "tens of millions." The case could have broader implications if Oracle's attorneys show SAP's top executives approved of those acts.

Although SAP says Apotheker had no specific responsibility for TomorrowNow until he became co-CEO in 2008, he was in a senior position as head of SAP sales and served on the executive

Advertisement



Time Sensitive Offer
The Daily Deal - San Francisco $45 for One 16"x20" Gallery-Wrapped Canvas Including Shipping and Handling from Canvas on Demand ($126.95 Value)

Get this and other Daily Deals at:
www.PrintGroupon.com/81

65% OFF
Canvas on Demand

Print Powered By FormatDynamics



board, which oversees the entire company, from 2002 until he resigned from SAP this year.

During pretrial motions, Oakland federal Judge Phyllis Hamilton ruled that Oracle had not presented enough grounds for her to find that SAP's top executives authorized wrongdoing. Instead, she said the point should be argued to a jury.

Experts say it's unusual for two companies to risk bringing their top executives into a trial, rather than negotiate a financial settlement. And a last-minute settlement is still possible.

"But this is kind of a unique situation," said Terence Church, a veteran tech lawyer at Morgan Miller Blair, who is not involved in the case. "You have two parties with a whole bunch of money to spend, and there are public relations concerns as well. Neither one has any interest in backing down."

**Oracle v. sap**
**What: Oracle's lawsuit against SAP over alleged copyright infringement and computer trespassing.**
**When: Jury selection starts Monday and trial could run four weeks.**
**Where: Courtroom 3, Oakland division of U.S. District Court for Northern California.**
**Who: Judge Phyllis Hamilton will preside. Oracle attorneys include David Boies, Donn Pickett and Geoffrey Howard. SAP attorneys include Robert Mittelstaedt, Tharan Lanier and Scott Cowan.**

Advertisement



Print Powered By FormatDynamics

# The Mercury News
MercuryNews.com

## Ellison vows evidence will implicate HP's new CEO

By Brandon Bailey
bbailey@mercurynews.com

Posted: 10/26/2010 07:30:53 PM PDT
Updated: 10/26/2010 08:48:19 PM PDT

Just days before the scheduled start of trial in a major copyright lawsuit, Oracle CEO Larry Ellison vowed Tuesday to present evidence that incoming Hewlett-Packard chief Léo Apotheker was at the center of a scheme to steal Oracle's intellectual property when Apotheker led the German software maker SAP.

"A major portion of this theft occurred while Mr. Apotheker was CEO of SAP," Ellison said in a statement to the Mercury News, in which he also challenged HP to make Apotheker available as a witness in the case.

"I hope I'm wrong, but my guess is that HP's new chairman, Mr. (Ray) Lane, will keep HP's new CEO, Mr. Apotheker, far far away from the courthouse until this trial is over," Ellison wrote.

Redwood

City-based Oracle is seeking more than $2 billion in damages from its longtime rival, SAP, in a case in which SAP has acknowledged that workers at its TomorrowNow subsidiary accessed Oracle's computers and used pirated copies of Oracle's software to perform maintenance services for TomorrowNow customers.

SAP maintains that Apotheker and other top executives didn't initially know about the abuses and moved to stop them when they found out. But Oracle has argued that Apotheker and other top executives knew about TomorrowNow's practices and allowed them to continue for more than three years.

Oracle has listed Apotheker as a prospective witness in the trial, which is scheduled to start Monday, the same day Apotheker is to start work at HP. While declining to say whether Apotheker will testify, HP noted in a statement that he previously gave a sworn deposition in the case.

"Given Léo's limited knowledge of and role in the matter," the statement said, Oracle's effort to call him as a trial witness "is no more than an effort to harass him and interfere with his duties and responsibilities as HP's CEO."

Contact Brandon Bailey at 408-920-5022; follow him at Twitter.com/BrandonBailey.

Advertisement

**SFGate.com**

## As trial looms, Oracle taking aim at HP's new CEO

By JORDAN ROBERTSON, AP Technology Writer
Wednesday, October 27, 2010

(10-27) 16:51 PDT SAN FRANCISCO, (AP) --

Oracle Corp. CEO Larry Ellison is escalating his attacks on his friend-turned-foe Hewlett-Packard Co.

Ellison claims he has proof that HP's new CEO, Leo Apotheker, oversaw a corporate-espionage scheme at a previous employer, SAP AG, that involved the theft of Oracle software.

Oracle's trial against SAP is scheduled to start Monday in California, the same day Apotheker is scheduled to start work at HP.

The trial wasn't expected to produce fireworks, since SAP has acknowledged that a subsidiary stole Oracle customer-support materials, and the two sides are now fighting only over damages.

But it's now shaping up to be a spectacle involving three of the biggest companies in enterprise computing.

HP said that Apotheker didn't supervise the subsidiary and shut it down shortly after he took the reins at SAP in 2008. SAP called Ellison's comments an attempt to create a "sideshow."

The trial has let Ellison drag several old foes at once into a public brawl.

One is SAP. Oracle has long competed with SAP in business software.

Another is Apotheker, who spent more than 20 years at SAP, most recently as CEO. He went head-to-head against Oracle in software for years, and now at HP, will do the same in computer servers, earning him Ellison's wrath twice over.

And still another is Ray Lane, a former Oracle president whom Ellison ousted in a high-profile power struggle a decade ago, and who is HP's new chairman.

Ellison has broadcast his animosity for Apotheker and Lane in a series of news releases.

He criticized Apotheker for not immediately shutting down the SAP division that stole Oracle documents, TomorrowNow, when he was named SAP's co-CEO in April 2008, and Lane for coming to Apotheker's defense.

In July 2008, SAP announced plans to shut the troubled subsidiary, and several months later it was

officially closed.

"Why so long? We'd like to know," Ellison said. "Ray Lane and the rest of the HP board do not want anyone to know. That's the new HP Way with Ray in charge and Leo on the run. It's time to change the HP tagline from 'Invent' to 'Steal'."

SAP called Ellison's comments show his "personal campaign against HP and desire to create a sideshow."

"Our focus in the case is on determining fair and reasonable compensation, and we won't let personal vendettas interfere with the court's judgment," SAP said in a statement Wednesday.

HP emphasized that Apotheker wasn't responsible for the problematic SAP division and had little knowledge about its innerworkings.

"Given Leo's limited knowledge of and role in the matter, Oracle's last-minute effort to require him to appear live at trial is no more than an effort to harass him and interfere with his duties and responsibilities as HP's CEO," HP said.

http://sfgate.com/cgi-bin/article.cgi?f=/n/a/2010/10/27/financial/f134028D10.DTL

## **CONTRIBUTORY INFRINGEMENT**

One defendant may be liable for copyright infringement committed by another defendant based on principles of contributory liability. For purposes of this case, SAP America and SAP AG agree they are contributorily liable for the infringement of Oracle's copyrights committed by TomorrowNow.

In general, to prove contributory infringement, a plaintiff may show that:

1) the defendant reasonably should have known of the infringing activity; and

2) the defendant materially contributed to the infringing activity.

A defendant who reasonably should have known of the infringement, had the ability to prevent further infringement, and failed to take such steps, satisfies the two elements for contributory infringement.

Authority: Ninth Circuit Manual of Model Jury Instructions, Instruction 17.21 (Civil) (modified); D.I 762 (Order RE Motions for Partial Summary Judgment) at 8; *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).