Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:    (832) 239-3939
Facsimile:    (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED JUDGMENT** |
| v. | |
| SAP AG, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. The Court Should Decline to Award Prejudgment Interest because Such Interest Is Not Justified in the Face of the Substantial Jury Award ....................... 2

        1. Oracle Asked the Jury to Consider Oracle's Lost Investment Opportunities Over Time When Calculating Its License Fee, and It Should Not Be Permitted to Double Collect Now ..................................... 3

        2. The Court Should Also Decline to Award Prejudgment Interest because Oracle's $1.3 Billion Jury Award Is More Than Sufficient to Satisfy the Goals of the Copyright Act .................................................... 6

        3. If the Court Were to Award Prejudgment Interest, It Should Be at the Rate Set Forth in 28 U.S.C. § 1961 ......................................................... 8

        4. If the Court Awards Prejudgment Interest, the Interest Should Only Accrue from September 29, 2006, Forward ................................................. 9

    B. The Court Should Allow Destruction of All Infringing Intellectual Property ...... 11

        1. The Court Can and Should Order That All Infringing Materials Be Destroyed ................................................................................................... 12

        2. The Infringing Materials Ultimately Must Be Destroyed, Not Returned .................................................................................................... 12

        3. The Infringing Material Must Be Preserved for Now .............................. 14

    C. The Final Judgment Should Include the Court's Dismissal of Several of Plaintiffs' Claims .................................................................................................. 15

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Baldwin Cooke Co. v. Keith Clark, Inc.*,
 420 F. Supp. 404 (E.D. Ill. 1976) ............................................................................................ 7

*Berry v. Hawaii Express Serv., Inc.*,
 No. 03-00385 SOM/LEK, 2006 U.S. Dist. LEXIS 13718 (D. Haw. March 9, 2006) ............... 14

*Brayton Purcell LLP v. Recordon & Recordon*,
 No. C-04-4995, 2007 WL 420122 (N.D. Cal. Feb. 6, 2007) ....................................................... 6

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*,
 No. 06-CV-01848-H, 2009 WL 160235 (S.D. Cal. Jan. 20, 2009) ........................................ 6, 8

*Dishman v. UNUM Life Ins. Co. of Am.*,
 269 F.3d 974 (9th Cir. 2001) ..................................................................................................... 6

*Fleming v. Parametric Tech. Corp.*,
 Nos. 97-56262, 97-56350, 1999 WL 451764 (9th Cir. June 29, 1999) ..................................... 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
 886 F.2d 1545 (9th Cir. 1989) ............................................................................................... 8, 9

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
 237 F.3d 1154 (9th Cir. 2001) ................................................................................................... 9

*In Design v. Lauren Knitwear Corp.*,
 782 F. Supp. 824 (S.D.N.Y. 1991) ............................................................................... 3, 6, 7, 8

*In re Nucorp Energy, Inc.*,
 902 F.2d 729 (9th Cir. 1990) ..................................................................................................... 9

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
 833 F.2d 1365 (9th Cir. 1987) ............................................................................................... 3, 6

*N. Am. Karaoke-Works Trade Assoc., Inc., v. Entral Group Int'l, LLC*,
 No. 06 Civ. 5158 (LTS)(MHO), 2010 U.S. Dist. LEXIS 53385 (S.D.N.Y. May 27, 2010) ..... 12

*Pietz v. Amato*,
 Nos. 89-35413, 89-35442, 1990 WL 160970 (9th Cir. Oct. 22, 1990) ..................................... 6

*Polar Bear Prods., Inc. v. Timex Corp.*,
 384 F.3d 700 (9th Cir. 2004) ..................................................................................... 2, 3, 9, 10

*Procter & Gamble Co. v. Haugen*,
 No. 1:95-CV-94 TS, 2008 WL 2518719 (D. Utah June 20, 2008) .......................................... 10

*Robert R. Jones Assocs., Inc. v. Nino Homes*,
 858 F.2d 274 (6th Cir. 1988) ..................................................................................................... 7

*Roger Miller Music, Inc. v. Sony/ATV Pub., LLC*,
 No. 3:04-1132, 2010 WL 1026980 (M.D. Tenn. Mar. 18, 2010) .............................................. 7

*SEB S.A. v. Sunbeam Corp.*,
 No. 02-80257-CIV, 2004 WL 5564188 (S.D. Fla. Mar. 22, 2004) .......................................... 10

*Segrets, Inc. v. Gillman Knitwear Co., Inc.*,
 42 F. Supp. 2d 58 (D. Mass. 1998), *vacated in part on other grounds*,
 207 F.3d 56 (1st Cir. 2000) ....................................................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Sony BMG Music Entm't v. Cody*,
   No. 1:08-cv-00590-LJO-SMS, 2009 U.S. Dist. LEXIS 100092
   (E.D. Cal. Oct. 26, 2009) .................................................................................................. 12

*Tracy v. Skate Key, Inc.*,
   No. 86 CIV. 3439 (MBM), 1990 WL 9855 (S.D.N.Y. Feb. 2, 1990) .................................. 7

