| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP<br>DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468)<br>HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009)<br>BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center<br>San Francisco, CA  94111-4067 |
| 5 | Telephone:  415.393.2000<br>Facsimile:  415.393.2286 |
| 6 | donn.pickett@bingham.com<br>geoff.howard@bingham.com |
| 7 | holly.house@bingham.com<br>zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |
| 9 | BOIES, SCHILLER & FLEXNER LLP<br>DAVID BOIES (Admitted Pro Hac Vice) |
| 10 | 333 Main Street<br>Armonk, NY 10504 |
| 11 | Telephone:     (914) 749-8200<br>Facsimile:      (914) 749-8300 |
| 12 | dboies@bsfllp.com<br>STEVEN C. HOLTZMAN (SBN 144177) |
| 13 | FRED NORTON (SBN 224725)<br>1999 Harrison St., Suite 900 |
| 14 | Oakland, CA 94612<br>Telephone:     (510) 874-1000 |
| 15 | Facsimile:      (510) 874-1460<br>sholtzman@bsfllp.com |
| 16 | fnorton@bsfllp.com |
| 17 | DORIAN DALEY (SBN 129049)<br>JENNIFER GLOSS (SBN 154227) |
| 18 | 500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070 |
| 19 | Telephone:  650.506.4846<br>Facsimile:  650.506.7144 |
| 20 | dorian.daley@oracle.com<br>jennifer.gloss@oracle.com |
| 21 | Attorneys for Plaintiffs Oracle USA, Inc., *et al.* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>                    Plaintiffs,<br>           v.<br><br>SAP AG, *et al.*,<br><br>                    Defendants. | No. 07-CV-01658 PJH (EDL)<br><br>**ORACLE'S CONDITIONAL MOTION FOR NEW TRIAL**<br><br>Date: July 13, 2011<br>Time: 9:00 a.m.<br>Place: 3rd Floor, Courtroom 3<br>Judge: Hon. Phyllis J. Hamilton |


**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Any New Trial Should Include Oracle's Up-Sell And Cross-Sell Projections Evidence That Was Erroneously Excluded | 2 |
| | | 1. Judge Laporte's Order Did Not Exclude Up-Sell and Cross-Sell Projections as Opposed to Actual Losses | 3 |
| | | 2. The Court Erred in Conflating Up-Sell and Cross-Sell Projections with Actual Up-Sell and Cross-Sell Losses | 4 |
| | | 3. Oracle Lacked Timely Notice That Its Up-Sell and Cross-Sell Projections Might Be Excluded | 6 |
| | | 4. The Court's Ruling Prejudiced Oracle and Should Be Corrected in Any New Trial | 7 |
| | B. | In Any New Trial, The Jury Should Be Properly Instructed On Oracle's Allowable Recovery Of Infringer's Profits | 8 |
| | C. | In Any New Trial, Oracle's Evidence Of SAP's Saved Development Costs Should Be Admitted | 9 |
| | D. | SAP Expert Clarke's Opinions About Customer Decisions Were Outside The Scope Of His Expertise And Should Be Excluded From Any New Trial | 11 |
| III. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Mart Corp. v. Joseph E. Seagram & Sons, Inc.*,
   824 F.2d 733 (9th Cir. 1987) ................................................................................................ 2

*Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*,
   181 F.3d 1180 (10th Cir. 1999) ............................................................................................ 7

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
   754 F.2d 826 (9th Cir. 1985) ................................................................................................ 9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................... 11

*Deltak, Inc. v. Advanced Sys., Inc.*,
   767 F.2d 357 (7th Cir. 1985) .............................................................................................. 10

*Frank Music Corp. v. Metro-Goldwin-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ................................................................................................ 5

*Gensci OrthoBiologics v. Osteotech, Inc.*,
   2001 WL 36239743 (C.D. Cal. 2001) .................................................................................. 6

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ............................................................................................ 5

*In re Rubin*,
   769 F.2d 611 (9th Cir. 1985) ................................................................................................ 6

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F. 3d 1371 (Fed. Cir. 2001) ........................................................................................... 5

*Jones v. Union Pac. R.R. Co.*,
   968 F.2d 937 (9th Cir. 1992) .............................................................................................. 11

*Mars, Inc. v. Coin Acceptors, Inc.*,
   527 F.3d 1359 (Fed. Cir. 2008), *modified on other grounds by* 557 F.3d 1377 (Fed.
   Cir. 2009) ............................................................................................................................ 10

*Navallier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ................................................................................................ 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ................................................................................................ 5

**TABLE OF AUTHORITIES**

**Page(s)**

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  254 F.R.D. 597 (N.D. Cal. 2008) .................................................................................... 12

