1  Robert A. Mittelstaedt (SBN 060359)
   Jason McDonell (SBN 115084)
2  Elaine Wallace (SBN 197882)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:     (415) 626-3939
   Facsimile:     (415) 875-5700
5  ramittelstaedt@jonesday.com
   jmcdonell@jonesday.com
6  ewallace@jonesday.com

7  Tharan Gregory Lanier (SBN 138784)
   Jane L. Froyd (SBN 220776)
8  JONES DAY
   1755 Embarcadero Road
9  Palo Alto, CA 94303
   Telephone:     (650) 739-3939
10 Facsimile:     (650) 739-3900
   tglanier@jonesday.com
11 jfroyd@jonesday.com

12 Scott W. Cowan (Admitted *Pro Hac Vice*)
   Joshua L. Fuchs (Admitted *Pro Hac Vice*)
13 JONES DAY
   717 Texas, Suite 3300
14 Houston, TX 77002
   Telephone:     (832) 239-3939
15 Facsimile:     (832) 239-3600
   swcowan@jonesday.com
16 jlfuchs@jonesday.com

17 Attorneys for Defendants
   SAP AG, SAP AMERICA, INC., and
18 TOMORROWNOW, INC.

19                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
20                       OAKLAND DIVISION

21 | ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
|---|---|
22 | Plaintiffs, | **DEFENDANTS' MOTION FOR STAY OF EXECUTION OF JUDGMENT THROUGH APPEAL AND APPROVAL OF PROPOSED SECURITY PURSUANT TO FRCP 62** |
23 | v. | |
24 | SAP AG, et al., | |
25 | Defendants. | Date:     May 4, 2011<br>Time:     9:00 a.m.<br>Courtroom: 3, 3rd Floor<br>Judge:    Hon. Phyllis J. Hamilton |

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on May 4, 2011, at 9:00 a.m., or as soon thereafter as this matter may be heard by the above-titled Court, located at 1301 Clay Street, Oakland, California, in Courtroom 3 before the Honorable Phyllis J. Hamilton, Defendants SAP AG, SAP America, Inc. (together, "SAP") and TomorrowNow, Inc. ("TomorrowNow," and with SAP, "Defendants") will bring this motion for stay of execution of judgment through appeal and approval of proposed security pursuant to Rule 62 of the Federal Rules of Civil Procedure, against Plaintiff Oracle International Corporation. This motion is based on the Memorandum of Points and Authorities herein, along with the Declaration of Tharan Gregory Lanier in Support of Defendants' Motion to Stay Execution of Judgment Through Appeal and Approval of Proposed Security Pursuant to FRCP 62 ("Lanier Decl.") and exhibits attached thereto, the Declaration of Marcin Plonka in Support of Defendants' Motion to Stay Execution of Judgment Through Appeal and Approval of Proposed Security Pursuant to FRCP 62 ("Plonka Decl."), and the Declaration of Michael Junge in Support of Defendants' Motion to Stay Execution of Judgment Through Appeal and Approval of Proposed Security Pursuant to FRCP 62 ("Junge Decl.").

## RELIEF REQUESTED

Defendants submit this motion pursuant to Rules 62(b) and 62(d) of the Federal Rules of Civil Procedure for entry of an order (1) staying execution of final judgment, entered on February 3, 2011 (ECF No. 1036), pending disposition of post-judgment motions and, if necessary, appeal, and (2) approving $1,325,033,547, paid by Defendants into an escrow account under the terms described in Defendants' Proposed Escrow Agreement, attached as Exhibit 1 to the Lanier Decl., as appropriate security for the judgment during the period of that stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT

