# EXHIBIT 1

# ESCROW AGREEMENT

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, this "*Agreement*") is made and entered into as of March ___, 2011, ("*Effective Date*") by and among (i) SAP America, Inc., a Delaware corporation, (ii) TomorrowNow, Inc., a Texas corporation, (iii) SAP AG, a company organized under the laws of Germany (SAP America, Inc., TomorrowNow, Inc. and SAP AG, collectively, "*SAP*"), (iv) Oracle International Corporation, a California Corporation ("*Oracle*") (Oracle and SAP each sometimes referred to individually as "*Party*" or collectively as the "*Parties*"), and (v) JPMorgan Chase Bank, National Association ("*JPMC*," the "*Administrator*" or the "*Escrow Agent*").

**WHEREAS**, SAP has agreed to make a deposit to be held in escrow subject to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties hereto agree as follows:

1.      **Appointment**.  The Parties hereby appoint JPMC as their escrow agent and administrator for the specified purposes set forth herein, and JPMC hereby accepts such appointment under the terms and conditions set forth herein.

2.      **Escrow Fund.**  SAP agrees that it or one of its subsidiaries will deposit with the Escrow Agent on the Effective Date the sum of $1,325,033,547 (the "*Escrow Deposit*"), which is equal to the sum of (i) the amount of the judgment (the "*Judgment*") entered by the United States District Court for the Northern District of California ("*District Court*") against SAP and certain of its affiliates and in favor of Oracle in the case captioned *Oracle USA, Inc. et al. v. SAP AG, et al.* (the "*Case*") on February 2, 2011 in the amount of $1,314,751,797 (which is inclusive of damages in the amount of $1,300,000,000 and prejudgment interest in the amount of $14,751,797) and (ii) post-judgment interest on the amount of the Judgment for a three year period commencing on March ___, 2011, and ending March ___, 2014, at the statutory rate of .26%  provided for by 28 U.S.C. § 1961, computed and accrued daily and compounded annually.  Until March ___, 2014, the amount of the Judgment plus the interest described in clause (ii) above shall be the "*Minimum Escrow Amount.*"  After March ___, 2014, the Minimum Escrow Amount on any given date shall be the amount of the Judgment plus all interest accrued through that date plus one additional month with all such interest accruing at the statutory post-judgment interest rate of .26% computed daily and compounded annually.  If escrowed funds are paid to Oracle in full or in partial satisfaction of the Judgment, the Minimum Escrow Amount shall be reduced by the dollar amount of such payments to Oracle.  The Escrow Agent shall hold the Escrow Deposit and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "*Escrow Fund*") as directed in Section 3.  SAP shall make such additional deposits to the Escrow Fund as required to bring the Escrow Fund up to the Minimum Escrow Amount within one month after receiving notice from Oracle that the Escrow Fund is below the Minimum Escrow Amount.  Further, on March ___, 2014 and on a monthly basis thereafter until the Termination Date, SAP shall deposit in the Escrow Fund the additional amount of money required so that the Escrow Fund is equal to the Minimum Escrow Amount including the amount of additional interest accrued (at the rate identified above) to the time of determination.  JPMC shall have no duty to solicit any payments which may be due it or for the Escrow Deposit, nor shall the Escrow Agent have any duty or obligation to confirm or verify that the amounts deposited with it hereunder are sufficient to meet the Minimum Escrow Amount.

3.      **Investment of Escrow Fund.**  During the term of this Agreement, the Escrow Fund shall be invested in a JPMorgan Money Market Deposit Account ("*MMDA*") or Cash Compensation Account at JPMorgan Chase Bank, NA ("*Cash Compensation Account*") (each as described in the fact sheet delivered to the Parties contemporaneously with the execution and delivery of this Agreement), unless MMDAs or Cash Compensation Accounts are no longer offered by JPMC, in which case the Parties shall agree on alternate investments ("*Alternate Investments*") similar in quality, with respect to risk and liquidity, to the Cash Compensation Accounts or MMDAs .  MMDA and Cash Compensation Accounts have rates of compensation that may vary from time to time based upon market conditions.  For the avoidance of doubt, SAP agrees that the Escrow Fund shall be invested only in highly

