Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:     (650) 739-3939
Facsimile:     (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:     (832) 239-3939
Facsimile:     (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 07-CV-1658 PJH (EDL) |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO ORACLE'S CONDITIONAL MOTION FOR NEW TRIAL** |
| v. | Date:        July 13, 2011 |
| SAP AG, et al., | Time:        9:00 a.m. |
| Defendants. | Courtroom: 3, Third Floor |
| | Judge:      Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF OPPOSITION ARGUMENT ......................... 1

II. ARGUMENT ................................................................................................................ 1

A. The Court Should Deny Oracle's Motion Because Rule 59 Does Not Permit the Requested Relief. ........................................................................................... 1

B. Oracle's Substantive Arguments Lack Merit. .......................................................... 2

1. The Court Properly Excluded Cross-Sell and Up-Sell Evidence. ................. 3

(a) Oracle Failed to Timely Produce Cross-Sell and Up-Sell Information. ................................................................................... 3

(b) Oracle's Conduct Unfairly Prejudiced Defendants. ....................... 5

(c) Oracle Had Ample Notice of Exclusion. ......................................... 8

(d) Oracle Was Not Unfairly Prejudiced. ............................................ 10

2. The Verdict Form and Infringer's Profits Instruction Were Proper. ........... 11

3. The Court Properly Excluded Evidence of Saved Development Costs. ....... 14

4. The Court Did Not Err in Admitting Clarke's Causation Testimony. .......... 17

III. CONCLUSION ........................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
5
    435 F.3d 1356 (Fed. Cir. 2006) ............................................................................................. 13

6
*Bruce v. Weekly World News, Inc.*,
    150 F. Supp. 2d 313 (D. Mass. 2001) .................................................................................... 13

7
*Calderon v. Kansas Dept. of Soc. & Rehab. Servs.*,
8
    181 F.3d 1180 (10th Cir. 1990) ................................................................................................ 9

9
*Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.*,
10
    No. CV-08-0965-PHX-FJM, 2009 WL 2259734 (D. Ariz. July 27, 2009) ........................... 19

11
*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
    754 F.2d 826 (9th Cir. 1985) ........................................................................................... 12, 13

12
*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
13
    36 F.3d 1147 (1st Cir. 1994) .................................................................................................. 18

14
*Deltak, Inc. v. Advanced Sys., Inc.*,
    767 F.2d 357 (7th Cir. 1985) .................................................................................................. 15
15

16
*Doe v. Cutter Biological, Inc.*,
    971 F.2d 375 (9th Cir. 1992) .................................................................................................. 18

17
*Dolby Labs., Inc. v. Lucent Techs. Inc.*,
18
    No. C 01-20709 JF, 2005 WL 2171921 (N.D. Cal. Sept. 6, 2005) .......................................... 2

19
*Gensci OrthoBiologics v. Osteotech, Inc.*,
    No. CV 99-10111 MRP, 2001 WL36239743 (C.D. Cal. Oct. 18, 2001) ................................. 7
20

21
*In Re Rubin*,
    769 F.2d 611 (9th Cir. 1985) .................................................................................................... 7

22
*Indus. Auto. Supply, LLC v. United Rentals Highway Techs.*,
23
    No. 3:04-cv-99, 2006 WL 5219390 (D. N.D. Feb. 8, 2006) .................................................. 18

24
*Locklin v. Switzer Bros., Inc.*,
    235 F. Supp. 904 (N.D. Cal. 1964) ....................................................................................... 16
25

26
*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................... 6

27
*Mars, Inc. v. Coin Acceptors, Inc.*
28
    527 F.3d 1359 (Fed. Cir. 2008) ............................................................................................. 15

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Molski v. M.J. Cable, Inc.*,

4
   481 F.3d 724 (9th Cir. 2007)..................................................................................... 2

5

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001)..................................................................................... 10

6

*NetQuote, Inc. v. Byrd*,

7
   No. 07-cv-00630, 2008 WL 2442048 (D. Colo. June 13, 2008) ...................... 18, 19

8

*Presidio Components Inc, v. Am. Tech. Ceramics Corp.*,

9
   No. 08-CV-335-IEG (NLS), 2010 U.S. Dist. LEXIS 79039 (S.D. Cal. Aug. 5, 2010) ......... 13

10

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   254 F.R.D. 597 (N.D. Cal. 2008)............................................................................. 17

11

*Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*,

12
   Civ. A. No. 95-1376, 1998 WL 151806 (E.D. Pa. April 1, 1998) ........................ 19

13

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*,

14
   289 U.S. 689 (1933).......................................................................................... 6, 16

15

*Trans-World Mfg. Co. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984)............................................................................. 16

16

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,

17
   982 F.2d 363 (9th Cir. 1992).................................................................................... 7

18

*United States v. Chang*,

19
   207 F.3d 1169 (9th Cir. 2000).................................................................................. 17

20

*United States v. Nat'l Med. Enters., Inc.*,
   792 F.2d 906 (9th Cir. 1986)..................................................................................... 7

21

**STATUTES**

22

17 U.S.C. § 504(b) (2010)...................................................................................... 11, 13

23

Fed. R. Civ. P. 16 ..................................................................................................... 4, 8

24

Fed. R. Civ. P. 37 ..................................................................................................... 7, 8

25

Fed. R. Civ. P. 59 ........................................................................................... 1, 2, 3, 4, 6

26

27

28

# TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

Gordon V. Smith & Russell L. Parr, *Intellectual Property, Valuation, Exploitation, and
Infringement Damages* (2005 ed.) .......................................................................... 15

1    **I.        INTRODUCTION AND SUMMARY OF OPPOSITION ARGUMENT**

2            Oracle's "conditional" motion for a new trial under Rule 59 should be denied for two

3    independent and dispositive reasons.

4            First, despite being styled as a "conditional" motion for new trial under Rule 59, Oracle in

5    fact does not request a new trial, argue that a new trial is warranted, or pretend that the issues it

6    raises meet the requirements for a new trial.  Oracle is clearly satisfied with its grossly excessive

7    $1.3 billion award.

8            Its sole requests are "evidentiary and instructional rulings" should the Court decide that

9    Defendants are entitled to a new trial.  Thus, Oracle's "new trial" motion is, in reality a premature

10   motion in limine designed to maximize its ability to obtain another excessive award if this one is

11   thrown out.  Rule 59 does not permit such relief, and Oracle's motion should be denied on this

12   ground alone.

