1   BINGHAM MCCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  415.393.2000
    Facsimile:  415.393.2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (Admitted *Pro Hac Vice*)
10  333 Main Street
    Armonk, NY 10504
11  Telephone:    (914) 749-8200
    Facsimile:    (914) 749-8300
12  dboies@bsfllp.com
    STEVEN C. HOLTZMAN (SBN 144177)
13  FRED NORTON (SBN 224725)
    1999 Harrison St., Suite 900
14  Oakland, CA 94612
    Telephone:    (510) 874-1000
15  Facsimile:    (510) 874-1460
    sholtzman@bsfllp.com
16  fnorton@bsfllp.com

    DORIAN DALEY (SBN 129049)
17  JENNIFER GLOSS (SBN 154227)
    500 Oracle Parkway, M/S 5op7
18  Redwood City, CA 94070
    Telephone:  650.506.4846
19  Facsimile:  650.506.7144
    dorian.daley@oracle.com
20  jennifer.gloss@oracle.com

21  Attorneys for Plaintiffs Oracle USA, Inc., *et al.*

22              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
23                    OAKLAND DIVISION

24  ORACLE USA, INC., *et al.*,          No. 07-CV-01658 PJH (EDL)

25              Plaintiffs,              **[PROPOSED] ORDER DENYING SAP'S
        v.                               MOTION FOR JMOL OR NEW TRIAL**
26  SAP AG, *et al.*,

27              Defendants.

28

1    Before the Court is the Renewed Motion for Judgment as a Matter of Law or For a New

2   Trial (the "Motion") filed by Defendants SAP AG, SAP America, Inc. and TomorrowNow, Inc.

3   (collectively, "SAP") and opposed by Plaintiffs Oracle USA, Inc., Oracle International

4   Corporation and Siebel Systems, Inc. (collectively, "Oracle," and together with SAP, the

5   "Parties").  After considering the pleadings, memoranda, and supporting papers submitted by the

6   Parties, and having heard the arguments of counsel, **IT IS HEREBY ORDERED** that SAP's

7   Motion is **DENIED**.

8   I.      **RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

9    In support of SAP's Renewed Motion for Judgment as a Matter of Law ("JMOL"), SAP

10   makes two primary arguments.  First, SAP argues that Oracle is not entitled to hypothetical

11   license damages as a matter of law because Oracle had never granted such a license before and

12   the Parties, being competitors, would not have agreed to one.  Second, SAP argues that Oracle

13   failed to offer legally sufficient evidence for the jury to value a hypothetical license.  The Court

14   disagrees.

15      A.      **Oracle Was Entitled To Present Hypothetical License Damages For
               The Jury To Consider And Award**
16

17              1.      **The Ninth Circuit Hypothetical License Framework**

18    Had SAP not infringed Oracle's intellectual property, SAP would have had to negotiate,

19   and pay, to license it.  An unbroken line of Ninth Circuit cases establishes Oracle's right to

20   recover its lost revenue from that license, measured by the value of a hypothetical license as of

21   the time of infringement.  *See, e.g.*, *Jarvis v. K2 Inc.*, 486 F.3d 526, 533-35 (9th Cir. 207)

22   (copyright owner entitled to recover fair market value of license defendant would have had to

23   obtain to use 58 images infringed); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708

24   (9th Cir. 2004) (upholding actual damages award "within the range of the fair market value" of

25   the rights infringed); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 827 (9th

26   Cir. 1985) (reversing damage award that failed to reflect full market value of hypothetical license

27   to rights defendant infringed); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,

28   562 F.2d 1157 (9th Cir. 1977) (confirming "the value of use" of the copyrighted work to the

1 infringer as among actual damages available and upholding jury award of license value where

2 plaintiff's expert provided credible supporting evidence).[1]

3       Following this long line of Ninth Circuit cases, this Court previously held that Oracle

4 could present, and the jury could consider, evidence regarding the fair market value of a license

5 to the copyrights that SAP allegedly (and, by the time of trial, admittedly) infringed, as long as

6 the amount was not based on undue speculation.  *See* Dkt. 628 at 5:5-11 (quoting *Polar Bear*,

7 384 F.3d at 709); Dkt. 628 at 5:5-11; *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318

8 F. Supp. 1116, 1121-22 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971)

9 (adopting and applying the "willing buyer and willing seller" hypothetical license approach to

10 damages).

