Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:    (650) 739-3939
Facsimile:    (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted Pro Hac Vice)
Joshua L. Fuchs (Admitted Pro Hac Vice)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:    (832) 239-3939
Facsimile:    (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SAP AG, et al.,<br><br>            Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY OF EXECUTION OF JUDGMENT THROUGH APPEAL AND APPROVAL OF PROPOSED SECURITY PURSUANT TO FRCP 62**<br><br>Date:     May 4, 2011<br>Time:    9:00 a.m.<br>Courtroom: 3, 3rd Floor<br>Judge:   Hon. Phyllis J. Hamilton |

**REVISED RELIEF REQUESTED**

Defendants continue to request entry of an order staying execution of final judgment, entered on February 3, 2011 (ECF No. 1036), pending disposition of post-judgment motions and, if necessary, appeal, pursuant to Rules 62(b) and 62(d) of the Federal Rules of Civil Procedure. However, as described below, Defendants revise their request as to the form of security to stay the execution of the judgment, and ask that the Court enter an order approving $1,325,033,547 (representing the judgment plus three-years post-judgment interest), paid as a <u>supersedeas bond</u> (rather than the previously proposed escrow agreement). Defendants further request that the Court grant Defendants twenty-one (21) days to finalize the bond arrangements and file a motion to approve the bond. A revised proposed order is submitted with this reply brief. Alternatively, Defendants request that the hearing on this motion be continued to July 13, the date scheduled for the parties' pending post-judgment motions, as the outcome of those motions could affect the amount, if not the necessity, of any post-judgment security.

Oracle does not oppose the entry of a stay pending disposition of post-judgment motions and appeal, and agrees to the form and amount of the proposed security. *See* ECF No. 1059 (Oracle's Opposition). The only remaining issue is Oracle's request that the Court instruct the bonding company to provide a quarterly report to the parties and increase the bond amount as needed to cover post-judgment interest accrued in the future. As Defendants explain below, Defendants do not believe reporting instructions are necessary and will agree to a bond that shall account for increases should the appeal process take longer than three years.

**STATEMENT**

**1.     Defendants Agree to a Bond as the Form of Security.**

Defendants agree with Oracle that the parties spent the last several months, and numerous attorney hours, negotiating in good faith on an escrow agreement as the form of security to secure the judgment through the post-judgment period, and if necessary, through appeal. Why those negotiations failed is a point of disagreement, as is any prejudice Oracle claims it might suffer as a result of having an escrow as security. Defendants, however, refrain from responding to each of Oracle's arguments because Defendants are now in a position to agree to a supersedeas bond.

Specifically, as described in the underlying motion ("Rule 62 Motion"), Defendants and/or their affiliated companies are parties to several unsecured financing agreements that contain restrictions on the ability to grant security interests to third parties (so-called negative pledge clauses), including the type of security required by an issuer of a supersedeas bond. *See* ECF No. 1051 (Rule 62 Motion). After the escrow negotiations broke down, forcing Defendants to file the Rule 62 Motion in order to maintain the temporary stay of execution of judgment, Defendants negotiated with the issuers of these unsecured financings and worked out agreements such that securing a supersedeas bond will not trigger the negative pledge clauses in the unsecured financing agreements. Defendants are now in a position to offer a supersedeas bond as security having resolved the primary negative consequence that led them to seek an escrow.

