| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
|   | DONN P. PICKETT (SBN 72257) |
| 2 | GEOFFREY M. HOWARD (SBN 157468) |
|   | HOLLY A. HOUSE (SBN 136045) |
| 3 | ZACHARY J. ALINDER (SBN 209009) |
|   | BREE HANN (SBN 215695) |
| 4 | Three Embarcadero Center |
|   | San Francisco, CA 94111-4067 |
| 5 | Telephone: 415.393.2000 |
|   | Facsimile: 415.393.2286 |
| 6 | donn.pickett@bingham.com |
|   | geoff.howard@bingham.com |
| 7 | holly.house@bingham.com |
|   | zachary.alinder@bingham.com |
| 8 | bree.hann@bingham.com |
| 9 | BOIES, SCHILLER & FLEXNER LLP |
|   | DAVID BOIES (Admitted Pro Hac Vice) |
| 10 | 333 Main Street |
|   | Armonk, NY 10504 |
| 11 | Telephone: (914) 749-8200 |
|   | Facsimile: (914) 749-8300 |
| 12 | dboies@bsfllp.com |
|   | STEVEN C. HOLTZMAN (SBN 144177) |
| 13 | FRED NORTON (SBN 224725) |
|   | 1999 Harrison St., Suite 900 |
| 14 | Oakland, CA 94612 |
|   | Telephone: (510) 874-1000 |
| 15 | Facsimile: (510) 874-1460 |
|   | sholtzman@bsfllp.com |
| 16 | fnorton@bsfllp.com |
| 17 | DORIAN DALEY (SBN 129049) |
|   | JENNIFER GLOSS (SBN 154227) |
|   | 500 Oracle Parkway, M/S 5op7 |
| 18 | Redwood City, CA 94070 |
|   | Telephone: 650.506.4846 |
| 19 | Facsimile: 650.506.7144 |
|   | dorian.daley@oracle.com |
| 20 | jennifer.gloss@oracle.com |
| 21 | Attorneys for Plaintiffs Oracle USA, Inc., *et al.* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | | |
|---|---|---|
| ORACLE USA, INC., *et al.*, | | No. 07-CV-01658 PJH (EDL) |
| | Plaintiffs, | **ORACLE'S REPLY MEMORANDUM IN SUPPORT OF CONDITIONAL MOTION FOR NEW TRIAL** |
| | v. | |
| SAP AG, *et al.*, | | Date: July 13, 2011 |
| | | Time: 9:00 a.m. |
| | Defendants. | Place: 3rd Floor, Courtroom 3 |
| | | Judge: Hon. Phyllis J. Hamilton |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................1
II. ARGUMENT .......................................................................................................................1
    A. The Law Permits Oracle's Conditional Motion ......................................................1
    B. Any New Trial Should Include Oracle's Up-Sell And Cross-Sell Projections Evidence That Was Erroneously Excluded..........................................2
        1. SAP's Semantic Argument Obscures The Issue And Its Remaining Arguments Are Irrelevant And Incorrect ......................................4
        2. The Mid-Trial Ruling Denied Oracle Notice And Due Process ...............6
        3. The Mid-Trial Order Prejudiced Oracle......................................................7
    C. Oracle May Recover All Infringer's Profits Plus Actual Damages .......................7
    D. The Erroneous Preclusion Of SAP's Saved Development Costs Prejudiced Oracle ....................................................................................................9
    E. The Court Should Exclude Clarke's Behavioral Testimony From Any New Trial ................................................................................................................10
III. CONCLUSION ..................................................................................................................12

## TABLE OF AUTHORITIES

Page

**CASES**

*Alexander v. Smith & Nephew, P.L.C.*,
   98 F. Supp. 2d 1310 (N.D. Ok. 2000) .................................................................................11

*Avila v. Willits Envt'l Remediation Trust*,
   633 F.3d 828 (9th Cir. 2011) ...............................................................................................12

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ...............................................................................................11

*Bruce v. Weekly World News, Inc.*,
   150 F. Supp. 2d 313 ...............................................................................................................8

*Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*,
   606 F. Supp. 2d 571 (M.D.N.C. 2009) ..................................................................................1

*Cream Records v. Jos. Schlitz Brewing Co.*,
   754 F.2d 826 (9th Cir. 1985) ............................................................................................8, 9

*Dolby Labs, Inc., v. Lucent Techs. Inc.*,
   No. C 01-20709 JF, 2005 WL 2171921 (N.D. Cal. Sept. 6, 2005) ........................................2

