United States District Court

For the Northern District of California

1

2

3               UNITED STATES DISTRICT COURT

4              NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8   ORACLE USA, INC., et al.,

9          Plaintiffs,                     No. C 07-1658 PJH

10       v.                              **ORDER GRANTING DEFENDANTS'
                                          MOTION FOR JMOL, AND MOTION
11   SAP AG, et al.,                      FOR NEW TRIAL; ORDER DENYING
                                          PLAINTIFFS' MOTION FOR NEW
12         Defendants.                    TRIAL; ORDER PARTIALLY
    _____/    VACATING JUDGMENT**
13

14        Before the court is the renewed motion of defendants SAP, AG, SAP America, Inc.,

15   and TomorrowNow, Inc. ("SAP") for judgment as a matter of law, pursuant to Federal Rule

16   of Civil Procedure 50(b), and motion for a new trial, pursuant to Federal Rule of Civil

17   Procedure 59.  Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Siebel

18   Systems, Inc. ("Oracle") oppose the motion, and also move for a new trial.  Also before the

19   court is Oracle's "conditional motion" for a new trial.  Having read the parties' papers and

20   carefully considered their arguments, including the arguments made at the July 13, 2011

21   hearing, the court GRANTS SAP's motion for judgment as a matter of law; GRANTS SAP's

22   motion for a new trial, conditional upon Oracle's acceptance of a remittitur; and DENIES

23   Oracle's "conditional motion" for a new trial.

24        As set forth in some detail in the court's previous orders in this case, Oracle filed suit

25   against SAP in March 2007, alleging copyright infringement, violations of the Computer

26   Fraud and Abuse Act, and various state-law claims.  After more than three and a half years

27   of heated litigation, the case was tried to a jury in November 2010.  Prior to the trial, SAP

28   conceded liability as to all claims that had not previously been dismissed.  Thus, the only

United States District Court

For the Northern District of California

1  issue for decision by the jury was the amount of the damages.  On November 23, 2011, the

2  jury returned a verdict, awarding Oracle $1.3 billion in "hypothetical license" damages.

3      SAP seeks judgment as a matter of law that Oracle is not entitled to actual damages

4  for copyright infringement in the form of a hypothetical license, for two reasons – because

5  Oracle did not establish that, but for infringement, it would have licensed the asserted

6  copyrighted works for the use at issue, and because Oracle did not present evidence

7  sufficient to value such a license, with the result that the jury's award was unduly

8  speculative.

9      In the alternative, SAP seeks a remittitur, from $1.3 billion to no more than $408.7

10  million, or, a new trial as to the amount of damages.  SAP asserts that the jury award is

11  grossly excessive, and also against the weight of the evidence, as it was based on the

12  speculative evidence Oracle offered in support of its hypothetical license theory, rather than

13  on evidence of SAP's actual use of the copyrighted works and the objectively verifiable

14  number of customers (and amount of business) lost as a result.

**DISCUSSION**

16  A.    Legal Standards

17      Judgment as a matter of law is appropriate when "a party has been fully heard on an

18  issue during a jury trial and the court finds that a reasonable jury would not have a legally

19  sufficient evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1);

20  see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

21      A party must make a motion for judgment as a matter of law under Rule 50(a) before

22  a case is submitted to the jury.  If the judge denies or defers ruling on the motion, and if the

23  jury then returns a verdict against the moving party, the party may renew its motion under

24  Rule 50(b).  In ruling on the renewed motion, the court may either "allow judgment on the

25  verdict, if the jury returned a verdict," or "order a new trial," or "direct the entry of judgment

26  as a matter of law."  Fed. R. Civ. P. 50(b).

27      The standard for judgment as a matter of law "mirrors" that for granting summary

28  judgment.  Reeves, 530 U.S. at 150.  The court "should review all of the evidence in the

United States District Court

For the Northern District of California

1    record," but "may not make credibility determinations or weigh the evidence." Id. see also

2    Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  The court should give credence

3    to the evidence favoring the non-moving party, as well as that evidence supporting the

4    moving party that is uncontradicted and unimpeached, to the extent that it comes from

5    disinterested witnesses.  Reeves, 530 U.S. at 151 (quotation and citation omitted).

6         The test applied is whether the evidence permits only one reasonable conclusion,

7    and that conclusion is contrary to the jury's verdict.  Josephs, 443 F.3d at 1062.  The

8    verdict must be upheld if the evidence is adequate to support the jury's conclusion, even if

9    it is also possible to draw a contrary conclusion from the same evidence.  Johnson v.

10   Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).  However,

11   judgment as a matter of law "is appropriate when the jury could have relied only on

12   speculation to reach its verdict."  Lakeside-Scott v. Multnomah County, 556 F.3d 797, 803

13   (9th Cir. 2009).

14        The district court has discretion to order a new trial rather than grant judgment as a

15   matter of law if it believes that the defect in the nonmoving party's proof might be remedied

16   on a second trial, or if needed evidence was ruled out at trial by some error of the court.

17   See 9B Wright & Miller, Federal Practice and Procedure, Civil 3d § 2538 (2008).  The

18   language in the rule permits the court to exercise discretion to choose between the two

19   alternatives.  Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 215 (1947).

