1
2
3
4                    UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9    ORACLE U.S.A.,
10            Plaintiff,                    No. C 07-1658 PJH
11       v.                                **ORDER RE OBJECTIONS TO
                                           TRIAL EXHIBITS; ORDER RE
12   SAP AG, et al.,                       MOTION TO SEAL**
13            Defendants.
     _____/
14

15       Before the court is the parties' pre-trial Joint Statement Regarding Exhibit

16 Objections, requesting that the court rule on certain evidentiary objections to trial exhibits.

17 Each side has designated objections in three categories, and has provided a proposed

18 order.  Having reviewed the parties' papers and carefully considered their arguments and

19 the relevant legal authority, the court now rules as follows.

20 1.      SAP's Category One – Hearsay Exceptions/Exemptions

21       In the Joint Statement, SAP discusses 12 exemplar exhibits, divided into four sub-

22 categories, each of which SAP asserts is either non-hearsay or admissible under various

23 hearsay exceptions, as indicated below.

24       As an initial matter, the court notes that it had hoped to emerge from this process

25 with a set of guidelines or standards that could be applied to other exhibits to which the

26 parties have hearsay objections.  The court has been unable to do so, however, because

27 so many of the highlighted statements within the exhibits fall within a gray area and are not

28 easily categorized.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    At this point, the only generalized ruling that the court can provide is (a) that direct

2    quoted statements from customers that are being used to prove the truth of the matter

3    being asserted – e.g., Customer A states that it is leaving Oracle and going to SAP for a

4    particular reason – are inadmissible hearsay; (b) that statements by Oracle employees that

5    constitute analysis of a particular Oracle-Customer relationship, which may or may not be

6    based on information that an Oracle employee obtained from the customer's

7    representative, are not inadmissible hearsay, because they constitute employee party

8    admissions or present-sense impressions; and (c) that statements that fall into the gray

9    area in between – e.g., that a particular customer "has communicated to us their intent to

10   have TomorrowNow support them in the interim as they migrate . . . to SAP" – will have to

11   be decided on a statement-by-statement basis.

12   With regard to the statements that fall into the gray area, most are included as part

13   of emails or email strings and are relatively complex statements that include a good deal of

14   information.  Such information is not clearly derived from a single customer statement, but

15   rather arises from an ongoing relationship between the Oracle representative and that

16   customer.  It is partly for this reason that the court is unable to determine in advance how

17   objections to admitting such statements will be resolved at trial.

18   a.    Statements by Oracle's senior executives

19   In this sub-category, SAP seeks to have certain statements by Oracle senior

20   executives admitted as party admissions.

21   Federal Rule of Evidence 801 lists types of statements that are "not hearsay."  Fed.

22   R. Evid. 801(d).  These include party admissions and employee party admissions.  Id.

23   801(d)(2).  Admissions by a party-opponent are excluded from the category of hearsay,

24   and no guarantee of trustworthiness is required in the case of an admission.  Rule

25   801(d)(2) specifies certain categories of statements for which the responsibility of a party is

26   considered sufficient to justify the reception in evidence against him.  See 1972 Advisory

27   Committee Notes to Rule 801(d)(2).

28   A party admission is a statement offered against the opposing party, which was

made by the party in an individual or representative capacity.  FRE 801(d)(2)(A).  An

employee party admission is a statement offered against an opposing party, made by a

declarant who was an employee of the party at the time the statement was made, and

which concerns a matter "within the scope of the agency or employment."  See Sea-Land

Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002).  "[W]ithin the scope of the

agency or employment" is generally interpreted as meaning that the statement is "related to

the declarant's duties."  5 Weinstein's Federal Evidence § 801.33[2][c].

          i.          Defendants' Trial Exhibit A-6329-1

Defendants' Exhibit A-6329-1 is an email chain that includes a November 2, 2004

email from Jeff Henley (Oracle's Chairman of the Board) to Keith Block (Oracle's Executive

VP of North American Sales), in which Henley states, based on his conversation with

someone from Computer Associates ("CA"), that "SAP is leading in functionality pretty

much across the board in [CA]'s mind . . . I think we'll lose because of the functionality."

SAP asserts that this is evidence that SAP won CA's business in 2004 based on

SAP's superior software, not based on any infringement by TomorrowNow.  SAP also

contends that both Henley and Block were speaking within the scope of their employment,

and such statements are employee party admissions.

Oracle argues that this document does not qualify as an employee party admission

in its entirety, because it includes five separate assertions about the customer that are

paraphrased customer statements, and thus, inadmissible hearsay.

Defendants' Exhibit A-6329-1 will be admitted.  The statements in this email

constitute party admissions with regard to Oracle's understanding that CA was at that point

trying to decide between Oracle and SAP, based upon various considerations.  The email

indicates that Henley's evaluation of the situation at the time was that Oracle was at risk of

losing the CA account because of some advantage that SAP had over Oracle.

          b.        Statements by Oracle sales and support employees (employee party

                      admissions or adoptive admissions)

        In this sub-category, SAP seeks to have six exhibits admitted as either employee

United States District Court

For the Northern District of California

3

United States District Court
For the Northern District of California

1   party admissions or adoptive admissions.  The standard for employee party admissions is

2   set forth above.  Adoptive admissions are another of the categories of admissions set forth

3   in Rule 801(d)(2), and are not considered hearsay.  An adoptive admission is a statement

4   that is "offered against an opposing party" and is "one the party manifested that it adopted

5   or believed to be true."  Fed. R. Evid. 801(d)(2)(B).