*U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*,
   Nos. 89-1081, 89-1085, 1991 WL 64957 (4th Cir. Apr. 29, 1991) ..................................... 6

*UMG Recordings v. Fredrickson*,
   No. 1:08-cv-00589-OWW-SMS, 2008 U.S. Dist. LEXIS 100123
   (E.D. Cal. Dec. 1, 2008) .................................................................................................... 12

*UMG Recordings v. Fredrickson*,
   No. 1:08-cv-00589-OWW-SMS, 2009 U.S. Dist. LEXIS 11926
   (E.D. Cal. Feb. 17, 2009) .................................................................................................. 12

**Statutes**

17 U.S.C. § 503 ............................................................................................................*passim*

28 U.S.C. § 1961 .................................................................................................... 1, 8, 9

**Other Authorities**

3 M. Nimmer, Nimmer on Copyright § 14 (1990) ............................................................. 7

## I. INTRODUCTION

After receiving a record-breaking, unsupportable, and excessive copyright verdict of $1.3 billion, Plaintiffs Oracle International Corporation, Oracle USA, Inc., and Siebel Systems, Inc. (collectively "Oracle" or "Plaintiffs") now seek to add more than $211 million in additional damages under the auspices of prejudgment interest. They also seek to impose burdensome and needless requirements on Defendants relating to disposition of infringing material, and they refuse to include in their proposed final judgment the Court's previous dismissal of various claims against Defendants. The Court should reject all of these positions and should instead enter Defendants' proposed final judgment, which is attached to this Response as Exhibit A.

First, the Court should decline to award any prejudgment interest, just as many other courts entering judgment on copyright claims have done. Prejudgment interest is available, if at all, for the sole purpose of *compensating* a plaintiff. As Defendants will argue in their post-trial motions, the jury's verdict was not supported, excessive, and should be vacated for a variety of reasons. Setting those arguments aside, however, and without suggesting that the jury award should stand, Oracle cannot show that it is entitled to prejudgment interest because:

- Oracle asked the jury to make it whole through a license fee damages award and encouraged the jury to increase the hypothetical fee based on lost investment opportunities, so prejudgment interest would be duplicative of this substantial award.
- Even if prejudgment interest were not duplicative, the jury's award, if it stands, more than adequately accomplishes the goals of the Copyright Act, as it at least fully compensates, and, really, overcompensates Oracle (particularly considering that by receiving its money today, Oracle completely avoided the economic collapse of 2007).
- Finally, even if the Court were to choose to award interest, it should not do so according to the belatedly submitted calculations of Oracle's expert witness Paul Meyer. Instead, it should, like so many other courts, follow 28 U.S.C. § 1961 and award interest at a flat rate equal to the weekly average 1-year constant maturity Treasury yield (which is currently .30%), compounded annually, and computed from the only non-speculative date from which interest could accrue—September 29, 2006.

1    Second, Oracle's request that Defendants "make such disposition as Oracle requests of all
2    of Defendants' infringing materials" "within 30 days" does not follow the statutory language of 17
3    U.S.C. § 503 (which allows the Court to "order the destruction"), imposes an arbitrary time frame
4    that fails to account for the ongoing, related litigation, and is so vague that it allows for the return
5    (rather than destruction) of the infringing materials, a virtually impossible feat.  The infringing
6    materials are mostly contained on computer servers and computer hard drives that cannot separate
7    the infringing materials from the non-infringing materials.  The physical inability to segregate the
8    infringing data would result in TomorrowNow having to turn over substantial amounts of non-
9    infringing data, such as employees' personal e-mails, privileged documents, and third party
10   confidential information.  Even were segregation possible, simply **locating** all such materials, let
11   alone "returning" them, would cost millions of dollars.  The Court should not encourage such
12   waste.  Instead, the Court should order TomorrowNow (the Defendant in possession of the
13   materials at issue) to destroy the infringing materials, which it will accomplish by destroying, in
14   their entirety, the computer servers and hard drives containing the infringing materials.

15   Third, as the final order in this case, the proposed judgment should include a disposition
16   of **all** claims, including those on which Plaintiffs were not successful.  Oracle has offered no
17   support for its refusal to include a final disposition for all previously dismissed claims in its
18   proposed judgment, and Defendants ask that the Court rectify that omission.

19   **II.    ARGUMENT**

20   **A.    The Court Should Decline to Award Prejudgment Interest because Such Interest Is Not Justified in the Face of the Substantial Jury Award.**
21

22   In its Memorandum in Support of Proposed Judgment (ECF No. 1009) ("Memorandum"),
23   Oracle argues that under Ninth Circuit precedent, it is "necessary" for district courts to award
24   prejudgment interest in copyright cases, citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d
25   700, 718 (9th Cir. 2004).  Memorandum at 3.  Oracle mischaracterizes *Polar Bear* by cropping
26   the single word "necessary" out of context.  The Ninth Circuit actually held that "prejudgment
27   interest *may be* necessary" in *some* cases to fully compensate *some* plaintiffs, and thus such
28   interest is an "available [remedy] under the Copyright Act of 1976."  *Polar Bear*, 384 F.3d at 716,

718 (emphasis added). Whether to award prejudgment interest is left solely to the "district court's sound discretion"—which is why *Polar Bear* explicitly took "no position on whether prejudgment interest should or should not be awarded" on remand. *Id*. at 716 n.12.