*Salinas v. Amteck of Ky, Inc.*,
  682 F. Supp. 2d 1022 (N.D. Cal. 2010) ..................................................................... 11, 12

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992) ............................................................................................. 6

*United States v. Chang*,
  207 F.3d 1169 (9th Cir. 2000) ......................................................................................... 12

*United States v. Jawara*,
  474 F.3d 565 (9th Cir. 2007) ........................................................................................... 13

*United States v. Nat'l Med. Enters., Inc.*,
  792 F.2d 906 (9th Cir. 1986) ............................................................................................. 6

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
  254 F.3d 706 (8th Cir. 2001) ........................................................................................... 13

**RULES**

17 U.S.C. § 504 ................................................................................................................... 8, 9

Civil Local Rule 7-2(b)(3) ...................................................................................................... 7

Civil Local Rule 7-8(c) .......................................................................................................... 7

Fed. R. Civ. P. 7(b)(1)(B) ...................................................................................................... 7

Fed. R. Evid. 104(a) ............................................................................................................. 11

**OTHER AUTHORITIES**

Gordon V. Smith & Russell L. Parr, *Intellectual Property, Valuation, Exploitation, and
  Infringement Damages* (2005 ed.) ................................................................................... 10

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |

2  PLEASE TAKE NOTICE THAT on July 13, 2011, at 9:00 a.m., in the United States District Court, Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California, Courtroom 3, 3rd Floor, before the Hon. Phyllis J. Hamilton, Plaintiff Oracle International Corp. ("Oracle") will bring a conditional motion for a new damages trial against Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (together, "SAP"), pursuant to Fed. R. Civ. P. 59 and Civil L. R. 7-2, 7-4, and 7-5.  This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration, and all attached evidence.

**REQUESTED RELIEF**

Oracle respectfully submits that no new trial is required in this case.  Oracle intends vigorously to oppose SAP's expected motions for new trial and believes that this Court should reject those motions and let the verdict stand.[1]  In the unlikely event that the Court were to grant any of SAP's post-trial motions, however, Oracle respectfully submits that Oracle would be entitled to relief with respect to certain of the Court's evidentiary and instructional rulings, as described below.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

Oracle does not seek a new trial.  As Oracle will show in opposition to SAP's motions, the jury's damages verdict is amply supported by the evidence that this Court properly admitted at trial and SAP can show no error that would justify a new trial, as the Court's evidentiary and instructional rulings were overwhelmingly correct.  Oracle thus expects that this Court will properly deny SAP's expected motions and fully supports that result.  In the event the Court were to order a new trial, however, Oracle respectfully submits that this Court would be required to review all errors at trial, including those errors that prejudiced Oracle and resulted in a reduction of the damages to which it was entitled.  While Oracle believes the jury's verdict

---

[1] The only relief SAP could arguably seek on its Rule 50 and 59 motions, would be, at most, to a new trial on damages.

1  fairly reflects the evidence properly admitted, it also notes that the verdict fell toward the bottom
2  of the range of reasonable license amounts Oracle presented, and that the Court's rulings on
3  certain issues shifted that range significantly downward.  Oracle accordingly files this
4  conditional motion solely to preserve its rights and respectfully requests that this Court dismiss it
5  in the likely event that SAP's motions are denied.  *Cf. Am. Mart Corp. v. Joseph E. Seagram &*
6  *Sons, Inc.*, 824 F.2d 733, 735 n.2 (9th Cir. 1987) (dismissing conditional cross-appeal after
7  affirming judgment on main appeal).
8        Specifically, Oracle submits that if the Court were to order a new damages trial, it
9  should correct the following erroneous evidentiary and instructional rulings that were issued to
10 Oracle's detriment and in SAP's favor:  (1) the exclusion of Oracle's evidence of up-sell and
11 cross-sell projections to prove the full value of the hypothetical license; (2) the instruction
12 precluding the jury from awarding infringer's profits that were not included in the value of the
13 hypothetical license; (3) the exclusion of evidence of SAP's saved development costs to show
14 the value of what it infringed; and (4) the admission of unqualified opinion testimony from
15 Stephen Clarke as to why SAP and TomorrowNow customers terminated their relationships with
16 Oracle.  Oracle discusses those issues in turn below.