The terms of the Proposed Escrow Agreement are more than adequate to guarantee payment of the judgment in this case, should it survive post-judgment motions and appeals. After weeks of negotiations with counsel for Oracle USA, Inc., Oracle International Corporation, and Siebel Systems, Inc. (collectively, "Plaintiffs"), the parties have agreed in principle that an escrow

account in the amount reflected in the proposed agreement is adequate security to stay the judgment during the post-judgment motion and appeal processes. Further, through the meet and confer process, the parties have agreed to the vast majority of the terms in Defendants' Proposed Escrow Agreement. However, Plaintiffs refuse to approve the Proposed Escrow Agreement until Defendants and the escrow agent, JP Morgan Chase, agree to two terms that go well beyond what is necessary or appropriate to secure a stay under Rule 62. First, Plaintiffs insist that Defendants should indemnify Plaintiffs for legally implausible negative tax consequences that Plaintiffs say could theoretically arise, through no fault of Defendants', during the escrow term. Second (and ironically, given their demand for indemnity), Plaintiffs refuse to indemnify the third-party escrow agent for certain defined losses *caused solely by Plaintiffs* that the agent may incur while performing its duties under the agreement.

Neither of these demands would make the judgment more secure, and therefore they are not necessary under Rule 62. Although Defendants will continue to negotiate with Plaintiffs to resolve their concerns, because the temporary stay of execution of judgment will expire on March 24, 2011 unless Defendants file this motion, Defendants now request that the Court approve Defendants' Proposed Escrow Agreement in its current form and stay the judgment pending the disposition of all appellate proceedings.

## II.  ARGUMENT

### A.  Legal Framework.

Rule 62(a) of the Federal Rules of Civil Procedure provides that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry." Fed. R. Civ. P. 62(a). Through various stipulations by the parties and this Court's Orders, that automatic 14-day stay ultimately was extended until (i) March 24, 2011, or (ii) the Court's ruling on a motion pursuant to Rule 62(b) and 62(d), should Defendants file one. *See* ECF No. 1038, ECF No. 1040, ECF No. 1050. Beyond the automatic, temporary stay, the Court, in its discretion and "[o]n appropriate terms for the opposing party's security," may further stay the execution of the judgment pending the disposition of post-judgment motions. *See* Fed. R. Civ. P. 62(b).

1    Rule 62(d) of the Federal Rules of Civil Procedure further provides that Defendants may
2    obtain a stay of execution of judgment pending appeal by posting a supersedeas bond in an
3    amount approved by the court. But a supersedeas bond is not the only form of security that can
4    satisfy Rule 62. The Court may also, in its discretion, approve a different form of judgment
5    guarantee to secure a stay pending appeal. *See Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754
6    F.2d 1492, 1495 (9th Cir. 1985) ("Although Federal Rule of Civil Procedure 62 provides that a
7    supersedeas bond may be used to stay execution of a judgment pending appeal, the court has
8    discretion to allow other forms of judgment guarantee."); *Townsend v. Holman Consulting Corp.*,
9    929 F.2d 1358, 1367 (9th Cir. 1990) (en banc) ("[W]e have held that the district court may permit
10   security other than a bond.").

**B.  Defendants' Proposed Escrow Account Is More Than Adequate Security for the Judgment under Rule 62.**

13   Through this motion, Defendants request entry of an order staying execution of final
14   judgment pending disposition of Defendants' post-judgment motions and, if necessary, during the
15   pendency of appeal, including proceedings before the United States Court of Appeals for the
16   Ninth Circuit and the United States Supreme Court. *See* Fed. R. Civ. P. 62(b) and (d). Although
17   Defendants recognize that the most common form of security for such a stay is a supersedeas
18   bond (pursuant to which a third party would essentially make a promise to pay the judgment in
19   the event that Defendants default), Defendants have proposed an alternate form of security—
20   namely, *a cash deposit* of $1,325,033,547 into an escrow account. Defendants propose that the
21   escrow account be governed by the terms of the escrow agreement attached as Exhibit 1 to the
22   Lanier Decl. (the "Proposed Escrow Agreement"). This cash deposit and the terms of the
23   Proposed Escrow Agreement are more than adequate to guarantee Plaintiffs' interest in collecting
24   judgment in this case, should that judgment stay intact during post-judgment motions and appeal.