liquid investments. If the Parties agree on Alternate Investments, such direction shall be made to the Escrow Agent by SAP, must be in writing and shall specify the type and identity of the investments to be purchased and/or sold, which shall be acceptable to the Escrow Agent. The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Escrow Agent or any of its affiliates may receive compensation with respect to any Alternative Investment directed hereunder including without limitation charging any applicable agency fee in connection with each transaction. The Parties recognize and agree that JPMC will not provide supervision, recommendations or advice relating to either the investment of moneys comprising the Escrow Fund or the purchase, sale, retention or other disposition of any investment described herein. Market values, exchange rates and other valuation information (including without limitation, market value, current value or notional value) of any non-cash investment furnished in any report or statement may be obtained from third party sources and is furnished for the exclusive use of the Parties. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of SAP to give the Escrow Agent instructions to invest or reinvest the Escrow Fund. Loss of principal, interest or other earnings on any investment shall not reduce the amount of the Minimum Escrow Amount, and, as between Oracle and SAP, SAP shall bear all risk of any such loss. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Agreement. All amounts earned from a fiduciary accounting perspective or otherwise (including interest and dividends) on funds held in the Escrow Fund shall be for the account of SAP and, so long as the Minimum Escrow Amount is maintained, may be withdrawn from the Escrow Fund at the direction of SAP, as provided in Section 4(a)(vii) below. Until the Termination Date, the Escrow Agent shall send to each of SAP and Oracle an account statement on the first Business Day of each month commencing after the date of this Agreement, indicating the total amount of the Escrow Fund, the investments in which the Escrow Fund are invested, and the division of assets in that account.

4. **Disposition and Termination.**

(a) Prior to the Termination Date, the Escrow Agent shall release the Escrow Fund to SAP or Oracle, as the case may be, only upon receipt by the Escrow Agent of any of the following:

(i) a Joint Written Instruction (as defined in Section 4(e) below) to the Escrow Agent signed by SAP and Oracle, whereupon the Escrow Agent shall release funds held in the Escrow Fund to SAP or Oracle as set forth in such instruction;

(ii) a Certification (as defined in Section 4(e) below) by Oracle that the United States Court of appeals for the Ninth Circuit has entered judgment affirming the Judgment in full on SAP's appeal (regardless of disposition of any appeal by Oracle) or dismissing SAP's appeal, and either (A) the deadline to petition for a writ of certiorari in the United States Supreme Court has passed and no such petition has been filed, (B) the United States Supreme Court has denied such petition for writ of certiorari, or (C) the United States Supreme Court has affirmed the court of appeals' judgment in full, and upon such Certification, SAP shall have until 5 p m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of the Certification from Oracle to (1) send a Confirmation (as defined in Section 4(e) below), in which case the Escrow Agent shall, upon receipt of such Confirmation (or the failure to receive such Confirmation or a Notice of Dispute (as defined in Section 4(e) below) by the time set forth above) release to Oracle the Minimum Escrow Amount or any lesser amount requested by Oracle in the Certification, or (2) send a Notice of Dispute (as defined in Section 4(e) below), in which case the Escrow Agent shall take no further action unless or until it has received a subsequent instruction pursuant to Section 4(a) or 4(c) of this Agreement;

(iii) a Certification by Oracle that the United States Court of Appeals for the Ninth Circuit has entered judgment affirming the Judgment in part (or modifying the judgment) on SAP's appeal (regardless of disposition of any appeal by Oracle), and either (A) the deadline to petition for a writ of certiorari in the United States Supreme Court has passed and no such petition

has been filed, (B) the United States Supreme Court has denied such petition for writ of certiorari, or (C) the United States Supreme Court has affirmed the court of appeals' judgment, and upon such Certification, SAP shall have until 5 p m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of the Certification from Oracle to (1) send a Confirmation, in which case the Escrow Agent shall, upon receipt of such Confirmation (or the failure to receive such Confirmation or a Notice of Dispute by the time set forth above) release to Oracle the Minimum Escrow Amount or any lesser amount requested by Oracle in the Certification, or (2) send a Notice of Dispute, in which case the Escrow Agent shall take no further action unless or until it has received a subsequent instruction pursuant to Section 4(a) or 4(c) of this Agreement;

(iv)   a Certification by Oracle that all direct appeals and petitions for certiorari available to SAP in the Case have been exhausted, no further direct appellate review of the Judgment is available to SAP, and Oracle is entitled to collect a sum certain in satisfaction of the Judgment, and upon such Certification, SAP shall have until 5 p m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of the Certification from Oracle to (1) send a Confirmation, in which case the Escrow Agent shall, upon receipt of such Confirmation (or the failure to receive such confirmation or a Notice of Dispute by the time set forth above) release to Oracle the Minimum Escrow Amount or any lesser amount requested by Oracle in the Certification, or (2) send a Notice of Dispute, in which case the Escrow Agent shall take no further action unless or until it has received a subsequent instruction pursuant to Section 4(a) or 4(c) of this Agreement;