13           Second, even assuming Rule 59 permitted Oracle's requested relief, there is no basis for

14   the Court to reverse its prior rulings on the questions at issue.  On the merits (if they are even

15   relevant), Oracle simply recycles previously unsuccessful arguments on three evidentiary rulings

16   and one jury instruction.  The Court ruled correctly on each issue, and there is no basis to reverse

17   its prior rulings.  And Oracle's complaint that the verdict fell "toward the bottom of the range of

18   reasonable license amounts Oracle presented" simply confirms Defendants' argument that the

19   verdict was based not on objective evidence and reliable expert analysis but on a blizzard of

20   purported valuations and unverifiable subjective "evidence" from which the jury was encouraged

21   to simply pick a number—any number—provided that it was in the billions.  As explained in

22   Defendants' pending motion, that, not Oracle's "conditional" motion, is a proper basis on which

23   to grant a new trial.

24   **II.       ARGUMENT**

25           **A.        The Court Should Deny Oracle's Motion Because Rule 59 Does Not Permit the**

26                     **Requested Relief.**

27           Oracle purports to bring its motion under Rule 59(a), which permits a court to grant a new

28   trial "for any of the reasons for which new trials have heretofore been granted . . . ."  Fed. R. Civ.

1   P. 59(a).  However, Oracle does not actually seek a new trial or argue that any of the issues raised

2   in its motion warrant a new trial.  ECF No. 1046 (Oracle's Conditional Motion for New Trial,

3   hereinafter "Pls.' Mot.") at 1 ("Oracle does not seek a new trial.").  Instead, Oracle requests

4   "evidentiary and instructional rulings" to be applied in the new trial that SAP seeks.  *Id.* at 2

5   ("Oracle submits that if the Court were to order a new damages trial, it should correct the

6   following erroneous evidentiary and instructional rulings . . . .").  Oracle's motion is, in essence, a

7   premature motion in limine.  This is not a form of relief contemplated or permitted by Rule 59,

8   which provides only for a new trial or amendment of the judgment, and only for reasons that

9   warrant such relief.  Fed. R. Civ. P. 59.

10       Oracle does not even pretend that any of the issues it raises meet the Rule 59 standard,

11   which permits the Court to grant a new trial "only if the verdict is contrary to the clear weight of

12   the evidence, is based on false or perjurious evidence, or to prevent a miscarriage of justice."

13   *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  To the contrary, Oracle

14   specifically states that a new trial is not warranted and asks the Court to dismiss its motion if the

15   Court denies SAP's request for a new trial.  ECF No. 1046 (Pls.' Mot.) at 1 ("Oracle respectfully

16   submits that no new trial is required in this case.").

17       It is premature for Oracle to seek evidentiary and instructional rulings before a new trial

18   has been granted and its scope determined.  *See, e.g., Dolby Labs., Inc. v. Lucent Techs. Inc.*, No.

19   C 01-20709 JF, 2005 WL 2171921, at *2 (N.D. Cal. Sept. 6, 2005) (motion to exclude evidence

20   "not ripe for decision" where occurrence of trial depends on outcome of appeal).  At this stage,

21   the Court should consider the evidence and its evidentiary rulings only to the extent that they

22   facilitate a decision as to whether to adopt the judgment, alter the judgment, or order a new trial

23   under the standards of Rule 59.  That is not the premise of Oracle's request.  Thus, the Court

24   should deny Oracle's Rule 59 motion because it does not meet (or even purport to meet) the Rule

25   59 standards for a new trial.

26       **B.**     **Oracle's Substantive Arguments Lack Merit.**

27       Oracle's substantive arguments also lack merit.  The Court can and should stand by its

28   original rulings on each of these issues.

1          **1.      The Court Properly Excluded Cross-Sell and Up-Sell Evidence.**

2          In asking the Court to reverse its ruling excluding projections of Oracle's up-sell and

3   cross-sell revenue from the acquisitions of PeopleSoft and Siebel because the ruling required

4   Oracle's damages expert to reduce his valuation of the hypothetical license at issue, Oracle relies

5   on three arguments.  Each is flawed.

6          First, Oracle claims that it timely produced cross-sell and up-sell information.  This claim

7   is refuted by Magistrate Judge Laporte's 26-page sanctions order.  Second, Oracle maintains that

8   actual license sales are irrelevant in valuing a hypothetical license and that only projected sales at

9   the time of the hypothetical negotiation are relevant.  This argument ignores the well-established

10  book of wisdom doctrine and this Court's instruction to the jury on the doctrine.  It also ignores

11  that Oracle failed to produce actual sales data for the time period *before*, as well as after, the date

12  of the hypothetical negotiation.  Actual data from before the hypothetical negotiation is

13  undeniably relevant to determining the reasonableness of Oracle's projections at the time of the

14  hypothetical negotiation, and Defendants were prejudiced by Oracle's failure to produce it.  Third,

15  Oracle argues that it was surprised "mid-trial" by the exclusion of cross-sell and up-sell evidence.

16  In fact, Oracle was on notice for a full year before trial that such evidence would not be admitted

17  for any purpose, including its hypothetical license claim.

18                  **(a)      Oracle Failed to Timely Produce Cross-Sell and Up-Sell**
                           **Information.**
19

20         Oracle's claim that it timely produced cross-sell and up-sell information and that "SAP

21  had every opportunity to take further discovery" is belied by the Sanctions Order.  ECF No. 1046

22  (Pls.' Mot.) at 2-3.  Magistrate Judge Laporte found that Oracle failed to timely produce cross-sell

23  and up-sell data.  Indeed, for the first two years of discovery, Oracle denied that license sales data

24  were relevant to *any* damage theory, insisting that its damage claims were based exclusively on

25  support sales.  In her order, Magistrate Judge Laporte noted that the issue of damages discovery

26  had been raised at numerous discovery conferences and that "Plaintiffs' focus has consistently

27  been on support revenue from customers lost to TomorrowNow," leaving the Court "surprised to

28  be told at [that] late date that Plaintiffs' damages theory included . . . revenue from sources other

than support service."[1]  She noted that Plaintiffs chose to bring this case and focus damages discovery from its inception on lost support revenue and that on the very day that discovery opened, Defendants served discovery requests designed to ferret out exactly what damages were really at issue.  *Id.* at 5, 10.  She also noted that, "[i]n September 2007, Oracle responded to those early discovery requests exclusively in terms of lost support revenue, without any mention of licensing revenue and specifically disclaimed the relevance of revenue . . . from sources other than support."  *Id.* at 10.  Indeed, she found that it was not until shortly before her ruling and "after two years of discovery at a cost of millions of dollars to each side" that Defendants learned of Oracle's contention "that lost support revenue was not the primary economic harm," but rather "the greater economic harm allegedly came from lost licensing revenue." *Id.* at 17.