11       The hypothetical license measure of actual damages is well-established for good reason.

12 A copyright represents the right to exclude, or to receive the value of exclusive rights by license.

13 *See, e.g.*, *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).  Where an infringer

14 takes for free what it would have otherwise had to license, it deprives the copyright owner of the

15 license fee it would have been entitled to charge.  The hypothetical license royalty therefore

16 represents the value the copyright owner was entitled to receive at that time, and the amount by

17 which the owner was damaged by not receiving it.  *See Frank Music Corp. v. Metro-Goldwyn-*

18 *Mayer, Inc.*, 772 F.2d 505, 513 n.6 (9th Cir. 1985) (market value license approach "seeks to

19 approximate what a reasonable market price would have been at the time of the infringement");

20 *On Davis*, 246 F.3d 152, 166 (2d Cir. 2001) ("the defendant has surreptitiously taken a valuable

21 right, for which plaintiff could have charged a reasonable fee.  Plaintiff's revenue is thus smaller

22 than it would have been if defendant had paid for what he took ….").

23            **2.**     **Ninth Circuit Law Supports The Ability To Present**

24                    **Hypothetical License Damages To The Jury Here**

      SAP advances two main reasons why it believes Oracle should not have been allowed to

25

---

26 [1] Other circuits also endorse the fair market value of the rights infringed as a measure of actual
copyright damages. *See, e.g.*, *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 353,

27 358-60 (6th Cir. 2007); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 565-67 (7th
Cir. 2003); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166-67 (2d Cir. 2001).

28

**[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL**

1    offer a hypothetical license damages theory to the jury, despite the Ninth Circuit law above.

2    First, SAP argues Oracle never would have given its prime competitor a license on any terms, so

3    Oracle did not lose any license fee.  Second, SAP contends hypothetical license damages are

4    unavailable because Oracle did not previously license these exact rights to SAP, or to others.

5    SAP raised these arguments on summary judgment.  The Court rejected them then, and does so

6    again here.

7         Contrary to SAP's argument, it is legally "irrelevant" to a hypothetical license whether

8    the parties actually would have reached an agreement, or even sat down to negotiate one.  *On*

9    *Davis*, 246 F.3d at 171-72.  Oracle "is not required to prove it would have successfully

10   negotiated a license with SAP, nor is it precluded from seeking license damages simply because

11   it has never before licensed what SAP has infringed."  Dkt. 628 at 4:22-5:2 (quoting *On Davis*).

12   The point is not to re-create an actual agreement between them, or prove they would have

13   reached one, but "to determine the fair market value of [the] valuable right" the defendant was

14   supposed to pay for but took for free.  Dkt. 628 at 4-5 (quoting *On Davis*, 246 F.3d at 171-72).

15        Oracle lost the licensing fee that represents the value of Oracle's rights that SAP

16   misappropriated, and is entitled to be paid that value.  *See Polar Bear*, 384 F.3d at 709 (infringer

17   must pay fair market value of rights it took, as determined by the jury).  That remains true

18   whether or not SAP is a competitor, and whether or not Oracle has ever licensed the rights SAP

19   infringed.  *See Krofft*, 562 F.2d at 1161-62, 1174.  As the seminal hypothetical license case tells

20   us, the competitive relationship between the owner and infringer may *enhance,* not eliminate, the

21   fair market value of the license.  *See Georgia-Pacific*, 318 F. Supp. at 1120 (Factors 4 and 5

22   consider "[t]he licensor's established policy and marketing program to maintain his patent

23   monopoly by not licensing others to use the invention" and "[t]he commercial relationship