### 2. **Defendants Request Twenty-One Days to Secure the Bond.**

Obtaining a security for the amount at issue is necessarily a complicated task. Defendants spent a considerable amount of time securing the escrow agreement, followed by months of revisions resulting from the negotiations with Oracle. Defendants are now diligently working to secure a supersedeas bond, but anticipate that it will take at least twenty-one (21) days to finalize the bond arrangements.[1]

Specifically, Defendants are concurrently working to obtain both a conventional secured bond backed by letters of credit as well as an unsecured bond, in the event that that they are not able to obtain the secured bond in a timely manner. *See* Declaration of Marcin Plonka in Support of Defendants' Reply in Support of Motion to Stay Execution of Judgment Through Appeal and Approval of Proposed Security Pursuant to FRCP 62 ("Plonka Decl.") ¶ 2. Obtaining a secured bond involves negotiating with both insurance carriers regarding multiple indemnity agreements that would support an acceptable form of the secured bond, as well as financial institutions who will back and issue the letters of credit that serve as the bond collateral. *Id.* ¶ 3. Given the size of the verdict, a syndicate of financial institutions must be formed to back and issue the letters of

---

[1] In the Rule 62 Motion, Defendants state that they require fourteen days to complete execution of the bond. This statement assumed that the fourteen-day clock would begin upon the Court order following the May 4 hearing. Defendants' current request for twenty-one days accounts for the fact that the Court may rule on the Rule 62 Motion prior to the hearing.

1  credit. *Id.* ¶ 4. And because a fulsome credit facility is required, opinions must be given and
2  certificates must be issued, which in turn require notarization. *Id.* ¶ 5. Unlike the United States,
3  the German notarization process for such a credit facility is time consuming. *Id.* ¶ 6. In the area
4  of Baden-Wuerrtember, where SAP AG is located, the notary public is employed by the local
5  court and is similar to a judge. *Id.* The process itself takes a matter of days rather than hours. *Id.*
6  Then the actual letters of credit have to be issued by the financial institutions and transferred to
7  the insurance carrier(s)' possession before the bond can be issued. *Id.* ¶ 7. Just the physical
8  movement of the indemnity agreements, bond forms and letters of credit papers amongst the
9  various parties and between countries alone could take two weeks. *Id.* ¶ 8.

10  With regard to the unsecured bond, Defendants must negotiate with five or more
11  insurance companies who collectively will underwrite an unsecured bond in the amount of the
12  judgment plus three years post-judgment interest. *Id.* ¶ 9. Each of these insurance companies
13  requires, at minimum, an indemnity agreement and parental guarentee, which must be negotiated,
14  signed, notarized and sent to the United States. *Id.* ¶ 10. Not until this is done will the insurance
15  companies finish underwriting the bond. *Id.* Again, this is a time-consuming and complicated
16  task; even twenty-one days is a race to the finish.

17  **3.     Instructions on Quarterly Reporting Are Not Necessary.**

18  Finally, Oracle asks that the Court order include "instructions for the bonding company to
19  provide a quarterly report to the Parties and increase the bond amount as needed to cover post-
20  judgment interest accrued in the future." ECF No. 1059 (Oracle's Opposition) at 2, 14. Oracle
21  does not, however, provide any explanation for why such instructions are necessary or any legal
22  support for this request, which is simply not the conventional way parties handle supersedeas
23  bonds.

24  First, the bond amount agreed upon by the parties already includes three years worth of
25  post-judgment interest. Thus, there is no new information for the bonding company to report.
26  Second, Defendants already have the responsibility for increasing the amount of the bond should
27  the appeal process take longer than three years, and will do so in the usual way by securing a
28  bond that accounts for increases for additional time periods should they occur. Accordingly,

1   Defendants believe there is no reason for the Court to order Oracle's requested instructions.

2   **CONCLUSION**

3   For these reasons, Defendants request that the Court (1) GRANT a stay of execution of final judgment pending disposition of Defendants' post-judgment motions and, if necessary, during the pendency of appeal, (2) APPROVE $1,325,033,547 paid as a supersedeas bond, as the appropriate amount and form of security under Rule 62, and (3) GRANT Defendants twenty-one (21) days to finalize the bond arrangements and file a motion to approve the bond. Alternatively, Defendants request that the hearing on this motion be continued to July 13, the date scheduled for the parties' pending post-judgment motions.

Dated: April 20, 2011

JONES DAY

By: /s/ Tharan Gregory Lanier
        Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.