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004) .............................................................................................8

*Jones v. Union Pac. R.R. Co.*,
   968 F.2d 937 (9th Cir. 1992) ...............................................................................................10

*Lucent Techs., Inc. v. Microsoft Corp.*,
   No. 06-CV-0684-H, 2008 WL 2872738 (S.D. Cal. July 23, 2008) ........................................1

*Mars, Inc. v. Coin Acceptors, Inc.*,
   527 F.3d 1359 (Fed. Cir. 2008) .............................................................................................9

*McDaniels v. Del. Cnty. Cmty. Coll.*,
   No. 92-0932, 1994 WL 675292 (E.D. Pa. Nov. 21, 1994) ....................................................1

*Micro Motion, Inc. v. Exac Corp.*,
   761 F. Supp. 1420 (N.D. Cal. 1991) ......................................................................................8

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007) .................................................................................................2

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940) ...............................................................................................................2

<dt>
</dt>
<th>
</th>

<u>TABLE OF AUTHORITIES</u>
(continued)

Page

*Netquote v. Byrd*,
  No. 07-cv-00630, 2008 WL 2442048 (D. Colo. June 13, 2008) ............................................. 11

*Paolella v. Browning-Ferris, Inc.*,
  973 F. Supp. 508 (E.D. Pa. 1997) .............................................................................................. 1

*Presidio Components Inc, v. Am. Tech. Ceramics Corp.*,
  No. 08-CV-335, 2010 U.S. Dist. LEXIS 79039 (S.D. Cal. Aug. 5, 2010) ............................... 8

*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ........................................................................................... 11, 12

*Robert Billet Promotions Inc. v. IMI Cornelius, Inc.*,
  No. 95-1376, 1998 WL 151806 (E.D. Pa. Apr. 1, 1998) ........................................................ 12

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,
  289 U.S. 689 (1933) ................................................................................................................ 10

*Spectralytics, Inc. v. Cordis Corp.*,
  650 F. Supp. 2d 900 (D. Minn. 2009) ..................................................................................... 10

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
  883 F.2d 1573 (Fed. Cir. 1989) ................................................................................................. 8

*The Cayuga Indian Nation of N.Y. v. Pataki*,
  188 F. Supp. 2d 223 (N.D.N.Y. 2002) ...................................................................................... 1

*Tribble v. Bruin*,
  279 F.2d 424 (4th Cir. 1960), *overruled on other grounds by*
  *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976) ............................................ 1, 2

*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983) .................................................................................................... 6

**RULES**

Civ. L. R. 3-4(e) .............................................................................................................................. 2

Fed. R. Civ. P. 1 .............................................................................................................................. 2

Fed. R. Civ. P. 50 ........................................................................................................................ 1, 2

Fed. R. Civ. P. 59 ........................................................................................................................ 1, 2

TABLE OF AUTHORITIES
(continued)

Page

**STATUTES**

17 U.S.C. § 504 ............................................................................................................................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50, Adv. Comm. Notes, 1963 Amendment ........................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.     INTRODUCTION

SAP's Opposition to Oracle's Conditional Motion for New Trial (the "Opp.") is correct about two things: there should not be any new trial and Oracle does not seek one. The jury's verdict, well within (in fact, below) the level supported by the evidence, should be respected. In its post-trial motion, SAP offers no sound reason why this Court should throw out the jury's work and bring the parties back for another trial. However, if the Court were to grant SAP's request, it should correct all errors at the same time. That is the only reason for Oracle's conditional new trial motion. SAP fails to provide any legal or factual basis for this Court to ignore or deny Oracle's motion in the event it were to grant SAP's.

II.    ARGUMENT

A.    The Law Permits Oracle's Conditional Motion

SAP argues that because Oracle does not want a new trial, its motion does not satisfy Rule 59. *See* Opp. at 1:25-2:25. While this procedural argument becomes academic if the Court denies SAP's Motion – as Oracle submits it should – SAP is incorrect. SAP cites no relevant authority to support its position. At the same time, it overlooks a number of cases that consider conditional new trial motions under Rule 59. *See, e.g.*, *McDaniels v. Del. Cnty. Cmty. Coll.*, No. 92-0932, 1994 WL 675292, at *3-4 (E.D. Pa. Nov. 21, 1994) (considering and denying on the merits a "conditional" motion for new trial as to damages); *see also Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 601 (M.D.N.C. 2009) (considering and denying conditional new trial motion as moot upon deciding not to alter jury's verdict); *The Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 256 (N.D.N.Y. 2002) (same); *Paolella v. Browning-Ferris, Inc.*, 973 F. Supp. 508, 516 (E.D. Pa. 1997) (same); *Lucent Techs., Inc. v. Microsoft Corp.*, No. 06-CV-0684-H, 2008 WL 2872738, at *8, 10 (S.D. Cal. July 23, 2008) (same).