20        This discretion to order a new trial under Rule 50(b) exists only if the moving party

21   would be entitled to judgment as a matter of law.  If that motion must be denied, the court

22   has no power to order a new trial in favor of the moving party, except under the conditions

23   specified in Rule 59(d), unless a motion for a new trial under Rule 59 has been joined in the

24   alternative with the renewed motion under Rule 50(b).  See Wright & Miller, § 2538.

25        Whether to grant a new trial is a matter of the trial court's discretion.  City Solutions,

26   Inc. v. Clear Channel Communications, 365 F.3d 835, 843 (9th Cir. 2004).  Courts apply a

27   lower standard of proof to motions for new trial than they do to motions for judgment as a

28   matter of law.  The court may grant a motion for a new trial even if the verdict is supported

**United States District Court**
For the Northern District of California

1   by substantial evidence, if it concludes that the verdict is contrary to the clear weight of the

2   evidence, is based on evidence which is false, or would result in a miscarriage of justice.

3   Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001);

4   see also Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  The court may

5   weigh the evidence and may evaluate the credibility of the witnesses, and is not required to

6   view the evidence from the perspective most favorable to the prevailing party.  United

7   States v. Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000).

8         However, where a movant claims that a verdict is against the clear weight of the

9   evidence, doubts about the correctness of the verdict are not sufficient grounds for a new

10   trial.  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir.

11   1987).  "Courts are not free to reweigh the evidence and set aside the jury verdict merely

12   because the jury could have drawn different inferences or conclusions or because judges

13   feel that other results are more reasonable."  Tennant v. Peoria & Pekin Union Ry. Co., 321

14   U.S. 29, 35 (1944).  The trial court, after having given full respect to the jury's findings,

15   must have a definite and firm conviction that the jury has made a mistake.  Landes Constr.

16   Co., 833 F.2d at 1371-72 (citations omitted).

17         Where the court concludes that a new trial is appropriate due to excessive damages,

18   it may exercise its discretion to grant a new trial either without qualification, or conditioned

19   on the winner's refusal to accept a reduction in damages, known as remittitur.  See

20   Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996); Fenner v. Dependable

21   Trucking Co., Inc., 716 F.2d 598, 603 (9th Cir. 1983).

22         Put another way, once a trial court determines that damages are excessive, it has

23   only two alternatives – either order a new trial, or deny the new trial, conditioned on the

24   prevailing party accepting a remittitur.  Fenner, 716 F.2d at 602-03.  The standard for

25   remittitur is the same as that for a motion for new trial based on excessive damages.

26   Gasperini, 518 U.S. at 433.  The proper amount of a remittitur is the maximum amount of

27   damages that can be sustained by the evidence in the record.  D & S Redi-Mix v. Sierra

28   Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).

United States District Court

For the Northern District of California

1  B.      SAP's Motions

2          1.      Judgment as a matter of law

3          SAP argues that it is entitled to judgment as a matter of law that Oracle is not

4  entitled to actual damages for copyright infringement in the form of a hypothetical license,

5  because Oracle did not establish that, but for infringement, it would have licensed the

6  asserted copyrighted works for the use at issue, and because Oracle did not present

7  evidence sufficient to value such a license, with the result that the award was based on

8  undue speculation.

9          The Copyright Act allows recovery of either statutory damages, or "actual damages

10 suffered by [the copyright owner] as a result of the infringement" plus "any profits of the

11 infringer that are attributable to the infringement and are not taken into account in

12 computing the actual damages."  17 U.S.C. § 504(a), (b).  Actual damages are awarded to

13 compensate for demonstrable harm caused by infringement.  Polar Bear Prods., Inc. v.

14 Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004).  When proof of actual damages or

15 infringer's profits is insufficient, a copyright owner may elect to receive statutory damages,

16 subject to having met other statutory requirements.  See 17 U.S.C. §§ 412(2), 504(c).

17         Because actual damages must be suffered "as a result of the infringement," and

18 recoverable profits must "be attributable to the infringement," id. § 504(b), the plaintiff bears

19 the burden of proving the causal connection between the infringement and the monetary

20 remedy sought.  See, e.g., Polar Bear, 384 F.3d at 708; Mackie v. Rieser, 296 F.3d 909,

21 914-15 (9th Cir. 2002).  This requirement "is akin to tort principles of causation and

22 damages."  Polar Bear, 384 F.3d at 708.  In addition, while courts allow both direct and

23 indirect evidence to establish loss, they will reject a proffered measure of damages if it is

24 too speculative.  Mackie, 296 F.3d at 915-16; see also Jarvis v. K2 Inc., 486 F.3d 526, 534

25 (9th Cir. 2007).

26         Actual damages are generally determined by the loss in the fair market value of the

27 copyright, "measured by the profits lost due to the infringement or the value of the use of

28 the copyrighted work to the infringer."  Polar Bear, 384 F.3d at 708; see also Abend v.

United States District Court

For the Northern District of California

1  MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988).  Under this approach, the plaintiff must

2  show that the fair market value of its work has been diminished because the infringement

3  has adversely affected its ability to exercise the exclusive rights granted in § 106 of the

4  Copyright Act.  Abend, 863 F.2d at 1479-80.  This market value approach requires "an

5  objective, not a subjective analysis."  Jarvis, 486 F.3d at 534 (citations and quotations

6  omitted); Mackie, 296 F.3d at 917.