6          Most of the cases that apply Rule 801(d)(2)(B) are criminal cases, where the court

7   finds that a criminal defendant has "admitted" a fact by remaining silent in the face of an

8   accusation.  See, e.g., U.S. v. Moore, 522 F.2d 1068, 1075 (9th Cir. 1975).  However, in

9   theory, adoption of another's statement can be manifested by any appropriate means –

10  language, conduct, or silence.  5 Weinstein's Federal Evidence § 801.31[3][a].  For

11  example, a party may adopt a written statement of another if the party uses the statement

12  or takes action in compliance with the statement.  See Sea-Land Serv., 285 F.3d at 821-22

13  (in action on shipping contract, one employee of carrier adopted another employee's email

14  explaining a delay in shipment by copying it and sending it to the shipper).  On the other

15  hand, if the party makes its disagreement with the statement clear, there is no adoption of

16  the statement.  5 Weinstein's Federal Evidence § 801.31[3][b].

17         The court finds that none of the statements presented here is admissible as an

18  adoptive admission, and thus considers whether any is admissible as an employee party

19  admission.

20                    i.    Defendants Trial Exhibit A-0367

21         Defendants' Exhibit A-0367 is an email from Juan Jones (Oracle's Senior VP of

22  Customer Services North America Support), regarding support renewals.  The subject is

23  "Home Depot Executive Summary."  This email was admitted into evidence at the last trial.

24  SAP asserts that Jones' responsibilities relate to support.

25         In the email, Jones states, that Home Depo has "communicated to us their intent to

26  have TomorrowNow support them in the interim as they migrate HCM to SAP."  He adds

27  that he is "not supportive of the proposal to halve our support to Home Depot . . . for the

28  following reasons," and then lists those reasons, including that "[t]hey've gone to SAP hook,

United States District Court

For the Northern District of California

1   line, and sinker so there is no turnaround opportunity to even try to salvage."

2      SAP asserts that Exhibit A-0367 is admissible as a party admission, and that there

3   are no customer statements in the email.

4      Oracle's position is that the email contains inadmissible customer hearsay because

5   it contains "relayed statements" that a Home Depot employee made to Oracle.  Oracle

6   contends Rule 801(d)(2)(D) does not extend to paraphrased, unverified out-of-court

7   statements by "unidentified customer personnel," which Oracle would not be able to

8   challenge in court.

9      Defendants' Exhibit A-0367 will be admitted as an employee party admission.  There

10  are no direct customer statements in the email, and it is a statement that is being offered to

11  show Oracle's belief regarding Home Depot's support renewals.

12          ii.      Defendants Trial Exhibit A-5042

13     Defendants' Exhibit A-5042 is an email chain which includes a June 19, 2006 email

14  from Barbara Allario (a senior support sales manager at Oracle) to Robert Lachs (a support

15  sales regional manager at Oracle), regarding Oracle customer Stora Enso's reasons for

16  cancelling support.  SAP contends that this subject falls within the scope of Ms. Allario's job

17  responsibilities.

18     Ms. Allario states, "I've been in contact with [Oracle employee] ASM (Derek Zeman)

19  for Stora Enso.  He has known for at least 6 months that the customer would more than

20  likely be dropping support.  The parent is an SAP shop in Finland and has been pushing

21  SAP . . . They have told us they will be going to SAP over the next 2 years."

22     SAP contends that this email is evidence that Stora Enso's purchase of SAP

23  software was caused by its parent company's decision to switch to SAP, not by any action

24  of TomorrowNow.  SAP seeks to have this exhibit admitted as a party admission, and

25  disputes Oracle' assertion that the document contains multiple levels of hearsay.  SAP

26  asserts that the email reflects the understanding of Zeman (the Oracle employee) that a

27  customer had been instructed by its parent company to migrate.

28     For its part, Oracle argues that Exhibit A-5042 contains multiple levels of hearsay –

United States District Court

For the Northern District of California

1   in particular, the statement that Stora Enso's parent shop spoke to Stora Enso, the

2   statement that the parent shop will be going with SAP, the statement that Stora Enso then

3   passed along those statements to Zeman.

4        Exhibit A-5042 will be admitted, with the exception of one sentence, which is

5   inadmissible hearsay – "They have told us that they will be going to SAP over the next 2

6   years."

7                    iii.        Defendants' Trial Exhibit A-5997

8        Defendants' Exhibit A-5997 is an Oracle email dated May 4, 2006, and sent by Craig

9   Tate (Group VP, North Central Applications, Oracle) to Jeff Henley (Oracle's Chairman of

10  the Board), regarding Oracle customer Haworth.  In the email, Tate stated that Haworth

11  "has implemented SAP in Europe . . . and senior leadership views it as more successful

12  than the Orcl project in North America – broader footprint, less time, less money."  He

13  added, "They are facing a major directional decision on standardizing on one platform or

14  the other going forward."  SAP asserts that this shows that Haworth was standardizing its

15  ERP systems and chose SAP because of previous good experience with SAP, not because

16  of anything done by TomorrowNow.