Several factors should guide the Court's discretion in determining whether Oracle is entitled to an additional $200 million in prejudgment interest. First, the Court should consider whether the jury's award might have already taken the time value of money into account. *See, e.g.*, *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1375 (9th Cir. 1987) (affirming district court's denial of prejudgment interest where the plaintiff had requested that the jury take time value of money into account when rendering its verdict). The Court should also consider whether an award of prejudgment interest in this case would further the purposes of the Copyright Act. *See Polar Bear*, 384 F.3d at 718 (availability of prejudgment interest as remedy in a copyright case "hinges on whether such an award would further the [copyright] statute's purpose"). Many courts have found that prejudgment interest does not further the interests of the copyright statute where, as here, the plaintiff has already been awarded huge sums of money. *See, e.g.*, *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 837 (S.D.N.Y. 1991). As explained more fully below, both of these factors heavily weigh against prejudgment interest in this case, and the Court should therefore decline to award it.

 **1.  Oracle Asked the Jury to Consider Oracle's Lost Investment Opportunities Over Time When Calculating Its License Fee, and It Should Not Be Permitted to Double Collect Now.**

In this case, the Court should exercise its discretion and choose not to pile prejudgment interest atop Oracle's record-smashing damages award. It should decline to award interest, first and foremost, because such an award could constitute a double recovery for Oracle. Beginning with its opening statement and repeatedly throughout the trial, Oracle demanded full compensation for its "investment risk" and for its lost opportunities to invest in R&D. *See, e.g.*, Opening Statement at 343 (Declaration of Tharan Gregory Lanier ("Lanier Decl.") ¶ 1, Ex. 1). Oracle's executives testified that Oracle's claim for hypothetical license fees represented a "fair and reasonable damages award," without any caveat that hundreds of millions of dollars of interest would need to be added. *See, e.g.*, Lanier Decl. ¶ 6, Ex. 6 (11/19/10 Trial Tr.) at 1940:14-

1    20.    Oracle further asserted that the $408 million of its actual lost profits plus infringer's profits
2    would not "fully compensate Oracle in this case," and that the "only way" to compensate Oracle
3    was through a hypothetical license fee. Lanier Decl. ¶ 4, Ex. 4 (11/9/10 Trial Tr.) at 1022:16-24.
4    In making these arguments and presenting this evidence, Oracle led the jury to believe that an
5    award based on a hypothetical license fee would fully compensate Oracle for lost investment
6    opportunities, the functional equivalent of the "time value of the lost license fees" that it now
7    seeks through an award of prejudgment interest. Memorandum at 5.
8            After Oracle presented the jury with a blizzard of possible fair-market-value numbers, the
9    jury rendered its $1.3 billion verdict. While Defendants plan to challenge that verdict on a variety
10   of grounds in their post-judgment motions, including that it is excessive and overcompensates
11   Oracle, Oracle cannot possibly show that such a huge award was not meant to fully compensate
12   Oracle, including for its claimed lost investment opportunities. Even as Oracle's Memorandum
13   demands hundreds of millions of dollars in addition to the jury's award, Oracle admits that one
14   element of its damages claim at trial was Oracle's purported loss of the "ability to invest in future
15   product development and . . . pay[ ] for its own acquisitions." Memorandum at 6 n.2.
16           In fact, Oracle specifically asked the jury to increase the hypothetical license fee to
17   account for its lost investment opportunities. During the trial, Oracle repeatedly asserted that it
18   reinvests support fees in R&D for future products. *See, e.g.*, Lanier Decl. ¶¶ 1, 2, 3, 7, Ex. 1
19   (11/2/10 Trial Tr.) at 335 (Oracle uses "the fees that customers pay for support every year . . . to
20   reinvest into its business, to pay the thousands of developers that are working on developing the
21   support and working on developing the next generation of product."), 453 (Oracle uses annual
22   fees and support fees for current products to develop and create new products), 458 (development
23   funded by customer support revenue); Ex. 13 (11/4/10 Trial Tr.) at 528 (maintenance revenues
24   "use[d] to improve the product"; increase in customers means a "bigger R&D budget"), 529-30
25   (support revenue used for research and development); Ex. 3 (11/8/10 Trial Tr.) at 856
26   (maintenance profits are spent on R&D and acquisitions); Ex. 7 (11/22/10 Trial Tr.) at 2040
27   (profits from individual customers pays for research and development). Oracle then asked the
28   jury to consider when determining the hypothetical license fee award that Oracle was not able to

re-invest the support fees that would be lost to SAP in further R&D and acquisitions. *See* Lanier Decl. ¶¶ 4, 5, Ex. 4 (11/9/10 Trial Tr.) at 973-74 (calculation takes into account SAP's alleged goal of disrupting cash flow and thus disrupting development); Ex. 5 (11/12/10 Trial Tr.) at 1333 (during hypothetical negotiation, Oracle would have taken into account need for continued investment in products). Oracle thus sought to inflate the jury's award by leading it to believe that it should compensate Oracle for these lost investment opportunities. An additional award of prejudgment interest would not "compensate Oracle for the time value of the lost license fees" as it argues (Memorandum at 5), but rather would result in a double recovery of the lost investment opportunity.