17 **II.   ARGUMENT**

18     **A.   Any New Trial Should Include Oracle's Up-Sell And Cross-Sell**
           **Projections Evidence That Was Erroneously Excluded**
19

20       Oracle submits, first, that the Court erred in excluding projections of Oracle's
21 expected up-sell and cross-sell revenue from the PeopleSoft and Siebel acquisitions (known as
22 Project Spice and Project Sierra, respectively) – an error that required Oracle's damages expert,
23 Paul Meyer, to reduce by the *significant sum of $500 million* his opinion as to the value of the
24 license SAP would have needed to lawfully copy Oracle's software.  It is undisputed that
25 Oracle's Board and senior management, including its President, Safra Catz, had created and used
26 these projections contemporaneously in connection with those acquisitions, that the projections
27 were timely "produced [a] long, long time ago" in discovery (before the depositions of Lawrence
28 Ellison, Safra Catz, and Charles Phillips), and that SAP had every opportunity to take further

1  discovery on them.  Declaration of Bree Hann ISO Oracle's Conditional Motion for New Trial

2  ("Hann Decl."), ¶¶ 2-3, Exs. B & C (Plfs' Trial Exs. 614 & 615); *id.*, ¶ 1, Ex. A (Trial Tr.) at

3  820:15-23, 846:12-849:6, 858:17-859:19.

4  And Judge Laporte's prior sanctions order precluded only evidence of Oracle's

5  *actual*, post-PeopleSoft acquisition lost up-sell and cross-sell profits, *not* evidence of Oracle's

6  pre-acquisition up-sell and cross-sell *projections*.  The Court erred in holding that evidence of

7  pre-infringement projections was "close enough" to evidence of actual, post-infringement lost

8  up-sell and cross-sell profits that had been "denied all along."  *Id.*, ¶ 1, Ex. A (Trial Tr.) at

9  826:14-21.  At any new trial, therefore, that evidence necessarily should be admitted.

10        **1.**      **Judge Laporte's Order Did Not Exclude Up-Sell and Cross-**
11               **Sell Projections as Opposed to Actual Losses**

12  SAP's sanctions motion before Judge Laporte was expressly "limited" to lost

13  profits damages and did "*not extend to . . . [Oracle's] hypothetical license theory . . . .*"  Dkt. 365

14  (07/22/09 Defs' Sanctions Mot.) at 13 n.9 (emphasis supplied).  SAP confirmed on reply and at

15  the hearing that the sanctions motion "relates only to portions of one measure of alleged

16  damage;" that "*we're not asking* to preclude Oracle from any other damage theory;" and that, if

17  granted, the motion "*will still leave Oracle with . . . its other alleged damages claims.*"  Dkt. 399

18  (08/04/09 Defs' Sanctions Reply) at 1:3-5, 6:3-5; Dkt. 426 (08/18/09 Hearing Tr.) at 61:9-10

19  (emphasis supplied); *see also* Dkt. 526 (10/29/09 Defs' Resp. to Objs. to Sanctions Order) at

20  4:21-23 (describing all precluded evidence as "lost profits" evidence).[2]

21  Accordingly, Judge Laporte's ruling was limited to excluding certain evidence of

22  "lost profits,"[3] and never stated that Oracle was precluded from "pursuing claims for lost up-sell

23  and cross-sell opportunities."  Dkt. 482 (09/17/09 Sanctions Order) at 26:16-22 (enumerating the

---

[2]  SAP's prior, repeated representations of what its sanctions motion did and did not address were perfectly consistent with the Court's recollection and analysis of the issue at trial, but contrary to its ultimate ruling.

[3]  Specifically:  "(1) alleged lost profits relating to customers that did not become customers of TomorrowNow; (2) alleged lost profits relating to licensing revenue, as opposed to support revenue; and (3) alleged lost profits relating to products that were not supported by TomorrowNow."  Dkt. 482 (09/17/09 Sanctions Order) at 26:16-22.

evidence to be precluded). To the contrary, Judge Laporte's 26-page decision used the word "opportunity" only three times, using the term twice in the express context of "profits lost" and "lost profits," *id.* at 1:22-23 ("profits lost . . . from lost licensing opportunities"), *id.* at 3:24-25 ("lost profits damages based on lost up-sell and cross-sell licensing opportunities"), and the third time in quoting Oracle expert Mr. Meyer's description of his lost profits work that was underway. *Id.* at 20:22-25. This Court initially correctly held as much in stating that "Judge Laporte's order doesn't address" this issue and "[i]t is not barred by the prior discovery order." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:15-20.

2. **The Court Erred in Conflating Up-Sell and Cross-Sell Projections with Actual Up-Sell and Cross-Sell Losses**

The Court nevertheless stated that it was "persuaded by the defense position" that Judge Laporte's exclusion of evidence of up-sell and cross-sell "opportunities" extended to up-sell and cross-sell *projections*, even if they were contemporaneous and even if all evidence of them had been timely produced, ruling "I think it's close enough – I think opportunity is close enough. I'm going to reaffirm the ruling. Up-sell, cross-sell, which I have denied all along, continues to be denied." *Id.* at 826:14-21. Oracle respectfully submits that this ruling was in error.