25   Defendants' proposed escrow amount, $1,325,033,547, includes the full amount of the
26   Court's judgment, plus three years of post-judgment interest (a generous estimate of the duration
27   of any appeal). The proposed security vehicle—an escrow account—is quite secure. The full
28   amount of the judgment is actually deposited into an account to which Plaintiffs are a party, and

- 3 -    DEFS.' MOTION FOR STAY OF EXECUTION OF JUDGMENT
AND APPROVAL OF PROPOSED SECURITY
Case No. 07-CV-1658 PJH (EDL)

the funds cannot be withdrawn without their consent.  Notably, Plaintiffs have not disputed that the amount of the proposed payment is appropriate under Rule 62, nor do they dispute in principle that an escrow agreement (as opposed to a supersedeas bond) could adequately secure that amount.  Defendants' Proposed Escrow Agreement thus satisfies the purpose behind Rule 62—to ensure that the plaintiff is protected against risks due to the delays of post-judgment motions and appeals.  *See Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) ("The purpose of a . . . bond is to secure the appellees from a loss resulting from the stay of execution[.]"); *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979) ("The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal.").

   Not only does Defendants' Proposed Escrow Agreement fully satisfy the purposes of Rule 62, it also eliminates substantial and needless expense for Defendants.  As the Court is aware, the judgment in this case is staggering.  Obtaining a traditional supersedeas bond in this case, which could require a third party to pay over $1.3 billion in the event Defendants default on the judgment, is not surprisingly a costly endeavor.  Here, a supersedeas bond would cost Defendants up to *$25 million more annually* than a simple escrow account, which provides the same protection for Plaintiffs as a traditional bond.  *See* Plonka Decl. ¶¶ 2-4.

   A traditional supersedeas bond would also adversely affect Defendants' business in other ways.  Defendants or their affiliated companies are parties to a number of unsecured financing agreements, including (i) a €1.5 billion syndicated revolving credit agreement (the "RCF Facility"), (ii) a €2.75 billion credit facility (the "Sybase Facility," together with the RCF Facility, "the Facilities"), and (iii) a U.S. private placement facility issued in the United States (the "USPP").  *See* Junge Decl. ¶ 2.  The Facilities contain restrictions on the ability of the Defendants and certain of their affiliated companies to grant security interests to third parties (so-called negative pledge clauses).  In a traditional supersedeas bond, the issuing party would require that Defendants offer up cash collateral or other security in order to secure Defendants' indemnity or reimbursement obligation to the issuer if the bond were drawn.  *See* Plonka Decl. ¶ 3.  The Facilities would each prohibit the granting of such security interest, since cash collateral or other

security interests are not specifically permitted by their negative pledge clauses. *See* Junge Decl. ¶¶ 3-4. In addition, as the USPP is currently structured, certain of the Defendants would be prohibited under that agreement from incurring an indemnity obligation to a bond issuer. *See id.* ¶ 5. By contrast, none of those facilities restrict or prohibit Defendants' entry into the Proposed Escrow Agreement. *See id.* ¶ 7.

While Defendants might theoretically be able to secure the agreement of the creditors under the Sybase Facility, the RCF, or the USPP, allowing Defendants to enter into reimbursement agreements or to grant any required security interest to a bond issuer, obtaining and coordinating such agreement would be a Herculean task. Even if the creditors chose to cooperate with Defendants, the creditors might seek additional concessions, such as a fee for their consent to secure the bond, a requirement that the current unsecured creditors be provided additional security, an increased interest rate, or other fees. *See id.* ¶ 6. An escrow account would avoid all of these problems while guaranteeing Defendants' ability to pay the judgment, and is therefore the most economically efficient vehicle to secure the judgment in this case.