(v)   either a Certification from Oracle that the District Court or other court of competent jurisdiction has issued an order commanding the Escrow Agent to release Escrowed Funds to Oracle, or the Escrow Agent's receipt of such an order purporting to be from the District Court or other court of competent jurisdiction, whereupon the Escrow Agent shall release Escrowed Funds to Oracle in accordance with such an order;

(vi)   a Certification by Oracle that (A) that the conditions set forth in clauses (i)-(v) above all remain unsatisfied, (B) the Judgment remains unsatisfied, (C) the Termination Date of the Escrow Agreement will occur within 30 days of the date of such certification, the Escrow Agreement has not been extended, and acceptable security has not been provided by SAP, and (D) the amount being requested to be released does not exceed the amount Oracle is entitled to pursuant to the Judgment and post-judgment interest, and upon such Certification, SAP shall have until 5 p.m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of the Certification from Oracle to (1) send a Confirmation, in which case the Escrow Agent shall, upon receipt of such Confirmation (or the failure to receive such Confirmation or a Notice of Dispute by the time set forth above) release to Oracle the Minimum Escrow Amount or any lesser amount requested by Oracle in the Certification, or (2) send a Notice of Dispute, in which case the Escrow Agent shall take no further action unless or until it has received a subsequent instruction pursuant to Section 4(a) or 4(c) of this Agreement; or

(vii)   a Certification by SAP that the amount in the Escrow Fund exceeds the Minimum Escrow Amount and a calculation of the amount of the Escrow Fund requested to be released, and upon such Certification, Oracle shall have until 5 p m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of the Certification from SAP to (1) send a Confirmation, in which case the Escrow Agent shall, upon receipt of such Confirmation (or the failure to receive such Confirmation or a Notice of Dispute by the time set forth above) release to SAP the amount requested by SAP in the Certification, or (2) send a Notice of Dispute, in which case the Escrow Agent shall take no further action unless or until it has received a subsequent instruction pursuant to Section 4(a) or 4(c) of this Agreement.

(b) Oracle and SAP stipulate that if any of the judgments or orders referred to in provisions (ii), (iii), (iv) or (v) above occurs, or the conditions identified in provisions (vi) or (vii) above occur, any stay of

enforcement of the Judgment will be lifted to permit Oracle to seek, and the Escrow Agent to pay, the sums due to Oracle under this agreement.

(c) This Agreement shall terminate, and the Escrow Fund shall be distributed to SAP, upon receipt by the Escrow Agent of any of the following (or upon the occurrence of the date and receipt of the instructions described in clause (vi) below) (the "*Termination Date*") :

(i) the Escrow Agent receives a Certification from Oracle stating that the Judgment has been satisfied in full, whether through the release of funds in the Escrow Fund or otherwise, and SAP has sent a Confirmation by 5 p.m. New York time on the date that is seven Business Days following the Escrow Agent's receipt of such Certification (or SAP has failed to send a Confirmation by the time set forth above);

(ii) the Escrow Agent receives a Certification from Oracle stating that the United States Court of Appeals for the Ninth Circuit has entered judgment reversing or vacating the Judgment, and either (A) the deadline to petition for a writ of certiorari in the United States Supreme Court has passed and no such petition has been filed, (B) the United States Supreme Court has denied such petition for writ of certiorari, or (C) the United States Supreme Court has affirmed the court of appeals' judgment, and SAP has sent a Confirmation by 5 p.m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of such Certification (or SAP has failed to send a Confirmation by the time set forth above); or

(iii) the Escrow Agent receives a Certification from Oracle confirming all of the following: (A) the United States Court of Appeals for the Ninth Circuit has entered judgment modifying the Judgment; (B) either (1) the deadline to petition for a writ of certiorari in the United States Supreme Court has passed and no such petition has been filed, (2) the United States Supreme Court has denied such petition for writ of certiorari, or (3) the United States Supreme Court has affirmed the court of appeals' judgment; and (C) the modified judgment has been satisfied in full, whether through the release of the release of funds in the Escrow Fund or otherwise, and SAP has sent a Confirmation by 5 p.m. New York time, on the date that is seven Business Days following the Escrow Agent's receipt of such Certification (or SAP has failed to send a Confirmation by the time set forth above);

(iv) Oracle and SAP agree in writing that the Escrow Agreement shall terminate;

(v) the Escrow Agent receives either (A) an order purporting to be from the District Court or other court of competent jurisdiction, or (B) a Certification from either Oracle or SAP enclosing a copy of a file-stamped order entered by the District Court or other court of competent jurisdiction, ordering that the Escrow Agreement shall terminate; provided, that the Termination Date shall occur on the 14th day after the date indicated on such order as date of the entry of such order, regardless of the day on which such order is received by the Escrow Agent; or

(vi) January 1, 2026, unless, as of such date (1) the Escrow Agent receives a Certification from either Oracle or SAP stating that there is a dispute pending in the District Court or other court of competent jurisdiction regarding the disposition of the Escrow Fund, (2) the Parties otherwise agree to extend such date and provide a Joint Written Instruction to the Escrow Agent to such effect, or (3) the Escrow Agent receives an order purporting to be from the District Court or other court of competent jurisdiction, or a Certification from either SAP or Oracle enclosing a copy of such order, ordering otherwise.