Magistrate Judge Laporte rejected Oracle's argument that it had "produced some documents relating to licensing."  ECF No. 482 (Sanctions Order) at 20.  She found that: "Plaintiffs' own documents indicate that, far from having decided on and disclosed the basic components of damages that they were seeking at the outset of this case and produced the supporting documents . . . they have only recently begun collecting the documents needed to support their expanded damages claims relating to . . . revenue other than for support services." *Id.* (citing statement by Oracle's damages expert that "[i]n connection with [our] analysis of lost cross-sell and up-sell opportunities, we are directing Oracle personnel to gather information").

Magistrate Judge LaPorte concluded that Oracle had unjustifiably delayed gathering cross-sell and up-sell data until 2009 and that this delay unfairly prejudiced Defendants.  ECF No. 482 (Sanctions Order) at 20-21 ("There is no excuse for only now gathering information for a major aspect of damages that Plaintiffs argue was part of this case from the outset . . . .  This information should have been gathered long ago, well prior to the former June 19, 2009 discovery cutoff in this case."); 24 ("[I]t is not reasonable to conclude that there is sufficient time for Defendants to conduct a meaningful analysis of Plaintiffs' new claims within the current pretrial and trial schedule.").  This Court confirmed those findings in its Order granting Defendants'

---

[1]  ECF No. 482 (9/17/09 Order Granting Defs.' Mot. for Preclusion of Certain Damages Evidence Pursuant to FRCP 37(c)(1) and 16(f), hereinafter "Sanctions Order") at 3-4.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
CONDITIONAL MOTION FOR NEW TRIAL
Case No. 07-CV-1658 PJH (EDL

1  motion in limine.  The Court excluded cross-sell and up-sell evidence "as part of or support for

2  [Oracle's] fair market value license claim" because Oracle "made no adequate disclosure and

3  SAP had no opportunity to take discovery . . . ."  ECF No. 914 (Final Pretrial Order) at 2, ¶ 10.

4      The cross-sell and up-sell projections on which Oracle relies for its current motion were

5  not produced until February 2009 and were embedded in a production of general PeopleSoft and

6  Siebel financial data.  Declaration of Tharan Gregory Lanier ("Lanier Decl").  ¶ 1.  Defendants

7  had no reason to believe that the projections were relevant because, as Magistrate Judge Laporte

8  noted, Oracle continued to deny that license sales were relevant to any of its damages theories

9  until April 2009.  ECF No. 482 (Sanctions Order) at 20.  By that point, Oracle's limited

10  production of cross-sell and up-sell data was "too little, too late."  *Id.* at 18.  Moreover, Oracle did

11  not disclose the details of its hypothetical license theory until November 2009, two months *after*

12  the Sanctions Order.  Lanier Decl. ¶ 2, Ex. A (9/30/10 Pretrial Hearing Tr.) at 55:13-22

13  (admission by Oracle's counsel that expert reports were not produced until "months later").

14      **(b)**    **Oracle's Conduct Unfairly Prejudiced Defendants.**

15      Oracle mistakenly asserts that actual license sales are irrelevant in valuing a hypothetical

16  license.  ECF No. 1046 (Pls.' Mot.) at 3-5 (distinguishing actual and projected license sales).

17  According to Oracle, projected sales are sufficient because a "projection does not change whether

18  the opportunity is subsequently realized or . . . not."  ECF No. 1046 (Pls.' Mot.) at 5.

19      Oracle is wrong.  Actual sales do not change projections, but they are essential to

20  determining the reasonableness of the projections.  Evidence of PeopleSoft's and Siebel's actual

21  license sales *before* the Oracle acquisitions would have shed light on the reasonableness of

22  Oracle's purported projections at the time of the acquisitions.  This, in turn, would have shed light

23  on the reliability of Oracle's damages expert's assumptions about the value of future cross-sell

24  and up-sell opportunities at the time of the hypothetical negotiations.  Similarly, evidence of

25  actual license sales *after* the acquisitions would also have helped determine the reasonableness of

26  Oracle's projections at the time of the acquisitions.

27      Had Oracle produced cross-sell and up-sell data for the time periods before and after the

28  acquisitions, Defendants' damages expert could have analyzed and tested it and reached his own

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
CONDITIONAL MOTION FOR NEW TRIAL
Case No. 07-CV-1658 PJH (EDL

1   conclusions about the value of cross-sell and up-sell opportunities and how Oracle's projections

2   should be treated in valuing the hypothetical license.  Oracle failed to produce this data.  By the

3   time Oracle began gathering the data, it was too late for Defendants' damages expert to perform a

4   meaningful analysis.  ECF No. 482 (Sanctions Order) at 24 ("[I]t is not reasonable to conclude

5   that there is sufficient time for Defendants to conduct a meaningful analysis of Plaintiffs' new

6   claims within the current pretrial and trial schedule.").  Defendants also could have used the data

7   to cross-examine Oracle's witnesses during pretrial discovery and at trial.

8         This Court did not, as Oracle contends, mistakenly "conflate" actual and projected license

9   sales.  ECF No. 1046 (Pls.' Mot.) at 4-5.  On the contrary, Defendants explained why Magistrate

10  Judge Laporte's prejudice findings apply with equal force to Oracle's hypothetical license claim,

11  and the Court agreed.  Lanier Decl. ¶ 2, Ex. B (Trial Tr.) at 823:9-826:21 ("I'm persuaded by the

12  defense position . . . . I think opportunity is close enough.").

13        Oracle's cases do not support its position.  Oracle cites several cases for the proposition

14  that the hypothetical license measure of damages rests on expectations at the time of the

15  hypothetical negotiation, not on after-the-fact sales.  ECF No. 1046 (Pls.' Mot.) at 5.  However,

16  Oracle also failed to produce actual sales data for the period *before* the date of the hypothetical

17  negotiation.  Before-the-fact sales data are undeniably relevant to determining Oracle's

18  expectations at the time of the hypothetical negotiation and assessing their reasonableness.

19  Moreover, none of Oracle's cases address the book of wisdom doctrine, which permits

20  consideration of events that occurred after the date of the hypothetical negotiation.  *See, e.g.,*

21  *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) ("[A] different

22  situation is presented if years have gone by before the evidence is offered.  Experience is then

23  available to correct uncertain prophecy.  Here is a book of wisdom that courts may not neglect.");

24  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) ("[O]ur case law

25  affirms the availability of post-infringement evidence as probative in certain circumstances . . .

26  the hypothetical negotiation analysis 'permits and often requires a court to look to events and

27  facts that occurred thereafter and that could not have been known to or predicted by the

28  hypothesized negotiators.'").  Indeed, as the jury here was instructed, after-the-fact events are

1    relevant to provide "insight into the expectations of the parties at the time the infringement first

2    began, or insight into the amount that a willing buyer would have been reasonably required to pay

3    a willing seller at the time of the infringement."  ECF No. 1005 (Final Jury Instructions) at 9.