24   between the licensor and licensee, such as, whether they are competitors.");  *cf. Salinger v.*

25   *Colting*, 641 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2009) (infringing sequel to Catcher In The Rye

26   would cause substantial market harm even though author had never licensed infringed rights),

27   *injunction vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010); *see also, McRoberts*, 329 F.3d

28   at 567 (affirming actual damages award against competing supplier of character generation

No. 07-CV-01658 PJH (EDL)

[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL

1    software based on fair market value of misappropriated work); *Getaped.com, Inc. v. Cangemi*,

2    188 F. Supp. 2d, 398 405-06 (rejecting hypothetical license damages award as inadequate

3    because copyright owner "would not be willing to let a direct competitor use an exact duplicate

4    of its site for such a small fee").

5           Any reluctance by Oracle to voluntarily license the rights SAP took for free also "weighs

6    in favor of a higher royalty rate." *Medtronic Sofamor Danek USA Inc. v. Globus Med., Inc.,* 637

7    F. Supp. 2d 290, 310 (E.D. Pa. 2009); *Rosco, Inc. v. Mirror Lite Co.*, 626 F. Supp. 2d 319, 332

8    (E.D.N.Y. 2009) (same); *see Georgia-Pacific*, 318 F. Supp. at 1120.

9           The cases SAP cites to the contrary are not persuasive.  As it did in its summary

10   judgment motion, SAP relies heavily on *Business Trends Analysts, Inc. v. Freedonia Gp., Inc.*,

11   887 F.2d 399 (2d Cir. 1989), to support its theory that competitors do not qualify for hypothetical

12   license damages.  But *Business Trends* focused on the entirely different infringer's profits

13   measure of copyright damages, *id.* at 405, and the Second Circuit has expressly refused to apply

14   its holding to the actual damages analysis.  *See On Davis*, 246 F.3d at 161-64 (*Business Trends*'

15   discussion of actual damages is dictum); *see also* Goldstein §14.1.1 ("*Business Trends* was

16   wrong.").  Indeed, in *On Davis,* the Court expressly adopted "the fair market value of a license

17   covering the defendant's infringing use" as a measure of actual damages.  *On Davis*, 246 F.3d at

18   172.

19          Courts should "broadly construe" available damages to "favor victims of infringement."

20   *On Davis*, 264 F.3d at 164.  Ninth Circuit law is in accord:  Having taken valuable rights for free,

21   SAP "is in no better position to haggle over the license fee than an ordinary thief and must accept

22   the jury's valuation unless it exceeds the range of the reasonable market value."  *Polar Bear*, 384

23   F.3d at 709.  SAP offers no reason for the Court to reconsider its prior rulings, and the Court

24   declines to do so.

25        **B.     Sufficient Evidence Supported The Value of The Hypothetical
                    License**

26

27          SAP next argues that Oracle failed to offer legally sufficient evidence for a jury to value

28   the hypothetical license.  To evaluate this claim, the court must "inquire whether there is any

1   legally sufficient evidentiary basis for a reasonable jury to find for" Oracle.  *Weisgram v. Marley*

2   *Co.*, 528 U.S. 440, 453-54 (2000) (citation and quotation omitted).  The motion may be granted

3   only if "the evidence … permits only one reasonable conclusion, which is contrary to the jury's

4   verdict."  *Omega Envtl., Inc. v. Gilbarco, Inc*., 127 F.3d 1157, 1161 (9th Cir. 1997).