The Court should consider Oracle's conditional motion only if the Court grants SAP a new trial – that is the most SAP's motion seeks – either under Rule 59 or conditionally under Rule 50(c). In either case, SAP offers no reason that the Court should not correct all errors at the same time. *See Tribble v. Bruin*, 279 F.2d 424, 426 (4th Cir. 1960), *overruled on other*

1  *grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976) ("Where, as here, in
2  addition to alternative motions by the losing party there is also a motion for new trial by his
3  adversary, the District Judge should pass on all the motions, stating the grounds for each
4  decision. Such a practice not only conforms to the requirements laid down in *Montgomery Ward*
5  *& Co. v. Duncan*, [311 U.S. 243 (1940),] but is conducive to 'the just, speedy, and inexpensive
6  determination of every action.'") (citing Fed. R. Civ. P. 1); *see also* Fed. R. Civ. P. 50, Adv.
7  Comm. Notes, 1963 Amendment (citing *Tribble* as example where trial court should have ruled
8  on plaintiff's motion for new trial after considering defendants' alternative motions for judgment
9  n.o.v. and new trial).

10  SAP offers no relevant authority either. Its first case just establishes the general
11 new trial standard. Opp. at 2:10-13 (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th
12 Cir. 2007)). Its other case may not be cited pursuant to Local Rule 3-4(e) and is inapposite. *See*
13 *id*. at 2:18-20 (citing *Dolby Labs, Inc., v. Lucent Techs. Inc.*, No. C 01-20709 JF, 2005 WL
14 2171921 (N.D. Cal. Sept. 6, 2005) ("Not For Citation" decision holding that a *motion in limine*
15 to preclude expert testimony was not ripe because the Court had already decided to dismiss all of
16 the claims *before* the trial)); Civ. L. R. 3-4(e) ("Any . . . opinion that is designated: 'NOT FOR
17 CITATION,' . . . may not be cited to this Court . . . .").

18  Rules 50 and 59, the caselaw interpreting them, and efficiency considerations
19 support the Court's consideration of this conditional motion if, and only if, SAP's Motion is
20 granted.

21  **B.    Any New Trial Should Include Oracle's Up-Sell And Cross-Sell Projections Evidence That Was Erroneously Excluded**
22

23  Judge Laporte's sanctions order precluded only evidence of Oracle's *actual*, post-
24 acquisition lost up-sell and cross-sell profits, *not* evidence of Oracle's pre-acquisition up-sell and
25 cross-sell *projections*. SAP never sought any order to preclude that projections evidence.
26 Declaration of Bree Hann ISO Oracle's Conditional Motion for New Trial, Dkt. 1047 ("Hann
27 Decl."), ¶ 1, Ex. A (Trial Tr.) at 814:6-10, 817:15-20. To the contrary, SAP's sanctions motion
28 was "limited to" lost profits and did "not extend to . . . hypothetical license" damages or the

1 projections evidence supporting them. Dkt. 365 (07/22/09 Defs' Sanctions Mot.) at 13 n.9; *see also* Dkt. 399 (08/04/09 Defs' Sanctions Reply) at 1:3-5, 6:3-5; Dkt. 426 (08/18/09 Hearing Tr.) at 61:9-10; *see also* Dkt. 526 (10/29/09 Defs' Resp. to Objs. to Sanctions Order) at 4:21-23. It could not have, because without dispute those "projections documents" were timely produced. Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:21-818:3, 823:1-21, 825:8-826:1.

The Court thus erred in holding that evidence of Oracle's pre-infringement projections relevant to the hypothetical license valuation was "close enough" to evidence of actual lost up-sell and cross-sell profits that had been "denied all along." *Id*., ¶ 1, Ex. A (Trial Tr.) at 826:14-21. That error made a $500 million difference in Meyer's damages opinion. At any new trial, therefore, the Court should admit that evidence.