7         The Ninth Circuit has endorsed a retroactive license fee as one measure of the loss

8  in fair market value of the copyright.  "[I]n situations where the infringer could have

9  bargained with the copyright owner to purchase the right to use the work, actual damages

10  are what a willing buyer would have been reasonably required to pay a willing seller for the

11  plaintiff's work."  Jarvis, 486 F.3d at 533 (quoting Sid & Marty Krofft Television Prods, Inc.

12  v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir. 1977)); see also Polar Bear, 384 F.3d

13  at 708-09 (confirming "the value of the use of the copyrighted work to the infringer" as

14  among the actual damages available, and upholding jury award of license where plaintiff's

15  expert provided credible evidence in support of awarded amount).

16         The jury was instructed as to both the fair market value license calculation for actual

17  damages, and the lost profits/infringer's profits calculation for actual damages.  On the

18  verdict form, the jury was asked to state "the dollar amount that Oracle is entitled to from

19  Defendants to compensate [it] for its actual damages under the copyright infringement

20  claim, in the form of EITHER a fair market value license for the copyright infringement OR

21  lost profits."  The jury opted for the fair market value license, for which it awarded Oracle

22  $1.3 billion.

23         SAP argues that Oracle's hypothetical license claim for the PeopleSoft, JDE, and

24  Siebel works is unreasonable and unduly speculative.  SAP contends that no court has

25  ever awarded a lost license fee (measured "hypothetically" or otherwise) to a copyright

26  plaintiff who did not actually lose license fees, or has ever awarded a lost license fee

27  absent evidence of benchmark transactions, and contends that the evidence shows that

28  Oracle did not suffer any damage in the form of lost license fees, and that Oracle's actual

6

United States District Court

For the Northern District of California

1   harm from infringement was minimal, as TomorrowNow ("TN") had relatively few

2   customers.

3        SAP also asserts that the evidence shows that Oracle does not license the

4   copyrighted works to provide third-party support, and that Oracle presented no objective

5   evidence as to the value of a license, such as benchmark licenses for comparable use of

6   comparable works (because, as an Oracle executive testified, there are no comparable

7   licenses to the hypothetical license at issue here).  Both sides' witnesses confirmed that

8   such licenses would never have existed between SAP and Oracle.  SAP argues that

9   because no real-world benchmarks exist to prove objective market value, the jury's verdict

10   was based on speculative evidence, including evidence of subjective "negotiation

11   perspectives."

12        SAP contends that Oracle invented factors to price the hypothetical PeopleSoft/JDE

13   and Siebel licenses at "at least" $1.66 billion.  These factors included the amount Oracle

14   executives claimed they would have charged for a license (unsupported by evidence of

15   benchmark licenses or transactions, or prior licensing history of the subject works); the

16   value of the infringed intellectual property as a whole and the costs of acquiring it; the

17   cumulative liability evidence for stipulated claims; the factors cited by Oracle's damages

18   expert Paul Meyer for determining the result of a "hypothetical negotiation" to use the

19   PeopleSoft, JDE, and Siebel works; and the invitation to speculate as to the value of the

20   hypothetical license, made to the jury by Oracle's counsel during closing argument.

21        In particular, SAP argues that the wide range of license values generated by Mr.

22   Meyer's analysis – a range of $881 million to $2.69 billion – forced the jury to speculate,

23   and notes that Mr. Meyer concluded without any reasoned explanation that the value of the

24   PeopleSoft license would be "at least $1.5 billion," and proposed that the Siebel license

25   would be worth "at least $100 million."  SAP asserts that Oracle's counsel also encouraged

26   the jury to speculate.  Rather than offering objective evidence to assist the jury in

27   determining a fair market value for the license that even Oracle admitted its expert could

28   not quantify, Oracle's counsel invited the jury in his closing argument to engage in

7

United States District Court

For the Northern District of California

1   guesswork and simply pick a number between $1.66 billion and $3 billion.

2          SAP asserts that Oracle's database damages claim is similarly unreasonable and

3   unduly speculative, as Oracle presented only one-sided testimony of "what it would have

4   charged" for a license to use Oracle's database software; and the license calculation was

5   not based on objective evidence (as no similar license exists), but rather on the

6   unsupported speculation of a single Oracle employee, who admitted there was no "real

7   world" transaction in which any customer had agreed to actually license the database

8   software on this basis.

9          SAP contends that Oracle presented no objective evidence (such as benchmark

10  licenses) relevant to the database license price or structure, and that Oracle's claim that it

11  would have charged on a "per-customer" basis had no objective foundation and was unduly

12  speculative, as there was no evidence Oracle had ever priced on a "per-customer" basis.

13  SAP also asserts that Oracle presented only subjective testimony of what it claims it would

14  have charged for a database license, rather than presenting objective evidence showing

15  fair market value.

16         In addition, SAP argues, Oracle failed to analyze, much less substantiate, what TN,

17  as a willing buyer, would have agreed to pay.  SAP asserts that focusing on only what the

18  willing seller would have agreed to – as Oracle has done here – is problematic, as Oracle's

19  calculation deviated significantly from the standard pricing structure, did not arise from

20  comparable benchmark licenses, and ultimately resulted in a licensing fee almost

21  equivalent to TN's revenues for its entire 7-year history.