17       SAP contends that as Group VP for North Central Operations, Tate and his team

18  were responsible for the Haworth account, and that reporting to his superiors regarding a

19  customer for whom he was responsible is within his job duties and thus admissible against

20  Oracle.  As such, SAP seeks to have the exhibit admitted as a party admission.  SAP notes

21  that the email does not contain any customer statements, but rather simply reflects the

22  understanding of Oracle employees regarding the status of the customer account.

23       In response, Oracle asserts that this exhibit contains inadmissible customer

24  statements, in that Tate is describing what a Haworth employee told him about Haworth's

25  relationships with Oracle and SAP.  Oracle contends that the content of the email

26  necessarily comes from out-of-court statements by Haworth.  Oracle argues that these are

27  not party admissions – they are customer statements relayed by Oracle personnel.

28       Defendants' Trial Exhibit A-5997 will be admitted, with the exception of one sentence

1    that is inadmissible hearsay – "They are asking (strongly demanding actually) that we 'park'

2    the support on the balance of the 2400 licenses they have on the shelf for now (up to 3 yrs,

3    with a portion of them re-deployed each yr) and be allowed to bring them back without

4    reinstatement fees/back support."

5              iv.    Defendants' Trial Exhibit A-6042-1

6         Defendants' Exhibit A-6042-1, page 2, is a PeopleSoft Executive Summary that

7    describes the timeline on which Computer Associates ("CA") cancelled support.  Betsy

8    Steelman, an Oracle Services Support Manager, submitted the document for approval

9    through Oracle's OSSINFO group (part of Oracle's administrative approval process that

10   reports to Juergen Rottler, Executive VP, Oracle Customer Services).  OSSINFO is an

11   internal group that decides whether to approve special terms or deviations from the

12   standard pricing for Oracle support services.

13        In a section headed "Justification," the document states, "Per discussions with AE

14   (Brian Flynn) and the customer, Computer Associates is converting to an all SAP shop.  In

15   the future, they would cancel all support. . . . On 3/2/05, customer notified us via phone and

16   certified letter that they were cancelling support on all products.  Both the AE and the SSM

17   unsuccessfully tried to continually contact the customer to understand why they would

18   commit to annual support on 2/9/05 and then cancel on 3/2/05. To date, we have had no

19   response from the customer."

20        SAP asserts that any materials sent through this OSSINFO approval process by

21   support managers such as Steelman are done within the scope of their employment, and in

22   this case, are directly related to a then-Oracle customer, CA, for which approval was

23   needed to terminate support.

24        SAP contends that Oracle has failed to identify any customer "statements" in the

25   Executive Summary, and that all that Steelman is reporting is her understanding of the

26   reason why CA was converting to an all-SAP shop.  Again, SAP asserts, just because a

27   fact originates from the customer does not mean that the fact is a customer "statement."

28        In response, Oracle argues that this document contains customer hearsay.  Oracle

7

1   contends that to the extent that the OSSINFO email constitutes a party admission, it merely

2   indicates that the contract has been cancelled, nothing more.  Thus, Oracle argues, SAP

3   has articulated no exception to justify admitting the customer statements in the Executive

4   Summary (as distinct from the email).

5          Defendants' Trial Exhibit A-6042-1 will be admitted as an employee party admission.

6   The document reflects Oracle employees' understanding that CA was "converting to an all-

7   SAP shop."

8                    v.      Defendants' Trial Exhibit A-6205-1

9          Defendants' Exhibit A-6205-1 is an email with an attached document entitled

10  "Maintenance At Risk Analysis," which was a PowerPoint presentation containing Oracle's

11  internal analysis of customer concerns with Oracle products.  Richard Cummins, Senior

12  Director of Support Renewals, authored the presentation, and emailed it to his boss Chris

13  Madsen, VP of North America Support Sale.  From the email, it appears that Madsen

14  forwarded it to Juan Jones, or that Cummins forwarded it to both Madsen and Jones.

15         The email from Madsen states, "[H]ere is a thorough analysis that Rick [Cummins]

16  and Team prepared and sent to me on Friday.  This will be the data behind a strategy that

17  will involve agressively [sic] contacting these customers solving their issues and bringing in

18  any past due maintenance business and making sure all business is brought in on time at

19  full value."

20         SAP asserts that providing this presentation to senior support group members was

21  clearly within the scope of Cummins' employment, and that the document is admissible as

22  an employee party admission.

23         In response, Oracle asserts that SAP is offering this document in an attempt to

24  circumvent the court's exclusion of the customer hearsay in the At Risk Report "notes"

25  column.  Oracle claims that the document summarizes inadmissible hearsay that is

26  contained in the At Risk report notes column.

27         Defendants' Trial Exhibit A-6205-1 will be admitted as a party admission.  This

28  analysis was prepared as part of an initiation of a strategy to resolve certain customer

8

1   complaints and ensure that the customers remained with Oracle.  It is not hearsay because

2   it does not contain any customer statements, but rather is presented as a "thorough

3   analysis" of the factors indicating that customers might be "at risk" of leaving Oracle

4   support.