Oracle may argue that its expert, Meyer, claimed to have performed a "discounting" analysis that brought the hypothetical license numbers back to their present values as of the dates of the commencement of infringement, and thus the jury necessarily performed the same discounting. *See, e.g.*, Lanier Decl. ¶ 4, Ex. 4 (11/9/10 Trial Tr.) at 993:9-994:22, 996:19-998:7. There are two fatal flaws with this argument. First, the concept of discounting to present value is esoteric and was only vaguely explained (*see id.*), and Mr. Meyer never disclosed to the jury that Oracle would request hundreds of millions in additional compensation in the form of interest. Thus, there is no basis upon which the Court could conclude that the jury understood what "discounting" meant, or that it would permit Oracle to recover hundreds of millions of dollars of interest in addition to the claimed lost investment opportunity. Second, because the jury did not accept any specific valuation suggested by Meyer, there is no reason to believe that the jury relied on Meyer's purported discounting at all. The only reasonable inference is that the jury chose a number that it was led to believe was full compensation to make Oracle whole for all purposes. Having failed to require the jury to make such a specific finding that would reveal whether the jury included lost investment value in its verdict, there is a huge risk of double recovery.

Thus, Oracle has already asked for the time value of its money, insofar as the jury was encouraged to assign make-whole damages and increase the license fee to account for lost R&D opportunities, and Oracle cannot show that the jury's award did not increase accordingly. That alone should defeat Oracle's demand for prejudgment interest, as prejudgment interest is

1  compensatory and not punitive in nature. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d
2  974, 988 (9th Cir. 2001) (reversing district court's award of prejudgment interest as a punitive
3  measure, and noting that "[p]rejudgment interest is an element of compensation, not a penalty").
4  Several courts have declined to award prejudgment interest where such an award could be
5  duplicative of the jury's verdict. *See, e.g.*, *Landes Const. Co.*, 833 F.2d at 1375 (affirming district
6  court's denial of prejudgment interest where the plaintiff had requested that the jury take time
7  value of money into account when rendering its verdict); *Fleming v. Parametric Tech. Corp.*, Nos.
8  97-56262, 97-56350, 1999 WL 451764, at *2 (9th Cir. June 29, 1999) (affirming district court's
9  decision to deny prejudgment interest where "it is quite possible that the time value of money was
10 effectively taken into account" in the jury's award); *Pietz v. Amato*, Nos. 89-35413, 89-35442,
11 1990 WL 160970, at *2 (9th Cir. Oct. 22, 1990) (same).

**2. The Court Should Also Decline to Award Prejudgment Interest because Oracle's $1.3 Billion Jury Award Is More Than Sufficient to Satisfy the Goals of the Copyright Act.**

14  Even if prejudgment interest could not have been included in Oracle's large jury award,
15 and assuming the jury verdict is not set aside as excessive or unsupported by law, the jury's
16 award more than adequately compensates Oracle for any loss it incurred due to infringement.
17 Courts generally do not award prejudgment interest in cases where, as here, plaintiffs will receive
18 "substantial" compensatory damages. *Brayton Purcell LLP v. Recordon & Recordon*, No. C-04-
19 4995, 2007 WL 420122, at *10 (N.D. Cal. Feb. 6, 2007). Indeed, a "trend" has developed in
20 copyright law over the past twenty years to withhold prejudgment interest whenever "an award
21 without prejudgment interest will sufficiently compensate the plaintiff and deter the defendant
22 from future infringement." *In Design*, 782 F. Supp. at 837; *see also, e.g.*, *Brighton Collectibles,*
23 *Inc. v. Coldwater Creek, Inc.*, No. 06-CV-01848-H, 2009 WL 160235, at *5 (S.D. Cal. Jan. 20,
24 2009) (declining to award prejudgment interest for willful infringement because "the jury award
25 adequately compensates Brighton for the damages in this case"); *Brayton Purcell*, 2007 WL
26 420122, at *10 (declining to award prejudgment interest in part because the large damages award
27 provided an "adequate deterrent" to future infringement); *U.S. Payphone, Inc. v. Executives*
28 *Unlimited of Durham, Inc.*, Nos. 89-1081, 89-1085, 1991 WL 64957, at *4 (4th Cir. Apr. 29,

1991) (declining to award prejudgment interest because "we are persuaded that the award to Payphone of its actual damages plus Executive's profits, if any, will sufficiently compensate Payphone for its loss"); *Tracy v. Skate Key, Inc.*, No. 86 CIV. 3439 (MBM), 1990 WL 9855, at *3 (S.D.N.Y. Feb. 2, 1990) (refusing to award prejudgment interest because "the sum awarded by the jury is sufficient to serve all the legitimate goals of the copyright laws, including both compensation of plaintiffs and deterrence of potential defendants"); *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 282 (6th Cir. 1988) ("We believe the measure of damages applied in this case is clearly sufficient to promote innovation in architectural design and deter unauthorized exploitation of someone else's creative expressions. . . . Therefore, we reverse and vacate the award of prejudgment interest.") (*citing Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F. Supp. 404, 409 (E.D. Ill. 1976) (even in case of flagrant infringement "cumulative award of defendant's profits and plaintiff's damages is sufficiently severe [so] as to deter others from like conduct without the need for an award of prejudgment interest")).