First, this evidence had not been "denied all along," because Judge Laporte had used the term "opportunities" strictly in the context of actual lost profits, not projected sales used to establish a value for PeopleSoft at the time Oracle acquired it. Second, contrary to SAP's improper and last-ditch argument to this Court,[4] "lost profits damages based on lost up-sell and cross-sell licensing opportunities" – the term Judge Laporte used in setting the bounds of the discovery sanction – could not be more different from "a projection of that opportunity." *See id.*

---

[4] The Court had previously rejected SAP's argument that "what we're talking about here now is enforcing the consequence of the sanctions order that resulted in your order adopting it and resulted in the orders on motions *in limine*." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 814:7-10; *see id.* at 817:15-20 ("Judge Laporte's order doesn't address it. No order that I've issued addresses this. *As far as I'm concerned, this is [an] entirely new issue.* It is not barred by the prior discovery order. It couldn't conceivably be barred *when I didn't even know it was an issue at the time that I adopted the sanctions order.*") (emphasis supplied).

1  at 818:6-18.  To the contrary, the hypothetical license measure of damages rests not on historical
2  lost profits, but rather on forward-looking projections, based on the parties' "sales expectations
3  at the time when infringement begins as a basis for a royalty base *as opposed to after-the-fact*
4  *counting of actual sales*." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F. 3d 1371,
5  1385 (Fed. Cir. 2001) (emphasis supplied); *accord Frank Music Corp. v. Metro-Goldwin-Mayer,*
6  *Inc.*, 772 F.2d 505, 513 n.6 (9th Cir. 1985); *Hanson v. Alpine Valley Ski Area, Inc*., 718 F.2d
7  1075, 1081 (Fed. Cir. 1983).  Lost profits, by contrast, are backward-looking, based on after-the-
8  fact counting of actual losses "during the period of . . . infringement."  *See Polar Bear Prods.,*
9  *Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004); *Hanson*, 718 F. 2d at 1078.
10           Inserting the word "opportunity" does not erase the fundamental difference
11  between a sales projection and an actual lost sale.  The opportunity to make a sale (including a
12  cross-sale or up-sale) is just that.  If the sale was made, the opportunity was realized.  If not, it
13  was a lost sale opportunity, resulting in lost profits (assuming infringement and causation).
14  Determining whether the opportunity was realized or lost requires looking backward to
15  determine whether the sale was made or not.  None of that has anything to do with a projection
16  of future sales or, in SAP's formulation, future sales opportunities.  The projection does not
17  change whether the opportunity is subsequently realized or lost and, by definition, could not.  *See*
18  *Interactive Pictures Corp.*, 274 F. 3d at 1385.
19           The distinction between forward-looking projections and backward-looking
20  results, which the Court expressly and properly recognized, should have ended this dispute.
21  Evidence of actual lost cross-sell and up-sell opportunities "post-January 2005" resulting in lost
22  profits was excluded by the Court's pre-trial orders for all purposes.  Hann Decl., ¶ 1, Ex. A
23  (Trial Tr.) at 818:6-18.  Evidence of Oracle's forward-looking projections of up-sell and cross-
24  sell opportunities was "not barred" for any purpose.  *Id*. at 817:3-818:3
25           Evidence of Oracle's pre-January 2005 projected lost sales is not "close enough"
26  to evidence of its post-January 2005 actual lost sales to warrant exclusion.  *Id*. at 826:14-21.
27  What the parties expected to happen *before* the stipulated hypothetical negotiation dates is not
28  the same as what actually happened *afterward*.  *See Polar Bear*, 384 F.3d at 709.  Therefore, an

1  order precluding post-negotiation evidence relating to lost profits cannot properly be read to
2  preclude pre-negotiation evidence relating to a hypothetical license.  It was error to hold one
3  inadmissible based on a prior ruling made with respect to the other.
4         Indeed, a ruling that prospective projections are "close enough" to actual lost
5  profits to warrant extension of a discovery sanction from the latter to the former raises serious
6  due process concerns, for a sanction must be both "just" and "specifically related to the particular
7  'claim' that was at issue in the order to provide discovery."  *In re Rubin*, 769 F.2d 611, 615-19
8  (9th Cir. 1985) (sanctions unjust in light of several factors, including severity of the sanction and
9  the absence of warning to sanctioned party); *see Gensci OrthoBiologics v. Osteotech, Inc.*, 2001
10  WL 36239743, at *11 (C.D. Cal. 2001) (denying motion to exclude evidence because failure to
11  establish prejudice raised due process concerns).  Neither Judge Laporte nor this Court ever
12  found any violation of any discovery order relating to Oracle's pre-acquisition projections or
13  relating to Oracle's hypothetical license damages theory.  *See Unigard Sec. Ins. Co. v. Lakewood*
14  *Eng'g & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992) (legal error to award Rule 37 sanction
15  where no court order had been disobeyed); *see also United States v. Nat'l Med. Enters., Inc.*, 792
16  F.2d 906, 911-12 (9th Cir. 1986) (reversible error to order Rule 37 sanction where ground for
17  sanction was different from prior orders on which the trial court relied, so that sanctioned party
18  had no "clear notice" of possible sanction).  And it was undisputed that the specific evidence that
19  SAP sought to exclude at trial had been timely produced.  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at
20  823:19-826:1.  Because the exclusion order at trial had no factual basis, it was improper.  *See*
21  *Unigard*, 982 F.2d at 367-68.