### C. **Plaintiffs' Objections to the Proposed Escrow Agreement Should Be Overruled.**

Through extensive negotiations, the parties have agreed to almost all of the terms that would govern the escrow account. *See* Lanier Decl. ¶ 5, Ex. 5. Although negotiations are still ongoing, to date, Plaintiffs have not been willing to agree to Defendants' Proposed Escrow Agreement based on two (internally inconsistent) objections. Plaintiffs contend that they are entitled to an indemnity for what they admit are very unlikely and legally dubious potential tax consequences relating to the judgment. *See id.* ¶¶ 4-5, Exs. 4-5. Yet Plaintiffs themselves refuse to indemnify escrow agent JP Morgan Chase for defined harms attributable solely to Plaintiffs' own conduct. Neither of these objections justifies rejecting Defendants' Proposed Escrow Agreement as appropriate security under Rule 62.

#### 1. **Defendants Should Not Be Required to Indemnify Plaintiffs for Very Unlikely Potential Tax Consequences Related to the Judgment.**

Defendants plan to categorize the proposed escrow fund as a qualified settlement fund

("QSF") for tax purposes, as permitted by the United States Tax Code. *See* 26 U.S.C. §468B; Lanier Decl. ¶ 1, Ex. 1 (Proposed Escrow Agreement). QSF funds entitle the transferor to certain Congressionally-mandated tax benefits while imposing no tax penalties on the Plaintiffs. Yet, due to a vague expressed concern that an IRS agent might not like the favorable QSF treatment for which the tax law specifically provides and therefore seek to penalize Plaintiffs, Plaintiffs demand Defendants indemnify them from tax liabilities that they say might accrue to Plaintiffs before the escrow funds are released. Despite the parties' best efforts to resolve this issue, they have not yet been able to reach agreement. *See, e.g.*, Lanier Decl. ¶¶ 2-7, Exs. 2-7. In reality, however, no indemnification of any sort is necessary. Plaintiffs have not identified a single reason, nor cited a single legal authority, to support their position that providing security in the form of an escrow—or a QSF escrow in particular—might increase negative tax consequences to Plaintiffs above and beyond the tax consequences associated with a supersedeas bond.

      The terms of the Proposed Escrow Agreement and well-established law confirm that the Proposed Escrow Agreement will not, in and of itself, cause any adverse tax consequences for Plaintiffs. As a preliminary matter, the Proposed Escrow Agreement expressly states that the parties consider the escrow funds the full responsibility of Defendants, such that Defendants or the Escrow Account itself, and not Plaintiffs, will bear full tax liability on those sums until they are disbursed. *See id.* ¶ 1, Ex. 1 (Proposed Escrow Agreement) at Section 9(ii). Further, black letter law reveals as unfounded Plaintiffs' claimed fears of increased tax liability during the escrow period. Specifically, U.S. Treasury regulations unambiguously provide that under the accrual method of tax accounting, which is applicable to Plaintiffs, "income is includable in gross income *when all the events have occurred* which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." 26 C.F.R. § 1.451-1(a) (emphasis added). That means that, as a practical matter, an uncollected judgment is not accrued income until appeals are exhausted, no matter how it is secured. *See* Rev. Rule 70-109 (judgment amount not accrued income until judgment affirmed through appeal process); Rev. Rule 70-151 (judgment amount not accrued income until certiorari denied). Far from worsening Plaintiffs' tax position, the escrow agreement would add another protection against the judgment security being