(d) Upon delivery of the entirety of the Escrow Fund to Oracle and/or SAP in accordance with the provisions of subsections 4(a) or 4(c) above by the Escrow Agent, this Agreement shall terminate, subject to the provisions of Section 8(b).

(e) As used in this Agreement, the following terms have the following meanings:

4

"*Certification*" means, with respect to any certification permitted to be sent by either Party pursuant to subsection 4(a) or subsection 4(c), a written notice by such Party to the Escrow Agent with a copy to the other Party meeting the requirements of Section 10 hereof (and subject to the Security Procedures set forth in Section 11 hereof) which (i) contains a certification by such Party as to the matters being asserted pursuant to subsection 4(a) or subsection 4(c), and (ii), if such certification is seeking the release of the Escrow Funds, includes a calculation of the amount of Escrow Funds being requested to be released.

"*Confirmation*" means, with respect to any matter that is required to be confirmed by a Party pursuant to subsection 4(a) or subsection 4(c), a written confirmation by such Party to the Escrow Agent with a copy to the other Party meeting the requirements of Section 10 hereof and which confirms the matter requiring confirmation pursuant to subsection 4(a) or subsection 4(c).

"*Joint Written Instruction*" means a writing signed by both of SAP and Oracle and sent to the Escrow Agent and meeting the requirements of Section 10 hereof and subject to the Security Procedures set forth in Section 11.

"*Notice of Dispute*" means, with respect to a Certification sent by a Party pursuant to subsection 4(a) hereof, a written notice sent by the other Party to the Escrow Agent with a copy to the Party sending the Certification, meeting the requirements of Section 10 hereof and certifying that the disputing Party is disputing the matters asserted by the other Party in such Certification. If the Parties fail to come to a resolution regarding the disputed matters by 5 p.m. New York time on the seventh Business Day following the date the Notice of Dispute is received by the Escrow Agent, then the dispute which is the subject of the Notice of Dispute shall be presented to the District Court, or if jurisdiction in the District Court is unavailable, to the Superior Court for the City and County of San Francisco, California promptly thereafter.

5. **Escrow Agent and Administrator**.  (a) For purposes of this Section 5, JPMC, whether in its capacity as Escrow Agent or Administrator, shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied.  JPMC shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith**,** nor shall JPMC be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of JPMC be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement.  In the event of any conflict between the terms and provisions of this Agreement, any schedule or exhibit attached to this Agreement, or any other agreement among the Parties, the terms and conditions of this Agreement shall control.  JPMC may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper Party or Parties without inquiry and without requiring substantiating evidence of any kind except as provided in Sections 10 and 11 below.  The Escrow Agent shall not be liable to any Party, any beneficiary, or any other person for refraining from acting upon any instruction setting forth, claiming, containing, objecting to, or related to the transfer or distribution of the Escrow Fund, or any portion thereof, unless such instruction shall have been delivered to the Escrow Agent in accordance with Sections 10 and 11 below and the Escrow Agent has been able to satisfy any applicable security procedures as may be required thereunder. JPMC shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request.

(b) JPMC shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that a final adjudication of a court of competent jurisdiction determines that JPMC's gross negligence or willful misconduct was the primary cause of any loss to either Party.  JPMC may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents.  JPMC may consult with counsel, accountants and other skilled persons to be selected and retained by it.  JPMC shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons.  In the event that JPMC shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto

5

which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely the Escrow Fund until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of JPMC or by a final and non-appealable order or judgment of a court of competent jurisdiction. The Parties agree to pursue any redress or recourse in connection with any dispute without making JPMC a party to the same, except to the extent that JPMC is necessary to perform any duties or obligations arising out of the dispute between the Parties, including compliance with any court order directing the release of money from the Escrow Fund. Anything in this Agreement to the contrary notwithstanding, in no event shall JPMC be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if JPMC has been advised of the likelihood of such loss or damage and regardless of the form of action. Notwithstanding the foregoing, JPMC agrees that it shall comply with all orders originating from the District Court or any other court of competent jurisdiction over the matters provided for in this Agreement.