4        Oracle's other cases involve procedural and due process concerns not present here.  In

5    both *In Re Rubin*, 769 F.2d 611, 615-19 (9th Cir. 1985) and *Gensci OrthoBiologics v. Osteotech,*

6    *Inc.*, No. CV 99-10111 MRP, 2001 WL36239743, at *11 (C.D. Cal. Oct. 18, 2001), the court

7    found that sanctions were not warranted because the misconduct at issue had caused no prejudice.

8    In addition, the Ninth Circuit in *In Re Rubin* held that the district court failed to provide

9    sufficiently detailed findings of fact, failed to consider any sanction less severe than a default

10   judgment, and failed to provide adequate notice.  None of these circumstances exists here.  This

11   Court's exclusion of cross-sell and up-sell projections to support Oracle's hypothetical license

12   theory was based on the detailed findings in Magistrate Judge Laporte's 26-page Sanctions Order

13   and the Court's correct conclusion that Magistrate Judge Laporte's prejudice findings apply with

14   equal force to Oracle's hypothetical license claim.  This case does not involve the severe sanction

15   of default or dismissal.  And, as detailed below, Oracle had ample notice that the evidence would

16   not be permitted at trial.

17       In *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, the Ninth Circuit held that it

18   was improper to exclude evidence under Rule 37 for misconduct not covered by Rule 37.  982

19   F.2d 363, 367-68 (9th Cir. 1992) (Rule 37 requires that "there be some form of court order that

20   has been disobeyed . . . .").  Here, by contrast, exclusion was based on the Sanctions Order and,

21   specifically, Magistrate Judge Laporte's finding that Oracle violated Rule 37 by failing to

22   disclose that its damages theories were based on license as well as support sales.  Moreover, in

23   *Unigard*, the Ninth Circuit nonetheless affirmed the exclusion sanction based on the district

24   court's inherent authority to exclude evidence that would unfairly prejudice the opposing party.

25   *Id.*  Similarly, this Court's exclusion of the cross-sell and up-sell projections was well within the

26   Court's inherent authority to manage the trial proceedings.

27       Finally, in *United States v. Nat'l Med. Enters., Inc.*, the issue was inadequate notice.  792

28   F.2d 906 (9th Cir. 1986).  The Ninth Circuit held that it was improper for the district court to

1    issue a dismissal sanction under Rule 37 for misconduct not covered by any prior order. *Id.* at

2    911-12. The Ninth Circuit found that prior orders relating to discovery misconduct did not give

3    clear notice that "far different" trial misconduct would result in dismissal. *Id.* As discussed

4    below, Oracle had ample notice that cross-sell and up-sell evidence would be excluded for

5    hypothetical license purposes for the same reasons, and based on the same misconduct, described

6    in the Sanctions Order.

7                           **(c)       Oracle Had Ample Notice of Exclusion.**

8            Oracle's claim that it was surprised "mid-trial" by the exclusion of cross-sell and up-sell

9    evidence is belied by the record. ECF No. 1046 (Pls.' Mot.) at 6-7. Oracle was on notice for a

10   full year before trial that cross-sell and up-sell evidence would not be admitted for any purpose,

11   including its hypothetical license claim. And Oracle has never been denied an opportunity to be

12   heard. Oracle argued three times to this Court that the Sanctions Order should not prevent it from

13   relying on cross-sell and up-sell evidence for its hypothetical license theory. The Court has

14   considered—and rejected—Oracle's arguments all three times.

15           Magistrate Judge Laporte issued the Sanctions Order on September 17, 2009. ECF No.

16   482 (Sanctions Order). Oracle filed objections with this Court on October 1, 2009. ECF No. 499

17   (Oracle's Objections to Order of Discovery Magistrate Granting Defendants' Motion for

18   Preclusion of Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 37(c) and

19   16(f)). In addition to asserting objections, Oracle requested clarification that its damages expert

20   would be permitted to offer the precluded evidence for purposes other than proving lost profits

21   damages, including in support of its expert's hypothetical license calculation. *Id.* at 14-15. In

22   response, Defendants argued that Oracle should not be permitted to offer the precluded evidence

23   to bolster other damages claims. ECF No. 526 (10/29/09 Defendants' Response to Plaintiffs'

24   Objections to Order for Sanctions) at 21-22. Specifically, Defendants argued that the prejudice

25   findings on which the Sanctions Order was based apply with equal force to other damage claims.

26   *Id.* ("If Oracle's expert is permitted to testify on the amount of the precluded lost profits damages

27   for purposes of, for example, supporting his opinion on the value of the hypothetical license (or

28   any other damage theory), the prejudice to Defendants is the same as if he was testifying for

1   purposes of the lost profits claim.  Defendants will have been deprived of a full and fair

2   opportunity to rebut that evidence by Oracle's discovery misconduct."). On November 2, 2009,

3   the Court overruled Oracle's objections and clarified that the precluded evidence would not be

4   admitted for any other purpose.  ECF No. 532 (Order) at 1 ("the precluded evidence will NOT be

5   admitted through the back door . . . .") (emphasis in original).

6        Oracle served its damages expert's report on November 16, 2009, two months after the

7   Sanctions Order.  Lanier Decl. ¶ 4.  It was clear from the report that Oracle intended to rely on

8   cross-sell and up-sell evidence to support its hypothetical license theory.  Consequently, on

9   August 5, 2010, Defendants filed a motion in limine asking the Court to confirm its ruling that

10  cross-sell and up-sell evidence would be excluded for all purposes, including hypothetical license.

11  ECF No. 728 (Defendants' Motions in Limine) at 4-5.  Defendants argued again that Magistrate

12  Judge Laporte's findings regarding Oracle's belated disclosure and the resulting prejudice to

13  Defendants apply with equal force to the hypothetical license claim.  *Id.* at 5-6 ("If Plaintiffs'

14  expert is permitted to testify on alleged lost cross-sell and up-sell opportunities to support his fair

15  market value opinion, the prejudice to Defendants is the same as if he was testifying for purposes

16  of the lost profits claim.  Defendants will have been deprived of a meaningful opportunity to rebut

17  that evidence as a result of Oracle's discovery misconduct.").  This Court agreed and granted

18  Defendants' motion, stating that Plaintiffs had made "no adequate disclosure," Defendants "had

19  no opportunity to take discovery," and that cross-sell and up-sell evidence should be excluded

20  from the "fair market value license claim for damages."  ECF No. 914 (Final Pretrial Order) at 2.