5        The court "must review the evidence in the light most favorable to the nonmoving party,"

6   *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003), and "must draw all

7   reasonable inferences in favor of the nonmoving party and it may not make credibility

8   determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

9   133, 150 (2000).  "If there is substantial evidence presented at trial to create an issue for the jury,

10  a trial court may not grant" the motion.  *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833

11  F.2d 1365, 1371 (9th Cir. 1987).  "Substantial evidence is such relevant evidence as reasonable

12  minds might accept as adequate to support a conclusion even if it is possible to draw two

13  inconsistent conclusions from the evidence."  *Id.*

14       SAP's evidentiary arguments do not follow those rules.  SAP re-argues evidentiary

15  interpretations to favor it, and second-guesses the jury's apparent findings.  Because much of the

16  evidence supporting the hypothetical license value came from SAP's own contemporaneous

17  business records and the testimony of its own witnesses, SAP is arguing with itself.  *See Monster*

18  *Content, LLC v. Homes.com, Inc.*, 2005 WL 1522159, *9 (N.D. Cal.) ("[C]ontemporaneous

19  emails and conduct at time of the transaction are more credible evidence to discern the truth of

20  what happened than the statements of the interested witnesses several years later in preparation

21  for litigation").

22       In short, after reviewing the evidentiary record as a whole, the Court finds that the

23  evidence abundantly supported the jury's award of a hypothetical license fee to Oracle, by

24  showing that both parties placed extraordinarily high valuations on the value of use of the

25  copyrights at issue at the time.  *See Polar Bear*, 384 F.3d at 708 ("Although [we] should review

26  the record as a whole, [we] must disregard evidence favorable to the moving party that the jury is

27  not required to believe, and may not substitute [our] view of the evidence for that of the jury."

28  (citation omitted)).

[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL

1    SAP's JMOL must, therefore, be **DENIED** in full.

2    **II.    SAP'S NEW TRIAL MOTION**

3    In its motion for a new trial, SAP largely repeats its JMOL arguments, which the Court

4    denies for the reasons discussed above, and does not present any new arguments that warrant a

5    new trial.  The Court also declines SAP's request to remit the damages award.

6    **A.    Legal Standard**

7    On a new trial motion, "a stringent standard applies when the motion is based on

8    insufficiency of the evidence," and it "may be granted on this ground only if the verdict is

9    against the great weight of the evidence or it is quite clear that the jury has reached a seriously

10   erroneous result." *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987) (citation omitted).

11   While this Court may weigh evidence and consider credibility on a new trial motion, "a decent

12   respect for the collective wisdom of the jury, and for the function entrusted to it in our system,

13   certainly suggests that in most cases the judge should accept the findings of the jury." *Landes*

14   *Constr. Co.*, 833 F.2d at 1371-72 (citation omitted).  *See also Guy v. City of San Diego,* 608 F.3d

15   582, 585 (9th Cir. 2010) ("We must uphold a jury verdict if it is supported by … evidence

16   adequate to support the jury's conclusion, even if it is also possible to draw a contrary

17   conclusion.") (citation omitted).

18   **B.    Significant and Non-Speculative Evidence Supported the**
         **Hypothetical License Award**
19

20   As discussed above, significant and non-speculative evidence, including numerous

21   contemporaneous documents from SAP, its own executives and ample expert testimony,

22   supported the jury's award of hypothetical license damages.  The jury clearly rejected SAP's

23   invitations to limit the hypothetical license based on the assertion of limited use.

24   **1.    Oracle's Closing Argument Was Appropriate**

25   SAP's first complaint is that Oracle's counsel, in closing, issued "a rank invitation to

26   speculate" by suggesting the jury focus on what the evidence showed the parties would have

27   negotiated for at the time of infringement.  First, SAP did not object, so the Court finds that the

28   point was waived.  *See Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001).

1   Second, Oracle's "invitation" was exactly what the law allows, consistent with the stipulated

2   instruction that the jury *may* (but is not required to) consider the implications of facts from the

3   post-negotiation timeframe, Dkt. 1005 at 9:15-18, and well within the "reasonably wide latitude"

4   given to counsel during closing arguments.  *U.S. v. Vaccaro*, 816 F.2d 443, 451 (9th Cir. 1987).[2]

5   The Court notes that SAP offered the reverse suggestion in its closing.  It was properly up to the

6   jury to decide between the two positions.