SAP's response just repeats and relies on, in one form or another, the fallacy that "Judge Laporte found that Oracle failed to timely produce cross-sell and up-sell *data*," while steadfastly ignoring the fundamental distinction between projections and actual lost profits. Opp. at 3:22-25, 7:10-14, 7:20-22, 8:9-11, 9:2-5 (emphasis supplied). As the Court stated when SAP made the same argument at trial to exclude Oracle's projections evidence: "Judge Laporte's order doesn't address it. No order that I've issued addresses this. As far as I'm concerned, this is [an] entirely new issue. It is not barred by the prior discovery order." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:15-20.

The distinction between forward-looking projections and backward-looking results, which the Court recognized, ends the debate. Evidence of actual lost cross-sell and up-sell opportunities "post-January 2005" resulting in lost profits was excluded by Judge Laporte and the Court's pre-trial orders for all purposes. Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 818:6-16. Evidence of Oracle's forward-looking projections of up-sell and cross-sell opportunities was "not barred" for any purpose. *Id.* at 817:3-818:3. Therefore, there was no basis to exclude it, nor even any timely or proper request to do so, much less the showing by SAP such a remedy would have required. Accordingly, the exclusion was legal, procedural, and constitutional error.

1. **SAP's Semantic Argument Obscures The Issue And Its Remaining Arguments Are Irrelevant And Incorrect**

SAP first tries again to re-cast Judge Laporte's sanctions order. Its repeated reference to "cross-sell and up-sell data" or "information" (Opp. at 3:20-23, 4:19-20) is, at best, unhelpful. The sanctions motion and ruling only addressed – expressly and as the Court recognized – evidence of *actual lost profits* from cross-sell and up-sell, not evidence of *projections* specifically or hypothetical license damages generally. Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:3-818:3. SAP's lengthy recitation of the history of that motion (Opp. at 3-4) is thus beside any point here.

SAP points out that the Court "confirmed [Judge Laporte's] findings" pretrial. Opp. at 4:26-5:3. That is true, but also beside the point (and misleading) for the same reason. Hypothetical license evidence "couldn't conceivably be barred when [this Court] didn't even know it was an issue at the time that [it] adopted the sanctions order." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:18-20.

SAP, finally acknowledging the essential distinction between actual lost profits and projections, next claims it "had no reason to believe that the projections were relevant" because Oracle "did not disclose the details of its hypothetical license theory until November 2009, two months *after* the sanctions order." Opp. at 5:6-12. That is false. In connection with *the sanctions motion itself*, SAP's expert Clarke swore that since being retained in December 2007, he had spent over 18 months "focused on the analysis of Plaintiffs' alleged lost profits, [SAP's] alleged unjust enrichment, and *reasonable royalty*"; and that he had already accrued some $4.4 million in fees and costs doing so. Dkt. 344 (07/14/09 Clarke Decl. ISO Defs.' Sanctions Mot.) at 1:17-18 (emphasis supplied); *id.* at 11:10-12. He acknowledged Oracle had disclosed its "reasonable royalties" damages theory as one of its "original claims." *Id.* at 1:19-26, 2:5-6.[1] In any event, SAP's argument, while factually incorrect, concedes the projections

---

[1] Also, in September 2009, Oracle and Meyer cited and relied on the same projections at issue here in opposition to SAP's summary judgment motion directed to Oracle's hypothetical license

(Footnote Continued on Next Page.)

1   evidence was not at issue on its sanctions motion, though not through any fault of Oracle's.

2   SAP's remaining three arguments all miss the mark.  First, SAP says Oracle is
3   "wrong" that "actual license sales are irrelevant in valuing a hypothetical license" because the
4   "book of wisdom" allows consideration of later lost profits.  Opp. at 5:15-22, 6:17-7:3.  SAP
5   misses the point – the prior rulings it sought and the Court made dealt only with after-the-fact
6   lost profits evidence.  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 818:6-18.  As SAP concedes:  "Actual
7   sales" after the fact "do not change" before-the-fact projections.  Opp. at 5:19-20.  Therefore, an
8   order excluding evidence of the former cannot be read to exclude evidence of the latter.  *See*
9   Oracle's Conditional New Trial Motion, Dkt. 1046 ("Mot.") at 4:9-6:21.