22         In sum, SAP argues that the evidence demonstrates that the "hypothetical license"

23  fees that Oracle obtained as damages from the jury were not "actual" damages.  Rather,

24  SAP asserts, that award represented an unduly speculative, counterfactual, and punitive

25  award that wholly failed to measure Oracle's actual damages – which, in fact, were in the

26  form of lost profits, not lost license fees.

27         Oracle responds that it is undisputed that the Ninth Circuit accepts hypothetical

28  license damages, and that the license should be measured by contemporaneous "objective

1   considerations of market value," rather than after-the-fact events.  Oracle asserts that the

2   court has already rejected SAP's contention that Oracle is ineligible for hypothetical license

3   damages (referring to the January 28, 2010 order denying SAP's motion for partial

4   summary judgment).

5         Oracle contends that SAP took rights for which Oracle was entitled to charge, and

6   that it is irrelevant whether the parties would actually have reached an agreement or even

7   attempted to negotiate one.  Oracle asserts that an infringer who takes for free what the

8   copyright owner has the right to license, automatically and immediately deprives the owner

9   of the license fee it was entitled to receive.  Oracle claims that the authorities cited by SAP

10  impose no additional causation burden.

11        Oracle contends that the evidence it presented proved the fair market value of the

12  hypothetical license, and that the evidence shows that it invested billions in its intellectual

13  property in reliance on its right to control and protect it, as did SAP; and that the purchase

14  price of PeopleSoft and Siebel was commensurate with their expected value to Oracle, and

15  constitutes objective evidence of the fee that it would have charged to license the software.

16        Oracle asserts that the evidence also shows that SAP's infringement was vast, that

17  TN's use of Oracle's copyrighted software was intended as a means to convert customers

18  to SAP applications, and that SAP had plans to convert more than half of the PeopleSoft

19  customers; that SAP's executive board gave "extensive guidance" on SAP's plans to use

20  TN to generate billions in revenue and disruption; and that TN used Oracle's intellectual

21  property as a means of containing Oracle's growth and reducing Oracle's ability to invest in

22  research and development.

23        Oracle argues that a prudent copyright owner and a prudent licensee, in the

24  positions of Oracle and SAP, would have considered the level of infringement, the value of

25  the infringed works, and the top-level business decisions behind the infringement when

26  negotiating and deciding on the scope and value of a hypothetical license.  Oracle

27  contends that Mr. Meyer's testimony relied on the undisputed principle that the willing-

28  buyer, willing-seller hypothetical license framework should account for the Georgia-Pacific

9

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1  factors.[1]  Oracle also claims that Mr. Meyer showed how his consideration of this evidence

2  supported his opinion regarding the value of the hypothetical license, how he weighed each

3  party's "negotiating perspective" and the evidence of their projected financial and other

4  strategic motivations, and how he applied an established valuation methodology to that

5  evidence to determine the fair market value of SAP's infringing use of Oracle's software.

6          Oracle argues that the hypothetical Database license valuation was also supported

7  by substantial and undisputed evidence.  Oracle contends that the testimony of the Oracle

8  executives was not the only evidence that supported Mr. Meyer's calculation of the

9  hypothetical license award, and it is not true that the "benchmark" license is the only

10  objective measure of a reasonable license fee.  Oracle notes that experts from both sides

11  used Oracle's historical Database price lists, as a reasonable benchmark in calculating the

12  Database license value.

13          The court finds that the motion must be GRANTED.  At trial, Oracle presented no

14  evidence, and did not argue, that it was entitled to a hypothetical license fee because it lost

15  an opportunity to license the works to third parties for the same use as was made by TN.

16  Indeed, Oracle admitted that it had never given any entity a license to copy Oracle's

17  application software and support materials in order to create their own fixes, patches, or

18  updates for customers.  Thus, Oracle could not reasonably claim that SAP's infringement

19  diminished the licensing value of the infringed works.

20          Thus, to establish its entitlement to recover hypothetical license damages, Oracle

21  was required to show that, but for infringement, the parties would have agreed to license

22  the use of the copyrighted works at issue.  However, Oracle offered no evidence of the type

23  on which plaintiffs ordinarily rely to prove that they would have entered into such a license,

24

25          [1] The Federal Circuit has adopted the factors articulated by the court in Georgia-Pacific

26  Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1119-10 (S.D.N.Y. 1970), as a method of
determining the amount of a hypothetically negotiated royalty for a patent license. See, e.g.,

27  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1311-19 (Fed. Cir. 2011); Finjan, Inc. v.
Secure Computing Corp., 626 F.3d 1197, 1207-12 (Fed. Cir. 2010).  It is less clear whether

28  and to what extent those factors are applicable to the determination of hypothetical license
damages in a copyright infringement case.