5               vi.     Defendants' Trial Exhibit A-5193

6        Defendants' Exhibit A-5193 is an email from James McLeod to Rick Cummins, which

7   was admitted into evidence at the prior trial.  It summarizes the status of certain customers,

8   reporting, for example that "Customer believes they are unable to upgrade . . . due to

9   functionality that was removed . . . ;" "Customer also has grave concerns [regarding] . . . ;"

10  "Client informed us as of 3/27 that they want to renew and have offered to pay flat fee . . . if

11  we allow them to pay quarterly . . . ;" "Client has stated that they want us to come back in

12  with the team to present roadmap and technology update . . . ;" and "Executives don't like

13  PeopleSoft apps . . . [and] are looking to go with TomorrowNow so they can save

14  approximately 50% on the support bill. . . ."

15       SAP contends that Cummins was Senior Director of Support Renewals at the time,

16  and was McLeod's boss, and that this document and Cummins' statements directly relate

17  to his job responsibilities, and that the statements in the email are recitations of facts and

18  beliefs about the customers – i.e., the reasons he believed the identified customers

19  cancelled Oracle support.  SAP seeks to have this document admitted as a party admission

20  and contends that Oracle's understanding is evidence of why those customers cancelled.

21       In response, Oracle contends that this reflects another attempt by SAP to

22  circumvent the court's exclusion of the customer hearsay in the At Risk Report "notes"

23  column.

24       Defendants' Trial Exhibit A-5193 will be admitted as a party admission that a number

25  of customers had complaints regarding Oracle support, and/or were considering moving to

26  TomorrowNow to save money.  The court will exclude two sentences that appear to be

27  direct quotations from customers, and are therefore inadmissible hearsay – (a) "Client

28  informed us as of 3/27 that they want to renew and have offered to pay flat fee for 2 years

United States District Court
For the Northern District of California

1  [sic] if we allow them to pay quarterly in advance[;]" and (b) "Client has stated that they

2  want us to come back in with the team to present roadmap and technology update."

3         c.     Statements by Oracle customers (adoptive admissions, and/or non-hearsay

4                evidence of state of mind)

5         In this sub-category, SAP seeks to have documents admitted as either adoptive

6  admissions or as non-hearsay evidence of state of mind.  The court finds that none of the

7  statements is admissible as an adoptive admission, and thus considers whether any is

8  admissible as state-of-mind evidence.

9         Federal Rule of Evidence 803(3) excepts from the hearsay rule "statement[s] of the

10  declarant's then-existing state of mind (such as motive, intent, or plan) or emotional,

11  sensory, or physical condition (such as mental feeling, pain, or bodily health), but not

12  including a statement of memory or belief to prove the fact remembered or believed[.]"

13  Such testimony is admissible not to prove "the fact remembered or believed" but the

14  "mental feeling" of the declarant.  Wagner v. County of Maricopa, 673 F.3d 977, 980  (9th

15  Cir. 2012).

16         If a statement supports an inference about the declarant's state of mind, and is not

17  being used to prove the truth of the matter being asserted, it may be admitted for that non-

18  hearsay purpose.  See CytoSport, Inc. v. Vital Pharms, Inc., 617 F.Supp. 2d 1051, 1074

19  (E.D. Cal. 2009).   The limiting language of Rule 803(3) – "not including a statement of

20  memory or belief to prove the fact remembered or believed" – bars statements as to why

21  the declarant held the particular state of mind, or what he/she might have believed that

22  would have induced the state of mind.  Wagner, 673 F.3d at 981 (citing United States v.

23  Emmert, 829 F.2d 805, 810 (9th Cir. 1987)).  However, the bar applies only when the

24  statements are offered to prove the truth of the fact underlying the memory or belief.  Id.

25         To qualify under Rule 803(3), an out-of-court statement must be "nearly

26  contemporaneous with the incident described and made with little chance for reflection;"

27  and must be describing or referring to an event, with little opportunity for after-the-fact

28  reflection or deliberation.  U.S. v. Orm Hieng, 679 F.3d 1131, 1147-48 (9th Cir. 2012)

United States District Court
For the Northern District of California

(citing cases, quotations omitted).  The Ninth Circuit has applied the state-of-mind

exception in Lanham Act cases, to admit out-of- court statements made by customers as

part of the analysis of the "likelihood of confusion" factor under Sleekcraft.  See, e.g., Lahoti

v. Vericheck, Inc., 636 F.3d 501, 509 (9th Cir. 2011).

> i.    Defendants' Trial Exhibit A-5995

Defendants' Exhibit A-5995 is an email chain that includes a May 10, 2006 email

from Ann Harten (employee of Oracle customer Haworth) to Craig Tate and others at

Oracle, entitled "Haworth response to Oracle proposal."  In the email Harten expressed

disappointment with Oracle, and concerns as to whether Oracle will be a "good long-term

partner for Haworth."  This email was forwarded up the Oracle chain to Juan Jones, who

forwarded it to Yamilet Torres on May 12, 2006, stating, "As per our conversation, please

work with Ian/Saleen to assign temporary coverage for Haworth.  We need to turn this

account around and we need to do it fast."