This trend of declining to add prejudgment interest to large copyright awards is justified by "the purposes of the Copyright Act . . . to compensate the plaintiff and deter the defendant from future infringement." *In Design*, 782 F. Supp. at 837 (citing 3 M. Nimmer, Nimmer on Copyright § 14.01[A] at 14-4 to 14-5 (1990)); *see also Segrets, Inc. v. Gillman Knitwear Co., Inc.*, 42 F. Supp. 2d 58, 86 (D. Mass. 1998), *vacated in part on other grounds*, 207 F.3d 56 (1st Cir. 2000) ("[S]tatutory damages and attorneys' fees are sufficient to serve the legitimate goals of the Copyright Act," thus making "an award of prejudgment interest . . . unnecessary."). Under this logic, it is particularly appropriate to withhold prejudgment interest when "the measure of damages [is] sufficient to deter unauthorized exploitation." *Roger Miller Music, Inc. v. Sony/ATV Pub., LLC*, No. 3:04-1132, 2010 WL 1026980, at *3 (M.D. Tenn. Mar. 18, 2010).

Oracle cannot seriously claim that $1.3 billion is not enough to compensate and deter. As has been widely reported, and as Oracle itself proclaimed in its public statement following the verdict, the $1.3 billion judgment in this case "is the largest amount ever awarded" for copyright infringement. Oracle.com, Oracle Issues Statement on Oracle v. SAP Verdict (available online at http://www.oracle.com/us/corporate/press/189813) (last checked December 11, 2010). The

record-breaking award both fully compensates Oracle for Defendants' infringement (which caused little actual damage to Oracle's business), and imposes a tremendous burden on SAP that certainly would fully "deter" it "from future infringement."[1] *In Design*, 782 F. Supp. at 837. Indeed, Oracle seems to agree that the deterrence function is fully served by the damages award, since it has dropped its previous demands for a permanent injunction against further infringement by Defendants. *See* ECF No. 1013. None of the purposes of the Copyright Act would be further served by adding any more, let alone $211 million, to Oracle's already staggering award. Moreover, prejudgment interest should also be denied because the $1.3 billion award vastly exceeds any actual lost profits suffered by Oracle.

### 3. If the Court Were to Award Prejudgment Interest, It Should Be at the Rate Set Forth in 28 U.S.C. § 1961.

Should the Court deem it necessary to award any prejudgment interest in this case, it should not adopt the inflated calculations of Paul Meyer. Meyer's calculations dramatically increase the flat interest rate set forth in 28 U.S.C. § 1961. Instead, if any prejudgment interest is to be awarded, the Court should follow 28 U.S.C. § 1961 and award a flat rate of interest at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," compounded annually. 28 U.S.C. § 1961(a)-(b). Should the Court enter judgment this week, that rate would be .30%.

Meyer's calculation assumes that prejudgment interest should be calculated at a fluctuating interest rate, not at the flat rate described in 28 U.S.C. § 1961. Oracle cites two ERISA cases to support that assumption (Memorandum at 5-6), but fails to note that Ninth Circuit cases governing prejudgment interest in **copyright** claims do not support the idea. Instead, copyright awards in the Ninth Circuit have been tied to the flat interest rate outlined in 28 U.S.C. § 1961. In *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545 (9th Cir. 1989), the

---

[1] Oracle implies that prejudgment interest is always "necessary" to deter knowing infringement. Memorandum at 4. The case law, however, does not bear out that assertion. *See, e.g.*, *Brighton Collectibles, Inc.*, 2009 WL 160235 (declining to award prejudgment interest in face of jury's willful infringement finding).

1  Ninth Circuit remanded the case to the district court to award prejudgment interest under the 1909
2  Copyright Act. *Id.* at 1553.  The court instructed that prejudgment interest should be calculated
3  based on the fifty-two week treasury bill rate, "the same rate on which post-judgment interest is
4  based," and cited to 28 U.S.C. § 1961. *Id.* at 1553 & n.12.  28 U.S.C. § 1961, in turn, expressly
5  states that the interest award should be calculated using the treasury bill rate "for the calendar
6  week preceding the date of judgment." *Polar Bear* then extended the holding of *Frank Music* to
7  the 1976 Copyright Act. *See Polar Bear*, 384 F.3d at 718.  Even outside of the copyright context,
8  the Ninth Circuit has repeatedly affirmed district courts' decisions to award prejudgment interest
9  at the flat, post-judgment interest rate outlined in 28 U.S.C. § 1961. *See Grosz-Salomon v. Paul*
10 *Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001) (affirming district court's decision to
11 set the prejudgment interest rate at the treasury bill rate for the week preceding judgment in
12 ERISA case, a practice the Ninth Circuit described as "the norm" for prejudgment interest); *In re*
13 *Nucorp Energy, Inc.*, 902 F.2d 729, 734 (9th Cir. 1990) (reversing bankruptcy court's
14 prejudgment interest award and instructing the court to enter the prejudgment interest amount
15 based on the rate prescribed by 28 U.S.C. § 1961).