22       **3.**    **Oracle Lacked Timely Notice That Its Up-Sell and Cross-Sell Projections Might Be Excluded**
23

24        Even if the Court's ruling excluding Oracle's contemporaneous, forward-looking
25  up-sell and cross-sell projections had been otherwise proper (it was not), such evidence should
26  be admitted in any new trial because SAP made no proper or timely request to exclude it.
27        Oracle (and the Court) had no notice that SAP's sanctions motion sought any
28  relief relating to Oracle's hypothetical license damages because SAP repeatedly represented the

1  opposite: that the motion was "limited to" lost profits and did "not extend" to the "hypothetical
2  license theory." Dkt. 464 (07/14/09 Defs' Sanctions Mot.) at 13 n.9.  Judge Laporte's order
3  states her clear understanding that "Defendants seek sanctions limiting only a portion of
4  Plaintiffs' damages based on lost profits." Dkt. 482 (09/17/09 Sanctions Order) at 7:21-22,
5  26:16-20.  She clearly did not "comprehend" that SAP actually meant the reverse of what it said.
6  *See Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)
7  (citing 5 Wright & Miller, Federal Practice and Procedure § 1192 at 42 (2d ed. 1990)).  SAP's
8  reversal of its position thus resulted in exactly the "prejudice" Fed. R. Civ. P. 7(b)(1)(B) is meant
9  to avoid by requiring that every request for a court order must "state with particularity the
10 grounds for seeking the order." *See id.* at 1186. ("By requiring notice to the court and the
11 opposing party of the basis for the motion, rule 7(b)(1) advances the policies of reducing
12 prejudice to either party and assuring that 'the court can comprehend the basis of the motion and
13 deal with it fairly.'"); *accord* Civil L.R. 7-2(b)(3).
14          Mid-trial was simply too late for SAP to attempt to expand the Court's 2009
15 discovery sanction into a preclusion ruling that SAP had never before sought.  Civil Local Rule
16 7-8(c) requires that any sanctions motion "must be made as soon as practicable after the filing
17 party learns of the circumstances that it alleges make the motion appropriate."  If SAP in fact
18 believed what it argued to the Court at trial, it should have asked for such relief *nearly 16 months*
19 *before trial*.  The untimeliness of the sanctions extension, like its disproportionality, raises
20 serious due process concerns.  *See Navallier v. Sletten*, 262 F.3d 923, 943 (9th Cir. 2001)
21 (reversing monetary sanction for failure to provide proper notice).

22          **4.      The Court's Ruling Prejudiced Oracle and Should Be
23                    Corrected in Any New Trial**

24          The jury verdict form makes clear that the jury applied the hypothetical license
25 approach to damages.  The Court's ruling cut half a billion dollars from the damages opinion that
26 Oracle's damages expert would have offered and that fact witnesses would have supported with
27 additional testimony and documentary evidence.  Dkt. 989 (11/15/10 Oracle's Offer of Proof) at
28 3:20-7:28.  But for the Court's ruling, Oracle respectfully submits that the jury would have

1  awarded an additional $500 million or a substantial percentage of that amount.  SAP is hard-
2  pressed to argue otherwise; it obviously fought to keep Oracle's cross-sell and up-sell projections
3  out for a reason.
4                                                 * * *
5           SAP offered no legitimate basis to exclude Oracle's critical up-sell and cross-sell
6  projections evidence, and there was none.  Its exclusion was legally erroneous and highly
7  prejudicial.  Oracle submits that any new trial should include that evidence.