1  taxable income, as it would clearly set out conditions precedent to Plaintiffs' receipt of the funds,
2  thus proving that "all events" fixing the right to receive income have not occurred.
3      Additionally, longstanding Supreme Court case law establishes that taxpayers do not
4  acquire taxable "income" until they acquire "wealth, clearly realized, and *over which [they] have*
5  *complete dominion.*" *Comm'r of Internal Rev. v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955)
6  (emphasis added).  The terms of the Proposed Escrow Agreement provide that Plaintiffs do not
7  have any dominion over the escrow sums unless and until they successfully maintain their
8  judgment through post-judgment briefing and appeal.  *See* Lanier Decl. ¶ 1, Ex. 1 (Proposed
9  Escrow Agreement).  Thus, the escrow sums will not constitute "income" to any Plaintiff—much
10 less accrued, taxable income—and any tax consequences would certainly not result merely
11 because security takes the form of an escrow instead of a bond.
12     Thus, Defendants should not be required to sign an unnecessary tax indemnity provision
13 in order to obtain the most economically rational form of security.  The Court should not reject
14 the Proposed Escrow Agreement on the basis of Plaintiffs' tax indemnity objection.

15/16  **2.     Plaintiffs' Position That They Should Be Allowed to Harm Third-Party Escrow Agent JP Morgan Chase with Impunity Is Unfounded.**

17     Next, Plaintiffs refuse to approve the Proposed Escrow Agreement unless and until a third
18 party to this litigation—escrow agent JP Morgan Chase—agrees to accept the financial
19 consequences of certain defined losses *caused solely by Plaintiffs themselves.*  The Proposed
20 Escrow Agreement includes a standard escrow term providing that Plaintiffs will indemnify the
21 escrow agent for any defined losses to the agent *caused solely by Plaintiffs' conduct*.  *See id.* ¶ 1,
22 Ex. 1 (Proposed Escrow Agreement) at Section 8 (providing that Oracle has several liability for
23 losses to the escrow agent "arising solely by the conduct of Oracle").  Although Plaintiffs initially
24 indicated that they might be willing to agree to this term, they recently informed Defendants that
25 they will not so agree.  *See id.* ¶ 5, Ex. 5.  That Plaintiffs refuse to take responsibility for specific
26 losses occasioned by their own conduct is an unreasonable position that cannot justify rejection of
27 Defendants' Proposed Escrow Agreement, particularly as Defendants have readily entered into a
28 parallel indemnity obligation.  *See id.* ¶ 1, Ex. 1 (Proposed Escrow Agreement) at Section 8.

Even more significantly, Plaintiffs' judgment does not become more secure simply by virtue of a term that would permit Plaintiffs to harm the escrow agent with impunity. Plaintiffs' demand goes well beyond the purposes of Rule 62, *see Rachel*, 831 F.2d at 1505 n.1, and accordingly should be rejected.

### III.  CONCLUSION

In sum, Plaintiffs' objections to the Proposed Escrow Account are invalid, and the Proposed Escrow Agreement provides more than adequate security for the judgment in this matter. Defendants therefore request that the Court (1) GRANT their motion to stay execution of final judgment pending disposition of Defendants' post-judgment motions and, if necessary, during the pendency of appeal, (2) APPROVE $1,325,033,547 as the appropriate amount of security under Rule 62 (a sum that the parties have agreed upon), and (3) APPROVE the form of security as an escrow account under the terms of the Proposed Escrow Agreement, and allow the parties 14 days after the Court's order is entered to execute the agreement and fund the escrow account. *See* Lanier Decl. ¶ 1, Ex. 1 (Proposed Escrow Agreement); Plonka Decl. ¶ 7.

If the Court will not approve Defendants' Proposed Escrow Agreement, Defendants request that the Court approve a supersedeas bond in the amount of $1,325,033,547 as appropriate security under Rule 62(b) and (d) and grant Defendants an additional 14 day stay after its order is entered to secure such bond. The additional 14-day stay would be necessary to permit Defendants sufficient time to finalize the bond terms and obtain all necessary signatures to execute the bond agreement, *see* Plonka Decl. ¶ 6, as Defendants heretofore have focused their efforts on the parties' ongoing negotiations regarding the escrow agreement in the hopes of securing the most appropriate and efficient form of security for the judgment. .

Dated:  March 24, 2011                                          JONES DAY

By:  /s/ Tharan Gregory Lanier
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.