6. **Succession.** (a) For purposes of this Section 6, JPMC, whether in its capacity as Escrow Agent or Administrator, may resign and be discharged from its duties or obligations hereunder by giving 30 days advance notice in writing of such resignation to the Parties specifying a date when such resignation shall take effect. If the Parties have failed to appoint a successor escrow agent or administrator prior to the expiration of 30 days following receipt of the notice of resignation, JPMC may petition any court of competent jurisdiction for the appointment of a successor escrow agent or administrator or for other appropriate relief, and any such resulting appointment shall be binding upon all of the Parties hereto. JPMC's sole responsibility after such 30 day notice period expires shall be to hold the Escrow Fund (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent or administrator, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of Section 8(b). In accordance with Section 8(b), JPMC shall have the right to withhold an amount equal to any amount due and owing to JPMC, plus any costs and expenses JPMC shall reasonably believe may be incurred by JPMC in connection with the termination of this Agreement.

(b) Any entity into which JPMC may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Agreement without further act.

7. **Compensation and Reimbursement.** SAP agrees (a) to pay JPMC upon the execution of this Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, along with any fees or charges for accounts, including those levied by any governmental authority which JPMC may impose, charge or pass-through, which unless otherwise agreed in writing shall be as described in Schedule 2 attached hereto, and (b) to pay or reimburse JPMC upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the performance of this Agreement. Fees and expenses for any Qualified Third Party (as defined in Section 9 below) shall be above and beyond JPMC's fees as described in Schedule 2 attached hereto, which such fees shall be billed at cost and passed on to SAP. Notwithstanding the above, JPMC is hereby authorized to deduct its compensation as described on Schedule 2, including those fees due any Qualified Third Party pertaining to Section 9(b) below, directly from the Escrow Fund. The obligations set forth in this Section 7 shall survive the termination of this Agreement and the resignation, replacement or removal of JPMC.

8. **Indemnity.** (a) The Parties shall severally and not jointly indemnify, defend and save harmless JPMC, in its capacity as Escrow Agent and its affiliates and their respective successors, assigns, agents and employees (the "*Idemnitees*") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, costs or expenses (including, without limitation, the fees and expenses of outside counsel and experts and their staffs and all expense of document location, duplication and shipment)(collectively "*Losses*") arising out of or in connection with (i) JPMC's execution and performance of this Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except in the case of any Indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been primarily caused by the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or other directions,

6

whether joint or singular, from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof; provided that Oracle's several obligations under this Section shall be limited solely to indemnification of JPMC for any Losses arising solely from the conduct of Oracle. The indemnity obligations set forth in this Section 8(a) shall survive the resignation, replacement or removal of JPMC or the termination of this Agreement.

(b) The Parties hereby grant to JPMC, whether in its capacity as Escrow Agent or Administrator, a lien on, right of set-off against and security interest in, the Escrow Fund for the payment of any claim for indemnification, fees, expenses, and amounts due to JPMC or an Indemnitee. In furtherance of the foregoing, JPMC is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Escrow Fund for its own account or for the account of an Indemnitee any amounts due to JPMC or to an Indemnitee under Sections 6(a), 7 or 8(a) of this Agreement. To the extent that the Escrow Agent exercises any such right to charge against the Escrow Fund, and such charge results in the Escrow Fund being less than the Minimum Escrow Amount, SAP shall within three Business Days deposit additional funds with the Escrow Agent such that the Escrow Fund is at least equal to the Minimum Escrow Amount.

9. **Patriot Act Disclosure/Taxpayer Identification Numbers/Tax Reporting.**

(a) **Patriot Act Disclosure.** Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the Parties acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Parties identity including without limitation name, address and organizational documents ("identifying information"). The Parties agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b) **Certification and Tax Reporting.** (i) The Parties have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation.

(ii) The Escrow Fund is to be treated for federal income tax purposes as a qualified settlement fund within the meaning of U.S. Department of Treasury ("Treas.") Reg. § 1.468B-1. JPMC shall be the "administrator" (as that term is used in Treas. Reg. §1.468B-2(k)(3)) of the Escrow Fund and as such will file such federal, state or local returns, pay such federal, state or local taxes, comply with applicable federal, state or local information reporting requirements and otherwise generally comply with the rules and regulations applicable to qualified settlement funds under Treas. Reg. § 1.468B-1 and relevant provisions of state and local tax law. The Administrator is explicitly authorized to use the Escrow Fund (A) to satisfy such federal, state and local taxes as may be due with respect to the Escrow Fund and (B) to reduce the amount of any payments under this Agreement by taxes paid or which the Administrator reasonably concludes may become payable. To the extent that the Escrow Agent exercises any such right to charge against the Escrow Fund, and such charge results in the Escrow Fund being less than the Minimum Escrow Amount, SAP shall within three Business Days deposit additional funds with the Escrow Agent such that the Escrow Fund is at least equal to the Minimum Escrow Amount. SAP will comply with the provisions of the U.S. Department of Treasury Regulations applicable to the transferor to a qualified settlement fund and the Administrator will comply with its duties and obligations under the Reg. §1.468B rules. In the event that the Escrow Fund is found by the Internal Revenue Service or other governmental authority not to qualify as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, the Parties agree for tax purposes to treat the Escrow Fund as being wholly for the benefit of SAP.