21       Oracle raised the issue a third time at trial. Lanier Decl. ¶ 3, Ex. B (Trial Tr.) at 823:9-

22  826:21.  The only difference this time was that Oracle limited its argument to evidence of cross-

23  sell and up-sell projections rather than broader cross-sell and up-sell evidence.  *Id.*  As discussed

24  above, however, the arguments of the parties focused on the same issues of inadequate disclosure

25  and prejudice to Defendants that had been argued twice before.  Oracle cannot reasonably claim

26  to have been surprised when the Court came to the same conclusion it had reached twice before.

27       Oracle's cases are inapposite.  In *Calderon v. Kansas Dept. of Soc. & Rehab. Servs.*, the

28  court held that one short statement on the last page of the plaintiff's opposition to a motion to

1    dismiss did not suffice as a formal motion to amend.  181 F.3d 1180, 1185-86 (10th Cir. 1990).

2    The case stands for the proposition that a motion must include the grounds for the motion and the

3    relief sought.  Here, Defendants complied with that requirement, as confirmed by Magistrate

4    Judge Laporte's detailed findings on Oracle's inadequate disclosure and the resulting prejudice to

5    Defendants.  When it became clear that, despite the Sanctions Order, Oracle intended to rely on

6    the precluded evidence for its hypothetical license theory, Defendants timely raised the issue in

7    their response to Oracle's objections to the Sanctions Order and again in a motion in limine.

8    Unlike in *Calderon*, there is no question that Oracle was on notice of the basis for the request for

9    relief.  Similarly, in *Navellier v. Sletten*, the court held that the court violated due process by

10   imposing a sanction *sua sponte* without first issuing an order to show cause and giving the party

11   an opportunity to be heard.  262 F.3d 923, 943 (9th Cir. 2001).  Here, by contrast, Oracle received

12   ample notice that cross-sell and up-sell evidence would be precluded for all purposes, and the

13   Court heard arguments in opposition three times.

14                    **(d)      Oracle Was Not Unfairly Prejudiced.**

15         Oracle's claim that it should have *more* than $1.3 billion in damages is staggering.  ECF

16   No. 1046 (Pls.' Mot.) at 7-8.  The $1.3 billion award already far exceeds the harm Oracle actually

17   suffered or the amount that a prudent willing buyer and seller would have agreed was a

18   reasonable fee for the use of the copyrighted works.  *See* ECF No. 1044 (Defendants' Renewed

19   Motion for Judgment as a Matter of Law and New Trial Motion, hereinafter "Defs.' Mot.") at 43-

20   44.  Oracle's argument that the jury would have awarded even more but for the Court's ruling

21   ignores that Meyer presented a huge range of supposed values for the hypothetical license fee—

22   $881 million to $2.69 billion for the PeopleSoft license and $97 million to $247 million for the

23   Siebel license—and could not commit to a specific value for either license.  *Id.* at 34-35.  Meyer

24   simply proclaimed, without any reasoned explanation, that the PeopleSoft license would be "at

25   least $1.5 billion" and the Siebel license "at least $100 million."  *Id.*  Similarly, Oracle's counsel

26   invited the jury to simply pick a number from among the many—mostly in the billions—that

27   were presented.  *Id.*  The notion that the jury would have picked a number greater than $1.3

28   billion if only cross-sell and up-sell projections had been thrown into the mix is unfounded.

1    More importantly, a sanctioned party suffers no unfair prejudice when the sanction is

2    warranted.  Here, preclusion was warranted based on Magistrate Judge Laporte's Sanctions Order.

3    In addition, it was well within this Court's inherent authority to preclude the evidence to ensure

4    that Defendants would not be prejudiced at trial by Oracle's failure to fully disclose its damages

5    theories and timely produce the relevant discovery.

6              **2.      The Verdict Form and Infringer's Profits Instruction Were Proper.**

7    Oracle next argues that the jury instruction and special verdict form were erroneous and

8    prevented the jury from considering Oracle's last minute argument that it was entitled to an award

9    of infringer's profits in addition to a hypothetical license fee.  ECF No. 1046 (Pls.' Mot.) at 8.

10   The Court's special verdict form and infringer's profits instruction correctly reflect the

11   law and the evidence.  A copyright plaintiff is entitled to recover actual damages suffered as a

12   result of the infringement plus any infringer's profits "not taken into account in computing the

13   actual damages." 17 USC § 504(b) (2010).  Oracle admits in its motion that it was not entitled to

14   infringer's profits if the hypothetical license award included, or was otherwise duplicative of,

15   infringer's profits.  ECF No. 1046 (Pls.' Mot.) at 9 ("[W]hen actual damages already include

16   infringer's profits, the plaintiff cannot recover those profits twice through an award of additional

17   infringer's profits.").  Oracle also admitted at the charging conference that the hypothetical

18   license formulation proposed by its expert included infringer's profits.  Lanier Decl. ¶ 5, Ex. C

19   (Trial Tr.) at 1958:1-5 ("[T]he law is clear that actual damages is separate from infringer's profits

20   except to the extent that the calculation of the actual damages includes the infringer's profits.  I

21   would agree that the hypothetical license, as defined precisely by our expert, does include that.").

22   These admissions are consistent with Oracle's position in the Joint Pretrial Statement that a

23   separate award of infringer's profits would be appropriate only in the event that the jury awarded

24   lost profits instead of a hypothetical license fee.  ECF No. 745 (Joint Pretrial Statement) at 9

25   ("Oracle anticipates that SAP will ask the Court or the jury to award lost profits in lieu of

26   Oracle's fair market value licenses . . . . *In that instance*, Oracle will also seek SAP's infringer's

27   profits . . . .") (emphasis added).

28

1    In providing for an award of infringer's profits only if the jury "assigned actual damages

2    in the form of lost profits" rather than a hypothetical license fee, the verdict form accurately

3    reflected the law, the evidence, and the position that Oracle and its damages expert have taken

4    throughout this litigation. ECF No. 1004 (11/23/10 Special Verdict Form). The same is true of

5    the jury instruction. Lanier Decl. ¶ 6, Ex. D (Trial Tr.) at 2215:15-19 ("If you award Oracle

6    actual damages based on the fair market value of a license for the rights infringed, that award

7    takes into account the defendants' profits attributable to their infringement and Oracle is not

8    entitled to any additional award."); *see also* ECF No. 1000 (11/21/10 Joint Final Jury Instructions)

9    at 11.