7               **2.     The Analysis of Oracle's Damages Expert Was Properly
                          Grounded in *Georgia-Pacific***

8

9        Next, SAP argues that Oracle's damages expert, Paul Meyer, did not follow *Georgia-*

10  *Pacific*.  The Court again disagrees.  The *Georgia-Pacific* factors are non-exclusive and thus, by

11  definition, do not require precise "following."  Some "may be of minimal or no relevance to a

12  particular case and other factors may have to be molded by the Court to fit the facts of the case at

13  hand."  *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del.

14  1997).  An expert need not apply any or all of them.  *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d

15  895, 899 (Fed. Cir. 1986); *Avocent Huntsville Corp. v. ClearCube Tech. Inc.*, 2006 WL 2109503,

16  at *10 (N.D. Ala.) ("The fifteen Georgia-Pacific factors are not exclusive, however; other factors

17  also may be relevant.").  Rather the parties are presumed to know and consider "all relevant

18  information" during the negotiation, just as Oracle's expert did.  *Procter & Gamble*, 989 F.

19  Supp. at 606.

20       In fact, Meyer's testimony, offered without objection, closely tracked the *Georgia-*

21  *Pacific* factors and subsequent cases applying them.  The Court also notes that SAP's argument

22  is contradicted by the testimony of its own expert, Stephen Clarke.  Like Meyer, Clarke opined

23  based on "putting all those Georgia Pacific factors together."

24       SAP's suggestion that Meyer "plainly disregards recent Federal Circuit guidance" also

25  does not withstand scrutiny.  In a series of recent cases about expert reliance upon benchmark

26  patent licenses, the Federal Circuit has overturned damage awards where the patent holder had

27  ───────────────
    [2] SAP's string of cases relating to the "book of wisdom" is beside the point.  As its own
    argument demonstrates, they relate to the *admissibility* of post-negotiation evidence, not the
28  weight the jury must afford it.

[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL

1    not met its "burden to prove that the licenses were sufficiently comparable to support" the

2    awarded hypothetical license.  *See*, *e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301,

3    1329 (Fed. Cir. 2009).  These cases are not binding authority, and in any case do not support

4    reversal of the jury's hypothetical license award.  *Lucent* and its progeny teach that "a recitation

5    of royalty numbers" is not enough to make a benchmark license comparable, and that a basis of

6    comparison must be laid for running royalty licenses to be comparable to lump-sum awards.  *See*

7    *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010);

8    *see also id.* at 1319 ("*Lucent* … explained general criteria for comparing patent licenses ….").

9    Here, Meyer relied on extensive contemporaneous evidence relating to the parties' expectations,

10   goals, and costs rather than comparisons of incomparable licenses or arbitrary rules of thumb.

11            **3.      Oracle Properly Provided Contextual Evidence**

12            SAP argues that Oracle's witnesses confused the jury by improperly discussing R&D

13   expenses, the acquisition costs for PeopleSoft and Siebel, and the size of the software industry.

14   Because SAP failed to object at trial to the testimony at issue, *see* Ellison 760:13-22, 451:22-

15   452:13, 453:12-23; Screven 451:22-452:12; Phillips 522:20-523:13; Catz 856:2-857:13, this

16   Court finds that argument was waived.  *United Bhd. of Carpenters & Joiners, Lathers Local 42-*

17   *L v. United Bhd. of Carpenters & Joiners,* 73 F.3d 958, 962 n.1 (9th Cir. 1996).  SAP's reference

18   to its denied motion *in limine* to exclude improper technical opinions of lay witnesses is

19   unavailing, as it concerned a different subject and did not address the testimony of Ellison, Catz,

20   or Phillips at all.  *See* Dkt 728 at 10:19-15:13.  Even if it had, its denial does not preserve the

21   issue.  *Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir. 1999).

22            In any event, this evidence provided context to help the jury understand the Parties'

23   competitive positions, the significant investments Oracle has made in its intellectual property

24   over time, and the effects were SAP to siphon off the maintenance revenue that funded R&D, as

25   the evidence showed that SAP projected it would.  The Court finds this evidence was proper.