10   SAP's unsupported assertion that "Oracle failed to produce actual sales data for
11   the period *before* the date of the hypothetical negotiation" (Opp. at 6:16-17) is another diversion.
12   SAP's sanctions motion, the sanctions order, and this Court's adoption of it did not address any
13   alleged effect on hypothetical license damages of a purported failure to produce pre-acquisition
14   information.  The motion "did not extend" to hypothetical license damages at all.  Dkt. 365
15   (7/22/09 Defs' Sanctions Mot.) at 13 n.9.[2]

16   Finally, SAP's complaint that it was "prejudiced" fails for the same reason.  As
17   the Court noted when SAP raised this argument at trial, if there was a "discovery issue" it
18   "should have been resolved before trial."  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:21-818:3,
19   825:1-7.[3]  In fact, there was none.  Asked directly at trial, SAP could not claim – and conceded

---

(Footnote Continued from Previous Page.)

damages, and the Court *overruled* SAP's objections to that evidence based on the sanctions order.  *See, e.g.*, Dkt. 483 (09/23/09 Oracle SJ Opp.) at 17:11-13; Dkt. 487 (09/23/09 Meyer Decl. ISO Oracle SJ Opp.) at ¶¶ 34.b, 34.d; Dkt. 628 (01/28/10 Partial SJ Order) at 5:5-7.

[2] SAP's unsupported assertion is also false.  Oracle produced comprehensive "quarterly income statements, balance sheets, and trial balance reports for PeopleSoft USA, Inc., the pre-cursor to Oracle USA, Inc., for the period January 1, 2002 through December 31, 2004."  Dkt. 463 (09/08/09 Order re Defs.' Mot. to Compel Finan. Info.) at 2:17-20 (order confirming Oracle's good faith production of pre-acquisition financial data that SAP moved to compel).  Oracle retrieved and produced this financial information from PeopleSoft's pre-acquisition internal reporting systems.

[3] The Court also noted that to the extent SAP claimed a failure of discovery related to hypothetical license damages, "the difficulty for SAP at this point is that you didn't raise the

(Footnote Continued on Next Page.)

1  that it did not claim – that it "chose not to take discovery on this particular [projections] data
2  because [SAP] thought that it was blocked by Judge Laporte's order." *Id.* at 823:1-6.[4]  SAP was
3  not prejudiced by anything Oracle did.  Its attempt to avoid Oracle's authority on that ground
4  fails.  Opp. at 7:4-7.

### 2. The Mid-Trial Ruling Denied Oracle Notice And Due Process

Neither Judge Laporte nor this Court ever found any violation of any discovery order relating to Oracle's pre-acquisition projections or relating to Oracle's hypothetical license damages theory.  Therefore, it was legal and constitutional error to exclude them.  Mot. at 6:22-7:21 (citing cases).  SAP's other excuses for its efforts to turn a lost profits sanction into a hypothetical license exclusion also fail.  Opp. at 7:7-10:13.  All rely on the mantra that the "exclusion of cross-sell and up-sell projections to support Oracle's hypothetical license theory was based on" Judge Laporte's sanctions order and, by extension, the Court's subsequent, related rulings.  Opp. at 7:10-14, 7:20-22, 8:3-6, 8:9-11, 9:2-4, 9:17-20, 10:11-13, 11:2-5.

SAP's argument, in all of its incarnations, defies the facts and ignores history.  The Court expressly rejected SAP's identical argument that "what we're talking about here now is enforcing the consequence of the sanctions order that resulted in your order adopting it and resulted in the orders on motions *in limine*." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 814:7-10, 817:15-818:18.  All of SAP's arguments depend on the false premise that the sanctions order applied to hypothetical license damages.  It did not, and SAP's arguments therefore fail.[5]

---

(Footnote Continued from Previous Page.)

motion.  You all raised motions on all manner of evidentiary issues.  I cannot imagine that this is not something that you were aware of." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 817:24-818:3.

[4] Even if it were true that SAP only learned of Oracle's hypothetical license damages theory "far late in the fact discovery" – and it is not true (*see* p. 4:11-22, above) – SAP conceded there were "months" left to pursue discovery on it, had SAP wanted to.  Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 823:9-12.

[5] SAP's reliance on the Court's "inherent authority to manage the trial proceedings" (Opp. at 7:25-26) does not avoid the problem.  A trial "court's exercise of its inherent power" is nevertheless constrained by due process considerations. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

### 3. The Mid-Trial Order Prejudiced Oracle

Meyer opined, based on his consideration and analysis of extensive, contemporaneous evidence, that Oracle's hypothetical license damages were "at least" $1.65 billion. Absent the exclusion, Meyer would have opined Oracle's damages were at least $2.15 billion. Mot. at 7:25-28. Given that the jury's verdict applied a hypothetical license measure and was far closer to Oracle's damages estimates than SAP's, it is reasonable to infer that the jury would have been influenced by the additional $500 million in cross-sell and up-sell projections that were improperly excluded.