United States District Court

For the Northern District of California

1  such as past licensing history or a plaintiff's previous licensing practices.  See, e.g., Polar

2  Bear, 384 F.3d at 711; On Davis v. The Gap, Inc., 246 F.3d 152, 161-62 (2nd Cir. 2001).

3  　　　Apart from this, the evidence Oracle presented was insufficient to establish an

4  objective non-speculative license price.  Determining a hypothetical license price requires

5  an "objective, not a subjective" analysis, and "[e]xcessively speculative" claims must be

6  rejected.  Jarvis, 486 F.3d at 534; Polar Bear, 384 F.3d at 709; Mackie, 296 F.3d at 917;

7  On Davis, 246 F.3d at 166.  An objective, non-speculative license price is established

8  through objective evidence of benchmark transactions, such as licenses previously

9  negotiated for comparable use of the infringed work, and benchmark licenses for

10  comparable uses of comparable works.  See Jarvis, 486 F.3d at 533-35; Polar Bear, 384

11  F.3d at 709.

12  　　　Here, Oracle failed to present evidence of benchmark licenses.  Indeed, Oracle

13  executives testified that Oracle has never granted a comparable license that would permit a

14  competitor to use Oracle software to compete for Oracle's customers, and that such a

15  license would be "unique" and "unprecedented."  Nor were the Oracle executives aware of

16  any analogous situations in which any other company had licensed software to or from a

17  competitor to provide support services.  Moreover, damages experts on both sides agreed

18  that no benchmark licenses exist, and the evidence Oracle did present proved that the

19  parties would never have agreed to a license.  Absent evidence of benchmarks, Oracle

20  cannot recover a lost license fee award, because any such award would be based on a

21  subjective, not an objective, analysis of fair market value.

22  　　　Objective evidence is necessary to price a hypothetical license because the

23  hypothetical license is simply a construct designed to help calculate actual damages

24  suffered as a result of the infringement (the measure of damages under the copyright

25  statute).  The amount of the hypothetical license must be based on the actual use the

26  defendant made of the work, not simply the highest use for which the plaintiff might license.

27  See On Davis, 246 F.3d at 166 n.5; see also Jarvis, 486 F.3d at 535 (distinguishing making

28  the plaintiff whole from punishing the infringer by charging the highest price possible)).

11

**United States District Court**
For the Northern District of California

1    Although the Ninth Circuit has never explicitly held that hypothetical damages are

2    <u>not</u> available absent actual proof that the plaintiff would have licensed the infringed work to

3    the defendant or a third party for the specific use at issue, and proof that the infringement

4    caused the loss of that opportunity, it is also true, as SAP notes, that the Ninth Circuit has

5    never upheld a hypothetical license award absent such actual proof.  See <u>Polar Bear</u>, 384

6    F.3d at 704, 709 (defendant had license, but it had expired); <u>Jarvis</u>, 486 F.3d at 528, 533-

7    34 (plaintiff had licensed photos to defendant in the past); <u>Mackie</u>, 296 F.3d at 913, 917

8    (parties were not competitors and plaintiff had previously given permission for others to use

9    its materials in same way); <u>Cream Records, Inc. v. Jos. Schlitz Brewing Co.</u>, 754 F.2d 826,

10   827-28 (9th Cir. 1985) (unauthorized use of copyrighted song in defendant's commercial

11   deterred potential licensees from licensing the song for their own commercials).[2]

12   Oracle's suggestion – that upon proof of infringement, copyright plaintiffs are

13   automatically entitled to seek "hypothetical" license damages because they are presumed

14   to have suffered harm in the form of lost license fees – has no support in the law.  Lost

15   license fees are simply a method of calculating "actual damages suffered by [the owner] as

16   a result of the infringement." 17 U.S.C. § 504(b).  Thus, a plaintiff must prove that the

17   license fees were actually lost as a result of the infringement.  Oracle appears to be, in

18   effect, asking the court to amend § 506(b) by reading in the Patent Act's requirement that

19   an award of (patent) damages be "in no event less than a reasonable royalty for the use of

20   the invention by the infringer . . . ." 35 U.S.C. § 284.

21   Moreover, the Ninth Circuit has expressly rejected the argument that damage in the

22   form of lost licensing opportunities may be "presumed" as a "natural and probable result" of

23   infringement.  See <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 513-14

24

25       [2] Similarly, while the Ninth Circuit has not held that hypothetical license damages are
     never available in cases where the parties are competitors, the cases in which the court has
26   affirmed a hypothetical license have involved non-competitors. <u>See</u>, e.g., <u>Wall Data, Ltd. v.
     LA County Sheriff's Department</u>, 447 F.3d 769 (9th Cir. 2006) (software developer vs.
27   municipal customer); <u>Polar Bear</u> (watch company vs. film production company); <u>Frank Music</u>
     (music production company vs. hotel); <u>Jarvis</u> (photographer vs. advertiser); and <u>Mackie</u> (artist
28   v. symphony).  Nor has the Ninth Circuit ever affirmed a hypothetical license award where no
     comparable transactions established the likelihood of a license between the parties.

**United States District Court**
For the Northern District of California

1 & n.8 (9th Cir. 1985) (in seeking to recover value of use damages, a copyright owner is still

2 required to prove actual damages, and is not allowed to simply rely on some presumption).

3         Oracle claims that SAP's position is that direct competitors may never recover actual

4 damages in the form of lost license fees, or that copyright plaintiffs may not recover lost

5 license damages unless they have licensed their copyrighted works.  This interpretation is

6 not entirely accurate, as what SAP argues is that the circumstances presented here – the

7 parties directly compete, and Oracle never previously licensed the copyrighted works –

8 provide evidence that no license fees were lost, particularly given the lack of benchmark

9 transactions or other evidence showing the parties would have agreed to a license.