As noted above, Jones was at that time a Senior VP of Customer Services, North

America Support, and SAP contends that his job responsibilities related to support.

According to SAP, the Harten email signaled Haworth's concerns about its future with

Oracle; and that the statement "We need to turn this account around and we need to do it

fast" shows that Jones accepted that Oracle's product offering might not be quite what

Haworth needed at the time.  Thus, SAP argues, the entire document (particularly the

Harten email) is admissible against Oracle.

In response, Oracle argues that this exhibit cannot be admitted as a adoptive

admission, but does not address SAP's argument that the exhibit is admissible under the

state-of-mind exception.

Defendants' Trial Exhibit A-5995 will be admitted.  The Oracle statements are not

hearsay, and reflect that Oracle was aware that Haworth was considering leaving Oracle,

and that Oracle was evaluating various solutions for this problem.  So long as the Harten

email is not being admitted to show that Haworth in fact cancelled its contract with Oracle

for a particular reason, it is admissible under the state-of-mind exception.

United States District Court

For the Northern District of California

1              ii.      Defendants' Trial Exhibit A-5058

2          Defendants' Exhibit A-5058 is an email chain that includes a January 29, 2007

3    email, sent from Oracle customer Vanguard Managed Solutions to Oracle employee Lori

4    Sanabria, entitled "Re: VanguardMS – Oracle JDE Renewal."  The email states that

5    Vanguard is cancelling Oracle support because "we did not need support last year, except

6    one time that was minor.  Our company is shrinking and splitting into 2, and we are not

7    likely to continue forward with JDE upgrades in the future."  Sanabria initially forwarded the

8    email to another Oracle employee, John Russnock, asking whether it was his account. In

9    his response, Russnock referred to what might happen "if the company does in fact split."

10         SAP asserts that the Vanguard email is evidence that Vanguard had a motive to

11   leave Oracle support that had nothing to do with TomorrowNow.  SAP claims that such

12   statements are admissible under the state-of-mind exception to demonstrate Vanguard's

13   motive.

14         In response, Oracle does not contest that the email might be admissible under the

15   state-of-mind exception, but instead appears to be arguing that the email should not be

16   admitted because it is "unrealiable."  Specifically, Oracle asserts that, based on Oracle

17   representative John Russock's "skepticism" about whether Vanguard would "in fact split," it

18   is clear that Oracle personnel considered the statement to be an unreliable indication of the

19   customer's motivations.

20         Defendants' Trial Exhibit A-5058 will be admitted under the state-of-mind exception.

21   So long as the out-of-court Vanguard statements are not being offered for the truth of the

22   matter being asserted – that Vanguard in fact cancelled its support contract with Oracle for

23   a particular reason – but rather is being offered to show either Vanguard's state of mind at

24   the time, or that Oracle was aware of the fact that Vanguard was considering cancelling its

25   contract, it is admissible.

26              iii.     Defendants' Trial Exhibit A-5002-1

27         According to SAP, defendants' Exhibit A-5002-1 is a document that was produced

28   pursuant to a subpoena, and contains internal Amgen communications and

12

United States District Court

For the Northern District of California

1   communications with TomorrowNow regarding support service negotiations.  The email

2   string (which includes emails dated over a two-month period) includes statements

3   indicating that Amgen was attempting to get Oracle to lower its price for support services,

4   and was considering looking at TomorrowNow because it was cheaper.

5         SAP seeks to introduce this document for the purpose of demonstrating the date on

6   which Amgen decided to contract with TomorrowNow – not for the purpose of proving the

7   truth of any statement.  SAP asserts that the email string demonstrates that as of late

8   October 2005, Amgen was still choosing between Oracle and TomorrowNow for support.

9   SAP claims that because Amgen had purchased the SAP software some time before,

10  Amgen could not have gone with SAP because of anything done by TomorrowNow.  Thus,

11  SAP argues, the document is not hearsay, and is relevant to the non-hearsay purpose of

12  showing a date on which a decision was pending (to show that the decision to go with SAP

13  came first).  SAP also contends that this email chain is also relevant to why customers

14  "such as Amgen" should be excluded from the damages calculations.

15        Finally, SAP asserts that the statements by the Amgen representatives are

16  admissible under the then-existing-state-of-mind exception to the hearsay rule, to show that

17  Amgen was "undecided" about whether to remain with Oracle.  SAP contends that these

18  are internal Amgen statements, so there would be no motive for fabrication, and the

19  information is directly relevant to the issue of when Amgen selected TomorrowNow.

20        In response, Oracle argues that because Amgen was excluded from Oracle's

21  damages figures at the last trial, the question of when or why Amgen purchased services

22  from TomorrowNow is irrelevant.  Moreover, Oracle asserts, to the extent that SAP offers

23  the emails for any other purpose, they are purely inadmissible hearsay, including the

24  statements regarding pricing, proposed service terms, and status of negotiations with

25  Oracle and TomorrowNow.

26        Defendants' Trial Exhibit A-5002-1 will be admitted under the state-of-mind

27  exception.  So long as the out-of-court Amgen statements are not being offered to show

28  that Amgen cancelled its support contract with Oracle for a particular reason, but rather are

United States District Court

For the Northern District of California

1    being offered to show either Amgen's state of mind at the time or that Oracle was aware of

2    the fact that Amgen was considering whether to go with SAP or Oracle for support, the

3    statements are not hearsay.