16      Applying this simple and supportable formula would result in a pre-judgment interest
17 award that is orders of magnitude below Oracle's inflated request.  By way of example, were the
18 Court to apply the current .30% flat rate, compounded annually, to the damages as allocated
19 under Meyer's methodology, Oracle's total pre-judgment interest in this case would be
20 $22,701,278.  *See* Declaration of Stephen K. Clarke ("Clarke Decl.") ¶ 4.

21           **4.**     **If the Court Awards Prejudgment Interest, the Interest Should Only Accrue from September 29, 2006, Forward.**
22

23      Meyer's prejudgment interest calculation is erroneous for another reason.  It artificially
24 inflates the amount of prejudgment interest by assuming that the vast majority of the jury's
25 license award pertained to the PeopleSoft and Oracle database software, and thus the bulk of the
26 award should bear interest from January 2005.  (Memorandum at Ex. A Note 4.)  Meyer can only
27 support this assumption by pointing to his own damages calculations, which were greater than the
28 actual verdict and which the jury obviously did not adopt *in toto*, and speculating without support

1  that the jury apportioned its damages figure just as Meyer did.

2  The jury did not find—and Oracle did not ask it to find—what portion of the award it
3  attributed to each infringed product. *See* Special Verdict Form (ECF No. 1004). In fact, based on
4  the evidence presented, the jury could have rested its damages award entirely on the Siebel
5  license negotiated in September 2006. Oracle executives repeatedly testified that the Siebel
6  license alone would have been worth over $1 billion. Lanier Decl. ¶ 2, Ex. 2 (11/4/10 Trial. Tr.)
7  at 541:9-542:14 (former Oracle President Charles Phillips testifying that his "opening number"
8  for a license fee for the Siebel database "would have [had] a 'B' on it"). There is thus no basis
9  for Meyer's speculation that the jury valued the licenses at issue in the same proportion as he did.
10 Such speculation is flatly prohibited when assessing copyright damages. *See, e.g.*, *Polar Bear*,
11 384 F.3d at 710 (reversing portion of plaintiff's damages award because it was speculative).

12 For this reason, the few district courts that have calculated prejudgment interest on the
13 basis of a general damages award have timed the interest from the latest date from which it could
14 accrue. As one court explained, "where the jury did not fix the damages as of dates certain . . .
15 the Court finds that Plaintiff will be fairly compensated if prejudgment interest begins to accrue
16 on the last day of that period." *Procter & Gamble Co. v. Haugen*, No. 1:95-CV-94 TS, 2008 WL
17 2518719, at *1-2 (D. Utah June 20, 2008); *see also SEB S.A. v. Sunbeam Corp.*, No. 02-80257-
18 CIV, 2004 WL 5564188, at *1 (S.D. Fla. Mar. 22, 2004) (because there were "no facts . . .
19 accurately instruct[ing] [the court] as to when Pentalpha's damages arose" and because the
20 plaintiff could have requested a jury form asking the jury to determine "the date(s) and models
21 upon which the damages arose" the court declined to "speculate as to the jury's reasoning when it
22 awarded damages" and awarded prejudgment interest only from date of the verdict).
23 Accordingly, any prejudgment interest should be calculated from the last hypothetical
24 negotiation, which occurred on September 29, 2006. *See* Lanier Decl. ¶ 7, Ex. 7 (11/22/10 Trial
25 Tr.) at 2217:2-8. Calculating from September 29, 2006 and applying Oracle's proposed
26 fluctuating interest rate, the total pre-judgment interest award is $154,371,415. *See* Clarke Decl.
27 ¶ 6. Using Defendants' suggested post-judgment flat rate from September 29, 2006, the total
28 amount is $16,591,309. *See* Clarke Decl. ¶ 5.

**B.     The Court Should Allow Destruction of All Infringing Intellectual Property.**

Paragraph (5) of Oracle's proposed judgment requires Defendants to "make such *disposition as Oracle requests* of all of Defendants' infringing materials" "within **30 days**" of entry of judgment ECF No. 1009 at 2 (emphasis added).  Noticeably, this does not follow the statutory language of 17 U.S.C. § 503 (permitting the Court to "order the destruction of" infringing materials), imposes an arbitrary time frame that does not account for ongoing, related litigation (including post-judgment motions, a potential retrial, and an ongoing investigation by the United States Department of Justice ("DOJ")), and is vague as to what Oracle may "request," including whether Oracle will request the return or destruction of the materials.