8      **B.   In Any New Trial, The Jury Should Be Properly Instructed On
            Oracle's Allowable Recovery Of Infringer's Profits**
9

10          A copyright plaintiff is entitled to actual damages plus non-duplicative infringer's
11  profits.  17 U.S.C. § 504; Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1954:3-25.  After SAP admitted
12  liability for all copyright claims, the parties submitted revised competing verdict forms.  Oracle
13  proposed a general form that correctly stated the law in this respect, asking the jury for one
14  "damages" amount.  Dkt. 972 (11/04/10 Oracle's Verdict Form).  SAP's form, by contrast,
15  required the jury to choose either "hypothetical license" or "lost profits" actual damages, and
16  directed the jury not to award infringer's profits if it chose hypothetical license.  Dkt. 970
17  (11/04/10 Defs' Verdict Form).  The parties also sought competing additional language in their
18  proposed jury instructions consistent with their respective verdict forms.  *Compare* Dkt. 1000
19  (11/21/10 Jt. Final Jury Instr.) at 11:8-11 (SAP's additional instruction that the fair market value
20  of a license includes infringer's profits) *with id.* at 10:8-11 (Oracle's additional instruction
21  stating the same, but limited to the license "as presented by Oracle").  The Court chose and gave
22  SAP's form and instruction.  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 2025:2-23, 2215:11-19; Dkt.
23  1004 (11/23/10 Special Verdict Form).  The Court's rejection of Oracle's verdict form and jury
24  instructions prevented the jury from awarding Oracle hypothetical license damages plus non-
25  duplicative infringer's profits.  In any new trial, that instructional error should be corrected.
26          In reaching this conclusion at the charging conference, the Court agreed with
27  SAP's argument that infringer's profits are precluded if the jury awarded *any* hypothetical
28  license amount (whether or not "as presented by Oracle"), and rejected Oracle's argument that, if

1 the jury awarded a lesser amount than $1.665 billion (which its expert testified included
2 infringer's profits), it should have the option separately to calculate and award infringer's profits.
3 Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1954:3-18, 1956:15-1958:10, 1959:19-22.  SAP's argument
4 that hypothetical license damages necessarily *included* all of the infringer's profits was
5 undermined by its own evidence and testimony.  Mr. Clarke testified to a fair market value of
6 $3.8 million for SAP (not including TN) based on a 50% "reasonable royalty" *applied to SAP's*
7 *infringer's profits* of $7.6 million.  *Id.* at 1574:23-1575:11, 1587:9-14.  In other words, SAP
8 argued hypothetical license damages necessarily *included* all of the infringer's profits, having
9 presented a hypothetical license model that necessarily *excluded* half of those profits.
10          In any event, the jury instruction and verdict form were erroneous.  The Copyright
11 Act permits recovery of "actual damages . . . *and* any profits of the infringer that are attributable
12 to the infringement."  17 U.S.C. § 504(b) (emphasis supplied); *Cream Records, Inc. v. Jos.*
13 *Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985) (upholding an award of hypothetical license
14 actual damages plus infringer's profits).  The exception to that rule is that, when actual damages
15 already include infringer's profits, the plaintiff cannot recover those profits twice through an
16 award of additional infringer's profits.  A hypothetical license is a measure of actual damages
17 that may, but does not necessarily, include all of the defendant's infringer's profits.  However,
18 the Court instructed the jury that infringer's profits were unavailable whether or not its
19 hypothetical license award fully included them.  The instruction and verdict form that made
20 actual damages under a hypothetical license model and infringer's profits mutually exclusive
21 violated 17 U.S.C. § 504.

22      **C.   In Any New Trial, Oracle's Evidence Of SAP's Saved Development**
23           **Costs Should Be Admitted**

24          Oracle respectfully submits as well that, in the event of any new trial, the Court
25 should correct its erroneous decision to preclude Oracle's expert witness from testifying
26 "regarding saved acquisition costs."  Dkt. 914 (09/30/10 Final Pretrial Order) at 3:28-29; Hann
27 Decl., ¶ 1, Ex. A (Trial Tr.) at 257:16-25 (exclusion at trial).  Mr. Meyer was barred from
28 offering his "cost approach" to valuing the hypothetical license, which would have supposed that