(iii) The Administrator, and, as required, SAP, shall jointly and timely make (or cause to be jointly and timely made) the "relation-back election" (as defined in Treas. Reg. § 1.468-1B) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations (or any successor regulations). It shall be the responsibility of the Administrator to timely and properly prepare, and deliver the necessary documentation (including but not limited to the disclosures and elections referred to above) for signature by all necessary Parties, and thereafter to cause the appropriate filing to occur.

(iv) The Parties hereto acknowledge that the Administrator shall not be held accountable for any fines, penalties or interest associated with late filings as a result of the failure or refusal of others to cooperate with the Administrator causing such filings to occur on a timely basis. SAP shall indemnify the Administrator for any fines, penalties or interest associated with late filings as a result of the failure or refusal of others, other than Oracle, to cooperate with the Administrator causing such filings to occur on a timely basis. The Administrator may retain or hire a qualified third party or parties ("**Qualified Third Party**") at reasonable market rates to perform any of its duties or responsibilities specified herein or in Treas. Reg. § 1.468B-2. The reasonable market fees or costs of such Qualified Third Party shall be billed to the Administrator and shall be paid from amounts on deposit in the Escrow Fund. The Administrator shall hold back an estimated amount from the final disbursement of the Escrow Fund to cover any tax payments and fees, including those fees of any Qualified Third Party. To the extent that the Escrow Agent exercises any such right to hold back any such amount, and such hold back results in an amount less than the amount, if any, required to be delivered to Oracle pursuant to Section 4, SAP shall within three Business Days deposit additional funds with the Escrow Agent such that the amount of the Escrow Fund released in accordance with Section 4 is equal to the required amount. Any remaining amounts not used once all tax payments and fees have been paid will be returned to the Party or Parties as directed in the final disbursement letter received by JPMC in accordance with this Agreement.

10.     **Notices.** Any communication, notification, or certification by a Party to JPMC shall be in writing and made by any person listed on Schedule 1 hereto. Any communication, notification, or certification to a Party shall also be made to counsel for that Party. Any Party who provides a communication, notification, or certification to JPMC shall simultaneously send a copy of such communication, notification, or certification to counsel for the opposing Party. As used in the Escrow Agreement, counsel for a Party means counsel of record for that Party in the Case. All communications hereunder shall be in writing and except for communications from the Parties setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to funds transfer instructions (all of which shall be specifically governed by Section 11 below), shall be deemed to be duly given after it has been received and the receiving party has had a reasonable time to act upon such communication if it is sent or served, attaching any required documents:

(a) by facsimile;
(b) by overnight courier; or
(c) by prepaid registered U.S. Mail, return receipt requested;

to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

If to SAP                     Brad Brubaker
                              SAP America, Inc.
                              3999 West Chester Pike
                              Newtown Square, PA 19073
                              Tel No.: (610) 661-3273
                              Fax No.: (610) 661-3274
                              E-Mail: brad.brubaker@sap.com

                              And

                              Tharan Gregory Lanier, Esq.
                              Jones Day
                              1755 Embarcadero Road
                              Palo Alto, CA
                              Tel. No.: (650) 739-3939
                              Fax No.: (650) 739-3900
                              E-Mail: tglanier@jonesday.com

|  |  |
|---|---|
| If to Oracle | Jennifer Gloss, Esq.<br>Oracle USA, Inc.<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA  94070<br>Tel. No.: (650) 506-8673<br>Fax No.: (650) 506-7144<br>E-Mail:  jennifer.gloss@oracle.com<br><br>And<br><br>Geoffrey Howard, Esq.<br>Bingham McCutchen LLP<br>3 Embarcadero Center<br>San Francisco, CA 94111<br>Tel. No.: (415) 393-2485<br>Fax No.: (415) 393-2286<br>E-Mail: geoff howard@bingham.com |
| If to the Escrow Agent<br>at its Notice Office | JPMorgan Chase Bank, N.A.<br>Escrow Services<br>420 W. Van Buren Street<br>IL 1-0113<br>Chicago, IL 60606<br>Attention:  Chris Koenig<br>Tel. No.: (248) 738-4306<br>Fax No.:  (312) 954-0430<br>E-Mail: christopher n.koenig@jpmorgan.com |