10    Thus, this Court properly rejected Oracle's eleventh-hour argument that only a

11    hypothetical license award of $1.65 billion or greater would include infringer's profits. Lanier

12    Decl. ¶ 5, Ex. C (Trial Tr.) at 1953:5-1959:22. Tellingly, Oracle has offered no legal or

13    evidentiary support that $1.65 billion is a magic threshold that should be deemed to include

14    infringer's profits while any lesser amount should not. *Id.* at 1957:9-15 ("If the jury were to come

15    back and award the $1.65 billion that Mr. Meyer proposed, I think I would agree with counsel

16    that the better view of the evidence would be that that includes infringer['s] profits. However, if

17    they came back with 897 million or some other number like that, then that is not something that

18    includes infringer's profits.").[2] Nothing in Meyer's testimony, or any other evidence presented at

19    trial, supports this claim. To the contrary, Meyer proposed a broad range of potential

20    hypothetical license values *all* of which purportedly reflected "SAP's Expected Financial Gains."

21    ECF No. 1044 (Defs.' Mot.) at 9-11.

22    *Cream Records, Inc. v. Jos. Schlitz Brewing Co.* is easily distinguished. 754 F.2d 826 (9th

23    Cir. 1985). In *Cream Records*, the infringement caused the plaintiff to lose the opportunity to

24    license the copyrighted work to a third party. The Ninth Circuit held that the plaintiff was

---

25    [2] Oracle claims, wrongly, that the Court concluded "that infringer's profits are precluded
     if the jury awarded *any* hypothetical license amount . . . ." ECF No. 1046 (Pls.' Mot.) at 8
26    (emphasis in original). What the Court actually said was "I would make a determination based on
     whether or not your expert has included [infringer's profits] in his [hypothetical license]
27    calculation." Lanier Decl. ¶ 5, Ex. C (Trial Tr.) at 1955:22-24. And, as discussed above, what
     the Court properly rejected was Oracle's arbitrary and unsupported claim that only an award of
28    $1.65 billion or more should be deemed to include infringer's profits.

1  entitled to recover from the defendants, as actual damages, the market value of that lost license

2  opportunity.  *Id.* at 827-28 ("Since defendants' unauthorized use destroyed the value of the work

3  for this purpose, plaintiff was entitled to recover that value as damages.").  The loss of a license to

4  a third party is a form of actual damage that is separate from, and clearly not duplicative of, any

5  profits the defendants might have made from the infringement.  Accordingly, the plaintiff was

6  also entitled to recover infringers' profits "attributable to the infringement and are not taken into

7  account in computing the actual damages."  17 USC § 504(b) (2010).  Here, by contrast, Oracle

8  sought actual damages in the form of a hypothetical license fee between Oracle and Defendants,

9  not the loss of a license to a third party.  And, as noted above, Oracle's own expert testified that

10  his hypothetical license fee accounted for the value to SAP from the infringement.

11      Oracle's argument regarding Defendants' proposed royalty rate is similarly unpersuasive.

12  According to Oracle, Defendants' expert's use of a 50% royalty applied to SAP's infringer's

13  profits proves that a hypothetical license fee does not necessarily include all of the infringer's

14  profits.  ECF No. 1046 (Pls.' Mot.) at 9.  There are two problems with this argument.  First, under

15  Oracle's reasoning, the only royalty rate that could satisfy the requirements of section 504(b) is a

16  rate of 100%.  Anything less, in Oracle's view, under-compensates the plaintiff.  This absurd

17  result is contrary to the established requirement that a royalty rate be reasonable and permit a

18  defendant to make a "reasonable profit."  *See, e.g., Presidio Components Inc, v. Am. Tech.*

19  *Ceramics Corp.,* No. 08-CV-335-IEG (NLS), 2010 U.S. Dist. LEXIS 79039, at *10-11 (S.D. Cal.

20  Aug. 5, 2010) (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356 (Fed. Cir.

21  2006)); *Bruce v. Weekly World News, Inc.*, 150 F. Supp. 2d 313, 318 n.10 (D. Mass. 2001)

22  (finding that a royalty is "obviously duplicative" of infringer's profits, such that recovery of both

23  is barred).  Second, a running royalty is fundamentally different from a lump sum license,

24  including with respect to how the potential value and risks of the license are allocated between

25  the licensee and licensor.  Defendants' expert's use of a 50% royalty sheds little or no light on the

26  issue here, which is whether Meyer's lump sum license formulation adequately accounted for

27  SAP's infringer's profits.  This Court correctly concluded that it did and instructed the jury

28  accordingly.

1

### 3.   The Court Properly Excluded Evidence of Saved Development Costs.

2       Oracle also claims that the Court erred in excluding evidence of so-called "saved

3   development costs."  In ruling on Defendants' motion for summary judgment, however, the Court

4   correctly held that Plaintiffs could not seek saved development costs, citing the lack of "case law

5   supporting a theory of copyright damages based on 'saved development costs.'"  ECF No. 762

6   (8/17/10 Order) at 22-23.  The Court specifically noted "that no court in this Circuit has

7   considered 'saved costs' when calculating a fair market value license, and the Ninth Circuit's

8   'value of use' analysis says nothing about 'saved costs.'"  *Id*. at 22.  Oracle nevertheless requests

9   that the Court reverse its decision to exclude evidence regarding saved development costs.

10  Although Oracle attempts to avoid the import of the Court's ruling on this controlling point of

11  law by framing its request as purely evidentiary in nature, it in fact asks to the Court to revisit and

12  reverse its earlier ruling on summary judgment.  Specifically, Oracle argues that the Court

13  mistakenly excluded testimony by Oracle experts Paul K. Meyer and Paul Pinto regarding saved

14  development costs as a result of having earlier, erroneously, granted Defendants' motion on

15  summary judgment to preclude Oracle from recovering damages based on saved development

16  costs.  Ultimately, Oracle's argument is based on a faulty premise—namely, that the Court's

17  summary judgment order precluding saved-development-costs damages was the result of an

18  oversight by the Court in assessing the sufficiency of Oracle's evidence.  Because the Court's

19  order was not based on any such oversight, the Court should deny Oracle's request.

20      According to Oracle, the Court erroneously precluded recovery of saved-development-

21  costs damages on summary judgment because the Court incorrectly concluded that Oracle lacked

22  sufficient evidence to support that damages theory.  Relying on language in an explanatory

23  footnote, Oracle argues that the Court based its ruling on its observation that Oracle's calculations

24  were "highly speculative, as they were based on the amounts *Oracle* allegedly spent to develop

25  and/or acquire the intellectual property at issue, not on what it would have cost *SAP* for research

26  and development."  ECF No. 1046 (Pls.' Mot.) at 10-11 (emphasis added).  Oracle argues that this

27  remark on the sufficiency of Oracle's evidence was "incorrect" because Oracle's expert Pinto

28  planned to testify on "what it would have cost Defendants to independently develop the underlying

1   software applications."  ECF No. 1046 (Pls.' Mot.) at 11.  Oracle claims that the Court's "mistake"

2   led it to erroneously grant Defendants' motion to preclude recovery of damages based on saved

3   development costs and, thereafter, to incorrectly exclude testimony regarding such saved costs.