26       **C.      The Jury's Award Does Not Exceed Actual Harm**

27            Next, SAP contends Oracle's "actual harm" is limited to lost profits, and Oracle's

28   recovery should be limited to the $28 million (or no more than $408.7 million) in lost profits it

1  claims that Oracle was able to prove.  But, as noted above, lost profits do not limit actual

2  damages as a matter of law.  *See Polar Bear*, 384 F.3d at 708-10 (affirming a damage award

3  based on fair market value where plaintiff was unable to prove *any* lost profits); *On Davis*, 246

4  F.3d at 165-66 (copyright owner entitled to fair market value even where infringement is

5  unprofitable and no sales are lost).  SAP's suggestion to the contrary has been rejected by this

6  Court and the Ninth Circuit, including because proving lost profits "is often impractical" due to

7  the difficulty of proving them with specificity. *See* Dkt. 762 at 20:22-24 (citing *Polar Bear*).

8       Here, the trial evidence and SAP's pre-trial admissions established that SAP infringed a

9  vast amount of Oracle software.  The evidence showed that SAP used this infringing material,

10  among other things, as a strategic weapon to harm Oracle's ability to pay for the PeopleSoft

11  acquisition from cash, deplete Oracle's ability to invest in research and development, and contain

12  Oracle's future growth in the next generation of the application market.  The fair market value

13  license helps resolve the difficulty in quantifying these downstream impacts, whereas the lost

14  profits measure may not include them at all.  *See Polar Bear*, 384 F.3d at 708-10; *Hanson v.*

15  *Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983).

16       The jury, given the choice, agreed.  The Court adopted SAP's version of the verdict form

17  that required the jury to choose between the hypothetical license or lost profits damages

18  measures.  The Court allowed SAP to argue that the jury should decide lost profits as the proper

19  damages measure.  SAP did precisely that.  Having heard all the evidence, the jury rejected

20  SAP's arguments and expressly declined to adopt the lost profits measure.  There is no basis to

21  overturn that decision.

22       **D.     The Liability Evidence Was Highly Relevant And Caused No Undue**
             **Prejudice**
23

24       SAP next asserts a new trial is warranted because the introduction of "irrelevant and

25  prejudicial liability evidence" improperly influenced the jury's award.  The Court sees no reason

26  to reconsider its ruling that evidence showing that SAP contributed to the infringement was

27  relevant to damages.  There is no artificial line between "liability" evidence and "damages"

28  evidence such that any particular document or piece of testimony cannot be relevant to both.

[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL

1    Here evidence of SAP's knowing acceptance of significant litigation, liability, and reputational

2    risk was relevant as a matter of law.  Evidence of SAP's willingness to accept these risks

3    indicated the value SAP placed on the rights it infringed and, therefore, what it would reasonably

4    pay if it had negotiated instead of infringing.

5          The Court also rejects SAP's related new trial argument for two additional, independent

6    reasons:  (1) SAP agreed evidence of TN's liability on all claims against it (including the CFAA,

7    CDAFA, trespass, copyright and unfair competition) and vicarious copyright liability as to SAP

8    AG and SAP America was admissible, so its asserted error was both waived and harmless.

9                      **1.     SAP Agreed TN's Direct Liability Evidence Was Relevant**

10         SAP conceded that "both sides agreed" the direct liability evidence about which it now

11   complains was admissible as "background or context."  SAP further stipulated that evidence was

12   admissible as "relevant to damages."  JTX 4 at 2:7-10.  It also agreed, and the Court ordered, that

13   "the Parties [would] not object to evidence related to the stipulated claims pursuant to Federal

14   Rules of Evidence 401-403 (including that the evidence is irrelevant, cumulative, unduly time

15   consuming or prejudicial) on grounds that the evidence relates to the stipulated claims."  *Id.* at

16   2:10-12.  Accordingly, SAP objected to none of this evidence at trial and thus failed to preserve

17   any asserted error.  *See United Bhd. of Carpenters*, 73 F.3d at 962 n.1.