SAP responds by resurrecting the erroneous argument that the exclusion was "based on" the sanctions order, and then quibbling with Meyer's opinion. Opp. at 10:20-11:5. The validity, indeed conservative nature, of Meyer's opinion is addressed at length in Oracle's opposition to SAP's Motion. *See* Dkt. 1057 (04/08/11 Oracle's Opp. to SAP's Motion for JMOL or New Trial) at 4:14-11:20. In the end, SAP cannot deny that if it really thought the cross-sell and up-sell projections made no difference, it would not have fought so hard to keep them out. Those projections should be admitted in any new trial.

### C. Oracle May Recover All Infringer's Profits Plus Actual Damages

The jury instruction and verdict form did not allow the jury to award *any* infringer's profits if it chose to award hypothetical license actual damages in *any* amount. SAP's two arguments in support of that result both fail, and its own cases show why.

First, SAP claims that because Oracle agreed that the calculation of its *full* hypothetical license actual damages included infringer's profits, *all* hypothetical license damage awards must include infringer's profits as well. *See* Opp. at 11:10-12:21. SAP's unsupported conclusion does not follow. To the contrary, the hypothetical license amount SAP's expert proposed expressly excluded half of its (supposed) infringer's profits. Mot. at 9:3-9. The distinction between a lump sum and running royalty makes no difference. *See* Opp. at 13:23-28.

1  The jury was given no discretion to award infringer's profits under any royalty theory.[6]

2  Second, SAP says that awarding infringer's profits in addition to hypothetical
3  license damages is "absurd," if doing so would leave the wrongdoer empty-handed. Opp. at
4  13:11-28. However, the Copyright Act protects the victim, not the infringer; it allows victims to
5  recover actual damages *and* 100% of non-duplicative infringer's profits. 17 U.S.C. § 504(b).
6  Anything less absolutely "under-compensates" the victim. *Cf.* Opp. at 13:14-16. Indeed, many
7  courts have upheld reasonable royalty damages *exceeding* the defendant's profits, because
8  "[t]here is no rule that a royalty be no higher than the infringer's net profit margin." *Golight,*
9  *Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) (internal citation and
10 quotation omitted); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580-81 (Fed. Cir.
11 1989) (upholding a royalty rate higher than the defendant's profit margin on infringing sales);
12 *see also Micro Motion, Inc. v. Exac Corp.*, 761 F. Supp. 1420, 1434 (N.D. Cal. 1991) ("[T]he
13 reasonable royalty rate does not reflect the infringer's actual profits, but rather the parties'
14 expectations and bargaining positions at the time of the first infringement.").

15 Finally, SAP's cases support Oracle's position. Opp. at 12:22-13:28. In *Presidio*
16 *Components*, the Court distinguished between a *post-verdict ongoing royalty*, and a backward-
17 looking hypothetical license. *Presidio Components Inc, v. Am. Tech. Ceramics Corp.*, No. 08-
18 CV-335, 2010 U.S. Dist. LEXIS 79039, at *10-11 (S.D. Cal. Aug. 5, 2010). That Court also
19 endorsed a "140%" royalty rate (which SAP would deem "absurd") because the jury had *already*
20 *awarded that rate as actual damages*. *Id*. In *Bruce*, the Court's full award (not limited to the
21 one product extracted by SAP in its discussion) included lump sum license damages, reasonable
22 royalty damages, *and* infringer's profits. *Bruce v. Weekly World News, Inc.*, 150 F. Supp. 2d
23 313, 318 n.10, 321 (D. Mass. 2001). Finally, *Cream Records*, which SAP fails to distinguish

---

[6] SAP disputes this fundamental point in its footnote 2 with reference to a statement made by the Court while considering the erroneous position SAP urged. Opp. at 12 n.2. SAP ignores the Court's ruling at the end of that discussion: "I agree with Defendants. I think that the hypothetical license does include the infringer's profits regardless of what number the jury comes back with." Hann Decl., ¶ 1, Ex. A (Trial Tr.) at 1959:19-22.

1 (Opp. at 12:22-13:10), awards both hypothetical license actual damages and infringer's profits.
2 *See Cream Records v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985). This Court should
3 allow the jury to decide whether both apply in any new trial.