10         The court's prior ruling denying SAP's motion for partial summary judgment does not

11 dispose of the present motion.  In the January 28, 2010 order, the court commented as a

12 general matter that "[g]eneral tort principles of causation and damages apply when

13 analyzing compensatory damage awards for copyright infringement," including actual

14 damages.  The court also stated that Oracle "is not required to prove that it would have

15 successfully negotiated a license with SAP, nor is it precluded from seeking license

16 damages simply because it has never before licensed what SAP infringed."

17         That ruling was based on the court's analysis of the relevant Ninth Circuit cases, but

18 was not intended as a definitive ruling as to what Oracle was or was not required to show.

19 At that stage of the litigation, having not yet had the benefit of  the evidence presented at

20 the trial, the court was unwilling to rule as a matter of law that Oracle could never prove

21 entitlement to hypothetical license damages, which was what SAP appeared to be arguing.

22 In the court's view, the most salient guidance provided by that order was the instruction that

23 Oracle could claim lost license fees only if it "present[ed] evidence sufficient to allow the

24 jury to assess fair market value without 'undue speculation.'"

25         SAP's motion was denied because the court was unable to find as a matter of law

26 that Oracle could not prove it had suffered damages from lost license fees simply because

27 it had never previously licensed the intellectual property, and specifically had not licensed it

28 to SAP.  The finding was not that Oracle was entitled to lost license fees, but rather that

1  Oracle could proceed to trial to prove that it was.  Oracle did not move for summary

2  judgment on this issue, and the court was not privy to discovery but fully anticipated that

3  Oracle would present objective evidence in support of lost license fees.  Instead, the

4  evidence showed that Oracle had not only not licensed to anyone (including SAP) in the

5  past, but would not ever license to anyone (including SAP).

6        That is, in allowing the theory to proceed to trial, the court expected to see objective

7  evidence showing some licensing activity either by Oracle or by some other company in the

8  related industry – if not from Oracle/SAP's prior dealings – and objective evidence of what

9  a willing buyer would have reasonably paid, not simply what Oracle would have demanded.

10  However, Oracle failed to present such objective, non-speculative evidence.

11        The Copyright Act requires proof of "actual damages suffered by [the owner] as a

12  result of the infringement," and SAP is correct that no court has awarded a lost license fee

13  in the absence of evidence that the copyright holder actually lost license fees.  While SAP's

14  argument regarding the availability of hypothetical license damages does not differ in

15  substance from the argument it made prior to trial in its motions for summary judgment

16  (which the court denied), the court now has the benefit of having heard all the evidence.

17        Without the fully developed trial record, the court was unable to tell whether there

18  was a past history of licensing or that Oracle would absolutely not have agreed to license

19  the materials to anyone.  Now, however, given the lack of history of past licensing of the

20  copyrighted material to anyone (not just to SAP), and the lack of any evidence that Oracle

21  would ever license the material to SAP or to anyone in the future, coupled with the absence

22  of any benchmark evidence upon which to determine the value of a license, the court finds

23  no support for awarding Oracle actual damages in the form of lost license fees.

24        The standard in a motion for judgment as a matter of law is that the motion should

25  be granted only if the evidence permits only one reasonable conclusion, and that

26  conclusion is contrary to the jury's verdict.  The jury was instructed that the damages award

27  "must be based on evidence, not on speculation, guesswork, or conjecture," although they

28  were also instructed that "[d]etermining the fair market value of the rights infringed may

United States District Court
For the Northern District of California

1   involve some uncertainty" and that Oracle was "not required to establish its actual damages

2   with precision." The court finds that there was insufficient evidence for a reasonable jury to

3   find that Oracle was entitled to a hypothetical license, and judgment shall be entered in

4   SAP's favor on this issue, pursuant to Rule 50.

5           2.      New trial

6           SAP argues that the reasons that justify granting judgment as a matter of law also

7   support granting the motion for a new trial – that the $1.3 billion verdict vastly exceeds any

8   harm to Oracle, and is contrary to the clear weight of evidence. In the alternative, SAP

9   asserts that the court should reduce the amount of the damages to the maximum amount of

10  lost profits and infringer's profits sustainable by the proof.

11          SAP contends that the $1.3 billion award resulted from Oracle's presentation of

12  speculative evidence that was given the imprimatur of expert opinion, irrelevant evidence

13  regarding the purported value of the intellectual property as a whole, and liability evidence,

14  which was prejudicial because liability was not in issue.

15          As in its arguments in support of the motion for judgment as a matter of law, SAP

16  asserts that Oracle's improper hypothetical license theory was based on speculation, and

17  that rather than focusing on the value of SAP's actual use of the copyrighted works, Oracle

18  and Mr. Meyer confused the jury with fictitious and speculative "negotiation" factors, which

19  Mr. Meyer claimed were consistent with the Georgia-Pacific factors, but which SAP asserts

20  did not resemble those used in Georgia-Pacific. Instead, SAP argues, Mr. Meyer crafted

21  his own factors to suit the speculative evidence he found in SAP's documents.