4         d.    Statements in Oracle's At-Risk Report

5         Defendants' Trial Exhibit A-0059 is Oracle's At-Risk Report, which contains several

6    categories of information, such as the number of customers at risk of leaving Oracle, the

7    contract revenue amounts, the win/loss statistics, and a "notes" field that includes Oracle

8    employee statements and customer statements, all relating to various customers' reasons

9    for leaving Oracle.  The parties dispute the admissibility of information in the "notes" field.

10   SAP contends that portions of the "notes" filed are admissible, including portions on which

11   Meyer relied in forming his opinions (which the court previously found admissible); and

12   select excerpts which it claims are adoptive admissions or are admissible as "state of mind"

13   evidence.

14        Prior to the first trial, Oracle moved in limine to exclude those portions of the Report

15   that contained "transcribed comments from customers" – or "customer statements referred

16   to in its At Risk reports on the ground that they are out of court statements from third

17   parties and thus inadmissible hearsay."  See Doc. 737 at 13-17.  At that point, while Oracle

18   did not specifically seek to exclude those portions that constituted statements by Oracle

19   employees, the argument suggests that Oracle was also seeking to exclude its employees'

20   paraphrases of those customer comments, claiming that the Oracle reps were simply

21   recording what the customers had said to them, and thus it was pretty much as though the

22   customers were being quoted directly.

23        In the final pretrial order, the court granted Oracle's motion, on the basis that "[t]he

24   customer statements are hearsay and SAP had not articulated any applicable exception to

25   the hearsay rule."  Doc. 914 at 1-2.  The order did not distinguish between quoted

26   statements from customers, and statements by Oracle employees that may or may not

27   have been paraphrases of customer statements.  In addition, the court's general ruling did

28   not address the admissibility of any specific transcribed customer statements or Oracle

employee comments.

SAP now seeks a ruling as to two excerpts from the "notes" field – an excerpt relating to Merck, which it claims is admissible as a party admission, and an excerpt relating to Stora Enso, which it claims is admissible as an adoptive admission.

       i.     Defendants' Trial Exhibit A-0059 (Merck Excerpt)

This excerpt states, in part,

> A little over a year ago, Merck signed a deal with SAP for 27M. This is a multi-year migration over the next several years to one instance . . . The SAP deal was about relationships and Oracle did not even bid on the deal. Merck did not provide information in the discovery stage to allow our involvement.

SAP contends that this excerpt is admissible as a party admission because it reflects the Oracle representative's understanding of the account status. SAP also asserts that the excerpt does not record a "transcribed customer statement," but rather is an Oracle employee's recitation of her understanding of facts regarding Merck's support renewal.

In response, Oracle argues that these are inadmissible notes reflecting a sales representative's conversations with customers and information received directly from a particular customer. Oracle claims that this particular excerpt describes a scheduled upcoming conference call and details how an Oracle representative visited and spoke with Merck regarding the renewal. Oracle asserts that written notes that paraphrase customer hearsay are just as unreliable as direct quotations by out-of-court declarants.

Defendants' Trial Exhibit A-0059 will be admitted as a party admission. The excerpt consists of notes made by the Oracle representative, and does not contain hearsay.

       ii.    Defendants' Trial Exhibit A-0059 (Stora Enso Excerpt)

The copy of this exhibit that is included in the binder labeled "Oracle's Documents in Support of the Joint Statement," shows portions of the excerpt highlighted, as follows

> 6-15-06. Have talked with customer again and he feels there is no way we can match the $180K that TN is offereing [sic]. . . . No one at Stora Enso is fighting back although my contact, Tom Davis, likes JDE and would like to continue with this product. He just can't fight the parent or the fact that there was such a disparity in price. . . . 6-4-08: Have talked with customer. . . . They were considering going to 8.11 but have not heard good references from other customers. They think applications unlimited is nice but hasn't effected [sic] their decision. They say they don't need our training or consulting. I told

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  them I couldn't meet TN price head to head. . . . 5-26-06: . . . . I reached out
to them to discuss. . . . I have a call scheduled on 5/30 to discuss.

2

3  Because of the minuscule size of the font used in this exhibit, the court can only

4  hazard a guess as to what the excerpt says.  In its portion of the Joint Statement, SAP

5  reproduced a portion of this exhibit, with some sentences or phrases bolded, though not the

6  same portions that are highlighted in the copy of the exhibit that was provided to the court

7  with "Oracle's Documents in Support of the Joint Statement."