The materials found to be infringing, which were kept by Defendant TomorrowNow, can only be **destroyed** (not returned) after all ongoing related litigation is complete.  The infringing material is mostly contained on computer servers and computer hard drives belonging to TomorrowNow that cannot be segregated in such a way to separate the infringing materials from the non-infringing materials.  The physical inability to segregate the infringing data would result in Defendants having to provide to Oracle substantial amounts of non-infringing data (*e.g.*, employees' personal e-mails, privileged documents, confidential information of third parties, etc.). Moreover, even if the hard drives could be physically segregated, the parties and their experts have not attempted to isolate all claimed infringing material and have not even been able to agree on a protocol that would specifically identify each separate component of infringing material.

Under these circumstances, the proper remedy is to order that TomorrowNow destroy the materials found to have violated the copyrights at issue within 90 days after the DOJ has cleared Defendants to do so and after all related litigation is complete.[2]  TomorrowNow will destroy, at its own cost, all materials (computer servers, hard drives, etc.), in their entirety, that could contain any infringing materials at issue in this case, thereby avoiding the issues identified above. Defendants do not object to Oracle representatives monitoring or attending this destruction.  The deadline for the destruction should be increased to ninety (90) days after the DOJ clears

---

[2] Defendants, however, are willing and able to return the CD binders at issue because that material is already separately segregated.  Thus, the CD binders can physically be provided to Oracle once the DOJ has cleared Defendants to do so and all ongoing litigation is complete.

Defendants to do so and all ongoing related litigation is complete, to allow for proper coordination with Oracle and the vendors involved in the destruction of the data and related hardware.

### 1. The Court Can and Should Order That All Infringing Materials Be Destroyed.

As part of a final judgment, a court may "order the destruction **or** other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights . . . ." *See* 17 U.S.C. § 503(b) (emphasis added). The statute itself is disjunctive and the plain language allows a court flexibility to craft an appropriate remedy based on the particular facts and circumstances of the case. Where the infringing materials were installed, downloaded, or stored on a computer or network, courts often order defendants to destroy the materials rather than return them. *See UMG Recordings v. Fredrickson*, No. 1:08-cv-00589-OWW-SMS, 2008 U.S. Dist. LEXIS 100123, at *20-21 (E.D. Cal. Dec. 1, 2008) adopted by *UMG Recordings v. Fredrickson*, No. 1:08-cv-00589-OWW-SMS, 2009 U.S. Dist. LEXIS 11926, at *3-4 (E.D. Cal. Feb. 17, 2009); *Sony BMG Music Entm't v. Cody*, No. 1:08-cv-00590-LJO-SMS, 2009 U.S. Dist. LEXIS 100092, at *22-24 (E.D. Cal. Oct. 26, 2009). This is because destroying the materials protects the plaintiffs from further harm while ensuring the defendants do not lose access to non-infringing materials on their computer systems. *See generally* UMG Recordings, 2008 U.S. Dist. LEXIS 100123, at *17-19. Further, where the infringing activities have ceased, impoundment and forfeiture are unnecessary. *See, e.g.*, *N. Am. Karaoke-Works Trade Assoc., Inc., v. Entral Group Int'l, LLC*, No. 06 Civ. 5158 (LTS)(MHO), 2010 U.S. Dist. LEXIS 53385, at *7-10 (S.D.N.Y. May 27, 2010) (overruling magistrate recommendation that material found to be infringing should be returned because the hard drives contained non-infringing material and the infringing activities had ceased).

### 2. The Infringing Materials Ultimately Must Be Destroyed, Not Returned.

It is impractical and cost prohibitive, if not impossible, to return all of the infringing materials in this case. While not detailed or discussed by Oracle, the infringing materials at issue in this case are materials stored and previously used by TomorrowNow, including software CDs,

complete software installations, partial software installations, and small pieces of software code. They are stored on/in: (1) CD binders kept by TomorrowNow; (2) TomorrowNow servers, including complex arrayed servers and other computer devices; (3) TomorrowNow individual custodian hard drives and computers; (4) TomorrowNow email files; and (5) TomorrowNow internal customer management databases. Because these materials are stored in electronic form on servers, hard drives, and databases, they cannot simply be segregated from other materials (including personal data and customer confidential data). *See* Declaration of M. Gary Funck ("Funck Decl.") ¶ 6.

Specifically, when computers are used to store data semi-permanently, it is normally written on a hard drive. *See id.* Hard drives contain several disks called platters, each covered with a thin magnetic coating. *See id.* They also have a read/write head used to write data to the hard drive and read it off again when it is needed. *See id.* The platters spin very quickly, and the read/write heads pivot back and forth to quickly read information from any part of the hard drive. *See id.* There is no way to return a portion of data on a given platter without returning the entire platter. *See id.* It is simply not reasonable or practical to return all of the infringing materials at issue in this case because the servers, hard drives, and databases (*i.e.*, "platters") all contain data to which Oracle has no rights and which would give Oracle access to personal, customer, and third party confidential materials. *See* Declaration of William R. Thomas ("Thomas Decl.") ¶¶ 6-7; Funck Decl. ¶¶ 3, 6. None of this other material is infringing or subject to a Section 503 order.