1  a party to a hypothetical license negotiation would consider the cost of alternatives to buy or
2  develop the licensed product in deciding how much it would be willing to pay for the license.
3  *See*, *e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372 (Fed. Cir. 2008), *modified on*
4  *other grounds by* 557 F.3d 1377 (Fed. Cir. 2009); *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d
5  357, 360-62 & n.3 (7th Cir. 1985); *see also* Dkt. 679 (03/31/10 House Decl. ISO MSJ Opp.),
6  ¶ 32, Ex. 6 (Gordon V. Smith & Russell L. Parr, *Intellectual Property, Valuation, Exploitation,*
7  *and Infringement Damages* (2005 ed.)) at 526 (among the questions "at the heart of technology
8  transfers" is: "How long would it take to invent around this technology?").
9       Mr. Meyer's opinions had relied in part on Paul Pinto, who had computed SAP's
10  hypothetical cost to develop the infringed PeopleSoft, J.D. Edwards, and Siebel software.  Pinto
11  opined, using two industry-standard methodologies, "that Defendants would have incurred costs
12  in the range of $1,134M to $3,477M (depending on the selected staffing model) to independently
13  develop the most current version of JD Edwards EnterpriseOne, JD Edwards World, PeopleSoft,
14  and Siebel applications."  Dkt. 775 (08/19/10 Lanier Decl. ISO Mot. to Exclude Pinto), ¶ 2, Ex. 2
15  (Pinto Report) at 2.  Mr. Meyer explained that the cost approach was a "reasonableness check on
16  the valuations derived from [his] other approaches."  Dkt. 925 (10/04/10 Refiled Jindal Decl.
17  ISO Opp. to Mot. to Exclude Meyer), ¶ 3, Ex. A (Meyer Report) at ¶ 143.  Excluding such
18  evidence prejudiced Oracle by preventing it from countering SAP's repeated attacks on Meyer's
19  opinion for lacking such a "reality check."  *See* Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 2167:11-15
20  ("Don't trust somebody who doesn't believe in reality checks."); *id.* at 2135:10-11 (Mr. Meyer
21  failed to "use reality to provide insight into what [Oracle and SAP] really would have been
22  thinking at the time" of a hypothetical negotiation.); *id.* at 2138:7-8 ("[Mr. Meyer] is way, way
23  too high.  If only he had done a reality check.").
24       The Court's exclusion of Mr. Meyer's cost approach and Mr. Pinto's underlying
25  opinion was error.  Prior to trial, SAP argued, and the Court agreed, that its prior summary
26  judgment order had rendered the testimony "moot."  *Id.*, ¶ 4, Ex. D (09/30/10 Pretrial Conf. Tr.)
27  at 121:16-19, 122:8-10.  The Court had found Mr. Meyer's cost-approach valuations "highly
28  speculative, as they are based on the amounts that Oracle allegedly spent to develop and/or

1  acquire the intellectual property at issue, not on what it would have cost SAP for research and
2  development." Dkt. 762 (08/17/10 MSJ Order) at 23 n.5.  The Court found Oracle "provided no
3  evidence of what SAP would have spent." *Id.*
4          That was incorrect.  It was in fact undisputed, as SAP's summary judgment
5  motion admitted, that Mr. Pinto "purports to estimate '*what it would have cost Defendants* to
6  independently develop the underlying software applications.'" Dkt. 640 (03/03/10 Defs' MSJ) at
7  10:12-14 (emphasis supplied); *see also* Dkt. 774 (08/19/10 Mot. to Exclude Pinto) at 3:13-14
8  ("Pinto's opinions, as disclosed by Plaintiffs in their expert disclosures and in his expert report,
9  exclusively concern alleged 'saved development costs' damages.").  Because the Court's
10 summary judgment ruling with respect to Oracle's evidence of SAP's saved development costs
11 was incorrect as a matter of undisputed fact, it was error.  *See*, *e.g.*, *Jones v. Union Pac. R.R. Co.*,
12 968 F.2d 937, 941-42 (9th Cir. 1992).

13      **D.  SAP Expert Clarke's Opinions About Customer Decisions Were Outside The Scope Of His Expertise And Should Be Excluded From**
14             **Any New Trial**

15         Finally, Oracle respectfully submits that, in the event of any new trial, the Court
16 should exclude Mr. Clarke's testimony as to "why [specific customers] left Oracle" and bought
17 SAP.[5]  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1589:7-8.  Mr. Clarke is a CPA with some
18 economics training and experience in business valuations and intellectual property licensing, but
19 no experience or expertise in enterprise resource planning ("ERP") software or its buyers'
20 decision-making.  *Id.* at 1531:3-1533:13, 1534:2-1535:4.  Admitting his testimony accordingly
21 was erroneous and should be corrected in any new trial.
22         The proponent of expert testimony must show that it meets Rule 702's
23 admissibility standards, including "[p]reliminary questions concerning the qualifications of a
24 person to be a witness," by a "preponderance of proof."  Fed. R. Evid. 104(a); *Daubert v.*
25 *Merrell Dow Pharm.*, *Inc.*, 509 U.S. 579, 593 n.10 (1993); *see also Salinas v. Amteck of Ky, Inc.*,

---

26 [5] Oracle's objections are at Dkt. 781 (08/19/10 Mot. to Exclude Clarke) at 19:15-19; Hann
27 Decl., ¶ 1, Ex. A (Trial Tr.) at 1589:17-20.  The Court's rulings are at Hann Decl., ¶ 4, Ex. D (09/30/10 Pretrial Conf. Tr.) at 60:9-15; Dkt. 914 (09/30/10 Final Pretrial Order) at 3:23-28; and
28 Hann Decl., ¶1, Ex. A (Trial Tr.) at 1590:12-1596:14.