Notwithstanding the above, in the case of communications delivered to JPMC, such communications shall be deemed to have been given on the date that such communication is received by an officer of JPMC or any employee of JPMC who reports to any such officer at the above referenced office in the manner provided above and confirmation of receipt of such communication is received.  For purposes of this Agreement, "***Business Day***" shall mean any day other than a Saturday, Sunday, New Year's Day Observed, Martin Luther King, Jr. Day, President's Day, Memorial Day, Independence Day Observed, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day and Christmas Day Observed or any other day on which JPMC located at the Notice Office above is required by law or executive order to remain closed.

11.     **Security Procedures.**  (a)  Notwithstanding anything to the contrary as set forth in Section 10, any instructions (including any Certification, Confirmation, Notice of Dispute or Joint Written Instructions) setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of funds, including but not limited to any such funds transfer instructions that may otherwise be set forth in a written instruction permitted pursuant to Section 4 of this Agreement, may be given to the Escrow Agent only by confirmed facsimile, overnight courier or registered U.S. mail, return receipt requested and no instruction for or related to the transfer or distribution of the Escrow Fund, or any portion thereof, shall be deemed delivered and effective unless the Escrow Agent actually shall have received such instruction by facsimile, overnight courier or registered U.S. mail, return receipt requested at the number or address and in the manner provided to the Parties by the Escrow Agent in accordance with Section 10 and as further evidenced by a confirmation by the Escrow Agent in accordance with Section 11(b). Any Party who provides such instructions to the Escrow Agent shall simultaneously send a copy of such instructions (in the same manner as sent to the Escrow Agent) to counsel for the opposing Party by facsimile, overnight courier or registered and U.S. Mail, as set forth in Section 10.

(b)     In the event Certification, Confirmation, Notice of Dispute, Joint Written Instruction or any other instructions are so received in any form (as specified above) by the Escrow Agent, the Escrow Agent shall seek confirmation of such instructions from each Party by telephone call-back to the persons or persons designated on

Schedule 1 hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated.  Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on Schedule 1.  The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent.  If the Escrow Agent is unable to contact any of the authorized representatives identified in Schedule 1, the Escrow Agent is hereby authorized both to receive written instructions from and seek confirmation of such instructions by telephone call-back to any one or more of the Parties' executive officers, ("***Executive Officers***"), as the case may be, which shall consist of persons with the titles of_____.  Such "Executive Officer" shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the recipient's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by the confirmed recipient to identify (i) the recipient, (ii) the recipient's bank, or (iii) an intermediary bank.  The Escrow Agent may apply any of the Escrow Fund for any payment order it executes using any such identifying number provided by the recipient, even when its use may result in a person other than the recipient being paid, or the transfer of funds to a bank other than the recipient's bank or an intermediary bank designated, provided, that the Escrow Agent will cooperate with the recipient to recover any funds delivered in error.

(c) SAP acknowledges that the Escrow Agent is authorized to use the following funds transfer instructions to disburse any funds due to SAP under this Agreement:

| | |
|---|---|
| SAP's Bank account information: | Bank name:<br>Bank Address:<br>ABA number:<br>Account name:<br>Account number: |

Oracle acknowledges that the Escrow Agent is authorized to use the following funds transfer instructions to disburse any funds due to Oracle under this Agreement:

| | |
|---|---|
| Oracle's Bank account information: | Bank name:<br>Bank Address:<br>ABA number:<br>Account name:<br>Account number: |

(d) The Parties acknowledge that the security procedures set forth in this Section 11 are commercially reasonable.

12.     **Compliance with Court Orders.**  In the event that any of the Escrow Fund shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

13.     **Miscellaneous.**  The provisions of this Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by JPMC and the Parties.  Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by JPMC nor any Party, except as provided in Section 6, without the prior consent of JPMC and the other Parties.  This Agreement shall be governed by and construed under the laws of the State of California.  Each Party and JPMC irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the United States District Court for the