4          Oracle's argument is flawed in at least two important respects.  First, the Court's ruling

5   was not based on its comment regarding the sufficiency of Oracle's evidence in support of its

6   saved development costs theory.  Rather, the Court "decline[d] to permit plaintiffs to seek such

7   damages" *as a matter of law*, citing the lack of "case law supporting a theory of copyright

8   damages based on 'saved development costs.'"  ECF No. 762 (8/17/10 Order) at 22-23.  That the

9   Court also raised concerns about the speculative nature of Oracle's damages calculations does not

10  impact the Court's holding.  Second, contrary to Oracle's suggestion, the Court did not fail to

11  observe that Oracle planned to offer expert testimony on the costs Defendants allegedly would

12  have incurred to develop the infringed works.  *Id.* at 21 ("According to Mr. Meyer, '[t]he cost

13  approach attempts to measure the full benefit of the intellectual property by quantifying the cost

14  to develop alternative technology or replace the technology being valued.' . . . Thus, plaintiffs are

15  seeking to recover damages based on the purported amount that *defendants would have spent to*

16  *acquire the relevant technology through their own development efforts . . . .*").  Rather, the Court

17  simply found that these experts' estimates of SAP's alleged saved costs were too speculative

18  because they were based not on evidence of SAP's own research and development costs, but on

19  evidence of Oracle's acquisition and development costs.  *Id.* at 23 n.5.  Because the Court's

20  summary judgment ruling precluding damages based on saved development costs did not result

21  from the mistake Oracle claims, the Court did not err in subsequently ruling to exclude testimony

22  regarding saved costs at trial.[3]

---

23  [3] Oracle fails to assert any other basis or authority to justify reversing the Court's
    summary judgment order—nor could it have, given the limited, evidentiary nature of its Motion.
24  Neither *Mars, Inc. v. Coin Acceptors, Inc.*, nor the cited excerpt of the Smith & Parr treatise,
    address, let alone endorse, recovery of actual damages for copyright infringement based on saved
25  development costs.  *See Mars*, 527 F.3d 1359, 1372 (Fed. Cir. 2008); ECF No. 679 (House Decl.
    iso Pls.' Opp. to MSJ) ¶ 32, Ex. 6 (Gordon V. Smith & Russell L. Parr, *Intellectual Property,*
26  *Valuation, Exploitation, and Infringement Damages* (2005 ed.)) at 526.  And, as this Court noted
    in its August 17, 2010 Order, Oracle's reliance on *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d
27  357, 360-62 & n.3 (7th Cir. 1985), which has "been criticized by commentators and other courts,"
    is unpersuasive given the absence of Ninth Circuit authority for awarding copyright damages
28  based on saved costs.  ECF No. 762 (8/17/10 Order) at 22-23.

Moreover, because the Court's ruling on summary judgment was proper, Oracle did not suffer unfair prejudice as a result of the Court's exclusion of saved-development-costs evidence at trial. Even were the Court to consider the merits of Oracle's claim of prejudice, there is no basis for Oracle's assertion that the excluded evidence would have provided the "reality check" that SAP argued at trial was lacking in Meyer's opinion. As Oracle knows, the "reality check" that Defendants' counsel urged the jury to consider was not SAP's alleged saved costs—which had no place at trial—but the number of customers Oracle actually lost to TN as a result of infringement. ECF No. 1047 (Hann Decl.) ¶ 1, Ex. A. (11/22/10 Trial Tr.) at 2134:17-2135:3 ("The Court will instruct you that you can use what actually happened if it provides an insight into what the parties would have been thinking at the time. . . . Are we really to believe you when you say you think you would have thought you could have lost 3,000 customers when we know you only lost 358? How could you be so wrong? *That's the reality check.*") (emphasis added).

Further, a "reality check" in the form of actual lost customers is the type contemplated by the Court's instruction that the jury could consider facts after the hypothetical negotiation to calculate a fair market value license price, *see* ECF No. 1005 (11/23/10 Final Jury Instructions) at 9, and by case law establishing that evidence of actual financial performance is admissible as probative of an infringer's anticipated profits. *Sinclair*, 289 U.S. at 698 (describing such evidence as "a book of wisdom that courts may not neglect"); *Trans-World Mfg. Co. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Locklin v. Switzer Bros., Inc.*, 235 F. Supp. 904, 906-07 (N.D. Cal. 1964). Thus, despite Meyer's self-serving description of his cost approach as a "reasonableness check," evidence of SAP's alleged saved costs bears no relation to the empirical reality check advocated by Defendants and endorsed by courts. ECF No. 1046 (Pls.' Mot.) at 10. Indeed, it strains credibility to suggest that Pinto's *$1.134 billion to $3.477 billion* estimate of SAP's alleged saved costs and Meyer's *$936 million to $2.903 billion* estimate of the hypothetical license price under the cost approach could provide any sort of "reality check" on Meyer's "at least $1.6 billion" hypothetical license price estimate at trial. ECF No. 1046 (Pls.' Mot.) at 10; ECF No. 931 (Wallace Decl. iso Mot. To Exclude Meyer) ¶ 2, Ex. 1 (Meyer Report) at ¶ 153 (Table 8). As the Court correctly ruled, SAP's purported saved development costs are

not a reliable proxy to measure Oracle's actual damages, and the enormous range of computations

offered by Pinto and Meyer only serve to underscore this fact.  For these reasons, the Court

should reject Oracle's invitation to reverse the Court's ruling on summary judgment and

subsequent ruling precluding evidence of saved development costs.

### 4.      The Court Did Not Err in Admitting Clarke's Causation Testimony.

Finally, notwithstanding that Oracle did not object to Clarke's expertise in performing

damage calculations based on the hypothetical negotiation, lost profits and infringer's profits

approaches (Lanier Decl. ¶ 7, Ex. E (Trial Tr.) at 1535:12-17), Oracle asserts that Clarke is not an

expert in "why specific customers left Oracle and bought SAP," such that admission of this

testimony at trial concerning his necessary causation analysis of whether former Oracle customers

who migrated to SAP would have left even in the absence of TN's conduct was erroneous.  ECF

No. 1046 (Pls. Mot.) at 11.  This argument is nothing more than a rehash of Oracle's *Daubert*

motion and objections at trial, which the Court correctly denied and overruled.  *Compare* ECF

No. 781 (Clarke *Daubert* Mot.) at 19:15-20:1 *with* ECF No. 914 (Pretrial Order); *see also* Lanier

Decl. ¶ 7, Ex. E (Trial Tr.) at 1589:17-1596:13.