18                      **2.     SAP Suffered No Prejudice**

19         The Court also notes that the contributory infringement evidence could not prejudice SAP

20   given its admission of liability.  SAP nevertheless contends it was prejudiced because its

21   witnesses were "prevented from testifying about steps that SAP took to mitigate risk of

22   infringement."  But many of SAP's witnesses did just that, including Werner Brandt, Shai

23   Agassi, and Thomas Ziemen.  SAP, therefore, was not prevented from testifying about steps it

24   took to mitigate risk of infringement.

25         SAP also claims it was prejudiced by the use of language with "criminal overtones."

26   SAP did not object to Oracle's analogies at the time, or refused any curative steps, so it waived

27   any complaint about them.  *See United Bhd. of Carpenters & Joiners, Lathers Local 42-L v.*

28   *United Bhd. of Carpenters & Joiners,* 73 F.3d 958, 962 n.1 (9th Cir. 1996).  In any event, the

No. 07-CV-01658 PJH (EDL)

**[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL**

1  analogies were innocuous.  Contrary to SAP's claim, no witness used the terms "theft" or "steal"

2  to describe its conduct or otherwise.  Oracle's analogies simply illustrated the unreasonableness

3  of SAP's damages theory and calculations.  There is no basis to find that they had any effect on

4  the jury's verdict.

5       **E.**      **Sufficient Evidence Supported The Damages Award, So It May Not**

6                **Be Remitted**

7  Finally, SAP asks this Court to remit the damages award to "maximum lost profits and

8  infringer's profits supported by the evidence."  The Court rejects that request as well.

9  This Court may not disturb a jury's damages award unless it is "clearly unsupported by

10  the evidence," or "grossly excessive," "monstrous," or "shocking to the conscience."  *Brady v.*

11  *Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988).  In applying these standards, the Court must "view

12  the evidence concerning damages in a light most favorable to the prevailing party."  *Buritica v.*

13  *United States*, 8 F. Supp. 2d 1188, 1191 (N.D. Cal. 1998); *see also Fenner v. Dependable*

14  *Trucking Co., Inc.,* 716 F.2d 598, 603 (9th Cir. 1983) (same).  The Court also must give

15  "substantial deference to the jury's finding of the appropriate amount of damages."  *Del Monte*

16  *Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).  If the jury's

17  award falls within "the range sustainable by the proof," the Court must resist any temptation to

18  "play Monday morning quarterback" or supplant the jury's evaluation with its own.  *L.A. Mem'l*

19  *Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1366 (9th Cir. 1986).  *See also id.* at

20  1365 ("we undertake only limited review of jury damages awards, in order to avoid encroaching

21  upon the jury's proper function under the Constitution").

22  The Court declines to substitute SAP's view of the evidence and the appropriate measure

23  of damages for the jury's, by reducing the award to the "maximum lost profits and infringer's

24  profits supported by the evidence."  That request simply assumes that lost profits, and not

25  hypothetical license, is the only available damages measure.  The jury rejected that premise and

26  decided a reasonable royalty better suited to measure Oracle's damages.  The Court also

27  previously denied SAP's attempt to take the remedy question from the jury: "Oracle should be

28  permitted to present evidence regarding the fair market value of the copyrights that SAP

1   allegedly infringed, including expert testimony based on established valuation methodology."

2   Dkt. 628 at 5:5-11 (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir.

3   2004)).  Oracle presented that evidence and expert testimony.  It was not unduly speculative and

4   fully supported the jury's award.  Accordingly, this Court finds no basis to remit the damages

5   award.

6   **III.    CONCLUSION**

7         The law and the evidence support this verdict.  This Court therefore **DENIES** SAP's

8   Motions and **DENIES** Oracle's conditional new trial motion.

9   **IT IS SO ORDERED.**

10

11  Dated: _____

12                                               PHYLLIS J. HAMILTON

13                                               United States District Court Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER DENYING SAP'S MOTION FOR JMOL OR NEW TRIAL