### D. The Erroneous Preclusion Of SAP's Saved Development Costs Prejudiced Oracle

6 Adopting SAP's view, the Court erroneously precluded Oracle's experts from
7 presenting the amount that SAP would have spent to independently develop non-infringing
8 alternatives to the software it copied. Dkt. 914 (09/30/10 Final Pretrial Order) at 3:28-29; Hann
9 Decl., ¶ 1, Ex. A (Trial Tr.) at 257:16-25 (exclusion at trial). SAP defends its preclusion
10 argument in three ways, each of which fails.

11 First, SAP claims that the Court precluded saved development cost evidence
12 because the law did not support "a theory of copyright damages based on 'saved development
13 costs.'" Opp. at 14:3-5. That argument rests on a flawed premise: Oracle did not pursue saved
14 development cost as "actual damages" for copyright infringement. Rather, Oracle offered them
15 as a "reasonableness check on the valuations derived from [Meyer's] other approaches." Dkt.
16 925 (10/04/10 Refiled Jindal Decl. ISO Opp. to Mot. to Exclude Meyer), ¶ 3, Ex. A (Meyer
17 Report) at ¶ 143. SAP's footnoted assertion that neither the *Mars* case nor the Parr treatise
18 "endorse" the recovery of saved development costs as "actual damages" fails for the same
19 reason. *See* Opp. at 15 n.3. SAP's costs to develop non-infringing alternatives related to the
20 hypothetical license negotiation as a reality check on what SAP would have been willing to pay.
21 SAP cites no cases to the contrary. *See*, *e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359,
22 1372-73 (Fed. Cir. 2008) (discussing costs of non-infringing alternatives).

23 Second, SAP ignores the undisputed evidence that Oracle proposed to offer,
24 perpetuating the mistake that misled the Court in the first place. As SAP conceded in its *Daubert*
25 and summary judgment motions, Oracle's experts estimated what *SAP would have spent* to
26 develop non-infringing alternative software. *See* Dkt. 774 (08/19/10 Mot. to Exclude Pinto) at
27 3:13-19; Dkt. 640 (03/03/10 Defs' MSJ) at 10:12-14. The Court's MSJ order precluded Oracle's
28 evidence "based on the amounts that *Oracle allegedly spent* to develop and/or acquire the

1  intellectual property at issue, *not on what it would have cost SAP* for research and development."
2  Dkt. 762 (08/17/10 MSJ Order) at 23 n.5 (emphasis supplied).  Thus, the Court erroneously
3  precluded Oracle from presenting relevant evidence based on an assumption that was "contrary
4  to the undisputed facts and . . . [that] virtually assume[d] the conclusion." *Jones v. Union Pac.*
5  *R.R. Co.*, 968 F.2d 937, 941 (9th Cir. 1992).
6           Third, SAP claims Oracle suffered no prejudice because evidence of saved
7  development costs could not provide any "reality check." Opp. at 16:1-17:4.  That argument
8  relies on SAP's overly-narrow definition of a "reality check" – "the number of customers Oracle
9  actually lost to TN as a result of infringement." *Id.* at 16:5-12.  To the contrary, any admissible
10 evidence that tends to support the calculation of damages can provide a reality check.  *See, e.g.*,
11 *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697 (1933) ("The law will
12 make the best appraisal that it can, summoning to its service whatever aids it can command.");
13 *Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 911 (D. Minn. 2009) (admitting expert
14 testimony that "the cost of available noninfringing alternatives would have affected a license
15 negotiation.").  SAP's string cite of "book of wisdom" cases stands for the proposition that
16 evidence of actual sales may be probative, not that saved development cost evidence cannot be.
17 Opp. at 16:17-20.

18 **E.     The Court Should Exclude Clarke's Behavioral Testimony From**
        **Any New Trial**
19

20          Clarke's general economic and accounting background did not qualify him to
21 opine regarding customer traits, behavior, and why he believed specific customers left Oracle
22 and bought SAP software instead.  SAP defends Clarke's testimony in three ways, all of which
23 fail to address Clarke's underlying lack of expertise.
24          First, SAP argues that because Clarke's testimony concerned causation it related
25 to the damages analysis "to be done in every copyright case." *See* Opp. at 17:16-18:5.  The
26 alleged omnipresence of causation testimony in copyright cases has nothing to do with whether
27 Clarke had the qualifications to provide it.  SAP's argument actually emphasizes Clarke's lack of
28 qualifications to provide the testimony.  SAP knew the importance of the testimony, told the jury