22          SAP also asserts that the amount awarded by the jury far exceeds Oracle's actual

23  harm. SAP contends that the actual harm to Oracle cannot be measured by evidence of

24  SAP's goals and aspirations regarding TN, but rather by, for example, the number of

25  customers or amount of business that TN attracted away from Oracle. SAP argues that the

26  $1.3 billion award purportedly represents what a prudent willing buyer and seller would

27  have agreed was a reasonable fee to use the copyrighted works as part of a marketing plan

28  to persuade Oracle customers to migrate to SAP, but asserts that Oracle failed to present

15

1  evidence establishing SAP's valuation of TN's impact, and that the evidence that was

2  presented showed, overwhelmingly, that Oracle itself did not expect customers to migrate

3  to SAP because of TN.

4      SAP asserts that even had Oracle suffered harm in the form of lost license fees, the

5  jury's award greatly surpassed any rational quantification of fees for a non-exclusive,

6  non-transferable, license of limited purpose and duration to use the copyrightable elements

7  of the software, as the award improperly included the value of non-protectable elements of

8  the infringed works, the price to acquire whole companies, and the cost to develop

9  unrelated products.  Thus, SAP argues, the award was speculative and excessive and

10 should be set aside.

11     In addition, SAP contends that the award was influenced by Oracle's presentation of

12 irrelevant and prejudicial liability evidence – particularly the evidence regarding liability –

13 and by Oracle's repeated usage of words like "theft" and "stealing" to describe SAP's

14 actions.  SAP argues that Oracle conflated issues of liability and concepts of punishment

15 with the need to calculate damages under copyright law, which does not permit punitive

16 damages.  SAP contends that the prejudice was exacerbated because SAP's witnesses

17 were not permitted to testify about steps SAP took to mitigate the risk of infringement, and

18 Oracle subsequently argued to the jury that it should draw a negative inference from the

19 lack of mitigating evidence.

20     In response, Oracle argues, that substantial evidence supported the hypothetical

21 license award, and that the award is based on TN's "pervasive use" of Oracle's software,

22 which Oracle claims justified the amount of the award.  Oracle contends that the liability

23 evidence it presented at trial was highly relevant as "background or context" and caused no

24 undue prejudice.  Oracle also asserts that Mr. Meyer's analysis was properly grounded in

25 Georgia-Pacific, and that the jury's award does not exceed the amount of actual harm,

26 because the harm to Oracle cannot be measured by lost profits.  Oracle contends that SAP

27 infringed a vast scope of work, with the intention of harming Oracle and of containing

28 Oracle's future growth.

United States District Court

For the Northern District of California

1 　　　With regard to the remittitur, Oracle contends that SAP is simply asking the court to

2 substitute its (SAP's) view of the evidence and proper damages amount for the jury's, by

3 reducing the award to the "maximum lost profits and infringer's profits supported by the

4 evidence." Oracle claims that the jury rejected that measure of damages when it decided

5 that a fair market value license measured Oracle's damages better than lost profits. Oracle

6 claims that the jury simply required SAP to pay for the value of what it took. According to

7 Oracle, this is not "shocking to the conscience," but rather is "justice."

8 　　　The court finds that the $1.3 billion verdict is contrary to the weight of the evidence.

9 Rather than providing evidence of SAP's actual use of the copyrighted works, and

10 objectively verifiable number of customers lost as a result, Oracle presented evidence of

11 the purported value of the intellectual property as a whole, elicited self-serving testimony

12 from its executives regarding the price they claim they would have demanded in an

13 admittedly fictional negotiation, and proffered the speculative opinion of its damages expert,

14 which was based on little more than guesses about the parties' expectations. At the same

15 time, Oracle urged the jury to disregard evidence of Oracle's actual customer losses

16 resulting from infringement. Thus, the verdict grossly exceeded the actual harm to Oracle

17 in the form of lost customers, which was quantified by Oracle's expert at $408.7 million, and

18 alternatively at $272 million, and by SAP's expert at $28 million.

19 　　　Having already determined that SAP is entitled to judgment as a matter of law that

20 Oracle is not entitled to actual damages for copyright infringement in the form of a

21 hypothetical license, the court finds that the motion for a new trial must be GRANTED,

22 conditional upon Oracle's rejection of a remittitur to $272 million, the maximum amount of

23 lost profits and infringer's profits sustainable by the proof.

24 　　　Prior to the trial, the court ruled that Oracle could not recover lost profits/infringer's

25 profits and hypothetical license damages, and Oracle chose to limit its presentation largely

26 to hypothetical license damages. Mr. Meyer did testify as to lost profits/infringer's profits,

27 but only on cross-examination. The jury was not asked to make a finding on both lost

28 profits/infringer's profits and hypothetical license damages, and opted for an award of

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  hypothetical license damages.

2       However, entitlement to hypothetical license damages is simply one theory of

3  damages, and the finding that Oracle is not entitled to recover damages for a hypothetical

4  license does not entirely resolve the parties' dispute.  Although a motion for a new trial is

5  generally made as an alternative to a motion for judgment as a matter of law, given the

6  unusual procedural posture of this case, the court finds that both are warranted here.

7       The court may grant a new trial if it finds that the verdict would result in a miscarriage

8  of justice.  Silver Sage Partners, 251 F.3d at 819.  Although the court herein grants

9  judgment in SAP's favor on the issue of hypothetical license damages, Oracle is still

10  entitled to damages, given SAP's admission of liability.  Thus, having failed to establish

11  entitlement to an award of hypothetical license damages, Oracle must be allowed to

12  recover actual damages in the form of lost profits/infringer's profits.  A contrary result would

13  be unjust and would constitute a miscarriage of justice.