8  SAP's excerpt reads as follows:

9  Not our usual positioning but **with a Parent company mandating
conversion to SAP in the next two years the best we can hope for is
some revenue for the next two years.**  6-15-06: Have talked with customer
10  again and he feels there is no way we can match the $180K that TN is
offereing [sic].  They ABSOLUTELY will not be upgrading since their parent is
11  an SAP shop and they will more than likely be moved to SAP within the next
two years.  **Also spoke with [Oracle] ASM - Derek Zeman**.  He has known
12  about this situation for at least 6 months and has addressed it on his end.
Basically **in the last year the parent company came into Stora Enso,
13  cleaned house in the personnel area and essentially took over.**  Derek
felt this was just a lost cause that he elected to move on to projects where he
14  could achieve a positive result.  No one at Stora Enso is fighting back
although my contact, Tom Davis, likes JDE and would like to continue with
15  the product.  He just can't fight the parent or the fact that there is such a
disparity in price.  I don't give this much of a chance to be save [sic] but will
16  discuss it once again with Rob.

17  Because the original is almost impossible to read, and because the highlighted portions in

18  each excerpt are not the same, the court is not entirely certain which portions the parties

19  dispute.

20  As best the court can make out, there are at least four separately-dated sections in

21  this Stora Enso entry.  SAP contends that the 6-26-06 and 6-15-06 entries (quoted above)

22  are relevant because they tend to prove that the customer purchased SAP software

23  because of a parent company mandate, not because of TomorrowNow.  SAP believes that

24  the comments (presumably the ones in the 6-15-06 portion) originated from a June 19,

25  2006 Oracle email from Barbara Allario to Robert Lachs, which is in Exh. A-5042

26  (discussed above), which SAP seeks to have admitted as a party admission (but not also

27  as an adoptive admission, as here).

28  SAP argues that these statements are employee party admissions, and are also

16

United States District Court

For the Northern District of California

1   adoptive admissions.  Lachs is identified as the support sales manager for this entry, and

2   Oracle stated in discovery that Lachs was involved with the Stora Enso account.  Thus,

3   according to SAP, the statements are employee party admissions.

4        In response, Oracle contends that contrary to SAP's argument, the entry identifies a

5   May 22, 2006 email and a phone call with the customer as the information source.  Oracle

6   contends that the later updates reference additional calls with the customer.  Oracle

7   asserts that this entry "demonstrates the unreliability of treating statements by an individual

8   customer employee as an indication of a customer's state of mind."  In addition, Oracle

9   asserts, this entry includes references to a parent company and to communications

10  between the parent company and Stora Enso, which implicates yet another layer of

11  hearsay.

12       The court finds that none of the statements is admissible as an adoptive admission,

13  and thus considers whether any is admissible as an employee party admission.  Given the

14  problems outlined above, plus the fact that the exhibit includes so many subparts and both

15  customer statements and statements of opinion by Oracle representatives, the court cannot

16  issue a definitive ruling with regard to this exhibit.  All the court can say at this point is that it

17  will not admit any purely "transcribed customer statements," as those are hearsay.   2.

18  SAP's Category Two – Evidence of Willful Infringement

19       SAP's position is that the court has already ruled that willful infringement is not

20  relevant to the issue of lost profits/infringer's profits, and that the court should therefore

21  exclude exhibits and trial testimony regarding willfulness.  The exhibits that SAP seeks to

22  exclude are plaintiff's Exhibits 0008, 0014, and 0161.  The trial testimony that SAP seeks to

23  exclude is testimony similar to that which was elicited at the last trial regarding SAP

24  purportedly accepting risk of legal liability, using TomorrowNow as a "liability shield,"

25  employee "whistle-blowing" efforts, employee discipline, and/or remorse for infringement.

26       Oracle's position is that the court has previously ruled only that evidence of willful

27  infringement cannot be introduced to support the theory that overhead expenses cannot be

28  deducted from gross revenues to arrive at infringer's profits.  Oracle claims, however, that

17

United States District Court
For the Northern District of California

1   <u>all</u> revenues of TomorrowNow can be considered "infringer's profits," and that the evidence

2   of SAP's intent will be used to support that theory.  Oracle also asserts that evidence of

3   willfulness is also evidence of "causation" and "context."

4        The court agrees with SAP.  Plaintiff's Trial Exhibits 0008, 0014, and 0161 will not be

5   admitted.  Oracle will not be permitted to offer evidence of alleged willful infringement,

6   including evidence of so-called "Risk Acceptance" that it previously offered solely to support

7   its hypothetical license theory.  Evidence of willful infringement is irrelevant to issues to be

8   determined in the new trial, which is limited to determining lost profits and infringer's profits,

9   and would serve only to confuse and mislead the jury.

10       As for the argument that Exhibit 0161 also provides a direct link between the

11  infringement and SAP's gains, the court notes that this document was prepared at the time

12  that TomorrowNow was being integrated into SAP (January 2005).  The estimates of how

13  many customers would move from Oracle to TN is just that – a projection, and is not

14  relevant to show that SAP/TN actually acquired those customers and made infringing

15  profits from a certain number of customers.  Similarly, the trial testimony that SAP seeks to

16  have excluded appears to go only to the question of willfulness, and is therefore irrelevant.

17  3.      SAP's Category Three – Evidence Relating to Excluded Damages Theories

18       SAP seeks to exclude three sub-categories of exhibits and testimony – "Risk to

19  Oracle's Investment" evidence; "Expected Financial Benefits/Impacts" Evidence; and

20  "Scope and Duration of the License" evidence.  These are plaintiffs' Trial Exhibits 4809,

21  4819, 0012, 0024, 0960, and 0728.  SAP's position is that none of this evidence – which

22  was previously presented at the first trial in support of Oracle's theory of hypothetical

23  license damages – is relevant to lost profits and infringer's profits, because it is not

24  probative of the key issue to be tried, which SAP asserts is why customers left Oracle to

25  purchase TomorrowNow support or SAP software.  Thus, SAP argues, it cannot be viewed

26  as providing either "context" or "background" for the stipulated claims.