Moreover, even attempting to locate all of the materials found to be infringing would be time and cost prohibitive, especially given that trial is now over and this was not previously done. *See* Funck Decl. ¶¶ 3-5. For context, with regard to the servers, Defendants made available approximately 45 TomorrowNow's support services servers for Plaintiffs review. *See* Declaration of Joshua L. Fuchs ("Fuchs Decl.") ¶ 2. From these servers alone, approximately 12.5 terabytes of data was requested and produced. *See* Fuchs Decl. ¶ 2. Some of these servers contain complex array configurations that store data across multiple hard drives. Thomas Decl. ¶ 3. With regard to individual employees, Defendants collected approximately 300 hard drives from TomorrowNow employees over time. *See* Fuchs Decl. ¶ 4; Thomas Decl. ¶ 4. And

1  TomorrowNow also had databases that were used as part of providing support services to its
2  customers.  *See* Fuchs Decl. ¶ 3; Thomas Decl. ¶ 5.

3  The analysis of this data was costly and extremely burdensome and still did not result in a
4  complete list of infringing materials.  This is demonstrated by the investigation of Oracle's expert,
5  Kevin Mandia, who spent between three and four million dollars over the course of discovery in
6  this case and still did not completely analyze all of the data TomorrowNow produced.  *See* Fuchs
7  Decl. ¶ 7, Ex. A (Mandia 5/20/10) at 19:16-20:9; Fuchs Decl. ¶ 8, Ex. B (Mandia 5/21/10) at
8  416:12-417:19.  Additionally, despite substantial efforts, the parties never agreed on what
9  specifically qualifies as Oracle code or infringing material in every instance, and, given the
10 discovery efforts in the case, it would be effectively impossible to do so even if ordered.  *See*
11 Funck Decl. ¶¶ 3-5.

12 **3.    The Infringing Material Must Be Preserved for Now.**

13 As both Oracle and the Court are aware, there is still a pending investigation by the DOJ
14 and related subpoenas that involve the materials for which Oracle seeks disposition.  Unless and
15 until the DOJ clears Defendants to do so and the materials are no longer needed by Defendants to
16 respond to any claims by the DOJ, these materials must be preserved.  This material should also
17 be preserved because all post-verdict remedies have not been exhausted by the parties.  *See, e.g.*,
18 *Berry v. Hawaii Express Serv., Inc*., No. 03-00385 SOM/LEK, 2006 U.S. Dist. LEXIS 13718, at
19 *18 (D. Haw. Mar. 9, 2006) (denying the plaintiff's request to order the defendants to return,
20 destroy, or otherwise dispose of materials because the defendants would need access to those
21 materials during the appeals process).

22 Section 503 specifically allows the Court to fashion a remedy that is reasonable under the
23 circumstances of the case and does not contemplate permitting a successful plaintiff to fashion its
24 own remedy as suggested by Oracle's proposed judgment.  The statute and related case law
25 support Defendants' request that the proper remedy be to, at the appropriate time, **destroy** all
26 infringing materials at issue in this case ninety (90) days after all preservation obligations and the
27 need for this material by Defendants to defend themselves has ended.
28

**C.      The Final Judgment Should Include the Court's Dismissal of Several of Plaintiffs' Claims.**

Finally, Oracle's proposed judgment should be amended to reflect that several of Plaintiffs' claims have been dismissed with prejudice over time. Although Oracle's proposed order incorporates the parties' Amended Trial Stipulation and Order Number 1 insofar as it expressly holds TomorrowNow liable on several claims (Proposed Judgment at ¶ 4), it does not incorporate the flip side of that stipulation—that all claims against SAP with the exception of copyright infringement are dismissed with prejudice. *See* ECF No. 962 ¶¶ 1, 3. Similarly, the proposed judgment does not incorporate the Court's prior orders dismissing all claims of former plaintiffs Oracle Systems Corp., Oracle EMEA Ltd., and J.D. Edwards Europe. *See* ECF No. 762 at 16-17 (dismissing the California common law claims asserted by Oracle EMEA Ltd.); ECF No. 224 at 6-7 (dismissing the copyright claims of J.D. Edwards Europe and Oracle Systems Corp.). Oracle has provided no support for its exclusion of these prior stipulations and rulings from its proposed final judgment. Defendants therefore request that the Court incorporate these dismissals in its final order.

## III.     CONCLUSION

For the reasons set forth above, Defendants hereby request that the Court enter a final order that (1) does not include an award for prejudgment interest; (2) orders that TomorrowNow destroy the infringing materials, instead of allowing Plaintiffs to choose the form of disposition; and (3) includes dismissals with prejudice of Plaintiffs' unsuccessful claims, as outlined above.

Dated:  December 23, 2010                    JONES DAY

By: /s/ Tharan Gregory Lanier
      Tharan Gregory Lanier

Counsel for Defendants

SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.