1  682 F. Supp. 2d 1022, 1029 (N.D. Cal. 2010) (Hamilton, J.).  Expertise in one subject – here,

2  damages – does not substitute for a lack of qualifications in another – here, causation and,

3  specifically, customer "behavioral" issues.  *See*, *e.g.*, *United States v. Chang*, 207 F.3d 1169,

4  1172-73 (9th Cir. 2000) (affirming the preclusion of an "extremely qualified" international

5  finance expert from testifying as to the identification of counterfeit securities because "he did not

6  testify as to any training or experience, practical or otherwise" as to that specific issue); *Rambus*

7  *Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 603-05 (N.D. Cal. 2008) (finding testimony of

8  electrical engineer on "commercial success" inadmissible because he had no marketing or

9  business training in commercial aspects of claimed invention).

10        SAP offered no, much less a "preponderance of," proof to support a finding that

11 Mr. Clarke was qualified to opine on the reasons for customer decisions, and the Court made no

12 such finding.  Instead, in response to Oracle's objection, SAP offered to prove that Mr. Clarke

13 and his staff reviewed (mostly inadmissible hearsay) statements from customers and, from them,

14 "reached an opinion on which customers would have left, which ones are within the causation

15 pool, and reached an opinion on that."  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1589:17-1590:11.

16 Those inexpert opinions, however, were the problem, not the solution.  Mr. Clarke was not

17 proffered or qualified as a "causation" expert, much less an expert on ERP customer decision-

18 making, a "behavioral" issue he has no qualifications to address.  *Id.* at 1538:1-2.

19        The Court nevertheless overruled Oracle's objection, and allowed Mr. Clarke to

20 "testify as to his conclusion that [the customer losses] were not related to the infringement." *Id.*

21 at 1593:19-20; *see also id*. at 1594:7-9 ("I think he can go one step further than that and say that

22 he concluded that they would have left [for] other reasons . . . .").  The Court noted that some of

23 the material on which Mr. Clarke relied was in evidence, but made no finding that Mr. Clarke

24 was qualified to offer purported expert interpretation of it, and he was not.[6]  *Id*. at 1593:13-18.

25 The Court also noted that Mr. Clarke "has made the determination that a sizable number of

---

[6] In fact, the vast majority of the information Mr. Clarke purported to rely on for his 107 lost profits and 60 infringer's profits customer causation "exclusions" was not in evidence, so his "causation" opinions just bootstrapped from his own inexpert opinion as to why the customers left.

1 customers would have left for other reasons," but that is, again, the problem: SAP made no
2 showing that Mr. Clarke had any expertise to make that determination. *Id*. at 1591:18-24.
3 Therefore, the Court's ruling was erroneous. *See United States v. Jawara*, 474 F.3d 565, 583
4 (9th Cir. 2007) ("failure to make explicit reliability finding was an error"); *Wheeling Pittsburgh*
5 *Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 714-15 (8th Cir. 2001) (abuse of
6 discretion to allow expert "eminently qualified" in flood risk management to testify about safe
7 warehousing practices).

8 Mr. Clarke went on to describe in detail his exclusion "pools" of customer
9 behavior. *See*, *e.g.*, Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1598:1-1608:6. Mr. Clarke pointedly
10 criticized Mr. Meyer based on Mr. Clarke's unqualified behavioral analysis. *Id*. at 1551:12-16
11 ("And [Mr. Meyer] did not look at the behavior of the customers at all. I did that analysis. It
12 was very time-consuming. It was very expensive for my client. And he didn't do that analysis.
13 What he knows about the customers' behavior, he learned from me."). SAP told the jury that
14 "causation" issue – "how customers made the decisions they made" – is what this case is "all
15 about." *Id*. at 400:1-10, 1590:1-11; *see also id.* at 1593:15-16 ("That is the essence of the
16 defense case."). Mr. Clarke's inexpert testimony should not be allowed at any new trial.

17 **III. CONCLUSION**

18 If the Court were to order a new damages trial, Oracle's pre-2005 up-sell and
19 cross-sell projections should be admitted, the jury should be properly instructed on infringer's
20 profits, Oracle's evidence of SAP's saved development costs should be admitted, and Mr.
21 Clarke's testimony should be limited to the damages issues for which he is qualified.

22 DATED: February 23, 2011　　　　　　　　Bingham McCutchen LLP

By:　　　/s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs Oracle USA, Inc., *et al.*