Northern District of California, Oakland Division; provided, that if such court lacks jurisdiction over the Parties relative to this Agreement, then each Party and JPMC consent to the jurisdiction of the Superior Court for the City and County of San Francisco, California. For the purposes of resolution of any dispute relating to this Agreement, the Parties agree to submit a stipulation and proposed order to the Honorable Phyllis J. Hamilton of the United States District Court for the Northern District of California, Oakland Division within seven business days of the Effective Date above, confirming that Judge Hamilton shall retain jurisdiction over this Agreement.  To the extent that in any jurisdiction either Party may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution attachment (before or after judgment), or other legal process, such Party shall not claim, and it hereby irrevocably waives, such immunity.  The Parties and JPMC further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.  No party to this Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, or other causes reasonably beyond its control.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.  A person who is not a party to this Agreement shall have no right to enforce any term of this Agreement. The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to JPMC shall comply with applicable laws and regulations.  Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.  Except as expressly provided in Section 8 above, nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than JPMC and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Agreement or any funds escrowed hereunder.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

**SAP AG**

By:_____

Name:_____

Title: _____

**SAP AMERICA, INC.**

By:_____

Name:_____

Title: _____

**TOMORROWNOW, INC.**

By:_____

Name:_____

Title: _____

**ORACLE INTERNATIONAL CORPORATION**

By:_____

Name:_____

Title: _____

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**as Escrow Agent and Administrator**

By:_____

Name:_____

Title: _____

**SCHEDULE 1**

**Telephone Number(s) and authorized signature(s) for**
**Person(s) Designated to give Funds Transfer Instructions, Certifications, Confirmations, and Notices of Dispute**

If from SAP:

    Name      Telephone Number      Signature

1. _____   _____   _____
2. _____   _____   _____
3. _____   _____   _____

If from Oracle:

    Name      Telephone Number      Signature

1. _____   _____   _____
2. _____   _____   _____
3. _____   _____   _____

**Telephone Number(s) for Call-Backs and**
**Person(s) Designated to Confirm Funds Transfer Instructions, Certifications, Confirmations and Notices of Dispute**

If from SAP:

    Name      Telephone Number

1. _____   _____
2. _____   _____
3. _____   _____

If from Oracle:

    Name      Telephone Number

   _____   _____
2. _____   _____
3. _____   _____

**SCHEDULE 2**

J.P.Morgan

## Schedule of Fees for Escrow Agent Services

Based upon our current understanding of your proposed transaction, our fee proposal is as follows:

**Account Acceptance Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . …. TEXT REMOVED - NOT RELEVANT TO MOTION

Encompassing review, negotiation, and execution of governing documentation, opening of the account, and completion of all due diligence documentation. Payable upon closing.

**Annual Administration Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TEXT REMOVED - NOT RELEVANT TO MOTION

The Administration Fee covers our usual and customary ministerial duties, including record keeping, distributions, document compliance, and such other duties and responsibilities expressly set forth in the governing documents for each transaction. Payable upon closing, and annually in advance thereafter without pro-ration for partial years.

**Extraordinary Services and Out-of Pocket Expenses**

Any additional services beyond our standard services as specified above, and all reasonable out-of-pocket expenses including attorney's or accountant's fees and expenses will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at the Bank's then standard rate. Disbursements, receipts, investments or tax reporting exceeding 25 items per year may be treated as extraordinary services thereby incurring additional charges. The Escrow Agent may impose, charge, pass-through and modify fees and/or charges for any account established and services provided by the Escrow Agent, including but not limited to, transaction, maintenance, balance-deficiency, and service fees and other charges, including those levied by any governmental authority.

**Disclosure & Assumptions**

- Please note that the fees quoted are based on a review of the transaction documents provided and an internal due diligence review. JPMorgan reserves the right to revise, modify, change and supplement the fees quoted herein if the assumptions underlying the activity in the account, level of balances, market volatility or conditions or other factors change from those used to set our fees.

- The Escrow Fund shall be continuously invested in a JPMorgan Chase Bank money market deposit account ("MMDA") or a JPMorgan Chase Bank Cash Compensation account. MMDA and Cash Compensation Accounts have rates of compensation that may vary from time to time based upon market conditions. The Annual Administration Fee would include a supplemental charge up to 25 basis points on the Escrow Fund amount if another investment option were to be chosen.

- The Parties acknowledge and agree that they are permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from an MMDA per calendar month or statement cycle or similar period. If the MMDA can be accessed by checks, drafts, bills of exchange, notes and other financial instruments ("Items"), then no more than three (3) of these six (6) transfers may be made by an Item. The Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice (which notice shall be deemed to have been received by the Escrow Agent on the day any Joint Written Instruction, Certification or Confirmation is received in accordance with Section 4 of this Agreement) prior to a withdrawal from a money market deposit account; however, the Escrow Agent does not presently exercise this right.

- Payment of the invoice is due upon receipt.

**Compliance**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account. We may ask for information that will enable us to meet the requirements of the Act.

NYI-4357400v3