To that end, Oracle erroneously argues that there is a gulf between Clarke's acknowledged

expertise in calculating copyright damages and his challenged expertise on the cause of those

damages.  ECF No. 1046 (Pls.' Mot.) at 12-13.[4]  But in these circumstances, determining

causation is part and parcel of calculating damages.  ECF No. 854 (Clark Decl.), Ex. 2 (*Litigation*

*Services Handbook, The Role of The Financial Expert*) ("The first step in a damages study

translates the legal theory of the harmful event into an analysis of the economic impact of that

event . . . this step is often called the "but-for" analysis.").  Calculating Oracle's copyright

damages requires determining whether, but for TN, customers would have stayed on Oracle

support and/or purchased software from SAP—a process no different in principle from the

---

[4] Oracle cites two inapposite cases, *United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) and *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 603-05 (N.D. Cal. 2008), in support of this argument.  In each cited case, however, the expert's qualifications bore no rational relationship to the proffered expertise.  In *Chang*, an international finance expert was not allowed to testify about the authenticity of a securities certificate, and in *Rambus*, an electrical engineer was not allowed to testify about the commercial success of a patented product because this is a subject in which most experts "tend to have backgrounds in economics or licensing." *Id.*

1   causation analysis to be done in every copyright case.[5] *See Data Gen. Corp. v. Grumman Sys.*

2   *Support Corp.*, 36 F.3d 1147, 1170-77 (1st Cir. 1994) (finding that plaintiff must show that its

3   losses and defendants' gains would have occurred "but for" infringement, and defendant may

4   rebut by showing that damages would have occurred anyway; customer motivations may be

5   relevant to this analysis).

6        Defendants established Clarke's expertise in determining the cause of Oracle's damages.

7   Clarke explained that he had over 30 years of experience in damages analysis, business valuation,

8   and economics that gave him expertise to determine and calculate Oracle's copyright damages.

9   Lanier Decl. ¶ 7, Ex. E (Trial Tr.) at 1530:14-1535:4; *see also* ECF No. 854 (Clarke Decl.) ¶ 9.

10  Contrary to Plaintiff's suggestion, the fact that Clarke's 30 years of experience were not limited

11  to a specialized sub-field of ERP software copyright damages does not disqualify his testimony.

12  *Cf. Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir. 1992) ("Ordinarily, courts impose

13  no requirement that an expert be a specialist in a given field, although there may be a requirement

14  that he or she be of a certain profession, such as a doctor."); *Indus. Auto. Supply, LLC v. United*

15  *Rentals Highway Techs.*, No. 3:04-cv-99, 2006 WL 5219390, at *1 (D. N.D. Feb. 8, 2006)

16  ("[C]ourts routinely allow experts to testify as to subject areas related to, although not

17  conterminous with, their expertise.").

18       Indeed, courts have rejected the argument that a damages expert with the general

19  background of an economist or Certified Public Accountant is unqualified to offer opinions on the

20  cause of damages because of an allegedly deficient background in the specific industry at issue.

21  In the closely analogous case of *NetQuote, Inc. v. Byrd*, the court admitted the testimony of a

22  damages expert with an accounting background who reviewed contemporaneous records to

23  determine whether the defendant's conduct had caused customers (insurance agents) to terminate

_____

24       [5] Not surprisingly, *both* experts acknowledged that their damages calculation flowed from
    a causation analysis.  Lanier Decl. ¶ 7, Ex. E (Trial Tr.) at 1630:16-21 ("Q: So based on all this
25  work, all the review of the customer information, and placing the customers into various buckets,
    either exclusion or inclusion, you reached some conclusions about the amount of
26  compensation . . . SAP and TomorrowNow owed to Oracle, right? A [Clarke]: Correct."); *id.* at
    ¶ 8, Ex. F (Trial Tr.) at 1296:19-25 (Meyer excluded some customers for "causation"); *id.* at
27  1301:2-20 (Meyer excluded customers based on their unique support service history); *id.* at
    1305:19-25 (Meyer agreed that he and Clarke were "using different causation pools" but
28  "counting the customers differently").

1    their relationships with the plaintiff (a sales lead generation firm).  No. 07-cv-00630, 2008 WL

2    2442048, at *1 (D. Colo. June 13, 2008) (*adopting Magistrate Judge's Report and*

3    *Recommendation*, 2008 WL 2442048, *6-7 (D. Colo. April 29, 2008)).  The plaintiff had objected

4    that, while the expert had expertise in business valuations and economic analysis, he lacked

5    expertise in "insurance lead generation."  *Id.* at 7.  Relying on Tenth Circuit precedent, the court

6    concluded that the plaintiff's objection went to the weight and not the admissibility of the expert's

7    opinion.  *Id.*; *see also Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.*, No.

8    CV-08-0965-PHX-FJM, 2009 WL 2259734, *3 (D. Ariz. July 27, 2009) (denying motion to

9    exclude damages expert's opinions because of alleged lack of industry knowledge about hotel and

10   pool management).

11          Defendants also established Clarke's expertise in the cause of Oracle's damages with

12   evidence that he had researched and reviewed millions of pages of relevant information.  Clarke

13   and his staff reviewed approximately 12.5 million pages of documents, including documents

14   produced during discovery; deposition transcripts from employees of Oracle, TN, SAP, and

15   customers; customer declarations; and documents obtained through independent research.  Lanier

16   Decl. ¶ 7, Ex. E (Trial Tr.) at 1535:25-1537:7.  After reviewing this information, Clarke was able

17   to group customers exhibiting similar characteristics, and this process gave him an understanding

18   of each customer's purchasing decisions.  *Id.* at 1596:18-1597:25 (explaining how customers

19   were grouped after reviewing collected information), *id.* at 1598:5-1600:7 (explaining why

20   customers were excluded from the damages calculation).  Clarke thus had ample bases to make

21   the necessary customer-by-customer determinations to include or exclude a customer in the

22   damages calculation.  *Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.,* Civ. A. No. 95-1376,

23   1998 WL 151806, at *5 (E.D. Pa. Apr. 1, 1998) (damages opinion based on client interviews,

24   documents produced in the course of discovery, industry documents, a damages treatise, and

25   accounting rules for measuring damages held admissible; criticism of the source of expert's

26   damages assumptions and information went to weight).

27

28

III.     **CONCLUSION**

Oracle's premature, procedurally improper and baseless motion should be denied.

Dated: April 8, 2011                               JONES DAY

                                                   By:  /s/ Tharan Gregory Lanier
                                                         Tharan Gregory Lanier

                                                   Counsel for Defendants
                                                   SAP AG, SAP AMERICA, INC., and
                                                   TOMORROWNOW, INC.

SFI-667230v1