1  that the "causation" issue – "how customers made the decisions they made" – is what this case is
2  "all about," and yet failed to provide an expert with the qualifications to provide it. Hann Decl.,
3  ¶ 1, Ex. A (Trial Tr.) at 400:1-10, 1589:17-1590:11.
4       Second, SAP argues that Clarke's 30 years of general economic experience and
5  review of "millions of pages of relevant information" should suffice. Opp. at 18:6-19:26. Not
6  so. "The issue with regard to [Clarke] is not the qualifications of [Clarke] in the abstract, but
7  whether those qualifications provide a foundation for [him] to answer [] specific question[s]"
8  concerning customer-by-customer causation. *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th
9  Cir. 1994). Evaluating customer behavior using subjective emails (not objective financial or
10 economic data), on a customer-by-customer basis, requires specific expertise that Clarke did not
11 possess. The act of reviewing this subjective information cannot cure that defect or bestow
12 expertise. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)
13 (court first must establish expert's qualifications). Also, Clarke's general expertise in accounting
14 and economics is different, and inadequate. *See Alexander v. Smith & Nephew, P.L.C.*, 98 F.
15 Supp. 2d 1310, 1315 (N.D. Ok. 2000) ("The simple possession of a medical degree is insufficient
16 to qualify a physician to testify as to . . . the medical causation of spine-related ailments . . . .").
17      Third, SAP claims that the District of Colorado and related "Tenth Circuit
18 precedent" would have allowed this unqualified testimony. Opp. at 18:18-19:10. Neither is true.
19 The expert in the Colorado case relied on "objective customer data" – Clarke did not. *Netquote
20 v. Byrd*, No. 07-cv-00630, 2008 WL 2442048, at *3 (D. Colo. June 13, 2008). Thus, *Netquote*
21 merely confirms that, on a *Daubert* motion, where an expert analyzes objective data, the Court
22 should not exclude testimony "as long as the expert stays within the reasonable confines of his
23 subject area." *Id.* at *7 (internal citation and quotation omitted). Clarke did not use objective
24 data for these opinions and did not stay within his "reasonable confines." *See* Hann Decl., ¶ 1,
25 Ex. A (Trial Tr.) at 1531:3-1538:2, 1589:4-1590:11. The "Tenth Circuit precedent" that SAP
26 refers to (Opp. at 19:5), *Ralston*, confirms this point, as does Ninth Circuit precedent relying on
27 *Ralston*. *See Ralston*, 275 F.3d at 969-70 (affirming finding that testimony of medical expert
28 about relevant procedure, without specialized knowledge, did not fall "within the reasonable

1  confines of her subject area"); *see Avila v. Willits Envt'l Remediation Trust*, 633 F.3d 828, 836-
2  40 (9th Cir. 2011) (quoting *Ralston* and affirming exclusion of expert's opinions where the
3  expert has no "special training or knowledge regarding [the relevant] industries such that he
4  could reliably opine" on causation).

5        The *Robert Billet* case SAP cites does not help.  Opp. at 19:22-26 (citing *Robert
6  Billet Promotions Inc. v. IMI Cornelius, Inc.*, No. 95-1376, 1998 WL 151806, at *5 (E.D. Pa.
7  Apr. 1, 1998)).  The expert there did not rely on subjective customer-by-customer
8  determinations, like Clarke did, but instead relied on objective numbers in draft agreements and
9  business justification documents. *Robert Billet*, 1998 WL 151806, at *4.  Even so, the Court
10 excluded part of the expert's damages opinion based on this documentary evidence, holding that
11 "reliance on [defendant's] extra-contractual business justification documents to arrive at the
12 number of units sold was methodologically unsound." *Id*. at *4.  As all these authorities reflect,
13 the Court should not allow Clarke to give behavioral testimony in any new trial. *See Avila*, 633
14 F.3d. at 839.

15 **III.   CONCLUSION**

16       If the Court were to order a new damages trial, Oracle's pre-2005 up-sell and
17 cross-sell projections should be admitted, the jury should be properly instructed on infringer's
18 profits, Oracle's evidence of SAP's saved development costs should be admitted, and Clarke's
19 testimony should be limited to the damages issues for which he is qualified.

20 DATED:  April 27, 2011                Bingham McCutchen LLP

By:    /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs Oracle USA, Inc., *et al.*