14      Both SAP's damages expert Richard Clarke and Oracle's damages expert Mr. Meyer

15  offered opinions on Oracle's actual lost support profits and SAP's infringer's profits resulting

16  from TN's use of the copyrighted works.  Mr. Clarke calculated lost profits of $19.3 million

17  and infringer's profits of $8.7 million – a total of $28 million.  Mr. Meyer calculated $120.7 in

18  lost profits and $288 million in infringer's profits – a total of $408.7 million; and under an

19  alternative scenario, calculated $36 million in lost profits, and $236 million in infringer's

20  profits – a total of $272 million.

21      SAP argues that a remittitur to the lowest of these figures – the $28 million

22  calculated by Mr. Clarke – would be appropriate, but also suggests that a remittitur to the

23  lower figure calculated by Mr. Meyer – $272 million – is supported by the evidence.  SAP

24  contends, however, that in no case should the amount of the remittitur exceed the higher

25  amount calculated by Mr. Meyer – $408.7 million.

26      The court questions whether the $408.7 million figure is supported by the evidence.

27  Mr. Meyer testified that his $120.7 million lost profits calculation represented Oracle's lost

28  profits through 2015, "to reflect the ongoing impact" of the infringement, and that this

18

**United States District Court**

For the Northern District of California

1 calculation differed from Mr. Clarke's analysis in that Mr. Clarke calculated lost profits and

2 infringer's profits through the wind-down of TN's operations in October 2008.  In his

3 alternative scenario, Mr. Meyer also calculated lost profits through the wind-down of TN's

4 operations in October 2008.  This calculation produced the $36 million in lost profits that

5 constituted part of the $272 million damages figure.

6        Mr. Meyer testified that his calculation of infringer's profits "ranges down" to $236

7 million because there are three customers "where there's some issues still that sort of exist

8 about the role of TomorrowNow in converting those customers to SAP."  He testified that

9 Mr. Clarke excluded more customers from his calculation of lost profits and infringer's

10 profits based on the conclusion that these customers would have left Oracle or would have

11 purchased from SAP even absent TN's infringing activities.

12        The court finds that Mr. Meyer's $408.7 million calculation is not supported by proof.

13 It is undisputed that SAP ceased TN's operations (and any infringement of Oracle's

14 copyrighted works) in late 2008.  Oracle provided no evidence to support an additional

15 $84.7 million for "ongoing impact" for seven years following TN's demise.  In addition, Mr.

16 Meyer's justification for the larger calculation of infringer's profits is unduly speculative.

17 On the other hand, SAP's much lower calculation is not supportable, as it was largely

18 based on evidence that the court had ruled was inadmissible.

19        Accordingly, the court finds that the "maximum amount sustainable by the proof,"

20 see D & S Redi-Mix, 692 F.2d at 1249, is $272 million.  Accordingly, Oracle may accept a

21 remittitur to $272 million, or the court will order a new trial as to the amount of actual

22 damages in the form of lost profits/infringer's profits.

23 C.    Oracle's Motion

24        Oracle filed a "conditional motion" for a new trial pursuant to Rule 59, in which it

25 asserts that it "does not seek a new trial," but also argues that in the event the court orders

26 a new trial, the court should also permit Oracle to put on evidence as to various damages-

27 related issues.  SAP contends that the motion should be denied because it is a disguised

28 (and premature) motion in limine, seeking reconsideration and reversal of certain

19

**United States District Court**
For the Northern District of California

1   evidentiary and instructional rulings made prior to (or during) the trial that is the subject of

2   SAP's present motions.  SAP argues that Rule 59 does not permit such relief, and that

3   even if it did, there is no reason for the court to reverse its prior rulings.

4          The motion is DENIED.  The court is unaware of any authority supporting a Rule 59

5   motion for a new trial by a party that has prevailed in a trial.  If Oracle rejects the remittitur

6   and opts for a new trial, the parties will be limited to putting on evidence regarding lost

7   profits.  At this stage, further discussion of the particulars of a new trial is premature.

8                                    **CONCLUSION**

9          In accordance with the foregoing, the court GRANTS judgment as a matter of law as

10  to the award of hypothetical license damages.  The court finds further that the award of

11  hypothetical license damages totaling $1.3 billion was contrary to the weight of the

12  evidence, and was grossly excessive.  Given SAP's concession of liability, and request for

13  a remittitur, the court GRANTS the motion for a new trial as to actual damages, conditioned

14  on Oracle's rejection of a remittitur to $272 million.  Should Oracle reject the remittitur, the

15  court will order a new trial as to actual damages in the form of lost profits/infringer's profits

16  only.  The court DENIES Oracle's "conditional motion" for a new trial.

17         Oracle shall submit a statement accepting or rejecting the remittitur no later than

18  September 30, 2011 (or the parties shall submit a stipulated request for additional time, if

19  necessary).  Having found that the award of damages for copyright infringement is

20  unjustified, that portion of the February 3, 2011 judgment awarding $1.3 billion for

21  hypothetical license damages is VACATED.

22

23  **IT IS SO ORDERED.**

24  Dated: September 1, 2011

25                                        _____
                                          PHYLLIS J. HAMILTON
                                          United States District Judge

26

27

28

                                          20