27       Oracle's position is that each of these three subcategories is relevant to lost

28  profits/infringer's profits, and that none of the exemplars SAP has identified will be offered

1    **solely** to support excluded damages theories.  In addition, Oracle asserts, each provides

2    "crucial causation evidence" as well as context and background.  In particular, Oracle

3    claims that evidence of SAP's motives in each of these exemplars is relevant to causation.

4         The court agrees with SAP.  Plaintiff's Trial Exhibits 4809 and 4819 (relating to

5    Oracle's R&D costs and Siebel acquisition prices), plaintiff's Trial Exhibits 0012, 0024,

6    0161, and 0960 (relating to projections of potential customer conversions, intended as

7    evidence of SAP's hopes, aspirations, assumptions, and expectations), and plaintiff's Trial

8    Exhibit 7028 (relating to scope and duration of the license) will not be admitted, as they are

9    not relevant to determining lost profits or infringer's profits.

10   4.       Oracle's Category One – Oracle Income Statements and Cancellation Reports

11        Oracle's position is that its income statements and renewal rate or cancellation

12   reports are business records that can be used to  support the lost profits claim.

13        SAP asserts that there is some question as to the foundational support for these

14   exhibits, but agrees to admission of these business records, so long as comparable SAP

15   business records are also admitted (SAP's "trial balance" financial statements, used to

16   calculate SAP's profit margin).

17        The court agrees with SAP.  Plaintiff's Trial Exhibits 8040 and 2582 and defendants'

18   Trial Exhibits A-6623 and A-6643 will be admitted.

19   5.       Oracle's Category Two – Post-Trial Statements by SAP Executives

20        Oracle's position is that SAP claimed in the prior trial that it intended to take

21   responsibility for its misdeeds, but after trial, SAP executives stated (e.g., at shareholders'

22   meeting) that the company stipulated to liability as a litigation tactic to minimize damages.

23        SAP's position is that Oracle's focus on these post-trial statements shows that it is

24   still trying to focus on punishment, not just on compensatory damages.  The reasons that

25   defendants stipulated to liability are not relevant to the question of lost profits/infringer's

26   profits, and under Federal Rule of Evidence 403, any insignificant probative value is greatly

27   outweighed by potential prejudice.  The post-trial statements do not change the fact that

28   defendants **did** stipulate to liability, and the jury will be told that they did.

United States District Court

For the Northern District of California

1   The court agrees with SAP.  Plaintiff's Trial Exhibits 8111 and 8112 will not be

2   admitted.

3   6.      Oracle's Category Three – Statements from TomorrowNow Plea Agreement

4   Oracle's position is that the court should allow Oracle to introduce the admission

5   relating to causation contained within the plea agreement without referencing that the

6   admissions came from the guilty plea.  The statements can be presented to the jury simply

7   as "testimony from a previous proceeding."

8   SAP's position is that this is a back-door attempt to introduce evidence of TN's guilty

9   plea, which the court has already excluded.  The same circumstances that warrant

10   excluding evidence of the conviction warrant excluding admissions in the plea agreement.

11   Under Federal Rule of Evidence 403, the potential prejudice far outweighs any possible

12   probative value.

13   The court agrees with SAP.  The plea agreement will not be admitted.

14   7.      Objections Posed at Trial

15   Finally, the court has concluded, based on the number of designated exhibits and

16   the apparent number of potential objections, that it will be unable to resolve all such

17   disputes by meeting with the parties each morning for half an hour, as was done at the

18   prior trial.  The court can conceive of only two alternatives to the prior procedure.  These

19   are (a) the court can rule on each objection as it comes up at trial, with the clock running, or

20   (b) the court can appoint a special master to rule on as many objections as possible prior to

21   trial.

22   The parties shall meet and confer to determine what disputes still remain regarding

23   trial exhibits, and shall thereafter advise the court of their preference for resolving these

24   disputes.

25   8.      Motion to Seal Oracle's Information Contained in Joint Statement

26   The parties seek an order allowing portions of the Joint Statement to be filed under

27   seal.  Apart from quotations from the At-Risk Report (which was previously ordered sealed

28   in its entirety), the parties seek to seal those portions of the Joint Statement that quote

directly from the exhibits discussed above, and other of the designated exhibits.

The motion to maintain the At-Risk Report under seal is GRANTED, but any portion the court finds to be admissible at trial will be unsealed.  This includes the excerpt from Defendants' Exhibit A-0059 (Merck Excerpt) discussed above.  The remainder of the motion is DENIED, as it relates to quotations from exhibits that have been designated as trial exhibits.  Oracle has not established "compelling reasons" to seal this information.  <u>See Kamakana v. City of Honolulu</u>, 447 F.3d 1172 (9th Cir. 2006).

**IT IS SO ORDERED.**

Dated: July 31, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California